

October 16, 2019

**VIA ECF**

Honorable William H. Orrick
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 2, 17th Floor
San Francisco, CA 94102

> RE: Application for Appointment as Lead Counsel; *In re: JUUL Labs Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:19-md-02913-WHO (N.D. Cal.)

Dear Judge Orrick:

My firm represents JUUL users Sean E. Doker and Jacob Harrison, who seek to represent a proposed class of JUUL e-cigarette purchasers asserting economic loss claims for consumer fraud, design defect, failure to warn, and unjust enrichment. In accordance with the Court's Pretrial Order #1, I respectfully submit this application for appointment under Federal Rule of Civil Procedure 23(g) as interim lead counsel for the proposed class.

**Proposed Leadership Structure.** This MDL includes proposed consumer class actions as well as personal injury cases. We believe the most efficient way to balance and protect the different interests at stake in the class and personal injury cases is to create separate but closely coordinated tracks for the two sets of cases and to appoint separate leadership for each track.

A dual-track approach is consistent with the Judicial Panel on Multidistrict Litigation's order centralizing the cases before this Court, in which the Panel noted that "the transferee judge can use separate tracks or other appropriate pretrial techniques to accommodate any differences among" the class action and personal injury cases. *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2913, —F. Supp. 3d—, 2019 WL 4940625, at *1 (J.P.M.L. Oct. 2, 2019). The *Duke Center for Judicial Studies Guidelines and Best Practices* likewise recommends that in "hybrid" MDLs like this one, the transferee court should "typically appoint different counsel to take primary responsibility for personal injury claims on the one hand, and economic loss claims on the other."[1] MDL courts have consistently taken this approach in hybrid matters involving both class actions for economic loss and individual suits for personal injury.[2]

---

[1] Duke Center for Judicial Studies, *Guidelines and Best Practices*, at 42-43 (2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf.

[2] *E.g.*, *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2738 (D.N.J. Dec. 6, 2016), ECF Nos. 72 & 73 (entering separate orders appointing lead counsel for "consumer protection" and "personal injury" actions); *In re: Takeda Airbag Prods. Liab. Litig.*, MDL No. 2599 (S.D. Fla. Mar. 17, 2015), ECF No. 393 at 4-5 (appointing separate co-leads for the "economic damages track" and the "personal injury track"); *In re: Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543 (S.D.N.Y. Aug. 15, 2014), ECF No. 249 at 2 (appointing three co-leads, two with primary responsibility for economic loss claims and one with primary responsibility for personal injury claims); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2151, 2010 WL 11571244, at *1 (C.D. Cal. May 14, 2010) (appointing a committee and co-leads for

October 16, 2019
Page **2** of **3**

While the two plaintiff groups in this litigation will share many common interests and objectives, the cases also raise issues unique to each group. The personal injury cases, for example, will not seek class certification, while the class cases will neither require plaintiff fact sheets nor focus on clients' medical histories. The hybrid approach ensures clear lines of authority and responsibility for the claims and interests of each plaintiff group. Coordination on matters of common interest can be achieved through cooperation between counsel. For example, joint committees on discovery and liability issues could be formed with attorneys from the class and mass tort cases to assist and support lead counsel. *See Toyota*, 2010 WL 11571244, at *1 (appointing a "core discovery committee" that included counsel from both types of cases). The use of joint committees is preferable to large, elaborate leadership structures and promotes coordination on overlapping issues like written discovery requests, depositions, and development of key liability theories.

Given the differences between the two types of cases, we respectfully submit that the collective interests of all parties and the Court will be best served by appointment of separate lead counsel for the personal injury cases and the economic loss cases (the latter appointment is made pursuant to Rule 23(g)), with both sets of cases subject to coordination under the MDL umbrella. I respectfully request appointment as lead or co-lead counsel for the class action cases.

**Professional Experience.** My firm and I have extensive experience leading multidistrict and complex actions and obtaining favorable results for our clients and the classes they represent. We have obtained class certification orders in a range of cases—for example, in *In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) (antitrust); *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) (privacy action for injunctive relief); and *In re Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) (consumer fraud claims). Our varied experience and knowledge well position us to lead this unique, challenging case.

I had the privilege of serving as co-lead counsel in *In re Lidoderm Antitrust Litigation* (No. 14-md-02521-WHO), a multidistrict antitrust case that resulted in a $104.75 settlement after over four years of hard-fought litigation. I currently serve as co-lead counsel in *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation* (E.D.N.Y. No. 1:18-md-02819-NG-LB), another pharmaceutical antitrust action. And in *In re Pacific Fertility Center Litigation* (No. 3:18-cv-01586-JSC) ("*PFC*"), currently pending in this District before the Honorable Jacqueline Scott Corley, I am co-lead and liaison counsel for the class. The *PFC* matter arises from the failure of a cryogenic freezer tank at a fertility center jeopardizing thousands of eggs and embryos. Like this matter, *PFC* involves both a class action and numerous personal injury suits pending concurrently in state court. I have successfully coordinated proceedings and developed cooperative working relationships with plaintiffs' counsel in related personal injury actions pending in San Francisco Superior Court.

In addition to my work leading complex litigations, I am a member of the American Law Institute, serve as co-chair of an annual Federal Judicial Center judicial training symposium on

---

personal injury/wrongful death cases, and a separate committee and co-leads for economic loss cases); *In re: Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2096 (D. Ariz. Mar. 1, 2010), ECF No. 182 at 1-2 (appointing separate lead counsel to prosecute "economic injury actions" and "personal injury actions").

discovery issues, and was recently named by the National Law Journal as one of nine "Elite Women of the Plaintiffs' Bar" nationwide who "have consistently excelled in high-stakes matters on behalf of plaintiffs over the course of their careers." Additional information about my firm's qualifications appears in the firm's resume, attached as Exhibit A.

**Names and Contact Information of Judges.** In addition to the *Lidoderm* matter before Your Honor, the other matters described above are proceeding before the following judges:

| | |
|---|---|
| *In re Restasis Antitrust Litigation* <br> Honorable Nina Gershon <br> Eastern District of New York <br> 225 Cadman Plaza E., Courtroom 6D, 6th Fl. <br> Brooklyn, NY 11201 <br> Chambers Telephone: 718-613-2650 | *In re Pacific Fertility Center Litigation* <br> Honorable Jacqueline Scott Corley <br> Northern District of California <br> 450 Golden Gate Ave., Courtroom 7, 19th Fl. <br> San Francisco, CA 94102 <br> Court Clerk Telephone: 415-522-2041 |

**Willingness and Ability to Immediately Commit to Litigation.** My firm and I are prepared to immediately devote the resources necessary to this matter, no matter how time-consuming or intensive. When Girard Sharp seeks a leadership position, we do so with the understanding and expectation that we will be fully committed to doing whatever it takes to successfully prosecute the case. The firm has developed a reputation for efficient, expeditious, and careful prosecution of each matter it has led. *E.g.*, *Billitteri v. Securities Am., Inc.*, 2011 WL 3585983, at *7-8 (N.D. Tex. Aug. 4, 2011) ("Class counsel . . . provided thousands of hours of diligent legal work . . . with the very real possibility of no recovery or a very limited recovery.").

**Willingness to Work Cooperatively with Other Counsel.** The attorneys at Girard Sharp have earned a reputation for working collaboratively with co-counsel and opposing counsel. A list of other counsel supporting my application is attached as Exhibit B.

**Access to Resources.** Girard Sharp is self-funded and has the resources necessary to pursue this litigation, no matter how long-lasting and complex. Girard Sharp routinely advances the costs of litigation against well-financed corporate defendants. In the *Lidoderm* litigation, for example, Girard Sharp and co-counsel funded the litigation for over four years and were prepared to continue doing so through trial and appeals.

**Willingness to Service as Lead Counsel or PSC Member.** I am willing to serve as lead counsel or co-lead counsel for the proposed class.

**Other Considerations.** As practitioners resident in the Northern District, and having previously served as co-lead counsel before this Court in a major MDL, all Girard Sharp attorneys are familiar with the practice standards, rules and procedures of this District.

                                                    Respectfully submitted,

                                                    Dena C. Sharp
                                                    **GIRARD SHARP LLP**

EXHIBIT A

# Firm Resume

**Girard Sharp LLP** is a national litigation firm representing plaintiffs in class and collective actions in state and federal courts. Our firm serves individuals, institutions, and business clients in consumer protection, antitrust, and financial fraud cases. We are committed to achieving favorable results for all of our clients in the most expeditious and economical manner possible. Like our diverse clientele, Girard Sharp attorneys come from varied backgrounds, and we are committed to a culture of meaningful inclusion.

Girard Sharp has been distinguished as a Tier 1 law firm for class action litigation in the "Best Law Firms" list in *U.S. News & World Report. The National Law Journal (NLJ)* has named the firm to its "Plaintiffs' Hot List," a selection of top firms recognized for high-profile wins. In 2019, Girard Sharp was also recognized as an *NLJ* Elite Trial Lawyers finalist in the areas of consumer protection, insurance liability, pharmaceutical litigation, and products liability. Eight of the firm's 17 attorneys have been selected as Northern California Super Lawyers and Rising Stars.

## ATTORNEYS ASSIGNED TO THIS MATTER

### Partner



**Dena Sharp** simplifies even the most complicated issues in class action litigation. Dena served as co-lead counsel in *In re Lidoderm Antitrust Litigation*, a "pay-for delay" antitrust case that settled for $104.75 million on the eve of trial. She currently represents prescription drug purchasers as co-lead counsel in *In re Restasis Antitrust Litigation* and *In re Humira Antitrust Litigation*, and as a member of the End-Payer Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*. She also represents clients of a fertility center whose eggs and embryos were compromised by a freezer tank malfunction.

Earlier in her career, Dena played a key role in a variety of other high-profile cases, including in litigation arising from Lehman Brothers' bankruptcy and in matters involving Ponzi schemes and accounting fraud. As one example, Dena managed discovery in *In re SLM Corp. Securities Litigation*, No. 08-1029 (S.D.N.Y.), which settled for $35 million after nationwide class certification.

Dena serves on the board of directors of the Impact Fund and as vice chair of the Advisory Council for the Duke Law School Center for Judicial Studies. In 2018, Dena was elected to the American Law Institute, and she was recently named by the National Law Journal as one of nine "Elite Women of the Plaintiffs' Bar" nationwide. She co-authored the widely-cited *Sedona Principles: Best Practices and Principles for Electronic Document Production (Third Edition)*, as well as a chapter in the ABA's "Class Action Strategy and Practice Guide."

### Associates



**Scott Grzenczyk** has broad experience in all aspects of complex litigation. He has served as a member of leadership teams that recovered hundreds of millions of dollars for injured class members. Scott brings a tireless work ethic and a practical, results-oriented approach to his cases. Scott was the primary associate for the end-payor plaintiffs in the *Lidoderm* matter and contributes to the firm's work in the *Restasis* and *Generic Pharmaceuticals* matters. Scott has been selected as a Rising Star by Northern California Super Lawyers every year since 2013.

**Elizabeth Kramer** is a dedicated advocate for plaintiffs in complex cases spanning a variety of practice areas, including consumer protection, antitrust, and civil rights. Elizabeth currently serves on the co-lead counsel team in *In re USC Student Health Center Litigation*, a sexual-assault class action against USC and its campus gynecologist that settled for $215 million. Two of Elizabeth's technology-related consumer cases in this District, against HP and Lenovo, resulted in court-approved settlements that will provide substantial relief to tens of thousands of individuals. Elizabeth argued those settlement motions before Judges Davila and Gilliam. She also contributes to the firm's work in the *Generic Pharmaceuticals* litigation, focusing on discovery of defendants and non-parties.



**Tom Watts** prosecutes complex civil litigation of all kinds, including the *Restasis* monopolization MDL in which Girard Sharp serves as co-lead counsel. Tom took the lead in drafting the indirect purchaser complaint in the *In re Humira* MDL, which involves a novel challenge to alleged patent misuse foreclosing biosimilar competition to the world's best-selling prescription drug. Before joining the firm, Tom clerked for the Honorable Jane Richards Roth of the Third Circuit and the Honorable Robert McDonald of the Maryland Court of Appeals. Tom earned his J.D., *magna cum laude*, and Master of Public Policy from Harvard Law School and Harvard Kennedy School in 2015.



## REPRESENTATIVE MATTERS

- *In re Lehman Brothers Holdings Sec. & ERISA Litig.*, MDL No. 2017 (S.D.N.Y.). Girard Sharp served on the plaintiffs' executive committee charged with managing MDL proceedings arising out of the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in American history. We also served as lead counsel for a certified class of retail investors in Lehman-issued principal protection notes sold by UBS Financial Services, Inc. The Lehman litigation yielded recoveries of $735 million.

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.). Girard Sharp represented purchasers of LCD screens as liaison counsel in an antitrust class action against a sprawling East Asian price-fixing cartel. Total recoveries achieved for direct purchasers exceeded $470 million.

- *In re Actos (Pioglitazone) Prods. Liab. Litig.*, MDL No. 2299 (W.D. La.). Girard Sharp served on the Plaintiffs' Steering Committee and on the *Daubert* and Legal Briefing Committees. The parties reached a global settlement of $2.37 billion.

- *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, MDL No. 2032 (N.D. Cal.). U.S. District Judge Maxine M. Chesney appointed Girard Sharp to the leadership team. Following certification of a nationwide class of one million cardholders whose loan terms were changed by Chase Bank, the firm helped to negotiate a $100 million settlement eight weeks before trial.

- *In re American Express Fin. Advisors Sec. Litig.*, No. 04-cv-01773 (S.D.N.Y.). Girard Sharp served as lead counsel for investors alleging American Express steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits. The court approved a $100 million settlement.

- *Mitchell v. Bankfirst, N.A.*, No. C-97-1421 (N.D. Cal.). As lead counsel, Girard Sharp resolved this predatory lending class action for over $40 million in refunds, elimination of adverse credit references, and debt forgiveness.

- *Paeste v. Government of Guam*, No. 1:11-cv-00008 (D. Guam). Girard Sharp served as lead counsel in this action on behalf of Guam taxpayers for chronic late payment of income tax refunds. The District Court entered comprehensive injunctive relief in favor of the class, and the Ninth Circuit affirmed.

# EXHIBIT B

**EXHIBIT B**

*In re: JUUL Labs Inc., Marketing, Sales Practices, and Products Liability Litigation,*
Case No. 3:19-md-02913-WHO (N.D. Cal.)

**Counsel Supporting the Application of Dena C. Sharp**

Esfand Nafisi, Migliaccio & Rathod LLP

Scott A. Powell, Hare Wynn Newell & Newton LLP

Sabita J. Soneji, Tycko & Zavareei LLP

Scott P. Schlesinger, Schlesinger Law Offices, P.A.

Ariana Tadler, Tadler Law LLP

Laurence King, Kaplan Fox LLP

Seth Lesser, Klafter Olsen & Lesser LLP