October 23, 2019

**Via ECF**

Honorable William H. Orrick
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 2, 17th Floor
San Francisco, CA 94102

> **RE:**  ***In re: JUUL Labs Inc., Marketing, Sales Practices, and Products Liability Litig.*, Case No. 3:10-md-02913-WHO (N.D. Cal.);**
>
> ***Joint Response to Leadership Applications***

Dear Judge Orrick:

We represent plaintiffs in cases pending in *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litigation*, MDL 2913. Some of us are prosecuting proposed class claims while others of us are pursuing individual claims, and some both. Though we submitted separate leadership applications,[1] this response voices our shared views about the organization of the plaintiffs' leadership team and our shared concerns with certain other leadership proposals. While both the individual and class claims at issue in this litigation arise from the same conduct by JUUL, they also raise distinct issues. We believe the best way to coordinate the diverse interests in this litigation is through a "hybrid," or "tracked," leadership structure that would ensure that both the individual and class aspects of this litigation receive immediate attention.

We believe that the class claims and the individual claims deserve equal emphasis. A hybrid approach would ensure the advancement of all claims, including class claims brought on behalf of millions of young people who stand to benefit from class-wide economic and equitable relief. Statewide class trials—similar to the case management strategy adopted in *In re Syngenta AG MIR162 Corn Litig.*, MDL 2591 (D. Kan.) (Lungstrum, J.)[2]—would be an efficient means to obtain relief for large numbers of similarly situated individuals and allow for an even allocation among class members of the resources available to pay judgments. For those individuals who allege catastrophic harms, including seizures, strokes or death, and for the municipal plaintiffs suing JUUL on public nuisance theories, individual bellwether trials may also serve as an effective means of assessing liability and damages.

To implement this hybrid approach, we believe there should be separate teams dedicated to leading the class case and to leading the individual cases. (We address our proposed leadership structure in an accompanying case management statement.) Other hybrid MDLs have employed

---

[1] *See* E. Nafisi Leadership App. (ECF 118); D. Sharp Leadership App. (ECF 102); S. Powell Leadership App. (ECF 96); S. Soneji Leadership App. (ECF 94); J. Gdanski Leadership App. (ECF 108); S. Schlesinger Leadership App. (ECF 106); S. Lesser Leadership App. (ECF 83); J. Rathod Leadership App. (ECF 117); T. Zimmerman Leadership App. (ECF 107).

[2] *See* Memorandum and Order, *In re Syngenta AG MIR162 Corn Litig.*, No. 14-md-2591 (D. Kan. July 6, 2017) (ECF 3319).

similar leadership structures,[3] consistent with guidance that "a transferee court in a hybrid MDL should typically appoint different counsel to take primary responsibility for personal injury claims on the one hand and economic loss claims on the other." *See* Duke Law School, *Guidelines and Best Practices for Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, at 42-43 (2018). In its decision to consolidate and transfer the lawsuits against JUUL, the Judicial Panel on Multidistrict Litigation also suggested the use of "separate tracks or other appropriate pretrial techniques to accommodate any differences among the actions" against JUUL. *In re JUUL Labs, Inc., Marketing, Sales Practices, and Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2019 WL 4940625 (J.P.M.L. Oct. 2, 2019). A hybrid co-leadership structure supported by joint committees with specific roles would marshal the resources this litigation requires while ensuring that diverse interests are represented.

We believe it is equally important that the leadership structure be streamlined. In our experience, a larger leadership team with undefined or amorphous roles leads to diluted decision-making, inefficiencies, and increased costs. *See* Duke Law School, *Guidelines and Best Practices for Large and Mass Tort MDLs*, at 34 (2018) ("only in exceptional cases should more than 20 attorneys be appointed to serve on a steering committee"). We have also found that smaller leadership teams "ensure that there is a manageable number of individuals whose buy-in is required for key litigation decisions." *Id.* at 33. Efficient and undiluted decision-making is particularly important in this litigation, which raises novel legal questions and urgent public health concerns.

We are also concerned that the leadership slate proposed by Mr. London, Mr. Gutride, and Ms. London, which includes more than 20 lawyers,[4] will focus on the prosecution of non-class claims at the expense of a more procedurally advanced class action, which has been litigated and developed over the course of 16 months by Mr. Nafisi's firm in collaboration with co-counsel at Gutride Safier and attorneys at Berger Montague, the Public Health Advocacy Institute,[5] Tycko & Zavareei, and Zimmerman Law Offices. The leadership applications of the 23-lawyer group appear to be, and are, weighted toward personal injury attorneys, which is consistent with the focus of their submissions and proposals. *See, e.g.*, S. London Leadership App. (ECF 97 at 3) ("An executive committee comprised of many powerful trial lawyers will allow us to field several trial teams, so we can try cases in rapid succession."). While effective in traditional product liability MDLs, individual bellwether trials should be only one part of a multi-pronged strategy in this litigation, which requires a coordinated approach to the "mounting

---

[3] *See, e.g.*, Order, *In re: Takata Airbag Prod. Liab. Litig.*, MDL 2599, No. 15-md-2599 (S.D. Fl. Mar. 17, 2015) (ECF 393) (appointing separate co-leads for consumer class's economic loss claims and for personal injury claims, and a chairperson); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liab. Litig.*, MDL 2151, No. 8:10-ml-02151, 2010 WL 11571244 (C.D. Cal. May 14, 2010) (appointing separate leadership for personal injury and economic loss plaintiffs).

[4] *See* M. London Leadership App. (ECF 74 at 3); A. Gutride Leadership App. (ECF 79 at 3); S. London Leadership App. (ECF 97 at 3)

[5] We support the appointment of Mark Gottlieb and Andrew Rainer of the Public Health Advocacy Institute to lead an advisory steering committee dedicated to the development of systemic relief for minors and young adults, which would be a continuation of months of coordination and planning with Mr. Nafisi.

public health crisis" affecting all plaintiffs. *See Am. Acad. of Pediatrics v. FDA*, No. PWG-18-883, 2019 WL3067492, at \*4 (D. Md. July 12, 2019). Appointing dedicated leadership for the class and individual plaintiff groups will ensure that lawyers for individual claimants can push individual bellwether trials while attorneys for the class press for class certification and common liability findings.

Counsel submitting this statement have discussed case management issues in numerous telephone conversations and in-person meetings over the past several months. We agree on a case management strategy, are confident we could work well together as part of a leadership team, and fully support each other's leadership applications. Our skills, backgrounds, and perspectives suit the specific needs of this litigation, and our commitment to inclusive collaboration extends to any other lawyers the Court may appoint.

**Esfand Nafisi** filed the *Colgate v. JUUL* class action in April 2018 and has likely devoted more time to that litigation than any other lawyer. He took the lead in preparing a 384-page class action complaint and this Court upheld key claims he briefed with attorneys from his firm, including Jason Rathod, on motions to dismiss or compel arbitration. Mr. Nafisi has very ably executed his role as interim class counsel in that case, is familiar with the extensive discovery provided already by JUUL, and has established a rapport with defense counsel.

**Dena Sharp** is an experienced class action specialist with recent experience litigating cutting-edge class certification motions in this district, including in complex multi-party litigation and in "hybrid" matters involving class and personal injury claims.

**Scott Powell** is a nationally recognized trial lawyer who has experience trying both individual bellwether and class cases in MDLs and was co-lead in the recent *Syngenta* MDL, a hybrid MDL involving statewide class claims as well as thousands of individual cases.

**Sabita Soneji** has worked with Mr. Nafisi on the *Colgate v. JUUL* class case for over a year and was the clerk for United States District Court Judge Gladys Kessler when Judge Kessler presided over the United States' historic RICO action against Philip Morris and other major tobacco companies.

**Scott Schlesinger and Jonathan Gdanski** are among the most experienced tobacco litigation attorneys in the United States and bring the resources of the Schlesinger Law Firm, which has focused on tobacco/nicotine-addiction litigation for 25 years. Collectively they have tried over 30 tobacco trials to verdict and developed unparalleled expertise in nicotine addiction public health litigation.

**Seth Lesser** is a nationally recognized plaintiffs' attorney in multiple areas of class action litigation. Mr. Lesser has been sole or co-lead counsel in half a dozen MDLs and many similar cases, in addition to serving on steering and other committees in such cases and successfully prosecuting mass tort cases.

**Tom Zimmerman** represents Plaintiff Hasnat Ahmad in *Colgate* and has worked with Mr. Nafisi on that matter for over a year. Mr. Zimmerman has been appointed lead counsel and a member of plaintiffs' executive committees in several MDLs and other nationwide consolidated defective product and mass tort matters over the past 23 years.

We appreciate the Court's consideration of our leadership applications.

October 23, 2019

Respectfully submitted,


*/s/ Esfand Nafisi*
Esfand Nafisi
Jason Rathod
Migliaccio & Rathod LLP


*/s/ Dena Sharp*
Dena Sharp
Girard Sharp LLP


*/s/ Scott Powell*
Scott Powell
Hare, Wynn, Newell & Newton, LLP


*/s/ Sabita Soneji*
Sabita Soneji
Tycko & Zavareei, LLP


*/s/ Scott Schlesinger*
Scott Schlesinger
Jon Gdanski
Schlesinger Law Offices, P.A.


*/s/ Seth Lesser*
Seth Lesser
Klafter Olsen & Lesser LLP


*/s/ Thomas A. Zimmerman, Jr.*
Thomas A. Zimmerman, Jr.
Zimmerman Law Offices, P.C.