**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

October 23, 2019

Sarah R. London
Partner
slondon@lchb.com

Honorable William H. Orrick
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA  64102

      Re:      ***In re: Juul Labs Inc., Marketing Sales Practices, and Prod. Liab. Litig., MDL 2913 (19-md-02913-WHO), Consensus Plaintiffs' Response to Lead Counsel & Plaintiffs' Steering Committee Applications***

Dear Judge Orrick:

      Pursuant to Pretrial Order #1, Section 7, the undersigned plaintiffs' counsel (hereinafter referred to as "Consensus Plaintiffs") jointly submit this omnibus response regarding the leadership and Plaintiff Steering Committee ("PSC") applications submitted on October 16, 2019. As noted below, we have spent significant time and energy to reach consensus on a self-organized leadership proposal that will effectively and efficiently prosecute this action.

      We believe our proposed leadership structure, grounded in decades of experience in similarly large and complex MDLs, provides the optimal approach in this unique and multi-faceted MDL. While a steering committee cannot have unlimited membership, we submit that our group strikes the appropriate balance by including a diverse team of well-qualified lawyers and firms who: (1) know how to efficiently litigate a complex case, (2) represent the interests of the various unique plaintiff groups, (3) will work collaboratively, and (4) ensure access to the substantial human and financial resources needed to address the JUUL youth vaping crisis.

      We respectfully disagree with our colleagues who are proposing separate "tracks" for class and individual cases.  As explained in more detail below, there is no meaningful way to distinguish the cases that belong in each "track," and substantial effort would be required to compartmentalize the claims and coordinate activities between the separate tracks, which would frustrate, rather than promote, efficiency.  For example, the central themes regarding what Juul knew and when it knew it will predominate in every case, as well as numerous issues related to product design, nicotine delivery and addictiveness, product marketing and much more. Formal tracking could lead to fragmentation and the failure to move forward efficiently in one cohesive unit.  While we agree that the various types of cases will present some different management requirements and litigation issues, we submit, based on our collective experience, that the most logical and effective way to prosecute the various plaintiff interests is through the use of

committees that Leadership appoints and the PSC oversees.[1] Our proposed leadership structure includes lawyers experienced in handling all types of claims at issue here, and who possess diverse and complementary skill sets that will add value to the larger group (*e.g.*, superb brief writers, veteran class action practitioners, tobacco litigators, complex litigation managers, database mavens, e-discovery experts, general discovery experts, document management experts, skilled deposition examiners, lawyers committed to relevant science and expert development, talented trial lawyers, and appellate specialists). This talented group of lawyers will approach this case with the flexibility and creativity necessary to achieve the best possible result for the plaintiffs through trials or settlement(s).

> **1.    The Consensus Plaintiffs have developed a diverse, highly-skilled team based on best practices for managing complex litigation.**

We begin by outlining the process and criteria utilized to form our proposed leadership structure. For nearly six months, counsel who were prosecuting and investigating the cases in this MDL began meeting to discuss strategy, retain experts, track the number and types of cases filed, and analyze the emerging science and ever-breaking news on the JUUL vaping epidemic. Counsel organized and presented at multiple continuing education conferences regarding JUUL litigation, and they shared ideas and insights gained from prior experience in tobacco and other complex litigation. As the news spread about JUUL's misconduct, and as parents, teachers, local governments, and injured people began seeking legal counsel in droves, our group evolved to include skilled lawyers handling all types of JUUL cases from across the country.  Following the creation of the MDL before Your Honor, these organizing efforts culminated in an organizational meeting at the offices of Lieff Cabraser that was attended by more than 60 lawyers from over 50 different law firms. At that meeting, undersigned counsel presented on the status of motion practice and discovery in the pending cases, potential legal theories, and ideas on organization. Undersigned counsel solicited input from everyone who attended.

In the days following the meeting, we developed the currently proposed leadership team based on the following criteria: Ethnic and gender diversity, regional diversity, representation of each plaintiff group interest, variety of experience level, unique but complementary skill sets, JUUL and/or tobacco litigation experience, other special or unique expertise, commitment to the litigation, and willingness to commit time and resources. We also collectively considered attorneys' professional experience in complex litigation and demonstrated willingness to work well with others, based on past experience in coordinated litigation and prior MDLs.  While our proposed structure may seem large, it is consistent with the needs of the case and the size of leadership structures appointed in similarly complex MDLs.  Because every member of a

---

[1] Allowing leadership to create committees to address particular issues facing various groups of cases, such as class actions, governmental claims, and personal injury cases, will allow the common issues relevant to the overall litigation to move forward cohesively while reducing the potential for duplicative discovery.

steering committee has one equal vote, we limited membership in the proposed leadership structure to one lawyer per firm (and respectfully, we maintain this position).

This "private ordering" approach demonstrates our willingness and ability to work well with other plaintiffs' counsel and constitutes "[b]y far the most common . . . approach" for selecting among competing applicants for leadership and PSC appointment. Approaches to Selecting Counsel, Ann. Manual Complex Lit. § 21.272 (4th ed.). While most attorneys shared our vision of how to best collaborate to advance this case, some declined our offer to be included in our structure.[2]

Our efforts to construct an effective and efficient leadership structure were significantly guided by the Federal Judicial Center Guides, including Barbara J. Rothstein & Catherine R. Borden, MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES A POCKET GUIDE FOR TRANSFEREE JUDGES (United States Judicial Panel on Multidistrict Litigation & Federal Judicial Center, 2011) (hereinafter "FJC Product Liability Guide"); TEN STEPS TO BETTER CASE MANAGEMENT A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES (Second Edition) (United States Judicial Panel on Multidistrict Litigation & Federal Judicial Center, 2014) (hereinafter "FJC Ten Steps"); Catherine R. Borden, MANAGING RELATED PROPOSED CLASS ACTIONS IN MULTIDISTRICT LITIGATION (Federal Judicial Center, 2018), as well as the Duke Practice Guides: *Chapter 2, Selection and Appointment of Leadership*, GUIDELINES AND BEST PRACTICE FOR LARGE AND MASS-TORT MDLS 29-50 (Bolch Judicial Institute, Duke Law School, 2d ed., Sept. 2018) (hereinafter "Best Practices") and GUIDELINES AND BEST PRACTICES: IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS (Bolch Judicial Institute, Duke Law School, Aug. 2018) (hereinafter "Duke Class Action Best Practices").

In trying to craft an optimal and well-balanced leadership structure, we focused first on the type of cases included in this MDL. Best Practices at 30 ("In determining the appropriate

---

[2] For example, because we recognized Esfand Nafisi's contributions to developing the theories and factual record in *Colgate*, and even though he had never previously served as class counsel or on any committee in a coordinated proceeding, and is serving as "Of Counsel" at Migliaccio & Rathod, a five-lawyer firm, we offered to include him as a member of the Executive Committee. (Simultaneously, Mr. Nafisi's co-counsel in *Colgate*, Adam Gutride, an experienced class action practitioner, is being proposed as a co-lead counsel of the MDL.) While we initially understood Mr. Nafisi accepted this role, unfortunately Mr. Nafisi refused to participate, unless he also was designated Lead or Co-lead Counsel of the MDL. We also now have learned that Jason Rathod is additionally seeking appointment to the Plaintiffs' Steering Committee, even though he is a partner at the same firm. Similarly, various Consensus Plaintiffs had reached out to Dena Sharp, an experienced class action practitioner from the region, to invite her to attend the organizational meeting at Lieff Cabraser's offices, even though her firm had not yet filed any case against JUUL. Subsequently, we invited her to work with us on the Executive Committee, should she choose to file a case. She declined to commit and then filed a separate application to be Lead or Co-lead counsel.

leadership structure, the type of cases included in the MDL is often the most important consideration."). In addition to the class action lawsuit that had been pending before this Court for nearly 18 months, this MDL now includes a variety of other class cases, including personal injury class actions, medical monitoring class actions, local government actions, and public interest cases seeking injunctive relief only. Additionally, the MDL will likely include thousands of individual personal injury lawsuits (alleging a variety of different injuries), and many individual and class actions by school districts or other public entities, all adding to the MDL's scope and complexity.[3]

Both the size of this MDL and the disparate nature of the claims at issue support a larger leadership structure like the one proposed here. FJC Product Liability Guide at 11 ("Committees of counsel, often called steering committees, coordinating committees, management committees, or executive committees, are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making."). Since this MDL will encompass a significant mass tort aspect as well as a variety of different class actions, it is appropriate that plaintiffs' leadership structure reflects this larger body of cases. Best Practices at 30 (Mass tort litigations "tend to be the largest MDLs."). "In mass-tort MDL cases it is often helpful to establish multiple committees." *Id.* at 33. "[P]articularly large and complex mass-tort MDLs may require a larger steering committee to ensure that the plaintiffs are not at a disadvantage in funding pretrial discovery and have sufficient personnel and financial resources to match the defendants." *Id.* at 33.

A more detailed structure is often favored in MDLs that include product liability and mass tort litigation. Best Practices at 30 ("Courts often appoint a single leadership structure for the plaintiffs in these cases, although the committees tend to be larger than in other types of cases…[I]n addition to, lead and liaison counsel, courts sometimes appoint an executive committee, assigning specific responsibilities to each member (such as overall leadership of the case, communication with the court, communication with other plaintiffs' counsel, and coordination with lawyers prosecuting related cases in state court).").[4] We submit that such a

---

[3] To aid the Court and the parties in tracking the number, scope and nature of the claims here, we will designate lawyers to oversee data analysis and employ state-of-the-art procedures to identify trends and ideally provide close to real-time information about the cases in the MDL.

[4] *See In re: Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, Case No. 09-md-02023, Case Mgmt. Order No. 1, Dkt. 17, June 8, 2009 (E.D.N.Y.); *In re: Actos (Pioglitizone) Prods. Liab. Litig.,* Case No. 6:11-md-02299, Court Order: Pls.' Steering Comm., Dkt. 560, Apr. 13, 2012 (W.D. La.); *In re: Testosterone Replacement Therapy Prods. Liab. Litig.*, Case No. 1:14-cv-01748, MDL-2545, Case Mgmt. Order No. 4, Dkt. 244, Aug. 1, 2014 (N.D. Ill.); *In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, Case No. 2:17-md-02789, Case Mgmt. Order No. 2, Dkt. 10, Aug. 23, 2017 (D. N.J.); *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, Case No. 3:16-md-02750, Case Mgmt. Order No. 2, Dkt. 28, Jan. 24, 2017 (D. N.J.); *In re: 3M Combat Arms Earplug Prods. Liab. Litig.,* Case No. 3:19-md-2885, Pretrial Order No. 6, Dkt. 286, May 8, 2019 (N.D. Fl.); *In re: Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.,*

Hon. William H. Orrick
October 23, 2019
Page 5

structure is warranted here, and will ensure sufficient measures are in place to avoid waste, duplication, and over-billing. *See* Manual for Complex Litigation § 14.21; Duke Class Action Best Practices at 41.

We recognize that "[o]nly in exceptional cases should more than 20 attorneys be appointed to serve on a steering committee, although there are rare cases in which this is necessary and the imposition of an arbitrary limit may have undesirable consequences." Best Practices at 33-34. This is one such litigation warranting a larger leadership size.[5] As many applicants have recognized, this litigation is shaping up to be Tobacco Litigation 2.0. If the past 50 years offers any guide, having a sizable executive committee with the ability to assemble funds and personnel is critical to ensuring that this case will be prosecuted as quickly and thoroughly as possible, and that Plaintiffs will be able to compete with the considerable resources on the other side.

Further, the urgency required to address the youth vaping crisis demands a full court press. A substantial amount of work needs to be done —quickly—including ramping-up discovery efforts and preparing bellwether cases for trials. Our proposed structure has the depth of experience in all the necessary areas to immediately begin litigating every aspect of this case and continue to a successful conclusion: foundational case management orders, e-discovery, written discovery, bellwether case assessment and development, depositions, litigation, legal briefing, experts, trials, and, if needed, appellate practice. Significantly, our team has the ability to manage multiple trial teams, while at the same time, moving for class certification and responding to anticipated motion practice and any appeals (as is customary in tobacco litigation and is currently playing out in the *Opioid* litigation). While the Court can add to our proposed team, and there certainly are other lawyers with skill sets similar to members of the Consensus Plaintiffs, we are, respectfully, not currently lacking anything. Importantly, the lawyers in this group have demonstrated their ability to work well with others. As such, a specialist in tobacco litigation who litigates as a "lone wolf" might not be the most helpful addition to a high functioning team. Similarly, a class action lawyer who proposes to litigate alone, or only with a small team, might not be best suited for this massive MDL, where it will be essential to have cohesive and unified efforts while managing and overseeing overlapping and complex claims that embody both class actions and likely thousands of individual injury cases.

---

Case No. 2:18-md--2848, Pretrial Order No. 5, Dkt. 18, Sept. 25, 2018 (E.D. Pa.); *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, Case No. 2:16-md-02740, Order Establishing Leadership Structure, Dkt. 154, Dec. 28, 2016 (E.D. La.); *In re: Xarelto Prods. Liab. Litig.,* Case No. 14-md-02592, Pretrial Order No. 7, Dkt. 169, Feb. 9, 2015, (E.D. La.).

[5] Our proposed structure is comparable in size to other litigations of similar complexity. *See, e.g.*, *In re: Valsartan Prods. Liab. Litig.*, Case No. 1:19-md-2785 (D. N.J.); *Multidistrict Opiate Prescription Litig.*, Case No. 1:17-md-02804 (N.D. Ohio);
*In re: Volkswagen 'Clean Diesel' Mktg, Sales Practices, and Prods. Liab. Litig.*, Case No. 3:15-md-02672 (N.D. Cal.).

Respectfully, this case is highly distinguishable from the *Yahoo! Data Breach Litigation* cited by one of the competing applicants here [ECF No. 98]. There, in what has become a rather routine type of case in this district (home to many of the world's leading technology companies that trade in customer data), the Court authorized only five firms to perform work in the MDL and expressed concern that many more firms sought to receive fees from a proposed settlement, risking an improper reverter of funds to defendants. *In re: Yahoo! Inc. Customer Data Security Breach Litig.*, Case No. 16-md-02752, Order Denying Motion for Preliminary Approval of Settlement, Dkt. 357, Jan. 30, 2019 (N.D. Cal.). *Yahoo!* does not speak to what is the appropriate size of a leadership structure in a large and complex MDL like this one. The same is true of other examples of MDLs cited by some applicants, which typically involve only class actions (rather than also including personal injury and public entity cases) and/or are focused on simple economic loss (rather than attempting to end and redress a growing, nationwide public health crisis).

Finally, our proposed structure erred on the side of inclusivity. We took into account gender, racial, and ethnic diversity; geographic diversity; and experience and skill-set diversity in order to enhance the quality of the overall representation to the plaintiffs. Best Practices at 29. At least one commentator remarked that our proposed team is "among the most diverse in multidistrict litigation; as it includes 10 women and at least three attorneys who are minorities."[6] Our proposed leadership structure achieves all of the goals expressed by the MDL bar without sacrificing quality of representation or litigation resources for the plaintiffs.

### 2.     **Separate tracks for class and individual cases will not advance the ball.**

Several applicants proposed that the Court impose two litigation "tracks," with separate leadership for class action cases on the one hand and individual cases on the other. Respectfully, this MDL does not fit into those categories, which courts have previously applied in "hybrid" MDLs such as *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prods. Liab. Litig.*, Case No. 8:10-ml-2151 (C.D. Cal.), *In re: Takata Airbag Prods. Liab. Litig.*, Case No. 15-md-02599 (S.D. Fl.), *In re General Motors LLC Ignition Switch Litig.*, Case No. 14–md-02543 (S.D.N.Y.) or others. In those cases, there is a clear distinction between plaintiffs who have and have not suffered physical injuries. Here, there is overlap between those alleging class claims and those alleging individual personal injury claims, because the primary nature of the harm alleged is addiction to an unsafe product that contains high doses of nicotine—an injury with both economic and personal injury components. This raises numerous difficult categorization questions. For example, would the class track include only economic loss such as restitution of the purchase price paid, or also class actions also pursuing medical monitoring? What about the class claims for injunctive relief or other remedial measures? *See, e.g., Murphy et al. v. Juul Labs, Inc.*, Case No. 1:19-cv-11755, (D. Mass.) (seeking entirely injunctive relief). What about personal injury class actions? Or issue classes to resolve common elements of all the

---

[6] Amanda Bronstad, *Diverse Set of Lawyers Wants to Lead JUUL Lawsuits. For Some it's Personal*, THE RECORDER (Oct. 18, 2019) https://www.law.com/therecorder/2019/10/18/diverse-set-of-lawyers-wants-to-lead-juul-lawsuits-for-some-its-personal/.

claims—such as whether the marketing practices were unlawful and likely to deceive or whether the product is unreasonably dangerous? These questions need to be factored into case management decisions. *See* Best Practices at 43 n.44 ("While the personal injury claims will most frequently have been brought as individual or multi-plaintiff complaints, without class allegations, in some MDLs personal injury class action complaints may also have been filed and must be factored into case management decisions.").

Moreover, the two-track proposal does not address the growing number of governmental entity claims that do not fit squarely in either proposed track, so this could then presumably require a third (or even possibly fourth) "track." The primary relief being sought by many of these public entity lawsuits—funding for abatement programs to mitigate and reverse the public health crisis of youth vaping and youth nicotine addiction—is different from the relief being pursued in consumer class action or personal injury cases. Complicating the matter, some of the public entity claims are also claims on behalf of "classes" of school districts or local governments.

While there are multiple types of claims and a diversity of claimants, there is significant overlap in the factual and legal theories across all of the cases. Rather than creating silos around class versus individual cases, the leadership of this MDL needs to work collaboratively to avoid duplication of effort and advance the common issues to trial as quickly as possible—especially because JUUL is headquartered in this District and trials can take place here. A centralized leadership can better determine which lawyers are most suited to take a deposition that will be used in multiple cases, or to brief a common legal issue. Rather than imposing a rigid "track" structure and monitoring the different tracks to ensure effective communication—which will certainly introduce unnecessary inefficiencies including turf wars and side-show disputes over which cases and issues belong in which track—"[m]ost courts have left such details up to self-ordering among designated counsel, seeing the advantage of ongoing flexibility, recognizing that the scope or nature of the litigation, and the need for particular tasks and responsibilities, will likely evolve over time, and trusting that it has appointed counsel to leadership roles who in actuality can," as the Manual for Complex Litigation recommends, "work cooperatively with others." Duke Class Action Best Practices at 45.

While a few lawyers are proposing different tracks, none have suggested that the lawyers on our team cannot represent all interests adequately and fairly. Indeed, at each level of the Consensus Plaintiff structure, we have secured some of the most experienced lawyers in class action, mass torts, public nuisance, and JUUL and tobacco litigation. Thus, to the extent the Court elects to utilize a track method, which we respectfully oppose, the Consensus Plaintiffs are equipped to proceed in that fashion.

Our team includes lawyers representing every type of entity included in this MDL—with many firms handling more than one type of case (e.g., consumer class, medical monitoring class, individual injury, school district, other public entity). Our approach will be practical, not formalistic, using consensus to drive decisions. Our leadership would likely create smaller committees of attorneys to handle discovery and litigation issues unique to a certain case

Hon. William H. Orrick
October 23, 2019
Page 8

category, which would be comprised of PSC members and, with the Court's approval, non-PSC members who are interested in contributing necessary work to assist in the prosecution of the cases.[7]

It is precisely because the lawyers in this group appreciate and accommodate the different types of cases and different norms among plaintiff groups in this MDL that our proposed structure will be best suited to advance this litigation for optimizing resolution. FJC Ten Steps at 3 ("Identify and appoint counsel who are vigorous advocates and constructive problem-solvers, and who, at the same time, are civil with their adversaries. Particularly in cases where there is related state court litigation, lead counsel must have the self-confidence to include other attorneys in the committee structure and delegate significant responsibilities to them."). *See also* Class Best Practices at 46. ("In [hybrid] cases, with the leadership structure that includes representatives of both the class and tort sides of the litigation, a premium is placed on counsel who are willing to understand and, within reason, accommodate the different norms, expectations, and styles of "class" and "mass tort" lawyers, especially since, as they occasionally occur, these concepts converge, whether in a class action settlement of mass tort claims, as in the recently approved NFL Concussion Litigation, or the "bellwether" trial of class claims or common questions on an "issue" class or statewide class basis, as a step toward an ultimate determination on multi-state or nationwide class claims.").

In sum, we have assembled a group of professional, experienced, capable, qualified, dedicated, and diverse plaintiffs' counsel who are committed to working together in a coordinated fashion in a self-organized way to efficiently and effectively represent all plaintiffs in this MDL.[8]

We appreciate the Court's consideration of this leadership structure and look forward to advancing the interests of all plaintiffs in this MDL.

---

[7] For example, Danielle Mason has applied to be appointed as co-lead and/or to the Plaintiff Steering Committee. The Consensus Plaintiffs support her role to serve on a discovery committee and possible trial committee (as the litigation advances). We understand that she is, accordingly, withdrawing her application and supporting the Consensus Plaintiffs' proposal. Similarly, Mark Gottlieb of the Public Health Advocacy Initiative at Northeastern University has applied to be a member of the PSC, to focus on developing appropriate addiction treatment and education programs that have the support of the public health community and that can be proposed as Court-ordered remedies. The Consensus Plaintiffs similarly support this critical role, and he being an attorney committed to it and other related aspects. We understand that he is, accordingly, withdrawing his application and supporting the Consensus Plaintiffs' proposal.

[8] As set forth in Best Practices, membership on a plaintiffs' steering committee should be re-assessed periodically. To this end, new steering committee members can, and often do, apply to join an existing steering committee at various times throughout a given litigation; members who are not performing their duties can and will be removed.

Respectfully Submitted,

_____
Sarah R. London

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
slondon@lchb.com
Telephone: 415.956.1000
Fax: 415.956.1008

*Proposed Lead Counsel and Interim Plaintiffs' Liaison Counsel*

*/s/ Adam Gutride*
Adam Gutride
GUTRIDE SAFIER
100 Pine St. #1250
San Francisco, CA 94111
adam@gutridesafier.com

*Proposed Lead Counsel*

*/s/ Michael London*
Michael London
DOUGLAS & LONDON
59 Maiden Lane, 6th Fl.
New York, NY 10038
mlondon@douglasandlondon.com

*Proposed Lead Counsel*

*/s/ Matt Schultz*
Matt Schultz
LEVIN PAPANTONIO
316 S. Baylen St.
Pensacola, FL 32502
mschultz@levinlaw.com

*Proposed Plaintiffs' Executive Committee Member*

        */s/ Ellen Relkin*
        Ellen Relkin
        WEITZ & LUXENBERG
        700 Broadway
        New York, NY 10003
        erelkin@weitzlux.com

        *Proposed Plaintiffs' Executive Committee Member*

        */s/ Joseph VanZandt*
        Joseph VanZandt
        BEASLEY ALLEN
        218 Commerce St.
        Montgomery, AL 36104
        Joseph.VanZandt@beasleyallen.com

        *Proposed Plaintiffs' Executive Committee Member*

        */s/ Emily Jeffcott*
        Emily Jeffcott
        MORGAN & MORGAN
        700 S. Palafox St. #95
        Pensacola, FL 32502
        ejeffcott@forthepeople.com

        *Proposed Plaintiffs' Executive Committee Member*

        */s/ Brad Honnold*
        Brad Honnold
        GOZA & HONNOLD
        9500 Nall Ave.
        Overland Park, KS 66207
        bhonnold@gohonlaw.com

        *Proposed Plaintiffs' Executive Committee Member*

        */s/ Dean Kawamoto*
        Dean Kawamoto
        KELLER ROHRBACK
        1201 3rd Ave., Suite 3200
        Seattle, WA 98101
        dkawamoto@KellerRohrback.com

        *Proposed Plaintiffs' Executive Committee Member*

Hon. William H. Orrick
October 23, 2019
Page 11

*/s/ Stacey Slaughter*
Stacey Slaughter
ROBINS KAPLAN
800 Lasalle Ave. #2800
Minneapolis, MN 55402
SSlaughter@robinskaplan.com

*Proposed Plaintiffs' Executive Committee Member*

*/s/ Tom Cartmell*
Tom Cartmell
WAGSTAFF & CARTMELL
4740 Grand Ave. #300
Kansas City, MO 64112
tcartmell@wcllp.com

*Proposed Plaintiffs' Executive Committee Member*

*/s/ Christopher Gold*
Christopher Gold
ROBBINS GELLER
120 E Palmetto Park Rd. # 500
Boca Raton, FL 33432
cgold@rgrdlaw.com

*Proposed Plaintiffs' Executive Committee Member*

*/s/ Neil Overholtz*
Neil Overholtz
AYLSTOCK WITKIN
17 E Main St.
Pensacola, FL 32502
noverholtz@awkolaw.com

*Proposed Plaintiffs' Steering Committee Member*

        /s/ Kristine Kraft
        Kristine Kraft
        SCHLICHTER BOGARD
        100 S. 4th St. #1200
        St. Louis, MO 63102
        Kkraft@uselaws.com

        *Proposed Plaintiffs' Steering Committee Member*

        /s/ Mikal Watts
        Mikal Watts
        WATTS GUERRA
        4 Dominion Dr. Building 3, Suite #100
        San Antonio, TX 78257
        mcwatts@wattsguerra.com

        *Proposed Plaintiffs' Steering Committee Member*

        /s/ Khaldoun Baghdadi
        Khaldoun Baghdadi
        WALKUP MELODIA
        650 California St.
        San Francisco, CA 94108
        kbaghdadi@walkuplawoffice.com

        *Proposed Plaintiffs' Steering Committee Member*

        /s/ Rachel Abrams
        Rachel Abrams
        LEVIN SIMES ABRAMS
        1700 Montgomery St., Suite 250
        San Francisco, CA 94111
        rabrams@levinsimes.com

        *Proposed Plaintiffs' Steering Committee Member*

        /s/ Tracy Finken
        Tracy Finken
        ANAPOL WEISS
        130 N. 18th St. #1600
        Philadelphia, PA 19103
        tfinken@anapolweiss.com

        *Proposed Plaintiffs' Steering Committee Member*

        */s/ Leslie LaMacchia*
        Leslie LaMacchia
        PULASKI KHERKHER
        2925 Richmond Ave., Suite 1725
        Houston, TX 77098
        llamacchia@pulaskilawfirm.com

        *Proposed Plaintiffs' Steering Committee Member*

        */s/ Erin Dickinson*
        Erin Dickinson
        CRUEGER DICKINSON
        4532 N. Oakland Ave.
        Whitefish Bay, WI 53211
        ekd@cruegerdickinson.com

        *Proposed Plaintiffs' Steering Committee Member*

        */s/ Michael Weinkowitz*
        Michael Weinkowitz
        LEVIN SEDRAN
        510 Walnut St. # 500
        Philadelphia, PA 19106
        Mweinkowitz@lfsblaw.com

        *Proposed Plaintiffs' Steering Committee Member*

        */s/ Linda Nussbaum*
        Linda Nussbaum
        NUSSBAUM LAW
        1211 6th Ave.
        New York, NY 10036
        LNussbaum@nussbaumpc.com

        *Proposed Plaintiffs' Steering Committee Member*