[*Submitting Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 19-md-02913-WHO<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] AGENDA** |

Pursuant to Civil Local Rule 16-10(d) and the Court's November 13, 2019 Minute Order (ECF 250), counsel for Defendants Juul Labs, Inc. ("JLI"); Altria Group, Inc. ("Altria"); and Philip Morris USA ("PM USA") (collectively "Defendants") and Interim Plaintiffs' Counsel ("Plaintiffs") respectfully provide this Joint Case Management Statement in advance of the telephonic Further Case Management Conference scheduled for December 9, 2019.

## I.     CALL-IN INFORMATION

Any counsel who wishes to participate in the conference should dial in using the below conference line.  Unless you are addressing the Court, please be sure your phone is on mute.

Dial-In: 888-330-1716

Access Code: 470535

## II.    [PROPOSED] AGENDA

        1.     Census

        2.     Direct Filing Order

        3.     ESI Protocol

        4.     Protective Order

        5.     Privilege Order

        6.     Other Case Management Orders Under Discussion

        7.     Discovery Planning

            a.     JLI documents produced to government entities

            b.     Altria documents produced to government entities

            c.     Insurance policies

            d.     Other discovery issues

        8.     Vendors

        9.     Status of Case Filings

        10.    State Court Proceedings

## III.   DISCOVERY DEVELOPMENTS SINCE THE INITIAL STATUS CONFERENCE

In accordance with Rule 1's mandate that there be a "just, speedy, and inexpensive determination of every action," and the Court's guiding principles set forth during the November

8, 2019 status conference, counsel for Defendants and Plaintiffs have met "the highest standard of professionalism in dealing with all the issues and in dealing with each other," and in a manner consistent with the expectation that the case "move forward in a speedy and collaborative and efficient way." (11/8/19 Hr'g Tr. at 12:3–7.)

*First*, in an effort to facilitate document productions, the parties began discussions regarding a protective order and ESI protocol and on November 16, 2019, Plaintiffs provided draft versions of the orders, as well as a draft direct filing order. Defendants subsequently provided their own proposed draft orders, as well as a draft order regarding privilege issues. Plaintiffs' and Defendants' draft orders had significant differences, but through the parties' cooperation and diligence, the issues in dispute that remain have been substantially narrowed and are set forth for the Court's guidance in Section IV, below.

*Second*, the parties are continuing to discuss additional case management orders that they believe will help advance this litigation. These include a Discovery Dispute Resolution Order, a Federal State Cooperation Order, and a Deposition Protocol. Although there may be some disputes with respect to these materials, if the past working relationship is a prologue, the parties are hopeful that the need for the Court's guidance will be limited to a few discreet issues.

*Third*, the parties heeded the Court's admonition that the parties "work together" to exchange needed information "as soon as possible," even before service of "a single document request in the MDL." (11/8/19 Hr'g Tr. at 102:7–14.) Before the MDL was created, JLI produced approximately 450,000 pages and 15,000 native documents in the pre-MDL *In re JUUL* case (*Colgate*). These materials have been made available to Plaintiffs' interim leadership team, subject to the *Colgate* protective order. Similarly, (and as detailed further in Section IV, below), JLI and Altria have agreed to a rolling production of additional documents produced to certain government agencies before a consolidated complaint is filed or any document requests are propounded, as addressed below. Finally, JLI has agreed to produce appropriate insurance policies once a protective order is entered in this case.

IV.     **AGENDA ITEMS IN DETAIL**

1.     **Initial Census**

The parties worked with Professor Jaime Dodge, Director of the Institute of Complex Litigation and Mass Claims at Emory Law School, to develop an initial census to assist the Court in determining Plaintiff leadership appointments. The parties submitted a Proposed Census Order on November 18, 2019, and the Court entered Case Management Order No. 2—Initial Case Census on November 19, 2019 (ECF 262). Plaintiff leadership applicant firms must submit the initial census data to Ankura and any applicable certifications by December 19, 2019. Defendants' census obligations shall be completed with relevant data, documents, and certifications provided to Ankura no later than January 20, 2020.

Ankura has conducted several trainings for participating counsel.  Counsel for the parties negotiated with Ankura and executed contracts.  The portal went live on Wednesday, November 27, 2019.

2.     **Direct Filing Order**

The parties agree that a Direct Filing Order will allow for a more streamlined and efficient administration of the case, reduce delay, and conserve judicial resources.  The order also includes agreement for acceptance of service by email to further streamline the case initiation process.  A jointly proposed form of Direct Filing Order is attached here as **Exhibit A**. If the Court is inclined to enter the Order, the parties will promptly submit a final version of the Order that includes service email addresses.

3.     **ESI Protocol**

To facilitate preliminary discovery, and pursuant to the Court's directive in CMO 1, Plaintiffs worked collaboratively on a proposed ESI Protocol.  Plaintiffs' Interim Counsel sent that proposed ESI Protocol to Defendants on November 16, 2019.  The parties thereafter engaged in multiple meet-and-confer discussions on this topic.  Defendants provided a response on December 4th, which varies significantly from the Plaintiffs' proposal and raises numerous issues. The parties have agreed to work to resolve their disputes over the ESI Protocol and to submit either a joint stipulation or competing versions with an accompanying letter brief not to exceed

1  five pages setting forth the parties' respective positions by December 16, 2019.

2      4.    **Protective Order**

3      **Exhibit B** is a jointly proposed order with disputed language in brackets.  The parties are

4  prepared to discuss the disputed areas at the CMC.  Below is a summary of each issue in dispute

5  and the parties' respective positions.

6          a.    **Altria's Highly-Confidential Documents [Paragraph 39]**

7

8      **Plaintiffs' Position**

9      Altria's proposed protocol for handling its designated "Highly Confidential" documents is

10 unworkable and outdated.  Its restrictions would eliminate the benefit of any document

11 management technology or collaborative review platforms.  Requiring Plaintiffs (and their

12 experts) to review paper documents in a locked vault makes no sense and has not been adopted as

13 a necessary security procedure by the courts in this district.  *See, e.g.*, *In re: Chrysler-Dodge-Jeep*

14 *EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-

15 EMC (N.D. Cal. Aug. 31, 2017), Dkt. 212; *In re: Volkswagen "Clean Diesel" Marketing, Sales*

16 *Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal. Feb. 25, 2016),

17 Dkt. 1255; *In re: Apple Inc. Device Performance Litigation*, No. 5:18-md-02827-EJD (N.D. Cal.

18 Oct. 12, 2018), Dkt. 222; *In re: Coca-Cola Products Marketing and Sales Practices Litigation*

19 *(No. II)*, No. 4:14-md-02555-JSW (N.D. Cal. July 19, 2016), Dkt. 125.  This provision would

20 amplify the burdens of discovery, as experts would be forced to fly across the country—or even

21 the world—simply to review material, and Altria has not offered any exceptional circumstance

22 justifying that additional burden.

23     Moreover, the lion's share of the Highly Confidential material produced in this litigation

24 will presumably come from JUUL—who is not seeking this restriction.  This is not a trade secret

25 or patent dispute and Altria's products are not directly at issue.  Altria's lone insistence on an

26 outmoded and unnecessary provision should not saddle this litigation.

27     **Altria's Position**

28     Altria's proposal concerning the security of Highly Confidential information seeks to

ensure that Highly Confidential information is adequately safeguarded from improper disclosure.  This provision would require that Highly Confidential materials be stored in a secured location and reviewed under specific conditions designed to minimize the risk that they could be improperly reproduced or misappropriated.   Historically, the number of documents that Altria has claimed to be Highly Confidential is extremely small.  The need to provide adequate protection for this small number of documents, however, is critical.  This information includes business and trade secrets that are so proprietary or competitively sensitive that their disclosure would likely cause severe and irreparable harm.   Altria therefore takes extraordinary measures in the ordinary course of business to safeguard this information against unauthorized disclosure and to limit any dissemination internally only to those with a need-to-know.   Moreover, the entry of PM USA's confidentiality order would not prejudice Plaintiffs.  The order does not prevent Plaintiffs from obtaining or using Highly Confidential materials in this litigation; it is merely designed to ensure that such materials are not publicly disseminated.

5.     **Privilege Protocol**

**Exhibit C** is a jointly proposed order with disputed language in brackets.  The parties are prepared to discuss the disputed areas at the CMC.  Below is a summary of each issue in dispute and the parties' respective positions:

a.     **Use of Disputed Privileged Materials [Paragraph 8]**

**Plaintiffs' Position**

Defendants take the position that Plaintiffs may not use a clawed back document to challenge a privilege claim as to that document. Rule 26(b)(5)(B) allows a challenging party to "promptly present the [clawed back] information to the court under seal for a determination of the claim." Preventing the party challenging a clawback from discussing the content of the material in question prevents the parties from fully addressing the contours of the privilege dispute, which would also "essentially hinder the court's ability to make [] a [privilege] determination." *TVIIM, LLC v. McAfee, Inc.*, 2014 U.S. Dist. LEXIS 113104, *9-10 (N.D. Cal. Aug. 14, 2014); *see also United States Home Corp. v. Settlers Crossing, LLC*, 2012 WL 5193835, at *5 (D. Md. Oct. 18, 2012) ("[i]t would be wholly illogical to read Rule 26(b)(5)(B) as prohibiting the use of

1  documents 'subject to a claim of privilege' when resolving that very claim of privilege.").

2  Permitting the use of clawed back material during a privilege challenge will not prejudice the

3  producing party because the opposing party's use of the material is limited to the clawback

4  challenge, all documents that refer to the clawed back materials will be filed under seal, and the

5  ultimate finder of fact—the jury—will only be exposed to the clawed back materials if the

6  opposing party prevails in its privilege challenge

7          **Defendants' Position**

8          Defendants' proposal does not prevent the Court from considering a clawed back

9  document in connection with a privilege challenge.  Instead, Defendants' proposal simply

10  requires the challenging party to set forth a sufficient basis that a privilege does not exist before a

11  document over which privilege has been asserted may be submitted for *in camera* review.  *See*

12  *U.S. v. Zolin*, 491 U.S. 554, 572 (1989) (before *in camera* review is allowed, a court should

13  require the challenger to set forth a factual basis adequate to support a good faith belief that a

14  privilege does not exist).  This procedure is important given the sensitive nature of privileged

15  documents, and to avoid unfair prejudice and burden on the court.  Where possible, privilege

16  disputes are decided based only on the log entry and materials and authority provided by the

17  parties.  But if, upon review of evidence supporting the assertion of privilege, the Court deems

18  that it needs an *in camera* review to decide the issue, it then has discretion to order it.

19          Federal Rule of Civil Procedure 26(b)(5)(B) does not require otherwise.  Rule 26(b)(5)(B)

20  states that "[i]f information produced in discovery is subject to a claim of privilege or of

21  protection as trial-preparation material . . . a party . . . may promptly present the information to

22  the court under seal for a determination of the claim."  Under Defendants' proposal, the clawed

23  back information may be provided to the Court for *in camera* review, subject only to the

24  limitation that the challenger provides a factual basis adequate to support a good faith belief that a

25  privilege does not exist, as set forth in *Zolin*.

26          b.      **Categorical Privilege Logs [Paragraph 20]**

27          **Plaintiffs' Position**

28          The use of categorical privilege logs invites overly generalized assertions of privilege.

1    Although a set of documents may address the same subjects, the operative privilege question

2    turns on the lawyer's involvement in specific communications or documents at issue. Categorical

3    logs often are insufficiently detailed for the receiving party to fully assess the privilege claim as

4    to each of the documents within the category. Defendants' request to categorize documents based

5    on "content" is illustrative, as it provides little insight into the circumstances in which categorical

6    logging might be appropriate. *See Narayan v. EGL, Inc.*, 2006 WL 3050851, at *2 (S.D. Cal. Oct.

7    24, 2006) (denying request for categorical privilege logging where the party failed to provide "the

8    court a picture of the categorical scheme that might be employed").

9         **Defendants' Position**

10        Categorical privilege logging will further the Court's and parties' shared goals of efficient

11    and cooperative litigation by expediting productions of privilege logs (and thus the identification

12    and resolution of any potential privilege disputes), while also reducing undue expense on the

13    litigants.  Categorical privilege logging is endorsed by the premier authorities in this space.  *See*

14    *The Sedona Conf. Princs., Third Ed.: Best Pracs., Recommendations & Princs. for Addressing*

15    *Elec. Document Prod.*, 19 Sedona Conf. J. 1, at 158 (2018) (recommending parties consider

16    alternative methods that reduce privilege review burdens and expedite production, such as:

17    "whether to propose categories of information that are highly likely to be privileged or

18    protected").

19        Plaintiffs' concern that categorical logging is contrary to Rule 26 is misplaced.  The

20    Advisory Committee Notes to Rule 26 similarly encourage categorical privilege logs. *See* Fed. R.

21    Civ. Pro. 26(b)(5) Advisory Committee Note ("Details concerning time, persons, general subject

22    matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome

23    when voluminous documents are claimed to be privileged or protected, ***particularly if the items***

24    ***can be described by categories***." (emphasis added)).   Courts in the Ninth Circuit and elsewhere

25    have repeatedly approved of the categorical approach as an appropriate alternative to traditional

26    document-by-document logging.  *See, e.g.,  Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6

27    (C.D. Cal. May 3, 2013) ("Rule 26(b)(5) does not require a document-by-document privilege

28    log."); *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 478-79 (S.D. Cal. 1997) (finding a traditional

1    document-by-document privilege log to be unduly burdensome and inappropriate in a case

2    involving multiple parties and voluminous discovery); *Narayan v. EGL, Inc.*, 2006 WL 3050851,

3    *2 (N.D. Cal. Oct. 24, 2006) (noting that "categorical descriptions of privileged documents may

4    be appropriate in situations where the volume of privileged documents is demonstrably large");

5    *Teledyne Instruments, Inc. v. Cairns*, 2013 WQL 5781274, at *16 (M.D. Fla. Oct. 25, 2013)

6    ("The sufficiency of a categorical privilege log turns on whether the categories of information are

7    sufficiently articulated to permit the opposing party to assess the claims of privilege or work

8    product protection."); *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20 1996)

9    (noting that categorical logs are appropriate where "(a) a document-by-document listing would be

10   unduly burdensome and (b) the additional information to be gleaned from a more detailed log

11   would be of no material benefit to the discovering party in assessing whether the privilege claim

12   is well grounded."); *Holley v. Gilead Sciences Inc.*, No: 3:18-cv-06972-JST, Dkt. 72 ESI Order

13   (N.D. Cal. May, 7, 2019) (order permitting privileged documents "to be identified on a privilege

14   log by category, rather than individually").

15          Finally, Plaintiffs' concerns are misplaced.  Defendants have no objection providing "a

16   description of the nature or general subject matter of the communications" in any categorical log

17   and the proposed language in the protective order to address this concern.  In addition, if the

18   discovering parties believe a categorical log is "insufficiently detailed for the receiving party to

19   fully assess the privilege claim as to each of the documents within the category" (Plaintiffs'

20   Position, above), Plaintiffs may raise those issues with Defendants and they could be addressed

21   by agreed revisions or Court guidance if necessary.

22                      c.      **Claw-Backs and Continued 502(d) Protection [Paragraph 10]**

23              **Plaintiffs' Position**

24          Defendants object to the potential waiver of Rule 502(d) protections for a late-delivered

25   clawback notice. But without such a provision, the deadline for submitting a clawback notice

26   becomes illusory. Although 502(d) relaxes the default rules on when parties must assert claims of

27   privilege or risk waiver, it is impractical to allow parties to indefinitely defer asserting claims of

28   privilege for deposition testimony and documents used in depositions and briefs. If a party makes

an unreasonably late assertion of privilege over such testimony and documents, the opposing

party should at a minimum have the right to argue that the privileged has been waived.

### Defendants' Position

Plaintiffs' conflation of clawback timing issues with the application Federal Rule of Evidence

502(d) is misguided. Rule 502(d) does not specifically relate to inadvertent productions or timing

issues. It instead provides that "[a] federal court may order that the privilege or protection is not

waived by disclosure connected with the litigation pending before the court — in which event the

disclosure is also not a waiver in any other federal or state proceeding."  Plaintiffs cite no

authority (and Defendants have located none) placing a time limit on the operation of a federal

rule that grants a federal court authority to make certain orders with respect to privileges and

protections.  On the contrary, myriad MDL courts have entered Rule 502(d) orders without this

unprecedented provision.  *See, e.g., In re: 3M Combat Arms Earplug Prods. Liability Litig.*, No.

3:19-md-2885 (MDL2885) Dkt. 442 (Pretrial Order No. 9) at 11 (N.D. Fl. June 17, 2019) (placing

no expiration on the protections of Rule 502(d), and stating "[t]his Protective Order shall be

interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)"); *In*

*re: TESTOSTERONE REPLACEMENT THERAPY PRODS. LIABILITY LITIG.*, No. 14-C-1748

(MDL No. 2545), Dkt. 1682 (Case Mgmt. Order No. 8) (N.D. IL January 18, 2017) (placing no

expiration on the protections of Rule 502(d)); *In re: General Motors LLC Ignition Switch Litig.*,

No. 14-MD-2543 (MDL 2543) Dkt. 294 (Order. No. 10) (S.D. NY September 10, 2014) (same;

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, No.

3:1-md-02672 (MDL 2672) Dkt. 1387 (Pretrial Order No. 16) (N.D. CA March 29, 2016)

(same).  Plaintiffs' request to remove 502(d) powers and protections in the event counsel is

unable to confirm the assertion of privilege and submit a Clawback Notice in within a five-day

window is unsupported and should be rejected.

d.    **Rolling Privilege Log Productions [Paragraph 14]**

**Plaintiffs' Position**

Defendants' proposal to defer providing any privilege log until all document productions are complete would substantially extend the timeline for completing discovery and for the litigation overall. The review of privilege logs and reaching resolution on related disputes are time-intensive tasks. Under Defendants' proposal, that process will not even begin until all productions of documents and ESI are complete. The cascading effects of Defendants' proposed delay in providing privilege logs would include delayed supplemental document productions based on resolution of privilege disputes and attendant witness examinations. Under Plaintiffs' proposal, by contrast, the parties would produce privilege logs within thirty days of each production, which will also allow them to address privilege disputes on a rolling basis throughout the course of discovery, resulting in the far more expedient conduct of discovery. De-duplication technology can easily identify duplicate documents produced in separate productions, which will alleviate any concerns about multiple privilege log entries for a single document.

**Defendants' Position**

As an initial matter, Defendants do **<u>not</u>** propose to "defer providing any privilege log until all document productions are complete." (Pls. Position, above)  Instead, Defendants' proposal states that "[w]ithin thirty (30) days of production of documents or ESI, the producing party shall provide a privilege log or logs concerning any information that has been redacted or withheld in who or in part."  This is in contrast to Plaintiffs' proposal, which would require each party to provide a separate privilege log for each separate production.  Defendants' proposal, on the other hand, allows the parties to produce a single privilege log that identifies that documents that were withheld over the course of several productions, consistent with the timeline outlined above.   This approach would allow Defendants to identify duplicate and similar documents that were withheld on multiple occasions and to log those documents once.  Such an approach would be more efficient and cost-effective and would result in shorter privilege logs by limiting the number of duplicate entries.  In addition, allowing privilege logs to include documents from multiple productions would enhance the Defendants' ability to prevent inadvertent production and reduce the potential need to rely upon claw-back provisions.

e.      **Inclusion of Document Title in Privilege Logs [Paragraph 15(c)]**

**Plaintiffs' Position**

The inclusion of a privilege log field for document title serves an important purpose. Document titles often reveal information that is highly relevant to a receiving party's evaluation of a privilege claim. An email subject line may, for example, reveal that the email concerned revenue analyses that are unlikely to involve privileged advice. And because Plaintiffs propose that the document title only be provided if it is contained in the document's metadata (which it nearly always is), a document title field can be systematically included in privilege logs with little burden to the logging party. If Defendants claim that any document title or subject line itself reveals privileged information, they may so note on the privilege log.

**Defendants' Position**

Plaintiffs' proposal is overbroad and finds no basis in the Federal Rules of Civil Procedure. Rule 26(b)(5) requires that when a party withholds information by claiming that it is privileged, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, *without revealing information itself privileged or protected*, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5) (emphasis added). Plaintiffs' proposal would require disclosure of a document title or email subject line, even when that information may itself be privileged. Such a requirement would be inconsistent with the manner in which courts have traditionally treated privileged information that is present in an email subject line or document title. *See, e.g.*, *In re Application of Chevron Corp.*, 2013 WL 11241413, at *7 (D.D.C. Apr. 22, 2013) (permitting redaction of email subject line where subject line "itself may be fairly read as reflective of counsel's legal theories"). Section 15(d) of the parties' proposed 502(d) order already requires any privilege log to contain a description of the document, including a factual basis sufficient to support any claim that the document is privileged and/or protected. This provision ensures that the parties, and the Court, are presented with adequate information to assess any assertions of privilege without risking the inadvertent and unnecessary disclosure of privileged information contained in document titles and email subject lines.

1          f.      **Witness Availability [Paragraph 9]**

2          **Plaintiffs' Position**

3          If a producing party directs a witness not to answer a question because the party wishes to

4   claw back material used during a deposition, and the privilege claim is then denied by the Court,

5   the producing party should be required to promptly re-produce the witness at its expense, instead

6   of deferring the deposition for weeks or months after the Court's order. If Defendants wish to

7   avail themselves of the protections of a Rule 502(d) order, they should be prepared to mitigate the

8   additional burdens on the parties that a 502(d) agreement and attendant clawbacks create, in this

9   case by promptly re-producing a witness for a deposition at their expense. Plaintiffs are prepared

10  to do the same.

11         **Defendants' Position**

12         It is premature to cabin the remedies for yet-to-occur hypothetical deposition interferences

13  related to privilege disputes. Paragraph 7, to which the parties have mostly agreed, sets forth a

14  Clawback challenge and briefing process.  Defendants expect that any requested relief sought for

15  deposition interference related to privilege disputes would be specifically described in the

16  appropriate context in the briefing Paragraph 7 requires.  The discovering party may, for example,

17  not wish to take the deposition with 14 days, or may not wish to re-depose the individual at all.

18  Defendants' believe if and when this situation occurs, the parties will be able to reach an

19  agreement with respect to when and if  the witness should be reproduced the witness, and if they

20  cannot reach an agreement may seek guidance with the Court.

21         g.      **Timing for Raising Privilege Challenges [Paragraph 7]**

22         **Plaintiffs' Position**

23         The parties agree that raising a clawback challenge with the Court includes four steps: (1)

24  the challenging party's notice of an intention to challenge the clawback, (2) the producing party's

25  response, (3) the parties' meet and confer, and (4) submission of a joint discovery letter.

26  Defendants propose that the parties be allowed 15 business days to complete *each* of the four

27  steps, meaning it would take as long as *sixty business days*—or twelve weeks—for the parties to

28  present a dispute to the Court after service of a clawback notice. Defendants' proposal is simply

1  too protracted, particularly in this case, where the prompt completion of discovery is paramount.

2  Under Plaintiffs' proposal, disputes would be submitted to the Court within 24 business days of

3  the issuance of a clawback notice, with the objective of allowing the parties to raise disputes in

4  advance of the Court's next scheduled monthly status conference. To the extent a party believes

5  more fulsome briefing is necessary, it can make that request. *See* Standing Order for Civil Cases §

6  4 (noting that the Court will advise the parties if further briefing is necessary after the submission

7  of a joint statement).

8              **Defendants' Position**

9              Defendants agree that discovery disputes, including those related to privilege assertions,

10  should be resolved expeditiously.  However, that goal must be balanced against due process and

11  other concerns, particularly where privileges are in dispute. The United States Supreme Court has

12  recognized the importance of privilege to the proper functioning of the American legal system.  In

13  *Upjohn Co. v. United States*, the Court observed:

14              The attorney-client privilege is the oldest of the privileges for confidential
              communications known to the common law. 8 J. Wigmore, Evidence § 2290
15              (McNaughton rev. 1961). Its purpose is to encourage full and frank
              communication between attorneys and their clients, and thereby promote broader
16              public interests in the observance of law and administration of justice. The
              privilege recognizes that sound legal advice or advocacy serves public ends and
17              that such advice or advocacy depends upon the lawyer's being fully informed by
              the client.
18

19  449 U.S. 383, 389 (1981), Plaintiffs' abbreviated schedule for addressing privilege clawbacks

20  threatens the parties' ability to protect their privileged documents.  JLI has proposed that a

21  receiving party may contest a producing party's clawback notice within 15 business days, the

22  producing party would have 15 business days to respond, and the parties would meet and confer

23  within 15 business days thereafter, and then if the parties did not resolve the dispute they would

24  submit a joint letter brief to Your Honor within 15 business days after the meet and

25  confer.  (Privilege Order, para. 7.)  Thus, the time elapsed from the receiving party's challenge

26  until the issue would be fully briefed before the court would be at most 45 business days.  This

27  time would be well used, providing time to investigate issues that may come up with respect to

28  the facts surrounding a privilege challenge and facilitating a meaningful meet and confer process

as envisioned by Federal Rule 37(a)(1).  The time is particularly necessary in the event multiple

documents requiring investigation are subject to the clawback notice.  By contrast, Plaintiffs

argue for less than half these time periods, proposing an unnecessarily short timeline to address

privilege clawback disputes.   For example, Plaintiffs demand only 5 days within which the

parties may meet and confer following the receipt of a "Notice of Clawback Challenge," and only

5 days within which the parties may submit their joint letter on the dispute.   Defendants believe

this timeline is impractical and will lead to repeated requests for extensions of time.

### 6.    **Other Case Management Orders Under Discussion**

The parties agree that there are other areas in this litigation that may benefit from Case

Management Orders.  With this in mind, the parties have engaged in discussions regarding

protocols for: (1) resolving discovery disputes (Discovery Dispute Resolution Order), (2)

deposition proceedings (Deposition Protocol), and (3) cooperation with the parallel state court

proceedings (Federal State Cooperation Order).  The parties have exchanged initial drafts, are

working cooperatively to resolve their disagreements, and will promptly bring any issues that

reach impasse to the Court's attention.

### 7.    **Discovery Planning**

#### a.    **JLI's Production of Documents Previously Produced to Government Entities**

**Plaintiffs' Position**

In its September 10 order, the Court stayed all proceedings in *Colgate* pending the transfer

order of the JPML "other than the production of documents pursuant to the Stipulation the Court

entered on August 20, 2019." ECF 149. The Stipulation the Court entered on August 20 provided

for the batch confidentiality designation of any document JUUL had previously produced to a

governmental agency, regulator, or other entity, and required JUUL to produce "at least 10,000

such documents" within four business days of entry of the Order. ECF 138. JUUL was also

required, under the terms of the Stipulation, to provide a description of the number and categories

of previously produced documents that JUUL has withheld in this matter.

JUUL produced approximately 100,000 documents, and on September 27 sent a letter to

plaintiffs' counsel in *Colgate* explaining that JUUL had withheld from production 50,000 documents that it had previously produced to a governmental body. JUUL identified more than 10 categories of withheld documents*,* including key materials like "[a]ll offering materials, pitch books and/or presentations in connection with any fundraising effort by JLI between 2007 and the present" and the results of clinical trials "relating to whether JUUL helps smokers quit smoking combustible cigarettes." As to relevance, JUUL cryptically says it "does not concede that any of the documents [withheld] … are relevant to the subject matter of this litigation," but it also does not "necessarily contend that any of the documents [withheld]… are *not* relevant …."

Plaintiffs have asked JUUL to clarify its position, including as to relevance and the grounds for withholding categories of documents, and the status of any forthcoming productions. Plaintiffs contend that given the urgent nature of this litigation, JUUL must promptly produce in this MDL all documents that it has previously provided to government regulators.

Given that JUUL has already produced these documents, there should be no reason for delay. Within ten (10) days of the Court's entry of a protective order, JUUL should produce all documents produced to state Attorneys General. Thereafter, JUUL should initiate a rolling production of all documents provided to all other regulatory agencies, to be completed within six weeks of the Court's entry of a protective order. To facilitate these productions, JUUL may batch-designate all documents Confidential (and add any appropriate Highly Confidential designations as necessary and appropriate), subject to and without any limitation or restriction on Plaintiffs' right to challenge certain designations.

**JLI's Position**

This litigation arrives against the backdrop of ongoing significant efforts to collect and produce documents to the federal government, federal agencies and various state attorneys general. The process involves the collection and production of information from dozens of custodial and non-custodial sources and is likely to take several additional months to complete. JLI agrees that many documents that have been or will be produced to regulators or government agencies will be relevant and discoverable in this MDL. JLI has already produced over 400,000 pages of documents in the pre-MDL *In re JUUL* (*Colgate*) litigation and made those available to

1     plaintiffs' interim leadership team in this litigation.  JLI also commits to producing on a rolling

2     basis additional documents that have been produced to government entities, as set forth below.

3     JLI notes, however, that it does not necessarily agree that every document produced to any

4     government agency or regulator can or should be produced in this litigation, and reserves the right

5     to exclude or object to certain production requests if and when appropriate.  *See Fort Worth*

6     *Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110 (S.D.N.Y. 2013) (plaintiffs

7     "are not entitled to all documents [] that the defendants have turned over to 'any government

8     body or agency.'").

9            Subject to this reservation of rights, JLI is prepared to produce on a rolling basis (starting

10    shortly after the MDL protective, ESI protocol, and privilege orders are entered), additional

11    documents produced on or before November 30, 2019 to Congress, FTC, FDA, or any State

12    Attorney General in connection with any such entity's investigation or inquiry into JLI's sales

13    and marketing practices.  This would be a substantial production.  To accomplish this accelerated

14    production, JLI requested that the parties agree to a stipulation like that entered in *Colgate*.  *See*

15    *Colgate* Dkt. 138.  In that stipulation, Plaintiffs' counsel agreed that JLI could batch designate

16    documents previously produced to government entities as Highly Confidential, and agreed to

17    limit any designation challenge to no more than 10% of the batch-designated documents produced

18    by JLI.  *Id.*  This allowed JLI to produce documents on an expedited basis, and over the next

19    month, JLI produced over 400,000 pages of documents to the *Colgate* Plaintiffs (now available to

20    the MDL Plaintiffs' Interim Leadership).  If the MDL Plaintiffs agree to a similar stipulation, JLI

21    expects it will begin an expedited production on a rolling basis within three weeks after a

22    protective order and ESI protocol are entered in this case.

23           While JLI appreciates that Plaintiffs' counsel are open to the idea of batch tagging, their

24    proposal is unworkable for two reasons.  *First*, Plaintiffs' counsel propose that all documents to

25    be produced would be batch tagged "Confidential," not "Highly Confidential."  This would

26    undoubtedly lead to some highly sensitive documents that should be accorded "Highly

27    Confidential" protection being produced as "Confidential."  This poses a concrete risk of harm to

28    JLI., which has highly sensitive business and competitive information that it needs to protect..

For any batch tagging proposal to be effective, it would need to apply the highest level of protection (as was done in *Colgate*).  *Second*, Plaintiffs' counsel reserve the right to challenge the confidentiality designation as to an unlimited number of documents produced under this agreement.  Such a challenge would be immensely burdensome to JLI, as it could require JLI to respond to a confidentiality challenge for a substantial number of documents (necessitating a confidentiality review of those documents) within an unreasonably or impractically short period of time.  The parties in *Colgate* agreed to a limit of 10% of the batch-tagged documents that could be challenged, balancing Plaintiffs' counsel's reasonable need to modify the batch-tagging designation for a specific set of documents with the burden on JLI.  A similar agreement would be necessary to make any batch-tagging procedure effective and fair here.

Finally, JLI notes that if there is no batch-tagging provision and JLI must designate documents with varying confidentiality designations at the time of production, it will necessarily take time to do so given the volume of documents at issue.  Further, Plaintiffs' suggestion that JLI must make all of these documents available in 10 days is simply impossible under any scenario.  Importantly, that the company is presently undertaking the review of documents and productions to multiple attorneys general and agencies.  JLI is committed to working diligently to produce documents in this case, but the timing must reflect the substantial amount of work to be done

JLI will continue to review and meet-and-confer with Plaintiffs on additional re-productions of materials provided to government agencies or regulators on an accelerated and good-faith basis.

                    b.      **Altria's Production of Documents Previously Produced to Government Entities**

**Plaintiffs' Position**

Altria has been named as a defendant in over 60 actions in addition to being served with a subpoena in the *Colgate* action.  All three groups of plaintiffs—the individual class actions, personal injury actions, and actions by government entities—are asserting claims against Altria. For example, the government entities are asserting public nuisance and RICO claims against Altria based on its actions to maintain and expand JUUL's market share, despite its knowledge

that this market share is based on youth purchases as a result of JUUL's unlawful targeting of minors.  In late 2018, Altria invested $12.8 billion in JUUL while pledging to help JUUL expand its reach and efficiency.  Plaintiffs have alleged that while Altria is working to expand JUUL's reach, it is also promoting a misleading "harm-reduction" narrative claiming that the JUUL device is a smoking cessation tool and taking steps to guide JUUL through regulatory tumult and ensure that sales continue to grow.  Accordingly, discovery related to Altria's involvement in maintaining and expanding sales of the JUUL device and its knowledge of and communications regarding the youth vaping epidemic is highly relevant to Plaintiffs' claims.

As an initial step, Altria should produce in this MDL, within ten days after the date the protective order is entered, the documents it has already produced to Senator Durbin and his colleagues in response to their document requests dated October 1, 2019.  In addition, Plaintiffs will seek discovery from Altria on topics that include the following:

- Altria's initial decision to reach out to JUUL;
- the discussions between Altria and JUUL that had commenced by early 2017;
- the basis for Altria's October 25, 2018 letter to the FDA implicitly criticizing JUUL's product and its marketing tactics;
- the basis for Altria's October 25, 2018 statement to the FDA that pod-based products were part of the problem of youth vaping;
- Altria's own e-cigarette products and its decision to remove its own pod-based and other products from the market;
- Altria's decision to make a $12.8 billion investment in JUUL, the company outselling everyone with its pod-based product;
- Altria and JUUL's March 2019 meeting with the FDA; and the services agreement and assistance that Altria is currently providing to JUUL.

**Altria's Position**

Altria will produce the materials provided to Senator Durbin once the parties have entered into a protective order, and will respond to any future discovery requests from plaintiffs if and when plaintiffs make them.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.   **Insurance Policies**

JLI will produce "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment," as set forth in Rule 26(a)(1)(A)(iv), within two weeks, as long as a protective order and ESI protocol have been entered in this case by that time.

### d.   **Other Discovery Issues**

The parties met and conferred concerning whether the parties will consent to service of discovery requests and responses by email; and possible vendor(s) for depositions and exhibits. The parties will continue to seek agreement on the open issues and will be prepared to update the Court on their progress.

Plaintiffs have also raised whether any preservation issues should be addressed.  JLI contends that any issues relating to preservation should be addressed in the context of the procedure set forth in the forthcoming ESI Protocol.

Plaintiffs have also raised whether JLI can compile basic product sales information, *i.e.* dates on which and areas in which certain JUUL products were marketed.  Producing this basic information at the outset is helpful for streamlining further claims and focusing discovery.  *See, e.g.*, Manual for Complex Litigation, Fourth, § 22.631 ("Consider directing the defendants to compile information, such as the dates on which and areas in which each defendant marketed a particular product, so that plaintiffs can identify the proper defendants.").  Plaintiffs note that this data is also of value in any future efforts to reach a global settlement based upon the volume of sales in the respective locales (the comparable ARCOS data in the Opioid MDL has been very useful in creating an allocation map).  It is also in keeping with the Court's admonition that the parties "work together" to exchange needed information "as soon as possible," even before service of "a single document request in the MDL."  (11/8/19 Hr'g Tr. at 102:7–14.)

JLI contends that Plaintiffs' request for sales information should be addressed within the context of specific requests for production.

### 8.   **Vendors**

Plaintiffs submitted requests for proposal to several potential vendors to host and manage

ESI and hard-copy documents for Plaintiffs.  As of December 3, 2019, Plaintiffs have received responses from six companies and are evaluating the proposals.  Plaintiffs will be prepared to update the Court regarding their progress on making recommendations.

         9.    **Status of Case Filings**

To date, more than 150 cases have been transferred to the MDL.  Of those, more than 120 cases assert individual claims for personal injuries, including addiction, seizure, stroke, lung injury, mental health/behavioral issues, death, false advertisement, and other physical injuries. There are more than 30 putative class actions, asserting claims including false advertisement, violation of state laws, racketeering, public nuisance, and personal injuries such as addiction, seizure, and lung injury. More than 20 actions have been filed on behalf of a government entity, with claims including racketeering, public nuisance, and violation of state laws.  Each of these cases names JLI as a defendant and six of them also name Altria and/or PM USA.

        10.    **State Court Proceedings**

The parties agree that cooperation with the parties in the parallel state Judicial Counsel Coordination Proceeding ("JCCP") No. 5052 and other cases pending in state courts will increase efficiency and help move this matter effectively toward resolution.

The JCCP case has been assigned to Judge Anne Jones in Los Angeles Superior Court. An initial conference has not yet been set.  Currently, there are more than 50 cases pending in California state court; six (6) have been coordinated and the remainder are subject to add-on petitions to be determined by Judge Jones.  Plaintiffs' Interim Counsel have conferred with counsel who are active in the JCCP proceedings to discuss opportunities for cooperation.

Six state Attorneys General have also filed suit against JLI in their respective state courts: North Carolina, California, New York, Mississippi, the District of Columbia, and Minnesota. While these cases are not part of the MDL, the parties agree that it is important to cooperate with any actions brought by the state attorneys general and the MDL in order to increase efficiency and avoid duplication of effort.

1   **V.     ADR**

2          Pursuant to Civil Local Rule 16-10(d), the parties report that ADR is not yet appropriate

3   given the preliminary state of the proceedings.

4

5   Dated:  December 6, 2019                    Respectfully submitted,

6

7   By: /s/ *Austin V. Schwing*                 By: /s/ *Sarah R. London*

8   **GIBSON, DUNN & CRUTCHER LLP**            Sarah R. London
                                                **LIEFF CABRASER HEIMANN &**
9                                               **BERNSTEIN**
    Austin V. Schwing, SBN 211696               275 Battery Street, Fl. 29
10  Joshua D. Dick, SBN 268853                  San Francisco, CA 94111
    Peter C. Squeri, SBN 286249                 Telephone:  (415) 956-1000
11  555 Mission Street, Suite 3000
    San Francisco, CA 94105-0921
12  Telephone: 415.393.8200
    Facsimile: 415.393.8306
13  aschwing@gibsondunn.com

14                                              By: /s/ *Dena C. Sharp*
    Deborah L. Stein, SBN 224570
15  333 South Grand Avenue
    Los Angeles, CA 90071-3197                  Dena C. Sharp
16  Telephone: 213.229.7000                     **GIRARD SHARP LLP**
    Facsimile: 213.229.7520                     601 California St., Suite 1400
17                                              San Francisco, CA 94108
                                                Telephone: (415) 981-4800
18  -and-

19  Renee D. Smith (*pro hac vice*)
    Mike Brock (*pro hoc vice*)
20  **KIRKLAND & ELLIS LLP**
21  300 N. LaSalle
    Chicago, IL 60654
22  Telephone: (312) 862-2310

23  -and-

24  David M. Bernick (*pro hac vice*)
25  **PAUL, WEISS, RIFKIND, WHARTON &**
    **GARRISON LLP**
26  1285 Avenue of the Americas
    New York, NY 10019-6064
27

28  *Attorneys for Defendant Juul Labs, Inc.*

- 21 -

By: */s/ John C. Massaro*

**ARNOLD & PORTER KAYE SCHOLER LLP**

John C. Massaro (admitted pro hac vice)
601 Massachusetts Ave., N.W.
Washington D.C.  20001
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
john.massaro@arnoldporter.com

*Attorneys for Defendants Altria Group, Inc.
and Philip Morris USA Inc.*

By: */s/ Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

By: */s/ Ellen Relkin*

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Plaintiffs' Interim Counsel*