BOERSCH & ILLOVSKY LLP
Martha Boersch (State Bar No. 126569)
martha@boersch-illovsky.com
Eugene Illovsky (State Bar No. 117892)
eugene@boersch-illovsky.com
Matthew Dirkes (State Bar No. 255215)
matt@boersch-illovsky.com
Kevin Calia (State Bar No. 227406)
kevin@boersch-illovsky.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
Adam Bowen

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| This Documents Relates to:<br><br>ALL ACTIONS | **DEFENDANT ADAM BOWEN'S NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS OF CALIFORNIA SUBCLASS PURSUANT TO RULES 9(b) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: September 21, 2020<br>TIME:  9:00 a.m.<br>CTRM: 2, 17th floor |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 21, 2020, at 9 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2, Defendant Adam Bowen will and hereby does move to dismiss the purported class claims under California law against him, as set forth in the Amended Consolidated Class Action Complaint (ECF No. 679), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Bowen also has joined the arguments in support of defendant JUUL Labs, Inc.'s Motion to Dismiss (#4) (ECF No. 629). This motion is without prejudice to all of Bowen's other preserved motions in this Multidistrict Litigation.

This Motion is based on this Notice of Motion, the Memorandum of Points of Authorities, any Reply Memorandum, the Motions to Dismiss filed by other defendants, Joinders filed by Bowen, the pleadings and files in this MDL, and on such other additional matters and argument that may be presented to the Court at or before the hearing on the matter.

Dated: June 29, 2020

BOERSCH & ILLOVSKY LLP
MARTHA A. BOERSCH
EUGENE ILLOVSKY
MATTHEW DIRKES
KEVIN CALIA

 /s/Eugene Illovsky
Eugene Illovsky

Attorneys for Defendant
Adam Bowen

**TABLE OF CONTENTS**

ISSUES TO BE DECIDED ................................................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I. INTRODUCTION AND SUMMARY OF ARGUMENT .....................................................1

II. FACTUAL BACKGROUND ................................................................................................1

    A. Bowen's History and Role at the Company..................................................................1

    B. Plaintiffs Have Not Alleged that Bowen Made False Advertising Statements .....................3

    C. Alleged Targeting of Underage Users ..........................................................................4

    D. Pertinent Allegations of California Plaintiffs ...............................................................4

III. LEGAL ARGUMENT............................................................................................................6

    A. Rules 9(b) and 12(b)(6)..................................................................................................6

    B. No Violation of Section 17200 by Bowen is Alleged....................................................6

        1. Directors and Officers Cannot Be Vicariously Liable for a Company's Unfair Competition Under Section 17200.................................................................7

        2. Bowen Must Have Had "Personal Participation" in the Acts of Alleged Unfair Competition that Violate the Statute..............................................................8

        3. Bowen Did Not Have "Unbridled Control" Over the Practices That Allegedly Violate Section 17200......................................................................................9

        4. There is No Entitlement to Restitution from Bowen ....................................................10

IV. CONCLUSION......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
  2013 U.S. Dist 138897 (2013) ......................................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 6

*Casey v. Olsson*,
  No. 09-cv-1111, 2010 U.S. Dist. LEXIS 93222 (S.D. Cal. Sept. 8, 2010) .................. 9, 10

*Cheverez v. Plains All American Pipeline L.P.*,
  2016 WL 4771883 (C.D. Cal. Mar. 4, 2016) ................................................................. 11

*Emery v. Visa International Services Association*,
  95 Cal. App. 4th 952 (2002) ......................................................................................... 8, 9

*In re Gilead Sciences Securities Litigation*,
  536 F.3d 1049 (9th Cir. 2008) ......................................................................................... 6

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................................. 6, 7

*Kearns v. Ford Motor Co.*,
  567 F. 3d 1120 (9th Cir. 2009) ........................................................................................ 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .............................................................................................. 7, 10

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ..................................................................................................... 7

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) .......................................................................................... 7

*McKell v. Washington Mutual, Inc.*,
  (2006) 142 Cal.App.4th 1457 ...................................................................................... 7, 10

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ........................................................................................... 8, 10

*Perfect 10, Inc. v. Visa International Services Association*,
  494 F.3d 788 (9th Cir. 2007) .................................................................................. 8, 9, 10

*San Francisco Residence Club, Inc. v. Amado*,
  773 F.Supp. 2d 822 (N.D. Cal. 2011) ...........................................................................................8

*Usher v. City of Los Angeles,*
  828 F.2d 556 (9th Cir. 1987) ........................................................................................................6

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................................................6

**Statutes**

Cal. Bus. Prof. Code § 17200 *et seq.* ..........................................................................................1, 6, 9

Fed. R. Civ. P. 9(b) ..........................................................................................................................v, 1, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................v, 6

iv                MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 9(b) and 12(b)(6)
Case No.: 19-md-02913-WHO

**ISSUES TO BE DECIDED**

1. Whether the plaintiffs' class claims under California's Unfair Competition Law against Adam Bowen should be dismissed because the allegations lack the necessary particularity required by Federal Rule of Civil Procedure 9(b).

2. Whether the plaintiffs' class claims under California's Unfair Competition Law against Adam Bowen should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, including because the plaintiffs do not allege that Bowen personally participated in and controlled the conduct that allegedly violated the statute.

3. Whether the plaintiffs' class claims for unjust enrichment under California law should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because no such cause of action is recognized in California.

4. Whether the plaintiffs have alleged a legal theory under which they could be entitled to restitution from Bowen personally.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The purported class claims under California law against Defendant Adam Bowen should be dismissed. Those state law claims are not pled as to him with the particularity required by Federal Rule of Civil Procedure 9(b). Moreover, there are no allegations of the personal participation and control over the allegedly violative conduct that are required to hold an individual officer or director personally liable under California Business and Professions Code section 17200 (or "UCL"). Nor are there allegations that would support restitution or other relief against Bowen.

## II. FACTUAL BACKGROUND[1]

Defendant Adam Bowen, a Bay Area resident, co-founded JUUL Labs, Inc. ("JLI"). Amended Consolidated Class Action Complaint, ECF No. 679, ("Compl.") ¶ 20. The story of JLI and his role there can be gleaned from the Complaint despite Plaintiffs' overwrought mischaracterizations of the company's purposes and the intent of its founders, executives, and directors.

### A. Bowen's History and Role at the Company

Bowen and his co-founder James Monsees met in graduate school at Stanford. Bowen graduated in 2005 with a Master of Sciences in mechanical engineering, having interned in 2004 to get some "experience as a design engineer at Apple." Compl. ¶ 132

Bowen and Monsees first presented the idea that would become JUUL Labs as a thesis on product design while they were at Stanford. Compl. ¶ 63 They had set their sights on more than just a good grade. Rather, their vision is now reflected in JLI's published "Mission Statement":

> Our mission is to transition the world's billion adult smokers away from combustible cigarettes, eliminate their use, and combat underage usage of our products.
>
> We envision a world where fewer adults use cigarettes, and where adults who smoke cigarettes have the tools to reduce or eliminate their consumption entirely, should they so desire.

Compl. ¶ 77.

---

[1] This discussion is drawn on the allegations in the Amended Consolidated Class Action Complaint and materials cited therein. ECF No. 679.

1        MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 9(b) and 12(b)(6)
Case No.: 19-md-02913-WHO

Despite government restrictions and years of education about the dangers, combustible cigarettes remain the "leading cause of preventable death" in the United States and around the world. Compl. ¶¶ 30, 59. Bowen and Monsees had both been smokers. Compl. ¶¶ 207, 210. They were dissatisfied with the "nicotine replacement therapies" that had been available in the market, such as nicotine patches or gum. Compl. ¶ 205. As a result, they sought to develop a product that satisfied the desires of smokers while reducing some of the problems associated with combustible cigarettes, including the stigma, scent, and additional chemicals that are created by the combustion process. Compl. ¶¶ 75-76 (stigma of smoking); Compl. ¶ 130 ("JUUL emits a reduced aerosol with a nearly undetectable scent"). Other e-cigarettes had struggled "because of the technical challenge of delivering enough aerosolized nicotine to satisfy a smoker's addiction in a palatable form." Compl. ¶ 90. JLI sought to address this "technical challenge."

As JLI's motion to stay (ECF No. 626) shows, federal regulators are heavily involved. The Food and Drug Administration announced as recently as January 2020 that "using its full regulatory authority thoughtfully and thoroughly," it "seeks to strike the right public health balance by maintaining e-cigarettes as a potential off-ramp for adults using combustible tobacco while ensuring that these products don't provide an on-ramp to nicotine addiction for our youth." Compl. ¶ 137, n.148. This balancing is informed by the idea that "[e]-cigarettes are unquestionably safer than traditional smokes, containing fewer toxins than the mélange of 7,000 chemicals found in regular cigarettes." Compl. ¶ 29, n.7. The company recognizes the FDA's "comprehensive plan for tobacco and nicotine regulation that aims to move smokers down the continuum of risk by transitioning them off combustible cigarettes while providing less harmful nicotine delivery options." Compl. ¶ 416, n.493.[2]

As for Bowen, Plaintiffs acknowledge he is a product design engineer who became JLI's Chief Technology Officer, overseeing technology, and product research and development. Compl. ¶ 20. There is no allegation that, as the company's CTO, Bowen had operational responsibility for any of its advertising. He was also "a member of the Board of Directors." Compl. ¶ 20. Sometime

---

[2] On August 8, 2016, the FDA's foundational "deeming" rule established the regulatory authority of the FDA's Center for Tobacco Products over electronic nicotine delivery systems.

around "October 2015," it is alleged, Bowen and Monsees stepped back to allow others "to direct and take control of" the company. Compl. ¶¶ 33-34. At that time, Plaintiffs allege that JLI formed "an Executive Committee" of the Board that did not include Bowen. Compl. ¶ 34.

### B. Plaintiffs Have Not Alleged that Bowen Made False Advertising Statements

Plaintiffs' allegations relating to Bowen relate almost exclusively to his purported role in designing the product and otherwise working at JLI. For example, Plaintiffs allege Bowen was one of the company's "visionaries" in "its early stages." Compl. ¶ 344. He "design[ed] an e-cigarette that could compete with combustible cigarettes on the speed and strength of nicotine delivery," while being "smooth and easy to inhale," Complaint ¶ 4, and "pioneer[ed]" a "nicotine delivery technology." Compl. ¶ 72. They allege that "Bowen and Monsees . . . deliberately create[d] an extremely potent nicotine product that looked nothing like a cigarette." Compl. ¶ 32. To those ends, Bowen was involved in various "pharmacokinetic studies" in 2014 and 2015, and made reports to the Board in 2015. Compl. ¶¶ 101, 109, 171, 172. The "management defendants" and JLI as a group supposedly used gadget-like product design, offered "kid-friendly flavors" and sent "representatives directly to schools." Compl. ¶ 6. The group also used "viral marketing campaigns and social media," for which they hired "young models," used "influencers," and invoked "fun themes." Compl. ¶ 7.

Plaintiffs do allege, however, that Bowen was unable to bring that apparently innovative product to widespread markets. Compl. ¶ 7 ("But achieving widespread adoption of their highly addictive product required resources and expertise beyond those posessed [sic] by Bowen, Monsees or others at JLI."). When "it became clear that Bowen and Monsees could not achieve vision of growing the number of nicotine-addicted e-cigarette users to ensure a base of customers for life through JLI by themselves, the Management Defendants planned a fundamental shift" allegedly allowing others "to direct and take control of JLI and use it to commit the Defendants' unlawful acts." Compl. ¶ 33.

Missing from the Complaint are particularized allegations of any false advertising statements by Bowen. Plaintiffs allege that "JLI and Bowen designed the JUUL product to deliver nicotine in

larger amounts and at a faster rate than even cigarettes, and then knowingly misled the public about those facts." Compl. ¶ 222. The Complaint offers no more specificity as to how Bowen "misled the public," misled the California Plaintiffs, or personally made any false advertising statements. Rather, Plaintiffs simply repeat the conclusory allegation that the management defendants had the "final say" over marketing messaging and campaigns and are thus "directly responsible." Compl. ¶¶ 213, 333, 415.

### C. Alleged Targeting of Underage Users

It is one thing to target — *intentionally* aim at — people under age 18 with one's advertising or product. It is quite another to sell a legal product or use advertising aimed at adults that underage people might incidentally be attracted to. Plaintiffs' allegations conflate the two. For instance, their allegations that JLI targeted underage users boil down to something like: JLI's ads featuring attractive young adults — rather than older, less attractive adults — that people age 25 as well as 17, say, might find appealing, show that the company was "targeting" underage people.

Other than conclusory allegations, nothing in the Complaint shows that Bowen personally intended to, or actually did, target underage users with JLI's product or marketing. Indeed, other than the vague and insufficient allegation that he and the other directors were "responsible" for JLI's advertising, Complaint, ¶ 415, Plaintiffs do not allege how he was involved in any way with advertising, much less in the fashion required to establish liability (as explained below).

### D. Pertinent Allegations of California Plaintiffs

The California class representatives set forth allegations in Appendix A to the Complaint (ECF No. 679-1, "App. A") that purport to show how they "relied on the misrepresentations and/or omissions" in JLI's advertisements. Compl. ¶ 644. None of their allegations adds any contact or interactions with Bowen or any of the other individual defendants.

Bradley Colgate. He smoked for seven years before buying a JUUL product at age 24 in October 2017. App. A 186, 192. He "hated" being a smoker and bought JUUL "in an effort to curtail his nicotine addiction and quit smoking" Marlboros. App. A 186. Though, before purchasing JUUL, Colgate saw at least four Instagram ads warning him JUUL products "contain nicotine" and

1   that "[n]icotine is an addictive chemical." App. A 190. He saw social media posts that included
2   testimonials encouraging him to "switch" and describing JUUL as "an 'alternative' to cigarettes,
3   which he understood to mean not unhealthy and less addictive." App A. 187-188. At least one
4   testimonial warned that JUUL products "contain nicotine" and "[n]icotine is an addictive chemical."
5   App. A 187. Despite the warnings, Colgate alleges none of the ads or labels he saw "adequately
6   disclosed" the addiction risks, amount of nicotine delivered, or health risks. App. A 194.

7   <u>M.D. and C.D.</u>  M.D. is 17 and "started using JUUL in 2015." The "night before" he started,
8   "his friends were peer pressuring him to start JUULing." App. A 269. C.D. is 16 and "[m]irroring
9   the behavior of his big brother" "started using JUUL as well." App. A 272. He gets JUUL products
10  "through M.D. and other older high school students;" their father "does not know where M.D. buys
11  JUUL products." App. A, 276. Although neither M.D. nor C.D. buys at retail locations, they "had
12  seen point-of-sale promotional materials" which among other things "featured images of JUUL's
13  multicolored fruit- and dessert-favored pods" and which they say "materially impacted" their
14  decision to use JUUL. App. A 271. They also saw posts and JUUL promotions on social media, as
15  well as "content from third parties." App. A 275. C.D. sees advertisements for JUUL products on
16  his "Instagram and Snapchat streams," including ads that contain the warning that JUUL's "product
17  contains nicotine" and "[n]icotine is an addictive chemical." App. A 278.

18  <u>L.B.</u>  L.B. is 16 and started using JUUL products at 13 when "her friends at school"
19  introduced them to her. App. A. 783. Though she does not buy them in stores, she also learned about
20  them from "point-of-sale materials" that made JUUL seem "fun, harmless" but also warned that
21  nicotine is an 'addictive chemical." App. A 781, 782. The various ads and product labels "materially
22  impacted L.B.'s assessment of the fruit-flavored JUUL she would later be offered." App. A 782.
23  L.B. eventually "purchased a JUUL of her own from an unknown source," App. A 785, and appears
24  to get pods at her high school and on eBay. App. A 786, 788. She says she got a device directly
25  from JLI's "warranty department." App. A 789.
26  ///
27  ///
28

## III. LEGAL ARGUMENT

The UCL claim against Bowen should be dismissed because it is not pled with sufficient particularity and because it is in any event legally deficient.

### A. Rules 9(b) and 12(b)(6)

Rule 9(b)'s heightened pleading requirements apply to the California Plaintiffs' UCL claim to the extent it is based on fraud. *E.g., Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1004 (9th Cir. 2003). As has been briefed many times for the Court, for such claims plaintiffs must allege with particularity facts about what each defendant did that violated the statute.

A plaintiff can survive a Rule 12(b)(6) motion to dismiss only by alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts describing the claim's elements so as to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the Court accepts plausible factual allegations as true, and draws reasonable inferences in Plaintiffs' favor, *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987), it should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. No Violation of Section 17200 by Bowen is Alleged

Plaintiffs must plausibly allege facts showing defendants engaged in "fraudulent," "unlawful," or "unfair" business practices to state a claim for violation of Section 17200.[3] Cal. B&P Code § 17200 *et seq.*; *see In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009). To have standing, the Plaintiff class representative must have suffered an actual economic injury caused by the alleged violation. B&P Code § 17204; see *In re Tobacco II Cases*, 46 Cal. 4th at 324.

The "Unfair" Prong. JLI, Bowen, and the other defendants "aimed to portray JUUL products as cool and safe alternatives to combustible cigarettes, with a particular emphasis on appealing to minors." Compl. ¶ 636. Thus the "manufacture and sale" of, and the "[a]dvertisements and

---

[3] Plaintiffs do not assert a UCL claim against the individual defendants under the "unlawful" prong. Compl. ¶ 645.

representations about," JUUL's products were allegedly "unfair" because the purported "targeting of minors" "offends public policy" and "caused substantial harm that greatly outweighs any possible utility from the conduct." Compl. ¶ 647.[4]

The "Fraudulent" Prong. JLI, Bowen and the other defendants allegedly "created and implemented a scheme to create a market for e-cigarettes and substantially increase sales of JUUL," Complaint ¶ 636, by misrepresentations and omissions and, as part of that, engaged in a "scheme to deceptively and misleadingly convey that JUUL products were appropriate for minors." Compl. ¶ 646. Because the Complaint purports to allege "a unified course of fraudulent conduct," the entire UCL claim (the "unfair" and "fraudulent" prongs) is "grounded in fraud" and "must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1127 (9th Cir. 2009).

### 1. Directors and Officers Cannot Be Vicariously Liable for a Company's Unfair Competition Under Section 17200

The UCL aims to "preserve fair competition and protect consumers from market distortions." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 331 (2011). Thus, liability for acts of unfair "competition" arises from market-facing "business practices" that affect competing businesses or consumers. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003) (statute "embraces . . . anything that can properly be called a business practice and that at the same time is forbidden by law" (alterations in original; internal quotation marks omitted)). Thus, for instance, plaintiffs moving under the "fraud" prong, must show some direct impact in the market; they must plead and prove "actual reliance," *i.e.*, "that the misrepresentation was an immediate cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326; *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) ("whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim . . . ." (internal quotation marks omitted; alterations in original)).

---

[4] Colgate is alleged to be an adult, App. A 186, and thus cannot assert an unfair competition claim arising from any alleged marketing targeted at minors.

7   MOTION TO DISMISS PURSUANT
    TO FED. R. CIV. P. 9(b) and 12(b)(6)
    Case No.: 19-md-02913-WHO

It follows that the "concept of vicarious liability has no application to actions brought under the unfair business practices act." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002). Instead, an individual "defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200." *Ibid.* (*citations omitted*); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (discussing *Emery*); *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984) (enjoined defendant had "orchestrated all aspects of the business" to persist in and expand the unfair practices); *San Francisco Residence Club, Inc. v. Amado*, 773 F.Supp. 2d 822, 834 n.5 (N.D. Cal. 2011).

### 2. Bowen Must Have Had "Personal Participation" in the Acts of Alleged Unfair Competition that Violate the Statute

As noted, California Plaintiffs challenge the "[a]dvertisements and representations" about JUUL products in the marketplace as "unfair" and "fraudulent." These are, of course, market-facing activities allegedly attributable to the company; no one individual is alleged to have conducted or made the "advertisements and representations" about JUUL products.

Because many managers and employees in a large company can be said to "participate" in its sales and advertising activities, a plaintiff must allege with particularity an individual employee's "*personal* participation in the unlawful practices." *San Francisco Residence Club*, 773 F.Supp. 2d at 834 n.5 (*emphasis added*).[5] This appears to require that an individual be acting in his or her "personal" capacity, engaging in "unfair practices" as an independent economic actor, rather than merely as an agent of a large company carrying out its business.[6] But Bowen is not alleged to have personally committed an anticompetitive act; the market-facing acts of allegedly unfair competition were engaged in by the company. Everything Bowen allegedly did was as a manager-employee or director of the company, not personally. In any event, there are no allegations tying Bowen

---

[5] The Complaint's allegations simply describe the company's activities as a "scheme" and label its managers and directors as those who, with the company as a group "participated and/or facilitated the marketing of JUUL products to minors." Compl. ¶¶ 636–646.

[6] Even were the Court to conclude that "personal" adds no meaning to "personal participation," Bowen is not plausibly alleged to have engaged in any market-facing activity or consumer interaction.

8          MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 9(b) and 12(b)(6)
Case No.: 19-md-02913-WHO

individually to any particular sales practice or to the creation of any particular piece of supposedly false advertising that could have deceived a California consumer.

*Emery*, 95 Cal. App. 4th at 952, is instructive. There, the plaintiff sued Visa for unfair and unlawful business practices and deceptive advertising because foreign lotteries, in written solicitations to California residents, allowed payment by Visa bank cards. *Id.* at 954. As to section 17200, the court held that a "defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices . . . ." *Id.* at 960. The court rejected the plaintiff's UCL claim, finding that Visa itself had "exercised no control over the preparation or distribution of the [third party] solicitations . . . ." *Id.*

That principle forecloses the UCL claim against Bowen. Plaintiffs allege he was instrumental in designing and creating JUUL's product, but their paragraphs setting forth their UCL claim do not mention his name or ascribe any specific false or misleading statements in the market to him. *See*, *e.g.*, Compl. ¶ 636 (alleging "Defendants aimed to portray JUUL products as cool and safe alternatives to combustible cigarettes, with a particular emphasis on appealing to minors, while misrepresenting or omitting key facts concerning JUUL products' nicotine content and doses, addictiveness, and significant risks of substantial physical injury from using JUUL products.").

The Complaint contains no allegations that Bowen personally competed, advertised, sold, or made false or misleading statements that could have undermined the fair competition in commercial markets for goods and services, a necessary component of any Section 17200 claim. *Casey v. Olsson*, 2010 U.S. Dist. LEXIS 93222, at *26 (S.D. Cal. Sept. 8, 2010) (dismissing section 17200 claims because "complaint contain[ed] no allegations that [the individual defendant] engaged in any advertising or made statements to the general public promoting his or the [company's] services.").

### 3. Bowen Did Not Have "Unbridled Control" Over the Practices That Allegedly Violate Section 17200

In addition to the requirement of personal participation, Plaintiffs must plead Bowen had "unbridled control over the practices that are found to violate section 17200." *Perfect 10*, 494 F.3d at 808. The practices that Plaintiffs allege should be "found to violate section 17200," are the "devising

and executing [of] a scheme," to deceive about JUUL products and the alleged "marketing of JUUL products to minors."  Compl. ¶¶ 646-648.  But Plaintiffs make only a conclusory, general allegation that the group of management defendants had "final say" over marketing.  Compl. ¶ 340.  Again, these allegations are just characterizations of what Plaintiffs believe may be the roles of managers and directors of a company.  But they come nowhere near meeting the requirement that facts be plausibly alleged showing Bowen individually had "unbridled control" of any "practices that are found to violate section 17200."  *Perfect 10*, 494 F.3d at 808; *cf. Casey*, 2010 U.S. Dist. LEXIS 93222, at *26 (dismissing section 17200 claims where alleged violations were pleaded "in conclusory terms and lack[ing] the required particularity.").

Because there are no plausible allegations that Bowen himself had "unbridled" control over any of the alleged acts of unfair competition by JUUL, the UCL claim should be dismissed.  *Compare People v. Toomey,* 157 Cal. App. 3d at 15 (defendant "orchestrated all aspects of the business" in violating injunction).[7]

### 4.  There is No Entitlement to Restitution from Bowen

Finally, even if Plaintiffs could jump the pleading hurdles of personal participation and unbridled control, they do not allege facts showing that any restitution could come from Bowen.  To secure an order compelling restitution from Bowen as they purport to be doing, Complaint ¶ 664, Plaintiffs must plead and prove they seek "the return of money or property that was once in [his or her] possession" that the defendant had "obtained through an unfair business practice."  *Korea Supply*, 29 Cal. 4th at 1149.

JLI points out that the California Plaintiffs allege nothing about purchasing from JLI or from a source likely to convey funds to JLI.  *See* JLI Mot. to Dismiss #3, ECF No. 629 at 14-15.  Similarly, there are no allegations that Bowen obtained any money through an unfair business practice from Plaintiffs or in which they have some "vested interest."  *E.g.*, *Cheverez v. Plains All Am. Pipeline*

---

[7] The other California class claim alleged against Bowen is for unjust enrichment.  Compl., Sect. VII. A. 6  ¶¶ 695-703.  That cause of action does not exist under California law, *e.g., Ang v. Bimbo Bakeries USA, Inc.,* 2013 U.S. Dist  138897 at *36-37 (2013)*, McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th at 1490, and should be dismissed for the reasons explained in JLI's Motion # 4 even if construed as a quasi-contract claim.  ECF No. 629 at 17-18.

*L.P.*, 2016 WL 4771883 at *2 (C.D. Cal. Mar. 4, 2016) (plaintiffs must show "the money or property in which they had a vested interest is now in Defendants' possession"); *compare with* App. A ¶¶ 186, 195 (Colgate does not say where he made his purchases); App. A ¶¶ 272, 276 (M.D. does not allege a purchase from anyone; C.D. alleges purchase from a classmate); App. A ¶¶ 785, 788 (L.B. purchased device from an "unknown source" and pods from eBay).[8]

## IV.   CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in the legal arguments contained in the motions to dismiss of the other defendants, the claims against Mr. Bowen should be dismissed.

Dated:  June 29, 2020

BOERSCH & ILLOVSKY LLP
MARTHA A. BOERSCH
EUGENE ILLOVSKY
MATTHEW DIRKES
KEVIN CALIA

  /s/Eugene Illovsky
Eugene Illovsky

Attorneys for Defendant
Adam Bowen

---

[8] No basis for injunctive relief against Bowen has been alleged.  In any event, an injunction against an individual would not halt any alleged unfair practices by the company.