[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>CLASS ACTIONS | Case No. 19-md-02913-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS JUUL LABS INC ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, AND ALTRIA GROUP DISTRIBUTION COMPANY'S MOTIONS TO DISMISS CALIFORNIA SUBCLASS CLAIMS FOR FAILURE TO STATE A CLAIM AND OTHER SUBCLASS CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF Nos. 629 and 632)**<br><br>**Judge:** **Hon. William H. Orrick**<br>**Date:** **September 21, 2020**<br>**Time:** **9:00 a.m.**<br>**Ctrm.:** **2** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  THE CALIFORNIA PLAINTIFFS' ALLEGATIONS .......................................... 2

    A.  JLI and Atria's Conduct ................................................................................ 2

    B.  California Plaintiffs' Claims ........................................................................... 5

III.  ARGUMENT ........................................................................................................... 7

    A.  Legal Standard on Motions to Dismiss .......................................................... 7

    B.  California Plaintiffs Have Sufficiently Alleged Their Common Law Fraud Claim .. 8

        1.  California Plaintiffs Allege Actionable Misrepresentations ......................... 8

        2.  California Plaintiffs Allege Actionable Omissions ..................................... 11

        3.  Reliance Is A Jury Question and Can Be Presumed for Material Omissions .................................................................................................. 15

    C.  California Plaintiffs Have Sufficiently Alleged Their Breach of Implied Warranty Claim ........................................................................................... 16

        1.  Privity is Not Required ............................................................................. 16

        2.  California Plaintiffs Have Sufficiently Alleged That JUUL Products Did Not Conform to the Implied Warranty of Merchantability ................... 19

    D.  California Plaintiffs Have Sufficiently Alleged Their UCL and FAL Claims......... 20

        1.  California Plaintiffs Allege Fraudulent, Unlawful, and Unfair Conduct ..... 20

        2.  California Plaintiffs May Pursue Claims for Equitable Relief Alongside Other Claims .......................................................................................... 23

        3.  California Plaintiffs Have Sufficiently Alleged an Entitlement to Restitution from JLI. ............................................................................... 25

        4.  California Plaintiffs Have Standing to Pursue Their Claims Against JLI. .. 27

        5.  Altria is Liable for Participating in a Scheme to Target Minors ................. 28

    E.  California Plaintiffs Have Sufficiently Alleged Their CLRA Claim...................... 33

        1.  JLI Has Waived Its Right to Seek Dismissal for Failure to File a CLRA Venue Declaration ................................................................................... 34

        2.  The CLRA Does Not Require a Direct Transaction With JLI ................... 35

    F.  California Plaintiffs Adequately Allege a Standalone Claim for Unjust Enrichment .................................................................................................. 35

    G.  Plaintiffs Are Not Required to Plead the Amount of Damages Incurred or Restitution Owed .......................................................................................... 37

    H.  The Court Has Subject Matter Jurisdiction Over Each of Plaintiffs' Claims .......... 39

IV.  CONCLUSION ...................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aberin v. American Honda Motor Company, Inc.*,
No. 16-cv-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018). ....................................26

*Acedo v. DMAX, Ltd.*,
No. CV 15-02443 MMM (SAx), 2015 WL 12696176 (C.D.  Cal. Nov. 13, 2015)................27

*Adkins v. Comcast Corp.*,
No. 16-cv-05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) ....................................24

*Arnold v. Dow Chemical Co.*,
91 Cal. App. 4th 698 (2001) ...............................................................................................19

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015)...............................................................................................36

*Barrera v. Samsung Elec. Am., Inc.*,
No. SACV 18-00481-CJC(PJWx), 2018 WL 10759180 (C.D. Cal. Dec. 7, 2018)................36

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544  (2007).............................................................................................................7

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................................................29

*Bland v. Sequel Natural, Ltd.*,
No. 18-cv-04767-RS, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ....................................18

*Browning v. Unilever United States Inc.*,
No. SACV 16-02210 AG (KESx), 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017)................36

*Bruton v. Gerber Prods. Co.*,
703 F. App'x 468 (9th Cir. 2017) ........................................................................................36

*Bryde v, General Motors, LLC*,
No. 16-cv-02421-WHO, 2016 WL 6804584 (N.D. Cal. Nov. 16 2016) ................8, 12, 17, 22

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)............................................................................................................30

*Cabebe v. Nissan of N. Am., Inc.*,
No. 18-cv-00144-WHO, 2018 WL 5617732. (N.D. Cal. Oct. 26, 2018) ...................25, 26, 38

*Cabrera v. Bayer Healthcare, LLC*,
No. LA CV17-08525 JAK (JPRx), 2019 WL 1146828 (C.D. Cal. Mar. 6, 2019) .................19

*Choi v. Kimberly-Clark Worldwide, Inc.*,
No. SA CV 19-0468-DOC (ADSx), 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) .............19

*City Solutions, Inc. v. Clear Channel Communications*,
365 F.3d 835 (9th Cir. 2004)..........................................................................................15, 16

*Clark v. LG Electronics U.S.A. Inc.*,
No. 13-cv-485 JM (JMA), 2013 WL 5816410 (C.D. Cal. Oct. 29, 2013).............................18

*Clayworth v. Pfizer*,
49 Cal. 4th 758 (2010) ........................................................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)..................................................................................16

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982)..................................................................................30

*Colgate v. JUUL Labs, Inc.*,
  345 F. Supp. 3d 1178 (N.D. Cal. 2018) ..............................................................1, 35

*Colgate v. JUUL Labs, Inc.*,
  402 F. Supp. 3d 728 (N.D. Cal. 2019) ...........................................................passim

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015)..................................................................................16

*Daugherty v. American Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ..................................................................................12

*Deras v. Volkswagen Group of America, Inc.*,
  No. 17-cv-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ...................24

*Doe I v. Wal-Mart Stores Inc*,
  572 F.3d 677 (9th Cir. 2009).....................................................................................37

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ....................................................................14

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ....................................................................25

*E. Aviation Group, Inc. v. Airborne Express, Inc.*,
   6 Cal. App. 4th 1448 (1992) ...................................................................................18

*Ferington v. McAfee, Inc.*,
  No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)........26, 27, 33

*Ferrari v. Mercedes-Benz USA, LLC*,
  No. 15-cv-4379-YGR, 2016 WL 658966 (N.D. Cal. Feb,. 18, 2016) ....................30

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018)..............................................................................38

*Gottsdanker v. Cutter Labs.*
   182 Cal. App. 2d 602 (1960)..............................................................................18, 19

*Gray v. BMW of N. Am., LLC*,
  No. 13-cv-3417-WJM-MF, 2014 WL 4723161 (D.N.J. Sept. 23, 2014)................35

*Green v. Canidae Corp.*,
  No. CV-09-0486 GAF (PLAx), 2009 WL 9421226 (C.D. Cal. June 9, 2009) ........35

*Gutierrez v. Carmax Auto Superstores Cal.*,
  19 Cal. App. 5th 1234 (2018) ..................................................................................11

*Ham v. Hain Celestial Group, Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................9, 15

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988 (2015) .............................................................................................36

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013)...................................................................................38

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*HP Debt Exch. LLC v. Wells Fargo Bank N.A.,*
No. C-13-04717 EDL, 2014 WL 12600279 (N.D. Cal. June 4, 2014) ...................................18

*In re Animation Workers Antitrust Litig.,*
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ................................................................................16

*In re Anthem, Inc. Data Breach Litig.,*
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016).............................26

*In re Big Heart Pet Brands Litig.,*
No. 18-CV-00861-JSW, 2019 WL 8266869 (N.D. Cal. Oct. 4, 2019)...................................19

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., and Pros Liab. Litig.,*
295 F. Supp. 3d 927 (N.D. Cal. 2018) ..................................................................................38

*In re Fontem US, Inc. Consumer Class Action Litigation,*
No. SACV 15-01026 JVS (RAOx), 2016 WL 11503066 (C.D. Cal. Apr. 22, 2016)..............10

*In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.,*
76 F. Supp. 3d 294 (D. Mass. 2015) .....................................................................................40

*In re Korean Air Lines Co., Ltd.,*
642 F.3d 685 (9th Cir. 2011)..................................................................................................39

*In re MyFord Touch Consumer Litig.,*
46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................................11, 13, 17

*In re NJOY, Inc.,*
No. CV 14-00428 MMM(JEMx), 2015 WL 12732461 (C.D. Cal. May 27, 2015)................13

*In re Takata Airbag Prod. Liab. Litig.,*
379 F. Supp. 3d 1333 (S.D. Fla. 2019) .................................................................................40

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M 07-1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011)........................................36

*In re Tobacco Cases II,*
240 Cal. App. 4th 779 (2009) ................................................................................................39

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prods Liab.
Litig.,*
No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585 (C.D. Cal. June 17, 2013) .................22

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Pracs., and Prods. Liab.
Litig.,*
754 F. Supp. 2d 1145, 1160 (C.D. Cal. 2010) ......................................................................15

*In re Vioxx Class Case,*
180 Cal. App. 4th 116 (2009) ................................................................................................39

*In re Wells Fargo Ins. Mktg. and Sales Prac. Litig.,*
No. SAML 17-02797 AG (KESx), 2018 WL 9536803 (C.D. Cal. Dec. 14, 2018)................36

*Isip v. Mercedes-Benz USA, LLC,*
155 Cal. App. 4th 19 (2007) ..................................................................................................20

*Johnson v. Nissan North America, Inc.,*
272 F. Supp. 3d 1168 (N.D. Cal. 2017) ..........................................................14, 25, 35, 38

*Kearney v. Foley & Lardner, LLP,*
590 F.3d 638 (9th Cir. 2009)..................................................................................................30

- iv -

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ............................................................................25, 26, 27

4

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ...........................................................................................38

5

*Long v. Graco Children's Prod. Inc.*,
   No. 13-cv-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ...............17

6

*Luong v. Subaru of Am., Inc.*,
   No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) ...................23

7

*Madani v. Volkswagen Group of Am., Inc.*,
   17-cv-07287-HSG, 2019 WL 3753433 (N.D. Cal. Aug 8, 2019)...........................23

8

*Maksoud v. Williams*,
   No. CV 17-3856-MWF (AGRx), 2019 WL 926327 (C.D. Cal. Jan. 16, 2019).......37

9

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010) ...............................................................................35

10

*McCarthy v. Toyota Motor Corp.*,
   No. 8:18-cv-00201-JLS-KES, 2018 WL 6318841 (C.D. Cal. Sept. 14, 2018).......26

11

*McClellan v. I-Flow Corp.*,
   776 F.3d 1035 (9th Cir. 2015)................................................................................30

12

*Mexicali Rose v. Super. Ct.*,
   1 Cal. 4th 617 (1992) .............................................................................................18

13

*Muniz v. Wells Fargo & Co.*,
   No. 17-cv-04995-MMC, 2018 WL 2197556 (N.D. Cal. May 14, 2018)................23

14

*Myers v. BMW of North America, LLC*,
   No. 16-cv-00412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016); ...............14

15

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019)..................................................................................38

16

*People v. Sarpas*,
   225 Cal. App. 4th 1539 (2014) ..............................................................................29

17

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984)......................................................................................29

18

*Pfizer Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010) ................................................................................32

19

*Plascencia v. Lending 1st Mortg.*,
   583 F. Supp. 2d 1090 (N.D. Cal. 2008) .................................................................29

20

*Reniger v. Hyundai Motor Am.*,
   122 F. Supp. 3d 888 (N.D. Cal. 2015) ...................................................................15

21

*S.L. Anderson & Sons, Inc. v. PACCAR, Inc.*,
   No. C18-0742-JCC, 2018 WL 5921096 (W.D. Wash. Nov. 13, 2018)..................38

22

*Shersher v. Superior Court*,
   154 Cal. App. 4th 1491 (2007) .........................................................................25, 27

23

*Shields v. Alere Home Monitoring, Inc.*,
   No. C15-2580 CRB, 2015 WL 7272672 (N.D. Cal. Nov. 18, 2015)......................10

24

25

26

27

28

- v -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sonner v. Premier Nutrition Corp.*,
   No. 18-15890, --F.3d--, 2020 WL 3263043 (9th Cir. June 17, 2020) ..............................24, 25

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)........................................................................................................9

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..........................................................................................................6

*State of California v. Altus Finance*,
   36 Cal. 4th 1284 (2005) ...............................................................................................................23

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) .................................................................................................................23

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   No. 17-cv-00561-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ...............................36

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305. (2009) ..............................................................................................26, 33

*Tucker v. Post Consumer Brands, LLC*,
   No. 19-cv-03993-YGR, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ...................................24

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011)..........................................................................................................8

*U.S. ex rel. Wilson v. Maxxam, Inc.*,
   No. C 06-7497 CW, 2009 WL322924 (N.D. Cal. Feb 9, 2009) ...........................................30

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987)............................................................................................7, 15, 30

*Uzyel v. Kadisha*,
   188 Cal.App.4th 866 (2010) .........................................................................................................37

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003).................................................................................................7, 31

*Wallace v. SharkNinja Operating, LLC*,
   No. 18-cv-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020)....................................36

*Weeks v. Google LLC*,
   No. 18-cv-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018)....................................12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)...........................................................................................9, 10, 11

*Wolph v. Acer America Corporation*,
   No. C 09-01314 JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009)....................................14

*Yumul v. Smart Balance, Inc.*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................................................11

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (2018)..........................................................................................................17

# TABLE OF AUTHORITIES
## (continued)

Page(s)

## STATUTES

Cal. Bus. & Prof. Code § 17204 ............................................................................20, 25

Cal. Bus. & Prof. Code § 17205 ............................................................................23

Cal. Bus. & Prof. Code § 17534.5 .........................................................................23

Cal. Bus. & Prof. Code § 17535 ............................................................................25

Cal. Bus. & Prof. Code § 22963 ............................................................................21, 28

Cal. Bus. & Prof. Code § 22963(a) ........................................................................21

Cal. Civ. Code § 1770(a) .......................................................................................34

Cal. Civ. Code § 1770(a)(16) .................................................................................34

Cal. Civ. Code § 1770(a)(5) ...................................................................................34

Cal. Civ. Code § 1770(a)(7) ...................................................................................34

Cal. Civ. Code § 1770(a)(9) ...................................................................................34

Cal. Civ. Code § 1780(a) .......................................................................................34

Cal. Penal Code § 308 ...........................................................................................21, 28

Class Action Fairness Act 28 U.S.C. 1332(d) ........................................................39

## RULES

Fed. R. Civ. P. 8 ....................................................................................................7

Fed. R. Civ. P. 9(b) ...............................................................................................7, 8, 31

## TREATISES

Andrew D. Bradt, The Shortest Distance: Direct Filing and Choice of Law in Multidistrict
  Litigation,
  88 Notre Dame L. Rev. 759, 816 (2012) .............................................................39

1  **I.      INTRODUCTION**

2          Plaintiffs file this response in opposition to JUUL Labs, Inc.'s ("JLI") and Altria Group,

3  Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Group Distribution

4  Company's (collectively, "Altria") motions to dismiss the California claims[1] in Plaintiffs'

5  Amended Consolidated Class Action Complaint (ECF 679, "CAC"), as well as JLI's request for

6  dismissal of certain other claims for lack of subject matter jurisdiction.

7          JLI ignores and seeks to relitigate issues that this Court previously decided in its orders

8  largely denying JLI's motions to dismiss in *Colgate*.[2]  And JLI makes little effort to dispute that

9  it engaged in conduct prohibited by the laws under which California Plaintiffs have brought their

10  claims.  Instead, JLI primarily argues that the claims should be dismissed because plaintiffs

11  purportedly did not rely on JLI's unlawful conduct when purchasing the product, did not deal

12  directly with JLI, and did not allege with sufficient specificity the details concerning the ways in

13  which JLI's conduct harmed them.  JLI's arguments misconstrue the governing law (or cite no

14  caselaw at all), ignore the factual allegations in the CAC, and disregard this Court's prior orders

15  on the same issues.  None of JLI's arguments warrant the dismissal of California Plaintiffs'

16  claims.[3]

17

18  _____

19  [1] Violation of the California Unfair Competition law, CAC ¶¶ 632-49; Violation of the California
Consumer Legal Remedies Act, CAC ¶¶ 650-65; Violation of the California False Advertising
20  Law, CAC ¶¶ 666-73; Common Law Fraud (under California Law), CAC ¶¶ 675-85; Breach of
the Implied Warranty of Merchantability (under California Law), CAC ¶¶ 686-94; and Unjust
21  Enrichment (under California Law), CAC ¶¶ 695-703.  These claims are bought on behalf of
Plaintiffs Bradley Colgate, CAC App'x ¶¶ 185-96; C.D., ¶¶ 267-81; and L.B., ¶¶ 778-99 (the
22  "California Plaintiffs").  Plaintiffs voluntarily dismiss the claims of M.D., whose claims were
brought by his father Joseph DiGiacinto (who also brings claims on behalf of C.D.).

23  [2] *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178 (N.D. Cal. 2018); *Colgate v. JUUL Labs,
Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019).
24

25  [3] In addition, had JLI raised the issues it contends warrants dismissal with plaintiffs on April 10,
2020, when it was required to do so, many of those issues could have readily been addressed
26  through simple amendments to the California Plaintiffs' allegations.  Although none of those
issues warrants dismissal, the parties could have avoided "time-consuming and expensive and
27  motion practice that" will, if the Court's accepts JLI's positions, "result[] in successfully amended
complaints[]."  ECF 400 at 2.
28

Altria seeks dismissal of the California Plaintiffs' unfair business practices claims principally by trying to recast them as fraud and misrepresentation claims. They are not. Rather, the California Plaintiffs allege that Altria coordinated with JLI to expand and maintain the usage of JUUL products by minors, and that this coordinated activity is "unfair" under the UCL. The California Plaintiffs sufficiently allege they were harmed by Altria's conduct.

JLI also requests the dismissal of (1) claims of twenty-five state subclasses where no named plaintiff filed an individual underlying complaint on behalf of that subclass and (2) fifty-eight named plaintiffs that did not file an individual, underlying complaint. Elevating form over substance, JLI asserts that plaintiffs should have spent hundreds of hours filing individual complaints containing the exact same allegations as the CAC, but even JLI does not contend the Court could not exercise subject matter jurisdiction over all of the claims had they been filed individually. Because there is no requirement to engage in this wasteful exercise, dismissal in unwarranted.

## II.   THE CALIFORNIA PLAINTIFFS' ALLEGATIONS

### A.   JLI and Atria's Conduct

California Plaintiffs allege that JLI and its founders sought to capitalize on the opportunity created by the decline of cigarettes, developing a multi-pronged strategy to emulate the success of the cigarette, which one of JLI's founders described as the "most successful consumer product of all time." *Id*. ¶¶ 29-31, 49. JLI's founders developed this strategy based on their review of marketing strategies, advertisements, and product design documents that were made public as a result of litigation and settlements between state governments and the country's largest cigarette manufacturers. *Id*. ¶ 62. These documents allowed JLI to "catch up" to the unlawful strategies the cigarette industry had employed for decades. *Id*.

First, JLI's founders recognized that key to the success of the cigarette was that it is "a carefully engineered product for nicotine delivery and addiction." *Id*. ¶ 63. JLI therefore engineered JUUL with the goal of maximizing the delivery of nicotine to users. *Id*. ¶¶ 50-72. It tested multiple variations of the JUUL nicotine formulation, and ultimately settled on the most potent version even though its internal studies indicated the product delivered too much nicotine

- 2 -

for even experienced smokers.  *Id*. ¶¶ 100-26.  Internal testing caused some subjects to vomit, for their hands ¶¶ shake, and for their heart rates to increase by 70%.  *Id*. ¶¶ 94-95.  And JLI's "Project Bears" study showed that heavy smokers preferred JUUL products with lower nicotine contents, but JLI brought its higher concentration products to market.  *Id*. ¶¶ 121-23.  JLI eventually obtained patents for JUUL, in part, because of the products superior ability to deliver nicotine.  *Id*. ¶ 104.  Though JUUL knew that its product delivered far more nicotine than a cigarette, JLI systematically concealed and distorted this material fact by publishing and distributing pharmacokinetics charts showing that the JUUL delivered *less* nicotine than a cigarette. *Id*. ¶¶ 171-78.

Second, despite JUUL being designed to deliver nicotine more potently than cigarettes, to cause addiction at even greater levels than cigarettes, and to appeal to new users instead of existing smokers, JLI advertised JUUL as a lifestyle product and a smoking cessation device and a safe and healthy alternative to cigarettes.  *Id*. ¶¶ 197-230.  A key part of JLI's efforts to mislead consumers into believing that JUUL was a legitimate smoking alternative—instead of vehicle to expand the nicotine using customer base—was its "Make the Switch" campaign.  *Id*. ¶¶ 202-30.  JUUL advertisements were taken straight out of the cigarette industry playbook and were designed to make consumers believe that they were using a safe, "cool" product.  *Id*. ¶¶ 61-63, 128.  What JUUL did not disclose—in its advertisements or on its product labels—is that JUUL products contain a myriad of harmful chemicals (in addition to nicotine) and that the products pose serious health risks.  *See Id*. ¶¶ 198, 217, 294-95, 342, 444.  And JUUL's advertisements never disclosed that, far from being an alternative to cigarettes, JUUL by design delivered a much stronger dose of nicotine than cigarettes.  And while JUUL pod packages state that a pod is roughly equivalent to pack of cigarettes, a report from a JLI scientist explained that each JUUL pod contains "roughly twice the nicotine content of a pack of cigarettes."  *Id*. ¶ 168.

Third, to capture an impressionable and long-term customer base, JLI designed JUUL to appeal to minors and implemented a youth-focused marketing strategy.  *Id*. ¶¶ 127-166, 262-80.  JLI conducted studies to determine what flavors were most preferred by youth and sold JUUL in flavors such as mango, cool mint, and crème brulee, even though the sale of flavored cigarettes

- 3 -

1   had been banned since 2009 because, according to a statement from the Department of Health

2   and Human Services, "[f]lavored cigarettes attract and allure kids into addiction." *Id*. ¶¶ 134-

3   145, 158-164.  JLI's designed its marketing strategy to appeal to minors at every turn and build

4   popularity among the "cool kids." *Id*. ¶¶ 276-80.  JLI engaged social media "influencers"

5   followed primarily by minors to market JUUL, filled JUUL advertisements with young-looking

6   actors, and ran advertisements in youth-oriented platforms like Cartoon Network. *Id*. ¶¶ 288-

7   294, 296-99, 305-13.  None of these advertising tactics was designed to reach what JLI

8   misleadingly claimed was it target market: adult smokers seeking to quit.  In fact, market

9   research provided to JLI's predecessor company as early as 2014 indicated that JUUL was

10   preferred by the "younger group" and that "the product isn't going to fit as well with consumers

11   who are looking to cut back on cigarette intake." *Id*. ¶ 111.  Each of JLI's tactics were taken

12   directly out of the cigarette industry playbook, even though those tactics had been banned in the

13   cigarette industry's settlement with state governments. *Id*. ¶¶ 61-65, 290, 313, 328.

14       In December 2018 Altria—parent company of cigarette industry veteran Phillip Morris—

15   invested $12.8 billion to acquire a 35% stake in JLI. *Id*. ¶ 7.  Prior its investment, Altria had

16   marketed its own e-cigarette product, which it pulled from the market as a condition of its

17   investment in JLI. *Id*. ¶ 428.  But Altria's involvement with JUUL was not limited to its

18   financial commitment.  Many former Altria executives have held prominent roles in JLI,

19   including as the company's CEO and chief regulatory officer. *Id*. ¶¶ 432-35.  Altria also

20   provided JLI with significant assistance in distributing JUUL, including through retail channels

21   known to be one of the primary drivers of youth usage. *Id*. ¶¶ 436, 440.  Two key components of

22   these services were providing premium shelf space in retail stores that Altria had paid $100

23   million to acquire and putting JUUL promotional materials and coupons in Marlboro cigarettes.

24   *Id*. ¶¶ 426-31, 437.

25       While Altria told the public and government regulators that it was removing its e-

26   cigarette product from the market because of concerns about youth usage, that explanation was

27   pretext for Altria's actual plan: to combine forces with JLI, the market-leader in youth e-cigarette

28   usage. *Id*. ¶ 416.  Since 2014, Altria had been working to prevent government regulation of e-

cigarettes, in particular flavored products.  *Id*. ¶¶ 465-66.  To help preserve the valuable youth market that Altria bought into when it invested $12.8 billion in JLI, Altria coordinated a regulatory strategy with JLI to limit the impact government regulation would have on the JUUL products most popular among youth.  *Id*. ¶¶ 472-505.

**B.**     **California Plaintiffs' Claims**

Each of the California Plaintiffs—Bradley Colgate, C.D., and L.B.—is a JUUL user who has been affected by Defendants' conduct.  Each alleges that he or she suffered economic losses (referred to in relevant statutes as the loss of "money or property") relating to his or her purchases as a result of defendants' conduct.  In the CAC, California Plaintiffs do not seek damages relating to personal injuries they suffered.

*Colgate*: Plaintiff Colgate was introduced to JUUL through social media, and in particular Instagram and Facebook.  CAC App'x A ¶¶ 187-91.  Testimonials and videos on those and other platforms—which were sometimes JUUL-sponsored—involved people describing how JUUL helped them quit smoking.  *Id*. ¶¶ 187-88.  The testimonials and advertisements described JUUL as an "alternative" to cigarettes.  *Id*. ¶ 188.  He also saw advertisements encouraging him to create a plan (involving JUUL, of course) that "fits your lifestyle."  *Id*. ¶ 191.   Based on these and other advertisements, Colgate believed that JUUL would help him safely quit smoking, and he initially purchased JUUL products to help reduce his nicotine addiction.  *Id*. ¶¶ 186, 192.

But using JUUL products had the opposite effect.  Colgate's nicotine addiction worsened and he has been unable to quit.  *Id*. ¶ 195.  None of the advertisements Colgate saw disclosed that JUUL was a highly-efficient nicotine delivery system, even more than cigarettes.  Nor was he made aware of the serious health complications that can arise from using JUUL.  *Id*. ¶ 194.  Had he known the true nature of JUUL products and the risks they posed, he would never have used or purchased JUUL.  *Id*. ¶ 196.

**C.D.**: C.D. is the 16-year-old daughter of Joseph DiGiacinto.  CAC App'x A ¶ 268. Before using JUUL, C.D. had seen in-store promotional materials that featured images of JUUL's fruit and desert flavored pods.  *Id*. ¶ 271.  C.D. also saw advertisements and promotions for JUUL on social media, including Instagram and Facebook.  *Id*. ¶ 274-75.  Numerous social

1    media accounts—including popular accounts on YouTube and Snapchat—encouraged underage

2    use of JUUL products and provide instructions of how to conceal JUUL products at school.  *Id.* ¶

3    275.  Although C.D. is a minor, his Instagram and Snapchat accounts are inundated with JUUL-

4    related content.  *Id.* ¶ 278.

5            C.D.'s older brother also used JUUL, and C.D. eventually purchased his own JUUL

6    products.  *Id.* ¶ 272.  C.D.'s father has unsuccessfully sought help from C.D.'s school and family

7    doctor to fight C.D.'s nicotine addiction.  *Id.* ¶ 280.  None of the advertisements or promotions

8    for JUUL that C.D. saw explained the risks of using JUUL, including how potently it delivered

9    nicotine or that it posed serious health risks.  *Id.* ¶ 279.  Had C.D. been aware of these facts and

10   risks, he never would have purchased JUUL.  *Id.* ¶ 281.

11           **L.B.**: L.B. is currently 16 years old, and her claims are brought on her behalf by her

12   mother Jill Nelson.  CAC App'x A ¶¶ 778-79.  She began using JUUL shortly after her 13th

13   birthday and had never used any tobacco or cigarette products prior to using JUUL.  *Id.* ¶¶ 778-

14   79.

15           L.B. had seen advertisements for JUUL in stores near her home[4], and JUUL use is

16   common at L.B.'s school.  *Id.* ¶ 781.  Based on the ads and the fruit flavors of JUUL, L.B.

17   believed that JUUL was a safe and fun product.  *Id.* ¶¶ 781, 784.  L.B.'s mother is aware of L.B.

18   purchasing JUUL products from eBay, as well as another source that is unknown to L.B.'s

19   mother.  *Id.* ¶¶ 785, 788.[5]  In October 2017, L.B. was able to obtain a JUUL device directly from

20

21   [4] JLI argues that the Court should disregard one of the in-store promotions that L.B. identifies as
     having seen because it may have been from a store other than the one L.B. frequented.  ECF 629
22   at 3.  JLI's position is without merit.  Unsurprisingly, most consumers do not take or maintain
     pictures of every store they frequent.  As a result, L.B. did not include an image from the specific
23   store she visited, but the picture identified in her allegations is representative of the display that
24   she saw.  There is nothing 'contradictory' about L.B. including a representative image, and the
     authority JLI cites is wholly inapposite.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979,
25   988 (9th Cir. 2001) (plaintiff alleged that he was discriminated against during disciplinary
     proceedings based on his race, but the arbitration decision included with his complaint showed
26   that the disciplinary action was based on the plaintiff's misconduct).

27   [5] JLI contends that "L.B. fails to plead damages because she incurred no out-of-pocket costs."
     ECF 629 at 7 n.5.  There is no basis for this contention given that L.B. alleges that, at least, she
28   purchased JUUL pods from eBay.

- 6 -

1    JUUL through the company's warranty department.  *Id.* ¶ 789.  Although L.B.'s mother does not

2    know precisely how much JUUL L.B. uses, she frequently finds the caps from mango and cool

3    mint flavored JUUL pods in L.B.'s room.  As a result of L.B.'s JUUL-created nicotine addiction,

4    she has been subject to disciplinary actions at school, admitted to an inpatient treatment program

5    for her JUUL addiction, and served time in a juvenile detention facility.  *Id.* ¶¶ 792, 794, 797.

6    None of the advertisements L.B. saw informed her of JUUL's extremely potent nicotine delivery

7    system, and neither the advertisements nor the product labels disclosed that a pod delivers more

8    nicotine than a pack of cigarettes, or that they pose significant health risks.  *Id.* ¶¶ 782, 799.  Had

9    L.B. known these facts or risks, she would never have started using or purchasing JUUL

10   products.  *Id.* ¶¶ 782, 783, 799.

11   **III.   <u>ARGUMENT</u>**

12        **A.     Legal Standard on Motions to Dismiss**

13        To succeed at the pleading stage, a plaintiff's claims need not be indisputable or even

14   probable; instead, to survive a Rule 12 challenge a plaintiff must allege "enough facts to state a

15   claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

16   (2007). And all reasonable inferences must be construed in favor of the plaintiff's allegations.

17   *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

18        JLI centers its motion on the common law fraud claims, but the Court should be aware

19   that most of the claims are based on violations of statutory provisions, such as claims based on

20   unfair and unlawful conduct under the UCL, as well as enumerated violations of the CLRA.

21   Nevertheless, to expedite the Court's review, Plaintiffs respond to the arguments in the order

22   presented by JLI.

23        Misrepresentation-based fraud claims are subject to Federal Rule of Civil Procedure 9(b),

24   under which a party must "state with particularity the circumstances constituting the fraud or

25   mistake," including the "who, what, when, where, and how of the conduct charged."  *Vess v.*

26   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  "[B]ut claims

27   based on an omission can succeed without the same level of specificity required by a normal

28   fraud claim."  *Bryde v, General Motors, LLC*, No. 16-cv-02421-WHO, 2016 WL 6804584, at

1   \*13 (N.D. Cal. Nov. 16 2016) (citation omitted).  In addition, not all elements of a fraud claim

2   need to be pled in accordance with Rule 9(b); "other facts may be plead[ed] generally, or in

3   accordance with Rule 8."  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th

4   Cir. 2011).

5   **B.   California Plaintiffs Have Sufficiently Alleged Their Common Law Fraud**
6   **Claim**

7   **1.   California Plaintiffs Allege Actionable Misrepresentations**

8   California Plaintiffs allege that JLI's marketing included deceptive statements that JUUL

9   products were smoking cessation devices, were reasonable alternatives to cigarettes, and that a

10  pod of JUUL was equivalent to one pack of cigarettes.  CAC ¶ 677.  In addition to their claims

11  involving misrepresentations in JLI's marketing, California Plaintiffs allege that the JUUL labels

12  also misleadingly represented that the JUUL products were reasonable alternatives or equivalent

13  to cigarettes.  CAC ¶ 679.

14  In *Colgate*, this Court rejected JLI's argument that California Plaintiffs had not stated a

15  claim based on misrepresentations.  *Colgate*, 402 F. Supp. 3d at 748-49.  The Court held that

16  "plaintiffs have sufficiently stated . . . an affirmative misrepresentation with regards to JUUL's

17  claim that one pod has as much nicotine as a pack of cigarettes."  *Id*. at 748.  JLI does not

18  acknowledge the Court's prior order concerning JLI's statement that one JUUL pod is equivalent

19  to a pack of cigarettes, let alone provide any reason to revisit it.  Instead, JLI argues only that

20  representations encouraging smokers to switch to JUUL products or describing JUUL products

21  as alternatives are not actionable misrepresentations.  ECF 629 at 4.  JLI does not address any of

22  the other alleged misrepresentations, and that alone is a basis to deny JLI's motion.[6]

23  In seeking to dismiss the "alternative" and "switch" misrepresentation claims, JLI implies

24  that for a representation to be actionable it must be a "misdescription[] of specific or absolute

---

[6] JLI does not dispute that California Plaintiffs have pled their fraud claims with the specificity required by Rule 9(b).  *See* ECF 629 at 4-5 (never challenging whether plaintiffs have sufficiently alleged the 'who, what, when, where, and how' of the alleged fraud).  In addition, the Court previously found that plaintiff Colgate's claims satisfy Rule 9(b), *Colgate*, 402 F. Supp. 3d at 747, and the other California Plaintiffs' claims are pled with a similar level of specificity.

- 8 -

1   characteristics." ECF 629 at 4 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

2   1145 (9th Cir. 1997)). The general rule is, however, that statements are actionable if "reasonable

3   consumers are likely to be deceived" by them. *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp.

4   3d 1188, 1193 (N.D. Cal. 2014) (citations omitted). "Whether a reasonable consumer would be

5   deceived by a product label is generally a question of fact not amenable to determination on a

6   motion to dismiss." *Id.* (citation omitted).

7        "The California Supreme Court has recognized [that the likely to be deceived test]

8   prohibit[s] not only advertising which is false, but also advertising which, although true, is either

9   actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the

10   public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (discussing the

11   "reasonable consumer" standard in the context of a UCL claim) (citations omitted). The holding

12   in *Ham* is instructive. In *Ham* this Court rejected the defendant's argument that the term "All

13   Natural" cannot be fraudulent because it "does not have a fixed definition." 70 F. Supp. 3d at

14   1193. The Court denied the defendant's motion to dismiss common law fraud and statutory

15   claims, finding it plausible that reasonable consumers would not expect foods labeled "All

16   Natural" to include a synthetic leavening agent (even though the USDA permits the agent in

17   foods designated as organic). *Id.* at 1194. Similarly, reasonable consumers would not expect a

18   product labeled as an "alternative" to cigarettes to deliver up to twice as much nicotine. As this

19   Court observed in *Colgate*, "[a] product that causes the body to absorb twice as much nicotine as

20   a combustible cigarette cannot fairly be considered a cigarette replacement," *i.e.* a reasonable

21   alternative to cigarettes. *Colgate*, 402 F. Supp. 3d at 757.[7]

22        JLI relies on a statement in *Colgate* that "claims based on themes and vague terms in

23   JUUL's advertising are, as JUUL argues, nothing more than non-actionable puffery." *Colgate*,

24   402 F. Supp. 3d at 748 n.4. The Court's statement did not, however, specifically refer to the

25   statements that JUUL products are alternatives to cigarettes. In support of its statement, the

---

[7] JLI's brief proves the point: it argues that JUUL's most basic use is not to serve as an
"alternative to cigarettes," but to instead serve as a "nicotine delivery system." ECF 629 at 12.
JUUL's advertisements and labels, however, prominently promote the product as an alternative to
cigarettes.

- 9 -

Court cited—and JLI now relies on—*In re Fontem US, Inc. Consumer Class Action Litigation*, No. SACV 15-01026 JVS (RAOx), 2016 WL 11503066 (C.D. Cal. Apr. 22, 2016). *Fontem* is distinguishable. There was no allegation in *Fontem* that the e-cigarettes were twice as potent as traditional cigarettes. There were also no allegations that "the online advertisements were ever associated with healthy lifestyle oriented content." *Id.* at *9. California Plaintiffs, by contrast, allege that JLI implemented a "Save Room for JUUL" campaign that included images of JUUL with coffee and foods products in an effort to portray JUUL as part of a "comfortable" and "safe" routine. CAC ¶¶ 197-201; *see also* CAC App'x A ¶ 191 (plaintiff Colgate identifying 'lifestyle' advertisements). Particularly viewed in this context, it is plausible that describing JUUL products as "alternatives" to cigarettes would be misleading to a reasonable consumer. *See Williams*, 552 F.3d at 939 n.3 (declining to "give [defendant] the benefit of the doubt by dismissing . . . as puffery" claims based on a representation that a product was "nutritious" in part because of the "context of the statement."). Similarly, JLI's "Make the Switch" campaign was deceptive because, in the context of JLI's overall advertising scheme, is was likely to mislead consumers into believing that JUUL products were preferable to—or at least equivalent to—cigarettes in terms of their nicotine delivery and addictiveness.

JLI's other authority likewise does not support dismissal of California Plaintiffs' misrepresentation claims based on JLI's claims that JUUL products are alternatives to cigarettes. In *Shields v. Alere Home Monitoring, Inc.*, the plaintiff alleged that the defendant's blood monitoring device delivered inaccurate results, and thus was not a "convenient alternative" to traditional lab tests as the defendant had claimed. No. C15-2580 CRB, 2015 WL 7272672, at *2-3 (N.D. Cal. Nov. 18, 2015). But unlike *Shields*, California Plaintiffs are not alleging that the word "alternative" is likely to deceive reasonable consumers because JUUL products are of a subjectively lower quality than combustible cigarettes. The description is likely to deceive because JUUL products are engineered to deliver significantly more nicotine than cigarettes. That a twice-as-addictive product may literally be an "alternative" to the original does not insulate it from fraud liability. JLI also cites to the holding in *Yumul v. Smart Balance, Inc.* that the word "health" is not actionable because it cannot be concretely measured. 733 F. Supp. 2d

1117, 1129 (C.D. Cal. 2010).  But the term "alternative" is comparative; it is not a subjective

statement like "health" that does not attempt to compare two products.  In addition, *Yumul* cites

to *Williams v. Gerber Products Co.*, which explained that dismissal is appropriate only in "rare

situation[s].  552 F.3d at 939.

## 2.   California Plaintiffs Allege Actionable Omissions

California Plaintiffs allege that JLI's marketing omitted and failed to disclose that JUUL

products were not smoking cessation devices, were not reasonable alternatives to cigarettes, were

engineered to be unnecessarily potent nicotine-delivery systems, were powerfully addictive,

delivered more nicotine than a pack of cigarettes, and that JUUL products posed significant risks

of substantial physical injury.  CAC ¶¶ 217, 341-42, 444, 678.  In *Colgate*, this Court held that

"plaintiffs sufficiently plead that JUUL has materially omitted the difference between the

pharmacokinetic effects of its nicotine solution as compared to combustible cigarettes." *Colgate*,

402 F. Supp. 3d at 746.  JLI again ignores the Court's prior order upholding California Plaintiffs'

claims.  In addition, California Plaintiffs allege that JLI failed to disclose that JUUL products

posed significant risks of substantial physical injury. CAC ¶ 679.

Plaintiffs allege three well-recognized bases for the conclusion that JLI had duty to

disclose: (1) JUUL products posed safety concerns, (2) JLI had exclusive knowledge of material

facts, and (3) that JLI made partial representations while suppressing other material facts.  *See In

re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958-59 (N.D. Cal. 2014) (listing factors

giving rise to a duty to disclose).  JLI argues that California Plaintiffs have failed to sufficiently

allege any of their duty to disclose theories, but none of JLI's arguments warrants a different

result than in *Colgate*.

First, JLI contends that California Plaintiffs cannot assert a claim based on the failure to

disclose safety risks because the complaint "disclaims relief for personal injuries."  ECF 629 at

7.[8]  That is irrelevant. A duty to disclose arises when a product poses an unreasonable risk of

---

[8] JLI contends it is "questionable" whether an unreasonable risk of substantial bodily injury gives rise to a duty to disclose (ECF 629 at 7 n.4), relying on *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234 (2018).  But, in *Gutierrez*, the California Court of Appeals held only that there was not an "independent duty to disclose safety concerns" that was separate from the

*Footnote continued on next page*

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1  harm (*id.* at 1260), and while plaintiffs are not seeking personal injury damages in the class

2  complaint (those claims are brought in the separate personal injury complaints), they are alleging

3  that the products pose an unreasonable risk of harm and seek economic damages based on the

4  purchases of the products.  *See Bryde*, 2016 WL 6804584, at *13 (rejecting defendants'

5  argument that plaintiffs who "excluded from the proposed Classes anyone who has suffered a

6  physical injury" failed to plead an injury because plaintiffs alleged "economic injuries resulting

7  from consumer fraud").  The court in *Daugherty v. American Honda Motor Co.* dismissed the

8  plaintiff's claim because he only alleged a risk of product failure, and not a risk of bodily injury.

9  144 Cal. App. 4th 824, 836 (2006).  Nothing in *Daugherty* implies that an economic loss claim

10  should be dismissed where a plaintiff pleads an undisclosed risk of bodily injury that caused the

11  economic loss but does not seek relief for personal injuries as well.

12        Second, California Plaintiffs allege that JLI had exclusive knowledge of material

13  information that it did not disclose.  "[E]xclusivity is not applied with rigidity" and is "analyzed

14  in part by examining whether the defendant had superior knowledge."  *Weeks v. Google LLC*,

15  No. 18-cv-00801 NC, 2018 WL 3933398, at *10 (N.D. Cal. Aug. 16, 2018) (citations omitted).

16  The CAC alleges, for example, that the Phase 0 study showed that JUUL products deliver

17  nicotine in dosages exceeding cigarettes, and that JLI "ignored the Phase 0 study and omitted it

18  from public discussion." *See* CAC ¶¶ 100-106, 178.  By not disclosing the Phase 0 study and

19  other information while at the same time seeking to portray its products as "cool" and safe, only

20  JLI knew the extent to which its products were designed to create and maintain addiction and the

21  extent to which its products deliver nicotine more potently than cigarettes.  Far from disclosing

22  these facts, JUUL packages falsely state that a pod is equivalent to a pack of cigarettes.  In

23  addition, consumers lacked (and still lack) information concerning what is in JUUL products

24  *Footnote continued from previous page*

25  other duty to disclose criteria, such as whether the disclosure was material.  *Id.* at 1260.  The
   court ultimately found plaintiffs' allegations sufficient because the "facts . . . implicate safety

26  concerns and would be important to the reasonable consumer."  *Id.* at 1261.  *Gutierrez* thus held
   that an omission of a safety-related risk is actionable if it is material; but it is not independently

27  actionable if it is not material or does not otherwise fit into the four duty to disclose categories
   under California law.

28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

(including the flavoring additives) and the harms those may cause.  These are more than the "conclusory allegations" JLI contends they are.

While JLI points to the existence of some articles in the public domain, "allegations regarding publicly available knowledge [are] far from being dispositive.  Even if the public—and therefore Plaintiffs—were aware of some problems with [a product], that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems . . . ." *MyFord Touch*, 46 F. Supp. 3d at 960.  The articles JLI cites do not demonstrate that public information concerning the full scope of JUUL's nicotine delivery and health risks were widely available to plaintiffs.  The reports that JLI cites to from 2012 through 2016 each concerned a single patient, none of them discusses JUUL (which entered the market in 2015, prior to the publication date of several of the articles), and each was published in scientific journals that are not widely available.  *See* CAC ¶¶ 522-26.  The CDC report mentioned in the CAC and the *Washington Post* article that JLI seeks to have judicially noticed does not mention JUUL, and instead discusses the prevalence of tobacco use in schools and the generally addictive nature of e-cigarettes.  *See* CAC ¶ 272; ECF 629 at 9 n.6 (JLI describing the *Washington Post* article as noting that "e-cigarettes contain nicotine").  The only study JLI cites that remotely touches on the specific nicotine content of JUUL products was published in August 2019, well after California Plaintiffs first brought their claims and was published in a scientific journal from a university outside the United States.  *See* CAC ¶ 105.  And none of these articles undermines the allegation that JLI had superior knowledge of JUUL's true nature as compared to the consuming public.

In the cases cited by JLI, the disclosures were much more public and specific to the relevant claims than anything JLI has pointed to with respect to plaintiffs' allegations concerning JUUL.  In *In re NJOY, Inc. Consumer Class Action Litigation*, for example, the plaintiffs relied on an FDA study that specifically discussed the level of carcinogens in NJOY products while alleging that the defendant had exclusive knowledge of the existence of the carcinogens.  No. CV 14-00428 MMM(JEMx), 2015 WL 12732461, at *16 (C.D. Cal. May 27, 2015).  Furthermore, in *Wolph v. Acer America Corporation*, the plaintiffs alleged Acer computers lack sufficiently

1   memory to run their operating system, but the fact that Acer computers did not have enough

2   memory was obvious because the operating system itself disclosed its minimum operating

3   requirements (which exceeded that of the computers at issue).  No. C 09-01314 JSW, 2009 WL

4   2969467, at *4 (N.D. Cal. Sept. 14, 2009).

5        *Third*, California Plaintiffs have identified partial representations made by JLI while JLI

6   also concealed other material facts that make the partial statements misleading. For example, JLI

7   stated that its products are alternatives to cigarettes and that a pod is equivalent to a pack of

8   cigarettes, while failing to disclose related material facts concerning that health risks posed by

9   JUUL products and that JULL is engineered to deliver significantly more nicotine than

10  cigarettes.   JLI makes the broad argument that C.D. and L.B. have not identified any

11  representations made by JLI because advertising JUUL products as "alternatives" to cigarettes is

12  nonactionable puffery.  ECF 629 at. 9.  As discussed above, California Plaintiffs have

13  sufficiently alleged actionable misrepresentations based on JLI's representations that JUUL

14  products are "alternatives" to cigarettes and that they contain an equivalent amount of nicotine as

15  cigarettes, among others.  In addition, a "partial representation" omission claim does not require

16  any representations that are false or misleading on their face; instead the representations are

17  misleading "because some other material fact has not been disclosed." *Johnson v. Nissan North*

18  *America, Inc.*, 272 F. Supp. 3d 1168, 1182 (N.D. Cal. 2017) (citation omitted).  In *Johnson*, for

19  example, the court held that the plaintiff did "not identify any specific affirmative

20  misrepresentation or misleading advertisement" but nonetheless concluded that the plaintiff

21  sufficiently pleaded an omission claim based on partial representations. *Id*. at 1183-84.  And in

22  *Myers v. BMW of North America, LLC*, the court upheld a "partial representation" omission

23  claims where the representation at issue "may be literally true." No. 16-cv-00412-WHO, 2016

24  WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016); *see also Doe v. SuccessfulMatch.com*, 70 F. Supp.

25  3d 1066, 1080 (N.D. Cal. 2014) ("the Court declines to discount the effect even 'mere puffery'

26  might have had in light of Defendant's failure to disclose").

27       JLI also argues that the each California Plaintiff must "allege[] that he or she purchased

28  JUUL products directly from JLI" to state a claim for common law fraudulent omissions.  ECF

- 14 -

629 at 7.  But omission-based claims proceed even where the plaintiff did not directly transact with the defendant.  *See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Pracs., and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1160, 1191-93 (C.D. Cal. 2010) (a wide variety of plaintiffs—including a vehicle insurer—stated a claim for fraudulent concealment based on several duty to disclose theories).[9]  Even cases that have concluded that a direct transaction is required in some contexts for a common law fraud claim have held that no such requirement exists for omissions related to safety risks.  *See Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 897-98 (N.D. Cal. 2015).

### 3.  Reliance Is A Jury Question and Can Be Presumed for Material Omissions

JLI does not dispute that plaintiff Colgate has pled reliance for his omission claim, but it contends that Colgate has not pled reliance on JLI's alleged misrepresentations and that C.D. and L.B. have not pled reliance at all.  JLI's argument is misplaced for several reasons.

First, in *City Solutions, Inc. v. Clear Channel Communications* the Ninth Circuit explained that "the question whether a party detrimentally relied on the misrepresentation of another party is properly left to a jury" and reversed a district court's judgment as a matter of law on the issue of reliance.  365 F.3d 835, 840 (9th Cir. 2004).  To the extent reliance is an issue at this stage of the case, the California Plaintiffs sufficiently allege it.  Each plaintiff alleges that JLI's representations and omissions "materially impacted" their purchasing decision and that they "would have behaved differently" by not using the product at all or paying less for it. CAC ¶¶ 649, 664, 673, 685. Those allegations must be taken as true and reasonable inferences drawn in plaintiffs' favor. *Usher*, 828 F.2d at 561.

Second, JLI's arguments illustrate why issues related to reliance are best left for the jury. JLI says that "no reasonable reader" would interpret the word "alternative" the way plaintiff Colgate has—a factual assertion best left for a jury.  ECF 629 at 5; *see Ham*, 70 F. Supp. 3d at

---

[9] As discussed in more detail below, the statutory provisions in the UCL, FAL, and CLRA make clear that regardless of whether a direct transaction is required for common law fraud claims based on omissions, there is no similar requirement for the UCL, FAL, and CLRA.

1193 ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss.").  In addition, the Court already rejected the notion that Colgate's history as a cigarette smoker or that the nicotine statements on JUUL labels negated reliance. *See Colgate*, 402 F. Supp. 2d at 749 ("That smokers and nonsmokers alike might be aware that nicotine is addictive does not mean that they are not entitled to rely on JUUL's representation" regarding the actual nicotine content of the products). With respect to C.D and L.B., JLI argues that their allegations of reliance on JLI's conduct should be overlooked because C.D. and L.B. "*really* relied on peer pressure."  ECF 629 at 6-7. JLI's contention is—at best—an issue for trial, not a motion to dismiss.  *See City Solutions*, 365 F.3d at 840; *see also In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1201 (N.D. Cal. 2015) ("While Defendants dispute Plaintiffs' characterizations and interpretations of these factual allegations . . . the Court accepts as true Plaintiffs' factual allegations at the motion to dismiss stage.").  Additionally, notwithstanding the fact that JLI's strategy of targeting minors worked and created a culture of youth usage that surrounded C.D. and L.B., each plaintiff alleges that he or she would not have purchased JUUL products at all or would have paid less for them had they known the truth about them. CAC App'x A, ¶¶ 196, 281, 799.

Lastly, a plaintiff may show reliance on an omission when "one would have behaved differently" had the information been disclosed, which "can be presumed, or at least inferred, when the omission is material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). As noted above, JLI has not disputed that the alleged omissions are material, and a presumption of reliance therefore applies.  *See also Colgate*, 402 F. Supp. 3d at 746 ("These omissions, if true, are material.").

### C.      California Plaintiffs Have Sufficiently Alleged Their Breach of Implied Warranty Claim

#### 1.      Privity is Not Required

While an implied warranty claim generally requires privity of contract between the plaintiff and defendant, the Ninth Circuit has recognized that "[s]ome particularized exceptions to the rule exist." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

1     Two exceptions apply here: the third-party beneficiary exception and the "foodstuffs"

2     exception.[10]

3                      **a.**      **The Third-Party Beneficiary Exception Applies**

4        JLI cites to a 2013 decision from this Court that declined to adopt the third-party

5     beneficiary exception. ECF 629 at 10 (citing *Long v. Graco Children's Prod. Inc.*, No. 13-cv-

6     01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013)). But this Court has more recently

7     concluded that because a California appeals court decision "provides the authority for plaintiffs

8     to plead the third-party beneficiary exception, I will allow them to proceed on their implied

9     warranty claim in the absence of privity." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854

10     (2018); *see also Bryde*, 2016 WL 6804584, at *15-16 (Orrick, J.) (declining to follow the Court's

11     prior holding in *Long*); *MyFord Touch*, 46 F. Supp. 3d at 984 ("the Court rejects Ford's

12     contention that the third-party beneficiary exception is not cognizable under California law").

13     JLI does not dispute that plaintiff Colgate would qualify as a third-party beneficiary. With

14     respect to C.D. and L.B., JLI argues that because selling JUUL products to minor is illegal, they

15     cannot have been the intended beneficiaries of any contract JUUL entered into. ECF 629 at 10.

16     Plaintiffs, however, allege that nearly every aspect of JLI's sale of JUUL—the product design,

17     the use of flavors, the youth-focused marketing efforts—was designed with an intention to attract

18     minors to the product. CAC ¶¶ 127-145, 261-405. The fact that this conduct is unlawful is not a

19     defense; otherwise a company accused of engaging in illegal conduct would be able to avoid

20     liability simply by pointing to the fact that its conduct was illegal. JLI cites no authority that

21     would sanction this perverse result.

22        The cases JLI cites are inapposite as the plaintiffs in each were not purchasers of

23     consumer goods. In *HP Debt Exch. LLC v. Wells Fargo Bank N.A.* defendant Wells Fargo had

24     acquired mortgage notes from another bank, sold those notes to another debt-purchasing

25     company, who then sold the notes to another debt-purchasing company, who then finally sold the

26

---

[10] California Plaintiffs are aware of the Court's holding in *Zeigler* that a labeling and advertising
27   exception is limited to express warranty claims, and plaintiffs do not argue for the application of
    that exception to their implied warranty claims.
28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1  notes to plaintiff.  No. C-13-04717 EDL, 2014 WL 12600279, at *1 (N.D. Cal. June 4, 2014).

2  The Court held that despite the fact that defendant allegedly knew that the plaintiff would

3  eventually purchase the notes, there was no evidence that plaintiff was an intended beneficiary of

4  Well Fargo's initial sale of the notes to a third-party.  *Id.* at *8.  Similarly, the Court in *E.*

5  *Aviation Group, Inc. v. Airborne Express, Inc.* explained that there "is an important difference

6  between *knowledge* that a certain outcome will occur, and an *intent* to bring about that result."  6

7  Cal. App. 4th 1448, 1453 (1992) (emphasis in original).  In this case, regardless of whether JLI's

8  initial sales of JUUL products were to distributors, retailers, or consumers, JLI not only had

9  knowledge that consumers would ultimately purchase the product, but it intended for them to do

10 so.  *See Clark v. LG Electronics U.S.A. Inc.*, No. 13-cv-485 JM (JMA), 2013 WL 5816410, at

11 *12 (C.D. Cal. Oct. 29, 2013) (implied warranty of merchantability claims "may be brought . . .

12 by the intended consumers of a product as third-party beneficiaries of the contract between the

13 manufacturer and the authorized seller of the product").  And the application of the third-party

14 benefit doctrine is particularly apt for implied warranty of merchantability claims, which focus of

15 the fitness of the product for ordinary *use*.  Distributors and retailers could never be the intended

16 beneficiaries of such a warranty.

17                    **b.**      **The Exception for Products for Human Consumption Applies**

18            It is an "established California rule that the consumer of a food product may recover from

19 the manufacturer upon implied warranty" even where "there have been intermediate sales by one

20 or more dealers."  *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 606-07 (1960); *see also*

21 *Mexicali Rose v. Super. Ct.*, 1 Cal. 4th 617, 621 (1992) ("foodstuffs do not fall within the general

22 rule of privity between the manufacturer and the consumer, even though the purchase is made

23 through a retailer") (citation omitted); *Bland v. Sequel Natural, Ltd.*, No. 18-cv-04767-RS, 2019

24 WL 4674337, at *3 (N.D. Cal. Aug. 2, 2019) (recognizing that the "foodstuffs" exception applies

25 to economic loss claims).  The so-called "foodstuffs" exception is based on the public policy of

26 ensuring that products for human consumption are safe (in other words, that they are

27 merchantable).  *Id.*  The exception thus applies to a claim that "relates to food or other

28 substances intended for consumption by consumers."  *Cabrera v. Bayer Healthcare, LLC*, No.

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1    LA CV17-08525 JAK (JPRx), 2019 WL 1146828, at *11 (C.D. Cal. Mar. 6, 2019) (applying

2    exception to multivitamins).  Courts have broadly applied the exception to products other than

3    food, including drugs, pesticides, tampons, and dog food.  *See Gottsdanker*, 182 Cal. App. 2d at

4    606-07 (applying the exception to drugs because they were also "designed solely for the

5    introduction into the body"); *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 720 (2001)

6    (applying exception to pesticides); *Choi v. Kimberly-Clark Worldwide, Inc.*, No. SA CV 19-

7    0468-DOC (ADSx), 2019 WL 4894120, at *10 (C.D. Cal. Aug. 28, 2019) (applying exception to

8    tampons because they are "directly consumed by the public"); *In re Big Heart Pet Brands Litig.*,

9    No. 18-CV-00861-JSW, 2019 WL 8266869, at *29 (N.D. Cal. Oct. 4, 2019) (applying exception

10   to dog food because of public policy to "safeguard public health").  JUUL products are similarly

11   designed for the "ultimate consumer" and for human consumption, and thus fall within the ambit

12   of the "foodstuffs" privity exception.

13                    **2.      California Plaintiffs Have Sufficiently Alleged That JUUL Products
                               Did Not Conform to the Implied Warranty of Merchantability**

14

15          California Plaintiffs allege that JUUL products did not conform to the implied warranty

16   because: (1) they do not conform to statements made on the products' labels and (2) they are not

17   merchantable for the purpose for which they are sold and are not fit for ordinary use.  CAC ¶

18   689.  The Court previously upheld these same allegations.  *Colgate*, 402 F. Supp. 3d at 756-57.

19          As to the first claim, JLI argues that none of the California Plaintiffs alleged that they

20   relied on statements on the label.  Reliance is not, however, an element of an implied warranty of

21   merchantability claim.[11]  In addition, as noted above, reliance is a highly factual inquiry that is

22   generally not suited for resolution on a motion to dismiss.  In any event, Colgate has alleged that

23   he relied on statements that JUUL is an alternative to cigarettes.

24

25   _____

26   [11] The implied warranty of merchantability is distinguishable from other implied warranties, such
     as the implied warranty for fitness for a particular purpose where a seller represents that a product
     will be for a specific use. *Compare* CACI No. 1232 (requiring reliance for claims of Implied

27   Warranty for Fitness for a Particular Purpose) *with* CACI No. 1231 (no reliance element for
     Implied Warranty of Merchantability).

28

1    As to the second way in which JLI breached its implied warranties, the Court has already

2    held that plaintiffs' allegations concerning "JUUL's formulation" and the false equivalency

3    between the nicotine content in cigarettes and JUUL are sufficient to state a claim that the

4    products "do not possess even the most basic degree of fitness for ordinary use."  *Colgate*, 402 F.

5    Supp. 3d at 757 (citation omitted).  In addition, California Plaintiffs allege that JUUL products

6    are not fit for ordinary use because they pose substantial risks of injury.  JLI contends that it

7    cannot be liable for Plaintiffs' expectations and that its products perform in accordance with their

8    intended use of delivering nicotine.  But Plaintiffs' implied warranty claims do not depend on

9    allegations are not about their expectations or whether JUUL products perform basic functions,

10   but whether they are "fit" for ordinary use by consumers.  *See Isip v. Mercedes-Benz USA, LLC*,

11   155 Cal. App. 4th 19, 27 (2007) (implied warranty not satisfied "merely because a vehicle

12   provides transportation from point A to point B");  c*f. Viggiano v. Hansen Natural Corp.*, 944 F.

13   Supp. 2d 877, 896 (C.D. Cal. 2013) (dismissing implied warranty claims because sodas were not

14   "premium" as advertised and the plaintiff did not allege the product was contaminated).  JLI's

15   labels, public statements, and filings in this litigation have consistently asserted that the products

16   are intended to be used as alternatives to cigarettes and that a pod is equivalent to a pack of

17   cigarettes.  But "[a] product that causes the body to absorb twice as much nicotine as a

18   combustible cigarette cannot fairly be considered a cigarette replacement as a matter of law."

19   *Colgate*, 402 F. Supp. 3d at 757.

20         **D.     California Plaintiffs Have Sufficiently Alleged Their UCL and FAL Claims**

21                  **1.     California Plaintiffs Allege Fraudulent, Unlawful, and Unfair Conduct**

22   JLI contends that California Plaintiffs have failed to allege actionable fraudulent conduct

23   under the UCL and FAL, and any unlawful or unfair conduct under the UCL.  Just as it did in

24   *Colgate*, the Court should reject JLI's arguments.

25         ***Fraudulent Conduct***: For the reasons outlined above in sections III.B.2 and III.B.3, JLI

26   has engaged in fraudulent misrepresentations and omissions in violation of both the UCL and

27   FAL.[12]

28   [12] JLI's argument that a duty to disclose under common law fraud requires a direct transaction

*Footnote continued on next page*

- 20 -

*Unlawful Conduct*: JLI's conduct constitutes "unlawful" conduct under the UCL because it violates numerous statutes. As described in an accompanying opposition brief, Plaintiffs have properly alleged a violation of RICO. And JLI does not dispute that if California Plaintiffs sufficiently allege a breach of implied warranty, they will also have alleged a violation of the Magnuson-Moss Warranty Act. With respect to Cal. Bus. & Prof. Code § 22963 (the "SKATE"—Stop Tobacco Access to Kids Enforcement—Act) and Cal. Penal Code § 308, JLI also does not dispute that Plaintiff L.B. has alleged a violation of the statutes, both of which prohibit the furnishing of JUUL products to minors. ECF 629 at 13. JLI contends that C.D. does not claim that JLI ever furnished him JUUL products. *Id.* But the STAKE Act prohibits the *indirect* furnishing of tobacco products to minors (Cal. Bus. & Prof. Code § 22963(a)), and Plaintiffs allege that JLI—through its marketing and advertising—caused minors to be the ultimate users of products that it introduced into the market for sale. Section 308 of the Penal Code likewise prohibits companies from "in any way" furnishing cigarette products to minors.

*Unfair Conduct*: JLI's conduct constitutes unfair practices under the UCL because it (1) created, marketed, and sold products that were engineered to create and sustain addiction and that had a high propensity to cause other physical injuries and (2) misrepresented and omitted key facts concerning JUUL products, including that the products were alternatives to cigarettes and delivered an equivalent amount of nicotine, the potency and addictiveness of their nicotine delivery, and the health risks associated with the products. And both JLI and Altria engaged in unfair conduct by working together to create and protect a strategy of marketing products to minors.

JLI does not dispute that Plaintiffs sufficiently plead "unfair" practices under the UCL. *See Colgate*, 402 F. Supp. 3d at 758-59 (finding that the California Plaintiffs stated a claim under

---

*Footnote continued from previous page*

between the parties has no application to California Plaintiff's UCL claims. Under Cal. Bus. & Prof. Code § 17204, a plaintiff has standing under the UCL so long as he or she lost "money or property" as a result of an unlawful practice. *See Clayworth v. Pfizer*, 49 Cal. 4th 758, 788 (2010) (indirect purchasers had standing under UCL where they lost "money or property" as a result of the unlawful business practice); *see also* section III.D.3 below. Thus, even if a lack of direct transaction was a basis to dismiss California Plaintiffs' common law omission claims in whole or in part, that would not provide a basis for dismissing their UCL claims.

the UCL's unfair prong).  Instead, JLI argues that plaintiffs cannot state a claim for unfair conduct because they do not also bring claims for personal injury damages.  ECF 629 at 13.  As an initial matter, JLI's conduct is unfair not only because it omitted information concerning the health risks associated with JUUL; it is also unfair because it misrepresented and omitted information concerning JUUL's nicotine delivery and whether JUUL products were equivalent and alternatives to traditional cigarettes.  And with respect to safety-related omissions, JLI again conflates a claim for economic loss resulting from the purchase of a dangerous product (which plaintiffs allege in the CAC) with physical injuries resulting from the use of that product (which plaintiffs do not allege in the CAC).  The fact that plaintiffs are not seeking personal injury damages in the CAC has no bearing on their ability to seek damages for economic loss related to their purchases, and JLI cites no authority suggesting that it does.  *See Bryde*, 2016 WL 6804584, at *13 (rejecting the contention that plaintiffs must plead physical injuries and finding economic injuries sufficient); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prods Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585, at *4 (C.D. Cal. June 17, 2013) (approving settlement for economic loss claims where the settlement expressly carved out and did not release claims for personal injury).  JLI also repeats its refrain that plaintiffs have failed to allege actionable omissions and misrepresentations but, as noted above and in *Colgate*, they have.

    With respect to California Plaintiffs' claims that JLI engaged in unfair youth-focused marketing, JLI incorrectly argues that plaintiffs L.B. and C.D. were not "subjected to such targeting."  ECF 629 at 13.  C.D. and L.B. allege that they saw JUUL promotional materials, including those advertising fruit and dessert flavored pods (CAC App'x A ¶¶ 271, 781), which plaintiffs allege were a central component of JLI's youth-focused marketing.  CAC ¶¶ 134-66.  In October 2018, in response to a letter from then FDA commissioner Scott Gottlieb concerning "widespread use by minors," JLI announced that it would "stop[] flavored JUUL pod sales to all 90,000+ retail stores."  *Id*. ¶¶ 479-82.  The FDA has agreed that a ban on flavored e-cigarette products is necessary to prevent the targeting of youth and minors.  *Id*. ¶ 508.  C.D. also alleges that he was influenced by JLI's viral and social media marketing (CAC App'x A ¶¶ 274-78),

- 22 -

1    which plaintiffs allege was intended to reach minors who frequent online platforms.  CAC ¶¶

2    281-319.

3                    **2.      California Plaintiffs May Pursue Claims for Equitable Relief**
                             **Alongside Other Claims**
4

5           JLI asserts that California Plaintiffs cannot assert a UCL claim because they have failed

6    to show that no legal (as opposed to equitable) remedies are available to them.  ECF 629 at 14.

7    To the contrary, UCL and FAL claims may be pled alongside legal claims as alternate grounds

8    for relief.

9           Business and Professions Code section 17205 states that "[u]nless otherwise provided,

10   the remedies or penalties provided by this chapter are cumulative to each other and to the

11   remedies and penalties available under all other laws of this state."  Relying on this provision,

12   the California Supreme Court in *State of California v. Altus Finance* held that "the fact that there

13   are alternative remedies under a specific statute does not preclude a UCL remedy, unless the

14   statute itself provides that the remedy is to be exclusive."  36 Cal. 4th 1284, 1303 (2005); *see*

15   *also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566 (1998) ("the

16   Legislature has clearly stated its intent that the remedies and penalties under the UCL be

17   cumulative to other remedies and penalties").  None of JLI's cases cite or grapple with section

18   17205, *Altus*, or *Stop Youth*.  Courts in this District that have cited those authorities have rejected

19   JLI's argument.[13]  The FAL contains a similar "cumulative remedies' provision, and courts have

20   likewise held that the availability of monetary damages does not preclude a claim for equitable

21   relief under the FAL based upon the same conduct."  Cal. Bus. & Prof. Code § 17534.5; *Tucker*

22

23   _____
     [13] *E.g. Muniz v. Wells Fargo & Co.*, No. 17-cv-04995-MMC, 2018 WL 2197556, at *4 (N.D. Cal.
24   May 14, 2018) ("the Court is not persuaded that Muniz's UCL claim should be dismissed on the
     ground that Muniz has an adequate remedy at law"); *Luong v. Subaru of Am., Inc.*, No. 17-cv-
25   03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) ("The availability of monetary
     damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the
26   same conduct."); *Madani v. Volkswagen Group of Am., Inc.*, 17-cv-07287-HSG, 2019 WL
     3753433, at *9 (N.D. Cal. Aug 8, 2019) ("the Court is persuaded that, at the pleading stage,
27   theories of equitable remedies are not barred by a plaintiff adequately pleading theories
     supporting monetary relief").
28

                                                        PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
                                                        DISMISS CALIFORNIA SUBCLASS CLAIMS
                                                        CASE NO. 19-MD-02913-WHO
     2005096.1

1   *v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at *7 (N.D. Cal.

2   Apr. 21, 2020).

3        Plaintiffs are aware that a panel of the Ninth Circuit recently upheld the dismissal of a

4   UCL claim for restitution on the eve of trial based on the plaintiffs' failure to demonstrate that

5   there was no adequate remedy at law.[14]   *Sonner v. Premier Nutrition Corp.*, No. 18-15890, --

6   F.3d--, 2020 WL 3263043 (9th Cir. June 17, 2020).  The panel decision in *Sonner* does not

7   require the dismissal of California Plaintiffs' UCL claims.

8        In *Sonner*, after four years of litigation and just two months before trial, the plaintiffs

9   voluntarily dismissed their only legal claim (under the CLRA) in an attempt to secure a bench

10   trial, rather than a jury trial.  *Id.* at *2.  At the time of the dismissal, the CLRA claim had already

11   survived a defense motion for summary judgment.  *Id.*  The plaintiffs were thus unable to show

12   that the CLRA claim would not provide an adequate remedy.  *Id.*  Here, by contrast, the

13   proceedings are only at the pleading stage, and the extent to which certain legal remedies may or

14   may not be adequate will not be known until much later in the litigation.  Courts in this District

15   have frequently held that, while there cannot be duplicative recovery of damages and restitution,

16   there is no bar to pleading alternative remedies.  *Deras v. Volkswagen Group of America, Inc.*,

17   No. 17-cv-05452-JST, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018) ("this Court finds no

18   bar to the pursuit of alternative remedies at the pleadings stage") (citation omitted); *Adkins v.*

19   *Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("this

20   Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing

21   their equitable claims in the alternative to legal remedies at the pleadings stage").

22        The *Sonner* panel also did not address—because it was not raised by plaintiffs—the

23   implications when the UCL provides for relief based on conduct that is not actionable under other

24   claims for relief.   Relief for "unfair" conduct, for example, is not available under any of

25   Plaintiffs' legal claims.  Another example of the differences between California Plaintiffs' UCL

26   

---

[14] Plaintiffs request that even if the Court dismisses California Plaintiffs' claims based on *Sonner*, that it nonetheless resolves the other issues concerning California Plaintiffs' UCL claims in the event an *en banc* panel of the Ninth Circuit reverses the panel's decision in *Sonner*.

27   

28

claims and their legal claims is that while the UCL broadly prohibits all fraudulent and deceptive actions, their implied warranty and CLRA claims prohibit only specifically enumerated types of misconduct. JLI also argues that common law fraud-based omissions are only actionable if there is a direct transaction between the parties (ECF 629 at 7-8), but, as explained in the next section, there is no similar limitation for UCL or FAL claims.

The differences between the conduct prohibited and relief available under California Plaintiffs' equitable and legal claims weigh in favor of permitting California Plaintiffs to pursue alternative remedies at this stage of the litigation, as Plaintiffs' legal claims may not provide adequate remedies for their UCL claims. In *Johnson*, for example, the court denied a motion to dismiss equitable claims because the theory underlying those claims was "separate and apart from their breach of warranty theory." 272 F. Supp. 3d at 1186; *see also Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 933 (N.D. Cal. 2012) ("[P]laintiff indicates that his restitution claim is based on Apple's alleged fraud, and is pleaded in the alternative to his breach of contract claims. The court agrees that if plaintiff prevails on his consumer protection claims but not under a contract theory, he may seek recovery in the form of restitution.").

In short, while the Court will ultimately need to "determine the adequacy of a remedy in law before resorting to equitable relief . . . it is premature to make the determination [at the motion to dismiss stage]." *Johnson*, 272 F. Supp. 3d at 1186. Nothing in *Sonner* changes this common-sense approach.

### 3. California Plaintiffs Have Sufficiently Alleged an Entitlement to Restitution from JLI.

JLI also argues that California Plaintiffs have not sufficiently alleged that they conveyed funds to JLI directly or indirectly. ECF 629 at 15. JLI's argument misconstrues the California Supreme Court's holding in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), which the California Court of Appeal has held "does not limit UCL restitution claims to direct purchases as a matter of law." *Cabebe v. Nissan of N. Am., Inc.*, No. 18-cv-00144-WHO, 2018 WL 5617732, at *5. (N.D. Cal. Oct. 26, 2018) (citing *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1498 (2007)).

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

The fact that California Plaintiffs purchased JUUL from third parties is not grounds for dismissal of their UCL or FAL claims.  A plaintiff need only demonstrate that he or she lost money or property "as a result of" a defendant's unlawful conduct.[15]  Cal. Bus. & Prof. Code § 17204.  Consistent with the UCL's statutory language, *Korea Supply* "'does *not* hold that a plaintiff who paid a third party money (*i.e.*, money in which the plaintiff had a vested interest) may not seek UCL restitution from a defendant whose unlawful business practice caused the plaintiff to pay that money.'"  *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *31 (N.D. Cal. May 27, 2016) (quoting *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338. (2009)).  In *Ferington v. McAfee, Inc.*, for example, the plaintiff alleged that when attempting to purchase McAfee anti-virus software, McAfee's website transferred plaintiffs' billing information to another company whose software the plaintiffs were misled into purchasing.  No. 10-CV-01455-LHK, 2010 WL 3910169, at *1 (N.D. Cal. Oct. 5, 2010).  Even though the plaintiff did not purchase a McAfee product—even indirectly—the court found that the plaintiff could pursue a UCL claim against McAfee and rejected McAfee's *Korea Supply* defense.  *Id*. at *7-8 (relying on *Troyk*).  Furthermore, in *Cabebe*, the plaintiffs purchased used Nissan cars from an Acura dealer and CarMax, and Nissan argued, like JLI here, that the plaintiffs could not assert a UCL claim because they "bought their vehicles from a third-party and do not allege that Nissan received any money or property as a result of that transaction."  2018 WL 5617732, at *2, *5.  Relying on *Korea Supply* and other cases from California courts, this Court held that plaintiffs had sufficiently alleged an entitlement to restitution under the UCL.  *Id*. at *5.[16]

---

[15] JLI does not contend that a different standard applies to California Plaintiffs' FAL claims than their UCL claims.  Proposition 64, passed in 2004, amended both statutes to include identical "lost money or property as a result of" standards.  *See* Cal. Bus. & Prof. Code § 17535.

[16] In *Aberin v. American Honda Motor Company, Inc.*, the defendant also sought to dismiss the plaintiff's UCL claim because it "obtained no money from the purchases of used vehicles."  No. 16-cv-04384-JST, 2018 WL 1473085, at *8 (N.D. Cal. Mar. 26, 2018).  The court held that the defendant "overreads *Korea Supply*" and noted that in *Korea Supply* not only had the plaintiff not paid the defendant money, it had "not paid anyone any money." *Id*. at *8-9.  *See also McCarthy v. Toyota Motor Corp.*, No. 8:18-cv-00201-JLS-KES, 2018 WL 6318841, at *6-7 (C.D. Cal. Sept. 14, 2018) (rejecting argument that "Plaintiffs are not entitled to restitution because Plaintiffs

*Footnote continued on next page*

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1    California Plaintiffs allege that they lost money or property as a result of JUUL's

2    unlawful conduct and JLI benefits from those sales.  Nothing more is needed and "[n]othing in

3    the language of *Korea Supply* suggests that the [California] Supreme Court intended to preclude

4    consumers from seeking the return of money they paid for a product that turned out to be not as

5    represented."  *Shersher*, 154 Cal. App. 4th at 1498.  California Plaintiffs' UCL allegations form a

6    stronger entitlement to restitution than did the purchasers in *McAfee* (who did not even purchase

7    a product sold by the defendant) or buyers of used cars from third parties (whose purchases do

8    not even have an indirect connection to the original manufacturers).  Whether C.D. purchased

9    from a classmate or L.B. purchased from eBay, those purchases began with JLI's initial sale of

10   the products (which benefits JLI financially) and are tied to JLI's unlawful conduct.

11   Finally, JLI asserts that California Plaintiffs are required to trace *exactly* how JLI

12   benefitted financially from their purchases, but "[c]ourts have not required, however, that to

13   plead a viable UCL claim, plaintiffs must allege every transaction through which a *res* travels

14   from them to the defendant."  *Acedo v. DMAX, Ltd.*, No. CV 15-02443 MMM (SAx), 2015 WL

15   12696176, at *19 (C.D.  Cal. Nov. 13, 2015).

16          **4.      California Plaintiffs Have Standing to Pursue Their Claims Against
                       JLI.**
17

18   JLI does not dispute that Colgate and C.D. have standing to bring their UCL claims, but

     argues that L.B. lacks standing because she has not sufficiently alleged that she made purchases
19

20   of JUUL products.  ECF 629 at 16.  But L.B.'s allegations are clear that she purchased JUUL,

     including from at least one from an unknown source and at least one from eBay.  As noted
21

22   above, a plaintiff need not allege that she made a purchase from a source that conveyed those

     funds to JLI (the only question is whether JLI's conduct contributed to the plaintiff losing money
23

24   or property), and it is thus irrelevant whether the source of one of L.B.'s purchases was known or

     _____

25   *Footnote continued from previous page*
     allege that they purchased their vehicles from independently-owned dealerships, and thus Toyota
26   did not 'directly' take Plaintiffs' money"); *Annuziato v. eMachines, Inc.*, No. SACV 05-
     610JVBS(MLGX), 2005 WL 5955673, at *2-3 (C.D. Cal. Nov. 7, 2005) ("Annuziato purchased a
27   . . . laptop manufactured by eMachines . . . from BestBuy.  Unlike the plaintiffs in *Korea Supply* .
     . ., Annuziato is seeking the return of money that once his.").

28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1    unknown.  And L.B.'s mother stated that she "knows" L.B. made at least one purchase from

2    eBay; therefore JLI's contention that L.B.'s mother only "believes a purchased occurred" (ECF

3    629 at 16) misconstrues the allegations.

4              **5.       Altria is Liable for Participating in a Scheme to Target Minors[17]**

5              Altria asserts that it cannot be liable for a violation of the UCL's unfairness prong for its

6    participation in the targeting of youth for a myriad of reasons, most of which are based on the

7    fact that JLI, and not Altria, sells JUUL products.  Altria's arguments misconstrue California

8    Plaintiffs' claims and misapply the governing law under the UCL.

9              **a.       Altria's Conduct Violated the Unfairness Prong of the UCL**

10             As the Court in *Colgate* and JLI both note, California courts have applied two standards

11   for determining whether conduct is "unfair" under the UCL—the balancing test and the tethering

12   test.  *Colgate*, 402 F. Supp. 3d at 758; ECF 629 at 19.  Under the balancing test—also called the

13   *Sperry* test—an act is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive,

14   or unscrupulous; or (3) causes substantial injury to consumers.  *Colgate*, 402 F. Supp. 3d at 758.

15   The tethering test requires that the conduct violate a public policy that is "tethered to specific

16   constitutional, statutory, or regulatory provisions."  *Id*.  The Court previously held that the

17   targeting of minors satisfies either standard, particularly in light of the public policy of

18   preventing tobacco and nicotine use by minors that is embodied in several California statutes.

19   *Id*. at 760; *see also* Bus. & Prof. Code § 22963 (prohibiting the direct or indirect sale of tobacco

20   products to minors) and Cal. Penal Code § 308 (prohibiting the furnishing of tobacco products to

21   minors).

22             Altria argues that is cannot be liable for conduct related to the targeting of minors

23   because the CAC contains "no allegation that [Altria] marketed, advertised, or promoted JUUL

24   products."  ECF 629 at 18.  Altria then isolates three of plaintiffs' allegations related to Altria

25   and argues that none of those three allegations is sufficient to hold liable for unfair conduct

26   related to youth marketing.  *Id*.  Altria's argument is unpersuasive for several reasons.

27   ――――――――――――――
     [17] California Plaintiffs' UCL claims against Altria are limited to minors, and plaintiff Colgate
28   therefore does not assert an unfairness claim under the UCL against Altria.

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

First, a plaintiff's allegations must be viewed on the whole, and not broken down into their component parts. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933-34 (N.D. Cal. 2013) (looking to the "nature of the alleged scheme" to conclude that plaintiffs stated a "plausible claim" when "[t]aking the allegations as a whole and in the light most favorable to Plaintiffs"). Plaintiffs allege that Altria was aware that JUUL products were being deliberately marketed to minors, that Altria provided a wide range of assistance to JLI generally that contributed to those sales to minors (including providing expanded in-store distribution, a primary source of youth purchases), and that Altria itself took affirmative steps to preserve JUUL's market. CAC ¶¶ 419-58. After being provided JLI's "Youth Prevention Studies," Altria knew that JLI had developed a large customer base of teens for Mint JUULpods. Altria, however, misrepresented mint flavored products as "as a non-flavored tobacco and menthol product" targeted at adult smokers when in fact Altria knew that (1) the support it offered for the proposition was not a scientific study but merely a "quasi-experimental online survey"; (2) the Youth Prevalence Study JLI cited was designed to avoid recording youth preference for the mint flavor; (3) actual studies in defendants' possession contradicted the flawed "studies" they cited; and (4) defendants understood mint was not actually a menthol product and its popularity was not based on attracting menthol smokers. CAC ¶¶ 473-89, 492-94. These allegations are sufficient to state a plausible claim that Altria has engaged in unfair conduct under either the balancing or tethering test.

Second, Altria need not have marketed or sold JUUL products for liability to attach under the UCL. Regardless of whether Altria itself sold JUUL products, its coordinated efforts with JLI to preserve the youth JUUL market offended public policy against the sale of e-cigarettes to minors and thus constitutes unfair conduct under the UCL. As an initial matter, "it is sufficient that the defendant aided and abetted the principal violator." *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984)); *see also People v. Sarpas*, 225 Cal. App. 4th 1539, 1563 (2014) ("[L]iability under the UCL may be imposed against those who aid and abet the violation."); ECF 632 at 32 (citing *Ferrari v. Mercedes-Benz USA, LLC*, No. 15-cv-4379-YGR, 2016 WL 658966, at *4 (N.D. Cal.

Feb,. 18, 2016), which discussed the availability of an aiding and abetting theory under state law).

Plaintiffs' allegations that Altria provided material assistance to JLI's efforts to market JUUL products to youth are thus sufficient.

Third, Altria's statements to the government regulators—which had the purpose and effect of harming consumers—are actionable.  Altria asserts that its statements demonstrate that it was trying to curb youth vaping and enhance sales to adult smokers, but plaintiffs allege that these statements are pretext and that Altria not would have invested in JUUL if its true intentions were to prevent youth e-cigarette use.  *E.g.* CAC ¶ 416.  Competing inferences should be viewed in the light most favorable to plaintiffs.  *Usher*, 828 F.2d at 561.  In addition, while the *Noerr-Pennington* doctrine provides First Amendment immunity for legitimate efforts to petition the government, "[t]here is no first amendment protection for furnishing with predatory intent false information to an administrative or adjudicatory body."  *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982).  And, the *Noerr-Pennington* doctrine—a First Amendment protection—does not immunize a defendant's statements "if they include making intentional misrepresentations to the court" or other body that deprive an adjudicative process of its legitimacy.  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) ); *see also U.S. ex rel. Wilson v. Maxxam, Inc.*, No. C 06-7497 CW, 2009 WL322924 (N.D. Cal. Feb 9, 2009) (applying "intentional misrepresentation" exception to statement made to state administrative agency).  Plaintiffs have alleged that Altria deliberately misrepresented facts to the FDA, and that the purpose of those misrepresentations—including presenting the results of studies Altria knew were misleading—was to deprive the FDA of its ability to make fully-informed decisions.  CAC ¶¶ 472-505.  The FDA itself noted that Altria had made statements "inconsistent with [Altria's] previous representations to the FDA."  *Id.* ¶ 499.  *See also* Plaintiffs' Opposition to Motion to Dismiss RICO Claims at section IV.C.2.b.(4). (discussing the application of *Noerr-Pennington* to Altria's false statements to governmental bodies).  Altria is also incorrect that its communications to the FDA are preempted based on *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001).  ECF 632 at 22.  *Buckman* concerned claims that "exist[ed] *solely* by virtue of the FDCA disclosure requirements."

1  *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015) (quoting *Buckman*, 531 U.S. at

2  352-53).  None of the statements Altria made to the FDA or the public were mandated by the

3  disclosure requirements of the FDCA or any other federal law.

**b.     California Plaintiffs' Unfairness Claims Against Altria Are Not**
**Subject to 9(b)**

6     California Plaintiffs' claims against Altria are brought under the UCL unfairness prong,

7  and *not* the UCL's fraudulent or deceptive conduct prong.  *See* CAC ¶ 647 ("All Defendants

8  engaged in conduct that is unfair and unconscionable"); *compare with id*. ¶ 646 (claim alleging

9  "fraudulent and deceptive" conduct related to targeting minors brought against only "JLI and the

10  Management Defendants").

11     Altria, however, asserts that the Court should dismiss California Plaintiffs' UCL claims

12  against Altria because they fail to sufficiently plead "fraud or mistake" or the "who, what, where,

13  when and how" of the alleged fraud.  ECF 632 at 14-15.  But California Plaintiffs' "unfairness"

14  claims are distinct from their claims of fraud and are thus not subject to the pleading

15  requirements of Rule 9(b).[18]  *Vess*, 317 F.3d at 1104 ("[A] plaintiff may choose to allege . . .

16  some fraudulent and some non-fraudulent conduct.  In such cases, only the allegations of fraud

17  are subject to Rule 9(b)'s heightened pleading requirements.").  Altria's citations to this Court's

18  holdings in *Colgate* "addressing fraud-based claims" are thus entirely inapposite.  ECF 632 at 14.

19  In *Colgate*, JLI—like Altria now—argued that Rule 9(b) applied to plaintiffs' claims.  402 F.

20  Supp. 3d at 758.  The Court analyzed the California Plaintiffs' unfairness claims under the

21  *Sperry* and tethering tests without applying Rule 9(b) or any other requirements applicable to

22  fraud-based claims.  The Court's "instruction in *Colgate* about what a plaintiff must plead to

23  state a claim" for fraud-based claims is irrelevant to California Plaintiffs' unfairness claim, as is

---

[18] Rule 9(b) may apply to claims under the UCL's other prongs where the allegations sound in
fraud and are essentially the same as a plaintiff's fraud claims.  California Plaintiffs' allegation
that defendants' targeting of youth is unfair does not, however, depend on proving that any of
their conduct was fraudulent or deceptive.  Even if defendants' youth marketing efforts had been
entirely transparent, California Plaintiffs contend that such conduct would still be unfair and
unlawful under the UCL.

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1  Altria's contention that none of the plaintiffs "identifies any statement or deception."  ECF 632

2  at 15.  For the same reasons, the California Court of Appeals' decision in *Pfizer Inc. v. Superior*

3  *Court* is also inapplicable.  182 Cal. App. 4th 622, 629-30 (2010) ("we are here concerned with

4  the third prong of the statute—an allegation of a fraudulent business act or practice").  Even if

5  the Court were to apply Rule 9(b) to aspect of Altria's unfair conduct, those allegations

6  sufficiently alleged the who (Altria), what (the statements made by Altria to the FDA), when (the

7  date of the statements to the FDA), where (in communications to the FDA), and how (by

8  misleading the FDA concerning the appeal of JUUL flavors to youth).

9  **c.      California Plaintiffs May Seek Restitution from Altria**

10  Altria also asserts that California Plaintiffs have failed to establish an entitlement to

11  restitution from Altria because (1) its conduct did not cause plaintiffs any injury and (2) plaintiffs

12  cannot obtain restitution from Altria for sales of JUUL.  ECF 632 at 15-18.  The Court should

13  reject both arguments.

14  As Altria notes, the UCL's requirement that a plaintiff lost "money or property as a result

15  of" a defendant's conduct "requires a showing of a causal connection *or* reliance on the alleged

16  misrepresentation."  *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) (emphasis added).  In

17  other words, a plaintiff need not plead reliance if he or she can demonstrate a causal connection

18  between the defendant's conduct and the plaintiff's injury, which makes sense when, as here, a

19  claim is based on unfair conduct as opposed fraudulent statements.  Altria's focus on whether

20  plaintiffs relied on Altria's misconduct is therefore misplaced.  And whether a defendant's

21  conduct is a cause of a plaintiff's injuries is a highly factual issue that is not suited to resolution

22  on a motion to dismiss.  *See Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional*

23  *Planning Agency*, 34 F.3d 753, 756 (9th Cir. 1994) (reversing motion to dismiss on causation

24  because "a question of causation is preeminently a question of fact, to be decided after trial").

25  C.D. and L.B. are both minors who have purchased JUUL products and have continued to use

26  them, and both allege that flavors were an important factor that has contributed to their JUUL

27  use.  CAC App'x A ¶¶ 271, 781, 784. *Cf. Phillips v. Apple Inc.*, No. 15-cv-04879-LHK, 2016

28  WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (no allegations of product purchases after being

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1   exposed to the allegedly misleading statements).  While they began their JUUL usage prior to

2   Altria's alleged wrongful conduct, the extent to which Altria's conduct has contributed to their

3   ongoing JUUL usage is a highly factual question that should not be resolved on a motion to

4   dismiss.

5          Altria also argues that because it did not receive any of the specific funds spent by

6   California Plaintiffs on their JUUL purchases, plaintiffs cannot seek restitution from Altria.  ECF

7   632 at 16-18.  Like JLI, Altria's view of the situations in which a party can be liable in restitution

8   is too narrow.  As explained above, the California Supreme Court's holding in *Korea Supply*

9   does not limit restitution to the direct purchasers of a product.  *See* section III.D.3, *supra*.  Nor is

10  restitution limited to situations in which the defendant directly or indirectly received the

11  proceeds of the sale that forms the basis of the plaintiff's restitution claim.  In *McAfee* and cases

12  upholding claims by used car purchasers, plaintiffs stated claims for restitution even though the

13  defendants would not have necessarily received any of the proceeds from the sales at issue.  *Id.*

14         In addition, while Altria may not have directly received the proceeds of JUUL sales,

15  plaintiffs allege that Altria did benefit financially as a result of its arrangement with JLI and the

16  perpetuation of the youth marketing scheme.  As a result of its December 2018 investment,

17  Altria owns an 35% stake in JLI and therefore stands to benefit substantially from JLI's

18  continued sales in the youth market.  CAC ¶ 8.  In *Troyk*, for example, the court held that:

19         In the circumstances of this case, although the class members did not pay the
        service charges directly to either FGI or FIE, the trial court could have properly
20      inferred from the undisputed facts that FGI and FIE received a benefit from those
        service charge payments (which FIE and FGI required) even though they did not
21      directly receive money. As noted above, Prematic was incorporated by, and is a
        wholly owned subsidiary of, FGI. To the extent Prematic earned profits from
22      those service charge payments, its net worth increased and the value of FGI's
        stock investment in Prematic likewise increased, thereby benefiting FGI.
23

24  171 Cal. App. 4th at 1340.  Thus, while Altria may not directly receive the proceeds of the sales

25  of JUUL products, it nonetheless benefits financially.

26         **E.      California Plaintiffs Have Sufficiently Alleged Their CLRA Claim**

27         The CLRA prohibits a wide range of specifically enumerated conduct (Cal. Civ. Code §

28  1770), and California Plaintiffs allege that JLI's conduct violated four categories of enumerated

- 33 -

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

conduct.  CAC ¶ 660.  JLI does not dispute that its alleged conduct fits within the categories of prohibited conduct, but instead generally contends that the CLRA claim fails because "Plaintiffs allege no facts showing JLI deceived them." ECF 629 at 17.[19]  As noted above, California Plaintiffs have sufficiently alleged deceptive misrepresentations and omissions that fall within the scope of the conduct prohibited by the CLRA.

California Plaintiffs allege, for example, that JLI misrepresents that its JUUL pods contain as much nicotine as a pack of cigarettes. CAC ¶ 656.  As noted above, the Court previously held that this allegation states a claim for fraud.  It also states a claim under each of the CLRA prongs at issue, as it: (1) misrepresents the "characteristics, ingredients, uses, benefits, or quantities" of JUUL products, (2) misrepresents that JUUL products "are of a particular standard, quality, or grade," (3) advertises JUUL products in a way that is inconsistent with how they are actually sold, and (4) misrepresents that it has sold JUUL products in "accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(5), (7), (9) and (16).  California Plaintiffs' additional allegations of JLI's misrepresentations and omissions also satisfy each of these CLRA prongs.JLI makes two additional arguments with respect to California Plaintiffs' CLRA claims, both of which the Court should reject.

### 1.    JLI Has Waived Its Right to Seek Dismissal for Failure to File a CLRA Venue Declaration

Plaintiffs Colgate and L.B. have been named plaintiffs in this action for over two years and, before the MDL was created, JLI filed two motions to dismiss Colgate and L.B.'s claims but never sought dismissal for failure to file a CLRA venue declaration.  Again, this is precisely the type of pleading technicality—one that can easily be cured by amendment—that the Court directed JLI to raise in April.  ECF 400 at 2.  JLI did not do so, however.  Plaintiffs request the Court find that JLI has waived its right to seek dismissal for failure to file a CLRA venue declaration.  Even if the Court elects to dismiss the claim, the dismissal is "without prejudice"

---

[19] As discussed in more detail below, there is no requirement that a plaintiff have transacted directly with a defendant to state a CLRA claim.  JLI's arguments concerning the need for a transaction between the parties to state a claim for common law fraud is thus inapplicable to the CLRA.

1    (Cal Civ Code § 1780(d)) and Plaintiffs intend to cure, and thus request that the Court rule on the

2    remaining CLRA issues at this time.

3                    **2.      The CLRA Does Not Require a Direct Transaction With JLI**

4         JLI is wrong that that the CLRA does not apply to "a consumer who did not engage in a

5    covered transaction with the defendant or its agent."  ECF 629 at 17.  As this Court has

6    recognized, "the CLRA does not require a direct transaction between plaintiffs and defendants."

7    *Johnson, Inc.*, 272 F. Supp. 3d at 1183 (collecting cases).  While the CLRA does require a

8    "transaction intended to result or that results in the sale or lease of goods" (Cal. Civ. Code §

9    1770(a)), nothing in the statute requires the defendant and plaintiff be parties to a transaction.

10   Instead, "any consumer who suffers any damage" as a result of a prohibited practice has standing

11   to bring a claim. Cal. Civ. Code § 1780(a).  The cases JLI cites predate the California Court of

12   Appeals' holding in *McAdams v. Monier, Inc.* that "a cause of action under the CLRA may be

13   established independent of any contractual relationship between the parties," 182 Cal. App. 4th

14   174, 186 (2010), and their holdings have not been widely cited or have been outright rejected by

15   other courts.  *E.g. Gray v. BMW of N. Am., LLC*, No. 13-cv-3417-WJM-MF, 2014 WL 4723161,

16   at *6 (D.N.J. Sept. 23, 2014) ("Not only does the weight of the persuasive authority fall against

17   [*Green v. Canidae Corp.*, No. CV-09-0486 GAF (PLAx), 2009 WL 9421226 (C.D. Cal. June 9,

18   2009)], but *Green's* analysis itself is not persuasive.").

19                   **F.      California Plaintiffs Adequately Allege a Standalone Claim for Unjust
                              Enrichment**

20

21        JLI argues that because California Plaintiffs' other claims fail, their unjust enrichment

22   claim must fail as well. The Court rejected this same argument in *Colgate*.  *Colgate*, 345 F.

23   Supp. 3d 1178, 1192 (N.D. Cal 2018) (as "several plaintiffs' claims survive JUUL's motion to

24   dismiss, plaintiffs' unjust enrichment claim is not duplicative").  JLI incorrectly argues that if

25   California Plaintiffs' other claims were dismissed, they could not assert a standalone claim for

26   unjust enrichment.  ECF 629 at 17-18.  In August 2015, "the California Supreme Court []

27   confirmed that unjust enrichment can be a stand-alone cause of action."  *Synopsys, Inc. v.*

28   *Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *23 (N.D. Cal. Aug. 15,

1   2017) (Orrick, J.) (citing *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017)

2   and *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).  Both of the

3   cases JLI cites—*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015) and *Ham v.*

4   *Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014)—predate *Hartford*.[20]  Courts

5   have thus rejected the decision in *Browning v. Unilever United States Inc.*, No. SACV 16-02210

6   AG (KESx), 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), because it "rel[ies] on a Ninth Circuit

7   case that pre-dates the *Hartford* decision."  *In re Wells Fargo Ins. Mktg. and Sales Prac. Litig.*,

8   No. SAML 17-02797 AG (KESx), 2018 WL 9536803, at *8 (C.D. Cal. Dec. 14, 2018).  And

9   even in *Astiana*, the Ninth Circuit upheld a false advertising allegation as a quasi-contract claim

10  that the defendant was unjustly enriched.  *Astiana*, 783 F.3d at 762.[21]

11          Contrary to JLI's assertion, there is no requirement that plaintiffs have purchased JUUL

12  products directly from JLI.  ECF 629 at 18.  *See Hartford*, 61 Cal. 4th at 998 ("a privity of

13  relationship between the parties is not necessarily required.").  Instead of focusing on "bright-

14  line rules," unjust enrichment is an equitable claim in which courts "typically focus on the

15  relation between the plaintiffs' injury and the defendants' conduct."  *In re TFT-LCD (Flat Panel)*

16  *Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011).

17  California Plaintiffs allege they purchased JUUL products as a result of JLI's misconduct, and

18  that JLI is financially enriched by the sale of its products.  *E.g.* CAC ¶¶ 699 (defendants

19  "received a measurable benefit at the expense of plaintiffs"); 636 (defendants "substantially

20  increased sales of JUUL products through a pervasive pattern of false and misleading statement

21  and omissions).  Plaintiffs' allegations are sufficient to state an unjust enrichment claim.  *See*

22  *Barrera v. Samsung Elec. Am., Inc.*, No. SACV 18-00481-CJC(PJWx), 2018 WL 10759180, at

23  *8 (C.D. Cal. Dec. 7, 2018) (plaintiffs stated a claim where they alleged that defendants receive

---

24  [20] JLI argues that the unpublished Ninth Circuit decision in *Bruton* cannot "expand the rule"
    stated in *Astiana*.  ECF 629 at 18, n.9.  But in light of *Hartford*, the "rule" in *Astiana* was no

25  longer good law, and *Bruton* followed the California Supreme Court's post-*Astiana* guidance.
    *See Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *13

26  (N.D. Cal. Mar. 9, 2020) (recognizing that *Astiana* is no longer good law).

27  [21] *Astiana* also held that an unjust enrichment claim can be pled in the alternative.  *See*
    *SharkNinja*, 2020 WL 1139649, at *13.

28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1   financial benefits through the sale of washing machines by independent retailers).  This case

2   presents a situation that is starkly different than the cases on which JLI relies, all of which

3   involve a highly attenuated relationship between the defendant and plaintiff.  *See Doe I v. Wal-*

4   *Mart Stores Inc*, 572 F.3d 677, 685 (9th Cir. 2009) (dismissing unjust enrichment claim of

5   employees of foreign companies with substandard working conditions that sold goods to

6   Walmart); *Uzyel v. Kadisha*, 188 Cal.App.4th 866, 899 (2010) (affirming dismissal of

7   disgorgement action to recover defendant trustee's stock profits when defendant trustee's stock

8   profits were not related to money defendant converted from trust); *Maksoud v. Williams*, No. CV

9   17-3856-MWF (AGRx), 2019 WL 926327, at *10 (C.D. Cal. Jan. 16, 2019) ("Specifically,

10  Plaintiff alleges that in March 2015 he agreed to loan Said $1,150,000 and actually loaned him

11  some portion of this (if not the full amount) for some unspecified purpose, Said filed for

12  bankruptcy several months later and never repaid Plaintiff, and Said transferred these funds to

13  Williams, who either kept the funds or transferred some of them to the Moving Defendants.").

14          **G.      Plaintiffs Are Not Required to Plead the Amount of Damages Incurred or
                      Restitution Owed**

15

16          JLI argues that California Plaintiffs' fraud, implied warranty, UCL, FAL, and CLRA

17  violations should be dismissed because they did not "allege with specificity any economic

18  damage" arising from JLI's unlawful conduct. ECF 629 at 9 (fraud); *see also id.* at 12 ("plaintiffs

19  fail to allege damages from any breach of implied warranty"), 13 ("California Plaintiffs make no

20  allegations from which the Court could determine the measure of restitution") (UCL and FAL),

21  17 ("no facts . . . showing they incurred damages") (CLRA).  Ignoring plaintiffs' allegations, JLI

22  asserts that nicotine addiction is the only damage plaintiffs allege.

23          JLI's arguments grossly distort California Plaintiffs' allegations.  In each cause of action,

24  California Plaintiffs allege that they "would not have purchased JUUL products or would have

25  paid less for them."  CAC ¶¶ 649, 664, 673, 685, 694.  And in their individual factual allegations,

26  each plaintiff states that he or she would not have purchased JUUL absent JUUL's conduct. CAC

27  App'x A, ¶¶ 196, 281, 799.  JLI says these allegations "should be disregarded," but provides no

28  basis or authority for its position.  ECF 629 at 9.  "The Ninth Circuit has held that when a

1   consumer alleges that he or she would not have purchased property, or would have paid less for

2   it, had the seller not misrepresented the property or failed to disclose its limitations, the

3   consumer has plausibly alleged an injury-in-fact." *In re Chrysler-Dodge-Jeep EcoDiesel Mktg.,*

4   *Sales Pracs., and Pros Liab. Litig.*, 295 F. Supp. 3d 927, 945 (N.D. Cal. 2018) (citations

5   omitted); *see also Johnson*, 272 F. Supp. 3d at 1184 (upholding UCL claim alleging that

6   plaintiffs would not have purchased the class vehicles or would have paid significantly less for

7   them); *S.L. Anderson & Sons, Inc. v. PACCAR, Inc.*, No. C18-0742-JCC, 2018 WL 5921096, at

8   *8 (W.D. Wash. Nov. 13, 2018) (similar); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 815,

9   819-20 (9th Cir. 2019) (reversing denial of class certification where the plaintiff alleged that had

10  "he and the other putative class members kn[own] about these defects at the time of sale or lease,

11  [they] would not have purchased or leased the Class Vehicles or would have paid less for them.")

12  (internal quotation marks omitted; second alteration in original); *Fitzhenry-Russell v. Dr. Pepper*

13  *Snapple Grp., Inc.*, 326 F.R.D. 592, 598 (N.D. Cal. 2018) (granting class certification on price

14  premium theory where the plaintiff alleged that had she known the "true nature" of defendant's

15  product, "she would either not have purchased the drink, or would have paid less for it.").

16      A plaintiff need not plead damages or restitution with specificity. *See EcoDiesel*, 295 F.

17  Supp. 3d at 947-48 (rejecting defendants' argument that "Plaintiffs' allegations of overpayment

18  are not particular enough" because it was "at odds with the principle that Article III requires only

19  general factual allegations of injury resulting from defendant's conduct) (citations omitted); *see*

20  *also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of*

21  *reh'g and reh'g en banc* (July 8, 2013) ("There is no requirement, however, that Hinojos

22  separately plead how much he would have paid for the merchandise had he known its true

23  market value.") (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330, n.15 (2011) ("a specific

24  measure of the amount of this loss is not required" to establish standing under the UCL));

25  *Cabebe*, 2018 WL 5617732, at *7 (allegation that "had they known of the CVT Defect, they

26  would not have purchased their vehicles or would have paid less for them" was sufficient to

27  allege injury for standing purposes under Article III and the UCL).  JLI does not cite any cases to

28  the contrary.  The only cases JLI cites discuss how restitution is calculated, but none suggest that

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

1   plaintiffs must plead those calculations in a complaint.  *E.g. In re Vioxx Class Case*, 180 Cal.

2   App. 4th 116 (2009) (class certification decision).[22]

3          **H.**      **The Court Has Subject Matter Jurisdiction Over Each of Plaintiffs' Claims**

4          The parties negotiated a schedule in which JLI agreed to challenge only the claims of the

5   California subclass at this time, and JLI also agreed to identify any of alleged "obvious

6   deficienc[y]" in the complaint by April 10, 2020, so the parties could avoid wasteful motion

7   practice.  ECF 551 at 10; ECF 400 at 2.  Having failed to abide by that process, JLI now seeks

8   dismissal of the claims of an additional twenty-five subclasses and fifty-eight plaintiffs.  The

9   practical implications of JLI's requested relief would be that (1) the Court dismiss the claims of

10   fifty-eight named plaintiffs, (2) those plaintiffs file individual complaints with allegations that

11   are identical to the consolidated complaint, and (3) plaintiffs then re-file their consolidated

12   complaint.  The re-filed consolidated complaint (which would be the same as the existing

13   complaint) would then supersede the individual complaints. *In re Korean Air Lines Co., Ltd.*,

14   642 F.3d 685, 699 (9th Cir. 2011) ("A transferee court may require parties to file consolidated

15   amended complaints superseding original ones.").  There is no need for this wasteful exercise.

16          There is no dispute that this Court would have subject matter jurisdiction over each of the

17   actions and all of the claims under the Class Action Fairness Act. 28 U.S.C. 1332(d).  Nor is

18   there any dispute that the most recent *Colgate* complaint pled the identical state subclasses,; that

19   the Court granted leave to amend in *Colgate* to add plaintiffs (*Colgate* Dkt.# 139 at 46 ("Any

20   other amendment is permitted within 20 days of this Order")) and then stayed the deadline to do

21   so (*Id.* Dkt. # 149), and that the consolidated class complaint filed in the MDL adds named

22   plaintiffs to those previously involved in *Colgate*.

23

24

---

25   [22] JLI also cites *In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2009) for the proposition that
plaintiffs received value because "JUUL products undisputedly deliver nicotine." ECF 629 at 15.

26   In *Tobacco II* the plaintiffs did not challenge the court's finding on this point (*id.* at 791);
plaintiffs here contest the conclusion that delivery of nicotine is the delivery of value. And even if

27   JUUL products delivered some value, California Plaintiffs allege that value is less than what they
paid.

28

1       The only prejudice JLI identifies to certain named plaintiffs having not filed identical

2   individual complaints (or having not filed their consolidated class complaint in the *Colgate*

3   docket instead of the MDL docket) is that JLI does to know the remand forum for those

4   plaintiffs' claim.  If the Court believes further specificity is needed as to where the claims of

5   each named plaintiff would be remanded, the solution is not to dismiss the claims.  The Court

6   could direct plaintiffs who were added to the consolidated complaint to identify the forum to

7   which their individual claims should be remanded (including this District if appropriate).  *See In*

8   *re Takata Airbag Prod. Liab. Litig.*, 379 F. Supp. 3d 1333, 1342-45 (S.D. Fla. 2019) (discussing

9   approaches to remand of actions directly filed in the MDL court); *In re Fresenius*

10  *Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 294, 304 (D. Mass. 2015)

11  (treating direct-filed complaints as filed in the MDL district because the MDL district was one

12  permissible forum); *Takata*, 379 F. Supp. at 1341 ("Plaintiffs stylized the Direct File Complaints

13  as *Consolidated* Class Action Complaints, which—in contrast to stylizing them as an

14  'administrative summary' of all claims by all plaintiffs—suggests the Direct File Complaints

15  were 'meant to have legal effect.'"); Andrew D. Bradt, *The Shortest Distance: Direct Filing and*

16  *Choice of Law in Multidistrict Litigation,* 88 Notre Dame L. Rev. 759, 816 (2012) (discussing

17  benefits of permitting plaintiffs who directly file in a MDL transferee district to specify in the

18  complaint an appropriate "home venue" where the case could otherwise have been filed so that

19  all plaintiffs have identified a specific home venue).

20      JLI's insistence in prematurely litigating this issue instead of resolving it through other

21  means has resulted in "time-consuming and expensive and motion practice that" will, at most,

22  "result[] in successfully amended complaints[]."  ECF 400 at 2.  The Court should deny JLI's

23  motion to dismiss based on lack of subject matter jurisdiction and instead direct plaintiffs to state

24  the remand location of the each of the named plaintiffs (which defendants are free to contest).

## IV.   CONCLUSION

26      For the reasons set forth above, plaintiffs respectfully request that the Court deny JLI and

27  Altria's separate motions to dismiss the claims of the California Plaintiffs in the CAC as well as

28  JLI's motion to dismiss plaintiffs' claims for lack of subject matter jurisdiction.

1

2     Dated: June 29, 2020                    Respectfully submitted,

3

4                                             By: /s/ Sarah R. London

5                                             Sarah R. London
                                              **LIEFF CABRASER HEIMANN &**
6                                             **BERNSTEIN**
                                              275 Battery Street, Fl. 29
7                                             San Francisco, CA 94111
                                              Telephone: (415) 956-1000
8                                             slondon@lchb.com

9

10                                            By: /s/ Dena C. Sharp

11                                            Dena C. Sharp
                                              **GIRARD SHARP LLP**
12                                            601 California St., Suite 1400
                                              San Francisco, CA 94108
13                                            Telephone: (415) 981-4800
                                              dsharp@girardsharp.com
14
                                              By: /s/ Dean Kawamoto
15
                                              Dean Kawamoto
16                                            **KELLER ROHRBACK L.L.P.**
                                              1201 Third Ave., Ste. 3200
17                                            Seattle, WA 98101
                                              Telephone: (206) 623-1900
18                                            dkawamoto@kellerrohrback.com

19

20                                            By: /s/ Ellen Relkin

21                                            Ellen Relkin
                                              **WEITZ & LUXENBERG**
22                                            700 Broadway
                                              New York, NY 10003
23                                            Telephone: (212) 558-5500
                                              erelkin@weitzlux.com
24

25                                            *Co-Lead Counsel for Plaintiffs*

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 29, 2020, I electronically filed the foregoing document with

3

the Clerk of the Court using the CM/ECF system, which will automatically send notification of

4

the filing to all counsel of record.

5

By: <u>/s/ *Sarah R. London*         </u>

6

Sarah R. London

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO