WALTER F. BROWN (STATE BAR NO. 130248)
wbrown@orrick.com
JAMES N. KRAMER (STATE BAR NO. 154709)
jkramer@orrick.com
JAMES THOMPSON (STATE BAR NO. 240979)
jthompson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendant
James Monsees

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICES AND PRODUCTS LIABLITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:19-md-02913-WHO<br><br>**DEFENDANT JAMES MONSEES' REPLY IN SUPPORT OF MOTION TO DISMISS RICO CLAIMS IN CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. William H. Orrick<br>Date:    September 21, 2020<br>Time:   9:00 a.m.<br>Ctrm:   2 |

## I. INTRODUCTION

As shown in Mr. Monsees' Motion to Dismiss ("Motion" or "Mot.") (ECF No. 647), Plaintiffs' RICO claims against Mr. Monsees are deficient and should be dismissed. *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003) ("Courts should [] 'strive to flush out frivolous RICO allegations at an early stage of the litigation'").[1] Rather than address the deficiencies identified in the Complaint, Plaintiffs' Opposition ("Opposition" or "Opp.") (ECF No. 757) employs a "smoke and mirrors" approach – ignoring and misconstruing Mr. Monsees' arguments while relying on inapplicable legal theories, in an attempt to divert attention from the Complaint's pleading defects. Despite these tactics, the Opposition does not cure the fatal deficiencies of the Complaint, specifically, the failure to allege facts that establish Mr. Monsees (1) "managed or operated" the affairs of any purported RICO Enterprise (as opposed to acting on behalf of JLI), (2) engaged in any "pattern of racketeering," and (3) acted with the requisite intent to defraud.[2]

## II. ARGUMENT

### A. Plaintiffs Have Not Alleged Facts that Establish Mr. Monsees Managed or Operated a RICO Enterprise

#### 1. Plaintiffs Cannot Base a RICO Claim on Ordinary Business Activities

As explained in Mr. Monsees' Motion, once stripped of its conclusory allegations, the Complaint merely pleads Mr. Monsees' performance of ordinary business activities on behalf of JLI (as opposed to the purported Enterprise).[3] Mot. at 7-9; *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Specifically, the Complaint alleges that Mr. Monsees co-founded JLI (Complaint "Compl." ¶ 2), helped design its products (*id.* ¶¶ 31, 72), sought out and met with JLI investors (*id.* ¶ 78), worked on JLI's marketing and business strategies (*id.* ¶¶ 62, 63, 289, 333), testified before Congress as a JLI representative (*id.* ¶ 205), and responded to questions from the

---

[1] Quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (internal citations omitted).
[2] Mr. Monsees joins in and incorporates by reference the arguments made by JLI and Altria in their reply briefs. *See* ECF Nos. 810, 813.
[3] Plaintiffs fail to plead the existence of a RICO Enterprise in the first instance. ECF No. 813 at 3-6; *see also* ECF Nos. 628, 632.

1  New York Times on JLI's behalf (*id.* ¶ 752).  This is precisely what an officer or director of JLI
2  would be expected to do.  Rhetoric and emotion aside, Plaintiffs cannot somehow transform these
3  innocuous and ordinary business activities into illegal conduct by arbitrarily attaching adjectives
4  like "fraudulent," and then claim – based upon this manufactured "fraudulent" behavior – that
5  Mr. Monsees must have been acting as part of a RICO Enterprise.  *In re Jamster Mktg. Litig.*,
6  MDL No. 1751, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("[p]leading by adjective"
7  insufficient to state a claim).

8  The Opposition further highlights these pleading defects.  For example, it claims that Mr.
9  Monsees "'personally reviewed' the photographs used in the *fraudulent* advertisements" and
10 provided "direction on the content of [JLI's] website" (which purportedly led to "*numerous false,*
11 *misleading, and deceptive statements*").  Opp. at 17 (emphasis added).  Based upon these
12 conclusory "fraudulent" and "deceptive" labels, Plaintiffs argue that Mr. Monsees was acting on
13 behalf of the alleged Enterprise.[4]  *Id*.  But when the Court disregards these labels, as it must,
14 Plaintiffs have merely "allege[d] conduct consistent with ordinary business conduct" of a
15 corporate officer (reviewing advertising materials and providing direction regarding the
16 company's website).  *In re Jamster*, 2009 WL 1456632, at *5 (stripping away conclusory
17 adjectives, including "fraudulently," and holding that the alleged conduct was consistent with
18 ordinary business conduct and was "woefully inadequate to state a claim for relief").[5]  Plaintiffs'
19 allegations regarding Mr. Monsees' "final say" on "marketing messages for JUUL products"
20 (which Plaintiffs again conclusorily state are "fraudulent") are similarly untethered to any

---

[4] The Opposition repeatedly mischaracterizes the allegations in the Complaint.  For example, the Complaint never ties Mr. Monsees' "personal[] review[]" of photographs to any fraudulent advertisements, as the Opposition would suggest.  Indeed, the Complaint makes no attempt to describe the content of these purported photographs, let alone whether they were ultimately used in any advertisements, or otherwise connected to the alleged Enterprise.  Similarly, the Opposition erroneously contends that the Complaint alleged "[Mr.] Monsees was a co-founder of the Enterprise." Opp. at 17.  It does not.  Rather the Complaint alleges that Mr. Monsees "co-founded JLI" (Compl. ¶ 2), further highlighting Plaintiffs' confused and improper conflation of the alleged RICO Enterprise with JLI.

[5] Plaintiffs argue that Mr. Monsees made "many public-facing fraudulent statements," yet the Complaint only attributes two statements to Mr. Monsees.  Opp. at 17; Compl. ¶ 752.  Moreover, as Plaintiffs have acknowledged, Mr. Monsees was a co-founder of JLI (Compl. ¶ 29) and it would therefore not be "strange" for Mr. Monsees to make such statements as Plaintiffs suggest – instead, the fact that he allegedly made public statements on JLI's behalf merely reconfirms that he was performing his ordinary JLI business activities throughout.

purported Enterprise. Opp. at 17; Compl. ¶ 207. That a company's directors are vested with ultimate authority over the company simply highlights that the Directors' "final say" was part of JLI's ordinary business operations. Opp. at 17.

Indeed, the purported common purpose of the enterprise "to profit" makes clear that Plaintiffs are improperly attempting to convert ordinary business activities into actionable conduct. Opp. at 8-9. Virtually all commercial businesses have a goal of making a "profit," and there is nothing nefarious about wanting to make money to support the company and its employees. *See, e.g., Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054-57 (C.D. Cal. 2016) (rejecting alleged "common purpose" of fraudulently "design[ing], manufactur[ing], … and sell[ing]" products to "maximize [ ] revenue and profitability"). For Plaintiffs' RICO claim to survive against Mr. Monsees, Plaintiffs must plead "**specific facts** indicating that [Mr. Monsees] acted with an objective **unrelated** to ordinary business [] aims." *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (emphasis added). They have not done so.

### 2. Plaintiffs' Efforts to Contort the Law Cannot Overcome the Lack of Well-Pled Facts

Unable to plead facts showing Mr. Monsees' participation in a RICO Enterprise, Plaintiffs attempt to water down the law. They argue, for example, that a defendant must only play "*some* part in directing the enterprise's affairs," and that "lower-rung members of an enterprise" can still be held liable. Opp. at 14-15 (emphasis in original). But even assuming *arguendo* that Plaintiffs' recitation of the law is accurate, they are still missing the critical issue: they did not plead facts evincing Mr. Monsees' role in directing the alleged **Enterprise**. The level of direction Mr. Monsees allegedly exercised over **JLI** is irrelevant. *Reves*, 507 U.S. at 185.

### 3. The Court Must Consider Alternative Explanations to Plaintiffs' Conclusory Assertions of Misconduct

In deciding Mr. Monsees' Motion, the Court must consider plausible (and compelling) alternative explanations for his conduct – here, that he was merely performing his duties as an officer or director of JLI. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (courts must consider

"obvious alternative explanation[s]" for alleged conduct); *Eclectic Properties. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-99 (9th Cir. 2014) (dismissing complaint where "alternative explanation" came "from [p]laintiffs' own complaint" and plaintiffs had "not met their burden to do '[s]omething more' to 'render [their] allegations plausible'") (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013)). Indeed, the Opposition effectively concedes this alternative explanation. It claims that Mr. Monsees' "efforts to expand th[e] market began **before** he even associated with the other RICO Defendants," suggesting that Mr. Monsees was merely continuing to perform his ordinary business activities on JLI's behalf after the purported Enterprise began. Opp. at 17.[6]

Instead of confronting this obvious alternative explanation, Plaintiffs try to avoid it – arguing that whether they have pled that Mr. Monsees was carrying out activities on behalf of JLI versus the Enterprise is not appropriate for resolution on a motion to dismiss. Not so. Courts routinely scrutinize and dismiss RICO claims on this basis. *See*, *e.g., Shaw*, 220 F. Supp. 3d at 1057 (dismissing RICO claim for failure to plausibly allege existence of enterprise because allegations merely reflected parties acting in ordinary course of business); *In re Jamster*, 2009 WL 1456632, at *5 (same); *Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1058 (D. Haw. 2019) (same). Accordingly, Plaintiffs' RICO claims against Mr. Monsees should be dismissed.

**B.   Plaintiffs Have Not Alleged that Mr. Monsees Engaged in a Pattern of Racketeering Activity**

As set forth in the Motion, to state a RICO claim, Plaintiffs must plead Mr. Monsees' participation in at least two predicate racketeering acts. *See* 18 U.S.C. § 1962(c) ("It shall be unlawful for **any person** … to conduct or participate … in the conduct of [the] enterprises affairs through a **pattern of racketeering activity**") (emphasis added); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant"); *accord Diallo v. Redwood Invs., LLC*, No. 18-CV-1793 JLS (JLB), 2019 WL

---

[6] Plaintiffs' Opposition – just like their Complaint – is deafeningly silent as to Mr. Monsees' connection to Veratad, let alone that they shared a "common purpose." *See* Mot. at 9. This too cuts against any inference that Mr. Monsees was acting on behalf of the Enterprise.

3574449, at *7 (S.D. Cal. Aug. 6, 2019). Plaintiffs attribute only two purported predicate acts to Mr. Monsees – his Congressional testimony and his statement to the New York Times. Neither is actionable.

### 1. Mr. Monsees' Congressional Testimony Is Not a Predicate Act

As demonstrated in his Motion, Mr. Monsees' Congressional testimony is immunized by the *Noerr-Pennington* doctrine. Mot. at 10. Plaintiffs argue that the doctrine is inapplicable because Mr. Monsees allegedly furnished "false information" to Congress "with predatory intent." Opp. at 35-36. But, of course, Plaintiffs offer no facts to back up their labels and characterizations. And even if they had done so, even "outright lies" made in valid petitioning conduct cannot serve as a predicate act under RICO. *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998). "Misrepresentations are a fact of life in politics, and lobbying is the sine qua non of democracy." *Id.* at 1062 (internal citation omitted).[7]

Moreover, Mr. Monsees' Congressional testimony is not actionable because it was not made to "obtain[] money or property" from Congress (which the Opposition concedes). 18 U.S.C. § 1343; Opp. at 28. Plaintiffs try to, but cannot, end run the Supreme Court's recent holding that "a scheme to alter … a regulatory choice is not one to" obtain money or property for purposes of the federal mail or wire fraud statutes. *Kelly v. United States*, 140 S. Ct. 1565, 1572 (2020). Plaintiffs themselves allege that Mr. Monsees' Congressional testimony was an effort to "prevent [a] ban on JUUL products" and therefore alter a regulatory choice. Compl. ¶ 752. Thus, *Kelly* is dispositive.

### 2. Mr. Monsees' Statement to the New York Times Is Not a Predicate Act

The Opposition similarly fails to somehow transform Mr. Monsees' innocuous statement to the New York Times into racketeering activity. Plaintiffs offer the conclusory suggestion that Mr. Monsees did not genuinely hold the opinion expressed in his statement. Opp. at 29-31. But this argument is untethered to any facts establishing Mr. Monsees did not believe his statement at the time it was made. Absent such facts, Mr. Monsees' statement to the New York Times is not

---

[7] Neither is "sworn" congressional "testimony" exempt from the *Noerr-Pennington* doctrine, as Plaintiffs suggest. Opp. at 36. Tellingly, Plaintiffs cite no cases for this proposition.

actionable.[8]

### 3. Plaintiffs' Remaining Racketeering Allegations Fail

The Complaint's remaining racketeering allegations, all of which are untethered to Mr. Monsees, fail because they are conclusory and impermissibly lump Mr. Monsees with the other Defendants. Mot. at 9-12; *see*, *e.g.*, Compl. ¶ 182 ("JLI and the Management Defendants directed and approved the content of the JUUL website"); *Iqbal*, 556 U.S. at 678; *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Unable to cure this fatal pleading defect, Plaintiffs resort to a misguided attempt to distort the otherwise bright-line requirement of Rule 9(b) that they plead facts as to each defendant. They argue, for example, that lumping defendants is permissible "if [defendants] collectively committed a racketeering act." Opp. at 22. But Plaintiffs acknowledge that this principle applies only where defendants are "alleged to have engaged in **precisely** the same conduct." Opp. at 22 (emphasis added) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016)). Here, Plaintiffs argue that the respective Defendants engaged in differing conduct. Opp. at 15-21 (differentiating the respective Defendants' alleged conduct); *see*, *e.g.*, Compl. ¶¶ 93-99 (alleging Mr. Bowen's – but not Mr. Monsees' – involvement in testing); *id.* ¶¶ 34, 348, 350-51 (alleging a "change in control" whereby, in Mr. Monsees' "stead," others took "charge" of JLI's marketing efforts).

Plaintiffs' assertion that the requirements of Rule 9(b) should be "relaxed" here is similarly without support. Plaintiffs do not cite a single case applying a "relaxed" pleading standard to RICO claims. Regardless, the standard – which was intended to allow pleading based on information and belief where "plaintiffs cannot be expected to have personal knowledge of the relevant facts" – is inapplicable here because the "relevant facts are [**not**] known only to the defendant." Opp. at 22 (emphasis added); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Plaintiffs conveniently ignore the extensive discovery they received in this case and used to craft their nearly 670-page Complaint. *See*, *e.g.*, Compl. ¶ 21 fn. 2, 3; *id.* ¶ 70 fn. 55; *id.* ¶ 86 fn. 78;

---

[8] Even if Mr. Monsees' Congressional testimony and statement to the New York Times were actionable (they are not), Plaintiffs have failed to plead the requisite "pattern" of racketeering activity as these acts are not continuous nor related, as required. *See* Mot. at Section IV(c). By failing to even address this argument in the Opposition, Plaintiffs have effectively conceded that no pattern exists.

1  *id.* ¶ 114 fn. 126.  Indeed, several of the allegations against Mr. Monsees purport to be based on
2  internal JLI documents.  *See*, *e.g.*, *id.* ¶¶ 220, 334, 345.

3        Unable to show racketeering activity by Mr. Monsees, Plaintiffs reach for an alternative
4  theory of liability, arguing that Mr. Monsees could be liable for acts purportedly committed by his
5  alleged co-schemers.  But to hold Mr. Monsees responsible under this theory, Plaintiffs would
6  need to plead his *knowing participation* in the alleged scheme with an intent to defraud.  *United*
7  *States v. Stapleton*, 293 F.3d 1111, 1116-17 (9th Cir. 2002).  They did not.

8        Mr. Monsees has already demonstrated Plaintiffs' failure to allege that he was aware of,
9  let alone a knowing participant in, any alleged scheme to defraud.[9]  *See* Mot. at 7-14.  And none
10 of the cases or arguments relied upon in the Opposition changes this outcome.  For example, *In re*
11 *Volkswagen* (which Plaintiffs rely upon) is clearly inapposite.  *In re Volkswagen "Clean Diesel"*
12 *Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594
13 (N.D. Cal. Oct. 30, 2017).  There, the defendant exercised "near-total control over" the admittedly
14 unlawful modifications to the products at issue, there was extensive documentary evidence
15 evidencing defendant's efforts to evade detection and that "cast[ defendant] as a strategic partner
16 in the scheme," and several other defendants had pled guilty to felony charges for their
17 involvement in the scheme.  *Id.* at *1 fn.1, *13-15.  These circumstances are a far cry from the
18 facts alleged in the Complaint.  Indeed, *Ecodiesel* – another case Plaintiffs rely on – highlights
19 this distinction.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab.*
20 *Litig*, 295 F. Supp. 3d 927, 978 (N.D. Cal. 2018).  *Ecodiesel* compared and contrasted the facts
21 before it with those in another RICO case, *Eclectic Properties*, 751 F.3d at 1000.  Because the
22 *Ecodiesel* defendants could not justify or "explain[] a legitimate use" for their actions, the court
23 found that plaintiffs had sufficiently pled a RICO violation.  295 F. Supp. 3d at 978.  But where,
24 as in *Eclectic Properties* (and here), there *was* a viable and lawful alternative explanation for
25 defendants' conduct, the RICO claims must fail.  *Id.*  (discussing the *Eclectic Properties*
26 defendants engaging in "facially legitimate" transactions and "'otherwise act[ing] as routine

---

[9] Though the standards for pleading "knowing participation in a scheme to defraud" and participation in an Enterprise are distinct, the analysis under both standards is similar, and thus, Plaintiffs' claims fail for the same reasons discussed in Section II(A) above.

participants in American commerce'"); *see also In re Volkswagen*, 2017 WL 4890594 at *15 (noting that no one "sought to justify, or explain a lawful purpose for, software that effectively turns a vehicle's emission systems on or off depending on whether the vehicle is undergoing emissions testing"). Thus, Plaintiffs' failure to plead facts establishing Mr. Monsees' knowing participation in an alleged scheme render their RICO claim defective given that they do not otherwise demonstrate the requisite pattern of racketeering activity.

### C. Plaintiffs Have Not Alleged that Mr. Monsees Acted with the Requisite Intent

In yet another glaring display of Plaintiffs' "smoke and mirrors" approach, Plaintiffs argue that "[c]ontrary to Monsees' . . . arguments . . ., neither the mail or wire fraud statutes nor RICO impose a 'first-party reliance' requirement." Opp. at 36-37. But Mr. Monsees made no such argument. Plaintiffs conflate the required element of "intent to defraud" with "reliance," which Mr. Monsees has never challenged.[10] This distorted iteration of Mr. Monsees' argument ignores the fundamental flaw of Plaintiffs' Complaint – it does not adequately allege Mr. Monsees' specific intent to obtain money or property from Plaintiffs (indeed, the purportedly actionable statements were made to Congress and the New York Times). Mot. at 13-14; *Kelly*, 140 S. Ct. at 1572; *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir. 1989) (reversing mail fraud conviction because "[a]lthough both indictments alleged a scheme to obtain money and property, neither alleged a scheme to obtain them from the governmental body" that was deceived); *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) ("the intent must be to obtain money or property from the one who is deceived"). The RICO claims against Mr. Monsees must be dismissed for this reason as well.[11]

---

[10] Plaintiffs' reliance on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), highlights their conflation of these elements. *Bridge* dealt with reliance, not plaintiffs' burden to allege a specific intent to defraud.

[11] Despite Plaintiffs' argument that the requisite intent to defraud may be inferred from the scheme as a whole (Opp. at 29), Plaintiffs have failed to allege any scheme to defraud in the first instance, and even if they had, specific intent to defraud cannot be inferred from that purported scheme because there is a plausible, and innocuous, alternative explanation for Mr. Monsees' conduct (showing that he was not part of the scheme) – that he was conducting lawful, ordinary business activities. *See Eclectic Properties*, 751 F.3d at 998-99.

### D. Plaintiffs Have Not Alleged that Mr. Monsees Was Part of Any RICO Conspiracy

Plaintiffs contend they properly alleged an underlying RICO claim as to Mr. Monsees. But nothing in Plaintiffs' Opposition cures the fundamental pleading failures of the Complaint. Because Plaintiffs have failed to plead an underlying RICO violation, so too must the conspiracy claim fail. *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); Mot. at 14.

Moreover, rather than addressing their failure to plead any agreement to violate RICO (as demonstrated in Mr. Monsees' Motion), Plaintiffs merely argue that "no formalized agreement is required." Opp. at 49. But Mr. Monsees never claimed that a formalized agreement is required. Rather, Mr. Monsees (correctly) argued that Plaintiffs must plead facts showing that Mr. Monsees agreed to conduct or participate in the affairs of an enterprise and to commit at least two predicate acts. Mot. at 14; *see Bulan v. JP Morgan Chase Bank*, No. C-10-05952 EDL, 2011 WL 13266527, at *7 (N.D. Cal. Apr. 6, 2011). Plaintiffs have pled no such facts here, nor do they dispute this in their Opposition. Accordingly, their conspiracy claim should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Mr. Monsees respectfully requests that this Court dismiss the RICO claims brought again him under 18 U.S.C. §§ 1962(c) and 1962(d).

Dated: July 27, 2020

WALTER F. BROWN
JAMES N. KRAMER
JAMES THOMPSON
Orrick, Herrington & Sutcliffe LLP

By:    */s/ James N. Kramer*
JAMES N. KRAMER
Attorneys for Defendant
James Monsees