[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>CLASS ACTIONS | Case No. 19-md-02913-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS ADAM BOWEN, JAMES MONSEES, HOYOUNG HUH, NICHOLAS PRITZKER, AND RIAZ VALANI'S MOTIONS TO DISMISS CLASS CLAIMS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF PERSONAL JURISDICTION (ECFs 748, 751 and 752)**<br><br>**Judge:** **Hon. William H. Orrick**<br>**Date:** **September 21, 2020**<br>**Time:** **9:00 a.m.**<br>**Ctrm.:** **2** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' ALLEGATIONS ........................................................................ 2

III.    ARGUMENT ....................................................................................................... 3

        A.      Legal Standard on Motions to Dismiss ................................................... 3

        B.      Plaintiffs State Claims for Violation of the UCL Against the Management
                Defendants ............................................................................................... 4

                1.      Legal Standard for Liability of Corporate Officers and Directors ................. 4

                2.      The Management Defendants Participated in Unlawful Conduct Related
                        to the Sale of JUUL ......................................................................... 6

                a.      Bowen and Monsees ......................................................................... 6

                b.      Huh, Pritzker, and Valani ................................................................ 8

                3.      Plaintiffs' Allegations Are Not Conclusory or Impermissible Group
                        Pleading ......................................................................................... 10

                4.      Bowen and Monsees Misconstrue the Law Governing Officer and
                        Director Liability ............................................................................ 11

                a.      Officer and Director Liability Does Not Require a Showing of
                        "Unbridled Control" Over the Unlawful Conduct ......................... 11

                b.      Officer and Directors Need Not Have Made Fraudulent and Deceptive
                        Statements Directly to Consumers ................................................. 13

                5.      Plaintiffs May Seek Restitution from the Management Defendants ........... 15

                6.      Plaintiffs State a Claim for Injunctive Relief as to Bowen, Pritzker, and
                        Valani ............................................................................................ 17

        C.      Plaintiffs State Claims for Unjust Enrichment Against the Management
                Defendants Under California Law ......................................................... 18

        D.      The Management Defendants Have Offered No Basis to Dismiss Plaintiffs'
                Claims Under the Laws of Any Other Jurisdiction ............................... 19

                1.      Consumer Protection Statutes ........................................................ 19

                a.      Jurisdictions That Huh, Pritzker, and Valani Contend Apply a Different
                        Standard Than California ................................................................ 20

                b.      Jurisdictions in Which Huh, Pritzker, and Valani Did Not Identify Any
                        Relevant Authority ......................................................................... 22

                2.      Unjust Enrichment ......................................................................... 25

        E.      The Court Has Personal Jurisdiction Over Huh, Pritzker, and Valani for Each
                of Plaintiffs' State Law Claims ............................................................. 25

                1.      The Court has Specific Personal Jurisdiction Over Each Plaintiffs'
                        Claims ........................................................................................... 26

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

      a.    The Court has Specific Jurisdiction Over Huh in California ....................... 27

4

      b.    The Court has Specific Jurisdiction Over Huh, Pritzker, and Valani Outside of California.................................................................................... 29

5

      2.    In the Alternative, the Court May Exercise Pendent Personal Jurisdiction Over Director Defendants for Plaintiffs' State Law Claims .... 34

6

IV.    CONCLUSION ............................................................................................................ 37

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    - ii -                PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acculmage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ....................................................................5, 6

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004)...............................................................................34, 36

*Allen v. ConAgra Foods, Inc.*,
  No. 3:13-cv-01279-WHO, 2018 WL 6460451 (N.D. Cal. Dec. 18, 2018).......................35, 36

*AlterG, Inc. v. Boost Treadmills, LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................10

*Alves v. Player's Edge, Inc.*,
  No. 05-1654 WQH (CAB), 2006 WL 8455520 (S.D. Cal. July 19, 2006)............................35

*Asahi Kasei Pharma Corporation v. Actelion Ltd.*,
  222 Cal. App. 4th 945 (2013) ..............................................................................12

*Bancroft & Masters, Inc. v. August Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000)...............................................................................34

*Banks.com, Inc. v. Keery* ,
  No. C 09–06039 WHA, 2010 WL 727973 (N.D. Cal. 2010) ................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................3

*Briody Capital Management, LLC v. Qatar*,
  No. CV 18-2421-JFW(Ex), 2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ...........................33

*Bruton v. Gerber Prods. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ..........................................................................19

*Bryde v, General Motors, LLC*,
  No. 16-cv-02421-WHO, 2016 WL 6804584 (N.D. Cal. Nov. 16, 2016) ...............................4

*Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986)................................................................................35

*Cabebe v. Nissan of N. Am., Inc.*,
  No. 18-cv-00144-WHO, 2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) ....................15, 16, 18

*Casey v. Olson*,
  No. 09- 1111 JAH, 2010 WL 3516930 (S.D. Cal. Sept. 8, 2010) ........................................14

*Cave Consulting Group, Inc. v. Truven Health Analytics Inc.*,
  No. 15-cv-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ......................................37

*Chunghwa Telecom Global, Inc. v. Medcom, LLC*,
  No. 5:13-cv-02104-HRL, 2016 WL 5815831 (N.D. Cal. Oct. 5, 2016)...........................31, 33

*Cisco Systems Inc. v.  Link US, LLC*,
  No. 18-cv-07576-CRB, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ..................................33

*Clark v. Dillard's, Inc.*,
  460 S.W.3d 714 (Tex. Ct. App. 2015) .....................................................................25

1

## TABLE OF AUTHORITIES
### (continued)

2

Page(s)

3

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.,*
 173 F.3d 725 (9th Cir. 1999)...................................................................................5, 15

4

*Combs v. Int'l Ins. Co.,*
 354 F.3d 568 (6th Cir. 2004)........................................................................................24

5

*Comm. for Idaho's High Desert, Inc. v. Yost,*
 92 F.3d 814 (9th Cir. 1996)...........................................................................................4

6

*Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.,*
 621 S.W.2d 705 (Ky. Ct. App. 1981) ...........................................................................20

7

*Cybersell, Inc. v. Cybersell, Inc ,*
 130 F.3d 414 (9th Cir. 1997)........................................................................................32

8

*Davis v. Metro,*
 885 F.2d 515 (9th Cir. 1989)........................................................................................27

9

10

*Del Webb Communities, Inc. v. Partington,*
 652 F.3d 1145 (9th Cir. 2011).......................................................................................24

11

*Destfino v. Reiswig,*
 630 F.3d 952 (9th Cir. 2011).........................................................................................10

12

*Dimidowich v. Bell & Howell,*
 803 F.2d 1473 (9th Cir.1986), *modified by* 810 F.2d 1517 (9th Cir.1987)..............................23

13

*Doe v. Unocal Corp.,*
 27 F. Supp. 2d 1174 (C.D. Cal. 1998) ..........................................................................35

14

15

*Dumas v. Auto Club Ins. Ass'n,*
 473 N.W.2d 652 (Mich. 1991) ......................................................................................25

16

*Emery v. Visa Int'l Serv. Ass'n,*
 95 Cal. App. 4th 952 (2002) .............................................................................4, 12, 14

17

*ESG Capital Partners, PL v. Stratos,*
 828 F.3d 1023 (9th Cir. 2016).......................................................................................19

18

19

*Euclid St., LLC v. D.C. Water & Sewer Auth.,*
 41 A.3d 453 (D.C. 2012)..............................................................................................25

20

*Facebook, Inc v. Power Ventures, Inc.,*
 844 F.3d 1058, 1069 (9th Cir. 2016).................................................................5, 6, 13, 14

21

*Fitbit, Inc. v. Laguna 2, LLC,*
 No. 17-cv-00079-EMC, 2017 WL 8294274 (N.D. Cal. Apr. 26, 2017)....................................4

22

*Flo & Eddie, Inc. v. Settler,*
 No. CV 08–142-ABC (MANx), 2008 WL 11336787 (C.D. Cal. Apr. 3, 2008) ....................33

23

24

*Frances T. v. Village Green Owners Association,*
 42 Cal.3d 490 (1986) ...................................................................................................12

25

*Giotta v. Ocwen Financial Corporation,*
 No. 15-cv-00620-BLF, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015)................................28

26

*Green v. Skyline Highland Holdings LLC,*
 No. 4:17-cv-00534 BSM, 2017 WL 10607256 (E.D. Ark. Dec. 13, 2017)............................21

27

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
 61 Cal. 4th 988 (2015) .............................................................................................18, 19

28

PLAINTIFFS' OPP TO JUUL AND ALTRIA'S MOTIONS TO
DISMISS CALIFORNIA SUBCLASS CLAIMS
CASE NO. 19-MD-02913-WHO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hoang v. Arbess*,
  80 P.3d 863 (Colo. App. 2003) ............................................. 22

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ............................................. 33

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................... 15

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .............................................. passim

*In re JUUL Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*,
  396 F. Supp. 3d 1366 (J.P.M.L. 2019) ............................................. 34

*In re Packaged Seafood Prods Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) ............................................. 34, 36

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL 2672 CRB (JSC),
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ............................................. 26, 27

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  No. 2:18-md-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019) ............................................. 23

*Joseph General Contracting, Inc. v. Couto*,
  317 Conn. 565 (Conn. 2015) ............................................. 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................. 15

*Levi Strauss & Co. v. J. Barbour & Sons Ltd.*,
  No. 3:18-cv-03540-WHO, 2019 WL 1117533 (N.D. Cal. Mar. 11, 2019) ...................... 30, 32

*Long v. Dell, Inc.*,
  984 A.2d 1074 (R.I. 2009) ............................................. 23

*Loomis v. Slendertone Distribution, Inc.*,
  No. 3:19-cv-854-MMA (KSC), 2019 WL 5790136 (S.D. Cal. Nov. 6, 2019) ...................... 33

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ............................................. 17

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  No. 17-cv-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ............................... 18

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................. 30, 32

*Microsoft Corporation v. Gulfcoast Software Solutions, LLC*,
  No. C14-1851 RSM, 2016 WL 4543231 (W.D. Wash. Jan. 4, 2016) ............................... 27

*Mysfyt, Inc. v. Lum*,
  No. 4:16-cv-03813-KAW, 2016 WL 6962954 (N.D. Cal. Nov. 29, 2016) ...................... 31, 32

*Nasrawi v. Buck Consultants, Inc.*,
  713 F. Supp. 2d 1080 (E.D. Cal. 2010) ............................................. 4

*Northeastern Lumber Mfrs. Assoc. v. Northern States Pallet Co., Inc.*,
  710 F. Supp. 2d 179 (D.N.H. 2010) ............................................. 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .........................................4

*Park Miller, LLC v. Durham Group Limited*,
   No. 19-cv-04185-WHO, 2019 WL 6841216 (N.D. Cal. Dec. 16, 2019) ...............................27

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
   111 Cal. App. 4th 102 (2003) ................................................................................................16

*People ex rel. Spitzer v. Telehublink Corp.*,
   301 A.D.2d 1006 (N.Y. App. Div. 2003) ..............................................................................20

*People v. Mackone Development*,
   2017 WL 6333866 (Cal. Ct. App. Dec. 12, 2017) .................................................................13

*People v. Toomey*,
   157 Cal.App.3d 1 (1984) ................................................................................................11, 12

*People, ex rel. Harris v. Sarpas*,
   225 Cal. App. 4th 1539, 1543-44 (2014) ..........................................................................16, 17

*Perfect 10, Inc. v. Visa International Services Association*,
   494 F.3d 788 (9th Cir. 2007) .................................................................................................12

*Philips v. Apple*,
   No.15-cv-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016) ....................................17

*PMC, Inc. v. Kadisha*,
   78 Cal. App. 4th 1368 (2000) ..................................................................................................8

*POM Wonderful LLC v. Purely Juice, Inc.*,
   362 Fed.Appx. 577 (9th Cir. 2009) ..........................................................................5, 7, 11, 13

*Quicksilver, Inc. v. Quick Sports International B.V.*,
   No. SACV 03-1548 DOC (ANx), 2005 WL 8157305 (C.D. Cal. May 11, 2005)..................32

*Quynh Truong v. Allstate Ins. Co.*,
   147 N.M. 583 (N.M. 2010) ....................................................................................................23

*Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*,
   355 P.3d 503 (Alaska 2015)...................................................................................................21

*Regal Art & Gifts, Inc. v. Fusion Prod., Ltd.*,
   No. 15-cv-04363-KAW, 2016 WL 454116 (N.D. Cal. Feb. 5, 2016) ...................................31

*San Francisco Residence Club, Inc. v. Amado*,
   773 F. Supp. 2d 822 (2011)....................................................................................................14

*Schwartz v. Pillsbury Inc.*,
   969 F.2d 840 (9th Cir. 1992)..........................................................................................5, 6, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)..................................................................................26, 27, 29, 32

*Shersher v. Superior Court*,
   154 Cal. App. 4th 1491 (2007) ..............................................................................................15

*Sloan v. General Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ...................................................................................36

*State ex rel. Stephan v. Commemorative Services Corp.*,
   16 Kan. App. 2d 389 (1991) ..................................................................................................22

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*State v. First Nat'l Bank of Anchorage*,
   660 P.2d 406 (Alaska 1982)............................................................................23

*Stewart v. American Ass'n of Physician Specialists, Inc.*,
   No. 5:13-cv-01670-ODW(DTBx), 2014 WL 2011799 (C.D. Cal. May 15, 2014) ...............33

*Stomp, Inc. v. NeatO, LLC*,
   61 F. Supp. 2d 1074 (C.D. Cal. 1999) ...........................................................31

*Sun Group. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
   No. 17-cv-02191-SK, 2018 WL 10689420  (N.D. Cal. July 9, 2018) ....................................18

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   No. 17-cv-00561-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ...........................19

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
   34 F.3d 753 (9th Cir. 1994)...........................................................................28

*Top Rank, Inc. v. Haymon*,
   No. 15–4961–JFW, 2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ........................................10

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305 (2009) .....................................................15, 16, 17

*U.S. v. Colin*,
   314 F.3d 439 (9th Cir. 2002)...........................................................................23

*Unit Owners Ass'n of Summit Vista Lot 8 Condo v. Miller*,
   141 N.H. 39 (N.H. 1996) ................................................................................21

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011)............................................................................4

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987).....................................................................3, 13

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994)..........................................................................23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003).........................................................................3

*Ware v. Ware*,
   161 P.3d 1188 (Alaska 2007)..........................................................................25

*Yahoo! Inc. v. La Ligue contre la Racisme et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006)........................................................................32

*Zenga, Inc. v. K3 Jewelry*,
   No. 2:18-cv-01983-VAP-ASx, 2018 WL 6981843 (N.D. Cal. Oct. 30, 2018) .....................31

## STATUTES

12 Okla. Stat. § 682(B) ........................................................................22

18 U.S.C. § 1965(b) ...................................................................35, 36

18B AM. JUR. 2D Corporations § 1609 (2015) ..................................21, 24

- vii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

**TREATISES**

4

Restatement (Third) of Agency § 7.01 cmt (d) ............................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.**     **INTRODUCTION**

2        Plaintiffs file this response in opposition to motions to dismiss the California claims[1] in

3    Plaintiffs' Amended Consolidated Class Action Complaint (ECF 679, "CAC") filed by Adam

4    Bowen, James Monsees, Hoyoung Huh, Nicholas Pritzker, and Riaz Valani,[2] as well as Huh,

5    Pritzker, and Valani's request for dismissal of plaintiffs' other state law claims for failure to state

6    a claim and for lack of personal jurisdiction.

7        Plaintiffs allege that Bowen, Monsees, Huh, Pritzker, and Valani each individually and

8    independently played a key role in the fraudulent and unfair sales and marketing of JUUL

9    products. Plaintiffs' allegations detail specific actions taken by each defendant—from product

10   design, to development and approval of marketing, to taking control of the company as part of an

11   "Executive Committee"—and are more than sufficient to plausibly state a claim against each of

12   the Individual Defendants under the laws of California and every other jurisdiction in which

13   plaintiffs have brought claims. While the Individual Defendants primarily argue that corporate

14   officers and directors cannot be held vicariously liable for the unlawful acts of the company,

15   plaintiffs' claims are not based on vicarious liability.

16       Pritzker and Valani also argue that they are not subject to personal jurisdiction for any

17   cases filed outside of California (where they reside), and Huh claims he is not subject to personal

18   jurisdiction for any cases filed outside of Florida (where he currently resides). Huh's

19   participation in the unlawful conduct occurred while he resided in California and served as a

20   director of JLI, a California company; this Court may exercise jurisdiction over claims filed

21   against him in California courts. And more generally, the Director Defendants' conduct directly

22   relates to the marketing and sales of JUUL products that occurred throughout the country.

23   Because this conduct was designed to, and did, impact purchasers in every state, Huh, Pritzker,

24   and Valani are subject to specific jurisdiction in courts throughout the country. And even if that

---

25   [1] Violation of the California Unfair Competition Law ("UCL"), CAC ¶¶ 632-49, and Unjust
26   Enrichment, *id.*  ¶¶ 695-703. Plaintiffs have also brought RICO claims against the Management Defendants, which the Management Defendants have separately moved to dismiss.

27   [2] Plaintiffs refer to Bowen, Monsees, Huh, Pritzker, and Valani as the "Management Defendants"
28   and Huh, Pritzker, and Valani as the "Director Defendants."

was not the case, this Court may exercise pendent personal jurisdiction over any claims it would not otherwise have personal jurisdiction over. There is nothing unfair about defendants being held accountable for their conduct in this Court, and the Management Defendants' motions to dismiss should be denied in their entirety.

## II.   **PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege that the marketing and sale of JUUL products is fraudulent and unfair. Specifically, plaintiffs allege that while JUUL products are marketed as safe alternatives to cigarettes and equivalent to cigarettes in terms of nicotine content, they are actually are not safe, are not alternatives to cigarettes, and deliver substantially more nicotine than cigarettes. *E.g.* CAC ¶¶ 636-40. Much of the JUUL marketing has been intended to appeal to a young audience and addict a profitable and long-term base of underage users. *Id*. ¶¶ 4, 6-7, 87.

Of course, none of these things occurs in a vacuum. Decisions concerning how to design and market JUUL were made by individuals who then also put those plans into motion through JUUL Labs, Inc. ("JLI"). As explained in more detail below, plaintiffs allege that defendants Bowen, Monsees, Huh, Pritzker, and Valani were the individuals at the center of the allegedly unlawful conduct concerning the sales and marketing of JUUL products. Bowen and Monsees founded the company on the same principles that had made the cigarette industry successful: addicting youth and misleading the public. *Id*. ¶¶ 29-32, 61-63. Huh, Pritzker, and Valani played key roles in perpetuating the scheme, and at one point took over control of the company by ousting the CEO and installing themselves as the "Executive Committee." *Id*. ¶¶ 347-53. Collectively and individually, Bowen, Monsees, Huh, Pritzker, and Valani oversaw and approved the alleged fraudulent and unfair practices, including having "final say" over marketing plans and "directing and monitoring" the implementation of those plans. *Id*. ¶¶ 333, 346. Plaintiffs' allegations detail the personal involvement of each of the Management Defendants, and do not simply assert that all high-level corporate officers and directors of JLI should be held liable.

Defendants' goal was to emulate the success of the cigarette—the "most successful consumer product of all time," according to Monsees. *Id*. ¶ 29. Their multifaceted marketing plan

was designed to reach as broad of an audience as possible throughout the United States. JUUL's primary method of marketing was to use social media to get JUUL users and influencers to amplify JUUL's message to potential customers everywhere and anywhere. *Id.* ¶¶ 5-7, 231-56, 262, 296-319, 357. Consumers could also buy JUUL through JLI's retail partners (which can be found using the store locator on JUUL's website) or directly through JUUL's website. *Id.* ¶¶ 321-23. In other words, the Individual Defendants played a central role in the JUUL marketing program that was intended to, and did, reach consumers in every jurisdiction in the country.

As a result of their participation in the marketing and sale of JUUL products, plaintiffs bring claims against the Management Defendants for fraudulent and deceptive conduct in each state, for unfair and unconscionable conduct in certain states,[3] and for unjust enrichment in each state.

**III.   ARGUMENT**

**A.   Legal Standard on Motions to Dismiss**

To succeed at the pleading stage, a plaintiff's claims need not be indisputable or even probable but instead need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And all reasonable inferences must be construed in favor of the plaintiff's allegations. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Misrepresentation-based fraud claims are subject to Federal Rule of Civil Procedure 9(b), under which a party must "state with particularity the circumstances constituting the fraud or mistake," including the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "[B]ut claims

---

[3] *See* CAC ¶¶ 647 (California), 801 (Alabama), 851 (Alaska), 901 (Arizona), 951 (Arkansas), 1000 (Colorado), 1049 (Connecticut), 1160 (District of Columbia), 1208 (Florida), 1286 (Georgia), 1334 (Hawaii), 1397 (Idaho), 1447 (Illinois), 1498 (Indiana), 1549 (Iowa), 1600 (Kansas), 1650 (Kentucky), 1698 (Louisiana), 1746 (Maine), 1810 (Maryland), 1858 (Massachusetts), 2068 (Missouri), 2115 (Montana), 2163 (Nebraska), 2275 (New Hampshire), 2357 (New Mexico), 2463 (North Carolina), 2511 (North Dakota), 2574 (Ohio), 2635 (Oklahoma), 2696 (Oregon), 2791 (Rhode Island), 2840 (South Carolina), 2939 (Tennessee), 3097 (Vermont), 3195 (Washington), 3337 (Wyoming).

based on an omission can succeed without the same level of specificity required by a normal fraud claim." *Bryde v, General Motors, LLC*, No. 16-cv-02421-WHO, 2016 WL 6804584, at *13 (N.D. Cal. Nov. 16, 2016) (citation omitted). In addition, not all elements of a fraud claim must be pled in accordance with Rule 9(b); "other facts may be plead[ed] generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

## B. Plaintiffs State Claims for Violation of the UCL Against the Management Defendants

### 1. Legal Standard for Liability of Corporate Officers and Directors

The Management Defendants go to great lengths to explain that officers and directors of a corporation are not liable for the wrongdoing of a corporation simply by virtue of their roles as officers and directors. That issue is not in dispute, as plaintiffs do not contend that the Management Defendants are liable just because they held corporate titles at JLI. *See Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079-EMC, 2017 WL 8294274, at *2 (N.D. Cal. Apr. 26, 2017) (rejecting defendants' efforts to characterize plaintiffs' claims as based on the defendant's status as a corporate CEO). As a result, much of the authority the Management Defendants cite is inapposite. *See O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (plaintiffs alleged that defendants were "responsible" for the unlawful conduct "merely for their role in the corporation").[4]

A corporate officer or director is, however, "personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). In other words, while officers and directors are not vicariously liable for a corporation's unlawful conduct, they also are not insulated from liability simply because

---

[4] *See also Nasrawi v. Buck Consultants, Inc.*, 713 F. Supp. 2d 1080, 1088 (E.D. Cal. 2010) (defendant was an owner or director of the company, never took "any action directed at Plaintiffs," and was sued purely for performing actuarial functions for the corporate defendant); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (plaintiff relied on an agency theory in an effort to hold Visa liable for lottery solicitations made by VISA-authorized merchants).

1   their allegedly unlawful conduct occurred in the course of their work as an officer or director.

2   *See Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir.

3   1999) (a corporate officer "cannot hide behind the corporation where he is an actual participant

4   in the tort") (citation omitted).

5        Courts therefore frequently uphold a variety of claims brought against corporate officers

6   and directors who are alleged to have participated in unlawful conduct. In *Facebook, Inc v.*

7   *Power Ventures, Inc.*, for example, the Ninth Circuit affirmed a finding of liability against a

8   corporate CEO because, among other things, the allegedly unlawful "promotion was his idea."

9   844 F.3d 1058, 1069 (9th Cir. 2016). And in *In re Chrysler-Dodge-Jeep Ecodiesel Marketing,*

10  *Sales Practices, and Products Liability Litigation*, for example, the Court denied a motion to

11  dismiss consumer protection and common law fraud claims against the CEO of a car

12  manufacturer based on reasonable inferences that he approved of the use of misleading

13  advertising statements. 295 F. Supp. 3d 927, 988-89 (N.D. Cal. 2018); *see also POM Wonderful*

14  *LLC v. Purely Juice, Inc.*, 362 Fed.Appx. 577, 581 (9th Cir. 2009) (affirming finding of liability

15  based on corporate defendant's "direct involvement in the manufacturing and marketing

16  process"). The cases that the defendants cite likewise focus on the degree of corporate officer's

17  participation in the alleged wrongdoing. In *Schwartz v. Pillsbury Inc.*, the Ninth Circuit reversed

18  summary judgment in favor of a corporate officer because allegations concerning the defendant's

19  "knowledge and approval" of misrepresentations were sufficient. 969 F.2d 840, 844 (9th Cir.

20  1992). The Ninth Circuit emphasized that "conspiracy in a fraudulent scheme may be inferred

21  from the nature of the acts done, the relation of the parties, the interests of the alleged

22  conspirators, and other circumstances." *Id*. at 844 (citation omitted). And in *Acculmage*

23  *Diagnostics Corp. v. Terarecon, Inc.*, a trade secret misappropriation case, the sole allegation

24  against the corporate officer defendant was that he expressed an interest in hiring an employee

25  from the plaintiff, but it was a different corporate officer that later conspired with the employee

26  to steal the plaintiff's trade secrets. 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003). The court

27  dismissed the claim in *Acculmage* because the plaintiff offered no allegations that the corporate

28  officer personally participated in, or was even aware of, any of the wrongdoing.

As described in more detail below, like the plaintiffs in *Facebook*, *EcoDiesel*, *Schwartz*, and many other cases (but unlike the plaintiffs in cases like *Acculmage*), plaintiffs in this case have alleged each Individual Defendants' personal participation in the allegedly unlawful conduct.

### 2. The Management Defendants Participated in Unlawful Conduct Related to the Sale of JUUL

The Management Defendants mischaracterize plaintiffs' claims as seeking to impose liability based solely on their position as officers and directors of JLI. *See* ECF 748 at 5 ("Plaintiffs try to suggest that the Non-Management Directors must be liable for the Company's alleged activity by virtue of their membership on the Board."). But plaintiffs do not base their allegations on vicarious liability or any similar theory. Instead, the CAC includes detailed allegations of each defendant's specific involvement in fraudulent and unfair conduct. What is clear from the allegations is that Bowen, Monsees, Huh, Pritzker, and Valani all worked together to develop JUUL and the marketing strategies surrounding it.

### a. Bowen and Monsees

Plaintiffs allege that Bowen and Monsees developed JUUL with one purpose in mind: to create a potent, addictive nicotine delivery device to replicate the success of cigarettes. In Bowen and Monsees's graduate school thesis presentation, Monsees explained that the "cigarette is a carefully engineered product for nicotine delivery and addiction." CAC ¶ 62. The two JLI founders sought to create an e-cigarette product in the same vein. CAC ¶ 62.

Bowen in particular took a leading role in designing JUUL products to be as addictive as possible. *Id.* at ¶¶ 93-100. He "designed the JUUL product to deliver nicotine in larger amounts and at a faster rate than even cigarettes, and then knowingly misled the public about those facts." *Id.* ¶ 222. Bowen participated in and led the Phase 0 study (which would eventually become the basis for JUUL's primary patent) that showed that the JUUL formulation delivered more nicotine than cigarettes. *Id.* ¶¶ 100-11. Bowen was one of the named inventors on the patent, which described some of the ways in which the JUUL formulation exceeded traditional cigarettes in nicotine delivery. *Id.* Monsees received results from these studies, as well as consumer research

showing that 4% benzoate formulation was too strong for many users. *Id*. ¶ 114. In October 2014, Bowen informed the Board of Directors of the potency of the JUUL nicotine salt formulation. *Id*. ¶ 170. JLI executives, including Bowen, nonetheless used that formulation as the basis for JUUL. *Id*. ¶ 115.

Knowing that the Phase 0 study showed a tremendously high nicotine concentration in the JUUL formulation, Bowen and others at JLI "sought to engineer test results that differed [from the Phase 0 results] and were more consistent with" defendants' preferred messaging that JUUL was a safe alternative to traditional cigarettes. *Id*. ¶ 171. A June 2014 presentation at which Bowen and Monsees were present explained the differences between the two studies, yet they knowingly allowed JUUL to continue to be deceptively marketed. *Id*. ¶ 178.

Monsees received consumer research conducted in 2014 that showed, among other things, that JUUL "wasn't going to fit as well with consumers who are looking to cut back on cigarette intake" and that it delivered too much nicotine for some smokers. *Id*. ¶¶ 111-14. The Management Defendants were also aware of other internal studies showing that the 5% JUUL pod product would not be an effective cessation tool. *Id*. ¶ 126. Despite this knowledge, the Management Defendants continued to push the false narrative that JUUL was designed to be a smoking cessation device. Monsees, for example, testified before Congress that JUUL products were intended to "solve" the problem of ineffective cessation devices. *Id*. ¶ 205.

In addition to their influence over the initial design of JUUL, Bowen and Monsees (along with Huh, Pritzker, and Valani) were "intimately involved" in planning and executing the JUUL marketing strategies. *Id*. ¶ 344. Before developing JUUL, they "carefully studied the marketing strategies, advertisements, and product design revealed in cigarette industry documents." *Id*. ¶ 62. Many of those strategies were declared unlawful as a result of regulation and the settlement agreements between the cigarette industry and state governments, but the same strategies were nonetheless used to market JUUL. *Id*. at ¶¶ 290, 313, 328, 330. Monsees testified before Congress that he and Bowen—along with Huh, Pritzker, and Valani—have "final say" over marketing campaigns. *Id*. ¶ 333; *see POM Wonderful*, 362 Fed.Appx. at 581 (affirming finding of liability against corporate officer because, in part, the officer has "final word" on business

1    decisions). That same group was responsible for "directing and monitoring" the launch plans. *Id.*

2    ¶ 346. Bowen and Valani suggested that JLI could "leverage user generated content" in its

3    marketing. *Id.* ¶ 347. Monsees also provided specific guidance to employees concerning the

4    content of the JUUL website. *Id.* ¶ 333. He also personally reviewed photo shoots for billboard

5    advertisements even though he was "well aware" that the marketing campaign "could appeal to

6    teenagers." *Id.* ¶ 289. Shortly after launch of the JUUL marketing campaigns, Monsees spoke "at

7    length" to JUUL employees concerning the issue. *Id.* ¶ 334.

8         From product design to providing input and approval for the JUUL marketing campaigns,

9    Bowen and Monsees were heavily involved in the marketing and sales of JUUL products.

10   Plaintiffs' allegations are detailed and specific, and more than plausibly allege that Monsees and

11   Bowen personally participated in the alleged wrongful conduct.

12                              **b.      Huh, Pritzker, and Valani**

13        Plaintiffs have likewise more than plausibly alleged that Huh, Pritzker, and Valani each

14   personally participated in the fraudulent and unfair conduct in connection with the marketing and

15   sale of JUUL products. Although the Director Defendants attempt to portray themselves as

16   passive members of JLI's Board of Directors, plaintiffs' allegations tell a far different story.

17        One allegation—which defendants ignore—is that in order to expand the scope and

18   success of the unlawful marketing scheme, Huh, Pritzker, and Valani "planned a fundamental

19   shift in roles" of JLI's upper management to allow them "to direct and take control of JLI and

20   use it to commit the Defendants' unlawful acts." CAC ¶ 33. In October 2015, Huh, Pritzker, and

21   Valani "formed an Executive Committee of the JLI Board of Directors that would take charge of

22   fraudulently marketing JUUL products, including to youth," while Monsees stepped down as

23   CEO. *Id.* ¶ 34; *see also id.* ¶ 349-50 (JLI organization charts replaced the "CEO" with the

24   "Executive Committee"). Once the Executive Committee was in place, Huh, Pritzker, and Valani

25   "effectively [took] over the company" and "pressed for even more aggressive rollout and

26   marketing." *Id.* ¶ 35. *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1385 (2000) (finding that

27   plaintiffs' allegations were sufficient where the officers and directors "effectively took control of

28   the corporation" and "continued its operations"). Huh, Pritzker, and Valani continued to run the

company through their roles on the Executive Committee for nearly a year. *Id*. ¶ 352. The Vaporized campaign—which plaintiffs allege was a central part of the effort to get minors to use JUUL—launched in June 2015 and continued to expand during the Director Defendants' tenure as the Executive Committee. *Id*. ¶ 336 and n.374. During this time period, Pritzker stated that the JUUL branding "feels too young," and Pritzker and Valani spoke with JUUL employees concerning "the JUUL approach." *Id*. ¶ 334. They also received subsequent emails expressing the same concerns about the JUUL marketing strategies. *Id*.

Aside from appointing themselves as the de-facto CEOs of the company, "Pritzker, Huh, and Valani were each intimately involved in the planning and execution" of JLI's fraudulent marketing strategy. *Id*. ¶ 344. Those three, along with Bowen and Monsees, finalized the company's "messaging framework" in the summer of 2015 when JUUL was being launched. *Id*. ¶ 345. They had "final say"—*i.e.* approval power—concerning all marketing campaigns. *Id*. at ¶ 333. Huh, Pritzker, and Valani were "directing and monitoring the launch plans they had set in motion," including sponsored content on social media. *Id*. at ¶ 345. Huh in particular wanted to continue the youth-focused marketing. *Id*. at ¶ 348. Pritzker and Valani were briefed on the differences between the Phase 0 and Phase 1 studies, meaning that they knew the information being provided to the public concerning the equivalency of JUUL products and cigarettes was false. *Id*. at ¶ 178.[5] Pritzker and Valani were so heavily involved that they edited a press release concerning JLI's "youth prevention" program. *Id*. ¶ 405. These programs were a sham and were intended to provide direct access to the youth market in the same manner as the cigarette industry had done decades earlier. *Id*. ¶¶ 400-404. And conversation between Bowen and another JLI executive about "boarding school kids" running their own "ad campaign," Bowen remarked that Valani "was thinking maybe we can leverage user generated content." *Id*. ¶ 357.

---

[5] The Director Defendants assert that plaintiffs allege that the June 2014 presentation "did not note" the reason for the differences between the two studies. ECF 748 at 10. But plaintiffs allege that Pritzker and Valani were aware that the Phase 1 study results were inconsistent with the results of the Phase 0 study, and that variation in the puffing behavior of subjects was a factor in the inconsistencies. CAC ¶ 334. Armed with this information, they chose to selectively utilize the results of the Phase 0 study by withholding any mention of it in public discussions of JUUL's nicotine delivery while using the results as the basis for the main JUUL patent. *Id*.

Plaintiffs allege that one of the main motivations for defendants' unlawful strategies to grow the JUUL customer base was to position JLI for acquisition by a major cigarette company. *Id*. ¶¶ 73-87. The pitch to Altria was JLI's "Viral Marketing Wins" and potent nicotine formulation. *Id*. ¶ 43. Pritzker and Valani were the lead negotiators from JLI for Altria's eventual investment. *Id*.

### 3. Plaintiffs' Allegations Are Not Conclusory or Impermissible Group Pleading

Huh, Pritzker, and Valani also attempt to paint plaintiffs' allegations as "conclusory." ECF 748 at 7. There is nothing conclusory about the allegations detailing the specific roles and actions taken by each of the Management Defendants, however. Huh, Pritzker, and Valani, for example, argue that allegations that they "approved" website statements are conclusory. ECF 748 at 7. But those allegations describe specific conduct undertaken by defendants; they are not "conclusions" at all. *See EcoDiesel*, 295 F. Supp. 3d at 988 (plaintiffs' allegations that the company made misrepresentations "under the direction" of the CEO and reasonable inferences "that [the CEO] approved or ratified" misrepresentations were sufficient to support a claim against the CEO).

Defendants' "group pleading" arguments are also baseless. ECF 748 at 7. Throughout the complaint, plaintiffs refer to each of Bowen, Monsees, Huh, Pritzker, and Valani specifically by name. The use of the term "Management Defendants" to refer this specific set of individuals and their conduct is not "group pleading." When plaintiffs use the term "Management Defendants" they have done so deliberately because everyone included within that defined term engaged in the conduct alleged. These are thus not the type of "everyone did everything" allegations at issue in the cases defendants cite. *Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011); *see also Top Rank, Inc. v. Haymon*, No. 15–4961–JFW, 2015 WL 9948936, at *9 (C.D. Cal. Oct. 16, 2015) (plaintiffs lumped together defendants that were engaged in two completely different types of business, boxing management and financial investments); *cf. AlterG, Inc. v. Boost Treadmills, LLC*, 388 F. Supp. 3d 1133, 1153–54 (N.D. Cal. 2019) (generally alleging that "Defendants are responsible the [false] statements without specifying what any defendant did). Plaintiffs

allegations, for example, state that the "Management Defendants planned a fundamental shift in their roles," but then go on to identify the specific conduct undertaken by each defendant (in particular, that Huh, Pritzker, and Valani appointed themselves to the "Executive Committee"). CAC ¶¶ 33, 348-53. In addition, as Huh, Pritzker, and Valani point out, at times plaintiffs refer to the conduct of JLI employees other than the Director Defendants. ECF 748 at 7 n.3. That underscores the fact that plaintiffs' specific references to the Management Defendants intentionally describe the conduct of that set of individuals. The fact that plaintiffs did not name any other JLI officers or directors as defendants or include them within the term "Management Defendants" also highlights the fact that plaintiffs' allegations are narrowly focused on the specific conduct of Bowen, Monsees, Huh, Pritzker, and Valani, including in situations where the complaint uses the term "Management Defendants."

### 4.     Bowen and Monsees Misconstrue the Law Governing Officer and Director Liability

Bowen and Monsees make two additional arguments concerning why they should not be subject to liability as officers and directors, neither of which has merit.

#### a.     Officer and Director Liability Does Not Require a Showing of "Unbridled Control" Over the Unlawful Conduct

Bowen and Monsees assert that for officer and director liability under the UCL to attach, the defendant must have exercised "unbridled control" over the offending conduct. ECF 751 at 9-10; ECF 752 at 1, 5. There is, however, no such requirement; officers and directors can be liable based on their personal participation in, or their unbridled control of, the unlawful conduct.

The "unbridled control" language originated from the California Courts of Appeals decision in *People v. Toomey*, 157 Cal.App.3d 1 (1984). The court in *Toomey* did not require both active participation *and* unbridled control. It held that Toomey—a corporate president— could be liable because he had "unbridled control over the practices which were found violative of" the UCL. *Id.* at 15. But the court also separately held that Toomey could be liable because he "participated in the unlawful practices." *Id.*; *see also POM Wonderful*, 362 Fed.Appx. at 581 (citing *Toomey* for the proposition that under the UCL an individual may be liable "if he

personally caused, *__or__*, being in control, at least permitted the acts constituting false advertising")
(emphasis added). Two years after *Toomey*, the California Supreme Court held that an officer or
director may be liable when he or she "authorizes, directs, or in some meaningful sense actively
participates in the wrongful conduct." *Frances T. v. Village Green Owners Association*, 42
Cal.3d 490, 504 (1986). The California Supreme Court did not require a showing of "unbridled
control." Courts have frequently upheld findings against corporate officers and directors based
on the individual's participation in the wrongful conduct without any mention of whether the
officers or directors had any control—let alone unbridled control—over the corporation's
conduct. In *Asahi Kasei Pharma Corporation v. Actelion Ltd.*, for example, the California Court
of Appeals affirmed a jury verdict against three officers of a large, multinational pharmaceutical
company because they "actively participated in the tortious conduct." 222 Cal. App. 4th 945, 966
(2013).

The cases Bowen and Monsees cite do not support their position that officers or directors
can be liable only when they exercise "unbridled control" over corporate actions, even if they
personally participated in the wrongdoing. Instead, the cases concern secondary liability, where a
plaintiff seek to hold a defendant who was not involved in the wrongdoing liable because of its
relationship to the company that did engage in the alleged wrongdoing. For example, in *Emery
v. Visa International Services Association*, the plaintiffs alleged that Visa was liable for
deceptive solicitations conducted by lottery companies simply because Visa processed payments
on behalf of merchants who sold lottery tickets. 95 Cal. App. 4th 952, 954 (2002). The plaintiffs
sought to hold Visa liable under an agency theory, which the court rejected because the plaintiffs
had not demonstrated the requisite level of control by Visa. *Id*. at 960. In *Perfect 10, Inc. v. Visa
International Services Association*, the Ninth Circuit rejected the plaintiffs' theory that VISA
was secondarily liable because it processed credit card payments for websites that allegedly
infringed Perfect 10's intellectual property. 494 F.3d 788, 792, 808 (9th Cir. 2007) (citing
*Emery*). And in *Banks.com, Inc. v. Keery*, the plaintiff's theory of liability was based on the fact
that the defendant was allegedly "a facilitator, owner, or administrator" of a website that copied
the content of plaintiffs' own website—*i.e.* that the defendant was vicariously liable for conduct

of the company that owned the offending website. No. C 09–06039 WHA, 2010 WL 727973, at *6 (N.D. Cal. 2010). All three cases thus dealt with a question that is not relevant here: the legal standard applicable to theories of secondary liability where the defendant had no involvement in the underlying wrongful conduct. *See also People v. Mackone Development*, 2017 WL 6333866, at *9 n.10 (Cal. Ct. App. Dec. 12, 2017) (explaining that the "unbridled control" standard applies to forms of vicarious liability).

In any event, as detailed above, plaintiffs do allege control by Bowen and Monsees over the unlawful conduct. Bowen and Monsees founded the company with the intention to follow the same unlawful marketing practices that the cigarette industry had used for decades. CAC ¶¶ 62-63. The Management Defendants, including Monsees and Bowen, had "final say" over marketing decisions. Bowen seeks to sidestep that allegation by describing it as a "characterization[] of what Plaintiffs believe," but factual allegations and reasonable inferences are to be taken as true and construed in plaintiffs' favor. *Usher*, 828 F.2d at 561; *see also POM Wonderful*, 362 Fed.Appx. at 581 (affirming liability under the UCL based, in part, on allegation that defendant had "final word on [the corporation's] business decisions"). Bowen and Monsees—along with Huh, Pritzker, and Valani—also oversaw the implementation of the fraudulent and unfair marketing. CAC ¶ 171. Through these and other actions, Bowen and Monsees exercised substantial and direct control over the allegedly unlawful practices.

### b. Officer and Directors Need Not Have Made Fraudulent and Deceptive Statements Directly to Consumers

Bowen also argues that he cannot have personally participated in unlawful conduct unless he engaged in "market-facing acts." ECF 751 at 8. He thus claims that he cannot be liable under the UCL because there are "no allegations that Bowen personally competed, advertised, sold, or made false and misleading statements . . . ." *Id*. at 9. There is, however, no requirement that to be held liable, an officer or director must have personally sold the products or uttered the allegedly fraudulent statements at issue. Instead, a "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or   in   which   he   participates." *Facebook*, 844 F.3d at 1069.

1      Courts frequently uphold claims against officers, directors, and other defendants who did

2  not themselves make any allegedly misleading statements to the public. In *Facebook*, for

3  example the Ninth Circuit upheld a finding of liability where a corporate CEO developed the

4  company's promotional scheme. *Id*. And in *Ecodiesel*, the court denied a motion to dismiss

5  claims against the company CEO where "Plaintiffs' theory is not that [the CEO] himself made

6  misrepresentations about EcoDiesel but rather that he 'signed off' on the FCA companies'

7  statements about EcoDiesel." 295 F. Supp. 3d at 988-89. In neither of these cases was the

8  corporate officer's liability based on engaging in any "market-facing acts." *See also Schwartz*,

9  969 F.2d at 843 (explaining that officers and directors may be liable when they "injure third

10 parties through the corporation" and that "tacit consent" may be a sufficient basis on which to

11 impose liability).

12     The authority Bowen cites does not support his position. As noted above, the *Emery* case

13 presented a factual scenario and theories of vicarious liability that are entirely distinct from what

14 plaintiffs allege in this case. Unlike the plaintiffs in *Emery*, plaintiffs here do allege that Bowen

15 and the other Management Defendants personally participated in the decision-making processes

16 behind the unlawful conduct. *E.g.* CAC ¶ 346 (Bowen was responsible for "directing and

17 monitoring the launch plans [the JLI Board] had set in motion"); *Id*. ¶ 171 (Bowen "sought to

18 engineer test results that differed [from the Phase 0 results]" as a means of perpetuating the false

19 claims that JUUL products are an alternative and equivalent to traditional cigarettes). In *San

20 Francisco Residence Club, Inc. v. Amado*, the court simply rejected a claim of vicarious liability,

21 773 F. Supp. 2d 822, 834 n.5 (2011), a theory of liability that plaintiffs do not assert here. And in

22 *Casey v. Olson*, the defendant was an officer of a bank who told the plaintiff that the bank would

23 give him a loan. No. 09- 1111 JAH, 2010 WL 3516930, at *9 (S.D. Cal. Sept. 8, 2010). The bank

24 then allegedly failed to fund the loan, but there was no allegation that the bank-officer defendant

25 played any role in the breach of the loan agreement. *Id*. The problem with plaintiffs' allegations

26

27

28

1   was that they lacked any suggestion of personal participation by the defendant, not that there

2   were no allegations of statements made directly to the public.[6]

3   ### 5.   Plaintiffs May Seek Restitution from the Management Defendants

4   The Management Defendants also assert that plaintiffs cannot recover restitution, the

5   monetary remedy available under the UCL, from them. Defendants' arguments misconstrue

6   when restitution is available under California law and should be rejected for many of the same

7   reasons that the Court should reject the same arguments made by JLI and Altria. *See* ECF 758

8   (Plaintiffs' opposition to JLI and Altria's motions to dismiss) at 25-27.

9   Like JLI, Monsees argues entitlement to restitution requires a direct relationship between

10   a plaintiff and defendant. ECF 752 at 5. The California Supreme Court's holding in *Korea*

11   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), however, "does not limit UCL

12   restitution claims to direct purchases as a matter of law." *Cabebe v. Nissan of N. Am., Inc.*, No.

13   18-cv-00144-WHO, 2018 WL 5617732, at *5. (N.D. Cal. Oct. 26, 2018) (citing *Shersher v.*

14   *Superior Court*, 154 Cal. App. 4th 1491, 1498 (2007)). Consistent with the UCL's statutory

15   language, *Korea Supply* "'does not hold that a plaintiff who paid a third party money (*i.e.*, money

16   in which the plaintiff had a vested interest) may not seek UCL restitution from a defendant

17   whose unlawful business practice caused the plaintiff to pay that money.'" *In re Anthem, Inc.*

18   *Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *31 (N.D. Cal. May 27,

19   2016) (quoting *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338. (2009)).

20   Plaintiffs allege that Bowen and Monsees founded JLI, and that Huh, Pritzker, and Valani

21   were among its earliest and largest investors who assumed control of the company in 2015. CAC

22   ¶¶ 2, 21, 261. By executing on a scheme to mislead consumers and hook youth, defendants

23   sought to increase JUUL's user base and, in doing so, "earn[ed] billions of dollars in profits."

---

24   [6] The Individual Defendants at various points refer to the requirement that a defendant's conduct

25   must have caused the plaintiffs' injuries. ECF 748 at 20; ECF 751 at 6. As not above, a corporate officer "cannot hide behind the corporation where he is an actual participant in the tort." *Coastal*

26   *Abstract*, 173 F.3d at 734 (citation omitted). In any event, issues related to reliance and causation are not well-suited for resolution on a motion to dismiss and plaintiffs have sufficiently alleged

27   reliance and causation with respect to the fraudulent and unfair marketing of JUUL products. *See* Plaintiffs' Opposition to JLI and Altria's Motion to Dismiss, ECF 758 at 15-16.

28

CAC ¶ 2. Even if some of those benefits were indirectly received, they are sufficient under the UCL.

"The trial court's discretion to award restitution under the UCL is very broad." *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal. App. 4th 102, 135 (2003). Applying this principle, courts have not limited restitution to immediate sellers of products or other companies within the chain of distribution. In *Troyk*, for example, the California Court of Appeals held that:

> In the circumstances of this case, although the class members did not pay the service charges directly to either FGI or FIE, the trial court could have properly inferred from the undisputed facts that FGI and FIE received a benefit from those service charge payments (which FIE and FGI required) even though they did not directly receive money. As noted above, Prematic was incorporated by, and is a wholly owned subsidiary of, FGI. To the extent Prematic earned profits from those service charge payments, its net worth increased and the value of FGI's stock investment in Prematic likewise increased, thereby benefiting FGI.

171 Cal. App. 4th at 1340.

Likewise, in *People, ex rel. Harris v. Sarpas*, two of the defendants owned and managed a company that offered loan modification services through the U.S. Homeowners Association. 225 Cal. App. 4th 1539, 1543-44 (2014). The two individual defendants argued that they could not "be ordered to pay restitution because neither of them received funds directly from USHA customers." *Id*. at 1558. The California Court of Appeals disagreed and held that the individual defendants "received money indirectly from customers by having them pay USHA" and could thus be ordered to pay restitution. *Id*. at 1562. The court observed that a contrary rule "would allow UCL and FAL violators to escape restitution by structuring their schemes to avoid receiving direct payment from their victims." *Id*. It held that the measure of restitution was not the "net profits" received by the individual defendants, but the amount needed to restore plaintiffs the money they had lost. *Id*. Thus, in *Troyk* and *Sarpas*, courts determined that plaintiffs could recover restitution from defendants whose only benefit was indirect. *See also Cabebe*, 2018 WL 5617732, at *2, *5 (plaintiffs purchased used Nissan cars from an Acura dealer and CarMax, and the court rejected Nissan's argument that the plaintiffs could not assert a UCL claim because they "bought their vehicles from a third-party and do not allege that Nissan received any money or property as a result of that transaction").

The cases defendants cite are inapposite as they involve situations in which the money that plaintiffs sought the return of had no relationship to the defendants' alleged wrongdoing. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 445, 454 (2005) (plaintiff alleged that defendants manipulated the California energy markets, but sought restitution based on defendants' sale of insider information, rather than restitution of utility fees or other money the plaintiff had actually paid); *Philips v. Apple*, No.15-cv-04879-LHK, 2016 WL 5846992, at *10 (N.D. Cal. Oct. 6, 2016) (plaintiff alleged that Apple fraudulently marketed its "Wi-Fi Assist" feature, but the only loss plaintiffs alleged were payments to wireless carriers for cell phone service; there was no allegation that Apple even indirectly received any of those funds); *see also Apple*, 2016 WL 5846992, at *10 (distinguishing plaintiffs' allegations from the claims in *Sarpas* and *Troyk*).

### 6.    Plaintiffs State a Claim for Injunctive Relief as to Bowen, Pritzker, and Valani[7]

While certain aspects of the unlawful marketing and sales of JUUL products are no longer occurring (in particular, the Vaporized campaign and the selling of mint and other flavors), defendants do not dispute that other allegedly unlawful conduct *is* ongoing; specifically, the misrepresentations and omissions concerning the marketing of JUUL products. The Individual Defendants instead argue that labeling is "now a matter of FDA regulation." ECF 748 at 13. The Court can, however, address issues related to the marketing of JUUL products notwithstanding the FDA's ongoing review. *See* Plaintiffs' Opposition to Defendants' Motion to Stay Based on the FDA's Primary Jurisdiction, ECF 755. And while Bowen, Pritzker, and Valani argue that as individuals they have no authority to control the actions of the company (ECF 748 at 13; ECF 751 at 11 n.8), plaintiffs' allegations show the substantial control they have exercised over the company throughout their tenure.[8]

---

[7] Plaintiffs do not seek injunctive relief as to Huh and Monsees.

[8] To the extent the Court dismisses any injunctive relief claims as to the individual defendants, plaintiffs request that such dismissal be without prejudice in the event discovery uncovers additional evidence of defendants' ongoing roles and responsibilities within the company.

1

2

### C.    Plaintiffs State Claims for Unjust Enrichment Against the Management Defendants Under California Law

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Monsees, Huh, Pritzker, and Valani argue that because plaintiffs are not entitled to restitution from them, they also cannot state a claim for unjust enrichment. ECF 748 at 13-14; ECF 752 at 6. As discussed above, plaintiffs are entitled to restitution from all of the Management defendants. *See* Section III.B.4. In the cases defendants cite, by contrast, the plaintiffs either claimed that the expense they incurred benefitted third parties (and not the defendant) or that the defendant was benefitted in ways that had no connection to the plaintiff. *Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *9 (N.D. Cal. Feb. 15, 2019) (because plaintiffs bought used cars from third parties, and there was no way in which the defendant would have benefited from those purchases);[9] *Sun Group. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-cv-02191-SK, 2018 WL 10689420, at *10 (N.D. Cal. July 9, 2018) (plaintiff's unjust enrichment claims were based on a contract between the defendant and third-parties that had nothing to do with the plaintiff, and the plaintiff could thus not demonstrate that it incurred any detriment). Here, plaintiffs allege that they paid too much for their JUUL products, and that the Individual Defendants (the owners and primary investors in JLI) benefitted as a result.

18

19

20

21

22

23

24

25

26

Monsees, Huh, Pritzker, and Valani also contend that because they did not participate in fraudulent or unfair conduct, they cannot be held liable under an unjust enrichment theory. ECF 748 at 13-14; ECF 752 at 6. Plaintiffs have sufficiently alleged specific participation by each individual defendant in the fraudulent and unfair marketing and sales of JUUL products. *See* Section III.B.2.  Bowen and Monsees also argue that there is no independent cause of action for unjust enrichment in California. ECF 751 at 10 n.7; ECF 752 at 6.  All of the authority Bowen and Monsees cite, however, predates the California Supreme Court's decision in *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015), and this Court's observations that "the California Supreme Court [] confirmed that unjust enrichment can be a stand-alone cause of

27

28

---

[9] With respect to claims under the UCL, this Court has held that purchasers of used cars sufficiently alleged an entitlement to restitution. *Cabebe*, 2018 WL 5617732, at *5.

action." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *23 (N.D. Cal. Aug. 15, 2017) (Orrick, J.) (citing *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) and *Hartford*, 61 Cal. 4th at 1000); *see also ESG Capital Partners, PL v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (allowing an unjust enrichment cause of actions "as an independent cause of action or as a quasi-contract claim").[10]

### D.   The Management Defendants Have Offered No Basis to Dismiss Plaintiffs' Claims Under the Laws of Any Other Jurisdiction

In addition to seeking dismissal of plaintiffs' claims under California law, Huh, Pritzker, and Valani also seek dismissal of plaintiffs' consumer protection and unjust enrichment claims under the laws of every other state.  Huh, Pritzker, and Valani's motion itself only addresses a handful of these states, and for the remaining states they provide a case or two in a cursory appendix.  Their arguments and sparse authority do not warrant dismissal of any of plaintiffs' claims.[11]

#### 1.   Consumer Protection Statutes

Huh, Pritzker, and Valani seek to dismiss plaintiffs' non-California consumer protection claims for a variety of reasons. For the fifteen jurisdictions that the Director Defendants contend apply the same standard as California,[12] the Court should deny Huh, Pritzker, and Valani's motion to dismiss for the reasons set out above, *i.e.* because defendants personally participated in the wrongful conduct. The remaining jurisdictions fit into two categories: (1) jurisdictions

---

[10] Bowen also seeks dismissal of plaintiffs' California unjust enrichment claim for the same reason as JLI (ECF 751 at 10 n.7)—presumably because plaintiffs did not purchase JUUL products directly from Bowen. The Court should reject this argument for the reasons stated in plaintiffs' opposition to JLI's motion. ECF 758 at 36-37.

[11] Plaintiffs, JLI, and Altria agreed that only plaintiffs' federal and California law claims would be the subject of motions to dismiss to be heard in September. *See* May 13, 2020, Joint Case Management Conference Statement, ECF 551 at 7. Bowen and Monsees likewise focused their motions on plaintiffs' California claims.  Huh, Pritzker, and Valani, however, chose to seek dismissal of all of plaintiffs' state law claims at this time. Plaintiffs reserve their right to oppose any further request by Huh, Pritzker, and Valani to file motions to dismiss plaintiffs' claims under Rule 12(b)(6).

[12] Arizona, Delaware, Florida, Hawaii, Illinois, Iowa, Louisiana, Massachusetts, Minnesota, Missouri, Nebraska, North Carolina, South Carolina, Tennessee, and Texas.

1  defendants contend apply a different standard than California, and (2) jurisdictions for which

2  defendants identify no relevant authority at all. With the exception of two statutes,[13] defendants'

3  arguments lack merit. Each of Huh, Pritzker, and Valani's arguments is addressed below and

4  summarized on a state-by-state basis in Appendix A for the Court's convenience.

5          **a.**      **Jurisdictions That Huh, Pritzker, and Valani Contend Apply a**

6                     **Different Standard Than California**

7  Huh, Pritzker, and Valani also contend that several states apply a more stringent standard

8  for officer and director liability than California, and that plaintiffs' allegations fail to meet those

9  standards. Defendants are incorrect that the states they have identified apply materially different

10  standards than California and, even if they did, plaintiffs' allegations are sufficient under the

11  standards that defendants contend should apply.

12  ***Alaska, Arkansas, Connecticut, Kentucky, and New York***: Huh, Pritzker, and Valani

13  assert that Alaska, Arkansas, Connecticut, Kentucky, and New York all apply a higher standard

14  than California, in that they require actual knowledge of the wrongdoing. ECF 748 at 16. To the

15  extent those states do require knowledge of the wrongdoing, plaintiffs have sufficiently alleged

16  such knowledge. *See* Section III.B.2; *see also e.g.* CAC ¶ 178 (Monsees, Bowen, Pritzker and

17  Valani were informed of differences between the Phase 0 and Phase 1 studies). In addition, in

18  two of the five jurisdictions in play, liability may attach if the defendant participated in the

19  unlawful conduct <u>or</u> had knowledge of it and failed to take action to prevent it. *See*

20  *Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App.

21  1981) (liability where individual "actively participated in the fraudulent scheme, or was aware of

22  its existence"); *People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1010 (N.Y. App.

23  Div. 2003) ("officers and directors of a corporation may be held liable if they participated in or

24  had knowledge of the fraudulent or illegal activities of a corporation"). Although an Alaska state

25  court has not directly addressed the issue, in describing a form of agency liability the Alaska

---

26  [13] Plaintiffs voluntarily dismiss their claims under the Delaware Deceptive Trade Practices Act
(CAC ¶¶ 1099-1112)—but not their claim under the Delaware Consumer Fraud Act (*id.* ¶¶ 1084-
27  1098), which the Director Defendants did not contest—and the Virginia Consumer Protection Act
(*id.* ¶¶ 3132-3147).

28

                 

Supreme Court has cited with approval two treatise that explain that officers and directors may be liable when they "participate[] in the commission of a tort" even if they are acting on behalf of the corporation. *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 513 n.49 (Alaska 2015) (citing 18B AM. JUR. 2D *Corporations* § 1609 (2015)).[14] And although there is a knowledge requirement in Arkansas and Connecticut, in both states, liability attaches where an officer or director had actual knowledge or should have known of the wrongdoing. *See Green v. Skyline Highland Holdings LLC*, No. 4:17-cv-00534 BSM, 2017 WL 10607256, at *1-2 (E.D. Ark. Dec. 13, 2017) (defendant liable under the Arkansas Deceptive Trade Practices Act because, "as an officer of the nursing home, [defendant] knew or should have known that it was understaffed and causing harm to residents"); *Joseph General Contracting, Inc. v. Couto*, 317 Conn. 565, 590 (Conn. 2015) (knowledge requirement may be satisfied through "actual knowledge . . . reckless indifference . . . or an awareness of a high probability of fraud" and that "[a]n individual's degree of participation in business affairs is probative of knowledge").

**New Hampshire**: Huh, Pritzker, and Valani's reliance on *Unit Owners Ass'n of Summit Vista Lot 8 Condo v. Miller*, 141 N.H. 39 (N.H. 1996) for the proposition that the only way to hold directors or individuals liable under the New Hampshire Consumer Protection Act is (NHCPA) through a veil-piercing theory is misplaced. In *Unit Owners*, the court contrasted the New Hampshire Condominium Act (which permits vicarious liability) with the NHCPA (which does not). *Id.* at 44. And the court noted that any "person" who is an "unlawful actor" may be liable under the NHCPA. *Id.* As the District of New Hampshire later explained, officer liability under the NHCPA "does not depend on the [veil piercing] doctrine." *Northeastern Lumber Mfrs. Assoc. v. Northern States Pallet Co., Inc.*, 710 F. Supp. 2d 179, 188 (D.N.H. 2010). The *Northeastern Lumber* court, citing *Unit Owners*, noted that the NHCPA applies to "natural persons in addition to various business entities." *Id.* at 187.

---

[14] Huh, Pritzker, and Valani cite Alaska Civil Pattern Jury Instruction 10.06, which appears to state the standard for finding an officer or director vicariously liable because the first element of the jury instruction is that the corporation itself has committed an unfair or deceptive practice.

***Oklahoma***: The Director Defendants claim that the Oklahoma Consumer Protection Act prohibits suit against "any officer, director, or shareholder for the debt or liability of a corporation." ECF 748 at 16 (quoting, in part, 12 Okla. Stat. § 682(B)). Director Defendants, however, relegate to a footnote the portion of the statute stating that "nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct" and ignore the portion indicating that the limitation was meant to apply to claims based on vicarious liability or an alter ego theory, neither of which plaintiffs assert. 12 Okla. Stat. § 682(B). The statute thus simply codifies the commonly accepted standard that officer and directors are liable if they personally participate in an unlawful action. *See Tyree v. Cornman*, 2019 OK CIV APP 66, at ¶33 (Okla. 2019) (holding that section 682(B) did not bar claim against a corporate officer where "plaintiffs have alleged that [defendant] personally violated the Consumer Protection Act"). Plaintiffs meet this standard for the reasons set forth above.

**b.     Jurisdictions in Which Huh, Pritzker, and Valani Did Not Identify Any Relevant Authority**

For twenty-two jurisdictions, Huh, Pritzker, and Valani argue that because they were unable to locate authority "in which a state court specifically contemplated director liability," the Court should conclude that those jurisdictions do not recognize such liability at all. ECF 748 at 14. This argument is without merit for several reasons.

First, as noted in Appendix A, for many of these jurisdictions (Alabama, Colorado, District of Columbia, Kansas, Maine, Maryland, Michigan, Ohio, Washington, West Virginia, and Wyoming), plaintiffs *have* identified relevant authority authorizing liability for officers and directors under the jurisdiction's consumer protection act. *E.g. Hoang v. Arbess*, 80 P.3d 863, 870 (Colo. App. 2003) ("Individual liability of corporate officers and agents is proper under the [Colorado] Consumer Protection Act"); *id*. at 868 (citing cases where corporate directors were held liable for fraudulent misrepresentations). Where courts in these jurisdictions have articulated a specific standard for officer and director liability, they have generally adopted a standard that is substantially similar to California's. *E.g. State ex rel. Stephan v. Commemorative Services Corp.*, 16 Kan. App. 2d 389, 400 (1991) (Holding, in a case involving claims under the

Kansas Consumer Protection Act, that "[t]he law in this state is well settled. . . . [A] corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured.") (citation omitted).

Second, "federal courts are not precluded from affording relief simply because neither the state supreme court nor the state legislature has enunciated a clear rule governing a particular type of controversy or claim." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *modified by* 810 F.2d 1517 (9th Cir.1987). In predicting how the high court of a state would rule, federal courts should look to authority from "appellate court opinions [from that state], decisions from other jurisdictions, and treatises." *U.S. v. Colin*, 314 F.3d 439, 443 (9th Cir. 2002). Each of these factors weighs in favor of applying a standard for officer and director liability similar to California's, rather than concluding that the states would not recognize officer and director liability at all.

With respect to the first factor courts consider when deciding how a state court would likely rule on an issue (relevant state law), as a general rule, consumer protection statutes are to be construed liberally to effectuate their remedial purpose. *See* Appendix A; *see also e.g. State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982) ("Because the [Alaska Unfair Trade Practices and Consumer Protection Act] is remedial, we are mindful that its provisions are to be liberally construed."); *Quynh Truong v. Allstate Ins. Co.*, 147 N.M. 583, 591 (N.M. 2010) ("Since the [New Mexico Unfair Practices Act] constitutes remedial legislation, we interpret the provisions of this Act liberally to facilitate and accomplish its purpose and intent."); *Long v. Dell, Inc.*, 984 A.2d 1074, 1081 (R.I. 2009) ("The [Rhode Island Deceptive Trade Practices Act] is a remedial act and it should be liberally construed."). In addition, "the Supreme Court has construed the FTC Act, on which many state consumer protection laws are modeled, to broadly cover unfair trade practices." *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 1397228, at *29 (E.D. Va. Feb. 6, 2019). There is thus no basis to broadly

- 23 -

conclude that the courts of any of the twenty-two jurisdictions would not recognize officer and director liability for plaintiffs' fraudulent conduct and unfairness claims.

As to the second factor (decision from other jurisdictions), as Huh, Pritzker, and Valani note, "[t]he majority of states that have addressed the issue" apply the same standard as California. ECF 748 at 14. This factor thus also weighs against defendants' position and in favor of a finding that in the absence of on-point authority, the jurisdictions would apply a standard that focused on the extent of the defendant's personal participation in the unlawful conduct. And with respect to the third factor, treatises routinely agree that officers and directors are liable when they personally participate in unlawful conduct. *See* Restatement (Third) of Agency § 7.01 cmt (d) ("Holding a position as on officer or director of a corporation or other organization does not insulate a person from liability for the person's own tortious conduct.  Thus, an organizational officer is subject to liability when the officer directly participates in conduct that constitutes a tort . . . ."); 18B AM. JUR. 2D *Corporations* § 1609 (individual liability attached to officers and directors who engage in "active participation or cooperation in" a wrongful act).

Third, Huh, Pritzker, and Valani provide no persuasive authority for their contention that plaintiffs seek to "extend the law" in any jurisdiction. ECF 748 at 14; *cf. Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1154-55 (9th Cir. 2011) (reversing district court's recognition of a tort claim of champery under Nevada law where the Supreme Court of Nevada had indicated that champery defense should be limited to contract actions); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (discussing whether Kentucky's statute of limitations "borrowing" statute would apply a "most significant relationship" test instead of an "accrual" test). In the absence of specific authority addressing officer and director liability, the Court should apply a standard that considers the extent to which whether Huh, Pritzker, and Valani personally participated in the allegedly unlawful actions.  As discussed above, plaintiffs sufficiently allege such participation.[15]

---

[15] Plaintiffs did not locate directly on-point authority in two jurisdictions (Nevada and South Dakota). Decisions from other jurisdictions and treatises support applying a standard similar to that of California in these two jurisdictions.

### 2. Unjust Enrichment

With respect to plaintiffs' non-California unjust enrichment claims, Huh, Pritzker, and Valani contend that every jurisdiction requires that the "defendant received *some* benefit at the *plaintiff's* expense." ECF 748 at 16.[16] As discussed above, however, defendants have benefitted due to the sales of JUUL products that would not have occurred—or for which purchasers would have paid less—absent the fraudulent and unfair practices that Huh, Pritzker, and Valani participated in. *See* Section III.B.4.

While the authority defendants cite does require that a defendant received some benefit at the plaintiffs' expense, none supports the dismissal of plaintiffs claim and many involve situations in which the plaintiffs incurred no expenses and the defendant received no benefit at all. *E.g. Euclid St., LLC v. D.C. Water & Sewer Auth.*, 41 A.3d 453, 463 n.10 (D.C. 2012) (complaint arose out of plaintiff property owners "*failure* to pay water service fees"—not the conferral of any benefit at all); *Ware v. Ware*, 161 P.3d 1188, 1197 (Alaska 2007) (woman sued her brother as part of an inheritance dispute); *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 546-47 (Mich. 1991) (granting summary judgment because the defendant's enrichment was no unjust); *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 721-23 (Tex. Ct. App. 2015) (rejecting unjust enrichment claim because it was filed outside the statute of limitations period). And in *Clark*, the court noted that a benefit may be "passively received." *Id.* at 720.

### E. The Court Has Personal Jurisdiction Over Huh, Pritzker, and Valani for Each of Plaintiffs' State Law Claims

Of the 108 named plaintiffs in the CAC,[17] ninety-six originally filed their claims in this Court or had their cases transferred to this Court prior to the inception of the MDL. *See*

---

[16] Although defendants claim that each jurisdiction requires "at a minimum" that the defendant receive "some benefit" from the plaintiffs, they do not identify which states—if any—they claim apply a higher standard. Instead, their motion includes only a cursory appendix and a few citations, and they do not provide any substantive analysis of the standards in each state. Plaintiffs therefore respond only to defendants' argument that the Court should dismiss plaintiffs' unjust enrichment claims because they do not allege "some benefit" received by the defendants.

[17] In situations where a legal guardian has brought claims on behalf of multiple minors, the claim of each minor is listed separately.

Appendix B (listing original filing location for each plaintiff and highlighting those transferred to this Court from other courts via the MDL process). Because they reside in California, Pritzker and Valani do not dispute that they are subject to general personal jurisdiction in this Court with respect to the claims brought by these ninety-six plaintiffs. ECF 748 at 18, n.18. They do argue that the Court lacks personal jurisdiction over them as to claims brought by the twelve plaintiffs who originally filed their complaints in a transferor jurisdiction other than California, and Huh (who now resides in Florida) argues that the Court lacks personal jurisdiction over him as to claims brought by plaintiffs who originally filed their complaints in a transferor jurisdiction other than Florida. ECF 748 at 17-21.

Plaintiffs do not contend that the Court has general personal jurisdiction over Pritzker and Valani for cases that originated outside of California, or over Huh for cases that originated outside of Florida. This Court does, however, have specific personal jurisdiction over each of the plaintiffs' claims and, even if it did not, it can (and should) assert pendent personal jurisdiction over Huh, Pritzker, and Valani with respect to all plaintiffs' claims.

### 1.    The Court has Specific Personal Jurisdiction Over Each Plaintiffs' Claims

"A plaintiff need only make a *prima facie* showing of jurisdictional facts to avoid the granting of a motion to dismiss." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL 2672 CRB (JSC), 2017 WL 66281, at *20 (N.D. Cal. Jan. 4, 2017). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Courts in the Ninth Circuit employ a three-prong test for evaluating whether specific personal jurisdiction is consistent with due process: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Volkswagen*, 2017 WL 66281, at *20 (citing *Schwarzenegger*, 374 F.3d at 801).

Defendants are wrong that the showing needed to assert personal jurisdiction over a corporate officer or defendant is higher than that needed to establish liability; none of defendants' cases stand for this proposition. In *Davis v. Metro*, the Ninth Circuit reaffirmed that a specific jurisdiction inquiry focuses on the defendants' "minimum contacts" with the forum and whether the exercise of jurisdiction "comported with traditional notions of fair play and substantial justice." 885 F.2d 515, 523 (9th Cir. 1989) (citation omitted). And the Ninth Circuit recognized—contrary to defendants' contention that personal jurisdiction requires a higher level of involvement in the unlawful conduct than is needed for liability—that the conduct of an officer in running a business may create "sufficient minimum contacts to permit jurisdiction over the individual defendant" even if "the substantive prerequisites do not exist for liability." *Id*. at 523 n.10. In *Park Miller, LLC v. Durham Group Limited*, the corporate officer's conduct had no bearing on issues relevant to the litigation, and plaintiffs attempted to hold the defendant liable because he was merely copied on emails allegedly containing inaccurate information. No. 19-cv-04185-WHO, 2019 WL 6841216, at *8-10 (N.D. Cal. Dec. 16, 2019). And in *Microsoft Corporation v. Gulfcoast Software Solutions, LLC*, after limited jurisdictional discovery plaintiff showed "at most . . . Mr. Lindblom plays a broad managerial role within the company." No. C14-1851 RSM, 2016 WL 4543231, at *4 (W.D. Wash. Jan. 4, 2016). In none of these cases was jurisdiction lacking because a defendant's conduct was sufficient for a finding of liability but not for personal jurisdiction.

Regardless of which standard applies, Huh, Pritzker, and Valani's personal involvement in the marketing and sale of JUUL products throughout the country subjects them to specific jurisdiction in California and every other state.

### a.      The Court has Specific Jurisdiction Over Huh in California

While Pritzker and Valani agree that the Court would have general personal jurisdiction over them with respect to claims in actions originally filed in this Court, Huh challenges personal

1    jurisdiction over him for such cases. Huh argues that the Court lacks general jurisdiction over

2    him because he lives in Florida. Huh does not address the extent to which his alleged conduct is

3    connected to California; he argues instead that he generally did not participate in any

4    wrongdoing at all. ECF 748 at 19. But as noted above, plaintiffs' allegations detail Huh's

5    personal involvement in fraudulent and unlawful conduct regarding the marketing and sale of

6    JUUL products. *See Giotta v. Ocwen Financial Corporation*, No. 15-cv-00620-BLF, 2015 WL

7    8527520, at *3-4 (N.D. Cal. Dec. 11, 2015) (finding specific jurisdiction over individual

8    defendant who participated in scheme to charge inflated mortgage fees). Plaintiffs' allegations

9    are sufficient to establish that Huh had "minimal contacts" with California and that this Court's

10   exercise of personal jurisdiction is appropriate.

11          During his involvement in the alleged unlawful conduct, Huh resided in California, JLI's

12   corporate headquarters were in California, and JLI sponsored in-person events throughout

13   California. CAC ¶ 12, 22, 326, 403. There can be little serious dispute that Huh purposefully

14   availed himself of California with respect to the matters at issue in this litigation, as he played a

15   key role in taking over and running a California company while residing in California in the time

16   period during which a majority of the wrongful alleged conduct occurred (including in

17   California).

18          Huh also argues that any of his conduct after May 2018 cannot be the basis for

19   jurisdiction over him. ECF 748 at 19-20. This argument is irrelevant: plaintiffs' allegations

20   include numerous instances of conduct undertake by Huh prior to May 2018 that provide this

21   Court with specific jurisdiction over Huh. *See* CAC ¶ 349-50 (describing Huh's role on the

22   Executive committee in 2015 and 2016). In addition, the extent to which Huh's conduct caused

23   ongoing injuries is an issue of causation that is not properly resolved on a motion to dismiss and

24   does not impact whether plaintiffs have stated a claim. *See Tahoe Sierra Preservation Council,*

25   *Inc. v. Tahoe Regional Planning Agency*, 34 F.3d 753, 756 (9th Cir. 1994) ("a question of

26   causation is preeminently a question of fact").

27

28

1

**b.    The Court has Specific Jurisdiction Over Huh, Pritzker, and Valani Outside of California**

2

3    Huh, Pritzker, and Valani claim that they have not "had any contact with any state

4  outside of California" (except for Florida with respect to Huh) and personal jurisdiction is

5  lacking with respect to the claims brought by the twelve plaintiffs whose transferor forum is not

6  California. ECF 748 at 20. A defendant need not have lived or physically worked in a state in

7  order for that state's courts to exercise personal jurisdiction. As the Ninth Circuit has explained,

8  "purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state

9  is the 'purposeful direction' of a foreign act having effect in the forum state." *Schwarzenegger*,

10  374 F.3d at 803 (internal quotation and citation omitted).

11    Huh, Pritzker, and Valani took over control of the company for nearly a year, were

12  deeply involved in the marketing and sale of JUUL products, and those products are purposefully

13  sold throughout the United States, including in each state and the District of Columbia. CAC ¶¶

14  553-54. The sale of JUUL products throughout the United States was not the result of random

15  chance:

16
- The JUUL website has directly offered JUUL products for sale throughout
  the United States, and JUUL products are directly shipped to online
17    purchasers throughout the United States.[18]

18
- The age verification function on the JUUL website requires users to
  identify their state of residence. *See* CAC ¶ 378 ("From June 2015 through
19    the end of 2018, the age verification process on JLI's website typically
  prompted prospective purchasers to submit their name, address, and date
20    of birth.").

21
- The website includes a "store locator" features that allows users to find
22    JUUL retails throughout the country.[19] *See* CAC ¶ 323 (marketing emails
  sent to customers encouraged them to use the JUUL store locator).

23

24

25

26

27    [18] *See* https://www.juul.com/shop (last visited July 21, 2020).

28    [19] *See* https://www.juul.com/locator (last visited July 21, 2020).

- JLI directed its products to particular retail outlets throughout the country and provided point-of-sale advertising materials to retailers across the country. *See* CAC ¶ 321 (JLI directed its products to gas stations and convenience stores where it was easier for underage users to acquire JUUL); *id.* ¶ 322 (JLI employed video and product displays in stores).

- JUUL marketing is based on having a robust social media presence, which actively sends messages to millions of JUUL social media followers throughout the United States and was intended to indiscriminately spread JUUL's message to users throughout the country. One example is the Vaporized campaign, which was in full effect when Huh, Pritzker, and Valani formed the Executive Committee.

- Advertisements and promotional materials are emailed to individuals throughout the country. *See* CAC App'x A ¶¶ 7, 10, 18, 236, 269, 366, 505, 519, 554, 761, 808, 895, 956, 1153 (allegations by plaintiffs in Arizona, California, Connecticut, Kentucky, Mississippi, New York, North Carolina, Oregon, Pennsylvania, Virginia, and Washington stating that they received promotional emails from JUUL); and

- JLI also conducted in-person events and sent representatives into schools throughout the country. *See* CAC ¶ 326, 400-404.

Courts frequently find that similar facts support the exercise of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, for example, involved a Florida photo agency suing an Ohio website operated in California. 647 F.3d 1218, 1221-22 (9th Cir. 2011). The Ninth Circuit found that the defendant was subject to specific personal jurisdiction in California because "where, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Id.* at 1231 (citation omitted). Importantly, the defendant "could count on reaching consumers in all fifty states" and "cultivated [its] nationwide audience[] for commercial gain" via its website. *Id.* at 1230. The same is true here.

Other courts have likewise found that where a product is actively sold and marketed throughout the United States, courts in states in which sales occur have personal jurisdiction over the defendant. *See Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, No. 3:18-cv-03540-WHO, 2019 WL 1117533, at *5 (N.D. Cal. Mar. 11, 2019) (website that allowed users to search for "retail locations . . . where [] goods are available" supported a finding of personal jurisdiction in state where purchasers reside); *Zenga, Inc. v. K3 Jewelry*, No. 2:18-cv-01983-VAP-ASx, 2018

WL 6981843, at *3-4 (N.D. Cal. Oct. 30, 2018) (personal jurisdiction "[g]iven the volume of units sold in the forum state when Defendant knew the sales were going to California" and where defendant "sends periodic email 'blasts' to existing customers, including its California customers"); *Ecodiesel*, 295 F. Supp. 3d at 1029 (specific jurisdiction where "the whole point of the enterprise was to get Class Vehicles into the U.S. market and sell, through deception, defective vehicles to U.S. customers"); *Mysfyt, Inc. v. Lum*, No. 4:16-cv-03813-KAW, 2016 WL 6962954, at *3 (N.D. Cal. Nov. 29, 2016) ("Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents."); *Regal Art & Gifts, Inc. v. Fusion Prod., Ltd.*, No. 15-cv-04363-KAW, 2016 WL 454116, at *5 (N.D. Cal. Feb. 5, 2016) (four units sold to California residents from highly commercial website likely sufficient to satisfy express aiming requirement); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077–78 (C.D. Cal. 1999) (holding that the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); *id.* at 1078 ("[b]y advertising and offering its products for sale via the Internet, [the company] has placed its products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California citizens.").

The fact that JLI is technically the seller of JUUL products and owner of the JUUL website is not material. "If acts taken by a corporate officer subjects the officer to personal liability (i.e., the corporate officer authorized, directed or participated in tortious conduct), and those acts create contact with the forum state, such acts are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual." *Chunghwa Telecom Global, Inc. v. Medcom, LLC*, No. 5:13-cv-02104-HRL, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016) (citation omitted). The Management Defendants voluntarily assumed central roles in the management of JLI and were involved in the fraudulent and unfair conduct concerning the marketing and sale of JUUL products, which defendants market and sell throughout the United States in ways that are purposefully directed to each state. *E.g.* CAC ¶¶ 182-83 ("JLI and the Management Defendants directed and approved the content of the JUUL

website"). It would thus "be unfair to allow them to escape having to account in other States for consequences that arise predictably from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Mavrix*, 647 F.3d at 1231; *see also Mysfyt*, 2016 WL 6962954, at *3 (defendant only sold products through third-party website Amazon.com, and purchases of defendants' products via Amazon in California were sufficient to establish personal jurisdiction over the defendant in California); *Quicksilver, Inc. v. Quick Sports International B.V.*, No. SACV 03-1548 DOC (ANx), 2005 WL 8157305, at *5 (C.D. Cal. May 11, 2005) (where defendants were directly involved product marketing, it would be it would be "erroneous" to grant a motion to dismiss on jurisdiction grounds).

Personal jurisdiction also does not require (as Huh, Pritzker, and Valani suggest) that a defendant have "directed forum-specific advertising to each forum," ECF 748 at 20, and none of the cases defendants cite support that proposition. They cite *Yahoo! Inc. v. La Ligue contre la Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) for the notion that a defendant must "expressly aim" his conduct at the forum. ECF 748 at 18. In evaluating whether a defendant purposefully directed his or her conduct at the forum—the first prong of the specific jurisdiction analysis—courts may consider whether a defendant "expressly aimed" its conduct at the forum. *Schwarzenegger*, 374 F.3d at 803. The "purposeful direction" prong (including the "expressly aimed" factor) does *not* require that a defendant intentionally target its conduct towards a specific jurisdiction. As noted above, purposeful direction is present even when the only connection to a forum is the "effect in the forum state." *Id.* In *Mavrix*, for example, the Ninth Circuit found the defendant purposefully directed its conduct to California even though "the record [did] not show that [defendant] marketed its website in California local media." 647 F.3d at 1230. None of the other authority Huh, Pritzker, and Valani cite requires jurisdiction-specific advertising. In *Cybersell, Inc. v. Cybersell, Inc.*, the Ninth Circuit merely held that general internet advertising alone was insufficient to establish personal jurisdiction. 130 F.3d 414, 418 (9th Cir. 1997); *see also Levi Strauss*, 2019 WL 1117533, at *5 n.7 (distinguishing *Cybersell* because it involved a purely "passive" website). Likewise, in *Holland Am. Line Inc. v. Wartsila*

*N. Am., Inc.*, the Ninth Circuit found personal jurisdictions lacking with respect to claims in which a foreign defendant operated a passive website and sold no products within the United States. 485 F.3d 450, 460 (9th Cir. 2007)*; see also id*. (noting that the website "does not provide any direct means for purchasing parts or requesting services"). And in *Loomis v. Slendertone Distribution, Inc.*, the court found it had personal jurisdiction over the defendant because it sold products in California through its website. No. 3:19-cv-854-MMA (KSC), 2019 WL 5790136, at *12 (S.D. Cal. Nov. 6, 2019). The fact that the defendants had engaged in California-specific advertising was an additional factor supporting jurisdiction, but was not required. *Id*.

Other decisions Huh, Pritzker, and Valani cite also presented a substantially less compelling case for the exercise of personal jurisdiction than exists in this case. In some cases, the plaintiffs based their personal jurisdiction claims solely on the fact that the individual defendant was an officer of a company found in the proposed forum. *Stewart v. American Ass'n of Physician Specialists, Inc.*, No. 5:13-cv-01670-ODW(DTBx), 2014 WL 2011799, at *5 (C.D. Cal. May 15, 2014) (personal involvement was based exclusively on individual defendants' status as members of the Board of Directors); *Cisco Systems Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 WL 6682838, at *4 (N.D. Cal. Dec. 6, 2019) (allegations based on inferences that, due to his title, defendant "must have participated" and "must have been involved" with conduct aimed at California were insufficient). And in other cases, none of the allegedly unlawful conduct occurred in the forum state at all. *Briody Capital Management, LLC v. Qatar*, No. CV 18-2421-JFW(Ex), 2018 WL 9943551, at *6-8 (C.D. Cal. Aug. 22, 2018); *Flo & Eddie, Inc. v. Settler*, No. CV 08–142-ABC (MANx), 2008 WL 11336787, at *4 (C.D. Cal. Apr. 3, 2008).

Because defendants were key parts of the unlawful sales and marketing of JUUL products that occurred throughout the United States, the first two specific jurisdiction considerations—purposeful direction and the relationship of the claim to the forum—are satisfied. As to the third "reasonableness" consideration, the burden is on the defendants to "present a 'compelling case' establishing that the exercise of jurisdiction over them is unreasonable." *Chungwha*, 2016 WL 5815831, at *2 (quoting *Bancroft & Masters, Inc. v. August*

1  *Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)). None of Huh, Pritzker, and Valani contend that

2  subjecting them to personal jurisdiction in this MDL for claims originally brought in forums in

3  other jurisdictions would be unreasonable. Exercising pendent personal jurisdiction would be

4  particularly appropriate in this case because, as the JPML held when creating this MDL,

5  centralizing JUUL-related cases before a single judge would "serve the convenience of the

6  parties and witnesses and promote the just and efficient conduct of this litigation." *In re JUUL*

7  *Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367 (J.P.M.L.

8  2019).

9          **2.**      **In the Alternative, the Court May Exercise Pendent Personal**
                     **Jurisdiction Over Director Defendants for Plaintiffs' State Law Claims**

10        Even if the Court lacks specific personal jurisdiction over Huh, Pritzker, and Valani as to

11  any claims, the Court may still exercise pendent personal jurisdiction over those claims because

12  it has jurisdiction over defendants with respect to other claims in the litigation. As one court in

13  this Circuit recently explained:

14        [A] court may assert pendent personal jurisdiction over a defendant with respect
      to a claim for which there is no independent basis of personal jurisdiction so long

15        as it arises out of a common nucleus of operative facts with a claim in the same
      suit over which the court does have personal jurisdiction.

16

17  *In re Packaged Seafood Prods Antitrust Litig.*, 338 F. Supp. 3d 1118, 1172 (S.D. Cal. 2018)

18  (citations omitted). In *Packaged Seafood*, the defendants—like Huh, Pritzker, and Valani here—

19  argued that an MDL court lacked personal jurisdiction as to claims brought by plaintiffs outside

20  of that forum based on harm that occurred outside of the forum. *Id*. at 1169-70. The court held

21  that because it had personal jurisdiction under the federal antitrust statute, it could exercise

22  pendent personal jurisdiction over each of the state law claims. *Id*. at 1172-73. The *Packaged*

23  *Seafood* court concluded that "exercising pendent personal jurisdiction would best serve the

24  motivating policies delineated by the Ninth Circuit; these include 'judicial economy, avoidance

25  of piecemeal litigation, and overall convenience of the parties.'" *Id*. at 1773 (quoting *Action*

26  *Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). Pendent

27  personal jurisdiction may also exist when the claim over which the court does have general or

28  specific jurisdiction arises under state, as opposed to federal, law. *See Allen v. ConAgra Foods,*

*Inc.*, No. 3:13-cv-01279-WHO, 2018 WL 6460451, at *7-8 (N.D. Cal. Dec. 18, 2018) (exercising pendent personal jurisdiction over claims brought by nonresident named plaintiffs). This Court may exercise pendent personal jurisdiction over any claims for which it does not have general or specific jurisdiction over Huh, Pritzker, or Valani because it does have such jurisdiction with respect to plaintiffs' RICO claims and other state law claims.

First, under the federal RICO statute, the Court has jurisdiction over Huh, Pritzker, or Valani. "Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it." *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986) (quoting 18 U.S.C. § 1965(b)); *see also Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998) ("Where a defendant is properly served in the United States under RICO's nationwide service provision, that defendant's national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant."). Personal jurisdiction under section 1965(b) exists when "(1) the Court has personal jurisdiction over at least one of the participants in the action; (2) there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators; and (3) the facts show a single nationwide RICO conspiracy exists." *Alves v. Player's Edge, Inc.*, No. 05-1654 WQH (CAB), 2006 WL 8455520, at *8 (S.D. Cal. July 19, 2006). Each of these factors in met in this case. Pritzker and Valani do not contest that this Court has general jurisdiction over them, but Huh argues that general and specific jurisdiction are lacking as to him in California. ECF 748 at 19-20. And while Huh consents to general jurisdiction in Florida courts, Pritzker and Valani argue that courts outside of California cannot exercise general or specific jurisdiction over them. *Id.* at 17-18. While the Court should reject these arguments for the reasons set forth above, if it does not, then the first two prongs of the section 1965(b) analysis will have been met: the Court would have jurisdiction over Pritzker and Valani, [20] but no court would have jurisdiction over all the RICO defendants. Finally, as set forth in their opposition to defendants'

---

[20] In addition, JLI and Altria have not contested that any of the transferor courts would have personal jurisdiction over them for their RICO clams.

1    various motions to dismiss plaintiffs' RICO claims (ECF 757), plaintiffs have sufficiently

2    alleged a single nationwide RICO conspiracy. As a result, this Court has personal jurisdiction

3    over all of the RICO defendants under section 1965(b). And because the Court has jurisdiction

4    over Huh, Pritzker, and Valani with respect to plaintiffs' federal RICO claims, it may also

5    exercise pendent personal jurisdiction over all of plaintiffs' state law claims. *See Packaged*

6    *Seafood*, 338 F. Supp. 3d at 1172 ("Pendent personal jurisdiction is typically found where one or

7    more federal claims for which there is nationwide personal jurisdiction are combined in the same

8    suit with one or more state or federal claims for which there is not

9    nationwide personal jurisdiction.").

10       Second, Huh, Pritzker, and Valani all recognize that this Court has jurisdiction over

11   certain state law claims: for Pritzker and Valani, claims in any case filed in California; and for

12   Huh, claims in any case filed in Florida. So long as this Court has jurisdiction with respect to the

13   claims of some plaintiffs, it may exercise pendent personal jurisdiction with respect to related

14   claims by other plaintiffs. As the Ninth Circuit has explained, "[w]hen a defendant must appear

15   in a forum to defend against one claim, it is often reasonable to compel that defendant to answer

16   other claims in the same suit arising out of a common nucleus of operative facts." *Action*

17   *Embroidery*, 368 F.3d at 1181; *see also ConAgra*, 2018 WL 6460451, at *8 (finding that in a

18   class action, the court could exercise pendent jurisdiction over a California company with respect

19   to claims by non-California plaintiffs based on claims brought by California plaintiffs over

20   which the court had general jurisdiction); *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840,

21   860 (N.D. Cal. 2018) (because the court could exercise general personal jurisdiction over

22   defendants with respect to California plaintiffs' claims, it could exercise pendent personal

23   jurisdiction for claims brought by out-of-state plaintiffs); *Packaged Seafood*, 338 F. Supp. 3d at

24   1173 (the court exercised pendent personal jurisdiction over the claims of a group of indirect

25   purchasers even though a different plaintiff group—the direct purchasers—brought the federal

26   claims over which the court had personal jurisdiction).

27       The exercise of pendent personal jurisdiction is appropriate here. Plaintiffs' RICO and

28   state law claims against Huh, Pritzker, and Valani all arise out of the same nucleus of fact: their

1  roles in the marketing and sale of JUUL products. In addition, California—and this District in

2  particular—has a direct connection to the alleged conduct, JUUL is and has been based in this

3  District, Pritzker and Valani have continuously resided in this District, and Huh resided in this

4  District when his unlawful conduct took place. This Court's exercise of personal jurisdiction

5  over defendants would promote judicial economy and avoid piecemeal litigation throughout the

6  country—the same factors that led to the creation of this MDL in the first place. *See Cave*

7  *Consulting Group, Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 WL 1436044,

8  at *3 (N.D. Cal. Apr. 24, 2017) (exercising pendent jurisdiction for California claims against

9  non-California defendant because of "the factual overlap" between the claims and to "avoid

10 multiple lawsuits involving the same products and parties").

11 **IV.   <u>CONCLUSION</u>**

12     For the reasons set forth above, plaintiffs respectfully request that the Court deny the

13 Individual Defendants' motions to dismiss.

14

15 Dated: July 27, 2020                          Respectfully submitted,

16

17                                              By: /s/ *Sarah R. London*

18                                              Sarah R. London
                                                **LIEFF CABRASER HEIMANN &**
19                                              **BERNSTEIN**
                                                275 Battery Street, Fl. 29
20                                              San Francisco, CA 94111
                                                Telephone: (415) 956-1000
21                                              slondon@lchb.com

22

23                                              By: /s/ *Dena C. Sharp*

24                                              Dena C. Sharp
                                                **GIRARD SHARP LLP**
25                                              601 California St., Suite 1400
                                                San Francisco, CA 94108
26                                              Telephone: (415) 981-4800
                                                dsharp@girardsharp.com
27

28

1

2

                                        By: */s/ Dean Kawamoto*

3                                       Dean Kawamoto
                                        **KELLER ROHRBACK L.L.P.**
4                                       1201 Third Ave., Ste. 3200
                                        Seattle, WA 98101
5                                       Telephone: (206) 623-1900
                                        dkawamoto@kellerrohrback.com
6

7                                       By: */s/ Ellen Relkin*

8                                       Ellen Relkin
                                        **WEITZ & LUXENBERG**
9                                       700 Broadway
                                        New York, NY 10003
10                                      Telephone: (212) 558-5500
                                        erelkin@weitzlux.com
11

12                                      *Co-Lead Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 38 -

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on July 27, 2020, I electronically filed the foregoing document with

3   the Clerk of the Court using the CM/ECF system, which will automatically send notification of

4   the filing to all counsel of record.

5                                          By: /s/ *Sarah R. London*

6                                              Sarah R. London

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28