[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| | **PLAINTIFFS' BRIEF REGARDING** *LEXECON* **ISSUES** |
| This Document Relates to: ALL ACTIONS | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 3

     A.    *Lexecon* Does Not Prevent this Court from Presiding Over Direct-Filed Cases ................................................................................................ 3

     B.    CMO-3 Does Not Limit This Court's Authority to Try Direct-Filed Cases. ...................................................................................................... 5

     C.    Alternatively, the Court Should Permit Plaintiffs the Opportunity to Amend SFCs to Designate the Northern District of California as the Filing District. ............................................................................................. 7

     D.    The Remaining Defendants Can Raise Any Venue Objections Later In The Bellwether Process ...................................................................... 8

III.   CONCLUSION ................................................................................................... 9

## TABLE OF AUTHORITIES

**Page**

### CASES

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F. 3d 1048 (9th Cir. 2003) .......................................................................... 7

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
  322 F. Supp. 3d 911 (D. Minn. 2018) ................................................................ 4

*In re Depuy Orthopaedics, Inc.*,
  870 F.3d 345 (5th Cir. 2017) .............................................................................. 4

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  2012 WL 1580761 (E.D. La. May 4, 2012) ....................................................... 3

*In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*,
  76 F. Supp. 3d 294 (D. Mass. 2015) .................................................................. 6

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
  2020 WL 3971420 (E.D. Pa. July 13, 2020) ...................................................... 4

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012) ............................................................... 4

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
  396 F. Supp. 3d 1366 (J.P.M.L. 2019) ............................................................... 1

*In re Vioxx Prods. Liab. Litig.*,
  478 F. Supp. 2d 897 (E.D. La. 2007) ................................................................. 4

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ................................................................................... *passim*

*Zeiger v. Wellpet LLC*,
  2018 WL 3208160 (N.D. Cal. June 29, 2018) .................................................... 7

### STATUTES

28 U.S.C. § 1391 ...................................................................................... 1, 3, 6

28 U.S.C. § 1404 ...................................................................................... 3, 6, 9

28 U.S.C. § 1406 .............................................................................................. 9

28 U.S.C. § 1407 .............................................................................................. 2

### RULES

Fed. R. Civ. P. 15(a) ........................................................................................ 7

### OTHER AUTHORITIES

Duke Law Center Guidelines and Best Practices for Large and
  Mass-Tort MDLs (2d ed. 2018) ......................................................................... 6

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*,
    82 Tul L. Rev. 2323 (2008)...................................................................................... 2, 5

Fed. Jud. Ctr., *Manual for Complex Litigation* (4th Ed. 2004).................................................. 4, 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

To have a successful bellwether program, there must be a robust pool of representative cases to try. The bellwether pool can, and should, include all cases directly filed in this district, including those filed pursuant to Case Management Order No. 3 (CMO-3, ECF No. 309). Because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district, venue is appropriate as to all claims and all defendants over which the Court has personal jurisdiction. 28 U.S.C. § 1391(b)(2). In particular, jurisdiction and venue are unquestionably proper as to claims against Defendant Juul Labs, Inc. (JLI), which is a citizen of this district, and the Management Defendants, whose relevant activities all took place while employed in this district.[1]  Although the Court will, at a later date, need to decide whether cases can be tried here against other defendants,[2] for purposes of assembling the initial bellwether pool, it is sufficient that the Court affirm the commonsense notion that any case that is filed here can be tried against JLI and the Management Defendants.

JLI's position is that it enjoys a unilateral veto over the vast majority of cases in the bellwether pool—by its count, all but 35.[3] That argument contradicts JLI's representations to the JPML that this district was an appropriate venue for this litigation because "JLI is headquartered in [this] district" (still true, despite press reports of a move to Washington, D.C.) and "most of the key evidence and witnesses are located [here]." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019) . It is also irreconcilable with Defendants' previous position that the Court should randomly select 50 cases as the starting point for a bellwether discovery pool. *See* ECF No. 926. And it would defeat the point of the bellwether process, which is to focus discovery and trial on representative cases to advance resolution of the

---

[1] The Management Defendants are Adam Bowen, James Monsees, Hoyoung Huh, Nicholas Pritzker, and Riaz Valani.

[2] For example, the parties dispute whether the Court has personal jurisdiction over the Altria Defendants, who are named in this case under allegations of conspiracy, including predicate acts occurring in this district.

[3] *See* Ex. A (9/21/2020 Hearing Tr.) at 192:15-193:23.

1    litigation.  *See, e.g.*, Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul L.

2    Rev. 2323, 2337-38 (2008) (discussing goals of bellwether programs).

3         JLI misconstrues the Supreme Court's decision in *Lexecon, Inc. v. Milberg Weiss Bershad*

4    *Hynes & Lerach*, 523 U.S. 26 (1998). *Lexecon* does not preclude the Court from proceeding with

5    an effective bellwether process, including trial in this district of any case filed here against JLI

6    and the Management Defendants. *Lexecon* merely limits a transferee court's power to try cases

7    *transferred to it* for pretrial purposes pursuant to 28 U.S.C. § 1407 (Section 1407) because of the

8    express statutory commands of Section 1407. *See Lexecon*, 523 U.S. at 34-35. While *Lexecon*

9    precludes the Court from trying the 110 cases transferred to this district under Section 1407

10   absent *Lexecon* waiver, it does not preclude the Court from trying the 881 cases directly filed in

11   the Northern District of California where jurisdiction and venue are proper.

12        CMO-3 does not give JLI any venue objection it did not already have.  CMO-3 simply

13   provided that the parties' agreement to the Order "does not constitute a waiver under *Lexecon*."

14   ECF No. 309 at ¶ II.B. That language operates only to preserve existing "*Lexecon* rights," not to

15   create such rights where none exist. And although the CMO provided that direct-filed cases "will

16   be deemed related to and become a member case in the MDL for pretrial proceedings only," *id.*,

17   that language should not be read to preclude trial of cases here when jurisdiction and venue are

18   proper. The point of direct-file orders is to maximize efficiency while preserving parties' venue

19   and jurisdiction rights; here, JLI and the Management Defendants have no valid venue or

20   jurisdictional objections.

21        Regardless, nothing prevents the Court from revising its own order to provide for trial of

22   those specific cases because, even in the absence of the direct-filing order, JLI and the

23   Management Defendants could not have objected to venue or jurisdiction in any case that was

24   directly-filed here. In any event, even if JLI was correct that CMO-3 creates a "*Lexecon* problem"

25   for direct-filed cases that indicate they would have been filed in a different venue, the Court may

26   permit Plaintiffs to amend Short-Form Complaints (SFCs) to change the indicated district.

27        Giving JLI a veto over the bellwether pool for trials in this district will mean, for all

28   practical purposes, no meaningful bellwether pool. Given the Court's expertise in the legal and

factual matters at issue in this litigation and availability to try bellwether cases in early 2022, punting bellwether trials to foreign districts with backlogs due to the pandemic would waste judicial resources and impose substantial delay. To ensure the integrity of the bellwether selection process, avoid wasting resources on discovery in cases that will not be tried here, and facilitate efficient resolution of this MDL, the Court should determine now that any case filed in this district can be tried against, at minimum, JLI and the Management Defendants.  Alternatively, the Court should give Plaintiffs 14 days to amend their SFC to select this venue.

## II.   ARGUMENT

The Court has authority to try cases filed in this district, so long as venue is proper, against defendants over which the Court has personal jurisdiction. As to direct-filed cases against JLI and the Management Defendants, each prerequisite is met:  (1) the cases were all filed in this district; (2) venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because JLI resides here and many critical events occurred here; and (3) neither JLI nor the Management Defendants have any colorable objection to personal jurisdiction. So, the question is whether there is some *limitation* on the power the Court otherwise possesses. There is not.

### A.   *Lexecon* Does Not Prevent this Court from Presiding Over Direct-Filed Cases

In *Lexecon*, the Supreme Court disapproved of the then-common practice of "self-assignment" where MDL courts used 28 U.S.C. § 1404(a) to "assign" cases to themselves for trial, rather than remanding to the transferor courts once the "coordinated or consolidated pretrial proceedings" identified in Section 1407 were complete. The Supreme Court held that self-assignment was prohibited by Section 1407's express command that actions transferred pursuant to that section "shall be remanded by the panel at or before the conclusion of such pretrial proceedings." *Id*. at 34-35.

*Lexecon* merely recognizes a statutory limitation on the Court's authority over cases transferred to it under Section 1407. It has no bearing on the Court's power to manage cases direct-filed in this district and not subject to a JPML transfer order. *See, e.g., In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., 2012 WL 1580761, at *1 n.2 (E.D. La. May 4, 2012) ("Because these are direct filings rather than tag-alongs transferred to this Court by the Judicial

1   Panel, it does not appear that the Supreme Court's ruling in [*Lexecon*] is implicated by this

2   Court's direct transfer of these cases."); Fed. Jud. Ctr., *Manual for Complex Litigation* § 22.93 at

3   463 (4th Ed. 2004) ("MCL") ("Nothing in [*Lexecon*], however, precludes the transferee judge

4   from presiding over cases that litigants filed in the transferee district originally."); *see also In re*

5   *Generic Pharmaceuticals Pricing Antitrust Litig.*, 2020 WL 3971420, at \*1-2 n.5 (E.D. Pa. July

6   13, 2020) ("Following *Lexecon*, transferee courts are limited to conducting bellwether trials … in

7   those actions over which the transferee court has jurisdiction outside the multidistrict context,

8   either because the action was filed directly with the transferee court or because the parties waived

9   their right to remand to the transferor court'") (quoting *In re Gerber Probiotic Prods. Mktg. &*

10  *Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 n.4 (J.P.M.L. 2012)); *In re Depuy Orthopaedics,*

11  *Inc.*, 870 F.3d 345, 348 (5th Cir. 2017) ("An MDL court can conduct pretrial proceedings but

12  cannot try a case that it would not be able to try without its MDL status.").

13       Outside of the context of a Section 1407 transfer and the statutory restrictions placed on a

14  transferee court, the concept of a party having "*Lexecon* rights" has been commonly understood

15  to mean a plaintiff's right to the forum of their choosing and a defendant's right to not have their

16  case tried in a court where jurisdiction and venue are not proper.   *See, e.g.*, *In re Depuy*

17  *Orthopaedics, Inc.*, 870 F.3d at 349 ("'The special master noted again that 'Defendants have

18  agreed they will not raise a venue objection (i.e., a *Lexecon* objection) to any cases in the MDL

19  being tried in the Northern District of Texas.'"); *In re Bair Hugger Forced Air Warming Devices*

20  *Prods. Liab. Litig.*, 322 F. Supp. 3d 911, 912 (D. Minn. 2018) (defining "*Lexecon* waivers" as

21  waivers of improper venue objections); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903

22  (E.D. La. 2007) (noting that defendant "stipulated and agreed that it will not assert any objection

23  of improper venue pursuant to Fed. R. Civ. P. 12(b) as to any VIOXX®-related cases filed

24  directly in the Eastern District of Louisiana that emanate from districts outside the Eastern

25

26

27

28

District of Louisiana").[4]  Again, that does not limit the Court's ability to try cases against defendants that it would be able to try even without its MDL status.

## B.    CMO-3 Does Not Limit This Court's Authority to Try Direct-Filed Cases.

In CMO-3, the Court permitted Plaintiffs to file cases directly in the MDL, provided that each plaintiff "identify the federal district court in which the Plaintiff would have filed his or her case in the absence of direct filing." ECF No. 309, ¶ II.C. The Court explained that "[e]ach action filed directly in this District will be deemed related to and become a member case in the MDL for pretrial proceedings only" and that "[a]t the completion of all pretrial proceedings applicable to such cases, and subject to any agreement that may be reached concerning a waiver of the requirements for transfer pursuant to *Lexecon*, this Court will transfer such cases to a federal district court of proper venue as defined by 28 U.S.C. § 1391." *Id.*, ¶¶ II.B & C.

The purpose of CMO-3, as with direct-filing orders generally, was to preserve the parties' objections to venue and personal jurisdiction without forcing plaintiffs to go through the formality of filing in home districts and then seeking transfer from the JPML, or forcing defendants to raise venue objections to preserve them.[5] So, CMO-3 preserves a plaintiffs' choice of forum, as well as defendants' venue and personal jurisdiction objections. *See id.*, ¶ II.C ("This designation shall not, standing alone, constitute a determination by this Court that jurisdiction or venue is proper in the designated forum."). In other words, CMO-3 does not permit a case to be tried in the Northern District of California where standard venue and personal jurisdiction rules would preclude it (for example, against a defendant with meritorious venue objection). But nothing in CMO-3 requires the Court to transfer for trial a case where (1) the Plaintiff agrees to waive her choice of forum

---

[4] Duke Law Center Guidelines and Best Practices for Large and Mass-Tort MDLs (2d ed. 2018), at 21-22 (". . . *Lexecon* waivers require parties to divest themselves of fundamental protections of personal jurisdiction and venue, . . ."); Fallon, supra at 2352-53, 2358("For cases filed directly into the MDL by nonresident plaintiffs, the defendant, . . . must waive its sustainable venue and venue-related objections.").

[5] CMO-3 has other  purposes as well, such as enabling simplified electronic service of complaints, so that plaintiffs avoid costs and corporate officers do not get inundated with service as well as sparing defendant the burden of answering until further notice.

1  (which Plaintiffs selected as bellwethers will most certainly do), and (2) defendants (JLI and the

2  Management Defendants) have no colorable venue or personal jurisdiction objections.

3       Nor does the reference to "a waiver of the requirements for transfer pursuant to *Lexecon*"

4  change anything. By that, CMO-3 meant only that any party possessing so-called "*Lexecon*

5  rights" did not waive them (or any other rights) merely by agreeing to direct-filing. Nothing in the

6  Order purports to give a defendant the right to defeat jurisdiction and venue in this Court (*i.e.*,

7  "*Lexecon* rights") where no such right previously existed. Instead, CMO-3, as is common,

8  permitted streamlined filing while deferring resolution of any venue issues. *See, e.g.*, Duke Law

9  Center Guidelines and Best Practices for Large and Mass-Tort MDLs, at 22 (explaining the

10 common practice of permitting direct filing and then resolving venue issues only later in the

11 bellwether process).

12      Defendants' argument appears to be that by requiring direct-file Plaintiffs to "identify the

13 federal district court in which the Plaintiff would have filed his or her case in the absence of

14 direct filing," *id.*, ¶ II.B, CMO-3 requires that the case be treated in every respect as if it were

15 actually filed in the foreign district and then transferred under Section 1407. It does not. That

16 language operates only to protect the *Plaintiff's* choice of forum for the purpose of the 28 U.S.C.

17 § 1404 transfer and 28 U.S.C. § 1391 venue analyses, not to give defendants venue objections

18 they otherwise would not have. *See In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab.*

19 *Litig.*, 76 F. Supp. 3d 294, 304 (D. Mass. 2015) (treating direct-filed complaints as filed in the

20 MDL district because the MDL district was a permissible forum). Or, to put it another way,

21 CMO-3 permits the Court to "transfer such cases to a federal district court of proper venue." ECF

22 No. 309, ¶ II.C. As to at least JLI and the Management Defendants, *this* district *is* a "proper

23 venue" for direct-filed cases and so the Court can "transfer" the case to itself. This is the rare case

24 where, at least as to those Defendants, the MDL transferor court is sitting in the same district

25 where the primary defendants are headquartered and many of the events at issue occurred so there

26 are no sustainable venue or jurisdiction objections to consider.

27      JLI's reliance on the terms of CMO-3 elevates form over substance. To the extent that the

28 Court understands the language of CMO-3 to preclude bellwether trials in direct-file cases, it

1  should find good cause to modify the order to clarify otherwise. There is no possible prejudice to

2  JLI from modification of the order—again, neither JLI nor the Management Defendants had any

3  "right" to a trial in any other district prior to the entry of CMO-3 and certainly no such "right"

4  was created by CMO-3. And Defendants retain the many benefits they received from the

5  streamlined filing procedure, including, for example, removing the obligation to immediately

6  answer each SFC. *See id.*, ¶ II.I.

7  **C.**     **Alternatively, the Court Should Permit Plaintiffs the Opportunity to Amend**
        **SFCs to Designate the Northern District of California as the Filing District.**

8

9      If the Court determines that CMO-3 precludes it from trying direct-filed cases that

10  designate another district as the place of filing, the Court should amend the scheduling order to

11  provide 14 days for Plaintiffs to amend their SFCs to correct their choice-of-forum and, if they

12  choose, designate this district. This measure would expand the bellwether pool and provide more

13  options for identifying representative cases for this Court to try—the whole point of this exercise.

14      Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

15  "Courts generally weigh the following factors to determine whether leave should be granted: '(1)

16  bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)

17  whether plaintiff has previously amended his complaint.'" *Zeiger v. Wellpet LLC*, 2018 WL

18  3208160, at *2 (N.D. Cal. June 29, 2018) (Orrick, J.) (citation omitted). "Absent prejudice, or a

19  strong showing on any of the remaining [] factors, there exists a presumption under Rule 15(a) in

20  favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052

21  (9th Cir. 2003).

22      Here, all of the factors weigh in favor of granting leave to amend. All SFCs have been

23  filed in the past ten months, and Defendants have not yet answered the complaints. The order can

24  provide that no new legal or factual theories can be added.  Further this leave will not result in

25  any changes to any schedules or required discovery. *See Zeiger*, 2018 WL 3208160, at * 2-3.

26  Defendants cannot credibly claim prejudice or futility from these amendments, as both venue and

27  jurisdiction are proper here. This is precisely the circumstance where "justice so requires"—

28  permitting amendments will facilitate this Court's objective of having a meaningful cross-section

1   of the cases pending in the MDL for inclusion into the initial bellwether pool. And, judicial

2   economy and efficiency would be severely frustrated if cases filed in this district, with proper

3   jurisdiction and venue in this district, and in which the plaintiff wants to go to trial in this district,

4   nevertheless cannot be tried here. Remanding bellwether cases to district courts unfamiliar with

5   the record and bogged down in pandemic backlogs will cause substantial delay and postpone

6   resolution indefinitely.

7        **D.        The Remaining Defendants Can Raise Any Venue Objections Later In The**
8                    **Bellwether Process**

9        Finally, while resolution of *Lexecon* issues with respect to JLI and the Management

10  Defendants is necessary to even begin the process of assembling a bellwether pool, at this point

11  the Court need not make any determinations as to the propriety of trials in this district against any

12  other defendants. While Plaintiffs believe the claims against other defendants may also tried in

13  this district, the need to even conduct this analysis will be dictated by the Defendants named in

14  the 24 cases selected for the Bellwether Discovery Pool. Although other defendants may raise

15  objections to bellwether trials in this district, JLI and the Management Defendants have no valid

16  venue or personal jurisdiction objections. Thus, the Court could still accomplish the purpose of a

17  bellwether trial in the absence of additional defendants and decide thereafter the best way to try

18  later cases involving other defendants.

19       Apart from JLI and the Management Defendants, there are 76 additional Defendants in

20  this litigation, of which 19 are named in the Plaintiffs' Consolidated Master Complaint (Personal

21  Injury) and SFC.[6] Many of the non- SFC defendants were named in cases that were conditionally

22  transferred and are not implicated in this motion since those *Lexecon* rights are preserved.  Any of

23  the  additional Defendants may make venue objections as part of the pretrial proceedings in the

24  bellwether process. This makes sense because the remaining Defendants have deferred additional

25  Rule 12(b) motions for the briefing schedule set forth in the Order Regarding Bellwether

26  Selection and Case/Trial Schedule (ECF. Nos. 938) where they can fully raise their personal

27  _____
    [6] *See* CMCS, Ex. A (ECF No. 1055-1).

28

jurisdiction and venue defenses after discovery has transpired. Those motions will be fully briefed before the date for the parties' submissions to the Court on choice of bellwether cases on April 30, 2021.  *See* ECF No. 938.

In the event a venue objection by an additional defendant is sustained, the Court's options could include: (1) severing the case against defendants prevailing on personal jurisdiction and or venue and pursuing the bellwether trial against the principal defendants JLI and the Management Defendants; (2) seeking an inter-or intra-circuit assignment and presiding over the trial in the "transferor" court; or (3) after remand, requesting that the "transferor" court could return the action to this Court under 28 U.S.C. §§ 1404 or 1406. *See* MCL, § 20.132. The proper process can best be evaluated on a case-by-case basis once the final bellwether determinations have been made.

## III.  <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that the Court enter an Order finding that because jurisdiction and venue against JLI and the Management Defendants are proper in this district, the Court has the authority to preside over the trial of any case against them that was direct-filed in this district.  Alternatively, Plaintiffs request that the Court permit any Plaintiff who filed a SFC to amend their choice of forum within 14 days.

1

2   Dated:   October 22, 2020                     Respectfully submitted,

3

4                                                 By: /s/ Sarah R. London

5                                                 Sarah R. London
                                                  **LIEFF CABRASER HEIMANN &**
6                                                 **BERNSTEIN**
                                                  275 Battery Street, Fl. 29
7                                                 San Francisco, CA 94111
                                                  Telephone: (415) 956-1000
8                                                 slondon@lchb.com

9

10                                                By: /s/ Dena C. Sharp

11                                                Dena C. Sharp
                                                  **GIRARD SHARP LLP**
12                                                601 California St., Suite 1400
                                                  San Francisco, CA 94108
13                                                Telephone: (415) 981-4800
                                                  dsharp@girardsharp.com
14

15

16                                                By: /s/ Dean Kawamoto

17                                                Dean Kawamoto
                                                  **KELLER ROHRBACK L.L.P.**
18                                                1201 Third Ave., Ste. 3200
                                                  Seattle, WA 98101
19                                                Telephone: (206) 623-1900
                                                  dkawamoto@kellerrohrback.com
20

21

22                                                By: /s/ Ellen Relkin

23                                                Ellen Relkin
                                                  **WEITZ & LUXENBERG**
24                                                700 Broadway
                                                  New York, NY 10003
25                                                Telephone: (212) 558-5500
                                                  erelkin@weitzlux.com
26

27                                                *Co-Lead Counsel for Plaintiffs*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Sarah R. London*
Sarah R. London

# EXHIBIT A

Pages 1 - 204

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable William H. Orrick, Judge

IN RE: JUUL LABS, INC.,              )
MARKETING, SALES PRACTICES,          )   No. 19-MD-02913 WHO
AND PRODUCTS LIABILITY               )
LITIGATION.                          )
_____      )

                            San Francisco, California
                            Monday, September 21, 2020


**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                    LIEFF, CABRASER, HEIMANN & BERNSTEIN
                    275 Battery Street, 29th Floor
                    San Francisco, California 94111-3339
            BY:  **SARAH R. LONDON, ATTORNEY AT LAW**

                    LIEFF, CABRASER, HEIMANN & BERNSTEIN
                    222 Second Avenue South, Suite 1640
                    Nashville, Tennessee 37201
            BY:  **ANDREW KAUFMAN, ATTORNEY AT LAW**

                    GIRARD SHARP
                    601 California Street, Suite 1400
                    San Francisco, California 94108
            BY:  **DENA C. SHARP, ATTORNEY AT LAW**
                 **SCOTT GRZENCYK, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



Reported Remotely By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
                       CSR No. 11024, Official U.S. Reporter

1   **APPEARANCES VIA ZOOM:**   (CONTINUED)

2   For Plaintiffs:

                        KELLER ROHRBACK LLP
3                       1201 Third Avenue, Suite 3200
                        Seattle, Washington 98101
4              BY:  **DEAN N. KAWAMOTO, ATTORNEY AT LAW**
               BY:  **FELICIA J. CRAICK, ATTORNEY AT LAW**
5
                        WEITZ & LUXENBERG PC
6                       700 Broadway
                        New York, New York 10003
7              BY:  **ELLEN RELKIN, ATTORNEY AT LAW**

8                       PENN & SEABORN, LLC
                        1971 Berry Chase Place
9                       Montgomery, Alabama 36117
               BY:  **CHARLES D. HUDSON, ATTORNEY AT LAW**
10
                        TYCKO & ZAVAREEI LLP
11                      1970 Broadway, Suite 1070
                        Oakland, California 94612
12             BY:  **SABITA J. SONEJI, ATTORNEY AT LAW**

13                      WAGSTAFF & CARTMELL LLP
                        4740 Grand Avenue, Suite 300
14                      Kansas City, Missouri 64112
               BY:  **ADAM S. DAVIS, ATTORNEY AT LAW**
15

16  For Defendant Juul Labs, Inc.:
                        KIRKLAND & ELLIS LLP
17                      300 North LaSalle Drive
                        Chicago, Illinois 60654
18             BY:  **RENEE D. SMITH, ATTORNEY AT LAW**

19                      KIRKLAND & ELLIS LLP
                        1301 Pennsylvania Avenue N.W.
20                      Washington, D.C. 20004
               BY:  **PETER A. FARRELL, ATTORNEY AT LAW**
21
                        MUNGER TOLLES & OLSON
22                      350 South Grand Avenue, 50th Floor
                        Los Angeles, California 90071
23             BY:  **GREGORY P. STONE, ATTORNEY AT LAW**
                    **BETHANY W. KRISTOVICH, ATTORNEY AT LAW**
24                  **DANIEL B. LEVIN, ATTORNEY AT LAW**

25          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1   **APPEARANCES VIA ZOOM:**   (CONTINUED)

2   For Defendants Altria Group, Inc. and Philip Morris USA Inc.:
                        ARNOLD & PORTER KAYE SCHOLER LLP
3                       601 Massachusetts Avenue N.W.
                        Washington, D.C. 20001
4                 BY:   **JOHN C. MASSARO, ATTORNEY AT LAW**

5   For Defendants Hoyoung Huh, Nicholas Pritzker and Riaz Valani:
                        KELLOGG HANSEN TODD FIGEL & FREDERICK
6                       1615 M Street N.W., Suite 400
                        Washington, D.C. 20036
7                 BY:   **MICHAEL J. GUZMAN, ATTORNEY AT LAW**

8   For Defendants Mother Murphy's Laboratories, Inc., and
    Alternative Ingredients, Inc.:
9                       TYSON & MENDES, LLP
                        523 Fourth Street, Suite 100
10                      San Rafael, California 94901
                  BY:   **MITCHELL MALACHOWSKI, ATTORNEY AT LAW**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   the defendants, some of the defendants, JLI and officers and

2   managers.

3       And then what we would propose is, if the other

4   defendants -- say you rule in favor of some of them or they

5   don't agree to waive *Lexicon* or any combination thereof, that

6   if we have to go to trial just against JLI and the officers and

7   managers, that you stay the case as to the other defendants;

8   it's not a pass for them.  And then that can later get remanded

9   and we'll have a separate trial as against them.

10      It's one of the unfortunate consequences of some of the

11  personal jurisdiction decisions in recent years.

12          **THE COURT:**  Okay.

13      All right.  Ms. Smith?

14          **MS. SMITH:**  Yes, Your Honor.

15      First of all, I'm going to respond briefly to the legal

16  point that Ms. Relkin raised and then a procedural point that

17  we may end up somewhat in the same place.

18      First, to be crystal clear, we have a direct filing order

19  in this case.  The direct filing order is CMO Number 3.  It was

20  ECF Number 309.  It may be different now because we've had

21  different iterations of it.

22      We negotiated it with the express condition that there is

23  an agreement by plaintiffs and defendants that this order does

24  not constitute a waiver under *Lexicon* by any party.

25      The contention that a case directly filed in this Court --

1   by the way, that was not obviously filed by defendants --

2   resulted in a waiver of defendants' *Lexicon* rights is just

3   incorrect as a matter of law.  So just to be clear, there are

4   *Lexicon* rights here that are Supreme Court solid rights that,

5   at this stage, no defendant nor any plaintiff, as far as I

6   know, has agreed to waive.  Okay.  So that's one.

7        But I think in terms of the your Court's primary question

8   is what do we do about it.  And there's a lot of math and it

9   changes every day; so these are all estimates.

10       By our estimate, there are about 913 personal injury cases

11  in this MDL right now.

12       Of those, 875 have *Lexicon* issues, 95 percent, leaving us

13  with approximately 37 cases where the plaintiffs at least say

14  they would have filed in the Northern District of California.

15       Of those 37, two, I believe, have a subject matter

16  jurisdiction problem where it is a California plaintiff versus

17  multiple California defendants; and the remainder name one or

18  more defendants for whom there are serious personal

19  jurisdiction questions.

20       So we are in a bit of a civil procedure pickle here.  It's

21  very interesting.  I've learned a lot about *Lexicon*, and I've

22  learned a lot about personal jurisdiction.  And they're two

23  different things apparently, but they do run together.

24       So I think we've got three things going on.  We all agree

25  with plaintiffs we want the bellwether pool to be