UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-02913-WHO<br><br>Hon. William H. Orrick |
| *This Document Relates to*:<br><br>Kristian Howard v. JUUL Labs, Inc., et al.<br><br>Case No. 3:20-cv-03628 | |

**PLAINTIFF KRISTIAN HOWARD'S RESPONSE IN OPPOSITION
TO DEFENDANT JLI'S MOTION TO DISMISS WITHOUT PREJUDICE
FOR FAILURE TO SUBMIT DISCOVERY REQUIRED BY
CASE MANAGEMENT ORDER NO. 8**

Plaintiff Kristian Howard, by and through undersigned counsel, states as follows in response and opposition to Defendant JUUL Labs, Inc.'s ("JLI") Motion to Dismiss Without Prejudice for Failure to Submit Discovery Required by Case Management Order No. 8.

**I.      BACKGROUND**

Plaintiff Kristian Howard is a 21-year-old living in Lucedale, Mississippi. She started using JUUL in 2017 at just 18 years old. As a result of Defendants' conduct, Plaintiff suffers from a severe nicotine addiction. Ms. Howard's case was directly filed in this district on June 1, 2020 and entered on the docket of MDL 2913 on June 2, 2020 (Dkt. 1 and 3). Pursuant to Case Management Order ("CMO") No. 8, Ms. Howard's Plaintiff Fact Sheet ("PFS") was due 60 days after the Complaint was entered on the docket (Dkt. 406). On September 8. 2020, Defendant JLI served Plaintiff with a Notice of Overdue Discovery and subsequently filed its motion to dismiss on October 9, 2020 (Dkt. 1040). Over the last several months during an unprecedented global pandemic, counsel for Plaintiff has diligently but unsuccessfully attempted to communicate with Ms. Howard to finalize and submit her PFS. For the reasons set forth below, the Court should deny Defendant JLI's motion to dismiss and grant Plaintiff

additional time to finalize and produce her PFS.

**II.     ARGUMENT**

Dismissal is a harsh penalty that should be imposed only in *extreme* circumstances, which are not present in this case. As set forth below, each factor that the Court must consider to determine if dismissal is appropriate weighs in favor of denying JLI's Motion to Dismiss. Plaintiff nor Plaintiff's counsel have acted in bad faith, and Defendants have not been prejudiced by Plaintiff's minor delay in submitting her PFS. Rather, Plaintiff Kristian Howard – like hundreds of other plaintiffs in this litigation – acquired a severe addiction to nicotine at a very young age through use of JUUL e-cigarette products (Pl. Compl., Dkt. 1 at 5). As a direct result of Defendants' tortious conduct, Plaintiff has suffered mental and physical changes to her brain that impact how she thinks, acts, and functions. *Id*. at 6. Now, in seeking justice for her injuries, she has been asked to provide intimate details through a PFS about matters teenagers and young adults normally keep private. For any college-age student, this would be challenging; for one with an extreme nicotine addiction, this can be a difficult undertaking.

Furthermore, the PFS process is taking place during an unprecedented global pandemic which has strained the capabilities of postage and communication systems normally relied upon to complete and finalize a PFS. Plaintiff's counsel understands that completion of a PFS is a necessary and important part of maintaining a claim in any MDL. However, the unique circumstances surrounding Ms. Howard's minor delay justify allowing her additional time to comply with CMO 8 so that her case can be decided on the merits rather than on procedural grounds. Nor would Defendants be prejudiced if the Court grants an extension for plaintiff to submit a PFS, particularly in light of the Court's recent order regarding the supplemental PFS questions now required to be submitted by all plaintiffs with claims presently pending before the Court.

**A.     The factors governing whether dismissal is appropriate weigh heavily in favor of denying JLI's motion, and support granting Ms. Howard**

**additional time to comply with CMO 8.**

When deciding whether to dismiss a case for failure to comply with a court order, courts must weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987)). "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Id*. The dismissal of a case, "the most severe of sanctions that the Court can impose…" should only be "…reserved for 'flagrant cases' of bad faith and 'callous disregard' for the Court's authority." *Green v. Rubenstien*, 2009 U.S. Dist. LEXIS 74036, *4 (S.D. W. Va. Aug. 19, 2009) (*citing Stevens v. Federated Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 51001, 2006 WL 2079503 (N.D.W. Va. July 25, 2006) (internal citations omitted)).

The application and interplay of these five factors is well illustrated in *Al Bahr Shriners v. United States Bureau of Land Mgmt.*, 2016 WL 11265905 (S.D. Cal. Dec. 15, 2016). There the District Court for the Southern District of California denied a defendant's motion to dismiss for failure to serve a PFS and granted the plaintiffs an extension as the appropriate sanction for delay, even when the PFS w*as over six months late*. *Id*. at *1–4. The *Al Bahr* court observed that dismissal is not appropriate unless "*at least four factors* support dismissal or where at least three factors '*strongly*' support dismissal." *Id*. (emphasis added). Under the first factor, the court found that the public's interest in expeditious resolution weighed in favor of dismissal given the six months' delay. *Id*. Under the second factor, the court stated "the Court does not believe that a six month delay in providing five fact sheets is the type of excessive delay that warrants dismissal especially when there are over 100 Plaintiffs at issue." *Id*. Under the third factor, the court found that, after sixth months, "loss of evidence and loss of memory by a witness" was a "real concern" and this risk of prejudice weighed in favor of dismissal. *Id*. Under the fourth factor, the public policy favoring disposition of cases on their merits, the court

explained that although it is the "responsibility of a moving party to move his or her case toward disposition on the merits, the Court does not find the Plaintiffs' actions to have so unreasonably delayed progress in this case that it would require going against public policy." *Id*. Under the fifth the court easily found that the less drastic sanction of an extension was still available, and a dismissal was not necessary. *Id*. Ultimately, the court found that only two factors weighed in favor of dismissal (the public's interest in expeditious resolution of litigation and risk of prejudice to defendant), denied the motion to dismiss, and granted the plaintiffs a two-week extension to turn in their PFS. *Id*.; *but see In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, 2007 WL 987813, at *1–2 (N.D. Cal. Mar. 30, 2007) (dismissing claims with prejudice where plaintiffs failed to serve PFS' even after being granted a 21-day extension by court order); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 966 F.3d 351, 359–60 (5th Cir. 2020) (dismissing claims where plaintiff's PFS was five months late and plaintiff had already received multiple extensions).

Here, the denial of JLI's motion is supported by <u>all five</u> factors and therefore tips the scales against the dismissal of Ms. Howard's case.

First, dismissal of this case would do nothing to promote or protect the public's interest in the resolution of this litigation because it is but only one *over one thousand* cases contained within the MDL. Dismissing this case now would not resolve any questions of law or fact at issue in the global litigation, nor facilitate the parties' efforts to further narrow those issues. The litigation will go on even if the Court dismisses this specific case, which it should not. In *Al Bahr Shriners*, the court found that this factor weighed in favor of dismissal when the plaintiffs had delayed six months to serve their PFS. By contrast, less than three months (during an unprecedented global pandemic) have passed since Ms. Howard's PFS was originally due on August 1, 2020. Unlike *Al Bahr Shriners*, this case is in the nascent stages of discovery and the first bellwether case is scheduled to begin on February 22, 2022, and even if selected for trial, the first trial date is *487 days* from today. The chance that Plaintiff Kristian Howard's individual case will be the first trial is statistically slim. The resolution of this litigation will

not be dependent upon one plaintiff's delay in providing a PFS. Thus, the public interest has not been offended.

Next, under the second factor, the court's need to manage its docket, a delay in proceedings is only "so egregious as to favor dismissal" where it "bring[s] cases to a complete halt or allow[s] plaintiffs to control the pace of the docket rather than the court." *Al Bahr Shriners,* 2016 WL 11265905, at *1–4 (citing *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Here, the Court certainly has the right and authority to manage its docket as it deems necessary, however, the slight delay in Ms. Howard's PFS has in no way frustrated the pace of this litigation, disrupted the Court's management of its docket, or allowed Plaintiff to seize control of the pace of the proceedings. Rather, she has only lapsed in fulfilling her obligations as a plaintiff for a short period and is in need of an extension. *In Al Bahr Shriners*, the court found that even a 6-month delay was not the "type of excessive delay that warrants dismissal [under this factor] especially when there are over 100 Plaintiffs at issue[.]" 2016 WL 11265905, at *1–4. In comparison, Ms. Howard has only been delayed less than half of that time, and this MDL involves over a thousand plaintiffs. This factor weighs in favor of denial of JLI's motion.

For the third factor, a defendant only suffers prejudice "if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case. . . . Delay alone has been held to be insufficient prejudice." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Here, no prejudice is suffered by JLI, and in its motion JLI fails to identify any iota of prejudice it has suffered as a result of Ms. Howard's delay in providing her PFS because, simply, there is none. This factor weighs in favor of denial of JLI's motion.

The fourth factor, the "public policy favoring disposition of cases on their merits" strongly militates against dismissal and supports the denial of JLI's motion. This case has not proceeded beyond early discovery and the specific merits of this case have yet to be fully considered or tested. The Court has much less drastic options in its quiver, such as a reasonable

final extension, that would preserve the functionality of this MDL without depriving Ms. Howard of the opportunity of having her case decided on the merits. In other similar cases, such as *In re Gen. Motors LLC Ignition Switch Litig.,* 14-MD-2543 (JMF) (S.D.N.Y. Aug 3, 2017), *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327 (S.D.W. VA Feb. 27, 2012)), and approximately 250 cases in MDL No. 2325 (a vaginal mesh MDL), including In re Am. Med. Sys., Inc, MDL 2325 (S.D.W. Va. Feb. 7, 2019), courts opted for extensions rather than dismissals where the availability of alternatives was the sole or primary factor weighing against dismissals. These holdings represent a dovetailing of factors four and five—the general preference that cases should be reviewed on their merits (and not easily dismissed on procedural grounds) and the availability of less drastic options to court in resolving delays. *See Franklin v. Jimenez*, 586 F. App'x 435, 435–36 (9th Cir. 2014) ("all the Federal Rules of Civil Procedure [are] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.")(internal quotation marks omitted). These principles are especially important when there is a disparity between the legal sophistication of the parties, such as exists between Ms. Howard and JLI. *See In re Ethicon, Inc.*, 2016 WL 1316637, at *2–3 (denying the defendant's motion to dismiss for failure to serve PFS and allowing the plaintiff additional time to serve a PFS subject to dismissal because, although the court found some bad faith, some risk of prejudice, and some adverse impact on the management of the MDL, granting dismissal would "offend the court's duty . . . to consider the effectiveness of lessor sanctions.")

Finally, the fifth factor, the availability of less drastic sanctions, also supports denying JLI's motion. "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *See U.S. v. National Medical Enterprises, Inc.,* 792 F.2d 906, 912 (9th Cir 1986). Furthermore, "for the prior implementation of a lesser sanction to be a persuasive factor, it must have occurred after the plaintiff's violation of a court order." *See In re PPA Prod. Liab. Litig.,* 460 F.3d 1217 (9th Cir. 2006)(citing to *Yourish, 191 F.3d 983, 992 (9th Cir.1999)).* Here, Ms.

Howard has never before been sanctioned or found in violation of the Court's orders or CMOs. This is the first time in which her non-compliance with PFS obligations has been brought before the Court and thus JLI's request for the "ultimate" sanction of dismissal is not only premature but unwarranted by the circumstances of Ms. Howard's minor delay.

All five factors weigh against the dismissal of Ms. Howard's case, and because there is no evidence of bad faith or callous disregard of the Court's authority, JLI's motion should be denied.

### B. The Court may grant an extension of time to Ms. Howard during which she can finalize her Plaintiff Fact Sheet is warranted pursuant to Federal Rule of Civil Procedure Rule 6(b).

Requests for an extension of time to comply with a scheduling or case management order after the deadline has passed are governed by Fed. R. Civ. P. 6(b). *See e.g., Austin v. Walker*, 800 F. App'x 563, 564 (9th Cir. 2020) (applying 6(b) to request for extension to file summary judgment motion after deadline in scheduling order passed); *Directv, Inc. v. Carrillo*, 227 F. App'x 588, 590 (9th Cir. 2007) (same); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018) (applying 6(b) to request for extension of period for class member to opt out of a settlement after deadline in court order passed); *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 226 (4th Cir. 2017) (same*); In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 973 (9th Cir. 2007) (applying 6(b) to request for extension to file an application for attorney's fees after deadline in court order passed); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC*, 222 F. App'x 847, 857–58 (11th Cir. 2007) (applying 6(b) to request for extension to file Daubert response after deadline in scheduling order passed); *Tiffany v.Unum Life Ins. Co. of Am.*, 250 F.R.D. 314, 318 (W.D. Mich. 2008) (applying 6(b) to request for extension to file amended complaint after deadline in CMO passed); *see also* § 1165 Extending Time—In General, 4B Fed. Prac. & Proc. Civ. § 1165 (4th Ed.) ("Federal Rule 6(b) governs the extension of time periods prescribed by the federal rules or by an order of the district court").

Under Rule 6(b), "when an act may or must be done within a specified time," the court

may extend that time where there is good cause and the party failed to act because of excusable neglect. Good cause is a "non-rigorous standard that has been construed broadly," and is normally satisfied where there is not bad faith on the part of the party seeking extension or prejudice to the adverse party. *Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1259 (9th Cir. 2010). Excusable neglect is determined by four factors, "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Atkins v. Mabus*, 654 F. App'x 878, 879 (9th Cir. 2016). "Excusable neglect is an 'elastic concept" and is not limited strictly to circumstances beyond the control of the movant. *See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 392 (1993) (internal citations omitted)). "A district court abuses its discretion by failing to engage in this four-factor test or at least the 'equitable analysis' captured by the test." *Warkentin v. Federated Life Ins. Co.*, 594 F. App'x 900, 901 (9th Cir. 2014*); Farris v. Ranade*, 2014 WL 3378566, at *2–3 (9th Cir. July 11, 2014) (instructing the district court to reevaluate the issue of excusable neglect on remand and specifically address at least "all four [primary] factors").

Another important factor in this equitable analysis is the particular circumstances, characteristics, abilities, and disabilities that the movant possesses, as well as the limitations and challenges that burden the movant and movant's counsel. *See e.g., Atkins*, 654 F. App'x at 879 (finding excusable neglect where attorney's failure to conduct discovery before deadline was "medically related" after he suffered a concussion and underestimated his recovery time); and *Norman v. United States*, 377 F. Supp. 2d 96, 98-99 (D.D.C. 2005) (finding excusable neglect where attorney failed to attend a status conference due to a lack of familiarity with the court's electronic filing system). When determining excusable neglect, "a district court ought not to focus narrowly on the negligent act that caused the default and ask whether the act was itself in some sense excusable. Instead, the court should take account of all relevant circumstances surrounding the party's omission". *Union Pac. R. Co. v. Progress Rail Servs. Corp.,* 256 F.3d 781, 782 (8th Cir. 2001). See also § 1165 Extending Time—In General, 4B

Fed. Prac. & Proc. Civ. § 1165 (4th Ed.) ("[excusable neglect] is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time.")

Furthermore, Rule 6(b), "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Franklin*, 586 F. App'x at 435–36 (internal quotation marks omitted). General categories of excusable neglect include "cases of negligence, carelessness and inadvertent mistake." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000).[1]

All four factors favor Ms. Howard's request for extension in order to finalize and submit her PFS. At most, Plaintiff's delay in completing a PFS is the result of excusable neglect. There is no indication or allegation that Ms. Howard's delay is a result of bad faith. As mentioned above, she is 21 years old and struggling with addiction that she began suffering as a direct result of using JLI's JUUL products at issue. Plaintiff is an inexperienced litigant and efforts of counsel to communicate with her have been frustrated by circumstances outside of her control. Defendants should not be allowed to benefit from these circumstances, or from the results of their wrongful conduct, in order to deprive Plaintiff the right to have her case decided on the merits. Further, there is no indication or allegation that Plaintiff or her Counsel has acted in bad faith to delay discovery. Plaintiff's counsel has worked diligently to establish contact with Ms. Howard to complete her PFS, and continues to do so.

First, Ms. Howard's existing delay causes no prejudice to Defendant JLI, nor would an extension cause prejudice. The danger of prejudice only exists if the plaintiff's actions impair the defendant's "ability to go to trial or threaten to interfere with the rightful decision of the case… Delay alone has been held to be insufficient prejudice." *See U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)(*citing to Mir v.*

---

[1] Given that the factors for consideration under good cause (bad faith and prejudice to nonmovant) are subsumed into the factors for excusable neglect, courts only engage in a single analysis of the factors of excusable neglect to determine whether an extension is appropriate when reviewing a post-deadline request for extension. *See e.g.*, *Atkins*, 654 F. App'x at 879; *see also* Fed. R. Civ. P. 6(b)(1)(A) (requiring only a showing of good cause when the request for extension is brought *before* the applicable deadline has passed).

*Fos*burg, 706 F.2d 916, (19 & n.2 (9th Cir. 1983). Again, Defendant JLI fails to assert in its motion that it has already or is at any risk of suffering prejudice by Ms. Howard's delay in serving a PFS. Plaintiff is not seeking to raise any additional claims; she merely seeks an extension of time in which to submit a PFS. Again, Plaintiff proposes this extension during the early stages of litigation, significant discovery remains to be completed, and a trial date has not been set. Defendant JLI's discovery of the particular facts of Ms. Howard's case matters far less to its ability to defend itself in MDL 2913 than its awareness of the general facts asserted in the Master Complaint and the facts revealed by Ms. Howard's Short Form Complaint, and in addition to the timely service of nearly all PFS' to be common and shared among the majority of plaintiffs in MDL 2913. In other words, at this point in discovery, given that Defendant JLI already possesses the benefit and awareness of common facts asserted in the master and case-specific pleadings, as well as the aggregate of PFS' that have been timely served, it has not suffered prejudice by Ms. Howard's minor delay. Therefore, an extension of time to finalize a PFS will not disrupt or prejudice Defendant's JLI's present and ongoing efforts in this MDL, nor will it prejudice Defendant JLI's defense against Ms. Howard's case in particular.

Second, the length of delay has had minimal impact, and an extension would not significantly impact these proceedings. As stated above, less than three months have passed since the original due date of August 1, 2020. Again, this case is not set for trial, is relatively early on in the discovery process, and Defendant JLI did not assert in its motion that this delay or an extension would have any specific negative impact on this proceeding. Thus, the factor of length of delay weighs in favor of Plaintiff.

Third, Plaintiff's reason for delay weighs heavily in favor of granting an extension. As mentioned above, Ms. Howard is a young litigant, legally unsophisticated, and struggling with addiction caused by Defendants' conduct. Furthermore, all of this is happening in the middle of an unprecedented global pandemic. Thus, Plaintiff's failure to submit a PFS is, at most, the result of excusable neglect related to the global pandemic, her age, and her addiction (and

concomitant health challenges.

Finally, this court should consider whether Ms. Howard's delay is a result of bad faith. It is not. There is no indication that she or her counsel has acted in bad faith, nor does JLI alleges any bad faith.

In sum, all four of the factors giving rise to a finding excusable neglect should be found in favor of Ms. Howard. The totality of the circumstances surrounding her delay, including the limitations and challenges that presently burden Ms. Howard in her compliance with the PFS obligations, militate in favor of the Ms. Howard being allowed additional time to produce her PFS. Therefore, Plaintiff requests that her request for an extension of time to serve her PFS be granted.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Kristian Howard respectfully requests that the Court deny JLI's Motion to Dismiss and grant additional time for her to serve her Plaintiff Fact Sheet.

**Dated:** October 23, 2020.　　　　　　　/s/ *Christopher G. Paulos*

　　　　　　　　　　　　　　　　　　　Christopher G. Paulos
　　　　　　　　　　　　　　　　　　　LEVIN, PAPANTONIO, THOMAS,
　　　　　　　　　　　　　　　　　　　MITCHELL, RAFFERTY & PROCTOR, P.A.
　　　　　　　　　　　　　　　　　　　316 S. Baylen St. Ste. 600
　　　　　　　　　　　　　　　　　　　Pensacola, FL 32502
　　　　　　　　　　　　　　　　　　　Phone: (850) 435-7067
　　　　　　　　　　　　　　　　　　　Fax: (850) 436-6066

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically served the foregoing Response to all counsel of record in this action using the CM/ECF system.

        Respectfully Submitted,

        <u>/s/Christopher G. Paulos</u>

Christopher G. Paulos
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.
316 S. Baylen St.
Pensacola, FL 32502
(850) 435-7067
*Attorney for Plaintiff*