December 9, 2020

The Honorable Jacqueline Scott Corley
United States District Court for the
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Juul Labs, Inc., Mktg., Sales Prac. & Prods. Liab. Litig.,* 19-md-02913

Dear Judge Corley,

Pursuant to Case Management Order No. 6 (ECF No. 357), Plaintiffs' Co-Lead Counsel ("Plaintiffs") and counsel for Defendant Juul Labs, Inc. ("JLI") respectfully submit this Joint Letter Brief regarding public records requests served by JLI on school districts who are plaintiffs in this MDL.

**Plaintiffs' Position**

This Court should not allow Defendants to circumvent this Court's Order regarding the information that School Districts are required to gather at this stage. This Court considered the information sought by Defendants' proposed PFSs to be too burdensome on the schools. For instance, in its Order on PFSs, this Court wrote that "[m]uch of the information Defendants seek is inappropriate for inclusion in a fact sheet." (Order, Dkt. No. 1038, at p. 1). Yet, Defendants are now using non-judicial processes to demand information that **exceeds** the scope of the information that this Court deemed to be too burdensome. This Court should quash all of these improper records requests or, alternatively, should require the counsel who sent them to withdraw them.

**I.      Background**

The parties and this Court engaged in a lengthy process in determining the allowable scope of the PFSs. The parties conferred and then submitted competing proposals before a hearing on September 1. The parties continued conferring and submitted revised proposals before a second hearing on October 7. The Court then issued its ruling, holding that the Plaintiffs' proposed PFSs should serve as the baseline for the PFSs. (Order, Dkt. No. 1038, at p. 1).

Undeterred by the Court's ruling, the Defendants are now demanding information that this Court deemed overly burdensome through sharply worded open records requests that have been served on the majority of the School District Plaintiffs.[1] These requests, sent by Defendants'

---

[1] Most of these requests were served on November 24, on the eve of the Thanksgiving holiday weekend, though Defendants agreed to a short extension, so that they would be deemed to have been served on the following Monday. Even with this short extension, many of the requests demand responses in a short time frame, such as three or five business days. (*See, e.g.*, Three Village Letter at 1 (five days); Letter to Blue Valley (Kan.) School District, attached as Exhibit C, at p. 1 (three days); Letter to Ava R-1 (Mo.) School District, attached as Exhibit D, at p. 1 (three days). Plaintiffs expect that Defendants will serve these requests on all School District Plaintiffs. And, as discussed below, some of the requests do not even comply with the applicable state laws.

Hon. Jacqueline Scott Corley
December 9, 2020
Page 2

counsel, all have similar language. Using the request sent to Three Village School District in New York as an example, Defendants urge that "[t]ime is of the essence in this request for public records." (Letter to Three Village School District ("Three Village Letter"), attached as Exhibit A, at p. 1). The letter also provides contact information for Defendants' counsel so they can "discuss why the public interest requires prompt compliance with this request." (*Id.*).

The request then lists 22 paragraphs of information sought, each of which is burdensome on its own. For instance, at the October hearing, this Court stated: "I don't think it would be reasonable to expect [school districts] to go through the school, pull each file and compile … the number of suspensions that were there." (10/7/20 Hearing Tr. at 9:23-10:1). Yet, the records requests seek information on all suspensions related not only to e-cigarettes, but also those related to combustible cigarettes, alcohol, illegal drugs, and cannabis. (Three Village Letter at ¶ 13).

Isolating only the first four requests, they clearly exceed what this Court has permitted, and also exceed the information sought in Defendants' rejected October proposal. For instance, Paragraph 1 seeks names of several district officials, such as principals, vice principals, counselors, nurses, and building services officials. (*Id.* at ¶ 1). None of that information was even in the Defendants' October proposed PFS, which sought only the names of superintendents and their assistants. (Def. Proposed PFS, 10/5/20, Dkt. No. 1016-1, at ¶ 16). This request mirrors question 23 in Defendants' first proposed PFS, submitted to this Court in August for informal guidance. (Def. Proposed PFS, attached as Exhibit B, at ¶ 23). At the September 1, 2020 hearing, this Court stated that Defendants' initial PFS was "[w]ay too detailed" and "would take days and days and hours and hours, which school personnel don't have." (9/1/20 Hearing Tr. at 42:14-16). The Court mentioned this question about names of school officers in particular, saying, "who's the vice principal? I don't know about that. What they need to know [is], who's the main person who's going to be knowledgeable. That's it." (*Id.* at 43:17-19).

Paragraph 2 then seeks "[a]ll documents concerning any research, investigation, studies, reports, evaluations, or analyses" related to e-cigarette products or manufacturers, "ENDS generally," vaping generally, tobacco products, illegal drug use, alcohol use, and/or cannabis use. (Three Village Letter at ¶ 2). Nothing similar appears in the Plaintiffs' proposed PFS, so the Court did not authorize any inquiry on this topic. The Defendants' proposed PFS asked only for studies related to vaping or e-cigarette use. (Dkt. No. 1016-1 at ¶ 1 of Document Requests). Thus, Defendants' request again goes beyond the information this Court allowed Defendants to seek, and even beyond the Defendants' submission in October, which this Court rejected as overbroad.

The next two paragraphs follow the same pattern, requesting information that goes far beyond vaping and e-cigarettes. Paragraph 3 seeks information about all expenditures related to e-cigarettes, tobacco products, alcohol, illegal drug use, and cannabis. (Three Village Letter at ¶ 3). Again, the Plaintiffs' proposed PFS has no comparable request, and the Defendants' proposed PFS was limited to vaping or e-cigarettes. (Def. Proposed PFS at ¶ 25). Paragraph 4 seeks documents related to donations or funding related to e-cigarettes, tobacco, alcohol, illegal drug use, or cannabis. (Three Village Letter at ¶ 4). The information sought on this topic was limited to vaping and e-cigarettes, in both the Plaintiffs' and the Defendants' proposed PFS. (*See* Def.

Hon. Jacqueline Scott Corley
December 9, 2020
Page 3

Proposed PFS at ¶ 27). This pattern continued throughout these request letters, with Defendants seeking information about alcohol, drugs, and other issues going well beyond vaping and e-cigarettes. (*See id.* at ¶¶ 9, 12-13, 15-16).

More generally, this pattern continued throughout the requests, in that the Defendants consistently request more information than this Court authorized, and even more information than Defendants requested in October, when this Court held their proposed fact sheets to be overbroad. (*See generally* Three Village Letter).

**II.     Argument**

This Court should uphold the integrity of its prior Order by preventing the Defendants' attempt to flout that Order. This Court should either quash all of these public records requests as violating this Court's prior Order, or it should order counsel for Defendants to withdraw these improper, unnecessary, and extraordinarily burdensome open records requests.

   *1. Jurisdiction*

This Court should first conclude that it has the authority to issue the requested order. Defendants argue that this matter is beyond the purview of the Court, but case law and logic say otherwise. All federal courts possess "inherent powers," which include the right "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). These open records requests contradict the clearly stated will of this Court, in exceeding this Court's order as to the information that the School District Plaintiffs must gather. (Order, Dkt. No. 1038). By quashing these improper records requests, the Court would ensure the "orderly and expeditious disposition" of this case.

Several federal courts have prevented or limited litigants' public records requests. For instance, the District of Colorado held that it had the right to prohibit open records requests to any party in the litigation. *Citizen Ctr. v. Gessler*, 2012 U.S. Dist. LEXIS 98066, at *12-13 (D. Colo. July 16, 2012). The court wrote that it was prohibiting the plaintiffs "from using CORA as a means to circumvent this court's Scheduling Order … and to abuse the discovery process to obtain discovery in excess of the limitations set by this court … ." *Id.* at *6-7. Several other cases have reached similar conclusions. *See, e.g.*, *CFGenome, LLC v. Streck, Inc.*, No. 4:16CV3130, 2019 WL 3969178, at *12–13 (D. Neb. Aug. 22, 2019) (improper to issue public records request when discovery was stayed); *Gibson v. Indiana State Pers. Dep't*, No. 117CV01212JPHTAB, 2019 WL 2411330, at *2 (S.D. Ind. June 7, 2019) (enforcing agreement not to use open records requests "to circumvent discovery and the related deadlines"); *Lowe v. New Mexico ex rel. King*, No. CV 10-315 JH/LFG, 2011 WL 13284675, at *3 (D.N.M. Oct. 3, 2011) (attorney who issued public records request during stay of discovery breached duties to the court and counsel by seeking "identical information which had been denied him at the Court's front door by a back door artifice").

In the MDL context, the opioid court adjudicated a dispute over allegedly confidential information produced to local government plaintiffs. Media organizations filed open records

Hon. Jacqueline Scott Corley
December 9, 2020
Page 4

requests in multiple states to try to obtain the information. *In re Nat'l Prescription Opiate Litig.*, 325 F. Supp. 3d 833, 834–35 (N.D. Ohio 2018), *vacated and remanded*, 927 F.3d 919 (6th Cir. 2019). The trial court and Sixth Circuit disagreed on the merits of balancing the public and private interests. *Id.* at 839-40; *In re Opiate Litig.*, 927 F.3d at 937-38. But both courts adjudicated the dispute, thereby concluding that they had jurisdiction to do so. *See United States v. Ceja-Prado*, 333 F.3d 1046, 1047 (9th Cir. 2003) (noting that "every federal court has a continuing obligation to ensure that it possesses subject-matter jurisdiction").

Alternatively, this Court at least has jurisdiction over the attorneys before it. As the U.S. Supreme Court has written, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). The same logic applies to an MDL. And, even outside of the mass action context, a New York judge recently exercised authority over counsel in adjudicating a dispute over open records requests. She wrote, in pertinent part: "Plaintiff's counsel is to take NO STEPS, whether under or outside the Federal Rules of Civil Procedure, to obtain information to use in the presentation of this case."[2]

Briefly addressing Defendants' arguments, Plaintiffs are not contending that federal courts have unlimited power to quash public records requests. Plaintiffs **do** contend that where a federal court has issued an order regarding the scope of discovery, the court may enforce that order, even if that enforcement happens to involve quashing public records requests. Plaintiffs have cited cases to that effect, so they are not asking this Court to do anything "unprecedented."

Defendants rely on distinguishable cases, as demonstrated by the two cases they initially highlight. In *American Bank v. City of Menasha*, 627 F.3d 261 (7th Cir. 2010), the appellate court commented that the district court's stay was "a slap in federalism's face" because a state court had already issued a mandamus order requiring that the records at issue be produced. *Id.* at 263-64. Quashing Defendants' public records requests here would not contradict any existing state-court orders. In *Mid-Atlantic Recycling Techs., Inc. v. City of Vineland*, 222 F.R.D. 81 (D.N.J. 2004), the information sought through open-records requests was also available through discovery, so there was no conflict. *Id.* at 85. Here, requiring responses to these expansive requests would directly contradict this Court's existing order on the scope of PFSs. (*See* Order, Dkt. No. 1038).

Both sides have cited New Mexico cases, but a third case addressing the opposite results in *Lowe* and *Noland* is instructive. *See Monarque v. City of Rio Rancho*, No. CV 11-0135 MV/KBM, 2011 WL 13285718, at *3–4 (D.N.M. May 20, 2011). The key issue as to whether the court has the power to act is whether the open records request contradicts an existing order of the court. *See id.* In *Monarque*, there was no such order in place. *Id.* at *4. But here, the Court has judicially determined the permissible scope of the inquiry to school districts. (Order, Dkt. No.

---

[2] Judge McMahon's order is handwritten in *J.T. v. de Blasio*, No. 1:20-cv-5878 (CM) (S.D.N.Y Oct. 23, 2020). The Order is attached hereto as <u>Exhibit E</u>.

1038). Thus, the Court has the power to protect its existing Order by quashing the Defendants' open records requests. *See Lowe*, 2011 WL 13284675, at *3.

Notably, Defendants have cited no case law indicating that this Court lacks jurisdiction over Defendants' counsel. For these reasons, this Court has jurisdiction over both the subject matter and Defendants' counsel, and can therefore take appropriate action.

*2. Merits*

Once this Court determines that it has authority to act, it should have little trouble concluding that it **should** quash the Defendants' open records requests. These requests are a direct assault on this Court's ability to control discovery. In ruling on the PFSs, the Court was appropriately concerned about placing too much burden on the schools. Yet, as laid out above, the open records requests require districts to dig for much more information than even the proposed PFSs that this Court rejected. Clearly, Defendants are flouting this Court's Order and using what *Lowe* described as "a back door artifice" to cause hassle for the School District Plaintiffs.

This back door/front door distinction is important, because if the Court permits this round of records requests, the Court will lose any control of the discovery process in this litigation. There will likely be more discovery disputes in the future, and if Defendants are permitted to use open records requests as an end run around any limitations set by this Court, then those limitations will have no practical effect. *See Lowe*, 2011 WL 13284675, at *3 ("In the context of ongoing federal litigation where specific discovery was denied a party due to a court-imposed stay, the use of an IPRA request to obtain the same information is improper.").

A related point is that only the Defendants would have this "back door artifice" available to them, if the Court allows this tactic. The *Gessler* court wrote that its ruling avoided giving one side an unfair advantage, as the defendants did not "have the parallel ability to submit CORA requests to Plaintiff." *Gessler*, 2012 U.S. Dist. LEXIS 98066, at *7. The same logic applies here. This Court carefully weighed the benefits and burdens of the information being sought when it ruled on the scope of the PFS. (*See* Order, Dkt. No. 1038). Defendants will get limited information from **all** Plaintiffs, with the ability to obtain even more information from the selected bellwethers. Defendants should not be permitted to use public records requests to circumvent this Court's process and dramatically increase the burden on all non-bellwether Plaintiffs.

Defendants may argue that these requests present state-law issues that should be resolved in state court. But that approach would subvert the very purpose of the MDL process. As the opioid court noted, "centralized discovery is a core purpose of the creation of this MDL." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 3166631, at *2 (N.D. Ohio June 15, 2020); *see also* 28 U.S.C. § 1407 (stating that MDL proceedings "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions").

Here, that convenience will be lost if the parties are litigating open records requests all over the country. In at least two states where Defendants sent open records requests, only citizens of

Hon. Jacqueline Scott Corley
December 9, 2020
Page 6

the state may make those requests, and therefore Defendants did not even have standing to serve those requests. S.C. Code Ann. § 30-4-100(A); Ark. Code Ann. § 25-19-105(a)(1)(A). In California, there is a pending litigation exception to the requirement to produce records. Cal. Gov't Code § 6254(b). The larger point is that allowing these records requests to proceed will lead to dozens of disputes, with school districts having a wide variety of production obligations. That result is contrary to the purpose of centralized discovery, which allows this Court to manage an orderly and fair process.

For all of these reasons, this Court should quash the Defendants' open records requests or order Defense counsel to rescind them. These requests threaten this Court's authority to continue with an orderly discovery process, and they threaten the policy objectives that underlay this Court's initial decision on the scope of the PFSs.

## JLI's Position

Plaintiffs' request that this Court quash legitimate state statutory public records requests is unprecedented and unsupported. *First*, it is black-letter law that a court may not extinguish a party's statutory rights to access *public* records simply because Plaintiffs have chosen to file lawsuits against it. "The case law uniformly refuses to define requests for access to federal or state public records under public records laws … as discovery demands, even when as in this case the request is made for the purpose of obtaining information to aid in a litigation and is worded much like a discovery demand." *Am. Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010). For that reason, federal and state "courts that have considered this issue have rejected the notion that the filing of a civil litigation halts a party's access to documents under a public record access statute." *Mid-Atl. Recycling Techs., Inc. v. City of Vineland*, 222 F.R.D. 81, 86 (D.N.J. 2004) (citing cases). *Second*, the suggestion that JLI's exercise of the same statutory rights available to the public would provide an unfair litigation advantage is incorrect. The balance of information exchange overwhelmingly favors Plaintiffs here—who have received over a million documents from JLI, and who already have access to the same materials sought by JLI. The public record requests marginally level the playing field through legitimate state-law records requests that JLI in many circumstances will have to pay for. *Third*, although not required, counsel for JLI transparently apprised MDL Plaintiffs' Lead Counsel that it would be serving the requests, solicited input from counsel on their preference for communications regarding the requests, and within hours agreed to requested accommodations to the timing of responses. Any criticisms about the timing of the requests are an unfair and meritless distraction from the straightforward legal issue before the Court. The Court should deny Plaintiffs' request.

**I.      The Court Should Neither Quash nor Order Withdrawal of Public Record Requests.**

**A.      The Court Does Not Have the "Inherent Authority" to Quash the Requests.**

Plaintiffs' claim that the Court has authority to rewrite their state law obligations is incorrect. Nothing in principle or precedent supports the novel argument that the Court's "inherent powers" authorize a federal court to "quash" valid public records requests under the laws of

Hon. Jacqueline Scott Corley
December 9, 2020
Page 7

numerous states. Indeed, Plaintiffs do not identify a single case where a federal court "quashed" a state public records requests—which Plaintiffs themselves describe as "non-judicial processes"—because there is none. To the contrary, "[t]he case law uniformly refuses to define requests for access to federal or state public records under public records laws … as discovery demands, even when as in this case the request is made for the purpose of obtaining information to aid in a litigation and is worded much like a discovery demand." *Am. Bank*, 627 F.3d at 265.[3] Because a request for "public records pursuant to a state statute is not discovery," an order prohibiting such requests is in fact "an injunction against enforcement of a state law," not a discovery order. *Id.* Granting the request to quash would be an improper "discovery order that has the effect of preempting a state law," which "is a slap in federalism's face." *Id.*; *Mid-Atl. Recycling Techs.*, 222 F.R.D. at 85 ("The Court rejects defendants' invitation to find that the general discovery rules under the Federal Rules of Civil Procedure preempt [the New Jersey Open Public Records Act]").

For that reason, federal courts consistently refrain from making state law determinations regarding the propriety of state law public records requests. *See, e.g.*, *Am. Bank*, 627 F.3d at 265; *Burke v. New Mexico*, 2016 WL 11489335, at *1 (D.N.M. Aug. 5, 2016) ("Plaintiff may continue to pursue her [New Mexico Inspection of Public Records Act] requests while this lawsuit is pending."); *Crane v. City of Roy*, 2008 WL 11508840, at *2 (W.D. Wash. May 13, 2008) ("This court will not decide matters of state law.... and this Order makes no decision on the propriety of the public records issue in state court."); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 2008 WL 2001990, at *3 (E.D. Tenn. May 7, 2008) ("[The underlying] litigation is not the proper avenue or venue for the determination of whether, or to what extent, [a government entity-party] should respond to the pending [state public record law] requests."), *aff'd*, 402 F. App'x 990 (6th Cir. 2010); *Mid-Atl. Recycling*, 222 F.R.D. at 87 ("the Federal Rules of Civil Procedure do not act as an automatic bar of a litigant's rights to obtain or seek documents under a public record access statute" when rejecting municipal defendants' "arguments that Fed. R. Civ. P. 26 limits or restricts a party's right to request documents under" New Jersey's Open Public Records Act).

"[T]he notion that the court should insulate governments from requests for information under normal processes otherwise available to the public whenever the governments engage in litigation is not appealing," but that is precisely what Plaintiffs ask this Court to do. *Republic of Colombia v. Diageo N. Am., Inc.*, 2007 WL 3274882, at *1 (E.D.N.Y. Nov. 5, 2007)

Plaintiffs' reliance on an opinion from the opioid MDL only *confirms* that the Court should deny Plaintiffs request. There, the district court ordered the DEA to produce its Automation of

---

[3] *See also, e.g.*, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167–68 (3d Cir. 1993); *Jackson v. First Fed. Sav. of Ark.*, 709 F. Supp. 887, 889 (E.D. Ark. 1989); *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 361 & n. 24 (Tenn. 2008); *Bolm v. Custodian of Records of Tucson Police Dep't*, 969 P.2d 200, 204–05 (Ariz. Ct. App. 1998); *Kentner v. Ind. Pub. Employers' Plan, Inc.*, 852 N.E.2d 565, 575 (Ind. Ct. App. 2006); *Ky. Lottery Corp. v. Stewart*, 41 S.W.3d 860, 863–64 (Ky. Ct. App. 2001); *Taylor v. Lansing Bd. of Water & Light*, 725 N.W.2d 84, 87–88 (Mich. App. 2006); *N.J. Builders Ass'n v. N.J. Council on Affordable Hous.*, 915 A.2d 23, 32 (N.J. Super. App. Div. 2007); *M. Farbman & Sons, Inc. v. N.Y. City Health & Hosps. Corp.*, 464 N.E.2d 437, 438–39 (N.Y. 1984); *Cavey v. Walrath*, 598 N.W.2d 240, 243 n. 4 (Wis. Ct. App. 1999)).

Reports and Consolidated Orders System ("ARCOS") data to the county-government plaintiffs. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 926 (6th Cir. 2019). Because the production of data to the county government-plaintiffs would make it potentially obtainable under state public records act requests, the court's protective order gave them authority to reject those requests. *See id.* at 926-27. The Sixth Circuit reversed that aspect of the district court's decision, "hold[ing] that the district court abused its discretion in finding 'good cause' not to permit disclosure of the ARCOS data pursuant to state public records requests." *Id.* at 938. The Sixth Circuit explained that federal courts cannot "enter a blanket, wholesale ban on disclosure pursuant to state public records requests," *id.*, and ultimately concluded that "there is no reason for this Court or any other federal court (rather than the courts of Ohio and West Virginia) to decide the scope of those state laws," *id.* at 938 n.13. The same is true here.

Plaintiffs' other cited cases are not to the contrary. *CFGenome*, for example, concerned a subpoena requesting communications about a public records request, which the court found irrelevant. 2019 WL 3969178, at *12–13 (D. Neb. Aug. 22, 2019). The handwritten order in *J.T. v. de Blasio*, No. 1:20-cv-5878 (S.D.N.Y Oct. 23, 2020), admonished counsel for demanding school districts voluntarily turn over Medicaid-related documents if they wanted to be "remove[d] … as a defendant in th[e] class action" counsel was pursuing. *See* Ex. 1 (emails attached to letter that prompted the court's handwritten order). *Citizen Ctr. v. Gessler*, 2012 U.S. Dist. LEXIS 98066, at *6 (D. Colo. July 16, 2012) and *Gibson v. Indiana State Pers. Dep't*, 2019 WL 2411330, at *2 (S.D. Ind. June 7, 2019) are outlier cases where plaintiffs had sought to amend case management orders that specifically limited public records requests. Finally, in *Lowe v. New Mexico*, 2011 WL 13284675, at *3-4 (D.N.M. Oct. 3, 2011), the public records request violated the terms of a court-ordered stay. Not so here, and even in that case, the court refused to preclude enforcement of the public records request in state court because doing so would "diminish respect for a state court." *Id.* Moreover, these outlier cases all addressed *the plaintiffs'* records requests. Plaintiffs identify no case where a court sanctioned a government entity's decision to file suit as basis to quash public records requests by defendants to those suits.

### B. The Public Entity School Districts Are Not Insulated From Public Records Requests Because They Have Chosen To Be Plaintiffs in a Lawsuit.

If this Court nonetheless decides to take the unprecedented step of reviewing whether JLI's requests were proper, it should do so by applying the relevant state law. Plaintiffs' decision to sue JLI does not change their state-law obligation to respond to valid records requests. States almost uniformly hold that "[o]ne's status as a litigant neither diminishes nor enhances the right to public information" under state public record laws. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 361 n. 24 (Tenn. 2008).[4] "That the public records [the party] seeks are

---

[4] *See also, e.g.*, *City of Allentown v. Brenan*, 52 A.3d 451, 455 (Pa. Commw. Ct. 2012) ("discovery rules do not preclude a party to litigation from utilizing the [Pennsylvania's Right to Know Law] to obtain access to a 'public record'"); *Fairley v. Superior Court*, 78 Cal. Rptr. 2d 648, 652 (Cal. App. 4th 1998); *M. Farbman & Sons*, 464 N.E.2d at 438; *Bolm*, 969 P.2d at 204; *Noland v. City of Albuquerque*, 2009 WL 5217998, at *3 (D.N.M. Oct. 27, 2009); *Ky. Lottery Corp.*, 41 S.W.3d at 864; *Cavey*, 598 N.W.2d at 243 n.4.

Hon. Jacqueline Scott Corley
December 9, 2020
Page 9

potentially useful to him in a lawsuit is fortuitous, not illegal." *Gilbert v. Summit Cty.*, 821 N.E.2d 564, 567 (Ohio 2004). Similarly, California state appellate courts recognize that, "[e]ven after a party suffers an unfavorable civil discovery ruling with regard to public documents, that same party may request an inspection of the same public documents under [the California Public Records Act] and institute proceedings to enforce inspection rights under [the statute]." *See Martin v. Cty. of Orange*, 2009 WL 3110834, at *2 (Cal. Ct. App. Sept. 28, 2009) (citing *Cty. of Los Angeles v. Superior Court (Axelrad)*, 98 Cal. Rptr. 2d 564, 569 (Cal. App. 4th 2000)).

Allowing even adverse litigants to seek public records furthers the underlying purpose behind state public record laws: those laws are "based on the 'fundamental policy of promoting open government, not restricting it,'" *Gilbert,* 821 N.E.2d at 566, and "[t]he public has a right to know about public business, even when the disclosure might benefit an adverse litigant. Under the [these laws], the media, as well as adverse litigants, are members of the public and are entitled to publicly funded information." *City of Fayetteville v. Edmark*, 801 S.W.2d 275, 281 (Ark. 1990).

Plaintiffs' arguments to the contrary are misplaced. Plaintiffs contend "there is a pending litigation exception to the requirement to produce records" in California. But "[a] document is protected from disclosure under the pending litigation exemption *only if the document was specifically prepared for use in litigation*." *Axelrad*, 98 Cal. Rptr. 2d at 569 (emphasis added). Plaintiffs also claim the "larger point" is that different states have different public record requirements.[5] But that is why state authorities should resolve any disputes, not a reason for this Court to supplant state authority. *See In re Nat'l Prescription Opiate Litig*, 927 F.3d at 938 n.13.

## II.   Plaintiffs' Concerns About Unfair Litigation Advantage and Burden Are Misplaced.

Plaintiffs also are wrong that public records requests would circumvent this Court's PFS order, provide an unfair advantage to JLI, and impose an undue burden. First, public records requests are not the equivalent of plaintiff fact sheets. The Court tailored the fact sheets to provide information the Court deemed necessary to engage in bellwether selection, inform settlement negotiations, and screen cases. ECF No. 1038. Public record laws further different but no less important state policy objectives, and "public records requests are not the same as discovery."

---

[5] Vermont recognizes a public records exception for documents related to litigation in which the government entity is a party. JLI therefore has not submitted public records requests to Vermont Plaintiffs. Plaintiffs' contention that JLI may not issue records requests Arkansas and South Carolina is incorrect. South Carolina law provides that any "*person* has a right to inspect, copy, or receive an electronic transmission of any public record of a public body." S.C. Code Ann. § 30-4-30 (emphasis added). And the Arkansas Supreme Court has repeatedly confirmed that "the Act clearly provides that *anyone* who requests information is entitled to it," as "the words 'citizen,' 'public,' 'person,' and 'anyone,' are all used to describe the party empowered to invoke the Act for its public purposes." *Bryant v. Weiss*, 983 S.W.2d 902, 904–05 (Ark. 1998) (emphasis added). In any event, the propriety of those requests can and should be decided by the appropriate state authority.

Hon. Jacqueline Scott Corley
December 9, 2020
Page 10

*Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cty. Washington*, 2019 WL 2437468, at *3 (E.D. Wash. June 11, 2019). As the Seventh Circuit explained in *Am. Bank*, 627 F.3d at 265:

> The word "discovery" is not a synonym for investigation. Much of the information gathering that litigants do is not "discovery" as the term is understood in the law…. They talk to their clients and to witnesses, read newspaper accounts, study the records of previous judicial or administrative proceedings, troll the Web—they do all these things and more without being thought to be conducting "discovery." A plaintiff's lawyer might study corporate records of the defendant that were freely accessible online and no one would think the lawyer was engaged in "discovery."

*Second*, any burden is a result of their status as public entities subject to state public record laws, not their status as plaintiffs in this litigation. *See id.* at 266. The respective state legislatures have thus already made the decision that the burden they will face responding to JLI's requests is reasonable, and have provisions that exempt public records from disclosure in appropriate circumstances. *See, e.g.*, K.S.A. 45-221 ("[A] public agency shall not be required to disclose" documents that come within one of 55 enumerated exemptions); N.J.S.A. 47:1A–1. State law also often shifts the cost and expense of responding to the requests to JLI. *See, e.g.*, *Am. Bank*, 627 F.3d at 266; K.S.A. 45-219. Plaintiffs' burden or fairness objections are particularly unconvincing given that Plaintiffs chose to file suit against JLI and have received over a million JLI documents at no burden or cost, not to mention voluminous documents from co-defendants and third parties.

Indeed, Plaintiffs' requests would unfairly secure an exemption only for school districts who have chosen to file lawsuits, while other school districts who are not yet parties would still be required to comply with such requests. The government entity Plaintiffs "shouldn't be allowed to use [their] dual status to gain an advantage over other" similarly situated government entities. *Am. Bank*, 627 F.3d at 266. Plaintiffs' proposed request would also uniquely disadvantage JLI, a particularly unfair outcome where Plaintiffs are the ones who chose to file suit. "'Nothing in the[ir] argument would preclude a person, not a party to the underlying litigation, from rightfully demanding the materials and then turning them over to the litigants who otherwise would be denied them.'" *Id.* (quoting *State ex rel. Lank v. Rzentkowski*, 416 N.W.2d 635, 637-38 (Wis. Ct. App. 1987). The Court should not "'adopt an interpretation which reduces a law to such unenforceable stature and holds it out to ridicule rather than respect,'" as Plaintiffs' request would. *Id.*

### III. JLI Has Been Transparent and Cooperative with MDL Plaintiffs' Counsel.

Plaintiffs' complaints about the timing and process of the public records requests are misplaced and unfair. *First*, consistent with the rights afforded to JLI (and the rest of the public) under state law, on November 24, 2020, JLI served public records requests on a number of school districts who are also plaintiffs in this MDL.[6] But, although not required to, JLI informed MDL Lead Counsel that such requests would be forthcoming three weeks earlier. Ex. 2 (R. Smith & D.

---

[6] JLI has also severed a number of public record requests to government entities, including state agencies and departments, who are not parties to this MDL or other pending lawsuits against JLI.

Hon. Jacqueline Scott Corley
December 9, 2020
Page 11

Kawamoto email exchange). Plaintiffs' counsel reserved the right to object to these requests, but asked JLI to submit the requests through the "lawyers in this litigation." *Id.* On November 20, 2020, Plaintiffs' counsel asked JLI to submit the requests through the ordinary process, with a copy to MDL Lead Counsel. JLI informed MDL Lead Counsel that it intended to submit the requests the following week (*i.e.* the week of Thanksgiving.). Plaintiffs' reference to Thanksgiving timing is thus unfair. Indeed, when Plaintiffs' counsel asked if JLI would consent to treat the requests as served on November 30 (after Thanksgiving) for the purposes of the statutory response dates, JLI's counsel responded within hours agreeing to the request.

*Second*, while Plaintiffs contend that the requests are "sharply worded" and "demand responses in a short time frame," the requests simply recite statutory response times and provide contact information for the appropriate contacts to discuss the request. Most of the school districts have confirmed they will follow up with any responsive public records.

\*   \*   \*

The Parties look forward to discussing these issues on December 11, 2020.

Respectfully submitted,

/s/ Dean Kawamoto
/s/ Dena Sharp
/s/ Sarah London
/s/ Ellen Relkin

*Co-Lead Counsel for Plaintiffs*

/s/ Renee D. Smith
/s/ Peter A. Farrell

*Counsel for JUUL Labs Inc.*

cc:   MDL Counsel of Record