[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 19-md-02913-WHO<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA** |

Pursuant to Civil Local Rule 16-10(d) and the Court's December 18, 2020 Minute Order (ECF No. 1197), counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-Liquid Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively "Defendants"), and Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as

---

[1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs' Consolidated Class Action Complaint and Consolidated Master Complaint (collectively, "Complaints"), *see* ECF Nos. 387, 388.

[2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

[3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and Eliquitech, Inc.

[4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-Eleven, Inc., Walmart, and Walgreen Co.

[5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holding Company, Inc.

the "Parties") respectfully provide this Joint Case Management Statement in advance of the Further Case Management Conference scheduled for January 15, 2021.

## I. PARTICIPANT INFORMATION

The conference will proceed via Zoom, and the Parties will not appear in person. Anyone who wishes to attend the conference must log in using the information available at: https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

## II. ISSUES TO BE DISCUSSED BELOW AND PROPOSED AGENDA

1. Status of Case Filings and Dismissals
2. Case Management Matters
3. Discovery Status
4. ADR Status
5. Trial Issues

## III. STATUS OF CASE FILINGS AND DISMISSALS

As of January 13, 2020, 1733[6] cases are pending in this MDL, naming 101 defendants. A list of these defendants is attached as **Exhibit A**. To date, 1539 personal injury cases and 161 government entity cases (including 119 school districts, 20 counties, 2 cities, and 20 tribes) have been filed in this MDL. 178 MDL plaintiffs have voluntarily dismissed their cases (173 personal injury plaintiffs and 4 class plaintiffs and 1 school district ); 107 cases have been dismissed without prejudice pursuant to CMO No. 8; and 109 other cases are subject to pending motions to dismiss without prejudice hat have not yet been ruled upon.

There are 286 complaints pending in JCCP 5052, which is assigned to Judge Ann I. Jones of the Los Angeles Superior Court as the Coordination Trial Judge. There are 66 government entity cases, including 64 school districts and 222 personal injury cases brought on behalf of over 2400 individual personal injury plaintiffs. There are 16 defendants named in those JCCP cases.

The Parties are also aware of 15 cases filed by State Attorneys General specifically: California, Illinois, Hawaii, New York, North Carolina, Mississippi, Minnesota, Washington

---

[6] The numbers in this Statement reflect the Parties' good faith estimates based on reasonably available information. The Parties will continue to work together to align their data and resolve any inconsistencies.

D.C., Arizona, Pennsylvania, New Mexico, Massachusetts, Colorado, Alaska and Washington. Plaintiffs' Liaison Counsel continue their outreach to various State Attorneys General to discuss cooperation with this MDL.

An update on matters of significance in (including hearings, schedules, deadlines, depositions, substantive orders, and trial dates) in Related Actions as defined by the Joint Coordination Order (CMO 9, ECF No. 572 at 1, 3), is attached hereto as **Exhibit B**.

## IV. CASE MANAGEMENT MATTERS

### A. Personal Injury Actions

#### 1. Bellwether Discovery Pool

On December 15, 2020, pursuant the Court's (i) September 9, 2020 Order Regarding Bellwether Selection and Case/Trial Schedule (ECF No. 938), (ii) November 9, 2020 Order Regarding (1) *Lexecon* and Bellwether Selection for Personal Injury Cases and (2) Class Representative Personal Injury Claims (ECF No. 1125); and (iii) November 20, 2020 Civil Minutes (ECF No. 1156), the Parties filed a Joint Notice of the 12 cases that were selected through a random-selection process and which will comprise the Court's 12 bellwether discovery pool selections. (ECF No. 1188). On December 30, 2020, the Parties filed a Joint Notice of 12 additional cases (6 picks each) for inclusion in the bellwether discovery pool. (ECF No. 1212.)[7] Plaintiffs have agreed with work with Defendants to resolve any service issues among the eligible bellwether cases.

#### 2. Motions To Dismiss With Prejudice

On November 25, 2020, JLI moved to convert 95 dismissals without prejudice to dismissals with prejudice. (ECF No. 1167) The PSC filed a timely opposition (ECF No. 1176) and JLI filed a timely reply on December 16, 2020 (ECF No. 1189). The Motion is scheduled for hearing at the January 15, 2021 CMC.

---

[7] Defendants reserve all objections to the selection process for the pool, including the alteration of a selected forum through an amendment (rather than dismissal) process. Defendants also reserve all rights as to cases selected for the bellwether discovery pool, including but not limited to personal jurisdiction, subject matter jurisdiction, venue, and *Lexecon*.

### 3. Deferred Pleadings Challenges

The Parties have begun the process on meeting and conferring with respect to the first 12 bellwether cases pursuant to the Court's schedule and are on track to complete their conferral by the January 14 deadline with respect to the second 12 party-selected bellwether cases. All Defendants (with the exception of the E-Liquid Defendants) believe the deferred pleading challenges are contemplated to be and should be directed only to the 24 cases in the personal injury bellwether discovery pool because the burden and complication of moving against all current personal injury cases at this time outweighs any perceived benefit. The E-Liquid Defendants believe there is an ambiguity with respect the Court's Order Regarding Bellwether Selection and Case/Trial Schedule entered on September 9, 2020 (ECF No. 938), specifically as to whether the deferred pleadings challenges to be filed by February 5, 2021, and set for hearing on April 2, 2021, are contemplated by the Court to be directed solely at the Bellwether Plaintiffs, or rather may encompass the entire body of plaintiffs, including non-bellwethers. Plaintiffs agree with the majority of Defendants that the motion practice should be limited to the 24 cases but recognize that the Court's rulings will be informative for other cases. The E-Liquid Defendants believe that for the circumstance where there would be no analytical difference as between the bellwether cases and the entire body of plaintiffs, there would be no additional burden and complication for the parties or the Court.

During the meet and confer Defendants asked that Plaintiffs file individualized long form complaints to clarify and simplify the Motion to Dismiss Process. Plaintiffs agree to this request. The Parties also agree, subject to the Court's approval, to a modest modification of the schedule in this regard:

| Current Date | Proposed Date |
|---|---|
| Plaintiff's Amend Complaints: 1/25<br>Defendants' Deferred Pleading Challenges: 2/5<br>Plaintiff's Opposition: 3/1<br>Defendants' Reply: 3/25<br>Hearing: 4/2 | Plaintiff's Amend Complaints: 2/5<br>Defendants' Deferred Pleading Challenges: 2/26<br>Plaintiff's Opposition: 3/22<br>Defendants' Reply: 3/31<br>Hearing: 4/2 |

Plaintiffs also maintain that within thirty days after the Motions to Dismiss are ruled upon, that Defendants should be required to file answers to those complaints.

**B.     Government Entity Actions**

On December 18, 2020, the Court set a deadline of January 13, 2021 for the government entity plaintiffs to submit government entity fact sheets for those entities eligible for bellwether selection. Out of the 130 municipalities and schools with complaints on file by December 21, 2020, as of the date of submitting this CMC statement, 95 government entities (77 school districts and 18 municipalities), have submitted their fact sheets.[8] In addition, defendants have granted extensions to various government entities, and those entities are not subject to the January 13 deadline.

The Parties have previously reached agreement and the Court has ordered (ECF No. 1157) that the bellwether pool will be comprised of a total of 12 county and school district cases from the eligible complaints. Half of this pool shall be selected by Defendants and half of the pool shall be selected by Plaintiffs. The discovery, trial preparation, and trial deadlines and dates for the cases in this pool shall be sequenced in a manner to be agreed to by the Parties and approved by the Court, or as ordered by the Court, with the pool divided into at least two subgroups (Wave 1 and Wave 2) for which the dates and deadlines for discovery, trial preparation, and trial shall be separated by at least nine months. The Defendants and Plaintiffs shall each select six cases by January 20, 2021. (ECF No. 1157).

Defendants have proposed that, when the Parties make their nominations, Plaintiffs designate three of Plaintiffs' bellwether nominees for Wave 1 and Defendants designate three of Defendants' bellwether nominees for Wave 1, such that Wave 1 will be comprised of three cases selected by Plaintiffs and three by Defendants. The remaining six bellwether cases would proceed in Wave 2. Defendants anticipate serving discovery promptly after the Wave 1 cases are designated. Plaintiffs are evaluating Defendants' proposal and are meeting and conferring with them on it.

---

[8] The parties are working together to reconcile the number of amended complaints served by December 29, 2020.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

**Plaintiffs' Position**

As a general matter, Plaintiffs are concerned that this proposal – which automatically allocates three Wave 1 slots to each side -- may be inappropriate depending on the bellwethers selected by the parties, and unnecessarily restricts the Court's ability to shape the Wave 1 pool. Certain cases may be more efficient to prepare and try than others. For example, as discussed below, Defendants are declining to waive their *Lexecon* rights and taking the position that Your Honor may only try cases brought by California plaintiffs. Given the efficiency benefits of bellwether trials in this Court, if Plaintiffs put forward more than three California cases, and Defendants put forward none, it may be appropriate to include more of Plaintiffs' proposed bellwethers in Wave 1. Plaintiffs propose that by January 27, 2021, the Parties will either submit an agreed upon bellwether proposal, or competing proposals, to the Court as to how the cases should be divided and sequenced in Wave 1 and Wave 2.

In addition, guidance from the Court on the following issues would be helpful in enabling the parties to identify the most appropriate bellwethers to put forward and propose the Court the allocation of bellwethers between Wave 1 and Wave 2.

**1. California entities.** Defendants have indicated that they are unwilling to waive their *Lexecon* rights and are taking the position that only cases brought by California residents may be tried by Judge Orrick. Plaintiffs do not agree that Defendants that were resident in California have any *Lexecon* rights. That said, the parties would benefit from the Court's guidance as to whether, based on Defendants' purported objections, it would favor California entities being put forward as bellwethers, particularly for the Wave 1 cases.

To be clear, and in response to Defendants' position statements below, Plaintiffs are not seeking a ruling on *Lexecon* or the adjudication of any *Lexecon* rights in this CMC statement. Plaintiffs are seeking the Court's guidance on whether, given the existence of various *Lexecon* issues, the Court would favor having California cases put forward as bellwethers.

**2. Early remand.** Given the large number of potential trial cases from the different case groups (twenty-four personal injury bellwether cases, six government entity Wave 1 trial bellwethers, and the class cases) and the limited number of trial slots (five currently set to start in

1    early 2022), whether the Court would be receptive to the early remand of certain government
2    entity trial bellwethers to their home districts for trial.

3    **3. Sitting by designation.** For cases outside of California, but still within the Ninth
4    Circuit, whether the Court would be willing to sit by designation to try the case.

**Certain Defendants' Position**

In response to Plaintiffs' articulation of issues, JLI and certain other Defendants note the following:

**1. *Lexecon*.** Certain of the government entities have elected to file their cases or to have their cases treated as if they were filed in the Northern District of California. However, the vast majority of the government entities elected to file their cases outside of the Northern District of California or to have them treated as if they were filed in other jurisdictions when they commenced suit. No government entity has offered to waive its *Lexecon* rights. If individual government entities want to offer to waive their *Lexecon* rights, Defendants will consider each such offer on a case-by-case basis.

With regard to Plaintiffs' suggestion that Defendants resident in California do not have *Lexecon* rights, Defendants note that Plaintiffs cite no authority for this proposition. Indeed, in *Lexecon*, the Supreme Court noted that "Lexecon took no exception to the Arizona [transferee] court's jurisdiction (as distinct from venue)," but despite the lack of any objection to the transferee court's jurisdiction over the defendant, the Court held that section 1407(a)'s mandatory language required a remand to the transferor court for trial. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32, 35 (1998); *see also In re Takata Airbag Prod. Liab. Litig.*, 379 F. Supp. 3d 1333, 1344 (S.D. Fla. 2019) (*Lexecon* applies even if the court has nationwide personal jurisdiction over the defendant for a RICO claim). While Plaintiffs might have brought their claims against such Defendants in California in the first instance, they chose not to do so. Plaintiffs are not entitled, particularly after substantive rulings have been made, to an option to select a different jurisdiction for trial other than the one they chose when they filed their lawsuit.

1    Finally, if Plaintiffs thought these *Lexecon*-related issues needed to be resolved prior to
2    bellwether selection, they should have filed an appropriate motion with the Court that could have
3    been fully briefed.  These are not issues appropriate for determination at a CMC.

4    **2. Selecting Representative Cases.**  As noted earlier, the vast majority of the
5    government entity actions were filed in jurisdictions other than N.D. Cal. or elected to be treated
6    as if they were filed in those other jurisdictions.  In order to obtain a representative sample of the
7    entire set of government entity cases that have been filed, it is necessary to select cases involving
8    non-California plaintiffs and that were filed in or designated jurisdictions outside of California.
9    In the context of bellwether trials, it is axiomatic that selecting representative bellwether cases is
10   the key to producing reliable information on the strengths and weaknesses of various claims and
11   defenses and the settlement value of cases.  *See, e.g.*, Melissa J. Whitney, *Fed. Jud. Ctr.,*
12   *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges 3 (May 15, 2019)* (goal of
13   bellwether trials is "producing reliable information about other cases centralized in that MDL
14   proceeding"); *id.* at 4, 18; *Guidelines & Best Practices for Large & Mass-Tort MDLs*, Bolch Jud.
15   Instit., Duke Law School 18 (2d ed. Sept. 2018); *Manual for Complex Litig.* § 22.315 (4th ed.
16   2004).  The well-accepted purpose of selecting bellwether cases would not be realized if the
17   Court were to exclude from the bellwether selection set all of the government entity cases that
18   selected forums other than N.D. Cal. for trial.

19   Plaintiffs previously rejected a random selection of government entity bellwether cases.
20   They articulated the view that a more representative sample would be obtained by each side
21   selecting an equal number of cases to make up the bellwether pool.  However, the implications of
22   Plaintiffs' position are clear:  To create a representative set of cases in Wave 1, as well as in
23   Wave 2, the six cases in each wave should be selected half by Plaintiffs and half by Defendants.

24   **3. Early Remands.**  Once common discovery against the Defendants is completed, it
25   may be most efficient to remand bellwether cases to their transferor courts for trial.  That will
26   enable the courts that will try those cases to promptly set trial dates and proceed expeditiously to
27   resolve those matters.

28

**The Altria Defendants' Position**

On September 9, 2020, the Court entered an Order Regarding Bellwether Selection and Case/Trial Schedule (ECF 938), which set certain deadlines and provided the Court and parties would "discuss how to resolve any *Lexecon* disputes at the next Case Management Conference on September 21, 2020." *Id*. at 2 n.1.  At the September 21, 2020 conference, the Court heard the parties' respective positions but concluded the parties "probably need more time in the briefing to be able to respond to each other than just doing it through a CMC statement." Sept. 21, 2020 Hr'g Tr. at 188-99.  In chambers the Court also provided guidance to the parties about what kinds of issues should be presented in the CMC Statement and what kinds were more appropriate for briefing.  The Court directed the parties to meet and confer and propose a briefing schedule in the next month's Case Management Conference (if necessary).  *Id*. at 199.  On November 9, 2020, after the parties submitted briefing on these issues, the Court entered an Order Regarding (1) *Lexecon* and Bellwether Selection for Personal Injury Cases and (2) Class Representative Personal Injury Claims (ECF 1125).  The Court explained that it intends to try the bellwether cases, there are cases without *Lexecon* issues in the current pool of cases, and additional cases could be added to that pool if plaintiffs re-filed those cases and designated the Northern District of California as the forum choice.  *Id*. at 1-2.  When doing so, the Court reasoned that it had "jurisdiction over JLI and at least some (if not all) of the Officer and Director defendants" "who are by all measures the central defendants." *Id*. at 2.  To the extent that any party wishes to revisit the process laid out in the Court's Order Regarding Bellwether Selection and Case/Trial Schedule or the conclusions in the November 9, 2020 Order regarding *Lexecon* and bellwether selection, the Altria Defendants respectfully suggest that they do so in formal motions practice as previously directed by the Court.  In the meantime, the Altria Defendants and all other parties should be prepared to follow the process set forth in the Court's Orders by selecting from among the available cases those cases that each side believes should be proper bellwethers.

**C.     Motions To Seal And Related Declarations**

The Parties provide the following update to the Court on the status of Motions to Seal and related Declarations Pursuant to Local Rule 79-5(e)(1) in support of sealing portions of (i) the

1  Second Amended Government Entity Complaints[9] and the Second Amended Consolidated Class

2  Action Complaint (ECF No. 1135), which were filed on November 13, 2020 (the "Amended

3  Complaints"); and (ii) the January 4, 2021 Altria Defendants' and Non-Management Director

4  Defendants' Motions to Dismiss (ECF Nos. 1223, 1222 ("the January Motions to Dismiss").

5  On November 12, 2020 and January 4, 2021, the Parties filed administrative motions to

6  seal Protected Materials in the Amended Complaints and the January Motions to Dismiss (ECF

7  Nos. 1134, 1221, 1226). Since that time, the Parties have considered the sealed or redacted

8  materials and have met and conferred on the issues. With the exception of the Director

9  Defendants, none of the other Defendants seek to seal anything in the Second Amended

10 Consolidated Class Action Complaint or Amended Governmental Entity Complaints. The

11 Director Defendants are only seeking to seal a few lines from a single paragraph in the Second

12 Amended Class Action Complaint (ECF No. 1249) and plan to seek to seal similar information in

13 the Amended Governmental Entity Complaints at an appropriate time.[10] The Parties therefore

14 request the Court rule on the pending Motions to Seal attendant to Plaintiffs' Amended

15 Complaints on the basis of the Director Defendants' declaration alone.

16 In addition, Altria will be amending its motion to seal related to its January 4, 2021

17 motion to dismiss (ECF No. 1223) and anticipates further narrowing its sealing requests related to

18 that motion.

---

[9] *Central Bucks School District, Bucks County, Pennsylvania v. JUUL Labs, Inc. et al.*, Case No. 3:19-cv-08023-WHO, Dkt. 20; *The School Board of Escambia County, Florida, et al. v. JUUL Labs, Inc., et al.*, Case No. 3:20-cv-00459-WHO, Dkt. 36; *The Livermore Valley Joint Unified School District v. JUUL Labs, Inc., et al.*, Case No. 3:19-cv-08176-WHO, Dkt. 21; *County of Santa Cruz, Individually And on Behalf of The People of The State of California v. JUUL Labs, Inc., et al.*, Case No. 3:20-cv-02261-WHO, Dkt. 29; *The School Board of Broward County, Florida v. JUUL Labs, Inc., et al.*, Case No. 3:19-cv-08289-WHO, Dkt. 20; *Three Village Central School District v. JUUL Labs, Inc., et al*., Case No. 3:19-cv-07028-WHO, Dkt. 25; *Tucson Unified School District v. JUUL Labs, Inc., et al.*, Case No. 3:19-cv-07335-WHO, Dkt. 25]

[10] Many of the amended Government Entity Complaints include the same, or similar, information sought to be sealed by the Director Defendants in the Second Amended Consolidated Class Action Complaint. Because many of these amended Government Entity Complaints were served pursuant to the parties' and Court's agreement (as opposed to filed), the Director Defendants have not yet moved to seal the similar portions of the amended Governmental Entity Complaints and instead propose that the Motion to Seal regarding the Second Amended Consolidated Class Action Complaint (ECF No. 1249) be ruled upon first, and that the parties will then meet and confer to apply that ruling to the similar information in the Amended Governmental Entity Complaints and propose one comprehensive list of information to be sealed in each complaint to the Court for its approval.

## V. DISCOVERY STATUS

### A. MDL Discovery

On January 11, 2021, the Parties participated in a discovery conference with Judge Corley. A copy of the January 8, 2021 Joint Discovery Status Report provided in advance of that conference is attached as **Exhibit C.**

The MDL Plaintiffs are holding weekly calls with JCCP counsel regarding discovery coordination. Defendants appreciate and encourage coordination between the MDL and the JCCP, as detailed by the Joint Coordination Order (CMO No. 9, ECF No. 572) and the Deposition Protocol (CMO No. 10, ECF No. 573).

## VI. TRIAL ISSUES

As the bellwether selection processes in this MDL unfold, Plaintiffs would appreciate the opportunity to address and obtain the Court's guidance on how trial will proceed, including with regard to a jury questionnaire, attorney voir dire, the use of binders or tablets for jurors, video testimony and similar matters which will enable the parties to better prepare to distill what will be a massive quantify of data into a format a jury can understand.

## VII. ADR STATUS

Pursuant to Civil Local Rule 16-10(d), the Parties report that they continue to confer with Settlement Master Thomas J. Perrelli and cooperate with his recommendations.

| | |
|---|---|
| Dated:  January 13, 2021 | Respectfully submitted, |

By: /s/ *Renee D. Smith*

Renee D. Smith (*pro hac vice*)
James F. Hurst (*pro hac vice)*
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2310

By: */s/ Peter A. Farrell*

Peter A. Farrell (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5959

By: */s/ Gregory P. Stone*

Gregory P Stone, SBN 78329
Bethany W. Kristovich, SBN 241891
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100

*Attorneys for Defendant Juul Labs, Inc.*

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone:  (415) 956-1000

By: */s/ Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: */s/ Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

By: */s/ Ellen Relkin*

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Co-Lead Counsel for Plaintiffs*

| | |
|---|---|
| By: */s/ John C. Massaro* | By: */s/ James Kramer* |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **ORRICK HERRINGTON & SUTCLIFFE LLP** |
| John C. Massaro (admitted pro hac vice)<br>Jason A. Ross (admitted pro hac vice)<br>601 Massachusetts Ave., N.W.<br>Washington D.C.  20001<br>Telephone:  (202) 942-5000<br>Facsimile:  (202) 942-5999<br>john.massaro@arnoldporter.com<br>Jason.ross@arnoldporter.com<br><br>*Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc.* | James Kramer<br>James Thompson<br>Walt Brown<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105-2669<br>Telephone: (415) 773-5700<br>jthompson@orrick.com<br>jkramer@orrick.com<br>wbrown@orrick.com<br><br>*Attorneys for Defendant James Monsees* |
| By: */s/ Eugene Illovsky* | By: */s/ Michael J. Guzman* |
| **BOERSCH & ILLOVSKY LLP** | **KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.** |
| Eugene Illovsky<br>Martha Boersch<br>Matthew Dirkes<br>1611 Telegraph Ave., Suite 806<br>Oakland, CA 94612<br>Telephone: (415) 500-6643<br>eugene@boersch-illovsky.com<br>martha@boersch-illovsky.com<br>matt@boersch-illovsky.com<br><br>*Attorneys for Defendant Adam Bowen* | Mark C. Hansen<br>Michael J. Guzman<br>David L. Schwartz<br>Sumner Square, 1615 M St., N.W., Suite 400<br>Washington, DC 20036<br>Telephone: (202) 326-7910<br>mguzman@kellogghansen.com<br><br>*Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh* |

By: */s/ Mitchell B. Malachowski*

**TYSON & MENDES, LLP**

James E. Sell
Mitchell B. Malachowski
Stephen Budica
April M. Cristal
523 4th Street, Suite 100
San Rafael, CA 94901
Telephone: (628) 253-5070
jsell@tysonmendes.com
mmalachowski@tysonmendes.com
sbudica@tysonmendes.com
acristal@tysonmendes.com

*Attorneys for Defendants Mother Murphy's Labs, Inc., and Alternative Ingredients, I*


By: */s/ Michael L. O'Donnell*

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
James E. Hooper
Marissa Ronk
370 17th Street, Ste. 4500
Denver, CO 80202
Telephone: (303) 244-1850
Odonnell@wtotrial.com
hooper@wtotrial.com
Ronk@wtotrial.com

*Attorneys for Defendant McLane Company, Inc.*


By: */s/ David R. Singh*

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*


By: */s/ Robert Scher*

**FOLEY & LARDNER LLP**

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorney for Defendants Tobacco Technology, Inc., and Eliquitech, Inc.*


By: */s/ Christopher J. Esbrook*

**ESBROOK LAW LLC**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown Company, LLC, Circle K Stores, and 7-Eleven, Inc., Speedway, and Walgreen Co.*

1   By: */s/ Donald F. Zimmer, Jr.*

2   **KING & SPALDING LLP**

3   Donald F. Zimmer, Jr.
    Quyen L. Ta
4   Jennifer T. Stewart
    101 Second Street, Suite 1000
5   San Francisco, CA 94105
    Telephone:     (415) 318-1200
6   fzimmer@kslaw.com
    qta@kslaw.com
7   jstewart@kslaw.com

8   *Attorneys for Defendant Walmart Inc.*

9   By: */s/ Charles C. Correll Jr.*_____

10  **KING & SPALDING LLP**

11  Andrew T. Bayman (Admitted *pro hac vice*)
    1180 Peachtree Street, Suite 1600
    Atlanta, GA 30309
12  Telephone: (404) 572-4600
    abayman@kslaw.com
13
    and
14
    Charles C. Correll, Jr.
15  Matthew J. Blaschke
    Alessandra M. Givens
16  101 Second Street, Suite 2300
    San Francisco, CA 94105
17  Telephone: (415) 318-1200
    ccorrell@kslaw.com
18  mblaschke@kslaw.com
    agivens@kslaw.com
19
    *Attorneys for Defendant Chevron Corporation*

15

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT