1

2

3

4

5

6

7   [*Submitting Counsel on Signature Page*]

8   UNITED STATES DISTRICT COURT

9   NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

Case No. 19-md-02913-WHO

12

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA**

13   _____

14   This Document Relates to:

15   ALL ACTIONS

16

17        Pursuant to Civil Local Rule 16-10(d) and the Court's January 15, 2021 Minute Order

18   (ECF No. 1277), counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-

19   Liquid Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively

20   "Defendants"), and Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as

21   _____

22   [1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs' Consolidated Class Action Complaint and Consolidated Master Complaint (collectively, "Complaints"), *see* ECF Nos. 387, 388.

23

24   [2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

25   [3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and Eliquitech, Inc.

26   [4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-Eleven, Inc., Walmart, and Walgreen Co.

27

28   [5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holding Company, Inc.

the "Parties") respectfully provide this Joint Case Management Statement in advance of the Further Case Management Conference scheduled for February 19, 2021.

## I.   PARTICIPANT INFORMATION

The conference will proceed via Zoom, and the Parties will not appear in person.  Anyone who wishes to attend the conference must log in using the information available at: https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

## II.  ISSUES TO BE DISCUSSED BELOW AND PROPOSED AGENDA

1.   Status of Case Filings and Dismissals

2.   Case Management Matters

3.   Discovery Status

4.   ADR Status

## III.  STATUS OF CASE FILINGS AND DISMISSALS

As of February 15, 2020, 1789[6] cases are pending in this MDL, naming 114 defendants. A list of these defendants is attached as **Exhibit A**.  To date, 1593 personal injury cases and 163 government entity cases (including 121 school districts, 20 counties, 2 cities, and 20 tribes) have been filed in this MDL.  252 MDL plaintiffs have voluntarily dismissed their cases (248 personal injury plaintiffs and 3 class plaintiffs and 1 school district); 147 cases have been dismissed without prejudice pursuant to CMO No. 8; and 45 other cases are subject to pending motions to dismiss without prejudice hat have not yet been ruled upon.

There are 311 complaints pending in JCCP 5052, which is assigned to Judge Ann I. Jones of the Los Angeles Superior Court as the Coordination Trial Judge.  There are 73 government entity cases, including 69 school districts and 236 personal injury cases brought on behalf of over 2400 individual personal injury plaintiffs.  There are 16 defendants named in those JCCP cases.

The Parties are also aware of 15 cases filed by State Attorneys General specifically: California, Illinois, Hawai'i, New York, North Carolina, Mississippi, Minnesota, Washington D.C., Arizona, Pennsylvania, New Mexico, Massachusetts, Colorado, Alaska and Washington.

---

[6] The numbers in this Statement reflect the Parties' good faith estimates based on reasonably available information.  The Parties will continue to work together to align their data and resolve any inconsistencies.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

Plaintiffs' Liaison Counsel continue their outreach to various State Attorneys General to discuss cooperation with this MDL.

An update on matters of significance (including hearings, schedules, deadlines, depositions, substantive orders, and trial dates) in Related Actions as defined by the Joint Coordination Order (CMO 9, ECF No. 572 at 1, 3), is attached hereto as **Exhibit B**.

## IV.  CASE MANAGEMENT MATTERS

### A.  Personal Injury Actions

#### 1.  Dismissal Of Certain Defendants from Bellwether cases

Plaintiffs have decided to dismiss with prejudice the Retailer Defendants[7], the Distributor Defendants[8], and the E-Liquid Defendants[9] from the personal injury bellwether discovery pool cases, including cases that may be selected to replace any pending personal injury bellwether discovery pool case that has been or will be dismissed.  Plaintiffs will promptly file a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) in order to dismiss the Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants from the pending personal injury bellwether discovery pool cases.  Similarly, to the extent a new bellwether case is selected to replace a bellwether case that has been voluntarily dismissed, Plaintiffs shall file a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) dismissing any Retailer Defendants, Distributor Defendants, and E-Liquid Defendants named in such a case promptly.

Plaintiffs reached the decision to take this action because these defendants were brought into the case chronologically later, and thus discovery as to them is at an earlier stage and would not be complete in time to meet the schedule for the first round of bellwether cases.  It is expressly agreed that Plaintiffs' dismissal of the Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants from the personal injury bellwether discovery pool cases does not extend to or impact any other case pending in this MDL in which the Retailer Defendants, the

---

[7] Chevron Corporation, Circle K Stores Inc., Speedway LLC, 7-Eleven, Inc., Walmart, Inc. and Walgreen Co.

[8] McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holding Company, Inc.

[9] Mother Murphy's Laboratories, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and eLiquitech, Inc.

1  Distributor Defendants, or the E-Liquid Defendants are named as a party.  It is further agreed

2  their dismissal shall not be construed as an admission of non-liability or in any other adverse

3  manner against Plaintiffs in any other pending case filed against these Defendants.

4      In light of Plaintiffs' dismissal, the Retailer Defendants, the Distributor Defendants, and

5  the E-Liquid Defendants will not be filing deferred pleading challenges in the personal injury

6  discovery pool bellwether cases, because they will no longer be defendants in those actions.

7  Plaintiffs and the Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants

8  will meet and confer regarding the appropriate timing and mechanisms for the Retailer

9  Defendants, the Distributor Defendants, and the E-Liquid Defendants to raise pleading challenges

10  for the non-bellwether cases in which they are still named as defendants.

11      Plaintiffs and the Retailer Defendants, the Distributor Defendants, and the E-Liquid

12  Defendants will continue to coordinate with respect to discovery, although the Parties agree that

13  nothing waives the ability of a party to object to discovery.[10]  Given the dismissals, Plaintiffs and

14  the Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants have agreed

15  that the Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants will not

16  attend the Core Discovery depositions, as described in this Court's September 9, 2020 Order

17  Regarding Bellwether Selection and Case/Trial Schedule (ECF No. 938 at 1-2), for each of the

18  personal injury bellwether discovery pool cases or the depositions of any case specific experts

19  who are identified in any individual personal injury bellwether discovery pool case.  The Retailer

20  Defendants', the Distributor Defendants', and the E-Liquid Defendants' rights to participate in all

21  other depositions are unaffected.  For example, the Retailer Defendants, the Distributor

22  Defendants, and the E-Liquid Defendants will have the right to participate in all depositions of all

23  defendants and third parties (other than third parties specific to a bellwether case).

24      In addition, given the impending dismissal, Plaintiffs on the one hand, and the Retailer

25  Defendants, the Distributor Defendants, and the E-Liquid Defendants on the other, stipulate that

26

27  [10] The Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants reserve all
rights with respect to, among other things, objections on the basis of privilege, privacy, relevance,

28  proportionality, burden, admissibility, or that the discovery sought is unreasonably cumulative
and/or can be obtained from another more convenient, less burdensome, or less expensive source.

1   the expert bellwether discovery deadlines identified in this Court's September 9, 2020 Order

2   Regarding Bellwether Selection and Case/Trial Schedule (ECF No. 938) no longer apply to the

3   Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants.  Plaintiffs and the

4   Retailer Defendants, the Distributor Defendants, and the E-Liquid Defendants shall continue to

5   meet and confer with respect to appropriate timing for any expert discovery. Likewise, Plaintiffs

6   on the one hand, and the Retailer Defendants, the Distributor Defendants, and the E-Liquid

7   Defendants on the other, stipulate that the other deadlines in the Court's September 9, 2020 Order

8   Regarding Bellwether Selection and Case/Trial Schedule (ECF No. 938), including deadlines for

9   motions for summary judgment, *Daubert* motions, the bellwether trial deadlines, and fact

10  discovery do not apply to the Retailer Defendants, the Distributor Defendants, and the E-Liquid

11  Defendants.

12  ### 2.   The Bellwether Discovery Pool

13  **Defendants' Position**

14  On December 15 and December 30, 2020, a 24-case personal injury bellwether discovery

15  pool was selected, consisting of 12 randomly selected picks, 6 Plaintiffs picks; and 6 Defense

16  picks. (*See* ECF Nos. 1188, 1212.)  On January 19, 2021, Holly Potter, one of the Defense picks,

17  voluntarily dismissed her case.  (No. 3:19-cv-08261, ECF No. 7)  Defendants proposed that they

18  be allowed to strike one of the remaining 23 cases to level the discovery pool.  However, based

19  on timing of the dismissal, Defendants and Plaintiffs ultimately agreed that Defendants could

20  select a replacement pick, which Defendants did.  Subsequently, on February 4, 2021 yet another

21  Defense pick, George Smigiel, voluntarily dismissed his claim (No. 3:20-cv-04259, ECF No. 8.)

22  And on Feb. 9 and 10, 2021, two randomly-selected picks also dismissed their claims.  (No. 3:20-

23  cv-05983, ECF No. 9; No. 3:20-cv-04695, ECF No. 5.)

24  The BW Discovery Pool currently is comprised of 6 Plaintiffs picks; 5 Defense picks, and

25  10 random picks.  To rebalance the scales—and given the amount of work to be done—

26  Defendants propose that they be allowed to strike one of Plaintiffs' 6 picks.  This would result in

27  total pool of 20 (5 Plaintiffs picks; 5 Defense picks; and 10 random picks).  The Court should

28  adopt this proposal for the following reasons.

**The Personal Injury Bellwether Pool Is Already Skewed**:  All agree that selecting representative bellwether cases is the key to "producing reliable information" "on the strengths and weaknesses of various claims and defenses and the settlement value of cases."  (ECF No. 910 at 22.)[11]  Over Certain Defendants' objections, the Court's November 9, 2020 Order both (1) limited the bellwether discovery pool to those cases that had designated the Northern District of California as the trial forum, and (2) gave Plaintiffs an opportunity to amend their complaints to change their designated forum if they wished to do so.  (*See* ECF No. 1125.)  As Certain Defendants have previously explained, these decisions seriously compromised the potential representativeness of the pool across several dimensions.  (*See, e.g.*, ECF No. 1191 at 3–4.)  The Court acknowledged Certain Defendants' position at the December 18, 2020 Case Management Conference, but confirmed that it intends to stay the course to keep the case moving.  (*See* 12/18/2020 Hr'g Tr. at 5:4–14.)  Certain Defendants continue to believe that the constraints on the bellwether selection process—made worse by the recent voluntary dismissals—results in a heavily skewed bellwether pool that will not provide reliable information necessary to facilitate the successful resolution of this MDL.

**Allowing Defendants To Strike One of Plaintiffs' Picks Will Help Balance The Dropped Defense Pick**:  While affording Defendants an additional strike would not cure the overarching problems with bellwether representativeness outlined above, it would help offset the impact of post-selection voluntary dismissals.  As authorities recognize, "[r]epresentativeness should be maintained throughout the selection and trial process," and MDL courts have discretion in that process. *See* Melissa J. Whitney, Federal Judicial Center, *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* 14 (2019).  And MDL courts have significant discretion to implement and adjust MDL procedures for fairness and efficiency.  *See, e.g.*, *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) ("[M]ultidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its

---

[11] Quoting *Guidelines & Best Practices for Large & Mass-Tort MDLs*, Bolch Jud. Inst., Duke Law School, (2d ed. Sept. 2018) at 18; M. Whitney, Fed. Jud. Ctr., *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (May 15, 2019) at 3-4; *Manual for Complex Litig.* § 22.315 (4th ed. 2004).

1    parts.  The district court needs to have broad discretion to administer the proceeding as a whole,

2    which necessarily includes keeping the parts in line."); *Dzik v. Bayer Corp.*, 846 F.3d 211, 216

3    (7th Cir. 2017) ("District courts handling complex, multidistrict litigation 'must be given wide

4    latitude with regard to case management' in order to achieve efficiency.").

5            While "replacement of any cases that drop out of the pool" could be considered (Whitney,

6    Federal Judicial Center at 14),[12] that is neither practical nor sufficient here.  *First*, the parties are

7    already strained in meeting the current schedule.  Plaintiffs missed their original discovery

8    response deadlines, and even after Defendants afforded extensions, the responses are neither

9    complete and for some have not been submitted at all.  The Parties have less than two months

10   before core fact discovery closes and they will need to analyze and propose their trial candidates.

11   *Second*, affording an additional early strike is appropriate given the unique procedures that

12   cabined the pool from which random, defense, and plaintiffs' picks for the discovery pool were

13   selected—which itself reflected the Court's willingness to modify procedures as it determined

14   circumstances warranted.  (*See, e.g.*, ECF No. 1125.)  *Third*, such modification is fair and

15   appropriate here.  Right now Plaintiffs' picks out outnumber Defendants' picks 6 to 5.   This

16   imbalance could be easily cured by allowing Defendants to strike on of Plaintiffs' picks, and there

17   would be no prejudice before additional bellwether discovery proceeds.  (*Id.* at 2 (finding no

18   prejudice because "[t]hese proceedings are still in their early stages, despite the significant motion

19   and discovery practice to date").).

20        **Plaintiffs' Position**

21           With the bellwether selection process well underway and functioning as expected to

22   identify representative cases for trial, Defendants once again seek to reduce the number of

23   potential cases this Court can try.  The parties proposed 24 cases—a large number—for the

24   bellwether selection pool, anticipating that some plaintiffs would drop out for any number of

25   _____

26   [12]     *See also, e.g.*, Call for Public Comment, *Standards & Best Practices for Large & Mass-Tort MDLs*, Bolch Jud. Instit., Duke Law School, (Mar. 12, 2018) at 17 ("Although there may be good-faith reasons for settling or for voluntarily dismissing a test case, there could be instances in which the parties do so to manipulate the takeaways from the bellwether process…. Such strategic behavior can be mitigated by, for example, allowing plaintiffs to choose the replacement for any bellwether case that defendants choose to settle rather than take to trial, or allowing defendants to select the replacement for any bellwether case that plaintiffs choose to dismiss.").

27

28

1   reasons, including the demands of being a bellwether plaintiff in the midst of the COVID

2   pandemic.  That some plaintiffs have opted not to proceed is not a defect in the process, but an

3   important part of helping both sides grapple with the ground reality of these cases. *See Standards*

4   *And Best Practices For Large And Mass-Tort MDLs*, Bolch Jud. Instit., Duke Law School

5   (December 19, 2014) at 21 ("Many bellwether cases resolve along the way, whether because of

6   errors in the plaintiff-fact sheet, special factors that strengthen or weaken the case during

7   discovery that were not anticipated at the outset, or because of the court's early rulings. These

8   cases should not be regarded as failures. Instead, they are important data points, helping the

9   lawyers better understand the ground reality of the cases ─ which may vary considerably from the

10  hypothetical plaintiff that has been the idealized subject of early negotiations. Indeed, the reasons

11  these cases drop out ─ gamesmanship, good advocacy, plaintiffs disappearing, the outcome of

12  preliminary motions ─ all provide insights into how the broader pool of cases may fare. Yet,

13  recognizing this, it is important that the judge select a larger pool of cases, knowing that they will

14  resolve at a variety of points in the bellwether litigation process ─ as they should.").

15          To the extent Defendants have concerns regarding bellwether pool Plaintiffs' compliance

16  with their discovery obligations, they should be bringing those issues promptly to Judge Corley

17  for resolution. The parties have been meeting and conferring and working in good faith to narrow

18  and resolve disputes, as set forth in the Joint Discovery Status Report, Exhibit C.  Discovery of

19  the bellwether pool has been extensive.  Plaintiffs have provided eight authorizations releasing

20  medical, mental health, employment, education, tax and other records, in addition to Plaintiff Fact

21  Sheets. Last week, they responded to 20 interrogatories with 58 numbered subparts and up to 51

22  Requests for Production. Within the next two months, each Plaintiff will sit for a deposition

23  (along with their parent or friend and, if applicable, their physician).  Additionally, per

24  Defendants' request, Plaintiffs are working with a vendor to search the following sources for

25  responsive material, using agreed-upon search terms: (1) email accounts; (2) social media

26  accounts/platforms (including messaging applications) (i.e., Facebook, Instagram, Twitter, and

27  Snapchat); and (3) any other websites where Plaintiffs made public postings.  Plaintiffs' counsel

28  also agreed to ask Plaintiffs to manually review their phones and electronic devices for responsive

photos or videos.  Plaintiffs have advised Defendants that privacy concerns have led several plaintiffs to withdraw from the bellwether process. Nevertheless, Defendants are seeking to add compulsory medical exams to the list of discovery to complete before bellwether selection.  This issue will be heard on Tuesday, February 23 by Judge Corley.

Against this backdrop, Defendants' request to further diminish the bellwether pool is counter-productive. Under the Court's current process, Defendants will have an opportunity to argue why certain cases are or aren't representative, upon a more fulsome record, and after having a clearer picture of which plaintiffs will advance to trial.  Removing another potential case from the pool now—particularly one in which the plaintiff has committed to proceed—would detract from, not promote resolution.

### B. Class Actions

Plaintiffs request a modest extension of the class certification briefing schedule that, significantly, will not require an adjustment of the case schedule overall.

**Plaintiffs' position**

There is good cause for the class certification extension. The parties' document productions are still very much underway and depositions have only just begun, after months of negotiations over scheduling and scope. Plaintiffs' merits expert work necessarily must trail the development of the evidentiary record. Importantly for class certification, only two weeks ago JLI made its first productions of certain basic sales and cost information (*e.g.* financial reports showing profits and costs) that plaintiffs have been actively pursuing since last summer.[13] And only in January did plaintiffs receive sales data broken out by state. The parties continue to meet and confer given that much of the requested sales, revenue, cost, and profit data was not maintained in the ordinary course of business throughout the relevant time period, and thus presents a variety of challenges. The Rule 30(b)(6) deposition of JLI's corporate designee on topics concerning sales and cost information was previously set for February 18-19, but had to be continued briefly because the witness, who is located in Austin, Texas, has been subjected to

---

[13] ECF 1244 (Joint Discovery Status Report, 1/8/21) at 4-5.

1    adverse weather conditions this week.  JLI also recently produced thousands of advertisements

2    that ran during the class period, which will need to be reviewed and analyzed.

3         While any one of these considerations may not independently preclude plaintiffs from

4    moving for class certification in March 2021 as currently scheduled, together they pose

5    significant obstacles to plaintiffs' ability to complete key expert and discovery work to support

6    their class certification motion. Rule 23 neither requires nor allows a "free-ranging merits

7    inquiry" at the class certification stage. *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds,*

8    133 S.Ct. 1184, 1194-95 (2013). But, of course, at class certification plaintiffs must submit an

9    evidentiary record showing that their claims are susceptible to classwide proof, and their theories

10   of liability will be critiqued if they are not sufficiently tethered to their damage theories. *Comcast*

11   *Corp. v. Behrend,* 133 S.Ct. 1426, 1432-33 (2013)).

12        Plaintiffs propose a six-week extension that would preserve the current intervals between

13   briefing events and the hearing, and would result in class certification being heard in September

14   (subject to this Court's availability), rather than August. Defendants object but provide no

15   persuasive reason that an adjustment of the class certification schedule requires a wholesale

16   adjustment of the case schedule. Class certification is undoubtedly an important milestone in the

17   litigation, but certification briefing frequently occurs after the close of discovery and need not be

18   resolved by the time summary judgment briefing begins. If any class is certified, plaintiffs intend

19   to promptly implement a notice program designed to alleviate any potential concerns about

20   substantive implications on the case schedule. Though JLI takes issue with Plaintiffs' recitation of

21   the good cause basis for the extension, it was intended to reflect the iterative process the parties

22   have undertaken, with Judge Corley's assistance,[14] as to the relevant discovery.

23        To the extent Defendants believe an overall extension of the case schedule is necessary,

24   Plaintiffs are prepared to engage, with the benefit of the Court's guidance. But for present

25   _____

26   [14] By way of example: The sales data JLI produced in July 2020 (JLI01504764) provides
     nationwide net revenue figures; it did not provide the requested state-specific information or gross
     revenues. Plaintiffs requested clarification about many aspects of the data in September 2020
27   (including how net revenues were calculated); they did not receive a substantive response until
     January 2021. While JLI is correct that it previously produced certain revenue, profit, and cost
28   information, only certain responsive data and files were identified and/or produced for the first
     time this month. The parties continue to meet and confer.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

purposes, there is no basis for Defendants to object to moving the class certification deadline if they intend to seek an extension of the entire case schedule. Plaintiffs see little reason to submit additional briefing regarding the requested class certification extension, but are prepared to do so if the Court deems it appropriate.

Plaintiffs' proposed adjustments to the class certification schedule are as follows:

| Event | Current Date | New Proposed Date |
|---|---|---|
| Plaintiffs Serve Class Certification Expert Reports<br><br>Motion for Class Certification (as to California subclass, federal nationwide class, any other state(s) agreed or ordered to be included in first class bellwether trial(s)) | March 17, 2021 | April 28, 2021 |
| Opposition to Motion for Class Certification<br><br>Defendants Serve Class Certification Response Reports<br><br>Defendants File *Daubert* Motions for Class Plaintiffs' Class Certification Experts | June 16, 2021 | July 28, 2021 |
| Reply in Support of Motion for Class Certification<br><br>Plaintiffs Serve Class Certification Rebuttal Reports<br><br>Class Plaintiffs File *Daubert* Motions for Defendants' Class Certification Experts<br><br>Class Plaintiffs File Oppositions to Defendants' *Daubert* Motions | July 14, 2021 | August 25, 2021 |
| Defendants file Oppositions to Class Plaintiffs' *Daubert* Motions | July 28, 2021 | September 8, 2021 |
| Hearing on Motion for Class Certification | August 13, 2021 | September 24, 2021 or as soon thereafter as is convenient for the Court |

**Defendants' Position**

Plaintiffs first raised the issue of a schedule adjustment one day before this CMC Statement was due.  Because of the critical importance of the schedule as a procedural and substantive matter, Defendants respectfully request that the Court allow the Parties to submit

1    letter briefs of not more than five pages each by next Friday, February 26, 2021.  In advance of

2    the conference, Defendants note the following for the Court's consideration.

3           *First*, Defendants do not oppose reasonable extensions of the case schedule, but do oppose

4    a six-week extension of the class-certification motion schedule *in isolation* as neither fair nor

5    sufficient.  Six weeks does not address the fundamental problem—which is that Defendants have

6    not been allowed sufficient time to take the discovery necessary to prepare these case for trial.

7    However, if Plaintiffs are allotted six more weeks to file their motion for class certification, then

8    the entire schedule should shift across the case types (personal injury, class, and government

9    entity) and across the schedule to provide equitable relief to *all Parties*.[15]  Among other things,

10   moving only the class-certification-motion schedule will force Defendants to file summary

11   judgment motions six days after the hearing on class certification, and likely weeks before the

12   certification motion is decided.

13          *Second*, Plaintiffs' suggestion that a class-motion-only reprieve is justified because

14   "merits expert work necessarily must trail the development of the evidentiary record" does not

15   advance their cause.[16]  Plaintiffs' schedule specifically contemplated that their certification

16   motion and supporting expert reports would be served ***months before the*** completion of fact

17   discovery.  Plaintiffs purposefully "aligned" their proposed deadlines (which the Court largely

18   adopted) to "bring fact discovery and class certification briefing to a close by the start of June of

19   2021."  (ECF No. 927 at 1; *see also* ECF No. 938.)  Under Plaintiffs' new proposal, however, fact

20   discovery would close in June of 2021, but class certification briefing would not be complete

21   until later.

22

23

24   [15] The Altria Defendants position is the same as JLI's position.  However, if the Court does give
     the plaintiffs the extension they request for class certification, the Altria Defendants respectfully
25   submit that it would be practical and appropriate for the expert related and summary judgment
     deadlines in the class case to be extended by an identical amount.

26   [16] Plaintiffs' request to adjust the schedule as to only one part of only the class-action cases is
     inconsistent with their resistance to what they derided as a "siloing" or "balkanized approach" to
27   scheduling.  (ECF No. 927 at 2; *see also* ECF No. 910 at 5.)  Indeed, it is unclear why Plaintiffs
     now request that the class certification motion deadline—which they described as one of "critical
28   milestones in the litigation" (ECF No. 910 at 4)—be cleaved off and adjusted without similar
     modifications to the rest of the schedule.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

*Third*, Plaintiffs' pretextual reference to JLI production issues is neither necessary (JLI does not oppose reasonable and fair extensions) nor accurate.  Plainitffs do not explain why JLI sales data or ads are necessary to their class certification motion or to meet their burden on class issues and damages.  In any event, Plaintiffs' characterizations are incomplete or incorrect. Plaintiffs claim that JLI "recently produced thousands of advertisements that ran during the class period."  While there was a supplemental production of ads on January 1, 2021, it is neither surprising nor improper that additional productions have and will continue—and this particular production was made six months before the June 18, 2021 deadline for the substantial completion of fact discovery.  (ECF No. 938 at 4.).  Similarly, the claim that "only two weeks ago JLI made its first productions of certain basic sales and cost information (*e.g.* financial reports showing profits and costs) that plaintiffs have been actively pursuing since last summer" is incorrect. Plaintiffs' *September 14, 2020* deficiency letter raised specific issues with *produced* sales data, such as JLI01504764.[17]  Plaintiffs have had substantial JLI sales information, and JLI has taken extraordinary efforts to provide additional requested information, notwithstanding the substantial burden imposed by those requests.[18]

*     *     *

In short, further briefing on Plaintiffs' new proposal would be appropriate, but if the Court decides to resolve the issue now, it should move the entire schedule by six weeks or deny Plaintiffs' request for more time.

---

[17] That document, which was produced in July 2020, identified a breakdown by month of: (1) the number of each JUUL devices sold, (2) the number of JUULpods sold by e-liquid name/flavor, (3) the number of other JUUL components and accessories, broken out by component or accessory, and (4) the average revenue per unit for each JUULpod and device.  Moreover, other details were already produced long before the recent January productions.  For instance, gross revenue, profit, and cost information was produced last year. *See e.g.*, JLI01359458 (produced 6/24/2020), JLI01504764 (produced 7/28/2020), JLI10081007 (produced 7/23/2020), JLI11175280 (produced 7/23/2020), JLI11790986 (produced 7/23/2020), JLI04612510 (produced 12/07/2020).

[18] For instance, JLI specially created for Plaintiffs a lookup table identifying the number of JUULpods and devices, with nicotine percentage, pod volume, and flavor, for over 200 stock-keeping units (SKUs).  This table took significant time to complete and required input from people in different departments and cross references to multiple platforms.

C.      **Trial Mechanics**

Plaintiffs have reached out to Defendants to discuss the following topics to prepare for the first set of bellwether trials:

1. Mini-opening statements before Voir Dire

2. Voir Dire by Counsel

3. Use of Jury Questionnaire

4. Hardship Qualifications

5. Method/order of selection (six-pack etc.)

6. Peremptory challenges

7. Use of Exhibits in Opening

8. Trial Binders or Tablets for Jurors

9. Procedure for Playing Video Designations

10. Trial time estimates

11. Mini-Summations during trial

12. Rule 42 Considerations – Bifurcation or Joinder of Claims and Cases

Plaintiffs suggested the parties confer to see where they can reach consensus, with the objective of discussing further with the Court at the March conference. Though Defendants have declined to discuss these matters, Plaintiffs (who disagree with Defendants' characterization of Plaintiffs' responses to ongoing discovery, the status of which is set out in the parties' February 5, 2021 Joint Discovery Status Report attached as **Exhibit C**) remain prepared to address these issues.

Defendants appreciate the Court's sentiments that early discussions of trial procedures may be beneficial, but believe that at the present time the Parties' efforts are best focused on imminent discovery obligations.  Defendants are concerned that Plaintiffs are struggling to respond to basic discovery that must be conducted now to meet the case schedule they have proposed.   For example, Plaintiffs have missed deadlines without advance notice; and the Government Entity plaintiffs have yet to propose search terms, despite the fact that the ESI protocol places the initial burden on the producing party to do so.  (ECF No. 323).  Defendants

1  respectfully suggest that a discussion of the issues identified by Plaintiffs should occur and may

2  be more productive after the close of fact discovery in June 2021, which is more than seven

3  months before the scheduled first trial in February 2022.

4  **D.  PSC Appointment**

5  Pursuant to the Court's appointment order, Co-Lead Counsel have the authority to

6  appoint, without the Court's prior approval, members of the PSC or other counsel to do work as

7  Co-Lead Counsel deem necessary to the effective and efficient management of this litigation.

8  ECF No. 341. Co-Lead Counsel have used this authority to allocate substantial work to certain

9  counsel, including Christopher Gold of Robbins Geller.  Mr. Gold has resigned from Robbins

10  Geller and will no longer be participating in the work of the JUUL PSC.  In light of these

11  developments and the work performed to date in the MDL by the Robbins Geller firm, and with

12  the Court's approval, Co-Lead Counsel propose that Ms. Aelish Baig, a partner in Robbins

13  Geller's San Francisco office, be formally be appointed by the Court to the PSC.  Ms. Baig

14  represents the City of Rochester, which was recently selected as a Wave 1 bellwether.  In

15  addition, Ms. Baig has significant experience representing government entities, including

16  government entities undergoing discovery as bellwethers.  Ms. Baig currently represents the City

17  and County of San Francisco, one of the bellwethers in the National Opiates MDL that has been

18  remanded for trial before Judge Breyer.  Plaintiffs fully intend to meet the case schedule set forth

19  by the Court, and Ms. Baig and her team will play a critical role in these efforts.

20  **V.  DISCOVERY STATUS**

21  **A.  MDL Discovery**

22  On February 9, 2021, the Parties participated in a discovery conference with Judge Corley.

23  A copy of the February 5, 2021 Joint Discovery Status Report provided in advance of that

24  conference is attached as **Exhibit C.** The parties will be prepared to update the Court regarding

25  developments since that conference.

26  Plaintiffs seek to depose three former JLI employees who apparently live abroad.  JLI has

27  provided contact for their counsel, where applicable, as well as last known email addresses.

28  Plaintiffs anticipate they may need to seek relief from this Court to issue subpoenas pursuant to

the Walsh Act (28 U.S.C § 1783(a)) and/or effect alternative service under Rule 4(f)(3).
Defendants reserve all rights regarding these efforts.

The MDL Plaintiffs are holding weekly calls with JCCP counsel regarding discovery coordination.  Defendants appreciate and encourage coordination between the MDL and the JCCP, as detailed by the Joint Coordination Order (CMO No. 9, ECF No. 572) and the Deposition Protocol (CMO No. 10, ECF No. 573).

## B.    Government Entity Discovery

On January 20, 2021, pursuant to the Court's order, the Parties each identified six bellwethers that would comprise the twelve bellwether pool of government entities.  ECF 1291, ECF 1292. Defendants served written discovery consisting of 11 interrogatories and 60 requests for production on all twelve bellwethers on January 21st.  On January 27th the Parties submitted competing proposals for separating the bellwether pool into two waves, and on February 1st the Court selected the Wave 1 and Wave 2 bellwethers. ECF 1355.  The Parties are in the process of meeting and conferring regarding this discovery, but request the Court's guidance on the following issues:  (1) the appropriate response deadline for the Wave 1 discovery; and (2) the status of Wave 2 bellwether discovery.

### Plaintiffs' Position

With respect to Wave 2 discovery, the Court's November 20, 2020 order regarding government entity bellwether selection provides that "[t]he discovery, trial preparation, and trial deadlines and dates for the cases in this pool shall be sequenced in a manner to be agreed to by the Parties and approved by the Court, or as ordered by the Court, with the pool divided into at least two subgroups for which the dates and deadlines for discovery, trial preparation, and trial shall be separated by at least nine months."  ECF 1157 (Nov. 20, 2020).  As explained in the Parties' November Case Management Conference statement, the parties specifically agreed "that the sequencing and ordering of the bellwethers needs to occur *such that not all twelve bellwethers of the bellwethers are undergoing discovery and expert work up at the same time*.  The Parties agree that as a general matter, a separation of nine months is appropriate between different groups drawn from the twelve bellwether cases."  ECF 1154 (Nov. 18, 2020) (emphasis added).  This

1   agreement was repeated in both the December and January CMC statements.  ECF 1191 (Dec. 16,

2   2020), ECF 1266 (Jan. 13, 2021).  Defendants' proposal to commence discovery of the Wave 2

3   plaintiffs now is directly contrary to the Court's order and the Parties (repeated) agreement and

4   essentially eliminates the rationale for having two waves in the first place: allowing the parties to

5   focus on discovery and expert work of one wave at a time. Defendants' proposal to expand the

6   number of entities undergoing discovery at once is particularly out of place given their claims that

7   they do not have sufficient time for them to take adequate discovery of the Wave 1 government

8   entity bellwether cases.

9          With respect to Wave 1 discovery, Plaintiffs' are working to review and respond to

10  Defendants' discovery requests.  However, Plaintiffs' position is that this discovery should be

11  deemed served on February 2, immediately after the Court selected the Wave 1 and Wave 2

12  bellwethers.  This would set a deadline of March 4th (30 days after the discovery has been

13  served), for responses and objections.  Plaintiffs note that this is how Defendants have previously

14  indicated they were going to proceed with respect to Wave 1 discovery.  Defendants stated in the

15  January Joint Case Management Statement that they "anticipate serving discovery promptly *after*

16  the Wave 1 cases are designated."  ECF 1266 at 5 (emphasis added).  This approach is consistent

17  with the Court's order, and the parties' agreement, that discovery was to be sequenced with Wave

18  2 discovery occurring after Wave 1 discovery so that twelve government entity bellwethers were

19  not undergoing discovery simultaneously.  Defendants now contend that they anticipated

20  discovery commencing on January 20th because the parties would simply decide amongst

21  themselves what bellwethers would fall into Wave 1 and Wave 2.  But this ignores that the

22  Court's order specifically provided for competing proposals to be submitted on January 27th, a

23  week after the initial pool was created.  It also makes no sense for a public health department or a

24  school district to start analyzing and responding to discovery requests for which there is no case

25  schedule, let alone discovery deadlines.  The fact that Defendants served discovery prematurely –

26  almost two weeks before the Wave 1 bellwethers were selected by the Court, should not truncate

27  Plaintiffs' time to respond.  Plaintiffs also disagree that by submitting competing bellwether

28  proposals to the Court and allowing the Court to decide on the composition of Wave 1 and Wave

2, Plaintiffs have somehow "delayed" the selection of Wave 1 bellwethers.  In fact, it was Defendants that delayed the process by seeking to file reply briefs to the Parties' bellwether sequencing proposals.  Plaintiffs are working diligently to respond to Defendants' discovery and are meeting and conferring with Defendants on this discovery in advance of serving their responses and objections.  But given that Plaintiffs have repeatedly agreed to *extend* Defendants' time to respond to discovery, Defendants insistence on *shortening* Plaintiffs response time is inappropriate. [19]

### **Defendants' Position**

Defendants served requests for production and interrogatories on the twelve bellwether plaintiffs on January 21—the day after the bellwethers were selected.  Defendants expect the Wave 1 plaintiffs to provide substantive responses to those requests by Monday, February 22. Defendants offered the Wave 2 plaintiffs a two-week extension for responses; plaintiffs rejected that offer because they believe there should be no Wave 2 discovery at all for the next nine months.

Plaintiffs' position is untenable.  As to discovery of Wave 1 bellwether plaintiffs, they seek a 10-day extension merely to provide written responses.  They give no explanation for why they need such an extension (nor did they request an extension from Defendants), instead arguing that this Court has already held that discovery could not begin until after the 12 government entity bellwethers were allocated between Wave 1 and Wave 2.  None of this Court's Orders barred Defendants from serving discovery promptly after the twelve bellwethers were selected, and Plaintiffs cite none.  Defendants indicated in the January CMC statement that they anticipated serving discovery promptly after the Wave 1 cases were selected, but in the same statement Defendants explained that they believed the parties should each designate three of their

---

[19] Plaintiffs note that JUUL took 62 days to respond to Plaintiffs' First Requests for Production, and 80 days to respond to Plaintiffs First Set of Interrogatories (First Requests for Production served on March 17, 2020 and responded to on May 18, 2020; First Interrogatories Served on March 17, 2020 and responded to on June 5, 2020).  JUUL took another 62 days to respond to Plaintiffs' Second Requests for Production, and 113 days to respond to Plaintiffs Second Set of Interrogatories (Second Requests for Production served on March 26, 2020, and responded to on May 27, 20202; Second Set of Interrogatories served on March 26, 2020 and responded to on July 17, 2020).

bellwether selections for Wave 1 on January 20.  ECF 1266 at 5.   In other words, Defendants'

position anticipated that discovery on the bellwethers would commence when the parties each

made their selections on January 20; and Defendants served discovery promptly after January 20.

Plaintiffs successfully resisted Defendants' proposal that would have resulted in Wave 1 being

determined on January 20, and thereby delayed the selection of the Wave 1 cases by 10 days.

Notably, even though discovery had already been served by the time the Parties submitted their

briefs on Wave 1 selection, Plaintiffs did not argue that discovery was stayed until the Court

selected the Wave 1 cases.   ECF 1337.  To the contrary, Plaintiffs urged the Court to select their

bellwether picks (which now account for 4 of the 6 Wave 1 cases) because doing so would allow

cases to be ready for trial sooner.  ECF 1349 at 2.  Yet the first thing Plaintiffs have done is seek

to grant themselves a unilateral discovery extension.

      The discovery period for the government entity bellwethers is already extremely brief;

government entity fact discovery opened on either January 20 (Defendants' position) or February

2 (Plaintiffs' position) and is scheduled to close on June 18, 2021, a mere four months from now.

Defendants believe that the allotted time of four and one-half or five months (depending on the

start date) is not sufficient time for them to take adequate discovery of the Wave 1 government

entity bellwether cases, but to date the Court has concluded otherwise.[20]  Setting aside for now

that difference in view, there is no reason to truncate the already-short time period by ten days

(~7%) by delaying the very first step of the discovery process.  The Court should require Wave 1

Plaintiffs to respond to written discovery by February 22.[21]

---

[20] By comparison, Plaintiffs have already taken discovery of JLI for more than 60 weeks, and have another 17 weeks to go.

[21] Defendants note that the government entity bellwethers are delaying discovery in a number of other respects.  They have not yet provided a list of ESI search terms, although required to do so by the ESI Order (ECF 323), instead promising to do so by the end of the day on February 19. They have also declined to to provide proposed custodians until February 26. These delays will leave no time for depositions, a process the bellwethers are similarly delaying.  They have not yet provided any proposed dates for the 30(b)(6) depositions that were noticed on February 2 and have suggested that those depositions must either be delayed until document discovery is substantially complete, or proceed without documents.  It is inconceivable that there will be substantial completion of the production of documents by the Wave 1 government entity bellwethers for many months or that depositions can be completed by the present discovery cutoff.

As to Wave 2 bellwethers, Defendants do not believe it makes sense to suspend all discovery for nine months.  Defendants recognize that Wave 2 discovery does not need to proceed at the same pace as Wave 1 discovery.  That is why Defendants offered an extension on written discovery responses and have not yet noticed Wave 2 depositions.  A complete, nine-month stay until the *commencement* of Wave 2 discovery will, however, result in an extraordinarily and unnecessarily truncated Wave 2 discovery period.  There is no reason that Wave 2 Plaintiffs cannot respond to discovery over the next nine months, even if they do so on a slower schedule than the Wave 1 Plaintiffs. Requiring these Plaintiffs to do so will ensure that the Wave 2 cases move forward efficiently towards eventual trial.  The Court should permit Wave 2 discovery to proceed while recognizing, as Defendants do, that discovery in the Wave 2 cases is less urgent than Wave 1 discovery.

### C.    Class Representative Discovery

The bellwether class plaintiffs have served amended responses to Defendants' discovery requests, and the parties are meeting and conferring concerning those responses. ESI has been collected from each of the Class Representatives for the class bellwether proceedings, and the parties recently reached agreement on the search terms. Plaintiffs are in the process of running those search terms and reviewing the responsive documents. Plaintiffs have nearly completed the submission of Plaintiff Fact Sheets, and the remainder is in the process of being completed.

The parties have reached agreement on a Plaintiff Fact Sheet Implementation Order applicable to the Non-Bellwether Class Representatives that is similar to those entered the Court with respect to the submission of Plaintiff Fact Sheets by personal injury plaintiffs (CMO No. 8, ECF No. 406); and government entities (CMO No. 13, ECF No. 1075), except for one issue on which the parties seek the Court's guidance. The parties disagree as to whether the provision allowing Defendants to move to convert a dismissal without prejudice to a dismissal with prejudice should be included in this PFS Order. (Attached hereto as **Exhibit D** is a draft of the Proposed Non-Bellwether Class Representative Fact Sheet Implementation Order, which is agreed to with the exception of the highlighted portion on page 5.)

**Plaintiffs' Position**

Plaintiffs agree that if a non-bellwether class representative fails to serve a Plaintiff Fact Sheet by the applicable deadlines and does not cure that deficiency, that individual's claim should be dismissed without prejudice. There is, however, no basis for preventing that individual from recovering as an absent class member in any settlement or judgment that may eventually occur. There is, of course, no requirement that absent class members participate in discovery as prerequisite to receiving a portion of any class action settlement or judgment. It thus follows that to the extent an individual does not comply with discovery obligations that arise only by virtue of filing a complaint and serving as a class representative, the appropriate sanction is to dismiss that person's complaint and prevent him or her from serving as a class representative. It does not follow that there should be the additional punishment of preventing that person from recovering as an absent class member at all, and putting that person in a worse position than she would have been in had she never filed a complaint in the first place.

**Defendants' Position**

The Court should not depart from the motion-to-dismiss procedure that it has twice considered and adopted in the Personal Injury and Government Entity PFS Orders. (CMO Nos. 8, 13; ECF Nos. 406, 1075.) Both Orders provide that, if—after the generous time periods for compliance, notification procedures, and opportunities to cure—a party plaintiff has not complied with the Court ordered PFS deadlines, then Defendants may move to convert the dismissal without prejudice to a dismissal with prejudice. The same process should be available here for the following reasons.

*First,* regardless of whether absent class members are required to respond to discovery, class representatives are not absent class members. They are named party plaintiffs who would be subject to this provision only if they repeatedly violated Court discovery orders that are applicable to them. As Judge Corley observed in response to the Parties' request for informal guidance on this issue, a plaintiff who still wants to be a class representative has a choice: he or she can "just stand back and be an absentee class member," but if he or she chooses to be a representative "you have to complete this information; and if you don't your claims . . .all may

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

be dismissed with prejudice." (2/9/21 Conf. Tr. at 11)   Moreover, any named plaintiff who may be subject to a motion to convert a dismissal from one without prejudice to one with prejudice will have had abundant time to submit a PFS (which, as Plaintiffs note above, does not even require documents or signed records authorizations) before the provision would potentially apply. In particular, by the time Defendants could even first **_move_** to convert to a dismissal with prejudice, that plaintiff would not have submitted a complete PFS even though:

- more than **_three months_** will have elapsed after the expected entry of the PFS Order;
- more than **_seven months_** will have elapsed after the parties reached an agreement on the PFS form in October 2020 and Plaintiffs' counsel had indicated their clients were completing the PFSs; and
- more than **_one year_** will have elapsed since these class representatives were included on the Amended Consolidated Class Action complaint filed on March 11, 2020.

_Second_, we now know that the process works.  In connection with the personal injury PFS Order (CMO No. 8), the Court recently commented that this procedure for dismissals with prejudice "made a lot of sense."  (1/15/2021 Hr'g Tr. at 6:19-20.)  In particular, the Court considered JLI's motions to covert dismissals of 95 plaintiffs from without prejudice to with prejudice under CMO No. 8.  (_See_ ECF Nos. 1167, 1169.)  The Court then afforded those subject plaintiffs another 30 days to submit their PFS or face dismissal with prejudice, noting "these lawsuits were filed for people, and the defendants are producing billions of pieces of paper in this case, and if somebody wants to participate they need to step up now."  (1/15/2021 Hr'g Tr. at 6:12-20; _see also_ ECF No. 1277 ("the Court will dismiss with prejudice all cases identified in Exhibit A of the motions ('covered-plaintiffs'), if those covered-plaintiffs have not filed plaintiff fact sheets on or before **February 16, 2021**. This is the last notice the covered-plaintiffs will get before dismissal with prejudice will be entered.").)

_Third_, as Judge Corley recognized in connection with the PFS Order on Government Entity cases, "[t]he inclusion of this provision does not in any way reduce or mitigate Defendants' burden in proving to the Court that a dismissal with prejudice is warranted under whatever statute, rule or caselaw Defendants bring their motion."  (ECF No. 1038 at 4; _see also_ 10/7/2020 Hr'g Tr. at 31:4-11).

22

1    Defendants thus respectfully request the Court adopt the same dismissal-with-prejudice

2   procedure with respect to the Class Action PFSs as provided in CMO Nos. 8 and 13.

3   **VI.     ADR STATUS**

4    Pursuant to Civil Local Rule 16-10(d), the Parties report that they continue to confer with

5   Settlement Master Thomas J. Perrelli and cooperate with his recommendations.

6   Dated:  February 17, 2021                    Respectfully submitted,

7

8   By: /s/ Renee D. Smith                       By: /s/ Sarah R. London

9
    Renee D. Smith (*pro hac vice*)             Sarah R. London
10  James F. Hurst (*pro hac vice*)             **LIEFF CABRASER HEIMANN &**
    **KIRKLAND & ELLIS LLP**                     **BERNSTEIN**
11  300 N. LaSalle                               275 Battery Street, Fl. 29
    Chicago, IL 60654                            San Francisco, CA 94111
12  Telephone: (312) 862-2310                    Telephone:  (415) 956-1000

13
    By: /s/ Peter A. Farrell                     By: /s/ Dena C. Sharp
14
    Peter A. Farrell (*pro hac vice*)           Dena C. Sharp
15  **KIRKLAND & ELLIS LLP**                     **GIRARD SHARP LLP**
16  1301 Pennsylvania Ave, N.W.                  601 California St., Suite 1400
    Washington, D.C. 20004                       San Francisco, CA 94108
17  Telephone: (202) 389-5959                    Telephone: (415) 981-4800

18
    By: /s/ Gregory P. Stone                     By: /s/ Dean Kawamoto
19
    Gregory P Stone, SBN 78329                   Dean Kawamoto
20  Bethany W. Kristovich, SBN 241891            **KELLER ROHRBACK L.L.P.**
    **MUNGER, TOLLES & OLSON LLP**               1201 Third Ave., Ste. 3200
21  350 South Grand Avenue                       Seattle, WA 98101
    Fiftieth Floor                               Telephone:  (206) 623-1900
22  Los Angeles, California 90071-3426
    Telephone:     (213) 683-9100
23
    *Attorneys for Defendant Juul Labs, Inc.*   By: /s/ Ellen Relkin
24
                                                 Ellen Relkin
25                                               **WEITZ & LUXENBERG**
                                                 700 Broadway
26                                               New York, NY 10003
                                                 Telephone: (212) 558-5500
27
28                                               *Co-Lead Counsel for Plaintiffs*

23

1

2  By: */s/ John C. Massaro* _____  By: */s/ James Kramer* _____

3  **ARNOLD & PORTER KAYE SCHOLER**  **ORRICK HERRINGTON &**
   **LLP**  **SUTCLIFFE LLP**

4
   John C. Massaro (admitted pro hac vice)  James Kramer
5  Jason A. Ross (admitted pro hac vice)  James Thompson
   601 Massachusetts Ave., N.W.  The Orrick Building
6  Washington D.C.  20001  405 Howard Street
   Telephone:   (202) 942-5000  San Francisco, CA  94105-2669
7  Facsimile:  (202) 942-5999  Telephone: (415) 773-5700
   john.massaro@arnoldporter.com  jthompson@orrick.com
8  Jason.ross@arnoldporter.com  jkramer@orrick.com

9  *Attorneys for Defendants Altria Group, Inc.*  *Attorneys for Defendant James Monsees*
   *and Philip Morris USA Inc.*
10

11  By: */s/ Eugene Illovsky* _____  By: */s/ Michael J. Guzman* _____

12  **BOERSCH & ILLOVSKY LLP**  **KELLOGG, HANSEN, TODD, FIGEL &**
                                              **FREDERICK, P.L.L.C.**
13  Eugene Illovsky
   Martha Boersch  Mark C. Hansen
14  Matthew Dirkes  Michael J. Guzman
   1611 Telegraph Ave., Suite 806  David L. Schwartz
15  Oakland, CA 94612  Sumner Square, 1615 M St., N.W., Suite 400
   Telephone: (415) 500-6643  Washington, DC 20036
16  eugene@boersch-illovsky.com  Telephone: (202) 326-7910
   martha@boersch-illovsky.com  mguzman@kellogghansen.com
17  matt@boersch-illovsky.com
                                              *Attorneys for Defendants Nicholas Pritzker,*
18  *Attorneys for Defendant Adam Bowen*  *Riaz Valani, and Hoyoung Huh*

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

By: */s/ Mitchell B. Malachowski*

**TYSON & MENDES, LLP**

James E. Sell
Mitchell B. Malachowski
Stephen Budica
April M. Cristal
523 4th Street, Suite 100
San Rafael, CA 94901
Telephone:  (628) 253-5070
jsell@tysonmendes.com
mmalachowski@tysonmendes.com
sbudica@tysonmendes.com
acristal@tysonmendes.com

*Attorneys for Defendants Mother Murphy's Labs, Inc., and Alternative Ingredients, Inc.*

By: */s/ Michael L. O'Donnell*

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
James E. Hooper
Marissa Ronk
370 17th Street, Ste. 4500
Denver, CO 80202
Telephone: (303) 244-1850
Odonnell@wtotrial.com
hooper@wtotrial.com
Ronk@wtotrial.com

*Attorneys for Defendant McLane Company, Inc.*

By: */s/ David R. Singh*

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*

By: */s/ Robert Scher*

**FOLEY & LARDNER LLP**

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2309
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorney for Defendants Tobacco Technology, Inc., and Eliquitech, Inc.*

By: */s/ Christopher J. Esbrook*

**ESBROOK LAW P.C.**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown Company, LLC, Circle K Stores, and 7-Eleven, Inc., Speedway, and Walgreen Co.*

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

By: */s/ Donald F. Zimmer, Jr.*

**KING & SPALDING  LLP**

Donald F. Zimmer, Jr.
Quyen L. Ta
Jennifer T. Stewart
101 Second Street, Suite 1000
San Francisco, CA 94105
Telephone:     (415) 318-1200
fzimmer@kslaw.com
qta@kslaw.com
jstewart@kslaw.com

*Attorneys for Defendant Walmart Inc.*

By: */s/ Charles C. Correll Jr.*

**KING & SPALDING LLP**

Andrew T. Bayman (Admitted pro hac vice)
1180 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
abayman@kslaw.com

and

Charles C. Correll, Jr.
Matthew J. Blaschke
Alessandra M. Givens
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
ccorrell@kslaw.com
mblaschke@kslaw.com
agivens@kslaw.com

*Attorneys for Defendant Chevron Corporation*

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT