Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone:  213-243-4000
Facsimile:  213-243-4199
Lauren.Wulfe@arnoldporter.com

John C. Massaro (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone:  202-942-5000
Facsimile:  202-942-5999
John.Massaro@arnoldporter.com
Jason.Ross@arnoldporter.com
David.Kouba@arnoldporter.com

Paul W. Rodney (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
1144 15th Street, Suite 3100
Denver, CO 80202
Telephone: 303-863-1000
Facsimile: 303-832-0428
paul.rodney@arnoldporter.com

Attorneys for Defendants ALTRIA GROUP, INC.,
PHILIP MORRIS USA INC., ALTRIA CLIENT
SERVICES LLC, ALTRIA GROUP DISTRIBUTION
COMPANY, and ALTRIA ENTERPRISES LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No.: 19-MD-02913-WHO<br><br>**ALTRIA DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' UCL AND RICO CLAIMS AGAINST THE ALTRIA DEFENDANTS FROM PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND THE SEVEN GOVERNMENT AMENDED COMPLAINTS**<br><br>Judge: Hon. William H. Orrick<br>Date: March 26, 2021<br>Time: 9:00 a.m.<br>Ctrm: 2 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 3

I.  PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW JLI IS A RICO ENTERPRISE ......................................................................................................................... 3

II. THE AMENDED COMPLAINTS DO NOT ALLEGE THAT THE ALTRIA DEFENDANTS DIRECTED THE PURPORTED JLI ENTERPRISE ................................. 6

   A.  Plaintiffs Do Not Allege Facts Showing That The Altria Defendants Directed JLI Before December 2018 ........................................................................................ 7

   B.  Plaintiffs Do Not Allege Facts Showing That The Altria Defendants Directed JLI After December 2018 ......................................................................................... 10

CONCLUSION ................................................................................................................................ 15

-i-   CASE NO. 19-MD-02913-WHO

ALTRIA DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
THE AMENDED UCL & RICO CLAIMS AGAINST THE ALTRIA DEFENDANTS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................3

*Bodtker v. Forest City Trading Grp.*,
  1999 WL 778583 (D. Or. Oct. 1, 1999) ....................................................................................5

*Cellco P'ship v. Hope*,
  2012 WL 260032 (D. Ariz. Jan. 30, 2012),
  *on reconsideration in part*, 2012 WL 715309 (D. Ariz. Mar. 6, 2012) ...................................13

*D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*,
  2013 WL 1286696 (N.D. Ill. Mar. 28, 2013) ............................................................................5

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) .................................................................................................1, 4

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ...............................................................................................................10

*Fitzgerald v. Chrysler Corp.*,
  116 F.3d 225 (7th Cir. 1997) ....................................................................................................5

*Healthguard of Lancaster, Inc. v. Gartenberg*,
  2004 WL 632722 (E.D. Pa. Mar. 5, 2004) ................................................................................5

*Holmes v. Parade Place, LLC*,
  2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013) ..........................................................................5

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
  46 F.3d 258 (3d Cir. 1995) .......................................................................................................5

*In re: JUUL Labs, Inc., Mktg., Sales Practices, and Products Liab. Litig.*,
  2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ..........................................................4, 6, 10, 11

*Olympicorp Int'l, LLC v. Farm Rich Foods, LLC*,
  2013 WL 6194238 (E.D.N.Y. Nov. 25, 2013) ..........................................................................6

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ........................................................................................5

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994) .......................................................................................................4

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .................................................................................................................12

*United States v. Rone*,
    598 F.2d 564 (9th Cir. 1979)..................................................................................................4

*United States v. Turkette*,
    452 U.S. 576 (1981) ..............................................................................................................4

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003), *overruled on other grounds*,
    *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ............................................................6

# INTRODUCTION

Plaintiffs claim to have done two things that "solve the problems" that caused the Court to dismiss their RICO claims: (1) changing the alleged RICO enterprise from an association-in-fact enterprise to JUUL Labs, Inc. ("JLI"), and (2) adding "new, and more detailed allegations" to their amended complaints. Plaintiffs, however, still fail to plead a RICO claim against the Altria Defendants. Indeed, it is even clearer now that these claims have no basis in fact, alleged or otherwise, or law, and therefore should be dismissed with prejudice.

*First*, despite changing the alleged enterprise to JLI itself, Plaintiffs fail to plead a RICO claim. The very case Plaintiffs cite to defend this theory shows that such a "corporation as enterprise" theory is typically reserved for situations in which the corporation was "the passive instrument or victim of [the] racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001). The Altria Defendants made the same point in their opening brief, citing cases that Plaintiffs mostly ignore. Altria Br. at 8-9. These decisions demonstrate that a company that allegedly engages in fraud does not automatically become a RICO enterprise comprised of directors and officers, let alone one that also includes passive shareholders, just because plaintiffs bring a RICO claim. Such a permissive view of the "enterprise" requirement would convert almost any fraud claim into a treble damages RICO claim — a result at odds with established principles and authority. Far more is required to plead such an enterprise than Plaintiffs allege.

*Second*, even if Plaintiffs adequately alleged a "JLI enterprise" that included other defendants, they do not allege facts that would support an inference that the Altria Defendants ever directed this purported JLI enterprise. As an initial matter, Plaintiffs' "new" and "more detailed" allegations largely reprise the same alleged conduct by the Altria Defendants that the Court has already rejected as a basis for RICO liability — negotiations between Altria and JLI, Altria's October 25, 2018 letter to FDA, Altria's December 2018 investment in JLI, retail and distribution services in 2019 and early 2020, and providing Make the Switch advertisements to adult smokers in 2019.

Beyond that, Plaintiffs' own allegations *refute* their new theory that the Altria Defendants were directing the affairs of JLI. Plaintiffs make the remarkable claim that Altria began directing

-1- CASE NO. 19-MD-02913-WHO

ALTRIA DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
THE AMENDED UCL & RICO CLAIMS AGAINST THE ALTRIA DEFENDANTS

JLI as early as the spring of 2017 – a year and a half *before* Altria even made its minority investment in JLI in December 2018.  But it is undisputed that each of the following was true during this pre-investment period:   (1) JLI had its own directors and officers responsible for running JLI; (2) Altria and JLI were direct competitors in the vapor market, (3) Altria and JLI were on the opposite sides of on again-off again, contentious negotiations with each other, and (4) Altria sent a letter to FDA directly implicating pod-based products such as JUUL as the cause of underage vaping and made similar comments during an earnings call.  These undisputed facts make it inconceivable that Altria simultaneously directed the activities of JLI.  The isolated allegations cited by Plaintiffs' opposition and documents underlying those allegations do not come close to showing otherwise.

Plaintiffs' "new, and more detailed allegations" also do not show the Altria Defendants directing JLI after December 20, 2018.  Again, most of these allegations are not even "new." Plaintiffs, for example, repeat their allegations about services provided by the Altria Defendants to JLI.  But they make no effort to address this Court's prior ruling that services are insufficient or the ample case law reaching the same decision.  And they ignore altogether the terms of the Services Agreement referred to in the amended complaints that make clear that JLI alone controlled whether services were provided, which services, and when.  Plaintiffs also return to allegations concerning two Altria officers who left Altria and took positions at JLI in 2019.  But they still do not allege any act by these employees while at JLI taken at Altria's direction or on Altria's behalf.  Finally, Plaintiffs make claims based on "internal documents" that purportedly refer to Altria's "goals" and "objectives" concerning JLI and claim the Altria Defendants' goals included partnering with or influencing JLI.  Opp. at 33.  By definition, Altria's internal statements about what it might do in the future does not describe its current relationship with JLI and cannot establish that Altria was directing JLI.

In short, Plaintiffs' amended complaints do not solve the concerns raised by the Court or make allegations sufficient to state a RICO claim against the Altria Defendants.  Plaintiffs have had ample opportunity to amend their complaints, most recently with the benefit of the Court's guidance at argument, the October 23, 2020 Order, and millions of pages of documents produced during

discovery. Yet their RICO claims against the Altria Defendants still fall well short of the burden they must meet under Rule 12(b)(6). The Court should now dismiss these claims with prejudice.

## ARGUMENT

Plaintiffs argue that a corporation "can also be" a RICO enterprise and an outsider "may" join and direct such an enterprise and thus they have met their burden in pleading a RICO claim. Opp. at 1, 19. But the question is not what is hypothetically possible in an academic sense. It is whether Plaintiffs' allegations that JLI was a RICO enterprise that the Altria Defendants joined and then directed are plausible. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The answer to this question is no. Plaintiffs' allegations are insufficient to state a RICO claim against the Altria Defendants as a matter of law.

### I. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW JLI IS A RICO ENTERPRISE

Plaintiffs argue that a corporate entity such as JLI "can also be used as a vehicle through which bad actors commit acts of racketeering" and therefore an enterprise under RICO. *See* Opp. at 1, 15-20. Plaintiffs' emphasis on this point entirely misconstrues the Altria Defendants' arguments. The Altria Defendants do not contend that RICO applies only to the mafia, that a legal entity with legitimate functions like JLI can never be an enterprise, or that a legal entity cannot be a defendant and a RICO enterprise at the same time. *See* Opp. at 15-16. Nor are the Altria Defendants arguing that Plaintiffs fail to plead an enterprise because of a lack of formal distinctness between JLI and the RICO Defendants or because the Altria Defendants have no formal title within JLI. *See id.* at 17-19. The Altria Defendants' argument is that the amended complaints do not plausibly allege that the RICO Defendants exploited JLI — an otherwise central defendant and entirely separate entity — as a vehicle for their own separate ends.

Plaintiffs claim they have sufficiently "revised" their enterprise theory in light of "newly uncovered allegations and the Court's prior order." Opp. at 17. To be sure, Plaintiffs have added more *words* to their Complaint when changing the alleged enterprise to JLI, but the activities of their newly pleaded "JLI Enterprise" are still *identical* to the business goals, schemes, and activities alleged against JLI as a defendant in Plaintiffs' state law claims. *See* Altria MTD at 8-9. Plaintiffs

cannot have it both ways.  They cannot credibly claim, for purposes of their state-law claims, that JLI acted with specific intent to defraud consumers and, at the same time, claim credibly for purposes of their RICO claim that JLI was an unwitting victim that was coopted and exploited by its Directors and outsiders such as the Altria Defendants to serve their own separate enterprise interests.  As before, Plaintiffs have not identified any ways in which the enterprise was engaged in anything other than its own regular business conduct.  *See* 2020 WL 6271173, at *32-33.  Accordingly, Plaintiffs' allegations remain insufficient to plead a RICO enterprise.

The Second Circuit's decision in *DeFalco v. Bernas* discussed by Plaintiffs does not suggest otherwise; instead, it supports the Altria Defendants' argument that more is required to establish a corporate enterprise than what Plaintiffs offer here.  In *DeFalco*, defendants "wielded" the power and authority of the enterprise — the Town of Delaware — to magnify their acts of extortion for their own personal gain.  244 F.3d 286, 309 (2d Cir. 2001).  Defendants, for example, improperly influenced the Town's tax assessment on plaintiff's company and the Town's approval of permits to force plaintiff to comply with their demands.  *Id.* at 297-99.  In stark contrast to the allegations here, defendants' activities in *DeFalco* were *outside the scope* of their positions with the Town, *see, e.g.*, *id.* at 297 (defendants had no authority to instruct Building Inspector to stop issuing permits); *id.* at 310 (defendant had no role with respect to tax assessments); and were undertaken *solely* for the benefit of defendants and not the Town itself.  And unlike the alleged enterprise in this litigation, the Town was not alleged to have engaged in any wrongdoing or received any benefit from the extortion and was not a defendant in the case.  The court thus concluded that the Town was an enterprise that defendants used as a "'passive instrument or victim of [their] racketeering activity.'" *Id.* at 307 (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)) (alterations original).[1]

---

[1] Plaintiffs' other authorities do not show that RICO liability extends equally to defendants regardless of whether they engaged in legitimate conduct in support of a corporation or illegitimate conduct at the expense and without the knowledge of the corporation.  *See, e.g.*, Opp. at 17 (citing *United States v. Turkette*, 452 U.S. 576, 581 (1981) and *United States v. Rone*, 598 F.2d 564, 568 (9th Cir. 1979)).  To the contrary, these authorities address basic principles about claims under the RICO statute.

*DeFalco* is consistent with the cases cited in the Altria Defendants' Motion. Altria MTD at 8-9 (citing cases). Plaintiffs all but ignore these cases, but they demonstrate that when a corporation is alleged to be the RICO enterprise, the law requires that defendants took control of that entity, acting outside of their intended roles, and used that entity to achieve their own improper ends. *See* MTD at 8-9; *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (describing prototypical case as one in which defendants attempt "to perpetrate more, and less easily discovered, criminal acts than he could do in his own person"); *Bodtker v. Forest City Trading Grp.*, 1999 WL 778583, at *7 (D. Or. Oct. 1, 1999) (describing standard in *Fitzgerald* as the most "lucid approach" for reconciling "a literal reading of RICO, which would encompass every fraud case against a corporation, with the concerns of the statute's framers").

By contrast, allegations that defendants engaged in ordinary corporate activity consistent with their roles in a corporation and in a manner benefiting that corporation, such as those alleged here, are insufficient to allege that the corporation was the enterprise.[2] *See* MTD at 8-9; *see also D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, 2013 WL 1286696, at *9 (N.D. Ill. Mar. 28, 2013) (rejecting argument that the "shared goal of financial profit, by each party conducting its own business," was sufficient to show RICO enterprise). Indeed, allowing common law fraud claims against a corporation to be easily converted to RICO claims against the corporation's directors and officers — let alone a passive shareholder — would allow the quasi-punitive RICO statute to be used every time a company allegedly commits fraud. Not only does such an approach contravene well-established principles of corporate law and corporate separateness, it is contrary to the intent of RICO and case law applying the statute. *See* MTD at 9-10; *see also Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (quoting *Holmes v. Parade Place, LLC*, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)) ("Given the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of

---

[2] Plaintiffs cite *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995) to suggest courts "routinely" find corporate enterprises are vehicles for fraud. Opp. at 17. However that case "never specifically ruled on the propriety of the designated 'enterprise,'" *Healthguard of Lancaster, Inc. v. Gartenberg*, 2004 WL 632722, at *7 (E.D. Pa. Mar. 5, 2004), and therefore does not support this claim.

civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts must 'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'").

In short, RICO's reach may at times be broad, *see* Opp. at 15, but it is by no means unlimited. *See Olympicorp Int'l, LLC v. Farm Rich Foods, LLC*, 2013 WL 6194238, at *2 (E.D.N.Y. Nov. 25, 2013) (noting "in practice, [RICO] is often invoked inappropriately where it becomes a mere saber to be rattled"). Instead, courts "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). This Court properly did so in its prior ruling when it held that "plaintiffs have not plausibly alleged the existence of a distinct Enterprise . . ." 2020 WL 6271173, at *26. The Court should do so again.

## II. THE AMENDED COMPLAINTS DO NOT ALLEGE THAT THE ALTRIA DEFENDANTS DIRECTED THE PURPORTED JLI ENTERPRISE

Even if Plaintiffs adequately alleged that JLI was a RICO enterprise, they fail to allege that the Altria Defendants directed this enterprise. Plaintiffs tout their purportedly "new, and more detailed factual allegations." Opp. 1. But the allegations they make against the Altria Defendants describe the same conduct as their prior complaints, which the Court already found insufficient. 2020 WL 6271173, at *31-32. And, although Plaintiffs re-defined the alleged enterprise as JLI, that change only compounds Plaintiffs' problems with respect to the Altria Defendants. JLI is and has always been a separate company with its own board and officers who directed the activities of JLI. Altria MTD at 10-12. Not surprisingly, Plaintiffs have not identified a single activity that JLI engaged in that was directed in any way by the Altria Defendants. This alone should be fatal to their RICO claim.

More fundamentally, Plaintiffs cannot state a RICO claim against the Altria Defendants unless they allege facts showing the Altria Defendants were involved in conducting JLI. Despite possessing millions of pages of documents produced by Defendants, which they cite frequently in their amended complaints, Plaintiffs still do not meet their burden. Indeed, the documents they

cite — which one must assume to be the strongest support they could find — in many instances refute their new theory that the Altria Defendants were directing the affairs of JLI.

### A. Plaintiffs Do Not Allege Facts Showing That The Altria Defendants Directed JLI Before December 2018

Plaintiffs' amended RICO claims against the Altria Defendants are especially specious with respect to the period before Altria's December 20, 2018 investment in JLI. Rather than showing the Altria Defendants directed JLI, Plaintiffs' allegations affirmatively refute that claim.

Plaintiffs repeat the same facts from their original, dismissed complaint concerning Altria and JLI's relationship prior to December 20, 2018: (1) Altria and JLI were separate corporations, and JLI had its own directors and officers, SAC ¶¶ 12-13; (2) Altria and JLI were direct competitors with JLI in the vapor market, *id.* ¶¶ 43, 639; (3) Altria and JLI engaged in contentious, on-again, off-again negotiations about a possible investment by Altria in JLI, *e.g.*, *id.* ¶¶ 497-531; and (4) Altria informed FDA that pod-based and flavored products, such as JUUL products at the time, were leading to increases in underage vapor use, and repeated that statement during an October 25, 2018 earnings call, *e.g.*, *id.* ¶¶ 280, 644-46.

Far from supporting Plaintiffs' new RICO theory, these allegations do the opposite. To believe what Plaintiffs are now telling the Court, one would have to believe that, while Altria was negotiating to acquire or invest in JLI, Altria was sitting on both sides of the negotiating table and bidding against itself. One would have to believe that Altria was directing JLI to promote the expansion of JUUL's market share while simultaneously competing against JLI with Altria's own MarkTen vapor products – which would ultimately result in Altria having to pay a higher price when it purchased its minority share in JLI in December 2018. And one would have to believe that Altria was somehow directing the affairs of JLI when Altria's CEO sent a letter to the FDA telling the FDA commissioner that products of the type sold by JLI were contributing to the youth vaping epidemic. On its face, such an absurd theory should not survive dismissal. It is clear from the facts that Plaintiffs themselves have alleged that Altria was acting on Altria's behalf — and only Altria's behalf — throughout this period.

Plaintiffs' response alludes to "new, and more detailed allegations" in their amended complaints. Opp. at 1. But the question is whether these "details" support Plaintiffs' new theory that the Altria Defendants were directing the affairs of JLI? The answer is clearly no:

- Plaintiffs allege that, during Altria's negotiations to acquire or invest in JLI, "Altria told Pritzker and Valani that they were all aligned on a 'strategic vision as to how to grow the JUUL business rapidly.'" Opp. at 8 (citing SAC ¶ 517). But the letter Plaintiffs cite demonstrates that Altria had no ability to direct JLI at that time. SAC ¶ 517 (citing ALGAT0004031645-46). That letter was part of negotiations involving a "potential transaction" that remained to be negotiated and ultimately would have to be approved by each company's board of directors. See ALGAT0004031645-46 (Altria MTD Ex. 7).[3] "Potential" means that the transaction being contemplated had not yet occurred (and would not occur until December 2018).

- Plaintiffs are fond of repeating a phrase from one of Altria's documents that refers to one of JLI's directors being a "back-channel" for discussions during the parties' negotiations. Opp. at 8, 32 (citing SAC ¶¶ 518-19, which cites ALGAT0002817356). But again, this document reflects ongoing negotiations between two separate parties, and the "back-channel" discussion it considers would have included Goldman Sachs (JLI's investment bank), which is not alleged to have been a part of the purported enterprise. ALGAT0002817356 at 9, 11 (Altria MTD Ex. 8). Accordingly, this document does not remotely suggest that the Altria Defendants were directing JLI. Altria MTD at 13-14. Indeed, if Altria were directing JLI as plaintiffs allege, why would Altria need to a "back channel" to discuss their negotiations? In the same vein, Plaintiffs note that, in these negotiations, Altria initially "sought to purchase a majority share in JLI." Opp. at 8. But if Altria were directing the affairs of JLI as Plaintiffs allege, then Altria would have

---

[3] Citations to "Altria MTD Ex. __" refer to exhibits cited in and submitted with the Altria Defendants January 4, 2021 motion to dismiss. Citations to "Reply Ex. __" refer to the exhibits attached to the Declaration of David E. Kouba filed herewith, which are cited in Plaintiffs' amended complaints and addressed in the Altria Defendants' separately filed Request to Incorporate by Reference or Take Judicial Notice.

- succeeded in purchasing a majority share. The fact that Altria ultimately had to settle for a 35% minority investment demonstrates that these were arms-length negotiations between two independent companies.[4]

- Plaintiffs allege that Altria's communications with Defendants Valani and Pritzker "were not always 'in [their] capacity as directors.'" Opp. at 8 (citing SAC ¶¶ 519). But as with many of their other allegations, Plaintiffs are not accurately representing what the documents they cite actually say. SAC ¶¶ 519 (citing ALGAT0000113109). What the document actually says is the opposite of what Plaintiffs claim. In it, Pritzker is clear that he and Valani will *only* communicate with Altria's then-CEO Willard in their capacity as *directors*: "[Valani] and I are both happy to talk to y'all at any time, but it needs to be limited to in our capacity as directors; we need to avoid any appearance of conflict." ALGAT0000113109 (Reply Ex. 1).

- As in their original dismissed complaint, Plaintiffs continue to allege that Altria joined and was directing the purported JLI enterprise because it had knowledge that JLI allegedly was marketing to underage consumers. Opp. at 30. But knowledge of another party's conduct does not establish membership in or direction of an enterprise. Altria MTD at 16 (citing cases). And Plaintiffs allege no facts identifying any way in which the Altria Defendants played any role in any of JLI's marketing at this time.

- *Finally*, Plaintiffs return their arguments to the October 25, 2018 letter that Altria sent FDA about vapor products. Opp. at 12, 35. There is no reason to repeat the many reasons this letter fails to support their claims, which include arguments in Altria's Motion that Plaintiffs ignore. *See* Altria MTD at 16-17; *see also, e.g.*, Altria MTD CAC (May 29, 2020). Suffice it to say that Plaintiffs continue to offer no explanation as to how Altria's

---

[4] Plaintiffs also claim that "Altria worked with Defendants Pritzker and Valani to direct JLI to maintain and expand JUUL's market share and sales." Opp. at 8. Plaintiffs do not even attempt to provide support for this assertion, *see id.*, nor could they, since it has no basis in fact.

letter to the FDA talking about actions Altria was taking with respect to its own vapor products could have somehow been directing the affairs of JLI.[5]

### B. Plaintiffs Do Not Allege Facts Showing That The Altria Defendants Directed JLI After December 2018

Even after Altria's December 20, 2018 minority investment in JLI, JLI has remained a separate company, managed and operated by its own board and directors. Altria has never appointed any directors to JLI's board and has never exercised any voting rights as a minority shareholder. Although Altria now owns 35% of JLI, stock ownership does not create grounds for RICO liability. *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (observing that it is a "basic tenet of American corporate law" that "the corporation and its shareholders are distinct entities"). And Plaintiffs' attempt in their amended complaints to create RICO liability for the Altria Defendants during this post-2018 period relies on the same recycled allegations that this Court has already rejected.

**Services.** Plaintiffs focus heavily on the 2019 retail and distribution services provided by the Altria Defendants to JLI and the 2019 JUUL advertisements they attached to certain brands of cigarettes or sent to smokers. Opp. at 33-35. The Court, however, already made clear that "[s]imply performing services for the enterprise . . . is not sufficient." 2020 WL 6271173, at *32 (citation omitted); *see also* Altria MTD at 15 (citing cases). Plaintiffs ignore the Court's ruling and the cases cited by the Altria Defendants. Plaintiffs also ignore the plain language in the Services Agreement under which those services were provided, even though Plaintiffs cited and thus incorporated by reference that agreement in their amended complaints. Altria MTD at 5-6 (citing agreement).

---

[5] Plaintiffs claim that "Altria withdrew its MarkTen line of e-cigarettes from the market not out of concern for the epidemic of youth nicotine addiction, but because it was a 'part of its deal' with JLI, which went public just two months later, in December 2018." Opp. at 14. For this claim, Plaintiffs cite paragraphs 638 to 641 of the amended complaint, which in turn cite the October 14, 2019 letter from Willard to Durbin and an earnings call. Neither document supports this claim. The call does not address this issue, and the letter states the exact opposite, that Altria removed pod-based products and certain flavored cig-a-likes "[i]n response to the youth issue" and ultimately "discontinued all MarkTen products for a variety of other reasons, including lack of profitability and technical and regulatory problems." Willard Letter to Durbin at 4 & n.3, October 14, 2019 (Reply Ex. 2).

The reason for Plaintiffs' silence is transparent: they have no response. It is clear that providing services to an enterprise does not create RICO liability. And it is equally clear that the distribution, retail, and advertising services provided by the Altria Defendants were just that — services. Plaintiffs need to allege facts that tend to show that the Altria Defendants were directing JLI. But their services-related allegations show the opposite: that JLI was the party who chose which services Altria would offer and that Altria had no ability to compel JLI to do anything. This is clear from the plain terms of the Services Agreement:

> During the applicable Term, [Altria] shall provide or caused to be provided, or shall cause one or more of its Subsidiaries to provide or cause to be provided, to [JLI] and its Subsidiaries, ***the Services [JLI] elects to purchase and receive*** pursuant to and in accordance with this Agreement. For the avoidance of doubt, [Altria] does not have an exclusive right to provide the Services to [JLI], and except as provided herein [JLI] is not obligated to purchase any particular types or quantities of the Services from [Altria] hereunder.

Services Agreement § 2.1 (Dec. 20, 2018) (emphasis added) (MTD Ex. 3).[6]

Moreover, contrary to what Plaintiffs claim, Altria providing services to JLI in 2019 was not "vital to the achievement of the enterprise's primary goal." Opp. at 34-35 (citation and quotation omitted). JLI existed, designed and introduced JUUL products, marketed those products, and achieved marketplace success long before the Altria Defendants provided any services. *See, e.g.* SAC ¶ 49 (alleging JLI had 40% market share in 2017); *id*. ¶ 82 (alleging JUUL's market share grew 70% in 2017 and included three quarters of the e-cigarette market by 2019). And long before Altria provided services to JLI in 2019, many of *these Plaintiffs* had already filed class action lawsuits against JLI based on the same conduct at issue here.[7]

---

[6] Plaintiffs attempt to connect the alleged services to youth marketing. Opp. at 32. Even if true, these are services and therefore would not support RICO liability under the Court's prior ruling. 2020 WL 6271173, at *32. But Plaintiffs' argument also ignore the nature of these services. The only advertisements disseminated by the Altria Defendants were provided to adult smokers, and the retail and distribution services were provided at locations with youth access restrictions. *See* Altria's May 29, 2020 MTD at 8.

[7] Plaintiffs also allege, based on three documents, that the Altria Defendants were involved in promoting mint products in a 2019 "market blitz." Opp. at 12. These allegations again describe services provided at JLI's request and direction and therefore do state a basis for RICO liability. But again, Plaintiffs do not depict these documents accurately. First, Plaintiffs cite an email thread in which a JLI employee refers to a "market blitz" involving the Altria Defendants' services, but

**Crosthwaite and Murillo.**  Plaintiffs also recycle allegations that Crosthwaite in 2019 was "an observer to JLI's Board" and became JLI's CEO in September 2019—*after* some of these plaintiffs had filed already RICO claims against the Altria Defendants— and Murillo subsequently became JLI's Chief Regulatory Officer—again, *after* these lawsuits had been filed.  Opp. at 33-34.  Plaintiffs' make no response to the Altria Motion's arguments concerning these allegations, Altria MTD at 17-18, nor could they.  Employees change companies all the time, including between companies that may have a relationship with each other.  Without more, this does not provide the basis for a RICO claim.

Indeed, even when officers or directors have positions with two companies *simultaneously*, courts decline to impute liability from one corporation to another.  *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (duplication of some or all of the directors or executive officers is not "fatal to principles of corporate separateness").  Plaintiffs concede that "JLI's Board, including Defendants Pritzker, Valani, Bowen, and Monsees" — and thus not Altria or anyone at Altria — "agreed to make Crosthwaite the CEO of JLI."  Opp. at 34; *see also, e.g.*, JLI01416851 at 19 (Reply Ex. 5) ("JLI's decision to offer Mr. Crosthwaite the CEO position was made solely by the voting members of the JLI Board, excluding Mr. Burns.") (cited by Plaintiffs at SAC ¶¶ 553, 555, 558).  And there is no allegation that shows either Crosthwaite or Murillo ever acted on Altria's behalf after they joined JLI.

Nor do Plaintiffs' allegations support their argument that "Altria was able to conduct the affairs of the Enterprise by virtue of its influence over JLI's Board . . . through private meetings with Defendants Pritzker and Valani that continued after the investment."  Opp. at 34 (citing SAC

---

nowhere in the thread does the word "mint" even appear.  SAC ¶ 576 (citing JLI01010641) (Reply Ex. 3).  Second, Plaintiffs cite an allegation in the SAC that "a March 18, 2019 AGDC presentation of its work to sell JUUL showed that it was pushing Mint more than Menthol and Virginia Tobacco combined."  SAC ¶ 577 (citing ALGAT0000772561) (MTD Ex. 9).  That document contains an image of a JUUL Labs order form for 7-11, but there is no indication in this presentation that the Altria Defendants designed this order form or took any other action to "push" mint products.  Third, Plaintiffs allege that "a senior executive communicate[d] with JLI's then–CEO, Kevin Burns, about fixing 'inventory constraint' involving mint 5% JUUL."  SAC ¶ 578 (citing JLI01392499, Reply Ex. 4).  But the cited email from Crosthwaite to Burns simply relays information about possible "inventory constraints" for five products, only one of which is a mint product, and does nothing showing control by Altria over JLI or that Altria was "promot[ing] mint."

¶¶ 556, 560-61). Plaintiffs cite three emails to support their allegations that Altria was directing JLI through "private meetings." SAC ¶¶ 556, 560-61 (citing ALGAT0000114034; ALGAT0003285214; ALGAT0003279064). But nothing in these emails shows Altria acting on JLI's behalf, directing JLI, or doing anything else that would support RICO claims against the Altria Defendants. In one email, dated January 16, 2019, Crosthwaite simply informs Willard that he is planning to have dinner with Valani and Pritzker. ALGAT0000114034 (Reply Ex. 6). In the second email, more than five months later, Pritzker simply asks Willard if he would have time to meet with him and Valani during an upcoming trip to Washington, D.C. ALGAT0003285214 (Reply Ex. 7). Finally, in the third email, dated July 9, 2019, Willard sends his opinions on a proposed youth vaping prevention plan, but far from directing JLI, he begins his email by telling Burns to take his opinion "[f]or what its worth." ALGAT0003279064 (Reply Ex. 8). And contrary to Plaintiffs' claims that direction was achieved through private meetings with Valani and Pritzker, this email was sent to JLI's former CEO Burns, who is not a member of the alleged JLI enterprise.[8] And once again, Plaintiffs do not identify any actions that JLI took as a result of these communications.

**Internal statements about goals and initiatives.** Plaintiffs attempt to save their RICO claims by pulling a handful of forward-looking statements from internal Altria documents from 2019. In particular, citing allegations in their amended complaints, Plaintiffs argue that "Altria's

---

[8] Plaintiffs' reliance on *Cellco P'ship v. Hope*, 2012 WL 260032, at *9 (D. Ariz. Jan. 30, 2012), *on reconsideration in part*, 2012 WL 715309 (D. Ariz. Mar. 6, 2012), is misplaced. Plaintiffs claim that the court in *Cellco* found that "participating in meetings discussing actions essential to the scheme can satisfy the *Reves* test." Opp. at 29. Plaintiffs, however, do not allege that the Altria Defendants participated in meetings "essential" to the enterprise or alleged scheme given both pre-date Altria's alleged involvement with JLI. *See supra* at 11. Moreover, the *Cellco* defendants' alleged role was far more involved in, and essential to, the enterprise than any alleged involvement by the Altria Defendants. In *Cellco*, the individual defendants were contact persons for the silo companies through which the schemes operated, participated in meetings discussing the formation of these silo companies and the central components of the alleged fraud, and played other roles developing essential components of the enterprise and fraud. *See id.* at *9 (noting defendants allegedly were "designated . . . to lease the short codes from the CTIA and activate short code campaigns on the Verizon Wireless network," "participated in a meeting . . . to discuss setting up the 'silo' companies, the use of URLs, and the concealment of these URLs from Verizon," "were involved in discussions regarding the development of cloaking software," and "tested the software and knew it would deflect Verizon's auditors").

goal" was to "influence" and "guide" JLI and that Altria "wanted to ensure it could guide [JLI's] strategic directions" and "be viewed as more than a vendor." Opp. at 33 (citing SAC ¶¶ 555, 587, 589) (quotations omitted).

These arguments and allegations refer to possible *future* actions, as confirmed by the documents cited by Plaintiffs when making these allegations. Aspiring to achieve something in the future demonstrates that it does not exist in the present. For example, Plaintiffs cite a 2019 internal presentation by Altria Group Distribution Company. SAC ¶ 587. But that presentation makes clear that the current relationship was *not* a "strategic partnership"; instead, the purported "strategic partnership" referred to by Plaintiffs was a "goal" described as part of a "long-term proposal." ALGAT0000772561 (MTD Ex. 9). Likewise, Plaintiffs cite an email and presentation that identifies strategic initiatives for 2019. SAC ¶¶ 557, 587 (citing ALGAT0002856951; ALGAT0000772561). But these documents use the *future* tense when referring to "strategic guidance" suggesting it was something the Altria Defendants might provide, if at all, in the future. *See* ALGAT0002856951 (Reply Ex. 9); ALGAT0000772561 (MTD Ex. 9). They do not reflect any guidance actually being provided or even elucidate what this "guidance" would entail. ALGAT0002856951 (Ex. 9); ALGAT0000772561 (MTD Ex. 9); *see also* ALGAT0004641801 (Reply Ex. 10) (cited in SAC ¶ 589) (April 2019 internal presentation similarly referring to "strategic initiatives" that had not yet occurred and thus do not show direction of JLI).

In short, Plaintiffs' claims concerning "goals" and possible future actions that were purportedly discussed internally by the Altria Defendants do not reflect the relationship between Altria and JLI at the time statements were made. To the contrary, the existence of "goals" and "wanting" to do something in the future indicates that those things were *not* true at the time the statement was made and therefore refute Plaintiffs' claims. Nor do Plaintiffs provide any factual allegations showing these goals were even accomplished. Accordingly, these allegations and arguments also fail to plead a RICO claim against the Altria Defendants.

**CONCLUSION**

For the foregoing reasons, and those set forth in the Altria Defendants' opening motion, the Court should dismiss the class plaintiffs' claims under RICO against the Altria Defendants and the RICO claims brought against the Altria Defendants by the seven government entities.[9]

Dated: February 24, 2021

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ John C. Massaro
John C. Massaro (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
Paul W. Rodney (*admitted pro hac vice*)
Lauren S. Wulfe (SBN 287592)

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, ALTRIA GROUP DISTRIBUTION COMPANY, and ALTRIA ENTERPRISES LLC

---

[9] Plaintiffs voluntarily dismissed their UCL claims against the Altria Defendants after the Altria Defendants filed their motion to dismiss. *See* Stipulation and [Proposed] Order Regarding Opp. Mem. Page Limits at 2 n.1, ECF 1352 (Feb. 1, 2021). Accordingly, this reply brief does not address those claims.

# CERTIFICATE OF SERVICE

I, Lauren S. Wulfe, hereby certify that on the 24th day of February, 2021, I electronically filed the foregoing **ALTRIA DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' UCL AND RICO CLAIMS AGAINST THE ALTRIA DEFENDANTS FROM PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND THE SEVEN GOVERNMENT AMENDED COMPLAINTS** with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notifications to all counsel of record.

By:   */s/ Lauren S. Wulfe*

Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
lauren.wulfe@arnoldporter.com