Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
Lauren.Wulfe@arnoldporter.com

John C. Massaro (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999
John.Massaro@arnoldporter.com
Jason.Ross@arnoldporter.com
David.Kouba@arnoldporter.com

Paul W. Rodney (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
1144 15th Street, Suite 3100
Denver, CO 80202
Telephone: 303-863-1000
Facsimile: 303-832-0428
paul.rodney@arnoldporter.com

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, ALTRIA GROUP DISTRIBUTION COMPANY, and ALTRIA ENTERPRISES LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

---

This Document Relates to:

*G.F. v. JUUL Labs, Inc., et al.*
*Jayme Westfaul v. JUUL Labs, Inc., et al.*
*Roberto Pesce v. JUUL Labs, Inc., et al.*
*Kristof Rest v. JUUL Labs, Inc., et al.*
*Mason Edwards v. JUUL Labs, Inc., et al.*
*D.H. v. JUUL Labs, Inc., et al.*
[continued on next page]

Case No.: 19-MD-02913-WHO

**ALTRIA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CLAIMS OF THE BELLWETHER PLAINTIFFS AGAINST THE ALTRIA DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. William H. Orrick
Date: *[to be scheduled]*
Time: *[to be scheduled]*
Ctrm: 2

*Bain v. JUUL Labs, Inc., et al.*
*Dramis v. JUUL Labs, Inc., et al.*
*Mangham v. JUUL Labs, Inc., et al.*
*Bagley v. JUUL Labs, Inc., et al.*
*Gregg v. JUUL Labs, Inc., et al.*
*Keffer v. JUUL Labs, Inc., et al.*
*Arnett v. JUUL Labs, Inc., et al.*
*Fish v. JUUL Labs, Inc., et al.*
*J.L.K. v. JUUL Labs, Inc., et al.*
*Barnes v. JUUL Labs, Inc., et al.*
*Widergren v. JUUL Labs, Inc., et al.*
*Wong v. JUUL Labs, Inc., et al.*
*Fairess v. JUUL Labs, Inc., et al.*
*Rosenfield v. JUUL Labs, Inc., et al.*

**PLEASE TAKE NOTICE** that, on a date to be set by the Court, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria Group Distribution Company, and Altria Enterprises LLC (the "Altria Defendants") will and hereby do move the Court for an order dismissing the claims against the Altria Defendants brought by the plaintiffs in the twenty above-captioned cases, which have been selected as bellwether cases and name the Altria Defendants, as set forth in the accompanying Memorandum, and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(2) and (6). In light of the Court's orders regarding phased motion practice, the Altria Defendants do not waive other Rule 12(b) defenses to these or any other complaints in this MDL by not asserting those defenses by this Motion. This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, Appendix A, any Reply Memorandum, the pleadings and files in this MDL, and such other matters as may be presented at or before the hearing.

Dated: March 2, 2021

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ John C. Massaro*
John C. Massaro (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
Paul W. Rodney (*admitted pro hac vice*)
Lauren S. Wulfe (SBN 287592)

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, ALTRIA GROUP DISTRIBUTION COMPANY, and ALTRIA ENTERPRISES LLC

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. ALLEGATIONS AGAINST THE ALTRIA DEFENDANTS ..... 3

II. PLAINTIFFS AND THEIR CAUSES OF ACTION ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 7

I. PLAINTIFFS' CLAIMS AGAINST THE ALTRIA DEFENDANTS FAIL FOR LACK OF PERSONAL JURISDICTION ..... 7

II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ALTRIA DEFENDANTS ..... 9

A. The Court Should Dismiss The Claims Against The Altria Defendants Because Plaintiffs Fail To Allege Causation Against Them ..... 9

1. Each Plaintiff's Claims Require Allegations That The Altria Defendants Caused His Or Her Injury ..... 10

2. Plaintiffs Fail To Allege Causation Against The Altria Defendants ..... 17

B. Several Plaintiffs Bring Claims That Are Barred By The Products Liability Act In Their State Of Residence ..... 21

C. Plaintiffs Fail To State A Claim Against The Altria Defendants For Additional, Claim-Specific Reasons ..... 25

1. Plaintiffs Fail To Allege Fraudulent Conduct By The Altria Defendants As Necessary For Their Fraud And Fraudulent Concealment Claims ..... 25

2. Plaintiffs Fail To Allege A Negligent Misrepresentation By The Altria Defendants ..... 30

3. Plaintiffs Fail To State Breach Of Express Warranty Claims ..... 31

4. Plaintiffs Fail To State Strict Liability Claims Against The Altria Defendants ..... 34

a. Eight Plaintiffs Allege Residency In States That Do Not Allow Strict Liability Claims Against Non-Manufacturer And Non-Seller Defendants ..... 34

b. The Remaining Plaintiffs Do Not State A Claim For Strict Liability Based On Distribution Services ..... 38

5. Plaintiffs Fail To State Claims For Negligence And Gross Negligence Against The Altria Defendants ....................41

6. Plaintiffs Fail To State Consumer Fraud Act Claims ....................45

7. Plaintiffs Fail To State A Claim Based On Negligent Failure to Warn ....................47

8. Plaintiffs Edwards And Mangham Fail To State A Breach Of Implied Warranty Claim Against The Altria Defendants ....................48

9. Plaintiffs Fail To State A Claim For Intentional Infliction Of Emotional Distress And Outrage Against The Altria Defendants ....................49

10. Plaintiffs' Unjust Enrichment Claims Fail As A Matter Of Law ....................49

11. Plaintiffs' Medical Monitoring Claims Fail As A Matter Of Law ....................51

12. Plaintiffs' Conspiracy Claims Against The Altria Defendants Fail As A Matter Of Law ....................52

13. Plaintiff Keffer's Wrongful Death, Survival, And Loss Of Consortium Claims Against The Altria Defendants Fail As A Matter Of Law ....................55

CONCLUSION ....................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*900 Unlimited, Inc. v. MCI Telecommunications Corp.*, 626 N.Y.S.2d 188 (1995) ........ 28

*Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585 (N.Y. App. Div. 2010) ........ 52

*Abdel-Samed v. Dailey*, 755 S.E.2d 805 (Ga. 2014) ........ 45

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ........ 7

*Aguila v. Hilton, Inc.*, 878 So. 2d 393 (Fla. Dist. Ct. App. 2004) ........ 42

*Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641 (N.D. Cal. 2019) ........ 12, 46

*Allen v. Steele*, 252 P.3d 476 (Colo. 2011) ........ 11

*Almy v. Grisham*, 639 S.E.2d 182 (Va. 2007) ........ 17

*Alston v. Miss. Dep't of Employment Sec.*, 300 So. 3d 543 (Miss. Ct. App. 2020) ........ 16, 49

*Am. Express Bank, FSB v. Martin*, 200 A.3d 87 (Pa. Super. Ct. 2018) ........ 12, 46

*Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018) ........ 12, 46

*Ankers v. Dist. Sch. Bd. of Pasco Cty.*, 406 So. 2d 72 (Fla. Dist. Ct. App. 1981) ........ 41

*Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493 (Ark. 2020) ........ 41

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502 (Fla. Dist. Ct. App. 2017) ........ 11, 30

*Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245 (M.D. Fla. 2015) ........ 13, 32

*Arno v. Club Med Inc.*,
22 F.3d 1464 (9th Cir. 1994)......21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......6

*In re Auto. Refinishing Paint Antitrust Litig.*,
358 F.3d 288 (3d Cir. 2004)......7

*B.L. v. Schuhmann*,
380 F. Supp. 3d 614 (W.D. Ky. 2019)......49

*Babb v. Regal Marine Indus., Inc.*,
2014 WL 690154 (Wash. App. Feb. 20, 2014), *rev. granted, cause remanded*,
329 P.3d 67 (Wash. 2014)......13, 32

*Baker v. Promark Prods. W., Inc.*,
692 S.W.2d 844 (Tenn. 1985)......35

*Baker v. Wood, Ris & Hames, Prof'l Corp.*,
364 P.3d 872 (Colo. 2016)......25

*Baranco v. Ford Motor Co.*,
294 F. Supp. 3d 950 (N.D. Cal. 2018)......12, 46

*Bayer Corp. v. Leach*,
153 N.E.3d 1168 (Ind. Ct. App. 2020)......24, 35

*Bd. of Trustees of Purdue Univ. v. Eisenstein*,
87 N.E.3d 481 (Ind. Ct. App. 2017)......52

*Belden Inc. v. Am. Elec. Components, Inc.*,
885 N.E.2d 751 (Ind. Ct. App. 2008)......13, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......6, 54, 55

*Bem v. Stryker Corp.*,
2015 WL 6089819 (N.D. Cal. Oct. 16, 2015)......13

*Benoit v. Milwaukee Elec. Tool Corp.*,
2008 WL 11350278 (M.D. La. Aug. 4, 2008)......37

*Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, L.L.C.*,
2006 WL 3059951 (Wash. Ct. App. Oct. 23, 2006)......33

*Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*,
446 F. Supp. 3d 258 (M.D. Tenn. 2020)......12, 46

*Bloskas v. Murray*, 646 P.2d 907 (Colo. 1982) .......... 11

*Blouin v. Johnson & Johnson*, 2017 WL 4969345 (S.D. Miss. Nov. 1, 2017) .......... 47

*Bolger v. Amazon.com LLC*, 267 Cal. Rptr. 3d 601 (Ct. App. 2020) .......... 39

*Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007) .......... 26

*Bortz v. Noon*, 729 A.2d 555 (Pa. 1999) .......... 12, 31

*Boryla v. Pash*, 960 P.2d 123 (Colo. 1998) .......... 16

*Bottom v. Bailey*, 767 S.E.2d 883 (N.C. Ct. App. 2014) .......... 15, 41

*Boud v. SDNCO, Inc.*, 54 P.3d 1131 (Utah 2002) .......... 33

*Boyanton v. Bros. Produce, Inc.*, 2020 WL 5249589 (Miss. Ct. App. Sept. 1, 2020) .......... 25

*Bradix v. Advance Stores Co.*, 226 So. 3d 523 (La. Ct. App. 2017) .......... 44

*Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331 (Miss. Ct. App. 2013) .......... 52

*Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445 (Ga. Ct. App. 1985) .......... 16, 49

*Brinkman v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40 (N.C. 2003) .......... 31

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) .......... 1, 7, 8, 9

*Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237 (Ky. Ct. App. 2007) .......... 13

*Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62 (Tenn. 2001) .......... 10

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) .......... 47

*Bufkin v. Felipe's La., LLC*,
171 So. 3d 851 (La. 2014) ..... 14, 41

*Bugge v. Far W. Fed. Bank, S.B.*,
785 P.2d 1058 (Or. Ct. App. 1990) ..... 54

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ..... 8

*Butler Am., LLC v. Aviation Assurance Co.*,
269 Cal. Rptr. 3d 284 (Ct. App. 2020) ..... 26

*Bylsma v. R.C. Willey*,
416 P.3d 595 (Utah 2017) ..... 38

*Cadlo v. Owens-Illinois, Inc.*,
23 Cal. Rptr. 3d 1 (Ct. App. 2004) ..... 40

*Calzone v. Costco, Inc.*,
2011 WL 1168601 (Conn. Super. Ct. Feb. 23, 2011) ..... 23

*Cameron v. Harshbarger*,
998 P.2d 221 (Or. Ct. App. 2000) ..... 31

*Carlson v. Town of S. Kingstown*,
131 A.3d 705 (R.I. 2016) ..... 15, 41

*Caronia v. Philip Morris USA, Inc.*,
5 N.E.3d 11 (N.Y. 2013) ..... 51

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) ..... 9

*Castro v. Budget Rent-A-Car Sys., Inc.*,
65 Cal. Rptr. 3d 430 (Ct. App. 2007) ..... 21

*Celtig, LLC v. Patey*,
347 F. Supp. 3d 976 (D. Utah 2018) ..... 54

*Chandler v. Wal-Mart Stores Inc.*,
498 S.W.3d 766 (Ark. Ct. App. 2016) ..... 15, 48

*Chapital v. Harry Kelleher & Co., Inc.*,
144 So. 3d 75 (La. 2014) ..... 10

*Chen v. Los Angeles Truck Ctrs., LLC*,
42 Cal. App. 5th 488 (2019) ..... 21

*City of Alexander v. Doss*,
284 S.W.3d 74 (Ark. Ct. App. 2008) ..... 50

*City of Rome v. Glanton*,
958 F. Supp. 1026 (E.D. Pa.), *aff'd sub nom. City of Rome, Italy v. Glanton*, 133 F.3d 909 (3d Cir. 1997)....................28

*Clement v. Ecolab, Inc.*,
341 F. Supp. 3d 1205 (D. Or. 2018)....................15, 41

*Clemons v. Delta Airlines, Inc.*,
790 S.E.2d 814 (Ga. Ct. App. 2016)....................25

*Coffey v. Coffey*,
2020 WL 6277433 (Tenn. Ct. App. Oct. 26, 2020)....................26, 28

*Coffman v. Armstrong Int'l, Inc.*,
2021 WL 22180 (Tenn. Jan. 4, 2021)....................22

*Coleman v. DePuy Synthes Sales, Inc.*,
2018 WL 1811556 (M.D. Tenn. Apr. 17, 2018)....................22

*Colgate v. JUUL Labs, Inc.*,
345 F. Supp. 3d 1178 (N.D. Cal. 2018)....................12, 18, 25

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019)....................17, 18

*Combs & Assocs., Inc. v. Kennedy*,
555 S.E.2d 634 (N.C. Ct. App. 2001)....................54

*Compunnel Software Grp., Inc. v. Spectrasoft Techs., Inc.*,
21 Misc. 3d 1129(A), 873 N.Y.S.2d 510 (Civ. Ct. 2008)....................50

*Coppola Const. Co. v. Hoffman Enters. Ltd. P'ship*,
71 A.3d 480 (Conn. 2013)....................11

*Corbit v. J. I. Case Co.*,
424 P.2d 290 (Wash. 1967)....................54

*Corvello v. New England Gas Co.*,
460 F. Supp. 2d 314 (D.R.I. 2006)....................44

*Cote v. Aiello*,
148 A.3d 537 (R.I. 2016)....................50

*Cotton v. Wilson*,
576 S.W. 3d 626 (Tenn. 2019)....................15, 41

*Crescent Univ. City Venture, LLC v. AP Atl., Inc.*,
2019 WL 3765313 (N.C. Super. Aug. 8, 2019)....................33

*Crews v. W.A. Brown & Son, Inc.*,
416 S.E.2d 924 (N.C. Ct. App. 1992)....................13

*Cromwell v. A & S Constr., Inc.*,
314 P.3d 1008 (Utah Ct. App. 2013) ........................................................................ 43

*Cruz v. DaimlerChrysler Motors Corp.*,
66 A.3d 446 (R.I. 2013) ........................................................................ 12, 30

*Cumming v. Nipping*,
395 P.3d 928 (Or. Ct. App. 2017) ........................................................................ 50

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................ 7

*Davenport v. Cummins Ala., Inc.*,
644 S.E.2d 503 (Ga. Ct. App. 2007) ........................................................................ 35

*In re Deep Vein Thrombosis*,
356 F. Supp. 2d 1055 (N.D. Cal. 2005) ........................................................................ 43

*Estate of DeMoss v. Eli Lilly & Co.*,
234 F. Supp. 3d 873 (W.D. Ky. 2017) ........................................................................ 48

*Dixon v. Chrisco*,
2018 WL 4275535 (Tenn. Ct. App. Sept. 7, 2018) ........................................................................ 26, 28

*Doe v. Baum*,
72 S.W.3d 476 (Ark. 2002) ........................................................................ 45

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ........................................................................ 52

*Duran v. Sw. Ark. Elec. Coop. Corp.*,
537 S.W.3d 722 (Ark. 2018) ........................................................................ 14, 41

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*,
79 So. 3d 855 (Fla. Dist. Ct. App. 2012) ........................................................................ 52

*Eberhart v. Amazon.com, Inc.*,
325 F. Supp. 3d 393 (S.D.N.Y. 2018) ........................................................................ 39

*Echostar Satellite Corp. v. Ultraview Satellite, Inc.*,
2009 WL 1011204 (D. Colo. Apr. 15, 2009) ........................................................................ 25, 26, 28

*Edwards v. A.L. Lease & Co.*,
46 Cal. App. 4th 1029 (1996) ........................................................................ 14, 40

*Elliott v. El Paso Corp.*,
181 So. 3d 263 (Miss. 2015) ........................................................................ 24, 36, 37

*Elsner v. Uveges*,
102 P.3d 915 (Cal. 2004) ........................................................................ 43

*Erie Ins. Co. v. Amazon.com, Inc.*,
925 F.3d 135 (4th Cir. 2019)....................38

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
910 N.E. 2d 976 (N.Y. App. 2009)....................11

*Evershine Prod., Inc. v. Schmitt*,
202 S.E.2d 228 (Ga. Ct. App. 1973)....................33

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011)....................6

*Fidrych v. Inskip Motors, Inc.*,
1982 WL 604065 (R.I. Super. Ct. Jan. 6, 1982)....................13, 32

*Financial Assistance, Inc. v. Graham*,
2021 WL 710728 (N.Y. App. Div. Feb. 24, 2021)....................50

*First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*,
489 S.W.3d 369 (Tenn. 2015)....................52, 53

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)....................9

*Flores v. Youm*,
133 N.Y.S.3d 786 (N.Y. Sup. Ct. 2020)....................13

*Fogarty v. Palumbo*,
163 A.3d 526 (R.I. 2017)....................25

*In re Fontem US, Inc. Consumer Class Action Litig.*,
2016 WL 11503066 (C.D. Cal. Apr. 22, 2016)....................27

*Francis v. GRT Utilicorp, Inc.*,
2013 WL 12203815 (W.D. La. Feb. 8, 2013)....................12, 46

*Fulmer v. Follis*,
2018 WL 6721248 (Tenn. Ct. App. Dec. 20, 2018)....................25

*Fulmer v. Timber Inn Rest. & Lounge*,
954 P.2d 201 (Or. Ct. App. 1998), *aff'd in part, rev'd in part sub nom. Fulmer v. Timber Inn Rest. & Lounge, Inc.*, 9 P.3d 710 (Or. 2000)....................55

*Fusco v. Uber Techs., Inc.*,
2018 WL 3618232 (E.D. Pa. July 27, 2018)....................27

*Gallagher Bassett Servs., Inc. v. Jeffcoat*,
887 So. 2d 777 (Miss. 2004)....................52

*Gardner v. First Escrow Corp.*,
696 P.2d 1172 (Or. Ct. App. 1985)....................28

*Gaston v. PBI Gordon Corp.*,
2014 WL 4114324 (M.D.N.C. Aug. 20, 2014) ........ 11

*Gauvin v. Trombatore*,
682 F. Supp. 1067 (N.D. Cal. 1988) ........ 6

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018) ........ 12, 46

*Gentry v. Noe*,
545 S.W.3d 323 (Ky. Ct. App. 2018) ........ 28

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*,
348 S.W.3d 729 (Ky. 2011) ........ 25, 26

*Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemn. Fund*,
82 A.3d 485 (Pa. Commw. Ct. 2013) ........ 26, 28

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) ........ 12, 46

*Gomez-Jimenez v. New York Law Sch.*,
956 N.Y.S.2d 54 (N.Y. Ct. App. 2012) ........ 25, 26

*Gonzalez v. Johnson*,
581 S.W.3d 529 (Ky. 2019) ........ 14, 41

*Greenway Equip., Inc. v. Johnson*,
602 S.W.3d 142 (Ark. Ct. App. 2020) ........ 13, 32

*Hadami, S.A. v. Xerox Corp.*,
272 F. Supp. 3d 587 (S.D.N.Y. 2017) ........ 44

*Hall v. Walter*,
969 P.2d 224 (Colo. 1998) ........ 12, 46

*Hamill v. Cheley Colo. Camps, Inc.*,
262 P.3d 945 (Colo. Ct. App. 2011) ........ 45

*Hamilton v. Beretta U.S.A. Corp.*,
750 N.E.2d 1055 (N.Y. 2001) ........ 15, 41

*Handfield v. Howell*,
2020 WL 691550 (Pa. Super. Ct. Feb. 11, 2020) ........ 11, 25

*Hansen v. Mountain Fuel Supply Co.*,
858 P.2d 970 (Utah 1993) ........ 16, 51

*Harbour Point Homeowners' Ass'n v. DJF Enters.*,
697 S.E.2d 439 (N.C. Ct. App. 2010) ........ 13

*Harp v. King*,
835 A.2d 953 (Conn. 2003)....................52

*Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation*,
416 P.3d 401 (Utah 2017)....................52

*Henderson v. Freightliner, LLC*,
2005 WL 775929 (S.D. Ind. Mar. 24, 2005)....................24

*Heritage Operating, L.P. v. Mauck*,
37 N.E.3d 514 (Ind. Ct. App. 2015)....................48

*Higgins v. Ferrari*,
474 S.W.3d 630 (Mo. Ct. App. 2015)....................52

*Hoffmann-La Roche Inc. v. Mason*,
27 So. 3d 75 (Fla. Dist. Ct. App. 2009)....................14

*Hollenbeck v. Ramset Fasteners, Inc.*,
148 S.E.2d 287 (N.C. 1966)....................33

*Hooked Media Grp., Inc. v. Apple Inc.*,
2020 WL 5848363 (Cal. Ct. App. May 28, 2020)....................25

*House v. Armour of Am., Inc.*,
929 P.2d 340 (Utah 1996)....................14

*Humana of Ky., Inc. v. Seitz*,
796 S.W.2d 1 (Ky. 1990)....................16, 49

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000)....................12

*Hymowitz v. Eli Lilly & Co.*,
539 N.E.2d 1069 (N.Y. 1989)....................40

*Int'l Serv. Ins. Co. v. Gonzales*,
239 Cal. Rptr. 341 (Ct. App.1987)....................10

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)....................8

*Intergraph Corp. v. Stearman*,
555 So. 2d 1282 (Fla. Dist. Ct. App. 1990)....................13

*IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.*,
779 F.3d 744 (8th Cir. 2015)....................44

*Irwin v. Miami-Dade Cty. Pub. Sch.*,
2009 WL 497652 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 503 (11th Cir. 2010)....................44

*J.A.O. Acquisition Corp. v. Stavitsky*,
863 N.E.2d 585 (N.Y. 2007) ............ 12, 31

*James v. Wilson*,
95 S.W.3d 875 (Ky. Ct. App. 2002) ............ 52

*Jefferson v. Lead Indus. Ass'n, Inc.*,
106 F.3d 1245 (5th Cir. 1997) ............ 24

*Jenkins v. Wachovia Bank, Nat. Ass'n*,
711 S.E.2d 80 (Ga. Ct. App. 2011) ............ 52

*Jensen v. IHC Hosps., Inc.*,
944 P.2d 327 (Utah 1997) ............ 26, 28

*Jim Barna Log Sys. Midwest, Inc., v. Gen. Cas. Ins. Co.*,
791 N.E.2d 816 (Ind. Ct. App. 2003) ............ 11

*Jimenez v. 24 Hour Fitness USA, Inc.*,
188 Cal. Rptr. 3d 228 (Ct. App. 2015) ............ 44

*Jimenez v. DaimlerChrysler Corp.*,
269 F.3d 439 (4th Cir. 2001) ............ 12

*John B. v. Superior Court*,
137 P.3d 153 (Cal. 2006) ............ 15, 41, 43

*Johnson v. Davis*,
480 So. 2d 625 (Fla. 1985) ............ 25

*Johnston v. Water Sausage Corp.*,
733 P.2d 59 (Or. Ct. App. 1987) ............ 35

*Jones v. Brush Wellman, Inc.*,
2000 WL 33727733 (N.D. Ohio Sept. 13, 2000) ............ 51

*In re JUUL Labs, Inc. Mktg., Sales Pratices, and Products Liab. Litig.*,
2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ............ *passim*

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............ 6

*Keller v. City of Spokane*,
44 P.3d 845 (Wash. 2002) ............ 15, 41

*Kesling v. Hubler Nissan, Inc.*,
997 N.E.2d 327 (Ind. 2013) ............ 10

*Klein v. Metro. Child Servs., Inc.*,
100 A.D.3d 708, 954 N.Y.S.2d 559 (2012) ............ 49

*Kroger Co. v. Knox*,
98 So. 3d 441 (Miss. 2012) .......... 15, 41

*L.A. Fitness Int'l, LLC v. Mayer*,
980 So. 2d 550 (Fla. Dist. Ct. App. 2008) .......... 43

*Lafontaine v. Alexander*,
808 S.E.2d 50 (Ga. Ct. App. 2017) .......... 30

*Landstar Inway Inc. v. Samrow*,
325 P.3d 327 (Wash. Ct. App. 2014) .......... 25, 26, 28

*Lane v. Becker*,
334 S.W.3d 756 (Tenn. Ct. App. 2010) .......... 52

*Larrison v. Moving Floors, Inc.*,
873 P.2d 1092 (Or. Ct. App. 1994) .......... 13, 32

*Lawrence v. First Fin. Inv. Fund V, LLC*,
336 F.R.D. 366 (D. Utah 2020) .......... 12, 46

*Laws v. Water & Light Comm'n, Town of Greeneville*,
2003 WL 22071548 (Tenn. Ct. App. Sept. 3, 2003) .......... 48

*Lawson v. Honeywell Int'l, Inc.*,
75 So. 3d 1024 (Miss. 2011) .......... 36

*Lee v. C & P Serv. Corp.*,
363 So. 2d 586 (Fla. Dist. Ct. App. 1978) .......... 32

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......... 7, 9

*Libby Hill Seafood Rests., Inc. v. Owens*,
303 S.E.2d 565 (N.C. Ct. App. 1983) .......... 32

*Linebaugh v. Gibson*,
471 P.3d 835 (Utah Ct. App. 2020) .......... 16, 49

*Lipinski v. Beazer E., Inc.*,
2005 WL 3955773 (Conn. Com. Pl. Oct. 18, 2005) .......... 16

*Little v. PPG Indus., Inc.*,
579 P.2d 940 (Wash. Ct. App. 1978), *modified*, 594 P.2d 911 (Wash. 1979) .......... 14

*Lockheed Martin Corp. v. Superior Court*,
131 Cal. Rptr. 2d 1 (Ct. App. 2003) .......... 51

*Logan v. W. Coast Benson Hotel*,
981 F. Supp. 1301 (D. Or. 1997) .......... 44

*N.M. ex rel. Lopez v. Trujillo*,
397 P.3d 370 (Colo. 2017) .......... 15, 41

*Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*,
233 Cal. App. 4th 803 (2015) .......... 28

*Loveland Essential Grp., LLC v. Grommon Farms, Inc.*,
251 P.3d 1109 (Colo. App. 2010) .......... 11

*Luciano v. World-Wide Volkswagen Corp.*,
514 N.Y.S.2d 140 (N.Y. App. Div. 1987) .......... 33, 34

*Mabus v. St. James Episcopal Church*,
13 So. 3d 260 (Miss. 2009) .......... 26, 28, 29

*Macias v. Saberhagen Holdings, Inc.*,
282 P.3d 1069 (Wash. 2012) .......... 36

*Magpali v. Farmers Grp., Inc.*,
55 Cal. Rptr. 2d 225 (Ct. App. 1996) .......... 11

*Magri v. Jazz Casino Co.*,
275 So. 3d 352 (4th Cir. 2019) .......... 43

*Marlar v. Daniel*,
247 S.W.3d (Ark. 2007) .......... 43

*Marroquin v. Pfizer, Inc.*,
367 F. Supp. 3d 1152 (E.D. Cal. 2019) .......... 31

*Mason v. Mt. St. Joseph, Inc.*,
203 P.3d 329 (Or. Ct. App. 2009) .......... 35

*Maya v. Johnson & Johnson*,
97 A.3d 1203 (Pa. 2014) .......... 15

*Mayer v. Angus*,
83 So. 3d 444 (Miss. Ct. App. 2012) .......... 50

*Maynard v. Snapchat, Inc.*,
851 S.E.2d 128 (Ga. Ct. App. 2020) .......... 42

*Mayorga v. Costco Wholesale Corp.*,
2007 WL 204017 (D. Or. Jan. 24, 2007) .......... 48

*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013) .......... 28

*McCain v. Fla. Power Corp.*,
593 So. 2d 500 (Fla. 1992) .......... 41

*McCann v. Foster Wheeler LLC*,
225 P.3d 516 (Cal. 2010) ..... 21

*Megenity v. Dunn*,
68 N.E.3d 1080 (Ind. 2017) ..... 14, 41

*Merrell v. Smith*,
2020 WL 7641053 (N.C. Super. Dec. 22, 2020) ..... 28, 29

*Merriman v. Am. Guarantee & Liab. Ins. Co.*,
396 P.3d 351 (Wash. 2017) ..... 11, 30

*MIIX Ins. Co. v. Epstein*,
937 A.2d 469 (Pa. 2007) ..... 15

*Moore-Davis Motors, Inc. v. Joyner*,
252 Ga. App. 617 (2001) ..... 45

*Morasch v. Hood*,
222 P.3d 1125 (Or. App. 2009) ..... 52

*Morris v. Knopick*,
521 S.W.3d 495 (Ark. Ct. App. 2017) ..... 10

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*,
374 S.E.2d 385 (N.C. 1988) ..... 11

*Nat. Credit Union Admin. Bd. v. Regine*,
795 F. Supp. 59 (D.R.I.1992) ..... 11

*Neibert v. Perdomo*,
54 N.E.3d 1046 (Ind. 2016) ..... 50

*Nemes v. Dick's Sporting Goods, Inc., & Barnett Outdoors, LLC.*,
2021 WL 739032 (S.D.N.Y. Feb. 23, 2021) ..... 15

*Nieves v. Cirmo*,
787 A.2d 650 (Conn. Ct. App. 2002) ..... 48

*Nobles v. Akinwande*,
125 N.Y.S.3d 534 (N.Y. Civ. Ct. 2020) ..... 48

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
254 P.3d 835 (Wash. Ct. App. 2011) ..... 50

*Offshore Rental Co., Inc. v. Cont'l Oil Co.*,
583 P.3d 721 (Cal. 1978) ..... 21

*Oksenholt v. Lederle Labs., a Div. of Am. Cyanamid Corp.*,
656 P.2d 293 (Or. 1982) ..... 25

*Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999) ..... 45

*Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969 (N.D. Cal. 2019) ..... 6, 31

*Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900 (N.D. Cal. 2011) ..... 6

*Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290 (N.D. Ga. 2005), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007) ..... 51

*Parkinson v. Novartis Pharm. Corp.*, 5 F. Supp. 3d 1265 (D. Or. 2014) ..... 15

*Parrillo v. Giroux Co.*, 426 A.2d 1313 (R.I. 1981) ..... 38

*Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1996) ..... 50

*Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1 (Miss. 2007) ..... 51

*Pearson v. Philip Morris, Inc.*, 361 P.3d 3 (Or. 2015) ..... 12, 46

*Pellham v. Let's Go Tubing, Inc.*, 398 P.3d 1205 (Wash. Ct. App. 2017) ..... 48

*Phillips v. A-Best Prods. Co.*, 665 A.2d 1167 (Pa. 1995) ..... 14

*Phillips v. Apple Inc.*, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ..... 19

*Philpott v. A.H. Robins Co.*, 710 F.2d 1422 (9th Cir. 1983) ..... 34

*Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 712 S.E.2d 328 (N.C. Ct. App. 2011) ..... 52

*Presnell Constr. Mgrs., Inc. v. EH Constr., LLC*, 134 S.W.3d 575 (Ky. 2004) ..... 12

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55 (Utah 1986) ..... 12

*Priority Hosp. Grp., Inc. v. Manning*, 2020 WL 5648530 (La. Ct. App. Sept. 23, 2020) ..... 28

*Puttuck v. Gendron*,
199 P.3d 971 (Utah Ct. App 2008) ........ 52

*Quintana v. B. Braun Med. Inc.*,
2018 WL 3559091 (S.D.N.Y. July 24, 2018) ........ 12, 46, 47

*Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.*,
772 A.2d 1056 (R.I. 2001) ........ 14

*Ranza v. Nike*,
793 F.3d 1059 (9th Cir. 2015) ........ 7

*Rasnick v. Krishna Hosp., Inc.*,
713 S.E.2d 835 (Ga. 2011) ........ 14, 41

*Read & Lundy Inc. v. The Washington Tr. Co. of Westerly*,
2002 WL 31867868, *aff'd*, 840 A.2d 1099 (R.I. 2004) ........ 54

*Read & Lundy, Inc. v. Washington Tr. Co. of Westerly*,
840 A.2d 1099 (R.I. 2004) ........ 52

*Reeves v. Maynard*,
23 S.E. 181 (Ga. Ct. App. 1924) ........ 17

*Regents of Univ. of Cal. v. Superior Court*,
413 P.3d 656 (Cal. 2018) ........ 42

*In re Regions Morgan Keegan Secs., Derivative & Erisa Litig.*,
2010 WL 2650736 (W.D. Tenn. Jul. 2, 2010) ........ 11

*Reich v. Genzyme Corp.*,
2015 WL 13236347 (D. Colo. Aug. 14, 2015) ........ 37

*Reitman v. Champion Petfoods USA, Inc.*,
2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) ........ 9

*Reynolds v. Bordelon*,
172 So. 3d 607 (La. 2015) ........ 32

*Richardson v. Se. Conference*,
2020 WL 1515730 (N.D. Ill. Mar. 30, 2020) ........ 7

*Riddle v. Lowe's Home Ctrs., Inc.*,
802 F. Supp. 2d 900 (M.D. Tenn. 2011) ........ 45

*Robinson v. Tripco Inv., Inc.*,
2000 UT App 200, 21 P.3d 219 (2000) ........ 11

*Rogers v. Louisville Land Co.*,
367 S.W.3d 196 (Tenn. 2012) ........ 16, 49

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .......... 50

*Rowe v. Mentor Worldwide, LLC*,
297 F. Supp. 3d 1288 (M.D. Fla. 2018) .......... 15, 48

*Russo v. Merck & Co., Inc.*,
138 F. Supp. 147 (D.R.I. 1956) .......... 13

*S. Cty., Inc. v. First W. Loan Co.*,
871 S.W.2d 325 (Ark. 1994) .......... 11

*In re Sagent Tech., Inc., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) .......... 6

*Saladino v. Stewart & Stevenson Servs., Inc.*,
704 F. Supp. 2d 237 (E.D.N.Y. 2010) .......... 15, 48

*Salvador v. Atl. Steel Boiler Co.*,
319 A.2d 903 (Pa. 1974) .......... 13

*Samuel Friedland Family Enters. v. Amoroso*,
630 So. 2d 1067 (Fla. 1994) .......... 38

*Santos v. CarMax Bus. Servs., LLC*,
2018 WL 7916823 (N.D. Cal. May 8, 2018) .......... 9

*Santos v. Ford Motor Co.*,
893 N.Y.S.2d 537 (N.Y. App. Div. 2010) .......... 14

*Saucier v. Peoples Bank of Biloxi*,
150 So. 3d 719 (Miss. Ct. App. 2014) .......... 11, 30

*Schaffner v. Aesys Techs., LLC*,
2010 WL 605275 (Pa. Super. Ct. Jan. 21, 2010) .......... 40

*Schepler v. Am. Honda Motor Co.*,
2019 WL 398000 (C.D. Cal. Jan. 29, 2019) .......... 21

*Schubert v. Genzyme Corp.*,
2013 WL 4776286 (D. Utah Sept. 4, 2013) .......... 48

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 5

*Sease v. Taylor's Pets, Inc.*,
700 P.2d 1054 (Or. Ct. App. 1985) .......... 34

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) .......... 6

*Shaw v. Handy*,
588 S.W.3d 459 (Ky. Ct. App. 2019) .......... 49

*Shea v. Bombardier Recreational Prod., Inc.*,
2012 WL 4839527 (Ky. Ct. App. Oct. 12, 2012) .......... 14

*Sheffield v. Darby*,
535 S.E.2d 776 (Ga. Ct. App. 2000) .......... 32

*Shields v. Alere Home Monitoring, Inc.*,
2015 WL 7272672 (N.D. Cal. Nov. 18, 2015) .......... 27

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) .......... 6

*Simonetta v. Viad Corp.*,
197 P.3d 127 (Wash. 2008) .......... 40

*Simpson Hous. Sols., LLC v. Hernandez*,
347 S.W.3d 1 (Ark. Ct. App. 2009) .......... 14

*Sims v. Atrium Med. Corp.*,
349 F. Supp. 3d 628 (W.D. Ky. 2018) .......... 13, 32

*Sloan v. General Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) .......... 9

*Small v. Fritz Companies, Inc.*,
65 P.3d 1255 (Cal. 2003) .......... 26

*Smallwood v. Fisk*,
934 P.2d 557 (Or. Ct. App. 1997) .......... 11

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,
28 P.3d 669 (Utah 2001), *holding modified by Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000 (Utah 2010) .......... 13, 32

*Smith v. O'Connell*,
997 F. Supp. 226 (D.R.I. 1998) *aff'd sub nom. Kelly v. Marcantonio*, 187 F.3d 192 (1st Cir. 1999) .......... 11

*Smith v. Providence Health & Servs.-Or.*,
393 P.3d 1106 (Or. 2017) .......... 55

*Smith v. TimberPro Inc.*,
2017 WL 943317 (Tenn. Ct. App. Mar. 9, 2017) .......... 13, 32

*Smith v. Union Life Ins. Co.*,
2017 WL 599417 (S.D. Miss. Feb. 14, 2017) .......... 11

*Soler v. Secondary Holdings, Inc.*,
771 So.2d 62 (Fla. Dist. Ct. App. 2000) ........ 11

*Southeastern Shelter Corp. v. BTU, Inc.*,
572 S.E.2d 200 (N.C. 2002) ........ 50

*Southern Cal. Gas Leak Cases*,
441 P.3d 881 (Cal. 2019) ........ 41

*St. Paul Fire & Marine Ins. Co. v. Russo Bros.*,
641 A.2d 1297 (R.I. 1994) ........ 27

*Stanley v. Wyeth, Inc.*,
991 So. 2d 31 (La. Ct. App. 2008) ........ 31

*State Farm Fire & Casualty Co. v. Amazon.com, Inc.*,
414 F. Supp. 3d 870 (N.D. Miss. 2019) ........ 37

*State Props., LLC v. Ray*,
574 S.E.2d 180 (N.C. Ct. App. 2002) ........ 11

*State v. Apotex Corp.*,
282 P.3d 66 (Utah 2012) ........ 25

*Stearns v. Select Comfort Retail Corp.*,
2009 WL 1635931 (N.D. Cal. June 5, 2009) ........ 13, 32

*Stegemoller v. ACandS, Inc.*,
767 N.E.2d 974 (Ind. 2002) ........ 24

*Stepp v. Takeuchi Mfg. Co (U.S.) Ltd.*,
2008 WL 4460268 (W.D. Wash. Oct. 2, 2008) ........ 36

*Stewart v. Gainesville Glass Co.*,
212 S.E.2d 377 (Ga. 1975) ........ 13

*Stiley v. Block*,
925 P.2d 194 (Wash. 1996) ........ 11

*Straley v. United States*,
887 F. Supp. 728 (D.N.J. 1995) ........ 39

*Stubbs v. Taft*,
149 A.2d 706 (R.I. 1959) ........ 52

*Sudderth v. Mariner Elec. Co.*,
193 So. 3d 552 (La. Ct. App. 2016) ........ 13

*Sun Nurseries, Inc. v. Lake Erma, LLC*,
730 S.E.2d 556 (Ga. Ct. App. 2012) ........ 10

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770 (Ky. 2017) .......... 50

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 5

*Sys. Eng'g & Sec., Inc. v. Science & Eng'g Ass'ns, Inc.*, 962 So. 2d 1089 (La. Cir. Ct. 2007) .......... 12, 25

*Taylor v. Elliott Turbomachinery Co., Inc.*, 90 Cal. Rptr. 3d 414 (Ct. App. 2009) .......... 40

*Taylor v. Gasor, Inc.*, 607 P.2d 293 (Utah 1980) .......... 11

*Taylor v. Gore*, 588 S.E.2d 51 (N.C. Ct. App. 2003) .......... 25

*Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647 (Mo. 2019) .......... 44

*Thomas v. Borg-Warner Morse Tec LLC*, 2018 WL 8733352 (E.D. Ark. Nov. 19, 2018) .......... 38

*Thongchoom v. Graco Children's Prod., Inc.*, 71 P.3d 214 (Wash. Ct. App. 2003) .......... 13

*Tillman & Deal Farm Supply, Inc. v. Deal*, 246 S.E.2d 138 (Ga. Ct. App. 1978) .......... 13, 32

*Toth v. Economy Forms Corp.*, 571 A.2d 420 (Pa. 1990) .......... 40

*Trabajadores v. Cortez Moreno*, 237 So. 3d 1127 (Fla. Dist. Ct. App. 2018) .......... 52

*TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878 (Fla. Dist. Ct. App. 2000) .......... 28

*Trimpey Tire Sales & Serv., Inc. v. Stine*, 403 A.2d 108 (Pa. 1979) .......... 32

*Tsatskin v. Kordonsky*, 189 A.D.3d 1296 (N.Y. App. Div. 2020) .......... 16

*Turpin v. Stanley Schulze & Co.*, 2009 WL 875218 (Ky. Ct. App. Apr. 3, 2009) .......... 38

*U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464 (Utah 2012) .......... 50

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
160 F. Supp. 3d 1214 (D. Or. 2016) .......... 28

*USA Disaster Recovery, Inc. v. St. Tammany Parish Gov.*,
145 So. 3d 235 (La. 2013).......... 50, 51

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).......... 21

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).......... 25

*Vigilante.com, Inc. v. Argus Test.*,
*com, Inc.*, 2005 WL 2218405 (D. Or. Sept. 6, 2005) .......... 30

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
467 F. Supp. 3d 849 (N.D. Cal. 2020) .......... 28

*W. Reserve Life Assur. Co. of Ohio v. Caramadre*,
847 F. Supp. 2d 329 (D.R.I. 2012) .......... 28

*W.G. Platts, Inc. v. Platts*,
438 P.2d 867 (Wash. 1968).......... 52

*Wachovia Ins. Sers., Inc. v. Fallon*,
682 S.E.2d 657 (Ga. 2009).......... 50

*Wahl v. General Elec. Co.*,
786 F.3d 491 (6th Cir. 2015).......... 21

*Walden v. Fiore*,
571 U.S. 277 (2014).......... 8

*Walters v. UPMC Presbyterian Shadyside*,
187 A.3d 214 (Pa. 2018) .......... 41

*Ward v. Worthen Bank & Tr. Co.*,
681 S.W.2d 365 (Ark. 1984) .......... 28

*Warren v. Shelter Mut. Ins. Co.*,
196 So. 3d 776 (La. Ct. App. 2016) .......... 48

*Warriner v. DC Marshall Jeep*,
962 N.E.2d 1263 (Ind. Ct. App. 2012) .......... 36

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*,
858 P.2d 1054 (1993).......... 23

*Watson Labs., Inc. v. State*,
241 So.3d 573 (Miss. 2018) .......... 10

*Wedderburn Corp. v. Jetcraft Corp.*, 2015 WL 6951549 (N.C. Super. Nov. 6, 2015) ........ 32

*West v. KKI, LLC*, 300 S.W.3d 184 (Ky. Ct. App. 2008) ........ 38

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859 (Ind. Ct. App. 2013) ........ 16, 49

*Wheeler v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 1344 (S.D. Ga. 2013)........ 48

*Whitaker v. Excel Indus.*, 2021 WL 150207 (S.D. Ga. Jan. 7, 2021)........ 15, 48

*Williams v. Davis*, 974 So. 2d 1052 (Fla. 2007)........ 14, 41

*Williams v. State*, 664 P.2d 137 (Cal. 1983) ........ 42

*Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310 (Pa. Super. Ct. 1991)........ 26, 28

*Wilson v. State*, 929 P.2d 448 (Wash. Ct. App. 1996)........ 52

*Wise v. Hays*, 943 N.E.2d 835 (Ind. Ct. App. 2011) ........ 25

*Wood v. United Parcel Serv.*, 453 P.3d 949 (Utah Ct. App. 2019)........ 15, 41, 42

*Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849 (Ky. 2002) ........ 51

*Wright v. Paul Moak Pontiac, Inc.*, 828 So. 2d 201 (Miss. Ct. App. 2001) ........ 13, 32

*York v. Fredrick*, 947 N.E.2d 969 (Ind. Ct. App. 2011) ........ 44

**Statutes**

73 Pa. Cons. Stat. §§ 201-1 *et seq.* ........ 12

Colo. Rev. Stat. §§ 6-1-105 *et seq.*........ 12

Colo. Rev. Stat. § 13–21–402 ........ 37

Conn. Gen. Stat. § 52–572n ........ 22, 23

Conn. Gen. Stat. § 52-572m(b) ........ 23

Fla. Stat. §§ 501.202 *et seq.* ........ 12

Fla. Stat. § 501.212(3) ........ 45

Ga. Code Ann. §§ 10-1-372 *et. seq.* ........ 12

Ga. Code Ann. §§ 10-1-393 *et. seq.* ........ 12

Ga. Code Ann. § 51–1–11 ........ 35

Ind. Code Ann. § 34-20-1-1 ........ 24

Ind. Code Ann. § 34-20-2-3 ........ 36

Ind. Code Ann. § 34-20-2-4 ........ 36

Ky Rev. Stat. Ann. § 411.340 ........ 38

La. Rev. Stat. Ann. § 9:2800.52 ........ 23, 37

La. Rev. Stat. Ann. §§ 51:1401 ........ 12

La. Rev. Stat. § 51:1409 ........ 45

Miss. Code Ann. § 11-1-63 ........ 24, 36, 37

Miss. Code Ann. §§ 75-24-3 *et. seq.* ........ 12

Miss. Code Ann. § 75-24-15(1) ........ 45

Miss. Code Ann. § 75-24-15(2) ........ 47

N.C. Gen. Stat. §§ 75.1.1-75-35 ........ 12

N.Y. Gen. Bus. Law §§ 349 *et seq.* ........ 12

N.Y. Gen. Bus. Law §§ 350 *et seq.* ........ 12

Or. Rev. Stat. §§ 646.605 *et seq.* ........ 12

Or. Rev. Stat. § 646.638 ........ 45

R.I. Gen. Laws § 6-13.1-5.2 ........ 45

R.I. Gen. Laws §§ 6-13.1, *et seq.* ........ 12

Tenn. Code Ann. § 29–28–101 *et seq.* ........ 35

Tenn. Code Ann. § 29-28-102 ........ 22

Tenn. Code Ann. § 29–28–106 ........ 35

Tenn. Code. Ann. §§ 47-18-101, *et. seq.* ........ 12

Utah Code Ann. §§ 13-11-1 *et seq.* ........ 12

Utah Code Ann. § 13-11-22 ........ 45

Wash. Rev. Code Ann. § 7.72.010 ........ 23, 36

Wash. Rev. Code Ann. § 7.72.030 ........ 23

Wash. Rev. Code Ann. § 7.72.040 ........ 36

**Other Authorities**

26 Richard A. Lord, *Williston on Contracts* § 68:5 (4th ed. 2019) ........ 16, 49

16 Am. Jur. 2d Conspiracy § 53 ........ 17, 20

Dobbs, The Law of Torts § 125 (2d ed.) ........ 43

# ISSUES TO BE DECIDED

1. Whether the Court has personal jurisdiction over the claims against the Altria Defendants brought by individual bellwether plaintiffs who allege that they reside and purchased, used, and were injured by JUUL products outside of California.

2. Whether the claims of individual bellwether plaintiffs against the Altria Defendants should be dismissed in whole or in part for failure to state a claim upon which relief may be granted.

# INTRODUCTION

These multidistrict proceedings include hundreds of individual plaintiffs seeking relief based on their alleged purchase and use of products designed, manufactured, and sold by a single company, JUUL Labs, Inc. ("JLI"). All of the individual plaintiffs assert only state law claims. At issue here are the claims of twenty individuals whose claims were chosen as bellwether cases and who bring claims against the Altria Defendants (hereinafter "Plaintiffs"). *See* Appendix A ("App. A.") (attached hereto, identifying Plaintiffs and their claims, states of residence, and date they first used JUUL products).[1] For jurisdictional and substantive reasons, the Court should dismiss the claims brought by each of these twenty individuals against the Altria Defendants.

*First*, under Plaintiffs' own allegations and as a matter of law, the claims of nineteen Plaintiffs against the Altria Defendants should be dismissed for lack of personal jurisdiction. Each Plaintiff is a non-California resident who alleged in his or her short form complaint ("SFC") that, in the absence of the Direct Filing Order ("DFO"), he or she would have filed those claims in the Northern District of California and not his or her home district. This Court lacks personal jurisdiction over those claims because the due process clause forbids a court from exercising specific personal jurisdiction over an out-of-state defendant for claims by out-of-state plaintiffs arising out of a transaction occurring out of state. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1782 (2017).

*Second*, every one of the twenty Plaintiffs' claims against the Altria Defendants should be dismissed for failure to state a claim. Each claim fails for reasons specific to that claim, but one deficiency runs through all of them and alone warrants their dismissal. ***None of the twenty Plaintiffs alleges a causal connection between their purchase and use of JUUL and anything the Altria***

[1] Twenty-four cases were initially selected as bellwether cases. *See* Joint Notice Regarding 12 Randomly Selected Personal Injury Cases for Inclusion in the Bellwether Discovery Pool, ECF 1188 (Dec. 15, 2020); Joint Notice Regarding The Parties' Twelve Selected Personal Injury Cases for Inclusion in the Bellwether Discovery Pool, ECF 1212 (Dec. 30, 2020). One of those cases (*Miles*) does not name the Altria Defendants as defendants. In addition, plaintiffs in four other cases have dismissed their claims or stated their intention to do so (*Potter*, *Smigiel*, *Dixon*, *Wilson*). The parties have since replaced Plaintiff Smigiel with Plaintiff Rosenfield who filed her amended complaint on February 12, 2020. The remaining bellwether plaintiffs who have dropped out have not been replaced. The Altria Defendants reserve their right to move to dismiss any additional cases designated as bellwether cases. In addition, the Altria Defendants preserve every argument and defense concerning the claims of every other individual plaintiffs in this litigation.

***Defendants said or did.*** Plaintiffs' failure in this regard mirrors that of the California class representatives, C.D. and L.B., who attempted to bring UCL claims against the Altria defendants in the class action proceedings. On October 23, 2020, the Court dismissed those claims because C.D. and L.B. had failed to allege "allegations and facts" showing "Altria's unfair conduct contributed to their use of JUUL." 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020). Although the Court believed at the time that these deficiencies "presumably [could] be easily rectified" through amendment, the class plaintiffs' efforts to do so have proven otherwise. The class plaintiffs added a third California plaintiff when amending their complaint. But when that individual dropped out of the case after the Altria Defendants moved to dismiss, Plaintiffs voluntarily dismissed their UCL claims against the Altria Defendants,[2] conceding that C.D. and L.B. still had not alleged causation.

The allegations offered by the twenty Plaintiffs are just as deficient as C.D. and L.B.'s allegations in the class action complaint. None of these individuals offers "facts and allegations" that show a connection between the Altria Defendants' alleged conduct and his or her purchase and use of JUUL products. Like the two plaintiffs whose claims the Court dismissed, these Plaintiffs' allegations *refute* any claim that the Altria Defendants were responsible for their JUUL use and alleged injuries. Nineteen of them began using JUUL products before the Altria Defendants' alleged actions, and none of them identifies any action or statement by the Altria Defendants when describing the circumstances surrounding that use. Plaintiffs therefore fail to allege causation against the Altria Defendants—a deficiency that dooms each of their claims.

Plaintiffs' claims fail for other reasons. As a threshold matter, under choice of law principles, several Plaintiffs bring claims that are barred by their state's products liability act. But more fundamentally, Plaintiffs do not allege actionable conduct by the Altria Defendants sufficient to support any of their causes of action. Plaintiffs' fraud claims fail because they do not allege any misstatement or concealment by the Altria Defendants; Plaintiffs' strict liability claims fail because most of their states of residence do not allow such claims based on distribution services and the remainder do not allow such claims under the facts alleged here; Plaintiffs' consumer fraud act claims

[2] *See* Stipulation and [Proposed] Order Regarding Opp. Mem. Page Limits at 2 n.1, ECF 1352 (Feb. 1, 2021).

fail because they do not allege conduct by the Altria Defendants violating the relevant consumer fraud statutes; Plaintiffs' negligence-based claims fail because they do not allege actions by the Altria Defendants that assumed or breached a duty toward Plaintiffs; Plaintiffs' warranty claims fail because they do not allege any warranty expressly or impliedly made by the Altria Defendants, breach, or privity; Plaintiffs' intentional infliction of emotional distress and outrage claims fail because they do not allege conduct by the Altria Defendants that is actionable under such a theory; and Plaintiffs do not allege that the Altria Defendants have been enriched, let alone that any enrichment would be unjust, as necessary to state an unjust enrichment claim. Finally, Plaintiffs cannot bootstrap liability against the Altria Defendants with conspiracy claims because Plaintiffs fail to allege an agreement involving the Altria Defendants to engage in unlawful conduct—the *sine qua non* of such claims.

## BACKGROUND

### I. ALLEGATIONS AGAINST THE ALTRIA DEFENDANTS

Plaintiffs name five Altria entities as defendants: Altria Group, Inc. ("Altria"), Philip Morris USA Inc. ("PM USA"), Altria Client Services LLC ("ALCS"), Altria Group Distribution Company ("AGDC"), and Altria Enterprises LLC ("AE") (collectively, the "Altria Defendants"). Altria Group is a holding company. Altria Group, Inc., Form 10-K Annual Report at 1 (for fiscal year ending December 31, 2019) ("Altria Form 10-K") (Ex. 1 to Altria May 29, 2020 MTD); *see also* 2020 WL 6271173l, at *28 n. 28 (taking judicial notice but not for truth of matters asserted). PM USA manufactures cigarettes; it does not manufacture e-vapor products. Altria Form 10-K. ALCS provides compliance, corporate affairs, finance, government affairs, legal, regulatory, and other services to Altria and its subsidiaries. *Id.* AGDC provides sales, distribution, and consumer engagement services to Altria and its subsidiaries. *Id.* AE is a wholly owned subsidiary of Altria that holds the interest purchased by Altria in JLI in December 2018. *D.H.* Compl. ¶ 20. Each of the Altria Entities was incorporated and has its principal place of business in Virginia. *Id.* ¶¶ 16-20.

Plaintiffs' allegations concerning the Altria Defendants have been described in prior briefs[3] and are only summarized here. Plaintiffs allege that Altria engaged in on-again, off-again

[3] *See, e.g.*, Mem. in Supp. of the Altria Defs.' Mot. to Dismiss Pls. Claims Against Altria from the Pls.' Class Action Compl., ECF 632 (May 29, 2020) ("Altria May 29, 2020 MTD").

communications and negotiations with JLI from Spring of 2017 until December 2018, *see D.H.* Compl. ¶¶ 541-70,[4] while at the same time competing with JLI through its own company, Nu Mark LLC, *id.* ¶¶ 53-54, 543, 682. They also rely on Altria's October 25, 2018 letter to the United States Food and Drug Administration ("FDA") when claiming Altria and JLI were coordinating at that time, *id.* ¶¶ 568, 572, 688, even though that letter advanced Altria's interests at the expense of JLI, explaining that Altria "believe[ed] that pod-based products significantly contribute to the rise in youth use of e-vapor products" and "flavors" "further compounded" underage usage. October 25, 2018 Letter at 2 (Ex. 2 to Altria May 29, 2020 MTD). In addition, Plaintiffs allege that the Altria Defendants provided JLI with distribution and retail services and disseminated JUUL advertising—at JLI's request under the Services Agreement entered at the time of the December 2018 transaction—while acknowledging this agreement was amended, and services ended, in early 2020, *D.H.* Compl. ¶¶ 612, 616-17, 625-27, that two former Altria executives, K.C. Crosthwaite and Joe Murillo, left Altria and later took positions at JLI in 2019, *id.* ¶ 594, and that Altria purchased shelf space in 2017 and 2018, *id.* ¶¶ 582-83.

## II. PLAINTIFFS AND THEIR CAUSES OF ACTION

Each Plaintiff brings one or more of the following fourteen claims against the Altria Defendants: (1) fraud, (2) fraudulent concealment, (3) negligent misrepresentation, (4) breach of express warranty, (5) state consumer fraud act claims, (6) strict liability for failure to warn, (7) breach of implied warranty, (8) negligence and/or gross negligence, (9) negligent failure to warn, (10) unjust enrichment, (11) intentional infliction of emotion distress, (12) outrage, (13) medical monitoring, and (14) conspiracy. The specific claims that each Plaintiff alleges in his or her amended complaint are identified in Appendix A.[5]

[4] Although each of the nineteen Plaintiffs has filed his or her own amended complaint, the factual allegations concerning Defendants' conduct are essentially the same in each of those complaints. Accordingly, when discussing these allegations, this brief cites the amended complaint of Plaintiff D.H. for these allegations. *See* Plaintiff D.H., a Minor, with Her Parent and Natural Guardian, Cheryl Humphries' First Am. Compl. (Personal Injury) ("*D.H.* Compl.").

[5] Plaintiff Keffer also includes causes of action for wrongful death, loss of consortium, and survival. *See Keffer* Compl.¶¶ 1050-69.

Each Plaintiff's amended complaint includes allegations concerning that individual's purchase and use of JUUL products and where that individual resides. Nineteen out of twenty Plaintiffs allege that they began using JUUL products and became addicted to them *before* Altria invested in JLI in December 2018 and *before* the Altria Defendants provided retail and distribution services or disseminated advertisements for JUUL products in 2019 and early 2020. *See* App. A at Column B.[6] Moreover, each Plaintiff includes in his or her amended complaint several paragraphs of allegations concerning the advertisements, promotions, and other statements they saw before and during the time they used JUUL products. *See, e.g.*, *D.H.* Compl. ¶¶ 751-57; *J.L.K.* Compl. ¶¶ 746-61. But none of them includes any allegation that identifies or describes any statement or action by the Altria Defendants. To the contrary, their complaints allege that they saw and were influenced by statements made on social media accounts, on websites, and in advertisements that are not alleged to have involved the Altria Defendants at all. *See, e.g.*, *D.H.* Compl. ¶¶ 751-57; *J.L.K.* Compl. ¶¶ 746-61. And, to the extent the complaints include photographs for retail displays, they do not position JUUL products next to Marlboro cigarettes, which, according to Plaintiffs' own allegations, means that they were ***not*** displayed on shelf space provided by the Altria Defendants. *See, e.g.*, *D.H.* Compl. ¶¶ 751-52.

**LEGAL STANDARD**

The Altria Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). Dismissal under Rule 12(b)(2) is appropriate when the Court lacks personal jurisdiction over the claims against a defendant. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

---

[6] The twentieth Plaintiff, Cody Arnett, stated in his Plaintiff Fact Sheet that he started using JUUL products in 2017, a year before Altria invested in JLI and provided JLI any services. In his amended complaint, which he filed after his case was chosen as a bellwether case, he changed his story and now claims instead that he started using JUUL products in 2019.

To survive a Rule 12(b)(6) motion, a complaint must do more than merely incant the elements of the cause of action. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 545-47, 555; *see also, e.g.*, *Iqbal*, 556 U.S. at 677-78 (2009) (similar). The Court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), the Court "may look beyond the plaintiff's complaint to matters of public record," *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995), and should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).

Moreover, in cases sounding in fraud, Rule 9(b) requires an additional level of particularity such that a plaintiff must identify "the who, what, when, where, and how" of the misconduct alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 977 (N.D. Cal. 2019) (Orrick, J.) (same). Rule 9(b) "serves to give defendants notice of the specific fraudulent conduct against which they must defend," *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 904 (N.D. Cal. 2011), and "averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)," *Kearns*, 567 F.3d at 1124.

Plaintiffs also must "indicate which individual defendant or defendants were responsible for which alleged wrongful act." *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing causes of action that "lumped" defendants "together").

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST THE ALTRIA DEFENDANTS FAIL FOR LACK OF PERSONAL JURISDICTION

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). The transferee court in an MDL can exercise personal jurisdiction only "to the same extent that the transferor court could." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004); *see also*, *e.g.*, *Richardson v. Se. Conference*, 2020 WL 1515730, at *5 (N.D. Ill. Mar. 30, 2020) ("[W]hen a case has been transferred under [the MDL statute] (as this one has), the transferee judge 'has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.'").

Nineteen of the twenty Plaintiffs filed their complaints in this Court, and therefore the "transferee court" for personal jurisdiction purposes would be this Court—not the district where these Plaintiffs reside. The Direct Filing Order under which Plaintiffs initially filed their short form complaints does not compel a different conclusion. To the contrary, in a conscious effort to avoid the issues presented by *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998), these nineteen Plaintiffs each alleged in their short form complaints that the "Northern District of California" was "the Federal District Court in which the Plaintiff would have filed in the absence of direct filing." *E.g.*, *Bain* SFC at Section I.1; *Westfaul* SFC at Section I.1; *see also* App. A at Column D. In other words, they designated *this Court* as the transferor court. Accordingly, they must show *this Court* has personal jurisdiction over the Altria Defendants, which they cannot do.

Specific jurisdiction requires that a plaintiff's case "arise[] out of or relates to the defendant's contacts with the forum." *Ranza v. Nike*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotations omitted) (affirming dismissal for lack of personal jurisdiction).[7] This requirement is "more than a guarantee

[7] The Altria Defendants are Virginia corporations and did not have contacts with California "so constant and pervasive 'as to render [them] essentially at home'" in California. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citation omitted). Plaintiffs must therefore establish specific personal jurisdiction over the Altria Defendants. *See, e.g.*, *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80 (noting "two types of personal jurisdiction: 'general' . . . and 'specific'") (citation omitted).

of immunity from inconvenient or distant litigation;" it is based on due process. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (citation and quotations omitted); *see also Burger King v. Rudzewicz*, 471 U.S. 462, 471 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

In *Bristol-Myers Squibb*, the Supreme Court explained that "[w]hat is needed" for specific jurisdiction "is a connection between the forum and the *specific claims at issue*." 137 S. Ct. at 1781 (emphasis added); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (finding that, for the proper exercise of specific personal jurisdiction, "the defendant's *suit-related conduct* must create a substantial connection with the forum State") (emphasis added). The Supreme Court found that the California Supreme Court had erred by finding "that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. As the Court explained, "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Because the nonresident plaintiffs did not "claim to have suffered harm in" California and the "conduct giving rise to [their] claims occurred elsewhere," the Supreme Court ruled that "the California courts cannot claim specific jurisdiction" over those claims. *Id.* at 1782.

The same principles apply here. Far from alleging that their state law claims arise out of the Altria Defendants' contacts with California, as would be required for there to be specific jurisdiction, Plaintiffs' individual allegations are directly to the contrary. The only actions by the Altria Defendants that were allegedly directed at California were advertising JUUL products to adult smokers in California and providing certain retail and distribution services to stores in California. But the claims of Plaintiffs—by definition—do not arise out of these actions. Their claims are necessarily based on alleged misrepresentations, conduct, purchases, and injuries that allegedly occurred—if at all—in that individual's state of residence, not California. Accordingly, even if the

Altria Defendants allegedly took actions directed at California consumers, those actions did not give rise to Plaintiffs' claims. As in *Bristol-Myers*, Plaintiffs "did not purchase [JUUL products] in California, did not ingest [JUUL products] in California, and were not injured by [JUUL products] in California. The mere fact that *other* plaintiffs . . . obtained, and ingested [JUUL products] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781 (emphasis in original); *see, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1036 (S.D. Cal. 2020) ("California has little interest in the claims of non-California plaintiffs arising out purchases made outside California from a Delaware company with a principal place of business in Arizona."); *Reitman v. Champion Petfoods USA, Inc.*, 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) ("'The mere fact that *other* plaintiffs [purchased a product] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow [this Court] to assert specific jurisdiction over the nonresidents' claims.'") (quoting *Bristol Myers*, 137 S. Ct. at 1781).[8] Plaintiffs' claims against the Altria Defendants should be dismissed on this basis alone.[9]

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ALTRIA DEFENDANTS

### A. The Court Should Dismiss The Claims Against The Altria Defendants Because Plaintiffs Fail To Allege Causation Against Them

Like the two California plaintiffs whose claims against the Altria Defendants were dismissed in October, the twenty bellwether Plaintiffs at issue here do not include "facts and allegations" in their

[8] The Altria Defendants preserve their arguments that, regardless of personal jurisdiction, the claims of out of state plaintiffs cannot be tried against the Altria Defendants outside of a plaintiff's home district. *Lexecon*, 523 U.S. at 34.

[9] Plaintiffs cannot avoid the holding in *Bristol-Myers* by citing Judge Chen's decision in *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018). Even if the ruling in *Sloan* were correct (which the Altria Defendants respectfully do not concede here), that ruling was expressly limited to cases "where a federal court presides over litigation *involving a federal question.*" *Id.* at 859 (emphasis added). In the bellwether cases at issue here, there are no federal claims, and the only basis for federal jurisdiction is diversity of citizenship. *See, e.g.*, *D.H.* Compl. ¶ 30. Under these circumstances, *Bristol-Myers Squibb* applies, as courts in this district (and elsewhere) have repeatedly found. *See, e.g.*, *Santos v. CarMax Bus. Servs., LLC*, 2018 WL 7916823, at *5 (N.D. Cal. May 8, 2018) (applying *Bristol-Myers* and noting that when a federal court is sitting in diversity, it is the 14th Amendment that governs the scope of the jurisdiction); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) (similar).

amended complaints that show the Altria Defendants' "unfair conduct contributed to their use of JUUL." 2020 WL 6271173, at *55. The Court should therefore dismiss their claims for failure to allege causation.[10]

**1. Each Plaintiff's Claims Require Allegations That The Altria Defendants Caused His Or Her Injury**

Plaintiffs allege residency in seventeen different states, and the specific claims they bring against the Altria Defendants vary. *See* App. A at Columns C & E (summarizing claims and residency).[11] Regardless of the state law at issue, each claim requires allegations that the Altria Defendants' wrongful conduct caused the Plaintiff's injuries, as set forth below.

- **Fraud and fraudulent concealment.** Seventeen Plaintiffs bring claims for fraud and/or fraudulent concealment against the Altria Defendants. *See* App. A. These Plaintiffs reside in sixteen states: Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See id.* These claims require that Plaintiffs allege reliance to their detriment on the Altria Defendants' purported misrepresentations or concealment and that their reliance was reasonable.[12]

[10] The Court need not conduct a choice of law analysis on this issue. As set forth in subsection 1 of this Section, each of the Plaintiffs' claims requires causation regardless of the state law at issue. *See, e.g.*, *Int'l Serv. Ins. Co. v. Gonzales*, 239 Cal. Rptr. 341, 344 (Ct. App.1987) ("The sole fact that two states are implicated does not create a conflict of laws" where "the result would be the same" under either state's laws.").

[11] Plaintiff Mangham currently lives in Indiana but alleges that his JUUL use took place when he was a Georgia resident. *Mangham* Compl. ¶ 12. Plaintiff Bagley currently is stationed in Guantanamo Bay, Cuba but alleges that he is a resident of Utah and purchased and used JUUL products in Utah. *Bagley* Compl. ¶ 12. Plaintiff Rosenfield alleges that she was a resident of New York, Pennsylvania, and Colorado during the relevant time period. *Rosenfield* Compl. ¶ 12. Plaintiff Edwards currently resides in Georgia but alleges that he started using JUUL as a New York resident. *Edwards* Compl. ¶ 12. Plaintiff Fairess resides in Florida but alleges he used JUUL products as a resident of Louisiana. *Fairess* Compl. ¶ 12.

[12] *See, e.g.*, *Watson Labs., Inc. v. State*, 241 So.3d 573, 584 (Miss. 2018) (requiring reliance on the truth of the representation); *Morris v. Knopick*, 521 S.W.3d 495, 501 (Ark. Ct. App. 2017) (requiring "justifiable reliance on the representation"); *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013) (elements of fraud in Indiana include reliance upon the misrepresentation by the complaining party); *Sun Nurseries, Inc. v. Lake Erma, LLC*, 730 S.E.2d 556, 561 (Ga. Ct. App. 2012) (same); *Chapital v. Harry Kelleher & Co., Inc.*, 144 So. 3d 75, 86 (La. 2014) (same); *Brown v. Birman*

(Footnote Cont'd on Following Page)

- **Negligent misrepresentation**. Fifteen Plaintiffs bring claims for negligent misrepresentation against the Altria Defendants under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Indiana, Tennessee, Utah, Oregon, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See* App. A. In those states that recognize such claims,[13] plaintiffs must allege justifiable reliance on an allegedly false representation of material fact made by the Altria Defendants. *See, e.g.*, *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017) ("To establish negligent misrepresentation, a party is required to prove . . . the plaintiff acted in justifiable reliance upon the misrepresentation").[14]

---

*Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001) (same); *Robinson v. Tripco Inv., Inc.*, 21 P.3d 219, 223 (Utah Ct. App. 2000) (same); *Smith v. O'Connell*, 997 F. Supp. 226, 238 (D.R.I. 1998) (same) *aff'd sub nom. Kelly v. Marcantonio*, 187 F.3d 192 (1st Cir. 1999); *Smallwood v. Fisk*, 934 P.2d 557, 559 (Or. Ct. App. 1997) (same); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (same); *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385, 391 (N.C. 1988) (same); *Handfield v. Howell*, 2020 WL 691550, at *7 (Pa. Super. Ct. Feb. 11, 2020) (requiring "justifiable reliance on the misrepresentation"); *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010) (same); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E. 2d 976, 979 (N.Y. App. 2009) (same); *Nat. Credit Union Admin. Bd. v. Regine*, 795 F. Supp. 59, 70 (D.R.I.1992) (same); *Soler v. Secondary Holdings, Inc.*, 771 So.2d 62, 69 (Fla. Dist. Ct. App. 2000) (fraudulent concealment requires proof of detrimental reliance) (citation omitted); *In re Regions Morgan Keegan Secs., Derivative & Erisa Litig.*, 2010 WL 2650736, at *4 (W.D. Tenn. Jul. 2, 2010) (similar); *Smith v. Union Life Ins. Co.*, 2017 WL 599417, at*2 (S.D. Miss. Feb. 14, 2017) (similar); *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980) (similar); *State Props., LLC v. Ray*, 574 S.E.2d 180, 186 (N.C. Ct. App. 2002) (similar); *see also, e.g.*, *Magpali v. Farmers Grp., Inc.*, 55 Cal. Rptr. 2d 225, 232 (Ct. App. 1996) ("[T]o be actionable, a misrepresentation or concealment must induce justifiable reliance and resulting damage.").

[13] Negligent misrepresentation claims are not recognized in Arkansas, Indiana, and North Carolina. *See, e.g.*, *S. Cty., Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994) ("We decline to recognize the tort of negligent misrepresentation."); *Jim Barna Log Sys. Midwest, Inc., v. Gen. Cas. Ins. Co.*, 791 N.E.2d 816, 830 (Ind. Ct. App. 2003) (similar); *Gaston v. PBI Gordon Corp.*, 2014 WL 4114324, at *4 (M.D.N.C. Aug. 20, 2014) (similar). In addition, Colorado has permitted the tort only where the statements are made "for the guidance of others in their business transactions," *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011), or in the context of the patient-physician relationship, *Bloskas v. Murray*, 646 P.2d 907 (Colo. 1982).

[14] *See, e.g.*, *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 360-61 (Wash. 2017) ("A plaintiff claiming negligent misrepresentation must prove . . . the plaintiff relied on the false information" and "the plaintiff's reliance was reasonable."); *Saucier v. Peoples Bank of Biloxi*, 150 So. 3d 719, 731 (Miss. Ct. App. 2014) (requiring "that the plaintiff reasonably relied upon the misrepresentation"); *Coppola Const. Co. v. Hoffman Enters. Ltd. P'ship*, 71 A.3d 480, 487 (Conn. 2013) ("negligent misrepresentation requires . . . that the plaintiff reasonably relied on the

(Footnote Cont'd on Following Page)

- **Consumer fraud act claims.** Thirteen Plaintiffs bring claims against the Altria Defendants under the consumer fraud acts in their state of residence. *See* App. A.[15] Each of these statutes requires that Plaintiffs allege conduct by the Altria Defendants violating the statute that caused the Plaintiff's injuries.[16]
- **Breach of express warranty.** Sixteen Plaintiffs bring claims for breach of express warranty against the Altria Defendants under the laws of Mississippi, Rhode Island, Florida, Georgia,

misrepresentation"); *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 453 (R.I. 2013) (similar); *Sys. Eng'g & Sec., Inc. v. Science & Eng'g Ass'ns, Inc.*, 962 So. 2d 1089, 1092 (La. Cir. Ct. 2007) (similar); *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007) (similar); *Presnell Constr. Mgrs., Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986) (requiring "reasonable reliance"); *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 447 (4th Cir. 2001) (similar); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (similar); *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (similar); *see also, e.g.*, *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1195 (N.D. Cal. 2018) ("[A] plaintiff must allege . . . ignorance of the truth and justifiable reliance [on the misrepresentation].").

[15] Plaintiffs bring consumer fraud act claims under the following statutes: Miss. Code Ann. §§ 75-24-3 *et. seq.* ("MCPA") (Westfaul); R.I. Gen. Laws §§ 6-13.1, *et seq.* ("RIDTPA") (Pesce); Ga. Code Ann. §§ 10-1-372 *et. seq.*("GUDTPA") (Edwards, Mangham); Ga. Code Ann. §§ 10-1-393 *et. seq.* ("GFPBA") (Edwards, Mangham); Tenn. Code. Ann. §§ 47-18-101, *et. seq.* ("TCPA") (Bain); Utah Code Ann. §§ 13-11-1 *et seq.* ("UCSPA") (Bagley); Or. Rev. Stat. §§ 646.605 *et seq.* ("OUTPA") (Keffer); N.C. Gen. Stat. §§ 75.1.1-75-35 ("NCUDTPA") (J.L.K.); Fla. Stat. §§ 501.202 *et seq.* ("FUDTPA") (L.W.B., Widergren, Wong); La. Rev. Stat. Ann. §§ 51:1401 *eq seq.* ("LUTPA") (Fairess); Colo. Rev. Stat. §§ 6-1-105 et seq. ("CCPA") (Rosenfield); N.Y. Gen. Bus. Law §§ 349 *et seq.*, §§ 350-e *et seq.* (NY GBL §§ 349-50) (Rosenfield); 73 Pa. Cons. Stat. §§ 201-1 *et seq.* ("PUTPL") (Rosenfield). *See* App. A.

[16] *See, e.g.*, *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 290 (N.D. Cal. 2017) (FDUTPA claims require "causation"); *Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 272 (M.D. Tenn. 2020) (TCPA claims require that defendant's "unfair or deceptive act . . . cause[] an ascertainable loss of money or property"); *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 665 (N.D. Cal. 2019) (similar requirements under RIDTPA); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 970 (N.D. Cal. 2018) (similar requirements for NCUDTPA claim); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1289 (N.D. Ga. 2018) (similar requirements under GUDTPA and GFPBA); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 280 (S.D.N.Y. 2018) (similar requirements under MCPA); *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 383 (D. Utah 2020) (similar requirements under UCSPA); *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015) (similar requirements under OUTPA); *Francis v. GRT Utilicorp, Inc.*, 2013 WL 12203815, at *3 (W.D. La. Feb. 8, 2013) (similar requirements under LUTPA); *Am. Express Bank, FSB v. Martin*, 200 A.3d 87, 94-95 (Pa. Super. Ct. 2018) (similar requirements under PUTPL); *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (similar requirements under CCPA); *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (similar requirements under NY GBL §§ 349-50).

Arkansas, Tennessee, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See* App. A. In each state, these claims require that Plaintiffs allege that they relied on the express warranty that was the purported breach and/or that the breach caused their alleged injury.[17] In addition, in Georgia, Florida, Washington, North Carolina, Kentucky, Rhode Island, and Pennsylvania, breach of express warranty claims require privity, i.e., "a contractual relationship between the seller or manufacturer of an allegedly defective product and the person injured by it." *Crews v. W.A. Brown & Son, Inc.*, 416 S.E.2d 924, 929 (N.C. Ct. App. 1992).[18]

---

[17] *See, e.g.*, *Harbour Point Homeowners' Ass'n v. DJF Enters.*, 697 S.E.2d 439 (N.C. Ct. App. 2010) (explaining breach of express warranty claims require reliance upon the warranty); *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 643 (W.D. Ky. 2018) (similar); *Babb v. Regal Marine Indus., Inc.*, 2014 WL 690154 (Wash. App. Feb. 20, 2014), *rev. granted, cause remanded*, 329 P.3d 67 (Wash. 2014); *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092, 1094 (Or. Ct. App. 1994) (similar); *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc*., 28 P.3d 669, 676 (Utah 2001) (similar), *holding modified by Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000 (Utah 2010); *Tillman & Deal Farm Supply, Inc. v. Deal*, 246 S.E.2d 138, 140 (Ga. Ct. App. 1978) (similar); *Smith v. TimberPro Inc.*, 2017 WL 943317, at *3 (Tenn. Ct. App. Mar. 9, 2017) (similar); *Greenway Equip., Inc. v. Johnson*, 602 S.W.3d 142, 148 (Ark. Ct. App. 2020) (similar); *Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245, 1253 (M.D. Fla. 2015) (similar); *Fidrych v. Inskip Motors, Inc.*, 1982 WL 604065, at *1 (R.I. Super. Ct. Jan. 6, 1982) (similar); *Wright v. Paul Moak Pontiac, Inc.*, 828 So. 2d 201, 202 (Miss. Ct. App. 2001) (similar); *Belden Inc. v. Am. Elec. Components, Inc.*, 885 N.E.2d 751, 762 (Ind. Ct. App. 2008) (similar); *Flores v. Youm*, 133 N.Y.S.3d 786 (N.Y. Sup. Ct. 2020) (similar); *Sudderth v. Mariner Elec. Co.*, 193 So. 3d 552, 561 (La. Ct. App. 2016); *see also, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009) (similar).

[18] *See, e.g.*, *Stewart v. Gainesville Glass Co.*, 212 S.E.2d 377, 377 (Ga. 1975) ("privity is required in actions for breach of express warranties"); *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Thongchoom v. Graco Children's Prod., Inc.*, 71 P.3d 214, 219 (Wash. Ct. App. 2003) ("Generally, contractual privity between the buyer and seller must exist before a plaintiff may maintain an action for a breach of warranty."); *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237, 241 (Ky. Ct. App. 2007) ("a plaintiff-buyer may not recover under a breach of warranty claim unless there is privity of contract with the defendant"); *Russo v. Merck & Co., Inc.*, 138 F. Supp. 147, 149–50 (D.R.I. 1956) ("apart from privity of contract there can be no warranty"); *Salvador v. Atl. Steel Boiler Co.*, 319 A.2d 903, 904 n.1 (Pa. 1974) ("Privity of contract is that connection or relationship which exists between two or more contracting parties.") (citations and quotations omitted); *see also, e.g.*, *Bem v. Stryker Corp.*, 2015 WL 6089819, at *2 (N.D. Cal. Oct. 16, 2015) ("privity of contract is required in an action for breach of either express or implied warranty") (citation and quotations omitted).

- **Strict liability.** Sixteen Plaintiffs bring strict liability claims against the Altria Defendants based on a failure to warn theory under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, New York, Indiana, Utah, Oregon, Washington, Kentucky, Louisiana, New York, Pennsylvania, and Colorado. *See* App. A. These claims require allegations that the Altria Defendants' failure to warn proximately caused the Plaintiff's injury.[19] In addition, because Plaintiffs base their claims on the Altria Defendants' purported role in distributing certain JUUL products in 2019 and early 2020, they must allege they purchased products the Altria Defendants distributed. *See infra* at 39-40.
- **Negligence and/or gross negligence.** Sixteen Plaintiffs bring negligence and/or gross negligence claims under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Kentucky, North Carolina, Louisiana, New York, Pennsylvania, and Colorado. *See* App. A. Regardless of the state law at issue, each Plaintiff must allege that the Altria Defendants breached a duty toward him or her and that the breach caused the Plaintiff's injuries.[20]

---

[19] *See, e.g.*, *Simpson Hous. Sols., LLC v. Hernandez*, 347 S.W.3d 1, 19 (Ark. Ct. App. 2009) ("[P]roximate causation is a foundational element of the tort[] of strict liability."); *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. Dist. Ct. App. 2009) (plaintiff must prove "that the inadequacy of the warning proximately caused his injury"); *House v. Armour of Am., Inc.*, 929 P.2d 340, 346 (Utah 1996) ("In any failure to warn claim, a plaintiff must show that the failure to give an adequate warning in fact caused the injury"); *Little v. PPG Indus., Inc.*, 579 P.2d 940, 947 (Wash. Ct. App. 1978) (similar), *modified*, 594 P.2d 911 (Wash. 1979); *Shea v. Bombardier Recreational Prod., Inc.*, 2012 WL 4839527, at *3 (Ky. Ct. App. Oct. 12, 2012) (similar); *Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.*, 772 A.2d 1056, 1063 (R.I. 2001) (similar); *Santos v. Ford Motor Co.*, 893 N.Y.S.2d 537, 538 (N.Y. App. Div. 2010) ("the failure-to-warn claim was correctly dismissed for failure to establish the causation element"); *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995) ("to establish . . . causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller"); *see also, e.g.*, *Edwards v. A.L. Lease & Co.*, 54 Cal. Rptr. 2d 259, 262 (Ct. App. 1996) ("As a general rule, tort liability is dependent upon the plaintiff's ability to demonstrate that his or her damages were caused by the defendant, and this rule applies in strict liability as well as negligence cases.").

[20] *See, e.g.*, *Duran v. Sw. Ark. Elec. Coop. Corp.*, 537 S.W.3d 722, 726 (Ark. 2018) ("plaintiff must prove . . . that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries"); *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (plaintiff must "establish that the defendant failed to conform to th[eir] duty" and there must be a "close causal connection between the [nonconforming] conduct and the resulting injury"); *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011) (similar); *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017) (similar); *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019) (similar); *Bufkin v. Felipe's La., LLC*, 171 So.

(Footnote Cont'd on Following Page)

- **Negligent failure to warn.** Thirteen Plaintiffs bring an additional negligence claim against the Altria Defendants for negligent failure to warn under the laws of Connecticut, Georgia, Arkansas, Tennessee, New York, Indiana, Utah, Oregon, Kentucky, Florida, Louisiana, Pennsylvania, and Colorado. *See* App. A. In those states that recognize this cause of action,[21] plaintiffs must allege that a defendant's breach of duty in failing to warn caused their alleged injuries.[22]

- **Breach of implied warranty.** Two Plaintiffs bring claims for breach of implied warranty under the laws of Georgia and New York. *See* App. A. These Plaintiffs must allege that a breach of warranty by the Altria Defendants proximately caused their injuries.[23]

- **Intentional infliction of emotional distress and outrage.** Five Plaintiffs bring claims for intentional infliction of emotional distress under the laws of Mississippi, Georgia, Tennessee, Indiana, New York, and Utah. *See* App. A. These claims require extreme and outrageous conduct by the Altria Defendants that intentionally or recklessly caused severe emotional

---

3d 851, 855 (La. 2014) (similar); *Kroger Co. v. Knox*, 98 So. 3d 441, 443 (Miss. 2012) (similar); *Bottom v. Bailey*, 767 S.E.2d 883, 886 (N.C. Ct. App. 2014) (similar); *Clement v. Ecolab, Inc.*, 341 F. Supp. 3d 1205, 1214 (D. Or. 2018) (similar); *Carlson v. Town of S. Kingstown*, 131 A.3d 705, 708 (R.I. 2016) (similar); *Cotton v. Wilson*, 576 S.W. 3d 626, 638 (Tenn. 2019) (similar); *Wood v. United Parcel Serv.*, 453 P.3d 949, 952 (Utah Ct. App. 2019) (similar); *Keller v. City of Spokane*, 44 P.3d 845, 848 (Wash. 2002) (similar); *N.M. ex rel. Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (similar); *MIIX Ins. Co. v. Epstein*, 937 A.2d 469, 474 (Pa. 2007) (similar); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1062 (N.Y. 2001) (similar); *see also, e.g.*, *John B. v. Superior Court*, 137 P.3d 153, 159 (Cal. 2006).

[21] It does not appear that courts in Arkansas or Utah have recognized claims for negligent failure to warn.

[22] *See, e.g.*, *Saladino v. Stewart & Stevenson Servs., Inc.*, 704 F. Supp. 2d 237, 249 (E.D.N.Y. 2010) ("A plaintiff must show . . . 'that the failure to warn was the proximate cause of his [or her] injury.'"); *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1295 (M.D. Fla. 2018) (plaintiff must allege that defendant's "breach caused the plaintiff damages"); *Chandler v. Wal-Mart Stores Inc.*, 498 S.W.3d 766, 772 (Ark. Ct. App. 2016) (similar); *Parkinson v. Novartis Pharm. Corp.*, 5 F. Supp. 3d 1265, 1276 (D. Or. 2014) (similar); *Maya v. Johnson & Johnson*, 97 A.3d 1203, 1213 (Pa. 2014) ("Proximate cause is an essential element in a [negligent] failure to warn case.").

[23] *See, e.g.*, *Whitaker v. Excel Indus.*, 2021 WL 150207 (S.D. Ga. Jan. 7, 2021) (requiring proximate causation); *Nemes v. Dick's Sporting Goods, Inc., & Barnett Outdoors, LLC.*, 2021 WL 739032, at *8 (S.D.N.Y. Feb. 23, 2021) (similar).

distress to Plaintiff.[24] In addition, Plaintiff Fish brings a claim for outrage under Kentucky law and must allege "intentional or reckless" conduct and "a causal connection between the wrongdoer's conduct and the emotional distress." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990).

- **Medical monitoring.** Eleven Plaintiffs bring claims for medical monitoring under the laws of Mississippi, Florida, Georgia, Tennessee, Indiana, Utah, Kentucky, New York, Pennsylvania, and Colorado. *See* App. A. These claims fail as a matter of law because they are not actionable as stand-alone causes of action. *See infra* at 51. But Plaintiffs also cannot state a right to medical monitoring against the Altria Defendants without alleging that the Altria Defendants engaged in conduct that caused their exposure to a substance necessitating such relief.[25]

- **Unjust enrichment.** Fifteen Plaintiffs bring unjust enrichment claims. *See* App. A. These claims are brought by Plaintiffs who reside in Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Kentucky, North Carolina, New York, and Louisiana. *See id.* Although unjust enrichment case law does not always speak in terms of "causation," in the absence of allegations that the Altria Defendants caused a Plaintiff to purchase JUUL products, there would be no basis to conclude that the Altria Defendants were "enriched" by Plaintiff and likewise no basis to conclude that it would be "unjust" to retain such a benefit. Without those allegations, each of the Plaintiffs' claims would fail. *See, e.g.*, 26 Richard A. Lord, *Williston on Contracts* § 68:5 (4th ed. 2019) (unjust enrichment claims

---

[24] *See, e.g.*, *Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445, 447-48 (Ga. Ct. App. 1985) ("plaintiff must show that 'defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff'") (citation and quotation omitted); *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 871 (Ind. Ct. App. 2013) (similar); *Alston v. Miss. Dep't of Employment Sec.*, 300 So. 3d 543, 549 (Miss. Ct. App. 2020) (similar), *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (similar); *Linebaugh v. Gibson*, 471 P.3d 835, 849 (Utah Ct. App. 2020) (similar); *Tsatskin v. Kordonsky*, 189 A.D.3d 1296 (N.Y. App. Div. 2020) (similar).

[25] *See, e.g.*, *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993) (medical monitoring requires that exposure creating need for relief have been "caused by the defendant's negligence"); *Lipinski v. Beazer E., Inc.*, 2005 WL 3955773 (Conn. Com. Pl. Oct. 18, 2005) ("Medical monitoring requires proof of causation"); *Boryla v. Pash*, 960 P.2d 123, 129 (Colo. 1998) (*en banc*) (similar).

require, among other things, "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value"); *see also infra* at 49-51 & nn. 60-62 (citing cases).

- **Conspiracy.** Plaintiffs' conspiracy claims also require allegations that the Altria Defendants caused their injuries. "[I]t is not enough to show that the coconspirator reached some undefined or unrelated agreement with the tortfeasor, as a plaintiff must show that the agreement was the obtaining of a particular objective, and that the act taken in furtherance thereof *caused the plaintiff's injury*." 16 Am. Jur. 2d Conspiracy § 53 (emphasis added).[26]

**2. Plaintiffs Fail To Allege Causation Against The Altria Defendants**

In its October 23, 2020 order, this Court previously addressed the question of what individual plaintiffs must plead to adequately allege causation against the Altria Defendants. 2020 WL 6271173, at *55-56. The Court held that two class representatives, C.D. and L.B., failed to state claims against the Altria Defendants under California's Unfair Competition Law ("UCL") because they had not alleged causation, as necessary for standing under the UCL. *Id.* Just like the twenty Plaintiffs at issue here, C.D. and L.B. had included detailed allegations about their purchases and use of JUUL and described and provided images of the advertising, packaging, store displays, and promotions for JUUL products they allegedly had seen. *See* App. A to Pls. Am. Compl. ¶¶ 267-81 (C.D.); *id.* ¶¶ 778-99 (L.B.). But they failed to allege any statement or action by the Altria Defendants that had influenced their behavior. And both C.D. and L.B. claimed that they began using and became addicted to JUUL products before Altria invested in JLI in December 2018 and before the Altria Defendants provided any services to JLI. The Court concluded that these allegations failed to plead causation against the Altria Defendants. As the Court explained, C.D. and L.B. had not provided "facts and allegations" sufficient to show the Altria Defendants' "unfair conduct contributed to their use of JUUL." 2020 WL 6271173, at *55; *see also, e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 746 (N.D. Cal. 2019) (dismissing the consumer fraud act claims of "many of the plaintiffs

---

[26] *See also, e.g.*, *Reeves v. Maynard*, 23 S.E. 181, 181 (Ga. Ct. App. 1924) ("A complaint for tortious acts committed in pursuance of a conspiracy, as in other tort actions, must show both damage and causal connection between the wrong and the injury."); *Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007) (similar).

[who] have still not described which ads they saw"); *id.* at 751 (requiring that individuals allege "specific ads or POS materials that they relied on" in order to state failure to warn claims); *Colgate*, 345 F. Supp. 3d at 1192 (dismissing claims where "plaintiffs ha[d] not specifically identified what advertisements they saw and what statements in the advertisements were allegedly false, misleading, or unfair").

The Court's October 23, 2020 order gave the class plaintiffs leave to amend their UCL claims based on a belief that these deficiencies "presumably [could] be easily rectified." 2020 WL 6271173, at *55-56. Events since that ruling have shown otherwise. Plaintiffs' amended complaint added some additional details concerning C.D. and L.B. but still failed to allege causation against the Altria Defendants. Mem. in Supp. of the Altria Defs.' Mot. to Dismiss Pls. UCL & RICO Claims Against Altria from the Am. Compls., ECF 1223 (Jan. 4, 2021) ("Altria Jan. 4, 2021 MTD") at 19-23. Plaintiffs also added a third California plaintiff who alleged UCL claims against the Altria Defendants. *See* App. A to Second Am. Compl. ¶¶ 1203-12. But when that new plaintiff dropped out of the litigation, Plaintiffs voluntarily dismissed C.D. and L.B.'s claims—effectively conceding that they had not and could not "rectify" the problems the Court identified.

The twenty bellwether Plaintiffs whose claims are at issue here had the October 23, 2020 order in hand *for months* before filing their amended complaints and the Court's prior rulings in *Colgate* far longer. But even with the Court's guidance, and ample opportunity to implement it, each of these Plaintiffs still fails to provide "facts and allegations" showing the Altria Defendants' "conduct contributed to their use of JUUL." 2020 WL 6271173, at *55. Their allegations concerning their specific purchases and use of JUUL and the marketing and promotional materials mirror those offered by C.D. and L.B. and are every bit as deficient.

Like C.D. and L.B., nineteen of the twenty Plaintiffs began using JUUL products before Altria invested in JLI and before the Altria Defendants provided any services to JLI. *See* App. A.[27] Not

[27] As noted, the only outlier is Plaintiff Arnett, who stated in his Plaintiff Fact Sheet he began using JUUL products in June 2017, only to change his story after his case was chosen by Defendants as one of their six bellwether cases (only four of which remain). In any event, regardless of when Plaintiff Arnett claims to have started using JUUL products, he fails to identify any statement or action by the Altria Defendants that caused him to use JUUL products.

only that, but each of those nineteen Plaintiffs alleges that he or she became addicted to JUUL products "immediately" upon or "shortly after" first using them, which would be ***before*** the Altria Defendants had any involvement with JLI. *See, e.g.*, *Pesce* Am. Compl. ¶ 749 ("As 2016 progressed, Plaintiff's addiction continued to worsen."); *Rest* Am. Compl. ¶ 756 ("By April 2017, Plaintiff became addicted to nicotine."); *D.H.* Am. Compl. ¶ 747 ("Soon after starting JUUL [in 2017], Plaintiff became severely addicted to JUUL"). Accordingly, by the time the Altria Defendants could have done anything JUUL-related that might influence any consumer, these Plaintiffs were already purchasing JUUL products and had already allegedly been injured by those purchases. And given their alleged addiction, before the Altria Defendants did anything JUUL-related, these nineteen Plaintiffs would have been aware of the alleged fraud and concealment relating to the addictive nature of JUUL products. For these reasons alone, Plaintiffs' allegations do not support, but instead refute, any claim that they were injured by something the Altria Defendants said or did. *See, e.g.*, *Phillips v. Apple Inc.*, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) ("If Plaintiffs did not view [defendant's] statement until after suffering injury, then viewing the statement could not have been the 'immediate cause' of the injury.").

Plaintiffs' allegations concerning the advertisements and promotions they claim to have seen and their purported reasons for purchasing JUUL products confirm their inability to allege causation against the Altria Defendants. Like C.D. and L.B., each of the twenty Plaintiffs at issue here include several paragraphs of allegations describing and reproduce numerous images depicting the promotions, advertising, marketing materials, and store displays they allegedly saw when using JUUL products. *See, e.g.*, *Bain* Compl. ¶ 751; *Bagley* Compl. ¶ 750. But like C.D. and L.B., none of the promotions, advertising, materials, or displays described or reproduced by these Plaintiffs involved the Altria Defendants. Plaintiffs also make allegations concerning JUUL-related statements they received in emails and saw on social media and certain websites. *See, e.g.*, *Bain* Compl. ¶¶ 751-53; *Bagley* Compl. ¶¶ 750-51. But the Altria Defendants are not alleged to have made, and did not make, any of those statements either, and they are not alleged to have operated, and did not operate, any of these email accounts, social media accounts, or websites in question. Nor do any of the Plaintiffs identify a statement or action by the Altria Defendants that influenced their behavior elsewhere; none

of them claims to have received a "Make the Switch" advertisement from the Altria Defendants, let alone taken any action as the result of that advertisement, and none claims to have purchased JUUL products because of retail or distribution services provided by the Altria Defendants. Indeed, none of these Plaintiffs even claims to have a purchased JUUL products from a retail location where the Altria Defendants provided services for JLI. To the contrary, as with C.D. and L.B., the product displays depicted in Plaintiffs' amended complaints do not show JUUL products positioned next to Marlboro cigarettes—as Plaintiffs allege shelf space provided by the Altria Defendants did—but instead show stand-alone displays on counters or in front of them.

Finally, Plaintiffs cannot sidestep their failure to allege causation by pointing to conspiracy claims as alleviating that burden. Plaintiffs do not allege that any actions taken in furtherance of a conspiracy that included the Altria Defendants "caused the plaintiff's injury," and therefore these claims fail as well. 16 Am. Jur. 2d Conspiracy § 53. Conspiracy claims require an agreement between defendants to accomplish a criminal or unlawful purpose or to accomplish a lawful objective by criminal means. *See infra* § II.C.12. The only agreements between JLI and the Altria Defendants that Plaintiffs' allegations identify are Altria's December 20, 2018 investment in JLI and the December 20, 2018 Services Agreement under which the Altria Defendants provided retail and distribution services to, and disseminated advertisements for, JLI at JLI's direction. Even if these agreements could support a conspiracy claim (and they cannot, *see infra* § II.C.12), Plaintiffs fail to allege that any actions taken in furtherance of or pursuant to those agreements caused their injuries. Again, nineteen of the twenty Plaintiffs allege that he or she began using JUUL products and was addicted to nicotine *before* any agreement between JLI and Altria existed, before any alleged conspiracy involving the Altria Defendants existed, and before any action was taken "in furtherance" of that conspiracy could have been taken. *See supra* at 5; App. A. Moreover, the marketing, promotion, and advertising that each Plaintiffs identifies as influencing their decisions to purchase and use JUUL products pre-date any alleged agreement between JLI and Altria and do not include marketing or advertising efforts that allegedly involved the Altria Defendants. Accordingly, Plaintiffs fail to allege that actions in furtherance of the purported conspiracy caused their injuries, and their conspiracy claims against the Altria Defendants fail as a matter of law.

Despite the benefit of the Court's October 23, 2020 Order and ample time to prepare amended complaints on behalf of these twenty Plaintiffs, the amended complaints fail to allege causation against the Altria Defendants. The lack of such allegations is telling, and the Court should dismiss each Plaintiff's claims against the Altria Defendants for this reason alone.

**B. Several Plaintiffs Bring Claims That Are Barred By The Products Liability Act In Their State Of Residence**

Plaintiffs' claims fail for reasons common to all of the states at issue, like causation, but they also fail for reasons specific to the states where Plaintiffs reside. Under choice-of-law principles, when "there is a true conflict" with respect to "the relevant law of each of the potentially affected jurisdictions," the court "compar[es] the nature and strength of the interest of each jurisdiction" and "applies the 'law of the state whose interest would be more impaired if its law were not applied.'" *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010). States have a strong interest in determining liability for commercial activity undertaken within their borders. *See id.*; *Chen v. Los Angeles Truck Ctrs., LLC*, 255 Cal. Rptr. 3d 559, 566 (Ct. App. 2019) (explaining state "has a legitimate interest in the application of its products liability law" where "the injured persons are not California residents and were not injured in California"); *Schepler v. Am. Honda Motor Co.*, 2019 WL 398000, at *7 (C.D. Cal. Jan. 29, 2019) (similar). By contrast, California has little or no legitimate interest in imposing its own law nationwide, *McCann*, 225 P.3d at 535, and California courts consistently find that other jurisdictions have a greater interest in having their laws applied to tortious conduct causing injury within their borders, *see, e.g.*, *Offshore Rental Co., Inc. v. Cont'l Oil Co.*, 583 P.3d 721 (Cal. 1978) (Louisiana has greater interest when plaintiff is injured in Louisiana); *Castro v. Budget Rent-A-Car Sys., Inc.*, 65 Cal. Rptr. 3d 430, 442 (Ct. App. 2007) (similar); *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994) (similar).

Based on these principles, each Plaintiff's claims should be governed by the substantive law of his or her state of residence when those laws materially conflict with California law.[28] One issue

[28] The substantive law of the state where a Plaintiff resides also governs regardless of whether that Plaintiff filed his or her case in a different district and was transferred here, *see, e.g.*, *Van Dusen v. Barrack*, 376 U.S. 612 (1964), or directly filed their case in this MDL, *see, e.g.*, *Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 496 (6th Cir. 2015) (citing cases).

where the states' laws diverge concerns the existence and scope of product liability statutes. Many states have enacted products liability acts that govern claims based on physical injuries allegedly resulting from a product, such as the Plaintiffs' claims here, and limit the common law actions available in such circumstances. This includes six states at issue here that have enacted statutes that bar common law claims for negligence, warranty, and/or strict liability alleging personal injuries from a defective product. These statutes require that certain claims be dismissed.[29]

**Tennessee (Bain).** In Tennessee, "products liability actions" are governed by the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. § 29–28–102, and are defined to include "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." *Id.* § 29-28-102(6). This definition includes Plaintiffs' claims, which allege personal injury based on JUUL products. "[T]he TPLA superseded common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product." *Coffman v. Armstrong Int'l, Inc.*, 2021 WL 22180, at *4 (Tenn. Jan. 4, 2021). Accordingly, "[r]egardless of the manner in which a plaintiff characterizes her claims, any claim encompassed by Tenn. Code Ann. § 29–28–102(6) (which includes 'any other substantive legal theory in tort') is subsumed by the TPLA." *Coleman v. DePuy Synthes Sales, Inc.*, 2018 WL 1811556, at *2 (M.D. Tenn. Apr. 17, 2018); *see also* Tenn. Code Ann. § 29-28-102(6) (TPLA subsumes "all actions based upon . . . strict liability in tort; negligence; breach of warranty, express or implied . . . or under any other substantive legal theory in tort or contract whatsoever."). The Court should therefore dismiss each of the common law claims brought by Plaintiff Bain against the Altria Defendants as barred by the TPLA.

**Connecticut (G.F.).** Products liability actions in Connecticut are governed by the Connecticut Products Liability Act ("CPLA"). Conn. Gen. Stat. § 52–572n. The CPLA applies to "products liability claims," defined to include "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly,

---

[29] In addition to these six states, certain states have enacted product liability acts that replace common law strict liability claims. Those statutes are addressed in Section II.C.4 *infra*.

installation, testing, warnings, instructions, marketing, packaging or labeling of any product." *Id.* § 52-572m(b). The claims here again meet this definition. Under the CPLA, "[a] product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." *Id.* § 52-572n. The CPLA thus provides the exclusive avenue for seeking relief for claims based on allegations of a product defect. *See, e.g.*, *Calzone v. Costco, Inc*., 2011 WL 1168601, at *1 (Conn. Super. Ct. Feb. 23, 2011). Accordingly, Plaintiff G.F.'s negligent failure to warn claim against the Altria Defendants is not actionable and should be dismissed.

**Washington (Arnett).** Products liability actions in Washington are governed by the Washington Product Liability Act ("WPLA"). Wash. Rev. Code Ann. § 7.72.030. The WPLA applies to "products liability claim[s]," which it defines to include "any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product." *Id.* § 7.72.010(4). "[T]he WPLA created a single cause of action for product-related harms, and supplants previously existing common law remedies." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp*., 858 P.2d 1054, 1066 (1993) (quotations and citation omitted). This includes actions based on "[s]trict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act." Wash. Rev. Code Ann. § 7.72.010(4). The WPLA therefore supplants Plaintiff Arnett's claims for breach of express warranty against the Altria Defendants, and the Court should dismiss that claim.

**Louisiana (Fairess[30]).** Product liability actions in Louisiana are governed by the Louisiana Products Liability Act ("LPLA"). La. Rev. Stat. Ann. § 9:2800.52. The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." *Id.* Because

[30] Plaintiff Fairess alleges that he currently resides in Florida but "at all relevant times of [his] JUUL usage, [he] was a resident of the state of Louisiana." *Fairess* Compl. ¶ 12.

the LPLA is the exclusive theory of liability for product liability actions, "neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery." *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997). Accordingly, Plaintiff Fairess' claims for negligence and/or gross negligence, negligent misrepresentation, negligent failure to warn, and breach of express warranty are not viable under the LPLA, and the Court should dismiss these claims.

**Mississippi (Westfaul).** In Mississippi, "products liability suits" are governed by the Mississippi Products Liability Act ("MPLA"). Miss. Code. Ann. § 11-1-63. The MPLA applies to "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty." *Id.* "[T]he MPLA provides the exclusive remedy for products-liability claims . . . [and] has abrogated products-liability claims based on strict-liability or negligence theories." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015) (internal quotations omitted). The MPLA thus bars Plaintiff Westfaul's negligence and negligent misrepresentation claims against the Altria Defendants, and the Court should dismiss those claims.

**Indiana (Mangham).** Products liability actions in Indiana are governed by the Indiana Product Liability Act ("IPLA"). Ind. Code Ann. § 34-20-1-1. Indiana courts have made clear "that the Indiana General Assembly intended that the IPLA govern 'all product liability actions, whether the theory of liability is negligence or strict liability in tort.'" *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1178 (Ind. Ct. App. 2020) (quoting *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002)). "The IPLA effectively supplants both the common law negligence claims and the breach of implied warranty claims." *Henderson v. Freightliner, LLC*, 2005 WL 775929, at *3 (S.D. Ind. Mar. 24, 2005). Accordingly, to the extent Plaintiff Mangham's claims are governed by Indiana law, his claims against the Altria Defendants for strict liability, negligence and/or gross negligence, negligent failure to warn, negligent misrepresentation, and breach of implied warranty fail.[31]

[31] Plaintiff Mangham alleges that he currently resides in Indiana but lived in Georgia "[f]rom 2011 until March 2020." *Mangham* Compl. ¶ 12. He further alleges that he "began using JUUL e-cigarettes in 2018" and "switched to other vapes in September 2019," but it is unclear whether he ceased using JUUL products at that time or continued using them after he moved to Indiana. *Id.*

(Footnote Cont'd on Following Page)

### C. Plaintiffs Fail To State A Claim Against The Altria Defendants For Additional, Claim-Specific Reasons

In addition to the lack of causation, each Plaintiff also fails to allege actionable misconduct against the Altria Defendants. The Court should dismiss each of these claims for this reason also. And this is especially true for Plaintiffs' fraud-based claims, which require that they "'state with particularity the circumstances constituting fraud or mistake,'" including "'the who, what, when, where, and how of the misconduct charged.'" *Colgate*, 345 F. Supp. 3d at 1190 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

#### 1. Plaintiffs Fail To Allege Fraudulent Conduct By The Altria Defendants As Necessary For Their Fraud And Fraudulent Concealment Claims

Seventeen Plaintiffs bring fraud and/or fraudulent concealment claims against the Altria Defendants under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See* App. A. Claims for fraud must be based on affirmative misrepresentations[32] or the fraudulent concealment of material information that defendant had a duty to disclose, the latter of

---

Accordingly, this motion explains why Plaintiff Mangham's claims fail under either Indiana or Georgia law.

[32] *See, e.g.*, *Boyanton v. Bros. Produce, Inc.*, 2020 WL 5249589, at *13 (Miss. Ct. App. Sept. 1, 2020) (a "representation" is an essential element); *Fulmer v. Follis*, 2018 WL 6721248, at *4 (Tenn. Ct. App. Dec. 20, 2018) (requiring an intentional misrepresentation); *Fogarty v. Palumbo*, 163 A.3d 526, 542 (R.I. 2017) (same); *Systems Eng'g & Sec., Inc.*, 962 So. 2d at 1091 (requiring "misrepresentation of material fact"); *Clemons v. Delta Airlines, Inc.*, 790 S.E.2d 814, 817 (Ga. Ct. App. 2016) (same); *Landstar Inway Inc. v. Samrow*, 325 P.3d 327, 337 (Wash. Ct. App. 2014) (same); *State v. Apotex Corp.*, 282 P.3d 66, 80 (Utah 2012) (requiring "that a representation was made"); *Wise v. Hays*, 943 N.E.2d 835, 840 (Ind. Ct. App. 2011) (fraudulent misrepresentation requires that defendant have "made false statements"); *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (requiring that "defendant made a material representation to the plaintiff"); *Taylor v. Gore*, 588 S.E.2d 51, 54 (N.C. Ct. App. 2003) (requiring that a false representation be made); *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985) (requiring "a false statement concerning a material fact"); *Oksenholt v. Lederle Labs., a Div. of Am. Cyanamid Corp.*, 656 P.2d 293, 299 (Or. 1982) (similar); *Handfield*, 2020 WL 691550, at *7 (similar); *Echostar Satellite Corp. v. Ultraview Satellite, Inc.*, 2009 WL 1011204, at *13 (D. Colo. Apr. 15, 2009) (requiring showing that defendant "concealed a past or present material fact"); *Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016) (similar); *Gomez-Jimenez v. New York Law Sch.*, 956 N.Y.S.2d 54, 59 (N.Y. Ct. App. 2012) (similar); *see also, e.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 2020 WL 5848363, at *2 (Cal. Ct. App. May 28, 2020) (similar).

which also forms the basis of fraudulent concealment claims.[33] In addition, plaintiffs must allege specific intent—that the misrepresentation or concealment occurred with defendants' knowledge of its falsity and intent to deceive. *See, e.g.*, *Bomar v. Moser*, 251 S.W.3d 234, 241-42 (Ark. 2007) ("Fraudulent concealment consists of a positive act of fraud that is so furtively planned and secretly executed as to keep the plaintiff's action concealed, or perpetrated in such a way that conceals itself.") (internal quotations omitted).[34] Rule 9(b) and this Court's prior rulings require that these and other elements of a fraud claim must be pleaded with particularity. *See supra* at 6. The amended complaints fail to satisfy these requirements.

The only affirmative statement the Altria Defendants are alleged to have made to any consumers were the "Make the Switch" advertisements that the Altria Defendants sent to adult smokers in 2019. *See D.H.* Compl. ¶¶ 257, 627. Each Plaintiff describes a number of advertisements and statements about JUUL products that he or she purportedly viewed during the course of their JUUL use. *See supra* at 5. ***But no Plaintiff claims to have received or seen a Make the Switch advertisement disseminated by the Altria Defendants.*** *See supra* at 5. In the absence of any

---

[33] *See, e.g.*, *Dixon v. Chrisco*, 2018 WL 4275535, at *4 (Tenn. Ct. App. Sept. 7, 2018) ("A party commits fraudulent concealment for failing to disclose a known fact or condition where he had a duty to disclose."); *Landstar Inway Inc.*, 325 P.3d at 337 ("An omission may constitute a misrepresentation if the party had a duty to disclose information and breached this duty."); *Giddings & Lewis, Inc.*, 348 S.W.3d at 747 ("fraud by omission claim is grounded in a duty to disclose"); *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 264 (Miss. 2009) ("silence must relate to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party") (citations omitted); *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 333 (Utah 1997), *on reh'g* (Aug. 22, 1997) ("Concealment or nondisclosure becomes fraudulent only when there is an existing fact or condition . . . which the party charged is under a duty to disclose."); *Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemn. Fund*, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013) ("Fraud by omission is actionable 'only where there is an independent duty to disclose the omitted information.'"); *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991) (similar); *Echostar Satellite Corp.*, 2009 WL 1011204, at *13 (party asserting claim must show there was a "duty to disclose information"); *Gomez-Jimenez*, 956 N.Y.S.2d at 59 (requiring that the defendant had a "duty to disclose material information and that it failed to do so"); *see also, e.g.*, *Butler Am., LLC v. Aviation Assurance Co.*, 269 Cal. Rptr. 3d 284, 291 (Ct. App. 2020) (requiring "concealment of a material fact").

[34] *See also, e.g.*, *Coffey v. Coffey*, 2020 WL 6277433, at *9 (Tenn. Ct. App. Oct. 26, 2020) (requiring an "affirmative act to conceal material information" that is "more than mere silence"); *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1258 (Cal. 2003) (requiring "knowledge of falsity [and] intent to defraud, i.e., to induce reliance").

allegation by a specific Plaintiff that he or she saw this advertisement, that Plaintiff cannot state a fraud claim against the Altria Defendants based on these advertisements.

Moreover, even if an individual Plaintiff did allege that he or she had seen a Make the Switch advertisement, that advertisement still would not support a fraud claim against the Altria Defendants. Plaintiffs mischaracterize these advertisements as describing JUUL products as "cessation devices." *E.g.*, *D.H.* Compl. ¶¶ 255-58. They did not. The advertisements provided by the Altria Defendants referred to JUUL products as "alternatives" to cigarettes that contained nicotine. *See* Ex. 9 to Altria May 29, 2020 MTD (advertisement on packages of L&M and Parliament: "Switching can be simple. JUUL is a satisfying alternative to cigarettes for adult smokers"); *id* (advertisement on packages of Marlboro: "Try the satisfying alternative to cigarettes."); *see also* 2020 WL 6271173, at *28 n. 28 (incorporating advertisements by reference). These statements are not false: JUUL products are alternatives to cigarettes that contain nicotine. And, in any event, they would not be actionable fraud; at most, they are puffery. *See, e.g.*, *In re Fontem US, Inc. Consumer Class Action Litig.*, 2016 WL 11503066, at *8-9 (C.D. Cal. Apr. 22, 2016) (concluding that statements that e-cigarettes were "smarter alternative to regular cigarettes" was puffery); *Shields v. Alere Home Monitoring, Inc.*, 2015 WL 7272672, at *10 (N.D. Cal. Nov. 18, 2015) (advertising blood test as a "convenient alternative to traditional lab tests" was puffery); *Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018) ("a claim that a product is 'safe' generally, which is puffery because it conveys only the seller's judgment that the risk is low enough to be called 'safe'"); *St. Paul Fire & Marine Ins. Co. v. Russo Bros.*, 641 A.2d 1297, 1300 n.2 (R.I. 1994) ("The general rule is that a misrepresentation should take the form of an expression of fact and not the offering of an opinion or estimate.").

Plaintiffs also allege that AGDC and ALCS helped to distribute "JUUL pods . . . with packaging stating that JUUL pods contain only 5% nicotine by weight and are 'approximately equivalent to about 1 pack of cigarettes.'" *D.H.* Compl. ¶ 239. Even if these statements provided a basis for a fraud claim, that claim would lie against JLI and not the Altria Defendants. As Plaintiffs' allegations make clear, these were not statements by the Altria Defendants—they were statements on packaging designed and placed on JUUL products by JLI—and therefore do not provide a basis for a fraud claim against the Altria Defendants.

Plaintiffs also fail to allege conduct by the Altria Defendants sufficient to support fraudulent concealment claims. Plaintiffs first must allege that the Altria Defendants had a duty to disclose information to Plaintiffs. *See*, *e.g.*, *Priority Hosp. Grp., Inc. v. Manning*, 2020 WL 5648530, at *6-7 (La. Ct. App. Sept. 23, 2020) ("When fraud is based on silence or suppression of the truth, the plaintiff must prove a duty to speak or disclose the information."); *Merrell v. Smith*, 2020 WL 7641053, at *9-10 (N.C. Super. Dec. 22, 2020) ("silence is fraudulent only when there is a duty to speak").[35] Such a duty might arise when defendant and plaintiff share a fiduciary or some other special relationship, *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 880 (Fla. Dist. Ct. App. 2000), or where "disclosure is necessary to prevent an ambiguous or partial statement from being misleading." *City of Rome v. Glanton*, 958 F. Supp. 1026, 1039 (E.D. Pa.), *aff'd sub nom. City of Rome, Italy v. Glanton*, 133 F.3d 909 (3d Cir. 1997).[36] Plaintiffs do not allege any relationship with the Altria Defendants, let alone a transactional relationship giving rise to a duty to disclose. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 467 F. Supp. 3d 849, 860-61 (N.D. Cal. 2020)

---

[35] *See also, e.g.*, *Gentry v. Noe*, 545 S.W.3d 323, 326 (Ky. Ct. App. 2018) (requiring a "duty to disclose the fact"); *Dixon*, 2018 WL 4275535, at *4 (same); *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223 (D. Or. 2016) (requiring that defendant "remained silent when the defendant had a duty to speak"); *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 830-831 (2015) (same); *Landstar Inway Inc.*, 325 P.3d at 337 ("An omission may constitute a misrepresentation if the party had a duty to disclose information and breached this duty."); *W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329, 337 (D.R.I. 2012) (similar); *Mabus*, 13 So. 3d at 264 (similar); *TransPetrol*, 764 So. 2d at 879 (similar); *Jensen*, 944 P.2d at 333 (same); *Ward v. Worthen Bank & Tr. Co.*, 681 S.W.2d 365, 368 (Ark. 1984) (similar).

[36] *See also, e.g.*, *Coffey*, 2020 WL 6277433, at *9 ("when there is a confidential or fiduciary relationship between the parties, the 'failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation'") (internal quotation omitted); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) ("The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."); *Gardner v. First Escrow Corp.*, 696 P.2d 1172, 1176 (Or. Ct. App. 1985) ("Fraud may be predicated on a failure to disclose material facts when the parties have a fiduciary relationship."); *900 Unlimited, Inc. v. MCI Telecommunications Corp.*, 626 N.Y.S.2d 188, 188 (1995) (affirming dismissal of fraudulent concealment claim because "[i]n the absence of a contractual relationship or a confidential or fiduciary relationship, a party may not recover for fraudulent concealment of fact, since absent such a relationship, there is no duty to disclose."); *Gnagey*, 82 A.3d at 500 ("[F]raud by omission is actionable 'only where there is an independent duty to disclose the omitted information.'"); *Donegal Mut. Ins. Co.*, 598 A.2d at 1315-16 (similar); *Echostar Satellite Corp.*, 2009 WL 1011204, at *13 (party asserting claim must show there was a "duty to disclose information").

(dismissing fraudulent concealment claims under California law where plaintiff salespeople failed to allege any transactional or contractual relationship with supplier of automotive devices). Nor do Plaintiffs allege a duty to disclose based on a partial representation by the Altria Defendants. None of the Plaintiffs claims to have received such a representation, which is not surprising, since the only representations allegedly made by the Altria Defendants to consumers concerning JUUL products were the Make the Switch advertisements provided to adult smokers in 2019. And, in any event, the Make the Switch advertisements were not partial representations—they were clear that JUUL products contained nicotine and that nicotine is addictive. *See supra* at 27.

Moreover, even if Plaintiffs could allege that the Altria Defendants owed a duty to disclose, they fail to allege that the Altria Defendants were in possession of information that should have been disclosed but was not. *See e.g.*, *Merrell*, 2020 WL 7641053, at *9-10 ("A duty to disclose arises when . . . one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence."); *Mabus*, 13 So. 3d at 264 (liability requires that "silence must relate to a material fact or matter *known to the party* and as to which it is his legal duty to communicate to the other contracting party. An affirmative act of concealment is necessary.") (emphasis added). Plaintiffs allege that Defendants, collectively, concealed information about JUUL's product design and the risks allegedly created by those designs. *See, e.g.*, *Westfaul* Compl. ¶¶ 869-76. But the Altria Defendants did not design JUUL products or conduct research on their safety, and, as JLI's *competitor* until December 2018, would not have been privy to such sensitive and proprietary information. *See supra* at 4.

Plaintiffs also cannot base their concealment claim on allegations that the Altria Defendants possessed information about JUUL's marketing or its alleged appeal to underage vapors. *See D.H.* Compl. ¶¶ 63, 534-38. But Plaintiffs allege elsewhere that this information was available to the public before the Altria Defendants could have assumed a duty. *See id.* ¶¶ 155, 518-22. Likewise, plaintiffs represented by some of the same attorneys in this litigation had brought actions based on the allegedly concealed information even before Altria's investment,[37] and, by the time the Altria Defendants

[37] *See* Class Action Compl., *Colgate et al. v. JUUL Labs, Inc. et al*, No. 3:18-cv-02499-WHO (N.D. Cal.) (filed Apr. 16, 2018).

provided services to JLI, federally required warnings appeared on all packages of JUUL products, *see D.H.* Compl. ¶ 353.[38] And, rather than concealing information about underage vapor use, Altria informed FDA in a letter that Altria made public at the time that pod-based products and flavors, such as those being used by JLI, were contributing to the increase in underage vapor use. *See* October 25, 2018 Letter.

Finally, it is not enough for Plaintiffs to claim, in general and conclusory fashion, that "DEFENDANTS created and implemented a plan to generate a market for e-cigarettes and substantially increase sales of JUUL through a pervasive pattern of false and misleading statements and omissions" and "knew or should have known that their misrepresentations and/or omissions were false and misleading." *See D.H.* Compl. ¶¶ 913, 924. Conclusory, group pleading does not satisfy Plaintiffs' pleading obligations.

**2. Plaintiffs Fail To Allege A Negligent Misrepresentation By The Altria Defendants**

Fifteen Plaintiffs bring negligent misrepresentation claims against the Altria Defendants under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See* App. A. These claims are not actionable under the laws of Arkansas, Indiana, North Carolina, or Colorado. *See supra* § II.A.1 In the remaining states, they require that plaintiffs allege a false representation of material fact. *See, e.g.*, *Arlington Pebble Creek*, 232 So. 3d at 505 (requiring that defendant made "a misrepresentation of material fact"); *Cruz*, 66 A.3d at 453 (same).[39] Because negligent misrepresentation claims sound

[38] Plaintiffs' allegations concerning "Altria's own pharmacokinetic studies" do not show otherwise. *D.H.* Compl. ¶ 241. This research concerned Nu Mark products, which are different from JUUL pods. *Id.* Moreover, Plaintiffs concede that this research found that the Nu Mark products delivered *less* nicotine than a pack of cigarettes. *Id.* It therefore does not show, or even suggest, that the Altria Defendants knew JUUL delivered more nicotine than a pack of cigarettes. Furthermore, as reflected in the document cited to support this allegation, Altria shared the results of this study at a public "investor day" in November 2017. *See id.* Plaintiffs cannot state a fraudulent concealment claim based on information that was publicly disclosed and not even concealed.

[39] *See also, e.g.*, *Lafontaine v. Alexander*, 808 S.E.2d 50, 55 (Ga. Ct. App. 2017); *Merriman*, 396 P.3d at 360-61 (plaintiff must prove defendant "supplied information . . . that was false"); *Saucier*, 150 So. 3d at 731 (requiring "a misrepresentation . . . of fact); *Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 WL 2218405, at *16 (D. Or. Sept. 6, 2005) (requiring that defendant "negligently ma[de] false

(Footnote Cont'd on Following Page)

in fraud, those allegations also must be pled with the heightened particularity required by Rule 9(b). *See, e.g.*, *Parducci*, 399 F. Supp. 3d at 983 (dismissing negligent misrepresentation claim because it "sound[s] in fraud" and failed to meet pleading requirements of Rule 9(b)); *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1166 & n.8 (E.D. Cal. 2019) (similar).

Plaintiffs fail to allege a negligent misrepresentation by the Altria Defendants for the same reason they fail to allege an intentional misrepresentation. The only alleged statements made to consumers by the Altria Defendants were the Make the Switch advertisements, which no Plaintiff even claims to have seen. *See supra* at 5. And, even if one of these Plaintiffs did claim to have seen such an advertisement, it did not include any false or misleading information. *See supra* at 26.

In addition, negligent misrepresentation claims in some jurisdictions require that plaintiffs allege a duty of care to state a negligent misrepresentation claim. *See, e.g.*, *Stanley v. Wyeth, Inc.*, 991 So. 2d 31, 34 n.5 (La. Ct. App. 2008) ("To meet the burden of proof the plaintiff must show . . . that the defendant owed a duty of care to the plaintiff."); *Brinkman v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40, 43 (N.C. 2003) (similar). And in Oregon, negligent misrepresentation claims are limited to defendants who supply information for the guidance of others in their business transactions. *See, e.g.*, *Cameron v. Harshbarger*, 998 P.2d 221, 221 (Or. Ct. App. 2000) (a "special relationship must exist to give rise to liability for negligent misrepresentation in an arms' length sales transaction"). Plaintiffs do not allege a duty owed by the Altria Defendants or any relationship between the Altria Defendants and themselves, let alone a special, confidential, or fiduciary relationship. *See supra* at 29-30. This is further reason to dismiss the negligent misrepresentation claims brought by Plaintiffs Fairess, J.L.K., and Keffer.

**3. Plaintiffs Fail To State Breach Of Express Warranty Claims**

Sixteen Plaintiffs bring breach of express warranty claims against the Altria Defendants under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Pennsylvania, New York, Louisiana, and Colorado. *See* App. A. In Georgia, Florida, Washington, North Carolina, Kentucky, Pennsylvania, and Rhode

---

representations"); *J.A.O. Acquisition Corp.*, 863 N.E.2d at 587 (similar); *Bortz*, 729 A.2d at 561 (similar).

Island, breach of express warranty claims require privity. *See supra* § II.A.1. Plaintiffs do not claim to be in privity with the Altria Defendants; nor could they since the Altria Defendants never sold JUUL products. This alone is reason to dismiss the express warranty claims of Plaintiffs Edwards, Rest, L.W.B., N.W., Rosenfield, and Widergren.

Moreover, plaintiffs must allege that the defendant made an "affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain" between the parties. *TimberPro Inc.*, 2017 WL 943317, at *3 (citation and quotations omitted).[40] Plaintiffs fail to allege this requirement against the Altria Defendants.

The only "affirmation of fact or promise" allegedly made by the Altria Defendants were the "Make the Switch" advertisements sent to adult smokers and attached to certain packages of PM USA brand cigarettes. *See supra* at 26. These statements do not provide a basis for Plaintiffs' breach of express warranty claims because none of them even claims to have seen them. *See supra* at 5. Moreover, the statements in those advertisements were not statements of fact or promises—their description of JUUL products as alternatives to cigarettes were puffery. *See supra* at 26. As a result, they are not actionable as "express warranties." *See, e.g.*, *Libby Hill Seafood Rests., Inc. v. Owens*, 303 S.E.2d 565, 569 (N.C. Ct. App. 1983) ("the alleged misrepresentations are no more than the expression of [Defendant's] opinion . . . they certainly do not rise to the level of 'affirmation of fact or promise' required for the creation of an express warranty") (citation and quotations omitted).[41]

---

[40] *See, e.g.*, *Wedderburn Corp. v. Jetcraft Corp.*, 2015 WL 6951549, at *8 (N.C. Super. Nov. 6, 2015) (similar); *Sims*, 349 F. Supp. 3d at 643 (similar); *Babb*, 2014 WL 690154, *rev. granted, cause remanded*, 329 P.3d 67 (similar); *Larrison*, 873 P.2d at 1094 (similar); *SME Indus., Inc.*, 28 P.3d at 676 (similar); *Tillman*, 246 S.E.2d at 140 (similar); *Greenway Equip.*, 602 S.W.3d at 148 (similar); *Armadillo Distrib.*, 142 F. Supp. 3d at 1253 (similar); *Fidrych*, 1982 WL 604065, at *1 (similar); *Wright*, 828 So. 2d at 202 (similar); *Belden Inc.*, 885 N.E.2d at 762 (similar); *Trimpey Tire Sales & Serv., Inc. v. Stine*, 403 A.2d 108, 109 (Pa. 1979) (similar); *Reynolds v. Bordelon*, 172 So. 3d 607, 615 (La. 2015); *see also, e.g.*, *Stearns*, 2009 WL 1635931, at *4 (requiring, among other things, that defendants "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain") (citation and quotations omitted).

[41] *See also, e.g.*, *Lee v. C & P Serv. Corp.*, 363 So. 2d 586, 588 (Fla. Dist. Ct. App. 1978) (holding defendants' comments were opinions, not affirmations of fact or promise which became a basis of the parties' bargain); *Babb*, 2014 WL 690154, *rev. granted, cause remanded*, 329 P.3d 67 (affirming trial court's dismissal of express warranty claim because defendant's representations were mere puffery that did not give rise to an express warranty); *Sheffield v. Darby*, 535 S.E.2d 776, 779 (Ga. Ct. App. 2000) (finding express warranty claim failed because plaintiff's "statements were mere opinions,

(Footnote Cont'd on Following Page)

These statements also were not untrue and thus there is no allegation that these statements were breached. *See also, e.g.*, *Hollenbeck v. Ramset Fasteners, Inc*., 148 S.E.2d 287, 289 (N.C. 1966) ("Even if the plaintiff's evidence justified the finding of an express warranty, he has shown no breach of that warranty. . . ."); *Evershine Prod., Inc. v. Schmitt*, 202 S.E.2d 228, 231 (Ga. Ct. App. 1973) (similar).

Nor can Plaintiffs state a breach of express warranty claim against the Altria Defendants based on allegations that the Altria Defendants helped distribute "JUUL pods . . . with packaging stating that JUUL pods contain only 5% nicotine by weight and are 'approximately equivalent to about 1 pack of cigarettes.'" *D.H.* Compl. ¶ 239. Each of these Plaintiffs had begun using JUUL products, which would have included this statement, before the Altria Defendants ever "helped to distribute" those products. *See supra* at 5. As a result, the Altria Defendants' alleged role in distributing these products could not have formed the basis of any bargain formed by these Plaintiffs when purchasing JUUL products. Moreover, the statements in question were not statements made by the Altria Defendants—they were JLI's statements—and therefore do not state a basis for a breach of express warranty against the Altria Defendants. *See e.g.*, *Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, L.L.C.*, 2006 WL 3059951, at *6 (Wash. Ct. App. Oct. 23, 2006) (finding no claim for breach of express warranty against distributor because distributor did not make any warranty and did not adopt manufacturer's statements); *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 WL 3765313, at *49 (N.C. Super. Aug. 8, 2019) (finding "no evidence of an express warranty from Interior Distributors"); *Luciano v. World-Wide Volkswagen Corp*., 514 N.Y.S.2d 140, 142 (N.Y. App. Div. 1987) (finding distributor was not liable for breach express warranty because "the evidence establishes that [Defendant] acted only as a distributor in the original sale and that the . . . warranty was not issued in its name").

---

commendations, or puffing"); *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1138 (Utah 2002) (holding plaintiff made "mere statements of opinion [that] did not create an express warranty").

### 4. Plaintiffs Fail To State Strict Liability Claims Against The Altria Defendants

Sixteen Plaintiffs bring strict liability claims based on a failure to warn theory against the Altria Defendants. *See* App. A. These Plaintiffs reside in Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, New York, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Louisiana, Colorado, and Pennsylvania. *See id.* Plaintiffs do not allege that the Altria Defendants played any role in designing JUUL products or in the packaging, labeling, or advertising content for JUUL products. Instead, they base these claims on distribution, retail, and marketing services, such as "account assistance," "sales support," "distribution assistance," "warehouse storage," and "supply chain management," which the Altria Defendants allegedly provided to JLI in 2019 and early 2020. *See D.H.* Compl. ¶¶ 612, 617. These allegations are insufficient to state a claim against the Altria Defendants on behalf of any of these Plaintiffs.

#### a. Eight Plaintiffs Allege Residency In States That Do Not Allow Strict Liability Claims Against Non-Manufacturer And Non-Seller Defendants

Under choice-of-law principles, Plaintiffs' claims are governed by the law of the State where each Plaintiff resides. *See supra* at 21-22. Seven Plaintiffs claim to reside in states that only permit strict liability or product liability claims to be brought against a manufacturer, designer and/or seller of the product—categories that would not include the Altria Defendants. This is true even if the Court were to treat common law strict liability claims that are barred by a state products liability act as instead pled under the applicable product liability act. Specifically:

- In Oregon, strict liability claims are governed by Oregon's products liability statute. *See, e.g.*, *Sease v. Taylor's Pets, Inc.*, 700 P.2d 1054, 1058 (Or. Ct. App. 1985); *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1424-25 (9th Cir. 1983) (similar). Plaintiff Keffer does not cite this statute. But even if he had, the Oregon act does not permit claims against distributors or service providers. Although the legislature "could have done so, it did not extend [ORS 30.920] to non-seller distributors of defective products . . . . Accordingly, even assuming that defendant may be considered a distributor for the purpose of ORS 30.900, it is not strictly

liable in that capacity for the alleged injuries." *Johnston v. Water Sausage Corp.*, 733 P.2d 59, 61-62 (Or. Ct. App. 1987); *see also, e.g.*, *Mason v. Mt. St. Joseph, Inc.*, 203 P.3d 329, 336 (Or. Ct. App. 2009) (Oregon act does not "include[] those who are indirectly involved in the distribution of the product as within the statute's ambit").

- In Tennessee, strict liability claims are not actionable as common law claims but instead must be pled under the TPLA, Tenn. Code Ann. § 29–28–101 *et seq*. Plaintiff Bain does not cite the TPLA. But even if she had, the statute limits claims to a product's manufacturer and in some instances the "seller" of the product, but only under circumstances not present here. *Id.* § 29–28–106. As the Tennessee Supreme Court has explained, "[n]o product liability action as defined in § 29–28–102(6), when based on the doctrine of strict liability in tort[,] shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent." *Baker v. Promark Prods. W., Inc.*, 692 S.W.2d 844, 846 (Tenn. 1985).
- In Georgia, strict liability claims are preempted by Georgia's product liability act, which limits strict liability claims to product manufacturers. *See* Ga. Code Ann. § 51–1–11(b)(1). "Thus, strict liability applies only to those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." *Davenport v. Cummins Ala., Inc.*, 644 S.E.2d 503, 507 (Ga. Ct. App. 2007).
- In Indiana, strict liability claims are also governed by statutory rather than common law. *See, e.g.*, *Bayer Corp.*, 153 N.E.3d at 1178 (noting that it is "clear" that the Indiana General Assembly intended that the Indiana Products Liability Act to govern "all product liability actions, whether the theory of liability is negligence or strict liability in tort"). Under the Indiana statute, IPLA, "[a] product liability action based on the doctrine of strict liability in

tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective." Ind. Code Ann. § 34-20-2-3. Accordingly, the IPLA generally "restricts actions for strict liability in tort to manufacturers of defective products," *Warriner v. DC Marshall Jeep*, 962 N.E.2d 1263, 1267 (Ind. Ct. App. 2012), and a plaintiff can only "sue the [non-manufacturer] in strict liability if two conditions are met: (1) the [defendant] must be a principal distributor or seller over whom the court can hold jurisdiction; and (2) the court must be unable to hold jurisdiction over [] the actual manufacturer." Ind. Code Ann. § 34-20-2-4.

- In Washington, strict liability claims are governed by the WPLA. *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012) ("The WPLA is the exclusive remedy for product liability claims.") (citation and quotations omitted). "[T]he WPLA differentiates between the liability of manufacturers and product sellers other than manufacturers." *Stepp v. Takeuchi Mfg. Co (U.S.) Ltd.*, 2008 WL 4460268, at *5 (W.D. Wash. Oct. 2, 2008). Product sellers are "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption," including a "manufacturer, wholesaler, distributor, or retailer of the relevant product." Wash. Rev. Code Ann. § 7.72.010. But sellers are "liable under the WPLA only if the plaintiff's harm was proximately caused by the (1) the negligence of the product seller, (2) the breach of an express warranty made by the product seller, or (3) the intentional misrepresentation of facts or intentional concealment of information by the product seller." *Stepp*, 2008 WL 4460268, at *5; Wash. Rev. Code Ann. § 7.72.040. These claims, and Plaintiff Arnett's inability to plead them against the Altria Defendants, are addressed elsewhere. *See supra* § II.A., II.C.1, II.C.2; *infra* § II.C.5.
- Plaintiff Westfaul brings a claim under the MPLA, Miss. Code. Ann. § 11-1-63, *see Westfaul* Compl. ¶¶ 769-85, which "provides the exclusive remedy 'in any action for damages caused by a product' against a product manufacturer [designer] or seller," *Elliott*, 181 So. 3d at 270 (citing Miss. Code Ann. § 11-1-63(a); *see also, e.g.*, *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d at 1027, 1029 (similar). "The MPLA, by its very terms, does not provide a cause of action

against a common carrier that merely transports another company's product from a manufacturer to a seller." *Id.* at 271; *see also, e.g.*, Miss. Code Ann. § 11–1–63(a) (allowing claims against manufacturers, sellers, and designers of products).[42]

- Plaintiff Fairess brings a claim under the LPLA, La. Rev. Stat. Ann. § 9:2800.52. The LPLA provides that "[a] non-manufacturing seller/distributor of a product . . . is only liable . . . where that seller is essentially deemed to be the manufacturer of the product, such as when the seller 'exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage' or when the seller operates as the 'alter ego' of the manufacturer in vouching for the product by holding it out as its own, such as by placing its label on the product and/or by being the sole distributor of a particular product." *Benoit v. Milwaukee Elec. Tool Corp.*, 2008 WL 11350278, at *3 (M.D. La. Aug. 4, 2008).
- In Colorado, Plaintiff Rosenfield's current state of residency, the products liability statute "excludes such non–manufacturer entities"—including parties providing distribution or retail services—"from liability under a product liability claim." *Reich v. Genzyme Corp.*, 2015 WL 13236347, at *9 (D. Colo. Aug. 14, 2015); *see also* Colo. Rev. Stat. § 13–21–402(1) ("No product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action.").

The strict liability claims of Plaintiffs Keffer, Bain, Edwards, Mangham, Arnett, Westfaul, Fairess, and Rosenfield are governed by the laws in the states identified above. *See* App. A.[43] Several of these Plaintiffs do not bring their strict liability claims under the appliable products liability act,

[42] The court's decision in *State Farm Fire & Casualty Co. v. Amazon.com, Inc.*, 414 F. Supp. 3d 870 (N.D. Miss. 2019), is not to the contrary. In that case, plaintiff was bringing "common law claims of negligence and failure-to-warn . . . rather than MPLA claims." *Id.* at 872. Moreover, the court's decision in *State Farm* was fact-specific and turned on Amazon.com's role in providing merchandise to purchasers.

[43] Plaintiff Mangham currently lives in Indiana but alleges that he purchased and used JUUL products in Georgia. *Mangham* Compl. ¶ 12. His claims would fail under either state's products liability act. Plaintiff Rosenfield claims to have resided in New York, Pennsylvania, and Colorado while using JUUL products. As set forth in the following section, and given the failure to allege causation against the Altria Defendants, these claims fail regardless of which of these three states' laws are applied.

and their claims fail for that reason alone. But even if they had pled their claims under the appropriate statute, those claims still would fail, because they make no allegation that any of the Altria Defendants ever manufactured or sold JUUL products. Plaintiffs also do not allege that the Altria Defendants had control over the design of JUUL products or held those products out as their own. Accordingly, these Plaintiffs fail to state a strict liability claim against the Altria Defendants.[44]

**b. The Remaining Plaintiffs Do Not State A Claim For Strict Liability Based On Distribution Services**

The remaining nine Plaintiffs bringing strict liability claims reside in states—Florida, New York, Arkansas, Utah, Rhode Island, North Carolina, and Kentucky—that permit strict liability claims against distributors under certain limited circumstances.[45] Those circumstances are not alleged here, and these Plaintiffs' claims therefore also fail.

As an initial matter, Plaintiffs do not allege that the Altria Defendants took title to JUUL products or sold those products directly to the public. In the absence of allegations that they took title, the Altria Defendants should not be treated as distributors for purposes of strict liability. *See, e.g.*, *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019) ("a manufacturer, distributor, dealer, and retailer who own—i.e., have title to—the products during the chain of distribution are sellers, whereas shippers, warehousemen, brokers, marketers, auctioneers, and other

[44] Strict liability claims in Kentucky are governed by the Kentucky Products Liability Act ("KPLA"), Ky. Rev. Stat. Ann. § 411.300. Plaintiff Fish does not cite this statute when attempting to plead a strict liability claim. But even if he had, this claim would fail. The KPLA is subject to Kentucky's "middleman statute," Ky Rev. Stat. Ann. § 411.340, which "relieves a wholesaler, distributor or retailer from liability in any product liability action where: 1) the manufacturer is identified and subject to the court's jurisdiction; (2) the product is sold in its original condition or in the same condition in which it was received by the middleman; (3) the middleman did not provide a separate express warranty; and (4) the middleman did not know or have reason to know that the product was in a defective condition unreasonably dangerous to the user or consumer." *Turpin v. Stanley Schulze & Co.*, 2009 WL 875218, at *2 (Ky. Ct. App. Apr. 3, 2009). Because Plaintiffs fail to allege that the Altria Defendants had knowledge of the alleged defect, *see supra* at 29-30 & n.38, this provision bars the strict liability claim brought by Plaintiff Fish against them under Kentucky law. Moreover, Plaintiffs fail to state a claim for strict liability for the reasons set forth in the following section.

[45] *See, e.g.*, *Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994); *Thomas v. Borg-Warner Morse Tec LLC*, 2018 WL 8733352, at *2 (E.D. Ark. Nov. 19, 2018); *Bylsma v. R.C. Willey*, 416 P.3d 595, 607 (Utah 2017); *Parrillo v. Giroux Co.*, 426 A.2d 1313, 1316 (R.I. 1981); *West v. KKI, LLC*, 300 S.W.3d 184, 191 (Ky. Ct. App. 2008).

bailees or consignees, who do not take title to property during the course of a distribution but rather render services to facilitate that distribution or sale, are not sellers" and are not subject to strict liability); *Straley v. United States*, 887 F. Supp. 728, 744, 750 (D.N.J. 1995) (liability for brokers dealing in defective product hinges on whether brokers took title to the product in question). As one court explained, "every example of a 'seller or distributor' that the Restatement [(Third) of Torts: Products Liability] supplies is an entity that owns the product it later sells or distributes, to wit: 'manufacturers, wholesalers, . . . retailers[,] . . . lessors, bailors, and those who provide products to others as a means of promoting . . . such products or some other commercial activity.'" *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 398 (S.D.N.Y. 2018) (citation omitted).[46]

Moreover, even if the services provided by the Altria Defendants were sufficient to render them "distributors" for purposes of strict liability under one or more of the relevant states' laws, Plaintiffs fail to state a claim for strict liability. Plaintiffs make no allegations that would connect the Altria Defendants' limited distribution services to the specific JUUL products they purchased and used. The Altria Defendants have never been the only company providing distribution and retail services to JLI and are alleged only to have provided limited services, for a little more than a year, at only certain retail locations. *See, e.g.*, *D.H.* Compl. ¶¶ 612, 616-17. Even if true, these allegations at most would show that the Altria Defendants played a role in a small percentage of JUUL products reaching consumers in 2019 and early 2020. By contrast, the vast majority of JUUL products—including *all* products sold before 2019, *all* products sold online, and *all* products sold at the many locations where the Altria Defendants are not alleged to have provided any services—were distributed, purchased, and consumed without the Altria Defendants providing any alleged assistance.

[46] Although the California Court of Appeal recently remarked that this case law would not apply to strict liability claims against Amazon under California law, *Bolger v. Amazon.com LLC*, 267 Cal. Rptr. 3d 601, 615-620 (Ct. App. 2020), the court's discussion on this issue has no bearing here since Plaintiffs' claims are governed by the law in their states of residence and not California law. *See supra* at 21-22. Moreover, in *Bolger*, before citing this case law, the court already had concluded that Amazon could be treated as a *retailer* for purposes of strict liability: "Amazon functions in much the same manner as a conventional retailer." *Id.* at 617. The court's discussion of this case law is therefore *dicta*. Nor would *Bolger* otherwise support Plaintiffs' strict liability claims against the Altria Defendants. The question of whether a *retailer* is strictly liable addressed in *Bolger* is fundamentally different from the question presented by Plaintiffs' claims against the Altria Defendants, which are not alleged to have *ever* sold JUUL products to consumers.

Individuals who did not purchase JUUL products that the Altria Defendants helped distribute have no claim against the Altria Defendants. To state a strict liability claim based on defendants' role in the distribution chain for a product, a plaintiff must allege that the defendant helped distribute the actual product that allegedly injured them.[47] None of these Plaintiffs, however, has alleged that they purchased any JUUL product that was distributed by the Altria Defendants, despite the fact that Plaintiffs possess a list of retailers to whom the Altria Defendants provided distribution services for JLI.

In addition, even if one or more Plaintiffs purchased JUUL products that the Altria Defendants had helped to distribute or from a retailer to whom the Altria Defendants provided JUUL-related services, those individuals still cannot allege a failure to warn by the Altria Defendants. Each Plaintiff alleges that he or she was already using JUUL products and already was addicted to those products *before* any such services were provided. *See supra* at 5. Plaintiffs also fail to allege that the Altria Defendants had information that they failed to disclose, which is further reason their failure to warn theory should fail. *See supra* at 29-30 & n.38.

For all of these reason, Plaintiffs' strict liability claims against the Altria Defendants should be dismissed in their entirety.

---

[47] "In a products liability action, identification of the exact defendant whose product injured the plaintiff is, of course, generally required." *Hymowitz v. Eli Lilly & Co*., 539 N.E.2d 1069, 1073 (N.Y. 1989); *see also, e.g.*, *Simonetta v. Viad Corp*., 197 P.3d 127, 136 (Wash. 2008) ("Case law supports the conclusion that there is no strict liability for failure to warn of the dangers inherent in another product."); *Toth v. Economy Forms Corp*., 571 A.2d 420, 423 (Pa. 1990) ("Pennsylvania law does not permit" imposing liability on a supplier that did not supply the defective product); *Schaffner v. Aesys Techs., LLC*, 2010 WL 605275, at *6 (Pa. Super. Ct. Jan. 21, 2010) ("[A] manufacturer cannot be held liable under theories of strict liability or failure to warn for a product it neither manufactured nor supplied"); *A.L. Lease & Co*., 46 Cal. App. 4th at 1032-34 (affirming dismissal of plaintiffs' claims against wholesaler defendants where "plaintiffs . . . allegedly [could not] determine which wholesaler distributed the pipe that was installed in their homes"); *Taylor v. Elliott Turbomachinery Co., Inc*., 90 Cal. Rptr. 3d 414, 425 (Ct. App. 2009) (finding claims failed where defendants "were certainly not part of the chain of distribution for the asbestos-containing materials to which [plaintiff] was exposed"); *Cadlo v. Owens-Illinois, Inc*., 23 Cal. Rptr. 3d 1, 9 (Ct. App. 2004) (supplier of asbestos could not be strictly liable absent evidence that it had role in design and marketing of asbestos insulation to which seaman was actually exposed).

**5. Plaintiffs Fail To State Claims For Negligence And Gross Negligence Against The Altria Defendants**

Sixteen Plaintiffs bring negligence and/or gross negligence claims under the laws of Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Kentucky, North Carolina, Louisiana, Pennsylvania, New York, and Colorado. *See* App. A. Negligence claims in each state require, among other things, that defendant owe plaintiff a duty and breach that duty.[48] Plaintiffs do not allege these requirements against the Altria Defendants.

**Failure to allege duty.** "Recovery in a negligence action depends as a threshold matter on whether the defendant 'had a duty to use due care toward an interest of [the plaintiff's] that enjoys legal protection against unintentional invasion.'" *See, e.g.*, *S. Cal. Gas Leak Cases*, 441 P.3d 881, 885 (Cal. 2019) (citation omitted).[49] The existence of a duty is a question of law for the Court's determination.[50] The duty inquiry "arises out of a recognition that the relation between individuals may impose upon one a legal obligation for the benefit of the other." *Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 500 (Ark. 2020).[51] "Anglo–American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Walters*, 187 A.3d at 232. Accordingly, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to

---

48 *See, e.g.*, *Duran*, 537 S.W.3d at 726; *Davis*, 974 So. 2d at 1056; *Rasnick*, 713 S.E.2d at 837; *Megenity*, 68 N.E.3d at 1083; *Gonzalez*, 581 S.W.3d at 532; *Bufkin*, 171 So. 3d at 855; *Kroger*, 98 So. 3d at 443; *Bottom*, 767 S.E.2d at 886; *Clement*, 341 F. Supp. 3d at 1214; *Carlson*, 131 A.3d at 708; *Cotton*, 576 S.W. 3d at 638; *Wood*, 453 P.3d at 952; *Keller*, 44 P.3d at 848; *N.M. ex rel. Lopez*, 397 P.3d at 374; *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018); *Hamilton*, 750 N.E.2d at 1062; *see also, e.g.*, *John B.*, 137 P.3d at 159.

49 *See also, e.g.*, *Bufkin*, 171 So. 3d at 855 ("The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. . . ."); *Williams v. Davis*, 974 So. 2d at 1056 (similar).

50 *See, e.g.*, *Duran*, 537 S.W.3d at 727; *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

51 *See also, e.g.*, *Bottom*, 767 S.E.2d at 887 (affirming dismissal of negligence claim where "[defendant] had no relationship with plaintiffs, and therefore owed them no duty"); *Ankers v. Dist. Sch. Bd. of Pasco Cty.*, 406 So. 2d 72, 73 (Fla. Dist. Ct. App. 1981) ("To sustain a cause of action in negligence, a complaint must allege ultimate facts which establish a relationship between the parties giving rise to a legal duty on the part of the defendant to protect the plaintiff from the injury of which he complains.").

act." *Regents of Univ. of Cal. v. Superior Court*, 413 P.3d 656, 663 (Cal. 2018) (quoting *Williams v. State*, 664 P.2d 137, 139 (Cal. 1983)); *see also, e.g.*, *Aguila v. Hilton, Inc.*, 878 So. 2d 393, 396 (Fla. Dist. Ct. App. 2004) ("[I]t is clear . . . that the defendant's conduct must 'create' the risk.").

Plaintiffs fail to allege any conduct by, or relationship with, the Altria Defendants that would have created a duty between the Altria Defendants and Plaintiffs. Plaintiffs do not allege that the Altria Defendants sold them JUUL products, communicated with them regarding JUUL products, or had any role in manufacturing or designing the JUUL products they purchased. *See supra* at 3-5. Instead, Plaintiffs allege a duty using broad, conclusory assertions that are insufficient as a matter of law: "DEFENDANTS had a duty of reasonable care in designing, manufacturing, assembling, inspecting, testing, packaging, labeling, marketing, advertising, promoting, supplying, distributing and/or selling JUUL to avoid causing harm to those that consumed JUUL Products." *D.H.* Compl. ¶ 864. Conclusory allegations referring to "DEFENDANTS" collectively are plainly insufficient. *See supra* at 5-6.

Plaintiffs' claims also find no support elsewhere in their complaints. The Altria Defendants are not alleged to have played any role in the design, production, manufacture, assembly, packaging, advertising, promotion, marketing, selling, supplying, or otherwise placing JUUL products into the stream of commerce before December 2018. The Altria Defendants therefore did not assume a duty concerning JUUL products, or breach that duty, during that time period as a matter of law. *See Regents of Univ. of Cal.*, 413 P.3d at 663-64 (there is no duty to control the conduct of another or warn those endangered by such conduct); *Maynard v. Snapchat, Inc.*, 851 S.E.2d 128, 131 (Ga. Ct. App. 2020) ("[T]here is no general legal duty to all the world not to subject others to an unreasonable risk of harm.") (quotations and citation omitted); *Wood*, 453 P.3d at 949 (before imposing a duty, the court considers which party was best positioned to avoid the harm).

Likewise, after December 2018, the Altria Defendants are not alleged to have played any role in the design, production, manufacture, assembly, packaging, or selling of JUUL products and did not assume a duty with respect to those activities either. The only possible way the Altria Defendants could have assumed any alleged duty thus would have been through the advertising they disseminated for JLI to adult smokers in 2019 and the distribution services they provided from January 2019

through March 2020. But none of the Plaintiffs alleges that he or she received an advertisement disseminated by the Altria Defendants, and any duty assumed by the Altria Defendants when providing the distribution and retail services would have been a duty toward the retail locations and JLI, which received those services, and not consumers with whom the Altria Defendants had no relationship or interaction. *See, e.g. In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1071 (N.D. Cal. 2005) (airline manufacturer that installed allegedly defective seats, but did not design or manufacture them, did not owe duty to warn of alleged defect); *Cromwell v. A & S Constr., Inc.*, 314 P.3d 1008, 1013 (Utah Ct. App. 2013) (contractor's duty of care was limited to the duty to use reasonable care in installing elevator doors). And this is all the more true here given these twenty Plaintiffs do not allege to have purchased at those locations. *See supra* at 39-40.

**Failure to allege breach of duty.** A duty of care by itself does not allege negligence; defendant also must breach that duty. *See*, *e.g.*, *Marlar v. Daniel*, 247 S.W.3d at 476 (Ark. 2007); *Elsner v. Uveges*, 102 P.3d 915, 928 (Cal. 2004) ("[A] breach of a legal duty, or a duty imposed by law, comes within the very definition of negligence. . . ."); *see also supra* at 41, n.48 (citing negligence cases). The question of breach turns on whether defendant acted in a reasonable manner or created an unreasonable risk. *See, e.g.*, Dobbs, The Law of Torts § 125 (2d ed.) ("When the defendant owes a duty of reasonable care, the defendant breaches that duty by conduct that falls short of such care, that is, by conduct that is unreasonably risky.").[52] Breach of duty requires that defendant have failed to use "ordinary care to prevent others being injured as a result of [defendant's] conduct." *John B.*, 137 P.3d at 160.[53]

Again, Plaintiffs fail to allege this element of negligence against the Altria Defendants. Like their "duty" allegations, the alleged acts of "negligence and/or gross negligence" are made against "all DEFENDANTS" collectively and, to the extent they are more specific, focus on activities that did not involve the Altria Defendants. *E.g.*, *D.H.* Compl. ¶ 862. These include allegations related to the design, formulation, and manufacture of JUUL products, allegations related to youth marketing

[52] *See also, e.g.*, *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 556 (Fla. Dist. Ct. App. 2008) (breach turns on whether defendant failed to "exercise reasonable care under the circumstances").

[53] *Magri v. Jazz Casino Co.*, 275 So. 3d 352, 358 (4th Cir. 2019) ("A reasonably prudent person will avoid creating an unreasonable risk of harm.").

and promotional efforts that did not involve the Altria Defendants, and allegations concerning actions that JLI—and not the Altria Defendants—allegedly failed to take. *See, e.g.*, *D.H.* Compl. ¶ 875.

By contrast, the allegations against the Altria Defendants concern retail and distribution services and disseminated JUUL advertisements to adult smokers. *See supra* at 4-5. These allegations do not allege a breach of duty for the same basic reasons they are not actionable under Plaintiffs' other theories. The advertisements provided by the Altria Defendants were attached to packages of cigarettes sold to *adult* smokers or sent directly to *adult* smokers and correctly described JUUL products as an "alternative" to combustible cigarettes containing nicotine. *See supra* at 26. And the retail and distribution services were provided to locations with procedures in place to prevent underage purchases of JUUL products. *See supra* at 4-5, 39. These limited services were reasonable and did not breach any possible duty of care. *See. e.g.*, *Tharp*, 587 S.W.3d at 655 (no breach of duty where defendant performed its undertaking with reasonable care).

**Failure to allege gross negligence.** Plaintiffs' efforts to plead gross negligence claims also fail as a matter of law. These claims are not actionable as stand-alone claims in all states at issue here. *See, e.g.*, *Corvello v. New England Gas Co.*, 460 F. Supp. 2d 314, 321 (D.R.I. 2006) ("Rhode Island . . . does not recognize a separate cause of action for gross negligence."); *Jimenez v. 24 Hour Fitness USA, Inc.*, 188 Cal. Rptr. 3d 228, 233 n.3 (Ct. App. 2015) (similar). Even if gross negligence claims were actionable as stand-alone claims, they fail against the Altria Defendants because they do not allege the elements of negligence against the Altria Defendants.[54] In addition, Plaintiffs' allegations against the Altria Defendants would fail to meet the higher standard for gross negligence.[55]

---

[54] *See, e.g.*, *Bradix v. Advance Stores Co.*, 226 So. 3d 523, 529 (La. Ct. App. 2017) (negligence and gross negligence require the same elements but are distinguished by "the lack of care on the part of the tortfeasor") (internal quotations omitted); *Logan v. W. Coast Benson Hotel*, 981 F. Supp. 1301, 1324 (D. Or. 1997) (similar); *Irwin v. Miami-Dade Cty. Pub. Sch.*, 2009 WL 497652, at *4 (S.D. Fla. Fed. 25, 2009) ("Under either form of negligence, the defendant [must] breach a duty of care; the deciding factor between the two is exactly what amount of care was breached."), *aff'd*, 398 F. App'x 503 (11th Cir. 2010) (per curiam).

[55] *See, e.g.*, *York v. Fredrick*, 947 N.E.2d 969, 977-78 (Ind. Ct. App. 2011) ("intentional failure to perform a duty in reckless disregard of the consequences"); *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 601 (S.D.N.Y. 2017) (conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing"); *IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.*, 779 F.3d 744, 752 (8th Cir. 2015) (gross negligence under Arkansas law is the "intentional failure to

(Footnote Cont'd on Following Page)

**6. Plaintiffs Fail To State Consumer Fraud Act Claims**

Plaintiffs bring claims under the consumer fraud acts of thirteen state statutes. *See supra* at 12 n.15 (identifying statutes). Most of these statutes do not allow recovery for personal injury damages. The FUDTPA (relied upon by Plaintiffs L.W.B., Widergren, and Wong) and UCSPA (Plaintiff Bagley) expressly exempt claims "for personal injury or death." Fla. Stat. § 501.212(3); Utah Code Ann. § 13-11-22(1)(c) (similar).

In addition, "a TCPA claim [Plaintiff Bain] must be dismissed where a plaintiff seeks to recover for injuries to his person resulting from [a defendant's] alleged violation of the TCPA." *Riddle v. Lowe's Home Ctrs., Inc.*, 802 F. Supp. 2d 900, 909 (M.D. Tenn. 2011) (internal quotation marks omitted). Likewise, although the OUTPA (Plaintiff Keffer) allows private actions where plaintiff suffered "an ascertainable loss of money, real or personal," Or. Rev. Stat. § 646.638(1), this does not include "[d]amages predicated upon 'personal injury,'" *Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 968 (9th Cir. 1999). Similar language permitting claims for "an ascertainable loss of money" appears in the LUTPA (Plaintiff Fairess), MCPA (Plaintiff Westfaul), and RIDTPA (Plaintiff Pesce),[56] and should be interpreted in the same manner as the TCPA and OUTPA. Furthermore, the "sole remedy" under the GUDTPA (Plaintiffs Edwards and Mangham) "is injunctive relief," *Moore-Davis Motors, Inc. v. Joyner*, 252 Ga. App. 617, 619 (2001), which these Plaintiffs do not seek. This too is grounds for dismissal. And there is no indication in the case law that personal injury claims are actionable under the other statute cited by Plaintiffs Edwards and Mangham, the GFBPA.

---

perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another") (quoting *Doe v. Baum*, 72 S.W.3d 476, 487 (Ark. 2002)); *Abdel-Samed v. Dailey*, 755 S.E.2d 805, 811-12 (Ga. 2014) (similar); *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo. Ct. App. 2011) (similar).

[56] *See* La. Rev. Stat. Ann. § 51:1409(A) ("an ascertainable loss of money or movable property, corporeal or incorporeal"); Miss. Code. Ann. § 75-24-15(1) ("any ascertainable loss of money or property, real or personal"); R.I. Gen. Laws § 6-13.1-5.2(a) (same).

Moreover, to state a claim under any of these statutes, Plaintiffs must allege unfair or deceptive conduct by the Altria Defendants that violated these statutes.[57] Plaintiffs fail to allege conduct by the Altria Defendants meeting these requirements. Plaintiffs' allegations that the Altria Defendants disseminated JLI's Make the Switch advertisements do not suffice for the same reasons they are not actionable as fraud or under any other theory. *See supra* at 26. Allegations that the Altria Defendants provided retail and distribution services and shelf space to JLI in 2019 and 2020 likewise fail to allege such conduct for reasons discussed above. *See supra* at 42-44.

Plaintiffs also cannot allege that the Altria Defendants violated these consumer fraud statutes with conclusory claims that Altria "coordinated" with JLI in 2017 and 2018 to preserve the market for mint products and assisted JLI in marketing JUUL products to underage consumers. *See, e.g.*, *D.H.* Compl. ¶¶ 665, 672. The principal basis for these allegations—a letter submitted by Altria to FDA on October 25, 2018—took positions directly contrary to JLI's interests at the time and thus refutes any suggestion of coordination or collusion between the two companies. Altria explained that, "[b]ased on the publicly available information from FDA and others, we believe that pod-based products"—the type of product JLI was selling exclusively at that time—"significantly contribute to the rise in youth use of e-vapor products." October 25, 2018 Letter at 2. It further informed FDA that Altria's Nu Mark subsidiary would be removing all of its pod-based and most of its flavored products from the market, described strategies that Altria had adopted to address underage vapor use, and encouraged the FDA to adopt policies to prevent such use. *Id.* at 2-4.[58] And, even if Altria's

---

[57] *See, e.g.*, *Gold*, 323 F.R.D. at 290 ("A claim under the FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages."); *Best Choice Roofing & Home Improvement, Inc.*, 446 F. Supp. 3d at 272 (TCPA requires that "(1) the defendant engaged in an unfair or deceptive act; and (2) the defendant's conduct caused an ascertainable loss of money or property."); *Allen*, 331 F.R.D. at 665 (similar requirements under RIDTPA); *Baranco*, 294 F. Supp. 3d at 970 (similar requirements for NCUDTPA claim); *Amin*, 301 F. Supp. 3d at 1289 (similar requirements under Georgia statutes); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d at 280 (similar requirements under MCPA); *Lawrence*, 361 P.3d at 28 (similar requirements under OUTPA); *Francis*, 2013 WL 12203815, at *3 (similar requirements under LUTPA); *Am. Express*, 200 A.3d at 94-95 (similar requirements under PUTPL); *Hall,* 969 P.2d at 235 (similar requirements under CCPA); *Quintana*, 2018 WL 3559091, at *10 (similar requirements under NY GBL §§ 349-50).

[58] The lone reference to mint products in the letter did not even address underage vapor use. Altria opined only that it was important to offer "traditional tobacco, menthol and mint flavors in cig-a-like

(Footnote Cont'd on Following Page)

October 25, 2020 letter to FDA suggested that Altria was colluding with JLI, it would provide no basis for imposing liability, because it is protected speech under the First Amendment and *Noerr-Pennington* doctrine and because any claim that Altria committed fraud upon FDA is barred by *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 343 (2001). *See* Altria May 26, 2020 MTD at 21-22.

Plaintiffs' other allegations also fail to show coordinated conduct between Altria and JLI. For starters, Plaintiffs' allegations of coordination are belied by the fact that Altria and JLI were competitors in the vapor market during this time period. *See supra* at 3-4. What's more, the specific allegations and documents cited by Plaintiffs as support for their claims of coordination show no such thing—they reflect two separate corporations engaged in discussions and negotiations over a potential Altria investment or acquisition. *See* Altria Jan. 4, 2021 MTD at 13-14. In short, Plaintiffs fail to allege wrongful conduct by the Altria Defendants that violated any of the consumer fraud acts under which they bring their claims. This is further reason to dismiss these claims.

Finally, Plaintiff Westfaul's MCPA claim should be dismissed because she did not satisfy her obligation to "first [make] a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." Miss. Code. Ann. § 75-24-15(2); *see also Blouin v. Johnson & Johnson*, 2017 WL 4969345, at *3 (S.D. Miss. Nov. 1, 2017) ("Plaintiffs did not plead any facts demonstrating that they complied with this statute. Therefore, their MCPA claims (Count III) are barred.").

**7. Plaintiffs Fail To State A Claim Based On Negligent Failure to Warn**

Thirteen Plaintiffs bring negligent failure to warn claims under the laws of Connecticut, Georgia, Arkansas, Tennessee, New York, Indiana, Utah, Oregon, Kentucky, Florida, Louisiana, Colorado, and Pennsylvania. *See* App. A. These claims fail for the same reasons Plaintiffs' negligence claims do. *First*, like negligence, negligent failure to warn requires the existence of a duty

---

e-vapor products" to "current adult tobacco consumers looking for smoking alternatives." *Id*. at 3. This opinion about how to convert adult smokers to e-vapor was supported by research cited in the letter. *Id*. And contrary to Plaintiffs' claim that the statement was made to benefit JUUL products, Altria was competing with JLI when it sent this letter, and its statement about "mint flavors" was limited to "cig-a-like" e-vapor products, which included Nu Mark products but did not include pod-based products such as JUUL.

between defendant and plaintiff.[59] Plaintiffs do not allege any facts showing the Altria Defendants owed them a duty. *See supra* at 41-43.

*Second*, negligent failure to warn claims require a breach of duty. *See, e.g.*, *Saladino*, 704 F. Supp. 2d at 249 ("A plaintiff must show a breach of the duty to warn."); *Warren*, 196 So. 3d at 799 (stating that a breach of duty is implicit in a successful negligent failure to warn claim). Plaintiffs allege no such breach. *See supra* at 43-44.

**8. Plaintiffs Edwards And Mangham Fail To State A Breach Of Implied Warranty Claim Against The Altria Defendants**

Two Plaintiffs bring claims for breach of implied warranty under the law of Georgia and New York. *See* App. A. Plaintiffs cannot state such a claim without alleging that the Altria Defendants were "merchants" of the products in question. *See, e.g.*, *Whitaker*, 2021 WL 150207, at *3 (explaining "first element" of a claim for breach of implied warranty is that "the seller must be a merchant with respect to goods of that kind") (citation and quotations omitted); *Nobles v. Akinwande*, 125 N.Y.S.3d 534 (N.Y. Civ. Ct. 2020) (explaining "the implied warranty of merchantability only applies to merchants and an isolated seller of goods is not a merchant"). Plaintiffs make no such allegation. Moreover, these Plaintiffs do not allege that they purchased products that the Altria Defendants were involved in distributing and cannot allege an implied warranty for this reason also. *See supra* at 39-40. Plaintiffs also do not allege conduct by the Altria Defendants that would have breached any implied warranty given the Altria Defendants played no role in designing, manufacturing, packaging, or labeling these products. *See supra* at 3-4.

---

[59] *See, e.g.*, *Chandler*, 498 S.W.3d at 772; *Nieves v. Cirmo*, 787 A.2d 650, 655 (Conn. Ct. App. 2002); *Rowe*, 297 F. Supp. 3d at 1295; *Wheeler v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 1344, 1353 (S.D. Ga. 2013); *Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 521 (Ind. Ct. App. 2015); *Estate of DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 880 (W.D. Ky. 2017); *Mayorga v. Costco Wholesale Corp.*, 2007 WL 204017, at *4 (D. Or. Jan. 24, 2007); *Laws v. Water & Light Comm'n, Town of Greeneville*, 2003 WL 22071548, at *2 (Tenn. Ct. App. Sept. 3, 2003); *Schubert v. Genzyme Corp.*, 2013 WL 4776286, at *2 (D. Utah Sept. 4, 2013); *Pellham v. Let's Go Tubing, Inc.*, 398 P.3d 1205, 1212 (Wash. Ct. App. 2017).

**9. Plaintiffs Fail To State A Claim For Intentional Infliction Of Emotional Distress And Outrage Against The Altria Defendants**

Five Plaintiffs bring intentional infliction of emotional distress claims under Georgia, Indiana, Mississippi, Tennessee, New York, and Utah law, and Plaintiff Fish brings an outrage claim under Kentucky law. *See* App. A. Plaintiffs fail to allege conduct by the Altria Defendants sufficient to support these claims. Intentional infliction of emotional distress requires extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress.[60] Outrage claims require intentional or reckless conduct that was outrageous and intolerable. *Humana of Ky.*, 796 S.W.2d at 2-3. As set forth above, Plaintiffs do not even allege wrongful conduct by the Altria Defendants, let alone conduct that was "outrageous." Moreover, outrage claims are unavailable under Kentucky law where, as here, the plaintiff pleads other tort causes of action. *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 649 (W.D. Ky. 2019) ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.").[61]

**10. Plaintiffs' Unjust Enrichment Claims Fail As A Matter Of Law**

Fifteen Plaintiffs bring unjust enrichment claims. *See* App. A. These claims are brought by Plaintiffs who reside in Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, Indiana, Utah, Oregon, Kentucky, North Carolina, New York, and Louisiana. *See id.* To state a claim for unjust enrichment under these states' laws, each Plaintiff must allege that he or she conferred a benefit upon the defendant and retention of that benefit would be unjust. *See, e.g.*, 26 Richard A. Lord, *Williston on Contracts* § 68:5 (4th ed. 2019) ("Three elements must be established in order that a plaintiff may succeed in a claim based on unjust enrichment. These elements are: (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the

---

[60] *See, e.g.*, *Westminster Presbyterian Church of Muncie*, 992 N.E.2d at 871; *Bridges*, 335 S.E.2d at 447-48; *Alston*, 300 So. 3d at 549; *Rogers*, 367 S.W.3d at 205; *Linebaugh*, 471 P.3d at 849; *Klein v. Metro. Child Servs., Inc.*, 710, 954 N.Y.S.2d 559, 562 (N.Y. App. Div. 2012).

[61] *See also, e.g.*, *Shaw v. Handy*, 588 S.W.3d 459, 462 (Ky. Ct. App. 2019) ("[I]f a set of facts establishes a traditional tort, by definition it cannot establish [outrage].").

benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.").[62]

First, Plaintiffs do not allege that they conferred a benefit on the Altria Defendants as required to state an unjust enrichment claim. *See infra* at footnote 41. Plaintiffs allege that "DEFENDANTS requested and received a measurable benefit at the expense of Plaintiff in the form of payment for JUUL Products." *D.H.* Compl. ¶ 974. These general, conclusory allegations are insufficient. *See supra* at 5-6. Plaintiffs do not allege that they conferred a benefit on the Altria Defendants specifically. Plaintiffs do not allege that the Altria Defendants received any portion of the purchase price they spent on JUUL products or that the Altria Defendants have otherwise been enriched by those purchases; JUUL products are manufactured and sold by JLI, not the Altria Defendants. *See supra* at 4-5. Nor would Altria's shareholder status support this claim. Even if Altria had benefited as a shareholder, which Plaintiffs do not allege, those benefits could not be recovered without piercing the corporate veil, which Plaintiffs make no attempt to do.

Moreover, even if the complaints alleged that the Altria Defendants obtained a benefit from Plaintiffs, they do not allege facts demonstrating that it would be unjust for the Altria Defendants to retain that benefit and do not state an unjust enrichment claim for this reason either. Plaintiffs allege that "it would be inequitable, unconscionable, and unjust for DEFENDANTS to be permitted to retain these benefits because the benefits were procured as a result of their wrongful conduct." *See D.H.* Compl. ¶ 976. But this allegation does not attempt to link any purported benefit received by the Altria Defendants to any alleged injustice or unfairness to Plaintiffs. It is nothing more than a recitation of

[62] *See also, e.g.*, *Cote v. Aiello*, 148 A.3d 537, 550 (R.I. 2016) (similar); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006) (similar); *City of Alexander v. Doss*, 284 S.W.3d 74, 77 (Ark. Ct. App. 2008) (similar); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1996) (similar); *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. 2016) (similar); *Wachovia Ins. Sers., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. 2009) (similar); *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012) (similar); *Financial Assistance, Inc. v. Graham*, 2021 WL 710728, at *4 (N.Y. App. Div. Feb. 24, 2021) (similar); *Cumming v. Nipping*, 395 P.3d 928, 931-32 (Or. Ct. App. 2017) (similar); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. Ct. App. 2011) (similar); *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017) (similar); *Southeastern Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 206 (N.C. 2002) (similar); *Mayer v. Angus*, 83 So. 3d 444, 451 (Miss. Ct. App. 2012) (similar); *USA Disaster Recovery, Inc. v. St. Tammany Parish Gov.*, 145 So. 3d 235, 235 n.1 (La. 2013) (similar); *Compunnel Software Grp., Inc. v. Spectrasoft Techs., Inc.*, 21 Misc. 3d 1129(A), 873 N.Y.S.2d 510 (Civ. Ct. 2008) (similar).

one of the elements of the claim, which does not satisfy Plaintiffs' burden. Nor is there any other allegation that links these Plaintiffs' purchases to any action taken by the Altria Defendants, wrongful or otherwise.

Finally, in Florida, a plaintiff may bring unjust enrichment claims only in the absence of an adequate remedy at law. *See, e.g.*, *USA Disaster Recovery, Inc.*, 145 So. 3d at 235 n.1 (noting that, to sustain a claim for unjust enrichment, a plaintiff must prove that there is "no other remedy at law."). Plaintiffs Rest, L.W.B., Widergren, and Wong allege several claims that would provide an adequate remedy at law. This is further reason these Plaintiffs' unjust enrichment claims fail as a matter of law.

**11. Plaintiffs' Medical Monitoring Claims Fail As A Matter Of Law**

Eleven Plaintiffs bring claims for medical monitoring under the laws of Mississippi, Florida, Georgia, Tennessee, Indiana, Utah, Kentucky, Colorado, New York, and Pennsylvania. *See* App. A. Medical monitoring is not a stand-alone cause of action in most of these jurisdictions and these claims therefore should be dismissed.[63] Moreover, even if a claim were actionable in the abstract, Plaintiffs do not properly state these claims against the Altria Defendants, given their failure to allege wrongful conduct by the Altria Defendants that caused them to be exposed to harmful substances that warrant such monitoring. *See supra* § II.A.

[63] *See, e.g.*, *See Lockheed Martin Corp. v. Superior Court*, 131 Cal. Rptr. 2d 1, 7 (Ct. App. 2003) (explaining that the foundational case on medical monitoring recognized "not a separate tort but simply an item of damages"); *Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849, 859 (Ky. 2002) (explaining Kentucky law does not recognize medical monitoring as a cause of action); *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 10 (Miss. 2007) (holding Mississippi law does not recognize medical monitoring); *Jones v. Brush Wellman, Inc.*, 2000 WL 33727733, at *8 (N.D. Ohio Sept. 13, 2000) ("No Tennessee cases support a cause of action for medical monitoring in the absence of a present injury."); *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1302 (N.D. Ga. 2005) ("[N]o Georgia court has ever indicated an inclination to recognize such a remedy"), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir. 2007) ("Plaintiffs have failed to point us to any Georgia authority that allows recovery of medical monitoring costs in the absence of a current physical injury"); *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 14, 18 (N.Y. 2013) ("medical monitoring is an element of damages that may be recovered only after a physical injury has been proven, i.e., that it is a form of remedy for an *existing* tort"); *Hansen*, 858 P.2d at 979-81 (allowing medical monitoring only as a remedy in certain negligence cases).

**12. Plaintiffs' Conspiracy Claims Against The Altria Defendants Fail As A Matter Of Law**

Twenty Plaintiffs bring claims for conspiracy under the laws of Connecticut, Mississippi, Rhode Island, Florida, Georgia, Arkansas, Tennessee, New York, Indiana, Utah, Oregon, Washington, Kentucky, North Carolina, Louisiana, Colorado, and Pennsylvania. *See* App. A. As an initial matter, civil conspiracy is not itself a separate tort for which damages may be recovered, meaning these Plaintiffs must also allege an underlying actionable fraud claim.[64] Because Plaintiffs' fraud-based claims fail, *see supra* § II.C.1, the conspiracy claims fail as well.

But even if one or more Plaintiff adequately pled an underlying tort, he or she still would not allege a *conspiracy* claim against *the Altria Defendants*. Plaintiffs fail to allege any agreement to which the Altria Defendants were a party to accomplish a criminal or unlawful purpose, or a lawful objective by criminal means, as necessary to state a conspiracy claim.[65]

Altria's "$12.8 billion equity investment in JLI," *e.g.*, *D.H.* Compl. ¶ 950, does not allege a conspiracy. Such an argument would violate the "basic tenet of American corporate law" that "the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468,

---

[64] *See, e.g.*, *Harp v. King*, 835 A.2d 953, 972 n.37 (Conn. 2003) ("there is no independent claim of civil conspiracy . . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort"); *Read & Lundy, Inc. v. Washington Tr. Co. of Westerly*, 840 A.2d 1099, 1102 (R.I. 2004) (similar); *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. Dist. Ct. App. 2018) (similar); *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (N.Y. App. Div. 2010) (similar); *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (similar); *Bd. of Trustees of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 498 (Ind. Ct. App. 2017) (similar); *Jenkins v. Wachovia Bank, Nat. Ass'n*, 711 S.E.2d 80, 85 (Ga. Ct. App. 2011) (similar); *Puttuck v. Gendron*, 199 P.3d 971 (Utah Ct. App 2008) (similar); *Morasch v. Hood*, 222 P.3d 1125, 1132 (Or. App. 2009) (similar); *W.G. Platts, Inc. v. Platts*, 438 P.2d 867, 872-73 (Wash. 1968) (similar); *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (similar); *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 712 S.E.2d 328, 333 (N.C. Ct. App. 2011) (similar); *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (similar).

[65] *See, e.g.*, *Harp*, 835 A.2d at 972; *Stubbs v. Taft*, 149 A.2d 706, 708 (R.I. 1959); *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. Dist. Ct. App. 2012); *Abacus Fed. Sav. Bank*, 905 N.Y.S.2d at 588; *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 395-96 (Tenn. 2015); *Bd. of Trustees of Purdue Univ.*, 87 N.E.3d at 498; *Jenkins*, 711 S.E.2d at 85; *Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017); *Morasch*, 222 P.3d at 1132; *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996); *James*, 95 S.W.3d at 897; *Piraino Bros.*, 712 S.E.2d at 333; *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004); *Higgins*, 474 S.W.3d at 642.

474 (2003). Moreover, Plaintiffs do not allege that the investment itself was unlawful or accomplished through unlawful means.

Nor do the Services Agreement between Altria and JLI or the limited services that the Altria Defendants allegedly provided establish an agreement to engage in an unlawful purpose. Plaintiffs allege that Altria was "taking actions to ensure JLI's products had access to prime shelf space" and "distributing and marketing JLI's products to its wider base of retailers." *E.g.*, *D.H.* Compl. ¶ 950. These allegations describe normal business activities between parties to a lawful, arms-length agreement in exchange for payment—not a civil conspiracy. The same is true for the other services allegedly provided by the Altria Defendants to JLI, including the distribution of JUUL advertisements on packs of combustible cigarettes. *See id.* ¶ 955. If these allegations were sufficient, Plaintiffs could bring conspiracy claims against every distributor, retailer, salesclerk, and other party that played a role in getting JUUL products to the marketplace, and similar conspiracy claims could be alleged every time another allegedly defective product was sold—a result again at odds with sound policy and legal authority. *See, e.g.*, *First Cmty. Bank*, 489 S.W.3d at 400 (dismissing conspiracy because "the mere existence of a business relationship does not satisfy the requirement of an agreement").

Nor do allegations concerning Altria's investment in a third-party retailer, Avail Vapor, allege a conspiracy. *E.g.*, *D.H.* Compl. ¶ 950. This investment does not show that Altria entered into an agreement with JLI to do anything. Plaintiffs claim that Avail shared "data and strategy" after Altria made this investment, but that shows no agreement between Altria and JLI, and such cooperation would be wholly inconsistent with the fact that Altria and JLI were competitors during the period in question. Moreover, the conclusion that Altria shared data and strategy with JLI is based on rank speculation as there are no allegations that Altria provided any information to Avail or that Avail shared that data with JLI. At most, the amended complaints allege unilateral action by JLI to provide sales data to Altria, not an agreement or concerted action demonstrating a conspiracy, which this Court found insufficient to allege an association in fact enterprise. *See* 2020 WL 6271173, at *25 (finding that allegations concerning "the presence of limited data in Altria's possession regarding JLI's sales data in 2017 is a thin reed to rest a claim that Altria and JLI were part of an association in

fact prior to Altria's formal investment"). These allegations are likewise insufficient to allege a conspiracy here.

Further, the amended complaints point to Altria's October 2018 letter to FDA to suggest concreted action in support of expansion of JUUL's consumer base, but Altria's letter did not advance JLI's interests in any way; it did the opposite. *See, e.g.*, *Bugge v. Far W. Fed. Bank, S.B.*, 785 P.2d 1058, 1063 (Or. Ct. App. 1990) (no conspiracy to acquire proceeds where once alleged co-conspirator acquired the proceeds, it "acted contrary to [other co-conspirator's] own expressed intention"). Altria openly acknowledged to FDA that it "believe[d] that pod-based products"—which included the entire line of JUUL products at that time—"significantly contribute to the rise in youth use of e-vapor products." *E.g.*, *D.H.* Compl. ¶ 314. While the complaints suggest that Altria obscured the real reason—the agreement with JLI—for pulling certain products off the market, there is no factual support for that conclusion. *See, e.g.*, *id.* ¶ 960.

Plaintiffs also misconstrue the Altria Defendants' statements to FDA regarding mint products to suggest that the Altria Defendants acted in furtherance of a conspiracy with JLI. *E.g.*, *id.* ¶ 681. Again, Altria made the fully supported statement that offering its own cig-a-like products in mint might encourage adult smokers to switch to vapor options. *Id.*; *see also supra* at 46-47 n.58. These statements were not unlawful and are entirely consistent with the Altria Defendants acting in their own interests, not those of a separate conspiracy.[66]

Finally, Plaintiffs' repeated assertions that "CONSPIRACY DEFENDANTS worked in concert," *D.H.* Compl. ¶ 930, or "coordinate[d] their activities," *id.* ¶ 950, are nothing more than the

[66] *See, e.g.*, *Read & Lundy*, 2002 WL 31867868, at *20 (dismissing conspiracy claim where evidence of conspiracy was consistent with defendant bank making a lawful commercial loan from which it thought it could profit and taking steps necessary to secure repayment and protect its interests), *aff'd*, 840 A.2d 1099 (R.I. 2004); *Combs & Assocs., Inc. v. Kennedy*, 555 S.E.2d 634, 642 (N.C. Ct. App. 2001) (no agreement to conspire inferred where defendant's actions has alternative explanation of "sound business practice"); *Corbit v. J. I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967) ("The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent [o]nly with existence of the conspiracy."); *see also Bell Atl. Corp.*, 550 U.S. at 567 (recognizing that parallel conduct consistent with unchoreographed free-market behavior insufficient to show agreement even if also consistent with unlawful agreement); *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 986 (D. Utah 2018) (evidence of independent action by defendant insufficient to show "meeting of the minds").

"formulaic recitations of the elements" of the conspiracy claim. These general, conclusory allegations are unsupported by the factual allegations elsewhere in the complaints and insufficient to meet Plaintiffs' pleading burden. *See, e.g.*, *Twombly*, 550 U.S. at 567.

**13. Plaintiff Keffer's Wrongful Death, Survival, And Loss Of Consortium Claims Against The Altria Defendants Fail As A Matter Of Law**

Plaintiff Keffer brings claims for wrongful death, survival, and loss of consortium against the Altria Defendants. Because Plaintiff Keffer fails to state any other claim against the Altria Defendants or allege wrongful conduct by the Altria Defendants causing his alleged injuries, the Court should dismiss these claims as to the Altria Defendants. *See, e.g.*, *Smith v. Providence Health & Servs.-Or.*, 393 P.3d 1106, 1110 (Or. 2017) (explaining "a wrongful death action can be maintained if 'the death of a person is caused by the wrongful act or omission of another'") (citation omitted); *Fulmer v. Timber Inn Rest. & Lounge*, 954 P.2d 201, 207 (Or. Ct. App. 1998) ("to state a claim for loss of consortium, there must be at least one valid claim for tortious injury"), *aff'd in part, rev'd in part sub nom. Fulmer v. Timber Inn Rest. & Lounge, Inc.*, 9 P.3d 710 (Or. 2000).

**CONCLUSION**

For the foregoing reasons, the claims of the nineteen remaining plaintiffs who were initially chosen as bellwether plaintiffs against the Altria Defendants should be dismissed.

Dated: March 2, 2021

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ John C. Massaro*
John C. Massaro (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
Lauren S. Wulfe (SBN 287592)

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, ALTRIA GROUP DISTRIBUTION COMPANY, AND ALTRIA ENTERPRISES LLC

**CERTIFICATE OF SERVICE**

I, Lauren S. Wulfe, hereby certify that on the 2nd day of March 2021, I electronically filed the foregoing **ALTRIA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CLAIMS OF THE BELLWETHER PLAINTIFFS AGAINST THE ALTRIA DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notifications to all counsel of record.

By: */s/ Lauren S. Wulfe*

Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
Lauren.Wulfe@arnoldporter.com