1    [*Submitting counsel on signature page*]

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10   IN RE: JUUL LABS, INC., MARKETING,        Case No. 19-md-02913-WHO
     SALES PRACTICES, AND PRODUCTS
11   LIABILITY LITIGATION                      **JOINT DISCOVERY STATUS REPORT**

12   _____       Judges:   Hon. Jacqueline Scott Corley
                                               Courtroom: Video Conference
13   This Document Relates to:                 Hearing Date: March 9, 2021
                                               Hearing Time: 8:30 a.m.
14   ALL ACTIONS

15

16         Pursuant to the Court's instructions at the hearings on October 30, 2020 and March 9,

17   2021, counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-Liquid

18   Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively "Defendants"), and

19   Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as the "Parties")

20

21   _____

22   [1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs'
     Consolidated Class Action Complaint and Consolidated Master Complaint (collectively,
23   "Complaints"), *see* ECF Nos. 387, 388.

24   [2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker,
     Hoyoung Huh, and Riaz Valani.

25   [3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc.,
     Tobacco Technology, Inc., and Eliquitech, Inc.

26   [4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-
27   Eleven, Inc., Walmart, and Walgreen Co.

28   [5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and
     Core-Mark Holding Company, Inc.

respectfully provide this Joint Discovery Status Report in advance of the Discovery Conference

scheduled for March 23, 2021.

## I.   REQUEST FOR APPOINTMENT OF A SPECIAL MASTER FOR DEPOSITIONS

The Parties have conferred and reached an agreement in principle to request the

appointment of a Special Master to resolve disputes at depositions.  The Parties are continuing to

work collaboratively regarding the scope of such appointment and to identify a mutually

agreeable candidate that is available for such an appointment.

## II.   DISCOVERY FROM DEFENDANTS

### A.   JLI

***Document Productions***

To date, JLI has produced over 2.5 million documents, consisting of over 11 million

pages, including re-productions of materials produced to federal and state authorities.  With the

Court's assistance, JLI and Plaintiffs reached agreement on custodians, and search terms for ESI

productions.  JLI continues to make rolling document productions, including of custodial files of

individuals the Parties have identified as likely deposition witnesses.

The Parties are meeting and conferring regarding searching, production, and preservation

of Slack conversations and will bring any disputes to the Court promptly.

***Depositions***

To date, Plaintiffs have noticed or requested at least 63 depositions of people who are

arguably related to JLI.  Plaintiffs have completed eight 30(b)(1) depositions of current and

former JLI employees, and Plaintiffs' remaining JLI-related deposition requests including 32

former employees and 12 current employees.  In addition, Plaintiffs noticed six 30(b)(6)

depositions, which have taken multiple days to complete.

Plaintiffs continue to seek mutually agreeable dates for deposing JLI witnesses pursuant to

CMO 10-A.  The Parties have agreed upon scheduling for 29 former and current JLI

employees.  JLI and Plaintiffs have each postponed three depositions and have otherwise worked

to reschedule deposition dates as appropriate.  The depositions of seven witnesses are in the

process of being scheduled.  Four were requested for the first time on March 16, and three are

1   witnesses that the parties are working to reschedule.  Plaintiffs have indicated they would be

2   pulling back certain deposition requests.  The parties continue to discuss these requests.

3          JLI has requested that certain depositions be limited to one day, pursuant to CMO No. 10,

4   which contemplates that "[n]ot every witness will require an examination that lasts as long as the

5   presumptive time limits."  (ECF No. 573 at 5.)  JLI contends that despite Plaintiffs' representation

6   that they would work with Defendants to complete certain depositions in one day, Plaintiffs have

7   not committed before a single 30(b)(1) deposition began to keep that deposition to one day—thus

8   requiring each witness to set aside two full days of their professional or personal time for the

9   deposition.  And seven of eight completed 30(b)(1) depositions of current or former JLI

10  employees spanned at least two days.[1]  JLI reserves all rights to move to amend CMO No. 10,

11  including with respect to the presumptive time limits and the applicability of those time limits to

12  non-Defendant parties.

13         Plaintiffs respond that the parties all agreed to the protocol set forth in CMO No. 10,

14  which provides for coordination between the JCCP and MDL to conduct their questioning within

15  12 hours, with the witness to set aside two days for questioning. The protocol provides for

16  depositions to start at 9:00 AM PST, and for Defendants to have up to two hours for questioning,

17  which makes completing a deposition in one day a practical challenge, even if Plaintiffs' counsel

18  agreed to cut their allotted time in half (or even to 3-4 hours on the record). Notwithstanding the

19  parties' agreement and the protocol set forth in CMO 10, and even in the face of these logistical

20  challenges, Plaintiffs have considered JLI's requests and have worked in good faith to assess

21  whether and if any of the witnesses could be completed in one day. On several occasions,

22  Plaintiffs' counsel has notified JLI that assuming the witness is responsive and counsel are

23  cooperative, they would anticipate completing their questioning in one day.  On other occasions,

24  Plaintiffs' counsel have agreed to not take the 30(b)(1) witness at all after receiving their

25  testimony as a 30(b)(6) witness.  Given the nature and scope of the claims in this MDL, and the

26

27

28  [1]  One witness was deposed in both a 30(b)(1) and 30(b)(6) capacity, and that deposition lasted
    three days in total.

JOINT DISCOVERY
STATUS REPORT

size of many witnesses' custodial files and key roles in the development, marketing and sale of Juul products, Plaintiffs do not see any basis to revisit CMO 10.

*Written Discovery*

The Parties continue to meet and confer regarding the sufficiency of responses to written discovery and will present any ripened issues promptly.

*Privilege Log*

The Parties continue to meet and confer regarding privilege log entries.

**B.   Altria**

*Document Production*

To date, Altria has produced over 835,000 documents, consisting of over 6.3 million pages.  These document productions have included Altria's productions to the FTC, as well as the documents that hit on the parties' agreed search terms and from among the files of custodians previously agreed to.

*Depositions*

To date, Plaintiffs have taken five depositions of current and/or former Altria employees. Eight additional depositions, including those covering topics within Plaintiffs' 30(b)(6) notices regarding the transaction between Altria and JLI, are scheduled before the end of July.  Plaintiffs are working with Altria to schedule additional depositions (and pull back witnesses as appropriate) and will bring any disputes to the Court promptly if needed.

*Written Discovery*

Altria has provided responses to all of Plaintiffs' written discovery requests.  Plaintiffs and Altria continue to meet and confer on these responses and will bring any disputed issues to Your Honor's attention, if necessary.

**C.   Director Defendants**

On February 25, 2021, Plaintiffs served a third set of document requests, and the Non-management Director Defendants' responses are due on March 29.  The Director Defendants have proposed deposition dates for approximately half of the requested depositions.  Plaintiffs seek the Court's assistance in obtaining dates for James Monsees who has not offered a date in

1  violation of CMO 10-A. The parties are conferring regarding depositions Plaintiffs have

2  requested for third parties and will bring any disputes to the Court promptly for resolution.  The

3  Director Defendants have also committed to updating their responses to Interrogatory No. 1 by

4  March 31.

5         **D.**     **E-Liquid Defendants**

6         ***Depositions***

7  On October 16, 2020, Plaintiffs served initial 30(b)(6) deposition notices on each E-

8  Liquid Defendant.  The parties will meet and confer over the scope and timing of these

9  depositions and bring disputes to Your Honor if necessary.

10         ***Document Production and Written Discovery***

11  Plaintiffs and the E-Liquid Defendants continue to meet and confer regarding the scope of

12  written discovery, document production, and Defendants' responses and will bring any disputes

13  to Your Honor promptly.

14         **E.**     **Retailer and Distributor Defendants**

15  Retailer and Distributor Defendants made document productions in January and February

16  and negotiations over additional ESI production and custodial witnesses are ongoing.  The parties

17  will report on additional progress after Defendants' productions are reviewed and additional work

18  to meet and confer on further responses is completed.

19  **III.**    **DISCOVERY FROM PLAINTIFFS**

20         **A.**     **Personal Injury Plaintiffs – Bellwether Cases**

21  The Parties are engaged in active core discovery of the 21 remaining personal injury

22  bellwether plaintiffs.

23         **Document Production and Deposition Scheduling**.  Defendants have yet to receive any

24  responsive documents from three bellwether plaintiffs.  And, while Plaintiffs have committed to

25  provide substantially complete document productions 14 days before depositions, they have

26  repeatedly produced significant documents far later, including for example, plaintiffs who

27  produced the bulk of their productions (200 or 300 pages of documents) just several days before

28  their deposition.  In addition, although the Parties continue to cooperatively schedule depositions,

1    Defendants have never received any proposed dates for two of the bellwether plaintiffs.  This

2    violates CMO No. 10-A.

3        **B.    Class Plaintiffs**

4        ***Depositions***

5        <u>Plaintiffs' position.</u>

6        On November 2, 2020, the Court permitted Defendants to depose fifteen non-bellwether

7    class representatives in addition to the class representatives for the bellwether proceedings. Three

8    of the non-bellwether class representatives (plaintiffs Dramis, Fish, and Rest) are also a part of

9    the bellwether pool for personal injury cases, and their depositions are set to be taken shortly (the

10   first of which is scheduled to occur on March 25).

11       Plaintiffs believe that depositions of these three plaintiffs should cover the plaintiffs' class

12   action claims, in addition to their personal injury claims, and that the depositions should thus

13   count as three of the fifteen non-bellwether class representatives' depositions that Defendants are

14   entitled to take. Depositions for personal injury and class action purposes will cover much of the

15   same material: why a plaintiff used or purchased JUUL and what advertisements the plaintiff saw.

16   It therefore makes sense to have a single deposition cover both issues where, as here, the

17   opportunity presents itself. There is no prejudice to Defendants in having the depositions of

18   plaintiffs Dramis, Fish, and Rest count towards Defendants' allotment of fifteen non-bellwether

19   class representative depositions. First, plaintiff Rest was a defense bellwether pick, and the other

20   two were random picks, so there is no concern that Defendants would be forced to depose

21   individuals selected only by Plaintiffs. Second, Defendants will still be selecting twelve

22   additional non-bellwether class representatives for Rule 23 typicality purposes. And finally, if

23   Defendants are able to make a good cause showing for additional depositions later, they are of

24   course free to do so.

25       None of Defendants' arguments warrant taking a plainly inefficient approach to deposition

26   discovery. First, while the Court's November 2, 2020, order permitted Defendants to select the

27   non-bellwether deponents, the parties were did not know at that time that numerous class

28   representatives would end up in the personal injury bellwether pool and the Court was therefore

JOINT DISCOVERY
STATUS REPORT

not asked to consider what should happen in the event of such overlap. Second, Plaintiffs are not

asking the Court to reduce the number of class representative depositions Defendants may take;

instead, Plaintiffs want to avoid unnecessarily multiplying the number of depositions. Third,

Judge Orrick's order concerning the parallel prosecution of class and personal injury claims is

irrelevant for these purposes. In that order, Judge Orrick rejected Defendants' legal argument that

a class representative would waive his or personal injury claims if they were not asserted in the

class complaint. ECF 1125 at 3. Nothing in that order prohibits coordinated discovery between a

plaintiffs' class and personal injury claims, and coordinated discovery among separate litigation

tracks is the standard approach in multidistrict litigations. That is how the parties have proceeded

with discovery of Defendants: class, personal injury, and bellwether plaintiffs have all served

common discovery on Defendants. Defendants offer no reason for a different approach to

discovery of the plaintiffs.

With respect to the status of depositions, Plaintiffs expect to provide additional deposition

dates shortly. Plaintiffs note that Defendants were allowed to select non-bellwether class

representatives for depositions as of November 2, 2020.  Plaintiffs requested the names of these

deponents numerous times, and on February 14, Defendants identified five deponents and another

six deponents on March 16 (again after follow-ups from Plaintiffs). They have not identified the

remainder. Defendants' newfound sense of urgency is therefore not well taken.

Defendants also suggest that "reliability issues" relating to PFSs in the personal injury

cases somehow support Defendants' demand for additional class representative depositions.

Defendants raised this issue as to the class for the first time in this statement, and Plaintiffs are

prepared as always prepared to work with Defendants to address any such issues that may exist.

But it bears emphasis that Defendants' purported concerns about testing the assertions in

plaintiffs' PFSs would, at a minimum, further support *just taking* the depositions in the full

capacity Plaintiffs are offering, with Defendants free to seek additional depositions later.

<u>Defendants' position.</u>

Although each of the named class representatives in the Second Amended Consolidated

Class Action Complaint is party to this lawsuit, at Plaintiffs' request (ECF No. 1100), the Court

JOINT DISCOVERY
STATUS REPORT

1   limited the number of class representatives Defendants would be permitted to depose prior to

2   June 2021 to (i) the bellwether class representatives; and (ii) an "additional 15 Class

3   Representatives" who "*shall be selected by defendants* from the individuals named in the Second

4   Amended Consolidated Class Complaint." (ECF No. 1117 (emphasis added).) Plaintiffs recently

5   informed Defendants that they do not believe that Defendants should be permitted to select the 15

6   Non-Bellwether Class Representatives. Instead, Plaintiffs assert that the depositions of the

7   personal injury bellwether plaintiffs who also happen to be class representatives should "count"

8   against Defendants' 15 depositions. Plaintiffs' position is unfair, unsupported, and should be

9   rejected.

10      *First*, the Court's order specifies that the 15 additional depositions "***shall be selected by***

11   ***defendants*** from the individuals named in the Second Amended Class Action Complaint." (ECF

12   No. 1117 (emphasis added)). That Order reflects the Court's statements at the hearing:

13      MS. SMITH: Thank you, Your Honor. Just so we are clear, the 15 additional
        depositions will be depositions of defendants' -- defendants' choosing, those
14      people. Correct?

15      THE COURT: Yeah. You have the plaintiff factsheets. Yeah, they get to choose
        their class reps. You get to choose your other plaintiffs. But they have to be
16      named plaintiffs in the consolidated class action. Not other plaintiffs.

17   (10/30/2020 Tr. 39:1-14.) At that time, the case schedule for personal injury bellwether

18   selections and discovery was already on the table (ECF No. 938), and it is not surprising that

19   certain personal injury bellwether plaintiffs overlapped with class representatives. Despite that

20   potential for overlap, the Court granted that, with respect to the 15 class representative

21   depositions, they could be deposition "of Defendants' choosing." This makes sense given that the

22   ruling was issued in response to Defendants' position that they should be able to depose every

23   named class representative, as would typically be the case. There is no basis for Plaintiffs'

24   request to revisit the Court's order.

25      *Second*, the personal injury bellwether discovery process has raised a number of issues

26   about the reliability of the PFSs. Thus, while non-bellwether class representatives may be

27   completing PFSs, it is acutely apparent that PFSs are no substitute for deposition testimony. For

28   example, eight of the 21—*i.e.*, ***38 percent***—of remaining personal injury bellwether plaintiffs'

interrogatory answers gave markedly different responses to core questions about drug use, alcohol use, timing of alleged first JUUL product use, and other information that is manifestly relevant to the bellwether selection process.  Certain plaintiffs served verified PFSs that unequivocally denied alcohol, marijuana, and/or other recreational drug use at any time (and confirmed those denials in multiple pre-December-2020 PFS amendments).  But those same plaintiffs' interrogatory responses provided contradictory responses.  Similarly, contradictory PFS and interrogatory answers regarding the timing of JUUL use has significant implications for defenses with respect to product warnings and other issues.  Defendants reserve all rights in this regard, including seeking modification of the PFS process or other relief.   Regardless, now is not the time to reduce the number of allowed depositions.  If anything, the personal injury PFS experience supports increasing the number of depositions.[6] (And as noted at the hearing, and as agreed by Plaintiffs above, Defendants may seek additional depositions as the case progresses.)

Third, and finally, Plaintiffs' argument that Defendants' depositions of personal injury plaintiffs should count against the already-limited scope of class representative depositions is contrary to their position regarding the separation of personal injury and class claims.  At Plaintiffs' request and over Defendants' objection (ECF Nos. 1123, 1124), the Court issued an opinion holding that Plaintiffs may maintain separate personal injury and class action cases. (ECF No. 1125.)  Having advanced that position, Plaintiffs cannot be heard to argue that the classes are so overlapping as to mean that a bellwether personal injury deposition should serve the same purpose as any other class representative deposition.

Separately, Defendants apprise the Court on the status of depositions of bellwether and non-bellwether class representatives.  On March 4, Defendants requested deposition dates after April 28 for the five Bellwether Class Representatives, to reflect the new deadline for the filing of Plaintiffs' class certification motion.  In the intervening weeks, Plaintiffs have provided available dates after April 28 for only three of those five plaintiffs.  Dates for the other two are overdue

---

[6] Indeed, even with the 15 allowed class representative depositions, Defendants are still limited to fewer depositions than the 22 class representative depositions apparently allowed in the *Toyota* case they cited in the briefing and at the hearing on this issue.  *In re Toyota Motor Corp. Unintended Accel. Mk'g, Sales Pracs., & Prods. Liab. Litig.*, No. 8:10-ml-2151, ECF No. 1955.

1    (*see* CMO No. 10-A).  Defendants also have asked for deposition dates for eleven (of the allowed

2    15) Non-Bellwether Class Representative pursuant to the Court's November 2, 2020 order.  (ECF

3    No. 1117.)  Dates have been provided for seven of these eleven; Shurjo Ali and Joan Eubanks

4    have been confirmed for March 24 and April 13, respectively, and Plaintiffs provided available

5    dates for five more on March 22.  Plaintiffs have indicated that two Non-Bellwether Class

6    Representatives for which Defendants requested available dates will be dismissing their claims.

7    Dates have not yet been provided for the remaining two, including one for whom dates were

8    requested more than a month ago, on February 14.

9              ***Discovery Requests***

10             <u>Defendants' position</u>

11             Although the Parties agreed on search terms for Defendants' document requests in early

12   February, the Bellwether Class Representatives have not yet produced responsive documents.  In

13   addition, following the March 9, 2021, Discovery Conference, the Court directed Plaintiffs to

14   provide amended responses to Defendants' interrogatories to the Bellwether Class

15   Representatives identifying the names of the primary third-parties they communicated with about

16   the allegations in the Complaint.  Plaintiffs have not yet provided any of those amended responses.

17             <u>Plaintiffs' position</u>

18             Plaintiffs anticipate that the remainder of the documents for the bellwether class

19   representatives will be produced shortly (the documents have been collected and review is nearly

20   complete). Defendants have asked for deposition dates after April 28 (*i.e.* after Plaintiffs file their

21   motion for class certification), and Plaintiffs anticipate that documents will be produced at least

22   thirty days prior to any such deposition. The bellwether class representatives are also in the

23   process of completing amended interrogatory responses, which will be completed and served well

24   before any depositions take place.

25

26

27

28

10

1        **C.      Government Entity Plaintiffs**

2        ***Document Discovery***

3        <u>Plaintiffs' Position:</u>

4        Plaintiffs served their responses and objections to JLI's First Set of Requests for

5    Production of Documents on March 3, 2021. To help facilitate a prompt process for collecting,

6    reviewing, and producing responsive documents, Plaintiffs proposed search terms on February 19

7    and custodians on February 26, before their responses to the Requests were due. JLI provided a

8    counter proposal on search terms on February 23, and Plaintiffs provided a revised proposed list

9    of terms on March 3. The parties met and conferred regarding search terms and custodians on

10   March 12, during which JLI indicated it would provide a counter proposal on search terms and

11   consider Plaintiffs' position on custodians.

12       On Saturday March 20, almost three weeks after Plaintiffs sent JLI its latest proposal on

13   search terms, JLI finally sent Plaintiffs a counterproposal. Plaintiffs are considering that proposal,

14   including the addition of terms concerning the use of substances other than tobacco and its

15   derivatives. JLI's suggestion below that there is a ripe dispute on this issue is incorrect.

16       While JLI characterizes Plaintiffs' objection as a "relevance objection," Plaintiffs have

17   been clear in meet and confers and correspondence that Plaintiffs have significant concerns with

18   the proportionality and the burden associated with JLI's terms. That burden depends on what

19   documents JLI is seeking, who JLI is seeking documents from, and over what time period. That is

20   why Plaintiffs noted in each offer that their search terms are "subject to an agreement on

21   custodians, custodial sources, and a relevant timeframe." Plaintiffs elaborated on that during the

22   March 12 meet and confer, explaining that running search terms regarding substances other than

23   tobacco across individual emails and custodial files would be highly burdensome but that the

24   parties may be able to reach agreement on high-level summaries of data regarding other

25   substances. JLI indicated it would consider that proposal and that the parties may be able to reach

26   agreement depending on where the parties land on JLI's requests for production. JLI sought a

27   meet and confer on its requests for the first time yesterday, March 21. Consistent with JLI's

28

11

1   position as of March 12, Plaintiffs believe the parties should meet and confer regarding the scope

2   of JLI's requests to determine whether they have a dispute before raising this issue with the Court.

3        Similarly, JLI below takes issue with Plaintiffs' proposed custodians after failing to take

4   into consideration the information Plaintiffs provided during the March 12 meet and confer.

5   During the meet and confer, Plaintiffs explained in detail why certain individuals JLI had

6   proposed were duplicative, unlikely to have responsive documents, would be unduly burdensome,

7   or were not employed by Plaintiffs.

8        Furthermore, each of the bellwether school districts indicated they were considering

9   additional custodians. Goddard and Tucson Unified anticipate proposing additional custodians

10   today, and San Francisco Unified and The School Board of Palm Beach anticipate doing so in the

11   next day or two. Regarding databases as sources of potentially responsive information, counsel

12   for the school districts explained the role of certain databases as repositories for a wide range of

13   information potentially responsive to JLI's discovery requests. Counsel answered JLI's questions

14   in that regard, including an explanation that the school districts have policies in place to ensure

15   such information is loaded into the databases.

16        JLI indicated it would take this information into consideration. But JLI only provided its

17   position through this joint statement, which it shared on March 21. Plaintiffs will consider JLI's

18   position and respond accordingly.

19        While Plaintiffs have waited for JLI to communicate its position on custodians, search

20   terms, and Plaintiffs' objections and responses to the Requests, Plaintiffs have not wasted any

21   time collecting documents from the custodians they previously identified, running the search

22   terms that are not in dispute across those files, and preparing to produce responsive, non-

23   privileged documents on a rolling basis, beginning this week.

24        Defendants' Position:

25        As the Parties work through discovery, three time sensitive issues concerning government

26   entity bellwether cases have emerged.

27        *First*, to date—over a month and a half since JLI's first set of Requests for Production

28   were deemed served—the government entity bellwethers have not produced a single document,

JOINT DISCOVERY
STATUS REPORT

1    which stands in stark contrast to JLI having produced hundreds of thousands of pages of

2    documents to Plaintiffs before a single request for production was even served.  Indeed, the

3    government entity bellwether plaintiffs have not even produced organizational charts, although

4    that is a topic on which they have offered 30(b)(6) witnesses starting at the end of March.

5
          *Second*, with respect to search terms, although it was incumbent on Plaintiffs (as the
6
     producing party) to propose search terms in the first instance, they did so for the first time (and
7
     only after Defendants' urging) on February 19, 2021.  Defendants offered proposed edits and
8
     additions on February 23, 2021, Plaintiffs responded on March 3, 2021, and Defendants
9
     responded further on March 20, 2021.  After a series of back-and-forth emails and meet and
10
     confers, Plaintiffs have refused to include a number of search terms requested by Defendants,
11
     including terms relating to drugs and alcohol.  Plaintiffs' position seems to be that they *may* agree
12
     to include such terms, but only after the entire meet-and-confer process on the discovery requests
13
     is complete.  Plaintiffs' current position—that documents relating to drugs and alcohol need not
14
     be produced—is remarkable and conflicts directly with their own prior statements, as well as this
15
     Court's guidance.  At the September 10, 2020 hearing, Government Entity Plaintiff's counsel
16
     conceded the import of these issues, particularly at the ***bellwether*** stage:
17
                    Mr. Cartmell:  So I guess what we were thinking was, look, when ***we get***
18              ***to the bellwether stage***, these are rel- -- this is alternative causation.
                    They're going to try to prove that: Look, you may have a vaping problem,
19              but you also have an alcohol problem or a marijuana problem or things
                    like that.  They're going to get to ask the people with knowledge questions
20              about that.  They're going to get to ask for additional discovery.
21    Hr. Tr. at 44:2-44.8 (emphasis added).  The Court likewise confirmed that discovery related to

22    alcohol and drugs is relevant.  *See id.* at 45:24-46:3 ("But I do think the general question, is other

23    stuff relevant, yes, I do think it's relevant.  I mean, I don't think you can look at vaping in

24    isolation at all.  And so whatever you have on vaping, they should have, I would think, on the

25    other drugs.").  Plaintiffs' current position is thus directly at odds with the position taken by

26    Plaintiffs in September.

27

28

13

1    While Plaintiffs suggested "marijuana" in their search terms on February 19, they refuse

2    to add any variants of marijuana, and also refuse to add any other term related to any other drug,

3    any term related to and including "alcohol," and any term related to alcohol or drug education and

4    prevention (e.g. "Mothers Against Drunk Drive" or "D.A.R.E.").  Among other things, these

5    search terms are likely to lead to admissible information showing the extent to which alcohol and

6    other drugs—as opposed to e-cigarettes generally and JUUL products specifically—occupy

7    school administrators' attention and the government entities' resources, which goes to defenses

8    against the existence of the public nuisance alleged by Plaintiffs.

9    If there is a dispute regarding search terms related to alcohol and other drugs, and it

10    certainly appears there is, the Court should set an expedited briefing schedule.  Plaintiffs'

11    unsupported position that such terms are irrelevant—or can only be considered after meet and

12    confers on all other aspects of discovery are complete—only serves to slow down the document

13    collection and production process, which necessarily impedes Defendants' ability to take 30(b)(6)

14    and 30(b)(1) depositions of the government entity bellwethers.

15    The delay Plaintiffs' position is causing is exacerbated by the fact that certain of the

16    government entity bellwether plaintiffs are refusing to include custodians, whose documents will

17    be searched, on the ground that those custodians, who were identified in the PFSs, would

18    primarily have documents relating to marijuana, other drugs, or alcohol.  Plaintiffs' position

19    appears to be that they can stall a resolution on search terms, and also on custodians, until all of

20    their relevance objections can be briefed and resolved by this Court.  That position is wholly

21    inconsistent with Plaintiffs' repeated emphasis on the importance of an *iterative* discovery

22    process.   There is no reason to hold up resolution of this straightforward issue until every moving

23    piece of the discovery puzzle is in place.

24    *Third*, the Parties continue to meet-and-confer on custodian issues.  As of the last meet-

25    and-confer (March 12), several of the government entity bellwethers refused to add any

26    custodians beyond the initial, limited list they did not propose until February 26 (nearly a month

27    after the Court deemed Defendants' Requests for Production served).  On March 4, Defendants

28    emailed Plaintiffs to identify various deficiencies in Plaintiffs' initial list—including that there are

14

1   individuals identified in the government entity bellwether PFSes and responses to JLI's

2   interrogatory seeking the identities of individuals with knowledge who were not included as

3   custodians.  Among those entities, King County refused to add two custodians who were

4   identified as persons with knowledge in the County's PFS, on the basis of King County's

5   representation that those two individuals deal primarily with drug and alcohol issues rather than

6   tobacco issues.  Three other entities—San Francisco Unified School District, Tucson Unified

7   School District, and Palm Beach Schools—have refused to add individual custodians beyond the

8   two (SFUSD, Tucson) or four (Palm Beach) individuals they have already proposed, despite the

9   fact that these districts encompass between 92 and 179 schools.  Instead, each of these entities

10  asserts that various "databases" contain "everything" Defendants have requested in their Requests

11  for Production.  Plaintiffs, however, could not or would not answer critical questions including

12  how material is added to the "databases"; who is responsible for adding material to the

13  "databases"; what protocols, if any, ensure the material is timely added to the "databases"; and

14  whether and how those "databases" include email communications responsive to Defendants'

15  requests.  Plaintiffs suggested that such questions must be addressed through 30(b)(6) depositions,

16  again adding significant delay to the threshold question of which custodians must be searched by

17  Plaintiffs and forcing Defendants to take depositions before Plaintiffs have even begun to search

18  for documents. During the last meet and confer, the City of Rochester and Goddard Unified

19  School District tentatively agreed to add several custodians to their initial lists.  They would not,

20  however, provide a date by which they would confirm whether they will add individuals.  Neither

21  of these entities has provided any update regarding the potential additional custodians since the

22  March 12 meet and confer.

23          ***Depositions***

24          JLI has served seven (7) notices for 30(b)(6) depositions on each of the government entity

25  bellwethers. Each bellwether has offered JLI dates to depose witnesses on some of the noticed

26  topics. JLI has accepted dates to depose a representative of Tucson Unified School District on

27  March 31, King County on April 1, and San Francisco Unified School District on April 8, 2021.

28

1   Plaintiffs await JLI's confirmation of the other offered dates, and each bellwether anticipates

2   offering dates for the remaining topics by the end of the month.

3   **IV.     THIRD-PARTY DISCOVERY**

4   *Depositions*

5   To date, Plaintiffs have deposed one third party witness, Dr. Thomas Perfetti.

6   Plaintiffs seek to depose three former JLI employees who currently reside abroad.

7   *Subpoenas*

8   Plaintiffs have issued third party subpoenas to more than 160 entities or persons. In total,

9   responsive recipients have thus far produced approximately 126,000 documents and negotiations

10  are ongoing with numerous others.

11  To date, JLI has issued approximately 20 third-party subpoenas.  JLI is conferring with

12  the recipients, but may require the Court's intervention through an informal discovery conference

13  and/or motions practice.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT DISCOVERY
STATUS REPORT

Dated:  March 22, 2021

Respectfully submitted,

By: /s/ Renee D. Smith

By: /s/ Sarah R. London

Renee D. Smith (*pro hac vice*)
James F. Hurst (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2310

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone:  (415) 956-1000

By: /s/ Peter A. Farrell

By: /s/ Dena C. Sharp

Peter A. Farrell (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5959

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: /s/ Gregory P. Stone

By: /s/ Dean Kawamoto

Gregory P Stone, SBN 78329
Bethany W. Kristovich, SBN 241891
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

*Attorneys for Defendant Juul Labs, Inc.*

By: /s/ Ellen Relkin

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Co-Lead Counsel for Plaintiffs*

17

1

2   By: /s/ John C. Massaro                    By: /s/ James Kramer

3   **ARNOLD & PORTER KAYE SCHOLER**          **ORRICK HERRINGTON &**
    **LLP**                                    **SUTCLIFFE LLP**

4
    John C. Massaro (admitted pro hac vice)   James Kramer
5   Jason A. Ross (admitted pro hac vice)     James Thompson
    601 Massachusetts Ave., N.W.              Roland Chang
6   Washington D.C.  20001                    The Orrick Building
    Telephone:   (202) 942-5000               405 Howard Street
7   Facsimile:  (202) 942-5999                San Francisco, CA  94105-2669
    john.massaro@arnoldporter.com             Telephone: (415) 773-5700
8   Jason.ross@arnoldporter.com               jkramer@orrick.com
                                              jthompson@orrick.com
9   *Attorneys for Defendants Altria Group, Inc.*   rdchang@orrick.com
    *and Philip Morris USA Inc.*              *Attorneys for Defendant James Monsees*
10

11

12  By: /s/ Eugene Illovsky                   By: /s/ Michael J. Guzman

13  **BOERSCH & ILLOVSKY LLP**                **KELLOGG, HANSEN, TODD, FIGEL &**
                                              **FREDERICK, P.L.L.C.**
14  Eugene Illovsky
    Martha Boersch                            Mark C. Hansen
15  Matthew Dirkes                            Michael J. Guzman
    1611 Telegraph Ave., Suite 806            David L. Schwartz
16  Oakland, CA 94612                         Sumner Square, 1615 M St., N.W., Suite 400
    Telephone: (415) 500-6643                 Washington, DC 20036
17  eugene@boersch-illovsky.com               Telephone: (202) 326-7910
    martha@boersch-illovsky.com               mguzman@kellogghansen.com
18  matt@boersch-illovsky.com

19  *Attorneys for Defendant Adam Bowen*      *Attorneys for Defendants Nicholas Pritzker,*
                                              *Riaz Valani, and Hoyoung Huh*
20

21

22

23

24

25

26

27

28

18

By: */s/ Mitchell B. Malachowski*

**TYSON & MENDES, LLP**

James E. Sell
Mitchell B. Malachowski
Stephen Budica
April M. Cristal
523 4th Street, Suite 100
San Rafael, CA 94901
Telephone:  (628) 253-5070
jsell@tysonmendes.com
mmalachowski@tysonmendes.com
sbudica@tysonmendes.com
acristal@tysonmendes.com

*Attorneys for Defendants Mother Murphy's Labs, Inc., and Alternative Ingredients, I*


By: */s/ Michael L. O'Donnell*

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
James E. Hooper
Marissa Ronk
370 17th Street, Ste. 4500
Denver, CO 80202
Telephone: (303) 244-1850
Odonnell@wtotrial.com
hooper@wtotrial.com
Ronk@wtotrial.com

*Attorneys for Defendant McLane Company, Inc.*


By: */s/ David R. Singh*

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*


By: */s/ Robert Scher*

**FOLEY & LARDNER LLP**

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2309
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorneys for Defendants Tobacco Technology, Inc., and Eliquitech, Inc.*


By: */s/ Christopher J. Esbrook*

**ESBROOK LAW LLC**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown Company, LLC, Circle K Stores, and 7-Eleven, Inc., Speedway, and Walgreen Co.*

1    By: */s/ Donald F. Zimmer, Jr.*

2    **KING & SPALDING LLP**

3

4    Donald F. Zimmer, Jr.
     Quyen L. Ta

5    Jennifer T. Stewart
     50 California St., Suite 3300

6    San Francisco, CA 94111
     Telephone:    (415) 318-1200

7    fzimmer@kslaw.com
     qta@kslaw.com

8    jstewart@kslaw.com

9    *Attorneys for Defendant Walmart Inc.*

10   By: */s/ Charles C. Correll Jr.*

     **KING & SPALDING LLP**

11   Andrew T. Bayman (Admitted *pro hac vice*)

12   1180 Peachtree Street, Suite 1600
     Atlanta, GA 30309

13   Telephone: (404) 572-4600
     abayman@kslaw.com

14   and

15   Charles C. Correll, Jr.
     Matthew J. Blaschke

16   Alessandra M. Givens
     50 California St., Suite 3300

17   San Francisco, CA 94111
     Telephone: (415) 318-1200

18   ccorrell@kslaw.com
     mblaschke@kslaw.com

19   agivens@kslaw.com

20   *Attorneys for Defendant Chevron Corporation*

21

22

23

24

25

26

27

28

JOINT DISCOVERY
STATUS REPORT