[*Submitting counsel on signature page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| | **JOINT DISCOVERY STATUS REPORT** |
| This Document Relates to: | Judges: Hon. Jacqueline Scott Corley<br>Courtroom: Video Conference<br>Hearing Date: March 23, 2021<br>Hearing Time: 8:30 a.m. |
| ALL ACTIONS | |

Pursuant to the Court's instructions at the hearings on October 30, 2020 and March 9, 2021, counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-Liquid Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively "Defendants"), and Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as the "Parties")

---

[1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs' Consolidated Class Action Complaint and Consolidated Master Complaint (collectively, "Complaints"), *see* ECF Nos. 387, 388.

[2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

[3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and Eliquitech, Inc.

[4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-Eleven, Inc., Walmart, and Walgreen Co.

[5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holding Company, Inc.

1  respectfully provide this Joint Discovery Status Report in advance of the Discovery Conference
2  scheduled for March 23, 2021.

## I. REQUEST FOR APPOINTMENT OF A SPECIAL MASTER FOR DEPOSITIONS

The Parties have conferred and reached an agreement in principle to request the appointment of a Special Master to resolve disputes at depositions. The Parties are continuing to work collaboratively regarding the scope of such appointment and to identify a mutually agreeable candidate that is available for such an appointment.

## II. DISCOVERY FROM DEFENDANTS

### A. JLI

***Document Productions***

To date, JLI has produced over 2.5 million documents, consisting of over 11 million pages, including re-productions of materials produced to federal and state authorities. With the Court's assistance, JLI and Plaintiffs reached agreement on custodians, and search terms for ESI productions. JLI continues to make rolling document productions, including of custodial files of individuals the Parties have identified as likely deposition witnesses.

The Parties are meeting and conferring regarding searching, production, and preservation of Slack conversations and will bring any disputes to the Court promptly.

***Depositions***

To date, Plaintiffs have noticed or requested at least 63 depositions of people who are arguably related to JLI. Plaintiffs have completed eight 30(b)(1) depositions of current and former JLI employees, and Plaintiffs' remaining JLI-related deposition requests including 32 former employees and 12 current employees. In addition, Plaintiffs noticed six 30(b)(6) depositions, which have taken multiple days to complete.

Plaintiffs continue to seek mutually agreeable dates for deposing JLI witnesses pursuant to CMO 10-A. The Parties have agreed upon scheduling for 29 former and current JLI employees. JLI and Plaintiffs have each postponed three depositions and have otherwise worked to reschedule deposition dates as appropriate. The depositions of seven witnesses are in the process of being scheduled. Four were requested for the first time on March 16, and three are

2  
JOINT DISCOVERY STATUS REPORT

witnesses that the parties are working to reschedule. Plaintiffs have indicated they would be pulling back certain deposition requests. The parties continue to discuss these requests.

JLI has requested that certain depositions be limited to one day, pursuant to CMO No. 10, which contemplates that "[n]ot every witness will require an examination that lasts as long as the presumptive time limits." (ECF No. 573 at 5.) JLI contends that despite Plaintiffs' representation that they would work with Defendants to complete certain depositions in one day, Plaintiffs have not committed before a single 30(b)(1) deposition began to keep that deposition to one day—thus requiring each witness to set aside two full days of their professional or personal time for the deposition. And seven of eight completed 30(b)(1) depositions of current or former JLI employees spanned at least two days.[1] JLI reserves all rights to move to amend CMO No. 10, including with respect to the presumptive time limits and the applicability of those time limits to non-Defendant parties.

Plaintiffs respond that the parties all agreed to the protocol set forth in CMO No. 10, which provides for coordination between the JCCP and MDL to conduct their questioning within 12 hours, with the witness to set aside two days for questioning. The protocol provides for depositions to start at 9:00 AM PST, and for Defendants to have up to two hours for questioning, which makes completing a deposition in one day a practical challenge, even if Plaintiffs' counsel agreed to cut their allotted time in half (or even to 3-4 hours on the record). Notwithstanding the parties' agreement and the protocol set forth in CMO 10, and even in the face of these logistical challenges, Plaintiffs have considered JLI's requests and have worked in good faith to assess whether and if any of the witnesses could be completed in one day. On several occasions, Plaintiffs' counsel has notified JLI that assuming the witness is responsive and counsel are cooperative, they would anticipate completing their questioning in one day. On other occasions, Plaintiffs' counsel have agreed to not take the 30(b)(1) witness at all after receiving their testimony as a 30(b)(6) witness. Given the nature and scope of the claims in this MDL, and the

---

[1] One witness was deposed in both a 30(b)(1) and 30(b)(6) capacity, and that deposition lasted three days in total.

size of many witnesses' custodial files and key roles in the development, marketing and sale of Juul products, Plaintiffs do not see any basis to revisit CMO 10.

*Written Discovery*

The Parties continue to meet and confer regarding the sufficiency of responses to written discovery and will present any ripened issues promptly.

*Privilege Log*

The Parties continue to meet and confer regarding privilege log entries.

**B.** **Altria**

*Document Production*

To date, Altria has produced over 835,000 documents, consisting of over 6.3 million pages. These document productions have included Altria's productions to the FTC, as well as the documents that hit on the parties' agreed search terms and from among the files of custodians previously agreed to.

*Depositions*

To date, Plaintiffs have taken five depositions of current and/or former Altria employees. Eight additional depositions, including those covering topics within Plaintiffs' 30(b)(6) notices regarding the transaction between Altria and JLI, are scheduled before the end of July. Plaintiffs are working with Altria to schedule additional depositions (and pull back witnesses as appropriate) and will bring any disputes to the Court promptly if needed.

*Written Discovery*

Altria has provided responses to all of Plaintiffs' written discovery requests. Plaintiffs and Altria continue to meet and confer on these responses and will bring any disputed issues to Your Honor's attention, if necessary.

**C.** **Director Defendants**

On February 25, 2021, Plaintiffs served a third set of document requests, and the Non-management Director Defendants' responses are due on March 29. The Director Defendants have proposed deposition dates for approximately half of the requested depositions. Plaintiffs seek the Court's assistance in obtaining dates for James Monsees who has not offered a date in

violation of CMO 10-A. The parties are conferring regarding depositions Plaintiffs have requested for third parties and will bring any disputes to the Court promptly for resolution. The Director Defendants have also committed to updating their responses to Interrogatory No. 1 by March 31.

### D. E-Liquid Defendants

*Depositions*

On October 16, 2020, Plaintiffs served initial 30(b)(6) deposition notices on each E-Liquid Defendant. The parties will meet and confer over the scope and timing of these depositions and bring disputes to Your Honor if necessary.

*Document Production and Written Discovery*

Plaintiffs and the E-Liquid Defendants continue to meet and confer regarding the scope of written discovery, document production, and Defendants' responses and will bring any disputes to Your Honor promptly.

### E. Retailer and Distributor Defendants

Retailer and Distributor Defendants made document productions in January and February and negotiations over additional ESI production and custodial witnesses are ongoing. The parties will report on additional progress after Defendants' productions are reviewed and additional work to meet and confer on further responses is completed.

## III. DISCOVERY FROM PLAINTIFFS

### A. Personal Injury Plaintiffs – Bellwether Cases

The Parties are engaged in active core discovery of the 21 remaining personal injury bellwether plaintiffs.

**Document Production and Deposition Scheduling**. Defendants have yet to receive any responsive documents from three bellwether plaintiffs. And, while Plaintiffs have committed to provide substantially complete document productions 14 days before depositions, they have repeatedly produced significant documents far later, including for example, plaintiffs who produced the bulk of their productions (200 or 300 pages of documents) just several days before their deposition. In addition, although the Parties continue to cooperatively schedule depositions,

Defendants have never received any proposed dates for two of the bellwether plaintiffs. This violates CMO No. 10-A.

**B.    Class Plaintiffs**

*Depositions*

Plaintiffs' position.

On November 2, 2020, the Court permitted Defendants to depose fifteen non-bellwether class representatives in addition to the class representatives for the bellwether proceedings. Three of the non-bellwether class representatives (plaintiffs Dramis, Fish, and Rest) are also a part of the bellwether pool for personal injury cases, and their depositions are set to be taken shortly (the first of which is scheduled to occur on March 25).

Plaintiffs believe that depositions of these three plaintiffs should cover the plaintiffs' class action claims, in addition to their personal injury claims, and that the depositions should thus count as three of the fifteen non-bellwether class representatives' depositions that Defendants are entitled to take. Depositions for personal injury and class action purposes will cover much of the same material: why a plaintiff used or purchased JUUL and what advertisements the plaintiff saw. It therefore makes sense to have a single deposition cover both issues where, as here, the opportunity presents itself. There is no prejudice to Defendants in having the depositions of plaintiffs Dramis, Fish, and Rest count towards Defendants' allotment of fifteen non-bellwether class representative depositions. First, plaintiff Rest was a defense bellwether pick, and the other two were random picks, so there is no concern that Defendants would be forced to depose individuals selected only by Plaintiffs. Second, Defendants will still be selecting twelve additional non-bellwether class representatives for Rule 23 typicality purposes. And finally, if Defendants are able to make a good cause showing for additional depositions later, they are of course free to do so.

None of Defendants' arguments warrant taking a plainly inefficient approach to deposition discovery. First, while the Court's November 2, 2020, order permitted Defendants to select the non-bellwether deponents, the parties were did not know at that time that numerous class representatives would end up in the personal injury bellwether pool and the Court was therefore

6

JOINT DISCOVERY
STATUS REPORT

1  not asked to consider what should happen in the event of such overlap. Second, Plaintiffs are not
2  asking the Court to reduce the number of class representative depositions Defendants may take;
3  instead, Plaintiffs want to avoid unnecessarily multiplying the number of depositions. Third,
4  Judge Orrick's order concerning the parallel prosecution of class and personal injury claims is
5  irrelevant for these purposes. In that order, Judge Orrick rejected Defendants' legal argument that
6  a class representative would waive his or personal injury claims if they were not asserted in the
7  class complaint. ECF 1125 at 3. Nothing in that order prohibits coordinated discovery between a
8  plaintiffs' class and personal injury claims, and coordinated discovery among separate litigation
9  tracks is the standard approach in multidistrict litigations. That is how the parties have proceeded
10 with discovery of Defendants: class, personal injury, and bellwether plaintiffs have all served
11 common discovery on Defendants. Defendants offer no reason for a different approach to
12 discovery of the plaintiffs.

13 With respect to the status of depositions, Plaintiffs expect to provide additional deposition
14 dates shortly. Plaintiffs note that Defendants were allowed to select non-bellwether class
15 representatives for depositions as of November 2, 2020.  Plaintiffs requested the names of these
16 deponents numerous times, and on February 14, Defendants identified five deponents and another
17 six deponents on March 16 (again after follow-ups from Plaintiffs). They have not identified the
18 remainder. Defendants' newfound sense of urgency is therefore not well taken.

19 Defendants also suggest that "reliability issues" relating to PFSs in the personal injury
20 cases somehow support Defendants' demand for additional class representative depositions.
21 Defendants raised this issue as to the class for the first time in this statement, and Plaintiffs are
22 prepared as always prepared to work with Defendants to address any such issues that may exist.
23 But it bears emphasis that Defendants' purported concerns about testing the assertions in
24 plaintiffs' PFSs would, at a minimum, further support *just taking* the depositions in the full
25 capacity Plaintiffs are offering, with Defendants free to seek additional depositions later.

26 Defendants' position.
27 Although each of the named class representatives in the Second Amended Consolidated
28 Class Action Complaint is party to this lawsuit, at Plaintiffs' request (ECF No. 1100), the Court

1  limited the number of class representatives Defendants would be permitted to depose prior to
2  June 2021 to (i) the bellwether class representatives; and (ii) an "additional 15 Class
3  Representatives" who "*shall be selected by defendants* from the individuals named in the Second
4  Amended Consolidated Class Complaint." (ECF No. 1117 (emphasis added).) Plaintiffs recently
5  informed Defendants that they do not believe that Defendants should be permitted to select the 15
6  Non-Bellwether Class Representatives. Instead, Plaintiffs assert that the depositions of the
7  personal injury bellwether plaintiffs who also happen to be class representatives should "count"
8  against Defendants' 15 depositions. Plaintiffs' position is unfair, unsupported, and should be
9  rejected.

*First*, the Court's order specifies that the 15 additional depositions "**shall be selected by defendants** from the individuals named in the Second Amended Class Action Complaint." **(**ECF No. 1117 (emphasis added)). That Order reflects the Court's statements at the hearing:

> MS. SMITH: Thank you, Your Honor. Just so we are clear, the 15 additional depositions will be depositions of defendants' -- defendants' choosing, those people. Correct?
>
> THE COURT: Yeah. You have the plaintiff factsheets. Yeah, they get to choose their class reps. You get to choose your other plaintiffs. But they have to be named plaintiffs in the consolidated class action. Not other plaintiffs.

(10/30/2020 Tr. 39:1-14.) At that time, the case schedule for personal injury bellwether selections and discovery was already on the table (ECF No. 938), and it is not surprising that certain personal injury bellwether plaintiffs overlapped with class representatives. Despite that potential for overlap, the Court granted that, with respect to the 15 class representative depositions, they could be deposition "of Defendants' choosing." This makes sense given that the ruling was issued in response to Defendants' position that they should be able to depose every named class representative, as would typically be the case. There is no basis for Plaintiffs' request to revisit the Court's order.

*Second*, the personal injury bellwether discovery process has raised a number of issues about the reliability of the PFSs. Thus, while non-bellwether class representatives may be completing PFSs, it is acutely apparent that PFSs are no substitute for deposition testimony. For example, eight of the 21—*i.e.*, **38 percent**—of remaining personal injury bellwether plaintiffs'

interrogatory answers gave markedly different responses to core questions about drug use, alcohol use, timing of alleged first JUUL product use, and other information that is manifestly relevant to the bellwether selection process. Certain plaintiffs served <u>verified PFSs</u> that unequivocally denied alcohol, marijuana, and/or other recreational drug use at any time (and confirmed those denials in multiple pre-December-2020 PFS amendments). But those same plaintiffs' interrogatory responses provided contradictory responses. Similarly, contradictory PFS and interrogatory answers regarding the timing of JUUL use has significant implications for defenses with respect to product warnings and other issues. Defendants reserve all rights in this regard, including seeking modification of the PFS process or other relief. Regardless, now is not the time to <u>reduce</u> the number of allowed depositions. If anything, the personal injury PFS experience supports <u>increasing</u> the number of depositions.[6] (And as noted at the hearing, and as agreed by Plaintiffs above, Defendants may seek additional depositions as the case progresses.)

*Third*, and finally, Plaintiffs' argument that Defendants' depositions of personal injury plaintiffs should count against the already-limited scope of class representative depositions is contrary to their position regarding the separation of personal injury and class claims. At Plaintiffs' request and over Defendants' objection (ECF Nos. 1123, 1124), the Court issued an opinion holding that Plaintiffs may maintain separate personal injury and class action cases. (ECF No. 1125.) Having advanced that position, Plaintiffs cannot be heard to argue that the classes are so overlapping as to mean that a bellwether personal injury deposition should serve the same purpose as any other class representative deposition.

Separately, Defendants apprise the Court on the status of depositions of bellwether and non-bellwether class representatives. On March 4, Defendants requested deposition dates after April 28 for the five Bellwether Class Representatives, to reflect the new deadline for the filing of Plaintiffs' class certification motion. In the intervening weeks, Plaintiffs have provided available dates after April 28 for only three of those five plaintiffs. Dates for the other two are overdue

---

[6] Indeed, even with the 15 allowed class representative depositions, Defendants are still limited to fewer depositions than the 22 class representative depositions apparently allowed in the *Toyota* case they cited in the briefing and at the hearing on this issue. *In re Toyota Motor Corp. Unintended Accel. Mk'g, Sales Pracs., & Prods. Liab. Litig.*, No. 8:10-ml-2151, ECF No. 1955.

9

JOINT DISCOVERY
STATUS REPORT

(*see* CMO No. 10-A).  Defendants also have asked for deposition dates for eleven (of the allowed 15) Non-Bellwether Class Representative pursuant to the Court's November 2, 2020 order.  (ECF No. 1117.)  Dates have been provided for seven of these eleven; Shurjo Ali and Joan Eubanks have been confirmed for March 24 and April 13, respectively, and Plaintiffs provided available dates for five more on March 22.  Plaintiffs have indicated that two Non-Bellwether Class Representatives for which Defendants requested available dates will be dismissing their claims.  Dates have not yet been provided for the remaining two, including one for whom dates were requested more than a month ago, on February 14.

**Discovery Requests**

Defendants' position

Although the Parties agreed on search terms for Defendants' document requests in early February, the Bellwether Class Representatives have not yet produced responsive documents.  In addition, following the March 9, 2021, Discovery Conference, the Court directed Plaintiffs to provide amended responses to Defendants' interrogatories to the Bellwether Class Representatives identifying the names of the primary third-parties they communicated with about the allegations in the Complaint.  Plaintiffs have not yet provided any of those amended responses.

Plaintiffs' position

Plaintiffs anticipate that the remainder of the documents for the bellwether class representatives will be produced shortly (the documents have been collected and review is nearly complete). Defendants have asked for deposition dates after April 28 (*i.e.* after Plaintiffs file their motion for class certification), and Plaintiffs anticipate that documents will be produced at least thirty days prior to any such deposition. The bellwether class representatives are also in the process of completing amended interrogatory responses, which will be completed and served well before any depositions take place.

C.   **Government Entity Plaintiffs**

*Document Discovery*

Plaintiffs' Position:

Plaintiffs served their responses and objections to JLI's First Set of Requests for Production of Documents on March 3, 2021. To help facilitate a prompt process for collecting, reviewing, and producing responsive documents, Plaintiffs proposed search terms on February 19 and custodians on February 26, before their responses to the Requests were due. JLI provided a counter proposal on search terms on February 23, and Plaintiffs provided a revised proposed list of terms on March 3. The parties met and conferred regarding search terms and custodians on March 12, during which JLI indicated it would provide a counter proposal on search terms and consider Plaintiffs' position on custodians.

On Saturday March 20, almost three weeks after Plaintiffs sent JLI its latest proposal on search terms, JLI finally sent Plaintiffs a counterproposal. Plaintiffs are considering that proposal, including the addition of terms concerning the use of substances other than tobacco and its derivatives. JLI's suggestion below that there is a ripe dispute on this issue is incorrect.

While JLI characterizes Plaintiffs' objection as a "relevance objection," Plaintiffs have been clear in meet and confers and correspondence that Plaintiffs have significant concerns with the proportionality and the burden associated with JLI's terms. That burden depends on what documents JLI is seeking, who JLI is seeking documents from, and over what time period. That is why Plaintiffs noted in each offer that their search terms are "subject to an agreement on custodians, custodial sources, and a relevant timeframe." Plaintiffs elaborated on that during the March 12 meet and confer, explaining that running search terms regarding substances other than tobacco across individual emails and custodial files would be highly burdensome but that the parties may be able to reach agreement on high-level summaries of data regarding other substances. JLI indicated it would consider that proposal and that the parties may be able to reach agreement depending on where the parties land on JLI's requests for production. JLI sought a meet and confer on its requests for the first time yesterday, March 21. Consistent with JLI's

JOINT DISCOVERY STATUS REPORT

position as of March 12, Plaintiffs believe the parties should meet and confer regarding the scope of JLI's requests to determine whether they have a dispute before raising this issue with the Court.

Similarly, JLI below takes issue with Plaintiffs' proposed custodians after failing to take into consideration the information Plaintiffs provided during the March 12 meet and confer. During the meet and confer, Plaintiffs explained in detail why certain individuals JLI had proposed were duplicative, unlikely to have responsive documents, would be unduly burdensome, or were not employed by Plaintiffs.

Furthermore, each of the bellwether school districts indicated they were considering additional custodians. Goddard and Tucson Unified anticipate proposing additional custodians today, and San Francisco Unified and The School Board of Palm Beach anticipate doing so in the next day or two. Regarding databases as sources of potentially responsive information, counsel for the school districts explained the role of certain databases as repositories for a wide range of information potentially responsive to JLI's discovery requests. Counsel answered JLI's questions in that regard, including an explanation that the school districts have policies in place to ensure such information is loaded into the databases.

JLI indicated it would take this information into consideration. But JLI only provided its position through this joint statement, which it shared on March 21. Plaintiffs will consider JLI's position and respond accordingly.

While Plaintiffs have waited for JLI to communicate its position on custodians, search terms, and Plaintiffs' objections and responses to the Requests, Plaintiffs have not wasted any time collecting documents from the custodians they previously identified, running the search terms that are not in dispute across those files, and preparing to produce responsive, non-privileged documents on a rolling basis, beginning this week.

Defendants' Position:

As the Parties work through discovery, three time sensitive issues concerning government entity bellwether cases have emerged.

*First*, to date—over a month and a half since JLI's first set of Requests for Production were deemed served—the government entity bellwethers have not produced a single document,

which stands in stark contrast to JLI having produced hundreds of thousands of pages of documents to Plaintiffs before a single request for production was even served.  Indeed, the government entity bellwether plaintiffs have not even produced organizational charts, although that is a topic on which they have offered 30(b)(6) witnesses starting at the end of March.

*Second*, with respect to search terms, although it was incumbent on Plaintiffs (as the producing party) to propose search terms in the first instance, they did so for the first time (and only after Defendants' urging) on February 19, 2021.  Defendants offered proposed edits and additions on February 23, 2021, Plaintiffs responded on March 3, 2021, and Defendants responded further on March 20, 2021.  After a series of back-and-forth emails and meet and confers, Plaintiffs have refused to include a number of search terms requested by Defendants, including terms relating to drugs and alcohol.  Plaintiffs' position seems to be that they *may* agree to include such terms, but only after the entire meet-and-confer process on the discovery requests is complete.  Plaintiffs' current position—that documents relating to drugs and alcohol need not be produced—is remarkable and conflicts directly with their own prior statements, as well as this Court's guidance.  At the September 10, 2020 hearing, Government Entity Plaintiff's counsel conceded the import of these issues, particularly at the ***bellwether*** stage:

> Mr. Cartmell:  So I guess what we were thinking was, look, when **we get to the bellwether stage**, these are rel- -- this is alternative causation.  They're going to try to prove that: Look, you may have a vaping problem, but you also have an alcohol problem or a marijuana problem or things like that.  They're going to get to ask the people with knowledge questions about that.  They're going to get to ask for additional discovery.

Hr. Tr. at 44:2-44.8 (emphasis added).  The Court likewise confirmed that discovery related to alcohol and drugs is relevant.  *See id.* at 45:24-46:3 ("But I do think the general question, is other stuff relevant, yes, I do think it's relevant.  I mean, I don't think you can look at vaping in isolation at all.  And so whatever you have on vaping, they should have, I would think, on the other drugs.").  Plaintiffs' current position is thus directly at odds with the position taken by Plaintiffs in September.

1   While Plaintiffs suggested "marijuana" in their search terms on February 19, they refuse to add any variants of marijuana, and also refuse to add any other term related to any other drug, any term related to and including "alcohol," and any term related to alcohol or drug education and prevention (e.g. "Mothers Against Drunk Drive" or "D.A.R.E."). Among other things, these search terms are likely to lead to admissible information showing the extent to which alcohol and other drugs—as opposed to e-cigarettes generally and JUUL products specifically—occupy school administrators' attention and the government entities' resources, which goes to defenses against the existence of the public nuisance alleged by Plaintiffs.

If there is a dispute regarding search terms related to alcohol and other drugs, and it certainly appears there is, the Court should set an expedited briefing schedule. Plaintiffs' unsupported position that such terms are irrelevant—or can only be considered after meet and confers on all other aspects of discovery are complete—only serves to slow down the document collection and production process, which necessarily impedes Defendants' ability to take 30(b)(6) and 30(b)(1) depositions of the government entity bellwethers.

The delay Plaintiffs' position is causing is exacerbated by the fact that certain of the government entity bellwether plaintiffs are refusing to include custodians, whose documents will be searched, on the ground that those custodians, who were identified in the PFSs, would primarily have documents relating to marijuana, other drugs, or alcohol. Plaintiffs' position appears to be that they can stall a resolution on search terms, and also on custodians, until all of their relevance objections can be briefed and resolved by this Court. That position is wholly inconsistent with Plaintiffs' repeated emphasis on the importance of an *iterative* discovery process. There is no reason to hold up resolution of this straightforward issue until every moving piece of the discovery puzzle is in place.

*Third*, the Parties continue to meet-and-confer on custodian issues. As of the last meet-and-confer (March 12), several of the government entity bellwethers refused to add any custodians beyond the initial, limited list they did not propose until February 26 (nearly a month after the Court deemed Defendants' Requests for Production served). On March 4, Defendants emailed Plaintiffs to identify various deficiencies in Plaintiffs' initial list—including that there are

individuals identified in the government entity bellwether PFSes and responses to JLI's interrogatory seeking the identities of individuals with knowledge who were not included as custodians. Among those entities, King County refused to add two custodians who were identified as persons with knowledge in the County's PFS, on the basis of King County's representation that those two individuals deal primarily with drug and alcohol issues rather than tobacco issues. Three other entities—San Francisco Unified School District, Tucson Unified School District, and Palm Beach Schools—have refused to add individual custodians beyond the two (SFUSD, Tucson) or four (Palm Beach) individuals they have already proposed, despite the fact that these districts encompass between 92 and 179 schools. Instead, each of these entities asserts that various "databases" contain "everything" Defendants have requested in their Requests for Production. Plaintiffs, however, could not or would not answer critical questions including how material is added to the "databases"; who is responsible for adding material to the "databases"; what protocols, if any, ensure the material is timely added to the "databases"; and whether and how those "databases" include email communications responsive to Defendants' requests. Plaintiffs suggested that such questions must be addressed through 30(b)(6) depositions, again adding significant delay to the threshold question of which custodians must be searched by Plaintiffs and forcing Defendants to take depositions before Plaintiffs have even begun to search for documents. During the last meet and confer, the City of Rochester and Goddard Unified School District tentatively agreed to add several custodians to their initial lists. They would not, however, provide a date by which they would confirm whether they will add individuals. Neither of these entities has provided any update regarding the potential additional custodians since the March 12 meet and confer.

***Depositions***

JLI has served seven (7) notices for 30(b)(6) depositions on each of the government entity bellwethers. Each bellwether has offered JLI dates to depose witnesses on some of the noticed topics. JLI has accepted dates to depose a representative of Tucson Unified School District on March 31, King County on April 1, and San Francisco Unified School District on April 8, 2021.

Plaintiffs await JLI's confirmation of the other offered dates, and each bellwether anticipates offering dates for the remaining topics by the end of the month.

IV. **THIRD-PARTY DISCOVERY**

*Depositions*

To date, Plaintiffs have deposed one third party witness, Dr. Thomas Perfetti. Plaintiffs seek to depose three former JLI employees who currently reside abroad.

*Subpoenas*

Plaintiffs have issued third party subpoenas to more than 160 entities or persons. In total, responsive recipients have thus far produced approximately 126,000 documents and negotiations are ongoing with numerous others.

To date, JLI has issued approximately 20 third-party subpoenas. JLI is conferring with the recipients, but may require the Court's intervention through an informal discovery conference and/or motions practice.

| | | |
|---|---|---|
| 1 | Dated: March 22, 2021 | Respectfully submitted, |

By: /s/ *Renee D. Smith*

Renee D. Smith (*pro hac vice*)
James F. Hurst (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2310

By: /s/ *Peter A. Farrell*

Peter A. Farrell (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5959

By: /s/ *Gregory P. Stone*

Gregory P Stone, SBN 78329
Bethany W. Kristovich, SBN 241891
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100

*Attorneys for Defendant Juul Labs, Inc.*

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone:  (415) 956-1000

By: */s/ Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: */s/ Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

By: */s/ Ellen Relkin*

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Co-Lead Counsel for Plaintiffs*

| | |
|---|---|
| By: /s/ John C. Massaro | By: /s/ James Kramer |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **ORRICK HERRINGTON & SUTCLIFFE LLP** |
| John C. Massaro (admitted pro hac vice)<br>Jason A. Ross (admitted pro hac vice)<br>601 Massachusetts Ave., N.W.<br>Washington D.C. 20001<br>Telephone: (202) 942-5000<br>Facsimile: (202) 942-5999<br>john.massaro@arnoldporter.com<br>Jason.ross@arnoldporter.com<br><br>*Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc.* | James Kramer<br>James Thompson<br>Roland Chang<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105-2669<br>Telephone: (415) 773-5700<br>jkramer@orrick.com<br>jthompson@orrick.com<br>rdchang@orrick.com<br>*Attorneys for Defendant James Monsees* |
| By: /s/ Eugene Illovsky | By: /s/ Michael J. Guzman |
| **BOERSCH & ILLOVSKY LLP** | **KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.** |
| Eugene Illovsky<br>Martha Boersch<br>Matthew Dirkes<br>1611 Telegraph Ave., Suite 806<br>Oakland, CA 94612<br>Telephone: (415) 500-6643<br>eugene@boersch-illovsky.com<br>martha@boersch-illovsky.com<br>matt@boersch-illovsky.com<br><br>*Attorneys for Defendant Adam Bowen* | Mark C. Hansen<br>Michael J. Guzman<br>David L. Schwartz<br>Sumner Square, 1615 M St., N.W., Suite 400<br>Washington, DC 20036<br>Telephone: (202) 326-7910<br>mguzman@kellogghansen.com<br><br>*Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh* |

| | | |
|---|---|---|
| 1 | By: /s/ Mitchell B. Malachowski | By: /s/ Robert Scher |
| 2 | **TYSON & MENDES, LLP** | **FOLEY & LARDNER LLP** |

James E. Sell
Mitchell B. Malachowski
Stephen Budica
April M. Cristal
523 4th Street, Suite 100
San Rafael, CA 94901
Telephone: (628) 253-5070
jsell@tysonmendes.com
mmalachowski@tysonmendes.com
sbudica@tysonmendes.com
acristal@tysonmendes.com

*Attorneys for Defendants Mother Murphy's Labs, Inc., and Alternative Ingredients, I*

By: /s/ Michael L. O'Donnell

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
James E. Hooper
Marissa Ronk
370 17th Street, Ste. 4500
Denver, CO 80202
Telephone: (303) 244-1850
Odonnell@wtotrial.com
hooper@wtotrial.com
Ronk@wtotrial.com

*Attorneys for Defendant McLane Company, Inc.*

By: /s/ David R. Singh

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorneys for Defendants Tobacco Technology, Inc., and Eliquitech, Inc.*

By: /s/ Christopher J. Esbrook

**ESBROOK LAW LLC**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown Company, LLC, Circle K Stores, and 7-Eleven, Inc., Speedway, and Walgreen Co.*

| | |
|---|---|
| 1 | By: /s/ Donald F. Zimmer, Jr. |
| 2 | **KING & SPALDING LLP** |
| 3 | |
| 4 | Donald F. Zimmer, Jr.<br>Quyen L. Ta |
| 5 | Jennifer T. Stewart<br>50 California St., Suite 3300 |
| 6 | San Francisco, CA 94111<br>Telephone:   (415) 318-1200 |
| 7 | fzimmer@kslaw.com<br>qta@kslaw.com |
| 8 | jstewart@kslaw.com |
| 9 | *Attorneys for Defendant Walmart Inc.* |
| 10 | By: /s/ Charles C. Correll Jr. |
| | **KING & SPALDING LLP** |
| 11 | Andrew T. Bayman (Admitted *pro hac vice*) |
| 12 | 1180 Peachtree Street, Suite 1600<br>Atlanta, GA 30309 |
| 13 | Telephone: (404) 572-4600<br>abayman@kslaw.com |
| 14 | and |
| 15 | Charles C. Correll, Jr.<br>Matthew J. Blaschke |
| 16 | Alessandra M. Givens<br>50 California St., Suite 3300 |
| 17 | San Francisco, CA 94111<br>Telephone: (415) 318-1200 |
| 18 | ccorrell@kslaw.com<br>mblaschke@kslaw.com |
| 19 | agivens@kslaw.com |
| 20 | *Attorneys for Defendant Chevron Corporation* |