1   JAMES N. KRAMER (SBN 154709)
    jkramer@orrick.com
2   ROLAND CHANG (SBN 271511)
    rdchang@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
4   405 Howard Street
    San Francisco, CA  94105-2669
5   Telephone:    +1 415 773 5700
    Facsimile:     +1 415 773 5759
6
7   Attorneys for Defendant
    James Monsees
8
9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   IN RE: JUUL LABS, INC., MARKETING         Case No. 3:19-md-02913-WHO
     SALES PRACTICES AND PRODUCTS
14   LIABILITY LITIGATION                      **DEFENDANT JAMES MONSEES'
                                               NOTICE OF MOTION AND MOTION
15                                             TO DISMISS TRIBAL BRIEFING
                                               BELLWETHER COMPLAINTS;
16   ───────────────────────────────          MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN SUPPORT THEREOF**
17   This Document Relates to:
                                               Judge:   Hon. William H. Orrick
18   *Grand Traverse Band of Ottawa and Chippewa*   Date:    To be set by the Court
     *Indians v. Juul Labs, Inc., et al.*, Member Case   Time:    To be set by the Court
19   No. 3:21-cv-04253                         Ctrm:    2, 17th Floor

20   – and –

21   *Saint Regis Mohawk Tribe v. Juul Labs, Inc., et*
     *al.*, Member Case No. 3:20-cv-03985
22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE that on a date and time to be set by the Court, in the United

3   States District Court, Northern District of California, located at 450 Golden Gate Avenue, 17th

4   Floor, San Francisco, California 94102, and in the Courtroom of the Honorable William H.

5   Orrick, Defendant James Monsees will and hereby does move pursuant to Rule 12(b)(6) of the

6   Federal Rules of Civil Procedure for an order dismissing with prejudice several claims asserted in

7   the tribal briefing bellwether complaints: *Grand Traverse Band of Ottawa and Chippewa Indians*

8   *v. Juul Labs, Inc., et al.*, Member Case No. 3:21-cv-04253, Dkt. No. 1, and *Saint Regis Mohawk*

9   *Tribe v. Juul Labs, Inc., et al.*, Member Case No. 3:20-cv-03985, Dkt. No. 16.  Specifically,

10  Monsees seeks dismissal of Grand Traverse Band of Ottawa and Chippewa Indians' RICO claim

11  (Count I), negligence claim (Count III), and Michigan Consumer Protection Act claim (Count

12  IV), and Saint Regis Mohawk Tribe's RICO claim (Count I) and civil conspiracy claim (Count

13  V).

14        This Motion is based on this Notice of Motion, the Memorandum of Points and

15  Authorities, requests for consideration of documents incorporated by reference and/or judicially

16  noticed, the Motions to Dismiss filed by other Defendants in the case, and such additional

17  evidence or argument as may be presented at or before the hearing on this matter.

18

19  Dated: October 8, 2021                          JAMES N. KRAMER
                                                     ROLAND CHANG
20                                                   Orrick, Herrington & Sutcliffe LLP

21

22                                              By _____ */s/ James N. Kramer*_____
                                                           JAMES N. KRAMER
23

24                                                  Attorneys for Defendant
                                                      James Monsees
25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 3

III.    STANDARD FOR DISMISSAL .............................................................................. 4

IV.     ARGUMENT ............................................................................................................. 5

       A.    Saint Regis Mohawk Tribe's Civil Conspiracy Claim Must Be Dismissed
             Because New York Law Does Not Recognize a Stand-Alone Civil
             Conspiracy Claim. ........................................................................................... 5

       B.    Tribal Plaintiffs Lack RICO Standing Because the Complaints Do Not
             Plead Any Injury to "Business or Property" and Increased Government
             Expenditures Are Not a Cognizable RICO Injury in the Ninth Circuit. ................ 6

       C.    Grand Traverse Band's Failure to Plead Any "Present Physical Injury"
             Similarly Dooms Its Negligence Claim Under Michigan Law. .............................. 9

       D.    The MCPA Bars Grand Traverse Band's MCPA Claim. ..................................... 10

V.      CONCLUSION ........................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                 **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 4, 5

*Awoshiley v. Beth Israel Med. Ctr.,*
    81 A.D.3d 517 (N.Y. App. Div. 2011) ...................................................... 5

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ............................................................... 4, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................... 4

*Blue Oak Med. Grp. v. State Comp. Ins. Fund,*
    809 F. App'x 344 (9th Cir. 2020) ............................................................ 9

*Canyon Cty. v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008) ....................................................... 2, 6, 7, 8

*Carlson v. Am. Int'l Grp., Inc.,*
    30 N.Y.3d 288 (2017) ............................................................................ 5

*City & Cty. of San Francisco v. Purdue Pharma L.P.,*
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................... 6, 7

*City and Cty. of San Francisco v. Purdue Pharma L.P. et al.,*
    Case No. 3:18-cv-07591-CRB, Dkt. No. 128 ........................................... 8

*Duronio v. Merck & Co., Inc.,*
    No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006) .................. 10, 12

*Flanagan v. Altria Grp., Inc.,*
    No. 05-71697, 2005 WL 2769010 (E.D. Mich. Oct. 25, 2005) ...................... 10, 12

*Freyne v. Xerox Corp.,*
    98 A.D.2d 965 (N.Y. App. Div. 1983) ...................................................... 5

*Gant v. Ford Motor Co.,*
    517 F. Supp. 3d 707 (E.D. Mich. 2021) ................................................. 12

*Graham Med. Techs., LLC v. Vilex in Tenn., Inc.,*
    No. 15-13372, 2016 WL 3072255 (E.D. Mich. June 1, 2016) ....................... 2

*Gregorio v. Ford Motor Co.,*
    522 F. Supp. 3d 264 (E.D. Mich. 2021) ................................................. 12

*Henry v. Dow Chem. Co.*,
    473 Mich. 63 (2005)............................................................................................................... 2, 9

*Howard v. Am. Online*,
    208 F.3d 741 (9th Cir. 2000)................................................................................................. 9

*Jebran v. LaSalle Bus. Credit, LLC*,
    33 A.D.3d 424 (N.Y. App. Div. 2006).................................................................................. 5

*Knight v. Horace Mann Ins. Co.*,
    No. 08-10405, 2010 WL 1257332 (E.D. Mich. Mar. 30, 2020) ........................................... 9

*Kraft v. Detroit Entm't, LLC*,
    261 Mich. App. 534 (2004).................................................................................................. 11

*Means v. U.S. Conf. of Catholic Bishops*,
    836 F.3d 643 (6th Cir. 2016)................................................................................................. 9

*In re Nat'l Prescription Opiate Litig.*,
    458 F. Supp. 3d 665 (N.D. Ohio 2020) ............................................................................... 10

*Peter v. Stryker Orthopaedics, Inc.*,
    581 F. Supp. 2d 813 (E.D. Mich. 2008) .............................................................................. 11

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49 (1978) ................................................................................................................ 6

*Smith v. Globe Life Ins. Co.*,
    460 Mich. 446 (1999).......................................................................................................... 10

*Williams v. Williams*,
    149 A.D.3d 1145 (N.Y. App. Div. 2017).............................................................................. 5

**Statutes and Rules**

18 U.S.C.
    § 1962(d) ............................................................................................................................... 9
    § 1964(c) ............................................................................................................................ 2, 6

21 U.S.C.
    § 321(m) .............................................................................................................................. 11
    §§ 387a, 387b, 387c, 387g, 387k ........................................................................................ 11
    §§ 387g(a)(4)(A)(i), (a)(4)(B)(i) ......................................................................................... 11

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................................................ 4

Mich. Comp. Laws § 445.904(1)(a) ............................................................................................ 10

## **ISSUES TO BE DECIDED**

1.      Whether the Court should dismiss Saint Regis Mohawk Tribe's civil conspiracy claim (Count V) because New York law does not recognize an independent civil conspiracy cause of action;

2.      Whether the Court should dismiss Tribal Plaintiffs' RICO claims because established Ninth Circuit precedent precludes governmental entities from recovering under RICO solely for government expenditures;

3.      Whether the Court should dismiss Grand Traverse Band's negligence claim (Count III) for failure to plead a "present physical injury," as required under Michigan law;

4.      Whether the Court should dismiss Grand Traverse Band's Michigan Consumer Protection Act ("MCPA") claim (Count IV) because the general transaction alleged in the Complaint is exempt from the MCPA.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Plaintiffs Grand Traverse Band of Ottawa and Chippewa Indians ("Grand Traverse

4  Band") and Saint Regis Mohawk Tribe (collectively, "Tribal Plaintiffs") have sued James

5  Monsees ("Monsees") and other entities and individuals affiliated with Juul Labs, Inc. ("JLI") for

6  alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the

7  New York and Michigan consumer protection statutes, as well as common law claims for

8  negligence, nuisance, and civil conspiracy.[1]

9      Tribal Plaintiffs' complaints are near carbon copies of other pleadings the Court has

10  already evaluated the sufficiency of in this MDL.  Monsees is mindful of the Court's prior orders

11  addressing several claims that are substantially similar to those asserted by Tribal Plaintiffs here

12  against Monsees (notably, claims for negligence under New York law, public nuisance, civil

13  conspiracy, and consumer protection statute violations under New York law).[2]  Out of respect for

14  the Court's time, but without waiving his right to challenge the sufficiency of those Tribal

15  Plaintiffs' claims at a later date, this Motion does not re-brief those claims.[3]

16

17

18  [1] Monsees does not dispute that the Northern District of California may exercise personal
   jurisdiction over him.  Nevertheless, pursuant to the Court's Direct Filing Order, Monsees
19  reserves all rights to challenge personal jurisdiction in the event that the case is remanded to
   Michigan and/or New York.  *See* Second Amended Case Management Order No. 3 – Direct
20  Filing Order, Dkt. No. 996 at 2:14-15 ("The parties reserve all rights with respect to . . . any post-
   remand jurisdictional . . . challenges or motions").
21

22  [2] *See* Order on Substantive Motions to Dismiss, Dkt. No. 1084 (Oct. 23, 2020) (hereinafter
   "October 2020 Order, Dkt. No. 1084"); Order on Second Round of Motions to Dismiss, Dkt. No.
23  1694 (Apr. 13, 2021) (hereinafter "April 2021 Order, Dkt. No. 1694"); Order on Motions to
   Dismiss Personal Injury Bellwether Complaints, Dkt. No. 2144 (July 22, 2021) (hereinafter "July
24  2021 Order, Dkt. No. 2144").

25  [3] As Monsees has previously argued with respect to substantially similar complaints, the
   allegations against him are insufficiently pled.  Accordingly, Monsees respectfully preserves that
26  argument, in addition to the arguments raised in his prior briefing, including his Motion to
   Dismiss Government Entity Complaints, Dkt. No. 779, and Reply in Support of Motion to
27  Dismiss Government Entity Complaints, Dkt. No. 884.  Monsees also joins in the arguments set
   forth in Defendant Adam Bowen's concurrently filed Motion to Dismiss with respect to Tribal
28  Plaintiffs' failure to plead personal participation in any underlying tort.

1

1    Nevertheless, several of Tribal Plaintiffs' claims are wholly deficient for reasons not

2    previously considered by this Court and accordingly must be dismissed.

3    *First*, Saint Regis Mohawk Tribe's New York-based civil conspiracy claim must be

4    dismissed because, as this Court recognized in its July 2021 Order, New York law does not

5    recognize a stand-alone civil conspiracy claim.  July 2021 Order, Dkt. No. 2144 at 23.

6    *Second*, Tribal Plaintiffs lack RICO standing because they fail to allege any injury to

7    "business or property" (18 U.S.C. § 1964(c)) and instead, premise their RICO injuries solely on

8    financial loss and unrecoverable government expenses.  As this Court previously acknowledged,

9    binding Ninth Circuit precedent precludes governmental entities, like Tribal Plaintiffs, from

10   recovering for government expenditures where no damage to its physical property or business has

11   been pled.  October 2020 Order, Dkt. No. 1084 at 72; *Canyon Cty. v. Syngenta Seeds, Inc.*, 519

12   F.3d 969, 976 (9th Cir. 2008) (hereinafter "*Canyon County*").

13   *Third*, Grand Traverse Band's Michigan-based negligence claim must be dismissed

14   because it does not plead any "present physical injury," as required under Michigan state law.

15   *Henry v. Dow Chem. Co.*, 473 Mich. 63, 75 (2005) (plaintiffs must allege "their claims arise from

16   present physical injuries" to state a negligence claim).

17   *Finally*, Grand Traverse Band's Michigan Consumer Protection Act ("MCPA") claim

18   against Monsees must be dismissed because the MCPA does not apply to the sale and marketing

19   of e-cigarette products (including JUUL), which are subject to extensive regulation and oversight

20   by the federal Food and Drug Administration ("FDA").  *Graham Med. Techs., LLC v. Vilex in*

21   *Tenn., Inc.*, No. 15-13372, 2016 WL 3072255, at *2 (E.D. Mich. June 1, 2016) (MCPA exempts

22   claims where the "sale of [a product] . . . is regulated by the [FDA]").

23   Because these claims are unavailable as a matter of law, the pleading defects are

24   dispositive and the Court should dismiss Tribal Plaintiffs' RICO claims, the New York-based

25   civil conspiracy claim, the Michigan-based negligence claim, and the MCPA claim with

26   prejudice.

27

28

2

1    II.    BACKGROUND

2         Tribal Plaintiffs' complaints attempt to tell a fictional story of an overt effort by

3    Defendants to engage in a coordinated scheme to defraud the public through the

4    misrepresentation of the risks associated with JLI's products through its marketing, product

5    labeling, and design.[4]  All of the misconduct alleged by Tribal Plaintiffs—related to the

6    marketing, labeling, and design of ENDS products—is heavily regulated by the FDA, which is

7    authorized to "enforce[e] existing laws addressing e-cigarettes."  *See* SR Am. Compl. ¶¶ 259,

8    496, 498.

9         Moreover, despite Tribal Plaintiffs' overall attempt at framing Defendants as one

10   undifferentiated group, as it relates to Monsees, the Complaints plead only facts showing

11   Monsees engaging in ordinary, lawful business activity, *e.g.*, receiving results from consumer

12   research (GT Compl. ¶¶ 141, 253; SR Am. Compl. ¶¶ 143, 255), reviewing advertising materials

13   (GT Compl. ¶¶ 86, 305, 326; SR Am. Compl. ¶¶ 88, 307, 328), negotiating the acquisition of JLI

14   (GT Compl. ¶ 55; SR Am. Compl. ¶ 57), and providing direction on JLI's website (GT Compl.

15   ¶ 381; SR Am. Compl. ¶ 384).

16        Nowhere do Tribal Plaintiffs plead they suffered any damage to their property or business,

17   let alone anything even closely resembling physical injury.  Instead, Tribal Plaintiffs allege that

18   Defendants (as an undifferentiated group) forced them to spend money on public services.  *See,*

19   *e.g.*, GT Compl. ¶¶ 733, 740; SR Am. Compl. ¶¶ 736, 757 (alleging they have "been compelled to

20   redirect [their] limited resources" and "forced to go far beyond what a governmental entity would

21   be expected to pay to enforce the laws to promote the general health and welfare of its citizens").

22   Specifically, Tribal Plaintiffs allege they have been "compelled" to spend money on and dedicate

23   resources to:

---

24   [4] *See* Plaintiff Grand Traverse Band's Complaint ("GT Compl.") ¶¶ 4-7; *see also* Plaintiff Saint
25   Regis Mohawk Tribe's Amended Complaint ("SR Am. Compl.") ¶¶ 4-7.  For example, Tribal
     Plaintiffs allege that:  "Defendants misrepresented and deceptively marketed the nicotine content
26   of JUUL products" (GT Compl. ¶ 913; SR Am. Compl. ¶ 931), "JUUL labels and advertisements
     . . . marketed the product as an 'alternative' to cigarettes" (GT Compl. ¶ 248; SR Am. Compl.
27   ¶ 250), and Defendants "designed JUUL products to create and sustain addiction" (GT Compl.
28   ¶ 4; SR Am. Compl. ¶ 4).

- "[E]ducat[ing] their citizens of the true dangers of e-cigarettes" (GT Compl. ¶ 733; SR Am. Compl. ¶ 736);

- "[A]pplying for limited duration grants in order to advance tobacco control efforts" (GT Compl. ¶ 733; *see also* SR Am. Compl. ¶ 736);

- "Increas[ing] security and monitoring protocols, disciplinary programs, educational programs, healthcare costs, and the costs of public health programs" (GT Compl. ¶ 860; SR Am. Compl. ¶ 877);

- "[M]itigation and remedial programs" (GT Compl. ¶ 862; SR Am. Compl. ¶ 879);

- "[H]ealthcare resources on addiction treatment and prevention programs" (SR Am. Compl. ¶ 749); and

- "Tribal Police," who have "been involved with issues surrounding vaping" and "coordinating with Tribal Compliance on investigations of local retail stores and enforcement" (SR Am. Compl. ¶ 750).

Like other governmental entities, Tribal Plaintiffs are "responsible for the protection of public health and safety within [their] jurisdiction" and "provide[] essential services to [their] citizens." GT Compl. ¶ 12; SR Am. Compl. ¶ 11.  Tribal Plaintiffs only allege damages based ***solely*** on the purported economic hardship caused by a heightened need for public services.

## III.   STANDARD FOR DISMISSAL

As the Court is aware, it must dismiss a cause of action under Rule 12(b)(6) if it lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Every plaintiff bears the burden of alleging facts sufficient to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  In deciding whether the complaint states a claim upon which relief can be granted, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  "'[N]aked assertions' devoid of 'further factual enhancement'" and pleadings that "offer[] 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

1    do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

2    **IV.    ARGUMENT**

3          As noted above, several of Tribal Plaintiffs' claims fail as a matter of law and should be

4    dismissed.  Specifically: (1) Saint Regis Mohawk Tribe's civil conspiracy claim lacks a

5    "cognizable legal theory" because New York law does not recognize a stand-alone conspiracy

6    claim, *infra* § IV.A; (2) Tribal Plaintiffs lack standing to assert their RICO claims as they do not

7    allege injury to "business or property," as required, *infra* § IV.B; (3) Grand Traverse Band fails to

8    plead a "present physical injury," as required to sustain a negligence claim under Michigan law,

9    *infra* § IV.C; and (4) the challenged conduct in Grand Traverse Band's MCPA claim is exempt

10   from the MCPA itself, *infra* § IV.D.

11         **A.      Saint Regis Mohawk Tribe's Civil Conspiracy Claim Must Be Dismissed
               Because New York Law Does Not Recognize a Stand-Alone Civil Conspiracy
12             Claim.**

13         Saint Regis Mohawk Tribe asserts an independent civil conspiracy claim under New York

14   law.  SR Am. Compl. ¶¶ 942-50.  But, as the Court acknowledged in its July 2021 Order, New

15   York law does not recognize a separate and distinct cause of action for civil conspiracy.  *See* July

16   2021 Order, Dkt. No. 2144 at 23 (dismissing stand-alone conspiracy claims under New York law

17   with prejudice); *see Carlson v. Am. Int'l Grp., Inc.*, 30 N.Y.3d 288, 310 (2017) (affirming

18   dismissal of independent civil conspiracy claim under New York law); *see also Williams v.*

19   *Williams*, 149 A.D.3d 1145, 1146 (N.Y. App. Div. 2017) (same).  The legion of cases that have

20   consistently followed this rule leave no doubt that the proper disposition of an independent claim

21   for civil conspiracy under New York law is dismissal with prejudice at the pleading stage.  *See,*

22   *e.g.*, *Awoshiley v. Beth Israel Med. Ctr.*, 81 A.D.3d 517, 518 (N.Y. App. Div. 2011) (dismissing

23   civil conspiracy claim at pleading stage); *Jebran v. LaSalle Bus. Credit, LLC*, 33 A.D.3d 424, 425

24   (N.Y. App. Div. 2006) (same); *Freyne v. Xerox Corp.*, 98 A.D.2d 965, 968 (N.Y. App. Div.

25   1983) (same).

26         Accordingly, Saint Regis Mohawk Tribe's civil conspiracy claim (Count V) lacks a

27   "cognizable legal theory" (*Balistreri*, 901 F.2d at 699), and the Court should dismiss this claim

28   with prejudice.  *See* July 2021 Order, Dkt. No. 2144 at 23.

1

**B.      Tribal Plaintiffs Lack RICO Standing Because the Complaints Do Not Plead Any Injury to "Business or Property" and Increased Government Expenditures Are Not a Cognizable RICO Injury in the Ninth Circuit.**

2

3      To have RICO standing, Tribal Plaintiffs must allege they suffered an injury to "business

4  or property."  *See* 18 U.S.C. § 1964(c); *City & Cty. of San Francisco v. Purdue Pharma L.P.*, 491

5  F. Supp. 3d 610, 648 (N.D. Cal. 2020) (hereinafter "*San Francisco*").  It is well-settled law in the

6  Ninth Circuit that "[w]hen a governmental body acts in its sovereign or quasi-sovereign capacity,

7  seeking to enforce the laws or promote the public well-being, it cannot claim to have been

8  'injured in its property' for RICO purposes based solely on the fact that it has spent money in

9  order to act governmentally."  *Canyon County*, 519 F.3d at 976; *see also San Francisco*, 491 F.

10  Supp. 3d at 648 (same).  Tribal Plaintiffs concede they are "federally-recognized sovereign Indian

11  Tribe[s]" (GT Compl. ¶ 19; SR Am. Compl. ¶ 18) with "inherent sovereignty over unlawful

12  conduct" relating to their territory (GT Compl. ¶ 25; SR Am. Compl. ¶ 27).  *See Santa Clara*

13  *Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) ("Indian tribes are 'distinct, independent political

14  communities.'").  Accordingly, Tribal Plaintiffs must allege more than just government

15  expenditures to adequately plead a RICO injury.

16      Though Tribal Plaintiffs' complaints are similar to pleadings previously before this Court

17  (specifically, the Public Entity Bellwether Plaintiffs' complaints), with respect to their RICO

18  claims, there is one outcome determinative difference.  *See* October 2020 Order, Dkt. No. 1084.

19  Unlike the Public Entity Bellwethers, whom this Court found had alleged "damage directly to

20  their physical property [including, for example, the] . . . disposal of hazardous waste" on and

21  "physical modifications to" Plaintiffs' property, *id.* at 73, ***nowhere*** do Tribal Plaintiffs offer such

22  allegations.  Tribal Plaintiffs' allegations of their purported injuries are devoid of any reference to

23  "physical property" damage or to facts suggesting business harms.  *See supra* § II.  Thus, this

24  Court must "cut away" Tribal Plaintiffs' RICO claims as they are deficient as a matter of law.

25  *See* October 2020 Order, Dkt. No. 1084 at 73 (suggesting need to "cut away" "a large segment"

26  of Public Entity Plaintiffs' injuries absent direct damage to "their physical property").

27      The Ninth Circuit's decision in *Canyon County* controls here.  519 F.3d at 980.  As this

28  Court previously explained, "[i]n that case, the County alleged that it was damaged by having to

6

1    spend millions of dollars on health care and criminal justice services for the illegal immigrants

2    who have been employed by the defendants in violation of federal law."  October 2020 Order,

3    Dkt. No. 1084 at 72.  The Ninth Circuit rejected this argument, concluding "that the government

4    does not possess a property interest in the law enforcement or health care services that it provides

5    to the public; therefore a governmental entity is not 'injured in its property' when greater demand

6    causes it to provide additional public services of this type."  *Canyon County*, 519 F.3d at 977.

7            In an improper attempt to circumvent the Ninth Circuit's holding, Tribal Plaintiffs allege

8    they have been "forced to go far beyond what a governmental entity would be expected to pay to

9    enforce the laws to promote the general health and welfare of its citizens in order to combat the

10   vaping crisis."  GT Compl. ¶ 740; SR Am. Compl. ¶ 757.  But, as the Court recognized in its

11   October 2020 Order, this District has already flatly rejected this same argument.  *See San*

12   *Francisco*, 491 F. Supp. 3d at 651 ("The Court therefore rejects any 'extraordinary cost'

13   exception to RICO standing."); *see also* October 2020 Order, Dkt. No. 1084 at 72-73

14   (acknowledging *San Francisco* rejected the distinction between extraordinary and ordinary

15   expenditures).  Indeed, as explained in the October 2020 Order, *Canyon County* "established a

16   bright line rule that government entities may ***never recover*** for government expenditures when

17   acting to enforce the laws or promote the general welfare, even if those expenditures are the result

18   of a 'man-made crisis' unexpected in magnitude and of a scope far beyond typical government

19   expenditures."  October 2020 Order, Dkt. No. 1084 at 72-73 (summarizing holding in *San*

20   *Francisco*, 491 F. Supp. 3d at 650) (emphasis added); *San Francisco*, 491 F. Supp. 3d at 650

21   ("[G]overnmental entities <u>cannot</u> assert a RICO claim based on expenditures or services provided

22   in their sovereign or quasi-sovereign capacities" (emphasis added)).  Thus, Tribal Plaintiffs'

23   attempt to distinguish between ordinary and extraordinary government expenditures fails.

24           Moreover, just as in *Canyon County* and *San Francisco*, the Complaints allege that Tribal

25   Plaintiffs were forced to "spend[] money on the provision of additional public services" as a

26   result of Defendants' alleged misconduct.  *Canyon County*, 519 F.3d at 976; *San Francisco*, 491

27   F. Supp. 3d at 649.  In both of these cases, the plaintiffs claimed RICO injuries included increased

28   health care costs and the diversion of governmental resources.  For example, in *San Francisco*,

MONSEES MOTION TO DISMISS TRIBAL
BRIEFING BELLWETHER COMPLAINTS,
CASE NO.: 19-MD-02913-WHO

1   the plaintiffs alleged a "decrease in funding available for San Francisco's public services"

2   because "[funding] was diverted to other public services designed to address the opioid

3   epidemic."[5]  Likewise, the *Canyon County* plaintiff alleged it was "forced to spend money . . . to

4   provide public services," including "law enforcement [and] health care services that it provide[d]

5   to the public."  519 F.3d at 975-76.  Similarly here, Tribal Plaintiffs claim that their

6   "governmental resources have been severely burdened" (GT Compl. ¶ 732; SR. Am. Compl.

7   ¶ 735) because they "ha[ve] been compelled to redirect [their] limited resources" to curb the

8   effects of the JUUL epidemic (GT Compl. ¶ 733; SR Am. Compl. ¶ 736).  For example, Tribal

9   Plaintiffs argue they have spent money and resources on: "educat[ing] their citizens" (GT Compl.

10  ¶ 733; SR Am. Compl. ¶ 736), "addiction treatment and prevention programs" (SR Am. Compl. ¶

11  749), "increased security and monitoring protocols [and] disciplinary programs" (GT Compl. ¶

12  860; SR Am. Compl. ¶ 877), "mitigation and remedial programs" (GT Compl. ¶ 862; SR Am.

13  Compl. ¶ 879), "applying for limited duration grants . . . to advance tobacco control efforts" (GT

14  Compl. ¶ 733; *see also* SR Am. Compl. ¶ 736), and "healthcare . . . and . . . public health

15  programs" (GT Compl. ¶ 860).

16      As the allegations above make clear, all of Tribal Plaintiffs' alleged injuries necessarily

17  arise from the Tribe's performance of governmental functions.  *See, e.g.*, SR Am. Compl. ¶ 22

18  ("The Tribe provides its members with a wide range of government services and programs,

19  including public safety and police services; education; a fire department; a tribal court; a health

20  clinic and various treatment programs; community and family services . . . and other programs

21  and services."); *see also* GT Compl. ¶ 23 (similar).  Thus, Tribal Plaintiffs "may not claim [those]

22  costs as damages to [their] property for purposes of civil RICO standing."  *Canyon County*, 519

23  F.3d at 979.

24      It is beyond dispute that in the Ninth Circuit,"[f]inancial loss alone . . . is insufficient" to

25  establish RICO standing.  *Id.* at 975; *cf.* October 2020 Order, Dkt. No. 1084 at 73 (stating

26  Plaintiffs had standing because they alleged physical property damage—allegations which are

27
28  [5] First Amended Complaint, *City and Cty. of San Francisco v. Purdue Pharma L.P. et al.*, Case No. 3:18-cv-07591-CRB, Dkt. No. 128 (hereinafter "*San Francisco FAC*"), ¶ 851(a).

MONSEES MOTION TO DISMISS TRIBAL BRIEFING BELLWETHER COMPLAINTS, CASE NO.: 19-MD-02913-WHO

absent in the Complaints before the Court now).  Because Tribal Plaintiffs have not alleged anything other than pure financial loss and unrecoverable government expenses, under the plain language of the RICO Act and controlling Ninth Circuit authority, the Court should dismiss Tribal Plaintiffs' RICO claims.[6]

### C.    Grand Traverse Band's Failure to Plead Any "Present Physical Injury" Similarly Dooms Its Negligence Claim Under Michigan Law.

For similar reasons, the Court should dismiss Grand Traverse Band's negligence claim, as it fails to plead non-economic losses, which is required under Michigan law.  "It has simply always been the case in [Michigan] jurisprudence that plaintiffs alleging negligence claims must [] show that their claims arise from present physical injuries."  *Henry*, 473 Mich. at 75; *see also Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 653 (6th Cir. 2016) ("In Michigan 'present physical injury' is necessary to state a claim for negligence.").

As explained above, *supra* § IV.B, Grand Traverse Band only asserts economic losses. Specifically, it alleges that, as a result of the alleged acts and omissions of Defendants, it has incurred "substantial expense" (GT Compl. ¶ 860) and its "governmental resources have been severely burdened by the nicotine addiction epidemic" (*id*. ¶ 732).  But none of its alleged injuries involve any "physical injury to person or property," as opposed to purely "economic" injury, which Michigan law requires.  *See Henry*, 473 Mich. at 78 ("A financial 'injury' is simply not a present physical injury, and thus not cognizable under our tort system."); *see also Knight v. Horace Mann Ins. Co.*, No. 08-10405, 2010 WL 1257332, at *2 (E.D. Mich. Mar. 30, 2020) ("Plaintiff's negligence claim is for economic losses, which Michigan Courts have made unequivocally clear cannot be sustained under Michigan law.").

Nor can the allegation that "citizens of the Grand Traverse Band [have] become addicted to JUUL products" save Plaintiff's claim.  GT Compl. ¶ 727.  Grand Traverse Band explicitly

---

[6] Insofar as Tribal Plaintiffs seek relief under 18 U.S.C. § 1962(d) for conspiracy to violate RICO, the Court must also dismiss this claim.  GT Compl. ¶¶ 867-77; SR Am. Compl. ¶¶ 884-94. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."  *Howard v. Am. Online*, 208 F.3d 741, 751 (9th Cir. 2000); *Blue Oak Med. Grp. v. State Comp. Ins. Fund*, 809 F. App'x 344, 346 (9th Cir. 2020).

1   concedes it is "not asserting claims that belong to its . . . individual tribal citizens or users based

2   on individual personal harm."  *Id.* ¶ 17.  Instead, the Band seeks "damages for harm caused to the

3   Grand Traverse Band as a sovereign tribe."  *Id.*; *cf. In re Nat'l Prescription Opiate Litig.*, 458 F.

4   Supp. 3d 665, 693-94 (N.D. Ohio 2020) (analyzing present physical injury requirement under

5   Michigan negligence law and holding "[w]hile money may be considered property, that does not

6   convert [plaintiff county's] economic injury into a physical injury to person or property").

7   Because Grand Traverse Band has failed to plead any "present physical injury," the Court should

8   dismiss its negligence claim.

9           **D.      The MCPA Bars Grand Traverse Band's MCPA Claim.**

10          Grand Traverse Band's MCPA claim is barred by the MCPA itself, which exempts from

11   liability any "transaction or conduct specifically authorized under laws administered by a

12   regulatory board . . . acting under statutory authority of this state or the United States."  Mich.

13   Comp. Laws § 445.904(1)(a).  This liability exemption is a complete defense to the MCPA claim

14   because, as Plaintiff concedes, the marketing, labeling, and design of ENDS products is regulated

15   by (and thus, specifically authorized by) a comprehensive federal regulatory framework over

16   which the FDA has exclusive authority.  *See* SR Am. Compl. ¶¶ 259, 496, 498 (conceding that the

17   FDA has the authority to "enforce[e] existing laws addressing e-cigarettes" and has in fact

18   exercised that authority with respect to JUUL products); *see Flanagan v. Altria Grp., Inc.*, No.

19   05-71697, 2005 WL 2769010, at *7 (E.D. Mich. Oct. 25, 2005) (Because the defendant's

20   "'general transaction' was the labeling and advertising of its cigarettes," and because federal law

21   "'establishes a comprehensive Federal program to deal with cigarette labeling and advertising,'"

22   the defendant's conduct was exempt from the MCPA).

23          Michigan courts broadly construe the exemption for transactions and conduct authorized

24   by administrative agencies, and consistently hold that it applies whenever a "general transaction

25   is specifically authorized by law, regardless of whether the specific misconduct alleged is

26   prohibited."  *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999).  Specifically, Michigan

27   courts have held that the MCPA does not apply to highly regulated business practices, including,

28   for example, prescription drug advertising (*Duronio v. Merck & Co., Inc.*, No. 267003, 2006 WL

MONSEES MOTION TO DISMISS TRIBAL
BRIEFING BELLWETHER COMPLAINTS,
CASE NO.: 19-MD-02913-WHO

1   1628516, at *6 (Mich. Ct. App. June 13, 2006)), operation of slot machines (*Kraft v. Detroit*
2   *Entm't, LLC*, 261 Mich. App. 534, 542 (2004)), and manufacture of prosthetic knee devices
3   (*Peter v. Stryker Orthopaedics, Inc.*, 581 F. Supp. 2d 813, 816 (E.D. Mich. 2008)).

4        The gravamen of Grand Traverse Band's MCPA claim is that Defendants deceptively
5   sold, marketed, labeled, and designed JUUL products to the Grand Traverse Band and their
6   citizens. *See, e.g.*, GT Compl. ¶ 913 ("Defendants misrepresented and deceptively marketed the
7   nicotine content of JUUL products."); *id.* ¶ 248 ("JUUL labels and advertisements . . . marketed
8   the product as an 'alternative' to cigarettes."); *id.* ¶ 4 (Defendants "designed JUUL products to
9   create and sustain addiction."); *see generally supra* § II.

10        Yet, all of this challenged conduct is subject to a complex regulatory framework solely
11  within the FDA's authority.  The federal Tobacco Control Act ("TCA") delegates comprehensive
12  authority to the FDA to regulate numerous aspects of tobacco products (including JLI's
13  products[7]), such as their labeling, marketing, and "product standards," as well as all aspects of
14  "modified risk tobacco products."  *See* 21 U.S.C. §§ 387a, 387b, 387c, 387g, 387k; *see* GT
15  Compl. ¶ 622.  Under federal law, "labeling" includes "all labels and other written, printed or
16  graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such
17  article," 21 U.S.C. § 321(m), and "product standards" encompasses rules regarding "nicotine
18  yields" and the "construction, components, ingredients, additives . . . and properties of the
19  tobacco product," 21 U.S.C. §§ 387g(a)(4)(A)(i), (a)(4)(B)(i).  In other words, the "FDA
20  regulates the manufacture, import, packaging, labeling, advertising, promotion, sale, and
21  distribution of ENDS" products, which includes all of JLI's products.  *See Vaporizers, E-*
22  *Cigarettes, and other Electronic Nicotine Delivery Systems (ENDS)*, U.S. FOOD & DRUG ADMIN.,
23  https://bit.ly/3CRll5C (last visited Oct. 7, 2021).  Accordingly, the MCPA's liability exemption
24  prohibits Plaintiff's claim.

25
26
_____

27  [7] In August 2016, the FDA promulgated its Deeming Rule, which designated ENDS (including
    JUUL products) subject to the TCA and FDA regulation.  *See* 81 Fed. Reg. 28973; *see* GT
28  Compl. ¶ 623.

MONSEES MOTION TO DISMISS TRIBAL
BRIEFING BELLWETHER COMPLAINTS,
CASE NO.: 19-MD-02913-WHO

1    *Flanagan v. Altria Group, Inc.* is instructive.  2005 WL 2769010, at *1.  In *Flanagan*, the

2    plaintiff alleged that cigarette manufacturers violated the MCPA by engaging in deceptive and

3    misleading conduct by labeling and promoting cigarettes marketed as "light."  *Id.* at *1, 7.

4    Analyzing Michigan law, the court held that the "general transaction" at issue in the plaintiff's

5    MCPA claim was the labeling and advertising of tobacco products, which was highly regulated

6    by a federal agency and therefore exempt from the MCPA.  *Id.* at *7.

7         Similarly, in *Short v. Janssen Pharms., Inc*., the court assessed the viability of an MCPA

8    claim against a pharmaceutical company premised on an alleged unlawful marketing scheme.

9    No. 1:14-cv-1025, 2015 WL 2201713, at *5 (W.D. Mich. May 11, 2015).  There, similar to

10   Plaintiff's allegations here, the complaint asserted that "Defendants allegedly knew that one of its

11   drugs . . . posed certain health risks to children," but "[d]espite this alleged knowledge,

12   Defendants allegedly instructed its sales representatives to market [the drug] . . . as a safe and

13   effective treatment for various adolescent disorders."  *Id.* at *1.  In dismissing the plaintiff's

14   MCPA claim at the pleading stage, the court concluded that the defendant's activities were

15   exempt from MCPA liability because the FDA regulated those marketing activities.  *Id.*

16        Similar to the claims asserted in *Flanagan* and *Short*, there is simply no support for the

17   proposition that Defendants' highly regulated activity—marketing, designing, and labeling ENDS

18   products—falls within the type of activities subject to the MCPA.  *See Duronio*, 2006 WL

19   1628516, at *7 (MCPA exemption prohibits claims alleging misrepresentations related to the

20   safety and efficacy of prescription drugs because the Food, Drug, and Cosmetic Act "governs

21   drug marketing, manufacturing, and distribution" and "[t]he regulations implementing the [Act]

22   are extensive and detailed, and specifically regulate prescription drug advertising").

23        Because Plaintiff's MCPA claim is based entirely on the sale, marketing, labeling, and

24   design of JUUL products—*i.e.*, conduct "specifically authorized" and regulated by a federal

25   agency—no amendment could possibly cure this legal defect.  *Gregorio v. Ford Motor Co.*, 522

26   F. Supp. 3d 264, 275 (E.D. Mich. 2021) (dismissing MCPA claim at pleading stage because

27   manufacture, sale, and lease of automobiles were specifically authorized under state and federal

28   law, and thus exempted from the MCPA); *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 720

12

MONSEES MOTION TO DISMISS TRIBAL
BRIEFING BELLWETHER COMPLAINTS,
CASE NO.: 19-MD-02913-WHO

1  (E.D. Mich. 2021) (same).  Accordingly, the Court should dismiss the MCPA claim without leave

2  to amend.

3  **V.      CONCLUSION**

4         For the foregoing reasons, the Court should dismiss the Tribal Plaintiffs' RICO claims,

5  Saint Regis Mohawk Tribe's civil conspiracy claim (Count V), and Grand Traverse Band's

6  MCPA claim (Count IV) and negligence claim (Count III) without leave to amend.

7

8  Dated: October 8, 2021                                    JAMES N. KRAMER
                                                             ROLAND CHANG
9                                                            Orrick, Herrington & Sutcliffe LLP

10

11                                                           By _____*/s/ James N. Kramer*_____
                                                                      JAMES N. KRAMER
12
                                                             Attorneys for Defendant
13                                                           James Monsees

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSEES MOTION TO DISMISS TRIBAL
BRIEFING BELLWETHER COMPLAINTS,
CASE NO.: 19-MD-02913-WHO