Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
 *Attorneys for Defendants Huh, Pritzker, and Valani*
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to*<br><br>ALL ACTIONS | **Case No. 19-md-02913-WHO**<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-MANAGEMENT DIRECTOR DEFENDANTS' OMNIBUS *DAUBERT* MOTION**<br><br>[*[Proposed] Order Filed Concurrently Herewith*]<br><br>Date:          To be determined<br>Time:          To be determined<br>Courtroom:   2<br>Judge:          Hon. William H. Orrick |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on a day and time to be determined by the Court, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Hoyoung Huh, Nicholas Pritzker, and Riaz Valani will and hereby do move the Court for an order excluding certain testimony of Plaintiffs' putative experts Steven B. Boyles, Minette E. Drumwright, Thomas E. Eissenberg, Neil E. Grunberg, Bonnie Halpern-Felsher, Robert K. Jackler, Robert W. Johnson, Sharon Levy, Eric N. Lindblom, Anthony R. Pratkanis, Judith J. Prochaska, Robert N. Proctor, Kurt M. Ribisl, Alan L. Shihadeh, and Jonathan P. Winickoff.

DATED:  December 23, 2021

Respectfully submitted,

By:     */s/ Michael J. Guzman*
Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
*Attorneys for Defendants Huh, Pritzker,*
*and Valani*
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED .................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................1

LEGAL STANDARD ...............................................................................................................3

ARGUMENT .............................................................................................................................5

I.     THE COURT SHOULD EXCLUDE MINETTE E. DRUMWRIGHT'S
       CORPORATE GOVERNANCE OPINIONS BECAUSE SHE LACKS
       RELEVANT EXPERTISE, AND HER PROPOSED TESTIMONY IS
       UNHELPFUL, UNRELIABLE, AND LIKELY TO CONFUSE THE JURY .....................5

       A.     Drumwright Is a Marketing Professor Who Purports to Opine on ███████
              ████████████████████████████████████ ..............5

       B.     Drumwright Is Unqualified to Testify on ████████████████
              Because Her Expertise – If Any – Is in Marketing, Not Corporate
              Governance.................................................................................................................7

       C.     Drumwright's Testimony Is Unhelpful and Irrelevant Because Ethics Are
              Not Law, and She Serves as a Human Highlighter for Plaintiffs...............................8

       D.     Drumwright's Opinions Are Confusing and Prejudicial Because She Invites
              the Jury to Conflate Ethics and Law ......................................................................11

II.    THE COURT SHOULD EXCLUDE STEVEN B. BOYLES BECAUSE HE DOES
       NOT CONDUCT ANY RELEVANT OR USEFUL FINANCIAL
       CALCULATIONS. .........................................................................................................12

       A.     Boyles Purports to Determine ██████████████████████
              ███████████████████ ...........................................................12

       B.     Boyles's Opinions Are Unhelpful Because They Do Not Fit Any Viable
              Liability Theory.......................................................................................................13

       C.     Boyles's Opinions Suffer from Significant Methodological Defects .....................15

III.   THE COURT SHOULD EXCLUDE ROBERT W. JOHNSON BECAUSE HIS
       OPINIONS ARE NOT THE PRODUCT OF ANY ECONOMIC ANALYSIS.................18

       A.     Johnson, a Self-Identified "Forensic Economist," Purports to ████████
              ██████████████████████ But Merely Restates Deposition
              Testimony.................................................................................................................18

       B.     Johnson's Testimony Is Unhelpful and Unreliable, Because He Performed
              No Analysis, and His Opinions Do Not Fit the Undisputed Facts............................19

i

IV.  THE COURT SHOULD PRECLUDE PLAINTIFFS' REMAINING EXPERTS
     FROM TESTIFYING ABOUT THE NON-MANAGEMENT DIRECTORS. ...................22

     A.  The Remaining Experts Are Unqualified Because They Lack Relevant
         Knowledge, Training, Skills, and Experience. ..........................................22

     B.  The Remaining Experts Improperly Offer Opinions on Ultimate Questions
         of Law and Fact, Serving as Human Highlighters for Plaintiffs. ...........................24

     C.  The Remaining Experts Provide Confusing and Prejudicial Testimony That
         Attempts to Make This Case about ███████████ and ███████████
         ████████████████ ..........................................................28

CONCLUSION ....................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*,
   2016 WL 6075566 (W.D. Tex. Apr. 22, 2016) ................................................................. 19

*AI-Daiwa, Ltd. v. Apparent, Inc.*, 2015 WL 5304111 (N.D. Cal. Sept. 9, 2015) ........................... 27

*AIG Ret. Servs., Inc. v. Altus Fin. S.A.*,
   2011 WL 13213589 (C.D. Cal. Sept. 26, 2011) ................................................................. 5

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   2020 WL 2553181 (S.D. Cal. May 20, 2020) ................................................................. 4, 10

*Bakst v. Cmty. Mem'l Health Sys., Inc.*,
   2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ............................................................. 16, 17, 21

*Belisle v. BNSF Ry. Co.*, 2010 WL 1424344 (D. Kan. Apr. 5, 2010) ....................................... 30

*BP Prods. N. Am., Inc. v. Grand Petroleum, Inc.*,
   2021 WL 4482138, slip op. at 1 (N.D. Cal. Sept. 30, 2021) ........................................... 26

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ....................... 16

*Calagno v. Rite Aid Corp.*, 2020 WL 6700451 (N.D. Cal. Nov. 13, 2020) ............................... 20

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) ................................... 3

*Datatreasury Corp. v. Wells Fargo & Co.*,
   2010 WL 3768105 (E.D. Tex. Sept. 13, 2010) ................................................................. 26

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ........................... 3, 4, 23, 28

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). ................................................. 29

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
   2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ................................................................. 19, 20

*Drake v. R.J. Reynolds Tobacco Co.*,
   2015 WL 12746105 (S.D. Fla. Jan. 29, 2015) ................................................................. 30

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ................................................................. 25

*Galindo v. Tassio*, 2014 WL 12693525 (N.D. Cal. June 19, 2014) ......................................... 26

*GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............................... 28

*GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000) ......................................... 29

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................... 14

*Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) ............................................................. 16

*Hutchinson v. Hamlet*, 2006 WL 1439784 (N.D. Cal. May 23, 2006) .............................................. 27

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2017 WL 6523833 (D. Ariz. Dec. 21, 2017).............................................................................. 8

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2018 WL 495187 (D. Ariz. Jan. 22, 2018)............................................................................. 8, 10

*In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) .................................................. 8

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
    2021 WL 2646771 (S.D. Ohio June 28, 2021)......................................................................... 21

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
    2001 WL 454586 (E.D. Pa. Feb. 1, 2001)................................................................................ 8

*In re: Engle Progeny Cases Tobacco Litig.*, 2008 WL 8910991 (Fla. Cir. Ct. Dec. 4, 2008)........ 29

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008).............. 7, 23

*In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607 (C.D. Cal. Jan. 24, 2017)..................... 24

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................. *passim*

*In re Trados Inc. S'holder Litig.*, 73 A.3d 17 (Del. Ch. 2013) .............................................. 10, 11

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
    858 F.3d 787 (3d Cir. 2017) ................................................................................................... 16

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir. 2009).................................................................................................. 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ......................................................................................................... 13

*Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020),
    *leave for recon. denied*, 2020 WL 2322993 (N.D. Cal. May 11, 2020) ................................... 14

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)............................................................. 22, 24

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) ......................................................... 14

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)................................................... 21

*LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551  (S.D.N.Y. July 16, 2002) ................................... 4

*Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996) ...................................................... 3

*Maksoud v. Guelton*, 2017 WL 2505887 (S.D. Cal. June 9, 2017)................................................. 14

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
   2019 WL 2716512 (N.D. Cal. June 28, 2019) ........................................................................ 30

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) ................ 4, 10, 23

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014)..................................... 28

*Pease v. Lycoming Engines*, 2012 WL 162551 (M.D. Pa. Jan. 19, 2012) ...................................... 30

*Phillips v. Apple Inc.*, 725 F. App'x 496 (9th Cir. 2018)................................................................. 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   402 F. Supp. 3d 615 (N.D. Cal. 2019) ............................................................................. 3, 8, 23

*Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543 (N.D. Cal. 2012) .................................... 8, 21

*Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984)........................................................................................... 20

*Provident Life & Accident Ins. Co.*, 32 F. App'x 821 (9th Cir. 2002)........................................... 20

*Recreational Devs. of Phoenix, Inc. v. City of Phoenix*,
   220 F. Supp. 2d 1054 (D. Ariz. 2002), *aff'd*, 77 F. App'x 983 (9th Cir. 2003)......................... 15

*Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426 (9th Cir. 1991) ..................................................... 29

*Rovid v. Graco Children's Prods., Inc.*, 2018 WL 5906075 (N.D. Cal. Nov. 9, 2018)................... 29

*SEC v. Leslie*, 2010 WL 2991038 (N.D. Cal. July 29, 2010)........................................................... 26

*Snyder v. Bank of Am., N.A.*, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020),
   *appeal pending*, No. 21-15350 (9th Cir. filed Mar. 1, 2021) ..................................................... 20

*Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023 (C.D. Cal. 2013) ........................ 8

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal. 1989)...................... 20

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   2008 WL 2037732 (N.D. Cal. May 12, 2008) ................................................................ 4, 23, 25

*U.S. ex rel. Suter v. Nat'l Rehab Partners Inc.*,
   2009 WL 3151099 (D. Idaho Sept. 24, 2009)........................................................................ 27

*United States v. Avila*, 557 F.3d 809 (7th Cir. 2009) ...................................................................... 26

*United States v. Binder*, 769 F.2d 595 (9th Cir. 1985)............................................................... 4, 25

*United States v. Candoli*, 870 F.2d 496 (9th Cir. 1989)............................................................. 4, 25

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ..................................................... 3

*United States v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002) .......................................... 27

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
   2010 WL 11505684 (C.D. Cal. Jan. 25, 2010)..................................................... 5

**Rules**

Fed. R. Evid. 403 .................................................................................. 1, 3, 29

Fed. R. Evid. 702 ............................................................................... 1, 3, 4, 29

**Other Authorities**

Jonathan R. Macey, *Corporate Governance* (2008) ................................................ 7, 23

### STATEMENT OF THE ISSUES TO BE DECIDED

Whether this Court should exclude Plaintiffs' proposed expert testimony regarding the Non-Management Directors.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek to offer the opinions of experts whose proposed testimony regarding the Non-Management Directors satisfies none of the prerequisites set forth in Rules 403 and 702 of the Federal Rules of Evidence. These experts fall into two groups. The experts in the first group, exemplified by Professor Minette E. Drumwright, address some subjects that may be within their areas of expertise but are not directly relevant to the Non-Management Directors. But when these experts opine about the Non-Management Directors, they venture into areas where they have no expertise (such as corporate governance), and they opine on ultimate issues of law and fact without making any attempt to employ some reliable methodology. Far from helping the jury, their opinions would displace the jury. The Court must exclude their testimony.

The second group consists of two professional experts who comment upon ██████ █████████████████████████████████████████████████████████████████████████████ ██████████████. These individuals offer no helpful or relevant opinions. The first – Robert W. Johnson – simply reviewed deposition transcripts, while the second – Steven B. Boyles – presents ███████████████████████████████████, a remedy that is unavailable as a matter of law.

- Professor Minette E. Drumwright seeks to testify about █████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████. *See infra* Part I. She also claims that the Non-Management Directors █████████████████████████████████████████ ████████████████████████████. But Drumwright's purported marketing expertise does not qualify her ██████████████████████████████████████████████████ █████████████████████████████████████████████████████ are irrelevant and prejudicial. They cannot help (and will only confuse) the jury because these

1  lawsuits concern the legality, not the ethics, of the Non-Management Directors' alleged

2  conduct.

3  • Steven B. Boyles purports to ███████████████████████████████████████

4  ███████████████████████████████. *See infra* Part II. This "analysis" is inadmissible

5  because it appears intended to ██████████████████. Boyles's analysis also is unreliable:

6  it misapplies ████████████████████████, which itself is unreliable; ignores

7  and contradicts the factual record; makes unrealistic assumptions; and generates absurd

8  results. For example, Boyles's analysis assumes (contrary to Plaintiffs' own complaints)

9  that ███████████████████████████████████████████████████

10  ██████████████████████████. And it concludes that, ████████████

11  ███████████████████████████████████.

12  • Robert W. Johnson, a self-described "forensic economist" with only an undergraduate

13  degree in economics and a Master's degree in Business Administration, claims to analyze

14  ████████████████████████████████████. *See infra* Part III. But

15  the only input into Johnson's "analysis" – which consists ████████████████████

16  ███████████████ – is the Non-Management Directors' deposition transcripts, which

17  the jury can review for itself. Johnson's "analysis" is also unreliable, because he simply

18  asks ████████████████████████████████████████████

19  ████████████████He does not consider whether ████████████████████

20  ██████████████████████████and whether███████████████████

21  ███████████████████████████████████He also

22  ignores that ██████████████████████████████████████

23  ████████████████████

24  • Plaintiffs' remaining experts – Thomas E. Eissenberg, Neil E. Grunberg, Bonnie Halpern-

25  Felsher, Robert K. Jackler, Sharon Levy, Eric N. Lindblom, Anthony R. Pratkanis, Judith

26  J. Prochaska, Robert N. Proctor, Kurt M. Ribisl, Alan L. Shihadeh, and Jonathan P.

27  Winickoff – all opine that █████████████████████████████████████

28  ██████████████. *See infra* Part IV. They opine on legal and factual matters such as ██████████████

2

1  █████████████████████████████████████████████████████████

2  ████████████████████████████  But none of these doctors, psychologists, professors,

3  tobacco-policy researchers, engineers, and historians are qualified to evaluate those issues.

4  These "experts" use no reliable methodology, and do not employ any relevant knowledge.

5  Instead, they all propound the same factual narrative based on a curated selection of record

6  evidence and their weighing of the credibility of various fact witnesses.  Some of their

7  opinions are highly prejudicial – Proctor, for example, seeks to opine that ██████████

8  ██████████████████████████████████

9  ### LEGAL STANDARD

10  Expert testimony is admissible only if:

11  > (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience,
   > training, or education; (2) the scientific, technical, or other specialized knowledge will help
12  > the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony
   > is based on sufficient facts or data; (4) the testimony is the product of reliable principles
13  > and methods; and (5) the expert has reliably applied the relevant principles and methods to
   > the facts of the case.
14
15  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing Fed. R. Evid.

16  702).  Expert testimony should be excluded "if its probative value is substantially outweighed by a

17  danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

18  time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v.*

19  *Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  The party offering expert testimony bears the

20  burden of proving that it meets these requirements.  *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d

21  594, 598 (9th Cir. 1996).

22  This Court must exclude an expert's testimony to the extent that it offers opinions beyond

23  the expert's area of expertise, as determined by the expert's "knowledge, skill, experience,

24  training, or education."  Fed. R. Evid. 702; *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr.*

25  *for Med. Progress*, 402 F. Supp. 3d 615, 720–21 (N.D. Cal. 2019) (Orrick, J.) (an expert cannot

26  testify "beyond his area of expertise"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315

27  (9th Cir. 1995) ("*Daubert II*") ("The question of admissibility only arises if it is first established

28  that the individuals whose testimony is being proffered are experts in a particular scientific

field.").

This Court also must exclude experts whose testimony is unhelpful. *Daubert II*, 43 F.3d at 1321 n.17 ("Federal judges must . . . exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury."). Testimony can be unhelpful for many reasons. To start, testimony is unhelpful if it does not "fit" viable liability theories and, as a result, does not "logically advance[ ] a material aspect of [Plaintiffs'] case." *Id.* at 1315.

Next, expert opinions that invade the province of the jury are unhelpful. *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (holding that an expert could not "usurp the jury's fact-finding function"), *overruled on other grounds sub nom. United States v. Morales*, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997) (en banc). An expert invades the jury's province by "constructing a factual narrative based upon record evidence," or otherwise finding facts. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *1–2 (S.D.N.Y. July 16, 2002) (when an expert's report is based on a review of "documents, computer documents, computer files, deposition transcripts and exhibits," the "testimony by fact witnesses familiar with those documents would be far more appropriate . . . and renders [the expert's] secondhand knowledge unnecessary") (internal quotation marks omitted). Moreover, because credibility determinations are a critical part of the jury's factfinding role, an expert cannot make them. *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("The jury must decide a witness' credibility.").

Finally, experts invade the jury's province by offering legal conclusions, *see Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), or opinions about parties' intent, *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008) ("[N]o expert of any kind will be allowed to speculate as to anyone's subjective intent or knowledge."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). Such opinions "have no basis in any relevant body of knowledge or expertise." *Aya*

4

1    *Healthcare*, 2020 WL 2553181, at *5 (internal quotation marks omitted).

2         Last, this Court must exclude witnesses whose opinions are based on unreliable data or

3    methods.  An expert's methodology is not reliable if the expert merely offers a subjective view of

4    the evidence or if the results are impossible to replicate.  *See, e.g., AIG Ret. Servs., Inc. v. Altus*

5    *Fin. S.A.*, 2011 WL 13213589, at *4 (C.D. Cal. Sept. 26, 2011) (excluding expert opinions that

6    were just the experts' "subjective view of the evidence, which the jury is more than capable of

7    interpreting," as unreliable and unhelpful); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010

8    WL 11505684, at *6–7 (C.D. Cal. Jan. 25, 2010) (excluding an expert as unreliable because his

9    "experiments [were] conducted in a way that does not allow any other expert to replicate them"),

10   *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013).

## ARGUMENT

**I.    THE COURT SHOULD EXCLUDE MINETTE E. DRUMWRIGHT'S CORPORATE GOVERNANCE OPINIONS BECAUSE SHE LACKS RELEVANT EXPERTISE, AND HER PROPOSED TESTIMONY IS UNHELPFUL, UNRELIABLE, AND LIKELY TO CONFUSE THE JURY**

Minette E. Drumwright is unqualified to offer expert opinions on ███████████████, because she has no expertise in corporate governance.  Her opinions regarding the Non-Management Directors are unhelpful to the jury, unreliable, and prejudicial.  She should be precluded from offering such testimony.

**A.    Drumwright Is a Marketing Professor Who Purports to Opine on ████████████████**

Drumwright is a Professor at the University of Texas at Austin.  Drumwright Report (Ex. A) at 1.  She has a Ph.D. in Business Administration (Marketing) from the University of North Carolina at Chapel Hill.  *Id.* at 6.  Drumwright researches and teaches "in the areas of marketing, advertising, ethics, and corporate social responsibility."  *Id.* at 2.  She worked for eight years in advertising and public relations, as a public relations specialist for a public relations agency and an account executive for an advertising agency.  *See id* at 3.  She also served as a public relations director for Baylor University.  *See id.*  Drumwright has taught marketing in executive education programs, and has served on nonprofit boards (e.g., St. Andrew's Episcopal School of Austin), *id.*,



1 ████████████████████████████ Drumwright Tr. (Ex. B) 251:23-252:11.

2     Drumwright offers two opinions regarding the Non-Management Directors.  First, she

3 opines that ██████████████████████████████████████

4 █████████████████████ Based on her selective reading of the record, and her

5 crediting the testimony of one witness over others, she offers a factual conclusion that ████

6 ███████████████████████████████████████████

7 ████████████████████████. Drumwright Report at 9.  In support

8 of her opinions, Drumwright invokes ██████████████████████████

9 ████████████████████████████████████████

10 █████████████████████████████████████████

11 ████████████████ According to Drumwright. ██████████████

12 █████████████████████████████████████████

13 ████████████████████ *Id.*  Finally, Drumwright claims that ████████

14 █████████████████████████████████████████

15 ███████████████████████████████████████ *Id.* at

16 9-10.

17     Second, Drumwright opines that ██████████████████████████

18 ████████████████████████████████████████

19 ███████████████████████████████████

20 █████████ *Id.* at 10.  As support for this opinion, █████████████████

21 ████████████████████████████████████

22 ██████. Instead, she relies on █████████████████████████████

23 ██████████████████████████████████ Drumwright

24 concludes that █████████████████████████████

25 ████████████████████████████████████

26 █████████████████████████████████████████

27 ████████████████████████████████████

28 █████████████████████████████████████

1 ███████████████ *Id*.

2 **B.    Drumwright Is Unqualified to Testify on ██████████████**
**Because Her Expertise – If Any – Is in Marketing, Not Corporate Governance**

Drumwright is a marketing professor, and the Non-Management Directors do not challenge her qualifications in the field of marketing. But Drumwright acknowledges that the opinions she seeks to give regarding the Non-Management Directors are not "marketing and advertising opinion[s]." Drumwright Tr. 330:5-16. Accordingly, whatever expertise she may have in marketing or advertising does not qualify her to offer them.

Drumwright's opinions concerning the Non-Management Directors are corporate-governance opinions. Corporate governance encompasses "[e]very device, institution, or mechanism that exercises power over decision-making within a corporation." Jonathan R. Macey, *Corporate Governance* at 2 (2008). That includes all aspects of corporate board behavior and control of the corporation, such as the duties of board members and the composition of the board. *See In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *1 (N.D. Cal. Dec. 22, 2008) (describing directors' duties and board composition as "corporate governance" issues); Macey, *Corporate Governance* at 51 ("The board of directors is at the epicenter of U.S. corporate governance. . . . [C]orporations are managed by or under the direction of boards of directors, making the directors literally the governors of the corporation."). Drumwright's opinions must be supported by expertise in this field, because she purports to articulate ███████████ ████████████████████████████████████████ ████████████████████.

Yet Drumwright has no expertise in corporate governance. She has not published a single relevant article in this area. Drumwright Report Ex. A; Klausner Report (Ex. C) ¶ 22. She is ███████████████████████████████████████ ████████████████████████████████ ███████████████. Drumwright Report at 112. She has never ████████████ ████████████. Drumwright Tr. 257:17-20. She has ███████████████ ██████████████. *Id.* 341:10-17. She has ████████████████

1  ████████████████████████████████. *Id.* 258:20-23.  And despite her claim that ██████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████  Drumwright Tr. 258:24-260:19.

5       Because Drumwright lacks expertise to opine on ████████████████████████

6  ████████████████████  this Court must exclude her opinions regarding the Non-Management

7  Directors (set forth in Parts IX and X of her Report).  *See Planned Parenthood*, 402 F. Supp. 3d at

8  720–21; *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547–48 (N.D. Cal. 2012) (an expert

9  cannot testify in areas in which she lacks training or other qualifications); *Stonefire Grill, Inc. v.*

10  *FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1039 (C.D. Cal. 2013) (prohibiting a witness from

11  opining as an expert because he had never before testified or written about the subjects of his

12  supposed expertise).

13       **C.   Drumwright's Testimony Is Unhelpful and Irrelevant Because Ethics Are Not
          Law, and She Serves as a Human Highlighter for Plaintiffs**

14

15       Drumwright's ethics opinions cannot help the jury.  The sources on which Drumwright

16  bases both of her opinions – for example, ████████████████████████████████

17  ██████  – are not law, and do not purport to define or inform ████████████████████

18  ████████████████████████  cannot assist the jury in determining potential legal

19  liability.  For that reason, courts have consistently excluded opinion testimony regarding ethics.

20  *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 495187, at *3 (D. Ariz. Jan. 22,

21  2018) (excluding expert opinions based on "documents [that] contain ethical and practice

22  guidance" and that "say nothing about the legal responsibilities of" the defendants); *In re Bard*

23  *IVC Filters Prods. Liab. Litig.*, 2017 WL 6523833, at *9 (D. Ariz. Dec. 21, 2017) (excluding

24  expert opinions regarding ethics because ethics are not a proper subject of expert testimony); *In re*

25  *Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) ("Personal views on corporate

26  ethics and morality are not expert opinions."); *In re Diet Drugs (Phentermine, Fenfluramine,*

27  *Dexfenfluramine) Prods. Liab. Litig.*, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001) (excluding

28  expert because ethics were, "at best, only marginally relevant" to the defendant's legal liability).

1       Unlike law, these authorities are hortatory and non-binding.  As Michael Klausner (a

2   renowned corporate governance expert and Professor at Stanford Law School) explains in his

3   Rebuttal Report, ████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   Klausner Report ¶ 30.  No court has ever held that ████████████████████

6   ████████████████████████████ . ████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████

10       ████████████████ also are too vague to regulate conduct and therefore cannot

11   assist the jury.  ████████████████████████████████████████████

12   ████████████████████ Drumwright Report at 9-10.  These are platitudes, not legal

13   prescriptions.  *See Rezulin*, 309 F. Supp. 2d at 543 (excluding expert opinions "regarding ethical

14   standards" because they "articulate[d] nothing save for the principle that" people "should be

15   honest," a principle that is "so vague as to be unhelpful") (internal quotation marks omitted); *see*

16   *also* Klausner Report ¶ 45 ████████████████████████████████████

17   ████████████████████████ And potential liability for not meeting ████

18   ████████████████ would be both indeterminate and limitless.  *See id.* ¶ 35 ████████

19   ████████████████████████████████████████████

20   ████████████████████████████ Admitting her testimony

21   would work a sea change in corporate governance law, subjecting corporate directors to a risk of

22   legal liability if, in the sole opinion of a marketing expert paid by a plaintiff, their corporations ██

23   ████████████████████████████████████████████████

24   ████████████████████

25       Drumwright's ████████ also contradict governing law.  For example, Drumwright

26   asserts – and her opinions assume – that ████████████████████████

27   ████████████████████ Drumwright Report at 112 ████████████████

28   ████████████████████████████ Drumwright Tr.

281:20-282:23 ███████████████████████████████████████

██████████████████████████████████████ That is wrong.

Directors owe fiduciary duties to shareholders alone, and the shareholders' "best interest must

always, within legal limits, be the end." *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 37 (Del.

Ch. 2013) (internal quotation marks omitted); *see also* Klausner Report ¶ 14 ████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████ Drumwright's reliance on ██████████████████████████

██████████████████████████████ fails for the same reason: these authorities create

no binding legal obligations on the Non-Management Directors. *See Bard*, 2018 WL 495187, at

*3 (excluding expert opinions based on the defendant's internal documents which do not "set[] the

legal standard . . . under the state tort laws applicable in this MDL proceeding"). Opinions that

turn settled law on its head cannot be helpful to the jury.

Drumwright's opinion also should be excluded because she seeks to opine on the law and

thereby usurp the Court's role. For example, she opined that ██████████████████████

█████████████████████████████████████████████████████████

██████████████████████████ Drumwright Report at 110. That is

improper; the Court – not Drumwright – must instruct the jury about the law. *Nationwide Transp.*,

523 F.3d at 1058.

Drumwright likewise invades the jury's province by finding facts or opining on ultimate

questions. For example, she opines that ████████████████████████████████

█████████████████████████████████████████████████

Drumwright Report at 9. But those are matters for the jury to assess based on the evidence

presented at trial. Drumwright cannot offer a narrative that she constructed "based on [the] record

evidence," *Aya Healthcare*, 2020 WL 2553181, at *6, that she selectively reviewed and based on

her assessments of witness credibility,[1] *see* Drumwright Tr. 289:19-290:9 ██████████████

---

[1] Drumwright's report is also unreliable. Drumwright's report does not disclose the methodology she used to review relevant documents. At deposition, she testified that ██████████

10

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 (emphasis added).

4       Indeed, to the extent Drumwright applies any methodology, she replicates the roles of

5 judge and jury in our judicial system, but without the safeguards that make that system reliable.

6 For example, Drumwright ████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ████████████████████. *Id.* 279:12-280:4 ███████████████████████████

9 ██████████████████████████████ Drumwright also considered

10 record evidence, determined witnesses' credibility, and applied the law to the evidence – a jury's

11 role.  But she makes factual errors and credibility determinations that a panel of unbiased jurors

12 might not.  *See id.* 290:10-294:19 ████████████████████████████████

13 █████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15       Finally, Drumwright improperly seeks to opine on the Non-Management Directors' state

16 of mind, offering testimony on █████████████████████████████████

17 ███████████████████████████████████████████████████████

18 That is all improper; only the jury can draw inferences regarding the Non-Management Directors'

19 intentions and motivations.  *Rezulin*, 309 F. Supp. 2d at 547 ("Inferences about the intent or

20 motive of parties or others lie outside the bounds of expert testimony.").

21       **D.       Drumwright's Opinions Are Confusing and Prejudicial Because She Invites
              the Jury to Conflate Ethics and Law**

22       Allowing Drumwright to testify ████████████████████ would confuse the jury and

23 prejudice the Non-Management Directors.  *See Rezulin*, 309 F. Supp. 2d at 545 (allowing an

24 expert to testify about purported ethical standards "would be likely unfairly to prejudice and

25 confuse the trier by introducing the 'experts'' opinions and rhetoric concerning ethics as

26

27 _____

28 ████████████████████████████████████████████████   *See* Drumwright Tr. 35:12-36:18.

1  alternative and improper grounds for decision on bases other than the pertinent legal standards.").

2  The Non-Management Directors' ethics are not at issue; the legality of their conduct is.  The risks

3  of confusion and prejudice substantially outweigh any probative value that Drumwright's

4  testimony may have.  Drumwright's opinions regarding the Non-Management Directors should be

5  excluded in their entirety.

6  **II.   THE COURT SHOULD EXCLUDE STEVEN B. BOYLES BECAUSE HE DOES
        NOT CONDUCT ANY RELEVANT OR USEFUL FINANCIAL CALCULATIONS.**

7

8      The Court should exclude Steven B. Boyles's testimony as unhelpful and unreliable

9  because he purports to ████████████████, which is unavailable as a matter of law, and

   because his report suffers from significant methodological defects.

10     **A.   Boyles Purports to Determine ██████████████████████████
               ████████████████████.**

11

12     Boyles purports to describe ████████████████████████████

13  ████████████████████  Boyles Report (Ex. D) ¶¶ 13-48.  He then claims to ████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████  *Id.* ¶ 49.  Boyles relies ██████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████  Singer

21  claims to ████████████████████████████████

22  ████████████████████████████████████████

23  ████████████  Purporting to ████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████  As JLI's expert

26  _____

27    [2] According to Boyles ████████████████████████████

28  ████████████████████████████████  Boyles Report ¶ 13 n.8.

1  Professor Fischel explains in his Rebuttal Report, Boyles ███████████████████

2  █████████████████████████████████ But Altria is not a plaintiff here, and

3  the class Plaintiffs do not stand in its shoes.

4        The ████████ Boyles reaches vary according to: ██████████████████████

5  █████████████████████████████ *See* Boyles Report ¶ 80.  For

6  example, in a scenario where ███████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 █████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████ Thus, his assumptions and

16 examples are by themselves prejudicial.

17    **B.     Boyles's Opinions Are Unhelpful Because They Do Not Fit Any Viable
             Liability Theory**

18

19       Boyles's proposed testimony does not fit any permissible liability theory and is therefore

   unhelpful.

20       Boyles purports to calculate ████████████████, but that remedy is unavailable

21 to any of the Plaintiffs as a matter of law.  Neither the personal-injury nor the government-entity

22 Plaintiffs have pleaded any claim that would ██████████████████████████

23 ███████████████████████████████. To the extent the Plaintiffs in

24 the class action involving economic harms suggest that their Unfair Competition Law ("UCL")

25 and unjust-enrichment claims could allow them to disgorge this income, their argument is squarely

26 foreclosed by California Supreme Court precedent, which makes clear that the UCL's remedies

27 "are limited" to restitution or an injunction.  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d

28

1    937, 948 (Cal. 2003).

2          Neither remedy is available as against the Non-Management Directors.  No injunction is

3    available (or even sought), and any income the Non-Management Directors received in the Altria

4    transaction is not subject to restitution.  Restitution "requires both that money or property have

5    been lost by a plaintiff, on the one hand, *and that it have been acquired by a defendant*, on the

6    other." *Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir. 2018) (quoting *Kwikset Corp. v.*

7    *Superior Court*, 246 P.3d 877, 895 (Cal. 2011)) (emphasis added).  Plaintiffs have not alleged

8    – and they cannot show – that the Non-Management Directors acquired any money that belonged

9    to Plaintiffs because of the Altria transaction.  The same analysis applies to Plaintiffs' unjust-

10   enrichment claims.  *See Maksoud v. Guelton*, 2017 WL 2505887, at *6 (S.D. Cal. June 9, 2017)

11   (noting that "the elements of a restitution claim are identical to those of an unjust enrichment

12   claim" and dismissing both claims based on the same analysis).

13         Because Plaintiffs have pleaded no claim that would entitle them to disgorge any of the

14   income that the Non-Management Directors allegedly received in the Altria transaction, Boyles's

15   analysis – ██████████████████████████████████████ – is unhelpful and

16   irrelevant, and it must be excluded.  *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552,

17   577–78 (N.D. Cal. 2020) (Orrick, J.) (granting motion to exclude expert testimony that

18   "measure[d] only impermissible non-restitutionary disgorgement" and therefore did "not capture

19   damages/restitution available to plaintiffs if they prevail" on UCL claim), *leave for recon. denied*,

20   2020 WL 2322993 (N.D. Cal. May 11, 2020); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084,

21   1112–14 (N.D. Cal. 2018) (similar); *see also* Fischel Report (Ex. F) ¶ 12 ██████████████

22   ███████████████████████████████████████████████████████████

23   ███████████████████████████████████[3]

24   _____

25         [3] This Court's April 13, 2021 Order on the Second Round of Motions to Dismiss
     considered recognizing a broader conception of restitution.  *See* ECF 1694 at 22 (at the pleading
26   stage, "plaintiffs 'simply need to allege that [defendants] obtained money (or property) and that
     plaintiffs lost money or property as a result of defendants' unfair practices.'") (quoting October
27   23, 2020 Order on Substantive Motions to Dismiss at 97, ECF 1084).  But this Court has rightly
     expressed "serious concerns about whether restitution could be appropriate against these Officer
28   and Director Defendants given the size of JLI, the number of officers and directors on its board,

C.     **Boyles's Opinions Suffer from Significant Methodological Defects**

Boyles's report is unreliable because he relies on ▮▮▮▮, whose opinions are themselves unreliable and do not fit Plaintiffs' liability theories.  *See* Defendant JUUL Labs, Inc.'s Omnibus *Daubert* Motion Regarding Plaintiffs' Class Certification Experts at 44, ECF 2309-3 (Aug. 28, 2021); Non-Management Directors' Opposition to Plaintiffs' Motion for Class Certification at 12-14, ECF 2303-3 (Aug. 27, 2021) (explaining ▮▮▮▮ opinions are untethered to the theories Plaintiffs assert in their complaints or motion for class certification).  Because this Court must exclude ▮▮▮▮, it must exclude Boyles, too.  *See, e.g.*, *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009) (excluding expert's opinion because it relied on opinion of another expert the court found unreliable).

Beyond that threshold deficiency, Boyles's report is unreliable because he misapplies ▮▮▮▮ analysis.  *See Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 220 F. Supp. 2d 1054, 1063 (D. Ariz. 2002) ("Although . . . an expert may rely on the professional studies of other experts, the Court must still determine whether an expert's testimony 'rests on a reliable foundation.'"), *aff'd*, 77 F. App'x 983 (9th Cir. 2003).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ *See* Singer Report (Ex. G) ¶ 6.  But Boyles ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Boyles Report ¶ 56.

_____

and that some aspect of JLI's business was legitimate."  ECF 1084 at 99.

Boyles's report validates these concerns.  Boyles ignores the Court's acknowledgment that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These assumptions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    Boyles does not even try to justify this assumption, and he cannot.  That is because Boyles

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████

4    ████████████████████████████. *See* Fischel Report ¶¶ 33-34 ████████████████████

5    █████████████████  Boyles's misapplication of ██████ analysis is reason enough to

6    exclude him.  *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 800

7    (3d Cir. 2017) ("*[A]ny* step that renders the analysis unreliable under the *Daubert factors renders*

8    *the expert's testimony inadmissible.*") (emphasis in original; internal quotation marks omitted);

9    *Hardeman v. Monsanto Co.*, 997 F.3d 941, 961–62 (9th Cir. 2021) (recognizing the "any step"

10   principle" applies in the Ninth Circuit), *pet. for cert. docketed*, No. 21-241 (U.S. Aug. 18, 2021).

11   His failure to consider real-world evidence seals the deal.  *See* Fischel Report ¶¶ 13-14; *see also*

12   *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011)

13   ("The court agrees that because [the expert's] damages calculation is based on factual assumptions

14   that are entirely unsupported in the record, it fails meet the second prong of *Daubert*."); *cf. Brooke*

15   *Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("Expert testimony is

16   useful as a guide to interpreting market facts, but it is not a substitute for them.").

17   Boyles misapplies ████████████ in other important ways as well.  For example, ██████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ██████ *See* Singer Report ¶¶ 26-29, 40 n.42.  But Boyles ████████████████████████

21   ████████████████████████████████████  Boyles does not give any

22   reason to believe that ██████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████ *See* Fischel Report ¶ 35 ████████████████████████████

26   ████████████████████████████    ████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████████  But JLI discontinued all



1  but three of these flavors (Virginia Tobacco, Classic Tobacco, and Menthol), and ███████

2  ████████████████████████████ Boyles does not ████████████████

3  ████████████████████████████████████████████

4  █████████████████████████████████████████████████

5  *See* Boyles Tr. 103:8-13.  All of these examples show that Boyles misapplied ███████████

6  and is unreliable.

7          Unsurprisingly, Boyles's analysis yields absurd results that ███████████████████

8  ██████████████████████████████████████ (it is not, *see supra*).

9  Boyles's calculations ████████████████████████████████████████

10  ████████ *See* Fischel Report ¶ 36 ████████████████████████████

11  ██████████████████████████████████ (emphasis in original).

12  But even though all of the risks that ████████████ claim are known, and even though youth

13  usage of JUUL is now extremely limited,[4] JLI continues to generate significant revenue and has

14  significant value.[5]  Here, too, Boyles does not even try to reconcile this fact with his results.  *See*

15  Fischel Report ¶¶ 13-14; *Bakst*, 2011 WL 13214315, at *20 (excluding expert's testimony because

16  it was "based on factual assumptions that are entirely unsupported in the record").

17          Apart from his legal and methodological flaws, each of which require exclusion, there is

18  also a fundamental disconnect between Plaintiffs' theory of liability and Boyles's opinions.

19  According to Plaintiffs, Altria aligned with and invested in JLI in order to addict a new generation

20  of youth smokers, with full knowledge of addiction and safety risk.  Second Am. Consolidated

21

---

22      [4] The most recent National Tobacco Youth Survey shows that overall use of e-cigarettes by

23  middle and high school students is below the levels that existed before JUUL products entered the

24  market.  And of that reduced number, less than 6% of high school e-cigarette users reported that
they used JUUL products.  Eunice Park-Lee *et al.*, *Notes from the Field:  E-Cigarette Use Among
Middle and High School Students — National Youth Tobacco Survey*, U.S. Dep't of Health and

25  Human Servs./Ctrs. for Disease Control & Prevention (Oct. 1, 2021),
https://www.cdc.gov/mmwr/volumes/70/wr/mm7039a4.htm.

26      [5] Amelia Lucas, *FDA Says It Won't Complete Review of E-Cigarette Products by Thursday

27  Deadline*, CNBC (Sept. 9, 2021), https://www.cnbc.com/2021/09/09/fda-will-reportedly-seek-
more-time-before-deciding-if-juul-can-keep-selling-its-e-cigarettes.html ("As of 2020, [JLI] held

28  54.7% share of the $9.38 billion U.S. e-cigarette market.").



Class Action Compl. ¶ 510, ECF 1135 ("The result [of the Altria deal] was . . . a new generation of youth customers for Altria . . . ."). Plaintiffs further contend that Altria tracked JLI's sales. *See id.* ¶ 498 (stating Altria was "gathering information on JLI that confirmed Altria would be purchasing a company with a proven track-record of sales to youth"). That means that Altria was fully aware of the revenue supposedly attributable to youth usage and safety and addiction risks,

███████████████████████████████████████████████████████████████████

███████ Boyles makes no attempt to explain why █████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████ This

assumption defies common sense: ██████████████████████████████████

███████████████████████████████████████ *See* Boyles Report ¶¶ 18,

67-68 █████████████████████████████████████████████████ *see*

*also* Fischel Report ¶ 24 ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████ Boyles's analysis is untethered from reality, does not fit Plaintiffs' theory of liability, and unreliable. It should be excluded in its entirety.

## III.   THE COURT SHOULD EXCLUDE ROBERT W. JOHNSON BECAUSE HIS OPINIONS ARE NOT THE PRODUCT OF ANY ECONOMIC ANALYSIS.

Robert W. Johnson, a self-styled "forensic economist," offers unhelpful opinions that merely regurgitate the testimony of other witnesses without any economic analysis, and his testimony contains errors that render it unreliable. This Court should exclude his opinions about the Non-Management Directors.

### A.   Johnson, a Self-Identified "Forensic Economist," Purports to ██████████ ████████████████████████ But Merely Restates Deposition Testimony.

Johnson is the President of Robert W. Johnson & Associates, a group of "forensic economists" who offer expert witness assistance in areas such as damages and settlement analysis. Johnson Report (Ex. H) Ex. B. Johnson has an MBA from Stanford University and a degree in

18

1   Business Administration, with a major in Economics, from Baruch College. *Id.* Johnson has

2   spent the past thirty years working as an economic expert in litigation. *Id.*; *see* Johnson Tr. (Ex. I)

3   59:20-60:5 (explaining that serving as an expert witness is his exclusive form of income).

4       Johnson's report claims to ███████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████ Johnson

7   Report at 7. ███████████████████████████████████████

8   ████████████████████████. *Id.* at 55.  First, Johnson "opines" that ████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  █████████████████████████████████████

13      Next, Johnson "opines" that ████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████. Johnson Report Addendum (Ex. K) at 26 (citing

17  Mr. Valani's deposition of September 20, 2021).

**B.    Johnson's Testimony Is Unhelpful and Unreliable, Because He Performed No Analysis, and His Opinions Do Not Fit the Undisputed Facts.**

19

20      Johnson's report violates Rules 702 and 403 because his "opinions" do no more than

    regurgitate the Non-Management Directors' deposition testimony and because he ████████████

21  ██████████████████████████████████████████████████. *See*

22  *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar.

23  15, 2016) (excluding an expert's opinion as unreliable in part because he "often does no more than

24  regurgitate information given to him by other sources"); *see also 360 Mortg. Grp., LLC v.*

25  *Homebridge Fin. Servs., Inc.*, 2016 WL 6075566, at *4 (W.D. Tex. Apr. 22, 2016) (holding

26  damages experts' testimony unreliable when they "ignore[d]" the fact that two business entities

27  were "distinct").

28

1    Johnson purports to analyze ███████████ but does not.  Instead, he simply ██████

2    ███████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    █████████████████████  Johnson Report at 57-58; Johnson Report Addendum at 26.  At

5    his own deposition, Johnson conceded that ████████████████████████████████

6    █████████████████  Johnson Tr. 139:25-140:2; *see* Johnson Report at 55.

7    Johnson's opinion cannot help the jury – they can listen to the testimony themselves.  *See Dep't of*

8    *Toxic Substances*, 2016 WL 1029463, at *1; *Rezulin*, 309 F. Supp. 2d at 546–47 (prohibiting

9    expert testimony that "merely repeated facts or opinions stated by other potential witnesses or in

10   documents produced in discovery" and "drew simple inferences from documents" in evidence).

11   Parroting back trial or deposition testimony is not the product of specialized knowledge or

12   expertise.

13          Further, Johnson's opinions are unhelpful and unreliable because he measures damages to

14   which Plaintiffs are not entitled and applies an incorrect legal standard.  *See Snyder v. Bank of*

15   *Am., N.A.*, 2020 WL 6462400, at *3 (N.D. Cal. Nov. 3, 2020) (holding that an expert's opinion

16   was "unreliable, as it applies the wrong standards"), *appeal pending*, No. 21-15350 (9th Cir. filed

17   Mar. 1, 2021).  To begin, his opinions are irrelevant to the class cases, because neither the UCL

18   nor RICO permits plaintiffs to recover punitive damages.  *See Calagno v. Rite Aid Corp.*, 2020

19   WL 6700451, at *4 (N.D. Cal. Nov. 13, 2020) (collecting cases regarding the UCL); *Sw. Marine,*

20   *Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal. 1989) ("[P]laintiff may not

21   seek punitive damages under . . . RICO.").

22          In any case, Johnson's opinions disregard the factors that courts consider when assessing

23   these damages.  Under California law, for example, the factfinder must consider the defendant's

24   wealth to determine punitive damages.  *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch.*

25   *Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir. 1984).  Courts measure wealth at the time of the trial,

26   and it is personal to each defendant.  *Provident Life & Accident Ins. Co.*, 32 F. App'x 821, 825

27   (9th Cir. 2002) (explaining that "California cases generally hold that evidence of net worth at the

28   time of trial, not income or revenue, is the most appropriate measure of wealth for punitive

20

1    damages calculations").

2        Johnson made no attempt to ascertain the Non-Management Directors' current net worth.

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████ Johnson Tr. 140:14-141:5. ████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████ Courts have previously precluded Johnson from

7    offering similarly crude testimony because it does not speak to the only relevant question – a

8    defendant's ability to pay damages.  *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia*

9    *Mesh Prods. Liab. Litig.*, 2021 WL 2646771, at *3–4 (S.D. Ohio June 28, 2021) (excluding

10   Johnson's testimony as irrelevant when he analyzed the financial condition of the defendant

11   corporations' parent company instead of the condition of the actual defendants); *Pooshs*, 287

12   F.R.D. at 549 (excluding Johnson's opinion because it was not based on "any generally accepted

13   criteria or methodology").  The same result follows here.

14        Johnson's opinion is also unhelpful and unreliable because it is contradicted by the very

15   record he purports to recount.  Mr. Pritzker testified, for example, that ███████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████ N. Pritzker Tr. (Ex. L) 195:11-15, 205:13-16.  Mr. Pritzker also testified

18   that ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   *Id.* 204:18-205:16.  Johnson's opinion is therefore based on a false assumption and does not fit the

21   facts.  That is impermissible:  "[a]n opinion based on false assumptions is unhelpful in aiding the

22   jury in its search for the truth, and is likely to mislead and confuse."  *Lightning Lube, Inc. v. Witco*

23   *Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (internal quotation marks omitted); *accord Bakst*, 2011

24   WL 13214315, at *20 (excluding expert's testimony because it was "based on factual assumptions

25   that are entirely unsupported in the record").

26        The same is true of Johnson's analysis of Mr. Valani and Dr. Huh.  Even though it is

27   undisputed that ████████████████ and ████████████████████████████████████

28   ████████████████████████████████████████████████ R. Valani Tr.

(Ex. M) 35:21-36:13; H. Huh Tr. 288:13-290:23.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (internal quotation marks omitted).

The Court should exclude Johnson's opinions about the Non-Management Directors.

## IV.  THE COURT SHOULD PRECLUDE PLAINTIFFS' REMAINING EXPERTS FROM TESTIFYING ABOUT THE NON-MANAGEMENT DIRECTORS.

Twelve of Plaintiffs' remaining experts (collectively, the "Remaining Experts") offer redundant testimony that suffers from the same defects.  These experts spend the bulk of their reports offering opinions that may fall within their areas of expertise as medical doctors, psychologists, an engineer, a consultant, and a professor of history.  Then, almost as an afterthought, they venture far outside their professional fields and purport to draw sweeping factual and legal conclusions about ██████████████████████████████████████████.  Their "opinions" read like legal briefs and have nothing to do with any of these experts' supposed fields of expertise – medicine, psychology, engineering, tobacco policy, and history.  None is qualified to testify on matters of corporate governance.  And they all offer inadmissible legal conclusions and factual findings that invade the provinces of the court and jury; they employ no methodology, cannot describe their methodology, or their methodology was dictated by Plaintiffs' attorneys; and to the extent their opinions have any probative value (they do not), it is substantially outweighed by the risk of confusing the jury and prejudicing the Non-Management Directors.  Each of Eissenberg, Grunberg, Halpern-Felsher, Jackler, Levy, Lindblom, Pratkanis, Prochaska, Proctor, Ribisl, Shihadeh, and Winickoff should be precluded from testifying about the Non-Management Directors.

### A.  The Remaining Experts Are Unqualified Because They Lack Relevant Knowledge, Training, Skills, and Experience.

The Remaining Experts all opine that ████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████

1   ████████████████████[6] *See Nationwide Transp.*, 523 F.3d at 1058.  They also opine

2 about ████████████████████████████████████████████████████████████████

3 ████████████████████████████████   *See Therasense*, 2008 WL 2037732, at *4;

4 *Rezulin*, 309 F. Supp. 2d at 547.

5      None of the Remaining Experts has any qualifications to offer these opinions, or otherwise

6 to testify about ████████████████.  These opinions are not medical, scientific, historical, or

7 about tobacco policy.  And they are not based on any analysis, much less the application of the

8 skills and expertise of a doctor, psychologist, engineer, tobacco-policy consultant, or historian.

9 Whatever qualifications the Remaining Experts may have in medicine, engineering, policy, or

10 history does not provide any basis (in knowledge, skill, experience, training, or education) to offer

11 expert opinions on matters of corporate control and the propriety of board actions.

12      Thomas E. Eissenberg, Bonnie Halpern-Felsher, Anthony R. Pratkanis, and Judith J.

13 Prochaska are psychologists and psychology professors.  Neil E. Grunberg is an experimental

14 social psychologist and professor.  Kurt M. Ribisl is a community psychologist, tobacco

15 researcher, and professor.  Robert K. Jackler is a head and neck surgeon, professor, and a self-

16 described "tobacco industry marketing" researcher.  Jackler Report (Ex. X) at 8.  Sharon Levy and

17 Jonathan P. Winickoff are pediatricians.  Alan L. Shihadeh is a mechanical engineer.  Eric N.

18 Lindblom is a consultant who focuses on legal and policy issues that concern tobacco.  And

19 Robert N. Proctor purports to be a tobacco-industry historian.  Consistent with Rule 702, they

20 cannot testify beyond their areas of expertise.  *Planned Parenthood*, 402 F. Supp. 3d at 720–21;

21 *Daubert II*, 43 F.3d at 1315.

22      To the extent that their opinions concerning the Non-Management Directors belong to any

23 field – and they are really just factual and legal assertions masquerading as opinions – they belong

24 to the field of corporate governance.  *See* Macey, *Corporate Governance* at 2, 51; *NVIDIA Corp.*,

25

26     [6] *E.g.*, Eissenberg Report (Ex. N) at 115-18; Grunberg Report (Ex. O) ¶¶ 68-72; Halpern-
Felsher Report (Ex. P) at PDF 286; Jackler Report at 22-23, 370, 416, 418-19; Levy Report
27 (Ex. Q) at 46-49; Lindblom Report (Ex. R) at 7, 26 n.68; Pratkanis Report (Ex. S) at 111;
Prochaska Report (Ex. T) at 6, 90-91; Proctor Report (Ex. U) at 46, 55-56; Ribisl Report (Ex. V)
28 at 77; Winickoff Report (Ex. W) at 145, 147-54, 190-91, 217, 220-21.



2008 WL 5382544, at *1.  But none of the Remaining Experts has any expertise in corporate governance.  *Cf. In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (describing a professor of corporate law with numerous publications in the field of corporate governance and securities regulation as "a corporate governance expert").

These experts are unqualified to offer any opinions about ████████████████████████ ████████████████████████, as they do not possess the only potentially relevant expertise.

**B.    The Remaining Experts Improperly Offer Opinions on Ultimate Questions of Law and Fact, Serving as Human Highlighters for Plaintiffs.**

The Remaining Experts violate several aspects of *Daubert*'s helpfulness requirement.  To start, they seek to offer opinions about ████████████████████████████████████ ███████████████████████████████████████████████.[8]  And they opine

---

[7] For additional information about these experts' qualifications, see Eissenberg Report at 4-5; Grunberg Report ¶¶ 1-2, 4-17; Halpern-Felsher CV; Jackler Report Exhibit A (CV); Lindblom Report Exhibit A (CV); Levy Report Appendix A (CV); Pratkanis Report at 1; Prochaska Report at 1-2 & Appendix C (CV); Proctor Report Appendix I (CV); Ribisl August 2021 CV; Shihadeh Report (Ex. EE) at 2-4; Shihadeh CV 2021; Winickoff Report at 2-10.

[8] *E.g.*, Halpern-Felsher Report at 289-90 ████████████████████████████ ███████████████████████████████████████████████; *id.* at 283; Halpern-Felsher Tr. (Ex. FF) 138:5-17, 144:21-146:17; Eissenberg Report at 118; Grunberg Report ¶¶ 68-72; Levy Report at 8, 46, 48; Prochaska Report at 6, 90-91; Proctor Tr. 75:7-23; Proctor Report at 46; Ribisl Report at 5, 77-78, 102; Shihadeh

1  on ███████████████████████████████████████████

2  ████████████████████  Only the jury can draw these conclusions; certainly not a

3  doctor, psychologist, engineer, tobacco-policy consultant, or historian.  *See Therasense*, 2008 WL

4  2037732, at *4; *Rezulin*, 309 F. Supp. 2d at 546–47.

5      The Remaining Experts also repeatedly find facts and make credibility determinations

6  about the evidence and the record testimony.[10]  For example, even though numerous witnesses

7  testified that ████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████  *See, e.g.*, Halpern-Felsher Report at

10  PDF 283-90 ████████████████████████████████████

11  ████████.  But the jury, and not Plaintiffs' hired experts, gets to weigh the credibility of

12  witness testimony, balance the evidence, and draw factual conclusions.  *Binder*, 769 F.2d at 602;

13  *Candoli*, 870 F.2d at 506.  Experts cannot "simply rehash[] otherwise admissible evidence about

14  which [they have] no personal knowledge."  *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL

15  757575, at *27 (N.D. Cal. Feb. 20, 2015) (Orrick, J.) (citation and quotation marks omitted).

16      Moreover, the Remaining Experts offer legal conclusions that masquerade as opinions –

17  for instance, that ████████████████████████████████████

18  _____

19  Report at 50-51; Winickoff Report at 155, 217.

20      [9] *E.g.*, Proctor Report at 48 ██████████████████████████████████

21  ██████████████████████████████████████████  Prochaska Report

22  at 6, 90 ████████████████████████████████████  *see id.*

23  at 92; Ribisl Report at 77; Shihadeh Report at 51.

24      [10] *E.g.*, Prochaska Tr. (10/29/21) (Ex. GG) at 449:17-23 ████████████████

25      [11] ████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28      [12] Shihadeh Report at 51 ██████████████████████████████

1 ████████████████████████████████████████████████████

2 These opinions are unhelpful because they invade the province of the court and the jury. *BP*

3 *Prods. N. Am., Inc. v. Grand Petroleum, Inc.*, 2021 WL 4482138, slip op. at 1 (N.D. Cal. Sept. 30,

4 2021). Questions of reasonableness, the appropriate standard of care, and other legal terms of art

5 are not the proper subject of expert testimony. *See Galindo v. Tassio*, 2014 WL 12693525, at *4

6 (N.D. Cal. June 19, 2014) (describing an expert's testimony regarding "reasonableness" as "a legal

7 conclusion that risks usurping the jury's role"); *SEC v. Leslie*, 2010 WL 2991038, at *9 (N.D. Cal.

8 July 29, 2010) (excluding expert's opinion because "it is for the jury to determine whether

9 Defendants' statements in fact were misleading"); *Datatreasury Corp. v. Wells Fargo & Co.*, 2010

10 WL 3768105, at *5 (E.D. Tex. Sept. 13, 2010) (describing whether defendants' exercised

11 "control" over companies as an "ultimate legal conclusion[]"); *United States v. Avila*, 557 F.3d

12 809, 821 (7th Cir. 2009) (noting that "testimony about whether [the defendant] was involved in a

13 'conspiracy' or the like" implies an improper legal conclusion). These opinions should all be

14 excluded.

15     Each of the Remaining Experts also fails to employ any expertise or methodology in

16 formulating opinions. The experts testified that ████████████████████████████

17

18

---

19 Eissenberg Report at 115; Halpern-Felsher Report at 289-90; Jackler Report at 421; Pratkanis
20 Report at 108; Prochaska Report at 6, 91; Ribisl Report at 5, 102; Winickoff Report at 217.

21    [13] *E.g.*, Proctor Report at 55 ████████████████████████████████

22 ████████████████████████ *see id.* at 46.

23    [14] *E.g.*, Eissenberg Report at 115 █████████████████████████

24 ████ *id.* at 115-18; Grunberg Report ¶¶ 68-72; Jackler Report at 416, 421; Lindblom Report at 7, 26 n.68; Pratkanis Report at 111; Prochaska Report at 6, 90-91; Proctor Report at 55; Ribisl Report at 77; Winickoff Report at 145, 153-54.

25    [15] *E.g.*, Winickoff Report at 217-21 ██████████████████████████
26 ████████████████████████ *id.* at 155; Jackler Report at 421; Shihadeh Report at 51.

27    [16] *E.g.*, Prochaska Report at 91 ███████████████████████████████
28 ████████████████████████ *id.* at 6, 90; Pratkanis Report at 111; Winickoff Report at 220.



*See*

*Hutchinson v. Hamlet*, 2006 WL 1439784, at *2 (N.D. Cal. May 23, 2006) (excluding expert opinion in part because the expert "failed to record his data, so it cannot be reviewed or tested"). Some experts did note, however, that ██████████████████████████████████████████████████████████████████[20]  This resulted in remarkable gaps in their knowledge of the case; ██████████████████████████████████████████████████████████████████ Grunberg Tr. 193:9-194:1.  As these examples underscore, being spoon fed selective documents by Plaintiffs' counsel is not a scientifically valid or accepted methodology.[22]  *See also U.S. ex rel. Suter v. Nat'l*

---

[17] *See* Eissenberg Tr. 25:2-5; Grunberg Tr. 191:20-192:12, 384:13-23; Halpern-Felsher Tr. 27:15-28:9, 39:6-40:11; Jackler Report at 11 n.2; Levy Tr. 48:4-12, 77:5-12, 79:4-6; Lindblom Tr. (Ex. JJ) 24:1-15; Pratkanis Tr. (11/8/21) (Ex. KK) at 24:3-7; Pratkanis Tr. (7/15/21) (Ex. LL) at 14:14-16:6, 29:20-25; Ribisl Tr. (Ex. MM) 39: 13-50:10; Winickoff Tr. 274:25-275:2.

[18] *E.g.*, Winickoff Tr. 274:25-275:2 ███████████████████████████████████  Halpern-Felsher Tr. 31: 6-7; Prochaska Tr. 445:17-21; Proctor Tr. 33:7-10; Shihadeh Tr. 333:13-18; *see also* Ribisl Tr. 51:22-52:4 ████████████████████████████████████  *But see* Levy Tr. 48:4-12, 77:5-12, 79:4-6 ████████████████████████████████████████  Grunberg Tr. 385:3-15; Lindblom Tr. 26:10-24

[19] *E.g.*, Halpern-Felsher Tr. 31:12-32:24; Proctor Tr. 33:11-14; *see* Grunberg Tr. 386:25-387:24 ████████████████████████████████████

[20] *E.g.*, Proctor Tr. 34:9-15 ████████████████████████████████████████  Halpern-Felsher Tr. 40:2-5; Levy Tr. 48:4-12, 77:5-12, 79:4-6; Ribisl Tr. 42:15-21, 44:11-21, 94:17-95:4.

[21] Ribisl Tr. 92:12-93:6; *see id.* 94:17-95:4.

[22] It is also unreliable.  Even nonscientific experts must apply reliable methods and principles to the facts of the case that they can explain to the court.  *AI-Daiwa, Ltd. v. Apparent, Inc.*, 2015 WL 5304111, at *1 (N.D. Cal. Sept. 9, 2015).  And experts must be able to explain their methods – they cannot rest on their "general qualifications" in the subject matter (if any).  *United States v. Hermanek*, 289 F.3d 1076, 1093–94 (9th Cir. 2002).  Plaintiffs' experts admitted that ████████████████████████████████████

1  *Rehab Partners Inc.*, 2009 WL 3151099, at *4 (D. Idaho Sept. 24, 2009) ("[I]f counsel improperly

2  provides an expert with a biased subset of documents[,] that may so skew her opinion that it

3  becomes inadmissible under Rule 702.") (collecting cases).  The jury can and should determine on

4  its own what the documents and testimony in this case show.

5     **C.**  **The Remaining Experts Provide Confusing and Prejudicial Testimony That**
        **Attempts to Make This Case about** ███████████ **and** ███████████

6  ███████████████████████████████████

7     Some of the Remaining Experts ██████████████████████████ through

8  factually inaccurate allegations ████████████████████████████████

9  ███████████  Proctor Report at 48, 55.  Needless to say, name calling and moralizing are not the

10  proper function of expert testimony.  As one court explained, "expert opinion as to the

11  [defendants'] ethical character of their actions simply is not relevant to these lawsuits." *Rezulin*,

12  309 F. Supp. 2d at 544; *see Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th

13  Cir. 2014) ("[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702.")

14  (citing *Daubert II*, 43 F.3d at 1319).

15     Halpern-Felsher engages in ████████████████████████

16  ███████████████████████████████████:

17  • ██████████████████████████████

18  ███████████████████████████████

19  ███████████████████████████████

20  ███████████

21

22

23

24  ███████████████  Eissenberg Tr. 27:5-28:18; *see also id.* 29:21-30:1

25  ████████████████████████████████████████████

26  ███████████████████  Jackler Tr. (Ex. NN) 73:23-74:18.  *Compare*

27  *with GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *6 (N.D. Cal.

28  Apr. 16, 2014) ("Apple cannot cross-examine [this expert] on his assertions, all of which
    fundamentally reduce to taking his opinion based on 30 years of experience for granted.").

- ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ *cf. Rovid v. Graco Children's Prods., Inc.*, 2018 WL 5906075, at *8 (N.D.

Cal. Nov. 9, 2018) (explaining that expert testimony must "'fit' the facts of the case"

(quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993))).

The Court should exclude Halpern-Felsher's prejudicial and confusing attempts to ██████████

████████████████████████████████  *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426,

1430 (9th Cir. 1991) ("Rule 403 permits the court to exclude evidence if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, [and]

misleading the jury . . . ." (citing Fed. R. Evid. 403)).

The Court should also exclude Proctor's testimony, which far exceeds the bounds of

proper expert opinion and is slanderous.  Proctor offers numerous subjective opinions about ████

████████████████████████████████████ that risk prejudicing the jury against them and

have no probative value.  None of these opinions is the product of expertise.  None will be useful

to the jury.  Indeed, Proctor's "opinions" are nothing more than playground name-calling dressed

up with a history Ph.D.  This Court should not allow it.  *See In re: Engle Progeny Cases Tobacco*

*Litig.*, 2008 WL 8910991 (Fla. Cir. Ct. Dec. 4, 2008) (declaring mistrial because Proctor implied

that defendants were racists, including by using a racial epithet in open court); *GST Telecomms.,*

*Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) ("[T]he Court should not shift to [expert]

witnesses the responsibility to give conclusory opinions and characterizations of the business

conduct portrayed.").

For instance, Proctor's ██████████████████████████████████████████ has no

place in the courtroom:

- ████████████████████████████████████████████████

████████████████████████████████████ Proctor Report at 55.

1      •   ████████████████████████████████████████

2      ████████████████████████████████████████████████

3     *Id.* at 48, 55.  This is probative of nothing.

4      •   ████████████████████████████████████████

5     ██████████████████████████ *Id.* at 55; *see also Drake v. R.J. Reynolds Tobacco*

6     *Co.*, 2015 WL 12746105, at *1 (S.D. Fla. Jan. 29, 2015) ("[A]t no point may Proctor

7     testify that Defendants are engaged in an ongoing 'conspiracy.'").

8     In any event, Proctor's ███████████████████████████

9     ████████████████████ *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019

10     WL 2716512, at *11 (N.D. Cal. June 28, 2019) (excluding expert testimony that contained

11     "blatantly pejorative" language such as "'invention plagiarists'"); *Belisle v. BNSF Ry. Co.*, 2010

12     WL 1424344, at *10–11 (D. Kan. Apr. 5, 2010) (excluding an expert's "pejorative" and

13     "unnecessarily dramatic" statements as "prejudicial").

14         Finally, Proctor's ███████████████████████████

15     ████████████████████████████████████████████

16     █████████████████████████████████████████████████

17     ██████████████████████████ Proctor Report at 49, 54-55, 56, 65; *see Pease v.*

18     *Lycoming Engines*, 2012 WL 162551, at *6 (M.D. Pa. Jan. 19, 2012) (stating, in a products

19     liability action, that "[i]n general, it is prejudicial error to allow into evidence the wealth of a

20     litigant 'except where position or wealth is necessarily involved in determining the damages

21     sustained.'") (citation omitted).  The Court must exclude Proctor's opinions ████████████

22     ███████████████████ as well.

23                    **CONCLUSION**

24         For the above reasons, this Court should exclude Plaintiffs' proposed expert testimony

25     regarding the Non-Management Directors.

26

27

28

DATED:  December 23, 2021

Respectfully submitted,

By:   /s/ Michael J. Guzman

Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
*Attorneys for Defendants Huh, Pritzker,
and Valani*
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com