UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 19-md-02913-WHO<br><br>**ORDER ON OTHER DIRECTOR DEFENDANTS' SECOND MOTION TO DISMISS PERSONAL INJURY BELLWETHER COMPLAINTS**<br><br>Re: Dkt. No. 2144 |

In response to a motion to dismiss filed by defendants Valani, Pritzker, and Huh (the "Other Director Defendants" or "ODDs"), in my July 22, 2021 Order I dismissed with leave to amend the product-liability-type claims of four personal injury bellwether plaintiffs: Fairess (Louisiana), Westfaul (Mississippi), G.F. (Connecticut), and Bain (Tennessee) (collectively PI BW plaintiffs). July Order, Dkt. No. 2144. In doing so, I agreed with defendants that under each of those state's unified product liability acts (LPLA[1], MLPA[2], CPLA[3], and TPLA[4]) "some" of the "product-type" claims in each plaintiff's complaint were preempted. *Id*. at 11-16. Because it was unclear whether other claims not covered by the unified statutes could possibly be alleged against the ODDs in their *capacity* as members of the board of directors of JLI, I gave plaintiffs leave to amend. *Id*. at 16.

Those four PI BW plaintiffs filed amended complaints. The ODDs again move to dismiss

---

[1] Louisiana Products Liability Act ("LPLA", La. Stat. Ann. § 9:2800.54).

[2] Mississippi Products Liability Act ("MPLA", Miss. Code. Ann. § 11-1-63).

[3] Connecticut Products Liability Act ("CPLA", Conn. Gen. Stat. § 52-572n).

[4] Tennessee Products Liability Act (TPLA, Tenn. Code § 29-28-102).

in whole or in part the claims asserted against them, arguing:

- Fairess cannot state her fraud claim under Louisiana law and cannot state a failure to warn claim under the LPLA against the ODDs;
- Westfaul does not state a claim against the ODDs under the MPLA;
- Bain does not state a claim against the ODDs under the TPLA;[5] and
- G.F. cannot state his fraud claim against the ODDs under the CPLA.

The motion was argued on December 6, 2021.

## I.  FAIRESS/LPLA

The ODDs assert that while Fairess's claim for negligent failure to warn is covered by and cognizable under the LPLA – the exclusive remedy for product liability suits under Louisiana law[6] –the ODDs are not appropriate defendants under the LPLA (manufacturers or certain sellers) because, as recognized in the July Order, they acted only through the manufacturer, JLI. July Order at 12.[7]

In response, plaintiffs misinterpret the July Order to argue that I concluded that the ODDs are "manufacturers" covered by the LPLA and, therefore, this claim can be asserted independently against the ODDs as well as against JLI. *See* July Order at 10; Pl. Oppo. [Dkt. No. 3495] at 11-12. In the July Order, I found that the ODDs were functionally acting through JLI as the manufacturer for purposes of the product-type claims asserted under the unified Louisiana product liability

---

[5] On December 29, 2021, plaintiff Bain and the individual defendants including the ODDs (James Monsees, Adam Bowen, Hoyoung Huh, Nicholas Pritzker, and Riaz Valani) stipulated to their dismissal from Bain's case (Case No. 20-cv-07174-WHO). Dkt. Nos. 2721, 2728. Therefore, the arguments as to Bain are moot and will not be addressed further.

[6] *Demahy v. Schwarz Pharma, Inc*., 702 F.3d 177, 182 (5th Cir. 2012) ("The Louisiana Products Liability Act ('LPLA') provides that it is the exclusive remedy for products liability suits, stating that '[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.' La.Rev.Stat. Ann. § 9:2800.52.").

[7] *See also Cooper v. Wyeth, Inc*., 09-CV-929, 2010 WL 4318816, at *2 (M.D. La. Oct. 26, 2010 (explaining, "suits for injuries stemming from the use of a product are ultimately products liability suits and are governed by the LPLA," regardless of who the defendants are, and "[u]nder the LPLA, a plaintiff may not recover unless he can establish that the defendant manufactured the product in question . . . .  Moreover, a plaintiff may not recover on the basis of any theory not set forth in the LPLA.") (internal citations omitted).

2

statute given both the nature of the product-liability claims Fairess was alleging and in light of their roles as directors of JLI. I did not hold that they could be held *independently* liable under the LPLA as "manufacturers" along with JLI. Separately addressing Altria's motion to dismiss, I noted that Altria was in a functionally different position than the ODDs or JLI; as a separate corporation alleged to have taken acts distinct from JLI, it could potentially be liable for claims for acts it took as a distributor or non-manufacturer seller. July Order at 34.

The LPLA created a unified cause of action for product liability claims. The ODDs acted – with respect to the product – only through the product manufacturer (JLI) and not in a way that was distinct from JLI.[8] Plaintiffs cite no caselaw or other authority to support their theory that a product-type failure to warn claim that is covered by the LPLA and seeks to recover for personal injuries can be asserted against the ODDs.

The ODDs also move to dismiss Fairess's claims for fraud and conspiracy to commit fraud, asserting that the fraud claims likewise fall within the scope of the LPLA because they arise only from the alleged personal injuries Fairess sustained from JLI's product and the ODDs are not proper defendants for those claims separate from JLI. The ODDs also contend that both fraud claims must be dismissed because the LPLA does not recognize fraud claims[9] and Louisiana law does not recognize stand-alone conspiracy to commit fraud claim. Plaintiffs make the same arguments as described above: either the ODDs are "covered" as "manufacturers" under LPLA

---

[8] *See, e.g., Matthews v. Wal-Mart Stores, Inc.*, 708 So. 2d 1248, 1249 (Ct. App. La. 4th Cir . 1989) ("The legislature in adopting the LPLA provided remedies to purchasers of defective products only under certain conditions," and while sympathetic, the court could not extend product liability claims to a seller who did not purport to be the manufacturer or possess the requisite control over a product's design, construction, or quality). The LPLA cases that plaintiffs relied on in their prior opposition to ODDs' initial motion to dismiss, finding that "non-manufacturer sellers" could be liable for negligent failure to warn claims for knowingly selling a defective product, are inapposite because none of the ODDs are alleged to be "non-manufacturer sellers" nor are there any plausible facts to suggest that they could be. *See, e.g., Whitener v. Pliva, Inc.*, CIV. A. 10-1552, 2010 WL 3021866, at *2 (E.D. La. July 29, 2010) ("Under Louisiana law, a non-manufacturing seller is liable for damages caused by a product he sold 'if he knew or should have known that the product sold was defective, and failed to declare it.'") (citation omitted).

[9] *See, e.g.*, *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997 (given "the exclusivity of the LPLA [] plaintiff's allegations of negligence, fraud by misrepresentation, [] and civil conspiracy fail to state a claim against the lead paint pigment manufacturers under the LPLA and must therefore be dismissed.").

3

1  and Fairess can pursue fraud-based theories against the ODDs under the LPLA or the ODDs fall
2  outside the coverage of the LPLA because they are not manufacturers under the statute and the
3  fraud claims survive.  But again, plaintiffs fail to identify any caselaw or statutory support in
4  Louisiana law for allowing fraud claims seeking recovery for personal injuries from use of
5  products to proceed against defendants who were similarly situated to the ODDs with respect to
6  the product manufacturer.
7        The motion to dismiss as to Fairess is GRANTED.

## II.    WESTFAUL/MPLA

9        In her amended complaint, Westfaul alleges a claim for negligence under the MPLA and
10 claims for fraud, fraudulent concealment, and conspiracy to commit fraud against the ODDs.  The
11 ODDs contend that all of the claims are covered by the MLPA (as based solely on plaintiff's
12 alleged injuries stemming from product use) and cannot be separately asserted against the ODDs
13 as a result of the acts they took through the manufacturer JLI.  They also move to dismiss the three
14 fraud claims, arguing that they are not available under MLPA, and move to dismiss the negligence
15 claim as inadequately pleaded.
16       In the July 2021 Order, I concluded that Westfaul's product-injury claims asserted against
17 the ODDs (like those of Fairess under the LPLA) arose out of conduct the ODDs took in
18 connection with and through JLI as the manufacturer.  July Order at 12-13.  I let Westfaul's claims
19 against Altria proceed because Altria was acting outside of JLI (providing distribution, regulatory,
20 and retail services) and it was unclear how that role "lined up" under Mississippi law in terms of
21 allowing claims for injuries related to product use to be asserted against defendants who conducted
22 those types of services for manufacturers.  *Id*. at 34.
23       The essential problem for plaintiffs is that they cite no authority under Mississippi law that
24 would allow them to separately sue the ODDs in addition to JLI (the manufacturer) when all of the
25 conduct alleged against the ODDs that resulted in personal injuries related to product use was
26 taken through JLI.  Simply because I concluded the ODDs were functionally aligned with the
27 manufacturer (JLI) does not mean that they could be separately sued for their conduct under the
28 MPLA.  It did not give plaintiffs a route to assert claims against the ODDs outside the MPLA

4

either, when the ODDs were acting through the manufacturer.

Because the fraud and negligence claims asserted against the ODDs here are clearly related to the alleged product defects, the MLPA controls. *See Elliott v. El Paso Corp.*, 181 So. 3d 263, 269 (Miss. 2015) ("If the plaintiffs in this case had alleged negligence claims against the manufacturer and seller *that were unrelated to the odorant's alleged defects*—for instance, fraud, misrepresentation, or breach of the implied warranty of merchantability—then the MPLA would not have applied, and common-law principles would have controlled. But all of Plaintiffs' negligence or strict-liability claims are based on the damages purportedly caused by alleged defects in the odorant, so we must analyze those claims under the MPLA." (emphasis added)); *Blouin v. Johnson & Johnson*, 2017 WL 4969345, at *1 (S.D. Miss. Nov. 1, 2017) ("The MPLA governs 'any action for damages caused by a product, including but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty....' MISS. CODE ANN. § 11-1-63; *see also Elliott v. El Paso Corp.*, 181 So.3d 263, 268 (Miss. 2015). Accordingly, the federal courts in this state have held that the MPLA subsumes claims of . . . fraud . . ."). Plaintiffs cite no cases or authority under Mississippi law that fraud-claims or negligence claims based on product defects are actionable against members of the board of directors of the manufacturer.[10]

The motion to dismiss as to Westfaul is GRANTED.

---

[10] The only negligence case plaintiffs cited in their prior opposition was *Lawson v. Honeywell Intern., Inc.*, 75 So. 3d 1024, 1030 (Miss. 2011). There, the court held that the "MPLA does not preclude common-law negligence claims against nonmanufacturing designers who do not fall under the purview of the statute." That holding is not helpful here because in *Lawson* the entity that designed the defect seatbelt sold the rights to the product to the manufacturer. *Id.* at 1026. The decision addressed entities who played different roles in bringing the product to the market. As plaintiffs themselves note, in 2014 the MPLA was amended to bring designers within its express scope. Oppo. at 10. Plaintiffs have not alleged that the ODDs played any different role outside JLI. With respect to the fraud claims, plaintiffs again rely on *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 272 (Miss. 2005), as *modified on denial of reh'g* (Mar. 2, 2006). But that case not only preceded *Elliott v. El Paso Corp.* (as well as numerous district court decisions following *Elliott* and dismissing fraud claims that were "related" to a product's alleged defects), but also considered a case where no products liability claims remained (unlike here) and considered only an affirmative defense under the MLPA not what or how claims should be alleged. *Id.*

5

### III. G.F./CPLA

The ODDs move to dismiss G.F.'s fraud claim and conspiracy to commit fraud claim as inadequately pleaded. Both sides agree that the fraud claims arise under the CPLA because they are product liability-type claims. But the ODDs argue that G.F. has not properly pleaded them under one combined CPLA count, as required under Connecticut law, and instead pleads them separately under their own heading. ODD MTD at 12-13.

Plaintiffs respond that they pleaded the CPLA fraud claims against the ODDs the way they did for clarity, to avoid confusion with the separate, non-CPLA claims G.F. asserts against Altria. Plaintiffs assert that the hyper technical form of pleading the ODDs seek is not required in federal court. Oppo. at 10-11.

At this juncture, the parties know what G.F. is alleging and the legal bases for the claims. Further amendment would accomplish nothing. Accordingly, I deem the fraud claims alleged as arising under the umbrella of the CPLA and find them adequately pleaded.

**IT IS SO ORDERED.**

Dated: January 6, 2022



William H. Orrick
United States District Judge