1
2
3
4
5
6
7

[*Submitting Counsel on Signature Page*]

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11
12
13

IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

Case No. 19-md-02913-WHO

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA**

14

This Document Relates to:

15

ALL ACTIONS

16
17

Pursuant to Civil Local Rule 16-10(d) and the Court's December 6, 2021 Minute Order

18

(ECF No. 2611), counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-

19

Liquid Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively

20

21
22

[1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs' Consolidated Class Action Complaint and Consolidated Master Complaint (collectively, "Complaints"), *see* ECF Nos. 387, 388.

23

[2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

24
25

[3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and Eliquitech, Inc.

26

[4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-Eleven, Inc., Walmart, and Walgreen Co.

27
28

[5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holding Company, Inc.

"Defendants"), and Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as the "Parties") respectfully provide this Joint Case Management Statement in advance of the Further Case Management Conference scheduled for January 21, 2022.

## I.      PARTICIPANT INFORMATION

The January 21, 2022 CMC will proceed by Zoom.  Anyone who wishes to attend the conference virtually must log in using the information available at:

https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

## II.     ISSUES TO BE DISCUSSED BELOW AND PROPOSED AGENDA

1.  Status of Case Filings and Dismissals

2.  Case Management Matters

3.  Discovery Status

4.  ADR Status

## III.    STATUS OF CASE FILINGS AND DISMISSALS

As of January 19, 2022, approximately 3,142[6] cases are pending in this MDL, naming 109 defendants.  A list of these defendants is attached as **Exhibit A**.  To date, 2,562 personal injury cases and 522 government entity cases (including 473 school districts, 21 counties, 2 cities, and 26 tribes) have been filed in this MDL.  662 MDL plaintiffs have voluntarily dismissed their cases (635 personal injury plaintiffs, 25 class plaintiffs, and 2 school districts); 270 cases have been dismissed without prejudice pursuant to CMO No. 8; and 37 other cases are subject to pending motions to dismiss without prejudice that have not yet been ruled upon.  Furthermore, 180 case dismissals without prejudice have been converted to dismissals with prejudice pursuant to CMO No. 8.

There are 623 complaints pending in JCCP 5052, which is assigned to Judge David S. Cunningham of the Los Angeles Superior Court as the Coordination Trial Judge.  There are 83 government entity cases, including 78 school districts, and 535 personal injury cases brought on

---

[6] The numbers in this Statement reflect the Parties' good faith estimates based on reasonably available information.  The Parties will continue to work together to align their data and resolve any inconsistencies.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1   behalf of over 3,400 individual personal injury plaintiffs.  There are 26 defendants named in those

2   JCCP cases.

3          The Parties are also aware of 14 pending cases filed by State Attorneys General

4   specifically: California, Illinois, Hawai'i, New York, Louisiana, Mississippi, Minnesota,

5   Washington D.C., Pennsylvania, New Mexico, Massachusetts, Colorado, Alaska and Washington.

6   Plaintiffs' Liaison Counsel continue their outreach to various State Attorneys General to discuss

7   cooperation with this MDL.

8          An update on matters of significance (including hearings, schedules, deadlines,

9   depositions, substantive orders, and trial dates) in Related Actions as defined by the Joint

10  Coordination Order (CMO 9, ECF No. 572 at 1, 3), is attached hereto as **Exhibit B**.

11  **IV.    CASE MANAGEMENT MATTERS**

12         **A.    Trial Length**

13         Pursuant to the Court's December 6, 2021 Minute Order, the Parties submitted letter briefs

14  outlining their respective positions on trial length on January 14, 2022.

15         **B.    Pretrial Mechanics for April 2022 Trial**

16                **1.    Pretrial Exchanges**

17  Plaintiffs' Position:

18         Plaintiffs' efforts to make collaborative progress on the preparation of certain basic

19  pretrial materials and party agreements continue.  In April of 2021, Plaintiffs first requested that

20  Defendants identify which witnesses they anticipate will appear live, to avoid the need to serve

21  trial subpoenas.  Plaintiffs have reiterated this request since then and on December 17, 2021 sent

22  Defendants a list of 18 witnesses that were either (1) outside the subpoena power and asked

23  whether they would be made available live in Plaintiffs' case in chief; or (2) witnesses within the

24  subpoena power and asked whether the parties could agree to play their depositions in lieu of live

25  testimony.  Most recently, following a January 12 discussion, Defendants indicated that they

26  would provide this information by January 18 but did not. Plaintiffs look forward to receiving this

27

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1    information as soon as possible so they can better plan their order of proof, including the division

2    of time between direct and cross exams (or video designations as appropriate).

3         Likewise, in an effort to streamline the pretrial process to address the precise concerns

4    Defendants have raised below, Plaintiffs have sought an agreement—since October of 2021—to

5    stagger the parties' exchange of pretrial material.  After many of the initial exchange dates

6    Plaintiffs proposed had already passed, Defendants indicated they would relay new, proposed

7    dates—by January 18—for the exchange of material between January 21, 2022 and February 4,

8    2021 (the date all exchanges are mandated by the Court's standing order).  Again, Defendants did

9    not do so. Plaintiffs look forward to receiving this information as soon as possible and look

10   forward to continuing discussions with Defendants and the Court to address a process for

11   handling the exhibit list to avoid wasting time and energy. In particular, Plaintiffs are prepared to

12   work with Defendants to provide notice of categories of documents (such as materials cited in an

13   expert's report) that Plaintiffs may use at trial in our initial exchange, but focus on building a list

14   of 250 or so documents that would comprise the most likely to use list for purposes of

15   meaningfully addressing objections.  Plaintiffs appreciation Defendants' willingness to agree that

16   documents may be added to such a list without prejudice, so as to avoid any risk of waiver or bar

17   to using otherwise admissible exhibits because they were not included in a pretrial exchange or

18   initial list.

19        Per Defendants' requests, Plaintiffs narrowed the list of experts and opinions that may be

20   offered in the B.B. case. As the parties discussed with the Court at the last CMC, it was ultimately

21   more efficient to proceed with briefing on experts that may be called in any of the PI bellwethers

22   so as to avoid rolling *Daubert* briefs and resolve global issues at once.

23        Defendants have voiced many concerns over the scope of the project before us, but to date

24   have offered no solutions other than sending a letter on Friday evening, January 7, 2022, to

25   demand that the parties submit their letter briefs on trial length for the B.B. case only on Monday,

26   January 10, 2022.  Yet Defendants had previously ignored Plaintiffs' requests for a meet and

27

28
                                    4                          JOINT CASE MANAGEMENT
                                                               CONFERENCE STATEMENT

1   confer on trial lengths and refused to engage at all on the length of trials for the remaining

2   bellwether cases per the Court's order.

3        Additionally, Plaintiffs transmitted a proposed draft Jury Questionnaire to Defendants on

4   November 2, 2021.   Defendants have not responded.

5   Defendants' Position:

6        All parties have been exerting themselves to the utmost to agree on a process for reducing

7   the truly vast record in this case to a meaningful Pretrial submission on February 14, 2022, per the

8   Court's order.[7]  The challenge is particularly acute because the dimensions of the B.B. trial are

9   inchoate along many dimensions.  The parties are wide apart on the duration of the trial and look

10  forward to the Court's resolution of that issue.  As the Court is already well-aware, the parties

11  also have very different views of what factual matters should be relevant and necessary to the

12  trial.  The upcoming motions in limine will begin the process of narrowing those differences, but

13  those motions are on a parallel track with preparation of the Pretrial submissions.

14       In the meantime, Defendants are still working with a list of 24 Plaintiffs' experts and list

15  of at least 18 fact witnesses that Plaintiffs have inquired about, which we understand are not the

16  universe of fact witnesses whose testimony Plaintiffs may seek at trial, either live or by

17  deposition.  With respect to Plaintiffs' December 17, 2021 email, Defendants responded during

18  the parties' January 12, 2022 meet and confer with Plaintiffs, that they have a different view with

19  respect to the issues.  Defendants notified Plaintiffs that they would respond further today to that

20  email and Plaintiffs' proposed interim trial deadlines.  No less than 60 fact depositions have been

21  taken of liability witnesses.  Just the deposition exhibits run in the thousands, and there are

22  hundreds if not thousands of documents that experts for both sides have relied upon.

23       Under these circumstances, long experience in mass tort trials tells us that exhibit and

24  witnesses lists are created which preserve rights and maximize optionality.  The results are vast.

25

26

27  _____

[7] Defendants do not agree with Plaintiffs' characterizations, but do not believe it is productive to
28  engage in discussion on these points in this Statement.

All objections are preserved by formula.  The lists are frankly more burdensome than they are helpful.

Defendants believe the only way to make progress on reaching a meaningful set of pretrial materials is to have the trial length decided, after which the parties can make decisions on pretrial materials based on the Court's guidance.  As the Court is aware, the parties' trial length proposals are 40 hours total for Defendants and 80 hours total for Plaintiffs, a difference that is significant in terms of the case presentation. On January 7, 2022, Defendants asked Plaintiffs to proceed earlier with trial length briefing in the hope that the Court could provide earlier guidance.  Defendants also asked Plaintiffs to consider other procedures that will streamline trial preparation materials so that the materials would be more bespoke of this trial (e.g., to encourage more realistic trial exhibit lists, the parties could agree on reasonable supplementations after the initial exchange deadlines have passed).  Plaintiffs did not agree to Defendants' proposal or respond on other procedures that could make the pretrial submissions more meaningful.

Defendants look forward to the Court's guidance on trial length, and discussing with Plaintiffs ways to make the pretrial submission process more tailored to the B.B. case.

### 2.    Omnibus *Motions in Limine* Briefing

To streamline upcoming *motions in limine* briefing and provide clarity going forward for future bellwether cases, Plaintiffs propose limiting the parties to two, 25-page, omnibus *motions in limine* briefs—one addressing case specific evidence, the other addressing generic case evidence.  If the Court is so inclined, Plaintiffs will be prepared to discuss this proposal at the conference.

Defendants do not agree that there should be separate *motions in limine* for case specific evidence and generic case evidence.  The *motions in limine* must be decided in the context of the B.B. trial.  Defendants are agreeable, subject to the Court's agreement, to each party having 50 pages total for *motions in limine*.  Defendants further are agreeable to working with Plaintiffs on a procedure whereby the parties meet and confer after the Court's rulings on the B.B. *motions in limine* to determine which may apply to subsequent trials.

1

**C.      Common Benefit Reporting**

2          Plaintiffs will promptly submit a Common Benefit Time and Expense Report for the

3    period of January 1, 2021 through August 31, 2021, and will be prepared to update the Court on

4    the status of the diversity reporting and metrics.

5          **D.      Pretrial Dates for September 2022 Trial**

6          Plaintiffs' Position:

7          Plaintiffs propose the following schedule for both the class and government entity cases

8    (except as otherwise noted) regardless of which case proceeds to trial in September 2022.

9     •      Exchange of Government Entity Bellwether Specific Reports:  January 28

10    •      Exchange of Class Case-Specific Expert Reports: March 14

11    •      Exchange of Government Entity Bellwether Specific Rebuttal Reports: March 31

12    •      Exchange of Class Case-Specific Expert Rebuttal Reports: April 25

13    •      Close of Government Entity and Class Case-Specific Expert Discovery: May 9

14    •      Motions for Summary Judgment and *Daubert* Motions: May 23

15    •      Motions for Summary Judgment and *Daubert* Oppositions: June 20

16    •      Motions for Summary Judgment and *Daubert* Replies: July 11

17    •      Oral Argument regarding Motions for Summary Judgment and *Daubert* Motions:

18          To be set for a date at the Court's convenience.

19          The following dates apply only to the case (class or government entity) scheduled for trial

20    in September 2022.

21    •      Exchange of Civil Local Rule 16-10(b)(7), (8), (9), and (1) Materials: July 18

22    •      Filing of Pretrial Conference Statement, Jury Instructions, Exhibit List and

23          Objections, Deposition Designations and Objections, and Motions *in limine*:

24          Opening July 25, Opposition August 8, Reply August 15.

25    •      Pre-trial Conference: August 29

26          While Defendants suggest that it is premature to set any schedule for the class trial, the

27    motion for class certification is under submission and neither class notice nor any Rule 23(f)

28

7

appeal poses any impediment to proceeding with pretrial proceedings at this time. As to Defendants' stated concerns about tying the class and government entity schedules together, the cases present overlapping legal and factual questions arising from the shared RICO claims and shared defendants, and the interests of efficiency favor resolving those issues on a common basis where possible.

Defendants' Position:

With respect to the Class case, while Defendants understand that the Court asked the parties to begin to confer on a proposed schedule, Defendants' position is that setting a schedule for Class with dates certain is premature until the Court has ruled on Plaintiffs' class certification motion.  Further, if any class is certified, the class notice process will take a period of time and needs to be factored into a class schedule.  Defendants further believe that tying the proposed class schedule to a government entity schedule (to which Defendants have not agreed) is not workable.  The schedule for each case must be evaluated separately based on the realities of each case.  Defendants are amenable to discussing a class schedule with Plaintiffs that is tied to the timing of the Court's order on certification and any request for Rule 23(f) review.

With respect to the government entity pretrial schedule, as set forth in more detail below, Defendants' position is that setting a government entity schedule is premature in light of Plaintiffs' failure to produce requested discovery before the close of fact discovery and the need to resolve the parties' present dispute concerning that issue.

### E. 2023 Trial Dates

The Court offered the following dates for trials in 2023:  January 9, 2023; February 20, 2023; April 17, 2023; and June 12, 2023.  In the December 6, 2021 Minute Order, the Court ordered "Defendants [to] commit to the proposed dates or explain why the proposed dates will not work and propose dates they do commit to in advance of the January 2022 Case Management Conference."  Defendants commit to the April 17, 2023 and June 12, 2023 trial dates.

With respect to the January 9, 2023 and February 20, 2023 trial dates, Defendant JLI states that it currently has the following pretrial conference or trial dates scheduled for first quarter 2023:

- **January 12, 2023**: pretrial conference scheduled in *District of Columbia v. Juul Labs, Inc.*, No. 2019 CA 007795B, Superior Court of D.C.;
- **February 27, 2023**: trial scheduled to begin in *Colorado v. Juul Labs, Inc.*, No. 2020-CV-32283, District Court, City and County of Denver;
- **March 10, 2023**: trial scheduled to begin in *California v. Juul Labs, Inc.*, No. RG19043543; Superior Court of California, County of Alameda.
- **March 20, 2023**: trial scheduled to begin in *Massachusetts v. Juul Labs, Inc.*, No. 2084:CV-0042-BLS2, Superior Court, Commonwealth of Massachusetts;

Based on a recent conference with the Minnesota state court, JLI further expects that the trial date for *State of Minnesota v. Juul Labs, Inc.*, No. 27-CV-19-19888, District Court, State of Minnesota will move to January or February 2023. JLI anticipates that many of the same fact and expert witnesses will be witnesses in the above cases, along with any MDL trials. While JLI appreciates that schedules may change in these cases, JLI respectfully requests that the Court not schedule trial dates in the MDL in January or February 2023, and instead schedule additional trial dates after the June 12, 2023 trial, as the Court's schedule permits. JLI does agree that discovery on the bellwether cases that would be slated for the January and February 2023 trial dates should proceed.

Plaintiffs remain available and prepared to accept each of the Court's proposed 2023 trial dates.

### F.     Video Deposition Excerpts at Trial

Pursuant to the Court's December 6, 2021 Minute Order, the parties submit their "respective positions on whether the Court should follow its normal practice to play all video deposition excerpts for a witness at once, or allow plaintiffs and defendants to instead play their designated video deposition excerpts separately during each sides' case presentation."

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

<u>Plaintiffs' Position</u>

Plaintiffs wish to defer this issue until the parties exchange deposition designations and objections, and counter-designations. Plaintiffs' position is that Defendants' counter-designations should be limited, narrow, and for completeness only under Federal Rule of Evidence 106. Plaintiffs reserve the right to raise any attempt to unduly elongate deposition video with excessive counter-designations.

<u>Defendants' Position</u>

Defendants agree that the Court's normal practice should apply here, with all video deposition excerpts for a witness played at once.  As the Court recognized at the December 6, 2021 CMC, the Court follows this practice "for a variety of reasons, including efficiency," and also "it's one witnesses and getting a full sense of what they think."  12/6/21 Hrg. Tr. at 55:11-17, ECF No. 2624.  Defendants agree that it would be inefficient to play deposition excerpts for one witness at multiple times, and also that presentation of all a witness's testimony at one time is most helpful for the jury, will allow the jury to best understand the full scope of a witness's testimony, and will avoid juror confusion.  There is no reason to deviate from the Court's standard practice in these cases.

**G.      Second Round Personal Injury Bellwether Selection Procedures**

The parties filed a Joint Submission regarding second-round, personal-injury bellwether selection procedures on January 14, 2022.

**H.      Government Entity Cases**

The below sections summarize the parties' positions concerning two issues upon which they have been unable to reach agreement:  (1) the pretrial schedule for SFUSD, primarily as it relates to Defendants' forthcoming motion concerning Plaintiffs' case-specific expert reports and the disclosure therein of new factual evidence and data; and (2) the briefing of Defendants' Daubert motion concerning Plaintiffs' abatement experts.

**1.      Government Entity Case Schedule and Bellwether Specific Expert Reports**

**Defendants' Position:**

The parties have reached an impasse concerning two interrelated issues: (1) the government entity Plaintiffs' intention to use their forthcoming case-specific expert reports to disclose new factual evidence underpinning their alleged damages and requests for abatement that they were required—but failed—to produce during fact discovery, depriving Defendants of an opportunity to examine and conduct further discovery concerning the alleged evidence; and (2) the government entity Plaintiffs' simultaneous request to amend the pretrial schedule for SFUSD in a way that *accelerates* the trial of that case from its scheduled date of November 7, 2022.  As explained further below, Defendants respectfully request that the Court establish a briefing schedule governing Defendants' forthcoming motion concerning the appropriate treatment of the new and untimely factual information the government entity Plaintiffs intend to disclose and submits that no government entity pretrial schedule should be set until the Court has an opportunity to resolve this motion.

## I.      THE GOVERNMENT ENTITY PLAINTIFFS INTEND TO DISCLOSE NEW ABATEMENT EVIDENCE AND FACTUAL DATA VIA CASE-SPECIFIC EXPERT REPORTS.

In late November 2021, the government entity Plaintiffs sought an extension of their deadline for case-specific expert reports and a resetting of the overall pre-trial schedule in advance of a SFUSD trial currently set for November 7, 2022.  Defendants agreed, as a professional courtesy, to the government entity Plaintiffs' requested continuance of their case-specific expert report deadline until after the holidays, and the parties have continued to confer about the remaining pretrial dates and other issues pertinent to the pretrial schedule.  *See* ECF No. 2660.

In particular, JLI raised with the government entity Plaintiffs concerns about (i) their abatement expert's admissions in his November deposition that he lacked the factual record/data to support any abatement opinions concerning SFUSD and his testimony that such material would still be forthcoming, *see* J. Winickoff Dep. 233:23-234:2; 235:21-236:2; 242:11-16; 243:17-18; 251:7-15, excerpts attached as Ex. C; (ii) the fact that fact discovery in this matter has been closed for months and, as discussed in further detail below, JLI sought the production and identification

of such underlying factual data and records during fact discovery; (iii) the government entity

Plaintiffs' attempts to reserve their abatement experts' ability, in their forthcoming case-specific

reports, to rely on factual data concerning SFUSD that was never previously produced or

identified, *see* D. Kawamoto emails with J. Krannich (Dec. 16-17, 2021), attached as Ex. D; and

(iv), the fact that, in the parties' scheduling discussions, the government entity Plaintiffs have not

only sought more time to prepare their case-specific expert reports, they have insisted that the

remainder of the pretrial schedule for SFUSD be structured such that the SFUSD trial might be

*accelerated* into September 2022 if the September 2022 trial dates become available.[8]

Thus, in recent weeks, in connection with the parties' discussions about an appropriate

pretrial schedule for SFUSD, it has become apparent that the government entity Plaintiffs intend

to attempt to use the production of their case-specific expert reports to introduce new factual

evidence underpinning their alleged damages and abatement theory of relief.  Indeed, the

government entity Plaintiffs even admitted in a recent filing before Magistrate Judge Corley that

"data and methodology specific to SFUSD [will] be disclosed in its January bellwether specific

report[s]," notwithstanding the governmental entity Plaintiffs' Rule 26 obligations and JLI's

multiple requests for the disclosure of this information during fact discovery.  Joint Disc. Status

Report, ECF No. 2757 at 10.

This evidence should have been produced months ago during fact discovery because it

was required to be produced in accordance with Rule 26 and, separately and independently, in

accordance with several timely and thorough requests for production that JLI propounded on

Plaintiffs during fact discovery.  Such requests include a timely request for "[a]ll Documents and

Communications Concerning the alleged damages and/or other relief that [the government entity

Plaintiffs] seek in the Action (Including all Documents that support any damages You claim to

---

[8]      The government entity Plaintiffs have contended that this Court tacitly approved the
acceleration of the SFUSD trial into September 2022 at the last status conference, *see* Joint Disc.
Status Report, ECF No. 2757 at 11, but that is not what this Court said.  It said only that it intends
to "try four bellwether cases in 2022," *not* that the SFUSD trial would be rescheduled for an
earlier date if the September 2022 trial dates become available.  *See* ECF No. 2611 at 2–3.

have incurred) and the calculations thereof."  JLI First Set of Requests for Production to SFUSD, Req. No. 16; *see also id.* Req. Nos. 17, 33-46, and 48-58 (similarly seeking the disclosure of such information), attached as Ex. E. JLI also made an interrogatory request for supporting factual information and documents concerning Plaintiffs' alleged damages, including abatement. *See* Plaintiff SFUSDs' Resp. and Obj. to Def. JLI's First Set of Interrogs. (Resp. to Interrog. 6.), attached as Ex. F.  By pointing to Dr. Rossi's use of Nielsen data, Plaintiffs misunderstand the dispute.  It is expected that Plaintiffs' experts will submit the general "facts and data" upon which their opinions are based with their reports, as all experts do.  But Plaintiffs and their experts have claimed entitlement to disclose core facts of the case—data regarding the damages alleged by Plaintiffs and that JLI requested in discovery—long after fact discovery is closed.

The government entity Plaintiffs represented, *inter alia*, that they would conduct a reasonable search and produce "any nonprivileged budget reports or other Documents reflecting amounts spent addressing the use of ENDS products by underage users," but they failed to disclose the documents needed to support their experts' abatement analysis during fact discovery. Plaintiff SFUSD's Responses and Objections to Defendant Juul Labs, Inc.'s First RFPs at 23, attached as Ex. G.  Notwithstanding JLI's repeated requests for this factual data and information, during expert depositions, the government entity Plaintiffs' abatement expert Jonathan Winickoff admitted that the factual record did not contain sufficient factual data to support any abatement opinions concerning any particular locality and SFUSD specifically, and suggested that such material would still be forthcoming from the government entity Plaintiffs.  *See* J. Winickoff Dep. 251:7–15 ("No, not all the information from the bellwethers [is set forth in my report or reliance materials], because as I said, that's a—it seems like that's an ongoing process.  So what information I have now is fairly limited."); *see also* 233:23–234:2; 235:21–236:2; 242:11–16; 243:17–18;, excerpts attached as Ex. C.

Fact discovery is over, and has been over for months.  The government entity Plaintiffs failed to identify or produce the factual data and documents needed to support the damages they claim regarding the abatement of youth ENDS use.  Their experts therefore must rely on the

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

information that has previously been disclosed in this matter.  The government entity Plaintiffs should not be allowed to use forthcoming expert reports to disclose, whether implicitly or explicitly, additional factual information upon which their damages claims and calculations may be based—particularly when such information was timely requested during fact discovery—and their admitted intent to do so would materially prejudice JLI and the fair and orderly preparation for trial in this matter.

## II.   THE GOVERNMENT ENTITY PLAINTIFFS HAD A DUTY TO DISCLOSE THE ANTICIPATED MATERIAL DURING FACT DISCOVERY, AND MAY NOT DO SO NOW.

The government entity Plaintiffs had a duty to produce or identify the data and documents requested in JLI's discovery requests identified above during the fact discovery period, including all factual data and documents they intend to rely upon in support of their abatement claims. Further, pursuant to Rule 26, the government entity Plaintiffs were required to disclose and provide to JLI "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  "Rule 37(c)(1) forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (internal citation omitted).  Notwithstanding their obligations and JLI's discovery requests, the government entity Plaintiffs did not supplement their responses and production to provide the additional abatement data related to SFUSD that their experts apparently intend to disclose and rely upon now, and Defendants would have likely taken discovery related to such data and documents had it been produced, given the alleged centrality of such information to the government entity Plaintiffs' requested relief.

After JLI raised this issue, the government entity Plaintiffs acknowledged their intent to produce additional factual data and documents in connection with their case-specific expert reports, and further claimed they have no duty to disclose previously unidentified factual data and

information supporting their damages claims if it is publicly available.  *See* D. Kawamoto email

to J. Krannich (Jan. 11, 2022), attached as Ex. H.  But no such limitation appears in the Rules,

and this Court has specifically rejected this attempted limitation in other instances.  *Fosselman v.*

*Gibbs*, No. C 06-0375 PJH (PR), 2008 WL 745122, at *4 (N.D. Cal. Mar. 18, 2008) ("[T]he

objection that information is equally available to the questioner is not a proper objection.");

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418JW, 2005 WL

1459555, at *6 (N.D. Cal. June 21, 2005) ("[T]he Court can see no justifiable reason why

Plaintiffs should not produce, or at least identify, documents that support Plaintiffs' allegations in

the FAC, whether they are in Defendants' possession or in the public domain."); *see also Nat.-*

*Immunogenics Corp. v. Newport Trial Grp.*, Case No. SACV 15-02034 JVS(JCGx), 2018 WL

6133721, at *2 (C.D. Cal. Jan. 24, 2018). ("To the extent that NIC objects that the document

requests seek information equally available to NTG, courts have unambiguously stated that this

exact objection is insufficient to resist a discovery request.") (collecting cases) (internal citation

omitted).  These holdings comport with practical reality; a party cannot be expected to predict

which of the myriad sources of information in the public domain an opposing party will rely

upon, and the discovery process is intended to avoid such trial by ambush.  The bottom line is that

Rule 26 and JLI's discovery requests obligated the government entity Plaintiffs to disclose

months ago, during fact discovery, *all* the factual data and documents they now apparently intend

to attempt to disclose via expert reports.

Plaintiffs object to being required to fully disclose factual materials during fact discovery

because it would require them to "understand their experts' analysis . . . months before expert

reports are due."  But no such predictive powers are required; rather, Plaintiffs must simply

ensure that their experts' case-specific analysis is based on the case-specific factual information

that has been disclosed through fact discovery.  Plaintiffs, by contrast, claim entitlement to

continue disclosing factual information long after the close of fact discovery and to rely on case-

specific factual information that is "publicly available" without any disclosure whatsoever.  *See*

Ex. D.  That approach defies the Federal Rules and the principles of fact discovery.  All such

1  information should have been disclosed and timely supplemented in Plaintiffs' initial disclosures

2  and in response to Defendants relevant discovery requests.

3        At a recent discovery status hearing before Magistrate Judge Corley, this issue was

4  discussed and Magistrate Judge Corley stated that "[i]f the School District has relevant data, it

5  should be produced" and that "[i]f your expert is looking at data that hasn't been produced, then

6  you should probably produce it." 1/12/22 Hr'g. Tr. at 12:21–23; 13:11–12, ECF No. 2767. The

7  government entity Plaintiffs' intent to belatedly produce this information now will require motion

8  practice concerning their violation of the fact discovery cutoff and resulting prejudice to JLI—and

9  the resolution of that motion will materially impact the appropriate pretrial schedule for SFUSD

10 because fact discovery would likely need to be reopened if the late disclosures are allowed.

11 **III.**     **THE PARTIES SHOULD BRIEF THIS ISSUE SO IT CAN BE PROPERLY ADJUDICATED, AND THE SFUSD PRETRIAL SCHEDULE SHOULD THEN BE**
12 **RESET.**

13       The government entity Plaintiffs admittedly intend to disclose an as-yet undefined amount

14 of new factual evidence and data in connection with their forthcoming expert reports on January

15 28, 2022. While it would be understandable for Plaintiffs' experts to reserve case-specific

16 *analysis* until their case-specific reports (and, indeed, Plaintiffs reserved the right to do so in their

17 response to Interrogatory No. 6, while also reserving the right to supplement their disclosures and

18 production of *factual information* in advance of the close of *fact* discovery), it is improper for

19 Plaintiffs to reserve production of case-specific *facts* and *data*, producing them only in connection

20 with expert reports. Making matters worse, Plaintiffs have indicated their intent to provide late

21 fact discovery via case-specific expert reports while *also* seeking a pretrial schedule for SFUSD

22 that attempts to accelerate the trial of that case from its currently scheduled November 7, 2022

23 date. *See* J. Krannich emails with D. Kawamoto (Jan. 11, 2022), attached as Ex. H. From JLI's

24 standpoint, any further discussion of the pretrial schedule will need to first take into account the

25 proper resolution of this fact discovery dispute, and no pretrial schedule should be set until that

26 matter is resolved.

27

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1        Additional issues will also need to be addressed in connection with the resetting of the

2   pretrial schedule for SFUSD, at the appropriate time.  For example, the current schedule (which

3   has already been altered substantially by Plaintiffs' request to extend their case-specific report

4   deadline to January 28, 2022) would have summary judgment and case-specific *Daubert* briefing

5   commence in March 2022, for a trial scheduled in November 2022.  It would also call for pretrial

6   submissions to occur in May 2022.  These pretrial deadlines should be properly sequenced

7   backward from the November 2022 trial date, assuming that date is still workable following the

8   resolution of the significant fact discovery deficiency addressed herein.  They should also be

9   sequenced to apply only to SFUSD, as that is the only government entity case currently set for

10   trial—a nuance not addressed by prior scheduling orders.  The summary judgment, *Daubert*, and

11   other pretrial deadlines for additional government entity bellwether cases should be established as

12   trial dates for those cases are set.  And a proper pretrial schedule for SFUSD that takes these

13   issues into account should be established after the fact discovery dispute related to Plaintiffs'

14   belated attempt to disclose new factual data and information concerning their damages and

15   abatement claims is resolved—as the outcome of that issue will significantly impact the proper

16   procedure and timing of all remaining pretrial deadlines.

17        Accordingly, as this present fact discovery dispute has not been resolved via the parties'

18   conferrals and will impact all remaining pretrial deadlines in the government entity bellwether

19   cases, the parties should proceed to brief these issues following the service of Plaintiffs' case-

20   specific expert reports.  This issue is ripe for adjudication now given the government entity

21   Plaintiffs' admitted intent to disclose new factual data and evidence via their case-specific expert

22   reports.  No further pretrial schedule should be established at this point, except that a briefing

23   schedule should be set for motion practice concerning Plaintiffs' attempt to produce additional

24   fact discovery concerning factual data and information purportedly supporting their damages and

25   abatement claims via their case-specific expert reports.

26

27

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

**Plaintiffs' Position:**

**Government Entity Case Schedule**

At the December 6, 2021 Case Management Conference, the Court made clear that it would conduct four bellwether trials this year.  ECF No. 2611.  While the Court has expressed its preference to try the class case in September 2022, the Court also confirmed that another bellwether must be ready for trial in September if the class case for some reason is not.  *Id.* ("[T]here should be no confusion that we will try four bellwether cases in 2022.")  Given that San Francisco Unified has a November trial date, it would be most efficient and practical to substitute that case for the class action trial in the event of a delay.  The schedule proposed above allows the Court this flexibility.

Defendants disagree with Plaintiffs' proposal but fail to propose any alternative.  Instead, Defendants ask this Court to delay setting any schedule for the government entities until a dispute they foresee regarding expert reports that has not yet arisen or been submitted is resolved.  Defendants have not reviewed these reports because they are a still being prepared, but they are positive that this issue will require briefing that precludes entering a case schedule.  Defendants' position suggests that their primary goal is to manufacture a delay in an effort to avoid the trial of any government entity cases. There are seven months between this Case Management Conference and the September trial date and Plaintiffs have already agreed to provide Defendants with two months to submit responsive case specific reports, leaving ample time for any issues to be resolved, if they in fact materialize. *See* ECF No. 2660. The Parties have been meeting and conferring on the Government Entity case schedule since November 19, 2021 and now require this Court's guidance. The Parties and the Court are better served by set deadlines, which can be adjusted if truly necessary, than continued delay.

**Government Entity Bellwether Specific Expert Reports**

Defendants' position statement on the Government Entity expert reports is incorrect, hypothetical, and premature. It is directed at the content of expert reports that have not yet been served and are still being written.  ECF No. 2660 (joint stipulation providing that government

entity specific bellwether reports are due on January 28th and responsive reports are due on March 31st). Any guidance the Defendants seek from the Court at this juncture would at best be purely advisory as there is no motion for the Court to decide.

Defendants' argument is also based on a false premise: that Plaintiffs are required to produce all of the materials their experts ultimately rely on during fact discovery. But Defendants are conflating fact discovery and expert discovery. They are effectively arguing that Plaintiffs must precisely understand their experts' analysis and methodologies, and all the materials that their experts would be relying on, months before expert reports are due and expert discovery had commenced. Experts must be permitted to ask questions and seek out information while they are forming their opinions and writing their reports, and under the case schedule and as in standard practice in any case this process is completed *after* fact discovery closes. In fact, Defendants are not even complying with their own rule. One of their economic experts, Dr. Peter Rossi, extensively relied on Nielsen data that was not produced to Plaintiffs in fact discovery. Instead, Defendants first produced this data as part of the back-up materials to his report. This is exactly what Plaintiffs intend to do here.

Rule 26(a)(2)(B)(ii) requires that "the facts and data" considered by the expert in forming their opinions be disclosed as part of their expert report, not before reports are submitted. *See also Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014) ("[E]xperts are required to submit reports which must include 'the facts or data considered by' the expert in forming his or her opinions."); *Plexxikon Inc. v. Novartis Pharm. Corp.*, 17CV04405HSGEDL, 2019 WL 8508083, at *1 (N.D. Cal. May 3, 2019) (granting motion to compel production of materials considered by an expert because they should have been produced in connection with the expert report and were not). Defendants can then take expert discovery on these reports. But Defendants are not entitled to an early and exhaustive disclosure of an expert's reliance materials, nor are they entitled to manufacture a dispute as a reason for delay where none exists. There is no prejudice to Defendants as they can rely on these materials and respond to them in their rebuttal reports.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1    To the degree that Defendants now believe that they failed to take adequate discovery on

2  abatement, this is a problem of Defendants own making.  Each of the Government Entity

3  Plaintiffs, including San Francisco Unified, timely met its discovery obligations.  Plaintiffs

4  produced detailed fact sheets and discovery responses.[9]  Plaintiffs produced more than one

5  million pages of documents, including documents pursuant to informal requests from JLI

6  following the close of fact discovery.  Plaintiffs produced documents relating to and supporting

7  their damages theories and described the types and categories of damages they are seeking in

8  interrogatory responses.  JLI's assertion that Plaintiffs failed to produce " 'budget reports,'" is

9  incorrect. The bellwether school districts, for example, each produced several years' worth of

10  detailed budget documents and San Francisco Unified, in particular, produced detailed Tobacco

11  Use Prevention Education program expenditure reports. *See, e.g.*, GODDARD_000747,

12  GODDARD_000852, GODDARD_000994, GODDARD_001102, GODDARD_001210,

13  GODDARD_001317, GODDARD_001474, GODDARD_001657, GODDARD_001845,

14  GODDARD_002050, SBPBC_002248, SBPBC_002562, SBPBC_002865, SBPBC_003202,

15  SBPBC_003546, SBPBC_004050, SBPBC_004466, SBPBC_004772, SFUSD_001330,

16  SFUSD_001331, SFUSD_001332, SFUSD_001333, SFUSD_001334, SFUSD_001335,

17  SFUSD_001336, SFUSD_001337, SFUSD_001338, SFUSD_001339, SFUSD_001340,

18  SFUSD_001341, SFUSD_001342, TUSD_000176, TUSD_000209, TUSD_000241,

19  TUSD_000274, TUSD_000304, TUSD_000336, TUSD_000453, TUSD_000483,

20  TUSD_000514.  Defendants also had extensive access to bellwether employees, including those

21  with knowledge about bellwether expenditures and budgets, and took 73 30(b)(6) and 30(b)(1)

22  depositions, including 30(b)(6) depositions on Government Entity Plaintiff Budget and Relief

23

24  _____

[9] Defendants' suggestion that Plaintiffs "overlooked their obligation" to file initial disclosures
25  under Rule 26(a) is incorrect.  The parties extensively negotiated Plaintiff Fact Sheets that called
for a wide range of information, including information required by initial disclosures.
26  Submission of these fact sheets obviated the requirement for initial disclosures.  Disputes
regarding the scope of the fact sheets, including what information should be included to obviate
27  the need for Rule 26(a) disclosures, were raised with, and resolved, by Judge Corley.  Defendants
have had these fact sheets since January 2021 and have not challenged the adequacy of any of
28  them.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

topics.  Defendants' claim that they received very little factual information related to Plaintiffs' damages claims and that Plaintiffs failed to identify or produce any documents that relate to abatement is inconsistent with the discovery record. Defendants' arguments are really about what the evidence shows, not what evidence was produced. Defendants may now regret their approach to government entity bellwether discovery, but this is not the fault of Plaintiffs.

More fundamentally, Defendants' arguments are untimely.  As Defendants acknowledge, fact discovery has long since closed.  Plaintiffs have made clear, from the outset, that they are seeking abatement, which is prospective relief, and that the exact contours of this abatement remedy would be the subject of expert analysis and set forth in their expert reports.  *See* Plaintiff SFUSD's Second Supplemental Responses and Objections to Defendant JLI's First Set of Interrogatories, Ex. I at 44-48 (citing documents already produced on damages, explaining what abatement will entail generally, and noting that "Plaintiff reserves the right to revise, supplement, and amend these responses, including by providing a quantification of the amounts, through information that will be the subject of Expert Opinion.") If Defendants were dissatisfied with this response or had other concerns about Plaintiffs' document productions or interrogatory responses, they had an obligation to raise these concerns and seek relief during the fact discovery period. Local Rule 37-3 require Defendants to raise discovery disputes within 7 days of the Discovery Cut-off, which was August 30, 2021.  Defendants failed to do so.

Defendants also mischaracterize Dr. Winickoff's deposition testimony to support their disingenuous argument that the Government Entity Plaintiffs failed to produce documents relating to Plaintiffs' damages claims. To be clear, Dr. Winickoff did not, as Defendants suggest, testify that the factual record did not contain sufficient factual data to support abatement opinions concerning any particular locality or San Francisco Unified specifically. San Francisco Unified is not even mentioned in the deposition testimony cited by Defendants and is only mentioned once in the entire deposition (referred to as "San Francisco United" by defense counsel). Dr. Winickoff also did not testify that "such material would still be forthcoming from Plaintiffs." None of the testimony Defendants cite from Dr. Winickoff's deposition, most of which are incomplete

1    citations to only a portion of a question and answer, supports Defendants' argument. Dr.

2    Winickoff was deposed on November 5, 2021 – three months before his report on San Francisco

3    Unified is due. As he testified then, the specific abatement plans for the Government Entity

4    Plaintiffs was beyond the scope of the three general and four case-specific PI bellwether reports

5    he had prepared at the time. He was not asked questions about what documents were produced by

6    Plaintiffs to Defendants. Instead, he was asked about what bellwether specific information he had

7    and answered based on information he had reviewed at that point. Dr. Winickoff could and did

8    only testify about documents and information he may have received and reviewed in connection

9    with his general reports, not what the Government Entity Plaintiffs had produced over the course

10   of months in fact discovery.

11        Under the case schedule agreed to by the parties and entered by the Court, the

12   Government Entity Plaintiffs are to submit their expert reports in two waves: generic expert

13   reports were submitted on September 21st, and bellwether specific reports are due on January

14   28th.  ECF No. 2349; ECF No. 2660.  The purpose of the generic reports is to identify the general

15   framework and a range of possible abatement programs or strategies that could be deployed to

16   address the youth vaping crisis.  The bellwether specific reports – due on January 28th – will

17   contain bellwether specific information, including the types of the programs that could be

18   implemented in each bellwether jurisdiction following on the general framework in the

19   September reports.  It is thus unsurprising that Dr. Winickoff had not yet reviewed the bellwether

20   specific information available to him for reports that he had not yet begun drafting. His purported

21   testimony about the information he had reviewed at the time of the deposition on his *generic*

22   *reports* sheds no light on whether or not the Government Plaintiffs had properly responded to

23   discovery requests and produced documents to Defendants.

24        **2.     Timing of Abatement *Daubert* Motion**

25        Plaintiffs' Position:

26        Plaintiffs' request that briefing on JLI's Abatement *Daubert* motion occur consistent with

27   the Government Entity *Daubert* motion deadlines. JLI's abatement motion is premature. ECF No.

28

2705, Brief #6: Defendant JLI's Omnibus *Daubert* Motion to Exclude Opinions on Abatement. JLI's motion relates only to opinions offered in support of the government entity claims alone and should be properly briefed in connection with the other Government Entity *Daubert* motions later this year.

Last summer, this Court entered an amended case/trial schedule for this MDL. ECF 2168, Order Regarding Amended Case/Trial Schedule. Pursuant to the case schedule, Personal Injury Motions for Summary Judgement and *Dabuert* Motions were due on December 15, 2021. *Id.* at 3. These motions were also to "encompass the common issues that cut across the various case types." *Id.* There is a separate deadline for Government Entity and Class Action Motions for Summary Judgement and *Dabuert* Motions. *Id.* At JLI's request, the Court and Plaintiffs each provided JLI with additional time to file their Personal Injury *Daubert* motions, although Plaintiffs "reserved their rights to move to strike [the briefing] . . . or seek additional time to respond is necessary." *See* ECF No. 2717.

On December 24, 2021, JLI filed a *Dabuert* motion to exclude the abatement opinions of Plaintiffs' experts, Dr. Steven Kelder, Dr. Jonathan Winickoff, and Dr. David Cutler. JLI's motion acknowledged that challenged opinions were government entity specific. ECF No. 2705 at 1 ("Winickoff, Kelder, and Cutler offer opinion on abatement plans or measures proposed 'to abate the youth e-cigarette epidemic and associated harms' for various schools, school districts, cities and counties" that can be "applied for various government entities"). This was also clear from the expert reports themselves. Expert Report of Dr. Steven Kelder at 14 (discussing designing "an abatement plan for the Bellwether (BW) Wave 1 counties, cities, and school districts"); Expert Report of Dr. Jonathan Winickoff Pertain[ing] to County and City Cases at 284 (discussing his opinions regarding the actions "necessary to abate the youth e-cigarette epidemic and the strategies and actions that are necessary to abate the harms resulting from it, including the specific harms to counties, cities, schools, and school districts"); Expert Report of Dr. Jonathan Winickoff Pertain[ing] to School District Cases at 280 (same); Expert Report of Dr. David Cutler 28 (discussing the "Costs of the Vaping Epidemic on School Districts, Counties, and Cities"

1   including "abatement programs required to reverse the rise in youth vaping"). As the issues

2   relating to abatement are Government Entity specific, they will play no part in the personal injury

3   trials.

4       In addition, many of the criticisms in JLI's motion are that the abatement opinions offered

5   by Plaintiffs' experts are not sufficiently "tailored to the problem presented in each location

6   requiring abatement." ECF No. 2705 at 1. As discussed above, on January 28, 2022, Plaintiffs'

7   Experts will be submitting bellwether specific abatement plans which may obviate many of these

8   concerns. To be clear, Plaintiffs believe that JLI's motion is untimely regardless of the upcoming

9   bellwether specific reports. This upcoming deadline is simply another reason it is appropriate and

10  will be more efficient to resolve this government entity specific motion consistent with the case

11  schedule for government entity *Daubert* motions.

12      On January 5, 2022, Plaintiffs reached out to Defendants to meet and confer about

13  whether they would agree that the Abatement *Daubert* motion should be resolved consistent with

14  the Government Entity *Daubert* deadlines. A meet and confer occurred on January 11, 2022. On

15  January 18, 2022, JLI informed Plaintiffs that they would not agree.

16      Given the clear language of this Court's order on the case schedule, the large amount of

17  briefing the parties are submitting and the Court is reviewing with respect to the upcoming

18  personal injury trials, and the upcoming reports which may resolve the stated concerns, Plaintiffs

19  respectfully request this Court order that briefing on JLI's Abatement *Daubert* motion should

20  occur with connection with other Government Entity specific *Daubert* motions.

21      Defendants' Position:

22      Defendants' motions were not untimely, and the Abatement *Daubert* motions should

23  proceed on schedule with the other *Daubert* motions filed in December 2021.  Plaintiffs

24  submitted the expert reports of Dr. Steven Kelder, Dr. Jonathan Winickoff, and Dr. David Cutler

25  related to abatement during the generic phase of expert discovery in this case.  In an attempt to

26  streamline the *Daubert* briefing due in December 2021 to just those reports that were relevant to

27  the B.B. case, Defendants repeatedly asked Plaintiffs to provide a list of experts that they planned

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1   to call at the B.B. trial.  Plaintiffs refused to do so.  Defendants accordingly asked at the last

2   CMC, in light of the burden to the parties and the Court to brief *Daubert* on all generic and case-

3   specific B.B. experts, that instead Plaintiffs provide Defendants with an "initial disclosure of who

4   they [Plaintiffs] actually intend to call" and "on that basis, we would file *Daubert* motions with

5   respect to those folks."  12/6/21 Hr'g Tr. at 32:20–25, ECF No. 2624.  After hearing argument

6   from the parties, the Court stated, "each of these experts may well testify at in one of the

7   bellwethers down the road.  And if that's the case, given the schedule that we already have, I

8   think delaying the *Dauberts* is not a good idea . . . if we're going to have to do them anyway, why

9   not do them now."  (*Id*. at 40:25-41:3*)*  In light of this guidance and Plaintiffs' failure to further

10  limit their expert pool, Defendants proceeded to brief the abatement opinions.  Further,

11  Defendants' motions are not, as Plaintiffs contend, directed to government entity-specific issues,

12  but rather to methodological and foundational problems with these reports Plaintiffs submitted

13  during the generic phase of expert discovery and refused to take off the table when this wave of

14  *Daubert* motions was addressed with the Court.  Defendants' position is that the briefing schedule

15  for these filed *Daubert* motions should remain as presently scheduled.

16          **I.      Tribal Cases Schedule**

17          The parties in the tribal cases continue to meet and confer regarding a proposed case

18  schedule and bellwether selection process, and anticipate making their submission to the Court on

19  January 21, 2022.

20  **V.      DISCOVERY STATUS**

21          The MDL Plaintiffs are holding weekly calls with JCCP counsel regarding discovery, as

22  detailed by the Joint Coordination Order (CMO No. 9, ECF No. 572) and the Deposition Protocol

23  (CMO No. 10, ECF No. 573).

24  **VI.     ADR STATUS**

25          Pursuant to Civil Local Rule 16-10(d), the Parties report that they continue to confer with

26  Settlement Master Thomas J. Perrelli and cooperate with his recommendations.

27

28

Dated: January 20, 2022

By: */s/ David M. Bernick*

David M. Bernick (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5959

By: */s/ Renee D. Smith*

Renee D. Smith (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2310

By: */s/ Gregory P. Stone*

Gregory P Stone, SBN 78329
Bethany W. Kristovich, SBN 241891
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100

*Attorneys for Defendant Juul Labs, Inc.*

Respectfully submitted,

By: */s/ Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN &
BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone:  (415) 956-1000

By: */s/ Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: */s/ Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

By: */s/ Ellen Relkin*

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Co-Lead Counsel for Plaintiffs*

26

1

2

By: */s/ John C. Massaro*                     By: */s/ James Kramer*

3

**ARNOLD & PORTER KAYE SCHOLER
LLP**

4

**ORRICK HERRINGTON &
SUTCLIFFE LLP**

5

John C. Massaro (admitted pro hac vice)
Jason A. Ross (admitted pro hac vice)
601 Massachusetts Ave., N.W.
Washington D.C.  20001
Telephone:   (202) 942-5000
Facsimile:  (202) 942-5999
john.massaro@arnoldporter.com
Jason.ross@arnoldporter.com

James Kramer
Roland Chang
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone: (415) 773-5700
jkramer@orrick.com
rdchang@orrick.com

6

7

8

9

*Attorneys for Defendants Altria Group, Inc.
and Philip Morris USA Inc.*

*Attorneys for Defendant James Monsees*

10

11

By: */s/ Eugene Illovsky*                  By: */s/ Michael J. Guzman*

12

**BOERSCH & ILLOVSKY LLP**

**KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.**

13

Eugene Illovsky
Martha Boersch
Matthew Dirkes
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643
eugene@boersch-illovsky.com
martha@boersch-illovsky.com
matt@boersch-illovsky.com

Mark C. Hansen
Michael J. Guzman
David L. Schwartz
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910
mguzman@kellogghansen.com

14

15

16

17

*Attorneys for Defendant Adam Bowen*

*Attorneys for Defendants Nicholas Pritzker,
Riaz Valani, and Hoyoung Huh*

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1

By: */s/ Mitchell B. Malachowski*

2

**TYSON & MENDES, LLP**

3

James E. Sell
Mitchell B. Malachowski

4

Stephen Budica
April M. Cristal

5

523 4th Street, Suite 100
San Rafael, CA 94901

6

Telephone:  (628) 253-5070
jsell@tysonmendes.com

7

mmalachowski@tysonmendes.com
sbudica@tysonmendes.com

8

acristal@tysonmendes.com

9

*Attorneys for Defendants Mother Murphy's
Labs, Inc., and Alternative Ingredients, I*

10

11

By: */s/ Michael L. O'Donnell*

12

**WHEELER TRIGG O'DONNELL LLP**

13

Michael L. O'Donnell
James E. Hooper

14

Marissa Ronk
370 17th Street, Ste. 4500

15

Denver, CO 80202
Telephone: (303) 244-1850

16

Odonnell@wtotrial.com
hooper@wtotrial.com

17

Ronk@wtotrial.com

18

*Attorneys for Defendant McLane Company,
Inc.*

19

20

21

22

23

24

25

26

27

28

By: */s/ Robert Scher*

**FOLEY & LARDNER LLP**

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorney for Defendants Tobacco
Technology, Inc., and Eliquitech, Inc.*

By: */s/ Christopher J. Esbrook*

**ESBROOK LAW P.C.**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown
Company, LLC, Circle K Stores, and 7-
Eleven, Inc., Speedway, and Walgreen Co.*

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

By: */s/ David R. Singh*

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*

By: */s/ Donald F. Zimmer, Jr.*

**KING & SPALDING  LLP**

Donald F. Zimmer, Jr.
Quyen L. Ta
Jennifer T. Stewart
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:     (415) 318-1200
fzimmer@kslaw.com
qta@kslaw.com
jstewart@kslaw.com

*Attorneys for Defendant Walmart Inc.*

By: */s/ Charles C. Correll Jr.*

**KING & SPALDING LLP**

Andrew T. Bayman (Admitted *pro hac vice*)
1180 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
abayman@kslaw.com

and

Charles C. Correll, Jr.
Matthew J. Blaschke
Alessandra M. Givens
50 California Street, Suite 3300
San Francisco, CA 94111

Telephone: (415) 318-1200
ccorrell@kslaw.com
mblaschke@kslaw.com
agivens@kslaw.com

*Attorneys for Defendant Chevron Corporation*