# EXHIBIT 86

# FILED UNDER SEAL

Highly Confidential - Outside Counsel Only

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----------------------------X

IN RE:

JUUL LABS, INC. MARKETING, CASE NO.

SALES, PRACTICES AND PRODUCTS 19-md-2913-WHO

LIABILITY LITIGATION

This Document Relates to:

ALL ACTIONS.

----------------------------X VOLUME 1

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY

VIDEO-RECORDED DEPOSITION OF

VITTAL KADAPAKKAM

Tuesday, May 25, 2021

12:05 p.m. EDT

Reported in stenotype by:

Denise Dobner Vickery, Registered Merit Reporter,

Certified Realtime Reporter and Notary Public

core business or be disrupted, which led to their willingness to value JUUL at a premium as well as provide, or at least appear to provide, certain services.

Q. In terms of any other service apart from regulatory, do you think that what you had contemplated would happen actually played out?

In other words, let me ask you a better question.

On the regulatory side of things, it appears that you renegotiated or solidified the regulatory services approval.

As to the other services that were contemplated, be they youth prevention, product placement or otherwise, did those somewhat fall to the wayside?

MR. HUMANN: Objection. Foundation and form.

THE WITNESS: From my perspective, I was disappointed in the ability of JUUL to take advantage of services that I thought we had negotiated through that services agreement.

Implementation was much more challenging than I had originally

anticipated across the host of services.

BY MR. BAGHDADI:

Q. This is so bizarre. Because I was talking to a witness from Altria who said, as much as they would love to, you folks didn't take advantage of the youth prevention services.

MR. HUMANN: Objection to form.

BY MR. BAGHDADI:

Q. So help me understand in plain English, to the extent you can. Was it, We entered this agreement, but in practicality, all sorts of roadblocks started coming up and there seems to be some sort of change of heart?

Do you understand what I'm asking you, sir?

MR. HUMANN: Object to foundation.

THE WITNESS: I do understand what you're asking. I can give you my perspective on it, which is that I don't believe that Altria did try to provide all of the services that were agreed to in earnest and in good faith, and there were a number of roadblocks that were

created as we did engage across various dimensions of services agreement.

That being said, I am looking at this outside in and was not directly involved in the implementation of any of the services. So I would caveat my perspective with trying to explain what I've observed as opposed to direct or specific knowledge of the actual engagement or interaction between the two companies.

BY MR. BAGHDADI:

Q. And so in terms of what you've observed on the regulatory side of things, has Altria secunded certain employees to come and work out of JUUL on the regulatory side?

A. I believe Altria has provided dedicated consulting resources to JUUL to support preparation of JUUL's application.

Q. And what does that mean? Are there people who work for Altria that show up at JUUL's office in DC is what I'm asking you.

MR. HUMANN: Object to form.

THE WITNESS: No, not that I've seen. I'm not -- not aware. I do