UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Documents Relates to:<br><br>Saint Regis Mohawk Tribe v. JUUL Labs, Inc., et al.; Case No. 20-cv-03985-WHO;<br><br>Grand Traverse Band of Ottawa and Chippewa Indians v. JUUL Labs, Inc., et al.; Case No. 21-cv-04253-WHO. | Case No.  19-md-02913-WHO<br><br>**ORDER ON MOTIONS TO DISMISS AND MOTION TO AMEND TRIBAL BELLWETHER COMPLAINTS**<br><br>Re: Dkt. Nos. 2431, 2432, 2434, 2435, 2437<br><br>Also Re: Dkt. No. 29 in Case No. 20-cv-03985; Dkt. No. 7 in Case No. 21-cv-04253. |

The parties selected two Tribal Entity complaints to test at the motion to dismiss stage; the claims of the Saint Regis Mohawk Tribe ("SRMT," Case No. 20-cv-03985) and the claims of the Grand Traverse Band of Ottawa and Chippewa Indians ("Grand Traverse Band," Case No. 21-cv-04253) (collectively "Tribes").  This Order resolves the motions.

Altria moves to dismiss all of the Tribes' claims, contending that they failed to allege an actionable RICO injury "to business or property" and causation for each claim involving Altria. Altria MTD, Dkt. No. 2434.  JLI's motion is more narrow.  It argues that the Grand Traverse Band fails to sufficiently allege its negligence claim based on a "present physical injury," and that its Michigan Consumer Protection Act claim ("MPCA") fails because JLI's conduct falls within an exemption to that statute for regulated industries.  It also contends that the SRMT civil conspiracy claim fails because it is not an independent tort under state law.  JLI MTD, Dkt. No. 2431.

In addition, defendants James Monsees and Adam Bowen (collectively "Founder and Director Defendants") move to dismiss, contending that SRMT's civil conspiracy claim must be dismissed, the Tribes do not adequately allege RICO injury to business or property, the Grand Traverse Band's negligence claim fails for failure to allege "present physical injury," and the Grand Traverse Band's MCPA claim fails because defendants' conduct is exempt.  Monsees

MTD, Dkt. No. 2437 & Bowen MTD, Dkt. No. 2435.  The Other Director Defendants (the "ODDs," Riaz Valani, Nicholas Pritzker, and Hoyoung Huh) move to dismiss for the same reasons as JLI and the Founder and Director Defendants, and also argue that there is no personal jurisdiction over any of the ODDs for the New York and Michigan claims.  ODD MTD, Dkt. No. 2432.

The Tribes oppose, arguing that their operative pleadings sufficiently state their claims.  They point out that I have already rejected many of the defendants' arguments in addressing the similarly situated Government Entities.  Both Tribes also filed motions for leave to amend that add factual allegations that respond to defendants' contentions regarding RICO injury and negligence.  SRMT seeks to add allegations regarding injuries to its physical property from littering and improper disposal of JUUL products that are considered hazardous waste, its need to install anti-vaping signs on its property, the confiscation and storage of JUUL products by Tribal employees, and the disposal of hazardous waste in its landfills.  Dkt. Nos. 29, 30 in Case No. 20-cv-03985.  The Grand Traverse Band seeks to add allegations regarding injury, including damage to a commercial building from a fire that was caused by a vaping device.  Dkt. Nos. 7, 8 in Case No. 21-cv-04253.

For the reasons that follow, I GRANT the motions to amend and DENY all of defendants' motions except with respect to the Michigan negligence and MCPA claims.  With the exception of the Michigan claims, the Tribes' complaints are plausibly pleaded.

**BACKGROUND**

The vast majority of the factual allegations regarding defendants' conduct contained in both the SRMT's Amended Complaint (AC, Dkt. No. 16 in Case No. 20-cv-03985) and proposed Second Amended Complaint (SAC, Dkt. No. 28-4) and in the Grand Traverse Band's Complaint (Compl., Dkt. No. 1 in Case No. 21-4253) and proposed Amended Complaint (FAC, Dkt. No. 7-1) are materially identical to the factual allegations alleged and found to be largely sufficient to state RICO, negligence, public nuisance, and other state law claims in the Government Entity (GE) complaints tested at the motion to dismiss stage.  *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 643-677 (N.D. Cal. 2020) (*JUUL I*); *In re JUUL Labs,*

*Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 533 F. Supp. 3d 858 (N.D. Cal. 2021) (*JUUL II*); *see also In re JUUL Labs, Inc., Mktg. Sales Prac. & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2021 WL 3112460, at *5 (N.D. Cal. July 22, 2021) (*JUUL III*) (concluding personal injury bellwether plaintiffs sufficiently alleged "personal participation" of ODDS, sufficiently alleged negligence claims against ODDs and Founder and Director defendants, and sufficiently alleged causation against Altria). The parties are intimately familiar with those allegations, and I will not repeat them.

There are Tribe-specific allegations in the operational and proposed amended complaints. SRMT alleges that: (i) defendants "knowingly or negligently marketed and promoted JUUL products to the Tribe and its members, and within the Tribe's geographic areas controlled and occupied by the Tribe and its members," SAC ¶ 10; (ii) "the JUUL epidemic disproportionately impacts American Indian and Alaska Native (AI/AN) communities and young members of Indian tribes across the United States," *id*. ¶¶ 12, 719-721; (iii) "[d]efendants specifically and deceptively targeted AI/AN communities with their highly addictive and damaging products. JLI sought to take advantage of a vulnerable AI/AN population by making sales partnerships with numerous tribes, to implement deceptive and misleading sales and marketing such as the 'switching programs,'" *id*. ¶¶ 13, 722-728; and (iv) defendants "engaged in activities and conduct that took place on or had a direct impact on land that constitutes Indian Country within the Tribe's jurisdiction and territory," including that the "design, marketing, and false and misleading statements about Defendants' products into the State of New York and onto the Tribe's lands and surrounding areas created the JUUL epidemic, which resulted in a foreseeable crisis and significant harm to the Tribe and its members." *Id*. ¶ 25.

As to their injuries, SRMT alleges generally that the "Tribe has [] suffered substantial damages due to the lost productivity of the Tribe's members, increased administrative costs, lost opportunities for the Tribe's community growth and self-determination, and substantial damages relating to its ability to govern itself, the Tribe's members, and territory as a direct result of Defendants' wrongful acts and omissions. These damages have been suffered and continue to be suffered directly by the Tribe." *Id*. ¶ 15; *see also* ¶¶ 731, 740-741 (diversion of resources), 760-

3

763. SRMT also states that in "response to the public health concerns associated with Defendants' conduct, the Tribe has been required to take significant action to protect the health, safety, education, and welfare of the Tribe and its members, including banning the sale of flavored e-cigarette products and increasing the minimum age to purchase all products associated with e-cigarettes to 21 years of age." *Id*. ¶¶ 26, 749.

Regarding injury to its property, SRMT alleges that defendants have created a growing hazardous waste problem on SRMT's property because: SRMT has had to address improperly disposed of JUUL devices and other vaping products in its parks and on other tribal property; SRMT has been forced to handle and dispose of the JUUL devices that contain toxic chemicals and batteries (that cannot be safely disposed of in the normal stream of trash but should be handled as hazardous waste); JLI contributed to the improper disposal of JUULpods by generally telling customers to throw JUULpods away in the "regular trash" until at least April 27, 2019, causing hazardous waste to be spread throughout SRMT's property; SRMT has created and installed anti-vaping signs around its property to address the epidemic caused by defendants; and SRMT has been forced to come up with effective methods to address the toxic electronic waste generated by e-cigarette devices and accessories. Proposed SAC ¶¶ 733-738, 748.

Based on the general and SRMT-specific allegations, SRMT alleges claims for: (i) Violations of the Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; (ii) violation of New York Public Nuisance Law; (iii) Negligence; (iv) violations of New York General Business Law §§ 349–350; and (v) Civil Conspiracy.

The Grand Traverse Band similarly states facts regarding the defendants' conduct in targeting American Indians and Native Alaskans (AI/NA) with its marketing, as well as the disproportionate impact that resulted in part because of the higher usage of tobacco or nicotine-containing product by AI/NA communities. *See, e.g*., FAC ¶¶ 13-14, 716-718, 720-725. It also alleges a significant diversion of resources necessary to combat the vaping epidemic caused by defendants' conduct, including the need to divert resources from its tribal owned businesses that would otherwise have been reinvested in those businesses. *Id*. ¶¶ 16, 730-733, 862.

The proposed amended allegations regarding claims of damage to the Grand Traverse

4

Band's property include damages caused by a vaping device that led to a fire in a Tribal operated hotel room, requiring repair costs that would have otherwise been invested in business opportunities to create additional revenue for the Band's commercial enterprises. FAC ¶¶ 734-735. The Grand Traverse Band does not allege that it had to alter its property with anti-vaping signs, expend monies on cleaning up or storing hazardous waste from JUUL products, or dispose of JUUL or other vaping products in a safe manner in its landfills. It states simply that defendants "have caused foreseeable damages to the Grand Traverse Band, including the costs of providing . . . hazardous waste disposal of JUUL products." FAC ¶ 16 (hazardous waste expenses).

Based on the general and Grand Traverse Band-specific allegations, the Band alleges claims for: (i) Violations of The Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; (ii) Violation of Michigan Public Nuisance Law; (iii) Negligence; (iv) Unfair Competition in violation of Michigan Consumer Protection Act § 445.903, *et seq*.; and (v) Civil Conspiracy.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir.

5

2008).

## DISCUSSION

### I. MOTIONS FOR LEAVE TO AMEND

As an initial matter, I GRANT each Tribe's motion for leave to amend. In considering defendants' motions to dismiss, I will review SRMT's Proposed Second Amended Complaint (SAC, Dkt. No. 28-4) and the Grand Traverse Band's proposed First Amended Complaint (FAC, Dkt. No. 6-2). The defendants had ample opportunity to address the proposed added allegations in their reply briefs. Considering the proposed allegations now will not cause any prejudice to defendants and is appropriate to move these cases forward.

### II. RICO INJURY

Each set of defendants moves to dismiss the Tribes' RICO claims (except JLI, which is not a defendant to the RICO claim). They argue that both Tribes fail to allege sufficient facts to demonstrate the required "injury to business or property." *See, e.g., JUUL I,* 497 F. Supp. 3d at 595 (discussing the RICO requirement that a plaintiff plead "a harm to a specific business or property interest," which is "a categorical inquiry typically determined by reference to state law").

Moving defendants point out that when government entities act in their sovereign or quasi-sovereign capacities to enforce laws and promote well-being of their citizens (or here, tribal members), their typical expenditures are not cognizable RICO injuries. *See JUUL I*, 497 F. Supp. 3d at 621 (discussing *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969, 975 (9th Cir. 2008)). In *JUUL I*, I noted that some courts – interpreting Ninth Circuit and California authority – had found that "extraordinary expenditures" like those necessitated by the opioid crisis and arguably the vaping crisis could qualify as RICO damages because they were "extraordinary" and not typical or expected government expenditures. *See JUUL I*, 497 F. Supp. 3d at 621-22 (citing *In re Natl. Prescription Opiate Litig*., 1:17-MD-2804, 2018 WL 6628898, at *10 (N.D. Ohio Dec. 19, 2018), an opinion by the Hon. Dan A. Polster). That argument, however, has been rejected by a colleague in this District. *See id*. at 622 (citing *City and County of San Francisco v. Purdue Pharma*, 3:18-CV-07591-CRB, 491 F.Supp.3d 610, 650–51, at *19 (N.D. Cal. 2020), an opinion by the Hon. Charles R. Breyer).

6

In my prior Orders, I did not take a side on this dispute. The GE complaints under review alleged other RICO-cognizable injury to "property," including that hazardous products have been wrongfully disposed of as regular waste in their schools and landfills and that plaintiffs had to make physical modifications to their property by installing e-cigarette detectors, cameras, or anti-vaping signs around their property. *JUUL I*, 497 F. Supp. 3d at 622. The same is true with respect to the RICO claims here because, as discussed below, SRMT alleges adequate damage to its property and both Tribes allege damage to their Tribal "businesses" sufficient to allege RICO injury, at least at this juncture.

Defendants note that in their respective Amended Complaint and Complaint, SRMT and Grand Traverse Band have stated few if any facts regarding what damage defendants' conduct caused to their businesses or property outside of what could arguably be described as either "normal" or "extraordinary" expenditures to provide public services to their members in response to the alleged vaping crisis. But in its proposed amended complaint, SRMT alleges specific injuries that are materially similar to injuries that I concluded constitute cognizable RICO injury to property with respect to the GEs, including handling, storage, and disposal of hazardous waste and putting up anti-vaping signs. SRMT SAC ¶¶ 734-738. SRMT's allegations satisfy injury to property cognizable under RICO for pleading purposes.

The allegations made by the Grand Traverse Band are more sparse. The Band alleges only that it incurred "costs of disposing hazardous waste." FAC ¶16. It also states a more specific, significant injury: a fire occurred in one of its hotel properties that was caused by an unidentified person using an unidentified "vaping device." *Id.* ¶ 735. RICO causation, as noted in my previous orders, requires a "direct" connection between the injury asserted and the injurious conduct alleged. *JUUL I*, 497 F. Supp. 3d at 618. Defendants contend that the hotel fire is insufficient because there is nothing tying that injury to a JUUL product, or more directly to defendants' general marketing of JUUL or their targeting of the Tribes and knowledge that Tribal members disproportionally use nicotine products, which is the core conduct about which the Tribes complain in this litigation. Absent allegations that the hotel fire is directly related to JUUL's conduct, the allegations are not sufficient.

7

1      But the Grand Traverse Band and SRMT have alleged another type of RICO-recognizable damage, damage to their businesses. Both Tribes allege that they run commercial enterprises and that those enterprises were damaged by the diversion of resources caused by defendants' conduct; instead of reinvesting those resources in the Tribes' enterprises, the resources were diverted to help the Tribes address the impacts of the vaping epidemic. SRMT SAC ¶ 740; Grand Traverse Band FAC ¶¶ 730, 732, 860, 862. Defendants identify no cases that would put this type of damage to a commercial enterprise (even one run by a government entity) outside the scope of RICO-recognizable damage.

Altria objects, without any caselaw support, that the Tribes should not be able to allege a business loss where the Tribes diverted profits from their business to address the "unrelated" harms caused by vaping. It asserts that such a theory would "turn any costs by any plaintiff on anything into a 'business loss' so long as plaintiff owned or operated any business." Altria Reply at 6. But Altria overstates its concern. Addressing a slightly different "commercial injury" from government participation in the marketplace, the Ninth Circuit has held that when operating or doing business in the marketplace, "government entities that have been overcharged in commercial transactions and thus deprived of their money can claim injury to their property." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008); *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898, at *10 (N.D. Ohio Dec. 19, 2018) ("some of Plaintiffs' alleged costs are clearly associated with Plaintiffs' participation in the marketplace, and for those costs, Plaintiffs can undoubtedly recover. *See, e.g., id*. (asserting injury due to the costs associated with purchasing naloxone to prevent future fatal overdoses)."). The Tribes, presumably, will need to tether and track the diverted resources from their businesses to expenditures to address the vaping crisis allegedly caused by defendants' conduct, and prove to the jury that those diverted resources would have otherwise been invested back into their businesses.

For present purposes, the allegations of injury to property made by SRMT and injury to business made by both Tribes are sufficient. How closely or directly connected those injuries are to the conduct of defendants is better determined on a complete record. Similarly, whether the

expenditures the Tribal plaintiffs claim they incurred are sufficiently "extraordinary" and directly connected to defendants' conduct to convince me to follow Judge Polster's reasoning and distinguish Judge Breyer's is better determined on a full evidentiary record.

Defendants' motions to dismiss based on RICO injury are DENIED.

### III.  PROXIMATE CAUSATION

Altria challenges the Tribal plaintiffs' showing of causation for their RICO claim (requiring "but for" and "direct" causal connection, *JUUL I*, 497 F. Supp. 3d at 595), as well as for their nuisance, negligence, and consumer protection claims (requiring a direct and not remote connection between a plaintiff's injury and a defendant's conduct). It argues that the Tribes fail to adequately allege causation because: (i) they seek to recover costs based on injuries suffered by third-parties (their members or visitors who used JUUL products) and (ii) they fail to allege facts that Altria took any conduct directed at AI/NA communities or that Altria's conduct caused tribal members who would otherwise not have done so to use JUUL products. Altria MTD at 3-7.

Like the Government Entities, both Tribes seek recovery for economic and property-based injuries they themselves suffered, not those incurred by third-party JUUL users (the members of their Tribes). Altria made similar arguments regarding RICO, nuisance, negligence, and consumer protection claims with respect to the GE complaints, and I concluded that the GE complaints adequately alleged causation against Altria: It helped distribute JUUL products by providing shelf-space and other distribution services, encouraged the FDA to keep mint products on the market, and disseminated the Make the Switch advertisements. *See JUUL I*, 497 F. Supp. 3d at 666; *JUUL II*, 533 F. Supp. 3d at 870.

Altria argues that those conclusions do not control here because the Tribes make no allegations to "tie" their general allegations regarding Altria's conduct to their specific injuries. In other words, Altria wants the Tribes to identify conduct by Altria specifically directed at each Tribe, as opposed to generally directed to the market. Altria MTD at 7. But Altria does not explain why that general market targeting and general market support is not sufficient – at the pleading stage – for the Tribal entities, just as it was for the GEs. Its argument on causation is foreclosed by my determinations – based on materially similar allegations made by the GEs – that

9

proximate causation against Altria was sufficiently alleged. *See JUUL I*, 497 F. Supp. 3d at 666; *see also JUUL II*, 533 F. Supp. 3d 858, 871 n. 11 (N.D. Cal. 2021) (declining to revisit the RICO injury and proximate cause arguments raised by Altria for a second time as against the Government Entity complaints).[1]

Altria's motion to dismiss based on causation is DENIED.

## IV.  NEGLIGENCE UNDER MICHIGAN LAW

JLI, ODDs, and the Founder and Director Defendants move to dismiss the Grand Traverse Band's negligence claim under Michigan law, arguing that the Band has failed to allege a "present physical injury" as required for a negligence claim under Michigan law.  Bowen also moves to dismiss, arguing that the Band has failed to allege facts supporting a duty of care.

### A.    Present Physical Injury

Under Michigan law, a plaintiff seeking damages for negligence must "demonstrate a present physical injury to person or property *in addition to* economic losses that result from that injury in order to recover under a negligence theory." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 75–76 (2005) (emphasis in original).  Here, the Grand Traverse Tribe's supplemental allegations regarding injury to property are thin and, as discussed above, insufficient to independently satisfy the RICO injury to property standard.  The Band's allegations regarding handling and disposing of hazardous waste are much less detailed than those made by SRMT (or the GEs whose complaints were tested on prior round of motions) and there are no allegations that the Grand Traverse Band needed to alter its property by installing anti-vaping signs or altering its landfills.

Therefore, the motion to dismiss the Michigan negligence claim is GRANTED with leave to amend.  If the Grand Traverse Band can identify additional allegations in support of its present physical injury to satisfy Michigan law, it may file a Second Amended Complaint within thirty (30) days of the date of this Order.

### B.    Duty

Under Michigan law, "the ultimate inquiry in determining whether a legal duty should be

---

[1] As noted in my prior Orders, Altria remains free to argue causation is lacking at summary judgment on a full evidentiary record.

1    imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a

2    duty." *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 196 (Mich. 2012).  Courts analyze "the

3    relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the

4    nature of the risk presented." *Id*.  Bowen argues that the Grand Traverse Band has not adequately

5    alleged that he personally owed the Band a duty of care, noting that there are no allegations that

6    the Band purchased any product or otherwise explained how the duty of care runs to it.

7    The Band alleged – consistent with the GE complaints already tested – that it was within

8    the foreseeable scope of risk created by Bowen and the other defendants' conduct.  *See, e.g.*, FAC

9    ¶¶ 720-724.  Bowen identifies no distinctions between what is required to sufficiently allege duty

10   for a negligence claim under Michigan law with respect to the Grand Traverse Band's allegations

11   and the duty I previously analyzed for negligence claims under Arizona, California, Florida,

12   Pennsylvania, and New York laws.  *See, e.g., JUUL I*, 497 F. Supp. 3d at 655-659 (identifying

13   legal standards for establishing duty); *id*. at 663 ("the school districts' allegations about personal

14   participation and the laws of each relevant state support the negligence claims against Monsees

15   and Bowen").  Absent some reason grounded in Michigan law, I will not revisit those

16   determinations.

17   **V.   CIVIL CONSPIRACY**

18   **A.   New York Law**

19   Defendants argue that the stand-alone civil conspiracy claim asserted under New York law

20   by SRMT must be dismissed.  I have already determined that New York does not recognize an

21   independent civil conspiracy claim, but instead recognizes the concept as a form of joint liability

22   attached to a separate tort claim.  *See JUUL III*, 2021 WL 3112460, at *15 (where plaintiffs did

23   not "really contest" whether conspiracy claims could be asserted as stand-alone claims under

24   North Carolina, New York and Tennessee law and instead argued the conspiracy allegations

25   would be tied to "an independent tort" or relevant to prove joint and several liability, court

26   dismissed "stand-alone conspiracy to defraud claims" but incorporated  "plaintiffs' allegations . . .

27   into the other fraud-based claims as appropriate" and held those plaintiffs "may continue to seek

28   joint and several liability for all relevant fraud-based claims against the ODDs and other

11

defendants.").

Plaintiffs admit that conspiracy is not viable as an "independent" cause of action but contend that it can be pleaded here because it is predicated upon SRMT's public nuisance tort claim. *See, e.g., Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1241 (E.D. Okla. 2021) (declining to dismiss a stand-alone conspiracy claim under Ohio law that, like New York law, must be connected to a viable intentional tort, concluding "that public nuisance may satisfy [underlying tort requirement for conspiracy claim] it as well. Public nuisance, if committed intentionally, may constitute an intentional tort."). While conspiracy is not an "independent" tort, the Tribe's allegations regarding civil conspiracy are sufficiently attached to its nuisance claim to allow it to be pleaded. There is no need to have SRMT submit yet another complaint; all involved should be clear on how the civil conspiracy allegations remain relevant to SRMT's claims.

### B. Michigan Law

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313 (1992). "However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 157 Mich. App. 618, 632 (1986).

Defendants argue that because the negligence claim fails under Michigan law for failure to adequately allege present physical injury to property, the related claim for civil conspiracy also fails. The negligence claim has been dismissed with leave. More significantly, defendants have not challenged the Grand Traverse Band's public nuisance claim. As noted above, at least one court has accepted that a similarly structured-civil conspiracy claim could be tethered to an existing public nuisance claim; defendants presented no caselaw to the contrary. For that reason, the motions to dismiss the civil conspiracy allegations are DENIED.

### VI. MICHIGAN CONSUMER PROTECTION ACT

Defendants move to dismiss the Grand Traverse Band's claim under the Michigan Consumer Protection Act (MCPA, M.C.L. § 445.903 et seq.). The Band alleges unfair and

12

deceptive conduct in the marketing of the JUUL product, unlawful violations of § 445.903(1)(c) by "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," and unlawful violation of § 445.903(1)(cc), which prohibits "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Grand Traverse Band Complaint, Count IV.

Defendants argue that this claim fails as a matter of law because their conduct falls within an exemption to the MCPA.  Section 445.904(1)(a) provides:

> This act does not apply to either of the following: (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

When considering whether a claim falls within the MCPA's regulatory exemption, a court's focus should be directed at whether "the transaction at issue, not the alleged misconduct, is 'specifically authorized.'" *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 464 (1999); *see also Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 213 (2007) ("Thus, the exception requires a general transaction that is 'explicitly sanctioned.'"). "The party claiming the exemption bears the burden of proving its applicability." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. at 208.

Defendants contend that the exemption applies because the sales and marketing of nicotine containing products, like JUUL, are subject to heavy regulation and as a result the Grand Traverse Band's MCPA claim is barred as a matter of law.  They rely on *Flanagan v. Altria Grp., Inc.*, No. 05-71697, 2005 WL 2769010 (E.D. Mich. Oct. 25, 2005).  There, the plaintiffs claimed that "[d]efendant designed its cigarettes to dupe the machine that measures tar and nicotine content, and then, through use of the descriptors 'Lights' and 'Lowered Tar and Nicotine,' misled consumers about the actual tar and nicotine content of the cigarettes." *Id.*, at *1.  With respect to the MCPA claim, the court held that to "the extent that Plaintiff alleges that use of the tar and nicotine legend on Defendant's product and advertisements is fraudulent, that claim is exempt. There is little question that Defendant was 'specifically authorized' to report tar and nicotine levels per the FTC Method on their cigarettes and advertisements.  Hence, notwithstanding the allegedly fraudulent misrepresentations behind this reporting, any claims about the tar and nicotine

13

legend are exempt." The court explained that the defendant's "general transaction" was the labeling and advertising of its cigarettes. *Id*. *7. Because the applicable federal statute and regulations established "a comprehensive Federal program to deal with cigarette labeling and advertising," the deceptive conduct alleged fell within the MCPA's exemption. *Id*.; *see also Liss*, 478 Mich. at 206–07, 215 (MCPA claim based on allegations that a contractor did not complete construction on time and that the construction that was completed was not done in a workman-like manner fell within the exemption because defendants' "general transaction," building a residential home, is "specifically authorized" under regulations and licensing requirements governing contractors even if the specific misconduct – failure to perform – is not otherwise specifically addressed by regulations).

Defendants argue that the "transaction" here was the sale of the JUUL products, which is heavily regulated under the Tobacco Control Act by the Food and Drug Administration. That the Tribe's allegations concern the "marketing" of the JUUL products, subject matter that could be considered only implicitly regulated under federal law, does not move the claims out of the exemption. *See, e.g., Gant v. Ford Motor Co*., 517 F. Supp. 3d 707, 719 (E.D. Mich. 2021) (finding exemption "applies to motor vehicle sales" and MCPA claims based on undisclosed product defects in cars exempt); *Rosenbaum v. Toyota Motor Sales, USA, Inc*., 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (finding claim that Toyota improperly advertised miles-per-gallon was exempt under the MCPA because "Michigan regulates how car wholesalers like Toyota advertise automobiles, *see* MCL 257.248d, and it regulates the content of general automobile advertisements. See MCL 445.315.").

In the *Opiate Litigation* MDL, Judge Polster addressed the scope of the MCPA exemption. A county claimed that defendants failed to monitor, report, and stop the filing of suspicious orders of controlled substances; engaged in unfair and deceptive unbranded marketing to promote the use of opioids for indications not federally approved; circulated false and misleading information concerning opioids' risks, benefits, and superiority, downplaying or omitting the risk of addiction arising from their use; and, engaged in improper unbranded marketing and circumvented and acted outside "the bounds of their federal regulatory obligations and FDA oversight." *In re Nat'l*

14

1  *Prescription Opiate Litig*., 458 F. Supp. 3d 665, 688–89 (N.D. Ohio 2020), *motion to certify
2  appeal denied*, No. 1:17-MD-2804, 2020 WL 3547011 (N.D. Ohio June 30, 2020). Defendants
3  argued that the Drug Enforcement Agency ("DEA") and FDA licensing and regulatory regimes to
4  which they are subject brought them within the exemption. Judge Polster agreed, finding that
5  "under *Smith* and *Liss*, because the 'general transactions' of distributing and selling prescription
6  opioids are 'specifically authorized by law,' the authorized transaction exemption applies to
7  Monroe's diversion-related MCPA claims against all Defendants." *Id*. at 690 (N.D. Ohio 2020).
8  He considered the MCPA claim based on the manufacturers' marketing activities to be a "closer
9  question," but, noting that the "Michigan Supreme Court in *Smith* announced its current expansive
10 view of the exemption," he was "not persuaded that the distinction between branded and
11 unbranded marketing is sufficient to push Monroe's allegations beyond the reach of MCPA §
12 445.904(1)(a)." He dismissed the MCPA claims against all defendants. *Id*. at 690-91.

13 Plaintiffs rely on *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab.
14 Litig*., 288 F. Supp. 3d 1087, 1248 (D.N.M. 2017). There, in handling a MDL regarding claims
15 that defendants used deceptive "descriptors" in advertising their cigarettes as "Natural" and "100%
16 Additive Free," the court found that the MCPA exemption did not apply. The court explained that
17 it "cannot properly focus on whether the purported deception was authorized, but instead must
18 properly focus on whether the labeling and advertising was specifically authorized," which it
19 concluded was not under the federal statute at issue. *Id*. at 1248. The court found the *Flanagan*
20 case unpersuasive because "its conclusion rests on the 'FTC's regulatory scheme impliedly
21 authoriz[ing]' the descriptors" at issue there. *Id*. The *In re Santa Fe Nat. Tobacco Co*. court
22 disagreed and concluded that the MCPA exemption would apply only upon "specific
23 authorization" and not on "implicit authorization" by the federal regulations. *Id*. Because the use
24 of Natural and 110% Additive Free were not specifically authorized by the federal regulations, the
25 claims did not fall within the MCPA exemption. *Id*. ("Moreover, even if the [federal] statute
26 encompassed implicit authorization, the Court concludes that the Supreme Court of Michigan
27 would not read its safe harbor so expansively to exclude MCPA claims merely because the federal
28 government had regulated in the area.").

1    Plaintiffs do not explain how their claims about deceptive or misleading marketing fall outside the exemption, except to focus on their theme that this case is different because defendants targeted AI/NAs in general with knowledge that these communities have a higher use of nicotine products than others in the general population.  Given the breadth of the scope of the exemption as explained by the Michigan Supreme Court and interpreted by courts in Michigan, I agree with defendants that their conduct falls within the exemption.

 The motion to dismiss the MCPA claim is GRANTED.  That claim is DISMISSED WITH PREJUDICE.[2]

### VII. PERSONAL JURISDICTION

The Other Director Defendants (ODDs) move to dismiss because there are not sufficient facts alleged to assert personal jurisdiction over them for the claims asserted by the Tribes under New York or Michigan law.  They contend that the Tribes are required to show but have not shown that the ODD conduct was "specifically targeted" at SRMT or the Grand Traverse Band.

These arguments are foreclosed by my prior determination that personal jurisdiction exists over the ODDs for a range of government entity and personal injury plaintiff claims.  *See JUUL II*, 533 F. Supp. 3d at 861 ("With added allegations about Pritzker, Huh, and Valani's [ ] numerical control of the Board, knowledge about JUUL's youth appeal and the growth of underage users, significant involvement in marketing decisions, and unusually active roles in management and decisions from which they profited billions of dollars, plaintiffs sufficiently allege the Other Director Defendants' personal participation to maintain the RICO and state law claims asserted against them. Personal jurisdiction is also proper given the Other Director Defendants' personal participation and their forum-related contacts as directors of a San Francisco-based company."); *JUUL III*, 2021 WL 3112460, at *16  (rejecting ODD challenge to personal jurisdiction).  The ODDs identify no facts that would distinguish the claims or situations of the Tribes from the Government Entities or personal injury plaintiffs for purposes of the personal jurisdiction analysis,

---

[2] Accordingly, I need not address Bowen's separate argument that the claim must be dismissed because the Grand Traverse Band does not adequately allege that it relied on specific actionable omissions or representations made by Bowen, an argument joined by Monsees.

or any reason under Michigan or New York law that would compel a different conclusion with respect to the Tribes' complaints.

The motion to dismiss based on personal jurisdiction is DENIED.

## CONCLUSION

The motions to dismiss are DENIED, except that the Grand Traverse Band's negligence claim is dismissed WITH LEAVE TO AMEND and its MCPA claim is dismissed WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: January 28, 2022



William H. Orrick
United States District Judge