BOERSCH & ILLOVSKY LLP
Martha Boersch (State Bar No. 126569)
martha@boersch-illovsky.com
Eugene Illovsky (State Bar No. 117892)
eugene@boersch-illovsky.com
Matthew Dirkes (State Bar No. 255215)
matt@boersch-illovsky.com
Kevin Calia (State Bar No. 227406)
kevin@boersch-illovsky.com
Sharon Frase (State Bar No. 282923)
sharon@boersch-illovsky.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
Adam Bowen

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| This Document Relates To:<br><br>*ROBERTO PESCE v. JUUL LABS, INC., et al.;* Case No. 3:20-cv-02658-WHO | **DEFENDANT ADAM BOWEN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON FIRST AMENDED COMPLAINT – PESCE; MEMORANDUM OF LAW IN SUPPORT**<br><br>**[PUBLIC VERSION – REDACTED]**<br><br>Judge: Hon. William H. Orrick<br>Date:<br>Time:<br>Ctrm: 2, Floor 17 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on a date and at a time to be set by the Court, in the Courtroom of the Honorable William H. Orrick of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendant Adam Bowen will and hereby does move for summary judgment on the First Amended Complaint filed in *ROBERTO PESCE v. JUUL LABS, INC., et al.;* Case No. 3:20-cv-02658-WHO.

This Motion is based on this Notice of Motion, the Memorandum of Law, and Declaration of Sharon Frase served concurrently herewith, any Reply Memorandum, the Motions for Summary Judgment filed by other defendants and the Memoranda of Law filed in support thereof, the pleadings and files in this MDL, and such additional pleadings, evidence or argument as may be presented at or before the hearing on this matter.

Dated: March 21, 2022

BOERSCH & ILLOVSKY LLP
MARTHA A. BOERSCH
EUGENE ILLOVSKY
MATTHEW DIRKES
KEVIN CALIA
SHARON FRASE

*/s/Eugene Illovsky*__________________
Eugene Illovsky

Attorneys for Defendant
Adam Bowen

## TABLE OF CONTENTS


I. STATEMENT OF ISSUES TO BE DECIDED ..... 1
II. INTRODUCTION ..... 1
III. FACTUAL BACKGROUND ..... 3
  A. Plaintiff Pesce ..... 3
  B. Defendant Adam Bowen ..... 4
  C. Plaintiff Had No Interactions With Bowen ..... 5
IV. ARGUMENT ..... 5
  A. Connecticut Law Applies ..... 6
  B. The CPLA Governs All of Plaintiff's Claims ..... 6
  C. Bowen Cannot Be Liable Under the CPLA ..... 7
  D. Plaintiff's CPLA Claims Are Time-Barred ..... 9
  E. No Evidence Supports Plaintiff's Theories of Liability Against Bowen ..... 9
    1. Bowen is Not Liable Under the CPLA for Fraud ..... 10
    2. Bowen is Not Liable Under the CPLA for Negligent Misrepresentation ..... 11
    3. Bowen Cannot Be Liable Under the CPLA for Fraudulent Concealment ..... 11
    4. Bowen is Not Liable for Civil Conspiracy ..... 12
    5. Bowen is Not Liable Under the CPLA for Negligent Failure to Warn ..... 12
    6. Bowen is Not Liable Under the CPLA for Negligent Design or Manufacturing ..... 13
  F. Defendants Are Entitled To Summary Judgment On Their Defenses ..... 13
    1. Pesce's Injuries Arise Largely From His Unclean Hands ..... 14
    2. No Obligation To Warn Pesce Of Obvious Dangers ..... 15
    3. Pesce Was Negligent Per Se ..... 16
V. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ..... 5

*Bifotek v. Phillip. Morris, Inc.*,
324 Conn. 402, 152 A.3d 1183 (2016) ..... 7

*Brown v. Otake*,
164 Conn. App. 686, 138 A.3d 951 (2016) ..... 11

*Calve v. Santagata*,
No. FSTCV196042584S, 2020 WL 658696 (Conn. Super. Ct. Jan. 10, 2020) ..... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 5

*Densberger, et al. v. United Techs. Corp.*,
297 F.3d 66 (2d Cir. 2002) ..... 6

*Essam v. New York, N. H. & H. R. Co.*,
140 Conn. 319, 99 A.2d 138 (1953) ..... 16

*Fraser v. Wyeth, Inc.*,
857 F. Supp. 2d 244 (D. Conn. 2012) ..... 8, 12

*Gerrity v. R.J. Reynolds Tobacco Co.*,
263 Conn. 120, 818 A.2d 769 (2003) ..... 6

*Gleeson v. Rust-Oleum Corp.*,
No. 3:11cv60, 2013 WL 11331281 (D. Conn. Sept. 16, 2013) ..... 8

*Gonzalez v. Asnat Realty, LLC*,
No. CV156051564, 2018 WL 3504798 (Conn. Super. Ct. July 2, 2018) ..... 14

*Greenwald v. Van Handel*,
311 Conn. 370, 88 A.3d 467 (2014) ..... 14, 15

*Habetz v. Condon*,
224 Conn. 231 (1992) ..... 14

*Hunte v. Abbott Labs., Inc.*,
No. 3:20-cv-1626 (DRU), 2021 WL 3679303 (D. Conn. Aug. 19, 2021) ..... 10

*Hurley v. Heart Physicians, P.C.*,
278 Conn. 305 (2006) ..... 16

*Iragorri v. United Technologies Corp.*,
285 F. Supp. 2d 230 (D. Conn. 2003)....8

*Jacobs v. Swift & Co.*,
141 Conn. 276, 105 A.2d 658 (1954)....16

*Johannsen v. Zimmer, Inc.*,
No. 3:00CV2270, 2005 WL 756509 (D. Conn. Mar. 31, 2005)....6, 8, 13

*Karazin v. Wright Medical Technology, Inc.*,
No. 3:17cv823, 2018 WL 4398250 (D. Conn. Sept. 14, 2018)....13

*Lamontagne v. E.I. Du Pont de Nemours & Co., Inc.*,
834 F.Supp. 576 (D. Conn. 1993)....7

*Lastrina v. Bettauer*,
No. C186099654S, 2020 WL 8265792 (Conn. Super. Ct. Dec. 11, 2020)....14, 15

*Leonard v. General Motors L.L.C.*,
504 F. Supp. 3d 73 (D. Conn. 2020)....9

*McNeil v. Yale University*,
436 F. Supp. 3d 489 (D. Conn. 2020)....11

*Moss v. Wyeth, Inc.*,
872 F. Supp. 2d 162 (D. Conn. 2012)....12

*Nazemi v. Patrons Mutual Insurance Co.*,
280 Conn. 619, 910 A.2d 209 (2006)....11

*Normandy v. American Medical Systems, Inc.*,
262 A.3d 698 (Conn. 2021)....7

*Omega Engineering, Inc. v. Eastman Kodak Co.*,
30 F. Supp. 2d 226 (D. Conn. 1998)....10

*Philadelphia Indemnity Ins. Co. v. Lennox Industries, Inc.*,
No. 3:18-cv-00217, 2020 WL 705263 (D. Conn. Feb. 12, 2020)....8

*Pirreca v. Koltchine*,
No. CV095025754S, 54 Conn. L. Rptr. 307 (Lager, J. 2012), 2012 WL3264026....11

*Plenger v. Alza Corp.*,
11 Cal. App. 4th 362 (1992)....16

*Potter v. Chicago Pneumatic Tool Co.*,
694 A.2d 1319 (Conn. 1997)....8

*Reid v. Landsberger*,
123 Conn. App. 260, 1 A.3d 1149 (2010)....11

*Stuart v. Snyder*,
125 Conn. App. 506, 8 A.3d 1126, 2010 Conn. App. LEXIS 556 (Conn. App. Ct. 2010) .............12

*Suffield Development Associates Ltd. Partnership v. National Loan Investors, L.P.*,
260 Conn. 766, 802 A.2d 44 (Conn. 2002).............................................................................10

*Thornhill Publishing Co., Inc. v. GTE Corp.*,
594 F.2d 730 (9th Cir. 1979) .......................................................................................................5

*Torres v. Melody*,
No. CV91 009 87 65, 1992 WL 33699 (Conn. Super. Ct. Feb. 13, 1992) .................................16

*Truglio v. Hayes Construction Co.*,
785 A.2d 1153 (Conn. App. 2001) ...............................................................................................8

*Ullmar v. Robco Group., Inc.*,
No. 379465, 1992 WL 38315 (Conn. Super. Ct Feb, 18, 1992).....................................................7

*Walters v. Howmedica Osteonics Corp.*
676 F. Supp. 2d 44 (D. Conn. 2009)...........................................................................................10

*Winslow v. Lewis-Shepard, Inc.*,
212 Conn. 462, 562 A.2d 517 (1989) ...........................................................................................6

*Wyeth v. Levine*,
555 U.S. 555 (2009).....................................................................................................................12

**Statutes**

Conn. Gen. Stat. § 19a-342a(b)(1)..............................................................................................18

Conn. Gen. Stat. § 21a-266.........................................................................................................17

Conn. Gen. Stat. § 52-217...........................................................................................................19

Conn. Gen. Stat. § 52-572(o) .......................................................................................................19

Conn. Gen. Stat. § 52-572m.................................................................................................6, 8, 10

Conn. Gen. Stat. § 52-572n.......................................................................................................7, 10

Conn. Gen. Stat. § 52-572q..........................................................................................................14

Conn. Gen. Stat. § 52-595.......................................................................................................13, 14

Conn. Gen. Stat. § 53-344b(b) .....................................................................................................18

Conn. Gen. Stat. § 53-344b(c) ......................................................................................................17

**Other Authorities**

2014 Conn. Legis. Serv. P.A. 14-76 (S.B. 24) (eff. Oct. 1, 2014) .....15

2019 Conn. Legis. Serv. P.A. 19-13 (H.B. 7200) (eff. Oct. 1, 2019) .....15

Restatement (Second) of Torts § 388(b) & cmt. k (1965) .....16

**Rules**

Fed. R. Civ. P. 56(a) .....5

**Regulations**

44 Fed. Reg. 2996 (1979) .....8

## I. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Connecticut law applies to Plaintiff Roberto Pesce's claims.

2. Whether Defendant Adam Bowen is entitled to summary judgment because there is no evidence he meets the statutory definition of "seller" under the Connecticut Products Liability Act. Conn. Gen. Stat. § 52-572m, *et seq*. ("CPLA")

3. Whether Defendant Adam Bowen is entitled to summary judgment because the claims are barred by the applicable statute of limitations.

4. Whether Defendant Adam Bowen is entitled to summary judgment because there is no evidence creating a genuine issue of material fact to support Plaintiff's fraud and misrepresentation claims against him.

5. Whether Defendant Adam Bowen is entitled to summary judgment on Plaintiff's fraudulent concealment claims against him because Connecticut law does not recognize such claims as standalone causes of action.

6. Whether Defendant Adam Bowen is entitled to summary judgment on Plaintiff's fraudulent conspiracy claims because it relies completely on the viability of his defective fraud claim.

7. Whether Defendant Adam Bowen is entitled to summary judgment because there is no evidence creating a genuine issue of material fact to support Plaintiff's negligence claims.

8. Whether Defendants are entitled to summary judgment because Plaintiff Roberto Pesce's alleged injuries arise from his unclean hands, because JLI had no need to warn him of obvious dangers, and because he was negligent per se.

## II. INTRODUCTION

Plaintiff Robert Pesce's First Amended Complaint ("Complaint") is based on allegations that JUUL products manufactured, marketed, and sold by Juul Labs, Inc. ("JLI") caused his addiction and other injuries. The Complaint names Defendant Adam Bowen ("Bowen"), JLI's former Chief Technology Officer and a member of JLI's board of directors, in six causes of action sounding in negligence and fraud. First, under choice of law rules, Connecticut law and, in particular, the CPLA, governs this action. Second, this Court has previously held, regarding a different bellwether

personal injury plaintiff, that the CPLA covers and limits the types of product-related claims that can be stated against the individual defendants. (ECF 2144 at 14-15, 28.) That law of the case applies here, where the claims also all arise entirely from Plaintiff's use of the JUUL Product. Plaintiff must therefore proceed with one unified claim for personal injury damages, with his common law claims serving as separate "theories" of liability under CPLA.

Regardless of the particular theory, Plaintiff must meet the CPLA's statutory elements, which include proving Bowen was a "seller" of JUUL Products as the Connecticut legislature defined that term. He cannot do so. In addition, this Court has held that Bowen cannot be held strictly liable under statutes like the CPLA. The same definition of "seller" that applies to strict liability claims under the CPLA applies to negligence claims or other liability theories. Nothing in the statute or decisions applying it supports imposing negligence-based liability for defective or unreasonably dangerous products on the individual employees or officers of the manufacturer of those products. In addition, under the statute of limitations that governs CPLA claims, Plaintiff brought this action too late.

Apart from whether Bowen is a "seller" under the CPLA, and even if Plaintiff's action is not time-barred, summary judgment is warranted on Pesce's misrepresentation theories of liability alleged against Bowen. There is no evidence Pesce saw or relied on any statements by Bowen nor, for that matter, is there evidence that Pesce relied on any statements by JLI. In addition, Connecticut does not recognize independent fraudulent concealment claims. The fraud conspiracy theory cannot survive in the absence of a valid underlying fraud theory. Summary judgment should also be entered on the negligence theories, which are grounded in products liability: they claim defendants negligently designed and manufactured JUUL Products, and negligently failed to warn Pesce about the alleged dangers of those products. Connecticut imposes these duties on manufacturers of products, not corporate officers such as Bowen.

Finally, summary judgment is warranted as to three affirmative defenses for which there is no disputed issue of material fact. For these reasons, and those set forth in memoranda of law filed in support of Defendant JUUL Labs, Inc.'s Motion for Summary Judgment ("JLI Motion"), in the

Non-Management Director Defendants' Motion for Summary Judgment Against Roberto Pesce (Personal Injury) ("NMD Motion"), and in James Monsees' Motion for Summary Judgment Regarding Plaintiff Roberto Pesce's First Amended Complaint (Personal Injury) ("Monsees Motion"), which Bowen joins, summary judgment should be entered.

## III. FACTUAL BACKGROUND

### A. Plaintiff Pesce

[redacted]. (Ex. A at 28[1]; *see* Ex. B (verifying information in Nov. 9, 2021 Fact Sheet).)[2] [redacted]. (Ex. C at 72:2-16, 73:7-74:7.) [redacted]. (*Id*. at 78:17-19.) [redacted]. (*Id*. at 79:10-13; 20-24.)

[redacted]. (*Id*. at 94:11-95:18; *see* 96:21-97:8 ([redacted]); Ex. A at 12 ([redacted]); Ex. D at Roberto_Pesce000381 [redacted]).) [redacted]. (Ex. C at 98:1-3.)

[redacted]. (Ex. E.). [redacted]. (Ex. C at 82:6-22.) [redacted] (*Id*. at 83:15-18; *see also id*. at 124:1-2.) [redacted]. (*Id*. at 86:2-11, 88:13-17, 131:15-

[1] "Ex. [#]" refers to the exhibits cited in and attached to the contemporaneously filed Declaration of Sharon Frase in Support of Adam Bowen's Mot. for Summary Judgment on First Amended Complaint – Pesce."

[2] [redacted]. (Ex. A at 28.)

134:10; Ex. F at JLIDFS0000515); Ex. A at 10-11.) [redacted]. (Ex. C at 138:1-139:10; Ex. G at Roberto_Pesce_000760.)

[redacted]. (Ex. C at 90:12-91:19; *see id.* at 134:19-136:18; Ex. H at JLIDFS0000519.)[3] [redacted] (Ex. C at 142:5-23.) [redacted]. (*Id.* at 123:3-124:16; Ex. E.).

**B. Defendant Adam Bowen**

There is no evidence Bowen manufactures JUUL products, or that he had managerial responsibility over the internal and external teams that manufactured JUUL products. Similarly, there is no evidence Bowen is in the business of selling JUUL products, or that he had managerial responsibility over the internal and external teams responsible for the sales and distribution of JUUL products either at retail stores or through JLI's website. As the Monsees Motion states, it is undisputed that JLI—not Bowen—"owns, manufactures, and sells the JUUL device."

Nor is there evidence that Bowen was responsible for marketing or advertising for the JUUL product, or for determining the language of warnings on the products. Plaintiff can identify nothing in the record demonstrating Bowen had operational responsibility in the marketing function, or that he developed JLI's marketing and advertising materials. (*See also* Ex. I at 180:9-22.) Nor is there any evidence Bowen created any of the content on JLI's website.

Plaintiff can point to no evidence that Bowen supervised or directed the team that developed the packaging for the JUUL product, including any text. [redacted]. (Exs. J and K.)

---

[3] [redacted] (Ex. C at 90:12-18.)

### C. Plaintiff Had No Interactions With Bowen

[redacted]. (Ex. L at No. 2. ("[redacted].").) Plaintiff does not allege that Pesce ever purchased products from Bowen.

[redacted]. (Ex. A at 12.) [redacted]. (*Id.* at 10-11.)

## IV. ARGUMENT

Summary judgment on a claim or defense is warranted "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party need only point to the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the party opposing summary judgment to identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). While the Court draws all reasonable factual inferences in favor of the non-movant, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. Conclusory and speculative testimony does not raise genuine issues. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Connecticut law applies to Plaintiff's claims. Plaintiff must thus proceed under the CPLA, and Bowen is not liable because he is not a "seller" as that term is defined under the statute. Summary judgment on all claims is therefore warranted. Even if the CPLA did allow Plaintiff to recover against a corporate officer such as Bowen, this particular Plaintiff cannot do so. The negligence theories Plaintiff asserts amount to product liability claims such as negligent manufacture

and design, negligent failure to warn, and negligent inspection/testing, and Connecticut does not impose any of those duties on corporate officers such as Bowen. Because there is no evidence Plaintiff relied on any statements by JLI, much less by Bowen, he cannot recover under theories of negligent misrepresentation and fraud, and fraudulent omission is not a recognized claim.

**A. Connecticut Law Applies**

[redacted]. Connecticut law applies to his claims for the reasons articulated in the JLI Motion, the NMD Motion, and the Monsees Motion. Bowen joins and incorporates those arguments into his motion.

**B. The CPLA Governs All of Plaintiff's Claims**

Under Connecticut law, Plaintiff must proceed under the CPLA, which subsumes and incorporates his common law negligence and fraud claims. *See Winslow v. Lewis-Shepard, Inc.*, 212 Conn. 462, 471, 562 A.2d 517, 518 (1989) (CPLA is "exclusive remedy for claims falling within its scope."); Conn. Gen. Stat. § 52-572m(b) (defining product liability claims broadly to include, but not be limited to, all actions based on "[s]trict liability in tort; negligence, . . . misrepresentation or nondisclosure, whether negligent or innocent"); *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 127-28, 818 A.2d 769, 773-74 (2003) ("[A] product liability claim under the act is one that seeks to recover damages for personal injuries . . . caused by the defective product."). Indeed, in considering personal injury claims brought by a different bellwether plaintiff who resides in Connecticut, this Court held that the CPLA was the sole and exclusive path to recover any damages arising from injuries allegedly caused by JUUL products. (ECF 2144 at 15-16, 28.) The statute "bars separate common law causes of action in product liability cases." *Densberger, et al. v. United Techs. Corp.*, 297 F.3d 66, 70 (2d Cir. 2002). This is true of the fraud claims, in addition to the negligence claims. *See Johannsen v. Zimmer, Inc.*, No. 3:00CV2270, 2005 WL 756509, at *10 (D. Conn. Mar. 31, 2005) (excluding Plaintiff's fraud claim because it arose "out of his personal injuries as allegedly caused by inaccurate or fraudulent marketing, packaging or labeling"). Bowen also joins in and incorporates by reference the arguments on this point in the JLI, NMD, and Monsees Motions.

### C. Bowen Cannot Be Liable Under the CPLA

The proper place to begin analyzing *any* of Plaintiff's claims is the CPLA's language. *Lamontagne v. E.I. Du Pont de Nemours & Co., Inc.*, 834 F.Supp. 576, 588-89 (D. Conn. 1993) ("[I]n analyzing the plaintiffs' claims, we look first [to] the CPLA and – where that statute is silent – we look to Connecticut common law for guidance."). That language imposes liability *only* on "sellers." Conn. Gen. Stat. § 52-572n(a) (A "product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers . . . for harm caused by a product."); *Ullmar v. Robco Grp., Inc.*, No. 379465, 1992 WL 38315, at *1 (Conn. Super. Ct. Feb, 18, 1992) ("The law is well-settled that where a person is not a product seller, he is not subject to liability under the Product Liability Act."); *Bifotek v. Phillip. Morris, Inc.*, 324 Conn. 402, 434, 152 A.3d 1183, 1202 (2016) ("All such [product liability] claims . . . are governed by the same elements," the first of which is that "the defendant was engaged in the busines of selling the product"). The CPLA defines a "seller" as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." § 52-572m(a). The question whether a defendant is a product seller under the statute is ordinarily a question of law for the court. *See Normandy v. Am. Med. Sys., Inc.*, 262 A.3d 698, 709 (Conn. 2021).

There is no evidence to support the conclusion that Bowen is a "seller" under the statute.[4] *See supra* Part III.B. Nor can there be. Bowen, as an individual employee and officer, worked inside a company that is in the business of selling JUUL products; he did not operate as a separate entity from JLI. (*See* ECF 2751 (Order on Other Director Defendants' Second Motion to Dismiss Personal Injury Bellwether Complaints (Jan. 6, 2022) (observing there was not authority under Mississippi law allowing a different bellwether personal injury plaintiff to separately sue the Other Director Defendants "in addition to JLI (the manufacturer) when all of the conduct alleged against the ODDs that resulted in personal injuries related to product use was taken through JLI.").) Bowen was not, *himself*, "in the business" of selling JUUL products and plaintiff can point to no evidence

[4] Bowen also joins in and incorporates by reference the arguments on this point in the NMD and Monsees Motions.

that he was. *Iragorri v. United Techs. Corp.*, 285 F. Supp. 2d 230 (D. Conn. 2003), *vacated, in part, on other grounds by* 314 F. Supp. 2d 110 (D. Conn. 2004) (granting summary judgment on products liability claim against defendant subsidiary where plaintiff presented no evidence showing subsidiary placed elevator in the stream of commerce).

No case has found an individual corporate officer like Bowen to be a "seller" under the CPLA. Evidence that Bowen works for JLI, even evidence that he was involved in the design of components or parts of the JUUL product, does not make him a manufacturer of the JUUL Product, and it certainly doesn't make him a seller as defined by the CPLA. (*See supra* Part III.B.) Indeed, no case applying the CPLA holds that the officers or employees of the seller are all to be deemed the "seller" of the company's product. *See Truglio v. Hayes Const. Co*., 785 A.2d 1153, 1156 (Conn. App. 2001) (where the "essence of the relationship between the defendant and the buyer was . . . not the sale of a product," the defendant is not a "seller" within the CPLA).

The CPLA's definition of "product seller" is "identical to the definition provided by § 102(1) of the Draft Uniform Product Liability Law." *Truglio*, 785 A.2d at 1156; *see also Potter v. Chicago Pneumatic Tool Co.*, 694 A.2d 1319, 1338 (Conn. 1997). According to the commentary for that section, the term "[p]roduct seller" includes "all parties in the regular commercial distribution chain." 44 Fed. Reg. 2996, 3003 (1979). In other words, "product seller[s]" are those who place a product "into the stream of commerce." *Gleeson v. Rust-Oleum Corp.*, No. 3:11cv60, 2013 WL 11331281, at *4 (D. Conn. Sept. 16, 2013). Consistent with this legislative history, the typical "sellers" in CPLA cases are manufacturers and other entities down the chain of distribution from the manufacturer that distribute and make a market for the products. *Fraser v. Wyeth, Inc.*, 857 F. Supp. 2d 244, 256 (D. Conn. 2012) (drug manufacturer); *Johannsen v. Zimmer, Inc.*, No. 3:00CV2270 (DJS), 2005 WL 756509, at *8 (D. Conn. Mar. 31, 2005) (hip prothesis designer and manufacturer); *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-cv-00217, 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020) (furnace and blower motor manufacturers).

This Court has held that individuals, including Bowen, cannot be strictly liable for product defects under statutes like the CPLA because such liability was "statutorily limited" and "does not

stretch to individuals like the Founder Defendants who worked exclusively inside the corporate defendant to bring the product to market." (ECF 2144 at 26.) The import of the Court's prior ruling is that, for purposes of strict liability claims, Bowen was not a "seller" under the CPLA. He cannot be a "seller" for a negligence-based product liability claim either. The same rationale applies, namely that he "worked exclusively inside the corporate defendant" and did nothing separate apart from the corporate structure to bring the product into the stream of commerce. (*See* ECF 2751 at 4 ("Simply because I concluded the ODDs were functionally aligned with the manufacturer (JLI) does not mean that they could be separately sued for their conduct under the MPLA. It did not give plaintiffs a route to assert claims against the ODDs outside the [statute products liability statute] either, when the Odds were acting through the manufacturer.").)

Indeed, the CPLA contains only one definition of "seller," § 52-572m (a), which necessarily applies whether a plaintiff's claims arise under strict liability, negligence, warranty, or any other bases. *See* § 52-572m(b) (product liability claim includes "all actions based on the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent."); *id.* § 52-572m (defining terms for that section and section 52-572n). There is no basis for Plaintiff to contend Connecticut courts would find the term "seller" in the CPLA means one thing for strict liability claims, another for negligence claims, and so on. *See, e.g.*, *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 93 (D. Conn. 2020) ("Before turning to those theories [of liability], I address the threshold question whether Defendants qualify as 'product sellers' under the CPLA.").

**D. Plaintiff's CPLA Claims Are Time-Barred**

Bowen joins and incorporates by reference the argument in JLI's Motion that Pesce's claims fall outside the applicable limitations period.

**E. No Evidence Supports Plaintiff's Theories of Liability Against Bowen**

Even if there were evidence that Bowen met the statutory definition of a product seller, and even if the CPLA claim were timely, Plaintiff must still come forward with proof of the elements for his various theories of liability. *Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 48 (D.

Conn. 2009) (independently addressing each sub-claim of strict liability, negligence, breach of warranty and punitive damages brought under single unified CPLA claim). Plaintiff has not met this burden as to Bowen.

**1. Bowen is Not Liable Under the CPLA for Fraud**

To prevail on his fraud theory, Plaintiff must show "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Suffield Development Assocs. Ltd. Partnership v. National Loan Investors, L.P.*, 260 Conn. 766, 777, 802 A.2d 44, 51 (Conn. 2002). Recovery is precluded if Plaintiff cannot prove any one of these elements. *Omega Engineering, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 251 (D. Conn. 1998); *Hunte v. Abbott Labs., Inc.*, No. 3:20-cv-1626 (DRU), 2021 WL 3679303, at *7 (D. Conn. Aug. 19, 2021) (Because the CPLA does not "alter the substance of a plaintiff's rights . . . any sub-claim brought under the CPLA . . . must sufficiently allege all elements that would be required at common law.") (internal quotations and citations omitted).

There is no evidence in the record on which to base a finding that Pesce relied on any particular statements or omissions by Bowen himself. [redacted]. (*See supra* Part III.C ([redacted]).) That alone should end the inquiry.

To the extent Plaintiff claims Bowen is individually liable for the false statements and omissions of others, these claims fail as a matter of law for the reasons stated in the JLI, NMD and Monsees Motions, which Bowen joins and incorporates by reference into his motion. As the other Defendants explain, an officer or director like Bowen cannot be liable for the statements of a company merely because of his corporate position. Furthermore, Plaintiff has not established Pesce relied to his detriment on any particular statement from JLI, much less a purportedly false or incomplete one. There is, therefore, no evidence on which the trier of fact can conclude the allegedly deficient warnings caused Pesce's injuries. *Hunte*, 2021 WL 3679303, at *11. Summary judgment should be granted on the fraud theory.

**2. Bowen is Not Liable Under the CPLA for Negligent Misrepresentation**

To prevail on a negligent misrepresentation theory of liability, Plaintiff must show (1) that the defendant made a misrepresentation of fact; (2) that the defendant knew or should have known was false; (3) that the plaintiff reasonably relied on the misrepresentation and thus (4) suffered pecuniary harm. *See McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 536 (D. Conn. 2020) (*citing Nazemi v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006)). Plaintiff's negligent misrepresentation theory of liability arises from the same allegedly false representations regarding JUUL Product safety, nicotine equivalence, nicotine content, and natural flavorings alleged for the fraud theory. *Compare* Compl. at ¶ 844 with *id.* at ¶ 864 (identifying the same allegedly false representations regarding JUUL Products as both negligently and intentionally made); *see also Reid v. Landsberger*, 123 Conn. App. 260, 281, 1 A.3d 1149, 1163 (2010) ("A cause of action for intentional misrepresentation is essentially a claim of fraud."). Similar to the fraud theory, summary judgment is warranted on the negligent misrepresentation theory because there is no genuine issue of fact as to whether Plaintiff relied on any representations by Bowen. Additionally, as argued in the JLI, NMD and Bowen Motions, which Bowen joins, there is no evidence Plaintiff actually relied on any of the allegedly negligent misrepresentations at issue, or that his reliance was reasonable.

**3. Bowen Cannot Be Liable Under the CPLA for Fraudulent Concealment**

Connecticut law does not recognize fraudulent concealment as an independent basis of liability. *Pirreca v. Koltchine*, No. CV095025754S, 54 Conn. L. Rptr. 307 (Lager, J. 2012), 2012 WL3264026, at *2 ("The doctrine of fraudulent concealment does not give rise to an independent cause of action."); *Calve v. Santagata*, No. FSTCV196042584S, 2020 WL 658696, at *3 (Conn. Super. Ct. Jan. 10, 2020) (quoting *Pirreca*). The common law rule in Connecticut, that fraudulent concealment was an avoidance of an affirmative defense of the statute of limitations, has been codified at section 52-595 of the General Statutes. *See Brown v. Otake*, 164 Conn. App. 686, 138 A.3d 951 (2016).

Section 52-595 states that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to

accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Pesce has not come forward with any evidence showing a genuine issue of material fact regarding any actions Bowen took to fraudulently conceal Pesce's cause of action. *See Stuart v. Snyder*, 125 Conn. App. 506, 8 A.3d 1126, 2010 Conn. App. LEXIS 556 (Conn. App. Ct. 2010) (summary judgment warranted where plaintiff failed to present any evidence in support of the assertion that issues of fact existed as to whether statutory 3-year limitations period was tolled by defendant's fraudulent concealment of plaintiff's cause of action).

**4. Bowen is Not Liable for Civil Conspiracy**

Bowen joins and incorporates by reference those arguments in favor of summary judgment on the civil conspiracy theory of liability made in the NMD and Monsees Motions.

**5. Bowen is Not Liable Under the CPLA for Negligent Failure to Warn**

Plaintiff's negligence claim is grounded in part on allegations of negligent failure to warn. (*See, e.g.*, Compl. ¶ 833b.) Summary judgment is appropriate on this theory as to Bowen. The duty to warn consumers about an allegedly dangerous product lies with the manufacturer, not its employees. *Moss v. Wyeth, Inc.*, 872 F. Supp. 2d 162, 173 (D. Conn. 2012) ("whether formulated under a strict liability or a negligence theory, section 52-572q only requires that a manufacturer warn of dangers about which it knew or should have known"); *Wyeth v. Levine*, 555 U.S. 555, 557, 570-71 (2009) ("the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market"); *Fraser v. Wyeth, Inc.*, 857 F. Supp. 2d 244, 255 (D. Conn. 2012) (*quoting Wyeth*). Bowen was not the manufacturer of the JUUL product and thus had no duty to warn Plaintiff of any dangers.

Bowen also joins in the arguments in the NMD and JLI Motions that Plaintiff has not come forward with evidence to show he relied on any warnings. Further, Bowen joins in and incorporates by reference their arguments that, [redacted]. For the reasons they articulate, Bowen is entitled to summary judgment on the negligent failure to warn claim because there is no disputed issue of

material fact as to whether Plaintiff would not have suffered the alleged harm if adequate warnings or instructions had been provided. Finally, Bowen joins in and incorporates by reference JLI's argument that any claim based on a failure to warn about nicotine addictiveness is pre-empted.

**6. Bowen is Not Liable Under the CPLA for Negligent Design or Manufacturing**

Plaintiff can point to no support for the proposition that an officer of a large manufacturer can be liable under Connecticut law for negligent design or manufacturing. Nevertheless, the negligent manufacturing theory of liability also fails because Plaintiff has brought forth no evidence that the JUUL Product was manufactured defectively. Bowen joins in, and incorporates by reference, JLI's arguments on this point made in support of JLI's motion for summary judgment on the strict liability-manufacturing defect claims. For the reasons JLI sets forth, there is nothing in the record to support the contention that JLI's manufacturing efforts were flawed or below standard in any respect. The Complaint does not allege any manufacturing defects. If anything, Plaintiff claims the JUUL Product worked exactly as it was designed and intended. (*See, e.g.*, Compl. ¶ 76 ("JLI engineered a cool-looking e-cigarette device capable of delivering more nicotine and fuelin higher levels of consumer addiction than ever before.")) "A product can be manufactured correctly, according to all designs and regulations, and yet be defective – but the defect would not be the result of a manufacturing failure." *Johannsen v. Zimmer, Inc.*, No. 3:00CV2270, 2005 WL 756509, at *8 (D. Conn. Mar. 31, 2005). Having failed to establish a manufacturing defect, Plaintiff has also failed to show that the alleged defects were caused by any negligent conduct by Bowen. *Karazin v. Wright Med. Tech., Inc.*, No. 3:17cv823, 2018 WL 4398250, at *7 (D. Conn. Sept. 14, 2018) (dismissing negligence claim when complaint included "no factual support for an inference that negligence caused that manufacturing defect.").

**F. Defendants Are Entitled To Summary Judgment On Their Defenses**

Pesce's alleged injuries are a result of his own wrongful conduct and his claims of injury are from potential dangers that any consumer would have recognized (and that Pesce in fact did recognize).

**1. Pesce's Injuries Arise Largely From His Unclean Hands**

A "deeply rooted principle" of Connecticut law is that "no person may take advantage of his own wrong." *Habetz v. Condon*, 224 Conn. 231, 237 (1992). This principle "has been applied in many diverse classes of cases by both law and equity courts." *Id.* For example, in *Greenwald v. Van Handel*, 311 Conn. 370, 88 A.3d 467 (2014), the Connecticut Supreme Court held that "injuries arising from volitional criminal conduct cannot, as a matter of public policy, provide a basis for recovery." *Id.* at 387 n.10; *see id.* at 387 ("[T]he plaintiff cannot recover for mental distress and economic damages arising from the legal consequences of his admitted serious criminality."). The court explained that "[t]he plaintiff has admitted to conduct that constitutes a serious felony, and such conduct has a direct causal connection to his alleged injuries." *Id.* at 380.[5] Applying *Greenwald*, Connecticut trial courts grant summary judgment in personal injury cases in which the plaintiff's injuries are a result of his own wrongful acts. *See, e.g.*, *Lastrina v. Bettauer*, No. C186099654S, 2020 WL 8265792, at *4 (Conn. Super. Ct. Dec. 11, 2020) (unpublished) ("There is no dispute . . . that Daniel fabricated his experiences and symptoms to two physicians for the express purpose of obtaining a certification to obtain and use a controlled substance in violation of [Conn. Gen. Stat.] § 21a-266, and that his use of the substance caused his injuries."); *Gonzalez v. Asnat Realty, LLC*, No. CV156051564, 2018 WL 3504798 (Conn. Super. Ct. July 2, 2018) (unpublished).

Here, allowing Pesce to recover despite the combined effect of his wrongful conduct would allow him to "take advantage of his own wrong," *Habetz*, 224 Conn. at 237. [redacted]. (*See supra* Part III.A.) His use of the JUUL product involved at least the following wrongful conduct:

---

[5] Connecticut trial courts have noted that "[i]n describing the requisite nature of the plaintiff's conduct in *Greenwald*, the Supreme Court used a number of words and phrases including 'serious felony,' but also 'illegal,' a 'criminal act,' 'illegal conduct,' 'wrongful,' 'conduct that is prohibited,' 'immoral,' 'felonious conduct,' and 'serious criminality.'" *Lastrina v. Bettauer*, No. CIV186099654S, 2020 WL 8265792, at *3 (Conn. Super. Ct. Dec. 11, 2020) (quoting *Greenwald*, 311 Conn. at 378, 380-381, 386-387).

- [redacted]. (*See supra* Part III.A.)
- [redacted]. (*See id.*)
- [redacted]. (*See id.*) [redacted] (*See* Ex. A at 4 ([redacted])). [redacted]. *See* Conn. Gen. Stat. § 53-344b(c); *see also* 2014 Conn. Legis. Serv. P.A. 14-76 (S.B. 24) (eff. Oct. 1, 2014) (setting the age at 18).[6] [redacted]. (*See* Ex. D.)
- [redacted]. (*See supra* Part III.A.) But Connecticut law prohibits the use of any electronic nicotine delivery system or vapor product…within a school building or on the grounds of such school. Conn. Gen. Stat. § 19a-342a(8)(b)(1).[7]

"[A]llowing [Pesce] to seek compensation through the court, notwithstanding [Pesce's] admitted illegal conduct in obtaining [JUUL products], would allow [Pesce] to take advantage of his [own] wrongful conduct, and could 'in effect . . . condone and encourage illegal conduct.'" *Lastrina*, No. CV186099654S, 2020 WL 8265792, at *3 (quoting *Greenwald*, 311 Conn. at 378). "This [a Connecticut] court will not do." *Id.*

**2. No Obligation To Warn Pesce Of Obvious Dangers**

The "obvious danger rule," based on Section 388 of the Restatement (Second) of Torts, "provides that there is no need to warn of known risks under either a negligence or strict liability

[6] The age was raised to 21 on October 1, 2019. *See* 2019 Conn. Legis. Serv. P.A. 19-13 (H.B. 7200) (eff. Oct. 1, 2019). [redacted]. (*See* Ex. A at 4.) [redacted].

[7] [redacted]. (*See supra* Part III.A.) [redacted]. Conn. Gen. Stat. § 53-344b(b); *see also* 2014 Conn. Legis. Serv. P.A. 14-76 (S.B. 24) (eff. Oct. 1, 2014) (setting the age at 18).

theory." *See* Restatement (Second) of Torts § 388(b) & cmt. k (1965).[8] Here, the risks of using JUUL products – particularly, nicotine addiction, which is the alleged injury at the heart of Pesce's case, *see supra* Part III.A – [redacted] There is thus "no triable issue of fact on the adequacy of [JLI's] warnings." *Plenger v. Alza Corp.*, 11 Cal. App. 4th 362 (1992).[9]

**3. Pesce Was Negligent Per Se**

"It is a 'well-established principle that the violation of a statute designed for the protection of the public is in itself negligence irrespective of whether the conduct which constitutes the violation is that of a reasonably prudent person.'" *Torres v. Melody*, No. CV91 009 87 65, 1992 WL 33699, at *3 (Conn. Super. Ct. Feb. 13, 1992) (quoting *Jacobs v. Swift & Co.*, 141 Conn. 276, 279, 105 A.2d 658, 661 (1954)); *see also Essam v. New York, N. H. & H. R. Co.*, 140 Conn. 319, 324, 99 A.2d 138, 141 (1953) ("The violation of the statute was negligence as a matter of law and a substantial factor in causing the collision. The jury could not reasonably have concluded otherwise.").[10] As discussed above, Pesce's alleged injuries are a result of his volitional commission of wrongful acts. (*See supra* Part IV.D.2.) Thus, Pesce acted negligently per se, those negligent actions caused or contributed to his alleged injuries, and any recovery that Pesce receives must be reduced to account for those actions. *See* Conn. Gen. Stat. § 52-572(o).

//

//

//

//

//

---

[8] The Connecticut Supreme Court has relied on this section of the Restatement in the context of a manufacturer's duty to warn. *See Hurley v. Heart Physicians*, P.C., 278 Conn. 305, 316 (2006).

[9] In any event, as the Non-Management Directors set forth in their Memorandum of Law, [redacted]

[10] [redacted], *see supra* Part III.A., he was capable of acting negligently per se, *see* Conn. Gen. Stat. § 52-217.

## V. CONCLUSION

For the reasons stated above and in the motions for summary judgment Mr. Bowen has joined filed by the other defendants, his motion for summary judgment should be granted.

Dated: March 21, 2022

Respectfully submitted,

BOERSCH & ILLOVSKY LLP
MARTHA A. BOERSCH
EUGENE ILLOVSKY
MATTHEW DIRKES
KEVIN CALIA
SHARON FRASE

*/s/ Eugene Illovsky*
Eugene Illovsky

Attorneys for
Defendant Adam Bowen

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I electronically filed the foregoing document using The CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

/s/ Roxanne Vorkoeper