1  [*Submitting Counsel on Signature Page*]

2

3  **UNITED STATES DISTRICT COURT**

4  **NORTHERN DISTRICT OF CALIFORNIA**

5

6  IN RE: JUUL LABS, INC., MARKETING,   Case No. 19-md-02913-WHO
   SALES PRACTICES, AND PRODUCTS
7  LIABILITY LITIGATION                 **DEFENDANTS' OPPOSITIONS TO**
                                        **PLAINTIFF'S MOTIONS IN LIMINE**

8  _____

9  This Document Relates to:

10 *Robin Bain, individually, and as the legal*
   *Guardian of her minor child, B.B. v. Juul Labs,*
   *Inc., et al.*

11 Case No. 3:20-cv-07174

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................III

OPPOSITIONS TO MOTIONS IN LIMINE.............................................................................1

I.       OPPOSITIONS TO GENERIC MOTIONS IN LIMINE .............................................1

         A.       Federal Regulations and Federal Law ...........................................................2

         B.       Advertisements From Other Industries .........................................................4

         C.       JLI's Mission and Related Testimony...........................................................6

         D.       Effect Of A Verdict On Defendants and Society ..........................................9

         E.       Referring to Defendants as "We," "Us," or "Our"......................................10

         F.       References to Personal Lives or Backgrounds of Attorneys.........................11

         G.       Personal Testimonials About JUUL or Smoking by Attorneys and Witnesses
                  .....................................................................................................................12

         H.       Argument or Suggestion by Defense Counsel that They or the Defendants
                  Sympathize with the Plaintiff .....................................................................14

II.      OPPOSITIONS TO B.B.-SPECIFIC MOTIONS IN LIMINE ..................................15

         A.       Family Causation Evidence (II.A) ...............................................................15

         B.       Alternative Causation Evidence ..................................................................16

                  1.       Genetic Predisposition (II.F) ...........................................................16

                  2.       "Improper Character Evidence" (II.G).............................................18

                  3.       Family History (II.H) ......................................................................21

                  4.       T. Bain Criminal Record (Causation) (II.J).....................................22

                  5.       Marital Discord Evidence (Alternative Causation) (II.K)...............24

         C.       Speculation That B.B. Would Have Been a Cigarette Smoker (II.B)...........25

         D.       Further Medical Testing Evidence (II.D) .....................................................26

         E.       Covid-19 (II.E) ...........................................................................................27

         F.       Motivation to File Suit (II.I).......................................................................27

         G.       B.B.'s Preservation Issues (II.C, II.L)..........................................................29

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re 3M Combat Arms Earplug Products Liability Litigation,*
    2021 WL 918214 (N.D. Fla. Mar. 10, 2021) ..................................................... 13, 14, 16, 22

5

6

*In re 3M Combat Arms Earplug Products Liability Litigation,*
    2022 WL 823474 (N.D. Fla. Mar. 19, 2022) .............................................................. 21

7

*Aleman v. Volvo Cars of North America, LLC*, 2020 WL 4742814 (C.D. Cal. Apr.
    15, 2020 ........................................................................................................................ 33

8

9

*Aycock v. R.J. Reynolds Tobacco Co.,*
    769 F.3d 1063 (11th Cir. 2014) ............................................................................. *passim*

10

*Boneta v. Am. Med. Sys. Inc.,*
    2021 WL 6776246 (S.D. Fla. Oct. 7, 2021) ................................................................. 18

11

12

*Boren v. Harrah's Entm't Inc.,*
    2010 WL 4340461 (D. Nev. Oct. 26, 2010) ................................................................. 15

13

14

*Byers v. Lincoln Elec. Co.,*
    2008 WL 4849339 (N.D. Ohio Nov. 6, 2008) ............................................................. 27

15

16

*Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.,*
    2010 WL 2035800 (C.D. Cal. May 19, 2010) .............................................................. 14

17

*Computer Place, Inc. v. Hewlett-Packard Co.,*
    607 F. Supp. 822 (N.D. Cal. 1984), *aff'd*, 779 F.2d 56 (9th Cir. 1985) ..................... 12

18

19

*Conan v. City of Fontana,*
    2017 WL 7795953 (C.D. Cal. Oct. 16, 2017) .............................................................. 31

20

21

*CTIA v. City of Berkeley,*
    487 F. Supp. 3d 821 (N.D. Cal. 2020) .......................................................................... 8

22

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.,*
    2021 WL 5577409 (S.D. Ohio Nov. 30, 2021) ............................................................ 18

23

24

*DeMartini v. DeMartini,*
    833 F. App'x 128 (9th Cir. 2020) ........................................................................... *passim*

25

26

*Denoewer v. UCO Indus., Inc.,*
    2021 WL 4451610 (S.D. Ohio Sept. 29, 2021) ........................................................... 12

27

*Dickens v. Parsec, Inc.,*
    2021 WL 6752305 (N.D. Ga. July 27, 2021) ......................................................... 16, 18

28

*Draper v. Rosario*,
    836 F.3d 1072 (9th Cir. 2016) ........................................................................ 15

*Dutton v. Ascend Learning Holdings, LLC*,
    2017 WL 405612 (D. Mont. Jan. 30, 2017) ...................................................... 28

*Encompass Ins. Co. v. Berger*,
    2013 WL 12124281 (C.D. Cal. Dec. 10, 2013) ................................................. 12

*Espinoza v. Sniff*,
    2015 WL 12660410 (C.D. Cal. May 11, 2015) ................................................. 30

*In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*,
    2017 WL 1278713 (S.D.W. Va. Mar. 31, 2017) ............................................... 21

*Frederick v. Braden*, 2011 WL 5325254 (C.D. Cal. Aug. 31, 2011) ........................................ 33

*Geurin v. Winston Indus., Inc.*,
    316 F.3d 879 (9th Cir. 2002) ................................................................... *passim*

*Johnson v. BLC Lexington SNF, LLC*,
    2020 WL 4355069 (E.D. Ky. July 29, 2020) .................................................... 21

*Keen v. C.R. Bard, Inc.*,
    480 F. Supp. 3d 646 (E.D. Pa. 2020) .............................................................. 32

*Klanseck v. Anderson Sales & Service, Inc.*,
    356 N.W.2d 275 (Mich. Ct. App. 1984) .......................................................... 31

*Koch v. Koch Indus., Inc.*,
    1992 WL 223826 (D. Kan. Aug. 24, 1992) ....................................................... 33

*Monday v. Regions Bank*,
    2010 WL 753327 (M.D. Tenn. Mar. 4, 2010) ..................................................... 7

*Morales v. Kraft Foods Grp., Inc.*,
    2016 WL 11743532 (C.D. Cal. Dec. 2, 2016) ..................................................... 7

*Munoz v. PHH Mortgage Corp.*,
    2022 WL 138674, (E.D. Cal. Jan. 14, 2022) ....................................................... 7

*Musgrave v. Breg, Inc.*,
    2011 WL 4620767 (S.D. Ohio 2011) ............................................................... 13

*Newman ex rel Newman v. McNeil Consumer Healthcare*,
    2013 WL 4460011 (N.D. Ill. Mar. 29, 2013) ...................................................... 8

*Pace v. Nat'l U. Fire Ins. Co. of Pittsburgh*,
    2015 WL 11199154 (N.D. Ga. Feb. 3, 2015) ..................................................... 18

*Pfeifer v. John Crane, Inc.*,
 220 Cal. App. 4th 1270 (Cal. App. 2013) ................................................. 19

*Plyler v. Whirlpool Corp.*,
 751 F.3d 509 (7th Cir. 2014) ................................................... 28, 29

*In re Prempro Prods. Liab. Litig.*,
 2007 WL 3125106 (E.D. Ark. Oct. 24, 2007) ............................................ 16

*Ray by Holman v. BIC Corp.*,
 925 S.W.2d 527 (Tenn. 1996) ............................................................. 8, 14

*Rodman v. Otsuka Am. Pharm., Inc.*,
 2020 WL 2525032 (N.D. Cal. May 18, 2020) ........................................... 8

*Scantlin v. Gen. Elec. Co.*,
 2011 WL 13130835 (C.D. Cal. Apr. 8, 2011) ........................................... 8

*Schmitz v. City of Wilsonville*,
 1999 WL 778586 (D. Or. Sept. 17, 1999) ............................................. 15

*Skaar v. Albuquerque Pub. Sch.*,
 1998 WL 36030840 (D.N.M. Mar. 24, 1998), *aff'd*, 176 F.3d 489 (10th Cir.
 1999) ....................................................................................... 31

*Sprint/United Mgmt. Co. v. Mendelsohn*,
 552 U.S. 379 (2008) ......................................................................... 6

*Swintelski v. Am. Med. Sys. Inc.*,
 2021 WL 3671351 (S.D. Fla. Aug. 10, 2021) ........................................... 18

*Tennison v. Circus Circus Enters., Inc.*,
 244 F.3d 684 (9th Cir. 2001) ............................................................. 10

*Thomas & Marker Const., Co. v. Wal-Mart Stores, Inc.*,
 2008 WL 5119587 (S.D. Ohio Nov. 30, 2008) ........................................... 10

*Turner v. Jordan*,
 957 S.W.2d 815 (Tenn. 1997) ............................................................. 19

*In re Tylenol (Acetaminophen) Marketing*,
 2016 WL 3125428, at *5 (E.D. Pa. June 3, 2016) ................................... 14

*United States v. Abel*,
 469 U.S. 45 (1984) ......................................................................... 26

*United States v. Bonds*,
 2011 WL 13350459 (N.D. Cal. Mar. 7, 2011) ........................................... 22, 23

*United States v. Yagi*,
    2013 WL 10570994 (N.D. Cal. Oct. 17, 2013) ................................................................. 33

*Vincent v. Reyes*,
    2021 WL 4262289 (N.D. Cal. Sept. 20, 2021) ......................................................... 13, 30

*In re Welding Fume Prod. Liab. Litig.*,
    2010 WL 7699456 (N.D. Ohio June 4, 2010) .................................................................. 27

*Wilder v. Eberhart*,
    977 F.2d 673 (1st Cir. 1992) ........................................................................................... 21

*Wilder v. Ethicon, Inc.*,
    2021 WL 4302901 (E.D. Tenn. Sept. 21, 2021) ............................................................. 14

*Wilson v. Hanrahan*,
    2019 WL 1386735 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 804 F. App'x 58 (2d Cir.
    2020) ......................................................................................................................... 7, 32

*In re Wright Med. Tech. Inc.*,
    2015 WL 6690046 (N.D. Ga. Oct. 30, 2015) .................................................................. 12

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab. Litig.*,
    2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) .................................................................. 13

*Yellowstone Women's First Step House, Inc. v. City of Costa Mesa*,
    2018 WL 6167930 (C.D. Cal. Nov. 5, 2018) ........................................................... 13, 31

**Statutes**

21 U.S.C. 387j(a)(4) ............................................................................................................... 6

Tenn. Code Ann. § 29-28-104(a) ........................................................................................... 8

Tenn. Code Ann. §§ 29-28-105(a)-(b) ................................................................................... 8

Tenn. Code Ann. § 29-28-105(b) ........................................................................................... 7

**Rules**

Fed. R. Evid. 401 .................................................................................................................. 10

Fed. R. Evid. 403 ................................................................................................... 9, 26, 28, 32

Fed. R. Evid. 404(a) ............................................................................................................. 23

Fed. R. Evid. 609(a) ............................................................................................................. 26

Fed. R. Evid. 801 .................................................................................................................. 33

Fed. R. Evid. 801(d)(2) ........................................................................................................ 33

Federal Rule of Evidence 402 ........................................................................................................ 20

**Other Authorities**

Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and
    Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco
    Control Act; Restrictions on the Sale and Distribution of Tobacco Products and
    Required Warning Statements for Tobacco Products; Final Rule, 81 Fed. Reg.
    28,974, 29011 (May 10, 2016) (to be codified at 21 C.F.R. pts. 1100, 1140,
    1143)............................................................................................................................ 7, 8

## INTRODUCTION

In contrast to Defendants' focused request to exclude irrelevant and unfairly prejudicial materials in advance of trial, Plaintiff's sweeping motions *in limine* would exclude core probative evidence that is fundamental to the case—including the federal regulatory scheme that is inextricably intertwined with the development and marketing of JUUL, and Defendants' employees and executive's understanding, intent, and reasonable beliefs with respect to the science behind and the public health purposes of their product.

These are not targeted evidentiary objections, but rather a frontal assault on Defendants' ability to present a robust defense at trial on the core issues in the case, while depriving the jury of the full contextual picture that is necessary to render an informed and fair verdict.  And Plaintiff's motions specific to B.B. would essentially strip Defendants of the right to test Plaintiff's use and medical causation theories and write alternative causation out of the case altogether.   The Court should reject this effort to orchestrate a "preordained . . . result" by preventing the jury from hearing any "alternate . . . explanation." *Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 885 (9th Cir. 2002); *DeMartini v. DeMartini*, 833 F. App'x 128, 132 (9th Cir. 2020) (similar).  "[D]efendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069–70 (11th Cir. 2014).    Finally, Plaintiff raises a number of motions that raise issues that are not in dispute, and thus should be denied as moot. The Court should deny each of Plaintiff's motions *in limine*.

## OPPOSITIONS TO MOTIONS IN LIMINE

## I.    OPPOSITIONS TO GENERIC MOTIONS IN LIMINE

As a gating issue, Plaintiff's contention that motions labeled "generic" will be "applicable to ***all cases***" in the MDL, Pl. Br. 1, 7, is misguided and contrary to the parties' agreement.   This MDL includes thousands of personal injury cases, hundreds of public entity and tribal cases, and a number of state-specific putative class actions.  The Court should decide the MILs in the context of specific cases and although Plaintiff's "generic motions" may not be specific issues personal to B.B., all of the motions in limine must be decided in the context of and apply only to the B.B. case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Relevance and prejudice

under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case[.]").  As explained below, the Court should deny the "generic" motions in this case as moot or contrary to law.

### A.      Federal Regulations and Federal Law

Plaintiff's request that the Court "preclude evidence or argument misrepresenting the nature of federal regulation of JUUL products and the effects of federal law" is misguided.  Pl. Br. 1–2.  The regulatory issues surrounding the Tobacco Control Act ("TCA") were a pervasive force shaping JLI's conduct and product.  That statute regulates the marketing, manufacturing, and design of ENDS products like JUUL, and allows the FDA to approve new tobacco products only if they are "appropriate for the protection of the public health," taking into account "the risks and benefits to the population as a whole." 21 U.S.C. 387j(a)(4).  The TCA has thus served as guidepost to JLI even before the Deeming Rule, informing and shaping the conduct pervading this case.  As one of JLI's Officers has explained, the public-health standard incorporated in the TCA has been JLI's "north star for a decade or more." Ex. 1, Cohen Dep. 854:7–18.  Indeed, even Plaintiff's own experts opine extensively about the TCA, *see* ECF No. 2701 at 26 (discussing Lindblom's testimony), underscoring the importance of the regulatory background here.

Excluding any testimony that does not fit with Plaintiff's flawed interpretation of this critical regulatory structure and precluding JLI from presenting evidence at the heart of its decision-making process is improper.  Courts regularly hold that the regulatory framework and how it affected a defendant's decision-making is important information that the jury should know.  *Munoz v. PHH Mortgage Corp.*, 2022 WL 138674, at *3 (permitting evidence of regulatory compliance, and explaining that "[e]vidence that serves as background information about persons, subjects[,] and things in a trial is generally admissible"); *see also See Wilson v. Hanrahan*, 2019 WL 1386735 at *6 (E.D.N.Y. Mar. 27, 2019) (denying exclusion where "it would have given the jury a completely distorted picture" of the facts), *aff'd*, 804 F. App'x 58 (2d Cir. 2020).  Thus, many of the specific "theories" that Plaintiff asks the Court to exclude are, in fact, efforts to keep from the jury information without which JLI cannot mount a defense and without which the jury will be hopelessly confused.  Plaintiff's demand that JLI not call JUUL a "legal" product, for example, is an overbroad

1  and improper request:  JLI must be allowed to accurately represent that its product was not the same

2  as an "illegal drug" (such as cocaine, unauthorized pharmaceutical products, or other prohibited

3  drugs).  It is simply accurate to say that FDA permitted the product to remain on the market pending

4  approval, and JLI should be allowed to make that accurate representation at trial.  Deeming Tobacco

5  Products to Be Subject to the Federal Food, Drug, and Cosmetic Act, 81 Fed. Reg. 28,974, 29011

6  (May 10, 2016) (to be codified at 21 C.F.R. pts. 1100, 1140, 1143).

7          Industry standards as reflected in the TCA are also directly relevant to the claims that

8  Plaintiff presses here.  With respect to strict liability and deceptive marketing claims, Tennessee law

9  requires "[c]onsideration" of "customary designs, methods, standards, and techniques" in product

10  liability actions, TENN. CODE ANN. § 29-28-105(b).  Courts applying Tennessee law thus consider

11  industry standards when determining whether advertising was misleading.  *E.g.*, *Monday v. Regions*

12  *Bank*, 2010 WL 753327, at *8 (M.D. Tenn. Mar. 4, 2010); *see also Morales v. Kraft Foods Grp.,*

13  *Inc.*, 2016 WL 11743532, at *13 (C.D. Cal. Dec. 2, 2016) (discussing industry standards under other

14  state law).  JLI must thus be permitted to present evidence that its marketing was in accord with

15  industry standards (as reflected in the FDA's guidance) at the time.

16          Industry standards are also reflected in the warning labels that FDA required.  To the extent

17  that Plaintiff seeks to preclude JLI from presenting evidence that it complied with FDA warning

18  requirements, Pl. Br. 3, that request thus goes too far.  JLI must at a minimum be able to present

19  evidence showing that it provided the warnings that the FDA required. "Persuasive authorities

20  consistently hold . . . that evidence of compliance with industry regulations or standards is relevant

21  and admissible, though not dispositive."  *Scantlin v. Gen. Elec. Co.*, 2011 WL 13130835, at *2 (C.D.

22  Cal. Apr. 8, 2011); *see also Newman ex rel Newman v. McNeil Consumer Healthcare*, 2013 WL

23  4460011, at *5 (N.D. Ill. Mar. 29, 2013) (explaining that although compliance with federal

24  regulations "does not bar recovery," it is "one of several factors that a court will consider in a

25  products liability case").  Tennessee law in particular underscores that JLI's regulatory compliance

26  is relevant; JLI's compliance with federal labeling requirements "raise[s] a rebuttable presumption

27  that the product is not in an unreasonably dangerous condition in regard to matters covered by these

28  standards."  TENN. CODE ANN. § 29-28-104(a).  And although Plaintiff complains that JLI could

have supplied additional health or other warnings, Pl. Br. 3, that the FDA declined to require such warnings supports JLI's defense that the warnings it provided were appropriate and not misleading. Deeming Rule, 81 Fed. Reg. at 29,062–74; *see also CTIA v. City of Berkeley*, 487 F. Supp. 3d 821, 833 (N.D. Cal. 2020) (discussing FDA's concern over "risk of overwarning").

Finally, the TCA's regulatory requirements also cannot be separated from Plaintiff's negligent- or strict-liability product design claims, which turn both on the reasonableness of JLI's conduct (which is informed by industry standards) and the choices that JLI had available to it. Tennessee law requires that jurors consider, for example, "[t]he availability of a substitute product which would meet the same need," as well as "[t]he usefulness and desirability of the product . . . to the public as a whole." *Ray by Holman v. BIC Corp.*, 925 S.W.2d 527, 533 (Tenn. 1996); *see also Rodman v. Otsuka Am. Pharm., Inc.*, 2020 WL 2525032, at *10 (N.D. Cal. May 18, 2020) (considering "adverse consequences to the product and to the consumer").  Here, whether an alternative design would have had "adverse consequences" in the form of the product's potential removal from the market is plainly relevant.  It makes no difference that JLI's products were not subject to FDA regulation when they were originally designed, Pl. Br. 3-4; the point is that there were no reasonable design alternatives available when JLI sold the JUUL products B.B. used. *See, e.g.,* TENN. CODE ANN. §§ 29-28-105(a)-(b).

JLI must be permitted to present these relevant considerations.  The TCA and federal regulations shaped, guided, and were critical to the company and the actions that it took in this case; Plaintiffs cannot at the eleventh hour shield this necessary understanding from the jury.

## B.     Advertisements From Other Industries

Plaintiff is wrong that advertisements for products outside the tobacco industry are "irrelevant to whether the Defendants were negligent or committed fraud" and that their introduction would violate Fed. R. Evid. 403. Pl. Br. 3.  JLI did not market its products in a vacuum.  Instead, it hired specialists in consumer advertising and looked to the advertising content and practices of other industries in order to design a marketing campaign aimed at 25-34 year-olds, and later even older consumers.  Ultimately, evidence of advertising content and marketing practices in other industries is directly relevant to Plaintiff's negligence claims:  It bears on the reasonableness of JLI's conduct

and whether JLI's ads evidence some intent to target youth, as opposed to legal and Constitutionally-protected efforts to market to adult consumers.  Plaintiff's Motion I(B) should be denied.

Plaintiff's allegations of youth targeting are at the heart of Plaintiff's case.  *See* Second Am. Compl., No. 3:20-cv-07174, Aug. 25, 2021,  ECF No. 10 at ¶¶ 3, 5, 7–8, 11, 43, 48, 55, 59, 63–64, 84, 104, 108, 118, 149–50, 153–92, 254, 258, 316, 318–93, 404–23, 461–650, 664-706.  Whether JLI's marketing was aimed at youth is hotly disputed—JLI's early internal communications about the "Vaporized" launch campaign describe JLI's target audience as "25-34 year old" consumers, Ex. 2, JLI00205840), and individuals "age 25-34," "not affiliated with youth appeal'".  Ex. 3, JLI00362516.   Defendants' should be able to introduce evidence through direct or cross-examination that other industries, including alcohol, often use the very marketing techniques that Plaintiff highlights in her Complaint as youth-focused (e.g., social media, influencers, bright, bold colors, etc.) to target *adult*, not youth, consumers, and that JLI's marketing techniques, which are consistent with the marketing techniques typically used to target adults, including in other industries, are adult-oriented.  *See, e.g.*, Ex. 4 , Keller Rep. 119 ("I find that JLI's marketing campaigns were consistent with marketing strategies used by leading modern brands to reach adult consumers.").  Indeed, JLI's Chief Marketing Officer at the time of launch, Richard Mumby, testified that in developing the "Vaporized" campaign, he relied on his experience marketing to adults in other industries, including at Bonobos (men's clothing) and GILT (designer goods), and pulled inspiration from his work targeting adult furniture shoppers for Stello.  *See* Ex. 5 Mumby Dep. 813:19-819:21; Ex. 6, Mumby DX 107; Ex. 7 Mumby DX 108; Ex. 8, Mumby DX 7.  This evidence is important to JLI's defense and evidences that JLI did not intentionally or negligently engage in inappropriate youth targeting, as Plaintiff claims. Plaintiff's relevance arguments fail.[1]  *See* Fed. R. Evid. 401.

---

[1]      Plaintiff argues that Defendant is relying on evidence related to "different products with different target audiences and different rules."  Pl. Br. 5.  But the Court must examine *how* the evidence is being used and, with it, the risk of prejudice.  Here, alcohol and other industry advertisements are used as examples of how marketers advertise to an adult audience.  This is distinct from Plaintiff's suggestion that JLI did not follow the dictates of the Cigarette Master Settlement Agreement, which sets standards for combustible cigarettes, not ENDS; Plaintiff's argument suggests that the dictates of that agreement applied to JLI (they did not) and creates a real risk of confusing and misleading the jury.  Testimony regarding marketing strategies typically used to appeal to adults does not.

1    Plaintiff's prejudice arguments are equally meritless.  Plaintiff does not explain how the

2  relevant evidence that JLI seeks to admit would be unfairly prejudicial.  "[J]ust because evidence,

3  if admitted, is unfavorable to [a party] does not mean that the evidence" is unfairly prejudicial.

4  *Thomas & Marker Const., Co. v. Wal-Mart Stores, Inc.*, 2008 WL 5119587, at *3 (S.D. Ohio Nov.

5  30, 2008).   Nor would analyzing other examples of millennial-targeted marketing create any

6  "sideshow" or mini trial.  Pl. Br. 6.  Plaintiff's citation to *Tennison v. Circus Circus Enters., Inc.*,

7  244 F.3d 684 (9th Cir. 2001), is not to the contrary; that case held that a party to a hostile work-

8  environment dispute could not introduce coworker's testimony that had little relevance and that

9  concerned events outside the limitations period, and where disputes over the coworker's truthfulness

10  would create a mini-trial over a coworker's credibility.  *Id.* at 690.  *Tennison* is thus inapposite here.

11  The advertisements at issue are commonly broadcast (there would not be any "mini-trial" over their

12  content) and whatever rebuttal points Plaintiff may have would create no more a "mini-trial" than

13  any other typical attempts to cross or rebut an expert.  The Court should deny Plaintiff's motion in

14  limine.

15    **C.    JLI's Mission and Related Testimony**

16    Plaintiff incorrectly frames motion I.C as seeking to exclude improper lay opinion testimony

17  about JUUL's safety and effectiveness.  But the evidence Plaintiff seeks to exclude actually goes to

18  JLI's and its employees understanding of its corporate mission, its reasons for launching its

19  products, and the employees' day-to-day work at JLI.  This is all highly relevant to the design defect

20  and negligence claims in this case and to Plaintiff's request for punitive damages.  Indeed, JLI's

21  intent and the reasonableness of its conduct—two issues directly implicated by the testimony

22  Plaintiff seeks to exclude—are central to the claims here.

23    In addition, testimony by JLI employees about their work at the company is not inadmissible

24  simply because it touches on scientific principles or the governing FDA regulatory scheme.  Many

25  of the design choices JLI made were guided by the science on nicotine, tobacco, and the harmful

26  effects of smoking.  Most of its employees have advanced degrees in scientific disciplines and

27  engage in scientific work every day.  Those employees must be allowed to testify about the scientific

28  aspects of their work at JLI, just as a software engineer would be allowed to testify about their work

1   in a trade secrets case or an inventor would be allowed to testify about his invention and the scientific

2   problems he sought to solve in a patent case.  Plaintiff's motion should be denied.

3          Certain testimony Plaintiff challenges provides background on the industry and explains the

4   conventional wisdom about the benefits of ENDS devices.  Testimony that "[t]he whole purpose of

5   e-cigarettes and vaping devices is to offer an alternative to smokers that is safer relative to smoking"

6   and that "the theory is by delivering nicotine to smokers, you can have an alternative that is safer

7   than using cigarettes" explains the "purpose" and "theory" for offering ENDS devices like JUUL.

8   Ex. 9, Rouag Dep. 504:12-14; 514:12-25.  It does not offer a scientific opinion about whether the

9   theory is correct; JLI's technical experts address that issue.  There is similarly nothing improper

10  about Mr. Monsees testifying, when describing his motivation for founding JLI and the basic

11  product design philosophy, that 70% of smokers want a safer alternative and that low temperatures

12  are the "most universally accepted way … to deliver nicotine much more safely to consumers[.]"

13  Ex. 10, Monsees NC-AG Dep. 124:16-18.  That testimony simply acknowledges the well-accepted

14  ideas that influenced JLI's product design.

15         This testimony is relevant to whether JLI negligently designed its products and whether, as

16  Plaintiff claims, JLI intentionally designed its products to addict minors. Second Am. Compl. ¶ 818.

17  In addition to putting JLI's mission at issue in her pleadings, Plaintiff asked questions about this

18  relevant issue during depositions, soliciting the very testimony that she now seeks to exclude:  she

19  asked Bowen "Is that your mission?" and he answered "My personal mission and goal is to try to

20  help many of those smokers, many existing smokers."  *See* Ex. 11, Bowen Dep. 442:13-19.[2]

21  Consequently, the testimony is relevant.  *Cf. Computer Place, Inc. v. Hewlett-Packard Co.*, 607 F.

22  Supp. 822, 826 (N.D. Cal. 1984), *aff'd*, 779 F.2d 56 (9th Cir. 1985) (recognizing relevance of

23  evidence that rebuts allegations in the complaint).  Plaintiff is simply wrong that JLI's understanding

24  of the benefits of its products is irrelevant to the substantive claims and punitive damages issues in

25  this case.

26

27  _____

28  [2]      *See also* Ex. 11, Bowen Dep. 442:13-19; 182:20–25; Ex. 15, Monsees Dep. 476:20–477:22; Ex. 12, Atkins
    Dep. 43:15–44:12; 423:10–423:15.

Likewise, the testimony Plaintiff seeks to exclude about JLI's mission "and the manner in which it guided" JLI's product design is "probative of Defendants' intent for the purpose of the jury's consideration of a punitive damages award." *In re Wright Med. Tech. Inc.*, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015). JLI's "mission would tend to disprove Plaintiff's assertion that punitive damages are necessary to prevent it from" engaging in the alleged bad acts or that JLI engaged in willful or malicious behavior. *Denoewer v. UCO Indus., Inc.*, 2021 WL 4451610, at *3 (S.D. Ohio Sept. 29, 2021).

Were there any doubt, none of the identified testimony is inadmissible lay opinion testimony. For instance, Plaintiff seeks to exclude testimony about JLI's intent to "make something that would be less risky for adult smokers than smoking combustible cigarettes." Ex. 12, Atkins Dep. 696:21-24.[3] That is a mission statement, not a scientific conclusion about whether JLI succeeded. As Mr. Atkins acknowledged in the very next breath, "that's a target, so not something that I'm claiming we've accomplished." Ex. 12, Atkins Dep. 696:25-697:2. There is also no rule against lay witnesses testifying about conclusions they form "based on a combination of their personal observations of the subject matter at issue and skills, knowledge, or experience obtained through their vocation." *Encompass Ins. Co. v. Berger*, 2013 WL 12124281, *3 (C.D. Cal. Dec. 10, 2013). It is therefore well within the realm of permissible testimony for a lay witness to testify, based on her personal knowledge and vocational experience, about a product's performance in the market and the conclusions she drew at the time about that product. For example, there is nothing improper about an Altria employee testifying as to her perception, at the time, of JUUL's effect on the cigarette and e-vapor industries and her perception of JUUL's ability to convert adult tobacco consumers to e-vapor.

Nor is the testimony at issue like the lay opinion testimony excluded in *Vincent v. Reyes*, 2021 WL 4262289, at *1 (N.D. Cal. Sept. 20, 2021) and *Yellowstone Women's First Step House,*

---

[3]   *See also* Ex. 12, Atkins Dep. 555:15-17 ("for me the most important thing was that the product should be less risky than using a combustible cigarette"); Ex. Gardner Dep. 13, 109:1-4 ("[JUUL] is a product to convert adult smokers to a safer, lower-exposure product than cigarettes").

1    *Inc. v. City of Costa Mesa*, 2018 WL 6167930, *7 (C.D. Cal. Nov. 5, 2018).  In *Reyes*, the plaintiff

2    tried to offer a medical causation opinion about the underlying scientific causes of his medical

3    conditions.  2021 WL 4262289 at *1.  *Yellowstone* excluded testimony because the witnesses had

4    no first-hand knowledge about the need for sober living homes.  2018 WL 6167930 at *7.[4]  Here,

5    in contrast, Defendants' witnesses will offer testimony based on their personal knowledge and first-

6    hand experiences.

7    **D.    Effect Of A Verdict On Defendants and Society**

8          The Court should not exclude evidence or argument about "how a verdict would affect either

9    Defendants or society."  Pl. Br. 7.  This evidence is directly relevant to punitive damages.  *See, e.g.,*

10   *Musgrave v. Breg, Inc.*, 2011 WL 4620767, at *6 (S.D. Ohio 2011) (denying the plaintiffs' motion

11   in limine to preclude a pain-pump manufacturer from offering evidence "that it is a 'good corporate

12   citizen' that benefits society by making products that are life-saving or improve the quality of

13   peoples' lives" because "such evidence may be relevant to oppose Plaintiffs' punitive damages

14   claims.").  In fact, Plaintiff's cited cases specifically carve out exceptions for punitive damages,

15   noting that "Defendants may argue the financial impact to their business from a punitive damages

16   award." *In re 3M Combat Arms Earplug Products Liability Litigation*, 2021 WL 918214, at *7 (N.D.

17   Fla. Mar. 10, 2021); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab.*

18   *Litig.*, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) ("in the punitive damage phase, . . . Bayer

19   will be allowed to defend that discussion by arguing what impact a punitive damage verdict will

20   have on the defendant.").  Here, Defendants should similarly be permitted to discuss the impact of

21   the verdict when responding to Plaintiff's request for punitive damages.

22         Defendants do not intend to present evidence about the impact of the verdict for any other

23   purpose, but for clarity, Defendants must be able to introduce evidence about the overall benefits of

24   their product.  The "Tennessee Products Liability Act requires a risk-utility balancing of factors"

25   including "[t]he usefulness and desirability of the product" and "its utility to the user *and to the*

26

27   ───────────────

28   [4] Contrary to Plaintiff's argument, JLI objected to questions seeking speculation about the success of JLI's Premarket Tobacco Application, not the witness's understanding of JLI's mission.  Ex. 14, Flora Dep. 413:23-414:19.

1   *public as a whole.*"  *Ray by Holman*, 925 S.W.2d at 533 (emphasis added); *Wilder v. Ethicon, Inc.,*

2   2021 WL 4302901, at *4 (E.D. Tenn. Sept. 21, 2021) ("The prudent manufacture test requires courts

3   to consider the risk-utility of the product by balancing several factors, including the product's

4   usefulness and desirability.").  Moreover, JLI and its employees consistently considered the risks

5   and benefits of the JUUL products, how its products and business practices would affect consumers,

6   and how its products fit within the nicotine continuum of risk.  Evidence establishing this corporate

7   focus goes to the reasonableness of JLI's actions and the alleged reprehensibility of its conduct.

8         The uncertain scope of Plaintiff's request highlights the fundamental problem with this

9   motion:  Plaintiff asks the Court to exclude vague, sweeping categories of evidence without offering

10  a single concrete example of evidence she seeks to exclude.  The cases that Plaintiff cites in support

11  are much more specific than her broad request to exclude "how a verdict would affect either

12  Defendants or society."  Pl. Br. 7.  The Court in *In re 3M* excluded very specific arguments related

13  to the whether a verdict would cause the price of Defendant's goods to increase or employees to be

14  fired.  2021 WL 918214, at *7.  In *In re Tylenol (Acetaminophen) Marketing,* the Court narrowly

15  excluded arguments that a verdict would cause layoffs.  2016 WL 3125428, at *5 (E.D. Pa. June 3,

16  2016).  Here, Plaintiff does not offer any specificity as to what Defendants would be precluded from

17  arguing.  This is improper.  *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL

18  2035800, at *1 (C.D. Cal. May 19, 2010) (noting that "motions in limine should rarely seek to

19  exclude broad categories of evidence, as the court is almost always better situated to rule on

20  evidentiary issues in their factual context during trial").  Consequently, the Court should "consider

21  specific...objections...as they are proffered at trial and sought to be introduced, rather than grant at

22  this time what may amount to an overly broad exclusion of evidence."  *Boren v. Harrah's Entm't*

23  *Inc.,* 2010 WL 4340461, at *3 (D. Nev. Oct. 26, 2010).  For that reason alone, this motion should

24  be denied.

25      **E.**    **Referring to Defendants as "We," "Us," or "Our"**

26        There is no basis for a blanket prohibition against defense counsel using the words "we,"

27  us," and "our" based on an analogy to the concept of "improper vouching."  Any issue that arises

28

1    from overuse of such pronouns can be addressed on a case-by-case basis rather than a categorical

2    pretrial ruling.  Accordingly, Plaintiff's motion should be denied.

3         "Improper vouching" is traditionally a criminal law concept that prohibits a prosecutor from

4    "placing the prestige of the government behind a witness" through personal assurances of the

5    witness's credibility or suggesting that evidence not presented to the jury supports the witness's

6    testimony.  *Draper v. Rosario*, 836 F.3d 1072, 1083 (9th Cir. 2016).  "Logically, the improper

7    vouching rule would only apply in criminal cases in which the government is a party[,]" as the

8    "theory behind this rule is to ensure that criminal defendants receive a constitutionally fair trial."

9    *Schmitz v. City of Wilsonville*, 1999 WL 778586, at *5 (D. Or. Sept. 17, 1999).[5]  Even if applied in

10   this civil matter, however, Plaintiff has failed to explain how counsel would be "vouching" for the

11   truthfulness of any witness merely by referring to Defendants as "we," "us," or "our."  And to the

12   extent the use of such pronouns was to be deemed inappropriate in a particular instance, it would be

13   curable by an appropriate instruction from the Court.  *See, e.g., Schmitz*, 1999 WL 778586, at *6

14   ("The Ninth Circuit has held that a general jury instruction can be sufficient to correct impermissible

15   vouching.").

16        **F.    References to Personal Lives or Backgrounds of Attorneys**

17        There is no basis for a blanket prohibition against defense counsel referencing any of their

18   personal experiences or backgrounds.  Depending on the precise context, references to personal

19   experiences can be helpful and appropriate.  For example, during *voir dire*, potential jurors must

20   divulge personal details about themselves so that the attorneys and Court can determine whether

21   they are suitable for service or whether to exercise a peremptory strike.  By revealing details about

22   their own background, attorneys make the jurors more comfortable in doing the same.

23        The single case cited by Plaintiff does not support the categorical prohibition she seeks.

24   There, the Court only prohibited references to counsel's personal experiences with the military—as

25   the plaintiff's alleged injuries occurred as a result of military service and the product at issue was

26

27

28   ---

[5] Although the Ninth Circuit has recognized "improper vouching" in civil cases where counsel relies "on evidence
outside the record," *Draper*, 836 F.3d at 1083, Plaintiff has not raised that issue.

1    one issued by the United States military.  *In re 3M*, 2021 WL 918214, at *6.

2         Any improper reference to personal backgrounds is better addressed on a case-by-case basis

3    as it arises at trial.  *In re Prempro Prods. Liab. Litig.*, 2007 WL 3125106, at *2 (E.D. Ark. Oct. 24,

4    2007); *see also Dickens v. Parsec, Inc.*, 2021 WL 6752305, at *6 (N.D. Ga. July 27, 2021) (refusing

5    to "impose a blanket restriction on Parsec's counsel expressing any regret for Plaintiffs' injuries and

6    the accident").  If Plaintiff believes that a particular reference is improper, she can object and, as

7    appropriate, the Court can cure any perceived prejudice by giving a curative instruction.  But it does

8    not make sense to enter a categorical ruling prior to trial without knowing the context in which such

9    a reference would be made.

10        **G.    Personal Testimonials About JUUL or Smoking by Attorneys and Witnesses**

11            The Court should deny Plaintiff's motion seeking to prevent defense witnesses from

12   testifying about their personal experiences with cigarettes or JUUL.  Pl. Br. 9-10.[6]   These

13   experiences provide critical information about the company's mission and the reasons behind

14   JUUL's design and marketing—***the primary issues*** in this case.  For instance, JLI's co-founders,

15   James Monsees and Adam Bowen, must be permitted to explain how their experiences with

16   combustible cigarettes informed their conception of JLI and development of the JUUL product, as

17   well as their decisions regarding marketing targets and sales.  Ultimately, the jury must hear

18   evidence of JLI witnesses' personal experiences with these products in order assess their intentions,

19   motivations, and the overall reasonableness of their conduct—key issues bearing on Plaintiff's

20   claims, including her claim for punitive damages.

21            Plaintiff also puts this evidence squarely at issue by alleging that JLI's founders, Adam

22   Bowen and James Monsees, and other company stakeholders "sought to introduce nicotine to a

23   whole new generation," Second Am. Compl. ¶ 3, strategized to "[c]reate a [n]icotine [p]roduct [t]hat

24   [w]ould [m]aximize [p]rofits [t]hrough [a]ddiction," *id*. at 18, were "[i]nstrumental in [s]eeking to

25   [d]evelop and [m]arket the [b]lockbuster [s]equel to [c]ombustible [c]igarettes" *id*. at 10, and

26

27   _____

28   [6] JLI's attorneys will not offer testimonials regarding their own experience with combustible cigarettes or JUUL, so this issue is moot.

"designed [the] product to look appealing to youth and non-smokers, *id.* ¶ 148.  JLI's witnesses personal experiences with cigarettes and JUUL are a direct response to Plaintiff's contentions.  For example:

- **James Monsees**: one of JLI's founders and former CEO and Chief Product Officer, testified that he "was probably the first customer of JUUL," and his "story was very much one of cigarette dependency, a long history of smoking, and a lot of conflict with smoking" until he switched to JUUL. Ex. 15, Monsees Dep. 435:22-436:7, 436:8-14. Monsees' experiences provide context for the decisions he made with respect to the design, development, and marketing of JUUL, and rebut B.B.'s allegations that Monsees's vision was to "grow[] the number of nicotine-addicted e-cigarette users to ensure a base of customers for life." Second Am. Compl. ¶ 42.

- **Adam Bowen**: Monsees' co-founder and former JLI Chief Technology Officer, testified that his "journey as a smoker" was part of the reason for starting the company, Ex. 11, Bowen Dep. 122:10-13, noting that he tried to quit smoking combustible cigarettes "many times" due to health concerns, he would experience a lot of withdrawal symptoms, and he found himself eventually going back to cigarettes, *id.* at 127:4-24. Bowen testified that he, "in part, developed [JUUL] with [himself] as the target user," he currently uses JUUL products, and the last time he smoked a cigarette for non-research purposes was probably eight or nine years ago since the early development of JUUL. *Id.* at 122:23-123:3; 128:21-129:10. This testimony addresses why JUUL was developed and rebuts Plaintiff's arguments regarding the mal-intent behind the design. Second Am. Compl. at 36.

- **Nicholas Pritzker**: A JLI board member. testified that his wife and all three of his sons had smoked combustible cigarettes, but immediately quit smoking when they started to use JUUL, and had not smoked cigarettes since converting to JUUL. Ex. 16, Pritzker Dep. 271:4-17, 272:5-9; 658:18-659:18. Pritzker's testimony provides context to his decision-making as a JLI board member, and undercuts B.B.'s allegations that Pritzker acted with the "intent … to grow the market for nicotine-addicted individuals for [his] own financial gain." Second Am. Compl. ¶ 46.

- **Julie Henderson**: JLI's Youth Prevention Director, testified that JLI's' mission to eliminate combustible cigarettes personally resonated with her since she lost both of her parents to cigarette-related illnesses. Ex. 17, Henderson Dep. 51:24-52:7. This testimony speaks to Henderson's intentions in designing and implementing JLI's Youth Prevention campaign, and rebuts B.B.'s allegations that this program was intended to be similar to the "pretextual antismoking campaigns [provided] by the cigarette industry." Second Am. Compl. ¶ 514.

This evidence, which is undeniably relevant to both liability and B.B.'s claim for punitive damages, should be admitted in full.

Plaintiff's argument that this testimony is unduly prejudicial also lacks merit.  Several courts have denied motions in limine that seek to bar corporate witnesses from testifying regarding their personal experience with the product at issue. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene*

*Hernia Mesh Prods. Liab. Litig.*, 2021 WL 5577409, at *2 (S.D. Ohio Nov. 30, 2021) (finding that "evidence that 'Defendants executives personally used and/or recommended hernia mesh devices containing ... ePTFE … is directly relevant to rebut Plaintiffs' claims'"); *Boneta v. Am. Med. Sys. Inc.*, 2021 WL 6776246 at * 4 (S.D. Fla. Oct. 7, 2021) (denying motion in limine to bar defendant from introducing testimony from its employees, experts, or lay witnesses regarding the witness' "personal experiences with pelvic mesh devices, or those of a friend or family member"); *Swintelski v. Am. Med. Sys. Inc.*, 2021 WL 3671351, at *4 (S.D. Fla. Aug. 10, 2021) (same).  This Court should reach the same conclusion here.

**H.     Argument or Suggestion by Defense Counsel that They or the Defendants Sympathize with the Plaintiff**

Although Plaintiff's entire case involves argument and suggestion aimed at evoking sympathy, Plaintiff contends that this Court should exclude any expressions of sympathy from defense counsel or Defendants. Pl. Br. 10.

The Court should reject Plaintiff's manufactured one-sided sympathy standard.  First, there is no basis for a blanket prohibition against defense counsel, or the Defendants, making statements expressing sympathy for B.B.  Plaintiff fails to cite to a single case in support of her position, and courts generally reject such blanket rulings.  *Dickens*, 2021 WL 6752305, at *6 (refusing to "impose a blanket restriction on Parsec's counsel expressing any regret for Plaintiffs' injuries and the accident"); *Pace v. Nat'l U. Fire Ins. Co. of Pittsburgh*, 2015 WL 11199154, at *3 (N.D. Ga. Feb. 3, 2015) (same).  Second, Plaintiff's motion is vague and ambiguous, and fails to provide any guidance as to what type of statement would qualify as an improper "expression[] of sympathy." Pl. Br. 10. It does not make sense to enter a categorical ruling barring all "expressions of sympathy" without looking at the particular statement and the context and circumstances in which it is made. For instance, certain questions posed by Plaintiff's counsel may directly call for a sympathetic response.  Any improper expression of sympathy is better addressed on a case-by-case basis as it

arises at trial through the objection process.  Accordingly, Plaintiff's motion in limine should be denied.[7]

## II.    OPPOSITIONS TO B.B.-SPECIFIC MOTIONS IN LIMINE

### A.    Family Causation Evidence (II.A)

Plaintiff argues that this Court should exclude evidence and argument that B.B.'s friends and family (i) should have tried harder to encourage her to stop using JUUL; (ii) facilitated her use of JUUL by providing an allowance; or (iii) should have warned B.B. of the risks of using JUUL.  Pl. Br. 10–11.  The Court should deny MIL II.A.

Plaintiff argues that "the jury is not permitted to assign fault" to these third parties and that they had no "duty to warn."  Pl. Br. 10-11.  This argument misses the mark.  JLI intends to ask the jury to find Robin Bain shared at least some fault for B.B.'s injuries as part of its comparative fault defense.  *See Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1285 (Cal. App. 2013), *as modified on denial of reh'g* (Nov. 27, 2013) ("The comparative fault doctrine is 'designed to permit the trier of fact to consider all relevant criteria in apportioning liability.'"); *Turner v. Jordan*, 957 S.W.2d 815, 823 (Tenn. 1997) (a "defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's negligence claim such as duty and causation").  As for B.B.'s other family and friends, JLI does not intend to introduce evidence or argument that they were legally "at fault" for her injuries and medical symptoms, such that they would be liable for damages, or that they had some duty to warn her about the risks of using JUUL. Pl. Br. 10-11.  JLI does intend, however, and is entitled, to put on evidence establishing JLI's conduct was not a proximate cause of B.B.'s injuries or her JUUL use and identifying alternative (non-JLI) causes.

That is because such evidence is relevant.  As experts on both sides of this case explain, actions B.B.'s family did and did not take with respect to her JUUL use may account for her initiation and continued use of e-cigarettes.  *See* Ex. 18,  Grunberg B.B. Dep. 566:23-567:11 (noting that "psychosocial factors" can contribute to nicotine addiction); Ex. 19, L. Steinberg B.B. Supp.

---

[7] Any ruling on Plaintiff's motions in limine I(E) (vouching) and/or I(H) (sympathy statements) should apply equally to all parties.

Rep. at 6 ("Drug-abusing youth are also more likely than their peers to have parents who are excessively permissive, uninvolved, neglectful, or rejecting."). Evidence of B.B.'s family's lack of action and even encouragement of her e-cigarette use, through funding her use or otherwise, is thus relevant and admissible under Federal Rule of Evidence 402.

Such evidence, among other things, "negate[s] an essential element of plaintiff's case—proximate cause." *Geurin*, 316 F.3d at 885. Thus, JLI is entitled to put on this evidence as proof that no wrongdoing on the part of [JLI] caused [B.B.'s] injury." *Id.* In urging this Court to exclude evidence about the actions of B.B.'s friends and family, Plaintiff asks the Court to leave the jury "with only one explanation for" her injuries and medical symptoms, and thereby "preordain[]" a jury verdict in her favor. *Id.* This would be highly prejudicial and improper. *See id.*

### B.    Alternative Causation Evidence

Plaintiff asks the Court to grant several other motions in limine which would preclude the Defendants from putting on alternative causation evidence, which is highly prejudicial and unsupported by law. *See DeMartini,* 833 F. App'x at 132 (quoting *Geurin*, 316 F.3d at 885) (reversing judgment because "the district court seems to have preordained [a jury verdict in favor of plaintiffs] by preventing [defendants'] from providing the jury with an alternate explanation."); *Aycock*, 769 F.3d at 1069–70 (recognizing that a "defendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense" and remanding for a new trial). As explained in further detail below, the Court should deny these motions.

### 1.    Genetic Predisposition (II.F)

Plaintiff asks that the Court "prevent any witness from testifying or attorney from suggesting that B.B. was genetically predisposed to substance use, abuse, and/or addiction." Pl. Br. 13. Plaintiff frames this request as a belated one-page *Daubert* motion attacking opinions of Dr. Laurence Steinberg, who opines that "[p]arents and other family members influence adolescents' substance use through genetic as well as environmental transmission," and that ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████   Plaintiff argues that Dr. Steinberg cannot offer these opinions

1   because ████████████████████████████ and is not a molecular geneticist who could

2   determine whether B.B. has genes influencing addiction.  Pl. Br. 13.

3         The Court should deny Plaintiff's motion, which is untimely and misconstrues the law

4   governing permissible defense-side alternative causation evidence as well as Dr. Steinberg's

5   testimony.  Plaintiff, not Defendants, is putting the cause of B.B.'s addiction injury at issue.  In such

6   cases, "courts treat evidence produced by plaintiffs to prove causation differently than they treat

7   evidence produced by defendants to rebut causation."  *Aycock,* 769 F.3d at 1070.  Plaintiff bears the

8   burden of proving the cause of their injuries; defendants, by contrast, need only "convince the trier

9   of fact that the alleged negligence was not the legal cause of the injury."  *Id.* (quoting *Wilder v.*

10   *Eberhart*, 977 F.2d 673, 676 (1st Cir. 1992)).  Thus, defendants are permitted to present evidence

11   indicating potential alternative causes, which "need not be proved with certainty or more probably

12   than not."  *Aycock*, 769 F.3d at 1069–70; *see also In re 3M*, 2022 WL 823474, at *4 (N.D. Fla. Mar.

13   19, 2022) ("A defense expert "may offer evidence of potential alternative causes of [an] injury

14   without needing to prove those alternative-cause theories with certainty or probability."); *Johnson*

15   *v. BLC Lexington SNF, LLC*, 2020 WL 4355069, at *2 (E.D. Ky. July 29, 2020) (similar); *In re*

16   *Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2017 WL 1278713, at *2 (S.D.W. Va. Mar. 31,

17   2017) (similar).

18         With respect to Dr. Steinberg specifically, then, the fact that B.B. has not undergone genetic

19   testing or that Dr. Steinberg cannot conclusively determine that B.B. has genes causing addiction is

20   no reason to exclude his testimony that (1) genetics are an alternative cause of addiction, and (2)

21   ████████████████████████████████████████████ Dr. Steinberg is a

22   psychologist and nationally recognized expert in adolescent development who is qualified to opine

23   on risk factors for addiction, Ex. 19, Steinberg B.B. Suppl. Rep. 1, and he reliably grounds his

24   opinion that ███████████████████████████████████████████████████

25   ████████████ *see*, *e.g.*, Ex. 20, Steinberg B.B. Dep. 110:16-111:1 ███████████████

26

27   _____

28   [8] Dr. Steinberg never claimed that he conducted genetic testing of B.B., and, as explained below, such testing is not necessary or relevant to his opinions.

1  ██████████████████████████████████████████████████████████

2  ███████████████████████████████████ *see also*, *e.g.*, Hines, L. A., Morley, K. I., Mackie,

3  C., & Lynskey, M., "Genetic and Environmental Interplay in Adolescent Substance Use Disorders."

4  *Current          addiction          reports*,          2(2),          122–129          (2015)

5  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4540408/.  And Plaintiff's own experts ████████

6  ██████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████; Ex. 26, Grunberg B.B. Dep. DX-005 (noting "Parents" as a risk factor).

12     B.B.'s family history thus forms a reliable factual basis for an adolescent psychologist like

13 Dr. Steinberg to recognize that ██████████████████████████████ Dr. Steinberg

14 "did not pluck [his opinions] from the scientific ether," *In re 3M*, 2022 WL 823474, at *4 (permitting

15 expert to testify that lupus was a potential alternative cause of plaintiffs' injuries, despite lack of

16 testing); Plaintiff's criticisms at best go to the weight rather than the admissibility of his testimony.

17     ## 2.     "Improper Character Evidence" (II.G)

18     Plaintiff's next motion requests that the Court "exclude any evidence and argument that B.B.

19 was inclined to engage in 'risk-taking' behavior due to her age, friend groups, family members,

20 associations/influences, and/or community," and argues that this evidence is somehow

21 impermissible character evidence under Rule 404.  Pl. Br. 14 (citing *United States v. Bonds*, 2011

22 WL 13350459, at *1 (N.D. Cal. Mar. 7, 2011)).

23     Plaintiff's motion misapplies Rule 404 and once again amounts to an unfounded request that

24 the Court bar all evidence of well-understood potential alternative causes of B.B.'s addiction.  None

25 of the influences upon B.B.'s "risk-taking" behavior that Plaintiff identifies—"age, friend groups,

26 family members, associations/influences, and/or community"—are improper character evidence.

27 Rule 404 provides that "[e]vidence of a person's character or character trait is not admissible to

28 prove that on a particular occasion the person acted in accordance with the character or trait."  Fed.

R. Evid. 404(a).  Yet "age" is a physical trait, not a character one, and peer and community influences can hardly be construed as part of B.B.'s "character" either.  Thus, and perhaps unsurprisingly, Plaintiff cites no authority whatsoever holding that these topics are precluded under Rule 404.  In the only case that Plaintiff cites—*United States v. Bonds*— the Court considered only whether the government could introduce evidence regarding an athlete's dealing in illegal steroids, 2011 WL 13350459, at *1; nothing in *Bonds* supports the novel expansion of Rule 404 that Plaintiff would have the Court undertake here.

     Nor does Plaintiff's motion provide any other basis to bar Defendants' alternative causation evidence.  *See supra* at 16–17.  There is none.  Both Plaintiff's and Defendants' experts agree that age and community influences are well-established and scientifically understood risk factors for addiction—not blunt character evidence.  Age in particular is a serious risk factor:  as Plaintiff's expert Dr. Levy opines, "perhaps the most significant [risk factor] is age of substance use initiation"—"for every substance, the younger you are the first time you use, the more likely you are to develop a substance use disorder." Ex. 23, Levy Gen. Dep. 36:23-37:4; *see also id.* at 107:5-8 ("[A]ge is both a risk factor for initiating substance use as well as a risk factor for developing addiction amongst people who initiate.").  Levy opines that as to ███████████████ ████████████████████████████████████████████████████████████ ████████████████████ Both Drs. Levy and Steinberg explain that adolescents are particularly susceptible to risk-taking and addiction because of the brain-development processes that accompany their age:  "[T]he prefrontal cortex matures during adolescence; the process completes sometime in the mid-20's. Before then, adolescents can make good decisions, but their decision-making skills are not yet proficient and as a result, they are prone to act impulsively."  Ex. 25, Levy Gen. Rep. 10; *see also* Ex. 21, Steinberg Gen. Rep. 5 (adolescents' incentives for risk taking "become especially aroused early in adolescence shortly after puberty," and importantly, "before the cognitive control system has matured").  Plaintiff's expert Dr. Halpern-Felsher similarly acknowledges that teens make "more impulsive" decisions.  Ex. 27, Halpern-Felsher Gen. Dep. 150:9-17.

     It is also well established that addiction is influenced by family:  Persons who develop substance use disorders are more likely to have parents who are "permissive, uninvolved, neglectful,

or rejecting," and are "more likely to come from homes where family members smoke, drink, or use illegal drugs." *See* Ex. 21, Steinberg Gen. Rep. 16–17 (citing Mun, C., Dishion, T., Tein, J., & Otten, R., "Adolescence effortful control as a mediator between family ecology and problematic substance use in early adulthood: A 16-year prospective study." *Development and Psychopathology*, 30, 1355–1369 (2018) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6945500/; and Gottfredson, N., Hussong, A., Ennett, S., & Rothenberg, A., "The role of parental engagement in the intergenerational transmission of smoking behavior and identity." *Journal of Adolescent Health*, 60, 599–605 (2017) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5401798/); *see also* Ex. 24, Levy B.B. Dep. 108:18-21



Oppositions to Plaintiff's Motions in Limine

1    Plaintiff has no basis to shield the jury from this alternative causation evidence under a

2    misreading of Rule 404.  The motion in limine should be denied.

3         **3.      Family History (II.H)**

4    Plaintiff's attempt to exclude probative evidence of B.B.'s family history should be rejected

5    for much the same reasons as Plaintiff's motions II.F and II.G.  Plaintiff argues that evidence of

6    ███████████████████████████ is (i) irrelevant under Rule 401, and (ii) prejudicial

7    character evidence under Rules 403 and 404.  Pl. Br. 14–16.  Neither argument has any merit.

8    To begin, Plaintiff is wrong in arguing that ████████████████████████████████

9    is irrelevant.  To the contrary, and as experts on both sides of this case explain, █████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ██████████████████████████████████████ Indeed, family history is exactly why

15   there is a sound basis for Dr. Steinberg to testify as to ███████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ██████████

25   Plaintiff is also wrong to argue that Rule 404 or 403 could provide a basis for excluding this

26   evidence.  Defendants are not using this evidence to suggest that B.B. has any particular character

27   trait; rather, the evidence that Defendants may present is grounded in the science and risk factors

28   influencing addiction.  Nor can Plaintiff argue that Rule 403 justifies keeping a significant potential

alternative cause of B.B.'s injuries—and clearly established science regarding addiction—from the purview of the jury.  Rule 403 permits excluding evidence only if its probative value is "*substantially*" outweighed by a risk of prejudice. Fed. R. Evid. 403 (emphasis added).  Plaintiff cannot make that substantial showing in this case.  The "defendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense," *Aycock*, 769 F.3d at 1069–70, and Plaintiff cannot show prejudice substantially outweighing this paramount interest in light of the science surrounding addiction that the experts in this case have testified to here.

### 4.   ███████  Criminal Record (Causation) (II.J)

Plaintiff seeks to exclude evidence of ████████ criminal record under Rule 609, but that rule does not apply here.  JLI does not intend to "attack[]" ████████ "character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a).  JLI will instead introduce his criminal record as probative evidence of a significant stressor in Plaintiff's life that may both explain her decision to start using JUUL products and provide an alternative cause for some of her underlying medical conditions.  Thus, even if ████████ criminal record is inadmissible as impeachment evidence, it is admissible as alternative causation evidence.  "[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." *United States v. Abel*, 469 U.S. 45, 56 (1984).

Here, there is evidence that stressors in B.B.'s life caused her to start using nicotine:  In the three years before B.B. first used a JUUL device: ████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ *See* Ex. 29, R. Bain Dep. 24:24-25:8, 26:19-24, 32:10-15, 29:17-25.  B.B.'s own expert witnesses have testified that stress can constitute a factor for nicotine initiation and use. *See* Ex. 18, Grunberg B.B. Dep. 566:23-567:11 (noting that "psychosocial factors" can contribute to nicotine addiction); Ex. 24, Levy B.B. Dep. 108:24:10 ("adverse childhood experience[s] and "psychosocial stressors" are risk factors for nicotine addiction).  Expert evidence establishes that "children who grow up in households with conflicted family relationships are more likely to develop substance abuse problems than their peers who grow up in close, nurturing families[]" even where children are shielded from family conflict—as B.B.

1   claims here—and ███████████████████████████████████████████████

2   ████████████████████████.” Ex. 19, Steinberg B.B. Suppl. Rep. 9-10.  At a broader

3   level, “[r]eports of [B.B.] acting more distant and moody are also consistent with the developmental

4   course of preadolescent emotional development, especially under circumstances of significant

5   stress.” *Id.*  Experts have also pointed to evidence suggesting that anxiety itself can lead to nicotine

6   use. Ex. 22, Steinberg Westfaul Rep. 8-9 (citing Fluharty, M., Taylor, A., Grabski, M., Munafò, M.

7   (2017) “The association of cigarette smoking with depression and anxiety: A systematic review.”

8   *Nicotine          &          Tobacco          Research*,          19,          3–13.

9   https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5157710/).  That conclusion has been borne out in

10  large-scale studies showing that stress was the third most-common reason for e-cigarette initiation

11  among middle and high school students.  Gentzke, A. et al. (2022). Tobacco Product Use and

12  Associated Factors Among Middle and High School Students—National Youth Tobacco Survey,

13  United States, 2021. Morbidity and Mortality Weekly Report, 71(5); at 22.

14        This evidence of “alternative causes is of paramount importance in allowing for an adequate

15  defense.”  *Aycock*, 769 F.3d 1063, 1069–70.   That is why courts routinely admit alternative

16  causation evidence showing that stressors in the plaintiff’s life caused her medical symptoms, rather

17  than the conduct of defendants. *See In re Welding Fume Prod. Liab. Litig.*, 2010 WL 7699456, at

18  *79 (N.D. Ohio June 4, 2010); *Byers v. Lincoln Elec. Co.*, 2008 WL 4849339, at *5 (N.D. Ohio

19  Nov. 6, 2008).  Indeed, exclusion of alternative causation evidence is reversible error.  *See Geurin*,

20  316 F.3d at 885; *DeMartini*, 833 F. App’x at 132; *Aycock*, 769 F.3d at 1073.  The Court should thus

21  deny MIL II.J. While the Court should thus deny MIL II.J outright, at a minimum, the Court should

22  defer “[t]he decision as to whether evidence of a particular life stressor may be probative of the

23  potential cause of the emotional stress claimed by a plaintiff” because that decision is often “best

24  made in the context of trial.”  *Dutton v. Ascend Learning Holdings, LLC*, 2017 WL 405612, at *1

25  (D. Mont. Jan. 30, 2017).[9]

26

27    ────────────────────

28  [9] Plaintiff has not identified any unfair prejudice from admitting Troy Bain’s criminal record, much less any prejudice that outweighs the highly probative value of this alternative causation evidence.  To the extent Plaintiff is worried the

5.        ███████████ **Evidence (Alternative Causation) (II.K)**

Plaintiff argues that Rule 403 precludes ██████████ evidence.  However, the relevance of such evidence is not "substantially outweighed" by the risk of unfair prejudice or confusion and this evidence should be admitted.  Fed. R. Evid. 403.

Evidence about the ██████████ between B.B.'s parents bears on (i) the reasons B.B. used JUUL, and (ii) the cause of certain reported medical symptoms, such as ██████████████████████████████████████████████████████████████████████

██ As explained elsewhere, such alternative causation evidence is relevant and admissible.  *See, e.g., Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 885 (9th Cir. 2002); *DeMartini,* 833 F. App'x at 132; *Aycock*, 769 F.3d at 1063, 1069–70; *Plyler v. Whirlpool Corp.*, 751 F.3d 509, 514 (7th Cir. 2014).  As noted above, it is well accepted that family conflict and stress are causes of youth nicotine use and emotional difficulties.  Ex. 19, Steinberg B.B. Suppl. Rep. 6 ("Studies show that individuals with conflicted family relationships are more likely to develop substance abuse problems than their peers who grow up in close, nurturing families."); *see* Ex. 18, Grunberg B.B. Dep. 566:23-567:11 (noting that "psychosocial factors" can contribute to nicotine addiction); Ex. 24, Levy B.B. Dep. 108:24:10 ("adverse childhood experience[s] and "psychosocial stressors" are risk factors for nicotine addiction).  Plaintiff argues that evidence of ████████████████████████████

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

—————————————————

jury may rely on the criminal history as impeachment evidence, that concern can be addressed through a limiting instruction. ████████████████████████████████████████████████████████

1 ██████████ Ex. 19, Steinberg B.B. Suppl. Rep. 7 (citation omitted) ("Although [B.B.]'s mother

2 and father both testified that they attempted to hide much of this information…this doesn't make

3 the family history irrelevant. Parents and other family members influence adolescents' substance

4 use through genetic as well as environmental transmission.").

5      Nor does Plaintiff articulate any unfair inferences a jury would draw *against her* from such

6 evidence.  This is because no jury would render a moral judgment *against B.B.* because, as a child,

7 she experienced ██████████████████ if anything, a jury would sympathize with B.B.  Also,

8 contrary to Plaintiff's vague argument, Pl. Br. 18, there would be no mini-trial on ███████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ██████████████████████ Marital discord evidence would not stir the jury's emotions against

13 B.B. and will help the jury decide why B.B. used JUUL and what caused her medical symptoms;

14 this Court should deny MIL II.K.[10] *See, e.g.*, *Geurin*, 316 F.3d at 885; *DeMartini*, 833 F. App'x at

15 128: *Aycock*, 769 F.3d at 1063, 1069–70; *Plyler*, 751 F.3d at 514.

16     **C.**      **Speculation That B.B. Would Have Been a Cigarette Smoker (II.B)**

17      Plaintiff argues for the exclusion of "[a]ny statement mentioning or implying that B.B. would

18 have been a cigarette smoker had she not started vaping should be excluded." Pl. Br. 10.  Defendants

19 do not intend to argue that B.B. would have smoked cigarettes had she not used JUUL, and, as

20 Plaintiff recognizes, Defendant's expert Dr. Henningfield did not and will not testify along those

21 lines.  Pl. Br. 11 ("Dr. Henningfield concedes that this opinion (such as it is) applies only on a

22 population level, but he cannot predict whether any given individual minor … would eventually

23 have smoked instead.").  Accordingly, MIL II.B should be denied as moot.

24      However, to the extent Plaintiff's motion seeks to exclude population-level evidence or data,

25 including information regarding the impact of e-cigarette use on cigarette use, Plaintiff's motion

---

[10] If in the context of trial, the Court perceives a risk of unfair prejudice, it may cure that prejudice using a limiting instruction, clarifying the purpose of the marital discord evidence.

1  should be denied on the merits.   Population level trend data, such as that discussed by Dr.

2  Henningfield, is responsive (and relevant) to a number of issues raised by Plaintiff, including

3  population level increases in youth use of e-cigarettes, arguments that e-cigarettes are a "gateway"

4  to cigarette use, and the general contention that JLI's product is meritless and that the company was

5  negligent or reckless in designing the product.[11]   *See e.g.* Second Am. Compl.   ¶ 648 ("youth e-

6  cigarette rates nearly doubled from more than 11% in 2017 to more than 20% in 2018. Through

7  October 5, 2019 … rates of youth e-cigarette use continued to increase, tracking the growth of

8  JUUL."); ¶ 1010 ("JUUL Products have served as a gateway to increased cigarette use."); ¶ 255

9  ("JUUL was designed as a way to introduce nicotine to youth and otherwise hook new users"). Dr.

10  Henningfield's analysis of how e-cigarettes have impacted the population of combustible cigarette

11  smokers speaks directly to these issues and should be admitted.[12]

12      **D.**      **Further Medical Testing Evidence (II.D)**

13         Plaintiff seeks to exclude "any argument that further medical testing might have elicited facts

14  inconsistent with Plaintiff's case" without offering a concrete example of the type of evidence she

15  seeks to exclude.   "Motions in limine that seek exclusion of broad and unspecific categories of

16  evidence ... are generally disfavored' because courts are 'better situated during the actual trial to

17  assess the value and utility of evidence,' instead of 'tackling the matter in a vacuum.'"   *Vincent*,

18  2021 WL 4262289, at *1  (quoting *Espinoza v. Sniff*, 2015 WL 12660410, at *1 (C.D. Cal. May 11,

19  2015)).   Consequently, MIL II.D should be deferred until trial.

20         To the extent Plaintiff seeks to exclude evidence or argument that B.B. ███████████████

21  ███████████  this evidence is relevant and admissible.   It is Plaintiff's burden to prove that using

22  JUUL products caused her alleged injuries, and as part of that burden, she must account for potential

23  

24  _____

25  [11]    Dr. Henningfield is a leading researcher in tobacco and nicotine dependence who testifies about population-level trends in nicotine dependence based on data and experience.   Plaintiff's cursory attempt to exclude Dr. Henningfield's opinions is without merit and any criticisms go to the weight, not admissibility of his testimony.

26  [12] Plaintiff's expert, Dr. Prochaska, agrees that the population-level impact of e-cigarettes is relevant.  Dr. Prochaska

27  testified that "ideally at the population level that [e-cigarettes] displaces cigarettes over time; that it offers an alternative that if people were either initiating to or switching to, that it's viewed as less deadly than a combusted cigarette." Ex. 35, Prochaska Dep. 441:15-23.

28

alternative causes. *See Geurin*, 316 F.3d at 885. Dr. Bigelow intends to offer the opinion at trial that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████        ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Plaintiff chose to take that risk and must now accept the consequences at trial.

### E.      Covid-19 (II.E)

The parties have already reached a stipulation regarding this issue (ECF No. 2976; this motion should be denied as moot.

### F.      Motivation to File Suit (II.I)

Plaintiff seeks to exclude any evidence of B.B. or her parents' motivation to file suit. In particular, B.B. argues that that the Court should exclude a statement ████████████████████████ ████████████████████████████████████████████ Contrary to Plaintiff's contention, this evidence is relevant to the credibility of Plaintiff and her family members on other issues and should be allowed.

*First*, the family's financial motivations in bringing suit are directly relevant to the credibility and bias of B.B. and her parents—three central witnesses in the case. *Conan v. City of Fontana*, 2017 WL 7795953, at *2 (C.D. Cal. Oct. 16, 2017) ("Plaintiff's financial motivation in bringing the instant lawsuit is relevant to Plaintiff's bias and credibility"). B.B. and her mother Robin Bain allege that the Defendants' improper conduct caused B.B. to start using JUUL and that

---

[13] *Cf. Skaar v. Albuquerque Pub. Sch.*, 1998 WL 36030840, at *1 (D.N.M. Mar. 24, 1998), *aff'd*, 176 F.3d 489 (10th Cir. 1999) (dismissing case due to plaintiff's refusal to undergo medical testing); *Klanseck v. Anderson Sales & Service, Inc.*, 356 N.W.2d 275, 280 (Mich. Ct. App. 1984) ("[P]laintiff's refusal to undergo diagnostic tests and his failure to fully divulge his symptoms . . . justified the trial court's instruction on mitigation of damages.").

she suffers extensive injuries from that use.  Second Am. Compl. ¶12.  Both B.B. and her mother intend to testify at trial, and Troy Bain will be called by designation.  Ex.38, Plaintiff's April 1, 2022 Refined Witness List; Ex.39, Letter from R. Smith re JLI's Witness List.  The jury, which is charged with assessing their believability, should not be shielded from admissions concerning their financial motivations, which go directly to credibility.  Notably, despite years of using vape products, ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████  The family's financial motivation provides an alternative reason that Plaintiff is bringing this suit and supports Defendants' claim that Plaintiff should have, but failed to, mitigated damages via earlier treatment.

   *Second*, Defendants should be able to put on evidence of Plaintiff and her family's motivation for the lawsuit in response to the family's own testimony on this very issue.  *Wilson*, 2019 WL 1386735 at *6 (denying exclusion where "it would have given the jury a completely distorted picture" of the facts), *aff'd*, 804 F. App'x 58 (2d Cir. 2020); *Keen v. C.R. Bard, Inc.*, 480 F. Supp. 3d 646, 651 (E.D. Pa. 2020) ("[Defendant] may also be prejudiced if it is not permitted an opportunity to present to the jury a full picture").  ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

   Plaintiff cites to cases that do not support the broad exclusion she seeks.  For instance *Aleman v. Volvo Cars of North America, LLC* addressed topics which Defendants have already agreed they

---

[14] Plaintiff is also incorrect that Mr. Bain's statement may be excluded under Rule 403, *see* Pl. Br. 17, which allows for the exclusion of evidence only where relevance is "substantially outweighed" by a risk of prejudice. Fed. R. Evid. 403. Plaintiff does not explain the prejudice that would result from Troy Bain's admission, let alone how it outweighs the relevance of evidence bearing on the credibility of key trial witnesses.

1   will not raise, 2020 WL 4742814, at *1 (C.D. Cal. Apr. 15, 2020) (granting motion to exclude

2   evidence of attorney advertisements).  Another of Plaintiff's cited cases, *Frederick v. Braden*, held

3   that evidence of Plaintiff's motivation was "irrelevant to the issues on summary judgment" as the

4   Court was able to find summary judgment against Plaintiff without making any finding as to

5   motivation.  2011 WL 5325254, at *4 (C.D. Cal. Aug. 31, 2011).  This has no bearing on whether

6   motivation evidence is relevant or appropriate in this case at trial.

7        Finally, Plaintiff is also wrong that the statement by Troy Bain and B.B. is "inadmissible

8   hearsay."  Hearsay involves statements that are offered for the "truth of the matter asserted."  Fed.

9   R. Evid. 801.  Here JLI does not offer the statement for its truth—Defendants do not agree that any

10  Plaintiff should ███████████ in this lawsuit.  The statement is being offered, instead, as credibility

11  evidence, which is important to the jury's assessment of Plaintiff's allegations of harm and injury,

12  as well as to rebut the notion that the family is suing for "justice."  Fed. R. Evid. 801; *see also United*

13  *States v. Yagi*, 2013 WL 10570994, at *3 (N.D. Cal. Oct. 17, 2013); *Koch v. Koch Indus., Inc.*, 1992

14  WL 223826, at *15 (D. Kan. Aug. 24, 1992) ("It is a truism that evidence of bias is critical in

15  evaluating the credibility of a witness.").  And B.B. is a party to this lawsuit, making her statement

16  an admission by a party-opponent excluded from the category of hearsay.  *See* Ex. 36, E.S. Dep.

17  25:3–5 ("Q: And what if anything did Bella or her father say about this lawsuit? A: That they were

18  going to make money.").  Fed. R. Evid. 801(d)(2).  The statement therefore is not hearsay, and

19  Plaintiff's motion II.I should be denied.

20       For these reasons, the Court should deny Plaintiffs' Motion II.L in its entirety.

21  **G.      B.B.'s Preservation Issues (II.C, II.L)**

22       These motions may be denied as moot.  JLI does not intend to discuss B.B.'s failure to

23  preserve her JUUL device or information from the Snapchat social media platform at trial.

24                          **CONCLUSION**

25  The Court should deny Plaintiff's motions in limine.

26

27

28

1   Dated: April 8, 2022                    Respectfully submitted,

2

3

4                                          */s/ Renee D. Smith*
                                           Renee. D. Smith
5

6

7   DAVID M. BERNICK, P.C. (*pro hac vice*)
    david.bernick@kirkland.com
8   RENEE D. SMITH (*pro hac vice*)
    renee.smith@kirkland.com
9   KIRKLAND & ELLIS LLP
    300 North LaSalle
10  Chicago, IL 60654
    Telephone: (312) 862-2000
11  Facsimile: (312) 862-2200

12  PETER A. FARRELL, P.C. (*pro hac vice*)
    peter.farrell@kirkland.com
13  JASON M. WILCOX, P.C. (*pro hac vice*)
    jason.wilcox@kirkland.com
14  KIRKLAND & ELLIS LLP
    1301 Pennsylvania Ave., N.W. Washington, DC 20004
15  Telephone: (202) 389-5000
    Facsimile: (202) 389-5200
16
    GREGORY P. STONE (SBN 78329)
17  gregory.stone@mto.com
    DANIEL B. LEVIN (SBN 226044)
18  daniel.levin@mto.com
    BETHANY W. KRISTOVICH (SBN 241891)
19  bethany.kristovich@mto.com
    MUNGER, TOLLES & OLSON LLP
20  350 South Grand Avenue, 50th Floor
    Los Angeles, CA 90071-3426
21  Telephone: (213) 683-9100
    Facsimile: (213) 687-3702
22
    *Attorneys for Defendant Juul Labs, Inc.*
23
    Lauren S. Wulfe (SBN 287592)
24  ARNOLD & PORTER KAYE SCHOLER LLP
    777 South Figueroa Street, Forty-Fourth Floor
25  Los Angeles, California 90017
    Telephone: 213-243-4000
26  Facsimile: 213-243-4199
    Lauren.Wulfe@arnoldporter.com
27
    Paul W. Rodney (*admitted pro hac vice*)
28  ARNOLD & PORTER KAYE SCHOLER LLP

1144 15th Street, Suite 3100
Denver, CO 80202
Telephone: 303-863-1000
Facsimile: 303-832-0428
Paul.Rodney@arnoldporter.com

John C. Massaro (*admitted pro hac vice*)
Daphne O'Connor (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999
John.Massaro@arnoldporter.com
Daphne.OConnor@arnoldporter.com
Jason.Ross@arnoldporter.com
David.Kouba@arnoldporter.com

Angela R. Vicari (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-836-8000
Facsimile: 212-836-8689
Angela.Vicari@arnoldporter.com

*Attorneys for Defendants Altria Group, Inc.,*
*Philip Morris USA Inc., Altria Client Services LLC,*
*Altria Group Distribution Company, and*
*Altria Enterprises LLC*

1

## <u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on April 8, 2022, I electronically filed the foregoing document with the

3    Clerk of the Court using the CM/ECF system, which will automatically send notification of the

4    filing to all counsel of record.  I also caused a copy of the under-seal documents to be served via

5    electronic mail on all parties.

6                                        By: */s/ Renee D. Smith*

7                                            Renee D. Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28