[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO<br><br>**PLAINTIFF'S MOTION TO PLAY DEPOSITION DESIGNATIONS SEPARATELY AT TRIAL** |
| This Document Relates to:<br><br>*Robin Bain, individually, and as the legal Guardian of her minor child, B.B. v. Juul Labs, Inc., et al.*<br><br>Case No. 3:20-cv-07174 | |

## I. INTRODUCTION

The Court advised that its "normal practice [is] to play all video deposition excerpts for a witness at once," but, prompted by an inquiry by Plaintiff, the Court invited the Parties' positions on whether it should follow normal practice during the B.B. trial or "allow plaintiffs and defendants to instead play their designated video deposition excerpts separately during each sides' case presentation." December 6, 2021 Minute Order, Dkt. 2611. Plaintiffs asked "to defer this issue until the parties exchange deposition designations and objections, and counter-designations." CMC statement, Dkt. 2781 at 10.

The majority of designation exchange has occurred and, in Plaintiff's view, Defendants have counter-designated a disproportionate amount of testimony to be played during Plaintiff's case-in-chief. For example, in response to eight minutes of testimony Plaintiff affirmatively designated from the deposition of former JLI CEO Tyler Goldman, Defendants counter-designated 57 minutes of testimony.[1] If the Court were to follow its normal practice and also allow Defendants' affirmative designations at the same time as Plaintiff's affirmatives (along with the respective counter-designations), the disparity in total run time in Plaintiff's case-in-chief would be even more pronounced and the distraction from Plaintiff's case even more severe.

Plaintiff respectfully requests an order that (1) only counter-designations for completeness under Federal Rule of Evidence 106 or Fed. R. Civ. P. 32(a)(6) may be played with affirmative designations, and (2) each side's affirmative designations should be played separately during its own case-in-chief.[2] Alternatively, if the Court declines to adopt this procedure for *all* witnesses called via deposition, Plaintiff requests that it be applied on a case-by-case basis to the most disproportionate designations. Plaintiff's proposal is in keeping with the "principle" that the rule of completeness "exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document." *U.S. v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014)

---

[1] Not every designation is this disproportionate, but many are, and even those less egregious serve as detours and distractions that compromise Plaintiff's ability to put on her best case.

[2] FRE 106 requires contemporaneous introduction only if it "in fairness ought to be considered at the same time." FRCP 32(a)(6) requires the offeror to introduce only "other parts that in fairness should be considered with the part introduced."

## II. BACKGROUND

As of now, Plaintiff may call up to 31 witnesses by deposition. Although this list will be pared further before trial, a comparison of the total time designated for these witnesses is revealing. Plaintiff's affirmative designations for these witnesses total approximately 20 hours. The corresponding counter-designations by Defendants total more than 12 hours. Defendants' designations alone would inject more than two trial days of defense evidence to Plaintiff's case-in-chief. And time is not the only consideration. If not limited to completeness, Defendants' designations serve to disrupt the coherent presentation of Plaintiff's case and distract the jury from the proof Plaintiff offers to meet her burden.

Some of the time disparities are worse than others. For several witnesses, Defendants' counter-designations match or exceed the duration of Plaintiff's affirmative designations. The chart below shows a comparison of Plaintiff's affirmative and Defendants' counter-designations for a subset of some of the worst offenders among witnesses likely to be played at trial. For Richard Mumby (JLI Chief Marketing Officer) and Thomas Perfetti (former R.J. Reynolds chemist and JLI consultant), Defendants' counters are nearly twice as long as Plaintiff's affirmatives; for Nora Walker (JLI Social Media Manager) and Ari Atkins (JLI Engineer), they are approximately three times as long. Worst of all, Defense counters for Tyler Goldman are more than seven times as long as Plaintiff's laser-focused eight-minute cut.



Many if not most of Defendants' counter-designations would not be permitted in Plaintiff's case were Defendants limited to completeness (though of course, Defendants would be free to present such testimony in their cases). In Richard Mumby's deposition, for example, Defendants counter-designated a combined eight pages of testimony about consumer marketing studies, JLI's marketing code, JLI's advertisements in Vice magazine, but Plaintiff did not affirmatively designate testimony on any of these topics. *See* Plaintiff's Objections to Defense Counters, Mumby Dep. at 785:12-788:20, 830:10-831:4, 831:25-833:19, 833:22-835:20. Defendants thus could not satisfy their "burden of establishing the applicability of the rule of completeness" to these counter-designations. *Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-CV-01414-HSG, 2017 WL 2001981, at *10 (N.D. Cal. May 11, 2017). Defendants' counters in Mumby thus would be appropriate only as affirmative designations, but Defendants opted not to send any affirmatives.

For several of the witnesses Plaintiff has affirmatively designated, Defendants submitted affirmative designations of their own. The chart below compares the total time each side has designated—*i.e.,* each side's affirmative and counter-designations—with any overlap only counted once.[3] The total run-time per witness attributable to Defendants' designations is *double* the total time for Plaintiff's corresponding designations for Mumby and Perfetti, and nearly *triple* for Walker, Goldman, and Atkins.

---

[3] While Plaintiffs have not calculated the exact overlap for every witnesses, the subset examined here indicates that long Defense counters overlap significantly with Defense affirmative designations. For example, of the 57 minutes counter-designated by Defendants for Goldman, 50 of those minutes also were designated as Defense affirmatives.

- 4 -

PLAINTIFF'S MOTION TO PLAY DEPOSITION
DESIGNATIONS SEPARATELY AT TRIAL
CASE NO. 19-md-02913-WHO



In all, this subset of some of the most disproportionate designations accounts for three hours and fifty minutes of trial time attributable to Plaintiff, and seven hours nineteen minutes attributable to Defendants—all to be introduced during Plaintiff's case-in-chief if Plaintiff does not obtain relief here.

III. **ARGUMENT**

"The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to … make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). In the exercise of that discretion, courts have recognized that it can be most effective to play deposition designations designated by each side in its own presentation, to avoid the inherent prejudice and risk of confusion if one party is able to present much of its case during its opponent's case-in chief. *See, e.g.*, *In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021), *In re: 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-02885-MCR-GRJ, Pretrial Order No. 64 Trial Time Allocation For The First Bellwether Trial, Dkt. 1640 at 6 (N.D. Fla. Jan. 21, 2021); *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, Order Regarding Trial Matters, Dkt. 2594 at 2 (N.D. Ohio Sept. 12, 2019). That is particularly appropriate here because Plaintiff has a complex story to tell in limited time, in the first bellwether trial in this MDL.

### A. Defendants' Affirmative Designations and Any Counters Not Required for Completeness Should Be Played during Defendants' Presentation.

Federal Rule of Civil Procedure 32(a)(6) limits designations to completeness: "If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Federal Rule of Evidence 106 has a parallel fairness requirement. Rule 106 "codified the common law Rule of Completeness, which exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document." *Vallejos*, 742 F.3d at 905 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)); *see also* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). "The burden of establishing the applicability of the rule of completeness falls on the party seeking to have a counter-designation played in the other party's case." *Phoenix Techs. Ltd.*, 2017 WL 2001981, at *10.

Testimony beyond that required by Rules 106 and 32 for fairness may, and often should, be offered at a separate time: "it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir.1996) (quoting Mueller & Kirkpatrick Federal Evidence § 44 (1994)).

Courts routinely limit counter-designations to completeness while requiring that all other testimony offered by an adverse party be presented to the jury separately. *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *18-19 (S.D. Ill. Dec. 22, 2011) ("[T]he Court will follow Rule 32(a)(6), however, as the rule reads *only* so much counter-designation will be read as is necessary to allow for a *fair* reading of the testimony.") (emphasis in original); *In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021) (same). As Judge Corley noted in her order in *Pacific Fertility Center*, "[i]f testimony [Defendant] designated does not come in during Plaintiffs' presentation as a matter of fairness, [Defendant] may offer the

deposition testimony in its own case-in-chief." 2021 WL 2075560, at *1 (citing Fed. R. Civ. P. 32(b)(6)).

The Court should limit counter-designations to those required by the rule of completeness. Both the long duration of counters and the significant overlap between Defendants' affirmative and counter-designations indicate that their counters are not responsive to the issues Plaintiffs raised affirmatively, and likely are not required for fairness under Fed. R. Evid. 106 and Fed. R. Civ. P. 32. Plaintiff's own review of the designations bears this out. For example, Plaintiff's affirmatives for Goldman, Atkins, and Walker are each under 25 minutes, but Defendants' counters add an additional hour or more to each. And for Goldman, 50 of the 57 minutes counter-designated were designated affirmatively by Defendants. Defendants thus already anticipate offering this testimony in their own case-in-chief, and suffer no prejudice if required to present their evidence in their case.

Allowing only counters for completeness will be most "effective for determining the truth," Fed. R. Evid. 611(a)(1), and will avoid confusing the jury. Plaintiff endeavored to submit affirmative designations that were as succinct as possible while still satisfying her burden. Half of Plaintiff's affirmative designations are approximately 30 minutes or less, and all but one are under one hour and six minutes. Defendants' disproportionate counter-designations will dilute that testimony, and detract from the exhibits and testimony Plaintiffs wish to introduce by surrounding them with hours of unrelated and confusing material. Limiting to completeness also will aid the jury's evaluation of the testimony by providing a clear indication of which side is offering what testimony—a distinction that is lost when all designations are played together. And it would minimize distractions and detours from Plaintiff's affirmative evidence.

Playing each side's testimony separately would likely be *more* effective for determining the truth than playing all designations at once. Jurors struggle to remain attentive during long video depositions. The jury would benefit from seeing, for example, 16 minutes of focused testimony that Plaintiff designated from Tom Perfetti's deposition during her presentation, and 33 minutes of testimony designated by Defendants in their case, rather than nearly an hour of testimony all at once, much of which is not related to the narrow topics for which Plaintiff

designated him. Were these live witnesses, it would make sense to complete both side's examination of the witness in one sitting—both for the convenience of the witness and to reduce the risk of any potential COVID exposure. But those concerns don't apply to video testimony.

Defendants would suffer no prejudice if required to present their evidence in their case-in-chief, and Plaintiffs' video excerpts will make far more sense to the jury if they are not diluted by lengthy, confusing, and often unrelated testimony.

### B. At a Minimum, Highly Disproportionate Designations Should Be Played Separately

If the Court opts not to change its usual practice for every witness called via deposition, it should nevertheless order highly disproportionate designations to be played separately based on a case-by-case review. Specifically, the Court should adopt a rule similar to the one used in *In re: National Prescription Opiate Litigation*. There, Judge Polster held as a general rule that "[a] party wishing to present videotaped deposition of a fact witness in its case-in-chief must show to the jury, all at once, *all* of the designated portions of the videotaped deposition, including those designated by the opposing party," but made two important exceptions. *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio), Order Regarding Trial Matters, Dkt. 2594 at 2 (Sept. 12, 2019). First, "if one party's designations are very short and the other party's designations are much longer, the Court may allow the first party to present only the short designation by itself," and second, "when the plaintiff wants to play in its case-in-chief portions of a videotaped deposition of *a party opponent on cross-examination*, the defendant may not force the plaintiff to present concurrently the defendant's own designations." *Id*.

This procedure is fair because it balances the common impulse to hear from a witness all at once against the advantages of playing designations separately when they are disproportionate in length, and the inherent prejudice in allowing an adverse party to put on their best testimony in the middle of their opponent's case. Application of the "Polster Rule" in this case would be appropriate for several witnesses, including the ones specifically discussed above.

## IV. CONCLUSION

Plaintiff urges the Court to limit all Parties' counter-designations to completeness in accordance with Fed. R. Evid. 106 and Fed. R. Civ. P. 32(a)(6). Doing so will provide for the jury the most coherent and concise presentation each Party has to offer while minimizing unduly lengthy videos. If the Court is not inclined to grant Plaintiff's requested relief in full, she respectfully asks for a targeted approach that separates the most disproportionate designations.

Dated: April 29, 2022

Respectfully submitted,

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: /s/ *Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

By: */s/ Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone: (206) 623-1900
dkawamoto@kellerrohrback.com

<pre>
                          By: /s/ Ellen Relkin

                          Ellen Relkin
                          **WEITZ & LUXENBERG**
                          700 Broadway
                          New York, NY 10003
                          Telephone: (212) 558-5500
                          erelkin@weitzlux.com

                          *Co-Lead Counsel for Plaintiffs*
</pre>

### FILER'S ATTESTATION

I, Dena C. Sharp, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel has concurred in this filing.

<pre>
                          By: /s/ Dena C. Sharp
</pre>

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Dena C. Sharp*
Dena C. Sharp