UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC. MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO<br><br>**TENTATIVE OPINIONS AND GUIDANCE FOR PRETRIAL CONFERENCE** |

To help the parties prepare for the Pretrial Conference, I provide the following Tentative Opinions on the parties' motions in limine and guidance on the other matters to be determined at the Pretrial Conference. Each side will have 45 minutes to argue any motion in limine and the TPLA instruction issue. Then we will discuss the other matters listed at the end of this Order.

Very few of my ultimate rulings on the motions in limine will be set in concrete. As the trial proceeds, the parties may open the door to evidence I have indicated should be excluded. No party may unilaterally decide that the door is open; that should be raised with me in the morning before trial or at a break.

Some of my tentative rulings direct that the parties prepare limiting instructions to address particular issues. Those limiting instructions should be presented jointly on June 2, 2022. If agreement cannot be reached, competing instructions may be offered.

## I. DEFENDANTS' MOTIONS IN LIMINE

### 1. Evidence And Argument Re Nicotine Disclosures on Labels and Packaging

DENY, to the extent I have determined that B.B.'s failure to warn claims are not preempted. Plaintiff and her experts have agreed that they "will not offer any opinions at trial suggesting the JUUL packaging should have included additional statements about addiction or that the FDA-mandated black box warning was insufficient." Pls. Omnibus Oppo. to Defendants' *Dauberts* [Dkt. No. 2821-3] at 28. Plaintiff shall be prepared to affirm the boundaries of what she

will or will not argue regarding warnings about nicotine and/or addiction.

### 2. Marketing That B.B. Was Not Exposed To

DENY, except for Colbert video clip under Rule 403. Parties shall meet and confer to propose a limiting instruction regarding background marketing that B.B. was not directly exposed to.

### 3. Third Party Social Media Content

DENY, except plaintiff shall not reference posts made by "rapper and internet personality known as 'Yung Turd.'" The parties shall meet and confer on a limiting instruction clarifying that JLI is not directly responsible for third-party statements but that JLI is responsible for its own conduct.

### 4. Education and Youth Prevention Program Interactions with Youth and Related Congressional Testimony

DENY, except as to Congressional testimony. However, only limited evidence may be allowed, otherwise the Rule 403 concerns regarding jury confusion and waste of time spent on issues with marginal relevance come into play.

### 5. JLI's Online Age Verification Processes

DENY. However, only limited evidence may be allowed, otherwise the Rule 403 concerns regarding jury confusion and waste of time spent on issues with marginal relevance come into play.

### 6. Hearsay "Thriller" Books

GRANT, with possible exception of where an expert is challenged for a basis of her or his opinion. In that event, title of book should not be mentioned.

### 7. Defendant's Or Witnesses Wealth or Financial Condition

GRANT as to category 1 (personal wealth and spending patterns); DENY as to category 2 (amount of money received as a result of Altria deal); and allow category 3 (company financial condition) in punitive damages phase. Limited information about revenues received from sales of JUUL may be allowed in liability phase.

### 8. Historical Conduct Concerning Combustible Cigarettes

DENY, although the amount of historical/background testimony should be limited.

### 9. Judicial Findings and Opinions in Cigarette Litigation

GRANT, under Rule 403. Explaining background of and rulings in other litigation risks juror confusion and waste of time. However, counsel may explore a witness's knowledge of the litigation if it impacted his or her conduct in a way that is relevant to this case.

### 10. Evidence Concerning Cigarette Companies' Settlements with State Attorneys General

DENY, except no reference to the monetary component of the settlements will be allowed.

### 11. Altria Conduct Unrelated To B.B. Injuries

DENY, subject to narrow and targeted objections at trial.

### 12. Frankel Email

Deferred in light of the parties' stipulation regarding the supplemental deposition of Frankel. Defendants may re-raise this objection, if necessary, within ten days following the supplemental deposition.

### 13. The "Morality" of Selling Cigarettes

GRANT.

### 14. Mischaracterization of Altria and JLI's Relationship

GRANT as to "merger," "Altria-West" and referring to PM/Altria as a "corporate affiliate." DENIED, otherwise with objections to be considered in context at trial.

### 15. Protected Communications with the Government

DENY.

### 16. Changes to the MarkTen Product

GRANT, without prejudice to reconsideration during trial as a possible matter for cross-examination if Altria makes FDA-compliance a centerpiece of its defense.

### 17. Philip Morris International

DENY, but only allowed for the limited context of JLI allegedly attempting to position itself for interest by other companies. A limiting instruction may be provided if and as necessary.

### 18. Altria's Acquisition of Cronos

GRANT.

### 19. FDA's Criticism of Altria's Investment in JLI

DENY, without prejudice to raising at trial with respect to particular documents and witnesses.

### 20. Foreign Regulation of Tobacco Products

DENY, without prejudice to raising at trial and can be subject to limiting instruction.

## II. PLAINTIFF'S MOTIONS IN LIMINE

### General Motions

#### A. The Court Should Preclude Evidence or Argument Misrepresenting the Nature of Federal Regulation of JUUL Products and the Effects of Federal Law on Plaintiff's Claims

GRANT. However, the parties shall meet and confer on a limiting instruction or instructions outlining: (1) that prior to Deeming Rule, no federal requirements applied to ENDS; (ii) that after the Deeming Rule, JLI complied with FDA's minimum nicotine warning on its packaging as of May 2018, but that does not foreclose defendants' liability for B.B.'s claims. Defendants are not prohibited from introducing evidence that they considered or were guided by the TCA and FDA regulations in developing or marketing their products prior to and after the Deeming Rule, but defendants should not argue that they were bound by the TCA or the FDA regulations when they were not.

##### 1. The Court Should Prohibit Evidence or Argument Mispresenting JUUL as an FDA-Authorized or "Legal" Product

GRANT, in limited respect. At this juncture, JLI cannot argue or solicit evidence that the FDA has approved anything about JUUL other than allowing JUUL to stay on the market pending the determination on its PMTA and that JLI complied with the FDA's required minimum nicotine warning. The limiting instructions discussed above should provide clarity and to the extent defendants voluntarily followed FDA guidance or other "industry standards" and to extent defendants were guided by the TCA goals and FDA guidance that testimony is allowed.

4

### 2. The Court Should Prohibit Defendants from Misrepresenting that the FDA has "Approved" of JUUL Marketing

GRANT, consistent with guidance provided above and potential clarifying or limiting instructions.

### 3. The Court Should Prohibit Defendants from Claiming that FDA Regulations Prevented JLI from Supplying Additional Warnings

GRANT, consistent with above and potential clarifying or limiting instructions.

### 4. The Court Should Prohibit Defendants from Claiming that the TCA's Definition of "New Tobacco Products" Absolves JLI of Responsibility for its Product's Design

GRANT, consistent with above and potential clarifying or limiting instructions.

### 5. The Court Should Prohibit Defendants from Arguing that JLI Complied with all Federal Regulations before the Deeming Rule

GRANT, consistent with above and potential clarifying or limiting instructions.

**B. The Court Should Exclude Advertisements From Other Industries**

DENY.

**C. The Court Should Prohibit Lay Testimony About JUUL's Safety or Effectiveness**

DENY. Witnesses will be able to testify as to their lay understandings as long as an adequate foundation is laid.

**D. The Court Should Exclude Evidence and Argument Regarding the Effect of a Verdict on Defendants and Society, Including that an Adverse Verdict Could Result in the Recall of a Product that Could Potentially Save a Billion Lives**

GRANT, as to the "effect of verdict" on product availability or impact on companies in liability phase. Defendants are not precluded from introducing testimony regarding JLI's belief as to the benefits and aims of the product as part of its background testimony and risk-utility analysis under Tennessee law, but cannot elicit testimony about impact of a "verdict" on the market or on public health.

**E. The Court Should Prohibit Defense Counsel From Engaging in Improper Vouching by Referring to Defendants as "We," "Us," or "Our"**

GRANT, as to all counsel.

**F.  The Court Should Exclude References to the Personal Lives or Backgrounds of the Attorneys**

GRANT.

**G.  The Court Should Exclude Personal Testimonials About Juul or Smoking by Attorneys and Witnesses**

DENY as to witnesses, GRANT as to attorneys.

**H.  The Court Should Exclude any Argument or Suggestion by Defense Counsel that They or the Defendants Sympathize With the Plaintiff**

DENY, subject to objections are trial.

**B.B.-Specific Motions in Limine**

**A.  The Court Should Exclude any Suggestion or Testimony that B.B.'s Family Members Should Have Tried Harder to Encourage Plaintiff to Stop Using JUUL, or that They Facilitated Use of JUUL by Providing an Allowance, or Warned the Plaintiff of the Risks of Using JUUL**

DENY, with respect to limited evidence directly relevant to Tennessee's comparative fault regime, but plaintiff may raise specific objections at trial.

**B.  The Court Should Exclude any Speculation that B.B. Would Have Been a Cigarette Smoker if She Had Not Started Vaping**

GRANT.  Henningfield, however, may testify about population-level evidence.

**C.  The Court Should Exclude any Argument or Suggestion that B.B. Failed to Preserve Her JUUL device**

GRANT.

**D.  The Court Should Exclude any Speculation that Further Medical Testing Would Have Supported Defendants' Defenses**

DENY, as defendants are allowed to suggest alternate causal bases if supported by science and case-specific facts.

**E.  The Court Should Exclude any Reference to the Timing and Circumstances of B.B. and Her Family Receiving the COVID-19 Vaccine**

GRANT per stipulation.

**F.  The Court Should Exclude Testimony Suggesting B.B. Was Genetically Predisposed to Substance Use and/or Addiction**

GRANT.  Alternate causal evidence may be admitted under Tennessee law where there is both a scientific and factual basis.  There is no evidence of diagnosed substance abuse disorders or significant substance abuse, as opposed to mere use, in B.B.'s immediate family included in

6

1  Steinberg's Report or the deposition excerpts provided. Without adequate evidentiary support, Steinberg cannot testify that B.B. "may" have a genetic predisposition to addiction and that testimony will be excluded under Rules 402 and 403.

### G. The Court Should Exclude Improper Character Evidence

GRANT in part and DENY in part. Testimony regarding "risk taking" is allowed to a limited extent where there is both a scientific and factual bases. So, for example, limited testimony regarding teens engaging in risk-taking behavior or that teens are particularly susceptible to peer pressure will be allowed. Evidence regarding B.B.'s family members and family situation is considered separately below.

### H. The Court Should Exclude Unduly Prejudicial Evidence about Family Substance Use

GRANT, under Rules 402 and 403, except for the very narrow open-ended questions identified below.

#### 1. Robin and Troy Bain

GRANT. The only exception is that defendants may ask B.B. limited, non-leading questions on what she saw or knew about her parents smoking or alcohol use during the time when she started to use and used JUUL to explore her contemporaneous knowledge of her parents smoking (cigarette, cigar, or marijuana) or alcohol use. Those questions may not be leading or suggestive. So, for example, defendants may ask whether at the time B.B. had seen or had knowledge of her parents "smoking." Unless B.B. answers affirmatively regarding that time period, no further questions may be asked. If B.B. answers affirmatively, defendants may follow up to ask what she saw or knew, again without leading or suggesting use of a particular substance other than what B.B. has identified.

#### 2. Extended Relatives' Tobacco Usage

GRANT.

#### 3. B.B.'s Younger Sister

GRANT.

7

**I. The Court Should Exclude Evidence or Argument about B.B.'s Alleged Motivation to File this Lawsuit**

GRANT under Rules 402 and 403.

**J. The Court Should Exclude Evidence or Argument about the Irrelevant and Unduly Prejudicial Events in Troy Bain's Life Including His Criminal Record**

GRANT. With the limited exception that defendants may ask B.B. about her homelife during the time she started using JUUL and whether there were any stressful or disruptive things going on in her home at that time. If B.B. answers affirmatively, defendants may follow up. But defendants shall not suggest or otherwise ask leading questions about Troy Bain's criminal record.

**K. The Court Should Exclude Evidence of Troy and Robin Bain's Marital Discord**

GRANT. With the limited exception that defendants may ask B.B. about her homelife during the time she started using JUUL and whether there were any stressful or disruptive things going on in her home at that time. If B.B. answers affirmatively, defendants may follow up. But defendants shall not suggest or otherwise ask leading questions about her parents alleged marital discord.

**L. The Court Should Exclude Testimony or Suggestion that B.B. Failed to Preserve Evidence on Social Media Platform Snapchat**

GRANT.

**III. PRETRIAL ISSUES**

**A. Tennessee Code § 29-28-105 re: claims for misrepresentation by concealment**

The TPLA elements for defective products claims are not required for "misrepresentations" claims, including claims based on omissions or concealment as those claims are generally treated consistently with misrepresentation claims under Tennessee law. A separate instruction identifying those elements may be used, as long as it is clear that those elements do not apply to B.B. misrepresentation by concealment claim.

**B. Other Matters to be Discussed**

The Court will also address: (i) plaintiff's motion on Order of Deposition Designations; (ii) defendants' motion to Compel Compliance with the Pretrial Scheduling Order and for Further Guidance; (iii) the impact of plaintiff's still pending motion for partial summary judgement on

choice of law; (iv) what kind of live stream from the trial may be available for remote-counsel; (v) bifurcation for punitive damage evidence into a phase 2; (vi) the contents, structure, and use of the proposed juror questionnaire; (vii) the length of trial days; (viii) Covid-related practices; (ix) procedures for jury selection; and (x) any other trial related matters of interest to the parties.

In addition to the pre-trial matters, the Court intends to discuss selection of the third Tribal Bellwether, a schedule for hearing argument on the Pesce-specific motions for summary judgment and motions to exclude, and any other case management related issues.

**IT IS SO ORDERED.**

Dated: May 6, 2022


William H. Orrick
United States District Judge