1  Lauren S. Wulfe (SBN 287592)
   ARNOLD & PORTER KAYE SCHOLER LLP
2  777 South Figueroa Street, Forty-Fourth Floor
   Los Angeles, California 90017
3  Telephone: 213-243-4000
   Facsimile: 213-243-4199
4  Lauren.Wulfe@arnoldporter.com

5  John C. Massaro (*admitted pro hac vice*)
   Daphne O'Connor (*admitted pro hac vice*)
6  Jason A. Ross (*admitted pro hac vice*)
   David E. Kouba (*admitted pro hac vice*)
7  ARNOLD & PORTER KAYE SCHOLER LLP
   601 Massachusetts Ave, NW
8  Washington, DC 20001
   Telephone: 202-942-5000
9  Facsimile: 202-942-5999
   John.Massaro@arnoldporter.com
10 Daphne.OConnor@arnoldporter.com
   Jason.Ross@arnoldporter.com
11 David.Kouba@arnoldporter.com

   Paul W. Rodney (*admitted pro hac vice*)
   ARNOLD & PORTER KAYE SCHOLER LLP
   1144 15th Street, Suite 3100
   Denver, CO 80202
   Telephone: 303-863-1000
   Facsimile: 303-832-0428
   Paul.Rodney@arnoldporter.com

   Angela R. Vicari (*admitted pro hac vice*)
   ARNOLD & PORTER KAYE SCHOLER LLP
   250 West 55th Street
   New York, NY 10019
   Telephone: 212-836-8000
   Facsimile: 212-836-8689
   Angela.Vicari@arnoldporter.com

12 Attorneys for Defendants Altria Group, Inc.,
   Philip Morris USA Inc., Altria Client Services LLC,
13 Altria Group Distribution Company, and
   Altria Enterprises LLC

14

# * * * FILED UNDER SEAL * * *

15

16

17 ## UNITED STATES DISTRICT COURT

18 ## NORTHERN DISTRICT OF CALIFORNIA

   ## SAN FRANCISCO DIVISION

19

20

21 IN RE: JUUL LABS, INC., MARKETING,
   SALES PRACTICES, AND PRODUCTS
22 LIABILITY LITIGATION

23 This Document Relates to:

24 *Pesce v. JUUL Labs, Inc., et al.*

25 Case No. 3:20-cv-02658

Case No.:  19-MD-02913-WHO

**ALTRIA'S REPLY IN FURTHER
SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

Hon. William H. Orrick

Date:      June 7, 2022
Time:      10:00 AM

26

27

28

## CONTENTS

INTRODUCTION ....................................................................................................................... 1

I.  PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW...................................................... 1

    A.  Plaintiff Cannot Establish Causation ................................................................... 1

    B.  Plaintiff's Claims Fail for Multiple Other Reasons ............................................. 5

        1.  Connecticut Product Liability Act ...................................................... 5

        2.  Strict Liability Under Rhode Island Law ........................................... 5

        3.  Negligence ........................................................................................... 6

        4.  Aiding and Abetting............................................................................. 7

        5.  Conspiracy .......................................................................................... 8

        6.  Fraud and Misrepresentation-Based Claims ...................................... 9

    C.  Plaintiff Cannot State Claims Based on Communications With the Government..... 10

II.  CONNECTICUT LAW SHOULD APPLY TO PLAINTIFF'S CLAIMS ........................... 11

III.  PERSONAL JURISDICTION .............................................................................................. 14

CONCLUSION ........................................................................................................................ 15

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Cases** ......................................................................................................................**Page(s)**

*Ames v. Oceanside Welding and Towing Co., Inc.*,
    767 A.2d 677 (2001) ............................................................................................ 8

*Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*,
    2017 WL 1739101 (N.D. Cal. May 4, 2017) ...................................................... 14

*Calise v. Hidden Valley Condominium Ass'n*,
    773 A.2d 834 (R.I. 2001) .................................................................................... 5

*Competitive Techs. v. Fujitsu Ltd.*,
    286 F. Supp. 2d 1118 (N.D. Cal. 2003) ............................................................ 13

*Connecticut National Bank v. Giacomi*,
    699 A.2d 101 .................................................................................................... 7

*Davison v. Kia Motors Am., Inc.*,
    No. SACV 15-CJC(RNBx), 2015 WL 3970502 (C.D. Cal. June 29, 2015)................ 13

*Ford Motor v. Montana*,
    141 S. Ct. 1017, 1026 (2021). ........................................................................... 15

*Gen. Signal Corp. v. MCI Telecommunications Corp.*,
    66 F.3d 1500 (9th Cir. 1995)............................................................................. 14

*Gushlaw v. Milner*,
    42 A.3d 1245 (R.I. 2012) .................................................................................. 7

*Harper v. Adametz*,
    18 Conn. Supp. 435 (Conn. Super. Ct. 1953) .................................................... 1

*Hillard v. TABC, Inc.*,
    CV 2017 WL 6940540(C.D. Cal. Dec. 18, 2017)............................................... 13

*Howe v. Diversified Builders, Inc.*,
    262 Cal. App. 2d 741, 69 Cal. Rptr. 56 (Cal. Ct. App. 1968)............................ 13

*Idlibi v. Hartford Courant Co.*,
    2021 WL 3832032 (Conn. Super. Ct. Aug. 6, 2021) ......................................... 10

*In re JUUL Labs, Inc., Mktg. Sales Prac. & Prod. Liab. Litig.*,
    2021 WL 3112460 (N.D. Cal. July 22, 2021)................................................... 14

*Kopperl v. Bain*,
    23 F. Supp. 3d 97 (D. Conn. 2014) ................................................................... 8

*Macomber v. Travelers Prop. & Casualty Corp.*,
    894 A. 2d 240 (Conn. 2006) .......................................................................... 8, 9

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC,*
   739 F. Supp. 2d 109 (D. Conn. 2010) ........................................................................... 8

*McCann v. Foster Wheeler LLC,*
   225 P.3d 516 (Cal. 2010) ............................................................................................. 12

*McGhee v. Arabian Am. Oil Co.,*
   871 F.2d 1412 (9th Cir. 1989) ..................................................................................... 13

*Meraz v. Ford Motor Co.,*
   2014 WL 12558123 (C.D. Cal. June 13, 2014) .......................................................... 13

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) ..................................................................................................... 14

*Paulo v. Bepex Corp.,*
   792 F.2d 894 (9th Cir. 1986) ....................................................................................... 13

*Petters Co. Inc. v. BLS Sales Inc.,*
   2005 WL 2072109 (N.D. Cal. Aug. 26, 2005) ........................................................... 14

*Rangel v. Parkhurst,*
   779 A.2d 1277 (Conn. App. 2001) ................................................................................ 7

*Read & Lundy, Inc. v. Washington Tr. Co. of Westerly,*
   2002 WL 31867868 (R.I. Super. Dec. 13, 2002) ......................................................... 8

*Reville v. Reville,*
   93 A.3d 1076 (Conn. 2014) ......................................................................................... 10

*Ritter v. Narragansett Elec. Co.,*
   283 A. 2d 255 (R.I. 1971) ......................................................................................... 1, 6

*Roberts v. Bartels,*
   2013 WL 6173142 (N.D. Cal. Feb. 19, 2013) ........................................................... 14

*Ruiz v. Victory Properties, LLC,*
   107 A.3d 381 (Conn. 2015) ........................................................................................... 6

*Splendorio v. Bilray Demolition Co., Inc.,*
   682 A.2d 461 (R.I. 1996) .............................................................................................. 1

*Selwyn v. Ward,*
   879 A.2d 882 (R.I. 2005) .............................................................................................. 6

*Stein v. Gipstein,*
   2011 WL 522893 (Conn. Super. Ct. Jan. 25, 2011) ..................................................... 7

*Swanson v. Marley-Wylain Co.,*
   280 Cal. Rptr. 3d 496 (Cal. Ct. App. 2021) ............................................................... 12

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*Theodore v. Lifeline Sys. Co.*,
    163 A.3d 654 (Conn. 2017) ............................................................................... 1, 6

*Western Reserve Life Assur. Co. of Ohio v. Conreal*,
    715 F. Supp. 2d 270 (D.R.I. 2010) ...................................................................... 10

*Zaino v. Zaino*,
    818 A. 2d 630 (R.I. 2003) ..................................................................................... 1

**Statutes**

Cal. Civ. Proc. Code § 361 ............................................................................................ 13

Conn. Gen. Stat. § 52-240b ............................................................................................. 5

Connecticut Product Liability Act .................................................................................. 5

**Other Authorities**

Restatement (Second) of Torts §§ 876(b), 876(c), and 877 ............................................ 7

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff begins his opposition with claims that Altria "propelled and assisted JLI to create an epidemic in which millions of youths, including Plaintiff [] developed nicotine addictions." Opp. at 1. Despite this familiar refrain, the facts and circumstances concerning ***this Plaintiff*** are unique. Altria's motion for summary judgment thus requires the Court to examine his claims on an individualized basis. Doing so shows that this Plaintiff's claims fail as a matter of law.

Plaintiff plays fast and loose with the undisputed facts in an effort to muddy the record and evade summary judgment. But once these facts are distilled from fiction and placed in chronological order, Plaintiff's narrative crumbles because there is no evidence to support any claim that Altria's conduct caused Plaintiff to use the JUUL product when he was a minor. Because causation is an essential element of Plaintiff's claims under Connecticut or Rhode Island law, summary judgment in Altria's favor is warranted on these grounds regardless of the law the Court applies.

To the extent the Court reaches the issue, however, and for reasons set forth below and in other submissions by Altria and other defendants, the Court should apply Connecticut law and reject Plaintiff's arguments that Rhode Island law applies. Indeed, not only did the most relevant conduct (youth use and youth injury) take place in Connecticut, but Altria learned after filing its motion for summary judgment, from sources other than Plaintiff, that Plaintiff now resides in Nevada. This only confirms that Plaintiff's time in Rhode Island was temporary, as a college student, and is insufficient to give Rhode Island a more compelling interest in having its law applied. As set forth below, Plaintiff's claims fail for additional reasons under Connecticut law, and none of the arguments in Plaintiff's opposition compel otherwise.

## I.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

### A.    Plaintiff Cannot Establish Causation

Regardless of what law applies to Plaintiff's claims, causation is an essential element of each cause of action asserted against Altria.[1] Based on the evidence in the record presented to the Court

---

[1] *Theodore v. Lifeline Sys. Co.*, 163 A.3d 654, 662-63 (Conn. 2017) (strict liability and negligence); *Splendorio v. Bilray Demolition Co., Inc.*, 682 A.2d 461, 467 (R.I. 1996) (negligence); *Ritter v. Narragansett Elec. Co.*, 283 A.2d 255, 262 (R.I. 1971) (strict liability); *Harper v. Adametz*, 18 Conn. Supp. 435, 438 (Conn. Super. Ct. 1953) (fraud); *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I. 2003) (fraud).

in connection with this summary judgment motion, Plaintiff cannot prove that any alleged wrongful conduct by Altria caused injury to him.  In fact, the undisputed facts demonstrate the opposite.

Plaintiff's pleadings and expert reports make clear that this case is about "underage" and "youth" use of JUUL and purported underage marketing.[2]  The youth-focused nature of Plaintiff's claims is confirmed by his Opposition.  When describing his negligence claim against Altria, for example, Plaintiff argues that "Altria owed a duty to not encourage and facilitate JLI's ongoing and foreseeable **harm to adolescents** like Pesce through marketing and selling a defective product in a way that would attract and addict **youth**."  Opp. at 14. (emphasis added).  Plaintiff bases this duty on "Altria's involvement with JLI to expand and maintain the **youth** vaping market."  *Id*. at 15 (emphasis added).  His negligence causation argument is also predicated on there being a "**youth vaping epidemic**" and injuries allegedly caused to "**young people like Pesce.**"  *Id*.  at 20 (emphasis added).  Likewise, Plaintiff's fraud claim alleges that "misrepresentations and omissions about JUUL . . . were **targeted at teens and young adults like Pesce**."  *Id*. at 21.  The same is true for Plaintiff's other claims.  *See, e.g.*, *id*. at 10 (aiding and abetting: "Altria directed and encouraged JLI's expansion of JUUL's **youth market** and is jointly liable for JLI's conduct, misrepresentations, fraud, and other tortious acts as an aider and abettor") (emphasis added); *id*. at 13 (conspiracy: "[Altria] knew that JUUL's popularity and sales were based on **youth use**, and that **concealing the risks of JUUL from those youth** was therefore an essential part of JLI's business plan.") (emphasis added).

To evaluate whether these claims survive summary judgment, it is essential to distinguish between conduct that allegedly took place when Plaintiff was a minor and conduct that allegedly took place after.  The date on which Plaintiff was no longer a minor is critical.  He turned 18 on ███

---

[2] First Amended Complaint ("Am. Compl.") ¶¶, 176, 315-17, 346, 354, 359, 380, 382, 480, 493, 497, 500, 503,506, 529, 530, 582, 586, 697 (ECF No. 15); Plaintiff's SJ Mot. at 6 (MDL ECF No. 2956); Plaintiff's Opp. to Altria SJ Mot. at 1-3, 5, 6, 8, 14, 18-19 (MDL ECF No. 3101); Plaintiff's Opp. to JLI SJ Mot. at 1-5, 17-18 (MDL ECF No. 3091).  References to "ECF No." refer to docket entries in the action *Pesce v. Juul Labs, Inc. et al.*, 3:20-cv-02658-WHO.  References to "MDL ECF No." refer to docket entries in the MDL action *In Re: Juul Labs, Inc., Mkg. Sales Prac., & Prods. Liab. Litig.*, No. 19-MDL-02913-WHO.

1

2

██. Ex. 1, 13:17-19; Ex. 2, ¶ 11.[3]  On that date, he would have been able to legally purchase JUUL products in his then state of residence, Connecticut.  Ex. 1, 155:24-156:3, 161:15-23; Ex. 2, ¶ 11.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

     The evidence proffered to avoid summary judgment demonstrates that Altria's alleged conduct did not cause and could not have caused him to use JUUL while he was a minor.  The earliest evidence submitted by Plaintiff to support his "underage" and "youth" focused claims against Altria is a July 30, 2017 email sent two-and-a-half months *after* Plaintiff's 18th birthday.  *See* Pl. Ex. 83.[4] The email is from JLI board member Zachary Frankel and purports to summarize what unnamed Altria employees supposedly said in a recent meeting with certain JLI employees about a potential investment.  Plaintiff claims this email shows Altria encouraged JLI to expand its "digital reach" and sales of JUUL, knowing that "digital marketing of JUUL targeted youth, and that increasing JUUL sales would necessarily increase youth usage of JUUL."  Opp. at 1.  Putting aside whether Plaintiff's interpretation of the email is correct (it is not) and whether this email should be admitted at trial (it should not be), it does not support ***this Plaintiff's*** claims against Altria.  By the time this email was sent in late July 2017, Plaintiff had reached the age of majority and could lawfully purchase JUUL in his home state of Connecticut.  Plaintiff offers no evidence that even purports to show misconduct by Altria directed at underage individuals before this time.  Accordingly, the undisputed facts show that Altria did not cause or contribute to Plaintiff's use of JUUL as a minor as a matter of law.

18

19

20

21

22

23

24

     Plaintiff also cannot demonstrate causation by arguing that Altria provided certain retail and distribution services to JLI either.  There is no evidence that he would have stopped using JUUL in the absence of those services.  In fact, the record evidence shows the contrary to be true and demonstrates that Altria's services had no impact on Plaintiff's use or purchase of JUUL.  He started using JUUL before those services began and continued to do so after services ended.  At all times, he bought at stores that Altria did not service.  And to the extent he bought from a store that was serviced

25

26

27

28

---

[3] References to "Ex.___" are to exhibits attached to Altria's SJ motion.  References to "Pl. Ex. _" are to exhibits attached to Plaintiff's Opposition.  References to "Vicari Decl. Ex. _" are to exhibits to the Declaration of Angela R. Vicari filed herewith.  References to "JLI Ex. _" are to exhibits attached to JLI's SJ motion.

[4] To be sure, Plaintiff attaches an April 25, 2017 email chain in which Steve Schroder reached out to Monsees/Bowen about scheduling a phone call to discuss "preliminary thoughts on potential ways to work together."  Pl. Ex. 93.  But that email purports to support Plaintiff's personal jurisdiction claim and contains no information relevant to Plaintiff's substantive claims of "underage" or "youth" use.

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

by Altria, he had already started purchasing from those stores before Altria provided those services. The record is devoid of anything that connects Plaintiff's purchases to Altria's services.

Additionally, Plaintiff's aiding and abetting claim fails to the extent the claim is based on the provision of retail services by Altria to two of the six retail locations at which Plaintiff claims to have purchased JUUL for two reasons. First, Plaintiff claims to have been addicted and injured three years before those services were ever provided. Second, Plaintiff's purchase of JUUL from at least four other retail stores that were not serviced by Altria confirms that he would have obtained JUUL even if Altria had not provided any services. Evidence of causation is therefore lacking and the aiding and abetting claims against Altria must be dismissed.

Nor can Plaintiff establish causation by arguing that Altria "prolonged the availability of mint JUUL pods, one of Pesce's preferred flavors." Opp. at 20. For starters, there is no evidence that the October 25, 2018 letter from Altria to FDA caused or contributed to FDA not removing mint-flavored JUUL products from the market before October 2019, when JLI voluntarily took them off of the market. Altria's letter addressed "mint flavors in cig-a-like e-vapor products" such as those being sold by Altria's subsidiary Nu Mark at the time and did not address mint-flavored JUUL products at all. Pl. Ex. 87. Moreover, to the extent the letter could be said to pertain to JUUL, the letter informed FDA that Altria "believe[d] that pod-based products," such as JUUL products, had "significantly contributed to the rise in youth use of e-vapor products." *Id*. at 2. Altria further noted that the availability of "flavors" had "further compounded" underage usage. *Id*. FDA, however, did not take action against pod-based products generally and allowed dessert and fruit flavored products implicated by Altria in the letter to remain available until January 2020—the same date it banned mint.[5] This further refutes Plaintiff's claims that FDA relied upon this letter when setting policy or that the letter caused mint to remain available.

Moreover, even if Plaintiff could show that Altria's letter caused mint-flavored JUUL to be available for an additional 11 months, he cannot show that the availability of mint-flavored JUUL

---

[5] *See* Vicari Decl. Ex. 2 (FDA Press Release, Jan. 2, 2020, "FDA finalizes enforcement policy on unauthorized flavored cartridge-based e-cigarettes that appeal to children, including fruit and mint." Available at https://www.fda.gov/news-events/press-announcements/fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes-appeal-children (visited May 12, 2022)).

caused his continued vapor use or alleged injuries because (1) he claims that he was already injured as of the date of the letter, and (2) there is no evidence he would have quit vaping if mint was not available between November 2018 and October 2019 when it came off the market.  Instead, the record shows the opposite.  He already was using other vapor products by January 2018 and has continued to use other vapor products after mint JUUL became unavailable.  Ex. 2, ¶ 26; Pl. Ex. 4 at 12.

And finally, Plaintiff's mint causation arguments fail because he cannot rely on Altria's communications with FDA to establish an element of his claims, since those communications are protected by *Noerr-Pennington* and *Buckman*, as set forth below.  *See* Section I.C., *infra*.

**B.     Plaintiff's Claims Fail for Multiple Other Reasons**

**1.     Connecticut Product Liability Act**

Plaintiff argues that his claims under the Connecticut Product Liability Act ("CPLA") should survive summary judgment for three reasons:  (1) Altria is a "seller" and therefore covered by the CPLA, (2) "if the CPLA applies, then Pesce's claims simply fall within the CPLA," and (3) "[e]ven if Altria were not a 'seller,' then it would be liable under the common law."  Opp. at 8-9.  Altria is not a "seller" for all the reasons set forth in its opening brief.  However, should this Court or a jury determine that Altria is a "seller" under the CPLA, Altria agrees that the CPLA, including its standards and limits on punitive damages, applies to Plaintiff's claims.  Conn. Gen. Stat. § 52-240b (limiting punitive damages to twice the damages awarded to the plaintiff).  With respect to the third argument, even if Plaintiff had properly brought claims against Altria under Connecticut common law rather than the CPLA, those claims for lack of causation.  *See* Section I, *supra*.

**2.     Strict Liability Under Rhode Island Law**

Even if the Court concludes that Rhode Island law applies to Plaintiff's claims, his cause of action for strict liability should be dismissed for lack of causation in accordance with Section I, *supra*.

Additionally, Plaintiff fails to state a claim under Rhode Island because Altria was not a "seller" of JUUL products.  Plaintiff cites two Rhode Island cases to avoid summary judgment, but neither supports his strict liability claim against Altria.  *Calise v. Hidden Valley Condo. Ass'n,* 773 A.2d 834, 840 (R.I. 2001) is cited for the unremarkable proposition that "a plaintiff may recover 100 percent of his or her damages from a joint tortfeasor who has contributed to the injury in any degree."

Opp. at 5.  And although Plaintiff argues that *Ritter*, 283 A.2d at 262, "cited favorably and discussed a California decision extending [strict] liability to retailers," Opp. at 3, no resort to California law is necessary.  In *Ritter*, the Rhode Island Supreme Court determined that the defendant was a retailer subject to strict liability because it, *inter alia*, "uncrated and inspected [the product] for exterior damage, displayed them for sale, and had full control and custody over them until the sale." 283 A.2d at 259.  Altria is not a "retailer" because it never had possession, custody and control of the JUUL product that is alleged to have injured Plaintiff and never sold JUUL to Plaintiff.  To the  extent Rhode Island courts have expanded the universe of parties who can be liable under strict liability, they have done so to entities that take physical possession of the products (*e.g.*, a product lessor) and exercise "full control and custody over them until the sale," which Altria did not do.  *See id.* at 259.  Plaintiff thus cites nothing to support the imposition of strict liability on Altria under Rhode Island law.

### 3.   Negligence

"'A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury.'"  *Theodore*, 163 A.3d at 665  (citing *Ruiz v. Victory Properties, LLC*, 107 A.3d 381 (Conn. 2015)); *cf. Selwyn v. Ward*, 879 A.2d 882, 886 (R.I. 2005).   Given the undisputed facts in this case, Plaintiff cannot prove the essential elements of his negligence claim.

*Duty and Breach*:  Plaintiff argues that "Altria owed a duty to not encourage and facilitate JLI's ongoing and foreseeable ***harm to adolescents*** like Pesce through marketing and selling a defective product in a way that would attract and addict ***youth*."  Opp. at 14. (emphasis added). Plaintiff bases this duty on "Altria's involvement with JLI to expand and maintain the ***youth*** vaping market."  *Id*. at 15 (emphasis added).  The undisputed facts demonstrate that Altria could not have assumed or breached such a duty with respect to this Plaintiff because there is no evidence that Altria engaged in ***any*** youth-directed misconduct until after Plaintiff was an adult.

*Causation*:  Plaintiff's efforts to establish causation for his negligence claim fail for similar reasons.  Plaintiff focuses on allegations of Altria's conduct having caused an increase in youth usage of JUUL.  Opp. at 17-20.  The crux of Plaintiff's negligence causation argument is captured on page 20 of the Opposition:

Altria urged JLI to boost sales, which necessarily meant more use of JUUL by **young people like Pesce**, and expand its digital reach, knowing that digital promotions **targeted young people like Pesce**. Altria then partnered with JLI, assisted in expanding its retail footprint, which increased its **availability to JUUL users like Pesce**, and ran interference with the FDA's efforts to curb the **youth vaping epidemic**.

*Id*. at 20 (emphasis added).  The problem with this theory is that Plaintiff was not a minor when  Altria supposedly encouraged JLI to expand its "digital reach" or increase sales to youth.  Accordingly, Plaintiff cannot establish causation and his negligence claim fails for this reason also.

### 4.    Aiding and Abetting

Plaintiff argues that "Altria directed and encouraged JLI's expansion of JUUL's youth market and is jointly liable for JLI's conduct, misrepresentations, fraud, and other tortious acts as an aider and abettor."  *Id*. at 10 (citing Restatement (Second) of Torts §§ 876(b), 876(c), and 877).[6]  Under Connecticut law, "the tort of aiding and abetting is often used interchangeably with the principles outlined in § 876" and is referred to as the "substantial assistance doctrine."  *Stein v. Gipstein*, 2011 WL 522893, at *3 (Conn. Super. Ct. Jan. 25, 2011) (citing *Connecticut National Bank v. Giacomi*, 699 A.2d 101, 126 n.42 (Conn. 1997)); *cf. Gushlaw v. Milner*, 42 A.3d 1245, 1264 (R.I. 2012).  To be liable under aiding and abetting theory, there must be a "causal connection" between the alleged wrongful conduct and Plaintiff's alleged injuries.  *Rangel v. Parkhurst*, 779 A.2d 1277, 1284 (Conn. App. 2001); Restatement (Second) of Torts § 876 *cmt d* (to be liable under an aiding and abetting theory, the defendant's "encouragement or assistance" must be "a substantial factor in *causing* the resulting tort"); Dkt. No. 3083 (April 29, 2022 Order Denying Defendants' Motions for Summary Judgment Regarding B.B.) at 24 (discussing proximate causation for aiding and abetting ).

Like Plaintiff's other claims, the tortious conduct that forms the foundation of Plaintiff's aiding and abetting claim against Altria concerns alleged "direct[ion] and encourage[ment]" by Altria to JLI to support "JLI's expansion of JUUL's **youth** market."  Opp. at 10 (emphasis added).  Assuming for purposes of this motion that Altria gave "direct[ion] and encourage[ment]" to JLI to

---

[6] Plaintiff cites no case law regarding adoption of section 877 in either Connecticut or Rhode Island.

expand the "youth" market, Plaintiff's aiding and abetting claim cannot withstand summary judgment because Plaintiff was no longer a "youth" by the time the alleged "direct[ion] and encourage[ment]" was given, thus severing a critical causal link.  *Id.*

Finally, should the Court dismiss the underlying tort claims against JLI, the derivative aiding and abetting claim against Altria must also be dismissed.  *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 120-21 (D. Conn. 2010); *Ames v. Oceanside Welding and Towing Co., Inc*., 767 A.2d 677, 681 (R.I. 2001).

### 5.      Conspiracy

Plaintiff acknowledges that conspiracy is not a standalone cause of action under either Connecticut of Rhode Island law.  Opp. at 11.  The Opposition confirms that Plaintiff seeks to use allegations of a civil conspiracy to impose joint liability on the defendants.  *Id.*  Because the law of both Connecticut and Rhode Island requires a valid underlying intentional tort, the conspiracy claim against Altria should be dismissed together with Plaintiff's intentional tort claims.  *Kopperl v. Bain*, 23 F. Supp. 3d 97, 119 (D. Conn. 2014); *Read & Lundy, Inc. v. Washington Tr. Co. of Westerly*, 2002 WL 31867868, at *17 (R.I. Super. Dec. 13, 2002), *aff'd*, 840 A.2d 1099 (R.I. 2004).

Separately, Connecticut and Rhode Island law differ in the extent to which a party can be liable for damages caused by a co-conspirator.  Opp. at 11.  Unlike Rhode Island law, under Connecticut law, a party who joins a conspiracy later in the chain of events is not liable for damages caused by events which took place before they joined.  *Macomber v. Travelers Prop. & Casualty Corp.*, 894 A. 2d 240, 255 (Conn. 2006).  Plaintiff seeks to distinguish *Macomber* on the ground that in *McComber*, "the underlying tort had already been completed" and the plaintiff already sustained her loss by the time of the defendant's conduct.  But Plaintiff ignores key language in *McComber* regarding the purpose of a civil conspiracy claim:

> [T]he purpose of a civil conspiracy claim is to impose civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing.  Implicit in this purpose, and in the principle that there must be an underlying tort for the viability of a civil conspiracy

claim, is the notion that the coconspirator be liable for the damages flowing from the underlying tortious conduct to which the coconspirator agreed. ***This reasoning, however, does not extend so as to impose civil liability on a coconspirator for damage caused by the actual wrongdoer before the civil coconspirator even joined the conspiracy.*** By that time, the underlying tort had already been completed. The purpose of civil liability is to allocate the loss between persons who may be in some legal sense responsible for that loss. We can see no reason to extend that purpose to a defendant who could not have been in any sense responsible for a loss because it had not begun to participate in the civil conspiracy resulting in that loss until long after the loss was incurred. Indeed, the ***plaintiff cites no case holding a civil conspirator liable for such preexisting conduct and damages.***

*Macomber*, 894 A.2d at 254-55 (emphasis added). Consistent with *McComber*, assuming Plaintiff is able to prove the existence of a conspiracy, Altria is not liable for "damage caused by the actual wrongdoer before [Altria] even joined the conspiracy." Put another way, Altria is not liable for any "conduct" by co-defendants or "damages" to Plaintiff incurred before Altria joined the conspiracy. Should Plaintiff's conspiracy theory survive summary judgment and the Court holds that Connecticut law applies, the jury will need to determine when Altria joined the conspiracy and if liability is found, the extent of Plaintiff's damages incurred before and after that date.

### 6. Fraud and Misrepresentation-Based Claims

In its opening brief, Altria demonstrated that Plaintiff has no cognizable claim for fraud or negligent misrepresentation because there is no evidence that Plaintiff ever saw, heard, or relied upon any statement or representation by Altria. Altria SJ Mot. at 17-19. In opposition, Plaintiff cites no evidence of a misrepresentation ***by Altria to Plaintiff***. Tellingly, Plaintiff argues "Altria spread misrepresentations and omissions about JUUL, knowing they were targeted at teens and young adults like Pesce," but cites no evidence of a misrepresentation by Altria to support it. Opp. at 21. Accordingly, Plaintiff's direct fraud and negligent misrepresentation claims must be dismissed.

That leaves Plaintiff with fraud and misrepresentation claims premised on two theories: (1) the allegation that Altria "guid[ed] and assist[ed]" JLI and (2) omission or non-disclosure. *Id.* at 21-22. Altria's response to Plaintiff's first theory is addressed in section I.B.4., *supra*. With respect to Plaintiff's fraud by omission/non-disclosure theory, Connecticut and Rhode Island require a duty to speak before a party may be liable. *Reville v. Reville*, 93 A.3d 1076, 1087 (Conn. 2014); *Western Reserve Life Assur. Co. of Ohio v. Conreal*, 715 F. Supp. 2d 270, 284 (D.R.I. 2010). Altria had no "duty to speak" because Plaintiff has not identified any affirmative statements made by Altria to him. *Idlibi v. Hartford Courant Co.*, 2021 WL 3832032, at *8 (Conn. Super. Ct. Aug. 6, 2021); *W. Rsrv. Life Assur. Co. of Ohio*, 715 F. Supp. 2d at 285.

**C.      Plaintiff Cannot State Claims Based on Communications With the Government**

Plaintiff cannot survive summary judgment based on Altria's communications with the government because they are protected by the First Amendment and *Noerr-Pennington* doctrine. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1960); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-70 (1965); *see also* Altria SJ Mot. at 20-21. The Court rejected these arguments in *Bain* after concluding that Altria had not "engage[d] with the Court's prior analysis." Dkt. No. 3083 at 27. Altria therefore respectfully revisits the issue here.

It is important at the outset to distinguish between two categories of communications and how they are treated under *Noerr-Pennington*: (1) communications that are a "sham" and (2) communications that are genuine efforts to influence the government but include false statements. The first category refers to the "sham exception," which excludes from *Noerr-Pennington* protection those communications with the government that were "'not genuinely aimed at procuring favorable government action' at all." *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991). The communications at issue here are not "sham" communications. Plaintiff's entire theory is built around them being genuine efforts to influence the government, as this Court has recognized: "Plaintiffs concede that JLI and Altria ***genuinely sought to influence the government through these statements*** (to defer regulation and allow them to keep JLI's mint pods on the market), even if the information they used to achieve those ends was fraudulent." Dkt. No. 3083 at 27 (emphasis added).

Accordingly, Altria respectfully submits that the Court's rejection of *Noerr-Pennington* at the dismissal stage based on the "sham exception" was misplaced.  *Id.*

The second category of communications addressed by *Noerr-Pennington* case law—and the category that ***is*** relevant to the arguments here—are genuine efforts to influence the government that included false statements.  Plaintiff in *Bain* argued when opposing summary judgment that *Noerr-Pennington* protection does not apply to communications that included *false statements*, Vicari Decl. Ex. 1, Feb. 16, 2022 Hr'g Tr. at 64:3-6.  The Court's subsequent decision did not appear to clearly resolve that issue.  But numerous decisions demonstrate that, unlike sham communications, the *Noerr-Pennington* doctrine protects communications with the government even if those communications include false statements provided the communications were genuine efforts to influence the government.  Altria SJ Mot. at 20-21 (collecting citations).

Plaintiff offers no response to these decisions.  Instead, he claims that "whether a false statement to the government is protected by *Noerr-Pennington* is moot."  Opp. at 23.  Not so.  The question at the summary judgment stage is whether Plaintiff has sufficient evidence to prove his claims against Altria.  Plaintiff cannot meet that burden with communications protected by *Noerr-Pennington*; indeed, it would violate the First Amendment to impose liability based on those communications.  Yet that is precisely what Plaintiff seeks to do.  This is especially clear in this particular case, given the dearth of any evidence to establish causation beyond the exceedingly tenuous theory that Altria caused mint to remain available for less than a year and that availability caused Plaintiff's injury.  Even if this spurious theory were otherwise sufficient to allow Plaintiff to survive summary judgment (it is not, *see supra* Section I.C.), it fails as a constitutional matter given the *Noerr-Pennington* doctrine applies to the only evidence supporting it.

## II.   CONNECTICUT LAW SHOULD APPLY TO PLAINTIFF'S CLAIMS

Altria adopts and incorporates the choice of law arguments made by other defendants in connection with their summary judgment motions and by Altria and other defendants in opposition

to Plaintiff's motion for summary judgment.[7]   As set forth therein and summarized below, Connecticut law governs all aspects of Plaintiff's claims for myriad reasons.

      *First*, it is undisputed that Plaintiff:  (1) ███████████████████████████ ███████████ (Pl. Tr. 73:7-74:15) (Ex. 1), (2) ████████████████████████████████ ███████████████████████████████████████ (*id.* at 85:2-86:11), (3) ██████████ ██████████████████████████████████ (*id.* at 233:15-21); Ex. 2 ¶ 38, (4) █████████ █████████████████████████████████████████████████ (*id.* at 240:23-241:23); (5) ████████████████████████████████, (*id.* at 155:24-156:3, 161:15-23; Ex. 2, ¶ 12;), (6) ████████████████████████████████████████, *see* Ex. 1 Pl. Tr. 51:3-6, 96:2-9, 155:24-156:3, 161:15-23; Ex. 2, ¶ 23; Ex. 3 at 91) (Plaintiff's date of birth is ████████████████████████████████████████████████████ ████████████████, and (7) is now a resident of Nevada working as a fraud analyst at Kindred Group (Vicari Decl. Ex. 3).  Accordingly, as the place where Pesce's complained-of injury occurred, Connecticut, is the place with "predominant interest in regulating conduct that occurs within its borders," which is the touchstone of California's government-interest choice-of-law test.  *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 534 (Cal. 2010).  And any interest Rhode Island may have had is all the more attenuated now given Plaintiff no longer resides there.

      *Second*, consistent with this Court's decision on Plaintiff's motion for summary judgment in the *B.B.* case,[8] Connecticut, as opposed to California law, also governs comparative fault and punitive damages questions.  As set forth in prior briefing, California's choice-of-law principles do not allow a plaintiff to mix and match the state laws that govern a single cause of action[9] and California has no

---

[7] *See* Altria's SJ Mot. (MDL ECF No. 2971 at 8); Defendant JUUL Lab Inc.'s SJ Mot. (MDL ECF No. 2967 at 6-10); Defendant Adam Bowen's SJ Mot. (MDL ECF 2963 at 6); Defendant James Monsees' SJ Mot. (MDL ECF No 2966 at 9-10); Non-management Director Defendants SJ Mot. (MDL ECF No. 2959 at 10).  Altria adopts and incorporates the choice of law arguments made by other defendants in opposition to Plaintiff's motion for summary judgment.

[8] Dkt. No. 3170 at 2 ("The Court will deny plaintiff's motion finding that Tennessee law [and not California law] applies" to damages and comparative fault issues).

[9] *See Swanson v. Marley-Wylain Co.*, 280 Cal. Rptr. 3d 496, 503 (Cal. Ct. App. 2021) (the laws of different states cannot "govern different elements of a single cause of action"); *see also* Altria's Opposition to Plaintiff's Partial SJ Mot., (MDL ECF 2787 at 2-3).

1   interest in the application of its law to torts committed against nonresidents in states other than

2   California.[10]

3       *Third,* because Plaintiff's claims "ar[ose] in" Connecticut and his claims are time-barred in

4   there, California's choice of law rules (per its borrowing statute) require application of Connecticut's

5   three-year limitations period.  Cal. Civ. Proc. Code § 361; *McCann*, 225 P.3d at 524-25.

6       *Fourth*, California choice of law jurisprudence recognizes and accounts for the possibility that

7   people may relocate to a new state after experiencing an injury in another.  *McCann*, 225 P.3d at 534-

8   35 ("Because a [defendant] has no way of knowing or controlling where a potential plaintiff may

9   move in the future, subjecting such a defendant to a different rule of law based upon the law of a state

10  to which a potential plaintiff ultimately may move would significantly undermine [a state's] interest

11  in establishing a reliable rule of law").  Under such circumstances, California courts apply the law of

12  the place of injury.  *Id*. at 518 (applying Oklahoma law to the claims of a Plaintiff who was exposed

13  to asbestos in Oklahoma, but then moved to other states and settled in California, where he was

14  diagnosed with mesothelioma); *Meraz v. Ford Motor Co.*, 2014 WL 12558123, at *7 (C.D. Cal. June

15  13, 2014) (Georgia law applied in a product liability action where the product was purchased and the

16  decedent was killed in Georgia, even though the effects of the injury were felt by the estate in

17  California).  Therefore, Plaintiff's move from Connecticut to Rhode Island and later from Rhode

18  Island to Nevada does not change the fact that Connecticut is where Plaintiff claims to have first used

19  and become addicted to JUUL and therefore, Connecticut law applies to his claims.

20      *Fifth*, Plaintiff cannot avoid application of Connecticut law based on a purported waiver by

21  Altria.  Altria challenged Plaintiff's claims under Rhode Island law at the pleading stage based on

22  Plaintiff's allegation that:  "Plaintiff Roberto Pesce is a 21-year-old resident of Charlestown, Rhode

23  Island."  Am. Compl. at 5 (ECF No. 15).  Plaintiff did not allege that he grew up in Connecticut,

24  began using JUUL while underage and living in Connecticut, and was over the age of 18 the entire

---

25  [10] *See Hillard v. TABC, Inc.*, CV 17-4434 FMO (SSx), 2017 WL 6940540, at *5 (C.D. Cal. Dec. 18,
26  2017); *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1158–59 (N.D. Cal. 2003); *Howe v.
    Diversified Builders, Inc.*, 262 Cal. App. 2d 741, 745-46, 69 Cal. Rptr. 56, 59 (Cal. Ct. App. 1968);
27  *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1425 (9th Cir. 1989); *Paulo v. Bepex Corp.*, 792
    F.2d 894, 896 (9th Cir. 1986); *Davison v. Kia Motors Am., Inc.*, No. SACV 15-CJC (RNBx), 2015
28  WL 3970502, at *3 (C.D. Cal. June 29, 2015); *see also* Altria's Opposition to Plaintiff's Partial SJ
    Mot., (MDL ECF 2787 at 3-7).

---

time he lived in Rhode Island. Plaintiff's connections to Connecticut were not discovered until fact discovery. Moreover, in its answer, served *after* the decision on defendants' motions to dismiss, Altria expressly contemplated that the law of a different state may apply and reserved the right to raise arguments and defenses under a different state's law. *See* 3:20-cv-02658 ECF No. 26 at 405. In addition, regardless of positions taken at the motion to dismiss stage (before Plaintiff disclosed that he had actually purchased JUUL products in Connecticut), a party is not precluded from arguing that a different state's substantive law applies if the court has not ruled on the choice of law issues. *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995); *Petters Co. Inc. v. BLS Sales Inc.*, 2005 WL 2072109, at *12 (N.D. Cal. Aug. 26, 2005). The Court has not yet resolved the choice of law question raised here. *In re JUUL Labs, Inc., Mktg. Sales Prac. & Prod. Liab. Litig.*, 2021 WL 3112460, at *3 n.6 (N.D. Cal. July 22, 2021).

*Sixth*, Altria is not judicially estopped from arguing that Connecticut law applies because Altria has not taken a position that is "clearly inconsistent" with an earlier position; this Court has not accepted or relied upon a prior inconsistent position from Altria; and Altria gains no unfair advantage over Plaintiff if Connecticut law is applied. *Roberts v. Bartels*, 2013 WL 6173142, at *5 (N.D. Cal. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 6172982 (N.D. Cal. Mar. 11, 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (setting forth judicial estoppel factors).[11] Additionally, because the doctrine of judicial estoppel is "designed to 'protect the integrity of the judicial process' and prohibit a party from unfairly benefitting from taking inconsistent positions in subsequent judicial proceedings," its purpose would be undermined if the Court applied Rhode Island law in light the omission of key facts from Plaintiff's complaints as well as Plaintiff's failure to inform Defendants that Plaintiff no longer lives in Rhode Island and instead now resides in Nevada. *Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, 2017 WL 1739101, at *4 (N.D. Cal. May 4, 2017) (quoting *New Hampshire*, 532 U.S. at 749).

## III.    PERSONAL JURISDICTION

In its order denying summary judgment in the *Bain* case, the Court held that "there is sufficient evidence regarding Altria's conduct in California and directed through and emanating from JLI in

---

[11] *See also* Altria's Opposition to Plaintiff's Partial SJ Mot. at 8-10 and cases cited therein.

California to support specific jurisdiction over Altria." Dkt. No. 3083 at 17; *see also id*. ("It is up to the jury to determine whether the nature and extent of the services Altria allegedly provided JLI starting in December 2018 or earlier had a sufficient connection to B.B.'s injuries to hold Altria liable). We disagree. But *Bain* is not dispositive here. **This Plaintiff** bears the burden of demonstrating that personal jurisdiction over Altria exists in this forum based on the facts in this case. Under *Ford Motor v. Montana Eighth Jud. Dist. Ct*., Plaintiff's claims must "arise out of *or relate to* the defendant's contacts with the forum." 141 S. Ct. 1017, 1026 (2021) (internal citations omitted). The contacts with California on which Plaintiff relies all relate to conduct that Plaintiff contends caused an increase in the use of JUUL by youths. *See, e.g.*, Opp. at 24 ("Altria partnered with California-based JLI to manufacture JUUL products in California and distribute and market JUUL products from California to young people nationwide in order to get them addicted"); *id*. (Altria "partner[ed] and conspire[ed] with co-defendants to maximize youth nicotine addiction); *id*. at 25 ("Altria influenced JLI to focus on social media marketing to grow JUUL sales by targeting the youth market."). Unlike in *Bain*, Plaintiff was no longer a youth at the time of Altria's first California contacts that could be said in any way to relate to the use of JUUL products by youths. Accordingly, Plaintiff's claims do not "relate to" Altria's California contacts.

## CONCLUSION

For reasons set forth above and in the various motions and pleadings of other defendants referenced herein, the Court should grant summary judgment in favor of Altria.

Dated: May 13, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ John C. Massaro*
John C. Massaro (*admitted pro hac vice*)
Daphne O'Connor (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
Angela R. Vicari (*admitted pro hac vice*)
Lauren S. Wulfe (SBN 287592)

Attorneys for Defendants ALTRIA GROUP,
INC., PHILIP MORRIS USA INC., ALTRIA
CLIENT SERVICES LLC, ALTRIA GROUP
DISTRIBUTION COMPANY, AND ALTRIA
ENTERPRISES LLC

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

### CERTIFICATE OF SERVICE

2              I, John C. Massaro, hereby certify that on the 13th day of May 2022, I caused to be

3   electronically filed the foregoing **ALTRIA REPLY IN FURTHER SUPPORT OF ITS**

4   **MOTION FOR SUMMARY JUDGMENT** with the Clerk of the United States District Court for

5   the Northern District of California using the CM/ECF system, which shall send electronic

6   notifications to all counsel of record.

7

8                                          By:   */s/ John C. Massaro*

9                                                John C. Massaro (*admitted pro hac vice*)
                                                 ARNOLD & PORTER KAYE SCHOLER LLP
10                                               601 Massachusetts Avenue NW
                                                 Washington, D.C. 20001
11                                               Telephone: 202-942-5000
                                                 Facsimile: 202-942-5999
12                                               John.Massaro@arnoldporter.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALTRIA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT