**Lieff**
**Cabraser**
**Heimann &**
**Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

June 23, 2022

Sarah R. London
Partner
slondon@lchb.com

**VIA ECF**

Hon. William H. Orrick
United States District Court
Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

RE:     *In Re: JUUL Labs, Inc., Marketing, Sales Practices and Products*
          *Liability Litigation*, N.D. Cal. Case No. 3:19-md-02913-WHO

          Joint Letter Brief re Outstanding *Bain* Pretrial Issues

Dear Judge Orrick:

As introduced in the Joint Statement filed in advance of the June 16, 2022 Case
Management Conference, counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] and Plaintiffs'
Co-Lead Counsel ("Plaintiffs") (collectively the "Parties") respectfully submit this Joint Letter
Brief regarding certain matters related to the *B.B.* bellwether trial.  *See* ECF No. 3290 at 3; ECF
No. 3304 at 1.  The Parties raise and seek the Court's resolution of certain issues that, despite
multiple good faith meet-and-confers, remain in dispute.  The Parties also request the Court's
guidance with respect to certain trial practices and procedures.  The Parties look forward to
addressing these issues at the conference set for June 27, 2022.

1.     **Tabitha Wakefield Deposition**

       **Plaintiff's Position**

       Plaintiff requests leave to take the deposition of non-party fact witness Tabitha
Wakefield in July or August. Ms. Wakefield's counsel has indicated that he will produce her well
in advance of trial, on a date mutually convenient to all counsel involved. Defendants originally
insisted that any deposition occur during trial "in San Francisco before she testifies." Defendants

---

[1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs' Am. Consolidated
Class Action Complaint and Am. Consolidated Master Complaint (collectively, "Complaints"), ECF Nos.
679, 677.

Hon. William H. Orrick
June 23, 2022
Page 2

have now consented to an earlier deposition, but on the contingency that Plaintiff commit in advance to the subjects to which Ms. Wakefield, an independent fact witness, will testify. The deposition should be permitted without any such precondition.

The Court is familiar with the relevant background. To reiterate briefly, Tabitha Wakefield attended JUUL's New York launch party on June 4, 2015, when she was 18 years old. JUUL's "casting director," Doug Perrett, invited Tabby and paid her $200 to promote the event. Perrett instructed Tabby to invite as many people as she wanted and to publicize the event on her social media accounts. Dozens of mostly teenaged guests attended the event at Tabby's invitation, and enjoyed an open bar and free samples of the JUUL product, though most were too young to drink or buy tobacco products in New York City. Ms. Wakefield provided a sworn statement that no one checked her identification or that of her guests, and she received a year's worth of free JUUL product samples.

Given the difficulty in locating Ms. Wakefield (despite longstanding discovery requests requiring identification of launch party attendees), this Court found good cause to allow her to testify at trial. ECF No. 2913 at 1; 2/25/22 Hearing Tr. at 77:8-12. Ms. Wakefield has been included on Plaintiff's trial witness list ever since.

Defendants suggest that Plaintiff controls Ms. Wakefield, but that is not true. She is a third-party witness who lives 3,000 miles away and has no legal obligation to appear at any trial. The Bain trial has already been rescheduled twice, and if Ms. Wakefield is unable or unwilling to travel for that trial—or any other trial—her testimony would be preserved through the requested deposition. There is no basis to make the deposition contingent on the content of her testimony—as Defendants propose—which Plaintiff is in no position to control.

**<u>Defendants' Position</u>**

On February 25, 2022, the Court granted Plaintiff's request to allow late-disclosed witness Tabitha Wakefield "to testify at trial." ECF No. 2913 at 1.[2] JLI agrees the Parties may depose Ms. Wakefield in advance of trial and will work with Plaintiff and Ms. Wakefield on a mutually agreeable deposition date. However, the predicate for Plaintiff's request that Ms. Wakefield be allowed to testify was a sworn statement describing the issues about which Ms. Wakefield purportedly has personal knowledge. *See* ECF 2899-1. JLI has asked Plaintiff to confirm that the topics and information expected from Ms. Wakefield will not exceed those identified in the sworn statement previously provided. Confirmation has not yet been provided, but should be provided in advance of the deposition so that JLI can fully examine Ms. Wakefield this close to trial. Plaintiff's argument that she "is in no position to control" Ms. Wakefield's

---

[2] Ms. Wakefield was an attendee of a 2015 JUUL launch party in New York City that B.B. did not attend. Defendants objected to the addition of Ms. Wakefield as a trial witness as improper and untimely. ECF No. 2906.

Hon. William H. Orrick
June 23, 2022
Page 3

testimony is literally true, but misses the point: Plaintiff certainly is in a position to get an update of Ms. Wakefield's earlier sworn statement.

**2.      Use of Exhibits at Trial**

<u>**Plaintiff's Position**</u>

Plaintiff requests the opportunity to discuss with the Court the mechanics of admitting exhibits at trial. While Altria has been reasonable in working with Plaintiff to identify potential admissibility disputes and agree on a process for resolving them, JLI has not. JLI appears to insist that every document must be admitted through testimony of the "appropriate" witness (as JLI identifies them) before it can be used at trial. This time-consuming, formalistic and impractical approach goes well beyond the Court's requirement that exhibits be presented to the jury through witness testimony rather than standing alone. *See* 3/29/22 Hearing Tr. at 30:9-15. For example, as Plaintiff understands JLI's position, an expert would not be able to discuss an exhibit unless and until the fact witness establishing that document's admissibility testifies.

Given JLI's insistence on trial testimony for the sole purpose of establishing authenticity, hearsay exceptions, etc., Plaintiff requests that the Court establish a process for pre-admitting exhibits that avoids wasting the parties' time, the Court's time, and the jury's time. One option is a pre-trial hearing at which a custodian of records can testify to the admissibility of JLI documents. In advance of the hearing, the parties can submit relevant deposition testimony. *See* 3/29/22 Hearing Tr. at 27:17-28:4 (suggesting that, for "realistic objections," the parties could "move in the deposition, and I could look at the foundation that's in the testimony there"). But Plaintiff is open to other possible solutions that avoid unfair and impractical disruption of her order of proof. At a minimum, JLI should be taxed for all trial time and expenses incurred for the sole purpose of establishing admissibility of an exhibit.

<u>**Defendants' Position**</u>

JLI starts with what is not at issue.  *First,* there is no dispute about the process for raising and resolving objections based on hearsay and authenticity.  JLI has — through both written and oral communications — requested that Plaintiff identify which exhibits she contends are non-hearsay and/or are subject to business-records exceptions.  JLI expects that the Parties will be able to reach agreement on most of these issues.  But the question here is not whether a document is hearsay or authentic; the issue is whether it is admissible into evidence and what is the process for such admission.  *Second*, JLI does not contend that experts are barred from testifying about documents until they are admitted with the appropriate foundation.  Rules 702 and 703 of the Federal Rules spell out specifically the permissible use of documents not in evidence.

What is disputed are Plaintiff's proposals for bypassing Rule requirements in service of spending more of their allotted time on other matters they believe are more productive for their case.  The end result of these proposals is obvious: Documents come in *en masse*, overwhelming

Hon. William H. Orrick
June 23, 2022
Page 4

both the jury's ability to give them appropriate consideration and JLI's ability to respond to them fully.  The Court addressed this problem at the March 29, 2022 CMC:

> THE COURT:  That's one way or another.  And as far as the sort of orphan documents, I don't want --  I don't admit documents that somebody doesn't talk about on the stand, so if a document is going to come in, it's got to be explained to the jury so that they know what's there.  So -- and when I say "the stand" they can come in through deposition, but they need -- they can't be free-floating.  That I think is a problem.

3/29/2022 CMC Tr. at 30:8-30:15.  Witnesses "need to use [the exhibit] in a way that the jury is able to appreciate what it is, as opposed to having it float in either through argument or saying, well, you know, there are a slew of exhibits here that you can look at, and it's Exhibit 52 and 54, but nobody's ever talked about it in front of the jury." 03/29/22 CMC Transcript 31:16-20; *Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (Excluding expert because "to the extent such underlying evidence would be admissible at trial ...Dr. Maronick's report offers nothing more than a factual narrative of these documents").

Not only does Plaintiff's goal conflict with the Court's guidance, but her specific proposals are incompatible with the Rules of Evidence, and would unfairly prejudice Defendants.

*First*, Plaintiff's request to admit exhibits outside of the jury's presence or without proper witness testimony is unfair and prejudicial.  Foundation for an exhibit is itself explanatory evidence that the jury must hear.  And in this case, the Parties have spent years developing deposition testimony and expended (along with Judge Larson) substantial time culling and cutting deposition designations for precisely this purpose.  Moreover, while it may save Plaintiff time to circumvent ordinary evidentiary procedures, that will (a) defeat the whole purpose of time limits, which is to compel both sides to focus their evidence on what is essential, and (b) unfairly prejudice and cause Defendants to use even more time to respond to and set thehistorical and factual predicate for exhibits that were admitted through a document dump. Plaintiff  may take little time to argue that inferences should be drawn from an orphan document.  It is far more time consuming to rebut such inferences factually.

*Second*, Plaintiff argues that her expert witnesses should be able to testify about documents without waiting for the presentation of foundational live or deposition testimony and claims that JLI is trying to control Plaintiff's order of proof by insisting that deposition testimony regarding JLI documents be presented to the jury first.  As noted above, there is no dispute that, if an expert appropriately relies on an exhibit consistent with Rules 702 and 703, that expert may discuss the exhibit and even display it under the conditions set out in those rules.  Deposition testimony need not be presented to the jury first.  Indeed, it is common for experts to testify to documents that are admitted later in the trial.  However, historical company documents not otherwise admissible cannot be ***admitted*** simply because an expert has relied upon them and offers opinions about them.  *See Rutherford v. Palo Verde Health Care Dist.*,

Hon. William H. Orrick
June 23, 2022
Page 5

2015 WL 12864245, at *2 (C.D. Cal. Apr. 17, 2015) ("**only the [expert's] opinion and not its bases are admissible**")(emphasis added); *Jones v. Beverly Hills Unified Sch. Dist.*, 2011 WL 2442077, at *5 (C.D. Cal. Apr. 25, 2011), report and recommendation adopted, 2011 WL 2415760 (C.D. Cal. June 16, 2011), *aff'd sub nom. Jones ex rel. C.J. v. Beverly Hills Unified Sch. Dist.*, 505 F. App'x 667 (9th Cir. 2013) ("Though an expert might be able to rely on such evidence in formulating her opinion... Plaintiff is not an expert and, **even if she was, the study itself would be inadmissible**.")(emphasis added); *Wishtoyo Found. v. United Water Conservation Dist.*, 2018 WL 6265099, at *6 (C.D. Cal. Sept. 23, 2018), aff'd, 795 F. App'x 541 (9th Cir. 2020)(Although "Plaintiffs' experts were properly permitted to rely upon Trial Ex. 156 in forming their opinions" the Court sustained Defendants' hearsay objection to Plaintiff's motion to enter Trial Ex. 156 into evidence.); *Wi-LAN Inc. v. Sharp Electronics Corp.*, 992 F.3d 1366, 1374 (Fed. Cir. 2021) ("The answer to the first question [whether the source code printout was admissible because it was relied on by the expert] is 'no' because expert reliance does not translate to admissibility."); *Williams v. Manitowoc Cranes, LLC*, 2016 WL 7666154, at *6 (S.D. Miss. Oct. 5, 2016) (holding that document relied upon by plaintiff's experts in rendering opinion was inadmissible, and noting that "[i]n applying [Rule 703], courts must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence") (internal quotations omitted); *Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007)("Rule 703 does not sanction the simple transmission of hearsay."); *see also* Fed. R. Evid. 703 Committee Notes (2000) ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.").  All relevant evidentiary requirements must be met, including testimony by a witness with the historical knowledge sufficient to provide foundation.

3.    **Use of Withdrawn Expert Opinions and Depositions**

       **Plaintiff's Position**

       As the Court knows, JLI has insisted that Plaintiff's list of trial experts is too long. Plaintiff has accommodated that concern and narrowed the list repeatedly, to the point where Defendants have disclosed more trial experts than Plaintiff has. Moreover, some of the experts Plaintiff has disclosed are no longer planning to testify on those case-specific topics, and their case-specific reports have been withdrawn (e.g., Dr. Grunberg).

       Defendants evidently intend to use the withdrawn reports, opinions, or depositions of Plaintiff's experts in cross-examination of testifying witnesses. Defendants have agreed they will "not use depositions of a withdrawn plaintiff's expert in a manner that suggests that the witness should be present or otherwise comment on the expert's absence from trial." However, Defendants maintain they "will need to refer to the affiliation of the withdrawn expert," i.e. "as an expert who was retained by Plaintiff."

       That last portion of Defendants' plan contravenes the Rules of Evidence and should be prohibited. That an opinion derives from an expert "who was retained by Plaintiff" does not "make a fact more or less probable" and so is not relevant under Rule 401. Even if that fact had any minimal relevance, such limited probative value would be substantially outweighed under

Hon. William H. Orrick
June 23, 2022
Page 6

Rule 403 by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

Start with prejudice: Defendants' statement that an expert was "retained by Plaintiff" will suggest to the jury that those opinions or facts referenced have unique importance and that Plaintiff should have produced the absent expert witness. *See in re Bard IVC Filters Prods. Liab. Litig.*, No. 15-2641, 2020 WL 54412192, at *13 (D. Ariz. Sept. 10, 2020) ("The Court ... agreed it would be unfairly prejudicial under Rule 403 to disclose to the jury that the experts originally were retained by Bard."); *Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 451 (S.D.N.Y. 1997) ("If the fact of the prior retention is revealed, jurors may assume that Plaintiff's counsel tried to suppress or hide evidence which it considered unfavorable."). Those implications would both confuse the issues and mislead the jury. Plaintiff will also be forced to spend valuable and limited trial time eliciting responsive testimony (and, in the worst case, responding to Defendants' opening the door by calling the expert at issue to contextualize the opinions), wasting the jury's and the Plaintiff's time.

Finally, Defendants should not be permitted to raise an expert's withdrawn case-specific opinions on cross-examination where the expert testifies only to generic issues. Ordinarily, of course, cross-examination may not exceed the scope of direct. Fed. R. Civ. P. 611(b). To permit Defendants to raise withdrawn case-specific reports would, in effect, let them call the opposing party's withdrawn expert witness. This is improper. *See, e.g.*, *Blumhorst v. Pierce Mfg., Inc.*, No. 10-573, 2013 WL 12138591, at *2-3 (D. Idaho Feb. 14, 2013) (recognizing that a party may call another party's expert witness only in "exceptional circumstances"); *Rawers v. United States*, 488 F. Supp. 3d 1059, 1084 n.29 (D.N.M. 2010) (same, and collecting cases).

### **Defendants' Position**

As explained during the May 9, 2022 pretrial conference, Defendants will not present argument or commentary about Plaintiff's decision to withdraw the reports of certain expert witnesses. However, Plaintiff's withdrawals cannot be used to wipe out the record that already has resulted from the full participation of those experts in the litigation to date. Put simply, those witnesses crossed the Rubicon and became testimonial witnesses when their reports were submitted. Since then, those experts have given depositions; their reports and testimony have been reviewed by other Plaintiff's experts who will testify at trial; JLI's experts have responded; the Court has issued rulings on their testimony; Plaintiff BB and her mother have been told of their opinions and recommendations for treatment; and, in all cases, the experts remain testifying experts for other cases and trials. No law sanctions Plaintiff's attempt to put the genie back in the bottle at the expense of the defense that JLI has built on their admissions.

As the Court is well aware, Plaintiff long ago chose to retain and proffer multiple experts on many issues. And they adhered to this strategy all the way up to the letter they wrote just last month, stating they were withdrawing "the reports of all experts who do not appear on the Plaintiff's 'likely to call' witness list," while also stating that "[t]hese withdrawals pertain only to the *Bain* matter." In preparing for trial over the last year, JLI thus had no choice but to depose

and respond to all the designated experts.  The fact that the overlapping experts looked at the same issues but saw them differently emerged in the process, as did admissions from one that could be used in questioning another.  To provide just a few examples, Defendants questioned Dr. Jackler, Plaintiff's withdrawn tobacco marketing expert, about admissions that Dr. Emery, another withdrawn marketing expert, gave during her own deposition about the absence of evidence connecting JUUL marketing or social media issues and youth use, as well as existing research on the relationship between marketing and purchasing decisions.  *See* Ex. 13, Jackler Dep. Tr. 218:8- 225:21, 275:20-277:21.  Defendants similarly questioned Dr. Cutler about these admissions (Ex. 11, Cutler Tr. 225:20-229:25), and questioned Dr. Grunberg on the advice that Dr. Levy, Plaintiff's withdrawn pediatric substance abuse expert, provided to B.B. concerning nicotine cessation products (Ex. 12, Grunberg Dep. Tr. 539:14-542:13).  That Plaintiff has now chosen to withdraw a number of experts for purposes of the *B.B.* trial cannot unwind the record that has been developed and upon which Defendants have relied in preparing for trial.

In addition, *each* of Plaintiff's remaining *B.B.* testifying experts reviewed or relies on the reports or deposition transcripts of now-withdrawn experts:

- Chandler (relying on (a) reports of Halpern Felscher, Jackler, and Winickoff; and (b) deposition testimony of Emery, Halper-Felscher, Jackler, and Pratkanis)

- Cutler (relying on reports of Eissenberg, Emery, Halpern-Felscher, Jackler, Kelder, Levy, Lindblom, Pratkanis, Proctor, Pue, Ribisl, and Winickoff)

- Drumwright (relying on (a) reports of Boyles, Halpern-Felscher, Pratkanis, Winickoff; and (b) depositions of Emery, Halpern-Felscher, Jackler, Pratkanis)

- Grunberg (relying on reports of Levy and Winickoff)

- Prochaska (relying on (a) report of Levy; and (b) depositions of Emery, Halpern-Felscher, Jackler, and Pratkanis)

- Shihadeh (relying on (a) Eissenberg, Halpern-Felscher, Noar, Proctor, Pue, and Tackett; and (b) depositions of Eissenberg, Emery, Halpern-Felscher, Jackler, and Pratkanis).

Additionally, as Defendants have indicated to Plaintiff in meet-and-confers following the pretrial conference, the expert reports and testimony are essential evidence for purposes beyond impeachment and cross examination of the experts themselves.  For example, several withdrawn experts conducted Independent Medical Exams and/or interviews of B.B. and Ms. Bain. Statements made by B.B. and/or Ms. Bain in connection with such interviews are admissible as party admissions regarding B.B.'s history, health, and future course.  Recommendations made by the experts and BB and/or Ms. Bain's responses are relevant to the same matters as well as comparative negligence or damages mitigation.

Hon. William H. Orrick
June 23, 2022
Page 8

There is no principled basis to exclude the crucial relevant evidence that JLI has obtained from Plaintiff's own experts during the massive discovery process that was all but concluded by the time Plaintiff wrote their May 3, 2022 letter withdrawing experts.

*First*, any consulting expert status and associated privileges have been waived.  Further, unlike the cases cited by Plaintiff, these experts have not been withdrawn completely, or agreed to testify on behalf of Defendants, but have only been removed from this particular trial.  *See, e.g.*, *Smith v. CSAA Fire and Casualty Ins. Co.*, No: CIV-17-01302-D, 2019 WL 4577109, at *3 (W.D. Okla. Sept. 20, 2019) ("By designating Battle as a testifying expert, producing his expert report, and making Battle available for deposition, Defendant waived any protection Defendant may have enjoyed with respect to a non-testifying expert.") (permitting party to call a withdrawn expert as its witness at trial).  For example, the remaining testifying experts who reviewed and/or relied on the withdrawn experts' reports or depositions may be examined about those materials in connection with, among other things, assessing the reliability of their opinions.  *See* 5/9/2022 PTC Tr. at 83:18-85:10; *see also* Fed. R. Evid. 705 (expert may be required to disclose facts or data underlying his opinion on cross-examination)

*Second*, Plaintiff has the prejudice point backwards.  Any prejudice to Plaintiff is self-imposed by the decision to offer multiple experts to opine on the same subjects.  And any concern over adverse inferences regarding the reason for withdrawal can be addressed through an appropriate limiting instruction.  Conversely, Defendants are enormously, substantively prejudiced if core admissions elicited on cross and/or evidence going to the credibility of Plaintiff's' claims regarding issues of treatment and other conditions, such as depression or anxiety, are excluded.

*Third*, Plaintiff cannot unilaterally censor cross examination and impeachment by limiting their direct examinations.  The work and opinions of their experts in the case are fair game.  Defendants are entitled to examine Plaintiff's experts with appropriate materials that go to the weight, credibility, and reliability of all that work. *Standard Oil Co. v. Moore*, 251 F.2d 188, 222 (9th Cir. 1957) ("Wide latitude in cross-examination should be allowed.").  Nor is there any sense in recalling witnesses to address matters Plaintiffs do not want in their case.

Again, Defendants will not use depositions or reports of a withdrawn Plaintiff's expert in a manner that suggests that the witness should have been called by Plaintiff but was not.  But the fact that the witness was chosen by the Plaintiff is essential evidence going to qualifications, credibility, and probative value. The jury should hear it.

**4.     Use of Gal Cohen Deposition**

**<u>Plaintiff's Position</u>**

Plaintiff moves for an order that the deposition of JLI's principal scientist and historic head of scientific and regulatory affairs Gal Cohen may be used at trial "for any purpose" under Rule 32(a)(3) as the deposition of a "party's ... managing agent." Fed. R. Civ. P. 32(a)(3).

Hon. William H. Orrick
June 23, 2022
Page 9

Courts "have interpreted 'managing agent' flexibly, emphasizing what the employee actually did, rather than what title or position she held." *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-20905, 2008 WL 350643, at *2 (N.D. Cal. Feb. 2, 2008) (internal quotation marks omitted). The rule "should not be given too literal an interpretation," but instead is applied "on an ad hoc basis, dependent largely on the functions, responsibilities and authority of the individual respecting the subject matter of the litigation." *Botell v. United States*, No. 11-1545, 2013 WL 360410, at *5 (E.D. Cal. Jan. 29, 2013) (citation and alteration omitted). Courts consider these factors in determining whether a witness was a managing agent for a corporation:

> (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation.

*Int'l Swimming League, Ltd. v. Federation Internationale de Natation*, No. 18-07394, 2021 WL 629493, at *1 (N.D. Cal. Jan. 13, 2021) (applying the same standard under Rule 30) (citation omitted). At bottom, "the inquiry is … whether" the witness's "duties and activities are closely linked with the events giving rise to the lawsuit." *Botell*, 2013 WL 360410, at *5 (citation omitted).

Because Cohen's "duties and activities are closely linked with the events giving rise to the lawsuit" and he was the head—and sometimes sole member—of JLI's science and regulatory affairs department, he is a managing agent. *Id.* at *5. Cohen has "maintained a presence at the senior director level through the years" and is currently a "principal scientist" at JLI. Ex. 1 (Cohen Dep.) at 330:21-24. Cohen has served as the "senior director of scientific affairs" and the "head of science and regulatory affairs," reporting directly to Adam Bowen. *Id.* at 72:24-73:5, 73:11-19, 320:4-8, 331:4-6, 461:25-462:1. As a senior director and head of science and regulatory affairs, Cohen played a leading role in developing clinical research programs for JLI, was directly involved in developing protocols for those studies, and edited the final study report. *Id.* at 118:16-124:12. He also represented JLI at the Global Tobacco and Nicotine Forum, *id.* at 692:5-697:5, and was responsible for communicating the scientific aspects of JUUL internally and externally. *See, e.g., id.* at 753:17-760:19 (discussing JLI81087463-JLI81087466 and Cohen's edits to a Q1 PAX investment letter).

All relevant factors support finding that Cohen is a managing agent. First, Cohen has been given authority to exercise judgment and discretion. Cohen is the historical head of scientific and regulatory affairs and "the principal scientist" at JLI. *Id.* at 330:21-24. He also has been involved in hiring. *See id.* at 363:15-24 (when asked why JLI hired Pinney and Associates, Cohen replied: "I hired them because of their reputation and expertise …" only afterward

Hon. William H. Orrick
June 23, 2022
Page 10

amending his statement to "I believe JUUL hired them because of their expertise."). As the historical head of the department whose expertise is well respected, Cohen still wields substantial authority at JLI.

      Second, Cohen can be relied upon to give testimony at JLI's request. Cohen's senior role "reflect[s] the level of reliance placed upon him by his employer, and the expectation that he identify himself with" JLI. *Botell*, 2013 WL 360410, at \*5; *see also* Ex. 2 (Monsees Dep.) at 99:10-100:14 (identifying Gal Cohen as an internal expert in the Tobacco Control Act who "we relied very—very heavily on … around the time of [JUUL's] launch."). JLI also relied on Cohen heavily to communicate the scientific aspects of JUUL to external stakeholders. *See, e.g.,* Ex. 1 at 370:13-16, 753:17-754:2. There are no facts "indicating that this deponent would be unwilling to provide testimony." *Botell*, 2013 WL 360410, at \*5.

      The third factor further supports Plaintiff's request, as Cohen held a senior position. Cohen "maintained presence at the senior director level" since 2014 and is among the highest authorities in the corporation on scientific and regulatory affairs. *Id.* at 330:21-24. At the time of deposition, Cohen reported to Mark Rubinstein who has only been at JLI since July 2019 and is the Vice President of Scientific Affairs and Clinical Operations. *Id.* at 333:8-10; Ex. 3 (Rubinstein Dep.) at 10:12-23. Mr. Rubinstein relied on Cohen's experience and expertise to answer deposition questions about JLI's PK studies. *Id.* at 14:22-15:2. Mr. Rubinstein, in fact, could not remember that "PK" stood for pharmacokinetics, *Id.* at 112:3-9, and thus would not be able to provide the same type of testimony on JLI's PK studies as Cohen, who is more intimately familiar with JLI's studies. *See Botell*, 2013 WL 360410, at \*5 ("In regard to the third factor, it is true that there are other individuals in higher positions of authority than Mr. Eagan concerning the subject matter for which testimony is sought; however, Mr. Eagan would provide a point of view different than the higher level employees."). Here, as in *Botell*, Cohen can provide a unique point of view on issues such as the steps JLI took between 2014 and 2019—i.e., before Mr. Rubenstein joined JLI—including the PK studies.

      Finally, on the fourth factor, Mr. Cohen's "general responsibilities" are directly relevant to the matters involved in the litigation. As head of scientific and regulatory affairs for the development, production, and early promotion of JUUL, Cohen was responsible for "validation of satisfaction, harm concerns, and social responsibility related value propositions." Ex. 4 (Cohen Ex. 26051) at 4; Ex. 1 at 576:9-590:7 (discussing same). This included determining the guardrails JLI should put into place to protect against youth use, *id.*, monitoring relationships with retailers who were concerned with underage access to JUUL, Ex. 1 at 659:5-666:8, addressing complaints from parents regarding JUUL youth usage, *id.* at 668:20-675:9; representing JLI and its interests at meetings with big tobacco at the Global Tobacco and Nicotine Forum, *id.* at 692:5-697:5, measuring JLI's actions against the Master Settlement Agreement, *id.* at 439:4-448:22, and positioning JLI to best avoid heightened FDA restrictions. *Id.* All of these issues are relevant to this litigation, and all are subjects of Cohen's deposition testimony that Plaintiff intends to present at trial.

**<u>Defendants' Position</u>**

Hon. William H. Orrick
June 23, 2022
Page 11

Mr. Cohen's deposition should not played because he is available to testify live, and he was not a party, nor an officer, director, or managing agent of any party at the time of his August 2021 deposition.  In August 2021, Mr. Cohen was "a principal scientist."  Ex. 9, Cohen Dep. 331:4-6.  Mr. Cohen did not have the ability to "establish corporate policies or bind the company to contractual obligations."  *Juarez v. Autozone Stores, Inc.*, 2013 WL 12066127, at *3 (S.D. Cal. Nov. 8, 2013).  While Mr. Cohen's principal scientist title reflected his tenure at the Company, his responsibilities at the time of his deposition were narrow in scope and specific to scientific research. Regardless of Mr. Cohen's roles years earlier, by the time of his deposition, the scope and organization of JLI's research and regulatory functions had greatly modified and expanded.  As Mr. Cohen explained in his deposition, over time "the company grew to 5,000 people…[he is] a member of scientific affairs, but [he] do[es]n't necessarily run many things."  Ex. 9, Cohen Dep. 330:2-11.

Even in his early roles at the Company, Mr. Cohen was nothing like a managing agent; he did not have decision-making authority.  And the research that he was involved in was done primarily by outside organizations.  *See* Ex. 10, Cohen Dep. 823:11-19 (explaining that Mr. Cohen had "fairly minimal" involvement in actually conducting scientific research beyond two early studies.); Ex. 9, Cohen Dep. 194:18-195:2.  Mr. Cohen had transitioned to a more limited role by the time of his deposition, he was not a managing agent, and his deposition cannot be used at a trial where he is testifying live.  *Hynix Semiconductor v. Rambus Inc.*, 2008 WL 350643, at *2 (N.D. Cal. Feb. 2, 2008) ("At the time of his deposition, [witness] lacked any authority to act on [defendant's] behalf, and accordingly, cannot be considered a 'managing agent.'").[3]

5.    **Use of Jennifer Hunter Deposition**

**Plaintiff's Position**

Plaintiff requests an order precluding Altria from using at trial the deposition of Jennifer Hunter, its own senior executive. Ms. Hunter is Senior Vice President, Corporate Citizenship, at Altria. Ex. 5 (Hunter Dep.) at 29:3-8. Ms. Hunter is a frequent flyer witness for Altria. She has been deposed in several different cases and in legislative and regulatory proceedings. *Id.* at 17:25-20:8. Altria picks and chooses how to present Ms. Hunter to fact finders, for example flying her in to testify live at a Missouri class action trial involving Lite cigarettes. *Id.* at 18:9-17.

Plaintiff objects to Altria playing video testimony of a current senior employee under Altria's control instead of bringing the witness to testify live at trial. Allowing Altria to pick and choose which witnesses it affirmatively calls at trial versus playing deposition video creates an unfair strategic advantage and is inconsistent with the preference for live testimony.

---

[3]  In addition to not meeting the criteria for managing agent, Mr. Cohen's deposition should not be played because he is available, and (for the reasons stated above), a live witness's deposition should not be played in this trial.

Hon. William H. Orrick
June 23, 2022
Page 12

There is a long-standing presumption that live testimony is preferable to deposition testimony, especially for important witnesses. *E.g.*, *Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-1414, 2017 WL 8069609, at *1 (N.D. Cal. June 7, 2017). The proponent of the deposition bears the burden of proving it admissible under Rule 32(a). *E.g.*, *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir.1990). And the Court has discretion to refuse admission of deposition testimony under Rule 32(a), in particular where the proponent has the ability to "procure [the witness's] attendance at the trial" but "fell short of reasonably diligent efforts to secure [the witness's] attendance." *Forbes v. Cnty. of Orange*, 633 F. App'x 417, 418 (9th Cir. 2016).

Altria has failed to show that the requirements of Rule 32(a) have been met for Ms. Hunter. Although Ms. Hunter presumably lives more than 100 miles from the Northern District, that fact alone does not require the district court to automatically admit a party's deposition. *See, e.g.*, *Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004). Rather, the Court "may consider all the circumstances relating to the [deponent's] absence to determine whether the deposition may be used." *Id.* (citation omitted); *see also* Fed. R. Civ. P. 32(a)(4)(B) (deposition may not be used where "it appears the witness's absence was procured by the party offering the deposition"). Because Ms. Hunter is under Altria's control and it appears Altria's use of her deposition testimony is a calculated choice rather than true witness unavailability, Altria has failed to carry its burden under Rule 32.

### Defendants' Position

Plaintiff noticed Ms. Hunter's deposition and questioned her for nearly the full time allotted under the protocol in this case, yet now objects to the Altria Defendants playing portions of that deposition at trial.  This objection is meritless, and Plaintiff's position contravenes the plain language of Rule 32(a) of the Federal Rules of Civil Procedure.  Contrary to Plaintiff's claims, the Altria Defendants are entitled to play Ms. Hunter's deposition testimony under Rule 32(a)(4), which permits a party to present a witness's testimony by deposition when the witness is unavailable to testify at trial within the meaning of the rule—that is, "when the witness is more than 100 miles from the place of the hearing or trial."  Fed. R. Civ. P. 32(a)(4); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) (finding a witness unavailable because "the witness [was] a distance greater than 100 miles" from the court).  It is undisputed that Ms. Hunter resides and works in Richmond, Virginia—thousands of miles away from this Court.[4]

Plaintiff's objection misconstrues Rule 32's distance standard and suggests it does not apply where the witness is employed by the defendant and thus could supposedly be compelled to appear live.  This is incorrect.  The law is clear:  Neither degree of control over the witness nor an identity of interest bears on the "unavailability" analysis.  "Under the case law interpreting Rule 32, the mere fact that the deponents are employed by the defendant and that there is an identity of interest between the deponents and their employer is not enough to trigger

---

[4] Plaintiff describes Ms. Hunter as a "frequent flyer witness for Altria," but contrary to Plaintiff's claims, Ms. Hunter has only testified at trial once in her more than 25 years working for the Altria Defendants.

Hon. William H. Orrick
June 23, 2022
Page 13

exclusion" of a deposition from a witness located more than 100 miles from the place of trial. *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 (1st Cir. 1988); *see also Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 691 (1st Cir. 1994) (permitting the defendant to play an employee's deposition at trial after finding that the employee was unavailable to testify pursuant to Rule 32). Thus, it is well established that even a corporation's current employees, officers, or directors who are more than 100 miles from the trial site are considered "unavailable" under Rule 32 absent evidence that the employer "procured" their absence from the place of trial. *See, e.g.*, *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, 2017 WL 1312968, at *1–2 (W.D. Ark. Apr. 5, 2017) (corporation was not prohibited from introducing the deposition of its president because he lived and worked across the country and thus was "unavailable"; rejecting the argument that the corporation procured the president's absence because he lived and worked for the corporation in California); *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 2014 WL 8096334, at *5 (C.D. Cal. Apr. 21, 2014) (corporation was not barred under Rule 32 from using alleged employee's deposition at trial because the mere fact that a deponent is employed by the defendant is not enough to trigger exclusion); *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 2012 WL 1161125, at *2 (D.N.H. Apr. 6, 2012) (corporation not excluded under Rule 32 from using deposition of employee in evidentiary hearing and trial where employee lived outside of the United States and there was no evidence employer took "active steps" to make witness unavailable); *Chao v. Tyson Foods, Inc.*, 255 F.R.D. 560, 561 (N.D. Ala. 2009) (current employees of Department of Labor were "unavailable" under Rule 32 because "the Secretary cannot be said to have 'procured' the absence of an employee or former employee who both resides and works in areas that are hundreds of miles from the courthouse"); *Mazloum v. D.C. Metro. Police Dep't*, 248 F.R.D. 725, 726 (D.D.C. 2008) (corporation could introduce at trial the deposition of its "managing agent" because he no longer resided or worked within 100 miles of the courthouse, explaining: "[t]here is no ambiguity in Rule 32 on this point"); *Frank S. Sinkwich, Inc. v. Texaco Refining & Marketing, Inc.*, 120 F.R.D. 540, 541 (M.D. Ga. 1988) (allowing corporation to use the deposition of its "managing agent" at trial—even though the managing agent could be considered a "party" under the rules— because the employee now lived and worked more than 100 miles from the trial site).[5]

As courts have noted, Rule 32(a)(4)(B) provides that a party is not entitled to rely on a witness's unavailability when the party has taken an *affirmative act* to make the witness unavailable. *Fletcher v. Tomlinson*, 895 F.3d 1010, 1020 (8th Cir. 2018) (affirming the admission of a witness's testimony when the witness's absence was not procured pursuant to Rule 32(a)(4)(B)); *see also Carey*, 864 F.2d at 204 (explaining that procurement is established when a defendant "actively takes steps" to keep the witness from "setting foot in the courtroom"). But "doing nothing to facilitate [the witness's] presence"—which is the most that Plaintiff alleges here—is "quite different" from taking an affirmative act to procure the absence of a witness. *See Carey*, 864 F.2d 201, 204; *see also Phoenix Techs. Ltd. v. VMware*, Inc., 2017 WL 8069609, at *2 (N.D. Cal. June 7 2017) (finding no evidence of procuring absence where the defendant did not "tell the witness to avoid the courthouse, or suggest that she should not speak to" opposing counsel).

---

[5] The rule even extends to non-corporate parties. The Second Circuit reversed a district court order refusing to allow a California plaintiff to introduce her own deposition at trial in New York. *Richmond v. Brooks*, 227 F.2d 490, 492 (2nd Cir. 1955); *see also* Wright & Miller, 8A Fed. Prac. & Proc. Civ. §§2146, 2147 (3d ed.) (collecting authorities).

Hon. William H. Orrick
June 23, 2022
Page 14

The case law cited by Plaintiff involve significantly different circumstances than those presented here and do not support the exclusion of Ms. Hunter's deposition testimony. For example, in *Forbes v. County of Orange*, 633 F. App'x 417, 418 (9th Cir. 2016) (unpublished), the Ninth Circuit concluded that the district court had not abused its discretion to prohibit the use of a witness's deposition testimony under Rule 32 where the witness's counsel—in efforts to locate the witness—failed to check "the most obvious location": a sober living facility located within the court's district. Similarly, in *Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187, 1190-91 (10th Cir. 2004), the Tenth Circuit concluded in an opinion unique to its facts that the district court did not abuse its discretion in prohibiting the use of a witness's deposition testimony under Rule 32 where the witness procured his own absence by making a calculated decision to leave the country after he was informed by a magistrate judge that he risked being arrested and imprisoned if he showed up to trial given his immigration status. These cases stand in stark contrast to the well-established rule noted above that Rule 32 does not require the Altria Defendants to procure Ms. Hunter's attendance, but rather that they must refrain from procuring her absence, which requires more than doing nothing to facilitate her presence. Plaintiff makes no allegations that the Altria Defendants have engaged in any conduct to procure Ms. Hunter's unavailability.

## 6.      Rebuttal Witnesses / Claimed Injuries

### Plaintiff's Position

Defendants seek a special order limiting the scope of Plaintiff's rebuttal case. There are familiar standards governing rebuttal evidence. *See, e.g.*, *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002) (collecting cases). The Court "has the discretion to limit the scope of rebuttal testimony to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief." *Id.* (internal quotation marks omitted). Where evidence is "real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." *Id.* (citation omitted). And a "plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief." *Id.* (citation omitted). There is no reason to apply a special rule prophylactically in this case, especially given that the resolution of any dispute, and indeed whether there is even a dispute, depends on how evidence comes in at trial.

Defendants distort the issue by making it seem like Plaintiff's theories of injury are unclear. What this has to do with the proprietary of rebuttal evidence is never stated. Regardless, Plaintiff has again informed Defendants which injuries are asserted in this trial. Ex. 7 (6/23/22 Letter).

### Defendants' Position

Plaintiff has withdrawn various theories of injury as the litigation evolved, including GERD and asthma exacerbation. Her expert witness list contracted as well, and her expert toxicologist Dr. Tackett, was dropped as a trial witness. By the Pretrial Conference, Plaintiff stated that "damages related to respiratory harm" would not be part of their "case in chief."

Hon. William H. Orrick
June 23, 2022
Page 15

5/9/2022 PTC at 93:5-94-96.  And at a recent JCCP status conference, Plaintiff's counsel represented to the Court that, with respect to the *B.B.* trial, he "disagree[d] with the characterization that there's a physical injury component to that trial," which he described as "an addiction-only case."  5/20/22 JCCP Tr. at 45:12-14.  Consistent with this history Plaintiff have just provided a letter stating that the "harms and losses at issue in the B.B. trial" are addiction, anger/outburst, mood swings, irritability, depression/anxiety, lack of concentration, headaches, and nausea.  Based on these representations, this case should not involve evidence regarding alleged toxicological or health-effects of JUUL products, except for those alleged conditions or injuries.

Nonetheless, the proposed "warnings" Plaintiff intends to submit to the jury include that "Nicotine is very toxic to inhale into your lung." Plaintiff also has designated substantial deposition testimony regarding potential toxicity of JUUL aerosol.

It is far too late for Plaintiff to send mixed messages on her injury claim, or to hold open the option of calling rebuttal witnesses on the injury issue.

## 7.     Supplemental Deposition of Robin Bain

### Plaintiff's Position

Plaintiff opposes Defendants' third ask for a supplemental deposition of Robin Bain. Ms. Bain was deposed on August 20, 2021. Defendants' first request for a second deposition came in February 2022 in the wake of their unsuccessful attempt to strike Plaintiff's supplemental discovery production and declaration. ECF. 2870 (Reply ISO Motion to Strike) at 1:11-14; 8:14-17. There, Defendants' justification was to question Robin Bain about the timing and circumstances of the discovery production at issue. *Id.* The Court allowed a limited supplemental deposition of B.B. but did not grant Defendants' request as to Robin Bain. In April 2022, Defendants again requested a supplemental deposition of Robin Bain related to a potential medical issue of B.B., but that request became moot based on B.B.'s subsequent medical evaluations, supplemental deposition, and amended PFS that limited the scope of her alleged injuries. Defendants' newest and third request for another deposition of Robin Bain came after B.B.'s May 4, 2022 supplemental deposition. The request should be denied.

Defendants seek to depose Robin Bain on the details of Plaintiff's January 2022 supplemental discovery production and declaration. But the Court already denied Defendants' related Motion to Strike, including the request within to re-depose Robin Bain on those exact issues. Defendants also seek to question Robin Bain on B.B.'s recent testimony about when her parents found out she was using JUUL. Defendants already deposed Robin Bain on this exact issue. Ex. 6 (Robin Bain Dep.) at 92:16-93:6; 95:14-97:16. It was B.B., not Robin Bain, who clarified her prior testimony, and Defendants had the opportunity to cross-examine B.B. on this issue just last month. Finally, Defendants seek to depose Robin Bain about treatment recommendations made by certain of Plaintiff's experts (some of which have been withdrawn). Defendants have and continue to obtain all records of medical treatment for B.B. Thus,

Hon. William H. Orrick
June 23, 2022
Page 16

Defendants will continue to learn about B.B.'s continued efforts to treat her injuries; another deposition of Robin Bain is unnecessary. As to whether Plaintiff's experts evaluations of B.B. were disclosed to B.B.'s treating counselor Charlotte Bailey, Defendants have already questioned Ms. Bailey and B.B. on that issue and fail to articulate why forcing Robin Bain to sit for another deposition on the same topic is required.

### Defendants' Position

Robin Bain was deposed one time nearly one year ago.  Since that time, many things have changed, and the factual record has evolved—including most recent information showing that Ms. Bain not only has personal knowledge regarding B.B.'s claimed injuries and treatments, but that she in fact also has played a role in B.B.'s testimony in this case.  Defendants seek leave to take a limited, remote, supplemental deposition of Ms. Bain with respect to the following issues.

*First*, during the supplemental deposition of B.B., Plaintiff's counsel elicited lengthy testimony regarding inconsistencies between B.B.'s testimony at her first deposition regarding when and how her parents learned she was using JUUL products and the testimony of her parents, Robin Bain and Troy Bain, on that same issue.  Ex. 8, 5/4/22 B.B. Dep. at 117:25-123:22.  B.B. testified, for example, that her prior sworn deposition testimony that her mother had found vaping devices in seventh grade was incorrect or inaccurate.  B.B. further testified that she "realize[d] the answers to the [deposition] questions on those pages were incorrect" after she and Ms. Bain "ended up discussing it" and Ms. Bain told B.B. "her side of the story," and she just talked with Ms. Bain and they "figured it out."  *Id.* at 124:22-125:11.  B.B. was unsure of when these discussions occurred, but the marked change in a key portion of the timeline of B.B.'s alleged JUUL use is a critical fact and credibility issue about which Defendants are entitled to question Ms. Bain, whose "side of the story" apparently precipitated the change.

*Second*, following B.B.'s January 20, 2022 production of additional marketing materials and a new declaration after the close of discovery and in advance of her opposition to JLI's summary judgment motion, the Court allowed Defendants to take a supplemental deposition of B.B. regarding, among other things, the date(s) and circumstances under which B.B. first identified certain new marketing materials that she purportedly saw (including the kiosks).  *See generally* Briefing on JLI's Motion To Strike (ECF Nos. 2836, 2866, 2870).  While the Court denied Defendants' request for a supplemental deposition of Robin Bain at the time (ECF No. 2836 at 1), during B.B.'s supplemental deposition, B.B. could not recall many of the dates when and circumstances under which she saw these materials in connection with this litigation.  *See* Ex. 8, 5/4/22 B.B. Dep. at 63:19-22, 63:2-6.  B.B. testified, however, that her mother (Robin Bain) "would have a better idea" than she would as to some of those dates.  *Id.* at 91:3-15.  A brief supplemental deposition of Ms. Bain is appropriate on this issue as well.

*Third*, since Ms. Bain's August 2021 deposition completed nearly one year ago, there have been significant additional events regarding B.B.'s alleged addiction and treatment recommendations and efforts.  Deposing Ms. Bain regarding, among other things, treatment

Hon. William H. Orrick
June 23, 2022
Page 17

recommendations made by Plaintiff's experts (including those who have been withdrawn), follow-up related to those recommendations, any failures to disclose those recommendations to treating physicians, and the discontinuation of such treatments is new information about which Ms. Bain has direct personal knowledge and should be deposed.  This new record information includes the recent deposition of Charlotte Bailey, a Licensed Clinical Social Worker from whom B.B. received and then ceased hypnotherapy treatment.  Allowing supplemental depositions on new medical records or treatments is consistent with Plaintiff's recognition that "any amended or supplemental discovery B.B. has produced since her April 2021 deposition is an appropriate subject matter" for a supplemental deposition of B.B.  ECF No. 2866 at 16.  Given the role of Ms. Bain as both a parent and a plaintiff, a supplemental deposition of Ms. Bain on new materials is appropriate for the same reasoning leading to a supplemental deposition of B.B.

8.      **Use of a Deposition "For Any Purpose" Under Rule 32(a)(3) Where Witness is Available (Including But Not Limited to Nick Pritzker)**

        <u>Plaintiff's Position</u>

        Plaintiff requests that the Court clarify that a deposition of a party's officer, designee, or managing agent that may be used "for any purpose" under Rule 32(a)(3) may in fact be used for any purpose. Defendants contend that "for any purpose" actually means "for any purpose unless the witness is available." Defendants are incorrect.

        Under the federal rules, "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3). The "plain language of Rule 32(a)(3)" permits the playing of the specified depositions "even if the witness is available and will testify at trial." *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 10-106, 2015 WL 5089779, at *3 (D. Nev. Aug. 27, 2015); *see also, e.g.*, *Optional Cap., Inc. v. Kyung Joon Kim*, No. 04-3866, 2008 WL 11336496, at *9 (C.D. Cal. Jan. 17, 2008) ("Although … a party can use *its own* deposition at trial *only if* that party is unavailable, an adverse party can use another party's deposition at trial without regard to that witness's availability."); Wright & Miller, 8A Fed. Prac. & Proc. § 2145 (3d ed.) ("The trial court … may not refuse to allow the deposition to be used merely because the party is available to testify in person."). Defendants' position to the contrary not only contradicts Rule 32, but is in conflict with Defendants' own concession that the deposition of Daniel Myers may be played in this trial, notwithstanding his availability. *See* ECF No. 3129 (stipulation to withdraw motion to deem Myers a "managing agent" under Rule 32(a)(3)).[6]

---

[6]  Defendants cite *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310 F.R.D. 341 (E.D. Mich. 2015), where the court exercised discretion to deny the use of depositions under Rule 32(a)(3). The decision in that case rested on myriad considerations inapplicable here. To start, the proponent sought to use depositions under Rule 30(b)(6), which the Court thought "does not necessarily bind the corporation." *Id.* at 343. No 30(b)6) testimony is at issue here. Second, the Court thought that depositions permitted to be used under Rule 23(a)(3) might be inadmissible hearsay, *id.*, but that is not true in this Circuit. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 914-15 (9th Cir. 2008). Finally, the Court was

Hon. William H. Orrick
June 23, 2022
Page 18

To be sure, the Court retains authority to limit cumulative testimony. *See* Wright & Miller § 2145 ("The trial court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand."). That limitation does not support Defendants' position. First, Defendants would prevent the use of a deposition even where a witness "can" be called live, whether or not she is actually called. But the mere availability of a witness does not present any cumulativeness concerns. Second, the limitation can be applied only on a case-by-case basis if and when a party seeks to play redundant testimony. The Court can take appropriate action to limit any cumulative testimony at the point a concern arises.

One final note. Defendants contend that, should the Court grant this motion, they "reserve all rights to play deposition excerpts for" B.B. and Robin Bain. Defendants are correct that B.B.'s deposition is that of a party under Rule 32(a)(3). But Robin Bain's is not. While Robin Bain appears in the caption of B.B.'s complaint, she is not a plaintiff in this action. The parties' agreed jury instructions correctly state that there is only one plaintiff—B.B. In fact, at one point Defendants' proposed jury instructions identified Robin Bain as a plaintiff, but Defendants removed that language upon Plaintiff making the same argument she makes here. The complaint asserts injuries only to B.B., and the expert opinions submitted concern only those injuries. The substance of the action, not the caption, is what gives notice to Defendants and what controls. *See, e.g.*, *Allen v. Booth*, No. 20-685, 2020 WL 5709198, at *3 (S.D. Cal. Sept. 24, 2020) ("While the caption of a complaint is helpful to the court it is usually not considered part of the pleader's statement of claim and is not determinative as to the parties to the action.") (citation omitted); *Shanks v. L-3 Commcn's Vertex Aerospace LLC*, No. 19-6313, 2019 WL 5389892, at *7 (C.D. Cal. Oct. 21, 2019) ("It is the body of a pleading that controls, not the caption.") (citation omitted); *see also Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 406 n.4 (6th Cir. 2019) "[E]rrors in captions are common and need not be viewed as fatal defects.").

### **Defendants' Position**

There is no reason why deposition excerpts from witnesses should be played at trial if those witnesses are also available to testify live and in person at trial. The Court has repeatedly indicated that witnesses should testify once and only once in this trial.[7] *See* 12/6/21 Minute

---

concerned about the mechanics of ruling on admissibility objections to depositions played during trial. *Id.* at 344. Here, the parties already have a process in place with Judge Larson for the efficient handling of such matters. Defendants also cite *Corcoran v. CVS Pharm., Inc.*, No. 15-3504, 2021 WL 1721056 (N.D. Cal. Apr. 30, 2021), but that case involved the deposition of a "nonparty witness" and so did not fall under Rule 32(a)(3). *Id.* at *5. Defendants' remaining cases invoke either the court's discretion under Rule 32 without any reason for exercising that discretion in this case or turn on particularized trial management concerns that are, at this point in this case, pure speculation. Finally, Defendants cite *Dhyne v. Meiners Thriftway Ins.*, 184 F.3d 983 (8th Cir. 1999), but that case acknowledged that the district court's exclusion of deposition testimony was "arguably inconsistent with the language of Rule 32(a)(3)," and affirmed the verdict in the court below only because the error was harmless. *Id.* at 990.

[7]   The Court made one narrow exception with respect to depositions "only in those cases where the defendants' designations are longer than the plaintiffs' designations," in which case "the designations

Hon. William H. Orrick
June 23, 2022
Page 19

Order, ECF No. 2611 at (referring to Court's "normal practice" of "play[ing] all video deposition excerpts for a witness at once") 12/6/2021 at 55:11-17 (discussing "variety of reasons, including efficiency" and "getting a full sense of what [the witnesses] think" for testimony from one witness come in at once).  The Court should apply the one-witness one-time default to Mr. Pritzker and other witnesses who may testify live and in-person at the *B.B.* trial.

*First*, Mr. Pritzker resides in the jurisdiction and expects to be available to testify live at trial. Under the Court's one-and-done preference, his deposition should not be played if he appears live at trial.  Rule 32(a)(3)'s provision that certain depositions maybe be used "for any purpose" does not alter the result.  Even though Mr. Pritzker was a director of JLI at the time of this deposition, "nothing in [Rule 32] indicates that [such depositions] may be used at any time or in any manner as a party sees fit."  *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310 F.R.D. 341, 344 (E.D. Mich. 2015).  "Regardless of whether the witness is a party, the Rules of Civil Procedure and Evidence are based on the premise that live testimony is more desirable than a deposition."  *See Gonzalez Berrios v. Mennonite Gen. Hosp., Inc.,* 2020 WL 502333 at *3 (D.P.R. Jan. 30, 2020).  Thus courts frequently and appropriately reject attempts to play depositions of live witnesses (even parties or party-representatives) to promote efficiency and avoid cumulative evidence and jury confusion.  *See Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 1721056, at *5 (N.D. Cal. Apr. 30, 2021) ("Because any 30(b)(6) testimony provided by way of deposition for these corporations appears duplicative and could create confusion for a juror, the Court is not inclined to allow it."); *Cosmos Granite (W.), LLC v. Minagrex Corp.,* 2021 WL 5140226, at *4 (W.D. Wash. Nov. 4, 2021) ("The Court strongly disfavors the admission of deposition designations for testifying witnesses, finding it cumulative and confusing to the jury."); *Beem v. Providence Health & Servs.,* 2012 WL 13018728, at *2 (E.D. Wash. April 19, 2012) ("Although an adverse party may use the deposition of a party even when the party is available to offer live testimony, such use can be unnecessarily repetitious.") (internal cite omitted); *Rigsbee v. City & Cty. of Honolulu,* 2019 WL 1089636, at *2 (D. Haw. Mar. 7, 2019) (denying motion in limine to allow use of 30(b)(6) witnesses depositions in lieu of live testimony because it "would undermine the strong preference for live testimony"); *see also Gonzalez Berrios*, 2020 WL 502333 at *3 ("presenting the deposition videos *instead* of live testimony is unwarranted if the witnesses are available and presenting the depositions in *addition* to live testimony would cause undue delay and be needlessly cumulative"); *Feinwachs v. Minnesota Hosp. Ass'n*, 2019 WL 4298085, at *11 (D. Minn. Sept. 11, 2019) (precluding playing of deposition where witness would be called live at trial, finding the "videotape deposition very likely would be disjointed and confusing for a jury, particularly when contrasted with his presentation of live testimony that is expected to be provided later in the trial" and "also increases the risk of undue delay, wasted time, and cumulative evidence").[8]

---

should be reduced for completeness. And then remainder can be played in the defendants' case."  5/9/2022 PTC at 60; ECF No. 3170 at 2.

[8]  Plaintiffs have indicated that they will bring both B.B. and Robin Bain (both of whom are parties) to trial, and thus requested that Defendants defer the deposition designation and dispute process with respect to their depositions.  This position is consistent with the preference for live testimony and the one-witness, one-time rule.  If, however, the Court allows depositions of live witnesses to be played at trial, Defendants reserve all rights to play deposition excerpts for BB and Ms. Bain at trial as both are party

Hon. William H. Orrick
June 23, 2022
Page 20

Counsel can of course use the depositions as appropriate during the live testimony (including for impeachment), but there is no reason to have a video deposition played of a witness who is available for examination live at trial. *See Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 990 (8th Cir. 1999) (affirming preclusion of deposition of defendant's corporate officer, who was available to testify, finding it "cannot possibly cause unfair prejudice, because the party wishing to use deposition testimony can call the adverse witness live, impeach [the adverse witness] with the deposition if necessary, and even question the witness using the exact same questions asked at the deposition."); *AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, 2019 WL 7288766, at *3–4 (E.D. Mich. Dec. 30, 2019) (where party is available and will be testifying at trial "Defendants will have the opportunity to ask him the precise questions that they asked him at his deposition and, if the answers differ, may use the deposition for impeachment purposes. . . . . Also, the probative value of the deposition transcript itself is substantially outweighed by the risk of undue delay, wasted time, and cumulative evidence.").

**9.      Agreed Issue - Exchange of Pretrial Demonstratives**

The Parties agree to exchange their opening slides (inclusive of exhibits and any video or transcripts of testimony, subject to the Court's guidance on the use of videos or transcripts) in sufficient time to enable the Court to rule on objections to those materials. The Parties would like to avoid obtaining rulings on the morning of opening statements, and if at all practical would like to obtain any such rulings in advance of the morning of opening.

**10.      Requests for Guidance**

Finally, while not necessarily the subject of dispute at this time, the Parties would appreciate discussing the Court's preferences and procedures with respect to the following issues.

- The dissemination and docketing of Special Master Larson's rulings on deposition designation issues and the most efficient process for raising any issues with those rulings with the Court.

- Confirmation of this Court's role in determining the admissibility of exhibits, and the procedures for implementing such rulings with respect to deposition designations involving those exhibits.

- The use of transcripts and/or video excerpts during opening statements.

---

witnesses whose deposition may be used "for any purpose" by an adverse party. *See e.g. J.H. by Harris v. Williamson Cnty., Tennessee,* 2018 WL 10150480, at *3 (M.D. Tenn. July 5, 2018)(denying motion to strike because "Plaintiff's mother, as Conservator for Plaintiff, is an adverse party to this action. A deposition may be used against an adverse party for any purpose").

Hon. William H. Orrick
June 23, 2022
Page 21

- The Court's preference with respect to timing for JLI's offer of proof regarding the relevance of family substance abuse issues.

* * *

The Parties look forward to discussing these issues on June 27, 2022.

Very truly yours,

Sarah R. London

*Counsel for Plaintiff*

/s/ Renee D. Smith
/s/ Peter A. Farrell

*Counsel for Defendant Juul Labs, Inc.
& Lead Defense Liaison Counsel*