Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
Lauren.Wulfe@arnoldporter.com

John C. Massaro (*admitted pro hac vice*)
Daphne O'Connor (*admitted pro hac vice*)
Jason A. Ross (*admitted pro hac vice*)
David E. Kouba (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999
John.Massaro@arnoldporter.com
Daphne.OConnor@arnoldporter.com
Jason.Ross@arnoldporter.com
David.Kouba@arnoldporter.com

Moira K. Penza (*admitted pro hac vice*)
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, NY 10036
Telephone: 212-294-8910
mpenza@wilkinsonstekloff.com

Paul W. Rodney (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
1144 15th Street, Suite 3100
Denver, CO 80202
Telephone: 303-863-1000
Facsimile: 303-832-0428
Paul.Rodney@arnoldporter.com

Angela R. Vicari (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-836-8000
Facsimile: 212-836-8689
Angela.Vicari@arnoldporter.com

Beth A. Wilkinson (*admitted pro hac vice*)
Brian L. Stekloff (*admitted pro hac vice*)
James M. Rosenthal (*admitted pro hac vice*)
Matthew R. Skanchy (*admitted pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Attorneys for Defendants Altria Group, Inc.,
Philip Morris USA Inc., Altria Client Services LLC,
and Altria Group Distribution Company

# * * * FILED UNDER SEAL * * *

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: *San Francisco Unified School District v. JUUL Labs, Inc., et al.* | Case No.: 19-MD-02913-WHO **ALTRIA DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S GOVERNMENT ENTITY BELLWETHER EXPERTS – DAVID CUTLER AND MINETTE DRUMWRIGHT** Hon. William H. Orrick Date:    TBD Time:    TBD |

**PLEASE TAKE NOTICE** that, on a day to be determined by the Court, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Group Distribution Company (the "Altria Defendants") will present its Motion to Exclude Certain Testimony of Dr. David M. Cutler and Dr. Minette E. Drumwright.  The Altria Defendants seek an order excluding certain opinions of these witnesses under Federal Rule of Evidence 702.

Dated:  August 15, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ John C. Massaro*
    John C. Massaro (*admitted pro hac vice*)
    Daphne O'Connor (*admitted pro hac vice*)
    Jason A. Ross (*admitted pro hac vice*)
    David E. Kouba (*admitted pro hac vice*)
    Paul W. Rodney (*admitted pro hac vice*)
    Angela R. Vicari (*admitted pro hac vice*)
    Lauren S. Wulfe (SBN 287592)

WILKINSON STEKLOFF LLP
Beth A. Wilkinson (*admitted pro hac vice*)
Brian L. Stekloff (*admitted pro hac vice*)
James M. Rosenthal (*admitted pro hac vice*)
Moira K. Penza (*admitted pro hac vice*)
Matthew R. Skanchy (*admitted pro hac vice*)

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, and ALTRIA GROUP DISTRIBUTION COMPANY

ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD ............................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     THE COURT SHOULD EXCLUDE THE ALTRIA DEFENDANT-SPECIFIC
CAUSATION OPINIONS OF DR. CUTLER ............................................................2

     A.     Dr. Cutler's Opinions ...................................................................................3

          1.     Dr. Cutler's Generic Report ..............................................................3

          2.     Dr. Cutler's Bellwether Report .........................................................5

     B.     There Is Too Great An Analytical Gap Between Dr. Cutler's Opinions and the
Data He Analyzed ........................................................................................6

     C.     Dr. Cutler's Regression Analysis Is Unreliable Because It Omits a Major Variable
Rendering it Unreliable ................................................................................7

II.    THE COURT SHOULD EXCLUDE DR. DRUMWRIGHT'S REBUTTAL OPINIONS .....8

     A.     Dr. Drumwright's Opinions .........................................................................9

     B.     Dr. Drumwright's Opinions Exceed the Permissible Scope of a "Rebuttal" and
She is Not Qualified to Offer Them ...........................................................10

     C.     Dr. Drumwright's Opinions Do Not Fit the Issues of this Case ...............11

     D.     Dr. Drumwright's "Rebuttal" Opinions Are Not the Product of Any Methodology
and Lack a Sufficient Factual Basis ..........................................................12

CONCLUSION .....................................................................................................................17

ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
    761 F. Supp. 2d 1007 (E.D. Cal. 2011) ......................................................................... 14

*Bazemore v. Friday*,
    478 U.S. 385 (1986) .................................................................................................... 7, 8

*Bruce v. Terhune*,
    376 F.3d 950 (9th Cir. 2004) ........................................................................................ 16

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ........................................................................................ 6

*Claar v. Burlington N. R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ............................................................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ......................................................................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................................. *passim*

*Dwyer v. Secretary of Health and Human Serv.*,
    No. 03–1202–V, 2010 WL 892250 (Fed. Cl. Mar. 12, 2010) ....................................... 14

*In re Elec. Books Antitrust Litig.*,
    No. 11md2293 (DLC), 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ............................ 8

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .......................................................................................... 2

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................... 3

*General Elec. v. Joiner*,
    522 U.S. 136 (1997) ................................................................................................... 6, 7

*Gocke v. United States*,
    No. CV 16 1560 MWF, 2019 WL 8013876 (C.D. Cal. Oct. 10, 2019) ......................... 16

*High v. Choice Mfg. Co.*,
    No. C-11-5478 EMC, 2012 WL 3025922 (N.D. Cal. July 24, 2012) ........................... 11

*In re Incretin-Based Therapies Prod. Liab. Litig.*,
    No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) ............................................ 8

*In re Incretin-Based Therapies Prod. Liab. Litig.*,
    524 F. Supp. 3d 1007 (S.D. Cal. 2021) ................................................................. 8

*Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*,
    1995 WL 115421 (N.D. Cal. Mar.15, 1995) ....................................................... 10

*Liaw v. United Airlines, Inc.*,
    No. C 19-00396 WHA, 2019 WL 6251204 (N.D. Cal. Nov. 22, 2019) ........................ 6

*Mesfun v. Hagos*,
    No. CV 03-02182 MMM, 2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ................... 16

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018) ................................................................. 6

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
    982 F.3d 113 (2d Cir. 2020) ................................................................................ 6

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) .................................................................... 15, 16

*Parenti v. Cnty. of Monterey*,
    No. 14-CV-05481-BLF, 2017 WL 1709349 (N.D. Cal. May 3, 2017) ..................... 11

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ........................................................................................ 12

*In re Roundup Prods. Liab. Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) .............................................................. 11

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
    No. 2:18-CV-06825-SB-RAO, 2021 WL 6107023 (C.D. Cal. Nov. 12, 2021) ......... 16

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ............................................................................... 2

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
    318 F. Supp. 2d 879 (C.D. Cal. 2004) ............................................................. 2, 13

*Sound View Innovations, LLC v. Hulu, LLC*,
    33 F.4th 1326 (Fed. Cir. 2022) ........................................................................... 6

*Sound View Innovations, LLC v. Hulu, LLC*,
    No. LACV1704146JAKPLAX, 2020 WL 13267240 (C.D. Cal. June 30, 2020) ......... 6

*Sportvision, Inc. v. SportsMEDIA Tech. Corp.*,
    No. C 04-03115 JW, 2005 WL 8177792 (N.D. Cal. Apr. 12, 2005) ....................... 10

*United States v. Diaz*,
    876 F.3d 1194 (9th Cir. 2017) ........................................................................... 17

ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

*United States v. Valencia-Lopez*,
    971 F.3d 891 (9th Cir. 2020) ............................................................. 2

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002) ............................................................ 11

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir.2004) .................................................................. 7

*In re Wireless Tel. Servs. Antitrust Litig.*,
    385 F. Supp. 2d 403 (S.D.N.Y. 2005) ........................................... 7, 8

**Statutes**

SFHC Art. 19Q ........................................................................................ 2

SFHC Art. 19R ........................................................................................ 3

**Rules**

Fed. R. Evid. 702 ............................................................................ 1, 6, 11

ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

1

**ISSUES TO BE DECIDED**

2

1.      Whether the Court should exclude the opinions of Dr. David M. Cutler because they

3

do not meet the requirements of Federal Rule of Evidence 702.

4

2.      Whether the Court should exclude certain rebuttal opinions of Dr. Minette E.

5

Drumwright because they do not meet the requirements of Federal Rule of Evidence 702.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS

1

## **INTRODUCTION**

The facts applicable to the claims of Plaintiff San Francisco Unified School District ("Plaintiff" or "SFUSD") differ in a material and significant way from the facts applicable to the claims of all other plaintiffs whose experts have been challenged previously in this MDL.  Namely, as of July 21, 2018 – five months before Altria Group, Inc.'s investment in JLI and six months before certain of the Altria Defendants began to provide services to JLI – the City of San Francisco prohibited the sale of all flavored JUUL products (including menthol) other than tobacco (the "Flavor Ban"). The Flavor Ban is fatal to Plaintiff's cookie-cutter approach to causation.  In particular, the Court should exclude the Altria Defendant-specific causation opinions of Dr. David Cutler ***in this case*** because the gap between the San Francisco-specific data he analyzed and his SFUSD case-specific conclusions is simply "too great" to pass muster under Rule 702 and the regression analysis that forms the basis of his opinions is unreliable.

The Court should also exclude the rebuttal opinions of Dr. Minette E. Drumwright for separate and independent reasons.  Dr. Drumwright's opinions exceed the permissible standards for rebuttal opinions because, as Dr. Drumwright readily admitted herself, they go well "beyond" the opinions she was asked to rebut.[1]  Dr. Drumwright also is not qualified to offer the purported rebuttal opinions. Dr. Drumwright's opinions are further barred by Rule 702 because they are untethered to the relevant standard of liability and are based not on a reliable methodology but instead impermissible speculation and personal opinion.

## **LEGAL STANDARD**

The Federal Rules of Evidence require expert testimony to be:  (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) the result of applying those principles and methods reliably to the facts of the case.  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579, 595 (1993).  The 2000 amendments to Rule 702 sought to establish a uniform approach to scrutinizing the admissibility of proffered opinion testimony: "The trial judge in all cases of proffered expert testimony *must* find that it is properly grounded, well-reasoned, and not speculative *before* it can be admitted."  Advisory Committee Note to 2000 Amendments to Rule 702

---

[1] Drumwright Dep. (Jun. 1, 2022) at 12:5–16 (Ex. 1).

(emphases added).  Thus, "[u]nder *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet [Rule] 702's reliability standards by making a preliminary determination that the expert's testimony is reliable" and relevant.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011); *see also United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) ("[A] district court abdicates its gatekeeping role, and necessarily abuses its discretion, when it makes no reliability findings."); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) (district court in wrongful death suit abused its discretion when it "abandoned its gatekeeping function" by declaring reliability and relevance arguments to be province of jury because they went to weight, not admissibility).  "The trial court's gatekeeping function requires more than simply taking the expert's word for it."  *In re Silicone Gel Breast Implants Prods. Liab. Litig.,* 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (internal citation and quotation omitted).

## ARGUMENT

## I.       THE COURT SHOULD EXCLUDE THE ALTRIA DEFENDANT-SPECIFIC CAUSATION OPINIONS OF DR. CUTLER

Dr. Cutler's various opinions in this MDL are driven by a common refrain that this Court has heard time and time again.  According to Dr. Cutler's three-step analysis, (1) youth usage is driven by *"flavored"* (*i.e.,* flavors other than tobacco) JUUL products (particularly mint), (2) services provided by certain of the Altria Defendants to JLI increased sales of JUUL (including flavors such as mint), and (3) therefore, the Altria Defendants' increased youth usage of JUUL.[2]  But unlike other jurisdictions, San Francisco prohibited the sale of flavored ENDS and tobacco products, including JUUL mint and menthol products, among other flavors, as of July 21, 2018.[3]  Altria Group, Inc.

---

[2] *See e.g.*, Am. Compl. ¶¶ 184, 590 (ECF 9); *see also* Report of Prof. David M. Cutler (Sept. 20, 2021) ("Generic Report") at 22 ("JUUL use in the past 30 days fell from 20 percent of youth in 2019 to 12 percent in 2020.  The switch away from JUUL likely reflects JUUL's decisions to stop selling all flavors other than menthol and tobacco.") (Ex. 2); Report of Prof. David M. Cutler (Bellwether Government Entities) (Jan. 28, 2022) ("Bellwether Report") at 68 ██████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████) (Ex. 3).

[3] *See* San Francisco Health Code, Article 19Q:  Prohibiting The Sale Of Flavored Tobacco Products ("SFHC Art. 19Q").

purchased a 35% interest in JLI five months later in December 2018[4] and the Altria Defendants did not begin to provide services in San Francisco until February 2019.[5]  Then a little over a year after the Flavor Ban, San Francisco banned the sale of all JUUL products effective January 29, 2020.[6]  Thus, it is undisputed that the **_Altria Defendants never provided JUUL-related services in San Francisco while flavored products were sold there._**  This undisputed fact severs any tie between Dr. Cutler's finding that sales of tobacco pods in San Francisco increased after January 2019 and his conclusion that sales of those pods must have impacted **_youth_** usage rates.[7]  Therefore, the analytical gap between the facts and data considered by Dr. Cutler and his conclusions is too great and his opinions should be excluded.

Dr. Cutler's opinions should also be excluded because the regression analysis on which they are based is unreliable because it omits a major variable, namely the Flavor Ban.

### A.   Dr. Cutler's Opinions

Dr. Cutler has issued several reports in this MDL, two of which are applicable to SFUSD:  a September 20, 2021 "Generic Report" and a January 28, 2022 Bellwether Report".

### 1.   Dr. Cutler's Generic Report

In his Generic Report, Dr. Cutler performed a regression analysis[8] and opined that the Altria Defendants' conduct increased sales and youth usage of JUUL.  He based his conclusion on a fundamental assumption that youth usage rates can be approximated from data regarding sales of

---

[4] *See* Altria Group, Inc. Form 10-K Annual Report at 1 (Ex. 4); Pl.'s Altria Interrog. Resp. No. 19 at 118 (Ex. 5).

[5] *See, e.g.*, 5159966278; 5159966325; 5159966302; JLI01339889-JLI01339902 (SOW signed on January 29, 2019 through which JLI acquired Nu Mark Innovative Tobacco Product shelf space) (collectively, Ex. 6).

[6] *See* San Francisco Health Code, Art. 19R:  Prohibiting the Sale of Electronic Cigarettes Lacking Food and Drug Administration Premarket Approval.

[7]  Indeed, as this Court has acknowledged, the Altria Defendants are not alleged to have been part of the so-called "youth access scheme."  *See* Order on Motion for Class Certification and Related Daubert Motions (ECF 3327 at 30 n.21); Order on Second Round of Motions to Dismiss (ECF 1694 at 4, 8–9).

[8]  "A regression analysis is a statistical method of demonstrating a correlation between a dependent variable and independent variables."  *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at *9 n.8 (N.D. Cal. June 9, 2010).

*flavored* JUUL products.[9]  Dr. Cutler's generic testimony about the purported link between flavored JUUL and youth use is telling.  When asked how he was able to estimate youth usage rates in his Generic Report, he testified:

> [T]here are characteristics of the sales that look more indicative of youth sales than adult sales.  For example, the fact that mint was the most common increased sale item afterwards and tobacco and menthol were very low increased sales.  Of course, mint was disproportionately used by youth as compared to adults.  So, that is consistent with the idea that a good share went to youth.

Cutler Dep. (Nov. 3, 2021) at 376:5–14 (Ex. 7).  Then, in describing his ultimate opinion on causation, Dr. Cutler emphasized that "the increase in pod sales was not uniform across flavors," and the "vast bulk of the sales increase was in mint pods."  Generic Report at 119 (Ex. 2).  According to Dr. Cutler, "[t]o the extent that youth disproportionately use mint pods relative to adults, this is further evidence that Altria's actions helped increase sales to youths."  *Id.*

Consistent with the conclusion in his Generic Report, Dr. Cutler conceded at his generic deposition that:

> [H]ad all the sales been in tobacco and menthol, I would have thought, you know, **I'm not sure this actually increased youth use by very much.  So, had it been the other way, my view would have changed somewhat**.

Cutler Dep. (Nov. 3, 2021) at 376:23–377:3 (emphasis added) (Ex. 7).[10]

---

[9] *See* Generic Report at 107 ("[y]ouths are heavy consumers of flavored e-cigarettes . . . . flavors are disproportionately consumed by youth vapers") (Ex. 2); *id.* at 108 ("The 2019 MTF survey found mango, mint, and fruit to be most-used flavors of about four-fifths of current youth users of JUUL; tobacco and menthol were minimally used."); Cutler Dep. (Nov. 3, 2021) at 230:11–19 (Ex. 7).  *See also* Cutler Dep. (May 6, 2022) at 242:4–11 ██████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████) (Ex. 8).

[10] *See also* Cutler Dep. (Nov. 3, 2021) at 382:1–13 ("Q.  And it's kind of a relatively similar series of answers in the sense that your regressions don't tell us whether the sales were to adults or youths; right? A.  That's correct.  The regression results do not say whether the sales were to adults or youth, but again, the biggest impact here is on the mint sales. And so, I think that's indicative of sales to youth, and had it been the other way, ***had it been the biggest impact on menthol and tobacco, I would have taken that as evidence that it was unlikely to have been a big part for youth.***") (emphasis added) (Ex. 7).

1          **2.     Dr. Cutler's Bellwether Report**

2          In his Bellwether Report, Dr. Cutler again opined that the ████████████

3  ██████████████████████████████████████████  Bellwether Report at 3 (Ex.

4  2); Cutler Dep. (May 6, 2022) at 233:14–234:4; 239:19–240:2 (Ex. 8).  He based this aggregate

5  conclusion on various regression analyses.  To determine what, if any, impact the Altria Defendants'

6  services had on the youth vaping rates in the Bellwether Areas, Dr. Cutler included in his regression

7  analyses data regarding certain services provided to JLI in 2019 in the five Bellwether Areas pursuant

8  to the Services Agreement.  In particular, Dr. Cutler considered ████████████████████

9  ██████████████████████████████████████████████████████████

10  ████████████████████████  Bellwether Report at 40 (Ex. 3); Cutler Dep. (May 6, 2022) at

11  235:9–18 (Ex. 8); Longest Dep. (Mar. 2, 2021) at 67:9–68:12 (Ex. 9); Longest Dep. (Mar. 3, 2021)

12  at 445:11–446:5 (Ex. 9); JLI01339889–JLI01339902 (Ex. 6).  Dr. Cutler's analysis and conclusions

13  are based solely on these services because they were the only things ████████████████

14  ████████████████  Bellwether Report at 40 (Ex. 3).[11]

15          Based on his analysis of data, ███████████████████████████████

16  ██████████████████████████████████████████████████████████

17  *Id*. at 44.  Given the local Flavor Ban that was in effect, Dr. Cutler did not (and could not) find that

18  the Altria Defendants' services had any impact on the sale of ***flavored*** JUUL pods in San Francisco.

19  Under the logic of Dr. Cutler's Generic Report and related testimony, pursuant to which he tied youth

20  use to flavored pod sales, services by the Altria Defendants should not have impacted youth use in

21  San Francisco.  But that is not the conclusion that Dr. Cutler reached in his Bellwether Report.

22  Despite the lack of sales of any flavored pods in San Francisco over the period during which certain

23  of the Altria Defendants provided services, Dr. Cutler nonetheless concluded by lumping San

24  Francisco with the five other Bellwether Areas (that did not have a similar flavor ban in 2019) that

25  ██████████████████████████████████████████████████████████

26  ██████████████████████  *Id*. at 47.

27  ────────────────────

28  [11] In all of San Francisco, only 22% of the stores received sales support services during the March to May period analyzed by Dr. Cutler.  In addition, only 8 of the 417 stores in San Francisco received an ITP reset.  *Id*. at 71, 75.

**B.     There Is Too Great An Analytical Gap Between Dr. Cutler's Opinions and the Data He Analyzed**

To be admissible, an expert's testimony must "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702(a).  The opinion must be "sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citations omitted); *see also id*. at 591–92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."); *Sound View Innovations, LLC v. Hulu*, LLC, No. LACV1704146JAKPLAX, 2020 WL 13267240, at *4 (C.D. Cal. June 30, 2020), *aff'd*, 33 F.4th 1326 (Fed. Cir. 2022) (excluding expert opinion where the technical assumptions were not sufficiently supported).

Accordingly, expert testimony is inadmissible if there is "too great an analytical gap between the data and the opinion proffered." *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997); *Liaw v. United Airlines, Inc.*, No. C 19-00396 WHA, 2019 WL 6251204, at *4 (N.D. Cal. Nov. 22, 2019) (finding that there was "simply too great an analytical gap" between the facts and the experts causation opinion).  In conducting its analysis, the court must "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.  Thus, "*Joiner* requires an expert to justify a foundational assumption or refute contrary record evidence." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).  Moreover, "[o]pinions that assume a conclusion and 'reverse-engineer[ ] a theory' to fit that conclusion are, similarly, inadmissible." *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020); *see also Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502–03 (9th Cir. 1994).

Here, Dr. Cutler's SFUSD case-specific opinions should be excluded because there is "too great an analytical gap" between the San Francisco-specific data that he analyzed and the ultimate

opinion he offers.  *Joiner*, 522 U.S. at 146.  Unlike other jurisdictions analyzed in his Generic Report and the five other Bellwether Areas analyzed in his Bellwether Report, San Francisco implemented a Flavor Ban as of July 21, 2018.  As of the date of the Flavor Ban, Altria Group, Inc. had not even made its minority investment, let alone provided any services in San Francisco or elsewhere.  Therefore, as even Dr. Cutler acknowledges, ████████████████████████████████████████ ████████████████████████████████████████████████.  Bellwether Report at 44 (Ex. 3).  But Dr. Cutler does not and never has based his **youth** usage rates on sales of tobacco-flavored JUUL.  According to Dr. Cutler, youth usage rates can be approximated by analyzing the volume of sales of **flavored** JUUL products such as mint.  Because Dr. Cutler assumes that sales of flavored pods drive youth usage and the Flavor Ban prohibited such sales prior to any potentially relevant conduct by the Altria Defendants, under his own logic – repeated throughout his various reports – there is no tie between any services provided by the Altria Defendants in San Francisco and use of JUUL by any student in the SFUSD.

But, desperate to overcome the obvious analytical gap between his opinions and the tobacco pod sales data he analyzed, Dr. Cutler reverse engineered his generic theories to fit a conclusion in the SFUSD case that is wholly unsupported by the undisputed facts.  True enough, the Court is a gatekeeper, not a fact finder.  But here, the gap between the existing facts and data on one hand and Dr. Cutler's conclusion on the other is so great that it render's Dr. Cutler's opinions too speculative as a matter of law.  The Court must close the gate in the SFUSD case.

**C.**      **Dr. Cutler's Regression Analysis Is Unreliable Because It Omits a Major Variable Rendering it Unreliable**

Regression analyses must account for "major factors."  *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (concurrence).  If an expert fails to incorporate a "major independent variable[]" in his regression analysis, "such analysis may be excluded as irrelevant."  *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 427 (S.D.N.Y. 2005).[12]  To be reliable and thus admissible, Dr. Cutler's

---

[12] *See, also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir.2004) ("failure to account for [major variables] strongly indicated that [expert]'s conclusions were not grounded in reliable scientific methods, as required by *Daubert*" );  *In re Elec. Books Antitrust Litig.*, No. 11md2293 (DLC), 2014 WL 1282298, at *10 (S.D.N.Y. Mar. 28, 2014) ("[Expert]'s ... analysis fails to support his opinions because it fails to control for systematic factors....");  *In re Wireless Tel. Servs.*

(Footnote Cont'd on Following Page)

regression analysis would need to follow established methodology and control for the major differences among the Bellwether Areas that could impact the rates of youth vape usage.  Dr. Cutler failed to do so.

To estimate the youth vaping rates based on sales data, Dr. Cutler ███████████████ ██████████████████████████████████████████████████████████████████████

██████████████████████ Bellwether Report at 63 (Ex. 3); Cutler Dep. (May 6, 2022) at 198:4– 10; 211:9–19 (Ex. 8).  Dr. Cutler's regression analysis includes state-level variables such as "measures of tobacco policies" and "minimum age for e-cigarette purchase."  Generic Report at 208–09 (listing coefficients used) (Ex. 2).  Notably missing from his analysis was the impact of San Francisco's ban on flavored tobacco products, which became effective in July of 2018.  *Supra* at 2.  This failure to incorporate such a major independent variable in his regression analysis therefore renders in unreliable and warrants exclusion.  *See Bazemore*,  478 U.S. at 400; *In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1036 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022) (finding that expert's "unequal application of criteria among the two groups inevitably skews the data and critically undermines the reliability of his analysis.").

## II.     THE COURT SHOULD EXCLUDE DR. DRUMWRIGHT'S REBUTTAL OPINIONS

In her rebuttal report, Dr. Drumwright was tasked with ██████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

██████████████[13]  By Dr. Drumwright's own admissions, the scope of her "rebuttal" report improperly exceeds the opinions proffered by Dr. Rock.  Moreover, her opinions lack any methodology and do not fit the case.  Finally, Dr. Drumwright concedes that her opinions are nothing more than unsubstantiated speculation based on impermissible credibility determinations and improper personal

---

*Antitrust Litig* ., 385 F.Supp.2d 403, 427 (S.D.N.Y.2005) ("Where an expert conducts a regression analysis and fails to incorporate major independent variables, such analysis may be excluded as irrelevant.").

[13] Rebuttal Report of Minette E. Drumwright, Ph.D. (May 2, 2022) ("Rebuttal Report") at 8 (Ex. 10).

opinions.  Given that jurors are capable of reviewing the facts and drawing their own conclusions, Dr. Drumwright's personal interpretation of what happened—or what should have happened—will not assist the jury in this case and thus fails to meet the standards under Rule 702 and *Daubert*.

### A.  Dr. Drumwright's Opinions

On May 2, 2022, Dr. Drumwright, a marketing and advertising professor at the University of Texas at Austin, issued a rebuttal report ostensibly responding to the Bellwether Report issued by Dr. Edward B. Rock on behalf of the Altria Defendants on January 28, 2022 (the "Rock Report").[14]  Dr. Rock opined, in broad terms, that the contracts governing the Altria Group, Inc.'s investment in JLI are (i) a typical example of a strategic investment in a promising business, and (ii) structured to limit the Altria Defendants' role and to prevent the Altria Defendants from controlling JLI.[15]  In response, Dr. Drumwright opines that the Altria Defendants used "███████████████████████████ █████████████████"  Rebuttal Report at 67 (Ex. 10).  She rests her opinion on the idea that, it is "████████████████████████████" to expect that the Altria Defendants "███████████████████████████████████████████████████████████████" and █████████████████████████████████████████████████[16]  Yet she concedes at her deposition that the Altria Defendants did not have coercive power over JLI, did not have legal control over JLI, could not shape JLI's decisions through command, and "████████████████████ █████████████████████."  Drumwright Dep. (June 1, 2022) at 81:14–82:1 (Ex. 1).  Dr. Drumwright bases her conclusions on her own review of documents and testimony—substituting her judgment for the jury—and drawing conclusions as to what the Altria Defendants "wanted" and what JLI board members "understood."[17]

---

[14] While Dr. Drumwright previously issued a generic report in the MDL, Dr. Drumwright's Rebuttal Report was submitted ***after*** the deadline for case specific expert reports and at the deadline for the exchange of case specific rebuttal reports for the Bellwether Government Entities.  *See* Order Regarding Defendants' Request for Additional Fact Discovery and Schedule Modifications to the Government Entity Cases (Apr. 8, 2022), ECF 3024.

[15] *See* Rock Report at 8 (Ex. 11).

[16] *Id.* at 11–12 (emphasis added).

[17] Rebuttal Report at 29 ("████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████

(Footnote Cont'd on Following Page)

**B.** **Dr. Drumwright's Opinions Exceed the Permissible Scope of a "Rebuttal" and She is Not Qualified to Offer Them**

As Dr. Drumwright admitted, her "rebuttal" opinions go well beyond the scope of those in Dr. Rock's report to which she was meant to respond:

███████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

Drumwright Dep. (Jun. 1, 2022) at 282:18–283:3 (emphasis added) (Ex. 1). *See also id.* at 12:10–13 ███████████████████████████████████████████████

███████████████████████████████ Dr. Drumwright had no choice but to make this concession. Dr. Rock, in his report, provided an overview of the government and management structure created by the operative Delaware General Corporation Law, described the transaction structure created by the agreements governing Altria Group, Inc.'s investment in JLI, and concluded that the transaction structure did not give control over JLI.[18]  In response, however, Dr. Drumwright analyzes documents and testimony relating to the Altria Defendants' corporate history, the negotiations leading up to the transaction, and theoretical abilities to exert "power" and "influence," as opposed to responding to Dr. Rock's opinion about the transaction structure itself.[19]

"The testimony of 'rebuttal' witnesses is limited to rebutting or contradicting the expert testimony initially designated by the opposing party." *Sportvision, Inc. v. SportsMEDIA Tech. Corp.*, No. C 04-03115 JW, 2005 WL 8177792, at *4 (N.D. Cal. Apr. 12, 2005).  Rebuttal experts cannot use their reports to explore new areas or proffer their own theories.  *Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar.15, 1995).  Given that Dr. Drumwright's opinions go beyond responding to Dr. Rock and offer new analysis meant to bolster Plaintiff's case-in-chief,

_____

████████████████████████████████████████████ (emphasis added) (Ex. 10).

[18] *See e.g.*, Rock Report at 7–8, 12–19 (Ex. 11).

[19] *See e.g.*, Rebuttal Report at 14, 29–30, 47 (Ex. 9).

in particular as to its RICO claim, her Rebuttal Report and accompany opinions should be properly excluded by the court.  *See, e.g., Parenti v. Cnty. of Monterey*, No. 14-CV-05481-BLF, 2017 WL 1709349, at *5 (N.D. Cal. May 3, 2017) (granting motion to exclude expert's rebuttal opinions which "go beyond mere rebuttal and are intended to buttress opinions offered in [his] own expert report").

Moreover, assuming *arguendo* Dr. Drumwright's opinions were within the permissible scope for a rebuttal, Dr. Drumwright is not qualified to opine as to whether the Altria Defendants had some part in directing the affairs of JLI.  Dr. Drumwright is a professor who researches and teaches ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rebuttal Report at 3 (Ex. 10).  She admitted she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Drumwright Dep. (Jun. 1, 2022) at 20:3–19, 21:12–18, 23:8–13, 66:9–14 (Ex. 1).  When an expert's field of expertise is not related to the subject on which she seeks to offer testimony, such testimony is inadmissible.  *See White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002).

### C.      Dr. Drumwright's Opinions Do Not Fit the Issues of this Case

Ultimately, Dr. Drumwright's opinions do not fit the SFUSD case.  To be relevant, expert testimony must "help the trier of fact . . . to determine a fact in issue."  Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 591 (An expert's opinion must be "sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.").  Thus the Court must exclude expert testimony "unless [it is] convinced that it speaks clearly and directly to an issue in dispute in the case."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (emphasis added); *see also In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1115 (N.D. Cal. 2018) (expert opinions must "speak[] squarely to the issue" to be decided).  Here, influence is not the proper standard as it is insufficient to establish liability under RICO.  *See High v. Choice Mfg. Co.*, No. C-11-5478 EMC, 2012 WL 3025922, at *8–9 (N.D. Cal. July 24, 2012) ("Simply providing assistance to the enterprise or having influence over the enterprise is not enough. . . . even substantial influence by a party through persuasion with respect to an alleged RICO enterprise is not enough to establish control."); *see also Reves v. Ernst & Young*, 507 U.S. 170, 178–79 (1993) ("'conduct' requires an

element of direction" and "*some*" part in directing the enterprise's affairs is required) (emphasis in original).

Dr. Drumwright, however, testifies that the Altria Defendants had no control over JLI:

███████████████████████████

████████████████

███████████████████████████

████████

███████████████████████████████

█████████████████████████████████████

███

Drumwright Dep. (June 1, 2022) at 81:14–82:1 (Ex. 1).  Instead, Drumwright's testimony concerning the Altria Defendants' purported direction, management, or operation of JLI is based what she vaguely refers to as ████████████████[20] ██████████████████████████████ ████████████████████████████ *Id.* at 70:23–5, 71:5, 103:7–12; 104:20–25, 103:22–104:9.   Therefore, Dr. Drumwright's opinions, awash in her assumptions regarding the Altria Defendants' influence over JLI, do not fit the statutory scheme at issue and do not speak to an issue in dispute in this case.

**D.**     **Dr. Drumwright's "Rebuttal" Opinions Are Not the Product of Any Methodology and Lack a Sufficient Factual Basis**

Setting aside that Dr. Drumwright's rebuttal opinions do not fit this case, it is immediately apparent that Dr. Drumwright applied no methodology—much less a reliable one—in reaching her

---

[20] *See, e.g., id.* at 57:1–4 (████████████████████████████████████ ████████████████████████); 132:22–133:4 (████ ██████████████████████████████████████████ ██████); 141:20–142:3  (same);  202:19–203:14  (████ ██ ███ ███ ██ █████); 225:6–23 ██████████████████████████████████ ██████████████████████ 233:4–22 (██ █████████████████████████████████████████); 245:14–24 (██████ ████); 249:5–12 ███████████████████████████

conclusions.   The court's gatekeeping role includes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592–93.  By her own explanations, Dr. Drumwright's analysis consisted of "███████████████████" and "███████████████████.  *E.g.,* Drumwright Dep. (Jun. 1, 2022) at 259:5–9, 41:10–20 (Ex. 1).  There is otherwise no explanation, however, what "synthesizing" entailed or how Dr. Drumwright conducted that evaluation.  It appears that instead of using a reliable methodology for her opinions, Dr. Drumwright offers unsupported conclusions, sheer speculation, personal opinion, and her own credibility determinations as improper expert testimony.  Rule 702 and *Daubert* do not permit the Court to "tak[e] the expert's word for it."  *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (internal quotation omitted).

First,  Dr. Drumwright failed to consider or outright ignored information that she acknowledged was or could be relevant to her conclusions.  For example,

- Testifying with regard to whether it was relevant what the Altria Defendants were doing competitively with JLI prior to investment:  "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"  Drumwright Dep. (June 1, 2022) at 268:6–18 (Ex. 1).  ██████████████████████████████████████████  *Id.* at 268:20–25.

- ████████████████████████████████████████████████████████████████████████████  *See id.* at 83:8–15 (███████████████████████████████████████████████████████████████████████████████████████████████); 139:9–140:12 (███████████████████████████████████████████████); 235:24–236:15 ██████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ███████████████

4 • When justifying her opinion that there was coordination between the Altria Defendants

5 and JLI in responding to the FDA in 2018, Dr. Drumwright does not cite any

6 documentation that the parties actually coordinated and states she does not recall

7 seeing any documents inconsistent with coordinated strategizing. ████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ██████████ *Id.* at 199:6–10; 200:7–15; 200:16–202:13. [21]

12 "[A] reliable expert would not ignore contrary data, misstate the findings of others, [or] make

13 sweeping statements without support." *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007,

14 1066 n.60 (E.D. Cal. 2011) (quoting *Dwyer v. Secretary of Health and Human Serv.*, No. 03–1202–

15 V, 2010 WL 892250, at *148 (Fed. Cl. Mar. 12, 2010)).

16 Second, Dr. Drumwright concedes she relies on sheer speculation and assumptions for many

17 of her opinions. For example,

18 • Testifying with regard to influence, ███████████████████████████

19 ████████████████████████████████████████████████

20 ███████████ Drumwright Dep. (June 1, 2022) at 105:15-25 (emphasis added) (Ex.

21 1).

22 • Testifying with regard to whether the Altria Defendants played any role in a decision

23 as to how much money went to the company versus the directors as part of the

24 ───────────────────

[21] *See also, e.g., id.* at 83:18–85:1 (██████████████████████████████████

25 ████████████████████████████████████████████████████);

26 185:15–186:22 (████████████████████████████████████████████

27 ██████████████████); 208:22–209:16 (similar); and

266:14–267:3 (█████████████████████████████████████████

28 ███████████████████).

1   transaction: "█████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ███████████████████████████████████." *Id.* at 232:3–8 (emphasis

4   added).

5   • Dr. Drumwright could not identify any specific evidence to support her opinion that

6   JLI included specific material in the November 2018 announcement of its Youth

7   Action Plan at the Altria Defendants' direction.   Instead, Dr. Drumwright merely

8   concluded "████████████████████████████████████████████████

9   ████████████████████████████████████." *Id.* at 175:19–177:23 (emphasis

10   added).

11   • When confronted with the fact that she cites no evidence to support her opinion that

12   Altria Group, Inc. chose to invest in JLI because of JLI's "foothold" in the youth

13   market, Dr. Drumwright testified that she thought the conclusion "██████████████

14   █████." *Id.* at 154:3–9.[22]

15   Speculative testimony, like that offered by Dr. Drumwright in this case, is "inherently unreliable."

16   *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).  Expert opinions must

17   be based on "more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.

18   Third, Dr. Drumwright's "expert testimony" instead offers personal opinion about the Altria

19   Defendants' actions and what she would like to have seen the Altria Defendants do.  For example:

20   • Dr. Drumwright repeatedly testified that ████████████████████████████████

21   ████████████████████████████████ *E.g.,* Drumwright Dep. (June 1, 2022) at

22

23

24   [22] *See also, e.g.*, *id.* at 80:6–13 ███████████████████████████████████████

25   ███████████████████████████████████106:6–12 (same).  *Compare* 105:7–106:9 (████████

26   ███████████████████████████████████) *with* 225:6–23 (███████████████████████████

27   ██████████████████████████████████████████████and 263:11–

28   264:8 (same).

33:17–34:11,  46:20–47:9,  53:1–16,  100:14–101:3,  103:3–6,  109:10–16,  143:22–144:7–11, 151:20–25, and 206:5–13 (Ex. 1).

- Dr. Drumwright testified ███████████████████████████████████

  ██████████████████████████████████████████████████████████████

  ██████████████████████████████████████ *E.g., id.* at 59:24–60:6, 80:20–22, 227:6–

  14, and 266:23–267:3.

- In her view, ████████████████████████████████████████████████

  ██████████████████████████████████████████████████████████████

  ██████████ *Id.* at 60:9–17.[23]

"[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 861. Dr. Drumwright's opinions are nothing more than improper and inflammatory personal opinion testimony subject to exclusion. *See Mesfun v. Hagos*, No. CV 03-02182 MMM, 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005) (granting motion to exclude expert's testimony because "his expert report amounts to nothing more than personal opinions and assumptions regarding the facts of the case and the motivations that led to its filing"); *Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. 2:18-CV-06825-SB-RAO, 2021 WL 6107023, at *3 (C.D. Cal. Nov. 12, 2021) (limiting expert's testimony because an expert "is not permitted to inject his personal opinions into this case, including his views about the 'right thing to do'").

Finally, Dr. Drumwright admitted ██████████████████████████████████

█████████████████. Drumwright Dep. (June 1, 2022) at 119:18–24 (Ex. 1). She further explained ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

*See, e.g., id.* at 120:20–121:11, 151:14–25, 119:8–22, 122:20–123:10, 196:21–197:6. "[I]t is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). As such, expert witnesses may not opine on facts derived from assessments of credibility. *E.g., Gocke v. United States,* No. CV 16 1560 MWF, 2019 WL 8013876, at *5 (C.D. Cal.

---

[23] *See also, e.g., id.* at 35:11–21 (providing her opinion that JLI "should not have done this deal").

Oct. 10, 2019) (excluding expert's opinions that were "based on his credibility determinations based on conflicting evidence").

Because Dr. Drumwright's conclusions that the Altria Defendants had some part in directing, managing, or operating JUUL are nothing more than *ipse dixit*, unsupported by any data, analysis, or reliable evidence, they must be excluded.  *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (excluding expert's testimony because it "does not *aid* the jury in making a decision, but rather [she] attempts to substitute [her] judgment for the jury's") (quotation omitted) (emphasis in original).

## CONCLUSION

For the foregoing reasons, the Court should exclude any testimony from Plaintiff's Experts that conduct by the Altria Defendants caused an increase in sales of JUUL, access to JUUL, and/or use of JUUL by underaged users.  And it should independently exclude the testimony of certain experts for failing to qualify as an expert in the areas on which they seek to opine.

Dated:  August 15, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ John C. Massaro*
     John C. Massaro (*admitted pro hac vice*)
     Daphne O'Connor (*admitted pro hac vice*)
     Jason A. Ross (*admitted pro hac vice*)
     David E. Kouba (*admitted pro hac vice*)
     Angela R. Vicari (*admitted pro hac vice*)
     Lauren S. Wulfe (SBN 287592)

WILKINSON STEKLOFF LLP
Beth A. Wilkinson (*admitted pro hac vice*)
Brian L. Stekloff (*admitted pro hac vice*)
James M. Rosenthal (*admitted pro hac vice*)
Moira K. Penza (*admitted pro hac vice*)
Matthew R. Skanchy (*admitted pro hac vice*)

Attorneys for Defendants ALTRIA GROUP, INC., PHILIP MORRIS USA INC., ALTRIA CLIENT SERVICES LLC, AND ALTRIA GROUP DISTRIBUTION COMPANY

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, John C. Massaro, hereby certify that on the 15th day of August 2022, I electronically filed

3

the foregoing **ALTRIA DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS**

4

with the Clerk of the United States District Court for the Northern District of California using the

5

CM/ECF system, which shall send electronic notifications to all counsel of record.

6

7

By:   */s / John C. Massaro*_____

8

John C. Massaro (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP

9

601 Massachusetts Avenue NW
Washington, D.C. 20001

10

Telephone: 202-942-5000
Facsimile: 202-942-5999

11

John.Massaro@arnoldporter.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28