DAVID M. BERNICK (*pro hac vice*)
RENEE D. SMITH (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
david.bernick@kirkland.com
renee.smith@kirkland.com

PETER A. FARRELL, P.C. (*pro hac vice*)
JASON M. WILCOX, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
peter.farrell@kirkland.com
jason.wilcox@kirkland.com

*Attorneys for Defendant Juul Labs, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*San Francisco Unified School District v. Juul Labs, Inc., et al.* | Case No. 19-md-02913-WHO<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL PLAN AND BRIEF ON RELATED LEGAL ISSUES** |

# TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................3

    I.     THE COURT SHOULD REQUIRE THAT SFUSD SPECIFY WHETHER ITS DAMAGES EXPERT MR. DORN WILL TESTIFY ONLY IN PHASE 1 OR PHASE 3 OF THE TRIAL. ..................................................................................4

    II.    A REALISTIC TRIAL PLAN MUST GUIDE THE JURY TO BE SPECIFIC ABOUT THE SCOPE OF ANY PUBLIC NUISANCE. ...........................................7

    III.   THE UNCERTAINTY CREATED BY SFUSD'S TRIAL PLAN REQUIRES THAT SFUSD IMMEDIATELY PROVIDE A DETAILED, REALISTIC TRIAL PLAN. ..................................................................................9

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. City of Costa Mesa*,
    718 F.3d 800 (9th Cir. 2013) .................................................................................................. 3

*C.f. United States v. Pino-Noriega*,
    189 F.3d 1089 (9th Cir. 1999) ............................................................................................. 10

*In re EPD Inv. Co., LLC*,
    2020 WL 6937351 (Bankr. C.D. Cal. Oct. 29, 2020) .......................................................... 3, 5

*Gasoline Prods. Co. v. Champlin Refining Co.*,
    283 U.S. 494 (1931) ........................................................................................................... 2, 9

*Illumina, Inc v. Qiagen N.V.*,
    2016 WL 6962865 (N.D. Cal. Nov. 29, 2016) ................................................................. 9, 10

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    198 F. Supp. 3d 1089 (C.D. Cal. 2016) ................................................................................. 3

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1998) ................................................................................................. 9

*Los Angeles Police Protective League v. Gates*,
    995 F.2d 1449 (9th Cir. 1993) ............................................................................................... 3

*In re Nat'l Prescription Opiate Litig.*,
    2022 WL 3443614 (N.D. Ohio Aug. 17, 2022) ..................................................................... 9

*In re Nat'l Prescription Opiate Litig.*,
    No. 17-2804, 2019 WL 4621690 (N.D. Ohio Sept. 24, 2019) .............................................. 7

*People v. ConAgra Grocery Prods. Co.*,
    17 Cal. App. 5th 51 (2017) .................................................................................................... 4

*Planned Parenthood of S. Ariz. v. Neely*,
    130 F.3d 400 (9th Cir. 1997) ............................................................................................... 10

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016) ..................................................................................... 2, 5, 6, 9

# INTRODUCTION

With trial less than a month away, SFUSD's trial plan remains vague and unrealistic. There is broad agreement that the jury should hear and decide key liability questions in this case, including whether Defendants are liable for SFUSD's public nuisance, negligence, and RICO claims, and that the Court should decide abatement (if necessary) in a separate phase. *Id.* But bifurcating these closely intertwined issues requires careful planning to ensure the jury's findings on key issues such as whether a nuisance exists, the nature and scope of that nuisance, and the specific conduct that was a substantial factor in causing the alleged nuisance, are honored in any later abatement proceedings. SFUSD has no plan, and its "we'll figure it out later" approach virtually guarantees the upcoming trial will violate the Seventh Amendment's re-examination clause.

SFUSD's lack of a plan for the expert testimony of Michael Dorn illustrate all these problems. Mr. Dorn was retained to identify "sustainable prevention and intervention strategies" SFUSD can take to "prevent and address student use of e-cigarettes on school property." This is a classic abatement opinion, as is his opinion about the "remediation costs" necessary to implement those strategies. For the first time in its summary judgment opposition, however, SFUSD recharacterizes Mr. Dorn as a damages expert and his remediation costs as "future damages." *See* SFUSD MSJ Opp. (Dkt. 3447) at 102–103. Yet SFUSD will not disavow having Mr. Dorn present testimony about the same prevention and intervention strategies in the abatement phase; it cannot make that commitment because SFUSD's other abatement experts rely on Mr. Dorn's opinions to support their proposed plans. Indeed, in its summary judgment opposition, SFUSD argues that "[r]ecoverable damages can overlap with abatement costs." *Id.* at 105. This position invites a textbook re-examination clause violation. If the jury does not award SFUSD all of Mr. Dorn's proposed remediation costs, SFUSD will take another run at recovering those costs at the trial's later abatement phase.

Compounding this problem, SFUSD has not proposed any verdict form questions that will reveal whether the jury accepted Mr. Dorn's opinions and the amount of remediation costs it awarded. The Court and the parties will have to try to divine answers to those questions from a black-box jury verdict, and will have to guess after the fact whether disputes at the abatement phase

re-examine issues the jury already decided. The Seventh Amendment does not permit this guessing game. And basic principles governing bifurcation do not either: a bifurcated trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

The problems with how SFUSD approaches Mr. Dorn's testimony is emblematic of a larger problem with SFUSD's trial plan. An abatement remedy must be tailored to remediating a specific nuisance. When the parties litigate whether SFUSD's proposed abatement plans are appropriate, they will thus inevitably re-litigate the scope and contributing factors behind SFUSD's alleged nuisance unless the verdict in the Phase 1 trial precisely defines the nuisance and identifies the specific actions that contributed to that nuisance. SFUSD has no plan for putting on a trial that will accomplish that. Every expert who testifies in both Phase 1 and Phase 3 will address deeply intertwined issues. And SFUSD's abatement experts, such as Drs. Kelder, Cutler, and Drumwright, all look to the past to predict the nuisance that will exist in the future. This too requires re-examining what the jury already decided unless those opinions are constrained by a clear Phase 1 result. The Court cannot fix these problems after the Phase 1 trial, as SFUSD proposes. By then, the jury will have already returned its verdict and it will be too late.

Thus, Defendants request that the Court require SFUSD to take two steps to guard Defendants' Seventh Amendment rights. First, SFUSD must specify whether Mr. Dorn will testify only in the Phase 1 (the liability and compensatory damages) or Phase 3 (abatement) portions of the trial. He cannot testify in both phases. Second, the Court should order SFUSD to offer a concrete plan addressing how to ensure the jury's verdict meaningfully guides an appropriate abatement remedy. Both of these steps are necessary, so that if an abatement phase is necessary, the Court can best "follow the jury's implicit or explicit factual determinations" when determining appropriate relief for SFUSD's equitable claims. *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016).

## ARGUMENT

"The Seventh Amendment provides that 'no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828–29 (9th Cir. 2013) (quoting U.S. Const. amend. VII). "Thus, in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." *Id.* (quotations omitted); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1449, 1473 (9th Cir. 1993) (same). "[I]t would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact." *Los Angeles Police Protective League*, 995 F.2d at 1473; *see also Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1115 (C.D. Cal. 2016) ("[W]here there is substantial commonality between the factual questions presented by legal and equitable claims, a jury's finding of fact pertinent to the legal claim constrains the court's equitable determination." (quotations omitted)). Importantly, the Seventh Amendment requires that even implied findings must be followed: "rather than being limited to the face of the verdict, the jury's findings include any factual findings that the verdict's contents necessarily imply." *In re EPD Inv. Co., LLC*, 2020 WL 6937351, at *3 (Bankr. C.D. Cal. Oct. 29, 2020).

SFUSD's trial plan does not adequately guard against the risk of re-examination because (i) there is overlap between its proposed remedial damages and abatement relief, and because (ii) the trial plan does not offer any concrete steps to ensure the Phase I verdict is sufficient to guide the Court's determination of an appropriate abatement remedy. SFUSD plans to attack every aspect of JLI's business at trial—from its marketing campaigns that varied widely over time, to its nicotine formulation, to the size and shape of its devices—without any plan for determining what conduct (if any) the jury decides contributed to a nuisance. It further asserts a sprawling nuisance that spanned several years and extends from SFUSD's schools to beyond SFUSD's attendance boundaries. Yet it again has no proposal for how to decipher the geographic and temporal scope of any nuisance found by the jury or even how to determine what the jury finds the precise nuisance is. And SFUSD has no idea how to structure the phase three abatement proceeding so it does not

re-examine any of the jury's explicit or implicit findings, admitting that it will figure it out later. But identifying a workable trial plan cannot wait any longer. The time to make a plan is now.

## I. THE COURT SHOULD REQUIRE THAT SFUSD SPECIFY WHETHER ITS DAMAGES EXPERT MR. DORN WILL TESTIFY ONLY IN PHASE 1 OR PHASE 3 OF THE TRIAL.

SFUSD's requested damages and abatement remedies overlap and so create Seventh Amendment risks. These risks are apparent from SFUSD's own contradictory descriptions of its requested remedies—which have shifted even from a few weeks ago. Thus, in its Trial Plan Brief, SFUSD argues that "compensatory damages are just that: compensatory," and that their "proper measure is that which will make good or replace the loss caused by the injury." Dkt. 3534 at 3. Relying on *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51 (2017), the district expressly contrasts abatement and damages: "the distinction between an abatement order and a damages award is stark." *Id.* at 4; *see also ConAgra*, 17 Cal. App.5th at 132–33 ("An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm. Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the defendant's wrongful conduct.").

The district took the exact opposite position only recently. In opposing Defendants' motions for summary judgment and *Daubert* filings, it argued that "there [i]s nothing inherently erroneous about the award of remediation costs as future damages." *See* SFUSD MSJ Opp. at 102–103. Thus three weeks ago, the district believed that the differences between abatement and damages were not "stark" at all; rather, it argued that "[r]ecoverable damages can overlap with abatement costs." *Id.* at 105; *see also* SFUSD Daubert Opp. (Dkt. 3458) at 33 n.19 ("[E]verything addressed by [several of its] experts potentially goes to the abatement remedy," even though "elements of these experts' opinions go to compensatory damages as well."). This is particularly true as the key expert SFUSD now intends to offer to support its only-recently-discovered future damages claim, Mr. Dorn, bases his damages estimates on what he believes it will cost to remediate future harms. SFUSD retained Dorn to "[i]dentify and evaluate necessary, practical, and sustainable prevention and intervention strategies that can be developed and customized to fit the local conditions to enable SFUSD to

-4- Case No. 3:19-md-02913
Defendants' Response To Plaintiff's Trial Plan And Brief On Related Legal Issues

effectively prevent and address student use of e-cigarettes on school property." 1/28/2022 Dorn Rep. at 8. Dorn offers the opinion that $78.8 million worth of "enhancements" to SFUSD's property can "create a practical and sustainable comprehensive approach which will make it unlikely that a student could regularly and repeatedly use e-cigarettes on SFUSD school campuses." *Id.* at 92, 97.

There is no discernible difference between this "remediation" of future harms—which the jury will consider in Phase 1—and the "abatement" of those same harms that the Court will consider in Phase 3. Indeed, Dr. Jonathan Winickoff's abatement plan—which SFUSD purports to rely on at Phase 3—relies on the "reports of Michael Dorn and Robert Rollo for specific recommendations" associated with abatement via e-cigarette monitoring, detection, and deterrence. *See* 1/28/2022 Winickoff Rep. at 75.[1] That creates a Seventh Amendment problem: if Dorn is permitted to testify in both Phase 1 and Phase 3, there is a risk that his recommendations will become part of an abatement plan, even if the jury rejects those same theories in Phase 1.

The Seventh Amendment problem is obvious. If the jury holds Defendants liable on SFUSD's claims, it will then have to decide "[w]hat amount of compensatory damages have been proven." Dkt. 3534 at 2. If the jury decides not to award the amounts recommended by Mr. Dorn, then it will have made an implicit finding that that amount is not needed to remediate future harms— and thus that these same amounts are not needed as part of any abatement remedy. *See, e.g.*, *In re EPD Investment Co., LLC*, 2020 WL 6937351, at *19 (examining implicit findings); *Teutscher*, 835 F.3d at 947 (reversing the district court's equitable determination, where the court "contravened the findings of fact implicit in the jury's damages verdict").

In *Teutscher*, for example, the Ninth Circuit considered whether the jury's decision ***not*** to award a particular kind of damages ("front pay") on a state-law claim "foreclosed the district court from granting front pay on [the plaintiff's] ERISA claim." 835 F.3d at 947. The Ninth Circuit

---

[1] The other expert opinions SFUSD is likely to rely on at Phase 1 faces the same issue. Those experts, like Dorn, opine about interventions designed to detect and identify student vaping and intervene in order to reduce the future level of student vaping. *See, e.g.*, 1/28/2022 Halpern-Felsher Rep. at 188 (detailing need for measures to "[m]itigate and [r]educe [y]outh [u]se"); 1/28/2022 Rollo Rep. at 1 (basing report on Dorn's "mitigation strategies"). Put differently, they propose abatement remedies and detail the associated costs.

"agreed" that the remedy was foreclosed by the Seventh Amendment. *Id.* The problem was that front pay as to either claim "turn[ed] on the same issues of fact," even though one claim was legal and the other equitable. *Id.* at 948. So too here: whether the jury believes future "remediation" costs are necessary to make SFUSD whole will inevitably guide whatever "abatement" could also be awarded. This means that if Dorn testifies in both Phase 1 (liability and compensatory damages) and Phase 3 (abatement), then SFUSD will improperly invite the Court to re-examine the jury's earlier factual findings, compromising Defendants' Seventh Amendment rights and risking significant prejudice.

To avoid this problem, SFUSD needs to immediately specify when Mr. Dorn will appear at trial. And it must do so before the court hears argument on the pending summary judgment motions—arguments that the briefing shows will turn, in part, on whether Mr. Dorn is offering a damages opinion or an abatement opinion. If SFUSD chooses to forego seeking future "remedial" damages on its legal claims, then SFUSD could avoid re-examination by specifying that Dorn will testify only in Phase 3 (abatement). Alternatively, if SFUSD continues to seek those future remedial damages, then the court should make clear that Mr. Dorn will testify only in Phase 1 of the trial, recognizing that the jury's determination of whether to grant the remedial damages will guide the scope of any abatement award (and that that award may be limited by available legal relief, *see* JLI MSJ Reply (Dkt. 3520) at 12–14). What the Court should not do, however, is leave it up to SFUSD when to present Mr. Dorn's testimony, or permit the testimony in both phases of trial, allowing SFUSD to re-litigate the jury's determinations regarding what forward-looking remediation is necessary to make it whole.[2] That approach poses significant practical and constitutional problems and so is not permissible here. *See*, *e.g.*, *Teutscher*, 835 F.3d at 947.

---

[2] There is, in truth, only one viable option for when Mr. Dorn should testify. As Defendants explain in their forthcoming motions in limine, Mr. Dorn characterized his opinions as abatement opinions and he should not be permitted to offer those opinions in Phase 1.

## II. A REALISTIC TRIAL PLAN MUST GUIDE THE JURY TO BE SPECIFIC ABOUT THE SCOPE OF ANY PUBLIC NUISANCE.

Similar concerns also require that the jury be specific about the scope of any nuisance it finds. It is appropriate for the jury to determine whether Defendants are liable in nuisance: "a jury as of right will determine plaintiff's still-viable legal claims, and there exist[s] potential factual overlap between the plaintiffs' legal RICO and state analogue claims and defendants' liability for nuisance." Dkt. 3534 at 6 (citing *In re Nat'l Prescription Opiate Litig.*, No. 17-2804, 2019 WL 4621690, at *2 (N.D. Ohio Sept. 24, 2019)). As SFUSD says, "entrusting the liability decision to the jury [i]s the safer course." *Id.*

Yet SFUSD's trial plan does not make clear *what* nuisance the jury will be finding (or not finding). SFUSD appears to conceive of nuisance liability as a binary choice—*e.g.*, was there a nuisance, yes or no. If the jury answers yes, then SFUSD would present separate evidence in an abatement phase, which it admits will be "community-based" in scope. *Id.* at 4. Its abatement experts, Kelder and Winickoff, then make their own characterizations of the supposed nuisance: Kelder argues that ENDS usage in SFUSD schools rose for a several-year period, and implicitly supposes that this trend will continue without intervention: "SFUSD . . . needs more resources, staff time, and a more comprehensive abatement plan." Kelder Rep. at 14–16, 28. Winickoff likewise extrapolates from past trends and contends that there is a "need to take aggressive and comprehensive steps to abate the problem." Winickoff Rep. at 44. Neither of these experts contends with the reality that youth ENDs usage has "sharply declined" nationally, as reflected in national 2021 data.[3] The experts then propose broad "state and community interventions," including

---

[3] The 2021 National Youth Tobacco Survey reported that only 11.3% of high school students reported having used an e-cigarette in the past 30 days—a level significantly lower than that existing before JUUL ever even launched. *See* Matt Richtel, "Youth Vaping Declined Sharply for Second Year, New Data Shows," *The New York Times* (October 12, 2021), available at https://www.nytimes.com/2021/09/30/health/youth-vaping-decline.html#:~:text=This%20year%2C%2011.3%20percent%20of,for%20Disease%20Control%20and%20Prevention. (last visited September 27, 2021).

SFUSD has also recently received additional local data for the 2021-22 school year. But SFUSD has refused to produce that data to Defendants, claiming that it contains unspecified errors that it is working with the survey administrator to correct. Defendants continue their efforts to obtain this critical data (and SFUSD's communications with the survey administrator regarding the purported

individualized medicinal "treatment for those [in the community] who are using tobacco products," hands-on "clinical education and training" for health-care workers in San Francisco County, and a new system of electronic-record-sharing for primary care physicians in San Francisco. JLI MSJ Ex. 4, 2/1/22 Kelder Rep. 82; JLI MSJ Ex. 5, 1/28/22 Winickoff Rep. 47–82.

But there is no guarantee, at least under SFUSD's present trial plan, that the nuisance the jury finds would actually be community-wide. The scope of any nuisance in SFUSD is hotly contested. SFUSD's evidence focuses in part on only very specific schools—*e.g.*, a broken door in Balboa High School, *see* SFUSD MSJ Opp. at 46, 82, or an "incident involving student vaping" at Presidio Middle School, *id.* But other schools did not have vaping problems. The principal at Marina Middle School acknowledged "that she does not have a vaping problem period," and "had [only] one incident . . . in [the] seven years she ha[d] been" at that school. *See* JLI MSJ Ex. 17, 6/4/2021 Marina Middle School Vaping Mitigation & Prevention Rep., at 14 (statement of Ginny Daws). A former assistant principal and principal at SFUSD's Lowell High School testified that she had never caught students using e-cigarettes on campus. JLI MSJ Ex. 18, 9/21/21 Swett Dep. 68:20–22. And the conduct that purportedly created any nuisance, the types of harms the nuisance is causing, and whether that nuisance extends throughout SFUSD—and whether it extends to all of San Francisco County, as SFUSD's experts contend—is all contested as well.[4]

SFUSD's trial plan glosses over these significant issues and so invites an "abatement" phase that would be disconnected from, or that would relitigate, whatever nuisance the jury finds in Phase 1. The trial plan risks, for example, that the jury will find Defendants liable for a "nuisance" because of problems the jury may believe exists in only certain places—not necessarily everywhere. But

---

errors) as soon as possible. Defendants intend to seek the Court's intervention if this issue cannot be resolved.

[4] As discussed in Defendants' motions for summary judgment, SFUSD has not actually presented evidence to support past damages for the harms it purports to identify in its complaint. *See, e.g.*, Dkt. No. 3396 at 20–23. The Court should simply enter judgment against SFUSD's claims and moot the need for a detailed trial plan, but regardless, SFUSD's contentions regarding the scope of the nuisance are at a minimum opposed by numerous facts that, if the claims go to trial, the jury will consider in the liability phase of the trial.

SFUSD cannot premise county-wide relief on a nuisance that the jury may have believed involved only a single school or a specific neighborhood. That would tread on the jury's verdict and would also violate basic principles governing bifurcated trials. Bifurcated proceedings are appropriate only where "the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods.*, 283 U.S. at 500. That means the phases of the trial cannot involve re-litigating the scope of the nuisance. Instead, the Phase 1 liability proceedings must make clear *what* exactly (if anything) Defendants are liable for, including the breadth of the nuisance, what types of harms it is causing, and the specific conduct by Defendants that was a significant factor in bringing about those harms. Otherwise, the verdict will not "establish[] . . . material facts," *id.*, and there will be intertwined issues that will be inevitably be-litigated in Phase 3—if Phase 3 is ultimately necessary. The parties should not proceed to abatement without having actually determined what they ought to be abating.

SFUSD needs to offer a plan to avoid this problem. Regardless of what the specific solution entails, the point is the same: Plaintiffs should not be permitted to assume that merely finding a nuisance—of any size or scope—is enough to automatically debate what abatement is appropriate for all of San Francisco County or to assume that all the conduct SFUSD attacks at trial must have contributed to any nuisance found by the jury. Indeed, if the Court is going to "follow the jury's implicit or explicit factual determinations" as to liability when deciding whether to award abatement, then the Court should be fully informed and armed with the specifics of what exactly that liability determination might be. *Teutscher*, 835 F.3d at 944.[5]

### III. THE UNCERTAINTY CREATED BY SFUSD'S TRIAL PLAN REQUIRES THAT SFUSD IMMEDIATELY PROVIDE A DETAILED, REALISTIC TRIAL PLAN.

"District courts have broad discretion in allowing supplemental pleadings." *Illumina, Inc v. Qiagen N.V.*, 2016 WL 6962865, at *1 (N.D. Cal. Nov. 29, 2016) (quoting *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1998)). This Court should exercise that broad authority here. Defendants asked that SFUSD provide its trial plan in writing, *see* Dkt. 3534 at 1, in part because understanding the

---

[5] In the opioids cases, for example, the jury's findings were specific: the jury specifically determined whether there was a nuisance in the relevant "Lake and Trumbull Counties," not just anywhere in Ohio. *In re Nat'l Prescription Opiate Litig.*, 2022 WL 3443614, at *12–13 (N.D. Ohio Aug. 17, 2022).

specifics of the plan is important to understanding whether there are Seventh Amendment concerns caused by the specific ordering of Plaintiff's experts and the specific nuisance that Plaintiff is asking the jury to find. SFUSD did not do so until now. And as discussed above, that plan (because it is so vague) in fact creates significant Seventh Amendment and prejudice concerns.

Those concerns by their very nature must be addressed before trial—once Mr. Dorn testifies, or once the jury returns its verdict, there will be no way to undo those events on the back end. *C.f. United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999) (noting that "once a jury has reached a verdict . . . that's too big a bell to unring"). SFUSD should therefore be required to provide a far more detailed trial plan that specifically addresses how SFUSD will present its case without violating the Seventh Amendment. Doing so "would serve the purpose of judicial efficiency and enable the parties to [better] resolve the whole controversy." *Quiagen*, 2016 WL 6962865, at *2 (citing *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997)).

**CONCLUSION**

For the foregoing reasons, the Court should reject SFUSD's proposed trial plan and require the district to immediately provide a new plan that address, in detail, how SFUSD plans to try its case without running afoul of the Seventh Amendment and its clear command that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States."

| | |
|---|---|
| Dated: October 3, 2022 | Respectfully submitted,<br><br>By: */s/ Renee D. Smith*<br>David M. Bernick (*pro hac vice*)<br>Renee D. Smith (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>300 N. LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-2310<br>david.bernick@kirkland.com<br>renee.smith@kirkland.com<br><br>Peter A. Farrell (*pro hac vice*)<br>Jason M. Wilcox (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave, N.W.<br>Washington D.C. 2004<br>Telephone: (202) 389-5959<br>peter.farrell@kirkland.com<br>jason.wilcox@kirkland.com<br><br>*Attorneys for Defendant Juul Labs, Inc.*<br><br><br>Mark C. Hansen (admitted *pro hac vice*)<br>Michael J. Guzman (admitted *pro hac vice*)<br>David L. Schwarz (CA Bar No. 206257)<br>KELLOGG, HANSEN, TODD, FIGEL &<br>FREDERICK, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>TEL: (202) 326-7900<br>mhansen@kellogghansen.com<br>mguzman@kellogghansen.com<br>dschwarz@kellogghansen.com<br><br>*Attorneys for Defendants Huh, Pritzker, and Valani*<br><br><br>BOERSCH & ILLOVSKY LLP<br>Martha Boersch (State Bar No. 126569)<br>martha@boersch-illovsky.com<br>Eugene Illovsky (State Bar No. 117892)<br>eugene@boersch-illovsky.com<br>Matthew Dirkes (State Bar No. 255215) |

matt@boersch-illovsky.com
Kevin Calia (State Bar No. 227406)
kevin@boersch-illovsky.com
Sharon Frase (State Bar No. 282923)
sharon@boersch-illovsky.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendant Adam Bowen*

JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759
KEVIN M. ASKEW (SBN 238866)
kaskew@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499
LAUREN B. SEATON (SBN 294453)
lseaton@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: +1 949 567 6700
Facsimile: +1 949 567 6710

*Attorneys for Defendant James Monsees*

Lauren S. Wulfe (SBN 287592)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, CA 90017
Telephone: 213-243-4000
Facsimile: 213-243-4199
Lauren.Wulfe@arnoldporter.com

Paul W. Rodney (*pro hac vice*)

ARNOLD & PORTER KAYE SCHOLER LLP
1144 15th Street, Suite 3100
Denver, CO 80202
Telephone: 303-863-1000
Facsimile: 303-832-2301
Paul.Rodney@arnoldporter.com

John C. Massaro (*pro hac vice*)
Daphne O'Connor (*pro hac vice*)
Jason A. Ross (*pro hac vice*)
David E. Kouba (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999
John.Massaro@arnoldporter.com
Daphne.OConnor@arnoldporter.com
Jason.Ross@arnoldporter.com
David.Kouba@arnoldporter.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, NY 10036
Telephone: 212-294-8910
mpenza@wilkinsonstekloff.com

Angela R. Vicari (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-836-8000
Facsimile: 212-836-8689
Angela.Vicari@arnoldporter.com

Beth A. Wilkinson (*pro hac vice*)
Brian L. Stekloff (*pro hac vice*)
James M. Rosenthal (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Group Distribution Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also caused a copy of the under-seal documents to be served via electronic mail on all parties.

By: */s/ Renee D. Smith*

Renee D. Smith