David M. Bernick (*pro hac vice*)
david.bernick@kirkland.com
Renee D. Smith (*pro hac vice*)
renee.smith@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000

Peter A. Farrell, P.C. (*pro hac vice*)
peter.farrell@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000

Gregory P. Stone (SBN 78329)
gregory.stone@mto.com
Bethany W. Kristovich (SBN 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Ave, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

*Attorneys for Defendant Juul Labs, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>Relates to:<br><br>*San Francisco Unified School District v. Juul Labs, Inc. et al.,* Case No. 3:19-cv-08177 | Case No. 19-md-02913-WHO<br><br>**DEFENDANT JUUL LABS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S ELECTRONIC SURVEILLANCE AND SCHOOL INFRASTRUCTURE ABATEMENT EXPERTS**<br><br>Judge:   Hon. William H. Orrick |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I. DORN'S INFRASTRUCTURE OPINIONS ARE SPECULATIVE AND UNRELIABLE. ............................................................................................................. 2

    A. Dorn's Surveillance Recommendations Remain Purely Speculative. .............. 2

    B. Dorn's Opinions Fail The Reliability Factors Of *Daubert*. ................................ 5

    C. Dorn's Proposals Are Contingent on the Discretion of Stakeholders who Are Not Before the Court. ....................................................................................... 8

    D. Dorn's *Ad Hoc* View that JLI Is Responsible for Youth THC Use Should Be Excluded. ........................................................................................................... 10

II. ROLLO FAILED TO EMPLOY RELIABLE PRINCIPLES AND METHODS. ...................... 11

    A. Rollo Failed to Independently Verify the Facts Provided to Him by Dorn and SFUSD. ............................................................................................................. 12

    B. Rollo Erroneously Applies a City Cost Index to Materials that Are Not Manufactured in San Francisco. ....................................................................... 13

CONCLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

Page(s)

*Clapper v. Amnesty Int'l. USA*,
  568 U.S. 398 (2013) ................................................................................................................8

*In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*,
  15-cv-0112, 2020 WL 1932934 (D. Alaska April 21, 2020) ..................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ *passim*

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ....................................................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................8

*Lust v. Merrell Dow Pharmaceuticals, Inc.*,
  89 F. 3d 594 (9th Cir. 1996) ....................................................................................................7

*Novalk, LLC v. Kinsale Insurance Co.*,
  No. 3:21-cv-01014, 2021 WL 413474 (S.D. Cal. Sept. 10, 2021) ...........................................5

*San Francisco Baykeeper v. City of Sunnyvale*,
  No. 5:20-CV-00824-EJD, 2022 WL 4133299 (N.D. Cal. Sept. 12, 2022) .............................11

*Snyder v. Bank of America, N.A.*,
  2020 WL 6462400 (N.D. Cal. 2020) .....................................................................................11

**Other Authorities**

Fed. R. Evid. 26 ............................................................................................................................10

Fed. R. Evid. 30(b)(6) .....................................................................................................................9

Fed. R. Evid. 702 ................................................................................................................. *passim*

Fed. R. Evid. 702(c) .....................................................................................................................12

Fed. R. Evid. 702(d) .....................................................................................................................12

# INTRODUCTION

SFUSD's Opposition confirms that the testimony of SFUSD's experts Michael Dorn and Robert Rollo is speculative and unreliable. SFUSD tries but fails to overcome the fact that Dorn admitted no school or school district has *ever* implemented his surveillance measures, they have never been tested, and they have not been shown to have any measurable effect in reducing e-cigarette use among students. Ex. 1, 8/24/2022 Dorn Dep. 114:25–115:6; 186:17–23; 187:10-19; 187:24–188:9. Nor are there any national standards by which to judge his proposals. *Id.* at 50:2-5. He has not identified any peer-reviewed research supporting his proposals, and he has not published any. *Id.* at 64:3-12. There is nothing in the record to support a known or potential error rate for Dorn's proposals, nor to support even the possibility that his proposals have obtained widespread acceptance in any scientific or professional community. And the written policies of the SFUSD school board and the testimony of SFUSD's own personnel make clear that Dorn's proposals are contingent upon the approval of the school board and of the voters. Neither the school board nor the voters of SFUSD are currently before this Court.

Dorn's opinions are therefore quintessentially the type of speculative and unreliable testimony that *Daubert* and Rule 702 were intended to safeguard against. Tellingly, SFUSD fails to analyze—or even mention—*any* of the *Daubert* reliability factors in the Opposition, nor does it even cite *Daubert* in discussing reliability. Opp. at 6-8. This silence speaks volumes. Rule 702 and *Daubert* are meant to prevent expert witnesses from presenting "subjective belief or unsupported speculation" to the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). And although SFUSD insists that that Dorn has "high confidence" that his proposals would work and that advising schools to implement these proposals has become a "part of his standard assessment," Opp. at 6, the question for Rule 702 and *Daubert* is not whether the expert thinks, believes, or has "high confidence" that his opinions are sound, or how often he offers them to commercial clients, but whether those opinions have been shown, through testing, to be meaningfully effective.

Rollo's testimony stands up no better under close examination. Because Rollo defers to Dorn's opinions in every particular regarding "specific recommendations for any individual schools," (Ex. 4, 8/18/2022 Rollo Corrected Rep. at 1), the exclusion of Dorn necessarily means the exclusion of Rollo.

But even on its own merits, Rollo's report is rife with methodological errors. Rollo never made any effort to verify the information he was provided by Dorn and SFUSD. And Rollo inflated his total cost estimate by $25 million at the last minute, even though he could not identify a coherent reason for doing so at his deposition. The undisputed factual record in this case makes clear that neither Dorn nor Rollo can satisfy the requirements of Rule 702 and *Daubert*. Their testimony should therefore be excluded.

## ARGUMENT

Dorn's testimony should be excluded because his testimony is speculative, cannot meet the reliability requirements set forth in *Daubert*, and proposes remedies that are contingent and depend upon the independent discretion of parties not before the court. Rollo's testimony should be excluded because it is entirely dependent on Dorn's testimony, and because Rollo fails to independently verify the information provided to him and exaggerates the cost of implementing Dorn's plan. Each of these issues is addressed below.

### I. DORN'S INFRASTRUCTURE OPINIONS ARE SPECULATIVE AND UNRELIABLE.

In spite of Dorn's self-serving expressions of "high confidence" in the effectiveness of his proposals, Dorn cannot escape the fact that his proposals have never been implemented anywhere and have never been tested to prove their effectiveness. SFUSD cannot escape this fact merely by showing that some school districts use cameras and others use vape detectors and still others have thought about using both. Nor can SFUSD show that Dorn's testimony satisfies the reliability requirements of *Daubert* without even referencing any of those criteria. SFUSD cannot change the fact that the $85 million in relief it seeks is entirely contingent upon the discretion of third-party stakeholders who are not currently before the Court. Each of these is an independent basis for excluding Dorn's testimony.

#### A. Dorn's Surveillance Recommendations Remain Purely Speculative.

Dorn should not be permitted to present his proposals to the trier of fact because they are purely speculative. Dorn has admitted that no school or school district has implemented the strategies he recommends in his report, no subset of any of the five technologies he recommends has been tested in the field, and he was unable to identify any measurable effect on youth e-cigarette use resulting from their implementation. Ex. 1, 8/24/2022 Dorn Dep. 114:25-115:6; 186:17–23; 187:10-19; 187:24–188:9. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) ("Rule 702 demands that expert

2

testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs.").

Faced with Dorn's disqualifying admissions, SFUSD argues that JLI has mischaracterized "Dorn's report and testimony." Opp. at 5. This is false. JLI has accurately cited Dorn's testimony and that testimony speaks for itself. To begin with, Dorn explicitly admitted that no school has ever implemented his proposals:

> Q. Okay. Can you identify any school district or school in the country which has implemented the array of technology-based recommendations that you make here in order to address e-cigarette use among its students?
>
> A. *No, sir, I cannot.* I have never known a district that had the fiscal resources to do what needs to be done to address the problems with JUUL and other e-cigarettes.
>
> Q. . . . Can you identify a school or a district that has implemented the array of technology-based measures you recommend here, in order to address e-cigarette smoking among students?
>
> A. *As I stated, no, sir.* I think the reason is important, but no, sir.

Ex. 1, 8/24/2022 Dorn Dep. 114:11-20; 114:25-115:6 (objection omitted). If Dorn's proposals have never been implemented, Dorn cannot possibly predict what effect they would have on youth vaping.

Equally clear was Dorn's testimony that his proposals have never been tested and, indeed, that the testing of his proposals "would not be feasible":

> Q. Okay. Have you taken this program of recommendations for preventing and controlling e-cigarette use in schools and tested in the field at any particular school?
>
> A. No, sir. That wouldn't be feasible.
>
> * * *
>
> Q. All right. So my question is: Have they been implemented in any school to test their effectiveness?
>
> A. Not in the way that we recommend it because they are not—I understand what you're saying, but it just would not be feasible.

*Id.* 184:3-7; 184:13-18.

Dorn and SFUSD try to sweep these admissions aside with the claim that Dorn has "high confidence" his surveillance measures will work. *Id.* 186:17-187:7. Likewise, Dorn insists that although his proposals are untested, he has some "feedback" on them individually. *Id.* 187:17-188:12. But if Dorn's proposals have never been tested, then Dorn has no basis (much less a reliable basis) for his "high

3

confidence"; this is merely his unsupported say-so. Unidentified "feedback" from unnamed sources does not satisfy the requirements of Rule 702 and *Daubert*.

Dorn's phantom feedback on "each" of his strategies is also meaningless because Dorn himself insists that no one strategy by itself will "move the needle." *Id.* 188:7-9. Dorn's ultimate opinion is that *only* his "comprehensive," five-pronged surveillance strategy will work (*id.* 188:13-15) and that all five recommendations together are "necessary to significantly reduce or eliminate the problem of student e-cigarette use in [SFUSD]." Ex. 2, 8/19/2022 Dorn Corrected Rep. at 1. But this is just a guess: no school or school district has ever implemented these proposals (Ex. 1, 8/24/2022 Dorn Dep. 114:25-115:6 objection omitted), so Dorn has no way of knowing whether his proposals will have any impact whatsoever on youth e-cigarette usage or whether they would simply be a massive waste of time and resources.

In the absence of any evidence that Dorn's five-pronged surveillance plan will reduce student e-cigarette usage, SFUSD offers a collection of red herrings. For example, SFUSD claims that schools have "increasingly" raised concerns about vaping to Dorn and that e-cigarette prevention has become part of Dorn's "standard assessment" for schools. Opp. at 6 (citing Ex. 1, 8/24/2022 Dorn Dep. 35:2-20; 63:10-17). The question for Rule 702 and *Daubert* is not whether Dorn often makes recommendations about e-cigarette prevention, but whether there is any reliable evidence that the proposals he offers in this case would work. There is no such evidence.

SFUSD cites data from the National Center for Education Statistics and a new declaration from Dorn himself for the proposition that many schools already use security cameras and that manufacturers of vape detectors report that many schools around the world use their products. Opp. at 5-6 (citing Dorn Decl., ECF 3549-7 ¶¶ 3-4). But Dorn is not merely proposing to install security cameras or vape detectors in the abstract. Dorn is instead claiming that in order for SFUSD to "significantly reduce or eliminate the problem of student e-cigarette use," it must implement all five of his proposals simultaneously. Ex. 2, 8/19/2022 Dorn Corrected Rep. at 1. Those proposals include a specific number of interior and external cameras, integrated with a specific number of vape detectors, and linked with an elaborate electronic access control system, and e-hall passes. The fact that some schools use security cameras or vape detectors

generally has no bearing on whether the specific measures Dorn proposes will result in reduced youth e-cigarette usage.

Dorn admitted these five strategies have never been tested together and he has insisted that his five proposals would not work in isolation. Dorn's opinion that his novel proposals in this case would significantly reduce student vaping is purely speculative.

### B. Dorn's Opinions Fail The Reliability Factors Of *Daubert.*

SFUSD insists that Dorn's opinions satisfy the reliability factors of *Daubert.* Opp. at 6. But it not only fails to conduct any analysis of these factors—it fails to so much as name them. Indeed, in its entire discussion of the *Daubert* reliability factors, SFUSD never bothers to cite *Daubert* even once. *Id.* at 6-8. SFUSD's failure to address the governing standard is a sufficient basis to grant JLI's motion.[1] As JLI's opening brief showed, Dorn does not satisfy any of the *Daubert* reliability factors:

*General acceptance.* Dorn's proposals cannot possibly meet the requirements of general acceptance because no one has ever implemented, tested, or conceived of Dorn's plan before. Ex. 1, 8/24/2022 Dorn Dep. 114:11-20; 114:25-115:6. Indeed, Dorn testified that he has never been retained by any school or district to "provide expertise or consulting on using technology to prevent or control e-cigarette use among students." *Id.* 63:22-64:3. SFUSD insists that "the touchstone of any *Daubert* inquiry is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Opp. at 10 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). But Dorn has never offered the opinions he offers in this case in *any* context. He should not be permitted to do so here.

*Peer review.* Dorn admits that he has never published "any peer-reviewed research or data regarding e-cigarette prevention or control among students in schools." Ex. 1, 8/24/2022 Dorn Dep. 64:8-12. Although Dorn claims to have "authored and co-authored hundreds of blogs, feature articles, journal articles and columns for publications," Dorn lists only one peer-reviewed publication on his

---

[1] *Novalk, LLC v. Kinsale Insurance Co.*, No. 3:21-cv-01014, 2021 WL 4134741, at *2 (S.D. Cal. Sept. 10, 2021) ("[W]here the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

5

resume—an article about terrorism, not vaping. Ex. 2, 8/19/2022 Dorn Corrected Rep. at 1. Dorn does not list a single article about vaping or vaping prevention on his resume, because he has none.

*Known or potential error rate.* Because Dorn's proposals have never been implemented and have never been tested, Dorn cannot possibly identify a known error rate. When asked to explain his assertion that his proposals "will, in my experience, more likely than not significantly and effectively deter student e-cigarette use," Ex. 2, 8/19/2022 Dorn Rep. 11, Dorn offered the *non sequitur* that his opinion was "quantified" but "not mathematically." Ex. 1, 8/24/2022 Dorn Dep. 213:16-17. Instead, Dorn fell back on his personal beliefs and say-so, rather than any objective, verifiable, or repeatable measurement. Dorn's insistent that his plan is "more likely than not significantly and effectively deter e-cigarette use" is a purely subjective judgment and a product of Dorn's imagination, rather than the product of any actual measurement or an objective industry or scientific standard. Dorn may personally believe that his entire plan is more likely than not to "significantly and effectively deter student e-cigarette use," but cannot say how "likely" it is to have any effect or how significant that effect may be because his opinion is not actually based on any measurement. As a result, no other professional could check Dorn's work and confirm whether the likely result of implementing his plan. There could hardly be a clearer example of an expert inventing a standard by which only he can assess the accuracy of his own opinions. Such unscientific say-so, devoid of any legitimate foundation, is the epitome of expert testimony that must be excluded under *Daubert*.

In addition, Dorn's inability to quantify the effect of his surveillance proposals and his insistence that all five of his technology proposals must be implemented together to be effective cannot be squared with his claim at his deposition that the goal of his proposals is to reduce current youth vaping rates specifically to their 2015 levels. Ex. 1, 8/24/2022 Dorn Dep. 200:24-203:2. This is especially true since, based on the same survey data cited by Dorn, current youth vaping rates are presently *less* than they were in 2015, without any school in the country ever implementing his plan. *Id.* 201:15-203:2; Ex. 2, 8/19/2022 Dorn Corrected Rep. 18.

Confronted with this lack of a known error rate and Dorn's inability to support his claim that his proposals are necessary to reduce youth vaping with any reliable methodology, SFUSD insists that it knows how effective Dorn's youth vaping prevention proposals would be because of Dorn's experience

as the police chief of the Bibb County School District in Georgia. Opp. at 10-11. During his tenure there, Dorn and SFUSD claim that Dorn saw a "90% reduction in student violations." *Id.* at 11. Dorn testified that SFUSD would see similar reductions in student vaping if it spends $85 million implementing his proposals. Opp. at 11. This comparison is absurd and based on no reliable measure whatsoever. Dorn was appointed police chief of the Bibb County School District in August 1989, roughly a quarter century before vaping products (let alone JUUL products) went on the market. Ex. 2, 8/19/2022 Dorn Corrected Rep. at 127. Even if student vaping had existed in 1989, the technologies Dorn proposes—electronic access control systems, e-hall passes, digital video monitoring systems—likely did not. Whatever experience Dorn claims to have had as police chief in Bibb County in 1989 has no bearing on Dorn's proposal to spend $85 million on surveillance technology to address vaping in SFUSD today.[2]

*Testing and falsification.* As discussed above, Dorn's proposals cannot possibly satisfy the testing and falsification prong of *Daubert*, because no school or school district has implemented the strategies he recommends and they have never been tested. Ex. 1, 8/24/2022 Dorn Dep. 114:25-115:6; 186:17-23; 187:10-19; 187:24-188:9. Indeed, Dorn insists that his proposals cannot be tested. *Id.* 184:3-7; 184:13-18. But, as JLI observed in its Motion (at 7), nothing prevents Dorn, Safe Havens, or SFUSD from conducting a pilot program to determine whether or not Dorn's proposals are actually effective, especially where Dorn claims he is increasingly making recommendations to schools about e-cigarette prevention. Ex. 1, 8/24/2022 Dorn Dep. 63:10-17. SFUSD faults JLI for failing to "explain how it would be feasible for SFUSD to run . . . a pilot program" to test the effectiveness of Dorn's proposals. Opp. at 9. But it is SFUSD, and not JLI, who bears the burden of showing that the testimony of its expert is admissible. *Lust v. Merrell Dow Pharm., Inc.*, 89 F. 3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility."). If Dorn's proposals have never been tested—and indeed, cannot be tested—then Dorn's testimony cannot meet the requirements of Rule 702 and *Daubert*.

---

[2] SFUSD cites the testimony of Bruce Harter, a former school superintendent retained as a consultant by JLI, for the proposition Harter had concerns about Juul use by teens and wanted to see a dramatic reduction in youth vaping. Mot. at 1, 9-10. But Harter is not an expert in this case and would not be able to offer opinion testimony if he wanted to. Harter's testimony is not subject to the requirements of Rule 702 and *Daubert*, and SFUSD's reference to that testimony is a red herring.

7

*Standards controlling the technique.* SFUSD claims Dorn's company is a "world's leading non-profit" school safety organization, and that Dorn and Rollo are "world leading experts on risk assessment and school safety." Opp. at 1-2. But SFUSD cites no source for this proposition. Dorn admitted that there are no "national standards for technology to detect and control e-cigarette use in schools." *Id.* Ex. 1, 8/24/2022 Dorn Dep. 50:2-5. There are no national agencies that provide standards for the "use of technology in schools to prevent or control e-cigarette use among students." *Id.* 60:25-61:7. And there is no state agency that provides such standards. *Id.* 62:12-18. Indeed, the only person who appears to offer any standards by which Dorn became a purported world-leading expert on school security is Dorn himself. *Id.* 41:7-12. In the absence of any standards controlling the methods he offers, Dorn's testimony is not reliable.

Dorn's proposals do not satisfy any of the reliability factors of *Daubert*. He therefore should not be permitted to present these proposals to the trier of fact.

### C. Dorn's Proposals Are Contingent on the Discretion of Stakeholders who Are Not Before the Court.

SFUSD misconstrues a fundamental defect in its request for an $85 million award to implement Dorn's surveillance proposals. The principal problem is not simply that the relevant stakeholders are unlikely to support Dorn's proposals (though they are unlikely to do so). The problem is that the implementation of Dorn's plan is entirely contingent upon the decisions of stakeholders who are not before the Court.

As set forth in the Motion (at 8), Courts are constrained from granting relief that depends "on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). And Courts are "reluctant" to endorse theories of redressability that "require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 413 (2013).

SFUSD seeks to distinguish *Lujan* by claiming that *Lujan* concerns standing and "not the admission of expert testimony." Opp. at 15 n.6. But that is precisely the point. The Supreme Court's holding in *Lujan* limits the power of courts to award contingent relief that depends on the independent

decisions of parties who are not before the court. Here, relevant decision makers like the SFUSD school board are not before this Court and would not be bound by any award—yet Dorn opines that SFUSD should be given a cash award with which it will purportedly implement measures that it *cannot* implement unless those decision makers allow it to do so.

SFUSD's Opposition doubles down on Dorn's claim that he was told by district personnel that his $85 million surveillance proposals "could all be approved at the district level" without school board or parent involvement, Opp. at 12 (citing Ex. 1, 8/24/22 Dorn Dep. 351:22-353:5), In so doing, SFUSD completely ignores the express written budgetary procedures laid out in the board policies and the testimony of Quarry Pak, who, in addition to her fact testimony cited above, has served as the Rule 30(b)(6) corporate representative for the District on six separate occasions. *See* Mot. at 10-12.[3] Both the board policies and Ms. Pak's testimony make clear that school board approval is required before any budgetary expenditure is approved and that approval comes only after a public hearing. *Id.* Dorn's *ad hoc* guesses at his deposition cannot take the place of a detailed, written budgetary procedure, or the testimony of one of the only two district-level personnel from SFUSD that Dorn and his team ever spoke to. There is no evidence corroborating Dorn's claim that unnamed individuals told him that only district-level approval would be required, and such testimony would be inadmissible hearsay even if it existed.[4] The schools and the districts could not spend the money Dorn's proposals seek from JLI even if this Court were to award it without first seeking approval from the school board and the community (through a public

---

[3] SFUSD's failure to address the District's written budgetary procedures and Quarry Pak's testimony in its Opposition means that any argument from SFUSD in response to these issues is waived.

[4] 

9

hearing). Because the use of those funds is contingent on the decisions of individuals not before the Court, the Court's power to award those funds is constrained.[5]

### D. Dorn's *Ad Hoc* View that JLI Is Responsible for Youth THC Use Should Be Excluded.

During his deposition, Dorn volunteered his novel opinion that JLI was responsible for youth THC use. This opinion was never disclosed in his expert report. Dorn should not be permitted to offer this untimely, *ad hoc* opinion to the trier of fact. *In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, 15-cv-0112, 2020 WL 1932934, at *4 (D. Alaska April 21, 2020) (an opinion disclosed for the first time at deposition is untimely pursuant to Rule 26).[6]

SFUSD accuses JLI of "fabricat[ing]" a narrative "out of thin air" when discussing Dorn's unprompted assertion that JLI designed a product to market THC. Opp. at 5, 8. SFUSD asserts that "it is absurd" to "claim[] that Dorn got into this litigation based on some imagined grudge," but Dorn himself testified that he developed a long list of anti-JLI opinions and "brought [them] up to retaining counsel" without being prompted. *See* Ex. 1, 8/24/22 Dorn Dep. 282:23–285:22. Dorn volunteered that he was in possession of "some pretty compelling evidence I'm very concerned about even other things, like the use of THC." *Id.* 283:3–284:3. Asked how he first arrived at his opinion that JLI designed the Juul device for THC, Dorn responded:

> I guess I will put it this way. *I brought this up to retaining counsel.* They did not bring this up to me. . . . Nobody from this retaining firm has ever come to me and said: Hey, you

---

[5] SFUSD also ignores the SFUSD Board Policy 5144, which makes clear that SFUSD's disciplinary focus is to use a "positive," "[t]iered" intervention model designed to "eliminate[] inequality in the use of punitive consequence" and to create a "positive school environment" that is "safe and supportive" where all students feel "respected"—objectives inconsistent with Dorn's police-state proposals. Mot. at 11.

[6] Dorn's THC opinions are the subject to JLI's Motion in Limine No. 8, Dkt. No. 3556 at 14-16. Dorn also volunteered his view that student e-cigarette use was responsible for deaths during the Marjory Stoneman Douglas shooting because the school had restricted access to areas where students could seek shelter. *Id.* 77:21-78:2. This is a remarkable assertion for an expert who seeks to create prison-like restrictions of the movement of students through access control, electronic locking mechanisms, and e-hall pass systems. Ex. 2, 8/19/2022 Dorn Rep. 74-78, 89-90. Indeed, this is one of the principal criticisms of Dorn's invasive surveillance proposals: "Restricting access to certain areas can be dangerous during . . . other emergency situations where the restricted area may be safer or represent a primary way out of the building in the event that other exits are blocked . . . ." and "in active shooter situations . . . students and faculty would be unable to hide in those areas." Ex. 8, 8/29/2022 Mefford Rep. 39-40. Dorn's opinions about e-cigarettes and school shootings are the subject of Motion in Limine No. 8, Dkt. No. 3556 at 23-24. While these opinions should be excluded for the reasons set forth in this Motion, they are also independently inadmissible for the reasons set forth in Defendants' motions in limine.

know, do you think that [JLI] bear[s] responsibility for the rise in THC? I brought it to them *a good while back*, and my analysts brought it to me.

*Id.* 285:12-22 (emphasis added). SFUSD now argues that this response related only to "THC in vape pods" (Opp. at 8), but no previous question mentioned THC, nor was Dorn's immediately preceding testimony focused on THC. Ex. 1, 8/24/222 Dorn Dep. 283:3–285:4. Dorn volunteered a long list of unfounded anti-JLI opinions—not just this THC accusation—to SFUSD's counsel without prompting and without any reliable basis. But Dorn could not name a single person who provided evidence or even anecdotes to support his THC accusation. *Id.* 293:5-14. He also admitted that JLI never manufactured THC pods, and disclaimed any assertion that JLI designed its devices for THC use. *See* Mot. at 6. Dorn's evidence-free assertions under oath display not only his bias, but his disregard for the requirements of Rule 702.

## II.   ROLLO FAILED TO EMPLOY RELIABLE PRINCIPLES AND METHODS.

Rollo has not offered a standalone opinion in this case. Instead, his testimony is entirely contingent on the admissibility of the testimony of Dorn. Rollo made clear that "[t]he various vaping mitigation strategies are based on recommendations by Michael Dorn . . . for each of the school districts," and that he "defer[ed] to Michael Dorn's reports about . . . specific recommendations for any individual schools." Ex. 4, 8/18/2022 Rollo Corrected Rep. at 1. Rollo also testified that he had no opinion about which vaping mitigation strategies are effective. Ex. 3, 4/29/2022 Rollo Dep. 21:7-10. In light of these admissions, if Dorn's opinion is excluded, Rollo's must also be excluded. *San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2022 WL 4133299, at *10 (N.D. Cal. Sept. 12, 2022) ("[A]n expert whose proffered testimony relies on another expert's theories that have been or may be excluded as unreliable should also be excluded.").

Rollo's testimony should also be excluded for the independent reason that Rollo fails to base his opinions on reliable principles and methods. In particular, Rollo failed to independently verify the information provided to him and he erroneously applies the City Cost Index to vape detectors that are not manufactured within the city of San Francisco. For these independent reasons, his testimony should be excluded.

**A.     Rollo Failed to Independently Verify the Facts Provided to Him by Dorn and SFUSD.**

Rollo did not independently verify the information he was provided by Dorn and SFUSD. His testimony should therefore be excluded. *See Snyder v. Bank of America*, No. 15-cv-04228-KAW,., 2020 WL 6462400 (N.D. Cal. 2020) (excluding expert testimony as "[c]ontrary to *Daubert*" that is "based solely on information that [the expert] never reviewed and is unsupported.").

Rollo explicitly testified that he applied a "one size fits all solution." Ex. 3, 4/29/22 Rollo Dep. 68:14-20. SFUSD insists that JLI has misconstrued that testimony. Opp. at 19. That is incorrect. Rollo testified that he never visited a single secondary school, nor did he speak with personnel at most of the secondary schools in the District. Ex. 3, 4/29/22 Rollo Dep. 63:8-13. And Rollo readily admits he did nothing to adapt Dorn's recommendations to circumstances at each school. *Id.* at 97:25-98:8. Rollo admitted that if there were serviceable technology and surveillance infrastructure at a given school, it ought to lower his estimate. *Id.* But he was explicitly told not to do so. *Id.*

SFUSD pats itself on the back that members of Rollo's team "physically inspected *five* of SFUSD's [31] secondary schools." Opp. at 19 (emphasis added). But none of these visits was designed to help Rollo determine whether any of the schools in SFUSD had suitable existing infrastructure. Instead, Rollo's report stated that "[t]he costs presented herein assume that none of these facility improvements are currently installed." Ex. 4, 8/18/2022 Rollo Supp. Rep. 16. And Rollo admitted that the field assessments his team performed "were not to confirm whether or not any of the facility improvements that are contemplated in these reports were already installed in the schools." Ex. 3, 4/29/2022 Rollo Dep. 96:20-25. This is the case even though Rollo testified that the discovery of any such existing infrastructure could have resulted in a lower cost estimate. *Id.* 97:25-98:3.

SFUSD claims that it is wrong of JLI to point out that Rollo's costs estimate is bloated by his failure to look for less expensive components because Rollo only opines as to the "probable cost" to implement Dorn's infrastructure improvements, and Rollo does not hold it out as a "quote from a contractor or request for proposal." Opp. at 20. Here, SFUSD mischaracterizes its own expert's claims. Rollo explicitly states that "[t]he results contained in this report were derived using a carefully planned 5 phase process that sought to determine consistent business rules and processes to result in *the most consistent, accurate cost model and report possible*." Ex. 4, 8/18/2022 Rollo Corrected Rep. 7 (emphasis

added). By failing to take into account existing infrastructure, failing to solicit bids from vendors, and failing to look for the most cost-effective method to implement Dorn's plan, Rollo's cost estimate cannot possibly be the most accurate cost model available. Instead, Rollo's failure to independently verify the inputs to his model renders his testimony unreliable and inadmissible.

        **B.**       **Rollo Erroneously Applies a City Cost Index to Materials that Are Not Manufactured in San Francisco.**

Rollo's testimony is inadmissible because he failed to reliably apply reasonable principles and methods to the facts of the case. Fed. R. Evid. 702(c), (d). As set forth in the Motion, Rollo erroneously applied a San Francisco City Cost Index to the vape detectors in Dorn's plan, raising Rollo's estimated cost of implementing Dorn's plan from approximately $60 million to approximately $85 million. But the purpose of the City Cost Index is to account for differences in the cost of "materials, labor and equipment" for "construction project[s]" in a given city. Ex. 6, 9/9/2022 Rollo Supp. Dep. Ex. 11. It has no bearing on materials that are not manufactured in the city and for which there is no evidence supporting the notion that they are more costly to obtain outside the city.

SFUSD insists that JLI cannot fault Rollo for including a San Francisco City Cost Index because this City Cost Index was derived from RS Means. Opp. at 16. But this is a misdirection on SFUSD's part. The vape detectors referenced in Rollo's report are *not* mentioned in RS Means and there is no evidence in the record to suggest they would be more expensive to acquire in San Francisco than they are anywhere else. Indeed, Rollo was unable to identify any reason that a City Cost Index ought to apply to vape detectors (Ex. 5, 9/9/2022 Rollo Supp. Dep. 170:1-5), especially where, as here, there is no evidence that a buyer in California would have to pay more to acquire vape detectors from New York or Massachusetts. *Id.* at 165:2-5.

SFUSD claims that the application of a City Cost Index is appropriate because San Francisco is "where the construction project is happening." Opp. at 17. But no "construction project" is happening in SFUSD related to the vape detectors. Instead, if Dorn's plan were implemented, thousands of vape detectors would be *shipped* to SFUSD. There is no evidence in the record that the vape detectors called for by Dorn's plan would need to be manufactured at increased cost within the city.

13

Finally, SFUSD claims that "JLI's own cost estimating expert never identified using the city cost index as problematic." Opp. at 18. This argument is both disingenuous and incorrect. JLI's own cost estimating expert, Ryan Phillips, submitted his rebuttal report to Dorn on May 4, 2022, and Rollo submitted his amended report on August 18, 2022. In other words, three-and-a-half months *after* JLI's rebuttal, Rollo adjusted his City Cost Index figure from 1.1 in the initial report to 1.56 in his supplemental report. Ex. 5, 9/9/2022 Rollo Supp. Dep. 155:10-21. Moreover, Phillips expressly testified at his deposition that he believed that there was an error in the City Cost Index that may warrant both further investigation and a supplemental report. Ex. 7, 6/3/2022 Phillips Dep. 24:12-22.

Rollo could not identify any reason for applying a San Francisco City Cost Index to vape detectors made in New York or Massachusetts and there is no evidence in the record that would support doing so. Ex. 5, 9/9/2022 Rollo Supp. Dep. 170:1-5. The application of a San Francisco City Cost Index to these items makes no sense, and Rollo should not be permitted to tell the trier of fact otherwise. *Id.* at 165:2-5.

## CONCLUSION

For the foregoing reasons, JLI respectfully requests that the Court exclude the abatement opinions of SFUSD's experts Dorn and Rollo.

Dated: October 10, 2022

Respectfully submitted,

By: */s/ David M. Bernick*
David M. Bernick (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2310

By: */s/ Peter A. Farrell*
Peter A. Farrell (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, DC 20004
Telephone: (202) 389-5959

*Attorneys for Defendant Juul Labs, Inc.*

14

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also caused a copy of the under-seal documents to be served via electronic mail on all parties.

                                              By: /s/ Renee D. Smith
                                                  Renee D. Smith