[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT** |
| This Document Relates to:<br><br>*San Francisco Unified School Dist. v. Juul Labs, Inc., et al.*<br><br>Case No. 3:20-cv-08177-WHO | Judge: Hon. William H. Orrick<br>Date: October 24, 2022<br>Time:<br>Ctrm.: 2 |

## I. THE ACTION

### A. Substance of the Action

*A brief description of the substance of claims and defenses that remain to be decided.*

Plaintiff San Francisco Unified School District ("SFUSD") alleges that extensive JUUL use by students within the district has caused a variety of harms for SFUSD. The Defendants are Juul Labs, Inc. ("JLI"); JLI founders Adam Bowen and James Monsees; JLI Board members Riaz Valani, Nicholas Pritzker, and Hoyung Huh; and Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Group Distribution Company (collectively, the "Altria Defendants"). By stipulation, the parties have agreed to treat the four Altria Defendants as a single

Defendant at trial. (Doc. 3468).

**Plaintiff's causes of action:**

SFUSD asserts the following claims against all Defendants:

- Negligence; and
- Public nuisance.

SFUSD asserts the following claim against Bowen, Monsees, Valani, Pritzker, Huh, and Altria (collectively, "the RICO Defendants"):

- Civil RICO claims under 18 U.S.C. § 1962(c) (enterprise) and § 1962(d) (RICO conspiracy).

SFUSD has voluntarily dropped the following claim as an independent cause of action against all Defendants:

- Gross negligence

**Affirmative defenses:**

JLI asserts the following affirmative defenses:

- Contributory/Comparative Fault of Plaintiff and Third Parties
- Failure to Mitigate

Altria asserts the following affirmative defenses:

- Contributory/Comparative Fault of Plaintiff and Third Parties
- Failure to Mitigate

Valani, Pritzker, Huh, Bowen, and Monsees (the "Individual Defendants") assert the following affirmative defenses:

- Contributory/Comparative Fault of Plaintiff and Third Parties
- Failure to Mitigate

**B.    Relief Prayed**

*A detailed statement of all the relief claimed, particularly itemizing all elements of damages claimed as well as witnesses, documents, or other evidentiary material to be presented concerning the amount of those damages.*

On its negligence claim, SFUSD seeks damages allegedly sustained due to the vaping epidemic on SFUSD campuses, caused by the Defendants' design, marketing, and sale of JUUL

products. SFUSD also seeks punitive damages. On its RICO claim, SFUSD seeks treble damages from the jury based on alleged injury to SFUSD's business or property caused by the Defendants' fraudulent actions in designing and marketing JUUL. On its public nuisance claim, SFUSD seeks abatement remedies, to be determined by the Court, to alleviate the public nuisance allegedly created by the Defendants' design and marketing of JUUL.

Specifically, SFUSD seeks a judgment against all Defendants on its negligence claim, to compensate the district for various harms, including but not limited to physical damage to district property; lost access to district property; financial expenditures to address the vaping crisis; lost staff time due to the vaping crisis, which necessitates the need to hire additional personnel; the need to create new and better programs at SFUSD to address and discourage vaping on SFUSD's campuses; and, the massive disruption caused at SFUSD's schools, which inhibits SFUSD's ability to complete its mission of educating its students and protecting their safety. Plaintiff also seeks punitive damages to punish and deter Defendants, costs of litigation, pre-judgment and post-judgment interest at the lawful rate, and any other relief as this Court may deem equitable and just. On SFUSD's RICO claim, SFUSD seeks treble damages, for which the RICO Defendants are jointly and severably liable, based on the RICO Defendants' conduct of a pattern of racketeering activity—namely, mail and wire fraud—which caused the vaping epidemic at SFUSD and directly harmed SFUSD's business or property, as laid out above.

SFUSD also has a claim for public nuisance. SFUSD seeks to hold all Defendants liable for their role in creating the vaping epidemic at SFUSD, and it seeks an order from the Court designed to fund all measures necessary to abate the nuisance caused by the Defendants. The jury will determine in Phase I of the trial whether any or all of the Defendants caused a public nuisance. Then the Court will determine the remedy in Phase III, if the jury answers affirmatively.

Plaintiff's damages calculations will be based primarily on the testimony of expert witness Michael Dorn, who has determined the measures necessary to address the vaping crisis in SFUSD's schools. Mr. Dorn also has determined the precise cost of those measures, with the aid of economic expert Robert Rollo. Thus, any suggestion that Plaintiff's damages are speculative or not economic in nature is inaccurate. They are also not "future damages," as Defendants contend, because Mr.

Dorn proposes solutions for existing harms, not for harms that he predicts will occur in the future. Further, Defendants' characterization of Plaintiff's damages as "expert opinions it relies on relate to efforts to reduce youth vaping" is inaccurate, or at least incomplete. Mr. Dorn opines that physical alterations to SFUSD's property are needed to address the vaping crisis, including but not limited to the installation of vaping detectors and cameras. It is Plaintiffs' abatement experts that focus on a broader approach to reducing or eliminating youth vaping generally, thereby abating the nuisance into the future. Mr. Dorn's proposed actions are designed to detect vaping when it occurs, and therefore to deter students from vaping on school grounds.

SFUSD's witnesses to be presented concerning these damages and/or abatement include experts Dorn, Rollo, Dr. Bonnie Halpern-Felsher, Dr. Steven Kelder, Dr. David Cutler, Dr. Jonathan Winickoff, Dr. Kurt Rbisil, and Dr. John Chandler. SFUSD anticipates that Drs. Kelder and Winickoff will only be called during the abatement phase. Several SFUSD witnesses will also testify as to the impact of the JUUL-led vaping epidemic at SFUSD. The SFUSD witnesses that Plaintiff expects to call live at trial include SFUSD administrators Erica Lingrell, Quarry Pak, and Kimberly Coates; health education teacher Christopher Pepper, who led development of SFUSD's "Juul School"; and former SFUSD students Madeline Cho and Kaya Lehr-Love. Plaintiff's key documents to be presented concerning these damages include the documents reviewed and relied upon by Plaintiff's expert witnesses, documents regarding SFUSD's finances, documents regarding the impact of JUUL on SFUSD and nationally, and internal documents showing the planning and the effect of the Defendants' JUUL product design and marketing strategies—including actions to prevent or reduce regulatory action to keep the JUUL product and certain flavors on the market.

Finally, like the Defendants, Plaintiff reserves the right to supplement or amend its witness and exhibit lists, designations, motions in limine, jury instructions, and proposed verdict forms, as necessary in response to Court orders or other developments.

Defendants' Response:

Defendants seek judgment in their favor and against Plaintiff and deny that Plaintiff is entitled to damages or to any other relief enumerated in its operative complaint.

Furthermore, as set out in JLI's Motion for Summary Judgment (Doc. 3396), Altria's

Motion for Summary Judgment (Doc. 3405), NMD's Motion for Summary Judgment (Doc. 3384), Bowen's Motion for Summary Judgment (Doc. 3394), Monsees's Motion for Summary Judgment (Doc. 3401), and in Defendants' reply memoranda in support of the same (Docs. 3520, 3521, 3525, 3527, 3530), Plaintiff does not have standing to bring a public nuisance action, cannot seek an equitable remedy as a matter of law, and fails to present admissible evidence concerning its claimed damages.

On both its negligence claim and its RICO claim, Plaintiff has failed to provide sufficient evidence of damages resulting from Defendants' conduct. Its claims of physical property damage, alleged in support of its negligence claim, boil down to four alleged harms: (i) one broken bathroom door; (ii) one slightly damaged chain-link fence; (iii) one complaint of damage to seat covers and a water valve cover; and (iv) one chained and locked doorway to a balcony stairwell. *See* JLI's Reply re Motion for Summary Judgment (Doc. 3520) at 10. These alleged damages lack any connection to Defendants' actions or JUUL products, and they are supported only by a handful of secondhand accounts and inadmissible hearsay. *Id.* at 10-11. Even if they were supported by admissible evidence, these minimal claims of property damage would be woefully insufficient to support Plaintiff's request for damages and abatement awards for hundreds of millions of dollars, and they cannot form the requisite basis for Plaintiff's public nuisance claim. Plaintiff has also tried to recast a portion of its abatement calculations as evidence of future damages for its negligence and RICO claims, but the expert opinions it relies on relate to efforts to reduce youth vaping (*i.e.*, the alleged nuisance) in the future, not a calculation of the economic damage Plaintiff itself will allegedly suffer in the future, and are thus classic abatement opinions (and have even been characterized as such by Plaintiff's own experts).

Plaintiff's other claimed damages are neither supported by admissible evidence nor attributable to Defendants' conduct. Its vague claims such as "lost staff time" and "expenditures to address the vaping crisis" are not enumerated or quantified in the admissible record evidence. In addition, none of Plaintiff's fleet of experts quantifies any actual past damages suffered by Plaintiff or performs a calculation of alleged future damages; all of Plaintiff's experts address abatement remedies, not measures of damages. As a result, Plaintiff has no non-speculative measures of actual

- 5 -  JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 19-md-02913-WHO

damages, and thus no damages case to present to the jury for its tort claims in this matter. Furthermore, these alleged damages are connected to Defendants' conduct only by an attenuated theory constructed by Plaintiff's experts: that Defendants were uniquely responsible for an "epidemic" of youth vaping, and that they should therefore be financially responsible for paying for all damages related to youth vaping and abating all youth vaping, regardless of whether Defendants have any connection to the vaping products used in the past or presently. Yet these experts cannot point to specific instances of wrongful JLI conduct that would support such a theory, nor can Plaintiff cite a single comparable instance where an individual manufacturer has been held accountable for the downstream effects of an entire product sector and all participants in that product sector's supply chain.

Plaintiff's claim for abatement suffers from another fatal flaw: pre-JUUL levels of youth vaping prevalence have already been achieved. Plaintiff's experts opine that JLI created the youth vaping "epidemic"—*i.e.*, that no such epidemic existed before JUUL—and they even assert that youth vaping must be reduced to pre-JUUL levels, but recent surveys consistently show that youth vaping prevalence has dipped below the levels present in 2015, when JUUL was launched. Plaintiff and its experts have attempted to avoid or explain away these lower prevalence numbers by blaming them on lower responses from students taking the surveys at home during the COVID-19 pandemic. But the 2022 National Youth Tobacco Survey ("NYTS") results released last week confirm that this downward trend is durable: over 99% of the 2022 survey respondents completed the survey in school, and the high school current (past-30 day use) vaping rate (14.1%) was below the 2015 high school current vaping rate (16%) collected the year before JUUL launched. The same is true of the draft 2021-22 California Healthy Kids Survey ("CHKS") results that Plaintiff produced last week. Those results indicate that 1% of 7th graders, 4% of 9th graders, and 6% of 11th graders in SFUSD schools reported vaping nicotine or tobacco using any ENDs device within the past 30 days, results that are at or below the percentages of students who reported vaping with any ENDs device within the past 30 days in the last CHKS reporting cycle before JUUL's launch. Plaintiff cannot legitimately argue that the so-called youth vaping "epidemic" in SFUSD existed only after JUUL went to market and still exists today, but ignore current data showing that youth vaping rates have

declined substantially and are now lower than they were even before JUUL went to market. This is particularly true when JUUL products have not been sold in San Francisco in nearly three years and, according to current data from NYTS, JUUL products are now disfavored by youth to the point that youth preference for JUUL is statistically insignificant.

Plaintiff's abatement proposals also fail for the independent reason that they are premised on untested, impractical, and prohibitively expensive abatement measures never before implemented to address youth vaping. These novel abatement structures are premised solely on Plaintiff's experts' say-so; they cite their "experience" as authority for these plans, but none of the experts have experience implementing anything like the abatement systems called for in their reports. Plaintiff and its experts also propose damages and abatement relief that would put SFUSD, a school, in the role of a public health administrative agency tasked with detecting, preventing, and treating all use of all tobacco products by every person who resides in San Francisco who is under the age of 26—a massively overbroad remedy that seeks to force Defendants to fund relief from the activities of an entire industry and all supply chain participants, include for *legal* use of tobacco products by consenting adults. Not surprisingly, the law does not support the unprecedented remedy Plaintiff and its experts seek, and the lack of tailoring to this case and these Defendants also renders Plaintiff's requested remedy unreliable and inadmissible. Plaintiff has entirely failed to outline an abatement plan based on consistent, measurable methods and results.

Plaintiff is therefore entitled to none of the relief it requests. As noted above, Plaintiff has presented no admissible evidence of physical or economic damages attributable to Defendants' conduct, and its abatement case also suffers from multiple fatal flaws. Punitive damages are therefore inapplicable, as are Plaintiff's claimed RICO damages.

Defendants' witnesses to be presented concerning the deficiencies in Plaintiff's causation, damages, and abatement theories claims include experts Laurentius Marais, Jonathan Orszag, Dennis Paustenbach, Peter Rossi, Laurence Steinberg, and Kevin Murphy. Additional fact witnesses will also offer testimony demonstrating the insufficiency of the damages claimed by Plaintiff. Defendants will also rely on testimony from Plaintiff's own administrator witnesses as well as Plaintiff's own documents concerning its response to student vaping and its finances, as

well as evidence and data concerning youth vaping, among other things, to demonstrate that Plaintiff cannot establish causation or entitlement to the relief it seeks. Last, Defendants reserve the right to supplement or amend their witness and exhibit lists, designations, motions in limine, jury instructions, and proposed verdict forms based on the Court's October 7, 2022, order indicating that Plaintiff's trial plan is adequate and that the Court will address any issues raised by the phased approach at a later date.

## II. THE FACTUAL BASIS OF THE ACTION

### A. Undisputed Facts

*A plain and concise statement of all relevant facts not reasonably disputable, as well as which facts parties will stipulate for incorporation into the trial record without the necessity of supporting testimony or exhibits.*

The parties have agreed to a stipulation by which all of the Altria Defendants will be grouped together as if they are a single Defendant, and any verdict against this single Altria Defendant will constitute a verdict against Altria Group, Inc. (Doc. 3468). The parties have not agreed to a list of undisputed facts, but they have agreed to a jury instruction, titled "Claims and Defenses," introducing the jury to the nature of the case.

### B. Disputed Factual Issues

*A plain and concise statement of all disputed factual issues that remain to be decided.*

The parties dispute whether the Defendants engaged in negligent conduct, whether SFUSD engaged in negligent conduct that contributed to its own damages, whether Defendants' negligence caused SFUSD's damages, whether third parties contributed to Plaintiff's alleged damages, whether Plaintiff failed to mitigate its alleged damages, and the extent of Plaintiff's alleged damages. The parties also dispute whether the RICO Defendants operated JUUL as an enterprise through a pattern of racketeering activity, which caused harm to SFUSD's business or property, such that the RICO Defendants should be held liable for treble damages under the RICO statute. The parties also disagree about whether the RICO Defendants conspired to violate the RICO statute, thereby causing damage to SFUSD's business or property. The parties further dispute the amount of any damage to SFUSD's business or property. Finally, the parties dispute whether all Defendants caused a public nuisance, and if so, the extent and propriety of the abatement remedies required to

abate that nuisance.

### C. Agreed Statement

*A statement assessing whether all or part of the action may be presented upon an agreed statement of facts.*

The parties have not agreed to present an agreed statement of facts.

### D. Stipulations

*A statement of stipulations requested or proposed for pretrial or trial purposes.*

The parties have no proposed stipulations for the Court's consideration at this time. In addition to the Altria stipulation noted above, the Court has entered an Order implementing the parties' stipulation deeming certain orders regarding Motions in Limine from the *B.B.* case to be effective in this action. (Doc. 3473).

## III. DISPUTED LEGAL ISSUES

### A. Points of Law

*Without extended legal argument, a concise statement of each disputed point of law concerning liability or relief, citing supporting statutes and decisions setting forth briefly the nature of each party's contentions concerning each disputed point of law, including procedural and evidentiary issues.*

The parties refer the Court to the following pending motions:

- Plaintiff's Motion to Exclude the Expert Testimony of Larry Mefford (Doc. 3460);
- Valani, Pritzker, and Huh's Motion for Summary Judgment (Doc. 3384);
- Bowen's Motion for Summary Judgment (Doc. 3394);
- JLI's Motion for Summary Judgment (Doc. 3396);
- Monsees' Motion for Summary Judgment (Doc. 3401);
- Altria's Motion for Summary Judgment (Doc. 3405);
- Valani, Huh, and Pritzker's *Daubert* Motion (Doc. 3388);
- Altria's Motion to Exclude the Opinions of Plaintiff's Government Entity Bellwether Experts – David Cutler and Minette Drumwright (Doc. 3400);
- JLI's Motion to Exclude Testimony of Plaintiff's Abatement Experts (Doc. 3408);
- JLI's Motion to Exclude Testimony of Plaintiff's Electronic Surveillance and

- School Infrastructure Abatement Experts (Doc. 3462);
- Plaintiffs' Motion to Exclude Expert Larry Mefford (Doc. 3460);
- Plaintiff's Motions in Limine (Doc. 3552);
- Defendants' Motions in Limine (Doc. 3556);
- The parties' briefing concerning their disputes about trial structure and phasing (Docs. 3534, 3545);
- The parties' joint submission on jury instructions, both agreed and contested, which is attached to this filing as **Exhibit A**;
- The parties' proposed verdict forms, which are attached as **Exhibit B** (Plaintiff), **Exhibit C** (JLI), **Exhibit D** (Altria) and **Exhibit E** (Individual Defendants);
- The parties' respective proposals for the juror questionnaire, described in Part III.B below and attached with related documents as **Exhibits F-I**;
- The parties' briefing for priority expedited review of the Special Masters rulings will be fully briefed on October 19, 2022 (Doc. 3582).

Jury instructions: The parties have exchanged proposed jury instructions and have worked on reaching agreement on as many instructions as possible. The Court-ordered deadline is today (October 11, 2022) for the parties to submit the agreed instructions, the instructions on which they disagree, and the arguments as to why the Court should issue their proposed instructions. As noted above, the parties' proposed instructions and arguments related to contested instructions are attached as **Exhibit A**.

Live streaming: The parties anticipate discussing with the Court whether members of the trial team or MDL counsel will have access to a video stream of the trial.

### B. Juror Questionnaire and Voir Dire

The parties have met and conferred regarding a juror questionnaire and provide their respective proposals below for the Court's review by the deadline of today, October 11, 2022. The parties request that attorneys be permitted to participate in voir dire, and the parties will be prepared to discuss the scope and timing of that process at the pretrial conference.

Plaintiff's Position:

Plaintiff's proposed juror questionnaire is attached as **Exhibit F**. Plaintiff's proposal incorporates approved questions from B.B., and adds questions as appropriate for SFUSD. For example, Question 7 (regarding service on a board of directors) is a reasonable addition to the B.B. questionnaire in light of SFUSD's claims against the Individual Defendants. Plaintiff notes that Defendants have repeatedly argued that SFUSD is a wholly different case than B.B., and that the parties and the Court should not simply follow the pretrial playbook set by B.B. for SFUSD. *See, e.g.*, Defendants' SFUSD Motions in Limine (ECF No. 3556) at 14, 17, 19, 25. Unsurprisingly, then, SFUSD has declined to wholesale adopt work product prepared six months ago by a different trial team for the B.B. case.

Some of Plaintiff's proposed additional questions are not on their face SFUSD-specific, but in Plaintiff's view, improve the usefulness of the questionnaire as a tool to serve the parties and the Court. Particularly in light of the Court's view that voir dire itself should be as efficient and streamlined as possible, Plaintiff submits that the length and level of detail of its proposed questionnaire is appropriate.

Defendants' Position:

Defendants' revisions to Plaintiff's proposal are attached in redline form as **Exhibit G**. Defendants request that the Court adopt **Exhibit H**, a clean copy incorporating these revisions, as the juror questionnaire in this matter.

Just five months ago, the parties spent significant time and effort reaching near total agreement on a juror questionnaire in *B.B.*, managing to submit a single proposal to the Court with just four areas of disagreement. *See* **Exhibit I**, Annotated Proposed Juror Questionnaire from *B.B.* The Court ruled on those objections and otherwise approved the parties' proposed questionnaire. *See* ECF No. 3170, Pretrial Conference Minute Order, at 2.

The *B.B.* questionnaire, with minor adjustments, is equally applicable to *SFUSD*. Although this case involves some claims and parties that were not present in *B.B.*, the information needed from prospective jurors is essentially the same. Accordingly, Defendants ask the Court to largely adopt the approved questionnaire from *B.B.*, with the exception of reasonable additions specific to

*SFUSD* that account for the differences between the two cases. In line with this approach, Exhibit G is a redlined version of Plaintiff's proposed juror questionnaire, which (1) accepts Plaintiff's newly added, non-attitudinal questions specific to *SFUSD*; and (2) removes additions that were not approved in *B.B.* and would make an already-lengthy survey even longer.

None of Defendants' revisions seek to add new questions that were not approved in *B.B.* or delete questions that were already approved. Rather, as shown in **Exhibit G**:

- Questions 14, 25, 26, 27, 29, 31, and 41 have been revised to reflect the language that was already approved by the Court. Defendants object to Plaintiff's alteration of these Court-approved questions.

- Questions 7, 15, 16, 19, 24, 30, and 39 were new additions from Plaintiff that were not approved in *B.B.* and have been deleted in Exhibit G's redline. Defendants object to the inclusion of these questions as prejudicial or just unnecessary—indeed, multiple of these questions are duplicative of others already included in the questionnaire.[1]

## IV. TRIAL PREPARATION

### A. Witnesses to be Called

*A list of all witnesses likely to be called at trial, other than solely for impeachment or rebuttal, together with a brief statement following each name describing the substance of the testimony to be given.*

Plaintiff's annotated witness list is attached as **Exhibit J**. Plaintiff has separated its witness list into categories, showing which witnesses Plaintiff is likely to call and which are "may call" witnesses. JLI's annotated witness list is attached as **Exhibit K**. Altria's annotated witness list is attached as **Exhibit L**. The Individual Defendants' annotated witness list is attached as **Exhibit M**.

### B. Exhibits, Schedules, and Summaries

*A list of all documents and other items to be offered as exhibits at the trial, other than solely for impeachment or rebuttal, with a brief statement following each describing its substance or purpose and the identity of the sponsoring witness. Unless otherwise ordered, parties will indicate their objections to the receipt in evidence of exhibits and materials lodged and that counsel have conferred respecting such objections.*

---

[1] As noted, Defendants object to Plaintiff's Question 24 as an unnecessary attitudinal question about SFUSD. However, if the Court is inclined to include Question 24, Defendants ask that the Court also include a similar question asking whether jurors have strong positive or negative opinions about the relevant Defendant corporations.

The parties' Exhibit Lists have been attached as **Exhibits N-Q**—for Plaintiff (**Exhibit N**), JLI (**Exhibit O**), Altria (**Exhibit P**), and the Individual Defendants (**Exhibit Q**). The parties exchanged Exhibit Lists on September 16, 2022, and they exchanged objections on September 27, 2022. The parties' Priority Exhibit Lists and objections to those lists have been attached as as follows: Plaintiff's Priority Exhibit List with Defendants' objections (**Exhibit R**), and Defendants' Priority Exhibit List with Plaintiff's objections (**Exhibit S**). Consistent with the stipulation filed today, the parties intend to exchange supplemental exhibit lists on October 21, 2022, and to address any substantive disputes with the Court at the pretrial conference.

### C. Estimate of Trial Time

*An estimate of the number of court days needed for the presentation of each party's case, indicating possible reductions in time through proposed stipulations, agreed statements of facts, or expedited means of presenting testimony and exhibits.*

The Court has stated that each side—i.e., SFUSD and the collective Defendants—will have up to 50 hours to present their cases, including openings, closings, and the presentation of evidence. (July 15, 2022, CMC Tr. at 4:15-21; *see also* Doc. 3469 at 8 (Defendants contending that the 50-hour limit should apply to Phases I and II)). Plaintiff has proposed 12 hours per side for the abatement phase, if there is one.

### D. Use of Discovery Responses

*Counsel shall cite possible presentation at trial of evidence, other than solely for impeachment or rebuttal, through use of excerpts from depositions, interrogatory answers, or responses to requests for admission. Counsel shall indicate any objections to use of these materials and that counsel has conferred respecting such objections.*

To avoid burdening the Court, the parties have not attached the current deposition, interrogatory answer, or response to requests for admission designation reports, which continue to be refined in accordance with the discovery designation process and pretrial schedule. The Court has entered the schedule to which the parties agreed. (Doc. 3472). Pursuant to the schedule, the parties exchanged their deposition designations in three tranches, on September 16 and 19 (A); September 21, 2022 (B); and September 27, 2022 (C). The counter-designations to Tranche A were submitted on September 27. The counter-designations to Tranche B were due October 3. The counter-designations to Tranche C are due today, October 11. The final submission deadlines are

October 20 (Tranche A), October 28 (Tranche B), and November 3 (Tranche C).[2] The parties will exchange excerpts from Interrogatory answers and Requests for Admissions on October 25.

### E. Further Discovery or Motions

*A statement of all remaining discovery or motions, including motions in limine.*

Certain discovery is ongoing in accordance with Court orders, including certain depositions of witnesses scheduled to appear live at trial.

Motions in limine were filed on October 3, 2022, with responses due on October 17, 2022. The parties otherwise refer the Court to the list of pending motions in Category III.A.

## V. TRIAL ALTERNATIVES AND OPTIONS

### A. Settlement Discussion

*A statement summarizing the status of settlement negotiations and indicating whether further negotiations are likely to be productive.*

The parties have been cooperatively working with the Court-appointed Settlement Master.

### B. Consent to Trial Before a Magistrate Judge

*A statement whether reference of all or part of the action to a master or magistrate judge is feasible, including whether the parties consent to a court or jury trial before a magistrate judge, with appeal directly to the Ninth Circuit.*

The trial will be before Judge Orrick.

### C. Amendments, Dismissals

*A statement of requested or proposed amendments to pleadings or dismissals of parties' claims or defenses.*

Plaintiff has voluntarily dropped the following independent claim against all Defendants:
- Gross negligence.

---

[2] As set forth in the Special Master's Report adopted by the Court on September 21, 2022 (Doc. 3501 and 3504), deposition designations for all witnesses that are reviewed/ruled on in the B.B. case by the Special Master, as a general rule, will be submitted directly to the Court in this matter. Only witnesses not ruled on the Special Master in the B.B. case will be submitted to the Special Master before being submitted to the Court.

### D. Bifurcation, Separate Trial of Issues

*A statement of whether bifurcation or a separate trial of specific issues is feasible and desired.*

The trial will take place in phases. Assuming that all claims survive summary judgment, the jury will decide liability and damages on the negligence and RICO claims. The jury will also decide whether punitive damages are warranted. If so, the amount of punitive damages will be determined in a second phase. In Phase I, the jury also will decide whether one or more Defendants are liable for causing the alleged public nuisance in SFUSD's schools. If so, the parties will try the third phase, the nuisance abatement phase, to the Court on a schedule to be determined following the trial of Phases I and II.

Dated: October 11, 2022

Respectfully submitted,

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: /s/ *Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

|   |   |
|---|---|
| 1 | |
| 2 | By: */s/ Dean Kawamoto* |
| 3 | Dean Kawamoto |
| 4 | **KELLER ROHRBACK L.L.P.**<br>1201 Third Ave., Ste. 3200 |
| 5 | Seattle, WA 98101<br>Telephone: (206) 623-1900 |
| 6 | dkawamoto@kellerrohrback.com |
| 7 | |
| 8 | By: */s/ Ellen Relkin* |
| 9 | Ellen Relkin<br>**WEITZ & LUXENBERG** |
| 10 | 700 Broadway<br>New York, NY 10003 |
| 11 | Telephone: (212) 558-5500<br>erelkin@weitzlux.com |
| 12 | |
| 13 | *Co-Lead Counsel for Plaintiffs* |
| 14 | By: */s/ Thomas P. Cartmell* |
| 15 | Thomas P. Cartmell |
| 16 | **WAGSTAFF & CARTMELL LLP**<br>4740 Grand Ave., Suite 300 |
| 17 | Kansas City, MO 64112<br>Telephone: (816) 701-1100 |
| 18 | tcartmell@wcllp.com |
| 19 | *Counsel for SFUSD* |

By: */s/ David M. Bernick*

David M. Bernick, P.C. (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
david.bernick@kirkland.com
renee.smith@kirkland.com

Peter A. Farrell, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., N.W. Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
peter.farrell@kirkland.com

Gregory P. Stone (SBN 78329)
Daniel B. Levin (SBN 226044)
Bethany W. Kristovich (SBN 241891)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
gregory.stone@mto.com
daniel.levin@mto.com
bethany.kristovich@mto.com

*Attorneys for Defendant Juul Labs, Inc.*

By: /s/ *Beth A. Wilkinson*

Beth A. Wilkinson (pro hac vice)
Brian L. Stekloff (pro hac vice)
James M. Rosenthal (pro hac vice)
Hayter L. Whitman (pro hac vice)
Matthew R. Skanchy (pro hac vice)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
hwhitman@wilkinsonstekloff.com
mskanchy@@wilkinsonstekloff.com

Moira K. Penza (pro hac vice)
**WILKINSON STEKLOFF LLP**
130 West 42nd Street, 24th Floor
New York, NY 10036
Telephone: 212-294-8910
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria Group Distribution Company, and Altria Enterprises LLC*

By: /s/ *Michael J. Guzman*

Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C**.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

*Attorneys for Defendants Huh, Pritzker, and Valani*

By: /s/ *James N. Kramer*

James N. Kramer (SBN 154709)
Kevin Askew (SBN 238866)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669

| | |
|---|---|
| 1 | Telephone: +1 415 773 5700 |
| 2 | Facsimile: +1 415 773 5759 |
| | jkramer@orrick.com |
| 3 | kaskew@orrick.com |
| 4 | *Attorneys for Defendant Monsees* |
| 5 | By: */s/ Eugene Illovsky* |
| 6 | Eugene Illovsky (SBN 117892) |
| 7 | Kevin Calia (SBN 227406) |
| | Sharon Frase (SBN 282923) |
| 8 | **BOERSCH & ILLOVSKY LLP** |
| | 1611 Telegraph Ave., Ste. 806 |
| 9 | Oakland, CA 94612 |
| 10 | Telephone: (415) 500-6640 |
| | eugene@boersch-illovsky.com |
| 11 | kevin@boersch-illovsky.com |
| | sharon@boersch-illovsky.com |
| 12 | *Attorneys for Defendant Bowen* |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Thomas P. Cartmell*
Thomas P. Cartmell