1  [Submitting Counsel on Signature Page]

2

3

4

5

6

7

8

9

10
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
11
**SAN FRANCISCO DIVISION**

12

13  IN RE JUUL LABS, INC., MARKETING,  |  CASE NO. 19-md-02913-WHO
     SALES PRACTICES, AND PRODUCTS
14   LIABILITY LITIGATION  |  **PLAINTIFFS' NOTICE OF MOTION AND**
                              **MOTION FOR PRELIMINARY**
15                           **APPROVAL OF CLASS ACTION**
                              **SETTLEMENT**
16   This Document Relates to:
17   All Class Actions  |  **MOTION HEARING**

18                          DATE: TBD
19                          TIME: TBD
                            LOCATION: TBD
20
21                          HON. WILLIAM H. ORRICK III

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ............................. 1

I. INTRODUCTION ................................................................................................................ 2

II. PROCEDURAL HISTORY .................................................................................................. 3

    A. The *Colgate* Action ..................................................................................................... 3

    B. The MDL..................................................................................................................... 3

    C. Class Certification ...................................................................................................... 4

    D. Settlement Negotiations .............................................................................................. 5

III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. .............. 5

    A. Legal Standard ............................................................................................................ 5

    B. The Settlement Is Fair, Adequate, and Reasonable..................................................... 5

        1. Procedural Considerations ............................................................................... 5

            a. Adequate Representation of the Class............................................. 6

            b. Arm's Length Negotiations.............................................................. 6

        2. Substantive Considerations .............................................................................. 7

            a. Strength of Plaintiffs' Case and Risks of Continued Litigation ......................................................................................... 7

            b. The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Class.............. 9

            c. Attorneys' Fees and Costs............................................................. 10

            d. Service Awards to Class Representatives ...................................... 11

            e. Supplemental Agreements ............................................................. 12

            f. Equitable Treatment of Class Members......................................... 13

            g. The Released Claims Are Identical to Those Pled in the Litigation....................................................................................... 15

            h. Past Distributions .......................................................................... 16

    C. CERTIFICATION OF THE SETTLEMENT CLASS IS LIKELY ........................ 16

IV. THE NOTICE PLAN SHOULD BE APPROVED. ........................................................... 20

V. THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED........................... 21

VI. THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL.......................................................................................... 22

VII. THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ................................ 23

VIII. CONCLUSION .................................................................................................................. 23

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Adams v. Inter-Con Sec. Sys. Inc.*,
  2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .......................................................................... 7

4

5

*Allen v. Similasan Corp.*,
  2017 WL 1346404 (S.D. Cal. Apr. 12, 2017) ........................................................................ 16

6

*Alvarez v. Farmers Ins. Exchange*,
  2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ....................................................................... 11

7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................................. 20

8

9

*Broomfield v. Craft Brew All., Inc.*,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ......................................................................... 15

10

*Bruno v. Quten Research Inst., LLC*,
  2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ........................................................................ 15

11

*Colgate v. JUUL Labs, Inc.*,
  345 F. Supp. 3d 1178 (N.D. Cal. 2018) .................................................................................. 3

12

13

*Colgate v. Juul Labs, Inc.*,
  402 F. Supp. 3d 728 (N.D. Cal. 2019) .................................................................................... 3

14

*De La Torre v. CashCall, Inc.*,
  2017 WL 2670699 (N.D. Cal. June 21, 2017) ...................................................................... 16

15

*Fitzhenry-Russell v. Coca-Cola Co.*,
  2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ....................................................................... 15

16

*Foster v. Adams & Assocs.*,
  2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ....................................................................... 17

17

18

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................................ 7

19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 6, 19

20

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................................................................... 10

21

22

*In re Groupon, Inc. Mktg. and Sales Practices Litig.*,
  2012 WL 13175871 (S.D. Cal. Sep. 28, 2012) ..................................................................... 15

23

*In re Health S. Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ....................................................................................... 12

24

25

*In re High-Tech Employee Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ....................................................................... 11

26

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................................ 19

27

28

ii

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d
    858 (N.D. Cal. Apr. 13, 2021) ................................................................ 3

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ..................................................... 3

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ......................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................... 12

*Johnson v. Triple Leaf Tea Inc.*,
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................... 8

*Just Film v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................. 18

*Massey v. Star Nursing, Inc.*,
    2022 WL 14151758 (N.D. Cal. Oct. 24, 2022) ......................................... 20

*Nat'l Rural Telecomm. Coop. v. DIRECTV*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 6

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 7, 20

*Pettit v. Procter & Gamble Co.*,
    2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ........................................... 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ......................... 20

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 6, 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................. 19

*Thomas v. MagnaChip Semiconductor Corp.*,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ........................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................... 18, 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................ 18

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................... 11

**STATUTES**

28 U.S.C. § 1407 ........................................................................................ 3

iii

**OTHER AUTHORITIES**

2 *Newberg on Class Actions,* § 11.28, 11-59 .............................................................. 19

4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002) ........................ 6

4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) ............ 13

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)........................... 6

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................................ 6

Newberg on Class Actions § 3:31 (5th ed.) ................................................................ 18

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ 1, 2, 16

Fed. R. Civ. P. 23(a) ..................................................................................................... 4

Fed. R. Civ. P. 23(b) .................................................................................................. 16

Fed. R. Civ. P. 23(b)(3)................................................................................. 4, 16, 17, 19

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................................ 20

Fed. R. Civ. P. 23(e)..................................................................................................... 12

Fed. R. Civ. P. 23(e)(1)..................................................................................... 5, 16, 20

Fed. R. Civ. P. 23(e)(2).................................................................................................. 5

Fed. R. Civ. P. 23(e)(2)(A)-(B)...................................................................................... 5

Fed. R. Civ. P. 23(e)(2)(C)............................................................................................. 7

Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................................ 9

Fed. R. Civ. P. 23(e)(2)(D)............................................................................................. 7

Fed. R. Civ. P. 23(e)(3)................................................................................................ 12

## <u>NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL</u>

**PLEASE TAKE NOTICE THAT** on a date and time convenient for the Honorable William H. Orrick III of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 2, 17th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:[2]

(1)     preliminarily approving the proposed settlement of the class action claims in this litigation as against certain Defendants;

(2)     finding that certification for purposes of settlement of the Settlement Class defined as follows is likely: All individuals who purchased, in the United States, a JUUL Product from brick and mortar or online retailer before December 6, 2022;[3]

(3)     preliminarily approving the proposed Plan of Allocation;

(4)     approving and ordering the implementation of the proposed Notice Plan;

(5)     authorizing the payment of initial settlement administration expenses; and

(6)     setting a date for a Final Approval Hearing.

A copy of Class Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement is separately submitted with this Motion.

Class Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of

---

[1] Class Plaintiffs for the purposes of settlement are Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B.

[2] Capitalized terms in this Motion incorporate the defined terms from the Class Settlement Agreement.

[3] Excluded from the Settlement Class are (a) the Settling Defendants or any other named defendant in the litigation; (b) officers, directors, employees, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliated companies of the Settling Defendants or any other named defendant in the litigation; (c) Class Counsel and their employees; (d) the Court and other judicial officers, their immediate family members, and associated court staff assigned to MDL No. 2913; and (e) those individuals who timely and validly exclude themselves from the Settlement Class.

Motion, the supporting Memorandum of Points and Authorities, the Declaration of Dena Sharp, the declaration of Cam Azari (Senior Vice President with Epiq Class Action & Claims Solutions, Inc.), and the pleadings and papers on file in MDL No. 2913 (the "Litigation"), and any other matter this Court may take notice of.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

## I.    INTRODUCTION

Class Plaintiffs seek preliminary approval of a $255,000,000 settlement with Defendants JUUL Labs, Inc. ("JLI"), James Monsees, Adam Bowen, Riaz Valani, Nicholas Pritzker, and Hoyoung Huh. While the litigation has been complex and challenging, the proposed settlement is simple: the Settlement Class gets a $255 million, non-reversionary fund in exchange for releasing their economic loss claims. This settlement, which is the result of years of mediation overseen by Special Master Thomas J. Perrelli, resolves the Class claims against all defendants other than Altria, against whom the litigation will continue.[4]

Settlement Class members will be eligible for payments from the Class Settlement Fund based on the estimated amount they paid for JUUL Products. The notice program will advise Settlement Class members of their rights and options. Payments will be distributed to Class members in accordance with the Plan of Allocation, which Class Counsel has designed to maximize claims. The settlement offers Class Members a streamlined claim process supervised by Class Counsel and an experienced Class Settlement Administrator. Attorneys' fees, expenses, and service awards will be paid from the Settlement Fund in amounts subject to this Court's discretion.

The Class Settlement Agreement (Sharp Decl., Ex. 1) meets all the criteria for approval under Federal Rule of Civil Procedure 23. The carefully negotiated settlement is the product of extensive arm's-length negotiations among experienced attorneys familiar with the legal and factual issues in this case, including the risks at trial and on appeal. The terms of the Class

---

[4] In separate agreements, JLI has also resolved the claims brought by individuals who asserted claims for personal injury, and by school district and local government entities that asserted claims for public nuisance (the Non-Class Settlement Agreements).

Settlement Agreement and Plan of Allocation treat all Class members equitably relative to each other and will deliver significant relief. Class Plaintiffs and Class Counsel believe this settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

Class Plaintiffs ask the Court to initiate the settlement approval process by entering the proposed Preliminary Approval Order, directing that notice be given in accordance with the proposed Notice Plan, and setting a date for the fairness hearing.

## II.    PROCEDURAL HISTORY

### A.    The *Colgate* Action

On April 26, 2018, Bradley Colgate and Kaytlin McKnight filed a class action complaint against JLI. N.D. Cal. No. 2018-cv-2499 ("*Colgate*"), Dkt. 1. The Court subsequently denied JLI's motion to compel arbitration and largely denied multiple motions to dismiss Plaintiffs' amended complaints. *See Colgate* Dkts. 40, 41, 66, 82, 98, 99, and 139; *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1187 (N.D. Cal. 2018); *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) (*Colgate* Dkt. 139.).

### B.    The MDL

On July 29, 2019, JLI filed a motion to transfer related cases for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. MDL No. 2913, Dkt. 1. On October 2, 2019, the JPML granted JLI's motion and transferred all cases to this Court. MDL No. 2913, Dkt. 144. Following centralization in this Court, plaintiffs filed a consolidated complaint. Dkt. 387. Defendants responded with a motion to dismiss.  *E.g.*, Dkts. 626-629, 632, 645, 647-648, 750, 745, 748, 751, 752/778. On October 23, 2020, the Court again largely denied Defendants' motion to dismiss. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 677 (N.D. Cal. 2020). Plaintiffs filed a second amended consolidated class action complaint on November 12, 2020, Dkt. 1358, and the Court denied Defendants' motion to dismiss that complaint on April 13, 2021, *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 862-63 (N.D. Cal. Apr. 13, 2021).

Discovery began before motions to dismiss were even filed, and continued for years. Defendants produced millions of pages of documents, Plaintiffs obtained information pursuant to interrogatories and stipulations, and conducted over 100 depositions of Defendants' employees and third parties. The parties also engaged in expert discovery, which included reports and depositions from experts on topics including the chemistry and marketing of JUUL products, and the damages claimed by JUUL purchasers.

### C. Class Certification

Following completion of class certification related discovery, Plaintiffs Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. moved to certify four classes of purchasers of JUUL products for purposes of trial on Class Plaintiffs' bellwether claims (under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") and California law. Dkt. 1772-2. On June 28, 2022, the Court granted the motion, appointed those individuals as class representatives, and denied all pending Daubert motions. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2022 WL 2343268 (N.D. Cal. June 28, 2022) ("*Class Cert. Order*"). Under Federal Rule of Civil Procedure 23(a) and 23(b)(3), the Court certified the following Classes:

> • **Nationwide Class**: All persons who purchased, in the United States, a JUUL product.
>
> • **Nationwide Youth Class**: All persons who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase.
>
> • **California Class**: All persons who purchased, in California, a JUUL product.
>
> • **California Youth Class**: All persons who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase.

*Class Cert. Order*, 2022 WL 2343268 at *57-58.

On July 12, 2022, Defendants filed three Rule 23(f) petitions seeking permission to appeal the Court's order granting class certification. *See* Ninth Circuit Case, Nos. 22-80061, 22-80062, and 22-80063. The Ninth Circuit consolidated the cases and on October 24, 2022, granted Defendants permission to appeal. *E.g.,* Ninth Circuit Case No. 22-80063, Dkt. 14.

### D.     Settlement Negotiations

On May 18, 2020, this Court appointed Thomas J. Perrelli as Settlement Master. Dkt. 564. The settlement is the result of extensive discussions under Mr. Perrelli's supervision. Sharp Decl. ¶ 14.

## III.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A.     Legal Standard

At the preliminary approval stage, the Court will direct notice of a proposed settlement to the class if the Court concludes that it will likely be able to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2) and to certify the settlement class. Fed. R. Civ. P. 23(e)(1). To assess the proposal under Rule 23(e)(2), the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the Northern District of California's Guidelines.

### B.     The Settlement Is Fair, Adequate, and Reasonable

#### 1.     Procedural Considerations

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory

committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir. 1998).

### a. Adequate Representation of the Class

The Court previously found that Class Plaintiffs, and their counsel, were adequate. *Class Cert. Order*, 2022 WL 2343268, at *8 ("Based on their thorough and robust advocacy to date, I find that they are adequate."). Nothing has occurred since that time to change this finding. The Class Plaintiffs have zealously represented the interests of JUUL purchasers.[5]

### b. Arm's Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); 4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002). "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

The Class Settlement Agreement was reached on a fully developed record. Class Counsel reviewed millions of pages of documents produced in discovery; obtained voluminous information pursuant to interrogatories and stipulations; took over 100 depositions of Defendants, their employees, and third parties; and proffered and responded to dozens of expert reports. They

---

[5] As set forth in the accompanying proposed preliminary approval order, Class Plaintiffs seek appointment of co-lead counsel Dena Sharp as Class Counsel. Ms. Sharp has coordinated the representation of the class through the litigation and settlement phases of the case.

also litigated a series of motions to dismiss, a motion for class certification, and motions for summary judgment. All parties have spent considerable effort preparing for the upcoming bellwether trials, which involve many of the same factual issues and expert witnesses as the class claims.

The Parties negotiated the settlement under the auspices of Thomas J. Perrelli, the experienced Court-appointed Special Settlement Master. Sharp Decl., ¶ 14. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

### 2.   Substantive Considerations

Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

#### a.   Strength of Plaintiffs' Case and Risks of Continued Litigation

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

1     Although Class Plaintiffs and their counsel have confidence in Class Plaintiffs' claims, a

2   favorable outcome at trial was far from assured. Class Plaintiffs would need to prevail on the

3   interlocutory appeal of this Court's class certification order, maintain class certification through

4   entry of a final judgment, overcome numerous substantive defenses at trial, and succeed on

5   appeal. *Id.* Defendants and their experts were prepared to contest every theory of liability and

6   measure of damages. There are, for example, substantial disputes as to whether JLI's practices

7   were fraudulent, violated RICO, breached an implied warranty and/or were unlawful or unfair.

8   Both sides believed they had persuasive facts to support their positions, and there are limited

9   precedents available regarding the Parties' competing theories. At trial, competing experts would

10   have offered conflicting opinions as whether the marketing and sale of Juul Products was likely to

11   deceive, whether Defendants' actions were fraudulent, whether they acted unfairly, and the proper

12   measure of damages and restitution to Settlement Class Members. *Id.* Settlement Class Members

13   who purchased through JLI's website would also face the risk of being compelled to arbitrate

14   their claims, potentially foreclosing their right to litigate in this or any other Court. *Id.*

15     Further, as widely reported, JLI could file for bankruptcy. *See, e.g., Juul Prepares to Seek*

16   *Financing for Potential Bankruptcy Process*, Wall Street Journal, October 4, 2022.[6] Even if the

17   Class prevailed at every stage, a bankruptcy filing by JLI would likely stay the proceedings

18   against JLI and put recovery at risk. "[C]onsummating this Settlement promptly in order to

19   provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class

20   Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* No. 3:14-cv-

21   01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement Agreement

22   provides for creation of a trust to hold the settlement consideration on behalf of the Class, and

23   also provides for protections in the event of bankruptcy or non-payment.

24

25

26

27
     ────────────────
[6] Available at https://www.wsj.com/articles/juul-prepares-to-seek-financing-for-potential-
28   bankruptcy-process-11664928211

### b.   The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Class

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members will be eligible for payments based on the estimated total amount they paid for Juul Products. As discussed in more detail below, in recognition of the relative strength of the claims of certain Settlement Class Members, under the proposed Plan of Allocation, those who made their initial purchase in the early part of the class period or who made their initial purchase while under age 18 will be eligible for additional compensation. *See* Sharp Decl. Ex. 2 (Plan of Allocation).

The Class Settlement Administrator will provide via email or mail a prepopulated claim form to the approximately 2.7 million Class Members whose identity and purchase data are already known because they purchased Juul Products directly from JLI's website. These Class Members, who the Settlement Administrator has calculated to comprise between 15–30% of the total Class, need only submit the prepopulated form to receive compensation for their direct purchases. Azari Decl. ¶ 17.

Class Members who purchased via other retailers, or who wish to document underage purchases to receive an enhanced payment, may submit a relatively simple claim form, choose their preferred payment method, and certify their claim. *See* Sharp Decl., Ex. 6. The claim form can be completed online, or Settlement Class Members have the option to print and mail it to the Class Settlement Administrator. *Id*. All claimants can submit proof of purchase, but such documentation will not be required for claimants who attest to total purchases below a set dollar amount, as described in the Plan of Allocation. As part of its audit of claims received, the Claims Administrator may ask certain claimants to supplement their submission with proof of purchase. Payments will be made electronically or by mailed check. Azari Decl. ¶ 48.

The entire claim process is designed to be claimant-friendly, efficient, cost-effective, proportional, and reasonable. Pursuant to District Guidelines ¶1(g), Class Counsel estimate, based on their experiences with recent settlements in other comparable consumer and economic loss class actions and the input of the Class Settlement Administrator, that between 200,000 and

9

2,000,000 Class Members (up to 15% of the Class) will receive payments. Sharp Decl., ¶ 17.

The Settlement Fund is non-reversionary. If the Settlement Fund is not entirely consumed by payment of notice and administration expenses, taxes and associated expenses, attorneys' fees and expenses, service awards, and distribution of Class Payments (including a supplemental distribution, if necessary), the Parties will confer as to the disposition of any residual funds.  Any proposal for distribution of these funds will be submitted to the Court for approval. For any proposal other than further distribution to Class Members, the Court must find that the Parties have already exhausted all reasonable efforts to distribute the remaining funds to Settlement Class members.

### c.  Attorneys' Fees and Expenses

Fees and expenses awarded by the Court will be deducted from the Class Settlement Fund. Any reduction in fees will benefit the class, not the Defendants.  As a result and consistent with this District's Guidelines (¶¶ 6, 9), while the Court need not decide fees at this stage, the structure of the settlement ensures that the future fee request poses no obstacle to preliminary approval.

The settlement is not contingent on the award of any particular amount of fees. In their motion for attorney's fees, which will be heard only after Class members have an opportunity to object, Class Counsel will seek an award of attorneys' fees of up to 30% of the total Class Settlement Fund, or $76.5 million (plus 30% of interest accrued), out-of-pocket expenses and expenses up to $6 million. District Guidelines ¶ 6. Class Plaintiffs will also move as part of final approval for the payment of notice and settlement administration costs of up to $7 million.[7] Attorneys may also recover "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). Prior to the objection deadline, Plaintiffs will provide an itemized list of their expenses by category. *See*

---

[7] This figure reflects Epiq's high-end estimate for the cost to complete claims processing and distribution (the most expensive aspects of the settlement administration process) in the event of a high claims rate. Class Counsel will authorize payments to Epiq only for costs reasonably incurred given the volume of claims submitted, while balancing with the need to ensure a robust and effective notice and claims processes.

*Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6. !

### d. Service Awards to Class Representatives

Class Plaintiffs will apply for service awards on behalf of the 86 class representatives, with the aggregate amount of service awards not to exceed $1 million. The service awards are subject to this Court's discretion, and their approval (in whole or in part) is not a material term of the settlement. The specific amount requested for each class representative will vary based on each plaintiff's participation in the litigation, with the bellwether plaintiffs applying for the largest awards, and those who were deposed seeking higher awards than those who were not.

Service awards averaging $11,000 per plaintiff, which altogether would comprise less than 0.4% of the total settlement amount, are reasonable and within the range of approval. *See Alvarez v. Farmers Ins. Exchange*, No. C-06-05778 JCS, 2017 WL 2214585, at *1-2 (N.D. Cal. Jan. 18, 2017) (finding service awards of $10,000 per plaintiff, which in the aggregate comprised 1.8% of the total settlement, to be reasonable); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (finding $10,000 service awards to be "consistent with similar service awards regularly approved in class actions in this district"); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17-18 (N.D. Cal. Sept. 2, 2015) (finding that "service awards of $120,000 and $80,000 are in line with awards in other 'megafund' cases").

As will be further explained at final approval, service awards are appropriate to compensate Class Plaintiffs for the substantial time and effort they spent participating in this litigation, including the risk of negative publicity and notoriety. Sharp Decl., ¶ 15. All class representatives completed a detailed plaintiff fact sheet ("PFS") providing information not only about their purchasing history, but also their employment and educational history, smoking and drug use history, and other personal details. *Id*. Completing the PFS required class representatives to review their records, communications, and purchasing histories. *Id*. They also responded to an interrogatory asking them to describe, in detail, their first experiences using JUUL and seeing

1   JUUL marketing. *Id*. In addition, all class representatives responded to inquiries from their

2   counsel as necessary to complete their factual allegations, participate in discovery, and otherwise

3   remain informed of the progress of the case. *Id*.

4        Nearly all class representatives completed a forensic collection of their documents,

5   including working with a third party to search their social media and phone records. *Id*. Many

6   were deposed at length (including about sensitive personal information that they did not believe

7   was relevant to economic loss claims), with each deposed plaintiff participating in numerous

8   multi-hour preparation sessions. *Id*. The bellwether plaintiffs additionally produced documents,

9   worked with counsel to authorize the production of their medical records from their medical

10  providers, and several were the subject of motion practice concerning personal matters. *Id*.  The

11  bellwether plaintiffs participated in the class certification process and had been conferring with

12  counsel in preparation for trial. *Id*.

13                  **e.   Supplemental Agreements**

14       Rule 23(e)(3) requires disclosure of any "supplemental agreements" that could affect the

15  adequacy of the class representatives or their counsel or the fairness of the settlement. This

16  provision is aimed at "related undertakings that, although seemingly separate, may have

17  influenced the terms of the settlement by trading away possible advantages for the class in return

18  for advantages for others." Fed. R. Civ. P. 23(e), advisory committee notes 2003 amendments.

19       The Appendices to the Class Settlement Agreement contain confidential information

20  regarding JLI's financial condition, and the opt-out threshold at which JLI will have the option of

21  terminating the settlement. Such agreements are not controversial and are typically kept

22  confidential and not filed in the public record. *See, e.g.*, *Thomas v. MagnaChip Semiconductor*

23  *Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017);

24  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving

25  confidential treatment of opt-out threshold "for practical reasons"); *In re Health S. Corp. Sec.*

26  *Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) (The "threshold number of opt outs required to

27  trigger the [termination] provision is typically not disclosed and is kept confidential to encourage

28

1  settlement and discourage third parties from soliciting class members to opt out.").

2  JLI has concurrently but separately agreed to resolve claims brought by individuals who

3  asserted claims for personal injury and by government entities that asserted claims for public

4  nuisance. Under the supervision of Special Master Perrelli, the amount of the Class Settlement

5  Fund was negotiated with co-lead counsel Dena Sharp serving as counsel for the proposed

6  Settlement Class, with the other co-lead counsel representing the interests of personal injury and

7  government entity plaintiffs. Sharp Decl. ¶ 14. Certain of the Class Plaintiffs did assert parallel

8  personal injury claims, and will be eligible to share in the amounts allocated to such claims under

9  the parallel personal injury settlement program. *See generally* Case Management Order No. 16

10 (Implementing JLI Settlement), Dkt. 3714. They will receive no favorable treatment relative to

11 other Settlement Class Members, however. In addition, as noted above, the settlement provides

12 for the creation of a trust to hold assets on behalf of the Class, which benefits the Class, as do the

13 protections the settlement contemplates in the event of bankruptcy or non-payment.

14 **f.   Equitable Treatment of Class Members**

15 All Settlement Class Members are eligible for cash payments. For purchases directly from

16 JLI, Settlement Class Members need only sign and submit a prepopulated claim form with their

17 purchase information. Class Members who purchased Juul Products from other retailers (solely or

18 in addition to their purchases on the JLI website) or who wish to claim the enhancement for

19 purchases made when they were underage must submit a claim form with additional information.

20 This is fair and reasonable because JLI only possesses specific information for purchases made on

21 JLI's website, and those records purport to show that all such purchasers were adults. *See* 4

22 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming

23 process is inevitable" in certain settlements such as those involving "defective consumer products

24 sold over the counter.").

25 Class Members who purchased in the earlier years of the class period or when they were

26 underage will receive enhanced payments (in some cases two to four times the payments to adult

27 class members who purchased later in the class period) to account for two important defenses.

28

First, the defense that there were changes in the relevant warnings and marketing, which the Court noted in its class certification order. *Class Cert. Order*, 2022 WL 2343268 at *30 ("JLI will be free to argue at the appropriate points (on summary judgment, trial, post-trial) that a reasonable consumer who purchased after a certain date could not have been misled by its representations or omissions about its products given the other information in the market or given the addition of the 'black-box' nicotine warning on JUUL's packaging."); *see also In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the comparative weakness of certain claims). Second, the larger payment for those who began purchasing when underage is consistent with Plaintiffs' "full refund" damage theory for underage purchases, rather than the price premium for other purchasers.  These distinctions are also recognized in this Court's certification order. *See id.* at *238 (N.D. Cal. June 28, 2022) (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly illegal). Further, it is rational to provide the enhancements for all purchases by underage buyers, even after the warnings were enhanced or the purchasers became adults, because of the addictive nature of the Juul Products, which would have impeded buyers from changing their habits.

Settlement Class Members who provide proof of purchase (including records from JLI for online purchases) may submit claims for up to $1,600 per year of Juul Product purchases, while their overall settlement payment cannot exceed 150% of their total purchases (or 300% of total purchases if their first purchase occurred when they were under age 18). Claims submitted by Settlement Class Members without proof of purchase will be will be subject to the same limitations on the amount of the settlement payment they can receive relative to the size of their claim, but will be capped at a lower amount than claims supported by proof of purchase.

Capping undocumented claims is a reasonable way of balancing ease of participation with the need to ensure that documented claims are adequately compensated.  *See, e.g., In re Groupon, Inc. Mktg. and Sales Practices Litig.*, No. 11md2238 DMS (RBB), 2012 WL 13175871, at *5

(S.D. Cal. Sep. 28, 2012) (holding requirement of a voucher number or other proof of purchase serves "to ensure that money is fairly distributed for valid claims"). Such a cap is a common feature of consumer class action settlements. *See, e.g.*, *Broomfield v. Craft Brew All., Inc*., No. 17-cv-01027-BLF, 2020 WL 1972505, at *21 (N.D. Cal. Feb. 5, 2020) (approving settlement with cap on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co*., No. 5:17-cv-00603-EJD, 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof of purchase, stating that such a claim process "would be no different than that required after trial."); *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 WL 990495, at *2 (C.D. Cal. Mar. 13, 2013) (approving settlement with claims limited to $10.65 (e.g., 3 bottles) without proof of purchase, while there is no cap on claims with proof of purchase, for example a receipt or product packaging.). The limitation of Settlement Class Members' payments to 150% of the total amount they spent on Juul Products is based on Dr. Singer's estimate of a roughly 50% price premium and the fact that Settlement Class Members would be entitled to treble damages under Class Plaintiffs' RICO claim. In other words, Settlement Class Members' individual recoveries are capped relative to the maximum amount they could have recovered at trial in a best-case scenario.

### g.   The Released Claims Are Identical to Those Pled in the Litigation

The Released Claims include all claims (under any theory or statute) "arising out of or related to any claims for economic loss that have been asserted or could have been asserted in the class actions filed in MDL No. 2913 or JCCP No. 5052 relating to the purchase or use of any JUUL Product by a member of the Settlement Class." Sharp Decl. Ex. 1 at Section 1.29. The Released Claims exclude personal injury claims, claims against the Altria Defendants, and claims based on alleged antitrust violations. The releases extend to matters raised in the litigation but do not prevent Settlement Class Members from pursuing unrelated claims or claims against Altria or other non-released parties. In sum, the released claims are no broader than those pled in the operative complaint or previously certified by the Court.

1

### h.  Past Distributions

2          The information sought by District Guidelines ¶ 11 regarding past distributions in class

3    settlements is provided in the Sharp Declaration. Sharp Decl. Ex. 11.

4          **C.      CERTIFICATION OF THE SETTLEMENT CLASS IS LIKELY**

5          The Settlement Class is cohesive, objectively defined, and likely to be certified upon entry

6    of judgment. *See* Fed. R. Civ. 23(e)(1). Because the Court already certified classes in this matter

7    under Rule 23(b)(3), "the only information ordinarily necessary is whether the proposed

8    settlement calls for any change in the class certified, or of the claims, defenses, or issues

9    regarding which certification was granted." Fed. R. Civ. P. 23 2018 committee notes

10   subdivision(e)(1). The Court must then determine whether the proposed modification alters the

11   reasoning underlying its earlier decision to grant class certification pursuant to Rule 23(b)(3). *See,*

12   *e.g., Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLBx, 2017 WL 1346404, at *3 (S.D. Cal.

13   Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the

14   court's previous class certification analysis). If it does not, the Court need not revisit the Rule

15   23(b) analysis and instead must only "consider[] whether the Settlement is fair, adequate, and

16   reasonable." *De La Torre v. CashCall, Inc.*, No. 08-cv-03174-MEJ, 2017 WL 2670699, at *6

17   (N.D. Cal. June 21, 2017). Plaintiffs must identify and explain any differences between the

18   certified class and the Settlement Class and between the claims in the operative complaint and the

19   Released Claims. *See* District Guidelines ¶ 1(a), (b), (d).

20          There are, at most, minor differences between the proposed Settlement Class and the

21   Classes already certified by this Court. The Court previously certified a nationwide class

22   consisting of all JUUL product purchasers, and a nationwide subclass of all such individuals who

23   made their purchase while under the age of 18, for trial of RICO claims against the Individual

24   Defendants and Altria. The Court also certified an analogous class and subclass of California

25   purchasers asserting claims against JLI and the Individual Defendants for trial of California state

26

27

28

law claims. The Court did not set a class period but instructed plaintiffs to propose one after

meeting and conferring with Defendants. *Class Cert. Order*, 2022 WL 2343268 at *57.[8]

The proposed Settlement Class **membership** is nearly identical to the certified nationwide

class. The only difference is that the Settlement Class includes purchasers of Juul accessories and

other products aside from JUULpods and devices that make up a *de minimis* portion of total

consumer purchases. The only **claims** not already certified are those of non-California purchasers

against JLI, because JLI was not a defendant as to the RICO claim. The Settlement Class also

includes an end date, a practical necessity for administrative purposes. (The certified litigation

classes would also have included an end date).

Certification of the Settlement Class is warranted as the minor differences between the

litigation class and the proposed Settlement Class do not change the Court's previous analysis.

The addition of an end date is appropriate. *See Foster v. Adams & Assocs.*, No. 18-cv-02723-

JSC, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (granting modification to the previously

certified class to specify end date). Adding a limited number of ancillary products to the

definition of JUUL Products likewise does not change the overall common nature of the claims at

issue. Particularly in light of the Court's prior order, certification for settlement purposes under

Rule 23(b)(3) is appropriate.

**Numerosity**. Just as before, there were millions of sales during the proposed class period

and the Court has already found the Classes sufficiently numerous. While a finding of numerosity

does not require a specific number of class members, courts in the Ninth Circuit generally agree

---

[8] The Court limited each certified Class to individuals who purchased their Juul Products from brick and mortar or online retailers and excluded from the Classes any individuals who purchased Juul Products only secondarily from non-retailers. The Court further excluded from Classes: Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. The Court appointed Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. as representatives of the Nationwide Class; C.D., Krauel, and L.B. as representatives of the Nationwide Youth Class; Colgate, C.D., and L.B. as representatives of the California Class; and C.D. and L.B. as representatives of the California Youth Class. *See Class Cert. Order*, 2022 WL 2343268 at *57.

1  that numerosity is satisfied if the class includes forty or more members. *See Class Cert. Order*,

2  2022 WL 2343268 at *3. The Settlement Classes easily meet that threshold. *Id.*

3      **Commonality**. As before, "the class members have suffered the same injury and [] the

4  class's claims depend on 'a common contention . . . of such a nature that it is capable of classwide

5  resolution.'" *Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692, at *2

6  (N.D. Cal. Aug. 3, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131

7  (2011)). The Court already determined that for the Nationwide class, "common questions of fact

8  include the existence of a RICO Enterprise and whether each defendant engaged in a scheme to

9  defraud." *Class Cert. Order*, 2022 WL 2343268, at *3. Similarly, the Court already determined

10  that the California class could be certified to pursue fraud claims, as "common questions include

11  whether a significant number of reasonable consumers would likely have been deceived by

12  defendants' misrepresentations or omissions about JUUL and would have found the

13  misrepresented or omitted information material." *Id.*  The Court likewise found that common

14  questions applied to Class Plaintiffs' common law fraud, unjust enrichment, and implied warranty

15  claim. *Id.* For all the same reasons, common questions exist as to the claims of the Settlement

16  Class.

17      **Typicality.** Class Representatives' claims still stem from the same practice or course of

18  conduct that forms the basis of the class's claims and "seek to recover pursuant to the same legal

19  theories." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see*

20  *also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is

21  typical of the class because it shares 'some common question of law and fact with class members'

22  claims.'") (quoting Newberg on Class Actions § 3:31 (5th ed.)). The Court already held that,

23  although "there are differences among the proposed class representatives and class members, and

24  differences in the 'nicotine journey; of each, such as when they learned about nicotine in JUUL or

25  other e-cigarette products, why they first used or continued to use JUUL or other products

26  containing nicotine, and whether they are addicted to nicotine as a result of their use of JUUL or

27  other nicotine products," no Settlement Class Representative has a "unique injury or is subject to

28

a unique defense that the other class members do not have or are not subject to that would make a particular proposed named plaintiff atypical and an inappropriate class representative." *Class Cert. Order*, 2022 WL 2343268 at *4.

**Adequacy**.  As noted above, the Court already noted the vigorous efforts made by Class Plaintiffs and their counsel to prosecute this case and achieve a settlement. *See Class Cert. Order*, 2022 WL 2343268 at *8 ("Based on their thorough and robust advocacy to date, I find that they are adequate."). No conflicts of interest exist between Class Plaintiffs and class members. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). And adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra,* § 11.28, 11-59.

**Predominance**. Just as before, the questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members. Predominance exists when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)).

The predominance inquiry is simpler in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, adequate, and reasonable. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, the same predominant issues exist for the nationwide claims against JLI that the Court identified in its class certification order: were the consistent and pervasive messaging and omissions about JUUL Products materially deceptive to a reasonable consumer. *See Class Cert. Order*, 2022 WL 2343268 at *9-11.

**Superiority**. Certification of the class for settlement purposes will make substantial refunds available to all purchasers, a far more certain recovery that could be achieved by individual litigation. And in a certification for settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In light of the above and the Court's prior certification of nearly identical litigation classes, the Court should conclude that the Settlement Class is likely to be certified. *See* Fed. R. Civ. 23(e)(1).

## IV.     THE NOTICE PLAN SHOULD BE APPROVED.

A court must "direct notice of a proposed class settlement in a reasonable manner to all class members who would be bound by the proposal." *Massey v. Star Nursing, Inc.*, No. 5:21-cv-01482-EJD, 2022 WL 14151758, at *5 (N.D. Cal. Oct. 24, 2022), citing Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624. Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).

The proposed Notice Plan meets all these requirements. The notice documents use plain, easy to understand language.[9] They advise recipients that they may be affected by a class action lawsuit—which includes the ongoing proceedings against Altria—as well as the settlement of a

---

[9] Attached to the Sharp Declaration as Exhibits 3, 4, 5, 6, 7, and 8 are the proposed Long Form Notice, the summary Postcard Notice (summary email notice will be substantially the same except will direct class members to the website to submit a claim), the claim stimulation Postcard Notice, the template online claim forms for class members with and without direct purchases from JLI, exemplar internet banner ads, and a script for the video to be used for certain online publications.

part of that lawsuit. The Long Form Notice (which will be presented on the website in an easy-to-navigate FAQ) explains that while there is a settlement with some defendants, the litigation will continue against Altria. The Long Form Notice also provides the key terms of the settlements, describes class members' rights and options with respect to the settlement and the proceedings against Altria, and advises how to opt out of any or all of the settlement or litigation classes. With respect to notice of the continuing litigation against Altria, the Long Form Notice contains substantially similar language to what the Court already approved. *See* Dkt. 3421-2 (Plaintiffs' Proposed Amended Long-Form Notice); Dkt. 3426 (Minute Order overruling Defendants' objections to the Class Notice Plan and long-form notice).

Consistent with the notice plan previously approved by the Court, the notice of the settlement and litigation against Altria will be provided directly to known purchasers and by widespread publication. All the notices will link or point to the settlement website, which will include the detailed Long-Form Notice. The settlement website will also include the Class Settlement Agreement, preliminary approval papers, and other relevant Court documents, as well as simple online forms allowing Class Members to make claims or opt out. The Settlement Administrator will also operate a toll-free number for Class Member inquiries.

The Notice Plan constitutes the best notice practicable under the circumstances. Azari Decl. ¶ 10. Accordingly, Plaintiffs respectfully request that this Court approve it.

## V.      THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED

The Class Settlement Agreement will be administered by a well-known, independent claims administrator, Epiq Systems, Inc. After a competitive bidding process, Class Counsel previously selected Epiq to administer the class notice of pendency. Before engaging Epiq to serve as the Settlement Administrator, Class Counsel obtained a cost estimate from Epiq which, in Class Counsel's experience, is reasonable, particularly in light of Epiq's resources and relevant experience in this case and others. Sharp Decl. ¶ 16. Epiq has developed a detailed plan for published and direct notice to class members. *Id.* Epiq has also already begun processing and cleaning the data of JLI's online sales, and was on the cusp of implementing the notice plan at the

time of settlement. Azari Decl. ¶ 11. Class Counsel believes that Epiq is best positioned to administer the settlement because of the institutional knowledge it already has developed, and that choosing another administrator at this time would only lead to duplication of work and additional expense. Sharp Decl. ¶ 16. The declaration of Cameron Aziz, filed herewith, includes Epiq's cost estimates for notice and administration, which will upon approval of the Court be paid from the settlement fund, and addresses all the other issues in the Northern District guidelines including how Epiq will securely handle class member data and its insurance coverage in case of errors. Azari Decl. ¶ 64.

## VI.    THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL

As noted above, Class Plaintiffs and Class Counsel will file motions for the payment of attorneys' fees and expenses before the opt out and objection deadline. Prior to that point, however, significant money will be spent providing notice to the Settlement Class and (to a much lesser degree) administering the trust that holds the settlement funds. Class Plaintiffs estimate that these costs will be as much as $3,000,000 (if approved, the "Initial Class Settlement Administration Payment"), and therefore request that the Court authorize up to $3,000,000 from the Initial Class Settlement Administration Payment to pay for the out-of-pocket expenses incurred in distributing notice and the first year of potential trust administration costs. The class notice costs consist of processing of direct purchase data, digital and print notice, direct email and postcard notice (and related follow-up efforts), initial claims intake, responding to class members inquires, and website management. The trust administration costs relate to Settlement Class's share of taxes and other fees for administering the trust during its first year.[10] These costs are reasonable and necessary to facilitate the settlement and ensure the operation of the trust, which provides the Settlement Class with protections the event of bankruptcy or non-payment. Notice

---

[10] The vast majority of potential trust administration expenses relate to the management of the assets held by the trust. In practice, these expenses will likely either be *de minimis* (because the settlement funds are not invested pending distribution) or repaid because they are much lower than the return the Settlement Class would receive if the funds were invested.

and administration costs will be paid with Class funds based only on costs actually and already incurred.

## VII.   THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the Final Approval Hearing at which the Parties will seek final approval of the proposed Settlement. At the Final Approval Hearing, proponents of the Class Settlement Agreement may explain and describe its terms and conditions and offer argument in support of final approval of the Class Settlement Agreement. Also, Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Class Settlement Agreement. Plaintiffs request the Court issue a schedule establishing dates for mailing notices, submitting timely exclusions, and for the Final Approval Hearing, as set forth in the proposed Order of Preliminary Approval filed herewith.

## VIII.   CONCLUSION

For the foregoing reasons, Class Plaintiffs and Class Counsel respectfully request that the Court enter the proposed order granting preliminary approval, directing that notice to be sent and authorizing the claim process, and setting a date for the fairness hearing.

Dated:  December 19, 2022

Respectfully submitted,

By: /s/ *Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

*Co-Lead Counsel and Proposed Class Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 19, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: <u>/s/ *Dena C. Sharp*</u>
Dena C. Sharp