EXHIBIT 2

<u>**PLAN OF ALLOCATION FOR ECONOMIC**</u>
<u>**LOSS SETTLEMENT AGREEMENT AND**</u>
<u>**RELEASE**</u>

On December 6, 2022, Class Plaintiffs and JLI, on behalf of itself and the Released Parties, entered into the Class Settlement Agreement. The Net Settlement Fund and relief provided for in the Class Settlement Agreement shall be distributed in accordance with this Plan of Allocation as described below, subject to the Court's approval.

**1.    DEFINITIONS**

Except as defined below, capitalized terms in this Plan of Allocation have the same meaning as in the Class Settlement Agreement.

1.1     "Claim" means any claim for payment from the Class Settlement Fund submitted to the Class Settlement Administrator.

1.2     "Claimant" means any individual that submits a Claim.

1.3     "Claimant's Retail Expenditures" means the value of each Claimant's aggregate Retail Expenditures for all of the Claimant's Purchases during the Class Period.

1.4     "Claim Form" means the electronic or paper form used to submit Claims.

1.5     "Class Payment Cap" means, for each Eligible Claimant, an amount equal to 150% of the claimant's Eligible Claimant's Retail Expenditures, except that to the extent the Retail Expenditures include Youth Purchases the Class Payment Cap shall be calculated as 300% of such Purchases.

1.6     "Direct Purchase" means a Purchase made on JLI's website for which Purchase JLI has provided electronic records.

1.7     "Eligible Claim" means a timely Claim that the Class Settlement Administrator has determined falls within the Class—including (1) that the Claim relates to purchases of Juul Products (2) that such purchases occurred before the Execution Date—and should not be rejected as fraudulent, likely fraudulent, insufficiently documented, or for any other reason that Class Settlement Administrator determines should preclude payment of the Claim from the Net Settlement Fund.

1.8     "Eligible Claimant" means an individual who has submitted an Eligible Claim.

1.9     "Eligible Claimant's Retail Expenditures" means each Eligible Claimant's aggregate Retail Expenditures for all the Claimant's Purchases.

1.10    "Eligible Claimant's Points" means each Eligible Claimant's aggregate Points for all the claimant's Purchases.

1.11    "Indirect Purchase" means a Purchase from a retailer other than JLI.

1.12   "JLI Direct Purchase Data" means JLI's electronic records of Direct Purchases made during the Class Period.

1.13   "Points" means a numeric value assigned each Purchase consisting of (1) the Retail Expenditure for each Purchase (2) multiplied by the below weighted values as set forth below:
   1)   Youth Purchase: Retail Expenditure x 4.
   2)   2015-2018 Initiate: Retail Expenditure x 2.
   3)   2019-2022 Initiate: Retail Expenditure x 1.

1.14   "Purchase" means a purchase of a Juul Product at a retail location or online before the Execution Date.

1.15   "Initiate" means the date of a Claimant's first Purchase, categorized as follows:

   1)   "2015-2018 Initiate" means any purchase of Juul Products made by an individual whose first purchase of Juul Products occurred in 2015, 2016, 2017, or 2018, and the individual had attained the age of eighteen (18).
   2)   "2019-2022 Initiate" means any purchase of Juul Products made by an individual whose first purchase of Juul Products occurred in 2019, 2020, 2021, or 2022 through the Execution Date, and the individual had attained the age of eighteen (18).

1.16   "Retail Expenditure" means the a) for Direct Purchases, the amount paid by the Claimant as indicated in the JLI Direct Purchase Data; b) for all other Purchases, the greater of the dollar amount assigned to each Purchase claimed by an Eligible Claimant or the total value of proofs of purchase for Juul Products submitted by an Eligible Claimant and included in Claimant's Eligible Claim. Absent submission of proofs of purchase, the Retail Expenditure for Juul Products shall be calculated as:

   1)   The actual amount paid for Direct Purchases; and

   2)   For all other Purchases, the Retail Expenditure figures are set forth below:[1]
      a.   JUULPods (4 pack): $15.99.
      b.   JUULPods (2 pack): $9.99.
      c.   Starter Kits (Device, USB Charger, 4 pods): $49.99.
      d.   Starter Kits (Device, USB Charger, 2 pods): $44.99
      e.   Device Kit (Device plus USB Charger): $34.99
      f.   Charging Case: $49.99
      g.   USB Charger: $6.00

1.17   "Total Class Points" means the aggregate total of the Points for all Eligible Claims.

1.18   "Youth Purchase" means any purchase of Juul Products made by an individual whose

---

[1] These figures are based on the per-unit suggested retail price of each product, which discovery and the JLI Direct Purchase Data confirmed were the dominant retail prices actually paid.

first purchase of Juul Products occurred prior to such individual attaining the age of eighteen (18).

**2.      SUBMISSION OF CLAIMS**

2.1      The Class Settlement Administrator shall determine whether each Claim constitutes an Eligible Claim.

2.2      Any Settlement Class Member who made a Direct Purchase according to the JLI Direct Sales Data will be given the option to:

　　1)      Make an election to submit a pre-filled Eligible Claim based on the total value of the Claimant's Direct Purchases as indicated in the JLI Direct Purchase Data. The submission of such a Claim shall require the Claimant to provide personally identifying information (including a date of birth) and to elect a method by which the Claimant will receive payment. All of the Claimant's Purchases will be categorized as either a 2015-2018 Initiate Purchase or a 2019-2022 Initiate Purchase based on the JLI Direct Purchase Data. Purchases will be categorized as Youth Purchases by the Administrator; or

　　2)      Submit a Claim based on his or her Direct Purchases as indicated in the JLI Direct Purchase Data plus any Indirect Purchases. As to Indirect Purchases, the Claimant will be required to provide additional information necessary to determine: a) the total amount of the Claimant's Indirect Purchases and b) whether the Claimant's Indirect Purchases count as 2015-2018 Initiate or 2019-2022 Initiate Purchases.

2.3      Any Settlement Class Member who did not make a Direct Purchase according to the JLI Direct Purchase Data shall provide (1) the Claimant's date of birth; (2) the month and year when the Claimant first began purchasing Juul Products; (3) information regarding the Claimant's frequency of purchasing Juul Products; (4) personally identifying information and (5) an election as to how the Claimant would like to receive payment. Frequency information may be provided by responding to the online claim form or by submitting proofs of purchase.

2.4      The Class Settlement Administrator shall follow up with Claimants as necessary to validate their Claims, collect additional information, or otherwise ensure that the Claim qualifies as an Eligible Claim. Any Eligible Claim—aside from portions of claims based on Direct Purchases—where the total value of the Eligible Claimant's Retail Expenditures would exceed $300 shall require proof of purchase, which may be provided in the form of receipts or other documentation demonstrating such purchases. In the event a Claimant submits a Claim for Indirect Purchases exceeding this amount and does not provide such proof of purchase upon request, such claim shall only be honored in an amount equal to $300. Even if supported by JLI Direct Sales Data or proof of purchase, no Retail Expenditure used to assign Points may exceed $1600 per year in which the Claimant claims to have made Purchases.

2.5      The Class Settlement Administrator shall employ industry standard measures to

detect potentially fraudulent claims and may, in its discretion or at Class Counsel's direction, require proof of purchase for additional claims (including claims in an amount lower than the amount set forth herein) in the event the Class Settlement Administrator detects indicia of fraud. The Class Settlement Administrator may also, in its discretion or at Class Counsel's direction, establish processes for auditing claims. Such processes may require *any* Claimant to provide documentation supporting his or her identity, Purchases, date of birth or any other information pertinent to the Claimant's Claim. The Class Settlement Administrator shall consult with Class Counsel regarding potentially fraudulent claims and the process for validating such potentially fraudulent claims.

3. **DISTRIBUTION OF SETTLEMENT FUND**

3.1     Within seven days after the later of when (1) JLI deposits the Settlement Fund into the Class Settlement Account in accordance with paragraph 2.2 of the Class Settlement Agreement or (2) the Court enters an order concerning any Fee and Expense Awards and Service Awards, the Class Settlement Administrator may distribute to Class Counsel from the Class Settlement Fund the amount of (1) any Fee and Expense Award and (2) any Service Awards. The Class Settlement Administrator shall also pay to the Class Settlement Administrator and the Trustee costs for the payment of settlement notice, settlement administration, and Trust administration services not to exceed amounts approved by the Court.

3.2     Prior to the distribution of the Net Settlement Fund, Class Counsel may seek additional payment to the Class Settlement Administrator from the Class Settlement Fund for (1) actual amounts incurred for settlement notice and administration services beyond those previously awarded by the Court and paid to the Class Settlement Administrator and (2) any additional amounts the Class Settlement Administrator anticipates incurring to complete the distribution of the Net Settlement Fund. No party shall have any obligation to pay the Class Settlement Administrator any amounts beyond those approved by the Court.

3.3     After the payment of the items in paragraphs 3.1 and 3.2, the Net Settlement Fund shall be distributed to Eligible Claimants on a *pro rata* basis according to each Eligible Claimants' *pro rata* share of the Total Class Points, taking into account any applicable Class Payment Cap. If, for example, there are 5,000,000 Total Class Points and an Eligible Claimant has Eligible Claims totaling 500 Eligible Claimant's Points, then that Eligible Claimant shall be entitled to a distribution equal to .01% (500 / 5,000,000) of the Net Settlement Fund, which amount will be subject to any applicable Class Payment Cap. Each Eligible Claimant shall receive a distribution of at least $15.00, regardless of the amount of his or her *pro rata* allocation. In no event shall an Eligible Claimant be entitled to a Class Payment that exceeds the claimant's Class Payment Cap.

3.4     Claimants shall have the option to elect the method by which their payment is delivered. At a minimum, Claimants shall be able to elect to receive a paper check, an electronic payment (e.g., Venmo, Paypal), a credit card, or a store payment card

(e.g. Amazon). Claimants who make no election shall be paid by check in the distribution.

**4.     DISTRIBUTION OF UNSPENT FUNDS**

4.1     If any distributable balance remains in the Net Settlement Fund by reason of payments that have not been deposited six months after the start of the initial distribution or because of the limitations set forth in paragraph 3.3, then—subject to paragraph 3.3—that balance shall be redistributed as set forth in paragraph 3.3 among those Eligible Claimants who have received and deposited their initial payment and who would receive at least $15.00 from the redistribution, after payment of any additional costs or fees incurred in administering the Net Settlement Fund for the redistribution. In making such redistribution calculations, the Total Class Points shall be adjusted to include only the Points for Eligible Claimants that (1) have received and deposited their payment during the initial distribution and (2) would receive at least $15.00 from the redistribution, after payment of any additional costs or fees incurred in administering the Net Settlement Fund for the redistribution and (3) have not yet received a payment equal to or in excess of the Class Payment Cap. Points shall also be adjusted to ensure that no Eligible Claimant receives a redistribution that would cause such Claimant's total payments to exceed the claimant's Class Payment Cap. Settlement Class Members receiving a distribution pursuant to this Paragraph shall receive payment via the means elected for the initial payment (if an election was made). To minimize administrative costs, however, redistribution payments to Settlement Class Members who made no such election may be made by either the issuance of a credit card or a store payment card.

4.2     If six months after the redistribution any balance still remains in the Net Settlement Fund as a result of (1) payments that have not been deposited, and Class Counsel has determined that a further redistribution of such balance to Settlement Class Members would be uneconomical or (2) all Eligible Claimants have received distributions in an amount equal to their Class Payment Cap, Class Counsel shall petition the Court to distribute the remaining funds to an appropriate recipient or recipients. There will be no disposition or *cy pres*-type distribution unless and until the Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the Net Settlement Fund to Settlement Class Members.

**5.     ADMINISTRATION**

5.1     All determinations under this Plan of Allocation shall be made by the Class Settlement Administrator, subject to review by Class Counsel and approval by the Court.

5.2     The Class Settlement Administrator and the Parties and their counsel will have no liability to any person in connection with determinations and distributions made substantially in accordance with the terms of the Plan of Allocation.

5.3     After entry of the Final Approval Order and Judgment, Class Counsel will provide monthly status reports to the Court concerning the progress of the settlement administration process.