1

**FILED UNDER SEAL**

2

**REDACTIONS HIGHLIGHTED**

3

[Submitting Counsel on Signature Page]

4

5

6

7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

8

9
10

IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

11

12

This Document Relates to:

13

*San Francisco Unified School District v. JUUL Labs, Inc., et al.*

14
15

Case No. 3:19-cv-08177-WHO

Case No. 19-md-02913-WHO

PLAINTIFF'S MOTION IN LIMINE

**Judge: Hon. William H. Orrick**
**Date:  March 10, 2023**
**Time:  9:30 a.m.**
**Ctrm.: 2**

16
17
18
19
20
21

Plaintiff San Francisco Unified School District ("SFUSD") respectfully submits the following omnibus motion in limine, which seeks to admit certain evidence and exclude other evidence from the April trial. SFUSD has previously filed other motions in limine. As discussed in the stipulated order entered by the Court, the parties are seeking rulings on those motions as well, with the exceptions noted in that order.

22
23
24
25
26
27
28

2748159.1

# TABLE OF CONTENTS

Page

**PLAINTIFF'S MOTIONS IN LIMINE TO ADMIT EVIDENCE**...... **Error! Bookmark not defined.**

**A. The Court should permit limited information about *U.S. v. Philip Morris.*** ............ **Error! Bookmark not defined.**

1. Key rulings in U.S. v. Philip Morris. .................................................................... 2

2. The Philip Morris holdings are relevant to Plaintiff's RICO claim, so the Court should take judicial notice of certain rulings. ....................................................... 3

MOTIONS IN LIMINE TO ADMIT EVIDENCE ................................................ 1

A. The Court should permit limited information about *U.S. v. Philip Morris* ......................................................................................................... 1

i. *1.* ............................................................. *KEY RULINGS IN* U.S. V. PHILIP MORRIS .................................................................................................... 2

ii. *2.* THE PHILIP MORRIS *HOLDINGS ARE RELEVANT TO PLAINTIFF'S RICO CLAIM, SO THE COURT SHOULD TAKE JUDICIAL NOTICE OF CERTAIN RULINGS.* .......... 3

B. The Court should admit the Greenleaf Due Diligence Report. ................... 6

iii. *1.* ............................. *ALTRIA HIRED GREENLEAF TO EVALUATE JLI'S REGULATORY RISKS.* ............................................................................................... 6

iv. *2.* ............. *THE COURT SHOULD ADMIT THE GREENLEAF REPORT FOR THE NON-HEARSAY PURPOSES OF SHOWING ALTRIA'S KNOWLEDGE AND INTENT.* .......... 7

v. *3.* ......................................................... *THE GREENLEAF REPORT IS NOT HEARSAY.* ............................................................................................... 7

vi. *4.* ................................................ *THE GREENLEAF REPORT QUALIFIES AS A BUSINESS RECORD.* ............................................................................................... 8

C. The Court should admit certain testimony excluded by the Special Master. ...................... 9

vii. *1.* .......... *RIAZ VALANI'S TESTIMONY REGARDING CORRESPONDENCE AMONG JLI BOARD MEMBERS IS ADMISSIBLE.* ....................................................... 9

viii. *2.* .................. *SCOTT DUNLAP'S TESTIMONY REGARDING HIS RECOLLECTIONS OF WORKING WITH JLI'S BOARD ARE ADMISSIBLE.* ....................................... 10

ix. *3.* ............ *PRITZKER'S TESTIMONY REGARDING THE NATIONAL YOUTH TOBACCO SURVEY SHOULD NOT BE EXCLUDED.* .......................................................... 12

MOTIONS IN LIMINE TO EXCLUDE EVIDENCE ....................................... 12

D. The Court should exclude from Phase 1 evidence or argument about any diminution in value of Altria's investment in JLI. ......................................... 12

E. The Court should exclude evidence and argument regarding the terms and amounts of JLI's settlements with SFUSD and other government entities. ................................................................................. 14

B.

MOTIONS IN LIMINE TO ADMIT EVIDENCE ................................................ 1

**TABLE OF AUTHORITIES**

Page

A. The Court should permit limited information about *U.S. v. Philip Morris* ............................................................................................... 1

x. *1.* .................................................................*KEY RULINGS IN* U.S. V. PHILIP MORRIS .......................................................................................... 2

xi. *2.THE* PHILIP MORRIS *HOLDINGS ARE RELEVANT TO PLAINTIFF'S RICO CLAIM, SO THE COURT SHOULD TAKE JUDICIAL NOTICE OF CERTAIN RULINGS.* .......... 3

B. The Court should admit the Greenleaf Due Diligence Report. ................... 6

xii. *1.* ..............................*ALTRIA HIRED GREENLEAF TO EVALUATE JLI'S REGULATORY RISKS.* .......................................................................................... 6

xiii. *2.* ............ *THE COURT SHOULD ADMIT THE GREENLEAF REPORT FOR THE NON-HEARSAY PURPOSES OF SHOWING ALTRIA'S KNOWLEDGE AND INTENT.* .......... 7

xiv. *3.* ................................................*THE GREENLEAF REPORT IS NOT HEARSAY.* ................................................................................................ 7

xv. *4.* ................................................*THE GREENLEAF REPORT QUALIFIES AS A BUSINESS RECORD.* .............................................................................................. 8

C. The Court should admit certain testimony excluded by the Special Master. ..................... 9

xvi. *1.* ..........*RIAZ VALANI'S TESTIMONY REGARDING CORRESPONDENCE AMONG JLI BOARD MEMBERS IS ADMISSIBLE.* ................................................. 9

xvii. *2.* .................*SCOTT DUNLAP'S TESTIMONY REGARDING HIS RECOLLECTIONS OF WORKING WITH JLI'S BOARD ARE ADMISSIBLE.* ...................................... 10

xviii. *3.* ...........*PRITZKER'S TESTIMONY REGARDING THE NATIONAL YOUTH TOBACCO SURVEY SHOULD NOT BE EXCLUDED.* ........................................................ 12

MOTIONS IN LIMINE TO EXCLUDE EVIDENCE ....................................... 12

D. The Court should exclude from Phase 1 evidence or argument about any diminution in value of Altria's investment in JLI. ........................................ 12

E. The Court should exclude evidence and argument regarding the terms and amounts of JLI's settlements with SFUSD and other government entities. ................................................................................ 14

**CASES**

*Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986 (8th Cir. 1989)...................................3-4

*Banco Del Atlantico, S.A. v. Stauder*, No. 03-1342, 2005 WL 1925830 (S.D. Ind. Aug. 11, 2005)...........................................................................**Error! Bookmark not defined.**3

*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004)............................................................................... 8

*Belton v. Fibreboard Corp.* 724 F.2d 500 (5th Cir. 1984) .........**Error! Bookmark not defined.**4

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001).................................................................................................................................. 5

*Coach, Inc. v. Citi Trends, Inc.*, No. 17-4774, 2019 WL 6354367 (C.D. Cal. Oct. 23, 2019)...............................................................................**Error! Bookmark not defined.**4

# TABLE OF AUTHORITIES

**Page**

*Davis v. Zurich Am. Ins. Co.,* No. 3:19-CV-04397-WHO, 2021 WL 369538 (N.D. Cal. Feb. 3, 2021)...................................................................**Error! Bookmark not defined.**1

*Fed. Trade Comm. v. Qualcomm Inc.*, 17-220, 2018 WL 6576029 (N.D. Cal. Dec. 13, 2018)............................................................................................................ 8

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ............................................... 3

*In re Cipro Cases I & II*, 61 Cal. 4th 116 (2015) ......................**Error! Bookmark not defined.**3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 12300696, at *2 (N.D. Cal. May 4, 2012)................................................**Error! Bookmark not defined.**5

*Lindsey v. Costco Wholesale Corp.*, 15-CV-03006-WHO, 2016 WL 5815286 (N.D. Cal. Oct. 5, 2016) ...................................................**Error! Bookmark not defined.**0

*Marshall v. Goguen*, -- F. Supp. 3d --, No. CV 21-19-M-DWM, 2022 WL 1641776 (D. Mont. May 24, 2022)............................................................................... 5

*Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971 (9th Cir. 2009) **Error! Bookmark not defined.**5

*Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-1849, 2017 WL 3838097 (N.D. Cal. Sept. 1, 2017) ...................................... **Error! Bookmark not defined.**4-15

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) .......................... 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ..................................... 5

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)..................... 3

*TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 18-153, 2021 WL 6333018 (E.D. Tex. Oct. 18, 2021)..........................................................**Error! Bookmark not defined.**4

*United States v. Johnson*, No. 14-cr-00412-THE, 2015 WL 4747309 (N.D. Cal. Aug. 11, 2015)..........................................................................**Error! Bookmark not defined.**0

*United States v. Park*, No. 08-220, 2008 WL 2338298 (C.D. Cal. May 27, 2008)............. **Error! Bookmark not defined.**5

*United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) ....**Error! Bookmark not defined.**-5

*United States v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68 (D.D.C. 2011) ..........................3-5

*United States v. Raygoza-Garcia*, 902 F.3d 994 (9th Cir. 2018) ................................................. 5

*V5 Techs., LLC v. Switch, Ltd.*, 17-2349, 2021 WL 5283952 (D. Nev. Nov. 10, 2021).............. 8

*Valley Drug co. v. Geneva Pharms., Inc.*, 344 F.3d 1294 (11th Cir. 2003)**Error! Bookmark not defined.**3

*Walden v. Seaworld Parks & Entm't, Inc.*, No. 11-113, 2012 WL 4050176 (E.D. Va. May 31, 2012)................................................................................................................. 8

## STATUTES

# TABLE OF AUTHORITIES

**Page**

18 U.S.C. § 1962(c) ............................................................................................................ 2

18 U.S.C. § 1962(d) ........................................................................................................... 2

## TREATISES

*Burden of proof as to predicate acts in RICO action—Pattern; continuity*, 5B Fed. Proc.,
   L. Ed. § 10:270 ............................................................................................................. 3

## RULES

Fed. R. Civ. P. 54(b) .......................................................................................................... 5

Fed. R. Evid. 201(b) ........................................................................................................... 5

Fed. R. Evid. 403 ................................................................................................................ 5

Fed. R. Evid. 404(a) ........................................................................................................... 5

Fed. R. Evid. 408 .............................................................................................................. 14

Fed. R. Evid. 801(d)(2) ...................................................................................................... 8

Fed. R. Evid. 803(6) ........................................................................................................... 9

## JURY INSTRUCTIONS

CACI 3942 ......................................................................................................................... 13

1

## MOTIONS IN LIMINE TO ADMIT EVIDENCE

2

**A.      The Court should permit limited information about _U.S. v. Philip Morris_.**

3

In _United States vs. Philip Morris USA, Inc._, the U.S. District Court for the District of

4

Columbia held that Altria violated RICO and was likely to do so again. These rulings are directly

5

relevant to SFUSD's RICO claim, specifically to whether Altria has engaged in a "pattern of

6

racketeering activity." Altria argued at summary judgment that "[t]here is no evidence that the

7

Altria Defendants' alleged predicate acts specifically threaten repetition or [to] become a regular

8

way of doing business." (_Altria Defendants' Motion for Summary Judgment_, MDL Dkt. No. 3405,

9

at 34-35). The _Philip Morris_ court's conclusions that Altria violated RICO, conspired to violate

10

RICO, and was likely to violate RICO again, bear directly on that inquiry—and particularly the

11

point about whether this is Altria's "regular way of doing business." Plaintiff is, therefore, asking

12

the Court to take judicial notice of certain legal conclusions, as outlined below.

13

Plaintiff is not invoking _Philip Morris_ out of nowhere. SFUSD referenced _Philip Morris_

14

several times in its complaint, (Amended Complaint, Dkt. No. 9, at 102 n.326; 103 n.330; 138-39,

15

¶ 396; 152 n.533; 182 n.652), and at least two SFUSD experts have cited the case to support their

16

opinions. (_See_ Grunberg Rpt., Ex. 8 to MDL Dkt. No. 2709-8, at 26-28; Prochaska Rpt., Ex. 18 to

17

MDL Dkt. No. 2709-18, at 3, 10 n.26, 12 n.27). But experts and the Court serve different functions

18

regarding this case information. Experts may not give legal conclusions, so they will discuss key

19

factual findings that inform their opinions, such as Philip Morris's extensive use of mailings that

20

targeted numerous minors. _United States v. Philip Morris USA, Inc._, 449 F. Supp. 2d 1, 656-57

21

(D.D.C. 2006), _clarified_, 477 F. Supp. 2d 191 (D.D.C. 2007). Here, this relates to the dubious

22

claim that the enterprise used Altria's database only to identify adult smokers.[1] Another example

23

is Dr. Grunberg's discussion of Altria's efforts to hide the addictive properties of nicotine, (_see_

24

Grunberg Rpt. at 26-28), which ultimately led to the court requiring all Defendants—including

25

Altria—to issue corrective advertising statements. _Philip Morris USA, Inc._, 449 F. Supp. 2d at

26

925-28.

27

[1] K.C. Crosthwaite, who moved from Altria to become JLI's CEO in 2019, testified that ███████

28

███████████████████████████████████████████████████. Ex. A (Crosthwaite 10/7/21 Dep.) at
252:19-256:5.

But while experts may address the factual findings, this Court, through judicial notice, is the only vehicle for relaying important legal conclusions to the jury. Thus, as laid out below, SFUSD is asking the Court to notice certain rulings that bear on the "pattern" element of RICO.

### 1. *Key rulings in* **U.S. v. Philip Morris**

In *Philip Morris*, the court addressed the U.S. government's claim that nine cigarette manufacturers and two trade organizations violated RICO. *Philip Morris*, 449 F. Supp. 2d at 26-27. The claim was based on fifty years of false marketing, including intentionally marketing to youth while denying that intent. *Id.* at 27. The court held that all defendants violated RICO through a fraudulent enterprise under 18 U.S.C. § 1962(c), and conspired to violate RICO under 18 U.S.C. § 1962(d). *Id.* In holding that the defendants violated Section 1962(c), the court wrote:

> [O]ver the course of more than 50 years, Defendants lied, misrepresented, and deceived the American public, including smokers and the young people they avidly sought as "replacement smokers," about the devastating health effects of smoking and environmental tobacco smoke, they suppressed research, they destroyed documents, they manipulated the use of nicotine so as to increase and perpetuate addiction, they distorted the truth about low tar and light cigarettes so as to discourage smokers from quitting, and they abused the legal system in order to achieve their goal—to make money with little, if any, regard for individual illness and suffering, soaring health costs, or the integrity of the legal system.

*Philip Morris*, 449 F. Supp. 2d at 852. Defendants also falsely denied their marketing to youth, claiming that their marketing was not youth-focused, was aimed only at adult smokers, and had no effect on youth smoking. *Id.* at 861-62. The parallels to this case are striking.[2]

The defendants, including Altria, also violated 18 U.S.C. § 1962(d), by conspiring "to use mail and wire transmissions to maximize industry profits by preserving and expanding the market for cigarettes through a scheme to deceive the public." *Id.* at 904.

The court further awarded injunctive relief, determining that the defendants were likely to continue violating RICO. *Id.* at 908-09. The court wrote that "as long as Defendants are in the business of selling and marketing tobacco products, they will have countless 'opportunities' and temptations to take similar unlawful actions in order to maximize their revenues, just as they have done for the past five decades." *Id.* at 909. Among the justifications for granting injunctive relief

---

[2] The *Philip Morris* court also noted that certain flavored cigarettes were "clearly designed to target and entice youth." *Id.* at 864.

was that "Defendants continue to engage in many practices which target youth, and deny that they do so." *Id.* at 912. Accordingly, the court imposed "an array of injunctive measures in order to prevent future violations of RICO." by those defendants. *United States v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68, 72 (D.D.C. 2011), *aff'd*, 686 F.3d 832 (D.C. Cir. 2012). The defendants later sought relief from that injunction, but the court rejected that motion, holding that "Defendants continue to engage in many practices which target youth, and deny that they do so." *Id.* at 75.

### 2.   The **Philip Morris** *holdings are relevant to Plaintiff's RICO claim, so the Court should take judicial notice of certain rulings.*

Plaintiff is requesting that the Court take judicial notice of specific rulings in *Philip Morris*. As detailed below, these rulings bear directly on the "pattern" element of RICO—i.e., whether Altria has engaged in a "pattern of racketeering activity."

To prove a pattern under RICO, a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 993–94 (8th Cir. 1989); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986). "Continuity" can be closed- or open-ended, referring either to a closed period of repeated conduct, or to past conduct that is likely to be repeated (open-ended continuity). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).

As noted, Altria contests SFUSD's ability to prove open-ended or closed-ended continuity. (Dkt. No. 3405 at 34-35). *Philip Morris* is relevant primarily to open-ended continuity. To establish open-ended continuity, a plaintiff must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. *Burden of proof as to predicate acts in RICO action—Pattern; continuity*, 5B Fed. Proc., L. Ed. § 10:270 (footnote omitted). *See also Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (requiring "the threat of continuing activity").

SFUSD, therefore, must show that Altria poses a continuing threat of violating RICO. "[P]roof that a RICO defendant has been involved in multiple criminal schemes [is] highly relevant to the inquiry into the continuity of the defendant's racketeering activity." *Atlas Pile Driving*, 886 F.2d at 994–95. Here, the *Philip Morris* court sat through a **nine-month** trial and then reached

several pertinent legal conclusions, including that Altria violated RICO; conspired to violate RICO; and did so, in part, by marketing to youth and misrepresenting its intentions about doing so. *Philip Morris*, 449 F. Supp. 2d at 27, 852, 861-62. The court then enjoined Altria from further violations, citing Altria's targeting of youth as part of the justification for that decision. *Id.* at 908-09, 912. Later, when Altria sought to have that injunction lifted, the court denied that motion, holding that "Defendants continue to engage in many practices which target youth, and deny that they do so." *Philip Morris*, 787 F. Supp. 2d at 72. These holdings are directly relevant to the "pattern" element. Specifically, they bear on open-ended continuity, supporting the argument that Altria is likely to violate RICO again through targeting youth with nicotine products—i.e., that this is Altria's "regular way of doing business."

Judicial notice provides the best method for the jury to learn the key holdings from *Philip Morris* while allowing the Court to maintain total control over the evidence. Plaintiff proposes that the Court—or Plaintiff's counsel, as the Court prefers—read the following to the jury:

> Altria was previously alleged to be involved in an enterprise that violated RICO related to the sale of traditional cigarettes. In 2006, a federal court in Washington, D.C., held that Altria and several other defendants violated RICO through an unlawful enterprise that marketed cigarettes fraudulently, including to youth; and that the same Defendants conspired to violate RICO. The court then held that the Defendants, including Altria, were likely to violate RICO again in the future, and it put various constraints on the defendants to try to prevent this from happening again. Altria later asked that those constraints be removed, but the court denied that request in 2012 because the threat of future violations remained.

> You may consider this information only in determining whether Altria has engaged in a <u>pattern</u> of racketeering activity. You may not use Altria's past RICO violations as evidence that Altria engaged in racketeering activity with regard to JUUL, or as evidence that Altria caused any harm to SFUSD.

Of course, the precise wording would be up to the Court, but the foregoing message would convey the key *Philip Morris* holdings without being unfairly prejudicial or taking more than approximately one minute of trial time.[3]

---

[3] Plaintiff's counsel in *B.B.* agreed to a stipulation that excluded evidence of judicial findings and opinions in cigarette litigation. The court entered the stipulation, though it left some room for discussion of past litigation, to the extent it was needed to inform testimony. The Court then entered a deeming order, applying those rulings to this case. (Deeming Order, Dkt. No. 3473, at p. 6, MIL No. 9). The primary relevance of *Philip Morris* relates to SFUSD's **RICO claim**—a claim not present in *B.B.* Thus, SFUSD is seeking a limited to exception to the previously agreed to

*Footnote continued on next page*

Judicial notice is appropriate where facts are not subject to reasonable dispute. Fed. R. Evid. 201(b). This includes "undisputed matters of public record, which may include court records available through PACER." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018). Courts may take judicial notice of allegations and arguments in another case, and may also take judicial notice of "judicial acts." *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking judicial notice of what the parties argued in previous cases); *Marshall v. Goguen*, -- F. Supp. 3d --, No. CV 21-19-M-DWM, 2022 WL 1641776, at \*9 (D. Mont. May 24, 2022) (on appeal) (judicially noticing plaintiff's prior convictions for wire fraud, money laundering, and tax evasion in RICO case).

Here, Plaintiff is asking the Court to judicially notice the "judicial acts" of the D.C. District Court. That court held that Altria (and others) violated RICO, and conspired to violate RICO, by marketing tobacco products to youth, among other factors. *Philip Morris*, 449 F. Supp. 2d at 26-27, 852, 861, 904. Further, the court enjoined Altria (and others) from further RICO violations, based on the conclusion that those defendants were likely to violate RICO again. *Id.* at 908-09, 912; *see also Philip Morris*, 787 F. Supp. 2d at 72, 75-77. These conclusions bear directly on the issue of whether Altria engaged in a pattern of racketeering activity.

Altria might claim unfair prejudice under Rule 403, but any prejudice is not "unfair"—after all, Altria committed the prior acts that violated RICO. Plus, any unfair prejudice does not "substantially outweigh" the evidence's high probative value, for reasons laid out above. *See* Fed. R. Evid. 403. Rule 404 is also no barrier to judicial notice. The rule prohibits character evidence "to prove that **on a particular occasion** the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1) (emphasis added). Here, SFUSD is not seeking judicial notice to prove that Altria operated JLI as a fraudulent scheme. Instead, the purpose is to show that Altria's actions in this case are part of a long-standing pattern, which is highly probative as to the likelihood that Altria will repeat this conduct in the future (not on a particular occasion).

prohibition on evidence of past litigation. To the extent that the requested judicial notice falls outside of the Court's previous exception, SFUSD respectfully requests that the Court reconsider that ruling, as Rule 54(b) and the common law permit with regard to interlocutory orders. *See, e.g.*, *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886–87 (9th Cir. 2001); Fed. R. Civ. P. 54(b). SFUSD understands that Altria is also asking this Court to reconsider part of the deeming order, and the Court should consider all such requests on the merits.

1    This Court, therefore, should take judicial notice as outlined above.

2    **B.     The Court should admit the Greenleaf Due Diligence Report.**

3    The Court should admit the report prepared by Greenleaf Health ("Greenleaf Report") (Ex.

4    B) for three independent reasons: (1) it documents Altria's knowledge before investing in JLI; (2)

5    it is not hearsay; and (3) qualifies as a business record.[4]

6    *1.     Altria hired Greenleaf to evaluate JLI's regulatory risks.*

7    In fall 2018, Altria engaged regulatory due diligence consultant Greenleaf Health, LLC to

8    assess the risks of a potential investment in JLI. *See* Ex. C (5/4/21 Blaylock Dep.) at 82:6-9

9    ("Greenleaf was a third-party regulatory consulting firm that we brought in to help us engage in

10   due diligence"). Greenleaf was "in the management discussions asking about [] regulatory matters,"

11   and went "through all the documents that were created in areas that were related to [] regulatory

12   and [] the PMTA process" to "produce[] a summary report of their findings throughout diligence."

13   Ex. C (3/16/21 Blaylock Dep.) at 142:3-145:16, 145:21–146:4.

14   Altria documents confirm that it viewed Greenleaf as part of its due diligence team. *See,*

15   *e.g.,* Ex. D (ALGAT0004995455)

16   Ex. E (5185726030)

17

18   ").

19

20   m. Ex. F (ALGAT0003776808) (

21   );  Ex.  G

22   (ALGAT00004585353) (                               ).



23   On December 13, 2018, Greenleaf submitted its final report, which Altria employees

24   circulated internally. Ex. H (Blaylock Ex. 2406). The report was critical of JLI's handling of youth

25   use, finding in part that: (1) "[t]he attractive technology …, the wide variety of available flavors,

26   and a perception by adolescents and young adults that [JUUL] is 'safe,' may lead to higher initiation

27

28   ─────────────
     [4] This Court has already effective held that the Greenleaf Report is admissible, through its rulings
     overruling Judge Larson's exclusion of certain testimony related to that report. (*See Minute Entry*,
     MDL Dkt. No. 3765; Plaintiff's Objections, Dkt. Nos. 3594, 3617).

rates"; (2) JLI's "business plans are inconsistent with the FDA Commissioner's emphasis on reducing youth initiation and use"; and (3) "a dramatic increase in product availability will almost certainly have a negative impact on FDA's efforts to reduce youth e-cigarette use." *Id*.

### 2. The Court should admit the Greenleaf Report for the non-hearsay purposes of showing Altria's knowledge and intent.

The Greenleaf Report is of singular importance to Plaintiff's case. Altria, a sophisticated company no stranger to litigation, does not typically generate documents detailing these types of thorny issues—unless it is required to. *See* Ex. C (3/16/21 Blaylock Dep. at 150:6-18 (██████████ ████████████████████████████████████████████ ████████████████████████). Due diligence called for a comprehensive assessment of JLI's future relationship with the FDA. The result was a document that Altria would never have created otherwise: a detailed analysis of JLI's flaws and the dramatic effect Altria's investment would have on youth JUUL use. *See* Ex. B (Greenleaf Report) at 3 (noting that JLI has "engaged and may continue to engage in poor FDA regulatory decision-making that may impact Altria's strong reputation."); *id*. at 33 (warning that "there is little evidence that Tree [JLI] will focus meaningful resources on preventing youth initiation and use"). The Greenleaf Report codifies Altria's knowledge at a pivotal time and shows its motives for ignoring Greenleaf's guidance.

It also bears emphasis that some of the most important admissions in the document are predictive, not descriptive; the report is forward-looking about the effects Altria's conduct would have. For example: "[JLI] may continue to engage in poor FDA regulatory decision-making that may impact Altria's strong reputation." Ex. B (Greenleaf Report) at 3. Predictions about the future cannot be true or false; they are not statements of existing fact. The truth of its contents aside, the Greenleaf Report shows that Greenleaf, at Altria's direction, anticipated that an Altria-JLI transaction would worsen the youth vaping epidemic.

### 3. The Greenleaf Report is not hearsay.

The Greenleaf Report is not hearsay because it is a statement "made by the party's agent or employee on a matter within the scope of that relationship." Fed. R. Evid. 801(d)(2). Courts "have concluded that a consultant was a company's agent under FRE 801(d)(2), such that the consultant's

1    statements were admissible as statements of a party-opponent." *Fed. Trade Comm. v. Qualcomm*

2    *Inc.*, 17-220, 2018 WL 6576029, at *2 (N.D. Cal. Dec. 13, 2018) (consultant report admitted under

3    FRE 801(d)(2) when "created for [the defendant] and at [the defendant's] direction"). For example,

4    the Ninth Circuit held that when an outside consultant prepared and delivered a report to the

5    defendant "at [the defendant's] request" after reviewing documents and joining its employees on

6    trips to gather information, "there can be little question that [the consultant] was 'authorized' by

7    [the defendant] to make" the statement. *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d

8    1292, 1306 (9th Cir. 1983).[5]

9         Altria hired Greenleaf to evaluate JLI's regulatory risks, including those posed by youth

10   use, and prepare a report detailing its findings. *See* Ex. I (10/20/21 Murillo Dep.) at 243:21–23

11   ██████████████████████████████████████████████████████████████████████████");

12   Ex. J (6/25/21 Wise Dep.) at 523:25–524:6 (████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████"). Greenleaf reviewed

15   documents produced by JLI for Altria, and it accompanied Altria employees to meetings at JLI. It

16   then provided its assessment to Altria via the Greenleaf Report, which Altria employees circulated

17   internally. The report, which falls precisely within the scope of Altria and Greenleaf's contracted

18   relationship, is not hearsay.

19                    ***4.  The Greenleaf Report qualifies as a business record.***

20         Alternatively, if the Court concludes that the Greenleaf Report is hearsay, it should

21   nevertheless admit it as a business record. A record is not excluded by the rule against hearsay if it

22   was (1) made at or near the time by someone with knowledge; (2) in the course of a regularly

23   conducted business activity; (3) as a regular practice of that activity; (4) as shown by the testimony

24

25   [5] *See also Beck v. Haik*, 377 F.3d 624, 638-40 (6th Cir. 2004) (admitting consultant's statements
     that "dealt directly with the subject matter" of the consultancy and were "expressed during the
     course of that relationship"), *overruled on other grounds*, *Adkins v. Wolever*, 554 F.3d 650, 651
26   (6th Cir. 2009); *Walden v. Seaworld Parks & Entm't, Inc.*, No. 11-113, 2012 WL 4050176, at *2
     (E.D. Va. May 31, 2012) (same, where consultant was "specifically retained … to provide the
27   defendant with a report detailing those issues and proposing corrective actions"); *V5 Techs., LLC
     v. Switch, Ltd.*, 17-2349, 2021 WL 5283952, at *1 (D. Nev. Nov. 10, 2021) (same, where party
28   hired a "consulting company to issue a report concerning the challenges facing its business" and
     granted the consultant access to relevant data,").

1  of the custodian or another qualified witness; and (5) the opponent does not show that the source,

2  method, or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

3       The Greenleaf Report is a business record. The report was of the type typically prepared

4  by Greenleaf. *See* Ex. K (Greenleaf website, Advisory Services page) ("Greenleaf applies vast FDA

5  institutional knowledge to equip investors with the thorough and focused due diligence needed to

6  ensure that decisions and transactions reflect regulatory risk"). There is no indication that the

7  Greenleaf Report lacks trustworthiness. Greenleaf not only had no motive to lie, but in fact had a

8  duty to be fully transparent: Altria hired Greenleaf to be brutally honest about the reputational and

9  financial risks of a potential investment in JLI. And current and former Altria employees endorsed

10 Greenleaf's reputation for trustworthiness. Former Altria Senior Vice President of Regulatory

11 Affairs and current JLI Chief Regulatory Officer Jose Murillo ███████████████████████

12 ████████████████████████████████████████████████████████████

13 ███. Ex. I (10/20/21 Murillo Dep.) at 59:9-14, 61:2-10; Ex. I (10/21/21 Murillo Dep.) at 462:23-

14 463:2. ██████████████████████████████████████████████████

15 ████████████████████████████████████████████ Ex. C (5/4/21

16 Blaylock Dep.) at 84:9–12, 122:2–11; Ex. C (5/5/21 Blaylock Dep.) at 379:19–380:16.

17      Should the Court determine that the Greenleaf Report is hearsay and has any doubt that it

18 is a business record, Plaintiff is prepared to take a one-hour deposition of Greenleaf Health, LLC,

19 in order to confirm that the Greenleaf Report satisfies the FRE 803(6) elements.

20     **C.**    **The Court should admit certain testimony excluded by the Special Master.**

21      SFUSD respectfully requests that this Court review, and then reverse, three rulings by

22 Special Master Larson that wrongfully excluded trial testimony.

23      *1.  Riaz Valani's testimony regarding correspondence among JLI Board members*

24         *is admissible.*

25      At deposition, JLI Director Riaz Valani was shown a 2015 e-mail exchange between himself

and members of (and advisors to) the JLI Board of Directors. In that exchange, Alex Asseily—

26 former JLI Board Observer and Member—████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████

1   ████████████████ Ex. L (Valani Ex. 40106). Valani was then asked to confirm certain

2   portions of that e-mail exchange for the jury. Ex. M (Valani Dep.) at 616:20-617:24.

3       The Special Master erroneously recommended excluding this testimony as hearsay,

4   asserting that the examiner read the contents into the record to elicit testimony about the truth of

5   the matter asserted. This recommendation is flawed and should be rejected.

6       Asseilly's statements in the e-mail are **not** offered for truth of whether tobacco companies

7   are "the shittiest" companies in "the history of business," but for the notice and knowledge of

8   Altria's co-conspirators.[6] Communications showing the JLI Director's notice of the harms caused

9   by the tobacco industry's practices (*e.g.*, targeting youth for nicotine addiction) in 2015 evidences

10  the intent of their enterprise/conspiracy. Offered as evidence of the Directors' notice, neither the

11  contents of the e-mail nor Mr. Valani's related testimony is hearsay. *Lindsey v. Costco Wholesale*

12  *Corp.*, 15-CV-03006-WHO, 2016 WL 5815286, at *4 (N.D. Cal. Oct. 5, 2016) ("As evidence of

13  Costco's notice, the letter is not hearsay.").

14          2.  *Scott Dunlap's testimony regarding his recollections of working with JLI's*
                *Board are admissible.*

15      Scott Dunlap was hired at the end of 2014 as JLI's Chief Marketing Officer (CMO). He was

16  promoted to Chief Operating Officer (COO), reporting directly to the CEO and founder, James M

17  Monsees, and the JLI Board of Directors until his termination in October 2015. At deposition,

18  Dunlap was asked about what he witnessed while working directly with JLI's Board of Directors.

19  ████████████████████████████████████████████████████ Ex. N,

20  (Dunlap Dep.) at 256:2-8. Dunlap was further questioned regarding his recollections of the Board's

21  emphasis on sales:

22      ████████████████████████████████████████
23      ████████████████████████████████████████

---

[6] Separately, Altria objects to the admission of this testimony because of Mr. Asseilly's use of
profanity. Use of mild profanity is not a proper basis for the exclusion of highly relevant
evidence. *See e.g., United States v. Johnson*, No. 14-cr-00412-THE, 2015 WL 4747309, at *11
(N.D. Cal. Aug. 11, 2015) (denying request to exclude statements containing profanity
"[b]elieving that jurors are fully capable of handling limited exposure to profanity"); *see also* Dkt.
No. 3595 at 4 (seeking exclusion of various testimony containing profanity); Dkt. No. 3765
(rejecting that argument and sustaining Special Master's ruling).



*Id.* at 258:6-9; 258:11-13; *see also id.* at 256:24-257:23.

Dunlap expanded on this impression for the jury, from a line of clarifying questions:

Ex. N (Dunlap Dep.) at 257:6-12, 257:14-20.

Special Master Larson excluded all of Dunlap's testimony regarding his impression of the Board's priorities as being part of a line of questioning that contains improper hypotheticals that call for speculation. This ruling errs in two respects.

First, the straightforward question of whether his co-workers prioritized "increasing sales over almost anything else" neither presents a hypothetical nor calls for speculation. This testimony is rationally based on Dunlap's perceptions and experience as JLI's CMO and COO. It was Dunlap's job to advise JLI's Board, attend board meetings, and attend weekly conference calls with the Board. *See, e.g.*, Ex. N (Dunlap Dep.) at 84:19-25; 131:15-132:22. Indeed, Dunlap confirms this specific basis for his testimony. *Id.* at 258:11-13 ("I cannot come up with one conversation where that wasn't the case"). This is classic lay witness testimony, based on first-hand knowledge, and is admissible. *See e.g., Davis v. Zurich Am. Ins. Co.,* No. 3:19-CV-04397-WHO, 2021 WL 369538, at *6 (N.D. Cal. Feb. 3, 2021) (admitting lay witness descriptions of "other employees' work" and impressions of his supervisor's views because they were rationally based on his perceptions and "experience on the job").

Second, the questions at issue are not improper hypotheticals. They were drawn directly from Dunlap's testimony

Ex. N (Dunlap Dep.) at 254:24-255:2. Dunlap testified that ████████████████ ██████████████████████████████████████████████████████████ *Id.* at 255:18-256:8. Dunlap was then asked to clarify that testimony via the above quoted examples of actual—*not hypothetical*—discussions. *See e.g., id* at 256:18-19 ("I would say **my recollection of those discussions** …) (emphasis added). These questions did not call for Dunlap to speculate on any specific board decision, but rather to explain his impression of the Board's priorities and how those priorities would operate in the workplace. These impressions are based on his personal knowledge. To the extent Dunlap's responses could be further clarified for the jury, that is a matter for cross-examination and not a basis for wholesale exclusion. Altria attended Dunlap's deposition and had every opportunity to cross-examine him on these or any other issues.

> 3. *Pritzker's testimony regarding the National Youth Tobacco Survey should not be excluded.*

At deposition, JLI Director Nicholas Pritzker was shown a New York Times article entitled "2018 NYTS Data: Startling Rise in the Youth E-Cigarette Use." Ex. O (Pritzker Ex. 14005). Pritzker then testified that, ████████████████████████████████████████████ ███████████████████. Ex. P (Pritzker Dep.) at 130:13-131:8. Defendant objected to this exhibit and questioning on grounds of hearsay and foundation. These objections should be overruled because the *New York Times* article is not offered for its truth, but as evidence that the result of the 2018 National Youth Tobacco Survey was publicly available. Pritzker's testimony that he "believes [the survey results] were public" between 2013-2017 is made from his own knowledge, and that information is not contained or reflected in the article. As the article is not offered for its truth and Pritzker's testimony does not adopt its contents, Defendant's hearsay and foundation objections should be overruled.

## MOTIONS IN LIMINE TO EXCLUDE EVIDENCE

### D.     The Court should exclude from Phase 1 evidence or argument about any diminution in value of Altria's investment in JLI.

Altria has included on its exhibit list its September 29, 2022 Form 8-K (Ex. Q). In that SEC filing, Altria asserts that the carrying value of its investment in JLI was $450 million—a value that,

1   under the terms of the investment, permitted Altria to be released from its non-compete obligation.

2   Altria's internal valuation of its JLI investment may be relevant in Phase 2, where one factor the

3   jury may consider in determining the amount of punitive damages is Altria's "financial condition."

4   CACI 3942. But such information has no relevance in Phase 1, and it creates a significant risk of

5   wasted time and jury confusion. It should be excluded.

6        Plaintiff asserts three claims against Altria: nuisance, negligence, and RICO. These claims

7   turn on whether Altria's conduct—including its partnership with JLI's Directors, mass distribution

8   of JUUL, efforts to delay regulation of the crucial mint flavor, and efforts to conceal that JUUL

9   was intended to grow the nicotine market, including appealing to youth—caused or exacerbated

10  the youth vaping epidemic in SFUSD's schools. The 2022 market value of Altria's investment does

11  not make any of those facts more or less likely to be true. *See, e.g.*, *Banco Del Atlantico, S.A. v.*

12  *Stauder*, No. 03-1342, 2005 WL 1925830, at *6 (S.D. Ind. Aug. 11, 2005) ("[E]vents that allegedly

13  occurred after 1990 … cannot show that Woods Wire I intended to defraud … when it extended

14  guarantees in 1988 and 1989."); *In re Cipro Cases I & II*, 61 Cal. 4th 116, 158-59 (2015)

15  ("Agreements must be assessed as of the time they are made."); *Valley Drug co. v. Geneva Pharms.,*

16  *Inc.*, 344 F.3d 1294, 1306 (11th Cir. 2003) ("We begin with the proposition that the reasonableness

17  of agreements under the antitrust laws are to be judged at the time the agreements are entered into.").

18       The evidence is also time-wasting and confusing. The value of Altria's investment is not a

19  market price; Altria has not sold its stake in JLI. Rather, it is Altria's own estimate of the asset's

20  value. The jury will have to understand what the number means and how Altria came to it. Moreover,

21  other facts that have only limited relevance, such as background information on the FDA's denial

22  of JLI's PMTA, will take on outsized importance due to their effect on Altria's valuation of JLI.

23  The result will be a sideshow about how much and why the value of Altria's stake has diminished,

24  a dispute divorced from the material facts at issue.

25       Alternatively, if the Court admits this evidence in Phase 1, Plaintiff requests that the Court

26  deny Altria's request for a bifurcated proceeding. Fairness requires that if Altria is permitted to

27  plead poverty, Plaintiffs be permitted to rebut those assertions with the kind of evidence that

28  otherwise would come in only in Phase 2.

**E.** **The Court should exclude evidence and argument regarding the terms and amounts of JLI's settlements with SFUSD and other government entities.**

As an initial matter, Plaintiffs agree that the *fact* of JLI's settlement with SFUSD is admissible to explain JLI's absence from trial to the jury. *See, e.g.*, *TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 18-153, 2021 WL 6333018, at *6 (E.D. Tex. Oct. 18, 2021) ("The Court agrees with TravelPass that it should be permitted to provide a limited statement to the jury that the other hotel chains have settled, as an explanation for their absence at the trial."); *Belton v. Fibreboard Corp.* 724 F.2d 500, 504–05 (5th Cir. 1984) (affirming trial court decision to inform the jury that certain asbestos codefendants settled before trial "for the purpose of explaining why those parties were not in court"). *Cf. Coach, Inc. v. Citi Trends, Inc.*, No. 17-4774, 2019 WL 6354367, at *1 (C.D. Cal. Oct. 23, 2019) (excluding fact of settlement because settling party had never been a defendant, and so "empty chair" issue was not presented). However, the Court should exclude the terms and amount of the settlement because they are irrelevant, unfairly prejudicial, and barred by Rule 408.

To start, Rule 408 precludes Altria from using JLI's settlements to make any arguments about the validity or amount of SFUSD's claims. Fed. R. Evid. 408 ("[Settlement evidence] is not admissible on behalf of any party—either to prove or disprove the validity or amount of a disputed claim"). And, the settlement terms and amounts are not relevant for any other purpose at trial. To the extent that the settlement agreement is necessary to assess post-verdict set-offs, this is a question for the Court, and it does not justify revealing settlement terms or amounts to the jury. *See Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-1849, 2017 WL 3838097, at *5 (N.D. Cal. Sept. 1, 2017) (excluding settlement communications from trial because defendants' theories of relevance went to equitable defenses and attorney's fees—questions for the court, not the jury). Likewise, while the settlement between JLI and SFUSD may be relevant to the potential bias or credibility of JLI-affiliated witnesses, Altria can probe that bias or credibility with the fact of the settlement itself, obviating the need to offer settlement terms or amounts into evidence. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2012 WL 12300696, at *2 (N.D. Cal. May 4, 2012) (admitting only the fact of settlement, not terms or amounts, for cross-examination on credibility).

14

1   While the settlement terms and amounts offer little to no probative value, they will cause

2   prejudice, mislead the jury, and confuse the issues at trial. Settlement evidence invites jurors to

3   make improper inferences—for instance, that JLI, as the settling party, must have been primarily

4   or solely responsible for the harm to SFUSD. *See, e.g.*, *Millenkamp v. Davisco Foods Intern., Inc.*,

5   562 F.3d 971, 980 (9th Cir. 2009) (reversing admission of settlement evidence because it was

6   unduly prejudicial); *Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-1849, 2017 WL

7   3838097, at *5 (N.D. Cal. Sept. 1, 2017) (excluding settlement evidence because it would "muddy

8   the issues to be decided by the jury"). The risk of such prejudice substantially outweighs the

9   minimal probative value of the evidence, and this risk cannot be cured by a limiting instruction.

10  *United States v. Park*, No. 08-220, 2008 WL 2338298, at *7 (C.D. Cal. May 27, 2008) (excluding

11  settlement evidence because a jury instruction alone would "lead to jury questions or confusion").

12  Finally, Altria has indicated that it intends to offer into evidence the settlement agreement

13  between JLI and **other** government entity plaintiffs in this litigation.  This document is inadmissible

14  for all the reasons above, except that it stands even more removed from any relevant issues in this

15  trial. This Court, therefore, should exclude all details about any settlement between any plaintiff

16  and any defendant in this litigation.

17

18

19

20

21

22

23

24

25

26

27

28

15

1    **Dated:** February 10, 2023                Respectfully submitted,

2                                               By: /s/ *Thomas P. Cartmell*

3                                               Thomas P. Cartmell
                                                **WAGSTAFF & CARTMELL**
4                                               4740 Grand Ave., Suite 300
                                                Kansas City, MO 64112
5                                               Telephone:  (816) 701-1100
                                                tcartmell@wcllp.com
6

7                                               By: /s/ *Sarah R. London*

8                                               Sarah R. London
                                                **LIEFF CABRASER HEIMANN &**
9                                               **BERNSTEIN**
                                                275 Battery Street, Fl. 29
10                                              San Francisco, CA 94111
                                                Telephone:  (415) 956-1000
11                                              slondon@lchb.com

12
                                                By: /s/ *Dena C. Sharp*
13                                              Dena C. Sharp
                                                **GIRARD SHARP LLP**
14                                              601 California St., Suite 1400
                                                San Francisco, CA 94108
15                                              Telephone: (415) 981-4800
                                                dsharp@girardsharp.com
16
                                                By: /s/ *Dean Kawamoto*
17                                              Dean Kawamoto
                                                **KELLER ROHRBACK L.L.P.**
18                                              1201 Third Ave., Ste. 3200
                                                Seattle, WA 98101
19                                              Telephone:  (206) 623-1900
                                                dkawamoto@kellerrohrback.com
20
                                                By: /s/ *Ellen Relkin*
21                                              Ellen Relkin
                                                **WEITZ & LUXENBERG**
22                                              700 Broadway
                                                New York, NY 10003
23                                              Telephone: (212) 558-5500
                                                erelkin@weitzlux.com
24

25                                              *Co-Lead Counsel for Plaintiffs*

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on February 10, 2023, I electronically filed the foregoing document

3  with the Clerk of the Court using the CM/ECF system, which will automatically send notification

4  of the filing to all counsel of record.

5

6                                        By: /s/ *Thomas P. Cartmell*

7                                             Thomas P. Cartmell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28