# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| | **JOINT AND CONTESTED PROPOSED JURY INSTRUCTIONS** |

This Document Relates to:

*San Francisco Unified School District v. JUUL Labs, Inc., et al.*

### ALTRIA'S PRELIMINARY STATEMENT

Altria[1] submits these responses and objections to Plaintiff's proposed jury instructions and additional proposed jury instructions subject to the reservations and objections set forth below. Altria does not join in the submission of all of the proposed instructions below but instead agrees to and jointly proposes an instruction only where expressly indicated.

Altria states further that it prepared these responses, edits, and proposed instructions based on the Court's rulings on Altria's motions to dismiss and the Court's other rulings and orders in this litigation. Altria does not attempt to relitigate the issues addressed or implicated by those rulings and orders via these responses, edits, and proposed instructions or to propose edits or additional instructions based on positions the Court previously rejected. Altria does, however, expressly preserve every position it has asserted concerning those issues as well as the positions asserted by other Defendants that Altria has joined and/or incorporated by reference or which

---

[1] *See* ECF No. 3468 (stipulation providing that the four Altria Defendants—Altria Group, Inc., Philip Morris USA Inc., Altria Group Distribution Company, and Altria Client Services LLC—will be treated as single entity solely for purposes of trial in this case).

otherwise apply to the claims against Altria, including but not limited to the positions set forth below and the positions set forth in support of Altria's motions for summary judgment and *Daubert* motions.

Altria reserves the right to amend, supplement, or withdraw these responses, edits, objections and additional proposed instructions, which are based on the current record in the case, and to propose additional jury instructions, including definitional and limiting instructions, based on future events (in this and other cases) including but not limited to the Court's final rulings on the pending motions for summary judgment and pending *Daubert* motions, rulings on motions *in limine* and other pretrial rulings, and rulings during trial, hearings, and any charge conference.

# TABLE OF CONTENTS

**Page**

PRELIMINARY INSTRUCTIONS ........................................................................................... 1

    Duty of Jury ......................................................................................................................... 2

    [Contested, Competing Proposals] Claims and Defenses ................................................... 3

    Corporations ........................................................................................................................ 8

    The Altria Defendants ......................................................................................................... 9

    Burden of Proof ................................................................................................................. 10

    What is Evidence ............................................................................................................... 11

    What is Not Evidence ........................................................................................................ 12

    Evidence for a Limited Purpose ........................................................................................ 13

    Direct and Circumstantial Evidence ................................................................................. 14

    Ruling on Objections ......................................................................................................... 15

    Credibility of Witnesses .................................................................................................... 16

    Implicit Bias ...................................................................................................................... 17

    Video Deposition ............................................................................................................... 19

    Expert Opinion .................................................................................................................. 20

    Food and Drug Administration .......................................................................................... 21

    Conduct of the Jury ........................................................................................................... 22

    Publicity During Trial ....................................................................................................... 24

    No Transcript Available to Jury ........................................................................................ 25

    Taking Notes ..................................................................................................................... 26

    Bench Conferences and Recesses ..................................................................................... 27

    Outline of Trial .................................................................................................................. 28

FINAL INSTRUCTIONS .................................................................................................... 29

    Duty of Jury ....................................................................................................................... 30

    [Contested, Competing Proposals] Claims and Defenses ................................................. 31

    Corporations ...................................................................................................................... 35

    The Altria Defendants ....................................................................................................... 36

    What is Evidence ............................................................................................................... 37

    What is Not Evidence ........................................................................................................ 38

    Evidence for a Limited Purpose ........................................................................................ 39

    Direct and Circumstantial Evidence ................................................................................. 40

**TABLE OF CONTENTS**
(continued)

Page

Credibility of Witnesses ................................................................................................ 41

Implicit Bias ................................................................................................................... 42

Video Depositions .......................................................................................................... 44

Taking Notes .................................................................................................................. 45

Expert Opinion ............................................................................................................... 46

Charts and Summaries Not Received in Evidence ....................................................... 47

Charts and Summaries Received in Evidence .............................................................. 48

Burden of Proof ............................................................................................................. 49

[Contested, Altria-Proposed] Harm Caused by Other Vapor Products ..................... 50

[Contested, Altria-Proposed] Investment Not Grounds for Liability ......................... 52

[Contested, Competing Proposals] Right to Petition the Government ........................ 54

[Contested, Altria-Proposed] Right to Petition the Government – False Statements ....... 59

[Contested, Altria-Proposed] Retailer Duty to Verify Age ......................................... 61

[Contested, Competing Proposals] Public Nuisance – Essential Factual Elements
    [Plaintiff's Proposal] / Public Nuisance – Introduction [Altria's Proposal] ......... 63

[Contested, Altria-Proposed] Public Nuisance – Interference with Public Right ......... 72

[Contested, Altria-Proposed] Public Nuisance – Plaintiff's Alleged Nuisance ............... 75

[Contested, Altria-Proposed] Public Nuisance – Creation .......................................... 77

[Contested, Altria-Proposed] Public Nuisance – Whether Altria Created or
    Contributed ............................................................................................................ 79

[Contested, Altria-Proposed] Duty of Care Required .................................................. 81

[Contested, Altria-Proposed] Public Nuisance -- Causation ....................................... 84

[Contested, Altria-Proposed] Cause in Fact ................................................................ 86

Causation – Substantial Factor ..................................................................................... 87

[Contested, Plaintiff-Proposed] Multiple Causes ........................................................ 88

[Contested, Altria-Proposed] Legal Cause .................................................................. 89

[Contested, Altria-Proposed] Public Nuisance – Altria's Conduct Must Have
    Caused Harm .......................................................................................................... 91

[Contested, Altria-Proposed] Public Nuisance – Injury to Property ........................... 93

[Contested, Competing Proposals] Negligence – Essential Factual Elements ............. 95

Negligence – Basic Standard of Care ........................................................................... 97

[Contested, Altria-Proposed] Duty of Care Required .................................................. 98

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    [Contested, Altria-Proposed] Negligence – Economic Loss.............................. 100

4    [Contested, Altria-Proposed] Duty of Care – No Duty to Control Others..................... 102

5    [Contested, Altria-Proposed] Negligence – Breach of Duty of Care Required ............. 103

     [Contested, Altria-Proposed] Negligence – Claim Limited To Altria's Conduct........... 104
6
     [Contested, Altria-Proposed] Causation ................................................... 105
7    [Contested, Altria-Proposed] Cause In Fact ................................................ 107

8    Causation – Substantial Factor ............................................................ 109

9    [Contested, Plaintiff-Proposed] Causation – Multiple Causes........................................ 110

     [Contested, Altria-Proposed] Legal Cause ....................................................... 111
10
     [Contested, Altria-Proposed] Legal Cause Cannot Be Remote or Indirect ................... 113
11   [Contested, Altria-Proposed] Causation – Time of Misconduct.................................... 115

12   [Contested, Altria-Proposed] Negligence – Liability Limited to Harm Caused............. 117

13   Negligence – Reliance on Good Conduct of Others ........................................ 118

14   RICO – Introduction ...................................................................... 119

     RICO – Conducting the Affairs of An Enterprise – Elements....................................... 120
15
     [Contested, Competing Proposals] RICO – Enterprise................................................ 121
16   RICO – Association with the Enterprise........................................................ 124

17   [Contested, Competing Proposals] RICO – Conducting or Participating in the
         Enterprise .............................................................................. 125
18
     [Contested, Altria-Proposed] RICO Section 1962(c) – Conducting or Participating
19        in Conducting an Enterprise.................................................... 130

20   [Contested, Altria-Proposed] RICO Section 1962(c) -- Corporate Governance ........... 135

21   [Contested, Altria-Proposed] RICO Section 1962(c) – Providing Services to JLI
         Insufficient .......................................................................... 137
22
     Contested, Altria-Proposed] RICO Section 1962(c) – Knowledge About JLI
23        Insufficient .......................................................................... 140

24   [Contested, Altria-Proposed] RICO Section 1962(c) – Influence Over JLI
         Insufficient .......................................................................... 142
25
     [Contested, Altria-Proposed] RICO Section 1962(c) – Desiring to Obtain Control
26        Insufficient .......................................................................... 144

27   [Contested, Altria-Proposed] RICO Section 1962(c) – Employing Former Officers
         or Employees Insufficient ....................................................... 146
28   [Contested, Altria-Proposed] RICO Section 1962(c) – Failure to Stop Illegal
         Activity........................................................................... 148

**TABLE OF CONTENTS**
(continued)

Page

[Contested, Altria-Proposed] RICO Section 1962(c) – "Through" a Pattern of
Racketeering Activity................................................................................. 150

RICO – Pattern of Racketeering .................................................................... 152

RICO – "Racketeering Act" Defined.............................................................. 153

RICO – Predicate Acts Must Be Related ........................................................ 154

[Contested, Competing Proposals] RICO – Predicate Acts Must Demonstrate
Continuity.................................................................................................. 155

[Contested, Altria-Proposed] Predicate Acts Must Be Those Alleged By Plaintiff ....... 157

[Contested, Competing Proposals] RICO – Mail and Wire Fraud – Violation of 18
U.S.C. § 1341 or 18 U.S.C. § 1343 ........................................................... 158

[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Scheme to Defraud .......... 163

[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Specific Intent................. 164

[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Forward Looking
Statements ................................................................................................ 165

[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Good Faith ...................... 166

[Contested, Plaintiff-Proposed] RICO – Mail and Wire Fraud – Vicarious Liability .... 168

RICO – Racketeering Conspiracy – Conspiracy in General ............................................ 170

RICO Section 1962(d) – Violation of 1962(c) Required ................................................. 171

RICO – Racketeering Conspiracy – Elements ................................................................. 172

RICO—Racketeering Conspiracy—Agreement Required ............................................... 173

[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Similar Conduct Does
Not Establish Conspiracy........................................................................... 174

RICO—Racketeering Conspiracy—Knowledge Required............................................... 177

[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Conspiracy Liability
Limited Based on when Altria Joined the Alleged Conspiracy ......................... 178

[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Withdrawal from
Conspiracy ................................................................................................ 181

[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Different Schemes of
Misconduct................................................................................................ 182

[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Altria's Alleged
Involvement............................................................................................... 183

[Contested, Competing Proposals] [Plaintiff-Proposed] RICO – Causation /
[Altria-Proposed] RICO – Injury and Causation ............................................. 186

[Contested, Altria-Proposed] RICO – Injury Requires Concrete Financial Loss ........... 189

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3   [Contested, Altria-Proposed] RICO – Injury Excludes Costs of Governmental
        Functions ................................................................................................ 192

4
5   [Contested, Altria-Proposed] RICO – Injury Excludes Costs Related to Addiction
        and Personal Injury ................................................................................ 194

6   [Contested, Altria-Proposed] RICO – Injury Excludes Third Party Expenditures ......... 197

7   [Contested, Altria-Proposed] RICO – Injury Excludes Costs for Prospective Relief..... 199

8   [Contested, Altria-Proposed] RICO – Causation .............................................. 201

    [Contested, Altria-Proposed] RICO – Cause-in-Fact.......................................... 203

9   [Contested, Altria-Proposed] RICO Mail and Wire Fraud – Reliance ........................ 205

10  [Contested, Altria-Proposed] RICO – Proximate Causation .................................. 208

11  [Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) – Damages Caused by
        Racketeering Activity.............................................................................. 210

12  [Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) – Assigning
13      Responsibility for Damages ...................................................................... 213

    [Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) – Assigning
14      Responsibility Based on Time of Involvement .................................................. 216

15  [Contested, Altria-Proposed] RICO – 18 U.S.C. § 1962(d) – Conspiracy Damages
        Limited to Time of Altria's Membership.......................................................... 218

16
    [Contested, Competing Proposals] Compensatory Damages.................................... 220

17  No Punitive Damages................................................................................ 223

18  Attorney Argument Not Evidence ................................................................. 224

19  Damages – Mitigation .............................................................................. 225

    [Contested, Altria-Proposed] Mitigation – Reasonable Effort.................................. 226

20
    [Contested, Competing Proposals] Punitive Damages – Entitlement............................ 227

21  [Contested, Competing Proposals] Punitive Damages – Amount ............................... 230

22  [Contested, Altria-Proposed] Altria's Financial Condition ..................................... 233

23  [Contested, Altria-Proposed] Limits (Punishment for Harm to Others) ........................ 234

24  [Contested, Altria-Proposed] Punishment Only for Conduct That Harmed Plaintiff ..... 236

    [Contested, Altria-Proposed] Greater Award Than Necessary ................................... 238
25
    [Contested, Altria-Proposed] Compliance with Federal or State Law........................... 239

26  [Contested, Altria-Proposed] Conduct By Anyone Other Than Altria ........................... 241

27  [Contested, Altria-Proposed] Reasonable Relationship................................................. 242

28  [Contested, Altria-Proposed] Mitigating Evidence................................................ 244

**TABLE OF CONTENTS**
**(continued)**

Page

[Contested, Altria-Proposed] Mitigating Evidence – RICO treble damages .................. 246

Duty to Deliberate .............................................................................................................. 248

Consideration of Evidence – Conduct of the Jury ............................................................ 249

Communication with the Court ........................................................................................... 251

Return of Verdict ................................................................................................................. 252

IN-TRIAL INSTRUCTIONS ............................................................................................. 253

Video Deposition ................................................................................................................ 254

Video Corporate Representative Deposition ...................................................................... 255

Use of Interrogatories ......................................................................................................... 256

Expert Work on Multiple Cases ......................................................................................... 257

# PRELIMINARY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Duty of Jury**[2]

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

---

[2] Ninth Cir. Model Civil Instr. 1.3

- 2 -

**[Contested, Competing Proposals] Claims and Defenses**

<u>**Agreed-to language:**</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a lawsuit involving JUUL products. JUUL products are electronic nicotine delivery systems sold under the brand name JUUL. JUUL is manufactured and sold by a company named Juul Labs, Inc., or "JLI." These are tobacco products that contain nicotine, but are not traditional combustible cigarettes. The products work by the user inhaling, which activates a heating element that in turn converts the nicotine solution in the JUUL pod into an aerosol, which can then be inhaled by the user.

The Plaintiff in this case is the San Francisco Unified School District, also referred to as "SFUSD." The Defendants in this case are four related companies referred to collectively as "Altria" or the "Altria Defendants." Those four companies are:

- Altria Group, Inc.;
- Philip Morris USA Inc.;
- Altria Client Services LLC; and
- Altria Group Distribution Company.

<u>**Disputed language:**</u>

The parties disagree on whether the jury should be informed of the settlement. The parties' respective proposals are reflected below:

**PLAINTIFF'S PROPOSAL**

JLI has settled the claims asserted against it and its directors by SFUSD and is not a defendant in this trial. You should not draw any conclusions or inferences of any kind about Altria's liability from the fact that others have settled. The fact that JLI and individuals associated with JLI are not defendants may not be used by you in any way as evidence against any party to this case.

**ALTRIA PROPOSAL**

1    JLI, and individuals associated with JLI, are not defendants in this trial.  You should not

2    draw any conclusions or inferences of any kind about Altria's liability from the fact that these

3    parties are not defendants in this trial.  The fact that JLI and individuals associated with JLI are not

4    defendants may not be used by you in any way as evidence against any party to this case.

5    **Agreed-to language**

6          Plaintiff brings four claims against Altria.  Those are:

7          - Public nuisance;

8          - Negligence;

9          - Violation of the Racketeer Influenced and Corrupt Organizations Act, also known

10           as "RICO"; and

11         - Conspiracy to violate RICO.

12         Later I will explain the legal requirements that Plaintiff must prove for these claims.

13         The Plaintiff has the burden of proving these claims. Altria denies the claims made by

14   SFUSD.  Altria contends that it is not liable for any injuries suffered by SFUSD, and also asserts

15   the affirmative defense of failure to mitigate.  Altria has the burden of proof on this affirmative

16   defense.  Plaintiff denies Altria's affirmative defense.

17   **PLAINTIFF'S POSITION:**

18         The parties agree on the language of this instruction, with one exception: Plaintiff requests

19   that the Court instruct the jury in neutral language that JLI has settled SFUSD's claims against it

20   and its directors. Courts regularly recognize that juries may and should learn the fact that settlement

21   is the reason for a "missing" defendant. *See, e.g.*, *TravelPass Grp., LLC v. Caesars Entm't Corp.*,

22   No. 18-153, 2021 WL 6333018, at *6 (E.D. Tex. Oct. 18, 2021) ("The Court agrees with TravelPass

23   that it should be permitted to provide a limited statement to the jury that the other hotel chains have

24   settled, as an explanation for their absence at the trial."); *Belton v. Fibreboard Corp.* 724 F.2d 500,

25   504–05 (5th Cir. 1984) (affirming trial court decision to inform the jury that certain asbestos

26   codefendants settled before trial "for the purpose of explaining why those parties were not in

27   court"). *Cf. Coach, Inc. v. Citi Trends, Inc.*, No. 17-4774, 2019  WL 6354367, at *1 (C.D. Cal. Oct.

28   23, 2019) (excluding fact of settlement because settling party had never been a defendant, and so

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

1    "empty chair" issue was not presented). It makes sense for the jury to hear that neutral, background

2    fact as part of the Court's general introduction to the case.

3         Two of the cases Altria cites concerned a settlement (or other litigation resolution) with the

4    actual defendants at trial, not "empty chair" former defendants. *See Whitewater W. Indus., Ltd. v.*

5    *Pac. Surf Designs, Inc.*, No. 17-1118, 2019 WL 2211897, at *4 (S.D. Cal. May 22, 2019) (excluding

6    evidence of prior lawsuits by the plaintiff against the defendants that the defendants said was

7    relevant to show "Plaintiff's numerous misrepresentations and intentional misconduct directed

8    towards interfering with Defendants' business practices"); *In re Tesla, Inc. Sec. Litig.*, No. 18-4865,

9    2022 WL 17582008, at *18 (Dec. 7, 2022) (evidence of settlement between SEC and defendants).

10   The only case Altria cites involving former defendants is *RightChoice Managed Car, Inc. v. Hosp.*

11   *Partners, Inc.*, No., 2021 WL 4258748, at *3 (W.D. Mo. Sept. 17, 2021), but that case is

12   distinguishable. The court explained that it reached that result only because the jury would be

13   generally unaware of those former defendants and their role in the tortious scheme. *Id.* at *2 ("The

14   settling Defendants that Plaintiffs seek to inform the jury about settled long before trial; the jury

15   has never seen them so there is no sudden absence at trial that begs for an explanation."). Here, the

16   jury is going to hear all about the misconduct committed by JLI and the individual defendants and

17   wonder why those defendant are not present.

18        Altria's position, as expressed in its MIL, is that the jury will not hear anything about why

19   the JLI Defendants are missing, unless and until Altria, in its sole discretion, elects to reveal that

20   fact as part of its examination of a JLI witness. This approach amplifies the unfair prejudice of

21   concealing the fact of settlement from the jury, because it will convey to the jury that *Plaintiff* is

22   responsible for hiding the fact.

23        If the Court instructs the jury as Plaintiff requests (or otherwise denies Altria's motion in

24   limine to exclude the fact of settlement), Plaintiff does not oppose a jury instruction along the lines

25   of what Altria requests.

26   **ALTRIA'S POSITION:**

27        There is no reason to instruct the jury about the existence of a settlement between Plaintiff

28   and JLI that resulted in the release of JLI and the individual defendants.  This information is not

1  necessary to explain to the jury who the defendant at trial will be or to explain which entities or

2  persons are not defendants at trial.  Plaintiff argues that the settlement is a "neutral, background

3  fact."  To the contrary, telling the jury that JLI settled with Plaintiff would imply to the jury that

4  JLI engaged in wrongdoing and chose to pay Plaintiff as the result.  Because Plaintiff claims that

5  Altria conducted JLI as a RICO enterprise, the suggestion that JLI engaged in wrongdoing would

6  implicate Altria as well.  This "would likely put doubt in the minds of the jury as to the merits of

7  the current case" and "have a significant improper influence on the jury's determination of the

8  issues in this case." *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at

9  \*4 (S.D. Cal. May 22, 2019) (internal quotations omitted).  For this reason alone, the Court should

10 decline to add Plaintiff's proposed instruction regarding settlement.  *See, e.g.*, *In re Tesla, Inc. Sec.*

11 *Litig.*, 2022 WL 17582008, at \*18 (N.D. Cal. Dec. 7, 2022) (evidence of settlement "outweighed

12 by the risk of undue prejudice because a jury could be tempted to find liability."); *RightCHOICE*

13 *Managed Care, Inc. v. Hosp. Partners, Inc.*, 2021 WL 4258747, at \*3 (W.D. Mo. Sept. 17, 2021)

14 (excluding evidence of settlement in case involving conspiracy allegations where admitting such

15 evidence "risks the jury mistakenly inferring that settlements are a concession of liability").

16      Moreover, if the Court tells the jury that JLI "settled the claims asserted against it and its

17 directors by SFUSD," Altria would need to explain the circumstances surrounding the settlement

18 and the claims and allegations against JLI and the individual defendants.  There is no reason to

19 cross that bridge now when a jury instruction that does not mention the settlement would be equally

20 sufficient.  Plaintiff also mischaracterizes Altria's motion *in limine* concerning the settlement,

21 which sensibly asks the Court to preclude Plaintiff from informing the jury about the settlement

22 without first demonstrating that doing so is necessary.  Indeed, it is *Plaintiff* that seeks to have it

23 both ways, asking the Court to allow Plaintiff to tell the jury that JLI settled the claims against JLI

24 and the individual defendants, while simultaneously seeking to exclude in its own motion *in limine*

25 *any* other information concerning the settlement.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 7 -

1

**Corporations**[3]

2      The Altria Defendants in this case are corporations. The fact that a corporation is a party

3   must not influence you in your deliberations or in your verdict. All parties are equal before the law

4   and a corporation is entitled to the same fair and conscientious consideration by you as any party.

5      A corporation is considered to be a person. It can only act through its employees, agents,

6   directors, or officers. Therefore, a corporation is only responsible for the acts of its employees,

7   agents, directors, and officers performed within the scope of authority. An employee, agent,

8   director, or officer is acting within the scope of authority if he or she is engaged in the performance

9   of duties which were expressly or impliedly assigned to them by the corporation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] Ninth Cir. Model Civil Instr. 4.1, 4.2 (modified)

1

**The Altria Defendants**[4]

2    There are four Altria Defendants: Altria Group, Inc.; Philip Morris USA Inc.; Altria Client

3  Services LLC; and Altria Group Distribution Company. The jury instructions and verdict form refer

4  to these entities collectively as "Altria." You may see evidence that discusses one or more of these

5  Altria Defendants individually. In evaluating the evidence against the Altria Defendants, you

6  should treat these four Defendants as if they are a single Defendant. Your verdict must be the same

7  as to all of the Altria Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4] ECF No. 3468 (signed stipulation re Altria Defendants)

1

**Burden of Proof**[5]

2    When a party has the burden of proving any claim or affirmative defense by a preponderance

3 of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

4 defense is more probably true than not true.

5    When a party has the burden of proving any claim or defense by clear and convincing

6 evidence, it means that the party must present evidence that leaves you with a firm belief or

7 conviction that it is highly probable that the factual contentions of the claim or defense are true.

8 This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

9 require proof beyond a reasonable doubt.

10    You should base your decision on all of the evidence, regardless of which party presented

11 it.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5] Ninth Cir. Model Civil Instr. 1.6

**What is Evidence[6]**

The evidence you are to consider in deciding what the facts are consists of:

    1.  the sworn video and live testimony of any witness;

    2.  the exhibits that are admitted into evidence;

    3.  any facts to which the lawyers have agreed; and

    4.  any facts that I have instructed you to accept as proved.

---

[6] Ninth Cir. Model Civil Instr. 1.9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### What is Not Evidence[7]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[7] Ninth Cir. Model Civil Instr. 1.10 (modified)

1

**Evidence for a Limited Purpose**[8]

2        Some evidence may be admitted only for a limited purpose.

3        When I instruct you that an item of evidence has been admitted only for a limited purpose,

4   you may consider it only for that limited purpose, but not for any other purpose.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[8] Ninth Cir. Model Civil Instr. 1.11

1

**Direct and Circumstantial Evidence**[9]

2      Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as

3  testimony by a witness about what that witness personally saw or heard or did. Circumstantial

4  evidence is proof of one or more facts from which you could find another fact. You should consider

5  both kinds of evidence. The law makes no distinction between the weight to be given to either direct

6  or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

7      By way of example, if you wake up in the morning and see that the sidewalk is wet, you

8  may find from that fact that it rained during the night. However, other evidence, such as a turned-

9  on garden hose, may provide a different explanation for the presence of water on the sidewalk.

10  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

11  consider all the evidence in the light of reason, experience, and common sense.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[9] Ninth Cir. Model Civil Instr. 1.12

1

**Ruling on Objections**[10]

2      There are rules of evidence that control what can and cannot be received into evidence.

3  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side

4  thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the

5  objection, the question may be answered or the exhibit received. If I sustain the objection, the

6  question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection

7  to a question, you must ignore the question and must not guess what the answer might have been.

8      Sometimes I may order that evidence be stricken from the record and that you disregard or

9  ignore that evidence. That means when you are deciding the case, you must not consider the stricken

10  evidence for any purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[10] Ninth Cir. Model Civil Instr. 1.14 (modified)

## Credibility of Witnesses[11]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[11] Ninth Cir. Model Civil Instr. 1.14

**Implicit Bias**[12]

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of and others we might not be fully aware of, which is why they are called "implicit" or "unconscious biases." No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions. We look at others, and filter what they say, through the lens of our own personal experience and background. Because we all do this, we often see life – and evaluate evidence – in a way that tends to favor people who are like ourselves or who have had life experience like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors you are being asked to make important decisions in this case. You must:

1. Take the time you need to reflect carefully and thoughtfully about the evidence.

2. Think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion, or sexual orientation, would you still view them, and the evidence, the same way?

3. Listen to one another. You must carefully evaluate the evidence and resist and help each other resist any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions, and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision-making.

4. Resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or

---

[12] *Drakeford et al. v. Capital Benefit, Inc. et al.*, No. 3:20-cv-4161, ECF Nos. 113, 128

unconscious bias.

The law demands that you make a fair decision, based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

**Video Deposition[13]**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You will be shown video-recorded testimony of certain witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[13] Ninth Cir. Model Civil Instr. 2.4

- 19 -

**Expert Opinion**[14]

You will hear testimony from expert witnesses, who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[14] Ninth Cir. Model Civil Instr. 2.13

**Food and Drug Administration**

You will hear evidence mentioning the Food and Drug Administration, or "FDA." The FDA is a federal agency with responsibilities for regulation of tobacco products. Before May 10, 2016, no federal regulations or other requirements applied to the design, development, marketing or sale of JUUL. On May 10, 2016, the FDA issued a rule deeming electronic nicotine delivery systems like JUUL to be tobacco products within FDA's regulatory authority. The FDA required these products to include a minimum nicotine warning beginning in August 2018. The required statement is: "WARNING: This product contains nicotine. Nicotine is an addictive chemical." The FDA did not stop manufacturers from including other warnings as well.

Manufacturers of vapor products are required to submit a Premarket Tobacco Application—referred to as a PMTA—seeking FDA authorization to sell their products. When the FDA deemed vapor products like JUUL to be tobacco products in 2016, it permitted existing vapor products, including JUUL, to remain on the market while manufacturers submitted Premarket Tobacco Applications.

JUUL's PMTA remains pending.

You may hear evidence regarding the standard that FDA applies in deciding whether to authorize a Premarket Tobacco Application, that is, whether to permit a vapor product like JUUL to continue being sold. That standard is referred to as "appropriate for the protection of public health," or "APPH." You may consider evidence regarding the appropriate for the protection of public health standard, but it is not the standard you will apply in deciding whether Altria is liable to Plaintiff in this case. Your decision should be guided by all of the evidence in the case and the instructions that I will give you at the end of the case.

- 21 -

### Conduct of the Jury[15]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including

---

[15] Ninth Cir. Model Civil Instr. 1.15

1   the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to

2   read or hear anything touching on this case in the media, turn away and report it to me as soon as

3   possible.

4          These rules protect each party's right to have this case decided only on evidence that has

5   been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

6   of their testimony is tested through the trial process. If you do any research or investigation outside

7   the courtroom, or gain any information through improper communications, then your verdict may

8   be influenced by inaccurate, incomplete or misleading information that has not been tested by the

9   trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the

10  case based on information not presented in court, you will have denied the parties a fair trial.

11  Remember, you have taken an oath to follow the rules, and it is very important that you follow

12  these rules. A juror who violates these restrictions jeopardizes the fairness of these proceedings. If

13  any juror is exposed to any outside information, please notify the court immediately.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Publicity During Trial**[16]

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. You must disable "push notifications" from any news, media, or social media source on your phone. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

---

[16] Ninth Cir. Model Civil Instr. 1.16 (modified)

**No Transcript Available to Jury**[17]

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

---

[17] Ninth Cir. Model Civil Instr. 1.17

- 25 -

1

**Taking Notes**[18]

2          If you wish, you may take notes to help you remember the evidence. If you do take notes,

3   please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking

4   distract you. When you leave, your notes should be left in the jury room. No one will read your

5   notes.

6          Whether or not you take notes, you should rely on your own memory of the evidence. Notes

7   are only to assist your memory. You should not be overly influenced by your notes or those of other

8   jurors.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[18] Ninth Cir. Model Civil Instr. 1.18

1

**Bench Conferences and Recesses**[19]

2   From time to time during the trial, it may become necessary for me to talk with the attorneys

3   out of the hearing of the jury, either by having a conference at the bench when the jury is present

4   in the courtroom, or by calling a recess. Please understand that while you are waiting, we are

5   working. The purpose of these conferences is not to keep relevant information from you, but to

6   decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and

7   error.

8   Of course, we will do what we can to keep the number and length of these conferences to a

9   minimum. I may not always grant an attorney's request for a conference. Do not consider my

10  granting or denying a request for a conference as any indication of my opinion of the case or of

11  what your verdict should be.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[19] Ninth Cir. Model Civil Instr. 1.20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Outline of Trial**[20]

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The plaintiff will then present evidence, and counsel for the defendants may cross-examine. Then the defendants may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

---

[20] Ninth Cir. Model Civil Instr. 1.21 (modified)

# FINAL INSTRUCTIONS

1

**Duty of Jury**[21]

2      Members of the jury: Now that you have heard all of the evidence, it is my duty to instruct

3 you on the law that applies to this case. A copy of these instructions will be sent to the jury room

4 for you to consult during your deliberations.

5      It is your duty to find the facts from all the evidence in the case. To those facts you will

6 apply the law as I give it to you. You must follow the law as I give it to you whether you agree with

7 it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or

8 sympathy. That means that you must decide the case solely on the evidence before you. You will

9 recall that you took an oath to do so.

10      Please do not read into these instructions, or anything I may say or do, that I have an opinion

11 regarding the evidence or what your verdict should be.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[21] Ninth Cir. Model Civil Instr. 1.4

**[Contested, Competing Proposals] Claims and Defenses**

<u>**Agreed-to language:**</u>

To help you follow the evidence, I will again give you a brief summary of the positions of the parties:

This is a lawsuit involving JUUL products. JUUL products are electronic nicotine delivery systems sold under the brand name JUUL. JUUL is manufactured and sold by a company named Juul Labs, Inc., or "JLI." These are tobacco products that contain nicotine, but are not traditional combustible cigarettes. The products work by the user inhaling, which activates a heating element that in turn converts the nicotine solution in the JUUL pod into an aerosol, which can then be inhaled by the user.

The Plaintiff in this case is the San Francisco Unified School District, also referred to as "SFUSD." The Defendants in this case are four related companies referred to collectively as "Altria" or the "Altria Defendants." Those four companies are:

- Altria Group, Inc.;
- Philip Morris USA Inc.;
- Altria Client Services LLC; and
- Altria Group Distribution Company.

<u>**Disputed language:**</u>

The parties disagree on whether the jury should be informed of the settlement. The parties' respective proposals are reflected below:

**PLAINTIFF'S PROPOSAL**

JLI has settled the claims asserted against it and its directors by SFUSD and is not a defendant in this trial. You should not draw any conclusions or inferences of any kind about Altria's liability from the fact that others have settled. The fact that JLI and individuals associated with JLI are not defendants may not be used by you in any way as evidence against any party to this case.

**ALTRIA PROPOSAL**

- 31 -

1    JLI, and individuals associated with JLI, are not defendants in this trial.  You should not

2    draw any conclusions or inferences of any kind about Altria's liability from the fact that these

3    parties are not defendants in this trial.  The fact that JLI and individuals associated with JLI are not

4    defendants may not be used by you in any way as evidence against any party to this case.

5    **Agreed-to language**

6        Plaintiff brings four claims Altria.  Those are:

7        • Public nuisance;

8        • Negligence;

9        • Violation of the Racketeer Influenced and Corrupt Organizations Act, also known

10           as "RICO"; and

11        • Conspiracy to violate RICO.

12       Later I will explain the legal requirements that Plaintiff must prove for these claims.

13       The Plaintiff has the burden of proving these claims. Altria denies the claims made by

14   SFUSD.  Altria contends that it is not liable for any injuries suffered by SFUSD, and also asserts

15   the affirmative defense of failure to mitigate.  Altria has the burden of proof on this affirmative

16   defense.  Plaintiff denies Altria's affirmative defense.

17   **PLAINTIFF'S POSITION:**

18       The parties agree on the language of this instruction, with one exception: Plaintiffs requests

19   that the Court instruct the jury in neutral language that JLI has settled SFUSD's claims against it

20   and its directors. Courts regularly recognize that juries may and should learn the fact that settlement

21   is the reason for a "missing" defendant. *See, e.g.*, *TravelPass Grp., LLC v. Caesars Entm't Corp.*,

22   No. 18-153, 2021 WL 6333018, at *6 (E.D. Tex. Oct. 18, 2021) ("The Court agrees with TravelPass

23   that it should be permitted to provide a limited statement to the jury that the other hotel chains have

24   settled, as an explanation for their absence at the trial."); *Belton v. Fibreboard Corp.* 724 F.2d 500,

25   504–05 (5th Cir. 1984) (affirming trial court decision to inform the jury that certain asbestos

26   codefendants settled before trial "for the purpose of explaining why those parties were not in

27   court"). *Cf. Coach, Inc. v. Citi Trends, Inc.*, No. 17-4774, 2019  WL 6354367, at *1 (C.D. Cal. Oct.

28   23, 2019) (excluding fact of settlement because settling party had never been a defendant, and so

1   "empty chair" issue was not presented). It makes sense for the jury to hear that neutral, background

2   fact as part of the Court's general introduction to the case.

3        Two of the cases Altria cites concerned a settlement (or other litigation resolution) with the

4   actual defendants at trial, not "empty chair" former defendants. *See Whitewater W. Indus., Ltd. v.*

5   *Pac. Surf Designs, Inc.*, No. 17-1118, 2019 WL 2211897, at \*4 (S.D. Cal. May 22, 2019) (excluding

6   evidence of prior lawsuits by the plaintiff against the defendants that the defendants said was

7   relevant to show "Plaintiff's numerous misrepresentations and intentional misconduct directed

8   towards interfering with Defendants' business practices"); *In re Tesla, Inc. Sec. Litig.*, No. 18-4865,

9   2022 WL 17582008, at \*18 (Dec. 7, 2022) (evidence of settlement between SEC and defendants).

10  The only case Altria cites involving former defendants is *RightChoice Managed Car, Inc. v. Hosp.*

11  *Partners, Inc.*, No., 2021 WL 4258748, at \*3 (W.D. Mo. Sept. 17, 2021), but that case is

12  distinguishable. The court explained that it reached that result only because the jury would be

13  generally unaware of those former defendants and their role in the tortious scheme. *Id.* at \*2 ("The

14  settling Defendants that Plaintiffs seek to inform the jury about settled long before trial; the jury

15  has never seen them so there is no sudden absence at trial that begs for an explanation."). Here, the

16  jury is going to hear all about the misconduct committed by JLI and the individual defendants and

17  wonder why those defendant are not present.

18       Altria's position, as expressed in its MIL, is that the jury will not hear anything about why

19  the JLI Defendants are missing, unless and until Altria, in its sole discretion, elects to reveal that

20  fact as part of its examination of a JLI witness. This approach amplifies the unfair prejudice of

21  concealing the fact of settlement from the jury, because it will convey to the jury that *Plaintiff* is

22  responsible for hiding the fact.

23       If the Court instructs the jury as Plaintiff requests (or otherwise denies Altria's motion in

24  limine to exclude the fact of settlement), Plaintiff does not oppose a jury instruction along the lines

25  of what Altria requests.

26  **ALTRIA'S POSITION**

27       There is no reason to instruct the jury about the existence of a settlement between Plaintiff

28  and JLI that resulted in the release of JLI and the individual defendants.  This information is not

1    necessary to explain to the jury who the defendant at trial will be or to explain which entities or

2    persons are not defendants at trial.  Plaintiff argues that the settlement is a "neutral, background

3    fact."  To the contrary, telling the jury that JLI settled with Plaintiff would imply to the jury that

4    JLI engaged in wrongdoing and chose to pay Plaintiff as the result.  Because Plaintiff claims that

5    Altria conducted JLI as a RICO enterprise, the suggestion that JLI engaged in wrongdoing would

6    implicate Altria as well.  This "would likely put doubt in the minds of the jury as to the merits of

7    the current case" and "have a significant improper influence on the jury's determination of the

8    issues in this case."  *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at

9    *4 (S.D. Cal. May 22, 2019) (internal quotations omitted).  For this reason alone, the Court should

10   decline to add Plaintiff's proposed instruction regarding settlement.  *See, e.g.*, *In re Tesla, Inc. Sec.*

11   *Litig.*, 2022 WL 17582008, at *18 (N.D. Cal. Dec. 7, 2022) (evidence of settlement "outweighed

12   by the risk of undue prejudice because a jury could be tempted to find liability."); *RightCHOICE*

13   *Managed Care, Inc. v. Hosp. Partners, Inc.*, 2021 WL 4258747, at *3 (W.D. Mo. Sept. 17, 2021)

14   (excluding evidence of settlement in case involving conspiracy allegations where admitting such

15   evidence "risks the jury mistakenly inferring that settlements are a concession of liability").

16          Moreover, if the Court tells the jury that JLI "settled the claims asserted against it and its

17   directors by SFUSD," Altria would need to explain the circumstances surrounding the settlement

18   and the claims and allegations against JLI and the individual defendants.  There is no reason to

19   cross that bridge now when a jury instruction that does not mention the settlement would be equally

20   sufficient.  Plaintiff also mischaracterizes Altria's motion *in limine* concerning the settlement,

21   which sensibly asks the Court to preclude Plaintiff from informing the jury about the settlement

22   without first demonstrating that doing so is necessary.  Indeed, it is *Plaintiff* that seeks to have it

23   both ways, asking the Court to allow Plaintiff to tell the jury that JLI settled the claims against JLI

24   and the individual defendants, while simultaneously seeking to exclude in its own motion *in limine*

25   *any* other information concerning the settlement.

26

27

28

1

## Corporations[22]

2      The Altria Defendants in this case are corporations. The fact that a corporation is a party

3  must not influence you in your deliberations or in your verdict. All parties are equal before the law,

4  and a corporation is entitled to the same fair and conscientious consideration by you as any party.

5      A corporation is considered to be a person. It can only act through its employees, agents,

6  directors, or officers. Therefore, a corporation is only responsible for the acts of its employees,

7  agents, directors, and officers performed within the scope of authority. An employee, agent,

8  director, or officer is acting within the scope of authority if he or she is engaged in the performance

9  of duties which were expressly or impliedly assigned to that person by the corporation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[22] Ninth Cir. Model Civil Instr. 4.1, 4.2 (modified)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**The Altria Defendants**[23]

There are four Altria Defendants: Altria Group, Inc.; Philip Morris USA Inc.; Altria Client Services LLC; and Altria Group Distribution Company. The jury instructions and verdict form refer to these entities collectively as "Altria." You have seen evidence that discusses one or more of these Altria Defendants individually. In evaluating the claims against the Altria Defendants, you should treat these four Defendants as if they are a single Defendant. Your verdict must be the same as to all of the Altria Defendants.

---

[23] Doc. 3468 (signed stipulation re Altria Defendants)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**What is Evidence**[24]

The evidence you are to consider in deciding what the facts are consists of:

    1.  the sworn video and live testimony of any witness;

    2.  the exhibits that are admitted into evidence;

    3.  any facts to which the lawyers have agreed; and

    4.  any facts that I have instructed you to accept as proved.

---

[24] Ninth Cir. Model Civil Instr. 1.9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**What is Not Evidence**[25]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[25] Ninth Cir. Model Civil Instr. 1.10 (modified)

1

**Evidence for a Limited Purpose**[26]

2   Some evidence may have been admitted only for a limited purpose.

3   When I instruct you that an item of evidence has been admitted only for a limited purpose,

4 you must consider it only for that limited purpose and not for any other purpose.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[26] Ninth Cir. Model Civil Instr. 1.11 (modified)

### Direct and Circumstantial Evidence[27]

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

---

[27] Ninth Cir. Model Civil Instr. 1.12

**Credibility of Witnesses**[28]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[28] Ninth Cir. Model Civil Instr. 1.14

**Implicit Bias**[29]

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of and others we might not be fully aware of, which is why they are called "implicit" or "unconscious biases." No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions. We look at others, and filter what they say, through the lens of our own personal experience and background. Because we all do this, we often see life – and evaluate evidence – in a way that tends to favor people who are like ourselves or who have had life experience like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors you are being asked to make important decisions in this case. You must:

1. Take the time you need to reflect carefully and thoughtfully about the evidence.

2. Think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion, or sexual orientation, would you still view them, and the evidence, the same way?

3. Listen to one another. You must carefully evaluate the evidence and resist and help each other resist any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions, and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision-making.

4. Resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or

---

[29] *Drakeford et al. v. Capital Benefit, Inc. et al.*, No. 3:20-cv-4161, ECF Nos. 113, 128

1    unconscious bias.

2         The law demands that you make a fair decision, based solely on the evidence, your

3    individual evaluations of that evidence, your reason and common sense, and these instructions.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 43 -

1

**Video Depositions**[30]

2          A deposition is the sworn testimony of a witness taken before trial. The witness is placed

3    under oath to tell the truth and lawyers for each party may ask questions. The questions and answers

4    are recorded.

5          You have been shown video-recorded testimony of certain witnesses. Insofar as possible,

6    you should consider deposition testimony, presented to you in court in lieu of live testimony, in the

7    same way as if the witness had been present to testify.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[30] Ninth Cir. Model Civil Instr. 2.4

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Taking Notes**[31]

You may have taken notes to help you remember the evidence. If you did take notes, please keep them to yourself until you go to the jury room to decide the case. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

---

[31] Ninth Cir. Model Civil Instr. 1.18 (modified)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Expert Opinion**[32]

You have heard testimony from expert witnesses, who testified to opinions and the reasons for their opinions. This opinion testimony was allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[32] Ninth Cir. Model Civil Instr. 2.13

1

**Charts and Summaries Not Received in Evidence**[33]

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[33] Ninth Cir. Model Civil Instr. 2.14

**Charts and Summaries Received in Evidence**[34]

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. These charts and summaries were admitted to prove the content of voluminous materials that cannot be conveniently examined in court, and as such, you should treat these charts and summaries as you would any other evidence. However, charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

---
[34] Ninth Cir. Model Civil Instr. 2.15 (modified)

1

**Burden of Proof**[35]

2          When a party has the burden of proving any claim or affirmative defense by a preponderance

3   of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

4   defense is more probably true than not true.

5          When a party has the burden of proving any claim or defense by clear and convincing

6   evidence, it means that the party must present evidence that leaves you with a firm belief or

7   conviction that it is highly probable that the factual contentions of the claim or defense are true.

8   This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

9   require proof beyond a reasonable doubt.

10          You should base your decision on all of the evidence, regardless of which party presented

11   it.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____

[35] Ninth Cir. Model Civil Instr. 1.6, 1.7

**[Contested, Altria-Proposed] Harm Caused by Other Vapor Products**

**ALTRIA'S PROPOSAL:**

Plaintiff's allegations are based on JUUL products.  Altria is not liable for injuries or harm that resulted from any other vapor products manufactured by any other company.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with the causation requirement that Plaintiff must meet to establish each of the Plaintiff's claims.  *See, e.g.*, *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff must prove factual causation, which requires proving that a defendant's conduct was a substantial factor in bringing about the nuisance.  Additionally, a plaintiff must establish that the defendant's wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate causation.") (internal cites omitted); *Union Pac. R.R. Co. v. Ameron Pole Prods., LLC*, 43 Cal. App. 5th 974, 980 (2019) ("To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury."); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires proximate causation).  To the extent that Plaintiff seeks to impose liability based on injuries or harm that was caused by other vapor products, any connection between the Plaintiff's alleged harm and Altria's conduct would be too remote and indirect to establish proximate causation.  *See, e.g.*, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged" and cannot be "too remote, purely contingent, or indirect") (citations and quotations omitted).  Moreover, vapor products were available and being used before JUUL products were introduced.  Plaintiff's argument that it plans to offer evidence and ask the jury to impose liability based on "'copycat' products such as 'Puff Bar'" only confirms that this instruction  is necessary to ensure that the jury does not award damages for harm that could not have been caused by Altria.

**PLAINTIFF'S POSITION:**

Plaintiff objects to Altria's proposed instruction as legally and factually inaccurate. Altria is liable for the foreseeable consequences of its actions. *In re JUUL Labs, Inc., Mktg., Sales Pracs.,*

1    & *Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 664-65 (N.D. Cal. 2020) (holding that intervening acts

2    do not break the chain of causation if they are foreseeable). Here, Plaintiff's proof will show that

3    the JUUL-caused and Altria-abetted youth vaping epidemic in later stages manifested through

4    "copycat" products such as "Puff Bar." *E.g.*, Cutler 9/0/21 Rpt. at 51-54; Halpern-Felsher SFUSD

5    Rpt. at 66-67 (discussing similarities between JUUL and Puff Bar); Prochaska 9/20/21 Rpt. at 34-

6    35 (same). Thus, the jury should decide whether it was foreseeable that Altria's contribution to a

7    youth vaping epidemic would lead to harm to SFUSD from the general use of ENDS products,

8    including but not limited to JUUL products.

9        Altria's citations simply address general principles of law indicating that there must be a

10   connection between a defendant's actions and the harm. That concept is addressed by the pattern

11   instructions regarding causation.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **[Contested, Altria-Proposed] Investment Not Grounds for Liability**

2    **ALTRIA'S PROPOSAL:**

3    It is not a violation of the law to invest in, or own stock in, a corporation. Moreover, mere

4    investment and/or ownership of corporate stocks does not make the investor liable for the actions

5    of the corporation that received the investment.  Therefore, Plaintiff cannot establish claims against

6    Altria based on the mere fact that Altria invested in or owned stock in JLI.

7    **ALTRIA'S POSITION:**

8    This instruction accurately states the law.  *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S.

9    468, 474 (2003) (holding that a shareholder does not acquire ownership over a company or its assets

10   by virtue of owning that company's shares); *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998)

11   (shareholders are not liable absent exceptional circumstances such as misuse of the corporate form);

12   *AV Media Pte. Ltd. v. Promounts*, 2008 WL 11337209, at *6 (C.D. Cal. July 1, 2008) (refusing to

13   hold shareholders personally liable despite plaintiff's allegations that the corporation was merely

14   the alter ego of those shareholders); 114 Am. Jur. Proof of Facts 3d 403 ("A fundamental principle

15   of Anglo-American law is that a business operating as a legally recognized entity is separate and

16   distinct from its owners. . . . The corporate form was created to allow shareholders to invest without

17   incurring personal liability for the acts of the corporation.").

18   This instruction is also necessary and appropriate given Plaintiff's allegations and theories

19   of liability in this case.  For example, Plaintiff intends to present evidence that Altria purchased a

20   35% interest in JLI in December 2018. This instruction is needed to make clear to the jury that

21   Altria's investment in a separate corporation such as JLI is not grounds for imposing liability

22   against Altria.  Without such an instruction, this limitation will not be obvious to and might not be

23   understood by the jury.

24   Plaintiff's position proposes additional language that the Court should include if it gives

25   Altria's proposed instruction.  The specific language proposed by Plaintiff, however, would

26   incorrectly and improperly suggest to the jury that Altria's investment can be the basis of

27   liability.  Accordingly, to the extent the Court believes that some additional language should be

28   included in Altria's proposed instruction, Altria submits that the following language should be used

1    instead:

2           While you may consider evidence that Altria invested in JLI in considering
3           Plaintiff's claims and Altria's defenses, you may not find liability based solely on
       Altria's investment in JLI.
4
     This language would be sufficient to address any concerns Plaintiff has and is more consistent with
5
     governing authority than the additional language Plaintiff proposes.
6
     **PLAINTIFF'S POSITION:**
7
           Investments can trigger liability if the elements of a claim are met, and can be relevant
8
     evidence of knowledge and intent regardless. None of Altria's cited authorities state that a party
9
     may never be held liable based on an investment.
10
           If this instruction is given, Plaintiff requests the following language be included:
11
           While Plaintiff cannot establish claims against Altria based on nothing more than
12           the fact Altria that invested in JLI, the fact that Altria invested in JLI may support
       one or more of Plaintiff's claims in light of other facts that were proven during trial.
13
           Altria's argument also reveals why this instruction would be confusing to the jury. Plaintiff
14
     does not intend to argue that Altria should be held liable solely because of its investment in JLI,
15
     but that investment (and the potential for it beginning in 2017) is part of the evidence as to how
16
     Altria was able to play some part in directing the affairs of JLI. *See Reves v. Ernst & Young*, 507
17
     U.S. 170, 179 (1993). In addition, the investment, by contributing to Altria's influence over JLI,
18
     supports Plaintiff's negligence and nuisance claims, and provides factual support for the showings
19
     of knowledge and intent in support of those claims. Altria's proposed instruction could confuse the
20
     jury into believing that they could not consider the investment for any purpose, when it is relevant
21
     to important issues in the case.
22

23

24

25

26

27

28

1       **[Contested, Competing Proposals] Right to Petition the Government**

2  **PLAINTIFF'S PROPOSAL:**

3           The Altria Defendants have the right under the First Amendment to the United States

4  Constitution to petition, provide information, and express their views to their government on issues

5  of policy and legislation concerning e-vapor use and health. Advocacy efforts, government

6  submissions, and similar communications with the government are protected by the First

7  Amendment to the United States Constitution. However, there is no First Amendment right to make

8  intentional misrepresentations in an attempt to mislead a federal regulatory agency. Accordingly,

9  while you may not base any findings of liability on any genuine petitioning or lobbying effort, you

10  may base findings of liability on the communication of intentionally false information to the

11  government. In addition, whether or not petitioning or lobbying was truthful or false, you may

12  consider such efforts as evidence of a defendant's knowledge, motive, and intent.

13  **ALTRIA'S PROPOSAL:**

14           Altria has the right under the First Amendment to the United States Constitution to petition,

15  provide information, and express its views to the government on issues of policy and legislation

16  concerning vapor product use and health. Advocacy efforts, government submissions, and similar

17  communications with the government are protected by the First Amendment to the United States

18  Constitution. You may not base any findings of liability on any petitioning or lobbying effort of

19  Altria or on any statements made by Altria to any federal, state, or local legislative, executive, or

20  regulatory body, including Congress. In addition, you may not impose liability on Altria based upon

21  an attempt to influence government action or to influence the passage or enforcement of laws or

22  adoption of federal regulatory policies.

23  **PLAINTIFF'S POSITION:**

24           Plaintiff's proposed instruction is an accurate statement of the law. Conversely, Altria's

25  instruction treats *Noerr-Pennington* immunity as absolute and fails to acknowledge that fraud on

26  and adjudicatory body is not protected conduct. *See, e.g., Kottle v. Nw. Kidney Ctrs.*, 146 F.3d

27  1056, 1060-62 (9th Cir. 1998) (sham exception applies where defendant engages in intentional

28  fraud on an administrative agency acting in an adjudicatory capacity); *Clipper Express v. Rocky*

1    *Mtn. Motor Tariff Bur., Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982) ("[T]he supplying of fraudulent

2    information thus threatens the fair and impartial functioning of these agencies and does not deserve

3    immunity from the antitrust laws."). Accordingly, whether Altria's conduct triggers liability is a

4    jury question. *In re JUUL*, 497 F. Supp. 3d 552, 613-14 (N.D. Cal. 2020); *In re Juul*, No. 19-2913,

5    2022 WL 1601418, at *3-6, 18-19 (N.D. Cal. Apr. 22, 2022). The instruction also fails to recognize

6    that lobbying activity may be relevant as to Altria's knowledge, motive, and intent. *See JUUL*, 497

7    F. Supp. 3d at 614-15.

8        The Court should reject the argument that the sham exception is inapplicable simply

9    because Altria genuinely sought to influence the government—as this Court already recognized.

10   *JUUL Labs*, 497 F. Supp. 3d at 614 ("Whether or not an otherwise non-actionable statement falls

11   within the sham exception is generally a question of fact not appropriate for resolution on a motion

12   to dismiss."). Finally, as the Court also recognized, "even if the representations to Congress and

13   the FDA are not actionable as predicate acts, they are nonetheless evidence of the alleged overall

14   scheme to defraud." *Id.*

15   **ALTRIA'S POSITION:**

16       The *Noerr-Pennington* doctrine is based on the First Amendment right to petition the

17   government and protects lobbying activities, efforts to petition the government, conduct in the

18   defense of litigation, and the expression of scientific opinions. *See, e.g.*, *United Mine Workers of*

19   *Am. v. Pennington*, 381 U.S. 657, 670 (1965) (holding efforts to influence public officials are not

20   illegal, "regardless of intent or purpose"). As the Court held in *United Mine Workers*, the jury

21   should be informed that efforts to influence public officials are not illegal, "regardless of intent or

22   purpose." *Id*. Plaintiff contends that Altria is liable for various statements and representations made

23   that are subject to these protections. This necessitates an instruction explaining Altria's First

24   Amendment rights.

25       Ample case law supports the inclusion of a jury instruction explaining Altria's First

26   Amendment rights. *See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380

27   (1991) (holding defendants are immune from liability for seeking government action, even if

28   defendants use "improper means" to do so); *E.R.R. Presidents Conf. v. Noerr Motors Freight, Inc.*,

365 U.S. 127, 145 (1961) (Defendant could not be held liable for an "attempt to bring about the passage of laws that would help it or injure the other," even if it "deliberatively deceived the public and public officials"); *Cheminor Drugs Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) ("[T]he same First Amendment principles on which *Noerr-Pennington* immunity is based apply to [state] tort claims."); *Senart v. Mobay Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) ("In short, plaintiffs assail Defendant for taking a particular view in a scientific debate and for trying to retain a regulatory standard which defendants preferred. Not only do these actions not constitute torts, they are protected by the first amendment.") (citing *Noerr*); *see also, e.g.*, Sept. 17, 2018 Trial Tr. at 3087, *In re: Engle Progeny Cases Tobacco Litig.* (*Simon*, Case No. 07-CV-27976 (09) (Fla. 17th Cir. Ct.); Jan. 31, 2018 Trial Tr. at 3638, *In re: Engle Progeny Cases Tobacco Litig.* (*Schlefstein*), No. 08-22558 (19) (Fla. 17th Cir. Ct.) (giving substantially similar instruction); Nov. 21, 2017 Trial Tr. at 3153-54, *In re: Engle Progeny Cases Tobacco Litig.* (*Adamson*), No. 50 2016 CA 008532 MB (Fla. 15th Cir.) (giving similar instruction); Jul. 27, 2017 Trial Tr. at 2343-44, *In re: Engle Progeny Cases Tobacco Litig.* (*Thomas*), No. 2007-CV036432 (19) (Fla. 17th Cir.) (giving similar instruction); Nov. 9, 2016 Trial Tr. at 2873-74, *In re: Engle Progeny Cases Tobacco Litig.* (*Howles II*), No. 2007-CV-034919 (Fla. 17th Cir.) (giving similar instruction); Oct. 21, 2016 Trial Tr. at 3411-12, *In re: Engle Progeny Cases Tobacco Litig.* (*Konzelman*), No. 2008-CV-019620 (19) (Fla. 17th Cir.) (giving similar instruction) (collectively attached as Altria Ex. A).

In addition, contrary to Plaintiff's argument, there is no reason to refer to the sham doctrine in this instruction since, as the Court previously noted, "Plaintiffs *concede* that JLI and Altria genuinely sought to influence the government [in its October 25, 2018 letter] (to defer regulation and allow them to keep JLI's mint pods on the market), even if the information they used to achieve those ends was fraudulent." *JUUL Labs*, 497 F. Supp. 3d at 614 (emphasis in original); *see also, e.g.*, *Blank v. Kirwan*, 39 Cal. 3d 311, 324 (1985) ("For the purposes of the *Noerr-Pennington* doctrine, . . . impropriety and genuineness are not related. Indeed, not only were defendants' efforts genuine, they were also successful—and as such incapable of being deemed a mere sham.").

Furthermore, contrary to Plaintiff's proposed instruction, allegedly false statements are also protected by the *Noerr-Pennington* doctrine. *See, e.g.*, *E.R.R. Presidents Conf. v. Noerr Motor*

1  *Freight, Inc.*, 365 U.S. 127, 145 (1961) (defendant could not be liable for "attempt[ing] to bring

2  about the passage of laws" even if it "deliberately deceived the public and public officials");

3  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988) (similar); *Cal.*

4  *Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) ("[M]isrepresentations" are

5  "condoned in the political arena"); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir.

6  2000) ("Even *false* statements presented to support such petitions [to the government] are

7  protected.") (emphasis in original). Under the *Noerr-Pennington* doctrine, courts must "avoid

8  burdening conduct that implicates the protections afforded by the Petition Clause *unless [a] statute*

9  *clearly provides otherwise.*" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (emphasis

10  added). Three Circuits—the Ninth in *Sosa* along with the Third and Tenth—have thus held that

11  "[t]he remedy for" false statements to the government "rests with laws addressed to it and not with

12  courts looking behind sovereign state action" at the behest of private plaintiffs. *Armstrong Surgical*

13  *Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 157 (3d Cir. 1999); *Coll v. First Am. Title*

14  *Ins. Co.*, 642 F.3d 876, 899 (10th Cir. 2011) (same); *see also Sosa*, 437 F.3d at 932-42 (applying

15  *Noerr-Pennington* to hold that pre-suit demand letters that included allegedly legally and factually

16  false statements were not actionable under several state and federal fraud statutes).  None of the

17  statutes under which Plaintiff has brought claims in this case "clearly provide" for liability on the

18  basis of statements to the government as required to give rise to liability under *Sosa* and *Noerr-*

19  *Pennington*. *Sosa*, 437 F.3d at 931 & n.5.  As a consequence, these statutes cannot be construed to

20  permit the imposition of liability on Altria on the basis of its statements to the government. *See*

21  *Sosa*, 437 F.3d at 942; *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644-46 (9th Cir.

22  2009) (applying *Sosa*'s framework and explaining that alleged "misrepresent[ations]" are still

23  protected petitioning conduct).

24       Accordingly, Altria objects to the following portion of the Plaintiff's proposal as contrary

25  to the law, incomplete, potentially confusing and prejudicial:  "However, there is no First

26  Amendment right to make intentional misrepresentations in an attempt to mislead a federal

27  regulatory agency or as part of sworn testimony to Congress. Accordingly, while you may not base

28  any findings of liability on any genuine petitioning or lobbying effort, you may base findings of

1  liability on the communication of intentionally false information to the government. In addition,

2  whether or not petitioning or lobbying was truthful or false, you may consider such efforts as

3  evidence of a defendant's knowledge, motive, and intent."

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 58 -

**[Contested, Altria-Proposed] Right to Petition the Government – False Statements**

**ALTRIA'S PROPOSAL:**

Altria's right under the First Amendment to petition, provide information, and express its views to the government extends to and protects statements even if the statements in question were false or misleading.

**ALTRIA'S POSITION:**

The right to petition the government protected by the *Noerr-Pennington* doctrine and First Amendment protects from liability false statements made during petitioning activity. *See, e.g.*, *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961) (defendant could not be liable for "attempt[ing] to bring about the passage of laws" even if it "deliberatively deceived the public and public officials"); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988) (similar); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) ("[M]isrepresentations" are "condoned in the political arena"); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000) ("Even *false* statements presented to support such petitions [to the government] are protected.") (emphasis in original). Under the *Noerr-Pennington* doctrine, courts must "avoid burdening conduct that implicates the protections afforded by the Petition Clause *unless [a] statute clearly provides otherwise*." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (emphasis added). Three Circuits—the Ninth in *Sosa* along with the Third and Tenth—have thus held that "[t]he remedy for" false statements to the government "rests with laws addressed to it and not with courts looking behind sovereign state action" at the behest of private plaintiffs. *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 157 (3d Cir. 1999); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 899 (10th Cir. 2011) (same); *see also Sosa*, 437 F.3d at 932-42 (applying *Noerr-Pennington* to hold that pre-suit demand letters that included allegedly legally and factually false statements were not actionable under several state and federal fraud statutes). None of the statutes under which Plaintiff has brought claims in this case "clearly provide" for liability on the basis of statements to the government as required to give rise to liability under *Sosa* and *Noerr-Pennington*. *Sosa*, 437 F.3d at 931 & n.5. As a consequence, these statutes cannot be construed to permit the imposition of liability on Altria on the basis of its

1   statements to the government. *See Sosa*, 437 F.3d at 942; *see also Kearney v. Foley & Lardner,*

2   *LLP*, 590 F.3d 638, 644-46 (9th Cir. 2009) (applying *Sosa*'s framework and explaining that alleged

3   "misrepresent[ations]" are still protected petitioning conduct).

4       This instruction is also necessary and appropriate given Plaintiff's allegations and theories

5   of liability, which rely in part on communications between Altria and the government as the basis

6   for liability. Plaintiff has argued that *Noerr-Pennington* doctrine does not apply to false statements.

7   *See, e.g.*, Hr'g Tr. at 64 (Feb. 16, 2022). This instruction is therefore necessary to prevent juror

8   confusion about whether and to what extent Altria's communications with and statements to the

9   government can form the basis of Plaintiff's claims.

10  **PLAINTIFF'S POSITION:**

11      As explained in Plaintiff's Position on the previous disputed *Noerr-Pennington* instruction,

12  Altria's instruction is an incorrect statement of the law. Liability may be based on fraudulent

13  statement made to administrative agencies acting in an adjudicatory role. *See, e.g.*, *Kottle v. Nw.*

14  *Kidney Ctrs.*, 146 F.3d 1056, 1060-62 (9th Cir. 1998); *Clipper Express v. Rocky Mtn. Motor Tariff*

15  *Bur., Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982). And such conduct may be evidence of knowledge,

16  motive, intent, or of the fraudulent scheme in any event.

17      The instruction also fails to recognize that lobbying activity may be relevant as to Altria's

18  knowledge, motive, and intent. *See JUUL*, 497 F. Supp. 3d at 614-15.

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] Retailer Duty to Verify Age**

**ALTRIA'S PROPOSAL:**

The responsibility for requesting proof of age at a physical place of purchase (like a gas station or convenience store) falls on the third-party retailer running that gas station or convenience store. Retailers have a legal duty not to sell tobacco and vapor products to underage individuals.

**ALTRIA'S POSITION:**

Plaintiff claims that Altria was negligent when distributing JUUL products for sale at retail and that negligence caused Plaintiff's injuries. The reasonableness of Altria's conduct when distributing JUUL to retail locations or providing retail services therefore depends on the extent to which there were restrictions in place at retail locations to prevent underage individuals from obtaining JUUL products. In addition, the extent to which underage users could obtain JUUL at retail locations is relevant to causation. It is therefore critical that the jury be informed that retailers are prohibited from selling JUUL to underage individuals and are required to verify consumers' age before selling them JUUL and that California has several other requirements in place to restrict youth access to vapor products. *See, e.g.*, Cal. Penal Code § 308(A)(1)(a) (allowing criminal or civil action and fines against persons or corporations selling tobacco products to anyone under 21); Cal. Bus. & Prof. Code § 22958(a) (allowing civil penalties against persons and businesses that sell, give, or furnish tobacco or instruments designed to ingest tobacco to anyone under 21 years; authorizing license suspension or revocation); *id*. § 22956 (requiring retailers to check identification of tobacco purchasers); *id*. § 22972 (detailing license requirements for tobacco retailers); *id*. § 22980 (authorizing inspections). Plaintiff's argument that the proposed instruction "implies that retailers have the sole responsibility to prevent underage use" is incorrect. The instruction is expressly limited to responsibilities at retail locations and is legally and factually accurate when discussing those responsibilities.

**PLAINTIFF'S POSITION:**

Plaintiff objects to the proposed instruction as irrelevant, lacking a factual basis, and likely to confuse the jury. The proposed instruction regarding retailers' duties is irrelevant because SFUSD's claim does not depend on the manner in which students obtained JUUL products. *See*

1   *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) ("[W]hether an instruction should be

2   given in the first place depends on the theories and evidence presented at trial. This is mostly a

3   factual inquiry, but not entirely. It also requires judgment as to whether the proposed instruction is

4   relevant to the issues presented or would unduly confuse the jury."). Because there is no factual

5   basis for the instruction, it is likely to confuse the jury as to the relevant issues. In particular, the

6   allegation that unnamed non-parties, who are not before the Court, committed a crime is likely to

7   district the jury from the evidence relevant to its determinations.

8          The instruction also lacks a factual basis for relevance. Altria cannot identify any retailers

9   who allegedly broke the law or to what extent.

10         Finally, the proposed instruction is legally incorrect because it implies that retailers have

11  the sole responsibility to prevent underage use, such that other entities cannot be assigned such

12  responsibility.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Competing Proposals] Public Nuisance – Essential Factual Elements [Plaintiff's Proposal] / Public Nuisance – Introduction [Altria's Proposal]**

**PLAINTIFF'S PROPOSAL:**

Plaintiff's first claim is public nuisance. Plaintiff claims that it suffered harm because Altria contributed to a nuisance that exists within SFUSD's schools. A public nuisance is a substantial and unreasonable interference with a public right. An interference is substantial if it causes significant harm. An interference is unreasonable if its social utility is outweighed by the gravity of the harm inflicted. To establish this claim, SFUSD must prove that youth e-cigarette use is a public nuisance within SFUSD's schools, and that Altria is liable for the nuisance. To find for the Plaintiff on these issues, you must find all of the following:

1.      That Altria, by acting or failing to act, created a condition or permitted a condition to exist that is harmful to health, is indecent or offensive to the senses, or is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;

2.      That Altria had knowledge that its conduct would create a condition harmful to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;

3.      That the condition affects a substantial number of people at the same time;

4.      That an ordinary person would be reasonably annoyed or disturbed by the condition;

5.      That the seriousness of the harm outweighs the social utility of Altria's conduct;

6.      That SFUSD did not consent to Altria's conduct;

7.      That SFUSD's property was injuriously affected, or its personal enjoyment was lessened by the nuisance; and

8.      That Altria's conduct was a substantial factor in causing SFUSD's harm.

**ALTRIA'S PROPOSAL:**

Plaintiff's first claim is public nuisance. A public nuisance is a substantial and unreasonable interference with a public right.  An interference is substantial if it causes significant harm.  An interference is unreasonable if its social utility is outweighed by the gravity of the harm inflicted. Plaintiff claims that it suffered harm because Altria's JUUL-related conduct knowingly created a

- 63 -

substantial and unreasonable interference with a public right by creating a youth e-cigarette public health crisis in SFUSD's schools.

To establish its public nuisance claim, SFUSD must prove each of the following elements by a preponderance of the evidence:

1.     That Altria, by an unreasonable act, created a condition or permitted a condition to exist that was harmful to health;

2.     That Altria had knowledge that its unreasonable conduct would create a condition harmful to health;

3.     That Altria had a duty to take action to prevent or abate the condition harmful to public health;

4.     That the condition affected a substantial number of people at the same time;

5.     That an ordinary person would be reasonably annoyed or disturbed by the condition;

6.     That the seriousness of the harm created by Altria's conduct outweighs the social utility and benefits derived from Altria's conduct;

7.     That SFUSD did not consent to Altria's conduct;

8.     That SFUSD's property was injuriously affected by the nuisance; and

9.     That Altria's conduct was a substantial factor in causing SFUSD's harm.

I will describe these elements in more detail now.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction reflects the California pattern instruction (CACI 2020). *See Dep't of Fish & Game v. Sup. Ct.*, 197 Cal. App. 4th 1323, 1352 (2011) (relying on the pattern instruction); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009) (same). The pattern has been modified (1) to reflect the need to find a currently-existing nuisance; (2) to include a knowledge element; and (3) to include the Section 731 standing requirement of injury to property. *See City and County of San Francisco v. Purdue Pharma L.P.*, 18-07591, 2022 WL 3224463, at *53 (N.D. Cal. Aug. 10, 2022) ("The Court does not decide whether California law incorporates an actual knowledge requirement because the facts proved at trial satisfy the actual knowledge requirement."); Cal. Civ. Proc. Code § 731 ("An action may be brought by any person whose

property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor.").

Altria's alternative instruction should be rejected.

*First*, Altria's argument that § 731 does not permit a claim when personal enjoyment is lessened ignores the plain language of the statutory text. Altria's argument that Plaintiff's instruction is inconsistent with the complaint is also incorrect. SFUSD Amended Complaint, ECF 9, at 225 (listing the three relevant prongs of public nuisance, including "indecent or offensive to the senses").

*Second*, Altria's proposed duty element should be rejected. A duty of care is not an element of a public nuisance claim, at least not one premised on allegations that the defendant affirmatively created or contributed to the nuisance. *See, e.g.*, *Perlmutter v. Lehigh Hanson, Inc.*, No. 21-2571, 2021 WL 4033029, at *3 (N.D. Cal. Sept. 3, 2021) ("Ordinarily, a defendant may be liable for a nuisance even if it was not negligent in causing the invasion to the plaintiff's property interest."); *City of Pasadena v. Sup. Ct.*, 228 Cal. App. 4th 1228, 1236 (2014) ("Nuisance liability is not necessary based on negligence, thus, one may be liable for a nuisance even in the absence of negligence.") (internal quotation marks omitted); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1552 (2009) (explaining that a "a finding that [the defendant] has a duty of care" is "require[d]" only if the nuisance claim is "construed to allege *only* a failure to act") (emphasis added).

The exception is where liability is premised on a pure inaction theory, for example where a property owner fails to prevent a tree from falling. *See City of Pasadena*, 228 Cal. App. 4th at 1236. Where, as here, nuisance liability is premised on action, not pure inaction, there is no duty element. *See Perlmutter*, 2021 WL 4033029, at *4 ("This case is readily distinguishable from *City of Pasadena* because, unlike a city that fails to prevent its tree from causing harm, Defendant's nuisance liability here is not solely based on its failure to abate a nuisance. Rather, Plaintiffs allege that Defendant both created the nuisance and failed to abate it. … Because Defendant's nuisance liability is not solely based on its failure to prevent harm, California law does not require Plaintiffs

1    to prove that Defendant was negligent.).

2         Even if duty of care were an element of Plaintiff's nuisance claims, it would not be

3    appropriate to put that issue to the jury. Duty "is a legal issue and must be determined by the court."

4    *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1339 (2014) (citation omitted). As a general

5    matter, duty does not turn "on case-specific facts" but instead reflects a judicial determination on

6    "the category of negligent conduct at issue." *Cabral v. Ralphs Grocery Store Co.*, 51 Cal. 4th 764,

7    773 (2011); *see also id.* at 774 ("To base a duty ruling on the detailed facts of a case risks usurping

8    the jury's proper function of deciding what reasonable prudence dictates under those particular

9    circumstances."). For this reason, the California pattern jury instruction do not include duty

10   instructions.

11        Altria's relies on this Court's statement in *B.B.*, rejecting Altria's motion for summary

12   judgment on the duty element of B.B.'s negligence claims, that Altria's actions were "matters for

13   the jury to evaluate." *In re JUUL*, No. 19-2913, 2022 WL 1601418, at *14 (N.D. Cal. Apr. 29,

14   2022). All that this meant was that the jury could decide, in evaluating breach and causation,

15   whether Altria's knowledge and actions foreseeably and actually harmed B.B., not that duty was a

16   jury question. In addition, the Court noted that, while "duty is a matter of law to be determined by

17   the Court, as the summary judgment stage the trial court must view the evidence of foreseeability,

18   risk and burden in the light most favorable to the non-moving party." *Id.* (citation omitted). Altria

19   is free to revisit its duty arguments on the full record.

20        *Third*, Altria contends that Plaintiff's proposed instructions "fail to define the alleged

21   nuisance." But despite these stated concerns, the difference between Altria's definition of the

22   alleged nuisance in the above instruction, "a youth e-cigarette public health crisis in SFUSD's

23   schools," and Plaintiff's definition of the nuisance, "youth e-cigarette use . . .  within SFUSD's

24   schools" are minimal. Altria's instruction repeats the reference to public health in the preamble and

25   then again in the first number, whereas Plaintiff's instruction references public health once, in the

26   first number, along with the other enumerated interferences with public rights, consistent with the

27   pattern instruction and California law. *See* Cal. Civ. Code § 3479; *People ex rel. Gallo v. Acuna*,

28   929 P.2d 596, 604 (Cal. 1997) (explaining these are the "categories of public nuisance").

More generally, nothing requires the jury to find the nuisance with the sort of specificity Altria suggests. Altria's concerns about the scope and nature of the nuisance are properly addressed by the pattern instruction and Plaintiff's proposal. The contention that the jury is not being told which "kinds of interference or types of harm that would support liability" is simply incorrect: the jury is instructed that to find a nuisance, it must conclude that youth e-cigarette use within SFUSD's schools is "harmful to health, is indecent or offensive to the senses, or is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Similarly, the claim that the jury is not being instructed on "the amount of harm, or degree of interference necessary to constitute a nuisance" again is belied by the instructions themselves. Plaintiff does not have to prove a specific percentage of students are using e-cigarettes to show a nuisance. Instead, Plaintiff's instruction properly requires the jury to find the required elements under California law: that youth e-cigarette use within SFUSD's schools "affects a substantial number of people at the same time," "the seriousness of the harm outweighs the social utility of Altria's conduct," and "an ordinary person would be reasonably annoyed or disturbed by the condition." Altria seeks to impose requirements on the jury that are not required by law and would merely serve to confuse and unnecessarily complicate the issues the jury must decide.

Altria appears to contend that a bifurcated proceeding is somehow not appropriate here under the Seventh Amendment (and therefore is presumably arguing that the Court must decide both liability and abatement as the jury cannot do both) but ignores that there is not issue to be retried in the abatement phase. If the jury finds that Plaintiff proved a nuisance exists, in the abatement phase, the parties will present evidence of an appropriate abatement plan to address the nuisance presented at trial. This poses no Seventh Amendment concerns. The Court will "follow the jury's implicit or explicit factual determinations," and in the event "the basis for the jury's verdict is open to multiple interpretations, the Seventh Amendment permits the district court to reach any interpretation that is supported by the evidence." *Teutscher v. Woodson*, 835 F.3d 936, 944, 952 (9th Cir. 2016). If the jury's verdict could be interpreted in multiple ways, the Court is to "select the one that it f[inds] to be best supported by the evidence and to determine equitable relief in accord with that theory." *Id.* at 953.

1     Notably, Altria's contention is irreconcilable with the opiate trial recently conducted by

2     Judge Polster in N.D. Ohio. There, the jury found that "oversupply of legal prescription opioids,

3     and diversion of those opioids into the illicit market outside of appropriate market channels, is a

4     public nuisance in" two counties. *In re: Nat'l Prescription Opiate Litig. (County of Lake)*, MDL

5     2804, Doc. 4176 (N.D. Ohio Nov. 23, 2021). The jury was not asked whether the nuisance existed

6     in all parts of the county or only certain parts; whether it was merely the "disposal" of drug

7     paraphernalia in "improper places" or something more; whether the nuisance was based on "a

8     certain number of" opioid-related "incidents"; or whether the nuisance depended on a "certain

9     percentage" of persons abusing opioids. Nevertheless, the verdict was sufficient for the judge to

10    then crate an abatement plan to remedy the "nuisance the jury found" in light of the verdict, the

11    jury instructions, and the evidence presented to the jury. *In re: Nat'l Prescription Opiate Litig.*

12    *(County of Lake)*, MDL 2804, 2022 WL 3443614, at *12-13 (N.D. Ohio Aug. 17, 2022).

13    Nor is Altria correct that the instructions must "offer[ a] way to determine what conduct by

14    Altria, if any, the jury relied upon should it find that Altria is liable for contributing to a nuisance."

15    A nuisance is a condition, not merely any conduct that contributes to that condition. *See id* at *11

16    (nothing "the Restatement is clear that the nuisance is *the harm caused* by human activity or

17    physical condition") (citation omitted). Plaintiff's proposed instruction makes is clear the jury must

18    find a "condition," not just bad conduct. *See id.* ("[W]hen a factfinder determines that the tortious

19    conduct of a defendant creates a condition (or, in the case of multiple tortfeasors, is a substantial

20    factor in creating a condition) that unreasonably interferes with a public right, that defendant is and

21    remains liable for public nuisance, even if it has since ceased the conduct that created the harmful

22    condition.").

23    **ALTRIA'S POSITION:**

24    Plaintiff's proposed instruction includes the additional language of "was indecent or

25    offensive to the senses" which was not pled in Plaintiff's complaint and accordingly should not be

26    the basis of an instruction given to the jury.  Plaintiff's proposed instruction also improperly offers

27    an alternative to the requisite element of injury to property by allowing the jury to substitute injury

28    to property with a finding that "personal enjoyment was lessened by the nuisance." Cal. Civ. Proc.

1   Code § 731 requires that Plaintiff prove an injury to property and thus this element must be included

2   in the jury instructions.

3        Altria's proposed instruction is closely modeled on the pattern but includes language that

4   instructs the jury on governing California law that is not included in the current pattern instruction.

5   For instance, Altria's proposed instruction includes language that clarifies that "not every

6   interference with collective social interests constitutes a public nuisance. To qualify . . . the

7   interference must be both substantial and unreasonable." *People ex rel. Gallo v. Acuna*, 14 Cal. 4th

8   1090, 1105, 60 Cal. Rptr. 2d 277, 929 P.2d 596 (1997).  Altria's proposed instruction also includes

9   a knowledge element. This is an accurate statement of California public nuisance law that is not

10  adequately captured by the pattern instruction alone. *People v. ConAgra Grocery Products Co.*, 17

11  Cal. App. 5th 51, 79, 227 Cal. Rptr. 3d 499 (2017) ("A public nuisance cause of action is established

12  by proof that a defendant knowingly created or assisted in the creation of a substantial and

13  unreasonable interference with a public right."). To exclude this element would be incomplete and

14  mislead the jury. Altria's proposed instruction also includes a duty element. This element of public

15  nuisance is not adequately explained by the pattern instruction alone.  Although the question of

16  duty is often a legal one, this Court has previously concluded in this litigation that the question of

17  duty raises "matters for the jury to evaluate."  Order on Defs. Motions for Summary Judgment

18  Regarding B.B., ECF 3083 (Apr. 29, 2022).

19       Altria further objects because the Plaintiff's proposal here and instructions more generally

20  fail to define the alleged nuisance or provide any guidance to the jury concerning the scope or

21  impact of underage vapor use at SFUSD schools to constitute a nuisance or any other information

22  defining the alleged nuisance.  Plaintiff simply treats nuisance liability as a binary choice—*e.g.*,

23  was there a nuisance, yes or no. The lack of instruction to the jury on this issue is problematic in

24  its own right.  But it is especially improper and objectionable in this case because Altria's liability

25  for nuisance and the scope of any abatement remedy are set to be decided in bifurcated proceedings.

26  If the jury answers yes to liability, then SFUSD would present separate evidence in an abatement

27  phase.  But there is no guarantee, given Plaintiff's approach, that the nuisance the jury finds would

28  be the same nuisance that Plaintiff then asks the Court to abate.

For example, Plaintiff's proposed instruction, and the Plaintiff's approach more generally, is completely silent on whether the nuisance includes all schools, some schools, a certain number of schools, or one school. As written, the instruction appears to allow the jury to find a nuisance based on the underage vaping at a single school or instead to conclude that there must be vaping at numerous schools. The jury's conclusion on this issue would be directly relevant to scope of any abatement remedy. If the jury does not find a nuisance at every school, abatement should not be ordered for every school. To the contrary, any abatement remedy must be tailored to remediating a specific nuisance.

The jury instructions also do not provide any guidance to the jury on the kinds of interference or types of harm that would support liability or the prevalence of vaping, or the amount of harm, or degree of interference necessary to constitute a nuisance. As a result, there would be no way to determine what it was that the jury found to be an unreasonable condition at SFUSD schools that substantially interferes with use and enjoyment. A jury might conclude that disposal of JUUL products in improper locations is a nuisance, or it might conclude that use of JUUL products by students in the parking lot before school is a nuisance, or it might conclude that having to lock certain hallways is a nuisance, and so on. The abatement remedy, however, should be targeted to the nuisance that gave rise to liability. And the relief necessary to remediate one form of nuisance would have no impact on another form of nuisance, as these examples illustrate. In addition, the instructions do not provide any instruction to the jury on the amount of vaping at school or the prevalence of any other conduct that it needs to find to conclude that there is a nuisance. This too is problematic. If the jury bases its decision on whether there were certain number of incidents at a school or a certain percentage of students vaping at school sufficiently shows a nuisance, the abatement remedy would need to be focused on that finding.

Moreover, Plaintiff's approach offers no way to determine what conduct by Altria, if any, the jury relied upon should it find that Altria is liable for contributing to a nuisance. Again, there would be no way to craft an abatement remedy focused on that conduct. And these are just examples. The larger point is that, if information reflecting what the jury found was a nuisance is not available during Phase 3, it would leave the Court either to guess at the jury's finding or instead

1    to re-examine the same evidence and issues the jury would have decided.  Either approach would

2    be improper.

3           Indeed, bifurcated proceedings are appropriate only where "the issue to be retried is so

4    distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline*

5    *Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).  That means the phases of the trial

6    cannot involve re-litigating the scope of the nuisance.  If the Phase 1 liability proceedings do not

7    make clear what nuisance, if any, Altria is liable for creating or contributing to, the verdict will not

8    "establish[] . . . material facts," *id.*, and there will be intertwined issues that would be inevitably re-

9    litigated in any Phase 3.  This result would violate the Seventh Amendment, which "provides that

10   'no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than

11   according to the rules of the common law.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828–29

12   (9th Cir. 2013) (quoting U.S. Const. amend. VII).

13          "[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge,

14   and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment

15   requires the trial judge to follow the jury's implicit or explicit factual determinations." *Id.*

16   (quotations omitted); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1449, 1473 (9th Cir.

17   1993) (same).  "[I]t would be a violation of the seventh amendment right to jury trial for the court to

18   disregard a jury's finding of fact." *Los Angeles Police Protective League*, 995 F.2d at 1473; *see also*

19   *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1115 (C.D. Cal. 2016) ("[W]here there is

20   substantial commonality between the factual questions presented by legal and equitable claims, a jury's

21   finding of fact pertinent to the legal claim constrains the court's equitable determination." (quotations

22   omitted)). Importantly, the Seventh Amendment requires that even implied findings must be followed:

23   "rather than being limited to the face of the verdict, the jury's findings include any factual findings that

24   the verdict's contents necessarily imply." *In re EPD Inv. Co., LLC*, 2020 WL 6937351, at *3 (Bankr.

25   C.D. Cal. Oct. 29, 2020).

26

27

28

1           **[Contested, Altria-Proposed] Public Nuisance – Interference with Public Right**

2   **ALTRIA'S PROPOSAL:**

3           Plaintiff's public nuisance claim requires proof that the alleged knowing, substantial, and

4 unreasonable interference has impacted and/or is impacting a public right. A public right is a

5 collective right that is common to all members of the general public, as opposed to private rights,

6 which are enjoyed by people in their individual capacities.   It is a right that belongs to the

7 community at large.

8           If you find that Altria's alleged wrongful conduct did not interfere with a public right, then

9 you must find Altria not liable for public nuisance.  If you find that Altria engaged in wrongful

10 conduct and that Altria's wrongful conduct interfered with a public right, then you must next

11 determine whether Altria knowingly, substantially, and unreasonably interfered with that public

12 right in a manner that caused or will cause damage or injury.

13   **ALTRIA'S POSITION:**

14           Altria's instruction is an accurate statement of the law regarding public nuisances. A public

15 nuisance is defined as an "unreasonable interference with a right common to the general public."

16 Restatement (Second) of Torts § 821(b)(1) (1979). Whether the interference is unreasonable turns

17 on weighing "the gravity of the harm against the utility of the conduct." *Id.* § 821 cmt. e." *People*

18 *ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1105, 60 Cal. Rptr. 2d 277, 929 P.2d 596 (1997) (citing

19 Restatement (Second) of Torts, §§ 826–831) ("The unreasonableness of a given interference

20 represents a judgment reached by comparing the social utility of an activity against the gravity of

21 the harm it inflicts, taking into account a handful of relevant factors."); *People v. ConAgra Grocery*

22 *Prod. Co*., 17 Cal. App. 5th 51, 79, 227 Cal. Rptr. 3d 499, 525 (2017) (concluding that lead paint

23 exposure in private homes implicated a public right because residential housing is an essential

24 shared community resource like streets, water, electricity, natural gas, or sewer services); *City of*

25 *W. Sacramento v. R & L Bus. Mgmt.*, 2020 WL 6342930, at *2 (E.D. Cal. Oct. 29, 2020) ("A

26 plaintiff must show 'substantial and unreasonable interference, either with a public right or with

27 the enjoyment of a plaintiff's property.'") (citation omitted); *Helix Land Co., Inc. v. City of San*

28 *Diego*, 82 Cal. App. 3d 932, 950, 147 Cal. Rptr. 683 (1978) ("An essential element of a cause of

1    action for nuisance is damage or injury.").

2    **PLAINTIFF'S POSITION:**

3           Altria does not explain why the California pattern instruction is insufficient. *See Dep't of*

4    *Fish & Game v. Sup. Ct.*, 197 Cal. App. 4th 1323, 1352 (2011) (relying on the pattern instruction);

5    *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009) (same).

6           Altria's proposed instruction add confusion because it tells the jury it might find that Altria's

7    conduct "interfered with a public right." In reality, California has already determined that

8    interference with "public health" *is* interference with a public right. Under California law "anything

9    that is' injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use

10   of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully

11   obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay,

12   stream, canal, or basin, or any public park, square, street, or highway'" is a nuisance. *People ex rel.*

13   *Gallo v. Acuna*, 14 Cal. 4th 1090, 1104 (1997) (quoting Cal. Civ. Code § 3479) (internal quotation

14   marks and alteration omitted). A *public* nuisance *is* one that "affects at the same time an entire

15   community or neighborhood, or any considerable number of persons." *Id.* (quoting Cal. Civ. Code

16   § 3480). The pattern instruction includes both of these elements. The jury is not required to find a

17   statutorily-defined public nuisance *and* find separately that Altria's conduct interfered with a

18   "public right."

19           Finally, Altria's additions of substantial and unreasonable to the instruction merely repeat

20   what the jury is already required to find under the pattern instruction. The conduct is "unreasonable

21   if its social utility is outweighed by the gravity of the harm inflicted," *People v. ConAgra Grocery*

22   *Products Co.*, 17 Cal. App. 5th 51, 112 (Cal. App. 6th Dist. 2017), and the jury is already required

23   by the pattern elements instruction to find "[t]hat the seriousness of the harm outweighs the social

24   utility of the Defendant's conduct." Similarly, the interference is substantial if it causes significant

25   harm, meaning that, objectively, it is a "real and appreciable invasion of the plaintiff's interests,"

26   one that is "definitely offensive, seriously annoying or intolerable." *People ex rel. Gallo v. Acuna*,

27   929 P.2d 596, 605 (Cal. 1997) (quoting Restatement (Second) of Torts § 821F) ("By significant

28   harm is meant harm of importance, involving more than slight inconvenience or petty annoyance.").

The jury is already required by the pattern elements instruction to find that "[t]hat an ordinary person would be reasonably annoyed or disturbed by the condition." Finally, the jury has already been instructed that it must find "[t]hat Altria's conduct was a substantial factor in causing SFUSD's harm."

**[Contested, Altria-Proposed] Public Nuisance – Plaintiff's Alleged Nuisance**

**ALTRIA'S PROPOSAL:**

Plaintiff's public nuisance claim requires proof that the use of JUUL products, and not vapor products generally, by students on SFUSD school grounds imposes a substantial and unreasonable interference that is impacting a public right.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with the causation requirement that Plaintiff must meet to establish its public nuisance claim. *See, e.g.*, *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff must prove factual causation, which requires proving that a defendant's conduct was a substantial factor in bringing about the nuisance. Additionally, a plaintiff must establish that the defendant's wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate causation.") (internal cites omitted); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires proximate causation). It is also consistent with the requirement that Altria create or contribute to the alleged nuisance. *See, e.g.*, CACI 2020; *Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 674 (9th Cir. 2011) ("Under California law, conduct cannot be said to 'create' a nuisance unless it more actively or knowingly generates or permits the specific nuisance condition."); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 79, 227 Cal. Rptr. 3d 499 (2017) ("A public nuisance cause of action is established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right."); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309, 40 Cal. Rptr. 3d 313, 328 (2006) ("Liability is not based merely on production of a product or failure to warn."). To the extent that Plaintiff seeks to impose liability based on injuries or harm that was caused by other vapor products, any connection between the Plaintiff's alleged harm and Altria's conduct would be too remote and indirect to establish proximate causation. *See, e.g.*, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged" and cannot be "too remote, purely contingent, or indirect") (citations and quotations omitted). Moreover, vapor products were available and being used before JUUL

1    products were introduced.  Plaintiff's argument that it plans to offer evidence and ask the jury to

2    impose liability based on "'copycat' products such as 'Puff Bar'" only confirms that this instruction

3    is necessary to ensure that the jury does not base liability for nuisance on underage vaping that

4    Altria did not cause, create, or contribute to.

5    **PLAINTIFF'S POSITION:**

6        This proposed instruction misstates the facts. Plaintiff's proof will show that the JUUL-

7    caused and Altria-abetted youth vaping epidemic in later stages manifested through "copycat"

8    products such as "Puff Bar." *E.g.*, Cutler 9/0/21 Rpt. at 51-54. Whether that causal connection has

9    been proven is a matter for the jury.

**[Contested, Altria-Proposed] Public Nuisance – Creation**

**ALTRIA'S PROPOSAL:**

To hold Altria liable for public nuisance, Plaintiff's public nuisance claim requires proof that Altria knowingly created or contributed to a substantial and unreasonable interference with a public right in a manner that caused damage or injury.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of the law.  CACI 2020; *Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 674 (9th Cir. 2011) ("Under California law, conduct cannot be said to 'create' a nuisance unless it more actively or knowingly generates or permits the specific nuisance condition."); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 79, 227 Cal. Rptr. 3d 499 (2017) ("A public nuisance cause of action is established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right."); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309, 40 Cal. Rptr. 3d 313, 328 (2006) ("Liability is not based merely on production of a product or failure to warn.").  This instruction is also necessary and appropriate here given the different entities involved in the design, manufacture, distribution, marketing, and sale of JUUL and those entities' different alleged conduct.  The instruction is needed to make clear that JUUL-related conduct by Altria is not sufficient.  Instead, Altria must have created or contributed to the substantial and unreasonable interference that comprises the public nuisance.

**PLAINTIFF'S POSITION:**

Altria does not explain why the California pattern instruction is insufficient. *See Dep't of Fish & Game v. Sup. Ct.*, 197 Cal. App. 4th 1323, 1352 (2011) (relying on the pattern instruction); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009) (same). In an abundance of caution, Plaintiff has already added a knowledge element to the pattern element instruction *City and County of San Francisco v. Purdue Pharma L.P.*, 18-CV-07591-CRB, 2022 WL 3224463, at *53 (N.D. Cal. Aug. 10, 2022) ("The Court does not decide whether California law incorporates an actual knowledge requirement because the facts proved at trial satisfy the actual knowledge

1    requirement.").

2           In the pattern instruction, the jury has already been instructed that to find liability, it must

3    find that "[t]hat Altria, by acting or failing to act, created a condition or permitted a condition to

4    exist that was harmful to health, was indecent or offensive to the senses, or was an obstruction to

5    the free use of property, so as to interfere with the comfortable enjoyment of life or property, "[t]hat

6    Altria had knowledge that its unreasonable conduct would create a condition harmful to health, was

7    indecent or offensive to the senses, or was an obstruction to the free use of property, so as to

8    interfere with the comfortable enjoyment of life or property, "[t]hat the condition affected a

9    substantial number of people at the same time," and "[t]hat an ordinary person would be reasonably

10   annoyed or disturbed by the condition."

11          Altria's additions merely repeat what the jury is already required to find under the pattern

12   instruction. The conduct is "unreasonable if its social utility is outweighed by the gravity of the

13   harm inflicted," *People v. ConAgra Grocery Products Co.*, 17 Cal. App. 5th 51, 112 (Cal. App. 6th

14   Dist. 2017), and the jury is already required by the pattern elements instruction to find "[t]hat the

15   seriousness of the harm outweighs the social utility of the Defendant's conduct." Similarly, the

16   interference is substantial if it causes significant harm, meaning that, objectively, it is a "real and

17   appreciable invasion of the plaintiff's interests," one that is "definitely offensive, seriously

18   annoying or intolerable." *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 605 (Cal. 1997) (quoting

19   Restatement (Second) of Torts § 821F) ("By significant harm is meant harm of importance,

20   involving more than slight inconvenience or petty annoyance."). The jury is already required by

21   the pattern elements instruction to find that "[t]hat an ordinary person would be reasonably annoyed

22   or disturbed by the condition."

23

24

25

26

27

28

**[Contested, Altria-Proposed] Public Nuisance – Whether Altria Created or Contributed**

**ALTRIA'S PROPOSAL:**

When deciding whether Altria created or contributed to a nuisance consisting of student JUUL use on SFUSD school grounds, you should evaluate the prevalence and impact of underage JUUL use on school grounds before Altria took any action involving JUUL products and the prevalence and impact of underage JUUL use on SFUSD school ground as of today.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with the causation requirement that Plaintiff must meet to establish its public nuisance claim. *See, e.g.*, *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff must prove factual causation, which requires proving that a defendant's conduct was a substantial factor in bringing about the nuisance. Additionally, a plaintiff must establish that the defendant's wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate causation.") (internal cites omitted); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires proximate causation). It is also consistent with the requirement that Altria create or contribute to the alleged nuisance. *See, e.g.*, CACI 2020; *Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 674 (9th Cir. 2011) ("Under California law, conduct cannot be said to 'create' a nuisance unless it more actively or knowingly generates or permits the specific nuisance condition."); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 79, 227 Cal. Rptr. 3d 499 (2017) ("A public nuisance cause of action is established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right."); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309, 40 Cal. Rptr. 3d 313, 328 (2006) ("Liability is not based merely on production of a product or failure to warn.").

To the extent that Plaintiff seeks to impose liability based on injuries or harm that was caused by conduct that occurred before Altria took any JUUL-related actions, Plaintiff cannot establish proximate causation. *See, e.g.*, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged" and cannot be "too remote, purely contingent, or indirect") (citations and

1    quotations omitted).   Vapor products were available and being used before JUUL products were

2    introduced, and JUUL products were sold for years before Altria engaged in any conduct that could

3    have created or contributed to the alleged nuisance.    Moreover, Plaintiff alleges that underage

4    vaping was widespread before Altria is alleged to have engaged in any JUUL-related conduct.

5    Given this timeline, and Plaintiff's intentions to offer evidence predating Altria's involvement, the

6    jury should consider the extent to which the alleged nuisance existed before Altria's involvement

7    began when determining whether Altria created or contributed to that nuisance as necessary to

8    establish Altria's liability.  This is not a factual argument; it is a proper instruction that is warranted

9    here.

10   **PLAINTIFF'S POSITION:**

11         This is Altria's factual argument, not a jury instruction. Under Plaintiff's proposed nuisance

12   instruction, the jury is adequately instructed that it must find Altria contributed to a public nuisance

13   and that Altria's conduct was a substantial factor in causing SFUSD's harm. There are all kinds of

14   factual issues that go into that determination, e.g., Altria's motive, knowledge, retail strength, etc.

15   There is no reason to instruct the jury on one of those factual issues to the exclusion of others.

16         In addition, the proposed instruction is factually inaccurate. Plaintiff's theory of the case is

17   that the harm caused by Altria's conduct includes underage use of "copycat" products, not just

18   JUUL.

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] Duty of Care Required**

**ALTRIA'S PROPOSAL:**

Altria can only be liable for nuisance if it owed a duty of care toward the Plaintiff.  In order to find that Altria assumed a duty of care toward Plaintiff, you must find that Altria's conduct put Plaintiff directly at risk of suffering injury and that Plaintiff's harm was closely tied to Altria's actions.  If you conclude that Altria did not assume a duty of care toward Plaintiff, Altria would not be liable for nuisance.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of California nuisance law that is not adequately explained by the pattern instruction alone.  Although the question of duty is often a legal one, this Court has previously concluded in this litigation that the question of duty raises "matters for the jury to evaluate."  Order on Defs. Motions for Summary Judgment Regarding B.B., ECF 3083 (Apr. 29, 2022).

**PLAINTIFF'S POSITION:**

This proposed instruction has two fatal flaws. First, a duty of care is not an element of a public nuisance claim, at least not one premised on allegations that the defendant affirmatively created or contributed to the nuisance. *See, e.g.*, *Perlmutter v. Lehigh Hanson, Inc.*, No. 21-2571, 2021 WL 4033029, at *3 (N.D. Cal. Sept. 3, 2021) ("Ordinarily, a defendant may be liable for a nuisance even if it was not negligent in causing the invasion to the plaintiff's property interest."); *City of Pasadena v. Sup. Ct.*, 228 Cal. App. 4th 1228, 1236 (2014) ("Nuisance liability is not necessary based on negligence, thus, one may be liable for a nuisance even in the absence of negligence.") (internal quotation marks omitted); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1552 (2009) (explaining that a "a finding that [the defendant] has a duty of care" is "require[d]" only if the nuisance claim is "construed to allege *only* a failure to act") (emphasis added). The exception is where liability is premised on a pure inaction theory, for example where a property owner fails to prevent a tree from falling. *See City of Pasadena*, 228 Cal. App. 4th at 1236. Where, as here, nuisance liability is premised on action, not pure inaction, there is no duty element. *See Perlmutter* , 2021 WL 4033029, at *4 ("This case is readily distinguishable from *City*

1   *of Pasadena* because, unlike a city that fails to prevent its tree from causing harm, Defendant's

2   nuisance liability here is not solely based on its failure to abate a nuisance. Rather, Plaintiffs allege

3   that Defendant both created the nuisance and failed to abate it. … Because Defendant's nuisance

4   liability is not solely based on its failure to prevent harm, California law does not require Plaintiffs

5   to prove that Defendant was negligent.).

6   Second, even if duty of care were an element of Plaintiff's nuisance claims, it would not be

7   appropriate to put that issue to the jury. Duty "is a legal issue and must be determined by the court."

8   *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1339 (2014) (citation omitted). As a general

9   matter, duty does not turn "on case-specific facts" but instead reflects a judicial determination on

10  "the category of negligent conduct at issue." *Cabral v. Ralphs Grocery Store Co.*, 51 Cal. 4th 764,

11  773 (2011); *see also id.* at 774 ("To base a duty ruling on the detailed facts of a case risks usurping

12  the jury's proper function of deciding what reasonable prudence dictates under those particular

13  circumstances."). For this reason, the California pattern jury instruction do not include duty

14  instructions.

15  California arguably recognizes an exception to this rule where duty is a function of specific

16  fact questions. *See O'Malley v. Hospitality Staffing Sols.*, 20 Cal. App. 5th 21, 27 (2018) ("[U]nder

17  a negligent undertaking theory of liability, the scope of a defendant's duty presents a jury issue

18  when there is a factual dispute as to the nature of the undertaking."). Here, the duty analysis rests

19  on standard considerations of foreseeability and public policy that are legal questions for the Court

20  to consider. *See Kaney v. Custance*, 74 Cal. App. 5th 201, 215 (2022) ("Foreseeability is a question

21  of law."); *Carter v. Nat'l R.R. Passenger Corp.*, 63 F. Supp. 3d 1118, 1146 (N.D. Cal. 2014) ("[A]

22  court's task—in determining "duty"—is not to decide whether a particular plaintiff's injury was

23  reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more

24  generally whether the category of negligent conduct at issue is sufficiently likely to result in the

25  kind of harm experienced that liability may appropriately be imposed on the negligent party. The

26  jury, by contrast, considers "foreseeability" in two more focused, fact-specific settings. First, the

27  jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the

28  particular defendant's conduct was negligent in the first place. Second, foreseeability may be

1   relevant to the jury's determination of whether the defendant's negligence was a proximate or legal

2   cause of the plaintiff's injury.") (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986)).

3          Altria relies on this Court's statement in *B.B.*, rejecting Altria's motion for summary

4   judgment on the duty element, that Altria's actions were "matters for the jury to evaluate." *In re*

5   *JUUL*, No. 19-2913, 2022 WL 1601418, at *14 (N.D. Cal. Apr. 29, 2022). All that this meant was

6   that the jury could decide, in evaluating breach and causation, whether Altria's knowledge and

7   actions foreseeably and actually harmed B.B., not that duty was a jury question. In addition, the

8   Court noted that while "duty is a matter of law to be determined by the Court, as the summary

9   judgment stage the trial court must view the evidence of foreseeability, risk and burden in the light

10  most favorable to the non-moving party." *Id.* (citation omitted). Altria is free to revisit its duty

11  arguments on the full record.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[Contested, Altria-Proposed] Public Nuisance -- Causation**

2     **ALTRIA'S PROPOSAL:**

3         Plaintiff's nuisance claim requires proof of two types of causation: cause-in-fact and legal

4     cause.

5     **ALTRIA'S POSITION:**

6         Altria's proposed instruction is an accurate statement of California law regarding public

7     nuisance causation that is not sufficiently explained by the pattern instruction alone.  *City & Cnty.*

8     *of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff

9     must prove factual causation, which requires proving that a defendant's conduct was a substantial

10    factor in bringing about the nuisance. Additionally, a plaintiff must establish that the defendant's

11    wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate

12    causation.") (internal cites omitted). Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991),

13    too broadly.  *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was

14    error because the specific language in that instruction was "conceptually and grammatically

15    deficient."  *Id*. at 1052-54.

16    **PLAINTIFF'S POSITION:**

17        Below, the parties have agreed on CACI 430, the pattern substantial factor instruction. This

18    instruction, and the following few instructions, reflect a dispute over whether the jury must also be

19    instructed on proximate cause.

20        California does not instruct juries separately on cause-in-fact and proximate cause. This

21    makes sense: proximate cause includes public policy factors that are not susceptible to jury

22    determination. *E.g.*, *City & Cty. of San Francisco v. Purdue Pharma, L.P.*, 491 F. Supp. 3d 610,

23    679 (N.D. Cal. 2020) ("Proximate cause is ordinarily concerned, not with the fact of causation, but

24    with the various considerations of policy that limit an actor's responsibility for the consequences

25    of his conduct.") (internal quotation marks omitted).

26        The California Supreme Court has held that giving a proximate cause instruction is legal

27    error, and that instead courts should instruct on "the 'substantial factor' test." *Mitchell v. Gonzalez*,

28    54 Cal. 3d 1041, 1052-53 (1991). In addition, the Court explained, this test "subsumes the 'but for'

1  test." *Id.* It also helps the jury resolve (1) "the problem of independent causes," (2) "where a similar,

2  but not identical result would have followed without the defendant's act," and (3) "where one

3  defendant has made a clearly proved but quite insignificant contribution to the result." *Id.* For this

4  reason, the operative California pattern instructions collapse causation to a single substantial factor

5  instruction. CACI 430.

6       Altria argues that Plaintiff misstates the holding of *Mitchell*, but the court there specifically

7  rejected a proximate cause instruction in favor of a substantial factor instruction: "Use of BAJI No.

8  3.76 [substantial factor] will avoid much of the confusion inherent in BAJI No. 3.75 [proximate

9  cause]. It is intelligible and easily applied. We therefore conclude that BAJI No. 3.75, the so-called

10  proximate cause instruction, should be disapproved and that the court erred when it refused to give

11  BAJI No. 3.76 and instead gave BAJI No. 3.75." *Id.* at 1054. If Altria were correct on this point,

12  then why would the pattern instructions provide only for a substantial factor instruction?

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] Cause in Fact**

**ALTRIA'S PROPOSAL:**

A defendant's conduct is a cause-in-fact of the Plaintiff's injury if, as a factual matter, it was a substantial factor in causing Plaintiff's alleged injury.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of California law. *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff must prove factual causation, which requires proving that a defendant's conduct was a substantial factor in bringing about the nuisance. Additionally, a plaintiff must establish that the defendant's wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate causation.") (internal cites omitted). Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly. *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient." *Id*. at 1052-54.

**PLAINTIFF'S POSITION:**

California does not instruct juries separately on cause-in-fact. Instead, the operative California pattern instructions collapse causation to a single substantial factor instruction. CACI 430. The liability elements already tell the jury it must find substantial factor causation, so this proposed instruction adds nothing. *See Mitchell v. Gonzalez*, 54 Cal. 3d 1041, 1052-53 (1991) (substantial factor "subsumes the 'but for' test.").

1

**Causation – Substantial Factor[36]**

2          A substantial factor in causing harm is a factor that a reasonable person would consider to

3   have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be

4   the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm

5   would have occurred without that conduct.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[36] CACI 430

**[Contested, Plaintiff-Proposed] Multiple Causes**

**PLAINTIFF'S PROPOSAL:**

A person's negligence may combine with another factor to cause harm. If you find that Altria's negligence was a substantial factor in causing SFUSD's harm, then Altria is responsible for the harm. Altria cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing SFUSD's harm.

**PLAINTIFF'S POSITION:**

The California pattern instructions require that this instruction (CACI 431) be given "[i]n cases of multiple (concurrent dependent) causes," i.e., where multiple persons cause harm. CACI 430, *Directions for Use*; *see also, e.g.*, *Uriell v. Regents of the Univ. of Cal.*, 234 Cal. App. 4th 735, 746-47 (2015) ("We are also not persuaded CACI No. 431 confused the jury or diluted the standard for causation. The [defendants] conflate the legal concepts of substantial factor for causation and concurrent cause. CACI No. 431 is necessary to explain to the jury a 'plaintiff need not prove that the defendant's negligence was the sole cause of plaintiff's injury in order to recover. Rather it is sufficient that defendant's negligence is a legal cause of injury, even though it operated in combination with other causes, whether tortious or nontortious.").

**ALTRIA'S POSITION:**

Altria objects to this instruction as duplicative of the other causation instructions.  In particular, this instruction is duplicative and repetitive of the substantial factor instruction.  There is no reason to instruct the jury on the substantial factor requirement twice.  To the contrary, doing so would only be potentially confusing to the jury and prejudicial.

**[Contested, Altria-Proposed] Legal Cause**

**ALTRIA'S PROPOSAL:**

If you determine that Altria's conduct is a cause-in-fact of the Plaintiff's injury, you must decide whether Altria's conduct was also a legal cause of the Plaintiff's injury.   A defendant's conduct is a legal cause of the Plaintiff's injury if the harm giving rise to the action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of the law regarding causation in California nuisance cases. *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 676 (N.D. Cal. 2020) ("A plaintiff must prove factual causation, which requires proving that a defendant's conduct was a substantial factor in bringing about the nuisance. Additionally, a plaintiff must establish that the defendant's wrongful conduct was not too remote from the current hazard to be its legal cause, i.e., proximate causation.") (internal cites omitted); *Schonbrun v. SNAP, Inc.*, 2022 WL 2903118, at *9 (C.D. Cal. Mar. 15, 2022), *reconsideration denied*, 2022 WL 2903128 (C.D. Cal. May 10, 2022) ("A long-standing principle of California nuisance law is that liability only extends to damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others.") (internal cite omitted); *see Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *7 (C.D. Cal. May 31, 2019) ("Moreover, some class members may not be entitled to any relief, for example if . . . Defendant's service was found not to be the legal cause of their injuries . . . .").  Plaintiff reads the holding of *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly.  *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient."  *Id*. at 1052-54.

**PLAINTIFF'S POSITION:**

California does not instruct juries separately on cause-in-fact and proximate cause. The California Supreme Court has held that giving a proximate cause instruction is legal error, and that instead courts should instruct on "the 'substantial factor' test." *Mitchell v. Gonzalez*, 54 Cal. 3d 1041, 1052-53 (1991). That test already tells the jury to rule out any "remote or trivial" causes.

1    Altria argues that Plaintiff misstates the holding of *Mitchell*, but the court there specifically

2    rejected a proximate cause instruction in favor of a substantial factor instruction: "Use of BAJI No.

3    3.76 [substantial factor] will avoid much of the confusion inherent in BAJI No. 3.75 [proximate

4    cause]. It is intelligible and easily applied. We therefore conclude that BAJI No. 3.75, the so-called

5    proximate cause instruction, should be disapproved and that the court erred when it refused to give

6    BAJI No. 3.76 and instead gave BAJI No. 3.75." *Id.* at 1054. If Altria were correct on this point,

7    then why would the pattern instructions provide only for a substantial factor instruction?

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 90 -

1   **[Contested, Altria-Proposed] Public Nuisance – Altria's Conduct Must Have Caused Harm**

2   **ALTRIA'S PROPOSAL:**

3       A Defendant is liable in nuisance only for the harm that resulted from the Defendant's

4   conduct that created or contributed to creating the nuisance.  Altria therefore would not be liable

5   for injuries or damages caused by separate entities, including JLI and JLI's officers and directors,

6   by Plaintiff, or by other third parties, including other companies that manufacture or sell other

7   brands of vapor products or other products more generally.  Nor is Altria liable for injuries or

8   damages caused by any alleged nuisance existing before actions by Altria that allegedly contributed

9   to that nuisance.

10  **ALTRIA'S POSITION:**

11      Altria's proposed instruction is an accurate statement of the law of public nuisance both in

12  California and more broadly. *See, e.g.*, Statement of Decision at 49, 98-99, *People of California v.*

13  *Atl. Richfield Co.*, Case No. 1-00-CV-788657 (Cal. Super. Ct. Jan. 7, 2014) (holding that lead paint

14  defendant, ARCO, could not be liable for alleged public nuisance created by other defendants:

15  "ARCO cannot be held liable for the alleged public nuisance because Plaintiffs presented no

16  evidence that any conduct by ARCO caused any portion of the alleged public nuisance."); *People*

17  *v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51, 65, 227 Cal. Rptr. 3d 499, 514 (2017)

18  (reversing abatement remedy for post-1950 homes after concluding that the "record lacks

19  substantial evidence to support the court's finding that their wrongful promotions were causally

20  connected to post-1950 homes containing interior lead paint built before 1980); *In re Nat'l*

21  *Prescription Opiate Litig.*, No. 18-OP-45032, 2022 WL 3443614, at *1 (N.D. Ohio Aug. 17, 2022)

22  (declining "to hold Defendants jointly and severally liable for the entire amount of abatement

23  costs").  This instruction is also necessary and appropriate here because many factors might have

24  caused the alleged nuisance and the Plaintiff's purported injuries.  The Court should make clear to

25  the jury that Altria is not liable for harms that Altria did not cause, including harms that were caused

26  by conduct that came before Altria engaged in conduct that created or contributed to the nuisance.

27  **PLAINTIFF'S POSITION:**

28      This instruction is repetitive and unnecessary in light of the other causation instructions,

1    including the multiple causes instruction (to which Altria objected) and the nuisance elements

2    instruction. The jury is already required by the pattern elements instruction to find "[t]hat Altria's

3    conduct was a substantial factor in causing SFUSD's harm."

4           Altria's proposed instruction is also inaccurate. First, the proposed instruction adopts the

5    framing that an injury or damages has only one cause, but that is not California law. *People v.*

6    *ConAgra Grocery Products Co*., 17 Cal.App.5th 51, 104 (Cal. App. 6th Dist. 2017) ("Under these

7    circumstances, the trial court could have reasonably concluded that defendants' promotions, which

8    were a substantial factor in creating the current hazard, were not too remote to be considered a legal

9    cause of the current hazard even if the actions of others in response to those promotions and the

10    passive neglect of owners also played a causal role."); CACI 431. Second, a defendant *can* be liable

11    for "injury or damages caused by … third parties," if the defendant's conduct was a substantial

12    factor in producing the harm. This instruction essentially asks the Court to instruct the jury that

13    superseding causes exist as a matter of law.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **[Contested, Altria-Proposed] Public Nuisance – Injury to Property**

2  **ALTRIA'S PROPOSAL:**

3  SFUSD must prove that its property was injuriously affected by Altria's conduct.  An injury

4  to property consists in depriving its owner of the benefit of it, which is done by taking, withholding,

5  deteriorating, or destroying it.

6  **ALTRIA'S POSITION:**

7  Altria's proposed instruction is an accurate statement of law.  Plaintiff argues that they have

8  standing to sue because "SFUSD is a person who suffered property damage under the first sentence

9  of Cal. Civ. Proc. Code § 731 . . . ."  Dkt. 3349 Plaintiff's Opposition to JLI's Motion for Summary

10  Judgment at 3. Accordingly, Plaintiff must be able to prove that there was injury to its property, a

11  phrase which is defined by California's Code of Civil Procedure. Cal. Civ. Proc. Code § 731 ("An

12  action may be brought by any person whose property is injuriously affected, or whose personal

13  enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the

14  judgment in that action the nuisance may be enjoined or abated as well as damages recovered

15  therefor."); Cal. Code Civ. Proc. 28 ("An injury to property consists in depriving its owner of the

16  benefit of it, which is done by taking, withholding, deteriorating, or destroying it.").

17  **PLAINTIFF'S POSITION:**

18  Altria does not explain why this instruction is necessary given that the jury will already

19  have been instructed by the elements instruction that it must find "[t]hat SFUSD's property was

20  injuriously affected, or whose personal enjoyment was lessened by the nuisance."

21  Altria's instruction is also missing the language from Section 731 permitting a claim when

22  "personal enjoyment is lessened." Cal. Civ. Proc. Code § 731; *see* Doc. 3349 (Pls. S.J. Opp'n) at

23  113 (SFUSD has standing to bring a public nuisance claim under the first sentence [of § 731],

24  because its property has been injured and its enjoyment lessened through disruption in its operations

25  as a result of the public health crisis of youth vaping.").  Injury to property also includes "an injury

26  specifically referable to the use and enjoyment of [the plaintiff's] land." *Koll-Irvine Ctr. Prop.*

27  *Owners Assn. v. County of Orange,* 24 Cal. App. 4th 1036, 1041 (1994). There need not be direct

28  damage or loss of use to constitute the necessary interference. *Andrews v. Plains All Am. Pipeline,*

1  *L.P.,* No. 15-4113, 2020 WL 1650031, at *4 (C.D. Cal. Mar. 17, 2020). For example, noise, smoke,

2  vibrations, and odors constitute property damage under California law. *Id.*

**[Contested, Competing Proposals] Negligence – Essential Factual Elements**

**PLAINTIFF'S PROPOSAL:**

Plaintiff claims that it was harmed by Altria's negligence. To establish this claim, SFUSD must prove all of the following:

1.      That Altria was negligent;

2.      That SFUSD was harmed; and

3.      That Altria's negligence was a substantial factor in causing SFUSD's harm.

**ALTRIA'S PROPOSAL:**

Plaintiff claims that it was harmed by Altria's negligence. To establish this claim, SFUSD must prove all of the following:

1.      That Altria was negligent;

2.      That SFUSD was harmed; and

3.      That Altria's negligence was the cause of SFUSD's harm.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction is a verbatim reproduction of CACI 400. Altria has altered the pattern instruction to provide that Altria's negligence needs to be "the cause" of SFUSD's harm, rather than merely a "substantial factor" in causing the harm. This is legal error. A defendant's negligence need only be a substantial factor in causing harm, not "the cause" of the plaintiff's harm. CACI 400; CACI 430 (causation instruction); *see, e.g.*, *Eisenbise v. Crown Equip. Corp.*, 260 F. Supp. 3d 1250, 1267 (S.D. Cal. 2017) ("A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.") (citation omitted). Altria says that its additional (unnecessary) causation instructions clear up the confusion, but even if true, that is not a justification for introducing inaccurate statements of the law.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of the law. The language is closely derived from Cal. Civil Jury Instruction 400 – "Negligence, essential factual elements."  Altria below proposes separate instructions on causation for negligence claims that explain this

1    requirement.  Accordingly, there is no reason to be specific about what causation requires in the

2    context of this more general instruction setting forth the elements of negligence.  Moreover, even

3    if there was a reason to provide more detail concerning the causation requirement for negligence

4    claims in this instruction, Altria objects to the Plaintiff's language because it refers only to the

5    requirement that the negligence be a substantial factor in causing Plaintiff's harm.  Plaintiff also

6    must prove that Altria's conduct was the legal cause of Plaintiff's harm.  *See Ethan Young, v. Dexter*

7    *Watson et al.*, 2017 WL 6621233 (Cal. Super. 2017) (instructing jury on cause in fact and legal

8    cause); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) ("Proximate cause 'limits the

9    defendant's liability to those foreseeable consequences that the defendant's negligence was a

10   substantial factor in producing.'").  Accordingly, if the Court is inclined to include the "substantial

11   factor" language in the Plaintiff's proposal it should also provide not only that "Altria's negligence

12   was a substantial factor in causing SFUSD's harm" but also that it was a "legal cause of that harm."

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Negligence – Basic Standard of Care[37]

2    Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

3    A person can be negligent by acting or failing to act. A person is negligent if that person

4 does something that a reasonably careful person would not do in the same situation or fails to do

5 something that a reasonably careful person would do in the same situation.

6    You must decide how a reasonably careful person would have acted in Altria's situation.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[37] CACI 401

**[Contested, Altria-Proposed] Duty of Care Required**

**ALTRIA'S PROPOSAL:**

Altria can only be liable for negligence if it assumed a duty of care toward the Plaintiff.  In order to find that Altria assumed a duty of care toward Plaintiff, you must find that Altria's conduct put Plaintiff directly at risk of suffering injury and that Plaintiff's harm was closely tied to Altria's actions.  If you conclude that Altria did not assume a duty of care toward Plaintiff, Altria would not be liable for negligence.

**ALTRIA'S POSITION:**

Although the question of duty is often a legal one, this Court has previously concluded in this litigation that the question of duty raises "matters for the jury to evaluate."  Order on Defs. Motions for Summary Judgment Regarding B.B., ECF 3083 (Apr. 29, 2022); *see also Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 143 (2018) ("A plaintiff in any negligence suit must demonstrate a legal duty to use due care . . . ."); *id.* ("Courts . . . invoke[ ] the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act . . . .").

**PLAINTIFF'S POSITION:**

It is not appropriate to instruct the jury on the duty element. Duty "is a legal issue and must be determined by the court." *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1339 (2014) (citation omitted). As a general matter, duty does not turn "on case-specific facts" but instead reflects a judicial determination on "the category of negligent conduct at issue." *Cabral v. Ralphs Grocery Store Co.*, 51 Cal. 4th 764, 773 (2011); *see also id.* at 774 ("To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances."). For this reason, the California pattern jury instruction do not include duty instructions.

California arguably recognizes an exception to this rule where duty is a function of specific fact questions. *See O'Malley v. Hospitality Staffing Sols.*, 20 Cal. App. 5th 21, 27 (2018) ("[U]nder a negligent undertaking theory of liability, the scope of a defendant's duty presents a jury issue when there is a factual dispute as to the nature of the undertaking."). Here, the duty analysis rests on standard considerations of foreseeability and public policy that are legal questions for the Court

1   to consider. *See Kaney v. Custance*, 74 Cal. App. 5th 201, 215 (2022) ("Foreseeability is a question
2   of law."); *Carter v. Nat'l R.R. Passenger Corp.*, 63 F. Supp. 3d 1118, 1146 (N.D. Cal. 2014) ("[A]
3   court's task—in determining "duty"—is not to decide whether a particular plaintiff's injury was
4   reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more
5   generally whether the category of negligent conduct at issue is sufficiently likely to result in the
6   kind of harm experienced that liability may appropriately be imposed on the negligent party. The
7   jury, by contrast, considers "foreseeability" in two more focused, fact-specific settings. First, the
8   jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the
9   particular defendant's conduct was negligent in the first place. Second, foreseeability may be
10  relevant to the jury's determination of whether the defendant's negligence was a proximate or legal
11  cause of the plaintiff's injury.") (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986)).

12      Altria relies on this Court's statement in *B.B.*, rejecting Altria's motion for summary
13  judgment on the duty element, that Altria's actions were "matters for the jury to evaluate." *In re
14  JUUL*, No. 19-2913, 2022 WL 1601418, at *14 (N.D. Cal. Apr. 29, 2022). All that this meant was
15  that the jury could decide, in evaluating breach and causation, whether Altria's knowledge and
16  actions foreseeably and actually harmed B.B., not that duty was a jury question. In addition, the
17  Court noted, that, while "duty is a matter of law to be determined by the Court, as the summary
18  judgment stage the trial court must view the evidence of foreseeability, risk and burden in the light
19  most favorable to the non-moving party." *Id.* (citation omitted). Altria is free to revisit its duty
20  arguments on the full record.

21

22

23

24

25

26

27

28

1

**[Contested, Altria-Proposed] Negligence – Economic Loss**

2

**ALTRIA'S PROPOSAL:**

3

Plaintiff's claims are based on economic losses.  Altria did not owe SFUSD a duty to guard

4

against economic losses, and thus would not be liable for negligence, unless SFUSD has proven

5

that SFUSD and Altria have a special relationship, meaning that SFUSD was an intended

6

beneficiary of a particular transaction with Altria and was harmed by Altria's negligence in carrying

7

out that transaction.  You should not find a special relationship between the intended beneficiary –

8

here, SFUSD – and Altria unless you find the aim of the transaction between them is to ensure a

9

benefit to SFUSD.  You must decide whether SFUSD had a special relationship with Altria.

10

**ALTRIA'S POSITION:**

11

Although the question of duty is often a legal one, this Court has previously concluded in

12

this litigation that the question of duty raises "matters for the jury to evaluate."  Order on Defs.

13

Motions for Summary Judgment Regarding B.B., ECF 3083 (Apr. 29, 2022); *see also Modisette v.*

14

*Apple Inc.*, 30 Cal. App. 5th 136, 143 (2018) ("A plaintiff in any negligence suit must demonstrate

15

a legal duty to use due care . . . ."); *id.* ("Courts . . . invoke[ ] the concept of duty to limit generally

16

the otherwise potentially infinite liability which would follow from every negligent act . . . .").

17

Altria's proposed instruction also accurately states the law.  Where economic loss is

18

claimed, the question of duty involves the determination of factual questions, including whether a

19

special relationship existed between the plaintiff and the defendant. *See Southern California Gas*

20

*Leak Cases*, 7 Cal. 5th 391, 400, 247 Cal. Rptr. 3d 632, 441 P.3d 881 (2019) (internal citations

21

omitted); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 398-99 (1992); *Biakanja v. Irving*, 49 Cal. 2d

22

647, 650 (1958).  A duty of care is not presumed in economic loss cases; rather, a determination

23

whether the plaintiff and defendant have a "special relationship" is required.  *Gas Leak Cases*, 7

24

Cal. 5th at 400.  This determination, in turn, requires an examination of whether the plaintiff was

25

the intended beneficiary of a particular transaction between them.  *Id.*; *Biankanja*, 49 Cal. 2d at

26

650-51. The determination requires "more than mere foreseeability" and fills the need of "setting

27

meaningful limits on liability."  *Gas Leak Cases*, at 401 (discussing *Bily v. Arthur Young & Co.*, 3

28

Cal. 4th 370, 398-99 (1992)).

**PLAINTIFF'S POSITION:**

It is not appropriate to instruct the jury on the duty element—see argument on related instructions above. Even if it were, Altria's proposed instruction misstates the applicable analysis. Duty is a multi-factor analysis, not a single question. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979) (listing factors); *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, (2019) (noting that the duty analysis "can … be a subtle enterprise" that "turns on a careful consideration of the sum total of the policy considerations at play") (citation omitted). Altria's proposed instruction not only iterates a single factor, but misstates that factor: the question is not whether conduct was intended to benefit the plaintiff, but "*the extent to which*" the conduct was intended to "*affect*" the plaintiff. *S Cal. Gas*, 7 Cal. 5th at 401.

1    **[Contested, Altria-Proposed] Duty of Care – No Duty to Control Others**

2    **ALTRIA'S PROPOSAL:**

3         Altria did not and does not have a legal duty to control the conduct of separate entities or

4    third parties, including JLI and JLI's officers and directors, or to warn those endangered by such

5    conduct.

6    **ALTRIA'S POSITION:**

7         Altria's proposed instruction accurately states California law. *Regents of Univ. of Cal. v.*

8    *Superior Court*, 413 P.3d 656, 663-63 (Cal. 2018) ("A person who has not created a peril is not

9    liable in tort merely for failure to take affirmative action to assist or protect another unless there is

10   some relationship between them which gives rise to a duty to act.") (citation and quotations

11   omitted); *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982) ("As a general rule, one

12   owes no duty to control the conduct of another, nor to warn those endangered by such conduct.").

13   This instruction is also necessary and appropriate here given the different entities involved in the

14   design, manufacture, distribution, marketing, and sale of JUUL and those entities' different alleged

15   conduct and would help explain to the jury that another entity's negligent conduct, including JLI

16   and the other former Defendants, does not establish that Altria breached a duty or engaged in

17   negligent conduct.

18   **PLAINTIFF'S POSITION:**

19        It is not appropriate to instruct the jury on the duty element—see argument on related

20   instructions above. Even if it were, this proposed instruction lacks a factual basis. Plaintiff's

21   allegations do not rest on the claim that Altria merely failed to take affirmative action to assist or

22   protect another.  This case is about affirmative, unreasonable conduct.

23

24

25

26

27

28

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

1    **[Contested, Altria-Proposed] Negligence – Breach of Duty of Care Required**

2    **ALTRIA'S PROPOSAL:**

3         If you find that Altria owed a duty of care to Plaintiff, you must also determine if Altria

4    breached the duty of care.  A person breaches the duty of care if it fails to act as a similarly situated

5    person would in order to protect others against unreasonable risks of harm.  If you conclude that

6    Altria did not breach a duty of care toward Plaintiff, Altria would not be liable for negligence.

7    **ALTRIA'S POSITION:**

8         Altria's proposed instruction accurately states California law. *Jones v. Awad*, 39 Cal. App.

9    5th 1200, 1208, 252 Cal. Rptr. 3d 596, 603 (2019) (failure to "use the care required of a reasonably

10   prudent [person] acting under the same circumstances" constitutes a breach); *John B. v. Superior*

11   *Ct.*, 38 Cal. 4th 1177, 1188 (2006) (breach requires that defendant fail to use "ordinary care to

12   prevent others being injured as a result of [defendant's] conduct").

13   **PLAINTIFF'S POSITION:**

14        This proposed instruction is in part incorrect and in part redundant. It is incorrect in that it

15   informs the jury it must find Altria owed a duty of care. For the reasons explained above in related

16   instructions, duty is a legal question for the court, not for the jury. It is redundant the

17   unobjectionable portions of this instructions are contained within the agreed-upon pattern

18   instruction "Basic Standard of Care" (CACI 401).

19

20

21

22

23

24

25

26

27

28

1  **[Contested, Altria-Proposed] Negligence – Claim Limited To Altria's Conduct**

2  **ALTRIA'S PROPOSAL:**

3      Plaintiff's negligence claim against Altria must be based on Altria's conduct.  Plaintiff

4  cannot establish a negligence claim against Altria based on the conduct of separate entities or third

5  parties, including JLI and JLI's officers and directors.

6  **ALTRIA'S POSITION:**

7      Altria's proposed instruction accurately states California law. *Miller Family Tr. v. Nielsen*,

8  2012 WL 13227085, at *4 (C.D. Cal. July 31, 2012) ("Defendants' liability must be predicated

9  upon their own conduct."); *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995,

10  1009 (N.D. Cal. 2001) (individual defendant's liability turns on their own conduct and involvement

11  in various alleged schemes); *Lawson v. Safeway Inc.*, 191 Cal. App. 4th 400, 417, 119 Cal. Rptr.

12  3d 366, 379 (2010) ("[T]he defendant may be liable if ***his conduct*** was 'a substantial factor' in

13  bringing about the harm . . . .") (emphasis added); *Michael R. v. Jeffrey B.*, 158 Cal. App. 3d 1059,

14  1068, 205 Cal. Rptr. 312, 319 (Ct. App. 1984) ("[I]t is essential that the defendant's own conduct

15  was tortious.").  This instruction is also necessary and appropriate here given the different entities

16  involved in the design, manufacture, distribution, marketing, and sale of JUUL and different

17  conduct in which those entities allegedly engaged and would help explain to the jury that a separate

18  entity or party's negligent conduct does not establish that Altria breached a duty or engaged in

19  negligent conduct.

20  **PLAINTIFF'S POSITION:**

21      This instruction is a factual argument inappropriate for a jury instruction. Other instructions

22  adequately inform the jury that it must find that Altria's conduct caused harm. Plaintiff's claim is

23  that Altria and the JLI Defendants acted together to cause the harm. This instruction improperly

24  implies that JLI involvement in Altria's conduct absolves Altria of liability.

25

26

27

28

**[Contested, Altria-Proposed] Causation**

**ALTRIA'S PROPOSAL:**

Plaintiff's negligence claim requires proof of two types of causation: cause-in-fact and legal cause.

**ALTRIA'S POSITION:**

Altria proposes additional language that further clarifies a defendant cannot be liable for remote causes that are too far removed from the alleged injury or that are separated by too many intervening events.  This is a well-established principle of California law that is not directly addressed by the model instruction.  *See Novak v. Cont'l Tire North America*, 231 Cal. Rptr. 3d 324, 328 (Cal. Ct. App. 2018) (requiring both cause in fact and proximate cause, which limits liability according to public policy considerations); *see Ethan Young, v. Dexter Watson et al.*, 2017 WL 6621233 (Cal. Super. 2017) (instructing jury on cause in fact and legal cause).  Altria's proposed language follows the language from *Union Pac. R.R. Co. v. Ameron Pole Prods., LLC*, 43 Cal. App. 5th 974, 980 (2019) ("To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury.").  This instruction is also necessary and appropriate here given the Plaintiff's alleged injuries and the evidence and arguments that Plaintiff is likely to offer at trial.  Plaintiff's alleged harms are based on the actions of students whose use of vapor products is several steps removed from Altria's allegedly negligent conduct.  The jury therefore should be instructed that causation requires more than an attenuated or remote connection between Altria's conduct and Plaintiff's purported harm.  Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly.  *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient."  *Id.* at 1052-54.

**PLAINTIFF'S POSITION:**

Below, the parties have agreed on CACI 430, the pattern substantial factor instruction. This instruction, and the following few instructions, reflect a dispute over whether the jury must also be instructed on proximate cause.

1    California does not instruct juries separately on cause-in-fact and proximate cause. The

2    California Supreme Court has held that giving a proximate cause instruction is legal error, and that

3    instead courts should instruct on "the 'substantial factor' test." *Mitchell v. Gonzalez*, 54 Cal. 3d

4    1041, 1052-53 (1991). This test "subsumes the 'but for' test." *Id.* It also helps the jury resolve (1)

5    "the problem of independent causes," (2) "where a similar, but not identical result would have

6    followed without the defendant's act," and (3) "where one defendant has made a clearly proved by

7    quite insignificant contribution to the result." *Id.* For this reason, the operative California patter

8    instructions collapse causation to a single substantial factor instruction. CACI 430.

9    Altria argues that Plaintiff misstates the holding of Mitchell, but the court there specifically

10   rejected a proximate cause instruction in favor of a substantial factor instruction: "Use of BAJI No.

11   3.76 [substantial factor] will avoid much of the confusion inherent in BAJI No. 3.75 [proximate

12   cause]. It is intelligible and easily applied. We therefore conclude that BAJI No. 3.75, the so-called

13   proximate cause instruction, should be disapproved and that the court erred when it refused to give

14   BAJI No. 3.76 and instead gave BAJI No. 3.75." Id. at 1054. If Altria were correct on this point,

15   then why would the pattern instructions provide only for a substantial factor instruction?

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] Cause In Fact**

**ALTRIA'S PROPOSAL:**

Altria's conduct would be a cause-in-fact of the Plaintiff's injury if, as a factual matter, it was a substantial factor in causing Plaintiff's alleged injury.

**ALTRIA'S POSITION:**

Altria proposes additional language that further clarifies a defendant cannot be liable for remote causes that are too far removed from the alleged injury or that are separated by too many intervening events. This is a well-established principle of California law that is not directly addressed by the model instruction. *See Novak v. Cont'l Tire North America*, 231 Cal. Rptr. 3d 324, 328 (Cal. Ct. App. 2018) (requiring both cause in fact and proximate cause, which limits liability according to public policy considerations); *see Ethan Young, v. Dexter Watson et al.*, 2017 WL 6621233 (Cal. Super. 2017) (instructing jury on cause in fact and legal cause). Altria's proposed language follows the language from *Union Pac. R.R. Co. v. Ameron Pole Prods., LLC*, 43 Cal. App. 5th 974, 980 (2019) ("To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury."). This instruction is also necessary and appropriate here given the Plaintiff's alleged injuries and the evidence and arguments that Plaintiff is likely to offer at trial. Plaintiff's alleged harms are based on the actions of students whose use of vapor products is several steps removed from Altria's allegedly negligent conduct. The jury therefore should be instructed that causation requires more than an attenuated or remote connection between Altria's conduct and Plaintiff's purported harm. Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly. *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient." *Id*. at 1052-54.

**PLAINTIFF'S POSITION:**

California does not instruct juries separately on cause-in-fact. Instead, the operative California pattern instructions collapse causation to a single substantial factor instruction. CACI 430. The liability elements already tell the jury it must find substantial factor causation, so this

1   proposed instruction adds nothing. *See Mitchell v. Gonzalez*, 54 Cal. 3d 1041, 1052-53 (1991)

2   (substantial factor "subsumes the 'but for' test.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Causation – Substantial Factor[38]**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

---

[38] CACI 430

**[Contested, Plaintiff-Proposed] Causation – Multiple Causes**

**PLAINTIFF'S PROPOSAL:**

A person's negligence may combine with another factor to cause harm. If you find that Altria's negligence was a substantial factor in causing Plaintiff's harm, then Altria is responsible for the harm. Altria cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiff's harm.

**PLAINTIFF'S POSITION:**

The California pattern instructions require that this instruction (CACI 431) be given "[i]n cases of multiple (concurrent dependent) causes," i.e., where multiple persons cause harm. CACI 430, *Directions for Use*; *see also, e.g.*, *Uriell v. Regents of the Univ. of Cal.*, 234 Cal. App. 4th 735, 746-47 (2015) ("We are also not persuaded CACI No. 431 confused the jury or diluted the standard for causation. The [defendants] conflate the legal concepts of substantial factor for causation and concurrent cause. CACI No. 431 is necessary to explain to the jury a 'plaintiff need not prove that the defendant's negligence was the sole cause of plaintiff's injury in order to recover. Rather it is sufficient that defendant's negligence is a legal cause of injury, even though it operated in combination with other causes, whether tortious or nontortious.").

**ALTRIA'S POSITION:**

Altria objects to this instruction as duplicative of the other causation instructions and potentially confusing to the jury and prejudicial.

**[Contested, Altria-Proposed] Legal Cause**

**ALTRIA'S PROPOSAL:**

If you determine that Altria's conduct was a cause-in-fact of the Plaintiff's injury, you must decide whether Altria's conduct was also a legal cause of the Plaintiff's injury.

A defendant's conduct is a legal cause of the plaintiff's injury if the harm giving rise to the action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with well-established California law that is not directly addressed by the model instruction. *See Ethan Young, v. Dexter Watson et al.*, 2017 WL 6621233 (Cal. Super. 2017) (instructing jury on cause in fact and legal cause); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) ("Proximate cause 'limits the defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing.'"). Altria's proposed language follows the language from *Union Pac. R.R. Co. v. Ameron Pole Prods., LLC*, 43 Cal. App. 5th 974, 980 (2019) ("To prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury."). This instruction is also necessary and appropriate here given the Plaintiff's alleged injuries and the evidence and arguments that Plaintiff is likely to offer at trial. Plaintiff's alleged harms are based on the actions of students whose use of vapor products is several steps removed from Altria's allegedly negligent conduct. The jury therefore should be instructed that causation requires more than an attenuated or remote connection between Altria's conduct and Plaintiff's purported harm. Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly. *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient." *Id*. at 1052-54.

**PLAINTIFF'S POSITION:**

California does not instruct juries separately on cause-in-fact and proximate cause. The California Supreme Court has held that giving a proximate cause instruction is legal error, and that

1   instead courts should instruct on "the 'substantial factor' test." *Mitchell v. Gonzalez*, 54 Cal. 3d

2   1041, 1052-53 (1991). That test already tells the jury to rule out any "remote or trivial" causes.

3           Altria argues that Plaintiff misstates the holding of *Mitchell*, but the court there specifically

4   rejected a proximate cause instruction in favor of a substantial factor instruction: "Use of BAJI No.

5   3.76 [substantial factor] will avoid much of the confusion inherent in BAJI No. 3.75 [proximate

6   cause]. It is intelligible and easily applied. We therefore conclude that BAJI No. 3.75, the so-called

7   proximate cause instruction, should be disapproved and that the court erred when it refused to give

8   BAJI No. 3.76 and instead gave BAJI No. 3.75." *Id.* at 1054. If Altria were correct on this point,

9   then why would the pattern instructions provide only for a substantial factor instruction?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **[Contested, Altria-Proposed] Legal Cause Cannot Be Remote or Indirect**

2     **ALTRIA'S PROPOSAL:**

3          Legal cause requires a direct connection between the injury asserted and Altria's allegedly

4     wrongful conduct.  Legal cause would not exist if you do not find a direct relation between the

5     injury asserted and Altria's specific conduct.

6     **ALTRIA'S POSITION:**

7          This instruction accurately states the law.  *See* CACI 430 ("A substantial factor in causing

8     harm is a factor that a reasonable person would consider to have contributed to the harm. It must

9     be more than a remote or trivial factor. It does not have to be the only cause of the harm."); *Ozeran*

10    *v. Jacobs*, 2018 WL 1989525, at *7 (C.D. Cal. 2018) (dismissing negligence claims where

11    economic harm was "too attenuated to meet the directness requirement for proximate cause"), *aff'd*,

12    798 F. App'x 120 (9th Cir. 2020); *Oregon Laborers-Emp. Health & Welfare Tr. Fund v. Philip*

13    *Morris Inc.*, 185 F.3d 957, 965 (9th Cir. 1999) ("The difficulty of ascertaining the damages

14    attributable to defendants' alleged wrongful conduct and the complexity involved in calculating

15    these damages weigh heavily, if not dispositively, in favor of barring plaintiffs' actions."); *In re*

16    *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 906

17    (N.D. Cal. 2018); *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 607,

18    106 Cal. Rptr. 2d 1, 9 (2001).  This instruction is also necessary and appropriate here given the

19    Plaintiff's alleged injuries and the evidence and arguments that Plaintiff is likely to offer at trial.

20    Plaintiff's alleged harms are based on the actions of students whose use of vapor products is several

21    steps removed from Altria's allegedly negligent conduct.  The jury therefore should be instructed

22    that causation requires more than an attenuated or remote connection between Altria's conduct and

23    Plaintiff's purported harm.  In addition, this instruction is necessary and appropriate given the lack

24    of evidence linking SFUSD's injuries to Altria's conduct.  The jury should be informed that an

25    attenuated, indirect, and remote link between Altria and SFUSD, even if one could be established,

26    is not sufficient to demonstrate causation as necessary to support liability. Plaintiff reads *Mitchell*

27    *v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly.  *Mitchell* held only that the specific proximate

28    cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was

"conceptually and grammatically deficient." *Id*. at 1052-54.

**PLAINTIFF'S POSITION:**

California does not instruct juries separately on cause-in-fact and proximate cause. The California Supreme Court has held that giving a proximate cause instruction is legal error, and that instead courts should instruct on "the 'substantial factor' test." *Mitchell v. Gonzalez*, 54 Cal. 3d 1041, 1052-53 (1991).

**[Contested, Altria-Proposed] Causation – Time of Misconduct**

**ALTRIA'S PROPOSAL:**

Conduct that occurred after a harm took place cannot be the cause-in-fact or legal cause of a harm.

**ALTRIA'S POSITION:**

This instruction accurately states the law.  *See, e.g.*, *Novak v. Cont'l Tire N. Am.*, 22 Cal. App. 5th 189, 197 (2018) ("[A] defendant's 'conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.'") (quoting Rest.2d, Torts, § 435(2)); *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 352 (2015) ("An act is a cause in fact if it is a necessary antecedent of an event.").  This instruction also is appropriate and necessary given the claims and evidence in this case.  Plaintiff's factual allegations and evidence concerning Altria are limited to a discrete period of time that began well after JUUL was introduced and well after Plaintiff claims to have been injured.  This instruction is therefore needed to help to avoid juror confusion and to help ensure that the jury does not award damages against Altria based on conduct for which Altria cannot be liable. SFUSD's objection that the instruction has no factual basis because its "injury is current and ongoing" pre-judges the evidence and amounts to a premature request for judgment as a matter of law on a discrete issue before trial even begins.  Plaintiff reads *Mitchell v. Gonzalez*, 54 Cal. 3d 1041 (1991), too broadly.  *Mitchell* held only that the specific proximate cause instruction in BAJI No. 3.75 was error because the specific language in that instruction was "conceptually and grammatically deficient."  *Id.* at 1052-54.

**PLAINTIFF'S POSITION:**

This proposed instruction has no basis in the California pattern instructions. Those pattern instructions adequately instruct the jury that it must find Altria's negligence was a substantial factor in causing SFUSD harm. This proposed instruction references terms like "cause-in-fact" and "legal cause" when those are not portions of the California jury instructions and, indeed, it would be legal error to instruct in that fashion. *Mitchell v. Gonzalez*, 54 Cal. 3d 1041, 1052-53 (1991).

1       This proposed instruction also lacks a factual basis. Here, SFUSD's injury is current and

2   ongoing, so there is no factual basis to instruct the jury on conduct that post-dated the harm.

- 116 -

1       **[Contested, Altria-Proposed] Negligence – Liability Limited to Harm Caused**

2       **ALTRIA'S PROPOSAL:**

3           A defendant who is liable in nuisance or negligence is liable only for the portion of injuries

4       or damages that was caused by that defendant's conduct.  Altria therefore is not liable for injuries

5       or damages caused by separate entities, including JLI and JLI's officers and directors, Plaintiff, or

6       by other third parties, including other companies that manufacturer or sell other brands of vapor

7       products or other products more generally.

8       **ALTRIA'S POSITION:**

9           This instruction accurately states the law. *B.B. v. Cnty. of Los Angeles*, 10 Cal. 5th 1, 14,

10      471 P.3d 329, 338 (2020) ("'[L]iability for damage will be borne by those whose negligence caused

11      it in direct proportion to their respective fault' . . . meaning 'the amount of [their] negligence.'")

12      (internal citation and quotation omitted).  This instruction is also necessary and appropriate given

13      the number of entities and third parties that may have contributed to vapor use by students at

14      Plaintiff's schools.  Providing a separate instruction on liability being limited to harm caused will

15      help avoid juror confusion.

16      **PLAINTIFF'S POSITION:**

17          To the extent this instruction is accurate, it is redundant with the California pattern

18      instructions on comparative fault. It is also inaccurate. First, the proposed instruction adopts the

19      framing that an injury or damages has only one cause, but that is not California law. *See Uriell v.*

20      *Regents of the Univ. of Cal.*, 234 Cal. App. 4th 735, 746-47 (2015) ("[A] plaintiff need not prove

21      that the defendant's negligence was the sole cause of plaintiff's injury in order to recover. Rather

22      it is sufficient that defendant's negligence is a legal cause of injury, even though it operated in

23      combination with other causes, whether tortious or nontortious."). Second, a defendant *can* be liable

24      for "injury or damages caused by … third parties," if the defendant's conduct was a substantial

25      factor in producing the harm. This instruction essentially asks the Court to instruct the jury that

26      superseding causes existed as a matter of law.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Negligence – Reliance on Good Conduct of Others**[39]

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless that person knows, or should know, that the other person will not use reasonable care or will violate the law.

---

[39] CACI 411

**RICO – Introduction**

Plaintiff claims that Altria is liable to SFUSD under the RICO statute.

I will now instruct you on the elements of Plaintiff's RICO claim. As relevant here, there are two different ways to violate RICO: (1) conducting the affairs of an enterprise through a pattern of racketeering or (2) conspiring to do so. Plaintiff alleges both theories. Plaintiff alleges that Altria participated in a fraud scheme and conspired with several individuals who worked as officers or directors of JLI. Those individuals are named James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

Plaintiff alleges that the RICO enterprise is JLI.   Plaintiff alleges that James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani  began conducting the affairs of the enterprise through a pattern of racketeering activity or conspiring to do so in 2015 or earlier. Plaintiff alleges that Altria began conducting the affairs of the enterprise through a pattern of racketeering activity, or conspiring to do so, in 2017.

1

**RICO – Conducting the Affairs of An Enterprise – Elements**[40]

2     Plaintiff first alleges that Altria conducted or participated in the conduct of the affairs of an

3   enterprise through a pattern of racketeering activity.

4     Plaintiff must prove each of the following elements by a preponderance of the evidence:

5     First, an enterprise existed.

6     Second, Altria was employed by or associated with the enterprise.

7     Third, Altria conducted or participated, directly or indirectly, in the affairs of the enterprise

8   through a pattern of racketeering activity. To conduct or participate means that Altria had to be

9   involved in the operation or management of the enterprise; and

10    Fourth, Altria's conduct or participation in the enterprise was a cause of Plaintiff's injury

11  to business or property.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[40] *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 58

**[Contested, Competing Proposals] RICO – Enterprise**

**PLAINTIFF'S PROPOSAL:**

An enterprise includes any legal entity, such as a partnership, corporation, or association. The Plaintiff has charged that the enterprise in this case is JLI. If you find that JLI was, in fact, a legal entity, such as a partnership, corporation, or association, then you may find that an enterprise existed.

**ALTRIA'S PROPOSAL:**

An enterprise includes any legal entity, such as a partnership, corporation, or association. The Plaintiff has charged that the RICO enterprise in this case is JLI, a corporation, conducting its affairs through a pattern of racketeering activity.

**PLAINTIFF'S POSITION:**

*See* Modern Federal Jury Instructions (Civil Volumes) Instruction 84-24 (March 2022). The Court should follow the pattern federal jury instructions. JLI attempts to conflate issues by invoking the pattern of racketeering activity, which is a separate element of a RICO claim. The instruction is directed only to the direction of an enterprise, so Plaintiff's proposal is on point, while Altria's proposal is confusing.

Altria's position that an enterprise cannot exist to carry out a corporation's activities is directly contrary to Supreme Court authority. That was the precise issue in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), and the Supreme Court allowed the claim based on Don King's fraudulent conduct through his corporation. *See id.* at 163 (holding that RICO claim was valid in "circumstances in which a corporate employee, acting within the scope of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way").

**ALTRIA'S POSITION:**

Altria objects to portions of the Plaintiff's proposed instruction as contrary to the law, incomplete, and prejudicial. Subject to these objections, Altria provides its own proposal for this instruction, which is more appropriate than the Plaintiff's proposal for the reasons set forth below.

The first sentence is the same in Altria's proposal and Plaintiff's proposal. The second sentence is the same except for language added by Altria that states that the RICO enterprise refers

1    to JLI acting "through a pattern of racketeering activity."  In addition, Altria deletes the last

2    sentence in Plaintiff's proposal to remove language suggesting that a finding that JLI is a

3    corporation necessarily means that JLI is an enterprise.  The changes reflected in Altria's proposed

4    instruction are necessary to provide an accurate description of what qualifies as a RICO enterprise.

5    By contrast, Plaintiff's proposed instruction would tell the jury that every "corporation" is a RICO

6    enterprise.  Such an instruction misstates RICO law and would be prejudicial to Altria and

7    confusing to the jury.

8          Contrary to the Plaintiff's proposed definition, a "corporation carrying out its own activities

9    (even fraudulent ones) only through its agents and employees does not constitute an enterprise."  *In*

10   *re: General Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *12 (S.D.N.Y. Jul. 15, 2016).

11   For that reason, "[n]ot every business fraud case is a RICO case," and courts decline to find a RICO

12   enterprise when the RICO defendants merely conducted the "normal business activity" of the

13   corporate entity.  *Cisneros v. Petland, Inc.*, 341 F. Supp. 3d 1365, 1372 (N.D. Ga. 2018), *aff'd in*

14   *relevant part*, 972 F.3d 1204 (11th Cir. 2020); *see also Gardner v. Starkist Co.*, 418 F. Supp. 3d

15   443, 461 (N.D. Cal. 2019) (fraudulent marketing, advertising, and labeling of tuna as sustainably

16   sourced was "routine commercial dealing" that could not be converted into "a RICO enterprise" by

17   characterizing it as such); *Ferrari v. Mercedes-Benz USA, LLC*, No. 15-CV-04379, 2016  WL

18   7188030, at *3-4 (N.D. Cal. Dec. 12, 2016) (dismissing RICO claims where complaint failed to

19   allege conduct by defendants distinct from their roles as officers and employees of the companies

20   alleged to be RICO enterprises); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016)

21   ("[A] corporate defendant acting through its officers, agents, and employees is simply a

22   corporation.  Labeling it as an enterprise as well would only amount to referring to the corporate

23   'person' by a different name." (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161

24   (2001))).  By contrast, in the few cases where a legal entity was alleged to be the RICO enterprise,

25   plaintiffs instead allege an entity in which the members of that enterprise have infiltrated or seized

26   a legitimate firm and used it to achieve or magnify their unlawful ends.  *See Fitzgerald v. Chrysler*

27   *Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (collecting cases).

28          Altria's proposed instruction is also consistent with this Court's prior rulings.  The Court

- 122 -

1  recognized Plaintiff's enterprise theory turned on whether the RICO defendants "were operating

2  merely in the 'ordinary course' of JLI's business or were pursuing separate Enterprise goals through

3  JLI" and explained that Plaintiff must prove "the existence of a distinct Enterprise, separate and

4  apart from the general business of JLI." *In re JUUL Labs, Inc., Mktg., Sales Practices, and Prods.*

5  *Liab. Litig.*, 533 F. Supp. 3d 858, 869 (N.D. Cal. 2021).  Altria's proposed instruction is therefore

6  necessary and appropriate given the Plaintiff's theory of enterprise here. Plaintiff ignores the

7  Court's prior ruling.  Plaintiff also seeks to create a distinction between the RICO enterprise and

8  the pattern of racketeering activity.  Given the theory of enterprise in this case, this distinction is

9  illusory and would be confusing and prejudicial to Altria.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**RICO – Association with the Enterprise**[41]

2      With regard to the element that Altria must have been associated with or employed by the

3   enterprise:

4      It is required that at some time during the relevant time period, Altria was employed by, or

5   associated with, the enterprise.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   _____

[41] *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 60

**[Contested, Competing Proposals] RICO – Conducting or Participating in the Enterprise**

**PLAINTIFF'S PROPOSAL:**

With regard to the element that Altria conducted or participated in the conduct of the enterprise through that pattern of racketeering activity:

To conduct or participate in the conduct of the enterprise means that Altria must have played some part in the operation or management of the enterprise. Plaintiff is not required to prove that Altria was a member of upper management. An enterprise is operated not only by those in upper management, but also those lower down in the enterprise who act under the direction of upper management. An enterprise also might be operated or managed by others associated with the enterprise who exert some degree of influence or direction over it due to their position or power.

Altria need not have participated in, or been aware of, all of the enterprise's activities; it is sufficient if it was involved in the operation or management of some of the enterprise's activities.

**ALTRIA'S PROPOSAL:**

Plaintiff must prove that Altria conducted or participated in conducting the affairs of the enterprise through a pattern of racketeering activity.

To make this showing, Plaintiff must prove that Altria played some part in the operation or management of that enterprise.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction reflects the key language laid out by the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170 (1993). There, the Court explained that RICO's conduct test requires "some degree of direction" and "some part in that direction," and that the phrase "operation or management" is "a formulation that is easy to apply." *Id.* at 179. Both sides agree that the jury should be instructed on this standard. Plaintiffs' proposed instruction adds, however, the critical gloss *Reves* added regarding how the standard applies. Specifically, "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. And in addition, "[a] enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery." *Id.* It is clear that by "control," the Supreme Court did not mean "legal

1    control," as a bribe does not give the briber legal control over the bribed. Instead, a bribe gives the

2    briber influence and power.

3         Plaintiff's last sentence, regarding operation or management of some of the enterprise's

4    activities, reflects the instructions given in *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med.*

5    *Progress.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 57, the relevant portions of the

6    judgment in which were affirmed on appeal. *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51

7    F. 4th 1125 (9th Cir. 2022); *Planned Parenthood Fed. of Am., Inc. v. Newman*, No. 20-16068, 2022

8    WL 13613963 (9th Cir. Oct. 21, 2022). That instruction was in turn based on Modern Federal Jury

9    Instructions (Civil Volumes) Instruction 84-27 (March 2022). This is a correct point of law, and

10   Altria does not argue otherwise. Altria asserts that the Plaintiff's theory is different from that in

11   *Planned Parenthood*, but none of the distinctions Altria identifies change the *Reves* test as to what

12   constitutes "operation or management" of an enterprise, and the jury should be so instructed.

13   **ALTRIA'S POSITION:**

14        Altria objects to portions of the Plaintiff's proposed instruction as contrary to the law,

15   incomplete, and prejudicial. Altria discusses the basis for these objections in more detail below

16   and explains why Altria's own proposal is more appropriate than the Plaintiff's proposal.

17        Altria's proposed instruction is consistent with and supported by ample RICO case law. 18

18   U.S.C. § 1962(c). As the Supreme Court has held, "one is not liable under that provision unless one

19   has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*,

20   507 U.S. 170, 183 (1993). In addition, the proposed instruction is also necessary and appropriate

21   here to explain the requirement that Altria has conducted or participated in conducting the affairs

22   of the alleged enterprise and what that requirement means in the context of Plaintiff's RICO claims

23   in this case. Altria also proposes additional instructions on this requirement that render the second

24   paragraph in Plaintiff's proposed instruction unnecessary.

25        Plaintiff's response to Altria's proposal asks the Court to adhere to the instruction given in

26   the *Planned Parenthood* case. Plaintiff also objects to Altria's proposal because it departs from the

27   instruction given in the *Planned Parenthood* case. Altria acknowledges that this Court tried RICO

28   claims in *Planned Parenthood* based on alleged violations of sections 1962(c) and 1962(d)

1   involving an association-in-fact enterprise, and that certain instructions or portions of instructions

2   given in *Planned Parenthood* might be instructive in this case.   Altria has adopted language from

3   and agreed to language included in the *Planned Parenthood* instructions, including language in

4   their proposed instruction here.   At the same time, the Court should not adhere to its instructions in

5   Planned Parenthood as closely as Plaintiff proposes because this case is fundamentally different

6   from *Planned Parenthood* in many significant respects.

7       The legal issues presented by the Plaintiff's RICO claims and theory of RICO liability in

8   *Planned Parenthood* are drastically different from the claims and theory at issue here.   In *Planned*

9   *Parenthood*, Plaintiff alleged that the defendants comprised an "association-in-fact" enterprise.   In

10  this case, by contrast, the Court rejected Plaintiff's effort to bring claims based on an "association-

11  in-fact" enterprise at the pleading stage.   *In re JUUL Labs, Inc.*, 497 F. Supp. 3d at 598-603

12  ("[P]laintiffs have not plausibly alleged the existence of a distinct Enterprise, separate and apart

13  from the general business of JLI.").   Plaintiff therefore relies on a theory of enterprise that claims

14  that JLI, a corporation, was the enterprise and the member of that enterprise is one of JLI's

15  investors.   This theory raises complex factual questions for the jury's consideration concerning

16  Altria's conduct and any role in an alleged enterprise that were not present in *Planned Parenthood*.

17  As just an example, Altria engaged in JUUL-related conduct and had relationships with JLI that

18  cannot support RICO liability, which necessitates more detailed instructions concerning what

19  actions do, and which do not, meet RICO's "conduct or participate in conducting" requirement.

20  Likewise, Altria's relationships with one another and with JLI require greater clarity concerning

21  the elements necessary to establish a RICO conspiracy.   Plaintiffs make no attempt to explain why

22  jury instructions from an association-in-fact case are applicable to their enterprise theory here,

23  particularly when they argued throughout their summary judgment briefing that association-in-fact

24  case law is inapplicable to an enterprise theory claim.

25      The pattern of racketeering activity that was tried and considered by the jury in *Planned*

26  *Parenthood* also was fundamentally different from the alleged racketeering acts that are presented

27  in this case.   In *Planned Parenthood*, the theory of RICO that was tried before a jury was based on

28  alleged predicate acts of "us[ing] the internet to secure two [ ] IDs, the defendants intended to affect

1    interstate commerce in creating the false IDs, and the defendants used those IDs across state

2    lines." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d at

3    650.  The alleged pattern of racketeering activity was short in time and narrow in scope and

4    included only a few discrete acts.  *See id.*  In this case, by contrast, Plaintiff's RICO claims are

5    based on alleged acts of mail and wire fraud, which are predicate acts with more complex

6    requirements that need to be explained to the jury as in Altria's instruction.  Plaintiff's allegations

7    also describe purported racketeering activity that is broader in scope and included a far greater

8    number of supposed acts than the allegations did in *Planned Parenthood*.

9         Furthermore, in *Planned Parenthood*, plaintiff argued that the pattern of racketeering

10   activity was open-ended and therefore sufficient to constitute a continuous pattern.  *Id*. at 651.  In

11   this case, Plaintiff will likely rely on closed-ended continuity, since the alleged racketeering activity

12   took place over a longer period of time and the racketeering activity has ceased.

13        The alleged injuries to business or property in *Planned Parenthood* also were different from

14   those at issue here, turned on different evidence, and necessarily raised completely different issues.

15   In *Planned Parenthood*, the alleged harm focused on discrete financial costs that had been directly

16   caused by the purported racketeering activity.  *See id.* at 652 (explaining damages were limited to

17   those that were "much more directly tied to defendants' conduct").  Plaintiff's alleged injuries in

18   this case are nowhere near so well-defined.  Plaintiff identifies a handful of impacts on certain

19   school property.  But it also seeks a range of remedies for supposed costs in the future that it might

20   or might not incur.  And unlike the "direct" theory of causation at issue in Planned Parenthood, any

21   connection in this case between an injury to Plaintiff's business or property and the alleged pattern

22   of racketeering activity would be attenuated and indirect.

23        Given the many obvious distinctions between this case and *Planned Parenthood*, Plaintiff's

24   wholesale reliance on the final instructions in *Planned Parenthood* for the instructions in this case

25   is misplaced, and the Court should decline Plaintiff's request to adopt the instruction given in

26   *Planned Parenthood* here.  The Ninth Circuit does "not require trial judges to use . . . specific

27   language approved in prior cases."  *United States v. Pena-Ozuna*, 511 F.2d 1106, 1108 (9th Cir.

28   1975).  Indeed, even "standard instructions may not always pass muster . . . ."  *Id*.  The question

1    here is not what the Court found appropriate in *Planned Parenthood*, it what instructions are

2    necessary to ensure that the "jury [is] fairly instructed on the issue." *Id.*   That question cannot be

3    answered without considering the theories of RICO and RICO claims, defenses, and evidence that

4    will be presented to the jury *in this case*.   Accordingly, rather than relying on *Planned Parenthood*

5    as binding here, the Court should consider whether, given the claims and evidence in this case, the

6    instruction proposed by Altria accurately states the law and would help explain the issues to the

7    jury and prevent confusion and prejudice.   Altria's proposed instruction meets this standard

8    because, as set forth above, it better explains the Plaintiff's RICO claim in a manner appropriate

9    for *this case*.

10    Finally, Plaintiff's objection that this instruction omits certain information that is included

11   in Plaintiff's proposed instruction about "what it means to be involved in the 'operation or

12   management' of the enterprise" is meritless.   Altria's proposed instructions that follow this proposal

13   include additional information concerning the requirement that a defendant "conduct or participate

14   in conducting" the alleged enterprise.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**[Contested, Altria-Proposed] RICO Section 1962(c) – Conducting or Participating in Conducting an Enterprise**

3

**ALTRIA'S PROPOSAL:**

4

5

6

7

8

To establish that Altria conducted or participated in conducting the alleged JLI enterprise, Plaintiff must prove that Altria played some part in the operation or management of the enterprise *itself*. This requires Plaintiff to establish that Altria exercised some degree of control over JLI and that Altria conducted or participated in conducting the affairs of JLI *itself* as opposed to actions that were conducting Altria's own affairs.

9

**ALTRIA'S POSITION:**

10

11

12

13

14

15

16

17

18

Altria's proposed instruction is entirely consistent with RICO case law, which has expressly recognized that conducting or participating in conducting a RICO enterprise requires "some degree of control" over the enterprise. *See, e.g.*, *High v. Choice Mfg. Co.*, No. C-11-5478 EMC, 2012 WL 3025922, at *8 (N.D. Cal. July 24, 2012) (noting courts have emphasized that "direction requires some degree of control" and collecting cases); *see also Dahlgren v. First Nat'l Bank*, 533 F.3d 681, 689-90 (8th Cir. 2008) (noting that 1962(c) requires that the defendant "exercise [ ] some degree of control over the operation or management of [the enterprise's affairs]"); *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Plaintiff is therefore incorrect when arguing that this aspect of Altria's proposed instruction misstates the law or is improper because it uses the word "control."

19

20

21

22

23

24

25

26

27

28

This instruction is also necessary to explain the applicable standard, focus the jury's attention on the correct issues, and prevent confusion and potential prejudice to Altria, since Altria is a separate corporate entity from JLI. In particular, this instruction is needed to explain that any operation or management by Altria must have been over JLI "itself" and that Altria must have conducted or participated in conducting the affairs of JLI "itself" and not its own affairs. This requirement and specific language comes directly out of the Supreme Court's decision in *Reves*, which made clear that Section 1962(c) "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs" and that "'outsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise and participate in the conduct of *its* affairs—that is, participate in the operation or management of the enterprise

1    itself." 507 U.S. at 184 (emphases in original).  It is also supported by decisions that recognize

2    "the principle that a corporation acts only through its directors, officers, and agents." *Cedric*

3    *Kushner*, 533 U.S. at 165-66 (2001); *see also, e.g.*, *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir.

4    2008) ("[T]he general rule of American law is that the board of directors controls a corporation.");

5    *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) (describing "inability of a

6    corporation to operate except through its officers"); *Jaguar Cars, Inc. v. Royal Oaks Motor Car*

7    *Co.*, 46 F.3d 258, 267 (3d Cir. 1995) ("Implicit in the Court's analysis [in *Reves*] was the

8    recognition that 'inside' managers are the 'persons' §1962(c) was designed to reach."); *Schlafly v.*

9    *United States*, 4 F.2d 195, 200 (8th Cir. 1925) ("[T]he control of one corporation over another is

10   ordinarily had by reason of control of the voting stock therein, and not through control of the non-

11   voting stock.").

12      Plaintiff's reliance on *Reves* when objecting to this instruction is misplaced and

13   unconvincing.  As noted, much of the language in Altria's proposed instruction was taken from that

14   decision and is necessary here given Plaintiff claims that a corporate outsider should be liable under

15   section 1962(c) of RICO.  And the requirement that Altria exercise some degree of control is further

16   supported by post-*Reves* decisions that cite and rely on that decision.  Nor can Plaintiff distinguish

17   *Reves* by claiming that its holding is limited to "complete outsiders."  The defendant in *Reves* was

18   *not* a "complete outsider"; it was an accounting firm that had created financial statements and

19   presented those statements to the board of directors.  In addition, Plaintiff's argument that *Reves*

20   does not apply because here Plaintiff's "RICO claim is based on Altria's operation of JLI, so there

21   is no material distinction in this case" between the enterprise and the members of the enterprise

22   does not make sense, since it is undisputed that Altria and JLI are distinct corporations.

23      Finally, to the extent that Plaintiff argues that this instruction is unnecessary given the

24   instruction it proposes on the requirement that Altria conducted or participated in conducting the

25   alleged enterprise, the Court should give Altria's proposed instruction on that issue rather than the

26   version Plaintiff proposes.  *See supra.*  Plaintiff's only support for its approach—that this Court

27   gave that instruction in *Planned Parenthood*—does not compel otherwise.  The claims, issues,

28   allegations, and evidence in *Planned Parenthood* were different from those in this case.  *See supra.*

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

1    Accordingly, rather than simply adopting the instruction in *Planned Parenthood*, the Court should

2    consider whether, given the claims and evidence in this case, the instruction proposed by Altria

3    would better explain the issues to the jury and prevent confusion and prejudice. On this issue, the

4    proposed instruction would do so.  Altria's proposed instruction explains the requirement that Altria

5    associate with an enterprise in a more succinct manner that is more appropriate given the Plaintiff's

6    allegation that JLI is the purported RICO enterprise and its members are certain officers and

7    directors and an investor. *See supra*. Plaintiff's proposed instruction also does not make clear that

8    some degree of control over the enterprise is necessary to meet the "conduct or participate in

9    conducting" requirement and therefore would not sufficiently explain this requirement to the jury.

10   Nor is there any reason to credit Plaintiff's baseless assertion that this straightforward instruction

11   would "surely confuse the jury."  To the contrary, the proposed instruction would have the opposite

12   impact by helping the jury to understand a complex legal requirement.

13   **PLAINTIFF'S POSITION:**

14          There are two problems with Altria's proposed instruction. *First*, Altria's instruction states

15   that Altria must have exerted "some degree of control over" the enterprise, but "control" is not part

16   of the legal test. The relevant legal question is whether Altria had "some part in directing" the

17   enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). As the Supreme Court made

18   clear, Altria need not have been an upper management participant to conduct or participate in the

19   enterprise's affairs. *Id.* at 184. In fact, "[a]n enterprise is 'operated' not just by upper management

20   but also by lower rung participants in the enterprise who are under the direction of upper

21   management." *Id.* It would be erroneous to instruct the jury that "control" is required when the

22   Supreme Court has written that "lower rung participants" acting at the direction of others are

23   conducting the affairs of an enterprise.

24          Nothing in the *Reves* opinion suggests that "control" is an element of the test. In fact, the

25   Court in a footnote wrote that "we disagree with the suggestion of the Court of Appeals for the

26   District of Columbia Circuit that § 1962(c) requires "*significant control* over or within an

27   enterprise." *Reves*, 507 U.S. at 179 n.4. The Court gave one example in which an outsider might

28   conduct an enterprise's affairs by exerting control through bribery. *Id.* at 184. It is clear that the

1    Court did not mean "legal control," as a bribe does not give the briber legal control over the bribed.

2    Instead, a bribe gives the briber influence and power. The Court also explained that RICO can be

3    violated by "lower rung participants," who by definition lack legal control over the enterprise. *Id.*

4          This proposed language is particularly confusing here due to the opinions of one of Altria's

5    experts, Professor Rock. If permitted, he will testify that Altria did not have legal control over JLI

6    because it owned "only" 35% of the company. But as the *Reves* opinion makes clear, a party does

7    not have to own a controlling interest in a company to conduct or participate in an enterprise. No

8    one entity or individual owned more than 50% of JLI, so the argument that Altria hopes to present

9    to the jury would suggest that no one conducted the affairs of the JLI enterprise.

10         *Second*, Altria's proposed instruction requires that "Altria conducted or participated in

11   conducting JLI's affairs rather than conducting Altria's own affairs." While that may be a relevant

12   distinction in a case involving an association-in-fact enterprise, SFUSD's RICO claim is based on

13   Altria's operation of JLI, so there is no material distinction in this case. Further, when *Reves* used

14   this phrase, it was referring to "complete outsiders," not to a company such as Altria that owns 35%

15   of the alleged enterprise, which is JLI. *See Reves*, 507 U.S. at 185 ("Third, § 1962(c) cannot be

16   interpreted to reach complete 'outsiders' because liability depends on showing that the defendants

17   conducted or participated in the conduct of the '*enterprise's* affairs,' not just their own affairs.").

18   Altria is not a "complete outsider," so the relevant question is whether it conducted the affairs of

19   JLI, not whether it was also conducting its own affairs. Altria cites the statement in *Reves* that

20   "liability depends on showing that the defendants conducted or participated in the conduct of the

21   '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 184. The word "just" is crucial here. Altria's

22   proposed instruction reads as if Altria cannot be liable if it is conducting its own affairs, but the law

23   only disclaims liability if Altria is *solely* conducting its own affairs. To the extent that Altria is

24   conducting its own affairs *and* JLI's affairs, it may be held liable.

25         Altria cites to *Cedric Kushner*, but that case only supports SFUSD's position. Altria's

26   proposed instruction reads as if conducting Altria's affairs and JLI's affairs are mutually exclusive

27   concepts. But in *Cedric Kushner*, the Supreme Court required only a *legal* distinction between Don

28   King the individual and Don King Productions, the corporation. *Cedric Kushner Promotions, Ltd.*

1    *v. King*, 533 U.S. 158, 163 (2001) (stating that we can find nothing in the statute that requires more

2    'separateness' than that"). The Court did not require that the *acts* of King as an individual and as a

3    corporation be separate. *See id.* at 164-65 (stating that RICO protects the public from individuals

4    who use a corporation as a vehicle for unlawful action). Giving the proposed instruction could

5    confuse the jury into thinking that acts done for Altria's own benefit could not also be part of the

6    RICO enterprise, but nothing in the law supports that position.

7         None of Altria's other cases meaningfully support giving its proposed instruction. Altria

8    cites one unpublished case from this District that analyzed the issue of "control" in the RICO

9    context. *See High v. Choice Mfg. Co.*, No. 11-5478, 2012 WL 3025922, at *8 (N.D. Cal. July 24,

10   2012). But Altria cites nothing from the Supreme Court or the Ninth Circuit supporting this

11   proposition, and as noted, the language of *Reves* contradicts this interpretation of the "conduct"

12   element, as this Court has recognized. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod.*

13   *Liab. Litig.*, 497 F. Supp. 3d 552, 594 (N.D. Cal. 2020) ("This requirement does not

14   limit RICO liability "to those with primary responsibility for the enterprise's affairs," nor does it

15   require a participant to exercise "significant control over or within an enterprise.") (citing *Reves*,

16   507 U.S. at 179 & n.4).

17        Many of Altria's other cases stand for the unremarkable proposition that a corporation acts

18   through its officers. Frankly, it is unclear how Altria believes this principle supports its instruction.

19   The caselaw clearly indicates that this fact is no barrier to RICO liability. *See, e.g.*, *Sever v. Alaska*

20   *Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) ("This decision makes it clear that the inability of

21   a corporation to operate except through its officers is not an impediment to section 1962(c) suits.");

22   *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (affirming RICO

23   conviction over argument that defendants were not sufficiently distinct from corporation that

24   committed fraud). Other cited cases do not even involve RICO. *See, e.g.*, *Potter v. Hughes*, 546

25   F.3d 1051, 1058 (9th Cir. 2008); *Schlafly v. United States*, 4 F.2d 195, 200 (8th Cir. 1925).

26

27

28

**[Contested, Altria-Proposed] RICO Section 1962(c) -- Corporate Governance**

**ALTRIA'S PROPOSAL:**

The alleged enterprise in this case, JLI, is a corporation that was organized and incorporated under Delaware law.  Corporations are typically controlled by corporate officers and a board of directors.  Altria is a separate corporation from JLI.

**ALTRIA'S POSITION:**

This is instruction is supported by decisions that recognize "the principle that a corporation acts only through its directors, officers, and agents." *Cedric Kushner*, 533 U.S. at 165-66 (2001); *see also, e.g.*, *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) ("[T]he general rule of American law is that the board of directors controls a corporation."); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) (describing "inability of a corporation to operate except through its officers"); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) ("Implicit in the Court's analysis [in *Reves*] was the recognition that 'inside' managers are the 'persons' §1962(c) was designed to reach."); *Schlafly v. United States*, 4 F.2d 195, 200 (8th Cir. 1925) ("[T]he control of one corporation over another is ordinarily had by reason of control of the voting stock therein, and not through control of the non-voting stock."); *Zoumboulakis ex rel. VeriFone Sys., Inc. v. McGinn*, 2014 WL 3926565, at *5 (N.D. Cal. 2014) ("[D]irectors of a corporation and not its shareholders manage the business and affairs of the corporation . . . ."); *Schoon v. Smith*, 953 A.2d 196, 206 (Del. 2008) (recognizing "bedrock statutory principle" of Delaware law that the "business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors") (citing Del. Gen. Corp. L. § 141(a)).  This instruction is also necessary to explain the applicable standard, focus the jury's attention on the correct issues, and prevent confusion and potential prejudice to Altria, since Altria is a separate corporate entity from JLI.  Plaintiff's claim that this instruction "introduces irrelevant facts – such as how corporations are 'typically controlled'" is incorrect.  Plaintiff's theory of RICO enterprise alleges that a corporation, JLI, was conducted as a RICO enterprise and not as a corporation.  To evaluate this theory, it is critical that the jury be instructed about corporations and how they are governed and controlled.

1    **PLAINTIFF'S POSITION:**

2          This proposed instruction introduces irrelevant facts—such as how corporations are

3    "typically controlled." It also inaccurately says that the test the jury applies is "who controlled JLI."

4    As explained in connection with the preceding instruction, the use of this word is misleading and

5    inconsistent with *Reves*.

**[Contested, Altria-Proposed] RICO Section 1962(c) – Providing Services to JLI Insufficient**

**ALTRIA'S PROPOSAL:**

Evidence that Altria provided services to JLI does not establish that Altria conducted or participated in conducting the affairs of the alleged JLI enterprise.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by ample case law.  *See, e.g.*, *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."); *Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (stating that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO"); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *7 (N.D. Cal. 2012) (alleged marketing and misrepresentations "insufficient to show direction of the enterprise"), *aff'd*, 751 F.3d 990 (9th Cir. 2014); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (stating that "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise"); *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 347 (S.D.N.Y. 1998) ("While [t]here [was] no doubt that plaintiffs have alleged wrongful acts that were allegedly of real importance to Schick's scheme," which included "helping Schick to conceal the scheme generally[,] . . . when reduced to their essentials, these are really allegations of assistance to the alleged RICO enterprise, not direction of it."); *In Re Taxable Municipal Bond Securities Litigation*, 1993 WL 534035 (E.D. La. 1993) ("Performance of legal services that facilitate operation of an enterprise does not represent participation in the 'operation or management' of the enterprise.  This is so even when the defendant has substantial persuasive power to induce certain action by the enterprise, or, as part of its professional services offers consultation on important management decisions.").

1    The proposed instruction is essential to make clear to the jury the kinds of activity that do

2    and do not qualify as "conducting or participating in the conduct" of an alleged enterprise.  This

3    requirement for section 1962(c) claims is complex and so is the factual record on this issue.  To

4    avoid potential confusion and prejudice, the jury should be informed that providing services is

5    insufficient to meet the requirement.  For example, Plaintiff claims that Altria provided services to

6    JLI and intends to offer evidence of those services.  The proposed instruction would ensure that the

7    jury does not mistakenly conclude that those services are sufficient to establish that Altria

8    conducted or participated in conducting an enterprise or to find RICO liability.

9    Plaintiff's objections that this is a factual argument that is insufficient for jury instructions

10   and misleading are incorrect.  It does not make a factual argument.  The instruction sets forth a

11   legal standard that has been set out many times over, as set forth above.  And, rather than being

12   misleading, the proposed instruction is necessary to avoid juror confusion given Plaintiff's likely

13   evidence.  Plaintiff's authorities do not support their argument.  *Reves* did not hold that services

14   were sufficient to show a defendant conducted or participated in conducting an enterprise.  To the

15   contrary, it held that defendant had not conducted the alleged enterprise notwithstanding claims

16   that defendant had provided services.  And Plaintiff acknowledges that, in *Tribune Co.*, the court

17   found that liability would exist only if the defendant's "interaction with the enterprise goes beyond

18   merely providing services."

19   **PLAINTIFF'S POSITION:**

20   Altria's proposed language is a factual argument that is inappropriate for a jury instruction.

21   It is also misleading because providing services to JLI is a relevant consideration for whether Altria

22   directed, operated, or managed JLI within the meaning of the RICO statute, especially if providing

23   services was one in a series of coordinated actions that advanced the enterprise. *See Reves v. Ernst*

24   *& Young*, 507 U.S. 170, 184 (1993) (an enterprise can be operated or managed by those not in

25   management if they exert control over the enterprise); *Tribune Co. v. Purcigliotti*, 869 F. Supp.

26   1076, 1098 (S.D.N.Y. 1994), *aff'd* on other grounds, 66 F.3d 12 (2d Cir. 1995) (defendant who

27   provides services can be held liable when interaction with the enterprise goes beyond merely

28   providing services).

1    Contrary to Altria's assertions, this instruction would create confusion, not protect against

2  it. The case law cited is very different from the present situation. For instance, in *Goren v. New*

3  *Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998), the key point was that there was no evidence that

4  certain defendants had performed services for the corporation. *Id.* at 728. Here, Plaintiff alleges not

5  only that Altria performed services for JLI, but that it purchased a large percentage of the company

6  and gained a measure of operational control. The suggestion that Altria should be immunized from

7  the consequences of participating in a fraudulent scheme simply because it was "performing

8  services" is contrary to law and would confuse the jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Contested, Altria-Proposed] RICO Section 1962(c) – Knowledge About JLI Insufficient**

2   **ALTRIA'S PROPOSAL:**

3       Evidence that Altria had information about JLI or JUUL products does not establish that

4   Altria conducted or participated in conducting the affairs of the alleged JLI enterprise.

5   **ALTRIA'S POSITION:**

6       Altria's proposed instruction is consistent with and supported by ample case law.  *See, e.g.*,

7   *Walter v. Drayson*, 538 F.3d 1244, 1247, 1249 (9th Cir. 2008) ("It is not enough that [a defendant]

8   failed to stop illegal activity," and "simply being involved" or "performing services for the

9   enterprise does not rise to the level of direction."); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721,

10  728 (7th Cir. 1998) ("[S]imply performing services for an enterprise, even with knowledge of the

11  enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c);

12  instead, the individual must have participated in the operation and management of the enterprise

13  itself."); *Hilton v. Apple Inc.*, No. CV137674GAFAJWX, 2014 WL 12597143, at *6 (C.D. Cal.

14  Jan. 9, 2014) (acts undertaken without knowledge do not constitute a RICO enterprise.)*.

15      The proposed instruction is essential to make clear to the jury the kinds of activity that do

16  and do not qualify as "conducting or participating in the conduct" of an alleged enterprise.  This

17  requirement for section 1962(c) claims is complex and so too is the factual record on this issue.  To

18  avoid potential confusion and prejudice, the jury should be informed that mere knowledge of

19  wrongdoing is insufficient to meet the requirement.  Plaintiff claims that Altria had such knowledge

20  and intends to offer evidence purportedly showing such knowledge.  The proposed instruction

21  would ensure that the jury does not mistakenly conclude that this knowledge alone is sufficient to

22  establish that Altria conducted or participated in conducting an enterprise or to find RICO liability.

23      Plaintiff's objection that this is a factual argument that is insufficient for jury instructions is

24  incorrect.  It does not make a factual argument.   Plaintiff also does not explain why this instruction

25  is "unhelpfully vague" either.  It sets forth a well-established legal standard that courts have applied

26  many times over, as set forth above.  Neither of the cases that Plaintiff cites even addresses that

27  issue, nor does Plaintiff make any effort to distinguish the cases cited by Altria.

28

1    **PLAINTIFF'S POSITION:**

2          Altria's proposed language is a factual argument that is inappropriate for a jury instruction.

3    It is also misleading because knowledge about JLI's fraud is a relevant consideration for whether

4    Altria directed, operated, or managed JLI, especially in connection to other evidence. *In re JUUL*

5    *Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 604 (N.D. Cal. 2020)

6    (Courts "have held that *Reves* is satisfied  by evidence that lower-rung members of an enterprise

7    implemented decisions directed by those higher up the ladder in the enterprise or committed

8    racketeering acts which furthered the basic goals of the enterprise at the direction of other members

9    of the enterprise.'") (quoting *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 580, 876

10   (D.D.C. 2006)).

11         This Court should reject Altria's effort to issue a pile of instructions about what it does not

12   mean to conduct the affairs of an enterprise, thereby creating the impression of an impossibly high

13   bar. The caselaw cited does not support such an approach—nor does it address the specific issue

14   raised. None of the Altria's parentheticals even claim that the cited cases address the question of

15   whether knowledge of a product's nature and appeal is relevant to the question of whether a

16   defendant conducted the affairs of an enterprise

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO Section 1962(c) – Influence Over JLI Insufficient**

**ALTRIA'S PROPOSAL:**

Evidence that Altria had influence over JLI does not establish that Altria conducted or participated in conducting the affairs of the alleged JLI enterprise.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by ample case law. *See, e.g.*, *Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 91 CIV. 1779 (JSM), 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993) ("The fact that, as a major creditor of those corporations, these defendants had substantial persuasive power to induce management to take certain actions and had the legal authority to take other actions that could affect these corporations is not equivalent to having the power to 'conduct or participate directly or indirectly in the conduct in the affairs of those corporations.'"); *In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 489 (E.D. La. 2001) ("RICO liability does not always arise even when the defendant has influence in the enterprise."), *aff'd sub nom. In re MasterCard Int'l Inc.*, 313 F.3d 257 (5th Cir. 2002).

The proposed instruction is essential to make clear to the jury the kinds of activity that do and do not qualify as "conducting or participating in the conduct" of an alleged enterprise. This requirement for section 1962(c) claims is complex and so too is the factual record on this issue. To avoid potential confusion and prejudice, the jury should be informed that having influence over an enterprise is insufficient to meet the requirement. Plaintiff claims that Altria had such influence and might argue that point to the jury. The proposed instruction would ensure that the jury does not mistakenly conclude that this influence alone is sufficient to establish that Altria conducted or participated in conducting an enterprise or to find RICO liability.

Plaintiff's objection that this is a factual argument that is insufficient for jury instructions is incorrect. It does not make a factual argument. The instruction sets forth a legal standard that has been set out many times over, as set forth above. Nor is it "legally incorrect" as Plaintiff claims. The only support offered by Plaintiff for that point argues that influence is sufficient if it is "akin to bribery." Plaintiff attacks a strawman. The proposed instruction does not say bribery would not be sufficient or address bribery at all.

1    **PLAINTIFF'S POSITION:**

2           Altria's proposed language is legally incorrect. Influence can be sufficient to establish

3    Altria's direction, operation, or control of JLI if, for example, it is akin to bribery. *Walter v.*

4    *Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (finding no operation or management because there

5    was "no inference that [the defendant] tried to control the enterprise by anything akin, for example,

6    to bribery"). As above, Altria's proposed language is a factual argument and is inappropriate for a

7    jury instruction. The proposed instruction is also misleading because influence over JLI is a relevant

8    consideration for whether Altria directed, operated, or managed JLI within the meaning of the

9    RICO statute. *See id.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**[Contested, Altria-Proposed] RICO Section 1962(c) –**
**Desiring to Obtain Control Insufficient**

3   **ALTRIA'S PROPOSAL:**

4       Evidence that Altria wanted to exercise control over JLI does not establish that Altria

5   conducted or participated in conducting the affairs of the alleged JLI enterprise without evidence

6   proving that Altria actually exercised such control.

7   **ALTRIA'S POSITION:**

8       Altria's proposed instruction is consistent with and supported by ample case law.  RICO

9   requires control and not merely a desire for control.  *See, e.g.*, *High v. Choice Mfg. Co.*, No. C-11-

10  5478 EMC, 2012 WL 3025922, at *8 (N.D. Cal. July 24, 2012) (noting courts have emphasized

11  that "direction requires some degree of control" and collecting cases); *see also Dahlgren v. First*

12  *Nat'l Bank*, 533 F.3d 681, 689-90 (8th Cir. 2008) (noting that 1962(c) requires that the defendant

13  "exercise [ ] some degree of control over the operation or management of [the enterprise's

14  affairs]").

15      The proposed instruction is essential to make clear to the jury the kinds of activity that do

16  and do not qualify as "conducting or participating in the conduct" of an alleged enterprise.  This

17  requirement for section 1962(c) claims is complex and so is the factual record on this issue.  To

18  avoid potential confusion and prejudice, the jury should be informed that a mere desire for control

19  is insufficient to meet the requirement.  For example, Plaintiff claims that, at certain points during

20  the negotiation period with JLI, Altria wanted to obtain a controlling interest in JLI.  The proposed

21  instruction would ensure that the jury does not mistakenly conclude that Altria wanting to obtain

22  control is sufficient to establish that Altria conducted or participated in conducting an enterprise or

23  to find RICO liability.

24      Plaintiff's objection that this is a factual argument that is insufficient for jury instructions is

25  incorrect.  It does not make a factual argument.  It also is not "misleading."  The instruction sets

26  forth a legal limitation on RICO liability consistent with the case law here.  And, rather than being

27  misleading, the proposed instruction is necessary to avoid juror confusion given Plaintiff's likely

28  evidence.

1   **PLAINTIFF'S POSITION:**

2          Altria's proposed language is a factual argument that is inappropriate for a jury instruction.

3   It is also misleading because desiring to obtain control over JLI, especially when connected to

4   evidence that a defendant acted on that desire, is a relevant consideration for whether Altria

5   directed, operated, or managed JLI within the meaning of the RICO statute. *See Walter v. Drayson,*

6   538 F.3d 1244, 1248 (9th Cir. 2008).

1

2

**[Contested, Altria-Proposed] RICO Section 1962(c) –**
**Employing Former Officers or Employees Insufficient**

3   **ALTRIA'S PROPOSAL:**

4      Individuals routinely move from one company to another company.  The mere fact that

5   certain Altria employees took positions and began working at JLI after they left Altria does not

6   show that Altria conducted or participated in conducting the alleged JLI enterprise.

7   **ALTRIA'S POSITION:**

8      Altria's proposed instruction is consistent with and supported by principles of corporate

9   law.  Indeed, the Supreme Court has recognized that *overlapping* directors and officers is "entirely

10  appropriate" and does not give rise to liability. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)

11  (citation omitted); *see also, e.g.*, *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 2009 WL 3245556, at *9 (D.

12  Haw. 2009) (similar).  It is likewise supported by RICO decisions specifically.  *See, e.g.*, *Crimson*

13  *Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 44 (D. Mass. 2018) ("The mere

14  fact that officers of Healthy Pharms also occupy a role in Red Line and Tomolly does not

15  sufficiently show that these entities joined the [RICO] conspiracy and furthered its criminal

16  endeavors.").

17     The proposed instruction is essential to make clear to the jury the kinds of activity that do

18  and do not qualify as "conducting or participating in the conduct" of an alleged enterprise.  This

19  requirement for section 1962(c) claims is complex and so too is the factual record on this issue.  To

20  avoid potential confusion and prejudice, the jury should be informed that the mere fact that a person

21  moves from one company to another is insufficient to meet the requirement.  For example, Plaintiff

22  claims that certain Altria employees left the company and thereafter began working at JLI.  The

23  proposed instruction would ensure that the jury does not erroneously conclude that these individuals

24  changing companies establishes that Altria conducted or participated in conducting an enterprise

25  or is sufficient to find RICO liability.

26     Plaintiff's objection that this is a factual argument that is insufficient for jury instructions is

27  incorrect.  It does not make a factual argument.  The instruction sets forth a legal standard that has

28  been set out many times over, as set forth above.  It also is not "misleading," as Plaintiff claims.

1   To the contrary, the proposed instruction is necessary to avoid juror confusion given Plaintiff's

2   likely evidence.

3   **PLAINTIFF'S POSITION:**

4      Altria proposed language is a factual argument that is inappropriate for a jury instruction.

5   As above, the instruction is also misleading because JLI employing former officers and employees

6   of a defendant, especially when connected to other evidence is a relevant consideration for whether

7   Altria directed, operated, or managed JLI within the meaning of the RICO statute. *See Walter*, 538

8   F.3d at 1248.

9      Plaintiff does not argue that Altria is liable solely because it placed one of its officers into

10  the position of JLI's CEO. Rather, Altria's ability to make that move is evidence as to the level of

11  control that it exercised over JLI, which is an important factor under the *Reves* test, as described

12  above.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO Section 1962(c) – Failure to Stop Illegal Activity**

**ALTRIA'S PROPOSAL:**

The fact that Altria knew about illegal activity but failed to stop that activity does not without more establish that Altria conducted or participated in conducting the alleged JLI enterprise.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by ample case law. *See, e.g.*, *Walter v. Drayson*, 538 F.3d 1244, 1247, 1249 (9th Cir. 2008) ("It is not enough that [a defendant] failed to stop illegal activity," and "simply being involved" or "performing services for the enterprise does not rise to the level of direction."); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself.").

The proposed instruction is also essential to make clear to the jury the kinds of activity that do and do not qualify as "conducting or participating in the conduct" of an alleged enterprise. This requirement for section 1962(c) claims is complex and so too is the factual record on this issue. To avoid potential confusion and prejudice, the jury should be informed that failure to stop illegal activity is insufficient to meet the requirement. Plaintiff is likely to argue and/or offer evidence purporting to show that Altria failed in this regard. The proposed instruction would ensure that the jury does not mistakenly conclude that failure to stop illegal activity alone is sufficient to establish that Altria conducted or participated in conducting an enterprise or to find RICO liability.

Plaintiff's objection that this is a factual argument that is insufficient for jury instructions is incorrect. It does not make a factual argument. The instruction sets forth a legal standard that has been set out many times over, as set forth above. It also is not "misleading," as Plaintiff claims. To the contrary, the proposed instruction is necessary to avoid juror confusion given Plaintiff's likely evidence.

1  **PLAINTIFF'S POSITION:**

2      Altria's proposed language is a factual argument that is inappropriate for a jury instruction.

3  As above, the instruction is also misleading because the failure to stop JLI's illegal activity,

4  especially when connected to other evidence, is a relevant consideration for whether Altria directed,

5  operated, or managed JLI within the meaning of the RICO statute. *See Walter*, 538 F.3d at 1248.

6  The instruction is also misleading, in that Plaintiff is not trying to hold Altria liable for failing to

7  stop JLI's actions. It is attempting to hold Altria liable for actively participating in the management

8  of JLI, thereby engaging in a fraudulent scheme with the directors of the company.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO Section 1962(c) –
"Through" a Pattern of Racketeering Activity**

**ALTRIA'S PROPOSAL:**

The next element requires the Plaintiff to show that Altria  participated in conducting JLI's affairs "through" a pattern of racketeering activity.  "Through" means by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of.

RICO is not aimed at the legitimate business activities of corporations.  Thus, it is not enough for Plaintiff to prove Altria merely conducted, or participated in conducting, JLI's legitimate business affairs.  Rather, Plaintiff must prove that Altria used JLI to conduct illegitimate activity, specifically, the alleged pattern of racketeering activity.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by RICO case law.  *See, e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001) ("RICO both protects a legitimate enterprise from those who would use unlawful acts to victimize it . . . and also protects the public from those who would unlawfully use an enterprise (whether legitimate or illegitimate) as a vehicle through which unlawful . . . activity is committed."); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 269 (3d Cir. 1995) ("[W]hen officers and/or employees operate and manage a legitimate corporation, and use it to conduct, through interstate commerce, a pattern of racketeering activity, those defendant persons are properly liable under § 1962(c)."); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("[A] corporate defendant acting through its officers, agents, and employees is simply a corporation.  Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name.") (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).  It is also consistent with this Court's prior ruling that Plaintiff must prove "the existence of a distinct Enterprise, separate and apart from the general business of JLI."  *In re JUUL Labs, Inc., Mktg., Sales Practices, and Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 869 (N.D. Cal. 2021).  This instruction is needed for this reason also.

Altria's proposed instruction is also necessary to explain the applicable standard, focus the jury's attention on the correct issues, and prevent confusion and potential prejudice to Altria.

1    Plaintiff's theory of liability in this case takes an unprecedented approach by alleging that the RICO

2    enterprise was a corporation and Altria conducted that enterprise.

3        Plaintiff complains that this instruction defines "through."  But this definition is legally

4    correct and gives the jury needed guidance when evaluating this requirement under RICO. Plaintiff

5    also references the instructions in *Planned Parenthood*.  The claims, issues, allegations, and

6    evidence in *Planned Parenthood* were different from those in this case.  *See supra*.  Accordingly,

7    rather than simply adopting the instruction in *Planned Parenthood*, the Court should consider

8    whether, given the claims and evidence in this case, the instruction proposed by Altria would better

9    explain the issues to the jury and prevent confusion and prejudice.  On this issue, the proposed

10   instruction would do so.  The alleged enterprise here is JLI, which necessitates additional

11   instructions concerning RICO liability under these circumstances.  Altria's proposed instruction

12   also elucidates the connection that Plaintiff must establish between the alleged enterprise and the

13   racketeering activity.

14       Plaintiff objects based on *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161

15   (2001).  But that case addressed RICO's requirement that the enterprise be distinct from the person

16   who conducted the affairs of the enterprise.  533 U.S. at 161-62.  That is not the question here and

17   does not inform whether this instruction is appropriate.

18   **PLAINTIFF'S POSITION:**

19       This proposed instruction is both unnecessary and legally incorrect. It is unnecessary to

20   define the word "through," as the elements of a RICO claim are all sufficiently defined through the

21   proposed instructions. Even more problematic is Altria's effort to use this "definition" section to

22   again push the legally inaccurate assertion that a RICO claim could not be based on JLI's

23   "legitimate business affairs." This phrase raises the unanswered question of, what does it mean to

24   be "legitimate"? Conducting a corporation's regular affairs can support a RICO claim. *Cedric*

25   *Kushner*, 533 U.S. at 161-63.

26

27

28

**RICO – Pattern of Racketeering[42]**

A pattern of racketeering activity requires:

First, at least two separate acts of racketeering were committed, though two separate racketeering acts are not necessarily enough to establish a pattern of racketeering;

Second, the acts of racketeering had a relationship to each other which posed a threat of continued criminal activity; and

Third, the acts of racketeering embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics.

Sporadic, widely separated, or isolated criminal acts do not form a pattern of racketeering activity.

---

[42] *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 62

1

**RICO – "Racketeering Act" Defined**[43]

2

In this case, Plaintiff alleges that Altria engaged in racketeering activity by violating the

3

federal mail and wire fraud statutes.

4

As I mentioned in the previous instruction, a pattern of racketeering requires at least two

5

acts of racketeering. The two contemplated racketeering acts may be of the same type, for example,

6

two acts of wire fraud; or, the two acts may be of different predicates, for example, one act of wire

7

fraud and one act of mail fraud. Regardless of whether it is two racketeering acts of the same type

8

or two racketeering acts of two different types, in order to satisfy this element, you cannot find that

9

Altria engaged in a "pattern of racketeering activity" unless you unanimously agree on which of

10

the alleged predicate acts, if any, make up the pattern.

11

I will now instruct you on the definition of each of these racketeering activities that Altria

12

is alleged to have committed.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[43] *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 63

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

**RICO – Predicate Acts Must Be Related**[44]

To prove a pattern of predicate acts, Plaintiff must show that the predicate acts were related to one another and to the enterprise. Two or more acts of racketeering activity that are not related do not establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and are not isolated events.

---

[44] Eleventh Cir. Model Civil Instr. 7.3 (modified)

**[Contested, Competing Proposals] RICO – Predicate Acts Must Demonstrate Continuity**

**PLAINTIFF'S PROPOSAL:**

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first way is to demonstrate related predicate acts extending over a substantial period of time, that is, more than a few weeks or months. The second way is to show conduct that does not occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

**ALTRIA'S PROPOSAL:**

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first way is to demonstrate related predicate acts extending over a substantial period of time. The second way is to show conduct that does not occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

**PLAINTIFF'S POSITION:**

The only difference in the proposed instructions involves the clarifying phrase: "that is, more than a few weeks or months." It will aid the jury to define what a "substantial period of time" means. Without some definition, the jury might be confused as to whether that means a few weeks, a few months, or a few years. The proposed instruction is neutral, in that it prevents the jury from finding continuity based on a period that is too short or finding that it doesn't exist when the enterprise occurred over a sufficient time period. The instruction is supported by case law. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."). Altria cites *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995), but that case expressly disclaimed "a hard and fast, bright line, one-year rule" as inconsistent with "the fluid concept of continuity enunciated by the Supreme Court in *H.J.*" *Id.* at 1528.

**ALTRIA'S POSITION:**

The parties' respective proposals different in one respect.  Plaintiff adds language that would instruct the jury that continuity requires a period of time that is "more than a few weeks or months."  Plaintiff's suggestion that conduct exceeding "a few weeks or months" is sufficient to

1   meet the continuity requirement is legally incorrect.  As the Ninth Circuit has observed, "courts

2   virtually always find that activity spanning less than one year does not satisfy the close-ended

3   continuity requirement."  *Allwaste v. Hecht, Inc.*, 65 F.3d 1523, 1528 (9th Cir. 1985); *see also, e.g.*,

4   *Malhotra v. Copa de Oro Realty, LLC*, 2015 WL 12656293, at *12–13 (C.D. Cal. Sept. 23, 2015)

5   (finding 10 months insufficient), *aff'd sub nom. Malhotra v. Copa de Ora Realty, LLC*, 673 F.

6   App'x 666 (9th Cir. 2016).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **[Contested, Altria-Proposed] Predicate Acts Must Be Those Alleged By Plaintiff**

2    **ALTRIA'S PROPOSAL:**

3        Again, "racketeering activity" means an act that violates the federal mail or wire fraud

4    statutes.  But you cannot consider just any racketeering act Altria allegedly committed in violation

5    of one of these statutes as bearing on whether Altria has committed two or more predicate acts as

6    a pattern of racketeering activity.  To determine if there is a pattern of racketeering activity, you

7    must consider only those specific racketeering acts Plaintiff alleges against Altria.

8    **ALTRIA'S POSITION:**

9        This instruction is consistent with the pattern instructions in the Eleventh Circuit and makes

10   clear that the racketeering activity relevant to the jury's determination is the specific acts alleged

11   by Plaintiff.  Eleventh Cir. Model Civil Instr. 7.3. The proposed instruction is needed to explain the

12   applicable standard, focus the jury's attention on the correct issues, and prevent confusion and

13   potential prejudice to Altria.  Plaintiff's allegations and evidence span a wide range of conduct by

14   Altria, much of which is outside the scope of the mail and wire fraud allegations upon which its

15   RICO claim is based. Plaintiff's case does not support their objection because the court was

16   addressing *conspiracy* claims under 1962(d) when stating that plaintiff "need not prove that the

17   defendant himself performed the predicate acts." *United States v. Jaimez*, 45 F.4th 1118, 1130 (9th

18   Cir. 2022).

19   **PLAINTIFF'S POSITION:**

20       Plaintiff objects to this instruction as confusing and unnecessary. The instruction is

21   unnecessary because the jury will be instructed to consider the evidence before it. It is confusing

22   because the jury will not know what the Plaintiff has alleged in its complaint. The jury should be

23   permitted to reach conclusions from the evidence presented at trial.

24

25

26

27

28

- 157 -

**[Contested, Competing Proposals] RICO – Mail and Wire Fraud –
Violation of 18 U.S.C. § 1341 or 18 U.S.C. § 1343**

**PLAINTIFF'S PROPOSAL:**

The Plaintiffs allege that Altria committed violations of the federal mail and wire fraud statutes. To prove a violation of those statutes, Plaintiffs must prove all of the following:

First, Altria knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Deceitful statements or half-truths may constitute false or fraudulent representations.

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

Third, Altria acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, Altria used, or caused to be used, the mails or an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only Altria's words and statements, but also the circumstances in which they are used as a whole.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use. It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

**ALTRIA'S PROPOSAL:**

The Plaintiffs allege that Altria committed violations of the federal mail and wire fraud

statutes. To prove that Altria violated those statutes, Plaintiffs must prove all of the following:

First, Altria knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

Third, someone believed the false or fraudulent pretenses, representations, or promises by Altria, took action in reliance on that belief, and that action directly harmed Plaintiff's business or property of Plaintiff;

Fourth, Altria acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fifth, Altria used, or caused to be used, the mails or an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained. A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use. It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction reflect the Ninth Circuit Model Criminal Instructions 15.32 and 15.5. There are two problems with Altria's proposed instruction. *First*, Altria's instruction improperly removes language indicating that "[d]eceitful statements or half-truths may constitute

false or fraudulent representations." This statement is taken directly from both the mail and wire fraud pattern language. While the language is in brackets, it should be given as it accurately states the law. *See, e.g.*, *United States v. Sumeru*, 449 F. App'x 617, 621–22 (9th Cir. 2011) (affirming wire fraud conviction because "a broker cannot tell a misleading half-truth about a material fact to a potential investor").

*Second*, Altria's proposal improperly injects a reliance requirement, which is inconsistent with Supreme Court authority. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (stating that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise"). As to "indirect" reliance, *Bridge* merely noted that under the fact patterns of many cases, reliance by someone would be needed to establish causation. *Id.* at 658. The jury should decide what is necessary to establish causation in a given case. In *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019), the court noted the similarity in the fact patterns of *Bridge*—an indirect reliance case— and that case, involving prescription drugs. *Id.* at 1259-60. But the Ninth Circuit did not state reliance as a rule—nor could it, given that the Supreme Court has disclaimed such a rule. Certainly, such a rule requiring reliance on a misrepresentation would be illogical in cases like this one that depend, at least in part, on fraud by omission.

**ALTRIA'S POSITION:**

Altria's proposed instruction and Plaintiff's proposed instruction differ in two respects. *First*, Plaintiff's proposed instruction would include additional language stating that "[d]eceitful statements or half-truths may constitute false or fraudulent representations." This language is included in brackets in the Ninth Circuit's Model Criminal Instructions for mail and wire fraud. Ninth Cir. Model Crim. Instr. 15.32. Plaintiff, however, has failed to demonstrate why this bracketed language should be included in the instruction in this case.

*Second*, the paragraph that begins with "Third" in Altria's proposal would add a paragraph explaining that Plaintiff must demonstrate reliance on a purported act of mail or wire fraud. This language is necessary to inform the jury that predicate acts of mail fraud includes a reliance requirement and are not established by false statements alone. *See, e.g.*, *Poulos v. Caesars World,*

1   *Inc.*, 379 F.3d 654, 664-66 (9th Cir. 2004) (reliance "provides a key causal link" in RICO cases and

2   "all plaintiffs asserting civil RICO claims[] must prove individualized reliance where that proof is

3   otherwise necessary to establish actual or proximate causation"); *Painters & Allied Trades Dist.*

4   *Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1260 (9th Cir. 2019)

5   (RICO plaintiffs must show "someone in the chain of causation *relied* on Defendants' alleged

6   misrepresentations and omissions").

7       Plaintiffs try to avoid reliance based on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

8   639, 642, 655-58 (2008).  *Bridge* did not eliminate a reliance requirement from RICO mail and

9   wire fraud claims.  The Court held that *direct* reliance would not be required under the specific

10  facts presented in *Bridge*, since plaintiffs had not seen or even received the defendant's alleged

11  misrepresentations.  *Id.* at 659.  But it made clear that it was *not* holding "that a RICO plaintiff who

12  alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied

13  on the defendant's misrepresentations."  *Id.* at 658-59 (emphasis in the original).  The Ninth Circuit

14  relied on *Bridge* expressly in *Painters* when holding that "someone in the chain of causation" must

15  have "relied on Defendants' alleged misrepresentations and omissions."  943 F.3d at 1260.  As the

16  Ninth Circuit explained, "logically, a plaintiff cannot even establish but-for causation if *no one*

17  relied on the defendant's alleged misrepresentation."  *Id.*

18      These decisions confirm that reliance is required in RICO mail and wire fraud cases.  They

19  also show that reliance may be "indirect" in certain cases where there was no direct link between

20  defendant and plaintiffs such that direct reliance is not possible.  But there is nothing to suggest

21  that reliance need not be proven by plaintiffs who were exposed to the alleged fraud and are capable

22  of proving direct reliance.  To the contrary, courts since *Bridge* continue to recognize that, "in

23  [RICO] cases arising from fraud, a plaintiff's ability to show a causal connection between

24  defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance

25  on that misrepresentation."  *CGC Holding*, 773 F.3d at 1089; *see also, e.g.*, *Allstate Ins. Co. v.*

26  *Palterovich*, 653 F. Supp. 2d 1306, 1323 (S.D. Fla. 2009) (explaining that *Bridge*'s holding "is not

27  an issue in this case, where Plaintiffs have alleged that their injuries flowed directly from their

28  reliance on Defendants' misrepresentations").  As Judge Breyer explained when requiring direct

1   reliance in *Badella v. Deniro Mktg. LLC*, "this case is unlike *Bridge* where third-party

2   representations caused damage to the plaintiff.  This is a classic first-party reliance case."  2011

3   WL 5358400, at *6 (N.D. Cal. Nov. 4, 2011) (citation omitted).  The Court should therefore include

4   the language proposed by Altria.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Scheme to Defraud**

**ALTRIA'S PROPOSAL:**

A "scheme to defraud" means any plan or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations, or promises.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with RICO case law holding that claims on mail and wire fraud require "a scheme or artifice devised with [] specific intent to defraud." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002) (citation omitted).  It is likewise consistent with the Eleventh Circuit's model instructions.  Eleventh Cir. Model Crim. Instr. O50.1.  Plaintiff claims that this instruction is redundant and unnecessary given the proposed instructions describing mail and wire fraud.  This is incorrect.  The parties' proposed instructions setting out the elements of mail and wire fraud states that Plaintiff must show that Altria "knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  But, unlike Altria's proposed instruction here, that instruction does not define or explain what a scheme to defraud is.  This additional explanation is necessary to provide the jury with the necessary guidance to consider whether Plaintiff can establish predicate acts of mail and wire fraud.

**PLAINTIFF'S POSITION:**

This instruction is duplicative. The mail and wire fraud instruction gives the jury all of the information that it needs to determine whether the alleged enterprise has engaged in a pattern of mail or wire fraud. In particular, both Plaintiff's and Altria's proposed instructions on mail and wire fraud tell the jury how to determine whether there is a "scheme to defraud."

1  **[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Specific Intent**

2  **ALTRIA'S PROPOSAL:**

3   To establish that Altria made a statement with the specific intent to defraud, Plaintiff must

4  prove that Altria knew the statement was false when making it and intended to deceive the recipient

5  of the statement into believing something that was not true to cause loss or injury. Moreover,

6  proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove

7  intent to defraud.

8  **ALTRIA'S POSITION:**

9   Altria's proposed instruction is consistent with RICO case law holding that mail and wire

10  fraud requires "specific intent to defraud."  *See, e.g.*, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764,

11  782 (9th Cir. 2002) (mail and wire fraud requires "specific intent to defraud").  In addition, this

12  language is based on the Eleventh Circuit's model criminal instructions.  Eleventh Cir. Model Crim.

13  Instr. O50.1.  This instruction is necessary and appropriate to ensure that the jury understands the

14  requirement that Plaintiff prove that false statements were made with specific intent.  Plaintiff

15  claims that this instruction is unnecessary because it would be redundant of the instruction that sets

16  out the requirements of mail and wire fraud.  But that instruction does not explain what the "specific

17  intent" requirement means or what Plaintiff must establish to prove specific intent and Altria's

18  proposed instruction is needed to avoid potential confusion.

19  **PLAINTIFF'S POSITION:**

20   Altria's proposed instruction is redundant and confusing. Plaintiff's proposed instruction on

21  mail and wire fraud follows the Ninth Circuit pattern instructions and gives the jury all of the

22  information it needs to determine whether the Defendants committed mail or wire fraud. *See* Ninth

23  Cir. Model Crim. Instr. 15.32, 15.35. Altria's instruction is also confusing, in that it suggests the

24  only type of fraud is an affirmative misstatement, but as recognized by the pattern instructions,

25  "[d]eceitful statements or half-truths may constitute false or fraudulent representations." *Id.* While

26  the case Altria cites references a "specific intent to defraud," nothing in the rest of the instruction

27  appears on the cited page. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002).

28

**[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Forward Looking Statements**

**ALTRIA'S PROPOSAL:**

A statement about what is expected to occur in the future is not knowingly or intentionally false just because future events do not occur as projected or predicted.

**ALTRIA'S POSITION:**

Altria's proposed instruction explains that forward-looking statements are not actionable as fraud.  That instruction is supported by relevant case law.  *See, e.g.*, *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (forward-looking statements and statements of belief are expressions of corporate optimism, not misstatements or omissions); *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (forward-looking statements and statements of belief are expressions of corporate optimism, not misstatements or omissions).  This instruction is appropriate here given the likelihood that Plaintiff will offer evidence or argument concerning forward-looking statements made by Altria when attempting to prove its RICO claims.  In the absence of the proposed instruction, the jury would not be aware of this limitation and might conclude that forward looking statements could serve as the basis of a fraud claim if something projected as happening in the future did not take place, a result that would be contrary to the law.

**PLAINTIFF'S POSITION:**

Plaintiff objects to this instruction as confusing, and as legally and factually unsupported. In the case cited by Altria, the point of law laid out is: "In the Ninth Circuit, vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws because no reasonable investor would rely on such statements." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (quotations omitted). This case is not a securities case, but even if it were, there is no factual basis because the alleged mail and wire fraud does not include "generalized statements of corporate optimism" or "mere puffing."

**[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Good Faith**

**ALTRIA'S PROPOSAL:**

Good faith on the part of Altria  is a complete defense to mail or wire fraud because good faith is inconsistent with a finding that Altria had the specific intent to defraud.

A person who acts, or causes another person to act, on a belief or an opinion honestly held is not liable under the mail or wire fraud statutes merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong.  An honest mistake in judgment or an error in management does not rise to the level of the conduct prohibited by the mail and wire fraud statutes.  Those statutes are aimed at people who act with the particular unlawful intent required for each alleged mail or wire fraud violation.

In determining whether or not Plaintiff has proven that Altria acted with the specific intent to commit the mail or wire fraud violation alleged or whether Altria acted in good faith, you must consider all of the evidence received in the case bearing on Altria's state of mind.

**ALTRIA'S POSITION:**

Altria's proposed instruction is appropriate and necessary to ensure the jury understands that actions taken in good faith are not actionable under RICO.  The proposed instruction is consistent with instructions that are routinely given in cases alleging fraud.  *See, e.g.*, O'Malley, *Federal Jury Practice & Instructions: Criminal* § 19:06 (6th ed. Feb. 2021 update) (modified); *see* Sand, *Modern Federal Jury Instructions* ¶ 8.01 (Good Faith) (Matthew Bender ed. 2020); *United States v. Tarallo*, 380 F.3d 1174, 1191 (9th Cir. 2004) (endorsing good-faith instruction); *United States v. Amlani*, 111 F.3d 705, 717-18 (9th Cir. 1997) (similar); *United States v. Gering*, 716 F.2d 615, 622 (9th Cir. 1983) (approving of instruction that "[i]f you find that a defendant in good faith believes that the representations which were being made by himself were true, the necessary intent did not exist and the defendant must be acquitted on all counts"); *United States v. Lin*, 3:11-cr-00393-THE, Dkt. 102, Jury Instructions, at 42-44 (N.D. Cal. May 5, 2012) (instructing the jury on good faith).  Plaintiff argues that this instruction is unnecessary because the pattern instruction setting out the elements of mail and wire fraud requires specific intent.  The language in that instruction is insufficient.  It does not explain that actions taken in good faith cannot be liable for

1   mail or wire fraud even if the statement at issue turns out to be untrue.  Accordingly, in the absence

2   of the proposed instruction here, this important limitation upon Altria's potential liability would go

3   unexplained, creating a significant risk of prejudice to Altria.  Plaintiff's argument that "the Court

4   should be seeking to limit the number" of proposed instructions is meritless.  The Court should

5   adequately instruct the jury on Plaintiff's claims, which in this case are complex, regardless of the

6   number of instructions that entails.

7   **PLAINTIFF'S POSITION:**

8       This instruction as duplicative and confusing. The pattern instructions on mail and wire

9   fraud clearly spell out that the jury must find that Altria knowingly participated in the scheme,

10  and "acted with the intent to defraud; that is, the intent to deceive and cheat." Ninth Cir. Model

11  Crim. Instr. 15.32, 15.35. Such findings are obviously inconsistent with "good faith" by Altria,

12  and the jury should not be misled into believing that there is some additional requirement that

13  does not exist. The fact that an instruction is sometimes given in common-law fraud cases does

14  not establish that it needs to be given in a case involving a statutory claim and a specific type of

15  fraud. *Cf. Bridge*, 553 U.S. at 652-53 (rejecting the argument that the elements of common-law

16  fraud should influence the Court's interpretation of the elements necessary to establish a RICO

17  claim).

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Plaintiff-Proposed] RICO – Mail and Wire Fraud – Vicarious Liability**

**PLAINTIFF'S PROPOSAL:**

If you decide that Altria was a member of a scheme to defraud and that Altria had the intent to defraud, Altria may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if Altria did not know what the other co-schemers said or did.

For Altria to be liable for an offense committed by a co-schemer in furtherance of the scheme, the offense must be one that Altria could reasonably foresee as a necessary and natural consequence of the scheme to defraud.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction reflects Ninth Cir. Model Crim. Instr. 15.33, modified for the civil nature of case and for case specifics. Plaintiff's instruction accurately states the law, as laid out by the Ninth Circuit pattern instruction. While Altria claims that the pattern instruction inaccurately states the law, it has not provided any case citations indicating that the instruction is incorrect. Nor has it explained how the language of Sections 1962(c) and (d) demonstrates that the pattern instruction is incorrect.

**ALTRIA'S POSITION:**

Altria objects to Plaintiff's proposed instruction as contrary to the law, confusing, unnecessary, and prejudicial. Plaintiff's proposed instruction does not define what a "member of a scheme to defraud" is. The instruction, however, suggests that it would be a member of some conspiracy rather than a party that conducted or participated in conducting an enterprise through a pattern of racketeering activity. In this respect, Plaintiff's proposed instruction conflates the requirements of RICO claims brought under §§ 1962(c) and 1962(d) of RICO and would confuse and mislead the jury. Moreover, contrary to the Plaintiff's proposed instruction, a defendant who might be liable under § 1962(c) does not assume liability for all actions taken by "other co-schemers' actions during the course of and in furtherance of the scheme" as the Plaintiff's proposed instruction states. Among other things, Altria is not liable for actions taken by other alleged schemers before or after Altria was conducting or participating in conducting the alleged enterprise. Plaintiff's proposed instruction therefore does not accurately state the law. Plaintiff's reliance upon

1    a model instruction as the basis for this proposal does not excuse these problems.  As the Ninth

2    Circuit has explained, even "standard instructions may not always pass muster . . . ." *United States*

3    *v. Pena-Ozuna*, 511 F.2d 1106, 1108 (9th Cir. 1975).   Finally, the proposed instruction is

4    unnecessary given that Altria's proposed instructions are sufficient to explain the requirements of

5    Plaintiff's § 1962(c) claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RICO – Racketeering Conspiracy – Conspiracy in General**

I said that Plaintiff alleged two bases for its RICO claim. Plaintiff's second basis alleges a conspiracy to violate RICO. Plaintiff alleges that Altria knowingly and intentionally conspired with at least one other person to conduct or to participate in the conduct of the affairs of the enterprise in violation of RICO.

- 170 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RICO Section 1962(d) – Violation of 1962(c) Required**

Plaintiff's RICO conspiracy claim requires that Plaintiff first prove by a preponderance of the evidence that Altria or a person who conspired with Altria to conduct an enterprise violated RICO by being employed by or associated with an enterprise to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. If Plaintiff fails to prove a violation of RICO, then you must find for Altria on the conspiracy-to-violate-RICO claim.

1

**RICO – Racketeering Conspiracy – Elements**

2       Plaintiff must prove each of the following elements of a conspiracy to violate RICO by a

3  preponderance of the evidence:

4       First, the alleged enterprise was or would be established;

5       Second, Altria knowingly agreed that either Altria or another person would be associated

6  with the enterprise; and

7       Third, Altria knowingly agreed that either Altria or another person would conduct or

8  participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of

9  racketeering activity. For purposes of conspiracy, it is not necessary for Plaintiff to prove that Altria

10 actually committed a pattern of racketeering activity, but Plaintiff must prove that Altria agreed to

11 participate in the conspiracy with the knowledge and intent that at least one member of the

12 racketeering conspiracy would intentionally commit, or cause, or aid and abet the commission of,

13 two or more racketeering acts.

14       In your consideration of Plaintiff's conspiracy claim, you should first determine whether

15 the alleged conspiracy existed. If you conclude that a conspiracy existed as alleged, you should

16 then determine whether Altria knowingly became a member of that conspiracy.

17

18

19

20

21

22

23

24

25

26

27

28

## RICO—Racketeering Conspiracy—Agreement Required[45]

In your consideration of Plaintiff's conspiracy claim, you should first determine whether the alleged conspiracy existed and included Altria.  To find the existence of a conspiracy that included Altria, Plaintiff must prove that Altria agreed with another member of that conspiracy to accomplish an unlawful plan through a pattern of racketeering activity.

To establish the existence of an agreement, Plaintiff must demonstrate that Altria and another member of the conspiracy had a meeting of the minds and that they agreed to work together to accomplish an objective.  Plaintiff must show that the conspirators objectively manifested, through words or actions, agreement to control or participate in the enterprise's affairs.  If you find that Altria did not agree to join or that a conspiracy did not exist, then you must find for Altria on this claim.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. An informal understanding is enough. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.

A conspiracy may continue for a long period of time and may include the performance of many transactions. One may join a conspiracy after it is already in progress. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

---

[45] *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 66; *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) –
Similar Conduct Does Not Establish Conspiracy**

**ALTRIA'S PROPOSAL:**

Mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily prove the existence of a conspiracy.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with RICO case law setting forth the requirements for a claim under section 1962(d), which requires significantly more than evidence that the alleged conspirators engaged in similar conduct or assembled together and associated with one another. *See, e.g.*, *Just Film, Inc. v. Merch. Servs., Inc.*, No. 10-CV-01993, 2010 WL 4923146, at *15 (N.D. Cal. Nov. 29, 2010) (finding allegations of "benefits obtained" by the purported co-conspirators "through associating together" insufficient for a conspiracy); *Green v. Bissell Homecare Inc.*, No. 10-CV-02421, 2011 WL 13175163, at *12 (N.D. Ala. July 29, 2011) (finding allegations of "[no]thing more than the fact that Wal-Mart sold [allegedly misrepresented products]" "and the presumed retailer-manufacturer contract between Wal-Mart and each of the manufacturers with whom it does business" insufficient for a conspiracy). Plaintiffs "must show that defendants objectively manifested their agreement to participate in a racketeering enterprise through the commission of two or more predicate crimes." *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1170 (C.D. Cal. 2007). This requires proof that defendants "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise," *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004), and were "aware of the essential nature and scope of the enterprise and intended to participate in it," *id.* (quoting *Howard*, 208 F.3d at 751). This instruction is also consistent with the Eleventh Circuit's model jury instructions for RICO. Eleventh Cir. Model Civil Instr. 7.4.

Altria's proposed instruction therefore correctly explains to the jury that similar conduct, being present at the scene of some act, or associating with an alleged co-conspirator is not enough

1   to establish a conspiracy.  This clarification is critical here because Plaintiff is likely to offer

2   evidence that might show that Altria shared a common aim or associated or assembled together

3   with another person.  Without this instruction, the jury might incorrectly conclude that those actions

4   alone are enough to establish a conspiracy.

5       Plaintiff does not object to the instruction as inconsistent with the law.  Instead, Plaintiff

6   objects to Altria's proposal here and with respect to certain other instructions outlining the

7   requirements for a claim under 18 U.S.C. § 1962(d) because the instructions depart from the RICO

8   conspiracy instruction that the Court gave in the *Planned Parenthood* case.  But the claims, issues,

9   allegations, and evidence in *Planned Parenthood* were different from those in this case.  *See supra*.

10  Accordingly, rather than simply adopting the instruction in *Planned Parenthood*, the Court should

11  consider whether, given the claims and evidence in this case, the instruction proposed by Altria

12  would better explain the issues to the jury and prevent confusion and prejudice.  Altria's proposed

13  instructions on section 1962(d) would do so.  These instructions explain the requirements for a

14  conspiracy claim and what those requirements mean in a manner that is appropriate given the

15  Plaintiff's allegation that JLI is the purported RICO enterprise and certain officers and directors of

16  JLI and an investor in JLI conspired to conduct JLI as enterprise through a pattern of racketeering

17  activity.

18  **PLAINTIFF'S POSITION:**

19      Plaintiff objects to this instruction because the substance of it is captured by the RICO

20  Conspiracy Elements instruction proposed.

21      Plaintiff also objects to Altria's negative framing of this instruction. Jury instructions should

22  be neutral, rather than framing the issues negatively, e.g., telling the jury what is not a conspiracy.

23  Identifying specific acts that do not constitute a conspiracy would lead to imbalanced instructions,

24  unless the Court also were to identify specific acts that *do* constitute a conspiracy. Plaintiff does

25  not suggest that approach because it would lead to an endless series of instructions. The Court

26  should simply state the law. For instance, Altria cites to this District's decision in *Just Film*, but

27  their proposed instruction is far afield from the discussion in that case. The court wrote as follows

28  when describing the legal standard in *Just Film*:

1

2

3

To state a claim under § 1962(d), plaintiffs must "allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." The conspiring defendants must be alleged to "have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'"

4   *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2010 WL 4923146, at *15 (N.D. Cal.

5   Nov. 29, 2010) (citations omitted).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### RICO—Racketeering Conspiracy—Knowledge Required[46]

2       Plaintiff must prove that Altria joined the conspiracy knowing the conspiracy's purpose and

3 intending to facilitate it. Altria must have been aware of the essential nature and scope of the

4 conspiracy and intend to participate in it. A person or entity that does not have knowledge of a

5 conspiracy, but who happens to act in a way that advances some object or purpose of the conspiracy,

6 does not become a conspirator.

7       Plaintiff must prove that Altria agreed to participate in the conspiracy with the knowledge

8 and intent that at least one member of the racketeering conspiracy would intentionally commit, or

9 cause, or aid and abet the commission of, two or more racketeering acts. You must agree on at least

10 two acts of racketeering the co-conspirators understood would be committed. But Plaintiff is not

11 required to prove that Altria personally committed, or agreed to personally commit, two or more

12 racketeering acts.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[46] *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 68

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) –
Conspiracy Liability Limited Based on when Altria Joined the Alleged Conspiracy**

**ALTRIA'S PROPOSAL:**

If you conclude that a conspiracy existed and that Altria joined the conspiracy, you must then determine when Altria joined and thus was a member of the conspiracy.

If you find that Altria joined the conspiracy on a certain date, Altria would not be liable for any conduct that occurred before joining the conspiracy.

**ALTRIA'S POSITION:**

Altria's proposed instruction is supported by ample case law that holds that a RICO "co-conspirator is only liable for the overt acts committed after he joined the unlawful agreement." *Mattel, Inc. v. MGA Ent., Inc.*, No. 04-CV-09049, 2010 WL 11463911, at *4 (C.D. Cal. Sept. 3, 2010); *see also, e.g.*, *Bryant v. Mattel, Inc.*, No. 04-CV-09049, 2010 WL 3705668, at *14 (C.D. Cal. Aug. 2, 2010). As the Ninth Circuit has explained when addressing conspiracy liability, "a defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy." *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992); *see also, e.g.*, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-CV-02861, 2013 WL 2386635, at *6 (N.D. Cal. May 30, 2013) (similar); *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 524 (D. Conn. 2020) (similar).

Altria's proposed instruction is necessary here to ensure that the jury understands the limits on RICO conspiracy liability and to prevent the jury from imposing conspiracy liability for conduct that does not support that liability. The proposed instruction is especially critical here given that Plaintiff does not allege that Altria joined the purported conspiracy when it was formed. Plaintiff, for example, claims that the alleged conspiracy was formed and began to engage in racketeering activity that harmed Plaintiff long before Altria is alleged to have had any relationship with JLI. In the absence of Altria's proposed instruction here, the jury is likely to think that Altria can be liable for racketeering activity undertaken before Altria joined any conspiracy. That understanding is contrary to the case law set forth above. Altria's proposed instruction is necessary to avoid such outcomes.

1    Plaintiff relies on this Court's class certification order (citing *Oki Semiconductor Co. v.*

2    *Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002)), and *United States v. Umagat*,

3    998 F.2d 770, 772 (9th Cir. 1993).   Neither decision support its position.   The court in *Oki*

4    *Semiconductor* did not conclude that a defendant would be liable for a conspiracy's conduct from

5    the time it was formed regardless of when that defendant joined the conspiracy.  To the contrary,

6    *Oki Semiconductor* addressed whether plaintiffs could amend to add a § 1962(d) conspiracy claim

7    and concluded in *dicta* that they could not there based on *respondeat superior*.  298 F.3d at 776.

8    And *Umagat* was neither a RICO case nor a civil conspiracy case, and the facts at issue in that case

9    were fundamentally different from those presented here.  998 F.2d at 772.

10   **PLAINTIFF'S POSITION:**

11   Plaintiff objects to this instruction because it is factually unsupported and legally incorrect.

12   It is factually unsupported because Plaintiff's claim is that all of the conduct at issue, including

13   JLI's conduct before 2017 and Altria's conduct afterwards, contributed to the same indivisible

14   current-existing injury. Plaintiff's proposed causation instruction tells the jury it must find that

15   Altria's conduct contributed to Plaintiff's injury. There is therefore no factual basis for the jury to

16   find liability based only on conduct for which Altria bears no responsibility.

17   If the Court elects to give this instruction, Plaintiff requests the following language be

18   included:

19       Events that occurred before a conspirator joined a conspiracy may be considered by
         you to prove the nature and scope of the conspiracy at the time the person joined.
20

21   Even if the facts were different, Altria's proposed instruction would be legally incorrect. As

22   this Court found in its Order on Motion for Class Certification, "[u]nder Ninth Circuit precedent,

23   all defendants who participated in the RICO enterprise are liable for the entire injury caused by the

24   enterprise's illegal conduct, regardless of whether they personally participated in every aspect of

25   the conspiracy." ECF 3327 at 30 (citing *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,

26   298 F.3d 768, 775 (9th Cir. 2002) ("[T]he damage wrought by the conspiracy 'is not to be judged

27   by dismembering it and viewing its separate parts, but only by looking at it as a whole.'"); *United*

28   *States v. Umagat*, 998 F.2d 770, 772 (9th Cir. 1993) ("'One may join a conspiracy already formed

and in existence, and be bound by all that has gone before in the conspiracy, even if unknown to him.'") (quoting *United States v. Bibbero*, 749 F.2d 581, 588 (9th Cir.1984)).

Altria relies on *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992), but that case held only that a defendant was not liable for fraudulent acts committed after he *withdrew* from a conspiracy. Here, there is no factual basis for Altria to assert a withdrawal defense.

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Withdrawal from Conspiracy**

**ALTRIA'S PROPOSAL:**

Once a person becomes a member of a conspiracy, that person remains a member until that person withdraws from it. One may withdraw by doing acts which are inconsistent with the purpose of the conspiracy and by making reasonable efforts to tell the co-conspirators about those acts. You may consider any definite, positive step that shows that the conspirator is no longer a member of the conspiracy to be evidence of withdrawal.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with the Ninth Circuit's model instructions. Ninth Circuit Model Crim. Instr. 11.5. It is also supported by RICO case law. This instruction is also necessary to explain the applicable standard, focus the jury's attention on the correct issues, and prevent confusion and potential prejudice to Altria. To the extent that the jury finds that Altria joined and became a member of the alleged enterprise, it should be instructed on how to determine whether Altria subsequently withdrew from that conspiracy. This is critically important, since Altria's liability for conspiracy would terminate upon withdrawal.

Plaintiff objects to this instruction as lacking a sufficient factual basis. To the contrary, Altria submits that Plaintiff's conspiracy claim itself lacks a sufficient factual basis. If the Court rejects this argument, however, at a minimum it should instruct the jury that a defendant can withdraw from any conspiracy that the jury might conclude it has joined.

**PLAINTIFF'S POSITION:**

Plaintiff objects to this instruction because there is no factual basis for concluding that Altria withdrew from the RICO conspiracy during the relevant time period. In addition, Altria claims that this instruction is "supported by RICO case law," but provides no such case law.

1   **[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Different Schemes of Misconduct**

2   **ALTRIA'S PROPOSAL:**

3       If you find that Altria is a member of another conspiracy, but not the one Plaintiff alleged,

4   then you cannot find Altria liable in this case.  Put another way, you cannot find that Altria violated

5   section 1962(d) unless you find that Altria was a member of the conspiracy alleged – not some

6   other separate conspiracy.

7   **ALTRIA'S POSITION:**

8       Altria's proposal is necessary to focus the jury on the conspiracy that Plaintiff claims Altria

9   joined when determining whether Plaintiff has proven a claim under section 1962(d).

10  **PLAINTIFF'S POSITION:**

11      Plaintiff objects to this instruction because it is irrelevant. Plaintiff has the burden to prove

12  each Altria was a member of a RICO conspiracy and the elements for that claim are accurately set

13  forth in other instructions. Instructing that Altria cannot be held liable for some unnamed and

14  unalleged conspiracy wastes time and confuse the jury. Notably, Altria has not cited to any legal

15  authority or any pattern instruction that allegedly supports their position.

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **[Contested, Altria-Proposed] RICO 18 U.S.C. § 1962(d) – Altria's Alleged Involvement**

2  **ALTRIA'S PROPOSAL:**

3       Plaintiff claims that the alleged conspiracy conducted five separate schemes of misconduct:

4  (1) the "fraudulent marketing scheme;" (2) the "youth access scheme;" (3) the "nicotine content

5  misrepresentation scheme;" (4) the "flavor preservation scheme;" and (5) "the cover-up scheme."

6  Plaintiff alleges that Altria participated in conducting three schemes of alleged racketeering

7  activity:   a "nicotine content misrepresentation scheme;" a "flavor preservation scheme;" and a

8  "cover-up scheme."   Plaintiff does not allege that Altria participated in directing the alleged

9  "fraudulent marketing scheme" or "youth access scheme."   Accordingly, you cannot find Altria

10  liable for alleged conspiracies and conduct of the "fraudulent marketing scheme" or the "youth

11  access scheme."

12  **ALTRIA'S POSITION:**

13       Altria's proposed instruction is supported by case law that limits conspiracy liability to the

14  conspiracy that a defendant agreed to join.  "In a RICO conspiracy, as in all conspiracies, agreement

15  is essential."  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quotation omitted).  Plaintiffs

16  "must show that defendants objectively manifested their agreement to participate in a racketeering

17  enterprise through the commission of two or more predicate crimes."  *Avalos v. Baca*, 517 F. Supp.

18  2d 1156, 1170 (C.D. Cal. 2007).   It is the agreement that defines, and limits, the scope of a

19  conspirator's liability:

20         The extent of Defendants' liability . . . is necessarily limited by the contours of their
       alleged conspiratorial agreement with [the alleged co-conspirators].   Thus, if

21         Defendants and [and the alleged co-conspirators] agreed to perform scheme A in
       order to accomplish objective X, Defendants could be held liable for an act done by

22         one or more of the conspirators pursuant to the scheme and in furtherance of the
       object.  That does not mean, however, that the Defendants would also be liable for

23         [an alleged co-conspirator's] agreement with other individuals to perform scheme B
       to accomplish objective Y.

24

25  *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 104, 106-07 (D. Conn.

26  2010); *see also, e.g.*, *Bazzi v. City of Dearborn*, 658 F.3d 598, 602-03 (6th Cir. 2011) (plaintiff

27  alleged two conspiracies but only one conspiracy included certain defendant, who did not share

28  "conspiratorial objective" and thus would not be liable for acts furthering the second conspiracy)

1   (citation and quotations omitted); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002)

2   (similar).[47]  Given these requirements, Altria can only be liable for injuries allegedly caused by

3   actions that were taken to further an allegedly unlawful objective that it had agreed to pursue.  *See,*

4   *e.g.*, *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985) (plaintiff can only be liable for acts taken

5   by the conspiracy that included them).

6        Altria's proposed instruction is necessary to ensure that the jury understands the limits upon

7   RICO conspiracy liability and prevent the jury from imposing conspiracy liability for conduct that

8   does not support that liability.  The proposed instruction is especially critical here given that

9   Plaintiff does not allege that Altria was involved in each of the separate schemes that the purported

10  conspiracy included.  Plaintiff, for example, does not allege that Altria was ever involved in two of

11  the alleged schemes to defraud.  *See supra*.  Because Altria never agreed to take part in these

12  schemes, it did not conspire to conduct an enterprise that was engaged in these schemes through a

13  pattern of racketeering activity, and Plaintiff's conspiracy claims again fail.  In the absence of

14  Altria's proposed instruction here, the jury is likely to think that Altria can be liable for racketeering

15  activity that pertained to schemes that were outside of any conspiracy that included Altria.  That

16  understanding is contrary to the case law set forth above.  Altria's proposed instruction is necessary

17  to avoid such outcomes.

18  **PLAINTIFF'S POSITION:**

19       Plaintiff objects to this instruction because it is irrelevant and legally incorrect. The

20  instruction also reads like an argument and is, therefore, imbalanced. The court should not instruct

21  the jury as to whether it can or cannot hold Altria liable.

22       Regardless, the instruction is inconsistent with the facts and law. As this Court previously

23  held "[t]he five schemes identified by plaintiffs, interrelated and together, establish the overall

24  pattern of racketeering activity alleged. That Altria was only directly involved in some of the

25  racketeering activity is not significant. Under Ninth Circuit precedent, all defendants who

26  ─────────────────────

27  [47] These common law conspiracy decisions are relevant to Plaintiff's RICO claims for conspiracy
    here. *See, e.g.*, *Beck v. Prupis*, 120 S. Ct. 1608, 1615 (2000) ("We presume, therefore, that when
    Congress established in RICO a civil cause of action for a person 'injured . . . by reason of' a

28  'conspir[acy],' it meant to adopt these well-established common-law civil conspiracy principles.")
    (citations and quotations omitted).

1   participated in the RICO enterprise are liable for the entire injury caused by the enterprise's illegal

2   conduct, regardless of whether they personally participated in every aspect of the conspiracy."

3   Order on Mot. for Class Certification, ECF 3327 at 30. The schemes alleged by Plaintiff are

4   interrelated and together form the course of conduct that is one fraudulent scheme.

5          In addition, as already addressed, Plaintiff has the burden of proof and should have the

6   freedom to choose how to present the facts to the jury, rather than being limited to a specific framing

7   of the issues because those words are in the complaint. This Court's motion to dismiss order simply

8   explained the nature of the allegations against Altria; it did not suggest that the jury would need to

9   be instructed in this matter. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 533

10  F. Supp. 3d 858, 866 (N.D. Cal. 2021). The case has been developed through evidence since the

11  complaint was filed, and Plaintiff should be permitted to explain to the jury what the subparts of

12  the Defendants' overall scheme were, if the Plaintiff chooses to discuss subparts at all.

13         Finally, Altria's approach is inconsistent with Ninth Circuit law holding that the Court

14  should not "dismember" the conspiracy. Because all conspirators are jointly and severally liable, it

15  would be illogical, confusing, and legally incorrect to instruct the jury that Altria may only be held

16  liable for parts of the conspiracy. *See* ECF 3327 at 30 (citing *Oki Semiconductor Co. v. Wells Fargo*

17  *Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) ("[T]he damage wrought by the conspiracy 'is

18  not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a

19  whole.'").

20

21

22

23

24

25

26

27

28

**[Contested, Competing Proposals] [Plaintiff-Proposed] RICO –
Causation / [Altria-Proposed] RICO – Injury and Causation**

**PLAINTIFF'S PROPOSAL:**

If you find that Altria conducted or participated in the affairs of a racketeering enterprise through a pattern of racketeering, or conspired to do so, you must also determine whether Plaintiff has proved by a preponderance of the evidence that the violation caused Plaintiff an injury to its business or property before you may find for the Plaintiff. This requirement will be satisfied if the damages are caused by the predicate acts committed by Altria or a co-conspirator or if the damages are caused by the pattern of acts as a whole, or both. In either case, you must find that there was some direct relationship between the injury the Plaintiff has asserted and the alleged violation in question.

**ALTRIA'S PROPOSAL:**

If you find that Altria violated RICO by conducting or participating in the conduct of the affairs of a racketeering enterprise through a pattern of racketeering, or conspired to do so, you must then determine whether Plaintiff has proved by a preponderance of the evidence that the violation caused Plaintiff an injury to its business or property.  I will first describe for you what Plaintiff must prove to establish injury to business or property under RICO.  I will then explain what Plaintiff must prove to demonstrate that Altria caused any such injury to business or property.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction accurately tells the jury both that it must find proximate cause between proven RICO violations and injury to business or property, and that in doing so it must consider the relevant predicate acts or the pattern of acts.

Altria's proposal intentionally omits information, thereby creating the need for additional instructions.

Altria objects to Plaintiff's proposed instruction as "contrary to the law," but its position statement fails to explain why Plaintiff's position is incorrect. Instead, Altria argues for its approach of intentionally omitting information for the purpose of doling out crumbs of information in a series of instructions. This Court should reject such an unnecessarily confusing approach.

1      Altria also believes that the Court should elaborate on "injury to business or property" in a

2 series of instructions. But, as laid out below, all of those instructions are objectionable and should

3 not be given.

4 **ALTRIA'S POSITION:**

5      Altria objects to portions of the Plaintiff's proposed instruction as contrary to the law,

6 incomplete, and prejudicial.  Altria discusses the basis for these objections in more detail below

7 and explains why Altria's own proposal is more appropriate than the Plaintiff's proposal.

8      Altria's instruction is consistent with RICO's plain language and case law applying that

9 language.  As § 1964(c) provides, "[a]ny person injured in his business or property by reason of a

10 violation of [18 U.S.C. § 1962] may sue therefore in any appropriate United States district

11 court . . . ." 18 U.S.C. 1964(c); *see also, e.g.*, *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969,

12 972 (9th Cir. 2008) ("[A] civil RICO plaintiff must show: (1) that his alleged harm qualifies as

13 injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation,

14 which requires the plaintiff to establish proximate causation.").  Although Plaintiff's proposal

15 makes several of the same points as Altria's proposal, where the two proposals diverge, Altria's

16 proposal tracks the statutory language more closely and thus should be adopted.  In addition,

17 Plaintiff's proposal is broader because it attempts to describe the requirements of injury and

18 causation in this single instruction with little subsequent elaboration concerning these critical, and

19 complex, requirements.  In doing so, Plaintiff's approach fails to identify and explain several

20 important concepts concerning these requirements that are extremely relevant to the claims and

21 theories that will be offered to the jury.  By contrast, Altria proposes additional instructions on the

22 injury and causation requirements to address those issues in the proposed instructions that follow.

23      Finally, Plaintiff accuses Altria of "intentionally omitting information for the purpose of

24 doling out crumbs of information in a series of instructions."  While colorfully stated, Plaintiff's

25 claim is incorrect.  Altria includes additional instructions that clarify RICO's "injury to business or

26 property" and causation requirements in order to adequately inform the jury about these

27 requirements.  As set forth below, these additional instructions are consistent with controlling

28 precedent and necessary to explain these requirements, especially given the distinction between

injury and causation under RICO and the causation and injury requirements for Plaintiff's other claims.

1    **[Contested, Altria-Proposed] RICO – Injury Requires Concrete Financial Loss**

2    **ALTRIA'S PROPOSAL:**

3    RICO limits a Plaintiff to recovery for injuries to its business or property and limits what

4    those injuries include.  Injury to business or property requires proof that Plaintiff incurred a concrete

5    financial loss as a result of racketeering activity that Altria conducted or participated in conducting.

6    **ALTRIA'S POSITION:**

7    Altria's proposed instruction is consistent with and supported by RICO case law that has

8    made clear that "a showing of injury [to business or property] requires proof of concrete financial

9    loss, and not mere injury to a valuable intangible property interest."  *Steele v. Hosp. Corp. of Am.*,

10   36 F.3d 69, 70 (9th Cir. 1994); *see also, e.g.*, *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783,

11   785 (9th Cir. 1992) (en banc) (RICO's "showing of 'injury' requires proof of concrete financial

12   loss"); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (finding "beyond dispute"

13   that the plaintiffs suffered "no financial loss" as terminated board members whose insurance

14   policies were canceled were later compensated by the company and provided with replacement

15   policies); *First Pac. Bancorp., Inc. v. Bro*, 847 F.2d 545, 547 (9th Cir. 1988) ("Absent damages, a

16   RICO claim cannot be sustained.").

17   Altria's proposed instruction is needed here to ensure that the jury understands RICO's

18   "injury to business or property" requirement and the limits that apply to this requirement.  As the

19   Ninth Circuit has explained, RICO's "injury to business or property" requirement "has a restrictive

20   significance" that "helps to assure that RICO is not expanded to [provide] a federal cause of action

21   and treble damages to every tort plaintiff."  *Steele*, 36 F.3d at 70.  The importance of making clear

22   to the jury the confines of RICO's injury to business or property is especially critical given the

23   claims and evidence at issue in this case.  In addition to RICO, Plaintiff brings claims for nuisance

24   and negligence and is likely to offer evidence concerning purported impacts on or harm to Plaintiff

25   that would not qualify as injury to business or property.  Altria's proposed instruction is appropriate

26   and necessary to ensure that the jury understands the applicable standard and focuses on the correct

27   issues and to avoid confusion and prejudice to Altria.

28

1    **PLAINTIFF'S POSITION:**

2         Plaintiff objects to the proposed instruction as misstating the law and likely to confuse the

3    jury. While the Ninth Circuit has at times used the phrase "concrete financial loss," it has done so

4    in the context of determining whether a plaintiff had standing to bring a RICO claim. *See, e.g.*,

5    *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70–71 (9th Cir. 1994); *Oscar v. Univ. Students Co-op.*

6    *Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.

7    1990). Altria does not cite, and Plaintiff is not aware of, any case suggesting that a jury should be

8    instructed using the phrase "concrete financial loss."

9         The RICO statute does not reference a "concrete financial loss." It states that any person

10   "injured in his business or property by reason of a violation of section 1962 of this chapter may sue

11   therefor …." 18 U.S.C. § 1964(c). Notably, the *Oscar* case used a variety of ways to describe the

12   injury requirement. The court did reference a "concrete financial loss" once. *Oscar*, 965 F.2d at

13   785. But the court also described the requirement as a "tangible financial loss." *Id.* Later, the court

14   clarified that RICO provides a remedy for "harm to business and property only," as contrasted with

15   personal injuries. *Id.* at 786. Finally, the court explained that a plaintiff must "demonstrate a

16   financial loss to her business or property." *Id.*

17        A more recent Ninth Circuit decision made clear that the base requirement is simply

18   financial loss that is connected to a business or property interest, rather than a particular type of

19   financial loss—e.g., "concrete" or "tangible." *Diaz v. Gates*, 420 F.3d 897, 898-900 (9th Cir. 2005).

20   The *Diaz* court wrote that the *Oscar* standard had been "clarified" by subsequent caselaw. *Id.* at

21   899. Applying that standard, the court held that lost wages constituted injury to business or property

22   under RICO. *Id.* at 898-900. The standard employed by the Ninth Circuit required the plaintiff to

23   prove harm to a "specific property interest." *Id.* at 900.

24        Thus, the word "concrete" is not a precise legal standard; rather, it is a word that courts

25   sometimes use as part of their analysis, and its relevance is questionable post-*Diaz*. The phrase

26   "concrete financial loss" should not be part of the jury instructions. In this case, the word "concrete"

27   carries a particular risk of jury confusion because it suggests the need for receipts—i.e., payments

28   already made. Yet, the law is clear that an out-of-pocket loss is not required to make a viable RICO

1    claim. *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2672,

2    2017 WL 4890594, at *5 (N.D. Cal. Oct. 30, 2017). SFUSD's losses come mostly in the form of

3    expenditures that it needs to make but has not yet been able to afford.

4         Both sides' proposed jury instructions on causation inform the jury that they must find an

5    injury to SFUSD's business or property to hold Altria liable. That approach is sufficient.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO – Injury Excludes Costs of Governmental Functions**

**ALTRIA'S PROPOSAL:**

Injury to business or property does not include harm that a government entity like Plaintiff may incur when performing its governmental functions.  Instead, Plaintiff can only recover for expenditures that it made in the ordinary marketplace as a consumer.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by RICO case law.  In *Canyon County v. Syngenta Seeds, Inc.*, the Ninth Circuit made clear that, "[w]hen a governmental body acts in its sovereign or quasi-sovereign capacity, seeking to enforce the laws or promote the public well-being, it cannot claim to have been injured in its property for RICO purposes based solely on the fact that it has spent money in order to act governmentally."  519 F.3d 969, 972, 975 (9th Cir. 2008).  As the court explained, it is "inappropriate to label a governmental entity 'injured in its property' when it spends money on the provision of additional public services, given that those services are based on legislative mandates and are intended to further public interest."  *Id*.; *see also, e.g.*, *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 650 (N.D. Cal. 2020)  ("*Canyon County* established that governmental entities *cannot* assert a RICO claim based on expenditures or services provided in their sovereign or quasi-sovereign capacities."); *Welborn v. Bank of New York Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) ("A government cannot claim damages for general injury to the economy or 'to the Government's ability to carry out its functions.'") (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 265 (1972)).

Altria's proposed instruction is needed here to ensure that the jury understands RICO's "injury to business or property" requirement and the limits that surround this requirement.  As the Ninth Circuit has explained, RICO's "injury to business or property" requirement "has a restrictive significance" that "helps to assure that RICO is not expanded to [provide] a federal cause of action and treble damages to every tort plaintiff."  *Steele*, 36 F.3d at 70.  The importance of making clear to the jury the confines of RICO's injury to business or property, and the exclusion of costs incurred by a plaintiff acting in a governmental capacity from injury, is especially critical given the claims and evidence at issue in this case.  Plaintiff intends to offer evidence of costs paid by Plaintiff to

1    provide services and other resources that were made by Plaintiff when acting in its governmental

2    capacity.  Under *Canyon County*, such costs would not qualify as "injury to business or property"

3    and cannot be recovered under RICO.  Altria's proposed instruction is appropriate and necessary

4    to ensure that the jury understands the applicable standard and focuses on the correct issues and to

5    avoid confusion and prejudice to Altria.

6         Plaintiff's only objection to this proposed instruction is that it is irrelevant because Plaintiff

7    seeks to recover for injury to business or property.  This argument fails.  Plaintiff's summary

8    judgment opposition, for example, makes clear that one argument they intend to raise with respect

9    to their RICO claims is that Plaintiff suffered injury to business or property when providing services

10   at schools within the school district.  *See* Pl. SJ Opp.

11   **PLAINTIFF'S POSITION:**

12        This proposed instruction is irrelevant, legally inaccurate, and more of a legal argument

13   than a jury instruction. The instruction is irrelevant, and therefore confusing, because Plaintiff's

14   claim is not based on the provision of government services; it is based on damages to its property

15   interests, and damages necessary to remedy that injury. The instruction also misstates the law

16   because Plaintiff's recovery is not limited to expenditures in the marketplace. Damages based on

17   harm to property interests (with property interests defined by state law) are also compensable under

18   RICO. *See City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 651 (N.D.

19   Cal. 2020) (holding that *Canyon County* permitted municipality's claim based on injury to property

20   interest); *In re JUUL*, 497 F. Supp. 3d at 622 (recognizing the distinction, and holding that public

21   entity plaintiffs had standing to bring RICO claims based on allegations of injury to property

22   interest). The instruction also reads like an argument as to why damages should be limited. It is not

23   proper language for a jury instruction.

24

25

26

27

28

**[Contested, Altria-Proposed] RICO –**
**Injury Excludes Costs Related to Addiction and Personal Injury**

**ALTRIA'S PROPOSAL:**

Expenditures made to address harm caused by physical injury, including addiction, do not establish injury to business or property.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by RICO case law. "Injury to business or property" does not include damages related to personal injuries. *See, e.g.*, *RJR Nabisco, Inc. v. European Cmty*, 136 S. Ct. 2090, 2097 (2016) ("RICO's private cause of action [is limited] to particular kinds of injury—excluding, for example, personal injuries."). In addition to medical expenses and pain and suffering, "[f]inancial losses resulting from personal injury unquestionably are not recoverable under RICO." *City & Cnty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1139 (N.D. Cal. 1997). This restriction precludes recovery under RICO for addiction-related expenditures. *See, e.g.*, *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 73 (2000) ("[T]he accumulated costs of purchasing cigarettes during plaintiff's many years of smoking . . . are certainly pecuniary, [but] they are not the sort of economic harms actionable under RICO. They are instead harms that derive from personal injuries."); *Le Paw v. BAT Indus. PLC*, 1997 WL 242132, at *2 (E.D.N.Y. 1997) (rejecting argument that "RICO claim seek[ing] recovery only of 'the expenses incurred in purchasing cigarettes caused by defendants' scheme to addict'" was a claim for injury to business or property); *Allman v. Philip Morris, Inc.*, 865 F. Supp. 665, 668-69 (S.D. Cal. 1994) (dismissing RICO claims for damages resulting from nicotine addiction, including the cost of nicotine patches; "under California law, money is considered 'property,' and therefore, the cost of purchasing a Nicotine Patch should be treated as an injury to property for purposes of § 1964(c)").

Altria's proposed instruction is needed here to ensure that the jury understands RICO's "injury to business or property" requirement and the limits that apply to this requirement. As the Ninth Circuit has explained, RICO's "injury to business or property" requirement "has a restrictive significance" that "helps to assure that RICO is not expanded to [provide] a federal cause of action

1   and treble damages to every tort plaintiff." *Steele*, 36 F.3d at 70.  The importance of making clear

2   to the jury the confines of RICO's injury to business or property, and the exclusion of costs incurred

3   to address addiction from injury, is especially critical given the claims and evidence at issue in this

4   case.  Plaintiff intends to offer evidence to the jury concerning addiction to JUUL and costs to

5   address students' addiction.  The case law cited above makes clear that addiction-related treatment

6   such as counseling or education are personal injury damages that do not constitute injury to business

7   or property and do not support a RICO claim.  Altria's proposed instruction is therefore appropriate

8   and necessary to ensure that the jury understands the applicable standard and focuses on the correct

9   issues and to avoid confusion and prejudice to Altria.

10  Plaintiff's only objection to this proposed instruction is that it is irrelevant because this is

11  not a personal injury case.  Whether this is a "personal injury case" is beside the point.  It is clear

12  that Plaintiff intends to offer evidence concerning addiction-related expenses.  *See* Pl. SJ Opp.  The

13  jury should be instructed, consistent with the case law set out above, that those expenses do not

14  constitute injury to business or property under RICO.

15  Plaintiff's argument that the Court "should endeavor to keep the instructions simple and

16  straight-forward for the jury" supports this instruction.  The instruction is written in a "simple and

17  straightforward" manner and correctly explains what does not qualify as injury to business or

18  property, which is necessary here given the evidence likely to be offered at trial.

19  **PLAINTIFF'S POSITION:**

20  Plaintiff objects to this instruction as irrelevant and, therefore, confusing to the jury. SFUSD

21  is not seeking damages based on physical injuries. It is seeking damages based on the untenable

22  condition at its schools, in the past and in the present, based on the vaping epidemic caused by the

23  Defendants. Any individual's claim for personal injury is not a part of this lawsuit.

24  A bigger picture point that applies to this and many other proposed instructions is, the

25  instructions Plaintiff has proposed adequately inform the jury as to what they *should* consider in

26  evaluating the claims. It is unnecessary, confusing, and prejudicial to the Plaintiff to issue a series

27  of instructions as to what the jury *should not* consider, as Altria is asking the Court to do. The Court

28  should endeavor to keep the instructions simple and straight-forward for the jury.

1    Plaintiff's proposed RICO causation instruction informs the jury that Plaintiff has the

2  burden to prove "by a preponderance of the evidence that the violation caused Plaintiff an injury to

3  its business or property." That instruction adequately informs the jury that SFUSD's damages

4  cannot be based on personal injury. Further, the entire concept of a school district suffering personal

5  injury makes no sense, and therefore Defendants' proposed instruction would confuse the jury. The

6  legal prohibition cited by Defendants precludes recovering for expenses directly flowing from

7  personal injuries. *See, e.g.*, *City & Cnty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130,

8  1139 (N.D. Cal. 1997) ("Here, on the other hand, case law dictates that the actual injury being

9  claimed, medical expenses flowing from smoking-related illness, is a purely personal injury."). As

10  this Court has recognized, that is not the aim of SFUSD or any other government entity plaintiff.

11  *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552,

12  646-47 (N.D. Cal. 2020) (rejecting argument that government entities' nuisance claims were

13  disguised product liability claims).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **[Contested, Altria-Proposed] RICO – Injury Excludes Third Party Expenditures**

2    **ALTRIA'S PROPOSAL:**

3         If a third party incurred expenses on behalf of Plaintiff, those expenses would not constitute

4    injury to business or property and Plaintiff cannot recover for those expenses.

5    **ALTRIA'S POSITION:**

6         Altria's proposed instruction is consistent with and supported by RICO case law.  *See, e.g.*,

7    *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (no RICO "injury" because they "paid

8    none of the allegedly excessive charges out of their own pockets because those charges were

9    covered by insurance."); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (finding

10   "beyond dispute" that the plaintiffs suffered "no financial loss" as terminated board members

11   whose insurance policies were canceled were later compensated by the company and provided with

12   replacement policies); *Farmers Ins. Exchange v. First Choice Chiropractic & Rehabilitation*, 2015

13   WL 4506401, at *12 (D. Or. July 22, 2015) (granting defendant's motion for summary judgment

14   on the plaintiff's RICO claims because the plaintiff received third-party reimbursements for

15   fraudulent payments made to the defendant); *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783,

16   785 (9th Cir. 1992) (en banc) (reimbursed costs cannot support RICO standing).

17        Altria's proposed instruction is needed here to ensure that the jury understands RICO's

18   "injury to business or property" requirement and the limits that apply to this requirement.  As the

19   Ninth Circuit has explained, RICO's "injury to business or property" requirement "has a restrictive

20   significance" that "helps to assure that RICO is not expanded to [provide] a federal cause of action

21   and treble damages to every tort plaintiff."  *Steele*, 36 F.3d at 70.  The importance of making clear

22   to the jury the confines of RICO's injury to business or property, and the exclusion of costs

23   reimbursed or paid by third parties from injury, is especially critical given the claims and evidence

24   at issue in this case.  Plaintiff intends to offer evidence concerning expenses that were paid or

25   reimbursed by third parties.  *See* Pl. SJ. Opp.  Altria's proposed instruction is therefore appropriate

26   and necessary to ensure that the jury understands the applicable standard and focuses on the correct

27   issues and to avoid confusion and prejudice to Altria.

28        Plaintiff's only objection to this proposed instruction is that it lacks a factual basis.  This

1    argument is meritless.  As noted, Plaintiff has offered evidence of costs that were reimbursed by a

2    third party or paid by a third party as support for its claims in this case.  The jury should be properly

3    instructed that such evidence cannot establish RICO injury to damages or property.

4    **PLAINTIFF'S POSITION:**

5         Plaintiff objects to this instruction because there is no factual basis for it, and therefore it

6    would confuse the jury to be instructed on this issue. To the extent Plaintiff is making claims to

7    reimburse out-of-pocket expenses, Plaintiff made those payments itself. That a school district used

8    public funds in making those payments is neither surprising nor relevant. Plus, the grants did not

9    require any funds to be used in any particular manner. *See* Pl. MSJ Resp. Br. at 85-86.

10        Altria is simply wrong in stating that "Plaintiff has offered evidence of costs that were

11   reimbursed by a third party or paid by a third party as support for its claims in this case." As laid

12   out in its summary judgment response, Plaintiff has received general grants and then used its own

13   funds in a manner of its choosing, without reimbursement. *See id.* This case, therefore, is very

14   different from cases like *Steele* where the court found no RICO injury because the plaintiff "paid

15   none of the allegedly excessive charges out of their own pockets because those charges were

16   covered by insurance." *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994).

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO – Injury Excludes Costs for Prospective Relief**

**ALTRIA'S PROPOSAL:**

The costs associated with or estimated for addressing harms that may arise in the future do not constitute injury to business or property under RICO and Plaintiff cannot recover for those costs.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by RICO case law. *See, e.g.*, *Martinez v. Quality Loan Serv. Corp.*, No. CV 08-07767MMMPJWX, 2009 WL 586725, at *9 (C.D. Cal. Feb. 10, 2009) ("Prospective injuries likewise do not satisfy RICO's concrete financial injury requirement."); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008) (same); *Ferguson v. Moeller*, No. 2:16-CV-41, 2016 WL 4530383, at *9 n.12 (W.D. Pa. Aug. 30, 2016) ("Plaintiffs cannot base their RICO theory on any prospective injuries that may have been suffered.").

Altria's proposed instruction is needed here to ensure that the jury understands RICO's "injury to business or property" requirement and the limits that apply to this requirement. As the Ninth Circuit has explained, RICO's "injury to business or property" requirement "has a restrictive significance" that "helps to assure that RICO is not expanded to [provide] a federal cause of action and treble damages to every tort plaintiff." *Steele*, 36 F.3d at 70. The importance of making clear to the jury the confines of RICO's injury to business or property, and the exclusion of prospective and future harms, is especially critical given the claims and evidence at issue in this case. Plaintiff intends to offer evidence concerning expenses that would incur, if at all, in the future. *See* Pl. SJ. Opp. Altria's proposed instruction is therefore appropriate and necessary to ensure that the jury understands the applicable standard and focuses on the correct issues and to avoid confusion and prejudice to Altria. Plaintiff claims that it "needs a damages award to address the harm fully, the damages are not prospective, they are realized, in the past and present." These are factual arguments that the jury should resolve that only confirm the appropriateness of this instruction.

**PLAINTIFF'S POSITION:**

Plaintiff objects to this instruction as legally inaccurate and lacking a factual basis. As with

1   the requirement of a "concrete financial loss," Altria conflates a standing issue with a damages

2   question for the jury. The rule that prospective injuries do not confer standing is simply an

3   application of the rule requiring a concrete financial loss to obtain standing. *See, e.g.*, *Martinez v.*

4   *Quality Loan Serv. Corp.*, No. 08-07767, 2009 WL 586725, at *9 (C.D. Cal. Feb. 10, 2009).

5        Further, Plaintiff does not base its RICO claim on injuries not yet incurred, so there is no

6   factual basis for such an instruction, and it would likely confuse the jury. The harm to SFUSD

7   exists now. Plaintiff's experts—particularly Michael Dorn—lay out the measures necessary to fix

8   the *existing* problem. SFUSD has not taken those measures because it does not have the funds. But

9   while Plaintiff needs a damages award to address the harm fully, the damages are not prospective,

10  they are realized, in the past and present.

11       Plaintiff's proposed instruction, which specifically references "damage to business or

12  property," adequately informs the jury that hypothetical future damage is not at issue. In addition,

13  Altria's instruction creates a risk of confusion because, while the damage at issue is past and current

14  (not future), the remedy depends on finances obtained from this case because SFUSD currently has

15  a $125 million budget deficit. *See* Pl. Summ. J. Resp. Br. at 42.

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] RICO – Causation**

**ALTRIA'S PROPOSAL:**

If you find that Plaintiff has proven injury to business or property under RICO, you must determine whether that injury was caused by Altria's violation of section 1962.  Accordingly, if you found that Altria engaged in racketeering activity in violation of section 1962(c), you must decide whether that racketeering activity caused Plaintiff's injury to business or property.  If you found that Altria conspired to engage in racketeering activity and violated section 1962(d), you must determine whether the conspiracy's conduct during the time Altria was a member of the conspiracy caused Plaintiff's injury to business or property.  Causation requires that Plaintiff prove cause-in-fact and legal or proximate causation.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with and supported by RICO case law.  *See, e.g.*, *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires "but for" causation and proximate causation); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same); *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (same).  The proposed instruction is needed here to ensure that the jury understands RICO's causation requirement and the necessary link that Plaintiff must establish between a violation of RICO, if the jury concludes that Plaintiff proved a violation, and any "injury to business or property" suffered by Plaintiff.  RICO does not allow a Plaintiff to recover for injuries that are too far removed from the racketeering activity.

Providing the jury with sufficient instructions concerning the causal nexus required by RICO is particularly necessary in this case given the evidence that Plaintiff intends to offer at trial.  Plaintiff claims to have been injured in its business or property based on alleged harm to the school district and schools within the district.  The alleged racketeering activity concerns certain schemes related to the design, manufacture, marketing, and sale of JUUL.  At most, any connection between the alleged RICO violations and the injury to business or property claims by Plaintiff would not be direct.  Instead, any injuries would be several steps removed from Altria's alleged conduct.  Altria's proposed instruction is therefore necessary to ensure that the jury understands the applicable standard and focuses on the correct issues when evaluating whether Plaintiff has proven causation

1    under RICO and to avoid confusion and prejudice to Altria.

2    **PLAINTIFF'S POSITION:**

3         Plaintiff objects to this instruction as duplicative, and therefore likely to confuse the jury.

4    The parties agree that the jury needs to be instructed on the RICO causation requirement. The

5    parties have issued their competing causation instructions above. Whichever version this Court

6    chooses, there is no need for additional instructions about RICO causation. Otherwise, the jury will

7    be confused as to why it is being instructed on the same issue twice.

8         Specifically, Plaintiff's proposed instruction already includes the language very similar to

9    that proposed by Altria here, that "you must decide whether that racketeering activity caused

10   Plaintiff's injury to business or property." Altria adds a sentence about "but-for" and proximate

11   causation, but that concept is adequately captured by the following sentence in Plaintiff's proposed

12   instruction: "you must find that there was some direct relationship between the injury the Plaintiff

13   has asserted and the alleged violation in question."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                  **[Contested, Altria-Proposed] RICO – Cause-in-Fact**

2    **ALTRIA'S PROPOSAL:**

3          Cause-in-fact requires that Plaintiff prove the same harm would not have occurred but-for

4    Altria's RICO violation.

5    **ALTRIA'S POSITION:**

6          Altria's proposed instruction is consistent with and supported by RICO case law.  *See, e.g.*,

7    *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires "but for" causation

8    and proximate causation); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same). The

9    proposed instruction is needed here to ensure that the jury understands RICO's causation

10    requirement and the necessary link that Plaintiff must establish between a violation of RICO, if the

11    jury concludes that Plaintiff proved a violation, and any "injury to business or property" suffered

12    by Plaintiff.  RICO does not allow a Plaintiff to recover for injuries that are too far removed from

13    the racketeering activity.

14          Providing the jury with sufficient instructions concerning the causal nexus required by

15    RICO is particularly necessary in this case given the evidence that Plaintiff intends to offer at trial.

16    Plaintiff claims to have been injured in its business or property based on alleged harm to the school

17    district and schools within the district.  The alleged racketeering activity concerns certain schemes

18    related to the design, manufacture, marketing, and sale of JUUL.  At most, any connection between

19    the alleged RICO violations and the injury to business or property claims by Plaintiff would not be

20    direct.  Instead, any injuries would be several steps removed from Altria's alleged conduct.

21    Altria's proposed instruction is therefore necessary to ensure that the jury understands the

22    applicable standard and focuses on the correct issues when evaluating whether Plaintiff has proven

23    causation under RICO and to avoid confusion and prejudice to Altria.

24          Plaintiff's argument that the jury "will be confused" if they are given more than one

25    instruction on the requirement of causation is meritless, especially where Altria's proposed

26    causation instructions address distinct issues related to causation.

27    **PLAINTIFF'S POSITION:**

28          Plaintiff objects to this instruction as duplicative and unnecessary, and therefore likely to

1   confuse the jury. The parties have issued their competing causation instructions above. Whichever

2   version this Court chooses, there is no need for additional instructions about RICO causation.

3   Otherwise, the jury will be confused as to why it is being instructed on the same issue twice.

4         More specifically, Plaintiff's proposed causation instruction tells jurors that they "must find

5   that there was some direct relationship between the injury the Plaintiff has asserted and the alleged

6   violation in question." This statement is adequate to inform the jury about the need to determine

7   that Altria caused the Plaintiff's harm.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **[Contested, Altria-Proposed] RICO Mail and Wire Fraud – Reliance**

2    **ALTRIA'S PROPOSAL:**

3         To establish that any RICO violation by Altria was the but-for cause of a particular injury

4    to business or property under RICO, Plaintiff must demonstrate that it incurred that injury because

5    someone believed false or fraudulent pretenses, representations, or promises by Altria, took action

6    in reliance on that belief, and that action caused Plaintiff to suffer that specific injury to business

7    or property.

8    **ALTRIA'S POSITION:**

9         Altria's proposed instruction is consistent with and supported by RICO case law.  *See, e.g.*,

10   *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664-66 (9th Cir. 2004) (reliance "provides a key

11   causal link" in RICO cases and "all plaintiffs asserting civil RICO claims[] must prove

12   individualized reliance where that proof is otherwise necessary to establish actual or proximate

13   causation"); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.

14   Ltd.*, 943 F.3d 1243, 1260 (9th Cir. 2019) (RICO plaintiffs must show "someone in the chain of

15   causation *relied* on Defendants' alleged misrepresentations and omissions").

16        Plaintiffs try to avoid reliance based on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

17   639, 642, 655-58 (2008).  *Bridge* did not eliminate a reliance requirement from RICO mail and

18   wire fraud claims.  The Court held that *direct* reliance would not be required under the specific

19   facts presented in *Bridge*, since plaintiffs had not seen or even received the defendant's alleged

20   misrepresentations. *Id.* at 659.  But it made clear that it was *not* holding "that a RICO plaintiff who

21   alleges injury 'by reason of' a pattern of mail fraud can prevail without showing

22   that *someone* relied on the defendant's misrepresentations."  *Id.* at 658-59 (emphasis in the

23   original).  The Ninth Circuit relied on *Bridge* expressly in *Painters* when holding that "someone in

24   the chain of causation" must have "relied on Defendants' alleged misrepresentations and

25   omissions." 943 F.3d at 1260.  As the Ninth Circuit explained, "logically, a plaintiff cannot even

26   establish but-for causation if *no one* relied on the defendant's alleged misrepresentation." *Id*.

27        These decisions confirm that reliance is required in RICO mail and wire fraud cases.  They

28   also show that reliance may be "indirect" in certain cases where there was no direct link between

1   defendant and plaintiffs such that direct reliance is not possible.  But there is nothing to suggest

2   that reliance need not be proven by plaintiffs who were exposed to the alleged fraud and are capable

3   of proving direct reliance.  To the contrary, courts since *Bridge* continue to recognize that, "in

4   [RICO] cases arising from fraud, a plaintiff's ability to show a causal connection between

5   defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance

6   on that misrepresentation."  *CGC Holding*, 773 F.3d at 1089; *see also, e.g.*, *Allstate Ins. Co. v.*

7   *Palterovich*, 653 F. Supp. 2d 1306, 1323 (S.D. Fla. 2009) (similar).  The Court should therefore

8   include the language proposed by Altria.

9           The proposed instruction is needed here to ensure that the jury understands RICO's

10  causation requirement and what Plaintiff must establish between a violation of RICO, if the jury

11  concludes that Plaintiff proved a violation, and any "injury to business or property" suffered by

12  Plaintiff.  It is further necessary to make clear to the jury that this causal connection requires that

13  Plaintiff establish reliance by someone in the chain of causation.  RICO does not allow a Plaintiff

14  to recover for injuries that are too far removed from the racketeering activity.  Moreover, a claim

15  based on mail and wire fraud requires that someone has been deceived by the defendant's false

16  statements.

17          Providing the jury with sufficient instructions that Plaintiff must establish reliance to prove

18  its RICO claims is particularly necessary in this case given the evidence that Plaintiff intends to

19  offer at trial.  Plaintiff is bringing RICO claims based on alleged acts of mail and wire fraud.

20  Plaintiff claims to have been injured in its business or property based on alleged harm to the school

21  district and schools within the district.  On its face, the connection between the alleged RICO

22  violations and the injury to business or property claims by Plaintiff are not direct, and Altria's

23  conduct is several steps removed from those injuries.  Altria's proposed instruction is therefore

24  necessary to ensure that the jury understands the applicable standard and focuses on the correct

25  issues when evaluating whether Plaintiff has proven causation under RICO and to avoid confusion

26  and prejudice to Altria.

27  **PLAINTIFF'S POSITION:**

28          Plaintiff objects to this instruction as a misstatement of the law. The Supreme Court reached

the exact opposite conclusion in *Bridge*, and the passage Altria cite is *dictum*. In *Bridge*, the Court held that reliance *is not* an element of a RICO claim. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) (holding that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise"). Later, *Bridge* noted that many fact patterns would involve reliance by someone. But it was not stated as an required element of the claim, and the Court even used the language "in most cases." *Id.* at 658. Further, as discussed above, in *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019), the court noted the similarity in the fact patterns of *Bridge*—an indirect reliance case—and that case, involving prescription drugs. *Id.* at 1259-60. But the Ninth Circuit did not state reliance as a rule—nor could it, given that the Supreme Court has disclaimed such a rule. Certainly, such a rule requiring reliance on a misrepresentation would be illogical in cases like this one that depend, at least in part, on fraud by omission.

Another key point, absent from Altria'sss proposed instruction, is that fraud can be based on withholding of material information, not just the delivering of false information. *See, e.g., In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 612 (N.D. Cal. 2020) (holding that RICO allegations as to Bowen were sufficient, based on alleged "fraudulent misrepresentations or omissions regarding [JUUL's] intentional addictiveness and method of nicotine delivery"); *see also In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 590 F. Supp. 2d 1282, 1292 (C.D. Cal. 2008) (stating that if "Plaintiffs can identify specific representations by Defendants that are literally false, misleading, *or contain material omissions*, the claims are actionable under RICO") (emphasis added). Altria's instruction inadequately states the law by requiring reliance on a misrepresentation.

1 **[Contested, Altria-Proposed] RICO – Proximate Causation**

2 **ALTRIA'S PROPOSAL:**

3      Proximate causation requires some direct relation between the injury asserted and the

4 injurious conduct alleged, and cannot be too remote, purely contingent, or indirect. In order to find

5 that proximate causation exists, Altria's conduct must have led directly to the Plaintiff's harm.

6 **ALTRIA'S POSITION:**

7      Altria's proposed instruction is consistent with and supported by RICO case law. *See, e.g.*,

8 *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires proximate

9 causation); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same). Proximate causation

10 requires "some direct relation between the injury asserted and the injurious conduct alleged" and

11 cannot be "too remote, purely contingent, or indirect." *Hemi Grp., LLC v. City of New York*, 559

12 U.S. 1, 9 (2010) (quotations omitted); *see also, e.g.*, *Lexmark Int'l, Inc. v. Static Control*

13 *Components, Inc.*, 572 U.S. 118, 133 (2014) ("The proximate cause requirement bars suits for

14 alleged harm that is 'too remote' from the defendant's unlawful conduct."). "When a court

15 evaluates a RICO claim for proximate causation, the central question it must ask is whether the

16 alleged violation led directly to plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

17 451, 461 (1991).

18      The proposed instruction is needed here to ensure that the jury understands RICO's

19 causation requirement and the necessary link that Plaintiff must establish between a violation of

20 RICO, if the jury concludes that Plaintiff proved a violation, and any "injury to business or

21 property" suffered by Plaintiff.  RICO does not allow a Plaintiff to recover for injuries that are too

22 far removed from the racketeering activity.

23      Providing the jury with sufficient instructions concerning the causal nexus required by

24 RICO is particularly necessary in this case given the evidence that Plaintiff intends to offer at trial.

25 Plaintiff claims to have been injured in its business or property based on alleged harm to the school

26 district and schools within the district.  At most, any connection between the alleged RICO

27 violations and the injury to business or property claims by Plaintiff would not be direct.  Instead,

28 any injuries would be several steps removed from Altria's alleged conduct.  Altria's proposed

1   instruction is therefore necessary to ensure that the jury understands the applicable standard and

2   focuses on the correct issues when evaluating whether Plaintiff has proven causation under RICO

3   and to avoid confusion and prejudice to Altria.

4        Plaintiff's response to Altria's proposal asks the Court to adhere to the instruction given in

5   the *Planned Parenthood* case.  The questions of causation presented in this case are drastically

6   different from, and far more complex, than those in *Planned Parenthood*.  Both the alleged

7   racketeering activity and the alleged injury to business or property are broader in scope and different

8   in kind in this case when compared to those in *Planned Parenthood*.  Moreover, any purported

9   connection between the alleged misconduct and Plaintiff's purported injuries are far more

10  attenuated.  Accordingly, Altria's different and more detailed instructions on RICO's causation

11  requirement are necessary and appropriate here.

12       Plaintiff's argument that the jury "will surely be confused" if they are given more than one

13  instruction on the requirement of causation is meritless, especially where Altria's proposed

14  causation instructions address distinct issues related to causation.

15  **PLAINTIFF'S POSITION:**

16       Plaintiff again objects to this instruction as duplicative and unnecessary, and therefore likely

17  to confuse the jury. The parties have issued their competing causation instructions above.

18  Whichever version this Court chooses, there is no need for additional instructions about RICO

19  causation. Otherwise, the jury will be confused as to why it is being instructed on the same issue

20  twice.

21       Plaintiff's proposed instruction—taken from this Court's *Planned Parenthood*

22  instructions—tells jurors that they "must find that there was some direct relationship between the

23  injury the Plaintiff has asserted and the alleged violation in question." This "direct relationship"

24  language is essentially identical to the "direct relation" language in Altria's proposed instruction,

25  which is further evidence that it is not necessary and would only confuse the jury.

26

27

28

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) –**
**Damages Caused by Racketeering Activity**

**ALTRIA'S PROPOSAL:**

Even if you find Altria violated either or both sections of RICO, Plaintiff can recover only damages that were caused by the predicate acts—here either mail or wire fraud—constituting the pattern of racketeering activity that those claims are based on.  It is not necessary that every predicate act caused damage to Plaintiff.  But Plaintiff can only recover damages caused by predicate acts that are part of the pattern of racketeering activity.

**ALTRIA'S POSITION:**

Altria's proposed instruction is consistent with the RICO statute.  Section 1964(c), which creates the private cause of action under which Plaintiff seeks relief, provides that "[a]ny person injured in his business or property *by reason of a violation* of [18 U.S.C. § 1962] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit."  18 U.S.C. 1964(c).  It is likewise consistent with decisions applying that provision.  *See, e.g.*, *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (explaining that plaintiff under § 1964(c) must prove "that his harm was 'by reason of' the RICO violation").  Any objection by Plaintiff that Altria's proposed instruction is legally incorrect therefore fails.

Moreover, Altria's proposed instruction is needed here to ensure that the jury understands RICO's causation requirement and the necessary link that Plaintiff must establish between a violation of RICO, if the jury concludes that Plaintiff proved a violation, and any "injury to business or property" suffered by Plaintiff.  RICO does not allow a Plaintiff to recover for injuries that are too far removed from the racketeering activity.  Providing the jury with sufficient instructions concerning the causal nexus required by RICO is particularly necessary in this case given the evidence that Plaintiff intends to offer at trial.  Plaintiff claims to have been injured in its business or property based on alleged harm to the school district and schools within the district.  At most, any connection between the alleged RICO violations and the injury to business or property claims by Plaintiff would not be direct.  Instead, any injuries would be several steps removed from Altria's

1   alleged conduct.     Altria's proposed instruction is therefore necessary to ensure that the jury

2   understands the applicable standard and focuses on the correct issues when evaluating whether

3   Plaintiff has proven causation under RICO and to avoid confusion and prejudice to Altria.

4       Plaintiff's response to Altria's proposal asks the Court to adhere to the instruction given in

5   the *Planned Parenthood* case.  The questions of causation presented in this case are drastically

6   different from, and far more complex, than those in *Planned Parenthood*.  Both the alleged

7   racketeering activity and the alleged injury to business or property are broader in scope and different

8   in kind in this case when compared to those in *Planned Parenthood*.  Moreover, any purported

9   connection between the alleged misconduct and Plaintiff's purported injuries are far more

10  attenuated.  Accordingly, Altria's different and more detailed instructions on RICO's causation

11  requirement are necessary and appropriate here.

12  **PLAINTIFF'S POSITION:**

13      Plaintiff objects to this instruction as unnecessary, duplicative, and a misstatement of the

14  law. The parties have submitted competing instruction as to compensatory damages. Plaintiff's

15  proposed instruction is based on pattern instructions from the Ninth Circuit and California, tracks

16  this Court's instructions in *Planned Parenthood*, and fully informs the jury as to the issue to

17  consider when awarding compensatory damages. *See* Ninth Cir. Model Civ. Instr. 5.1; CACI 3900;

18  *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D. Cal. Nov. 12, 2019), at 88 &

19  90. Plaintiff's proposed "RICO-Causation" instruction adequately instructs that harm must be

20  traced to "the predicate acts …. or … the pattern of acts as a whole, or both."

21      The only case cited by Altria merely repeats the statutory requirement that the harm must

22  have occurred "by reason of" the RICO violation. This is consistent with Plaintiff's contention that

23  the key question is whether the fraudulent scheme damaged the Plaintiff, not whether certain

24  component parts of the scheme injured the Plaintiff. *See In re JUUL*, 497 F. Supp. 3d at 618.

25      Altria's instruction, by focusing the jury on which predicate acts Plaintiff's conspiracy

26  claim is "based on," is inconsistent with rule that, if Altria is found liable for RICO conspiracy, it

27  is liable for all acts in furtherance of that conspiracy. *See Oki Semiconductor Co. v. Wells Fargo*

28  *Bank*, 298 F.3d 768, 775 (9th Cir. 2002) ("If a RICO conspiracy is demonstrated, all conspirators

1   are liable for the acts of their co-conspirators."); *In re JUUL*, 497 F. Supp. 3d at 623 n.44 ("Holding

2   RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion

3   that the damage wrought by the conspiracy 'is not to be judged by dismembering it and viewing its

4   separate parts, but only by looking at it as a whole.'" (quoting *Oki Semiconductor*, 298 F.3d at 775).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) –
Assigning Responsibility for Damages**

2

3    **ALTRIA'S PROPOSAL:**

4         If you conclude that Plaintiff has proven that Altria violated RICO by conducting or

5    participating in the conduct of an enterprise through a pattern of racketeering activity, you will need

6    to determine the extent to which Altria's RICO violation caused Plaintiff's injury to business or

7    property.  Altria would be liable under 1962(c) only to the extent that it conducted or participated

8    in conducting the racketeering activity that actually caused Plaintiff's injury and would not be liable

9    for harm caused by racketeering activity that it did not conduct or participate in conducting.

10   **ALTRIA'S POSITION:**

11        This instruction is consistent with Ninth Circuit case law.  *See Oki Semiconductor Co. v.*

12   *Wells Fargo Bank*, 298 F.3d 768 (9th Cir. 2002).  In *Oki Semiconductor*, the defendant "acted as

13   the Conspiracy's financial mastermind and bookkeeper," helping to launder the proceeds from

14   computer chips stolen by the defendant's conspirators.  *Id.* at 773-74.  The court, however, held

15   that the plaintiff could not establish claims under 18 U.S.C. § 1962(c) against this defendant

16   because the "direct and proximate cause of [plaintiff's] loss was not [the defendant's] money

17   laundering at Wells Fargo; it was theft."  *Id.* at 774.  Applied here, the result in *Oki Semiconductor*

18   shows that Altria cannot be liable for injury to business or property caused by RICO violations that

19   were part of schemes of misconduct that Altria was not involved in conducting.

20        The proposed instruction is needed to make this clear to the jury and to ensure that the jury

21   applies the correct standard and focuses on the correct evidence.  Without this instruction, the jury

22   could erroneously conclude that Altria is liable for injury to business or property caused by schemes

23   of racketeering activity that Altria never conducted or participated in conducting—a result that

24   would be contrary to the law and extremely prejudicial.

25        Plaintiff's response to Altria's proposal asks the Court to adhere to the instruction given in

26   the *Planned Parenthood* case.  The questions of causation presented in this case are drastically

27   different from, and far more complex, than those in *Planned Parenthood*.  Both the alleged

28   racketeering activity and the alleged injury to business or property are broader in scope and different

1    in kind in this case when compared to those in *Planned Parenthood*.  Moreover, any purported

2    connection between the alleged misconduct and Plaintiff's purported injuries are far more

3    attenuated.  Accordingly, Altria's different and more detailed instructions on RICO's causation

4    requirement are necessary and appropriate here.

5         Plaintiff ignores the relevant portion of *Oki Semiconductor* that addressed causation for

6    claims based on violations of section 1962(c) and instead cites dicta from that decision.  Plaintiff's

7    reliance on that decision fails to support its position and provides no reason why it does not support

8    Altria's proposed instruction.

9    **PLAINTIFF'S POSITION:**

10        Plaintiff objects to this instruction as factually unsupported, and legally incorrect. The

11   instruction is factually unsupported. The injury to SFUSD is existing and ongoing, caused by the

12   entire RICO enterprise. Plaintiff is not seeking damages for a specific incident that occurred before

13   Altria's involvement. Rather, Plaintiff is seeking damages for a course of conduct, by Altria and

14   former defendants over several years, that resulted in damage to its business or property.

15        The instruction is also legally incorrect. The damages instructions proposed by Plaintiff are

16   sufficient to inform the jury as to the requirements for awarding damages. *See* Ninth Cir. Model

17   Civ. Instr. 5.1; CACI 3900; *Planned Parenthood Fed. of Am., Inc.*, No. 13-236, Doc. 1006 (N.D.

18   Cal. Nov. 12, 2019), at 88 & 90. RICO liability is joint and several, so it is not necessary that the

19   jury make individual determinations as to damages. *See, e.g.*, *Dillon v. Graf*, No. 03-0119, 2007

20   WL 9698269, at *6 (D. Nev. Sept. 12, 2007) (declaring defendants jointly and severally liable based

21   on proven RICO violation). Further, Altria's citation to *Oki Semiconductor* does not aid their

22   position. In that case, the Ninth Circuit held that "[i]f a RICO conspiracy is demonstrated, all

23   conspirators are liable for the acts of their co-conspirators." *Oki Semiconductor Co. v. Wells Fargo

24   Bank*, 298 F.3d 768, 775 (9th Cir. 2002). *See also In re JUUL*, 497 F. Supp. 3d at 623 n.44

25   ("Holding RICO conspirators jointly and severally liable for the acts of their co-conspirators

26   reflects the notion that the damage wrought by the conspiracy 'is not to be judged by dismembering

27   it and viewing its separate parts, but only by looking at it as a whole.'" (quoting *Oki Semiconductor*,

28   298 F.3d at 775).

1    This Court has rejected Defendants' interpretation of *Oki Semiconductor* several times. *See,*

2    *e.g.*, *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, No. 19-MD-02913-WHO,

3    2022 WL 2343268, at *19 (N.D. Cal. June 28, 2022) ("Under Ninth Circuit precedent, all

4    defendants who participated in the RICO enterprise are liable for the entire injury caused by the

5    enterprise's illegal conduct, regardless of whether they personally participated in every aspect of

6    the conspiracy.") (citing *Oki Semiconductor*, 298 F.3d at 775). *See also Marshall & Ilsley Tr. Co.*

7    *v. Pate*, 819 F.2d 806, 809 (7th Cir. 1987) (plaintiff need only establish "an injury directly resulting

8    from some or all of the activities comprising the [RICO] violation").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**[Contested, Altria-Proposed] RICO 18 U.S.C. § 1964(c) –**
**Assigning Responsibility Based on Time of Involvement**

3

**ALTRIA'S PROPOSAL:**

4

If you conclude that Altria violated section 1962(c), then Altria would not be liable for harm

5

caused by racketeering activity that took place before or after Altria was conducting or participating

6

in the conduct of an enterprise through a pattern of racketeering activity.

7

**ALTRIA'S POSITION:**

8

This instruction is consistent with RICO decisions by the Ninth Circuit and other courts.

9

*See, e.g.*, *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002);

10

*McGowan v. Weinstein*, 562 F. Supp. 3d 744, 755 (C.D. Cal. 2021) (RICO defendants not liable

11

for conduct that preceded involvement). In *Oki Semiconductor*, the defendant "acted as the

12

Conspiracy's financial mastermind and bookkeeper," helping to launder the proceeds from

13

computer chips stolen by the defendant's conspirators. *Id.* at 773-74. The court, however, held

14

that the plaintiff could not establish claims under 18 U.S.C. § 1962(c) against this defendant

15

because the "direct and proximate cause of [plaintiff's] loss was not [the defendant's] money

16

laundering at Wells Fargo; it was theft." *Id.* at 774. Applied here, the result in *Oki Semiconductor*

17

shows that Altria cannot be liable for injury to business or property caused by RICO violations

18

committed before Altria conducted or participated in conducting the purported enterprise.

19

The proposed instruction is needed to make this clear to the jury and to ensure that the jury

20

applies the correct standard and focuses on the correct evidence with respect to Altria. Without

21

this instruction, the jury could erroneously conclude that Altria is liable for injury to business or

22

property caused by schemes of racketeering activity that Altria could not have conducted or

23

participated in conducting because they were undertaken before Altria engaged in that conduct—a

24

result that would be contrary to the law and extremely prejudicial.

25

Plaintiff ignores the relevant portion of *Oki Semiconductor* that addressed causation for

26

claims based on violations of section 1962(c) and instead cites dicta from that decision. Plaintiff's

27

reliance on that decision fails to support its position and provides no reason why it does not support

28

Altria's proposed instruction.

1    Plaintiff also asks the Court to adhere to the instruction given in the *Planned Parenthood*

2    case.  The claims, issues, allegations, and evidence in *Planned Parenthood* were different from

3    those in this case.  *See supra*.  Accordingly, rather than simply adopting the instruction in *Planned*

4    *Parenthood*, the Court should consider whether, given the claims and evidence in this case, the

5    instruction proposed by Altria would better explain the issues to the jury and prevent confusion and

6    prejudice.  Altria's proposed instructions on causation would do so.  The questions of causation

7    presented in this case are drastically different from, and far more complex, than those in *Planned*

8    *Parenthood*.

9    **PLAINTIFF'S POSITION:**

10    Plaintiff objects to this proposed instruction as legally incorrect and factually unsupported.

11    The instruction is factually unsupported. The injury to SFUSD is existing and ongoing,

12    caused by the entire RICO enterprise. Plaintiff is not seeking damages for a specific incident that

13    occurred before Altria's involvement. Rather, Plaintiff is seeking damages for a course of conduct,

14    by Altria and former defendants over several years, that resulted in damage to its business or

15    property.

16    This instruction is also legally incorrect. As discussed above, *Oki Semiconductor* does not

17    support the concept of breaking out damages by individual RICO violator, as this Court has

18    recognized. In that case, the Ninth Circuit held that "[i]f a RICO conspiracy is demonstrated, all

19    conspirators are liable for the acts of their co-conspirators." *Oki Semiconductor Co. v. Wells Fargo*

20    *Bank*, 298 F.3d 768, 775 (9th Cir. 2002). *See also In re JUUL*, 497 F. Supp. 3d at 623 n.44

21    ("Holding RICO conspirators jointly and severally liable for the acts of their co-conspirators

22    reflects the notion that the damage wrought by the conspiracy 'is not to be judged by dismembering

23    it and viewing its separate parts, but only by looking at it as a whole.'" (quoting *Oki Semiconductor*,

24    298 F.3d at 775). Further, the *McGowan* case was about whether acts that preceded a defendant's

25    involvement could establish a pattern of racketeering activity—it was not about damages.

26    *McGowan v. Weinstein*, 562 F. Supp. 3d 744, 755 (C.D. Cal. 2021).

27

28

**[Contested, Altria-Proposed] RICO – 18 U.S.C. § 1962(d) –
Conspiracy Damages Limited to Time of Altria's Membership**

**ALTRIA'S PROPOSAL:**

If you conclude that Plaintiff has proven that Altria violated section 1962(d) by conspiring with another person to violate RICO and proven further the requirements of section 1964(c), you will need to determine the harm caused by racketeering activity taking place during the time that Altria was part of the conspiracy.  Altria is not liable for damages caused by actions that took place before it joined or after it withdrew from the conspiracy.

**ALTRIA'S POSITION:**

Altria's proposed instruction is supported by ample case law that holds that a RICO "co-conspirator is only liable for the overt acts committed after he joined the unlawful agreement." *Mattel, Inc. v. MGA Ent., Inc.*, No. 04-CV-09049, 2010 WL 11463911, at *4 (C.D. Cal. Sept. 3, 2010); *see also, e.g.*, *Bryant v. Mattel, Inc.*, No. 04-CV-09049, 2010 WL 3705668, at *14 (C.D. Cal. Aug. 2, 2010).  As the Ninth Circuit has explained when addressing conspiracy liability, "a defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy." *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992); *see also, e.g.*, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-CV-02861, 2013 WL 2386635, at *6 (N.D. Cal. May 30, 2013) (similar); *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 524 (D. Conn. 2020) (similar).

Altria's proposed instruction is necessary here to ensure that the jury understands the limits upon RICO conspiracy liability and prevent the jury from imposing conspiracy liability for conduct that does not support that liability.  The proposed instruction is especially critical here given that Plaintiff does not allege that Altria joined the purported conspiracy when it was formed.  Plaintiff, for example, claims that the alleged conspiracy was formed and began to engage in racketeering activity that harmed Plaintiff long before Altria is alleged to have had any relationship with JLI.  In the absence of Altria's proposed instruction here, the jury is likely to think that Altria can be liable for racketeering activity undertaken before Altria joined any conspiracy.  That understanding is contrary to the case law set forth above.  Altria's proposed instruction is necessary to avoid such

1    outcomes.

2          The court in *Oki Semiconductor* did not conclude that a defendant would be liable for a

3    conspiracy's conduct from the time it was formed regardless of when that defendant joined the

4    conspiracy.  To the contrary, *Oki Semiconductor* addressed whether plaintiffs could amend to add

5    a § 1962(d) conspiracy claim and concluded in *dicta* that they could not there based on *respondeat*

6    *superior*.  298 F.3d at 776.   *Smith v. United States*, 568 U.S. 106, 107 (2013), is a criminal case,

7    but it supports the proposed instruction given its finding that withdrawal from the conspiracy cuts

8    off liability for conspiracy.

9    **PLAINTIFF'S POSITION:**

10          Plaintiff objects to this proposed instruction as legally incorrect and factually unsupported.

11   SFUSD's injury is current-existing and indivisible. There is no basis to divide the injury between

12   conduct before Altria joined the conspiracy and conduct after. If Altria wants to prove it did not

13   contribute to the injury at all, it may try to do so, but the existing instructions adequately instruct

14   on that point.

15          The cited Eleventh Circuit model instruction does not support this proposition. *Oki*

16   *Semiconductor* supports joint and several liability, not breaking out damages by time of

17   participation. *See In re JUUL*, 497 F. Supp. 3d at 623 n.44 ("Holding RICO conspirators jointly

18   and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought

19   by the conspiracy 'is not to be judged by dismembering it and viewing its separate parts, but only

20   by looking at it as a whole.'" (quoting *Oki Semiconductor*, 298 F.3d at 775). Further, "[u]pon

21   joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues

22   until he withdraws." *Smith v. United States*, 568 U.S. 106, 107 (2013). Each conspirator becomes

23   "responsible for the acts of his co-conspirators in pursuit of their common plot." *Id.* at 111. Thus,

24   each conspirator is liable for the whole conspiracy unless and until that person withdraws. There is

25   no evidence that Altria withdrew from the conspiracy.

26

27

28

**[Contested, Competing Proposals] Compensatory Damages**

**PLAINTIFF'S PROPOSAL:**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the Plaintiff on either its negligence or RICO claims, you must determine that Plaintiff's damages. For Plaintiff's nuisance claim, you will not make any determination on damages.

Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by Altria. It is for you to determine what damages, if any, have been proved. The Plaintiff does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, your award must be based on evidence and not on speculation, guesswork, or conjecture.

**ALTRIA'S PROPOSAL:**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. To find for the Plaintiff on its negligence claim, you must find that Altria's conduct led directly to the Plaintiff's harm.  To find for the Plaintiff on its RICO claim, you must find that Plaintiff was injured in its business or property by reason of racketeering activity that Altria conducted or participated in conducting or which was conducted by a conspiracy that Altria had knowingly agreed to join.

If you find for the Plaintiff on either its negligence or RICO claims, you must determine Plaintiff's damages. For the nuisance claim, you will not make any determination on damages. Instead, any remedy will be determined by the Court in a subsequent proceeding.

Plaintiff has the burden of proving damages. Damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by Altria. It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

1    The amount of damages must include an award for each category of harm that was caused
2    by Altria's wrongful conduct, even if the particular harm could not have been anticipated. The
3    Plaintiff does not have to prove the exact amount of damages that will provide reasonable
4    compensation for the harm. However, you must not speculate or guess in awarding damages. You
5    may award Plaintiff damages to reimburse it for expenses that were directly caused by Altria's acts.
6    Any damages based on money spent by the Plaintiff must have been for expenses that were
7    reasonably incurred, or will be reasonably incurred, in light of Altria's actions.

8    **PLAINTIFF'S POSITION:**

9    Plaintiff's proposed instruction reflects a combination of Ninth Cir. Model Civ. Instr. 5.1
10   and CACI 3900. There are two significant differences between the parties' proposed instruction.
11   First, Defendants' instruction states the RICO requirement of injury to business or property. It is
12   not necessary to repeat this requirement, as that issue is addressed in the RICO causation
13   instruction. Second, Altria argues for the following language: "To find for the Plaintiff on its
14   negligence claim, you must find that Altria's conduct led directly to the Plaintiff's harm." This does
15   not reflect the applicable causation language from the California pattern instructions; even if it did,
16   it would be redundant with those instructions.  This is a damages instruction, not a causation
17   instruction.

18   **ALTRIA'S POSITION:**

19   While the parties' proposed instructions are very similar, Altria's instruction includes
20   important additional language that reminds the jury that it must make a liability finding specific to
21   Altria and cannot make a general finding as to negligence for the purpose of awarding damages.
22   *See Miller Family Tr. v. Nielsen*, 2012 WL 13227085, at *4 (C.D. Cal. July 31, 2012) ("Defendants'
23   liability must be predicated upon their own conduct."); *Shanghai Automation Instrument Co. v.*
24   *Kuei*, 194 F. Supp. 2d 995, 1009 (N.D. Cal. 2001) (individual defendant's liability turns on their
25   own conduct and involvement in various alleged schemes).  Without this language, the damages
26   instruction as proposed by Plaintiff runs the risk that the jury may award damages based on
27   generalized negligence rather than individualized findings. Further, the Plaintiff must show RICO
28   causation directly related to the alleged pattern of RICO activity in order to recover damages.

Removing Altria's proposed additional language risks the jury awarding damages based on claims of injury alone.

1

### No Punitive Damages[48]

2          You must not include in your award any damages to punish or make an example of Altria.

3   Such damages would be punitive damages, and they cannot be a part of your verdict. You must

4   award only the damages that fairly compensate SFUSD for its loss.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[48] CACI 3924

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Attorney Argument Not Evidence**[49]

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

---

[49] CACI 3925

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Damages – Mitigation[50]**

Plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. If you decide that Altria caused SFUSD harm, Plaintiff is not entitled to recover damages for harm that Altria proves by a preponderance of the evidence Plaintiff could have avoided with reasonable efforts or expenditures.

---

[50] Ninth Cir. Model Civ. Instr. 5.3

1

**[Contested, Altria-Proposed] Mitigation – Reasonable Effort**

2    **ALTRIA'S PROPOSAL:**

3        When considering whether SFUSD mitigated its damages, you should consider the

4    reasonableness of SFUSD's efforts in light of the circumstances facing the school district at the

5    time, including its ability to make the efforts or expenditures without undue risk or hardship and its

6    efforts to obtain alternate, available sources of funding or other resources.

7    **ALTRIA'S POSITION:**

8        Altria's proposed instruction is an accurate statement of the law. The instruction is a

9    modified version of CACI 3931 that simplifies the model instruction and adapts it to the facts of

10   this case. Altria will demonstrate that the Plaintiff failed to mitigate its damages. The jury must be

11   instructed that they should consider the complete context of SFUSD when determining whether

12   SFUSD mitigated its damages.

13   **PLAINTIFF'S POSITION:**

14       Plaintiff objects to this instruction as unnecessary. The pattern mitigation instruction

15   captures the necessary elements of mitigation. Altria iss welcome to argue that the Plaintiff should

16   have done more to mitigate its damages, but should not be permitted to create a jury instruction to

17   set up the factual foundation for its argument.

18       Alternatively, if the Court believes such an instruction is necessary, then it should give the

19   actual CACI 3931, with its neutral language. It should not add specifics that reference Altria's

20   factual argument about the circumstances at the school district.

21

22

23

24

25

26

27

28

**[Contested, Competing Proposals] Punitive Damages – Entitlement**

**PLAINTIFF'S PROPOSAL:**

If you decide that Altria was negligent, you must decide whether that conduct justifies an award of punitive damages.

You may award punitive damages against Altria if Plaintiff proves that Altria acted with malice, oppression, or fraud. To do this, Plaintiff must prove one of the following by clear and convincing evidence:

1.     That the conduct constituting malice, oppression, or fraud was conducted by one or more of Altria's officers, directors, or managing agents, who acted on behalf of the entity Defendant; or

2.     That the conduct constituting malice, oppression, or fraud was authorized by one or more of Altria's officers, directors, or managing agents; or

3.     That one or more of Altria's officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Altria acted with intent to cause injury or that Altria's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. "Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his conduct and deliberately fails to avoid those consequences.

"Oppression" means that Altria's conduct was despicable and subjected the Plaintiff to cruel and unjust hardship in knowing disregard of its rights.

"Fraud" means that Altria intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiff.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

**ALTRIA'S PROPOSAL:**

If you find for Plaintiff on its negligence claim you must decide whether that conduct justifies an award of punitive damages against Altria. You may award punitive damages against Altria only if you find by clear and convincing evidence that Altria's conduct that harmed the Plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the Plaintiff's safety or rights, or if Altria acts in the face of a perceived risk that its actions will violate the plaintiff's rights under state or federal law. An act or omission is oppressive if it injures or damages or otherwise violates the rights of the Plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the Plaintiff.

**PLAINTIFF'S POSITION:**

Plaintiff's proposed instruction is the entitlement portion of CACI 3945 (the instruction applicable to entity defendants). The pattern instruction is more complete than Altria's instruction because it includes fraud, which is a basis for punitive damages under California law. *See* CACI 3947. The pattern instruction also helps the jury to understand how to navigate the punitive damages issue in a case that involves corporate defendants. Finally, Altria's reliance on a federal pattern instruction does not make sense when the claim creating the possibility of punitive damages is a state-law claim.

**ALTRIA'S POSITION:**

Altria's proposed instruction is closely modeled after the Ninth Circuit Model Jury Instructions 5.5 and is consistent with California law. Altria's proposed instruction requires that Plaintiff prove Altria's conduct is "malicious, oppressive or in reckless disregard of Plaintiff's rights" in order to grant punitive damages. *See Pastora v. Cnty. of San Bernardino*, 2021 WL 8743941, at *7 (C.D. Cal. Dec. 22, 2021) (striking claim for punitive damages based on lack of facts that Defendants' conduct was "malicious, oppressive or in reckless disregard of Plaintiff's rights.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Competing Proposals] Punitive Damages – Amount**

**PLAINTIFF'S PROPOSAL:**

If you decided that punitive damages are warranted, you must decide the amount, if any, that you should award the Plaintiff in punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors separately in determining the amount:

(a)  How reprehensible was Altria's conduct? In deciding how reprehensible Altria's conduct was, you may consider, among other factors:

　　1.　Whether the conduct caused physical harm;

　　2.　Whether Altria disregarded the health or safety of others;

　　3.　Whether Plaintiff was financially weak or vulnerable and Altria knew Plaintiff was financially weak or vulnerable and took advantage of it;

　　4.　Whether Altria's conduct involved a pattern or practice; and

　　5.　Whether Altria acted with trickery or deceit.

(b)  Is there a reasonable relationship between the amount of punitive damages and Plaintiff's harm?

(c)  In view of Altria's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.

Punitive damages may not be used to punish Altria for the impact of its alleged misconduct on persons other than Plaintiff.

**ALTRIA'S PROPOSAL:**

If you decided that punitive damages are warranted, you must decide the amount, if any, that you should award the Plaintiff in punitive damages from Altria.  There is no fixed formula for

1    determining the amount of punitive damages, and you are not required to award any punitive

2    damages. If you find that punitive damages are appropriate, you must use reason in setting the

3    amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but

4    should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any

5    punitive damages, consider the degree of reprehensibility of Altria's conduct, including whether

6    the conduct that harmed the Plaintiff was particularly reprehensible because it also caused actual

7    harm or posed a substantial risk of harm to people who are not parties to this case.  You may not,

8    however, set the amount of any punitive damages in order to punish Altria for harm to anyone other

9    than the plaintiff in this case.

10    In addition, you may consider the relationship of any award of punitive damages to any

11    actual harm inflicted on the Plaintiff.

12    **PLAINTIFF'S POSITION:**

13    Plaintiff's proposal is the amount portion of CACI 3945 (punitive damages for an entity

14    defendant). This Court should give the pattern instruction, not Altria's manufactured instruction.

15    The pattern instruction is also more helpful to the jury, in that it lays out specific factors that the

16    jury should consider in awarding punitive damages. Further, punitive damages are determined

17    under state law, where the underlying claim is a state-law claim. *See, e.g.*, *Browning-Ferris Indus.*

18    *of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). Thus, the Court should give the

19    California pattern instruction, rather than blending in concepts from an inapplicable federal

20    instruction.

21    **ALTRIA'S POSITION:**

22    Altria's proposed instruction includes language directly from both CACI 3942 and Ninth

23    Circuit Model Civil Instruction 5.5. By including language from both pattern instructions, Altria's

24    proposal best informs the jury of how they may determine a punitive damages award while

25    mitigating certain risks that are not accounted for if either pattern instruction were to be used

26    individually. For example, CACI 3942 does not warn the jury away from allowing "bias, prejudice,

27    or sympathy" to impact their award. Further, the Ninth Circuit Model Civil Instruction 5.5 does not

28    inform the jury that they "may impose punitive damages against one or more defendants and not

others and may award different amounts against different defendants." By combining these instructions, Altria proposes language that fairly and comprehensively instructs the jury.

**[Contested, Altria-Proposed] Altria's Financial Condition**

**ALTRIA'S PROPOSAL:**

In determining the amount of punitive damages, if any, you may not increase the punitive award above an amount that is otherwise appropriate merely because of Altria's wealth, size, or financial condition.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of California law that is important to ensure the jury understands the bounds of punitive damages. CACI 3942 (modified) ("You may not increase the punitive award above an amount that is otherwise appropriate merely because [name of defendant] has substantial financial resources."). This instruction is also supported by federal authority on punitive damages and necessary to avoid prejudice to Altria. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003) ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 591 (1996) (Breyer, J., concurring) (financial evidence "provides an open-ended basis for inflating awards when the defendant is wealthy"); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 777 (9th Cir. 2005) ("'The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award,' and 'cannot make up for the failure of other factors, such as "reprehensibility," to constrain significantly an award that purports to punish a defendant's conduct.'") (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003)). Altria's proposal to include this language is warranted here to mitigate the risk that a punitive damages award is unconstitutionally "influenced by prejudice against large corporations." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993). Moreover, this risk "is of special concern when the defendant is a nonresident"—as Altria is in this action. *Id.*

**PLAINTIFF'S POSITION:**

Plaintiff objects to the instruction as duplicative, as this information is directly communicated in the prior instruction. Plaintiff's proposed instruction states: "You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources." *See* CACI 3942.

**[Contested, Altria-Proposed] Limits (Punishment for Harm to Others)**

**ALTRIA'S PROPOSAL:**

In determining the amount of punitive damages, if any, you may not seek to punish Altria for any harm suffered by any individuals other than Plaintiff.

**ALTRIA'S POSITION:**

Altria's proposed instruction accurately reflects federal law that Altria may not be punished for harm suffered by non-parties and the jury should not take into account harm to others in setting the amount of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties");; *id.* at 423 ("Due process does not permit courts . . . to adjudicate the merits of other parties' hypothetical [punitive damage] claims against a defendant . . . ."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991); *White v. Ford Motor Co.*, 500 F.3d 963, 971-73 (9th Cir. 2007); *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir. 1993); *see also Roundup/Hardeman* Phase 2 Instructions, 3:16-md-02741, ECF 3212 (N.D. Cal. 3/27/2019) ("Punitive damages may not be used to punish Defendants for the impact of their alleged misconduct on persons other than Plaintiff."); June 21, 2018 Trial Tr. at 2838-39, *M Cohen v. R.J. Reynolds Tobacco Co.*, No. 14-18677 CA 23 (Fla. 11th Cir. Ct.); June 20, 2016 Trial Tr. at 2181-82, *Mooney v. R.J. Reynolds Tobacco Co.*, No. 11-40815 CA 01 (23) (Fla. 11th Cir. Ct.); July 8, 2010 Trial Tr. at 2323-24, *Tate v. Philip Morris USA Inc.*, No. 2007-CV-021723 (Fla. 17th Cir. Ct.) (giving substantially similar instruction); Mar. 23, 2010 Trial Tr. at 3120, *Cohen v. R.J. Reynolds Tobacco Co.*, No. 2007-CV 11515 (Fla. 17th Cir. Ct.) (same) (collectively attached as Altria Ex. A).

**PLAINTIFF'S POSITION:**

The Court should not give this instruction, as it is duplicative. In the instruction on the amount of damages, Plaintiff has included language informing the jury that they cannot punish Altria for harm inflicted on non-parties. It is unnecessary to repeat that information in a separate instruction. Specifically, Plaintiff's proposal include this language: "Punitive damages may not be

1   used to punish Altria for the impact of his or its alleged misconduct on persons other than Plaintiff."

2   CACI 3942.

3          Altria's proposal is also confusing because it omits the information that the jury may

4   consider harm to others in determining the reprehensibility of Altria's conduct. *Philip Morris USA*

5   *v. Williams*, 549 U.S. at 346, 353-55 (2007).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Contested, Altria-Proposed] Punishment Only for Conduct That Harmed Plaintiff**

**ALTRIA'S PROPOSAL:**

In determining the amount of punitive damages against Altria, if any, you may punish Altria only for Altria's own conduct as shown by clear and convincing evidence to have harmed Plaintiff.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of law that is necessary to prevent prejudice to Altria. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of the other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis, but we have no doubt the Utah Supreme Court did that here."); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"); *see also, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991); *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir. 1993); *see also* Oct. 17, 2018, Trial Tr. at 1832-1836, *In re: Engle Progeny Cases Tobacco Litig. (McFall Ridley)*, No. 50 2011 CA 005250 MB (Fla. 15th Cir. Ct.); Nov. 21, 2017 Trial Tr. at 2826-29, *In re: Engle Progeny Cases Tobacco Litig. (Adamson)*, No. 50 2016 CA 008532 MB (Fla. 15th Cir. Ct.) (giving similar instruction); Feb. 13, 2018 Trial. Tr. at 1764, *In re: Engle Progeny Cases Tobacco Litig. (Hardin)*, No. 12-29000-CA (31) (Fla. 11th Cir. Ct.); Feb. 20, 2014 Trial Tr. at 2842-44, *In re: Engle Progeny Cases Tobacco Litig. (Wendel)*, No. 10-54813-CA-15 (collectively attached as Altria Ex. A).

**PLAINTIFF'S POSITION:**

This proposed instruction is duplicative. The pattern instruction for determining the amount of punitive damages makes clear that punitive damages are to be considered with reference to Altria's conduct specifically. Plaintiff's proposed instruction on the amount of punitive damages directs the jury not to award damages based on harm to anyone other than the Plaintiff, based on *Williams*.

Thus, the jury already has been instructed to award punitive damages based on Altria's actions and only based on harm to this Plaintiff. An additional instruction saying those same things is unnecessary and likely would confuse the jury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[Contested, Altria-Proposed] Greater Award Than Necessary**

**ALTRIA'S PROPOSAL:**

If you decide to impose some amount of punitive damages against Altria, the award should be no greater than the amount that you find necessary to punish Altria for the conduct by Altria giving rise to this Plaintiff's cause of action and to deter Altria from engaging in such unlawful conduct in the future.

**ALTRIA'S POSITION:**

Altria's proposed instruction is an accurate statement of law that is necessary to prevent prejudice to Altria. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("While we do not suggest there was error in awarding punitive damages based upon State Farm's conduct toward the Campbells, a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives, and the Utah court should have gone no further."); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991) (approving standards that allow determination of "whether a particular award is greater than reasonably necessary to punish and deter").

**PLAINTIFF'S POSITION:**

Plaintiff objects to this instruction because it is duplicative. The pattern instruction on the amount of punitive damages explains the jury's role, stating: "You must now decide the amount, if any, that you should award the Plaintiff in punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future." CACI 3942. The instruction then tells the jury the factors they should consider in making this determination. *Id.*

The cases cited by Altria discuss standards to be applied by a court in reviewing an award, not information to be given to a jury. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (holding that court went too far in punishing conduct that impacted other states); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991) (approving Alabama's standards for assessing punitive damages awards). Altria offers no support for instructing the jury in this manner.

**[Contested, Altria-Proposed] Compliance with Federal or State Law**

**ALTRIA'S PROPOSAL:**

In determining the amount of punitive damages, if any, you may not seek to punish Altria for any conduct that complied with federal or state law, was authorized by federal or state law, or was otherwise lawful where it occurred.

**ALTRIA'S POSITION:**

Altria's proposed instruction accurately states the law.   The Supreme Court has held that a "State cannot punish a defendant for conduct that may have been lawful where it occurred . . . . A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003); *see also id.* at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of the other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis, but we have no doubt the Utah Supreme Court did that here."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572-73 (1996) ("[N]either the jury nor the trial court was presented with evidence that any of BMW's out-of-state conduct was unlawful."); *see also* Nov. 1, 2016 Trial Tr. at 2174-75, *Ledo v. R.J. Reynolds Tobacco Co.*, No. 08-00113-CA-31 (Fla. 11 Cir. Ct.) ("The warning labels placed on cigarette packs and advertisements by RJ Reynolds and other tobacco companies complied with federal law, and after July 1, 1969, RJ Reynolds had no obligation to place additional warnings on their cigarette packages and advertisements. As long as the cigarette packs bear the federally mandated warnings, cigarette advertising after July 1, 1969, cannot be the subject of any claim that the advertising undermined or neutralized the warnings or made them less effective.") (Altria Ex. A).

**PLAINTIFF'S POSITION:**

Plaintiff objects to this instruction as overly confusing because it adds nothing. The instruction essentially says that the jury cannot punish Altria for lawful conduct. The jury has already been told, in prior instructions, that it may only punish Altria for conduct that supported an award of compensatory damages—i.e., unlawful conduct. Therefore, the proposed instruction is

1    unnecessary and confusing. The pattern instruction gives the jury all of the information that it needs

2    to determine the amount of punitive damages under California law. *See* CACI 3942. Further, the

3    comment in *State Farm* that a jury may not punish conduct that is lawful in another state is

4    inapplicable here. *See State Farm*, 538 U.S. at 422. The test for negligence is essentially the same

5    in every jurisdiction. *See, e.g.*, Restatement (2nd) Torts § 282 (defining negligence). Thus, if the

6    jury finds that Altria was negligent, then it is inherently determining that the conduct was unlawful,

7    wherever it may have occurred.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[Contested, Altria-Proposed] Conduct By Anyone Other Than Altria**

2    **ALTRIA'S PROPOSAL:**

3        In determining the amount of punitive damages, if any, to be awarded against Altria you

4    may not consider conduct committed by anyone other than Altria.

5    **ALTRIA'S POSITION:**

6        This instruction accurately states the law. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v.*

7    *Campbell*, 538 U.S. 408, 423 (2003); *see also* Mar. 23, 2010 Trial Tr. at 3120, *Cohen v. R.J.*

8    *Reynolds Tobacco Co.*, (Fla. 17th Cir. Ct.); Final Jury Instr. at 7, *Mooney v. R.J. Reynolds Tobacco*

9    *Co.*, (Fla. 11th Cir. Ct.) (collectively attached as Altria Ex. A).

10   **PLAINTIFF'S POSITION:**

11       This instruction is duplicative and unnecessary. Plaintiff's proposed pattern instructions on

12   entitlement to punitive damages and amount of punitive damages give the jury all of the necessary

13   information. *See* CACI 3942.

14       Altria's citation to *State Farm* does not support the stated proposition. *State Farm* was

15   addressing the point that the defendant could only be punished for conduct directed toward that

16   plaintiff. *State Farm*, 538 U.S. at 423. The cited page does not address the issue of punishing one

17   defendant for the conduct of another. Altria's other citations are to Florida law and inapplicable

18   here. The pattern instruction directs the jury to consider Altria's conduct. No further instruction is

19   necessary.

20

21

22

23

24

25

26

27

28

1          **[Contested, Altria-Proposed] Reasonable Relationship**

2     **ALTRIA'S PROPOSAL:**

3          There must be a reasonable relationship between any amount of punitive damages you

4     award and the amount of compensatory damages you have awarded.

5     **ALTRIA'S POSITION:**

6          This instruction accurately states the law. *See, e.g.*, *BMW of North America v. Gore*, 517

7     U.S. 559, 580-83 (1996) ("The principle that exemplary damages must bear a 'reasonable

8     relationship' to compensatory damages has a long pedigree. . . . Our [prior decisions] endorsed the

9     proposition that a comparison between the compensatory award and the punitive award is

10    significant."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *Exxon*

11    *Shipping Co. v. Baker*, 554 U.S. 471, 503 (2008); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509

12    U.S. 443, 459 (1993); *Pac. Mut. Life Ins. Co. v. Haslip*, 449 U.S. 1, 21 (1991); *see also, e.g.*, May

13    30, 2012 Trial Tr. at 9050-51, *In Re Engle Progeny Cases Tobacco Litig. (Calloway)*, No. 08-

14    021770 (Fla. 17th Cir. Ct.) (giving substantially similar instruction); Mar. 23, 2015 Trial Tr. at

15    4287, *In Re: Engle Progeny Cases Tobacco Litig. (Pollari)*, No. 14-001563 CA 19 (Fla. 17th Cir.

16    Ct.) (same); Sept. 30, 2013 Trial Tr. at 2596, *Crawford v. R.J. Reynolds Tobacco Co.*, No. 11-14352

17    CA 20 (Fla. 11th Cir. Ct.) (same); Aug. 29, 2014 Trial Tr. at 4826-27, *Hubbird v. R.J. Reynolds*

18    *Tobacco Co.*, No. 12-18904 CA 42 (Fla. 11th. Cir. Ct.) (same); Apr. 21, 2015 Trial Tr. at 2627, *In*

19    *Re: Engle Progeny Cases Tobacco Litig. (Ryan)*, No. 08-022579 (19) (Fla. 17th Cir. Ct.) (same)

20    (collectively attached as Altria Ex. A). This instruction also is permissible in this Circuit. *See, e.g.*,

21    *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) ("[S]tates are certainly free to

22    incorporate the reasonable relationship concept into jury instructions, . . . it is also constitutionally

23    permissible for a district court to delay the reasonable relationship inquiry until the judge's post-

24    verdict review."). The instruction is appropriate here because it would give the jury guidance

25    concerning the amount of any punitive damages award.

26    **PLAINTIFF'S POSITION:**

27          This instruction should not be given. Altria's proposal is a rule of law applied by the Court

28    on review of a punitive damages award, not a fact issue to be given to the jury. *See, e.g.*, *State*

1   *Farm*, 538 U.S. at 426 ("In sum, courts must ensure that the measure of punishment is both

2   reasonable and proportionate to the amount of harm to the plaintiff and to the general damages

3   recovered.").

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **[Contested, Altria-Proposed] Mitigating Evidence**

2    **ALTRIA'S PROPOSAL:**

3        In determining the amount of punitive damages, if any, you should take into consideration

4    any mitigating evidence. Mitigating evidence is evidence that may demonstrate that there is no need

5    for punitive damages or that a reduced amount of punitive damages should be imposed against

6    Altria.

7    **ALTRIA'S POSITION:**

8        This instruction accurately states the law. *See, e.g.*, *TXO v. Alliance Res. Corp.*, 509 U.S.

9    443, 464 (1993) (mitigating circumstances should be considered in determining whether to award

10   punitive damages); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 974 (9th Cir. 2021) (taking into

11   account "mitigating considerations" in reviewing punitive damages award); *Lance Prods., Inc. v.*

12   *Com. Union Bank*, 764 S.W.2d 207, 214 (Tenn. Ct. App. 1988) (punitive damages award

13   considered mitigating evidence); *see also* Sept. 24, 2018 Trial Tr. at 2711, *Chadwell v. Philip*

14   *Morris USA Inc.*, No. 10-17931 CA 59 (Fla. 11th Cir. Ct.) (giving similar instruction); July 18,

15   2016 Trial Tr. at 4774-75, *In Re: Engle Progeny Cases Tobacco Litig. (Varner)*, No. 08-026345

16   (Fla. 17th Cir. Ct.) (same); Apr. 19, 2016 Trial Tr. at 2851, *In Re: Engle Progeny Cases Tobacco*

17   *Litig. (V Turner)*, No. 2008-CV-019616 (19) (Fla. 17th Cir. Ct.) (same); Mar. 1, 2016 Trial Tr. at

18   3551, *In Re: Engle Progeny Cases Tobacco Litig. (McCall)*, No. 2007-CV-36888 (19) (Fla. 17th

19   Cir. Ct.) (same) (collectively attached as Altria Ex. A). The instruction is appropriate here because

20   it would give the jury guidance concerning the amount of any punitive damages award and the

21   appropriate basis for such an award.

22   **PLAINTIFF'S POSITION:**

23       Plaintiff objects to this instruction as confusing and unnecessary in light of previous

24   instructions. The California pattern instruction gives specific information as to what the jury should

25   consider when awarding punitive damages. CACI 3942.

26       The first case cited by Altria does nothing more than recite a jury instruction in a footnote

27   that happened to mention mitigation. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 463 n.29

28   (1993). The case arose under West Virginia law. *Id.* at 447. The cited Ninth Circuit decision merely

1   considered mitigating circumstances in evaluating a district court's punitive award. *Hardeman v.*

2   *Monsanto Co.*, 997 F.3d 941, 974 (9th Cir. 2021). Nothing in *Hardeman* suggests that the jury

3   should be instructed on mitigation. Altria's remaining cases are all Florida cases that have no

4   applicability here.

5     This Court should apply the California pattern instruction.

1    **[Contested, Altria-Proposed] Mitigating Evidence – RICO treble damages**

2    **ALTRIA'S PROPOSAL:**

3        In determining the amount of punitive damages, if any, one mitigating factor you should

4    consider is that the RICO award of damages against Altria will be automatically trebled pursuant

5    to the RICO statute.  This means that Plaintiff would be awarded three times the amount of any

6    damages you award under RICO even without an award of punitive damages.

7    **ALTRIA'S POSITION:**

8        Altria's proposed instruction  does not instruct the jury that punitive damages are

9    unavailable because of an award of treble damages (although Altria preserves its arguments on this

10   point[51]).  Instead, the proposed instruction would inform the jury that Altria already must pay triple

11   the amount of compensatory damages awarded under RICO to the Plaintiff before the jury decides

12   the amount of any punitive damages.  This instruction is consistent with and supported by RICO

13   case law and authority governing punitive damages, and is necessary to ensure that the jury does

14   not award punitive damages in an amount exceeding legal and constitutional limits.

15       "Treble damages under RICO are primarily punitive in nature."  *Davis v. Standefor*, 2009

16   WL 10672743, at *1 (C.D. Cal. 2009); *see also, e.g.*, *Southwest v. Triple A Machine Shop, Inc.*,

17   720 F. Supp. 805, 810 (N.D. Cal. 1989) ("The civil remedy provision of RICO, 18 U.S.C. § 1964,

18   provides for treble damages which are themselves punitive in character."); *Rose v. Abraham*, 2012

19   WL 78204, at *7 (E.D. Cal. 2012) ("[T]he treble damages under RICO are both remedial and

20   punitive in nature . . . .").  Accordingly, if the jury finds in favor of Plaintiff on the RICO claims,

21   the trebled damages awarded under that statute would already serve, in whole or in part, the purpose

22   of punitive damages.  The jury should be informed of that before it determines the amount, if any,

23   of additional punitive damages that might be appropriate.  Indeed, without this instruction, there is

24   a significant risk that the jury's award would punish Altria twice for the exact same conduct and

25   thereby be excessive and improper.  *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22

---

26   [51] In particular, Altria preserves its argument that Plaintiff should not be permitted to recover both
27   treble damages and punitive damages for the same conduct.  Given the Court's prior ruling on this
     subject in *Planned Parenthood*, 480 F. Supp. 3d 1000 (N.D. Cal. 2020), and the Ninth Circuit's
28   statements in *Neibel v. Trans World Assur. Co.*, 108 F.3d 1123 (9th Cir. 1997), Altria submits this
     instruction in the event the Courts reject that position.

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 19-MD-02913-WHO

1   (1991) (punitive damages should not be "greater than reasonably necessary to punish and deter");

2   *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("While we do not suggest

3   there was error in awarding punitive damages based upon State Farm's conduct toward the

4   Campbells, a more modest punishment for this reprehensible conduct could have satisfied the

5   State's legitimate objectives, and the Utah court should have gone no further.").  Moreover, such

6   an award would be improper because it would not "bear a 'reasonable relationship' to compensatory

7   damages." *BMW of North America v. Gore*, 517 U.S. 559, 580-83 (1996) (citation omitted); *see

8   also, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *Exxon Shipping

9   Co. v. Baker*, 554 U.S. 471, 503 (2008); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443,

10  459 (1993); *Pac. Mut. Life Ins. Co. v. Haslip*, 449 U.S. 1, 21 (1991).

11  **PLAINTIFF'S POSITION:**

12          Plaintiff objects to this instruction as unsupported by law. Altria does not cite a single case

13  instructing the jury to considering RICO treble damages are part of it determination of punitive

14  damages on a state-law claim. Under RICO, the jury has nothing to do with trebling of damages;

15  that is a matter for the Court. *See, e.g.*, *Allstate Ins. Co. v. Nassiri*, No. 08-369, 2013 WL 3716444,

16  at *1 (D. Nev. July 15, 2013) (jury awarded compensatory damages, then court determined

17  trebling). If treble damages are relevant to the Court's due process proportionality analysis, then

18  Altria can make this argument at the appropriate time.

19

20

21

22

23

24

25

26

27

28

1

**Duty to Deliberate**[52]

2  Before you begin your deliberations, elect one member of the jury as your presiding juror.

3  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in

4  court.

5  You shall diligently strive to reach agreement with all of the other jurors if you can do so.

6  Your verdict must be unanimous.

7  Each of you must decide the case for yourself, but you should do so only after you have

8  considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9  It is important that you attempt to reach a unanimous verdict but, of course, only if each of

10  you can do so after having made your own conscientious decision. Do not be unwilling to change

11  your opinion if the discussion persuades you that you should. But do not come to a decision simply

12  because other jurors think it is right, or change an honest belief about the weight and effect of the

13  evidence simply to reach a verdict.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[52] Ninth Cir. Model Civil Instr. 3.1

### Consideration of Evidence – Conduct of the Jury[53]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. You must disable "push notifications" from any news, media, or social media source on your phone. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside

---

[53] Ninth Cir. Model Civil Instr. 3.2 (modified)

the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

1

**Communication with the Court**[54]

2        If it becomes necessary during your deliberations to communicate with me, you may send

3   a note through the clerk, signed by any one or more members of the jury. No member of the jury

4   should ever attempt to communicate with me except by a signed writing. I will not communicate

5   with any member of the jury on anything concerning the case except in writing, or here in open

6   court. If you send out a question, I will consult with the lawyers before answering it, which may

7   take some time. You may continue your deliberations while waiting for the answer to any question.

8   Remember that you are not to tell anyone—including the court—how the jury stands, whether in

9   terms of vote count or otherwise, until after you have reached a unanimous verdict or have been

10  discharged. Do not disclose any vote count in any note to the court.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[54] Ninth Cir. Model Civil Instr. 3.3

- 251 -

**Return of Verdict**[55]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[55] Ninth Cir. Model Civil Instr. 3.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN-TRIAL INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Video Deposition**[56]

You will now be shown the video-recorded testimony of [witness] taken [date of deposition]. It will be obvious to you that the video has been edited. Edits were made both to shorten the video and to comply with my earlier out-of-court rulings on specific objections or issues raised during the testimony. You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[56] Ninth Cir. Model Civil Instr. 2.4 (modified)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Video Corporate Representative Deposition**

You will now be shown the video-recorded testimony of [Defendant] through its designated corporate representative, [name of witness], taken [date of deposition]. The testimony is given through a corporate representative and should be considered by you as testimony of [Defendant corporation] itself. It will be obvious to you that the video has been edited. Edits were made both to shorten the video and to comply with my earlier out-of-court rulings on specific objections or issues raised during the testimony. You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

1

2

3

4

5

6

**Use of Interrogatories**[57]

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[57] Ninth Cir. Model Civil Instr. 2.11

1

**Expert Work on Multiple Cases**

2          You have heard an expert or experts testify as to the amount of money they have been paid

3    for their work in this litigation. It is important for you to know that this trial is part of a larger Multi

4    District Litigation (MDL) proceeding. An MDL involves a number of similar cases filed in different

5    parts of the country. All of the similar cases are consolidated and transferred to one court and one

6    judge for handling. These cases were consolidated for purposes of the MDL for reasons of

7    efficiency only because they share certain facts in common, including some common expert

8    witnesses.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ALTRIA EXHIBIT A

Page 9041

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

COMPLEX CIVIL DIVISION
Case No. 08-80000 (21)
JUDGE JOHN J. MURPHY, III

IN RE:  ENGLE PROGENY CASES
TOBACCO LITIGATION

Pertains to:  Marvine Calloway
Case No. 08-021770

TRANSCRIPT OF PROCEEDINGS
JURY TRIAL
VOLUME 67
PAGES 9041 - 9115

DATE TAKEN:      May 30, 2012
TIME:            4:26 p.m. - 5:40 p.m.
PLACE:           Broward County Courthouse
                 201 S.E. 6th Street
                 Fort Lauderdale, Florida 33301
BEFORE:          JOHN J. MURPHY, III, Circuit Judge

        This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:
        Tanya Ward English, RPR-CRR-CCP-CBC-FPR
             United Reporting, Inc.
             1218 S.E. 3rd Avenue
           Fort Lauderdale, Florida 33316
                954-525-2221

Page 9042

APPEARANCES:
APPEARING ON BEHALF OF THE PLAINTIFF:
SCHLESINGER LAW OFFICES, P.A.
By:  SCOTT P. SCHLESINGER, ESQ.
     JONATHAN R. GDANSKI, ESQ.
     STEVEN J. HAMMER, ESQ.
     BRITTANY CHAMBERS, ESQ.
1212 Southeast 3rd Avenue
Fort Lauderdale, Florida  33316
and
BURKE & BAUERMEISTER, P.L.L.C.
By:  DON C. BAUERMEISTER, ESQ.
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501

APPEARING ON BEHALF OF THE DEFENDANT R.J. REYNOLDS
TOBACCO COMPANY:

CARLTON FIELDS, P.A.
By:  BENJAMINE REID, ESQ.
     CRISTINA ALONSO, ESQ.
     OLGA M. VIEIRA, ESQ.
     AMY L. HURWITZ, ESQ.
100 Southeast 2nd Street, Suite 4200
Miami, Florida 33131

APPEARING ON BEHALF OF THE DEFENDANT PHILIP MORRIS
USA, INC.:

BECK, REDDEN & SECREST, LLP
By:  KATHLEEN A. GALLAGHER, ESQ.
1221 McKinney Street, Suite 4500
Houston, Texas 77010
and
ARNOLD & PORTER, LLP
By:  M. SEAN LAANE, ESQ.
555 Twelfth Street, NW
Washington, D.C. 20004-1206

Page 9043

APPEARANCES (cont'd):
APPEARING ON BEHALF OF THE DEFENDANTS LIGGETT GROUP,
LLC, AND VECTOR LTD., INC.:

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
By:  ANN M. ST. PETER-GRIFFITH, ESQ.
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131

APPEARING ON BEHALF OF THE DEFENDANT LORILLARD TOBACCO
CO.:
GREENBERG TRAURIG, LLP
By:  ELIOT PEDROSA, ESQ.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
and
HUGHES HUBBARD
By:  ROBB W. PATRYK, ESQ.
One Battery Park Plaza
New York, New York 10004-1482

Page 9044

INDEX - VOLUME 67
PROCEEDINGS                                PAGE
Phase III Jury Instructions          9047
Closing Argument by Mr. Hammer            9052
Motion for Mistrial                  9075
Closing Argument by Mr. Reid              9077

Page 9049

1  about which the witness testified, the ability
2  of the witness to remember the matters about
3  which the witness testified, and the
4  reasonableness of the testimony of the witness,
5  considered in the light of all the evidence in
6  the case and in light of your own experience
7  and common sense.
8       You may also consider harms suffered by
9  other persons not parties to this lawsuit in
10 assessing the reprehensibility or wrongfulness
11 of defendants' acts, but you may not impose
12 punitive damages to punish defendants for harms
13 caused to others.
14      If you determine that punitive damages
15 should be awarded, the amount of damages must
16 be based only on harm suffered by Mr. Calloway,
17 Mrs. Calloway, or Ms. Williams.
18      You are to decide the amount of punitive
19 damages, if any, to be assessed as punishment
20 and as a deterrent to others.  This amount
21 would be in addition to the compensatory
22 damages you have previously awarded.
23      In making this determination, you should
24 consider the following:  1, the nature, extent
25 and degree of misconduct and related

Page 9050

1  circumstances; 2, each defendant's financial
2  resources; and 3, whether there is a continuing
3  need for deterrence in light of any changes in
4  the conduct of the defendant from the conduct
5  on which you based your determination that
6  punitive damages were warranted.
7       However, you may not award an amount that
8  would financially destroy any defendant.
9       You may in your discretion decline to
10 assess punitive damages.  You may assess
11 punitive damages against one defendant and not
12 the others, or against more than one defendant.
13 Punitive damages maybe assessed against
14 different defendants in different amounts.
15      You should impose punitive damages only
16 if you conclude that monetary liability beyond
17 your award of compensatory damages is necessary
18 to accomplish punishment and deterrence.
19      In determining the amount of punitive
20 damages, if any, you may only punish a
21 defendant for conduct to the extent it produced
22 harms or had an effect within the state of
23 Florida.  There must be some reasonable
24 relationship between any amount of punitive
25 damages you award and the amount of

Page 9051

1  compensatory damages you have awarded to the
2  plaintiff.
3       The fact that defendants are corporations
4  must not prejudice you in your deliberations or
5  in your verdict.  You may not discriminate
6  between corporations and natural individuals.
7  Both are persons in the eyes of the law, and
8  both are entitled to the same fair and
9  impartial consideration by the same legal
10 standard.
11      You may not allow your decision regarding
12 the amount of punitive damages to be affected
13 by the fact that defendant's principle
14 corporate office is outside the state of
15 Florida.
16      Defendants have a right to defend
17 themselves in litigation.  You may not impose
18 punitive damages based on defendant's defense
19 of this case.
20      That is the law that you must follow in
21 deciding this third phase of the case.  The
22 attorneys for the parties will now present
23 their final arguments.  When they are through,
24 I will have a few final instructions about your
25 deliberations.

Page 9052

1       Members of the jury, just remember that
2  you have now heard all the evidence in the
3  case.  The attorneys now will present their
4  final arguments.  What the attorneys say is not
5  evidence.  The arguments are a final
6  opportunity for the attorneys to discuss the
7  case and to persuade you to reach a verdict in
8  favor of their client.
9       Each side has equal time, but the
10 plaintiffs attorney will go first, followed by
11 defense counsel.  Finally, the plaintiff's
12 attorney may make a rebuttal argument.  Please
13 give the attorneys your close attention.
14      Counsel?
15      MR. HAMMER:  Thank you, Judge.
16      We're here today, today, about
17 punishment, punishing these companies.
18      For two months, basically, you sat here
19 and you heard evidence about what they have
20 done and how it impacted Marvine and Starr and
21 how it killed Johnnie Calloway.  We're here to
22 punish them for that conduct.
23      Your award, your compensatory damage
24 award, which included the pain and suffering,
25 which included the support and services, that

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
COMPLEX CIVIL DIVISION
Case No. 08-80000 (19)
JUDGE JOHN J. MURPHY, III

_____

IN RE:  ENGLE PROGENY CASES
TOBACCO LITIGATION

Pertains To:  ROSE POLLARI, as Personal
Representative of the Estate of PAUL J. POLLARI
Case No.: 14-001563 CA 19

_____/

TRANSCRIPT OF PROCEEDINGS
JURY TRIAL
Volume 32, Pages 4254 - 4363


DATE TAKEN:          March 23rd, 2015
TIME:                (2:00) 1:57 p.m. - 4:28 p.m.
PLACE:               Broward County Courthouse
                     201 S.E. 6th Street
                     Fort Lauderdale, Florida 33301
BEFORE:              John J. Murphy, III, Circuit Judge



        This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:
            Tracey S. LoCastro, RPR, FPR, CLR
                United Reporting, Inc.
                1218 S.E. 3rd Avenue
            Fort Lauderdale, Florida 33316
                  954-525-2221

Page 4283

1    lung cancer and death and that was the basis for
2    your finding that the defendants are liable to
3    plaintiff on her claims involving fraudulent
4    concealment and/or conspiracy to fraudulently
5    conceal.  You may not consider the conduct
6    underlying plaintiff's claims for strict
7    liability or negligence.
8       In making this determination you should
9    consider the following:
10       1.  The nature, extent and degree of
11    misconduct and the related circumstances.
12       2.  The financial resources of the
13    defendants.
14       3.  Whether there is a continuing need for
15    deterrence in light of any changes in the
16    conduct of the defendant from the conduct on
17    which you based your determination that punitive
18    damages were warranted.
19       4.  Any other circumstances relevant in
20    determining the amount of punitive damages.
21       You may in your discretion decline to assess
22    punitive damages.  You may assess punitive
23    damages against one, both or neither defendants.
24    Punitive damages may be assessed against each
25    defendant in different amounts.

Page 4284

1       You should impose punitive damages only if
2    you conclude that monetary liability beyond your
3    award of compensatory damages is necessary to
4    accomplish punishment and deterrence.  You
5    should not award punitive damages if you
6    conclude that those purposes will be satisfied
7    by a defendant's compensatory liability.
8       When determining the amount, if any, of
9    punitive damages to be awarded you may not
10    impose punitive damages to punish a defendant
11    for acts that did not cause Mr. Pollari's lung
12    cancer and/or death.
13       Nor may you consider evidence of conduct
14    that has no nexus to the conduct that caused
15    Mr. Pollari's lung cancer and/or death.  You may
16    punish a defendant only for injury caused to
17    Mr. Pollari by the specific conduct of that
18    defendant that was the basis of your finding
19    that punitive damages may be warranted against
20    that defendant.
21       In deciding whether punitive damages are
22    warranted, you may not seek to punish the
23    defendants for any harm suffered by any
24    individual other than Paul Pollari nor may you
25    punish the defendants for conduct that did not

Page 4285

1    produce harms within the state of Florida.
2       However, you may consider harms suffered by
3    other persons not parties to this lawsuit in
4    assessing the reprehensibility or wrongfulness
5    of the defendants' acts.
6       If you decide to award punitive damages
7    against a defendant, the award should be no
8    greater than the amount that you find necessary
9    to punish that defendant for its intentional
10    misconduct that caused Mr. Pollari's lung cancer
11    and/or death and to deter that defendant and
12    others from engaging in such misconduct in the
13    future.
14       Your consideration of whether punitive
15    damages are warranted for a defendants' conduct
16    must be based on the same or similar conduct
17    which has been shown by clear and convincing
18    evidence to have caused Paul Pollari's lung
19    cancer and/or death.
20       In determining whether punitive damages are
21    warranted you may also take into consideration
22    any mitigating evidence.  Mitigating evidence is
23    the evidence which may demonstrate there is no
24    need to impose punitive damages or that a
25    reduced amount of punitive damages should be

Page 4286

1    imposed against the defendants.
2       In determining the amount of punitive
3    damages, if any, you may not punish either
4    defendant for any conduct that complied with
5    federal or state law, was authorized by federal
6    or state law, or was otherwise lawful where it
7    occurred.
8       The manufacture and sale of cigarettes is a
9    lawful activity protected by federal law.
10    Therefore, you may not impose punitive damages
11    to punish a defendant for simply manufacturing,
12    selling or advertising cigarettes, even if that
13    defendant knew or believed them to be dangerous
14    or to present health risks.
15       In determining the amount of punitive
16    damages, if any, to assess against a defendant
17    you should consider the extent to which the
18    defendants' conduct has changed from the conduct
19    on which you based your determination that
20    punitive damages may be warranted and the extent
21    to which the circumstances have changed.  You
22    are entitled to conclude that misconduct that
23    occurred in the distant past and involved actors
24    who are no longer associated with the defendant
25    need not be punished or that it should be

9 (Pages 4283 to 4286)

Page 4287

1  punished less severely than recent misconduct.
2     Finally, any amount of punitive damages you
3  award must bear a reasonable relationship to the
4  amount of compensatory damages which you have
5  awarded to the plaintiff. Your verdict on the
6  issues raised by punitive damages claim of Rose
7  Pollari as personal representative of the estate
8  of Paul Pollari against RJ Reynolds Tobacco
9  Company and Philip Morris USA Inc. must be based
10  on the evidence that has been received during
11  the trial of the first phase of this case and on
12  the evidence that has been received in these
13  proceedings and the law which I have instructed
14  you.
15     Ladies and gentlemen, the attorneys will now
16  present their opening statements.
17     Mr. McPharlin.
18     MR. MCPHARLIN: Yes, sir, thank you.
19  Afternoon, ladies and gentlemen.
20     This part of the trial is going to move
21  pretty quick. But because of how fast it moves,
22  don't let that influence you on how important it
23  is.
24     We've spent a lot of time talking with you
25  guys about things that Philip Morris has done

Page 4288

1  and things that RJ Reynolds has done,
2  educating -- we hope educating you on a long
3  history of conduct that these companies have
4  engaged in over decades. So that took us time,
5  and we've spent a lot of time doing that, and we
6  don't need to do that again. So this part of
7  the trial is going to move very fast.
8     And what we've -- what you've accomplished
9  so far is incredibly important. What you have
10  yet to accomplish is also extremely important.
11     You have not had the opportunity to consider
12  amongst yourselves if these companies should be
13  punished for what they did. If what they did
14  for all of the time that we've covered in this
15  case, all of the different things that you've
16  seen, if that's okay, if that is something that
17  a company should be punished for, a company
18  should be deterred from doing again and other
19  companies should be deterred from doing.
20  Because punitive damages in the state of Florida
21  is not just about punishing the company that
22  behaves badly. You're going to see, and the
23  judge has already read them to you, the
24  instructions the law in Florida is that when a
25  company behaves the way that they have,

Page 4289

1  punishing them not only punishes them for their
2  conduct, deters them from doing it again and may
3  deter other companies from acting just as badly
4  or even remotely as badly as Philip Morris and
5  RJ Reynolds has in this case.
6     So in making the decisions that you have to
7  make, the judge gave you those instructions, and
8  they're much shorter this time.
9     So I want to talk about a couple of the
10  things that he told you just so that you
11  understand what this part of the trial is about,
12  the nature, the extent and the degree of the
13  misconduct.
14     You've already considered whether they
15  should be punished. You've already considered
16  whether punitive damages are appropriate. And
17  that decision was made based on a standard that
18  we had to meet that was much higher than the
19  other standard that we had that you were to
20  decide all the other issues in the case. So by
21  clear and convincing evidence you collectively
22  came to the decision that these companies should
23  be punished for what they did. This part of the
24  trial is to determine if they will be punished.
25  And the law says that you do not have to award

Page 4290

1  money in this part of the trial, but we believe
2  based on the evidence that you've seen that --
3  and that you've already seen, a reasoned
4  judgment is that what they did is well deserving
5  of punishment.
6     Companies cannot behave that way. They
7  cannot put human life over profits.
8     MS. HENNINGER: Objection to the argument.
9     THE COURT: Sustained.
10     MR. MCPHARLIN: The evidence will be that
11  that's what they did. And you will see that
12  further in this part of the trial, that they put
13  human life over profits and they need to be
14  punished for that.
15     You'll also consider their financial
16  resources. Remember, they're a business and
17  they have a business model that we have talked
18  about at length for a couple of weeks now, and
19  that business model has enabled them to rise
20  financially to the level where they are at.
21     And what is that business model based on?
22  As we showed you in the first part of the trial,
23  it's based on acquiring as many young people as
24  they can. It's still based on that. Today over
25  90 percent of their regular daily customers

10 (Pages 4287 to 4290)

1        IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
             IN AND FOR MIAMI-DADE COUNTY, FLORIDA

2
                    CASE No.11-14352 CA 20

3

4

5    WILLIAM CRAWFORD,

6             Plaintiff,

     -vs-

7

     R.J. REYNOLDS TOBACCO COMPANY, individually

8    and as successor by merger to BROWN & WILLIAMSON
     U.S.A. INCORPORATED and/or BROWN & WILLIAMSON

9    TOBACCO CORPORATION, individually and as successor
     by merger to THE AMERICAN TOBACCO COMPANY, a

10   foreign corporation, et al.,

11            Defendants.

     _____

12

13

14

15              TRIAL BEFORE THE HONORABLE
                     RONALD DRESNICK

16
                        Vol XXI

17

18
                 Monday, September 30, 2013

19                Dade County Courthouse
                   Miami, Florida 33130

20               12:56 p.m. - 4:47 p.m.

21

22   Reported By:
     Jeana Ricciuti, CRR, RPR, FPR, CLR

23   Notary Public, State of Florida
     U.S. Legal Support, Inc.

24

25

Page 2593

1      when I finish these instructions, "Parties will
2      present their argument." How is that?
3          MR. BELASIC: Sure, Your Honor. Yes.
4          MR. ALVAREZ: Here's the clean set, and here
5      is the verdict form.
6          THE COURT: Okay.
7          (Recess.)
8          (Jury entering at 3:27 p.m.)
9          THE COURT: Note the presence of the jury and
10      the parties.
11          Members of the jury, I am now going to tell
12      you about the rules of law that apply in
13      determining whether punitive damages should be
14      assessed, and if so, in what amount. When I finish
15      with these instructions, the parties will present
16      their final arguments to you with regard to
17      punitive damages.
18          You should consider these arguments along with
19      the evidence that's already been presented, and you
20      should decide any disputed facts -- any disputed
21      factual issues by the greater weight of the
22      evidence.
23          Greater weight of the evidence means the more
24      persuasive and convincing force and effect of the
25      entire evidence in the case.

Page 2595

1          Two, the conduct and action of others,
2      including William Crawford;
3          And three, whether there is a continuing need
4      for deterrence in light of any changes in the
5      conduct of Reynolds from the conduct on which you
6      based your determination of punitive damages were
7      warranted.
8          However, you may not award an amount that
9      would financially destroy Reynolds. You may, in
10      your discretion, decline to assess punitive
11      damages. For the purpose of determining the
12      amount, if any, of punitive damages, you may not
13      consider in any way the findings from the prior
14      lawsuit that I have described to you earlier. You
15      should impose punitive damages only if you conclude
16      that monetary liability beyond your award of
17      compensatory damages is necessary to accomplish
18      punishment and deterrence.
19          You should not award punitive damages if you
20      conclude that those purposes will be satisfied by
21      Reynolds' compensatory liability.
22          If you decide to award punitive damages
23      against Reynolds, the award should be no greater
24      than the amount that you find necessary to punish
25      Reynolds for the smoking-related injury caused to

Page 2594

1          Punitive damages may be awarded against
2      Reynolds based only on your findings that Reynolds
3      is liable to William Crawford for fraudulent
4      concealment or conspiracy to fraudulently conceal.
5      Thus, in determining the amount of punitive damages
6      to be awarded against Reynolds, if any, you may
7      punish Reynolds only for the injury caused to
8      William Crawford by the specific conduct of
9      Reynolds that was the basis for your finding that
10      Reynolds is liable to William Crawford on his
11      claims involving concealment or conspiracy to
12      conceal.
13          You should not consider the conduct underlying
14      William Crawford's claim for strict liability or
15      negligence.
16          You are to decide the amount of punitive
17      damages, if any, to be assessed against Reynolds as
18      punishment and as a detriment to others. This
19      amount should be in addition to the compensatory
20      damages you have previously awarded.
21          In making this determination, you should
22      consider the following:
23          One, the nature, extent, and degree of
24      Reynolds' misconduct that caused William Crawford's
25      laryngeal cancer and the related circumstances;

Page 2596

1      William Crawford and to deter Reynolds and others
2      similarly situated from engaging in such misconduct
3      in the future. When determining the amount, if
4      any, of punitive damages to be awarded, you may not
5      impose punitive damages to punish Reynolds for
6      conduct that was not shown by clear and convincing
7      evidence to have caused William Crawford's
8      laryngeal cancer.
9          Any award of punitive damages is solely for
10      the injury caused to William Crawford and should
11      not include punishment for harm suffered by other
12      smokers when making them bring their own claims for
13      punitive damages in other cases.
14          You may punish Reynolds only for injury caused
15      to William Crawford by the specific conduct of
16      Reynolds that was the basis for your finding that
17      punitive damages are warranted against Reynolds.
18          Any amount of punitive damages you award must
19      not be unreasonably large when considered in
20      relation to the amount of compensatory damages you
21      have awarded to William Crawford.
22          In determining the amount of punitive damages,
23      if any, you may not consider Reynolds' wealth,
24      size, or financial condition.
25          In determining the amount of punitive damages,

29 (Pages 2593 to 2596)

Page 2597

1   if any, you may not punish Reynolds for any conduct
2   that complied with federal or state law or was
3   authorized by federal or state law, or was
4   otherwise lawful where it occurred.
5       In determining the amount of punitive damages,
6   if any, you may not punish Reynolds for conduct
7   that did not produce harms within the state of
8   Florida.
9       The manufacture and sale of cigarettes is a
10  lawful activity protected by federal law;
11  therefore, you may not impose punitive damages to
12  punish Reynolds for simply manufacturing, selling,
13  or advertising cigarettes.
14      Conduct that is incident to the proper conduct
15  of litigation, whether in the courtroom or outside
16  of it, is accorded legal protection.  Actions taken
17  by Reynolds solely to defend against litigation
18  cannot be the basis on which to impose punitive
19  damages in this action.
20      You should also take into consideration any
21  mitigating evidence.
22      Mitigating evidence is evidence which may
23  demonstrate that there is no need for punitive
24  damage or that a reduced amount of punitive damages
25  should be imposed against Reynolds.

Page 2598

1       In considering whether punitive damages are
2   necessary, and if so, how much to award against
3   Reynolds, you should consider the extent to which
4   Reynolds' conduct has changed from the conduct on
5   which you based your determination that punitive
6   damages were warranted and the extent to which
7   circumstances have changed.
8       You are entitled to conclude that misconduct
9   that occurred in the distant past and involved
10  actors who are no longer associated with Reynolds
11  need not be punished or that it should be punished
12  less severely than recent misconduct.
13      That is the law you are to follow in deciding
14  the second phase of the case.  The attorneys for
15  the parties will now present their final arguments.
16  When they are through, I will have a few final
17  instructions for your deliberation.
18      Mr. Alvarez.
19      MR. ALVAREZ:  May it please Your Honor and the
20  Court, Counsel, Mr. Crawford.
21      I'll be very brief; less than 15 minutes.
22      But -- and I think the reason for my brevity is
23  that I think you've heard the evidence.  I think
24  you know what this case is about.  I think I don't
25  have to convince you of anything.  You have seen

Page 2599

1   the compelling evidence in this case, and you've
2   spoken by your Phase 1 verdict that punitive
3   damages are warranted in this case.  And that's why
4   we're here.
5       Let me just tell you, first of all, the Judge
6   read you some instructions.  But some of the things
7   that are most important that I would like to talk
8   to you about is that in determining the amount of
9   punitive damages to be awarded against Reynolds, if
10  any, you may punish Reynolds only for the injury
11  caused to William Crawford by the specific conduct
12  of Reynolds that was the basis for your finding
13  that Reynolds is liable to William Crawford on his
14  claim involving concealment or conspiracy to
15  conceal.
16      And that's important, because what we want,
17  and the only thing we want, is you to punish that
18  company for what they did to that man.  And that's
19  what we want you to consider.  That and only that.
20      And the reason they need to be punished is,
21  this is a deterrent for others so they don't act
22  this way.  We cannot allow other companies to act
23  this way.  Your verdict is a deterrent to other
24  companies acting this way.  If you don't deter
25  them, no one will.  If its not now, when?

Page 2600

1       The purpose of Dr. Figlar -- part of the
2   purpose of Dr. Figlar was to tell you, or try to
3   convince you, that they are a changed company.
4   That somehow they're changed.  That we're not the
5   same people.  We're not those old men that used to
6   say those things anymore.  We are different.  That
7   was the purpose of Dr. Figlar.
8       There's two things with that:  Number one, it
9   doesn't matter.  It doesn't matter, because you
10  have the right to punish them for what they did to
11  this man.  Whether they're changed now or not, you
12  still have the right to punish them.
13      But I will submit to you that they are not
14  changed.  That they have never changed.
15      And what they call youth smokers are nothing
16  more than the replacement smokers that they talk
17  about.  When you hear the words "replacement
18  smokers," all they're talking about are teenagers.
19      And that document that we saw that said,
20  "Well, that as a mistake.  Oh, no, it was really 18
21  to 24."  Well, was this one a mistake when it
22  showed that they were talking about teenagers?  Was
23  this a mistake when they were talking about 12- to
24  17-year-old kids?  Was this a mistake in 1990 when
25  they wrote to a middle school principal and said

30 (Pages 2597 to 2600)

```
 1                        IN THE CIRCUIT COURT OF THE
                         11TH JUDICIAL CIRCUIT IN AND
 2                       FOR MIAMI-DADE COUNTY, FLORIDA
 3                          CIVIL CIRCUIT DIVISION
 4                          CASE NO:  12-18904 CA 42
 5
 6
     SHERRI HUBBIRD, as
 7   Personal Representative of the
     Estate of DAVID R. ELLSWORTH,
 8   deceased, and on behalf of KERRI L. ELLSWORTH,
 9                    Plaintiff,
10   v.
11   R.J. REYNOLDS TOBACCO COMPANY,
12                    Defendant.
     _____/
13
14                          Miami-Dade County Courthouse
                            73 West Flagler Street
15                          Miami, Florida
                            Friday, 2:00 - 5:20 p.m.
16                          August 29, 2014
17              Volume 35, Pages 4723- 4874
18        The above-entitled cause came on for Jury Trial
19   before the Honorable Jacqueline Hogan Scola, Circuit
20   Court Judge, taken before Suzanne Vitale, Registered
21   Professional Reporter, Florida Professional Reporter
22   and Notary Public in and for the State of Florida at
23   Large.
24
25
```

Page 4824

1  you about the rules of law that apply to
2  determining whether punitive damages should be
3  assessed and, if so, in what amount. When I
4  finish with these instructions, the parties
5  will present -- well, they will present their
6  closing arguments.
7      You should consider this argument,
8  additional argument, along with the evidence
9  that has been presented, and you should decide
10  any disputed factual issues by the greater
11  weight of the evidence.
12      Greater weight of the evidence means the
13  more persuasive and convincing force and effect
14  of the entire evidence in the case.
15      You will now determine the amount of
16  punitive damages, if any, to be assessed
17  against Reynolds as punishment and as a
18  deterrent to others. This amount would be in
19  addition to the compensatory damages you have
20  previously awarded.
21      In making this determination, you should
22  consider the following.
23      One, the nature, extent and degree of
24  Reynolds's misconduct that caused
25  Mr. Ellsworth's non-BAC lung cancer, and the

Page 4825

1  related circumstances.
2      Two, the conduct and actions of others,
3  including Mr. Ellsworth.
4      And three, whether there is a continuing
5  need for deterrence in light of any changes in
6  the conduct of Reynolds from the conduct on
7  which you based your determination that
8  punitive damages were warranted.
9      However, you may not award an amount that
10  would financially destroy Reynolds. You may,
11  in your discretion, decline to assess punitive
12  damages.
13      You should impose punitive damages only if
14  you conclude that monetary liability beyond
15  your award of compensatory damages is necessary
16  to accomplish punishment and deterrence.
17      You should not award punitive damages if
18  you conclude that those purposes will be
19  satisfied by an award of compensatory damages.
20      For the purpose of determining the amount
21  of punitive damages, if any, you may not
22  consider in any way the Engle findings
23  regarding Reynolds' conduct from the prior
24  trial that I described to you earlier.
25      Any award of punitive damages is solely

Page 4826

1  for the injury caused to Mr. Ellsworth and
2  should not include harms suffered by other
3  smokers who may bring their own claims for
4  punitive damages in other cases.
5      You may punish Reynolds only for the
6  injury caused to Mr. Ellsworth by the specific
7  conduct of Reynolds that was the basis for your
8  finding that punitive damages are warranted
9  against Reynolds.
10      You may consider evidence concerning harms
11  allegedly suffered by persons who are not
12  parties to this case for the limited purpose of
13  any light it might shed on the degree of
14  blameworthiness of Reynolds' conduct, if any,
15  that caused Mr. Ellsworth's non-BAC lung
16  cancer.
17      You may consider evidence regarding
18  conduct that allegedly caused harm to other
19  persons, other than Mr. Ellsworth, only to the
20  extent that it was substantially similar to the
21  specific conduct that actually caused
22  Mr. Ellsworth's non-BAC lung cancer such that
23  it essentially replicated that conduct.
24      Any amount of punitive damages you award
25  must be considered in relation to the amount of

Page 4827

1  compensatory damages you have awarded to the
2  plaintiff.
3      If you decide to award punitive damages
4  against Reynolds, the award should be no
5  greater than the amount that you find necessary
6  to punish Reynolds for the smoking-related
7  injury caused to Mr. Ellsworth by Reynolds'
8  conduct and to deter Reynolds and others
9  similarly situated from engaging in such
10  misconduct in the future.
11      You have heard evidence of Reynolds'
12  financial condition. This evidence was
13  presented because you are not to make an award
14  that would financially debilitate. At the same
15  time, you should not use Reynolds' financial
16  condition as a basis for increasing any award
17  against Reynolds.
18      In determining the amount of punitive
19  damages, if any, you may not punish Reynolds
20  for any conduct that complied with federal or
21  state law or was authorized by federal or state
22  law or was otherwise lawful where it occurred.
23      The manufacture and sale of cigarettes is
24  a lawful activity protected by federal law.
25  Therefore, you may not impose punitive damages

Page 4828

1  to punish Reynolds for simply manufacturing,
2  selling or advertising cigarettes.
3      Conduct that is incident to a proper
4  response to litigation, whether in the
5  courtroom or outside of it, is afforded legal
6  protection.  Actions taken by Reynolds solely
7  to defend against litigation cannot form a
8  basis in which to impose punitive damages in
9  this action.
10     In considering whether punitive damages
11 are necessary and, if so, how much to award
12 against Reynolds, you should consider the
13 extent to which Reynolds' conduct has changed
14 from the conduct on which you based your
15 determination that punitive damages may be
16 warranted and the extent to which the
17 circumstances have changed.
18     You are entitled to conclude that this
19 conduct that occurred in the distant past and
20 involved actors who are no longer associated
21 with Reynolds need not be punished or that it
22 should be punished less severely than recent
23 misconduct.
24     You should also take into consideration
25 any mitigating evidence.  Mitigating evidence

Page 4829

1  is evidence that may demonstrate that there is
2  no need for punitive damages or that a reduced
3  amount of punitive damages should be imposed
4  against Reynolds.
5      The warning labels placed on cigarette
6  packs and advertisements by R.J. Reynolds
7  Tobacco Company complied with federal law and
8  Reynolds had no obligation to place any
9  additional warnings on its cigarette packs and
10 advertisements after July 1, 1969.
11     Punitive damages may not be imposed on
12 Reynolds based on any alleged failure to place
13 additional or different warnings on its
14 cigarette packages after July 1, 1969.
15     The fact that Reynolds is a corporation
16 must not prejudice you in your deliberations or
17 in your verdict.  You may not discriminate
18 between corporations and natural individuals.
19 Both are persons in the eyes of the law and
20 both are entitled to the same fair and
21 impartial consideration by the same legal
22 conduct.
23     That is the law that you must follow in
24 deciding this phase of the case.
25     The attorneys for the parties will now

Page 4830

1  present their final arguments.  When they're
2  through, I will have a few final instructions
3  about your deliberations.  Thank you.
4      Mr. Kaiser.
5      MR. KAISER:  Thank you.  May it please the
6  Court, Counsel, ladies and gentlemen.  Good
7  afternoon.  If you don't mind, I'm going to be
8  brief.  Just a few topics I want to cover.
9      The fact that you heard testimony from
10 Dr. Borgerding that their company has spent all
11 sorts of money since 2000 or whatever should
12 not absolve them from punitive damages for what
13 they did 50 years ago.
14     It took them up until 2000 to publicly
15 admit what they had been doing since 1953.
16 And, for that, alone, they need to be punished,
17 because their admissions in 2000 and their
18 subsequent conduct from 2000 doesn't do
19 anything to David Ellsworth.
20     They didn't make these concessions to
21 David Ellsworth in 1994 or before.  That
22 doesn't do him any good.
23     So what I want to go over is just the
24 extent of their misconduct, and we've already
25 proved our case, and you have recognized that

Page 4831

1  when we proved to you, by clear and convincing
2  evidence, the conduct that warrants entitlement
3  to punitive damages.  We don't need to address
4  that.
5      But we need to address the amount of
6  punitive damages.  Punitive damages, in this
7  case, they need to be imposed that's going to
8  sting R.J. Reynolds.  It's going to hurt them.
9  Not break them, but hurt them.  That's what
10 punishment is for, so you don't forget it.  Not
11 a slap on the wrist.
12     And these are a couple of things I'd like
13 to talk about for you to consider.
14     Number one, this was not misconduct that
15 just went on for a day or a month or a year.
16 This was misconduct that went on from
17 December 14th of 1953 until well after David
18 Ellsworth's death in 1994.
19     So, we're talking about, just in David
20 Ellsworth's lifetime, 40 years that R.J.
21 Reynolds was lying to the public, including
22 Mr. Ellsworth, and we know that he was exposed
23 to that and heard it by your verdict.
24     Forty years they were lying.  Forty years
25 they were concealing information.  This is a

Page 2549

```
 1    IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
               IN AND FOR PALM BEACH COUNTY, FLORIDA
 2                    COMPLEX CIVIL DIVISION
                    CASE NO.:  08-80000(19)
 3
 4    IN RE:  ENGLE PROGENY CASES
      TOBACCO LITIGATION
 5
      Pertains To:  Ryan, Thomas and Bettye Ryan
 6    v. R.J. Reynolds Tobacco Company, et al.,
      Case No. 08-022579(19)
 7
 8
 9
10
                TRANSCRIPT OF JURY TRIAL PROCEEDINGS
11                        VOLUME 18
                          PHASE II
12                   (Pages 2549 - 2718)
13
          DATE TAKEN: Monday, April 20, 2015
14        TIME:  8:38 a.m. - 12:04 p.m.
          PLACE: Broward County Courthouse
15               201 Southeast 6th Street
                 Fort Lauderdale, Florida 33301
16        BEFORE:   JOHN J. MURPHY, III, Circuit Judge
17
18
19
20
21
           This cause came on to be heard at the time and
22    place aforesaid, when and where the following
      proceedings were stenographically reported by:
23
                      BARBIE GALLO, RMR-CRR
24                   www.phippsreporting.com
                        888-811-3408
25
```

Electronically signed by Barbara Gallo (501-057-118-3855)                    ba3fff93-60d6-4e1d-af98-fd74f8a8

Page 2626

1    damages are warranted for Reynolds' -- for
2    Reynolds' conduct must be based on the same or
3    similar conduct which has been shown by clear
4    and convincing evidence to have caused
5    Mr. Ryan's COPD emphysema, specifically, your
6    verdict that Reynolds fraudulently concealed and
7    conspired to fraudulently conceal, which was the
8    legal cause of Mr. Ryan's COPD.
9         In determining whether punitive damages are
10   warranted, you may also take into consideration
11   any mitigating evidence. Mitigating evidence is
12   the evidence which may demonstrate there is no
13   need to impose punitive damages or that a
14   reduced amount of punitive damages should be
15   imposed against Reynolds.
16        In determining the amount of punitive
17   damages, if any, you may not punish Reynolds for
18   any conduct that comply with federal or state
19   law, was authorized by federal or state law or
20   was otherwise lawful where it occurred. The
21   manufacture and sale of cigarettes is a lawful
22   activity protected by federal law. Therefore,
23   you may not impose punitive damages to punish
24   Reynolds for simply manufacturing, selling or
25   advertising cigarettes.

Page 2627

1         In determining the amount of punitive
2    damages, if any, to assess against Reynolds, you
3    may consider the extent to which Reynolds'
4    conduct has changed from the conduct on which
5    you base your determination that punitive
6    damages may be warranted and the extent to which
7    circumstances have changed.
8         Finally, any amount of punitive damages you
9    award must bear a reasonable relationship to the
10   amount of compensatory damages which you have
11   awarded to the plaintiff. Your verdict on the
12   issues raised by the punitive damage claim of
13   Thomas Ryan against R.J. Reynolds Tobacco
14   Company must be based on the evidence that has
15   been received during the trial of the first
16   phase of this case and on evidence that has been
17   received in these proceedings and the law that I
18   have instructed you on.
19        Ladies, at this time the attorneys for each
20   side will have the opportunity to make their
21   opening statements in which they may explain to
22   you the issues in this phase of the case and
23   give you a summary of the facts that they expect
24   the evidence will show.
25        Mr. Alvarez.

Page 2628

1         MR. ALVAREZ: May it please this honorable
2    court, counsel, Mr. Ryan, counsel.
3         Good morning, ladies.
4         With your verdict on Friday you told us that
5    punitive damages are warranted in this case.
6    And this is the purpose of this stage of the
7    case is to determine the amount of punitive
8    damage to be assessed.
9         It's going to be a brief phase. We're going
10   to publish certain government reports to you,
11   and then the defense will have an opportunity to
12   put on their case, and then we'll summarize our
13   closing arguments, as we did on Friday, and then
14   you'll have an opportunity to render a verdict
15   again in this case on punitive damages.
16        But let me tell you -- you've heard the
17   judge's instructions, and I want to focus on a
18   few things. I'll be very brief. I doubt I'll
19   go ten minutes. I think you've heard enough
20   from the lawyers. I think you understand what
21   the issues are in this case, and I think you
22   understand what the facts are. And what I want
23   to do is tie those together for you so you have
24   an understanding what you're supposed to be
25   doing in this phase of the trial.

Page 2629

1         So the very first -- this is an instruction
2    the judge just read to you. And I think it's
3    important because this is why we are here. "You
4    will now decide the amount of punitive damages,
5    if any, to be assessed against R.J. Reynolds
6    Tobacco Company..." and these are the keywords,
7    I think. "... as punishment..." That means to
8    punish them for what they did to Mr. Ryan.
9    "...and as a deterrent to others," meaning,
10   deterring other corporations, not just other
11   tobacco companies but any corporation who acts
12   badly.
13        They have to understand that when you lie,
14   misrepresent to people knowing that it's false
15   and misleading and people get hurt, companies
16   will be held accountable this way. This is what
17   our society has said is the law, and this is a
18   check and balance system to prevent things like
19   this from happening to other people by other
20   corporations in America. And if we don't have
21   this system where other companies can look at
22   what happened here today and say, I'm going to
23   think twice about what I'm going to do because I
24   don't want the same thing to happen to us that
25   happened to R.J. Reynolds... And that is a

21 (Pages 2626 to 2629)

Electronically signed by Barbara Gallo (501-057-118-3855)                                    ba3fff93-60d6-4e1d-af98-fd74f8a8

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2010-17931 CA (31)


BRENDA CHADWELL, as Personal
Representative of the Estate
of JAMES CHADWELL, deceased,

      Plaintiff,

vs.

PHILIP MORRIS USA, INC.,

      Defendant.

_____/


JURY TRIAL
VOLUME 17
PAGES 2672 - 2880


DATE TAKEN:  Monday, September 24, 2018
TIME:        (8:30) 8:03 a.m. - 12:52 p.m.
PLACE:       Miami-Dade County Courthouse
             73 West Flagler Street
             Miami, Florida  33130
BEFORE:      Honorable Jacqueline Hogan Scola


This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:


Janette P. Moreno, RMR, CRR, CLR, FPR, CRC
United Reporting, Inc.
1218 S.E. 3rd Avenue
Fort Lauderdale, Florida  33316
954-525-2221

Page 2709

instructions, after which you will decide
whether, in your discretion, punitive damages
will be assessed and, if so, the amount.  You
may, in your discretion, decline to assess
punitive damages.

Punitive damages are warranted only if
you find by clear and convincing evidence
that, 1, the conduct causing James Chadwell's
lung cancer and death was so gross and
flagrant as to show a reckless disregard of
human life or the safety of persons exposed
to the effects of such conduct; or the
conduct causing James Chadwell's lung cancer
and death showed such an entire lack of care
that Philip Morris USA, Inc., must have been
consciously indifferent to the consequences;
or, 3, the conduct causing James Chadwell's
lung cancer and death showed such an entire
lack of care that Philip Morris USA, Inc.,
must have wantonly or recklessly disregarded
the safety and welfare of the public; or, 4,
the conduct causing James Chadwell's lung
cancer and death showed such reckless
indifference to the rights of others as to be
equivalent to an intentional violation of

Page 2710

those rights.

"Clear and convincing evidence" differs
from the "greater weight of the evidence" in
that it is more compelling and persuasive.
As I have already instructed you, "greater
weight of the evidence" means the more
persuasive and convincing force and effect of
the entire evidence in the case.

In contrast, "clear and convincing
evidence" is evidence that is precise,
explicit, lacking in confusion, and of such
weight that it produces a firm belief or
conviction, without hesitation, about the
matter in issue.

In determining whether punitive damages
are warranted, you may not seek to punish
Philip Morris USA, Inc., for any harm
suffered by any individual other than James
Chadwell.

You may consider evidence concerning
harms allegedly suffered by persons who are
not parties to this cause for the limited
purpose of any light it might shed on the
degree of reprehensibility or wrongfulness of
Philip Morris USA's, Inc.'s conduct that

Page 2711

caused James Chadwell's lung cancer and
death.

You may consider evidence regarding
conduct that allegedly caused harm to persons
other than James Chadwell only to the extent
that it was substantially similar to the
specific conduct that actually caused his
lung cancer and death.

Punitive damages may not be imposed to
punish any conduct that was dissimilar to the
conduct that you find harmed James
Chadwell.

In determining whether punitive damages
may be warranted, you should also take into
consideration any mitigating evidence.

Mitigating evidence is evidence that
may demonstrate that there is no need to
impose punitive damages.  That is the law you
must follow in deciding this case.

The attorneys for the parties may now
present their final arguments.  When they are
through, I will have a few final instructions
about your deliberations.

I remind you that what the lawyers say
is not evidence, but it is intended to assist

Page 2712

you in understanding their position on the
evidence as it was presented and the law as
I've just instructed you.

Each side will have equal time, but the
plaintiff goes first and last because they
have the burden of proving their claim by the
greater weight of the evidence, and Ruby is
going to give them notice, so at this time,
I'm going to let the parties start.

If at any time before we take a break --
I'm planning on taking a break after the
first argument, but if you need to take a
break earlier, please alert the bailiff and
he'll let me know.  Okay?

Thank you.

Excuse me one second.

Mr. Wichmann.

MR. WICHMANN:  May I proceed, Your
Honor?

THE COURT:  Yes, sir.

MR. PHILIPSON:  Is that on?

MR. WICHMANN:  How's that?

MR. PHILIPSON:  Better.

MR. WICHMANN:  Ms. Ruby, am I ready?

THE CLERK:  I hope so.

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

COMPLEX LITIGATION UNIT
Case No. 08-80000 (19)
JUDGE JOHN J. MURPHY, III

_____

IN RE:  ENGLE PROGENY CASES
TOBACCO LITIGATION


Pertains to:  JOSEPH VARNER, as Personal
Representative of the Estate of VIRGINIA VARNER
Case No.:  08-026345
_____/

JURY TRIAL
TRANSCRIPT OF PROCEEDINGS
Volume 35 - Pages 4663 - 4830




DATE TAKEN:     July 18th, 2016
TIME:           (8:00) 8:00 a.m. - 10:50 a.m.
PLACE:          Broward County Courthouse
                201 S.E. 6th Street
                Fort Lauderdale, Florida  33301
BEFORE:         John J. Murphy, III, Circuit Court




        This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

Susan J. Sternberg, C.M.
United Reporting, Inc.
1218 S.E. 3rd Avenue
Fort Lauderdale, Florida  33316
954-525-2221

Page 4772

Reynolds Tobacco Company, as punishment and as
a -- God bless -- as a deterrent to others.
Any such damages would be in addition to any
compensatory damages you may award.

The trial of the punitive damage claim is
divided into two parts. In this first part,
you will decide whether the conduct of Philip
Morris USA Inc. and R.J. Reynolds Tobacco
Company was such that punitive damages may be
warranted.

If you decide punitive damages may be
warranted, we will proceed to a second part on
that issue during which the parties may present
additional evidence and argument on the issue
of punitive damages.

I will then give you additional legal
instructions, after which you will decide
whether, in your discretion, punitive damages
will be assessed; and, if so, the amount. You
may, in your discretion, decline to assess
punitive damages.

Instruction Number 20: The burden is on
the plaintiff to prove by clear and convincing
evidence that punitive damages may be
warranted. Clear and convincing evidence

Page 4773

differs from the greater weight of the evidence
in that it is more compelling and persuasive.

As I've already instructed you, "greater
weight of the evidence" means the more
persuasive and convincing force and effect of
the entire evidence in the case. In contrast,
clear and convincing evidence is evidence that
is precise, explicit, lacking in confusion, and
of such weight that it produces a firm belief
or conviction, without hesitation, about the
matter in issue.

Instruction 21: Punitive damages are
warranted against one or more of the defendants
if you find by clear and convincing evidence
that as to each such defendant or defendants:

1: The conduct causing injury to
Ms. Varner was so gross and flagrant as to show
a reckless disregard of human life or of the
safety of persons exposed to the effects of
such conduct; or, 2, the conduct showed such an
entire lack of care that the defendant must
have been consciously indifferent to the
consequences; or, 3, the conduct showed such an
entire lack of care that the defendant must
have wantonly or recklessly disregarded the

Page 4774

safety and welfare of the public; or, 4, the
conduct showed such reckless indifference to
the rights of others as to be equivalent to an
intentional violation of those rights.

You may determine that punitive damages
are warranted against one defendant and not the
other, or against more than one defendant.

Instruction 22: In deciding whether
punitive damages are warranted, you may not
seek to punish defendants for any harm suffered
by any individuals other than Virginia Varner,
nor may you punish defendants for conduct that
did not produce harms within the State of
Florida. However, you may consider harms
suffered by other persons not parties to this
lawsuit in assessing the reprehensibility or
wrongfulness of the defendants' acts.

Instruction 23: Your consideration of
whether punitive damages are warranted for
the -- a defendant's conduct must be based on
the same or similar conduct which has been
shown by clear and convincing evidence to have
caused Virginia Varner's death.

Instruction 24: In determining whether
punitive damages are warranted, you may also

Page 4775

take into consideration any mitigating
evidence. Mitigating evidence is evidence
which may demonstrate there is no need to
impose punitive damages against a defendant.

Instruction 25: Members of the jury,
that is the law that you must follow in
deciding this case. The attorneys for the
parties will now present their final arguments.
When they are through, I will have a few final
instructions about your deliberations.

Is there any objection to the
instructions published in open court, not
previously raised by plaintiffs?

MR. GDANSKI: No, sir.

THE COURT: By defendants?

MR. GERAGHTY: No, Your Honor.

MR. KEEHFUS: No, Your Honor.

THE COURT: Ladies and gentlemen, at this
time, the attorneys for the parties will have
an opportunity to make their closing
statements, in which they may explain to you
the issues in the case and summarize the facts
that they expect the evidence has shown.

The statements of the attorneys, their
arguments, are not to be considered by you as

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

COMPLEX LITIGATION UNIT
CASE NO.: 08-80000(19)
JUDGE JOHN J. MURPHY, III

_____

IN RE:   ENGLE PROGENY CASES
         TOBACCO LITIGATION

Pertains to:
Vivian Turner, as Personal Representative of
the Estate of Vivian Wilkinson
Case No.:   2008-CV-019616(19)
_____/

JURY TRIAL
TRANSCRIPT OF PROCEEDINGS
Volume 19 - Pages 2786 - 2929

DATE TAKEN:    April 19, 2016
TIME:          9:31 a.m. - 12:02 p.m.
PLACE:         Broward County Courthouse
               201 S.E. 6th Street
               Fort Lauderdale, Florida 33301
BEFORE:
John J. Murphy, III, Circuit Court Judge

        This cause came on to be heard at the time
and place aforesaid, when and where the following
proceedings were reported by:

Kelli Ann Willis, RPR, CRR, RSA
United Reporting, Inc.
1218 S.E. 3rd Avenue
Fort Lauderdale, Florida 33316
954-525-2221

Page 2847

William Eugene Wilkinson's loss of his
mother, Vivian Wilkinson's companionship,
instruction, guidance, and William Eugene
Wilkinson's mental pain and suffering as a
result of Vivian Wilkinson's COPD/emphysema and
death.

You may not award damages for any pain and
suffering by Ms. Wilkinson.

In determining the total amount of damages
to be awarded, you should not make any
reduction because of the responsibility, if
any, of Vivian Wilkinson.  The Court will enter
judgment based on your verdict, and in entering
judgment will reduce the total amount of
damages by the percentage of responsibility, if
any, which you find is chargeable to
Ms. Wilkinson.

Instruction 23:  The final issue for your
determination is whether, in addition to the
compensatory damages, punitive damages would be
warranted under the circumstances of this case
against Defendant RJ Reynolds Tobacco Company
as punishment and as a deterrent to others.

Any such damages would be in addition to
any compensatory damages you may award.

Page 2848

Punitive damages may be imposed on RJ
Reynolds Tobacco Company only on the basis of a
finding that Reynolds was liable to Plaintiff
on the claims for fraudulent concealment or
conspiracy to fraudulently conceal.

Punitive damages may not be imposed on
Reynolds on the basis of Plaintiff's claims for
strict liability or negligence.

The trial of the punitive damages claims
is divided into two parts.  In this first part,
you will decide whether the conduct of RJ
Reynolds Tobacco Company was such that punitive
damages may be warranted.

If you decide punitive damages may be
warranted, we will proceed to a second part of
that -- on that issue, during which the parties
may present additional evidence and argument on
the issue of punitive damages.

I will then give you additional legal
instructions, after which you will decide
whether, in your discretion, punitive damages
will be assessed, and if so, the amount.

You may, in your discretion, decline to
assess punitive damages.

THE COURT:  Do you need a glass of water?

Page 2849

JUROR:  I have.  I'm sorry.

THE COURT:  No problem.  I just want to
make sure you're all right.

Continuing, the burden is on the Plaintiff
to prove by clear and convincing evidence that
punitive damages may be warranted.

Clear and convincing evidence differs from
the greater weight of the evidence in that it
is more compelling and persuasive.

As I've already instructed you, greater
weight means the more persuasive and convincing
force and effect of the entire evidence in the
case.

In contrast, clear and convincing evidence
is evidence that is precise, explicit, lacking
in confusion and of such weight that it
produces a firm belief or conviction, without
hesitation, about the matter at issue.

Punitive damages are warranted against
Reynolds if you find by clear and convincing
evidence that Reynolds was guilty of
intentional misconduct which was a substantial
legal cause of Vivian Wilkinson's
COPD/emphysema and death.

Under those circumstances, you may, in

Page 2850

your discretion, determine that punitive
damages are warranted against Reynolds.

If clear and convincing evidence does not
show such conduct by Reynolds, punitive damages
are not warranted.

Intentional misconduct means that Reynolds
had actual knowledge of the wrongfulness of the
conduct that caused Vivian Wilkinson's
COPD/emphysema and death, and that there was a
high probability of injury to Vivian Wilkinson,
and despite that knowledge, Reynolds
intentionally pursued that course of conduct
resulting in Vivian Wilkinson's COPD/emphysema
and death.

For purposes of determining whether
punitive damages are warranted, and if so, the
amount of punitive damages, you may not
consider in any way the Engle findings
regarding Reynolds' conduct from the prior
trial that I described earlier.

In deciding whether punitive damages are
warranted, you may not seek to publish Reynolds
for any harms suffered by any individuals other
than Vivian Wilkinson, nor may you punish
Reynolds for conduct that did not produce harm

Page 2851

within the State of Florida

However, you may consider harm suffered by other persons not parties to this lawsuit in assessing the reprehensibility or wrongfulness of Reynolds' acts, if those harms suffered by non-parties were caused by the same or similar conduct which has been shown by clear and convincing evidence to have caused Ms. Wilkinson's COPD/emphysema and death.

Your consideration of whether punitive damages are warranted for Reynolds' conduct must be based on the same or similar conduct which has been shown by clear and convincing evidence to have caused Vivian Wilkinson's COPD/emphysema and death.

In determining whether punitive damages are warranted, you may also take into consideration any mitigating evidence.

Mitigating evidence is evidence which may demonstrate there is no need to impose punitive damages against Reynolds.

That is the law you must follow --

Instruction 24: That is the law you must follow in deciding this case. The attorneys for the parties will now present their final

Page 2852

arguments. When they are through, I will have a few final instructions about your deliberations.

Before we proceed further, ladies and gentlemen, do you have your water there, sir?

JUROR: I'm good.

THE COURT: You're good?

JUROR: Yeah. I have everything. Thanks.

THE COURT: No problem.

I want to remind you what the attorneys say is not evidence, nor your instructions on the law.

Their arguments are a final opportunity for the attorneys to discuss the case with you and to persuade you to reach a verdict in favor of their client..

Each side has equal time. Plaintiff's attorney normally goes first, then the defense attorney will make his argument. And, finally, Plaintiff's attorney may make what is called a rebuttal argument.

Please give the attorneys your close attention.

Mr. Rosen.

MR. ROSEN: May it please the Court.

Page 2853

Counsel.

Good morning.

JURORS: Good morning.

MR. ROSEN: It has been just shy of two weeks since we started this process, just shy of two weeks, and I think we are actually a little bit ahead of schedule. So that's good.

I tried to move quickly through witnesses, and I know sometimes things got a little bit slow, but I hope that we presented some interesting, unique issues, you got to learn some science, medicine, and that you got to see some great witnesses in this case.

The information that you now have, you know, I really -- thinking about this, you probably have more information about the tobacco industry and smoking and health than probably 99 percent of the US population. I feel confident in that.

And that information is powerful. Okay? Because I think -- I think I said this early on in the case: What you thought you knew about cigarettes and about smokers and about the cigarette industry might be very, very different than what you learned in this

Page 2854

courtroom.

I want to thank every one of you for your patience and for sacrificing and being here on behalf of Vivian and William. We thank you.

All right. And so now we are coming to the end of this case, for you to make a decision and to decide the outcome of who wins, who loses, what is right, what is wrong.

And so what is going to happen in probably a couple of hours is you are going to go back to that jury room and you are going to get a verdict form.

The Judge read you these instructions, and you are going to have to review all of those instructions.

You are going to have the verdict form. The way I'm going to try to go through it is as succinctly as possible. You are going to have the verdict form. I'm going to run through it right now with you to understand what the issues are and what we are going to be talking about.

You heard and saw a lot of evidence. You heard a lot of evidence about the tobacco industry, and you heard and saw a lot of

3504

1    IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
         IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
2                   COMPLEX CIVIL DIVISION

3                   CASE NO. 08-80000 (19)

4

5    IN RE: ENGLE PROGENY CASES
     TOBACCO LITIGATION
6
     **Pertains to: Bernice McCall,**
7    **individually and as Personal**
     **Representative of the Estate of Martin**
8    **McCall**

9    Case No.:  2007-CV-36888 (19)
     --------------------------------------/
10

11

12                  JURY TRIAL BEFORE THE HONORABLE
                        JOHN J. MURPHY, III
13                      CIRCUIT COURT JUDGE

14
                           (Volume 26)
15
                       Pages 3504 to 3672
16

17                   Tuesday, March 1, 2016
                     8:24 a.m. - 12:20 p.m.
18

19                   Broward County Courthouse
                     201 Southeast 6th Street
20                       Courtroom 850
                  Fort Lauderdale, Florida  33301
21

22
                  STENOGRAPHICALLY REPORTED BY:
23          NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
        Certificate in Realtime Systems Administration
24              Certified Realtime Reporter
                Registered Professional Reporter
25              Florida Professional Reporter

3549

1  liability or negligence.
2       The trial of the punitive damages claims is
3  divided into two parts. In this first part, you
4  will decide whether the conduct of Philip Morris
5  USA, Inc., was such that punitive damages may be
6  warranted. If you decide punitive damages may be
7  warranted, we will proceed to a second part on that
8  issue during which the parties may present
9  additional evidence and argument on the issue of
10 punitive damages. I will then give you additional
11 legal instructions, after which you will decide
12 whether, in your discretion, punitive damages will
13 be assessed, and, if so, the amount. You may, in
14 your discretion, decline to assess punitive
15 damages.
16       The burden is on the Plaintiff to prove by
17 clear and convincing evidence that punitive damages
18 may be warranted. Clear and convincing evidence
19 differs from the greater weight of the evidence in
20 that it is more compelling and persuasive.
21       As I've already instructed you, greater weight
22 means the more persuasive and convincing force and
23 effect of the entire evidence in the case. In
24 contrast, clear and convincing evidence is evidence
25 that is precise, explicit, lacking in confusion,

3550

1  and of such weight that it produces a firm belief
2  or conviction, without hesitation, about the matter
3  in issue.
4       Punitive damages are warranted against Philip
5  Morris USA, Inc., excuse me, if you find by clear
6  and convincing evidence that Philip Morris USA,
7  Inc., was guilty of intentional misconduct which
8  was a substantial cause of Martin McCall's lung
9  cancer. Under those circumstances, you may, in
10 your discretion, award punitive damages against
11 Philip Morris USA, Inc. If clear and convincing
12 evidence does not show such conduct by Philip
13 Morris USA, Inc., punitive damages are not
14 warranted against Philip Morris USA, Inc.
15       Intentional misconduct means that Philip
16 Morris USA, Inc., had actual knowledge of the
17 wrongfulness of the conduct and there was a high
18 probability of injury or damage to Martin McCall
19 and, despite that knowledge, Philip Morris USA,
20 Inc., intentionally pursued that course of conduct,
21 resulting in injury or damage.
22       For purposes of determining whether punitive
23 damages are warranted against Philip Morris USA,
24 Inc., and if so, the amount of punitive damages,
25 you may not consider in any way the Engle findings

3551

1  regarding Philip Morris USA, Inc.'s conduct from
2  the prior trial that I described earlier.
3       In deciding whether punitive damages are
4  warranted, you may not seek to punish Philip Morris
5  USA, Inc., for any harms suffered by any
6  individuals other than Martin McCall, nor may you
7  punish Philip Morris USA, Inc., for conduct that
8  did not produce harms within the state of Florida.
9  However, you may consider harms suffered by other
10 persons not parties to this lawsuit in assessing
11 the reprehensibility or wrongfulness of Philip
12 Morris USA, Inc.'s acts.
13       Your consideration of whether punitive damages
14 are warranted for Philip Morris USA, Inc.'s conduct
15 must be based on the same or similar conduct which
16 has been shown by clear and convincing evidence to
17 have caused Martin McCall's lung cancer. In
18 determining whether punitive damages are warranted,
19 you may also take into consideration any mitigating
20 evidence. Mitigating evidence is evidence which
21 may demonstrate there is no need to impose punitive
22 damages against Philip Morris USA, Inc.
23       Instruction Number 26. Members of the jury,
24 that is the law you must follow in deciding this
25 case. The attorneys for the parties will now

3552

1  present their final arguments. When they are
2  through, I will have a few final instructions about
3  your deliberations.
4       Are there any objections to the instructions
5  as published in open court not previously raised by
6  Plaintiff?
7       MR. ALEX ALVAREZ: No, on behalf --
8       MR. BRENNER: Your Honor, I just need to
9  approach for 30 seconds.
10       (The following proceedings were had before the
11 Court at the bench and out of the hearing of the jury.)
12       MR. BRENNER: We caught this when you read it.
13 The instruction, it says --
14       MR. ALEX ALVAREZ: Can I see that?
15       MR. BRENNER: Yes.
16       It just says "fault". It should "at fault".
17       THE COURT REPORTER: Excuse me. Could you
18 move closer to the microphone?
19       THE COURT: Start over. I'm sorry.
20       MR. BRENNER: On Instruction Number 16, Your
21 Honor, when you read it, saw that there was a typo
22 in the instruction and corrected it in your verbal
23 instructions. The written instruction says, "You
24 must determine whether Martin McCall was himself
25 fault." Your Honor corrected and added the word

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

COMPLEX CIVIL DIVISION

CASE NO. 08-80000(19)

JUDGE JEFFREY E. STREITFELD


IN RE: ENGLE PROGENY CASES
TOBACCO LITIGATION

Pertains to: COHEN, 2007-CV 11515(19)

_____/


VOLUME 25 — Pages 2957 to 3133


The above entitled cause came on for jury trial

before the Honorable Jeffrey E. Streitfeld, Judge of

the above styled court, on Tuesday, March 23, 2010,

at the Broward County Courthouse, 201 S.E. 6th

Street, Room 970, Fort Lauderdale, Florida,

commencing at 9:00 a.m.


Reported by:  Kimberly Fontalvo, RPR, CLNR,
              Notary Public, State of Florida

Page 3118

1  detriment on a statement that he received from
2  a Defendant, that concealed or omitted material
3  information about the health effects or
4  addictive nature of smoking, or you find that
5  Mr. Cohen reasonably relied to his detriment on
6  a statement made in furtherance of a
7  Defendant's agreement to conceal or omit
8  material information, and such reliance was a
9  legal cause of Nathan Cohen's death.
10      If you find in favor of the Plaintiff,
11  Mrs. Cohen, on one of these claims as to a
12  Defendant, then you should consider whether in
13  addition to compensatory damages, punitive
14  damages are warranted against that Defendant in
15  the circumstances of this case as punishment
16  for conduct causing Mr. Cohen's death and as a
17  deterrent to others.
18      Punitive damages are warranted against a
19  Defendant if you find by clear and convincing
20  evidence that the conduct causing damage to
21  Nathan Cohen was so gross and flagrant as to
22  show a reckless disregard of the safety of
23  Nathan Cohen, or the conduct causing damage to
24  Nathan Cohen showed such an entire lack of care
25  that a high ranking official of the Defendant

Page 3119

1  must have been consciously indifferent to the
2  consequences to Nathan Cohen, or the conduct
3  causing damage to Nathan Cohen showed such an
4  entire lack of care that a high ranking
5  official of the Defendant must have wantonly or
6  recklessly disregarded the safety and welfare
7  of Nathan Cohen, or the conduct showed such
8  reckless indifference to the rights of Nathan
9  Cohen as to be equivalent to an intentional
10  violation of those rights.
11      Now, you will notice that with some
12  emphasis I mentioned these issues are to be
13  decided by clear and convincing evidence.
14  Clear and convincing evidence differs from the
15  greater weight of the evidence in that it is
16  more compelling and persuasive.
17      As I've told you, greater weight of the
18  evidence means the more the more persuasive and
19  convincing force and effect of the entire
20  evidence in this case.
21      In contrast, clear and convincing evidence
22  is evidence that is precise, explicit, lacking
23  in confusion, and of such weight that it
24  produces a firm belief or conviction without
25  hesitation about the matter in issue.

Page 3120

1      For purposes of determining whether
2  Mrs. Cohen is entitled to punitive damages or
3  if so the amount of punitive damages, you may
4  not consider in any way the findings regarding
5  the Defendants' conduct from the prior lawsuit
6  that I described to you earlier.
7      In determining whether punitive damages
8  are warranted and if so in determining the
9  amount of any such damages, you may not seek to
10  punish a Defendant for any harms suffered by
11  any persons other than Nathan Cohen.
12      In determining whether punitive damages
13  are warranted against the Defendant and if so
14  in determining the amount of any such damages,
15  you may not seek to punish a Defendant for any
16  harm inflicted upon Nathan Cohen, except those
17  caused by that Defendant's punishable conduct.
18      Conduct that is incident to a proper
19  response to litigation, whether in the
20  courtroom or outside of it, is afforded legal
21  protection. Actions taken solely to defend
22  against litigation cannot form a basis on which
23  to impose punitive damages in this action.
24      If you find that punitive damages are
25  warranted against a Defendant, you will

Page 3121

1  determine by the greater weight of the evidence
2  the amount of punitive damages, if any, to be
3  assessed against that Defendant as punishment
4  and as a deterrent to others. This amount will
5  be in addition to the compensatory damages you
6  previously have awarded.
7      In making this determination, you should
8  consider the nature, degree and extent of this
9  conduct and the related circumstances. You may
10  not, however, impose punitive damages to punish
11  the Defendants for harms caused to others whose
12  cases are not before you. You may punish the
13  Defendant only for harm done to Nathan Cohen by
14  the specific conduct that formed the basis for
15  your finding that punitive damages are
16  warranted.
17      You shall also consider the conduct and
18  acts of others, including Nathan Cohen, and any
19  fault that you attribute to Nathan Cohen, and
20  you should consider the extent to which the
21  Defendants' conduct has changed from the
22  conduct on which you based your determination
23  that punitive damages were warranted, and the
24  extent to which circumstances have changed.
25      You may, in your discretion, decline to

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

LESIA MOONEY, as Personal
Representative of the Estate of
BARBARA JUNE MEACHAM, *et al.*,

     Plaintiff,                      CASE NO.: 11-40815 CA 23

         v.

R.J. REYNOLDS TOBACCO COMPANY,
*et al.*,

     Defendants.

_____/

## DEFENDANTS' CONTINGENT ALTERNATIVE PROPOSED FINAL PHASE I JURY INSTRUCTIONS AND VERDICT FORM

1

## DEFENDANTS' PROPOSED INSTRUCTION NO. 7

### *Engle* Findings

If you find that an addiction to cigarettes containing nicotine was a legal cause of Ms. Meacham's lung cancer and death, then you must accept the following previously determined matters as true for the purposes of this case:

(1)     Smoking cigarettes causes lung cancer.

(2)     Nicotine in cigarettes is addictive.

(3)     Each Defendant placed cigarettes on the market that were defective and unreasonably dangerous.

(4)     Each Defendant was negligent.

(5)     Each Defendant concealed or omitted material information not otherwise known or available knowing that the material was false and misleading, or failed to disclose a material fact concerning the health effects or addictive nature of cigarettes or both.

(6)     Each Defendant entered into an agreement to conceal or omit information regarding the health effects of cigarette smoking or the addictive nature of smoking cigarettes.

Your consideration and use of these findings will be subject to additional limitations:

*First*, you must not consider these findings in determining whether Plaintiff has proven that an addiction to cigarettes containing nicotine was a legal cause of Ms. Meacham's lung cancer and death.  The findings do not apply to Plaintiff's claims in this case unless you have first determined, without considering or applying those findings, that Plaintiff has met her burden of proving that issue.

*Second*, these findings do not establish that either Defendant is liable to Plaintiff in this case.  Nor do they establish whether Ms. Meacham was injured by either Defendant's conduct or

the degree, if any, to which either Defendant's conduct was a legal cause of Ms. Meacham's lung cancer and death.

*Third*, the findings establish only what they expressly state, and you must not speculate or guess as to the basis for the findings.

*Fourth*, the findings may not be considered when determining whether punitive damages are warranted against either Defendant. You must treat these findings as if they do not exist and must make your determination regarding whether punitive damages are warranted based solely upon the actual evidence presented to you in this trial.

**AUTHORITY:**        *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1227 (Fla. 2016) (holding "that the res judicata effect of the Phase I findings addressed in *Engle* has no application to claims for punitive damages sought by *Engle* progeny plaintiffs"); *see id.* at 1228 (progeny plaintiffs are "back to square one on the issue of punitive damages"); *see id.* (after *Engle* decision vacated the class-wide punitive damages finding, "the slate was wiped clean as it pertained to punitive damages"); *see id.* at 1230 (*Engle* plaintiff's "reliance on the Phase I findings was not relevant to her claim for punitive damages, which she had to independently prove"); Nov. 19, 2015 Trial Tr. at 4398, 4410, *Finali v. R.J. Reynolds Tobacco Co.*, No. 50 2008 CA 000800 (Fla. 15th Cir. Ct.);Nov. 19, 2015 Trial Tr. at 8109, *Shulman v. R.J. Reynolds Tobacco Co.*, No 50 2007 CA 023832 (Fla. 15th Cir. Ct.); Oct. 23, 2015 Trial Tr. at 3911-13, *In Re: Engle Progeny Cases Tobacco Litig. (Robertson)*, No. 07-CA-36442(19); Sept. 18, 2015 Trial Tr. at 4365-66, *Suarez v. R.J. Reynolds Tobacco Co.*, No. 09-79584 CA 22 (Fla. 11th Cir. Ct.); Aug. 17, 2015 Trial Tr. at 1885, *Santos v. R.J. Reynolds Tobacco Co.*, No. 08-00849-CA-10 (Fla. 11th Cir. Ct.); June 16, 2015 Trial Tr. at 4016-17, *Hardin v. R.J. Reynolds Tobacco Co.*, No. 12-29000-CA(31 (Fla. 11th Cir. Ct.); Apr. 22, 2015 Trial Tr. at 1114-17, *Russo v. Philip Morris USA Inc*., No. 07-44469 CA 01 (Fla. 11th Cir. Ct.); Sept. 4, 2014 Trial Tr. at 3442-43, *Baum v. R.J. Reynolds Tobacco Co.*, No. 10-60768-CA-20 (Fla. 11th Cir. Ct.) (giving substantially similar instruction); Aug. 25, 2014 Trial Tr. at 2663, *Gore v. R.J. Reynolds Tobacco Co.*, No. 31-2008-010052-CA-04 (Fla. 19th Cir. Ct.) (same); Aug. 20, 2013 Trial Tr. at 2299-2302, *In Re: Engle Progeny Cases Tobacco Litig. (Dombey)*, No. 2010-CV-47211 (19) (Fla. 17th Cir. Ct.) (same); *see also* Mar. 26, 2014 Trial Tr. at 3742-44, *In Re Engle Progeny Cases Tobacco Litig.* (*Sammarco*), No. 08-80000 (Fla. 17th Cir. Ct.)

(same);  Jan. 23, 2014 Trial Tr. at 2501-03, *In Re: Engle Progeny Cases Tobacco Litig.* (*Cheeley*), No. 08-022583 (Fla. 17th Cir. Ct.) (same); June 24, 2013 Trial Tr. at 3314, *Hausner v. R.J. Reynolds Tobacco Co.*, No. 01-08-CA-003832 (Fla. 8th Cir. Ct.) (same); May 22, 2013 Trial Tr. at 4066-67, *Campbell v. R.J. Reynolds Tobacco Co.*, No. 2011-CA-005960 (Fla. 10th Cir. Ct.) (same); May 1, 2013 Trial Tr. at 7268-69, *LaMotte v. R.J. Reynolds Tobacco Co.*, No. 2010-CA-003072 (Fla. 1st Cir. Ct.) (same); Apr. 30, 2013 Trial Tr. at 7313-14, *Cohen v. R.J. Reynolds Tobacco Co.*, No. 50 2009 CA 004042 XXXX MB (AI) (Fla. 15th Cir. Ct.) (same); Mar. 20, 2013 Trial Tr. at 2567, *Marotta v. R.J. Reynolds Tobacco Co.*, No. 07-036723 CACE 19 (Fla. 17th Cir. Ct.) (same).

2781

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CASE NO.: 2014-16677 CA 01

MARK COHEN, as Personal Representative
of the Estate of SHIRLEY COHEN,

                                    Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY,
a foreign corporation; PHILIP MORRIS USA, INC.,
a foreign corporation; LORILLARD TOBACCO COMPANY,
a foreign corporation; LIGGETT GROUP, LLC,
(f/k/a Liggett Group, Inc., f/k/a Liggett & Myers
Tobacco Company) and VECTOR GROUP LTD, INC.,
(f/k/a Brooke Group, Ltd) a foreign corporation,

                                    Defendants.


                TRANSCRIPT OF TRIAL PROCEEDINGS
                          VOLUME 21
                      (Pages 2781 - 3035)


        DATE TAKEN: Thursday, June 21, 2018
        TIME:      11:02 a.m. - 5:17 p.m.
        PLACE:     Miami-Dade County Courthouse
                   Courtroom 2-1
                   73 West Flagler Street
                   Miami, Florida 33130
        BEFORE:    BARBARA ARECES, Circuit Judge



            This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:

                BARBIE GALLO, RMR-CRR
                www.phippsreporting.com
                888-811-3408

---

2782

APPEARANCES:

On behalf of the Plaintiff:

    THE ALVAREZ LAW FIRM
    Attorneys for Plaintiff
    355 Palermo Avenue
    Coral Gables, FL 33134
    (305)444-7675
    BY: ALEX ALVAREZ, ESQUIRE
        PHILLIP HOLDEN, ESQUIRE
        NICK REYES, ESQUIRE
        MICHAEL ALVAREZ, ESQUIRE
    alex@talf.law
    phillip@talf.law
    nick@talf.law
    Michael@talf.law


On behalf of the Defendant, R.J. Reynolds
Tobacco Company:
    KING & SPALDING, LLP
    1180 Peachtree Street, N.E.
    Atlanta, Georgia 30309
    (404)572-4600
    BY: W. RAY PERSONS, ESQUIRE
        JAMES CONE, ESQUIRE
        SCOTT EDSON, ESQUIRE
    rpersons@kslaw.com
    jcone@kslaw.com
    sedson@kslaw.com


On behalf of the Defendant, Philip Morris USA, Inc.:
    SHOOK HARDY & BACON
    2555 Grand Blvd.
    Kansas City, Missouri 64108
    (816)474-6550
    BY: BRUCE R. TEPIKIAN, ESQUIRE
    btepikian@shb.com

---

2783

I N D E X

1   JURY INSTRUCTIONS

2   CLOSING ARGUMENTS
      BY MR. ALVAREZ
      BY MR. PERSONS
      BY MR. ALVAREZ

DEFENDANT'S OBJECTIONS RE: CLOSING SLIDES 2784

DEFENDANT'S RENEWED MOTIONS FOR PROPOSED 2806
JURY INSTRUCTIONS AND VERDICT FORM QUESTIONS
AND OBJECTIONS STATED IN CHARGE CONFERENCE

PLAINTIFF'S RENEWED MOTIONS                 2806

DEFENDANT RESTS                             2813

CLOSING ARGUMENTS BY MR. ALVAREZ            2840

CLOSING ARGUMENTS BY MR. PERSONS            2919

PLAINTIFF'S REBUTTAL CLOSING ARGUMENTS BY   2986
MR. ALVAREZ

JURY RETIRES TO DELIBERATE                  3008

JURY QUESTION                               3010

JURY QUESTION                               3019

---

2784

1   Thereupon,

2   The following proceedings resumed at 11:02 a.m.:

3                       *  *  *

4           THE COURT: All right.

5           MR. ALVAREZ: There's just a couple of

6   objections or issues that they have with some of

7   the closing slides. It's not going to take

8   long, and I think there's only a few.

9           THE COURT: All right.

10          MR. EDSON: The first one, I think, is

11  slide 5, and I have a copy that would make it

12  easier for him to put them up on the board for

13  Your Honor.

14          MR. ALVAREZ: 5.

15          THE COURT: Okay.

16          MR. EDSON: And it's just the very last

17  bullet point. His master's thesis, 1986, says

18  that smokers should switch to low-tar and

19  nicotine. Your Honor, this is the issue that

20  came up yesterday, and I have the trial

21  testimony starting at 2681, and Dr. Jaffe made

22  very clear that he wasn't proposing that he was

23  reporting what was in the literature from

24  Dr. Gori, and he wasn't, in his thesis,

25  reporting that's something people should do.

1 findings I previously read to you.
2     Punitive damages are warranted if you find
3 by clear and convincing evidence that conduct
4 causing injury to Shirley Cohen was so gross and
5 flagrant as to show a reckless disregard of
6 human life or of the safety of persons exposed
7 to the effects of such conduct, or if the
8 conduct showed such an entire lack of care that
9 the defendant must have been consciously
10 indifferent to the consequences, or the conduct
11 showed such an entire lack of care that the
12 defendant must have wantonly or recklessly
13 disregarded the safety and welfare of the
14 public, or the conduct showed such reckless
15 indifference to the rights of others as to be
16 equivalent to an intentional violation of those
17 rights.
18     The burden is on the plaintiff to prove by
19 clear and convincing evidence that punitive
20 damages may be warranted. Clear and convincing
21 evidence differs from the greater weight of the
22 evidence in that it is more compelling and
23 persuasive. As I have already instructed you,
24 greater weight of the evidence means the more
25 persuasive and convincing force and effect of

1 the entire evidence in the case.
2     In contrast, clear and convincing evidence
3 is evidence that is precise, explicit, lacking
4 in confusion, and of such weight that it
5 produces a firm belief or conviction without
6 hesitation about the matter in issue. If you
7 find for plaintiff and against R.J. Reynolds and
8 you also find that clear and convincing evidence
9 shows that the conduct of R.J. Reynolds was a
10 substantial cause of injury to Shirley Cohen and
11 that such conduct warrants punitive damages
12 under the standards I have given you, then in
13 your discretion you may determine punitive
14 damages are warranted against R.J. Reynolds.
15     In deciding whether punitive damages are
16 warranted, you may not seek to punish R.J.
17 Reynolds Tobacco Company for any harms suffered
18 by any individuals other than Shirley Cohen, nor
19 may you punish R.J. Reynolds Tobacco Company for
20 conduct that did not produce harms within the
21 state of Florida. However, you may consider
22 harms suffered by other persons not parties to
23 this lawsuit in assessing the reprehensibility
24 or wrongfulness of R.J. Reynolds Tobacco
25 Company's acts.

1     Your consideration of whether punitive
2 damages are warranted for R.J. Reynolds Tobacco
3 Company's conduct must be based on the same or
4 similar conduct which has been shown by clear
5 and convincing evidence to have caused Shirley
6 Cohen's lung cancer and death. In determining
7 whether punitive damages are warranted, you may
8 also take into consideration any mitigating
9 evidence.
10     Mitigating evidence is evidence which may
11 demonstrate there is no need to impose punitive
12 damages against R.J. Reynolds Tobacco Company.
13     That is the law you must follow in deciding
14 this case. The attorneys for the parties will
15 now present their final arguments. When they
16 are through, we'll have a few final instructions
17 about your deliberations.
18     Just as a reminder, what the attorneys say
19 during their closing argument is not evidence in
20 the case. And each side is permitted equal
21 time. I believe they're all going to -- they've
22 limited themselves to an hour and about 45
23 minutes. But the plaintiff is permitted to
24 divide its time so that it may address the
25 closing arguments of the defense in a rebuttal

1 portion. So they'll each have an hour and 45
2 minutes, and of course plaintiff goes first.
3     So whenever you're ready.
4     MR. ALVAREZ: May it please this honorable
5 court, counsel, Mr. Cohen.
6     What a journey. We met on June 5th. It's
7 now June 21st. We've been here for three weeks.
8 I told you in opening statements a few weeks ago
9 that I hope you enjoyed history because this was
10 going to be a history lesson. It was going to
11 be a history lesson in tobacco, in science, in
12 medicine, and it's a history lesson about
13 Mrs. Cohen's life. And I wish I could give you
14 college credit for it. I wish Dr. Proctor could
15 give you some college credit from Stanford or
16 from Harvard, but you definitely got a quality
17 education from some world-class experts on some
18 issues that you thought you knew about, but now
19 you know.
20     You thought you knew, but now you know.
21     So I want to go through -- there's nine
22 questions on the verdict form. The judge hasn't
23 read that to you yet, but she will when we're
24 done, but I want to go through. There's nine
25 questions you have to fill out, and I want to go

2161

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CASE NO.: 11-40815 CA 01 (23)

LESIA MOONEY, individually and as Personal
Representative of the Estate of BARBARA JUNE
MEACHAM, et al.,

    Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY, et al.,
    Defendants.
_____/

TRANSCRIPT OF TRIAL PROCEEDINGS
VOLUME 18
(Pages 2161 – 2360)

DATE TAKEN:  Monday, June 20, 2016
TIME:        9:07 a.m. - 5:25 p.m.
PLACE:     Miami-Dade County Courthouse
          73 West Flagler Street
          Miami, Florida 33130
BEFORE:    BARBARA ARECES, Circuit Judge

This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:

BARBIE GALLO, RMR-CRR
www.phippsreporting.com

---

2163

            I N D E X
        E X A M I N A T I O N S
PROCEEDINGS                PAGE
JURY INSTRUCTIONS          2166
PLAINTIFF'S CLOSING ARGUMENTS      2182
DEFENDANTS' MOTION FOR MISTRIAL     2244
DEFENDANT PHILIP MORRIS'S CLOSING ARGUMENTS  2250
DEFENDANT R.J. REYNOLDS' CLOSING ARGUMENTS  2282
PLAINTIFF'S REBUTTAL CLOSING ARGUMENTS  2312
JURY INSTRUCTIONS          2337
ALTERNATE JURORS PETERS AND MONTOYA WERE  2346
EXCUSED
DEFENDANTS RENEWED MOTIONS FOR DIRECTED  2348
VERDICT AND MOTIONS FOR MISTRIAL

        E X H I B I T S
NUMBER       DESCRIPTION       PAGE
Exhibit 11000 Withdrawn from evidence    2164
Exhibit 11000 Re-entered into evidence   2352

---

2162

APPEARANCES:
On behalf of the Plaintiffs:
   THE FERRARO LAW FIRM, P.A.
   600 Brickell Avenue
   Suite 3800
   Miami, Florida 33131
   (305)375-0111
   BY:  ALLAN B. KAISER, ESQUIRE
       LORA DAMIANI, ESQUIRE
   abk@ferrarolaw.com
   lrd@ferrarolaw.com

On behalf of the Philip Morris USA, INC.:
   SHOOK, HARDY & BACON, LLP
   Miami Center, Suite 3200
   201 South Biscayne Boulevard
   Miami, Florida 33131-4332
   (305)358-5171
   BY:  FRANK CRUZ-ALVAREZ, ESQUIRE
       BECK REDDEN
   1221 McKinney Street
   Suite 4500
   Houston, Texas 77010
   (713)951-6208
   BY:  KAT GALLAGHER, ESQUIRE
   kgallagher@beckredden.com
   SHOOK, HARDY & BACON, LLP
   Two Commerce Square
   2001 Market Street
   Suite 3000
   Philadelphia, Pennsylvania 19103-7044
   (215)575-3120
   BY:  JOHN M. LYONS, ESQUIRE
   jly ons@shb.com

   SHOOK, HARDY & BACON, LLP
   100 North Tampa Street
   Suite 2900
   Tampa, Florida 33602-5810
   (813)202-7100
   BY:  LAURA K. WHITMORE, ESQUIRE
   lwhitmore@shb.com

---

2164

1   (Thereupon, the following proceedings resumed at

2  9:07 a.m.:)

3     THE CLERK:  I have asked the court reporter

4  to retrieve Exhibit 11,000 from the record.  The

5  compromise was that we were going to have it

6  here in the morning.  It is not.  We are about

7  to start opening statements, so I'm going to ask

8  the court reporter to retrieve the Exhibit from

9  the list of admitted Exhibits.

10    When the disk arrive in my hands, then I

11  will introduce it again as an Exhibit.  Okay?

12     MS. DAMIANI:  Okay.

13  (A discussion was held off the record.)

14     THE COURT:  Morning, everyone.  Please be

15  seated.  All right.  Are we ready for the jury?

16     MR. CRUZ-ALVAREZ:  Can I just say one thing,

17  Judge?

18     THE COURT:  Sure.

19     MR. CRUZ-ALVAREZ:  Your Honor, over the

20  weekend we had filed a motion in limine.  I'm

21  not asking to have any argument on it.  It's

22  simply – it was filed for a couple of purposes.

23  One was to preserve our position on what we

24  believe are the consequences of the directed

25  verdict that Your Honor entered.

49aba1ca-586f-4bf9-a85d-c139b1c7

2177

greater weight of the evidence shows that Miss Meacham's surviving spouse, Don Meacham, sustained as a result of Miss Meacham small cell lung cancer and death.

In determining any damages to be awarded to plaintiff for the benefit of Mr. Meacham, you shall consider certain elements of damage for which there is no exact standard measurement for fixing compensation to be awarded.

Any such award should be fair and just in light of Mr. Meacham's loss of Miss Meacham's companionship and protection and his mental pain and suffering as a result of Miss Meacham's small cell lung cancer and death.

In determining the duration of such losses, you may consider the joint life expectancy of Mr. Meacham and Mrs. Meacham together with the other evidence in the case. In determining the total amount of damages, if any, to be awarded to Mr. Meacham as a result of Miss Meacham's death, you should not make any reduction because of the responsibility you have charged to Miss Meacham. The court will enter a judgment based on your verdict and in entering judgment, will reduce the total amount of damages by the

2178

percentage of responsibility which you find as chargeable to Miss Meacham.

In determining how long Miss Meacham would have lived had she lived out her normal life, you may consider her life expectancy at the time of her death. The mortality tables received in evidence may be considered in determining how long she may have been expected to live. Mortality tables are not binding on you. They may be considered together with the other evidence in the case bearing in mind her health, age and physical condition before her small cell lung cancer and death in determining the probable length of her life.

There is an additional claim in this case that you must decide. If you find for the plaintiff and against one or more defendants. you must decide whether in addition to compensatory damages punitive damages are warranted as punishment to one or more of the defendants as a deterrent to others.

The trial of punitive damages issue is divided into two parts. In the first part you will decide whether the conduct of each defendant was such that punitive damages are

2179

warranted. If you decide that punitive damages are warranted, you will then proceed to the second part of that issue during which the parties may present additional evidence and argument on the issue of punitive damages.

I will then give you additional instructions relating to punitive damages, after which you will decide whether in your discretion punitive damages will be assessed, and if so, the amount.

The burden is on the plaintiff to prove that punitive damages are warranted in this case by clear and convincing evidence. Clear and convincing evidence differs from the greater weight of the evidence in that it is more compelling and persuasive. As I have already instructed you, greater weight means the more persuasive and convincing force and effect of the evidence in the case.

In contrast, clear and convincing evidence is evidence that is precise, explicit, lacking in confusion and of such weight that it produces a firm belief or conviction without hesitation about the matter at issue. For the purposes of determining whether punitive damages are warranted against either defendant, you may not

2180

consider in any way the findings regarding defendant's conduct from the prior lawsuit that I described to you earlier. Plaintiff claims punitive damages should be awarded against R.J. Reynolds Tobacco Company and Philip Morris USA, Inc. for their negligence and strict liability.

Punitive damages are warranted if you find by clear and convincing evidence that, one, the conduct causing Miss Meacham's small cell lung cancer and death was so gross and flagrant as to show a reckless disregard of life or of the safety of persons exposed to the effects of such conduct; or, two, the conduct showed such an entire lack of care, the defendant must have been consciously indifferent to consequences; or, three, the conduct showed such an entire lack of care that the defendant must have wantonly or recklessly disregarded the safety and welfare of the public; or, four, the conduct showed such reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights.

If you find for plaintiff and against one or more defendants and you also find that clear and convincing evidence shows that the conduct of

49aba1ca-586f-4bf9-a85d-c139b1c7

2181

1  one or more defendants were the substantial
2  cause of Miss Meacham's small cell lung cancer
3  and death and that such conduct warrants the
4  standards I have given you, then in your
5  discretion you may determine punitive damages
6  are warranted against one or more or both
7  defendants.
8      In determining whether punitive damages are
9  warranted against a defendant, you may not seek
10  to punish the defendant for any conduct except
11  for conduct of the defendant underlying
12  plaintiff's negligence and/or strict liability
13  claims.
14      In determining whether punitive damages are
15  warranted against a defendant, you may only seek
16  to punish the defendant for that defendant's own
17  conduct, and you may not consider conduct by any
18  other tobacco company or entity.  In deciding
19  whether punitive damages are warranted, you may
20  not seek to punish defendants for any harm
21  suffered by any individuals other than
22  Barbara Meacham.
23      However, you may consider harm suffered by
24  other persons not parties to this lawsuit in
25  assessing the reprehensibility or wrongfulness

2182

1  of defendants' acts.  Your consideration whether
2  punitive damages are warranted for defendants'
3  conduct must be based on the same or similar
4  conduct which has been shown by clear and
5  convincing evidence to have caused
6  Miss Meacham's small cell lung cancer and death.
7      In determining whether punitive damages are
8  warranted, you may also take into consideration
9  any mitigating evidence.  Mitigating evidence is
10  evidence which will demonstrate there is no need
11  to impose punitive damages against the
12  defendant.
13      That is the law you must follow in deciding
14  this case.
15      The attorneys for the parties will now
16  present their final arguments.  When they are
17  through, I will have a few final instructions
18  about your deliberations.
19      So as usual, we will start with the
20  plaintiff.  And, remember, what the attorneys
21  say in closing arguments is not evidence in the
22  case.
23      Whenever you're ready.
24      MR. KAISER:  Thank you, Your Honor.  May it
25  please the court, ladies and gentlemen of the

2183

1  jury, good morning.
2      THE PANEL:  Good morning.
3      MR. KAISER:  I think I speak for both
4  parties in this case when I say, thank you very
5  much for sitting as jurors over these past few
6  weeks.  Thank you for being attentive.  Thank
7  you for listening.  Thank you for taking the
8  time out of your lives to join us here, because
9  without you, our system wouldn't work, and for
10  that, we're very much appreciative.
11      What I'd like to do, ladies and gentlemen,
12  is you're going to have a verdict form at the
13  end of this case, and I want to track that
14  verdict form because there's going to be certain
15  questions that will be asked of you that you
16  have to answer.  And so I'm going to start from
17  the beginning, and I'm going to discuss the
18  evidence and then suggest based on the evidence
19  what those answers should be.
20      And so this form — this is the verdict form
21  that you're going to see.  And the first
22  question that you are going to be asked is, "Was
23  Barbara Meacham addicted to cigarettes
24  containing nicotine?"
25      Remember, this is this whole idea of class

2184

1  membership.  So this first question is, Was she
2  addicted to the nicotine in the cigarettes that
3  she smoked.
4      And so you heard the testimony from
5  Dr. Prochaska from Stanford University.  And
6  what was it that she told you?  Remember she had
7  read all of the deposition testimony, reviewed
8  the medical records, and she told you, for
9  example, that Barbara Meacham smoked more
10  cigarettes than she intended to smoke, and that
11  was a consideration in assessing whether or not
12  she was addicted, whether or not she fit the
13  criteria in this Diagnostic and Statistical
14  Manual 5 that she referred to as the DSM-5.
15      And she told you that this idea of smoking
16  more than intended, an example of that is on the
17  multiple times that she tried to quit smoking,
18  her intent was not to smoke anymore.  But we've
19  heard that she was unsuccessful, so obviously
20  when she began to smoke, she was smoking more
21  than she intended when she stopped.
22      You heard evidence of hazardous use of
23  cigarettes by Barbara Meacham.  What do I mean
24  by that?  There was testimony that
25  Barbara Meacham smoked in bed.  That's a

49aba1ca-586f-4bf9-a85d-c139b1c7

Tate v PM                    July 7, 2010

Page 2302

```
      IN THE CIRCUIT COURT FOR THE 17TH JUDICIAL CIRCUIT
            IN AND FOR BROWARD COUNTY, FLORIDA

                  COMPLEX CIVIL DIVISION

                  CASE NO. 08-80000 (19)


IN RE:  ENGLE PROGENY CASES

TOBACCO LITIGATION


Pertains to:  Ellen Tate, 2007-CV-021723

_____/



        TRIAL - VOLUME 19 (Pages 2302 - 2345)



             Wednesday, July 7, 2010

             Scheduled for 1:30 p.m.

             1:36 p.m. - 5:48 p.m.



        PROCEEDINGS BEFORE THE HONORABLE

             JEFFREY E. STREITFELD


Broward County Courthouse

201 Southeast 6th Street

Courtroom 970

Fort Lauderdale, Florida 33301

Broward County
```

www.mydepos.com Taylor, Jonovic, White, Gendron & Kircher-Echarte   305.358.9047
www.myreporters.com   Florida Realtime Reporting   Fax 305.371.3460

9f31c39b-e5c5-47ea-8747-bc9dc080

Page 2319

1   cause of Ms. Tate's COPD/emphysema and you find in
2   favor of Ms. Tate on one or more of her other
3   claims, then you will consider comparative
4   responsibility.
5       I instruct you that Ms. Tate has admitted that
6   she shares some measure of responsibility in
7   combination with the acts or omissions of
8   Philip Morris USA.
9       You've heard evidence regarding the conduct of
10  Ms. Tate and the conduct of Philip Morris USA.  A
11  party's conduct is a legal cause of injury if it
12  directly and natural -- I know you can't believe
13  I'm saying this to you again -- a party's conduct
14  is a legal cause of loss, injury or damage if it
15  directly or in natural and continuous sequence
16  produces or contributes substantially to producing
17  such loss, injury or damage so that it can
18  reasonably be said that but for the conduct the
19  injury would not have occurred.
20      Accordingly, you must determine and write on
21  the verdict form what percentage of the total
22  responsibility for Ms. Tate's injuries you find
23  chargeable to Philip Morris USA and to Ms. Tate.
24      If your verdict is for Philip Morris USA on
25  all of Ms. Tate's claims, then you will not

Page 2320

1   consider the matter of damages.  But if your
2   verdict is that addiction was a legal cause of
3   Ms. Tate's COPD/emphysema, and you find in favor of
4   Ms. Tate on one or more of her other claims, you
5   should award her an amount of money that the
6   greater weight of the evidence shows will fairly
7   and adequately compensate her for her loss, injury
8   or damage, including any damage that she is
9   reasonably certain to incur or experience in the
10  future.  You shall consider the following elements:
11      Any bodily injury sustained by Ms. Tate and
12  any resulting pain and suffering, disability or
13  physical impairment, mental anguish, inconvenience
14  or loss of capacity for the enjoyment of life
15  experienced in the past or to be experienced in the
16  future.
17      Now, there is no exact standard for measuring
18  this type of damage.  The amount should be fair and
19  just in light of the evidence.
20      In determining the total amount of damages,
21  you should not make any reduction because of the
22  responsibility that you charge to Ms. Tate.  I will
23  enter a judgment based on your verdict.  And in
24  entering that judgment, I will reduce the total
25  amount of damages by the percentage of

Page 2321

1   responsibility which you find is caused by
2   Ms. Tate.
3       If the greater weight of the evidence shows
4   that Ms. Tate has been permanently injured, you may
5   consider her life expectancy.  The mortality table
6   that was read to you in evidence may be considered
7   in determining how long Ms. Tate may be expected to
8   live.  These tables are not binding upon you, but
9   may be considered altogether with all of the other
10  evidence in this case bearing on Ms. Tate's health,
11  age and physical condition before and after the
12  injury in question in determining the probable
13  length of her life.
14      We now turn to the issue of punitive damages.
15  You will consider punitive damages if and only if
16  you find that Ellen Tate reasonably relied to her
17  detriment on a statement that she received from
18  Philip Morris USA that concealed or omitted
19  material information about the health effects or
20  addictive nature of smoking or Ms. Tate reasonably
21  relied to her detriment on an act made in
22  furtherance of Philip Morris USA's agreement to
23  conceal or omit material information and such
24  reliance was a legal cause of Ms. Tate's loss,
25  injury or damage.

Page 2322

1       If you find in Ms. Tate's favor on one or more
2   of these claims, then you should consider whether,
3   in addition to compensatory damages, punitive
4   damages are warranted against Philip Morris USA in
5   the circumstances of this case as punishment for
6   conduct causing Ms. Tate's loss, injury or damage
7   and as a deterrent to others.
8       Any such damages would be in addition to any
9   compensatory damages that you may award.  The
10  burden on Ms. Tate to prove this issue is by clear
11  and convincing evidence as to this defendant.
12      You may not find the punitive damages are
13  warranted against Philip Morris based upon
14  Ellen Tate's claims for negligence or product
15  defect.
16      Punitive damages are warranted if you find by
17  clear and convincing evidence that Philip Morris
18  USA's conduct causing loss, injury or damage to
19  Ms. Tate was so gross and flagrant as to show a
20  reckless disregard of human life or for the safety
21  of Ellen Tate; or Philip Morris USA's conduct
22  showed such an entire lack of care that a
23  high-ranking official of Philip Morris USA must
24  have been consciously indifferent to the
25  consequences; or Philip Morris USA's conduct showed

6  (Pages 2319 to 2322)

www.mydepos.com   Taylor, Jonovic, White, Gendron & Kircher-Echarte   305.358.9047
www.myreporters.com   Florida Realtime Reporting        Fax 305.371.3460

9f31c39b-e5c5-47ea-8747-bc9dc080

Tate v PM                                           July 7, 2010

Page 2323

1   such an entire lack of care that Philip Morris USA
2   must have wantonly or recklessly disregarded the
3   safety and welfare of the public; or Philip Morris
4   USA's conduct showed such reckless indifference to
5   the rights of Ellen Tate as to be equivalent to an
6   intentional violation of those rights.
7       Now, with regard to a definition of clear and
8   convincing evidence, it differs from greater weight
9   of the evidence, in that it is more compelling and
10  persuasive. As I've already instructed you,
11  greater weight of the evidence means the more
12  persuasive and convincing force and effect of the
13  entire evidence in the case.
14      In contrast, clear and convincing evidence is
15  evidence that is precise, explicit, lacking in
16  confusion, and of such great weight that it
17  produces a firm belief or conviction without
18  hesitation about the matter in issue.
19      For purposes of determining whether the
20  plaintiff, Ms. Tate, is entitled to punitive
21  damages or, if so, the amount of punitive damages,
22  you may not consider in any way the findings
23  regarding Philip Morris USA's conduct from the
24  prior lawsuit that I described to you earlier.
25      You've heard evidence concerning harms

Page 2324

1   suffered by persons who are not parties to this
2   case. You may not award punitive damages on behalf
3   of those other individuals. Any punitive damages
4   you award must represent the punishment you deem
5   appropriate for causing Ms. Tate's injuries. Other
6   individuals who have been harmed can bring their
7   own suits and seek compensatory and punitive
8   damages in their own right.
9       In determining whether punitive damages are
10  warranted and, if so, in determining the amount of
11  any such damages, you may not seek to punish
12  Philip Morris USA for any harms inflicted upon
13  Ms. Tate except those caused by Philip Morris'
14  punishable conduct.
15      Conduct that is incident to a proper response
16  to litigation, whether in the courtroom or outside
17  of it, is accorded legal protection. Actions taken
18  solely to defend against litigation cannot form a
19  basis on which to impose punitive damages in this
20  action.
21      If you decide that punitive damages are
22  warranted against Philip Morris USA, you will
23  decide the amount of punitive damages, if any, to
24  be assessed as punishment and as a deterrent to
25  others. This amount will be in addition to the

Page 2325

1   compensatory damages that you previously awarded.
2       In making this determination, you should
3   consider the following: First, the nature, extent
4   and degree of misconduct and the related
5   circumstances. You may not, however, impose
6   punitive damages to punish Philip Morris USA for
7   harms caused to others whose cases are not before
8   you. You may punish Philip Morris USA only for
9   harm done to Ms. Tate by the specific conduct that
10  formed the basis for your finding that punitive
11  damages are warranted.
12      Next: The conduct and actions of others,
13  including Ellen Tate, any fault you attribute to
14  Ms. Tate.
15      And you shall consider the extent to which
16  Philip Morris USA's conduct has changed from the
17  conduct on which you based your determination that
18  punitive damages were warranted and the extent to
19  which circumstances have changed.
20      However, you may not award an amount that
21  would financially destroy Philip Morris USA.
22      And you may in your discretion decline to
23  assess punitive damages.
24      If you decide to award punitive damages, the
25  amount should be no greater than the amount that

Page 2326

1   you find necessary to punish Philip Morris USA for
2   the harm caused to Ms. Tate and to deter
3   Philip Morris and others similarly situated from
4   engaging in such misconduct in the future.
5       In determining whether punitive damages are
6   warranted and, if so, in determining the amount of
7   any such damages, you may not seek to punish
8   Philip Morris USA for any conduct to the extent
9   that it produced harms or had effect outside the
10  State of Florida.
11      You should also take into consideration any
12  mitigating evidence. Mitigating evidence is
13  evidence which may demonstrate that there is no
14  need for punitive damages or that a reduced amount
15  of punitive damages should be imposed against
16  Philip Morris USA.
17      In considering whether the conduct causing
18  damage to Ms. Tate warrants punitive damages and,
19  if so, in what amount, you should evaluate that
20  conduct in relation to the conduct and actions of
21  others, including Ms. Tate, and the fault that you
22  attribute to Ms. Tate. You should not consider
23  Philip Morris USA's conduct in the abstract.
24      Now, members of the jury, you have now heard
25  all of my instructions to you on the law, you've

7 (Pages 2323 to 2326)

9f31c39b-e5c5-47ea-8747-bc9dc080

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

COMPLEX CIVIL DIVISION

CASE NO. 08-80000(19)

JUDGE JEFFREY E. STREITFELD


IN RE: ENGLE PROGENY CASES
TOBACCO LITIGATION

Pertains to: COHEN, 2007-CV 11515(19)
_____/



VOLUME 25 — Pages 2957 to 3133



The above entitled cause came on for jury trial

before the Honorable Jeffrey E. Streitfeld, Judge of

the above styled court, on Tuesday, March 23, 2010,

at the Broward County Courthouse, 201 S.E. 6th

Street, Room 970, Fort Lauderdale, Florida,

commencing at 9:00 a.m.


Reported by:   Kimberly Fontalvo, RPR, CLNR,
               Notary Public, State of Florida

Page 3118

1  detriment on a statement that he received from
2  a Defendant, that concealed or omitted material
3  information about the health effects or
4  addictive nature of smoking, or you find that
5  Mr. Cohen reasonably relied to his detriment on
6  a statement made in furtherance of a
7  Defendant's agreement to conceal or omit
8  material information, and such reliance was a
9  legal cause of Nathan Cohen's death.
10     If you find in favor of the Plaintiff,
11 Mrs. Cohen, on one of these claims as to a
12 Defendant, then you should consider whether in
13 addition to compensatory damages, punitive
14 damages are warranted against that Defendant in
15 the circumstances of this case as punishment
16 for conduct causing Mr. Cohen's death and as a
17 deterrent to others.
18     Punitive damages are warranted against a
19 Defendant if you find by clear and convincing
20 evidence that the conduct causing damage to
21 Nathan Cohen was so gross and flagrant as to
22 show a reckless disregard of the safety of
23 Nathan Cohen, or the conduct causing damage to
24 Nathan Cohen showed such an entire lack of care
25 that a high ranking official of the Defendant

Page 3119

1  must have been consciously indifferent to the
2  consequences to Nathan Cohen, or the conduct
3  causing damage to Nathan Cohen showed such an
4  entire lack of care that a high ranking
5  official of the Defendant must have wantonly or
6  recklessly disregarded the safety and welfare
7  of Nathan Cohen, or the conduct showed such
8  reckless indifference to the rights of Nathan
9  Cohen as to be equivalent to an intentional
10 violation of those rights.
11     Now, you will notice that with some
12 emphasis I mentioned these issues are to be
13 decided by clear and convincing evidence.
14 Clear and convincing evidence differs from the
15 greater weight of the evidence in that it is
16 more compelling and persuasive.
17     As I've told you, greater weight of the
18 evidence means the more the more persuasive and
19 convincing force and effect of the entire
20 evidence in this case.
21     In contrast, clear and convincing evidence
22 is evidence that is precise, explicit, lacking
23 in confusion, and of such weight that it
24 produces a firm belief or conviction without
25 hesitation about the matter in issue.

Page 3120

1      For purposes of determining whether
2  Mrs. Cohen is entitled to punitive damages or
3  if so the amount of punitive damages, you may
4  not consider in any way the findings regarding
5  the Defendants' conduct from the prior lawsuit
6  that I described to you earlier.
7      In determining whether punitive damages
8  are warranted and if so in determining the
9  amount of any such damages, you may not seek to
10 punish a Defendant for any harms suffered by
11 any persons other than Nathan Cohen.
12     In determining whether punitive damages
13 are warranted against the Defendant and if so
14 in determining the amount of any such damages,
15 you may not seek to punish a Defendant for any
16 harm inflicted upon Nathan Cohen, except those
17 caused by that Defendant's punishable conduct.
18     Conduct that is incident to a proper
19 response to litigation, whether in the
20 courtroom or outside of it, is afforded legal
21 protection. Actions taken solely to defend
22 against litigation cannot form a basis on which
23 to impose punitive damages in this action.
24     If you find that punitive damages are
25 warranted against a Defendant, you will

Page 3121

1  determine by the greater weight of the evidence
2  the amount of punitive damages, if any, to be
3  assessed against that Defendant as punishment
4  and as a deterrent to others. This amount will
5  be in addition to the compensatory damages you
6  previously have awarded.
7      In making this determination, you should
8  consider the nature, degree and extent of this
9  conduct and the related circumstances. You may
10 not, however, impose punitive damages to punish
11 the Defendants for harms caused to others whose
12 cases are not before you. You may punish the
13 Defendant only for harm done to Nathan Cohen by
14 the specific conduct that formed the basis for
15 your finding that punitive damages are
16 warranted.
17     You shall also consider the conduct and
18 acts of others, including Nathan Cohen, and any
19 fault that you attribute to Nathan Cohen, and
20 you should consider the extent to which the
21 Defendants' conduct has changed from the
22 conduct on which you based your determination
23 that punitive damages were warranted, and the
24 extent to which circumstances have changed.
25     You may, in your discretion, decline to

Page 1809

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 50-2011-CA-005250 XXXX MB

CYNTHIA McFALL RIDLEY, as
Personal Representative of the
ESTATE OF NORBERT McFALL,
deceased,
      Plaintiff,
vs.
R.J. REYNOLDS TOBACCO COMPANY,
      Defendant.
_____/

TRANSCRIPT OF JURY TRIAL PROCEEDINGS

VOLUME 15 (Pages 1809 - 1998)

DATE TAKEN:  October 17, 2018
TIME:    (1:00) 12:59 p.m. - 6:27 p.m.
PLACE:    Palm Beach County Courthouse
      205 North Dixie Highway
      West Palm Beach, Florida
BEFORE:    Cymonie Rowe, Circuit Judge.

This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:
Gina Rodriguez, RPR, CRR, CCP

---

Page 1810

1  APPEARANCES:
2
3  On behalf of Plaintiff:
4    THE FERRARO LAW FIRM
    600 Brickell Avenue
5    Suite 3800
    Miami, Florida 33131
6    (305)375-0111
    BY: ALLAN B. KAISER, ESQUIRE
7    abk@ferrarolaw.com
    BY: DICK M. ORTEGA, ESQUIRE
8    dmo@ferrarolaw.com
9
  On behalf of Defendant R.J. Reynolds Tobacco
10 Company:
11   KING & SPALDING, LLP
    300 South Tryon Street
12   Suite 1700
    Charlotte, North Carolina 28202
13   (704)503-2600
    BY: JEFFREY L. FURR, ESQUIRE
14   jfurr@kslaw.com
15   KING & SPALDING, LLP
    1180 Peachtree Street, N.E.
16   Atlanta, Georgia 30309
    (404)572-4600
17   BY: PHILIP R. GREEN, ESQUIRE
    pgreen@kslaw.com
18   BY: SPENCER M. DIAMOND, ESQUIRE
    sdiamond@kslaw.com
19
20
21
22
23
24
25

---

Page 1811

1            I N D E X
2
3                Page
4  Renewed directed verdict motions    1814
5  Defense rests    1815
6  Jury instructions    1815
7  Closing Statement  by Mr. Kaiser    1836
8  Closing Statement  by Mr. Furr    1893
9  Closing Statement  by Mr. Kaiser    1960
10 Jury instructions    1977
11 Verdict    1993
12 Jury polled    1993
13
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 1812

1   PLAINTIFF EXHIBITS MARKED IN EVIDENCE
2              Page
3  Exhibit 22    1813
4  Exhibit 31    1813
5  Exhibit 32    1813
6  Exhibit 62    1813
7  Exhibit 66-B    1813
8  Exhibit 63    1813
9  Exhibit 67    1813
10 Exhibit 71    1813
11 Exhibit 79    1813
12 Exhibit 132    1813
13 Exhibit 136    1813
14 Exhibit 5000    1813
15 Exhibit 5001    1813
16 Exhibit 5002    1813
17 Exhibit 5003    1813
18 Exhibit 5007    1813
19 Exhibit 5008    1813
20 Exhibit 5010    1813
21 Exhibit 5011    1813
22
23
24
25

Electronically signed by Gina Rodriquez (201-182-126-9514)    ffc68730-fc58-4c74-803b-08222939f

Page 1829

1  form the percentage of fault on the part of
2  Norbert McFall and the percentage of fault, if
3  any, that you charge to R.J. Reynolds for
4  legally causing Mr. McFall's lung cancer and
5  death.
6      You have heard evidence regarding the
7  smoking history and conduct of Mr. McFall and
8  the conduct of Defendant. A party's conduct was
9  a legal cause of injuries and death if it
10  directly, and in natural and continuous
11  sequence, produced or substantially -- I'm
12  sorry -- produced or contributed substantially
13  to producing such injuries and death so that it
14  can be reasonably be said that but for the
15  conduct, the injuries and death would not have
16  occurred.
17      Your determination of Defendant's fault, if
18  any, must be based solely on the conduct by
19  Defendant that was a legal cause of Mr. McFall's
20  lung cancer and death. In making this
21  determination, you should not consider any
22  alleged conduct by Defendant if you find -- I'm
23  sorry -- any alleged conduct by Defendant that
24  you find was not a legal cause of Mr. McFall's
25  lung cancer and death.

Page 1830

1      If your verdict is for Defendant, you will
2  not consider the matter of damages. If,
3  however, you find for Plaintiff on one or more
4  of her claims, and you find that lung cancer was
5  a legal cause of Mr. McFall's death, then you
6  will consider only the damages available to
7  Plaintiff on her wrongful death claim.
8      In that event, you should determine and
9  write on the verdict form, in dollars, the total
10  amount of loss, injury, or damage which the
11  greater weight of the evidence shows that
12  Cynthia Ridley sustained as a result of Norbert
13  McFall's lung cancer and death.
14      In determining any damages to be awarded,
15  you shall consider certain additional elements
16  of damage for which there is no exact standard
17  for fixing the compensation to be awarded. Any
18  such award should be fair and just in light of
19  the evidence regarding the following elements:
20      The lose by Cynthia Ridley of parental
21  companionship, instruction, and guidance, and
22  her mental pain and suffering as a result of
23  Norbert McFall's lung cancer and death from the
24  date of the injury.
25      In determining the duration of those

Page 1831

1  losses, you may consider the joint life
2  expectancy of Norbert McFall and Cynthia Ridley
3  together with the other evidence in the case.
4      The joint life expectancy is that period of
5  time when both Norbert McFall and Cynthia Ridley
6  would have remained alive. The mortality tables
7  received in evidence may be considered, together
8  with the other evidence in this case, in
9  determining how long each may have been expected
10  to live.
11      On the other hand, if you find for
12  Plaintiff on one or more of her claims, and you
13  find that the lung – that lung cancer was not a
14  legal cause of Mr. McFall's death, then you will
15  only consider the damages available to Plaintiff
16  on her alternative survival claim.
17      In that event, you shall determine and
18  write on the verdict form, in dollars, the total
19  amount of damages which the greater weight of
20  the evidence shows will fairly and adequately
21  compensate the estate of Norbert McFall for the
22  injuries suffered by Norbert McFall. You shall
23  consider the following evidence:
24      Any bodily injury sustained by Norbert
25  McFall, and any resulting pain and suffering

Page 1832

1  experienced by Norbert McFall as a result of his
2  lung cancer. There is no exact standard for
3  measuring such damage. The amount should be
4  fair and just in the light of the evidence.
5      In determining the total amount of damages
6  to Cynthia Ridley as a result of Norbert
7  McFall's lung cancer and death, you should not
8  make any reduction because of the fault of
9  Norbert McFall. The Court will enter a judgment
10  based on your verdict, and in entering judgment,
11  will reduce the total amount of damages by the
12  percentage of negligence which you find was
13  caused by Norbert McFall.
14      If you find for Plaintiff on her claims for
15  concealment and agreement to conceal, the amount
16  of compensatory damages awarded to Plaintiff
17  will not be reduced by Mr. McFall's fault, if
18  any.
19      There is an additional claim in this case
20  that you must decide. If you find for Plaintiff
21  and against Defendant, you must decide whether
22  in addiction to compensatory damages, punitive
23  damages are warranted as punishment to Defendant
24  and as a deterrent to others. Any such damages
25  would be in addition to any compensatory damages

6 (Pages 1829 to 1832)

Page 1833

1  you may award.
2      The trial of the punitive damages issue is
3  divided into two parts.  In this first part, you
4  will decide whether the conduct of Defendant is
5  such that punitive damages are warranted.  If
6  you decide that punitive damages are warranted,
7  we will proceed to the second part of that
8  issue, during which the parties may present
9  additional evidence and argument on the issue of
10  punitive damages.  I will then give you
11  additional instructions, after which you will
12  decide whether, in your discretion, punitive
13  damages will be assessed, and if so, the amount.
14      The burden is on Plaintiff to prove by
15  clear and convincing evidence that punitive
16  damages may be warranted.  Clear and convincing
17  evidence differs from the greater weight of the
18  evidence in that it is more compelling and
19  persuasive.
20      As I've already instructed you, greater
21  weight of the evidence means the more persuasive
22  and convincing force and effect of the entire
23  evidence in the case.  In contrast, clear and
24  convincing evidence is the evidence that is
25  precise, explicit, lacking in confusion; and of

Page 1834

1  such weight that it produces a firm belief or
2  conviction, without hesitation, about the matter
3  in issue.
4      Punitive damages are warranted if you find
5  by clear and convincing evidence that:
6      1.  The conduct causing Norbert McFall's
7  lung cancer and death was so gross and flagrant
8  as to show a reckless disregard of human life or
9  of the safety of persons exposed to the effects
10  of such conduct;
11      Or 2.  The conduct showed an entire lack of
12  care, that Defendant must have been consciously
13  indifferent to the consequences;
14      Or 3.  The conduct showed an entire lack of
15  care, that Defendant must have wantonly or
16  recklessly disregarded the safety and welfare of
17  the public;
18      Or 4.  The conduct showed such reckless
19  indifference to the rights of others as to be
20  equivalent to an intentional violation of those
21  rights.
22      If you find for Plaintiff and against
23  Defendant, and you also find that clear and
24  convincing evidence shows that the conduct of
25  Defendant was a substantial cause of

Page 1835

1  Mr. McFall's lung cancer and death, and that
2  such conduct warrants punitive damages under the
3  standards I have given you, then in your
4  discretion you may determine punitive damages
5  are warranted against Defendant.
6      In deciding whether punitive damages are
7  warranted, you may not seek to punish Defendant
8  for any harms suffered by any individuals other
9  than Mr. McFall.  However, you may consider
10  harms suffered by other persons not parties to
11  this lawsuit in assessing the reprehensibility
12  or wrongfulness of Defendant's acts.  That
13  consideration must be based on the same or
14  similar conduct to that which has been shown by
15  clear and convincing evidence to have caused
16  Mr. McFall's lung cancer and death.
17      For purposes of determining whether
18  punitive damages are warranted against
19  Defendant, and if so, the amount of punitive
20  damages, you may not consider in any way the
21  findings regarding Defendant's conduct that I
22  described earlier.
23      In determining whether punitive damages are
24  warranted, you may also take into consideration
25  any mitigating evidence.  Mitigating evidence is

Page 1836

1  evidence which may demonstrate there is no need
2  to impose punitive damages against Defendant.
3      That is the law you must follow in deciding
4  the case.  The attorneys for the parties will
5  now present their final arguments.  When they
6  are through, I will have some final instructions
7  about your deliberations.
8      The parties each have equal time.
9  Plaintiff begins first, and he also has an
10  opportunity to present rebuttal argument if he
11  chooses.
12      Mr. Kaiser, you may proceed.
13          CLOSING STATEMENT
14      MR. KAISER:  May it please the Court,
15  Counsel.  Ladies and gentlemen of the jury, good
16  afternoon.
17      We thank people who serve in the military
18  for their service, and we thank people who serve
19  on a jury for their service, and I thank you all
20  for your service.  We appreciate your
21  attentiveness, your time, and without your
22  service we wouldn't have the system that we have
23  at work.  So thank you very much.
24      What I want to do is move the podium.
25      We started off it seems like weeks ago with

7 (Pages 1833 to 1836)

## Page 2532

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 50 2016 CA 008532 XXXX MB

JULIE ADAMSON, as Personal
Representative of the Estate of
JACKLYN ADAMSON,
    Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY,
    Defendant.
_____/

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
VOLUME 10 (Pages 2532 - 2981)

DATE TAKEN: November 20, 2017
TIME:    8:38 a.m. - 7:04 p.m.
PLACE:    Palm Beach County Courthouse
    205 N. Dixie Highway
    Courtroom 9C
BEFORE:    MEENU SASSER, Circuit Judge

This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:
Gina Rodriguez, RPR, CRR, CCP

## Page 2533

APPEARANCES:
On behalf of Plaintiff:
  MORGAN & MORGAN
  810 Broadway
  Suite 105
  Nashville, Tennessee 37203
  (615)490-0944
  BY: KATHRYN E. BARNETT, ESQUIRE
  kbarnett@forthepeople.com
  MORGAN & MORGAN
  76 South Laura Street
  Suite 1100
  Jacksonville, Florida 32202
  (904)398-2722
  BY: KATHERINE M. MASSA, ESQUIRE
  kmassa@forthepeople.com
  BY: ANTONIO LUCIANO, ESQUIRE
  aluciano@forthepeople.com
  MORGAN & MORGAN
  515 North Flagler Drive
  Suite 2125
  West Palm Beach, Florida 33401
  (561) 227-5858
  BY: ALEX BRAUNSTEIN, ESQUIRE
  abraunstein@forthepeople.com
  BRANNOCK & HUMPHRIES
  1111 West Cass Street, Suite 200
  Tampa, Florida 33606
  BY: CELENE H. HUMPHRIES, ESQUIRE
  chumphries@BHAppeals.com
  BY: MAEGAN PEEK LUKA, ESQUIRE
  mluka@bhappeals.com
On behalf of Defendant R.J. Reynolds Tobacco
Company:
  KING & SPALDING, LLP
  1180 Peachtree Street, N.E.
  Atlanta, Georgia 30309
  (404)572-4600
  BY: W. RANDALL BASSETT, ESQUIRE
  rbassett@kslaw.com
  BY: BETHANY SCHNEIDER, ESQUIRE
  bschneider@kslaw.com

## Page 2534

APPEARANCES CONTINUED:
On behalf of Defendant R.J. Reynolds Tobacco
Company:

  KING & SPALDING LLP
  1700 Pennsylvania Avenue NW
  Suite 200
  Washington, D.C. 20006
  (202)737-0500
  BY: SCOTT EDSON, ESQUIRE
  sedson@kslaw.com
  BY: MARISA C. MALECK, ESQUIRE
  mmaleck@kslaw.com

## Page 2535

INDEX

| Examination | | Page |
|---|---|---|
| DEBRA BARNETT, M.D. | | |
| Direct | By Mr. Bassett | 2545 |
| Cross | By Ms. Barnett | 2672 |
| Redirect | By Mr. Bassett | 2733 |
| Recross | By Ms. Barnett | 2746 |
| Redirect | By Mr. Bassett | 2747 |
| Jury Questions | | 2747 |
| Cross | By Mr. Bassett | 2752 |

| STEPHEN RAAB, M.D. | | |
|---|---|---|
| Direct | By Ms. Schneider | 2754 |

Charge Conference    2891

PLAINTIFF EXHIBITS MARKED IN EVIDENCE

| | Page |
|---|---|
| Plaintiff Exhibit CS1 | 2978 |
| Plaintiff Exhibit CS13 | 2978 |
| Plaintiff Exhibit CS173 | 2978 |
| Plaintiff Exhibit CS20 | 2978 |
| Plaintiff Exhibit CS3 | 2978 |
| Plaintiff Exhibit CS004VA, VC & VG | 2978 |
| Plaintiff Exhibit CS40 | 2978 |
| Plaintiff Exhibit CS41 | 2978 |
| Plaintiff Exhibit CS5-105 | 2978 |
| Plaintiff Exhibit CS5-119 | 2978 |
| Plaintiff Exhibit CS5-131 | 2978 |
| Plaintiff Exhibit CS5-86 | 2978 |
| Plaintiff Exhibit CS5-113 | 2978 |
| Plaintiff Exhibit CS5-129 | 2978 |
| Plaintiff Exhibit MM0022 Redacted | 2978 |
| Plaintiff Exhibit PT00307 | 2978 |
| Plaintiff Exhibit PT00498 | 2978 |
| Plaintiff Exhibit PT00498B | 2978 |
| Plaintiff Exhibit PT00499 | 2978 |
| Plaintiff Exhibit PT00500 | 2978 |
| Plaintiff Exhibit PT00500A | 2978 |
| Plaintiff Exhibit PT00500B | 2978 |
| Plaintiff Exhibit PT00502 | 2978 |
| Plaintiff Exhibit PT00503c | 2978 |

Electronically signed by Gina Rodriguez (201-182-126-9514)    85c5ad87-cd45-4cda-8269-461835a0...

Page 2824

1      Q. Let's go to June 8th. Brain scan and bone
2  scan. Is this standard workup when someone is
3  diagnosed with cancer in their lung?
4      A. Yes, it can be. And this would be looking
5  for if she had metastatic cancer to an area. So it's
6  thinking that if this is a lung cancer, has it spread
7  to either brain or bone.
8      Q. And is that because the brain and the bone
9  are typical places for metastases from the lung
10  versus primary sites to metastasize to the lung?
11      A. Yes, it is.
12      Q. So at this point in time, do we have any
13  evidence that doctors are looking for other possible
14  primary sites?
15      A. No.
16      Q. Do we have any information about what
17  doctor actually ordered these scans?
18      A. We don't.
19      Q. Any indication here that they did a
20  mammogram or a breast MRI to look for breast cancer?
21      A. There is none.
22      Q. Would a primary breast cancer have shown up
23  on a chest x-ray or CT scan?
24      A. Probably not.
25      Q. Do young women tend to have benign fibrous

Page 2825

1  tissue in their breast that could make it harder to
2  detect a malignancy?
3      A. On mammography, yes.
4      Q. Are you familiar with the errors rates for
5  mammograms?
6      A. Yes.
7      Q. And have you actually studied that,
8  Dr. Raab?
9      A. Yes.
10      Q. What have you found as the reason for the
11  error rate being so high for mammograms?
12      A. Well, it's the -- it's -- one of the main
13  things like pathology having poor samples, is that
14  poor scans can actually be misinterpreted, as well as
15  that the level of tumor can be difficult to separate
16  from the level of surrounding tissue in women who
17  have fibrous tissue of the breast.
18      Q. And what's the actual error rate that
19  you've found at the institutions you have looked at
20  for mammograms?
21      A. Well, I would say that again it's probably
22  similar to what we see in the rest of medicine, you
23  know, 20 percent or higher of disagreements of
24  radiologists looking at it.
25      Q. Have you found in one study that it could

Page 2826

1  be up to 67 percent?
2      A. Some published work is that, yes.
3      MS. BARNETT: Your Honor, I object. That's
4  not his work.
5      THE COURT: No speaking objections.
6  Sidebar, please.
7      (Sidebar discussion held.)
8      THE COURT: What's your objection?
9      MS. BARNETT: If this is some published
10  study that he's relying on and testifying about
11  that was never disclosed to us, this is why I
12  tried to raise this issue ahead of time. It's
13  something that he wrote, I am going to ask him
14  to tell me every document --
15      THE COURT: Have you found any studies?
16      MS. SCHNEIDER: Your Honor, he does
17  literature reviews and he publishes actually on
18  finding -- his findings of other studies. So it
19  was my impression when I talked to him that this
20  was part of his work.
21      THE COURT: So it's a literature review,
22  it's not his own study?
23      MS. SCHNEIDER: I think it's a part of his
24  published work. I don't -- I'm not certain --
25      THE COURT: You need to clarify that it is

Page 2827

1  literature review, then.
2      MS. BARNETT: And also, Your Honor, I asked
3  him --
4      MS. SCHNEIDER: Well, I don't know, but I
5  will clarify.
6      MS. BARNETT: Your Honor, he's got 300
7  publications on his CV. And so I asked him in
8  his deposition for all the publications that
9  were related to his opinions. And there's
10  nothing about this with breast cancer, he didn't
11  flag it, he didn't tell me that was part of it.
12  This isn't something that was discussed. It is
13  a new opinion.
14      THE COURT: New opinion and --
15      MS. SCHNEIDER: I don't agree, Your Honor.
16      THE COURT: Was this discussed in
17  deposition, disclosed?
18      MS. SCHNEIDER: Well, I mean, all of his
19  work was discussed.
20      THE COURT: Was this disclosed?
21      MS. SCHNEIDER: I don't know if she asked
22  specifically this information. I mean, he
23  talked about error rates.
24      THE COURT: She said she did.
25      MS. SCHNEIDER: You asked about the error

Electronically signed by Gina Rodriquez (201-182-126-9514)                    85c5ad87-cd45-4cda-8269-461835a0...

Page 2828

```
 1    rate in mammograms?
 2         MS. BARNETT: We didn't talk about the
 3    error rate in mammograms or this study.
 4         MS. SCHNEIDER: She asked about what
 5    publications related to diagnosing lung cancer.
 6         THE COURT: Did you ask about what
 7    publications went to his opinions?
 8         MS. BARNETT: Yes, yes, I did.
 9         MS. SCHNEIDER: If I can see the
10    deposition.
11         THE COURT: Show Ms. Schneider then. The
12    objection will be sustained otherwise. Okay.
13         (Sidebar concluded.)
14    BY MS. SCHNEIDER:
15    Q.    In your experience, your own personal
16    experience with research you've done and your work as
17    a pathologist, are you familiar with the issue that
18    breast cancer is maybe more difficult to detect in
19    heavier women?
20    A.    Yes.
21    Q.    Now, would a gynecological cancer have
22    shown up in any of the tests they performed at this
23    time?
24    A.    No.
25    Q.    What do we know about what the brain scan
```

Page 2829

```
 1    and bone scan showed?
 2    A.    We don't.
 3    Q.    Let's go to June 9th. It says:
 4    Dr. Scheerer, 6:30 p.m. Is Dr. Scheerer a surgeon?
 5    A.    Yes, he is.
 6    Q.    And do we have any records from
 7    Dr. Scheerer?
 8    A.    We don't.
 9         MS. BARNETT: Your Honor, may we approach?
10         THE COURT: Sure.
11         (Sidebar discussion held:)
12         MS. SCHNEIDER: I just remembered,
13    Your Honor, this ties directly to breast cancer.
14    I think our point that they discussed in the
15    deposition. And it has the mammogram diagnostic
16    rate, 67 percent.
17         MS. BARNETT: This deposition you sent me
18    this --
19         MS. SCHNEIDER: He discussed this, he
20    discussed the --
21         THE COURT: I will give the jurors a quick
22    five-minute break. Why don't we find it in
23    deposition then, okay.
24         (Sidebar concluded.)
25         THE COURT: Deputy, we're going to give the
```

Page 2830

```
 1    jurors a quick five-minute stretch break, and
 2    then we'll continue. Thank you all.
 3         (Jurors exited the courtroom.)
 4         MS. BARNETT: I thought this was resolved.
 5    Maybe this isn't resolved. I mean, this is why
 6    I raised this this morning, this unpublished
 7    work that isn't out there that we haven't had a
 8    chance to read, to understand.
 9         THE COURT: My question was was it covered
10    in the deposition or not?
11         MS. SCHNEIDER: It was covered, Your Honor,
12    in the deposition when she asked: Is there
13    anything else relevant to your opinions?
14         He said: There's a slide show that's
15    related to my work.
16         Your Honor, when we were talking this
17    morning, she was mentioning specific statistics
18    about diagnosing lung cancer.
19         THE COURT: And the 67 percent came up and
20    Plaintiff's counsel had access to that?
21         MS. SCHNEIDER: Well, I sent her the slide
22    show.
23         THE COURT: But that was after the
24    deposition. So how can he testify about
25    something that wasn't produced at the time of
```

Page 2831

```
 1    deposition? She wouldn't get a chance to ask
 2    him, that's not fair.
 3         MS. SCHNEIDER: That's fine, Your Honor.
 4    I'm not going back there. I'm just, I mean,
 5    he's able to talk generally about the
 6    mammograms. I'm not going to go back to the
 7    67 percent, Your Honor. It was my
 8    misunderstanding. I didn't realize that this is
 9    where it came from. He just told me generally
10    when we were prepping. I apologize.
11         THE COURT: No problem. Plaintiff's
12    objection is sustained.
13         Let's bring the jurors in, Chris.
14         (Recess was held from 4:18 p.m. until
15    4:24 p.m.)
16         THE COURT: Welcome back, everyone. Thank
17    you so much.
18         You may continue with direct examination.
19         MS. SCHNEIDER: Thank you, Your Honor,
20    jurors.
21    BY MS. SCHNEIDER:
22    Q.    Where we left off, Dr. Raab, was talking
23    about Dr. Scheerer, who is the surgeon. Now, what's
24    the most likely reason at this point in time, given
25    your knowledge and experience of the diagnostic
```

75 (Pages 2828 to 2831)

Page 1639

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 12-29000 CA 31

JOYCE HARDIN, as Personal
Representative of the Estate of
THOMAS B. HARDIN, deceased,
    Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY,
    Defendant.
_____/

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
VOLUME 16 (Pages 1639 - 1784)

DATE TAKEN: February 13, 2018
TIME:    1:32 p.m.
PLACE:    Miami-Dade County Courthouse
    73 West Flagler Street
    Miami, Florida 33130
    6-3
BEFORE:    SPENCER EIG, Circuit Judge

This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:
Gina Rodriguez, RPR, CRR, CCP

Page 1640

1  APPEARANCES:
2  On behalf of Plaintiff:
3    THE FERRARO LAW FIRM
    600 Brickell Avenue
4    Suite 3800
    Miami, Florida 33131
5    (305)375-0111
    BY: ALLAN B. KAISER, ESQUIRE
6    abk@ferrarolaw.com
    BY: DICK M. ORTEGA, ESQUIRE
7    dmo@ferrarolaw.com
8  On behalf of Defendant R.J. Reynolds Tobacco
    Company:
9
    KING & SPALDING LLP
10    1180 Peachtree Street, N.E.
    Atlanta, Georgia 30309
11    (404)572-4600
    BY: FRANK T. BAYUK, ESQUIRE
12    fbayuk@kslaw.com
13    KING & SPALDING LLP
    1700 Pennsylvania Avenue NW
14    Suite 200
    Washington, D.C. 20006
15    (202)737-0500
    BY: SCOTT EDSON, ESQUIRE
16    SEdson@KSLAW.com
17
18  ALSO PRESENT:
19    Joyce Hardin
    Tina Lollie
20    Michelle Acebal
    Ryan Morrison
21
22
23
24
25

Page 1641

1               I N D E X
2
    Examination          Page
3
    THOMAS B. HARDIN (deposition read)    1645
4
5    CHARLES O'BRIEN, M.D., Ph.D. (deposition  1666
    read)
6    ROBERT FLURRY, M.D. (deposition read)    1694
7    WILLIAM GIAKAS, M.D. (testimony read)    1711
8    JOYCE HARDIN (deposition read)           1744
9    Admissions Published            1748
10    Jury instructions             1755
11    Motions                    1769
12
13      DEFENSE EXHIBITS MARKED IN EVIDENCE
14                        Page
    Exhibit ACR-000653         1783
15    Exhibit ACR-000672         1783
    Exhibit ACR-000698         1783
16    Exhibit ACR-000713         1783
    Exhibit ACR-000724         1783
17    Exhibit AGS-000074         1783
    Exhibit AHL-000032         1783
18    Exhibit AIW-000117         1783
    Exhibit AIW-000142         1783
19    Exhibit AIW-000162         1783
    Exhibit AIW-000211         1783
20    Exhibit AIW-000235         1783
    Exhibit AIW-000401         1783
21    Exhibit AIW-002649         1783
    Exhibit AML-004700.132    1783
22    Exhibit AML-004751.134    1783
    Exhibit AML-004752.009    1783
23    Exhibit AN-000947          1783
    Exhibit AN-002384          1783
24    Exhibit AN-002416          1783
    Exhibit AS-000915          1783
25

Page 1642

1      DEFENSE EXHIBITS MARKED IN EVIDENCE
2                        Page
    Exhibit AS-000936          1783
3    Exhibit AS-000938          1783
    Exhibit AS-000940          1783
4    Exhibit AS-000941          1783
    Exhibit AS-000995          1783
5    Exhibit AS-000999          1783
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Electronically signed by Gina Rodriquez (201-182-126-9514)    a8af3c5b-df3f-467d-88fc-5d069fe8

Page 1763

1    advertise its products. Advertising is
2    commercial speech that is protected by the First
3    Amendment to the United States Constitution.
4        Accordingly, you may not punish
5    R.J. Reynolds based merely on the fact that
6    R.J. Reynolds advertised its products.
7        In this case, you must decide as to
8    R.J. Reynolds whether, in addition to the
9    compensatory damages that a previous jury
10   awarded to the Plaintiff, punitive damages are
11   warranted against R.J. Reynolds under the
12   circumstances of this case as punishment to
13   R.J. Reynolds and as a deterrent to others.
14       This trial on punitive damages is divided
15   in two parts. In the first part that we've done
16   now, you will decide whether the conduct of
17   R.J. Reynolds that gives rise to Plaintiff's
18   claims for defective product and negligence is
19   such that punitive damages are warranted.
20       If you decide punitive damages are
21   warranted, we will proceed to a second part of
22   that issue, during which the parties may present
23   additional evidence and argument on the issue of
24   the quantity of punitive damages.
25       I will then give you additional legal

Page 1764

1    instructions, after which you will decide
2    whether, in your discretion, punitive damages
3    will be assessed, and, if so, the amount.
4        Plaintiff claims that punitive damages
5    should be awarded against R.J. Reynolds for its
6    conduct underlying Plaintiff's claims for
7    defective product and negligence in causing
8    Thomas Hardin's COPD and death.
9        Punitive damages are warranted against
10   R.J. Reynolds if you find by clear and
11   convincing evidence that R.J. Reynolds was
12   guilty of intentional misconduct or gross
13   negligence related to Plaintiff's claims of
14   defective product and negligence, which was a
15   substantial cause of Thomas Hardin's COPD and
16   death.
17       Under those circumstances, you may in your
18   discretion award punitive damages against
19   R.J. Reynolds.
20       If clear and convincing evidence does not
21   show such conduct by R.J. Reynolds, punitive
22   damages are not warranted against R.J. Reynolds.
23       Intentional misconduct means that
24   R.J. Reynolds had actual knowledge of the
25   wrongfulness of the conduct and there was a high

Page 1765

1    probability of injury to Thomas Hardin and,
2    despite that knowledge, R.J. Reynolds
3    intentionally pursued that course of conduct
4    resulting in injury.
5        Gross negligence means that R.J. Reynolds'
6    conduct was so reckless or wanting in care that
7    it constituted a conscious disregard or
8    indifference to the life, safety, or rights of
9    such persons exposed to such conduct.
10       Clear and convincing evidence is evidence
11   that is precise, explicit, lacking in confusion
12   and of such weight that it produces a firm
13   conviction -- a firm belief or conviction
14   without hesitation about the matter in issue.
15       When considering whether to award punitive
16   damages, you may consider any harm R.J. Reynolds
17   caused Thomas Hardin as a result of its
18   defective product and negligence.
19       In determining whether punitive damages are
20   warranted, you may not seek to punish
21   R.J. Reynolds for any harm suffered by any
22   individuals other than Thomas B. Hardin.
23       You may only consider evidence concerning
24   harms allegedly suffered by persons who are not
25   parties to this case for the limited purpose of

Page 1766

1    reprehensibility of R.J. Reynolds' conduct.
2        You may only consider evidence regarding
3    conduct that allegedly caused harm to persons
4    other than Mr. Hardin to the extent that it was
5    substantially similar to the specific conduct
6    that actually caused Mr. Hardin's COPD and
7    death, such that it essentially replicated that
8    conduct.
9        In determining whether punitive damages are
10   warranted, you may also take into consideration
11   any mitigating evidence. Mitigating evidence is
12   evidence that may demonstrate that there is no
13   need to impose punitive damages.
14       This is the law that you must follow in
15   deciding this case.
16       The attorneys for the parties will now
17   present their final arguments.
18       Well, we're not going to do that today, and
19   we're going to do that tomorrow. And so this
20   last part of the instructions on pages 17
21   through 19 is not for now. I'll read that part
22   to you tomorrow after we hear the closing
23   arguments in the morning.
24       Ladies -- madam and gentlemen of the jury,
25   so that's all we're going to do for today. We

32  (Pages 1763 to 1766)

```
 1      IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
          IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA
 2                     CIRCUIT CIVIL DIVISION

 3                  CASE NO. 10-54813 CA (15)

 4
    CHARLES G. WENDEL, as Personal
 5  Representative of the Estate of CAROL
    WENDEL, deceased,
 6
                    Plaintiff,
 7
        vs.
 8
    R.J. REYNOLDS TOBACCO COMPANY, et al.,
 9
                    Defendants.
10  ------------------------------------/

11

12           JURY TRIAL BEFORE THE HONORABLE
                   JOSE M. RODRIGUEZ
13                CIRCUIT COURT JUDGE

14

15                   (Volume 22)

                  Pages 2760 to 2921
16

17              Thursday, February 20, 2014
                   9:16 a.m. - 2:39 p.m.
18

19              Miami-Dade County Courthouse
                   73 West Flagler Street
20                   Courtroom 4-1
                  Miami, Florida  33130
21

22
                 STENOGRAPHICALLY REPORTED BY:
23           NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
           Certificate in Realtime Systems Administration
24              Certified Realtime Reporter
                Registered Professional Reporter
25               Florida Professional Reporter
```

2841

1    In determining the duration of the losses, you
2    may consider the joint life expectancy of Charles
3    Wendel and Carol Wendel together with the other
4    evidence in the case.
5    In determining the total amount of damages,
6    you should not make any reduction because of the
7    fault of Carol Wendel. The Court will enter a
8    judgment based on your verdict and, if you find
9    that Carol Wendel was at fault, the Court in
10   entering judgment will reduce the amount of damages
11   by the percentage of fault which you find was
12   caused by Carol Wendel.
13   There is an additional claim in this case that
14   you must decide. If you find for Charles Wendel
15   and against R.J. Reynolds, you must decide whether,
16   in addition to compensatory damages, punitive
17   damages are warranted as punishment to R.J.
18   Reynolds and as a deterrent to others.
19   The trial of the punitive damages issue is
20   divided into two parts. In the first part, you
21   will decide whether the conduct of R.J. Reynolds is
22   such that punitive damages are warranted. If you
23   decide that punitive damages are warranted, we will
24   proceed to the second part of that issue during
25   which the parties may present additional evidence

2842

1    and argument on the issue of damages.
2    I will then give you additional instructions,
3    after which you will decide whether, in your
4    discretion, punitive damages will be assessed and,
5    if so, the amount.
6    Charles Wendel's claim is that punitive
7    damages should be awarded against R.J. Reynolds for
8    its conduct in, 1, placing cigarettes on the market
9    that were defective and unreasonably dangerous; 2,
10   concealing and omitting material information not
11   otherwise known or available knowing that the
12   material was false or misleading or failing to
13   disclose a material fact concerning the health
14   effects or addictive nature of smoking cigarettes
15   or both; and, 3, agreeing to conceal or omit
16   information regarding the health effects of
17   cigarettes or their addictive nature with the
18   intention that smokers and the public would rely on
19   this information to their detriment; and, 4,
20   negligence.
21   Punitive damages are warranted against R.J.
22   Reynolds if you find by clear and convincing
23   evidence that Reynolds was guilty of intentional
24   misconduct or gross negligence, which was a
25   substantial cause of loss, injury, or damage to

2843

1    Carol Wendel.
2    Under those circumstances, you may, in your
3    discretion, award punitive damages against R.J.
4    Reynolds. If clear and convincing evidence does
5    not show such conduct by R.J. Reynolds, punitive
6    damages are not warranted against R.J. Reynolds.
7    "Intentional misconduct" means that R.J.
8    Reynolds had actual knowledge of the wrongfulness
9    of the conduct and there was a high probability of
10   injury or damage to Carol Wendel and, despite that
11   knowledge, R.J. Reynolds intentionally pursued that
12   course of conduct, resulting in injury or damage.
13   "Gross negligence" means that R.J. Reynolds
14   was so reckless or wanting in care that it
15   constituted a conscious disregard or indifference
16   to life, safety, or rights of persons exposed to
17   such conduct.
18   "Clear and convincing evidence" differs from
19   the "greater weight of the evidence" in that it is
20   more compelling and persuasive. As I have already
21   instructed you, "greater weight of the evidence"
22   means the more persuasive and convincing force and
23   effect of the entire evidence in the case.
24   For the purpose of determining whether
25   punitive damages are warranted, you may not

2844

1    consider in any way the Engle findings regarding
2    R.J. Reynolds' conduct for the prior -- for the
3    prior trial that I have described to you earlier.
4    In determining whether punitive damages are
5    warranted, you may not seek to punish R.J. Reynolds
6    for any harm suffered by any individual --
7    individuals other than Carol Wendel.
8    You may consider evidence concerning harms
9    allegedly suffered by persons who are not parties
10   to this cause for the limited purpose of any light
11   it might shed on the degree of reprehensibility or
12   wrongfulness of R.J. Reynolds' conduct that caused
13   Carol Wendel's lung cancer and death.
14   You may consider evidence regarding conduct
15   that allegedly caused harm to persons other than
16   Carol Wendel only to the extent that it was
17   substantially similar to the specific conduct that
18   actually caused Carol Wendel's lung cancer and
19   death, such that it essentially replicated that
20   conduct.
21   Your consideration of whether punitive damages
22   are warranted for R.J. Reynolds' conduct must be
23   based on conduct which has been shown by clear and
24   convincing evidence to cause -- to have caused
25   Carol Wendel's lung cancer and death.

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.:  08-00113-CA-31


MIRTHA LEDO, as Personal Representative
for the Estate of JOSE LEDO, deceased,

        Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY, et al.

        Defendants.

_____/


JURY TRIAL
PROCEEDINGS BEFORE THE HONORABLE MIGNA SANCHEZ-LLORENS
VOLUME 16
Pages 2152 to 2351



Miami-Dade County Courthouse
73 West Flagler Street
Courtroom 6-2
Miami, Florida
11:02 a.m. - 6:54 p.m.
Tuesday, November 1, 2016



Reported by:

Tracey S. LoCastro, RPR, FPR

TLS Reporting Inc.

www.tlsreporting.com

Page 2181

1  fault of Mr. Ledo.
2      If your verdict is for RJ Reynolds, you will
3  not consider the matter of damages.  But if the
4  greater weight of the evidence supports one or
5  more of plaintiff's claims, you should determine
6  and write on the verdict form, in dollars, the
7  total amount of damages which the greater weight
8  of the evidence shows that plaintiff sustained
9  as a result of Mr. Ledo's laryngeal cancer, and
10  death.
11      The damages you award should be fair and
12  just in light of the evidence regarding the
13  following elements and no others:
14      One, Mirtha Ledo's loss of José Ledo's
15  companionship, and protection, and her mental
16  pain and suffering as a result of Mr. Ledo's
17  injury and death.
18      Two, the loss of Carlos Ledo of parental
19  companionship, instruction and guidance, and his
20  mental pain and suffering as a result of José
21  Ledo's injury and death.
22      You may not award any other elements of
23  damages.
24      In determining the total amount of damages,
25  if any, to be awarded, you should not make any

Page 2182

1  reduction because of the fault you have charged
2  to José Ledo.  The Court will enter a judgment
3  based on your verdict and, in entering judgment,
4  will reduce the total amount of damages by the
5  percentage of fault which you find is chargeable
6  to José Ledo.
7      You may not award any damages for pain and
8  suffering of José Ledo.  Such damages are not
9  recoverable in a wrongful death action.
10  Instead, plaintiff is seeking damages for Mirtha
11  Ledo and Carlos Ledo's pain, suffering and loss.
12      The purpose of an award of compensatory
13  damages is not to punish or penalize RJ Reynolds
14  for its conduct or to make an example of
15  RJ Reynolds for the public good.  In determining
16  the amount of damages to award, if any, you may
17  consider only the amount necessary to compensate
18  for actual loss resulting from RJ Reynolds'
19  conduct that you found to have caused Mr. Ledo's
20  laryngeal cancer and death, if any.
21      If you find for plaintiff and against
22  RJ Reynolds, you must then decide whether, in
23  addition to compensatory damages, punitive
24  damages may be awarded against RJ Reynolds in
25  the circumstances of this case as punishment to

Page 2183

1  RJ Reynolds and as a deterrent to others.  Any
2  such damages would be in addition to any
3  compensatory damages you may award.
4      The trial of the punitive damages claim is
5  divided into two parts.  In the first part, you
6  will decide whether the conduct on which you
7  based your findings that RJ Reynolds is liable,
8  if at all, on plaintiff's claims for negligent
9  design and/or design defect was such that
10  punitive damages may be warranted.  You may not
11  impose punitive damages on RJ Reynolds on the
12  basis of plaintiff's claims for fraud by
13  concealment or conspiracy to fraudulently
14  conceal.
15      If you decide punitive damages are
16  warranted, we will proceed to a second part on
17  that issue during which the parties may present
18  additional evidence and argument on the issue of
19  punitive damages.  I will then give you
20  additional legal instructions, after which you
21  will decide whether, in your discretion,
22  punitive damages will be assessed and, if so,
23  the amount.  You may, in your discretion,
24  decline to assess punitive damages.
25      The burden is on the plaintiff to prove by

Page 2184

1  clear and convincing evidence that punitive
2  damages may be warranted.  "Clear and convincing
3  evidence" differs from the "greater weight of
4  the evidence" in that it is more compelling and
5  persuasive.
6      As I've already instructed you, "greater
7  weight of the evidence" means the more
8  persuasive and convincing force and effect of
9  the entire evidence in the case.  In contrast,
10  clear and convincing evidence is evidence that
11  is precise, explicit, lacking confusion, and of
12  such weight that it produces a firm belief or
13  conviction, without hesitation, about the matter
14  in issue.
15      Punitive damages may be imposed on RJ
16  Reynolds only on the basis of plaintiff's claims
17  for negligent design or design defect.
18      A product is defective if, by reason of its
19  design, the product is in a condition
20  unreasonably dangerous to the user and the
21  product is expected to and does reach the user
22  without substantial change affecting that
23  condition.  A product is unreasonably dangerous
24  because of its design if the product fails to
25  perform as safely as an ordinary consumer would

9  (Pages 2181 to 2184)

1            IN THE CIRCUIT COURT OF THE
             ELEVENTH JUDICIAL CIRCUIT
2        IN AND FOR MIAMI-DADE COUNTY, FLORIDA
3              CASE NO. 10-60768 CA 20
4
5    RACHEL BAUM, as Personal
     Representative of the
6    Estate of PAUL BAUM, deceased,
7                  Plaintiff,
     vs.
8
     R.J. REYNOLDS TOBACCO COMPANY,  et al.,
9
                  Defendants.
10
     -------------------------------------x
11
12
13
14              V O L U M E  27
15             (Pages 3419 to 3534)
16
17          The above-styled cause came on for hearing
18      before the Honorable RONALD DRESNICK, Judge of the
19      above-styled court, at the Miami-Dade County
20      Courthouse, 73 West Flagler Street, Miami, Florida,
21      on Thurday, September 4, 2014, commencing at
22      9:20 a.m.
23
24
25

Page 3452

1  of Mr. Baum's COPD.
2       In making this determination, you should not
3  consider any alleged conduct by any defendant that
4  you find was not a legal cause of Mr. Baum's COPD.
5       It is the plaintiff's burden to prove by the
6  greater weight of the evidence that each defendant
7  bears some fault for legally causing Mr. Baum's
8  COPD to some degree, and if so, the percentage of
9  any such fault.
10      You should, therefore, assign to each
11 defendant only such share of fault as the plaintiff
12 has demonstrated to be appropriate.
13      This instruction applies even if you have
14 determined that Mr. Baum's death was legally caused
15 by COPD caused by an addiction to smoking
16 cigarettes containing nicotine.
17      If your verdict is for all defendants on all
18 claims, you will not consider the matter of
19 damages.  But if your verdict is for plaintiff on
20 one or more claims against one or more defendants,
21 you should determine and write on the verdict form
22 in dollars the total amount of damages that the
23 greater weight of the evidence shows that
24 Mr. Baum's surviving spouse, Rachel Baum, sustained
25 as a result of Mr. Baum's death, including any

Page 3453

1  damages that she is reasonably certain to
2  experience in the future.
3       In determining any damages to be awarded to
4  plaintiff, Rachel Baum, you shall consider certain
5  elements of damages for which there is no exact
6  standard of measurement for fixing the compensation
7  to be awarded.
8       Any such award should be fair and just in
9  light of the evidence regarding Rachel Baum's loss
10 of Mr. Baum's companionship and protection and her
11 mental pain and suffering as a result of Mr. Baum's
12 death.
13      In determining the duration of such losses,
14 you may consider the joint life expectancy of
15 Rachel Baum and Paul Baum together with other
16 evidence in the case.
17      In determining the total amount of damages,
18 if any, to be awarded to Mr. Baum's surviving
19 spouse, Rachel Baum, as a result of Mr. Baum's
20 death, you should not make any reduction because of
21 the fault you have charged to Mr. Baum.
22      The Court will enter a judgment based upon
23 your verdict and in entering judgment will reduce
24 the total amount of damages by the percentage of
25 fault that you find is chargeable to Mr. Baum.

Page 3454

1       In determining how long Mr. Baum would have
2  lived, had he lived out his normal life, you may
3  consider his life expectancy at the time of his
4  death.
5       The mortality tables received in evidence may
6  be considered in determining how long he may have
7  been expected to live.
8       Mortality tables are not binding upon you but
9  may be considered with other evidence in the case
10 determining -- in the case bearing on Mr. Baum's
11 health, age and physical condition before his death
12 in determining his probable length of life.
13      In determining the duration of any future
14 loss sustained by Rachel Baum by reason of death of
15 Mr. Baum, you may consider the joint life
16 expectancy of each of them.
17      The joint life expectancy is that period of
18 time when both Mr. Baum and Rachel Baum would have
19 remained alive.
20      The mortality table received in evidence may
21 be considered together with the other evidence in
22 the case in determining how long each may have been
23 expected to live.
24      This instruction applies only if you find
25 that Mr. Baum's death was not legally caused by

Page 3455

1  COPD caused by an addiction to smoking cigarettes
2  containing nicotine.
3       If your verdict is for all defendants on all
4  claims, you will not consider the matter of
5  damages.  But if your verdict is for the plaintiff
6  on one or more claims against one or more
7  defendants, you shall determine and write on the
8  verdict form, in dollars, the total amount of
9  damages that the greater weight of the evidence
10 shows that Mr. Baum sustained as a result of his
11 COPD from the date of his injury to the date of his
12 death.
13      In making this determination, you shall
14 consider the following elements:  Any bodily injury
15 sustained by Mr. Baum and any resulting pain and
16 suffering, disability or physical impairment,
17 disfigurement, mental anguish, inconvenience or the
18 loss of capacity for the enjoyment of life as a
19 result of his COPD.
20      Plaintiff must prove by the greater weight of
21 the evidence that the damages Mr. Baum sustained
22 are a result of his COPD and the extent of any such
23 damage.
24      There is no exact standard for measuring such
25 damage.  The amount should be fair and just in

10 (Pages 3452 to 3455)

Page 3456

1  light of the evidence.
2      In determining the total amount of any
3  damages sustained by Mr. Baum, do not make any
4  reduction because of the fault of Mr. Baum. The
5  Court will enter a judgment based on your verdict,
6  and in entering judgment will reduce the total
7  amount of damages by the percentage of fault which
8  you find is chargeable to Mr. Baum.
9      The purpose of an award of compensatory
10 damages is not to punish or penalize a defendant
11 for its conduct or to make an example of a
12 defendant for the public good.
13     Compensatory damages are meant to compensate
14 for actual loss caused by the defendant.
15     Therefore, in determining the amount of
16 damages to award, if any, you may consider only the
17 amount necessary to compensate Rachel Baum for the
18 actual loss caused by defendants' conduct that
19 caused Mr. Baum's COPD, if any, and not the nature
20 of defendants' conduct.
21     If you find for plaintiff and against
22 defendant on plaintiff's claims for fraudulent
23 concealment or agreement to fraudulently conceal,
24 you must then decide whether in addition to
25 compensatory damages, punitive damages may be

Page 3457

1  awarded against that defendant in the circumstances
2  of this case as punishment to that defendant for
3  the conduct that caused Mr. Baum's COPD and as a
4  detriment to others.
5      The trial of the punitive damages issue is
6  divided into two parts. In this first part you
7  will decide whether the conduct on which you base
8  your findings that a defendant is liable, and if --
9  is liable, if at all, on plaintiff's claims for
10 fraudulent concealment or agreement to fraudulently
11 conceal was such that punitive damages may be
12 warranted.
13     If you decide that punitive damages may be
14 warranted, we will proceed to a second part of that
15 issue during which the parties may present
16 additional evidence and argument on the issue of
17 punitive damages.
18     I will then give you additional instructions
19 after which you will decide whether in your
20 determination punitive damages will be assessed,
21 and if so, the amount.
22     A defendant is subject to punitive damages
23 only if you find by clear and convincing evidence
24 that the defendant engaged in intentional
25 misconduct that was a substantial cause of

Page 3458

1  Mr. Baum's COPD.
2      Under those circumstances, you may, in your
3  discretion, determine that punitive damages may be
4  warranted against a defendant.
5      If clear and convincing evidence does not
6  show such conduct by a defendant, punitive damages
7  are not warranted against that defendant.
8      If punitive damages are warranted, then you
9  will, as I said, determine in a subsequent phase of
10 this trial whether punitive damages should be
11 imposed, and if so, in what amount.
12     "Intentional misconduct" means that the
13 defendant had actual knowledge of the wrongfulness
14 of the conduct and there was a high probability
15 that injury would result, and despite that
16 knowledge, intentionally pursued that course of
17 conduct resulting in Mr. Baum's COPD.
18     The burden is on the plaintiff to prove by
19 clear and convincing evidence that punitive damages
20 are warranted.
21     Clear and convincing evidence differs from
22 the greater weight of evidence -- the greater
23 weight of the evidence in that it is more
24 compelling and persuasive.
25     As I have already instructed you, greater

Page 3459

1  weight of the evidence means the more persuasive
2  and convincing force and effect of the entire
3  evidence in the case.
4      In contrast, clear and convincing evidence is
5  evidence that is precise, explicit, lacking in
6  confusion, and if such weight that it produces a
7  firm belief or conviction without hesitation about
8  the matter in issue.
9      For the purpose of determining whether
10 punitive damages are warranted against any
11 defendant, you may not consider in any way the
12 Engle findings regarding defendants' conduct from
13 the prior trial that I described to you earlier.
14     For purposes of deciding whether Rachel Baum
15 is entitled to punitive damages or, if so, the
16 amount of punitive damages, you may not consider in
17 any way the findings from the prior lawsuit that I
18 described to you earlier.
19     In determining whether punitive damages are
20 warranted and, if so, in determining the amount of
21 any such damages, you may not seek to punish
22 defendants for any harm suffered by any person
23 other than Rachel Baum.
24     In determining whether punitive damages are
25 warranted and, if so, in determining the amount of

11 (Pages 3456 to 3459)

**1856**

```
 1        IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
          IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA
 2                    CIRCUIT CIVIL DIVISION

 3                    CASE NO. 08-00649-CA-10

 4    REBECCA SANTOS, as Personal
      Representative of the Estate of Renato
 5    Santos, for the use and benefit of
      DOLORES SANTOS, the decedent's widow,
 6
                      Plaintiff,
 7
           vs.
 8
      R.J. REYNOLDS TOBACCO COMPANY, et al.,
 9
                      Defendants.
10    ------------------------------------/

11

12            JURY TRIAL BEFORE THE HONORABLE
                   JACQUELINE HOGAN SCOLA
13                  CIRCUIT COURT JUDGE

14                     (Volume 13)

15                 Pages 1856 to 2020

16

17             Monday, August 17, 2015
               12:28 p.m. - 6:18 p.m.
18

19           Miami-Dade County Courthouse
                  73 West Flagler Street
20                    Courtroom 6-1
                  Miami, Florida  33130
21

22          STENOGRAPHICALLY REPORTED BY:
         NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
23    Certificate in Realtime Systems Administration
                Certified Realtime Reporter
24           Registered Professional Reporter
                Florida Professional Reporter
25
```

**1857**

```
 1                    APPEARANCES:

 2

 3    On Behalf of the Plaintiff

 4        JUSTIN PARAFINCZUK, ESQUIRE
          AUSTIN CARR, ESQUIRE
 5        KOCH, PARAFINCZUK & WOLF, P.A.
          110 East Broward Boulevard, Suite 1630
 6        Fort Lauderdale, Florida 33301
          954-462-6700
 7        Parafinczuk@kpwlaw.com, carr@kpwlaw.com

 8

 9    On Behalf of the Defendant R.J. Reynolds

10        W. RANDALL BASSETT, ESQUIRE
          CORY HOHNBAUM, ESQUIRE
11        PHILIP GREEN, ESQUIRE
          KING & SPALDING
12        1180 Peachtree Street, N.E.
          Atlanta, Georgia 30309
13        404-572-2494, rbassett@kslaw.com,
          Chohnbaum@kslaw.com, pgreen@kslaw.com
14

15

16    Also Present:

17        Rebecca Santos

18

19
20
21
22
23
24
25
```

**1858**

```
 1                    I N D E X

 2    Volume 13, August 17, 2015        Pages 1856 to 2020

 3

 4    JURY INSTRUCTIONS                              1876

 5    CLOSING STATEMENT BY MR. PARAFINCZUK          1900

 6    CLOSING STATEMENT BY MR. CARR                 1911

 7    CLOSING STATEMENT BY MR. BASSETT              1929

 8    CLOSING STATEMENT BY MR. HOHNBAUM             1962

 9    REBUTTAL CLOSING STATEMENT BY MR. CARR 1984

10    FINAL JURY INSTRUCTIONS                       1990

11

12    MOTION FOR MISTRIAL BY DEFENSE                1905

13    MOTION FOR MISTRIAL BY DEFENSE                1914

14    MOTION FOR MISTRIAL BY DEFENSE                1923

15    MOTION FOR MISTRIAL BY DEFENSE                1926

16    JURY RETIRED TO DELIBERATE                    2008

17    REPORTER'S CERTIFICATE                        2020

18

19

20

21

22

23

24

25
```

**1859**

```
 1         (Volume 13, resuming after recess at

 2    12:28 p.m. )

 3         THE COURT:  Okay, Nancy came down to get me

 4    about ten minutes ago and said Mr. Urbay, our

 5    second juror, approached her saying he had to

 6    leave, he has an emergency.  So I came out and he

 7    was waiting outside my office.

 8         And he says that his son's daughter was born

 9    three days ago, and he just got a call from his

10    brother that they're taking the child by helicopter

11    to Children's for emergency heart surgery.  So I

12    did not inquire further, but he offered to wait

13    until you-all got back.  I said I did not think it

14    would be long.  He's in the jury room.

15         So I guess the question is whether or not, I

16    mean, he's been a very wonderful juror, but I guess

17    the question will be whether or not he feels he

18    will be able to return, which he probably doesn't

19    know at this point.

20         He wants to go to Children's to be with his

21    brother, and so I don't know if you want to bother

22    asking him whether if you want him to come back if

23    he can, whether he would be distracted by this.  I

24    mean, to me, the -- well, let me hear what you-all

25    want to say.
```

1896

1 reasonably be said that but for the conduct, the
2 emphysema/COPD and death would not have occurred.
3     Plaintiff admits that Mr. Santos bears some
4 fault, but less than 100 percent of the applicable
5 fault for causing his emphysema/COPD and death.
6 Accordingly, you must assign some percentage of
7 fault up to, and if you should so find, may include
8 100 percent to Mr. Santos on your verdict form.
9     Your determination of Reynolds' fault, if any,
10 must be based solely on conduct that was a legal
11 cause of Renato Santos' emphysema/COPD and death.
12     If your verdict is for Reynolds on all claims,
13 you will not consider the matter of damages. But
14 if your verdict is for Plaintiff on one or more of
15 the claims against Reynolds, you should determine
16 and write on the verdict form, in dollars, the
17 total amount of damages that the greater weight of
18 the evidence shows that the estate of Mr. Santos
19 and Mr. Santos' surviving wife, Dolores Santos,
20 sustained as a result of Mr. Santos' death,
21 including any damages that Dolores Santos is
22 reasonably certain to experience in the future.
23     In determining the damages recoverable on
24 behalf of Renato Santos' estate, you shall consider
25 the following elements: Medical expenses due to

1897

1 Renato Santos' injury or death which have become a
2 charge against the estate.
3     In determining any damages to be awarded
4 Renato Santos' personal representative for the
5 benefit of his survivor, Dolores Santos, you shall
6 consider the following elements: Dolores Santos'
7 loss by reason of Renato Santos' injury and death,
8 of Renato Santos' companionship and protection, and
9 her mental pain and suffering as a result of his
10 injury and death.
11     In determining the duration of any future
12 loss, you may consider the joint life expectancy of
13 Dolores Santos and Renato Santos.
14     Any damages that you find were sustained by
15 Renato Santos' estate and by Dolores Santos shall
16 be separately stated in your verdict.
17     In determining the total amount of damages, if
18 any, to be awarded to Plaintiff as a result of
19 Mr. Santos' death, you should not make any
20 reduction because of the fault you have charged to
21 Mr. Santos.
22     The Court, and that's me, will enter judgment
23 based on your verdict and, in entering judgment,
24 will reduce the total amount of damages by the
25 percentage of fault which you find is chargeable to

1898

1 Mr. Santos.
2     In determining the duration of any future loss
3 sustained by Dolores Santos by reason of the death
4 of Renato Santos, you may consider the joint life
5 expectancy of Dolores Santos and Renato Santos.
6     The joint life expectancy is that period of
7 time when both the decedent and a survivor would
8 have remained alive. The mortality tables received
9 in evidence may be considered together with the
10 other evidence in the case in determining how long
11 each may have been expected to live.
12     Any amount of damages which you allow for
13 Dolores Santos' loss of companionship and
14 protection, and her mental pain and suffering
15 should be reduced to its present money value and
16 only the present money value of these future
17 economic damages is the sum of money needed now
18 which together with what that sum will earn in the
19 future will compensate Dolores Santos for these
20 losses as they are actually experienced in future
21 years.
22     The purpose of an award of compensatory
23 damages is not to punish or penalize Reynolds for
24 its conduct or to make an example of Reynolds for
25 the public good.

1899

1     That is the law you must follow in deciding
2 this case.
3     The attorneys for the parties will now present
4 their final arguments. And when they are through,
5 I'll have a few final instructions about your
6 deliberation.
7     I'm going to remind you that what the lawyers
8 say is not evidence and it's not your instructions
9 on the law. What I have just read you is your
10 instruction on the law, but please pay careful
11 attention to what they are going to say as they are
12 intending to assist you in evaluating the evidence
13 and applying it to the law. But as I told you, you
14 are the final determiners of what the facts are in
15 this case.
16     Each side is going to be given equal time.
17 The Plaintiff is going to start and finish, because
18 they have the burden of proof because they are the
19 Plaintiff.
20     Mr. Parafinczuk, Mr. Carr, are you ready to
21 proceed?
22     MR. PARAFINCZUK: Yes, Your Honor.
23     THE COURT: I believe the Plaintiff is going
24 to split their opening statement and then there is
25 going to be a final statement, and then I believe

Page 3992

```
 1        IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
             IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA
 2                    CIRCUIT CIVIL DIVISION
 3                    CASE NO. 12-29000-CA(31)
 4    JOYCE HARDIN, as Personal Representative
      of the Estate of THOMAS B. HARDIN,
 5    deceased,
 6                   Plaintiff,
 7         vs.
 8    R.J. REYNOLDS TOBACCO COMPANY, et al.,
 9                   Defendants.
      -----------------------------------/
10
11
12               JURY TRIAL BEFORE THE HONORABLE
                     MIGNA SANCHEZ-LLORENS
13                   CIRCUIT COURT JUDGE
14
                        (Volume 29)
15
                    Pages 3992 to 4137
16
17               Tuesday, June 16, 2015
                 10:55 a.m. - 2:05 p.m.
18
19             Miami-Dade County Courthouse
                 73 West Flagler Street
20                  Courtroom 11-1
                 Miami, Florida  33130
21
22           STENOGRAPHICALLY REPORTED BY:
          NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
23       Certificate in Realtime Systems Administration
                Certified Realtime Reporter
24            Registered Professional Reporter
                Florida Professional Reporter
25
```

Page 4025

1  any, must be based on -- solely on conduct by
2  Reynolds, if any, that Plaintiff has proven was a
3  legal cause of Thomas Hardin's COPD/emphysema and
4  death.
5      28. This instruction applies only if you have
6  determined that Mr. Hardin's death was legally
7  caused by chronic obstructive pulmonary disease
8  ("COPD")/emphysema caused by an addiction to
9  smoking cigarettes containing nicotine.
10     If your verdict is for Reynolds on all claims,
11 you will not consider the matter of damages. But
12 if your verdict is for Plaintiff on one or more
13 claims against Reynolds, you should determine and
14 write on the verdict form, in dollars, the total
15 amount of damages that the greater weight of the
16 evidence shows that Mr. Hardin's surviving wife,
17 Joyce Hardin, sustained as a result of Mr. Hardin's
18 death, including any damages that Joyce Hardin is
19 reasonably certain to experience in the future.
20     In determining any damages to be awarded to
21 Plaintiff Joyce Hardin for her benefit, you shall
22 consider the following elements of damage and no
23 other:
24     Joyce Hardin's loss of Thomas B. Hardin's
25 companionship and protection, and Mrs. Hardin's

Page 4026

1  mental pain and suffering as a result of
2  Mr. Hardin's injury and death. In determining the
3  duration of the losses, you may consider the joint
4  life expectancy of Mr. Hardin and Mrs. Hardin
5  together with other evidence in the case.
6      You may not assess any other element of
7  damage.
8      In determining the total amount of damages, if
9  any, to be awarded to Joyce Hardin as a result of
10 the Mr. Hardin's death, you should not make any
11 reduction because of the fault you have charged to
12 Mr. Hardin. The Court will enter a judgment based
13 on your verdict and, in entering judgment, will
14 reduce the total amount of damages by the
15 percentage of fault which you find is chargeable to
16 Mr. Hardin in accordance with the requirements of
17 the law.
18     30. You may not award any damages for pain
19 and suffering of Thomas Hardin. Such damages are
20 not recoverable in a wrongful death action.
21 Instead, Plaintiff is seeking damages for Joyce
22 Hardin's pain and suffering and loss of
23 companionship.
24     31. The purpose of an award of compensatory
25 damages is not to punish or penalize Reynolds for

Page 4027

1  its conduct or to make an example of Reynolds for
2  the public good. In determining the amount of
3  damages to award, if any, you may consider only the
4  amount necessary to compensate Joyce Hardin for the
5  actual loss resulting from Reynolds' conduct that
6  you found to have caused Mr. Hardin's chronic
7  obstructive pulmonary disease ("COPD")/emphysema
8  and death, if any.
9      32. If you find for Plaintiff and against
10 Reynolds on her fraudulent concealment claim or
11 agreement to fraudulently -- fraudulently conceal
12 claim, you must then decide whether, in addition to
13 compensatory damages, punitive damages may be
14 warranted against Reynolds in the circumstances of
15 this case as punishment to Reynolds and as a
16 deterrent to others.
17     The trial of the punitive damages issue is
18 divided into two parts. In this first part, you
19 will decide whether the conduct on which you based
20 your findings that Reynolds is liable, if at all,
21 on Plaintiff's claim for fraudulent concealment or
22 agreement to fraudulently conceal was such that
23 punitive damages may be warranted. You may not
24 impose punitive damages on Reynolds on the basis of
25 Plaintiff's claims for defective product or

Page 4028

1  negligence.
2      If you decide that punitive damages may be
3  warranted, we will proceed to the second part of
4  that issue, during which the parties may present
5  additional evidence and argument on the issue of
6  punitive damages. I will then give you additional
7  instructions, after which you will decide whether,
8  in your discretion, punitive damages will be
9  assessed and, if so, the amount.
10     You may, in your discretion, decline to assess
11 punitive damages.
12     33. The burden is on the Plaintiff to prove
13 by clear and convincing evidence that punitive
14 damages are warranted. "Clear and convincing
15 evidence" differs from the "greater weight of the
16 evidence" in that it is more compelling and
17 persuasive. As I have already instructed you,
18 "greater weight of the evidence" means the more
19 persuasive and convincing force and effect of the
20 entire evidence in the case. In contrast, "clear
21 and convincing evidence" is evidence that is
22 precise, explicit, lacking in confusion, and of
23 such weight that it produces a firm belief or
24 conviction, without hesitation, about the matter in
25 issue.

10 (Pages 4025 to 4028)

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.:  08-00113-CA-31


MIRTHA LEDO, as Personal Representative
for the Estate of JOSE LEDO, deceased,

        Plaintiff,

vs.

R.J. REYNOLDS TOBACCO COMPANY, et al.

        Defendants.

_____/


JURY TRIAL
PROCEEDINGS BEFORE THE HONORABLE MIGNA SANCHEZ-LLORENS
VOLUME 16
Pages 2152 to 2351


Miami-Dade County Courthouse
73 West Flagler Street
Courtroom 6-2
Miami, Florida
11:02 a.m. - 6:54 p.m.
Tuesday, November 1, 2016


Reported by:

Tracey S. LoCastro, RPR, FPR

TLS Reporting Inc.

www.tlsreporting.com

1   misleading or failed to disclose a material fact
2   concerning the health effects or addictive
3   nature of smoking cigarettes or both.
4   RJ Reynolds entered into an agreement to conceal
5   or omit information regarding the health effects
6   of cigarettes or their addictive nature with the
7   intention that smokers and the public would rely
8   on this information to their detriment.
9       Your consideration and use of these Engle
10  findings are subject to additional limitations.
11      First, you must not consider these findings
12  in determining whether plaintiff has proven
13  Mr. Ledo was a member of the Engle class.  The
14  findings do not apply to plaintiff's claims in
15  this case unless you have first determined,
16  without considering or applying these findings,
17  that the plaintiff has proven that Mr. Ledo was
18  a class member.
19      Second, the findings that I just read to you
20  do not establish that RJ Reynolds is liable to
21  the plaintiff in this case; nor do they
22  establish whether Mr. Ledo was injured by
23  RJ Reynolds' conduct or the degree, if any, to
24  which RJ Reynolds' conduct was a legal cause of
25  Mr. Ledo's laryngeal cancer.

1       Third, the findings establish only what they
2   expressly state and you must not speculate or
3   guess as to the basis of those findings.
4       Fourth, the Engle findings pertain only to
5   conduct in the United States, and they do not
6   establish that any conduct in the United States
7   affected or impacted José Ledo while he was
8   living in Cuba.
9       Finally, the findings may not be considered
10  in any way when determining whether punitive
11  damages may be warranted.  You must make your
12  determination regarding whether punitive damages
13  may be warranted based solely on the factual
14  evidence presented to you in this case [sic].
15      Manufacturing, selling and advertising
16  cigarettes are lawful activities; therefore
17  RJ Reynolds cannot be held liable merely for
18  manufacturing, selling or advertising
19  cigarettes.
20      The warning labels placed on cigarette packs
21  and advertisements by RJ Reynolds and other
22  tobacco companies complied with federal law,
23  and, after July 1st, 1969, RJ Reynolds had no
24  obligation to place any additional warnings on
25  their cigarette packages and advertisements.

1       As long as the cigarette packs bear the
2   federally mandated warnings, cigarette
3   advertising from July 1st, 1969, forward cannot
4   be the subject of any claim that the advertising
5   undermined or neutralized the warning or made
6   them less effective.
7       Plaintiff does not claim that RJ Reynolds
8   should have given additional or different
9   warnings on its cigarette packs or
10  advertisements.
11      I instruct you that effective August 9th,
12  1973, all Spanish-language cigarette advertising
13  was required to have Spanish-language warnings,
14  and RJ Reynolds complied with this requirement.
15      The next claim you must consider is
16  plaintiff's claim for fraudulent concealment.
17      On this claim, the issue for your
18  determination is whether José Ledo reasonably
19  relied to his detriment on a statement of
20  material fact by RJ Reynolds that concealed or
21  omitted material information not otherwise known
22  or available concerning the health effects or
23  addictive nature of smoking cigarettes, and, if
24  so, whether such reliance was a legal cause of
25  Mr. Ledo's laryngeal cancer and death.

1       RJ Reynolds cannot be held liable for
2   failure to speak.  RJ Reynolds could only be
3   held liable if you find that it made a statement
4   that misled Mr. Ledo because it concealed or
5   omitted material fact not otherwise known or
6   available regarding the potential health effects
7   of smoking cigarettes and/or the potentially
8   addictive nature of smoking cigarettes.
9       Reasonable reliance on a statement that is
10  misleading because it conceals or omits a
11  material fact is a legal cause of Mr. Ledo's
12  laryngeal cancer and death if it directly and
13  natural and continuous sequence produces or
14  contributes substantially to producing such
15  laryngeal cancer and death so that it can
16  reasonably be said that, but for the reliance,
17  his laryngeal cancer and death would not have
18  occurred.  This means that plaintiff must prove
19  that, but for Mr. Ledo's reliance on a statement
20  by RJ Reynolds concealing or omitting a material
21  fact not otherwise known or available, he would
22  have acted differently and avoided his laryngeal
23  cancer and death.  Mr. Ledo cannot be found to
24  have reasonably relied to his detriment on a
25  statement if he knew it was false or if its

7  (Pages 2173 to 2176)

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO.: 07-027976 (09)

_____

IN RE:  ENGLE PROGENY CASES
TOBACCO LITIGATION


PERTAINS TO:

MARC SIMON, as Personal
Representative of the
Estate of ANNA SIMON
_____/


TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

Volume 21, Pages 3049 - 3160




BEFORE:        The Honorable Jeffrey R. Levenson
DATE TAKEN:    September 17th, 2018
TIME:          (9:30) 9:33 a.m. - 11:44 a.m.
PLACE:         Broward County Courthouse
               201 S.E. 6th Street
               Fort Lauderdale, Florida  33301




        This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

Susan J. Sternberg, C.M.
United Reporting, Inc.
1218 S.E. 3rd Avenue
Fort Lauderdale, Florida  33316
954-525-2221

Page 3086

or omission of that fact.

On this claim for agreement to fraudulently conceal, Anna Simon may rely on a false statement even though its falsity could have been discovered if Anna Simon had made an investigation.

However, Mrs. Simon cannot be found to have reasonably relied on a statement if she knew it was false or its falsity was obvious to her, or if the fact allegedly concealed was already known to her.

If the greater weight of the evidence does not support the claim on this issue against one or both defendants, your verdict should be for the defendants or those defendants on this claim. However -- excuse me. For that defendant or those defendants on this claim.

However, if the greater weight of the evidence does support the claim of plaintiff on this claim against one or both defendants, then your verdict on this claim will be for plaintiff against that defendant or those defendants.

I hereby instruct you that plaintiff has

Page 3087

made no claim for concealment or agreement to conceal information regarding smoking, health, or addiction before 1953.

Manufacturing, selling, and advertising cigarettes are lawful activities. Therefore, defendants cannot be held liable merely for manufacturing, selling, or advertising cigarettes. However, defendants can be held liable as set forth in these instructions.

During the trial, you have heard references to defendants' appearances before Congress and various regulatory agencies. Under the law, each defendant has the right to petition, provide information, and express its views to the government on the issue of policy and legislation concerning smoking and health.

These and similar communications with the government, advocacy efforts, and government submissions are protected under the First Amendment of the United States Constitution, as well as Florida law.

The warning labels placed on cigarette packs and advertisements by defendants and other tobacco companies complied with federal law, and, after July 1st, 1969, defendants had

Page 3088

no obligation to place any additional warnings on their cigarette packages and advertisements.

Plaintiff does not allege that defendants failed to warn Anna Simon after July 1st, 1969, or that their advertising neutralized or undermined the warning labels on cigarette packaging after July 1st, 1969. However, defendants can be held liable as set forth in these instructions.

If your verdict is for defendants, you will not consider the matter of damages.

But if you find for plaintiff on one or more of his claims, then you will consider the amount of damages. Plaintiff has two alternative claims for damages. And if you find for plaintiff on one or more of these claims, the damages questions you answer will be determined by whether you found that COPD was a legal cause of Mrs. Simon's death.

In determining the total amount of damages, if any, to be awarded, you should not make any reduction because of the fault you have charged to Anna Simon. The Court will enter a judgment based on your verdict and, in entering judgment, will reduce the total amount

Page 3089

of damages by the percentage of fault which you find is chargeable to Mrs. Simon.

However, if you find for plaintiff on his claim of fraud by concealment or agreement to commit fraud by concealment, then the verdict will not be reduced to account for your finding of comparative fault and plaintiff will recover the full amount of damages you have awarded.

If you find for plaintiff on one or more of the claims and you find that COPD was a legal cause of Mrs. Simon's death, then you will consider only the damages available to plaintiff on his wrongful death claim.

In that event, you should determine and write on the verdict form, in dollars, the total amount of loss, injury or damage which the greater weight of the evidence shows Marc Simon sustained as a result of Anna Simon's injury and death.

In determining any damages to be awarded for the benefit of Marc Simon, you should consider certain elements of damage for which there is no exact standard for fixing the compensation to be awarded. Any such award should be fair and just in the light of the

1        IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
            IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
2                     COMPLEX CIVIL DIVISION

3                    CASE NO. 08-80000 (19)

4
     IN RE:  ENGLE PROGENY CASES
5    TOBACCO LITIGATION

6    Pertains to:  LESLIE SCHLEFSTEIN, as
     Personal Representative of the Estate of
7    DAWN SCHLEFSTEIN
     Case No. 08-22558 (19)
8    ----------------------------------/

9

10

11                JURY TRIAL BEFORE THE HONORABLE
                     MILY RODRIGUEZ-POWELL
                       CIRCUIT COURT JUDGE
12

13                        (Volume 26)

14                    Pages 3571 to 3723

15
                   Wednesday, January 31, 2018
16                     1:25 p.m. - 4:45 p.m.

17
                    Broward County Courthouse
18                    201 Southeast 6th Street
                        Courtroom 15155
19              Fort Lauderdale, Florida  33301

20
                  STENOGRAPHICALLY REPORTED BY:
21                    SUSAN D. WASILEWSKI
                   Registered Professional Reporter
22                  Certified Realtime Reporter
              Certified Manager of Reporting Services
23                Certified Realtime Captioner
                   Florida Professional Reporter
24            Certified Court Reporter - New Jersey
                 ~ Realtime Systems Administrator ~
25

Page 3636

1   If the greater weight of the evidence does not
2   support the plaintiff's claim, your verdict on the
3   claim is for R.J. Reynolds.
4       If, however, the greater weight of the
5   evidence does support the plaintiff's claim, then
6   your verdict will be for plaintiff and against R.J.
7   Reynolds on this claim.
8       If your verdict is for R.J. Reynolds, you will
9   not consider the matter of damages, but if the
10  greater weight of the evidence supports plaintiff's
11  claim, you should determine and write on the
12  verdict form in dollars the total amount of damage
13  which the greater weight of the evidence will
14  fairly and adequately compensate for injury to Dawn
15  Schlefstein and no one else.
16      You shall consider the following elements:
17  Any bodily injury sustained by Dawn Schlefstein and
18  any resulting pain and suffering, disability or
19  physical impairment, disfigurement, mental anguish,
20  inconvenience or loss of capacity for the enjoyment
21  of life experienced until June 2009 resulting from
22  Dawn Schlefstein's COPD/emphysema.
23      There is no exact standard for measuring such
24  damage. The amount should be fair and just in
25  light of the evidence; the reasonable value or

Page 3637

1   expense of hospitalization and medical and nursing
2   care and treatment necessarily or reasonably
3   obtained by Dawn Schlefstein until June 2009
4   resulting from her COPD/emphysema.
5       If you find that R.J. Reynolds Tobacco Company
6   caused Dawn Schlefstein's COPD/emphysema and that
7   the COPD/emphysema resulted in an aggravation of an
8   existing disease or physical defect, or activation
9   of a latent disease or physical defect, you should
10  attempt to decide what portion of Dawn
11  Schlefstein's condition resulted from the
12  aggravation or activation.
13      If you can make that determination, then you
14  should award only those damages resulting from the
15  aggravation or activation. However, if you cannot
16  make that determination or if it cannot be said
17  that the condition would have existed apart from
18  Dawn Schlefstein's COPD/emphysema, then you should
19  award damages for the entire condition suffered by
20  Dawn Schlefstein.
21      The manufacture, sale, and advertisement of
22  cigarettes are lawful activities. R.J. Reynolds
23  cannot be held liable merely for manufacturing,
24  selling, or advertising cigarettes. During the
25  trial, you heard evidence about actions taken by

Page 3638

1   R.J. Reynolds Tobacco Company or its attorneys to
2   defend against lawsuits. Conduct related to the
3   proper defense of litigation, including conduct
4   related to the defense of this case, is protected
5   free speech.
6       During the trial, you have heard references to
7   R.J. Reynolds' appearance before Congress and
8   various regulatory agencies. Under the law, R.J.
9   Reynolds has the right to petition, provide
10  information, and express its views to the
11  Government on the issue of policy and legislation
12  concerning smoking and health.
13      These and similar communications with the
14  government, advocacy efforts and government
15  submissions are protected under the First Amendment
16  to the United States Constitution as well as
17  Florida law.
18      A final issue for your determination is
19  whether, in addition to compensatory damages,
20  punitive damages may be warranted under the
21  circumstances in this case against the defendant,
22  R.J. Reynolds Tobacco Company, as punishment and as
23  a deterrent to others. Any such damages would be
24  in addition to any compensatory damages you may
25  award.

Page 3639

1       The trial of the punitive damages claim is
2   divided into two parts. In this first part, you
3   will decide whether the conduct of R.J. Reynolds
4   was such that punitive damages may be warranted.
5       If you decide that punitive damages may be
6   warranted, we will proceed to a second part on that
7   issue, during which the parties may present
8   additional evidence and argument on the issue of
9   punitive damages.
10      I will then give you additional legal
11  instructions, after which you will decide whether,
12  in your discretion, punitive damages will be
13  assessed, and if so, the amount.
14      You may, in your discretion, decline to assess
15  punitive damages. Your decision whether to award
16  punitive damages must be based on the evidence you
17  heard in this trial and not based on the findings I
18  previously read to you.
19      Punitive damages are warranted if you find, by
20  clear and convincing evidence, that, one, the
21  conduct causing injury to Dawn Schlefstein was so
22  gross and flagrant as to show a reckless disregard
23  of human life or of the safety of persons exposed
24  to the effects of such conduct;
25      Or, two, the conduct showed such an entire

Page 2982

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 50 2016 CA 008532 XXXX MB

JULIE ADAMSON, as Personal
Representative of the Estate of
JACKLYN ADAMSON,
        Plaintiff,
vs.
R.J. REYNOLDS TOBACCO COMPANY,
        Defendant.
_____/

TRANSCRIPT OF JURY TRIAL PROCEEDINGS
VOLUME 11 (Pages 2982 - 3381)

DATE TAKEN: November 21, 2017
TIME:      8:35 a.m. - 5:22 p.m.
PLACE:     Palm Beach County Courthouse
           205 N. Dixie Highway
           Courtroom 9C
BEFORE:    MEENU SASSER, Circuit Judge


This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:
        Gina Rodriguez, RPR, CRR, CCP

---

Page 2983

1  APPEARANCES:
2  On behalf of Plaintiff:
3    MORGAN & MORGAN
     810 Broadway
4    Suite 105
     Nashville, Tennessee 37203
5    (615)490-0944
     BY: KATHRYN E. BARNETT, ESQUIRE
6    kbarnett@forthepeople.com
     MORGAN & MORGAN
7    76 South Laura Street
     Suite 1100
8    Jacksonville, Florida 32202
     (904)398-2722
9    BY: KATHERINE M. MASSA, ESQUIRE
     kmassa@forthepeople.com
10   BY: ANTONIO LUCIANO, ESQUIRE
     aluciano@forthepeople.com
11   MORGAN & MORGAN
     515 North Flagler Drive
12   Suite 2125
     West Palm Beach, Florida 33401
13   (561) 227-5858
     BY: ALEX BRAUNSTEIN, ESQUIRE
14   abraunstein@forthepeople.com
16   BRANNOCK & HUMPHRIES
     1111 West Cass Street, Suite 200
17   Tampa, Florida 33606
     BY: CELENE H. HUMPHRIES, ESQUIRE
18   chumphries@BHAppeals.com
     BY: MAEGAN PEEK LUKA, ESQUIRE
19   mluka@bluppeals.com
20 On behalf of Defendant R.J. Reynolds Tobacco
   Company:
21
     KING & SPALDING, LLP
23   1180 Peachtree Street, N.E.
     Atlanta, Georgia 30309
24   (404)572-4600
     BY: W. RANDALL BASSETT, ESQUIRE
25   rbassett@kslaw.com
     BY: BETHANY SCHNEIDER, ESQUIRE
     bschneider@kslaw.com

---

Page 2984

1  APPEARANCES CONTINUED:
2  On behalf of Defendant R.J. Reynolds Tobacco
   Company:
3
     KING & SPALDING LLP
4    1700 Pennsylvania Avenue NW
     Suite 200
5    Washington, D.C. 20006
     (202)737-0500
6    BY: SCOTT EDSON, ESQUIRE
     sedson@kslaw.com
7    BY: MARISA C. MALECK, ESQUIRE
     mmaleck@kslaw.com

---

Page 2985

1                    I N D E X
2
   Examination                          Page
3
   STEPHEN S. RAAB, M.D.
4  Direct (continued) By Ms. Schneider    3012
   Cross        By Ms. Barnett            3015
5  Redirect     By Ms. Schneider          3051
6  MARK SHUMAN, M.D.
   Direct       By Ms. Schneider          3056
7  Cross        By Mr. Luciano            3100
   Redirect     By Ms. Schneider          3121
8  Jury Questions                         3125
9  Cross        By Mr. Luciano            3126
   Cross        By Ms. Schneider          3127
10 Answers to interrogatories published   3130
11 Defense rests                          3132
12 Jury instructions                      3143
13 Closing Statement  By Ms. Barnett      3174
14 Closing Statement  By Mr. Bassett      3267
15 Closing Statement  By Ms. Schneider    3290
16 Closing Statement (cont'd) By Mr. Bassett  3309
17
18
19
20
21
22
23
24
25

1 (Pages 2982 to 2985)

Page 3150

1  for Julie Adamson, and you will proceed to
2  decide the other issues on Julie Adamson's
3  claim.
4      If you find that Jacklyn Adamson is a
5  member of the Engle class, then certain findings
6  will be the law in this case and must be
7  accepted by you as true.
8      They are: Smoking cigarettes causes aortic
9  aneurysm; bladder cancer; cerebrovascular
10  disease; cervical cancer; chronic obstructive
11  pulmonary disease; coronary heart disease;
12  esophageal cancer; kidney cancer; laryngeal
13  cancer; lung cancer, specifically
14  adenocarcinoma, large cell carcinoma, small cell
15  carcinoma and squamous cell carcinoma;
16  complications of pregnancy; oral cavity and
17  tongue cancer; pancreatic cancer; peripheral
18  vascular disease; pharyngeal cancer; and stomach
19  cancer.
20      Nicotine in cigarettes is addictive. The
21  Engle defendants, including R.J. Reynolds,
22  placed cigarettes on this market that were
23  defective and unreasonably dangerous. The Engle
24  defendants, including R.J. Reynolds, were
25  negligent. The Engle defendants, including

Page 3151

1  R.J. Reynolds, concealed or omitted material
2  information not otherwise known or available,
3  knowing the material was false or misleading, or
4  failed to disclose a material fact concerning or
5  proving the health effects or addictive nature
6  of smoking cigarettes.
7      R.J. Reynolds entered into an agreement to
8  conceal or omit information regarding the heath
9  effects of cigarette smoking or addictive nature
10  of smoking cigarettes with the intention that
11  smokers and that members of the public rely to
12  their detriment.
13      The Engle defendants include R.J. Reynolds
14  Tobacco Company, Philip Morris Incorporated,
15  Philip Morris USA, Lorillard Tobacco Company,
16  Brown & Williamson Tobacco Corporation,
17  individually and as a successor by merger to the
18  American Tobacco Company, Liggett Group, Inc.,
19  Brooke Group Holding, Inc., the Council for
20  Tobacco Research, Inc., and The Tobacco
21  Institute, Inc.
22      Your consideration and use of these
23  findings will be subject to certain limitations.
24  First, you must not consider these findings in
25  determining whether Jacklyn Adamson had primary

Page 3152

1  lung cancer or whether she was addicted to
2  cigarettes containing nicotine and, if so,
3  whether such addiction was a legal cause of her
4  death.
5      These findings do not apply to Plaintiff's
6  claims in this case unless you have first
7  determined, without considering or applying
8  those findings, that Plaintiff has met her
9  burden of proving both of these issues.
10      Second, these findings do not establish
11  that R.J. Reynolds is liable to Plaintiff in
12  this case, nor do they establish whether Jacklyn
13  Adamson was injured by R.J. Reynolds' product or
14  conduct or the degree, if any, to which
15  R.J. Reynolds' product or conduct was a legal
16  cause of Jacklyn Adamson's death.
17      Third, these findings establish only what
18  they expressly state, and you must not speculate
19  or guess as to the basis of the findings.
20      Fourth, the findings may not be considered
21  when determining whether punitive damages may be
22  warranted against R.J. Reynolds. You must treat
23  these findings as if they do not exist, and you
24  must make determinations -- and you must make
25  your determination regarding whether punitive

Page 3153

1  damages may be warranted based solely upon the
2  evidence of R.J. Reynolds' conduct presented to
3  you in this trial.
4      Manufacturing, selling, and advertising
5  cigarettes are lawful activities. Therefore,
6  R.J. Reynolds Tobacco Company -- R.J. Reynolds
7  cannot be held liable for manufacturing,
8  selling, or advertising cigarettes.
9      During the trial, you have heard references
10  to R.J. Reynolds' appearance before Congress and
11  various regulatory agencies. Under the law,
12  R.J. Reynolds has a right to petition, provide
13  information, and express its views to the
14  government on the issue of policy and
15  legislation concerning smoking and health.
16      These and similar communications with
17  government advocacy efforts and government
18  submissions are protected under the First
19  Amendment to the United States Constitution as
20  well as Florida law.
21      Therefore, R.J. Reynolds cannot be held
22  liable merely for exercising its First Amendment
23  rights under the United States Constitution.
24      Conduct related to the defense of
25  litigation is protected free speech. Therefore,

43 (Pages 3150 to 3153)

Electronically signed by Gina Rodriquez (201-182-126-9514)                                                     f0e6f565-3e05-4184-91c7-284bf23d...

Page 3154

1   R.J. Reynolds cannot be held liable or punished
2   for defending themselves in litigation or for
3   exercising its rights under the U.S.
4   Constitution.
5       Julie Adamson makes no claim that
6   R.J. Reynolds failed to adequately warn Jacklyn
7   Adamson of the dangers or addictiveness of
8   smoking cigarettes. There is no claim that
9   cigarette packs or advertisements should have
10  contained additional or different information or
11  any graphics -- or excuse me, any graphics
12  warning about the danger or addictiveness of
13  smoking cigarettes.
14      In addition, as long as the cigarette packs
15  bear the federally mandated warnings, cigarette
16  advertising from July 1st, 1969 forward cannot
17  be the subject of any claim that the advertising
18  undermined or neutralized the warnings or made
19  them less effective.
20      The next issue for your determination is
21  whether cigarettes manufactured by R.J. Reynolds
22  Tobacco Company were a legal cause of Jacklyn
23  Adamson's death.
24      R.J. Reynolds' cigarettes were a legal
25  cause of Jacklyn Adamson's death if those

Page 3155

1   cigarettes directly and in natural and
2   continuous sequence produced or contributed
3   substantially to producing such death so that it
4   can be reasonably said that but for those
5   cigarettes, the death would not have occurred.
6       In order to be regarded as a legal cause of
7   death, R.J. Reynolds' cigarettes need not be the
8   only cause. R.J. Reynolds' cigarettes may be a
9   legal cause of death even though they operate in
10  combination with the act of another, some
11  natural cause, or some other cause if
12  R.J. Reynolds' cigarettes contributed
13  substantially in producing the death.
14      If the greater weight of the evidence does
15  not support Julie Adamson's claim on this issue,
16  then your verdict on this issue should be for
17  R.J. Reynolds.
18      If the greater weight of the evidence
19  supports Julie Adamson's claim on this issue,
20  your verdict on this issue should be for Julie
21  Adamson and against R.J. Reynolds.
22      The next claim you must consider is Julie
23  Adamson's claim for fraudulent concealment.
24  R.J. Reynolds cannot be held liable for
25  fraudulent concealment for failure to make any

Page 3156

1   statements to Julie -- excuse me -- Jacklyn
2   Adamson regarding the potential health effects
3   of smoking cigarettes, the potentially addictive
4   nature of smoking cigarettes, or any other
5   issue.
6       R.J. Reynolds can only be held liable for
7   fraudulent concealment if you find that
8   R.J. Reynolds made a statement that misled
9   Jacklyn Adamson because it concealed or omitted
10  a material fact not otherwise known or available
11  regarding the health -- potential health effects
12  of smoking cigarettes and/or the potentially
13  addictive nature of smoking cigarettes.
14      On this claim, the issue for your
15  determination is whether Jacklyn Adamson
16  reasonably relied to her detriment on any
17  statement of material fact by R.J. Reynolds that
18  concealed or omitted material information not
19  otherwise known or available concerning the
20  health effects or addictive nature of smoking
21  cigarettes and, if so, whether such reliance was
22  a legal cause of Jacklyn Adamson's death.
23      Reasonable reliance on a statement that is
24  misleading because it conceals or omits a
25  material fact is a legal cause of injury if it

Page 3157

1   directly and in natural and continuous sequence
2   produces or contributes substantially to
3   producing such injury so that it can reasonably
4   be said that but for reliance, the injury would
5   not have occurred.
6       In order to be regarded as a legal cause of
7   death, reasonable reliance on a statement that
8   is misleading because it conceals or omits a
9   material fact may not be the only cause.
10  Reasonable reliance on a statement that is
11  misleading because it conceals or omits a
12  material fact may be a legal cause of death even
13  though it operates in combination with the act
14  of another, some natural cause, or some other
15  cause if the reliance contributes substantially
16  to producing the death.
17      A material fact is one that is of such
18  importance that Jacklyn Adamson would not have
19  acted as she did but for the concealment or
20  omission of the fact.
21      Jacklyn Adamson may not have relied if she
22  knew it was false or its falsity was obvious or
23  if the fact allegedly concealed was already
24  known.
25      If the greater weight of the evidence does

44 (Pages 3154 to 3157)

2321

1  IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
    IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
2      COMPLEX CIVIL DIVISION

3      CASE NO. 08-80000 (19)

4

  IN RE: ENGLE PROGENY CASES TOBACCO
5  LITIGATION

6  Pertains to: Bertie Thomas, as Personal
    Representative of the Estate of Marvin
7  Thomas

8  Case No.: 07-CV-036432 (19)
  -------------------------------------/
9

10

11     JURY TRIAL BEFORE THE HONORABLE
       JOHN J. MURPHY, III
12       CIRCUIT COURT JUDGE

13

        (Volume 16)
14

       Pages 2321 to 2524
15

16      Thursday, July 27, 2017
      11:50 a.m. - 4:58 p.m.
17

18     Broward County Courthouse
      201 Southeast 6th Street
19      Courtroom 14150
    Fort Lauderdale, Florida 33301
20

21

     STENOGRAPHICALLY REPORTED BY:
22  NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
  Certificate in Realtime Systems Administration
23     Certified Realtime Reporter
    Registered Professional Reporter
24     Florida Professional Reporter

25

11:50:11AM

2342

1  Defendant R.J. Reynolds Tobacco Company as well as
2  Philip Morris USA, Inc., Lorillard Tobacco Company,
3  Liggett Group, LLC, Brown & Williamson Tobacco
4  Corporation, American Tobacco Company, the Tobacco
5  Industry Research Committee, the Council for
6  Tobacco Research-USA, Inc., and The Tobacco
7  Institute, Inc.
8       If the greater weight of the evidence does not
9  support the Plaintiff's claim that Marvin Thomas
10  relied on any statement made in furtherance of an
11  agreement to conceal material information
12  concerning the health effects or addictive nature
13  of smoking cigarettes, your verdict is for the
14  Defendant on that claim.
15       However, if the greater weight supports the
16  Plaintiff's claim that Marvin Thomas relied on any
17  statement made in furtherance of an agreement to
18  conceal or omit information -- omit information,
19  material information concerning the health effects
20  or addictive nature of smoking cigarettes, your
21  verdict will be for Plaintiff on this claim.
22       Instruction Number 15.
23       I hereby instruct you that Plaintiff has made
24  no claim for conspiracy to conceal information
25  regarding smoking, health, or addiction before

2343

1  1953.
2       Instruction Number 16.
3       The manufacture and sale of cigarettes are
4  lawful activities. R.J. Reynolds cannot be held
5  liable merely for manufacturing or selling
6  cigarettes.
7       Instruction 17.
8       During the trial, you've heard evidence about
9  actions taken by R.J. Reynolds Tobacco Company or
10  its attorneys to defend against lawsuits, including
11  this one. Conduct related to the proper defense of
12  litigation, including conduct related to the
13  defense of this case, is protected free speech.
14       Instruction Number 18.
15       During the trial, you have heard references to
16  R.J. Reynolds' appearance before Congress and
17  various regulatory agencies. Under the law, R.J.
18  Reynolds has the right to petition, provide
19  information, and express their views to the
20  government on the issue of policy and legislation
21  concerning smoking and health.
22       These and other -- excuse me. These and
23  similar communications with the government advocacy
24  efforts and government submissions are protected
25  under the First Amendment to the United States

2344

1  Constitution, as well as Florida law.
2       Instruction Number 19.
3       The warning labels placed on cigarette packs
4  and advertisements by R.J. Reynolds and other
5  tobacco companies complied with federal law, and,
6  after July 1, 1969, R.J. Reynolds had no obligation
7  to place any additional warnings on its cigarette
8  packages and advertisements.
9       Further, as long as the cigarette packs bear
10  the federally mandated warnings, cigarette
11  advertising from July 1st, 1969, cannot be the
12  subject of any claim that the advertising
13  undermined or neutralized the warnings or made them
14  less effective.
15       Instruction Number 20.
16       The next issue for your determination is the
17  issue of comparative fault. You must determine and
18  write on the verdict form the percentage of fault
19  on the part of Marvin Thomas and the percentage of
20  fault, if any, that you charge to Defendant, R.J.
21  Reynolds Tobacco Company, which you find -- found
22  to be liable to Plaintiff for legally causing
23  Marvin Thomas' injury and death.
24       Fault is the failure to use reasonable care,
25  which is the care that a reasonably careful person

2345

1  would use under like circumstances. Fault is doing
2  something that a reasonably careful person would
3  not do under like circumstances, or failing to do
4  something a reasonably careful person would do
5  under like circumstances.
6       Fault is a legal cause of injury and damage --
7  injury and damage if it directly and in natural and
8  continuous sequence produces or contributes
9  substantially to producing such injury and death,
10  so that it can reasonably be said that but for the
11  fault, the injury and death would not have
12  occurred.
13       In order to be regarded as a legal cause of
14  injury and death, fault need not be the only cause.
15  Fault may be a legal cause of injury and death,
16  even though it operates in combination with the act
17  of another, such natural cause, or some other cause
18  if the fault contributes substantially to producing
19  the injury and death.
20       You should determine and write on the verdict
21  what percentage of total fault is chargeable to
22  Marvin Thomas, if any, and what percentage of total
23  fault, if any, is chargeable to the Defendant, R.J.
24  Reynolds Tobacco Company.
25       Instruction 21.

Page 2735

1                    IN THE CIRCUIT COURT
              OF THE SEVENTEENTH JUDICIAL CIRCUIT
2              IN AND FOR BROWARD COUNTY, FLORIDA
                    CASE NO. 08-80000(19)
3

4

   IN RE:  ENGLE PROGENY CASES
5   TOBACCO LITIGATION

6   Pertains to:  Howles, Mary, 2007-CV-034919
                                                    /
7

8

9

                    TRIAL PROCEEDINGS BEFORE
10          THE HONORABLE MILY RODRIGUEZ-POWELL
11                     VOLUME 22
12                  (Pages 2735 - 2885)
13   DATE TAKEN:     WEDNESDAY, NOVEMBER 9, 2016
14   TIME:           1:23 P.M. - 4:30 P.M.
15   PLACE:          BROWARD COUNTY COURTHOUSE
                     201 SOUTHEAST 6TH STREET
16                   FORT LAUDERDALE, FLORIDA 33301
17

18

19

20

21

22

                    STENOGRAPHICALLY REPORTED BY:
23

                    CARMEN J. THOMAS, RPR
24

25

Page 2872

1    You shall consider the following elements.
2    Any bodily injury sustained by Mary Howles that
3    resulted in pain and suffering, disability, or
4    physical impairment, disfigurement, mental anguish,
5    inconvenience, or loss of capacity for the
6    enjoyment of life experience in the past or to be
7    experienced in the future resulting from Mary
8    Howles' lung cancer and COPD, emphysema. There is
9    no exact standard for measuring such damage. The
10   amount should be fair and just in light of the
11   evidence.
12       In determining the total amount of damages,
13   you should not make any reduction because of the
14   negligence of Mary Howles. The Court, in entering
15   judgment, will reduce the total amount of damages
16   by the percentage of responsibility which you find
17   is chargeable to Mary Howles.
18       If the greater weight of the evidence shows
19   Mary Howles has been permanently injured, you may
20   consider her life expectancy. The mortality tables
21   received in evidence may be considered in
22   determining how long Mary Howles may be expected to
23   live. Mortality tables are not binding on you, but
24   may be considered together with other evidence in
25   the case bearing on Mary Howles' health, age,

Page 2873

1    physical condition, before and after the injury,
2    and determining the probable lengths of her life.
3        The fact that Philip Morris USA and R.J.
4    Reynolds Tobacco Company is a corporation must not
5    prejudice you in any of your deliberations or in
6    your verdict. You may not discriminate between
7    corporations and natural individuals. Both are
8    persons in the eyes of the law, and both are
9    entitled to the same fair and impartial
10   consideration by the same legal standards.
11       Philip Morris USA, Inc., and R.J. Reynolds
12   Tobacco Company are responsible for the conduct of
13   their agents and employees acting within the scope
14   and course of their agency and employment.
15       The manufacture, sale and advertisement of
16   cigarettes is a lawful activity. The Defendants
17   cannot be held liable merely for manufacturing,
18   selling or advertising cigarettes.
19       During the trial, you have heard references
20   to Defendants' appearances before Congress and
21   various regulatory agencies. Under the law, the
22   Defendants have the right to petition, provide
23   information and express their views to the
24   government on the issue of policy and legislation
25   concerning smoking and health. These and similar

Page 2874

1    communications with the government advocacy efforts
2    and government submissions are protected under the
3    First Amendment to the United States Constitution
4    as well as Florida law.
5        The warning labels placed on cigarette packs
6    by Philip Morris USA, Inc., and R.J. Reynolds
7    Tobacco Company and other tobacco companies
8    complied with federal law. After July 1, 1969,
9    Philip Morris USA, Inc., and R.J. Reynolds Tobacco
10   Company and other tobacco companies had no
11   obligation to place any additional warnings on
12   their cigarette packages.
13       Further, as long as the cigarette packs bear
14   the federally mandated warnings, cigarette
15   advertising after July 1, 1969, cannot be the
16   subject of any claim that the advertising
17   undermined or neutralized the warnings or made them
18   less effective.
19       During the trial, you heard evidence about
20   actions taken by Philip Morris USA, Inc., and R.J.
21   Reynolds Tobacco Company or their attorneys to
22   defend against lawsuits, including this one. The
23   conduct related to the proper defense of
24   litigation, including conduct related to the
25   defense of this case, is protected free speech.

Page 2875

1        The final issue for your determination is
2    whether, in addition to compensatory damages,
3    punitive damages may be warranted under the
4    circumstances of this case against Philip Morris
5    USA and/or R.J. Reynolds Tobacco Company as
6    punishment and as a deterrent to others. Any such
7    damages would be in addition to any compensatory
8    damages you may award.
9        The trial of the punitive damages claim is
10   divided into two parts. In this first part, you
11   will decide whether the conduct of Philip Morris
12   USA, Inc., and/or R.J. Reynolds Tobacco Company was
13   such that punitive damages may be warranted. If
14   you decide punitive damages may be warranted, we
15   will proceed to a second part on that issue during
16   which the parties may present additional evidence
17   and argument on the issue of punitive damages. I
18   will then give you additional legal instructions,
19   after which you will decide whether, in your
20   discretion, punitive damages will be assessed and
21   if so, the amount. You may, in your discretion,
22   decline to assess punitive damages. Your decision
23   whether to award punitive damages must be based on
24   evidence you heard in this trial and not based on
25   the findings that I've previously read to you.

36 (Pages 2872 - 2875)

3351

```
 1              IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
                IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
 2                        COMPLEX CIVIL DIVISION

 3                        CASE NO. 08-80000 (19)

 4
        IN RE:  ENGLE PROGENY CASES
 5      TOBACCO LITIGATION

 6      Pertains to:  Alan Konzelman as Personal
                Representative of the Estate of Eleanor
 7      Konzelman

 8      Case No. 2008-CV-019620 (19)
        ------------------------------------/
 9

10

11                    JURY TRIAL BEFORE THE HONORABLE
                          JOHN J. MURPHY, III
12                        CIRCUIT COURT JUDGE

13
                              (Volume 19)
14
                          Pages 3351 to 3524
15

16                       Friday, October 21, 2016
                          8:45 a.m. - 12:14 p.m.
17

18                     Broward County Courthouse
                       201 Southeast 6th Street
19                          Courtroom 850
                     Fort Lauderdale, Florida  33301
20

21
                       STENOGRAPHICALLY REPORTED BY:
22              NANCY E. PAULSEN, C.R.R., R.P.R., F.P.R.
           Certificate in Realtime Systems Administration
23                   Certified Realtime Reporter
                   Registered Professional Reporter
24                    Florida Professional Reporter

25
```

08:45:33AM

3408

1 importance that Mrs. Konzelman would not have acted
2 as she did but for the concealment or omission of
3 that fact.
4       Mrs. Konzelman cannot be found to have
5 reasonably relied on the concealment or omission of
6 a material fact if the fact allegedly concealed was
7 already known to her.
8       If the greater weight of the evidence does not
9 support the claim on this issue against Reynolds,
10 your verdict should be for Reynolds on this claim.
11 However, if the greater weight of the evidence does
12 support the claim of Plaintiff against Reynolds,
13 then your verdict will be for Plaintiff on this
14 claim.
15       Instruction 14. The next claim you must
16 consider is the Plaintiff's claim that R.J.
17 Reynolds agreed to conceal or omit material
18 information not otherwise known or available
19 regarding the health effects of cigarettes or the
20 addictive nature of cigarettes.
21       On this claim, the issue for your
22 determination is whether Mrs. Konzelman reasonably
23 relied on an act or omission made in furtherance of
24 Reynolds' agreement to conceal or omit information
25 not otherwise known or available concerning the

3409

1 health effects or addictive nature of cigarettes
2 and, if so, whether such reliance was a legal cause
3 of her COPD and death.
4       Reasonable reliance on an act or omission made
5 in furtherance of an agreement to conceal or omit
6 information not otherwise known or available is a
7 legal cause of COPD and death if it directly and in
8 natural and continuous sequence produces or
9 contributes substantially to producing the COPD and
10 death, so that it can reasonably be said that, but
11 for the reasonable reliance on an act or omission
12 made in furtherance of the agreement to conceal or
13 omit, Mrs. Konzelman's COPD and death would not
14 have occurred.
15       This means that the Plaintiff must prove that
16 but for her reliance on the act or omission,
17 Mrs. Konzelman would have acted differently and
18 avoided her COPD and death.
19       In order to be regarded as a legal cause of
20 COPD and death, reasonable reliance need not be the
21 only cause. Reasonable reliance may be a legal
22 cause of COPD and death, even though it operates in
23 combination with some other cause if it contributes
24 substantially to producing COPD and death.
25       A material fact is one that is of such

3410

1 importance that Mrs. Konzelman would not have acted
2 as she did but for the concealment or omission of
3 that fact.
4       Mrs. Konzelman cannot be found to have
5 reasonably relied on an act, omission -- or
6 omission made in furtherance of an agreement to
7 conceal if the facts allegedly concealed was
8 already known to her.
9       R.J. Reynolds Tobacco Company is legally
10 responsible for each act or omission by each of its
11 co-conspirators made in furtherance of their
12 agreement to conceal or omit material information
13 not otherwise known or available regarding the
14 health effects of cigarette smoking or the
15 addictive nature of smoking cigarettes.
16       These companies and organizations include R.J.
17 Reynolds, as well as Philip Morris USA, Inc.,
18 Lorillard Tobacco Company, Liggett Group LLC,
19 Brown & Williamson Tobacco Corporation, the
20 American Tobacco Company, the Tobacco Industry
21 Research Committee, the Council for Tobacco
22 Research, and The Tobacco Institute, Inc.
23       If the greater weight of the evidence does not
24 support the claim on this issue against Reynolds,
25 your verdict should be for Reynolds on this claim.

3411

1 However, if the greater weight of the evidence does
2 support the claim of Plaintiff on this claim, then
3 your verdict on this claim will be for Plaintiff.
4       Instruction 15. The manufacture,
5 advertisement, and sale of cigarettes are lawful
6 activities. Thus, R.J. Reynolds cannot be held
7 liable merely for manufacturing, selling or
8 advertising cigarettes.
9       Instruction 16. During the trial, you heard
10 evidence about actions taken by R.J. Reynolds
11 Tobacco Company or its attorneys to defend against
12 lawsuits, including this one. Conduct related to
13 the proper defense of litigation, including conduct
14 related to the defense of this case, is protected
15 free speech.
16       Instruction Number 17. During the trial, you
17 have heard reference -- references to Reynolds'
18 appearance before Congress and various regulatory
19 agencies. Under the law, Reynolds has a right to
20 petition, to provide information, and express their
21 views to the government on the issue of policy and
22 legislation concerning smoking and health.
23       These and similar communications with the
24 government, advocacy efforts, and government
25 submissions are protected under the First Amendment

3412

1  to the US Constitution, as well as Florida law.
2        Instruction Number 18. The warning labels
3  placed on cigarette packs and advertisements by
4  Reynolds and other tobacco companies complied with
5  federal law, and, after July 1st, 1996 [sic],
6  Reynolds had no obligation to place any additional
7  warnings on its cigarette packages and
8  advertisements.
9        Further, as long as the cigarette packs bear
10 the federally mandated warnings, cigarette
11 advertising from July 1, 1969, cannot be the
12 subject of any claim that advertising undermined or
13 neutralized the warnings or made them less
14 effective.
15       Instruction 19. The next issue for your
16 determination is the issue of comparative
17 responsibility. You must determine and write on
18 the verdict form the percentage of responsibility
19 on the part of Elaine Konzelman, if any, and the
20 percentage of responsibility, if any, that you
21 charge to Defendant R.J. Reynolds Tobacco Company
22 which you found to be liable to Plaintiff for
23 legally causing Elaine Konzelman's loss, injury or
24 damage.
25       Negligence is a failure to use reasonable

3413

1  care, which is the care that a reasonably careful
2  person would use under like circumstances.
3  Negligence is doing something that a reasonably
4  careful person would not do under like
5  circumstances, or failing to do something a
6  reasonably careful person would do under like
7  circumstances.
8        Negligence is a legal cause of loss, injury or
9  damage if it directly and in natural and continuous
10 sequence produces or contributes substantially to
11 producing such loss, injury or damage, so that it
12 can reasonably be said that, but for the
13 negligence, the loss, injury or damage would not
14 have occurred.
15       In order to be regarded as a legal cause of
16 loss, injury or damage, negligence/fault need not
17 be the only cause. Negligence may be a legal cause
18 of loss, injury or damage, even though it operates
19 in combination with the act of another, such
20 natural cause, or some other cause if the
21 negligence contributes substantially to producing
22 the loss, injury or damage.
23       You should determine and write on the verdict
24 what percentage of the total fault is chargeable to
25 Elaine Konzelman, if any, and what percentage of

3414

1  total fault, if any, is chargeable to the
2  Defendant, R.J. Reynolds Tobacco Company.
3        Your determination of R.J. Reynolds' fault, if
4  any, must be based solely on the conduct of R.J.
5  Reynolds, if any, that was a legal cause of
6  Mrs. Konzelman's COPD. In making this
7  determination, you should not consider any alleged
8  conduct of R.J. Reynolds that you find was not a
9  legal cause of Mrs. Konzelman's COPD.
10       Instruction Number 20. If your verdict is for
11 the Defendant, you will not consider the matter of
12 damages. But if the greater weight of the evidence
13 supports one or more of Plaintiff's claims, you
14 should determine and write on the verdict form, in
15 dollars, the total amount of loss, injury or damage
16 which the greater weight of the evidence shows Alan
17 Konzelman sustained as a result of Elaine
18 Konzelman's injury and death, including any damages
19 that Alan Konzelman is reasonably certain to incur
20 or experience in the future.
21       In determining any damages to be awarded for
22 the benefit of Elaine Konzelman's surviving spouse,
23 Alan Konzelman, you shall consider certain elements
24 of damage for which there is no exact standard for
25 fixing the compensation to be awarded. Any such

3415

1  award should be fair and just in light of the
2  evidence regarding the following elements:
3        Alan Konzelman's loss of his wife, Elaine
4  Konzelman's companionship and protection, and his
5  mental pain and suffering as a result of Elaine
6  Konzelman's injury and death. In determining the
7  duration of the losses, you may consider the joint
8  life expectancy of Elaine Konzelman and Alan
9  Konzelman, together with the other evidence in the
10 case.
11       In determining any damages sustained by Elaine
12 Konzelman's estate, you shall consider the
13 following elements:
14       Medical expenses due to the decedent, Elaine
15 Konzelman's COPD and death. In determining the
16 total amount of damages, if any, to be awarded to
17 Plaintiff as a result of Mrs. Konzelman's
18 COPD/emphysema and death, you should not make any
19 reduction because of the fault you have charged to
20 Mrs. Konzelman.
21       The Court will enter a judgment based upon
22 your verdict and, in entering judgment, will reduce
23 the total amount of damages by the percentage of
24 fault which you find chargeable to Mrs. Konzelman.
25 You may not award damages for any pain and