[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*San Francisco Unified School District v. JUUL Labs, Inc., et al.*<br><br>Case No. 3:19-cv-08177-WHO | Case No. 19-md-02913-WHO<br><br>**PLAINTIFF'S TRIAL BRIEF REGARDING TESTIMONY OF DR. JACK HENNINGFIELD** |

## **INTRODUCTION**

Defense expert Dr. Jack Henningfield's direct exam is expected to begin tomorrow. Plaintiff has two concerns:

- First, that Altria will seek to elicit opinions regarding Altria's knowledge, motive, or intent (or notice to Altria of particular facts and events) when Dr. Henningfield's report and reliance list include no Altria documents or testimony; and

- Second, that Dr. Henningfield will seek to use published opinion pieces (and even a powerpoint presented by Dr. Neal Benowitz at a conference) to serve as a conduit for opinions of experts who serve to bolster Dr. Henningfield's opinions without being subject to cross-examination.[1]

---

[1] Plaintiff's concerns are amplified by defense counsel's comments in opening that Dr. Benowitz is "one of the leading nicotine addiction experts in the world" who "believes that e-cigarettes can reduce the harm dramatically that smokers face," that he is "a scientist that has complete integrity," and "[he] would tell you that nicotine is what smokers smoke for." (Trial Tr. at 332-33, 353.). Given that Dr. Benowitz is not a witness in this case (despite being within Altria's subpoena power), Dr. Henningfield's attempt to bootstrap Dr. Benowitz's (and others') "opinions" seems an obvious candidate for what defense counsel had in mind during opening.

Plaintiff attempted to meet and confer with Altria and emailed Altria at 8:51 P.M. As of the filing of this brief, it has received no response.

## ARGUMENT

**I.   DR. HENNINGFIELD SHOULD BE PRECLUDED FROM TESTIFYING REGARDING ALTRIA'S KNOWLEDGE, MOTIVE, OR INTENT WITH RESPECT TO JUUL.**

Dr. Henningfield has several internal Altria documents on his exhibit list—Trial Exhibits 6017, 6074, 6138, and 6570. Dr. Henningfield's report cites no Altria documents and no testimony from Altria witnesses. His reliance list does not include any Altria-produced documents and does not include the depositions of any Altria witnesses. In short, he has no basis to offer fact or expert testimony on what Altria thought, knew, intended, or had notice of, including what appears—based on review of the slides and exhibits—to be a direct exam focused in part on Altria's ostensible harm reduction efforts.

**II.   DR. HENNINGFIELD SHOULD BE PRECLUDED FROM BOLSTERING THE OPINIONS OF HIS COLLEAGUES.**

The Court should not allow Dr. Henningfield to smuggle bolstering opinions of other experts into this trial by acting as a conduit via published opinion pieces and, in one instance, an unauthenticated powerpoint of unknown origin that appears to be a conference presentation by Dr. Neal Benowitz discussing at great length the pros and cons of JUUL. *See Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011).

Throughout trial, Altria's counsel have made repeated references to Dr. Neal Benowitz, a clinical pharmacology professor at UCSF. (Trial Tr. at 332:5-24 (Altria's counsel stating in opening that "even [Dr. Benowitz] believes that e-cigarettes can reduce the harm dramatically that smokers face when they smoke a burning tobacco product, a cigarette" and "Dr. Benowitz would tell you that nicotine is what smokers smoke for")). Dr. Benowitz has not been disclosed as an expert in this case, and Plaintiff has not had the opportunity to take discovery directed at his work or views on the topics at hand. Nor, of course, is he subject to cross-examination. Nevertheless, Altria seems poised to elicit testimony from Dr. Henningfield regarding Dr. Benowitz's views (and those of others) to bolster Dr. Henningfield's own opinions. Exhibits indicating as much

include trial exhibits 6565, 6568 and 6569. While these may qualify as learned treatises if the foundation is laid, they are nevertheless prejudicial and beyond the reach of cross-examination. Exhibit 7108—Dr. Benowitz's conference presentation—is equally or more prejudicial (given its content and the many references now to Dr. Benowitz as a shadow expert for defense) and is not subject to a potential learned treatise hearsay exception, or any other hearsay exception, assuming it could be authenticated in the first place.

Experts may not act merely as a conduit for another expert's opinion. While "expert opinions may find a basis in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert, … [t]here are limits to this general rule." *In re Toyota Motor Corp. Unintended Acceleration Mtkg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (internal quotations marks omitted). An expert may not "parrot the opinions of other experts or [] vouch for those experts." *In re Bard IVC Filters Prod. Liab. Litig.*, No. 150-2641, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2018); *Durham v. FCA US LLC*, No. 17-596, 2019 WL 2433853, at *6 (E.D. Cal. June 11, 2019) (same).

Presenting the jury with evidence or demonstratives that communicate the substance of a non-testifying expert beyond the reach of cross-examination would unfairly prejudice Plaintiff. Such a circumstance "arises when an expert effectively stands in the place of another expert and conveys the non-testifying expert's conclusions to the jury, or when their extensive reliance on the work of another expert renders their opinion a mere copy or derivative of the non-testifying expert's work." *Craton v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2013 WL 12421822, at *10 (W.D. Mich. Dec. 20, 2013); *see also Stokes v. Xerox Corp.*, No. 05-71683, 2008 WL 275672, at *7 (E.D. Mich. Jan. 28, 2008) ("It would be unfairly prejudicial to Xerox to allow the admission of this evidence without Xerox having the opportunity to cross-examine Hostetler, whom Stokes does not intend to call as a witness in this trial."). Courts have "squarely rejected any argument that rule 703 extends so far as to allow an expert to testify about the conclusions of other experts." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006).

Dr. Henningfield certainly is permitted to tell the jury they types of sources he relied on in forming his opinions, including published literature and opinion pieces by top experts in the field.

But to ensure that that the jury hears only Dr. Henningfield's substantive opinions, and not those of every public health expert who happens to have said good things about e-cigarettes at one time or another, the Court should not permit Dr. Henningfield to serve as a conduit for the opinions of leaders in the field who have not been disclosed as defense experts and who will not be called to trial.

**III. SLIDES 23-24 SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE THEY ATTEMPT TO CREDIT THE VIEWS OF AN EXCUSED JUROR.**

At the conclusion of the trial day on April 26, then-Juror 56 expressed his belief that Plaintiff's expert Dr. Neil Grunberg was "lying" and that his testimony was "just ridiculous." (Trial Tr. at 728:16-729:8.) Juror 56 expressed this opinion to the Court Room Deputy and perhaps within earshot of the remaining jurors. It is unclear if other members of the jury overheard Juror 56's commentary but, frankly, no one knows.

Concerned with this incident and Juror 56's fitness to serve, the Court held a conference with counsel and Juror 56. At the conference, Juror 56 identified two narrow aspects of Dr. Grunberg's testimony that made him feel that he "just [had] to say something" to those around him. Trial Tr. at 729:5-8. According to Juror 56, Dr. Grunberg falsely testified that (1) "CAS numbers are a list of toxic compounds;" (2) "dose doesn't matter" using rat poison as an example. Trial Tr. at 731:1-4. 729:25-730:1. Following the juror's excusal, all parties expressed concern that Juror 56 might have shared his opinions or otherwise tainted the jury. Juror 56 himself stated that the other jurors were looking to him as an expert in chemistry and had expressed interest in his "perspectives on this." (Trial Tr. at 735:17-19.)

With this concern in mind, Altria now seeks to show the jury two slides (Slides 23-24) that parrot Juror 56's precise criticisms of Dr. Grunberg. Slide 23 quotes Dr. Grunberg's testimony that "CAS numbers mean its been identified as something known to be dangerous." Slide 24 quotes the dosing portion of Dr. Grunberg's testimony, highlighting his statement that "You know, a tiny bit of rat poison kills the rat."

Under the circumstances, these slides should be excluded as unduly prejudicial under Rule 403. These slides—which attempt to legitimize Juror 56's criticism of Dr. Grunberg—seek to

capitalize on the improper communications Juror 56 had with his fellow jurors regarding Plaintiff's expert. Moreover, by centering on Dr. Grunberg's statements regarding chemistry, Altria's presentation telegraphs a connection between the statements and the unexplained excusal of a chemist from the jury, who communicated that others on the jury believed he could offer a more informed perspective. This is improper. Plaintiff does not object to Defendant examining Dr. Henningfield on the subject of CAS numbers or the toxicity of ENDs. But Altria should not be permitted to exploit Juror 56's unusual behavior and compound its potential prejudice to Plaintiff. The Court should exclude Slides 23 and 24.

**IV.    DR. HENNINGFIELD SLIDES WITH UNDISLCOSED INFORMATION SHOULD BE PRECLUDED.**

Several of the slides that Altria has disclosed in advance of Dr. Henningfield's direct are also objectionable:

- Slide 11 is taken from a Powerpoint produced by Dr. Benowitz. Plaintiff does not object to the slide itself; however, if the Court excludes TX 7108 as improper bolstering of an undisclosed expert—Dr. Benowitz—Altria should be precluded from mentioning that the slide originated from his work.

- Slide 13 contains reference to Marlboro SCOR, which was pitched in defense counsel's opening statement as a reduced risk product. Dr. Henningfield never mentions Marlboro SCOR in his report, reliance list, or deposition. If Plaintiff's counsel had any inkling Marlboro SCOR might be a subject of Dr. Henningfield's opinions, those opinions would have been explored at deposition. But he had no such opinions. He is not permitted suddenly to have one the night before he testifies before a jury. Plaintiff has no objection to the display of Altria's Next or Accord products on this slide because Accord is mentioned in Dr. Henningfield's report and Next was the subject of a well-known controversy around reduced nicotine products in the late 1980s—a public discussion in which Dr. Henningfield was involved.

- Slide 17 contains reference to several synthetic nicotine disposable e-cigarettes that were not mentioned in Dr. Henningfield's report (Puffbar, Hyde and SMOK). Nor did those brands appear in any of his reliance materials. There is a Vuse product on the slide (Vuse GO), that Plaintiff believes has never been offered for sale in the U.S. and should not be shown to the jury to suggest otherwise. Plaintiff has no objection to showing a Vuse product that was sold in the U.S. because Dr. Henningfield opines on Vuse at several points in his report.

Respectfully submitted May 9, 2023

Respectfully submitted,

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: */s/ Dena C. Sharp*
Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

By: */s/ Dean Kawamoto*
Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone: (206) 623-1900
dkawamoto@kellerrohrback.com

By: */s/ Ellen Relkin*
Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Sarah R. London*
Sarah R. London

2793761.2

PLAINTIFF'S TRIAL BRIEF
RE: VERDICT FORM
CASE NO. 19-MD-02913-WHO