1  [Submitting counsel on signature page]

2

3

4

5

6

7

8

9

10

11                        UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14

15  IN RE JUUL LABS, INC., MARKETING,          CASE NO. 19-md-02913-WHO
    SALES PRACTICES, AND PRODUCTS
16  LIABILITY LITIGATION                       **PLAINTIFFS' NOTICE OF MOTION AND
                                               MOTION FOR FINAL APPROVAL OF JLI
17                                             CLASS ACTION SETTLEMENT AND
    This Document Relates to:                  CERTIFICATION OF SETTLEMENT
18                                             CLASS**
    All Class Actions
19                                             **MOTION HEARING**

20
                                               DATE: August 9, 2023
21                                             TIME: 2:00 PM
                                               LOCATION: Courtroom 2
22

23                                             HON. WILLIAM H. ORRICK III

24

25

26

27

28

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

1

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES............................................................... 1

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND AND PROCEDURAL HISTORY....................................................... 2

      A.      The Litigation............................................................................................... 3

      B.      Terms of the Settlement ................................................................................ 5

      C.      Preliminary Approval and Notice to the Class ............................................. 5

      D.      Class Response.............................................................................................. 6

III.    ARGUMENT ............................................................................................................... 6

      A.      The Class Settlement is Fair, Adequate, and Reasonable ............................ 7

            1.      Rule 23(e)(2)(A): Class Plaintiffs and Class Counsel Have
                 Adequately Represented the Settlement Class............................. 8

            2.      Rule 23(e)(2)(B): The Class Settlement Was Negotiated at Arm's
                 Length ......................................................................................... 8

            3.      Rule 23(e)(2)(C): The Cash Payments Provide Adequate Recovery
                 to the Class ................................................................................. 9

            4.      Rule 23(e)(2)(D): The Plan of Allocation is Reasonable and Treats
                 Class Members Equitably Relative to Each Other.................................. 12

            5.      The Class Settlement Satisfies the Remaining Ninth Circuit
                 Approval Factors......................................................................... 14

            6.      The Court-Approved Notice Plan Satisfies Due Process and
                 Adequately Provided Notice to Class Members ...................................... 17

      B.      The Court Should Certify the Settlement Class................................................ 19

      C.      Costs of Administering the Class Settlement Agreement Are Reasonable ......... 23

      D.      The Court Should Allow Claims for Payment from the Class Settlement to
           Be Submitted After July 14.............................................................................. 24

IV.     CONCLUSION............................................................................................................. 25

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Adoma v. Univ. of Phoenix Inc.*
   913 F. Supp. 2d 964 (E.D. Cal. 2012)..................................................................................7

4

5

*Allen v. Similasan Corp.,*
   2017 WL 1346404 (S.D. Cal. Apr. 12, 2017)......................................................................20

6

7

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997)............................................................................................................23

8

*Broomfield v. Craft Brew All., Inc.*
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)......................................................................13

9

*Bruno v. Quten Research Inst., LLC*
   2013 WL 990495 (C.D. Cal. Mar. 13, 2013)......................................................................13

10

11

*Churchill Village, L.L.C. v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004)...........................................................................................7, 14

12

13

*Colgate v. JUUL Labs, Inc.*
   345 F. Supp. 3d 1178 (N.D. Cal. 2018) ..............................................................................3

14

*Colgate v. Juul Labs, Inc.*
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ................................................................................3

15

16

*Cruz v. Sky Chefs, Inc.*
   2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)....................................................................14

17

18

*De La Torre v. CashCall, Inc.*
   2017 WL 2670699 (N.D. Cal. June 21, 2017).....................................................................20

19

*Fitzhenry-Russell v. Coca-Cola Co.*
   2019 WL 11557486 (N.D. Cal. Oct. 3, 2019)......................................................................13

20

21

*Foster v. Adams & Assocs.*
   2021 WL 4924849 (N.D. Cal. Oct. 21, 2021).....................................................................20

22

23

*Free Range Content, Inc. v. Google, LLC*
   2019 WL 1299504 (N.D. Cal. Mar. 21, 2019).....................................................................18

24

25

*G. F. v. Contra Costa Cty.*
   2015 WL 4606078 (N.D. Cal. July 30, 2015).......................................................................8

26

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)...............................................................................9, 16, 22

27

28

*Hefler v. Pekoc*
   802 F. App'x 285 (9th Cir. 2020) .......................................................................................7

*Hefler v. Wells Fargo & Co.*
2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ................................................7, 8, 9, 14

*In re Facebook Internet Tracking Litig.*
2022 WL 16902426 (N.D. Cal. Nov. 10, 2022)...............................................................15

*In re Groupon, Inc.*
2012 WL 13175871 (S.D. Cal. Sep. 28, 2012) ...............................................................13

*In re Hyundai & Kia Fuel Econ. Litig.*
926 F.3d 539 (9th Cir. 2019)........................................................................10, 20, 22

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*
2022 WL 2343268 (N.D. Cal. June 28, 2022) ...........................................................*passim*

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*
533 F. Supp. 3d 858 (N.D. Cal. 2021) .............................................................................3

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*
497 F. Supp. 3d 552 (N.D. Cal. 2020) .............................................................................2

*In re Nexus 6P Prod. Liab. Litig.*
2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)................................................................18

*In re Pac. Enters. Sec. Litig.*
47 F.3d 373 (9th Cir. 1995)............................................................................................16

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*
2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)................................................................16

*Just Film v. Buono*
847 F.3d 1108 (9th Cir. 2017).......................................................................................21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................16

*Ontiveros v. Zamora*
303 F.R.D. 356 (E.D. Cal. 2014) ...................................................................................16

*Pettit v. Procter & Gamble Co.,*
2017 WL 3310692 (N.D. Cal. Aug. 3, 2017).................................................................21

*Rieckborn v. Velti PLC*
2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................................................................12

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003)..........................................................................................22

*Tyson Foods, Inc. v. Bouaphakeo*
577 U.S. 442 (2016)........................................................................................................22

iii

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ............................................................................................21, 22

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ...................................................................................21

*Zepeda v. PayPal, Inc.*
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ...........................................................14

**Statutes**

28 U.S.C. § 1407 ...................................................................................................................3

28 U.S.C. § 1715 .................................................................................................................17

**Other Authorities**

2 *Newberg on Class Actions, supra,* § 11.28 .....................................................................22

4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) .....................12

Newberg on Class Actions § 3:31 (5th ed.) .......................................................................21

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................................*passim*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

**PLEASE TAKE NOTICE THAT** on August 9, 2023 at 2:00 PM, or at such other date and time as the Court may set, in Courtroom 2 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs, on behalf of a proposed Settlement Class of all individuals who purchased, in the United States, a JUUL Product from brick and mortar or online retailer on or before December 6, 2022, will and hereby do move the Court for an order and judgment granting final approval of the JLI Class Settlement, certifying the proposed Settlement Class for settlement purposes, appointing Class Counsel and Class Plaintiffs to represent the Settlement Class, and approving settlement administration costs.

A copy of Class Plaintiffs' [Proposed] Order Granting Motion for Final Approval of Class Settlement and Judgment is separately submitted with this Motion. Because the opt-out, objection, and claim submission deadlines are not until July 14, 2023, the [Proposed] Order attached to this motion has placeholders related to the number of opt-outs, objections, and claims. Class Plaintiffs will submit an updated [Proposed] Order with their reply brief.

Class Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Dena Sharp ("Sharp Decl."), the Declaration of Cameron Azari in Support of Final Approval ("Azari Decl.") (attached as Exhibit 3 to the Sharp Declaration), and the pleadings and papers on file in MDL No. 2913, and any other matter this Court may take notice of.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Class Plaintiffs move for final approval of a proposed class action settlement with Defendant JUUL Labs, Inc. ("JLI"), on behalf of itself and the Released Parties.[1] Under the JLI Class Settlement Agreement, the Settlement Class will receive $255 million in exchange for a release of the class claims.

---

[1] The capitalized terms are intended to have the same meaning as defined in the Class Settlement Agreement and Plan of Allocation except as otherwise noted.

1   *See* JLI Class Settlement Agreement, ECF No. 3745-4.[2] This settlement does not include Altria Group,

2   Inc., and related companies, who have since agreed to a separate settlement agreement that trails this

3   one; as such, no class or individual claims against Altria will be released in this settlement.[3]

4           The Court previously preliminarily approved the proposed settlement with JLI and directed

5   notice to the Settlement Class. ECF No. 3779 ("Preliminary Approval Order"). That notice has reached

6   millions of class members and yielded a significant response. Although the deadline to submit claims is

7   still three weeks away, the number of claims submitted to date reflects a robust claims rate, which

8   appears likely to compare favorably to other consumer class actions.

9           The Class Settlement with JLI provides a significant and certain financial benefit to Settlement

10  Class Members. It is the product of extensive arm's-length negotiations among experienced lawyers

11  familiar with the legal and factual issues in this case, including an acute awareness of the risks of

12  bankruptcy, at trial, and on appeal. The terms of the Class Settlement and Plan of Allocation treat Class

13  members equitably relative to each other. Class Plaintiffs and Class Counsel believe this settlement is

14  fair, reasonable, adequate, and in the best interests of the Settlement Class, and respectfully request that

15  the Court grant final approval and certify the Settlement Class.

16  **II.      BACKGROUND AND PROCEDURAL HISTORY**

17          Class Plaintiffs and JLI seek to resolve economic loss claims (other than antitrust claims)

18  asserted against JLI and the Released Parties involving the manufacture, labeling, marketing, and sale of

19  JUUL—an electronic nicotine delivery system consisting of an electronic cigarette and a nicotine pack

20  called a JUULpod. Class Plaintiffs allege that Defendants created, marketed, and sold JUUL by

21  misleading the public about the addictiveness and health risks of JUUL, and trying to expand the market

22  by capturing and addicting individuals, including minor users. *See In re Juul Labs, Inc., Mktg., Sales*

23  *Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 574 (N.D. Cal. 2020). The settlement of Class

24  Plaintiffs' claims against JLI and the Released Parties came after years of hard-fought litigation and

25  provides substantial relief to Settlement Class Members.

26

27  _____

    [2] Unless otherwise noted, docket citations are to the MDL docket.

28  [3] A motion for preliminary approval of the Altria settlement is forthcoming and will proceed separately.

1

### A.   The Litigation

2   As detailed in Class Plaintiffs' Motion for Preliminary Approval (ECF No. 3724) and as

3   summarized below, the settlement was reached after years of active litigation.

4   On April 26, 2018, Bradley Colgate and Kaytlin McKnight filed a class action complaint against

5   JLI. Case No. 2018-cv-2499 (N.D. Cal.) ("*Colgate*"), Dkt. 1. The Court subsequently denied JLI's

6   motion to compel arbitration and largely denied multiple motions to dismiss these plaintiffs' amended

7   complaints. *See Colgate*, ECF Nos. 40, 41, 66, 82, 98, 99, and 139; *Colgate v. JUUL Labs, Inc*., 345 F.

8   Supp. 3d 1178, 1187 (N.D. Cal. 2018); *Colgate v. Juul Labs, Inc*., 402 F. Supp. 3d 728 (N.D. Cal. 2019).

9   On July 29, 2019, JLI filed a motion to transfer related cases for coordinated pretrial proceedings

10   pursuant to 28 U.S.C. § 1407. ECF No. 1. On October 2, 2019, the JPML granted JLI's motion and

11   transferred all cases to this Court. *Id*., ECF No. 144. Following centralization in this Court, Class

12   Plaintiffs filed a consolidated complaint. ECF No. 387. Defendants responded with a motion to dismiss.

13   *E.g*., ECF Nos. 626-629, 632, 645, 647-648, 750, 745, 748, 751, 752, 778. On October 23, 2020, the

14   Court again largely denied Defendants' motion to dismiss. *See In re Juul Labs*, 497 F. Supp. 3d at 677.

15   Class Plaintiffs filed a second amended consolidated class action complaint on November 12, 2020, ECF

16   No. 1358, and the Court denied Defendants' motion to dismiss that complaint on April 13, 2021, *In re*

17   *JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig*., 533 F. Supp. 3d 858, 862-63 (N.D. Cal.

18   2021). Discovery began before motions to dismiss were filed and continued for years. Defendants

19   produced millions of pages of documents, Plaintiffs[4] obtained information pursuant to interrogatories

20   and stipulations, and conducted over 100 depositions of Defendants' employees and third parties. Sharp

21   Decl., ¶ 39. Each of the eighty-six class plaintiffs went through an extensive document collection

22   process and produced discovery, with many being deposed and Class Plaintiffs responding to fulsome

23   documents requests and interrogatories. *Id*. ¶¶ 62-71. The parties also engaged in expert discovery,

24   which included reports and depositions from experts on topics including the chemistry and marketing of

25   JUUL Products, and the damages claimed by JUUL purchasers. *Id*. ¶¶ 94-100.

26

27

28

---

[4] "Plaintiffs" refers to all plaintiffs in the MDL, including Class Plaintiffs.

3

1    Following completion of class certification related discovery, Class Plaintiffs moved to certify

2  four classes of purchasers of JUUL Products for purposes of trial on Class Plaintiffs' bellwether claims

3  (under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") and California

4  law). ECF No. 1772-2. Class Plaintiffs also opposed Defendants' *Daubert* motions against each of Class

5  Plaintiffs' five experts and submitted rebuttal reports from three of their five experts. ECF Nos. 2438-

6  2439. On June 28, 2022, the Court granted Class Plaintiffs' class certification motion, appointed the

7  bellwether Class Plaintiffs as class representatives, and denied all pending *Daubert* motions. *In re JUUL*

8  *Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 2343268 (N.D. Cal. June 28, 2022)

9  ("*Class Cert. Order*"). Under Federal Rule of Civil Procedure 23(a) and 23(b)(3), the Court certified the

10  following Classes:

11    • **Nationwide Class**: All persons who purchased, in the United States, a JUUL Product.

12    • **Nationwide Youth Class**: All persons who purchased, in the United States, a JUUL Product

13    and were under the age of eighteen at the time of purchase.

14    • **California Class**: All persons who purchased, in California, a JUUL Product.

15    • **California Youth Class**: All persons who purchased, in California, a JUUL Product and were

16    under the age of eighteen at the time of purchase.

17  *Id.*, 2022 WL 2343268 at *57-58.

18    Defendants filed three Rule 23(f) petitions on July 12, 2022, seeking permission to appeal the

19  Court's order granting class certification. *See* Ninth Circuit Case Nos. 22-80061, 22-80062, and 22-

20  80063. The Ninth Circuit consolidated the cases and on October 24, 2022, granted Defendants

21  permission to appeal. *E.g.,* Ninth Circuit Case No. 22-80063, ECF No. 14. The appeals brought by JLI

22  and the Individual Defendants have been administratively closed pending approval of the proposed

23  Class Settlement. Ninth Circuit Case Nos. 22-16694, ECF No. 10; 22-16695, ECF No. 10.

24    In the fall of 2022, after the Court had issued its certification order, the class trial dates were

25  deferred pending the class certification appeals. The parties then prepared the B.B. personal injury case,

26  and then the SFUSD government entity case, as the first bellwether trial. Sharp Decl., ¶¶ 104-16. Both

27  the B.B. and SFUSD trial preparations involved issues that overlapped with and were intertwined with

28  the class claims, *i.e.*, the addictiveness and health risks of JUUL Products, the marketing of JUUL to

4

youth, and the liability of Altria and the Individual Defendants. *Id*. Much of the testimony being prepared for those trials would also have been presented at a class trial, and Class Counsel was heavily involved in preparation for both trials. *Id*.

**B.     Terms of the Settlement**

Throughout the course of the litigation, the parties discussed potential resolution under the supervision of the Court-appointed Settlement Master, Thomas J. Perrelli. *See* ECF No. 564 (order appointing Settlement Master). On December 6, 2022—during preparations for the B.B. bellwether trial and the pendency of the appeal of the class certification order—JLI, on behalf of itself and the Released Parties—agreed to settle all the economic loss claims asserted against it by Class Plaintiffs.

The Class Settlement provides for a $255 million cash payment, no portion of which is eligible to revert to JLI. In exchange, class members agree to release claims against JLI and the Released Parties that concern "economic loss" related to "the purchase or use of any JUUL Product." ECF No. 3745-4 at 5-6. Class members do *not* release any claims related to personal injuries or claims arising out of antitrust violations. *Id*. The Class Settlement Agreement also includes certain provisions that are designed to protect the recovery in the event JLI were to file for bankruptcy. The Class Settlement Agreement allows for a streamlined claims process through which class members can submit claims online, even without documentation of their purchases (subject to a cap on the size of the claims they could submit).

In short, the Class Settlement provides for a substantial monetary recovery, is designed to ensure that the proceeds of the Settlement are actually paid to eligible class members, and does not encumber other, separate claims that class members might have.

**C.     Preliminary Approval and Notice to the Class**

On January 30, 2023, the Court preliminarily approved the JLI Class Settlement Agreement, found that it was likely to certify the Settlement Class, and appointed Epiq Systems, Inc. ("Epiq") as the Settlement Administrator. Following the Court's order, Epiq established a settlement website at www.JUULclassaction.com, which includes: the long-form notice (explaining the procedures for Settlement Class Members to submit claims, object, or exclude themselves), a contact information page that includes address and telephone numbers for the Class Settlement Administrator and Class Counsel,

the Class Settlement Agreement, the Preliminary Approval Order, online and printable versions of the claim form and the opt out forms, and answers to frequently asked questions. Azari Decl., ¶¶ 51–52. In addition, the motion papers filed in connection with the Class Settlement Agreement and Class Plaintiffs' application for Attorneys' Fees and Expenses and Service Awards will be placed on the settlement website once they are filed (which is before the opt out and objection deadline). The Class Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries in English and Spanish. *Id.*, ¶ 54.

Notice of the Class Settlement was provided by: (1) direct notice via email to those Settlement Class Members for whom an email address was available; (2) direct notice via postcard mailed to those Settlement Class Members for whom a physical mailing address was available but an email address was not available; (3) publication notice of the Class Settlement, which comprised approximately 427 million impressions and targeted likely Settlement Class Members, on relevant websites and social media platforms; and (4) publication on the settlement website. *Id.*, ¶ 6.

### D. Class Response

Although the deadline for the submission of claims, opt-out requests, and objections is not until July 14, the response from the class this far has been positive. As of June 15, 2023, Epiq has received 2,353,001 claims. *Id.*, ¶ 61. The process of evaluating these claims for potential fraud is ongoing, but this volume of claims shows substantial interest in the Class Settlement and its benefits from Settlement Class Members. Because there is not a centralized source that identifies all retail purchasers of JUUL Products, the precise size of the class is unknown, although estimates have ranged from 6.5-11 million purchasers. Thus, even using conservative estimates and accounting for the likelihood that many claims will be rejected once claims processing is complete, the claims rate is already likely near or above10%.

Objections and opt-out requests are not due until July 14, 2023, but as of June 15, 2023, out of the many millions of Class Members, Epiq has received 295 opt out requests and 2 objections. *Id.*, ¶ 62. The low number of objections and opt-outs received to date also reflects positively on the Class Settlement.

### III. ARGUMENT

Final approval is a multi-step inquiry: first, the Court must determine that the settlement

proposal is "fair, reasonable, and adequate;" second, it must determine whether notice has been

provided in a manner consistent with Rule 23 and due process; and third, it must certify the proposed

settlement class. *See* Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix Inc*., 913 F. Supp. 2d 964, 972

(E.D. Cal. 2012). The Class Settlement satisfies each of these requirements.

### A.    The Class Settlement is Fair, Adequate, and Reasonable

A court may approve a proposed class action settlement only "after a hearing and on finding that

it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class

counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the

relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[5]

As explained more fully below, the proposed Class Settlement is fair, reasonable, and adequate.

Class Counsel, as well as the other lawyers representing the Class Plaintiffs, are highly experienced in

complex class actions litigations, actively litigated the case for almost four years, and reached an arms-

length settlement under the supervision of a Settlement Master. The Class Settlement provides

significant recoveries for Settlement Class Members, particularly when balanced against the risks and

---

[5] Before Rule 23 was amended in December 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, courts apply the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

---

7

expenses of continuing litigation. Proceeding to trial against JLI and the Released Parties would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals that could result in class certification or any final judgment being overturned, in addition to the potential that JLI would file for bankruptcy.

### 1.   Rule 23(e)(2)(A): Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

Class Plaintiffs and Class Counsel have vigorously prosecuted this case through discovery, motion practice, mediation, and preparations for trial. Class Counsel thus "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983 *6. Against this backdrop, in its Preliminary Approval Order the Court found that Class Plaintiffs and Class Counsel adequately represented the interests of the Settlement Class. Preliminary Approval Order at 7. The ongoing notice program and Class Counsel's other work to advance the proposed settlement further confirm the Court's previous finding and support a finding that this element is satisfied.

### 2.   Rule 23(e)(2)(B): The Class Settlement Was Negotiated at Arm's Length

The Class Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced, Court-appointed Settlement Master, Thomas J. Perrelli. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983 *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator). Class Counsel acted in the best interests of the Settlement Class, and there is no evidence to the contrary—for example, by compromising the claims of the Settlement Class in exchange for higher fees—and there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

Before agreeing on the terms of the Class Settlement, the parties engaged in extensive factual investigation, which included dozens of depositions, the production and review of millions of pages of documents, extensive written discovery, robust motion practice, and expert discovery. Sharp Decl., ¶¶ 10-61, 94-103. The parties also spent considerable time preparing personal injury and government entity

1   cases for trial, and many of the issues addressed in those preparations were directly relevant to the

2   strengths and weaknesses of the class claims at trial. *Id.*, ¶¶ 104-16. The record was thus sufficiently

3   developed to fully inform the parties and enable them to adequately evaluate the strengths and

4   weaknesses of their respective positions and risks to both sides if the case did not settle.

5            **3.**      **Rule 23(e)(2)(C): The Cash Payments Provide Adequate Recovery to the**

6                         **Class**

7          In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class

8   members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018

9   amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL

10  6619983 *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

11         JLI has agreed to pay $255 million on behalf of itself and the Released Parties, which will be

12  used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of

13  Allocation. Settlement Class Members who submit Eligible Claims will receive payments corresponding

14  to their JUUL purchases and their *pro rata* share of all Eligible Purchases. While the fund is substantial

15  standing alone, the amount of relief provided to the class is particularly reasonable relative to the risk of

16  continued litigation, and in light of the fact that Settlement Class Members also retain their rights to

17  separately pursue relief for any personal injury claims they may have.

18                    **a)**      **The Risks of Continuing Litigation**

19         Continued litigation involved substantial risks that Defendants might have prevailed on appeal,

20  at summary judgment, or at trial, resulting in no recovery at all for Class Members. As one example, the

21  Ninth Circuit granted the Defendants' Rule 23(f) petition. The resultant appeals raised threshold issues

22  regarding, among other things, Class Plaintiffs' damages model and the ability to sufficiently

23  demonstrate class wide injury. Had Defendants prevailed on any one of several issues in the appeal,

24  Class Plaintiffs faced the risk that the Ninth Circuit would reverse or modify the Court's class

25  certification decision which could effectively prevent any recovery by Class Members.

26         There were also substantial questions as to whether Class Plaintiffs would be able to prove at

27  trial that JLI's and other defendants' practices were fraudulent, unlawful, or unfair, and that JLI and

28  other defendants should be held liable not only on claims asserted by youth, but also by adult class

9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

members. Both sides believed they had persuasive facts to support their positions, and there is limited

precedent regarding Class Plaintiffs' theories. Defendants would have attacked Class Plaintiffs' theories

of injury and fraud at summary judgment. Trial would have involved a clash of expert analysis as to

whether the marketing, advertising, and sales of JUUL Products were unlawful, unfair, or fraudulent, the

methods of calculating damages/restitution, and ultimately what damages and/or restitution, if any,

should be awarded. Success at trial was far from guaranteed. JLI was prepared to assert an arbitration

defense against a large portion of the class. And even if Class Plaintiffs succeeded at trial, appeals would

undoubtedly have followed. Finally, there was the risk that one or more of the Defendants would have

filed for bankruptcy protection, thereby slowing, or even eliminating any recovery.

### b)    Method of Distribution of Settlement Funds

The process for distributing funds is straightforward and readily accessible to Settlement Class

Members. Class Members with Eligible Claims will be entitled to their *pro rata* share of the settlement

proceeds, even if they no longer have records of their purchases (though those with records may be

eligible to receive greater payments). Plan of Allocation, ¶¶ 2.4, 3.3. While submitting a claim, Class

Members are given a wide range of digital payment options to choose from and can also elect to have a

paper check sent to them. Azari Decl., ¶ 58. To the extent Class Members have questions with the claims

submissions process, Epiq has full-time call operators and the settlement website has an online FAQ,

either of which is likely to resolve any Class Member questions. *Id.*, ¶¶ 51, 54. The method of

distribution therefore provides no impediments to getting money into the hands of Eligible Claimants.

### c)    Attorneys' Fees and Expenses

The parties have reached no agreements regarding the amounts of attorneys' fees, expenses, and

service wards to be paid. Sharp Decl., ¶ 119; *see, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

539, 569-70 (9th Cir. 2019) (en banc) (rejecting objection because counsel "did not reach an agreement

with the automakers regarding the amount of attorney's fees to which they were entitled," which

"[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of

attorneys' fees, expenses, and service awards, if any, is subject to approval of the Court based on a

finding that such amounts are fair and reasonable. There is thus no aspect of the Class Settlement

Agreement regarding the payment of attorneys' fees and expenses that raises any concern about the

reasonableness, fairness, or adequacy of the Class Settlement.

### d) Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Court has been provided with the Class Settlement Agreement and relevant accompanying materials, and has been made aware that JLI (on behalf of itself and the Released Parties) has agreed to fund parallel settlement programs to provide recoveries for other claimants in this MDL and the parallel JCCP proceedings, including individuals who asserted claims for personal injury, and school district and local government entities, as well as Native American tribal entities. Under the supervision of Special Master Perrelli, the amount of the Class Settlement Fund was negotiated with co-lead counsel Dena Sharp representing the interests of the Class, and the other co-lead counsel in the MDL representing interests of the other plaintiff groups. Sharp Decl., ¶ 18. The Court has also been made aware that the settlement provides for the creation of a trust to hold assets on behalf of the Settlement Class, which is reasonable as it benefits the Settlement Class, as do the protections the settlement contemplates in the event of bankruptcy or non-payment.

Certain of the Class Plaintiffs have asserted personal injury claims, and thus will be eligible to apply to share in the amounts allocated to the resolution of personal injury claims. Class Plaintiffs with personal injury claims will receive no favorable treatment compared to other Settlement Class Members, however, as all personal injury claims will be paid from funds set aside to resolve personal injury claims, while the economic loss claims asserted by the Settlement Class will be paid from the Net Settlement Fund. Under the terms of the Class Settlement Agreement, the Settlement Fund is non-reversionary and no portion of the Settlement Fund or Net Settlement Fund will revert to JLI or any other Released Party. Class Settlement Agreement, ¶¶ 1.7, 7.7. Only after a diligent effort to identify all Settlement Class Members and distribute to them the full amount of the class settlement fund would the parties need to confer regarding the disposition of any residual funds, the distribution of which would be subject to the Court's approval and a finding that the parties first exhausted all reasonable efforts to distribute remaining funds to Settlement Class Members. Plan of Allocation, ¶¶ 4.2.

11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4. Rule 23(e)(2)(D): The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Settlement Class Members who seek benefits under the Class Settlement Agreement need only submit a simple claim form, and the form is prepopulated if their purchase information is known to JLI because they made purchases on JLI's website. Azari Decl., ¶¶ 56–57; *see* 4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer products sold over the counter"). Further, the claim process is no more onerous than would be required after trial.

The method for distributing funds to Eligible Claimants is also reasonable. "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). Under the Plan of Allocation, all Settlement Class Members who submit claims will receive cash payments based on their *pro rata* allocation of the Net Settlement Fund. Plan of Allocation, ¶ 3.3. The Plan of Allocation provides higher payments for those who first purchased in the earlier years of the class period or when they were underage. *Id.*, ¶ 1.13; *see In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the comparative weakness of certain claims).

The larger payments for those who made their initial purchases earlier is consistent with the evidence about changes in relevant warnings over time, which led the Court to note in its class certification order that "JLI will be free to argue at the appropriate points (on summary judgment, trial, post-trial) that a reasonable consumer who purchased after a certain date could not have been misled by its representations or omissions about its products given the other information in the market or given the addition of the 'black-box' nicotine warning on JUUL's packaging." *Class Cert. Order*, 2022 WL 2343268, at *30. The enhanced payments for those who began purchasing when underage is based on Class Plaintiffs' full refund theory of recovery as to their youth targeting claims, as opposed to the price premium damages model applicable to other claims. *See id.* at *17 (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly

12

1   illegal). Further, it is rational to provide enhancements for all purchases by such persons, even after the

2   warnings were augmented or the purchasers reached adulthood, because of the addictive nature of the

3   JUUL Products.

4          Setting a cap on the recoveries by Eligible Claimants who lack proof of purchase while claims

5   that are accompanied by proof of purchase will not be capped (unless their Class Settlement payment

6   would vastly exceed their potential damages) is also reasonable. The use of a cap for Eligible Claimants

7   without proof of purchases ensures a fair distribution and serves to disincentivize illegitimate or

8   exaggerated claims. *See, e.g., In re Groupon, Inc.*, 2012 WL 13175871, at *6 (S.D. Cal. Sep. 28, 2012)

9   (holding requirement of a voucher number or other proof of purchase serves "to ensure that money is

10  fairly distributed for valid claim"). Such a cap is a common feature of consumer class action settlements.

11  *See, e.g., Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *30 (N.D. Cal. Feb. 5, 2020) (finally

12  approving settlement with cap on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL

13  11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof of

14  purchase, stating that such a claim process "would be no different than that required after trial"); *Bruno

15  v. Quten Research Inst., LLC*, 2013 WL 990495, at *2 (C.D. Cal. Mar. 13, 2013) (finally approving

16  settlement with claims limited to $10.65 (*e.g.*, 3 bottles) without proof of purchase, with no cap on

17  claims accompanied by a proof of purchase, for example a receipt or product packaging).

18         Settlement Class Members have been given the option to choose their preferred method of

19  payment, including mailed check, direct deposit, PayPal, or prepaid MasterCard.[6] Azari Decl., ¶ 58.

20  After an initial distribution, if there are substantial funds from uncashed payments, the remaining funds

21  will, where economically rational, be redistributed to the Settlement Class Members who made claims

---

[6] Prior to commencing the notice program, Amazon had informed Epiq that this settlement was eligible to use Amazon payments. Azari Decl., ¶ 58 fn.5. After the notice program began, however, Amazon's legal department reversed course and determined that this settlement was not eligible for Amazon payments because Amazon's policies prohibit the use of Amazon payments for tobacco products. *Id.* While Amazon has been informed that this litigation involves claims against the manufacturer of a tobacco product (as opposed to advocating for the use of tobacco products), Amazon has declined to permit the use of Amazon payments for this settlement. *Id.* Amazon has, however, agreed to honor any claims requesting payment via Amazon that were submitted before Amazon made its decision to withdraw. *Id.* In any event, Class members have still had numerous other options to choose from to receive their settlement payments. *Id.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

1  and accepted their initial distribution payments. Plan of Allocation, ¶ 4.1. Only if residual funds remain

2  thereafter will they be otherwise distributed, subject to the Court's approval. *Id.*, ¶ 4.2.

3     **5. The Class Settlement Satisfies the Remaining Ninth Circuit Approval**

4       **Factors**

5     In addition to the framework of Rule 23 as amended in 2018, Courts "continu[e] to draw

6  guidance from the Ninth Circuit's factors and relevant precedent," in evaluating a proposed class

7  settlement. *Hefler*, 2018 WL 6619983, at *4; *Churchill,* 361 F.3d at 575 (courts should consider "(1) the

8  strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation;

9  (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

10 (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

11 counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the

12 proposed settlement").

13    Many of these factors, such as the strength of plaintiffs' case, the risk and duration of further

14 litigation, and the amount offered, overlap with the Rule 23(e)(2)(C) factors and are addressed above.

15 The remainder favor final approval as well, as described below.

16      **a) The Response of Class Members Has Been Positive**

17    As of June 15, 2023, out of at least an estimated 6.5 million Class Members, there were 295 opt-

18 outs and 2 objections. Azari Decl., ¶ 62. In comparison, through that date, Class Members had submitted

19 over 2.3 million claims (the process of evaluating these claims is ongoing). *See Id.*, ¶ 61. These figures

20 represent a very positive response. *See Churchill,* 361 F.3d at 577 (noting a court may infer

21 appropriately that a class action settlement is fair, adequate, and reasonable when few class members

22 object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he

23 indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon

24 which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky

25 Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a

26 class action settlement is fair, adequate, and reasonable when few class members object to it."). Class

27 Plaintiffs will submit updated opt-out, objections, and claims statistics when submitting their reply brief

28 in support of final approval.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

The objections submitted thus far provide no basis for rejecting the Class Settlement, as discussed below.[7]

*Samuel Marcom.* The letter from Samuel Marcom questions the premise of the lawsuit and whether JUUL is being singled out among vape companies but does not address, let alone object to, the fairness of the Class Settlement. ECF 4033 ("I am aware this letter will not cause this case to be thrown out.").

*John Gugliotta.* Mr. Gugliotta raises five objections: (1) that class members are not provided with information about the class size so that they can estimate their individual recoveries, (2) that objecting to the settlement is too expensive, (3) that JUUL did not admit wrongdoing and was not held fully accountable, (4) that the Class Settlement should limit JUUL's marketing practices, and (5) that the Class Settlement does not regulate e-cigarettes generally. ECF 4026. None of these objections undermines the reasonableness of the Class Settlement.

Mr. Gugliotta (and a woman who shares his last name) have asserted the first two objections in other cases and have been overruled. *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *6 (N.D. Cal. Nov. 10, 2022); *Smith v. FirstEnergy Corp.*, No. 2:20-cv-03755-EAS-KAJ, ECF 167 at 8-10 (S.D. Ohio Dec. 5, 2022). As those courts have recognized, even notices that do not include information about the class size provide class members with the necessary information, and class members can reach out to Class Counsel or the Settlement Administrator with questions. *Id.* Nor would information about the class size be helpful to class members. As discussed above, the class size is unknown and each Eligible Claimant's *pro rata* share of the Net Settlement Fund depends on how many Eligible Claims are submitted, a figure that will not be known for many months. Speculation about the class size would therefore not provide a reliable means for class members to estimate their individual recoveries and would likely result in class members speculating about their recoveries.

---

[7] Class Plaintiffs will address any additional objections received by the July 14 deadline in their reply.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

Mr. Gugliotta also provides no basis for his position that he should be reimbursed from the Settlement Fund for traveling to the Fairness Hearing. Class Counsel will request that the Court allow participation at the Fairness Hearing via Zoom or telephonically.[8]

As to the third and fourth objections, a settlement is a compromise in which defendants ordinarily do not admit fault. In any event, Mr. Gugliotta provides no details about what Defendants should have admitted or any purported drug interactions he says should be disclosed, and the ability to market JUUL as a cessation device is being considered by the FDA.

As to Mr. Gugliotta's final objection, a settlement with the manufacturer of JUUL Products cannot address the conduct of other e-cigarette manufacturers. Nothing in the Released Claims, however, precludes any Class Member from initiating litigation against other e-cigarette manufacturers should they wish to do so.

### b)      Class Counsel Endorses the Settlement

In considering whether to grant final approval, courts afford significant weight to the opinions of experienced class counsel who are familiar with the litigation. *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citing *Hanlon*, 150 F.3d at 1026); *see also In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is experienced in complex class action litigation and settlement, including in complex consumer cases like this one. Sharp Decl., ¶ 4. Based on this experience, Class Counsel firmly believe that the Class Settlement provides a positive outcome for Class Members and, in light of the uncertainties and risks in continued litigation, strongly recommends its approval.

---

[8] If the Court grants the request, Class Counsel will make the details available on the settlement website and provide them to Class Members who has indicated an intention to appear at the Fairness Hearing.

1

c)    The Presence of a Governmental Participant

2

No governmental agency is involved in this litigation. The Attorney General of the United States

3

and Attorneys General of each State were notified of the proposed Class Settlement pursuant to the

4

Class Action Fairness Act, 28 U.S.C. § 1715. Azari Decl., ¶ 15. None sought to intervene in the

5

litigation or raise any concerns or objections to the Settlement. *Id.*

6

7

**6.    The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members**

8

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable

9

manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes

10

certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable

11

under the circumstances, including individual notice to all members who can be identified through

12

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule provides that "notice may be by one or more of

13

the following: United States mail, electronic means, or other appropriate means." *Id.*

14

Epiq has carried out a thorough notice campaign. Epiq provided individual notice to Class

15

Members that purchased directly from JLI's website via email and physical postcards. Azari Decl., ¶ 6.

16

The 2,772,467 direct notices sent by Epiq, which included 2,470,286 emails and 302,181 Postcard

17

Notices via USPS first class mail (where an email address was not available), provided a simplified

18

manner for submitting a prepopulated claim form. *Id.*, ¶¶ 6, 57. For Postcard Notices that were returned

19

undeliverable, as of June 15, 2023, Epiq re-mailed 25,201 Postcard Notices to any new address available

20

through USPS information and to addresses Epiq obtained from a third-party address lookup service. *Id.*,

21

¶ 30. Class Members were also given the option to have a Long Form Notice and Claim Form mailed to

22

them by requesting them via a toll-free telephone number or by mail. *Id.*, ¶ 32. As of June 15, 2023,

23

Epiq had mailed 71 Long Form Notices and Claim Forms as a result of those requests. *Id.*

24

If the separate Altria Class Settlement receives preliminary approval, Class Counsel anticipates

25

that Epiq will send direct notice of that settlement to the same population of known class members,

26

which will also function as a reminder notice to Class Members who have not submitted a valid Claim

27

Form because both settlements will utilize the same claims process, as discussed in Section III.D. below.

28

In addition to direct notice, Epiq also carried out a robust publication notice campaign. The

17

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

program includes targeted banner advertising on a selected advertising network and social media, which are targeted to Class Members. *Id.*, ¶¶ 34–45. The Digital Notices link directly to the Settlement website and include a graphic of a JUUL device to draw in Class Members' attention. *Id.*, ¶ 43. The Digital Notices served at least 472 million impressions. *Id.*, ¶ 42. The Digital Notices ran from March 16, 2023, through May 15, 2023. *Id.*, ¶ 33. As of June 15, 2023, there have been 2,407,474 unique visitors to the Settlement website. *Id.*, ¶ 53.

As of June 15, 2023, Epiq has received 2,353,001 Claim Forms. *Id.*, ¶ 61. As noted above, this constitutes a substantial response from Class Members and a claims rate that likely approaches or exceeds 10%. *See* Section III.A.5.a, above. This outcome is at the higher end of claims rates in other consumer class actions where products were largely sold indirectly through retail stores. *See* Mot. for Prelim. Approval, Dkt. 3724 at 9-10 (estimating that "between 200,000 and 2,000,000 Class Members (up to 15% of the Class) will receive payments"). In addition, Class Members still have weeks to submit claims and Epiq expects that a significant number of additional claims have yet to be filed. *See* Azari Decl., ¶¶ 61, 64. The claims rate to date is itself evidence that the Settlement Notice Plan is effective and successful.

The Settlement Notice represents the best notice practicable. In total, the Settlement Notice is estimated to have reached over 80% of Class Members. *Id.*, ¶ 68; *see, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *7 (N.D. Cal. Nov. 12, 2019) (finding notice that reached "approximately 77% of class members" satisfied Rule 23 and granting final approval); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." (brackets and internal quotation marks omitted)).

The Notice Plan was reviewed and analyzed frequently during its implementation to ensure it met the requisite due process requirements. Azari Decl., ¶ 45. Copies of the final versions of all the notice documents are attached as exhibits to the Azari Declaration; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B); *see* Azari Decl., ¶¶ 22, 26, 35, 39. The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Federal Rule of Civil

18

Procedure 23(c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice. *Id*., ¶ 65.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the Notice Plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

**B.      The Court Should Certify the Settlement Class**

In the Preliminary Approval Order, the Court concluded that it was likely to certify the following Settlement Class:

> All individuals who purchased, in the United States, a JUUL [P]roduct from brick and mortar or online retailers before December 6, 2022.[9]

ECF No. 3779 at 3. The Court previously certified for litigation purposes a nearly identical nationwide class under RICO and a class of California JUUL purchasers under California law. *Class Cert. Order*, 2022 WL 2343268 (certifying four classes[10]). All the factors that supported the Court's prior conclusions remain true, and the Settlement Class should be certified.

Because the Court already certified classes in this matter under Rule 23(b)(3), "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23, 2018 committee notes subdivision(e)(1). The Court must then determine whether the proposed modification alters the reasoning underlying its earlier decision to grant class certification pursuant to

---

[9] Excluded from the Settlement Class are: (a) the judges in this MDL and any other judges that have presided over the litigation, including the coordinated proceeding captioned *JUUL Labs Product Cases*, Judicial Counsel Coordination Proceeding No. 5052, pending in the Superior Court of California, County of Los Angeles, Department 11, Settlement Master Thomas J. Perrelli, and their staff, and immediate family members; (b) Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; (c) Class Counsel and their employees; (d) any individuals who purchased JUUL products only secondarily from non-retailers; and (e) all individuals who timely and properly excluded themselves from the Settlement Class.

[10] These were the **Nationwide Class** (All individuals who purchased, in the United States, a JUUL product); the **Nationwide Youth Class** (All individuals who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase); the **California Class** (All individuals who purchased, in California, a JUUL product); and the **California Youth Class** (All individuals who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

Rule 23(b)(3). *See, e.g., Allen v. Similasan Corp*., 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the court's previous class certification analysis). If it does not, the Court need not revisit the Rule 23(b) analysis and instead must only "consider[] whether the Settlement is fair, adequate, and reasonable." *De La Torre v. CashCall, Inc.*, 2017 WL 2670699, at *6 (N.D. Cal. June 21, 2017). Plaintiffs must identify and explain any differences between the certified class and the Settlement Class and between the claims in the operative complaint and the Released Claims. *See* District Guidelines ¶ 1(a), (b), (d).

The Settlement Class is co-extensive with the certified class, except that the claims of the Settlement Class apply to JLI on a nationwide basis, include an end date for the Settlement Class, and include purchases of JUUL accessories and products in addition to JUULpods and devices. The addition of an end date is appropriate and necessary for administration purposes. *See Foster v. Adams & Assocs.*, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (granting modification to the previously certified class to specify end date). Adding a limited number of ancillary products to the definition of JUUL Products likewise does not change the overall common nature of the claims at issue. And the slight differences between the litigation class and the proposed Settlement Class do not alter the analysis, except that the predominance and superiority analysis prerequisites operate differently and are less stringently applied in the settlement context. *See Hyundai*, 926 F.3d at 558.

Even if the Court were to go beyond the evaluation of these differences and conduct a full analysis of the propriety of certifying the Settlement Class, the bases for the Court's prior certification order are applicable to the certification of the Settlement Class. *See* Preliminary Approval Order, ECF 3779 at 3-7 (preliminarily finding that certification was likely, and that the requirements of numerosity, commonality, predominance, typicality, adequacy, and superiority were met).

**Rule 23(a)(1): Numerosity**. Millions of JUUL Products were sold during the proposed class period and the Court has already found the Classes (at class certification) and Class (at preliminary approval) sufficiently numerous. Courts in the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members. *See Class Cert. Order*, 2022 WL 2343268 at *3. The Settlement Class easily meets that threshold. *Id.*; *see also* Preliminary Approval Order, ECF No. 3779 at 4 (preliminarily finding numerosity).

**Rule 23(a)(2): Commonality**. As before, "the class members have suffered the same injury and [] the class's claims depend on 'a common contention . . . of such a nature that it is capable of classwide resolution.'" *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *2 (N.D. Cal. Aug. 3, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 (2011)). The Court already determined that for the Nationwide Class, "common questions of fact include the existence of a RICO Enterprise and whether each defendant engaged in a scheme to defraud." *Class Cert. Order*, 2022 WL 2343268, at *3. Similarly, the Court already determined that claims under California law could be certified to pursue fraud claims, as "common questions include whether a significant number of reasonable consumers would likely have been deceived by defendants' misrepresentations or omissions about JUUL and would have found the misrepresented or omitted information material." *Id.* The Court likewise found that common questions applied to Class Plaintiffs' common law fraud, unjust enrichment, and implied warranty claim. *Id.*; *see also* Preliminary Approval Order, ECF No.3779 at 5 (preliminarily finding commonality). For all the same reasons, common questions exist as to the claims of the Settlement Class.

**Rule 23(a)(3): Typicality**. Class Plaintiffs' and the Settlement Class's claims stem from the same practice or course of conduct and "seek to recover pursuant to the same legal theories." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is typical of the class because it shares 'some common question of law and fact with class members' claims'") (quoting Newberg on Class Actions § 3:31 (5th ed.)). The Court already held that although "there are differences among the proposed class representatives and class members, and differences in the 'nicotine journey' of each, such as when they learned about nicotine in JUUL or other e-cigarette products, why they first used or continued to use JUUL or other products containing nicotine, and whether they are addicted to nicotine as a result of their use of JUUL or other nicotine products," no Class Plaintiff has a "unique injury or is subject to a unique defense that the other class members do not have or are not subject to that would make a particular proposed named plaintiff atypical and an inappropriate class representative." *Class Cert. Order*, 2022 WL 2343268 at *4; *see also* Preliminary Approval Order, ECF No. 3779 at 6 (preliminarily finding typicality). Class Plaintiffs' claims are typical of the Settlement Class.

**Rule 23(a)(4): Adequacy**. The Court has noted the vigorous efforts made by Class Plaintiffs and their counsel to prosecute this case and achieve a settlement. *See Class Cert. Order*, 2022 WL 2343268 at *8 ("Based on their thorough and robust advocacy to date, I find that they are adequate."); *see also* Preliminary Approval Order, ECF No. 3779 at 6 (preliminarily finding adequacy). There is no conflict of interest between Class Plaintiffs and Class Members. *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). And adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra,* § 11.28, 11-59. Class Plaintiffs have fairly and adequately protected the interests of the Settlement Class.

**Rule 23(b)(3): Predominance**. Questions common to the Settlement Class predominate over questions affecting only individual Class Members. Predominance is met when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)).

The predominance inquiry is more straightforward in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, the same questions the Court identified in its class certification order predominate for the settled claims against JLI and the Released Parties: was there a RICO enterprise, did the enterprise engage in a pattern of racketeering, and were the consistent and pervasive messaging and omissions about JUUL Products materially deceptive to a reasonable consumer? *See Class Cert. Order*, 2022 WL 2343268 at *9-11; *see also* Preliminary Approval Order, ECF No. 3779 at 5 (preliminarily finding predominance).

**Rule 23(b)(3): Superiority**. Certification of the Settlement Class for settlement purposes will make substantial recoveries available to all purchasers at retail, a far more certain outcome than could be

achieved by individual litigation. And when considering certification for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also* Preliminary Approval Order, ECF No. 3779 at 6 (preliminarily finding superiority).

***

In sum, the Settlement Class meets all relevant requirements of Rule 23(a) and (b) and should be certified for purposes of settlement. In addition, as noted above, Class Plaintiffs and Class Counsel have adequately represented the interests of the Settlement Class throughout the course of the litigation and settlement, and the Court should appoint them to represent the Settlement Class.

### C.   Costs of Administering the Class Settlement Are Reasonable

The Settlement Administrator has submitted invoices for its expenses incurred as of May 2023, totaling $1,558,841.92. Azari Decl., ¶ 64. The Settlement Administrator expects to incur additional amounts through the completion of its work and the distribution of settlement funds, but at this time cannot provide a reliable estimate of the additional costs it expects to incur to complete the processing of claims and distribute money to Eligible Claimants. The main areas of cost uncertainty are (1) that claims continue to be submitted at a rapid pace, making the final number of claims difficult to determine and (2) significant effort needs to be expended once the claims deadline is closed to determine the potential number of fraudulent claims and appropriate next steps, and those determinations will have a significant impact on the total costs. These issues are compounded by the fact that the claims rate in this matter appears to be very high and continues to climb. When the Settlement Administrator originally estimated its costs for this matter, it reasonably assumed that it would receive upwards of two million claims, but based on current data is appears the total number of claims will likely exceed three million. Class Counsel continues to work with Epiq on methods for reducing costs and reviews billing statements on a weekly basis. Sharp Decl., ¶ 139.

Despite the unknowns associated with the claims administration ahead, Epiq continues to project that expenses for settlement administration costs will not exceed the $7 million figure included in the class notice. Class Plaintiffs therefore request that, in light of the high claims volume, the Court approve

23

payment to Epiq of up to $7 million for settlement administration costs. Class Counsel will, of course, only authorize payment from the Settlement Fund for costs that are actually incurred by Epiq and reasonably spent. Class Plaintiffs will provide updated information concerning costs incurred and expected future costs in advance of the Fairness Hearing, and are prepared to provide the Court with periodic updates thereafter should that be of assistance to the Court.

Class Plaintiffs also ask the Court to authorize total payment of up to $50,000 per year for previously incurred and future costs related to the administration of the Settlement Fund and the Trust in which it is held (including all expenses and compensation attributable to the Settlement Fund and payable under the terms of the Trust). Payments up to such amount are reasonable given the role the Trust plays in protecting the Settlement Fund from reduction or clawback in the event JLI were to file for bankruptcy. In no event shall payments related to the administration of the Trust exceed the Settlement Fund's share of the actual, documented out-of-pocket costs for administering the Trust.

**D.     The Court Should Allow Claims for Payment from the Class Settlement to Be Submitted After July 14**

Although not at issue in this Motion, Class Plaintiffs have also settled their claims against Altria as part of a global resolution of the remaining claims in the MDL. Class Plaintiffs anticipate filing a motion for preliminary approval and directing notice of the Altria settlement in the near future, and expect that the proposed notice program for the Altria settlement will likely commence within a few months of the July 14 deadline for Class Members to submit claims in connection with the JLI settlement. Given the timing of the settlements and the fact that both settlements resolve the same claims on behalf of the same class, Class Counsel believe that the most efficient, least confusing, and most cost-effective course is for there to be a combined claims process and distribution of settlement proceeds for the two settlements.

To effectuate a combined process, Class Plaintiffs propose that any claim submitted, whether during the claims submission periods established in connection with the JLI settlement or Altria settlement, will be deemed to have been submitted with respect to both the settlements. This process would avoid the confusion that would result from requiring JUUL purchasers to submit two claims (one for each settlement) within a relatively short period of time and combining the claims processes will

preserve millions of dollars in additional costs that would otherwise be incurred if the Settlement Administrator was required to process two claims from each Eligible Claimant. Instead, notice provided in connection with the Altria Class Settlement will advise Class Members that, if they previously submitted a claim, they need not submit a new claim with respect to the Altria Class Settlement and that, if they have not previously submitted a claim, any claim they submit will apply to both the JLI and Altria settlements. In the unlikely event a Class Member only wishes to receive funds from one settlement but not the other, they will be advised to contact the Settlement Administrator.[11] Ultimately, Eligible Claimants who have submitted claims will receive their *pro rata* share of the combined proceeds from the JLI and Altria settlement in a single distribution, which will also reduce costs to the class members as compared to separate distributions for the two settlements.

Accordingly, Class Plaintiffs request that the Court modify the Preliminary Approval Order to replace the "Claims Filing Postmark Deadline" event in the schedule with a "Claims Submission Periods" defined as "the period ending July 14, 2023, and any claims submission period that may be established in connection with the Altria settlement." Class Plaintiffs have submitted a separate proposed order reflecting these revisions along with this motion. Class Plaintiffs will separately request, in connection with seeking approval of the Altria settlement, that any claims submitted prior to distribution of notice of the Altria settlement be deemed submitted for the purposes of the Altria settlement.

## IV.    CONCLUSION

For the foregoing reasons, Class Plaintiffs and Class Counsel respectfully request that the Court enter the proposed order certifying the Settlement Class, appointing Dena Sharp of Girard Sharp LLP as Settlement Class Counsel, appointing Class Plaintiffs to represent the Settlement Class, granting final approval of the Class Settlement, and extending the claims deadline as set forth above and in the accompanying proposed order.

---

[11] The use of a combined claims submission process will not affect class members' rights to opt out from, or object to, either or both settlements.

Dated:  June 23, 2023

Respectfully submitted,

By: /s/ *Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

*Co-Lead Counsel and Proposed Settlement Class Counsel*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Dena C. Sharp*
Dena C. Sharp

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
JLI CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO