1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

13

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Class Actions | CASE NO. 19-md-02913-WHO<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND JUDGMENT** |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Plaintiffs[1] have moved the Court for final approval of a proposed class action settlement with Defendant JUUL Labs, Inc. ("JLI"), on behalf of itself and the Released Parties, the terms and conditions of which are set forth in the Class Settlement Agreement. ECF No. 3745-4 (revised agreement). The Court previously granted preliminary approval to the proposed settlement and directed notice to the Settlement Class. ECF No. 3779.

For the reasons described more fully below, the Court GRANTS final approval of the Settlement.

## I.   BACKGROUND

Class Plaintiffs and JLI seek to resolve economic loss claims (other than claims asserted in *In re Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from alleged anticompetitive conduct) asserted against JLI and the Released Parties involving the manufacture, labeling, marketing, and sale of JUUL—an electronic nicotine delivery system consisting of an electronic cigarette and a nicotine pack called a JUULpod. Class Plaintiffs allege that Defendants created, marketed, and sold JUUL by misleading the public about the addictiveness and risks of JUUL, and by trying to expand the market by capturing and addicting individuals—specifically minor users—who had not previously used tobacco or e-cigarette products. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 574 (N.D. Cal. 2020).

Bradley Colgate and Kaytlin McKnight filed the first complaint in this litigation against JLI on April 26, 2018. Case No. 2018-cv-2499 (N.D. Cal.) ("Colgate") ECF No. 1. The Court denied JLI's motion to compel arbitration and for the most part denied multiple motions to dismiss these plaintiffs' amended complaint. *See Colgate* ECF Nos. 40, 41, 66, 82, 98, 99, and 139; *Colgate v. JUUL Labs, Inc*., 345 F. Supp. 3d 1178, 1187 (N.D. Cal. 2018); *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728 (N.D. Cal. 2019). Other individual and class cases were subsequently filed in this Court and in other jurisdictions. The Judicial Panel on Multidistrict Litigation transferred all these cases to this Court for pretrial purposes on October 2, 2019. Plaintiffs filed a

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the JLI Class Settlement Agreement and Plan of Allocation except as otherwise noted.

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

CASE NO. 19-MD-02913-WHO

consolidated class action complaint on March 1, 2020, and then amended it on April 6, 2020. Defendants again moved to dismiss, and the Court denied the motions in part and granted the motions in part with leave to amend on October 23, 2020. *In re JUUL Labs,*, 497 F. Supp. 3d at 677-78. Class Plaintiffs filed a second amended consolidated class action complaint on November 12, 2020, ECF No. 1358, and the Court denied Defendants' motions to dismiss that complaint on April 13, 2021. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 533 F. Supp. 3d 858, 861, 881 (N.D. Cal. 2021).

Discovery proceeded prior to, during, and after the motions to dismiss. Defendants produced millions of pages of documents, and Plaintiffs obtained information pursuant to interrogatories and stipulations and conducted over 100 depositions of Defendants, their employees, and third parties. The parties also engaged in expert discovery, which included reports and depositions from experts on topics including the chemistry of JUUL products, the marketing of JUUL products, and classwide injury and damages.

After a contested motion to certify bellwether classes asserting federal and California law claims, on June 28, 2022, the Court certified four classes[2] of purchasers of JUUL products, appointed Class Representatives and Class Counsel, and denied related Daubert motions. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 1023 (N.D. Cal. 2022) ("*Class Cert. Order*"). On July 12, 2022, Defendants filed three Rule 23(f) petitions seeking permission to appeal from the Court's order granting class certification. *See* Ninth Circuit Case Nos. 22-80061, 22-80062, and 22-80063. On October 24, 2022, the Ninth Circuit consolidated the cases and granted Defendants permission to appeal. *E.g.*, Ninth Circuit Case No. 22-80063, ECF No. 14.

---

[2] These were the **Nationwide Class** (All individuals who purchased, in the United States, a JUUL product); the **Nationwide Youth Class** (All individuals who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase); the **California Class** (All individuals who purchased, in California, a JUUL product); and the **California Youth Class** (All individuals who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase).

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

CASE NO. 19-MD-02913-WHO

On May 18, 2020, the Court appointed Thomas J. Perelli as Settlement Master, who oversaw a years-long mediation process that led to the Class Settlement. Under the Settlement, the Class will receive $255 million in exchange for a release of the Settlement Class Released Claims. The settlement does not include Altria Group, Inc., and related companies, so no class or individual claims against those entities will be released.[3]

On January 30, 2023, the Court granted Class Plaintiffs' motion for preliminary approval of the Class Action Settlement, conditionally certifying the Settlement Class, appointing Epiq Systems, Inc., as the Settlement Administrator, and approving the Notice Plan and directing notice to be provided to Class Members. ECF No. 3779 ("Preliminary Approval Order").

## II.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.      Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B.      Notice and Administration

Following the Court's Preliminary Approval Order, the Class Settlement Administrator established a settlement website at www.JUULclassaction.com, which includes: the long-form notice (explaining the procedures for Settlement Class Members to submit claims, object, or exclude themselves), a contact information page that includes address and telephone numbers for the Class Settlement Administrator and Class Counsel, the Class Settlement Agreement, the Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. In addition, the motion papers filed in connection with the Class Settlement, and Class Plaintiffs' application for Attorneys' Fees and Expenses and Service Awards were placed on the settlement website after they were filed (which was before the opt out and objection deadline). The Class Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries.

Notice of the Settlement was provided by: (1) direct notice via email to those Settlement

---

[3] In separate agreements, JLI has resolved the claims brought by other claimants in the MDL, including individuals who asserted claims for personal injury, school district and local government entities, and Native American tribal entities.

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

Class Members for whom an email address was available; (2) direct notice via postcard mailed to those Settlement Class Members for whom a physical mailing address was available, but for whom an email address was not available; (3) publication notice of the Settlement, which comprised 427 million impressions, targeted at likely Settlement Class Members served across relevant internet websites and social media platforms; and (4) publication on the settlement website.

In total, the Notice Plan is estimated to have reached at least 80% of Settlement Class Members. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77%); *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *9 (N.D. Ohio Sept. 23, 2016) (approving notice plan reaching approximately 77.5 percent of Class Members).

The Court finds that the Notice Plan provided the best practicable notice to the Settlement Class Members and satisfied the requirements of due process.

Settlement Class Members were given until July 14, 2023, to object to or exclude themselves from the proposed Class Settlement. X Settlement Class Members timely submitted objections and X individuals timely submitted requests to be excluded from the Settlement Class. As of DATE, X Claim Forms have been received by the Class Settlement Administrator.

**C.     Certification of the Settlement Class**

For purposes of the Class Settlement only and this Final Approval Order and Judgment, Class Plaintiffs have moved to certify the following Settlement Class: "All individuals who purchased, in the United States, a JUUL Product from brick and mortar or online retailers before December 6, 2022." Excluded from the Settlement Class are: (a) the judges in this MDL and any other judges that have presided over the litigation, including the coordinated proceeding captioned *JUUL Labs Product Cases*, Judicial Counsel Coordination Proceeding No. 5052, pending in the Superior Court of California, County of Los Angeles, Department 11, Settlement Master Thomas J. Perrelli, and their staff, and immediate family members; (b) Defendants, their employees,

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

1    officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries

2    or affiliated companies; (c) Class Counsel and their employees; (d) any individuals who purchased

3    JUUL Products only secondarily from non-retailers; and (e) all individuals who timely and

4    properly excluded themselves from the Settlement Class.[4]

5         The Court previously certified a nearly identical nationwide class under RICO and a class

6    of California JUUL purchasers under California law. The Settlement Class is co-extensive with

7    the certified class, except that the claims of the Settlement Class apply to JLI on a nationwide

8    basis, includes an end date for the Settlement Class (as is necessary to settlement administration),

9    and includes purchases of JUUL accessories and products in addition to JUULpods and devices.

10   The slight differences between the litigation class and the proposed Settlement Class do not alter

11   the Court's previous analysis, except insofar as the predominance and superiority analysis

12   prerequisites operate differently and are easier to meet in the settlement context. *See In re Hyundai

13   & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The Court finds that the Settlement

14   Class largely overlaps with those previously certified by the Court and that, for settlement

15   purposes only, there is a sound basis for expanding the scope of the previously certified classes to

16   encompass all the Settlement Class Released Claims against JLI and the Released Parties.

17        The Court independently finds that the Settlement Class meets the requirements of Rule 23

18   as set forth below:

19        a.    Members of the Settlement Class are so numerous as to make joinder

20   impracticable. JLI's direct sales data, which covers only a portion of the Settlement Class,

21   contains over two million unique names, meaning that the proposed Settlement Class contains

22   millions of members.

23        b.    There are questions of law and fact common to the Settlement Class. Those

24   questions include whether the Defendants' conduct was likely to mislead a reasonable consumer,

25   whether the conduct would have been material to a reasonable consumer, the existence of a RICO

26

27   [4] The list of individuals who timely and properly submitted exclusion requests and are therefore
     not members of the Settlement Class was filed with the Court on July 21, 2023.

28

enterprise, the existence of a pattern of racketeering, the existence of a scheme to defraud, whether Defendants' conduct was unfair and/or unconscionable, whether JUUL products were fit for their ordinary use, and the appropriate measure of aggregate damages.

     c.  Common questions predominate over any questions affecting only individual Settlement Class Members for purposes of the Class Settlement because the Defendants' conduct will drive the litigation. That is particularly true in the settlement context. As the Ninth Circuit has held, "predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 304 n. 29 (3d Cir. 2011) (en banc) (courts are "more inclined to find the predominance test met in the settlement context") (internal quotation marks and alteration omitted). That is because "[s]ettlement may 'obviate the need to litigate individual issues that would make a trial unmanageable,' making common questions more important in the relative analysis." *Jabbari*, 965 F.3d at 1005-06 (quoting *Hyundai*, 926 F.3d at 558). One issue that takes on significantly less importance in a settlement class is the particulars of the state law being applied. *See id*. at 1007 ("For purposes of a settlement class, differences in state law do not necessarily, or even often, make a class unmanageable."). Even in the litigation context, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)). Under California law, for example, class members would not need to show their individual reliance, and Class Plaintiffs' California law claims focus on whether Defendants' conduct would have misled and have been material to a reasonable consumer. *See Krommenhick v. Post Foods*, 334 F.R.D. 552, 564, 565, 575 (N.D. Cal. 2020) (discussing the objective nature of the key inquires under the UCL, CLRA, and FAL). Class Plaintiffs may, for example, be able to demonstrate classwide injury and damages through a price premium theory. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D.

7

Cal. 2018) ("It is well-established that the 'price premium attributable to' an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case under the FAL, CLRA, and UCL.").

d. Class Plaintiffs' claims and the defenses thereto are typical of the claims of the Settlement Class Members and the attendant defenses for purposes of the Class Settlement. Class Plaintiffs allege that Defendants misled JUUL purchasers, engaged in a fraudulent scheme to enhance JUUL sales, and engaged in unfair conduct to market JUUL products to minors. Those theories of liability and injury are the same for Class Plaintiffs and members of the Settlement Class. Class Plaintiffs' allegation that JUUL products are not fit for their ordinary use is based on the design of JUUL products and is thus the same for Class Plaintiffs and members of the Settlement Class.

e. Class Plaintiffs and their counsel have fairly and adequately protected the interests of the Settlement Class Members in this action with respect to the Class Settlement and will continue to do so. Each Class Plaintiff has the same goal as members of the proposed Settlement Class (*i.e.*, holding Defendants accountable for their alleged deceptive and youth-focused marketing). Class Plaintiffs' interests are aligned with, and not in conflict with, those of Settlement Class Members. The record reflects that each Class Plaintiff has dedicated substantial time and effort to this litigation by working with their counsel; reviewing pleadings; responding to discovery; searching for, collecting, and producing documents; and preparing to sit for depositions, among other things.

f. A class action is superior to all other available methods for fairly and efficiently resolving this action. While individuals with personal injury claims may be motivated to file individual personal injury suits, the same is not true with respect to claims for economic losses. No plaintiffs have expressed a desire to individually litigate their economic loss claims; in fact, plaintiffs sought to litigate their economic loss claims as class actions instead of through their separate personal injury complaints. Given the substantial overlap among all class members' claims, it is highly desirable to concentrate economic loss claims in a single proceeding.

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND JUDGMENT

The Court appoints Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. as the Settlement Class Representatives and Dena Sharp of Girard Sharp LLP as Class Counsel.

### D.      Final Approval of Settlement

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[5] In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

For the reasons further detailed below, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors. Defendants dispute whether the

---

[5] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

manufacture, marketing, advertising, and sale of the JUUL products was unlawful, unfair, deceptive and/or in violation of other state and federal laws. There would also have been a battle of the experts regarding consumer understanding of JUUL marketing and advertising and regarding the computation of restitution/damages, if any. Further, JLI was prepared to assert an arbitration defense against a large portion of the class. Proceeding to trial as against JLI and the Released Parties would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals and the potential for bankruptcy.

Counsel for all Parties are highly experienced; Class Counsel provided a detailed declarations explaining why they supported the Class Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1.    Settlement Class Representatives and Class Counsel Have Adequately Represented the Settlement Class

In the Preliminary Approval Order, this Court found that the Settlement Class Representatives and Class Counsel adequately represented the interests of the certified classes. This Court has seen no evidence to contradict its previous finding, and the Court reconfirms it here with respect to Settlement Class Representatives and Class Counsel, who have vigorously prosecuted this action through discovery, motion practice, mediation, and preparations for trial. Class Counsel "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983, at *6.

### 2.    The Class Settlement Was Negotiated at Arm's Length

The Court finds that the Class Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced, Court-appointed Settlement Master, Thomas J. Perrelli. *See, e.g., G. F. v. Contra Costa Cty*., 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983, at *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator).

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

Before agreeing on the terms of the Class Settlement, the parties engaged in extensive factual investigation, which included dozens of depositions, the production and review of millions of pages of documents, extensive written discovery, robust motion practice, and expert discovery. The record was thus sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing and finds no such signs. Specifically, the Court finds that Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees as there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

### 3.     The Cash Payments Provide Adequate Recovery to the Class

In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983, at *8 (quoting *Hanlon*, 150 F.3d at 1026).

JLI has agreed to pay $255 million on behalf of itself and the Released Parties, which will be used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of Allocation. Settlement Class Members who submit Eligible Claims will therefore have the opportunity to receive substantial payments corresponding to their JUUL purchases. In addition, because the Class Settlement Agreement does not release claims against Defendant Altria and related entities (which will instead be the subject of a forthcoming filings), there is a distinct possibility of additional recoveries to benefit the Settlement Class. Based on the record evidence and argument the parties submitted in connection with the Class Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable, and adequate given the risks of proceeding to trial and the recovery potentially available to Settlement Class Members if the Class Representatives had prevailed at trial.

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

### 4. The Risk of Continuing Litigation

The amount provided for in the Class Settlement is also reasonable in light of the risks of continued litigation. The Ninth Circuit has, for example, granted the Defendants' Rule 23(f) petitions and Class Plaintiffs therefore face the risk that the Ninth Circuit would reverse or modify the Court's class certification decision. There were also substantial questions as to whether Class Plaintiffs would be able to prove at trial that JLI's and other parties' practices were fraudulent, unlawful, or unfair, and that JLI and other defendants should be held liable. Both sides believed they had persuasive facts to support their positions, and there is limited precedent available regarding the parties' competing theories. Trial would have involved a battle of experts and their analyses as to whether the marketing, advertising, and sales of JUUL products were unlawful, unfair, or fraudulent, the methods of calculating damages/restitution, and ultimately what damages and/or restitution, if any, should be awarded. JLI was prepared to assert an arbitration defense against a large portion of the class. And even if Class Plaintiffs succeeded at trial, appeals would undoubtedly have followed. Finally, there was the looming risk that JLI may file for bankruptcy protection, thereby slowing or even eliminating any recovery.

### 5. Attorneys' Fees and Expenses

The parties have reached no agreement regarding the amounts of attorneys' fees, expenses, and service wards to be paid. *See, e.g.*, *Hyundai.*, 926 F.3d at 569-70 (rejecting fairness objection because class counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees, expenses, and service awards, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable.

### 6. Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Court has reviewed the Class Settlement Agreement and relevant accompanying materials and has been made aware that JLI (on behalf of itself and the Released Parties) has

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

agreed to fund parallel settlement programs to provide recoveries for other claimants in this MDL and the parallel JCCP proceedings, including individuals who asserted claims for personal injury, and school district and local government entities, as well as Native American tribal entities. Under the supervision of Special Master Perrelli, the amount of the Class Settlement Fund was negotiated separately from the amounts for the other settlements, with co-lead counsel Dena Sharp representing the Class, and the other co-lead counsel in the MDL representing interests of the personal injury and government entity plaintiffs. The Court is also aware that the settlement provides for the creation of a trust to hold assets on behalf of the Class, which benefits the Settlement Class, as do the protections the settlement contemplates in the event of bankruptcy or non-payment.

Certain of the Class Plaintiffs have asserted personal injury claims, and thus will be eligible to apply to share in the amounts allocated to the resolution of personal injury claims. Personal injury claimants will receive no favorable treatment compared to other class members. All personal injury claims will be paid from funds set aside to resolve personal injury claims, while the economic loss claims asserted by the Settlement Class will be paid from the Net Settlement Fund. Only after a diligent effort to identify all class members and distribute to them the full amount of the Net Settlement Fund will the parties confer regarding the disposition of any residual funds, the distribution of which would be subject to the Court's approval and a finding that the parties first exhausted all reasonable efforts to distribute remaining funds to Settlement Class members. Under the terms of the Class Settlement Agreement, the Net Settlement Fund is non-reversionary and no portion of the Gross Class Settlement Amount or Net Settlement Fund will revert to JLI or any other Released Party.

### 7. The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Settlement Class Members who seek benefits under the Class Settlement need only submit a simple claim form, and the form is prepopulated if their purchase information is known to JLI because they made purchases on

13

JLI's website. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer products sold over the counter"). Further, the claim process is no more onerous than would be required after trial.

The method for distributing funds to Eligible Claimants is also reasonable. "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). The Court finds that the Plan of Allocation is fair, reasonable, and adequate and is hereby approved.

Under the Plan of Allocation, all Settlement Class Members who submit an Eligible Claim will receive cash payments based on their *pro rata* allocation of the Net Settlement Fund. The Plan of Allocation provides higher payments for those who first purchased in the earlier years of the class period or when they were underage. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the comparative weakness of certain claims). The larger payments for those who made their initial purchases earlier is consistent with the evidence about changes in relevant warnings over time, which led the Court to note in its class certification order that:

> JLI will be free to argue at the appropriate points (on summary judgment, trial, post-trial) that a reasonable consumer who purchased after a certain date could not have been misled by its representations or omissions about its products given the other information in the market or given the addition of the 'black-box' nicotine warning on JUUL's packaging.

*Class Cert. Order*, 609 F. Supp. at 990. The enhanced payments for those who began purchasing when underage is based on Class Plaintiffs' full refund theory of recovery as to their youth targeting claims, as opposed to the price premium damages model applicable to other claims. *See id.* at *17 (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly illegal). Further, it is rational to provide

14

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

enhancements for all purchases by such persons, even after the warnings were augmented or the purchasers reached adulthood, because of the addictive nature of JUUL Products.

Setting a cap on the recoveries by Claimants who lack proof of purchase while claims that are accompanied by proof of purchase will not be capped is also reasonable. The use of a cap for Claimants without proof of purchases ensures a fair distribution and serves to disincentivize illegitimate or exaggerated claims. *See, e.g., In re Groupon, Inc.*, 2012 WL 13175871, at *6 (S.D. Cal. Sep. 28, 2012) (holding requirement of a voucher number or other proof of purchase serves "to ensure that money is fairly distributed for valid claim.") Such a cap is a common feature of consumer class action settlements. *See, e.g., Broomfield v. Craft Brew All., Inc*., 2020 WL 1972505, at *30 (N.D. Cal. Feb. 5, 2020) (finally approving settlement with cap on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co*., 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof of purchase, stating that such a claim process "would be no different than that required after trial"); *Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *2 (C.D. Cal. Mar. 13, 2013) (finally approving settlement with claims limited to $10.65 (*e.g.*, 3 bottles) without proof of purchase, with no cap on claims accompanied by a proof of purchase, for example a receipt or product packaging).

Settlement Class Members can elect their preferred method of payment, including mailed check, direct deposit, PayPal, or prepaid MasterCard, or Amazon gift card. After an initial distribution, if there are substantial funds from uncashed payments and it is economically rational to do so, the monies will be redistributed to the Settlement Class Members who made claims and accepted their initial distribution payments where economically feasible. Only if residual funds remain thereafter will they be otherwise distributed, subject to the Court's approval.

### 8.    The Response of Class Members

Out of an estimated minimum of X Settlement Class Members, there were X opt-outs and X objections. In comparison, as of DATE Settlement Class Members have submitted an estimated X valid Claims. These figures represent a positive response. *See Churchill Village, LLC v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may infer

appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc*., 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable"); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig*., 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, *with a median rate of 0.023%*").

### E.    Releases and Effect of This Order

#### 1.    Releases by Settlement Class Members

By operation of this Order and Judgment, on the date specified in the Class Settlement Agreement, Settlement Class Members, including the Settlement Class Representatives, release and forever discharge and hold harmless the Released Parties of and from any and all Settlement Class Released Claims which the Settlement Class Member ever had, now have, or will have in the future. The Settlement Class Released Claims shall not release any Settlement Class Member's: (i) claim(s) for personal injury against the Released Defendants; (ii) claims asserted in *In re Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from alleged anticompetitive conduct; (iii) claim(s) against any non-settling Defendants; (iv) claim(s) arising from the purchase of any JUUL product after December 6, 2022; or (v) right(s) to enforce the Class Settlement Agreement. Settlement Class Members shall not release their claims if either the Effective Date does not occur, or the Gross Settlement Amount is not paid. The scope of the Released Claims is consistent with the economic loss claims pled in the class action complaint.

#### 2.    Waiver of Provisions of California Civil Code § 1542

By operation of this Order and Judgment, with respect to the Settlement Class Released Claims, Class Plaintiffs, the Released Parties, and Settlement Class Members shall be deemed to

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Class Plaintiffs, JLI (on behalf of itself and the Released Parties), and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

The Settlement Class Released Claims of the Settlement Class are dismissed with prejudice and without costs. Accordingly, the Second Amended Consolidated Class Action Complaint and any other complaints in the litigation asserting Settlement Class Released Claims are hereby dismissed with prejudice and without costs.

### 3. Compliance with Class Action Fairness Act

The record establishes that the Class Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). ECF No. 3742.

### F. Costs of Administering the Class Settlement

The Settlement Administrator received over three million claims, which exceeds the outer bounds of the volume of claims that the Settlement Administrator had expected prior to commencing the notice program. Based on the information provided by Class Plaintiffs, a precise estimate of the costs needed to process those claims, conduct necessary follow-ups, and distribute funds is unknown given the ongoing nature of the analysis of the claims.

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND JUDGMENT

Epiq and Class Counsel both anticipate that, notwithstanding the very high claims volume, Epiq will be able to complete the necessary settlement administration work for less than the $7,000,000 proposed in the class notice. Given the uncertainty in the final amounts needed to complete settlement administration, the Court authorizes payment to Epiq of *up to* $7,000,000. Class Counsel shall, however, only authorize payments to Epiq for actual costs incurred. Any difference between the actual costs incurred by Epiq and the $7,000,000 approved amount shall remain a part of the Settlement Fund. Class Counsel is directed to continue to work with Epiq on methods for reducing costs and to review billing statements on a weekly basis.

The Court also authorizes total payment of up to $50,000 per year for previously incurred and future costs related to the administration of the Trust (including all expenses and compensation payable under the terms of the Trust). Payments up to such amount are reasonable given the role of the Trust in protecting the Class Settlement Fund from being subject to reduction or clawback in the event JLI were to file for bankruptcy. In no event shall payments related to the administration of the Trust exceed the Class Settlement Fund's share of the actual, documented out-of-pocket costs for administering the Trust.

### G.    Other Effects of This Order

No action taken by the parties, either previously or in connection with the negotiations or proceedings connected with the Class Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party. Neither the Class Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Class Settlement Agreement : (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Class Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Class Settlement

Agreement, in any proceeding in any court, administrative agency, or other tribunal. JLI's and the Released Parties' agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession that class certification was or would be appropriate in the litigation outside of the context of settlement or would be appropriate in any other action.

Except as provided in this Order, Class Plaintiffs shall take nothing against the Released Parties by the Released Claims. This Order shall constitute a final judgment binding the Released Parties and Settlement Class Members with respect to the Released Claims.

No distributions shall be made from the Settlement Fund, or from any account holding the Settlement Fund, without the written authorization of Class Counsel.

Defendants will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant. No Settlement Class Member or any other person will sue or have any claim or cause of action against the Settlement Class Representatives, Class Counsel or any person designated by Class Counsel, Co-Lead Counsel or the Class Settlement Administrator arising from or relating to the Class Settlement, the Released Claims, the litigation, or determinations or distributions made substantially in accordance with the Class Settlement or Orders of the Court, including this Final Approval Order and Judgment.

Without affecting the finality of the judgment hereby entered, the Court reserves exclusive jurisdiction over the implementation of the Class Settlement. In the event the Effective Date does not occur in accordance with the terms of the Class Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered, and releases delivered in connection herewith shall be null and void and the parties shall be returned to their respective positions ex ante.

Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any provisions of the Class Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT

1    Dated: _____, 2023

2                                                    _____
3                                                    Hon. William H. Orrick
                                                     U.S. District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND JUDGMENT