[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates to: <br> All Class Actions | CASE NO. 19-md-02913-WHO <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT** <br><br> **MOTION HEARING** <br><br> DATE: TBD <br> TIME: TBD <br> LOCATION: TBD <br><br> HON. WILLIAM H. ORRICK III |

1

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ............................. 1

I.      INTRODUCTION ............................................................................................ 2

II.     PROCEDURAL HISTORY ............................................................................. 3

    A.   The *Colgate* Action .............................................................................. 3

    B.   The MDL............................................................................................... 4

    C.   Class Certification ................................................................................ 4

    D.   Settlement Negotiations ........................................................................ 5

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. .............. 6

    A.   Legal Standard ..................................................................................... 6

    B.   The Settlement Is Fair, Adequate, and Reasonable............................... 7

        1.   Procedural Considerations ........................................... 7

            a.   Adequate Representation of the Class............................ 7

            b.   Arm's Length Negotiations............................................. 7

        2.   Substantive Considerations ........................................... 8

            a.   Strength of Plaintiffs' Case and Risks of Continued Litigation ...................................................................... 9

            b.   The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Class........... 10

            c.   Attorneys' Fees and Costs............................................ 11

             d.   Service Awards to Class Representatives ..................................... 12

            e.   Supplemental Agreements .......................................... 12

            f.   Equitable Treatment of Class Members........................................ 13

            g.   The Released Claims Are Identical to Those Pled in the Litigation.................................................................... 15

            h.   Past Distributions ...................................................... 16

    C.   CERTIFICATION OF THE SETTLEMENT CLASS IS LIKELY ......................... 16

IV.     THE NOTICE PLAN SHOULD BE APPROVED. ....................................................... 20

V.      THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED....................... 22

VI.     THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL....................................................................... 23

VII.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ............................ 23

VIII.   CONCLUSION ............................................................................................. 24

1

**TABLE OF AUTHORITIES**

2

**CASES**

3 *Adams v. Inter-Con Sec. Sys. Inc.*,
4    2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)..........................................................................7

*Allen v. Similasan Corp.*,
5    2017 WL 1346404 (S.D. Cal. Apr. 12, 2017) ..................................................................16

6 *Alvarez v. Farmers Ins. Exchange*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ..................................................................11

7 *Amchem Prods., Inc. v. Windsor*,
8    521 U.S. 591 (1997)........................................................................................................20

9 *Broomfield v. Craft Brew All., Inc.*,
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ..................................................................15

10 *Bruno v. Quten Research Inst., LLC*,
   2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ..................................................................15

11
*Colgate v. JUUL Labs, Inc.*,
12    345 F. Supp. 3d 1178 (N.D. Cal. 2018) ...........................................................................3

13 *Colgate v. Juul Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) .............................................................................3

14 *De La Torre v. CashCall, Inc.*,
15    2017 WL 2670699 (N.D. Cal. June 21, 2017) ................................................................16

16 *Fitzhenry-Russell v. Coca-Cola Co.*,
   2019 WL 11557486 (N.D. Cal. Oct. 3, 2019)..................................................................15

17 *Foster v. Adams & Assocs.*,
   2021 WL 4924849 (N.D. Cal. Oct. 21, 2021)..................................................................17

18
*Garner v. State Farm. Mut. Auto. Ins. Co.*,
19    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................................7

20 *Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)......................................................................................6, 19

21 *Harris v. Marhoefer*,
22    24 F.3d 16 (9th Cir. 1994)..............................................................................................10

23 *In re Groupon, Inc. Mktg. and Sales Practices Litig.*,
   2012 WL 13175871 (S.D. Cal. Sep. 28, 2012) ..............................................................15

24 *In re Health S. Corp. Sec. Litig.*,
25    334 F. App'x 248 (11th Cir. 2009) .................................................................................12

26 *In re High-Tech Employee Antitrust Litig.*,
   2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................11

27 *In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019)..........................................................................................19

28

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d
    858 (N.D. Cal. Apr. 13, 2021) ................................................................................. 3

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................................... 3

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................................ 12

*Johnson v. Triple Leaf Tea Inc.*,
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................................ 8

*Just Film v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .............................................................................. 18

*Massey v. Star Nursing, Inc.*,
    2022 WL 14151758 (N.D. Cal. Oct. 24, 2022) ..................................................... 20

*Nat'l Rural Telecomm. Coop. v. DIRECTV*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 6

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................... 7, 20

*Pettit v. Procter & Gamble Co.*,
    2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ....................................................... 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ..................................... 20

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................ 6, 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 19

*Thomas v. MagnaChip Semiconductor Corp.*,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ...................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... 18, 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 18

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................................................... 11

**STATUTES**

28 U.S.C. § 1407 ........................................................................................................ 3

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OTHER AUTHORITIES**

2 *Newberg on Class Actions,* § 11.28, 11-59 ............................................................... 19

4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002) ....................................... 6

4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) ........................... 13

5 *Moore's Federal Practice,* §23.85[2][e] (Matthew Bender 3d ed.)....................................... 6

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................................. 6

Newberg on Class Actions § 3:31 (5th ed.) ............................................................ 18

**RULES**

Fed. R. Civ. P. 23 ...................................................................... 1, 2, 16

Fed. R. Civ. P. 23(a) ......................................................................... 4

Fed. R. Civ. P. 23(b) ........................................................................ 16

Fed. R. Civ. P. 23(b)(3) .......................................................... 4, 16, 17, 19

Fed. R. Civ. P. 23(b)(3)(D) ................................................................... 20

Fed. R. Civ. P. 23(e) ........................................................................ 12

Fed. R. Civ. P. 23(e)(1) ........................................................... 5, 16, 20

Fed. R. Civ. P. 23(e)(2) ...................................................................... 5

Fed. R. Civ. P. 23(e)(2)(A)-(B) ............................................................... 5

Fed. R. Civ. P. 23(e)(2)(C) ................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................... 9

Fed. R. Civ. P. 23(e)(2)(D) ................................................................... 7

Fed. R. Civ. P. 23(e)(3) ..................................................................... 12

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**PLEASE TAKE NOTICE THAT** on a date and time convenient for the Honorable William H. Orrick III of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 2, 17th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:[2]

      (1)      preliminarily approving the proposed settlement of the class action claims in this litigation as against the remaining Defendants (*i.e.* Altria and affiliated entities);

      (2)      finding that certification for purposes of settlement of the Settlement Class defined as follows is likely: All individuals who purchased, in the United States, a JUUL Product from brick and mortar or online retailer before December 6, 2022;[3]

      (3)      preliminarily approving the proposed Plan of Allocation;

      (4)      approving and ordering the implementation of the proposed Notice Plan;

      (5)      authorizing the payment of initial settlement administration expenses; and

      (6)      setting a date for a Final Approval Hearing.

A copy of Class Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement is separately submitted with this Motion.

Class Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern

---

[1] Class Plaintiffs for the purposes of settlement are Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B.

[2] Capitalized terms in this Motion incorporate the defined terms from the Altria Class Settlement Agreement.

[3] Excluded from the Settlement Class are (a) the Settling Defendants or any other named defendant in the litigation; (b) officers, directors, employees, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliated companies of the Settling Defendants or any other named defendant in the litigation; (c) Class Counsel and their employees; (d) the Court and other judicial officers, their immediate family members, and associated court staff assigned to MDL No. 2913; and (e) those individuals who timely and validly exclude themselves from the Settlement Class.

District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Dena Sharp, the declaration of Cam Azari (Senior Vice President with Epiq Class Action & Claims Solutions, Inc.), and the pleadings and papers on file in MDL No. 2913 (the "Litigation"), and any other matter this Court may take notice of.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Class Plaintiffs seek preliminary approval of settlement with Defendants Altria Group, Inc., Altria Client Services LLC, Altria Enterprises, LLC, Altria Group Distribution Company, Philip Morris USA, Inc. (collectively, "Altria") for $45,531,250.00. This settlement follows the $255,000,000.00 settlement with JUUL Labs, Inc. ("JLI") and related parties ("JLI Class Action Settlement"), which this Court preliminarily approved in January, Dkt. 3779 ("JLI Settlement Preliminary Approval Order"). On top of the earlier settlement, Class Plaintiffs have agreed on behalf of the same Settlement Class to settle the economic loss claims against Altria, the last remaining defendants in this MDL, for an additional $45 million. This settlement is the result of years of mediation overseen by Special Master Thomas J. Perrelli and significant efforts of Class Counsel[4] to develop the RICO theory and discovery record, obtain certification of two nationwide RICO classes, defend the certification order against Altria's attacks on appeal and, in close coordination with other plaintiffs' counsel in the MDL, to effectively present evidence in support of the claims against Altria in the first bellwether trial. The proposed class settlement with Altria resolves all remaining Class claims against all remaining defendants in the MDL.[5]

Settlement Class Members will be eligible for payments from the Altria Class Settlement Fund based on the estimated amount they paid for JUUL Products. Class Counsel have designed the notice program to complement and supplement notice of the JLI Class Action Settlement, and

---

[4] In its order granting preliminary approval of the JLI Class Action Settlement, the Court appointed Dena Sharp of Girard Sharp LLP as Settlement Class Counsel. Dkt. 3779 at 7.
[5] In separate agreements, Altria has also resolved the claims brought by individuals who asserted claims for personal injury, and by school district and local government entities that asserted claims for public nuisance (the Non-Class Settlement Agreements).

the notice program will advise Settlement Class Members of their rights and options. To ensure consistency and maximize efficiency, Class Members not need to submit a new claim if they already submitted a claim in connection with the JLI Class Action Settlement, and Class Counsel anticipates that Class Members will receive a single payment that includes the amounts due to them under both the Altria and JLI settlements in accordance with the same Plan of Allocation as in the JLI Class Action Settlement. Class Counsel will work to reduce administration costs wherever possible by building on the notice and claims process already approved by this Court in connection with the JLI Class Action Settlement. The settlement offers Class Members a streamlined claim process supervised by Class Counsel and an experienced Class Settlement Administrator. Any attorneys' fees and expenses will be paid from the Altria Settlement Fund in amounts subject to this Court's discretion.

The Altria Class Settlement Agreement (Sharp Decl., Ex. 1) meets all the criteria for approval under Federal Rule of Civil Procedure 23. The settlement is the product of extensive arm's-length negotiations among experienced attorneys familiar with the legal and factual issues in this case, including an acute awareness of the risks at trial and on appeal. The terms of the Altria Class Settlement Agreement and Plan of Allocation treat all Class Members equitably relative to each other and will deliver significant additional relief to the Settlement Class. Class Plaintiffs and Class Counsel believe this settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

Class Plaintiffs ask the Court to initiate the settlement approval process by entering the proposed Preliminary Approval Order, directing that notice be given in accordance with the proposed Notice Plan, and setting a date for the fairness hearing.

## II.     PROCEDURAL HISTORY

### A.     The *Colgate* Action

On April 26, 2018, Bradley Colgate and Kaytlin McKnight filed a class action complaint against JLI. N.D. Cal. No. 2018-cv-2499 ("*Colgate*"), Dkt. 1. The Court subsequently denied JLI's motion to compel arbitration and largely denied multiple motions to dismiss Plaintiffs'

amended complaints. *See Colgate* Dkts. 40, 41, 66, 82, 98, 99, and 139; *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1187 (N.D. Cal. 2018); *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019).

## B.    The MDL

On July 29, 2019, JLI filed a motion to transfer related cases for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. MDL No. 2913, Dkt. 1. On October 2, 2019, the JPML granted JLI's motion and transferred all cases to this Court. MDL No. 2913, Dkt. 144. The first complaint naming Altria as a defendant in addition to JLI had been filed by April 2019, and, following centralization in this Court, plaintiffs filed a consolidated complaint that named JLI and Altria as defendants. Dkt. 387. Defendants responded with a motion to dismiss. *E.g.*, Dkts. 626-629, 632, 645, 647-648, 750, 745, 748, 751, 752/778. On October 23, 2020, the Court again largely denied Defendants' motion to dismiss. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 677 (N.D. Cal. 2020). Plaintiffs filed a second amended consolidated class action complaint on November 12, 2020, Dkt. 1358, and the Court denied Defendants' motion to dismiss that complaint on April 13, 2021, *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 862-63 (N.D. Cal. Apr. 13, 2021).

Discovery began before motions to dismiss were filed, and continued for years. Defendants produced millions of pages of documents, Plaintiffs obtained information pursuant to interrogatories and stipulations, and conducted over 100 depositions of Defendants' employees and third parties. The parties also engaged in expert discovery, which included reports and depositions from experts on topics including the chemistry and marketing of JUUL products, and the damages claimed by JUUL purchasers.

## C.    Class Certification

Following completion of class certification related discovery, Plaintiffs Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. moved to certify four classes of purchasers of JUUL products for purposes of trial on Class Plaintiffs' bellwether claims (under the federal Racketeering Influenced and Corrupt

1   Organizations Act ("RICO") and California law. Dkt. 1772-2. On June 28, 2022, the Court

2   granted the motion, appointed those individuals as class representatives, and denied all pending

3   Daubert motions. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig*., No. 19-md-

4   02913-WHO, 2022 WL 2343268 (N.D. Cal. June 28, 2022) ("*Class Cert. Order*"). Under Federal

5   Rule of Civil Procedure 23(a) and 23(b)(3), the Court certified the following Classes:

6        • **Nationwide Class**: All persons who purchased, in the United States, a JUUL product.

7        • **Nationwide Youth Class**: All persons who purchased, in the United States, a JUUL

8        product and were under the age of eighteen at the time of purchase.

9        • **California Class**: All persons who purchased, in California, a JUUL product.

10       • **California Youth Class**: All persons who purchased, in California, a JUUL product and

11       were under the age of eighteen at the time of purchase.

12  *Class Cert. Order*, 2022 WL 2343268 at *57-58.

13       On July 12, 2022, Defendants filed three Rule 23(f) petitions seeking permission to appeal

14  the Court's order granting class certification. *See* Ninth Circuit Case, Nos. 22-80061, 22-80062,

15  and 22-80063. The Ninth Circuit consolidated the cases and on October 24, 2022, granted

16  Defendants permission to appeal. *E.g.,* Ninth Circuit Case No. 22-80063, Dkt. 14.

17       After the JLI settlement, Altria's appeal of the class certification order remained on

18  docket. Altria filed its opening brief on February 1, 2023, *In re: J. D. v. Altria Group, Inc., et al*,

19  Ninth Circuit Case No. 22-16693, Dkt. 12, and Plaintiffs filed their answer on April 3, 2023, *id.*

20  Dkt. 22. In the middle of the first MDL bellwether trial, discussed below, Class Counsel

21  responded to the Ninth Circuit's notice that Altria's appeal was being considered for oral

22  argument as soon as August 2023. *Id.* Dkt. 40.

23       **D.    SFUSD Bellwether and Settlement Negotiations**

24       On May 18, 2020, this Court appointed Thomas J. Perrelli as Settlement Master. Dkt. 564.

25  The settlement is the result of extensive discussions under Mr. Perrelli's supervision. Sharp Decl.

26  ¶ 17.

27

28

1    Following the JLI Class Action Settlement and JLI settlements of non-class claims, the

2    parties continued litigating against Altria. In addition to the pending appeal of the class

3    certification order, the jury trial of the first MDL bellwether plaintiff, government entity San

4    Francisco Unified School District ("SFUSD"), began on April 24, 2023. *See* Minute Entry, Dkt.

5    3956. In part because of the substantial overlap in relevant evidence and claims asserted against

6    Altria as between SFUSD and the Class—most notably the shared assertion of RICO claims—

7    Class Counsel coordinated closely with counsel for SFUSD, and ultimately served as trial counsel

8    in the SFUSD trial. After eleven days of trial, SFUSD rested its case on May 9, 2023, Minute

9    Entry, Dkt. 4025, and on May 10, 2023, the parties announced this class settlement and the

10   related settlements of non-class claims against Altria. The global resolution was reached under

11   the auspices of Mr. Perrelli's supervision during trial, Sharp Decl. ¶ 17,

12   **III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

13       **A.    Legal Standard**

14           At the preliminary approval stage, the Court will direct notice of a proposed settlement to

15   the class if the Court concludes that it will likely be able to approve the settlement as fair,

16   reasonable, and adequate under Rule 23(e)(2) and to certify the settlement class under Rule

17   23(e)(1). Fed. R. Civ. P. 23(e). To assess the proposal under Rule 23(e)(2), the Court considers

18   whether:

19           (A) the class representatives and class counsel have adequately represented the class;

20           (B) the proposal was negotiated at arm's length;

21           (C) the relief provided for the class is adequate, taking into account:

22                   (i) the costs, risks, and delay of trial and appeal;

                     (ii) the effectiveness of any proposed method of distributing relief to the class,
23                        including the method of processing class-member claims;

24                   (iii) the terms of any proposed award of attorney's fees, including timing of
                          payment; and

25                   (iv) any agreement required to be identified under Rule 23(e)(3); and

26           (D) the proposal treats class members equitably relative to each other.

27   Fed. R. Civ. P. 23(e)(2). The Court also considers the Northern District of California's

28

1    Guidelines.

2        **B.      The Settlement Is Fair, Adequate, and Reasonable**

3             **1.      Procedural Considerations**

4        The Court must first consider whether "the class representatives and class counsel have

5    adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed.

6    R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that

7    might be described as 'procedural' concerns, looking to the conduct of the litigation and the

8    negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory

9    committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive

10   nature of the negotiations, as well as the extent of discovery completed and stage of the

11   proceedings. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir. 1998).

12             **a.  Adequate Representation of the Class**

13       The Court previously found that Class Plaintiffs, and their counsel, were adequate. *Class*

14   *Cert. Order*, 2022 WL 2343268, at *8 ("Based on their thorough and robust advocacy to date, I

15   find that they are adequate."). In the context of evaluating the JLI Class Action Settlement, the

16   Court also made a preliminary determination that Class Counsel have adequately represented the

17   Class. JLI Settlement Preliminary Approval Order, Dkt. 3779. Nothing has occurred since that

18   time to change this finding. The Class Plaintiffs have zealously represented the interests of JUUL

19   purchasers.

20             **b.  Arm's Length Negotiations**

21       The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-

22   collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g*

23   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are

24   reached "following sufficient discovery and genuine arms-length negotiation," both of which

25   occurred here. *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal.

26   2004); 4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002). "The extent of

27   discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the

28

case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*. (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

The Altria Class Settlement Agreement was reached on a fully developed record. Class Counsel reviewed millions of pages of documents produced in discovery; obtained voluminous information pursuant to interrogatories and stipulations; took over 100 depositions of Defendants, their employees, and third parties; and proffered and responded to dozens of expert reports. They also litigated a series of motions to dismiss, a motion for class certification, and motions for summary judgment. All parties spent considerable effort preparing for bellwether trials and presenting SFUSD's case at trial in April and May, which involved many of the same factual and legal issues and expert witnesses as the class claims.

The Parties negotiated the settlement under the auspices of Thomas J. Perrelli, the experienced Court-appointed Special Settlement Master. Sharp Decl., ¶ 17. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

## 2.   Substantive Considerations

Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule

1    23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal

2    treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

3                    **a.  Strength of Plaintiffs' Case and Risks of Continued Litigation**

4           In determining the likelihood of a plaintiff's success on the merits of a class action, "the

5    district court's determination is nothing more than an amalgam of delicate balancing, gross

6    approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

7    (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation,

8    the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering

9    Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832,

10   at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

11          Although Class Plaintiffs and their counsel have confidence in Class Plaintiffs' claims, a

12   favorable outcome at trial was far from assured. Class Plaintiffs would need to prevail on the

13   interlocutory appeal of this Court's class certification order, overcome numerous substantive

14   defenses at trial, maintain class certification through entry of a final judgment, and succeed on

15   any post-judgment appeals. Sharp Decl., ¶ 18. Defendants and their experts were prepared to

16   contest every theory of liability and measure of damages. There are, for example, substantial

17   disputes as to whether Altria was a part of an enterprise that engaged in a pattern of fraud and

18   violated RICO, to what extent and in what time frame Altria could be found liable, and the

19   quantum of damages. Both sides believed they had persuasive facts to support their positions, and

20   there are limited precedents available regarding the parties' competing theories. At trial,

21   competing experts would have offered conflicting opinions as to Altria's liability, the methods of

22   calculating damages, and ultimately what damages, if any, should be awarded. *Id.*

23          Even if the Class prevailed at every stage, appeals and legal procedure would significantly

24   delay, if not imperil, any recovery. "[C]onsummating this Settlement promptly in order to provide

25   effective relief to Plaintiff and the Class" ensures Class Members a recovery that is certain and

26   immediate. *Johnson v. Triple Leaf Tea Inc.,* No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4

27   (N.D. Cal. Nov. 16, 2015).

28

1

2

**b.   The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Class**

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members will be eligible for payments based on the estimated total amount they paid for JUUL Products. The Settlement Class here is identical to the Settlement Class in the JLI Class Action Settlement, and the proposed Plan of Allocation here is substantively the same plan that the Court preliminarily approved in the JLI Class Action Settlement. *See* JLI Settlement Preliminary Approval Order, Dkt. 3779 at 3 (finding that "[t]he Class Settlement Agreement and Plan of Allocation treat all Class Members equitably relative to each other"). Class Members who already submitted claim forms in connection with the JLI Class Action Settlement will not be required to submit a second claim form to receive payment from the Altria Class Action Settlement. Instead, the amount each eligible Class Member receives will be increased by the additional funds made available due to the Altria Class Action Settlement. Settlement Class Members who did not previously submit a claim will be given an opportunity to do so in connection with being provided notice of the Altria Class Action Settlement.

In connection with the JLI Class Action Settlement, the Class Settlement Administrator previously provided via email or mail a prepopulated claim form to the approximately 2.7 million Class Members whose identity and purchase data were already known because they purchased JUUL Products directly from JLI's website. Any of these Class Members with direct purchases who have not already submitted claims will receive an additional email and/or mail notice regarding the Altria Settlement, again including a prepopulated claim form. As before, they need only submit the prepopulated form to receive compensation for their direct purchases. Azari Decl. ¶ 23.

Class Members who purchased via other retailers, or who wish to document underage purchases to receive an enhanced payment, may submit a relatively simple claim form, choose their preferred payment method, and certify their claim. *See* Sharp Decl., Ex. 8. The claim form can be completed online, or Settlement Class Members have the option to print and mail it to the

1    Class Settlement Administrator. *Id*. All claimants may submit proof of purchase, but such

2    documentation will not be required for claimants who attest to total purchases below a set dollar

3    amount, as described in the Plan of Allocation. As part of its audit of claims received, the Claims

4    Administrator may ask certain claimants to supplement their submission with proof of purchase.

5    Payments will be made electronically or by mailed check. Azari Decl. ¶ 54.

6        The entire claim process is designed to be claimant-friendly, efficient, cost-effective,

7    proportional, and reasonable. Pursuant to District Guidelines ¶1(g), Class Counsel estimate, based

8    on their experiences with recent settlements in other comparable consumer and economic loss

9    class actions and the input of the Class Settlement Administrator, that between 200,000 and

10   2,000,000 Class Members (up to 15% of the Class) will receive payments. Sharp Decl., ¶ 20. The

11   current number of claims received in connection with the JLI settlement suggests that *at least*

12   several hundred thousand Class Members will receive payments, although the claims review

13   process is still ongoing. *See* Azari Declaration Regarding Settlement Notice Plan Completion,

14   Dkt. 4032 at ¶ 12. The volume of claims submitted to date reflects a robust claims rate, which

15   appears likely to be at the high end of claims rates for consumer class actions.

16       The Settlement Fund created by the Altria Class Action Settlement (like the JLI Settlement

17   Fund) is non-reversionary. If the Settlement Fund is not entirely consumed by payment of notice

18   and administration expenses, taxes and associated expenses, attorneys' fees and expenses, and

19   distribution of Class Payments (including a supplemental distribution, if necessary), the parties

20   will confer as to the disposition of any residual funds. Any proposal for distribution of these funds

21   will be submitted to the Court for approval.

22                    **c.  Attorneys' Fees and Expenses**

23       Any fees and expenses awarded by the Court will be deducted from the Altria Class

24   Settlement Fund, and any reduction in fees will benefit the class, not the Defendants. As a result

25   and consistent with this District's Guidelines (¶¶ 6, 9), while the Court need not decide fees at

26   this stage, the structure of the settlement ensures that the future fee request poses no obstacle to

27   preliminary approval.

28

The settlement is not contingent on the award of any particular amount of fees. In their motion for attorney's fees awarded on the Altria Class Action Settlement, which will be heard only after Class Members have an opportunity to object to this portion of the Settlement, Class Counsel will seek an award of attorneys' fees of up to 30% of the total Altria Class Settlement Fund, or $13,659,375 (plus 30% of interest accrued), along with out-of-pocket expenses up to $1 million. District Guidelines ¶ 6. Class Plaintiffs will also move as part of final approval for the payment of notice and settlement administration costs of up to $4.5 million.[6] The notice and settlement administration cost figure includes the costs of sending postcard notice to direct purchasers, a cost that was originally included as a reminder notice in the cost estimate provided to the Court in connection with the JLI settlement. As such, the notice costs incurred in connection with the Atria settlement will reduce the notice costs previously anticipated to be incurred in connection with the JLI settlement. Attorneys may also recover "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). Prior to the objection deadline, Plaintiffs will detail their expenses by category and how those expenses benefited the class. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6. !

### d.  Service Awards to Class Representatives

As Class Plaintiffs anticipate seeking service awards on behalf of class representatives in connection with the JLI Settlement, they do not anticipate seeking additional service awards in connection with the Altria Class Action Settlement.

### e.  Supplemental Agreements

Rule 23(e)(3) requires disclosure of any "supplemental agreements" that could affect the adequacy of the class representatives or their counsel or the fairness of the settlement. This provision is aimed at "related undertakings that, although seemingly separate, may have

---

[6] Class Counsel will authorize payments to Epiq only for costs reasonably incurred given the volume of claims submitted, while balancing with the need to ensure a robust and effective notice and claims processes.

1    influenced the terms of the settlement by trading away possible advantages for the class in return

2    for advantages for others."  Fed. R. Civ. P. 23(e), advisory committee notes 2003 amendments.

3            Appendix A to the Class Settlement Agreement contains the opt-out threshold at which

4    Altria will have the option of terminating the settlement. Opt-out threshold agreements are not

5    controversial and are typically kept confidential and not filed in the public record for practical

6    reasons. *See, e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL

7    4750628, at *5 (N.D. Cal. Oct. 20, 2017); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

8    948 (9th Cir. 2015) (approving confidential treatment of opt-out threshold "for practical

9    reasons"); *In re Health S. Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) (The

10   "threshold number of opt outs required to trigger the [termination] provision is typically not

11   disclosed and is kept confidential to encourage settlement and discourage third parties from

12   soliciting class members to opt out.").

13           Altria has concurrently but separately agreed to resolve claims brought by individuals who

14   asserted claims for personal injury and by government entities that asserted claims for public

15   nuisance. Under the supervision of Special Master Perrelli, the amount of the Altria Class

16   Settlement Fund was negotiated with co-lead counsel Dena Sharp serving as counsel for the

17   proposed Settlement Class, and the other co-lead counsel representing the interests of personal

18   injury and government entity plaintiffs. Sharp Decl. ¶ 17. Certain of the Class Plaintiffs did assert

19   parallel personal injury claims, and will be eligible to share in the amounts allocated to such

20   claims under the parallel personal injury settlement program. *See generally* Case Management

21   Order No. 16 (Implementing JLI Settlement), Dkt. 3714. They will receive no favorable treatment

22   relative to other Settlement Class Members, however.

23                      **f.   Equitable Treatment of Class Members**

24           The Court made a preliminarily determination that the JLI Class Settlement Agreement

25   and Plan of Allocation "treat all Class Members equitably relative to each other." JLI Settlement

26   Preliminary Approval Order, Dkt. 3779 at 3. The Court should reach the same conclusion here

27   because the Altria Class Action Settlement has the same terms with regard to the treatment of

28

1    Class Members and Class Counsel proposes using the same Plan of Allocation.

2              All Settlement Class Members are eligible for cash payments. For purchases directly from

3    JLI, Settlement Class Members need only sign and submit a prepopulated claim form with their

4    purchase information. Class Members who purchased JUUL Products from other retailers (solely

5    or in addition to their purchases on the JLI website) or who wish to claim the enhancement for

6    purchases made when they were underage must submit a claim form with additional information.

7    This is fair and reasonable because JLI only possesses specific information for purchases made on

8    JLI's website, and those records purport to show that all such purchasers were adults. *See* 4

9    William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming

10   process is inevitable" in certain settlements such as those involving "defective consumer products

11   sold over the counter.").

12             Class Members who purchased in the earlier years of the class period or when they were

13   underage will receive enhanced payments (in some cases two to four times the payments to adult

14   Class Members who purchased later in the class period). The larger payment for those who began

15   purchasing when underage is consistent with Plaintiffs' "full refund" damage theory for underage

16   purchases, rather than the price premium for other purchasers. These distinctions are also

17   recognized in this Court's certification order. *See Class Cert. Order*, 2022 WL 2343268 at *238

18   (N.D. Cal. June 28, 2022) (holding "Plaintiffs' full refund model, with respect to the Youth

19   Classes, supports certification" because those sales were allegedly illegal). Further, it is rational

20   to provide the enhancements for all purchases by underage buyers, even after the warnings were

21   enhanced or the purchasers became adults, because of the addictive nature of the JUUL Products,

22   which would have impeded buyers from changing their habits.

23             Settlement Class Members who provide proof of purchase (including records from JLI for

24   online purchases) may submit claims for up to $1,600 per year of JUUL Product purchases, while

25   their overall settlement payment cannot exceed 150% of their total purchases (or 300% of total

26   purchases if their first purchase occurred when they were under age 18). Claims submitted by

27   Settlement Class Members without proof of purchase will be subject to the same limitations on

28

the amount of the settlement payment they can receive relative to the size of their claim, but will

be capped at a lower amount than claims supported by proof of purchase.

Capping undocumented claims is a reasonable way of balancing ease of participation with

the need to ensure that documented claims are adequately compensated. *See, e.g., In re Groupon,

Inc. Mktg. and Sales Practices Litig.*, No. 11md2238 DMS (RBB), 2012 WL 13175871, at *5

(S.D. Cal. Sep. 28, 2012) (requirement of a voucher number or other proof of purchase serves "to

ensure that money is fairly distributed for valid claims"). Such a cap is a common feature of

consumer class action settlements. *See, e.g., Broomfield v. Craft Brew All., Inc*., No. 17-cv-

01027-BLF, 2020 WL 1972505, at *21 (N.D. Cal. Feb. 5, 2020) (approving settlement with cap

on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co*., No. 5:17-cv-00603-EJD, 2019 WL

11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof

of purchase, stating that such a claim process "would be no different than that required after

trial."); *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 WL 990495,

at *2 (C.D. Cal. Mar. 13, 2013) (approving settlement with claims limited to $10.65 (e.g., 3

bottles) without proof of purchase, while there is no cap on claims with proof of purchase, for

example a receipt or product packaging.). Limiting Settlement Class Members' payments to

150% of the total amount they spent on JUUL Products is based on Dr. Singer's estimate of a

roughly 50% price premium and the fact that Settlement Class Members would be entitled to

treble damages under Class Plaintiffs' RICO claim. In other words, Settlement Class Members'

individual recoveries are capped relative to the maximum amount they could have recovered at

trial in a best-case scenario.

     **g.   The Released Claims Are Identical to Those Pled in the Litigation**

The Released Claims include all claims (under any theory or statute) "arising out of or

related to any claims for economic loss that have been asserted or could have been asserted in the

class actions filed in MDL No. 2913 or JCCP No. 5052 relating to the purchase or use of any

JUUL Product by a member of the Settlement Class." Sharp Decl. Ex. 1 at Section 1.28. The

Released Claims expressly exclude personal injury claims and claims based on alleged antitrust

violations. The releases extend to matters raised in the litigation but do not prevent Settlement Class Members from pursuing unrelated claims or claims against non-released parties. In sum, the released claims are no broader than those pled in the operative complaint or previously certified by the Court. Just as the Court preliminarily found that "[t]he scope of the Released Claims is consistent with the economic loss claims pled in the class action complaint" in the JLI Class Action Settlement, JLI Settlement Preliminary Approval Order, Dkt. 3779 at 3, it should reach the same conclusion here where the Altria Class Action Settlement releases the same set of claims.

### h.  Past Distributions

The information sought by District Guidelines ¶ 11 regarding past distributions in class settlements is provided in the Sharp Declaration. Sharp Decl. Ex. 14.

### C.    CERTIFICATION OF THE SETTLEMENT CLASS IS LIKELY

The Settlement Class is cohesive, objectively defined, and likely to be certified upon entry of judgment. *See* Fed. R. Civ. 23(e)(1). Because the Court already certified classes in this matter under Rule 23(b)(3), "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 2018 committee notes subdivision(e)(1). The Court must then determine whether the proposed modification alters the reasoning underlying its earlier decision to grant class certification pursuant to Rule 23(b)(3). *See, e.g., Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLBx, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the court's previous class certification analysis). If it does not, the Court need not revisit the Rule 23(b) analysis and instead must only "consider[] whether the Settlement is fair, adequate, and reasonable." *De La Torre v. CashCall, Inc.*, No. 08-cv-03174-MEJ, 2017 WL 2670699, at *6 (N.D. Cal. June 21, 2017). Plaintiffs must identify and explain any differences between the certified class and the Settlement Class and between the claims in the operative complaint and the Released Claims. *See* District Guidelines ¶ 1(a), (b), & (d).

This Court has already found that the Settlement Class at issue here "is likely to be certified for settlement purposes only." JLI Settlement Preliminary Approval Order, Dkt. 3779 at 3. In both the JLI Class Action Settlement and the Altria Class Action Settlement, the Settlement Class is defined identically, as: "All individuals who purchased, in the United States, a JUUL product from brick and mortar or online retailers before December 6, 2022." *Compare id. with* Sharp Decl. Ex. 1 (Altria Class Settlement Agreement) at Section 1.6. The Court's analysis supporting preliminary approval of the JLI Settlement thus applies with equal force for the Altria settlement. *See* JLI Settlement Preliminary Approval Order, Dkt. 3779 at 3-7 (preliminarily finding that certification was likely, and that the requirements of numerosity, commonality, predominance, typicality, adequacy, and superiority were met).

Comparing the Settlement Class to the Classes as defined in the Court's Class Certification order, the same points articulated in the Class's motion for preliminary approval of the JLI Class Action Settlement remain true here: there are, at most, minor differences between the proposed Settlement Class and the Classes already certified by this Court. The Court previously certified a nationwide class consisting of all JUUL product purchasers, and a nationwide subclass of all such individuals who made their purchase while under the age of 18, for trial of RICO claims against the Individual Defendants and Altria. The Court did not set a class period but instructed plaintiffs to propose one after meeting and conferring with Defendants. *Class Cert. Order*, 2022 WL 2343268 at *57.[7]

The proposed Settlement Class ***membership*** is nearly identical to the certified nationwide class. The only difference is that the Settlement Class includes purchasers of JUUL accessories

---

[7] The Court limited each certified Class to individuals who purchased their JUUL Products from brick and mortar or online retailers and excluded from the Classes any individuals who purchased JUUL Products only secondarily from non-retailers. The Court further excluded from Classes: Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. The Court appointed Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. as representatives of the Nationwide Class; C.D., Krauel, and L.B. as representatives of the Nationwide Youth Class; Colgate, C.D., and L.B. as representatives of the California Class; and C.D. and L.B. as representatives of the California Youth Class. *See Class Cert. Order*, 2022 WL 2343268 at *57.

1    and other products aside from JUULpods and devices that make up a *de minimis* portion of total

2    consumer purchases. The Settlement Class also includes an end date, a practical necessity for

3    administrative purposes. (The certified litigation classes would also have included an end date).

4     Certification of the Settlement Class is warranted as the minor differences between the

5    litigation class and the proposed Settlement Class do not change the Court's previous analysis.

6    The addition of an end date is appropriate. *See Foster v. Adams & Assocs.*, No. 18-cv-02723-JSC,

7    2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (granting modification to the previously

8    certified class to specify end date). Adding a limited number of ancillary products to the

9    definition of JUUL Products likewise does not change the overall common nature of the claims at

10   issue. Particularly in light of the Court's prior order, certification for settlement purposes under

11   Rule 23(b)(3) is appropriate.

12    **Numerosity**. Just as before, there were millions of sales during the proposed class period

13   and the Court has already found the Classes sufficiently numerous. While a finding of numerosity

14   does not require a specific number of class members, courts in the Ninth Circuit generally agree

15   that numerosity is satisfied if the class includes forty or more members. *See Class Cert. Order*,

16   2022 WL 2343268 at *3. The Settlement Classes easily meet that threshold. *Id.*; *see also* JLI

17   Settlement Preliminary Approval Order, Dkt. 3779 at 4 (preliminarily finding numerosity).

18    **Commonality**. As before, "the class members have suffered the same injury and [] the

19   class's claims depend on 'a common contention . . . of such a nature that it is capable of classwide

20   resolution.'" *Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692, at *2

21   (N.D. Cal. Aug. 3, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131

22   (2011)). The Court already determined that for the nationwide class, "common questions of fact

23   include the existence of a RICO Enterprise and whether each defendant engaged in a scheme to

24   defraud." *Class Cert. Order*, 2022 WL 2343268, at *3; *see also* JLI Settlement Preliminary

25   Approval Order, Dkt. 3779 at 5 (preliminarily finding commonality). For all the same reasons,

26   common questions exist as to the claims of the Settlement Class.

27

28

1    **Typicality.** Class Representatives' claims still stem from the same practice or course of

2    conduct that forms the basis of the class's claims and "seek to recover pursuant to the same legal

3    theories." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see*

4    *also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is

5    typical of the class because it shares 'some common question of law and fact with class members'

6    claims.'") (quoting Newberg on Class Actions § 3:31 (5th ed.)). The Court already held that,

7    although "there are differences among the proposed class representatives and class members, and

8    differences in the 'nicotine journey; of each, such as when they learned about nicotine in JUUL or

9    other e-cigarette products, why they first used or continued to use JUUL or other products

10   containing nicotine, and whether they are addicted to nicotine as a result of their use of JUUL or

11   other nicotine products," no Settlement Class Representative has a "unique injury or is subject to

12   a unique defense that the other class members do not have or are not subject to that would make a

13   particular proposed named plaintiff atypical and an inappropriate class representative." *Class*

14   *Cert. Order*, 2022 WL 2343268 at *4; *see also* JLI Settlement Preliminary Approval Order, Dkt.

15   3779 at 6 (preliminarily finding typicality).

16   **Adequacy**. As noted above, the Court already noted the vigorous efforts made by Class

17   Plaintiffs and their counsel to prosecute this case and achieve a settlement. *See Class Cert. Order*,

18   2022 WL 2343268 at *8 ("Based on their thorough and robust advocacy to date, I find that they

19   are adequate."); *see also* JLI Settlement Preliminary Approval Order, Dkt. 3779 at 6

20   (preliminarily finding adequacy). No conflicts of interest exist between Class Plaintiffs and Class

21   Members. *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). And adequacy is presumed

22   where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra,* §

23   11.28, 11-59.

24   **Predominance**. Just as before, the questions common to the Settlement Class Members

25   predominate over questions affecting only individual Settlement Class Members. Predominance

26   exists when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is

27   capable of classwide resolution--which means that determination of its truth or falsity will resolve

28

an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)).

The predominance inquiry is simpler in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, adequate, and reasonable. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, the same predominant issues exist for the nationwide claims against Altria that the Court identified in its class certification order: the existence of the RICO enterprise and Altria's involvement in that enterprise. *See Class Cert. Order*, 2022 WL 2343268 at *21-26; *see also* JLI Settlement Preliminary Approval Order, Dkt. 3779 at 5 (preliminarily finding predominance).

**Superiority**. Certification of the class for settlement purposes will make substantial refunds available to all purchasers, a far more certain recovery that could be achieved by individual litigation. And in a certification for settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In light of the above and the Court's prior certification of nearly identical litigation classes, the Court should conclude that the Settlement Class is likely to be certified. *See* Fed. R. Civ. 23(e)(1); *see also* JLI Settlement Preliminary Approval Order, Dkt. 3779 at 6 (preliminarily finding superiority).

## IV.    THE NOTICE PLAN SHOULD BE APPROVED.

A court must "direct notice of a proposed class settlement in a reasonable manner to all class members who would be bound by the proposal." *Massey v. Star Nursing, Inc.*, No. 5:21-cv-

01482-EJD, 2022 WL 14151758, at *5 (N.D. Cal. Oct. 24, 2022), citing Fed. R. Civ. P. 23(e)(1).

"The class must be notified of a proposed settlement in a manner that does not systematically

leave any group without notice." *Officers for Justice*, 688 F.2d at 624. Adequate notice requires:

(i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the

Class members of the proposed settlement and of their right to object or to exclude themselves as

provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient

notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due

process and any other applicable requirements under federal law. *Phillips Petroleum Co. v.

Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).

The proposed Notice Plan meets all these requirements. The notice documents use plain,

easy to understand language.[8] They advise recipients that they may be affected by the settlement

of a class action lawsuit. The Long Form Notice (which will be presented on the website in an

easy-to-navigate FAQ) explains that this settlement is with all the defendants that remained after

the JLI Class Action Settlement, and the litigation will conclude if the settlements are approved.

The Long Form Notice also provides the key terms of the settlement, describes Class Members'

rights and options with respect to the settlement, and advises how to opt out of the settlement

class.

Consistent with the notice plan previously approved by the Court, the notice of the Altria

settlement will be provided directly to known Class Members, known purchasers, and by

widespread publication. This Notice Plan builds on the substantial reach already accomplished by

the notice plan for the JLI Class Action Settlement. For example, known Class Members—Class

Members who already submitted claim forms or opt-out forms in connection with the JLI Class

Action Settlement—will be given direct notice of the Altria Class Action Settlement. Class

---

[8] Attached to the Sharp Declaration as Exhibits 3, 4, 5, 6, 7, 8, 9, 10, and 11 are the proposed Long Form Notice, the summary Postcard Notice, the summary email notice for direct purchasers, the summary email notice to identified Class Members, the telephone script for the automated number where Class Members can receive additional information, the template online claim forms for Class Members with and without direct purchases from JLI, exemplar internet banner ads, a script for the video to be used for certain online publications, and a press release regarding the settlement.

Members who previously opted out of the JLI Settlement will be informed that they must file a separate opt out form if they wish to also be excluded from the Altria Settlement, and that, now that the rest of the litigation has settled, they have the option to opt back in to the JLI Settlement and submit a claim for payment from both. Unless they already submitted a claim in connection with the JLI Settlement, Class Members whose contact information is included in the JLI purchase data will receive an additional direct notice with a pre-populated claim form. All the notices will link or point to the settlement website, which will include the detailed Long-Form Notice. The settlement website will also include the Altria Class Settlement Agreement, preliminary approval papers, and other relevant Court documents, as well as simple online forms allowing Class Members to make claims or opt out. The Settlement Administrator will also operate a toll-free number for Class Member inquiries.

The Notice Plan constitutes the best notice practicable under the circumstances. Azari Decl. ¶¶ 11, 67. Accordingly, Plaintiffs respectfully request that this Court approve it.

## V.    THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED

The Altria Class Settlement Agreement will be administered by a well-known, independent claims administrator, Epiq Systems, Inc. After a competitive bidding process, Class Counsel previously selected Epiq to administer the class notice of pendency and the JLI Class Action Settlement. Before engaging Epiq to serve as the Settlement Administrator for the Altria settlement, Class Counsel obtained an additional cost estimate from Epiq which, in Class Counsel's experience, is reasonable, particularly in light of Epiq's resources and relevant experience in this case and others. Sharp Decl. ¶ 19. Epiq has developed a detailed plan for published and direct notice to Class Members. *Id.* Epiq has also already processed and cleaned the data of JLI's online sales, and implemented the JLI Settlement notice plan, and received claims, requests for exclusion, and other communications from Class Members in connection with the JLI Settlement. Azari Decl. ¶ 12. Given its ongoing efforts with the JLI Settlement and the fact that distributions will happen jointly across the two settlements, Epiq is the most sensible choice for administration of the settlement. Sharp Decl. ¶ 19. Choosing another administrator at this time

would only lead to duplication of work and additional expense. *Id.* The declaration of Cameron

Aziz, filed herewith, includes Epiq's cost estimates for notice and administration, which will

upon approval of the Court be paid from the settlement fund, and addresses all the other issues in

the Northern District Guidelines, including how Epiq will securely handle class member data and

its insurance coverage in case of errors. Azari Decl. ¶ 63.

## VI.   THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL

As noted above, Class Plaintiffs and Class Counsel will file motions for the payment of

attorneys' fees and expenses before the opt out and objection deadline. Prior to that point,

however, substantial funds will be spent providing notice to the Settlement Class. Class Plaintiffs

estimate that these costs will be as much as $2,500,000 (if approved, the "Initial Class Settlement

Administration Payment"), and therefore request that the Court authorize up to $2,500,000 from

the Initial Class Settlement Administration Payment to pay for out-of-pocket expenses incurred in

distributing notice. The class notice costs consist of processing of direct purchase data, digital and

print notice, direct email and postcard notice (and related follow-up efforts), initial claims intake,

responding to class members inquires, and website management. These costs are reasonable and

necessary to facilitate the settlement. Notice and administration costs will be paid with Class

funds based only on costs actually and already incurred.

## VII.   THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the Final Approval Hearing, at which

the Parties will seek final approval of the proposed Settlement. At the Final Approval Hearing,

proponents of the Altria Class Settlement Agreement may explain and describe its terms and

conditions and offer argument in support of final approval of the Altria Class Settlement

Agreement. At the same time, Class Members, or their counsel, may be heard in support of or in

opposition to final approval of the Altria Class Settlement Agreement.

1    Class Plaintiffs request the Court issue a schedule establishing dates for mailing notices,

2   submitting timely exclusions, and for the Final Approval Hearing, as set forth in the proposed

3   Order of Preliminary Approval filed herewith.

4   **VIII.   CONCLUSION**

5    For the foregoing reasons, Class Plaintiffs and Class Counsel respectfully request that the

6   Court enter the proposed order granting preliminary approval, directing that notice to be sent and

7   authorizing the claim process, and setting a date for the fairness hearing.

8

9   Dated:  July 27, 2023

    Respectfully submitted,

10

11   By: /s/ *Dena C. Sharp*

12   Dena C. Sharp
    **GIRARD SHARP LLP**

13   601 California St., Suite 1400
    San Francisco, CA 94108

14   Telephone: (415) 981-4800
    dsharp@girardsharp.com

15

16   *Co-Lead Counsel and Proposed Class
    Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on July 27, 2023, I caused the foregoing document to be

3   electronically filed with the Clerk of the Court using the CM/ECF system, which will

4   automatically send notification of the filing to all counsel of record.

5

6                                              By: /s/ *Dena C. Sharp*

7                                                  Dena C. Sharp

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28