UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE JUUL LABS, INC., MARKETING,
SALES PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

This Document Relates to:
All Class Actions

Case No.  19-md-02913-WHO

**FINAL APPROVAL OF THE JLI
SETTLEMENT**

Re: Dkt. No. 4054

Class Plaintiffs[1] have moved the Court for final approval of a proposed class action

settlement with Defendant JUUL Labs, Inc. ("JLI"), on behalf of itself and the Released Parties,

the terms and conditions of which are set forth in the Class Settlement Agreement (the "JLI Class

Settlement"). ECF No. 3745-4 (revised agreement). The Court previously granted preliminary

approval to the proposed settlement and directed notice to the Settlement Class. ECF No. 3779.

For the reasons described more fully below, the Court GRANTS final approval of the

Settlement.

I.      **BACKGROUND**

Class Plaintiffs and JLI seek to resolve economic loss claims (other than claims asserted

in *In re Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from

alleged anticompetitive conduct) asserted against JLI and the Released Parties involving the

manufacture, labeling, marketing, and sale of JUUL—an electronic nicotine delivery system

consisting of an electronic cigarette and a nicotine pack called a JUULpod. Class Plaintiffs allege

that Defendants created, marketed, and sold JUUL by misleading the public about the

addictiveness and risks of JUUL, and by trying to expand the market by capturing and addicting

individuals—specifically minor users—who had not previously used tobacco or e-cigarette

products. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the JLI Class
Settlement Agreement and Plan of Allocation except as otherwise noted.

United States District Court
Northern District of California

552, 574 (N.D. Cal. 2020).  The economic loss claims were repeatedly tested through multiple motions to dismiss and a contested class certification motion.  Extensive discovery was conducted in connection with the MDL.  Defendants produced millions of pages of documents.  Class Plaintiffs obtained information pursuant to interrogatories and stipulations.  Plaintiffs conducted over 100 depositions of Defendants, their employees, and third parties. The parties also engaged in expert discovery, which included reports and depositions from dozens of experts on topics including the chemistry of JUUL Products, the marketing of JUUL Products, and classwide injury and damages.

The Court granted the contested motion to certify bellwether classes asserting federal and California law claims, certifying four classes[2] of purchasers of JUUL products.  The Court also appointed Class Representatives and Class Counsel and denied related *Daubert* motions. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 1023 (N.D. Cal. 2022) ("*Class Cert. Order*").

The Court had previously appointed Thomas J. Perrelli as Settlement Master.  He oversaw a years-long mediation process that led to the JLI Class Settlement. Under the JLI Class Settlement, the Class will receive $255 million in exchange for a release of the Settlement Class Released Claims. The JLI Class Settlement does not include Altria Group, Inc., and related companies, so no class or individual claims against those entities will be released.[3]

On January 30, 2023, the Court granted Class Plaintiffs' motion for preliminary approval of the JLI Class Settlement, conditionally certifying the Settlement Class, appointing Epiq Systems, Inc., as the Settlement Administrator, and approving the Notice Plan and directing notice to be provided to Class Members. ECF No. 3779 ("Preliminary Approval Order").

---

[2] These were the **Nationwide Class** (All individuals who purchased, in the United States, a JUUL product); the **Nationwide Youth Class** (All individuals who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase); the **California Class** (All individuals who purchased, in California, a JUUL product); and the **California Youth Class** (All individuals who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase).

[3] In separate agreements, JLI has resolved the claims brought by other claimants in the MDL, including individuals who asserted claims for personal injury, school district and local government entities, and Native American tribal entities.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.     Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B.     Notice and Administration

Following the Court's Preliminary Approval Order, the Class Settlement Administrator established a settlement website at www.JUULclassaction.com, which includes: the long form notice, a contact information page that includes addresses and telephone numbers for the Class Settlement Administrator and Class Counsel, the JLI Class Settlement Agreement, the Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. In addition, the motion papers filed in connection with the Settlement, and Class Plaintiffs' application for Attorneys' Fees and Expenses and Service Awards[4] were placed on the settlement website after they were filed (before the opt out and objection deadline). The Class Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries.

Notice of the JLI Class Settlement was provided by: (1) direct notice via email to those Settlement Class Members for whom an email address was available; (2) direct notice via postcard mailed to those Settlement Class Members for whom a physical mailing address was available, but for whom an email address was not available; (3) publication notice of the Settlement, which comprised 427 million impressions, targeted at likely Settlement Class Members served across relevant internet websites and social media platforms; and (4) publication on the settlement website.

In total, the Notice Plan is estimated to have reached at least 80% of Settlement Class Members.  The Court finds that the Notice Plan provided the best practicable notice to the Settlement Class Members and satisfied the requirements of due process.

Settlement Class Members were given until July 14, 2023, to object to or exclude

---

[4] The Court will address Class Plaintiffs' application for Attorneys' Fees and Expenses and Service Awards in a separate order, following further briefing and consideration of the determinations made by the Court-appointed Fee Committee.

3

themselves from the proposed Settlement. Eight Settlement Class Members submitted objections[5] and 2,620 individuals timely submitted requests to be excluded from the Settlement Class.  As of July 21, 2023, 6,349,982 timely Claim Forms were received by the Class Settlement Administrator.

### C.    Certification of the Settlement Class

For purposes of the JLI Class Settlement only and this Final Approval Order and Judgment, Class Plaintiffs have moved to certify the following Settlement Class: "All individuals who purchased, in the United States, a JUUL Product from brick and mortar or online retailers before December 6, 2022." Excluded from the Settlement Class are: (a) the judges in this MDL and any other judges that have presided over the litigation, including the coordinated proceeding captioned *JUUL Labs Product Cases*, Judicial Counsel Coordination Proceeding No. 5052, pending in the Superior Court of California, County of Los Angeles, Department 11, Settlement Master Thomas J. Perrelli, and their staff, and immediate family members; (b) Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; (c) Class Counsel and their employees; (d) any individuals who purchased JUUL Products only secondarily from non-retailers; and (e)€ all individuals who timely and properly excluded themselves from the Settlement Class.[6]

The Court previously certified a nearly identical nationwide class under RICO and a class of California JUUL purchasers under California law. The Settlement Class is co-extensive with the certified class, except that the claims of the Settlement Class apply to JLI on a nationwide basis, include an end date for the Settlement Class (as is necessary to settlement administration), and include purchases of JUUL accessories and products in addition to JUULpods and devices. The slight differences between the litigation class and the proposed Settlement Class do not alter

---

[5] Over 400 purported class members submitted objections to the Claims Administrator's rejection of en masse claim submissions by third-party claims aggregator ClaimClam.  Those objections are addressed below.  An additional objection raised issues only with respect to the requested attorneys' fees, and will be addressed in a separate order.

[6] The list of individuals who timely and properly submitted exclusion requests and are therefore not members of the Settlement Class was filed with the Court on July 21, 2023. Dkt. 4075-2.

United States District Court
Northern District of California

1  the Court's previous analysis, except insofar as the predominance and superiority analysis

2  prerequisites operate differently and are easier to meet in the settlement context. The Court finds

3  that the Settlement Class largely overlaps with those previously certified by the Court and that,

4  for settlement purposes only, there is a sound basis for expanding the scope of the previously

5  certified classes to encompass all the Settlement Class Released Claims against JLI and the

6  Released Parties.

7         The Court independently finds that the Settlement Class meets the requirements of Rule

8  23 as set forth below:

9         a.      Members of the Settlement Class are so numerous as to make joinder

10  impracticable. JLI's direct sales data, which covers only a portion of the Settlement Class,

11  contains over two million unique names, meaning that the proposed Settlement Class contains

12  millions of members.

13        b.      There are questions of law and fact common to the Settlement Class. Those

14  questions include whether the Defendants' conduct was likely to mislead a reasonable consumer,

15  whether the conduct would have been material to a reasonable consumer, the existence of a RICO

16  enterprise, the existence of a pattern of racketeering, the existence of a scheme to defraud,

17  whether Defendants' conduct was unfair and/or unconscionable, whether JUUL Products were fit

18  for their ordinary use, and the appropriate measure of aggregate damages.

19        c.      Common questions predominate over any questions affecting only

20  individual Settlement Class Members for purposes of the JLI Class Settlement because the

21  Defendants' conduct will drive the litigation. That is particularly true in the settlement context.

22  As the Ninth Circuit has held, "predominance is easier to satisfy in the settlement

23  context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020); *see also Sullivan v. DB Inv.,*

24  *Inc.*, 667 F.3d 273, 304 n. 29 (3d Cir. 2011) (en banc) (courts are "more inclined to find the

25  predominance test met in the settlement context") (internal quotation marks and alteration

26  omitted). That is because "[s]ettlement may 'obviate the need to litigate individual issues that

27  would make a trial unmanageable,' making common questions more important in the relative

28  analysis." *Jabbari*, 965 F.3d at 1005-06 (quoting *Hyundai*, 926 F.3d at 558). One issue that takes

United States District Court
Northern District of California

on significantly less importance in a settlement class is the particulars of the state law being applied. *See id*. at 1007 ("For purposes of a settlement class, differences in state law do not necessarily, or even often, make a class unmanageable."). Even in the litigation context, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)). Under California law, for example, Class Members would not need to show their individual reliance, and Class Plaintiffs' California law claims focus on whether Defendants' conduct would have misled and have been material to a reasonable consumer. *See Krommenhock v. Post Foods*, 334 F.R.D. 552, 564, 565, 575 (N.D. Cal. 2020) (discussing the objective nature of the key inquires under the UCL, CLRA, and FAL). Class Plaintiffs may, for example, be able to demonstrate classwide injury and damages through a price premium theory. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018) ("It is well-established that the 'price premium attributable to' an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case under the FAL, CLRA, and UCL.").

d.     Class Plaintiffs' claims and the defenses thereto are typical of the claims of the Settlement Class Members and the attendant defenses for purposes of the JLI Class Settlement. Class Plaintiffs allege that Defendants misled JUUL purchasers, engaged in a fraudulent scheme to enhance JUUL sales, and engaged in unfair conduct to market JUUL Products to minors. Those theories of liability and injury are the same for Class Plaintiffs and members of the Settlement Class. Class Plaintiffs' allegation that JUUL Products are not fit for their ordinary use is based on the design of JUUL Products and is thus the same for Class Plaintiffs and members of the Settlement Class.

e.     Class Plaintiffs and their counsel have fairly and adequately protected the interests of the Settlement Class Members in this action with respect to the JLI Class Settlement

and will continue to do so. Each Class Plaintiff has the same goal as members of the proposed Settlement Class (*i.e.*, vigorously pursuing their claims against Defendants). Class Plaintiffs' interests are aligned with, and not in conflict with, those of Settlement Class Members. The record reflects that each Class Plaintiff has dedicated substantial time and effort to this litigation by working with their counsel; reviewing pleadings; responding to discovery; searching for, collecting, and producing documents; and preparing to sit for depositions, among other things.

    f.  A class action is superior to all other available methods for fairly and efficiently resolving this action. While individuals with personal injury claims may be motivated to file individual personal injury suits, the same is not true with respect to claims for economic losses. No plaintiffs have expressed a desire to individually litigate their economic loss claims; in fact, plaintiffs sought to litigate their economic loss claims as class actions instead of through their separate personal injury complaints. Given the substantial overlap among all Class Members' claims, it is highly desirable to concentrate economic loss claims in a single proceeding.

  The Court appoints Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. as the Settlement Class Representatives, and Dena Sharp of Girard Sharp LLP as Settlement Class Counsel.

### D.  Final Approval of Settlement

  A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of

United States District Court
Northern District of California

1   collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler*

2   *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

3      For the reasons further detailed below, the Court finds that the proposed settlement is fair,

4   reasonable, and adequate under the Rule 23(e)(2) factors. Defendants dispute whether the

5   manufacture, marketing, advertising, and sale of the JUUL products was unlawful, unfair,

6   deceptive and/or in violation of other state and federal laws. There would also have been a battle

7   of the experts regarding consumer understanding of JUUL marketing and advertising and

8   regarding the computation of restitution/damages, if any. Further, JLI was prepared to assert an

9   arbitration defense against a large portion of the class. Proceeding to trial as against JLI and the

10   Released Parties would have been costly, recovery was not guaranteed, and there was the

11   possibility of protracted appeals and the potential for bankruptcy.

12      Counsel for all Parties are highly experienced; Class Counsel provided detailed

13   declarations explaining why they supported the Settlement, and there is no factual basis to support

14   any allegation of collusion or self-dealing.

### 1.   Settlement Class Representatives and Class Counsel Have Adequately Represented the Settlement Class

16      In the Preliminary Approval Order, this Court found that the Settlement Class

17   Representatives and Class Counsel adequately represented the interests of the certified classes.

18   This Court has seen no evidence to contradict its previous finding, and the Court reconfirms it here

19   with respect to Settlement Class Representatives and Class Counsel, who have vigorously

20   prosecuted this action through discovery, motion practice, mediation, and preparations for trial.

21   Class Counsel possessed sufficient information to make an informed decision about settlement.

### 2.   The Class Settlement Was Negotiated at Arm's Length

23      The Court finds that the JLI Class Settlement is the product of serious, non-collusive,

24   arm's length negotiations by experienced counsel with the assistance of a well-respected,

25   experienced, Court-appointed Settlement Master, Thomas J. Perrelli. Before agreeing on the terms

26   of the Settlement, the parties engaged in extensive factual investigation, which included dozens of

27   depositions, the production and review of millions of pages of documents, extensive written

28

United States District Court
Northern District of California

discovery, robust motion practice, and expert discovery. The record was thus sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing and finds no such signs. Specifically, the Court finds that Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees as there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

### 3. The Cash Payments Provide Adequate Recovery to the Class

JLI has agreed to pay $255 million on behalf of itself and the Released Parties, which will be used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of Allocation. Settlement Class Members who submit Eligible Claims will therefore have the opportunity to receive substantial payments corresponding to their JUUL purchases. In addition, because the JLI Class Settlement Agreement does not release claims against Defendant Altria and related entities (that are the subject of a separate approval process), there will be additional recoveries to benefit the Settlement Class. Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable, and adequate given the risks of proceeding to trial and the recovery potentially available to Settlement Class Members if the Class Representatives had prevailed at trial.

### 4. The Risk of Continuing Litigation

The amount provided for in the Settlement is also reasonable in light of the risks of continued litigation. The Ninth Circuit, for example, granted the Defendants' Rule 23(f) petitions and Class Plaintiffs faced the risk that the Ninth Circuit would reverse or modify the Court's class certification decision. There were also substantial questions whether Class Plaintiffs would be able to prove at trial that JLI's and other parties' practices were fraudulent, unlawful, or unfair, and that JLI and other defendants should be held liable. Both sides believed they had persuasive facts to support their positions, and there is limited precedent available regarding the parties' competing

9

theories. Trial would have involved a battle of experts and their analyses concerning whether the marketing, advertising, and sales of JUUL Products were unlawful, unfair, or fraudulent, the methods of calculating damages/restitution, and ultimately what damages and/or restitution, if any, should be awarded. JLI was prepared to assert an arbitration defense against a large portion of the Class. And even if Class Plaintiffs succeeded at trial, appeals would undoubtedly have followed. Finally, there was the possibility that JLI could file for bankruptcy protection, thereby slowing or even eliminating any recovery.

### 5.      Attorneys' Fees and Expenses

The parties have reached no agreement regarding the amounts of attorneys' fees, expenses, and service wards to be paid. The payment of attorneys' fees, expenses, and service awards, if any, will be addressed by the Court in a separate order, but the amounts requested do not undermine the Court's conclusions that the JLI Class Settlement as a whole is fair and reasonable.

### 6.      Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Court has reviewed the JLI Class Settlement and relevant accompanying materials and has been made aware that JLI (on behalf of itself and the Released Parties) has agreed to fund parallel settlement programs to provide recoveries for other claimants in this MDL and the parallel JCCP proceedings, including individuals who asserted claims for personal injury, and school district and local government entities, as well as Native American tribal entities. Under the supervision of Special Master Perrelli, the amount of the Settlement Fund was negotiated separately from the amounts for the other settlements, with co-lead counsel Dena Sharp representing the Class, and the other co-lead counsel in the MDL representing interests of the personal injury and government entity plaintiffs. The Court is also aware that the Settlement provides for the creation of a trust to hold assets on behalf of the Class, which benefits the Settlement Class, as do the protections the Settlement contemplates in the event of bankruptcy or non-payment.

Certain of the Class Plaintiffs have asserted personal injury claims, and thus will be eligible to apply to share in the amounts allocated to the resolution of personal injury claims.

United States District Court
Northern District of California

1   Personal injury claimants will receive no favorable treatment compared to other Class Members.

2   All personal injury claims will be paid from funds set aside to resolve personal injury claims,

3   while the economic loss claims asserted by the Settlement Class will be paid from the Net

4   Settlement Fund. Only after a diligent effort to identify all Class Members and distribute to them

5   the full amount of the Net Settlement Fund will the parties confer regarding the disposition of any

6   residual funds, the distribution of which would be subject to the Court's approval and a finding

7   that the parties first exhausted all reasonable efforts to distribute remaining funds to Settlement

8   Class Members. Under the terms of the Settlement, the Net Settlement Fund is non-reversionary

9   and no portion of the Gross Class Settlement Amount or Net Settlement Fund will revert to JLI or

10   any other Released Party.

### 7.   The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other

12   The claims process and distribution method are reasonable. Settlement Class Members

13   who seek benefits under the Settlement need only submit a simple claim form, and the form is

14   prepopulated if their purchase information is known to JLI because they made purchases on JLI's

15   website.  The claim process is no more onerous than would be required after trial.

16   The method for distributing funds to Eligible Claimants is also reasonable. The Court finds

17   that the Plan of Allocation is fair, reasonable, and adequate and is hereby approved.

18   Under the Plan of Allocation, all Settlement Class Members who submit an Eligible Claim

19   will receive cash payments based on their *pro rata* allocation of the Net Settlement Fund. The Plan

20   of Allocation provides higher payments for those who first purchased in the earlier years of the

21   class period or when they were underage. The larger payments for those who made their initial

22   purchases earlier is consistent with the evidence about changes in relevant warnings over time,

23   which led the Court to note in its class certification order that:

24         JLI will be free to argue at the appropriate points (on summary judgment, trial,

25         post-trial) that a reasonable consumer who purchased after a certain date could
      not have been misled by its representations or omissions about its products given

26         the other information in the market or given the addition of the 'black-box'

27         nicotine warning on JUUL's packaging.

28

*Class Cert. Order*, 609 F. Supp. at 990. The enhanced payments for those who began purchasing when underage is based on Class Plaintiffs' full refund theory of recovery for their youth targeting claims, as opposed to the price premium damages model applicable to other claims. *See id.* at *17 (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly illegal). Further, it is rational to provide enhancements for all purchases by such persons, even after the warnings were augmented or the purchasers reached adulthood, because of the addictive nature of JUUL Products.

Setting a cap on the recoveries by Claimants who lack proof of purchase while claims that are accompanied by proof of purchase will not be capped is also reasonable. The use of a cap for Claimants without proof of purchase ensures a fair distribution and serves to disincentivize illegitimate or exaggerated claims.

Settlement Class Members can select their preferred method of payment, including mailed check, direct deposit, PayPal, or prepaid MasterCard. After an initial distribution, if there are substantial funds from uncashed payments and it is economically rational to do so, the monies will be redistributed to the Settlement Class Members who made claims and accepted their initial distribution payments where economically feasible. Only if residual funds remain thereafter will they be otherwise distributed, subject to the Court's approval.

### 8.     The Response of Class Members

Out of millions of Settlement Class Members, there were 2,620 timely opt-outs and eight timely objections to the Settlement, other than over 400 timely and untimely objections submitted by ClaimClam users that will be separately addressed below.  As of July 21, 2023, Settlement Class Members had timely submitted an estimated 6,349,982 Claim Forms. These figures represent an overwhelmingly favorable response from the Class.

The Court has considered each of the objections and finds that none undermines the fairness and adequacy of the Settlement.

### a.     PHAI Objection

The Court has carefully considered the objections of Cade Beauparlant, Matthew Murphy, and Marianne Savage, represented by the Public Health Advocacy Institute ("PHAI Objectors").

Dkt. No. 4062.  Counsel from PHAI appeared and argued in support of their objectors at the Final

Approval Hearing.  The concerns raised by PHAI regarding the current lack of research into

effective evidence-based treatments and the need for significant funds to develop and implement

effective cessation practices for adolescents and young adults who use e-cigarettes are serious,

significant, and of paramount concern to the Court.  However, the PHAI objections based on the

argument that public health funds should be made available as part of the JLI Class Settlement of

the economic loss claims are OVERRULED.

I agree with PHAI that as part of this MDL generally, public health solutions to the vaping

crisis allegedly caused by JLI are needed.  But I agree with Class Counsel (and objector Reilly

Stephens, represented by the Hamilton Lincoln Law Institute Center For Class Action Fairness,

Dkt. No. 4073), that the settlement of the class economic loss claims is not the appropriate place to

require those solutions.  The JLI Class Settlement releases only economic loss claims (claims

based on overpayments by class members for JLI's products).  I will not reject what is —as

described above – an obviously fair, reasonable, and adequate settlement of the economic loss

claims against JLI because the JLI Class Settlement did not reach further than the economic loss

claims, which were the only ones pleaded and litigated.  If, at the end of the claims distribution

process, there are funds left over from the Class settlements (both the JLI Settlement and, if finally

approved, the companion Altria Class Settlement) that are not economically feasible to distribute

directly to class members, Class Counsel shall apply to the Court for distribution to a *cy pres*

recipient.  While I find that the public health funds sought by PHAI cannot be required as a part of

the JLI Class Settlement, I retain the ability to select PHAI or another appropriate public health

agency or organization as a recipient of any potential *cy pres* funds.

The public health and private health impacts caused by JLI's products were centrally raised

and litigated through summary judgment in other parts of this MDL, for bellwether personal injury

and government entity plaintiffs.  They have also been raised, litigated, and by now largely

resolved through cases outside this MDL brought by various state Attorneys General.  Given my

concerns about these impacts, after the hearing on the final approval motion for the JLI Class

Settlement I requested and Plaintiffs' Co-Lead Counsel have provided a Status Report on

Settlement Implementation.  Dkt. No. 4134.  It addresses the implementation of the personal injury, government entity, and tribal settlement processes generally, and specifically details the government entities' agreement to use their funds for "compensatory restitution or remediation" of their damages from the vaping epidemic.  The Report provides specific examples of how bellwether and non-bellwether government entities as well as tribal entities are expected to fund solutions to the public health youth e-cigarette crisis. *Id.*  I will require an annual status report on how the governmental entity and tribal settlements are funding public health solutions throughout the country.  And although it is beyond my purview, I anticipate that settlements outside of this MDL by various state Attorneys General will likewise support ongoing and new research and support for e-cigarette cessation initiatives.

All that said, I conclude that the JLI Settlement is fair, reasonable, and adequate.  While the JLI Settlement does not directly provide resources to fund public health research and e-cigarette cessation initiatives, it appropriately addresses the economic loss claims of the Class members that defined what was pleaded and litigated in this portion of the MDL.

### b.    Gugliotta

John Gugliotta objected to the Settlement on the grounds that: (1) Class Members are not provided with information about the class size, (2) appearing at the fairness hearing is too expensive, (3) JLI did not admit fault as part of the Settlement, (4) the Settlement should have limited JUUL-related marketing practices, and (5) the Settlement should have done more to address vaping generally, not just related to JUUL.

Each of Gugliotta's objections is OVERRULED. The notices provide sufficient information about how Class Member payments are calculated to reasonably inform Class Members of the potential benefits of the Settlement. The Court opened the Fairness Hearing to attendance via Zoom, mooting any concerns with travel-related costs. Settlements are inherently compromises in which there is no reasonable expectation that the defendants admit fault, and in any event, the relief afforded to Class Members is reasonable, whether JLI has admitted fault or not. As to the fourth objection, Gugliotta argues that the Settlement should require disclosure of information regarding adverse drug interactions but does not provide any information about the

United States District Court
Northern District of California

14

1    purported interactions. He also argues that JUUL should not be marketed as a smoking cessation
2    device, but what JUUL marketing can say in that regard is the subject of FDA oversight. Nor is
3    there any requirement that a settlement provide injunctive relief for it to be fair, reasonable, and
4    adequate. Finally, because this litigation only concerned JUUL products, a settlement that is
5    limited to those products—as opposed to the conduct of other e-cigarette manufacturers
6    generally—is fair, reasonable, and adequate.

### c.    Ashak and Marcom

8        Olin Ashak and Samuel Marcom object to the Settlement because they appear to think that
9    the lawsuit never should have been brought and that the claims are baseless. But disagreement
10   with the litigation itself "is not a basis for denying the motion for final approval." *Quiruz v.*
11   *Specialty Commodities, Inc.*, 2020 WL 6562334, at *8 (N.D. Cal. Nov. 9, 2020). Ashak also
12   objects to the objection process, stating that it was "difficult."  However, the objection process
13   was clearly explained in the Notices approved by the Court. These objections are OVERRULED.

### d.    Ready, Stampfer, Stawicki, and Toole

15       The objections submitted by Lawanda Ready, John Stampfer, Melisa Stawicki, and Austin
16   Toole did not provide any basis for their objections, and are therefore OVERRULED.

### e.    ClaimClam

18       As of August 9, 2023, approximately 460 objections were submitted by purported class
19   members who were seeking to participate in the JLI Class Settlement with the assistance of third-
20   party "ClaimClam." Dkt. No. 4104-2 (listing ClaimClam submissions).  The objections followed
21   roughly the same form; they identified claimants' contact information and dates of their purchases,
22   and objected to the rejection of their claims by the Settlement Administrator.  *Id.*

23       Zimin Hang objected as both a class member and as CEO of ClaimClam.  Dkt. No. 4091-4.
24   At the Final Approval hearing, the Court heard argument from ClaimClam's attorney, Mathew
25   Borden.  The objections to the Claims Administrator's rejection of claims submitted by third-party
26   aggregator ClaimClam are OVERRULED.

27       Class Counsel directed the Settlement Administrator (Epiq) to reject the "tens of
28   thousands" of claims submitted "en masse" by ClaimClam.  Dkt. No. 4115 at 2.  Class Counsel

United States District Court
Northern District of California

1   argues that participation claims aggregators like ClaimClam in class action claims administration

2   can generally create confusion.  Specific to this case, Class Counsel point to evidence that the

3   information provided by ClaimClam to Class Members about the JLI Class Settlement and claims

4   process was incorrect or potentially misleading.  Dkt. No. 4091 at 8-14; Dkt. No. 4091-1, ¶¶ 28-

5   34.

6          The Settlement Administrator appropriately rejected the ClaimClam submissions.  The

7   method and contents of the notices given to class members – including the explanation of the case

8   and instructions on how to participate, opt-out, or object – were all approved by the Court as

9   required by Federal Rule of Civil Procedure 23(c)(2)(B).  The Court also approved the

10   appointment of Epiq as the Claims Administrator based on representations of Epiq's qualifications

11   and experience and an outline of administrative and communication services to be provided to

12   class members, under the supervision of Class Counsel and ultimately the Court.  The Court takes

13   these steps to ensure that class members' due process rights are fully protected.  Allowing en

14   masse submissions by claims aggregators like ClaimClam raises real risks that Class Members

15   will not receive accurate information regarding the scope of the class and the claims process.

16   Allowing a third-party to submit hundreds or thousands of aggregated claims also hinders the

17   ability of the Court-appointed Claims Administrator to communicate directly with claimants and

18   conduct required follow up to identify fraudulent claims or verify the accuracy of claims and to

19   resolve claim disputes (*e.g.*, confirm hours worked in wage and hour suits, or the amount of

20   product purchased in consumer suits).

21          The rejection of the ClaimClam submissions in this case will cause no prejudice to Class

22   Members who may have authorized ClaimClam to submit a claim on their behalf.  Class Counsel

23   shall work with Epiq (and to the extent ordered below with ClaimClam, who has appeared in this

24   case) to notify each impacted Class Member whose contact information is available (from the

25   objections or from the ClaimClam submissions) and allow reasonable time for each affected Class

26   Member to directly submit a claim to Epiq.

27          Therefore, it is ORDERED THAT with respect to the individuals for whom ClaimClam

28   submitted a claim on or before July 14, 2023, ClaimClam shall provide to Epiq and Class Counsel

United States District Court
Northern District of California

16

within one week of this Order a spreadsheet containing the individuals' names and email addresses (or other means of primary communication with which ClaimClam communicated with such individuals). Class Counsel and Epiq shall thereafter notify such individuals, in writing, of this Order and provide instructions for how the individuals may submit claims directly to Epiq and/or rescind any opt-out requests.

Those individuals for whom ClaimClam submitted a claim shall have three months from the date of this Order to submit their claims directly to Epiq, and any such claims will be considered timely.  As the Court has separately granted preliminary approval of the proposed settlement with Altria and related entities, this deadline shall be consistent with the claims deadline applicable to the Altria Class Settlement. Any claims directly filed with Epiq and requests to rescind opt-out requests from former ClaimClam clients shall not be deemed untimely simply because they were submitted after the July 14, 2023 deadline.

### E.    Releases and Effect of This Order

#### 1.    Releases by Settlement Class Members

By operation of this Order and Judgment, on the date specified in the JLI Class Settlement, Settlement Class Members, including the Settlement Class Representatives, release and forever discharge and hold harmless the Released Parties of and from any and all Settlement Class Released Claims which the Settlement Class Member ever had, now have, or will have in the future. The Settlement Class Released Claims shall not release any Settlement Class Member's: (i) claim(s) for personal injury against the Released Defendants; (ii) claims asserted in *In re Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from alleged anticompetitive conduct; (iii) claim(s) against any non-settling Defendants; (iv) claim(s) arising from the purchase of any JUUL Product after December 6, 2022; or (v) right(s) to enforce the Settlement. Settlement Class Members shall not release their claims if either the Effective Date does not occur, or the Gross Settlement Amount is not paid. The scope of the Released Claims is consistent with the economic loss claims pled in the class action complaint.

#### 2.    Waiver of Provisions of California Civil Code § 1542

By operation of this Order and Judgment, with respect to the Settlement Class Released

United States District Court
Northern District of California

Claims, Class Plaintiffs, the Released Parties, and Settlement Class Members shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Class Plaintiffs, JLI (on behalf of itself and the Released Parties), and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases, but acknowledge that this release extends only to economic loss claims (other than those expressly exempted from the scope of the release).

The Settlement Class Released Claims of the Settlement Class are dismissed with prejudice and without costs. Accordingly, the Second Amended Consolidated Class Action Complaint and any other complaints in the litigation asserting Settlement Class Released Claims are hereby dismissed with prejudice and without costs.

### 3.      Compliance with Class Action Fairness Act

The record establishes that the Class Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1)-(8). ECF No. 3742.

### F.      Costs of Administering the Settlement

The Class Settlement Administrator received over six million claims, which exceeds the outer bounds of the volume of claims that the Class Settlement Administrator had expected prior to commencing the notice program. Based on the information provided by Class Plaintiffs, a precise estimate of the costs needed to process those claims, conduct necessary follow-ups, weed

United States District Court
Northern District of California

out invalid claims, and distribute funds is unknown given the ongoing nature of the analysis of the claims.

The Class Settlement Administrator and Class Counsel both anticipate that, notwithstanding the very high claims volume, the Class Settlement Administrator will be able to complete the necessary settlement administration work for less than the $7,000,000 proposed in the class notice. Given the uncertainty in the final amounts needed to complete settlement administration, the Court authorizes payment to the Class Settlement Administrator of up to $6,000,000 for administration of both the JLI and Altria Class Settlements (inclusive of the $3,000,000 authorized for the JLI Class Settlement administration in the JLI Preliminary Approval Order as well as the $2,500,000 authorized for the Altria Class Settlement administration in the Altria Preliminary Approval Order). If needed, Class Counsel may seek approval of payment of additional costs with supporting documentation submitted to Class Counsel and approved by the Court. Class Counsel shall only authorize payments to the Class Settlement Administrator for actual costs incurred. Any difference between the actual costs incurred by the Class Settlement Administrator and the $6,000,000 approved amount shall remain a part of the Settlement Fund. Class Counsel is directed to continue to work with the Class Settlement Administrator on methods for reducing costs and to review billing statements on a weekly basis.

The Court also authorizes total payment of up to $50,000 per year for previously incurred and future costs related to the administration of the Trust (including all expenses and compensation payable under the terms of the Trust). Payments up to such amount are reasonable given the role of the Trust in protecting the Settlement Fund from being subject to reduction or clawback in the event JLI were to file for bankruptcy. In no event shall payments related to the administration of the Trust exceed the Settlement Fund's share of the actual, documented out-of-pocket costs for administering the Trust.

### G.    Other Effects of This Order

No action taken by the parties, either previously or in connection with the negotiations or proceedings connected with the JLI Class Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment

or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party. Neither the JLI Class Settlement nor any act performed or document executed pursuant to or in furtherance of the JLI Class Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the JLI Class Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Settlement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Settlement, in any proceeding in any court, administrative agency, or other tribunal. JLI's and the Released Parties' agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession that class certification was or would be appropriate in the litigation outside of the context of settlement or would be appropriate in any other action.

Except as provided in this Order, Class Plaintiffs shall take nothing against the Released Parties by the Released Claims. This Order shall constitute a final judgment binding the Released Parties and JLI Settlement Class Members with respect to the Released Claims.

No distributions shall be made from the Settlement Fund, or from any account holding the Settlement Fund, without the written authorization of Class Counsel.

Defendants will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant. No JLI Settlement Class Member or any other person will sue or have any claim or cause of action against the Settlement Class Representatives, Class Counsel or any person designated by Class Counsel, Co-Lead Counsel or the Class Settlement Administrator arising from or relating to the Settlement, the Released Claims, the litigation, or determinations or distributions made substantially in accordance with the JLI Settlement or Orders of the Court, including this Final Approval Order and Judgment.

Without affecting the finality of the judgment hereby entered, the Court reserves exclusive jurisdiction over the implementation of the JLI Class Settlement. In the event the Effective Date does not occur in accordance with the terms of the JLI Class Settlement, or the Gross Settlement Amount is not paid, then this Order and any judgment entered thereon shall be rendered null and

20

1   void and shall be vacated, and in such event, all orders and judgments entered, and releases

2   delivered in connection herewith shall be null and void and the parties shall be returned to their

3   respective positions ex ante.

4        Without further order of the Court, the parties may agree to reasonable extensions of time

5   to carry out any provisions of the Settlement.

6        In addition, IT IS ORDERED THAT with respect to the individuals for whom ClaimClam

7   submitted a claim on or before July 14, 2023, ClaimClam shall provide to Epiq and Class Counsel

8   within one week of this Order a spreadsheet containing the individuals' names and email addresses

9   (or other means of primary communication with which ClaimClam communicated with such

10  individuals). Class Counsel and Epiq shall thereafter notify such individuals, in writing, of this

11  Order and provide instructions for how the individuals may submit claims directly to Epiq and/or

12  rescind any opt-out requests.

13       IT IS FURTHER ORDERED THAT Class Counsel prepare and file an annual status report

14  describing how the governmental entity and tribal settlements are funding public health solutions

15  throughout the country as a result of the funds they receive through the settlement of their claims

16  in this MDL.

17       There is no just reason for delay in the entry of this Judgment, and immediate entry by the

18  Clerk of the Court is expressly directed.

19       **IT IS SO ORDERED.**

20  Dated: September 19, 2023

21

22

23  William H. Orrick
    United States District Judge

24

25

26

27

28

*(left margin, vertical text)* United States District Court
Northern District of California