[Submitting Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-02913-WHO **FEE COMMITTEE'S RECOMMENDATIONS RE: FEE AND EXPENSE PAYMENTS FROM JLI SETTLEMENTS** |
| This Document Relates to:<br><br>All Cases | **REDACTED**<br><br>**Judge:** **Hon. William H. Orrick**<br>**Date:** **December 20, 2023**<br>**Time:** **2:00 PM**<br>**Ctrm.:** **2** |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 20, 2023 at 2:00 PM, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, the Court-Appointed Fee Committee, will and hereby do move for an order accepting the Fee Committee's proposed recommended fee and cost allocations.

1 **I.      INTRODUCTION**

2        The Court-Appointed Fee Committee (ECF 4068), submits this recommended allocation

3 of fees and costs stemming from the four settlements with JLI benefitting personal injury,

4 government entity, tribal, and class Plaintiffs. The recommendations were reached through

5 extensive deliberation and interface with affected counsel, and with the substantial assistance of

6 Special Master Perrelli. The recommended allocations, by firm, are attached as **Exhibit 1**.

7 **II.     BACKGROUND**

8        **A.      The Litigation**

9        This MDL was formed on October 2, 2019. *In re JUUL Labs, Inc., Mkt., Sales Prac. &*

10 *Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019). The JCCP *JUUL Labs Product Cases*

11 (No. 5052) followed soon after. A little more than three years later, defendant Juul Labs, Inc.

12 agreed to four global settlement programs: personal injury, government entity, tribal entity, and

13 class. While the amounts and terms of the non-class settlements are confidential, the aim of the

14 settlements is to resolve virtually all cases pending in either the MDL or JCCP and to fund

15 solutions to the youth vaping epidemic. *See* ECF 4134. The settlements include all claims

16 pending against JLI, its officers and directors, as well as its suppliers and retailers—in short,

17 everyone except the Altria Defendants. These remarkable results happened at remarkable speed,

18 particularly in the context of a global pandemic that could have, but did not, grind this litigation

19 to a halt.

20        This did not happen by accident, but instead through the hundreds of thousands of hours

21 in common benefit time committed by law firms to advance the interests of all Plaintiffs in this

22 litigation, as well as the more than $24 million in common benefit costs advanced by these same

23 firms with no promise of reimbursement. The numbers speak for themselves: more than 33

24 million pages of documents produced by Defendants and reviewed by Plaintiffs; more than 190

25 third-party subpoenas; more than 100 fact witness depositions; more than 50 generic or

26 bellwether-specific experts; dozens and dozens of motions made or opposed; 24 bellwethers

27 worked up through the close of discovery; two bellwethers (*B.B.* and *SFUSD*) taken to the eve of

28 trial; four certified classes; and nearly 4,000 docket entries as of the settlement date.

**B.    The Fee Committee's Process**

Courts recognize that fee awards should be allocated holistically, not based merely on the number of hours and hourly rates a firm billed to a case. As Judge Fallon has explained:

> In a case of this kind, not all types of work are created equal. Hours spent taking depositions, participating in hearings, or trials, actively participating in developing the appropriate litigation strategies and tactics (through moot court presentations or similar practices), drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and deserves the most recognition. This, of course, is not the only type of work that such a case requires. Documents must be reviewed, categorized, and analyzed; e-mails must be read and responded to; claimants must be kept advised; meetings must be attended and in general the litigation must be monitored. This work, while necessary and often time consuming does not deserve equal treatment when allotting fees.

*In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740, 772 (E.D. La. 2011).

Consistent with that authority, in arriving at recommended fee allocation, the Committee did not simply allocate to each firm a pro rata amount based on their respective lodestars. The Committee used, as a starting point, the hours approved by Common Benefit Special Master Judge Andler under CMO 5 (ECF 352) and its JCCP equivalent. *See* London Decl. ¶¶6-8; ECF 4056-1 (Judge Andler's MDL reports); Kiesel Decl. ¶¶ 2-3 (describing the JCCP process). But in reaching a proposed allocation, the Committee considered the totality of each firm's contributions to the litigation.

To guide its recommendations, the Committee agreed on several factors to be applied. As other courts have noted, "[a]lthough the process of allocating fees in a case of this size among so many lawyers is discretionary and can at times seem arbitrary," defining the relevant factors up front "provides some structure and guidelines for multiplier decisions, and ultimately, each firm's fee award." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2017 WL 5969318, at *2 (N.D. Cal. Feb. 28, 2017). To that end, the Committee weighed the hours each firm committed to the litigation through January 31, 2023 (the data most recently reported to the Court) in light of the following factors:

> (1) quality of work; (2) level of work, including taking depositions, managing experts, drafting briefing, arguing significant motions, preparing bellwether cases for trial; and contributing to class certification, (3) whether a firm held a Court-appointed role or led or served on committees; (4) the timeliness and amount of contributions to litigation funds;

and (5) billing efficiency and billing rates.

London Decl. ¶ 13-16. These and similar factors, whether applied directly by Courts or by fee committees or special masters, are typically considered when allocating class and common benefit fees. *See, e.g.*, *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 474 (9th Cir. 1997) (pointing to "the relative efforts of, and benefits conferred upon the class by" counsel); *CRT*, 2017 WL 5969318, at *2, 9-10; *Vioxx*, 802 F. Supp. 2d at 772; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 WL 1365900, at *9-10 (N.D. Cal. Apr. 3, 2013); *In re Critical Path, Inc.*, No. 01-551, 2022 WL 32627559, at *10 (N.D. Cal. June 18, 2002).

The Committee's work was not easy. As discussed further below, the total maximum fees available are well below the lodestar. The task was also zero-sum: determining that one firm's percentage of the fund was inequitably low required reducing some other firm's percentage. Moreover, although the work on behalf of any one group of plaintiffs necessarily and meaningfully contributed to the common result, that work varied significantly. Comparing, for example, one firm's work on finding and shepherding class representatives through discovery against, for example, another firm's work with an expert opining on the Directors' corporate activities, was to an inevitable extent an exercise in apples and oranges. The Fee Committee, composed of the six attorneys with the most complete collective knowledge of how this case was litigated and why it settled, exercised its judgment to reach fair allocations. *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F. 4th 1126, 1207 (10th Cir. 2023) ("[T]he Court should and must rely, to a degree, on the voice of Lead Counsel on the responsibilities of class counsel members, quality of their work, and novelty of issues involved.") (citation omitted).

On August 4, 2023, the Fee Committee sent to each firm that reported common benefit time to this Court or the JCCP an explanation of the Committee's approach and the Committee's preliminary recommendations. London Decl. ¶ 11. The Committee invited any firm that wished to discuss their proposed allocation to schedule a meeting with the Committee. *Id.* In addition, the Committee held a webinar and Q&A session on August 14, 2023 to further explain the Committee's process and proposed allocations. *Id.* Multiple firms requested and received interviews the weeks of August 14 and 21. *Id.* The Fee Committee considered those interviews in

revising the proposed allocation. *Id.*

On August 28, the Fee Committee sent revised proposed allocations to all applicable firms. *Id.* ¶ 12. A handful of firms requested further review of their allocations. *Id.* Each of the MDL firms met with Special Master Perrelli. Following those meetings, Special Master Perrelli proposed an adjusted allocation. *Id.* The Fee Committee believes that this proposed allocation, attached as **Exhibit 1**, will result in total or near-total consensus.

**III.    THE FEE COMMITTEE RECOMMENDS THE COURT AUTHORIZE ATTORNEY FEE PAYMENTS AS PERCENTAGES OF THE AVAILABLE FEES FROM THE JLI SETTLEMENTS.**

Applying the factors described above, the Fee Committee has recommended that each participating firm receive some percentage of the available fees. Those percentages are set out in **Exhibit 1**.

**A.    Fee Allocations Should Be In the Form of Percentages of the Total Available Funds.**

The recommendations are expressed as percentages because the exact amount of available fees is not yet known. London Decl. ¶ 17. This is so for three reasons. First, Class Counsel's fee motion is pending. ECF 4055. ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████[1]

The recommended allocations apply to the overall amounts available, including funds traceable to cases pending the MDL, cases pending in the JCCP, cases filed only as part of the settlements, and the class settlement. The Fee Committee recommends this approach because of the interrelated nature of the various plaintiff groups' claims and the work performed, and the

---

[1] The Fee Committee requests the Court authorize the Fee Committee to use its discretion to determine whether to hold back some or all portions of fee awards attributable to the Rule 23(h) class fee until any appeals from that award are no longer pending.

- 5 -

lack of a reliable, objective way to divide the time between plaintiff groups and between jurisdictions. London Decl. ¶ 18; *see also* ECF 4056 (Sharp Decl.) at ¶ 125 (same). All common benefit work contributed to the common result.

**B.** **Allocation Among JCCP Firms Should be Submitted to Judge Cunningham.**

The Committee recommends that 7% of the fund be earmarked collectively for several firms that recorded most or all of their time in the JCCP, consistent with their overall contributions to the common benefit result. That amount was determined through arms-length negotiations with the assistance of Judge Andler and reflects, among other things, the JCCP's contributions to common liability discovery, efforts to maintain an additional venue for potential bellwether trials in Los Angeles, and cooperation on litigation and settlement strategy. London Decl. ¶ 19. The Committee recommends that the allocation of that 7% amongst the JCCP firms be submitted to Judge Cunningham. JCCP leadership will submit the proposed allocation of that amount to the JCCP.

**C.** **The Overall Fee Award is Reasonable.**

The maximum total fee award (assuming the Court awards 30% of the class fund) is less than ███████████ (before any interest). London Decl. ¶ 20. The Fee Committee proposes allocating that amount among 57 law firms (not including firms recommended to receive no allocation). Ex. 1. Those firms together reported 367,748.30 hours between the MDL and the JCCP. *Id.* ¶¶ 21-22. That results in a blended rate ████████████████████████ ██████████████████████. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-2420, 2020 WL 72464559, at *20 (N.D. Cal. Dec. 10, 2020) (noting an "average blended billing rate of $528.11 per hour for forty approved class action settlements in the Northern District of California in 2016 and 2017"); *Perez v. Rash Curtis & Assocs.*, No. 16-3396, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (explaining that "[c]ourts in this district would generally find that the blended rate of $634.48 is within the reasonable range of rates," and collecting cases). Looking at it another way, the firms for which the Committee recommends allocation together reported

1    lodestar of $202,412,997.45. London Decl. ¶¶ 21-22.[2] █████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████

### D.     Fees in Connection with the Altria Settlements Are Not Before the Court.

The Fee Committee, in connection with the work associated with the JLI allocation, has

agreed to and communicated to affected firms an allocation of anticipated fees flowing from the

Altria settlements. That allocation provides for Altria-related fees to go to the subset of firms

primarily responsible for the *San Francisco Unified School District* trial as well as firms

primarily responsible for the class portion of the litigation. As with the JLI allocation, the Fee

Committee believes that the Altria allocation will maximize consensus.

The Altria allocation is not currently before the Court. The Court granted the motion for

preliminary approval of the Altria class settlement on September 7. ECF 4130. Around November

15, 2023, the Court will receive additional time billed and expenses incurred between February 1,

2023 and September 30, 2023 (which will include more than 26,000 additional hours). London

Decl. ¶ 25. On January 15, 2024, proposed Class Counsel will file a motion for class-related

attorneys' fees, expenses, and service awards. Co-Lead Counsel anticipate filing a motion to

allocate Altria fees soon thereafter, but welcome any guidance from the Court on how best to

structure that process.

## IV.    THE FEE COMMITTEE RECOMMENDS THE COURT AUTHORIZE REIMBURSEMENTS IN INCURRED AND ANTICIPATED EXPENSES.

The Fee Committee recommends cost payments in four categories: contributions to

litigation funds; pending and anticipated invoices; held costs; and anticipated payments to

---

[2] These numbers differ slightly from those in the Sharp Declaration submitted with Class Counsel's motion for attorneys' fees for two reasons. First, as mentioned, the data in this brief exclude firms for which the Fee Committee recommends no fee allocation. Second, for purposes of calculating the lodestar cross-check for the class fee award, Class Counsel removed time billed between December 7, 2022 and January 31, 2023. ECF 4055 at 14. That time was included in the data the Fee Committee considered. The Committee submits that these relatively minor differences are not material to the Court's analysis.

BrownGreer PLC. █████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████

## A.      Contributions to Litigation Funds.

In CMO 5, this Court authorized the creation of a litigation fund for the payment of "Shared Costs." ECF 352 at 8-9. The JCCP did the same. ECF 4048-4 at 9-10. Under those orders, lead counsel in the MDL and the JCCP established two cost funds and required participating firms to make periodic contributions. London Decl. ¶¶ 26-27; Kiesel Decl. ¶ 4.

These funds were used to pay common benefit expenses, the most significant of which included:

- Experts/Consultants: $12,922,500.66
- Special Masters: $1,669,675.67
- Document Hosting: $2,992,044.19
- Deposition Costs: $1,521,230.45

London Decl. ¶ 29 (MDL); Kiesel Decl. ¶ 6 (JCCP). All payments from the cost funds were approved by MDL- or JCCP-appointed counsel as appropriate and necessary for the litigation. London Decl. ¶ 27; Kiesel Decl. ¶ 5. The Committee recommends that the Court authorize reimbursement of $17,150,000 in contributions to the MDL cost fund, and $2,800,000 in contributions to the JCCP cost fund. London Decl. ¶ 28; Kiesel Decl. ¶ 4.

## B.      Pending and Anticipated Expenses

The litigation continues to require payments of substantial ongoing expenses, including document hosting services, special master compensation, and settlement administration costs. London Decl. ¶ 30; Kiesel Decl. ¶ 9. As of November 9, 2023, there remains $107,093.32 in the MDL cost fund and $28,515.18 in the JCCP cost fund. London Decl. ¶ 30; Kiesel Decl. ¶ 9. The MDL currently has outstanding bills of $583.973.23. The Fee Committee recommends that the Court authorize disbursements of $700,000 to the MDL cost fund to cover (along with the funds currently remaining in the cost funds) these and other expenses anticipated in the near future. Co-

1   Lead Counsel's request for a final accounting will ensure that any portion of the $700,000 that is

2   not needed for the payment of common benefit expenses will revert to the various settlement

3   accounts.

4   **C.     Held Costs**

5           The Committee recommends reimbursement of $4,389,016.40 in reported and approved

6   "held costs," i.e., costs incurred by individual law firms not paid by the litigation funds. *See* ECF

7   352 at 10 (defining "held costs"); ECF 4084-4 at (same). These costs were all reported to and

8   approved by Judge Andler. London Decl. ¶¶ 31-32; Kiesel Decl. ¶ 8.

9   **D.     Anticipated Payments to BrownGreer PLC**

10          The Court appointed BrownGreer PLC as the Personal Injury Settlement Administrator,

11  Government Entity Settlement Administrator, and Tribal Settlement Administrator. ECF 3714 at

12  2. BrownGreer forecasts that its services on behalf of those settling Plaintiffs will cost

13  approximately ███████. London Decl. ¶¶ 33-35. The Fee Committee recommends authorizing

14  payment of BrownGreer's invoices up to this amount. Co-Lead Counsel have been monitoring,

15  and will continue to monitor, BrownGreer's work to ensure those costs are reasonable. *Id.* ¶ 35.

16  Should BrownGreer's bills exceed ███████, the Fee Committee will return to the Court to ask

17  for additional allocation.

18  **IV.    <u>CONCLUSION</u>**

19          The Fee Committee respectfully recommends the Court authorize the fee and cost

20  payments described in **Exhibit 1**.

21

22

23

24

25

26

27

28

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: November 12, 2023

Respectfully submitted,

By: /s/ *Sarah R. London*

Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone:  (415) 956-1000
slondon@lchb.com

By: /s/ *Dena C. Sharp*

Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

By: /s/ *Dean Kawamoto*

Dean Kawamoto
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone:  (206) 623-1900
dkawamoto@kellerrohrback.com

By: /s/ *Ellen Relkin*

Ellen Relkin
**WEITZ & LUXENBERG**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

*Co-Lead Counsel for Plaintiffs*

2880734.3

FEE COMMITTEE RECOMMENDATIONS
CASE NO. 3:19-MD-02913-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 12, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: <u>/s/ *Sarah R. London*</u>
    Sarah R. London

FEE COMMITTEE RECOMMENDATIONS
CASE NO. 3:19-MD-02913-WHO