# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Cases | Case No. 3:19-md-02913-WHO<br><br>**DECLARATION OF SARAH R. LONDON IN SUPPORT OF FEE COMMITTEE'S RECOMMENDATIONS RE: FEE AND EXPENSE PAYMENTS FROM JLI SETTLEMENTS**<br><br>**REDACTED** |

I, Sarah R. London, declare and state as follows:

1. I am an attorney in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP. I serve as Co-Lead Counsel and Liaison Counsel in this litigation. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this declaration in support of the recommendations submitted by the Court-appointed Fee Committee.

**The Litigation**

3. Much of the detail regarding the course of this litigation was discussed in the declaration submitted by my co-lead counsel Dena Sharp in support of Class Counsel's motion for attorneys' fees under Rule 23(h). ECF 4056. I will not repeat those details at length here.

4. This MDL was formed on October 2, 2019. The JCCP *JUUL Labs Product Cases* (No. 5052) followed soon after. A little more than 3 years later, on December 6, 2023, lead counsel in both jurisdictions, on behalf of all Plaintiffs, entered into four settlements: personal injury, government entity, tribal entity, and class (the "JLI Settlements"). The four settlements aim to resolve all claims pending against all Defendants in this MDL (or the JCCP) other than the Altria Defendants. The specific terms of the non-class settlements are confidential.

5. On any metric, the work required to pursue this litigation and reach the JLI Settlements was enormous. Plaintiffs acquired and reviewed more than 33 million pages of documents from Defendants. Plaintiffs served more than 190 third-party subpoenas. Plaintiffs took more than 100 fact witnesses depositions and defended more than 110 fact witness depositions. Plaintiffs produced more than 50 generic or bellwether-specific experts. Plaintiffs made or opposed dozens and dozens of motions and appeared dozens of times before Judge Orrick or Judge Corley. Plaintiffs worked up 24 bellwethers (personal injury and government entity) through the close of discovery, and took two bellwethers (*B.B.* and *SFUSD*) to the eve of trial. Plaintiffs certified four classes. As of the date of settlement, there were nearly 4,000 entries on the MDL docket.

**Reporting of Time and Expenses**

6. As required by CMO 5, counsel working on this MDL submitted their detailed time and expenses to Co-Lead Counsel. Co-Lead Counsel crafted and applied a multi-step auditing process for review of those submissions. First, staff at my firm reviewed all submissions to identify objective deficiencies such as block billing or lack of detail. Second, the four Co-Lead Counsel firms reviewed the time and expenses. Third, Plaintiffs provided detailed reports to Common Benefit Special Master Andler on a quarterly basis. Each step was iterative, with time being rejected or adjusted in response to concerns raised at any level of review.

7. For each submission, Judge Andler found that "the tasks, hours, and expenses incurred were appropriate, fair and reasonable and for the common benefit." Plaintiffs provided the time and expense reports reviewed by Judge Andler, along with the time and expense detail, to the Court on a regular basis. Those reports, along with cover letters providing additional information, were filed in connection with Class Counsel's motion for attorneys' fees at ECF 4056-1.

8. It is my understanding that the JCCP, as required by its own CMOs, followed a similar process (although Judge Andler's reports and approved time and expenses were not provided to Judge Cunningham).

**The Fee Committee's Process**

9. On June 6, 2023, my firm coordinated the drafting and filing of a Motion to Appoint Fee Committee. ECF 4048. The motion requested that the Court appoint a committee to recommend allocations of all fee and costs funds flowing from the JLI Settlements, including funds related to cases pending in the JCCP. The motion requested that the Committee include four lawyers from MDL Co-Lead Counsel (myself, Ms. Sharp, Mr. Kawamoto, and Mr. Relkin) and two lawyers from JCCP leadership (Paul Kiesel and Mark Robinson). The Court granted the motion on July 20, 2023. ECF 4068.

10. The Fee Committee engaged in meetings to allocate the fees and expenses derived from the JLI Settlements. There were dozens of meetings, some including the entire Committee, some including subsets of the Committee.

11. On August 4, 2023, the Fee Committee sent to each firm that reported common benefit time to this Court or the JCCP an explanation of the Committee's approach and the Committee's preliminary recommendations. The Committee invited any firm to schedule a meeting with the Fee Committee to discuss the proposed allocations. In addition, the Committee held a webinar and Q&A session on August 14, 2023 to further explain the Committee's process and proposed allocations. Multiple firms requested and received interviews the weeks of August 14 and 21. The Fee Committee considered those interviews in arriving at a final proposed allocation.

12. On August 28, the Fee Committee sent revised proposed allocations to all applicable firms. A handful of firms requested further review of their allocations. Each of the MDL firms met with Special Master Perrelli. Following those meetings, Special Master Perrelli proposed a modified allocation, which the Fee Committee recommends the Court adopt.

**Recommended Fee Allocations**

13. In allocating fees, the Fee Committee did not apply a rote quantitative approach. Instead, we considered the totality of each firm's contribution to the litigation as a whole. We canvassed the cases showing how judges, special masters, and fee committees have approached fee allocation in the past and developed a set of factors, grounded in those previous cases, to "provid[e] some structure and guidelines" for allocating fees. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2017 WL 5969318, at *2 (N.D. Cal. Feb. 28, 2017). Those factors were:

> (1) quality of work; (2) level of work, including taking depositions, managing experts, drafting briefing, arguing significant motions, preparing bellwether cases for trial; and contributing to class certification, (3) whether a firm held a Court-appointed role or led or served on committees; (4) the timeliness and amount of contributions to litigation funds; and (5) billing efficiency and billing rates.

14. We weighed the hours each firm reported (through January 31, 2023) in light of those factors. In reviewing that time, members of the Fee Committee and our colleagues and staff identified and corrected minor errors (e.g., entries coded with the wrong firm). So our database does not match exactly the detailed time that was reported to the Court. I do not believe the changes are material to the Court's overall determinations. In addition, we surveyed each firm to

1    update their billers' professional levels, in order to (1) correct errors we identified in the
2    reporting to the Court and (2) to provide more granular data (e.g., adding in "staff attorney" and
3    "contract attorney" options).

4    15.    As lead counsel in the MDL and the JCCP, we were in the best position to evaluate
5    each firm's contributions to the litigation and the settlements.

6    16.    Our work was difficult. Firms did different kinds of work in different types of
7    cases, which made the exercise often a matter of comparing apples to oranges. Determining that
8    one firm's percentage was inequitably low required reducing some other firm's percentage.

9    17.    The allocations take the form of percentages because the total available amount is
10   uncertain. This is so for three reasons. First, Class Counsel's fee motion is pending. ECF 4055.

[lines 11–16 redacted]

17   18.    The allocations apply to all funds available in the MDL (including the class fund)
18   because of the interrelated nature of the various plaintiff groups' claims and the work performed,
19   and the lack of a reliable, objective way to divide the time between plaintiff groups and between
20   jurisdictions. Work in furtherance of any one Plaintiff case type or in one jurisdiction benefitted
21   all case types and it was the progress of all case types together than generated the settlement
22   pressure to reach the outcome.

23   19.    Working with Judge Andler, the Committee agreed to allocate 7% of the fund,
24   collectively, to several firms that reported most or all of their time in the JCCP. That amount was
25   determined through arms-length negotiations with the assistance of Judge Andler and reflects,
26   among other things, the JCCP's contributions to common liability discovery, efforts to maintain
27   an additional venue for potential bellwether trials in Los Angeles, and cooperation on litigation

and settlement strategy. Committee recommends that the allocation of that 7% amongst the JCCP firms be submitted to Judge Cunningham.

**Reasonableness of Recommended Fees**

20. The maximum total fees available from the JLI Settlements are less than ▮▮▮▮▮▮▮ (before any interest).

21. The total MDL hours (through January 31, 2023) reported to this Court by the firms receiving recommended allocations is 348,003.70. The total MDL lodestar (through January 31, 2023) reported to this Court by the firms receiving recommended allocations is $188,664,973.95.

22. Verus has reported to my firm the JCCP hours, lodestar, and expenses reported to and approved by Judge Andler. The total JCCP hours approved by Judge Andler by the firms receiving recommended allocations is 19,744.60. The total JCCP lodestar approved by Judge Andler by the firms receiving recommended allocations is $13,748,023.50.

**The Altria Settlements**

23. The Fee Committee has agreed to a recommendation allocation of fees flowing from the Altria settlements. That allocation provides for fees to go to the firms primarily responsible for the *San Francisco Unified School District* trial as well as firms primarily responsible for the class portion of the litigation. The Committee believes that the proposed Altria allocation will result in maximum consensus.

24. However, fees in connection with the Altria settlements are not currently before the Court.

25. MDL Co-Lead Counsel expect to submit to the Court on November 15, 2023, additional time billed and expenses incurred between February 1, 2023, and September 31, 2023. MDL Co-Lead Counsel anticipate that submission will include more than 26,000 additional hours.

**Recommended Cost Fund Reimbursements**

26. Following the entry of CMO 5, MDL Co-Lead Counsel established a common litigation fund, and required periodic assessments from firms appointed to the Plaintiffs' Steering Committee.

27. My firm was the custodian of the MDL litigation fund. At my direction, my staff tracked every payment into or from the MDL litigation fund. Every payment from the fund was approved either by me, an attorney working directly under my supervision, or another member of Plaintiffs' leadership team. In my judgment, every expense paid from the fund was reasonably incurred for the common benefit.

28. At my direction, my colleagues and staff reviewed LCHB's litigation fund records to calculate the assessments paid by each firm. The total is $17,150,000, divided by firm as part of the recommended cost reimbursements. Most firms did not include assessments in their reported "held costs," but some did (and some reported a portion of their assessments, but not all). At my direction, my colleagues and staff reviewed the data and removed any assessments from the reported held costs. As a result, the requested cost reimbursements do not double-count assessments.

29. As of November 7, 2023, the MDL cost fund made more than 1,800 payments. Some of the most significant categories include: $12,736,982.91 for experts; $1,502,707.52 for special masters; $1,516,337.73 for document hosting; and $1,521,230.45 for deposition costs. A portion of these expenses were reimbursed by the JCCP cost fund (those reimbursements are not included in the payment summary for the JCCP cost fund). We can provide any additional detail on the litigation fund expenses as the Court may request.

30. As of November 9, 2023, there remains $107,093.32 in the MDL litigation fund. The fund incurs, and will continue to pay, ongoing monthly expenses including document hosting, special masters, and expenses related to settlement administration. The MDL currently has outstanding bills of $583,973.23.

31. The MDL "held costs" reported to and approved by Judge Andler, minus any reported litigation fund assessments, and for which the Fee Committee requests reimbursement total $4,331,132.85.

32. The JCCP approved "held costs," minus any litigation fund assessments, as reported to us by Verus, and for which the Fee Committee requests reimbursement total $57,883.55.

33. In CMO 16, the Court appointed BrownGreer PLC as the Personal Injury Settlement Administrator, Government Entity Settlement Administrator, and Tribal Settlement Administrator. Judge Cunningham signed a parallel order in the JCCP.

34. Co-Lead Counsel and Fee Committee member Ellen Relkin worked with BrownGreer to estimate the costs of its servicing in implementing the three settlements. BrownGreer estimates those expenses to be approximately ███████.

35. Co-Lead Counsel have been monitoring, and will continue to monitor, BrownGreer's work to ensure its ongoing costs are reasonable.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 12th day of November, 2023, in Oakland, California.

/s/ *Sarah R. London*
Sarah R. London

- 8 -

DECLARATION OF SARAH R. LONDON
ISO FEE COMMITTEE RECOMMENDATIONS
CASE NO. 19-md-02913-WHO

2818124.1