1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7                                                    Case No.  19-md-02913-WHO

   IN RE JUUL LABS, INC., MARKETING,
8  SALES PRACTICES, AND PRODUCTS
   LIABILITY LITIGATION                             **ORDER ON MOTION FOR
9                                                   ATTORNEY FEES RE JLI
                                                    SETTLEMENT OF CLASS CLAIMS**
10

11

12        On December 6, 2022, Class Plaintiffs, on behalf of themselves and the Settlement Class,

13  entered into a settlement with JUUL Labs, Inc. ("JLI") and related persons and entities (the "JLI

14  Settlement").[1]  I preliminarily approved the JLI Settlement on January 30, 2023, and granted final

15  approval on September 9, 2023, following a hearing where argument was heard from the parties

16  and objectors regarding whether to finally approve the JLI Settlement and plaintiffs' Motion for

17  Attorneys' Fees, Expenses, and Service Awards ("Motion").  Having now considered the Motion,

18  the objection to the fee request by Reilly Stephens, as well as the briefing submitted in connection

19  with the Fee Committee's Recommendations Re: Fee and Expense Payments from JLI

20  Settlements, I **GRANT** the Motion and **ORDER** as follows:

21  **I.        SUMMARY OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**

22        Class Counsel request the following payments from the $255 million Settlement Fund:

23        • Attorneys' fees in the amount of 30% of the Settlement Fund (or $76,500,000.00),

24           plus a proportionate amount of accrued interest;

25        • Expenses of  $4,100,000; and

26

27  ────────────────

28  [1] Unless otherwise defined, capitalized terms have the same meaning as in the Class Settlement
    Agreement.

United States District Court
Northern District of California

1          • Service awards to each of the proposed Settlement Class Representatives, ranging

2              from $5,000 to $33,000 per plaintiff and totaling $774,600.00.

3          Class Counsel seek these awards solely from the proceeds of the Settlement. They will file

4   separate motions seeking final approval of the Altria settlement and for the payment of attorneys'

5   fees and expenses from the Altria settlement. Those motions will be considered separately, but I

6   will take into account the fees and expenses awarded herein in ruling on the subsequent motions.

7   **II.     ATTORNEYS' FEES**

8          I GRANT plaintiffs' request for an award of 30% of the gross Settlement Fund.  In making

9   this award, I have considered – as explained in more detail below – the excellent result secured for

10  the Class that justifies an award higher than the Ninth Circuit's 25% benchmark, as well as an

11  appropriate lodestar cross-check.

12         At the start of these MDL proceedings and as part of my selection and appointment

13  process, I required the Co-Lead Plaintiffs' Counsel ("Co-Leads") and members of the Plaintiffs'

14  Steering Committee ("PSC") to address how they were going to ensure that all counsel working

15  within the MDL only billed reasonable and necessary hours for MDL work and accurately tracked

16  and reported their time.  Dkt. Nos. 229, 341.  Common Benefit Orders were entered to govern

17  what common benefit work and expenses could be covered by any eventual settlement or

18  judgment in the MDL cases.  Dkt. Nos. 352, 596, 1202, 2307.

19         Soon after the appointment of the Co-Leads and PSC, I appointed the Hon. (Ret.) Gail A.

20  Andler as a Common Benefit Special Master under Rule 53 of the Federal Rules of Civil

21  Procedure.  Judge Andler's duties included monitoring, auditing, conducting legal analysis and

22  advising Co-Leads on all matters relating to common benefit time, fees, expenses and

23  disbursements.  Dkt. No. 680.  The settlement process – for all the Class, personal injury

24  government entity, and tribal entity claims – was overseen and facilitated through the intensive

25  efforts of Thomas J. Perrelli, who I appointed as the Settlement Special Master for these MDL

26  proceedings.  Dkt. No. 564.

27         The review of the reasonableness of hours billed by attorneys working for the common

28  benefit in this MDL – including the hours that benefitted the litigation and eventual resolution of

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   the Class claims – has been thorough and consistent throughout this litigation.  As the Co-Lead

2   filings submitted in connection with this Motion and the filings submitted in the related Motion to

3   Approve the Fee Committee Recommendations (Dkt. No. 4152) demonstrate, the excellent result

4   in this case for the Class claims was achieved as the result of common benefit work necessarily

5   performed by numerous attorneys:  This included attorneys who primarily represented Class

6   plaintiffs and also attorneys who primarily represented personal injury plaintiffs and public entity

7   plaintiffs.  In approving the request made here – for 30% of the gross JLI Settlement Fund – I

8   necessarily consider the Fee Committee Recommendations as well as the reality that the work of

9   these differently-situated lawyers contributed to the litigation of the Class claims as well as the

10   other claims asserted against JLI throughout the MDL.

11   I have also considered the report of Professor Robert H. Klonoff, Dkt. No. 4056-2.  Reilly

12   Stephens objects to and moves to strike the Klonoff Report, arguing that Klonoff attempts to usurp

13   my role in determining the reasonableness of the fee request.  Dkt. No. 4063.  Those objections are

14   considered more thoroughly below, but the objection to the Klonoff Report is OVERRULED.  As

15   should be obvious, I am intimately familiar with the work that has been done by counsel within

16   this MDL and am well-situated to review the reasonableness of the hours billed and the results

17   achieved with respect to the resolution of the Class claims.

18   The claims against JLI were heavily litigated – through multiple rounds of motions to

19   dismiss, numerous and unusually complex informal and formal discovery disputes, class

20   certification, motions for summary judgment, and right up to a potential trial.[2] While some of the

21   discovery, summary judgment, and pre-trial issues did not directly concern the Class claims, in

22   large part the discovery, motions practice, and case management work was *common* work that

23   benefitted every case within the MDL, whether personal injury, government entity, tribal entity, or

24

25   [2] Taking in account all matters handled in the MDL, including Altria-specific discovery, there
were more than 33 million pages of documents produced by defendants and reviewed by plaintiffs;
26   more than 190 third-party subpoenas issued; more than 100 fact witness depositions; more than 50
generic or bellwether-specific experts who prepared reports and were deposed; dozens of highly
27   contested motions made or opposed; 24 bellwethers worked up through the close of discovery; one
bellwether (B.B.) taken to the eve of trial, and one bellwether (SFUSD) taken to the eve of
28   submission to the jury.

1    class.[3]   I need not and do not rely on Klonoff for my conclusion as to reasonableness of the time

2    billed.  Instead, I find Klonoff's analysis of the possible lodestar cross-checks and resulting

3    multiplier to be helpful.

4          Percentage of Fund:  This was an excellent result for the Class.  It recovered a substantial

5    amount as a result of their economic losses.  And the plaintiffs faced significant legal (*e.g.*,

6    potential preemption of claims, defendants' weighty attacks on plaintiffs' theories of economic

7    loss and common proof of damages) and practical risks (*e.g.*, potential insolvency of JLI,

8    regulatory directives remained in flux throughout).  In light of that, I find that an upward departure

9    to 30% of the JLI Settlement Fund is merited.

10         The skill of the attorneys representing the Class's interests – the Co-Leads and PSC

11   members – and the quality of their work has been superb.  Their payment was contingent on a

12   successful outcome.  They incurred millions of dollars in out-of-pocket expenses in order to

13   manage more than 26 million pages of documents produced by JLI and obtain expert opinions

14   regarding the JUUL product, the nature and impact of nicotine addiction, the marketing of JUUL,

15   the regulatory landscape impacting JUUL, and in particular here econometric models of economic

16   loss damages.  Plaintiffs' counsel undertook these tasks at great expense and produced high

17   quality work product while they faced the significant threat of bankruptcy by JLI and the

18   uncertainty of regulatory actions by the FDA.

19         While the resulting award is large, it is not inconsistent with similar awards in similarly

20   complex and risky cases.  Each of the relevant facts supports an upward adjustment.[4]

21   _____

22   [3] There was a government entity bellwether trial that commenced against the Altria defendants and
     settled shortly before the case went to the jury.  While that trial was against only Altria, the bulk of
23   the evidence admitted was the result of common work performed in the MDL regarding the JUUL
     product, JLI's conduct in bringing the product to the market, and JLI's knowledge and
24   representations about the product to the public and regulators.  This information was key to
     successful litigation and eventual settlement of the Class claims.

25   [4] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049-1050 (9th Cir. 2002). Objector Stephens
26   argues that the JLI Settlement is a "mega-fund" settlement and relies on empirical studies to
     suggest a 15% or 20% award is typical and more appropriate for this case.  Dkt. No. 4063 at 4-8.
27   However, while the size of the award here a function in part of the size of the Settlement, it is not
     simply a result of the number of class members.  It is also supported by the *Vizcaino* factors.  In
28   addition, as explained below, the award does not represent a "windfall" to counsel.

United States District Court
Northern District of California

United States District Court
Northern District of California

1          Lodestar Cross-Check:  A lodestar cross-check analysis supports the 30% award.  Given

2    the efficient and effective approach plaintiffs' counsel took in this MDL, where lawyers

3    representing plaintiffs with different types of claims worked collaboratively to advance the

4    common interests of all plaintiffs, calculating the appropriate lodestar to use for a cross-check is

5    more difficult.  Professor Klonoff's method of roughly calculating a lodestar cross-check is

6    helpful on this issue.  First, he takes 1/3 of the $199 million in time audited by Judge Andler

7    (based on the theory that 1/3 of the work was attributable to each main category of case within this

8    MDL; class, personal injury, and government entity), and further reduces the lodestar by 15

9    percent to account for the separate Altria settlement.  That calculation, based on reasonable

10   averaged hourly rates charged, yields a 1.36 multiplier.  Klonoff Report ¶ 87.[5]  That level of

11   multiplier is justified, as noted above, by the excellent results of the Settlement, the skill and

12   effectiveness of plaintiffs' counsel, the significant risks counsel faced, and the large expenses

13   counsel incurred.

14         This lodestar cross-check is meaningful, as the lodestar reflects hours reasonably spent and

15   reasonable hourly rates.  Objector Stephens argues that he was not able to contest the

16   reasonableness of the hours given the lack of detailed billing summaries provided by counsel.

17   Dkt. No. 4063 at 14-18.  However, the hours spent were audited first by a Co-Lead and then by

18   Judge Andler.  Judge Andler concluded that "the tasks, hours and expenses incurred were

19   appropriate, fair and reasonable and for the common benefit." *See* Declaration of Dena C. Sharp

20   (Dkt. No. 4056), Ex. 1 at 12.  I appreciate Judge Andler's fine work in this case, but I do not rely

21   exclusively on it.  I also rely on the reasonableness of those hours as supported by my first-hand

22   view of the motions, case management conferences, and other proceedings that took place before

23   me and before the judge overseeing discovery.  This case was complex – legally, factually, and as

24   a matter of case management – and the hours plaintiffs' counsel spent are reasonable.

25

26   ---

[5] Plaintiffs suggest other ways of calculating the resulting multiplier based on different lodestar
27   calculations.  *See* Mot. (Dkt. No. 4055) at 14-16).  However, I find that Klonoff's approach makes
the most sense considering how the Co-Leads and the PSC reasonably staffed and litigated the
28   three tracks of cases within this MDL and given the substantial common benefit work that
benefitted all of the tracks.

United States District Court
Northern District of California

1    Stephens also objects to the reasonableness of "exorbitant rates" counsel charged for

2    document review, when in Stephens' opinion, review should have been conducted by "less

3    expensive" staff attorneys.  Dkt. No. 4063 at 11-14.  Staff attorney rates approved in this District

4    routinely exceed $400/hour, materially similar to the averaged amount charged here.  *See* Reply at

5    37 (citing cases).  In addition, the Discovery Committee set up structures to ensure their two-tier

6    review operated efficiently and effectively in order to handle the 26 million pages of documents

7    produced by JLI.  *See* Sharp Decl. ¶ 49.  The other rates used by plaintiffs' counsel are also

8    facially reasonable.[6]

9    Plaintiffs' motion for an award of 30% of the gross JLI Settlement Fund is GRANTED.

10   **III.    EXPENSES**

11   Class Counsel requests the reimbursement of the out-of-pocket expenses of $4,100,000.  In

12   connection with the common benefit allocation, Class Counsel and the Fee Committee took the

13   position that the full amount requested, $4,100,000, reflects a fair accounting of the class-related

14   expenses incurred by the plaintiffs' attorneys and should be paid from the class settlement towards

15   the common benefit expenses in the case.

16   I find that the payment of $4,100,000 from the JLI Class Settlement Fund is reasonable in

17   light of the expenses incurred by counsel, the size of the Settlement, and the relative proportion of

18   the expenses that counsel expects to be borne by each plaintiff group as determined by the Fee

19   Committee and approved by me in a separate order. Class Counsel estimates that the expenses that

20   would have been incurred in the litigation would likely have exceeded $10 million if those claims

21   had been litigated independently instead of along with the personal injury, government entity and

22   tribal claims.  According to Class Counsel's estimates, costs related to experts who provided

23   opinions in connection with class certification (and who later prepared merits reports)—Dr.

24   Singer, Professor Chandler, Dr. Pratkanis, and Dr. Emery—were approximately $2,050,000. Costs

25

26   _____

27   [6] For example, 97% of partner hours, rates range from $275 – $1,200; for over 96.5% of senior
counsel hours, rates range from $475 – $1,000; for over 93.5% of associate hours, rates range from
$175 – $800; for over 92.5% of contract or staff attorney hours, rates range from $100 – $500; and

28   for over 88% of paralegal hours, rates range from $75 – $425.  Sharp Decl. ¶ 129; *see also id*. ¶
130 (citing cases approving those range of rates).

1    related to document hosting exceeded $1,450,000. And costs associated with deposition transcripts

2    and related materials exceeded $800,000. Sharp Decl. ¶ 131. Therefore, the class would have

3    incurred costs exceeding $4,100,000 based just on a portion of the total case costs, *i.e.,* those

4    associated with document hosting, depositions, and a subset of the experts who were central to the

5    class claims.  The requested expense reimbursement from the class Settlement Fund is

6    significantly lower than it otherwise would be absent the involvement of other plaintiff groups.

7    The class substantially benefits from the involvement of other plaintiff groups by spreading

8    litigation costs among the various types of Plaintiffs.[7]

9           Finally, as with the common benefit time, Judge Andler reviewed and audited the common

10   benefit expenses and  concluded that they were reasonably incurred. *See* Sharp. Decl., Ex. 1 at 12.

11   Plaintiffs' request for costs not to exceed $4,100,000 is GRANTED.

12   **IV.    SERVICE AWARDS**

13          Class Plaintiffs seek service awards for each of the 86 class representatives ranging from

14   $5,000 to $33,000,[8] depending on each class representative's involvement in the case, totaling

15   $774,600.[9] These awards are mostly higher than I usually grant.  But the contributions of these

16   plaintiffs was atypical.  The representatives receiving the lowest awards ($5,000-$5,600, a range

17   typical in this District for an average case) completed the Plaintiff Fact Sheets but also responded

18   to extensive written discovery regarding their use (often underage) of electronic nicotine devices

19   and their smoking history.  The representatives receiving awards of $7,000 - $10,000 additionally

20   joined the litigation in its earliest stages, completed an intrusive ESI collection interview and/or

21   forensic collection of their documents, including cell phones and social media accounts.   The

22   representatives receiving awards from $11,000 - $13,000 were deposed (again covering intrusive

United States District Court
Northern District of California

---

24   [7] The $4.1 million in expenses sought from the class is also less than a 2% cost assessment on the
25   Settlement Fund (or $5.1 million), which is the common benefit cost assessment paid by other
     Plaintiffs in the litigation.  Sharp Decl. ¶ 132; ECF 586 at 11.

26   [8] *See* Appendix A to the Sharp Declaration (chart showing each class representative's contribution
27   to the litigation).

28   [9] The notice provided to class members stated that Class Plaintiffs would apply for service awards
     not to exceed $1 million in total. The request here is lower.

1   topics like electronic nicotine device, tobacco, and drug use, and medical history) in addition to

2   providing the documents described above.  The representatives receiving award of $25,000 –

3   $33,000 did all of that and were subject to motion practice, produced medical records and

4   responded to additional interrogatories, sat for depositions (including multiple-hours of

5   preparation), were bellwether plaintiffs, and two (receiving $33,000) also had family members or

6   friends subject to depositions or other discovery.  *See* Appendix A to the Sharp Declaration.

7   These extensive contributions and their disclosure of intrusive and sensitive topics, not to mention

8   the high-profile of this case, justify these atypically high awards.

9          The requested service awards are also reasonable in the aggregate. The total service awards

10  requested here represent only 0.3% of the total settlement amount.  Plaintiff's motion for service

11  awards for each of the 86 class representatives is GRANTED.

## V.      CONCLUSION

13         For the reasons set forth above, the Court grants Class Counsel's motion and the following

14  awards:

15         • Attorneys' fees in the amount of 30% of the Settlement Fund ($76,500,000.00),

16            plus a proportionate amount of accrued interest;

17         • Expenses of  $4,100,000; and

18         • Service awards to each of the proposed Settlement Class Representatives, ranging

19            from $5,000 to $33,000 per plaintiff and totaling $774,600.00.

20         Class Counsel and the JLI Settlement Trust Trustee are directed to transmit any awarded

21  fees and expenses from the class settlement to the appropriate sub-trust accounts established for

22  MDL CMO 5 and 5(A) hold backs.

23         Co-Lead Counsel, Class Counsel and the JLI Settlement Trust Trustee are authorized to

24  hold back, in whole or in part, the payment of the portions of the fee and cost allocations reflecting

25  the Rule 23(h) class settlements awards until any appeals from the Rule 23(h) order are resolved.

26         **IT IS SO ORDERED.**

27  Dated: December 18, 2023



William H. Orrick
United States District Judge

28