[Submitting counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Class Actions | CASE NO. 19-md-02913-WHO<br><br>**CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**<u>MOTION HEARING</u>**<br><br>DATE: March 6, 2024<br>TIME: 2:00 PM<br>LOCATION: Courtroom 2<br><br>HON. WILLIAM H. ORRICK III |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ........................................... 3

    A.    The Litigation Against Altria ........................................................... 3

    B.    Terms of the Settlement ..................................................................... 4

    C.    Preliminary Approval and Notice to the Class .................................... 4

    D.    Class Response.................................................................................. 5

    E.    Settlement Administration Expenses ................................................. 6

III.   ARGUMENT ...................................................................................................... 7

    A.    The Class Settlement is Fair, Adequate, and Reasonable ................... 7

        1.    Rule 23 (e)(2)(A): Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class............................ 8

        2.    Rule 23 (e)(2)(B): The Class Settlement Was Negotiated at Arm's Length ............................................................................ 9

        3.    Rule 23 (e)(2)(C): The Cash Payments Provide Adequate Recovery to the Class................................................................ 9

        4.    Rule 23 (e)(2)(D): The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other................ 12

        5.    The Class Settlement Satisfies the Remaining Ninth Circuit Approval Factors............................................................ 14

        6.    The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members ....................... 16

    B.    The Court Should Certify the Settlement Class.................................. 18

IV.   CONCLUSION................................................................................................. 22

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012)................................................................7

*Allen v. Similasan Corp.*,
2017 WL 1346404 (S.D. Cal. Apr. 12, 2017) ....................................................19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...........................................................................................22

*Broomfield v. Craft Brew All., Inc.*,
2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .....................................................14

*Bruno v. Quten Research Inst., LLC*,
2013 WL 990495 (C.D. Cal. Mar. 13, 2013) .....................................................14

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)....................................................................8, 14, 15

*Cruz v. Sky Chefs, Inc.*,
2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ...................................................15

*De La Torre v. CashCall, Inc.*,
2017 WL 2670699 (N.D. Cal. June 21, 2017) ...................................................19

*Fitzhenry-Russell v. Coca-Cola Co.*,
2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ...................................................14

*Foster v. Adams & Assocs.*,
2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ...................................................19

*Free Range Content, Inc. v. Google, LLC*,
2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ..................................................17

*G. F. v. Contra Costa Cty.*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) .....................................................9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................................10, 15, 21

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom.*
*Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).........................8, 9, 10, 14

*In re Groupon, Inc.*,
2012 WL 13175871 (S.D. Cal. Sep. 28, 2012) ..................................................13

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

*In re Health S. Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) .................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019)...................................................................11, 21

*In re Juul Labs*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................3

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*
  2022 WL 2343268 (N.D. Cal. June 28, 2022) ......................13, 18, 19, 20, 21

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  533 F. Supp. 3d 858 (N.D. Cal. 2021) ............................................................3

*In re Nexus 6P Prod. Liab. Litig.*,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)................................................17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)........................................................................12

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)..........................................................................15

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016).................................................15

*Just Film v. Buono*,
  847 F.3d 1108 (9th Cir. 2017).......................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................15

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ..................................................................15

*Pettit v. Procter & Gamble Co.*,
  2017 WL 3310692 (N.D. Cal. Aug. 3, 2017)..................................................20

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................................................13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003).........................................................................21

*Thomas v. MagnaChip Semiconductor Corp.*,
  2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)......................................................................................21

iii

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................20, 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)...........................................................................................20

*Zepeda v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)..................................................................15

**Statutes**

28 U.S.C. § 1715.......................................................................................................................16

**Other Authorities**

*Newberg on Class Actions* § 12:18 (6th ed. 2023)....................................................................13

*Newberg on Class Actions* § 13.45 (6th ed. 2023)...................................................................23

**Rules**

Fed. R. Civ. P. 23.......................................................................................1, 8, 14, 16, 17, 18

Fed. R. Civ. P. 23(a)...............................................................................................................22

Fed. R. Civ. P. 23(b)........................................................................................................19, 22

Fed. R. Civ. P. 23(b)(3)................................................................................................16, 18, 19, 21

Fed. R. Civ. P. 23(b)(3)(D).....................................................................................................21

Fed. R. Civ. P. 23(c)(2)(B)................................................................................................16, 17

Fed. R. Civ. P. 23(e)..................................................................................................................9

Fed. R. Civ. P. 23(e)(1)...........................................................................................................16

Fed. R. Civ. P. 23(e)(2).........................................................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(C)...................................................................................................9, 14

Fed. R. Civ. P. 23(e)(2)(D).......................................................................................................9

Fed. R. Civ. P. 23(e)(3)..............................................................................................................8

Fed. R. Civ. P. 23(f)..................................................................................................................3

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

**PLEASE TAKE NOTICE THAT** on March 6, 2024 at 2:00 PM, or at such other date and time as the Court may set, in Courtroom 2 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs, on behalf of a proposed Settlement Class of all individuals who purchased, in the United States, a JUUL Product from a brick and mortar or online retailer on or before December 6, 2022, will and hereby do move the Court for an order and judgment granting final approval of the Altria Class Settlement, certifying the proposed Settlement Class for settlement purposes, and appointing Class Counsel and Class Plaintiffs to represent the Settlement Class.

A copy of Class Plaintiffs' [Proposed] Order Granting Motion for Final Approval of the Altria Class Settlement and Judgment is separately submitted with this Motion. Because the opt-out, objection, and claim submission deadlines are not until February 5, 2024, the [Proposed] Order attached to this motion has placeholders related to the number of opt-outs, objections, and claims. Class Plaintiffs will submit an updated [Proposed] Order with their reply brief.

Class Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Dena Sharp ("Sharp Decl."), the Declaration of Cameron Azari in Support of Final Approval ("Azari Decl.") (attached as Exhibit 3 to the Sharp Declaration), and the pleadings and papers on file in MDL No. 2913, and any other matter this Court may take notice of.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Class Plaintiffs previously settled their claims against JLI and other parties in December 2022 for $255 million. After those settlements, litigation against Altria continued,[1] including Class Plaintiffs' defense of the Court's class certification order on appeal and preparation of the bellwether case for trial. *See* Sharp Decl. at ¶¶ 11-32. The litigation against Altria culminated in a trial brought by San Francisco

---

[1] "Altria" refers to Defendants Altria Group, Inc., Altria Client Services LLC, Altria Enterprises, LLC, Altria Group Distribution Company, Philip Morris USA, Inc.

1

Unified School District ("SFUSD") that crystalized the strengths and weakness of the claims against Altria, including those brought by Class Plaintiffs. In particular, the Class, SFUSD, and other government entity plaintiffs brought the same RICO claims against Altria, which were presented at the SFUSD trial. After the plaintiff rested its case in the trial (in which Class Counsel served as co-lead trial counsel and core members of the trial team), Altria entered into a series of settlement agreements designed to resolve most claims in the MDL, including claims brought by Class Plaintiffs.

Under the Altria Class Settlement, the Settlement Class will receive $45,531,250.00 in exchange for a release of the class claims. *See* Altria Class Settlement Agreement, Dkt. No. 4082-2.[2] The Court preliminarily approved the Altria Class Settlement on September 7, 2023, and the Settlement Class was then provided with notice; and the deadline for submitting claims is approaching. Sharp Decl. at ¶¶ 33-36. Thus far, the response from the Settlement Class has been overwhelmingly positive, with an active claims process even in addition to the claims submitted in connection with the JLI Settlement, no objections to date, and a relatively small number of opt-outs from the class of millions. Class Plaintiffs now move for final approval of the class settlement with Altria.[3]

The Class settlement with Altria provides a significant and certain financial benefit to Settlement Class Members. It is the product of hard-fought litigation from the start, insights gained from the SFUSD pre-trial proceedings and trial, and extensive arm's-length negotiations among experienced lawyers who are familiar with the legal and factual issues in this case and have an acute awareness of the risks of trial and the ongoing appeal of the Court's class certification order (which was largely briefed at the time of the settlement). The Plan of Allocation, which mirrors the plan approved in connection with the JLI Settlement, and the terms of the Altria Class Settlement treat Settlement Class Members equitably relative to each other. Class Plaintiffs and Class Counsel believe the Altria Class Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and respectfully request that the Court grant final approval and certify the Settlement Class.

---

[2] Unless otherwise noted, docket citations are to the MDL docket.

[3] Capitalized terms are intended to have the same meaning as defined in the Altria Class Settlement Agreement and Plan of Allocation except as otherwise noted.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. The Litigation Against Altria

The background of the litigation through December 2022 has been extensively detailed in briefing and declarations submitted in connection with the JLI Class Settlement, *see, e.g.*, Dkt. Nos. 4054 (final approval motion), 4056 (Sharp Decl. in support of JLI final approval); thus, Class Plaintiffs do not repeat it here and instead highlight key components of the litigation pertaining specifically to Altria, both before and after the JLI Class Settlement.

The multiple rounds of motion to dismiss briefing included several motions that were separately filed by Altria. Dkt. Nos. 632, 1223. The Court granted Altria's motions in part and denied them in part. Of particular significance, the Court initially granted Altria's motion to dismiss Class Plaintiffs' RICO claims, but found that the allegations in the amended class complaint adequately stated a RICO claim against Altria. *See In re Juul Labs*, 497 F. Supp. 3d 552, 603, 611 (N.D. Cal. 2020); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 870-71 (N.D. Cal. 2021). The timing of Altria's involvement was a challenge for Class Plaintiffs, as Altria argued that even if it were found to have joined the alleged RICO enterprise, it was only after the damage had been done by JLI's conduct and the meteoric rise in popularity of the JUUL device. As the litigation proceeded through discovery, plaintiffs vigorously pursued discovery of Altria and responded to extensive requests for admission and contention interrogatories served by Altria on two Class Plaintiffs that were proposed representatives for claims against Altria. *See generally* Sharp JLI Decl., Dkt. No. 4056 ¶¶ 39-71.

In June 2022, the Court certified two classes—the Nationwide Class and the Nationwide Youth Class—asserting claims against Altria under RICO. Dkt. No. 3327. Altria (and other Defendants) filed a Rule 23(f) petition seeking Ninth Circuit review of the class certification order, which the Ninth Circuit granted on November 8, 2022. Ninth Circuit Case No. 22-16693, Dkt. No. 2. At the time of settlement, Altria had filed its opening brief, Class Plaintiffs had filed their answering brief, and the Ninth Circuit was scheduling the matter for oral argument. *Id.*, Dkt. Nos. 12, 22, and 39. The matter has been administratively stayed since the parties informed the Ninth Circuit of the settlement. *Id.*, Dkt. Nos. 42-44.

During the fall of 2022, both the B.B. personal injury case and the SFUSD government entity case were being prepared for trial. Sharp Decl. ¶¶ 16, 19. Both cases involved issues that overlapped with and were intertwined with the class claims—the addictiveness and health risks of JUUL Products, the marketing of JUUL to youth, and the liability of Altria—and Class Counsel was heavily involved in preparation for both trials. *Id*. ¶¶ 17-24. After the JLI settlement was announced in December 2022, leaving Altria as the remaining Defendant in the MDL, the SFUSD case proceeded to trial in April 2023. *Id*. ¶¶ 25-26. The pretrial proceedings—including summary judgment and motions *in limine*—resolved issues directly applicable to the class claims, such as preemption, the viability of a RICO claim against Altria, and key evidentiary issues. *Id*. ¶¶ 19-29. Class Counsel actively participated in all aspects of trial preparations and served as one of the four trial counsel during the SFUSD trial. *Id*. ¶¶ 17, 25, 27. After SFUSD rested its case-in-chief, Altria entered into separate settlements to resolve the class, personal injury, and government entity claims. *Id.* ¶ 28. The settlement negotiations with Altria were overseen, as they had been for years, by the Court-appointed Settlement Master, Thomas J. Perrelli. *See* ECF 564 (order appointing Settlement Master); Sharp Decl. at ¶¶ 30-32.

### B. Terms of the Settlement

The Altria Class Settlement provides for a substantial monetary recovery, includes an appropriately tailored release, and does not encumber other, separate claims that class members might have. Altria will make a $45.5 million cash payment, no portion of which is eligible to revert to Altria. In exchange, Class Members agree to release claims against Altria that concern "economic loss" related to "the purchase or use of any JUUL Product." Dkt. No. 4082-2 at 5. Class Members do *not* release any claims related to personal injuries or claims arising out of antitrust violations. *Id*. And the claims process is designed to complement, and not unnecessarily duplicate, the claims process for the JLI Class Settlement, reducing the burdens on Class Members and mitigating the costs that would otherwise have resulted from completely separate administrations of the two settlements.

### C. Preliminary Approval and Notice to the Class

On September 7, 2023, the Court preliminarily approved the Altria Class Settlement Agreement, found that it was likely to certify the Settlement Class, and appointed Epiq Systems, Inc. ("Epiq") as the Settlement Administrator. Dkt. No. 4130. Epiq also serves as the Settlement Administrator for the JLI

Settlement. Following the Court's order, Epiq updated the settlement website (www.JUULclassaction.com) established in connection with the JLI Settlement. In addition to existing JLI Settlement documents, Epiq added to the website: the long-form notice relating to the Altria Settlement (explaining the procedures for Settlement Class Members to submit claims, object, or exclude themselves), a contact information page that includes address and telephone numbers for the Class Settlement Administrator and Class Counsel, the Altria Class Settlement Agreement, the Altria Preliminary Approval Order, a form to opt-out of the Altria Settlement, and answers to frequently asked questions. Azari Decl. ¶ 16; *see also* Azari Declaration Regarding Altria Settlement Notice Plan Completion, Dkt. No. 4166 ¶ 12. The website also provides an online portal for the filing of claims. To reduce the burden on Settlement Class Members, any Class Member who submitted a claim in connection with the JLI Class Settlement will be eligible to also receive payment from the Altria Settlement Fund without submitting a new claim. The Class Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries in English and Spanish. Azari Decl. ¶ 16. Motion papers filed in connection with final approval of the Altria Class Settlement and Class Plaintiffs' application for Attorneys' Fees and Expenses from the Altria Settlement Fund will be placed on the settlement website once they are filed (which is before the opt out and objection deadline).

Notice of the Altria Class Settlement was provided by direct notice (1) via email to those Settlement Class Members for whom an email address was available; (2) via postcard mailed to those Settlement Class Members for whom a physical mailing address was available but an email address was not available; and (3) via email (or postcard) to individuals that previously filed a claim or opt-out request in connection with the JLI Class Settlement. *Id.*, ¶¶ 11-12. Unless the Settlement Class Member previously submitted a claim in connection with the JLI Class Settlement, the direct notices included a pre-populated claim form. Notice was also provided via widespread publication on relevant websites and social media platforms, which comprised approximately 409,315,597 impressions and targeted likely Settlement Class Members. *Id.*, ¶¶ 14-15.

### D. Class Response

Although the deadline for the submission of claims is not until February 5, 2024, the response from the class thus far has been positive. As of January 12, 2024, Epiq has received 7,288,999 claims

during the claims period for the Altria Class Settlement. Azari Decl. ¶ 19. Epiq is in the process of de-duplicating claims made by individuals who previously submitted a claim in connection with the JLI Class Settlement and evaluating the claims for indicia of potential fraud. *Id*. Even though these processes will significantly reduce the number of claims ultimately approved for payment, the volume of claims shows substantial interest in participating in the Altria Class Settlement, especially when considering that Class Members who wished to participate in the Altria Class Settlement did not need to submit a new claim if they already did so in connection with the JLI Class Settlement.

Objections and opt-out requests are also not due until February 5, 2024, but as of January 12, 2024, out of the many millions of Settlement Class Members, Epiq has received 179 opt out requests and zero objections. *Id*. ¶ 18. The low number of objections and opt-outs received to date also reflects positively on the Altria Class Settlement.

### E.     Settlement Administration Expenses

The large volume of claims—which is even higher than Class Counsel or Epiq anticipated receiving during both notice periods—reflects well on the Class Members' reactions to the Altria Settlement, but also increases the cost of administering the settlement. Through the end of December 2023, Eqiq has incurred $1,328,733.78 in costs related to administering the Altria Settlement, the vast majority of which is for processing the high volume of claims. Additionally, Epiq's invoices to date for administering the JLI settlement total $3,013,218.81. Epiq will continue to incur significant costs accepting claims related to the Altria Settlement, and then processing and analyzing the full universe of claims submitted during both the JLI Settlement and Altria Settlement notice periods. Class Counsel is mindful of and is carefully monitoring the expense associated with these efforts, which are critical to the responsible administration of the settlements to Eligible Claimants. Significant work will be needed, for example, to evaluate the indicia of fraud among the claims and analyze claims data to make informed decisions about which claims to accept and which to reject. While this work is costly, it ultimately

redounds to the benefit of Settlement Class members by winnowing out fraudulent claims, thus increasing the relative payout to each eligible claimant.[4]

Class Counsel has continued to receive weekly updates on claims submissions and costs incurred by Epiq and is working closely with the claims administrator to monitor and limit expenses where possible. Both Class Counsel and Epiq are cognizant of the fact that the Court has authorized the payment of up to $6,000,000 in Class Settlement Administrator expenses, and have been actively discussing ways to reduce costs throughout the process (for example, by lowering the per-claim processing charge given the large overall volume of claims). To the extent that, despite these efforts, it becomes clear that Epiq's total administration costs will exceed $6,000,000, Class Counsel will seek approval for additional payments to Epiq from the Court, but will not authorize additional payments to Epiq absent Court approval.

## III.    ARGUMENT

Final approval is a multi-step inquiry: first, the Court must determine that the settlement proposal is "fair, reasonable, and adequate;" second, it must determine whether notice has been provided in a manner consistent with Rule 23 and due process; and third, it must certify the proposed settlement class. *See* Fed. R. Civ. P. 23 (e)(2); *Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). The Altria Class Settlement satisfies each of these requirements.

### A.    The Class Settlement is Fair, Adequate, and Reasonable

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

---

[4] If, for example, the amount to be distributed to Settlement Class Members is $180 million and half of the claims are fraudulent, identifying and rejecting those claims will ultimately result in $90 million being paid to legitimate, Eligible Claimants that would otherwise have gone to likely fraudulent claimants.

including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23 (e)(2).[5]

As explained more fully below, the proposed Altria Class Settlement is fair, reasonable, and adequate. Class Counsel, as well as the other lawyers representing the Class Plaintiffs, are experienced in complex class actions litigations, actively litigated the case for almost four years, and reached an arms-length settlement under the supervision of a Settlement Master. The Altria Class Settlement provides significant recoveries for Settlement Class Members, particularly when balanced against the risks and expenses of continuing litigation. As the SFUSD trial showed, a class trial against Altria would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals that could result in class certification or any final judgment being overturned.

## 1. Rule 23 (e)(2)(A): Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

Class Plaintiffs and Class Counsel have vigorously prosecuted the class litigation through discovery, motion practice, mediation, and preparations for trial. In addition, Class Counsel was a core member of the trial team in the SFUSD case against Altria. Class Counsel thus "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983, at *6. Against this backdrop, in its Preliminary Approval Order the Court found that Class Plaintiffs and Class Counsel adequately represented the interests of the Settlement Class. Preliminary Approval Order at 7. The

---

[5] Before Rule 23 was amended in December 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, courts apply the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

notice program and Class Counsel's other work to advance the proposed settlement further confirm the Court's previous finding and support a finding that this element is satisfied.

### 2. Rule 23 (e)(2)(B): The Class Settlement Was Negotiated at Arm's Length

The Class settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced, Court-appointed Settlement Master, Thomas J. Perrelli. *See, e.g., G. F. v. Contra Costa Cty*., 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983 *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator). Class Counsel acted in the best interests of the Settlement Class, and there is no evidence to the contrary—for example, evidence of a compromise of the claims of the Settlement Class in exchange for higher fees—and there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

Before agreeing on the terms of the Altria Class Settlement, the parties engaged in extensive factual investigation, which included dozens of depositions, the production and review of millions of pages of documents, extensive written discovery, robust motion practice, and expert discovery. Sharp Decl. ¶¶ 4, 8-32; *see also* Sharp JLI Decl., Dkt. No. 4056 ¶¶ 10-61, 94-103. Class Counsel also spent considerable time preparing for trials in personal injury and government entity cases, and served as trial counsel in the SFUSD case. Many of the issues addressed in those preparations were directly relevant to the strengths and weaknesses of the class claims at trial. Sharp Decl. ¶¶ 16-29; *see also* Sharp JLI Decl. ¶¶ 104-16. The record was thus sufficiently developed to fully inform the parties and enable them to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

### 3. Rule 23 (e)(2)(C): The Cash Payments Provide Adequate Recovery to the Class

In the Rule 23 (e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23 (e)(2)(C)-(D) advisory committee's note to 2018

amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983, at *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Altria has agreed to pay over $45.5 million, which will be used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of Allocation.[6] Settlement Class Members who have submitted Eligible Claims will receive payments corresponding to their JUUL purchases and their *pro rata* share of all Eligible Purchases. While the fund is substantial standing alone, the amount of relief provided to the class is all the more reasonable relative to the risk of continued litigation and when considered alongside the $255 million recovered in the JLI Class Settlement.

### a) The Risks of Continuing Litigation

Continued litigation involved substantial risks that Altria might have prevailed on appeal, at summary judgment, or at trial, resulting in no recovery at all for Settlement Class Members. Altria's appeal of the Court's class certification order, for example, raised threshold issues regarding, among other things, Class Plaintiffs' damages model and the ability to sufficiently demonstrate class wide injury. Had Altria prevailed on any one of several issues in the appeal, Class Plaintiffs faced the risk that the Ninth Circuit would reverse or modify the Court's class certification decision which could effectively prevent any recovery by Class Members.

There were also substantial questions as to whether Class Plaintiffs would be able to prove Altria's liability. Both sides believed they had persuasive facts to support their positions, and there is limited precedent regarding Class Plaintiffs' theories. Altria would have attacked Class Plaintiffs' theories of injury and fraud at summary judgment. As the SFUSD trial showed, a class trial would have involved a clash of expert analysis as to whether Altria's conduct was unlawful, the methods of calculating damages, and ultimately what damages, if any, should be awarded. Altria may have been able to convince the jury that it should not be liable for Class Members' injuries because it never sold or marketed JUUL Products, and never owned a majority stake in JLI. Altria also had strong arguments that, because its conduct occurred late in the overall timeline and after JUUL's rise in popularity, it was either wholly unresponsible or the class period should be dramatically truncated, which would have

---

[6] After claims processing is complete, the Altria Settlement Fund will be combined with the JLI Settlement Fund and Settlement Class Members will receive a single payment for the two settlements.

significantly reduced the value of the Class's claims. And even if Class Plaintiffs succeeded at trial, appeals would undoubtedly have followed.

### b) Method of Distribution of Settlement Funds

The process for distributing funds is straightforward and readily accessible to Settlement Class Members. Class Members with Eligible Claims will be entitled to their *pro rata* share of the combined JLI and Altria Settlement proceeds. Plan of Allocation, Dkt. No. 4082-3 ¶¶ 2.4, 3.3, 3.4. While submitting a claim, Class Members are given a wide range of digital payment options to choose from and can also elect to have a paper check sent to them. Azari Preliminary Approval Decl., Dkt. No. 4082-16 ¶ 54. To the extent Class Members have questions about the claims submission process, Epiq has full-time call operators and the settlement website has an online FAQ to help resolve any Class Member questions. *Id.*, ¶ 51. The method of distribution therefore provides no impediments to getting money into the hands of Eligible Claimants.

### c) Attorneys' Fees and Expenses

The parties have reached no agreements regarding the amounts of attorneys' fees, expenses, and service awards to be paid. Sharp Decl., ¶ 37; *see, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569-70 (9th Cir. 2019) (en banc) (rejecting objection because counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees and expenses, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable. There is thus no aspect of the Altria Class Settlement Agreement regarding the payment of attorneys' fees and expenses that raises any concern about the reasonableness, fairness, or adequacy of the Class settlement.

### d) Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23 (e)(3)." Appendix A to the Altria Class Settlement Agreement contains the opt-out threshold at which Altria will have the option of terminating the settlement. Opt-out threshold agreements are not controversial and are typically kept confidential and not filed in the public record for practical reasons. *See*, *e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20,

2017); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving confidential treatment of opt-out threshold "for practical reasons"); *In re Health S. Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) (The "threshold number of opt outs required to trigger the [termination] provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

Altria has concurrently but separately agreed to resolve claims brought by individuals who asserted claims for personal injury and by government entities that asserted claims for public nuisance. Under the supervision of Special Master Perrelli, the amount of the Altria Class Settlement Fund was negotiated with co-lead counsel Dena Sharp serving as counsel for the proposed Settlement Class, and the other co-lead counsel representing the interests of personal injury and government entity plaintiffs. Sharp Decl. ¶ 31. Certain of the Class Plaintiffs did assert parallel personal injury claims, and remain eligible to share in the amounts allocated to such claims under the parallel personal injury settlement program. *See generally* Case Management Order No. 16 (Implementing JLI Settlement), Dkt. 3714. They will receive no favorable treatment relative to other Settlement Class Members, however.

### 4. Rule 23 (e)(2)(D): The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Settlement Class Members will automatically be entitled to receive payments under the Altria Class Settlement if they filed a claim in connection with the JLI Class Settlement. Those who did not previously submit a claim have been given an opportunity to do so and need only submit a simple claim form, and the form is prepopulated if they made purchases on JLI's website. Azari Preliminary Approval Decl., Dkt. No. 4082-16, ¶ 50; *see* 4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (6th ed. 2023) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer products sold over the counter"). Further, the claim process is no more onerous than would be required after trial.

The method for distributing funds to Eligible Claimants is also reasonable, and the Plan of Allocation here mirrors and continues the one that the Court approved in connection with the JLI Settlement. *See* Dkt. No. 4138 at 11-12 ("the Plan of Allocation is fair, reasonable, and adequate and is hereby approved"). "[A]n allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). Under the Plan of Allocation, all Settlement Class Members who submit valid claims will receive cash payments based on their *pro rata* allocation of the combined JLI and Altria Net Settlement Funds. Plan of Allocation, ¶¶ 3.3, 3.4. The Plan of Allocation provides higher payments for those who first purchased in the earlier years of the class period or when they were underage. *Id.*, ¶ 1.13; *see In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), Dkt. No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount based on the relative weakness of certain claims).

The larger payments for those who made their initial purchases earlier is consistent with the evidence about changes in relevant warnings over time, which led the Court to note in its class certification order that Defendants "will be free to argue at the appropriate points (on summary judgment, trial, post-trial) that a reasonable consumer who purchased after a certain date could not have been misled by its representations or omissions about its products given the other information in the market or given the addition of the 'black-box' nicotine warning on JUUL's packaging." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.* 2022 WL 2343268, at *30 (N.D. Cal. June 28, 2022) ("*Class Certification Order*"). The enhanced payments for those who began purchasing when underage is based on Class Plaintiffs' full refund theory of recovery as to their youth targeting claims, as opposed to the price premium damages model applicable to other claims. *See id.* at *17 (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly illegal). Further, it is rational to provide enhancements for all purchases by such persons, even after the warnings were augmented or the purchasers reached adulthood, because of the addictive nature of the JUUL Products.

Setting a cap on the recoveries by Eligible Claimants who lack proof of purchase, while allowing claims that are accompanied by proof of purchase not to be capped (unless their Class settlement payment would vastly exceed their potential damages), is also reasonable. The use of a cap for Eligible Claimants without proof of purchase facilitates a fair distribution. *See, e.g., In re Groupon, Inc.*, 2012 WL 13175871, at *6 (S.D. Cal. Sep. 28, 2012) (holding requirement of a voucher number or other proof of purchase serves "to ensure that money is fairly distributed for valid claim"). Such a cap is a common

feature of consumer class action settlements. *See, e.g., Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *30 (N.D. Cal. Feb. 5, 2020) (finally approving settlement with cap on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof of purchase, stating that such a claim process "would be no different than that required after trial"); *Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *2 (C.D. Cal. Mar. 13, 2013) (finally approving settlement with claims limited to $10.65 (*e.g.*, 3 bottles) without proof of purchase, with no cap on claims accompanied by a proof of purchase, for example a receipt or product packaging).

Settlement Class Members have been given the option to choose their preferred method of payment, including mailed check, direct deposit, PayPal, or prepaid MasterCard. Azari Preliminary Approval Decl., Dkt. No. 4082-16 ¶ 54. After an initial distribution, if there are substantial funds from uncashed payments, the remaining funds will, where economically rational, be redistributed to the Settlement Class Members who made claims and accepted their initial distribution payments. Plan of Allocation, ¶ 4.1. Only if residual funds remain thereafter might they be otherwise distributed, subject to the Court's approval. *Id.*, ¶ 4.2.

### 5. The Class Settlement Satisfies the Remaining Ninth Circuit Approval Factors

In addition to the framework of Rule 23 as amended in 2018, Courts "continu[e] to draw guidance from the Ninth Circuit's factors and relevant precedent," in evaluating a proposed class settlement. *Hefler*, 2018 WL 6619983, at *4; *Churchill,* 361 F.3d at 575 (courts should consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement").

Many of these factors, such as the strength of plaintiffs' case, the risk and duration of further litigation, and the amount offered, overlap with the Rule 23 (e)(2)(C) factors and are addressed above. The remainder favor final approval as well, as described below.

### a) The Response of Class Members Has Been Positive

As of January 12, 2024, out of millions of Settlement Class Members, there are 179 opt-outs and zero objections to the Altria settlement. Azari Decl., ¶ 18. In comparison, through that date, Settlement Class Members had submitted millions of claims (the process of evaluating these claims is ongoing). *See id.* ¶ 19. These figures represent a very positive response. *See Churchill,* 361 F.3d at 577 (noting a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

In their reply brief in support of final approval, Class Plaintiffs will submit updated opt-out, objection, and claims statistics, and will address the substance of any objections received by the February 5 deadline.

### b) Class Counsel Endorses the Settlement

In considering whether to grant final approval, courts afford significant weight to the opinions of experienced class counsel who are familiar with the litigation. *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citing *Hanlon*, 150 F.3d at 1026); *see also In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is experienced in complex class action litigation and settlement, including in complex consumer cases like this one. Sharp Decl., ¶ 4. Based on this experience, Class Counsel firmly believe that the Class settlement provides a positive outcome for Class Members and, in light of the uncertainties and risks in continued litigation, strongly recommends its approval.

### c) The Presence of a Governmental Participant

No governmental agency is involved in this settlement. The Attorney General of the United States and Attorneys General of each State were notified of the proposed Class settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. Azari Decl., ¶ 9. None sought to intervene in the litigation or raise any concerns or objections to the Settlement. *Id.* ¶ 10.

### 6. The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1). For classes certified under Rule 23 (b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). The Rule provides that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

Epiq has carried out a thorough notice campaign, consistent with the notice plan approved by the Court in connection with the JLI Class Settlement. Azari Decl. ¶ 20. Epiq provided individual notice to Settlement Class Members who purchased directly from JLI's website via email and physical postcards, or that submitted claims or opt-out requests in connection with the JLI Class Settlement. Azari Decl., ¶ 11. The 8,464,265 direct notices sent by Epiq, which included 8,312,007 emails and 152,258 Postcard Notices via USPS first class mail (where an email address was not available), provided a simplified manner for submitting a prepopulated claim form for those individuals that have not already submitted a claim. *Id.* For Postcard Notices that were returned undeliverable, as of January 12, 2024, Epiq re-mailed 14,554 Postcard Notices to any new address available through USPS information and to addresses Epiq obtained from a third-party address lookup service. *Id.*, ¶ 12. Class Members were also given the option to have a Long Form Notice and Claim Form mailed to them by requesting them via a toll-free telephone number or by mail. *Id.*, ¶ 13. As of January 12, 2024, Epiq had mailed 93 Long Form Notices and Claim Forms as a result of those requests. *Id.*

In addition to direct notice, Epiq also carried out a robust publication notice campaign. The program includes targeted banner advertising on a selected advertising network and social media, which

are targeted to Class Members. *Id.*, ¶¶ 14-15. The Digital Notices link directly to the Settlement website and include a graphic of a JUUL device to draw in Class Members' attention. The Digital Notices served at least 409,315,597 impressions. *Id.*, ¶ 15. The Digital Notices ran from October 9, 2023, through December 6, 2023. *Id.*, ¶ 14. As of January 12, 2024, there have been 9,861,900 unique visitor sessions to the Settlement website during the Altria notice period. *Id.*, ¶ 17.

As of January 12, 2024, Epiq has received 7,288,999 Claim Forms for the Altria Settlements. *Id.*, ¶ 19. Although this number will be reduced significantly as a result of weeding out fraudulent claims and removing duplicate claims submitted for both settlements, the number of claims constitutes a substantial response from Class Members. *See* Section III.A.5.a, above. The final claims rate will undoubtedly be at the higher end of claims rates in relation to other consumer class actions where products were largely sold indirectly through retail stores. The volume of claims is itself evidence that the Settlement Notice Plan is effective and successful.

The Settlement Notice represents the best notice practicable. In total, the Settlement Notice is estimated to have reached over 80% of Settlement Class Members. *Id.*, ¶ 6; *see, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *7 (N.D. Cal. Nov. 12, 2019) (finding notice that reached "approximately 77% of class members" satisfied Rule 23 and granting final approval); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." (brackets and internal quotation marks omitted)).

The Notice Plan was based on the successful notice plan for the JLI Settlement and was reviewed and analyzed during its implementation to ensure it met the requisite due process requirements. Azari Decl., ¶ 20. The notice documents are clear and concise, and directly apprise Settlement Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23 (c)(2)(B); *see* Azari Decl., ¶ 20. The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Federal Rule of Civil Procedure 23 (c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice. *Id.*

17

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
ALTRIA CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
CASE NO. 19-md-02913-WHO

As there is no alternative method of notice that would be practicable here or would be more likely to notify Class Members, the Notice Plan constitutes the best practicable notice to Class Members and complies with the requirements of due process.

**B.    The Court Should Certify the Settlement Class**

In the Preliminary Approval Order, the Court concluded that it was likely to certify the following Settlement Class:

> All individuals who purchased, in the United States, a JUUL [P]roduct from brick and mortar or online retailers before December 6, 2022.[7]

Dkt. No. 4130 at 3. The Court previously certified for litigation purposes a nearly identical nationwide class under RICO and a class of California JUUL purchasers under California law. *Class Certification Order*, 2022 WL 2343268 (certifying four classes[8]). The Court also previously certified for settlement purposes an identical nationwide class in granting final approval of the JLI Settlement. Dkt. No. 4138 at 4-7. All the factors that supported the Court's prior conclusions remain true, and the Settlement Class should be certified.

Because the Court already certified classes in this matter under Rule 23 (b)(3), "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P.

---

[7] Excluded from the Settlement Class are: (a) the judges in this MDL and any other judges that have presided over the litigation, including the coordinated proceeding captioned *JUUL Labs Product Cases*, Judicial Counsel Coordination Proceeding No. 5052, pending in the Superior Court of California, County of Los Angeles, Department 11, Settlement Master Thomas J. Perrelli, and their staff, and immediate family members; (b) Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; (c) Class Counsel and their employees; (d) any individuals who purchased JUUL products only secondarily from non-retailers; (e) all purchases for purposes of resale or distribution; and (f) all individuals who timely and properly excluded themselves from the Settlement Class.

[8] These were the **Nationwide Class** (All individuals who purchased, in the United States, a JUUL product); the **Nationwide Youth Class** (All individuals who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase); the **California Class** (All individuals who purchased, in California, a JUUL product); and the **California Youth Class** (All individuals who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase).

23, 2018 committee notes subdivision(e)(1). The Court must then determine whether the proposed modification alters the reasoning underlying its earlier decision to grant class certification pursuant to Rule 23(b)(3). *See, e.g., Allen v. Similasan Corp.*, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the court's previous class certification analysis). If it does not, the Court need not revisit the Rule 23(b) analysis and instead must only "consider[] whether the Settlement is fair, adequate, and reasonable." *De La Torre v. CashCall, Inc.*, 2017 WL 2670699, at *6 (N.D. Cal. June 21, 2017). Plaintiffs must identify and explain any differences between the certified class and the Settlement Class and between the claims in the operative complaint and the Released Claims. *See* District Guidelines ¶ 1(a), (b), (d).

The Settlement Class is co-extensive with the certified class, except that the claims of the Settlement Class include an end date for the Settlement Class and include purchases of JUUL accessories and products in addition to JUULpods and devices. The addition of an end date is appropriate and necessary for administration purposes. *See Foster v. Adams & Assocs.*, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (granting modification to the previously certified class to specify end date). Adding a limited number of ancillary products to the definition of JUUL Products likewise does not change the overall common nature of the claims at issue. As the Court concluded with respect to the JLI Settlement, "there is a sound basis for expanding the scope of the previously certified classes." Dkt. No. 4138 at 5.

Even if the Court were to go beyond the evaluation of these differences and conduct a full analysis of the propriety of certifying the Settlement Class, the bases for the Court's prior certification order are applicable to the certification of the Settlement Class. *See* Preliminary Approval Order, ECF 3779 at 3-7 (preliminarily finding that certification was likely, and that the requirements of numerosity, commonality, predominance, typicality, adequacy, and superiority were met) and JLI Final Approval Order, Dkt. No. 4138 at 5 (finding that an identical Settlement Class "meets the requirements of Rule 23").

**Rule 23 (a)(1): Numerosity**. Millions of JUUL Products were sold during the proposed class period. Courts in the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members. *See Class Certification Order*, 2022 WL 2343268 at *3. The Settlement Class easily

meets that threshold. *Id.*; *see also* JLI Final Approval Order, Dkt. No. 4138 at 5 (numerosity satisfied for an identical class).

**Rule 23 (a)(2): Commonality**. As before, "the class members have suffered the same injury and [] the class's claims depend on 'a common contention . . . of such a nature that it is capable of classwide resolution.'" *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *2 (N.D. Cal. Aug. 3, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 (2011)). The Court already determined that for the Nationwide Class, "common questions of fact include the existence of a RICO Enterprise and whether each defendant engaged in a scheme to defraud." *Class Certification Order*, 2022 WL 2343268, at *3. For the same reasons, common questions exist as to the claims of the Settlement Class. *See* JLI Final Approval Order, Dkt. No. 4138 at 5 (commonality satisfied for an identical class under RICO).

**Rule 23 (a)(3): Typicality**. Class Plaintiffs' and the Settlement Class's claims stem from the same practice or course of conduct and "seek to recover pursuant to the same legal theories," namely violations of RICO. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is typical of the class because it shares 'some common question of law and fact with class members' claims'") (quoting Newberg on Class Actions § 3:31 (5th ed.)). The Court already held that although "there are differences among the proposed class representatives and class members, and differences in the 'nicotine journey' of each, such as when they learned about nicotine in JUUL or other e-cigarette products, why they first used or continued to use JUUL or other products containing nicotine, and whether they are addicted to nicotine as a result of their use of JUUL or other nicotine products," no Class Plaintiff has a "unique injury or is subject to a unique defense that the other class members do not have or are not subject to that would make a particular proposed named plaintiff atypical and an inappropriate class representative." *Class Certification Order*, 2022 WL 2343268 at *4; *see also* Preliminary Approval Order, Dkt. No. 4130 at 5 (preliminarily finding typicality). Class Plaintiffs' claims are typical of the Settlement Class.

**Rule 23 (a)(4): Adequacy**. The Court has noted the vigorous efforts made by Class Plaintiffs and their counsel to prosecute this case and achieve a settlement. *See Class Certification Order*, 2022

WL 2343268 at *8 ("Based on their thorough and robust advocacy to date, I find that they are adequate."); *see also* Preliminary Approval Order, Dkt. No. 4130 at 5 (preliminarily finding adequacy). There is no conflict of interest between Class Plaintiffs and Class Members. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). And adequacy is presumed where a fair settlement was negotiated at arm's-length. 4 *Newberg on Class Actions, supra,* § 13.45. Class Plaintiffs have fairly and adequately protected the interests of the Settlement Class.

**Rule 23 (b)(3): Predominance**. Questions common to the Settlement Class predominate over questions affecting only individual Class Members. Predominance is met when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)).

The predominance inquiry is more straightforward in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, the same questions the Court identified in its class certification order predominate for the settled claims against Altria: was there a RICO enterprise, did the enterprise engage in a pattern of racketeering, and what is the appropriate measure of damages? *See Class Certification Order*, 2022 WL 2343268 at *9-11; *see also* Preliminary Approval Order, Dkt. No. 4130 at 4 (preliminarily finding predominance).

**Rule 23 (b)(3): Superiority**. Certification of the Settlement Class for settlement purposes will make substantial recoveries available to all purchasers at retail, a far more certain outcome than could be achieved by individual litigation. And when considering certification for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997); *see also* Preliminary Approval Order, Dkt. No. 4130 at 5 (preliminarily finding superiority).

***

In sum, the Settlement Class meets all relevant requirements of Rule 23 (a) and (b) and should be certified for purposes of settlement. In addition, as noted above, Class Plaintiffs and Class Counsel have adequately represented the interests of the Settlement Class throughout the course of the litigation and settlement, and the Court should appoint them to represent the Settlement Class.

## IV.    CONCLUSION

For the foregoing reasons, Class Plaintiffs and Class Counsel respectfully request that the Court enter the proposed order certifying the Settlement Class, appointing Dena Sharp of Girard Sharp LLP as Settlement Class Counsel, appointing Class Plaintiffs to represent the Settlement Class, and granting final approval of the Class settlement with Altria.

Dated:  January 16, 2024                          Respectfully submitted,


                                                  By: /s/ *Dena C. Sharp*

                                                  Dena C. Sharp
                                                  **GIRARD SHARP LLP**
                                                  601 California St., Suite 1400
                                                  San Francisco, CA 94108
                                                  Telephone: (415) 981-4800
                                                  dsharp@girardsharp.com

                                                  *Co-Lead Counsel and Proposed Settlement Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.


By: /s/ *Dena C. Sharp*
Dena C. Sharp