Dena C. Sharp
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com

*Co-Lead Counsel and Proposed*
*Settlement Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| | **DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES** |
| This Document Relates to: ALL CLASS ACTIONS | DATE: March 6, 2024 TIME: 2:00 P.M. LOCATION: Courtroom 2 HON. WILLIAM H. ORRICK III |

1

**TABLE OF CONTENTS**

I.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....................................... 1

II.     WORK PERFORMED FOR THE BENEFIT OF THE CLASS ..................................... 2

        A.      Defendants' Appeal of Class Certification .......................................... 4

        B.      Pretrial Submissions and Trial Preparations in the SFUSD Bellwether Case .................. 5

        C.      SFUSD Trial Against Altria............................................................ 8

        D.      Settlement ................................................................................. 9

        E.      Preliminary Approval and Administration of the JLI and Altria Settlements ................ 10

III.    LODESTAR CALCULATIONS ................................................................ 10

IV.     LITIGATION EXPENSES ....................................................................... 18

V.      SETTLEMENT ADMINSTRATION COSTS .......................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 19-md-02913-WHO

I, Dena C. Sharp, declare as follows:

1. I am a partner of Girard Sharp LLP and am admitted to practice in the Northern District of California. I am one of the Court-appointed Co-Lead Counsel in this matter and serve as Class Counsel.

2. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I submit this declaration in support of Class Plaintiffs' Motion for Final Approval of the Altria Class Action Settlement and Certification of Settlement Class and Class Counsel's Motion for Attorneys' Fees and Expenses.

3. In this declaration, I refer to my firm and myself as "Class Counsel." Lawyers from my firm and other firms that were primarily responsible for class-related issues are referred to as "Class Committee." And all lawyers who worked for the common benefit in this MDL are referred to as "MDL Lawyers."

## I. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

4. My firm has extensive experience leading multidistrict and complex cases and obtaining favorable results for the clients and classes we have represented. *See* Dkt. 102[1] at 2-3 (Girard Sharp Application for Appointment as Lead Counsel). As the Court knows, the class has already achieved a favorable settlement of $255 million in this case from Defendant JUUL Labs, Inc. ("JLI") and related persons and entities, which received final approval in September 2023. Dkt. 4138 (granting final approval). In light of that experience and the substantial work performed on this matter over the past several years, Class Counsel[2] is thoroughly familiar with the relative risks and rewards of settlement in relation to trial and post-judgment appeals, and is well-positioned to evaluate the benefits of settling this case with the remaining Altria Defendants rather than defending the class certification order on appeal and proceeding to trial, and whatever may come after that. *See id.* at 8 (finding that "Class Counsel, who have vigorously prosecuted this action through discovery, motion practice, mediation,

---

[1] All references to "ECF No." are to filings in this litigation on the MDL docket unless otherwise noted.

[2] The capitalized terms are intended to have the same meaning as defined in the Altria Class Settlement Agreement and Plan of Allocation except as otherwise noted.

1

and preparations for trial . . . possessed sufficient information to make an informed decision about settlement").

5.      Class Counsel believes the Altria Class Settlement is fair, reasonable, and adequate. The Altria Class Settlement represents a significant recovery for consumers of JUUL Products.

6.      Aside from providing substantial relief to Class Members, the Altria Class Settlement also avoids the considerable risks that proceeding through trial to verdict would have posed. In addition to establishing that Defendants fraudulently misrepresented and omitted the safety and addiction risks of JUUL Products, and targeted minors in the sale of such products, Class Plaintiffs would have had to convince the jury that the Altria Defendants participated in a RICO conspiracy using JLI as the enterprise. Class Plaintiffs would have had to overcome Altria's defenses at trial, including that JLI and the Individual Defendants, who previously settled, deserve all the blame for JLI's actions and the alleged harm. Class Plaintiffs also faced the possibility that class certification would be overturned on appeal, or that they would lose at summary judgment, or that even a favorable trial verdict would be appealed. Despite these risks, Class Counsel was able to secure a recovery for consumers who were harmed by Defendants' unlawful conduct, harms that were particularly acute as to youth who became addicted to nicotine products.

7.      While the Altria Class Settlement speaks for itself, the Court, through its close supervision of this litigation and rulings on key issues, is ultimately best positioned to assess the fairness, reasonableness, and adequacy of the Altria Class Settlement. Weighing the size of the recovery against the risk of a reversal on appeal or an unfavorable trial outcome, Class Counsel respectfully submits that the Altria Class Settlement is fair, reasonable, and adequate.

## II.      WORK PERFORMED FOR THE BENEFIT OF THE CLASS

8.      For four years, Class Counsel and the Class Committee actively litigated the Class claims against several leading defense firms who defended the case with skill and vigor. Over the course of the case, Class Counsel and the other Co-Lead Counsel appointed in the MDL led efforts on behalf of the Class to defeat Defendants' multiple motions to dismiss, pursue discovery of Defendants and non-parties, respond to Defendants' discovery of the class representatives, review over 33 million pages of documents produced by Defendants, participate in taking over 100 depositions of fact

2

witnesses, depose Defendants' expert witnesses, litigate key discovery disputes, prevail on class certification and related *Daubert* motions, defend the class certification order on appeal, coordinate and work with other MDL Lawyers to obtain favorable rulings on Defendants' motion for summary judgment and *Daubert* motions in personal injury and government entity suits asserting the same or overlapping claims based on the same evidence, and work with Special Master Perrelli toward potential resolution. The Class Committee and MDL Lawyers performed the requisite work despite the stress and strain of actively litigating a nationwide multidistrict case during the height of an unprecedented global pandemic. As Judge Corley observed in this case on December 11, 2020, "these are tough times . . . . Everything just takes longer and just seems so much harder right now." 12/11/2020 Hr'g Tr. at 17-18; *see also* Dkt. 1191.

9.      Each phase of the litigation required the expertise and expenditure of substantial time and resources by Class Counsel and the MDL Lawyers. My prior declaration in support of Final Approval of the JLI Class Action Settlement and Attorneys' Fees, Expenses, and Service Awards, Dkt. 4056, recounts in detail the efforts undertaken by Class Counsel, the Class Committee, and the MDL Lawyers in prosecuting this case from inception through the date of the settlement with JLI and related persons and entities. In particular, it described the work performed for the benefit of the class in each of the following stages of the litigation: Investigation and Complaint Filing; Second Round of Motions to Dismiss; Case Management; Discovery of Defendants; Third-Party Discovery; Document Review; Discovery and Privilege Disputes; Discovery of Class Plaintiffs; Class Certification; Defendants' 23(f) Petition and Briefing on Appeal; Experts; Summary Judgment in B.B., the First Personal Injury Bellwether; Submissions and Trial Preparations in Personal Injury and Government Entity Bellwether Cases; and Settlement with JLI. *See id.* at 2-38.

10.      The work detailed in my prior declaration is also relevant to the prosecution of claims against Altria, and is incorporated into this declaration by reference. Rather than repeat it, this declaration focuses on the post-JLI-settlement work performed for the benefit of the class that was not described in my prior declaration.

A.      **Defendants' Appeal of the Class Certification Order**

11.      On June 28, 2022, the Court granted Class Plaintiffs' motion to certify four classes—a Nationwide Purchaser Class, Nationwide Youth Class, California Purchaser Class, and California Youth Class—in a 94-page opinion. Dkt. 3327. Altria was a Defendant in the claims asserted by both of the nationwide classes. The Court found that "[t]he individual differences defendants identify or attempt to create do not preclude class certification. Some of the identified differences – for example, differences in advertisements that the named plaintiffs or class members may have seen over time or differences in the amount of JUUL product purchased – are simply not *material*. Given the legal standards applied to plaintiffs' claims, other identified differences – what an advertisement meant or portrayed to a specific named plaintiff or class member – are not material for purposes of class certification. Still more purported differences hinge on classic 'battles of the experts' that must be resolved by the trier of fact." *Id.*

12.      On July 12, 2022, Defendants filed with the Ninth Circuit Court of Appeals three petitions for immediate appeal of the Court's class certification opinion pursuant to Federal Rule of Civil Procedure 23(f). *See* Ninth Circuit Case Nos. 22-80061 (Altria's petition), 22-80062 (Individual Defendants' petition), and 22-80063 (JLI's petition). The Class opposed the petitions, but on November 8, 2022, the Ninth Circuit granted permission to appeal the class certification order. *See, e.g.*, *In re: J. D. v. Altria Group, Inc., et al*, Case No. 22-16693 (lead case), Dkt. 2. JLI and Director Defendants' appeals were subsequently stayed pending final approval of the JLI Settlement (and subsequently dismissed after final approval). *J. D. v. Hoyoung Huh, et al*, Case No. 22-16694, Dkt. 10 (Jan. 10, 2023) (order temporarily closing docket for administrative purposes); *J. D. v. Juul Labs Inc.*, 22-16695, Dkt. 10 (Jan. 10, 2023) (same). But Altria's appeal of the Class Certification Order continued after the JLI Settlement was reached.

13.      On February 1, 2023, Altria filed its 63-page opening brief. *In re: J. D. v. Altria Group, Inc., et al*, Case No. 22-16693, Dkt. 12. Altria primarily argued that the District Court should not have certified the Classes because Class Plaintiffs should have measured the harm caused only by the portions of the alleged fraud in which (according to Altria) Altria had first-hand involvement and because Class Members' reasons for purchasing JUUL Products were not identical. Altria emphasized

that it was not involved in 2015 or 2016 in the design, manufacturing, or labeling of JUUL products, or in the youth marketing and alleged other misconduct, and that it invested in JLI and provided limited retail services only after JUUL's historic rise in popularity. Altria also argued that Class Plaintiffs' theory of injury—*i.e.* the payment of a price premium regardless of whether class members were actually deceived—was not cognizable under Ninth Circuit law.

14. Class Counsel thoroughly researched the relevant case law and, on April 3, 2023, opposed Altria in a 65-page answering brief. *Id.*, Dkt. 22. The Class responded to Altria's factual and legal arguments, which required a command of the voluminous record—the Class filed a four-volume Supplemental Excerpts of Record in addition to the six-volume Excerpts filed by Altria. *Id.*, Dkts. 13, 23. Just as he led the teams responsible for drafting the briefing on the Class's motion for class certification and their response to Defendants' 23(f) petitions, Mr. Grzenczyk of Girard Sharp was primarily responsible for the Class's answering brief.

15. On May 4, 2023, the Ninth Circuit gave the parties notice that the appeal was being considered for oral argument in August 2023. Altria's appeal was pending when the parties announced the global settlement of the MDL, including the class claims, in May 2023, and has since been administratively closed pending the finalization of the settlement. *Id.*, Dkt. 42 (order temporarily closing docket for administrative purposes).

## B. Pretrial Submissions and Trial Preparations in the SFUSD Bellwether Case

16. Class Counsel also participated significantly in the pretrial briefing and trial preparations for two bellwethers in the MDL that ran parallel to the Class case. The first bellwether, a personal injury case, settled before trial as part of the JLI settlement. But trial preparations for the second bellwether, with the government entity plaintiff San Francisco Unified School District ("SFUSD"), had also begun before the JLI settlement was reached and continued afterwards, pivoting to proceeding with Altria as the sole defendant.

17. Early in the MDL, Co-Lead Counsel established a Trial Committee comprised of lawyers representing all types of plaintiffs, whose charge was to work together to develop the best evidence to support the various overlapping claims in the MDL at trial, as well as trial themes and strategy, and to prepare for and conduct focus groups, theme development, and jury exercises. Ms.

Sharp and Ms. Gliozzo (also of Girard Sharp) served on the Trial Committee and participated extensively in general trial preparations, as well as preparations for the bellwethers with imminent trial dates, including the B.B. case and the SFUSD case. Ms. Sharp served on the trial team and as one of four lead trial counsel for the SFUSD bellwether, in which Ms. Gliozzo was a central player as well. Because of the significant overlap in the SFUSD and class cases—in terms of the relevant evidence, fact and expert testimony, and legal claims asserted—the development and prosecution of the bellwether trials served to develop the Class's trial claims and provide insight into the strengths and weaknesses of those claims.

18.     The SFUSD trial team, with support from the Trial Committee as needed, developed an outline of the case-in-chief, the order of proof, and related trial materials. Lawyers were assigned to subject areas based on work they had done in the litigation to date. Trial team members also identified potential admissibility issues associated with plaintiffs' selected testimony and documents, and developed strategies to overcome those challenges. Members of the core trial team and other attorneys responsible for trial preparation conducted numerous strategy sessions during which the trial team decided how to allocate the time available for their case-in-chief, which attorneys would be responsible for questioning fact and expert witnesses, which fact witness deposition testimony would be designated and played for the jury, and what testimony and exhibits to include (and exclude), among other things.

19.     SFUSD trial preparations had been underway when the JLI settlement was announced in December 2022, with the parties filing a Joint Pretrial Statement on October 11, 2022. Dkt. 3591. After the JLI settlement, the SFUSD trial team and Trial Committee turned their attention to adjusting outlines and strategies to account for JLI and the Individual Defendants' absence from the trial as defendants, and how best to present their case against Altria alone. The critical strategic decisions the trial team made also served to develop the Class's trial claims following JLI and the Individual Defendants' settlement out of the case.

20.     The SFUSD trial team also had to adjust their deposition designations after JLI and the Individual Defendants settled. As before in the B.B. case, Ms. Gliozzo played a central role in preparing the depositions designations to be exchanged and submitted, applying the rulings of the Special Master and then the Court, and finalizing the video to be played at trial. Judge Larson had

submitted recommended rulings on the B.B. designations on a rolling basis between August and early October 2022, *see* Dkts. 3403, 3432, 3441, 3471, 3568 (Special Master's Report and Recommendations). After the JLI settlement, the SFUSD trial team had to recalibrate, and endeavored to convert these designations as needed to support SFUSD's claims against Altria alone, identifying testimony to add to and cut from the designations, asserting and responding to new objections regarding Altria's status as the only remaining defendant, and strategically deciding which of Judge Larson's recommended rulings to appeal to Judge Orrick. Nearly all of the testimony and designations that supported SFUSD's RICO claim would have been equally relevant in the Class's RICO claims against Altria.

21.     After adjusting materials as needed to address Altria's new status as the only trial defendant, the parties exchanged updated versions of their initial proposed pretrial materials—including exhibit lists, witness lists, jury instructions, deposition designations, appeals of the Special Master's recommended rulings on deposition designations, motions *in limine* ("MILs"), and verdict forms—throughout January and February 2023. *See* Dkt. 3743 (amended order setting agreed schedule for exchange of pretrial materials); 3783 (schedule for exchange of motions in limine). The parties conferred extensively and ultimately filed an updated joint pretrial statement for SFUSD on February 24, 2023. Dkt. 3817.

22.     The set of jury instructions submitted with the pretrial statement in SFUSD addressed important issues that impacted all types of plaintiffs in the MDL. Class Counsel provided input into the proposed instructions and responses to the voluminous instructions proposed by the Defendants. The final set of proposed instructions submitted to the Court for SFUSD included 144 agreed and contested instructions spanning over 340 pages. Dkt. 3817-1. Of those agreed and contested instructions, 50 addressed the RICO claim. *Id.*

23.     The parties also filed MILs addressing a wide range of issues likely to arise at trial, including MILs filed before the JLI settlement and new MILs afterwards, and conferred to stipulate to certain issues and previous rulings on MILs in the B.B. bellwether. The Trial Committee and the SFSUD trial team jointly prepared thirteen MILs, most of which were generally applicable to all cases in the MDL. Dkts. 3552; 3788. SFUSD responded to twenty-one MILs filed by Defendants before the

JLI settlement, Dkt. 3556, and four additional MILs filed by Altria alone after the JLI settlement, Dkt. 3790. In the B.B. bellwether, the parties had stipulated to exclude twenty-one topics and SFUSD and Altria agreed to largely the same exclusions in the SFUSD case. Dkt. 3783. Class Counsel participated in strategizing about which motions to bring and worked on drafting the motions. Ms. Sharp argued some of the motions before the Court, and Ms. Gliozzo was prepared to argue others. The Court ruled on each side's MILs. Dkts. 3838 (tentative rulings); 3846 (adopting and clarifying tentative rulings); 3911 (ruling on remaining MILs). The Court allowed key evidence supporting the RICO claims, and SFUSD and all the other MDL plaintiffs, including the Class, benefited from these rulings.

24. Several other key issues were litigated leading up to the SFUSD trial that benefited the Class. For example, at a pretrial hearing on April 5, 2023, the Court resolved a motion to quash a trial subpoena for one of the settled Individual Defendants, ruled on deposition designation objections, considered a motion to exclude evidence of the divestiture of Altria's interest in JLI, and ruled on key disputed jury instructions. Dkts. 3901, 3906 (resolving 3831, 3835, 3854, 3866). Many of these rulings were favorable to SFUSD (and the Class), and others benefited all plaintiffs nonetheless by providing clarity. At another pretrial hearing on April 19, 2023, the Court again resolved key pretrial issues, which were informative to both SFUSD and the Class. Dkts. 3923 (tentative rulings); 3931 (clarifying and adopting tentatives).

## C. SFUSD Trial Against Altria

25. Just as Ms. Sharp and Ms. Gliozzo committed significant time and energy to trial preparation, they expended substantial effort during the SFUSD trial in April and May 2023 as members of the trial team, with Ms. Sharp serving as one of the four lead trial counsel for SFUSD.

26. Jury selection occurred on April 21, 2023. Trial began on April 24, and SFUSD's case-in-chief continued until May 9, 2023. As members of the SFUSD trial team, Ms. Sharp and Ms. Gliozzo spent significant time on all aspects of trial preparation and strategizing, including conferring with co-counsel on trial strategy, developing trial themes, coordinating with defense counsel on logistical trial issues, drafting the direct and cross examinations of key witnesses, preparing SFUSD witnesses to testify live, and working collaboratively on the opening statement and closing arguments.

27.     All of the trial team's work to develop the RICO claims and present them to the jury benefited the Class, which would have presented the same claims had the Class case proceeded to trial. The deposition designations that Ms. Gliozzo shepherded played a central role in the presentation of SFUSD's case, with SFUSD ultimately presenting sixteen witnesses via video deposition at trial. Additionally, Ms. Sharp conducted the examinations of several witnesses during trial, including settling Defendant Nicholas Pritzker, whose conduct was central to the RICO claims; Dr. David Cutler, a health economist from Harvard; as well as two SFUSD administrators and two former SFUSD students.

28.     On May 10, 2023, after SFUSD had rested and before Altria put on its case, Co-Lead Counsel announced a global settlement with Altria that, combined with the earlier JLI settlement, would resolve the Class claims and nearly all other claims in the MDL.

29.     In addition to the SFUSD trial team's work directly helping to prepare the presentation of the Class's case at a subsequent trial, *all* work on the SFUSD trial, even relating to evidence and issues specific to SFUSD, benefitted all cases in the MDL, including the Class, because the strong presentation of SFUSD's case-in-chief at trial helped to facilitate the global settlement with Altria. The trial team presented a persuasive case on liability and more, and the settlement was announced the morning after plaintiffs rested.

**D.     Settlement**

30.     Early on in this case, the Court issued a Notice of Intent to Appoint Settlement Master Thomas J. Perrelli. Dkt. 523. No party opposed the appointment (*id.*), and Mr. Perrelli was appointed on May 18, 2020 (Dkt. 564). The parties began work with Mr. Perrelli and, as noted in case management statements starting in August 2020, the parties continued to "cooperate with his recommendations and directives" (Dkt. 904) through the announcement of the settlement with JLI, and thereafter (*see e.g.*, Dkt. 3677).

31.     The Altria Class Settlement now before the Court is the result of extensive discussions conducted under Mr. Perrelli's supervision. In those settlement negotiations, I served as counsel for the proposed Settlement Class, with the other Co-Lead Counsel representing the interests of personal injury and government entity plaintiffs.

9

32.     After the May 10, 2023, announcement of the global settlement, Class Counsel worked with counsel for Altria to draft the final Altria Class Settlement Agreement, which was executed on July 26, 2023.

**E.     Preliminary Approval and Administration of the JLI and Altria Settlements**

33.     Following the JLI settlement, Class Counsel moved for preliminary approval, creating a notice plan that informed Class members both of the JLI settlement and the pending litigation claims against Altria. Dkt. 3724. The Court granted preliminary approval of the JLI settlement on January 30, 2023. Dkt. 3779.

34.     Class Counsel coordinated with the Settlement Administrator to implement the JLI notice plan and administer the claims process. The Class moved for final approval and attorney's fees, expenses and service awards on June 23, 2023, and filed a reply responding to various objections to the JLI settlement on July 29, 2023. Dkts. 4054, 4055, 4901. The Court presided over a fairness hearing on August 9, 2023. On September 19, 2023, the Court granted final approval of the JLI settlement, Dkt. 4138, and on December 18, 2023, the Court granted the motion for attorney's fees from the JLI settlement. Dkt. 4179.

35.     Following the Altria settlement, Class Counsel again moved for preliminary approval, creating a notice plan that informed class members that all remaining claims had been resolved and proposing a claims process that would ensure that class members who already submitted claims in the JLI settlement did not need to take additional steps to participate in the Altria settlement. Dkt. 4082. The Court granted preliminary approval of the Altria settlement on September 7, 2023. Dkt. 4130.

36.     Class Counsel coordinated with the Settlement Administrator to implement the Altria notice plan and they continue to coordinate to administer the claims process.

**III.     LODESTAR CALCULATIONS**

37.     Class Counsel, the Class Committee, and MDL Lawyers have prosecuted this litigation solely on a contingent-fee basis and have at all times been at risk that they would not receive any compensation for prosecuting claims against the Defendants. While counsel devoted their time and resources to this matter, they have foregone the option of other opportunities for which they may have

DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 19-md-02913-WHO

been compensated. In connection with the Settlement or otherwise, the parties have reached no agreements regarding the amounts of attorneys' fees, expenses, and service awards to be paid.

38.     As detailed in my prior declaration in support of final approval of the JLI Settlement, through December 6, 2022 (the date of the JLI Class Settlement Agreement), all Plaintiffs' counsel had spent 363,344.10 hours prosecuting this case on behalf of the Class and other plaintiffs in the MDL, with a resulting lodestar of $199,336,544.05.

39.     After the December 6, 2022 announcement of the JLI settlement, Plaintiffs' counsel continued to litigate the case and submit their time for review by Judge Andler under the procedures described below. To date, time billed through September 2023 has been reviewed and submitted.

40.     From December 7, 2022 through September 30, 2023, all Plaintiffs' counsel spent 33,412.5additional hours prosecuting this case on behalf of the Class and other plaintiffs in the MDL, with a resulting lodestar of $21,707,563.70.

41.     The lodestar for Plaintiffs' counsel is the result of a multi-step review process. First, the time submissions were reviewed, generally by staff at Co-Lead and Liaison Counsel Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"). That initial screening sought to identify objective deficiencies in the time submissions, *i.e.*, lack of detail, block billing, etc. Second, detailed time reports were provided to Common Benefit Special Master Andler on a quarterly basis. Judge Andler then reviewed the time submission to determine whether the time submitted was for the common good. For each submission, Judge Andler found that "the tasks, hours and expenses incurred were appropriate, fair and reasonable and for the common benefit." Those reports, along with a cover letter providing additional information, were provided to the Court on a regular basis. Reports for time through January 2023 were attached to my prior declaration, *see* Dkt. 4056-1, and the report for time between February and September 2023 is attached as **Exhibit 1**.

42.     As the above overview of the litigation should make clear, the vast majority of work performed in the litigation by all Plaintiffs' counsel provided substantial benefits to the Class, and the time expended by Class Counsel and the Class Committee also benefitted non-class plaintiffs. The

DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 19-md-02913-WHO

work performed by all Plaintiffs' counsel (again, from December 7, 2022 to September 30, 2023) can be divided into the following categories:[3]

| Category | Code | Total Lodestar | Total Hours |
|---|---|---|---|
| Investigation/Factual Research | 1 | $26,653.00 | 51.0 |
| Attorney Meetings/Strategy | 2 | $607,956.40 | 793.3 |
| Leadership Case Management Duties (Co-Leads/PSC Only) | 3 | $651,868.20 | 798.3 |
| Case Management (Reports/Filings) | 3a | $18,911.30 | 35.8 |
| Case Management (Administration) | 3b | $769,199.00 | 1,535.4 |
| Court Appearances | 4 | $16,087.00 | 13.7 |
| Court Appearances (Preparation for Argument/Presentation) | 4a | $271,187.30 | 385.1 |
| Court Appearances (Argument/Presentation) | 4b | $68,962.00 | 86.1 |
| Court Appearances (Attendance at Direction of Court/Leadership) | 4c | $73,345.40 | 100.7 |
| Pleadings (Complaint/Answer) | 5 | $34,305.00 | 53.7 |
| Discovery (Defendants and Third Parties) | 6 | $1,833.00 | 3.1 |
| Discovery (Written Discovery – Propounding) | 6a | $7,056.00 | 14.1 |
| Discovery (Dispute – Analysis/Strategy) | 6b | $75,613.30 | 202.6 |
| Discovery (Dispute – Negotiation) | 6c | - | - |
| Discovery (Dispute – Lead Negotiation) | 6d | $407.50 | 0.5 |
| Discovery (Third-Party) | 6e | $1,233.00 | 2.3 |
| Discovery (Third-Party – Lead (Negotiation/Compliance)) | 6f | - | - |
| Discovery (Plaintiff Discovery - Responsive) | 7 | $46,689.90 | 86.0 |
| Document Review | 8 | $2,299,826.60 | 3,700.2 |
| Legal Research/Memoranda | 9 | $189,476.00 | 378.9 |
| Scientific Research | 10 | $21,638.50 | 24.1 |
| Motions/Briefs | 11 | $3,461.00 | 3.4 |
| Motions/Briefs (Lead Author) | 11a | $229,712.50 | 320.8 |
| Motions/Briefs (Other) | 11b | $893,982.60 | 1,322.4 |
| Fact Depositions | 12 | $3,197.50 | 5.8 |
| Fact Depositions (Notice/Scheduling) | 12a | $7,811.00 | 19.1 |
| Fact Depositions (Preparation) | 12b | $121,700.00 | 244.9 |
| Fact Depositions (Questioning) | 12c | $2,790.00 | 6.2 |

[3] For many categories, much of the time is divided into sub-categories (*i.e.*, codes 6(a) – 6(f)). Because substantial work was performed prior to the creation of the sub-categories, for certain categories a significant amount of time appears in the broader, catch-all category (*i.e.*, code 6).

| Fact Depositions (Defending) | 12d | $23,620.00 | 49.4 |
|---|---|---|---|
| Fact Depositions (Attending at the Direction of Leadership) | 12e | $14,300.00 | 33.3 |
| Class Certification/Notice | 13 | $7,159.00 | 9.2 |
| Experts/Consultants | 14 | $55.00 | 0.1 |
| Experts/Consultants (Administrative) | 14a | $211,853.90 | 364.8 |
| Experts/Consultants (Lead Deposition Preparation) | 14b | $14,542.30 | 16.3 |
| Experts/Consultants (Deposition Preparation) | 14c | $4,508.00 | 9.1 |
| Experts/Consultants (Defending Deposition) | 14d | $895.00 | 1.0 |
| Experts/Consultants (Taking Deposition) | 14e | $1,750.00 | 3.5 |
| Experts/Consultants (Attending Deposition at the Direction of Leadership) | 14f | $2,440.50 | 4.1 |
| Experts/Consultants (Preparation of Reports) | 14g | $249,392.60 | 313.0 |
| Settlement | 15 | $146,740.00 | 158.1 |
| Settlement/Mediation | 15a | $1,230,917.80 | 1,708.5 |
| Settlement Administration | 15b | $901,222.60 | 1,273.7 |
| Bellwether Selection | 16 | $28,125.40 | 36.6 |
| Trial Preparation (Prior to Pretrial Conference) | 17 | $3,875,881.20 | 5,294.6 |
| Trial | 18 | $1,253,442.00 | 1,634.5 |
| Bellwether Trial (Lead Counsel) | 18a | $224,428.00 | 253.1 |
| Bellwether Trial (Oral Argument) | 18b | $9,938.60 | 14.2 |
| Bellwether Trial (Attend at the Direction of Lead Counsel) | 18c | $687,870.30 | 1,005.7 |
| Bellwether Trial (Presentation of Evidence/Cross-Examination) | 18d | $143,286.10 | 197.0 |
| Bellwether Trial (Jury Selection) | 18e | $100,033.50 | 129.5 |
| Bellwether Trial (Administrative) | 18f | $4,546,059.40 | 8,480.2 |
| Bellwether Trial (Lead Negotiations) | 18g | $8,027.50 | 10.6 |
| Bellwether Trial (Witness Preparation) | 18h | $1,350,036.00 | 1,918.7 |
| Appeal | 19 | $155,388.50 | 195.5 |
| Client Communications | 20 | $31,442.40 | 57.7 |
| Miscellaneous | 21 | $37,165.30 | 50.5 |
| Internal Presentation - Strategy/Evidence/ Analysis (Lead – Presentation) | 22a | - | - |
| Internal Presentation - Strategy/Evidence/ Analysis (Preparation) | 22b | $2,368.40 | 3.1 |

43.     That the categories with the most hours are trial work, trial preparation, document review, settlement, case management and motions/briefs is not surprising given that the bulk of the

13

DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 19-md-02913-WHO

work in the December 2022 – September 2023 time frame was spent preparing for trial against Altria, trying the case, and briefing and administering both the JLI and Altria settlements.

44.     Class Counsel acknowledges that a portion of the reported time was spent on matters that predominantly benefitted personal injury or government entity plaintiffs more directly than the Class Plaintiffs. Other portions of the time (litigating the class certification appeal, for example) most directly benefitted Class Plaintiffs, as discussed above. Given the interrelated nature of the work performed on behalf of and by various plaintiff groups, in my view there is no reliable, sufficiently precise method to isolate the hours expended for the benefit of the Class specifically, or for allocating the hours spent on particular tasks to each plaintiff group based on the extent to which that task benefitted the various groups. Having analyzed the time records and data closely, my Co-Lead Counsel and I have concluded that any attempt to do so would be unreliable and subjective, and would lead to more questions than answers. Given the interrelated nature of the claims and overlapping work that needed to be performed for the successful prosecution of those claims, in general the work performed in this litigation was for the common benefit of each plaintiff group. The overall progress of the litigation—including preparations for trial—produced the necessary pressure that resulted in a global settlement of all claims against Altria. With that said, analyzing the time spent by reference to a variety of available metrics confirms that the requested fee award of $13,659,375.00 is proportional to, and supported by, the time spent to achieve that result.

45.     The work performed after the announcement of the JLI settlement includes Class Counsel's time briefing their motion for Attorney's Fees and Expenses from the JLI settlement and responding to an objection to the fee request. To ensure that the lodestar presented in connection with the Altria Fee Application is not based on hours spent pursuing attorneys' fees under Rule 23(h), Class Counsel has identified and excluded from the lodestar calculations below individual time entries reflecting work performed in support of the JLI Fee Motion. The excluded fee time totals 710.9 hours resulting in a $588,762.50 lodestar. This excluded fee time is overinclusive, as it is difficult to precisely isolate hours spent on such work—in particular, time spent on the Class's prior fee motion overlapped with time spent briefing the Class's final approval motion, as both motions were filed concurrently and both were supported by my earlier declaration. For example, nearly two-thirds of the time in the

14

categories for briefing and legal research in May, June and July 2023 (when final approval briefing was drafted and submitted) is excluded here. The total time after December 6, 2022, excluding fee time, is 32,701.6 hours resulting in a $21,122,551.80 lodestar.

46.     Various conservative metrics for evaluating the time spent in this litigation are provided below. Metrics for time post-dating the JLI Settlement are based on time incurred between December 7, 2022, and September 30, 2023 (time spent after September 2023 was not included because it has not been reviewed by Judge Andler), which was *not* included in the analysis in support of the fee application from the JLI settlement. Each metric exclude the hours spent pursuing attorneys' fees under Rule 23(h), as described above.

47.     *Total Altria-specific Class Lodestar*: $11,022,954.79 (1.24 multiplier applicable to Altria fee request). Under the approach taken by Professor Klonoff, the lodestar allocated to the Class is the total lodestar for the MDL divided by three, in recognition of the fact that there are three primary plaintiff groups. Professor Klonoff's declaration in support of the requested fee award is attached as **Exhibit 2**. *See also* Klonoff Declaration in Support of JLI Fee Motion, Dkt. 4056-2 at 53. To isolate the portion of the Class-specific lodestar attributable to the litigation against Altria, Professor Klonoff then further reduces the lodestar here by 85%, because the JLI Settlement represents 85% of the combined value of the Class Settlements and Altria represents 15%. The total lodestar from inception is $220,459,095.85; the Class-specific one third is $73,486,365.28, and after an 85% reduction, the Altria-specific Class lodestar is $11,022,954.79. Under this approach, the requested fee amounts to a 1.24 multiplier.[4]

48.     *Cumulative Lodestar for Combined Class Settlements*: $73,486,365.28 (1.23 multiplier applicable to combined class fees awarded on JLI settlement and requested on Altria settlement). The total lodestar from the inception of the case, excluding time spent on fee applications under Rule 23(h), is $220,459,095.85. As noted above, Professor Klonoff's approach to the Class-specific portion divides

---

[4] This approach, taken by Professor Klonoff, is particularly conservative, because it reduces by 85% the class lodestar from both before and after the JLI Settlement, despite that the time billed after December 6, 2022, includes litigation against Altria only. Alternatively, applying the 85% reduction to only the time billed from inception to December 6, 2022 (which included litigation against both JLI and Altria) would yield an Altria-specific class lodestar of $17 million, with a 0.80 multiplier.

the lodestar by three, in recognition of the fact that there are three primary plaintiff groups, yielding $73,486,365.28. The combined JLI and Altria settlements total $300,531,250.00. The Court previously awarded $76.5 million in attorneys' fees from the JLI Settlement, and Class Counsel seek 30% ($13.6 million) in fees from the Altria settlement, which (if granted) would yield a total fee of $90,159,375.00. The requested $90 million fee from the combined settlements would, by Professor Klonoff's analysis, result in a 1.23 multiplier on the cumulative Class lodestar.

49.    *Total Lodestar Post-Dating the JLI Settlement*: $21,122,551.80 (0.65 multiplier applicable to Altria fee request). In their motion for attorneys' fees based on the JLI Class Settlement, the lodestar reported by Class Counsel did not include any time after the December 6, 2022, settlement date with JLI. The vast majority of the time spent by the MDL lawyers after December 6, 2022, furthered the common interests of all plaintiffs, including the Class Plaintiffs, in prosecuting the claims against Altria. The requested $13,659,375.00 fee from the Altria Class Settlement Fund would be a 0.65 multiplier on that time, without reference to any of the time incurred before the JLI settlement.

50.    *Altria Trial and Appeal Lodestar*: $12,353,290.70 (1.11 multiplier applicable to Altria fee request). After the JLI settlement, the time that most directly furthered the interests of the Class's case against Altria was time spent defending the Class Certification order on appeal, preparing for trial against Altria, and trying the SFUSD case. In the time after December 6, 2022, the 19,133.6 total hours billed in categories 17, 18, 18a-h, and 19 capture this work and only this work, resulting in a $12.3 million lodestar. The requested $13,659,375.00 fee from the Altria Class Settlement Fund would be a 1.11 multiplier on that time, without reference to any other work done after December 6, 2022, or any of the time incurred before the JLI settlement.

51.    Plaintiffs' counsels' lodestar is also based on billing rates commonly utilized in this District. The following summarizes the range of billing rates for each type of timekeeper, for all the time billed from the inception of the case:

- For over 97.1% of partner hours, rates range from $275 – $1,200.

- For over 95.5% of senior counsel hours, rates range from $325 – $1,000.

- For over 94.1% of associate hours, rates range from $175 – $800.

- For over 90.8% of contract or staff attorney hours, rates range from $100 – $500.

16

1     • For over 84.8% of paralegal hours, rates range from $50 – $425.

2   Capping the hourly rates that exceed the above ranges (*i.e.*, capping all partner rates at $1,200 and all

3   paralegal rates at $425) has a minimal effect on the lodestar, reducing the post-JLI settlement lodestar by

4   1.6% (or $338,725.70), and reducing the cumulative lodestar from inception by 1.2%. In the Court's

5   order granting Class Counsel's fee motion for the JLI settlement, it found that these same hourly billing

6   rates were reasonable. Dkt. 4179 at 5.

7         52.     The billing rates are also similar to the rates that have previously been approved for

8   MDL Lawyers. Below are examples of cases where courts have awarded fees based on the then-current

9   rates of Co-Lead Counsel and the Class Committee:

10        • Girard Sharp: *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal.
11          May 25, 2023); *In re Capacitors Antitrust Litig.*, 2020 WL 6813220, at *4 (N.D. Cal.
           Sept. 15, 2020), *report and recommendation adopted*, 2020 WL 6544472 (N.D. Cal.
12          Nov. 7, 2020); *In re Nexus 6P Products Liab. Litig.*, No. 17-cv-02185-BLF, Dkt. 225
           (N.D. Cal. Nov. 12, 2019); *Weeks v. Google LLC*, No. 18-cv-00801, Dkt. 184 (N.D.
13          Cal. Aug. 30, 2019); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D.
           Cal. Sept. 20, 2018).
14

15        • Lieff Cabraser: *Gutierrez v. Amplify Energy Corp.*, No. 21-01628, Dkt. 726 at 11-13
           (C.D. Cal. April 24, 2023); *Cottle v. Plaid Inc.*, 2022 WL 2829882, at *11 (N.D.
16          Cal., July 20, 2022); *Pulmonary Assocs. of Charleston PLLC v. Greenway Health,
           LLC*, No. 19-167, Dkt. 137 at 5-8 (N.D. Ga., Dec. 2, 2021).
17

18        • Keller Rohrback: *Rollins v. Dignity Health.*, 2022 WL 20184568, at *6 (N.D. Cal.
           July 15, 2022); *Southern Cal. Gas Leak Cases*, Coord. Proc. No. 4861 (Cal. Super.
19          Ct. Apr. 29, 2022); *Ryder v. Wells Fargo Bank*, N.A., 2022 WL 223570, at *3 (S.D.
           Ohio Jan. 25, 2022); *Stringer v. Nissan N. Am., Inc.*, No. 21-cv-00099, Dkt. 126
20          (M.D. Tenn. Mar. 23, 2022); *Beach v. JPMorgan Chase Bank*, No. 17-cv-563, Dkt.
           232 (S.D.N.Y. October 7, 2020); *Holcomb v. Hospital Sisters Health Sys.*, No. 16-
21          441 (C.D. Ill. Feb. 25, 2019).
22

23        • Weitz & Luxenberg: *Copley v. Bactolac Pharm., Inc.*, 2023 WL 2470683, at *12
           (E.D.N.Y. Mar. 13, 2023); *Baker v. Saint-Gobain Performance Plastics Corp.*, 2022
24          WL 1025185, at *8-9 (N.D.N.Y. Feb. 4, 2022).
25        • Berger & Montague: *In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454,
           *20 (E.D. Pa. July 17, 2018); *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338,
26          *10 (E.D. Pa. Dec. 9, 2016); *Howell v. Checkr, Inc.*, No. 3:17-cv-04305-SK, Dkt. 82
           (N.D. Cal. Dec. 13, 2018); *Douglas v. DHI Group, Inc.*, No. 2018-1-CV-331732,
27          Order (Santa Clara Cnty., Cal. Super. Ct. Aug. 6, 2019); *Lee v. The Hertz Corp.*, No.
           CGC-15-547520, Order (San Fran. Cnty., Cal Super. Ct. Aug. 30, 2019).
28

- Gutride Safier: *Taylor v. Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069, at *25 (N.D. Cal. Dec. 7, 2021); *In re The Hertz Corporation, et al.*, Case No. 20-bk-11247-MFW, Dkt. 178 (Bankr. Del.); *McArdle v. AT&T Mobility LLC, et al.*, Case No. CV-09-01117, Dkt. 409 (N.D. Cal.); *Carlotti v. Asus Computer International, Inc.*, Case No. 18-cv-03369-DMR, Dkt. 86 (N.D. Cal.); *Fitzhenry-Russell v. The Coca-Cola Company*, Case No. 5:17-cv-00603-EJD, Dkt. 95 (N.D. Cal.); *In re Arctic Sentinel, Inc., et al.*, Case No. 15-12465, Dkt. 1331 (Bankr. Del.); *Fitzhenry-Russell et al. v. Dr Pepper Snapple Group, Inc. et al.* 5:17-cv-00564, Dkt. 350 (N.D. Cal.); *Pettit et al. v. Procter & Gamble Co.*, Case No. 3:15-cv-02150-RS, Dkt. 135 (N.D. Cal.); *Koller et al. v. Med Foods, Inc., et al.*, Case No. 3:14-CV-2400-RS, Dkt. 169 (N.D. Cal.).

- Tycko & Zavarei: *Mitchell v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal. Oct. 28, 2022), Dkt. 305; *Kumar v. Salov North America Corp.*, 2017 WL 2902898 (N.D. Cal. July 7, 2017); *Stathakos v. Columbia Sportswear Co.*, 2018 WL 1710075, at *6 (N.D. Cal. Apr. 9, 2018); *Meta v. Target Corp., et al.*, No. 14-cv-0832 (N.D. Ohio Aug. 7, 2018), Dkt. 179; *In re Think Finance, LLC, et al.*, No. 17-bk-33964 (Bankr. N.D. Tex.); *Brown v. Transurban USA, Inc.*, 2016 WL 6909683 (E.D. Va. Sept. 29, 2016); *Small v. BOKF, N.A.*, No. 1:13-cv-01125-REB-MJW (D. Colo.); *Soule v. Hilton Worldwide, Inc.*, 2015 WL 12827769 (D. Haw. Aug. 25, 2015); *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12 (D.D.C. 2014).

## IV.   LITIGATION EXPENSES

53.     Class Counsel has reviewed the litigation costs incurred and believe that payment of $1,000,000 in costs from the Altria Class Settlement Fund is fair and reasonable. In its order granting Class Counsel's fee motion for the JLI settlement, the Court awarded $4.1 million in expenses from the JLI settlement and acknowledged that "Class Counsel estimates that the expenses that would have been incurred in the litigation would likely have exceeded $10 million if those claims had been litigated independently instead of along with the personal injury, government entity and tribal claims." Dkt. 4179 at 6. The additional $1,000,000 requested from the Altria settlement would still represent a savings of millions on costs that the Class would have incurred had it proceeded independently. Additional costs in just the same categories cited by the Court in support of the JLI expense award, *see* Dkt. 4179 at 6-7, alone justify the additional expense award requested here. For example, since the JLI expense request was submitted, plaintiffs have incurred over $188,000 in additional document hosting expenses. Regarding expenses related to depositions, plaintiffs have incurred over $1,700,000 in expenses that were not included in the JLI expense request, such as additional costs for deposition transcripts, service of subpoenas, fees for Special Master Judge Larson's services resolving disputes

during depositions and ruling on objections in deposition designations, expenses for Nextpoint, a technology platform used to prepare, exchange, and review designations, and expenses for technicians to cut the deposition video corresponding to designations as plaintiffs revised and refined their cuts. The $1.7 million figure does not include the time spent by trial technicians to finalize and present video designations at the SFUSD trial. Deposition costs were particularly high because many key witnesses, particularly ones relevant to Altria, were outside the subpoena range of the Court, and plaintiffs incurred expenses to effectively present their testimony on video via deposition designations.

54. In connection with the JLI expense request, Class Counsel also conducted a high-level review of the litigation expenses and conducted an analysis that, for each expense (or group of expenses), allocated 100%, 33.3% or 0% of the cost to the Class, depending on the extent to which the expense benefitted the class. For example, all the expert fees paid to Dr. Singer—whose only role was to provide testimony in support of the Class claims—were allocated 100% to the Class. Dr. Alan Shihadeh, in contrast, provided expert opinions in support of all the plaintiffs' claims, including but not limited to the Class's claims; accordingly, one-third of Dr. Shihadeh's expert fees were allocated to the Class. No expert fees related to expert work specific to the injuries of a particular personal injury or government entity plaintiff were allocated to the Class. This exercise is conservative as it ignores the fact the many costs for which 1/3 of the total was allocated to the class would have been incurred in full by the class in a class-only litigation. As described in my prior declaration, the result of this analysis was a cost allocation to the Class of over $5 million. The total exceeds the cumulative requested expense award of $5.1 million, especially once Class Counsel updated that analysis to account for additional expenses incurred since the date of the original review. In Class Counsel's view, the collaborative nature of this litigation has resulted in significant costs savings to the class, which are reflected in the cumulative request of $5.1 in expenses payments from the combined settlement funds.

55. The $1,000,000 requested is also consistent with the amount that results from applying a 2% cost assessment to the Class (where 2% of the aggregate settlement amount is $6 million, and $910,000 of the Altria settlement alone), which is the amount of assessments paid by other plaintiffs in the litigation. *See* Dkt. 586 at 11. Class Counsel has conferred with other Co-Lead Counsel and determined that, in light of their expectation that the 2% cost assessment from the non-class plaintiff

groups will provide a significant amount of funds from which to pay costs, it would be appropriate for the Class to contribute an amount consistent with a 2% cost assessment, or $5.1 million total towards the overall litigation expenses from the JLI and Altria Class Settlements combined. Because Class Counsel sought and the Court awarded $4.1 million from the JLI settlement already, Class Counsel requests that the Court authorize the payment of the remainder, $1,000,000, from the Altria Class Settlement Fund for the payment of litigation costs.

## V.      SETTLEMENT ADMINSTRATION COSTS

56.      Epiq is providing ongoing settlement administration for both the JLI and Altria settlements. Epiq has submitted invoices for its expenses incurred in connection with the Altria settlement as of December 2023, totaling $1,328,733.78. The vast majority of that amount is for processing claims and allocating the settlement proceeds among Eligible Claimants. Additionally, Epiq's invoices for the JLI settlement total $3,013,218.81 as of December 2023. Epiq's invoices for work related to the Altria Settlement and work related to the JLI Settlement reflect non-overlapping work, for example notice costs and the processing of claims submitted during the claims period applicable to each settlement.

57.      The costs that Epiq will continue to incur include further claims processing and fraud review, providing support for and contact with Class Members, preparing and distributing payments to Claimants, and handling the various tax reporting obligations required by law. How much these remaining activities will cost will depend primarily on the volume and complexity of the Claims received, and the volume of claims that are ultimately deemed eligible for payment. The February 5, 2024, deadline for Class Members to submit Claims is still three weeks out, and Epiq continues to receive Claims at a rapid clip. According to Epiq, as of January 12, 2024, Epiq has received over 7 million claims, 179 opt out requests, and zero objections to the Altria Class Settlement. As explained in the accompanying declaration of Cameron Azari (attached as **Exhibit 3**), the notice has apparently been effective, as the number of Claims appears to be very high, although any duplicate claims submitted by class members in both the JLI claims period and the Altria claims period have not yet been identified and removed, and it is expected that after a complete review, a substantial number of the claims

received to date will likely be determined to be invalid. *See also* Azari Decl. re Notice Completion, Dkt. 4166 ¶ 13.

58.     Given that the claim period is still open and the ultimate figures are not yet settled, Epiq has reported that at this time, it is not able to provide a reliable estimate of the additional costs it expects to incur to complete the processing of Claims and distribution of money to Eligible Claimants. The main areas of cost uncertainty are (1) determining the final number of claims that will be submitted by the February 5 deadline, particularly given the robust claims-filing rate to date, and (2) assessing the cost associated with the significant effort that will be undertaken once the claims period is closed to determine the potential number of fraudulent claims and appropriate next steps. The total number of claims, and the extent to which fraudulent claims are filed alongside legitimate claims, will have a significant impact on the total costs to complete claims administration.

59.     Class Counsel continues to work with Epiq on methods for reducing costs and reviews billing statements on a weekly basis. Epiq and Class Counsel both still anticipate that, notwithstanding the very high Claims volume, Epiq will be able to complete the Claims administration work for less than the $6 million approved by the Court, and if not will seek Court authorization for payment for additional expenses supported by documentation. Class Counsel will not authorize the payment of more than $6 million to Epiq absent court approval. Class Counsel will be prepared to update the Court on the Claims process before the Final Approval Hearing.

The undersigned declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of January 2024.

*/s/ Dena C. Sharp*
Dena C. Sharp

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 16, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.


/s/ *Dena C. Sharp*

DECLARATION OF DENA C. SHARP IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 19-md-02913-WHO