EXHIBIT 1

   

November 15, 2023

**VIA E-MAIL** (WHOCRD@cand.uscourts.gov)

Honorable William H. Orrick
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 2, 17th Floor
San Francisco, CA 94102

*In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*, Case No. 3:19-md-02913-WHO

Dear Judge Orrick:

Pursuant to the Court's instructions and the Amended Case Management Order No. 5 ("CMO-5"), Co-Lead Counsel respectfully submit the enclosed report of common benefit time and expenses recorded by Participating Counsel in the above-referenced matter ("Common Benefit Report"). ECF 2307.

The enclosed Common Benefit Report provides time and expenses submitted by Participating Counsel from February 1, 2023 through September 30, 2023 ("current reporting period").

In accordance with the common benefit time keeping and expenses protocol set forth in CMO-5, Co-Lead Counsel have reviewed and approved the time entries and expenses listed in this report to confirm all aspects of qualitative evaluation (*e.g.* authorization, scope, and reasonableness). Additionally, and in accordance with the Court's order appointing her as Common Benefit Special Master (Dkt. No. 680), Judge Andler has reviewed and deemed appropriate, fair and reasonable, and for the common benefit, the tasks, time, and expenses set forth in the Common Benefit Report. Judge Andler's Quarterly Report No. 8, detailing her review, findings and recommendations is enclosed herewith.

For the current reporting period, the total hours submitted by the four Co-Lead Counsel firms was 12,886.30 hours ($8,777,436.00).

During this same period, Plaintiff Steering Committee (PSC) firms submitted a total of 4,658.50 hours ($3,523,044.40), Liaison Counsel firms submitted a total of 8,292.00 hours ($4,601,680.00), and Non-Designated Counsel firms submitted a total of 1,107.20 hours ($499,069.00). The total amount of hours submitted by all reporting firms for this period was 26,944.00 hours ($17,410,229.40). This report also includes 972.30 hours ($676,992.20) of previously unreported residual time.

The dollar figures submitted here are based upon the billing rates submitted by the respective counsel. While the Co-Leads have not approved any firm or attorney's billing rates, Class Counsel submitted a discussion of those billing rates in the motion for attorneys' fees in connection with the JLI class settlement. ECF 4055.

For the current reporting period, the total expenses submitted by Co-Lead Counsel firms is $1,212,015.71; PSC firms submitted $38,270.95; Liaison Counsel firms submitted $1,032,680.49; and Non-Designated Counsel firms submitted $2,936.85. The total amount of costs submitted by all reporting firms for this period was $2,285,904.00. As explained in the Fee Committee's Recommendations (ECF 4152), these numbers for the most part do not include cost fund assessments. The previously unreported residual contributions as of the current reporting period are $853,215.69, and are detailed in the accompanying reports.

In terms of relative allocation and performance of common benefit work, during this period the Co-Lead Counsel firms have performed approximately 48%; the PSC firms have performed approximately 17%; Liaison Counsel firms have performed approximately 31%; and Non-Designated Counsel have performed approximately 4%.

As described in the attached demographic reports, Plaintiffs' counsel continue to open up opportunities for female attorneys, attorneys identifying as LGBTQ, and racially diverse attorneys. The specific numbers described in earlier reports (and reproduced in the attachments to this letter) are skewed for this reporting period because the bulk of the time was committed to the *SFUSD* trial. Work done on that trial was coded as 17 ("Trial Preparation"), 18 ("Trial"), 18a-h ("Bellwether Trial" sub-codes), or sometimes one of the more specific functions, e.g., 14g ("Experts/Consultants – Preparation of Reports"). The attached reports include data on codes 17 and 18 (including sub-codes). That data demonstrate that Plaintiffs' counsel's commitment to diverse opportunity and representation carried through to the bellwether trial. Plaintiffs look forward to discussing these reports with the Court.

As discussed in the Fee Committee Recommendations (ECF 4152), Co-Lead Counsel, as members of the Fee Committee, have reviewed and analyzed all the time submitted to the Court, including this tranche, in formulating proposed fee allocations.

If the Court has any questions or concerns about the process being followed, or would like additional information, records or variations on the provided reports, we welcome the opportunity to discuss any of these issues at a time convenient for the Court.

Respectfully,

Sarah R. London

Enclosures

# JAMS ARBITRATION
# JAMS REF. NO. 1200057171

IN RE JUUL LABS, INC. MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, MDL Case No. 19-md-02913-WHO

JUUL LABS PRODUCT CASES, JCCP LASC Case No. 5052

## QUARTERLY REPORT NO. 8 OF SPECIAL MASTER TO THE MDL CO-LEADS

### I. SPECIAL MASTER APPOINTMENT AND DUTIES

The present MDL Quarterly Report No. 8 covers common benefit time and expenses from February 1, 2022, through September 30, 2023. In addition, the undersigned reviewed residual time from July 2022 through January 2023. As outlined in Quarterly Report No. 1, the undersigned was appointed on June 19, 2020, as the Common Benefit Special Master in the above-referenced Multi-District Litigation against JUUL Labs, Inc. ("MDL") by the Honorable William H. Orrick under Rule 53 of the Federal Rules of Civil Procedure. (MDL Dkt. 680). The undersigned was also appointed on September 9, 2020, in the above-referenced Judicial Council Coordinated Proceedings ("JCCP") by the Honorable Ann I. Jones under California Code of Civil Procedure section 845. The MDL appointment relates to January 13, 2020, Case Management Order ("CMO") No. 5 and the May 27, 2020, CMO No. 5(A), which established a Common Benefit Fee and Expense Fund. (MDL Dkt. 352, & 586). The scope of the appointment in both the MDL and JCCP is "to audit reported common benefit time and costs, and resolve any common benefit disputes that may arise . . ." (MDL Dkt. 586 at ¶27; 9-9-20 JCCP Order at 1:3-5). The MDL and JCCP have negotiated a Coordination Order, and the Plaintiffs' Steering Committee ("PSC") in the MDL and JCCP (collectively referred to as "Lead Actions") have been working cooperatively concerning the discovery and coordination of the Lead Actions. (MDL Dkt. No. 586, ¶3; 7-9-20 JCCP Order, ¶3). The PSC in the MDL and JCCP

agreed that "parallel common benefit orders will facilitate cooperation and coordination between the federal and state cases." (7-9-20 JCCP Order at 2:19-20).

The MDL Order of Appointment, as well as the JCCP Order of Appointment in substantially similar language, specifies the scope of the undersigned's duties and authority as follows:

> "3. Judge Andler's duties will include monitoring, auditing, conducting legal analysis, and advising Co-Lead Counsel for Plaintiffs on all matters relating to common benefit time, fees, expenses and disbursements.
>
> 4. Judge Andler's authority is limited to reviewing and making recommendations regarding submissions for common benefit fees and expenses. This shall include the authority to make initial determinations and findings regarding whether certain tasks, categories of costs, or level of fee requests are properly sought. To the extent carrying out such duties requires construing agreements, interpreting orders, resolving disputes that may arise between any parties authorized to submit common benefit time and or expenses, and or reviewing evidence, Judge Andler shall have that authority as well. Judge Andler will not adjudicate or assist the Court with adjudicating any issue outside the propriety of requests for common benefit fees and costs.
>
> 5. In keeping with the procedure set forth in Case Management Order No. 5 ("CMO-5"), Co-Lead Counsel for Plaintiffs shall submit quarterly reports of all approved common benefit fees and expenses sought in this proceeding, beginning August 15, 2020. Judge Andler shall provide quarterly reports to the MDL Co-Leads and JCCP Co-Leads for Plaintiffs ("JCCP Co-Leads") as to her review of the common benefit time and cost submissions. Within thirty days of each report being provided to the MDL Co-Lead Counsel for Plaintiffs, the MDL Co-Lead Counsel for Plaintiffs shall submit a report to the Court, including Judge Andler's findings, as well as any matters that the Co-Leads believe merit the Court's attention. Because of the nature of the information

contained in this submission, it may be made *ex parte* and will not be submitted to Defendants or Defendants' Counsel and will not be posted on any docket.

6. As Special Master, Judge Andler shall maintain those records upon which she bases her recommendations as set forth in her quarterly reports on a platform established by the Plaintiffs Steering Committee ("PSC"), in consultation with the JCCP leadership, for entry or analysis of common benefit time and expenses, and shall make those records available for inspection.

7. Prior to the submission of the quarterly report described in CMO-5 and CMO- 5(A), Judge Andler shall work directly with the MDL Co-Lead Counsel for Plaintiffs and the JCCP Co-Leads to resolve any issues regarding the quarterly fee and expense requests. Judge Andler has the authority to schedule and sequence this review process as she deems appropriate. Judge Andler shall have authority to alter the reporting deadlines specified in CMO-5 to accommodate her supervisory role, informally resolve any disputes, and ensure that each quarterly report is complete.

8. Judge Andler shall be responsible for and shall have the authority to engage appropriate support personnel to assist in carrying out her duties as Special Master.

9. With approval from MDL Co-Lead Counsel for Plaintiffs and the JCCP Co-Leads, Judge Andler may have *ex parte* communications with any attorney submitting requests for common benefit time or expenses. Where necessary, the existence of such communications and their contents shall be noted and reasonably summarized in the quarterly report. Judge Andler may communicate to the Court—on an *ex parte* basis—non-confidential information where necessary for the full and fair implementation of this Order." (MDL Dkt. No. 680 at 1:24-3:23; *see also*, JCCP 9-9-20 Order at 1:6-2:13).

**II. SPECIAL MASTER'S REVIEW OF MDL TIME AND EXPENSES**

The first MDL Quarterly Report covered billing summaries generated by Verus representing the MDL time and expenses for each month from November 2019 through April 2020. MDL Quarterly Report No. 2 covered time and expenses from May 1, 2020, through August 31, 2020. MDL Quarterly Report No. 3 covered time and expenses from September 1, 2020, through December 31, 2020. MDL Quarterly Report No. 4 covered time and expenses from January 1, 2021, through August 31, 2021. MDL Quarterly Report No. 5 covered time and expenses from September 1, 2021, through December 31, 2021. MDL Quarterly Report No. 6 covered time and expenses from January 1, 2022, through July 31, 2022. MDL Quarterly Report No. 7 covered time and expenses from August 1, 2022, through July 31, 2023.

The present MDL Quarterly Report No. 8 covers billing detail and summaries the undersigned received on November 2, 2023, from Verus covering the time period of February 1, 2023, through September 30, 2023. The undersigned reviewed Excel Verus reports, including (1) MDL Time (Summary) February 2023 – September 2023; (2) MDL Time (Detail) February 2023 – September 2023; (3) MDL Law Firm Listing; (3) MDL Expense (Summary) February 2023 – September 2023; (5) MDL Expense (Detail) February 2023 – September 2023; (4) MDL 12HR+ (Per Day) Report February 2023 – September 2023; and (5) MDL 8HR+ Report February 2023 – September 2023. The Special Master also received from Verus billing detail and summaries that included residual time and expenses from July 2022 through January 2023.

The total hours for February 1, 2023, to September 30, 2023, was approximately 26,944 hours (not including residual time), totaling $17,410,229  There were 972.3  previously unreported residual hours from Keller Rohrback, LLP, Weitz & Luxenberg, P.C.,  Frazer PLC, and Milberg/Greg Coleman Law PC totaling $676,992.20.

The total expenses for this reporting period were approximately $2,285,904.00 (not including previously uncaptured expenses).  The previously uncaptured expenses were approximately 622,853.41.

To appreciate the significant activity that occurred during the present reporting period, on November 3, 2023, Leadership provided the undersigned with the following documents to review: (1) 2-3-23 Joint Stipulation and Order Re Motion in Limine Schedule and Page Limits; (2) 2-6-23 Stipulation and Order Regarding Deposition Designations; (3) 2-17-23 Civil Minutes of Case Management Conference and Motion; (4). 3-10-23 Civil Minutes of Pretrial Conference, Motion Hearing and Case Management Conference; (5) 4-3-23 Second Amended Stipulation and Order Regarding Deposition Designations; (6) 4-5-23 Civil Minutes of Motion to Quash, Deposition Objections, Motion to Strike or Exclude Nicotine Disclosures and Instructions; (7) 4-10-23 Order on Motions for Summary Judgement and Remaining Motions in Limine; and, (8) 4-19-23 Civil Minutes of Pretrial Conference, Motion Hearing, Conference Re Proposed Jurors to be Excused from Voir Dire.

Based upon the undersigned's review of the preceding documents and the narrative provided by Leadership to the undersigned on November 3, 2023, the main work that was undertaken during the present reporting period from February 1, 2023, through September 30, 2023, is summarized as follows:

**Bellwether Preparation and Trial**

In February and March 2023, Plaintiffs' counsel was actively preparing for the first bellwether trial, *SFUSD v. Altria*. The *SFUSD v. Altria* case was initially set for trial for November 2022 but reset for April 2023. This work included drafting briefs, preparing experts, drafting witness examinations, revising deposition designations, conducting focus groups, and holding strategy meetings. Specifically, the preparation of the *SFUSD* trial involved numerous defendants and had complex causes of action, including a RICO conspiracy claim. Lead trial counsel, with PSC support, prepared and negotiated jury instructions, witness and exhibit lists, and jury questionnaires. The team briefed and argued multiple motions for summary judgment, *motions in limine*, and opposed hundreds of pages of *Daubert* challenges. (*See,* 4-10-23 Order on Motions for Summary Judgement and Remaining Motions in Limine; and 4-19-23 Civil Minutes.) The PSC also reviewed an extensive amount of depositions to select their deposition designations for trial, reviewed and responded to defendants' deposition designations,

and engaged in extensive negotiations with the defense. (*See,* 2-6-23 Stipulation and Order Regarding Deposition Designations; 4-3-23 Second Amended Stipulation and Order Regarding Deposition Designations.)

The *SFUSD* trial began on April 21, 2023. Plaintiff's case-in-chief lasted two and a half weeks, and included testimony from six experts, five live fact witnesses, and sixteen witnesses by deposition designation. On May 10, 2023, when Altria was set to begin its case-in-chief, the parties announced that an agreement had been reached to settle the class, government entity, and personal injury claims against Altria. Behind the scenes, Plaintiffs' counsel was negotiating this deal with Altria while simultaneously trying the *SFUSD* case.

**<u>Settlement</u>**

After the Altria settlement was announced, Plaintiffs' counsel began working with Altria to paper the details of the settlement programs. This included the personal injury Settlement Oversight Committee (SOC) of the MDL and JCCP developing an ethically and medically appropriate matrix for the settlement of personal injury claims.

At the same time, Plaintiffs' counsel was working with clients and Brown Greer to process claims to participate in the JLI settlement programs (announced in late 2022). Plaintiffs' counsel was also working on securing final approval of and responding to objections regarding the settlement with JLI on behalf of the class. Plaintiffs' Motion for Final Approval was filed on June 23, 2023, and the motion hearing took place on August 9, 2023.

**<u>Tribal Committee</u>**

Because tribal plaintiffs are not a party to the Altria settlement, the Tribal Leadership Committee has continued litigating the tribal cases throughout 2023. This work has included identifying experts, preparing expert reports, negotiating schedules, taking and defending depositions, and crafting a bellwether trial strategy.

**Case Management**

The PSC committee chairs met weekly, as did the PSC, to discuss ongoing case developments. Each committee met regularly to implement the case/settlement implementation strategy. Plaintiffs' counsel was working on a common benefit fee structure—a lengthy process of strategizing and negotiating with stakeholders to assess funds and reach consensus. The Co-Leads and Liaison counsel coordinated with the JCCP on settlement matters.

## III. SPECIAL MASTER'S FINDINGS AND RECOMMENDATIONS AS TO MDL COMMON BENEFIT TIME & EXPENSES FROM FEBRUARY 1, 2023, THROUGH SEPTEMBER 30, 2023

The present Quarterly Report No. 8 only includes the undersigned's review of the MDL's common benefit time and expense submissions from February 1, 2023, through September 30, 2023, and residual time from July 2022 through January 2023. The undersigned reviewed the time and expenses, but only concerning the reasonableness of hours and categories of time for the common benefit, except for noting high hourly rates for document review. Before the undersigned reviewed this block of time and expenses, the data had a first-tier review and approval by MDL Leadership. The Special Master's review of this block of MDL time and expenses does not include a review of firm rates, which are still being analyzed and vetted by the MDL Leadership. The Co-Leads plan to assess this further and discuss it with the JCCP to determine whether further recommendations should be made on firm rates. Similarly, the Special Master's review in this Quarterly Report does not include JCCP's common benefit time and expense submissions which will be outlined in a separate Quarterly Report to the JCCP leadership.

On November 2 and 3, 2023, the undersigned was provided billing and expense reports generated by the Verus platform from February 1, 2023, through September 30, 2023, representing MDL time and expenses during the current reporting period. Consistent with the Third Amendment to the CMO 5, the attorney time was broken down into twenty-one categories and subcategories as follows:

1. Investigative Factual Research;

2. Attorney Meetings/Strategy;

3. Leadership Case Management Duties;

   a. Case Management (Reports/Filing)
   b. Case Management (Administrative)

4. Court Appearances;

   a. preparation;
   b. argument/presentation;
   c. attendance at the direction of Leadership;

5. Pleadings;

6. Written Discovery;

   a. written – propounding;
   b. dispute – analysis;
   c. dispute – negotiate;
   d. dispute – lead negotiation;
   e. third party;
   f. third party – lead negotiation analysis;

7. Plaintiff Discovery (Document Production, DME);

   a. plaintiff discovery responses;

8. Document Review

9. Legal Research/Memorandum;

10. Scientific Research;

11. Motion/Briefs;

    a. motions/briefs – Lead author;
    b. motions/briefs

12. Depositions (Prepare/Take/Defend)

    a. fact deposition – scheduling;
    b. fact deposition – preparation;
    c. fact deposition – questioning;
    d. fact deposition – defending;
    e. fact deposition – attendance at the direction of Leadership

13. Class Certification/Notice;

14. Expert Consultants;

    a. administrative;
    b. lead deposition preparation;

c. deposition preparation;
d. defending deposition;
e. taking deposition;
f. attending at the direction of Leadership;
g. preparation of reports

15. Settlement/Mediation;

   a. settlement/mediation;
   b. administrative;

16. Bellwether Selection;

17. Trial Preparation;

18. Trial;

   a. bellwether trial – Lead Counsel;
   b. bellwether trial – oral argument;
   c. bellwether trial – attend at the direction of Leadership
   d. bellwether trial – presentation of evidence/cross-exam;
   e. bellwether trial – jury selection;
   f. bellwether trial – administrative;
   g. bellwether trial – lead negotiation
   h. bellwether trial – witness preparation;

19. Appeal;

20. Client Communications;

21. Miscellaneous; and,

22. Internal Presentation;

   a. Internal presentation - strategy/evidence/analysis - Lead presentation;
   b. Internal presentation – strategy/evidence/analysis – preparation.

The expenses were broken down by firm, the individual that incurred the expense, classification of the expense, date incurred, description, and amount. As part of the MDL Co-Leads' first-tier review and approval for time entries, Verus flagged for additional review any time that fell into the following categories: (1) any billing entry that exceeded 8 hours; and (2) any biller who exceeded 12 hours in a day. After further review of flagged entries, the MDL Co-Leads reviewed those reports and had Verus remove entries that were in error. Concerning expenses, the Time & Expense team at Ms. London's firm performed an initial review of all expenses and the supporting receipts to certify expenditures complied with the CMO-5 guidelines. After that, the Co-Leads reviewed the expenses for "reasonableness."

Backup information for all time and expense summaries after CMO-5 guidelines were in place were available to the undersigned through Verus. The Special Master did not examine every time and expense entry for each timekeeper from each law firm from February 1, 2023, through September 30, 2023. Instead, the Special Master reviewed the summaries, time-detail reports, and backup from Verus, exercising professional judgment to ensure the tasks, time, and expenses were appropriate, reasonable, and for the common benefit. The Special Master independently reviewed the data looking for flags or anomalies, and cross-checked the reports relating to flagged information reflecting the review by MDL Co-Leads. The Special Master's concerns were communicated in writing via email exchanges on November 8, 10 and 13, 2023 with Co-Leads. Thereafter, Co-Leads adequately addressed all the noted concerns to the satisfaction of the Special Master.

In assessing whether the time and expenses were for the common benefit, the Special Master has considered the size and complexity of the MDL and JCCP following a review of the relevant orders and Civil Minutes issued during the reporting period as set forth above. During this reporting period from February 2023 through September 2023, significant time was focused on preparing and litigating the bellwether case of *SFUSD v. Altira*. For example, the orders and billing detail reflect that the parties engaged in numerous discussions attempting to narrow the disputed issues for trial. In addition, the parties briefed and argued *Daubert* motions over expert testimony relating to the maintenance, durability, and technological limits of surveillance systems, and their impact on students and the school environment. Also, considerable time was spent on briefing and arguing multiple motions in limine regarding, for instance, THC, the FDA and the diminution in value of Altira's investments. The parties also briefed and argued Motion to Quash Trial Subpoenas.

As set forth more fully above, after the settlement was reached a substantial amount of time was spent preparing a comprehensive settlement protocol for distributing funds to each plaintiff. This was a complex and meticulous process, given the number of plaintiffs involved and the intricacies of their individual claims. Crafting the protocol involved numerous meetings, discussions and correspondence to ensure fairness and compliance with the settlement.

## III. SPECIAL MASTER'S FINDINGS AND RECOMMENDATIONS

In further assessing whether the work performed was for the common benefit, the Special Master relied upon CMO No. 5(A), which defines common benefit work as follows:

> "Common Benefit Work includes, but is not limited, to the following authorized activities: maintenance and working in the Joint Document Depository; factual investigation and research; legal research; conducting authorized discovery (e.g. reviewing, indexing, and coding documents); preparation of timelines/chronologies; drafting and filing pleadings, briefs, pre-trial motions and orders; preparation of deposition cuts that may be used in a case set for trial; preparation of the trial exhibits; assembly of the scientific articles; approved PSC activities; work of the MDL Discovery, Law and Briefing, and Science Committee Co-Chairs; other MDL committee work authorized by Co-Lead Counsel; expert development authorized by the Co-Chairs of the Science Committee or Co-Lead Counsel; authorized preparation for and participation at state and federal court hearings; preparation for and taking of depositions of Defendants and third-party witnesses, and experts; and activities associated with preparation for trial and the trial of any cases designated by the PSC." (MDL Dkt. No. 586 at 16:15-17:2).

Similarly, in assessing whether expenses incurred were for the common benefit, the Special Master relied upon the requirements for expenditures in Section 11(C) outlined in CMO-5.

Based on a review of the billing and expense records and information presented, and guided by the CMO No. 5 and CMO No. 5(A) referenced above, the Special Master finds that for this Quarterly Report No. 8 covering the time period of February 1, 2023, through September 30, 2023, as well as the residual time from July 2022 through January 2023, the tasks, hours and expenses incurred were appropriate, fair and reasonable and for the common benefit. No disputes

///

were submitted to the Special Master concerning these billing and expense summaries or otherwise during this reporting period.

Dated: November 14, 2023

_____
Hon. Gail A. Andler (Ret.),
Special Master

## PROOF OF SERVICE BY E-Mail

Re: In Re: JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation
Reference No. 1200057171

I, Matthew Levington, not a party to the within action, hereby declare that on November 14, 2023, I served the attached QUARTERLY REPORT NO. 8 OF SPECIAL MASTER TO THE MDL CO-LEADS on the parties in the within action by electronic mail at Irvine, CALIFORNIA, addressed as follows:

Sarah London Esq.
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery St.
29th Floor
San Francisco, CA   94111
Phone: 415-956-1000
slondon@lchb.com
   Parties Represented:

Ellen Relkin Esq.
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY   10003
Phone: 212-558-5500
ERelkin@weitzlux.com
   Parties Represented:

Dean N. Kawamoto Esq
Keller Rohrback LLP
1201 Third Ave.
Suite 3200
Seattle, WA   98101-3052
Phone: 206-623-1900
dkawamoto@kellerrohrback.com
   Parties Represented:

Dena C. Sharp Esq.
Girard Sharp
601 California St.
Suite 1400
San Francisco, CA   94108
Phone: 415-981-4800
dsharp@girardsharp.com
   Parties Represented:

I declare under penalty of perjury the foregoing to be true and correct. Executed at Irvine, CALIFORNIA on November 14, 2023.

_____
Matthew Levington
JAMS
mlevington@jamsadr.com