UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Class Actions | CASE NO. 19-md-02913-WHO<br><br>**[PROPOSED] ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES RE ALTRIA CLASS SETTLEMENT** |

1    Following a settlement with JUUL Labs, Inc. ("JLI") and related Released Parties ("JLI
2    Class Settlement"), the Class Plaintiffs, on behalf of themselves and the Settlement Class, entered
3    into a subsequent settlement with the remaining defendant Altria[1] to fully resolve the Class's
4    claims.[2] The Court preliminarily approved the Altria Class Settlement on September 7, 2023. The
5    Court has considered Class Counsel's Motion for Attorneys' Fees and Expenses ("Motion"),
6    including all arguments and briefing presented.

     The Court **GRANTS** the motion and **ORDERS** as follows:

## I. SUMMARY OF ATTORNEYS' FEES AND EXPENSES

Class Counsel request the following payments from the $45,531,250.00 Altria Settlement Fund:

- Attorneys' fees in the amount of 30% of the Altria Settlement Fund ($13,659,375.00), plus a proportionate amount of accrued interest; and
- Expenses of $1,000,000.

Class Counsel seeks these awards solely from the proceeds of the Altria Settlement, and are not seeking the payment of any service awards from that settlement. The Court previously granted Class Counsel's separate motions for the payment of attorneys' fees and expenses from the JLI settlement. *See* Order on Motion for Attorney Fees re JLI Settlement of Class Claims ("JLI Class Fee Order"), Dkt. No. 4179. This motion is considered separately, but I take into account the fees and expenses previously awarded in ruling on the present motion.

No Class Member objected to Class Counsel's requested fee and expense awards in connection with the Altria Class Settlement.

## II. ATTORNEYS' FEES

In the Ninth Circuit, there are two ways to assess requests for attorneys' fees in common fund cases: the percentage-of-the-recovery method (where the fee is evaluated as a percentage of

---

[1] "Altria" refers to Defendants Altria Group, Inc., Altria Client Services LLC, Altria Enterprises, LLC, Altria Group Distribution Company, Philip Morris USA, Inc.

[2] Unless otherwise defined herein, capitalized terms have the same meaning as in the Altria Class Settlement.

the common fund) and the lodestar method (where the fee is evaluated by reference to counsel's lodestar). *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994) ("*WPPSS*")).

In the Ninth Circuit, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Apple Device*, 50 F.4th at 78. Consistent with that discretion, the Ninth Circuit has not prescribed a rigid set of factors courts should consider when deciding which method is most appropriate in a particular case. To the contrary, "no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (quoting *WPPSS*, 19 F.3d at 1296). The guidance the Ninth Circuit has provided, as well as the unique circumstances of this case, weigh in favor of using the percentage-of-recovery method to determine the appropriate fee award.

Where "the benefit to the class is easily quantified," the Ninth Circuit has "allowed courts to award attorneys a percentage of the common fund in lieu of the more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d 942; *c.f. Hyundai*, 926 F.3d at 570 ("When evaluating the settlement is difficult or impossible, the lodestar method may be more convenient."). Here, the benefit to the class of a single lump-sum common fund payment by Altria is easily quantified and permits a straightforward application of the percentage method. Also counseling for application of the percentage method in this case is the nature of this litigation and how it was prosecuted. In this MDL, lawyers representing plaintiffs with different types of claims (class action, personal injury, and government entity) worked collaboratively to advance the common interests of all plaintiffs. This approach, which ultimately contributed to the results achieved across the MDL, is not conducive to a rigid allocation of the of hours spent on each task in the MDL and how to credit those hours as common benefit time across the plaintiff groups.

1    I GRANT plaintiffs' request for an award of 30% of the gross Altria Settlement Fund. In making this award, I have considered – as explained in more detail below – the excellent result secured for the Class that justifies an award higher than the Ninth Circuit's 25% benchmark, as well as an appropriate lodestar cross-check.

**A.    The Court is Familiar with the MDL Work Performed**

At the start of these MDL proceedings and as part of my selection and appointment process, I required the Co-Lead Plaintiffs' Counsel ("Co-Leads") and members of the Plaintiffs' Steering Committee ("PSC") to address how they were going to ensure that all counsel working within the MDL only billed reasonable and necessary hours for MDL work and accurately tracked and reported their time. Dkt. Nos. 229, 341. Common Benefit Orders were entered to govern what common benefit work and expenses could be covered by any eventual settlement or judgment in the MDL cases. Dkt. Nos. 352, 596, 1202, 2307.

Soon after the appointment of the Co-Leads and PSC, I appointed the Hon. (Ret.) Gail A. Andler as a Common Benefit Special Master under Rule 53 of the Federal Rules of Civil Procedure. Judge Andler's duties included monitoring, auditing, conducting legal analysis and advising Co-Leads on all matters relating to common benefit time, fees, expenses and disbursements. Dkt. No. 680. The settlement process – for all the Class, personal injury government entity, and tribal entity claims – was overseen and facilitated through the intensive efforts of Thomas J. Perrelli, who I appointed as the Settlement Special Master for these MDL proceedings. Dkt. No. 564.

The review of the reasonableness of hours billed by attorneys working for the common benefit in this MDL – including the hours that benefitted the litigation and eventual resolution of the Class claims – has been thorough and consistent throughout this litigation. As the Co-Lead filings submitted in connection with this Motion, the JLI Fee request motion (Dkt. 4055), and the filings submitted in the related Motion to Approve the Fee Committee Recommendations (Dkt. No. 4152) demonstrate, the excellent result in this case for the Class claims was achieved as the result of common benefit work necessarily performed by numerous attorneys. This included

attorneys who primarily represented Class plaintiffs and also attorneys who primarily represented personal injury plaintiffs and public entity plaintiffs. In approving the request made here – for 30% of the gross Altria Settlement Fund – I necessarily consider the reality that the work of these differently-situated lawyers contributed to the litigation of the Class claims as well as the other claims asserted throughout the MDL.

As was the case in connection with the JLI Class Fee Order, I have also considered the report of Professor Robert H. Klonoff, Dkt. 4193-2. But I am intimately familiar with the work that has been done by counsel in this MDL and am well-situated to review the reasonableness of the hours billed and the results achieved with respect to the resolution of the Class claims.

The claims against Altria were heavily litigated – through multiple rounds of motions to dismiss, numerous and unusually complex informal and formal discovery disputes, class certification, motions for summary judgment, and a bellwether trial that proceeded against Altria alone after JLI and related defendants settled.[3] While some of the discovery, summary judgment, and pre-trial issues did not directly concern the Class claims, in large part the discovery, motions practice, and case management work was *common* work that benefitted every case within the MDL, whether personal injury, government entity, tribal entity, or class. I need not and do not rely on Klonoff for my conclusion as to reasonableness of the time billed. Instead, I find Klonoff's analysis of the possible lodestar cross-checks and resulting multiplier to be helpful.

**B.    The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Recovery Method**

In the Ninth Circuit, the starting point—or "benchmark"—for a fee award under the percentage-of-the-recovery method is 25% of the settlement fund. *Bluetooth*, 654 F.3d at 942

---

[3] Taking in account all matters handled in the MDL, including discovery from all defendants, there were more than 33 million pages of documents produced by defendants and reviewed by plaintiffs; more than 190 third-party subpoenas issued; more than 100 fact witness depositions; more than 50 generic or bellwether-specific experts who prepared reports and were deposed; dozens of highly contested motions made or opposed; 24 bellwethers worked up through the close of discovery; one bellwether (B.B.) taken to the eve of trial, and one bellwether (SFUSD) taken to the eve of submission to the jury.

1   (citation omitted).[4] But adjustments may be warranted "when special circumstances indicate that
2   the percentage recovery would be either too small or too large in light of the hours devoted to the
3   case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d
4   1301, 1311 (9th Cir. 1990). Factors courts consider when determining whether to depart from the
5   25% benchmark are: "(1) the result achieved; (2) the risk involved in the litigation; (3) the skill
6   required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made
7   in similar cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. 2014) (citing
8   *Vizcaino*, 290 F.3d at 1048-50); *see also In re Apple Inc. Device Performance Litig.*, 2023 WL
9   2090981, at *13-16 (N.D. Cal. Feb. 17, 2023) (applying the same factors).

The Ninth Circuit has made clear that in a percentage fee award analysis, the size of the settlement fund is relevant, but the percentage does not necessarily decrease as the size of the settlement increases. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020) ("we have already declined to adopt a bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases."); *see also In re Toyota Corp. Unintended Marketing, Sales Pracs. And Prods. Liab. Litig.*, 2013 WL 12327929, at *34 (C.D. Cal. July 24, 2013) ("there is no rule in the Ninth Circuit that requires a court to decrease the percentage of the fee award as the size of the settlement increases") (citing *Vizcaino*, 290 F.3d at 1047). The size of the fund is, instead, simply one factor courts can look to when determining a reasonable fee. *Vizcaino*, 290 F.3d at 1047. A presumption that a certain percentage applies based on the size of the settlement fund "flies in the face" of a court's obligation to "consider[] all the circumstances of the case and reach[] a reasonable percentage." *Id*. at 1048. Consideration of the relevant circumstances in this case weighs in favor of an upward adjustment from the 25% benchmark and a fee award of 30% of the Altria Settlement Fund, as discussed further below.

In cases with multiple settlements resulting in serial fee petitions, the Court may consider the requested percentage of the individual settlement amounts and the aggregate settlement

---

[4] When calculating the percentage, courts routinely use the gross settlement fund—*i.e.*, including amounts that will be used to pay notice and administrative costs and litigation expenses—as the denominator. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015).

amount, the cumulative lodestar, and any prior fee awards. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018); *In re Transpacific Passenger Air Trans. Antitrust Litig.*, 2019 WL 6327363, at *1 (N.D. Cal. Nov. 26, 2019) (considering aggregate amounts of settlements in the context of the "third and final settlement"); *Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming consideration of cumulative lodestar and combined settlement value for a subsequent settlement). "Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6.

The result obtained for the Class—a settlement of $45.5 million from Altria, in addition to the $255 million settlement with JLI and related Defendants already approved by this Court—is exceptional and warrants an upward adjustment from the "benchmark." *See Apple Device*, 2023 WL 2090981, at *16 (noting that a $310 million settlement on relatively novel computer intrusion and trespass-to-chattels claims was exceptional). The Altria Settlement Fund is non-reversionary, meaning that Class Members who submit Eligible Claims will receive the full benefit of the Altria Settlement (after deducting any fees, costs, and service awards the Court may award) based on their *pro rata* share of the claims submitted.

This settlement recovered a substantial additional amount as a result of the Class's economic losses from the last remaining defendant. The plaintiffs faced significant legal (e.g., potential preemption of claims, defendants' weighty attacks on plaintiffs' theories of economic loss and common proof of damages, challenges to plaintiffs' claim that Altria directed the alleged RICO enterprise, and arguments for limiting or eliminating the time period of Altria's liability following JLI's settlement from the case) and practical risks (e.g., potential insolvency of JLI that could have delayed all proceedings, regulatory directives remained in flux throughout). Class Plaintiffs were defending the class certification order on appeal, and Plaintiffs only achieved this settlement by taking their RICO claims against Altria all the way to trial. In light of that, I find that an upward departure to 30% of the Altria Settlement Fund is merited.

The skill of the attorneys representing the Class's interests – the Co-Leads and PSC members – and the quality of their work has been excellent. Their payment was contingent on a successful outcome. They incurred millions of dollars in out-of-pocket expenses to manage more than 33 million pages of documents produced by the defendants and obtain expert opinions regarding the JUUL product, the nature and impact of nicotine addiction, the marketing of JUUL, the regulatory landscape impacting JUUL, Altria's investment in and involvement with JLI's alleged misconduct, and in particular here econometric models of economic loss damages. Plaintiffs' counsel undertook these tasks at great expense and produced high quality work product while they faced the possibility that the Class Certification Order would be reversed on appeal, significant arguments from Altria that would limit or eliminate its liability, and the uncertainty of regulatory actions by the FDA.

An award of 30%— of the Altria settlement alone, or of the aggregate class settlement amounts achieved overall—is also within the range of awards approved in the Ninth Circuit. *E.g.*, *Larsen*, 2014 WL 3404531, at *9 (citing numerous cases awarding fees of 32% or greater); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *7-9 (N.D. Cal. Apr. 24, 2019) (30% of $8,300,000 recovery). In "megafund" settlements (involving funds of more than $100 million), courts "routinely award[] class counsel fees in excess of the 25% 'benchmark.'" *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *5 & n.30 (N.D. Cal. Dec. 6, 2017) ("*NCAA I*"), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (collecting cases, including those awarding fees of one-third of the settlement fund); *see also In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 3, 2023) (awarding 40% of final settlement, which brought fee award to 31% of all settlements).[5] For both the requested fee of the

---

[5] *See also Benson v. DoubleDown Interactive, LLC*, 2023 WL 3761929, at *3 (W.D. Wash. June 1, 2023) (awarding 29.3% fee of a $415,000,000 settlement fund); *Andrews v. Plains All Am. Pipe L.P.*, 2022 WL 4453864, at *2-4 (C.D. Cal. Sept. 20, 2022) (applying the percentage method and awarding 32% of a $230 million common fund); *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018) (30% of $139,000,000 recovery); *In re: Cathode*

$45.5 million Altria settlement alone and the aggregate settlement amount of over $300 million, the requested 30% fee award is thus well within the range of awards in similar cases.

      C.      **Although Not Required, a Lodestar Cross-Check Supports the Requested Attorneys' Fees**

Courts may consider class counsel's lodestar to "provide[] a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. The use of the lodestar cross-check is not mandatory, and the Ninth Circuit "has consistently refused to adopt a crosscheck requirement." *See Farrell v. Bank of Am. Corp.*, 827 Fed. Appx. 628, 630 (9th Cir. 2020). In other words, "a cross-check is discretionary." *Apple Device*, 50 F.4th at 784. And as one court observed, "[a]lthough modification of a fee award based on a lodestar cross-check may serve some utility in cases at the fringes, routine recourse to it threatens to swallow the benefits that the percentage-of-the-fund method provides . . . ." *NCAA I*, 2017 WL 6040065, at *10.

The utility of a cross-check is significantly reduced here because the Court has closely supervised the litigation. *See Andrews*, 2022 WL 4453864, at *2 (finding a cross-check unnecessary in light of the "exceptional circumstances of this case and the Court's extensive involvement in supervising" the litigation); *Senne v. Kansas City Royals Baseball Corp.*, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023) (granting 30% fee request and noting that "[a]rguably, a lodestar cross-check is not required here because the Court has been extensively involved in supervising this litigation and has observed first-hand the monumental efforts Class

---

Ray Tube (CRT) Antitrust Litig., 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016) (approving 30% fee award of $127.45 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) (approving 30% fee award of $405.02 million settlement); *Meijer, Inc. v. Abbott Labs*, No. C-07-05985 CW, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (33 1/3% of $52,000,000 recovery); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2-4 (N.D. Cal. Sept. 20, 2018) (fee award of 33.3% of $104.75 million settlement, which resulted in a 1.37 multiplier); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018), *aff'd* No. 19-3008, 2023 WL 2262878 (10th Cir. Feb. 28, 2023) (awarding a 33.33% fee award in a $1.51 billion settlement); *In re Urethane Antitrust Litig.*, 2016 WL 4060156, at *6 (D. Kan. July 29, 2016) ("although a one-third fee would be at the top of the range of awards in megafund cases, that figure does still fall within that range, especially in more recent cases"); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) ("courts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements") (collecting cases).

Counsel put into this case"). Many of the factors that weigh in favor of using the percentage-of-recovery method also weigh in favor of not applying a lodestar cross-check in this case, including that a substantial portion of the work performed by plaintiffs' counsel in this MDL inured to the benefit of each plaintiff group (class, personal injury, and government entity). In short, while a cross-check supports the requested fee award, "given the unique circumstances presented by this litigation, . . . a lodestar cross-check would not be a valuable tool to help assess the reasonableness of Class Counsel's fee request." *See Benson, LLC*, 2023 WL 3761929, at *3.

The Court nonetheless conducts a lodestar cross-check to generally assess the reasonableness of the fee award. A cross-check can be used to prevent "windfall profits to class counsel" that have little relation to the work performed. *Bluetooth*, 654 F.3d at 942. To guard against a windfall, the cross-check may be used to ensure that the multiplier on class counsel's lodestar is not "extraordinarily high or low." *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *16 (N.D. Cal. Dec. 8, 2021) (lowering a requested 6.24 multiplier to 5.47 after conducting a cross-check). The cross-check should confirm the reasonableness of the fee resulting from the percentage method, rather than recalculate the fee. But it should "not result in a second major litigation," transform courts into "green-eyeshade accountants," or seek to "achieve auditing perfection"—instead, any cross-check should "do rough justice" to confirm an award's reasonableness. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (cleaned up).

The analysis when doing a cross-check thus does not need to be as exacting as when the primary means for calculating the fee is the lodestar method. *See Senne*, 2023 WL 2699972, at *20 (court "performed a rough calculation of Class Counsel's lodestar to evaluate whether the percentage-of-recovery method gives rise to a reasonable result"); *In re Apple iPhone/iPod Warranty Litigation*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. Apr. 14, 2014) ("plaintiffs' submission would be woefully insufficient" were it being used "to calculate a lodestar as the primary basis for the fee award," but it was sufficient to show that "applying a percentage-based fee recovery is

1    within reason."); *Larsen*, 2014 WL 3404531, at *9 ("The lodestar cross-check calculation need

2    entail neither mathematical precision nor bean counting.") (quotation omitted).

3          Where there are multiple settlements resulting in serial fee petitions, courts have discretion

4    to consider a lodestar cross-check on both the individual settlement amount and the aggregate

5    settlement amount, taking account of the cumulative lodestar and any prior fee awards. *See, e.g.*,

6    *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6. "Because the total work performed by

7    counsel from inception of the case makes each settlement possible, courts typically base fee

8    awards in subsequent settlements on all work performed in the case." *Id*. When considering serial

9    fee petitions, "courts typically calculate the lodestar multiplier by dividing (1) all past and

10   requested fee awards by (2) all of counsel's time from inception of the case." *Id*. (citations

11   omitted).

12         A lodestar cross-check analysis supports the 30% award. Given the efficient and effective

13   approach plaintiffs' counsel took in this MDL, where lawyers representing plaintiffs with different

14   types of claims worked collaboratively to advance the common interests of all plaintiffs,

15   calculating the appropriate lodestar to use for a cross-check is more difficult. As it was in my

16   consideration of the JLI fee request, Professor Klonoff's method of roughly calculating a lodestar

17   cross-check is helpful on this issue. Evaluating the cumulative fee in relation to the $300 million

18   combined settlements using Professor Klonoff's method, 1/3 of the $220 million in time audited

19   by Judge Andler is lodestar attributable to the Class (based on the theory that 1/3 of the work was

20   attributable to each main category of case within this MDL; class, personal injury, and

21   government entity). The total fee is $90,159,375.00 (30% awarded from the JLI settlement, Dkt.

22   4179, and 30% from Altria here), for a 1.23 multiplier on the $73.4 million cumulative Class

23   lodestar. To evaluate the Altria fee alone, Professor Klonoff starts with the same 1/3 of the total

24   lodestar attributable to the Class, and further reduces it by 85 percent to account for the separate

25   JLI settlement. That calculation, based on reasonable averaged hourly rates charged, yields a 1.24

26   multiplier. Klonoff Report ¶ 15. This level of multiplier is justified, as noted above, by the

27

28

excellent results of the Settlement, the skill and effectiveness of plaintiffs' counsel, the significant risks counsel faced, and the large expenses counsel incurred.

Class Counsel presented additional alternatives for evaluating the lodestar. Considering only the lodestar after the date of the JLI Settlement spent defending the class certification order on appeal, preparing for trial against Altria, and trying the SFUSD bellwether case ($12,353,290.70) leads to a 1.11 multiplier. Finally, considering only the time spent after the JLI Settlement, when Altria was the sole remaining defendant ($21,122,551.80) results in a 0.65 multiplier.

This lodestar cross-check is meaningful, as the lodestar reflects hours reasonably spent and reasonable hourly rates. The hours spent were audited first by a Co-Lead and then by Judge Andler. Judge Andler concluded that "the tasks, hours and expenses incurred were appropriate, fair and reasonable and for the common benefit." *See* Declaration of Dena C. Sharp (Dkt. No. 4193), Ex. 1 at 11; Sharp Decl. in support of JLI Fees (Dkt. No. 4056), Ex. 1 at 12. I appreciate Judge Andler's fine work in this case, but I do not rely exclusively on it. I also rely on the reasonableness of those hours as supported by my first-hand view of the motions, case management conferences, and other proceedings that took place before me and before the judge overseeing discovery. This case was complex – legally, factually, and as a matter of case management – and the hours plaintiffs' counsel spent are reasonable.

The hourly rates used to calculate the lodestar are also reasonable, and I previously approved the same or similar rates. *See* JLI Class Fee Order at 6. The vast majority of the time billed fell into the following ranges: for over 97% of partner hours, rates range from $275 – $1,200; for over 95.5% of senior counsel hours, rates range from $325 – $1,000; for over 94.1% of associate hours, rates range from $175 – $800; for over 90.8% of contract or staff attorney hours, rates range from $100 – $500; and for over 84.8% of paralegal hours, rates range from $50 – $425. These rates are consistent with rates approved in complex litigations throughout this District. *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,195, associate rates up to $850, $425 for contract attorneys, and

1  $325 for paralegals); *Hefler*, 2018 WL 6619983, at *14 (approving partner rates up to $1,250, $650 for associates, and $350 for paralegals); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates of up to $1600 for partners, $790 for associates, and $490 for paralegals). Capping the hourly rates that exceed the above ranges (*i.e.*, capping all partner rates at $1,200 and all paralegal rates at $425) has a minimal effect on the lodestar, reducing it by 1.19% (or $2,350,225.50). In sum, consideration of the time counsel spent at these hourly rates provides the Court no basis to doubt the reasonableness of the requested fee award.

While the Court finds the Klonoff Declaration helpful, the Court is not basing its decision on that Declaration. The Court has exercised its own, independent judgment regarding the appropriate fee award in this case. The Court grants Class Counsel's request for a 30% award of the Altria Settlement Fund.

## III. EXPENSES

"Class counsel is entitled to reimbursement of reasonable expenses." *Larsen*, 2014 WL 3404531, at *10 (citing Fed. R. Civ. P. 23(h)). In this case, Class Counsel has requested the reimbursement of the expenses of $1,000,000.

Class Counsel's request for reimbursement of expenses of $1,000,000 brings the total expense award from the combined Class settlements to $5.1 million. *See* JLI Class Fee Order at 7 (awarding $4.1 million in expenses). The Court finds that the payment of $1,000,000 from the Altria Settlement Fund would be reasonable in light of the expenses incurred by counsel, the size of the Settlement, and the relative proportion of the expenses that counsel expects to be borne by each plaintiff group. Class Counsel estimates that the expenses the class would have incurred had it litigated the case on its own and without the other plaintiff groups would likely have exceeded $10 million. The requested expense reimbursement from the Altria Settlement Fund is therefore significantly less than it otherwise would have been absent the involvement of other plaintiff groups. In other words, the class substantially benefits from the involvement of other plaintiff groups by spreading litigation costs among the various plaintiff groups.

The class would have incurred costs exceeding $5,100,000 total based just on a portion of the total case costs. In support of the $4.1 million JLI expense award, Class Counsel and the Court cited $2,050,000 in expert costs for only those experts who provided opinions in connection with class certification, over $1,450,000 for document hosting costs, and over $800,000 for costs associated with deposition transcripts and related materials. *See* Dkt. 4179 at 6-7. Additional costs in just those same categories exceed the additional expense award here. For example, since the JLI expense request was submitted, plaintiffs have incurred over $188,000 in additional document hosting expenses, and over $1,700,000 in deposition-related expenses that were not included in the JLI expense request, such as additional costs for deposition transcripts, service of subpoenas, fees for Special Master Judge Larson's services resolving disputes during depositions and ruling on objections in deposition designations, expenses for Nextpoint (a technology platform used to prepare, exchange, and review designations), and expenses for technicians to cut the deposition video corresponding to designations as plaintiffs revised and refined their cuts. Thus, on those isolated case costs alone, the class would have incurred costs exceeding the requested $1,000,000.[6]

Lastly, with respect to whether the expenses were reasonably incurred for the common benefit, Judge Andler has concluded that they were. *E.g.*, Sharp. Decl., Ex. 1 at 11 (finding that the expenses were "appropriate, fair and reasonable and for the common benefit"); *see also* Dkt. No. 4056-01 at 12 (same). By far the largest costs in this litigation related to experts, which is appropriate given the wide range of topics that Plaintiffs—and Class Plaintiffs specifically— would have had to have addressed at summary judgment and trial. The litigation also involved a large number of fact and expert depositions, and costs related to those depositions (*i.e.*, court

---

[6] Applying another metric confirms the reasonableness of the class expense figure. The requested amount is consistent with the amount that results from applying a 2% cost assessment to the Class, which is the amount of assessments paid by other plaintiffs in the litigation. *See* Dkt. 586 at 11. A 2% cost assessment on the Altria settlement alone would be $910,625.00, while a 2% cost assessment on the combined class settlements would be $6,010,625.00. Considering that the Court previously granted $4.1 million in expenses from the JLI Class Settlement, the additional $1,000,000 in expenses requested here for the class is reasonable and a fair approximation of the 2% cost assessment, both individually and in the aggregate.

13

CASE NO. 19-MD-02913-WHO

[PROPOSED] ORDER GRANTING MOTION
FOR ATTORNEYS' FEES AND EXPENSES
RE ALTRIA CLASS SETTLEMENT

reporting service) were reasonably incurred.

Plaintiffs' request for costs of $1,000,000 is GRANTED.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Class Counsel's motion and the following awards:

- Attorneys' fees in the amount of 30% of the Altria Settlement Fund ($13,659,375.00), plus a proportionate amount of accrued interest; and
- Expenses of $1,000,000.

**IT IS SO ORDERED**.

Dated: _____     _____
                                    Honorable Judge William H. Orrick