UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Class Actions | CASE NO. 19-md-02913-WHO<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF ALTRIA CLASS ACTION SETTLEMENT AND JUDGMENT** |

Class Plaintiffs[1] have moved the Court for final approval of a proposed class action settlement with Defendant Altria Group, Inc. and the other Released Parties ("Altria"), the terms and conditions of which are set forth in the Altria Class Settlement Agreement. Dkt. 4082-2. The Court previously granted preliminary approval to the proposed settlement and directed notice to the Settlement Class. Dkt. 4130.

For the reasons described more fully below, the Court GRANTS final approval of the Settlement.

## I. BACKGROUND

Class Plaintiffs and Altria seek to resolve economic loss claims (other than claims asserted in *In re Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from alleged anticompetitive conduct) asserted against Altria involving the manufacture, labeling, marketing, and sale of JUUL—an electronic nicotine delivery system consisting of an electronic cigarette and a nicotine pack called a JUULpod. Plaintiffs allege that Defendants created, marketed, and sold JUUL by misleading the public about the addictiveness and risks of JUUL, and by trying to expand the market by capturing and addicting individuals—specifically including minor users—who had not previously used tobacco or e-cigarette products. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 574 (N.D. Cal. 2020).

Bradley Colgate and Kaytlin McKnight filed the first complaint in this litigation against JUUL Labs, Inc. on April 26, 2018. Case No. 2018-cv-2499 (N.D. Cal) Dkt. 1. The first complaint against Altria was filed in April 2019. Other individual and class cases naming Altria as a defendant were subsequently filed in this Court and in other jurisdictions. The Judicial Panel on Multidistrict Litigation transferred all these cases to this Court for pretrial purposes on October 2, 2019. Plaintiffs filed a consolidated class action complaint on March 1, 2020, and then amended it on April 6, 2020. Defendants moved to dismiss, and the Court denied the motions in part and granted the motions in part with leave to amend on October 23, 2020. *In re JUUL Labs, Inc.,*

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreement and Plan of Allocation except as otherwise noted.

1

*Mktg. Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 677. Plaintiffs filed a second amended consolidated class action complaint on November 12, 2020, Dkt. 1358, and the Court denied Defendants' motions to dismiss that complaint on April 13, 2021. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 862-63 (N.D. Cal. Apr. 13, 2021).

Discovery proceeded prior to, during, and after the motions to dismiss. Defendants produced millions of pages of documents, and Plaintiffs obtained information pursuant to interrogatories and stipulations and conducted over 100 depositions of Defendants, their employees, and third parties. The parties also engaged in expert discovery, which included reports and depositions from experts on topics including the chemistry of JUUL products, the marketing of JUUL products, and classwide injury and damages.

After a contested motion to certify bellwether classes asserting federal and California law claims, on June 28, 2022, the Court certified four classes[2] of purchasers of JUUL products, appointed Class Representatives and Class Counsel, and denied related Daubert motions. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 19-md-02913-WHO, Dkt. 3327, 2022 WL 2343268 (N.D. Cal. June 28, 2022) ("Class Cert. Order"). On July 12, 2022, Defendants filed three Rule 23(f) petitions seeking permission to appeal from the Court's order granting class certification. *See* Ninth Circuit Case Nos. 22-80061, 22-80062, and 22-80063. On October 24, 2022, the Ninth Circuit consolidated the cases and granted Defendants permission to appeal. *E.g.* Ninth Circuit Case No. 22-80063, Dkt. 14. Altria's appeal was pending at the time of settlement.

On May 18, 2020, the Court appointed Thomas J. Perrelli as Settlement Master, who oversaw a years-long mediation process that led to the Altria Class Settlement Agreement. Under the Altria Class Settlement Agreement, the Class will receive $45,531,250.00 in exchange for a

---

[2] These were the **Nationwide Class** (All individuals who purchased, in the United States, a JUUL product); the **Nationwide Youth Class** (All individuals who purchased, in the United States, a JUUL product and were under the age of eighteen at the time of purchase); the **California Class** (All individuals who purchased, in California, a JUUL product); and the **California Youth Class** (All individuals who purchased, in California, a JUUL product and were under the age of eighteen at the time of purchase).

release of the class claims against Altria.³ This settlement follows the December 2022 JLI Class Action Settlement, which will release claims against JUUL Labs, Inc. ("JLI") and related entities in exchange for $255,000,000 for the Settlement Class, which received Final Approval on September 19, 2023. Dkt. 4138. In total between the settlements with JLI and Altria, the Class would release all claims against all defendants in exchange for over $300 million.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B.   Notice and Administration

The Class Settlement Administrator, Epiq Systems, Inc., previously established a settlement website at www.JUULclassaction.com, which includes: the long-form notice (explaining the procedures for Settlement Class Members to submit claims, object, or exclude themselves), a contact information page that includes address and telephone numbers for the Class Settlement Administrator and Class Counsel, the Altria Class Settlement Agreement, the Preliminary Approval Order, online and printable versions of the claim form and the opt out forms, and answers to frequently asked questions. This is the same website that Class Members were previously directed to for documents and information regarding the JLI Class Action Settlement. In addition, the motion papers filed in connection with the Altria Class Settlement and Class Plaintiffs' application for Attorneys' Fees and Expenses were placed on the settlement website after they were filed (which was before the opt out and objection deadline). The Class Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries.

Notice of the Altria Settlement was provided by: (1) direct notice via email to those Settlement Class Members for whom an email address was available; (2) direct notice via postcard mailed to those Settlement Class Members for whom a physical mailing address was available but an email address was not available; (3) publication notice of the Settlement, which comprised

---

³ In separate agreements, Altria has resolved claims brought by other claimants in the MDL, including individuals who asserted claims for personal injury, and school district and local government entities.

409,315,597 impressions, targeted at likely Settlement Class Members served across relevant internet websites and social media platforms; and (4) publication on the settlement website.

In total, the Notice Plan is estimated to have reached at least 80% of Settlement Class Members. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77%); *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *9 (N.D. Ohio Sept. 23, 2016) (approving notice plan reaching approximately 77.5 percent of class members).

The Court finds that the Notice Plan provided the best practicable notice to the Settlement Class Members and satisfied the requirements of due process.

Settlement Class Members were given until February 5, 2024 to exclude themselves from the proposed Settlement, and until February 6, 2024 to object to it. Two Settlement Class Members timely submitted objections and 197 individuals timely submitted requests to be excluded from the Settlement Class.[4] As of February 12, 2024, a total of 8,104,614 Claim Forms have been received by the Class Settlement Administrator during the Altria Settlement Claims Period, in addition to the more than 6 million claims received during the JLI Settlement Claims Period. The analysis performed to date indicates that some of the claims are duplicative and that a substantial number of claims have one or more indicia of fraud, so the total number of valid claims will likely be significantly further reduced. The Class Settlement Administrator is still in the process of further de-duplicating and evaluating the claims for indicia of potential fraud.

**C.    Certification of the Settlement Class**

For purposes of the Settlement only and this Final Approval Order and Judgment, Class Plaintiffs have moved to certify the following Settlement Class: "All individuals who purchased, in the United States, a JUUL product from brick and mortar or online retailers before December 6, 2022." Excluded from the Settlement Class are: (a) the judges in this MDL and any other judges

---

[4] Class Members who previously filed a request for exclusion as part of the prior JLI Settlement were able to file a request to "opt back in" to the JLI Settlement, and, as of February 12, 2024, there were 12 timely requests to opt-in to the JLI Settlement.

that have presided over the litigation, including the coordinated proceeding captioned *JUUL Labs Product Cases*, Judicial Counsel Coordination Proceeding No. 5052, pending in the Superior Court of California, County of Los Angeles, Department 11, Settlement Master Thomas J. Perrelli, and their staff, and immediate family members; (b) Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; (c) Class Counsel and their employees; (d) any individuals who purchased JUUL products only secondarily from non-retailers; (e) all purchases for purposes of resale or distribution; and (f) all individuals who timely and properly excluded themselves from the Settlement Class.[5]

The Court previously certified a nearly identical nationwide class under RICO. The Settlement Class is co-extensive with the certified class, except that the Settlement Class includes an end date (as is necessary to settlement administration) and applies to purchases of JUUL accessories and products in addition to JUULpods and devices. The slight differences between the litigation class and the proposed Settlement Class do not alter the Court's previous analysis, except insofar as the predominance and superiority analysis prerequisites operate differently and are easier to meet in the settlement context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The Court also previously certified for settlement purposes an identical nationwide class in granting final approval of the JLI Settlement. ECF No. 4138 at 4-7. The Court finds that the Settlement Class largely overlaps with the nationwide class previously certified by the Court and that, for settlement purposes only, there is a sound basis for expanding the scope of the previously certified nationwide class to encompass all the Settlement Class Released Claims against Altria.

---

[5] The list of individuals that timely and properly submitted exclusion requests and are therefore not members of the Settlement Class are identified in Dkt. 4195-2. In addition, the individuals listed in Dkt. 4195-3 previously excluded themselves from the Settlement Class during the JLI Settlement administration, but have now exercised their right to opt back in. The Court hereby modifies its prior order, Dkt. 4138 at 4 n.6, to amend the list of excluded parties from the Settlement Class—the twelve individuals listed in Dkt. 4195-3 shall be included in the Settlement Class.

The Court independently finds that the Settlement Class meets the requirements of Rule 23 as set forth below:

    a.    Members of the Settlement Class are so numerous as to make joinder impracticable. JLI's direct sales data, which covers only a portion of the Settlement Class, contains over two million unique names, meaning that the proposed Settlement Class contains millions of members.

    b.    There are questions of law and fact common to the Settlement Class. Those questions include the existence of a RICO enterprise, the existence of a pattern of racketeering, the existence of a scheme to defraud, and the appropriate measure of aggregate damages.

    c.    Common questions predominate over any questions affecting only individual Settlement Class Members for purposes of the Settlement because the Defendants' conduct will drive the litigation. That is particularly true in the settlement context. As the Ninth Circuit has held, "predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc) (courts are "more inclined to find the predominance test met in the settlement context") (internal quotation marks and alteration omitted). That is because "[s]ettlement may 'obviate the need to litigate individual issues that would make a trial unmanageable,' making common questions more important in the relative analysis." *Jabbari*, 965 F.3d at 1005-06 (quoting *Hyundai*, 926 F.3d at 558). Even in the litigation context, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)). Here, the central questions that will drive the litigation—the existence of the RICO enterprise and Altria's involvement in that enterprise—are common to all Settlement Class Members.

   d. Class Plaintiffs' claims and the defenses thereto are typical of the claims of the Settlement Class Members and the attendant defenses for purposes of the Settlement. Class Plaintiffs allege that Defendants misled JUUL purchasers, engaged in a fraudulent scheme to enhance JUUL sales, and engaged in unfair conduct to market JUUL products to minors. Those theories of liability and injury are the same for Class Plaintiffs and members of the Settlement Class.

   e. Class Plaintiffs and their counsel have fairly and adequately protected the interests of the Settlement Class Members in this action with respect to the Settlement, and will continue to do so. Each Class Plaintiff has the same goal as members of the proposed Settlement Class (*i.e.*, holding Defendants accountable for their alleged deceptive and youth-focused marketing). Class Plaintiffs' interests are aligned with, and not in conflict with, those of Settlement Class members. The record reflects that each Class Plaintiff has dedicated substantial time and effort to this litigation by working with their counsel; reviewing pleadings; responding to discovery; searching for, collecting, and producing documents; and preparing to sit for depositions, among other things.

   f. A class action is superior to all other available methods for fairly and efficiently resolving this action. While individuals with personal injury claims may be motivated to file individual personal injury suits, the same is not true with respect to claims for economic losses. No plaintiffs have expressed a desire to individually litigate their economic loss claims; in fact, plaintiffs sought to litigate their economic loss claims as class actions instead of through their separate personal injury complaints. Given the substantial overlap among all class members' claims, it is highly desirable to concentrate economic loss claims in a single proceeding.

  The Court appoints Bradley Colgate, Joseph DiGiacinto on behalf of C.D., Lauren Gregg, Tyler Krauel, and Jill Nelson on behalf of L.B. as the Settlement Class Representatives, and Dena Sharp of Girard Sharp LLP as Class Counsel.

**D.  Final Approval of Settlement**

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[6] In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

For the reasons further detailed below, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors. Altria disputes whether the manufacture, marketing, advertising and sale of the JUUL products was unlawful and violated RICO. There would also have been a battle of the experts regarding consumer understanding of JUUL marketing and advertising and regarding the computation of damages, if any. At the time of the

---

[6] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

Settlement, Altria and a different plaintiff in the litigation were in trial. The trial confirmed that having the Settlement Class proceed to trial against Altria would have been costly and recovery was not guaranteed.

Counsel for all Parties are highly experienced; they provided detailed declarations explaining why they supported the Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1. Settlement Class Representatives and Class Counsel Have Adequately Represented the Settlement Class.

In the Preliminary Approval Order, this Court found that the Settlement Class Representatives and Class Counsel had adequately represented the interests of the certified classes. This Court has seen no evidence to contradict its previous finding, and the Court reconfirms it here with respect to Settlement Class Representatives and Class Counsel, who have vigorously prosecuted this action through discovery, motion practice, mediation, and preparations for trial. Class Counsel "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983 *6.

### 2. The Settlement Was Negotiated at Arm's Length.

The Court finds that the Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced, Court-appointed Settlement Master, Thomas J. Perrelli. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983 *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator). Before agreeing on the terms of the Settlement, the Parties engaged in extensive factual investigation, which included dozens of depositions, the production and review of millions of pages of documents, extensive written discovery, robust motion practice, and expert discovery. Another plaintiff in the litigation asserting a claim under RICO was in trial against Altria at the time of the

Settlement. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds no such signs. Specifically, the Court finds that Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees as there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

### 3. The Cash Payments Provide Adequate Recovery to the Class.

In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983 *8 (quoting *Hanlon*, 150 F.3d at 1026).

Altria has agreed to pay $45,531,250.00 on behalf of itself and the Released Parties, which will be used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of Allocation. Settlement Class Members who submit Eligible Claims will therefore have the opportunity to receive substantial payments corresponding to their JUUL purchases. Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable, and adequate given the risks of proceeding to trial and the maximum recovery potentially available to Settlement Class Members if the Class Representatives had prevailed at trial.

### 4. The Risk of Continuing Litigation.

The amount provided for the in the Settlement is also reasonable in light of the risks of continued litigation. The Ninth Circuit has, for example, granted Altria's Rule 23(f) petition and Class Plaintiffs therefore face the risk that the Ninth Circuit would reverse or modify the Court's class certification decision. There were also substantial questions as to whether Class Plaintiffs would be able to prove at trial that Altria violated RICO and should be held liable. Both sides

believed they had persuasive facts to support their positions, and there is limited precedent available regarding the Parties' competing theories. Trial would have involved a clash of expert analysis as to Altria's liability, the methods of calculating damages, and ultimately what damages, if any, should be awarded. And even if Class Plaintiffs succeeded at trial, appeals would undoubtedly have followed.

### 5. Attorneys' Fees and Expenses.

The Parties have reached no agreements regarding the amounts of attorneys' fees and expenses to be paid. *See, e.g.*, *Hyundai.*, 926 F.3d at 569-70 (rejecting fairness objection because class counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees and expenses, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable.

### 6. Other Agreements.

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Court has reviewed the Altria Class Settlement Agreement and relevant accompanying materials, and has been made aware that Altria (on behalf of itself and the Released Parties) has agreed to fund parallel settlement programs to provide recoveries for other claimants in this MDL and the parallel JCCP proceedings, including individuals who asserted claims for personal injury, and school district and local government entities. Under the supervision of Special Master Perrelli, co-lead counsel Dena Sharp represented the Class during negotiations, and the other co-lead counsel in the MDL representing interests of the personal injury and government entity plaintiffs.

Certain of the Class Plaintiffs have asserted personal injury claims, and thus will be eligible to apply to share in the amounts allocated to the resolution of personal injury claims. Personal injury claimants will receive no favorable treatment compared to other class members. All personal injury claims will be paid from funds set aside to resolve personal injury claims, while the economic loss claims asserted by the Settlement Class will be paid from the Altria Net

11

Settlement Fund. Only after a diligent effort to identify all class members and distribute to them the full amount of the class settlement fund will the Parties confer regarding the disposition of any residual funds, the distribution of which would be subject to the Court's approval and a finding that the Parties first exhausted all reasonable efforts to distribute remaining funds to Settlement Class members. Under the terms of the Agreement, the Altria Settlement Fund is non-reversionary and no portion of the Altria Settlement Fund or Altria Net Settlement Fund will revert to Altria or any other Released Party.

### 7. The Plan of Allocation is Reasonable and Treats Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Settlement Class Members who seek benefits under the Settlement need only submit a simple claim form, and the form is prepopulated if their purchase information is known to JLI because they made purchases on the JUUL website. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011) (noting that "a claiming process is inevitable" in certain settlements such as those involving "defective consumer products sold over the counter."). If a Settlement Class Member previously submitted a claim in connection with the JLI settlement, that class member will not need to submit an additional claim to be eligible for payment from the Altria Net Settlement Fund. Further, the claim process is no more onerous than would be required after trial.

The method for distributing funds to Eligible Claimants is also reasonable, and the Plan of Allocation here is the same as the one that the Court approved in connection with the JLI Settlement. "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). The Court finds that the Plan of Allocation is fair, reasonable, and adequate and is hereby approved.

Under the Plan of Allocation, all Settlement Class Members who submit claims will receive cash payments based on their *pro rata* allocation of the Altria Net Settlement Fund (combined with their *pro rata* share of the JLI Net Settlement Fund). The Plan of Allocation

provides higher payments for those who first purchased when they were underage. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), Dkt. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the comparative weakness of certain claims). The enhanced payments for those who began purchasing when underage is based on Class Plaintiffs' full refund theory of recovery as to their youth targeting claims, as opposed to the price premium damages model applicable to other claims. *See id.* at *17 (holding "Plaintiffs' full refund model, with respect to the Youth Classes, supports certification" because such sales were allegedly illegal). Further, it is rational to provide the enhancements for all purchases by such persons, even after the warnings were augmented or the purchasers reached adulthood, because of the addictive nature of the JUUL Products.

Setting a cap on the recoveries by Claimants who lack proof of purchase while claims that are accompanied by proof of purchase will not be capped is also reasonable. The use of a cap for Claimants without proof of purchases ensures a fair distribution and serves to disincentivize illegitimate or exaggerated claims. *See, e.g., In re Groupon, Inc.*, No. 11md2238 DMS (RBB), 2012 WL 13175871, at *6 (S.D. Cal. Sep. 28, 2012) (holding requirement of a voucher number or other proof of purchase serves "to ensure that money is fairly distributed for valid claim."). Such a cap is a common feature of consumer class action settlements. *See, e.g., Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *30 (N.D. Cal. Feb. 5, 2020) (finally approving settlement with cap on no-proof claims); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) (approving settlement with cap for claims without proof of purchase, stating that such a claim process "would be no different than that required after trial."); *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 WL 990495, at *2 (C.D. Cal. Mar. 13, 2013) (finally approving settlement with claims limited to $10.65 (e.g., 3 bottles) without proof of purchase, with no cap on claims accompanied by a proof of purchase, for example a receipt or product packaging).

Settlement Class Members can elect their preferred method of payment, including mailed check, direct deposit, PayPal, or prepaid MasterCard. After an initial distribution, if there are

1  substantial funds from uncashed payments and it is economically rational to do so, the monies will
2  be redistributed to the Settlement Class Members who made claims and accepted their initial
3  distribution payments where economically feasible. Only if residual funds remain thereafter will
4  they be otherwise distributed, subject to the Court's approval.

5  **8.     The Response of Class Members**

6  Out of millions of Settlement Class Members, there were 197 opt-outs of the Altria
7  settlement and 2 objections. In comparison, as of February 12, 2024 Settlement Class Members
8  had submitted an estimated 8,104,614 Claims—in addition to the 6,349,982 claims submitted in
9  connection with JLI settlement that also serve as claims for purposes of the Altria Settlement. *See*
10 Supplemental Declaration of Cameron Azari, Dkt. X at ¶ 35. Although Class Counsel and the
11 Settlement Administrator have advised that the number of claims will likely be reduced
12 significantly as a result of weeding out fraudulent claims and removing duplicate claims submitted
13 for both settlements, these figures represent a positive response. *See Churchill Village, LLC v.*
14 *General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may infer
15 appropriately that a class action settlement is fair, adequate, and reasonable when few class
16 members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24,
17 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents
18 a sufficient basis upon which a court may conclude that the reaction to settlement by the class has
19 been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A
20 court may appropriately infer that a class action settlement is fair, adequate, and reasonable when
21 few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*,
22 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements
23 where notice relied on media notice exclusively, the claims rate ranged between 0.002% and
24 9.378%, *with a median rate of 0.023%*").

25 **a)     Orr Objection**

26 Edward Orr objects that the settlement website was not sufficiently accessible to disabled
27 Class Members, that the settlement website was not secure because it redirected to another

28

1  website, and that there was a typo in the address of this Court, which might have prevented Class
2  Members from submitting objections to the Court.
3        The Court finds that, as described in the declaration of the Settlement Administrator, the
4  settlement website was sufficiently secure and did not redirect to any unauthorized website. Supp.
5  Azari Decl., Dkt. X at ¶ 40. The Court also finds that the notice and website meet standard
6  guidelines for accessibility. *See id.* ¶ 41. Accessibility in the administration of class action
7  settlements is imperative, and here, "Epiq's efforts to ensure the functionality and accessibility of
8  the Settlement website were reasonable," and the result of those efforts adequate. *See Grayson*,
9  2020 WL 4282185, at *1 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 113-14
10  (2d Cir. 2005) ("the standard for the adequacy of a settlement notice in a class action under either
11  the Due Process Clause or the Federal Rules is measured by reasonableness")).
12        Finally, the typographical error in the Court's address on the long form notice caused no
13  prejudice to Class Members, as the notice clearly required (consistent with the Court's preliminary
14  approval order) that all objections be sent both to the Court and the Settlement Administrator.
15  Class Counsel and Epiq corrected the typo as soon as it was brought to their attention, and it did
16  not prevent any Class Members, including Mr. Orr, from being able to file an objection.
17        The Orr objection is OVERRULED.

          **b)    Addeo Objection**

19  Jaclyn Addeo objects to certain elements of the Plan of Allocation. To start, the Addeo
20  objection is procedurally deficient, because it was not sent to either the Court or to the Claims
21  Administrator as required by the Preliminary Approval Order, and is overruled on that basis. But
22  even if the Court were to consider the merits of the objection, it would still be overruled.
23        Addeo argues that it is unfair to cap undocumented Retail Expenditures at $300 and to
24  assign extra points for Youth Purchases, and objects to the Plan's provision allowing any
25  remaining funds following redistribution to paid to an "appropriate recipient" with Court approval,
26  asserting that an "appropriate recipient" is insufficiently defined. For the reasons discussed in
27  section II.D.7 above, the Court finds that the Plan of Allocation is fair, reasonable, and adequate.

1   The cap on claimed Retail Expenditures without supporting documentation is both standard and
2   fair, and the point system for Youth Purchases reasonably reflects the relative strength of the
3   claims in litigation. Finally, any residual funds will only be paid to an appropriate recipient if the
4   amount remaining so small that further distribution to Class Members is uneconomical. If that
5   situation comes to pass, the Court can fairly and adequately assess an appropriate recipient in
6   granting the required approval for any such payment. The Addeo objection is therefore
7   OVERRULED.

8   **E.   Releases and Effect of This Order**

9              **1.   Releases by Settlement Class Members**

10          By operation of this Order and Judgment, on the date specified in the Class Settlement
11  Agreement, Settlement Class Members, including the Settlement Class Representatives, release
12  and forever discharge and hold harmless the Released Parties of and from any and all Settlement
13  Class Released Claims which the Settlement Class Member ever had, now have, or will have in
14  the future. The Settlement Class Released Claims shall not release any Settlement Class
15  Member's: (i) claim(s) for personal injury against the Released Parties; (ii) claims asserted in *In re*
16  *Juul Labs, Inc. Antitrust Litigation*, Case No. 3:20-cv-02345-WHO that arise from alleged
17  anticompetitive conduct; or (iii) right(s) to enforce the Altria Class Settlement Agreement.
18  Settlement Class Members shall not release their claims if either the Effective Date does not occur
19  or the Settlement Amounts are not paid. The scope of the Released Claims is consistent with the
20  economic loss claims pled in the class action complaint.

21             **2.   Waiver of Provisions of California Civil Code § 1542**

22          By operation of this Order and Judgment, with respect to the Settlement Class Released
23  Claims, Class Plaintiffs, the Released Parties, and Settlement Class Members shall be deemed to
24  have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and
25  benefits conferred by any law of any state of the United States, or principle of common law or
26  otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil
27  Code, which provides:
28

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs, Altria (on behalf of itself and the Released Parties), and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

The Settlement Class Released Claims of the Settlement Class are dismissed with prejudice and without costs. Accordingly, the Second Amended Consolidated Class Action Complaint and any other complaints in the litigation asserting Settlement Class Released Claims are hereby dismissed with prejudice and without costs.

### 3. Compliance with Class Action Fairness Act

The record establishes that the Class Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). Dkt. 4193-3 ¶ 9.

### F. Costs of Administering the Class Settlement

While the notice of the Altria Settlement occurred separately from the previous notice of the JLI settlement, because class members only need to submit one claim to be eligible for payment from both settlements, there will only be a single claims administration and distribution process for the two settlements.

The Class Settlement Administrator has submitted invoices for its expenses incurred to date for providing notice, processing claims received, and administering both settlements. As of February 12, 2024, those expenses total $4,553,239.40. The Class Settlement Administrator has stated that it expects to incur additional amounts through the completion of its work and the distribution of the settlement funds, and in particular in the management of the high volume of fraudulent claims that have been submitted. Although the exact amount of future expenses depends on several factors in the ongoing claims review process, the Administrator estimates that

17

the total cost to provide notice and administration for both Settlements will range between $8.55 million and $9.66 million.

The Court has previously authorized the payment of up to $6,000,000 for settlement administration expenses in connection with the JLI and Altria Class settlements combined, inclusive of the $3,000,000 authorized for the JLI Class Settlement administration in the JLI Preliminary Approval Order as well as the $2,500,000 authorized for the Altria Class Settlement administration in the Altria Preliminary Approval Order. Dkt. 4138 at 19. To the extent Class Counsel seeks approval of payments in addition to the $6,000,000 authorized above, it shall do so through a separate motion with supporting documentation. In no event shall the Class Settlement Administrator receive payment exceeding its actual, documented out-of-pocket costs.

**G.    Other Effects of This Order**

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Altria Class Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Altria Class Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Altria Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Altria Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Altria Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Altria's and the Released Parties' agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession that class certification was or would be appropriate in the litigation outside of the context of settlement or would be appropriate in any other action.

Except as provided in this Order, Class Plaintiffs shall take nothing against the Released Parties by the Released Claims. This Order shall constitute a final judgment binding the Parties and Settlement Class Members with respect to the Released Claims.

No distributions shall be made from the Altria Settlement Fund, and any account holding the Altria Settlement Fund, without the written authorization of Class Counsel.

Defendants will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant. No Settlement Class Member or any other person will sue or have any claim or cause of action against the Settlement Class Representatives, Class Counsel or any person designated by Class Counsel, Co-Lead Counsel or the Class Settlement Administrator arising from or relating to the Altria Settlement, the Released Claims, the litigation, or determinations or distributions made substantially in accordance with the Settlement or Orders of the Court, including this Final Approval Order and Judgment.

Without affecting the finality of the judgment hereby entered, the Court reserves exclusive jurisdiction over the implementation of the Altria Class Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Altria Class Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions ex ante.

Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Altria Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

Dated: _____, 2024

_____
Hon. William H. Orrick
U.S. District Judge