[Submitting counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>CLASS ACTIONS | CASE NO. 19-md-02913-WHO<br><br>**CLASS COUNSEL'S NOTICE REGARDING ADMINISTRATION OF THE JLI AND ALTRIA CLASS ACTION SETTLEMENTS**<br><br>HON. WILLIAM H. ORRICK III |

In this MDL, the Court granted final approval of Class Plaintiffs' JLI Settlement in September 2023, Dkt. 4138, and, following a hearing on March 6, 2023, granted final approval of the Altria Settlement on March 14, 2023, Dkt. 4212. The combined claimant population is subject to a single review process, and valid claimants will receive a distribution representing their share of both Settlements. *See* Dkt. 4212 at 15. 14.4 million total claims on the Settlements were submitted, nearly five times the number of claims anticipated. Preliminary analyses conducted by Epiq, the Settlement Administrator, indicated that a very large number of claims had indicia of fraud—unfortunate, though consistent with recent industry trends.

At the hearing on March 6, 2024, the Court requested updates and further information regarding the identification and handling of fraudulent claims, as described in the filings Class Counsel had made leading up to the final approval hearing. Consistent with that discussion and per the Court's March 6, 2024 minute order, Class Counsel and Epiq submit this proposed plan for claims handling and fraud evaluation. Class Counsel and Epiq also are now in a position to provide the Court an update on settlement administration expenses: Epiq can now commit to a lower cost estimate than previously provided, with costs to implement the proposed plan (if approved) and complete the administration of the settlements not to exceed $7,500,000, as detailed further below. Class Counsel and a representative from Epiq will be prepared to discuss the proposed claims handling process, as well as administration expenses, at the upcoming Case Management Conference on May 6, 2024.

Finally, at the March 6 hearing, the Court also encouraged Class Counsel to pass along any information discovered regarding the filing of fraudulent claims to the U.S. Attorney's Office for further investigation. Class Counsel is working with Epiq to identify any such information from the claims submitted in the settlements before this Court, and has also convened a working group of settlement administrators to collect relevant information and identify industry trends that may assist the U.S. Attorney's Office in any potential investigation. That work is ongoing, and Class Counsel will be prepared to report on it at the May 6 hearing.

## I.   HANDLING OF CLAIMS WITH INDICIA OF FRAUD

Epiq has conducted an analysis of the 14.4 million claims in the JLI and Altria Settlements to evaluate each claim for indicia of fraud. As described in the Declaration of Loree Kovach in Response

CLASS COUNSEL'S NOTICE RE ADMINISTRATION OF THE  JLI AND ALTRIA CLASS
ACTION SETTLEMENTS
CASE NO. 19-md-02913-WHO

to the Court's Request For Steps Taken to Identify, Analyze, and Handle Likely Fraudulent Claims ("Kovach Decl." or "Kovach Declaration"), claims have been categorized as high, medium, or no/low indicia of fraud based on this evaluation, and the proposed plan for handling claims in each group is described below.

Based on this fraud analysis, Epiq now estimates that, after the verification process described below and subsequent eligibility review, there will be between 750,000 to 1.5 million valid claims that will ultimately be eligible to receive payment. Kovach Decl. ¶ 46.f. This is a lower range than the prior estimate, which was based on conservative estimates and a preliminary fraud analysis that has now been honed significantly. But even so, compared against the estimated class size of 6 to 11 million class members, it represents a claims rate of approximately 13% using the average of both figures (or between 25% and 7% on the high and low end)—a positive result by any metric.

To prevent fraudsters from learning how to better evade detection, Class Counsel has requested the Court seal some of the detail regarding the fraud analysis, but has worked closely with Epiq to leave as much information unredacted as possible.

### A.    Fraud Scoring Results

Epiq, working with its digital payment partner, Digital Disbursements, evaluated 26 different indicia of fraud present in the claims population and applied a fraud scoring model to classify claims based on whether and to what extent they exhibit indicia of fraud. Epiq concluded that:

- 759,953 claims (5.26%) exhibit No or Low Indicia of Fraud;
- 2,499,216 claims (17.29%) exhibit Medium Indicia of Fraud; and
- 11,193,267 claims (77.45%) exhibit High Indicia of Fraud.

Kovach Decl. ¶ 8. Each of the 26 indicia of fraud included in the scoring model are detailed in the Kovach Declaration, along with a description of how each indicium was weighted in the scoring model and the prevalence of that indicium in the claimant population. *See generally id.* ¶¶ 14–40. Where data is available, the Kovach Declaration also includes information about trends in other class action settlements, where certain indicia of fraud have been rapidly growing in prevalence in recent years. *Id.*

Class Counsel, on Epiq's recommendation and subject to Court approval, proposes to implement the following plan for the handling of claims. First, claims with No or Low Indicia of Fraud

CLASS COUNSEL'S NOTICE RE ADMINISTRATION OF THE  JLI AND ALTRIA CLASS
ACTION SETTLEMENTS
CASE NO. 19-md-02913-WHO

will proceed to eligibility review, where any documentation they submitted will be reviewed and they will be given an opportunity to cure any deficiencies in the substance of their claim. *Id.* ¶ 8. Claims with no deficiencies (or deficiencies that are resolved) will be considered valid claims that are eligible for payment. Second, claims with High Indicia of Fraud will be rejected as clearly and obviously fraudulent, without expending further class funds to send rejection notices. *Id.* Finally, claims with Medium Indicia of Fraud will be given notice that their claim has been flagged and an opportunity to verify their claim. *Id.* Medium Indicia claims that complete the verification requirements will be passed on to the eligibility review along with the No/Low Indicia claims, and those that do not successfully complete verification will be rejected consistent with the treatment of High Indicia claims. *Id.*

The proposed handling for the Medium and High Indicia groups is designed to ensure a fair process, providing claimants notice and an opportunity to verify their claims where warranted without needlessly spending class funds to notify obviously fraudulent and/or fictional claimants of their rejection. Kovach Decl. ¶ 9. Consistent with the Court's comments at the March 6 hearing, Class Counsel and Epiq have carefully drawn the line between the Medium and High Indicia groups to have confidence that only bots and mass-fraudulent filers, not legitimate claimants, are in the High Indicia group. *See* March 6, 2024 Hearing Tr. at 11 (THE COURT: "I'm not concerned about the bots. I'm not concerned about the fraudsters, but I am concerned about somebody who incompletely filled out the form or did something that hit the fraud indicia indicator but was not being at all fraudulent."). The fraud scoring model takes a conservative approach, assigning low weight to most individual indicia such that nearly all claims in the High Indicia group have three or more indicia of fraud. Kovach Decl. ¶ 13.e. (99.18% exhibit two or more indicia of fraud, and 94.47% exhibit three or more indicia).

In addition, Class Counsel and Epiq propose, based on the particular facts of this case, that certain claims be included in the Medium Indicia group despite their original score, to ensure fair treatment. For example, the vast majority of claims that were purportedly submitted by individuals included in JLI's own sales database, the "direct purchaser" group, had No/Low Indicia of fraud, but some did originally score Medium and High Indicia. *Id*. ¶ 41–42. Epiq is conducting further review of these claims and, in an abundance of caution, even those High Indicia claims that purport to be from direct purchasers will be given an opportunity to verify their claims. *Id.* As another example, Class

Counsel instructed Epiq to analyze submissions that claimed (under penalty of perjury) undocumented purchase amounts that far exceed credible purchase amounts of JUUL products for personal use (as the Class Definition excludes purchases for resale or distribution). *See* Altria Final Approval Order, Dkt. 4212 at 5 (class definition); Kovach Decl. ¶ 43 (describing analysis). While most of these claims were already in the Medium or High indicia group, the approximately 4,600 claims that otherwise scored No/Low Indicia have been placed into the Medium Indicia group and will be required to verify their claims.[1] *Id.* As described below, the verification process is a low hurdle for any legitimate claimant.

As a result of the scoring model and decisions hewing toward maximizing valid claims, claims with significant indicia of fraud are likely to fall into the Medium Indicia group to ensure that any valid claimant who is flagged in error is given an opportunity to verify their claims and proceed to eligibility review.

**B.      Verification Procedures**

The proposed verification procedures are designed to allow legitimate claimants to quickly and easily verify their claims, while weeding out fraudsters and bots. Kovach Decl. ¶¶ 9–11. Each Medium Indicia claimant will be sent a link to a verification website, which includes enhanced fraud control tools designed to identify tactics used by fraudsters and/or prevent them from being able to complete the verification. *Id.* ¶ 9. On the website, each claimant will be prompted to take simple additional steps to electronically verify their claim, or alternatively to download, complete, and mail in a verification form. *Id.* ¶¶ 9–10. For each of the approximately 2.5 million claims in the Medium Indicia group, Epiq will send the verification notice via email to the contact email addresses provided on each claimant's claim form. *Id.*

Based on prior communications to claimants in this administration process, Class Counsel and Epiq anticipate that some small portion of these email notices will be undeliverable. For example, when Epiq emailed notice of the Altria Settlement to the over 6 million claimants in the JLI Settlement, approximately 270,000 of those emails bounced. Most of these previously-bounced claimants are in

---

[1] This analysis is separate from the Plan of Allocation's cap on annual purchase amounts credited for the allocation process, which will be applied to claims that pass eligibility review.

CLASS COUNSEL'S NOTICE RE ADMINISTRATION OF THE  JLI AND ALTRIA CLASS
ACTION SETTLEMENTS
CASE NO. 19-md-02913-WHO

either the No/Low Indicia or High Indicia groups (meaning their claims are either advanced to eligibility review or rejected without verification), but approximately 19,000 are in the Medium Indicia group that will be sent a verification email. While a previous bounce does not guarantee that future emails will be undeliverable, Class Counsel and Epiq created a plan to attempt to contact any Medium Indicia claimants to whom Epiq's first verification notice email is undeliverable. Some claimants provided an email address associated with their payment method that is different from their contact email, and Epiq will make a second attempt via email to that alternate email address if it is available. Kovach Decl. ¶ 9. For undeliverable Medium Indicia claimants without an alternative email, Epiq also has the option to provide a second verification notice attempt via text message sent to the telephone number provided in the claimant's contact information. *Id.* Claimants were generally advised that the Settlement Administrator would contact them about their claims if needed using the contact information they provided, but were not specifically informed that such communications might include text messages. Therefore, Class Counsel and Epiq agree that it would only be appropriate to send text messages to claimants with the Court's approval and at the direction of the Court. *Id.*

Class Counsel and Epiq propose implementing a 20-day deadline for the Verification Process, and Epiq will send a reminder email to Medium Indicia claimants who do not respond within the first 10 days. Kovach Decl. ¶ 11. Class Counsel submits that this procedure fairly balances the interests of all claimants. Epiq estimates that up to 20% of the Medium Indicia group will successfully complete the verification process. *Id.* ¶ 46.d. Those who pass verification will proceed to standard eligibility review along with the claimants in the No/Low Indicia group. *Id.* ¶ 8.a.

## II.   SETTLEMENT ADMINISTRATION EXPENSES

As detailed in the Supplemental Declaration of Cameron R. Azari, Esq., in Support of Class Plaintiffs' Motion for Final Approval of Altria Class Action Settlement, as of February 12, 2024, Epiq had invoiced a combined total of $4,553,239.40 to administer the JLI and Altria Class Settlements. Dkt. 4198-1. Since then, Epiq has invoiced an additional $78,094.15 for continued settlement administration of the Altria Settlement and $50,487.77 for the JUUL Settlement (an updated combined total of $4,681,821.32). Kovach Decl. ¶ 44. These amounts include media, print, email, postage, claim intake, email and telephone correspondence, and other necessary administrative tasks for both settlements. *Id.*

CLASS COUNSEL'S NOTICE RE ADMINISTRATION OF THE  JLI AND ALTRIA CLASS
ACTION SETTLEMENTS
CASE NO. 19-md-02913-WHO

The Court previously authorized the payment of up to $6 million to Epiq for settlement notice and administration costs across both the JLI and Altria settlements, and noted that, "if needed, Class Counsel may seek approval of payment of additional costs with supporting documentation." Dkt. 4138 at 19; Dkt. 4212 at 16 (same).

With regard to future costs to complete final claims determinations and distribute the Settlement Funds, Epiq previously estimated that administration costs would total between $8.55 million to $9.66 million, based on the preliminary fraud analysis. Now, with the benefit of the more fulsome fraud analysis described above and based on additional settlement administration work and close discussion with Class Counsel, Epiq has been able to revise and reduce the total cost estimate to between $7.21 million and $7.5 million. Kovach Decl. ¶ 45. This reduction includes Epiq's offer to waive certain administration fees.

Epiq is now confident costs will not exceed $7.5 million, and may be lower, depending on the number of claimants who respond to the verification emails and deficiency notices, and the amount of time needed to review supporting documentation. But Epiq can say for certain that costs will not exceed $7.5 million: assuming the Court approves the proposed plan for handling the fraudulent claims or one that is substantially similar, Epiq has committed to $7.5 million as a hard cap, and not to invoice Class Counsel for any settlement administration services in these Settlements for costs that exceed the cap, if any. *Id*. ¶ 48. Given the rampant fraud that has impacted this Settlement, described above, Plaintiffs submit that the additional $1.5 million in administrative costs above the $6 million the Court pre-approved at the beginning of the notice process is reasonable, and will help ensure that only valid claimants receive Settlement Funds.

Class Counsel will continue to work with Epiq to complete the administration of the Settlements in an efficient and cost-effective manner. Based on the understanding that the Court has not approved any additional costs above the $6 million already approved, and because invoiced costs have not yet exceeded that amount, Class Counsel will plan to submit actual invoices in excess of $6 million for approval once they are received or imminent. Class Counsel will submit an accounting of Epiq's costs and requests for payment when they move the Court to authorize the distribution of the settlement fund at the conclusion of the claims review process.

III.    CONCLUSION

Class Counsel respectfully requests that the Court approve this plan for the handling of claims with indicia of fraud. A proposed order is submitted with this notice.

Dated:  April 24, 2024                                Respectfully submitted,


                                                      By: /s/ *Dena C. Sharp*

                                                      Dena C. Sharp
                                                      **GIRARD SHARP LLP**
                                                      601 California St., Suite 1400
                                                      San Francisco, CA 94108
                                                      Telephone: (415) 981-4800
                                                      dsharp@girardsharp.com

                                                      *Co-Lead Counsel and Settlement Class Counsel*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on April 24, 2024, I caused the foregoing document to be electronically filed

3    with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the

4    filing to all counsel of record.

5

6                                             _____/s/ *Dena C. Sharp*_____
                                                   Dena C. Sharp
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS COUNSEL'S NOTICE RE ADMINISTRATION OF THE  JLI AND ALTRIA CLASS
ACTION SETTLEMENTS
CASE NO. 19-md-02913-WHO