UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, | Case No. 19-md-02913-WHO<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA** |
| This Document Relates to:<br><br>ALL ACTIONS | |

Pursuant to Civil Local Rule 16-10(d) and this Court's May 6, 2024 Order, counsel to the ten Schlesinger Firm personal injury plaintiffs who have elected to opt-out from Plaintiffs' settlements with JLI and/or Altria (the "Schlesinger opt-outs"), counsel to Defendant Juul Labs, Inc. ("JLI"), counsel to the JLI Settling Defendants[1], counsel to the independent retailer Defendants, and counsel to Defendants Altria Group, Inc., Philip Morris USA, Inc., Altria Client Services LLC, Altria Enterprises LLC, and Altria Group Distribution Company ("Altria"), (collectively referred to herein as the "Parties") respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Further Case Management Conference scheduled for May 29, 2024.

I. **PARTICIPANT INFORMATION**

The May 29, 2024 CMC will proceed by Zoom. Anyone who wishes to attend the conference virtually may log in using the information available at: https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

---

[1] Specifically the JLI Settling Defendants include: JUUL LABS, INC., previously d/b/a PAX LABS, INC. and PLOOM INC.; JAMES MONSEES; ADAM BOWEN; NICHOLAS PRITZKER; HOYOUNG HUH; RIAZ VALANI; MOTHER MURPHY'S LABS, INC.; ALTERNATIVE INGREDIENTS, INC.; TOBACCO TECHNOLOGY, INC.; eLIQUITECH, INC.; MCLANE COMPANY, INC.; EBY-BROWN COMPANY, LLC; CORE-MARK HOLDING COMPANY, INC.; CHEVRON CORPORATION; CIRCLE K STORES INC.; SPEEDWAY LLC; 7-ELEVEN, INC.; WALMART; WALGREENS BOOTS ALLIANCE, INC.

II. **ISSUES TO BE DISCUSSED AND PROPOSED AGENDA**

   1. **Scheduling Order for the Schlesinger opt-outs**

   2. **Altria's Pending Motion in Connection with its Settlement**

III. **THE SCHLESINGER OPT-OUT SCHEDULING ORDER**

At the May 6, 2024, Case Management Conference, this Court expressed its tentative opinion, which included the following:

- The Court would follow Case Management Order No. 17 ("CMO No. 17") with respect to scheduling;

- The Court does not intend to try the opt-out cases, and that long form complaints and answers may be helpful to a trial judge unfamiliar with the issues;

- The Court will schedule motions to dismiss, if any, to be heard during the dispositive motion stage that is to immediately follow the Additional Discovery stage contemplated by CMO No. 17;

- The Court will not limit the Additional Discovery stage to three plaintiffs, and all opt-out plaintiffs will proceed with discovery concurrently; and

- The Court does not see the need for a three-month extension to any Scheduling Order entered to afford Altria time for additional discovery under CMO No. 19.[2]

*See* Docket No. 4229.

While the Court expressed these tentative rulings and heard the Schlesinger Firms', JLI and the JLI Settling Defendants', and Altria's positions, the Court continued any ruling to May 29, 2024, and requested the Parties submit their positions on these tentative rulings, if any, in this May 22, 2024, Joint Case Management Statement. Accordingly, and pursuant to this Court's order, the Parties submit the following.

   1. **Additional Discovery Schedule**

At the May 6, 2024, status conference, this Court expressed its tentative view that it intends to follow CMO No. 17, and that trial dates would not to be set until the conclusion of the Additional

---

[2] This Court also expressed its tentative opinions related to the preservation deposition of Plaintiff Walker McKnight and ordered the Parties to meet and confer to seek to resolve the outstanding issues. Because the Parties were unable to reach an agreement, in accordance with this Court's May 6, 2024 order, the Parties submitted separate discovery letters to the Court regarding Mr. McKnight on May 13, 2024 and this Court issued an Order related thereto on May 14, 2024. The Parties, therefore, do not address any issues related to Mr. McKnight here.

1  Discovery stage and initial dispositive motion practice, which should commence prior to full fact
2  and expert discovery. *Id.* at 8:4-10. The Parties maintain their respective positions as expressed on
3  the record at the May 6, 2024, status conference.

### Schlesinger Opt-Outs' Position

The Schlesinger Opt-Outs, respectfully, again urge the Court to modify CMO 17 and CMO 19 to order that Defendants submit case-specific expert reports and provide dates for their experts' depositions. Good cause exists for such modification. Only ten cases – out of thousands – remain. Neither the parties nor the Court could anticipate that so few cases would opt-out of the settlement when CMO 17 was entered. The Schlesinger Opt-Outs met their case-specific production requirements. They are not seeking to re-open general liability discovery. Instead, they are simply seeking to conduct mutual case-specific discovery. This would streamline the cases. It would be efficient and economical for the Court and the Parties to address *Daubert* and dispositive motions once, rather than piecemeal. Defendants claim that CMO 17 puts them on equal footing with the Opt-Outs. But they have it backwards. At this point, Defendants have long had the benefit of Plaintiffs' productions including their respective experts' Rule 26 reports to review, analyze, and prepare to challenge. Absent modification, Defendants will not have to provide any case-specific responsive material for many more months. Such one-sidedness is inequitable. Plaintiffs' proposal here would also benefit the district courts that will receive these cases upon remand.

### Defendants' Position

This Court should reject the Schlesinger opt-outs' arguments now as it has in the past; merely repeating the same arguments is decidedly not "good cause." CMO No. 17 limits the discovery that the parties can take during the Additional Discovery period with good reason. The Additional Discovery period serves to place Defendants on equal footing with the Schlesinger opt-outs, by permitting them to obtain the discovery necessary to test the validity of Plaintiffs' claims. The Schlesinger opt-outs have ample discovery (including written discovery and deposition testimony) from JLI and the JLI Settling Defendants at their disposal from the MDL proceedings. But they have not themselves responded to discovery requests or sat for a single deposition. The Additional Discovery phase is not designed for "full fact and expert discovery," which CMO No. 17 provides for at a later time. If the Schlesinger opt-outs need case-specific discovery, they will

have time to get it later (assuming any case survives the dispositive motions provided for after the Additional Discovery period). The Schlesinger opt-outs have been aware of these requirements since CMO No. 17 was entered in January 2023, before any plaintiff had to decide whether to settle their claims or opt-out and litigate. They chose to opt-out; the Court should not let the Schlesinger opt-outs avoid the very obligations they agreed to in electing to pursue their claims.

### 2. Long Form Complaints

At the May 6, 2024, status conference, this Court expressed its tentative view that it does not intend to try the Schlesinger opt-outs' cases and that the time to address remand motions has ripened. Relatedly, the Court expressed the opinion that long form complaints and answers may be necessary, as "the judges who ultimately get these cases are going to want to see complaints and answers." *Id.* at 8:13–15.  The Parties maintain their respective positions as expressed on the record at the May 6, 2024 status conference and elaborate further here.

**Schlesinger Opt-Outs' Position**

The Court should overrule Defendants' request that the Opt-Out Plaintiffs file long-form complaints.  The very purpose of having a master complaint with individual short-form complaints is to avoid what Defendants suggest – which would amount to little more than duplicating, essentially copying and pasting, the work that was done long ago.   During the status conference, the Court contemplated that remand courts may be unfamiliar with the issues in the case, and that individual, long-form complaints may be helpful.  First, remand courts will have the master complaint and the Opt-Out's respective short form complaint. The general practice is that before a case is transferred from the MDL Court, the Parties meet and confer on selecting all the MDL docket entries that they deem relevant, and those pleadings and orders are then transmitted to the remand court.  Second, the likely course of events is that once a case is transferred, the judge will order the Parties to submit a case management statement and schedule a status conference.  The Parties will surely apprise the remand court of their respective overview of the case, the issues, and whatever case-event deadlines must be set to move the case forward.  It must also be noted that Judge Cunningham rejected the same arguments Defendants made in the JCCP, and held that the JCCP-Schlesinger Opt-Outs do not need to amend their complaints.  While the JCCP complaints were individualized, rather than short-form, it is the Schlesinger Firm's understanding that the

complaints were all substantially the same. The complaints were not particularized to any one plaintiff. Defendants suggest further coordination with the JCCP, where there are nine Schlesinger Opt-Out cases. Similar to the process here, the Schlesinger Firm and the Defendants submitted dueling case management schedules. After hearing argument on the different proposals, Judge Cunningham has ordered Defendants to submit an amended schedule that includes a proposed trial date, as their original schedule omitted one. Judge Cunningham raised the possibility of trial in May 2025. With this, any coordination with the JCCP should not interfere with Judge Cunningham's insistence on entering a scheduling order with a trial date.

Defendants' maintain that the short-form complaints are not specific enough to each defendant. This ignores that the master complaint contains sufficient, specific allegations of Defendants' conduct giving rise to the causes of action asserted. Defendants, therefore, have adequate notice of the underlying acts that form a basis for the relief Plaintiffs seek. It is of no moment that Defendants identify a bellwether plaintiff who inserted advertisements he saw in his complaint, or that he narrowed the number of Defendants he was suing. Discovery and dispositive motion practice narrows the issues and pleadings, not starting over with new complaints.

Defendants next raise a due process concern about permitting motions to dismiss. The Court, however, ruled that such motions may be filed after the Additional Discovery period. Thus, Defendants necessarily retain their rights to file whatever motions they deem necessary. Long-form complaints does not bear on this issue.

The Court should now decide motions to remand to state court. Subject matter jurisdiction is to be addressed expeditiously. If the Court lacks subject matter jurisdiction, then the Court should not address any *Daubert* or dispositive motions because it respectfully does not have the authority to do so. Three Schlesinger Opt-Out Plaintiffs' cases are ripe for remand: *McKnight*, *Shapiro*, and *Fay*. The motion is fully briefed in *Shapiro*. The Court should set briefing schedules in *McKnight* and *Fay*.

**Defendants' Position**

The Court should require the Schlesinger opt-outs to file long-form complaints. Additionally, the Court should address any remand motions after the Additional Discovery period,

together with any *Daubert* or dispositive motions.

*First*, the Court was correct that long-form complaints and answers would help "sharpen [the] focus" of the Schlesinger opt-outs' claims. This principle should apply no matter whether the Schlesinger opt-outs' cases are transferred to other trial courts, as many of the Defendants in those cases have received no notice of what actions they allegedly took with respect to the Schlesinger opt-out plaintiffs.

The short-form complaints have outlived their usefulness. When this Court entered CMO No. 7 in March 2020, the use of Master Pleadings and a short-form complaint made sense—385 cases were pending, with more actions anticipated. The number ballooned to over 3,000 by December 2022. In that context, short-form complaints helped avoid "the inefficiency of drafting individual Complaints and Answers to those Complaints" and "streamline[d] the process for the Court's consideration of dispositive motions." (CMO No. 7 at pg. 1).

The context has changed. Nearly 3,500 personal injury plaintiffs have now settled and dismissed their claims against JLI and the JLI Settling Defendants, and only eleven personal injury claims remain pending.[3] Continuing to rely on the short-form complaints at this stage risks prejudice to Defendants, as the complaints only generally identify claims and defendants, without specific allegations against each of the 24 defendants.[4] Further, no discovery (including CMO No. 17 discovery) reveals what conduct each Schlesinger opt-out attributes to many of the Defendants.

The short-form complaints and fact sheets are an inadequate proxy for long-form complaints. To begin, those documents provide no information about the specific claims against each defendant—they were not meant to. By contrast, bellwether plaintiff Roberto Pesce's complaint identified dozens of JUUL ads, Instagram posts, and other items that he allegedly saw

---

[3] In addition to the ten Schlesinger opt-outs, one opt-out plaintiff case is pending, but has not yet reached the Additional Discovery stage of proceedings – *Jay Patel v. Juul Labs, Inc., et al*, 3:20-cv-6985.

[4] The Defendants are Juul Labs, Inc.; Altria Group, Inc.; Philip Morris USA, Inc.; Altria Client Services LLC; Altria Group Distribution Company; Altria Enterprises LLC; James Monsees; Adam Bowen; Nicholas Pritzker; Hoyoung Huh; Riaz Valani; Mother Murphy's Labs, Inc.; Alternative Ingredients, Inc.; Tobacco Technology, Inc.; eLiquitech, Inc.; McClane Company, Inc.; Eby-Brown Company, LLC; Core-Mark Holding Company, Inc.; Chevron Corporation; Circle K Stores Inc.; Speedway LLC; 7-Eleven, Inc.; Walmart; and Walgreens Boots Alliance, Inc.

and that formed the basis for his claims. The Schlesinger opt-outs seek to minimize these allegations, but they were the lynchpin of Pesce's case, which could not have moved forward if he had failed to allege that he actually saw the advertisements and other materials he claimed were misleading. And, Pesce pursued a far narrower case against far fewer Defendants (including no e-liquid manufacturers, distributors, or retailers)—the opt-outs sue upwards of 24, so if anything the additional detail is even more necessary here. Next, in practice, the fact sheets were subject to frequent amendment. Many were amended in material ways as much as four or five times—sometimes even after the plaintiff was deposed. A long-form complaint, and its associated limitations on amendment, would not be so malleable and thus would bring obvious efficiencies to discovery and motions practice.

This Court required bellwether plaintiffs to file long-form complaints and allowed Defendants to move to dismiss those complaints. That process proved productive. Several of the bellwether cases were narrowed materially—in some cases leading to dismissal of all claims against certain Defendants.

The same process should apply here. The 24 different Defendants to the Schlesinger opt-outs' cases have not been afforded the opportunity to take discovery into the specific allegations the opt-outs raise against them, or to move to dismiss. Instead, they have had to rely only on the general dispositive motions addressed for all MDL plaintiffs, which do not test the validity of the Schlesinger opt-outs' specific claims. For example, the bellwether plaintiffs did not sue e-liquid manufacturers, distributors, or retailers. Those defendants have a Due Process right to raise their own personal-jurisdiction and other arguments. Requiring long-form complaints and Answers would afford Defendants the opportunity to address those issues.

*Second*, the Schlesinger opt-outs' reference to proceedings in the JCCP is misleading. All the JCCP opt-out plaintiffs have filed long-form complaints in the JCCP (there was no mechanism for short-form complaints), and they have sued a narrower set of defendants—like the MDL bellwether plaintiffs, they have not sued e-liquid manufacturers, distributors or retailers. Unlike here, the JCCP complaints at least identify what the named Defendants purportedly did. The separate issue before the JCCP is that plaintiffs filed consolidated complaints (combining ten or

more plaintiffs in each individual complaint), and that the other plaintiffs to the consolidated complaints have settled and dismissed their claims.

Next, the Schlesinger opt-outs suggest they might have a trial date in the JCCP for May 2025. Judge Cunningham has set no trial dates. And in the JCCP, there is a parallel order modeled on CMO No. 17. It provides for a 180-day Additional Discovery period, followed by full fact and expert discovery, and a full briefing schedule for *Daubert* motions and dispositive motions. Following that schedule is incompatible with a May 2025 trial date.

Last, Defendants respectfully suggest that the Court coordinate – even informally – with Judge Cunningham. Nine additional Schlesinger opt-out cases are venued in the JCCP, creating a near even split of all opt-out plaintiffs between the MDL and JCCP. Plaintiffs have used that fact to advocate for rulings and procedures there that are inconsistent with CMO No. 17 (and the parallel order entered in the JCCP modeled on CMO No. 17) and this Court's tentative rulings. This situation raises the risk that each Court might inadvertently undermine the effectiveness of orders entered by the other. Coordination and a consistent approach and schedule would benefit all parties and both Courts.

*Third*, the Court should wait to hear any motions for remand[5] until long form complaints and answers have been filed and the Additional Discovery period is complete. This process would be efficient because the Additional Discovery period can be managed by one judge, in one forum. Indeed, such a ruling would be consistent with this Court's tentative decision to reject JLI and the JLI Settling Defendants' request to proceed with only three cases, to which Defendants do not object, by ensuring that all Additional Discovery deadlines for all Plaintiffs run concurrently. Additionally, at least four cases will be unaffected by any remand motion, where Plaintiffs

---

[5] Two Plaintiffs—Plaintiffs Shapiro and Plaintiffs McKnight—have pending motions to remand their claims to State court. These motions were stayed pending the cases' consolidation into this MDL. The pending motion in *Shapiro v. Juul Labs, Inc., et al.*, 3:19-cv-07428 was fully briefed before the case was transferred to the MDL, but Shapiro has since waived any argument for remand by designating the Northern District of California as the transferee court. The pending motion in *McKnight v. Juul Labs, Inc., et al.*, 3:20-cv-02600 is not fully briefed—the motion was pending a response from Defendants when it was stayed for consolidation into this MDL. A third Schlesinger opt-out, *Fay v. Juul Labs, Inc., et al.*, 3:19-cv-07934 was transferred to this Court from the District Court for the Southern District of New York ("S.D.N.Y."). Ms. Fay had filed a Motion for Remand in the S.D.N.Y. that was ultimately dismissed without prejudice by the S.D.N.Y.

Cunningham (3:20-cv-4661), Legacki (3:20-cv-1927), Sedgwick (3:20-cv-3882), and Tortorici (3:20-cv-3847) identified the Northern District of California as the court they would have filed in had they not direct filed in the MDL.

### 3. Motions to Dismiss

At the May 6, 2024, Case Management Conference, this Court expressed the tentative view that it would schedule any motions to dismiss to occur during *Daubert* and summary judgment stage contemplated to immediately follow the Additional Discovery period. *Id.* at 21:19-22. The Parties maintain their respective positions as expressed on the record at the May 6, 2024 status conference.

Defendants request only a minor clarification on this point: The Court should make clear that Defendants do not waive their personal jurisdiction defenses by waiting to litigate them until the close of Additional Discovery, and that Defendants can participate in the discovery directed at Plaintiffs provided for under CMO No. 17 without waiving any personal jurisdiction defense.

### 4. Additional Discovery To Commence for All Parties

At the May 6, 2024, Case Management Conference, this Court indicated that it would decline to advance only three Schlesinger opt-outs to the Additional Discovery phase, to resolve common issues applicable to all Schlesinger opt-outs. *Id.* at 9:8-10. The Parties maintain their respective positions as expressed on the record at the May 6, 2024 status conference but do not have additional argument to add here.

### 5. The Additional Discovery Period

At the May 6, 2024, Case Management Conference, this Court indicated that it did not see the need for a three-month extension for additional discovery. *Id.* at 9:14-20. The Parties expressed their respective positions on the record at the May 6, 2024 status conference.

In light of the Court's guidance, Altria understands that the Court is not inclined to extend the additional discovery period for three months. Altria would be prejudiced without some additional time, though, because CMO No. 19 imposes different, Altria-specific discovery obligations on the opt outs that are not fulfilled by compliance with CMO No. 17. For example, under CMO No. 19, the opt-out plaintiffs must produce any expert reports concerning the basis for

- 9 -

1  Altria's purported liability, if any, by May 28, 2024. To date, Altria has not received any Altria-
2  specific expert disclosures. Altria respectfully requests six weeks of additional time to allow for the
3  production and review of the information required by CMO No. 19. With this adjustment, Altria is
4  amenable to waiving other deadlines set by CMO No. 19 that differ from those in CMO No. 17, so
5  that the opt out cases proceed on a single schedule.

### IV. Altria's Motion to Dismiss Non-Communicating Plaintiffs

As previewed during the May 6, 2024 Case Management Conference, after Altria filed its Motion To Dismiss With Prejudice Non-Communicating Plaintiffs' Claims (D.E. 4216) (the "Motion"), a handful of personal injury plaintiffs who previously were non-communicative contacted the Personal Injury Settlement Administrator and/or counsel regarding participating in the Personal Injury Settlement. *See* May 6, 2024 Tr. at 29-30. Altria is filing today an updated list of Non-Communicating Plaintiffs that removes one MDL plaintiff who has now communicated with the Personal Injury Settlement Administrator, to allow for participation in the Personal Injury Settlement.[6] The Non-Communicating Plaintiffs that are included on the updated list have not filed an opposition to the Motion or otherwise contacted the Personal Injury Settlement Administrator, and the claims of these Non-Communicating Plaintiffs should be dismissed with prejudice.

---

[6] Altria reserves its rights to renew the Motion as to this newly communicating plaintiff as warranted, including in the event any do not meet the requirements of the Personal Injury Settlement.

| | | |
|---|---|---|
| 1 | Dated: May 22, 2024 | Respectfully submitted, |
| 2 | By: /s/ Timothy S. Danninger<br>Timothy S. Danninger (*pro hac vice*) | By: /s/ Scott P. Schlesinger<br>Scott P. Schlesinger, (*pro hac vice*) |
| 3 | **GUNSTER YOAKLEY & STEWART, P.A.** | Jonathan R. Gdanski, (*pro hac vice*)<br>Jeffrey L. Haberman, (*pro hac vice*) |
| 4 | 1 Independent Drive, Suite 2300<br>Jacksonville, 32204 | **SCHLESINGER LAW OFFICE, P.A.**<br>1212 SE Third Avenue |
| 5 | Telephone: (904) 354-1980 | Fort Lauderdale, FL 33317<br>Tel: (954) 467-8800 |
| 6 | *Attorneys for Defendant Juul Labs, Inc.* | |
| 7 | By: /s/ Beth A. Wilkinson | By: /s/ Christopher J. Esbrook<br>Christopher J. Esbrook |
| 8 | Beth A. Wilkinson (pro hac vice)<br>Brian L. Stekloff (pro hac vice) | David F. Pustilnik<br>**ESBROOK P.C.** |
| 9 | **WILKINSON STEKLOFF LLP**<br>2001 M Street NW, 10th Floor | 321 N. Clark St., Suite 1930<br>Chicago, IL 60654 |
| 10 | Washington, DC 20036<br>Telephone: (202) 847-4000 | Telephone: (312) 319-7680 |
| 11 | *Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services* | *Attorneys for Defendants Eby-Brown Company, LLC, Core-Mark Holding Company, Inc., 7-Eleven, Inc., and Wawa, Inc* |
| 12 | *LLC, Altria Distribution Company, and Altria Enterprises LLC* | By: /s/ Charles C. Correll, Jr. |
| 13 | By: /s/ John C. Massaro | Charles C. Correll, Jr.<br>Matthew Blaschke |
| 14 | John C. Massaro (admitted pro hac vice)<br>Daphne O'Connor (admitted pro hac vice) | Bailey J. Langner<br>Alessandra M. Givens |
| 15 | Jason A. Ross (admitted pro hac vice)<br>David E. Kouba (admitted pro hac vice) | **KING & SPALDING LLP**<br>50 California Street, Suite 3300 |
| 16 | **ARNOLD & PORTER KAYE SCHOLER LLP** | San Francisco, CA 94111 |
| 17 | 601 Massachusetts Ave, NW<br>Washington, DC 20001 | Telephone: (415) 318-1200<br>ccorrell@kslaw.com |
| 18 | Telephone:  202-942-5000<br>Facsimile:  202-942-5999 | blangner@kslaw.com<br>agivens@kslaw.com |
| 19 | *Attorneys for Defendants Altria Group, Inc.,* | *Attorneys for Defendant Chevron Corporation* |
| 20 | *Philip Morris USA Inc., Altria Client Services LLC, and Altria Distribution Company* | By: /s/ Robert A. Scher |
| 21 | By: /s/ Eugene Illovsky | Robert A. Scher (*pro hac vice*)<br>**FOLEY & LARDNER LLP** |
| 22 | Eugene Illovsky<br>Matthew Dirkes | 90 Park Avenue<br>New York, NY 10016 |
| 23 | **ILLOVSKY & CALIA LLP**<br>1611 Telegraph Ave., Suite 806 | Telephone: (212) 682-7474 |
| 24 | Oakland, CA 94612<br>Telephone: (415) 500-6643 | *Attorneys for Defendant eLiquitech, Inc., and Tobacco Technologies, Inc.* |
| 25 | *Attorneys for Defendant Adam Bowen* | By: /s/ Marissa S. Ronk<br>Michael L. O'Donnell (*pro hac vice*) |
| 26 | By: /s/ Michael J. Guzman | James E. Hooper (*pro hac vice*) |
| 27 | Mark C. Hansen<br>Michael J. Guzman | Marissa S. Ronk (*pro hac vice*)<br>**WHEELER TRIGG O'DONNELL LLP** |
| 28 | David L. Schwarz<br>**KELLOGG, HANSEN, TODD, FIGEL &** | 370 17th Street, Suite 4500<br>Denver, CO 80202 |

**FREDERICK, P.L.L.C.**
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910

*Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh*

By: */s/ James Kramer*
James Kramer
Catherine Malone
Kevin Askew
**ORRICK HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
jkramer@orrick.com
cmalone@orrick.com
kaskew@orrick.com

*Attorneys for Defendant James Monsees*

Telephone: (303) 244-1800

*Attorneys for Defendant McLane Company, Inc.*

By: */s/ Mitchell B. Malachowski*
Mitchell B. Malachowski
James Sell
**TYSON & MENDES LLP**
371 Bel Marin Keys Blvd., Suite 100
Novato, CA 94949
Telephone: (628) 253-5070

*Liaison Counsel for E-Liquid Defendants and Attorneys for Defendants Mother Murphy's Laboratories Inc. and Alternative Ingredients, Inc.*