1
2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3<br>4<br>5 | IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to: | **Case No. 19-md-02913-WHO**<br><br>**JOINT STATUS REPORT CONCERNING DISCOVERY DISPUTE** |

3
4
5
6
7
8
9
10
11
12
13
14

*Cole Aragona v. Juul Labs, Inc., et al,*
  Case No. 3:20-cv-1928;
*Jordan Dupree v. JUUL LABS, INC., et al.,*
  Case No. 3:20-cv-03850;
*Kaitlyn Fay v. JUUL LABS, INC., et al.,*
  Case No. 3:19-cv-07934;
*Jennifer Lane v. JUUL LABS, INC., et al.,*
  Case No. 3:20-cv-04661;
*Bailey Legacki v. JUUL LABS, INC., et al.,*
  Case No. 3:20-cv-01927;
*Walker McKnight v. JUUL LABS, INC., et al.,*
  Case No. 3:20-cv-02600;
*Carson Sedgwick v. JUUL LABS, INC., et al.,*
  Case No. 3:20-cv-03882;
*Ben Shapiro v. JUUL LABS, INC., et al.,*
  Case No. 3:19-cv-07428; and
*Matthew Tortorici v. JUUL LABS, INC., et al.,* Case No. 3:20-cv-03847

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Pursuant to the Court's Standing Order regarding Discovery Disputes, the parties jointly

2 submit the following status report regarding whether Plaintiffs must respond to written discovery

3 requests served by Juul Labs, Inc. and the Non-Management Directors (together, "Defendants").

4    **Defendants' position**

5    This Court should order Plaintiffs to respond to written discovery, as Case Management

6 Order 17 requires.  After this Court repeatedly rejected Plaintiffs' opposition to that Order,[1]

7 Plaintiffs have resorted to self-help:  they requested and received an extension of time to respond

8 to Defendants' written discovery, only to object that all written discovery is impermissible; and

9 they offered to respond only if Defendants would agree to vacate CMO 17.  Plaintiffs' tactics and

10 continued efforts to subvert CMO 17 are improper and unfairly prejudicial.

11    CMO 17 reflects "the comparative history in this case."  Dkt. 3760 at 6.  Although JLI

12 produced over 9 million documents and at least 64 current and former employees for depositions,

13 "there has been no comparable discovery on plaintiffs."  *Id.*  As a result, Defendants are missing

14 key discovery material.  For example, Plaintiffs' productions under CMO 17 do not appear to

15 include a single email in any case; in cases where parents are Plaintiffs, they appear not to have

16 produced a single document; and most Plaintiffs failed to produce any social media posts or

17 messages.  Nor have Plaintiffs answered the most basic questions about their allegations and

18 claims – like all JUUL advertisements they saw and damages they are claiming – or explained

19 pervasive inconsistencies in the discovery material and PFS's they have produced so far.[2]

20    CMO 17 provides for an Additional Discovery period to "conduct discovery on case-

21 specific issues."  Dkt. 3780, ¶ 47.  It limits depositions during Additional Discovery to:  (1) the

22 plaintiff and their spouse, (2) "non-party lay fact witness specific to the Plaintiff," and (3) the

23 plaintiff's healthcare providers.  *Id.* ¶ 48.  Witnesses deposed during Additional Discovery cannot

24 be re-deposed during CMO 17's later, "full fact and expert discovery" period.  *Id.* ¶ 49.

25

26    [1] *See* Dkt. 4259 at 3:17-18 (May 29, 2024) ("I'm going to follow Case Management Order

27 17."); Dkt. 3772 at 23:16-19 (Jan. 20, 2023) ("Mr. Gdanski, I do intend to enter CMO 17.").

28    [2] As examples, Aragona's materials suggest he started JUUL at three different ages, and
McKnight's materials state that he did – and that he did not  – smoke cigarettes before JUUL.

1    Additional Discovery in these opt-out cases is ongoing.  On July 12, 2024 – four days after

2    filing a stipulated scheduling order, *see* Dkt. 4272 – JLI served interrogatories, and Defendants

3    served document requests seeking, among other things, the missing discovery material described

4    above.  On August 12 (the response due date), Plaintiffs' counsel asked for a two-week extension

5    because they were "away following . . . trials."  Defendants agreed to an extension for all

6    Plaintiffs.  On August 19, Plaintiffs served "responses" objecting to every interrogatory and

7    document request on the sole ground that "CMO 17 . . . do[es] not provide for or contemplate

8    written discovery in the Additional Discovery period" and providing no substantive responses.

9    Plaintiffs purported to "reserve[] the right to raise further objections to this request when the time

10   comes."  At conferences on August 17 and 21, counsel suggested (and they suggest again now, *see*

11   *infra*) Plaintiffs would respond to written discovery only if Defendants agreed to vacate CMO 17.

12   Plaintiffs would not even agree to respond in the "full fact and expert discovery" period.

13       This Court should order responses to the written discovery because CMO 17 allows it.

14   CMO 17's statement that Defendants can "conduct discovery on case-specific issues" includes

15   interrogatories and document requests.  Dkt. 3780, ¶ 47.  The rest of CMO 17 confirms this.  CMO

16   17's allowance of depositions makes little sense if Plaintiffs need not respond to written discovery

17   until after the depositions occur, and Plaintiffs are incorrect that their partial and contradictory

18   productions give Defendants "what they need to take productive depositions."  *Infra*.  Moreover,

19   nothing in CMO 17 even suggests that written discovery is prohibited, and Plaintiffs tellingly will

20   not agree that the written discovery provided for under the Federal Rules is appropriate at any

21   procedural stage.  Plaintiffs waived other objections by failing to "state them with specificity in

22   the initial response."  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal.

23   2015) (Corley, M.J.) (cleaned up).

24       Contrary to Plaintiffs' claim, *see infra* (citing Dkt. 4220), Defendants never argued that the

25   Court should bar discovery that is not enumerated in CMO 17.  Defendants opposed expert

26   disclosures during Additional Discovery because CMO 17 assigns those disclosures to the

27   subsequent "full fact and expert discovery" period, not because CMO 17 does not contemplate

28   them.  *See* Dkt. 4220 at 7, 9-10.  Moreover, this Court already rejected Plaintiffs' argument:  it

2

1    required Plaintiffs to file long-form complaints and defend Rule 12 motions despite their claim

2    that CMO 17 "do[es] not contemplate" either.  *Id.* at 9; *see also* Dkt. 4278.

3          Finally, this Court should extend the Additional Discovery deadline (and all later

4    deadlines) for however many days after August 12 it takes before Plaintiffs respond to the written

5    discovery.  Plaintiffs have known that Defendants would seek written discovery since at least

6    May, when Defendants explained that "[t]he Additional Discovery period serves to place

7    Defendants on equal footing with the Schlesinger opt-outs," who have not "responded to

8    discovery requests."  Dkt. 4248 at 3.  Rather than promptly informing Defendants that they

9    opposed all written discovery, which would have allowed the issue to be resolved at the August 13

10   CMC, Plaintiffs sat back for thirty days, then requested and received an extension, only to object

11   and refuse to respond unless Defendants agree to vacate CMO 17.  This gamesmanship unfairly

12   prejudices Defendants,[3] and Plaintiffs should not benefit from the unnecessary delay they caused.

13         **Plaintiffs' position**

14         CMO 17 specifies, in detail, the obligations required for opt-out plaintiffs.  The Order also

15   specifies the type of discovery that is permitted in the Additional Discovery period. Though

16   burdensome, Schlesinger Opt-Outs fully complied and submitted exceptionally robust case-

17   specific productions, including comprehensive expert reports.  The Schlesinger Opt-Outs,

18   therefore, proposed what they felt was a more equitable scheduling order, which called for routine

19   discovery and exchanges.  Defendants opposed.  They repeatedly argued that discovery not

20   specifically named "violates CMO 17."  *See* Doc. 4220 Now, however, Defendants seek discovery

21   that is not expressly approved and is outside the bounds of the Order.  The Court should either

22   deny Defendants' request, or, modify CMO 17 so these cases may proceed just like a regular case.

23         Defendants make like the Opt-Outs have not produced written discovery.  That's not true.

24   Written discovery is built into CMO 17.  *See* CMO 17, Doc. 3780 at 6, 10-13, 30-31.  This

25   consists of answering fact sheets and updated fact sheets under oath, just like, and duplicative of,

26

27         [3] Defendants' deposition notices and medical-exam request are irrelevant, and Plaintiffs
     description of them is inaccurate.  Defendants explained the deposition dates were mere
28   placeholders.  And the parties continue to meet and confer regarding medical exams.

the interrogatories Defendants served.  This consists of producing *all* medical and pharmacy records, *all* records of Juul use, and an affidavit on the issue of claim accrual for purposes of a potential affirmative defense on the limitations period. This also consists of producing case-specific expert reports on specific causation and damages.[4]  In each case, Schlesinger Opt-Outs produced expert reports from a pediatrician, a psychologist, a, economist, and a life-care planner. Some produced a report from a pulmonologist or neurologist. This is precisely why CMO 17 does not call for further written discovery in the Additional Discovery period.  Defendants' suggestion that somehow the discovery requests at issue are intended to cure their perceived deficiencies with Plaintiffs' compliance with CMO 17 is misplaced. To the extent Defendants have concerns, there is a mechanism to raise them.  But Plaintiffs have complied, and Defendants have agreed. Because Defendants have Plaintiffs' written discovery and document production, the have what they need to take productive depositions.  The Court should reject Defendants' consistent refrain about "equal footing."  The suggestion there is an imbalance because corporate defendants produced millions of pages of documents compared to an individual's hundreds or thousands of pages of medical records and Juul-use records is a false equivalency.

The Court should follow its prior ruling and deny Defendants' request for more written discovery because that is not provided in the Additional Discovery period.[5]  Defendants' insistence that CMO 17 'requires' it, as they suggest above, is unfounded.  Despite quoting from CMO 17 numerous times, they fail to do so when urging the Court to follow their position here. And with good reason: there is no allowance – either expressed or implied. Defendants tout an untenable position.  In their reading, any discovery not expressly prohibited in the Additional Discovery period may be taken, unless Plaintiffs are asking for it, then the discovery must wait.

---

[4] Walker McKnight did not produce additional records in response to Defendants' document request because he had already produced responsive documents in compliance with CMO 17.  Defendants make like he is not adequately participating in discovery.  Just the opposite. His production was robust.  This demonstrates the futility of Defendants' discovery requests.

[5] By asserting an objection to the overall propriety of Defendants' discovery requests, Plaintiffs have not waived specific objections to the requests should the Cour overrule this general objection.  Plaintiffs expressly reserved the right to make further objections in their responses.

1   They cannot have it both ways. To be clear, Defendant's written discovery would be appropriate

2   in the "full fact and expert discovery" period.  Plaintiffs will then provide substantive objections

3   and responses where appropriate.

4   　　　　Plaintiffs have not engaged in any unfair, dilatory, or prejudicial tactics. Their discovery

5   productions are as thorough, if not more, than the MDL bellwether plaintiffs.  Compare, also, the

6   Schlesinger Opt-Outs to the lone other MDL Opt-Out.  There, the parties are arguing over whether

7   there was compliance with CMO 17's initial requirements.  Here, Defendants knew the parties

8   would enter the Additional Discovery period since mediation in April.  Yet Defendants waited

9   until July 12 to serve this discovery.  They waited even longer to request depositions.  It was not

10   until Friday, August 23, after 9pm ET, that Defendants first raised the issue. Rather than extending

11   the professional courtesy of providing advanced notice, Defendants unilaterally set depositions of

12   18 witnesses – a parent for each plaintiff (except in one case where a spouse was noticed for

13   deposition) – in a two week time frame.  Worse, Defendants demanded to know by Monday,

14   August 26, whether the schedule worked.   Despite this unreasonable, self-imposed deadline,

15   Schlesinger has provided confirmation or proposed an alternative date for all but one witness.

16   And, while Defendants have not even asked to depose the Plaintiffs, counsel provided dates of

17   their availability. Plaintiffs have not occasioned any prejudice and deadlines should stay as is.

18   　　　　The disparate effect of Defendants' position is manifest in their recent request for

19   compulsory medical and psychological exams. Defendants maintained this too was permitted even

20   though it is beyond CMO 17. When pressed, Defendants were mum on whether the evaluations

21   could be recorded, transcribed, or whether counsel could attend.  Defendants would not commit to

22   producing the report or producing the expert for deposition.  While Defendants say this is

23   irrelevant, it proves too much.  Defendants objected to disclosing experts, yet they want their

24   experts to examine Plaintiffs now.  Plaintiffs objected to the additional written discovery for the

25   same reasons they objected to the examinations.  It cannot be the case that Defendants get the

26   benefit of a *Lone-Pine*-like order, and then unilaterally dictate the terms of litigation without ever

27   meaningfully advancing the cases towards trial. Plaintiffs respectfully request a hearing, as oral

28   argument will benefit the Court and parties on case management.

1

2

3

DATED:  August 30, 2024                              Respectfully submitted,

4

By: */s/ Jeffrey L. Haberman*                        By: */s/ Timothy S. Danninger*

5    Scott P. Schlesinger (*pro hac vice*)            Timothy S. Danninger (*pro hac vice*)
     Jonathan R. Gdanski (*pro hac vice*)             **GUNSTER YOAKLEY & STEWART, P.A.**
6    Jeffrey L. Haberman (*pro hac vice*)             1 Independent Drive, Suite 2300
     **SCHLESINGER LAW OFFICE, P.A.**                 Jacksonville, 32204
7    1212 SE Third Avenue                             Telephone: (904) 354-1980
     Fort Lauderdale, FL 33317
8    Tel: (954) 467-8800                              *Attorneys for Defendant Juul Labs, Inc.*

9

10

     *Attorneys for Plaintiffs Aragona, Dupree, Fay,*    By:  */s/ Michael J. Guzman*
11   *Lane, Legacki, McKnight, Sedgwick, Shapiro,*      Mark C. Hansen (admitted *pro hac vice*)
     *Tortorici*                                        Michael J. Guzman (admitted *pro hac vice*)
12                                                      David L. Schwarz (CA Bar No. 206257)
                                                        Ryan M. Folio (admitted *pro hac vice*)
13                                                      **KELLOGG HANSEN TODD FIGEL &**
                                                        **FREDERICK, P.L.L.C.**
14                                                      1615 M Street, N.W. Suite 400
                                                        Washington, DC 20036
15                                                      TEL: (202) 326-7900
                                                        mhansen@kellogghansen.com
16                                                      mguzman@kellogghansen.com
                                                        dschwarz@kellogghansen.com
17

18                                                      *Attorneys for Non-Management Defendants Huh,*
                                                        *Pritzker, and Valani*
19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel met and conferred on August 21, 2024.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.


*/s/ Michael R. Freed*