UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| This Document Relates to: | **JOINT STATUS REPORT CONCERNING DISCOVERY DISPUTE** |
| *Cole Aragona v. Juul Labs, Inc., et al*, Case No. 3:20-cv-1928; *Jordan Dupree v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03850; *Kaitlyn Fay v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07934; *Jennifer Lane v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-04661; *Bailey Legacki v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-01927; *Walker McKnight v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-02600; *Carson Sedgwick v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03882; *Ben Shapiro v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07428; and *Matthew Tortorici v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03847 | |

**Defendants' position.**  Defendants seek the Court's guidance on several issues related to discovery during Additional Discovery, including (i) untimely document productions, (ii) improper coaching of witnesses and unfounded privilege assertions, and (iii) failure to sequester witnesses.

*Document productions.*  CMO Nos. 17 and 19 require Plaintiffs to identify their healthcare providers and "affirmatively collect and produce," on a continuing basis, "[a]ll [medical] records that relate to the[ir] alleged JUUL product-related injury/injuries."  Dkt. 3780, ¶ 21(4), (6); Dkt. 4112, ¶ 16(5), (7).  Plaintiffs have not complied.  Depositions revealed, for example, that Plaintiffs failed to disclose and produce medical records from a doctor who treated Plaintiff Victoria Cunningham's alleged injuries as early as 2020 and providers who treated Plaintiff Cole Aragona during a hospitalization earlier this year.  Doug Sedgwick and Amy Sedgwick testified that Plaintiff (their son) has seen psychiatrist monthly, but Plaintiff has not produced any records since May 2023.

In addition to the production obligations imposed by CMO Nos. 17 and 19, the Court ordered the *McKnight* Plaintiffs to respond to written discovery "at least one week prior to the discovery deposition."  Case No. 3:20-cv-02600, Dkt. 37 at 1-2.  But Walker McKnight produced thousands of pages of medical records two days before his deposition.  And on the eve of the deposition, he produced video and picture files, all of which appear to be several years old.

Defendants should not have to take depositions without relevant records.  As shown above, Plaintiffs are incorrect (*infra*) that their late productions are limited to "recent" records.  And Plaintiffs' suggestion that Defendants engage "a third-party record retrieval company" to obtain medical records contradicts CMO Nos. 17 and 19, which require Plaintiffs to do so.  (Defendants sought medical-records authorizations only after Plaintiffs suggested it in a prior draft of this report).  The Court should order Plaintiffs to produce the records to the extent they have not done so.

Meanwhile, Plaintiffs refused to respond to written discovery in the JCCP, making the same arguments this Court had rejected.  *See* Dkt. 4291.  Recognizing the prejudice these delays caused, Judge Cunningham ordered responses and extended Additional Discovery to January 17, 2025.

***Witness coaching / privilege assertions.***  Plaintiffs' counsel have obstructed depositions. Counsel's speaking objections have repeatedly caused witnesses to change testimony.[1]  Counsel also stopped lines of questioning on improper grounds.  For example, at the deposition of Kathryn Fay, counsel made relevance objections to – and instructed the witness not to answer – questions about the family's financial status, an alternate cause for Plaintiff's alleged anxiety.  Further, counsel instructed Walker McKnight he "can't disclose" whether he has given sworn testimony or a deposition.  And when McKnight admitted to discussing the substance of his testimony with his parents, counsel – who was not present for those discussions – instructed him:  "Anything that you and I spoke about is privileged."  Counsel's suggestion (*infra*) that every conversation McKnight has with his parents is privileged simply because they are jointly represented is meritless.  The Court should admonish Plaintiffs' counsel not to coach witnesses or give overbroad privilege instructions.

***Witness sequestration.***  Plaintiffs' counsel's refusal to sequester witnesses already has resulted in improper coordination between witnesses.  After Walker McKnight's deposition – which Plaintiffs' counsel ended after about 45 minutes because McKnight was tired – defense counsel saw McKnight conferring with his parents and counsel in a breakout room and asked counsel to "not prepare or coach the witness about his testimony in anticipation of the next session."  McKnight's counsel emailed later that he disagreed.  Ltr. from J. Haberman to D. Kouba (Sept. 13, 2024). Walker's father David McKnight later testified that, to prepare for his deposition, he "asked [Walker] some questions" like "how often he used Juul" and marijuana.  And Walker "told [him] about his first hour of his deposition," including that "they asked him many questions about using . . . marijuana."  So, in David's words, they "review[ed] that because we know that this was

---

[1] **Walker McKnight:**  When defense counsel asked whether McKnight had given a deposition before and McKnight answered "Yes," McKnight's counsel interjected, "Do you know what a deposition is?", causing McKnight to answer, "So no, I have not given a deposition."

**Ian Fay:**  When defense counsel asked whether Fay had sued another e-cigarette manufacturer, Fay started answering, "What I do know is that --" before counsel interjected, "He just asked if you sued the manufacturer of Myle."  Fay then said, "No."

**David McKnight:**  When defense counsel asked if David McKnight knows "about a relationship between vaping THC and respiratory issues," counsel interjected, "You have an answer.  He answered it . . . .", leading McKnight to respond, "I'll take what he said."

something that would be talked about" in David's deposition. To avoid further prejudice, the Court should order witnesses and their counsel not to confer regarding the substance of their testimony until their depositions end. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015); *see also Barajas v. Abbott Lab'ys, Inc.*, 2018 WL 6248550, at *4 (N.D. Cal. Nov. 29, 2018) ("It is improper for a witness and her attorney to discuss the substance of her testimony during breaks in a deposition," except to address privilege).

Plaintiffs' description of the Walker McKnight discovery deposition (*infra*) is misleading. Plaintiffs agreed to hold the deposition in person with limited attendance, COVID testing, and masking. After Plaintiffs' counsel ended the deposition early, Defendants proposed to schedule the continuation over three days. Defendants declined the only three-day periods that Plaintiffs offered because they would have resulted in eight depositions over two days (October 14-16) or were given with less than a week's notice (November 4-6). Defendants offered two date ranges in mid-November, which Plaintiffs accepted. The deposition should occur in-person: B.B. was deposed in person on May 4, 2022; and McKnight's "credibility" is unquestionably "critical." *Lewis v. CoreCivic of Tenn., LLC*, 2023 WL 5944279, at *2 (S.D. Cal. Sept. 12, 2023) (Skomal, M.J.).

**Plaintiffs' position:** Despite Plaintiffs' tremendous efforts producing an overwhelming amount of information and working to defend over 75 depositions in a short timeframe, Defendants continuously raise issues at every corner.

***Document productions.*** Plaintiffs complied with CMO 17 – they produced the medical records they had when due in the summer of 2023. Plaintiffs have been diligent in producing and supplementing discovery. Defendants largely complain about not having *recent* records.[2] Plaintiffs are requesting those and will produce them. This does not indicate noncompliance. Defendants ignore the fact that parties routinely update and supplement discovery, just like in the bellwether cases.[3] Plaintiff's counsel received McKnight's updated medical records just before his

---

[2] Defendants' complaint on Cunningham and her 2020 records is meritless. Plaintiff produced records from the institution where the doctor in question works.

[3] Ms. Bain supplemented at least three times; Mr. Pesce supplemented at least four times.

deposition and immediately produced them.[4]  While also meeting with counsel in preparing for deposition, McKnight found additional videos of his Juul use on social media, and counsel immediately produced them too.[5]  Defendants are not prejudiced, they can cross examine him about his production during the remainder of his deposition. Highly unusual, however, is the lack of effort by Defendants to obtain records.  Defendants just recently asked Plaintiffs to *again* execute authorizations, which demonstrates they have not subpoenaed medical or employment records.  Unlike other MDLs, Defendants are not using a third-party record retrieval company, nor have they asked Plaintiffs to join them in doing so. These companies conduct periodic sweeps to make sure updated records are gathered.  This would avoid Defendants' very complaint.

***Witness coaching / privilege assertions.*** Objections and privilege assertions have been proper. Rule 30(c)(2) provides an objection "must be stated concisely in a nonargumentative and nonsuggestive manner." Counsel's objections are consistent with this rule.  This is especially so where Defendants take up much record time asking, if not harassing and arguing with Plaintiffs' parents about their own drug use or financial matters entirely unrelated to their child, or, like with McKnight's father, are asked the same questions six hours after they were first asked.[6]  The Court should admonish Defendants' counsel's conduct.

Counsel's privilege objections are appropriate. McKnight was instructed to not reveal *attorney-client* communications he had with his parents, who are Plaintiffs and have been represented since September 2019.  Defendants' coaching examples are meritless. McKnight was

---

[4] The document requests Defendants refer to, which McKnight answered per Court order (Dkt. Nos. 4234 and 4235 in 19-md-2913), requested documents consulted for the PFS, the declaration, and documents related to non-JLI Defendants – not the types Defendants complain of.

[5] McKnight's testimony is not contradictory.  McKnight searched and found those videos the day before his deposition.  Defendants read too much into what he said at deposition. McKnight may have forgotten about or may not have considered the search for additional discovery to constitute preparing for his deposition when he testified the next day.

[6] Defendants fail to provide the full context. Defense counsel asked David McKnight if he recalled testifying (as in earlier that day) that he "never asked Walker whether he vaped THC," to McKnight's counsel objected and asked that McKnight be shown his prior testimony. McKnight, clearly confused, then asked, "When did I say this and what was the question that you asked me to say that? When did I respond to that?"

plainly confused by Defense-counsel's question, as he had never been deposed before. Deponents have not changed testimony. In *Fay*, his counsel simply repeated a question, which Fay answered.

***Witness sequestration.*** Defendants' concern is meritless, and proper context is needed. McKnight is sick. He is on oxygen 24/7, needs a wheelchair, and depends on his parents. He was in the ER the morning before his deposition. He testified on September 13th as he could for 45 minutes. Since then, he offered various dates to resume (Sep. 24, Oct. 14-16, Oct. 28-29, Nov. 4-6). Defendants refused them. McKnight accepted Nov. 12-14. (Defendants won't agree to a Zoom deposition to eliminate unnecessary risks of infection. The Court should order the remainder by Zoom)[7]. McKnight told his parents that Defense counsel's questioning overwhelmingly concerned his marijuana use. This is not controversial or confidential. His parents could have sat in on the deposition if they wanted. Considering the time passed since McKnight's first session, counseling to prepare for further testimony is appropriate.[8]

Numerous courts agree there is a right to counsel during depositions. *See In re Stratosphere Corp. Securities Litig.*, 182 F.R.D. 614 (D. Nev. 1998) (counsel may speak with his client during recesses of depositions to make sure the client did not misunderstand or misinterpret questions or documents, or attempt to rehabilitate the client by fulfilling an attorney's ethical duty to prepare a witness.; if the break was initiated by the deponent or deponent's counsel, the interrogating attorney's line of questions should be answered before breaking, and the deponent may seek counsel's assistance thereafter). *See also Chen v. Jung*, 2019 WL 1957956 (C.D. Cal. Feb. 25, 2019) (declining to follow *Cathode Ray Tube* – cited by Defendants – where witnesses' demeanor did not change and they were not coached.) *See also McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (conferences during periodic deposition breaks, overnight recesses, and more prolonged recesses are ordinarily appropriate). Defendants fail to demonstrate any prejudice or otherwise show that a deponent's testimony has been affected in seeking counsel's assistance.

---

[7] BB's first deposition in Apr. 2021 was by Zoom; Defendants completed their questions.
[8] If the Court is at all inclined to grant Defendant's request, it should be limited to the substance of past testimony, and not apply to matters not yet covered.

| | |
|---|---|
| DATED: October 31, 2024 | Respectfully submitted, |
| By: */s/ Jeffrey L. Haberman*<br>Scott P. Schlesinger (*pro hac vice*)<br>Jonathan R. Gdanski (*pro hac vice*)<br>Jeffrey L. Haberman (*pro hac vice*)<br>**SCHLESINGER LAW OFFICE, P.A.**<br>1212 SE Third Avenue<br>Fort Lauderdale, FL 33317<br>Tel: (954) 467-8800<br><br>*Attorneys for Plaintiffs* | By: */s/ Timothy S. Danninger*<br>Timothy S. Danninger (*pro hac vice*)<br>**GUNSTER YOAKLEY & STEWART, P.A.**<br>1 Independent Drive, Suite 2300<br>Jacksonville, 32204<br>Telephone: (904) 354-1980<br><br>*Attorneys for Defendant Juul Labs, Inc.*<br><br>By:  */s/ Michael J. Guzman*<br>Mark C. Hansen (admitted *pro hac vice*)<br>Michael J. Guzman (admitted *pro hac vice*)<br>David L. Schwarz (CA Bar No. 206257)<br>Ryan M. Folio (admitted *pro hac vice*)<br>**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**<br>1615 M Street, N.W. Suite 400<br>Washington, DC 20036<br>TEL: (202) 326-7900<br>mhansen@kellogghansen.com<br>mguzman@kellogghansen.com<br>dschwarz@kellogghansen.com<br><br>*Attorneys for Non-Management Defendants Huh, Pritzker, and Valani* |

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel met and conferred on September 24, 2024. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/  Ryan M. Folio*