[*Counsel listed in signature block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Cole Aragona v. Juul Labs, Inc., et al*, Case No. 3:20-cv-1928;<br>*Jordan Dupree v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03850;<br>*Kaitlyn Fay v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07934;<br>*Jennifer Lane v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-04661;<br>*Bailey Legacki v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-01927;<br>*Walker McKnight v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-02600;<br>*Carson Sedgwick v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03882;<br>*Ben Shapiro v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07428; and<br>*Matthew Tortorici v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03847 | **Case No. 19-md-02913-WHO**<br><br>**JOINT STATUS REPORT CONCERNING DISCOVERY DISPUTE ON THIRD PARTY SUBPOENAS** |

1 **Plaintiffs' Position:** Without providing Plaintiffs proper notice, as required under Rule 45, and, without authorization under CMO 17, Defendants are seeking document productions that are wholly unrelated to case-specific issues. For example, Defendants request documents and communications from nonparties regarding their personal, illicit drug use. But a Plaintiff's mother, brother, or friend have certainly not put such private and sensitive, if not potentially incriminating, acts at issue. Defendants have not made use of the signed authorizations to obtain Plaintiffs' medical, employment, or educational records – nonparty institutions one would expect Defendants to get case-specific records from. Instead, Defendants are going after Plaintiff's relatives and friends. The Court should respectfully quash or otherwise grant a protective order regarding subpoenas *duces tecum* that Defendants improperly served on non-party fact witnesses.

**Lack of Proper Notice:** Defendants ignored the subpoena requirements set forth in Rule 45(a)(4), which requires the serving party to *first* notify and provide a copy of the subpoena to all other parties. Here, subpoena recipients – plaintiffs' parents and friends – were served well-before Plaintiffs' counsel. The cover letters enclosing the subpoenas were dated September 25, 2024, yet Defendants did not notify Plaintiffs until October 11, 2024, only *after* Plaintiffs' counsel submitted general objections. Any contention that objections were late is meritless. Defendants' response – that they eventually provided notice – does not excuse their noncompliance, it only underscores the problem. Defendants cannot violate Rule 45 in hopes to obtain discovery material without first informing opposing counsel, and then say there is no prejudice because opposing counsel eventually found out. Failing to provide notice is especially concerning where Defendants are calling on nonparties to produce information that would violate their Due Process rights under the Constitution.

**Subpoena-specific Issues:** A protective order is necessary because Defendants improperly seek information about a parent's or a family member's or a friend's use or procurement of illegal drugs. Rule 26(b)(1) limits discovery to relevant matters that are proportional to the case. A Court may also protect a person from annoyance, embarrassment, oppression, or undue burden or expense by "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters." Rule 26(c)(1)(A)(D). Defendants issued the following requests:

> *Request No. 10. All Documents and Communications Concerning Your use or*

*procurement of Illegal Drugs.*
*Request No. 16. All Documents and Communications Concerning the use or procurement of Illegal Drugs by any person living with You and Plaintiff.*

This information is immaterial; and is not even tied to a plaintiff. These requests have nothing to do with the *Plaintiff's* personal use of JUUL or other substances. These fact witnesses did not put their use of JUUL, ENDS or illicit drugs at issue in the case, and they are entitled to personal privacy and due process afforded under the Constitution. Defendants' standing argument is without merit. The nonparties are Plaintiff's parents, siblings, and friends – not some institution holding impersonal records. The "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3416644, at *2 (N.D. Cal. July 14, 2024). The Court should protect these lay-nonparties from having to produce information that is wholly untied to the actual Plaintiff and may even be incriminating. Should the Court credit Defendants' argument, the Court should provide sufficient time for the nonparties to obtain counsel to serve individual objections. Moreover, these witnesses deposed by Defendants are questioned at length about these very same requests. Thus, Defendants have the information they seek by way of testimony.

The subpoenas are improper in substance. Courts consider the relevance, need for documents, breadth and particularity of the request, and burden imposed. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Defendants' requests are overbroad, and without any specification or clarification as to the timeframe. For example, Defendants seek "All Documents and Communications Concerning JLI or JUUL Products." This request is not narrowly tailored to the specific *Plaintiff's* use of JUUL products. Whether a Plaintiff's friend has JUUL communications that are not specific to the Plaintiff is irrelevant, and unduly burdensome. The subpoena to Walker McKnight's friend proves the point. There, Defendants only asked for text exchanges between them that took place over a few months; they did not ask the records of the friend's personal JUUL or drug use. Defendants also mischaracterize his testimony. Walker did not review actual texts before his deposition, he was recounting the contents of them. He produced all social media exchanges between them. The requests are also duplicative of document requests previously propounded on Plaintiffs.

**The Subpoenas Violate CMO 17**: In this "Additional Discovery" phase, Defendants obtained responses to written discovery; they are taking depositions of Plaintiffs, their parents, their fact witnesses, and medical providers; and they are demanding Compulsory Medical Exams. They now seek written discovery of non-parties. Under CMO 17, Defendants obtained fact sheets, declarations, medical, employment, and educational records, and case-specific expert reports. This is full fact discovery.

Written discovery on third parties is another example of Defendants' actions rendering meaningless the distinction between discovery phases provided in CMO 17. CMO 17 does not authorize this. Defendants cannot claim such information is necessary for a lay witness's deposition, because, in most cases, the subpoenas were served *after* the deposition took place. While the Court permitted Defendants to serve written discovery on the Plaintiffs that was narrowly tailored and not duplicative of the Plaintiff Fact Sheet or Affidavit, this goes too far. See Doc. 4291 at 1. Third party subpoenas, along with Defendants' request to conduct CMEs, is just another example that Defendants believe they are entitled to full fact discovery in this unique phase.

**Defendants' position:** Defendants' narrowly tailored subpoenas seek relevant, discoverable information that is required to prove defenses. Defendants designed the subpoenas to solicit information about Plaintiffs' alleged injuries, and their nicotine, tobacco, and drug use. Most subpoena recipients are family members and friends listed in Plaintiffs' own Rule 26(a) Disclosures, and many have testified that they used nicotine, tobacco, or drugs with a Plaintiff. In some cases, they supplied the Plaintiff with these substances. The Court should deny Plaintiffs' motion: it already rejected their cramped reading of CMO 17; they lack standing to assert specific objections to the subpoenas; and the lack of prior notice is harmless.

*Non-party discovery is allowed.* On September 4, 2024, the Court held that although "CMO No. 17 did not expressly address" written discovery in the Additional Discovery period, it is nonetheless "allowed . . . as long as [it] is narrowly tailored to case-specific issues and not duplicative of [discovery] otherwise required under CMO No. 17." Dkt. 4291 at 1. Notwithstanding the Court's order, Plaintiffs now contend that while *party* written discovery is allowed under CMO 17 (as the Court held), *non-party* written discovery somehow "violates" that order. That is incorrect.

Properly tailored non-party written discovery should proceed within the Additional Discovery period for the same reasons set forth in the Court's prior order.  Under CMO 17, Defendants may take "discovery on case-specific issues," including depositions of any "non-party lay fact witness," and "treating healthcare providers."  Dkt. 3780, ¶ 47-48.  Written discovery of non-party deponents supports informed questioning during the depositions that CMO 17 explicitly permits.

*__Plaintiffs Lack Standing__*.   Plaintiffs' contention that the subpoenas are "improper in substance" fails.  Plaintiffs do not have standing to oppose subpoenas to any third party. "The general rule. . . is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citing *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D.Colo.1997).  Plaintiffs assert no privilege; therefore, they lack standing.  Regardless, a blanket protective order against all non-party written discovery is improper; should Plaintiffs have standing to object, they must move for orders as to specific subpoenas or requests.

Moreover, Plaintiffs' specific objections are meritless.  First, the subpoenas are critical to proving defenses.  For example, Walker McKnight recently testified that he "looked at old text messages" to a friend who sold him "the last [marijuana] cartridge" he used before being hospitalized with injuries he attributes to Defendants. Tr. 71-2, 86.  Defendants promptly requested the messages, but McKnight claimed he "does not have" them (which will be the subject of separate motion practice), forcing Defendants to subpoena the third party to obtain this critical discovery.

Second, the subpoenas are narrowly tailored to case-specific issues, and are directed to individuals with knowledge of Plaintiffs' claims, including family, close friends, and treating medical providers.  Plaintiffs claim that Defendants are "going after Plaintiffs' relatives and friends," but Plaintiffs themselves identified most subpoena recipients in their Rule 26(a) Disclosures.  The requests seek relevant, discoverable information about Plaintiffs' nicotine and tobacco use, Plaintiffs' medical diagnoses and treatments, and Plaintiffs' drug use.  For example, Julia Braine, whom Plaintiff Kaitlyn Fay included in her Disclosures, testified that she received a letter from Ms. Fay while Ms. Fay was at rehab for mental health and substance use issues.  The subpoenas also seek information about the recipients' procurement of nicotine, tobacco, and drugs,

1  which includes their procurement of these substances for the Plaintiffs. For example, Cole
2  Aragona's father testified that he used THC-containing products with his son, and Kersten Legacki
3  testified that she purchased vaping products for her sister, Bailey Legacki.

4  Finally, non-party discovery is not "duplicative of [discovery] under CMO 17;" by
5  definition, non-parties have not produced anything under that order. Plaintiffs' objection that
6  "Defendants have the information they seek by way of testimony" is also incorrect. Depositions
7  and documents are complements, not substitutes. *See, e.g.*, *Richlin v. Sigma Design W., Ltd.,* 88
8  F.R.D. 634, 637 (E.D. Cal. Dec. 11, 1980) ("[T]he various methods of discovery . . . are clearly
9  intended to be cumulative[.]"). Plaintiffs cite no authority supporting their contention that the
10 subpoenas should be quashed because they are not "necessary" or because some were served after
11 certain depositions occurred. Moreover, the requests do not "annoy[], embarrass[]," or "oppress[]"
12 the recipients. No subpoena recipient has objected to the subpoenas. Should any recipient raise
13 concerns, Defendants will consider further narrowing certain requests, but no such complaint exists.

14 ***Plaintiffs have notice.*** The Court should not quash the subpoenas for lack of prior notice.
15 For most subpoenas, Defendants notified Plaintiffs' counsel prior to serving the subpoenas. For a
16 minority, Defendants inadvertently failed to do so. In such situations, courts do not quash subpoenas
17 absent a showing of prejudice. *See, e.g.*, *Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *2
18 (N.D. Cal. May 8, 2013) (denying motion to quash subpoenas because counsel had "notice and
19 sufficient time to object"); *In re Request for Jud. Assistance From Embassy of Arab Republic of
20 Egypt*, 2021 WL 6112131, at *2 (E.D. Mich. Dec. 27, 2021) ("Courts have enforced subpoenas even
21 if there is technical noncompliance with Rule 45 where the allegedly impacted party eventually
22 obtained notice, had the opportunity to raise objections, and did raise objections.").

23 There is no prejudice here. Defendants served copies of the subpoenas on October 11, no
24 more than fourteen (14) days after they were served on non-parties. Defendants then gave Plaintiffs
25 more than "sufficient time to object": Plaintiffs took three weeks (until November 1) to draft the
26 position statement presented above, during which time Defendants did not accept, much less use,
27 any documents produced pursuant to the subpoenas. Because Plaintiffs have had ample notice and
28 offer no valid grounds for objecting to the subpoenas, the Motion should be denied.

| | |
|---|---|
| DATED: December 9, 2024 | Respectfully submitted, |
| By: */s/ DRAFT* <br> Scott P. Schlesinger (*pro hac vice*) <br> Jonathan R. Gdanski (*pro hac vice*) <br> Jeffrey L. Haberman (*pro hac vice*) <br> **SCHLESINGER LAW OFFICE, P.A.** <br> 1212 SE Third Avenue <br> Fort Lauderdale, FL 33317 <br> Tel: (954) 467-8800 <br><br> *Attorneys for Plaintiffs* | By: */s/ Timothy S. Danninger* <br> Timothy S. Danninger (*pro hac vice*) <br> **GUNSTER YOAKLEY & STEWART, P.A.** <br> 1 Independent Drive, Suite 2300 <br> Jacksonville, 32204 <br> Telephone: (904) 354-1980 <br><br> *Attorneys for Defendant Juul Labs, Inc.* <br><br> By:  */s/ Michael J. Guzman* <br><br> Mark C. Hansen (admitted *pro hac vice*) <br> Michael J. Guzman (admitted *pro hac vice*) <br> David L. Schwarz (CA Bar No. 206257) <br> Ryan M. Folio (admitted *pro hac vice*) <br> **KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.** <br> 1615 M Street, N.W. Suite 400 <br> Washington, DC 20036 <br> TEL: (202) 326-7900 <br> mhansen@kellogghansen.com <br> mguzman@kellogghansen.com <br> dschwarz@kellogghansen.com <br><br> *Attorneys for Non-Management Defendants Huh, Pritzker, and Valani* |

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel met and conferred on October 14, 2024. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

                                      */s/Jeffrey L. Haberman*
                                      Jeffrey L. Haberman