[*Counsel listed in signature block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Bailey Legacki v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-01927. | **Case No. 19-md-02913-WHO**<br><br>**JOINT STATUS REPORT CONCERNING FRCP 35 MENTAL HEALTH EXAMINATION DISCOVERY DISPUTE** |

1  Pursuant to the Court's Standing Order regarding Discovery Disputes, the parties jointly submit the following status report regarding Federal Rule of Civil Procedure 35 medical exam requests served by JUUL Labs, Inc. and the Non-Management Directors (together, "Defendants").

**Defendants' position.** Defendants seek psychiatric and/or physical examinations of all Plaintiffs depending on their alleged injuries. This dispute arose months ago when Defendants sought a psychiatric examination of Plaintiff Bailey Legacki. Defendants proposed an exam following the format ordered by then-Magistrate Judge Corley – an unrecorded one-on-one examination between the doctor and plaintiff. Repeating a familiar pattern, Plaintiffs took the position that CMO 17 precluded such exams during the Additional Discovery period. Plaintiffs also rejected the Corley procedures, instead insisting on relitigating already-resolved issues because they dislike the original outcome. Plaintiffs offer no good faith basis for reconsideration.

Defendants seek an order directing Ms. Legacki to sit for a remote, four-hour psychiatric examination by Dr. Ryan Wagoner to test the nature and extent of her alleged mental health injuries – including nicotine addiction, irritability, mood swings, anxiety, and depression, Am. Compl. ¶¶ 14, 748, 1048, ECF No. 19. Using Ms. Legacki's medical history, Dr. Wagoner would conduct a behavioral interview, after which he would select from and perform up to five of the following tests as he deems appropriate: GAD-7 (to test allegations of anxiety); PHQ-9 (to test allegations of depression); MoCA (to test cognitive function); MMPI-2-RF (to test depression, anxiety, irritability, and substance abuse); SIRS-2 (to test self-reporting reliability). Judge Corley ordered similar exams of bellwether plaintiffs and Dr. Wagoner performed them without incident. Counsel first met and conferred on August 16, 2024, and have since tried to narrow the dispute.

The Court should follow the framework for mental exams that Judge Corley established during the bellwether process, such that doctor and plaintiff are the only people present for the exam. *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (under law of the case, "a court is generally precluded from reconsidering an issue that has already been decided by the same court" (citation omitted)). As Judge Corley held, "[t]he presence of another individual in the CME is outside the usual practice of the retained psychiatrists and could . . . impact how the plaintiff responds." Order on Joint Ltr. Br. re Compulsory Medical Exams at 1-2, ECF No. 1795 (rejecting

request for emotional support person and counsel to attend).  These exams should not be recorded because "[a]udio-recording poses the same problems as having a person 'in' the room: the plaintiff will likely respond differently knowing that the responses are being recorded." *Id.* at 2.

Caselaw around the country overwhelmingly supports Judge Corley's conclusions, and the Court should affirm them here.  Medical exams under Rule 35 of the Federal Rules of Civil Procedure are governed by federal law, not state law. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 11 (1942) (holding Rule 35 to be procedural).  State laws on the parameters of medical exams do not apply in federal court, so Plaintiffs' discussion of Florida practice is irrelevant. *See Flack v. Nutribullet, LLC*, 333 F.R.D. 508, 516-17 (C.D. Cal. 2019).  "The majority rule adopted by the federal courts is that the court may, and often should exclude third-party observers, including counsel, from medical or psychiatric evaluations." *Id.* at 517 (citation omitted) (collecting cases). "[T]he need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and examinee thereby compromising the results of the examination." *Shirsat v. Mutual Pharm. Co., Inc.*, 169 F.R.D. 68, 71 (E.D. Pa. 1996).  There is a "potential for a third party observer to interfere with, or even contaminate, a mental examination." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609-10 (C.D. Cal. 1995).  Judge Corley already rejected Plaintiff's speculative concern about improper questioning.

For similar reasons, courts have concluded that "the presence of recording devices during [mental] exams is also disfavored." *Newman v. San Joaquin Delta Community Coll. Dist.*, 272 F.R.D. 505, 514 (E.D. Cal. 2011) (citation omitted).  The plaintiff "could perceive the videotape as critical to h[er] case and fail to respond in a forthright manner." *Holland v. United States*, 182 F.R.D. 493, 496 (D.S.C. 1998).  Recording a psychiatric exam could "(1) potentially invalidate the examination results; (2) fail to provide a 'level playing field,' as plaintiff was not required to tape record his examinations with his own health care providers; and (3) create an adversarial environment during an evaluation that should be neutral." *Ayat v. Societe Air France*, 2007 WL 1120358, at *7 (N.D. Cal. Apr. 16, 2007) (citation omitted).

These exams are proper in both Additional Discovery and full fact and expert discovery. Defendants sought these exams in Additional Discovery because these exams can inform

dispositive motions, there are many exams to schedule, and CMO 17 does not specifically allocate them between the discovery periods. *See* ECF No. 3780. Completing a few exams during the remainder of Additional Discovery will focus dispositive motions more effectively on unsupported injuries. Starting now does not render full fact and expert discovery meaningless. Doctors hired as experts will submit reports and be deposed during the full fact and expert discovery period. Written discovery, fact witness depositions, and CMEs not conducted now will also take place during full fact and expert discovery. The parties did not reach the agreement that Plaintiffs claim. Defendants sought clarity on whether Plaintiffs would agree CMEs are proper during full fact and expert discovery. Defendants' November 29 email referred to Defendants' proposed stipulation— they would not seek CMEs during Additional Discovery *if* Plaintiffs would agree to resolve the procedural disputes now. Plaintiffs refused to resolve the disputes now, so Defendants never agreed to forgo CMEs during Additional Discovery. Finally, CMO 17 does not prohibit the same "types of discovery" in both phases, as plaintiffs claim – CMO 17 contemplates depositions in both phases, providing that "the witnesses specific to the Plaintiff's claims *already deposed* shall not be re-deposed." CMO 17 at 32 (emphasis added). So too with medical exams.

**Plaintiffs' position.** The Court should deny Defendants' request which they delayed making by over four months and which rests on ever-evolving justifications. On August 14th Defendants demanded CMEs of *all* plaintiffs. We immediately asked to meet-and-confer, which took place on August 16th. Plaintiffs laid out their objections: CMO 17 does not contemplate CMEs in Additional Discovery; Defendants failed to specify the nature and type of exam, who would conduct the exam, whether they would disclose the expert's report, and whether they would put the expert up for deposition. Defendants did not raise the issue again until October 3rd, when they requested a CME in the *Legacki* case only. Since then the parties exchanged numerous drafts of this letter brief, and finally reached a deal – CMEs would occur in full fact discovery. On November 29th Mr. Skaras, writing for Defendants, wrote: "Are we now in agreement that CMEs will occur during full fact and expert discovery?" After the sides again conferred, he followed up on December 6th: "We now understand that your position is that CMEs are appropriate during full fact and expert discovery."

Defendants' reason for the CMEs keeps shifting. Defendants first maintained CMEs were necessary for depositions. They now say CMEs may inform dispositive motions. If this were the case, they would have presented the issue back in August. There is no way to complete CMEs by the end of Additional Discovery. So this is all pretextual, and should not be used to prejudice Plaintiffs. Defendants' engineering of this delay is consistent with their failure to use duly executed authorizations and subpoenas to request medical records. They have not affirmatively requested a single medical record. This, in stark contrast to Plaintiffs' work: requesting and subpoenaing records from hundreds of providers; robust responses to written discovery; and producing comprehensive expert reports. Defendants seek a backdoor attempt to obtain their own expert testimony to use in *Daubert* and summary judgment briefing, while not providing Plaintiffs any basis for challenge or cross examination. Defendants' ask deprives Plaintiffs of their due process rights of with mutual discovery exchanges, as in all other cases.

Defendants want an order entered now on the parameters of a CME. They maintain *all discovery* is appropriate in the Additional Discovery phase, obliterating any distinction between discovery phases. But, since Defendants only request an order in *Legacki*, there is no reason for an across-the-board ruling when they did not specify what types of CMEs they wanted in each case. This is especially so given the pending motions to remand *Fay*, *McKnight*, and *Shapiro* to their respective state courts, and the Court's remark that it does not intend to keep any of the cases for trial but will transfer them to respective district courts. CMEs involve state-specific issues that may be better suited for the courts that will oversee the trials.

Defendants' proposed diagnostic tests, attached as Exhibit 1, drive home the point. Tellingly, they do not want their expert to test whether Ms. Legacki is addicted to nicotine. While Defendants state otherwise, the tests enumerated in their proposed order are simply not on nicotine dependence. Their proposed tests evaluate whether a person is telling the truth, a question for the fact finder, not summary judgment. Plaintiff objects to the tests Defendants' expert indicates he would conduct. Overall, Defendants cannot have it both ways. If Defendants want to engage in full fact and expert discovery – their plaint attempt here – the Court should modify the CMO.

Equally problematic is the substance of the requested CME parameters. Defendants take

4

issue with two primary CME procedures: (1) the attendance or presence of Plaintiff's counsel; and (2) the ability to record or transcribe the examination. Prohibiting these two measures would violate Florida law—the substantive state law which governs Ms. Legacki's case.

The conditions attending Rule 35 examinations are discretionary. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011). Rule 35 is silent on who may attend a CME. *See* Fed. R. Civ. P. 35; *Tarte v. United States*, 249 F.R.D. 856, 858 (S.D. Fla. 2008). Courts can look to state law for guidance. *See Goggins v. State Farm Mut. Automobile Ins. Co.*, 2011 WL 1660609, at *2 (M.D. Fla. May 3, 2011); *Gensbauer v. May Dep't Stores Co.,* 184 F.R.D. 552, 553 (E.D. Penn. 1999) ("In a diversity case… I look to Pennsylvania rules for guidance. [T]he party examined should have representation during a medical examination.").

The Supreme Court of Florida decided in *United States Security Ins. Co. v. Cimino*, 754 So. 2d 697 (Fla. 2000), that the plaintiff was entitled to have an attorney or videographer at a CME:

> Whenever a doctor selected by the defendant conducts a physical examination of the plaintiff, there is a possibility that improper questions may be asked, and a lay person should not be expected to evaluate the propriety of every question at his peril. The plaintiff, therefore, should be permitted to have the assistance and protection of an attorney during the examination . . . Of course, the attorney's presence during the examination is premised upon a requirement that the attorney not interfere with the doctor's examination . . . The concerns of physicians for conducting examinations without the distraction of third persons cannot outweigh the insured's rights.

*Id.* at 701–02. In *Cimino* the Florida Supreme Court recognized *a substantive legal right* to fairness and privacy during compelled examinations. *See also Byrd v. Southern Prestressed Concrete, Inc.*, 928 So. 2d 455 (Fla. 1st DCA 2006) (parties are entitled to have an attorney present as psychiatric and psychological examinations). Accordingly, this Court should find that the rule from *Cimino* is substantive; Ms. Legacki has a right to have her attorney and have the exam transcribed or recorded. Florida federal courts look to Florida law for guidance. *See Goggins*, 2011 WL 1660609, at *2–3 (permitting plaintiff's attorney to attend examination, but cautioning counsel to behave in an orderly fashion); *Tracey P. v. Sarasota Cnty.,* No. 8:05–CV–927–T–27EAJ, 2006 WL 1678908 (M.D. Fla. June 16, 2006) (allowing presence of court reporter or authorizing an audio recording of the examination).

Plaintiffs respectfully request a hearing regarding this dispute.

DATED: December 30, 2024                    Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
Scott P. Schlesinger (*pro hac vice*)
Jonathan R. Gdanski (*pro hac vice*)
Jeffrey L. Haberman (*pro hac vice*)
**SCHLESINGER LAW OFFICE, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33317
Tel: (954) 467-8800

*Attorneys for Plaintiffs*

By: */s/ Timothy S. Danninger*
Timothy S. Danninger (*pro hac vice*)
**GUNSTER YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, 32204
Telephone: (904) 354-1980

*Attorneys for Defendant Juul Labs, Inc.*

By: */s/ Michael J. Guzman*
Mark C. Hansen (admitted *pro hac vice*)
Michael J. Guzman (admitted *pro hac vice*)
David L. Schwarz (CA Bar No. 206257)
D. Chanslor Gallenstein (admitted *pro hac vice*)
Andrew Skaras (admitted *pro hac vice*)
**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, DC 20036
TEL: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com
cgallenstein@kellogghansen.com
askaras@kellogghansen.com

*Attorneys for Non-Management Defendants Huh, Pritzker, and Valani*

# CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel met and conferred on August 16 and October 9, 2024. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

DATED: December 30, 2024

By: */s/ Andrew Skaras*
Andrew Skaras (admitted *pro hac vice*)
**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, DC 20036
TEL: (202) 326-7900
askaras@kellogghansen.com

*Attorney for Non-Management Defendants Huh, Pritzker, and Valani*