[*Counsel listed in signature block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Cole Aragona v. Juul Labs, Inc., et al*, Case No. 3:20-cv-1928;<br>*Jordan Dupree v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03850;<br>*Kaitlyn Fay v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07934;<br>*Jennifer Lane v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-04661;<br>*Bailey Legacki v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-01927;<br>*Walker McKnight v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-02600;<br>*Carson Sedgwick v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03882;<br>*Ben Shapiro v. JUUL LABS, INC., et al.*, Case No. 3:19-cv-07428; and<br>*Matthew Tortorici v. JUUL LABS, INC., et al.*, Case No. 3:20-cv-03847 | Case No.: 19-md-02913-WHO<br><br>**JOINT STATUS REPORT CONCERNING PRIVACY OBJECTION DISCOVERY DISPUTE** |

1    Pursuant to the Court's Standing Order regarding Discovery Disputes, the parties jointly
2    submit the following status report regarding Plaintiffs' privacy objections to written discovery.
3    **Defendants' position.** This Court should require Plaintiffs to produce documents about
4    their drug use that they improperly withheld as "private." Plaintiffs have no legal support for this
5    objection, and discovery has shown that this material is relevant, non-cumulative, and essential.
6    On September 4, the Court ordered Plaintiffs to provide "*substantive* written responses" to
7    written discovery requests. ECF No. 4291. Plaintiffs then raised numerous boilerplate and vague
8    objections, including that certain requests violate "Plaintiff's legitimate expectation of privacy."
9    Plaintiffs asserted this objection in response to Requests for Production 5, 6, and 8 (requesting
10   documents and communications regarding Plaintiffs' use of illegal drugs) and Interrogatories 6, 8,
11   12, and 15 (seeking information relating to quantity, frequency, and time period of Plaintiffs'
12   substance use, and any associated health effects or treatments). In correspondence, Plaintiffs
13   eventually confirmed they are withholding materials related to their illegal drug use under the
14   privacy objection. They do not explain the legal basis for the objection other than to state that the
15   requests "may implicate other rights concerning federal or state laws" that "vastly outweigh[ ]"
16   discovery rights, and the requests are "neither relevant nor proportional to the needs of the case."
17   Plaintiffs' objection lacks merit. Information about their illegal drug use is plainly relevant
18   to causation. Plaintiffs allege that JUUL use caused their physical and psychological injuries,
19   including anxiety, depression, irritability, EVALI, bronchitis, pulmonary edema, and others. Their
20   admitted use of other substances such as marijuana, cocaine, ecstasy, opiates, and MDMA "is
21   relevant as evidence of an alternative theory of causation." *Badger v. Wal-Mart Stores, Inc.*, 2013
22   WL 3297084, at *8 (D. Nev. June 28, 2013) (denying motion *in limine* regarding "drug use"). The
23   discovery relates to earlier links in the causal chain, too: Plaintiffs allege that advertisements caused
24   them to use JUUL, but their use of other illegal substances without having first seen advertisements
25   undermines that allegation. "[T]here can be no reliance . . . if the plaintiff would have acted the
26   same way regardless of whether the defendant had made the misrepresentation." *Prentice v. R.J.*
27   *Reynolds Tobacco Co.*, 338 So.3d 831, 840 (Fla. 2022). Finally, the discovery may be used to
28   impeach Plaintiffs to the extent it contradicts their previous statements regarding drug use.

      Privacy is not a reason to withhold this discovery.  The protective order addresses privacy concerns by prohibiting public disclosure of confidential material.  ECF No. 1281.  In the JCCP, Judge Jones overruled a similar privacy objection regarding marijuana and recreational drug use because "that area of inquiry is highly relevant to the question of causation as well as possible misuse of the JUUL device[ ] [a]nd" because "the privacy interests c[ould] be fully protected with the stipulated protective order."  Hr'g. Tr. at 3:7-10 (Oct. 20, 2020).  Federal courts in California have reached the same conclusion.  *See Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) (ordering production of personnel files where privacy rights were sufficiently protected, "particularly under the limitations of a . . . protective order"); *see also Castillo v. City of Los Angeles*, 2021 WL 8895084, at *5 (C.D. Cal. Dec. 13, 2021) (ordering discovery into plaintiff's history of illegal drug use because his "privacy interests can be adequately protected by the Protective Order entered in this action." (citation omitted)).  One court concluded that the relevancy of drug use outweighed the plaintiff's privacy concerns when his "past drug use" could have "impacted" his monetary losses.  *Aguilar v. County of Fresno*, 2009 WL 3617984, at *6 (E.D. Cal. Oct. 29, 2009).[1]

      Plaintiffs have waived their privacy objections over materials that they already publicized—here, photos and videos of drug use Plaintiffs freely shared on social media.  *See Doe v. City of San Diego*, 2013 WL 6577065, at *7 (S.D. Cal. Dec. 13, 2013) (finding "at least a partial waiver of" a "privacy objection given" the objector's "decision to publically file her verified complaint").

      Independently, the discovery is warranted to prevent Plaintiffs from presenting a misleading picture.  Plaintiffs disclosed some illegal drug use in their PFSs, medical records, and expert reports.  Defendants should be allowed to probe further the facially incomplete and sometimes contradictory productions to date.  *Cf. Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996) (explaining that attorney-client privilege waiver "protect[s] against the unfairness that would result from a privilege holder selectively disclosing privileged communications . . . revealing those that support the cause while claiming . . . privilege to avoid disclosing those that are less favorable").

      Plaintiffs' reliance on the *McKnight* order is misplaced.  This Court ordered McKnight to

---

[1] The answer to Plaintiffs' concerns about the criminal implications of illegal drug use is the assertion of the constitutional privilege against self-incrimination.

respond to a narrowed set of requests because there was limited time for written discovery given the need to preserve McKnight's testimony.  Order on Discovery Dispute, ECF No. 37 (Case No. 3:20-cv-02600-WHO).  Those unique circumstances do not exist in the remaining cases.

The requests are not cumulative or disproportionate.  The PFSs, expert reports, and medical reports are insufficient because Plaintiffs selectively—and contradictorily—disclosed their substance use.  These documents fail to present a contemporaneous, candid view of Plaintiffs' use. *McKnight* shows that photographs and videos of substance use are crucial to alternative causation.  McKnight's production of these materials pinpointed his use of a specific marijuana vaping product containing vitamin E acetate that the CDC has connected to serious lung issues immediately prior to his hospitalization and undermined his claim that JUUL caused his injuries.  His PFS, expert reports, and medical records did not mention this product, nor did he recall it.  Contrary to Plaintiffs' statement, photos were the only discovery revealing the brand of marijuana product that McKnight used.  Finally, the interrogatories are not cumulative because they seek information not in the PFSs.

The Court should overrule the Privacy Objection and order Plaintiffs to provide the "*substantive* written responses" that the Court already told them to provide.  ECF No. 4291 at 1.

**Plaintiffs' position:** Defendants' motion to compel is without merit. As Defendants admit, Plaintiffs have largely provided information of their illicit drug use by way of their fact sheet responses, interrogatory responses, medical records, rehabilitation records, expert reports, and deposition testimony.  In some instances, however, Plaintiffs have not produced photographs or videos of illicit drug use because that would violate their privacy rights under the Constitution, and, those requests are overbroad, irrelevant, and not proportional to the needs of the case. What's more, the Court had sustained a similar objection in *McKnight*. The Court did not require McKnight to produce communications or photographs or video recordings of his use of illicit drugs. Accordingly, this dispute is narrow. The issue concerns the extent of information Plaintiffs are required to produce on their "illegal drug use" or "illicit use of legal drugs." For these reasons, and those that follow, the Court should sustain Plaintiffs' objections and deny Defendants' motion.

The Court's order of September 4, 2024, provided that written discovery in the Additional Discovery phase must be "narrowly tailored to case specific issues and not duplicative of the

plaintiff fact sheet." Interrogatories 6, 8, 12, and 15 (Exhibit A), and RFPs 5, 6, and 8 (Exhibit B) contravene the Order. These interrogatories ask for the same information as the Fact Sheet (Exhibit C). Notwithstanding, Plaintiffs provided substantive responses, in part, by directing Defendants to the respective Fact Sheet question. Moreover, Plaintiffs did not withhold information based on privacy objections. Interrogatories 6 and 8 ask about cannabis products and illegal drugs. So do Fact Sheet Questions 30 and 31. The Fact Sheets ask about the name, type, frequency, and method of ingestion, of cannabis and other drugs, and when the Plaintiff used those substances in relation to JUUL (before, during, and/or after). Interrogatory 12 asks about the Plaintiff's alcohol use and ENDS use as well as their illegal drug use. Not only does this overlap with Interrogatories 6 and 8, but it too is duplicative of Fact Seet Question 29: which is on alcohol usage, and Fact Sheet Questions 25-27: which on ENDs usage. Interrogatory 15 and its numerous subparts ask about dependency conditions the Plaintiff experienced or was diagnosed with, as well as medications the Plaintiff took, and treatment and therapy the Plaintiff received. Again, Plaintiffs responded to this request. Second, its duplicative of Fact Sheet Questions 34-36 and 39-41.

Plaintiffs also responded, in part, to RFPs 5, 6 and 8. These RFPs ask for written communications, social media, photographs and videos not only on the Plaintiffs' JUUL, ENDS and tobacco products use, but also their alcohol use, illegal drug use, or illicit use of legal drugs. Plaintiffs raised privacy objections to producing social media, photographs and videos on their illicit drug use. Defendants claim that "Plaintiffs' use of other substances such as marijuana, cocaine, ecstasy, opiates, and MDMA are relevant as alternate causes of Plaintiffs' alleged injuries." Plaintiffs have not blocked Defendants from pursuing this inquiry. Just the opposite. Defendants concede that "Plaintiffs have already produced, or authorized the production of, thousands of pages of medical records describing the various substances used by Plaintiffs." Plaintiffs' interrogatory responses and expert reports further provide this type of information. But social media, photographs, and videos of illegal drug use – this narrow category – has nothing to do with Defendants' ability to point to alternative causation. Defendants' argument on McKnight is misplaced. McKnight produced a photograph that showed a box of a marijuana vaping product that was next to many JUUL products. That document demonstrated his JUUL use. A video of marijuana

use does not indicate the brand used or whether it was associated with any lung injuries. Rather, Defendants' only aim here is to malign and embarrass Plaintiffs. Just because Plaintiffs brought a lawsuit regarding JUUL does not strip them of all privacy afforded under the U.S. Constitution. Indeed, the Court should follow the same ruling it issued precluding Defendants from requesting Walker McKnight to produce communications or photographs or video recordings of his use of illicit drugs before his discovery deposition. *See* Dkt. No. 37 in *McKnight*, 20-cv-2600, Order resolving discovery dispute, Dkt. Nos. 4234, 4235 in 19-md-2913. Here, Plaintiffs raised the same privacy objections that the bellwether plaintiffs raised. The bellwethers did not produce photographs or videos of their use of illegal drugs. The same should apply for the opt-outs.

Because Plaintiffs provided full responses on their JUUL, ENDS, tobacco, alcohol, and illicit drug use (save for the exception above) Defendants' motion should be denied.

| | |
|---|---|
| DATED: January 22, 2025 | Respectfully submitted, |
| By: */s/ Jeffrey L. Haberman* <br> Scott P. Schlesinger (*pro hac vice*) <br> Jonathan R. Gdanski (*pro hac vice*) <br> Jeffrey L. Haberman (*pro hac vice*) <br> **SCHLESINGER LAW OFFICE, P.A.** <br> 1212 SE Third Avenue <br> Fort Lauderdale, FL 33317 <br> Tel: (954) 467-8800 <br><br> *Attorneys for Plaintiffs* | By: */s/ Timothy S. Danninger* <br> Timothy S. Danninger (*pro hac vice*) <br> **GUNSTER YOAKLEY & STEWART, P.A.** <br> 1 Independent Drive, Suite 2300 <br> Jacksonville, 32204 <br> Telephone: (904) 354-1980 <br><br> *Attorneys for Defendant Juul Labs, Inc.* <br><br> By: */s/ Michael J. Guzman* <br> Mark C. Hansen (admitted *pro hac vice*) <br> Michael J. Guzman (admitted *pro hac vice*) <br> David L. Schwarz (CA Bar No. 206257) <br> **KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.** <br> 1615 M Street, N.W. Suite 400 <br> Washington, DC 20036 <br> TEL: (202) 326-7900 <br> mhansen@kellogghansen.com <br> mguzman@kellogghansen.com <br> dschwarz@kellogghansen.com <br><br> *Attorneys for Non-Management Defendants Huh, Pritzker, and Valani* |

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel met and conferred on October 30, 2024, and November 1, 2024. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

DATED: January 22, 2025

/s/ Andrew Steif
Andrew Steif (*pro hac vice*)
**GUNSTER YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, 32204
Telephone: (904) 354-1980