1  Hon. Stephen G. Larson (Ret.)
   *slarson@larsonllp.com*
2  555 South Flower Street, Suite 4400
   Los Angeles, California 90071
3  Telephone:   (213) 436-4888
   Facsimile:    (213) 623-2000
4

5  **SPECIAL MASTER**

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  IN RE: JUUL LABS, INC., MARKETING,        Case No. 19-md-02913-WHO
    SALES PRACTICES, AND PRODUCTS
11  LIABILITY LITIGATION                      Hon. William H. Orrick

12                                            **SPECIAL MASTER'S REPORT AND**
                                              **RECOMMENDATION NO. 5 FOR**
13                                            **RULINGS ON OBJECTIONS TO**
                                              **DEPOSITION DESIGNATIONS FOR**
14                                            **TRANCHE 2 WITNESSES**

15

16

17        This Report and Recommendation No. 5, having considered the parties' objections and

18  letter briefs, as well as the Court's Motion *in Limine* Orders and related instructions, contains

19  rulings for the following witnesses: Alexander Asseily, Christopher Olin, Nicholas Pritzker and

20  Riaz Valani.

21  **I.        ALEXANDER ASSEILY**

22        **a.   Plaintiff's Affirmative Designations**

23
24

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|--------------------------------------|----------------------|--------|
| 1.  | Page 00058: 19: Q. Right. So this was -- this | Objecting Party's Position: Calls For Speculation (it is unclear what video is being referred to or | **Sustained**. Lack of foundation. While it is sufficiently clear that the |

27
28

---

[1]     The Parties' Positions are taken directly from the Parties' submission to the Special Master.

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 20: e-mail was in May of 20, 2015, which was<br>21: About a week, two weeks before launch; right?<br>22: A. Sounds about right.<br>23: Q. So would the JUUL video with<br>24: the hip young people be part of the upcoming<br>25: launch campaign regardless of what it's<br><br>Page 00059:<br>01: called? | whether this video was actually used in the Vaporized campaign; the witness notes this as well at 57:24-58:18); Lacks Foundation/FRE 602 (58:23-59:1, the witness does not know if the video was actually used in the campaign, see 57:24-58:18; he was not a formal BOD member at this time and he was not involved in the day-to-day execution of the company's marketing)<br><br>Proposing Party's Position:<br>The description of the "JUUL video with the hip young people" in May 2015 makes clear the video is of the Vaporized Campaign. Also, with respect to the questioning about the vaporized video, the BOD was kept apprised and actually approved the Vaporized campaign, including the video being asked about. | question pertains to the video that is the subject of the email, the witness's response indicates that he does not know whether it was actually used in the ensuing campaign and is instead making an assumption. Inadequate foundation was established, as the circulation of the video preceded the witness's tenure as a board member by several months. |
| 2. | Page 00063:<br>22: Did JUUL take the<br>23: advertisements with the models and do market<br>24: research to determine whether or not that<br>25: advertisement might be attractive to<br>Page 00064:<br>01: teenagers?<br><br>Page 00064:<br>04: A. I don't recall the company<br>05: doing that.<br>06: Q. (BY MR. WEINKOWITZ) Do you | Objecting Party's Position:<br>Lacks Foundation/FRE 602 (witness was not a formal BOD member at this time and was not involved in the day-to-day execution of the company's marketing or product design); Testimony likely to confuse the jury as to the legal standard and create an impression that JLI is liable for failure to conduct "market research" or any use by youth or non-nicotine users.<br><br>Proposing Party's Position:<br>This does not lack foundation because as established earlier (by this witness) he was on the board and actively involved in decision making including related to marketing, advertising, design, etc. | **Overruled.** The witness was consulted on the proposed advertising prior to his tenure on the board, and then he subsequently joined the board. Sufficient foundation exists to question the witness concerning his awareness of market research related to the proposed advertising, and his response is limited to the scope of his personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 07:  think that would have been a responsible<br>08:  thing to do before putting out that<br>09:  advertising into the public?<br><br>Page 00064:<br>15:  A.  I don't know. | | |
| 3. | Page 00090:<br>16:  the e-mail.  Good talks with Richard, Barry<br>17:  and Hank.<br>18:  And Hank is Hank Handelsman;<br>19:  right?<br>20:  A. Correct.<br>21:  Q. And he's a member of the board<br>22:  of directors; right?<br>23:  A. Yes.<br>24:  Q.  Hope you are okay with my<br>25:  shitfit.  That's what Mr. Pritzker writes;<br><br>Page 00091:<br>01: right?<br>02:  A. Yes.<br>03:  Q. Super excited about Pax and<br>04:  don't want to see James rooming with a horny<br>05:  felon instead of Kim.<br>06:  Did I read that correctly?<br>07: A. You did.<br>08:  Q.  And James is James Monsees? | Objecting Party's Position:<br>FRE 401/402; FRE 403.  Object to 91:3-17 which discusses colorful language from Exhibit 11005 re "horny felon" and "shitfit" that are of no probative value and will only prejudice the jury;. plaintiffs have already designated plenty of testimony regarding Mr. Pritzker's reaction to the Vaporized campaign and do not need to highlight this language in order to introduce evidence of Mr. Pritzker's concerns.<br><br>Proposing Party's Position:<br>Mr. Asseily has personal knowledge of the instance described in the email, i.e., Nick Pritzker's "shitfit" (See: 91:14-17) over the JUUL marketing campaigns.  And therefore, Mr. Pritzker personal views about the JUUL ads, in his capacity was a BOD member who was involved in reviewing/approving the JUUL ads, is highly relevant and probative to the issues in this case and not prejudicial.  It is imperative that the jury hear testimony of Mr. Asseily corroborating Mr. Pritzker's "shitfit." | **Overruled**.  The witness's recollection of the rest of the board's views on Mr. Pritzker's reaction to the proposed advertising is probative of the company's notice and knowledge.  The language reflects the nature of that reaction and is not unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 09:  A. Correct.<br>10:  Q. And Kim at the time was wife<br>11: now -- I'm sorry, his girlfriend, now his<br>12: wife?<br>13:  A. Yes.<br>14: Q. So before I talk about -- or I<br>15: ask you questions about Mr. Pritzker's<br>16: shitfit, do you remember the shitfit?<br>17:  A. I do.<br><br>Page 00093:<br>20:  the shitfit.  Tell me what the concern was.<br>21: What was the shitfit about?<br>22:  A. This is what I was referring to<br>23: earlier.  At some stage in the review<br>24: process, the management had presented some<br>25:  draft campaigns to the board as part of a<br><br>Page 00094:<br>01: board meeting.  We reviewed it.  Nick<br>02:  Pritzker was very outspoken about his<br>03: concerns.  And you could summarize his<br>04: outspokenness as a shitfit.<br>05:  There was broad unanimity by | | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 06:  other members of the board, Nick Pritzker is<br>07: a more experienced businessman than some of<br>08: the other folks on the board, and we trusted<br>09:  his judgment and we supported it.<br>10:  So I think that the concern<br>11:  here was that the company was not moving<br>12:  hastily enough in executing that<br>13:  particular -- in taking that -- taking on<br>14:  that feedback, but ultimately it's the<br>15: management's decision to do so. | | |
| 4. | Page 00097:<br>18: so if we go back to the e-mail and you look<br>19: at what Mr. Mumby writes, right there is<br>20: discussing the age of the models and<br>21:  Mr. Mumby seems to be assuring, I guess you<br>22:  and -- or right, strike that -- Mr. Pritzker<br>23:  that the models not only will be 30 and<br>24: above, but will appear 30 years and above;<br>25: right? | Objecting Party's Position:<br>FRE 401/402; FRE 403. Cumulative of testimony at 87:17-88:2.<br><br>Proposing Party's Position:<br>Mr. Asseily has personal knowledge of the instance described in the email, i.e., Nick Pritzker's "shitfit" (See: 91:14-17) over the JUUL marketing campaigns.  And therefore, Mr. Pritzker personal views about the JUUL ads, in his capacity was a BOD member who was involved in reviewing/approving the JUUL ads, is highly relevant and probative to the issues in this case and not prejudicial.  It is imperative that the jury hear testimony of Mr. Asseily | **Overruled**.  The testimony is not impermissibly cumulative. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|--------------------------------------|-----------------------|--------|
| | Page 00098: 01: A. Yes. | corroborating Mr. Pritzker's "shitfit." | |
| 5. | Page 00103: 18: MR. WEINKOWITZ: Okay. Let's 19: pull up K2, which will be 11006. | Objecting Party's Position: [FRE 401/402; FRE 403; MIL 8: Evidence or argument of purported historical misconduct regarding combustible cigarettes is irrelevant to B.B.'s claims, which are based on conduct beginning in 2017, and are only intended to inflame and prejudice the jury. This testimony goes beyond background]<br><br>FRE 401/402; FRE 403. This 2015 email is about how JLI is not like Big Tobacco but it nonetheless invites the jury to lump together JLI's conduct with the historical misconduct of Big Tobacco companies. The article attached to Exhibit 11006 is titled "The poor, the young, the black and the stupid, Inside Big Tobacco's plans to kill a billion people" and suggests that JLI is racist, discriminatory, and "has plans" to "kill a billion people," which is prejudicial and wholly unrelated to BB's claims. The email and the referenced Pando/Ames article have nothing to do with JLI's target audience or the execution and intent behind JLI's actual marketing campaigns; they simply introduce detailed evidence of Big Tobacco's past misconduct in order to suggest that JLI acted similarly without presenting to the jury what JLI actually did. Whatever limited probative value this email may have is easily outweighed by the introduction of the referenced 11- | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. The parties have preserved objections based on the Court's motion in limine rulings. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | page article that does not mention JUUL once, and instead refers to a wide ranging history of combustible cigarette company misconduct including discussion of "secret programs to spike and freebase cigarettes," Robert Proctor's "Golden Holocaust" book (which Judge Orrick has excluded under MIL 6), memos from the 1970s that reference "jews" and "negroes," and an RJR program called "Project Scum" which targeted "the homeless, alcoholics, and drug addicts," among many other prejudicial and entirely irrelevant things.  As discussed below, JLI also objects to the article as hearsay and hearsay within hearsay. <br><br> Proposing Party's Position: <br> The court's rulings denying Defendants' Motions in Limine 8 does not preclude the admission of this evidence. <br><br> Mr. Asseily's testimony, acknowledging that JUUL could be associated with Big Tobacco's "shitty practices" of targeting youth is relevant to proving that JLI had sufficient notice not to engage in similar behavior.  JLI was forewarned that it should be cautious in its marketing strategy so as to minimize youth appeal to their addictive nicotine product.  Mr. Asseily's testimony and related documents are relevant to establishing notice and knowledge on the part of JLI that its advertising of JUUL should not mimic the problematic marketing practices used by Big Tobacco that enticed | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | youth and non-smokers to smoke. Within days after JUUL's launch, Mr. Asseily told Mr. Pritzker that JUUL faces challenges in its launch to steer clear of the practices of Big Tobacco to avoid both legal and ethical issues. This evidence, including the Ames article (Ex. 11006) is also relevant to showing that despite the Board's awareness of the various tactics used by Big Tobacco to target youth in their advertising of cigarettes, JLI chose to utilize many similar marketing strategies for JUUL.<br><br>Neither the admission of Mr. Asseily's testimony or the Ames article are unduly prejudicial to Defendants. Defendants' knowledge of its risky marketing practices for JUUL, weighs against any possible prejudice compared the highly probative value of this evidence in order for the jury to have complete information in assessing JLI's liability. Mr. Asseily's testimony, email to Pritzker, and the Ames article are all admissible under FRE 403. | |
| 6. | Page 00105:<br>14: This is an e-mail from to you<br>15: Nick Pritzker on July 4, 2015. Do you see<br>16: that?<br>17: A. Yeah.<br>18: Q. And the subject line is | Objecting Party's Position:<br>[Same as above, this testimony goes beyond background - FRE 401/402; FRE 403; MIL 8.]<br><br>FRE 401/402; FRE 403. Same as above. As discussed below, JLI also objects to the article as hearsay and hearsay within hearsay.<br><br>Proposing Party's Position: | **Overruled.** The testimony does not discuss the contents of the article. It recites the title, which is not being offered for its truth. The board's concern about being associated with Big Tobacco's practices is probative of the company's notice and |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 19: Re: Pando: "The poor, the young, the black,<br>20: and the stupid," Inside Big Tobacco's plans<br>21: to kill a billion people.<br>22: Do you see that?<br>23: A. Yes.<br><br>Page 00106:<br>08: Let's look at the e-mail. It says QED. Can<br>09: you please tell the jury what that Latin<br>10: phrase means?<br>11: A. It means -- I'm going to -- I'm<br>12: going to have to --<br>13: Q. That's all right. It's not a<br>14: test. Let me ask you a better question.<br>15: A. It's quod erat demonstrandum.<br>16: Q. And it basically interprets --<br>17: basically, in English too, it has been<br>18: demonstrated or proven; correct?<br>19: A. Yes.<br>20: Q. And it's -- you quite: The<br>21: discomfort we have with JUUL stems from a<br>22: real fear that we might be associated with<br>23: big tobacco's shitty practices rather than be<br>24: seen as a pragmatic remedy for them. | The court's rulings denying Defendants' Motions in Limine 8 does not preclude the admission of this evidence.<br><br>Mr. Asseily's testimony, acknowledging that JUUL could be associated with Big Tobacco's "shitty practices" of targeting youth is relevant to proving that JLI had sufficient notice not to engage in similar behavior. JLI was forewarned that it should be cautious in its marketing strategy so as to minimize youth appeal to their addictive nicotine product. Mr. Asseily's testimony and related documents are relevant to establishing notice and knowledge on the part of JLI that its advertising of JUUL should not mimic the problematic marketing practices used by Big Tobacco that enticed youth and non-smokers to smoke. Within days after JUUL's launch, Mr. Asseily told Mr. Pritizker that JUUL faces challenges in its launch to steer clear of the practices of Big Tobacco to avoid both legal and ethical issues. This evidence, including the Ames article (Ex. 11006) is also relevant to showing that despite the Board's awareness of the various tactics used by Big Tobacco to target youth in their advertising of cigarettes, JLI chose to utilize many similar marketing strategies for JUUL.<br><br>Neither the admission of Mr. Asseily's testimony or the Ames article are unduly prejudicial to Defendants. Defendants' knowledge | knowledge, and is not unduly prejudicial. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 25: Did I read that correctly?<br><br>Page 00107:<br>01: A. You did.<br>02: Q. And therein lies the -- the<br>03: next sentence: Therein lies our challenge<br>04: and also our opportunity. For me this is not<br>05: just a legal question but an ethical one<br>06: first and foremost; right?<br>07: A. Correct. | of its risky marketing practices for JUUL, weighs against any possible prejudice compared the highly probative value of this evidence in order for the jury to have complete information in assessing JLI's liability. Mr. Asseily's testimony, email to Pritzer, and the Ames article are all admissible under FRE 403. | |
| 7. | Page 00111:<br>03: Q.   Okay. Let's look -- let's go<br>04: back to 11005, please. | Objecting Party's Position: FRE 401/402; FRE 403. The provocative "shitfit" language from Exhibit 11005 is of no probative value and will only prejudice the jury; plaintiff has already designated plenty of testimony regarding Mr. Pritzker's reaction to the Vaporized campaign and does not need to highlight this language in order to introduce evidence of Mr. Pritzker's concerns. In addition, plaintiff has also designated testimony about big tobacco's "shitty" practices at 106:20-107:7. The probative value of this duplicative testimony is outweighed by the prejudicial language in the email.  The probative value is also undercut by counsel's misreading of Exhibit 11005 at 112:9, which omits the crucial word "not." Defendants disagree that the objection is untimely; defendants reserved the | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|------|------|------|
| | | right to assert this objection in their April 18, 2022 letter to Plaintiff.<br><br>Proposing Party's Position:<br>This is exhibit 1105 discussed above which is an email by the witness discussing JLI's handling of marketing and advertising of JUUL and whether its marketing and messaging is appropriate. It also goes to the companies notice and knowledge, the companies actions and inaction and is totally relevant to plaintiff's claims of negligence, design defect, among others. | |
| 8. | Page 00111:<br>05: We're looking at the e-mail<br>06: that we looked at earlier, and there is a<br>07: very, sort of long response for you at the<br>08: very beginning -- I mean at the very end of<br>09: this e-mail. Do you see that? From you to<br>10: Mr. Valani and Mr. Pritzker.<br>11: And you say in that e-mail: I<br>12: like the shitfit. Keeps everyone on their<br>13: toes. Right?<br>14: A. Correct.<br>15: Q. If you go down to the third<br>16: paragraph, it says: Our fears around<br>17: tobacco/nicotine are not going away. We will | Objecting Party's Position:<br>FRE 401/402; FRE 403. The provocative "shitfit" language from Exhibit 11005 is of no probative value and will only prejudice the jury; plaintiff has already designated plenty of testimony regarding Mr. Pritzker's reaction to the Vaporized campaign and does not need to highlight this language in order to introduce evidence of Mr. Pritzker's concerns. In addition, plaintiff has also designated testimony about big tobacco's "shitty" practices at 106:20-107:7. The probative value of this duplicative testimony is outweighed by the prejudicial language in the email. The probative value is also undercut by counsel's misreading of Exhibit 11005 at 112:9, which omits the crucial word "not." Defendants disagree that the objection is untimely; defendants reserved the right to assert this objection in their April 18, 2022 letter to Plaintiff. | **Overruled**. The witness's recollection of the rest of the board's views on Mr. Pritzker's reaction to the proposed advertising is probative of the company's notice and knowledge. The language reflects the nature of that reaction and is not unduly prejudicial. This subject of testimony is directly connected by the witness's correspondence to the use of youth in advertising. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 18:  continue to have plenty of agitation if we 19: don't come to terms with the fact that these 20: substances are almost irretrievably connected 21: to the shittiest companies and practices in 22: the history of business. 23: Did I read that correctly? 24:  A. Yes. 25:  Q. Now, if you jump down to -- (continued page 00112)<br><br>Page 00112: 01: bring that down. Later on in the e-mail 02: where it starts with James?  Can you pull 03: that paragraph up? 04: At the very end of that 05: paragraph you say: That is compounded by the 06: fact that the world is transparent and 07: increasingly intolerant of bullshit.  It's 08: not about faking it -- it's about doing it 09: correctly....  Which could mean doing a lot 10:  of things we thought we would do like putting | Proposing Party's Position: Same as above.  At the time of the deposition, Defendants did not object to the form of the question in which Counsel inadvertently misread from Ex. 11005 by omitting the word, "not" at 112:9, so therefore the objection was waived. Moreover, the witness answered the question as if the reading was correct.  However, Plaintiff will agree to present a corrected reading out loud to the jury following the conclusion of the deposition, including showing the paragraph at issue and the omitted word. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 11: young people in our poster ads or drafting in 12: the wake of big players in the market. 13: Do you see that? 14: A. Yes. 15: Q. And you specifically refer to: 16: ...we thought we would do like putting young 17: people in our poster ads. Right? 18: A. Correct. | | |
| 9. | Page 00114: 02: Q. Okay. So it was a reference to 03: putting young people in JUUL advertising. 04: And what you were basically saying is, look, 05: if we don't want to be associated with big 06: tobacco and their shitty practices, we 07: shouldn't act like big tobacco and put models 08: with youthful people in our ads; right? 09: That's sort of what you're getting at, which 10: is, if you don't want to be big tobacco, 11: don't act like big tobacco; right? Page 00114: 15: A.  What you're saying is partially 16: what I meant. | Objecting Party's Position: Misstates prior testimony (misleading attempt by counsel to summarize the witness' more fulsome and actual testimony at 112:19-114:1 using colorful language like "shitty practices"); Vague and ambiguous (form, "so it was a reference to," "sort of what you're getting at"); FRE 401/402; FRE 403 (cumulative; counsel already read the document into evidence on p 111-112); Compound ("so it was a reference..." and "what you were basically saying..." and "that's sort of what you're getting at which is...") Proposing Party's Position: Same as above. This question is based on the witness' statement in the document and the witness answers by agreeing that it was "partially what I meant." For this reason, it also does not misstate the testimony, and there is no prior testimony on this issue that is different. The question is quite clear | **Sustained**. Compound. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | and the witness has no problem answering the question without seeking clarification. | |
| 10. | Page 00124:<br>03: Q. (BY MR. WEINKOWITZ) Okay. Can<br>04: we pull up Exhibit 1106 again? Mr. Asseily,<br>05: we talked about Exhibit 1106 which was an<br>06: e-mail that you sent to Nick Pritzker on<br>07: July 4, 2015 with the Pando article; correct? | Objecting Party's Position:<br>[FRE 401/402; FRE 403; MIL 8: Evidence or argument of purported historical misconduct regarding combustible cigarettes is irrelevant to B.B.'s claims, which are based on conduct beginning in 2017, and are only intended to inflame and prejudice the jury. This testimony goes beyond background]<br><br>FRE 401/402; FRE 403. This 2015 email is about how JLI is not like Big Tobacco but it nonetheless invites the jury to lump together JLI's conduct with the historical misconduct of Big Tobacco companies. The article attached to Exhibit 11006 is titled "The poor, the young, the black and the stupid, Inside Big Tobacco's plans to kill a billion people" and suggests that JLI is racist, discriminatory, and "has plans" to "kill a billion people," which is prejudicial and wholly unrelated to BB's claims. The email and the referenced Pando/Ames article have nothing to do with JLI's target audience or the execution and intent behind JLI's actual marketing campaigns; they simply introduce detailed evidence of Big Tobacco's past misconduct in order to suggest that JLI acted similarly without presenting to the jury what JLI actually did. Whatever limited probative value this email may have is easily outweighed by the introduction of the referenced 11- | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. The parties have preserved objections based on the Court's motion in limine rulings. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | page article that does not mention JUUL once, and instead refers to a wide ranging history of combustible cigarette company misconduct including discussion of "secret programs to spike and freebase cigarettes," Robert Proctor's "Golden Holocaust" book (which Judge Orrick has excluded under MIL 6), memos from the 1970s that reference "jews" and "negroes," and an RJR program called "Project Scum" which targeted "the homeless, alcoholics, and drug addicts," among many other prejudicial and entirely irrelevant things. As discussed below, JLI also objects to the article as hearsay and hearsay within hearsay<br><br>Proposing Party's Position:<br>This is exhibit 1106 discussed above and the same responses apply. Each of Defendants' objections lack merit.<br><br>Mr. Asseily's testimony, acknowledging that JUUL could be associated with Big Tobacco's "shitty practices" of targeting youth is relevant to proving that JLI had sufficient notice not to engage in similar behavior. JLI was forewarned that it should be cautious in its marketing strategy so as to minimize youth appeal to their addictive nicotine product. Mr. Asseily's testimony and related documents are relevant to establishing notice and knowledge on the part of JLI that its advertising of JUUL should not mimic the problematic marketing practices | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | used by Big Tobacco that enticed youth and non-smokers to smoke. Within days after JUUL's launch, Mr. Asseily told Mr. Pritizker that JUUL faces challenges in its launch to steer clear of the practices of Big Tobacco to avoid both legal and ethical issues.  This evidence, including the Ames article (Ex. 11006) is also relevant to showing that despite the Board's awareness of the various tactics used by Big Tobacco to target youth in their advertising of cigarettes, JLI chose to utilize many similar marketing strategies for JUUL.<br><br>Neither the admission of Mr. Asseily's testimony or the Ames article are unduly prejudicial to Defendants.  Defendants' knowledge of its risky marketing practices for JUUL, weighs against any possible prejudice compared to the highly probative value of this evidence in order for the jury to have complete information in assessing JLI's liability. Mr. Asseily's testimony, email to Pritizer, and the Ames article are all admissible under FRE 403.   Additionally, there is no prior testimony that is being restated; rather the witness states that he wants to be clear what he meant. | |
| 11. | Page 00124:<br>08:  A. Correct.<br>09: Q. And I think when we -- you -- I<br>10:  asked you sort of why you sent this to<br>11:  Mr. Pritzker, you had said something like | Objecting Party's Position:<br>[Same as above, this testimony goes beyond background - FRE 401/402; FRE 403; MIL 8]<br><br>Misstates Prior Testimony (misleading) (124:9-14, "when...I | **Overruled**.  The testimony does not discuss the contents of the article, and to the extent it is predicated on the article, it is not being offered for the truth of the article but instead its effect on the |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 12: it's important to understand sort of what big<br>13: tobacco did in the past and learn lessons<br>14: from it; right? | asked you sort of why...you had said something like...")<br><br>FRE 401/402; FRE 403. Same as above. As discussed below, JLI also objects to the article as hearsay and hearsay within hearsay.<br><br>Proposing Party's Position:<br>Same as above with respect to 1106, i.e. Each of Defendants' objections lack merit. | listener. The board's concern about being associated with Big Tobacco's practices is probative of the company's notice and knowledge, and is not unduly prejudicial. |
| 12. | Page 00124:<br>16: A.    Let me be very specific.  To<br>17: use it as a guide in what not to do, not in<br>18: what to do.<br>19: Q.    (BY MR. WEINKOWITZ) Those who<br>20: don't learn from history are doomed to repeat<br>21: it. Sort of like that phrase; right? | Objecting Party's Position:<br>[Same as above, this testimony goes beyond background - FRE 401/402; FRE 403; MIL 8.]<br><br>Vague and ambiguous (form) (124:19-21, "sort of like that phrase, right?")<br><br>FRE 401/402; FRE 403. Same as above. As discussed below, JLI also objects to the article as hearsay and hearsay within hearsay.<br><br>Proposing Party's Position:<br>Same as above with respect to 1106, i.e. Each of Defendants' objections lack merit. | **Overruled**.  The question is not impermissibly vague or ambiguous. |
| 13. | Page 00124:<br>23: A.    Possibly, yes.<br>24: Q.    (BY MR. WEINKOWITZ) And do you<br>25: see that Mr. Pritzker responds to your (continued page 00125)<br><br>Page 00125:<br>01: e-mail; right? | Objecting Party's Position:<br>[Same as above, this testimony goes beyond background - FRE 401/402; FRE 403; MIL 8.]<br><br>Vague and ambiguous (form) (124:19-21, "sort of like that phrase, right?")<br><br>FRE 401/402; FRE 403. Same as above. As discussed below, JLI also | **Overruled**.  The questions Is not misleading, as the witness's response expressly draws a distinction between the email and Altria's investment in JLI. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 02: A.    Yes.<br>03: Q.    He says: Well put.  We either<br>04:  have to sell JUUL altogether or fight them.<br>05: Who did you understand the "them" to be?<br>06: A. Big tobacco.<br>07: Q. And ultimately at the end of<br>08: the day, Altria bought -- a big tobacco<br>09: company bought a $12.8 billion stake in JUUL;<br>10: right? | objects to the article as hearsay and hearsay within hearsay.<br><br>Proposing Party's Position:<br>Same as above with respect to 1106, i.e.  Each of Defendants' objections lack merit. Further, the jury can decide whether there is any connection between the statement by Mr. Pritzker and Altria's investment. | |
| 14. | Page 00125:<br>13: A. I'm not entirely sure those<br>14: things are connected. | Objecting Party's Position:<br>Incomplete (the witness freezes and then completes his answer at 125:23-126:6)<br><br>Proposing Party's Position:<br>Same objection as immediately above.  In addition, the designation is not incomplete.  The entire answer is included. | **Overruled**, subject to the inclusion of 125:23-126:6 in this designation.  The witness completes his answer there following what appears to have been a technical glitch. |
| 15. | Page 00126:<br>07: MR. WEINKOWITZ:  Can we pull up<br>08:  K2A?  And we'll mark it as 11009. | Objecting Party's Position:<br>[FRE 401/402; FRE 403; MIL 8:  Evidence or argument of purported historical misconduct regarding combustible cigarettes is irrelevant to B.B.'s claims, which are based on conduct beginning in 2017, and are only intended to inflame and prejudice the jury. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403; Hearsay; hearsay within hearsay; Lacks Foundation/FRE 602.  Defendants | The admissibility of the exhibit is beyond the scope of the Special Master's appointment.  The parties have preserved objections based on the Court's motion in limine rulings. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|---------------------------------------|------------------------|--------|
|     |                                       | incorporate the same objections to Ex. 11006 made above.  This article is titled "The poor, the young, the black, and the stupid, Inside Big Tobacco's plans to kill a billion people," which is clearly prejudicial and invites the jury to infer that JUUL--like Big Tobacco--targeted certain populations in order to "kill" them.  The article is hearsay and it is being offered for the truth; counsel reads into the record substantive portions of the article related to the number of combustible cigarette smokers who are addicted, the age when smokers start smoking, and what tobacco litigation documents from decades ago allegedly "revealed," which is double hearsay. These statements have no probative value because they are all related to combustible cigarettes and conduct from decades before JUUL was launched; they are not related to JUUL products and have nothing to do with JLI's conduct let alone BB's claims, which arose in 2017.  There is no testimony which suggests that this article was circulated "for communicating the type of marketing activity that JLI had engaged it" and it would be misleading to imply that anything in this article informed JLI's marketing activities<br><br>Plaintiff's hearsay exception arguments are meritless.  The Pando/Ames article is not an adoptive admission because neither Mr. Asseily nor Mr. Pritzker express any opinions as to the veracity of the numerous statements made in this |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|--------------------------------------|----------------------|--------|
|     |                                      | 11-page article in Exhibit 11006. Plaintiff's argument is also laden with gross mischaracterizations of both Exhibit 11006 and the law of this Circuit.  It is incorrect that Mr. Asseily was a formal board member at the time of this email -- he was not.  See 26:25-27:6.  Plaintiff also mischaracterize Mr. Pritzker's "Well put" comment, which has nothing to do with the truthfulness of the statements in the Pando/Ames article and are instead a response to Mr. Asseily's own observations in Exhibit 11006 that JLI should not be associated with Big Tobacco.  It is also incorrect to say that Mr. Asseily "forwarded" the article.  Mr. Asseily does not actually forward the Pando article -- the article is not attached to the email nor is it part of the body of the email -- Plaintiff has introduced it as a separate exhibit.   Moreover, Plaintiff's cases are inapposite and misleading.  The law in the 9th Circuit is clear that merely forwarding an article is insufficient to constitute adoption -- Plaintiff's own cases make this very point. See, e.g., Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) ("Where, however, a party forwards a document while acting as a mere messenger, this does not constitute an adoption....it is well settled there must be evidence of adoption 'beyond mere possession'"); Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (adoptive admission where employee "copied the entire body of [the] internal |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | | memorandum into her e-mail" and prefaced it with a statement indicating that the memorandum was truthful). | |
| | | The article is also inadmissible for non-hearsay purposes, and it is clear that the statements read into the record on p. 126-131 from the article are being read for their truth and not for notice/knowledge/effect on listener as Plaintiff claims.  The article has nothing to do with JLI's marketing and thus does not indicate "defendants' knowledge that JLI's marketing was perceived as similar to Big Tobacco's."  It is also unnecessary, irrelevant and prejudicial to introduce the substance of the article if the purpose is to demonstrate "Defendants' knowledge of Big Tobacco's tactics."  In any event, Mr. Pritzker is not a defendant in B.B.'s case, and his state of mind and motive are not at issue here. | |
| | | Proposing Party's Position: This is the article that is attached to the email and is being discussed by the witness board of director member and another board member. See responses to objections to exhibit 1106 above.  This is clearly relevant to all claims and is also being offered for notice and knowledge of historical bad acts and notice and knowledge and state of mind, as opposed to for the truth of the matter asserted.  The article is being offered to show that JLI and its Board / Investors had notice and knowledge of the type of marketing | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|--------------------------------------|------------------------|--------|
|  |  | activity that Big Tobacco companies engaged in historically that attracted youth.  The fact that this article was circulated internally for precisely the purpose of communicating the type of marketing activity that JLI had engaged in (and should have avoided) demonstrates that it is being introduced not for the truth or the matter asserted in the article but to show belief, knowledge, intent and state of mind.  In other words, the article provides the context surrounding JLI's action or inaction and is thus not hearsay.<br><br>Plaintiff incorporates the same responses to Ex. 11006 made to their designations: 103:18-19; 105:14-23: and 106:8-107:7.  In addition, the Hearsay objection should be overruled.  First, the Ames article is admissible for the truth of the matters asserted in it as an adoptive admission. FRE Rule 801(d)(2)(B) permits a court to allow into evidence a statement as non-hearsay if "(A) the statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth." United States v. Hove, 52 F.3d 233, 236 (9th Cir. 1995).  Forwarding a newspaper article in with statements suggesting its contents are accurate is such manifestation of belief.  See, e.g., Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (email forwarding third party memo with inculpatory statement held admissible as non-hearsay adoptive |  |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|-------------------------------------|----------------------|--------|
|     |                                     | admission, even if forwarding author failed to review entire memo); Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) (use of third party report constitutes an adoption of the statements contained therein); Siebert v. Gene Sec. Network, Inc., 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (letter forwarding third party report adoptively admitted report's contents); see also Wagstaff v. Protective Apparel Corp., 760 F.2d 1074, --- (10th Cir. 1985) (forwarding of newspaper articles by Defendant constituted adoptive admission of third party statements in those articles); United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) (context and content of certain e-mails demonstrated Defendant had "manifested an adoption or belief" in the truth of the statements of other people as Defendants forwarded their e-mails); Forest Labs., Inc. v. Ivex Pharms., Inc., 237 F.R.D. 106, 2006 U.S. Dist. LEXIS 50752 (D. Del. 2006) (overruling plaintiffs' objection to exhibit, newspaper article, and accompanying testimony, on ground that witness, as executive of corporate defendant, had adoptively admitted contents of newspaper article).<br><br>Here, Mr. Asseily—a JLI board member whose statements are attributable to Defendant JLI, see Forest Labs, id.—manifested a belief that the article accurately described the tobacco industry's strategies of marketing to youth to create lifelong |  |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|-----|-----|-----|
| | | addicts and manipulating nicotine to make it more addictive. Mr. Asseily introduces the article with the statement "QED" (i.e., quod erat demonstrandum) a phrase used to assert that evidence proves the truth of one's argument, immediately followed by a statement that he feared being associated with "big tobacco's shitty practices"—an unequivocal reference to the practices set forth in the newspaper article. See Ex. 11006. He also admitted that those practices presented both "legal" and "ethical" questions, further evincing his belief the article's contents were true. Id. Mr. Pritzker—also a JLI board member and a Management Defendant—confirmed his belief that the article's description of tobacco industry marketing practices was accurate by responding, "Well put!" Having manifested a belief that the Ames article's characterization of the tobacco industry's marketing and product design practices was accurate, both Asseily and Pritzker adoptively admitted the facts set forth in the article, placing it outside the hearsay rule pursuant to FRE 801(d)(2)(B). Even if the Ames Article were not an adoptive admission, it would be admissible for non-hearsay purposes, such as establishing Defendants' knowledge that JLI's marketing was perceived as similar to Big Tobacco's, and establishing Defendants' knowledge of Big Tobacco's tactics. See Martin v. City of Indianapolis, 192 F. 3d 608, 613 (7th Cir. 1999) (newspaper | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|-----|--------------------------------------|----------------------|--------|
| | | article admissible for non-hearsay purpose of establishing public perception of artwork); Porter v. Lear, 751 Fed. Appx. 422, 433 (5th Cir. 2018) (out-of-court statements admissible for non-hearsay purpose of establishing knowledge of those statements); Rivera v. Inc. Vill. of Farmingdale, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (newspaper articles admissible to prove notice). It is also admissible as because Plaintiffs have alleged that Mr. Asseily was part of a faction of JLI's board of directors that tried unsuccessfully to stop JLI's marketing of JUUL to minors, and the Ames article provides context for Mr. Pritzker's state of mind and motive. See, e.g., United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991) (out of court statements admissible to establish effect on listener); Yarborough v. City of Warren, 383 F. Supp. 676, 682 (E.D. Mich. 1974) (newspaper article admissible to provide "historical context"); see also In re Korean Ramen Antitrust Litig., 281 F. Supp. 3d 892, 936 (N.D. Cal. 2017) (newspaper article admissible to prove acts in furtherance of conspiracy). | |
| 16. | Page 00126: 16: Mr. Asseily, this is the article that you 17: sent to Mr. Pritzker; correct? 18: A. Yes. 19: Q. And the title of that article | Objecting Party's Position: [Same as above, this testimony goes beyond background - FRE 401/402; FRE 403; MIL 8.] Misstates Prior Testimony (misleading) (129:8-10); Vague and ambiguous (form) (129:8-10); Calls For Speculation (form) (129:8-10). | The permissibility of this line of questioning rests on the admissibility of the underlying exhibit, which is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 20:  is, "The poor, the young, the black and the 21:  stupid," Inside Big Tobacco's plans to kill a 22:  billion people. 23:  Do you see that? 24:  A. Yes.  Page 00128: 06: Understood.  So like can we now turn to the 07: next page, actually page 3 of 11?  And I'd 08:  like to go to the bottom paragraph.  And it 09: says:  Up to 90 percent of smokers are 10: addicted, meaning they have no choice.  By 11: comparison, only 3 percent of those who drink 12:  alcohol are addicted. 13: Did I read that correctly? 14: A. Yes.  Page 00129: 02: Q.    Okay.  And then if you go to 03: the third sentence in there it says:  Most 04: addicted smokers started smoking between the 05:  ages of 13 and 15. 06: Did I read that correctly? 07: A. Yes. 08: Q. And wouldn't that be a good | Misstates Prior Testimony (misleading);  Vague and ambiguous (form); Calls For Speculation (form).  FRE 401/402; FRE 403; Hearsay; hearsay within hearsay; Lacks Foundation/FRE 602.  Same as above. Defendants also incorporate the same objections to Ex. 11006 made above.  Proposing Party's Position: As to Exhibit 11009, same responses as to 126:7-126:8.  As to Exhibit 11009, same responses as to 126:7-126:8.  There is no prior testimony on the issue that is misstated, and the question is not vague or call for speculation because the witness answers "I don't think anyone could disagree with that, no." | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 09: reason to make absolutely certain that JUUL 10: advertising didn't appeal to teenagers?<br><br>Page 00129:<br>13: A. I don't think anyone could 14: disagree with that, no.<br><br>Page 00129:<br>15: Q. (BY MR. WEINKOWITZ) Could you 16: go -- let's go back up to the paragraph above 17: where it starts with "tobacco documents." 18: It's "tobacco documents 19: reveal." 20: Do you see where I'm at? It 21: reads: Tobacco documents reveal that 22: companies focused their efforts on getting 23: "presmokers" under the age of 18 addicted, 24: because "presmokers" are far more likely to 25: become addicted for life to nicotine than<br><br>Page 00130:<br>01: people who start smoking later in life. 02: Did I read that correctly? | | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 03: A. Yes.<br>04: Q. Next sentence: Tobacco<br>05: documents reveal that this target demographic<br>06: is called "learners," "replacement smokers,"<br>07: "starters," and "tomorrow's cigarette<br>08: business."<br>09: Did I read that correctly?<br>10: A. Yes.<br>11: Q. And this was in an article that<br>12: you sent to Nick Pritzker; correct?<br>13: A. Correct. | | |
| 17. | Page 00158:<br>04: Q. And at some point in time<br>05: Mr. Monsees was removed from his CEO<br>06: position; correct? In 2015.<br>07: A. Correct. | Objecting Party's Position:<br>FRE 401/402; FRE 403 (misleading to characterize as being removed; Mr. Monsees stepped down)<br><br>Proposing Party's Position:<br>This fact is relevant to our claims as Mr. Monsees was CEO when several acts of negligence were committed by JLI related to marketing, warning, and the development and design of the product. When Mr. Monsees was removed from his position, a committee of board members was put in place to essentially run the company. This is also relevant to the motivations of the company. | **Overruled**. The witness testifies that the change in leadership arose as a result with the board's desire to oust Mr. Monsees. The board's frustration with company leadership during the relevant period has sufficient relevance to permit this testimony. |
| 18. | Page 00161:<br>05: Q. And at some point in time an | Objecting Party's Position:<br>Vague and ambiguous (form, "how things were going at the company and with management"); Assumes | **Overruled**. The question is not impermissibly vague or ambiguous and does not assume facts, |

| No. | Plaintiff's Affirmative Designations | Parties' Positions[1] | Ruling |
|---|---|---|---|
| | 06: executive committee was set up; right?<br>07: A. Yes.<br>08: Q. And the members of the<br>09: executive committee were Mr. Pritzker,<br>10: Mr. Huh, and Mr. Valani; right?<br>11: A. Yes.<br>12: Q. And was -- was the executive<br>13: committee formed as a result of the board's<br>14: frustration with how things were going at the<br>15: company and with management?<br><br>Page 00161:<br>18: A. The formation of the executive<br>19: committee was the result of wanting James<br>20: Monsees out of the CEO seat and having no one<br>21: from inside the company or outside the<br>22: company worthy enough of taking over that<br>23: seat, and so therefore having to have some<br>24: kind of interim mechanism by which the<br>25: company could be operated. | facts not in evidence (form) (161:12-15, re "the board's frustration" which has not been established); FRE 401/402; FRE 403<br><br><u>Proposing Party's Position:</u><br>same as above and is not vague and does not assume facts in evidence because it is simply a question about the witness' knowledge about the reason for the formation of the executive committee | |

LARSON
LOS ANGELES

**b.  Defendants' Counter-Designations**

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00062:<br>09: Q. (BY MR. WEINKOWITZ)  Okay. And<br>10: who was -- who raised those concerns?<br>11: A. Initially Mr. Pritzker raised<br>12: them, in a -- somewhat vociferously in order<br>13: to ensure that the company was -- and I can't<br>14:  recall exactly which posters we were<br>15:  reviewing at the time that this concern was<br>16: raised, but when we did have that first<br>17:  review of the potential marketing of the JUUL<br>18: launch, there was a fierce discussion that<br>19: the company should steer very clear of youth<br>20: and focus on models, in any kind of campaign,<br>21: that were adults and --<br>22: Q. Did --<br>23:  A. -- obviously adults.<br>24: Q. Got it.<br>25:  And this was a discussion<br><br>Page 00063: | <u>Objecting Party's Position:</u><br>The answer starting at 62:11 is non-responsive after the "Initially Mr. Pritzker raised them" and should be stricken through line 24.<br><br><u>Proposing Party's Position:</u><br>The answer is responsive.  Counsel asked "who raised those concerns" and the witness explained that "Initially, Mr. Pritzker did..." and then goes on to explain the "fierce discussion" that took place | **Sustained** (62:12-21): The non-responsive portion of the witness's response after "Initially Mr. Pritzker raised them" is stricken. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|--------------------------------|--------------------|--------|
| | 01: between the board members before the launch<br>02: of JUUL in 2015?<br>03: A. Correct.<br>04: Q. So why at that point in time,<br>05: when you're having this discussion about the<br>06: youthfulness of the models, didn't anybody<br>07: hit the pause button and say, let's go back,<br>08: redesign the campaign, and take the models<br>09: out, even maybe delay launch? Why didn't<br>10: anybody do that? | | |
| 2. | Page 00070:<br>17: Q. All right. So at the time, did<br>18: you have any concerns that the ad might<br>19: actually appeal to either teenagers or<br>20: nonsmokers?<br><br>Page 00070:<br>24: A. I didn't. | <u>Objecting Party's Position:</u><br>Compound question, vague, confusing.<br><br><u>Proposing Party's Position:</u><br>Not vague or compound and witness is not confused by the question, particularly in the context of earlier questioning re appeal to youth (e.g., on page 58-59, 62-64) | **Overruled**. The question is not impermissibly compound, and the witness's response does not reflect confusion. |
| 3. | Page 00108:<br>25: Q. So why the comparison to big<br><br>Page 00109:<br>01: tobacco in the context of that campaign?<br><br>Page 00109: | <u>Objecting Party's Position:</u><br>This testimony is not a proper counter designation for completeness and is outside the scope of plaintiff's affirmative designation (611); the answer designated is also non-responsive to the question, an improper narrative response, and 403. | **Overruled**. The testimony is within the scope of the affirmative designations and is responsive to the questions posed. |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: A. I think you might be<br>05: misinterpreting what I meant.<br>06: I wasn't suggesting that<br>07: campaign was like big tobacco. I was<br>08: reacting to the -- I guess the Pando daily<br>09: article, which was giving us some feedback,<br>10: the market giving feedback about how our<br>11: products might be interpreted or might be<br>12: received if we didn't make the benefits<br>13: clearer. We would get lumped in with big<br>14: tobacco, even though we were not -- in fact,<br>15: we were the opposite of big tobacco. We were<br>16: trying to get people off carcinogenic smoking<br>17: cigarettes. And –<br><br>Page 00109:<br>21: A. That was really it. We were<br>22: trying to -- we were creating a product, a<br>23: smoking cessation device for adult smokers.<br>24: In other words, we were trying to get people | Proposing Party's Position:<br>The counter provides context and explanation related to the testimony designated at 106:8-107:7. Counsel asks the witness why he wrote a particular statement in an email, and the witness explains what he meant in his own words. The answer is directly responsive to Counsel's question. | |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 25: to stop using cigarettes that were very bad (continued page 00110)<br><br>Page 00110:<br>01: for them. And by giving them an alternative<br>02: that would lure them off cigarettes and that<br>03: would be less harmful to them. And the<br>04: reaction of the market, clearly through this<br>05: article, was, you know, it -- you could argue<br>06: that it was sensational, potentially<br>07: sensationalist, but the fact is they were --<br>08: presumably this article and others, were<br>09: saying, oh, look, here's another -- here's<br>10: just a different way to get people hooked.<br>11: And that was just not the case.<br>12: The reality is that the<br>13: founders had setup this company, the<br>14: investors who had backed them, the board<br>15: members like myself and others who had gotten | | |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: to support them, were doing it because we<br>17: felt that this was a very earnest -- there<br>18: was a very earnest goal, which is to create<br>19: an alternative for adult smokers.<br>20: And it was disappointing to see<br>21: that we hadn't -- we hadn't succeeded in<br>22: convincing this particular writer that that<br>23: was our goal.  What the -- what that<br>24:  particular writer's intentions were in<br>25: writing the article I don't know, but I think (continued page 00111)<br><br>Page 00111:<br>01: that's what I meant in this reaction in this<br>02: e-mail. | | |
| 4. | Page 00181<br>07: Q. When you joined the board,<br>08: either as an observer or as a formal board<br>09: member, did you ever hear anybody on the<br>10: board talk about an intention to target<br>11:  underaged users with the JUUL device?<br><br>Page 00181: | <u>Objecting Party's Position:</u><br>This testimony is not a proper counter designation for completeness as it outside the scope of plaintiff's affirmative designations (611).  This testimony is from the direct exam by defense counsel and is defense counsel's affirmative designations of this witness which should be played in defendants' case.<br><br><u>Proposing Party's Position:</u> | **Overruled**.  This testimony is sufficiently within the scope of the affirmative designations that go to the issue of youth targeting. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: A. No, never.<br><br>Page 00182:<br>06: In all your interactions about<br>07: the board, whether you were a formal board<br>08: member or whether you were informally<br>09: interacting with the board, what was your<br>10: understanding of the board's intentions in<br>11: terms of who they wanted their core customer<br>12: to be?<br><br>Page 00182:<br>15: A. Adult smokers. | This testimony is a proper counter to numerous affirmative designations by Plaintiff regarding whether JLI targeted underage users (e.g., 58:19-59:1, 59:4, asking about hip young people in JUUL video, 62:1-4, 62:7-8, 88:13-16, 88:18, asking about youthfulness of models, 114:2-11, 114:15-16, asking about young people in advertising, 129:15-130:10, asking about tobacco industry targeting of individuals under 18). Judge Orrick has ruled that defendants designations will be played in plaintiff's case-in-chief where, as here, they are shorter than plaintiff's affirmative designations. See May 9, 2022 Civil Minutes. Further, it would be confusing and inefficient to play testimony that responds and is related to Plaintiff's designations outside of Plaintiff's case. | |
| 5. | Page 00182:<br>16: Q. (BY MR. GUZMAN) Now, in the<br>17: run-up to launch, you had some involvement;<br>18: correct?<br>19: A. Yes.<br>20: Q. And you reviewed some of the<br>21: proposed marketing collateral; is that right?<br>22: A. I believe so.<br>23: Q. What was the stated intention<br>24: in terms of who the marketing and advertising | Objecting Party's Position:<br>same as above and leading at 182:16-22<br><br>Proposing Party's Position:<br>Same as above; question is necessary to develop the witness's testimony and is an undisputed preliminary matter | **Overruled**. The questioning at 182:16-22 permissible to develop the questioning based on the witness's earlier testimony. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25: that was being planned would be directed<br><br>Page 00183:<br>01: towards?<br><br>Page 00183:<br>04: A. Adults.<br>05: Q. (BY MR. GUZMAN)  Right.  Did<br>06:  you ever hear anybody suggest otherwise,<br>07: whether in management or on the board?<br><br>Page 00183:<br>11: A. No.<br>12: Q.  (BY MR. GUZMAN)  Now, you've<br>13: testified about the fact that you had certain<br>14: disagreements from a professional level with<br>15: the proposed marketing and advertising, but<br>16: were any of those disagreements or<br>17: reservations about the fact that you thought<br>18:  that the company was targeting underaged<br>19:  users with the proposed campaign? | | |
| 6. | Page 00183:<br>22:  A. No.  My -- my concerns were | <u>Objecting Party's Position</u>:<br>same as above and the answer starting at 183:22 after "No" is non-responsive and beyond the scope of | **Overruled**.  The witness's answer is responsive to the question. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 23: that I just -- I didn't -- I just didn't<br>24: think it was a very effective campaign. I<br>25: didn't think it was a very deep campaign in<br><br>Page 00184:<br>01: terms of getting across the benefits of the<br>02: product for the target audience, which is<br>03: adult smokers. | the question asked and should be stricken.<br><br>Proposing Party's Position:<br>Same as above; the answer in its entirety is responsive to the question. The question asks whether certain disagreements were related to concerns that the company was targeting underage use, and the witness explains what his concerns were | |
| 7. | Page 00189<br>10: Q. (BY MR. GUZMAN) Mr. Asseily,<br>11: do you recall being questioned about this<br>12: particular exhibit, 11002?<br>13: A. Yes.<br>14: Q. This is prelaunch, May of 2015.<br>15: In a way, does this reflect the<br>16: board trying to control the advertising and<br>17: marketing campaign?<br><br>Page 00189:<br>20: A. No. I think this is members of<br>21: the board having a discussion about how<br>22: things could be better. | Objecting Party's Position:<br>This testimony is not a proper counter designation as it beyond the scope of the prior designations (611), and is from defense counsel's direct examination of this witness and should be played in Defendants' case. This testimony is also irrelevant 401, 402, and 403.<br><br>Proposing Party's Position:<br>This testimony is a proper counter to Plaintiff's designation regarding the same exhibit and questions asking what the witness, as a board member, did or did not do with respect to advertising and marketing (44:4-10, 45:17-20, 46:5-15, 56:4-6, 56:20-57:7, 57:10-23, 58:19-59:1, 59:4, 62:1-4, 62:7-8, 69:25-71:3, 71:7-21). Judge Orrick has ruled that defendants designations will be played in plaintiff's case-in-chief where, as here, they are shorter than plaintiff's affirmative designations. See May 9, 2022 Civil Minutes. Further, it would be confusing and | **Overruled**. This testimony is sufficiently within the scope of the affirmative designations, which include questioning about the same exhibit. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 23: Q. (BY MR. GUZMAN)  What were the<br>24: suggestions, just in an overview fashion,<br>25:  that you were making to the other members of<br>(continued page 00190)<br><br>Page 00190:<br>01:  the board? | inefficient to play testimony that responds and is related to Plaintiff's designations outside of Plaintiff's case. | |
| 8. | Page 00190:<br>09:  A. So the general gist is, to zero<br>10:  in much more on trying to present JUUL as a<br>11: very clear alternative to smoking and to<br>12:  tobacco, and to really distance ourselves<br>13:  from tobacco companies and the practices they<br>14: had used, and to just avoid any risk of being<br>15: mixed up with companies that we felt were<br>16: antithetical to our mission.<br>17: Ultimately I was maybe just<br>18:  providing some examples of what to do. | <u>Objecting Party's Position</u>: same as above.  The question simply asks the witness for a narrative response about "how things could be better" which is irrelevant and confusing 402 and 403.<br><br><u>Proposing Party's Position</u>: Same as above; the question logically follows the witness' previous answer about the nature of the discussions that took place at the time of the email in Exhibit 11002, which Plaintiff also asked about. The question does not ask "how things could be better" and the answer explains what the witness meant by the statements he made in Exhibit 11002 | **Overruled**.  The question posed is not as characterized by the objection. |

c.  **Plaintiff's Counter-Counter Designations**

| No. | Plaintiff's Counter-Counter Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00060:<br>19: Q. It was one of the concerns that<br>20:  the -- that there were models used in the<br>21:  advertising?  That appeared youthful?<br><br>Page 00060:<br>24: A. That was a concern raised by<br>25: the board and discussed between the board and<br><br>Page 00061:<br>01: myself on one or more occasions. | Objecting Party's Position:<br>Vague and ambiguous ("models used in the advertising," "appeared youthful," "one of the concerns"); Compound (unclear if the concern is that there were models or if it was because they "appeared youthful"); FRE 401/402, FRE 403 (Cumulative, this is already discussed in Pls affirmatives at 62:1-4, 62:7-8)<br><br>Proposing Party's Position:<br>The witness answered the question by affirmatively stating that the youthfulness of the models in the ads was raised with the board so he clearly understood the question. This testimony is not cumulative and is necessary for completeness based on Defendants' counters at 60:10-60:18.  If Defendants withdraw their counter, plaintiff will withdraw her counter-counters. | **Overruled**. The question is not vague or ambiguous in the context of the email that the witness has been asked about.  It is sufficiently clear that the question is directed toward youthfulness, and the witness's response demonstrates this understanding. |

## II.  CHRISTOPHER OLIN

a.  **Plaintiff's Affirmative Designations**

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00021:<br>16: 18502.  There we go. | Objecting Party's Position:<br>Hearsay (Rule 802) (21:23-22:8);Science News article is hearsay within hearsay (article not included so no way for jury to see what it said, weigh credibility etc.; Reagan and Olin's comments hearsay, Pritzker not speaking in his capacity as BOD member, party opponent doesn't apply; | **Overruled.**  References to the article in the email chain are not offered for their truth but for the effect  on the listener.  The statements at issue in the email chain are also party admissions. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | comments related to potential health risks of ENDS generally does not put Pritzker on notice of "risks" relevant to this case; FRE 402/403; FRE 403 (vague references to "health concerns" related to e-cigarettes generally, not JUUL specifically, are irrelevant and unduly prejudicial; actual of text of article not included in exhibit; personal opinions re ENDS irrelevant, unduly prejudicial and confusing)<br><br>Proposing Party's Position:<br>H - The email (Ex. 18502) is from Witness's wife to him dated 1/11/2015 forwarding a published article on health risks with e-cigs. The article is by Science News (Exception 803 (8) Public Record). Significantly, Olin, who is a principal for Tao, the 2nd largest investor in JUUL, forwards the article to his father-in-law, Nick Pritzker, who served on JUUL's BOD. Pritzker's comments are party admissions re the health risks of e-cigarettes. This document is also not hearsay because it provides notice to JLI of the reported health risks with e-cigarettes, and Regan and Chris Olin's comments are for the effect on listener, Nick Pritzker. Further, Prtizker's comments show his (thus JLI's) state of mind (""There's no doubt in my mind that there will be valid health concerns around the product").<br><br>Throughout, Pritzker is a leader of JLI speaking on JLI's products' comments. His comments are |        |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | party admissions, regardless of who he's speaking to.<br><br>402/403 - highly relevant and not unduly prejudicial that Prtizker, one of the leaders of the company, a director who controlled two of seven seats on the Board, and one of the largest investors in JLI, had no doubt in his mind that there would be valid health concerns with JUUL in January 2015, five months before the product even launched. His knowledge of health risks is imputed to JLI. | |
| 2. | Page 00021:<br>19: BY MR. WATTS:<br>20: Q  You are married to Regan Pritzker; is<br>21:  that right?<br>22: A  Yes.<br>23: Q  And she writes you an e-mail on January<br>24:  the 11th saying: "Maybe you saw this already,"<br>25:  and it's a Science News article about health risks<br>(continued page 00022)<br><br>Page 00022:<br>01:  of e-cigarettes emerging.<br>02:  Do you see that?<br>03: A  Yes.<br>04: Q  And you respond: "Scary." And then<br>05:  you forward it to Nicholas Pritzker; is that | <u>Objecting Party's Position</u>:<br>Hearsay (Rule 802) (21:23-22:8);Science News article is hearsay within hearsay (article not included so no way for jury to see what it said, weigh credibility etc.; Reagan and Olin's comments hearsay, Pritzker not speaking in his capacity as BOD member, party opponent doesn't apply; comments related to potential health risks of ENDS generally does not put Pritzker on notice of "risks" relevant to this case; FRE 402/403; FRE 403 (vague references to "health concerns" related to e-cigarettes generally, not JUUL specifically, are irrelevant and unduly prejudicial; actual of text of article not included in exhibit; personal opinions re ENDS irrelevant, unduly prejudicial and confusing)<br><br>Calls for Speculation (form); Calls for a legal conclusion (form); Lacks Foundation/FRE 602: Witness and Pritzker are not attorneys and have no foundation to speculate on what strict liability is; counsel simply reads from | **Overruled.** References to the article in the email chain are not offered for their truth but for the effect  on the listener. The statements at issue in the email chain are also party admissions. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 06:right?<br>07: A I don't recall this exchange, but I -- I<br>08: see the e-mail here.<br>09: Q And then Nicholas Pritzker -- that's<br>10: your father-in-law, right?<br>11: A Yes.<br>12: Q He says: "There's no doubt in my mind<br>13: that there will be valid health concerns around<br>14: the product and potentially strict liability." | email and has witness confirm, no foundation re statements of others<br><br>Designation Incomplete; Attorney commentary/exchange (not testimony) (22:12-14)<br>Proposing Party's Position:<br>H (21:23-22:8) - The email (Ex. 18502) is from Witness's wife to him dated 1/11/2015 forwarding a published article on health risks with e-cigs. The article is by Science News (Exception 803 (8) Public Record). Significantly, Olin, who is a principal for Tao, the 2nd largest investor in JUUL, forwards the article to his father-in-law, Nick Pritzker, who served on JUUL's BOD. Pritzker's comments are party admissions re the health risks of e-cigarettes. This document is also not hearsay because it provides notice to JLI of the reported health risks with e-cigarettes, putting JUUL on notice. Regan and Chris Olin's comments are for the effect on listener, Nick Pritzker. Further, Prtizker's comments show his (thus JLI's) state of mind ("""There's no doubt in my mind that there will be valid health concerns around the product")<br>402/403 - highly relevant and not unduly prejudicial that Prtizker, one of the leaders of the company, a director who controlled two of seven seats on the Board, and one of the largest investors in JLI, had no doubt in his mind that there would be valid health concerns with JUUL in January 2015, five months before the product even | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | launched. His knowledge of health risks is imputed to JLI.<br>CS; LC; LF/FRE 602 - There is not a lack of foundation or speculation about Olin's testimony He simply responded to subject matter of the Science News article as "Scary". The statement by Nick Pritzker that Pltf's Counsel quoted and read into the record from the email that Pritzker had no doubt there will be health concerns about JUUL and potential strict liability is not speculation, but instead Pritzker's personal opinion. This is an admission made on behalf of a party, JLI, since Pritzker served on JLI's BOD, that JLI had notice of the health concerns with vaping products and that JLI had a duty to do reasonable investigation of the safety of its product prior to marketing and to adequately warn consumers of risks.<br>AC (22:12-14) is not applicable b/c Pltf's Counsel simply quoted a statement in the email. There is no commentary by Counsel. The question about that statement is asked at 23:9-10 and the answer given at 23:12, which is testimony designated by Plf.<br>LC: There is no legal conclusion sought or attempted to be given. The last question is Pltf's affirmative designation is 22:12-14 where Pltf's Counsel quote's Pritzker's statement related to "potentially strict liability." Followed by asking Olin is he knew what strick liability was, to which he answered "no." The witness was not asked to explain | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | strict liability, which would seek a legal conclusion. | |
| 3. | Page 00023:<br>09: Q  And my question is, when you received<br>10:  this, did you know what strict liability was? | Objecting Party's Position:<br>Calls for Speculation (form); Calls for a legal conclusion (form); Lacks Foundation/FRE 602: Witness is not an attorney and has no foundation to speculate on what strict liability is.<br><br>Proposing Party's Position:<br>These objections do not apply. The witness isn't asked for a legal opinion, which would be the case if he were asked "Tell what  Strict Liability means."  Instead, he was simply asked whether he knew what SL was?  And, he answered w/o hesitation "No, I'm not an attorney." | **Overruled.**  Does not call for a legal conclusion, but rather goes to the witness's understanding of the content of an email he received. |
| 4. | Page 00023:<br>12:  THE WITNESS: No, I'm not an attorney. | Objecting Party's Position:<br>Calls for Speculation (form); Calls for a legal conclusion (form); Lacks Foundation/FRE 602: Witness is not an attorney and has no foundation to speculate on what strict liability is.<br><br>Proposing Party's Position:<br>These objections do not apply. The witness isn't asked for a legal opinion, which would be the case if he were asked "Tell what  Strict Liability means."  Instead, he was simply asked whether he knew what SL was?  And, he answered w/o hesitation "No, I'm not an attorney." | **Overruled.**  Does not call for a legal conclusion, but rather goes to the witness's understanding of the content of an email he received. |
| 5. | Page 00024:<br>02: Q  Okay.  Mr. Olin, at the time that you | Objecting Party's Position:<br>Hearsay (Rule 802) (21:23-22:8);Science News article is hearsay within hearsay (article not included so no way for jury to see what it said, weigh credibility etc.; | **Overruled.**  Does not call for a legal conclusion, but rather goes to the witness's understanding of |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 03: received this e-mail from Nicholas Pritzker saying<br>04: that there's no doubt in his mind that there would<br>05: be valid health concerns around the product and<br>06: potentially strict liability, you were at Tao<br>07: Capital Partners as a principal in the family<br>08: office that had an investment in the company that<br>09: made JUUL, right? | Reagan and Olin's comments hearsay, Pritzker not speaking in his capacity as BOD member, party opponent doesn't apply; comments related to potential health risks of ENDS generally does not put Pritzker on notice of "risks" relevant to this case; FRE 402/403; FRE 403 (vague references to "health concerns" related to e-cigarettes generally, not JUUL specifically, are irrelevant and unduly prejudicial; actual of text of article not included in exhibit; personal opinions re ENDS irrelevant, unduly prejudicial and confusing)<br><br><u>Proposing Party's Position</u>:<br>Re Prtizker's comment: see hearsay response above. Pltf's Counsel asks a single question - - whether at the time he received the email from his wife (Ex. 18502) where he was a principal at Tao. He stated was. The fact that Counsel's statement also described Tao as having an investment in JUUL as of that time is not hearsay. Previously Olin was only asked whether he participated in Tao's decision to invest in JUUL (19:17-20:3). He never testified that he was unaware that Tao invested in JUUL. And, in Counsel's question on p. 24, Olin doesn't dispute the description that Tao had invested in JUUL, as he readily responded "Yes." (24: 11). There is no out of court statement offered here; instead, the witness acknowledged in his affirmative answer that he has knowledge of Tao's investment. | the content of an email he received. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | 402/403 - highly relevant and not unduly prejudicial that Prtizker, one of the leaders of the company, a director who controlled two of seven seats on the Board, and one of the largest investors in JLI, had no doubt in his mind that there would be valid health concerns with JUUL in January 2015, five months before the product even launched. His knowledge of health risks is imputed to JLI. | |
| 6. | Page 00024<br>11: THE WITNESS: Yes.<br>12: BY MR. WATTS:<br>13: Q Now, at the same time, were you serving<br>14: as the chairman of the Center for Environmental<br>15: Health?<br>16: A Yes, I believe so, in 2015.<br>17: Q Yes, sir. Now, Mr. Olin, if you could<br>18: in your own words, tell the jury what the Center<br>19: for Environmental Health does.<br>20: A It's a nonprofit organization in Oakland<br>21: that focuses on keeping the environment and<br>22: consumer products healthy. | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802); FRE 401/402; FRE 403 (Olin's involvement on CEH board is irrelevant and bound to confuse the jury, board membership doesn't make him an expert/knowledgeable re the environment, consumer products, or risks of JUUL generally)<br><br><u>Proposing Party's Position:</u><br>Re Prtizker's comment: see hearsay response above. Pltf's Counsel asks a single question - - whether at the time he received the email from his wife (Ex. 18502) where he was a principal at Tao. He stated was. The fact that Counsel's statement also described Tao as having an investment in JUUL as of that time is not hearsay. Previously Olin was only asked whether he participated in Tao's decision to invest in JUUL (19:17-20:3). He never testified that he was unaware that Tao invested in JUUL. And, in Counsel's question on p. 24, Olin doesn't dispute the description that Tao had invested in JUUL, as he readily responded "Yes." (24: 11). There is no out of court statement | **Overruled.** This witness's involvement on the CEH Board provides relevant context. It is not unduly prejudicial or confusing for the jury. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | offered here; instead, the witness acknowledged in his affirmative answer that he has knowledge of Tao's investment.<br><br>402/403 - highly relevant and not unduly prejudicial that Prtizker, one of the leaders of the company, a director who controlled two of seven seats on the Board, and one of the largest investors in JLI, had no doubt in his mind that there would be valid health concerns with JUUL in January 2015, five months before the product even launched. Hi sknowledge of health risks is imputed to JLI.<br><br>Olin's involvement in CEH is relevant to the source of his knowledge and concern on these issues and provides context for his discussions with Nick Pritzker that reference CEH. No risk of confusion. | |
| 7. | Page 00024:<br>3: Q  Okay.  And I want to take you to an<br>24:  e-mail that you wrote in May of 2015,<br>25:  Exhibit 18503. | Objecting Party's Position: Hearsay (Rule 802) (hearsay within hearsay, Olin statements hearsay and Olin is reporting hearsay from gala; Pritzker not acting in capacity as BOD; FRE 401/402; FRE 403 (statements re CEH actions unrelated to this litigation are irrelevant and unduly prejudicial/suggest actions against "manufs" generally included JLI and that JLI "skirted regulation", FRE 602/lacks foundation (states he wasn't involved in decision to bring suit, board not involved at that level)<br><br>Proposing Party's Position:<br>This email exchange between Olin and Pritzker is not hearsay. | **Sustained.**  This line of questioning is offered for the truth of the Olin statements and is therefore hearsay.  The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Olin authorized the initial email dated 5/15/2015 and Pritzker's response constitutes non-hearsay under 801 (d) (2) since at the time he was a BOD of JLI and therefore in a leadership position. He was directly involved in Board meetings making decisions relating to JUUL's marketing/advertising and launch. At times, he spoke on behalf of JLI, including in connection with the Altria/JLI transaction. See Pritzker Depo. No form objection was made.<br><br>602/foundation: Olin confirms he wrote this email, he does not testify beyond his own personal knowledge. | |
| 8. | Page 00026:<br>02: Q Okay. And part of what you told<br>03: Mr. Nicholas Pritzker is: "Last night I attended<br>04: the annual gala for the Center for Environmental<br>05: Health, the nonprofit of which I am the board<br>06: chair."<br>07: Do you see that?<br>08: A Yes. | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802) (hearsay within hearsay, Olin statements hearsay and Olin is reporting hearsay from gala; Pritzker not acting in capacity as BOD; FRE 401/402; FRE 403 (statements re CEH actions unrelated to this litigation are irrelevant and unduly prejudicial/suggest actions against "manufs" generally included JLI and that JLI "skirted regulation", FRE 602/lacks foundation (states he wasn't involved in decision to bring suit, board not involved at that level)<br><br><u>Proposing Party's Position:</u><br>Hearsay is not applicable for the reasons stated above. No form objection was made. Olin authored the email and wrote the statement read into the record by Pltf's Counsel. He readily | **Sustained.** This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | acknowledge the statement that was read from Ex. 18503. | |
| 9. | Page 00026:<br>16: Q And it says: "CEH announced its recent<br>17: actions against manufacturers of vaping products."<br>18: And -- and you tell them you can read some of the<br>19: details at the links below.<br>20: Were you involved in the decision by CEH<br>21: to announce actions against the manufacturers of<br>22: vaping products?<br>23: A No, the board is not involved in that<br>24: level of detail.<br>25: Q Okay. You wrote: "The key takeaways<br>(continued page 00027)<br><br>Page 00027:<br>01: are that nicotine is a chemical known to cause<br>02: reproductive health problems. It's on the Prop 65<br>03: list, and there are no Prop 65 warning labels on<br>04: nicotine being used in vaping products."<br>05: Did I read that correctly? | Objecting Party's Position:<br>Hearsay (Rule 802) (26:16-27:10) FRE 401/402: Testimony about Prop 65, which is a California law governing product labeling in California, is not relevant to B.B.'s claims and is bound to confuse the jury; FRE 602<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim. (26:25-27:10)]<br><br>Proposing Party's Position:<br>This is not hearsay; Olin is relaying information about his first-hand experience/knowledge to Pritzker regarding his attendance at the gala for the CEH. Olin's knowledge is further enhanced due to the Board position he held with CEH at the time. No form objection was made. This line of questioning amounts to Pltf's Counsel reading a statement written by Olin into the record as background to ask a question. Olin was then asked whether he was involved in the decision of CEH to bring an action against the manufacturers of vaping products, a topic within Olin's personal knowledge. He readily answered. The question at 26: 25-27: 10) is not hearsay; instead it involves a statement written by Olin in the email related to the Prop 65 warning label on | **Sustained.** This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 06: A  Yes.<br>07: Q  What is the Prop 65?<br>08: A  Proposition 65 is a California law that<br>09: lists chemicals that are believed by the State to<br>10: be harmful to health. | nicotine being used in vaping products. No risk of confusion.<br><br>FRE 401/402 and MIL #1: MIL 1 was "DENIED to the extent the Court has determined B.B.'s failure to warn claims are not preempted." This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain." | |
| 10. | Page 00027:<br>23: BY MR. WATTS:<br>24: Q  Okay.  You say: "So far manufacturers<br>25: have skirted the regulations, but given concerns<br>(continued page 00028)<br><br>Page 00028:<br>01: around marketing to teens and their use of vaping<br>02: products as well as new research about the dangers<br>03: of secondhand exposure to chemicals that result<br>04: from vaping, the health community is coming down<br>05: on this market."<br>06: Is that what you wrote? | Objecting Party's Position: Hearsay (Rule 802) (26:16-27:10) FRE 401/402: Testimony about Prop 65, which is a California law governing product labeling in California, is not relevant to B.B.'s claims and is bound to confuse the jury; FRE 602<br><br>Proposing Party's Position:<br>        The statement written by Olin is not hearsay, but instead is based on his personal opinion of what manufacturers do to get around the regulations and that the health community is coming down on the market.  His knowledge is based in part on his role on the Board with CEH. The statement falls under the exception, 803 (1), Present sense impression. No form objection was made. 402: same as above. 602: Olin confirmed he is the author of this email, and provided links to source materials on the CEH litigation, which | **Sustained.**  This line of questioning is offered for the truth of the Olin statements and is therefore hearsay.  The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 07:  A  Yeah, that's what it says. | provides further confirmation that he has adequate foundation for his comments.<br><br>403: nothing unfairly prejudicial about Prtizker, a leader in JLI, discussing on the eve of the launch of the product, that there are major concerns with vaping companies marketing to teens, underage use of vaping products, and health concerns with vaping. | |
| 11. | Page 00029:<br>08:  BY MR. WATTS:<br>09:  Q  Okay.  You write next:  "I have already<br>10:  expressed my concern about the nicotine products<br>11:  at Pax."<br>12:  Now, Pax was the successor entity to<br>13:  Ploom; is that right?<br>14:  A  I -- I didn't track the investment, so<br>15:  I'm really not sure. I know there were a number<br>16:  of name changes from the time of the initial<br>17:  investment. | Objecting Party's Position: Hearsay (Rule 802)<br><br>FRE 401/402:; FRE 403: personal opinions  about "nicotine products" at Pax have no probative value to B.B.'s claims or what minimal probative value it has is outweighed by risk of confusion<br><br>Proposing Party's Position: The statement written by Olin is not hearsay, but instead is an expression of his concern about the nicotine products.  "I have already expressed my concern about the nicotine products at Pax."  No form objection was made.  In his capacity of a principal with Tao, having invested in JUUL, Olin's personal concerns documented at the time (in 2015) about nicotine products that he conveys to Pritzker is relevant to the jury's assessment of notice and knowledge that Pritzker had re: concerns over nicotine products, which is imputed to JLI due to Pritzker's role with JLI.<br><br>FRE 401/402:  The testimony is relevant to issues of JLI's notice, | **Sustained.**  This line of questioning is offered for the truth of the Olin statements and is therefore hearsay.  The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | knowledge of the potential harms associated with JUUL products and forewarned them of the need to address safety issues and adequately disclose warnings about the addictiveness to nicotine and other harms associated with JUUL. Olin conveyed his concerns to Pritzker who at the time held a leadership position with JLI and had decision-making authority with respect to JUUL's marketing and entry into the market. Yet, JLI chose to this is evidence relevant to plaintiff's claim that JLI plan to penetrate the vaping market.<br><br>FRE 403: The questions are not overly prejudicial and are directly relevant to plaintiff's claims of negligent misrepresentation. | |
| 12. | Page 00031:<br>01: Q Okay. And you say: "Considering my<br>02: role as chair of the board of CEH, I want to<br>03: reiterate my personal discomfort about our<br>04: involvement with these products." | <u>Objecting Party's Position:</u> Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: witnesses personal feelings are not relevant to B.B.'s claims; are a waste of time; and are bound to confuse the jury<br><br><u>Proposing Party's Position:</u> The statement written by Olin is not hearsay, but instead is an expression of his concern about the nicotine products. "I have already expressed my concern about the nicotine products at Pax." No form objection was made. In his capacity of a principal with Tao, having invested in JUUL, Olin's personal concerns documented at the time | **Sustained.** This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | (in 2015) about nicotine products that he conveys to Pritzker is relevant to the jury's assessment of notice and knowledge that Pritzker had re: concerns over nicotine products, which is imputed to JLI due to Pritzker's role with JLI.<br><br>Olin documented his personal opinions based on his role as Board member with CEH telling Pritzker of his "personal discomfort" about their involvement with JUUL, a nicotine product. See Ex. 18503; Exception to hearsay rule 803(1) and 803(3);<br><br>FRE 401/402: The testimony is relevant to issues of JLI's notice, knowledge of the potential harms associated with JUUL products and forewarned them of the need to address safety issues and adequately disclose warnings about the addictiveness to nicotine and other harms associated with JUUL. Olin conveyed his concerns to Pritzker who at the time held a leadership position with JLI and had decision-making authority with respect to JUUL's marketing and entry into the market. Yet, JLI chose to this is evidence relevant to plaintiff's claim that JLI plan to penetrate the vaping market.<br>FRE 403: The questions are not overly prejudicial and are directly relevant to plaintiff's claims of negligent misrepresentation. no risk of confusion. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| 13. | Page 00031:<br>07: Why did you have a discomfort with<br>08: respect to the Pritzker family being involved in a<br>09: nicotine delivery product?<br>10: A I wasn't interested in -- in any company<br>11: that was a consumer company selling a product that<br>12: contained chemicals that people would ingest. | Objecting Party's Position: Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: witnesses personal feelings are not relevant to B.B.'s claims and are a waste of time, prejudicial, and bound to confuse the jury<br><br>Proposing Party's Position: The statement written by Olin is not hearsay, but instead is an expression of his concern about the nicotine products. "I have already expressed my concern about the nicotine products at Pax." No form objection was made. In his capacity of a principal with Tao, having invested in JUUL, Olin's personal concerns documented at the time (in 2015) about nicotine products that he conveys to Pritzker is relevant to the jury's assessment of notice and knowledge that Pritzker had re: concerns over nicotine products, which is imputed to JLI due to Pritzker's role with JLI.<br><br>Olin documented his personal opinions based on his role as Board member with CEH telling Pritzker of his "personal discomfort" about their involvement with JUUL, a nicotine product. See Ex. 18503; Exception to hearsay rule 803(1) and 803(3);<br><br>FRE 401/402: The testimony is relevant to issues of JLI's notice, knowledge of the potential harms associated with JUUL products and forewarned them of the need to address safety issues and | **Sustained.** This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | adequately disclose warnings about the addictiveness to nicotine and other harms associated with JUUL. Olin conveyed his concerns to Pritzker who at the time held a leadership position with JLI and had decision-making authority with respect to JUUL's marketing and entry into the market. Yet, JLI chose to this is evidence relevant to plaintiff's claim that JLI plan to penetrate the vaping market.<br><br>FRE 403: The questions are not overly prejudicial and are directly relevant to plaintiff's claims of negligent misrepresentation. no risk of confusion. |  |
| 14. | Page 00031:<br>18: Q And nicotine being one of those, right?<br>19: A Nicotine; the other fluids in the -- in<br>20: all of the vaping devices. Any -- any --<br>21: certainly anything on the Prop 65 list. | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: witnesses personal feelings are not relevant to B.B.'s claims and are a waste of time, prejudicial, and bound to confuse the jury<br><br>Proposing Party's Position:<br>The statement written by Olin is not hearsay, but instead is an expression of his concern about the nicotine products. "I have already expressed my concern about the nicotine products at Pax." No form objection was made. In his capacity of a principal with Tao, having invested in JUUL, Olin's personal concerns documented at the time (in 2015) about nicotine products that he conveys to Pritzker is relevant to the jury's assessment of notice and knowledge that Pritzker | **Sustained.** This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the content of the Olin statements. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | had re: concerns over nicotine products, which is imputed to JLI due to Pritzker's role with JLI.<br><br>Olin documented his personal opinions based on his role as Board member with CEH telling Pritzker of his "personal discomfort" about their involvement with JUUL, a nicotine product. See Ex. 18503; Exception to hearsay rule 803(1) and 803(3);<br><br>FRE 401/402: The testimony is relevant to issues of JLI's notice, knowledge of the potential harms associated with JUUL products and forewarned them of the need to address safety issues and adequately disclose warnings about the addictiveness to nicotine and other harms associated with JUUL. Olin conveyed his concerns to Pritzker who at the time held a leadership position with JLI and had decision-making authority with respect to JUUL's marketing and entry into the market. Yet, JLI chose to this is evidence relevant to plaintiff's claim that JLI plan to penetrate the vaping market.<br><br>FRE 401/402; FRE 403: witnesses personal feelings are not relevant to B.B.'s claims and are a waste of time, prejudicial, and bound to confuse the jury | |
| 15. | Page 00032:<br>07: Q Okay. And you write: "It would also be 08: prudent for the company to have a plan for or | Objecting Party's Position: Hearsay (Rule 802); FRE 401/402; FRE 403: witnesses personal feelings are not relevant to B.B.'s claims and are a waste of time, prejudicial, and bound to confuse the jury<br><br>Proposing Party's Position: | Sustained. This line of questioning is offered for the truth of the Olin statements and is therefore hearsay. The Pritzker response is a party admission, but the focus of the designations is the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------| 
| | 09:  ideally support proactive labeling or regulations<br>10:  that minimize the public health risks from the use<br>11:  of the nicotine products."  Is that right?<br>12:  A  Yes. | No objection was made as to form. Olin authored the statement in the email "It would also be prudent for the company to have a plan for or ideally support proactive labeling or regulations that minimize the public health risks from the use of nicotine products."  This is Olin's personal opinion documented at the time of the event in 2015. Exception 803 (1) and/or (3) apply. Relevant and not undluy prejudcial because it put Nick Pritzker, a leader at JLI, on notice that some disclosure may be warranted or needed by consumers | content of the Olin statements. |
| 16. | Page 00032:<br>21: Q  Now, Mr. Olin, if we go back up to the<br>22:  top, you wrote this e-mail on May the 29th of<br>23:  2015; is that right?<br>24:  A  Yes, it looks like that's right.<br>25:  Q  And your father-in-law writes you back (continued page 00033)<br><br>Page 00033:<br>01:  on the same day and says he's forwarded your<br>02:  e-mail to Hank.  Is that Mr. Handelsman?<br>03:  A  I assume that's who he's referring to. | Objecting Party's Position:<br>Lacks Foundation/FRE 602 (32:25-33:3): witness lacks foundation to testify about what Mr. Pritzker meant<br><br>Proposing Party's Position:<br>Witness testified he "assumes" that "Hank" who Pritzker refers to in the email is Mr. Handelsman. and explained the basis for his statement was that he knew Pritzker worked with Hank Handelsman.  No form objection was made. | **Sustained.** Lack of foundation for witness to know who Pritzker is referring to. |
| 17. | Page 00039:<br>19:  Now, the next part of this string is<br>20:  14030.  If we could go to page 2, I'll show you | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: the personal feelings of the ▮▮▮▮▮ ▮▮▮▮ and witness have no probative value to B.B.'s claims and are substantially outweighed by undue prejudice and confusion | **Overruled.** This exhibit and line of questioning are not hearsay because they go to notice, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 21: the -- down at the bottom, that's your attended<br>22: the board gala e-mail, right?<br>23: A Yes. | [MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Beyond background]<br><br>Proposing Party's Position:<br>H: Ex. 14030 is not hearsay; no form objection was made. Olin authored the email at issue, where Olin questions ▮▮▮▮▮ ▮ who he identified. He asks her "What age do you think this marketing targets?" and attached a JUUL Instagram Link. (43:18-44:4; and 44:11-15). She responded "That's disgusting." (44:2-4). The document attached is JLI's own advertisements and not hearsay. Regardless in this line of questioning it is admitted not for truth of the matter but for notice to JUUL, which is transmitted to Pritzker in the email, who at the time served on JLI's BOD and participate in marketing and sales decisions pertaining to JUUL.<br><br>FRE 401/402: This testimony is directly relevant to plaintiff's claims based on negligent and intentional misrepresentation. Pritzker gained important, first-hand reaction from ▮▮▮▮▮ ▮▮▮▮▮ of the negative reaction to JUUL's marketing. There will be testimony that at this time period, the marketing was directed at a youthful crowd. The evidence supports establishing JLI's knowledge/notice of the problematic issues with their marketing campaign.<br><br>FRE 403: Testimony about the perceived impact/messaging of JUUL's Instagram marketing | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | (which necessarily and knowingly includes a younger age demographic) is not prejudicial but instead has a direct relationship to plaintiff's negligent/misrepresentation claims and establishing JLI's notice/knowledge.<br><br>MIL#2: MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 18. | Page 00043:<br>18: Q  Okay.  Let's go to the first page<br>19:  further up the e-mail string.  You write an e-mail<br>20:  in the middle, and it says, on June the 1st:<br>21:  "What age -- what age do you think this marketing<br>22:  targets?"<br>23:  And you attach a JUUL vapor Instagram<br>24:  link; is that right?<br>25:  A  Yeah, I don't remember this exchange, (continued page 00044)<br><br>Page 00044:<br>01:  but I see it here now.<br>02:  Q  And ▉▉ writes back:  "That's<br>03:  disgusting."  Right?<br>04:  A  Yes.<br>05:  Q  ▉▉▉ is ▉?<br>06:  A  Yes.<br>07:  Q  ▉▉▉ in June of 2015 when you | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: the personal feelings of the ▉▉▉ and witness have no probative value to B.B.'s claims and are substantially outweighed by undue prejudice and confusion<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Beyond background]<br><br>Proposing Party's Position:<br>H:  Ex. 14030  is not hearsay; no form objection was made. Olin authored the email at issue, where Olin questions ▉▉▉ who he identified.  He asks her "What age do you think  this marketing targets?" and attached a JUUL Instagram Link.  (43:18-44:4; and 44:11-15).  She responded "That's disgusting." (44:2-4). The document attached is JLI's own advertisements and not hearsay. Regardless in this line of questioning it is admitted not for truth of the matter but for notice to JUUL, which is transmitted to Pritzker in the email, who at the time served on JLI's BOD and | **Overruled.** This exhibit and line of questioning are not hearsay because they go to notice, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: sent her the Instagram marketing images for JUUL, 09: and she responded, "That's disgusting"? | participate in marketing and sales decisions pertaining to JUUL.<br><br>FRE 401/402: This testimony is directly relevant to plaintiff's claims based on negligent and intentional misrepresentation. Pritzker gained important, first-hand reaction from ▓▓▓▓▓ ▓▓▓▓▓ of the negative reaction to JUUL's marketing. There will be testimony that at this time period, the marketing was directed at a youthful crowd. The evidence supports establishing JLI's knowledge/notice of the problematic issues with their marketing campaign.<br><br>FRE 403: Testimony about the perceived impact/messaging of JUUL's Instagram marketing (which necessarily and knowingly includes a younger age demographic) is not prejudicial but instead has a direct relationship to plaintiff's negligent/misrepresentation claims and establishing JLI's notice/knowledge.<br><br>MIL#2: MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 19. | Page 00044:<br>11: THE WITNESS: I think ▓▓▓▓▓▓<br>12:<br>13: BY MR. WATTS:<br>14: Q Okay. And after she wrote, "That's 15: disgusting," we go up the page, and you write an 16: e-mail to your father-in-law Nicholas Pritzker, | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: the personal feelings of the witness and ▓▓▓▓▓▓ have no probative value to B.B.'s claims and are substantially outweighed by undue prejudice and confusion<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the | **Overruled.** This exhibit and line of questioning are not hearsay because they go to notice, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 17:  and you say: "Unfortunately, I poked around on<br>18:  the Juul website and found their Instagram<br>19:  marketing campaign.  I forwarded it to ▮▮▮ Her<br>20:  reaction was the same as mine."<br>21:  And then you attached a copy of her<br>22:  "That's Disgusting" e-mail, right? | jury against JLI. Beyond background]<br><br>Proposing Party's Position: Same as preceding objections. Further, there is no hearsay regarding the statement that Olin admitted to documenting his agreement with ▮▮▮ that the JUULI Instagram ad was "disgusting."<br><br>FRE 401/402:  In addition, Olin's testimony that ▮▮▮ ▮▮▮ at the time  is relevant to Plaintiff's claims that marketing was directed at youth, including B.B. which influenced her decision to use JUUL and suffer addiction.<br><br>FRE 403:  The testimony is not prejudicial or confusing in that it is clearly the opinion of a minor's interpretation of the advertising and will assist the jury in understanding the evidence and claims.<br><br>MIL #2:  MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 20. | Page 00044:<br>24:  THE WITNESS: Yes, I see that here. | Objecting Party's Position: Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: the personal feelings of the witness and ▮▮▮ have no probative value to B.B.'s claims and are substantially outweighed by undue prejudice and confusion;<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Beyond background] | **Overruled.** This exhibit and line of questioning are not hearsay because they go to notice, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Proposing Party's Position: Same as preceding objections. Further, there is no hearsay regarding the statement that Olin admitted to documenting his agreement with ▮▮▮▮▮ that the JUULI Instagram ad was "disgusting." FRE 401/402:  In addition, Olin's testimony that ▮▮▮▮▮▮ ▮▮▮▮ at the time is relevant to Plaintiff's claims that marketing was directed at youth, including B.B. which influenced her decision to use JUUL and suffer addiction. FRE 403:  The testimony is not prejudicial or confusing in that it is clearly the opinion of a minor's interpretation of the advertising and will assist the jury in understanding the evidence and claims. MIL #2:  MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 21. | Page 00046: 14: Q  Okay.  Let's go up the page.  Nicholas 15:  Pritzker responds at the top:  "I agree with you. 16:  I have already objected to the marketing imagery 17:  and will follow up on that too." 18:  Do you see that, sir? 19:  A  Yes. | Objecting Party's Position: Hearsay (Rule 802) (Pritzker not acting in his capacity as BOD; counsel simply reading words into record, no question) [MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Goes beyond background] Proposing Party's Position: | **Overruled.** This is a party admission under FRE 801(d)(2). |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 22. | Page 00048:<br>04: BY MR. WATTS:<br>05: Q Now, I want to take you to about eight<br>06: days later on June the 9th, Exhibit 18506. | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802) (Pritzker not acting as BOD member, convo with family; Olin statements hearsay; young man statements hearsay)<br><br><u>Proposing Party's Position:</u><br>No objection to form was made/preserved. Ex. was authored by Nick Pritzker and sent to Olin dated 6/9/2015. Since authored by a party, the email string is non-hearsay (801(d)(2)). | **Overruled.** This is a party admission under FRE 801(d)(2). |
| 23. | Page 00049:<br>02: Q Now, it says: "Debates like these," and<br>03: he's referencing a BBC link, "which are heating up<br>04: globally illustrate the uneasiness of the case for<br>05: e-cigarettes and make the Juul image marketing<br>06: program especially objectionable."<br>07: Do you see that, sir?<br>08: A Yes.<br>09: Q He says: "I want you to know that I<br>10: share yours and ▮▮▮▮▮ concerns."<br>11: Did you all have a conversation between<br>12: June the 1st and June the 9th about your concerns<br>13: about what you had seen with respect to Juul's | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802)<br><br>Lacks Foundation/FRE 602: counsel simply reading into record Pritzker's words, witness has no foundation re Pritzker's comments/state of mind<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Goes beyond background]<br><br><u>Proposing Party's Position:</u><br>No objection to form was made/preserved. Ex. was authored by Nick Pritzker and sent to Olin dated 6/9/2015. Since authored by a party, the email string is non-hearsay (801(d)(2)).<br><br>In addition, during this exchange, Olin is only asked whether he sees certain statements written by Pritzker in Ex. 18506 that Counsel read regarding " . . . The case for e-cigarettes and make the JUUL image marketing program especially objectionable" and whether he recalls the conversation. Olin testified he did | **Overruled.** The quoted statements are party admissions under FRE 801(d)(2). The witness has foundation to testimony about conversations to which he was a party. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|-------------------|--------|
| | 14: marketing imagery on Instagram? | not recall a conversation about marketing and the objection based on FRE 602 (Lack of foundation/personal knowledge) is not applicable because the witness was asked about his recollection and testified that he instead recalled his "primary focus was on the chemical in the products" " and the industry as a whole." Therefore, he had knowledge of the conversation and there is no basis for lack of foundation argument.<br><br>Pritzker's acknowledgement in Ex. 18506 that he "share[s] [Olin's] and ▮▮▮▮ concerns." (49:2-8) is not hearsay and is a 801(d)(2) statement, or alternatively an exception under 803(1).<br><br>FRE 401/402: A party's admission of the "disgusting" nature of JUUL's advertising as interpreted by a teen is highly relevant and therefore objections under 401/402 do not apply. The nature of the statement is not in any way misleading or confusing. Pritzker write a straightforward, definitive statements.<br><br>MIL#2: MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 24. | Page 00049:<br>17: THE WITNESS: I don't recall any<br>18: conversation about the marketing. My primary<br>19: focus was on the chemicals in the products and<br>20: the -- and the industry as a whole. | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403 (49:17-50:10): testimony about what another person told the witness and witness's personal opinions re the industry are not relevant to B.B.'s claims and is a waste of time; confusing; and prejudicial;<br><br>Lacks Foundation/FRE 602: quoted portion of email contains | Overruled. The underlying email is not offered for the truth and is thus not hearsay. The witness has foundation to testify about conversations to which he was a party. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 21: BY MR. WATTS:<br>22: Q Now, above this you respond back on June<br>23: the 10th, and you tell Mr. Pritzker, Nicholas<br>24: Pritzker, that you had a young man over for lunch,<br>25: and talking about the deals you've done, and he<br>(continued page 00050)<br><br>Page 00050:<br>01: says: "'But what's up with that e-cigarette<br>02: company?' For many I predict Pax is a stark<br>03: contrast to the solutions-focused businesses in<br>04: which we've invested. I didn't have any<br>05: explanation to offer him. It was another red flag<br>06: like this UK regulation that, until proven<br>07: otherwise, e-cigs are likely to be placed in the<br>08: same category as cigarettes, which in basic SRI<br>09: terms, is a sin business."<br>10: Is that what you wrote? | speculation that lacks foundation<br><br>MIL 13: Testimony suggesting selling cigarettes is wrong or unlawful is irrelevant to B.B.'s claims related to ENDS use and is only intended to inflame and prejudice the jury. (49:21-50:10 re "sin business"). MIL was granted.<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. (49:17-20) Goes beyond background]<br><br><u>Proposing Party's Position</u>:<br>As to 49:17-20, same preceding objections apply.<br><br>FRE 602:   As to 49:22-50:10 and 50:12-18 (below), FRE 602 (lack of foundation/personal knowledge) does not apply since these are statements written by Olin.  Olin's testimony that he doesn't not recall the exchange does not amount to lack of personal knowledge.<br><br>FRE 401/402:  And 403:  Ex. 18506  is used to show the jury the information that knowledge the Pritzker had available to him from Olin, a principal of Tao, the 2nd largest  investor in Identifying "red flags" associated with JUUL at the time of launch, including placement in the same category as cigarettes and a "sin business." This provides context of the problematic issues with JUUL that were recognized by its major investor and concerns expressed directly to Pritzker, who had a leadership and decision-making role in JLI. This evidence is directly relevant to knowledge/notice to JLI and their | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | motive to continue to with viral marketing of the product although it was reaching the hands of youth. It is not prejudicial for the jury to hear testimony about "red flags" associated with JLI that were in Pritzker's knowledge and thereby, JLI's knowledge. Yet, JLI chose to introduce JUUL in 6/2015 without adequate warning or testing.<br><br>MIL#13: this is a comment on how the family's investment in JLI is perceived and normal practice for SRI investing, not evidence to prove to the jury that it is morally wrong to sell cigarettes.<br><br>MIL#2: MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 25. | Page 00050:<br>12: THE WITNESS: I - - I don't remember the<br>13: exchange, but I see the e-mail now.<br>14: BY MR. WATTS:<br>15: Q And when you wrote that, what did you<br>16: mean by "SRI terms"?<br>17: ASRI is an abbreviation for socially<br>18: responsible investing. | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403 (49:17-50:10): testimony about what another person told the witness is not relevant to B.B.'s claims and is a waste of time<br><br>MIL 13: Testimony suggesting selling cigarettes is wrong or unlawful is irrelevant to B.B.'s claims related to ENDS use and is only intended to inflame and prejudice the jury. MIL was granted.<br><br><u>Proposing Party's Position:</u><br>As to 49:17-20, same preceding objections apply.<br><br>FRE 602: As to 49:22-50:10 and 50:12-18 (below), FRE 602 (lack of foundation/personal knowledge) does not apply since these are statements written by Olin. Olin's testimony that he doesn't not recall the exchange does not amount to | **Overruled.** The underlying email is not offered for the truth and is thus not hearsay. The witness has foundation to testify about conversations to which he was a party. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | lack of personal knowledge.<br><br>FRE 401/402:  And 403:  Ex. 18506  is used to show the jury the information that knowledge the Pritzker had available to him from Olin, a principal of Tao, the 2nd largest  investor in Identifying "red flags" associated with JUUL at the time of launch, including placement in the same category as cigarettes and a "sin business." This provides context of the problematic issues with JUUL that were recognized by its major investor and concerns expressed directly to Pritzker, who had a leadership and decision-making role in JLI. This evidence is directly relevant to knowledge/notice to JLI and their motive to continue to with viral marketing of  the product although it was reaching the hands of youth. It is not prejudicial for the jury to hear testimony about  "red flags" associated with JLI that were in Pritzker's knowledge and thereby, JLI's knowledge. Yet, JLI chose to introduce JUUL in 6/2015 without adequate warning or testing.<br><br>MIL#13:  this is a comment on how the family's investment in JLI is perceived and normal practice for SRI investing, not evidence to prove to the jury that it is morally wrong to sell cigarettes.<br><br>MIL#2:  MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 26. | Page 00052:<br>10:  BY MR. WATTS:<br>11:  Q  Okay.  Now I want to take you to July of | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: witness's family's personal feelings about Pax investment have no probative value to B.B.'s claims and is a | **Overruled.**  The Pritzker statements are party admissions and the email is not offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 12:  2015 with Exhibit 14042. | waste of time, confusing, and unfairly prejudicial. Reagan's comments re flavors irrelevant and unduly prejudicial (is she talking about JUUL or other products); article not attached so no context; lack of foundation (same)<br><br>Proposing Party's Position:<br>Ex. 14042 is not hearsay; This email was sent by Pritzker to Olin and ▬▬▬▬ in which he in part agreed that fruity flavors should be banned.  This document falls within exceptions to hearsay, 801 (d)(2) and 803 (1).<br><br>FRE 401/402:  Pritzker's admission near the date of JUUL's launch that he personally believes JUUL should ban its fruity flavors, which based on the remainder of the testimony is associated with potential for JUUL use, is highly relevant to establishing JLI's notice and knowledge that the design of JUUL with enticing flavors had the potential for attracting youth.  Yet, JLI elected to market its product, despite this insight, knowing it had the likelihood of unnecessarily attracting youth.<br><br>FRE 403: Testimony of warning signs/signals to JLI that the design of its product was enticing to youth prior to JUUL being introduced on the market is not prejudicial but instead relevant to the jury's assessment of JLI"s knowledge and reasonableness of their conduct in marketing JUUL,, which was later linked to leading to a youth vaping epidemic.<br><br>FRE 602: Olin is not asked to speculate; only to identify the email chain of which is a recipient | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 27. | Page 00052:<br>25: Q Now, here's my question:  Do you know (continued page 00053)<br><br>Page 00053:<br>01:  why Nicholas Pritzker was writing to ▆▆▆▆▆<br>02:  as well as to you and your wife?  Had there been<br>03:  an exchange between him and her?<br>04:  A  I -- I don't recall anything specific<br>05:  except the e-mail you just showed me where I<br>06:  included ▆▆▆ comment, so perhaps that's why he<br>07:  included her. | <u>Objecting Party's Position</u>:<br>Calls for Speculation (form); Lacks Foundation/FRE 602: calls for witness to speculate about personal motivations of another;<br><br> FRE 403: witness's family's personal feelings about Pax investment have no probative value to B.B.'s claims and is a waste of time, confusing, and unfairly prejudicial.<br><u>Proposing Party's Position</u>:<br>CS:  Although Olin is asked two questions tied to inquiring why Pritzker copied ▆▆▆▆▆ on the email, the questions are not confusing or otherwise problematic to the witness. He readily provides an answer.<br><br>Given that the topic in this designation is the same as those designated  starting at 52:10, Plaintiff incorporates the same preceding objections to LF/FRE 602; FRE 403; MIL #2. | **Overruled.** The question asks for information within the personal knowledge of the witness. The response does not discuss the personal feelings of the witness or his family. |
| 28. | Page 00054:<br>18: Q Now, above that, he says:  "I share your<br>19:  deep concerns about whether it's wrong to have a<br>20:  financial interest in the company and about how we<br>21:  can use our position to promote best practices and<br>22:  mitigate harm."<br>23:  And when he said that, your wife<br>24:  responded above at 4:30 -- 5:34 in the morning, | <u>Objecting Party's Position</u>:<br>Vague and Ambiguous (form) re "fruity flavors"--JLI had one fruit flavor on the market at the time;<br><br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403: personal feelings and opinions of witness's wife are not relevant to B.B.'s claims and are a waste of time, confusing, and unfairly prejudicial<br><br>FRE 602/lack of foundation: no foundation for wife's statement that banning "fruity flavors" would be a good place to start from a reg. perspective; Improper opinion (same); simply reading portions of document into record, no recollection of further convos | **Overruled.**  This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 25: and part of what she says is: "Personally I think<br><br>(continued page 00055)<br><br>Page 00055:<br>01: banning the fruity flavors would be a good place<br>02: to start from a regulation standpoint. Clearly<br>03: teen-oriented, no," with a question mark. Right? | <u>Proposing Party's Position</u>:<br>V: The question is not vague; Olin is asked whether Counsel accurately read Pritzker's email in the record that included Pritzker's personal opinion that fruity flavors should be banned. Olin states it was; the remainder of his response offering the didn't recall this exchange is non-responsive. Further, there is no objection to form re: 54: 18-55:3.<br><br>602: Regan expresses her opinion re banning fruity flavors -- adequate foundation.<br><br>H: Pritzker's email is non-hearsay, 801 (d)(2) or alternatively 803 (1).<br><br>FRE 401/402; FRE 403: Pritzker's admission at the time of JUUL's launch, as a decision-maker with JLI and spokesman that he believes JUUL should not be marketed in fruity flavors is relevant to Plaintiff's claims to establish notice/knowledge/motive on behalf of JLI that this particular design of JUUL would/could likely impact youth use, which it did. This is not prejudicial, but instead is information that was known to a person in a leadership role with JLI, yet the company proceeded with its marketing plan that ultimately was detrimental especially to minors and non-users of nicotine. | |
| 29. | Page 00055:<br>05: THE WITNESS: I -- I don't remember this<br>06: exchange. I see what she wrote now.<br>07: BY MR. WATTS:<br>08: Q Do you recall having discussions with | <u>Objecting Party's Position</u>:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403 (55:5-6 & 55:8-10): personal feelings and opinions of witness's wife are not relevant to B.B.'s claims and are a waste of time, confusing, and unfairly prejudicial ; | **Overruled.** This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 09: your wife where she stated her view that fruity<br>10: flavors were teen-oriented? | Assumes facts not in evidence (form); Lacks Foundation/FRE 602 (55:8-10) (same)<br><br><u>Proposing Party's Position</u>:<br>H; FRE 401/402; FRE 403 (55:5-6 & 55:8-10); AF; LF/FRE 602 (55:8-10). This designation is on the same subject matter as the preceding designations and therefore, Plaintiff incorporated the preceding objections. For further response, Plaintiff states that although Olin did not recall having discussions with his wife about her view on fruity flavors (55:8-10); 55;12, this does not make the testimony inadmissible under FRE 403 or 602. Olin testified about his recollection that he doesn't recall separate discussions. | |
| 30. | Page 00055:<br>12: THE WITNESS: I don't.<br>13: BY MR. WATTS:<br>14: Q Now, after your wife suggests banning<br>15: the fruity flavors, Nicholas Pritzker responds at<br>16: the top of the page on July the 6th of 2015: "One<br>17: of the JUUL flavors is," quote, "'Fruut.' They<br>18: tell me it's like mint. Not sure where we draw<br>19: the line but probably right there," exclamation<br>20: point.<br>21: Do you see that, sir? | <u>Objecting Party's Position</u>:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403 (55:12 & 55:14-21): personal feelings about flavors is not relevant to B.B.'s claims and are waste of time, misleading, and unduly prejudicial:<br><br>Assumes facts not in evidence (form); Lacks Foundation/FRE 602 (55:12): witness has no foundation to testify about emails between his wife and his father in law.<br><br>Designation Incomplete; Attorney commentary/exchange (not testimony) (55:14-21): witnesses' testimony responding to designated question is not designated<br><br><u>Proposing Party's Position</u>:<br>H: Pritzker's statement written in Ex. 14042 admitting that they may | **Overruled.** This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | "probably draw the line at mint" is not hearsay, but instead admissible under 802(d)(2) and 803(1). FRE 401/402; Pritzker's admission at the time of JUUL's launch, as a decision-maker with JLI and spokesman that he believes JUUL should not be marketed in fruity flavors is relevant to Plaintiff's claims to establish notice/knowledge/motive on behalf of JLI that this particular design of JUUL would/could likely impact youth use, which it did. FRE 403:  This is not prejudicial, but instead is information that was known to a person in a leadership role with JLI, yet the company proceeded with its marketing plan that ultimately was detrimental especially to minors and non-users of nicotine. LF/FRE 602: There is no foundational issue. The witness is a recipient of Pritzker's email discussed above in this exchange re: banning JUUL's fruity flavors near the time of  launch. The witness is only to identify the statement. Di: The designation is complete and there is no lack of context. AC:  55:14-21: Plaintiff's Counsel does not engage in commentary. Rather, Plaintiff's Counsel  reads Pritzker's statement in the record, followed by a question asking Olin if he recalls the discussion with Pritzker. | |
| 31. | Page 00056: 15:  BY MR. WATTS: 16:  Q  Okay.  What he says next:  "I've been | Objecting Party's Position: Hearsay (Rule 802)  Lacks Foundation/FRE 602; Calls for Speculation (form) (56:12-14); Assumes facts not in evidence | **Overruled**.  This testimony goes to the issue of the company's notice and knowledge, |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | 17:  strident and adamant on marketing and will do my<br>18:  best to rein it in."<br>19:  Do you recall having any discussions<br>20:  with Nicholas Pritzker about his objections to the<br>21:  JUUL marketing program? | (form): no foundation laid as to any conversation about marketing with Nicholas Pritzker<br><br>Proposing Party's Position:<br>H: Pritzker's statement written in Ex. 14042 that he's "been strident and adamant on marketing and will do my best to rein it in"  is non-hearsay, 801 (d)(2) or alternatively 803 (1).<br>FRE 602: Olin is not asked to speculate; only to identify the email chain of which is a recipient<br> AF: There is no assumption of facts in Counsel's question; Olin is merely asked to identify the Exhibit. | which is probative of the claims in this case. |
| 32. | Page 00056:<br>23:  THE WITNESS:  I didn't recall these<br>24:  e-mails, and, no, I don't recall any other<br>25:  conversations about it either. | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br> Lacks Foundation/FRE 602: no foundation laid as to any conversation about marketing with Nicholas Pritzker<br><br>Proposing Party's Position:<br>The witness testified in response to the preceding question that he does not call conversations with Pritzker about JUUL' s marketing program.  Plaintiff incorporates the preceding responses. | **Overruled.**  This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case. |
| 33. | Page 00057:<br>15:  Q  And Nicholas Pritzker references the<br>16:  chief marketing officer questioning his insistence<br>17:  that we not show 20-somethings.<br>18:  Do you see that, sir? | Objecting Party's Position:<br>Mischaracterizes documents; lack of foundation (simply reading document into record, witness testifies he has no idea who the CMO was at the time)<br><br>Hearsay (Rule 802);<br><br> [MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Goes beyond | **Overruled.**  This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case.  The question does not mischaracterize the document, and the witness is a recipient of the email. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | background] | |
| | | Proposing Party's Position: This is not hearsay; Olin is the recipient of an email from Pritzker to which Pritzker referring to the Chief Marketing Officer "questioning his insistence that we not show 20 somethings." (57:15-18). for the reasons previously stated, the statement falls under 801(d)(2), or 803(1). No mischaracterization, and Olin's response quotes the email, making everything crystal clear. Doesn't need to know who the CMO was at the time. MIL#2: MIL 2 was "DENIED, except with respect to the Colbert video clip under Rule 403." | |
| 34. | Page 00057: 21: THE WITNESS: I see here where it says: 22: "So he questioned my insistence that we not show 23:20-somethings." 24: BY MR. WATTS: 25: Q Do you recall having a discussion with (continued page 00058)  Page 00058: 01: Nicholas Pritzker about this debate he was having 02: with respect to the images that are being used 03: showing 20-somethings with the JUUL product? | Objecting Party's Position: Hearsay (Rule 802) mischaracterizes document, FRE 602/lack of foundation  [MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Goes beyond background]  Proposing Party's Position: Plaintiff incorporates the preceding response | **Overruled.** This testimony goes to the issue of the company's notice and knowledge, which is probative of the claims in this case. The question does not mischaracterize the document, and the witness is a recipient of the email. |
| 35. | Page 00058: | Objecting Party's Position: Hearsay (Rule 802); | **Overruled.** This testimony goes to the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 05:  THE WITNESS: No. | mischaracterizes document, FRE 602/lack of foundation [MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. Goes beyond background] <u>Proposing Party's Position</u>: Hearsay and foundation objections not applicable to Olin's response to the question of whether he recalled discussing with Pritzker the debate Pritzker had with the images used showing 20-somethings with JUUL.  He responded quite directly, "no." As to all remaining objections, Plaintiff incorporates the preceding response. | issue of the company's notice and knowledge, which is probative of the claims in this case.  The question does not mischaracterize the document, and the witness is a recipient of the email. |
| 36. | Page 00058: 09:  Q  Let me take you to October of that year, 10:  Exhibit 18507. | <u>Objecting Party's Position</u>: Hearsay (Rule 802) FRE 401/402; FRE 403: references to "Vaping is So Hot Right Now" Colbert clip unduly prejudicial FRE 602: lack of foundation re Olin's statement re "mass adoption" MIL 2: Colbert video excluded by Judge Orrick's order <u>Proposing Party's Position</u>: Ex. 18507 is not hearsay.  It is an email exchange between Pritzker and Olin re: the Colbert segment. Statements made by Pritzker are non-hearsay 801(d)(2).  The Colbert piece is not hearsay because it is not admitted for the truth of the matter, but falls under 803 (1)  - statement describing an event. Further the Colbert segment | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video  has been excluded by Judge Orrick's order. The testimony is therefore misleading and unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | is only referred to in the emails exchanged between Pritzker and Olin for the limited purpose of putting their emails in context in that they are discussing their views of the segment.<br>FRE 401, 402, 403: These email exchanges b/t Pritzker and Olin re: the Colbert segment are relevant to show the jury the discussions that Pritzker had involving the Colbert segment which highlighted the youthful nature of JUUL's campaign and provided further notice to JLI (based on Pritzker's role with JLI as BOD member) of the youthful nature and impact of JLI's marketing and the observation in the market that youth were attracted to JUUL. This testimony is relevant to Plaintiffs negligent and intentional misrepresentation claims, among others. The exchange is not prejudicial in that Olin and Pritzker document their opinion about the Colbert segment (59:1-6). Notably, they both acknowledge their agreement with Colbert.<br>602: Olin explains the foundation for his 'mass adoption' comment. importantly, though he can't remember the exact source due to the passage of time, he gives no indication that he believes his prior email was incorrect or unfounded.<br>MIL#2: The Colbert clip is not shown, nor is there any reference to the comments made by Colbert that were excluded by the Court. Instead, these designations focus only on the individual reaction to JLI being criticized publicly for having youth-appealing marketing, which the Court allowed. See MIL Order at 4 ("The Court is not inclined to allow any of the clip to be played at trial. But if there is deposition testimony that is critical |        |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | to plaintiff's case that hinges on the content of part of the clip that is not unduly prejudicial (e.g., does not include Colbert's humor or socially engaging commentary), that might be allowed. Judge Larson will resolve these disputes in the first instance with the full confidence of the Court."). JLI's counsel at the hearing specifically confirmed that they do not object to this type of testimony. See hearing transcript at 17-18 (MR. BERNICK: "So we're totally fine with the fact that Colbert aired, and the company most definitely reacted to it. We're very much against playing it"). | |
| 37. | Page 00058:<br>13: BY MR. WATTS:<br>14: Q And at the bottom there's an e-mail from<br>15: Nicholas Pritzker on October the 7th, and he's<br>16: attaching a YouTube excerpt from the Colbert show,<br>17: and he says: "The thing is I agree with Colbert."<br>18: Do you see that, sir? | <u>Objecting Party's Position:</u> Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403<br><br>FRE 602<br><br>MIL 2 (Colbert)<br><br><u>Proposing Party's Position:</u> This designation continues with the same topic of the Colbert segment and Plaintiff incorporates the preceding objections. | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video has been excluded by Judge Orrick's order. The testimony is therefore misleading and unduly prejudicial. |
| 38. | Page 00059:<br>01: Q Now, when Nicholas Pritzker sends you<br>02: the YouTube link and says, "The thing is I agree<br>03: with Colbert," you responded and said: "It's | <u>Objecting Party's Position:</u> Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403<br><br>FRE 602<br><br>MIL 2 (Colbert)<br><br><u>Proposing Party's Position:</u> This designation continues with the same topic of the Colbert | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video has been excluded by Judge Orrick's order. The testimony is therefore misleading and unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04:  tragic to see the mass adoption of vaping by teens<br>05:  after decades spent eradicating smoking.  I hope<br>06:  our kids are able to avoid it."  Right? | segment and Plaintiff incorporates the preceding objections. | |
| 39. | Page 00059:<br>08:  THE WITNESS: Yes, I see that.<br>09:  BY MR. WATTS:<br>10:  Q  By October of 2015, how were you aware<br>11:  of the phenomenon of the mass adoption of vaping<br>12:  by teens? | Objecting Party's Position: Hearsay (Rule 802) (59:8);<br><br>FRE 401/402; FRE 403 (59:8-12): testimony is not relevant to B.B.'s claims and is confusing and misleading given generic discussion of teen use of e-cigarettes in 2015<br><br>Assumes facts not in evidence (form); Calls for Speculation (form); Lacks Foundation/FRE 602 (59:9-12): lacks foundation for mass adoption of teen vaping in October 2015<br><br>Proposing Party's Position: H:  Olin's response (59:8) acknowledging his statement he wrote in the email exchange referred to above that "It's tragic to see the mass adoption of vaping . . . " is not hearsay. Instead, this is the witness' own words, which he does not dispute.<br>FRE 401/402: The question of how Olin, as a principal of an investor in JUUL was aware in 10/2015, only a few months after JUUL's launch, of the "mass adoption of vaping by teens" is relevant to show knowledge of the extent to which JUUL's advertising reached youth, similar to B.B. And, to show evidence of the reasonableness of JLI taking action to modify their marketing to curb the mass adoption by youth | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video  has been excluded by Judge Orrick's order. The testimony is therefore misleading and unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | or cease their marketing at this early stage due to the vast access to youth within only months. Additionally, Olin conveying his concern about teen vaping directly to JLI, by telling Pritzker of his concerns. Therefore, JLI had additional knowledge of teen use even soon after JUUL was released in the market (the date of this email is 10/2015), yet despite the available knowledge continued with a viral marketing campaign that exposed youth to JUUL. FRE 403: The testimony is not prejudicial because it responds to JLI's claim that their marketing was not aimed at youth and their lacked notice of such impact at this time. AF: There is no assumption of facts not in evidence as to the mass adoption by youth of vaping by virtue of asking the question, let alone Olin's response at 59:14-16, where it provided two sources for making his comment. CS and LR/FRE 602: Olin testified about the basis of his statement in the 10/2015 email (Ex. 18507) and did not speculate. | |
| 40. | Page 00059: 14: THE WITNESS: I have no idea. I don't 15: know if maybe CEH continued to cover that, and I 16: was hearing about it through that work. 17: BY MR. WATTS: 18: Q Okay. And after you say, "It's tragic 19: to see the mass adoption of vaping by teens," your | Objecting Party's Position: Assumes facts not in evidence (form); Calls for Speculation (form); Lacks Foundation/FRE 602 (59:14-16): lacks foundation for mass adoption of teen vaping in October 2015 FRE 401/402; FRE 403 (59:14-24): testimony is not relevant to B.B.'s claims and is confusing and misleading given generic discussion of teen use of e-cigarettes in 2015 Hearsay (Rule 802); [MIL 2: Marketing and media | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video has been excluded by Judge Orrick's order. The testimony is therefore misleading and unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  | 20: father-in-law responds: "At least this should<br>21: cause the company finally to listen to my<br>22: objections to the marketing program, which I find<br>23: even worse than offensive, it's also stupid,"<br>24: exclamation point. Right? | content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. (59:17-24). Goes beyond background]<br><br>Proposing Party's Position:<br>H: This email exchange between Olin and Pritzker's response at (60:1-2) that "At least this should cause the company finally to listen to my objections to the marketing programs, which I find even worse than offensive, it's also stupid!" is not hearsay. Pritzker's comment is non-hearsay 801(d) (2).<br>FRE 401/402: the view of Pritzker, as a primary investor in JUUL, of the offensive nature of JUUL's marketing campaign during the 1st year on the market and documenting in writing his frustration over the company not listening to his concerns about their marketing program, all made in response to Olin's comment about the mass adoption of JUUL by teens is relevant to Plaintiff's negligent and misrepresentation claims, among others.<br>FRE 403: This statement is not prejudicial due to the apparent notice and knowledge to JLI of the impact that JUUL had on reaching teens at the early stages of their marketing and the relevance outweighs any prejudice.<br>MIL #2: Plaintiff incorporates the same response to this objection as noted above. |  |
| 41. | Page 00060:<br>01: THE WITNESS: Yeah, I don't recall this<br>02: exchange, but I see it here. | Objecting Party's Position:<br>Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403<br><br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the | **Sustained.** The testimony concerning the Colbert video is unduly prejudicial and lacks sufficient foundation given that the video has been excluded by Judge Orrick's order. The testimony is therefore |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | issues, and unfairly prejudice the jury against JLI.]<br><br>Proposing Party's Position:<br>H:  Olin is only asked to identify Ex. 18507, which is cited on the preceding pages. And he does. There is no hearsay.<br><br>Plaintiff incorporates the preceding objections made to  FRE 401/402; FRE 403; MIL #2. | misleading and unduly prejudicial. |
| 42. | Page 00061:<br>25: BY MR. WATTS: | Objecting Party's Position:<br>Should this be 62:3?<br><br>Hearsay (Rule 802); FRE 401/402; FRE 403: witness's personal feelings about teen e-cigarette use is not relevant to B.B.'s claims and is confusing, misleading, and unfairly prejudicial; FRE 602/lack of foundation<br><br>Proposing Party's Position:<br>Ex. 18509 is not hearsay.  It is an email written by  Olin and exchanged with Pritzker on 12/9/2016.<br>FRE 401/402/403: The email relates to Olin addressing a core issue in this case, "the explosion in vaping among teens" and the public recognition of the problem by the Surgeon General (a public record.  See FRE 803 (8).  Again, the statement is relevant to Plaintiff's negligent and misrepresentation claims regarding marketing and the defective design of JUUL, among others.<br>This statement is not prejudicial due to the notice and knowledge to JLI through Pritzker of the impact that JUUL had on reaching teens at the early stages of their marketing and the relevance outweighs any prejudice. | **Overruled.**  This exhibit and testimony go to the issues of the company's notice and knowledge, which are probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 43. | Page 00062:<br>03: Let's go to Exhibit 18509. | Objecting Party's Position:<br>Hearsay (Rule 802); FRE 401/402; FRE 403: witness's personal feelings about teen e-cigarette use is not relevant to B.B.'s claims and is confusing, misleading, and unfairly prejudicial; FRE 602/lack of foundation<br><br>Proposing Party's Position:<br>Ex. 18509 is not hearsay. It is an email written by Olin and exchanged with Pritzker on 12/9/2016.<br>FRE 401/402/403: The email relates to Olin addressing a core issue in this case, "the explosion in vaping among teens" and the public recognition of the problem by the Surgeon General (a public record. See FRE 803 (8). Again, the statement is relevant to Plaintiff's negligent and misrepresentation claims regarding marketing and the defective design of JUUL, among others.<br>This statement is not prejudicial due to the notice and knowledge to JLI through Pritzker of the impact that JUUL had on reaching teens at the early stages of their marketing and the relevance outweighs any prejudice. | **Overruled.** This exhibit and testimony go to the issues of the company's notice and knowledge, which are probative of the claims in this case. |
| 44. | Page 00062:<br>06: BY MR. WATTS:<br>07: Q On December the 9th, you write another<br>08: e-mail, and in this e-mail you say: "I find the<br>09: explosion in vaping among teens to be deeply<br>10: disturbing as it is creating another generation of<br>11: nicotine addicts." | Objecting Party's Position:<br>Assumes facts not in evidence (form); Hearsay (Rule 802); FRE 401/402; FRE 403: witness's personal feelings about teen e-cigarette use is not relevant to B.B.'s claims and is confusing, misleading, and unfairly prejudicial; FRE 602/lack of foundation<br><br>Proposing Party's Position:<br>AF: Olin is describing his personal view of the data reflected in the Surgeon General Report; and does not assume facts. In fact later in | **Overruled.** This exhibit and testimony go to the issues of the company's notice and knowledge, which are probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 12: Do you see that, sir? | the email, he cites to the Surgeon General Report as the support for his description. Olin's statement is one he made, and not hearsay. Further the Surgeon General Report is a public record. See FRE 803 (8). FRE 401/402: Information that was available to JLI about the explosion of vaping among teens is relevant to Plaintiff's negligent and misrepresentation claims in the context of its marketing, among others. FRE 403: This statement is not prejudicial due to the apparent notice and knowledge to JLI of the impact that JUUL had on reaching teens at the early stages of their marketing and the relevance outweighs any prejudice. 602: in addition to any other personal knowledge Olin has from his role at CEH, the foundation is the Surgeon General's Report being discussed in this chain. | |
| 45. | Page 00062: 14: THE WITNESS: Yeah, I don't recall 15: sending this, but I see it now. 16: BY MR. WATTS: 17: Q And you say: "I'm glad to see the 18: Surgeon General woke up," and then you put a CNN 19: link to the Surgeon General Report on 20: e-cigarettes, right? 21: A Yes. 22: Q And the subject of your e-mail is 23: "Surgeon General sounds the alarm on teens and | Objecting Party's Position: Compound (form); Assumes facts not in evidence (form) (62:14-15); Hearsay (Rule 802); FRE 401/402; FRE 403 (62:14-25): witness's personal feelings about teen e-cigarette use is not relevant to B.B.'s claims and is confusing, misleading, and unfairly prejudicial; Asked & Answered (form); Lacks Foundation/FRE 602 (63:1-6) Proposing Party's Position: CD: None of the questions in this series ask more than one question at a time. Defendants' CD objection is baseless. AF (62:14-15): There is no assumption of facts not in evidence in Olin's statement dated | **Overruled.** This exhibit and testimony go to the issues of the company's notice and knowledge, which are probative of the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 24:  e-cigarettes."  Right?  25:  A  Yes.  (continued page 00063)  Page 00063:  01:  Q  Now, at the time that you sent this  02:  e-mail on December the 9th of 2016, Nicholas  03:  Pritzker was on the board of directors of Juul,  04:  right?  05:  A  As I said before, I'm not sure exactly  06:  when -- when he joined the board. | 12/9/2016 (Ex. 18510)about the explosion in youth vaping. The later designations show the statement is based on the Surgeon General Report and is sufficient documented prior to the mass use of vaping products by teens.  H:  There is no hearsay in Olin's statement.  The Surgeon General Report is referred to in order to put Olin's statement in context and is also admissible as a publicly available document under 803 (8).  FRE 401/402:  Same basis as set forth in preceding objections.  FRE 403 (62:14-25): Olin reciting to the Surgeon General Report as "sounding the alarm on teens and e-cigarettes" is not prejudicial, but instead relevant to the conclusion drawn by Olin, as a principal of Tao, an investor in JUUL, from the Surgeon General Report that there is reason to be concerned that JUUL is reaching youth. Significantly, this same information is conveyed to Pritzker, who as a BOD member of JUUL and person in a leadership role of the company, including a sometimes spokesperson, had direct knowledge of the public alarm of teen use of vaping products, indulge JUUL The relevance outweighs any prejudice.  AA: There is no duplicate question asked in this line of examination and JLI failed to identify the apparent question that was asked and answered.  LF/FRE 602 (63:1-6): Witness acknowledges in his answer that he has knowledge that Pritzker was on the BOD of JUUL, he is only unable to testify as to whether he was on the BOD as of 12/9/2016, the date of Ex. 18509. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 46. | Page 00070: 07: MR. WATTS: Now, if we could put that on 08: the left side, and I want to put Exhibit 18510 on 09: the right. | Objecting Party's Position: Hearsay (Rule 802); (Pritzker not acting in capacity as BOD member; article not included, confusing and prejudicial)<br><br>FRE 401/402; FRE 403: text of SG report not included, confusing and prejudicial, no info re whether SG report discussed JUUL usage specifically<br><br>Proposing Party's Position: Ex. 18510 is not hearsay. It is an email that Olin received from Pritzker on 12/9/2016 in response to Olin's text and Pritzker's statement about his concern over the JUUL marketing is non-hearsay 801(d)(2).<br><br>FRE 401/402/403: A document written by Pritzker admitting to his concern about JUUL's marketing in 2016, only a year after launch, is relevant to show the jury that JUUL had notice/knowledge that the marketing campaign/strategies were reaching youth, yet the company failed to take corrective action or at least sufficiently corrective action to modify the marketing. It is relevant to motive, knowledge and intent and is not unduly prejudicial. Its relevance outweighs any prejudice. Text of the SGR not needed, the headline and discussion in the email chain make clear what Pritzker understood the main takeaway to be. [And JLI takes inconsistent positions: where we've used various SGRs with other witnesses, JLI has objected to that as well.] | **Overruled.** The statements in the email are party admissions and go to the company's notice and knowledge. |
| 47. | Page 00064: | Objecting Party's Position: Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403 | **Overruled.** The statements in the email are party admissions and go to |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 11: Q Yeah, okay. Now, as we look at the one<br>12: on the right, it says regarding your text: "I'm<br>13: obviously really concerned about this too and<br>14: would have never invested in Pax in the first<br>15: place if I had foreseen where it could all go --<br>16: where it could go."<br>17: Do you see that?<br>18: A Yes.<br>19: Q Now, he talks about a countervailing<br>20: benefit; what can we do now? And he says:<br>21: "First, to do whatever we can as a company to<br>22: promote objective testing, warning labels,<br>23: policies to discourage, if not prevent, use by<br>24: youth, aggressive quality control, responsible<br>25: marketing," open paren, "our marketing has been<br>(continued page 00065)<br><br>Page 00065:<br>01: horrendous against my specific instructions until | FRE 602/lack of foundation: Witness has no independent recollection of conversations; "testimony" simply reading document into record<br><br>Proposing Party's Position: Pritzker's statement is admissible under 801(d)(2) because it is an admission by a party given that Pritzker was also a BOD member and decision maker for JLI at that time. He documents his personal opinion that had he foreseen "where it could go", he "would have never invested in Pax."<br>FRE 401/402: Pritzker's admission is relevant to show the jury a Defendant's knowledge and notice of the impact of JUUL's marketing that reached youth, causing admitted second thoughts on behalf of one of the company's primary investors and BOD that investing in JUUL could have been a wrong decision.<br><br>FRE 403: Pritzker's admission that investing in JUUL may have been a wrong decision is not prejudicial and instead goes the recognition by a BOD member that there were serious reasons to be concerned about JUUL's marketing. This admission is probative of the motive, knowledge and intent of the company to continue with its viral marketing despite these early observations by one of its BODs. Its probative value far outweighs any prejudicial effect on defendants. | the company's notice and knowledge. The witness is a recipient of the email and the questioning goes to this personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: recently."<br>03: Do you see that, sir? | | |
| 48. | Page 00065:<br>05: THE WITNESS:<br>Yes.<br>06: BY MR. WATTS:<br>07: Q Now, did you have conversations with<br>08: Nicholas Pritzker where he told you outside of<br>09: e-mails that Juul's marketing had been horrendous<br>10: against his specific instructions until recently? | Objecting Party's Position:<br>Hearsay (Rule 802); Lacks Foundation/FRE 602;<br><br>Proposing Party's Position:<br>There is no hearsay asked for or testified about. Instead, the witness is asked about his recollection as to whether he and Pritzker verbally discussed JUUL's horrendous marketing campaign separate from the email exchange.<br>LF/FRE 602: lack of foundation doesn't apply to asking the witness whether he recalls a conversation and simply states he does not. He is not asked to testify about the contents of a conversation that he didn't participate in. | **Overruled.** The statements in the email are party admissions and go to the company's notice and knowledge. The witness is a recipient of the email and the questioning goes to this personal knowledge. |
| 49. | Page 00065:<br>12: THE WITNESS:<br>Not that I recall. | Objecting Party's Position:<br>Hearsay (Rule 802); Lacks Foundation/FRE 602;<br><br>Proposing Party's Position:<br>H: Hearsay is not applicable to witness' testimony of not recalling conversations with Pritzker something. This response doesn't introduce hearsay.<br>LF/FRE 602: Olin testified he doesn't recall whether or not he had these discussions; there is no foundational issue. | **Overruled.** The statements in the email are party admissions and go to the company's notice and knowledge. The witness is a recipient of the email and the questioning goes to this personal knowledge. |
| 50. | Page 00072:<br>17: Q Okay. Now, I want to take you to<br>18: Exhibit 18512, which will take us into 2017. And<br>19: it's a two-page document, so we can put them up | Objecting Party's Position:<br>Hearsay (Rule 802); FRE 602/lack of foundation; FRE 401/402; FRE 403 re Olin's personal opinions (including opinions re nicotine products generally and CA Prop 65)<br><br>Proposing Party's Position:<br>This is an email from Pritzker to | **Overruled.** The Pritzker statements are party admission, and the email goes to the company's notice and knowledge, which are probative of claims in this case. The line of questioning seeks |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 20: left and right, and we'll start on the second<br>21: page | Olin dated 7/28/2017 regarding a NYT article about the FDA targeting addictive levels of nicotine in cigarettes. It contains non-hearsay statements by a party, Rule 802(d)(2) and statements by the witness. Olin's statements non-hearsay for effect on listener, Prtizker. Proper foundation for Olin's opinions.<br>FRE 401/402: This email exchange between Pritzker and Olin about the FDA's proposal to cut the nicotine level in cigarettes so they aren't so addictive is relevant to show the jury notice/knowledge of the company to making JUUL with a higher nicotine level than required, according to other witness' testimony.<br>FRE 403: There is no prejudicial impact to Defendants regarding testimony recognizing and calling attention to the FDA's proposed actions regarding nicotine levels in cigarettes due to the relationship to addiction. Addiction is an injury alleged by B.B. and is related to the nicotine levels in JUUL. The relevance of this testimony outweighs any prejudicial effect. Further, Defendants' designation of testimony at 73:4-1 is confusing. | the witness's personal knowledge. |
| 51. | Page 00073:<br>04: BY MR. WATTS:<br>05: Q On July 28, 2017, Nicholas Pritzker<br>06: writes you an e-mail, the subject is "The New York<br>07: Times: FDA to target addictive levels of nicotine | Objecting Party's Position:<br>Hearsay (Rule 802)<br><br>FRE 401/402; FRE 403 (73:4-1): testimony about FDA action on combustible cigarettes and Olin's personal opinions (including opinions re nicotine products generally and CA Prop 65) are not relevant to B.B.'s claims and is confusing and misleading<br><br>FRE 602/lack of foundation | **Overruled.** The Pritzker statements are party admission, and the email goes to the company's notice and knowledge, which are probative of claims in this case. The line of questioning seeks the witness's personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: in cigarettes." And he writes to you and says:<br>09: "I know this isn't your favorite topic, but this<br>10: was a bombshell today," and then he attaches a<br>11: link to The New York Times article about the FDA<br>12: action, right?<br>13: A I don't recall the exchange, but I see<br>14: it here now.<br>15: Q It says: "For the first time the<br>16: federal government is proposing cutting the<br>17: nicotine level in cigarettes so they aren't so<br>18: addictive."<br>19: And after he sends that to you at 1:26,<br>20: you respond a few hours later -- and let's go to<br>21: the first page -- and you say: "Tighter<br>22: regulation is great. Smoke is clearly a problem<br>23: but so is any nicotine at all."<br>24: And then you attach a California<br>25: Proposition 65 warning with respect to nicotine;<br>(continued page 00074) | Compound (form) (73:15-74:1)<br><br><u>Proposing Party's Position:</u><br>Pritzker's description of the NYT article as being a "bombshell" is a non-hearsay statements by a party, Rule 802(d)(2) or an Exception under 803(1). In addition, the response made by Olin to Pritzker's comment is not hearsay, but is his own personal statement & effect on listener.<br>FRE 401/402: This email exchange between Pritzker and Olin about the FDA's proposal to cut the nicotine level in cigarettes so they aren't so addictive is relevant to show the jury notice/knowledge of the company to making JUUL with a higher nicotine level than required, according to other witness' testimony.<br>FRE 403: There is no prejudicial impact to Defendants regarding testimony recognizing and calling attention to the FDA's proposed actions regarding nicotine levels in cigarettes due to the relationship to addiction. Addiction is an injury alleged by B.B. and is related to the nicotine levels in JUUL. The relevance of this testimony outweighs any prejudicial effect.<br>CD (73:15-74:1): None of these statements by Counsel in this question are compound. Instead, Counsel reads several excerpts from the email as background, followed by a single question asking him whether he read correctly the single statement authored by Olin in the email regarding "Tighter regulation is great." | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | Page 00074:<br>01: is that right? | | |
| 52. | Page 00074:<br>03: THE WITNESS: Yeah, I see that I<br>04: continue to be a devout CEH acolyte here.<br>05: BY MR. WATTS:<br>06: Q And the warning says: "This product<br>07: contains nicotine, a chemical known to the State<br>08: of California to cause birth defects and other<br>09: reproductive harm."<br>10: And after you attach that, you say:<br>11: "And vaping just replaces the dangers of smoke<br>12: with the dangers of vapor ingredients, but with<br>13: the nasty perception that it's harmless, which is<br>14: why I believe use among teens is so rampant. A<br>15: real tragedy after decades of progress reducing<br>16: smoking among youth."<br>17: That's what you told Nicholas Pritzker<br>18: on July 28th of 2017, right? | <u>Objecting Party's Position:</u> Compound (form) (74:3-4); Hearsay (Rule 802); FRE 401/402; FRE 403 (74:3-18): FRE 401/402; FRE 403 (73:4-1): testimony about FDA action on combustible cigarettes is not relevant to B.B.'s claims and is confusing and misleading. Testimony about California Prop 65 is not relevant to B.B.'s claims; Olin's personal opinions not relevant and prejudicial/confusing; FRE 602/lack of foundation re alleged dangers of vaping/Olin's statements<br><br><u>Proposing Party's Position:</u> CD (74:3-4): Olin testified that he acknowledges Counsel having read various statements made by Olin in Ex. 18512. There is no compound question and the witness responds to the question without seeking clarification. Hearsay is not applicable because these questions relate to Ex. 18512 - an email exchanged between Pritzker to Olin dated 7/28/2017 regarding a NYT article about the FDA targeting addictive levels of nicotine in cigarettes. It contains non-hearsay statements by Pritzker, a party, Rule 802(d)(2) and statements by the witness, which he acknowledged. Olin's statements are not based on hearsay but instead include Olin's opinion about tighter nicotine regulations.<br>FRE 401/402; FRE 403 (74:3-18): Olin's response to Pritzker includes that "vaping just replaces the dangers of smoke with the dangers of vapor ingredients" . . . " "a real tragedy after decades of | **Overruled.** The Pritzker statements are party admission, and the email goes to the company's notice and knowledge, which are probative of claims in this case. The line of questioning seeks the witness's personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | progress reducing smoking among youth." Olin's statements/observations that vaping is dangerous and had tragically and adversely impacted the progress made to previously to reduce smoking in youth were made directly to Pritzker, who at the time was a BOD member of JLI and therefore deemed to have notice of the problematic issues with teen use of vaping products. This acknowledgement is probative to the notice, knowledge of JLI that vaping is dangerous to use and its availability in the market has adversely impacted youth. Therefore, this is relevant to Plaintiff's claims that JLI should have taken action to control/limit their marketing of JUUL so as to minimize exposing minors to JUUL.<br>FRE 403: There is no prejudicial impact to the jury hearing evidence that in 2017 that Pritzker and thereby JLI were aware of the dangerous nature of JUUL, similar to cigarettes. This testimony is related to damages and JLI's intent.<br>602: proper foundation laid for Olin's opinions | |
| 53. | Page 00074:<br>20: THE WITNESS: I see that here.<br>21: BY MR. WATTS:<br>22: QNow, Mr. Olin, in your capacity as a CEH<br>23: acolyte, to use your term, you were receiving data<br>24: with respect to the youth vaping epidemic that was<br>25: occurring in this country, right? | Objecting Party's Position: Hearsay (Rule 802) (74:20); FRE 401/402; FRE 403 (74:20-25): testimony about generic media coverage of underage use of e-cigarettes not relevant to B.B.'s claims and misleading and confusing.<br><br>Vague and Ambiguous (form); Assumes facts not in evidence (form); Lacks Foundation/FRE 602 (74:21-25)<br><br>Proposing Party's Position:<br>H (74:20): This line is Olin's | **Overruled.** The Pritzker statements are party admission, and the email goes to the company's notice and knowledge, which are probative of claims in this case. The line of questioning seeks the witness's personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | acknowledgment that he sees a statement he wrote in Ex. 18512 vaping just replaces the dangers of smoke with the dangers of vapor ingredients" . . . " " area tragedy after decades of progress reducing smoking among youth."  There is no hearsay; this is his own statement.<br>FRE 401/402; FRE 403 (74:20-25):  These lines are Counsel's question asking whether Olin received data on the youth vaping epidemic, which is relevant to showing the jury notice to JLI of the vaping epidemic at least by this time frame, 2017, the date of the email.<br>V: The question is direct  and simple asks whether Olin received data on the epidemic.<br> AF: There is no assumption of facts by this question and in fact Olin testified at 75:3-7 that news of the epidemic was in the media.<br> LF/FRE 602 (74:21-25): lack of foundation/personal knowledge is not applicable. Olin is asked directly whether he received notice of the youth epidemic. | |
| 54. | Page 00075:<br>03:  THE WITNESS: I'm not sure how to answer<br>04:  that.  I remember that it was in the mainstream<br>05:  media, so I didn't have any information source.  I<br>06:  wasn't actively seeking it, but I think I was<br>07:  absorbing it.<br>08:  BY MR. WATTS: | <u>Objecting Party's Position:</u><br>Vague and Ambiguous (form); Assumes facts not in evidence (form); Lacks Foundation/FRE 602: no foundation laid as to exposure to "data" or what specific information is being referenced; or basis for Olin's statements<br><br>FRE 403 (75:3-11); FRE 401/402 (75:3-7): testimony about generic media coverage of underage use of e-cigarettes not relevant to B.B.'s claims and  misleading and confusing.<br><br>Hearsay (Rule 802)<br><br><u>Proposing Party's Position:</u> | **Overruled.** This line of questioning is based on the witness's personal knowledge and continues to go to the company's notice and knowledge, which are probative of claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 09: QYou were absorbing information from the<br>10: mainstream media that reported on the rampant use<br>11: among teens of vaping products, right? | V: These lines contain Olin's answers to the preceding question asking whether Olin received data on the youth vaping epidemic, where he testifies this information was in the mainstream media. Neither the question, nor the answer given is vague.<br>AF: Olin makes no assumption of facts in his answer -he simply states the information was publicly available.<br>FRE 401/402/403 (75:3-11): Plaintiff incorporate the preceding objections.<br>H: Olin's response as to how he was aware of the youth epidemic is not hearsay, but instead testimony about his personal knowledge as to the basis.<br>HH (75:8-11): This question simply asks whether Olin based his knowledge about the youth epidemic on information provided in the mainstream media. He is not asked to testify about the truth of any particular 3rd party statement. | |
| 55. | Page 00075:<br>13: THE WITNESS: I don't remember when that<br>14: got into the media. My recollection is it was a<br>15: year later.<br>16: BY MR. WATTS:<br>17: Q So you had some other source of knowing<br>18: that vaping use among teens is so rampant, right? | Objecting Party's Position:<br>Vague and Ambiguous (form); Assumes facts not in evidence (form); Hearsay (Rule 802); Lacks Foundation/FRE 602: no foundation laid as to exposure to "data" or what specific information is being referenced or basis for Olin's statements<br><br>FRE 401/402; FRE 403: testimony about generic media coverage of underage use of e-cigarettes not relevant to B.B.'s claims and misleading and confusing.<br><br>Proposing Party's Position:<br>These lines contain Olin's further answers to an additional question asking whether Olin received data on the youth vaping epidemic. | **Overruled.** This line of questioning is based on the witness's personal knowledge and continues to go to the company's notice and knowledge, which are probative of claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Plaintiff incorporates the same preceding objections. | |
| 56. | Page 00075:<br>20: THE WITNESS: Yeah, I'm not sure what --<br>21: what the source would have been, but it was my<br>22: perception, I guess.<br>23: BY MR. WATTS:<br>24: Q And you communicated that perception to<br>25: Nicholas Pritzker, who was on the board of (continued page 00076)<br><br>Page 00076:<br>01: directors of Juul Labs, right? | Objecting Party's Position: Vague and Ambiguous (form); Assumes facts not in evidence (form); Lacks Foundation/FRE 602: no foundation laid as to exposure to "data" or what specific information is being referenced or basis for Olin's statements<br><br>Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: testimony about generic media coverage of underage use of e-cigarettes not relevant to B.B.'s claims and misleading and confusing.<br><br>Proposing Party's Position: V: No part of this designation is vague. 75:20-22 is Olin's answer describing the source provided about teen vaping. 75: 23-71:1, he was asked a direct and clear question as to whether he communicated the topic of rampant teen use of vaping products to Pritzker.<br>AF: Olin makes no assumption of facts that are not in evidence in his answer. He testified that he perceived that vaping among teens was rampant.<br>H: Olin's response admitting that he sent the email to Pritzker about the rampant use of teens of vaping products constitutes his personal perception and is not based on hearsay.<br>LF/FRE 602: Olin testified about his personal knowledge of sending the email to Pritzker; there is no foundational issue.<br>FRE 401/402: Testimony that Pritzker, as BOD member of JUUL, was made aware of the vaping epidemic is relevant to the | **Overruled.** This line of questioning is based on the witness's personal knowledge and continues to go to the company's notice and knowledge, which are probative of claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | company's duty and demonstrates knowledge and notice. FRE 403: Testimony that JUUL's primary investor and BOD member, Pritzker, had knowledge at least by 2017 of the teen vaping epidemic is relevant to the company's notice/knowledge that its marketing of JUUL or vast availability of the product in the market. This testimony combined with other testimony referenced herein regarding the concerns expressed by Pritzker about the youthful nature of JUUL's marketing is highly relevant and outweighs any potential prejudicial impact - as there is none. | |
| 57. | Page 00076: 02: A This is the e-mail that I sent him. | <u>Objecting Party's Position</u>: Vague and Ambiguous (form); Assumes facts not in evidence (form); Lacks Foundation/FRE 602: no foundation laid as to exposure to "data" or what specific information is being referenced or basis for Olin's statements<br><br>Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: testimony about generic media coverage of underage use of e-cigarettes not relevant to B.B.'s claims and misleading and confusing.<br><br><u>Proposing Party's Position</u>: V: No part of this designation is vague. 75:20-22 is Olin's answer describing the source provided about teen vaping. 75: 23-71:1, he was asked a direct and clear question as to whether he communicated the topic of rampant teen use of vaping products to Pritzker. AF: Olin makes no assumption of facts that are not in evidence in his answer. He testified that he | **Overruled.** This line of questioning is based on the witness's personal knowledge and continues to go to the company's notice and knowledge, which are probative of claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | perceived that vaping among teens was rampant.<br>H: Olin's response admitting that he sent the email to Pritzker about the rampant use of teens of vaping products constitutes his personal perception and is not based on hearsay.<br>LF/FRE 602: Olin testified about his personal knowledge of sending the email to Pritzker; there is no foundational issue.<br>FRE 401/402: Testimony that Pritzker, as BOD member of JUUL, was made aware of the vaping epidemic is relevant to the company's duty and demonstrates knowledge and notice.<br>FRE 403: Testimony that JUUL's primary investor and BOD member, Pritzker, had knowledge at least by 2017 of the teen vaping epidemic is relevant to the company's notice/knowledge that its marketing of JUUL or vast availability of the product in the market. This testimony combined with other testimony referenced herein regarding the concerns expressed by Pritzker about the youthful nature of JUUL's marketing is highly relevant and outweighs any potential prejudicial impact - as there is none. | |
| 58. | Page 00076:<br>15: BY MR. WATTS:<br>16: Q Mr. Olin, did -- did the Center for<br>17: Environmental Health file a lawsuit against Juul<br>18: and other vaping companies for its marketing<br>19: practices?<br>20: A I believe in 2015, CEH filed -- well, I | Objecting Party's Position:<br>Lacks Foundation/FRE 602;<br><br>FRE 401/402; FRE 403: Testimony about lawsuit related to California Prop 65 has no relevance to B.B.'s claims and is confusing and misleading and unfairly prejudicial<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant | **Overruled.** The witness has foundation as a member of the board for the Center for Environmental Health. This line of questioning and the witness' knowledge of potential harmful ingredients is relevant to issues of JLI's notice and knowledge. It is not unduly prejudicial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 21: don't know if it's a lawsuit or some kind of legal<br>22: action based on Prop 65 chemicals, but I think at<br>23: legal action was taken, it was<br>24: actually before -- you mentioned the JUUL launch,<br>25: I guess, was June of 2015, I think it was before<br>(continued page 00077)<br><br>Page 00077:<br>01: that, so I think it was other companies in the<br>02: industry but not whatever the name of the company<br>03: was at that time included.<br>04: Q Okay. And did most of the vaping<br>05: companies accept a settlement and agree to reduce<br>06: use of vaping among teens? | because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue]<br><br>Proposing Party's Position:<br>LF/FRE 602: Olin testifies about his knowledge regarding the Center for Environmental Health's lawsuit filed against JUUL and other vaping companies. He has personal knowledge due to his serving as the board chair during 2014 and 2015. (26: 2-8; 26:12-15) The lawsuit was filed during this time, in 2015. (76: 20-77:6).<br><br>FRE 401/402: Evidence regarding this lawsuit, based on the Prop 65 chemicals, which includes harmful ingredients contained in JUUL, prior to JUUL being introduced in the market is relevant to issues of notice/knowledge of JLI of the potential harmful effect of its product, as alleged by Plaintiff. Such evidence is also relevant to plaintiff's claims based on negligent and intentional misrepresentations and failure to adequately warn consumers about the harmful effects of its product, including nicotine addiction.<br><br>FRE 403: There is no prejudice to JLI to admission of testimony/documentary proof that | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | it had been sued in connection with the same product at issue in Plaintiff's case, based on the Prop 65 chemicals and any potential prejudice is outweighed by its probative value.<br><br>MIL #1:  MIL 1 was "DENIED to the extent the Court has determined B.B.'s failure to warn claims are not preempted." This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain."<br><br>MIL #5: MIL 5 was DENIED. This MIL pertains to JLI's online verification processes and is not responsive to the topics discussed in these designations.  In the event, this MIL is deemed relevant to these designations, then plaintiff states that the testimony at issue is relevant and admissible as evidence of JLI's plan to grow the youth market. | |
| 59. | Page 00077:<br>08:  THE WITNESS:  I - - I don't recall.  I<br>09:  think there were a bunch of companies on their --<br>10:  their list.  I'm not sure who did what.<br>11:  BY MR. WATTS:<br>12:  Q  And when Juul was asked to accept that<br>13:  provision to reduce the use of vaping among teens, | <u>Objecting Party's Position:</u><br>Lacks Foundation/FRE 602; Assumes facts not in evidence (form); Calls for Speculation (form) (77:12-15): no foundation laid for witness to testify as to what JLI decided and no foundation laid as to fact represented<br><br>FRE 401/402; FRE 403: Testimony about lawsuit related to California Prop 65 has no relevance to B.B.'s claims and is confusing and misleading and unfairly prejudicial | **Sustained (77:12-20).** Lack of foundation and assumes facts not in evidence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: Juul rejected the term and instead opted to pay a<br>15: fine, right? | <u>Proposing Party's Position</u>:<br>LF/FRE 602: Olin testifies about his personal knowledge of the settlement of the CEH lawsuit, which is that some companies settled. The fact that he does not recall the terms of the settlement does not constitute lack of foundation. There is foundation for his knowledge about the lawsuit due to his affiliation with the CEH during this same time.<br>FRE 401/402: Evidence of the scope of the CEH's lawsuit in 2015 against JUUL is relevant to establishing knowledge/notice to JLI of its' potential harmful effects. Olin testified the "focus of the suit was the chemicals in the Prop 65."<br>FRE 403: There is no prejudice to JUUL by asking Olin if he recalled what JUUL decided to accept to settle the lawsuit. The terms of the settlement are factual matters which the jury is entitled to hear and weigh as to whether any acknowledgements were made by JUUL in the settlement that are potentially relevant to the issues pending in this lawsuit. Since the lawsuit related to safety concerns with JUUL, the evidence mirrors the claims in this case and are relevant and not prejudicial.<br> AF: There is no assumption of facts in the question given the witness is expected to have personal knowledge of the lawsuit. Olin was asked whether JUUL rejected a term of the settlement to reduce use of vaping among teens, to which is responded indirectly with he understood the lawsuit related to chemicals in Prop 65.<br>CS (77:12-15): There is no compound question. The question included an introductory statement of "when JUUL was asked to | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | accept that provision to reduce the use of vaping among teens", followed by the question of whether JUUL rejected a term of the settlement to reduce use of vaping among teens. | |
| 60. | Page 00077:<br>18: THE WITNESS: Well, I -- I think the<br>19: primary focus of the suit was the chemicals in the<br>20: Prop 65 list, as we discussed earlier. | <u>Objecting Party's Position</u>:<br>Assumes facts not in evidence (form); Calls for Speculation (form); Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: Testimony about lawsuit related to California Prop 65 has no relevance to B.B.'s claims and is confusing and misleading and unfairly prejudicial<br><br><u>Proposing Party's Position</u>:<br>AF: Olin is not assuming facts. He testifies about his personal knowledge of the claims in the lawsuit brought by CEH (of which he was a board member at the time).<br>CS: For the same reasons stated above, he is not speculating, he is providing his personal knowledge based on his recollection.<br>H: Olin's testimony about the claims in the lawsuit is based on his understanding and he is not purporting to testify statements made verbally by or in writing by 3rd parties.<br>FRE 40/402: Evidence of the scope of the CEH's lawsuit in 2015 against JUUL is relevant to establishing knowledge/notice to JLI of its' potential harmful effects. Olin testified the "focus of the suit was the chemicals in the Prop 65."<br>FRE 403: There is no prejudice to JUUL from Olin telling the jury what he recalls the basis of the lawsuit was about. These are facts relevant to the jury's consideration of whether JUUL had notice of | **Sustained (77:12-20)**. Lack of foundation and assumes facts not in evidence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
|  |  | harmful effects of the ingredients in JUUL and/or alleged harmful effects. |  |
| 61. | Page 00077:<br>21: MR. WATTS: Let me see if we can look at 22: Exhibit 14203. | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802) (re Olin's comments; hearsay within hearsay re CEH lawsuit/information learned from CEH)<br><br>FRE 401/402; FRE 403: Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading; CEH lawsuit irrelevant and unduly prejudicial; FRE 602: lack of foundation re the lawsuit (witness testified he does not recall details)<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br><u>Proposing Party's Position:</u><br>H: Hearsay is not applicable; Ex. 14203 includes an email authored by Olin dated 4/21/2018, which is the subject matter of subsequent questions. | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | FRE 401/402: This email includes Olin's summary statements in 2018 regarding the substance of the CEH's lawsuit against JLI and the position JLI took on settlement. See 81: 3-24 and is relevant to the issues of notice/knowledge of JUUL of the alleged harmful effects from the ingredients and JLI's rejection of the proposed settlement term to reduce teen vaping. This rejection (as documented by Olin in this email is evidence of JLI's knowledge that minors were obtaining vaping products and rebuts JLI's evidence suggesting that it acted responsibly.

FRE 403: There is no prejudice to JLI in offering this evidence, which includes undisputed facts directly relevant to intent/motive.

MIL #1: MIL 1 was "DENIED to the extent the Court has determined B.B.'s failure to warn claims are not preempted." This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain."

MIL #5: MIL 5 was DENIED. This MIL pertains to JLI's online verification processes and is not responsive to the topics discussed in these designations. In the event, this MIL is deemed relevant to these designations, then plaintiff states that the testimony at issue is relevant and admissible as evidence of JLI's plan to grow the youth market. |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| 62. | Page 00079:<br>20: BY MR. WATTS:<br>21: Q Yes. Okay. And what I want to ask<br>22: about is 035 and 036, the e-mail that you wrote on<br>23: April 21st, 2018. | Objecting Party's Position: Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading<br><br>Proposing Party's Position: H: Hearsay is not applicable; Ex. 14203 includes an email authored by Olin dated 4/21/2018, which is the subject matter of subsequent questions.<br><br>FRE 401/402:  This email includes Olin's summary statements in 2018 regarding the substance of the CEH's lawsuit against JLI and the position JLI took on settlement.  See 81: 3-24 and is relevant to the issues of notice/knowledge of JUUL of the alleged harmful effects from the ingredients and JLI's rejection of the proposed settlement term to reduce teen vaping.  This rejection (as documented by Olin in this email is evidence of JLI's knowledge that minors were obtaining vaping products and rebuts JLI's evidence suggesting that it acted responsibly.<br><br>FRE 403:  There is no prejudice to JLI in offering this evidence, which includes undisputed facts directly relevant to intent/motive.<br><br>MIL #1: MIL 1 was "DENIED to the extent the Court has determined B.B.'s failure to warn claims are not preempted." This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, | **Sustained.**  This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain." <br><br> MIL #5: MIL 5 was DENIED. This MIL pertains to JLI's online verification processes and is not responsive to the topics discussed in these designations.  In the event, this MIL is deemed relevant to these designations, then plaintiff states that the testimony at issue is relevant and admissible as evidence of JLI's plan to grow the youth market. | |
| 63. | Page 00080: <br> 24:  MR. WATTS: Now, if we could go to 035 <br> 25:  and blow up the fifth bullet point in the next <br> (continued page 00081) <br><br> Page 00081: <br> 01:  paragraph. <br> 02:  BY MR. WATTS: <br> 03:  Q  Part of what you write is:  "The Center <br> 04:  for Environmental Health (CEH), the environmental <br> 05:  health nonprofit that I've supported for years <br> 06:  through SRF, where I served on the board for six <br> 07:  years, and where I was chair of the board for two <br> 08:  years, brought legal action against 30 vaping | Objecting Party's Position: <br> Hearsay (Rule 802); <br><br> FRE 401/402; FRE 403: Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading . Testimony about legal action under California Prop 65 is not relevant to B.B.'s claims and is confusing, misleading, and unfairly prejudicial;  Compound (form); Lacks Foundation/FRE 602 (81:20-24) <br><br> [MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial | **Sustained.**  This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 09:  companies for violation of California Prop 65,<br>10:  which governs the sale of chemicals known by the<br>11:  State of California to cause harm to humans.  I<br>12:  was horrified to learn that while most of the<br>13:  companies accepted a provision of the settlement<br>14:  to reduce use of vaping in teens, Juul rejected<br>15:  the term, opting instead to pay a fine.  This is<br>16:  Section 3.2.3 of the consent judgment.  It is<br>17:  attached."<br>18:  Do you see that, sir?<br>19:  A  Yes.<br>20:  Q  All right.  Now, do you recall now that<br>21:  the Center for Environmental Health filed suit<br>22:  against vaping companies, settled with most of<br>23:  them when they agreed to a term intended to reduce<br>24:  use among vapings, but saw Juul reject the term? | on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br>Proposing Party's Position:<br>H:  The document was written by Olin, it is not hearsay, nor is it based on hearsay. He clearly states in the email the first-hand knowledge that he has of the terms of the JLI's settlement with CEH. This is described as due to his serving on the board of CEH for 6 yrs. and as char of the board for 2 yrs.<br>FRE 401/402: This designation includes Olin agreeing with Counsel's reading of his email stating that he "was horrified" to learn of JLI rejecting the settlement term to reduce use of vaping in teens and instead pay a fine.  Such evidence is relevant to notice/knowledge/motive of JLI to market its product negligently in a manner to reach youth unnecessarily, as evidenced by the scope of their social media campaigns, use of influencers, etc. and of JLI's plan to grow the youth market.<br>FRE 403: There is no prejudice to JLI to introduce evidence of their disregard to prioritize reducing use of vaping by teens and the evidence is more probative than harmful.<br>MIL #1:  Plaintiff incorporates the preceding responses.<br>MIL #5 (80:24-81:24):  The scope of these designations includes testimony not designated by plaintiff.  In addition, Plaintiff incorporates the preceding responses made to MIL #5.<br>CD: The question is not compound and instead asks whether he recalls now (based on | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | his email dated in 2018) that JLI rejected the terms of the settlement to reduce teen vaping. A single, clear question is asked. LF/FRE 602 (81:20-24): The question asks purely for Olin's recollection of whether JLI rejected the terms of the settlement to reduce teen vaping, after being refreshed with his email. There is no lack of foundation or personal knowledge. The entire substance of the question is limited to the statements written by Olin, prior to the filing of any lawsuit alleging personal injuries. | |
| 64. | Page 00082: 01: THE WITNESS: I -- I don't know the 02: specific details. I -- I understand from this 03: there were different parts of the agreement 04: between CEH and the vaping companies. | Objecting Party's Position: Hearsay (Rule 802); <br><br> FRE 401/402; FRE 403 (88:14-90:7): Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading. Testimony about schools in California are not relevant to B.B.'s claims and is distracting, confusing, and misleading. <br><br> Compound (form) (89:24-90:7) <br><br> Proposing Party's Position: CD (90:9-11): Here, Olin is asked a single question, not compound. The question is whether he attached the articles referenced in the email with the link referenced. H: Hearsay does not apply. Olin is not asked about the contents or statements in the articles; only whether they are attached to his email. FRE 401/402: The articles that Olin refers to in his emails are from high schools talking about the widespread use of JUUL | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | among their students. This is directly relevant to JLI's knowledge of or at least had access to gaining knowledge that minors were obtaining JUUL. FRE 403 (90:9-17): Olin's responses that he doesn't know if he linked the documents to the email and that ███████ ██████████ s hardly prejudicial.  The objection lacks merit.  In any case, the probative value outweighs  any alleged prejudicial effect. | |
| 65. | Page 00088: 14: BY MR. WATTS: 15:  Q-- and let's talk about 14203, which is 16:  the e-mail we just read from. 17:  MR. WATTS: Now, put up 034 on the left 18:  and 035 on the right. 19:  BY MR. WATTS: 20:  Q  Now, this is the e-mail that you wrote 21:  on April the 21st of 2018, and you wrote it to 22:  Nick Pritzker, Isaac Pritzker, and Joby Pritzker, 23:  right? 24:  A  There's no e-mail header here, but I see 25:  that that's what the first paragraph is -- is (continued page 00089) | Objecting Party's Position: Hearsay (Rule 802);  FRE 401/402; FRE 403 (88:14-90:7): Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading . Testimony about schools in California are not relevant to B.B.'s claims and is distracting, confusing, and misleading.  Compound (form) (89:24-90:7)  Proposing Party's Position: H: Olin is only asked about statements he authored in an email dated 4/21/20218 (Ex. 14203).  He stated his view of the investment in JUUL "become[ing] increasingly challenging" (89: 2-6); and expressed his concern that he "always believe that the addictive effects of nicotine coupled with perception that vaping is harmless" would lead to non-smokers using JUUL.  He comments also about the  extent to which JUUL has "exploded in colleges, high schools and even middle schools."    These are Olin's statements; not those made | **Sustained.**  This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | Page 00089:<br>01: addressed to.<br>02: Q You say: "Recently our investment in<br>03: Juul has become increasingly challenging for me."<br>04: Why was it challenging for you?<br>05: A I -- I think that's listed out in the<br>06: e-mail.<br>07: Q Now, you said that: "While I appreciate<br>08: that the initial promise of the product was to<br>09: provide an alternative to cigarette smokers, what<br>10: has transpired in the market has surpassed my<br>11: greatest fears. I always believed that the<br>12: addictive effects of nicotine coupled with the<br>13: perception that vaping is harmless and the<br>14: product's iPhone-like design would lead to market<br>15: adoption in non-smokers. I also feared that this<br>16: product would appeal to millennials, and after | by another party.<br>FRE 401/402: Olin admits that he wrote the statements read into the record. This evidence of an made by a principal of JUUL's major investor is relevant to notice, knowledge available to JLI that minors and non-smokers would likely access JUUL. This is also relevant to the jury's consideration of JLI's motive and plan to grow the youth market.<br>FRE 403 (88:14-90:7): The testimony is not prejudicial to JUUL; instead it is evidence of the readily apparent expectation of JUUL in the marketplace, particularly being marketing with an iPhone-like design as noted in Olin's' email.<br>CD (89:24-90:7): None of the questions are compound. Each question in this designation is a single question. He is asked whether he wrote the statements in the email. He is separately asked why JUUL was challenging to Olin. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 17:  years of declining cigarette use among youth, lead<br>18:  to a new generation of nicotine addicts. What I<br>19:  did not anticipate was the extent to which vaping,<br>20:  and JUUL in particular, would explode in colleges,<br>21:  high schools and even middle schools."<br>22:  Is that what you wrote on that day?<br>23:  A That is what I wrote.<br>24:  Q  Now, Mr. Olin, in the next paragraph,<br>25:  you referenced a couple of private high schools.<br>(continued page 00090)<br><br>Page 00090:<br>01:  You say:  "Within the last few months Urban and<br>02:  Lick-Wilmerding, two leading private high schools<br>03:  in San Francisco, published articles about<br>04:  widespread use of JUUL among their student bodies<br>05:  on the campuses."<br>06:  And you attach those articles with a<br>07:  link, right? | | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
| 66. | Page 00090:<br>09: THE WITNESS: Yeah, I -- I'm not sure if<br>10: they are linked, but I see the -- the references<br>11: to them.<br>12: BY MR. WATTS:<br>███████<br>███████<br>███████<br>███████<br>███████ | <u>Objecting Party's Position</u>: Compound (form) (90:9-11); Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403 (90:9-17): Witnesses personal feelings on investment in JLI are not relevant to B.B.'s claims and are unfairly prejudicial and misleading . Testimony about schools in California are not relevant to B.B.'s claims and is distracting, confusing, and misleading.<br><br><u>Proposing Party's Position</u>: CD (90:9-11): Here, Olin is asked a single question, not compound. The question is whether he attached the articles referenced in the email with the link referenced. H: Hearsay does not apply. Olin is not asked about the contents or statements in the articles; only whether they are attached to his email.<br>FRE 401/402: The articles that Olin refers to in his emails are from high schools talking about the widespread use of JUUL among their students. This is directly relevant to JLI's knowledge of or at least had access to gaining knowledge that minors were obtaining JUUL.<br>FRE 403 (90:9-17): Olin's responses that he doesn't know if he linked the documents to the email and that ███████ ███████ is hardly prejudicial. The objection lacks merit. In any case, the probative value outweighs any alleged prejudicial effect. | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |
| 67. | Page 00091:<br>03: BY MR. WATTS:<br>04: Q Okay. And then you did a Google search | <u>Objecting Party's Position</u>: Compound (form); Hearsay within hearsay; FRE 401/402; FRE 403: references to google searches re senators "urging FDA" to take action irrelevant and unduly | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05: of JUUL and saw articles about Dick Durbin and<br>06: other senators urging the FDA to take action on<br>07: JUUL e-cigarettes, "JUUL e-cigarettes gain<br>08: popularity among youth, but awareness of nicotine<br>09: presence remains low," "E-cigs like JUUL are<br>10: undermining efforts to keep kids away from<br>11: tobacco," senators say"; and the last one is,<br>12: "Young people apparently don't realize these<br>13: popular crème brulee e-cigarettes contain<br>14: nicotine."<br>15: Is that right? | prejudicial; lack of foundation<br><br>Proposing Party's Position:<br>CD: There is no compound question. Plaintiff's Counsel read several statements written by Olin into the record and asked if he read them correctly. The witness agreed. There was nothing confusing about the questions and the witness did not ask for clarification.<br>HH: There is no double hearsay. The statements were written by Olin.<br>403: probative value outweighs any alleged prejudicial effect. | |
| 68. | Page 00091:<br>17: THE WITNESS: Yes, I see that.<br>18: BY MR. WATTS:<br>19: Q And in addition to what you pulled off<br>20: of Google, you then offered five anecdotes.<br>21: MR. WATTS: And if we could blow that<br>22: up.<br>23: BY MR. WATTS:<br>24: Q I want to ask you about these. The | Objecting Party's Position:<br>Compound (form) (91:17); Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403 (91:17-92:16): testimony about news articles and anecdotal evidence is not relevant to B.B.'s claims and is confusing and misleading and unfairly prejudicial.<br><br>Proposing Party's Position:<br>CD (91:17): Olin answered that he sees the statements read into the record from his email by Plaintiff's Counsel. The response was not made to a compound question.<br>H: Again, the hearsay objection is | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25: first anecdote says: ███████ (continued page 00092) Page 00092: 01: friends found a JUUL on the street, stole pods 02: from family members, bought pods on Haight, and 03: used it until we confiscated it." 04: Did I read that right? 05: A Yes. 06: Q Who is ████? 07: A ██████ 08: Q And at the time you wrote this in 2018, 09: was ████ ██████? 10: A I would have to go back and look at the 11: calendar. When – when was this -- 12: Q April of -- 13: A -- again? 14: Q April of 2018. 15: A That sounds about right, ██████ 16: ██████ when I sent this. | misplaced. The witness testified about the findings he made from a google search and reported that an article about senators urging the FDA to take action on JUUL. Olin was asked whether his statements in the email were read correctly. He was not asked about the substance of the article he quoted and so no out of court statements are at issue. FRE 401/402: The articles Olin found reporting that JUUL gained popularity among youth while awareness of nicotine is low (91: 4-15; 17) and Olin then testifying about his writing that ████ ████ friends found a JUUL on the street, stole pods from family, and used JUUL is relevant to showing knowledge and notice of youth access to JUUL which continued now 3 years post JUUL first being on the market. FRE 403 (91:17-92:1): The example that Olin gives regarding access to JUUL by middle schoolers based on ██████ experience at school is not prejudicial but is a real world example of minor access to JUUL, which is now 3 yrs. after it was first sold. This topic is relevant to B.B.'s case given her age and relevant to proving Plaintiff's allegations that JLI should have had knowledge of minors access JUUL to rebut JLI's evidence suggesting that it acted responsibility. | |
| 69. | Page 00093: 02: BY MR. WATTS: 03: Q Okay. ████ ██████, in 2018, ████? 04: ██████? 05: A In 2018, she ██████ | Objecting Party's Position: Hearsay (Rule 802); FRE 401/402; FRE 403 (93:2-13): second hand anecdotal evidence from ██████ is not relevant to B.B.'s claim and is unfairly prejudicial, misleading, and confusing Compound (form); Hearsay within | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 06:  Q  She hosted a -- <br> 07:  A  ▇▇▇▇ <br> 08:  Q  Okay.  " ▇ <br> hosted a camping trip in <br> 09:  Nacasio last <br> weekend.  One of her <br> friends reported <br> 10:  that another friend <br> woke up in the middle of <br> the <br> 11:  night in a panic that <br> his JUUL was out of <br> power <br> 12:  and didn't know <br> what he would do in the <br> morning." <br> 13:  What were you <br> trying to express here? | hearsay; Lacks Foundation/FRE 602 (93:8-13 <br><br> Proposing Party's Position: <br> H: This testimony relates to Olin informing Pulitzer that ▇ ▇▇▇▇ told him about a friend suffering a panic attack due to not being able to find JUUL during a camping trip.  The testimony is not offered for the truth of the matter but instead offered for notice of another circumstance of teen use of JUUL.  FRE 401/402: Evidence of an additional experience in the Pritzker family regarding the availability of JUUL to minors, which is based on ▇▇▇ ▇▇ is relevant to show notice/knowledge to JLI of minors accessing JUUL.  Notably, ▇▇▇▇▇ both had circumstances to share regarding friends personal experiences with JUUL.  This evidence is also relevant to showing the extent of and reach of JLI's marketing.  FRE 403 (93:2-13): Testimony about personal experiences within the ▇▇▇▇▇ is relevant to showing evidence of knowledge/notice to Defendant of continued access to JUUL by minors, even 3 years post introduction into the market.  CD: None of the questions are compound. They each consist of a single, clear question. The witness never asked for clarification.  HH: The description made by Olin in the email of the event occurring with ▇▇ friend during the camping trip is offer to show the fact of the matter and not the truth of the matter.  LF/FRE 602 (93:8-13):  Olin does not claim to have personal knowledge of the event involving the panic attack experienced | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | ██████ friend, and is not offering it for the truth of the matter. Instead Olin testified that he relayed the story to Pritzker. The fact that Pritzker was aware of the personal experiences, whether true or not, of the use of JUUL in these contexts is relevant to showing the knowledge to Defendant of the continued access by minors (in 2018) to JUUL. | |
| 70. | Page 00093: 16: THE WITNESS: I'm not sure what I was 17: getting at. ████ must have shared this story with 18: me, and I decided to share it with the other 19: family members. I was passing it along. 20: BY MR. WATTS: 21: Q Okay. Third bullet point: "In a recent 22: conversation with a couple of Stanford students 23: about cannabis use on campus, unprompted, they 24: switched the conversation to JUUL and said their 25: friends who started vaping turn to cigarettes when (continued page 00094)  Page 00094: 01: they are out of pods. I hear this is true at 02: Urban as well." 03: Is that what you wrote? | <u>Objecting Party's Position</u>: Compound (form); Lacks Foundation/FRE 602 (93:16-19); Hearsay (Rule 802); Hearsay within hearsay;  FRE 401/402; FRE 403 (93:16-94:3): Second hand anecdotal evidence from ████ is not relevant to B.B.'s claim and is unfairly prejudicial, misleading, and confusing.  <u>Proposing Party's Position</u>: Ex. 14203 Olin wrote about (1) hearing it was true at Urban that students who vaped, turned to cigarettes (93:21-94:3); (2) during Olin's meeting at Alta the CEO asked him questions to explain how Jilt was responding to "JUUL Ing" replacing the verb, "vaping." CD: Each question asked in this designation is a single question; there is no compound or confusing question asked and the witness does not ask for clarification. LF/FRE 602 (93:16-19): Olin reports information he learned from ████ that a ████ work up in the middle of the night in a panic that his JUUL was out of power. Olin documents the foundation for conveying this statement which is based on information provided by ████. H and HH: The statement is an | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | exception under 803 (6) - this was a record of an event on a matter the witness once knew about but no longer recalls. And, further, the question asked doesn't call for hearsay. Instead, he is asked "What [he was] trying to express?" by conveying this information. FRE 401/402: Testimony about learning of minors use of JUUL that were close to the Pritzker's family's experience is relevant to JLI's knowledge of the widespread use of JUUL by minors, yet failed to take remedial action. FRE 403 (93:16-94:3): Here, Olin testifies that he was passing along the information he learned from ▮▮▮ and in the next question 93:21-94:3 asked whether he wrote the statement in his email regarding students at Urban who vaped turned to cigarettes. The testimony is not prejudicial, but instead is relevant to convey reports of real-world experiences of the problems with vaping by youth. | |
| 71. | Page 00094: 05: THE WITNESS: Yes. 06: BY MR. WATTS: 07: Q ▮▮▮▮▮ ▮▮▮▮▮ 08: ▮▮▮▮▮ | <u>Objecting Party's Position:</u> Hearsay (Rule 802); Hearsay within hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403: second hand anecdotal evidence from ▮▮▮ ▮▮▮ is not relevant to B.B.'s claim and is unfairly prejudicial, misleading, and confusing <br><br> <u>Proposing Party's Position:</u> H; HH: The testimony is not hearsay or HH. Olin admits to writing the email. His failure to recall how he learned about the situation at Urban is exception under 803 (5). <br><br> LF/FRE 602: There is no foundational issue; the witness authored the email at issue. | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | FRE 401/402; FRE 403: Plaintiff incorporates the preceding objections. | |
| 72. | Page 00094:<br>10: THE WITNESS: I don't recall the source<br>11: for the Urban piece.<br>12: BY MR. WATTS:<br>13: Q Okay. The fourth bullet point says:<br>14: "At our meeting at Alta" --<br>15: What is Alta?<br>16: A Alta was a startup that was<br>17: manufacturing electric powered motorcycles.<br>18: Q Okay. "At our meeting with Alta, the<br>19: CEO asked us about our investments in Juul,<br>20: explaining that he recently learned his<br>21: 15-year-old is vaping. Interestingly, while he<br>22: said it was not a JUUL device, he looked to Isaac<br>23: for an explanation of how the company is<br>24: responding as," quote, "JUULing," close quote,<br>25: "has replaced the verb," quote, "vaping," close<br>(continued page 00095)<br><br>Page 00095:<br>01: quote, "among youth." | <u>Objecting Party's Position:</u> Lacks Foundation/FRE 602 (94:10-11); FRE 401/402; FRE 403 (94:10-95:3): Testimony relaying secondhand anecdotal evidence lacks foundation and is not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading.<br><br>Hearsay (Rule 802) (94:12-95:3)<br><br><u>Proposing Party's Position:</u> These designations relate to Olin's personal meeting at Alta with their CEO, who asked Olin questions to explain how JLI was responding to "JUUL Ing" replacing the verb, "vaping."<br>LF/FRE 602 (94:10-11): No foundational issue exists when Olin testified the statement made by the CEO was to him directly. FRE 401/402: Olin having been told that the term, "JUULing", has replaced "vaping" is relevant to the predominance of JUUL in the market, evidence of the effects of viral marketing, and supports Plaintiff's negligent and intentional misrepresentation claims.<br>FRE 403 (94:10-95:3): The topic of "JUULing" being in use and the inquiry by an adult directly to Olin asking what JLI was doing to address it, is related to the jury's consideration whether JLI acted reasonably in terms of its marketing and taking remedial action to minimize exposure of JUUL to youth. The relevance far outweighs any prejudicial effect. H (94:12-95:3): The testimony as to what the Alta CEO asked directly to Olin is not hearsay; he | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: Is that what you described in this<br>03: e-mail to Nick Pritzker and your brothers-in-law? | was the recipient of the statement and falls within exception 803(1) - describing an event made immediately after he heard it. | |
| 73. | Page 00095:<br>05: THE WITNESS: That's what I wrote.<br>06: BY MR. WATTS:<br>07: Q And in the fifth bullet point, we've<br>08: already gone over, and that's the CEH lawsuit, the<br>09: offer by 30 vaping companies to accept a provision<br>10: in the settlement, 3.2.3, to reduce use of vaping<br>11: among teens, and Juul rejected the term.<br>12: Where did you learn that Juul rejected<br>13: the term? | Objecting Party's Position:<br>Hearsay (Rule 802); FRE 401/402; FRE 403 (95:5-13); Compound (form); Assumes facts not in evidence (form); Asked & Answered (form); Lacks Foundation/FRE 602: testimony about California Prop 65 lawsuit is not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading, and witness lacks foundation about details of settlement.<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br>Proposing Party's Position:<br>H: This testimony is not hearsay. Olin acknowledges having written the description of his meeting with Alta's CEO and the next question refers to Olin's statement | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | documented in the email that JLI rejected the provision of the CEH settlement to reduce use of vaping amount teens.<br>FRE 401/402:; FRE 403 (95:5-13): Plaintiff incorporates the objections stated above in response to this same line of inquiry.<br>CD: There is a single question asked -how Olin learned that JUUL rejected that term of the settlement. The objection is meritless.<br>AF: No facts are assumed.  Olin had sufficient knowledge at the time he wrote the email of JUUL rejecting the term of the settlement to reduce use of vaping among teens due to his role as board member and he reported his understanding of JUUL rejecting that term at or near the time he wrote the email and had that understanding.<br>AA:  Although this topic was previously addressed, it was not done so in this context.  The witness initially testified he did not know which companies settled on which terms.  (77: 4-6; 77:8-10 (" I don't recall. I think there were a bunch of companies on their - their list. I'm not sure who did what.").  Here  he is shown his own writing where he documented that JUUL did reject the term. It is proper to refresh his recollection with his statement.<br>LF/FRE 602:  No foundational issue exists.  Olin has a position of authority with CEH at the time and previously testified about his awareness of the lawsuit filed against the vaping companies.<br>MIL #1; MIL #5 both denied (see above) | |
| 74. | Page 00095: | Objecting Party's Position: Compound (form); Assumes facts | **Sustained.**  This line of questioning is based on |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: THE WITNESS: Yeah, that bits of -- that 17: part is a bit confusing to me. Now, I assume it 18: was with people at CEH, and yet my understanding 19: is that CEH settled with the -- with the company. 20: And there was also something about FDA regulations 21: that may have preempted that section. So I can't 22: remember all the details, but it was all CEH 23: conversations, I suppose. | not in evidence (form); Asked & Answered (form); Hearsay (Rule 802); Lacks Foundation/FRE 602; FRE 401/402; FRE 403: testimony about California Prop 65 lawsuit is not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading, and witness lacks foundation about details of settlement.<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br><u>Proposing Party's Position</u>: This designation includes Olin's answer to the question asking where he learned JUUL rejected that term of the settlement. Plaintiff incorporates the same preceding responses to CD; AF; AA; H; LF/FRE 602; FRE 401/402; FRE 403; MIL #1; MIL #5 | hearsay that is offered for the truth of the matter. |
| 75. | Page 00096: 13: BY MR. WATTS: 14: Q Okay. Now, let's keep going on this | <u>Objecting Party's Position</u>: Hearsay (Rule 802); FRE 401/402; FRE 403: testimony about California Prop 65 lawsuit is not relevant to B.B.'s claims and is | **Sustained.** This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15: document. After your anecdotes, you continue. In<br>16: the bottom half of the page, you say: "If we're<br>17: going to continue to -- if we're going to continue<br>18: to own stock in this company and be able to stand<br>19: by the premise that their goal is purely harm<br>20: reduction, I believe the company should take<br>21: aggressive action. They should adopt the<br>22: provisions in Section 3.2.3 of the attached<br>23: consent judgment, and also" -- and then you list<br>24: five things that you believe the company should do<br>25: to meet its core values, right? | unfairly prejudicial, confusing, and misleading. Testimony about witness's personal beliefs as to what JLI should do is not relevant to B.B.'s claims and is unfairly prejudicial and confusing.<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br><u>Proposing Party's Position</u>:<br>H:  There is no hearsay in Olin's written statement in Ex. 14203 describing his beliefs as to the action JLI should take if the Pritzker's are going to continue investing in JLI - including that "They should adopt the provisions [the Consent Judgment to reduce teen vaping].  The statement in this document is Olin's personal opinion.<br>FRE 401/402; FRE 403:  Olin acknowledges he wrote the statement and his state of mind as to the belief that JLI must take action to reduce teen vaping due to concerns about their investment in JLI given the history is relevant to the issues of knowledge/notice of | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | JLI of the predominance of JUUL in the market and its availability to minors. The testimony is relevant to rebut evident suggesting JLI acted responsibility in other contexts.  See Plaintiff's Opposition to  MIL #5.The testimony is not prejudicial because it provides the jury with documented evidence in 2018, 3 yrs. after JUUL was introduced in the market, that a principal of one of JLI's main investors still had concerns about the impact of JUUL on minors. This testimony coupled with earlier testimony by the same witness documenting concerns on the same subject matter within months after JUUL was first marketed, is evidence of repeated recognition and concern by JLI's investor that teen vaping was an issue that JLI should address.<br>MIL #1:  Motion was denied. This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain." | |
| 76. | Page 00097:<br>02:  THE WITNESS: Can I take a second to<br>03:  look over this piece?<br>04:  BY MR. WATTS:<br>05:  Q  Sure. | Objecting Party's Position: Hearsay (Rule 802); FRE 401/402; FRE 403: Testimony about witness's personal beliefs as to what JLI should do is not relevant to B.B.'s claims and is unfairly prejudicial and confusing.<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of | **Sustained.**  This line of questioning is based on hearsay that is offered for the truth of the matter. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.] <br><br> Proposing Party's Position: The objections to this testimony are meritless.  Here, the witness simply asks to look at the Exhibit. Nonetheless, in an abundance of caution, Plaintiff incorporates the preceding responses to H; FRE 401/402; FRE 403; MIL #1; MIL #5: | |
| 77. | Page 00097: <br> 06: A  (Peruses document.)  Yeah. Okay. <br> 07: Q  Now, the first thing that you said the <br> 08:  company should do is to eliminate flavored <br> 09:  versions, right? | Objecting Party's Position: Hearsay (Rule 802); FRE 401/402; FRE 403 (97:6-9): witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing; FRE 602/improper opinion <br><br> [MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.; MIL 5: JLI's online age verification processes, including contentions that JLI's online age verification was insufficient to prevent youth access, is irrelevant and unfairly prejudicial since B.B. (and her identified social sources) never | **Overruled.** Not being offered for the truth of the matter, but instead goes to the company's notice and knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | purchased JUUL products online. Injecting these issues into the case would waste time with a mini trial on online age verification, which changed over time, and would require complex additional evidence, including witnesses and documents, on an irrelevant issue.]<br><br>Proposing Party's Position:<br>H: Hearsay does not apply; this is Olin's personal statement.<br>FRE 401/402: Testimony of Olin conveying directly to Pritzker his opinion that JUUL should remove flavors is relevant to Plaintiff's claims that flavors attracted youth, which in this instance is an acknowledgement by Olin made directly to Pritzker that JLI should take action as late as 2018 to remove flavors from the market. This same problematic trait of vaping products was identified by the FDA, eventually resulting in a directive to all vaping companies to remove flavored products from the market, due to teen use.<br>FRE 403 (97:6-9): For the reasons stated above, Olin's suggestion to remove flavored products is not prejudicial and its probative value outweighs any conceivable claim of prejudice. In fact, JLI subsequently took such action.<br>602: proper foundation, Olin's opinion<br>MIL #1; MIL #5 (97:6): Plaintiff incorporates the same preceding objections to MIL #1 and #5. | |
| 78. | Page 00097:<br>11: THE WITNESS: Yes.<br>12: BY MR. WATTS:<br>13: Q  You wrote this in April of 2018, and the | Objecting Party's Position:<br>Hearsay (Rule 802) (97:11-22)<br><br> FRE 401/402; FRE 403 (97:11 & 97:18-22): witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing. | **Overruled**. Not being offered for the truth of the matter, but instead goes to the company's notice and knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 14:  JUUL has been for sale for almost three years at<br>15:  this point, right?<br>16:  A  I think that's right, if you said it<br>17:  launched in June of 2015.<br>18:  Q  And in July of 2015, your wife had said,<br>19:  "I personally think that banning fruity flavors<br>20:  would be a good place to start.  Clearly teen<br>21:  oriented, no?"<br>22:  Do you remember that? | Vague and Ambiguous (form) (97:11); Lacks Foundation/FRE 602 (97:12-2); Asked & Answered (form) (97:18-22)<br><br>Proposing Party's Position:<br>H (97:11-22): Hearsay is not applicable; Olin acknowledges the timing of his suggestion to remove flavored JUUL products is 3 yrs. after its launch.<br>FRE 401/402: The timing of Olin's recognition of the need to remove flavored JUUL products from the market and is suggestion to Pritzker to do so, which is made in his capacity of a company with a financial interest in JL is relevant to demonstrate JLI's available notice of  the use of JUUL among teens.  This subject matter is relevant to Plaintiff's claims that flavored JUUL products substantially contributed to Plaintiff's use of JUUL and had flavored products not been sold, that B.B. may not have become addicted to JUUL.<br>FRE 403 (97:11 & 97:18-22): This testimony, which includes confirming his documenting in an email to Pritzker that  his wife conveyed in 7/2015 her personal view that 'banning fruity flavors would be a good place to start" is not prejudicial. Instead, the information made available to Pritzker as a BOD member of JLI of the early notice and subsequent notice 3 years later of fruity flavors being attractive to youth is relevant to Plaintiff's claims that JLI had notice had that JUUL's flavors could/would attract youth.<br>V (97:11): The objection is to Olin's clear answer of " Yes" where he acknowledges have suggested the elimination of flavors in 2018.  The objection | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
|  |  | lacks merit.<br>LF/FRE 602 (97:12-2): Plaintiff's counsel presumes the objection is meant to apply to lines 12-22. There is adequate foundation for Olin's acknowledge of the timing of suggesting that JLI remove its flavored products from the market (97: 12-17). As to the designations at 97:18-22 and subsequently is response (97-24-25), the witness readily agrees that he is aware that he documented in an email to Pritzker (Ex. 14042) that his wife made the same suggestion 3 years early. Olin conveyed information provided by his wife, told to him at or near the time he recorded it and there is sufficient foundation for the statement and he admits to remembering the email. See also 803(1).<br>AA (97:18-22): There are no facts assumed by Olin documenting his wife's recommendation. The statement was written at or near the time of the event described and falls under 803 (1). |  |
| 79. | Page 00097:<br>24: THE WITNESS: I remember the -- yes, the<br>25: e-mail we read earlier. | <u>Objecting Party's Position:</u><br>Asked & Answered (form); Hearsay (Rule 802); Lacks Foundation/FRE 602; FRE 401/402; FRE 403: witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing.<br><br><u>Proposing Party's Position:</u><br>Plaintiff incorporates the preceding responses to MT; AA; H; LF/FRE 602; FRE 401/402; FRE 403. | **Overruled**. Not being offered for the truth of the matter, but instead goes to the company's notice and knowledge. |
| 80. | Page 00098:<br>06: BY MR. WATTS:<br>07: Q So in the middle on 14042, on July 3rd, | <u>Objecting Party's Position:</u><br>Asked & Answered (form): witness's wife's suggestion in 2015 has been covered multiple times. | **Overruled**. Not being offered for the truth of the matter, but instead goes to |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: 2015, your wife suggests "… banning the fruity<br>09: flavors would be a good place to start. Clearly<br>10: teen-oriented, no?"<br>11: And that took place in July of 2015, and<br>12: you're suggesting it again in April of 2018. Is<br>13: that right? | Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing.<br><br><u>Proposing Party's Position:</u><br>AA:-he is quoting from the email written by Olin.<br><br>H: Hearsay is not applicable. Olin's documentation of his wife's comment to him in 2015 that JUUL's fruity flavors should be removed from the market falls with 801(1).<br><br>FRE 401/402; FRE 403: Plaintiff incorporates the preceding objections. | the company's notice and knowledge. |
| 81. | Page 00098:<br>15: THE WITNESS: Yeah, I see the e-mails<br>16: here.<br>17: MR. WATTS: Okay. Now raise that up a<br>18: little bit.<br>19: BY MR. WATTS:<br>20: Q And here's my question: In your e-mail<br>21: in April of 2018, you're asking that the company<br>22: should eliminate flavored versions. You write<br>23: that more than two and a half years after your<br>24: wife suggested it in July of 2015, right? | <u>Objecting Party's Position:</u><br>Asked & Answered (form): witness's wife's suggestion in 2015 has been covered multiple times.<br><br>Hearsay (Rule 802);<br><br>FRE 401/402; FRE 403: witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing.<br><br><u>Proposing Party's Position:</u><br>Olin is asked only whether he agrees that his wife's comments as he documented them in7/ 2015 were 2 1/2 years after his suggestion in 4/2018 to remove JUUL's flavors. None of the following objections make sense and are meritless. AA; H; FRE 401/402; FRE 403 | **Overruled**. Not being offered for the truth of the matter, but instead goes to the company's notice and knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | |
| 82. | Page 00099:<br>02: THE WITNESS: Yes, that's the timeline.<br>03: BY MR. WATTS:<br>04: Q And in the two and a half years after<br>05: Regan Pritzker said, "I think banning the fruity<br>06: flavors would be a good place to start from a<br>07: regulation standpoint. Clearly teen-oriented,<br>08: no?" did Juul ever stop selling flavored versions<br>09: of its product? | Objecting Party's Position:<br>Asked & Answered (form): witness's wife's suggestion in 2015 has been covered multiple times.<br><br>Hearsay (Rule 802);<br><br>Lacks Foundation/FRE 602: witness admits he is just repeating things he has no personal knowledge about<br><br>FRE 401/402; FRE 403: witness's personal opinions on flavors are not relevant to B.B.'s claims and are unfairly prejudicial, misleading, and confusing<br><br>Proposing Party's Position:<br>AA: There are no facts assumed in Counsel's question asking whether JUUL stopped selling flavored products between 7/2015 and 4/2018. The objection lacks any reasonable basis.<br><br>H: Hearsay doesn't apply. The witness is asked whether he has knowledge if JUUL removed flavors during that time.<br><br>LF/FRE 602: There is no foundational issue. Olin is asked what he knows about the timing of JUUL removing its flavored products. And at 99:3 he admitted the timeline regarding the date of his wife's suggestion that JUUL remove its flavors and the date of his suggestion.<br><br>FRE 401/402; FRE 403: Plaintiff incorporates the preceding objections. | **Overruled**. Not being offered for the truth of the matter, but instead goes to the company's notice and knowledge. |
| 83. | Page 00099: | Objecting Party's Position:<br>Hearsay (Rule 802) (99:11-24); Asked & Answered (form); | **Sustained** (99:11-17). Lack of foundation. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 11: THE WITNESS: I don't know. I wasn't<br>12: tracking them that closely. I think I'm<br>13: reiterating things I read in the media, and the --<br>14: if this is where I reference the letters to the<br>15: senators, it was something they brought up, so I'm<br>16: just kind of repeating what I -- what I heard.<br>17: BY MR. WATTS:<br>18: Q Now, the second bullet point is:<br>19: "Include warning labels on the package about the<br>20: level of nicotine in the product, that nicotine is<br>21: highly addictive, and that JUUL delivers so much<br>22: nicotine so rapidly that new users become addicted<br>23: quickly."<br>24: Did I read that right? | Lacks Foundation/FRE 602: witness repeatedly admits he lacks personal knowledge and is just repeating what he read in the news;<br><br>FRE 401/402; FRE 403 (99:11-16): witness's personal suggestions on labeling is not relevant to B.B.'s claims and are confusing, misleading, and unfairly prejudicial.<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim. (99:17-24)]<br><br><u>Proposing Party's Position</u>:<br>H (99:11-24): Hearsay doesn't apply. Olin testified from his personal recollection that he doesn't know if JLI removed its flavored products from the market and explains why. The subsequent question at 99: 18-24 is Counsel's quote from Olin's statement in the 4/2018 email regarding his suggestion that the warning should state "nicotine is highly addictive, . .. " So hearsay does not apply.<br><br>AA: There are no facts assumed in the statement he wrote; he is identifying his thoughts about JUUL's warning.<br><br>LF/FRE 602: Olin's statements written in his 4/2018 email are his own; there is no foundational issue.<br><br>FRE 401/402: This testimony is relevant to Plaintiff's claims that JLI didn't adequately warn of JUUL's addictiveness. | **Overruled** (99:18-100:1). Not offered for the truth of the matter, but instead goes to the company's notice and knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | FRE 403 (99:11-16): Testimony by Olin explaining why he doesn't know when JLI removed it flavored products is not prejudicial. The jury should be permitted to determine whether they would reasonably expect a principal of a company having a financial interest in JUUL, who documented his concerns about JUUL's flavored products, to know whether the flavored products were removed from the market.<br><br>MIL #1 (99:17-24):  MIL #1:  This subject matter is relevant to Pltf's claims for the reasons in Pltf's Opp. to MIL #1 claiming B.B.'s warning claim is preempted, "even if preemption did apply, it would not limit the scope of liability, evidence, or argument going to other dangers of nicotine, including . .. harm to the developing brain." | |
| 84. | Page 00100:<br>01:  THE WITNESS:<br>Yes, that's what I wrote. | <u>Objecting Party's Position</u>: Hearsay (Rule 802); FRE 602; FRE 401/402' FRE 403<br><br>[MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.]<br><br><u>Proposing Party's Position</u>:<br>Here, Olin acknowledges writing the statement regarding his suggestion about the contents of JUUL's warning about nicotine. Therefore, Plaintiff incorporates the preceding responses. | **Sustained** (99:11-17). Lack of foundation.<br><br>**Overruled** (99:18-100:1). Not offered for the truth of the matter, but instead goes to the company's notice and knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 85. | Page 00104: 06: Q Now, after you put those five 07: suggestions, you say: "I also want to be 08: transparent that I continue to support CEH and 09: follow their anti-teen vaping work closely. CEH 10: and other environmental health organizations will 11: likely target Juul, as they have become the market 12: leader and synonymous with teen vaping." 13: Is that what you said? | Objecting Party's Position: Hearsay (Rule 802); FRE 602/lack of foundation/speculation re CEH targeting Juul and Juul being synonymous w teen vaping<br><br>FRE 401/402; FRE 403: testimony about witness's involvement with CEH is not relevant to B.B.'s claims and is waste of time, unfairly prejudicial, and confusing.<br><br>Proposing Party's Position: Here, Olin is asked whether he wrote a statement in this same email conveying his expectation that CEH will likely target JUUL due to it now being "synonymous with teen vaping." At 97:15, the witness acknowledges writing the statement. This is not hearsay. Olin conveys his understanding and not statements made a third party.<br>602: adequate foundation for olin's opinion based on personal knowledge<br>FRE 401/402; FRE 403: Olin conveying his understanding that the CEH could target JUUL due to Olin describing JLI as a "market leader and synonymous with teen vaping" is highly relevant to the perception of JLI in the marketplace by a person who is indirectly associated with JLI and has a financial interest in JLI, that the impact of JLI's marketing exposed JUUL to teens is relevant to Plaintiff's claims that JLI marketed JUUL in a manner that was appealing to youth and relevant to the jury's consideration of JLI's knowledge that its' marketing of JUUL unnecessarily exposed JUUL to teens and attracted them to use JUUL. | **Sustained.** Offered for the truth of the matter, and if it is not, then it lacks relevance to the claims in this case. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| 86. | Page 00104:<br>15:  THE WITNESS:<br>That's what I wrote. | Objecting Party's Position:<br>Hearsay (Rule 802);<br>FRE 401/402; FRE 403: testimony about witness's involvement with CEH  is not relevant to B.B.'s claims and is waste of time, unfairly prejudicial, and confusing.<br><br>Proposing Party's Position:<br>Olin acknowledged writing the statement describe above. Therefore, plaintiff incorporates the preceding responses | **Sustained.**  Offered for the truth of the matter, and if it is not, then it lacks relevance to the claims in this case. |
| 87. | Page 00108:<br>01:  BY MR. WATTS:<br>02:  Q  Yeah.  We -- we've already gone through<br>03:  the e-mails that you wrote to Nicholas Pritzker<br>04:  back in 2015, right? | Objecting Party's Position:<br>Misstates prior testimony (misleading) question refers back to exhibit without any reference to the exhibit; Asked & Answered (form); Lacks Foundation/FRE 602;<br><br>Proposing Party's Position:<br>Here, counsel refers to an email written by Plaintiff in 2015 to Pritzker for the purpose of showing him the next exchange involving a response from Pritzker that has not yet been discussed. Therefore, simply setting the context for the document that Counsel asks the witness about in the following designations is proper and none of the objections to 108: 1-4 and 108: 6 apply. These designations are appropriate in order to give appropriate context to the subsequent questions. | **Overruled.** Does not misstate testimony, as confirmed by the response. |
| 88. | Page 00108:<br>06:  THE WITNESS: We did.<br>07:  BY MR. WATTS:<br>08:  Q  Okay.  Now, after Isaac responds, if we | Objecting Party's Position:<br>Misstates prior testimony (misleading); Asked & Answered (form);<br><br>Lacks Foundation/FRE 602 (108:6): witness lacks foundation as to emails by others;<br><br>FRE 401/402; FRE 403 (108:6-11): testimony about witness's | **Sustained.**  This is an incomplete designation that consists of an attorney statement. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 09: go to the previous page, we have a response from 10: Nick Pritzker as well. It says: "Chris, adding 11: to what Isaac says" -- | personal feelings about Juul are not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading.<br><br>Hearsay (Rule 802); Designation Incomplete; Attorney commentary/exchange (not testimony) (108:7-11)<br><br>Proposing Party's Position:<br>MT: There is no mischaracterization, Counsel is simply putting the response made by Pritzker in this email chain into context based on the email. The witness does not correct him.<br>AA: No facts are assumed by Counsel. The objection is not appropriately based. Counsel quotes directly from the document.<br>LF/FRE 602 (108:6): There is no foundational issue; Pritzker is responding to an email from Olin, which Olin acknowledged writing.<br>FRE 401/402; FRE 403 (108:6-11): These objections are not applicable due to the lack of substance that counsel reads into the record in these lines on p. 108, which is "Chris, adding to what Isaac says."<br>H: The briefly quoted portion of this email is written by a party in response to the witness' comments. Hearsay is not applicable.<br>DI: The designation is completed in the next exchange on p. 109 as Counsel did not finish reading from the document.<br>AC (108:7-11): Counsel objectively describes the context in which Pritzker wrote the email. No form objection was made. | |
| 89. | Page 00109:<br>02: Q Sure. Now, he says, four lines down: | Objecting Party's Position:<br>FRE 602/lack of foundation (counsel simply reads document into record, no question or | **Overruled.** The statement is a non-hearsay party admission that goes |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 03: "We are all amazed by the phenomenon. Juul is now 04: cutting measurably into the smoking market, but 05: it's also turning out to be far more attractive 06: and apparently available to underage people than 07: we ever expected. It is a terrible unintended 08: consequence that you and Regan were right in 09: seeing." 10: Did I read that correctly? | foundation re witnesses knowledge re the statements) Hearsay (Rule 802); FRE 401/402; FRE 403: testimony about witness's personal feelings about Juul are not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading. <u>Proposing Party's Position:</u> Counsel read Pritzker's quote from the email into the record accurately, which Olin confirmed. This was the only question asked. Pritzker's email was directed to Olin, who received in the regular course of business. H: Hearsay is not applicable. Olin is a recipient of the email and Pritzker's email is a non-hearsay statement under 801 (d)(2). FRE 401/402: Pritzker's statement relates to a core issue in the case - JLI's knowledge of teen use. He admits in part, "JUUL is now cutting measurably in the smoking market, but it's also turning out to be far more attractive and apparently available to underage people. . . " "it is a terrible unintended consequence that you and Regan were right in seeing." FRE 403: The relevance of these statements far outweigh any prejudice. Pritzker expressed his personal thoughts about JUUL' presence in the market as it relates to teen use, and the statement was made prior to litigation being initiated. The jury should be permitted to consider this testimony in assessing liability and damages. | to the company's knowledge of underage use. |
| 90. | Page 00109: 12: THE WITNESS: You did. I'm not sure why | <u>Objecting Party's Position:</u> Hearsay (Rule 802); FRE 401/402; FRE 403 (109:12-19): testimony about witness's personal feelings about Juul are not relevant to | **Overruled.** The statement is a non-hearsay party admission that goes to the company's |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: he's making that specific statement, but I see it<br>14: there.<br>15: BY MR. WATTS: | B.B.'s claims and is unfairly prejudicial, confusing, and misleading.<br><br>Assumes facts not in evidence (form); Calls for Speculation (form);<br><br>Proposing Party's Position:<br>Olin admits to Counsel having accurately read Pritzker's email directed to Olin, which he agreed to. | knowledge of underage use. |
| 91. | Page 00110:<br>10: MR. WATTS: Let's put this on this left,<br>11: and let's put up Exhibit 18519 on the right. And<br>12: let's see if it helps us refer to what he's<br>13: referring to. | Objecting Party's Position:<br>Hearsay (Rule 802) (Pritzker not acting in capacity as BOD member); FRE 401/402; FRE 403 re references to consent decree, Prop 65; impact on family and reputation<br><br>Proposing Party's Position:<br>Ex. 18519 was written by a party, Nick Pritzker dated 5/5/2018 and contains admissions under 801 (d)(2) and therefore, are not hearsay. | **Overruled.** The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |
| 92. | Page 00112:<br>05: Okay. Now put 169 on the right side.<br>06: And put Exhibit 14203, Bates page 033, on the<br>07: left. There we go.<br>08: BY MR. WATTS:<br>09: Q Now, on the left, on April 22nd, he<br>10: says, "We are all amazed by the phenomenon." And<br>11: he talks about, "It's far more attractive and<br>12: apparently available to underage people than we | Objecting Party's Position:<br>Compound (form); Hearsay (Rule 802); FRE 401/402; FRE 403: testimony about witness's personal feelings about Juul and his "predictions" re youth usage of ENDS are not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading; asked & answered/cumulative<br><br>Proposing Party's Position:<br>H: Counsel quoted Pritzker's statements from Exs. 18519 and 14203 directly into the record regarding the popularity of JUUL to teens. These excerpts read into the record were written by a party, Nick Pritzker dated 5/5/2018 and in 7/2015 and contain admissions under 801 (d)(2) and contain | **Overruled.** The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: expected. It is a terrible unintended consequence<br>14: that you and Regan were right in seeing."<br>15: That's what he said on April 22nd,<br>16: right? | admissions regarding the attractiveness of JUUL to teens. Therefore, these statement are not hearsay.<br><br>CD: There is a single question directed to Olin - whether Counsel accurately read the excerpts written by Pritzker that were sent to Olin. The objection based on Compound question is not applicable.<br><br>FRE 401/402; FRE 401/402; FRE 403: Pritzker's statement relates to a core issue in the case - JLI's knowledge of teen use. He admits in part, "JUUL is now cutting measurably in the smoking market, but it's also turning out to be far more attractive and apparently available to underage people. . . " "it is a terrible unintended consequence that you and Regan were right in seeing."<br><br>FRE 403: The relevance of these statements far outweighs any prejudice. Pritzker expressed his personal thoughts about JUUL' presence in the market as it relates to teen use, and the statement was made prior to litigation being initiated. The jury should be permitted to consider this testimony in assessing liability and damages | |
| 93. | Page 00112:<br>18: THE WITNESS: Yeah, thank you for<br>19: highlighting. Okay, I see that.<br>20: BY MR. WATTS:<br>21: Q And then on May the 5th, he says: | <u>Objecting Party's Position:</u><br>Compound (form) (112:18-19); Hearsay (Rule 802); FRE 401/402; FRE 403 (112:18-113:2): testimony about witness's personal feelings about Juul and his "predictions" re youth usage of ENDS are not relevant to B.B.'s claims and is unfairly prejudicial, confusing, and misleading.<br><br>Misstates prior testimony | **Overruled.** The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 22: "You're right." About five lines down, highlight 23: that, "You're right. I never anticipated the 24: scale of the adoption of the device or its 25: popularity with kids. You and Regan saw the (continued page 00113)<br><br>Page 00113: 01: threat long before I appreciated it." 02: Do you see that? | (misleading);<br><br>Lacks Foundation/FRE 602 (112:20-113:2): witness lacks foundation to say what author of email meant or intended; lack of foundation re witness's and wife's basis for "predicting" increased youth usage<br><br>Proposing Party's Position:<br>CD (112:18-19): This designation is Olin's answer to the preceding question regarding Ex. 18519 and so the objection of compound does not apply. The question by Counsel was limited to asking the witness whether he agreed with the accurate reading of Pritzker's statements from the email. H: Counsel quoted Pritzker's statement in Ex. 18504 that he "never anticipated the scale of the adoption of the device or its popularity with kids. You and Regan saw the threat long before I appreciated it." This is considered to be an admission by a party opponent due to Pritzker's then current leadership role in JLI, as a BOD member and isa non-hearsay 801 (d)(2) statement. In addition, his belief as candidly expressed herein is a hearsay exception of 803(1) present sense impression, describing how he felt about the situation at the time.<br>FRE 401/402; FRE 403 (112:18-113:2): Pritzker's admission of the attractiveness by youth to JUUL is relevant to showing notice/knowledge/motive of JLI and is considered to be imputed to JLI or should have been conveyed at the time.<br>MT: Nothing is mischaracterized by Counsel; the objection is baseless. The exchange consists of reading directly from Pritzker's email and Olin's | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | acknowledgement he read it correctly.<br>LF/FRE 602 (112:20-113:2): Not applicable because Olin is a recipient of Pritzker's email to which Pritzker replied to Olin's observations.  Further, Olin is not asked in this exchange about the substance of Pritzker's statements. | |
| 94. | Page 00113:<br>05:  THE WITNESS:<br>Yeah, I do. | Objecting Party's Position:<br>Misstates prior testimony (misleading); Hearsay (Rule 802); Lacks Foundation/FRE 602; FRE 401/402; FRE 403; Incomplete designation (cutting off at 5)<br><br>Proposing Party's Position:<br>Olin responds that he saw the email as read by Counsel and after testifying "Yeah, I do." The remainder of the answer is non-responsive and has thus not been designated. JLI chose not to counter designate the exchange following. | **Overruled.**  The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |
| 95. | Page 00115:<br>22:  BY MR. WATTS:<br>23:  Q  He asks: "Whether the positive" --  he<br>24:  says:"Whether the positive outweighs the<br>25:  negative depends on a number of factors, including<br>(continued page 00116)<br><br>Page 00116:<br>01:  one's own point of view and experience, the<br>02:  long-term damage caused by using JUUL which is | Objecting Party's Position:<br>Misstates prior testimony (misleading); Hearsay (Rule 802);<br><br>Lacks Foundation/FRE 602: witness lacks foundation to say what author of email meant or intended<br><br> FRE 401/402; FRE 403: email author's speculation about long term effects of Juul are not relevant to B.B.'s claims and is unfairly prejudicial, misleading, and confusing.<br><br>Proposing Party's Position:<br>MT, H: These objections do not apply to Counsel quoting Pritzker's email he wrote admitting to the unknown long term damage caused by JUUL and how effective the efforts have been | **Overruled.**  The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 03:  obviously not yet known, and how effective efforts<br>04:  are to educate people about the dangers and to<br>05:  prevent access to underage users."<br>06:  Do you see that, sir? | to educate people about JUUL.  In response, Olin simply admits he sees those statements as read by Counsel.  Defense counsel does not identity the claimed incomplete designation.<br><br>LF/FRE 602: These do not apply; they lack merit. Olin is not asked to comment on the substance of Pritzker's email; only whether he sees the email as read into the record by Counsel.<br><br>FRE 401/402; FRE 403: Olin is asked whether he was provided long term studies on the use of JUUL before it was marketed.  In the following exchange he admits that he was not. since Pritzker, who was in a leadership role at This testimony is relevant to JLI's notice and motive in marketing JUUL and the foreseeability of harm due o the lack of investigation into long-term adverse effects of JUUL use. | |
| 96. | Page 00116:<br>09:  THE WITNESS:  I do. | <u>Objecting Party's Position</u>:<br>Misstates prior testimony (misleading); Hearsay (Rule 802) (116:9);<br><br>Lacks Foundation/FRE 602: witness testifies he has no foundation because he was uninvolved in the diligence process;<br><br>FRE 401/402; FRE 403 (116:9-13): speculative testimony about long term effects of Juul is not relevant to B.B.'s claims and is unfairly prejudicial, misleading, and confusing;<br><br><u>Proposing Party's Position</u>:<br>MT; H (116:9): The witness simply admitted that he sees the email prepared by Pritzker that | **Overruled.**  The statement is a non-hearsay party admission that goes to the company's knowledge of underage use. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Counsel read into the record by quoting to the document. There is no mischaracterization or lack of foundation under LF/FRE 602 given that Olin was not questioned about the basis of Pritzker's statements or any other substance.<br><br>FRE 401/402; FRE 403: Plaintiff incorporates the preceding responses. | |

### b. Defendants' Counter-Designations

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00031:<br>13: Q Okay. And -- and why is that?<br>14: A Based on my focus, my work at CEH, I<br>15: just -- I think that chemicals are -- are<br>16: generally harmful to human health. We should<br>17: avoid them at -- at all costs as much as possible. | Objecting Party's Position: CU; FED 401/402. Olin already testified at 31: 10-12 why he was not comfortable with the Pritzker family being involved in a nicotine delivery product. Further explanation is not relevant.<br><br>Proposing Party's Position: Counter provides full context to answer and the following designation refers directly to the counter; Designation at 31:18-21 requires counter for context. | **Sustained.** This testimony was designated to provide context to a designation that has been excluded. |
| 2. | Page 00100:<br>24: Q Mr. Olin, the second bullet point that<br>25: you say the company should do is include warning<br>(continued page 00101)<br><br>Page 00101:<br>01: labels on the package about the level of nicotine | Objecting Party's Position: LF FRE 602; CS; CU. This counter designation repeats the same line of previously designated testimony re: the 2nd bullet point listed by Olin in this email. The question is cumulative. (100:24-101: 6). At 101:10-11; 101:13-19, the witness admits that he doesn't know whether the warning label he discussed in his email was on JUUL products in April 2018. Therefore, these designations should be excluded due to the witness' speculation, lack of | **Sustained.** Lack of foundation. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: in the product, that nicotine is highly addictive, 03: and that JUUL delivers so much nicotine so rapidly 04: that new users become addicted quickly. 05: That's what you said in April of 2018, 06: right? | foundation and the risk of misleading or confusing the jury. FRE 403. <br><br>_Proposing Party's Position_: Counter provides clarity as to what the witness meant and explains that when he wrote the second bullet point he repeated comments he heard in the media and "was on a bit of a rant." This is essential for understanding what Olin was doing in the second bullet point. Without counter, the second bullet point is misleading. Designated testimony only asks Olin to acknowledge that he wrote it. Counter explains that his intention and information sources when he wrote it. Witness says he thinks JUUL did have a warning label on the package and that he's not sure in the second bullet of the email which of the things he said were technically accurate. Counter is required to understand the document. | |
| 3. | Page 00101: 08: THE WITNESS: Yes. 09: BY MR. WATTS: 10: Q And in April 2018, that warning label 11: was not on the JUUL product, right? | _Objecting Party's Position_: Plaintiff incorporates the preceding objections. At 101:8-11; 101:13-19, the witness admits that he doesn't know whether the warning label he discussed in his email was on JUUL products in April 2018. Therefore, these designations should be excluded due to the witness' speculation, lack of foundation and the risk of misleading or confusing the jury. FRE 403. <br><br>_Proposing Party's Position_: Counter provides clarity as to what the witness meant and explains that when he wrote the second | **Sustained.** Lack of foundation. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | bullet point he repeated comments he heard in the media and "was on a bit of a rant." This is essential for understanding what Olin was doing in the second bullet point. Without counter, the second bullet point is misleading. Designated testimony only asks Olin to acknowledge that he wrote it. Counter explains that his intention and information sources when he wrote it. Witness says he thinks JUUL did have a warning label on the package and that he's not sure in the second bullet of the email which of the things he said were technically accurate. Counter is required to understand the document. | |
| 4. | Page 00101: <br> 13: THE WITNESS: I wasn't tracking the <br> 14: specifics, but I actually think they did already <br> 15: have a warning label on the package. So some of <br> 16: these comments were grabbed off of the mainstream <br> 17: media and -- and tossed in this e-mail, and I'm <br> 18: actually not sure which ones were technically <br> 19: accurate. I was on a bit of a rant here. | <u>Objecting Party's Position</u>: Plaintiff incorporates the preceding objections. At 101:8-11; 101:13-19, the witness admits that he doesn't know whether the warning label he discussed in his email was on JUUL products in April 2018. Therefore, these designations should be excluded due to the witness' speculation, lack of foundation and the risk of misleading or confusing the jury. FRE 403. <br><br> <u>Proposing Party's Position</u>: Counter provides clarity as to what the witness meant and explains that when he wrote the second bullet point he repeated comments he heard in the media and "was on a bit of a rant." This is essential for understanding what Olin was doing in the second bullet point. Without counter, the second bullet point is misleading. Designated | **Sustained.** Lack of foundation. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | | testimony only asks Olin to acknowledge that he wrote it. Counter explains that his intention and information sources when he wrote it. Witness says he thinks JUUL did have a warning label on the package and that he's not sure in the second bullet of the email which of the things he said were technically accurate. Counter is required to understand the document. | |
| 5. | Page 00104:<br>16:  BY MR. WATTS:<br>17:  Q  And at the time that you wrote that in<br>18:  April of 2018, you believed that Juul had become<br>19:  synonymous with teen vaping, didn't you? | _Objecting Party's Position_:<br>FRE 401/402:  Olin's personal belief as to whether he believed JUUL had become synonymous with teen vaping as of April 2018 is irrelevant to Plaintiff's claims against Defendants.<br><br>_Proposing Party's Position_:<br>Counter is essential to explain what Olin meant when he wrote the email and is directly responding to previously designated testimony at 104:6-15 | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |
| 6. | Page 00104:<br>21:  THE WITNESS:  I -- I wouldn't agree with<br>22:  that statement.  I think what I was getting at was<br>23:  a reference to this -- some of the conversations<br>24:  where people were starting to mix the brand name<br>25:  of Juul with the category name, kind of like<br>(continued page 00105) | _Objecting Party's Position_:<br>Plaintiff incorporates the same preceding objections.<br><br>_Proposing Party's Position_:<br>Counter is essential to explain what Olin meant when he wrote the email and is directly responding to previously designated testimony at 104:6-15 | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | Page 00105:<br>01: Kleenex with tissue. So... | | |
| 7. | Page 00105:<br>06: Q  Okay.  And your point was, is that the<br>07:  name JUUL had become a moniker for teen vaping,<br>08:  right? | <u>Objecting Party's Position:</u><br>Plaintiff incorporates the same preceding objections.<br><br><u>Proposing Party's Position:</u><br>Counter is essential to explain what Olin meant when he wrote the email and is directly responding to previously designated testimony at 104:6-15 | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |
| 8. | Page 00105:<br>11: THE WITNESS:  I -- I think if I was<br>12:  getting at something, it was that -- that JUUL had<br>13:  become synonymous with the vaping category. | <u>Objecting Party's Position:</u><br>Plaintiff incorporates the same preceding objections.<br><br><u>Proposing Party's Position:</u><br>Counter is essential to explain what Olin meant when he wrote the email and is directly responding to previously designated testimony at 104:6-15 | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |
| 9. | Page 00107:<br>05: BY MR. WATTS:<br>06: Q  Now, he says in the third paragraph:<br>07:  "None of us saw this coming and it has shocked<br>08:  us."<br>09:  Do you see that?<br>10:  A  Yes. | <u>Objecting Party's Position:</u><br>DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation - this designation relates to a different email string than what Olin was previously questioned about.<br><br><u>Proposing Party's Position:</u> | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |
| 10. | Page 00107:<br>11: Q  But you saw it coming and wrote e-mails<br>12:  about it back in 2015, right? | <u>Objecting Party's Position:</u><br>DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation - this designation relates to a different email string than what Olin was previously questioned about<br><br><u>Proposing Party's Position:</u> | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | | | |
| 11. | Page 00107<br>14: THE WITNESS: I would absolutely not say<br>15: that I saw the teen vaping epidemic coming, if<br>16: that's what you are talking about. I raised<br>17: issues around the chemicals being used in the<br>18: products back in 2015, but this was a development<br>19: much later in 2018. | Objecting Party's Position:<br>DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation - this designation relates to a different email string than what Olin was previously questioned about.<br><br>Proposing Party's Position:<br>Directly responsive to the issue under discussion and directly responsive to the question. Designated for completeness and rebuts the notion that he was warning the company in 2015. Responds to designation at 108:2-6 | **Sustained.** The witness's personal beliefs do not go to the issues of the company's notice or knowledge, apart from what was conveyed. |
| 12. | Page 00124:<br>17: You've referenced a few times throughout<br>18: today's deposition that you were concerned about<br>19: the chemicals in the JUUL e-vapor.<br>20: Do you recall making those comments? | Objecting Party's Position:<br>DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation. This line of questioning going through 124: 21 is outside the scope of the preceding examination and relate to details involving Olin's concern about the chemicals used in JUUL. His personal concerns about this topic are not relevant to Plaintiff's claims against defendants. Further, Olin admits that he lacks knowledge and information about the basis for his statements. As a result, the testimony should also be excluded under FRE 403.<br><br>Proposing Party's Position:<br>Plaintiff questioned Olin directly re his personal concerns re the chemicals in JUUL in testimony designated at 31:1-12 and 31:18-21. Counter designation provides essential context. He's also providing context for documents he wrote and was questioned about and his level of knowledge. | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | | | |
| 13. | Page 00124:<br>22: THE WITNESS: Yeah, I would actually --<br>23: sorry, Zac.<br>24: I would characterize it, Nicole, that I<br>25: was concerned about the vapor in any of the vaping<br>(continued page 00125)<br><br>Page 00125:<br>01: industry products, the whole sector.<br>02: BY MS. DeVANON:<br>03: Q Okay. So an overall concern about the<br>04: chemicals in an e-cigarette -- in e-cigarettes in<br>05: general; is that fair?<br>06: A I would say any vaping device, so<br>07: e-cigarettes or cannabis products as well.<br>08: Q Okay. And what information do you have<br>09: specifically, if any, about what chemicals are<br>10: present in e-vapor?<br>11: A Personally I have no information about<br>12: that except what I would have read on the CEH<br>13: website or in their newsletter.<br>14: Q Okay. So is it fair to say that the<br>15: basis of the statements you've made about these | Objecting Party's Position:<br>Plaintiff incorporates the same preceding objections.<br><br>Proposing Party's Position:<br>Plaintiff questioned Olin directly re his personal concerns re the chemicals in JUUL in testimony designated at 31:1-12 and 31-18-21. Counter designation provides essential context. He's also providing context for documents he wrote and was questioned about and his level of knowledge. | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: chemical concerns, the source of that knowledge is<br>17: what you acquired through your work with CEH?<br>18: A Yeah. Yeah, I'm not -- I'm not a<br>19: scientist or an expert, so I'm just passing along<br>20: what -- what I hear from the folks who are -- who<br>21: are working on that. | | |
| 14. | Page 00125:<br>22: Q Okay. And in terms of the work done by<br>23: CEH, is it your understanding that CEH performed<br>24: testing of various e-vapor products?<br>25: A Yes. That's my understanding back in, I (continued page 00126)<br><br>Page 00126:<br>01: think it was, two --<br>2015 when they did the first<br>02: investigation. | Objecting Party's Position:<br>DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation; FRE 602.  Olin admits that the CEH's testing in 2015 did not include JUUL.  The testimony should be excluded under FRE 403.<br><br>Proposing Party's Position:<br>Plaintiff questioned Olin directly re his personal concerns re the chemicals in JUUL in testimony designated at 31:1-12 and 31-18-21.  Counter designation provides essential context.  He's also providing context for documents he wrote and was questioned about and his level of knowledge. | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |
| 15. | Page 00126:<br>08: Q Okay. And do you know if their testing 09: in 2015 included any JUUL products?<br>10: AI believe their initial testing or their 11: initial -- well, let me put it this way: My | Objecting Party's Position:<br>Plaintiff incorporates the same preceding objections.<br><br>Proposing Party's Position:<br>Plaintiff questioned Olin directly re his personal concerns re the chemicals in JUUL in testimony designated at 31:1-12 and 31-18-21.  Counter designation provides essential context.  He's also providing context for documents | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12:  understanding is that their initial legal action 13:  was in early 2015, and I now understand from the 14:  prior conversation that Juul launched in, I guess, 15: June of 2015.  So I don't think it's possible that 16:  Juul was included in the original list of 17:  companies. | he wrote and was questioned about and his level of knowledge. | |
| 16. | Page 00126: 23:  Q  Okay.  Have you ever been provided with 24:  any information through CEH about the 25:  addictiveness of JUUL products? (continued page 00127)<br><br>Page 00127: 01:  A  No, I don't think CEH ever shared 02:  anything with me specific to JUUL.  It would have 03:  just been vaping industry generally, whatever they 04:  would have shared in their newsletter on their 05:  website.  I didn't look for any specific 06:  scientific information.  I wasn't doing a research 07:  product.  I didn't ask them to provide -- provide | Objecting Party's Position: DI: Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation; FRE 602.<br><br>Proposing Party's Position: Plaintiff questioned Olin directly re his personal concerns re the chemicals in JUUL in testimony designated at 31:1-12 and 31-18-21.  Counter designation provides essential context.  He's also providing context for documents he wrote and was questioned about and his level of knowledge. | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: me with anything specific like that. | | |
| 17. | Page 00131:<br>01: Q Well, did you undertake any steps<br>02: yourself to investigate the Prop 65 litigation<br>03: between CEH and Juul or -- and to understand the<br>04: terms of any settlement that they entered into<br>05: with each other? Did -- did you take that on as a<br>06: project?<br>07: A No, that was just a heads-up to Nick to<br>08: pass on to the company. I didn't try to get into<br>09: the details myself. So it's very technical.<br>10: Q Well, in your e-mail, Exhibit 14203, I<br>11: think you used the word "horrified," you were<br>12: horrified to learn of some dispute between CEH and<br>13: Juul related to the settlement.<br>14: What -- what did you mean by being<br>15: horrified?<br>16: A I'm not sure why the language was so<br>17: strong. I must have heard from CEH that they | Objecting Party's Position:<br>Scope/Completeness, Lack of Personal Knowledge / Calls for Speculation; FRE 602 as to why Olin described being "horrified" that JUUL did not accept the term of the CEH settlement pertain to teen vaping. Additionally, the best evidence of Olin's then present state of mind is described in his email previously marked.<br><br>Proposing Party's Position:<br>Same as above. Plaintiff has designated only the witness agreeing to plaintiff's counsel's reading of Olin's email and none of his testimony providing context to that email; this is incomplete. | **Overruled.** These are proper counter-designations used to provide context for affirmative designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  weren't satisfied with something they were 19:  negotiating. | | |

## III.  NICHOLAS PRITZKER

### a.  Plaintiff's Affirmative Designations

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00042:<br>05: Q And despite the conversation with Philip<br>06: Morris, eventually Conwood was sold by the<br>07: Pritzker family to Reynolds; is that right?<br>08: A That's right.<br>09: Q And that occurred in about 2005?<br>10:  A  I think that's the right date, yes. | Objecting Party's Position:<br>FRE 401/402; FRE 403; MIL 7 . This testimony is about investments by the Pritzker family (not Nick Pritzker himself) in a company called Conwood that was sold to RJR in 2005.  It is unrelated to the marketing and design of JUUL, the Altria investment, and B.B.'s claims, which arose in 2017.  Mr. Pritzker's family's history with other tobacco companies is not relevant, prejudicial, and a waste of time. This testimony should also be excluded because it references the Pritzker family receiving $3.5 billion unrelated to Mr. Pritzker's proceeds from the Altria investment -- Judge Orrick has already granted MIL 7 with respect to individual witness' personal wealth and Plaintiff should not be permitted to relitigate that here. Further, this testimony is confusing because it references a "conversation with Philip Morris" without explanation.<br><br>Proposing Party's Position:<br>First, it was the myriad of Pritzker family companies and trusts including Tao Capital itself that | Overruled. The designated testimony does not reference the witness's personal wealth or spending patterns. The testimony is relevant to the witness's background and experience with the tobacco industry. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | were the vehicles for Mr. Prtizker's investment in JLI so it is meaningless for JLI to point out and even raise this issue.  In fact, that the Pritzker family business was the vehicle for the investment in JLI actually supports Plaintiff's position on this objection, not Defendants. The conversation about PM is not confusing; it is apparent that this refers to conversation about selling Conwood to them initially but instead was sold to Reynolds. Second, as JLI points out, the sale of Conwood to RJ Reynolds was not made directly by Nick Pritzker; but was made by his family. Therefore MIL 7 does not apply, which the Court granted only as to the "personal wealth and spending patterns" of Defendants or witnesses. This evidence is relevant to motive, knowledge and intent. Central to Plaintiff's claims are allegations that key employees and investors of JLI sought to position JLI for acquisition by Big Tobacco so that they could reap large returns on their investment. Nicholas Pritzker is a Board member and one of the largest investors in JLI. He was heavily involved in leadership and decision-making at JLI generally and was a lead negotiator in the Altria deal. Testimony about his family history and experience in negotiating with the tobacco industry and selling a company to RJR for $3.5 billion is relevant and not unfairly prejudicial because it establishes that he is familiar with |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | the type of large investment that JLI hoped to (and eventually did) achieve from a tobacco company. Likely, this was one of the reasons Mr. Pritzker was a lead negotiator for JLI with Altria. As discussed below, the fact that Pritzker received $1.8 Billion from the Altria investment is directly relevant to the claims in this case, his bias and credibility so his wealth is no secret and the amount his family sold Conwood Tobacco for is not prejudicial, especially in the context of other information the jury will hear. | |
| 2. | Page 00042:<br>20: Q Okay. Any other involvement in tobacco<br>21: by the Pritzker family after the sale of Conwood<br>22: before Tao's investment in Ploom?<br>23: A. Not that I know of. | Objecting Party's Position:<br>FRE 401/402; FRE 403; MIL 7. This testimony is about investments by the Pritzker family (not Nick Pritzker himself) in a company called Conwood that was sold to RJR in 2005. It is unrelated to the marketing and design of JUUL, the Altria investment, and B.B.'s claims, which arose in 2017. Mr. Pritzker's family's history with other tobacco companies is not relevant, prejudicial, and a waste of time. This testimony should also be excluded because it references the Pritzker family receiving $3.5 billion unrelated to Mr. Pritzker's proceeds from the Altria investment -- Judge Orrick has already granted MIL 7 with respect to individual witness' personal wealth and Plaintiff should not be permitted to relitigate that here. Further, this testimony is confusing because it references a | **Overruled**. The designation does not concern the personal wealth or spending patterns of the witness. The witness's history with the tobacco industry is relevant to motive, knowledge, and intent regarding his involvement with JLI. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | "conversation with Philip Morris" without explanation.<br><br>Proposing Party's Position:<br>This designation continues with the same subject matter as immediately above and Plaintiff incorporates the same response to 42:5-10. | |
| 3. | Page 00047:<br>02: Q And here's my question: When you made<br>03: the original investment of approximately<br>04: $1.2 million in 2011, was Tom Dykstra given a<br>05: board seat at Ploom?<br>06: A Yes.<br>07: Q Okay. And did he serve as a member of<br>08: the board of directors of Ploom, Incorporated,<br>09: from 2011 until his resignation?<br>10: A I believe that was the -- those were the<br>11: dates, yes.<br>12: Q Okay. What were the circumstances<br>13: surrounding your election as a director of Ploom,<br>14: Incorporated, and the resignation of Tom Dykstra,<br>15: who had been the president of your investment<br>16: entity? | Objecting Party's Position:<br>FRE 401/402; FRE 403; MIL 7. This testimony discusses the amount of Mr. Pritzker's initial investment in Ploom and illustrates his general wealth. It has no relationship to proceeds from the Altria investment. Judge Orrick has already excluded evidence of individual witness' personal wealth under MIL 7. Further, most of the designated testimony relates to an individual named Tom Dykstra, whom the jury is unfamiliar with and whose role and relevance are unexplained. This testimony has no probative value and will only confuse and mislead the jury. To the extent Plaintiff seeks to establish that Mr. Pritzker served on the board since 2013, they have already done so at 75:24-76:2.<br><br>Proposing Party's Position:<br>Re MIL 7, it is not applicable since the designated testimony concerns the amount of Pritzker's investment in JLI and is relevant to the financial abilities of JLI at that point in time. This testimony falls outside the scope of Judge Orrick's order on MIL 7. It is more probative than prejudicial for the | **Overruled**. The witness's original investment is relevant to the money later received as a result of the Altria deal. The remaining testimony concerns how the witness joined the board of Ploom and later JLI. |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     | 17: A    Well, as we were moving to San Francisco 18:  and NPCM terminated and Tom left our employment, I 19:  took over the board seat that he'd been in. 20: Q Okay.  And when did you take over the 21:  board seat that Tom Dykstra had had at Ploom? 22: A I believe it was also 2013, but I -- I 23: cannot swear to that date. | jury to understand the dramatic increase of the return on investment made by Pritzker given that he earned  $1.8 Billion as a result of the Altria deal. His payout on the Altria deal is admissible per Judge Orrick's Order on MIL 7. The profit that Mr. Pritzker made on the Altria transaction is key to proving motive, knowledge, intent, bias and credibility. The jury should be permitted to take into account the profit realized by Mr. Pritzker in conjunction with his testimony regarding the decisions to launch and market JUUL with admittedly youthful looking models and in other ways that attracted youth.  See the later designations.  Testimony about Mr. Pritzker's history of getting on JLI's Board by replacing a former Pritzker employee, Tom Dykstra, is relevant background to Mr. Pritzker serving as a board member and is relevant as foundation for who Nicholas Pritzker is and the role he played at JLI -- i.e., he was one of the earliest investors in JLI and served on its Board since 2013, when JUUL was still being developed. Pritzker heavily involved in leadership and decision-making at JLI generally. The jury will not be confused about who Mr. Dykstra is because Mr. Pritzker testified that was their former employee.  See 47: 12-19. Ploom is a predecessor entity of JLI, and Mr. Pritzker's initial investment in JLI (as Ploom at the time) is relevant to the return on investment he earned from the |  |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Altria deal and thus relevant to his motive, knowledge, intent, bias and credibility. The relationship to this testimony to JUUL is further demonstrated by this designation as it speaks to Mr. Pritzker's role at JLI as one of JLI's earliest investors and having served on it's Board since 2013 (again, as a predecessor entity), when JUUL was being developed. | |
| 4. | Page 00053:<br>07: Q Now, if I could, I want to take you to<br>08: Exhibit 14018.<br>09: (Pritzker Exhibit No. 14018 was<br>10: marked for identification.)<br>11: BY MR. WATTS:<br>12: Q And if we could start on the second<br>13: page, there's an e-mail from an Alexander Asseily.<br>14: Can you tell me who that gentleman is?<br>15: A Yes. Alexander Asseily is a person who<br>16: was involved on a couple of levels at Pax and<br>17: Juul. He was the co-founder of a -- of a<br>18: company -- I'm struggling to think of the name.<br>19: They were innovators of a portable speaker system. | Objecting Party's Position:<br>Hearsay (FRE 408) Exhibit 14018 contains statements made by Alex Asseily, who was not a Board member at this time. The document is not being introduced to "prove the existence of Mr. Asseily's relationship to JLI" -- if that were true, the designations at 53:12-22 would be sufficient and there would be no need to read entire portions of the document into the record. Plaintiff's response misrepresents the nature of Mr. Asseily's communications with Mr. Pritzker; the conversations were not about the "youthful nature of JUUL's models" and certainly this document has nothing to do with those conversations<br><br>Proposing Party's Position:<br>    Mr. Asseily later became a JLI Board member and this Exhibit (4018) establishes his identity and initial communications with JLI leading up to his role a Board member. It is important for the jury to understand how Mr. Asseily became involved with JLI and | **Overruled**. The statements are not offered for the truth but to prove a preexisting relationship between Mr. Asseily and JLI. To the extent the parties object to the admissibility of an exhibit, no ruling is issued as that would exceed the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  | 20: I'm forgetting the name of the company, but it was<br>21: quite a successful company. So he was a -- a<br>22: venture capitalist and technologist. Wasn't as -- | when that contact began because Mr. Asseily is later identified in multiple portions of Plaintiff's Affirmative Designations where he directly communicated with Mr. Pritzker about the youthful nature of JUUL's models. This document is not admitted for the truth of its contents but only as an exception to the hearsay rule to prove the existence of the relationship with JLI prior to his becoming a Board member.<br><br>Contrary to Defendants' claim that Mr. Pritzker does testify based on his personal knowledge about Mr. Asseily's relationship with JLI, that is not the case. Mr. Pritzker explained Mr. Asseily's role at 53: 15-22. He also testified about his understanding of ASseily's relationship with JLI, which is relevant to informing the jury of Mr. Asseily's background before JLI so that the jury will have an accurate picture of the players who were the decision-makers for JUUL. |  |
| 5. | Page 00058:<br>15: Q Mr. Asseily writes: "The conclusion of<br>16: this longwinded thought is that a key element of<br>17: marketing must be a seeding and viral program that<br>18: educates and empowers your early users to become | Objecting Party's Position:<br>Hearsay (Same as above, Exhibit 14018 contains statements made by Alex Asseily, who was not a Board member at this time, that are being offered for their truth. Plaintiff's response mischaracterizes the document and subsequent conversations between Mr. Pritzker and Mr. Asseily); Lacks Foundation/FRE 602 (testimony reads into the record an email written by Alex Asseily | **Overruled.** The statements are not offered for the truth, but to show motive, notice, and effect on the listener. They are relevant to the company's marketing strategies. The witness has foundation to testify regarding his receipt of the email and his responsive actions. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19:  evangelists wherever they go and to not hide their<br>20: discovery from anyone."  And then he goes on.<br>21:  Do you see that, sir?<br>22:  A    Yes, I do.<br>23:  Q    Here's my question:  In 2014 and '15<br>24:  when the JUUL product was being developed by<br>25: Ploom, were there discussions with respect to<br><br>Page 00059:<br>01:  seeding and viral programs that would be needed to<br>02:  launch the program? | which Mr. Pritzker did not author and has no foundation to testify to); FRE 401/402, FRE 403 (testimony does not relate to JUUL product specifically or any specific marketing campaign)<br><br>Proposing Party's Position:<br>In Ex. 14018, Mr. Asseily informs JLI executives and board members (Gal Cohen and Mr. Pritzker) of his personal conclusions regarding the strategy that JUUL should use in its marketing. That strategy included Mr. Asseily identifying "key elements of marketing" to be "seeding and viral" marketing, both of which were instrumental in reaching and/or targeting youth.  And, importantly, Mr. Pritzker testified in the later designation of 59:7-10 that he responded to Mr. Asseily by agreeing with him.  This viral marketing strategy that was telegraphed to JLI by a potential Board member, who JLI later readily accepted as a member of the Board is relevant to showing that  should have known viral marketing and seeding tactics would inevitably broaden the consumer base to include regular marketing to youth.  Mr. Pritzker responded to the email by stating he fully agreed with Mr. Asseily and had personal knowledge of the communication  and so the FRE 602 objection is not applicable.  The fact that JLI decided to onboard Mr. Asseily who had these pre-conceived notions, that Mr. Pritzker agreed with, is highly relevant to establishing elements of | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | JLI's motive and notice. Plaintiff agreed to with withdraw 58:1-14. As shown by Plaintiff's revised designation, Defendant's objection to the testimony at 57:19-25, is withdrawn. | |
| 6. | Page 00059:<br>07: Q Okay. If we go back up to the first<br>08: page, Gal Cohen responds, and then you say:<br>09: "Thanks, Gal and Alex. I really appreciate both<br>10: of your comments and completely agree."<br><br>Page 00059:<br>13: Q You respond to both of them, and you<br>14: say: "Thanks, Gal and Alex. Somehow I missed<br>15: Alex's e-mail. I really appreciate both of your<br>16: comments and completely agree."<br>17: Do you see that, that you wrote that on<br>18: December 26, 2014?<br>19: A I do see it.<br>20: Q And at the time that you wrote this,<br>21: were you a director of Ploom, Incorporated?<br>22: A Yes, I was. | <u>Objecting Party's Position:</u><br>Hearsay (Same as above, Exhibit 14018 contains statements made by Alex Asseily, who was not a Board member at this time, that are being offered for their truth. FRE 401/402, FRE 403 (testimony is attorney commentary without a corresponding answer and duplicative of question at 59:13-16. Also, misquotes the document)<br><br><u>Proposing Party's Position:</u><br>This designation continues with the same subject matter as immediately above and Plaintiff incorporates the same response to 58:15-59:2. This is not hearsay because it is not for the truth of the matter asserted but offered for the impact on the reader and for notice, knowledge, intent and other non-hearsay reasons. Testimony contains statements made by a party or agent of an employee on a matter within the scope of the relationship. Mr. Asseily was a paid Board advisor then became a Board member. Pritzker was a Board member.<br><br>This designation continues with the same subject matter as immediately above and Plaintiff incorporates the same response to 58:15-59:2. | **Overruled**. The statements are not offered for the truth, but to show motive, notice, and effect on the listener. They are relevant to the company's marketing strategies. The witness has foundation to testify regarding his receipt of the email and his responsive actions. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| 7. | Page 00076<br>10: BY MR. WATTS:<br>11: Q Okay.  Let me show you Exhibit 14030. | Objecting Party's Position:<br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. This testimony goes beyond background]<br><br>Hearsay (Exhibit 14030 contains statements by ███████ ███████████ and son-in-law (Chris and ████████) that are offered for their truth and do not satisfy any applicable hearsay exception); FRE 401/402; FRE 403 (the personal feelings of the ███████████████████ and son-in-law have no probative value to B.B.'s claims and are substantially outweighed by undue prejudice and confusion. Mr. Pritzker is not a party and was not involved in the development or execution of JLI's marketing and thus his knowledge and/or intent has little to do with what JLI knew or intended with respect to its marketing.  Numerous witnesses have testified that JLI did not target underage consumers with its product or marketing; Plaintiff's responses continue to misrepresent the actual content of the document and Mr. Pritzker's testimony)<br>Proposing Party's Position:<br>[The Court denied Defendants' MIL 2 except with respect to the Colbert video clip under rule 403 and directed the parties to propose a limiting instruction regarding background marketing that B.B. | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. The parties have preserved objections based on the Court's motion in limine rulings. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | was not directly exposed. JUUL's marketing is a central issue in the litigation. The Court has recognized the relevance of JUUL marketing to multiple issues (2/25 Hearing Tr. 6:9-15). The Court's order on general Daubert motions noted the relevance of evidence regarding JUUL marketing. Thus, there is no basis for a 401/402 objection. As such, Plaintiff should be permitted to present evidence on what the company did and the success it brought, and any prejudice is of JLI's own making and is substantially outweighed by the relevance and probative value of JUUL marketing, which Plaintiff was exposed to._MIL#2: For the reasons set forth in Pltf's Opp to MIL #2, these objections are not applicable, including:   that JUUL chose its own conduct in creating a "seeding and viral [marketing] programme" and "hoped to create evangelists" on behalf of JUUL. (Opp to MIL #2, p. 3).]

This designation introduces an Exhibit 14030: Email from C. Olin (Pritzker's son-in-law) to Pritzker (dated 6/1/2015), which pertains to comments made by ▮▮▮▮ ▮▮▮▮▮▮ about_a JUUL post on Instagram.  See substantive response below.

The content of Ex. 14030 and Mr. Pritzker's testimony about JUUL's marketing speaks for itself and the jury can reach their own |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  |  | conclusion based on their reasoned judgment. |  |
| 8. | Page 00076:<br>12: And in the middle of the first page, a gentleman<br>13: by the name of Christopher Olin writes an e-mail<br>14: at 9:06 on June the 1st of 2015.<br><br>Page 00077:<br>14:  A  I -- I can see what you're talking<br>15: about.<br>16: Q  Okay.  So we have highlighted, as<br>17:  opposed to blown up, the 1 June 2015, 9:06 a.m.,<br>18:  Christopher Olin.<br>19: Is that your son-in-law?<br>20:  A  Yes.<br>21: Q  And he attaches an Instagram link for<br>22:  JUUL vapor on the date that the launch begins,<br>23: right?<br><br>Page 00078:<br>01:  THE WITNESS:  I believe that was the<br>02:  launch date, yes, or within a day.  I don't know<br>03:  exactly the launch date.<br>04: BY MR. WATTS: | Objecting Party's Position:<br>[Same as above - MIL 2; this testimony goes beyond background]<br><br>Hearsay (same as above); FRE 401/402; FRE 403 (same as above)<br><br>Proposing Party's Position:<br>[The Court denied Defendants' MIL 2 except with respect to the Colbert video clip under rule 403 and directed the parties to propose a limiting instruction regarding background marketing that B.B. was not directly exposed.  JUUL's marketing is a central issue in the litigation. The Court has recognized the relevance of JUUL marketing to multiple issues (2/25 Hearing Tr. 6:9-15). The Court's order on general Daubert motions noted the relevance of evidence regarding JUUL marketing. Thus, there is no basis for a 401/402 objection. As such, Plaintiff should be permitted to present evidence on what the company did and the success it brought, and any prejudice is of JLI's own making and is substantially outweighed by the relevance and probative value of JUUL marketing, which Plaintiff was exposed to.  MIL#2: For the reasons set forth in Pltf's Opp to MIL #2, these objections are not applicable, including:  that JUUL chose its own conduct in creating a "seeding and viral [marketing] programme" and | **Overruled**. The statements are being offered for the non-hearsay purpose of notice and knowledge as to the company's marketing. The witness played an active role during the relevant period in influencing operations and marketing. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05:  Q  And assuming the launch date for JUUL 06: was June the 1st, your son-in-law writes an 07:  e-mail, "What age do you think this marketing 08: targets?"  And he references the marketing for 09: JUUL vapor, right? 10:  A Yes. 11: Q    And he receives a response, as we move 12:  up the page from a ██████████.  And that is 13: ██████████ right? 14:  A Yes. | "hoped to create evangelists" on behalf of JUUL. (Opp to MIL #2, p. 3).]<br><br>This designation establishes foundation for Exhibit 14030. See substantive response below.<br><br>This designation continues to establish foundation for Exhibit 14030 and plaintiff incorporates the same responses to 76:12-14.<br><br>This testimony demonstrates that Mr. Pritzker knew his own ██████████ believed JUUL's marketing, at the time of launch (June 2015), to be youth oriented. Mr. Pritizker's documented response in 2015 was that he "agreed" with his son-in-law's and ██████████ characterization of JUUL's Instagram Marketing Campaign to be "disgusting" in response to the inquiry, "What age do you think the JUUL vapor marketing targets?"  See 78: 21-79:12.  The jury can reasonably conclude from Mr. Pritzker's testimony that he found JLI's Instagram Marketing Campaign to be "disgusting."  Later, Mr. Pritzker attempted explain this and only in his deposition testimony, he backed away from his agreement with his son-in-law and ██████████ by testifying that he didn't think "it was disgusting" and that he was "exaggerating." See 82: 12-15.  However, Mr. Pritzker never documented this at the time the emails were exchanged. It will be left to the | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
|  |  | jury's province to reach their conclusion on the interpretation and assessment of this evidence. As such, this testimony is relevant to Mr. Pritzker knowledge and notice of the youth centric aspects of JLI's marketing as well as his motive for continuing to invest and serve on the Board of JLI despite his stated reservations about JLI's youth oriented marketing. Hearsay is not applicable because Mr. Pritzker has personal knowledge of the communication, which, as shown in a later designation, he agreed with his ██████████ the JUUL advertisement was "disgusting", yet took no steps to change it at that time. The testimony also falls within the hearsay exception for notice. Specifically, the contents of the exhibit and the statements made by Mr. Olin and ██. ████████████ are offered to as evidence of Pritzker and hence, JLI's notice and knowledge that JUUL advertising targeted youth. |  |
| 9. | Page 00078:<br>17: Q Okay.  So on June the 1st of 2015, ████<br>18: ██████████, right?<br>19: A I think that's right, yes.  We can do<br>20: the math. █████████<br>21: Q ██████████████ tells<br>22: your son-in-law on the date of the JUUL launch | Objecting Party's Position:<br>[Same as above - MIL 2; this testimony goes beyond background]<br><br>Hearsay (same as above); FRE 401/402; FRE 403 (same as above; and whether Mr. Pritzker, his son-in-law, or ████████████ are "reasonable" people has no relevance to B.B. claims; the jury must decide the reasonableness of JLI's conduct) | **Overruled**.  See above. The witness's perception of the reasonableness of the speakers provides relevant context for the witness's responsive action or non-action upon receipt of these statements, and is probative of the reasonableness of the company's conduct. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 23: when he asked, "What age do you think the JUUL<br>24: vapor marketing targets?" She responds, "That's<br>25: disgusting." Right?<br><br>Page 00079:<br>01: A Yes.<br>02: Q   As we move up the page, Mr. Olin, your<br>03:  son-in-law forwards the e-mail chain to you, and<br>04:  part of what he says is: "Unfortunately, I poked<br>05: around on the JUUL website and found their<br>06:  Instagram marketing campaign.  I forwarded it to<br>07: ▮▮▮   Her reaction was the same as mine."<br>08:  Right?<br>09:  A Yep.  Yes.<br>10: Q And 12 minutes later, you respond:  "I<br>11: agree with you." Right?<br>12: A Yes.<br>13:  Q  You consider your son-in-law to be a<br>14:  reasonable person, right?<br>15:  A Yes.<br>16: Q Your ▮▮▮▮▮▮▮▮▮to be a<br>17: reasonable person?<br>18: A Yes. | Proposing Party's Position:<br>This designation continues with the same line of inquiry and therefore, Plaintiff incorporates the same response to 78:1-14. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: Q You consider yourself to be a reasonable 20: person? 21: A I try. | | |
| 10. | Page 00081: 3: BY MR. WATTS: 14: Q   Well, except that you say, "I agree with 15: you.  I have already objected to the marketing 16: imagery."  Right? 17: A  Correct. 18: Q  All right.  So your son-in-law asks, 19: "What age do you think this marketing targets?" 20: ███████ says, "That's disgusting." 21: Your son-in-law says, "I found the Instagram 22:  marketing campaign and forwarded it to ████  and 23:  her reaction was the same as mine."  And you say, 24:  "I agree with you," and that you objected to that 25:  marketing imagery.  Right?  Page 00082: 02: THE WITNESS:  I -- I'm not going to 03: argue with you about the -- the sequence of these | Objecting Party's Position: [Same as above – MIL 2; this testimony goes beyond background]  Asked & Answered (form, already asked by counsel at 78:5-14, 78:17-79:-12); Hearsay (81:18-81:25, same as above); FRE 401/402; FRE 403 (same as above, and counsel's lengthy re-recitation of the content of Exhibit 14030 at 81:18-25 is cumulative and a waste of time.  Once again Plaintiff misrepresents the email and Mr. Pritzker's role -- he did not say he did not "like" the campaign, he did not "approve" the campaign, and he did not make decisions about where to "run" the campaign. He was an investor and board member and was not in charge of executing or approving the campaign. See 123:18-125:5.)  (same as above, Mr. Pritzker's testimony is perfectly consistent with the email exchange, he notes that while he wouldn't use the same words as ███████████, he did not like the campaign)  Proposing Party's Position: [See response to MIL #2 as stated above to 78:1-14]:  Hearsay: effect on listener, notice/knowledge, state of mind.  Not only is the evidence | **Overruled**. See above. The testimony is not impermissibly cumulative and further probes the witness's prior contention of ambiguity. The questioning is based on the witness's testimony and does not mischaracterize evidence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
| | 04: comments and the ambiguity.  I can just tell you<br>05:  that, looking back at this, I think that what I<br>06:  was agreeing with -- what I -- what I thought was<br>07: that ███ and Chris were commenting when Chris<br>08:  said, Her reaction was the same as mine, that he<br>09:  meant the campaign as a whole, and that that's<br>10:  what she was saying was disgusting or even that<br>11:  e-cigarettes were disgusting.<br>12: ██████████ ████.  I'm not<br>13:  sure she was looking that closely.  But in any<br>14:  event, that's certainly what I was agreeing with.<br>15:  It was not the -- not a question of the age of the<br>16:  models, but a comment about the marketing campaign<br>17:  generally, and as I say, I was -- I did not think<br>18:  it was disgusting.  I didn't like it, but I was<br>19:  exaggerating or, rather, I was -- I was not going | relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have utterly failed to articulate a basis under 403 for its exclusion.  This series of questions is not unnecessarily cumulative, but instead is helpful to the jury because Counsel distills into one question, all the prior testimony as supported by the email exchanges about the JUUL campaign being disguising to ███████████ ██████████    This designation includes Mr. Pritzker's acknowledgement that he did not like the campaign (See 82:16-18), an important fact for the jury to hear given that he had a central role in approving the campaign and allow it to continue to run despite other evidence that goes towards notice to JLI that the campaign skewed too young. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 20: to argue with her if she thought it was 21: disgusting -- I thought it was great that she 22: thought it was disgusting, so I'm not going to 23: argue. | | |
| 11. | Page 00083: 08: Q   Here's my question:  You told your 09: son-in-law in response to a comment from 10: ███████ that the marketing targets were 11: disgusting, that you had already objected to the 12: marketing imagery. 13:  When did you object to the marketing 14:  imagery?

Page 00083: 16: THE WITNESS:  Mr. Watts, while I can't 17: give you an exact date, I think I have been 18: clear on a couple of occasions that the -- the 19:  general imagery of the campaign was not to my 20: liking.  That I would have used no models at all. 21:  I didn't like the whole idea of using models. | Objecting Party's Position: [Same as above - MIL 2; this testimony goes beyond background]

FRE 401/402; FRE 403 (same as above, and counsel's summarization of the contents of exhibit 14030 at 83:8-12 for the third time is also cumulative, prejudicial, and an unnecessary prefatory comment to the actual question at 83:13-14.)

Proposing Party's Position: [MIL #2: see above, 78:1-78:14.] The probative value of Mr. Pritzker's testimony is magnified by his acknowledgement  that he did not like the "general imagery of the campaign." (83:16-20). Any prejudicial impact is minimal and the jury should be entitled to learn the extent to which Mr. Pritzker, who approved the campaign at launch, had personal reservations about it.  As shown by the designations of Scott Dunlap's deposition (Chief Operating Officer at Launch), the BOD pushed JUUL to market to increase sales.  The competing goals and knowledge of JLI and  its BOD is | **Overruled**. The question is distinct from earlier questions.  The prefatory statement permissibly orients the witness and develops his testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 22: Nothing to do with age. I would have preferred a<br>23: more dignified campaign that only showed the<br>24: product, for example. I believe I even said that,<br>25: that I would have preferred something like<br><br>Page 00084:<br>01: Volkswagen showing a Volkswagen or Apple computer<br>02: showing an apple. I didn't see any reason to have<br>03: image advertising.<br>04: So I had commented about image<br>05: advertising, and that was exactly what I intended<br>06: to convey when I said that I objected to the<br>07: imaged advertising. | extremely relevant. Further, this testimony is relevant to Pritzker's credibility because his testimony about his view of JLI's marketing is inconsistent with the views he expressed in the email exchange.<br><br>This designation includes Mr. Pritzker's answer to questions about Ex. 14030 and therefore, Plaintiff incorporates the same responses to 83:8-14. | |
| 12. | Page 00084:<br>23: Q  Mr. Pritzker, can you point me to the<br>24: minutes of a single board meeting prior to the<br>25: launch of JUUL that reflects that you objected to<br><br>Page 00085:<br>01: the marketing imagery being used for the launch of<br>02: JUUL? | Objecting Party's Position:<br>Same as above - MIL 2; this testimony goes beyond background]<br><br>Argumentative; Asked and Answered; FRE 401/402; FRE 403 (same as above, and counsel has already asked this question at 83:8-14 and this testimony is cumulative and prejudicial)<br><br>Proposing Party's Position:<br>Mr. Pritzker responded to this question in the later designation of | Overruled. Not argumentative, and the question was not previously asked. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | Page 00085:<br>05: THE WITNESS:<br>No, I don't -- I don't<br>06: know of any such minutes. | that he is unable to identify any Board minutes where he actually objected to JUUL's imagery in the initial campaign, a fact that is highly relevant, not prejudicial and goes to Mr. Pritzker's credibility and bias. The question is not argumentative whatsoever. Counsel asks Mr. Pritzker if he can identify any such writing of him taking that position and he cannot. This is the first and only time that Mr. Pritzker is asked whether there is documentary support for his position as stated in Ex. 14030, so the question was not asked and answered previously.<br><br>Mr. Pritzker testified in this designation that he is unable to identify any Board minutes where he actually objected to JUUL's imagery in the initial campaign, a fact that is highly relevant, not prejudicial and goes to Mr. Pritzker's credibility and bias. The question is not argumentative whatsoever. Counsel asks Mr. Pritzker if he can identify any such writing of him taking that position and he cannot. This is the first and only time that Mr. Pritzker is asked whether there is documentary support for his position as stated in Ex. 14030, so the question was not asked and answered previously. | |
| 13. | Page 00096:<br>23: BY MR. WATTS:<br>24: Q Let's go to Exhibit 14042 to see what | Objecting Party's Position:<br>Hearsay (Exhibit 14042 contains statements made by the witness' daughter, Regan Pritzker, that are offered for their truth and do not satisfy any applicable hearsay | **Overruled**. The statements are offered for their effect on the listener and are probative of the company's notice, |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25:  your precise words were.<br><br>Page 00097:<br>01:  (Pritzker Exhibit No. 14042 was<br>02:  marked for identification.)<br>03: BY MR. WATTS:<br>04: Q   If we start at the bottom of the page,<br>05: there's a July 3, 2015, e-mail that you wrote at<br>06: 2:46 in the morning. Do you see that, sir?<br>07:  A   Yes.<br>08:  Q   And you write that to<br>09: ███████████ your daughter and your son-in-law.<br>10: ████, Regan and Chris, right?<br>11: A   Yes.<br>12:  Q   The second line in the middle:  "I share<br>13: your deep concerns about whether it is wrong to<br>14:  have a financial interest in the company and<br>15:  how -- and about how we can use our position to<br>16: promote best practices and mitigate harm.  Given<br>17: our relationships in Pax, it isn't practical to<br>18: exit at this time." | exception); FRE 410/402; FRE 403 (Regan Pritzker's personal opinions about the youth appeal of flavors generally or what kind of regulation is appropriate have no relevance to the development of JUUL's own flavors or B.B.'s claims.  As of the time JUUL was launched, the FDA permitted ENDS manufactures to sell flavored products; these comments will only confuse the jury as to the applicable legal standard, and they are highly prejudicial)<br><br>Proposing Party's Position:<br>This email from Pritzker's daughter (Ex. 14042) telling him the weeks followed JUUL's launch that "fruity flavors" in vaping devices should be banned because they are "Clearly teen oriented" is not offered for the truth, rather for the effect on the listener, and as evidence that Pritzker had notice/knowledge of the youth appeal of fruity flavors (including the fruity flavors that JLI sold).  The testimony has no risk of confusing the jury as to whether or not JLI was required by regulations not to market flavors.  JLI has designated testimony establishing there were no FDA regulations that restricted its marketing.  This is relevant testimony for the jury to consider in assessing JLI's knowledge/notice/motive. | knowledge and responsive actions.<br><br>The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: Is that what you wrote?<br>20: A Yes.<br>21: Q Did your daughter Regan respond at 5:34<br>22: in the morning on July the 3rd: "Personally, I<br>23: think banning fruity flavors would be a good<br>24: start -- good place to start from a regulation<br>25: standpoint. Clearly teen oriented, no?"<br><br>Page 00098:<br>01: Did I read that correctly?<br>02: A Yes, you did. | | |
| 14. | Page 00098:<br>04: When the ▮▮▮▮▮<br>05: ▮▮▮▮▮▮ tells you, I<br>06: think banning the fruity flavors would be a good<br>07: place to start, clearly teen oriented, no, did you<br>08: ever order the company that you served on the<br>09: board of directors of to ban fruity flavors on<br>10: JUUL?<br><br>Page 00098:<br>14: THE WITNESS: I did not consider the | Objecting Party's Position:<br>Argumentative ("when the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); Hearsay (same as above); FRE 410/402; FRE 403 (same as above, and Mr. Pritzker's testimony is perfectly consistent with the email exchange. He testified that he did not believe JUUL's fruit flavor was teen oriented, unlike other fruit flavors on the market; in the email he indicates that the "line" should be drawn at JUUL's fruit flavor, which was more mature in its flavor profile than other teen oriented flavors on the market)<br><br>Argumentative (same as above, part of same colloquy); Hearsay (same as above); FRE 410/402; FRE 403 (same as above, and Mr. | **Sustained as to 98:4-7** (from "When" to "no,"). Argumentative.<br><br>**Overruled as to the remainder** of the question, which permissibly seeks testimony concerning the company's marketing strategy. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15:  JUUL flavor of fruit to be teen oriented. There 16: were other types of fruit flavors on the market of 17: other brands that I thought were teen oriented. | Pritzker's testimony is perfectly consistent with the email exchange)<br><br>Proposing Party's Position: Plaintiff incorporates the same response to 96:23-98:2. Also, Pritzker's denial that JUUL's flavors were fruity is relevant to credibility, as it is inconsistent with his statements in the email exchange.<br><br>Plaintiff incorporates the same response to 96:23-98:2. Also, Pritzker's denial that JUUL's flavors were fruity is relevant to credibility.  Ir is inconsistent with his statements in the email exchange. | |
| 15. | Page 00099: 25: BY MR. WATTS:<br><br>Page 00100: 01:  Q Now, you responded that:  "One of the 02: Juul flavors is 'fruut.' They tell me it's like 03: mint.  Not sure where we draw the line but 04: probably right there!" 05: Right? 06: A    Correct. 07:  Q    And down at the bottom, on the second 08: line, you said:  "I have been strident and adamant 09: on marketing, and will do my best to rein it in." | Objecting Party's Position: FRE 401/402; FRE 403 (same as above, and Mr. Pritzker's testimony is perfectly consistent with the email exchange)<br><br>Proposing Party's Position: Pritzker knew JLI's flavors would appeal to youth, and that JLI's marketing needed to be 'reined in,' as shown by the admission made in Ex. 14042. This testimony is also relevant to Pritzker's credibility because his view of JLI's marketing and whether it had fruity flavors is inconsistent with the views he expressed in the email exchange, and not unfairly prejudicial.  Not only is the evidence relevant but it should not be excluded because its probative value does not substantially | **Overruled**. This testimony is probative of the company's notice and knowledge of its marketing practices as it relates to the youth demographic. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: Do you see that? 11: A  Yes. | outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have utterly failed to articulate a basis under 403 for its exclusion. | |
| 16. | Page 00100: 22: When were you strident and adamant about 23:  teen-oriented marketing with respect to JUUL?

Page 00100: 25:  THE WITNESS: You -- you've added a

Page 00101: 01:  word.  So let me say that after the launch, it was 02: clear to me that people like Chris and Regan and 03: ▮▮▮ were seeing the marketing campaign as being 04: one that was intended to appeal to minors.  It 05: wasn't, and I knew that. 06:  But nonetheless, after the launch, I 07:  became adamant at least -- I don't know whether 08: strident is the right word -- but I believe I was | Objecting Party's Position: Misstates prior testimony (misleading) (mischaracterizes the exhibit which does not say anything about "teen-oriented" marketing); Argumentative (Mr. Pritzker did not acknowledge that the marketing appeared to be youth oriented -- counsel added in that characterization to his question); Assumes facts not in evidence (form) (counsel's question assumes marketing was "teen oriented"); FRE 401/402; FRE 403 (counsel's improper characterization of Exhibit 14042 as saying JLI's marketing was "teen-oriented" is misleading)

Proposing Party's Position: Mr. Pritzker's prior testimony is not misstated. Counsel asked him a follow up question of 'When were you strident and adamant about teen orientated marketing."  Mr. Pritzker responds by characterizing his  earlier testimony to be that he agrees he was 'adamant' but not sure that "strident is the right word" (See 101:6-8).  Mr. Pritzker denied the campaign was "underage-orientated," which impacts his credibility given his emails written at the time.   Mr. | **Overruled**. The witness immediately corrects the question and responds to the corrected question. The question is not argumentative. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 09: adamant that the campaign that we had was -- 10: people were thinking that it was a -- a minor -- 11: an underage-oriented campaign. I knew that not to 12: be the case, but nonetheless, I feared for the 13: reputation of the company. 14: So I strongly believe that the -- the 15: image of the company should change. I was not 16: alone in that. I believed the entire company 17: started to see that -- that the company needed a 18: different image and a different kind of brand. | Pritzker's answer does not suggest he interpreted the question to be argumentative and it was not. There is no assumption of facts in the question - the preceding dialogue was centered around youth orientated/youthful marketing of JUUL. Mr. Pritzker provided a lengthy answer explaining his thought process, so there is no risk of the jury being misled. In addition to the relevance of Pritzker's acknowledgement that the marketing appeared to be youth-oriented to the negligence and other claims, his insistence that in fact it was not youth-oriented is relevant to credibility, and not unfairly prejudicial. | |
| 17. | Page 00109: 14: BY MR. WATTS: 15: Q   What was that board that your son-in-law 16: served on in 2015? | Objecting Party's Position: FRE 401/402; FRE 403; the witness' son-in-law's activities on the boards of other companies is not relevant to B.B.'s claims; Mr. Olin's involvement with CEH (an environmental organization) does not provide him with a basis for his "objections" about JUUL and, if anything, demonstrate the total irrelevance and lack of foundation for his personal views on JUUL<br><br>Proposing Party's Position: | **Overruled**. The witness forwarded an email from Mr. Olin to high-ranking individuals at the company. This testimony is probative of the basis of the witness's marketing concerns. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | The testimony regarding Chris Olin's Board of Director role on CEH is relevant and not prejudicial foundation for Chris Olin's background and provides the basis for the objections he voiced about JUUL to Mr. Pritzker. | |
| 18. | Page 00109:<br>18: THE WITNESS:  He was on a board of an<br>19: organization called CEH, but it was not a vaping<br>20:  organization or an anti-vaping organization. It's<br>21:  an environmental contaminant -- I'm not sure I<br>22:  could describe what it is, but it certainly was<br>23:  not restricted in its activities to vaping.<br>24: BY MR. WATTS:<br>25:  Q    Not restricted, but he had strong<br><br>Page 00110:<br>01:  thoughts about vaping that he communicated with<br>02: you after watching the vaporize campaign, right?<br>03:  A  Yes. | Objecting Party's Position:<br>Hearsay (witness' son-in-law's opinions); FRE 401/402; FRE 403. Same as above; witness' son-in-law's personal opinions about JLI's advertising campaign is irrelevant, prejudicial, wastes time, and confuses the jury.<br><br>Proposing Party's Position:<br>The testimony regarding Chris Oli's Board of Director role on CEH is relevant and not prejudicial foundation for Chris Olin's background and provides the basis for the objections he voiced about JUUL to Mr. Pritzker. | **Overruled**. See above. Not hearsay. |
| 19. | Page 00111:<br>10: MR. WATTS:  Go to Exhibit 14047.<br>11:  (Pritzker Exhibit No. 14047 was | Objecting Party's Position:<br>Hearsay (Exhibit 14047 contains statements made by Chris Olin, the witness' son-in-law, that are offered for their truth and do not satisfy any applicable hearsay | **Overruled**. MIL 2 did not exclude testimony related to the video. The witness's statements in the underlying correspondence are not |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12:  marked for identification.)<br>13:  MR. WATTS:  14 -- there we go.  And<br>14:  let's start at the bottom.<br>15:  BY MR. WATTS:<br>16:  Q    You write an e-mail on October the 7th<br>17: of 2015, and you say: "The thing is I agree with<br>18: Colbert."  Right?<br>19:  A    Yes.<br><br>Page 00111:<br>25:  Your son-in-law writes back almost two<br><br>Page  00112:<br>01: hours later, right?<br>02: A Yes. | exception. This personal email between Mr. Pritzker and his son-in-law is not a party admission -- Mr. Pritzker is not acting as an agent or employee of JLI on a matter within the scope of that relationship.  Nor is it a business record, because it is not a record of a regularly conducted activity. The statements in this email are not being offered for knowledge/notice, they are being offered for their truth)<br><br>FRE 401/402; FRE 403 (references to "Vaping is So Hot Right Now" Colbert clip are unduly prejudicial and have been excluded by Judge Orrick; unsubstantiated observations by Mr. Olin re "mass adoption of vaping" are inaccurate and risk confusing the jury. In addition, this testimony is cumulative; Plaintiff has already introduced sufficient evidence of Mr. Pritzker's personal views on the Vaporized campaign, there is no need to introduce document after document containing these views)<br><br>MIL 2 (Colbert video excluded by Judge Orrick's order)<br><br>FRE 602 (lack of foundation re Olin's statement re "mass adoption" -- the fact that Mr. Pritzker received this email does not cure the lack of a factual basis for Mr. Olin's statements and their potential to mislead) | hearsay as party admissions.<br><br>The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | Hearsay (same as above); FRE 401/402; FRE 403 (same as above); MIL 2 (same as above); FRE 602 (same as above) <br><br> Proposing Party's Position: <br> MIL 2 is not applicable because these designations do not seek to introduce the Colbert video. And, the Court denied Defendants' MIL 2 except with respect to the Colbert video clip under Rule 403. Instead, there is only reference to the Colbert video in the context of Mr. Pritzker agreeing with it. Notably, the details about the video are not described in this designated testimony. <br><br> The email from Mr. Pritzker to C. Olin (Ex. 14047) contains Mr. Pritzker's admission that he agrees with Steve Colbert's criticisms of the JUUL Vaporized ads, which does constitute an admission by a party since Mr. Pritzker served on the PAX's Board of Directors and had direct involvement in approving the Campaign. Even assuming Mr. Pritzker's email is not admitted for the truth of the matter, it is admissible as an exception to the Hearsay Rule because it contains information regarding the youthfulness of the Vaporized Campaign and goes to the knowledge/notice and motives for JUUL in marketing to youth. Additionally, this testimony is only the introduction of exhibit and foundation is laid. See the substantive responses below. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  |  | Defendants' objection on foundation as to the "mass adoption" statement is found at 112:9-19. The foundation for this Exhibit is laid due to Pritzker being a recipient of the email and acknowledgement that he received the email, and his response to Mr. Olin showing his understanding and engagement with the subject matter of the email. The entirety of the email from Mr. Olin is evidence of JLI's knowledge/notice.<br><br>This testimony continues with the introduction of Ex. 14047 and Plaintiff incorporates the same responses to 111:10-19. |  |
| 20. | Page 00112:<br>08: BY MR. WATTS:<br>09: Q At 2:51 p.m., your son-in-law writes:<br>10: "It's tragic to see the mass adoption of vaping by<br>11: teens after decades spent eradicating smoking."<br>12: Right?<br>13: A   Yes.<br>14: Q   And you say: "At least this should<br>15: cause the company finally to listen to my<br>16: objections to the marketing program, which I find<br>17: even worse than offensive. It's also stupid."<br>18: Right? | Objecting Party's Position:<br>Hearsay (same as above); FRE 401/402; FRE 403 (same as above); MIL 2 (same as above); FRE 602 (same as above)<br><br>Proposing Party's Position:<br>MIL #2 is not applicable because this designation does not seek to introduce the Colbert video. And, the Court denied Defendants' MIL 2 except with respect to the Colbert video clip under Rule 403. Olin's statements are admissible based on the effect on listener, Pritzker/JLI's notice/knowledge and state of mind. Pritzker's statements are admissions by a party opponent (imputed to JLI due to Pritzker's role with JLI), business records, state of mind, notice/knowledge, etc. Not only is the evidence relevant but it should | **Sustained** (111:25-112:13): Hearsay.<br><br>**Overruled** (112:14-19): See above. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 19:  A I do say that. | not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have  failed to articulate a basis under 403 for its exclusion.  Defendants' objection on foundation as to the "mass adoption" statement is   laid due to Pritzker being a recipient of the email and acknowledgement that he received the email and his response that this should cause JLI "finally to listen to my objections to he marketing program, which I find even worse than offensive. It's also stupid."   The entirety of the email from Mr. Olin is evidence of JLI's knowledge/notice and admissible based on the effect on the listener. | |
| 21. | Page 00113: 01: BY MR. WATTS: 02: Q  Mr. Pritzker, I want to show you 03:  Exhibit 14056, which is an e-mail dated 04:  December 6th of 2016. 05:  (Pritzker Exhibit No. 14056 was 06:  marked for identification.) 07: BY MR. WATTS: 08:  Q   You were writing to your son-in-law | Objecting Party's Position: Hearsay (Exhibit 14056 contains statements by Mr. Pritzker to his daughter and son-in-law that are offered for their truth and do not satisfy any applicable hearsay exception. This personal email from Mr. Pritzker to his daughter and son-in-law is not a party admission -- Mr. Pritzker is not acting as an agent or employee of JLI on a matter within the scope of that relationship. Nor is it a business record, because it is not a record of a regularly conducted activity.  In addition, the subject line of the email references a hearsay article from CNN.com | **Overruled**. The question is foundational.

The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 09:  Christopher Olin on December the 9th of 2016; is<br>10:  that right?<br>11:  A   Yes. | titled "E-cigarette use by teens: Surgeon General sounds alarm" -- the title of this article is being offered for the truth and not for knowledge/notice.  Mr. Pritzker is not being asked about the SG report itself, but rather a news article characterizing the report)<br><br>FRE 401/402; FRE 403 (Mr. Pritzker's discussions with family members regarding his personal views of the Vaporized a marketing campaign B.B. does not claim to have seen is are irrelevant and prejudicial.  Mr. Pritzker is not shown the actual 2016 SG report/data, and statements re youth use from the 2016 SG report have no probative value because they report youth use data for 2015 that was collected before JUUL was even launched. It is misleading to suggest that JLI had notice that youth use was increasing in 2016 because this data was for the prior year.  In fact, the data shows youth use decreased in 2016.  In addition, this testimony is cumulative; Plaintiff has already introduced sufficient evidence of Mr. Pritzker's personal views on the Vaporized campaign, there is no need to introduce document after document containing these views. Plaintiff continues to misrepresent Mr. Pritzker's role, he was an investor and Board member and, as he testified at 123:18-125:5, he was not responsible for "approving the marketing of JUUL."  Mr. Pritzker is not a defendant in the B.B. case | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | and the Board's alleged "approval" of the Vaporized campaign is not a question for the jury to decide in this case)<br><br>Proposing Party's Position: Ex. 14056 is an email dated 12/6/2016 from Mr. Pritzker to his son-in-law, Chris Olin re; e-cigarette use by teens - Surgeon General.  This designation is only the introduction of exhibit and establishes foundation for its admission.  As discussed below, the contents of the email, which relate to the Surgeon General's report on teen use of e-cigarettes, which is dated 1 1/2 years following JUUL's introduction is admissible on grounds on the effect of the listener and to establish JLI's notice/knowledge in light of Mr. Pritzker's role with PAX's Board of Directors and his responsibility for approving the marketing of JUUL. The testimony, which relates to a published Surgeon General's report, is not unduly prejudicial and as shown below, Mr. Pritzker's discussions with his family about concerns noted with JUUL marketing campaign is highly relevant to the issues in this case given Mr. Pritzker's decision-making and authority roles as a member of their Board of Directors related to JUUL.  Board members, including Mr. Pritzker, were shown the Vaporized Campaign prior to its release.  JLI has not produced any evidence, much less testimony in their cross |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | examination of Mr. Pritzker that the Board attempted to stop the Vaporized Campaign or disapproved it.  In addition, the jury will hear the testimony of COO, Scott Dunlap, who testified the Board of Directors awareness of the Vaporized Campaign, Mr. Pritzker's comments about the youthful looking models, and their direction to rush JUUL to market. There will be sufficient evidence presented at trial from which the jury can reasonably conclude the BOD approved the Vaporized Campaign.<br><br>Ex. 14056 is relevant to Defendants' knowledge/notice of the harms to teens that were associated with e-cigarette use, and to learn that Mr. Pritzker was aware of the Surgeon General Report regarding the alarming rate of teen use of e-cigarettes, at least as of the date of his email (Ex. 14056 December 6, 2016) and that he had personally expressed his concern about the teen use of e-cigarettes. The Report is only used as a reference and background for the examination by counsel, putting in context the timing of Mr. Pritzker's documented concern. The entire report need not be shown to the witness for that purpose. The relevance of Ex. 14056 outweighs any potential prejudicial impact. | |
| 22. | Page 00113:<br>15: BY MR. WATTS: | Objecting Party's Position:<br>Hearsay (same as above, this sentence also references a "text" | **Overruled.** The statements are not offered for their truth, but for the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: Q   The subject is "E-cigarette use by 17: teens: Surgeon General sounds alarm. CNN.com." 18: And you say regarding your text: "I am 19: obviously really concerned about this too, and 20: never would have invested in Pax in the first 21: place if I had foreseen where it could go." 22: Did I read that correctly? 23: A   Yes.<br><br>Page 00114: 10: BY MR. WATTS: 11: Q   Let me ask you this: We got this 12: Surgeon General sounding the alarm about 13: e-cigarette use by teens. You say you're really 14: concerned and you would have never invested in Pax 15: if you had foreseen where it could go. 16: And then you ask the question, "So what 17: can we do now?" "First, to do whatever we can as 18: a company," and then you list four or five things, | that is not in the email); FRE 401/402; FRE 403 (same as above)<br><br>Hearsay (same as above, and counsel purports to summarize the contents of CNN article at the hyperlink which are also hearsay); FRE 401/402; FRE 403 (same as above, and counsel is simply reading the contents of the document into the record without asking the witness to explain what he meant); Argumentative (attorney commentary and argument at 114:11-15, counsel mischaracterizes the contents of the document at the link as "this Surgeon General sounding the alarm about e-cigarette use by teens"); Compound (form) (question at 114:11-114:20 contains multiple parts, many of which have nothing to do with the actual question on 114:20)<br><br><u>Proposing Party's Position</u>:<br>The is the answer to the preceding question and Plaintiff incorporates the same responses to 113:1-11.<br><br>Pritzker's statements are admissions by a party opponent (imputed to JLI due to Pritzker's role with JLI), business records, state of mind, notice/knowledge, etc. Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting | effect on the listener as well as the company's notice and knowledge. The witness's correspondence is a non-hearsay party admission. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: including responsible marketing.<br>20: Do you see that?<br>21: A  Yes.<br>22: Q   And then you say:  "Our marketing has<br>23: been horrendous against my specific instructions<br>24:  until recently."<br>25:  Did I read that correctly?<br>00: 00115<br>01: A   Yes. | cumulative evidence. Moreover, Defendants have failed to articulate a basis under 403 for its exclusion. The question is not argumentative or compound so as to confuse the witness.  Instead, the question summarizes the events surrounding Mr. Pritzker's statement to Olin, "So what can we do now?".  Mr. Pritzker does not show any lack of understanding the question at 114:11-20 and readily acknowledges he agrees the statements read into the record from his email are accurate.  Nor does the question mischaracterize the contents of the Surgeon General's reference to teen use of e-cigarettes because counsel only read the title of the article into evidence. | |
| 23. | Page 00115:<br>13:  BY MR. WATTS:<br>14:  Q   From the launch of JUUL in 2015 in June,<br>15: and the time you wrote this e-mail in December of<br>16: 2016, did you understand that addicting kids to<br>17:  nicotine causes them physical harm? | Objecting Party's Position:<br>Vague and ambiguous ("physical harm"); Assumes facts not in evidence (form) (counsel's commentary regarding "addicting kids to nicotine" and the physical harm associated with nicotine addiction); Improper Opinion/FRE 701; Lacks Foundation/FRE 602 (re "addicting kids to nicotine" and the physical harm associated with nicotine use. Mr. Pritzker is not an expert in addiction nor does he have the foundation to opine on the broad statement that nicotine use results in actual "physical" harm. It is incorrect to state that Mr. Pritzker did not "seek information about the health risks associated with JUUL" when the question asks specifically about physical harm associated with nicotine use | **Overruled**. The witness's understanding during the relevant period of the health consequences of underage nicotine use goes to his notice and state of mind while participating in the formation of the company's marketing strategy. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | more broadly; in addition, being an investor or board member does not make Mr. Pritzker a "decision-maker on the advertising used to market JUUL," as Mr. Pritzker explained numerous times in his deposition. See, e.g.,123:18-125:5).<br><br>Proposing Party's Position: Subsequent question and answer establish foundation for Pritzker's lack of knowledge. Also, as a leader at JLI, Pritzker's decision not to seek information about the physical harm or health consequences(the term used by Pritzker in his answer) associated with JUUL, while at the same time having awareness of the advertising used to market JUUL and concerns regarding the advertisements reaching youth is relevant to negligence claims against JLI. The questions are not vague; he is asked about his "understanding" whether addicting kids to nicotine causes them physical harm. (115:14-17) and whether he familiarized himself with the literature on physical harms to teens while he was making decisions re: selling JUUL (115:25-116:1-6). Mr. Pritzker does not display any lack of understanding these questions. Mr. Pritzker is not asked to speculate on physical harm risks - he is asked for his understanding. He gives his understanding and not an improper lay opinion. Finally, the reference to "Surgeon General sounded the alarm" and "underage |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | kids being hooked on nicotine" (See 115:25-116:6) are not argumentative but  accurate summaries of the literature. | |
| 24. | Page 00115:<br>20: THE WITNESS: I'm -- I'm no expert in<br>21:  health.  Obviously, there were a lot of reports<br>22:  one way or another, but I -- I can't opine as to<br>23:  health consequences of vaping.<br>24:  BY MR. WATTS:<br>25: Q    Well, when you were making the decisions<br><br>Page 00116:<br>01: that you made from the launch of JUUL in June of<br>02: 2015 until the Surgeon General sounded the alarm<br>03: about e-cigarette use by teens, did you<br>04:  familiarize yourself with the literature about the<br>05: physical harm caused to underage kids being hooked<br>06: on nicotine? | Objecting Party's Position:<br>Assumes facts not in evidence (form) (same as above, and re the "literature about the physical harm caused to underage kids being hooked on nicotine"); Calls for Speculation (form) (re "underage kids being hooked on nicotine" and "physical harm"); Improper Opinion/FRE 701; Lacks Foundation/FRE 602 (same as above); Argumentative (same as above, argument re "Surgeon General sounded the alarm" and "underage kids being hooked on nicotine"); Vague and ambiguous ("when you were making the decisions that you made," "the literature," "kids being hooked on nicotine," "physical harm")<br><br>Same as above, part of same colloquy.<br><br>Proposing Party's Position:<br>Subsequent question and answer establish foundation for Pritzker's lack of knowledge. Also, as a leader at JLI, Pritzker's decision not to seek information about the health risks associated with JUUL, while at the same time being a decision-maker on the advertising used to market JUUL is relevant to negligence claims against JLI. The questions are not vague; he is asked about his "understanding" whether addicting kids to nicotine | **Overruled**. See above. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | causes them physical harm. (115:14-17) and whether he familiarized himself with the literature on physical harms to teens while he was making decisions re: selling JUUL (115:25-116:1-6). Mr. Pritzker does not display any lack of understanding these questions. Mr. Pritzker is not asked to speculate on physical harm risks_- he is asked for his understanding. He gives his understanding and not an improper lay opinion. Finally, the reference to "Surgeon General sounded the alarm" and "underage kids being hooked on nicotine" (See 115:25-116:6) are not argumentative but accurate summaries of the literature. | |
| 25. | Page 00119:<br>02: BY MR. WATTS:<br>03: Q   Well, when you said, "Your marketing has<br>04:  been horrendous against my specific instructions<br>05: until recently," you did that in an e-mail where<br>06: the subject was "E-cigarette use by teens:<br>07:  Surgeon General sounds the alarm." Right?<br>08:  A    Yes. | Objecting Party's Position: Argumentative; Asked & Answered (form) (already asked by counsel at 114:10-115:1).<br><br>Proposing Party's Position: This question was not previously asked. A different topic is covered, although from the same email. The new topic covered in this question highlights the timing of Mr. Pritzker's admission that JUUL's marketing was "horrendous against my specific instructions until recently." | **Overruled**. Not argumentative and seeks permissible clarification of the prior response. |
| 26. | Page 00119:<br>17:  BY MR. WATTS:<br>18: Q   Your son-in-law told you that he found | Objecting Party's Position: Hearsay (purports to characterize statements by Mr. Pritzker's son-in-law Chris Olin that are offered | **Overruled**. The statement is not being offered for its truth but rather for its effect on the listener, and |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19:  the explosion in vaping among teens to be deeply<br>20:  disturbing as well, right?<br>21:  A    Yes. | for their truth and do not satisfy any applicable hearsay exception); FRE 401/402; FRE 403 (Mr. Olin's characterization and understanding of the Surgeon General's report, including his personal feelings about trends in teen e-cigarette use, are not relevant to B.B.'s claims and are confusing, misleading, and unfairly prejudicial); Assumes facts not in evidence (form, assumes there is an "explosion in vaping among teens" when in fact youth vaping rates decreased between 2015 and 2016)<br><br>Proposing Party's Position:<br>Olin's statements are not admitted for the truth but for the effect on listener, Pritzker and goes to JLI's notice/knowledge and state of mind regarding their marketing strategies during the time of an "explosion on vaping among teens."    The acknowledgement of Signiant reports of teen use of e-cigarettes prior to the introduction of JUUL is relevant to plaintiff's claims and establish that JLI should have been cautious and conservative in its marketing strategies to avoid attracting youth given the rise in their use of e-cigarettes.  This evidence is not unduly prejudicial and its probative value is far more important to the issues in the case. | goes to the issue of the company's notice and knowledge while forming its marketing strategy. |
| 27. | Page 00120:<br>03:  MR. WATTS: Exhibit 14059. | Objecting Party's Position:<br>Hearsay (Exhibit 14059 contains statements by Mr. Pritzker's son-in-law Chris Olin that are offered | **Overruled**. See above.<br><br>The admissibility of the exhibit itself is beyond the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: (Pritzker Exhibit No. 14059 was 05: marked for identification.) 06: BY MR. WATTS: 07: Q He wrote you an e-mail on December the 08: 9th of 2016 on the subject of "Surgeon General 09: sounds the alarms on teens and e-cigarettes" at 10: 1:38 p.m., and he told you: "I find the explosion 11: in vaping among teens to be deeply disturbing as 12: it is creating another generation of nicotine 13: addicts." 14: Do you see that, sir? 15: A Yes. | for their truth--i.e. that there is an "explosion in vaping among teens"--and do not satisfy any applicable hearsay exception. Plaintiff mischaracterizes JLI's position regarding youth use in 2018, but in any event, any attempt to use this exhibit to "impeach" JLI on that topic using the 2016 SG report, which reports data for 2014 to 2015 is improper); same as above; in addition, it is misleading and prejudicial to characterize the trend as "an explosion" -- instead of relying on Mr. Olin's hearsay statements, Plaintiff should introduce evidence of actual trends in youth use during this timeframe which would show that youth vaping rates decreased between 2015 and 2016, contrary to CNN.com and Mr. Olin's characterizations); Assumes facts not in evidence (form, assumes there is an "explosion in vaping among teens"); Lacks Foundation/FRE 602 (counsel reads into the record email from Mr. Olin which Mr. Pritzker lacks foundation to testify to)

Proposing Party's Position: Olin's statements are not for the truth but for the effect on listener, Pritzker/JLI's notice/knowledge and state of mind. Notice/knowledge by Pritzker (thus JLI) of a rising youth vaping problem in 2016 is highly relevant and not unfairly prejudicial, and has added relevance for impeachment of the company's repeated claims that it was not | scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | aware of a youth problem before 2018.  Plaintiff does not mischaracterize JLI's position on youth use; Ex. 14059 is only introduced in this designation.  It is not misleading to refer to the "explosion in vaping" because this statement is attributable to Mr. Olin, and there can be no mischaracterization since it is read directly from the email.  Mr. Pritzker does not lack foundation to testify about his receipt of this email, a fact that he has personal knowledge of and he is not asked to testify about Mr. Olin's statements so the necessary foundation exists. | |
| 28. | Page 00121:<br>07: Q  Now, you had the CDC data with respect<br>08: to underage vaping use in 2016, right?<br><br>Page 00121:<br>10: THE WITNESS: When you say I had it, I<br>11: was aware of the -- that there was a CDC report.<br>12:  BY MR. WATTS:<br>13: Q  Sure.  In other words, you had access to<br>14:  the CDC reports as far back as 2013 when you<br>15:  joined the board of Ploom, Incorporated, right?<br>16: A  Yes.<br>17: Q  You had it in 2013, right? | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form) ("the CDC data with respect to underage vaping use"; no clarification regarding the data has been provided and subsequent question contains equally vague references to "CDC reports")<br><br><u>Proposing Party's Position:</u><br>The necessary clarification follows in next question, 121:10-15, and the witness does not convey a lack of understanding or clarity with respect to what Counsel asked about the CDC reports  on underage vaping. | **Overruled**. The question is not impermissibly vague or ambiguous. The witness's response demonstrates an understanding of the question. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18: A   They were publicly available, yes.<br>19: Q   You had access to it in 2014, right?<br>20: A   Yes.<br>21: Q   You had access to it in 2015, right?<br>22: A   Yes.<br>23: Q   You had access to it in 2016?<br>24: A   Yes.<br>25: Q   In 2017?<br><br>Page 00122:<br>01: A   Yes.<br>02: Q   And in 2018?<br>03: A   Yes. | | |
| 29. | Page 00126<br>02: BY MR. WATTS:<br>03: Q   Hmm.  Well, when you say, "I found the<br>04:  explosion in vaping among teens to be deeply<br>05:  disturbing," did you communicate that to the<br>06:  management of the company?<br><br>Page 00126:<br>09: THE WITNESS:  I believe the company --<br>10: you know, the company itself -- when you say "the<br>11: company," management of the company was very aware<br>12:  of these studies.  I would say everybody was | Objecting Party's Position:<br>Hearsay (same as above with respect to Exhibit 14059); FRE 401/402; FRE 403 (misleadingly suggests that the statement in Exhibit 14059 was made by Mr. Pritzker when in fact it was a hearsay statement made by a family member; the statement itself is misleading and prejudicial for the reasons stated above); Vague and ambiguous (form) ("when you say," "the management of the company")<br><br>Proposing Party's Position:<br>"Management of the company" is not vague; it clearly refers to management at JLI, and Pritzker's response demonstrates that he understood the question.  The hearsay objection to Ex. 14059 is not applicable because this is an email exchange between Mr. Pritzker and Mr. Olin re: the | **Sustained**. The question misleadingly attributes a statement to the witness that was in fact made by Mr. Olin. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: disturbed by it. Nobody wanted to see an increase<br>14:  in -- in vaping, even if it wasn't JUUL products<br>15:  that was being used. It's a bad -- a bad thing.<br>16: The company never wanted it.  And the company was<br>17:  aware of it.  I did not need to bring it to<br>18:  anybody's attention.<br>19:  BY MR. WATTS:<br>20: Q    How did you know that the company was<br>21:  aware of it?<br>22: A    Well, the -- as you say, the CDC report,<br>23:  the Surgeon General report were around, and I have<br>24:  to assume that the company was aware of it.<br>25: Q   Okay.  You know that you were aware of<br><br>Page 00127:<br>01:  it, right?<br><br>Page 00127:<br>03: THE WITNESS: Yes, I was aware of it.  I<br>04:  saw this report. | explosion of the vaping among teens; the statement by Olin are admitted for the purpose of the effect on the listener and JLI's notice/knowledge/motives. Counsel's question is not misleading and does not attribute the statement re: the explosion in vaping to Mr. Pritzker; the jury will view the document during the examination, from which they can make their own decision on who made the statement.<br><br>Pritzker's belief is that everybody was aware of the increase in vaping among teens and therefore, he reasoned that "I did not need to bring it to anybody's attention" is admissible and given that Mr. Pritzker gives his personal opinion, the necessary foundation is laid for the testimony.  The question is not vague but refers to the witness' immediately preceding testimony where he used the phrase "aware" with respect to the studies on the explosion of teen vaping. The witness understood that the question of 'aware of it' referred to this testimony about the explosion of teen vaping.   Mr. Pritzker does not speculate in testifying he "assumed" the company was aware. When reading the testimony as a whole, it is apparent that Mr. Pritzker is conveying that the company must have/had to be aware of these reports. | |
| 30. | Page 00127:<br>05: MR. WATTS:  Okay. Let's go to | Objecting Party's Position:<br>Hearsay; hearsay within hearsay (Exhibit 14068 contains numerous | **Overruled**. The statements are not being offered for the truth of the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 06: Exhibit 14068.<br>07: (Pritzker Exhibit No. 14068 was<br>08: marked for identification.)<br>09: BY MR. WATTS:<br>10: Q  This is an e-mail from your son-in-law<br>11: Chris Olin to you dated July 28th of 2017. The<br>12: subject is "A New York Times article, 'FDA to<br>13: Target Addictive Levels of Nicotine in<br>14: Cigarettes.'"<br>15: Do you see that?<br>16: A  Yes.<br>17: Q  He writes: "Tighter regulations is<br>18: great, and smoke is clearly a problem, but so is<br>19: any nicotine at all."<br>20: Do you see that, sir?<br>21: A  Yes.<br>22: Q  And after quoting Prop 65, he says:<br>23: "And vaping just replaces the dangers of smoke<br>24: with the dangers of the vapor ingredients, but<br>25: with the nasty perception that it is harmless,<br><br>Page 00128:<br>01: which is why I believe use among teens is so<br>02: rampant." | hearsay statements -- by Mr. Pritzker in his personal capacity, by his son-in-law Chris Olin, and excerpts from third party news articles and websites. These are all being offered for the truth and do not satisfy any hearsay exception. Plaintiff mischaracterizes JLI's position regarding youth use in 2018, but in any event, any attempt to use this exhibit to "impeach" JLI on that topic is improper); Lacks Foundation/FRE 602 (counsel reads into the record statements by Chris Olin which Mr. Pritzker lacks foundation to testify to); FRE 401/402; FRE 403 (Chris Olin's personal views on ENDS product regulation, ENDS product safety, and consumer perceptions regarding the safety of ENDS products is irrelevant, prejudicial, and misleading.  In addition, this document has to do with regulation regarding combustible cigarettes, not ENDS products like JUUL.  It would be confusing, misleading, and prejudicial to imply that JUUL products contain the ingredients listed in Mr. Olin's email)<br><br>Proposing Party's Position:<br>Olin's statements are not for the truth but for the effect on listener, Pritzker/JLI's notice/knowledge and state of mind. Notice/knowledge by Pritzker (thus JLI due to Mr. Pritzker serving on the Board at this time) of both use among teens in 2017 and the misleading health perception surrounding vaping is | matter, but rather for the effect on the listener.  The statements go to the witness's notice and knowledge while participating in the formation of the company's marketing strategy.  The witness has foundation to testify concerning the receipt of this correspondence.<br><br>The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 03: Is that what your son-in-law told you on 04: July the 28th of 2017? 05: A Yes. That was his view. 06: Q Did you write him back and tell him, I 07: disagree with your view? 08: A I don't remember. | highly relevant to BB's negligence and failure to warn claims and not unfairly prejudicial. It has added relevance for impeachment of the company's repeated claims that it was not aware of a youth problem before 2018. The necessary foundation is laid for this document given Mr. Pritzker being the recipient of Mr. Olin's email. Mr. Pritzker is not asked questions within Mr. Olin's knowledge, but instead Mr. Olin's email is admissible on the ground of the effect of the listener. The fact of tighter regulation on e-cigarettes and the FDA targeting addictive levels of nicotine in cigarettes in July 2017 (date of Ex. 14068) is relevant to JLI's knowledge/notice and motives in light of Mr. Pritzker's role on PAX's Board of Directors with respect to the safety of ENDS products as conveyed by Mr. Olin and is not unduly prejudicial. | |
| 31. | Page 00130: 08: Q Okay. Now let me take you to 09: Exhibit 14005. 10: (Pritzker Exhibit No. 14005 was 11: marked for identification.) 12: BY MR. WATTS: 13: Q And this is an article entitled "2018 14: NYTS Data: Startling Rise in the Youth 15: E-Cigarette Use." And the article begins: | Objecting Party's Position: Hearsay (Exhibit 14005 is a printout of article regarding 2018 NYTS data; it is offered for its truth and does not satisfy an hearsay exception). Foundation/FRE 602 (no foundation established for this article or the truth of the statements therein, counsel simply reads the article into the record) <br><br> Proposing Party's Position: Published reports about youth vaping are not for the truth but for the effect on listener, Pritzker/JLI's | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 16: "According to 2018 youth -- National Youth Tobacco<br>17: Survey, NYTS, data, current e-cigarette use or<br>18: vaping among middle and high school students<br>19: increased alarmingly between 2017 and 2018, with<br>20: over 3.6 million kids currently using e-cigarettes<br>21: in 2018."<br>22: Do you see that, sir?<br>23: A    Yes.<br>24: Q    Here's my question: Were the results of<br>25: the 2018 National Youth Tobacco Survey available<br><br>Page 00131:<br>01: to you when you served as a board of directors on<br>02: this company?<br>03: A    I believe they were public.<br>04: Q    And I could ask you the same questions<br>05: for 2017, '16, '15, '14, and '13, and your answer<br>06: would be they would be public and they were<br>07: available to me, right?<br>08: A    That's correct. Yes.<br>09: Q    Now, if we go to the fourth page of this | notice/knowledge and state of mind. The article is only referred to for the purpose of asking Mr. Pritzker whether the results of that survey were available to him when he was on JUUL's Board and it is appropriate and relevant for Mr. Pritzker to be asked this question to get an understanding of the degree to which he was aware of the studies reporting startling rises in youth use during the time JUUL was widely marketed on the internet and in others ways that exposed underage consumers to the ads. Therefore, the lack of foundation objection is not applicable. | |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: particular document, there's a question asked: 11: "What caused this sharp increase in use?" And it 12: says: "NYTS study authors hypothesize the last 13: year's increase in e-cigarette use among youth 14: could be attributable to the use of USB flash 15: drive-like e-cigarettes, including JUUL, which 16: have garnered popularity among youth." 17: Do you see that, sir? 18: A  Yes. | | |
| 32. | Page 00132: 10: BY MR. WATTS: 11: Q   These products had the ability to be 12: easily concealed and used discreetly.  That's 13: true, right?<br><br>Page 00132: 14: A  That -- it's a fact. | Objecting Party's Position: Vague and ambiguous (form) (vague as to "these products" and "ability to be easily concealed and used discreetly"); Lacks Foundation/FRE 602<br><br>Proposing Party's Position: The question is not vague in context; it  clearly refers to Juul devices, with which Pritzker has personal experience.  He is sufficiently knowledgeable about JUUL through his role on the Board and has adequate foundation to testify from his personal knowledge.<br><br>This is the answer to the preceding question and Plaintiff incorporates | **Sustained**. The question is vague and ambiguous in the absence of the preceding designation, which has been stricken. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | by reference the response to 132:10-13. | |
| 33. | Page 00138:<br>11: MR. WATTS: Let's go to Exhibit 14143.<br>12: (Pritzker Exhibit No. 14143 was<br>13: marked for identification.)<br>14: MR. WATTS: And if we could go to the<br>15: second page, and put up the second and the third<br>16: page so we can get the context.<br>17: BY MR. WATTS:<br>18: Q At the very bottom of the page on<br>19: March 31st, 2018, Bruce Raben of Hudson Cap sends<br>20: you a link about Juul Labs raising 150 million in<br>21: debt after spinning out of Pax.<br>22: Did I read that correctly?<br>23: A Yes.<br>24: Q And he asks you at the very bottom:<br>25: "Still involved," question mark. And you respond:<br><br>Page 00139:<br>01: "Very. Raised 130 very oversubscribed."<br>02: Right?<br>03: A Yes. | Objecting Party's Position:<br>Hearsay (Exhibit 14143 contains statements by Bruce Raben, a third party, that are offered for their truth and do not satisfy a hearsay exception. This document is not a business record because it is not a record of a regularly conducted activity. Lacks Foundation/FRE 602 (re what Raben meant and re what "underage people love"); FRE 403 (re "but underage people love our products and the outcry is understandably huge")<br><br>Proposing Party's Position:<br>Ex. 14143 is an email to Mr. Pritzker from Bruce Raben of Hudson Cap about a link reporting that JUUL raised $150M in debt after spinning out of PAX and asked Ritzier whether he was still involved. Mr. Raben's' comments are not offered for the truth of the matter, but for the effect on the listener. Notably, Mr. Pritzker replied, "but underage people love our products and the outcry is understandably huge", and therefore sufficient foundation is laid for his own statement. Given this admission was made during Mr. Pritzker's tenure on JUUL's Board, any conceivable prejudice is outweighed by its probative value. | **Sustained** (138:14-139:5). These hearsay statements are being offered for their truth.<br><br>**Overruled** (139:6-10): This statement is a non-hearsay party admission.<br><br>The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: Q   He says: "Cool."  Right? 05: A    Yes. 06: Q    And you respond on March the 31st of 07: 2018:  "Yeah, but underage people love our 08: products and the outcry is understandably huge." 09:  Did I read that correctly? 10:  A  Yes. | | |
| 34. | Page 00142: 25: Q  Mr. Pritzker, let's go to Exhibit 14108. | Objecting Party's Position: [MIL 3: Third party social media posts about JUUL that JLI did not post or control is not relevant to JLI's liability, as Judge Orrick previously held (Colgate v. Juul Labs, Inc. (Colgate II), 402 F. Supp. 3d 728, 760 (N.D. Cal. 2019)) and is unduly prejudicial. This study goes beyond background and risks confusing the jury]  Hearsay (Exhibit 14108 contains statements by several third parties, including Dan Sundheim, that are offered for their truth and do not satisfy a hearsay exception.  The document and the attached study at Exhibit 14109 are not a JLI business record because they are not a record of a regularly conducted activity; the attached study was commissioned by D1 and performed by an entity called Insight Rooms, not JLI.); Lacks Foundation/FRE 602 (re the attached study, Mr. Pritzker | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | specifically states he does not recall receiving or reading the study at 148:10-12, and the study was not performed by JLI.); FRE 401/402; FRE 403 (the analysis referenced in the email relates to third party social media posts and should be excluded under MIL 3 because, under the Court's prior orders, JLI is not liable for third party social media posts that JLI did not post or control. Moreover, introduction of the third party analysis is prejudicial and confusing to the jury because there is no information about the methodology used to generate the analysis, nor is there an opportunity to assess the reliability of the analysis.  It would be prejudicial and misleading to present the results of an unreliable analysis which purports to reach wide ranging conclusions regarding consumer perceptions and the age and nicotine history of consumers who use JUUL based solely on what appears to be an analysis of third party social media posts)<br><br>Proposing Party's Position:<br>[MIL 3 was denied except "plaintiff shall not reference posts made by rapper "Yung Turd" and the parties shall meet/confer on a limiting instruction. Mil does not apply to Ex. 14108, which is an email from Dan Sundheim dated 4/30/3018 to a director of JUUL (Valani) regarding results from the JUUL social media study they commissioned.] The document |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  |  | attached to Ex. 14108 is not offered for the truth of the matter but to show the knowledge/notice of JLI re: the social media posting/studies being done regarding its product, including the appeal to youth and never-smokers.  This is evidence is offered related to notice/knowledge of the youth appeal of JUUL and JLI's advertising, large youth userbase, and the significant use of JUUL by nonsmokers.  The social media reviews of JUUL are relevant to JLI's knowledge/notice and motives re: its marketing strategies and whether those strategies included capturing the underage audience to  become attracted to JUUL.  Although Mr. Ritzier does not recall the study, the questions to him are appropriate and his present recollection of whether he received the article has no relationship to whether the line of questioning through page 152 is admissible.  The email and the study were circulated amongst JLI's leadership. Pritzker received the email and attachment, thus has the foundation to testify about their contents. According to the designation at 150: 14-17, after being shown several statements from the article, Mr. Pritzker s asked whether Pritzker commissioned any studies researching the demographics of who used JUUL. Rather, this study of social media posts is related to proving notice/is evidence of knowledge of youth usage of Juul |  |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | by Pritzker (and Valani, another Board member and leader at the company) thus JLI.    Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have utterly failed to articulate a basis under 403 for its exclusion. | |
| 35. | Page 00144: 15: Q Okay.  So Dan Sundheim writes an e-mail 16: on April the 30th, 2018, to a director of Juul, 17:  Riaz Valani, as well as two others, and it says: 18: "Juul review by social conduct -- context." "Hey, 19: guys, I thought you would find this interesting: 20:  Results from the JUUL social media study we 21:  commissioned." 22:  Did I read that correctly? 23:  A You did.  Page 00145: 09:  Q Okay.  And then as we go up to the top | Objecting Party's Position: [Same as above - MIL 3]  Same as above.  Hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403  Proposing Party's Position: Plaintiff incorporates the same responses to 142:25.  The study is not offered to establish its truthfulness; but instead is offered to  show the effect on the listener as to notice/knowledge/motive.  Same as above, Exhibit 14109 is the hearsay third party analysis attached to Exhibit 14108 based on third party social media posts that were not controlled by JLI. Hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403 | **Overruled**. The statements are not being offered for their truth, but rather to show notice, knowledge, and effect on the listener. The witness has foundation to testify to the receipt of this correspondence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10:  of the page, Mr. Valani forwards it to you, with a<br>11:  copy of the JUUL analysis on April the 30th of<br>12:  2018; is that right?<br>13:  A  When you say "the JUUL analysis" --<br>14:  Q  It's an attachment.<br>15:  A  You mean the analysis that was<br>16:  commissioned apparently by D1?<br>17:  Q  Yes.<br>18:  A  Okay.<br>19:  Q  And you can see that on this exhibit,<br>20:  right?<br>21:  A  Yeah.<br>22:  Q  All right.  Now, let's go to the next<br>23:  exhibit, 14109, and look at that analysis that was<br>24:  sent to you on April the 30th of 2018. | | |
| 36. | Page 00146:<br>09:  BY MR. WATTS:<br>10:  Q  It says:  "Overall sentiment towards<br>11:  JUUL remains overwhelmingly positive with<br>12:  popularity among cigarette quitters, trendy<br>13:  newbies and sustainers."<br>14:  Do you see that?<br>15:  A  Yes. | <u>Objecting Party's Position:</u><br>[Same as above - MIL 3]<br><br>Same as above.  Hearsay (third party study offered for the truth); Lacks Foundation/FRE 602 (counsel is reading the results of an unreliable third party study into the record which Mr. Pritzker did not author, is not familiar with, and has no foundation to testify to); FRE 401/402; FRE 403<br><br><u>Proposing Party's Position:</u> | **Sustained** (starting from 145:22). The witness lacks adequate foundation to testify concerning the meaning of the contents of an article written by a third-party. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: Q  Trendy newbies would be like cool people<br>17: that haven't smoked before, right?<br><br>Page 00146:<br>20: THE WITNESS:  I wouldn't -- yeah, I<br>21: wouldn't try to further define what "trendy<br>22: newbie" means.<br>23: BY MR. WATTS:<br>24: Q   So the sentiment here says:  "Cool<br>25: design, unobtrusiveness, the youth 'it' factor for<br><br>Page 00147:<br>01: the trendy."  Right?<br>02:  A It does say that.<br>03: Q  This study we're seeing in the bottom<br>04: says:  "JUUL is not only replacing cigarettes, it<br>05: is creating a new market for nicotine<br>06:  consumption."  Right?<br>07:  A  It says that, yes.<br>08:  Q  And if we go to Bates page ending 4000,<br>09: it says:  "Who is engaging the demographics of<br>10: those discussing JUUL?"  It says:  "The highest | Plaintiff incorporates the same responses to 142:25. The study is not offered to establish its truthfulness; but instead is offered to  show the effect on the listener as to notice/knowledge/motive. | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 11: volume of engagement on social around JUUL comes 12: from millennial males." 13: Did I read that correctly? 14: A Yes. 15: Q And it's got a generation -- 16: MR. WATTS: And let's blow up the 17: generation chart on the right. 18: BY MR. WATTS: 19: Q -- and we've got millennials at 20: 48 percent and Gen Z at 44 percent, right? 21: A That's what it says. 22: Q And Gen Z includes people after 23: millennials with birth dates up until 2010, right? 24: A I don't know.<br><br>Page 00148: 15: BY MR. WATTS: 16: Q It says: "The highest volume of those 17: engaging around JUUL are those who started with 18: JUUL and never smoked traditional cigarettes." 19: Do you see that? 20: A I see it. 21: Q And it says: "This group was nearly | | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 22: three times the volume of those who were using on 23: attempted path to quit smoking." 24: Do you see that, sir? 25: A  I see that. | | |
| 37. | Page 00150: 14: Q  Now, here's my question:  As a member of 15:  the board of directors, did you commission any 16: sort of research with respect to the demographics 17: of who was using JUULs and how old they were? <br><br> Page 00150: 19:  THE WITNESS:  No. | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form) ("any sort of research," "the demographics of who was using JUUL"); Compound (form)<br><br>Part of same colloquy as above. Vague and ambiguous (form); Compound (form)<br><br><u>Proposing Party's Position:</u><br>The question simply asked Mr. Pritzker if they commissioned/started any type of research on the demographics of the JUUL users. The question is not vague and Mr. Pritzker  clearly understood and answered accordingly. | **Overruled**. The question is not impermissibly vague, ambiguous or compound. |
| 38. | Page 00150: 20:  MR. WATTS: Go to Exhibit 14112. 21:  (Pritzker Exhibit No. 14112 was 22:  marked for identification.) | <u>Objecting Party's Position:</u><br>Hearsay (Exhibit 14112 is a personal email from Mr. Pritzker to his family.  It is not a party admission -- Mr. Pritzker is not acting as an agent or employee of JLI on a matter within the scope of that relationship. Moreover, these statements are offered for their truth and do not satisfy any other hearsay exception. Mr. Pritzker's statements also reference statements made by his son-in-law Chris Olin, which are also hearsay. Plaintiff mischaracterizes JLI's | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | position regarding youth use in 2018, but in any event, any attempt to use this exhibit to "impeach" JLI on that topic is improper); Lacks Foundation/FRE 602; FRE 401/402; FRE 403 (personal concerns and views of family members have no relevance to B.B.'s claims, and are highly prejudicial) |        |
|     |                                      | <u>Proposing Party's Position</u>: Ex 14112 is not hearsay. This email exchange between Mr. Pritzker and Mr. Olin and other family members including Mr. Pritzker's own admissions/statements and Olin's statements are not for the truth but for the effect on listener, Pritzker/JLI's notice/knowledge and state of mind. Notice/knowledge by Pritzker (thus JLI) of use among teens and the misleading health perception surrounding vaping is highly relevant to BB's negligence and failure to warn claims and not unfairly prejudicial. It has added relevance for impeachment of the company's repeated claims that it was not aware of a youth problem before 2018.  Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have failed to articulate a basis under 403 for its |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | exclusion. Foundation is laid as to its admissibility given that Mr. Pritzker wrote the email.  As the views of family members expressed in the email, these views are relevant to establishing JLI's notice of the youth appeal of its products, which ultimately reached the hands of BB. | |
| 39. | Page 00150:<br>23:BY MR. WATTS:<br>24:  Q This is an e-mail you wrote on May the<br>25:  5th of 2018 to your son-in-law, to your daughter,<br><br>Page 00151:<br>01:  and to your two sons:  Regan, Joby and Isaac,<br>02: right?<br>03:  A  Yes.<br>04:  Q   And your e-mail says:  "Chris, again, I<br>05:  want to express my appreciation to you for<br>06:  articulating your concerns about JUUL, both the<br>07:  product and the potential impact of our<br>08:  participation."<br>09:  Did I read that correctly?<br>10:  A    Yes.<br>11:  Q    Down below a line or two, you say:  "I<br>12:  hope this doesn't appear defensive, nor an | <u>Objecting Party's Position:</u><br>Same as above.  Hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403.<br><br><u>Proposing Party's Position:</u><br>This designation continues with the same Exhibit, No. 14112, where Mr. Pritzker acknowledges statements he wrote about the popularity of JUUL with kids, admitting that his family perceived that threat years ago, and acknowledging his family having told him of their concerns about JUUL and the potential impact on the family's involvement with JUUL. As such, the lack of foundation does not apply. Plaintiff also incorporates the same responses to 150:20-22. | **Overruled**. The witness's statements are non-hearsay as party admissions.  The statements attributed to the witness's family members are not offered for their truth, but rather to show notice, knowledge and effect on the listener. The witness has foundation to testify concerning statements he previously made and correspondence he received. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: argument in favor of the social or health benefits<br>14: of JUUL." Right?<br>15: A   Yes.<br>16: Q   You tell your son-in-law and three of<br>17: your kids:  "I truly appreciate the enormity of<br>18: the problems." Right?<br>19: A  Yes.<br>20: Q And a couple of lines down, you say:<br>21: "You're right, I never anticipated the scale of<br>22: the adoption of the device or its popularity with<br>23: kids.  You and Regan saw the threat long before I<br>24: appreciated it."<br>25:  Right?<br><br>Page 00152:<br>01: A Yes.<br>02:  Q Now, to be fair to your son-in-law and<br>03: your daughter, they both communicated that threat<br>04: to you years before this e-mail was sent, right?<br>05:  A   Yes. | | |
| 40. | Page 00152:<br>06: Q    And you say: "Whether the positive | Objecting Party's Position:<br>Same as above.  Hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403; Vague and ambiguous (form) (152:12-16, | **Overruled**. See above. The question is not vague or ambiguous, and neither assumes facts not in |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
|  | 07: outweighs the negative depends on a number of<br>08: factors, including" -- and the second factor that<br>09: you list is, "The long-term damage caused by using<br>10:  JUUL, which is obviously not yet known."  Right?<br>11:  A    That's what it says.<br>12:  Q    Prior to authorizing the launch of JUUL<br>13:  in June of 2015, did the board of directors of<br>14:  Ploom, Incorporated, insist on long-term clinical<br>15: studies to evaluate the potential for long-term<br>16: damage caused by JUUL use? | "long-term clinical studies," "long-term damage"); Assumes Facts Not In Evidence; Calls for Speculation (form) (152:12-16, assumes that there is "long-term damage" caused by JUUL use)<br><br>Proposing Party's Position:<br>Plaintiff also incorporates the same responses to 150:20-22. Pritzker's acknowledgement that the long-term damage caused by using Juul is "obviously not known yet" is central to Plaintiff's claims of misleading health messaging, and credibility evidence inconsistent with both Pritzker's and JLI's repeated claims that Juul is a safe alternative to cigarettes. Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have failed to articulate a basis under 403 for its exclusion.  The question is not vague as to  "long-term clinical studies," "long-term damage", given these terms are used by Pritzker in the email, to which he states, neither of which is known yet.  There is no assuming facts not in evidence, given that this designation reads into the record Mr. Pritzker's statement contained n Ex. 14112, which he agrees is read accurately. | evidence nor calls for speculation. |
| 41. | Page 00153: | Objecting Party's Position: | **Overruled**. See above. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
| | 06: THE WITNESS: Not to my knowledge, no.<br>07: BY MR. WATTS:<br>08: Q In 2016, did the board of directors of<br>09: the company require the management to conduct<br>10: long-term studies -- clinical studies to evaluate<br>11: whether long-term damage was caused by using JUUL?<br><br>Page 00153:<br>14: THE WITNESS: Not to my knowledge, no.<br>15: BY MR. WATTS:<br>16: Q In 2017, did the board of directors of<br>17: the company require its management to conduct<br>18: long-term clinical studies to evaluate the<br>19: potential for long-term damage caused by using<br>20: JUUL?<br>21: A Not to my knowledge, no.<br><br>Page 00153:<br>23: BY MR. WATTS:<br>24: Q Prior to May the 5th of 2018, when you<br>25: wrote this e-mail, are you aware of a single<br><br>Page 00154: | Vague and ambiguous (form) ("require" "long term clinical studies" and "long term damage"); Calls for Speculation (form); Lacks Foundation/FRE 602 (no foundation established that would suggest the witness knows what kinds of studies were done pre or post launch)<br><br>Proposing Party's Position:<br>Mr. Pritzker is not speculating about whether or not Jilt conducted longer studies to evaluate the health risk of JUUL; he answers each time "not to his knowledge." | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 01: long-term clinical study conducted by Juul Labs, 02: Pax, Inc., or Ploom before it, that evaluated 03: whether long-term use of JUUL caused long-term 04: damage?<br><br>Page 00154: 08: THE WITNESS: Not to my knowledge, no. | | |
| 42. | Page 00165: 06: MR. WATTS: Why don't you try 14012. | Objecting Party's Position: FRE 401/402; FRE 403. Exhibit 14102 appears to be a demonstrative analysis, drawn from multiple underlying documentary sources, showing the number of shares owned, purchase price, average price per share, date issued, and amount of special dividend for numerous investors other than Mr. Pritzker. No questions are asked to determine whether Mr. Pritzker is familiar with these source documents or if Plaintiff's calculations are correct. While the Court has permitted testimony regarding the amount made from the Altria investment, it granted MIL 7 with respect to the personal wealth and spending patterns of individual witnesses. The amounts invested by various investors do not relate to proceeds from the Altria investment and are only indicative of the investor's overall wealth. Plaintiff should not be permitted to circumvent this order by showing the jury large | The admissibility of the exhibit is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | dollar amounts invested by Mr. Pritzker or other individuals. This information has no probative value and it is prejudicial.<br><br>Proposing Party's Position: Introduction of exhibit. Substantive responses to 165:16-165: 22 are incorporated herein. | |
| 43. | Page 00165:<br>16: BY MR. WATTS:<br>17: Q Mr. Pritzker, when the Altria<br>18: transaction was consummated, your home office that<br>19: had invested, according to this, $10,233,415<br>20: received a special dividend of $1,827,013,078; is<br>21: that right?<br>22: A Yes, it did. | Objecting Party's Position: Same as above. FRE 401/402; FRE 403; MIL 7<br><br>Proposing Party's Position: Pritzker was the second largest investor in JLI. During JLI's discussions with Altria, Pritzker (along with the largest investor Riaz Valani) served as a lead negotiator for JLI in securing Altria's investment. Testimony about Pritzker's large return on investment of JLI by growing JLI's market share by attracting youth is relevant to the Defendants' Scheme, motive, knowledge, intent and bias. See Plaintiffs Response to MIL #7 (Central to Plaintiff's claims are allegations that key employees and investors of JLI like Valani sought to position JLI for acquisition by Big Tobacco so that they could reap large returns on their investment.) Pritzker and these other individuals knew they needed to grow JLI's market share to realize the enormous returns they sought, and they set about doing so by expanding the market for e-cigarettes by, among other things, creating a youth vaping epidemic. Evidence surrounding | **Overruled**. The witness's investment in the company and resulting return are probative of motive, intent and bias. This testimony is not offered to show the witness's personal wealth or spending practices. The response reflects familiarity with the amounts identified in the question. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Pritzker's investment in JLI, Altria's investment in JLI, and Pritzker's payout resulting from Altria's investment in JLI, and the financial condition of JLI and Altria before and after Altria's investment in JLI are all directly relevant to the alleged wrongdoing. In addition, Mr. Pritzker's investment in JLI and the return they received on that investment as a result of the Altria investment (i.e., the payout he received) are directly relevant to that his motive, knowledge, and intent to grow the market for e-cigarettes, increase the number of nicotine-addicted youth, and make JLI a more attractive target for a potential acquisition. See United States v. Reyes, 660 F.3d 454, 464 (9th Cir. 2011) (permitting the introduction of evidence of defendant's financial gains to show motivation for and knowledge of the overall scheme). Beyond being relevant to the substantive issues in the case, evidence of any individual's investment in JLI, the lucrative payouts they received as a result of Altria's investment in JLI, and potential future financial payoff from remaining investment in JLI are all evidence of potential bias. There is no risk of juror confusion or undue prejudice | |
| 44. | Page 00167:<br>06: Q   And with respect to your family<br>07: offices -- your offices' investment, we got B4 | Objecting Party's Position:<br>Same as above. FRE 401/402; FRE 403; MIL 7<br><br>Proposing Party's Position:<br>See response to 165:12-22 above. | **Sustained**. It is not established that the witness has familiarity with or can confirm the calculation presented in the question. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: divided by B3, and that shows that your special<br>09: dividend was 178.53 times the original investment,<br>10: as stated on the document that we referenced,<br>11: 14012, right?<br>12: A   I see your calculation, yes. | | |
| 45. | Page 00170:<br>18: MR. WATTS: Okay. Now, let's go to<br>19: Exhibit 14133.<br>20: (Pritzker Exhibit No. 14133 was<br>21: marked for identification.)<br>22: BY MR. WATTS:<br>23: Q   A Teddy Troy writes an e-mail on<br>24: December the 13th of 2018, and the first three<br>25: lines say: "Hi. Surgeon General Jerome Adams<br><br>Page 00171:<br>01: called me in for a meeting to let me know that he<br>02: will be issuing an advisory on Tuesday to raise<br>03: awareness of the issue of youth usage of vaping | Objecting Party's Position:<br>Hearsay (statements by SG Adams referenced in Exhibit 14133 are not party admissions and are offered for their truth.  In addition, this document is not a business record because it is not a record of a regularly conducted activity); FRE 403 (unsubstantiated statements attempting to quantify the amount of youth use of JUUL are misleading and prejudicial; the jury should be shown the actual underlying data and not what was conveyed by third party sources)<br><br>Proposing Party's Position:<br>This document is an exception to the hearsay rule because it is JLI's business record, contains party admissions, and is admissible not for the truth of the matter but to show the effect on listener.. Notice/knowledge by Pritzker (thus JLI) of use among teens is highly relevant to BB's negligence and failure to warn claims and not unfairly prejudicial.  The testimony re: the high percentage of youth use is not unduly prejudicial. | **Overruled**. The statements are being offered for the non-hearsay purpose of showing effect on the listener, notice, and knowledge.<br><br>The admissibility of the exhibit itself  is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: products.  He said they have new data indicating<br>05: that 75 percent of youth usage of ENDS is with<br>06: JUUL devices."<br>07:  Did I read that correctly?<br>08:  A   Yes, you did.<br>09:  Q    And ENDS is electronic nicotine delivery<br>10:  system?<br>11:  A   Yes. | | |
| 46. | Page 00186:<br>12: BY MR. WATTS:<br>13: Q   I asked you about your family's previous<br>14: involvement with the tobacco industry for a<br>15: reason, and that was well before you invested in<br>16:  Juul, you were aware that nicotine is addictive,<br>17: right?<br>18:  A  Yes. | Objecting Party's Position:<br>FRE 401/402; FRE 403. Mr. Pritzker's family's previous involvement with other tobacco companies is not relevant to knowledge of addictiveness of nicotine, and references to it are prejudicial and invite the jury to draw unfair and prejudicial comparisons between JLI and combustible cigarette companies<br><br>Proposing Party's Position:<br>Mr. Pritzker's acknowledgement that nicotine is addictive does not implicate past misconduct and is not a disputed fact in this litigation. In addition, Mr. Pritzker's family history of involvement with other tobacco companies is relevant to his familiarity and knowledge that nicotine is addictive. Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger | **Overruled**. The witness's prior involvement with the tobacco industry is relevant to his knowledge regarding the effects of nicotine during his tenure on the company's board. The testimony is not unduly prejudicial. |

LARSON<br>LOS ANGELES

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | of unfair prejudice, confusion or misleading the jury. | |
| 47. | Page 00187:<br>02: BY MR. WATTS:<br>03: Q   Well, knowing that nicotine was<br>04: addictive, were there any discussions inside the<br>05: boardroom at Ploom that the company would<br>06: voluntarily put a warning on its product warning<br>07: users of the addictive nature of the nicotine<br>08: being electronically delivered by the JUUL<br>09: product?<br><br>Page 00187:<br>11: THE WITNESS:  I don't remember such<br>12: conversation. | Objecting Party's Position:<br>MIL 1: Evidence suggesting that JLI should have imposed additional or different nicotine warnings above and beyond what the FDA required is not relevant because it cannot be probative of any permissible claim.]<br><br>Misstates prior testimony (misleading); Compound (form); Vague (as to what the "warning" would say and how it would be any different from the nicotine and addiction warnings already on JUUL product packaging); FRE 401/402; FRE 403<br><br>Misstates prior testimony (misleading); Compound (form); FRE 401/402; FRE 403.  This testimony misleadingly implies that JLI did not place any warnings on the product when in fact JUUL product packaging has always informed purchasers that the product contains nicotine, and JLI has warned consumers of the addictiveness of nicotine consistent with FDA regulations.<br><br>Proposing Party's Position:<br>The Court denied Defendants MIL #1 to the extend the Court has determined BB's failure to warn claims are not preempted. JLI could have elected to put additional warnings on their product, and their decision not to is directly relevant to BB's failure to | Overruled. The question does not misstate prior testimony, and is neither compound nor vague.<br><br>The parties have preserved objections based on the Court's motion in limine rulings. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | warn claim and others. Not only is the evidence relevant but it should not be excluded because its probative value does not substantially outweigh any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. There is no suggestion in this questioning that JLI was required to do more than what was required by the FDA with respect to warnings.  The question asked was whether there were discussions in Ploom's boardroom about the company voluntarily putting warnings about the addictive nature of nicotine on JUUL - it is the direct opposite of a "requirement." JLI's counsel seems to cite to another depositoin designation re: how the warning would be diferent from the nicotine and addiction warnings on JUUL. Instead, this particular designation (187:2-9) asks the witness whether there were discussions about JUUL's warning in the Board Room. Therefore, these objections lack merit.  This is the answer to the preceding question and Plaintiff incorporates by reference the response to 187:2-9. | |
| 48. | Page 00228:<br>18: MR. WATTS: Let's go to Exhibit 14141-A.<br>19:  (Pritzker Exhibit No. 14141-A was | Objecting Party's Position:<br>Hearsay (Exhibit 14141A is a third party news article. It is hearsay that is offered for the truth, and for which no exception exists. The article also it contains additional | **Sustained**. This testimony consists of or is predicated on hearsay statements that are offered for their truth. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 20:  marked for identification.) <br> 21:  BY MR. WATTS: <br> 22:  Q   This is an article that was published on <br> 23:  July 10th of 2021.  It's written by Marie <br> 24:  McCullough.  And let's go to the second page, and <br> 25:  I want to ask you about what it says. <br><br> Page 00229: <br> 01:  In the middle it says: "Juul paid more <br> 02:  than $50,000 to a scholarly journal so it would <br> 03: devote the entire May/June issue to 11 studies <br> 04: that Juul funded, all showing vaping is a public <br> 05: health boom.  The availability of e-cigs could," <br> 06: quote, "avert millions of premature deaths in the <br> 07: U.S.," close quote, "one Juul study concluded." <br> 08:  Do you see that? <br> 09:  A  I do. <br> 10:  Q  It says: "But Juul's gambit may have <br> 11:  backfired.  Three members of the editorial board | hearsay statements, e.g. Regarding what Glover said); Lacks Foundation/FRE 602 (counsel does not establish that witness has seen article or is familiar with the alleged facts and statements made in the article; the witness is an investor and board member; he is not knowledgeable about each and every detailed decision made by management; reading "certain references" from the article into the record does not cure Mr. Pritzker's lack of foundation); FRE 401/402; FRE 403 (The excerpts read into the record regarding the fact that JUUL authors, in collaboration with authors from CSUR and Pinney, published studies in a dedicated volume of American Journal of Health Behavior are irrelevant and likely to confuse issues before the jury, same with respect to hearsay accounts that reviewers resigned in protest. The article also mischaracterizes the facts -- JLI paid standard journal fees, the editor referenced in the article was long scheduled to retire, and it is standard practice not to disclose sponsoring author information as part of the peer review process but that information is ultimately fully disclosed upon publication. If plaintiff disagrees with the substance of the studies, she should address those studies directly; this testimony only misleads the jury about the actual facts of what occurred and creates a sideshow that JLI will be forced to waste time responding to) | The admissibility of the exhibit itself  is beyond the scope of the Special Master's appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
| | 12: of the 45-year-old American Journal of Health<br>13: Behavior resigned in protest, while the editor and<br>14: publish -- publisher Herbert D. Glover retired<br>15: shortly after the special issue on JUUL use was<br>16: published, according to the New York Times."<br>17: Right? | <u>Proposing Party's Position</u>:<br>This is non-hearsay impeachment evidence. Defendants and their experts rely on the articles in question in this testimony.  The witness testifies about the fact that JLI purchased a whole edition of a journal to publish studies that Defendants rely on to demonstrate that JUUL is successful in switching adults. Testimony about asking the witness if he was aware that JLI paid $51,000 for a full edition of a scientific journal to publish JUUL-sponsored scientific studies and whether he was aware that editors resigned (which he admitted he had heard) is relevant to Pritzker's and JLI's credibility. Additionally, Pritzker sits on the JLI Board ... the studies at issue were JLI studies.  Defendants' lack of foundation objection is meritless in light of Pritzker's answers that he knew about the Journal and the editors resigning.  There is no risk of juror confusion or undue prejudice.  Here, Mr. Pritzker is only asked to read certain references from the article into the record and therefore the FRE 602 objection does not apply.  The fact that JLI funded the 11 studies showing that vaping is a public health boom is relevant to JLI's motive and claims of disorientation and not unduly prejudicial. | |
| 49. | Page 00229:<br>20: BY MR. WATTS:<br>21: Q   I said, right, that's what it says? | <u>Objecting Party's Position</u>:<br>Same as above.  Hearsay; Lacks Foundation/FRE 602; FRE 403 | **Sustained**. This testimony consists of or is predicated on hearsay statements that are offered for their truth. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 22: A That's what it says. | <u>Proposing Party's Position</u>: This is the answer to the preceding question and Plaintiff incorporates by reference the response to 228:18-229:17. | The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |
| 50. | Page 00230: 07: "'Peer reviewers' are usually not paid, 08: but Glover offered $75 per review if it could be 09: turned in quickly - one week. He said the special 10: issue was on 'e-cigarettes' in general and did not 11: mention that the authors of the 12 studies were on 12: Juul's payroll. The actual manuscripts redacted 13: the name of the sponsor." 14: Do you see that, sir? 15: A I do. 16: Q Now, this broke in the last three days. 17: You've been aware -- you've been made aware of 18: this article with respect to this publication of 19: Juul articles in the American Journal of Health 20: Behavior, right? | <u>Objecting Party's Position</u>: Same as above. Hearsay; Lacks Foundation/FRE 602; FRE 401/402; FRE 403; Vague and ambiguous (form) (230:16-20, "this article," " this publication," "JUUL articles")<br><br><u>Proposing Party's Position</u>: This is the answer to the preceding question and Plaintiff incorporates by reference the response to 228:18-229:17. The reference to the articles or publication is not vague; the question identifies those articles as the JUUL articles from the Am. Journal of health Behavior. | **Sustained**. This testimony consists of or is predicated on hearsay statements that are offered for their truth.<br><br>The admissibility of the exhibit itself is beyond the scope of the Special Master's appointment. |
| 51. | Page 00230: | <u>Objecting Party's Position</u>: | **Sustained**. This testimony consists of or is predicated |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 23: THE WITNESS: Yes, I was made aware of 24: it. 25: BY MR. WATTS:<br><br>Page 00231: 01: Q   Here's my question:  First of all, were 02: you made aware of the fact that the peer reviewers 03: were offered payment to peer review if they got it 04: done in a week? 05:  A  Well, no, I was not aware of that until 06:  I read it in the article, if in fact that was 07: true. 08: Q  Were you aware that Juul paid $50,000 to 09: the American Journal of Health Behavior to allow 10: it to put 11 different studies into the May and 11: June issue? 12:  A I don't believe I was aware of any 13:  payment.  I'm also not sure how unusual it is to 14:  actually have such a payment, but I was not aware 15:  of any payment. 16: Q  Were you aware that the peer reviewers | Same as above. Lacks Foundation/FRE 602 (witness testifies numerous times that he was "not aware" of the facts alleged in the hearsay article); FRE 401/402; FRE 403 (231:1-20, questions state inaccurate facts and misleadingly imply that these practices are unusual when in fact it is standard, for example, not to disclose sponsoring author information as part of the peer review process); Designation Incomplete (231:19-20, cuts off the rest of the answer, which is responsive to the question at 231:16-18 and all of the preceding questions asking Mr. Pritzker whether he was "aware" of various inaccurate statements in the article)<br><br><u>Proposing Party's Position</u>: This is the answer to the preceding question and Plaintiff incorporates by reference the response to 228:18-229:17. The designation stopping at 231:20 is not incomplete because the remainder of Mr. Pritzker's answer at 231:21-232:4 is not responsive. | on hearsay statements that are offered for their truth.<br><br>The admissibility of the exhibit itself  is beyond the scope of the Special Master's appointment. |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 17: were sent manuscripts that redacted the name of 18: the sponsor of the studies? 19: A  If in fact that's true, I -- I was not 20:  aware of that. | | |
| 52. | Page 00334: 21: Q    And was Mr. Burns the chief executive 22:  officer at the time that the negotiations with 23: Altria were taking place? 24:  A The -- the conversations had begun prior 25: to his coming into the company.<br><br>Page 00335: 01:  Q Okay. 02: A So -- yes, it -- yeah, conversations had 03:   already begun with -- with Altria at the time he 04: came in. 05:  Q  Okay.  With that feather in your cap, 06:  would it be fair that you were more involved in 07: those conversations than Kevin Burns was?<br><br>Page 00335: 09:  THE WITNESS:  It would be fair to say | **Objecting Party's Position**: Improper attorney commentary (335:5-7, "with that feather in your cap")<br><br><u>Proposing Party's Position</u>: Taken in context, the reference to the "feather in your cap" isn't attorney commentary but is supported by the record given the importance to JUUL of Altria deal and the fact that Pritzker was a primary negotiator in finalizing that deal.<br><br>Defendants' objection is misplaced because 335:9-16 is the witness' answer and is not attorney commentary. | **Overruled**. The questioning does not contain impermissible attorney commentary. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: that -- that a couple of us on the board were more<br>11: involved in the conversations with Altria for a<br>12: while. But ultimately Kevin Burns became at least<br>13: as involved as the board members, and I would say<br>14: by the end of the conversations, the last two,<br>15: three months, he was at least as involved or more<br>16: so in the details of the transaction.<br>17: BY MR. WATTS:<br>18: Q In terms of the early conversations<br>19: where a couple of the members of the board were<br>20: more involved, that would be you and Mr. Valani? | | |
| 53. | Page 00665:<br>20: Q Now, you testified recently, just now<br>21: with your attorney's questions, that you got a<br>22: pretty negative reaction from ███████<br><br>23: ████████████████<br>when she reviewed the<br>24: Vaporized campaign.<br>25: You recall that testimony, right, sir? | Objecting Party's Position:<br>[MIL 2: Marketing and media content that B.B. does not claim to have seen has no probative value, and would waste time, confuse the issues, and unfairly prejudice the jury against JLI. This testimony goes beyond background]<br><br>FRE 401/402; FRE 403 (confusing reference to recent testimony in response to Mr. Pritzker's attorney's questions which has not | **Overruled.** The questioning is not confusing, nor is it impermissibly vague or ambiguous. This testimony is not unduly cumulative, as it seeks to clarify the witness's earlier testimony.<br><br>The parties have preserved objections |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | Page 00666:<br>01: A  Yes.<br>02: Q  And –<br>03: A  It was a one-word -- it was a one-word<br>04: comment.<br>05: Q That is disgusting is what she said,<br>06: right?<br>07: A Yes.  Maybe it was two words.<br>08: Q   And you believed at the time, well,<br>09: neither ███████<br>█████████ nor<br>Chris, your<br>10: son-in-law, understood your intent in putting that<br>11: campaign out.  Those were your words, correct?<br><br>Page 00666:<br>13: THE WITNESS:  I don't know exactly what<br>14: my words were in my testimony.  I can restate my<br>15: thinking about it.<br>16: BY MR. BAGHDADI:<br>17: Q   Well, do you agree, sir, that they just<br>18: didn't understand your intent?<br><br>Page 00666:<br>20: THE WITNESS:  I don't think that they – | been designated by Plaintiff) ; Hearsay (666:5-6); Misstates prior testimony (misleading) (666:8-11, misstates prior testimony regarding Exhibit 14030 at 77:14-23, 78:1-14, 78:17-79:21, 81:14-82:23); Vague and ambiguous ("pretty negative reaction"). Testimony is also cumulative, counsel has already confirmed what Exhibit 14030 said numerous times at 77:14-23, 78:1-14, 78:17-79:21, 81:14-82:23, there is no need to revisit the contents of this prejudicial document containing irrelevant hearsay yet again.  In addition, question at 655:20-25 references where ███████ ███████ attended school, a confidential fact that has not been admitted into evidence and which is irrelevant.<br><br><u>Proposing Party's Position:</u><br>[The Court denied Defendants' MIL 2 except with respect to the Colbert video clip under rule 403 and directed the parties to propose a limiting instruction regarding background marketing that B.B. was not directly exposed.  JUUL's marketing is a central issue in the litigation.  The Court has recognized the relevance of JUUL marketing to multiple issues (2/25 Hearing Tr. 6:9-15).  The Court's order on general Daubert motions noted the relevance of evidence regarding JUUL marketing.  Thus, there is no basis for a 401/402 objection.  As such, Plaintiff should be permitted to present evidence on what the company did and the | based on the Court's motion in limine rulings. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 21: they knew the full story behind the company's<br>22: marketing campaign. | success it brought, and any prejudice is of JLI's own making and is substantially outweighed by the relevance and probative value of JUUL marketing, which Plaintiff was exposed to.]<br>There is no misstatement of prior testimony about Ex. 14030. Instead, Mr. Pritzker is asked whether his family understood his intent in pulling out the Vaporized Campaign, which he readily answered. ███████████ referred to the JUUL as "disgusting" , which is not inadmissible hearsay but offered to show knowledge/notice to JLI/Mr. Pritzker in his capacity as JLI's Board Member. The testimony is not cumulative because these preliminary questions, although involving a topic and document Mr. Pritzker was already questioned about, it is necessary for putting into the context of the final topic related to whether is family knew of his intent or full story behind JLI's marketing campaign. There are only a couple brief questions asked to place this topic into its appropriate context. The relevance of this testimony from 665:20 to 666:11 outweighs any prejudicial impact. The meaning of "pretty negative reaction" is not vague; the witness did not seek clarification. The phrase is easily understandable to the jury, and they are capable of drawing their own conclusions as to how to characterize the response from ███████████. | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | This continues with the same line of questioning from 665:20-666:11 and Plaintiff incorporates herein the responses made to 665:20 - 666:11. | |
| 54. | Page 00668: 14: BY MR. BAGHDADI: 15: Q   How about ▮▮▮▮▮, did she understand 16: your company's intent when she started using JUUL? Page 00668: 18: THE WITNESS:  I don't know. | **Objecting Party's Position:** Argumentative; Calls for Speculation (form); Lacks Foundation/FRE 602 (witness does not know what B.B. knew or understood) **Proposing Party's Position:** The question is a rhetorical question asking whether BB understood the company's intent when she started using JUUL.  The fact that Mr. Pritzker testified he doesn't know, is relevant to Plaintiff's negligence and misrepresentation claims.  The point to be made is that Defendants had a duty to determine whether their advertisements were attractive to youth and the fact that he testified he didn't know is a relevant consideration for the jury. Plaintiff incorporates the same responses made to 668:14-16. | **Sustained.** Calls for speculation. |
| 55. | Page 00670: 01: BY MR. BAGHDADI: 02: Q  And earlier in your testimony, you said, 03:  you know, you don't know if flavors are really 04:  more attractive to kids or not.  Some of the | **Objecting Party's Position:** Argumentative (counsel misleadingly summarizes what witness said "earlier in his testimony," and then suggests witness should have asked his ▮▮▮▮▮▮▮▮▮▮▮▮; Calls for Speculation (form) ("some of the information you could have obtained"); Lacks Foundation/FRE | **Sustained.** Calls for speculation as to whether asking the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ would yield information on this topic, and is misleading as to the applicable standard of care. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05:  information you could obtain to learn if that's<br>06:  true is to ask ████<br>████████████<br>████<br><br>07:  are using JUUL, and what flavors, if any, are they<br>08:  using.  You could do that, right?<br><br>Page 00670:<br>12: BY MR. BAGHDADI:<br>13: Q    Am I right?<br>14: A    Perhaps.  I could have.  I did not do<br>15:  that. | 602; FRE 401/402; FRE 403 (confuses the jury regarding the appropriate standard of care, which is not determined by ████████ ████████████████████)<br><br>Proposing Party's Position:<br>Mr. Pritzker is not asked to speculate whether  he could have discussed JUUL with ████████ ████████████  as one source of information about what teens thought of JUUL.  This is a yes or no question and he testifies that he could have done it. Not only is the evidence relevant but it should be admitted  because its probative value  substantially outweighs any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Moreover, Defendants have failed to articulate a basis under 403 for its exclusion.  Mr. Pritzker clearly has sufficient foundation/personal knowledge to testify as to whether he could have and whether he did ask ██<br>████████████  This objection lacks merit.<br><br>This continues with the same line of questioning from 670:1-8 and Plaintiff incorporates herein the responses made to that designation. | |
| 56. | Page 00670:<br>24: BY MR. BAGHDADI:<br>25: Q    Do you agree that Juul's marketing was | Objecting Party's Position:<br>Vague and ambiguous (form) (vague as to "Juul's marketing" -- unclear which of JLI's marketing campaigns this question refers to); Calls for Speculation (form); | **Overruled**. The question is not vague or ambiguous, and does not call for speculation.  It seeks the witness's |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|---|---|---|
| | Page 00671:<br>01: attractive to kids?<br><br>Page 00671:<br>03:  THE WITNESS:  I don't know if it was<br>04: attractive to kids.  I know it was perceived as<br>05: something that would be attractive to kids.  I<br>06:  don't know if it actually was.<br>07:  BY MR. BAGHDADI:<br>08: Q  All right.  Well, have you done any work<br>09:  yourself as a director of the company, as a former<br>10: member of the executive committee, to learn if it<br>11:  actually was attractive to kids? | Lacks Foundation/FRE 602 (as to what is or is not "attractive to kids"; the question does not ask if Mr. Pritzker considered it attractive to kids, but whether it was in fact attractive to kids. Plaintiff's response mischaracterizes Mr. Pritzker's answer)<br><br><u>Proposing Party's Position:</u><br>Mr. Pritzker, as a JLI Board Member familiar with the marketing of JUUL, he is has sufficient knowledge to give his opinion as to whether JUUL's marketing was attractive to kids and this is relevant testimony for the jury to consider in assessing Plaintiff's claims and JLI's liability.  This testimony does not call for speculation whatsoever, but he testifies about his personal knowledge.  Mr. Pritzker is obviously familiar with JUUL's marketing and it is appropriate to ask him whether he considered it to be attractive to kids, particularly in light of the emails exchanged with his family that are part of these designations. Notably, in response to the question, Mr. Pritizker said he didn't know if it was attractive to kids, but that JUUL was perceived to be attractive to them.<br><br>Mr. Pritzker, as a JLI Board Member who made decisions about marketing JUUL is considered to have sufficient knowledge on his opinion as to whether JUUL's marketing was | understanding based on his personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | attractive to kids and this is relevant testimony for the jury to consider in assessing Plaintiff's claims and JLI's liability. This testimony does not call for speculation whatsoever, but he testifies about his personal knowledge. Mr. Pritzker is obviously familiar with JUUL's marketing and it is appropriate to ask him whether he considered it to be attractive to kids, particularly in light of the emails exchanged with his family that are part of these designations. Question of whether he took steps to learn more are relevant to negligence and other claims. | |
| 57. | Page 00671: 14: THE WITNESS: I have not, nor do I, 15: well, believe that was necessarily a board or a 16: board committee function. 17: BY MR. BAGHDADI: 18: Q Got it. 19: Who in the company, if it wasn't the 20: board's job, was looking into whether or not kids 21: were finding your product attractive? Page 00671: 24: THE WITNESS: I don't know who in | <u>Objecting Party's Position:</u> Same as above. Calls for Speculation (form); Lacks Foundation/FRE 602 <u>Proposing Party's Position:</u> This designation continues with the same subject matter as above, but relates to whether he personally did any work to learn whether JUUL's marketing was attractive to kids. Mr. Pritzker, as a JLI Board Member who made decisions about marketing JUUL is considered to have sufficient knowledge on his opinion as to whether JUUL's marketing was attractive to kids and this is relevant testimony for the jury to consider in assessing Plaintiff's claims and JLI's liability. This testimony does not call for speculation whatsoever, but he testifies about his personal | **Overruled** (671:14-16) See above. **Sustained** (671:19-672:1): Lack of foundation. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25:  management was doing that, or should have been<br><br>Page 00672:<br>01:  doing it. | knowledge.  Mr. Pritzker is obviously familiar with JUUL's marketing and it is appropriate to ask him whether he considered it to be attractive to kids, particularly in light of the emails exchanged with his family that are part of these designations. Question of whether he took steps to learn more are relevant to negligence and other claims.<br><br>This designation continues with the same subject matter as above, but relates to inquiring who's responsibility it was to find out whether  JUUL's marketing was attractive to kids. Mr. Pritzker, as a JLI Board Member who made decisions about marketing JUUL is considered to have sufficient knowledge on his opinion as to whether JUUL's marketing was attractive to kids and this is relevant testimony for the jury to consider in assessing Plaintiff's claims and JLI's liability.  This testimony does not call for speculation whatsoever, but he testifies about his personal knowledge.  Mr. Pritzker is obviously familiar with JUUL's marketing and it is appropriate to ask him whether he considered it to be attractive to kids, particularly in light of the emails exchanged with his family that are part of these designations. Question of whether he took steps to learn more are relevant to negligence and other claims. | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 58. | Page 00672:<br>23: BY MR. BAGHDADI:<br>24: Q And are you aware of any study that Juul<br>25: performed as to the long-term safety of its<br>00: 00673:<br>01: product before it was launched?<br>02: A I think I testified that, no, I'm not<br>03: aware of any such long-term study. | Objecting Party's Position:<br>Cumulative (question previously asked and answered at 152:12-16 and 153:8-11, 153:14-21, 153:23-154:4, 154:4); Lacks Foundation/FRE 602 (witness has already explained that he is not aware of such a study)<br><br>Proposing Party's Position:<br>It is not cumulative as Mr. Pritzker was not previously asked whether "he was aware of a study done to assess the long-term safety of JUUL before it was launched" and he admitted he was not aware. He was previously asked a different question - - i.e., whether the Board of Directors of Ploom "insisted on long-term clinical studies to evaluate the potential for long-term damage causes by JUUL use" prior to authorizing JUUL's launch. (152:12-16). He has sufficient personal knowledge to answer as to his personal awareness of the existence of a study. | **Sustained**. Cumulative as the same testimony has previously been designated. |
| 59. | Page 00689:<br>08: BY MR. BAGHDADI:<br>09: Q And at some point, did Altria ever<br>10: insist in the terms of the transaction, before<br>11: they put $12.8 billion into Juul, that you must<br>12: use more of the money than you're setting aside to<br>13: target specific youth prevention services?<br>Was | Objecting Party's Position:<br>Argumentative; Compound; Vague and ambiguous (form, "more of the money than you're setting aside," "target specific youth prevention services"); Calls for Speculation (form); Lacks Foundation/FRE 602 (Plaintiff mischaracterizes Mr. Pritzker as the "lead negotiator" in the Altria deal); FRE 401/402, FRE 403 (misleadingly suggests that such a term should have been included).<br><br>Proposing Party's Position: | **Overruled**. The question is not impermissibly argumentative, compound, vague or ambiguous. It seeks testimony based on the witness's personal knowledge as one of the board members who negotiated the transition with Altria. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: there ever such a requirement, sir?<br><br>Page 00689:<br>18: THE WITNESS: I don't know of any<br>19: situation. As I sit here, I can't think of a time<br>20: that such a demand or requirement was made by<br>21: Altria. | Inquiring whether Altria required that some of its investment be used for youth prevention services in not argumentative whatsoever, but is a fact that is relevant to Plaintiff's claims to assess their negligence and duty and its probative value outweighs any potential prejudice. Nor is the question compound or vague - it asked if money was set aside for that purpose and counsel follows up with inquiring whether it was a requirement. Mr. Pritzker understands the question and answers it without seeking clarification, so it is not vague. He testifies he is not aware of such a requirement and does not indicate that he is speculating in giving that answer. As a lead negotiator in the Altria deal, Pritzker has direct knowledge on the terms of the deal and what was or wasn't included and therefore, the lack of foundation objection lacks merit.<br><br>This designation is the answer to the preceding question and Plaintiff incorporates the responses to 689:8-14. | |
| 60. | Page 00690:<br>14: Q   How much of the $12.8 billion that<br>15: Altria invested was dedicated to treating kids in<br>16: the United States who are now addicted to JUUL?<br><br>Page 00690: | Objecting Party's Position:<br>Same as above. Assumes facts not in evidence (form, "kids in the United States who are now addicted to JUUL"); Vague and ambiguous ("treating"); Argumentative; Lacks Foundation/FRE 602; FRE 401/402, FRE 403 (testimony likely to confuse the jury as to the legal standard and creates an | **Sustained**. Argumentative and misleading. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | 19: THE WITNESS: I don't know. | impression that JLI and its investors are is liable for any use by youth or non-nicotine users. Further, it misleads the jury into thinking that that portions of the Altria equity investment will be used to pay any judgment in this case)<br><br>Proposing Party's Position: There is no assumption of facts; there are sufficient reports, including the hundreds of lawsuits filed in this case, involving teens addicted to JUUL; this is hardly a disputed fact. The question of "how much of the $12.8 billion that Altria invested was dedicated" to treating addicted kids is not vague, but clearly understood by Mr. Pritzker, as lead negotiator in the transaction who has personal knowledge and adequate foundation to give a response. This is not argumentative, but a logical question to ask. It is relevant to Plaintiff's claims of negligence and to asses the duty of Altria and is not unduly prejudicial. Finally, this is a basic line of inquiry that the jury is expected to be wondering about and can understand - it was not confuse them in sorting through the weight to give the various facts they hear during trial.<br><br>This designation is the answer to the preceding question and Plaintiff incorporates the responses to 690:14 - 16. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 61. | Page 00691:<br>13: And as a managing<br>14: Tao Invest, did you direct or suggest that, given<br>15: the thousands of children who are addicted to<br>16: nicotine, that we should absolutely devote some of<br>17: this $1.8 billion to treating youth addicted to<br>18: nicotine? Sir, did you personally do that?<br><br>Page 00691:<br>21: THE WITNESS: No. | <u>Objecting Party's Position:</u><br>Argumentative; Misstates prior testimony (misleading); FRE 401/402; FRE 403; MIL 7 (the Court has already excluded evidence of individual witness' personal wealth and spending, including whether Mr. Pritzker has personally devoted his wealth to "treating youth addicted to nicotine." Further, this question is about nicotine addiction more broadly, which is likely to confuse the jury as to the legal standard and creates an impression that Mr. Pritzker is personally liable for any nicotine use by youth. Further, it misleads the jury into thinking that that portions of the Altria equity investment will be used to pay any judgment in this case)<br><br><u>Proposing Party's Position:</u><br>Not only is the evidence relevant but it should be admitted because its probative value substantially outweighs any danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. This testimony is relevant to Mr. Pritzker's credibility - as he could have but did not negotiate terms that required a portion of Altria's investment to be allocated to target youth prevention. This is not confusing to the jury as to any legal standard or Mr. Pritzker's personal liability because there is nothing mentioned in the question suggesting he could be personally liable. Either part of the | **Sustained**. Argumentative and misleading. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | investment was required to be spent on youth prevention services or not and the jury can consider how to weigh the fact that there was no such requirement. MIL 7 which pertains to Defendants or Witnesses Wealth or Financial Condition is not applicable. Finally, the objection based on outside the scope is not applicable given this is Plaintiff's Affirmative Designation<br><br>This designation is the answer to the preceding question and Plaintiff incorporates the responses to 691:13 - 18. | |
| 62. | Page 00693:<br>17: Regardless of how your money got into<br>18: the company or your family's money through the<br>19: trusts, or whatever facility you used to do it,<br>20: did you ever say, as an investor or as a member of<br>21: the board, you know, before we start selling<br>22: something like this, we should really study how it<br>23: will affect children?<br><br>Page 00693:<br>25: THE WITNESS: I don't know whether the<br><br>Page 00694:<br>01: company asked that question or researched it. | Objecting Party's Position:<br>Argumentative; Vague and ambiguous (form) ("something like this," "study how it will affect children"); Compound (form); Lacks Foundation/FRE 602 (witness has testified he is not familiar with specific studies conducted by JLI); FRE 401/402, FRE 403; MIL 7 (question references "your family's money" and "trusts" and implicates Mr. Pritzker's personal wealth)<br><br>Same as above. Misstates prior testimony (misleading); Vague and ambiguous (form) Compound (form); Asked & Answered (form); Lacks Foundation/FRE 602<br><br>Proposing Party's Position:<br>This line of questioning asks whether as an investor he suggested that studies be done by JLI to look into how JUUL would | **Overruled.** The question is not impermissibly argumentative, vague, ambiguous or compound. It also does not improperly make specific reference to the witness's personal wealth. The witness has foundation to testify as to inquiries he personally did or did not make prior to investment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | affect kids, a subject not previously discussed and properly within the scope of the Affirmative Designations. It is not argumentative to ask whether Mr. Pritzker suggested the topic, nor is the question vague simply because counsel also used the phrase, "something like this" in connection with the reference to a study, all of which Mr. Pritzker understood. The question is on a single topic; it is not compound. And, Mr. Pritzker has personal knowledge as to whether he asked that a study be done to figure out whether youth would be affected by JUUL. Such testimony is probative and not unduly prejudicial and relevant to issues of JLI's knowledge/notice and motive because such a study could have been done. MIL 7 is not applicable (in which the court granted defendants' motion as to the personal wealth and spending patterns of witnesses/defendants because the amount of the investment is not referenced. Instead the question incorporates an admissible fact -that Mr. Pritzker did invest money into JUUL -it's obvious that the investment was of a significant amount of money; however, counsel does not state that. | |
| 63. | Page 00694: 14: Q And in terms of students who are in the 15: schools in San Francisco, be they San Francisco | Objecting Party's Position: Argumentative; Calls for Speculation (form); Asked & Answered (form); Lacks Foundation/FRE 602 (witness is a board member and was not involved in implementation of | **Sustained**. Lack of foundation. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: Unified, Urban, International, San Francisco Day, 17: or any of the other schools who are struggling 18: with an addiction problem, can you tell us all the 19: things that Juul is doing today to help those 20: children deal with the addiction?<br><br>Page 00694:<br>23: THE WITNESS: I can't list those 24: measures, but the company is doing a lot today. 25: BY MR. BAGHDADI:<br><br>Page 00695:<br>01: Q  Great.  Tell us the one you know of.<br><br>Page 00695:<br>04: THE WITNESS: I can't tell you any. 05: MR. BAGHDADI: All right.  That's all I 06: have.  Thank you. 07: THE WITNESS: But I would suggest you do 08: ask the company that question, because they can 09: tell you. 10: BY MR. BAGHDADI: | JLI's youth prevention program); FRE 401/402 (questions about students in San Francisco have no relevance to B.B. who does not live, attend school in, or have any other connection to San Francisco); FRE 403 (misleading and confusing to suggest that all students in San Francisco are addicted, addicted to JUUL specifically, or to suggest that JLI is liable for any use by youth or non-nicotine users, even if those individuals did not use JUUL products)<br><br>Same as above. Argumentative ("Great.  Tell us one you know of"); Calls for Speculation (form); Asked & Answered (form); Lacks Foundation/FRE 602 (witness is a board member and was not involved in implementation of JLI's youth prevention program); FRE 401/402 (questions about students in San Francisco have no relevance to B.B. who does not live, attend school in, or have any other connection to San Francisco); FRE 403 (misleading and confusing to suggest that no such measures have been taken simply because the witness could not recall one specifically, misleading and confusing to suggest that all students in San Francisco are addicted, addicted to JUUL specifically, or to suggest that JLI is liable for any use by youth or non-nicotine users, even if those individuals did not use JUUL products) | |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | 11: Q All right.  From what you know of in<br>12:  your position, you can't tell me of any measures<br>13:  that the company is taking to assist children in<br>14: San Francisco, be they in schools or otherwise, to<br>15: treat their addiction; is that correct, sir?<br>Page 00695:<br>17: THE WITNESS: Sitting here, I can't tell<br>18: you that I recall any of those.<br>19: MR. BAGHDADI: All right.  That's all<br>20:  I've got.  I thank you for your time. | Same as above, also Asked & Answered (form) in previous Q&A. Argumentative; Calls for Speculation (form);  Lacks Foundation/FRE 602; FRE 401/402; FRE 403<br><br>Proposing Party's Position:<br>Same as above. Argumentative ("Great.  Tell us one you know of"); Calls for Speculation (form); Asked & Answered (form); Lacks Foundation/FRE 602 (witness is a board member and was not involved in implementation of JLI's youth prevention program); FRE 401/402 (questions about students in San Francisco have no relevance to B.B. who does not live, attend school in, or have any other connection to San Francisco); FRE 403 (misleading and confusing to suggest that no such measures have been taken simply because the witness could not recall one specifically, misleading and confusing to suggest that all students in San Francisco are addicted, addicted to JUUL specifically, or to suggest that JLI is liable for any use by youth or non-nicotine users, even if those individuals did not use JUUL products)<br><br>This designation is the answer to the preceding question and Plaintiff incorporates the responses to 694:14 - 20. | |

b.  **Defendants' Counter-Designations**

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00073:<br>18: When Juul put together a video that<br>19: didn't say anything except to show hip young<br>20: people, did you ask the question about what age do<br>21: we think this is marketing?<br><br>Page 00073:<br>23: THE WITNESS:  I don't know if I asked<br>24:  that question.  I saw multiple decks, and I can't<br>25: give you the time frame, but around this time,<br><br>Page 00074:<br>01: prelaunch, it was very clear what the target age<br>02: was, and consistently was age 25 to 34.  Those<br>03: were the -- that was the age range that -- the<br>04: only age range that I ever saw referred to. | <u>Objecting Party's Position</u>:<br>The answer is nonresponsive.  Mr. Pritzker is asked whether he personally inquired about the age of consumers that the JUUL video is marketing to. He responds with stating he didn't know if he did or not and then provides additional information about his thoughts pertaining to "other slide decks" that are not defined or asked about. Yet, significant, he never answers whether he actually asked anyone what the ages of the models were. Plaintiffs believe withdrawal of our designations at pp.62,63 eliminate any completeness argument pursuant to FRE 106 However, if this designation is not excluded, at a minimum Mr. Pritzker's answer should be limited to his actual answer to the question, "I don't know if I asked that question. "See 73:23-24.   In addition, the non-responsive portion of his answer is based on lack of foundation and involves speculation as to age ranges and should be struck from the record for that additional reason.<br><br>This is the answer to the preceding question and Plaintiff incorporates the same objections to 73:18-21.<br><br><u>Proposing Party's Position</u>:<br>Directly responsive discussion for which witness has foundation "I saw multiple decks ..around this time" and stated "it was very clear" --which is the opposite of speculation. This designation is within the scope of Plaintiff's | **Overruled**. The answer is responsive and explains why the witness may not have asked the question regarding what age was targeted. The witness testifies from his personal knowledge and understanding based on previously viewed documents. This testimony is sufficiently within the scope of the affirmative designations concerning the age targeted by the company's marketing. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | affirmative designations on Exhibit 14030 in which Plaintiff asks about what age the Vaporized campaign was targeting (e.g., 78:5-10). Mr. Pritzker's answer is not based on speculation but his own personal knowledge based on decks he saw in his capacity as a Board member. | |
| 2. | Page 00099:<br>05: Q Did somebody at your company propose<br>06: Tutti Frutti flavor?<br>07: A  There were -- I believe there were<br>08: flavors like that that were on the market, not<br>09: JUUL.  But there were many flavors on the market<br>10: of other brands, not JUUL brands, of brands like<br>11: gummy bear, cotton candy, other brands that I<br>12: would consider to be teen oriented.  I would not<br>13: consider and didn't consider fruit to be a teen<br>14: concept.  So, no. | Objecting Party's Position:<br>This testimony should be struck in its entirety. Mr. Pritzker's answer is nonresponsive because he offers information about various fruit based flavors and other flavors offered by manufactures besides JUUL, none of which was asked about and there are no questions asked to establish whether Mr. Pritzker has knowledge of this.  He is guessing as to the other types of flavors and then provides self-serving and unsolicited testimony that he thinks these flavors would be "teen orientated." This testimony is not relevant and given the lack of foundation is unduly prejudicial (FRE 403).  In addition, this testimony is improper because it does not satisfy FRE 106/611 for completeness.<br><br>Proposing Party's Position:<br>Answer is directly responsive to the question of what flavors were proposed at JUUL and the witness's understanding of how Juul compared to others in the industry with fruit flavors. This designation is within the scope of Plaintiff's extensive affirmative designations on flavors (e.g., 98:4-10, 98:14-17).   Mr. Pritzker's response is based on his | **Sustained**. The answer is non-responsive to the question. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | own knowledge and understanding ("I believe there were..." and "I would consider to be...") | |
| 3. | Page 00117<br>05: THE REPORTER: Just one moment, please.<br>06: "When you at the company as a member of<br>07: its board of directors saw horrendous marketing<br>08: against your specific instructions between June of<br>09: 2015 until recently before December of 2016, did<br>10: you understand that addicting kids to nicotine<br>11: disregarded their health and safety?"<br>12: THE WITNESS: I cannot opine then or now<br>13: as to safety issues around the products.<br>14: I also -- I also want to add that when I<br>15: refer to the marketing here, I -- I was not<br>16: referring to -- in any way to marketing to minors,<br>17: if that is the implication of your question. I | Objecting Party's Position:<br>Mr. Pritzker is asked a single, direct question of whether he understood during the time period of 6/2015 and 12/2016 that addicting kids to nicotine disregarded their health/safety. He initially responds that he cannot given an opinion on safety issues. Thereafter, at 117:14-22 his answer is not responsive, which is indicated by his statement of "I also want to add . . . " followed by a narrative where he attempts to distance himself from the impact of using the word "horrendous" in the 12/2016 email (long before this litigation) to describe JUUL's marketing. The entire question/response should be stricken due to the foregoing and the fact that his response is that he can't respond to the actual question, followed by a self-serving, unsolicited narrative on a different topic.<br><br>Proposing Party's Position:<br>Directly responsive answer correcting the false premise of the question and the questioner's view of the witness's email at Exhibit 14056; concise answer providing context to questions about Mr. Pritzker's statements re "horrendous" marketing that has been designated by Plaintiff at, e.g., 114:22-115:1. Counsel cannot simply read documents into the record and seek to exclude the | **Overruled**. The answer is sufficiently responsive to the question. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 18: thought the marketing was -- I think I exaggerated<br>19: when I said "horrendous." I didn't like the<br>20: marketing of the company. But vaporize, for<br>21: example, had been over for a long period of time<br>22: at the time of this e-mail. | witness' own testimony about what he meant when he wrote those statements | |
| 4. | Page 00118:<br>08: Q What did the company tell you about the<br>09: safety of the product when used by a teenager, an<br>10: underage child?<br><br>Page 00118:<br>12: THE WITNESS: The product was not<br>13: legally sold to or ever intended to be used by<br>14: underage people. It was illegal. It was never<br>15: the intention or the goal of the company in any<br>16: way to have products be used by underage people. | <u>Objecting Party's Position:</u><br>Mr. Pritzker doesn't answer this question either. He is asked to tell the jury what information JLI told him about the "safety" of JUUL when used by someone underage. Notably, he does not answer it. His answer at 118:12-16 ventures into another topic, again offering unsolicited, self-serving testimony in an apparent attempt to help JLI's case. He talks about JUUL not being "legally" sold to or "intended" to be sold to underage consumers, followed by pontificating about the "goals" of the company.<br><br><u>Proposing Party's Position:</u><br>Short, directly responsive answer -- he was asked what the company told him, and he states what he was told | **Overruled**. The answer is sufficiently responsive to the question. |
| 5. | Page 00119:<br>09: Q And you found the explosion in vaping | <u>Objecting Party's Position:</u><br>Like other questions, Mr. Pritzker provides an unresponsive answer | **Overruled**. The answer is sufficiently responsive to the question. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 10: among teens to be deeply disturbing, right?<br><br>Page 00119:<br>14: THE WITNESS: Of course, but bearing in<br>15: mind that the e-cigarettes were not JUUL at this<br>16: point -- or certainly not many of them were JUUL. | beginning with "but bearing in mind . . . " (119: 14-16).<br><br><u>Proposing Party's Position:</u><br>Essential counter providing context to what witness meant and correcting false premise in the question -- counsel asked about an "explosion in vaping" and Mr. Pritzker clarified that "vaping" could include non-JUUL products. | |
| 6. | Page 00123:<br>01: Q    In December of 2016, when you said<br>02: JUUL's marketing had been horrendous against your<br>03: specific instructions until recently, you were<br>04: aware that there was an explosion in vaping among<br>05: teens, right?<br><br>Page 00123:<br>09: THE WITNESS: I was not suggesting in<br>10: this and not stating and didn't think that the<br>11: company was in any way -- despite the fact I<br>12: didn't like the marketing, that it was in any way<br>13: marketing to underage people.<br><br>Page 00123:<br>16: A So connecting those two is just simply | <u>Objecting Party's Position:</u><br>The designations from 123:1-5 through 123:16-17 involve Mr. Pritzker giving unresponsive, biased, and unsolicited testimony. He is asked a single question to establish that long before this lawsuit was filed:  i.e., at the time he described JUUL's marketing as "horrendous", whether he was aware there had been an "explosion in teen vaping" as noted in the email.  It apparent the answer is not responsive, will not assist the jury, and will be confusing and mislead the jury.<br><br><u>Proposing Party's Position:</u><br>Witness once again is forced to correct the false premise in the question.  Counsel's questions pertain directly to statements in Exhibits 14056 and 14059, which counsel attempts to mischaracterize in his question. Plaintiff has designated that testimony.  See 114:22-115:1 and 119:17-21, 120:3-15.  Counsel cannot simply read documents into the record and seek | **Sustained**. The answer is non-responsive to the question. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 17: incorrect. | to exclude the witness' own testimony about what he meant when he wrote those statements | |
| 7. | Page 00231:<br>21: I -- I have to question the -- the<br>22: accuracy of this article, and I hope you do.<br>23: There are -- I know there's some glaring things<br>24: left out. It's very slanted. So I would -- I<br>25: would take with a grain of salt anything that's in<br><br>Page 00232:<br>01: there.<br>02: But, I mean, I'm trying to answer your<br>03: question directly. I was not aware of those<br>04: things that you said. | Objecting Party's Position:<br>Mr. Pritzker's complete response to the question designated in Plaintiff's Affirmatives (231: 16-20) is given at 231:19-20 only. The remainder of his answer that Defendants seek to admit (231:21-232:4) is on an entirely different topic. The question pertains to the manuscript being reviewed by reviewers with JUUL"s name redacted from the manuscript. Defendants' Counter designation relates to Mr. Pritizker's personal opinion about the accuracy of the article. This Counter designation is confusing, misleading and should be stricken. The clear answer to the question is designated by Plaintiff.<br><br>Proposing Party's Position:<br>Plaintiff's designation stops in the middle of the witness's answer; this counter includes an essential responsive part of the answer putting the article being discussed in context; it is necessary for a complete answer. The counter is not confusing or misleading -- it points out the fact that counsel's questions assume certain statements in a hearsay article are accurate, when in fact that is not the case | **Sustained**. This testimony is an extension of the preceding stricken affirmative designations. |
| 8. | Page 00616:<br>22: Q Mr. Pritzker, we've covered a lot of | Objecting Party's Position:<br>The questions are leading pursuant to FRE 611 and Mr. Pritzker lacks the foundation re vaping being significantly less harmful than | **Overruled**. The questioning is not impermissibly leading. This testimony provides permissible context for the |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|-------------------------------|--------------------|--------|
| | 23:  ground over the last two days with the plaintiffs'<br>24: questioning, and I just want to go back and hit a<br>25: few high points. Let's start at the beginning.<br><br>Page 00617:<br>01: When you first learned about the company<br>02: and started to do some diligence, what was it<br>03:  about what you learned that led you to recommend<br>04: investing in what became JLI to your family<br>05:  interests?<br>06: A    I was aware that -- that cigarette<br>07: smoking is responsible for countless deaths in the<br>08: United States and around the world, including my<br>09: own father, and many people that I knew.  And a<br>10: technology that could allow people who had been<br>11: trying unsuccessfully to quit smoking for many | smoking; narrative. Pursuant to FRE 106/611,  Defendants' counters are not for completion and are outside the scope.  Additionally, this testimony is irrelevant and a waste of time.  Mr. Pritzker's reasons given in the context of being sued in this litigation are biased, not of assistance to the jury in determining any issues of liability or damages, and irrelevant. The relevant testimony is designated by Plaintiffs on the topic of the Pritzker investment - namely, that the investment occurred and Mr. Pritzker's role in decision making about JUUL, as well as  the knowledge, notice and motives attributable to him as a member of JLI's Board.   This testimony should be struck in its entirety. Mr. Guzman's clients (members of the Board) are not parties to the BB case.  If this witness was live at trial, Mr. Guzman would have no ability / standing / right to examine the witness. Therefore, his cross examination is irrelevant and should be stricken.  Designations begin 616 forward.<br><br><u>Proposing Party's Position</u>:<br>These questions are not leading and any minimal leading is done to establish foundation or reference undisputed preliminary matters.<br><br>These counters are appropriate under FRE 106/611, and fall within the scope of Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding (a) Mr. Pritzker's | affirmative designations concerning the witness's investment in the company, as well as his understanding of the product and its target market.<br><br>The parties may preserve objections based on the issue of whether deposition designations can be offered for testimony elicited through examination conducted by non-parties. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 12: years, an alternative that would be less harmful,<br>13: significantly less harmful, and safer, and have a<br>14: lot of other benefits over cigarette smoking,<br>15: would be -- could be one of the great boons to<br>16: public health.<br>17: And that prospect is what really had me<br>18: excited about Juul, along with -- or Ploom at that<br>19: time, along with the cofounders and the people<br>20: that were involved.<br>21: Q   When you were considering recommending<br>22: the investment, what did you understand the<br>23: mission of this young company to be?<br>24: A The mission clearly was to get people<br>25: off of cigarettes, and thus save lives by<br><br>Page 00618:<br>01: converting smokers to a different product.<br>02: Q When you were considering recommending<br>03: this investment, meeting the founders, learning | investment in JLI and role as a Board member, (b) the target audience for the company's product and marketing, (c) the launch of the JUUL product, (d) Mr. Pritzker's reaction to the Vaporized campaign, (e) the Altria investment, and (f) allegations that JLI had a plan to "addict kids."<br><br>Finally, the identity of the questioner is not a valid reason to exclude this testimony.  This position is inconsistent with Case Management Order No. 10, which explicitly requires "Counsel in the Lead Actions" to "confer before the deposition concerning allocation of time to question the witness and collaborate to avoid needless duplication (i.e., asking the same questions)," and provides that "depositions taken in accordance with this order may be used against any party....who (a) was present or represented at the deposition."  See ECF No. 573 at p. 5, 16.  Defendants should not now be penalized for simply following the Court's guidance. | |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: about the technology, learning about the plans, 05: did you ever hear from anyone or see in any 06: document that there was a plan to intentionally 07: market the device and the product to kids? 08:  A   Never. | | |
| 9. | Page 00618: 09: Q   Now, you've testified already about the 10: fact that you decided to recommend the investment, 11: and that your family interests, in fact, did 12: invest. 13:  So let's move forward from there. 14: Later, after at least one of your investments, you 15:  were asked to join the board; is that right? 16: A  That's right. 17: Q  And just remind us, approximately when 18:  was it that you joined the -- what became Juul, 19:  the board of what became Juul? 20: A I think it was 2013.  Sometime in 2013. 21: Q  Okay.  Now, prior to serving on the | Objecting Party's Position: 106/611 - Defendants' counters are not for completion and are outside the scope of the direct examination. Mr. Pritzker was not asked about how his personal experience serving on other Board of Directors made decisions for those companies and how their differed from his role on JLI's Board.  This testimony which goes on for pages is irrelevant and will confuse the jury as to why it is being offered, potentially causing them to draw inferences about the standard of care applicable to Boards, leading them to believe that the appropriate standard for a Board of Directors is how  JUUL's Board operated.<br><br>618:14-20 cumulative, 403 waste of time 618:21-619:17: Mr. Pritzker having served on other Board of Directors for other companies has no relevance to any issue in this case. This is likely to confuse or misdirect the jury. 619:18-620:3: question/answer about the operation of other Board | **Overruled**. This testimony is directed to the scope of the witness's role at the company, which provides permissible context and clarification for the totality of the affirmative designations. The testimony is neither cumulative nor confusing, and the questioning is not impermissibly leading. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|-------------------|--------|
| | 22: board of what became Juul Labs, had you served on 23: other boards at other companies? 24: A Several, yes. 25: Q And based on your experience both with<br><br>Page 00619: 01: the board of what became Juul and these other 02: boards, how would you, just in your own words, 03: describe the role of a board of directors? 04: A Well, let me start with what boards 05: don't do. Boards don't run companies. Boards 06: don't run sales or marketing or product 07: development or any of those things. The CEO of 08: the company and the management of the company 09: perform those tasks. 10: A board is there, maybe first and 11: foremost, to hire and fire the CEO of the company. 12: But in other roles, to be a sounding board for the | of Directors besides JUUL and his personal experience is leading and irrelevant, likely to confuse or misdirect the jury. This is a long narrative containing irrelevant information that is well outside the scope of the direct exam leading, relevance 620: 17-19 leading Plaintiff does not object to 620: 4-16.<br><br>Proposing Party's Position: These counters are appropriate under FRE 106/611, and fall within the scope of Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding (a) Mr. Pritzker's investment in JLI and role as a Board member, (b) the target audience for the company's product and marketing, (c) the launch of the JUUL product, (d) Mr. Pritzker's reaction to the Vaporized campaign, (e) the Altria investment, and (f) allegations that JLI had a plan to "addict kids."<br><br>As to 618:14-20, not a waste of time because it provides basic background to set up subsequent questions<br><br>As to 618:21-619:17, explains the basis for Mr. Pritzker's foundation (or lack thereof) regarding Plaintiff's questions. This will not confuse the jury, it will explain what a Board member like Mr. Pritzker does. Plaintiff rests much of her arguments re foundation, admissibility and relevance on the | |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: CEO, to make sure the company has sufficient<br>14: resources. In other words, deal with capital<br>15: requirements, deal with mergers and acquisitions,<br>16: deal with compensation of senior management.<br>17: Those are a number of the board functions.<br>18: Q  Now I want to ask you a question about<br>19: boards that you were on other than what became<br>20: Juul.<br>21: So in your capacity as a member of other<br>22: boards, non-Juul boards, were you ever asked to<br>23: approve a marketing or advertising campaign?<br>24: A No, I don't believe I ever was.<br>25: Q All right. And with respect to Juul,<br><br>Page 00620:<br>01: were you, as a board member, ever asked to approve<br>02: a marketing or advertising campaign?<br>03: A  No.<br>04: Q  All right. Now, let's move forward to | fact that Mr. Pritzker was a Board member -- he should be allowed to explain the extent to which Board members are actually engaged in the type of decision making Plaintiff alleges he was involved in.<br><br>As to 619:18-620:3, same as above; provides context and background that explains Mr. Pritzker's role as a Board member<br><br>As to 620: 17-19, not leading  ("did they...") | |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05: the time after you joined what became Juul's<br>06: board, but before they actually launched the Juul<br>07: product.  So in the run-up to launching the JUUL<br>08:  product, did the company share with you and the<br>09: other members of the board the basic timing for<br>10: the proposed launch?<br>11:  A Yes.<br>12:  Q And just tell us again what you<br>13: understood that to be.<br>14: A The proposed launch of JUUL, I don't<br>15: know exactly what date, but it was proposed for<br>16:  June 1st of 2015.<br>17:  Q    Did they share with the board some of<br>18: the plans for the proposed launch?<br>19: A    Yes. | | |
| 10. | Page 00620:<br>20: Q And what did you understand the target<br>21:  market was for the proposed launch of the JUUL<br>22: product, you being you and the other members of<br>23: the board?<br>24:  A Well, there were | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Proposing Party's Position:<br>Same as above; these counters are appropriate under FRE 106/611, and fall within the scope of | **Overruled**. The testimony is sufficiently within the scope of the affirmatively designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | several categories of 25: target markets. But the youngest group of the<br><br>Page 00621:<br>01: target market was people between the ages of 25<br>02: and 34.<br><br>Page 00622:<br>03: Q   Okay. Now, in any of the run-up to the<br>04: launch of the JUUL product, did you have any<br>05: reason to think that the company had the intention<br>06: of targeting underage users?<br>07: A   None.<br>08: Q   Did you intend to have the company<br>09: target underage users?<br>10: A   No.<br>11: Q   Now, I think you testified that in the<br>12: run-up to the launch that you and other members of<br>13: the board saw some of the proposed marketing and<br>14: advertising images; is that right?<br>15: A That's right.<br>16: Q Do you know whether any of those were<br>17: actually used?<br>18: A  o, I don't know which ones were used.<br>19: Q Okay. Do you believe that you saw some<br>20: or all of the proposed marketing and | Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding (a) Mr. Pritzker's investment in JLI and role as a Board member, (b) the target audience for the company's product and marketing, (c) the launch of the JUUL product, (d) Mr. Pritzker's reaction to the Vaporized campaign, (e) the Altria investment, and  (f) allegations that JLI had a plan to "addict kids." | |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|---------------------|--------|
| | advertising<br>21: images?<br>22: A I'm sure I didn't see all.  I believe I<br>23: saw some, but I -- I don't know which ones were<br>24:actually used. | | |
| 11. | Page 00622:<br>19: Q  Okay.  Now, share with us, please, your<br>20:  reaction to the proposed marketing campaign when<br>21: you first saw it.<br>22: A  I am the opposite of a marketing person.<br>23:  I've never dealt with marketing, I've never<br>24:  considered it to be anything that I have a feel<br>25: for.  I had expressed a preference, even before I<br><br>Page 00623:<br>01: ever saw the initial campaign, of what I had hoped<br>02:  for was a campaign that didn't use models at all,<br>03: that was very subtle, and the kind of thing I<br>04: always had in mind was the Volkswagen ads that had<br>05:  a picture of the Beetle or -- I'm telling my age, | <u>Objecting Party's Position:</u><br>623:11-22 mischaracterizes testimony<br><br><u>Proposing Party's Position:</u><br>testimony is not mischaracterized | **Overruled.** The question does not characterize testimony. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | 06: but -- or the Apple ads; the ones that just showed<br>07: the computer.  I always thought that that kind of<br>08: advertising was -- was distinguished and subtle.<br>09: So that's what I would have preferred. And I had<br>10: expressed that preference.<br>11:  Q Now, do you recall that yesterday you<br>12:  were asked a number of questions, the gist of<br>13:  which was, why didn't you insist that the company<br>14: do it your way?<br>15:  A    Well, as I say, I'm -- I'm anything but<br>16:      a marketing person, though we had a very capable<br>17: marketing person.  I knew Richard Mumby. I talked<br>18: to him right when he joined the company. And I<br>19:  had real confidence that he and James Monsees, the<br>20:  CEO, would come up with a marketing program that<br>21:  was good and better thought out than any one that | | |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 22:  I might have proposed.<br>23:  Q  When you saw the proposed images, the<br>24:  ones that you did, and when you heard about the<br>25: plans for the launch, to the extent you did, did<br>00: 00624<br>01:  you think that any of that was targeted at<br>02:  underage users?<br>03:   A  No, I had several reasons that I didn't<br>04: think that. | | |
| 12. | Page 00627:<br>07:  Q  All right.  Now, I think you testified<br>08: earlier today that upon the launch, you heard some<br>09: criticism from family members, friends, and the<br>10: press, to the effect that the Juul launch<br>11: campaign, Vaporized, was either targeting kids or<br>12: unnecessarily attractive to kids; is that right?<br>13:  A  Yes, I got comments around that.<br>14: Q    And would it be fair to say that this, | <u>Objecting Party's Position</u>:<br>leading; 106/611 - Defendants' counters are not for completion and are outside the scope.<br><br><u>Proposing Party's Position</u>:<br>Not leading, question sets up undisputed preliminary matters covered in Plaintiff's affirmative designations<br><br>Testimony is directly within scope of plaintiffs' examination of witness regarding numerous exhibits relating to discussions with family members (e.g., Exhibit 14030) | **Overruled**.  The questions are preliminary to develop the witness's testimony.  The testimony is sufficiently within the scope of the affirmative designations. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15: with your son-in-law, was one of those things you<br>16: were referencing?<br>17: A  Yes. | | |
| 13. | Page 00627:<br>18: Q  So explain to us how you started to<br>19:  think about the launch campaign, after this e-mail<br>20: exchange and some of the other things that you've<br>21: already testified about?<br>22: A   Well, Chris and ▮▮▮▮ didn't know, and<br>23: other people didn't know who made comments to me,<br>24: or who read about this in the press, or wrote<br>25: about it in the press, didn't know what I knew,<br><br>Page 00628:<br>01: which was what the intent of the company was and<br>02: wasn't.  They didn't know the target age, they<br>03: didn't know what the age of the models were, that<br>04: the company policy was 27 and above.<br>05: They just looked at what they saw in the | Objecting Party's Position:<br>This designation involves pages of Mr. Pritzker's narrative made in the context of being sued, attempting to explain his thought process  about the Vaporized Campaign and his interpretation of JLI's intentions with respect to the advertising. For example, he testified "I knew what they were intending" (629: 3) and "they didn't note the key goals of the company, which was to convert smokers."  (629: 14-15).  "Yes, I do think the company's intentions were misunderstood." (630: 1-2).  Mr. Pritzker is not deposed in the context of JLI's Rule 30b6 witness and his speculation about JLI's intent over a span of time regarding their marketing strategies is not proper, is misleading and will misdirect the jury.  This testimony is unduly prejudicial and this examination is an attempt to "clean up" Mr. Pritzker's testimony in the direct examination by asking leading questions to guide the witness to bolster JLI's conduct away from negative implications.  This testimony also violates FRE 106/611 in that  Defendants' counters are not for completion and are outside the scope of the direct exam.<br>628:15-629:5 hearsay, lack of foundation/speculation<br>629:18-630:8 leading, narrative | **Sustained** (698:18-630:8): Leading.<br><br>**Overruled** (remainder). This testimony is sufficiently within the scope of the affirmative designations. The witness's understanding of the correspondence that is the subject of affirmative designations provides permissible context and clarification, and go to the same issues toward which the affirmative designations are offered. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 06: images. And as I started receiving messages like<br>07: this, I started looking at the campaign as if<br>08: through their eyes, and became increasingly<br>09: convinced that the company really needed a<br>10: different direction in its -- in its marketing and<br>11: branding, something that the company had already<br>12: been considering, or certainly Alexander Asseily<br>13: as a consultant had been thinking about, even<br>14: before this time.<br>15: Q Okay. Now, did the criticism from<br>16: family, friends, and the press change your view<br>17: about who the company was trying to target?<br>18: A Absolutely not. I knew what the company<br>19: was trying to do. I knew the people involved. I<br>20: knew Richard Mumby and his strong feelings about | <u>Proposing Party's Position:</u><br>Questions are not leading but provide context to testimony plaintiffs' counsel elicited; the witness is not speculating -- witness he testifies to his own knowledge and understanding ("I knew...," "I didn't think...," "I certainly heard...")<br><br>Testimony does not violate FRE 106/611, it is directly within scope of plaintiffs' examination of witness regarding numerous exhibits relating to discussions with family members (e.g., Exhibit 14030)<br><br>Testimony is not misleading or prejudicial simply because witness is finally given an opportunity to explain what he meant<br><br>As to 628:15-629:5, not hearsay, testimony is about whether criticism changed Mr. Pritzker's views, which he clearly has foundation to talk about<br><br>As to 629:18-630:8, not leading (he is asked "do you think..."), and the answer is responsive ("I do think...") | |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|--------------------------------|--------------------|--------|
| | 21: the importance of the mission of the company, that 22: being converting adult smokers. I interviewed 23: James. It was -- the mission of the company was 24: critical to his even joining, and the same with -- 25: with James Monsees, and everybody I talked to at

Page 00629:
01: the company.
02: So I certainly -- I knew what they were
03: intending, and they were in no way intending to
04: appeal to youth, to underage people. I knew that
05: their focus was 25 to 34 and above.
06: Q So in light of the criticism that came
07: after launch, can you explain for us, please, why
08: you say that you thought the company needed to
09: move in a different direction?
10: A I didn't think that the -- in addition
11: to my general feelings about using models of any | | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|------------------------------|--------------------|--------|
| | 12: age, the whimsical nature of the ads, I didn't<br>13: think, sufficiently reflected the seriousness of<br>14: the company.  They didn't note the key goals of<br>15: the company, which was to convert smokers. So for<br>16: those reasons, those were among my thoughts as I<br>17: saw the need for different branding.<br>18: Q  Did you think that the Vaporized<br>19: campaign was being misunderstood by family,<br>20: friends, and press who were criticizing it?<br>21:  A Well, I certainly heard a lot of<br>22: criticism from people that I think didn't<br>23: understand, and hadn't seen the decks that I had<br>24: seen being explicit about who the target audience<br>25: was, weren't aware of the company policy.<br><br>Page 00630:<br>01: So, yes, I do think that the company's | | |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: intentions were misunderstood. But nonetheless, 03: that was the perception, and perception counts. 04: Reputation is based on perception. So it's -- I 05: wouldn't try to convince people that they were 06: misperceiving, even if I saw that they didn't 07: understand the reality of what the company was 08: trying to do. | | |
| 14. | Page 00630: 09: Q Now, in this e-mail exchange with your 10: son-in-law, Chris Olin, and in some of the other 11: ones that the plaintiffs used yesterday, you made 12: various statements to them that you were going to 13: raise a voice within the board and at the company. 14: So let's go to another exhibit, 14043, and we'll 15: see -- I want your comment on at least one of the 16: things that you did. | Objecting Party's Position: leading question, including unnecessary attorney commentary associated with introducing an email from Mr. Mumby to him as Exhibit 14043 narrative; nonresponsive; 106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Proposing Party's Position: Same as above, appropriate under FRE 106/611, and falls within the scope of Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding (a) Mr. Pritzker's investment in JLI and role as a Board member, (b) the target audience for the company's product and marketing, (c) the launch of the JUUL product, (d) Mr. Pritzker's reaction to the Vaporized campaign, | **Sustained**. Leading and unnecessary attorney commentary. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | (e) the Altria investment, and (f) allegations that JLI had a plan to "addict kids."<br><br>Not leading or unnecessary attorney commentary; provides appropriate background and direction to assist the jury in following the examination | |
| 15. | Page 00630:<br>17: MR. GUZMAN: All right. Let's go down<br>18: to the third page. It ends in 370. And let's<br>19: focus on this e-mail from Richard Mumby to Nick at<br>20: Tao Cap.<br>21: BY MR. GUZMAN:<br>22: Q All right. Do you see that, sir?<br>23: A Yes.<br>24: Q Now, I think the plaintiffs asked you<br>25: about this yesterday. So just give us your view<br><br>Page 00631:<br>01: about what was going on here.<br>02: Why did Mr. Mumby send you this e-mail<br>03: in response to the conversation you had with him?<br>04: A Well, this was right after a board | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope. 631:2-3 (calls for speculation as to why Mr. Mumby sent the email to Mr. Pritzker without foundation laid as to whether he has personal knowledge of the reasons why). In addition to speculating about Mr. Mumby's state of mind, Mr. Pritzker gives a non-responsive answer involving Pritzker's suggestions about the campaign back in 2015. He then offers his thoughts about what the "designer of the Vaporized campaign" thought. This is pure speculation, lack of foundation, non-responsive, and confusing. Mr. Pritzker's speculation continues with his guessing about the state of mind of other board members based on Pritzker's "personal perceptions." ((632:1-9). He does not even identify who is speculating about -whether every board member or some of them. The testimony is problematic and should be stricken.<br>632:10-16 is also speculative testimony and inadmissible hearsay<br><br>Proposing Party's Position: | **Sustained** (631:2-22): Calls for speculation.<br><br>**Overruled** (remainder): The testimony is sufficiently within the scope of the affirmative designations. It is neither speculative nor hearsay. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05: meeting, which -- I think the date of which 06: was June 17th, in which it was clear that the 07: consensus was that the branding and image needed 08: to change, and needed a change soon. And that 09: Alexander Asseily was working with management 10: on -- as a consultant with management to develop 11: that. 12: And one immediate suggestion that I had 13: was that as long as the current campaign was to 14: proceed, that we could change the age of the 15: models from 27 and older to 30 years and older. 16: It was a minor change, but one I had 17: recommended. And clearly, Richard had agreed with 18: that, and was going to put that into effect. 19: To me, all of this reflects that even 20: the person who was mostly the designer of the 21: Vaporized campaign saw that a change was | Same as above<br><br>As to 631:2-3, does not call for speculation, the question is clearly asking for Mr. Pritzker's understanding as indicated by the prior statement which says "so just give us your view..." Mr. Pritzker does not speculate as to Mr. Mumby's state of mind, his answer is clearly based on his personal understanding of the events following the June 2015 board meeting<br><br>As to 632:10-16, not speculative or hearsay, Mr. Pritzker is asked about his understanding and he explains based on his own knowledge | |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|-----|------------------|-------------------|--------|
| | 22: important.<br>23: Q You mentioned the board meeting in June,<br>24: June 17th of 2015.<br>25: A Yes.<br><br>Page 00632:<br>01: Q When the launch campaign was discussed<br>02: at the board meeting, did anybody on the board, to<br>03: your understanding, resist the idea that the<br>04: company's branding and imaging needed to change?<br>05: A No, I remember no objection at all to<br>06: the notion of working towards a different model.<br>07: I think it was universally agreed by them that<br>08: that was the right path. At least that was my<br>09: perception from that meeting.<br>10: Q Was it your understanding that<br>11: Mr. Monsees and Mr. Mumby were also in agreement<br>12: that in light of the criticism that came after<br>13: launch, that the Vaporized campaign needed to<br>14: change? | | |

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15: A Yes, I think they were in the forefront 16: of seeing the importance of the change. 17: Q So at the board meeting of June 2015, or 18: at any subsequent board meeting in 2015, did the 19: board ever order or mandate that the company 20: change the Vaporized campaign? 21: A Not at all. There was no such order or 22: mandate. 23: Q Why not? 24: A Well, I believe the company -- the board 25: certainly made suggestions. I believe the company  Page 00633: 01: itself decided that the change was important, and 02: moved in that direction. So no mandate was 03: necessary. | | |
| 16. | Page 00640: 06: Q Let's switch gears again, and talk a 07: little bit about the Altria investment. Today, | Objecting Party's Position: Leading questions that call for self-serving narratives that violate FRE 106/611 because these counters are not for completion and are outside the scope of direct examination. Counsel mischaracterizes plaintiffs | Sustained (640:22-641:7): Mischaracterizes the allegations.  Overruled (remainder): This testimony is sufficiently within the |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: plaintiffs questioned you at some length about<br>09: that investment, right?<br>10: A Yes.<br>11: Q And I believe you testified that you had<br>12: a role in negotiating that investment by Altria,<br>13: right?<br>14: A Yes.<br>15: Q Describe for us just in a couple of<br>16: sentences how you saw that role.<br>17: A I was representing the board in a<br>18: strategic committee with Riaz Valani, and on<br>19: behalf of the board negotiating the deal, working<br>20: with the company, especially through Kevin Burns,<br>21: who became the CEO in early 2018.<br>22: Q Plaintiffs allege that you, members of<br>23: the board and Juul, the company, always had a plan<br>24: to addict kids, and then sell them, in one fashion | allegations at 640: 22-641:3 and the attempt by Mr. Pritzker to explain away his earlier testimony should not be permitted. These questions/answers attempt to take away from the jury their role in weighing the evidence.<br><br>Proposing Party's Position:<br>Same as above, appropriate under FRE 106/611, and falls within the scope of Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding (a) Mr. Pritzker's investment in JLI and role as a Board member, (b) the target audience for the company's product and marketing, (c) the launch of the JUUL product, (d) Mr. Pritzker's reaction to the Vaporized campaign, (e) the Altria investment, and (f) allegations that JLI had a plan to "addict kids."<br><br>The question at 640:22-641:3 does not mischaracterize Plaintiff's allegations; Mr. Pritzker should be permitted a full and fair opportunity to address Plaintiff's allegations based on his own knowledge and understanding | scope of the affirmative designations. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25: or another, to some player who was in Big Tobacco,<br><br>Page 00641:<br>01: whether that was Altria or Philip Morris or<br>02: anybody else.  What is your reaction to that<br>03: allegation?<br>04:  A  It's completely false.  There was never<br>05:  any such plan or intention on the part of the<br>06: board or anybody in the company, as far as I know.<br>07: I'm quite confident of that. | | |
| 17. | Page 00654:<br>09:  Q  And finally, if you and the company<br>10:  couldn't get comfortable that Altria would support<br>11: Juul's mission to target adult smokers, and to<br>12: help adult smokers, would you have done the deal?<br>13:  A If they hadn't supported that as a goal?<br>14:  Absolutely not. That was -- there was never a<br>15: question about that. That was always an | <u>Objecting Party's Position:</u><br>leading; 106/611 - Defendants' counters are not for completion and are outside the scope.<br><br><u>Proposing Party's Position:</u><br>Same as above, appropriate under FRE 106/611, and falls within the scope of Plaintiff's affirmatives because they are directly related to testimony designated by Plaintiff regarding the Altria investment. Not leading, counsel asks if certain conditions had not been met, "would you have done the deal?" The witness responds: "absolutely not" | **Overruled**. The testimony is sufficiently within the scope of the affirmatively designations.  The question is not impermissibly leading. |

| No. | Defendants' Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: understanding. That's what they signed on to. 17: That's what they were excited about. That was 18: always the focus of both parties. | | |

### c.  Defendants' Affirmative Designations

| No. | Defendants' Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00647: 19  Q. What was your reaction to the idea of 20  selling control or even the whole company to 21  Altria? 22  A. I was against selling the whole company 23  to Altria.  I was definitely against any kind of a 24  venture where Altria would have control or an 25  ability to gain control. | Objecting Party's Position: 611 leading  Proposing Party's Position: This line of questioning is not leading and is permissible under Rule 611 to develop the witness's testimony. | **Overruled.**  Not leading. |
| 2. | Page 00655: 11  Q. Before the deal, did Altria ever try to 12  exert control over you or the company? 13  A. Absolutely not. 14  Q. After the deal, did Altria ever try to | Objecting Party's Position: 611 leading, lack of foundation (speaking for the entire Board and company)  Proposing Party's Position: Leading: This line of questioning is not leading and is permissible under | **Sustained**. Lack of foundation to testify as to the entire company or  with respect to all of Altria's efforts. |

| No. | Defendants' Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15  exert control over you or the company? 16  A. In no way did they do that, no. | Rule 611 to develop the witness's testimony.<br><br>Lack of Foundation: The witness's testimony establishes sufficient foundation.  Testimony is based on the witness's personal knowledge and rationally based perceptions as a JLI board member during the negotiations and investment. | |
| 3. | Page 00655: 24  Q. Before the transaction closed in any 25  way, shape, or form, did Altria try to make<br><br>Page 00656: 1   business decisions for the company? 2  A. No. 3  Q. Since the deal closed, has Altria tried 4  to make business decisions for the company? 5  A. Never. 6  Q. Would you let them? 7  A. No. 8  Q. Before the deal closed, did Altria ever 9  try to influence different board policies and 10  strategies, that is, the board of Juul? 11  A. No. 12  Q. After the deal, did Altria ever try to | <u>Objecting Party's Position:</u> 611 leading, lack of foundation (speaking for the entire Board and company)<br><br><u>Proposing Party's Position:</u> Leading: This line of questioning is not leading and is permissible under Rule 611 to develop the witness's testimony.<br><br>Lack of Foundation: The witness's testimony establishes sufficient foundation.  Testimony is based on the witness's personal knowledge and rationally based perceptions as a JLI board member during the negotiations and investment. | **Sustained**. Lack of foundation to testify as to the entire company or  with respect to all of Altria's efforts. |

| No. | Defendants' Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13  influence the policies and strategies of the Juul<br>14  board?<br>15  A. No, absolutely not. | | |

### d.  Defendants' Counter-Counter Designations

| No. | Defendants' Counter-Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 650:<br>11  Q. Now, you also testified that in<br>12  connection with the negotiations with Altria, you<br>13  and other board members wanted to figure out if<br>14  Altria was actually committed to supporting and<br>15  advancing Juul's mission.  Did I get that right?<br>16  A. Yes.<br>17  Q. So tell us some of the things that you<br>18  did and some of the developments that you saw<br>19  that -- that got you comfortable that Altria<br>20  would, in fact, be supportive of and help you<br>21  advance the company's mission.<br>22  A. Well, for one thing, I became very | <u>Objecting Party's Position:</u><br>611 leading; lack of personal knowledge as to what Altria knew and saw; Hearsay (649:17-650); Mischaracterizes testimony and prior questioning (651:17-652:14); object to prefatory speech by counsel<br><br><u>Proposing Party's Position:</u><br>Appropriate under FRE 106/611, and falls within the scope of Plaintiff's counters.  Not leading, witness is asked to "tell us some of the things" that made him comfortable with the deal and he explains; prefatory statement orients jury and witness confirms it is correct.  As to 649:17-650, not hearsay, asks about things Mr. Pritzker "did" or "saw."  As to 651:17-652:14, no testimony is mischaracterized. | **Sustained** (651:17-652:14): Mischaracterizes prior questioning and contains improper attorney commentary.<br><br>**Overruled** (remainder): The testimony is sufficiently within the scope of the affirmative designations. |

| No. | Defendants' Counter-Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 23  comfortable with the leadership at Altria, of 24  their sincerity, of their desire to see a -- 25  frankly, a better product being used by their<br><br>Page 00651:<br>1   customer -- by their customers, and their 2    willingness to actually lose customers. 3    I mean, they saw that the cigarette 4    market was declining, and they saw that their 5    customers would turn to better products, 6  specifically JUUL, and they welcomed the notion of 7   a transition to JUUL. And they just wanted to be 8   part of it.  They saw that they were having 9   difficulty in developing a product, an e-cigarette 10  product that was competitive in quality. 11  That and their willingness, and really 12  the ideas were from both sides, that Altria would 13  supply services, the things that they were very | | |

| No. | Defendants' Counter-Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14  good at, at the option of Juul, to assist Juul in<br>15  -- even in its competition against their core<br>16  product.<br>17  Q. All right.  So we've talked about a<br>18  number of the features of -- of a proposed deal in<br>19  the eventual Altria transaction.<br>20  A. Yes.<br>21  Q. Control, this idea of splitting the<br>22  company into domestic and international<br>23  operations, risk of regulatory and antitrust<br>24  approval, and also Altria's willingness and<br>25  ability to support the mission of Juul.<br>Page 00652:<br>1  Now, the plaintiffs in their questioning<br>2  made it sound as though the only thing you ever<br>3  cared about was the price, and when Altria put<br>4  enough money on the table, you were ready to do<br>5  the deal.  But I want to get your reaction to how | | |

| No. | Defendants' Counter-Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 6 important price was relative to these other four<br>7 issues that you've just testified about.<br>8 A. Well, price was obviously a critical<br>9 feature, but not without the right structure. So<br>10 the structure had to come first. We ultimately<br>11 realized that far more important was -- price<br>12 would follow, and hopefully, we would come to an<br>13 agreement on it, but we needed to get the terms<br>14 the right way. | | |
| 2. | Page 655:<br>7 Q. The discussions with Altria lasted about<br>8 18 months. Fair to say those were hard fought and<br>9 arm's length?<br>10 A. Absolutely.<br>11 Q. Before the deal, did Altria ever try to<br>12 exert control over you or the company?<br>13 A. Absolutely not.<br>14 Q. After the deal, did Altria ever try to<br>15 exert control over you or the company?<br>16 A. In no way did they do that, no. | Objecting Party's Position:<br>[same as obj to D affirmatives for this testimony: 611 leading, lack of foundation (speaking for the entire Board and company)]<br><br>Proposing Party's Position:<br>Appropriate under FRE 106/611, and falls within the scope of Plaintiff's counters. Not leading, witness is asked if Altria has ever done certain things , and he is speaking based on his personal knowledge as a Board member | **Sustained**. Leading and lack of foundation to testify as to the entire company or with respect to all of Altria's efforts. |

| No. | Defendants' Counter-Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 3. | Page 00655:<br>24 Q. Before the transaction closed in any<br>25 way, shape, or form, did Altria try to make<br><br>Page 00656:<br>1 business decisions for the company?<br>2 A. No.<br>3 Q. Since the deal closed, has Altria tried<br>4 to make business decisions for the company?<br>5 A. Never.<br>6 Q. Would you let them?<br>7 A. No.<br>8 Q. Before the deal closed, did Altria ever<br>9 try to influence different board policies and<br>10 strategies, that is, the board of Juul?<br>11 A. No.<br>12 Q. After the deal, did Altria ever try to<br>13 influence the policies and strategies of the Juul<br>14 board?<br>15 A. No, absolutely not. | Objecting Party's Position:<br>[same as obj to D affirmatives for this testimony: 611 leading, lack of foundation (speaking for the entire Board and company)]<br><br>Proposing Party's Position:<br>Appropriate under FRE 106/611, and falls within the scope of Plaintiff's counters. Not leading, witness is asked if Altria has ever done certain things , and he is speaking based on his personal knowledge as a Board member | **Sustained**. Leading and lack of foundation to testify as to the entire company or with respect to all of Altria's efforts. |

## IV.  RIAZ VALANI

### a.  Plaintiff's Affirmative Designations

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00019:<br>10: Q. Mr. Valani, would you describe<br>11: yourself as a billionaire?<br>12: A. I wouldn't.<br>13: Q. Do you have more than a billion<br>14: dollars?<br>15: A. Yes, I do.<br>16: Q. When did you become a<br>17: billionaire?<br>18: A. Probably somewhere in the 2018,<br>19: 2019 range. | Objecting Party's Position:<br>FRE 401/402; FRE 403; MIL 7. Judge Orrick has granted defendants' MIL 7 excluding individual witness' personal wealth and spending patterns. While Judge Orrick has permitted the "amount of money received as a result of the Altria deal" this testimony does not have to do with the Altria deal and instead is about the witness' personal net worth and status as a billionaire which has no relevance to B.B.'s claims and would be prejudicial if introduced. Plaintiffs attempt to relitigate Judge Orrick's clear MIL ruling by arguing that Mr. Valani is part of a "scheme" but Plaintiff is not asserting RICO claims in the B.B. trial and Mr. Valani's alleged participation in the "scheme" are not relevant to Plaintiff's negligence, strict liability, or misrepresentation claims which are focused on JLI's conduct and not the conduct of its individual directors and investors. Plaintiffs are also incorrect that this testimony relates to Mr. Valani's investment in JLI, the Altria transaction, or "potential future financial payoff from remaining investment in JLI"; again, the testimony is solely about Mr. Valani's general net worth and status as a billionaire. Moreover, to the extent that Plaintiff has designated testimony at 40:1-6 regarding the amount Mr. Valani received as a result of the Altria transaction, this testimony is cumulative and | Sustained. The Court excluded testimony related to a witnesses' personal wealth and spending patterns. Minute Order, Dkt. 3170 at 4. The witness' statements fall squarely within the scope of the foregoing. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | prejudicial because it repeatedly introduces to the jury Mr. Valani's general personal wealth which is "irrelevant to any issue of liability or compensatory damages," Bridget McCarthy v. Loyola Marymount Univ., 2021 WL 3164190, at *1 (C.D. Cal. Jan. 8, 2021).<br><br>Proposing Party's Position:<br>Riaz Valani was the first and largest investor in JLI, and has been on the Board of Directors of JLI since at least 2007. He controls two of JLI's seven Board seats. At least from October 2015 to August 2016, he was on the Executive Committee in the Board of Directors, and has been intimately involved in JLI's daily operations throughout JUUL's time on the market. During JLI's discussions with Altria, Valani (along with second largest investor Nicholas Pritzker) served as a lead negotiator for JLI in securing Altria's investment. Mr. Valani testifies that he became a billionaire in 2018/2019 around as a result of the Altria / JLI transaction. Testimony about Valani's large return on investment of JLI by growing JLI's market share by attracting youth is relevant to the Defendants' Scheme, motive, knowledge, intent and bias. See Plaintiffs Response to MIL #7 (Central to Plaintiff's claims are allegations that key employees and investors of JLI like Valani sought to position JLI for acquisition by Big Tobacco so that they could reap large returns on their investment. See, e.g., Second Am. Compl. (Bain) ¶¶ 46-47, |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | 455, 534. This is clearly relevant to Motive.<br><br>Valani and these other individuals knew they needed to grow JLI's market share to realize the enormous returns they sought, and they set about doing so by expanding the market for e-cigarettes by, among other things, creating a youth vaping epidemic. See, e.g., id. ¶¶ 88-107, 461-510. Altria participated in this scheme by, among other things, suggesting a multimillion-dollar payout to key JLI personnel and ultimately creating a financial windfall for these individuals including Mr. Valani. See, e.g., id. ¶¶ 55, 455, 534, 590. Therefore, evidence surrounding Valani's investment in JLI, Altria's investment in JLI, and Valani's payout resulting from Altria's investment in JLI, and the financial condition of JLI and Altria before and after Altria's investment in JLI are all directly relevant to the alleged wrongdoing.<br><br>In addition, Mr. Valani's investment in JLI and the return they received on that investment as a result of the Altria investment (i.e., the payout he received) are directly relevant to that his motive, knowledge, and intent to grow the market for e-cigarettes, increase the number of nicotine-addicted youth, and make JLI a more attractive target for a potential acquisition. See United States v. Reyes, 660 F.3d 454, 464 (9th Cir. 2011) (permitting the introduction of | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------| 
| | | evidence of Defendant's financial gains to show motivation for and knowledge of the overall scheme). Beyond being relevant to the substantive issues in the case, evidence of any individual's investment in JLI, the lucrative payouts they received as a result of Altria's investment in JLI, and potential future financial payoff from remaining investment in JLI are all evidence of potential bias.<br><br>As to Defendants 'contention that there is no RICO claim at issue - there is however a conspiracy claim that the jury will consider.<br><br>Defendants repeatedly and excessively cite Rule 403 in objecting to nearly all of the testimony, demonstrating that lack of merit to the objection.   The testimony is not unfairly prejudicial because its probative value is not substantially outweighed by its probative value.  Moreover, it is not cumulative.  How could the amount of money that MR. VALANI received from the Altria transaction be cumulative?  It does not come in through any other witness?  This objection is utterly meritless. | |
| 2. | Page 00039:<br>11:  All right.  We'll mark this as<br>12:  a new exhibit, which is 40072.<br>13:  All right.  Now, Mr. Valani, | Objecting Party's Position:<br>FRE 401/402; FRE 403; MIL 7; FRE 602/Lacks Foundation.  Same as above.  Exhibit 40072 is based on JLI01388029 which Mr. Valani is not familiar with, see 22:17-25, and counsel's own math, which Mr. Valani says he cannot verify, see | Sustained in part, overruled in part. In ruling on Defendants' MIL #7, the Court excluded testimony about a witnesses' personal wealth and spending patterns, but allowed |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: based on the math that we've been doing on<br>15: the fly a little bit here, as we understand<br>16: it, and understanding your caveats about<br>17: trusting our math rather than looking at the<br>18: source documents, as we calculate it, the<br>19: amount that you personally had invested, in<br>20: your own personal capacity and through Ploom<br>21: Investment LLC, in the company known as JLI<br>22: as of the December 2018 Altria transaction,<br>23: was approximately 4 million --<br>24: $4.789 million, correct?<br>25: A. Yes.<br><br>Page 00040:<br>01: Q. All right. And the payout that<br>02: you received -- and again, understanding<br>03: you're trusting our math -- from the Altria<br>04: transaction was approximately $2.45 billion, | 29:15-34:23. Some of this math is also incorrect: 4,789,815.86 x 512.48 = 2,454,684,831.93, which is not equal to the alleged payout amount on Exhibit 40072 of 2,454,710,526.39. Exhibit 40072 is also irrelevant and prejudicial because it includes investments from an entity titled Ploom Investment LLC, of which Mr. Valani is not a economic beneficiary or shareholder. See 23:13-23.<br><br>Even assuming the numbers presented to the jury are accurate and reliable, this testimony should still be excluded because it goes well beyond "the amount of money received as a result of the Altria deal" and includes other irrelevant, prejudicial, and cumulative information regarding the amount initially invested by Ploom Investment LLC/Mr. Valani and an uncorroborated and unverified calculation of Ploom Investment LLC/Mr. Valani's alleged "return on investment" as both a multiple and percentage. This additional testimony only emphasizes Mr. Valani's personal wealth and should be excluded under Judge Orrick's MIL 7 ruling excluding individual witness' personal wealth and spending patterns.<br><br><u>Proposing Party's Position</u>:<br>See response to 16:10-14. | testimony related to the amount of money received as a result of the Altria deal and the company's financial condition. As a result, testimony regarding amounts of money that Mr. Valani received as a result of the Altria deal are permitted, and the testimony at 40:01-40:06 is admissible. However, testimony from 39:11-39:25, concerning the witness' personal wealth and spending pattern, must be excluded because it falls within the ambit of DMIL #7's prohibitions. Similarly, the testimony from 40:08-40:13, must be excluded because it indirectly elicits testimony about the witness' personal wealth, which must be excluded under DMIL #7. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|  | 05: correct?<br>06: A. Yeah. Thereabouts.<br>07: Q. And doing rough math there,<br>08: that's about a 512 times return on that<br>09: investment, correct?<br>10: A. That's the amount.<br>11: Q. All right. That's about a<br>12: 51,248 percent increase, correct?<br>13: A. Yes. | | |
| 3. | Page 00041<br>03: Q. And you received this 512 times<br>04: return on your investment just approximately<br>05: three and a half years after the JUUL product<br>06: launched in June of 2015, right?<br>07: MR. GUZMAN: Objection.<br>08: THE WITNESS: Sounds right.<br>09: QUESTIONS BY MS. SHARP:<br>10: Q.    Have any of your other<br>11: investments over the course of your career<br>12: yielded that kind of return on investment? | <u>Objecting Party's Position:</u><br>Argumentative (form); Misstates prior testimony (misleading); Assumed facts not in evidence (form); FRE 401/402; FRE 403; MIL 7;  FRE 602/Lacks Foundation. Same as above, and cumulative and unduly prejudicial to the extent that this is the third time the jury is hearing the 512 figure. In addition, questions about how this investment compared to other unspecified investments are vague, irrelevant, misleading, confusing, and unfairly prejudicial.  Again, this testimony only emphasizes Mr. Valani's personal wealth and should be excluded under Judge Orrick's MIL 7 ruling excluding individual witness' personal wealth and spending patterns.  Objection was made and preserved (see 41:7).  In any event, no objections have been waived; both parties reserved the right to assert "all objections not specifically delineated | **Sustained** (41:3-13). Under Defendants' MIL #7, testimony regarding the witness' personal wealth and spending patterns must be excluded. Minute Order, Dkt. 3170 at 4.   In addition, the testimony is cumulative and argumentative.<br><br>**Overruled** (41:14-16). Defendants' MIL #7 permits testimony regarding amounts of money received as a result of the Altria deal.  Minute Order, Dkt. 3170 at 4. This testimony falls within the scope of that MIL order.  In addition, the Special Master does not find this question argumentative or misleading. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: A. I'll have to go back and look.<br>14: Q. Did it stand out to you as a<br>15: pretty good return?<br>16: A. It's a large return. | that later become known," including form objections. See 5/25/22 Joint Letter<br><br>Proposing Party's Position:<br>Form objections were not made/preserved, and are therefore waived. See response to 16:10-14. There is nothing argumentative about the extent of the return on investment that Mr. Valani made, nor was any testimony mischaracterized. In fact, the witness admitted that a 512 % return on investment was correct and a large return. | |
| 4. | Page 00050:<br>Q. And the product when it<br>07: launched included several flavors, right?<br>08: Like fruit and mint and crème brûlée?<br>09: A. That's correct.<br>10: Q. Yeah.<br>11: And it had a party mode, right?<br>12: A. I've been told this, yes.<br>13: Q. Yeah.<br>14: That you press a button and<br>15: lights go, go off and --<br>16: A. Yeah.<br>17: Q. -- feels like a party, right?<br><br>Page 00050:<br>20: THE WITNESS: I never -- yeah, | Objecting Party's Position:<br>Vague and ambiguous (form, "you press a button and lights go, go off, and [it] feels like a party"); Lacks Foundation/FRE 602. Witness does not have firsthand knowledge of "party mode" or that "you press a button and lights go, go off, and [it] feels like a party." No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections. See 5/25/22 Joint Letter<br><br>Vague and ambiguous (form, "you press a button and lights go, go off, and [it] feels like a party"); Lacks Foundation/FRE 602. Witness does not have firsthand knowledge of "party mode" or that "you press a button and lights go, go off, and [it] feels like a party."<br><br>Proposing Party's Position: | **Overruled** (50:06-50:16). The form of the question was sufficiently clear and specific for the witness to answer. A proper foundation has been laid for the witness to testify about flavors offered by JUUL at the time of company's launch. The question elicits an answer that is rationally based on the witness' experience and perception.<br><br>**Sustained** (50: 17-50:22). The witness testifies that he has never witnessed the JUUL's party mode, so testimony as to party mode characteristics is not based on his personal knowledge. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 21: I've never done it, so I can't -- I 22: don't really understood it. | Form objections were not made/preserved, and are therefore waived.<br><br>Valani acknowledges that he's been told that the product has a party mode which is an adequate foundation. | |
| 5. | Page 00051: 22: When the product launched in 23: June of 2015, did it 24: have any feature that 24: caused the JUUL to stop delivering nicotine 25: after a certain point?<br><br>Page 00052: 01: A. This is after it was used a 02: certain amount, that it would automatically 03: shut off? 04: Q. That's right. 05: A. No, it did not have that 06: feature. 07: Q. Do you think having a feature 08: like that might have helped with addiction 09: issues that have come out of the product?<br><br>Page 00052: 11: THE WITNESS: I don't know. I | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form) ("stop delivering" and "after a certain point," "might have helped with addiction issues that have come out of the product"); Calls for Speculation (form); Lacks Foundation/FRE 602; Improper Opinion/FRE 701 Witness lacks foundation to speculate about whether a vague and undefined "feature like that" "might have" helped with vague and undefined "addiction issues." This question is more appropriately addressed by an expert who has actually studied the abuse liability of JUUL products, and the parties have experts who do explain these issues; Mr. Valani's personal JUUL use does not qualify him to speculate or opine on whether certain features would have "helped with addiction issues" for other individuals. No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections. See 5/25/22 Joint Letter<br><br><u>Proposing Party's Position:</u><br>Form objections were not made/preserved, and are therefore waived. Form objections were not | **Sustained** (51: 07-51:12). The question calls for expert testimony.<br><br>**Overruled** as to the remainder. The form of the question was sufficiently clear and specific for the witness to answer. A proper foundation has been laid for the witness to testify about this topic. The question elicits an answer that is rationally based on the witness's experience and perception. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12: mean, yeah, I don't know. | made/preserved, and are therefore waived.<br><br>The question was clarified and answered by the witness so there is nothing vague and it clearly did not call for speculation because the witness provided a clear answer to the question that did not require speculation - that at launch there was not an automatic shut off.  Moreover, Mr. Valani did not speculate.. he in fact answered "I do not know."<br><br>The witness himself is a JUUL user so has firsthand knowledge and this does not call for expert testimony. | |
| 6. | Page 00061:<br>16: Q. But just speaking for yourself<br>17:from a personal standpoint, do you agree that<br>18: avoiding nicotine addiction overall would be<br>19: a public health benefit? | Objecting Party's Position:<br>Vague and ambiguous (form); Lacks Foundation/FRE 602;  Improper Opinion/FRE 701.  Witness lacks foundation and expertise to opine about public health benefits of nicotine; question vague as to "public health benefit" and "avoiding nicotine addiction"<br><br>Proposing Party's Position:<br>The witness was asked from his own standpoint whether avoiding a nicotine addiction would be a public health benefit.  This question does not call for expertise, just common sense. Mr. Valani was one of the largest investors with two seats on JLI's Board - a company that manufactured and sold a highly addictive nicotine product.  His failure to answer or inability to answer should not be kept from the jury. He has more than an adequate | **Sustained**.  The witness is not qualified as an expert in public health and therefore may not opine on whether avoiding nicotine addiction overall would be a public health benefit. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | foundation to respond to such a question based on his experience in the nicotine delivery industry. | |
| 7. | Page 00061<br>23: THE WITNESS: I think that's a<br>24: very narrow question to ask, and I<br>25: don't even know that I'm -- you know, 00: 00062<br>01: I'm not an expert or a scientist, and<br>02: so I think we have to go back and look<br>03: at, you know, a variety of scientific<br>04: research to really understand -- I<br>05: think there's a lot of nuance and a<br>06: lot of detail, and I think it's very<br>07: difficult to give a wholesale answer<br>08: to your question. | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form); Lacks Foundation/FRE 602; Improper Opinion/FRE 701. Witness lacks foundation and expertise to opine about public health benefits of nicotine; question vague as to "public health benefit" and "avoiding nicotine addiction"<br><br><u>Proposing Party's Position:</u><br>The witness was asked from his own standpoint whether avoiding a nicotine addiction would be a public health benefit. This question does not call for expertise, just common sense. Mr. Valani was one of the largest investors with two seats on JLI's Board - a company that manufactured and sold a highly addictive nicotine product. His failure to answer or inability to answer should not be kept from the jury. He has more than an adequate foundation to respond to such a question based on his experience in the nicotine delivery industry. | **Sustained**. The witness is not qualified as an expert in public health and therefore may not opine on whether avoiding nicotine addiction overall would be a public health benefit. |
| 8. | Page 00069:<br>09: Q. Let me ask you this. Do you<br>10: agree that even if harm reduction for adults<br>11: is the mission for the product, that | <u>Objecting Party's Position:</u><br>Argumentative (form, assumes the company "addicted children to nicotine along the way"); Calls for a legal conclusion (form, as to what is an "unacceptable outcome"); FRE 403. Testimony likely to confuse the jury as to the legal standard and creates an impression that JLI is | **Sustained**. Calls for a legal conclusion with respect to what is an "unacceptable outcome" and without clarity as to meaning of "unacceptable outcome," the statement could confuse the jury as to the appropriate legal standard. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12: addicting children to nicotine along the way<br>13: is an unacceptable outcome?<br>14:  A.  I do believe that. | liable for any use by youth or non-nicotine users<br><br>Proposing Party's Position:<br>The question of whether addicting children is unacceptable even if harm reduction for adults is the mission is not argumentative nor does it call for a legal conclusion.  The witness answered the question without hesitation and by clearly stating that he does believe that addicting children is not an acceptable outcome. There is no risk of juror confusion or undue prejudice | |
| 9. | Page 00069:<br>18: Q. You do believe that?<br>19: A. I do. | Objecting Party's Position:<br>Argumentative (form, repeats question at 69:9-13 in a skeptical tone as if to question the witness' truthfulness and repeats assumption that company "addicted children to nicotine along the way"); Calls for a legal conclusion (form); FRE 403. Testimony likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users; cumulative to testimony at 69:9-14<br><br>Proposing Party's Position:<br>The witness agrees that responsible management of the JUUL product would include that no youth users become addicted to the product is relevant to Defendants' duty, is not argumentative and does not call for a legal conclusion but is relevant to understand the company's state of mind and knowledge and to its responsibility. There is no risk of juror confusion or undue prejudice | **Sustained**.  Cumulative of testimony from 69:09-69:14, which was excluded. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 10. | Page 00072:<br>07: And you agree that responsible<br>08: management of the JUUL product would include<br>09: ensuring that no youth users become addicted<br>10: to nicotine, right? | Objecting Party's Position:<br>Argumentative (form, suggests that JLI is liable for any use by youth users, even though it is impossible for a manufacturer to control all possible downstream sale and use of its product); Calls for a legal conclusion (form, as to what constitutes "responsible management"); FRE 403. Testimony likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users; cumulative to testimony at 69:9-14<br><br>Proposing Party's Position:<br>See response to 69:9-69:14 | **Overruled.** The form of the question is not argumentative and does not call for a legal conclusion. Defendants have failed to articulate a basis for exclusion under Rule 403. The testimony is not cumulative. |
| 11. | Page 00072:<br>15: THE WITNESS: Yeah, I do<br>16: believe that. I should stipulate,<br>17: though, that -- that kids do a variety<br>18: of things they're not supposed to do,<br>19: and I really don't want JUUL'ing to be<br>20: one of them. | Objecting Party's Position:<br>Argumentative (form, suggests that JLI is liable for any use by youth users, even though it is impossible for a manufacturer to control all possible downstream sale and use of its product); Calls for a legal conclusion (form, as to what constitutes "responsible management"); FRE 403. Testimony likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users; cumulative to testimony at 69:9-14<br><br>Proposing Party's Position:<br>See response to 69:9-69:14 | **Overruled.** The form of the question is not argumentative and does not call for a legal conclusion. Defendants have failed to articulate a basis for exclusion under Rule 403. The testimony is not cumulative. |
| 12. | Page 00167:<br>01: How many JUUL pods can a | Objecting Party's Position:<br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701. Witness | **Sustained.** Question calls for expert testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: nicotine naïve user consume with no risk of<br>03: addiction? | lacks foundation and expertise to opine on nicotine naïve users and risks of addiction for that segment of the population; just because the witness is a board member does not mean that he has the requisite scientific knowledge to reach general scientific opinions on highly individualized issues of addiction that the parties have engaged experts to explain<br><br>Proposing Party's Position:<br>Mr. Valani is a board member who votes on decision points related to the design of the product. He should be able to answer how many pods a nicotine user can consume with no risk of addiction and the fact that does not is relevant to motive, intent and knowledge. | |
| 13. | Page 00167:<br>07: THE WITNESS: Yeah, I don't<br>08: have a response for that. | Objecting Party's Position:<br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701. Same as above; the number of pods an individual can consume and an individual's risk of addiction is highly individualized and not something within the scope of Mr. Valani's personal knowledge.<br><br>Proposing Party's Position:<br>JUUL's lack of a dosage control or the number of pods a nicotine naive user can consume without risk of addiction is not "argumentative" and is directly relevant to the plaintiff's design defect claim. Mr. Valani has been on the Board of JLI since before its launch and has knowledge of its design features. The lack of | **Sustained**. Question calls for expert testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | foundation objection is meritless. When the witness asked for clarification, counsel provided him with a document (40077) which is an email from Alex Asseily to Mr. Valani discussing the lack of dosage control as a feature. The witness' recollection was refreshed (he states as much at 170:4-21)with the email that he received. There is no risk of juror confusion or undue prejudice | |
| 14. | Page 00167:<br>21: My question was, you were aware<br>22: when the product launched that it didn't have<br>23: dosage control, right?<br><br>Page 00168:<br>02: THE WITNESS: Can you explain<br>03: what that -- what you mean by that?<br>04: (Valani Exhibit 40077 marked<br>05: for identification.)<br>06: QUESTIONS BY MS. SHARP:<br>07: Q. Sure. Let's pull up a<br>08: document. Let's pull up Tab 22, please.<br><br>Page 00168:<br>19: This is a long e-mail from<br>20: someone named Alex Asseily. On the first | <u>Objecting Party's Position</u>:<br>Vague and ambiguous (form, "dosage control"); Assumed facts not in evidence (form, assumes that "dosage control" is even possible for a consumer product where use is dependent on the individual user); Lacks Foundation/FRE 602 (the witness is an investor in the company, he did not design the product. Further, this is an improper attempt to refresh the witness' recollection under FRE 612 using the words of another individual. Counsel has not established that the witness does not remember something -- the witness states he does not understand counsel's use of the term "dosage control" not that he has forgotten what that term means. Counsel also does not show that the witness previously remembered the meaning of "dosage control," nor does counsel establish that there is something that would help the witness remember the meaning of "dosage control." Finally, the witness never says his recollection was refreshed; the testimony at 171:19-21 is unclear and the witness appears to be agreeing | **Overruled.** The question is not vague and ambiguous. The Special Master finds that Defendants have not established that the question assumes facts not yet in evidence. This ruling does not prevent Defendants from re-raising at trial their objection that the question assumes facts not yet in evidence. Defendants have also not established that the witness lacks foundation. Defendants have also failed to articulate a basis for exclusion under FRE 401/402/403.<br><br>Moreover, it is clear from the witness' responses to the examiner's questions that the document shown refreshed his recollection on whether the product launched didn't have dosage control. While a |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 21: page you can see that the e-mail I'm looking<br>22: at is a couple down here. It begins, "Nick<br>23: and Riaz." Go about halfway down the page.<br>24: Perfect.<br>25: On May 17, 2015, Alexander<br><br>Page 00169:<br>01: Asseily wrote an e-mail to you and to Nick,<br>02: right?<br>03: A. Yes.<br>04: Q. All right. And "Nick" refers<br>05: to Nick Pritzker who also sat on the board?<br>06: A.   That's correct.<br><br>Page 00170:<br>04: Okay. So now let's go back to<br>05: the bottom of the e-mail chain on Bates 294.<br>06: And I'm focusing at the bottom where he<br>07: says -- where Mr. Asseily writes, "Some<br>08: product experience thoughts for JUUL."<br>09: You see that, right?<br>10: A. I do.<br>11: Q. And the very first bullet point | that the product does not have the features discussed in the document, but does not say that his recollection is now refreshed as to his own understanding of the term "dosage control." And in any event, refreshing the witness' recollection under FRE 612 does not entitle counsel to display or read into the record the contents of Exhibit 40077); FRE 401/402, FRE 403 (cumulative to testimony at 51:22-52:6)<br><br>Vague and ambiguous (form); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; FRE 401/402, FRE 403 (cumulative). Same as above.<br><br>Hearsay (Rule 802); Hearsay within hearsay. Alex Asseily was not a paid, formal member of the BOD as of May 2015. This email is not a business record because it was not sent or received in the course of a regularly conducted business activity nor was it made as a regular practice of that activity. Exhibit 40077 is not being offered to impeach because there is no prior inconsistent statement. Nor is Exhibit 40077 being used to refresh; if it were, this testimony is an improper attempt to refresh the witness' recollection under FRE 612 for the reasons stated above. It is also improper under FRE 803(5) because, again, counsel did not establish that the witness once remembered something that he no longer does now or that the statements in the email accurately | close call, the Special Master is not convinced that the testimony elicited about the document is improper.<br><br>Finally, to the extent the parties seek a ruling on the admissibility of the exhibit itself, the Special Master makes no ruling as that exceeds the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12: says, "Dosage control for tobacco. A single<br>13: hit from JUUL is like a lot of puffs from a<br>14: cigarette. How do people know?"<br>15: Right?<br>16: A. Uh-huh.<br>17: Q. And then the fifth bullet point<br>18: below says, "There is no end to JUUL use, the<br>19: way there is with a cigarette."<br>20: Right?<br>21: A. Yes.<br><br>Page 00170:<br>25: Q. He continues, "Important to<br><br>Page 00171:<br>01: ponder the ramifications. I get a headache<br>02: sometimes if I use it too much."<br>03: Do you see that?<br>04: A. Yes.<br>05: Q. Does this refresh your<br>06: recollection that the product did not have<br>07: any dosage control at the time it launched?<br><br>Page 00171: | reflect the witness' own knowledge or were recorded by the witness himself while fresh in his memory. To the contrary, the statements in Exhibit 40077 reflect Mr. Asseily's words and opinions, not Mr. Valani's. The exhibit is being offered for the truth of Mr. Asseily's statements (that, in his view, there is no dosage control, and that he personally gets a headache sometimes), and not for notice/knowledge/state of mind. Mr. Valani does not have the foundation to explain what Mr. Asseily meant simply because he is copied on the email.<br><br>Vague and ambiguous (form); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; FRE 401/402, FRE 403 (cumulative; in addition, testimony about whether a single individual user gets occasional headaches is irrelevant and prejudicial and suggests that all individuals who use the product get headaches). Same as above, "dosage control" is a vague and ambiguous term. The witness is an investor in the company, he did not design the product and has no foundation to testify to Mr. Asseily's statements about his headaches; reading into the record statements about Mr. Asseily's alleged headaches has nothing to do with any so-called attempt to refresh Mr. Valani's recollection re "dosage control." No foundation laid as to cause of headache or that it has to do with "dosage control." | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19:  THE WITNESS: Well, no, it does 20:  not have this type of dosage control, 21:so I'm agreeing with you. | Hearsay (Rule 802); Hearsay within hearsay.  Same as above.<br><br>Misstates prior testimony (form); Vague and ambiguous (form); Lacks foundation/FRE 602<br><br>Vague and ambiguous (form); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; FRE 401/402, FRE 403.  Same as above.<br><br>Hearsay (Rule 802); Hearsay within hearsay.  Same as above.<br><br>Misstates prior testimony (misleading); Designation incomplete (171:5-7)<br><br>Proposing Party's Position:<br>See response to 167:7-8.  The witness was also a user of the product, does has an adequate foundation to testify to the lack of a product feature -- a dosage control. No expert testimony is required.  The witness's request for an explanation and the subsequent refreshing were proper under Rule 612.  The witness responds at 171:19-21 after counsel refreshes his recollection with an Email that he received referring to a dosage control as follows "Well, no, it does not have this type of dosage control, so I am agreeing with you."   He could have, but did not, simply testified that he had no idea or still did not understand. He did not.  The witness's recollection was clearly refreshed with an email written to | |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | him that referenced "dosage control." The testimony is not unfairly prejudicial or cumulative and is clearly relevant to Plaintiff's design defect claim.<br><br>See response to 167:7-8.<br><br>As to hearsay, the email between two board members of JLI (at the time Mr. Asseily was a paid Board Observer who became a Board member)-- in the regular course of JLI's business, is not hearsay because first it is not being offered for the truth of the matter asserted and it is being offered to refresh and impeach. Further, it's a business record and Mr. Valani himself was receiving the communication from Mr. Asseily. See 802/803.  It is also relevant to notice and knowledge of the defect, and is relevant to state of mind.  Mr. Valaini himself is on the email so has firsthand knowledge of its content.  It is being offered to him to properly refresh his recollection of the meaning of  "dosage control"  (at his own request) and it in fact refresh his recollection. The witness responds at 171:19-21 after counsel refreshes his recollection with an Email that he received referring to a dosage control as follows "Well, no, it does not have this type of dosage control, so I am agreeing with you."   He could have, but did not, simply testified that he had no idea or still did not understand. He did not.  The witness's recollection was clearly refreshed with an email written to him that referenced "dosage control." |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | The testimony is not unfairly prejudicial or cumulative and is clearly relevant to Plaintiff's design defect claim.  It is not being offered for the truth of the matter but is offered to refresh and impeach.<br><br>See response to 167:7-8 and 168:2-8.  Further, there is nothing overly prejudicial about Mr. Asseily stating that that lack of dose control results in getting a headache.  It is further evidence of the defect and the early knowledge of the defect. | |
| 15. | Page 00171:<br>24:  Now, Mr. Asseily wasn't the<br>25:  only one who raised a red flag about the<br><br>Page 00172:<br>01:  large amounts of nicotine continuous JUUL use<br>02:  could provide, right? | Objecting Party's Position:<br>Argumentative (form, "wasn't the only one who raised a red flag"); Vague and ambiguous (form, "red flag" "large amounts of nicotine," "continuous JUUL use"); Assumed facts not in evidence (form, instead of showing the witness a document, this question is just counsel testifying and characterizing an email that she has not even shown the witness); Lacks Foundation/FRE 602; FRE 403. No foundation laid as to others whom mentioned issues with device; "red flag" vague and argumentative.<br><br>Proposing Party's Position:<br>See response to 170:25-171:7 | Sustained.  The question is argumentative and counsel is improperly testifying about a document. |
| 16. | Page 00172:<br>05:  THE WITNESS: Yeah, you want --<br>06:  do you have other documents you want<br>07:  to bring up?<br>08:  (Valani Exhibit 40078 marked<br>09 for identification.) | Objecting Party's Position:<br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802) Exhibit 40078 contains hearsay statements from a third party investor regarding the nicotine content and addictiveness of JUUL. The investor has no foundation or expertise to | Overruled.  The admissibility of exhibits will be addressed by Judge Orrick within the context of trial.<br><br>Subject to Judge Orrick's Ruling, as prefaced above, the objections to this |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: QUESTIONS BY MS. SHARP:<br>11: Q. I do.<br>12: Let's go to Tab 52A, please. | make these statements -- he did not design the product and he is not an expert in abuse liability or nicotine; it is not even clear that Mr. Jain is an investor in JUUL. It is incorrect to characterize these statements as being about a design defect or lack of dosage control -- Mr. Jain does not reference either in his statements. Instead, he offers his personal opinions on an issue that the parties have both engaged experts to opine on. It would be confusing, misleading and unfairly prejudicial to lead the jury to believe that the product does in fact have a "high" nicotine content based on the personal opinion of a lay person when research shows that JUUL products have a lower nicotine content and abuse liability than combustible cigarettes. These statements are being offered for the truth, not knowledge and notice. The question at 174:16-20 does not cure this deficiency; Plaintiff could have simply asked Mr. Valani whether the email caused him to reconsider without reading the hearsay contents of the email into the record. Plaintiff plainly seeks to introduce the statements in the email for their truth.<br><br>Proposing Party's Position:<br>Ex 40078 is an Email to Mr. Valani from another investor commenting on JUUL's high nicotine content, and the high addictive propensity because of the lack of a dose control "especially since you can vape all the time." Defendants' lack of foundation objection is meritless. Mr. | designation are overruled. The testimony is not hearsay as it is not offered to prove the facts asserted therein, but rather for the effect they had upon Valani. Defendants have not articulated any basis for exclusion under FRE 401/402, or 403. An adequate foundation has been laid for the statements because the testimony includes explanation of Mr. Amit Jain, his relationship to the witness, and his relevance to JUUL through the witness. The witness' testimony does not constitute improper lay witness testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Valani receives the email and even acknowledges remembering it.    Mr. Valani was asked whether this email caused JLI to reconsider adding a dosage control and his answer that it did not is relevant to Plaintiff's claims and Defendant's failure to add a safety feature that would have minimized nicotine uptake is relevant not unduly prejudicial or argumentative.<br><br>NOT HEARSAY: This email is not offered for the truth of the matter asserted but rather to prove knowledge and notice of the defect, and impact on the reader.  It is relevant to what Defendants knew or should have known and to motive, intent and design.   Note the question on 174:16-20 is whether the email caused the witness to reconsider whether the company should add some dosage control.  This shows that the email is not being used for the truth but rather for a non-hearsay purpose. | |
| 17. | Page 00172:<br>13:  All right.  Now, this is an<br>14: e-mail from a gentleman named Amit Jain.<br>15: Did I get that right?<br>16:  A.  Yes.<br>17: Q.  And who is Mr. Jain, please?<br>18:  A. He's a close friend of mine. | <u>Objecting Party's Position:</u><br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802).  Same as above.<br><br><u>Proposing Party's Position:</u><br>See response to 172:5-172:12 | **Overruled**.  The admissibility of exhibits will be addressed by Judge Orrick within the context of trial.<br><br>Subject to Judge Orrick's Ruling, as prefaced above, the objections to this designation are overruled. The testimony is not hearsay as it is not offered to prove the facts asserted therein, but rather for the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | | effect they had upon Valani. Defendants have not articulated any basis for exclusion under FRE 401/402, or 403. An adequate foundation has been laid for the statements because the testimony includes explanation of Mr. Amit Jain, his relationship to the witness, and his relevance to JUUL through the witness. The witness' testimony does not constitute improper lay witness testimony. |
| 18. | Page 00172: 24: Q. Now, he wrote to you on 25: September 7th of 2015, an e-mail, right? Page 00173: 01: Do you see that? 02: A. Yes. 03: Q. And September 7, 2015, is about 04: three months after JUUL initially launched, 05: right? 06: A. Yes. 07: Q. And what he writes to you is, 08: "Only downside I see with this PAX/JUUL 09: device is that the nicotine content is so | Objecting Party's Position: Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802). Same as above. Proposing Party's Position: See response to 172:5-172:12 | **Overruled.** The admissibility of exhibits will be addressed by Judge Orrick within the context of trial. Subject to Judge Orrick's Ruling, as prefaced above, the objections to this designation are overruled. The testimony is not hearsay as it is not offered to prove the facts asserted therein, but rather for the effect they had upon Valani. Defendants have not articulated any basis for exclusion under FRE 401/402, or 403. An adequate foundation has been laid for the statements because the testimony includes explanation of Mr. Amit |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: high that you can probably end up even more<br>11: addicted to nicotine, especially since you<br>12: can vape all the time."<br>13: Right?<br>14:A. Yes. | | Jain, his relationship to the witness, and his relevance to JUUL through the witness. The witness' testimony does not constitute improper lay witness testimony. |
| 19. | Page 00173:<br>17: THE WITNESS: I see -- I see<br>18: the text.<br>19: QUESTIONS BY MS. SHARP:<br>20: Q. Do you remember receiving it?<br>21: A. Now that I see it here, yes, I<br>22: do remember it. | <u>Objecting Party's Position:</u><br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802). Same as above.<br><br><u>Proposing Party's Position:</u><br>See response to 172:5-172:12 | **Overruled**. The admissibility of exhibits will be addressed by Judge Orrick within the context of trial.<br><br>Subject to Judge Orrick's Ruling, as prefaced above, the objections to this designation are overruled. The testimony is not hearsay as it is not offered to prove the facts asserted therein, but rather for the effect they had upon Valani. Defendants have not articulated any basis for exclusion under FRE 401/402, or 403. An adequate foundation has been laid for the statements because the testimony includes explanation of Mr. Amit Jain, his relationship to the witness, and his relevance to JUUL through the witness. The witness' testimony does not constitute improper lay witness testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | |
| 20. | Page 00174:<br>16: Q. My question, though, is, did<br>17: this e-mail cause you to reconsider whether<br>18: the company should add some dosage control to<br>19: the JUUL product at that time, in September<br>20: of 2015 when you received the e-mail. | Objecting Party's Position:<br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802). Same as above.<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form); Assumes facts not in evidence (form); Testimony misleadingly presupposes that "dosage control" is a feature that can be "added" to a product where use is dependent on the individual user.<br><br>Proposing Party's Position:<br>See response to 172:5-172:12 | **Overruled.** The admissibility of exhibits will be addressed by Judge Orrick within the context of trial.<br><br>Subject to Judge Orrick's Ruling, as prefaced above, the objections to this designation are overruled. The testimony is not hearsay as it is not offered to prove the facts asserted therein, but rather for the effect they had upon Valani. Defendants have not articulated any basis for exclusion under FRE 401/402, or 403. An adequate foundation has been laid for the statements because the testimony includes explanation of Mr. Amit Jain, his relationship to the witness, and his relevance to JUUL through the witness. The witness' testimony does not constitute improper lay witness testimony. |
| 21. | Page 00179:<br>14: QUESTIONS BY MS. SHARP:<br>15: Q.   Now, Mr. Jain calls up this<br>16: thread again in 2018 and he says, "I called<br>17: it three years ago." | Objecting Party's Position:<br>Lacks Foundation/FRE 602; Improper Opinion/FRE 701; FRE 401/402; FRE 403; Hearsay (Rule 802). Same as above; there is no discussion of a "yough vaping crisis caused by JUUL" in this email. No objections have been waived; both parties reserved the right to assert "all | **Sustained.** The examiner elicit testimony about the truth of the matter asserted in Mr. Amit Jain's statement to Mr. Valani. The testimony is therefore inadmissible hearsay. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  Didn't he?<br>19:  A. He did.<br>20:Q.  Did you respond to that e-mail?<br>21: A. I did not. | objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br>Proposing Party's Position:<br>Form objections were not made/preserved, and are therefore waived.<br><br>In the same email, the same investor to Mr. Valani a few years later referred to the youth vaping crisis caused by JUUL and stated "I called it 3 years ago."<br><br>See response to 172:5-172:12 | |
| 22. | Page 00204:<br>02: Q. Mr. Valani, you were concerned<br>03: about product safety by at least the middle<br>04: of 2014, fair?<br>05: A. I think I was always concerned<br>06: about product safety. | Objecting Party's Position:<br>FRE 401/402: testimony about generic product safety has no probative value to B.B.'s claims.  No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br>Proposing Party's Position:<br>Form objections were not made/preserved, and are therefore waived.<br>This entire case is about the safety of JUUL.  Defendants 401/402 objection is meritless.  Valani a Board member is asked whether he had concerns about JUUL's safety before launch.   He admits he always was concerned. | **Overruled**.  Defendants have not articulated any basis for exclusion under FRE 401/402 |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 23. | Page 00210:<br>23: Q. And at that time in 2014, you<br>24: wanted the company, which was then Ploom, to<br>25: be perceived as a responsible vapor company,<br><br>Page 00211:<br>01: didn't you?<br>02: A. Always.<br>03: Q. You wanted to be perceived as a<br>04: standard setter on quality?<br>05: A. Always.<br>06: Q. A standard setter on safety?<br>07: A.Always.<br>08: (Valani Exhibit 40081 marked<br>09: for identification.)<br>10: QUESTIONS BY MS. SHARP:<br>11: Q. Let's pull up Tab 8, please. | Objecting Party's Position:<br>Hearsay (Rule 802). As to portions of Exhibit 40081 which contain statements made by Nathan Wolfe, a scientist at Stanford -- these statements are inadmissible hearsay, they are being offered for their truth, they are not being offered to impeach (there is no prior inconsistent statement by Mr. Valani or other basis for impeachment), and they are not being offered for Mr. Valani's knowledge/notice/state of mind.<br><br>Proposing Party's Position:<br>NOT HEARSAY: 40081 - Is an Email from a scientist, Nathan Wolf to Valani and others at JLI raising safety concerns about JUUL. It is relevant to knowledge, notice and intent and is therefore not hearsay. It contains statements from Valani himself. It is not being offered for the truth of the matter asserted but rather for notice and knowledge, impeachment and state of mind. | The admissibility of exhibits will be addressed by Judge Orrick within the context of trial. |
| 24. | Page 00211:<br>12: All right. Tab 8, which is<br>13: exhibit number?<br>14: DAN LAWLOR: 40081.<br>15: MS. SHARP: Thank you, Dan. | Objecting Party's Position:<br>Hearsay (Rule 802). Same as above.<br><br>Proposing Party's Position:<br>See preceding response. As 211:12-15 is not a discussion with Counsel and her associate but with Counsel and the tech and is left in because the tech calls out the Exhibit number which is appropriate for tracking purposes and is a meritless objection. | The admissibility of exhibits will be addressed by Judge Orrick within the context of trial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
| 25. | Page 00211:<br>20: It's November 30, 2014, is the<br>21: top e-mail in the chain. And the folks on<br>22: the e-mail, let's just talk about who they<br>23: are for a moment.<br>24: There's yourself; there's Zach<br>25: Frankel; Nick Pritzker, who we've talked<br><br>Page 00212:<br>01: about, was another member of the board;<br>02: Mr. Monsees and Mr. Bowen, the founders of<br>03: the company; Hank Handelsman. We haven't<br>04: talked about him yet, but he was another<br>05: board member eventually, correct?<br>06: A. Yes.<br>07: Q. And the e-mail is from a<br>08: gentleman named Nathan Wolfe.<br>09: Do you know who Nathan Wolfe<br>10: is?<br>11: A. Yes.<br>12: Q. Who is he?<br>13: A. He's a leading virologist, | Objecting Party's Position:<br>FRE 401/402 as to 212:15-16 & 212:20-21 -- whether the witness is friends with Nathan Wolfe or whether the witness thinks Dr. Wolfe is a "smart guy" is irrelevant. In any event, any statements by Dr. Wolfe should be excluded as hearsay.<br><br>Proposing Party's Position:<br>See response to 204:2-6 and 210:23-211:11. The fact that the witness is friends with Dr. Wolfe and he thinks him a smart guy is relevant to the credence the witness gives Dr. Wolf and that in turn is directly relevant to notice and non-hearsay impact on the listener (Mr. Valani) | **Overruled**. Defendants have not articulated any basis for exclusion under FRE 401/402. The admissibility of exhibits will be addressed by Judge Orrick within the context of trial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: epidemiologist. He's a friend of mine. 15: Q. Friend of yours, you said? 16: A. Yes. 17: Q. He was educated at Stanford and 18: Harvard, right? 19: A. Sounds right. 20: Q. Smart guy? 21: A. I think so. | | |
| 26. | Page 00218: 19: And the next sentence you write 20: is, "It would be great if we managed to 21: sidestep any of this backlash and instead be 22: perceived as the responsible vapor company." 23: Right? 24: A. Yes. | <u>Objecting Party's Position</u>: FRE 403. Testimony re what a "responsible vapor company" should do is likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users. <br><br> <u>Proposing Party's Position</u>: This testimony is quoting Mr. Valani's own statement in an Email stating "It would be great if we managed to sidestep any of this backlash and instead be perceived as the responsible company." First, there is no "legal standard" that could possibly come from this statement for the jury to be confused about. Merely because the word "responsible" is not tantamount to a legal standard. That notion is wholly meritless. Second, it is important for the jury to know that the concern is more about sidestepping any backlash. To the extent there is any unfair prejudice (which Plaintiff contends there is not) it is wholly mitigated in favor of Defendant with Valani's statement about being | **Overruled.** The testimony is not likely to confuse the jury on the appropriate legal standard. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | perceived as a responsible vapor company).  Defendants' Rule 403 objection is meritless. | |
| 27. | Page 00219: 23: Q. And you're aware that the 24: company paid $51,000 this past summer to buy 25: an edition of a medical journal that then<br><br>Page 00220: 01: published JUUL-funded studies, correct? | <u>Objecting Party's Position:</u><br>Argumentative (form, "buy an edition," "JUUL-funded studies"); Misleading Vague and ambiguous (form, "a medical journal," "JUUL-funded studies"); Assumes facts not in evidence (form).  Question is vague and does not specify which journal or what studies are being discussed.  It also argumentatively frames paying standard journal fees as "buy[ing] an edition" of a journal, and assumes without establishing that each study was "JUUL-funded."<br><br>Lacks Foundation/FRE 602.  The witness is an investor and board member; he is not knowledgeable about each and every detailed decision made by management or whether each of the referenced studies were "JUUL-funded"; his answers cleary indicate that any knowledge is based on hearsay (e.g. at 222:13-14, the witness says "I had heard somethign like that had happened.")<br><br>FRE 401/402; FRE 403.  This testimony is not relevant to B.B.'s claims and is misleading, confusing, and unfairly prejudicial.  Plaintiffs do not discuss the actual substance of any switching studies with Mr. Valani, they instead vaguely reference "JUUL-funded studies" and mischaracterize their publication as "buying a journal."  If plaintiff | **Sustained**.  Even considering the context of the remaining testimony, the examiner does not lay adequate foundation as to what medical journal or edition thereof is being discussed.  Without this necessary context, the questions also appear to be vague and ambiguous. In addition, the testimony is not relevant to Plaintiff's claims. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | disagrees with the studies, she should address those studies directly; this testimony only misleads the jury about the actual facts of what occurred and creates a sideshow that JLI will be forced to waste time responding to<br><br>Proposing Party's Position: Defendants and their experts rely on the articles in question in this testimony. The witness testifies about the fact that JLI purchased a whole edition of a journal to publish studies that Defendants rely on to demonstrate that JUUL is successful in switching adults. That is definitely prejudicial to Defendants but it is not is overly prejudicial nor does the prejudice substantially outweigh the probative value. There is nothing argumentative, nor is there any mischaracterized testimony about asking the witness if he was aware that JLI paid $51,000 for a full edition of a scientific journal to publish JUUL-sponsored scientific studies and whether he was aware that editors resigned (which he admitted he had heard). Additionally, Valani sits on the JLI Board ... the studies at issue were JLI studies. Defendants' lack of foundation objection is meritless in light of Valani's answers that he knew about the Journal and the editors resigning. There is no risk of juror confusion or undue prejudice.<br><br>Relevant includes punitive damages claim and |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 28. | Page 00220:<br>04: THE WITNESS: Publishing<br>05: studies that adhere to the highest<br>06: standards for how studies get<br>07: published, I don't think that that<br>08: infringes on the validity of the<br>09: studies.<br>10: QUESTIONS BY MS. SHARP:<br>11: Q. And you believe that buying a<br>12: journal and publishing company-funded studies<br>13: in that journal exclusively is conduct<br>14: befitting of the most responsible vapor<br>15: company out there? | <u>Objecting Party's Position</u>:<br>Argumentative (form, "buying a journal," "company-funded studies," "is conduct befitting of the most responsible vapor company out there"); Misleading-Compound; Vague and ambiguous (form, "a journal," "company-funded studies"); Assumes facts not in evidence (form). Same as above, and assumes that the studies were published "exclusively" in that journal.<br><br>Lacks Foundation/FRE 602. Same as above with respect to "company-funded studies" and whether the publication was "exclusive"<br><br>FRE 401/402; FRE 403. Same as above. In addition, testimony about what a "responsible vapor company" should do is argumentative and likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for being transparent with the public and publishing scientific research.<br><br><u>Proposing Party's Position</u>:<br>See response to 218:19-218:24 above There was no testimony mischaracterized as evidenced by the witnesses own answers. | <strong>Sustained</strong>. Even considering the context of the remaining testimony, the examiner does not lay adequate foundation as to what medical journal or edition thereof is being discussed. Without this necessary context, the questions also appear to be vague and ambiguous. In addition, the testimony is not relevant to Plaintiff's claims. |
| 29. | Page 00220:<br>17: THE WITNESS: Yeah. My<br>18: understanding is that it's standard<br>19: practice for everyone in the pharma | <u>Objecting Party's Position</u>:<br>Argumentative (form); Misleading Compound; Vague and ambiguous (form); Assumes facts not in evidence (form). Same as above.<br><br>Lacks Foundation/FRE 602. Same as above. | <strong>Sustained</strong>. Even considering the context of the remaining testimony, the examiner does not lay adequate foundation as to what medical journal or edition thereof is being discussed. Without this |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 20:  and health-related industry, and so I 21: think it's high integrity. | FRE 401/402; FRE 403.  Same as above.  In addition, testimony about what a "responsible vapor company" should do is argumentative and likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for being transparent with the public and publishing scientific research.<br><br>Designation Incomplete to the extent Plaintiff insists on cutting off the witness' answer at "Yeah" on 220:17. The witness must be allowed to provide his full response, and he is explaining why he believes JLI conduct is responsible (i.e. because this is standard practice).  Plaintiff's answer is not speculation, he answers in terms of his own knowledge and says "my understanding is..."<br><br>Proposing Party's Position:<br>Plaintiff wants to remove from her designations everything after "Yea" on 220:17 because the rest is non-responsive and irrelevant (pharma and health-related industry practices for journal publications).  JLI is not a pharma or health-related company.  (611/401/402 and 403).  Further this witness has no background in Pharma or Health related companies so has no foundation and rank speculation. This should also take care of the Defendants' AF objection. | necessary context, the questions also appear to be vague and ambiguous. In addition, the testimony is not relevant to Plaintiff's claims. |
| 30. | Page 00222 09: Q. Are you aware that editors | Objecting Party's Position:<br>Argumentative (form, "editors resigned in the wake of the publication"); Misleading; Vague and | **Sustained**.  Even considering the context of the remaining testimony, the examiner does not lay |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: resigned in the wake of the publication of 11: the JUUL-funded studies in that journal? | ambiguous (form, "JUUL-funded studies" "in that journal"); Assumes facts not in evidence (form).  Same as above.  This testimony also misleadingly implies that editors resigned "in the wake of the publication" when in fact those editors had already been scheduled to retire and their departures had nothing to do with the publication of the studies.<br><br>Lacks Foundation/FRE 602: no foundation for why editors resigned; witness says "I had heard that" which confirms no personal knowledge and instead implies that his understanding is based on hearsay<br><br>FRE 401/402; FRE 403.  Same as above, testimony is not relevant to B.B.'s claims and is misleading, confusing, and unfairly prejudicial. It is also misleading and factually inaccurate to suggest that editors "resigned in the wake of the publication"<br><br>Proposing Party's Position: See response to 219:23-220:1 | adequate foundation as to what medical journal or edition thereof is being discussed.  Without this necessary context, the questions also appear to be vague and ambiguous. In addition, the testimony is not relevant to Plaintiff's claims. |
| 31. | Page 00222: 13:  THE WITNESS: I had heard 14: something like that had happened. 15: QUESTIONS BY MS. SHARP: 16:  Q.  Did that cause you any concern? 17:  A. It did at the time, and then I | Objecting Party's Position: Argumentative (form); Misleading; Vague and ambiguous (form); Assumed facts not in evidence (form).  Same as above.<br><br>Lacks Foundation/FRE 602. Same as above. His answers cleary indicate that any knowledge is based on hearsay (e.g. at 222:13-14, the | **Sustained**.  Even considering the context of the remaining testimony, the examiner does not lay adequate foundation as to what medical journal or edition thereof is being discussed.  Without this necessary context, the questions also appear to be vague and ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  was -- yeah, I actually don't remember the<br>19: specifics of what happened with that, but I<br>20:  did ask about it and -- and -- and I was<br>21:  assured that the actual publication of our<br>22:  studies, you know, was unimpeachable. | witness says "I had heard something like that had happened.")<br><br>FRE 401/402; FRE 403. Same as above.<br><br><u>Proposing Party's Position:</u><br>NOT HEARSAY: 22:13-14 is not Hearsay because it's not being offered for the truth of the matter asserted but for impeachment and knowledge, intent and state of mind (that Valani was aware that the editors resigned learned by hearing "something like that happened).<br><br>222:13-22 - There is nothing unduly prejudicial (403) about the fact that Valani was concerned .. in fact quite the opposite .. he answered that "I was assured that the actual publication of our studies .. was unimpeachable".  There is no risk of juror confusion or undue prejudice. | In addition, the testimony is not relevant to Plaintiff's claims. |
| 32. | Page 00225:<br>01: Okay.  Let's come back to the<br>02: document we -- that got us talking about<br>03:  this, which was Exhibit 40081.<br>04:  And moving up the chain,<br>05:  Mr. Pritzker responds to you in response to<br>06:  your statement that you want to be perceived | <u>Objecting Party's Position:</u><br>Misstates prior testimony (misleading); Attorney commentary/exchange (not testimony). Testimony at 225:4-8 is attorney commentary and characterization of Mr. Valani's prior testimony which is improper.  No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br><u>Proposing Party's Position:</u> | **Sustained** (225:4-8).  The examiner makes improper commentary on the prior testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07: as the responsible vapor company, which you<br>08: believe JUUL has been successful in doing.<br>09: Mr. Pritzker responds to you on<br>10: November 28, 2014, and he writes, "I could<br>11: not agree more. We would welcome solid,<br>12: objective clinical trials.  I'd say we should<br>13: help fund them, except that might cast doubt<br>14: on the validity of the findings."<br>15: Right?<br>16: A.    I'm looking at the -- yes, I | 225:1-17 (Form objections were not made/preserved, and are therefore waived. Form objections were not made/preserved, and are therefore waived)<br><br>The attorney's comment at 225:4-8 is proper because it merely provides the witness with the context and direction for where she is going next with the document and does not mischaracterize prior testimony.  In fact the witness answers .. "I 'm looking at the ... yes I see that." Nothing is mistated and it is not cumulative for the same reasons above.. it is merely a transition. | |
| 33. | Page 00225:<br>17: see that.<br>18: Q. So Mr. Pritzker is<br>19:  acknowledging that when a study is<br>20:  company-funded, it at least might cast doubt<br>21:  on the validity of the findings, right? | <u>Objecting Party's Position:</u><br>Misstates the document (misleading); Vague and ambiguous (form, "when a study is company-funded"); Lacks Foundation/FRE 602 (witness has no foundation to say what Mr. Pritzker is "acknowledging"); Cumulative (counsel has already read Mr. Pritzker's words into the record)<br><br><u>Proposing Party's Position:</u><br>Whether JLI conducted clinical trials in 2014 is clearly relevant to the Plaintiffs claims. Mr. Valani was a Board member in 2014 and had first-hand knowledge. There is no | **Overruled**.  The form of the question is not misleading.  An adequate foundation has been laid for the witness' testimony. The witness' testimony is rationally based on the experience and perception of Altria and herself. The testimony is not cumulative as the form of the question calls for the witness' understanding of Pritzker's words. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | mischaracterized testimony in the question, nor is it vague and the witness answers in the affirmative without reservation. Counsel was summarizing/paraphrasing/shortening accurately for her question. The witness was on the email in question is providing his understanding so he has an adequate foundation and the Defendants' objection is meritless. | |
| 34. | Page 00225: 24: THE WITNESS: They come with 25: criticism, yes.<br><br>Page 00226: 01: QUESTIONS BY MS. SHARP: 02: Q. In 2014, to your knowledge, did 03: JUUL conduct any solid, objective clinical 04: trials with regard to the safety of JUUL 05: products? | Objecting Party's Position: With respect to 225:24-25, same as above.<br><br>WIth respect to 226:2-5: Argumentative (form, implies that JLI has not conducted "objective" clinical trials);Vague and ambiguous (form, "solid, objective clinical trials"); Lacks Foundation/FRE 602 (the witness is an investor and board member, he does not know every single clinical trial that JLI scientists and/or other research organizations have conducted, nor does he have the expertise to make assessments as to how "solid" they are)<br><br>Proposing Party's Position: There is nothing argumentative about asking the witness if JLI conducted solid clinical trials in 2014. Mr. Valani is a board member and was at the relevant time - he would have first-hand knowledge of the trials that were run so there is an adequate foundation. No testimony was mischaracterized nor was any question vague as evidenced by the witnesses' answers. | **Overruled** (225:24-225:25). The form of the question is not misleading. An adequate foundation has been laid for the witness' testimony. The witness' testimony is rationally based on the experience and perception of Altria and herself. The testimony is not cumulative as the form of the question calls for the witness' understanding of Pritzker's words.<br><br>**Overruled** (226:01-226:05). Mr. Valani was a board member at the relevant time and would have foundation to testify to whether he was aware of any clinical trials done on the safety of JUUL products. The question is not argumentative or vague. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 35. | Page 00226:<br>08: THE WITNESS: I don't recall.<br>09: I mean, it might have been hard<br>10: in 2014. The product was still being<br>11: made, I think, so… | Objecting Party's Position:<br>Argumentative (form); Vague and ambiguous (form); Lacks Foundation/FRE 602. Same as above.<br><br>Proposing Party's Position:<br>See preceding response | **Overruled.** Mr. Valani was a board member at the relevant time and would have foundation to testify to whether he was aware of any clinical trials done on the safety of JUUL products. The question is not argumentative or vague. |
| 36. | Page 00229:<br>04: Q. Now, the question I was asking<br>05: about clinical trials just now, I framed it<br>06: with regard to the year 2014.<br>07: Same question as to 2015. Are<br>08: you aware of any solid, objective clinical<br>09: trials with regard to the safety of JUUL<br>10: products that JUUL conducted in 2015? | Objecting Party's Position:<br>Argumentative (form); Vague and ambiguous (form); Lacks Foundation/FRE 602. Same as above.<br><br>Proposing Party's Position:<br>See response to 225:24-226:5 - relates Valani's knowledge of clinical trials in 2015 | **Overruled.** Mr. Valani was a board member at the relevant time and would have foundation to testify to whether he was aware of any clinical trials done on the safety of JUUL products. The question is not argumentative or vague. |
| 37. | Page 00229:<br>14: Q. I'm sorry, Mr. Valani, same<br>15: answer?<br>16: A. That's correct.<br>17: Q. Same answer for 2016?<br>18: A.    Yeah, I don't know when the<br>19: external clinical work started, so I don't<br>20: know the details on that. | Objecting Party's Position:<br>Argumentative (form); Vague and ambiguous (form); Lacks Foundation/FRE 602. Same as above.<br><br>Proposing Party's Position:<br>See response to 225:24-226:5 - relates Valani's knowledge of clinical trials in 2016 | **Overruled.** Mr. Valani was a board member at the relevant time and would have foundation to testify to whether he was aware of any clinical trials done on the safety of JUUL products. The question is not argumentative or vague. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|-------------------|--------|
| 38. | Page 00240:<br>13: Q.    Let's turn to page 1 of the<br>14: e-mail that you have in front of you, please,<br>15: and this is the last-in-time e-mail. This<br>16: one is from Nathan Wolfe, who you testified<br>17: earlier is a Harvard and Stanford-educated<br>18: virologist, right?<br>19: A.    Yes. | Objecting Party's Position:<br>Hearsay (Rule 802). This portion of Exhibit 40081 contains statements made by Nathan Wolfe, a scientist at Stanford -- these statements are inadmissible hearsay, they are being offered for their truth, they are not being offered to impeach (there is no prior inconsistent statement by Mr. Valani or other basis for impeachment), and they are not being offered for Mr. Valani's knowledge/notice/state of mind.  The Q&A at 242:10-25 misleadingly asks Mr. Valani about statements made by Mr. Wolfe, which Mr. Valani lacks foundation to testify to<br><br>Proposing Party's Position:<br>See responses to 211:23; 211:2 and 211:20 above.<br><br>NOT HEARSAY: 40081  - Is an Email from a scientist, Nathan Wolf to Valani and others at JLI raising safety concerns about JUUL.  It is relevant to knowledge, notice and intent and is therefore not hearsay. It contains statements from Valani himself.   It is not being offered for the truth of the matter asserted but rather for notice and knowledge, impeachment and state of mind. See QA at 242:10-25 "So at least by this point in November 2014, you understood..." which demonstrates the non-hearsay use of the document (used not for the truth but to show the impact on the reader)  It is relevant to what Defendants knew or should | **Sustained**.  The examiner is asking the witness to verify out-of-court statements made by a third-party witness and are inadmissible hearsay for which no exception applies.  Plaintiff has not explained why the questions seek to elicit testimony for a non-hearsay purpose, other than to summarily say that such testimony is offered to show motive, intent, and design. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | have known and to motive, intent and design. | |
| 39. | Page 00241:<br>10: Q.  All right.  So Dr. Wolfe, I<br>11: guess, writes under General Thoughts, "I<br>12:  think it is useful to distinguish between<br>13: different kinds of concerns.  In my mind, the<br>14: two main concerns are the relative harm<br>15:  concern in relationship to chronic diseases,<br>16:  particularly cancer, i.e., e-cigs versus<br>17: cigs, and the second is the addiction<br>18:  concern, particularly in relationship to<br>19: kids."<br>20:  Do you see that?<br>21:  A.    I do.<br>22:  Q.    And if you skip down to the<br>23:  third paragraph under that, you'll see he<br>24:  writes, "The addiction issue is I believe the<br>25:  more difficult one."<br><br>Page 00242:<br>01:  Do you see that? | Objecting Party's Position:<br>Hearsay (Rule 802). Same as above with respect to statements made by Dr. Wolfe.<br><br>Improper Opinion/FRE 701; FRE 401/402; FRE 403.  Personal opinions of Dr. Wolfe are not relevant and are misleading, confusion, and unfairly prejudicial.<br><br>Proposing Party's Position:<br>See response to 240:13-19; 211:23; 211:2 and 211:20; 204:2-6 and 210:23-211:11.  In the prelaunch email Valani is told (and is discussing) the addiction issue and that it would be unethical to target kids with flavors.  Again, this is not hearsay.. it is relevant to knowledge, notice and intent and is therefore not hearsay.   It contains statements from Valani himself.   It is not being offered for the truth of the matter asserted but rather for notice and knowledge, impeachment and state of mind.  There is no risk of juror confusion or undue prejudice. | **Sustained**.  The examiner is asking the witness to verify out-of-court statements made by a third-party witness and are inadmissible hearsay for which no exception applies.  Plaintiff has not explained why the questions seek to elicit testimony for a non-hearsay purpose, other than to summarily say that such testimony is offered to show motive, intent, and design. |

LARSON<br>LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02:  A.  I do. | | |
| 40. | Page 00242:<br>10: Q. So at least by this point in<br>11: November of 2014, you understood that there<br>12: was an addiction issue, as he writes,<br>13: particularly in relationship to kids, right? | Objecting Party's Position:<br>Misstates prior testimony (misleading): witness did not testify that he "understood that there was an addiction issue," those are hearsay statements from Dr. Wolfe<br><br>Vague and ambiguous (form); Assumed facts not in evidence (form): vague as to what the "addiction issue" is and no foundation laid for existence of one.<br><br>Lacks Foundation/FRE 602; FRE 403: no foundation laid for witness to speak to existence of "addiction issue" or for witness to know what Dr. Wolfe meant by that term; testimony is unfairly prejudicial and confusing because it implies there was in fact an "addiction issue" in 201<br><br>Proposing Party's Position:<br>See response to 240:13-19;  211:23; 211:2 and 211:20; 241:10-242:2. The question summarizes the content accurately. There is no testimony that was mischaracterized and there is nothing vague as evidenced by Valani's answers.  There is no risk of juror confusion or undue prejudice. | **Sustained**.  The examiner misstates the witness' prior testimony and is misleading.  Moreover the witness does not have sufficient foundation to testify to the existence of "addiction issue" as the term is used by Dr. Wolfe. |
| 41. | Page 00242:<br>16:  THE WITNESS: Yeah, I mean, I<br>17:  think that this was, you know, kind of | Objecting Party's Position:<br>With respect to 242:16-24, same as above.<br><br>With respect to 243:2-10: Hearsay (Rule 802). Statements by Nathan Wolfe,  are inadmissible hearsay | **Sustained** (242:16-24). The examiner misstates the witness' prior testimony and is misleading.  Moreover the witness does not have sufficient foundation to |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  the red on, you know, a lot of the<br>19: topics, you know, related to the<br>20:  company.  I think he's trying to frame<br>21:  some of the issues, you know.  He's<br>22: talking about societal additives.  I<br>23:  don't think he's talking about<br>24:  physiology.<br>25:<br><br>Page 00243:<br>01: QUESTIONS BY MS. SHARP:<br>02: Q.    On the top of the next page, he<br>03: writes, "In this context, the use by<br>04: unethical companies of bubble gum-flavored<br>05: e-cigs and the lack of clarity on regulation<br>06: provides a more legitimate concern and one<br>07: that requires a more sophisticated response<br>08:  by the industry."<br>09:  Do you see that?<br>10: A. I do.<br>11: Q. So you knew at least by<br>12: November of 2014 that it would be unethical | being offered for their truth, they are not being offered to impeach, and they are not being offered for Mr. Valani's knowledge/notice/state of mind.<br><br>With respect to 243:11-14: Argumentative (form); Misstates the document (misleading, document is about bubble-gum flavored products, not "flavors that had youth appeal"; JLI has never made a bubble-gum flavored product); Vague and ambiguous (form, "flavors that had youth appeal," and "unethical and irresponsible"); Assumed facts not in evidence (form, implies that JLI made "flavors that had youth appeal"); Lacks Foundation/FRE 602 (witness is not an expert on corporate ethics and responsibility); FRE 401/402; FRE 403.  Testimony about ethics and responsibility is vague and likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users<br><br><u>Proposing Party's Position</u>:<br>See response to 240:13-19;  211:23; 211:2 and 211:20; 241:10-242:2 and preceding response. | testify to the existence of "addiction issue" as the term is used by Dr. Wolfe.<br><br>**Sustained** (243:2-10): The examiner is asking the witness to verify out-of-court statements made by a third-party witness and are inadmissible hearsay for which no exception applies. Plaintiff has not explained why the questions seek to elicit testimony for a non-hearsay purpose, other than to summarily say that such testimony is offered to show motive, intent, and design.<br><br>**Sustained** (243:11-243:14).  The form of the question appears to include the examiner's interpretation of the evidence (through the use of "unethical and irresponsible") instead of eliciting testimony and is argumentative. Additionally, the form of the question assumes facts not in evidence by implying that JUUL made "flavors with youth appeal." |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: and irresponsible to target kids with flavors<br>14: that had youth appeal, right? | | |
| 42. | Page 00243:<br>16: THE WITNESS: Well, you know, I<br>17: don't -- I mean, you read this e-mail.<br>18: I mean, there was a lot of, you know,<br>19: kind of hard kid-targeted product on<br>20: the market at the time, so I'm not<br>21: sure this e-mail is some sort of<br>22: revelation. | Objecting Party's Position:<br>Argumentative (form); Misstates the document (misleading); Vague and ambiguous (form); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; FRE 401/402; FRE 403. Same as above.<br><br>Proposing Party's Position:<br>See response to 240:13-19; 211:23; 211:2 and 211:20; 241:10-242:2 and preceding response. | **Sustained** for the same reasons the testimony at 242:16-243:14 is excluded. |
| 43. | Page 00244:<br>16: Q. And you knew that creating new<br>17: nicotine addicts, and particularly new<br>18: underage nicotine addicts, was something the<br>19: company should not do if it wanted to be<br>20: responsible vapor company, right?<br>21: A. Absolutely.<br>22: Q. And again, you and Mr. Bowen<br>23: and Mr. Monsees and Mr. Pritzker, all of whom<br>24: were on the board, were all on this e-mail | Objecting Party's Position:<br>With respect to 244:16-21: Compound (form); Argumentative (form, "creating new nicotine addicts" "new underage nicotine addicts"); Misstates the document (misleading, the document does not reference "nicotine addicts"); Assumed facts not in evidence (form, assumes that vapor companies "create...nicotine addicts"); Vague and ambiguous (form, "creating new nicotine addicts," "new underage nicotine addicts"); FRE 401/402; FRE 403. Testimony about what a "responsible vapor company" would do is likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by youth or non-nicotine users. No objections have been waived; | **Sustained** (244:16-244:21). The form of the question is argumentative, and vague and ambiguous.<br><br>**Sustained** (244:22-245:1). The designation is cumulative. Testimony regarding the recipients of the email has already been discussed at 211:20-212:11.<br><br>**Sustained** (245:02-245:04). The form of the question is not argumentative and vague and ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25: from Dr. Wolfe, right?<br><br>Page 00245:<br>01: A. Yes.<br>02: Q. So the addiction issue was<br>03: actively being discussed by the board in<br>04: November of 2014, wasn't it? | both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br>With respect to 244:22-245:1: Cumulative, the email recipients are already discussed at 211:20-212:11<br><br>With respect to 245:2-4: Argumentative (form); Vague and ambiguous (form, "the addiction issue," "actively"); Misstates the document (misleading) FRE 401/402; FRE 403.  This discussion has nothing to do with "JUUL's addictive nature" -- JUUL was not even on the market at this time and B.B. did not start using JUUL until three years later in 2017.  The discussion is about Ploom products and harm reduction generally, which has an attenuated relationship to B.B.'s claims and is confusing to the jury insofar as they are being asked to evaluate the cause of B.B.'s alleged addiction/injuries<br><br><u>Proposing Party's Position</u>:<br>244:16-21: The question was not compound and the witness answered it "Absolutely."  Form objections were not made/preserved, and are therefore waived. Form objections were not made/preserved, and are therefore waived)<br><br>245:2-4: It is clearly relevant to BB's addiction claim that Valani and the Board were discussing JUUL's addictive nature before the product was even launched. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | 244:16-21 and 245:2-4: It is not argumentative or unduly prejudicial, vague, or misstating testimony -- to ask a member of JLI's board if he was aware that creating new nicotine addicts .. particularly ones that were underage .. was not what a responsible vaping company should do.  It is relevant to duty, breach, notice, knowledge, and intent. | |
| 44. | Page 00245:<br>06:  THE WITNESS: I think that -- I<br>07:   think that the issue of conduct, you<br>08:   know, by the company and conduct<br>09:   standards was -- you know, it was very<br>10:  much always on our mind.<br>11:   And I think that this e-mail --<br>12:   I think this e-mail, to me, is talking<br>13:  more about societal attitudes,<br>14:   understand an admitted a new direction<br>15:  the category could take and -- yeah.<br>16:   And trying to explain the kind of<br>17:  ethical dilemmas that are present. | <u>Objecting Party's Position</u>:<br>Argumentative (form); Misstates the document (misleading); Vague and ambiguous (form); FRE 401/402; FRE 403.  Same as above.<br><br><u>Proposing Party's Position</u>:<br>The question was not vague, particularly in the context of the entire discussion which was about Valani and the JLI Board discussing the addictiveness of JUUL in 2014, nor is there anything argumentative or overly prejudicial.  It is relevant to notice, knowledge, the defect of the product and see the response to 244:16-21 and 245:2-4.   There is no risk of juror confusion or undue prejudice. | **Sustained** for the same reasons the objections to 245:02-245:04 are sustained. |
| 45. | Page 00246:<br>08: Q.  When JUUL launched in June | <u>Objecting Party's Position</u>:<br>Lacks Foundation/FRE 602 (246:8-12): no foundation laid regarding | **Overruled** (246:8-12). An adequate foundation has been laid for the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
| | 09: of 2015, did the company include any warning<br>10: in advertising about the addictive nature of<br>11: nicotine?<br>12: A. I don't -- I don't recall.<br>13: Q. Was the board committed to<br>14: making sure that those ethical dilemmas that<br>15: you just referred to didn't get worse? | witness's personal knowledge of warnings; Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form): question argumentatively and ambiguously refers to warnings as an "ethical dilemma";<br><br>FRE 401/402; FRE 403 (246:13-15): testimony about early warnings are not relevant to B.B.'s claims and are confusing, misleading, and unfairly prejudicial.<br><br>Proposing Party's Position:<br>THE WAIVED FOUNDATION OBJECTION:  There was no objection to the question at the time of the deposition so the objection is waived.  Note that the objection at 246:16 is to a different question. However, even if there is no waiver (and there is), there is an adequate foundation, there is nothing argumentative, misleading, vague or ambiguous. First, the witness was one of the largest investors, an active Board member, and a long-term user of JUUL.  (See generally, 103:24-106:17). He  has more than an adequate foundation to know what warnings were,  and were not on the product at launch. The fact that he does not recall, in and of itself, is evidence and is relevant to his credibility.<br>THE MERITLESS OBJECTION TO THE PROPER FOLLOW-UP QUESTION ABOUT THE WITNESS'S OWN ANSWER ABOUT AN ETHICAL DILEMMA: Second, there is nothing | witness to testify about this topic, as he was a board member of JLI. The form of the question is not argumentative, misleading, or vague and ambiguous.<br><br>**Sustained** (246:13-246:15).  The preceding designation related to the witness' discussion of ethical dilemmas was stricken. |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | argumentative, ambiguous or misleading etc, about a follow-up question about the witness's own answer regarding an "ethical dilemma." Counsel was merely following up on Mr. Valani's answer, referring to an "ethical dilemma" at 245:16-7.   In fact, the question was specifically phrased as a follow-up about Valani's answer about the ethical dilemma. ("Was the board committed to making sure that those ethical dilemmas you just referred to didn't get worse?). THE MERITLESS 401/403 OBJECTION: In its various rulings on the parties' in limine, summary judgment and Daubert motions, the Court addressed the issue regarding the lack of any warning in 2015 in JUUL advertising and packaging and has effectively rejected Defendants' objection raised here that such warnings are not relevant to BB's claims. The viral nature of JUUL's marketing and advertising beginning at launch and the lack of appropriate warnings is relevant and BB's claims. JUUL's marketing and the lack of warnings in that marketing and advertising is a central issue in the litigation. The Court has recognized the relevance of JUUL marketing and the lack of warnings in multiple issues (2/25 Hearing Tr. 6:9-15). The Court's Order on general Daubert motions noted the relevance of evidence regarding JUUL marketing, and the lack of warnings. Thus, there is no basis for a 401/402 objection. Any prejudice is of JLI's own making and lack or warnings is | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | substantially outweighed by the relevance and probative value. | |
| 46. | Page 00246:<br>25: THE WITNESS: I said that<br>00247<br>01:  our -- I think the board and the<br>02: management team's view was that we<br>03:  wanted to rise above these ethical<br>04:  dilemmas in terms of the company, its<br>05: positioning, its standards.<br>06: QUESTIONS BY MS. SHARP:<br>07: Q. Do you think you did rise above<br>08: the ethical dilemmas?<br>09:  A. I think there's some areas<br>10: where the company is right in the middle of<br>11:  it, and I think there's a lot of other areas<br>12: where the company has definitely been a<br>13: leader in -- in the best -- being the best<br>14: conduct in the category. | Objecting Party's Position:<br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form): question argumentatively and ambiguously refers to warnings as an "ethical dilemma";<br><br>FRE 401/402; FRE 403 (247:1-14): testimony about early warnings are not relevant to B.B.'s claims and are confusing, misleading, and unfairly prejudicial.<br><br>Proposing Party's Position:<br>See response to 246:8-15 above. | **Sustained** for the same reasons the objections to 246:8-15 were sustained. |
| 47. | Page 00248: | Objecting Party's Position: | **Sustained.**  The question as phrased is vague and |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05: Q. So no regrets about launching 06: the product when the company did? | Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form); FRE 401/402; FRE 403. Testimony about personal regrets not relevant and waste of time and unduly prejudicial.<br><br>Proposing Party's Position: There is nothing argumentative etc about asking the witness whether he has any regrets about launching JUUL, and he answered the question with clarity | ambiguous and its relevance seems minimal at best. |
| 48. | Page 00248 08: THE WITNESS: That's a broad 09: statement, and I think that everything 10: can always be done better by everyone. 11: So, you know, I don't know 12: about regrets, but I definitely -- I 13: definitely think that everything can 14: always be done better. | Objecting Party's Position: Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form); FRE 401/402; FRE 403. Testimony about personal regrets not relevant and waste of time and unduly prejudicial.<br><br>Proposing Party's Position: See response to 248:5-6 above. | **Sustained**. The question as phrased is vague and ambiguous and its relevance seems minimal at best. |
| 49. | Page 00251: 10: Q. When do you think the company 11: really got focused on the youth addiction 12: issue? | Objecting Party's Position: Argumentative (form, "youth addiction issue"); Vague and ambiguous (form, "youth addiction issue," "really got focused"); Assumed facts not in evidence (form, re "youth addiction issue"); FRE 403. Question presumes, without establishing, that youth who use nicotine products are addicted, which is unfairly prejudicial and invites the | **Overruled**. The question is not argumentative or vague, taken within the context of the witness' overall testimony. There is also no risk of juror confusion or undue prejudice. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | jury to make incorrect assumptions regarding use vs. addiction<br><br>Proposing Party's Position:<br>There is nothing argumentative in asking Valani when the company really got focused on the youth addiction issue which he answered without hesitation.  Further, the Defendants' objection that it misstates testimony doesn't make sense.  This is relevant to notice, knowledge, and state of mind.   There is no risk of juror confusion or undue prejudice. | |
| 50. | Page 00251:<br>16: THE WITNESS: As I said, I<br>17:  think that it always -- as you can see<br>18:  from even this e-mail thread, right, I<br>19:  mean, there was never a time when the<br>20:  company was blind to it.  I think that<br>21:  it was always something that had been<br>22:  considered.<br>23:  But frankly, you know, when you<br>24:  looked at the purchase price of the<br>25:  device and you looked at the products<br><br>Page 00252:<br>01:  that are being sold relative to | Objecting Party's Position:<br>Argumentative (form, "youth addiction issue"); Vague and ambiguous (form, "youth addiction issue," "really got focused"); Assumed facts not in evidence (form, re "youth addiction issue"); FRE 403. Question presumes, without establishing, that youth who use nicotine products are addicted, which is unfairly prejudicial and invites the jury to make incorrect assumptions regarding use vs. addiction<br><br>Proposing Party's Position:<br>See response to 251:10-12 above. | **Overruled**.  The question is not argumentative or vague, taken within the context of the witness' overall testimony.  There is also no risk of juror confusion or undue prejudice. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: everything else on the market, it was 03: very differently oriented in all of 04: the kid-focused activities that were 05: going on and frankly that were barely 06: stopped by any sort of regulator or 07: law enforcement. 08: So I -- I think the company had 09: always been paying attention, and the 10: company started to take drastic action 11: when NYTS numbers went up. Took 12: drastic action. 13: QUESTIONS BY MS. SHARP: 14: Q. When the NYTS numbers went up, 15: that's the marker you said? I just want to 16: make sure I heard it right. 17: A. I said that's when they took 18: drastic action. But they'd been taking 19: action even preceding that. | | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 51. | Page 00257:<br>16:  THE WITNESS: What I remember<br>17:  is just sample collateral and, you<br>18:  know, kind of schematic, you know,<br>19:  schematic concepts around -- around<br>20:  the campaign.<br>21:  QUESTIONS BY MS. SHARP:<br>22: Q. When you first saw those<br>23:  schematics around the campaign, did you have<br>24: any concerns about the youthfulness of the<br>25: models?<br><br>Page 00258:<br>01:  A.  My concerns were more around<br>02:  just the general aesthetic I wasn't<br>03:  particularly fond of.<br>04:  Q. How come?<br>05:  A.  Yeah, it's not to my taste.<br>06:  I'm not an expert in, you know, marketing or<br>07:  consumer branding or any of these things,<br>08:  but, you know, it's not -- yeah, not really<br>09:  to my taste. | Objecting Party's Position:<br>Vague and ambiguous (form, "those schematics around the campaign")<br><br>Proposing Party's Position:<br>See response to 256:25-257:2.  There is nothing unduly prejudicial about asking Mr. Valani about his impression of an advertising campaign and whether he had concerns about its youthfulness before it was launched when it was presented to the JLI board. Counsel used the phrase schematics because that is what the witness stated were presented to the Board and that he saw at 256:18.  There is nothing vague and ambiguous about that phrase.<br><br>Moreover, there was no form objection made/preserved, and it is therefore waived. | **Overruled**. The question is not vague and ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 52. | Page 00259:<br>24:  Q.  Did you recall that Nick<br>25:   Pritzker said something about the<br><br>Page 00260:<br>01:  youthfulness of the models?<br>02:  A.  He did.<br>03:  Q.  Did you agree with him?<br>04:  A.  I did.<br>05:  Q.  So you did have some concern<br>06: about the youthfulness of the models then? | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form. Mr. Pritzker "said something"); Assumed facts not in evidence (form, as to what Mr. Pritzker actually said); Asked and answered (question at 260:5-6 already asked and answered at 257:22-258:9) No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br><u>Proposing Party's Position:</u><br>See response to 256:25-259:2 and 257:22-258:9.<br><br>First, as to 259:24-260:4, there was no form objection made/preserved, and it is therefore waived.<br><br>Second, even if it had been preserved it should be overruled.  There is nothing vague about asking Mr. Valani if he recalled fellow board member, Nick Pritzker saying something about the youthfulness of the models in the campaign which the witness in fact confirmed he recalled and agreed with Pritzker that the models appeared youthful.  It assumes no facts in evidence to ask whether Mr. Pritker said something that the witness heard about the youthfulness of the models.  That is a meritless contention.  As to the "asked and answered" objection... it was not made at the time so is waived but also the question at 257:22-258:9 is a completely different question that has nothing to do with Pritzker. | Sustained (259:24-260:4).  The question is vague and ambiguous as the examiner does not specify what Mr. Pritzker said about the youthfulness of the models.  Nor do any of the preceding designations up to this point in the examination establish what Mr. Pritzker said.  It also assumes facts not in evidence.<br><br>Sustained (259:5-14).  The question has already been asked and answered.  Indeed, the witness starts by answering "as I said," indicating that he already responded to the question. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| 53. | Page 00260:<br>09: THE WITNESS:<br>As I said, you<br>10: know, I think that<br>it -- it did come<br>11: up, and I was<br>supportive of the<br>extent<br>12: that we were to use<br>people in any type<br>13: of advertising, that<br>the -- that they<br>14: be older. | Objecting Party's Position:<br>Vague and ambiguous (form. Mr. Pritzker "said something"); Assumed facts not in evidence (form, as to what Mr. Pritzker actually said); Asked and answered (question at 260:5-6 already asked and answered at 257:22-258:9) No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br>Proposing Party's Position:<br>See response to 256:25-259:2 and 257:22-258:9.<br><br>First, as to 259:24-260:4, there was no form objection made/preserved, and it is therefore waived.<br><br>Second, even if it had been preserved it should be overruled.  There is nothing vague about asking Mr. Valani if he recalled fellow board member, Nick Pritzker saying something about the youthfulness of the models in the campaign which the witness in fact confirmed he recalled and agreed with Pritzker that the models appeared youthful.  It assumes no facts in evidence to ask whether Mr. Pritker said something that the witness heard about the youthfulness of the models.  That is a meritless contention.  As to the "asked and answered" objection... it was not made at the time so is waived but also the question at 257:22-258:9 | Sustained (259:24-260:4).  The question is vague and ambiguous as the examiner does not specify what Mr. Pritzker said about the youthfulness of the models.  Nor do any of the preceding designations up to this point in the examination establish what Mr. Pritzker said.  It also assumes facts not in evidence.<br><br>Sustained (259:5-14).  The question has already been asked and answered.  Indeed, the witness starts by answering "as I said," indicating that he already responded to the question. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|---------------------------------------|---------------------|--------|
| | | is a completely different question that has nothing to do with Pritzker. | |
| 54. | Page 00315:<br>23: Q. All right. Let's switch gears<br>24: a little bit. We talked earlier about<br>25: Mr. Pritzker's reaction to the Vaporize<br><br>Page 00316:<br>01: campaign.<br>02: I referred to a shit fit, and<br>03: you said that you recalled him making some<br>04: less than complimentary comments about the<br>05: Vaporize campaign.<br>06: Is that fair? | <u>Objecting Party's Position:</u> Misstates prior testimony (misleading, counsel's question improperly summarizes prior testimony -- "we talked earlier. I referred to. And you said that..." Also misleading when juxtaposed with prior designations which relate to events in March 2015. This question relates to events in June 2015); Vague and ambiguous (form, "less than complimentary comments"); Assumed facts not in evidence (form, instead of designating the testimony referred to by counsel, counsel improperly summarizes and characterizes prior testimony, including Mr. Pritzker's reaction and Mr. Valani's understanding of that reaction. The designated testimony on pages 257, 259 and 260 does not refer to a "shit fit" or any other portion of Mr. Pritzker's email that would give the jury context about what the email says. Mr. Valani does not agree with counsel's characterization and instead provides his own interpretation of the email, causing more confusion. This is an improper way to introduce the contents of a document to the jury.); FRE 401/402; FRE 403. Counsel's reference to a "shit fit" is a prejudicial and improper characterization of Mr. Pritzker's reaction to the Vaporized campaign; those are the words in a document, and Mr. Pritzker (not Mr. Valani) is allowed to explain what he meant. | **Sustained**. The examiner misstates the prior testimony and assumes facts not yet in evidence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
|  |  | Proposing Party's Position:<br>First, the summary is not misleading, improper or vague and the witness is given (and takes) the opportunity to say whether the summary is fair. This objection is meritless.<br><br>Second, the question does not assume facts not in evidence. Prtiker's comments about the youthfulness of the models/campaign were introduced at pages 257, 257, 259 and 260 designated above. Pritzker's shit fit will be in by the time this video is played and Valani clearly thinks the summary is fair based on his answer.<br><br>This is further testimony about Mr. Pritzker's reaction to criticisms of the youthfulness of the Vaporized campaign and the "shit fit" Pritzker took. Valani has first-hand knowledge of the Shit fit Pritzker took. It's relevant to knowledge and state of mind. There is no risk of juror confusion or undue prejudice. It is somewhat ironic that Defendants argue that "Counsel's reference to a shit fit is the prejudicial and improper characterization of Mr. Prtizker's reaction to the Vaporized campaign." in light of the fact that Mr. Pritzker's himself described his reaction as a "shit fit." So, it can hardly be said to be an "improper characterization" and the term "shit fit" is hardly in and of itself so shocking to be unfairly prejudicial under Rule 403. |  |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 55. | Page 00316:<br>08: THE WITNESS: Yeah,<br>09: specifically I think that what he was<br>10: referring to was that JUUL was<br>11: starting to get criticized for the<br>12: campaign. And so it was kind of one<br>13: of these things where aesthetically,<br>14: don't really like it, and then on top<br>15: of that you're getting criticized.<br>16: So I don't have a lot of<br>17: conviction that it works, and then<br>18: you're getting kind of criticized for<br>19: it being youth-focused in some way,<br>20: and that's just unacceptable | <u>Objecting Party's Position:</u><br>Misstates prior testimony (misleading, counsel's question improperly summarizes prior testimony -- "we talked earlier..I referred to..and you said that..." Also misleading when juxtaposed with prior designations which relate to events in March 2015. This question relates to events in June 2015); Vague and ambiguous (form, "less than complimentary comments"); Assumed facts not in evidence (form, instead of designating the testimony referred to by counsel, counsel improperly summarizes and characterizes prior testimony, including Mr. Pritzker's reaction and Mr. Valani's understanding of that reaction. The designated testimony on pages 257, 259 and 260 does not refer to a "shit fit" or any other portion of Mr. Pritzker's email that would give the jury context about what the email says. Mr. Valani does not agree with counsel's characterization and instead provides his own interpretation of the email, causing more confusion. This is an improper way to introduce the contents of a document to the jury.); FRE 401/402; FRE 403. Counsel's reference to a "shit fit" is a prejudicial and improper characterization of Mr. Pritzker's reaction to the Vaporized campaign; those are the words in a document, and Mr. Pritzker (not Mr. Valani) is allowed to explain what he meant.<br><br><u>Proposing Party's Position:</u> | **Sustained**. The examiner misstates the prior testimony and assumes facts not yet in evidence. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
|  |  | First, the summary is not misleading, improper or vague and the witness is given (and takes) the opportunity to say whether the summary is fair. This objection is meritless.<br><br>Second, the question does not assume facts not in evidence. Prtiker's comments about the youthfulness of the models/campaign were introduced at pages 257, 257, 259 and 260 designated above. Pritzker's shit fit will be in by the time this video is played and Valani clearly thinks the summary is fair based on his answer.<br><br>This is further testimony about Mr. Pritzker's reaction to criticisms of the youthfulness of the Vaporized campaign and the "shit fit" Pritzker took. Valani has first-hand knowledge of the Shit fit Pritzker took. It's relevant to knowledge and state of mind. There is no risk of juror confusion or undue prejudice. It is somewhat ironic that Defendants argue that "Counsel's reference to a shit fit is the prejudicial and improper characterization of Mr. Prtizker's reaction to the Vaporized campaign." in light of the fact that Mr. Pritzker's himself described his reaction as a "shit fit." So, it can hardly be said to be an "improper characterization" and the term "shit fit" is hardly in and of itself so shocking to be unfairly prejudicial under Rule 403. |  |
| 56. | Page 00317:<br>11: Q. And the criticism was in part | Objecting Party's Position:<br>Vague and ambiguous (form, "the criticism," "youthfulness" "perceived | **Overruled.** The question is not vague or ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 12: because of the youthfulness, the perceived<br>13: youthfulness, of the campaign, no?<br>14:  A. Part of it was that. | youthfulness"). No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter<br><br>Proposing Party's Position:<br>First, there was no form objection made/preserved, and it is therefore waived.<br><br>Second, even if the objection had been preserved (but was not)  there is nothing vague about the question using "the criticism," "youthfulness" and "perceived youthfulness" as evidenced by the fact that the witness understood the question, answered it and there was no objection at the time. | |
| 57. | Page 00324:<br>24: Q.    Do you know how long the<br>25:   Vaporized videos stayed up at the points of<br><br>Page 00325:<br>01:  sale? | Objecting Party's Position:<br>Vague and ambiguous (form, "Vaporized videos"); Assumed facts not in evidence (form, re Vaporized videos being up at all points of sale)<br><br>Proposing Party's Position:<br>There is nothing vague about asking Valani about how long the Vaporized videos were up at the point of sale, as evidenced by the fact that Mr. Valani understood the question and answered it in detail including referring to the very "terminals" that had the videos in stores (325:8-9).<br><br>By the time that Mr. Valani's video is played there will be testimony already in the record establishing that there was point of sale JUUL display | **Overruled.**  The question is not vague and ambiguous.  In addition, the Special Master cannot presently confirm whether evidence of vaporized videos will have been offered into evidence by the time Mr. Valani testifies.  Accordingly, the Special Master overrules Defendants' objection without prejudice to Defendants' re-raising this objection at trial. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | cases with Vaporized video being looped for the consumer.  In fact, Plaintiff ▮▮▮▮ saw such a video in convenience stores. | |
| 58. | Page 00325:<br>04: THE WITNESS: This is a<br>05:  particular pet peeve of mine, so,<br>06:  yeah, I really wanted it to come down<br>07:  as quickly as possible.  I know it's<br>08:  hard to switch out point-of-sale<br>09:  terminals, especially with the limited<br>10:  resources that the company had, but I<br>11:   know that it was a priority for the<br>12:  company to rotate those out. | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form, "Vaporized videos"); Assumed facts not in evidence (form, re Vaporized videos being up at all points of sale)<br><br><u>Proposing Party's Position:</u><br>There is nothing vague about asking Valani about how long the Vaporized videos were up at the point of sale, as evidenced by the fact that Mr. Valani understood the question and answered it in detail including referring to the very "terminals" that had the videos in stores (325:8-9).<br><br>By the time that Mr. Valani's video is played there will be testimony already in the record establishing that there was point of sale JUUL display cases with Vaporized video being looped for the consumer.  In fact, Plaintiff ▮▮▮▮ saw such a video in convenience stores. | **Overruled.**  The question is not vague and ambiguous.  In addition, the Special Master cannot presently confirm whether evidence of vaporized videos will have been offered into evidence by the time Mr. Valani testifies.  Accordingly, the Special Master overrules Defendants' objection without prejudice to Defendants' re-raising this objection at trial. |
| 59. | Page 00325:<br>14: Q.    Sitting here today, whether the<br>15:  campaign was successful or not, do you agree<br>16:  it was a mistake in hindsight to run it?<br>17: A.    What I'd say is that at the | <u>Objecting Party's Position:</u><br>With respect to 326:11-14: Vague and ambiguous (form, "was the decision," "might as well," "hope for the best"); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; Calls for Speculation (question is unclear but appears to ask witness about hypothetical scenario in which Vaporized is either taken down earlier or other ad content is | **Sustained** (326:11-24). The question is vague and ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  time, you know, you had people that were<br>19: supposed experts in, you know, premium goods,<br>20:  you know, for this demographic.  I know<br>21: Richard Mumby was a luxury goods marketing<br>22:  specialist.<br>23: So, you know, they had used<br>24: their judgment to - - I wished we had had<br>25:  something better, is what I would say.  And I<br><br>Page 00326:<br>01:  wish the company had produced something that<br>02:  was more akin to where it did, in fact, go,<br>03:  and they hadn't wasted the mind share,<br>04: criticism, money, around something that was<br>05: credibility-hurting and that failed to<br>06:  produce any sales whatsoever and, frankly,<br>07: you know, caused consternation even in the<br>08:  management ranks. | launched; as Mr. Valani explained at 257:3-10, the Board didn't formally approve the Vaporized campaign so there was no Board "decision" to be made)<br><br>Proposing Party's Position:<br>See prior response.  As to Defendant's foundation objection for 326:11-14 - Valani a board member testified to his first-hand knowledge of the Vaporized campaign, the criticisms of it, and when it was removed.  He clearly has the foundation to know whether the decision was to leave it up, while another campaign was developed and hope for the best, and the question does not call for speculation.  Valani himself volunteered answers demonstrating his first-hand knowledge about the timing around the removal of the Vaporized campaign including that he wanted it to "come down as quickly as possible" (325:6-8) and referring to the fact that in-store point of sale counter display units with videos were not removed as quickly as possible "it was a pet peeve of mine" (325:4-5).  It is an appropriate question in light of this foundation to ask him if the strategy was to leave the campaign and hope for the best. | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|---------------------------------------|--------------------|--------|
| | 09:  So I -- you know, yeah, I<br>10:  wished that we had used something better.<br>11:  Q. But was the decision that in<br>12:  the absence of something better, might as<br>13:  well leave out Vaporized and hope for the<br>14:  best? | | |
| 60. | Page 00326:<br>17:  THE WITNESS: Yeah, I don't<br>18:  know.  I don't know that I have a<br>19:  clear -- you know, look, whatever was<br>20:  done, you know, from October could<br>21:  have been done six months earlier.  So<br>22:  I think that -- get clarity on that,<br>23:  you know, would have been a good<br>24:  thing. | <u>Objecting Party's Position:</u><br>With respect to 326:11-14: Vague and ambiguous (form, "was the decision," "might as well," "hope for the best"); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; Calls for Speculation (question is unclear but appears to ask witness about hypothetical scenario in which Vaporized is either taken down earlier or other ad content is launched; as Mr. Valani explained at 257:3-10, the Board didn't formally approve the Vaporized campaign so there was no Board "decision" to be made)<br><br><u>Proposing Party's Position:</u><br>See prior response.  As to Defendant's foundation objection for 326:11-14 - Valani a board member testified to his first-hand knowledge of the Vaporized campaign, the criticisms of it, and when it was removed.  He clearly has the foundation to know whether the | **Sustained** (326:11-24). The question is vague and ambiguous. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | decision was to leave it up, while another campaign was developed and hope for the best, and the question does not call for speculation. Valani himself volunteered answers demonstrating his first-hand knowledge about the timing around the removal of the Vaporized campaign including that he wanted it to "come down as quickly as possible" (325:6-8) and referring to the fact that in-store point of sale counter display units with videos were not removed as quickly as possible "it was a pet peeve of mine" (325:4-5). It is an appropriate question in light of this foundation to ask him if the strategy was to leave the campaign and hope for the best. | |
| 61. | Page 00327: 15: Q. You regret that the campaign 16: ran, in retrospect? 17: A. Again, it's a yes or no 18: question. I mean, I wished we had something 19: better. | Objecting Party's Position: FRE 401/402; FRE 403. Cumulative, irrelevant, and prejudicial, witness has already testified extensively about his views on the Vaporized campaign, and whether it was a "mistake in hindsight to run in" (see 325:14-16).<br><br>Proposing Party's Position: There is no risk of juror confusion or undue prejudice in Valani's admission that he wishes in retrospect JLI had run a better campaign than Vaporized. He was not asked this question before so it's not cumulative and merely because he makes an admission that is harmful to the Defendants' case does mean that the probative value of such an admission is substantially | Sustained. Testimony is cumulative as Mr. Valani has already testified to whether he thought the campaign should have ran. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | outweighed by its prejudicial effect under Rule 403 (which it is not). | |
| 62. | Page 00329<br>06: DAN LAWLOR: This is 40090.<br>07: MS. SHARP: Thank you.<br>08: QUESTIONS BY MS. SHARP:<br>09: Q.    All right. And this e-mail<br>10: from July 2, 2015, is from Mr. Frankel to<br>11: Mr. Asseily and yourself, Mr. Valani.<br>12: Do you see that?<br>13: A.    I do.<br>14: Q.    And the subject line is, "Did<br>15: you guys read the second half of this<br>16: article?"<br>17: And Mr. Frankel is obviously<br>18: sending you a portion of an article that it<br>19: appears he's cut and pasted.<br>20: And the language he includes<br>21: says the following. "John Schachter,<br>22: director of state communications for Campaign<br>23: for Tobacco-Free Kids, expressed concern | Objecting Party's Position: Hearsay (Rule 802); hearsay within hearsay. Portions of Exhibit 40090 contain excerpts of an article published in AdAge, which itself contains additional quotes from third parties such as John Schacter from the CDC.  These statements are being offered for their truth (i.e. that JLI's marketing and flavors appealed to youth) and not for notice.  Any attempt to impeach Mr. Valani using this document is improper; Mr. Valani testified that the company was always paying attention to youth use (252:8-12), and testified that he didn't recall exact dates but personally became aware of reports of youth using JUUL in 2017 (254:20-255:14) -- this excerpt from a 2015 article is not about youth use of JUUL, and does not contract Mr. Valani's prior testimony<br><br>The AdAge article is not an adoptive admission under FRE 80(d)(2)(B) because neither Mr. Frankel, Mr. Valani, nor Mr. Asseily express any opinions as to the veracity of the statements made in the article, nor do they manifest a belief in the truth of those statements.  Mr. Frankel simply forwards the article with the subject line "did you guys read the second half of this article," and their subsequent conversation suggests that in fact they disagree with the statements in the article.  Plaintiff's argument also mischaracterizes the | **Overruled.**  While the exhibit referenced in this testimony includes out-of-court statements, the Special Master finds that the examiner is eliciting testimony for a non-hearsay purpose, namely to show the effect on the listener and to impeach Mr. Valani's prior testimony.  To the extent the parties object to the substance of the exhibit and the introduction of its contents, the Special Master makes no ruling as that exceeds the scope of his designation. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 24: about the JUUL campaign because of the youth<br>25: of the men and women depicted in the<br><br>Page 00330:<br>01: campaign, especially when adjoined with the<br>02: design."<br>03: Do you see that?<br>04: A. I do.<br>05: Q. And the Campaign for<br>06: Tobacco-Free Kids is a nonprofit that<br>07: advocates against tobacco use by youth,<br>08: correct?<br>09: A. It does.<br>10: Q. And the ad campaign that he<br>11: references included the Vaporized campaign<br>12: which, as we just discussed at length, drew<br>13: some criticisms, right?<br>14: A. Yeah.<br>15: Q. Mr. Schachter notes,<br>16: "especially when adjoined with the design."<br>17: And so what he's pointing out<br>18: is that it's not just the youthfulness of the | law of this Circuit. The law in the 9th Circuit is clear that merely forwarding an article is insufficient to constitute adoption -- Plaintiff's own cases make this very point. See, e.g., Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) ("Where, however, a party forwards a document while acting as a mere messenger, this does not constitute an adoption....it is well settled there must be evidence of adoption 'beyond mere possession'"); Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (adoptive admission where employee "copied the entire body of [the] internal memorandum into her e-mail" and prefaced it with a statement indicating that the memorandum was truthful).<br><br>Nor is the article being offered for notice or another non-hearsay purpose; counsel is simply reading the article into the record.<br><br>Lacks Foundation/FRE 602; Calls for speculation: witness lacks foundation to testify as to what Mr. Schachter intended to refer to or point out and is asked to speculate about what Mr. Schachter meant<br><br>Proposing Party's Position:<br>40090 is an Email to Valani and Asseilly from Frankal forwarding the Ad Age article. The Ad Age article was an article that JLI's Chief Marketing Officer, Mumby, sought to feature Mumby and the Vaporized | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19:  people in the campaign but also the design of 20:  the product that's causing him concern, 21:  correct? | campaign.  The article not only quotes Mumby but also a high-level director at the CDC  and John Schacter from the Center for Disease control, who express concerns about the Vaporized campaign's youthfulness and other tactics used by JLI i.e.. flavors would attract youth.<br><br>This article being forwarded by other board members (Frankl and Asseilly) and is not hearsay as it's not introduced for the truth of the matter asserted 'but it is strong evidence of early knowledge of the youth appeal of JUUL and JLI's advertising, and the appeal of JUUL's flavors to youth.  The email and the article were circulated internally at JLI shortly after JUUL was launched.  Valani received the email and the article so has the foundation to testify about it.  In fact, he commented on one of Mumby's quotes about flavors stating ""I like Richard, but highlighting a stated weakness of ours [flavors] is idiotic."   This is also used to impeach Mr. Valani who previously testified that he really wasn't aware a youth issue with JUUL until about 2017.  This is 2015.   There is no risk of juror confusion or undue prejudice.<br><br>Moreover, the hearsay objection should be overruled for the following additional reasons.  First, the AdAge article is admissible for the truth of the matters asserted in it as an adoptive admission. FRE Rule 801(d)(2)(B) permits a court to allow | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | into evidence a statement as non-hearsay if "(A) the statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth." United States v. Hove, 52 F.3d 233, 236 (9th Cir. 1995).  Forwarding a newspaper article in with statements suggesting its contents are accurate is such a manifestation of belief.  See, e.g., Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (email forwarding third party memo with inculpatory statement held admissible as non-hearsay adoptive admission, even if forwarding author failed to review entire memo); Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) (use of third party report constitutes an adoption of the statements contained therein); Siebert v. Gene Sec. Network, Inc., 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (letter forwarding third party report adoptively admitted report's contents); see also Wagstaff v. Protective Apparel Corp., 760 F.2d 1074, --- (10th Cir. 1985) (forwarding of newspaper articles by Defendant constituted adoptive admission of third party statements in those articles); United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) (context and content of certain e-mails demonstrated Defendant had "manifested an adoption or belief" in the truth of the statements of other people as Defendants forwarded their e-mails); Forest Labs., Inc. v. Ivex Pharms., |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | Inc., 237 F.R.D. 106, 2006 U.S. Dist. LEXIS 50752 (D. Del. 2006) (overruling plaintiffs' objection to exhibit, newspaper article, and accompanying testimony, on ground that witness, as executive of corporate defendant, had adoptively admitted contents of newspaper article).<br><br>Here, the statements from Mr. Valani, Asseily and Frankal—all board member whose statements about the article are attributable to Defendant JLI, see Forest Labs, id. Even if the Article were not an adoptive admission, it would be admissible for non-hearsay purposes, such as establishing Defendants' knowledge, early notice and the effect on the listener. See Martin v. City of Indianapolis, 192 F. 3d 608, 613 (7th Cir. 1999) (newspaper article admissible for non-hearsay purpose of establishing public perception of artwork); Porter v. Lear, 751 Fed. Appx. 422, 433 (5th Cir. 2018) (out-of-court statements admissible for non-hearsay purpose of establishing knowledge of those statements); Rivera v. Inc. Vill. of Farmingdale, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (newspaper articles admissible to prove notice). I See, e.g., United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991) (out of court statements admissible to establish effect on listener); Yarborough v. City of Warren, 383 F. Supp. 676, 682 (E.D. Mich. 1974) (newspaper article admissible to provide "historical context"); see also |  |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | In re Korean Ramen Antitrust Litig., 281 F. Supp. 3d 892, 936 (N.D. Cal. 2017) (newspaper article admissible to prove acts in furtherance of conspiracy). | |
| 63. | Page 00330: 23: THE WITNESS: I see that. 24: QUESTIONS BY MS. SHARP: 25: Q.    And July 2, 2015, is pretty Page 00331: 01: much exactly one month after JUUL launched, 02: right? 03: A.    Yes. 04: Q.    The article goes on, 05: "Mr. Schachter said the organization has 06: noticed obvious trends that appeal to 07: adolescents in e-cigarette campaigns, such as 08: celebrity endorsements, sponsorships and 09: various flavors." 10: Did I read that correctly? 11: A. Yes. 12: Q. And so this is Mr. Frankel 13: communicating to you as a board member of the | Objecting Party's Position: Same as above. Also, lacks Foundation/FRE 602 with respect to 331:12-18 and 331:21-22 which asks witness to speculate about what Mr. Frankel intended to convey about what Mr. Schacter said ("And so this is Mr. Frankel communicating to you...that the director of state communications...noticed obvious trends..."); Plaintiff response is incorrect, Mr. Valani is not being asked whether Mr. Frankel sent the article, he is being asked what the purpose of Mr. Frankel's email was. Also, misstates prior testimony (misleading, mischaracterizes earlier testimony about awareness of youth use of Juul product) Proposing Party's Position: See response to 329:6-330:21.   The question does NOT ask the witness to speculate why Frankel sent the article so it does not call for speculation.  It just asks whether Mr. Frnakel sent the article with the statement about appeal of flavors to kids to the witness.  No question of why at all. See response to 329:6-330:21.  Does not misstate or mischaracterize earlier testimony and the witness clarifies in his answer. | **Sustained** (331:12-22). The examiner asks the witness to speculate as to why Mr. Frankel sent the article and is improper attorney commentary. **Overruled** as to remaining designation. The examiner does not misstate Mr. Valani's prior testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
| | 14:  company that had launched JUUL that the<br>15:  director of state communications from the<br>16:  Campaign for Tobacco-Free Kids noticed<br>17: obvious trends that appeal to adolescents,<br>18:  including flavors, right?<br><br>Page 00331:<br>21:  THE WITNESS: I see he<br>22: forwarded the article.<br>23: QUESTIONS BY MS. SHARP:<br>24:  Q.  And this is in 2015, so just<br>25:  one month after the campaign launched.  But<br><br>Page 00332:<br>01:  your testimony earlier was that you didn't<br>02:  become really aware of youth usage until 2017<br>03:  at the earliest; is that right?<br><br>Page 00332:<br>05: THE WITNESS: When I said that,<br>06:  I was saying that as relates to JUUL | | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07:  products and not a blanket statement<br>08:  regarding the industry.<br>09:  And I do think that there were<br>10:  many industry participants that were<br>11:  highly responsible.<br>12: QUESTIONS BY MS. SHARP:<br>13:  Q. Mr. Schachter, the portion of<br>14:  this article it cited, though, expressly<br>15:  calls out the JUUL campaign, right? | | |
| 64. | Page 00332:<br>17:  THE WITNESS: He made this<br>18:  statement, this quote.  At least it<br>19:  says here, "We're seeing more and more<br>20: irresponsible marketing of unregulated<br>21:  products such as e-cigarettes" that he<br>22:  wrote in a statement about the JUUL<br>23:  campaign. So, yeah, maybe he was<br>24: referencing it.<br>25:  We didn't like the criticism.<br><br>Page 00333:<br>01:  QUESTIONS BY MS. SHARP: | Objecting Party's Position:<br>Same as above.  Form objections have been preserved and are not waived.  See 4/18/22 Ltr to Plaintiffs re Deposition Designation Objections and Counter Designations<br><br>With respect to 333:10-14: Lacks Foundation/FRE 602 (witness lacks foundation as to what Mr. Mumby meant)<br><br>With respect to 333:15-21: FRE 401/402; FRE 403 (use of comment containing expletive is irrelevant and prejudicial, particularly because all counsel does is read the email into the record without further context or explanation)<br><br>With respect to 333:22-25: FRE 401/402; FRE 403 (risks confusing the jury, JLI never had a tutti fruity flavor) | **Overruled** (333:6-8). Question is not vague or ambiguous.<br><br>**Sustained** (333:10-14): The witness lacks foundation as to what Mr. Mumby meant when he made the statement referenced in the article.<br><br>**Overruled** (333:15-21): Plaintiff's counsel is simply reading part of the email to the witness to provide context and the testimony is not prejudicial.  Defendants have not articulated a basis for exclusion under FRE 401, 402, or 403.<br><br>**Overruled** (333:22-25): There is no risk to jury |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 02: Q.    At the very bottom of the<br>03: snippet Mr. Frankel sent, it says, "Mr. Mumby<br>04: claims PAX's distinct flavors, tabaac, miint,<br>05: fruut and bruulA, will appeal to adults."<br>06: We discussed Richard Mumby was<br>07: the chief marketing guy at the company at<br>08: that time, right?<br>09: A.    Yes.<br>10: Q.    And in the face of criticism<br>11: from the campaign for Tobacco-Free Kids,<br>12: Mr. Mumby is defending JUUL's flavors as<br>13: appealing to adults, correct?<br>14: A.    That's what it says.<br>15: Q.    Let's read up in the e-mail<br>16: chain just a little bit.<br>17: And Mr. Pritzker writes, "I<br>18: didn't. Why the fuck do we want to be on<br>19: their radar screen?"<br>20: Right?<br>21: A.    Yes. | Same as above; also this designation incorrectly identifies the date of Mr. Valani's email as July 22, 2015 (see 334:4).  The email was sent on July 2, 2015.<br><br>Proposing Party's Position:<br>See response to 329:6-330:21. First, there was no form objection made/preserved, and it is therefore waived.<br><br>With respect to 333:6-8: There is nothing vague and ambiguous in referring to Richard Mumby (a male - Chief Marketing Officer) as the "Chief Marketing guy".  This objection is not made in good-faith at all, and should really cast serious doubt on the Defendants' objections as a whole<br><br>With respect to 333:10-14:  The witness is testifying to his understanding of what Mumby said in the AdAge article, not to what Mumby meant.<br><br>With respect to 333:15-21: One would think from reading Defendants' objections that every time an expletive is written by a witness ie. "Shitfit" (above) or others that Rule 403 renders such a statement inadmissible.  Here, Mr. Pritzker responds in the Email exchange  with Mr. Valani about criticism that the Vaporized ad campaign might attract youth by remarking " ... Why the fuck do we want to be on their radar screen." | confusion simply because JLI never had a tutti fruity flavor.  The testimony is offered to show that JLI was on notice of youth usage of JLI's products, which included flavored pods. |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 22: Q.    And he says, "Also, I think we 23: need to exercise common sense on flavors. 24: Tabaac, yes; tutti fruity, no. Let's figure 25: out where to draw the line." <br><br>Page 00334: <br>01: Right? <br>02: A.    Yes. <br>03: Q.    And you write back, again on 04: July 22, 2015, "I like Richard, but 05: highlighting a stated weakness of ours is 06: idiotic." 07: Right? 08: A.    I did. 09: Q.    And "Richard" is Richard Mumby. 10: And he is referring to flavors in his quote 11: in the article, correct? 12: A.    He is. 13: Q.    So the stated weakness that 14: you're referring to in your e-mail is the use 15: of flavors in the JUUL products, right? <br><br>Page 00334: | One would think from the Defendants ' misleading objection that Plaintiff's Counsel merely cherry-picked the singular- line in the email chain where the expletive appeared and read it in order to highlight only the expective, ignoring the full email and its context.   This is utterly false,  itself misleading and calls into question the merit of Defendants' objections globally. Plaintiff's counsel walks the witness through the entire email and puts it in context, asking probative questions. For instance, Plaintiff's counsel questions the witness not only on the paragraphs leading to the "expletives" but also the paragraphs asking probing questions about what the witness himself means when he wrote about Richard Mumby's (Chief Marketing Officer) "Iike Richard, but highlighting a state weakness or ours is idiotic." (referring to the fact that JUUL flavors might attract youth). <br><br>With respect to 333:22-25:  There is no risk of jury confusion.   The probative value of Pritzker's statements in the email to other board members that JUUL should not be sold in a fruit flavor far outweighs the prejudice that he was imprecise in recalling its name particularly since. JUUL in fact came in Fruit (spelled Fruit) flavor (also called Fruit Medley) that JULI described as tasting like peaches, grapes, and berries with herbal notes, as well as other fruit flavors like Mango. <br><br>See response to 329:6-330:21 | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:  THE WITNESS: I don't think<br>19:  that that's what I -- I did see this<br>20:  document in my prep, and I -- I'm not<br>21:  sure what I meant on that. | The testimony may not provide clarity on what the "stated weakness" but that does not make it inadmissible under 401/402 and 403.  The jury should be not be kept from assessing Mr. Valani's veracity and credibility in not recalling what he meant when he wrote "I like Richard, but highlighting a stated weakness of ours is idiotic." [that he volunteered he read the email in preparation for his deposition].  The probative value in not to knowing can be as relevant as knowing.  The probative value in not recalling can be s relevant as recalling, particularly in assessing a witness's credibility. | |
| 65. | Page 00335<br>09:  My question is, what did you<br>10: mean here when you said, "I like Richard, but<br>11:  highlighting a stated weakness of ours is<br>12:  idiotic"?<br>13:  Is there any reasonable way to<br>14: read that other than that the reference to a<br>15:  stated weakness is relating to his lone quote<br>16:  in the article which talks about the four<br>17: flavors that were available?<br>18:  A.    You know, it was a glib remark | Objecting Party's Position:<br>Same as above. Compound ("My question is..." and "Is there any other way..."); Argumentative (form, "is there any reasonable way to read that..."); Asked and answered (see 334:13-15, 18-21); FRE 401/402; FRE 403. Testimony provides no clarity as to what "stated weakness" is being referred to and is thus likely to confuse or mislead the jury.  No objections have been waived; both parties reserved the right to assert "all objections not specifically delineated that later become known," including form objections.  See 5/25/22 Joint Letter.<br><br>Proposing Party's Position:<br>First, there was no form objection made/preserved, and it is therefore waived. | **Sustained** (335:13-17). The question is argumentative.<br><br>**Overruled** as to remaining designation. The question at 335:9-12 is not argumentative and the question is meant to clarify the prior testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: on my part and, frankly, I'm -- when I went<br>20: back and read this in my -- in my prep, I'm<br>21: not sure what I meant at the time. | Second, even if the form objections were preserved (they are not) they are meritless. The question is clear, was not asked and answered. The questions are different.<br><br>See response to 329:6-330:21 | |
| 66. | Page 00336:<br>17: Q.    Now, there came a time when the<br>18:  company pulled most of its flavors off the<br>19:  market, correct?<br>20: A.    There did.<br>21: Well, there were two times when<br>22:  the company did that.<br>23: Q.    One time was in the end of 2018<br>24:  when the flavors that were pulled were mango,<br>25:  crème brûlée and fruit, three of the flavors<br><br>Page 00337:<br>01: that were identified in Mr. Mumby's quote,<br>02: right? | Objecting Party's Position:<br>As to 336:23-337:2 and 337:4-5, misstates prior testimony (misleading) examiner later admits to having misstated the facts on flavors available<br><br>Proposing Party's Position:<br>The witness corrected the misstatement about which flavors were removed when so there is no room for juror confusion and the issue was cured. | **Overruled**.  The witness corrects the misstatement, which cures any potential juror confusion on the issue. |
| 67. | Page 00337:<br>04: THE WITNESS: Two of those<br>05:  flavors.<br>06: QUESTIONS BY MS. SHARP: | Objecting Party's Position:<br>As to 336:23-337:2 and 337:4-5, misstates prior testimony (misleading) examiner later admits to having misstated the facts on flavors available | **Overruled**.  The witness corrects the misstatement, which cures any potential juror confusion on the issue. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07: Q.    Two of those flavors?<br>08: A.    Yeah, mango was not in the<br>09:  market in --<br>10: Q.    Ah, my bad. You're absolutely<br>11:  right.  Thank you for the correction.  Two of<br>12: those flavors. Which were spelled<br>13:  differently at the time.<br>14:  But brûlée and fruit were still<br>15: on the market in 2018 and ultimately were<br>16: taken off thereafter, correct?<br>17: A.    Sure. | <u>Proposing Party's Position:</u><br>The witness corrected the misstatement about which flavors were removed when so there is no room for juror confusion and the issue was cured. | |
| 68. | Page 00359:<br>03:  Do you acknowledge that the FDA<br>04:  has referred to what has occurred in the<br>05: recent years as a youth vaping epidemic?<br>06: A.  I do.<br>07: Q.  Do you agree that what has<br>08: occurred in recent years is a youth vaping<br>09: epidemic?<br>10: A.    I'm not an epidemiologist, and | <u>Objecting Party's Position:</u><br>Lacks Foundation/FRE 602 (witness lacks foundation to render an opinion on the existence of a youth vaping epidemic; witness' limited role as a Board member does not give him a foundation and Plaintiff has not established one through her designations)<br><br><u>Proposing Party's Position:</u><br>Valani acknowledges that FDA has stated that there is a youth vaping epidemic. He clearly has the foundation and personal knowledge or would not have said yes. Moreover, he has been on the Board of an Ecig company since before | **Sustained** (359:7-18). The witness is not qualified to opine on whether he believes there is a youth epidemic. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 11: so I'm not sure what qualifies or doesn't 12: qualify. And I also don't know how that term 13: would apply on a year-by-year basis given the 14: data. 15: So I think you'll have to make 16: your own judgment. 17: I do think there was a very 18: significant problem, so, you know. | JUUL launched. This alone gives him a foundation. | |
| 69. | Page 00360: 14: Q. Did JUUL play a role in causing 15: the youth vaping problem, we'll call it? | Objecting Party's Position: Vague and ambiguous (form, "the youth vaping problem"); Calls for Speculation (form); Lacks Foundation/FRE 602; FRE 401/402; FRE 403. Testimony calls for witness to speculate about cause of "the youth vaping problem" without any adequate foundation; this is topic for expert testimony, witness's personal views are not relevant and a waste of time and unfairly prejudicial. Proposing Party's Position: The question about whether JUUL played a role in the youth vaping problem is not vague and the witness understood it and answered it. His foundation is being an investor and board member at JLI from prior to launch up to the present. He had a front seat view to the crisis. He has | **Sustained**. The question asks the witness to speculate and calls for expert testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | testified about his familiarity with the various data sets including the NYTS data when he answered the prior questions about when the company first learned of the youth problem (See Defendants' own counter designations at 251:2-8). See also 252:8-19 of Plaintiff's designations above. In answering the question he admits that in 2017 and 2018 there was a lot of JUUL use by youth. Clearly he is not speculating. There is no risk of juror confusion or undue prejudice. | |
| 70. | Page 00360:<br>18: THE WITNESS: What I would say<br>19: to that is that there was a lot of --<br>20: per the data, a lot of JUUL product<br>21: used by youth in -- in the -- in 2017<br>22: and 2018. | Objecting Party's Position:<br>Vague and ambiguous (form, "the youth vaping problem"); Calls for Speculation (form); Lacks Foundation/FRE 602; FRE 401/402; FRE 403. Testimony calls for witness to speculate about cause of "the youth vaping problem" without any adequate foundation; this is topic for expert testimony, witness's personal views are not relevant and a waste of time and unfairly prejudicial.<br><br>Proposing Party's Position:<br>The question about whether JUUL played a role in the youth vaping problem is not vague and the witness understood it and answered it. His foundation is being an investor and board member at JLI from prior to launch up to the present. He had a front seat view to the crisis. He has testified about his familiarity with the various data sets including the NYTS data when he answered the prior questions about when the company first learned of the youth problem | **Sustained**. The question asks the witness to speculate and calls for expert testimony. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | (See Defendants' own counter designations at 251:2-8). See also 252:8-19 of Plaintiff's designations above. In answering the question he admits that in 2017 and 2018 there was a lot of JUUL use by youth. Clearly he is not speculating. There is no risk of juror confusion or undue prejudice. | |
| 71. | Page 00361: 06: Q. Do you admit that JUUL's 07: flavors appealed to youth? 08: MR. GUZMAN: Objection. 09: THE WITNESS: My answer is 10: actually JUUL's flavor profiles are 11: meant to appeal to smokers who want to 12: switch from cigarettes, and they might 13: have additionally appealed to some 14: youth. But in my view, it was 15: designed for adult smokers. 16: QUESTIONS BY MS. SHARP: 17: Q. So not -- the flavors didn't 18: present a major issue as it relates to the 19: youth vaping problem? Is that your 20: testimony? | Objecting Party's Position: Vague and ambiguous (form, "a major issue," "the youth vaping problem"); Lacks Foundation/FRE 602; Misstates prior testimony (misleading). Witness lacks foundation to offer an opinion on whether flavors "present a major issue as it relates to the youth vaping problem" and questioner mischaracterizes prior answer. There is no evidence which suggests Mr. Valani had a role in the "decision to have JUUL flavors," that the board voted on JUUL flavors, or that Mr. Valani was involved in the development of JUUL flavors. The data sets referenced by Plaintiff relate to youth use of flavors generally and not JUUL flavors specifically (in some years, the data did not include information re flavors at all). To the extent that counsel is attempting to "summarize" prior testimony, that testimony speaks for itself and this designation is unnecessarily cumulative.<br><br>Proposing Party's Position: Valani has more than an adequate foundation to testify whether JUUL's flavors appealed to youth. He was | **Sustained** (361:17-362:7). The examiner misstates the witness' testimony.<br><br>**Overruled** as to other objections. The question is not vague or ambiguous. Mr. Valani also has foundation to testify as he was a voting board member pf JLI. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | directly involved as a voting board member in the decision to have JUUL flavors. Moreover. His foundation is being an investor and board member at JLI from prior to launch up to the present.   He has testified about his familiarity with the various data sets including the NYTS data when he answered the prior questions about when the company first learned of the youth problem (See Defendants' own counter designations at 251:2-8).  See also 252:8-19 of Plaintiff's designations above.   In answering the question he admits that in 2017 and 2018 there was a lot of JUUL use by youth.<br><br>361:17-20 - There was no misstatement of testimony only an attempt to summarize a very long answer and the witness corrected the record in the answer so the objection was self-cured. | |
| 72. | Page 00361:<br>23:  HE WITNESS: Yeah, I did not<br>24: say that.<br>25: I do think that flavors<br><br>Page 00362:<br>01:  typically have a major role, but I<br>02: think that the flavors were meant to<br>03: appeal to adult smokers that wanted to<br>04: switch from smoking. | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form, "a major issue," "the youth vaping problem"); Lacks Foundation/FRE 602; Misstates prior testimony (misleading). Witness lacks foundation to offer an opinion on whether flavors "present a major issue as it relates to the youth vaping problem" and questioner mischaracterizes prior answer.  There is no evidence which suggests Mr. Valani had a role in the "decision to have JUUL flavors," that the board voted on JUUL flavors, or that Mr. Valani was involved in the development of JUUL flavors.  The | **Sustained** (361:17-362:7).  The examiner misstates the witness' testimony.<br><br>**Overruled** as to other objections. The question is not vague or ambiguous.  Mr. Valani also has foundation to testify as he was a voting board member pf JLI. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 05: If there's a problem of youth 06: abuse, then I think, you know, that's 07: the root of your question. | data sets referenced by Plaintiff relate to youth use of flavors generally and not JUUL flavors specifically (in some years, the data did not include information re flavors at all). To the extent that counsel is attempting to "summarize" prior testimony, that testimony speaks for itself and this designation is unnecessarily cumulative.<br><br>Proposing Party's Position:<br>Valani has more than an adequate foundation to testify whether JUUL's flavors appealed to youth. He was directly involved as a voting board member in the decision to have JUUL flavors. Moreover. His foundation is being an investor and board member at JLI from prior to launch up to the present. He has testified about his familiarity with the various data sets including the NYTS data when he answered the prior questions about when the company first learned of the youth problem (See Defendants' own counter designations at 251:2-8). See also 252:8-19 of Plaintiff's designations above. In answering the question he admits that in 2017 and 2018 there was a lot of JUUL use by youth.<br><br>361:17-20 - There was no misstatement of testimony only an attempt to summarize a very long answer and the witness corrected the record in the answer so the objection was self-cured. | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 73. | Page 00362:<br>09: Q. Do you admit that the company<br>10: and the board could have taken more steps to<br>11: minimize youth access to JUUL? | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form as to "more steps" and "minimize youth access to Juul")<br><br><u>Proposing Party's Position:</u><br>There is nothing vague about asking Valani if the company and the board could have taken more steps to minimize youth access. The witness understood the question and answered it. | **Overruled**. The question is not vague and ambiguous. |
| 74. | Page 00362:<br>15: THE WITNESS: I -- I think the<br>16: company can always do more. Every<br>17: day. | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form as to "more steps" and "minimize youth access to Juul")<br><br>Also, compound ("company" and "the board")<br><br><u>Proposing Party's Position:</u><br>There is nothing vague about asking Valani if the company and the board could have taken more steps to minimize youth access. The witness understood the question and answered it. | **Overruled**. The question is not vague and ambiguous. |
| 75. | Page 00375:<br>16: Q. Let's pull up Tab 73, please. | <u>Objecting Party's Position:</u><br>Foundation/FRE 602; Hearsay (Rule 802); hearsay within hearsay. Exhibit 40091 contains an excerpt from a Wall Street Journal article containing statements from the US Surgeon General, and summarizing additional statements from industry advocate groups and the CDC, all of which are offered for their truth. This document is not a business record because it is not a record of a regularly conducted activity. | **Sustained**. The examiner's questions about statements made in a WSJ article appear to merely elicit testimony about the truth of the matter asserted in the article, and not for a non-hearsay purpose. To the extent the parties seek a ruling on the admissibility of the referenced exhibit itself, the Special Master |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Any attempt to use this document for impeachment is improper and Plaintiff mischaracterizes Mr. Valani's prior testimony regarding what he knew and understood regarding youth use of JUUL products.  Mr. Valani previously testified that he didn't recall exact dates but personally became aware of reports of youth using JUUL in 2017 (254:20-255:14).  This article from 2016 does not mention JUUL (it discusses e-cigarette use generally) and it is not inconsistent with Mr. Valani's prior testimony.  Furthermore, the 2016 Surgeon General report cannot be used to impeach Mr. Valani's testimony regarding youth use in 2017 because the 2016 SG report published data for 2015, which likely did not even include JUUL because the product was launched in the middle of 2015.  Thus, any reports from the SG in 2016 that youth use of e-cigarettes has increased pertain to a different time period when JUUL was not even on the market.  They do not indicate, as Plaintiff claims, that data was available suggesting youth use was increasing in 2017.  In addition, no foundation is laid for the report -- the witness is not asked if he is familiar with the report or the data, nor is he shown the actual report or the data.  The witness is never asked if his testimony is inconsistent with the data, in fact, when he asks to see the report, counsel refuses to show it to him (see 377:5-14).  This is an improper impeachment and it is | makes no finding as that exceeds the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | problematic and misleading to misrepresent the undisputed data regarding youth use to the jury.<br><br>Plaintiff's hearsay exception arguments are meritless. The excerpt from the WSJ article is not an adoptive admission because Mr. Valani does not express any opinions as to the truthfulness of the numerous statements made in the article, nor does he indicate his assent or manifest an adoption or belief. Mr. Valani simply sends a link to the article and a short excerpt of the article with the subject line "no subject." The cases cited by Plaintiff are inapposite and Plaintiff's recitation of the law is misleading. The law in the 9th Circuit is clear that merely forwarding an article is insufficient to constitute adoption -- Plaintiff's own cases make this very point. See, e.g., Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) ("Where, however, a party forwards a document while acting as a mere messenger, this does not constitute an adoption....it is well settled there must be evidence of adoption 'beyond mere possession'"); Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (adoptive admission where employee "copied the entire body of [the] internal memorandum into her e-mail" and prefaced it with a statement indicating that the memorandum was truthful). | |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | The exhibit is also inadmissible for non-hearsay purposes, and it is clear that the statements read into the record on p. 376-377 from the article are being read for their truth and not for notice/knowledge/effect on listener as Plaintiff claims.<br><br>Proposing Party's Position:<br>The email from Valani to the head of science Gal Cohen is a non-hearsay business record not offered for the truth of the matter asserted.  This document is used to impeach Mr. Valani who testified that he and JLI first learned of youth uptake of e cig use I that JUUL was being used by youth was in 2017.  (See testimony at 254-255).  The 2016 email being sent to Valani quotes the Surgeon General calling surging e cig use by youth and young adults a major public health concern. This is relevant to notice, knowledge,  intent, and impeachment.  There is nothing argumentative about the exchange and there is clearly a foundation since the witness is on the email.<br><br>The hearsay objection should be overruled for the following additional reasons.  The excerpts from the article are admissible for the truth of the matters asserted in it as an adoptive admission (from Valani to entire Board, CEO Tyler Goldman and Gal Cohen - Chief of Scientific and Regulatory Affairs) FRE Rule 801(d)(2)(B) permits a court to allow into evidence a statement as non-hearsay if "(A) the statement is offered against a party and is . . . (B) | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
|     |                                     | a statement of which the party has manifested an adoption or belief in its truth." United States v. Hove, 52 F.3d 233, 236 (9th Cir. 1995). Forwarding a excerpts newspaper article in with statements suggesting its contents are accurate is such a manifestation of belief. See, e.g., Sea-Land Service, Inc. v. Lozen International, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (email forwarding third party memo with inculpatory statement held admissible as non-hearsay adoptive admission, even if forwarding author failed to review entire memo); Transbay Auto Serv. v. Chevron USA Inc., 807 F.3d 1113, 1119 (9th Cir. 2015) (use of third party report constitutes an adoption of the statements contained therein); Siebert v. Gene Sec. Network, Inc., 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (letter forwarding third party report adoptively admitted report's contents); see also Wagstaff v. Protective Apparel Corp., 760 F.2d 1074, --- (10th Cir. 1985) (forwarding of newspaper articles by Defendant constituted adoptive admission of third party statements in those articles); United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) (context and content of certain e-mails demonstrated Defendant had "manifested an adoption or belief" in the truth of the statements of other people as Defendants forwarded their e-mails); Forest Labs., Inc. v. Ivex Pharms., Inc., 237 F.R.D. 106, 2006 U.S. Dist. LEXIS 50752 (D. Del. 2006) (overruling plaintiffs' objection to |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
|     |                                      | exhibit, newspaper article, and accompanying testimony, on ground that witness, as executive of corporate defendant, had adoptively admitted contents of newspaper article).<br><br>Here, the statements from Mr. Valani is sending an Email in December 2016 to the entire Board, the then CEO Tyler Goldman and Gal Cohen—are attributable to Defendant JLI, see Forest Labs, id. regarding the Surgeon General's report on the surging use of e-cigarettes among children. Even if the Article were not an adoptive admission, it would be admissible for non-hearsay purposes, such as establishing Defendants' knowledge, early notice and the effect on the listener.  See Martin v. City of Indianapolis, 192 F. 3d 608, 613 (7th Cir. 1999) (newspaper article admissible for non-hearsay purpose of establishing public perception of artwork); Porter v. Lear, 751 Fed. Appx. 422, 433 (5th Cir. 2018) (out-of-court statements admissible for non-hearsay purpose of establishing knowledge of those statements); Rivera v. Inc. Vill. of Farmingdale, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (newspaper articles admissible to prove notice).  See, e.g., United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991) (out of court statements admissible to establish effect on listener); Yarborough v. City of Warren, 383 F. Supp. 676, 682 (E.D. Mich. 1974) (newspaper article admissible to provide "historical context"); see also |        |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | In re Korean Ramen Antitrust Litig., 281 F. Supp. 3d 892, 936 (N.D. Cal. 2017) (newspaper article admissible to prove acts in furtherance of conspiracy).<br><br>The email is a business record of regularly conducted activity .. its board members and executives at the company communicating about the Surgeon General's statements that in 2016 there was a surging ECigarette youth by children.  If not a business purpose.. why else would these executives and board members be circulating and communicating about this?<br><br>Furthermore, the document is being used to properly impeach Valani who repeatedly testified to the jury that there was little knowledge of youth use until 2017, after this email. | |
| 76. | Page 00376:<br>09: Q.  All right. Now, Mr. Valani,<br>10: this is a December 8, 2016 e-mail from you to<br>11:  the board at PAX, which was the name of the<br>12:  company you were on the board of at that<br>13: time, tyler@PAX, Gal Cohen.<br>14: A. I see this.<br>15:  Q.     Thank you.<br>16:  And this is a blurb from an | <u>Objecting Party's Position:</u><br>Hearsay (Rule 802); hearsay within hearsay.  Same as above.<br><br><u>Proposing Party's Position:</u><br>The email from Valani to the head of science Gal Cohen is a non-hearsay business record not offered for the truth of the matter asserted.   This document is used to impeach Mr. Valani who testified that he and JLI first learned of youth uptake of e cig use I that JUUL was being used by youth was in 2017.  (See testimony at 254-255).  The 2016 email being sent to Valani quotes the Surgeon General calling surging e cig use by youth and young adults a major public | **Sustained**.  The examiner's questions about statements made in a WSJ article appear to merely elicit testimony about the truth of the matter asserted in the article, and not for a non-hearsay purpose.  To the extent the parties seek a ruling on the admissibility of the referenced exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
| | 17: article that you linked, and it says at the<br>18: top, "The US Surgeon General called surging<br>19: e-cigarette use by children and young adults,<br>20: quote, 'a major public health concern,' close<br>21: quote, and recommended increased regulation<br>22: and taxation of the products in a report set<br>23: to be released Thursday. The report joins a<br>24: public debate about the potential benefits<br>25: and risk of the e-cigarettes."<br><br>Page 00377:<br>01: So this is the Surgeon General<br>02: in 2016 noting surging e-cigarette use by<br>03: children, right?<br>04: A.    Yes, I do. | health concern. This is relevant to notice, knowledge, intent, and impeachment. There is nothing argumentative about the exchange and there is clearly a foundation since the witness is on the email. No testimony is misstated. Plaintiff removes 377:5 - 8. (end at 377:4) | |
| 77. | Page 00564:<br>04: Q.    And this is in 2000 -- can you<br>05:  remember offhand when it was that you first | Objecting Party's Position:<br>[FRE 401/402; FRE 403; MIL 8: Evidence or argument of purported historical misconduct regarding combustible cigarettes is irrelevant to B.B.'s claims, which are based on conduct beginning in 2017, and are | **Overruled**.  The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury. Moreover, the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 06:  went to go meet with tobacco companies to see 07:  if they were interested in partnering with 08:  Ploom? 09:  A. It feels like 2008 or 2009. 10:  (Valani Exhibit 40103 marked 11:  for identification.) 12:  QUESTIONS BY MR. GDANSKI: 13:  Q.  All right. Let's take a look, 14:  please, at Document 84. | only intended to inflame and prejudice the jury. This testimony goes beyond background.] FRE 401/402; FRE 403.Testimony about 2009 meeting between Ploom and Altria over 6 years before JUUL was launched is not relevant to B.B.'s claims and is unfairly prejudicial and a waste of time. The meetings clearly relate to the Ploom product, not JUUL. This is a sideshow; JLI will be forced to respond to with further explanation regarding this meeting which has no connection to the marketing or design of JUUL products over 6 years later, or the Altria investment more than 9 years later. Hearsay (Rule 802); Hearsay within hearsay (564:10-14).  Exhibit 40103 is an email between Chris Skillin, a consultant for Ploom, and individuals at Altria.  It is not a business record because it is not a record of a regularly conducted activity.  Any attempt to use exhibit 40103 to refresh the witness' recollection is improper because counsel did not: (1) establish that the witness does not remember something, (2) show that the witness previously remember, (3) establish that there is something that would help the witness remember, or (4) ask if the witness' recollection has been refreshed.  In any event, an attempt to refresh the witness' recollection under FRE 612 would not entitle counsel to display or read exhibit 40103 into the record.  This email does not "impeach" JLI's | examiner is using the exhibit to refresh the witness' recollection on when the first meeting occurred between Ploom and Altria. The Special Master notes that Defendants have preserved their objections on MIL 8.  Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40103. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | statements that it is not "Big Tobacco"; in any event, Mr. Valani is not a corporate representative and he is not being "impeached" on behalf of the company<br><br>Proposing Party's Position:<br>There is no hearsay in 564:4-9.. the question was when it was that Valani went to meet with tobacco companies to see if they were interested in partnering with Ploom.<br><br>40103  - is a business email not offered for the truth of the matter asserted but offered to refresh the witness's recollection about the date of a meeting.  At 564:9.. the witness was unsure whether the first meeting occurred in 2008 or 2009.   The email establishes a meeting with Altria on 2009 in Richmond Virginia and helped the witness recall as much.<br><br>The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly relevant to motive, intent and state of mind, and is relevant to the conspiracy and aiding and abetting claims.  There is no risk of juror confusion or undue prejudice. | |
| 78. | Page 00564:<br>19:  DAN LAWLOR: This is<br>20:  Exhibit 40103.<br>21: QUESTIONS BY MR. GDANSKI: | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.] | **Overruled**.  The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 22:  Q.     Thank you. | Hearsay (Rule 802); Hearsay within hearsay.  Same as above.<br><br>Proposing Party's Position:<br>There is no hearsay in 564:4-9.. the question was when it was that Valani went to meet with tobacco companies to see if they were interested in partnering with Ploom.<br><br>40103  - is a business email not offered for the truth of the matter asserted but offered to refresh the witness's recollection about the date of a meeting.  At 564:9.. the witness was unsure whether the first meeting occurred in 2008 or 2009.   The email establishes a meeting with Altria on 2009 in Richmond Virginia and helped the witness recall as much.<br><br>The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly relevant to motive, intent and state of mind, and is relevant to the conspiracy and aiding and abetting claims.  There is no risk of juror confusion or undue prejudice. | by the jury. Moreover, the examiner is using the exhibit to refresh the witness' recollection on when the first meeting occurred between Ploom and Altria.<br><br>The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8. Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40103. |
| 79. | Page 00565:<br>14:  this.  If you go to the second page, you'll<br>15: see that there is an e-mail from March 27,<br>16:  2009, and there's attendees from Ploom at a | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.Testimony about 2009 meeting between Ploom and Altria over 6 years before JUUL was launched is not relevant to B.B.'s | Overruled.  The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury. Moreover, the examiner is using the exhibit to refresh the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | 17: meeting, and it's Adam Bowen, James Monsees, 18: Riaz Valani, Gal Cohen. 19: Do you see that? 20: A. Yes. 21: Q. Okay. Do you remember going to 22: meet in 2009 with people at Altria in 23: Richmond, Virginia? 24: A. I do. | claims and is unfairly prejudicial and a waste of time. The meetings clearly relate to the Ploom product, not JUUL. This is a sideshow; JLI will be forced to respond to with further explanation regarding this meeting which has no connection to the marketing or design of JUUL products over 6 years later, or the Altria investment more than 9 years later.<br><br>Hearsay (Rule 802); Hearsay within hearsay. Same as above.<br><br>Proposing Party's Position:<br>There is no hearsay in 564:4-9.. the question was when it was that Valani went to meet with tobacco companies to see if they were interested in partnering with Ploom.<br><br>40103 - is a business email not offered for the truth of the matter asserted but offered to refresh the witness's recollection about the date of a meeting. At 564:9.. the witness was unsure whether the first meeting occurred in 2008 or 2009. The email establishes a meeting with Altria on 2009 in Richmond Virginia and helped the witness recall as much.<br><br>The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly relevant to motive, intent and state of mind, and is relevant to the conspiracy and aiding and abetting | witness' recollection on when the first meeting occurred between Ploom and Altria.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40103. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | claims. There is no risk of juror confusion or undue prejudice. | |
| 80. | Page 00571:<br>11: Q. In 2009, you wanted to partner<br>12: with one of the big tobacco companies, right?<br>13: A. These were exploratory<br>14: meetings, so I don't know that I had a clear<br>15: sense of intent.<br>16: Q. All right. If we could take a<br>17: look at number 159, please. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403. Testimony about 2009 meetings between Ploom and certain combustible cigarette companies is not relevant to B.B.'s claims and is unfairly prejudicial.<br><br>Proposing Party's Position:<br>None provided | **Overruled**. The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury. Moreover, the examiner is using the exhibit to refresh the witness' recollection on when the first meeting occurred between Ploom and Altria.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40103. |
| 81. | Page 00571:<br>18: DAN LAWLOR: Exhibit 40104.<br>19: (Valani Exhibit 40104 marked<br>20: for identification.)<br>21: QUESTIONS BY MR. GDANSKI:<br>22: Q. Thank you.<br>23: And take a look at it. You'll<br>24: see it's a string of e-mails including you, | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Hearsay (Rule 802). Portions of Exhibit 40104 contain statements by Chris Skillin, a consultant for Ploom, and are inadmissible hearsay. The email is not a business record because it is not a record of a regularly conducted activity. It is being offered for the truth (i.e. the | **Sustained**. While testimony about Ploom's initial meeting with Altria is relevant to the parties' relationship, Ploom/JLI's prior relationships with other tobacco companies is not relevant to Plaintiff's claims and have minimal relevance at best. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25:  Adam Bowen and Gal Cohen.<br><br>Page 00572:<br>01:  Do you see that?<br>02:  A.   Yes.<br>03:  Q.     And the subject matter is<br>04: "Big 8 status."<br>05:  Right?<br>06: A. I do see that.<br>07: Q.     And the date is from May 19,<br>08: 2009.<br>09:  Do you see that?<br>10:  A.     I do. | fact of the meetings) and not state of mind, intent, or knowledge.<br><br>FRE 401/402; FRE 403.Testimony about 2009 meetings between Ploom and certain combustible cigarette companies is  not relevant to B.B.'s claims and is unfairly prejudicial and waste of time. The meetings clearly relate to the Ploom product, not JUUL. This is a sideshow; JLI will be forced to respond to with further explanation regarding these 2009 meetings which have no connection to the marketing or design of JUUL products over 6 years later, or the Altria investment more than 9 years later.  The remaining statements cited by Plaintiff in an apparent attempt to relitigate MSJ and MIL motions are misquoted and taken out of context.<br><br>The statements in this email do not "impeach" JLI's statements that it is not "Big Tobacco,"; in any event, Mr. Valani is not a corporate representative and he is not being "impeached" on behalf of the company or Altria.  Plaintiff is not asserting RICO conspiracy and aiding and abetting claims in the B.B. trial, so this testimony is not relevant to those claims.   Nothing in this email "impeaches" or contradicts Mr. Valani's testimony that the 2009 meetings were exploratory.<br><br>Proposing Party's Position:<br>JLI and its founders and directors including Valani used youth-oriented marketing and kid-friendly flavors to build a youth nicotine addiction | The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8.  Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40104. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | machine with potential for limitless growth. The sole purpose was to attract investment from a cigarette company, and Altria—in desperate need of new customers—was the perfect candidate. The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly relevant to motive, intent and state of mind and is relevant to the conspiracy and aiding and abetting claims. To assess Plaintiff's claims against Altria, the jury must understand why Altria encouraged, assisted, and ultimately invested in JLI. See Pl.'s Opp. to Altria Def. MSJ (ECF. 2784) at 2-6. Relatedly, in order to assess JLI's defense that the company was driven by its mission to eliminate the cigarette, the jury must understand JLI's desire to position itself as a potential acquisition for a traditional combustible cigarette company. See, e.g., Ex. 32 to Plaintiff's response to MIL 8 (Bowen Dep. Ex. 11139) (Bowen providing an internal update on the status of the company's talks with each of the "Big 8" leading U.S. cigarette companies); Ex. 33 (JLI00380274) (Monsees in 2016: "Soon enough [JUUL's success] will catch the eyes of big tobacco…"). 40104 is an email between Valani and the other board members and founders used to impeach his testimony that the meetings with Big | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Tobacco in 2009 was just "exploratory" and that he did not have a clear sense of intent. The email is a business record and is not only used to impeach but is used to establish state of mind, intent and knowledge. There is no risk of juror confusion or undue prejudice.<br><br>As to Defendants 'contention that there is no RICO claim at issue - there is however a conspiracy claim that the jury will consider. | |
| 82. | Page 00572:<br>21: Q.    And then Adam Bowen at that<br>22: time lists out as early as 2009 the status of<br>23: the conversations and meetings with Philip<br>24: Morris International, British American<br>25: Tobacco Company, Imperial Tobacco company,<br><br>Page 00573:<br>01: Japan Tobacco company, Swedish Match tobacco<br>02:  company, R.J. Reynolds Tobacco Company,<br>03: Lorillard Tobacco Company, and Altria, which | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Misleading (counsel misquotes the document and adds "tobacco company" to the end of each company name); FRE 401/402; FRE 403.  Same as above.<br><br>Proposing Party's Position:<br>JLI and its founders and directors including Valani used youth-oriented marketing and kid-friendly flavors to build a youth nicotine addiction machine with potential for limitless growth. The sole purpose was to attract investment from a cigarette company,  and Altria—in desperate need of new customers—was the perfect candidate. The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly | **Sustained**.  While testimony about Ploom's initial meeting with Altria is relevant to the parties' relationship, Ploom/JLI's prior relationships with other tobacco companies is not relevant to Plaintiff's claims and have minimal relevance at best.<br><br>The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8.  Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40104. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: is the owner of Philip Morris USA, the maker<br>05: of Marlboro, right?<br>06: A.   Yeah, I don't think they all<br>07: have "tobacco company" at the end of their<br>08: names.<br>09: Q.   Well, they're all tobacco<br>10: companies, right?<br>11: A.   They are. | relevant to motive, intent and state of mind and is relevant to the conspiracy and aiding and abetting claims.   To assess Plaintiff's claims against Altria, the jury must understand why Altria encouraged, assisted, and ultimately invested in JLI. See Pl.'s Opp. to Altria Def. MSJ (ECF. 2784) at 2-6. Relatedly, in order to assess JLI's defense that the company was driven by its mission to eliminate the cigarette, the jury must understand JLI's desire to position itself as a potential acquisition for a traditional combustible cigarette company. See, e.g., Ex. 32 to Plaintiff's response to MIL 8 (Bowen Dep. Ex. 11139) (Bowen providing an internal update on the status of the company's talks with each of the "Big 8" leading U.S. cigarette companies); Ex. 33 (JLI00380274) (Monsees in 2016: "Soon enough [JUUL's success] will catch the eyes of big tobacco…").<br><br>40104 is an email between Valani and the other board members and founders used to impeach his testimony that the meetings with Big Tobacco in 2009 was just "exploratory" and that he did not have a clear sense of intent.  The email is a business record and is not only used to impeach but is used to establish state of mind, intent and knowledge.  There is no risk of juror confusion or undue prejudice.<br><br>As to Defendants 'contention that there is no RICO claim at issue - | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | there is however a conspiracy claim that the jury will consider. | |
| 83. | Page 00574:<br>12: It's true at some point in time<br>13: Ploom had a relationship with Japan Tobacco,<br>14: right?<br>15: A. Yeah, so not coming out of this<br>16: series of discussions, but -- yeah. But in<br>17: 2010, Japan Tobacco did enter an arrangement<br>18: with -- with Ploom.<br>19: Q. Okay. And what was the<br>20: arrangement?<br>21: A. They invested some capital as a<br>22: minority investor in Ploom, and they agreed<br>23: to distribute Ploom's product line<br>24: internationally if the products were<br>25: developed. | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403. Same as above; Ploom's relationship with Japan Tobacco is irrelevant to B.B.'s claims, the marketing and design of JUUL products, and the Altria investment. It is prejudicial and a waste of time.<br><br><u>Proposing Party's Position:</u><br>JLI and its founders and directors including Valani used youth-oriented marketing and kid-friendly flavors to build a youth nicotine addiction machine with potential for limitless growth. The sole purpose was to attract investment from a cigarette company, and Altria—in desperate need of new customers—was the perfect candidate. The fact that JLI was meeting with Altria and was courting other Big Tobacco companies as early as 2009 as reflected in this email impeaches its statements publicly that it was not "Big Tobacco" and is directly relevant to motive, intent and state of mind and is relevant to the conspiracy and aiding and abetting claims. To assess Plaintiff's claims against Altria, the jury must understand why Altria encouraged, assisted, and ultimately invested in JLI. See Pl.'s Opp. to Altria Def. MSJ (ECF 2784) at 2-6. Relatedly, | **Sustained**. While testimony about Ploom's initial meeting with Altria is relevant to the parties' relationship, Ploom/JLI's prior relationships with other tobacco companies is not relevant to Plaintiff's claims and have minimal relevance at best.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40104. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | in order to assess JLI's defense that the company was driven by its mission to eliminate the cigarette, the jury must understand JLI's desire to position itself as a potential acquisition for a traditional combustible cigarette company. See, e.g., Ex. 32 to Plaintiff's response to MIL 8 (Bowen Dep. Ex. 11139) (Bowen providing an internal update on the status of the company's talks with each of the "Big 8" leading U.S. cigarette companies); Ex. 33 (JLI00380274) (Monsees in 2016: "Soon enough [JUUL's success] will catch the eyes of big tobacco…").<br><br>40104 is an email between Valani and the other board members and founders used to impeach his testimony that the meetings with Big Tobacco in 2009 was just "exploratory" and that he did not have a clear sense of intent. The email is a business record and is not only used to impeach but is used to establish state of mind, intent and knowledge. There is no risk of juror confusion or undue prejudice.<br><br>As to Defendants 'contention that there is no RICO claim at issue - there is however a conspiracy claim that the jury will consider. | |
| 84. | Page 00580:<br>23: Q.    Okay. So from 2000 -- from<br>24: 2008 or '9 going forward into the present | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form, question conflates meetings regarding Ploom | **Sustained**. While testimony about Ploom's initial meeting with Altria is relevant to the parties' relationship, Ploom/JLI's prior relationships with other tobacco companies |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 25: day, essentially, JUUL has been constantly in<br><br>Page 00581:<br>01: different relationships with the tobacco<br>02: industry, true? | product with JUUL in an attempt to mislead the jury by conflating JLI's conduct with the combustible cigarette industry); Misstates prior testimony (misleading, JUUL did not exist in 2008, these discussions are between Ploom and certain combustible cigarette manufacturers); Vague and ambiguous (form, "constantly," "different relationships," "tobacco industry"); Assumed facts not in evidence (form, JUUL did not exist in 2008 and has not been in "constantly different relationships with the tobacco industry"); Lacks Foundation/FRE 602 (question asks about "JUUL").<br><br>FRE 401/402; FRE 403. Same as above.<br><br><u>Proposing Party's Position:</u><br>See prior response.<br><br>See Plaintiff's response to MIL 8.<br><br>There is nothing argumentative or vague about asking whether from 2008 until the present day JLI had been constantly in a relationship with the tobacco industry. The witness has the necessary foundation because he is a board member and has been at numerous meetings on behalf of JLI with tobacco companies since 2009 including Altria. This is clearly relevant to intent and state of mind. There is no risk of juror confusion or undue prejudice. | is not relevant to Plaintiff's claims and have minimal relevance at best.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. Finally, the admissibility of exhibits will be addressed by Judge Orrick within the context of trial and the Special Master makes no ruling on the admissibility of Exhibit 40104. |
| 85. | Page 00581 | <u>Objecting Party's Position:</u> | **Sustained** (581:6-7). While testimony about |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 06: THE WITNESS: Yeah, I don't 07: agree with that statement. 08: QUESTIONS BY MR. GDANSKI: 09: Q. Well, in 2009 you're meeting 10: with them to try to see about possible 11: partnerships or working together, right? | [Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form, "you," "them"); Assumed facts not in evidence (form, that Valani attended all meetings with "them"); Lacks Foundation/FRE 602. Same as above.<br><br>FRE 401/402; FRE 403. Same as above.<br><br><u>Proposing Party's Position:</u><br>See prior response.<br><br>See Plaintiff's response to MIL 8.<br><br>There is nothing argumentative or vague about asking whether from 2008 until the present day JLI had been constantly in a relationship with the tobacco industry. The witness has the necessary foundation because he is a board member and has been at numerous meetings on behalf of JLI with tobacco companies since 2009 including Altria. This is clearly relevant to intent and state of mind. There is no risk of juror confusion or undue prejudice. | Ploom's initial meeting with Altria is relevant to the parties' relationship, Ploom/JLI's prior relationships with other tobacco companies is not relevant to Plaintiff's claims and have minimal relevance at best.<br><br>**Overruled** (581:9-11). The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 86. | Page 00581: 14: THE WITNESS: 2009, there were 15: some exploratory discussions that were 16: held. | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague | **Overruled** (581:14-20). The meeting between Ploom and Altria in 2009 is relevant to the formation of the parties' relationship and can be given appropriate weight |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 17:  QUESTIONS BY MR. GDANSKI:<br>18: Q.    2018, Altria invested<br>19: $12.8 billion in the company, right?<br>20: A.    Yes.<br>21: Q.    In 2017, you were negotiating<br>22:  with R.J. Reynolds Tobacco Company, right?<br>23: A.    I talked to them. | and ambiguous (form); Assumed facts not in evidence (form); Lacks Foundation/FRE 602.  Same as above.<br><br>FRE 401/402; FRE 403. Same as above, in addition, misleading and factually inaccurate to suggest there is a connection between 2009 Ploom meetings and the Altria investment in 2018<br><br><u>Proposing Party's Position</u>:<br>See prior response.<br><br>See Plaintiff's response to MIL 8.<br><br>There is nothing argumentative or vague about asking whether from 2008 until the present day JLI had been constantly in a relationship with the tobacco industry.  The witness has the necessary foundation because he is a board member and has been at numerous meetings on behalf of JLI with tobacco companies since 2009 including Altria. This is clearly relevant to intent and state of mind. There is no risk of juror confusion or undue prejudice. | by the jury. In addition, the amount of money Altria invested in JLI is relevant to Plaintiff's claims.  The question does not misstate prior testimony, does not assume facts not in evidence, and is not argumentative or misleading.<br><br>**Sustained** (581:21-23). JLI's negotiations with other tobacco companies is not relevant to Plaintiff's claims.<br><br>The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8. |
| 87. | Page 00582:<br>02: Q.    About an investment in JUUL,<br>03:  right?<br>04: A.    Yes, we talked to them.<br>05: Q.    2010, you took money from Japan<br>06:  Tobacco, right? | <u>Objecting Party's Position</u>:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form), Question asks "2010, you took money from Japan Tobacco, right?" and is argumentative, vague and misleading to the extent it implies Mr. Valani | **Sustained** (582:2-9). JLI's negotiations with other tobacco companies is not relevant to Plaintiff's claims.<br><br>**Overruled** as to remaining designations. JLI's meetings with Alia and Philip Morris in 2019 are relevant to Plaintiff's claims. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | personally "took" money from Japan Tobacco<br><br>FRE 401/402; FRE 403. Same as above; in addition, misleading and factually inaccurate to suggest there is a connection between 2010 JTI investment in Ploom and later discussions between JLI and Altria<br><br>Proposing Party's Position:<br>See prior response. There is nothing argumentative, or vague about these basis questions like "2010, you took money from Japan Tobacco, right?" or 2019, you met with Altria and Philip Morris International, right?" Nor does this assume facts, not in evidence .. it elicits the evidence properly. | The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 88. | Page 00582:<br>09: THE WITNESS: Yes.<br>10: QUESTIONS BY MR. GDANSKI:<br>11: Q.   2019, you met with Altria and 12: Philip Morris International, right?<br>13: A.   Yes. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background. MIL 9: discussions re PMI should be excluded]<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form). Same as above.<br><br>FRE 401/402; FRE 403. Same as above.<br><br>Proposing Party's Position:<br>See prior response. There is nothing argumentative, or vague about these basis questions like "2010, you took money from Japan Tobacco, right?" or 2019, you met with Altria and | **Sustained** (582:2-9). JLI's negotiations with other tobacco companies is not relevant to Plaintiff's claims.<br><br>**Overruled** as to remaining designations. JLI's meetings with Alia and Philip Morris in 2019 are relevant to Plaintiff's claims.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Philip Morris International, right?" Nor does this assume facts, not in evidence .. it elicits the evidence properly. | |
| 89. | Page 00583:<br>14: (Valani Exhibit 40105 marked<br>15: for identification.)<br>16: QUESTIONS BY MR. GDANSKI:<br>17: Q.   Okay. Let's take a look at<br>18: number 161. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Hearsay (Rule 802).  Exhibit 40105 contains multiple hearsay statements from third party investors and consultants including Chris Skillin, Michael Dabney, Tony Kim, and William Edwards, among others. The email is not a business record because it is not a record of a regularly conducted activity.  The email is being offered for the truth; statements from the email are read into the record for their truth (in fact, at one point, counsel reads the email and asks "that's the truth, right?"). Any attempt to use the email for impeach is improper; the statement by Mr. Monsees in the email speculating about what combustible cigarette manufacturers may be thinking does not call into question or contradict Mr. Valani's testimony regarding Ploom's own motivations and his response that Ploom was "absolutely not" talking to combustible cigarette manufacturers in order to help them "maintain the youth culture."<br><br>Proposing Party's Position:<br>At 584 the witness in the most emphatic way denied that Ploom was talking to tobacco companies and | **Overruled**.  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | pitching that the company could help them maintain the youth culture ("Absolutely not.") Exhibit 40105 is an email (a business record) between Valani and Monsees used to impeach the emphatic denial so it is not being presented to prove the truth of the matter but is being used for a non-hearsay purpose to impeach. It is further relevant to state of mind and is thus an exception to hearsay and is directly relevant to motive, and intent and is relevant to the conspiracy and aiding and abetting claims. There is no risk of juror confusion or undue prejudice. | to the Court's ruling on MIL 8. |
| 90. | Page 00584:<br>09:  In 2009, Ploom was negotiating<br>10:  and talking with tobacco companies because<br>11:  there was a recognition within Ploom that<br>12: Ploom could help those companies maintain the<br>13: youth culture market, true? | <u>Objecting Party's Position</u>:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form, misleadingly implies Ploom sought to help combustible cigarette companies "maintain the youth culture market"); Misstates prior testimony (misleading); Vague and ambiguous (form, "there was a recognition within Ploom" "youth culture market"); Assumed facts not in evidence (form, re what was recognized within Ploom); Calls for Speculation (form); Lacks Foundation/FRE 602 (Mr. Valani lacks foundation to testify to why Ploom as a company took certain actions)<br><br>FRE 401/402; FRE 403.  Testimony about 2009 meetings between Ploom and certain combustible cigarette | **Overruled**.  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | companies is not relevant to B.B.'s claims and is unfairly prejudicial and waste of time. The meetings clearly relate to the Ploom product, not JUUL. This is a sideshow; JLI will be forced to respond to with further explanation regarding these 2009 meetings which have no connection to the marketing or design of JUUL products over 6 years later, or the Altria investment more than 9 years later.<br><br>Proposing Party's Position:<br>See prior response and response to 571:18. See plaintiff's response to MIL 8 | To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 91. | Page 00584:<br>16: THE WITNESS: Absolutely not.<br>17: QUESTIONS BY MR. GDANSKI:<br>18: Q.    Okay. Let's take a look at the<br>19: document that we have up on the screen here. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Argumentative (form, misleadingly implies Ploom sought to help combustible cigarette companies "maintain the youth culture market"); Misstates prior testimony (misleading); Vague and ambiguous (form, "there was a recognition within Ploom" "youth culture market"); Assumed facts not in evidence (form, re what was recognized within Ploom); Calls for Speculation (form); Lacks Foundation/FRE 602 (Mr. Valani lacks foundation to testify to why Ploom as a company took certain actions)<br><br>FRE 401/402; FRE 403.  Testimony about 2009 meetings between Ploom | **Overruled.**  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | | and certain combustible cigarette companies is not relevant to B.B.'s claims and is unfairly prejudicial and waste of time. The meetings clearly relate to the Ploom product, not JUUL. This is a sideshow; JLI will be forced to respond to with further explanation regarding these 2009 meetings which have no connection to the marketing or design of JUUL products over 6 years later, or the Altria investment more than 9 years later.<br><br>Proposing Party's Position:<br>See prior response and response to 571:18. See plaintiff's response to MIL 8 | To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 92. | Page 00584:<br>23:  But if you just go to the top,<br>24: do you see at the very top it's a string of<br>25:  e-mails between you, Riaz Valani, and James<br><br>Page 00585:<br>01: Monsees?<br>02:  Do you see that? | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.  Same as above<br><br>Proposing Party's Position:<br>See prior response and response to 571:18. See plaintiff's response to MIL 8 | **Overruled**.  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|--------|
| | | | the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 93. | Page 00585<br>10:  A. I see it. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.  Same as above<br><br>Proposing Party's Position:<br>See prior response and response to 571:18. See plaintiff's response to MIL 8 | **Overruled.**  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 94. | Page 00586:<br>22: Okay. And if we go down on<br>23: this version of the document -- yeah, keep<br>24: going down a little bit. Thank you.<br>25: It's the e-mail from James<br><br>Page 00587:<br>01: Monsees, right there, on November the 10th,<br>02: Tuesday, at ten o'clock.<br>03: Do you see that e-mail?<br>04: A. I do.<br>05: Q. Okay. And you're copied on it<br>06: as a recipient, right?<br>07: Do you see that?<br>08: A.  I am. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403. Same as above<br><br>Proposing Party's Position:<br>See prior response and response to 571:18. See plaintiff's response to MIL 8 | **Overruled.** The examiner's questions are not argumentative nor do they misstate the witness' prior testimony. The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 95. | Page 00590:<br>07: Q.  My question is, when you have<br>08: these meetings with the big 8 tobacco<br>09: companies, one thing that you want to try to<br>10: accomplish is to explain what Ploom brings to<br>11: the table, why Ploom adds value, right?<br>12: A.  Well, the whole purpose behind<br>13: Ploom's existence and Ploom going to see them<br>14: was to show that a product can replace<br>15: cigarettes, and there was a sentiment that<br>16: the original Ploom technology platform would<br>17: be able to do that.<br>18: Q.  Is that what Mr. Monsees writes | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.  Same as above<br><br>Vague and ambiguous (form, "these meetings," "the big 8 tobacco companies," "brings to the table"); Argumentative (form, "is that what Mr. Monsees writes..."); Lack of Foundation/FRE 602 (designated testimony just reads email from James Monsees into the record, which witness did not write and lacks foundation to testify about)<br><br><u>Proposing Party's Position:</u><br>See response to 584:9 | **Overruled**.  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: in the next paragraph?<br>20: A.   Well, why don't you read it. | | as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 96. | Page 00591:<br>03: So go ahead and read, please,<br>04: to this jury what Mr. Monsees wrote to you in<br>05: November of 2009.<br>06: A.   "I think where Ploom comes in<br>07: for them is maintaining the youth culture<br>08: market.  Where do the young Camel Light<br>09: smokers go?  Snus seemed to be an attempt at<br>10: that but didn't play out well in Austin,<br>11: Portland, et cetera, which raises a question:<br>12: Does RAI just want to be a good ole boy<br>13: company who wants to be stamped as the<br>14: innovator" --<br>15: Q.   Let's go back to the left-hand | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.  Same as above<br><br>Argumentative (form, implies that Ploom met with combustible cigarette companies because of Mr. Monsees speculative statement); Misstates prior testimony (misleading, conflates Ploom's reasons with what Mr. Monsees thinks combustible cigarette manufacturers thought); Vague and ambiguous (form); Assumed facts not in evidence (form); Calls for Speculation (form); Lacks Foundation/FRE 602 (designated testimony just reads email from James Monsees into the record, which witness did not write and lacks foundation to testify about)<br><br>Proposing Party's Position:<br>See response to 584:9 | **Overruled**.  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 16: side, please.<br>17: A.    -- "in the brave new tobacco<br>18: world."<br>19: Q.    "The brave new tobacco world."<br>20: That's the truth, right?  Ploom<br>21: came in to help maintain the youth culture<br>22: market for the tobacco industry. | | The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 97. | Page 00592:<br>02: Q.    Is that right?<br>03: A.    No, not my understanding, but I<br>04: do see what James wrote here. | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>FRE 401/402; FRE 403.  Same as above<br><br>Argumentative (form); Misstates prior testimony (misleading); Vague and ambiguous (form); Assumed facts not in evidence (form); Calls for Speculation (form); Lacks Foundation/FRE 602.  Same as above<br><br>Proposing Party's Position:<br>See response to 584:9 | **Overruled.**  The examiner's questions are not argumentative nor do they misstate the witness' prior testimony.  The questions also do not assume facts not in evidence or call for speculation.<br><br>Evidence related to Ploom's first meetings with Altria's is relevant to the formation of the parties' relationship and can be given appropriate weight by the jury.<br><br>Moreover, the examiner in this line of questioning is not eliciting inadmissible hearsay, but instead uses the document to impeach the witness.<br><br>To the extent the parties' seek a ruling on the admissibility of the |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | exhibit itself, the Special Master makes no finding as that exceeds the scope of his appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |
| 98. | Page 00603:<br>23: (Valani Exhibit 40106 marked<br>24: for identification.)<br>25:<br><br>Page 00604:<br>01: QUESTIONS BY MR. GDANSKI:<br>02: Q.   Okay. And let's take a look,<br>03: please, at number 155.<br>04: Remind us who Alexander Asseily<br>05: was.<br>06: A.   He's a friend of mine who was a<br>07: member of the board of directors of the<br>08: company for some time and advisory of the<br>09: company. | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Hearsay (Rule 802).  Exhibit 40106 contains statements from non-Board members, including Alex Asseily who was not a paid formal Board member at this time. The email is being offered for its truth.  At no point does counsel ask Mr. Valani for his understanding of the email, nor does the email itself refer to the advertising practices Plaintiff discusses in her response.  This testimony is introduced prior to asking Mr. Valani about the Altria investment because Plaintiff seeks to draw an improper inference connecting the "shitty" practices of Big Tobacco companies in the 1980s to the Altria investment many decades later.  This exhibit is not being introduced to demonstrate notice/intent, it is being introduced for the truth.<br><br>Lacks Foundation/FRE 602 (designated testimony just reads email from Alex Asseily into the | **Sustained**.  The examiner appears to simply read into the record the content of the exhibit and elicit testimony about the truth of the matter asserted therein, and not for a non-hearsay purpose, such as notice or intent.  To the extent the parties seek a ruling on the admissibility of the exhibit itself, no ruling is made as that exceeds the scope of the Special Master's appointment.<br><br>The Special Master notes that Defendants have preserved their objections to the Court's ruling on MIL 8. |

LARSON
LOS ANGELES

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|-------------------------------------|--------------------|--------|
|     |                                     | record, witness lacks foundation to say what Mr. Asseily intends or means in his email)<br><br>FRE 401/402; FRE 403. This email contains colorful language ("shittiest companies," "shitfit") and risks confusing the jury by conflating JLI's conduct with that of combustible cigarette companies, even though the discussion in this email is about taking an approach to the marketing and sale of JUUL products that is the opposite of those companies. Reading selected excerpts of the document into the record without explanation from the witness who actually wrote those statements is misleading and unhelpful to the jury.<br><br><u>Proposing Party's Position</u>:<br>4106 is an email that Valani received from fellow board member Alex Asseily (a paid Board Observer who became a Board member) about the youthfulness of the Vaporized campaign and comparing JLI's advertising to the shittiest practices by the shiftiest companies in history - big tobacco. The email from Asseily to Valani acknowledging that JUUL could be associated with Big Tobacco's "shitty practices" of targeting youth is relevant to proving that JLI had sufficient notice not to engage in similar behavior.  JLI was forewarned that it should be cautious in its marketing strategy so as to minimize youth appeal to their addictive nicotine product. Valani's testimony and related documents are relevant to establishing notice and |  |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | knowledge on the part of JLI that it's advertising of JUUL should not mimic the problematic marketing practices used by Big Tobacco that enticed youth and non-smokers to smoke. Within days after JUUL's launch, Mr. Asseily told Valani that JUUL faces challenges in its launch to steer clear of the practices of Big Tobacco to avoid both legal and ethical issues. is also relevant to showing that despite the Board's awareness of the various tactics used by Big Tobacco to target youth in their advertising of cigarettes, JLI chose to utilize many similar marketing strategies for JUUL .This email is not hearsay because it is not being introduced to prove the truth of the matter asserted but to demonstrate knowledge, state of mind, intent and the impact on the reader. See plaintiffs' response to MIL #2 and #8.  An internal assessment about JUUL marketing practices is clearly relevant and not overly prejudicial.<br><br>As to Defendants' "colorful language objection" under Rule 403. See response to 332:17 above. | |
| 99. | Page 00615:<br>10: Q. Okay. And what Mr. Asseily<br>11: points out is that you have to be cognizant<br>12: of the fact you're selling a tobacco/ nicotine<br>13: product, right? | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Lacks Foundation/FRE 602 (designated testimony just reads email from Alex Asseily into the record, witness lacks foundation to say what Mr. Asseily intends or means in his email) | **Sustained**.  The examiner appears to simply read into the record the content of the exhibit and elicit testimony about the truth of the matter asserted therein, and not for a non-hearsay purpose, such as notice or intent.   To the extent the parties seek a ruling on the admissibility |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 14: A.    I think that's one of the<br>15:  things that can be inferred from his long<br>16:  e-mail.<br>17: Q.    Right.<br>18:  I mean, he says it. "Our fears<br>19: around tobacco/nicotine are not going away."<br>20:  Right?<br>21:  A. Yeah. | Hearsay (Rule 802). Same as above.<br><br>FRE 401/402; FRE 403. Same as above.<br><br>Proposing Party's Position:<br>See plaintiff's response to 604:9. Valani received the email from Asseilly and the questions are about what Valani understood, not what Asseilly meant so the foundation objection lacks merit. | of the exhibit itself, no ruling is made as that exceeds the scope of the Special Master's appointment.<br><br>The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8. |
| 0. | Page 00616:<br>21:  He says, "We will continue to<br>22:  have plenty of agitation if we don't come to<br>23:  terms with the fact that these substances"<br>--<br>24: Meaning JUUL, right?<br>25:  A.    I think he means nicotine and<br><br>Page 00617:<br>01:  tobacco.<br>02: Q.    Okay. "That these substances<br>03:  are," what? Finish reading the sentence,<br>04:  please.<br>05:  A.    "Almost irretrievably connected<br>06: to the shittiest companies and practices in | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Lacks Foundation/FRE 602 (designated testimony just reads email from Alex Asseily into the record, witness lacks foundation to say what Mr. Asseily intends or means in his email)<br><br>Hearsay (Rule 802). Same as above.<br><br>FRE 401/402; FRE 403. Same as above<br><br>Proposing Party's Position:<br>See prior response.  Valani received the email from Asseilly and the questions are about what Valani understood, not what Asseily meant so the foundation objection lacks merit. | **Sustained**.  The examiner appears to simply read into the record the content of the exhibit and elicit testimony about the truth of the matter asserted therein, and not for a non-hearsay purpose, such as notice or intent.   To the extent the parties seek a ruling on the admissibility of the exhibit itself, no ruling is made as that exceeds the scope of the Special Master's appointment.<br><br>The Special Master notes that Defendants have preserved their objections to  the Court's ruling on MIL 8. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07: the history of business."<br>08: Q.    He's referring to the broader<br>09: tobacco industry, right?<br>10: A.  He is.<br>11: Q.    And who's the number one<br>12:  largest tobacco company in the country, the<br>13: United States, at the time?<br>14:  A.    Altria. | | |
| 1. | Page 00618:<br>16: And this is 2015. And it was<br>17:  less than two years from this point in time<br>18: in which you started to have meetings with<br>19:  Altria and British American Tobacco Company,<br>20: the owner of R.J. Reynolds Tobacco Company,<br>21:  about significant multibillion-dollar<br>22:  investments by either of those into JUUL,<br>23: correct? | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Compound (asks about the timing and purpose of multiple meetings with multiple companies); Argumentative (form); Assumes facts (regarding the amount of the investments discussed at those meetings)<br><br>FRE 401/402; FRE 403.  This question misleadingly implies there is a connection between this 2015 email and unrelated discussions that took places years later<br><br><u>Proposing Party's Position:</u><br>There is nothing argumentative or vague about the question which sets out the chronology of meetings with the big tobacco companies in relation to the email -- witness understood the question and answered it without | **Overruled.**  The question is not compound or argumentative.  It also does not assume facts not in evidence.  Because testimony related to the 2015 has been excluded (see above), there is no concern about creating a misleading impression that the 2015 email is related to the discussions referenced in this testimony here. |

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|------|------|------|
| | | issue. See Plaintiffs' response to MIL 8 and there is nothing unduly prejudicial about this testimony | |
| 2. | Page 00619:<br>01: THE WITNESS: It was two years<br>02: from now. | <u>Objecting Party's Position:</u><br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background.]<br><br>Compound (asks about the timing and purpose of multiple meetings with multiple companies); Argumentative (form); Assumes facts (regarding the amount of the investments discussed at those meetings)<br><br>FRE 401/402; FRE 403. This question misleadingly implies there is a connection between this 2015 email and unrelated discussions that took places years later<br><br><u>Proposing Party's Position:</u><br>There is nothing argumentative or vague about the question which sets out the chronology of meetings with the big tobacco companies in relation to the email -- witness understood the question and answered it without issue. See Plaintiffs' response to MIL 8 and there is nothing unduly prejudicial about this testimony | **Overruled.** The question is not compound or argumentative. It also does not assume facts not in evidence. Because testimony related to the 2015 has been excluded (see above), there is no concern about creating a misleading impression that the 2015 email is related to the discussions referenced in this testimony here. |
| 3. | Page 00620:<br>22: In 2017 you started to talk to<br>23: the big tobacco companies again, right? | <u>Objecting Party's Position:</u><br>Vague and ambiguous (form, "you," unspecified "big tobacco companies"); Lacks Foundation/FRE 602 (witness cannot answer on behalf of JLI) FRE 401/402; FRE 403 (characterization of Altria as "big tobacco" is prejudicial) | **Overruled.** Considered in context, the question is sufficiently clear and specific for the witness to answer. The form of the question is not argumentative. An adequate found has been |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | Proposing Party's Position: The question (answered by the witness) was not vague and misstated nothing "In 2017 you started to talk to the big tobacco companies again, right?" The defendants' foundation objection is meritless.. Valani was directly involved in the discussions with Altria. See response to MIL #8 and there is nothing confusing or unduly prejudicial. | laid. The question solicits testimony is rationally based on the experience and perception of the witness. Defendants have not articulated any basis for exclusion under FRE 401/402/403. |
| 4. | Page 00621: 01: THE WITNESS: Yeah. Yeah, I 02: mean, to be clear, I think Altria was 03: very focused on talking to JUUL. | Objecting Party's Position: Vague and ambiguous (form, "you," unspecified "big tobacco companies"); Lacks Foundation/FRE 602 (witness cannot answer on behalf of JLI) FRE 401/402; FRE 403 (characterization of Altria as "big tobacco" is prejudicial)  Proposing Party's Position: The question (answered by the witness) was not vague and misstated nothing "In 2017 you started to talk to the big tobacco companies again, right?" The defendants' foundation objection is meritless.. Valani was directly involved in the discussions with Altria. See response to MIL #8 and there is nothing confusing or unduly prejudicial. | **Overruled.** Considered in context, the question is sufficiently clear and specific for the witness to answer. The form of the question is not argumentative. An adequate found has been laid. The question solicits testimony is rationally based on the experience and perception of the witness. Defendants have not articulated any basis for exclusion under FRE 401/402/403. |
| 5. | Page 00632: 14: Q.    All right. Let's take a look, 15: please, at 168. 16: DAN LAWLOR: 40108. 17: MR. GDANSKI: Thank you. | Objecting Party's Position: Hearsay (Rule 802); FRE 401/402; FRE 403. Exhibit 40108 contains a hearsay statement by third party Dinny Devitre. The statement is offered for its truth (i.e. that Altria expressed an interest in building a relationship). There is no probative | **Overruled.** In context, it is clear that Mr. Devitre's statement is not offered for its truth, but instead on the effect it had on Mr. Pritzker. Moreover, Mr. Pritzker was a board member of JLI and his |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18: (Valani Exhibit 40108 marked<br>19: for identification.)<br>20: QUESTIONS BY MR. GDANSKI:<br>21: Q.    If you go down to the bottom of<br>22: the e-mail, you send an e-mail to Nick<br>23: Pritzker on July 21, 2017, and you put a<br>24: hyperlink in for the leadership page at<br>25: Altria.<br><br>Page 00633:<br>01: And then you say, "Dinny just<br>02: called, stressing that Altria and PMI would<br>03: be great partners for us. Said we look<br>04: forward to building a relationship. Howard,<br>05: the COO, and Billy, the CFO, are coming<br>06: Friday, 10:30."<br>07: Do you see that?<br>08: A.    Yes.<br>09: Q.    Okay. And what does<br>10: Mr. Pritzker respond?<br>11: A.    He says, "Honestly, that is<br>12: fucking awesome." | value to showing Mr. Valani the comment by Mr. Pritzker that "Honestly, this is fucking awesome," and Mr. Pritzker's state of mind is not at issue. Any probative value is outweighed by the prejudicial use of an expletive.<br><br>With respect to 633:9-12, Lacks Foundation/FRE 602 (designated testimony just reads email from Nick Pritzker into the record, which witness did not write and lacks foundation to testify about)<br><br><u>Proposing Party's Position</u>:<br>40108 is an email Valani sent to Pritzker on July 21, 2017, regarding the Altria negotiations about top executives from Altria coming to San Francisco for a dinner meeting and Pritzker's response that "Honestly, this is fucking awesome." Defendants object to Mr. Pritzker's statement under 403. A little foul language doesn't make something unduly prejudicial. Devitre's statement at 633:1-6 is not hearsay because it's not being offered for the truth of the matter, but its being offered rather its being offered for state of mind  - and clearly it had the impact on Nick Pritzker's state of mind as reflected in his comment. | statements are party admissions. To the extent the parties seek a ruling on the admissibility of the exhibit referenced, the Special Master makes no ruling as that exceeds the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 6. | Page 00634:<br>17:  Q.    Did you think that it was<br>18:  fucking awesome that Altria leadership was<br>19:  expressing such an intense interest in JUUL<br>20:  in July of 2017? | Objecting Party's Position:<br>Same as above; no probative value to asking the witness if he thought something was "fucking awesome"; only purpose of this question is to repeat Mr. Pritzker's colorful language in order to inflame the jury. Also, Argumentative (form, "did you think that it was fucking awesome"); Vague and ambiguous (form, "fucking awesome," "intense interest"); Lacks Foundation/FRE 602 ("Fucking awesome" are Nicholas Pritzker's words, not the witness').<br><br>Proposing Party's Position:<br>40108 is an email Valani sent to Pritzker on July 21, 2017, regarding the Altria negotiations about top executives from Altria coming to San Francisco for a dinner meeting and Pritzker's response that "Honestly, this is fucking awesome." Defendants object to Mr. Pritzker's statement under 403.  A little foul language doesn't make something unduly prejudicial.  Devitre's statement at 633:1-6 is not hearsay because it's not being offered for the truth of the matter, but its being offered rather its being offered for state of mind  - and clearly it had the impact on Nick Pritzker's state of mind as reflected in his comment. | **Overruled**.  In context, it is clear that Mr. Devitre's statement is not offered for its truth, but instead on the effect it had on Mr. Pritzker.  Moreover, Mr. Pritzker was a board member of JLI and his statements are party admissions.  To the extent the parties seek a ruling on the admissibility of the exhibit referenced, the Special Master makes no ruling as that exceeds the scope of his appointment. |
| 7. | Page 00634:<br>22:  THE WITNESS: I thought it was<br>23:  really interesting, and I was curious | Objecting Party's Position:<br>Same as above; no probative value to asking the witness if he thought something was "fucking awesome"; only purpose of this question is to repeat Mr. Pritzker's colorful | **Overruled**.  The question is not argumentative and there is minimal risk of inflaming the jury. Mr. Valani's thoughts as to Altria's interest in JLI is |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 24:  to hear what they had to say.<br>25:<br><br>Page 00635:<br>01: QUESTIONS BY MR. GDANSKI:<br>02: Q.    Right.  I didn't -- interesting<br>03:  is --<br>04: A.    And to be clear, I was very<br>05: reticent about, you know -- you know, very<br>06:  reticent about ever actually doing something<br>07:  with them. | language in order to inflame the jury.  Also, Argumentative (form, "did you think that it was fucking awesome"); Vague and ambiguous (form, "fucking awesome," "intense interest"); Lacks Foundation/FRE 602 ("Fucking awesome" are Nicholas Pritzker's words, not the witness').<br><br><u>Proposing Party's Position:</u><br>Asking the witness if he thought it was fucking awesome like Pritzker is not argumentative, vague and does not misstate testimony. See the response above at 632:14 | relevant to Plaintiff's claims. |
| 8. | Page 00671:<br>06:  If it's your desire and belief<br>07:  that people who are not already cigarette<br>08:  smokers and in need of nicotine, they should<br>09: not then be using JUUL, my question to you<br>10: is, what responsibility do you accept for all<br>11:  of those people who started their nicotine<br>12:  use, young or old, with JUUL? | <u>Objecting Party's Position:</u><br>Argumentative (form); Vague and ambiguous (form); Assumed facts not in evidence (form, "all of those people...started their nicotine use...with JUUL"); FRE 401/402; FRE 403.  Asking the witness about what "responsibility" he will personally accept for the actions of "all of those people" is inflammatory, argumentative, and irrelevant to JLI's liability in the B.B. case.  Moreover, the testimony is likely to confuse the jury as to the legal standard and creates an impression that JLI is liable for any use by non-nicotine users.<br><br><u>Proposing Party's Position:</u><br>There is nothing argumentative, vague, unduly prejudicial /about asking this witness if he and the | **Sustained**. The question is argumentative and will tend to inflame the passions of the jury. |

Case No. 19-md-02913-WHO

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | company take responsibility for any of the outcomes including all the non smokers who started using JUUL. It's relevant to intent, state of mind and punitive damages.  See response to MIL #7 | |
| 9. | Page 00671:<br>15:  THE WITNESS: Well, I really<br>16:  wish that they -- that they hadn't --<br>17:  they hadn't initiated nicotine use<br>18:  with JUUL.<br>19:  QUESTIONS BY MR. GDANSKI:<br>20: Q.    Right.<br>21:  But as Riaz Valani, a person<br>22:  who made $2 billion, $2-plus billion, from<br>23:  your initial investment in JUUL, what<br>24:  responsibility do you accept for that<br>25:  unintended outcome of the product? | <u>Objecting Party's Position:</u><br>Same as above.<br><br>With respect to 671:21-25: Argumentative (form); Vague and ambiguous (form, "unintended outcome"); FRE 401/402; FRE 403; MIL #7; Asked & Answered.  This testimony repeats the question at 671:6-12 and injects Mr. Valani's personal wealth into the question. Not only does this incorrectly imply that Mr. Valani is personally responsible when he is not a defendant in the B.B. case, it inflames the jury by repeating--for the third or fourth time--the amount of money Mr. Valani made from the Altria investment. This reference is unfairly prejudicial and argumentative.<br><br><u>Proposing Party's Position:</u><br>There is nothing argumentative, vague, unduly prejudicial /about asking this witness if he and the company take responsibility for any of the outcomes including all the non smokers who started using JUUL. It's relevant to intent, state of mind and punitive damages.  See response to MIL #7 | **Sustained**. The question is argumentative and will tend to inflame the passions of the jury. |
| 0. | Page 00672: | <u>Objecting Party's Position:</u><br>Same as above. | **Sustained**. The question is argumentative and will |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 03:  THE WITNESS: I think that<br>04:  our -- the company's responsibility is<br>05:  to try and really mitigate -- to<br>06:  really mitigate any non -- non -- you<br>07:  know, non-nicotine user purchases of<br>08:  the product the best that we can. | With respect to 671:21-25:  Argumentative (form); Vague and ambiguous (form, "unintended outcome"); FRE 401/402; FRE 403; MIL #7; Asked & Answered.  This testimony repeats the question at 671:6-12 and injects Mr. Valani's personal wealth into the question. Not only does this incorrectly imply that Mr. Valani is personally responsible when he is not a defendant in the B.B. case, it inflames the jury by repeating--for the third or fourth time--the amount of money Mr. Valani made from the Altria investment. This reference is unfairly prejudicial and argumentative.<br><br>Proposing Party's Position:<br>There is nothing argumentative, vague, unduly prejudicial /about asking this witness if he and the company take responsibility for any of the outcomes including all the non smokers who started using JUUL. It's relevant to intent, state of mind and punitive damages.  See response to MIL #7 | tend to inflame the passions of the jury. |
| 1. | Page 00673:<br>16: My question is, do you accept<br>17: any responsibility for the unintended outcome<br>18: of people becoming nicotine users through<br>19: JUUL for the first time? | Objecting Party's Position:<br>Same as above, and Asked and answered at 671-672<br><br>Proposing Party's Position:<br>There is nothing argumentative, vague, unduly prejudicial /about asking this witness if he and the company take responsibility for any of the outcomes including all the non smokers who started using JUUL. | **Sustained**. The question is argumentative and will tend to inflame the passions of the jury. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | It's relevant to intent, state of mind and punitive damages.  See response to MIL #7 | |
| 2. | Page 00673:<br>25:  THE WITNESS: I think the<br><br>Page 00674:<br>01:  company has accepted a lot of<br>02:  responsibility for it by addressing<br>03:  the problem and -- and really taking<br>04:  measures to mitigate any unintended<br>05: consequences of its product. | Objecting Party's Position:<br>Same as above, and Asked and answered at 671-672<br><br>Proposing Party's Position:<br>There is nothing argumentative, vague, unduly prejudicial /about asking this witness if he and the company take responsibility for any of the outcomes including all the non smokers who started using JUUL. It's relevant to intent, state of mind and punitive damages.  See response to MIL #7 | **Sustained**. The question is argumentative and will tend to inflame the passions of the jury. |
| 3. | Page 00687:<br>07: Q.    Okay.  So you knew that a<br>08:  majority of JUUL sales came from<br>09:  nontobacco -- nontobacco flavor, right? | Objecting Party's Position:<br>Vague and ambiguous (form, vague as to time period)<br><br>Proposing Party's Position:<br>There is nothing vague, or speculative to about a question that this witness has the foundation to answer" "So you knew that a majority of JUUL sales came from nontobacco flavors - right?"  Valani the first shareholder, with the second-largest stake in JLI has more than an adequate foundation (and in fact does answer) the question by providing precisely what he knows. Defendants objection are meritless. | **Overruled**.  Considered in contexed with the designation that immediately follows, the form of the question is sufficiently clear and specific for the witness to answer. |
| 4. | Page 00687:<br>12: THE WITNESS:  I did know that a | Objecting Party's Position:<br>Vague and ambiguous (form, "brand of JUUL sales"); FRE 401/402, FRE | **Overruled**. The question is not vague and |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 13: very large percentage of sales came<br>14: from nontobacco flavors.<br>15: QUESTIONS BY MR. GDANSKI:<br>16: Q. Okay. And you knew, at least<br>17: at this time in 2018 and going forward, the<br>18: number one brand of JUUL sales was mango,<br>19: right?<br>20: A. I did. | 403 (misleading to imply mango was the "number one" product "going forward" because JLI discontinued mango in 2018)<br><br>Proposing Party's Position:<br>There is nothing vague, or speculative to about a question that this witness has the foundation to answer" "So you knew that a majority of JUUL sales came from nontobacco flavors - right?" Valani the first shareholder, with the second-largest stake in JLI has more than an adequate foundation (and in fact does answer) the question by providing precisely what he knows. Defendants objection are meritless. | ambiguous. The question is not misleading. |
| 5. | Page 00688:<br>22: Q. Okay. Well, remember in around<br>23: the middle of 2018 Mr. Devitre asked you what<br>24: portion of total sales of JUUL is nontobacco<br>25: flavor?<br><br>Page 00689:<br>01: A. I don't remember him asking,<br>02: but if you're telling me that he did, then I<br>03: believe you.<br>04: (Valani Exhibit 40112 marked<br>05: for identification.)<br>06: QUESTIONS BY MR. GDANSKI: | Objecting Party's Position:<br>Hearsay (Rule 802); Lacks Foundation/FRE 602. Statements by Mr. Devitre, a non party, are hearsay and are being offered for their truth. Exhibit 40112 has not been properly used to refresh the witness' recollection. Counsel did not: (1) show that the witness previously remembered what Mr. Devitre asked him, (2) establish that there is something that would help the witness remember, or (3) ask if the witness' recollection has been refreshed.<br><br>Proposing Party's Position:<br>The question about whether the witness remembers that Devitre asked him what portion of JUUL total sales were non-tobacco flavors is not hearsay, it is a preparatory question to refresh recollection which | **Overruled.** The examiner is using the document to refresh the witness' recollection as to a question asked by Mr. Devitre. The witness has foundation to testify as he was copied on the referenced email and the examiner does not mischaracterize the contents of the document.<br><br>The Special Master makes no ruling on the admissibility of the exhibit itself as that would exceed the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07: Q. It's number 79. Let's take a 08: look for one sec, please. 09: A. Is that the exhibit? 10: Q. 79 is the internal number. The 11: exhibit is going to be the next-numbered 12: exhibit number, which I think is 40112. | is done properly with 40112. The email is between Valani and Devitre and helps refresh his recollection and in the Email Valani respond that the majority is mint flavored. This is not being offered for the truth of the matter but to show knowledge on Altria's part regarding JUUL flavor and mint sales. | |
| 6. | Page 00691: 02: Q. Do you remember if in June 03: of 2018 the status of the negotiations with 04: Altria was on or off or at some other point? 05: A. I don't know. 06: Q. One thing that Altria wanted to 07: understand from JUUL was exactly what 08: Mr. Devitre is asking you: How much of JUUL 09: sales is for nontobacco flavors, correct? | <u>Objecting Party's Position:</u> Same as above. Also, witness lacks foundation to testify as to what "Altria wanted to understand" and is asked to speculate  <u>Proposing Party's Position:</u> The question about whether the witness remembers that Devitre asked him what portion of JUUL total sales were non-tobacco flavors is not hearsay, it is a preparatory question to refresh recollection which is done properly with 40112. The email is between Valani and Devitre and helps refresh his recollection and in the Email Valani respond that the majority is mint flavored. This is not being offered for the truth of the matter but to show knowledge on Altria's part regarding JUUL flavor and mint sales. | **Overruled.** The examiner is using the document to refresh the witness' recollection as to a question asked by Mr. Devitre. The witness has foundation to testify as he was copied on the referenced email and the examiner does not mischaracterize the contents of the document.  The Special Master makes no ruling on the admissibility of the exhibit itself as that would exceed the scope of his appointment. |
| 7. | Page 00691: 12: THE WITNESS: Well, I see in 13: the question that he's asking here. | <u>Objecting Party's Position:</u> Same as above. Also, witness lacks foundation to testify as to what "Altria wanted to understand" and is asked to speculate | **Overruled.** The examiner is using the document to refresh the witness' recollection as to a question asked by Mr. Devitre. The witness has |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|-----|--------------------------------------|--------------------|--------|
| | | Proposing Party's Position: The question about whether the witness remembers that Devitre asked him what portion of JUUL total sales were non-tobacco flavors is not hearsay, it is a preparatory question to refresh recollection which is done properly with 40112. The email is between Valani and Devitre and helps refresh his recollection and in the Email Valani respond that the majority is mint flavored. This is not being offered for the truth of the matter but to show knowledge on Altria's part regarding JUUL flavor and mint sales. | foundation to testify as he was copied on the referenced email and the examiner does not mischaracterize the contents of the document.<br><br>The Special Master makes no ruling on the admissibility of the exhibit itself as that would exceed the scope of his appointment. |
| 8. | Page 00692:<br>08: Q.    Okay. You respond to<br>09: Mr. Devitre that "It's a majority. We can<br>10: discuss live when we next meet."<br>11: Right?<br>12: A.    Yeah, I see that that's what I<br>13: responded.<br>14: Q. Okay. And what you're saying<br>15: is that the majority are nontobacco flavor or<br>16: a majority are mint? Because the subject is<br>17: mint percentage.<br>18:A. Well, I think a majority being | Objecting Party's Position: Misstates document (misleading): questioner mischaracterizes the document<br><br>Proposing Party's Position: Counsel was not misstating but paraphrasing and summarizing and asking the witness if that is what is meant and the witness corrects counsel so that the testimony is correct and not misleading. | **Overruled**. The examiner is using the document to refresh the witness' recollection as to a question asked by Mr. Devitre. The witness has foundation to testify as he was copied on the referenced email and the examiner does not mischaracterize the contents of the document.<br><br>The Special Master makes no ruling on the admissibility of the exhibit itself as that would exceed the scope of his appointment. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 19: mint would have been the wrong answer at that<br>20: point in time, so likely I was responding to<br>21: the question in line. | | |
| 9. | Page 00724:<br>07: THE WITNESS: Yeah, quite<br>08: minimally. I might have only met him<br>09: once, once or twice, over the course<br>10: of the negotiations.<br>11: QUESTIONS BY MR. GDANSKI:<br>12: Q.    And then after the acquisition<br>13: of a large percentage of JUUL by Altria, K.C.<br>14: Crosthwaite was put on as a nonvoting member<br>15: on the board of JUUL, right? | <u>Objecting Party's Position</u>:<br>Misstates prior testimony (misleading); FRE 401/402; FRE 403.  Question mischaracterizes Altria's investment as an "acquisition of a large percentage" when it was a minority investment.  Question also mischaracterizes Mr. Crosthwaite's role as being a "board member" when in fact he was a board observer.<br><br><u>Proposing Party's Position</u>:<br>The witness clarified that Crosthwaite was a board observer. See also clarification below at 724:18-22. "Large" does not mischaracterize the transaction or imply a majority investment. Large refers to the 12.8 billion price paid by Altria. | **Overruled**.  The question does not misstate prior testify as the witness clarifies that K.C. Crosthwaite was a board observer.  In addition, the Special Master finds no basis to exclude under FRE 401/402/403. |
| 0. | Page 00724:<br>18: THE WITNESS: He was a board<br>19: observer.<br>20: QUESTIONS BY MR. GDANSKI:<br>21: Q.    Board observer, sorry.  Not a<br>22: nonvoting board member; a board observer. | <u>Objecting Party's Position</u>:<br>Misstates prior testimony (misleading); FRE 401/402; FRE 403.  Question mischaracterizes Altria's investment as an "acquisition of a large percentage" when it was a minority investment.  Question also mischaracterizes Mr. Crosthwaite's role as being a "board member" when in fact he was a board observer.<br><br><u>Proposing Party's Position</u>: | **Overruled**.  The question does not misstate prior testify as the witness clarifies that K.C. Crosthwaite was a board observer.  In addition, the Special Master finds no basis to exclude under FRE 401/402/403. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | See response to MIL 14. KC Crosswaith a long time Philip Morris and Altria Executive became JLI CEO after the transaction. There is nothing vague about the questions and the witness clearly has the foundation to answer them as he admitted he was one of the board members that became dissatisfied with JLI's current CEO .. leading to Crosswaith become CEO. | |
| 1. | Page 00725:<br>14: Q.   Okay. My question was, did<br>15: Mr. Crosthwaite come to JUUL board meetings<br>16: and observe?<br>17: A.    Yes, he observed, you know,<br>18: kind of non -- any non-privileged -- any<br>19: non-privileged portion of -- non --<br>20: nonconfidential as relates to Altria sections<br>21: of the board meetings.<br>22: Q.    It's true that after the<br>23: finalization of the deal with Altria, you and<br>24: other board members developed a<br>25: dissatisfaction with the leadership of<br><br>Page 00726:<br>01: Mr. Burns, right? | Objecting Party's Position:<br>Vague and ambiguous (form "dissatisfaction" and "other board members");  Lacks Foundation/FRE 602 (witness lacks foundation as to whether other board members experienced dissatisfaction)<br><br>Proposing Party's Position:<br>See response to MIL 14. KC Crosswaith a long time Philip Morris and Altria Executive became JLI CEO after the transaction. There is nothing vague about the questions and the witness clearly has the foundation to answer them as he admitted he was one of the board members that became dissatisfied with JLI's current CEO .. leading to Crosswaith become CEO. | **Sustained** as to 725:22-726:05. The witness lacks foundation to testify regarding the feelings of others. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 2. | Page 00726:<br>04: THE WITNESS:<br>Yeah, there were<br>05: concerns around it. | Objecting Party's Position:<br>Vague and ambiguous (form "dissatisfaction" and "other board members"); Lacks Foundation/FRE 602 (witness lacks foundation as to whether other board members experienced dissatisfaction)<br><br>Proposing Party's Position:<br>See response to MIL 14. KC Crosswaith a long time Philip Morris and Altria Executive became JLI CEO after the transaction. There is nothing vague about the questions and the witness clearly has the foundation to answer them as he admitted he was one of the board members that became dissatisfied with JLI's current CEO .. leading to Crosswaith become CEO. | **Sustained** as to 725:22-726:05. The witness lacks foundation to testify regarding the feelings of others. |
| 3. | Page 00732:<br>07: Q. Okay. And Mr. Crosthwaite,<br>08: were you aware of the fact that he was<br>09: previously the CEO of Philip Morris USA? | Objecting Party's Position:<br>FRE 401/402; FRE 403. Cumulative, this fact has already been covered extensively in Mr. Crosthwaite's deposition.<br><br>Proposing Party's Position:<br>KC Croswaith's background as a CEO of Philip Morris USA responsible for the Marlboro brand is not unduly prejudicial, and the witness's knowledge of Croswithe's background is relevant separate and apart from Croswaithe's testimony so it is not cumulative. | **Overruled.** Mr. Valani's knowledge of Mr. Croswaithe's background is not cumulative. |
| 4. | Page 00732:<br>12: THE WITNESS:<br>I knew what his<br>13: résumé was. | Objecting Party's Position:<br>FRE 401/402; FRE 403. Cumulative, this fact has already been covered | **Overruled.** Mr. Valani's knowledge of Mr. Croswaithe's background is not cumulative. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | extensively in Mr. Crosthwaite's deposition.<br><br>Proposing Party's Position:<br>See prior response. The witness answered the question and clearly had knowledge so he has more than an adequate foundation. | |
| 5. | Page 00736:<br>19: Q.    Were you aware of the fact that<br>20: for years his role at Altria was to be<br>21:  responsible for the Marlboro brand, which is<br>22: the leading youth brand in the United States? | Objecting Party's Position:<br>[FRE 401/402; FRE 403; MIL 8: Evidence or argument of purported historical misconduct regarding combustible cigarettes is irrelevant to B.B.'s claims, which are based on conduct beginning in 2017, and are only intended to inflame and prejudice the jury. This testimony goes beyond background.]<br><br>Misstates prior testimony (misleading); Vague and ambiguous (form, "responsible for the Marlboro brand" "leading youth brand"); Assumed facts not in evidence (form); Lacks Foundation/FRE 602; FRE 401/402; FRE 403.  Misleading, irrelevant, and prejudicial to imply that Marlboro is the "leading youth brand in the United States" or that Mr. Crosthwaite was responsible for youth use of Marlboro products.  Mr. Valani has no foundation to know what the "leading youth brand" of combustible cigarettes is.  In any event, youth use of Marlboro products has no relevance to B.B.'s case which is about JUUL products. In addition, it is incorrect to characterize Mr. Crosthwaite's role at Altria as being "responsible for the Marlboro brand"; Mr. Crosthwaite's | **Sustained** as to 736:21-22 (starting with "which is the leading..").  The form of the question is misleading and prejudicial as it implies Marlboro was "the leading youth brand in the United States" without establishing that fact.<br><br>**Overruled** as to the remaining designations. The question does not misstate prior testimony and is not vague or ambiguous.  In addition, Mr. Croswaithe's background at Altria and then position as CEO at JLI is relevant to Plaintiff's conspiracy claim. |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | role at Altria has been covered extensively in his deposition and it is cumulative and prejudicial to introduce this testimony again through Mr. Valani<br><br>Proposing Party's Position:<br>[See prior response and response to MIL 8.]<br><br>No prior testimony was misstated and there is nothing vague and ambiguous about Mr. Crosswaite being responsible for the Malboro brand.  The witness answered the question "He would have been responsible for that as the ... head of PM USA." (737:2-4).  Mr. Valani testified that he was aware that Crosswaite was brand manager for Malboro (737:7-10).  In any event, Mr. Crosswaite's background at Altria is relevant since he became the CEO or JLI and there is a conspiracy claim in BB's case. | |
| 6. | Page 00737:<br>02:  THE WITNESS: He would have<br>03:  been responsible for that as the -- as<br>04:  the -- as the head of PM USA.<br>05:  QUESTIONS BY MR. GDANSKI:<br>06:  Q.    Right.<br>07:  But do you know if there was a<br>08:  period of time that he was also a brand<br>09:  manager for Marlboro? | Objecting Party's Position:<br>[Same as above - FRE 401/402; FRE 403; MIL 8. This testimony goes beyond background]<br><br>Same as above; Mr. Crosthwaite did not have the title of "brand manager" at any point in time.<br><br>Proposing Party's Position:<br>[See prior response and response to MIL 8.]<br><br>No prior testimony was misstated and there is nothing vague and ambiguous about Mr. Crosswaite | **Sustained** as to 736:21-22 (starting with "which is the leading.."). The form of the question is misleading and prejudicial as it implies Marlboro was "the leading youth brand in the United States" without establishing that fact.<br><br>**Overruled** as to the remaining designations. The question does not misstate prior testimony and is not vague or |

Case No. 19-md-02913-WHO

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 10: A.    I'm aware of that. | being responsible for the Malboro brand.  The witness answered the question "He would have been responsible for that as the ... head of PM USA." (737:2-4).  Mr. Valani testified that he was aware that Crosswaite was brand manager for Malboro (737:7-10).  In any event, Mr. Crossweiate's background at Altria is relevant since he became the CEO or JLI and there is a conspiracy claim in BB's case. | ambiguous.  In addition, Mr. Croswaithe's background at Altria and then position as CEO at JLI is relevant to Plaintiff's conspiracy claim. |
| 7. | Page 00742: 01: Q.    Okay.  Who is in charge of JUUL 02: now?  Who would you say is in charge of JUUL 03: right now? | Objecting Party's Position: Vague and ambiguous (form, "in charge of JUUL")  Proposing Party's Position: The witness understood and testified that the CEO KC Crosswaith is currently in charge. | **Overruled**.  Considered in context, the form of the question is sufficiently clear and specific for the witness to answer. |
| 8. | Page 00742: 06: THE WITNESS: K.C. Crosthwaite 07:  is the CEO. | Objecting Party's Position: Vague and ambiguous (form, "in charge of JUUL")  Proposing Party's Position: The witness understood and testified that the CEO KC Crosswaith is currently in charge. | **Overruled**.  Considered in context, the form of the question is sufficiently clear and specific for the witness to answer. |
| 9. | Page 00748: 25: THE WITNESS: I do know that.  Page 00749: 01:  QUESTIONS BY MR. GDANSKI: 02: Q.    Okay. And that's because the 03:  standard -- well, the standard for submitting | Objecting Party's Position: Compound (standard for "submitting" and "getting"); Lacks Foundation/FRE 602 (witness does not know why JLI did not submit a PMTA for certain other flavors, and witness has no foundation to testify about FDA PMTA standards); FRE 401/402; FRE 403 (question incorrectly implies that JLI did not submit a PMTA for certain other | |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 04: and getting a PMTA is that the submission 05: product has to be appropriate for the 06: protection of public health, right? | flavors because they do not meet the FDA standard)<br><br>Proposing Party's Position:<br>The witness testified that he does know that JUUL submitted its PMTA does not include mango and other flavors. He clearly as a Board member has the foundation to answer the question he did. | |
| 0. | Page 00749:<br>10: THE WITNESS: That is the FDA<br>11: standard.<br>12: QUESTIONS BY MR. GDANSKI:<br>13: Q. All right. And that's the<br>14: standard that a company like JUUL has to meet<br>15: and they have to ascribe to. Their actions<br>16: must be appropriate for the protection of<br>17: public health, right? | Objecting Party's Position:<br>Compound (standard for "submitting" and "getting"); Lacks Foundation/FRE 602 (witness does not know why JLI did not submit a PMTA for certain other flavors, and witness has no foundation to testify about FDA PMTA standards); FRE 401/402; FRE 403 (question incorrectly implies that JLI did not submit a PMTA for certain other flavors because they do not meet the FDA standard)<br><br>Proposing Party's Position:<br>Same as above. Nothing vague about asking about the standard for PMTA; he understood and answered it. As a Board member for JLI he has more than an adequate basis to understand the question and have the answer. | **Overruled.** An adequate foundation has been laid for the witness to testify about the topic at issue. The form of the question is not compound. Defendants have not articulated any basis for exclusion under FRE 401/402/403. |
| 1. | Page 00749:<br>19: THE WITNESS: Yes. | Objecting Party's Position:<br>Compound (standard for "submitting" and "getting"); Lacks Foundation/FRE 602 (witness does not know why JLI did not submit a PMTA for certain other flavors, and witness has no foundation to testify about FDA PMTA standards); FRE 401/402; FRE 403 (question | **Overruled.** An adequate foundation has been laid for the witness to testify about the topic at issue. The form of the question is not compound. Defendants have not articulated any basis for |

| No. | Plaintiff's Affirmative Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | incorrectly implies that JLI did not submit a PMTA for certain other flavors because they do not meet the FDA standard) <br><br> Proposing Party's Position: <br> Same as above.  Nothing vague about asking about the standard for PMTA; he understood and answered it.  As a Board member for JLI he has more than an adequate basis to understand the question and have the answer. | exclusion under FRE 401/402/403. |

**b.  Defendants' Counter-Designations**

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 1. | Page 00047: <br> 02:  THE WITNESS: Yeah.  I mean, I <br> 03:  think that these were -- these were <br> 04:  two guys in a -- you know, in a shared <br> 05:  space in a room that had a novel idea <br> 06:  for how to replace cigarettes with a <br> 07:  reduced-harm product. <br> 08:  So I can't say that I was <br> 09:  particularly well-versed in a lot of <br> 10:  the details of -- of the dynamics of <br> 11:  the industry at that time. | Objecting Party's Position: <br> 611 - Motion to strike the answer as nonresponsive.  The answers make no sense at all and does not address whether in 2007 there should have been a focus not just on ending smoking but being vigilant about youth use.  His answer does not address the question at all. <br><br> Proposing Party's Position: <br> The answer is responsive, the witness is asked about his beliefs in 2007 regarding the need for vigilance on youth use, and he explains that he was not well versed in the dynamics of the industry at the time and that the product was developed in a start up environment | **Sustained** as to 47:2-7: That portion of the answer is non-responsive to the question and does not address whether in 2007 there should have been a focus not just on ending smoking but being vigilant about youth use. <br><br> **Overruled** as to 47:8-11: The witness responds that he is not well-versed in the industry to determine if he had a belief that in 2007 ending smoking required vigilance on the youth usage issue. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 2. | Page 00048:<br>06: THE WITNESS: I mean, I think<br>07: that in terms of -- in terms of the<br>08: focus and how I think this was thought<br>09: about, it was -- it was pretty clear<br>10: that the company's orientation and<br>11: purpose, you know, and the product's<br>12: orientation and purpose had put some<br>13: thought into the --the legacy, and I<br>14: think was in many respects conceived<br>15: of in a way to -- to prevent -- to<br>16: prevent -- to prevent those dynamics. | <u>Objecting Party's Position:</u><br>611 - Motion to strike the answer as nonresponsive<br><br><u>Proposing Party's Position:</u><br>The answer is directly responsive. The question asks if the mission included ending youth usage and the response says the product's "orientation and purpose…was in many respects conceived of in a way to…prevent those dynamics [youth usage]" | **Overruled.** The witness' answer is responsive to the question posed for the reasons stated by Defendants. |
| 3. | Page 00048:<br>18: Q.  When you say "those dynamics,"<br>19: do you mean youth usage?<br>20: A.  Youth usage, yeah, that's<br>21: correct. | <u>Objecting Party's Position:</u><br>48:16-20 (Motion to strike the this portion of the answer as nonresponsive<br><br><u>Proposing Party's Position:</u><br>Again the answer is directly responsive.  Q "When you say "those dynamics do you mean youth usage?" A. "Youth usage, yeah, that's correct." | **Overruled.** The witness' answer is responsive to the question posed for the reasons stated by Defendants. |
| 4. | Page 00048:<br>22: Q.  And you're saying that it was | <u>Objecting Party's Position:</u><br>611 - Motion to strike the answer as nonresponsive.  The answers make no sense at all and does not address the question. | **Overruled.** The witness' answer is responsive to the question posed for the reasons stated by Defendants. |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 23: pretty clear that the company's orientation<br>24: and purpose was to avoid youth usage in 2015?<br>25: That's your testimony?<br><br>Page 00049:<br>01: A.    Yeah, I mean, it was -- it was<br>02: designed as a, you know, high price point.<br>03: It was -- it was focused on kind of adult<br>04: smokers as the primary demographic. And I<br>05: think there was a lot of distance between the<br>06: company's product and -- and the cohort set<br>07: of other offerings that were available. | Proposing Party's Position:<br>These counters are directly responsive to Plaintiff's affirmative designations at 46:14-19 regarding whether the company's mission included preventing youth use in 2015.  The answer is responsive -- the witness is asked whether it was "pretty clear" that the company's orientation was to avoid youth use in 2015, and he explains all of the ways in which it was "pretty clear" (i.e., high price point, focused on adult smokers as the primary demographic, lot of distance from competitors who had more youth appealing products) | |
| 5. | Page 00049:<br>08: Q.    But you agree with me that in<br>09: June of 2015, the mission of the company did<br>10: not include preventing youth usage, right? | Objecting Party's Position:<br>611 - Motion to strike the answer as nonresponsive.  The answers make no sense at all and does not address the question.<br><br>Proposing Party's Position:<br>These counters are directly responsive to Plaintiff's affirmative designations at 46:14-19 regarding whether the company's mission included preventing youth use in 2015.  The answer is responsive -- the | **Overruled**.  The witness' answer is responsive to the question posed for the reasons stated by Defendants. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | witness is asked whether it was "pretty clear" that the company's orientation was to avoid youth use in 2015, and he explains all of the ways in which it was "pretty clear" (i.e., high price point, focused on adult smokers as the primary demographic, lot of distance from competitors who had more youth appealing products) | |
| 6. | Page 00049:<br>13:  THE WITNESS: I mean, might not<br>14:  have been fully written down as the<br>15:  stipulated mission of the company, but<br>16:  I think it was definitely something<br>17:  that the founder and -- the founders<br>18:  and the -- the people that were<br>19:  creating the products were thinking<br>20:  about. | <u>Objecting Party's Position</u>:<br>611 - Motion to strike the answer as nonresponsive.  The answers make no sense at all and does not address the question.<br><br><u>Proposing Party's Position</u>:<br>These counters are directly responsive to Plaintiff's affirmative designations at 46:14-19 regarding whether the company's mission included preventing youth use in 2015.  The answer is responsive -- the witness is asked whether it was "pretty clear" that the company's orientation was to avoid youth use in 2015, and he explains all of the ways in which it was "pretty clear" (i.e., high price point, focused on adult smokers as the primary demographic, lot of distance from competitors who had more youth appealing products) | **Overruled**.  The witness' answer is responsive to the question posed for the reasons stated by Defendants. |
| 7. | Page 00049:<br>22: Q.    And was that manifested in the<br>23: way the product was launched and the campaign<br>24: associated with that?<br>25:  A.    I think the company was really | <u>Objecting Party's Position</u>:<br>611 - Motion to strike the answer as nonresponsive.  The answers make no sense at all and does not address the question.<br><br><u>Proposing Party's Position</u>:<br>These counters are directly responsive to Plaintiff's affirmative designations at 46:14-19 regarding whether the company's mission | **Overruled**.  The witness' answer is responsive to the question posed for the reasons stated by Defendants. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | Page 00050:<br>01: focused, as I understood, on, you know, the<br>02: very specific demographic of, frankly, people<br>03: that were like them, which was, you know,<br>04: smokers that were in the age range of 25 to<br>05: 35. | included preventing youth use in 2015. The answer is responsive -- the witness is asked whether it was "pretty clear" that the company's orientation was to avoid youth use in 2015, and he explains all of the ways in which it was "pretty clear" (i.e., high price point, focused on adult smokers as the primary demographic, lot of distance from competitors who had more youth appealing products) | |
| 8. | Page 00121:<br>11: Q.    Do you know if JUUL is more<br>12: addictive than cigarettes? | <u>Objecting Party's Position:</u><br>Calls for speculation and this witness is not an expert on the comparative addictive nature of E Cigs and Combustible cigs. Improper lay opinion. He event testifies "I am not an expert, not a scientist" (121:19-20)<br><br>Not for completeness and outside scope.<br><br><u>Proposing Party's Position:</u><br>Within the scope of affirmative designations regarding whether the product is addictive, has a feature to stop delivering nicotine, or can be consumed with no risk of addiction (e.g., 51:22-52:9, 52:11-2, 111:20-112:4, 167:1-3, 167:7-8). Does not call for speculation and the witness explains the foundation and basis for his understanding at 122:5-18; he even says that, while he is not a scientist, his answer is based on "what I've seen and my personal knowledge." | **Sustained**. The witness is not qualified as an expert to reliably testify on this topic. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| 9. | Page 00121:<br>15:  THE WITNESS: In the literature<br>16:  that I've read, you know, I think a<br>17:  lot of this comes -- I mean, a lot of<br>18:  the -- I think it's scientific nuance.<br>19:  I'm not an expert, not a scientist.<br>20:  I think the intent behind the<br>21:  product was to try to mimic the PK<br>22:  curve delivery of nicotine of -- of a<br>23:  cigarette.  And my understanding is<br>24:  that the nicotine delivery of JUUL is<br>25:  below that of a cigarette but<br><br>Page 00122:<br>01: sufficient for someone to be able to<br>02:  switch from cigarettes, you know, with<br>03: some ease.<br>04: QUESTIONS BY MS. SHARP:<br>05: Q.    What's the basis for your<br>06: understanding that the nicotine delivery of<br>07: JUUL is below that of a cigarette?<br>08: A.    Just the PK curves -- I'm | Objecting Party's Position:<br>Same as above for 121:11-121:12<br><br>Proposing Party's Position:<br>Within the scope of affirmative designations regarding whether the product is addictive, has a feature to stop delivering nicotine, or  can be consumed with no risk of addiction (e.g., 51:22-52:9, 52:11-2, 111:20-112:4, 167:1-3, 167:7-8).  Does not call for speculation and the witness explains the foundation and basis for his understanding at 122:5-18; he even says that, while he is not a scientist, his answer is based on "what I've seen and my personal knowledge." | **Sustained**. The witness is not qualified as an expert to reliably testify on this topic. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 09:  sorry, pharmacokinetic curve, you know, 10:  readouts that I've seen.  And again, I'm not 11: an expert. 12: I think the company obviously 13: has a lot of scientists that do a lot of 14:  detailed work on this, and experts, but at 15: least in terms of what I've seen and my 16: personal knowledge, my understanding is that 17:  the PK curve is inside of that of a 18:  cigarette. | | |
| 10. | Page 00247: 15: Q.    In your view, should the 16:  company have risen above the ethical dilemmas 17: before JUUL was launched? | Objecting Party's Position: Motion to strike answer as non-responsive to the question of whether the company lived up to its ethical dilemma before JUUL was launched  Proposing Party's Position: The answer is directly responsive to the question and essential as a counter to the designated testimony. If plaintiff withdraws 246:6-248:14, we can withdraw. | **Overruled**.  The answer is responsive to the question posed. |
| 11. | Page 00247: 19:  THE WITNESS: I think the 20:  company feels like it was always above | Objecting Party's Position: See preceding Motion to strike  Proposing Party's Position: The answer is directly responsive to the question and essential as a | **Overruled**.  The answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 21: it, is what I would say, before and 22: after, in the sense that very clear in 23: our intent as a board, very clear on 24: intent of management team and the 25: people who were hired, very clear that<br><br>Page 00248:<br>01: we wanted to operate at the highest 02: standards, and so very clear on 03: intent. | counter to the designated testimony. If plaintiff withdraws 246:6-248:14, we can withdraw. | |
| 12. | Page 00248:<br>16: Q.    Any specific mistakes that you 17: can identify now that you would do 18: differently if you could before the product 19: launched? | Objecting Party's Position:<br>Motion to strike as not responsive. 248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives.  Assumes facts, not in evidence are irrelevant and unduly prejudicial.  Further, it's an improper lay opinion and lacks foundation and personal knowledge.  Moreover, it is nonresponsive and outside the scope of the affirmative designation.  See Plaintiffs MIL 1 C.<br><br>Proposing Party's Position:<br>The witness's testimony is responsive.  He is speaking directly to his knowledge as a board member and based on switch rates.  The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product | **Sustained** as to 248:16-250:12.  The witness does not directly respond to the questions addressed.  Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8.  The witness' answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | | (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | |
| 13. | Page 00248:<br>22: THE WITNESS: I'm a board<br>23: member so, I mean, you know, and I<br>24: looked at the company from that<br>25: vantage point.<br><br>Page 00249:<br>01: I think they were quite<br>02: thoughtful and quite considerate and<br>03: definitely far from perfect, but, you<br>04: know, I think they've done a lot of<br>05: excellent work, you know, from<br>06: inception to the point of launch. | <u>Objecting Party's Position</u>:<br>Motion to strike as not responsive. 248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives. Assumes facts, not in evidence are irrelevant and unduly prejudicial. Further, it's an improper lay opinion and lacks foundation and personal knowledge. Moreover, it is nonresponsive and outside the scope of the affirmative designation. See Plaintiffs MIL 1 C.<br><br><u>Proposing Party's Position</u>:<br>The witness's testimony is responsive. He is speaking directly to his knowledge as a board member and based on switch rates. The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | **Sustained** as to 248:16-250:12. The witness does not directly respond to the questions addressed. Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8. The witness' answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| 14. | Page 00249:<br>08: Q.    And what about after launch?<br>09: A.    Then, too, but, I mean, you<br>10: know, you asked me about before launch.  And<br>11: I think that there's a question of like, you<br>12: know, where you started at, what you intended<br>13: to do, how you iterated, how you evolved.<br>14: And there was a lot of evolution inside the<br>15: company.<br>16: I mean, it's astonishing that a<br>17: tiny company with limited resources, you<br>18: know, is the first company to see switch<br>19: rates from cigarettes to new levels.  So it's<br>20: a remarkable achievement. | <u>Objecting Party's Position</u>:<br>Motion to strike as not responsive.  248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives.  Assumes facts, not in evidence are irrelevant and unduly prejudicial.  Further, it's an improper lay opinion and lacks foundation and personal knowledge.  Moreover, it is nonresponsive and outside the scope of the affirmative designation.  See Plaintiffs MIL 1 C.<br><br><u>Proposing Party's Position</u>:<br>The witness's testimony is responsive.  He is speaking directly to his knowledge as a board member and based on switch rates.  The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14).  Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product.  PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | **Sustained** as to 248:16-250:12.  The witness does not directly respond to the questions addressed.  Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8.  The witness' answer is responsive to the question posed. |
| 15. | Page 00249:<br>21: Q. And does that achievement, in<br>22: your mind, negate any negatives associated<br>23: with bringing the product to market when you | <u>Objecting Party's Position</u>:<br>Motion to strike as not responsive.  248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives.  Assumes facts, not in evidence are irrelevant and unduly prejudicial.  Further, it's an improper lay opinion | **Sustained** as to 248:16-250:12.  The witness does not directly respond to the questions addressed.  Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 24: did and keeping it on? | and lacks foundation and personal knowledge. Moreover, it is nonresponsive and outside the scope of the affirmative designation. See Plaintiffs MIL 1 C.<br><br>Proposing Party's Position:<br>The witness's testimony is responsive. He is speaking directly to his knowledge as a board member and based on switch rates. The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | **Overruled** as to 250:13-251:8. The witness' answer is responsive to the question posed. |
| 16. | Page 00250:<br>02: THE WITNESS:<br>I think a lot of<br>03: lives have probably been saved. | Objecting Party's Position:<br>Motion to strike as not responsive. 248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives. Assumes facts, not in evidence are irrelevant and unduly prejudicial. Further, it's an improper lay opinion and lacks foundation and personal knowledge. Moreover, it is nonresponsive and outside the scope of the affirmative designation. See Plaintiffs MIL 1 C.<br><br>Proposing Party's Position:<br>The witness's testimony is responsive. He is speaking directly | **Sustained** as to 248:16-250:12. The witness does not directly respond to the questions addressed. Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8. The witness' answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | to his knowledge as a board member and based on switch rates. The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | |
| 17. | Page 00250:<br>05: Q.  Also a lot of<br>06: youths who have become addicted to nicotine?<br>07: A.  Clearly that's something that,<br>08: you know, I don't want to have happen, and<br>09: clearly the company has gone through great<br>10: lengths to decrease that and to mitigate it.<br>11: And I think it's a very clear part of the<br>12: company's future to not have that happen.<br>13: Q.  But the company hadn't gone to<br>14: great lengths to mitigate youth addiction | **Objecting Party's Position:**<br>Motion to strike as not responsive. 248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives. Assumes facts, not in evidence are irrelevant and unduly prejudicial. Further, it's an improper lay opinion and lacks foundation and personal knowledge. Moreover, it is nonresponsive and outside the scope of the affirmative designation. See Plaintiffs MIL 1 C.<br><br>**Proposing Party's Position:**<br>The witness's testimony is responsive. He is speaking directly to his knowledge as a board member and based on switch rates. The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful | **Sustained** as to 248:16-250:12. The witness does not directly respond to the questions addressed. Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8. The witness' answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 15: before JUUL launched in June 2015, did it? | and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | |
| 18. | Page 00250: 18: THE WITNESS: I mean, the 19: company was very clear about its 20: intended audience. They were very 21: clear about the price point at which 22: it was selling the product. And 23: indeed -- and I think getting the 24: product actually launched was quite a 25: hard exercise, and indeed the initial<br><br>Page 00251: 01: sales were quite tepid. 02: And when you talk about youth 03: usage rates, I mean, the youth usage 04: rates in the category declined in 2016 05: and 2017. So -- per the NYTS. 06: So and to imply the company 07: wasn't monitoring it, they were | <u>Objecting Party's Position</u>: Motion to strike as not responsive. 248:8 Vague.<br><br>248:21-250:3 - Mr. Valani is speculating about JLI saving many lives. Assumes facts, not in evidence are irrelevant and unduly prejudicial. Further, it's an improper lay opinion and lacks foundation and personal knowledge. Moreover, it is nonresponsive and outside the scope of the affirmative designation. See Plaintiffs MIL 1 C.<br><br><u>Proposing Party's Position</u>: The witness's testimony is responsive. He is speaking directly to his knowledge as a board member and based on switch rates. The testimony is within the scope of Plaintiff's affirmative designations asking Mr. Valani whether he has regrets about launching the product (see 248:5-6, 248:8-14). Mr. Valani provides context and explains how he thought the company was thoughtful and considerate in launching the product. PMIL1C is not relevant to this testimony, and in any event, the Court denied PMIL1C and this testimony is based on Mr. Valani's personal knowledge. | **Sustained** as to 248:16-250:12. The witness does not directly respond to the questions addressed. Moreover, no foundation has been laid for Mr. Valani to testify that JLI has saved many lives.<br><br>**Overruled** as to 250:13-251:8. The witness' answer is responsive to the question posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 08: definitely focused on it. | | |
| 19. | Page 00359:<br>20: Do you admit that JUUL's design<br>21: appealed to youth? | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope. This designation is about whether the JUUL was designed to have youth appeal which has nothing to do with the designation before or after it.<br><br>Proposing Party's Position:<br>Counter is for completion and in the same series of questions. The counter is within the scope of questions regarding whether the product was designed to appeal to youth (e.g., 51:22-52:6, 335:9-21) | **Overruled**. The questions are within the scope of Plaintiff's affirmative designations. |
| 20. | Page 00359:<br>23: THE WITNESS: It was not<br>24: designed to appeal to youth, and,<br>25: frankly, I find the design quite<br><br>Page 00360:<br>01: bland. So I don't know that it has<br>02: any particular, you know, design<br>03: attributes that are appealing. | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope. This designation is about whether the JUUL was designed to have youth appeal which has nothing to do with the designation before or after it.<br><br>Proposing Party's Position:<br>Counter is for completion and in the same series of questions. The counter is within the scope of questions regarding whether the product was designed to appeal to youth (e.g., 51:22-52:6, 335:9-21) | **Overruled**. The questions are within the scope of Plaintiff's affirmative designations. |
| 21. | Page 00362:<br>19: Q. Including between 2015 and<br>20: today to minimize youth access to JUUL,<br>21: right? | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope. This designation is about whether the JUUL was designed to have youth appeal which has nothing | **Overruled**. The questions are within the scope of Plaintiff's affirmative designations. |

Case No. 19-md-02913-WHO
SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | to do with the designation before or after it.<br><br><u>Proposing Party's Position:</u><br>This counter is within the scope of Plaintiff's affirmative designation asking whether the company could have taken more steps to minimize youth use (362:9-11, 15-17) | |
| 22. | Page 00362:<br>23:  THE WITNESS: I'm giving you a<br>24:  broad answer, saying at all times the<br>25:  company can always do more.  And I<br><br>Page 00363:<br>01:  think it's doing an incredible amount<br>02:  and has done incredible amount. | <u>Objecting Party's Position:</u><br>106/611 - Defendants' counters are not for completion and are outside the scope.  This designation is about whether the JUUL was designed to have youth appeal which has nothing to do with the designation before or after it.<br><br><u>Proposing Party's Position:</u><br>This counter is within the scope of Plaintiff's affirmative designation asking whether the company could have taken more steps to minimize youth use (362:9-11, 15-17) | **Overruled**. The questions are within the scope of Plaintiff's affirmative designations. |
| 23. | Page 00365:<br>04:  Q.    But there's no doubt that JUUL<br>05:  took off, at least in 2016 and 2017, right?<br>06:  A.    Yeah.  Probably a huge number<br>07:  of adults purchasing the product. | <u>Objecting Party's Position:</u><br>106/611 - Defendants' counters are not for completion and are outside the scope.  The p questions were not about sales but about the company taking more steps to prevent youth access.<br><br>The witness is speculating .. he even says, "probably a huge number of adults purchasing the product."<br><br><u>Proposing Party's Position:</u><br>Defendants counters are for completeness; they are within the scope of questions about the timing of youth use and whether JLI "played | **Sustained**.  The designation goes beyond the scope of Plaintiff's affirmative designations.  The question asked about JUUL "taking off" and the witness responds regarding the number of purchases.  That was not raised in Plaintiff's affirmative designations. Moreover, the witness is speculating. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
|     |                                  | a role in causing the youth vaping problem" (e.g., 254-255, 360); Witness is speaking from his knowledge about adult smokers purchasing the product and is not speculating |        |
| 24. | Page 00365: 16:  And the rapid rise in youth 17:  e-cigarette use coincided with JUUL's rapid 18:  rise in sales, right? 19: A.     No.  That was actually my 20:  point, which is that you really saw a massive 21:  increase in youth usage in the 2018 NYTS 22:  data, and that in 2016 and 2017 NYTS data 23:  reported a decrease.  At least to the best of 24:  my knowledge. And again, I'm no expert. 25: Q.     And -- <br><br>Page 00366: 01: A.     Sorry.  What I was saying, in 02:  2016, 2017, NYTS reported a decrease in youth 03:  usage of the category generally.  So -- yeah. | Objecting Party's Position: See prior objection to 365:4-7 <br><br>Proposing Party's Position: Defendants counters are for completeness; they are within the scope of questions about the timing of youth use and whether JLI "played a role in causing the youth vaping problem" (e.g., 254-255, 360); Witness is speaking from his knowledge about adult smokers purchasing the product and is not speculating | **Overruled**.  This designation is within the scope of Plaintiff's affirmative designations. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | | | |
| 25. | Page 00567:<br>15: 159 -- and as we're pulling it up, can you<br>16: just tell me what the purpose of your meeting<br>17: with folks at Altria was in 2009? | Objecting Party's Position:<br>Motion to strike Mr. Villani's nonresponsive speech. FRE 401/402 and 403. 106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Proposing Party's Position:<br>This counter is directly responsive to the prior designated question at 565:14-24, which is about a meeting with Altria in 2009; he explains the purpose of that meeting directly in this testimony. The counter is within the scope of Plaintiff's designations regarding meetings with Altria in 2009 (see, e.g., 564-565, 571-574) | **Sustained** as to 567:18-569:3. The witness' initial response was not responsive to the question posed. That portion of his answer will be stricken as non-responsive.<br><br>**Overruled** as to the remaining designations. The remaining portions of the witness' answer are responsive and are within the scope of Plaintiff's affirmative designations. |
| 26. | Page 00567:<br>18: A.    You know, the company started,<br>19: you know, with the premise that it wanted to<br>20: end cigarettes and developed a heat, not<br>21: burn, tobacco platform that would<br>22: dramatically reduce the harm from -- from<br>23: cigarettes by using low temperature<br>24: vaporization to heat the tobacco to a<br>25: temperature that didn't have -- that had very<br><br>Page 00568: | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Proposing Party's Position:<br>This counter is directly responsive to the prior designated question at 565:14-24, which is about a meeting with Altria in 2009; he explains the purpose of that meeting directly in this testimony. The counter is within the scope of Plaintiff's designations regarding meetings with Altria in 2009 (see, e.g., 564-565, 571-574) | **Sustained** as to 567:18-569:3. The witness' initial response was not responsive to the question posed. That portion of his answer will be stricken as non-responsive.<br><br>**Overruled** as to the remaining designations. The remaining portions of the witness' answer are responsive and are within the scope of Plaintiff's affirmative designations. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|-----------------------------------|--------------------|--------|
|     | 01: limited HPHCs, harmful compounds, and really<br>02: took away the -- the negative consequences of<br>03: combustion, and certainly would have like<br>04: much fewer ingredients, et cetera, so a much<br>05: cleaner vapor profile. And it was a very<br>06: early version, a very crude product.<br>07: And -- and I think all the<br>08: major tobacco companies -- you know,<br>09: referencing Barbarians at the Gate, if you<br>10: remember the movie, they've all plowed a lot<br>11: of money into finding a way to develop<br>12: reduced-risk products, and -- and this is<br>13: very early days still. I mean, I think<br>14: Barbarians at the Gate was very early days.<br>15: But, you know, they'd been | | |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
|     | 16: spending, you know, tens, if not hundreds, of<br>17: millions of dollars a year on research and<br>18: development to find alternative --<br>19: alternatives to smoking because they realized<br>20: and, of course, you know, had 'fessed up to<br>21: and were paying the price of the damage<br>22: caused by cigarettes.<br>23: And so, you know, obviously it<br>24: didn't do anything in terms of changing an<br>25: industry like that. You know, I think<br><br>Page 00569:<br>01: cigarettes are obviously a very successful<br>02: consumer product commercially, but, you know,<br>03: brought a lot harm.<br>04: The idea was that if these<br>05: companies are spending a ton of resources<br>06: trying to develop reduced-risk products, |   |   |

SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 5

LARSON
LOS ANGELES

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|----------------------------------|--------------------|--------|
| | 07:  there might be a world where there would be<br>08:  collaboration potential where Ploom and, you<br>09:  know, brilliant engineers with kind of an<br>10:  empathic product focus, you know, would be<br>11:  able to -- if you do it better than they were<br>12:  able to do, because they had innovative ideas<br>13:  on how to go about it.<br>14:  So I think the conversations<br>15:  were really exploratory.  They really didn't<br>16:  lead anywhere at the time, and it was<br>17:  interesting to see their efforts that they<br>18:  were making to develop reduced-risk products. | | |
| 27. | Page 00595:<br>15:  When you made your investment<br>16:  in Ploom, or anytime thereafter, you never<br>17:  had in your mind what would be a reference | Objecting Party's Position:<br>Same as 567:18-569:18<br><br>Proposing Party's Position:<br>This counter is within the scope of Plaintiff's designations implying that JLI sought to partner with combustible cigarette companies in | **Overruled**.  The witness' answer is responsive and the designation is within the scope of Plaintiff's affirmative designations. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 18:    point or an acceptable or expected or<br>19:    intended level of youth usage, correct? | order to "maintain the youth culture market" (see 590-591) | |
| 28. | Page 00596:<br>03:    A.  Yeah, I -- I have to be very<br>04:    clear.  I'm against youth usage of JUUL<br>05:    products.<br>06:    Q.    And certainly there was no<br>07:    intended -- from your perspective, is that<br>08:    what you're saying?  Is your testimony that<br>09:    there was no intended amount of youth usage<br>10:    of Ploom or JUUL products?<br>11:    A.    Never. | <u>Objecting Party's Position:</u><br>Same as 567:18-569:18<br><br><u>Proposing Party's Position:</u><br>This counter is within the scope of Plaintiff's designations implying that JLI sought to partner with combustible cigarette companies in order to "maintain the youth culture market" (see 590-591) | **Overruled**.  The witness's answer is responsive and the designation is within the scope of Plaintiff's affirmative designations. |
| 29. | Page 00762:<br>24: Q.    Okay.  Thank you.<br>25: Let's switch subjects then.<br>00: 00763<br>01:  You were asked a lot questions about underage<br>02:  usage.  So you were an investor and a member | <u>Objecting Party's Position:</u><br>Compound; Vague The question was non-responsive.<br><br>Valani did not answer the question about board directives. Motion to strike as nonresponsive.<br><br><u>Proposing Party's Position:</u><br>These questions are necessary to provide context to prior questions re youth usage; he provides direct answers regarding the board's direction.  No form objection raised | **Overruled**. The question are not compound or vague.  Mr. Valani answers the questions posed. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|-----|-----|-----|-----|
| | 03: of the board of directors of Ploom, PAX, JLI. 04: At any point when the subject 05: of underage usage of the JUUL product came 06: up, what was the board's direction to the 07: company? 08: A.    That in no circumstance should 09: a JUUL end up in underage hands, and that the 10: company should always do more to mitigate any 11: risk of that. 12: Q.    In the discussions on that 13: issue that you participated in, was there 14: any -- ever any suggestion about trying to do 15: the minimum or cut corners or just do 16: anything that -- the smallest amount possible 17: on the issue of trying to prevent or mitigate 18: underage usage? 19: A.    Never. Quite the opposite. | at the time, but both parties reserved the right to assert form objections. See 5/25/22 Joint Letter | |
| 30. | Page 00763: | Objecting Party's Position: | **Sustained**.  The question calls for hearsay.  The |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 20:  Q.    Okay. What were your personal<br>21:  views?  What did you say in those kinds of<br>22:  discussions?<br>23:  A.    I would say that the company<br>24:  needed to hold itself to a very high<br>25:  standard, that youth usage was a real risk to<br><br>Page 00764:<br>01:  the mission, and that we really needed to<br>02:  take the matter seriously and -- both in<br>03:  terms of conduct but also in terms of<br>04:  developing solutions that could be used to<br>05:  really combat the problem, and in a way that<br>06:  really no other category of restricted<br>07:  products had ever been effective at doing.<br>08:  And in that respect, we really<br>09:  encouraged -- as a board, we really<br>10:  encouraged the management team and the | 106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Vague - discussions with who?  Calls for Hearsay.<br><br><u>Proposing Party's Position:</u><br>These counters are within the scope of Plaintiff's designations implying that JLI acted irresponsibly or that JLI caused a youth use epidemic (e.g., 72:7-10, 72:15-20, 360:14-15, 360:18-22). The question is not vague, it asks about discussions at the board level.  It does not call for hearsay and no hearsay is elicited. No form objection raised at the time, but both parties reserved the right to assert form objections. See 5/25/22 Joint Letter | witness testifies to what he would say to others, which are out-of-court statements.  Defendants have not offered a non-hearsay purpose for the testimony. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 11: company to really evolve on this topic, both<br>12: from a, you know, policy and, you know,<br>13: business conduct perspective, but also from a<br>14: technology and solutions development<br>15: perspective, and really didn't impose any<br>16: limitations on time or money that would go to<br>17: these efforts. | | |
| 31. | Page 00764:<br>24: Q. Whenever the subject came up at<br>25: the board level, can you describe for us what<br><br>Page 00765:<br>01: the attitude of the board was with regard to<br>02: the safety and efficacy of the product?<br>03: A. Similarly, that the company<br>04: needed to keep a high standard of safety,<br>05: that efficacy, you know, was important. Also<br>06: wanted to make sure that the products | Objecting Party's Position:<br>106/611 - Defendants' counters are not for completion and are outside the scope.<br><br>Proposing Party's Position:<br>These counters are within the scope of Plaintiff's designations implying that JLI acted irresponsibly or that JUUL products are unsafe because they contain nicotine (e.g., 72:7-10, 72:15-20, 170:4-21) | **Overruled**. The question is within the scope of Plaintiff's affirmative designations. |

| No. | Plaintiff's Counter-Designations | Parties' Positions | Ruling |
|---|---|---|---|
| | 07:  achieved the desired result in terms of<br>08:  switching adult smokers and that the company<br>09:  should be heavily invested in scientific and<br>10:  regulatory capacity, you know. | | |

DATED: September 8, 2022

_S G Larson_

_____

Hon. Stephen G. Larson (Ret.)
Special Master