# Exhibit 11
# Filed Under Seal

# RULE 26 EXPERT REPORT
# OF MINETTE E. DRUMWRIGHT, Ph.D.

## JUUL Litigation

## May 2, 2022

*[signature: Minette E. Drumwright]*

_____

**Minette E. Drumwright, Ph.D.**

Valley to date, in a company (JLI) would not exercise direction, operation and management over that company directly or indirectly. As the single largest shareholder with 35 percent of JLI's shares and strategic alignment with JLI's existing board members who also had significant ownership interests, Altria had the ability to manage and operate JLI in nearly all respects and played a significant part in directing the affairs of JLI during the relevant time period.

- It is naïve, simplistic, and ignorant of business dynamics to expect that a tobacco behemoth (Altria) with immense operating expertise and massive resources in regulatory affairs, distribution, marketing, and sales would not exercise direct or indirect operation or management of a company (JLI) with which it has a strategic partnership/strategic alliance.
    - Professor Rock's report does not take into account the influence, management, and direction that a minority investor can exert through a "toehold" investment that creates an equity alliance and a strategic partnership/strategic alliance.
    - Professor Rock's report ignores the multiple, compelling bases of power and influence that Altria as a minority investor used to manage, operate, and direct JLI as the largest investor and a tobacco behemoth with expertise and assets specific to the industry and markets in which JLI operates.
    - Professor Rock's report ignores the nature of the professional, consultative services that Altria committed to provide for JLI in its service agreement, which involved exerting influence, management, and direction over the operations of JLI in a variety of areas such as regulatory affairs, distribution, marketing, and sales.

- It is naïve, simplistic, and ignorant of business dynamics to think that rewarding JLI board members personally with enormous sums of money (e.g., $2.6**B** for Valani[23] and $1.82**B** for Pritzker[24]) would not result in a significant form of influence and direction. As explained below, such enormous personal rewards create conflicts of interest, interfere with JLI directors' fiduciary responsibilities to the company, and invoke a condition known in behavioral ethics as motivated blindness, in which people do not see unethical behavior because it is not in their best interest to do so.[25] As such, JLI directors were unaware of their conflicts of interest or the manner in which Altria was influencing and directing their behavior and decision making.[26] Professor Rock himself admitted that offering someone substantial amounts of money to do what you want can be a form of control.[27]

- It is naïve, simplistic, and ignorant of business dynamics to think that K.C. Crosthwaite, a board observer who represented Altria on the JLI Board and later became JLI's CEO at Altria's recommendation, would not be influenced by his 21 years of work experience at Altria.[28] As elaborated below, given what is known from research on executive socialization,[29] one would expect Crosthwaite to be receptive to Altria's influence and

---

[23] *See* Ex. 14012, Pritzker Dep.
[24] *See* Pritzker Dep. 165:17-167:12, 427:7-429:12; Pritzker Dep. 14012
[25] Bazerman, M. and Tenbrunsel, A., *Blind Spots.* 2010, Princeton, NJ: Princeton University Press.
[26] Drumwright, M. E., Prentice, R., and Biasucci, C., *Behavioral Ethics and Teaching Ethical Decision Making.* Decision Sciences Journal of Innovative Education, 2015, 13(3): 431-458.
[27] Rock Dep. at 130:2-13
[28] https://www.diversityinc.com/k-c-crosthwaite-named-president-ceo-altrias-philip-morris-usa/
[29] Schein, E. H., *Organizational Socialization and the Profession of Management*, Industrial Management Review, 1968 9: 1-16; Robinson, R., *Executive Branch Socialization and Deference on the U.S. Supreme Court*, Law & Society Review, 2012 46 (4): 889-921.

direction and to influence members of JLI's Board of Directors to be favorably inclined toward Altria's influence and direction.

When the evidence is analyzed from a practical business perspective, Altria, no doubt, played a key role in directing, operating, and managing the affairs of JLI during the relevant time period.

## IV.  Insights from Academic Research

Academic research from a variety of areas can inform the issues at play in understanding the manner in which Altria influenced, managed, operated, and directed JLI. Below I review some of the academic research related to the following areas: minority investments; equity alliances or strategic partnerships/strategic alliances; and power and influence.

### A. Toeholds are minority investments that give the investor opportunity to interact and collaborate with the target

Toeholds are minority equity stakes (i.e., investments of less than 50 percent) in a target company that give the investor opportunity to interact with the target and gain information about it.[30] Such experience with and information about the target company enable the investor to resolve uncertainties related to possible synergies between the two companies, assess the target's long-term growth potential, and determine whether a larger investment (e.g., an acquisition) would be beneficial.[31] Toeholds are typically significant minority investments. For example, in a recent study, the average toehold investment was 27 percent ownership.[32] Often toeholds include the right for the investor or "toeholder" to appoint a director and collaborate in meaningful ways

---

[30] Povel, P. and Sertsios, G., *Getting to Know Each Other: The Role of Toeholds in Acquisitions*, Journal of Corporate Finance, 2014 26: 201-224.
[31] Smit, H. T. J. and Kil, J. C. M., *Toehold Acquisitions as Behavioral Real Options*, California Management Review, 2017 59(3): 42-72.
[32] Povel and Sertisos, *Getting to Know Each Other.*