Exhibit 12
3505-13

LOUISE H. RENNE (SBN 36508)
lrenne@publiclawgroup.com
RYAN McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
RENNE PUBLIC LAW GROUP LLP
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Tyler W. Hudson (*pro hac vice*)
WAGSTAFF & CARTMELL LLP
4740 Grand Ave., Ste. 300
Kansas City, MO 64112
Tel. (816) 701-1100
Fax (816) 531-2372
tcartmell@wcllp.com
jpkieffer@wcllp.com
thudson@wcllp.com

Attorneys for Plaintiff San Francisco Unified School District

(additional counsel on signature page)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*San Francisco Unified School District v. Juul Labs, Inc., et al.*, No. 3:19-cv-08177-WHO | No. 19-md-2913-WHO<br><br>**PLAINTIFF SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT ALTRIA GROUP, INC.'S FIRST SET OF INTERROGATORIES** |

were Mango and Mint," and "Virginia Tobacco was a distant third in popularity."[47] This was confirmed directly from JUUL a few months later. In the Spring of 2018, ALTRIA Board Member Dinyar Devitre had sent an email to JUUL Board Member Riaz Valani with the subject "Mint percentage?" and asked "What proportion of total sales is in non tobacco flavor for J?" Valani replied "A majority. We can discuss live [i.e., not in writing] when we next meet."[48] ALTRIA was also receiving data of JUUL sales by flavor from Avail Vapor. For example, on January 3, 2018, James Xu of Avail met with David Wise, Steven Schroder, and Zane Underwood of ALTRIA and Avail shared JUUL usage, flavor, and demographic data, including the fact that the majority of users of JUUL were under the age of 25, and a large portion were under the age of 20.[49] Mr. Xu also highlighted his "concern over youth appeal and marketing philosophies" of JUUL.[50]

On October 15, 2018, ALTRIA's CEO, Howard Willard, told ALTRIA employees at a town hall that "JUUL has created a youth usage epidemic."[51] ALTRIA witnesses, including a corporate designee, have also admitted that "JUUL contributed to the youth usage epidemic in e-vapor."[52] In a 2019 document, ALTRIA admitted internally that before it invested "[w]e were aware that Juul had a youth problem."[53]

**INTERROGATORY NO. 5**: Describe in detail any advertising that ALTRIA was involved in that you allege expanded JUUL's reach to SFUSD students, including a description of the advertising, the date it was made, and the audience who received it.

**RESPONSE:** Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions, set forth above.

Plaintiff objects to this Interrogatory as premature because the information sought is subject to ongoing discovery and the factual record is not complete.

---

[47] ALGAT0003012781.
[48] MDL_RV0016578.
[49] Schroeder Dep. Tr. at 462:11-25; Xu Dep. Tr. at 218:24-226-11; 52111558606.
[50] 5211558606.
[51] ALGAT0000102204.
[52] Deposition of ALTRIA through 30(b)(6) witness, Blaylock Dep. Tr. at 540:7-21.
[53] 5185317524.

Plaintiff objects to the Interrogatory as vague and ambiguous because the phrases "involved in" and "expanded JUUL's reach to SFUSD students" are subject to more than one interpretation, as are the terms "audience" and "received."

Plaintiff objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Plaintiff to determine whether Altria was "involved in" advertising.

Plaintiff objects to this Interrogatory as unduly burdensome and disproportionate to the needs of the case to the extent it seeks information known by or equally available to ALTRIA or more readily available from sources other than Plaintiff, including other defendants in this case or third parties to whom requests for information have been or may be directed.

Plaintiff objects to the Interrogatory as calling for a legal conclusion or otherwise seeking Privileged Information or Expert Opinion. Any response to this Interrogatory will not include Privileged Information. Plaintiff will make appropriate expert disclosures in accordance with the Federal Rules of Civil Procedure, local rules, and applicable Court orders.

Subject to and without waiving the foregoing objections, Plaintiff states, based on the information currently available to it following a reasonable, good faith search, that examples of advertising that ALTRIA was involved in that is alleged to have expanded JUUL's reach to SFUSD students can be ascertained from the Complaint, including Section IV.D.4. Without limiting the foregoing, Plaintiff states that examples of advertising ALTRIA was involved in that expanded JUUL's outreach to all consumers, including SFUSD students, include the "Make-the-Switch" campaign.

After the investment, ALTRIA disseminated millions of "Make-the-Switch" advertisements, in four main channels: inserts inside packages of ALTRIA's top-selling cigarettes, direct mailers highlighting JUUL's flavors, in email campaigns, and through point-of-sale advertisements. Specifically, ALTRIA placed JUUL advertisements in 20 million packages of L&M and Parliament cigarettes in May of 2019, and 30 million inserts in Marlboro cigarettes, the

most popular brand of cigarette with youth, in September of 2019.[54] In March, September, and December, ALTRIA sent out millions more direct mail advertisements – 1.5 million "Make-the-Switch" mailers in March with $10 coupons (highlighting all of JUUL's flavors, including mint and mango), 2.5 million "Make-the-Switch" mailers with $10 coupons in September (spotlighting mint flavored JUULpods), and 3.8 million more mailers with $5 coupons for the device and touting that JUUL was "designed for smokers" after JLI was forced to stop the deceptive "Make-the-Switch" campaign by the FDA.[55] ALTRIA also sent out hundreds of millions of emails promoting this campaign: 15 million in February, 250 million in March, and 52 million in June, with the latter two offering 40% off of JUUL starter kits (complete with mint, tobacco, crème brulee, and mango flavors).[56] ALTRIA also shipped and placed over one million point of sale elements in stores across the country, many of which were "Make-the-Switch" advertisements.[57]

In addition, despite being warned that "a dramatic increase in product availability will almost certainly have a negative impact on FDA's efforts to reduce youth e-cigarette use," ALTRIA worked to get JUUL products, particularly mint, into as many hands as possible.[58] ALTRIA signed a number of statements of work and agreed to help JUUL with sales and distribution services. Specifically, as discussed above, ALTRIA spent approximately $100 million in 2018 to secure shelf-space at retailers for e-cigarette products. ALTRIA and JLI both knew that exposure to the "Tobacco Power Wall" increases youth desire to use e-cigarettes.[59] By acquiring shelf space, ALTRIA took steps to ensure that JUUL products would be placed in premium shelf space next to Marlboro brand cigarettes, the best-selling cigarette overall and by far the most

---

[54] JLI01339874; 9560746416.
[55] 9566600105; 9564499611; JLI01339912; JLI01339915; JLI01339967; JLI01339970; *FDA warns JUUL Labs for marketing unauthorized modified risk tobacco products, including in outreach to youth*, FDA (Sept. 9, 2019), https://www.fda.gov/news-events/press-announcements/fda-warns-juul-labs-marketing-unauthorized-modified-risk-tobacco-products-including-outreach-youth.
[56] JLI01339927; 9566600105; 9564499611.
[57] 9564499767.
[58] ALGAT0003768208.
[59] JLI21268005; ALGAT0003663192.

popular brand among youth, even after JUUL could no longer safely target youth with its advertising.[60] After the investment, ALTRIA and JUUL signed statements of work #1 and #5 and ALTRIA helped place JUUL products in this top shelf, coveted shelf space in approximately 40,000 stores, including at least 1,973 stores in California, and 21 in San Francisco itself.[61]

ALTRIA also made sure that JUUL products were on the shelves when people wanted to buy them by helping with pre-books and closing distribution gaps in stores through statements of work: # 4 (Selling/executing pre-books for 10 JUUL SKUs, including Mint flavored JUULpods);[62] # 6 (the "blitz," under which AGDC provided in store inventory management and signage services for 77,000 retail locations);[63] and # 13 and 24 (territory sales management support with marketing, surveys, addressing inventory issues, executing signage, and addressing out of stock situations in 44,000 stores).[64]

ALTRIA's work was effective. After JLI had moved most of its flavors to online only, mint products were extremely popular in stores, but often out of stock. ALTRIA touted its success in fixing that, noting that in just three months, it closed 357,000 distribution gaps across 77,000 stores and reduced out of stock situations for Mint 5% four packs by 22% and JUUL Slate Device Kits by 51%.[65] ALTRIA's sales representatives also discussed going into tens of thousands of stores around the country, convincing them to buy and stock more JUUL products. In February, ALTRIA convinced McLane to order 25% more JUUL products than they otherwise would have, which ALTRIA touted to JUUL as "[a]nother example of the effectiveness" of its services."[66] In March, ALTRIA's sales team convinced stores to order 203,000 cartons of JUUL products to

---

[60] ALGAT0004314953.
[61] 9561526916; JLI01426152; Daviduke Dep. Tr. at 92, Ex. 2704; JLI01339889; Daviduke Dep. Tr. at 105, Ex. 2705.
[62] JLI01339886; Daviduke Dep. Tr. at 125, Ex. 2706.
[63] JLI01339878; Daviduke Dep. Tr. at 151, Ex. 2707.
[64] JLI01339937; Daviduke Dep. Tr. at 296, Ex. 2719; JLI01139930; Daviduke Dep. Tr. at 345, Ex. 2721.
[65] 9564499767; 9564239915; 9560815473.
[66] JLI0074303.

24,000 stores.[67] In a three week window in July, ALTRIA convinced stores to order 100,000 cartons of JUUL products to approximately 8,000 7-Eleven stores, skewed towards mint.[68] ALTRIA was more effective than JLI at selling its product.[69] ALTRIA also shipped and placed over one million point of sale elements in stores across the country, including advertisements for the deceptive Make-the-Switch campaign.[70]

As a result of ALTRIA's efforts, JLI bragged that they just had their "largest refill kit order week in history," while 7-Eleven reported they had their "best JUUL week ever! We attribute this to AGDC being in our stores."[71] As a result of ALTRIA's "market blitz" and sales work, "Mint growth [wa]s huge," but "sales are low" for Classic Tobacco.[72] ALTRIA also increased the amount of JUUL products visible on the Tobacco Power Wall by 10-12 new boxes per store.[73]

While ALTRIA eventually stopped providing marketing services to JUUL in early 2020, the damage was done.[74] From 2018 to 2019, the number of high schoolers using e-cigarettes rose from 20.8% to 27.5% and the number of middle schoolers using e-cigarettes rose from 4.9% to 10.5%.[75]

According to the CDC's High School Youth Risk Behavior Survey, the percentage of students in Plaintiff's high schools (grades 9-12) that reported using an electronic vapor product in the prior 30 days increased from 7.1% in 2017 to 16% in 2019. The percentage of students who had ever tried an electronic vapor product also increased over that period from 25% to 31.1%.

---

[67] ALGAT0004284892.
[68] 9564499767; 9564239915;, 9560815473.
[69] ALGAT0002940950.
[70] 9564499767.
[71] ALGAT0002940950; 9560815473.
[72] JLI01010641.
[73] ALGAT0004284892.
[74] 5185785795.
[75] *6.2 Million middle and high school students used tobacco products in 2019, E-cigarettes most commonly used tobacco product*, CDC (Dec. 5, 2019), https://www.cdc.gov/media/releases/2019/1205-nyts-2019.html; *2018 NYTS Data: A Startling Rise in Youth E-cigarette Use*, FDA (May 4, 2020), https://www.fda.gov/tobacco-products/youth-and-tobacco/2018-nyts-data-startling-rise-youth-e-cigarette-use.

Furthermore, 2.6% of high schoolers reported using an electronic vapor product on 20 or more of the past 30 days.

According to the CDC's Middle School Youth Risk Behavior Survey, the percentage of students in Plaintiff's middle schools (grades 6-8) that reported using an electronic vapor product in the prior 30 days increased from 2% in 2017 to 3.7% in 2019. The percentage of students who had ever tried an electronic vapor product also increased over that period from 6.9% to 8.8%.

Plaintiff further states that this Interrogatory calls for information that is subject of Expert Opinion. Plaintiff will disclose such non-privileged information responsive to this Interrogatory in accordance with the Federal Rules of Civil Procedure, local rules, and the Court's orders.

<u>INTERROGATORY NO. 6</u>: Describe in detail any specific advertising by ALTRIA that you allege caused SFUSD students to use JUUL products, the amount of any increase in JUUL use resulting from this advertising, and your basis for these claims.

**RESPONSE:** Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions, set forth above.

Plaintiff objects to this Interrogatory as premature because the information sought is subject to ongoing discovery and the factual record is not complete.

Plaintiff objects to the Interrogatory as vague and ambiguous because the phrase "increase in JUUL use" and "resulting from" and the term "caused" are subject to more than one interpretation.

Plaintiff objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Plaintiff to determine whether "specific advertising" was "by ALTRIA."

Plaintiff objects to this Interrogatory as unduly burdensome and disproportionate to the needs of the case to the extent it seeks information known by or equally available to ALTRIA or more readily available from sources other than Plaintiff, including other defendants in this case or third parties to whom requests for information have been or may be directed.

No. 19-md-2913-WHO

29

PL. SFUSD'S SUPP. RESPONSES AND OBJECTIONS TO DEFENDANT ALTRIA GROUP, INC.'S FIRST ROGS