# Exhibit 34 Filed 3505-35

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: JUUL LABS, INC. MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) | Case No. 19-md-02913-WHO |

**Government Entity Bellwether Case Specific
Expert Report of Professor Edward B. Rock**

**January 28, 2022**

**CONFIDENTIAL**

61.As described above, Altria has no power to freeze-out the other JLI shareholders. Indeed, Altria may not even increase its percentage ownership without agreement of the board.

62.Finally, a controlling shareholder can sometimes exercise control by threatening to sell its controlling interest to a third party without offering the other shareholders an opportunity to tag along.

63.Altria is sharply limited it is ability to sell its shares to a third party including a six-year lock-up period during which it cannot self its shares without the approval of the non-Altria board members.

64.Under the governance structure created by the agreements entered into between Altria and JLI, Altria does not control JLI.

65.There is substantial deposition testimony that confirms my analysis of the transactional structure created by the key agreements.

66.Adam Bowen, a co-founder of JLI and a member of its board of directors, testified that, from the outset, JLI did not want to sell control to Altria:

> Q.Now, a deal with Altria, you talked about some of the parameters. What do you recall about discussions around the parameters of the deal that you were involved in?
>
> A.So I think the most important feature of a deal or a partnership that we would consider was concerning control. So we did not want to do, for instance, a deal where Altria took majority -- a majority position in the company and control of the company, nor did we want a -- there to be really a path for them to some day obtain control, because we thought that it was -- you know, if we were to ensure that our health goals are met, that we -- you know, we remain the stewards of the company.
>
> Q.You were concerned about Altria having control over the company because they might not share the same public health interest as JUUL does, right?
>
> A.We just -- we just didn't know. So for -- for the sake of caution and security and knowing that we would stay true to our own values, that was -- that was an important consideration.

20

>    A. The ultimate price was a negotiated price.
>
>    Q. Did Altria dictate how the transaction would be structured or was that negotiated?
>
>    A. Negotiated.
>
>    Q. Before due diligence on the investment began, did JLI provide Altria with access to JLI's confidential business information?
>
>    A. No, I don't believe so.

Kevin Burns Dep Tr. (June 30, 2021), 685:4–688:9.

72. Mr. Crosthwaite, who replaced Mr. Burns as JLI's CEO, was equally unequivocal that Altria did not and does not control JLI:

>    Q. Mr. Crosthwaite, is it your testimony that Altria had no control over JUUL?
>
>    A. So Altria is a minority shareholder in JUUL and they do not have control over the company.

K.C. Crosthwaite Dep. Tr. (Oct. 7, 2021), 317:6–11.

### E. Key participants' duties and behavior

73. As noted above, plaintiffs claim that Altria installed K.C. Crosthwaite and Joe Murillo to serve its interests. As a matter of Delaware corporate law, however, once Mr. Crosthwaite and Mr. Murillo resigned their positions at Altria and were appointed to their positions at JLI, they ceased to owe fiduciary duties to Altria and immediately owed fiduciary duties of care and loyalty to JLI.

74. Plaintiffs also seem to suggest that Altria's right to appoint a board observer somehow gives it the power to direct or control JLI. Although Altria does have the right to appoint a board observer, that observer is fundamentally different from a director. In particular: the Altria board observer cannot vote for board action; the Altria board observer is aligned with Altria's interests