UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL LABS, INC.,
MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY
LITIGATION,

Case No.  19-md-02913-WHO

**JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
PROPOSED AGENDA**

This Document Relates to:

*Aragona v. Juul Labs, Inc. et al*, Case No.
3:20-cv-1928
*Dupree v. Juul Labs, Inc. at al*, Case No.
3:20-cv-03850
*Fay et al v. JUUL Labs, Inc. et al*, Case
No. 3:19-cv-07934
*Lane v. Juul Labs Inc. et al*, Case No. 3:20-
cv-04661
*Legacki v. Juul Labs, Inc. et al*, Case No.
3:20-cv-01927
*McKnight et al v. Juul Labs, Inc. et al*,
Case No. 3:20-cv-02600
*Nessmith et al v. Altria Group, Inc. et al*,
Case No. 3:19-cv-06344
*Sedgwick et al v. Juul Labs, Inc. et al*, Case
No. 3:20-cv-03882
*Shapiro et al v. Altria Group, Inc. et al*,
Case No. 3:19-cv-07428
*Tortorici v. Juul Labs, Inc. et al*, Case No.
3:20-cv-03847

Pursuant to Civil Local Rule 16-10(d), ten personal injury plaintiffs who are represented by

the Schlesinger firm ("litigating plaintiffs"), counsel to Defendant Juul Labs, Inc. ("JLI"), counsel

to the JLI Settling Defendants[1], counsel to the independent retailer Defendants, and counsel to

Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria

Enterprises LLC, and Altria Group Distribution Company ("Altria") (collectively referred to herein

---

[1] Specifically the JLI Settling Defendants include: JUUL LABS, INC., previously d/b/a PAX
LABS, INC. and PLOOM INC.; JAMES MONSEES; ADAM BOWEN; NICHOLAS PRITZKER;
HOYOUNG HUH; RIAZ VALANI; MOTHER MURPHY'S LABS, INC.; ALTERNATIVE
INGREDIENTS, INC.; TOBACCO TECHNOLOGY, INC.; eLIQUITECH, INC.; MCLANE
COMPANY, INC.; EBY-BROWN COMPANY, LLC; CORE-MARK HOLDING COMPANY,
INC.; CHEVRON CORPORATION; CIRCLE K STORES INC.; SPEEDWAY LLC; 7-ELEVEN,
INC.; WALMART; and WALGREENS BOOTS ALLIANCE, INC.

1    as the "Parties") respectfully provide this Joint Case Management Statement before the Case

2    Management Conference scheduled for April 8, 2025.

3    **I.    PARTICIPANT INFORMATION**

4        The April 8, 2025, CMC will proceed by Zoom.  Anyone who wishes to attend the

5    conference virtually may log in using the information available at:

6    https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

7    **II.    ISSUES TO BE DISCUSSED AND PROPOSED AGENDA**

8            **a.    Remaining fact & expert discovery**

9            **b.    Timing for answers**

10           **c.    Extended deposition schedule**

11       The Additional Discovery period required by Case Management Order ("CMO") Nos. 17

12   and 19 concluded on March 31, 2025.  *See* Dkt. 4375.  (An exception is the *NesSmith* case, for

13   which the deadline to conduct Additional Discovery is April 30, 2025.  *See* Case No. 3:19-cv-

14   06344, Dkt. 60).  The CMOs contemplate summary judgment motions after the close of the

15   Additional Discovery period. The Court already ordered a briefing schedule for those.  *See* Dkt.

16   4375 (briefing schedule starting May 16 and concluding July 11); Case No. 3:19-cv-06344, Dkt.

17   60 (*NesSmith* briefing schedule starting June 16 and concluding August 11.  Below, the parties

18   notify the Court of the remaining items for completion and regarding at least two depositions that

19   will occur after the close of Additional Discovery.

20       **a.  Full fact and expert discovery**

21       **Defendants' position**

22       In all cases except *NesSmith*, the Additional Discovery period required under CMO 17 and

23   19 has now concluded.   CMO 17, Dkt. 3780 at 31; *see also* CMO 19, Dkt. 4112 at 34-35.  CMO

24   17 and 19 now provides for an initial round of dispositive motions and a "full fact and expert

25   discovery" period. CMO 17 at 32; CMO 19 at 35.  During that period, the parties may take "non-

26   duplicative discovery including additional expert disclosures."  CMO 17 at 32; CMO 19 at 35.

27       The parties have made significant progress since the Additional Discovery period began in

28   July 2024.  As of today, JLI and the Non-Management Directors have served Requests for

Production, JLI has served Interrogatories, and Defendants have deposed 52 individuals, including Plaintiffs in all cases except *Lane*, *NesSmith*, and *Shapiro*. Altria has likewise served Requests for Production and Interrogatories to Plaintiffs.

Still, much discovery remains before these cases can be remanded for trial. For example:

- Medical exams. Defendants intend to seek Independent Medical Examinations of each Plaintiff. When Defendants sought to conduct these exams during the current discovery period, Plaintiffs opposed them as premature, and the parties agreed they would be done during the full fact and expert discovery period.

- Plaintiffs' experts. Plaintiffs have served 51 case-specific expert reports (between four and seven reports per Plaintiff). Defendants assume that several of Plaintiffs' experts may supplement or update their reports to account for the discovery that has occurred or will occur (*e.g.*, fact depositions and Independent Medical Examinations). Defendants will then have to depose each of the experts and address each of their reports. Also, each Plaintiff has indicated that they may rely on any of the 100 reports previously submitted by MDL plaintiffs, which may require additional depositions, expert discovery, and/or motion practice.

- Defendants' experts. Defendants intend to disclose a similar number of case-specific experts and will need enough time for their experts to draft reports after any supplemental disclosures by Plaintiffs' experts. Plaintiffs presumably will want to depose some or all of Defendants' experts.

Further, under CMO Nos. 17 and 19, the initial round of dispositive and *Daubert* motions "shall not prejudice or otherwise foreclose" the parties from filing "later, non-duplicative summary judgment and *Daubert* motions" following completion of full fact and expert discovery. CMO 17 at 32; CMO 19 at 35.

Accordingly, in all cases except *NesSmith*,[2] Defendants propose that, after receiving direction from the Court, the parties meet and confer with the goal of proposing a schedule for the

---

[2] Defendants propose that all dates in the *NesSmith* schedule trail by one month, consistent with the current scheduling order in that case.

following items, subject to amendment as needed given subsequent developments in the cases:

- Full Fact and Expert Discovery Begins (including plaintiff IMEs)
- Plaintiffs' Supplemental Expert Disclosures
- Deadline to Depose Plaintiffs' Experts
- Defendants' Expert Disclosures
- Deadline to Depose Defendants' Experts
- Close of Full Fact and Expert Discovery
- Non-duplicative Dispositive and *Daubert* Motions

Defendants disagree with Plaintiffs' contention that "the Court should transfer or remand these cases" after ruling on the first round of dispositive motions.  To start, the power to remand MDL cases belongs to the Judicial Panel on Multidistrict Litigation.  *See* 28 U.S.C. § 1407(a); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998).  This Court's role is to suggest remand when it would "best serve the expeditious disposition of the litigation." Manual for Complex Litigation, Fourth, § 20.133; *see also* 28 U.S.C. § 1407 (the purpose of consolidation or coordination is "for the convenience of the parties and witnesses and [to] promote the just and efficient conduct" of the cases).

The Court already has determined that remand would not be appropriate now.  The Court repeatedly has said that it "intend[s] to follow CMO number 17."  Transcript of Proceedings by Zoom Webinar at 8 (May 6, 2024).  And CMO 17 provides for further pre-trial proceedings here: it states that, "[b]ased upon the outcome of any summary judgment motions, if appropriate, the Court," *i.e.*, *this* Court, "will set a Case Management Conference to determine whether any non-duplicative discovery . . . are necessary."  CMO 17, Dkt. 3780 at 32; *see also* CMO 19, Dkt. 4112 at 35.  As described above, a significant amount of non-duplicative fact and expert discovery remains, and it should occur before this Court.

Even setting CMO 17 and CMO 19 aside, Plaintiffs cannot meet their "burden of establishing that . . . remand is warranted."  *In re Integrated Res., Inc. Real Est. Ltd. P'ships Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. Apr. 28, 1994) (denying suggestion of remand because good cause was not shown).  In exercising discretion whether to suggest remand, transferee courts

1    consider, among other things, their own familiarity with the litigation, *see, e.g.*, *U.S. ex rel.*

2    *Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. July 17, 2007)

3    (denying suggestion of remand), and any overlap in the remaining discovery, *see, e.g.*, *In re*

4    *Wilson*, 451 F.3d 161, 172 (3d Cir. 2006) (denying remand).  "In cases where remand has been

5    deemed appropriate prior to the conclusion of all pretrial proceedings, there was *no efficiency*

6    *gain to be had* by keeping the case before the transferee court."  *Hockett*, 498 F. Supp. 2d at 38

7    (emphasis added).

8        These factors counsel against remand.  "This Court's familiarity with the issues in this

9    case—a case which by now encompasses a voluminous docket— . . .  indicates that it would be

10   much more efficient to proceed" with discovery "in this Court rather than to ask the transferor

11   court[s] to play catch-up."  *Hockett*, 498 F. Supp. 2d at 38.  And at least the expert discovery

12   remaining is overlapping:  the 51 expert reports are authored by just nine unique experts, and

13   Plaintiffs have indicated they might rely on expert reports previously submitted by MDL

14   plaintiffs.  *See In re Wilson*, 451 F.3d at 172 (denying remand where "[s]everal . . . experts are

15   designated in multiple cases").  Expert discovery cannot be coordinated if cases are remanded

16   before the completion of this process.  As a result, this certainly is not a case in which "there [i]s

17   no efficiency gain to be had by keeping the case[s]."  *Hockett*, 498 F. Supp. 2d at 38.

18       Plaintiffs' goal in avoiding coordination is laid bare in their statement that, once the cases

19   are remanded, they will no longer have to "live[] under and the compl[y] with the weight and

20   burdens of CMO 17."  That is wrong as a matter of law – CMO 17 and CMO 19 will apply in

21   transferor courts no less than here, for "[i]f [this Court's] pretrial orders c[ould] be circumvented"

22   so easily, "much of the benefit derived from the MDL process is lost."  *Kelly v. Ethicon, Inc.*,

23   2020 WL 5949225, at *2 (N.D. Iowa Oct. 7, 2020); *see also In re Welding Fume Prod. Liab.*

24   *Litig.*, 2010 WL 7699456, at *2 (N.D. Ohio June 4, 2010) ("As a general matter, the transferor

25   court is bound, upon remand, by the orders entered by the transferee court during the coordinated

26   or consolidated pretrial proceedings.  Those decisions are considered law of the case.").

27   Plaintiffs' statement highlights that their effort to circumvent CMO 17 and CMO 19 knows no

28   limits.

1     For all the above reasons, the Court should order the parties to meet and confer regarding

2  a schedule for the remaining discovery and non-duplicative dispositive motions.  But, if this

3  Court is inclined to suggest remand, Defendants respectfully request an opportunity for full

4  briefing.

5         **Plaintiffs' position**

6     The issue presented here is what do to with the opt-out cases now that the Additional

7  Discovery Period has ended.  Plaintiffs maintain that once the Court resolves Defendants'

8  forthcoming *Daubert* and summary judgment motions, the Court should transfer or remand these

9  cases to the district courts that will preside over a trial. This is because the Court stated it does not

10 intend to try these cases, and the remaining case-work is ancillary to trial. *See* May 6, 2024 Hrg.

11 Tr. 8:11-15.  The Court also stated that the best way to trial is through compliance with CMO 17.

12 *See* Jan. 20, 2023 Hrg. Tr. 22:7-9 (agreeing with JLI's counsel's argument, "the materials we are

13 seeking in CMO Number 17 are precisely the materials that those plaintiffs would need to do to

14 progress to trial in any event" *Id.*, at 22:7-9).

15    Plaintiffs have complied with CMO 17, which was to test the viability of their claims.  These

16 cases must therefore be placed on a path to effectuate resolution on the merits.  Defendants'

17 proposal does little more than create a process that extends the process.  Following Defendants

18 means that it would take longer for these Plaintiffs to obtain a trial date than the bellwethers.  It

19 means that Plaintiffs, who brought filed suit as teenagers, won't see a courtroom until their mid to

20 late 20s.  It means that substantial sums of money and attorney time are spent with no end date in

21 sight.  This cannot be fair.

22    Plaintiffs agree that the parties have made significant progress moving these opt-out cases

23 forward.  Plaintiffs responded to written discovery. They supplemented their responses. They

24 updated their fact sheets. They made robust document productions, including their medical and

25 pharmaceutical records, their employment records, their educational records, and their social media

26 records.  They submitted multiple, detailed Rule 26 case-specific expert reports.  And they sat for

27 depositions, which took at least two days to complete given the amount of time Defendants insisted

28 on needing for their examinations.  Their parents and their friends were deposed.  By Plaintiffs'

1   count, Defendants have taken over 100 depositions in these cases (56 in the MDL and 49 in the

2   JCCP).    Now, what remains is the completion of fact and expert discovery, pre-trial motions,

3   exchange of witness and exhibit lists, and deposition designations, etc.  These are all ancillary to

4   setting a trial.

5         The Court should not read into CMO 17 that it must retain these cases to oversee the

6   matters Defendants list above. The Court's order denying Defendants' motion for a CME in the

7   *Legacki* matter demonstrates the point.  *See* Jan. 7, 2025 Order  There, the Court held that "the

8   parties should be able to identify and follow the state law procedures that govern their state law

9   claims."  Because state law will apply to each of the Plaintiffs' respective claims, including CME's,

10   the remand court is likely best suited for dealing with all post-Additional Discovery items.

11         That Defendants are not "foreclosed" from raising "non-duplicative summary judgment and

12   *Daubert* motions after completing full fact and expert discovery" (CMO 17 at 32) does not compel

13   the Court to retain these cases if the Court does not intend to try them.   CMO 17 also makes clear

14   that the "Court's use of the term "non-duplicative" is intended to express the Court's intention not

15   to permit later summary judgment motions concerning topics addressed in summary judgment

16   motions filed at the conclusion of the expedited discovery period or *Daubert* motions concerning

17   witnesses addressed in *Daubert* motions filed at the conclusion of the expedited discovery period."

18   Remand courts can set routine trial orders and adhere to this instruction.  CMO 17 does not go away

19   just because the case is transferred to the trial court.

20         Defendants' reliance on *Horizon* is misplaced.  In *Horizon* the MDL court denied a motion

21   for remand where the court had not ruled on motions to dismiss or summary judgment motions.

22   Here, however, the Court has issued numerous orders on dispositive motions.  What's more, the

23   parties anticipate the Court ruling on the case-specific summary judgment and *Daubert* motions

24   that Defendants will soon file.  Potential remand courts will therefore have ample guidance on these

25   issues.  MDL courts that have presided over bellwether cases or initial *Daubert* motions routinely

26   remand cases where summary judgment and/or *Daubert* motions are pending in unsettled cases.

27   For example, the *Pelvic Mesh*, *DePuy Pinnacle*, and *Biomet M2a Magnum* MDL courts all

28   remanded dozens of cases – hundreds even in the *Pelvic Mesh* litigation – with pending dispositive

1   and *Daubert* motions to be decided by the remand court.

2       Notwithstanding, should the Court decide to retain any of the opt-out cases, the Court should

3   set a trial schedule that includes deadlines for the remaining case activities, just as the Court did for

4   the bellwether plaintiffs.

5       Accordingly, the Court should remand the cases or set trial schedules following the Court's

6   decisions on Defendants' *Daubert* and summary judgment motions.

7

8

9

10      **b.  Timing of answers**

11      **Plaintiffs' position**

12      Plaintiffs respectfully request the Court to compel Defendants to answer the operative

13  complaints before filing any motion for summary judgment.

14      By way of background, on May 6, 2024, the Court held a CMC to discuss, among other

15  things, how the opt-out cases would proceed.  Defendants sought an order requiring Plaintiffs to

16  file long form amended complaints in their respective cases.   The Court agreed.   The Court

17  stated: "I do not intend to try these cases.  So they're going to go back from whence they came…I

18  suspect that the judges who ultimately get these cases are going to want to see complaints *and*

19  answers." May 6, 2024 Hrg. Tr. 8:11-15; *see id.*, at Tr. 11:4-6. (emphasis added).  The Court was

20  concerned whether the short-form complaints adequately covered what claims were going to go

21  forward. Plaintiffs filed amended complaints.  But Defendants have not answered.  In their view,

22  an answer is not due until after the Court decides their summary judgment motions made under

23  CMO 17.  This upends the Federal Rules of Civil Procedure, the normal course of case events,

24  and is patently unfair to Plaintiffs.

25      Rule 12 governs when and how to present defenses and objections to the initial pleadings.

26  Rule 12(a)(1)(A) provides that a defendant must file a responsive pleading to the complaint.  The

27  rule states that the defendant "must serve an answer" within 21 days after being served with the

28  summons and complaint.  Rule 12(b) provides that certain defenses must be raised in the initial

1   responsive pleading or by motion. Rule 8 sets forth a defendant's obligations in responding to a

2   plaintiff's allegations.  Rule 8(b)(1)(A) and (B) together require a defendant to "state in short and

3   plain terms its defenses to each claim asserted against it; and admit or deny the allegations

4   asserted against it by an opposing party."  Rule 8(b)(2) provides that any denial "must fairly

5   respond to the substance of the allegation."

6        Defendants aim to bypass these Rules.  They should not get to do so.  Defendants all

7   answered the bellwether plaintiffs' amended complaints after the Court denied various 12(b)

8   motions to dismiss.  Here, any 12(b) motions would be meritless as the Court denied those

9   motions earlier in the MDL proceedings.  If Defendants claim otherwise, they should have

10  insisted on raising 12(b) motions earlier to notify Plaintiffs of any purported pleading defects so

11  that Plaintiffs could cure in amended complaints, just as the different groups of bellwether

12  plaintiffs had multiple opportunities to amend their complaints.  That Defendants intend to file

13  motions contesting personal jurisdiction should not change the result.  CMO 17 has a carve-out

14  for dispositive motions based on personal jurisdiction.  *See* CMO 17 at 32.

15       The opt-out Plaintiffs should not be treated differently than the bellwethers.  This is

16  especially so given the amount of discovery that has taken place. Defendants have long had the

17  time to consider the allegations Plaintiffs assert against them.  They have had the benefit of

18  reviewing the documents and testimony supporting those allegations.  Defense attorneys have had

19  ample opportunity to discuss the allegations with their clients.  Under the Rules, Defendants must

20  admit or deny each allegation.  If they deny an allegation, they must "fairly respond to the

21  substance" of it.  Plaintiffs are entitled to know what allegations are admitted.  They must also

22  know what, if any, affirmative defenses Defendants raise, which they bear the burden of proof.  It

23  cannot be the case that Defendants move for summary judgment on an affirmative defense they

24  have not notified Plaintiffs of by way of an answer to the complaint.  Defendants' master answer

25  does not suffice for the same reasons the Court found Plaintiffs had to file amended long form

26  complaints.  Generic, boilerplate affirmative defenses are not specific enough to notify each

27  Plaintiff what Defendants' affirmative defenses are that are actually asserted in a given case.

28       For these reasons, the Court should compel Defendants to answer Plaintiffs' respective

1    operative complaints within 21 days of granting this motion.

2           **Defendants' position**

3           Consistent with the Federal Rules of Civil Procedure and CMO Nos. 17 and 19, the Court

4    should require Defendants to answer the Complaints fourteen days after it rules on Defendants'

5    initial round of dispositive motions, which are due on May 16, 2025 and will be fully briefed by

6    July 11, 2025.

7           Rule 12(a)(4) of the Federal Rules of Civil Procedure provides that, "[u]nless the court

8    sets a different time, serving a motion alters" the general time periods for answering a complaint.

9    The court's denial of a dispositive motion requires a "responsive pleading [to] be served within

10   14 days." Fed. R. Civ. P. 12(a)(4)(A).

11          Here, the Court initially set the "Deadline to Submit Summary Judgment/*Daubert*

12   Motions *and Motions to Dismiss*" on January 31, 2025. *See* Dkt. 4278 (July 16, 2024) (second

13   emphasis added). Setting this combined deadline was the Court's idea: it reasoned "that it may

14   be a good idea to, at the end of the additional discovery period, to combine those initial motions

15   for summary judgment with any motion to dismiss issue that would otherwise be raised earlier."

16   Transcript of Proceedings by Zoom Webinar at 9 (May 6, 2024). Since the Court entered that

17   deadline on July 16, 2024, it has been extended several times. *See* Dkt. 4375. Under the current

18   schedule, summary-judgment motions and motions to dismiss are due on May 16, 2025 and will

19   not be fully briefed until July 11. *See id.* Accordingly, under Rule 12(a)(4)(A), Defendants

20   should answer the Complaints fourteen days after the Court rules on their motions.

21          Plaintiffs base their position on the faulty premise that Defendants previously moved to

22   dismiss the Complaints. Defendants never moved to dismiss any of the above-captioned cases,

23   and Plaintiffs cite no docket entries to the contrary. Nor are Plaintiffs correct that "any 12(b)

24   motions would be meritless as the Court denied those motions earlier." In fact, the Court granted

25   some of those motions. *See, e.g.*, Dkt. 2751 (dismissing two cases as against the Non-

26   Management Director Defendants because Plaintiffs did not state a claim under state products-

27   liability laws). Defendants intend to raise those meritorious arguments, among others, in

28   dismissal motions and motions for summary judgment on May 16. Finally, as the May 6 hearing

1    transcript shows, Plaintiffs are incorrect that Defendants failed to "rais[e] 12(b) motions earlier."

2    Those motions were discussed; the parties simply agreed to combine those motions with

3    summary-judgment motions.  That procedure causes no unfair surprise to Plaintiffs, who have

4    ample notice of the affirmative defenses that Defendants previously asserted in prior personal-

5    injury cases in this MDL.  On the contrary, setting the answer date before the deadline for

6    dispositive motions to dismiss causes unfair surprise to Defendants, who intend to raise personal-

7    jurisdiction motions before answering.

8              **c.   Extended deposition schedule**

9              Because of scheduling difficulties, the parties have stipulated that the depositions of

10   Plaintiffs Benjamin Shapiro and Victoria Cunningham can occur after the close of Additional

11   Discovery.  The parties do not believe an amended scheduling order is needed but are happy to

12   submit one at the Court's request.

Dated: April 1, 2025

By: /s/ Timothy S. Danninger
Timothy S. Danninger (*pro hac vice*)
**GUNSTER YOAKLEY & STEWART,
P.A.**
1 Independent Drive, Suite 2300
Jacksonville, 32204
Telephone: (904) 354-1980

*Attorney for Defendant Juul Labs, Inc.*


By: /s/ David E. Kouba
David E. Kouba, (*pro hac vice*)
**ARNOLD & PORTER KAY SCHOLER,
LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 942-5230
Fax: (202) 942-5999
david.kouba@arnoldporter.com

By: /s/ Lauren S. Wulfe
Lauren S. Wulfe, SBN 287592
**ARNOLD & PORTER KAYE SCHOLER
LLP**
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
lauren.wulfe@arnoldporter.com

*Attorneys for Defendants Altria Group, Inc.,
Philip Morris USA Inc., Altria Client Services
LLC, and Altria Distribution Company*


By: /s/ Eugene Illovsky
Eugene Illovsky
Matthew Dirkes
**ILLOVSKY GATES & CALIA LLP**
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643

*Attorneys for Defendant Adam Bowen*

By: /s/ Michael J. Guzman
**KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.**
Mark C. Hansen
Michael J. Guzman
David L. Schwarz
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910

Respectfully submitted,


By: /s/ Scott P. Schlesinger
Scott P. Schlesinger, (*pro hac vice*)
Jonathan R. Gdanski, (*pro hac vice*)
Jeffrey L. Haberman, (*pro hac vice*)
**SCHLESINGER LAW OFFICE, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33317
Tel: (954) 467-8800

*Attorneys for Plaintiffs*



By: /s/ Christopher J. Esbrook
Christopher J. Esbrook
David F. Pustilnik
**ESBROOK P.C.**
321 N. Clark St., Suite 1930
Chicago, IL 60654
Telephone: (312) 319-7680

*Attorneys for Defendants Eby-Brown
Company, LLC, Core-Mark Holding
Company, Inc., 7-Eleven, Inc., and Wawa, Inc*

1

2    *Attorneys for Defendants Nicholas Pritzker,*
     *Riaz Valani, and Hoyoung Huh*

3    By: */s/* James Kramer
     James Kramer
4    Catherine Malone
     Kevin Askew
5    **ORRICK HERRINGTON & SUTCLIFFE**
     **LLP**
6    The Orrick Building
     405 Howard Street
7    San Francisco, CA 94105-2669
     Telephone: (415) 773-5700
8    jkramer@orrick.com
     cmalone@orrick.com
9    kaskew@orrick.com

10   *Attorneys for Defendant James Monsees*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28