[*Counsel listed in signature block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Ben Shapiro, Craig Shapiro, and Julie Shapiro v. JUUL LABS, INC., et al.*,<br><br>Case No. 3:19-cv-07428-WHO,<br><br>Plaintiff. | **Case No. 19-MD-02913-WHO**<br><br>**JOINT STATEMENT REGARDING ADDITIONAL TIME NEEDED FOR ALTRIA DEFENDANTS' TO COMPLETE PLAINTIFF BEN SHAPIRO'S DEPOSITION** |

This joint statement addresses the length of time Defendants are allotted to complete their questioning of Plaintiff Ben Shapiro ("Plaintiff").

### Altria's Position

Altria respectfully requests that the Court compel Plaintiff to continue his deposition for up to an additional 2.5 hours on the record. On May 28, 2025, after Altria had questioned Plaintiff for 2 hours and 33 minutes, Plaintiff's counsel abruptly and unilaterally ended the deposition over Altria's objection. Altria still needs to question Plaintiff about critically important subjects, including his medical history, efforts to quit using nicotine, smoking history, awareness of the health risks associated with tobacco products, and potential damages, among other things. To date, Plaintiff has given considerable testimony that was inconsistent with his medical records and written discovery responses; and, he has provided numerous non-responsive answers throughout his deposition, both of which have prolonged the deposition.

CMO 17 provides that the JLI Defendants were entitled to a seven-hour deposition of Plaintiff and fact witnesses. Altria is not a "Party" to CMO 17. CMO 17 at 1-2. Likewise, CMO 19 provides that Altria may take its own deposition of plaintiffs and fact witnesses "for up to seven (7) hours." CMO 19 ¶ 42.[1] To the extent Plaintiff's Position addresses CMOs 17 and 19 at all, it suggests that the Court should ignore their plain language and meaning and impose an arbitrary time limitation in their place. Altria seeks what would amount to no more than 5 hours and three minutes of deposition time with Plaintiff, far *less* than permitted under CMO 19.

Altria needs, and is entitled to, more than Plaintiff's arbitrary offer of 30 minutes to complete its deposition of Plaintiff. Plaintiff brings a wide array of personal injury claims, both physical and mental/emotional,[2] against Altria based on his alleged JUUL use. Am. Compl. ¶¶ 757-1054. Plaintiff's medical history is extensive. Indeed, the parties have collected over 5,200 pages of medical records to date. In order to defend this case, Altria must be allowed to depose Plaintiff about many issues, including, when, where, and why Plaintiff obtained and used JUUL; when, where, and

---

[1] CMO 17 separately provides that the JLI Defendants are entitled to a seven-hour deposition of Plaintiff and fact witnesses. Altria is not a "Party" to CMO 17. CMO 17 at 1-2.

[2] Plaintiff's alleged injuries include addiction, anger/outbursts, mood swings, irritability, anxiety, depression, lack of concentration, trouble sleeping, asthma, and kidney diseases.

why Plaintiff used other nicotine products; Plaintiff's awareness of health risks associated with using nicotine products; Plaintiff's efforts to quit using nicotine; potential alternative causes of Plaintiff's alleged injuries, including, but not limited to, his lifestyle, background, pre-existing medical conditions, and use of other substances; and his potential damages, among other things.

That the JLI Defendants examined Plaintiff for 8 hours and 23 minutes does not weigh against the additional time Altria seeks.[3] The individual Defendants and JLI are separate and distinct entities from Altria. Many of the allegations against Altria markedly differ from those raised against the other Defendants, and Altria will be advancing Altria-specific defenses and arguments for which Altria must obtain Plaintiff's testimony. As mentioned above, Plaintiff's medical records are voluminous, his testimony repeatedly contradicted statements in those records as well as his Plaintiff Fact Sheets ("PFS"), and Plaintiff repeatedly provided non-responsive and evasive answers to questions. These actions have prolonged the deposition considerably.[4] And Altria's questioning has been relevant, not cumulative, and not abusive or harassing.

Plaintiff's Position cites to allegedly "repetitive and outright harassing questions," questions that Plaintiffs take out of context from Plaintiff's testimony and the evidence and allegations in this case. The only question Plaintiff cites from Altria's examination is a perfect example. Altria asked whether Plaintiff agreed that his family situation was dysfunctional. Plaintiff did not include the context of the question, which makes clear the question was related to statements in his medical records describing his family as dysfunctional, a potential alternative cause of some of his alleged injuries. *See* 5/28/2025 Shapiro Dep. at 253:18 – 254:11. In short, Plaintiff cannot demonstrate that anything about Defendants' questioning has been improper.[5] And Plaintiff's counsel have not taken

---

[3] Notably, Plaintiff's counsel did not object to the length of the JLI Defendants' examination and did not make any contemporaneous objections that the examination was "repetitive and outright harassing."

[4] *See, e.g.*, May 27, 2025 Shapiro Dep. 15:15-20:8 and 98:5-113:21 (testimony about marijuana use contradicting PFS); May 28, 2025 Shapiro Dep. 18:5-25:11 (testimony denying history of panic attacks cited in medical records); *id.* at 32:3-34:11 (testimony denying history of violence cited in medical records; *id.* at 111:10-113:9 (providing non-responsive answers and contradicting medical records); *id.* at 158:2-162:6 (similar).

[5] Plaintiff's references to questions of Vicki Samike in *Samike* have no bearing on this dispute. They were relevant and appropriate in the context of that case.

1  the Court's invitation to seek relief if Defendants attempt to "malign or embarrass" any Plaintiffs during depositions.[6]

The Bellwether Plaintiff depositions Plaintiff references took place before CMOs 17 and 19 were entered. Those depositions were part of a process in which the parties were permitted to take *limited* discovery to evaluate which cases would be the best candidates for bellwether trials. More fulsome discovery was contemplated and, in fact, authorized by CMOs 17 and 19.

The Court should allow Altria up to 2.5 hours to finish deposing Plaintiff.[7] This outcome is warranted by the circumstances, is well within the guidelines of CMO 19, and would result in Defendants collectively deposing Plaintiff for 13 hours and 26 minutes, at most.[8] This is the last Plaintiff deposition to be taken in the opt-out cases. The parties worked through previous disputes about the length of Plaintiff depositions without involving the Court. Altria should not be limited to the amount of time it proposed in good faith to resolve the dispute about this deposition. To the extent Plaintiff's counsel ask questions of their own client, Defendants should have a fair opportunity to ask follow-up questions without arbitrary time constraints.

### **Plaintiff's Position**

Ben Shapiro provided 11 hours of testimony – 4 more than Rule 30 provides. That should be enough. Yet, Altria Defendants insist they are entitled to an additional 2.5 hours to inquire about "when, where, and why Plaintiff obtained and used JUUL; when, where, and why Plaintiff used other nicotine products; Plaintiff's awareness of health risks associated with using nicotine products; Plaintiff's efforts to quit using nicotine; potential alternative causes of Plaintiff's alleged injuries, including, but not limited to, his lifestyle, background, pre-existing medical conditions, and use of other substances; and his potential damages, among other things." Plaintiff already testified to these

---

[6] *See* Jan. 23, 2025 Order Regarding Privacy Objections at 3.

[7] *See DiPalma v. Med. Mavin, Ltd.*, 1998 WL 123009, at *1 (E.D. Pa. Feb. 10, 1998) (holding "'strong showing' is generally required before a party will be denied the right to complete a deposition"); *Robinson v. De Niro*, 2022 WL 274677, at *3 (S.D.N.Y. Jan. 26, 2022) (granting defendant's motion for completion of plaintiff's deposition because "FRCP requires that the parties have a full opportunity to obtain information, and here, the Court cannot say the Defendants did").

[8] This amount of deposition time is not unprecedented in the opt-out cases. *See, e.g.*, Kaitlyn Fay Dep., Feb. 26-27, 2025 (total time on the record over 14 hours).

very issues addressed by counsel for JLI Defendants. *See* 5/27/2025 Shapiro Dep., pgs. 126-197 (regarding JUUL use); pgs. 202-211 (regarding other nicotine use); pgs. 222-228 (regarding quit attempts); pgs. 287-310 (regarding pre-existing medical conditions); pgs. 15-104 (regarding other substance use). Plaintiff then testified to the *same* issues when Altria's counsel spent two (2) hours and 33 minutes *re-questioning* him on these topics, which are highly sensitive and personal. That Altria does not like Plaintiff's testimony is not a legitimate basis for more time. Altria shares the same interests and defenses as the JLI Defendants. Any contention otherwise, including the argument that CMO 17 and CMO 19 entitle these Defendants to 14 hours of record time is meritless.

The sad fact is this: Defendants consistently used this argument of allotted time to ask repetitive and outright harassing questions of the Opt-Out Plaintiffs, their parents, and friends. Here, for example, Defendants repeatedly pressed Plaintiff about his family dynamics just to upset him. *See* 5/27/2025 Shapiro Dep., pg. 320:2-5 ("Q:…is it fair to characterize some of the verbal arguments that you had with your dad as involving lots of yelling and loud voices?"); pg. 321:18-22 ("Q: Were your parents also getting angry at you just in general? Like, you talked about things like verbal fights, was there anger from your -- from your perspective was there anger from your parents towards you?"). *See* 05/28/2025 Shapiro Dep., pg. 253:25, 254:1 ("Q: Do you agree that your family situation has been dysfunctional?"). In similar vein, Defendants berated Plaintiff regarding his feelings towards his parents' decision to send him to a wildness program to address his JUUL use. *See id.*, pg. 213:18-23 ("Q: Sitting here today you can't – you can't tell for sure if that anxiety or depression was necessarily related to vaping nicotine or like you just mentioned from being pulled out of your house at 4:00 a.m. and shipped across the country; correct?"); pg. 214:21-24 ("Q: It's also higher than it would have been if you hadn't been pulled out of your house at 4:00 a.m. and sent halfway across the country; correct?"); pg. 215:3-6 ("Q: Your anxiety was also higher because like you mentioned, you were pulled out of your house at 4:00 a.m. and shipped halfway across the country with strangers; correct?"). This type of questioning, embedded with insinuations, is wholly improper, as it is designed to embarrass Plaintiff, wear him down, and prolong the length of the deposition.

1   But this is just one example of Defendants' repeated pattern of harassing conduct. For example, while deposing Plaintiff Max Samike's mother, Vicki Samike, Defendants' counsel chastised Ms. Samike over her history of drug use. *See* 09/20/2024 Samike Dep.. pgs. 181:22-25, 182:1-8 ("Q: During the years that you were addicted to cocaine, were you modeling good behavior for Max? A: I'm not sure what you mean by that. Q: Well, did he ever see you under the influence of cocaine? A: No. I didn't use drugs around my kids. Q: So you would plan your drug use and then put them with mom? A: Uh-huh. Q: Yes? A: Yes."); pg. 184:4-7 ("Q: You said that part of the reason you went to rehab was for alcohol. What type of alcohol did you drink? A: Vodka. Q: How much vodka were you drinking?"); pg. 254:24-25, 255:1-3 ("Q: So your mom was an unrecovered alcoholic while she was baby-sitting and you were using cocaine? A: Yep. Q: How did that work?"), pg. 256:15-18 ("Q: To be clear, when you dropped her with them you were going to use cocaine, right? A: Am I on trial?").

In spite of Defendants' repeated improper conduct, Plaintiffs' counsel have, in good faith, worked with Defendants in order to complete these depositions. And contrary to Altria's assertions, they should not be punished for their efforts to resolve these issues without engaging the Court's intervention. Plaintiffs' counsel have defended over 100 depositions, many over multiple sessions. They did not "end" any part early – they are all noticed over two days. On May 27th the deposition began at 9:15 a.m. and continued until 3:50 p.m., of which the last hour was spent discussing Plaintiff's history of self-harm. Given the intensity and sensitivity of the topic, together with the fact that Plaintiff had been testifying for hours and the parties would be coming back the next day, Plaintiff's counsel appropriately adjourned. The parties reconvened and Plaintiff testified from 9:06 a.m. until 4:45 p.m., bringing the total record time to 10 hours and 56 minutes.

Altria insists that each Defendant is entitled to 7 hours of questioning on the record, not including the time Plaintiff's counsel needs for re-direct. They never maintained this position for the *Bellwether* Plaintiffs, thus totally undermining their CMO 17 and CMO 19 argument. Ms. Bain, for example, was deposed for less than 4.5 hours. Mr. Pesce was deposed for about 5.5. This included the examinations by *all* Defendants, any redirect and re-cross. Yet, here, Altria seeks to depose Plaintiff for 13 hours and 26 minutes. A person cannot be expected to testify competently

- 6 -                                                                No. 3:19-md-02913-WHO

for this long. What's more, Plaintiff has *already* been questioned about these very topics, which are highly sensitive and intimate. The interrogation is extremely taxing. Plaintiff's counsel is not avoiding the plain language of CMO 19 as Altria suggests. In reality, had Altria been a party to the first settlement agreement, they would be subject to the same seven (7) hour time limit imposed in the *Bellwether* cases by CMO 17. Indeed, this is why *only* CMO 17 was referenced in each iteration of the parties' joint stipulation on the deadlines in the additional discovery period.

There is no good faith basis for Altria's request. Plaintiff's counsel has been incredibly deferential to Defendants in allowing them additional time to complete these depositions, understanding the breadth and complexity of the topics at issue. In a meet and confer prior to drafting this brief, Plaintiff even offered Altria an additional half hour. Altria's request for an additional 2.5 hours is wholly unreasonable when their counsel told Plaintiff's counsel that he could conclude in 1 hour and 15 minutes. But for the reasons herein, that is too much. Accordingly, the Court should not allow Altria any additional time to depose Plaintiff. The parties shall reconvene solely to allow for Plaintiff's counsel to re-direct Plaintiff on the testimony previously provided.

DATED: June 25, 2025                                     Respectfully submitted,

By: */s/ Jeffrey L. Haberman*                            By: */s/ Michael L. Walden*
Scott P. Schlesinger (*pro hac vice*)                    John C. Massaro (*admitted pro hac vice*)
Jonathan R. Gdanski (*pro hac vice*)                     Jason A. Ross (*admitted pro hac vice*)
Jeffery L. Haberman (*pro hac vice*)                     Michael L. Walden (*admitted pro hac vice*)
                                                         David E. Kouba (*admitted pro hac vice*)
**SCHLESINGER LAW OFFICE, P.A.**                         **ARNOLD & PORTER KAYE SCHOLER LLP**
1212 SE Third Avenue                                     601 Massachusetts Ave, NW
Fort Lauderdale, FL 33317                                Washington, DC 20001
Tel: (954) 467-8800                                      Telephone: 202-942-5000
scott@schlesingerlaw.com                                 John.Massaro@arnoldporter.com
jgdanski@schlesingerlaw.com                              Jason.Ross@arnoldporter.com
jhaberman@schlesingerlaw.com                             David.Kouba@arnoldporter.com

# CERTIFICATE OF CONFERRAL

The undersigned certifies that counsel for the Altria Defendants and counsel for Plaintiff met and conferred by videoconference on June 10, 2025. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

DATED: June 25, 2025            */s/ Michael L. Walden*