UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to All Actions* | Case No. 3:19-md-02913 (WHO)<br><br>Hon. William H. Orrick<br><br>Hearing: December 16, 2025, at 2:00 p.m. |

Pursuant to Civil Local Rule 16-10(d), Plaintiffs' Co-Lead Counsel, counsel to the seven remaining personal injury plaintiffs (the "Schlesinger Plaintiffs"), counsel to the three remaining tribal plaintiffs (the "Tribal Plaintiffs"), counsel to the JLI Settling Defendants[1], and counsel to the Altria Defendants[2] (collectively, the "Parties") respectfully provide this Joint Case Management Statement in advance of the Further Case Management Conference scheduled for December 16, 2025.

I. **PARTICIPANT INFORMATION**

The case management conference will proceed by Zoom at 2 p.m. on December 16, 2025. Anyone who wishes to attend the conference virtually may log in using the information available at: https://www.cand.uscourts.gov/judges/who/orrick-william-h.

II. **ISSUES TO BE DISCUSSED AND PROPOSED AGENDA**

    1. **Status of Case Filings and Dismissals**

    2. **Status of Opt-Out Cases and "Non-Duplicative" Discovery**

III. **STATUS OF CASE FILINGS AND DISMISSALS**

The Parties have met and conferred regarding the status of the 27 cases the Court identified at the hearing on November 19, 2025, and in its subsequent minute order. **Exhibit A** is a chart listing the status of each case. To summarize:

---

[1] Specifically the JLI Settling Defendants include: Juul Labs, Inc. ("JLI"), previously d/b/a Pax Labs, Inc., and Ploom Inc.; James Monsees; Adam Bowen; Nicholas Pritzker; Hoyoung Huh; Riaz Valani; Mother Murphy's Labs, Inc.; Alternative Ingredients, Inc.; Tobacco Technology, Inc.; eLiquitech, Inc.; McLane Company, Inc.; Eby-Brown Company, LLC; Core-Mark Holding Company, Inc.; Chevron Corporation; Circle K Stores Inc.; Speedway LLC; 7-Eleven, Inc.; Walmart, Inc.; and Walgreens Boots Alliance, Inc.

[2] The Altria Defendants are Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria Enterprises LLC, and Altria Group Distribution Company.

- Ten (10) cases—the seven Schlesinger Plaintiffs' cases and the three Tribal Plaintiffs' cases—are active; the parties are proceeding in accordance with the requirements of CMO No. 17 and CMO No. 19.

- Fourteen (14) cases brought by adult Settling Plaintiffs, including former minors who have now reached the age of majority, are ripe for mandatory dismissal under CMO No. 16 and CMO No. 18. **Exhibit B** is a Proposed Order Dismissing Adult Settling Plaintiffs' Claims with Prejudice.

- The three (3) remaining cases were brought by minor Settling Plaintiffs; their Minor's Compromise processes are incomplete, so the cases are not yet ripe for dismissal. Those cases had not gone through the minor compromise process, as counsel were waiting for the Settling Plaintiffs to reach the age of majority. Several other cases were dismissed as a result of the minor Settling Plaintiff's reaching the age of majority. However, because in the remaining cases the age of majority is more than two years away, a meeting was held with Special Master Judge Andler, at which it was decided that counsel for the three remaining minor Settling Plaintiffs will be forthwith submitting the minor compromise papers and that Judge Andler will conduct Zoom hearings and issue her recommendation to the Court no later than January 16, 2026, so that the settlements can be approved and distributed and the cases dismissed.

### IV.   OPT OUT PLAINTIFFS

There are seven Schlesinger Plaintiffs who elected to opt out of the settlement and have been litigating their cases with the JLI Settling Defendants and the Altria Defendants. These Plaintiffs have made their threshold initial disclosures and productions of documents, merits affidavits, and preliminary expert reports; the parties have mediated Plaintiffs' claims; the parties have completed "Additional Discovery" on case-specific issues, *see* CMO No. 17 ¶ 47 & CMO No. 19 ¶ 41; and the Court has ruled on Defendants' initial dispositive motions. Each of CMO No. 17 and CMO No. 19 provides that the Court will now determine what additional, non-duplicative discovery (including expert disclosures) is needed in advance of the parties' non-duplicative

1  dispositive and *Daubert* motions.

2  **<u>Schlesinger Plaintiffs' Position</u>**

3  The Court should remand the seven remaining personal injury cases at this time, now that it ruled on Defendants' initial round of dispositive motions. The Court previously indicated that it wanted to simplify the issues and once it made those rulings, the Court would transfer the cases to their respective districts. Remanding now is the proper course. *See* May 6, 2024, Hrg. Tr. 8:11-25 ("I do not intend to try these cases. So they're going to back to from whence they came); *see also* Apr. 8, 2025, Hrg. Tr. 7:24 (I'm not planning to keep these cases for trial;" "I'm planning to send them back *once* I've dealt with summary judgment;" "I think there is a time of sending them back…I'm going to deal with these motions. But I'm not planning to do a second round." *Id.*, 7:25-8:10 (emphasis added). *See also*, *Cunningham v. Juul Labs, Inc.*, 20-cv-04661, Dkt. No. 51 (noting, "My goal was to, hopefully, simplify the cases before they were sent back to the states where the cases were or would have been filed originally.").

These Plaintiffs need trial dates. The courts in *McKnight*, *Shapiro*, and the *JCCP* – where there are 9 opt-outs, set trial dates or trial readiness dates following a status conference, demonstrating the necessity of setting ultimate trial deadlines. Concluding the work-up of these seven cases in their various states is precisely what this Court envisioned when it held that: "The adequacy of materially similar pleadings was tested repeatedly in the main MDL proceedings. Now those allegations can be tested on an evidentiary basis on remand." *Id.*

This Court more than ably steered these proceedings, which oversaw the resolution of about five thousand personal injury cases. *See id.* To put these cases on the best, most practical path towards resolution, remand is appropriate at this stage. With the benefit of all the work done in the MDL, other district courts are well-equipped to preside over these actions through their final stage.

The Court should reject Defendants' request to hold onto the cases through additional discovery, which is contrary to the Court's instruction, and aims to make work without any end in sight. Defendants' supporting arguments regarding discovery, medical exams, and expert work are without merit. As an initial matter, these are largely evidentiary issues, which all belong in front of the trial courts. They are not the type of board, high-level "cross-cutting" issues that the Court

1  wanted to simplify. Defendants' concern on CMEs proves the point. Defendants want to take
2  medical examinations of all plaintiffs. But the Court already ordered that "state specific procedural
3  protections for CMEs should apply." *See* Dkt. No. 4361, Order Regarding *Legacki* Examination,
4  dated January 7, 2025. Because CMEs are necessarily state-law specific, and because the Court
5  does not intend to rule on these matters, it is best to conduct further case-specific discovery before
6  the respective trial court.

7  Defendants also mischaracterize the nature of the discovery that has been requested in the
8  other forums. Much of the discovery Plaintiffs in *McKnight*, *Shapiro*, and the *JCCP* are seeking,
9  involves *updated* discovery and depositions. Plaintiffs in *McKnight* and *Shapiro* are also pursuing
10 jurisdictional discovery, as the Director Defendants challenge personal jurisdiction in Florida state
11 court. This is a narrow, state-specific dispute, that has no bearing on whether this Court keeps the
12 other cases.

13 Defendants' concerns about additional fact and expert discovery do not warrant the Court's
14 continuing oversight. The parties simply need to wrap up discovery that is common in any kind of
15 product liability case. Plaintiffs here are principally using the experts that were disclosed in the
16 MDL. The Court issued *Daubert* rulings on many of them. Plaintiffs expect Defendants to do the
17 same. That some additional discovery exists in these cases should not upset the Court's instinct to
18 transfer them to respective trial courts.

19 **Defendants' Position**

20 The Court entered CMOs 17 & 19 "to efficiently manage" any remaining unsettled cases
21 against the JLI Settling Defendants and the Altria Defendants. CMO No. 17 at 2; CMO No. 19 at
22 2. The main point of the CMOs was to focus discovery on any plaintiffs who chose not to
23 participate in the settlements and on their specific claims. Discovery in the MDL had ended and
24 the CMOs were entered on the eve of the first bellwether trial. All the discovery against Defendants
25 and the first bellwether plaintiff was finished. In light of this posture, the Court halted further
26 "'generic' or 'core' discovery against the Settlement Defendants[.]" CMO No. 17 ¶ 48; CMO No.
27 19 ¶ 43. Any additional discovery the Court might permit moving forward would be
28 "supplemental" to—not duplicative of—all that had come before. CMO No. 17 at 2, 32 (¶ 49);

1    CMO No. 19 ¶ 43.

2        Remand of the Schlesinger Plaintiffs' actions before the conclusion of fact and expert discovery will undo the balance struck and efficiencies gained through the Court's adept administration of the first phase of post-settlement litigation. This is not speculation. The Schlesinger Plaintiffs' counsel have already offered a sample of what is to come if the remaining actions are transferred to different forums for uncoordinated proceedings before different judges.

    In the six months following remand of *McKnight* and *Shapiro* to Florida, the Schlesinger Plaintiffs' counsel have served more than *860* "generic" or "core" written discovery requests on Defendants—160 interrogatories (not including subparts), 502 requests for production, and 204 requests for admission. They have also demanded "generic" or "core" depositions of JLI witnesses, most of whom have already been deposed, many of whom already sat for multiple depositions, and none of whom have case-specific knowledge. The Schlesinger Plaintiffs' counsel have now moved to compel new depositions of JLI's founders (James Monsees and Adam Bowen) and directors (Nicholas Pritzker and Riaz Valani) in *each* of the two remanded actions without offering even time or scope limitations.

    Despite the Schlesinger Plaintiffs' attempts to recast what their counsel seeks elsewhere as "updated discovery," the requests cover (and any depositions will cover) well plowed terrain. By way of example, the Schlesinger Plaintiffs' counsel seek:

- "All correspondence pertaining to any patent application for or relating to JUUL that was submitted by JLI, or by anyone else on JLI's behalf or under JLI's direction or control, to any patent office anywhere" (Shapiro First Request to Monsees et al. No. 16);

- "All documents related in any way to the manufacture of JUUL, JUUL e-liquid, or any of JUUL's components and parts or the ingredients and additives . . . of JUUL e-liquid" (*id.* No. 28);

- "All documents concerning in any way the constituents of JUUL e-vapor" (*id.* No. 29).

- All communications concerning the Vaporized campaign, which ended in 2015

(McKnight Second Request to Pritzker No. 18; Shapiro Second Request to Pritzker No. 18; McKnight Second Request to Valani No. 15);

- All documents concerning certain directors' roles in negotiations with Altria that culminated in a transaction announced in December 2018 (McKnight Second Request to Pritzker No. 23; Shapiro Second Request to Pritzker No. 23; McKnight Second Request to Valani No. 20); and

- Documents Huh received as a JLI director prior to his resignation in 2018 (Shapiro Second Request to Huh No. 11).

Plaintiffs' counsel's duplication of discovery requests and redundant motions to compel depositions in *McKnight* and *Shapiro* show that they intend to relitigate the scope of the extensive, generic, core discovery this Court has permitted to date. They will seek overlapping discovery in each forum available to them, pursue multiple rulings, and use the most favorable of those rulings to obtain discovery they will use in all 19 of their remaining cases. Remanding the Schlesinger Plaintiffs' cases now, before discovery, would therefore undo the efficiencies gained and the balance struck by the Court's administration of the MDL over the last six years. It would multiply Defendants' costs and burdens by forcing them to litigate the necessity of further discovery and each dispute in as many as seven forums, subjecting them to competing obligations[3], and exposing them to the time, expense, and prejudice of serial, uncoordinated depositions of identical deponents.

This Court has been the steward of this litigation for six years. It is the most familiar with the issues the Schlesinger Plaintiffs' claims raise, the history and scope of discovery to date, and the needs of these cases. And it is the only Court that can provide a single federal forum for disputes regarding the necessity and scope of further discovery, impose uniform discovery standards and rulings (including as to the terms of the independent medical examinations Defendants will seek, *infra*), coordinate overlapping discovery (including as to expert discovery), and safeguard Defendants from needless duplication of effort and inconsistent obligations. Overseeing this discovery will not require the Court to wade into the issues of state law that the Court has rightly

---

[3] For example, the remanded Florida state plaintiffs intend to use the discovery taken in the MDL to date—but refuse to consent to the entry of *any* protective order governing the dissemination and use of those documents, notwithstanding this Court's prior orders.

- 6 -

reserved for the transferor courts that will try each of these cases.

Defendants respectfully submit that the Court should authorize and oversee the following non-duplicative and case-specific discovery, which can be completed within six months.

**Fact Discovery.**  Defendants have identified, through their depositions of the Schlesinger Plaintiffs and certain other fact witnesses, additional family members and third-party witnesses they intend to depose.  Defendants also intend to direct case-specific third-party document subpoenas to a limited number of witnesses.[4]  Additionally, Defendants have identified deficiencies in the Schlesinger Plaintiffs' productions to date (e.g., failure to search for and produce emails and social media messages).  Defendants intend to meet and confer on these issues, seek redress from the Court, and serve additional discovery requests as appropriate.

**Expert Discovery.**  Considerable expert discovery remains.  Each Schlesinger Plaintiff preliminarily disclosed four or five case-specific experts, and Defendants expect these experts will supplement their two-year-old reports to reflect the facts educed and to be educed in discovery, as CMO Nos. 17 and 19 provide.  Defendants also expect that each Schlesinger Plaintiff will disclose his or her intent to rely on as many as 25 of the general expert reports previously disclosed by the MDL Plaintiffs. (In JCCP 5052, the Schlesinger Plaintiffs' counsel disclosed that each of their clients intended to rely on between 26 and 28 general experts' reports; in response to concerns raised by Defendants, they pared their disclosures to between 18 and 20 experts.) Defendants intend to depose the Schlesinger Plaintiffs' experts and will need sufficient time to address their general and case-specific opinions.  Defendants will also disclose experts of their own—the number of which will be determined, in significant part, by the number of experts the Schlesinger Plaintiffs are permitted to disclose.  These experts will require sufficient time to prepare their reports once Plaintiffs have produced their case-specific reports and identified which general expert reports they intend to rely upon.

The Court's retention of the seven Schlesinger Plaintiffs' cases will make expert discovery more efficient.  Both sides are likely to designate numerous expert witnesses in multiple cases.  If

---

[4] The Court suspended third-party document discovery during the Additional Discovery period and held that it would resume, as necessary, during the upcoming discovery period.  *See* Order Regarding Discovery Dispute Over Third-Party Document Subpoenas [DKT 4353].

the cases are remanded now, each of those experts will be deposed in each case in which he or she is designated (and in just as many courts). By contrast, if the Court retains the cases, it can streamline the depositions of these witnesses (e.g., by ordering, for each expert named in multiple cases, a single deposition that exceeds the standard seven hours).

**Medical Examinations.** Defendants intend to seek Independent Medical Examinations of Schlesinger Plaintiffs Cole Aragona, Victoria Cunningham, Jordan Dupree, Bailey Legacki, Carson Sedgwick, and Matthew Tortorici. Defendants sought to conduct these exams during the Additional Discovery period, the Schlesinger Plaintiffs opposed them as premature, and the Parties agreed they would be taken during the upcoming phase of discovery. Based on the positions the Schlesinger Plaintiffs' counsel have taken in the JCCP, Defendants anticipate disputes regarding, among other things, the testing to be permitted, the format of the testing (in-person versus remote), the recording of the examinations, and those permitted to attend.

Plaintiffs' suggestion that these medical examinations will mire the Court in state-law issues is misplaced. As the Court recognized previously, "the parties should be able to identify and follow the state law procedures that govern their state law claims." (DE 4361 at 2.) The Court did *not* say that transferor courts would oversee independent medical examinations. (*See id.*). Nor would any dispute raise issues of state law comparable to those merits issues the Court intends to reserve to the transferor courts.

|  |  |
|---|---|
| Dated: December 10, 2025 | Respectfully submitted, |
| By: /s/ *Timothy S. Danninger*<br>Timothy S. Danninger (*pro hac vice*)<br>**GUNSTER YOAKLEY & STEWART, P.A.**<br>1 Independent Drive, Suite 2300<br>Jacksonville, FL 32204<br>Telephone: (904) 354-1980<br><br>Timothy J. McGinn (*pro hac vice*)<br>**GUNSTER YOAKLEY & STEWART, P.A.**<br>600 Brickell Ave, Suite 3500<br>Miami, FL 33131<br>Telephone: (305) 376-6084<br><br>*Attorneys for Defendant Juul Labs, Inc.*<br><br>By: /s/ *Beth A. Wilkinson*<br>Beth A. Wilkinson (pro hac vice)<br>Brian L. Stekloff (pro hac vice)<br>**WILKINSON STEKLOFF LLP**<br>2001 M Street NW, 10th Floor<br>Washington, DC 20036<br>Telephone: (202) 847-4000<br><br>*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria Distribution Company, and Altria Enterprises LLC*<br><br>By: /s/ *David E. Kouba*<br>David E. Kouba, (*pro hac vice*)<br>**ARNOLD & PORTER KAY SCHOLER, LLP**<br>601 Massachusetts Ave, NW<br>Washington, DC 20001<br>Tel: (202) 942-5230<br>Fax: (202) 942-5999<br>david.kouba@arnoldporter.com<br><br>By: /s/ *Lauren S. Wulfe*<br>Lauren S. Wulfe, SBN 287592<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>777 S. Figueroa St., 44th Floor<br>Los Angeles, CA 90017<br>Tel: (213) 243-4000<br>lauren.wulfe@arnoldporter.com<br><br>*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Distribution Company* | By: /s/ *Dena C. Sharp*<br>Dena C. Sharp<br>Sarah London<br>**GIRARD SHARP LLP**<br>601 California St., Suite 1400<br>San Francisco, CA 94108<br>Telephone: (415) 981-4800<br><br>By: /s/ *Deak Kawamoto*<br>Dean Kawamoto<br>**KELLER ROHRBACK L.L.P.**<br>1201 Third Ave., Ste. 3200<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br><br>By: /s/ *Ellen Relkin*<br>Ellen Relkin<br>**WEITZ & LUXENBERG**<br>700 Broadway<br>New York, NY 10003<br>Telephone: (212) 558-5500<br><br>*Co-Lead Counsel for Plaintiffs*<br><br>By: /s/ *Scott P. Schlesinger*<br>Scott P. Schlesinger, (*pro hac vice*)<br>Jonathan R. Gdanski, (*pro hac vice*)<br>Jeffrey L. Haberman, (*pro hac vice*)<br>**SCHLESINGER LAW OFFICE, P.A.**<br>1212 SE Third Avenue<br>Fort Lauderdale, FL 33317<br>Tel: (954) 467-8800<br><br>*Attorneys for the Remaining Personal Injury Plaintiffs*<br><br>By: /s/ *Martin Cunniff*<br>Martin Cunniff (*pro hac vice*)<br>Richard Fields (*pro hac vice*)<br>**FIELDS HAN CUNNIFF PLLC**<br>1701 Pennsylvania Ave, NW, Suite 200<br>Washington, DC 20006<br>Tel: (833) 382-9816<br>martincunniff@fhcfirm.com<br><br>*Attorneys for the Litigating Tribal Plaintiffs* |

By: */s/* */s/ Eugene Illovsky*
Eugene Illovsky
Kevin Calia
**ILLOVSKY GATES & CALIA LLP**
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643

*Attorneys for Defendant Adam Bowen*

By: */s/ Michael C. Guzman*
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
Mark C. Hansen
Michael J. Guzman
David L. Schwarz
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910

*Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh*

By: */s/ James Kramer*
James Kramer
Catherine Malone
Kevin Askew
**ORRICK HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
jkramer@orrick.com
cmalone@orrick.com
kaskew@orrick.com

*Attorneys for Defendant James Monsees*