[*Counsel listed in signature block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Cole Aragona v. Juul Labs, Inc.*,<br>   Case No. 3:20-cv-1928;<br>*Jordan Dupree v. Juul Labs, Inc.*,<br>   Case No. 3:20-cv-03850;<br>*Jennifer Lane v. Juul Labs, Inc.*<br>   Case No. 3:20-cv-04661;<br>*Bailey Legacki v. Juul Labs, Inc.*<br>   Case No. 3:20-cv-01927;<br>*Erin Nessmith v. Juul Labs, Inc.*,<br>   Case No. 3:19-cv-06344;<br>*Carson Sedgwick v. Juul Labs, Inc., et al.*,<br>   Case No. 3:20-cv-03882; and<br>*Matthew Tortorici v. Juul Labs, Inc., et al.*,<br>   Case No. 3:20-cv-03847 | **Case No. 19-md-02913-WHO**<br><br>**JOINT STATUS REPORT CONCERNING FURTHER PRE-TRIAL PROCEEDINGS** |

### Plaintiffs' Position

Plaintiffs respectfully submit that the best way to "avoid duplicative discovery, move cases efficiently toward trial, and allow state-law issues to be resolved by the courts that will ultimately preside over them" is to transfer the remaining 7 cases to those courts now, rather than hold on to them. It is true that certain additional discovery must take place before any trial. And, it is true that issues will arise requiring a court's decision. But the nature of that discovery and those issues confirms that continued MDL supervision is neither necessary nor efficient. What remains is not generic, MDL-wide discovery, but state-specific and case-specific matters—including personal-jurisdiction disputes, compulsory medical examinations, and plaintiff-specific factual development—that this Court has already made clear it does not intend to supervise. There would never be an MDL of seven cases for these purposes, and retaining these cases solely to remand them later serves no efficiency interest.

No trial would occur in the foreseeable future if the Court holds the cases for a period of time so the parties can conduct further discovery that may be common to the 7 cases. Neither the parties nor the Court can anticipate every issue and every permutation of discovery that may come up in these cases that would justify delaying transfer. Therefore, the limited issues that may arise in the future are precisely the type of case-specific matters that are best addressed by the receiving courts.

Plaintiffs identify several categories of discovery that remain: case-specific discovery triggered by Defendants' defenses and by their own other litigation conduct; plaintiff-specific discovery; and updated discovery required by Rule 26's ongoing duty to provide relevant material, as well as the need to address substantial developments since general discovery stopped in the MDL.

**Discovery Triggered by Defendants' Positions.**

At the last status conference, the Court asked why the Director Defendants needed to be redeposed. The answer is straightforward: they are not being deposed absent cause; they are being deposed because they are seeking to undo this Court's previous decisions on personal jurisdiction. Defendants injected new factual disputes into these cases. They submitted *new* evidence through sworn testimony to put jurisdictional facts at issue. Defendants were not asked about any state-

specific contacts in their earlier depositions because the Court already denied their motions to dismiss on jurisdictional grounds, several times over. No plaintiff could reasonably anticipate then, that these Defendants would re-raise that defense.

That is precisely what occurred in the *Shapiro* case after remand, where Judge Frink ordered jurisdictional depositions limited to those issues. He expressly recognized that the prior MDL depositions were not dispositive because the Defendants' own conduct had created new factual disputes. Specifically, Judge Frink ordered the Director Defendants to sit for deposition that is limited to jurisdictional issues after those Defendants submitted affidavits contesting personal jurisdiction. Judge Frink was mindful that the Defendants were deposed in the MDL. But he found that the depositions Plaintiffs requested were not duplicative. Rather, they were necessitated by the Director's affirmative decision to put jurisdictional facts at issue through newly sworn testimony. As such, Judge Frink agreed that Plaintiffs must have the opportunity to cross examine and test the Directors on their new assertions.

This type of discovery is necessarily state-specific. It turns on each Defendant's contacts with the forum, the Plaintiff's claims, and the governing law of the recipient jurisdiction. This same issue may recur in other cases depending on the defenses asserted, and trial courts are best positioned to determine whether such discovery is proportional and justified. In the *McKnight* action, Judge Schreiber denied Plaintiffs' request for jurisdictional discovery, and granted the Director Defendants' motions to dismiss on jurisdictional ground. But that supports these 7 opt-out Plaintiffs' request for transfer at this time. That different judges may reach different decisions is not, contrary to Defendants' argument, a reason to keep these cases. Why? Because, unless this Court makes *every* pretrial ruling, disparate rulings will be inevitable. Defendants occasioned this situation by moving to undo the Court's prior decisioins on personal jurisdiction.

**Plaintiff-Specific Discovery.**

The same reasoning of state jurisdictional issues is true regarding CMEs. Decisions regarding whether, when, and under what conditions such examinations may occur are governed by state law, local rules, and the specific medical and factual circumstances of each Plaintiff. They involve individualized determinations of necessity, scope, examiner qualifications, location, and

timing—none of which lend themselves to MDL-wide rulings. Those determinations should be made by the courts that will ultimately oversee trial and manage the evidentiary record. Delaying transfer so that these issues can be addressed later in the MDL would only postpone their inevitable resolution in the recipient courts, without any corresponding efficiency benefit.

Other issues may arise that cannot be resolved globally and cannot be meaningfully adjudicated in the abstract. Each opt-out plaintiff presents unique factual circumstances: geography, exposure, local advertising, retail environments, and regulatory context. For example, a plaintiff from a particular neighborhood or state may seek discovery regarding JUUL advertising or retail practices specific to that location. As another example, in the *McKnight* action, Defendants are seeking broad, third party discovery on the State of Florida's investigation of EVALI. None of those issues were addressed—or could have been addressed—through MDL-wide discovery. Such discovery will vary widely from case to case. It cannot be standardized, and it cannot be resolved in advance without knowing the claims and defenses in each individual action. Defendants' note an issue regarding email productions. That should not move the needle. As an initiall matter, this is the first Defendants raised the issue, despite having Plaintiffs' productions since August 2023, when Plaitniffs served documents pursuant to CMO. Neither did Defendants inform Plaitniffs about any perceived deficiencies in 2024 or 2025 when the parties conducted further written discovery. What's more, however, is that this is a routine discovery issue that can be handled in the receiving courts. If Defendants thought Plaintiffs' productions required this Court's intervention, they could have raised the point long ago.

**Update Discovery Based on Post-MDL Developments.**

Another category of discovery that remains is update discovery addressing events that occurred after MDL discovery closed. As previewed during the December 16, 2025 hearing, substantial developments have occurred since that time, including Altria's disengagement from JUUL, JUUL's subsequent receipt of FDA authorization after prior delay, and ongoing changes to JUUL's business activities, products, and marketing strategies, including JUUL2.

These developments may become relevant in individual cases depending on how Defendants elect to use them, particularly with respect to punitive damages. Ongoing conduct may be

aggravating evidence, just as post-incident remedial conduct may be offered as mitigation. Whether update discovery is warranted, and to what extent, will depend on the defenses asserted and the posture of each case—questions that are inherently case-specific and best addressed by the courts presiding over those actions.

In sum, Plaintiffs are not seeking to reopen generic MDL discovery or to relitigate issues already resolved. The discovery that remains is limited and case-specific—focused on state-law matters such as personal jurisdiction and CMEs, as well as narrow update discovery addressing post-MDL developments which the Defendants have a continuing duty to supplement regardless. As this Court has already recognized, these are precisely the types of state-specific issues for which continued MDL oversight is neither necessary nor efficient, particularly where only seven (7) cases remain. Any limited coordination that may be required can readily occur among the parties without the Court retaining these cases. There is no efficiency to be gained by holding the cases for months longer only to remand them later to resolve the same issues in the courts that will ultimately try them. Accordingly, plaintiffs respectfully submit that transfer now is the most appropriate course.

**Defendants' Position**

The Court should enter a case management order requiring completion of fact discovery within 120 days, expert discovery within an additional 120 days, and suggestion of remand to the Judicial Panel on Multidistrict Litigation thereafter. (Defendants' proposed order is attached as Exhibit A.) This proposal furthers each of the interests the Court identified—avoidance of duplicative discovery, preservation of state-law issues for transferor courts, and facilitation of trials. It fits with CMOs 17 and 19. *See* Dkt. 4471; *see also* CMO No. 17 [Dkt. 3780] at 31–32 (halting "additional 'generic' or 'core' discovery" against settling JLI defendants and providing for judicial determination of the appropriateness of any further "non-duplicative discovery"); CMO No. 19 [Dkt. 4112] (same as to settling Altria defendants). And it allows Defendants to complete their remaining discovery.

***Avoidance of duplicative discovery.*** Because the parties still need to take discovery that cuts across all seven cases, continued centralization in this Court for just 240 additional days avoids duplication of effort.

Expert discovery is the best example. Because the same or similar experts are or will be disclosed in the seven cases, centralization is efficient. All Plaintiffs disclosed the same or similar case-specific experts, and they likely will do the same for generic experts. Although Defendants have not disclosed experts, they likely will disclose the same experts in multiple cases, too. With continued progress in this Court, expert discovery need only happen once, and this Court can resolve any disputes uniformly. By contrast, transferring now ensures duplicative discovery and litigation as to the scope of such discovery because the same experts would be deposed under the oversight of seven different courts.

Fact discovery also is cross-cutting because Plaintiffs' productions have similar deficiencies. As one example, *no* Plaintiff has produced email records because the Schlesinger Firm has not collected or reviewed their emails and instead relied on Plaintiffs to do so. *McKnight* proves the point. There, the plaintiffs required defendants to move to compel this discovery and counsel's personal participation in it, only then to produce thousands of pages of improperly withheld emails. The court noted it was concerned about the counsel's discovery efforts and ordered a supplemental search for emails with counsel's involvement. Disputes like this one should be resolved once in this Court, not repeatedly in seven different courts.[1] Plaintiffs' sole counterargument—that Defendants did not raise this issue before—is incorrect. Defendants first alerted the *McKnight* plaintiffs to their failure to produce email records in December 2024. And, in that case and others, deponents have testified to the existence of unproduced email records, notifying the Schlesinger Firm about its deficient discovery efforts. Plaintiffs' complete failure to search for and produce relevant emails is not "a routine discovery issue"; it is a cross-cutting deficiency unique to these cases.

Plaintiffs are incorrect that they seek only case-specific discovery. The "update" discovery they propose is generic and—as this Court said—"a pretty good argument for . . . keeping the case." Dkt. 4476 at 12. The FDA's approvals for the JUUL device and certain of its e-liquids are relevant to all seven actions, and discovery concerning them should be taken only once, under this Court's

---

[1] Indeed, there has been no limit to the disputes the Schlesinger Firm has picked in remand courts. In *McKnight*, they refused to agree to the entry of the MDL protective order and ESI order, thus requiring JLI to file a motion.

supervision.² JUUL2 is not relevant: JLI never has marketed it in the United States, and no Plaintiff used it. At any rate, any discovery on that topic would be generic, not case-specific, and therefore would warrant continued consolidation.³ Seven courts addressing the scope of this discovery invites duplicative and potentially inconsistent rulings.

***Minimizing burden on prior deponents.*** Continued consolidation minimizes the burden on individuals whom Plaintiffs already deposed in the MDL. In the *McKnight* and *Shapiro* cases, Plaintiffs have sought to re-depose Adam Bowen, James Monsees, Nicholas Pritzker, and Riaz Valani, even though they already sat for full, two-day depositions in the MDL. At the last status conference, this Court said it "wasn't thinking that [Plaintiffs] would be trying to redepose" these witnesses and doubted that "it would be appropriate to get more discovery from them." Dkt. 4476 at 6. The Court's concerns are valid. Continued supervision in this Court is the only way to ensure that discovery in these cases moves forward, not backward.

Plaintiffs' claim that the individual Defendants' jurisdictional declarations "triggered" their re-depositions is a pretext. Messrs. Pritzker and Valani submitted their declarations to this Court in May 2025, *see, e.g.*, *Lane v. Juul Labs, Inc.*, Case No. 3:20-cv-04661, Dkts. 23-5, 23-6, 23-7; it was only when Defendants submitted declarations in *remand* courts—before different judges—that Plaintiffs argued they justify re-deposition. Moreover, although Plaintiffs tout Judge Frink allowing these re-depositions in *Shapiro*, Plaintiffs omit that Judge Schreiber refused them in *McKnight*. Plaintiffs creating inconsistent rulings *in the same State's courts* just months after remand is hardly

---

² JLI has produced or will produce the Premarket Tobacco Product Applications ("PMTA") for which the FDA issued marketing granted orders, any supplements or amendments to those applications, and the FDA's marketing granted orders and ancillary papers setting forth the reasons for the FDA's approval of JUUL products. Anticipated requests for discovery such as "all correspondence between [JLI] and the FDA from January 1, 2021 to present" (requested by the Schlesinger Firm in *Shapiro*) are neither appropriately tailored nor proportionate to the needs of the case.

³ Given the post-remand discovery Plaintiffs' counsel have served in *McKnight* and *Shapiro*, Defendants reasonably expect that, whatever they may now say, Plaintiffs will seek to re-open "generic" or "core" discovery as soon as their actions are transferred out of this Court. *See* Ex. B (composite of written discovery served on JLI in *Shapiro* post-remand); Dkt. 4465 at 5–6 (listing examples of generic discovery former MDL plaintiffs served post-remand).

an argument for transfer. Plaintiffs' counterargument—that Defendants caused inconsistent rulings by seeking to "undo" this Court's personal-jurisdiction rulings—is incorrect because there is no inconsistency. This Court was clear that its rulings were based on pleadings, not evidence. In *McKnight*, Defendants adduced evidence and prevailed on that basis.

*Facilitating earliest reasonable trials.* Continued centralization will yield the earliest trial dates because the parties can take discovery once under a single set of rules, not seven times under seven sets of rules. When the Court suggests remand after fact and expert discovery, the cases will be ready for summary-judgment and *Daubert motions* and trial.

Transferring the cases now will not get them to trial more quickly. To see why, look no further than some of the cases this Court already remanded to state courts. The Court remanded the *Fay* case on May 13, 2025 in part based on the Schlesinger Firm's representations that it needed a trial date. Case No. 3:19-cv-07934, Dkt. 42. The Schlesinger Firm then failed to prosecute the case for *eight months*, waiting until January 13, 2026 to obtain the local counsel needed for the case to proceed. *McKnight* is similar. Upon remand, Plaintiffs represented to Judge Schreiber that the case was trial ready, and she initially set a May 2026 trial; it has only just been discovered that, when Plaintiffs made that representation, they had not even *started* the most basic document discovery (collection and review of emails). These examples show that the Schlesinger Firm's arguments for transfer are about something other than getting cases to trial quickly.

*Transferor courts addressing state law.* Finally, Defendants' proposal is consistent with transferor courts addressing state-law issues. If this Court prefers, the transferor courts can address summary-judgment motions. And although independent medical exams might present state-law issues, Defendants believe the parties should be able to resolve those issues without the need for this Court's intervention. In the event this Court does need to rule, Defendants respectfully submit that is a small price to pay for the benefits of continued consolidation. For all these reasons, the Court should order 120 days for fact discovery and 120 additional days for expert discovery. During those periods, Defendants expect to take fact discovery as follows (in addition to standard expert discovery of those general and case-specific experts Plaintiffs disclose).

***Defendants' Proposed Fact Discovery.*** Plaintiffs have not searched for and produced emails responsive to Defendants' requests for production. The Court should order Plaintiffs to undertake those searches and productions, and Defendants should be permitted to re-depose Plaintiffs regarding any documents they failed to produce before their initial depositions. Consistent with the Court's prior rulings, Defendants also intend to serve narrow third-party subpoenas for documents specifically identified in depositions to date.

In addition to this outstanding document discovery, Defendants intend to take approximately 30 fact witness depositions in total across all seven cases (although the final number may increase depending on the facts elicited at these depositions). The Court should instruct Plaintiffs' counsel to cooperate in the setting of these depositions. Plaintiffs' counsel repeatedly have claimed not to represent third-party witnesses, forced Defendants to resort to formal service of subpoenas, and only then agreed to represent the witnesses—after Defendants have incurred unnecessary expenses and the depositions have been delayed needlessly.

Finally, Defendants intend to take independent medical examinations of six Plaintiffs, which Plaintiffs previously opposed as premature before the Parties agreed that the examinations would be taken during this upcoming phase of discovery. These should require minimal judicial supervision or intervention. *See* Dkt. 4361 ("the parties should be able to identify and follow the state law procedures that govern their state law claims" with respect to medical examinations).

| | |
|---|---|
| Dated: January 21, 2026 | Respectfully submitted, |
| By: /s/ *Timothy J. McGinn*<br>Timothy S. Danninger (*pro hac vice*)<br>**GUNSTER YOAKLEY & STEWART, P.A.**<br>1 Independent Drive, Suite 2300<br>Jacksonville, FL 32204<br>Telephone: (904) 354-1980<br><br>Timothy J. McGinn (*pro hac vice*)<br>**GUNSTER YOAKLEY & STEWART, P.A.**<br>600 Brickell Ave, Suite 3500<br>Miami, FL 33131<br>Telephone: (305) 376-6084<br><br>*Attorneys for Defendant Juul Labs, Inc.* | By: /s/ *Jeffrey L. Haberman*<br>Scott P. Schlesinger, (*pro hac vice*)<br>Jonathan R. Gdanski, (*pro hac vice*)<br>Jeffrey L. Haberman, (*pro hac vice*)<br>**SCHLESINGER LAW OFFICE, P.A.**<br>1212 SE Third Avenue<br>Fort Lauderdale, FL 33317<br>Tel: (954) 467-8800<br><br>*Attorneys for the Remaining Personal Injury Plaintiffs* |

By: /s/ *David E. Kouba*
David E. Kouba, (*pro hac vice*)
**ARNOLD & PORTER KAY SCHOLER, LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 942-5230
Fax: (202) 942-5999
david.kouba@arnoldporter.com

By: /s/ *Lauren S. Wulfe*
Lauren S. Wulfe, SBN 287592
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
lauren.wulfe@arnoldporter.com

*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, and Altria Distribution Company*

By: /s/ *Eugene Illovsky*
Eugene Illovsky
Matthew Dirkes
**ILLOVSKY GATES & CALIA LLP**
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643

*Attorneys for Defendant Adam Bowen*

| | |
|---|---|
| 1 | By: /s/ *Michael J. Guzman* |
| | Mark C. Hansen |
| 2 | Michael J. Guzman |
| | David L. Schwarz |
| 3 | **KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.** |
| 4 | Sumner Square, 1615 M St., N.W., Suite 400 |
| | Washington, DC 20036 |
| 5 | Telephone: (202) 326-7910 |
| 6 | *Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh* |
| 7 | |
| 8 | By: /s/ *James Kramer* |
| | James Kramer |
| | Catherine Malone |
| 9 | Kevin Askew |
| | **ORRICK HERRINGTON & SUTCLIFFE LLP** |
| 10 | The Orrick Building |
| 11 | 405 Howard Street |
| | San Francisco, CA 94105-2669 |
| 12 | Telephone: (415) 773-5700 |
| | jkramer@orrick.com |
| 13 | cmalone@orrick.com |
| | kaskew@orrick.com |
| 14 | |
| | *Attorneys for Defendant James Monsees* |
| 15 | |

Joint Status Report Concerning Further Pre-Trial Proceedings – Case No. 3:19-md-02913-WHO