# EXHIBIT B

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
### CIRCUIT CIVIL DIVISION

| | |
|---|---|
| BEN SHAPIRO, CRAIG SHAPIRO, and JULIE SHAPIRO, | CASE NO.: CACE-19-010866 |
| Plaintiffs, | |
| v. | |
| JUUL LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., ALTRIA CLIENT SERVICES, ALTRIA GROUP DISTRIBUTION COMPANY, ALTRIA ENTERPRISES LLC, JAMES MONSEES, ADAM BOWEN, NICHOLAS PRITZKER, HOYOUNG HUH, RIAZ VALANI, MY VAPOR HUT, INC. d/b/a 1st WAVE VAPOR, and EDGAR F. DI PUGLIA, in his capacity as owner of THE SMOKE HOUSE SMOKE SHOP, | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS JAMES MONSEES, ADAM BOWEN, NICHOLAS PRITZKER, HOYOUNG HUH, AND RIAZ VALANI

**COMES NOW** Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro, by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.350, hereby request that Defendants James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani ("Non-Management Defendants"), produce the following documents and things within their custody, possession, or control, for inspection and copying, within thirty (30) days of service thereof.

## DEFINITIONS

1. **ENDS** means electronic nicotine delivery system, including components and parts, but not related accessories. As used in these requests, the term includes heat-not-burn devices.

2. **Health or law enforcement agency** means any federal, state, or local agency or arm of an

executive branch having any jurisdiction over public health or law enforcement, including the U.S. Food and Drug Administration, U.S. Federal Trade Commission, U.S. Department of Justice, and their state and local equivalents, including state Attorneys General.

3.    **Legislative official** means any elected legislative official or representative or agent of an elected legislative official, or any federal, state, or local legislative body, including committees and subcommittees.

4.    **Other government entity** refers as broadly as possible to any government entity that is not a legislative official or a health or law enforcement agency, as defined above, including the entity's employees, agents, and representatives. This term includes government entities outside the United States.

5.    **Tobacco entity** refers to Altria, Japan Tobacco International, Avail, Reynolds American, Inc., British American Tobacco, Imperial Brands plc, and their parents, subsidiaries, predecessors, or successors.

6.    **Altria** refers to Altria Group, Inc., Philip Morris USA, Inc., Altria Client Services, Altria Group Distribution Company, Altria Enterprises LLC, and their parents, subsidiaries, predecessors, or successors.

7.    **JLI** refers to JUUL Labs, Inc. (specifically including its predecessors Pax Labs, Inc., and Ploom, Inc.).

8.    **JUUL** refers as broadly as possible to any and every JUUL ENDS, including JUUL Pods and e-liquids, and it refers both to all finished products and design prototypes or models of JUUL.

9.    The terms **or** and **and** should be construed disjunctively or conjunctively so as to give the broadest possible effect to a request.

10.     The terms **You** and **Your** refer to the specific Defendant answering the requests.

## INSTRUCTIONS

1.     Unless otherwise indicated, for Bowen and Monsees, the relevant time period for the information sought is from the date You first researched, designed, or developed Your earliest ENDS to the present.

2.     Unless otherwise indicated, for Huh, Pritzker, and Valani, the relevant time period for the information sought is from the date You first communicated with JLI or any of its employees to the present.

## REQUESTS FOR PRODUCTION

1.     All documents, communications, and correspondence, including text messages, between or among You and any legislative official, health or law enforcement agency, or other government entity, where such documents, communications, or correspondence pertain in any way to JUUL, including but not limited to JUUL's design, research, development, testing, manufacturing, marketing, advertising, distribution, sale, regulatory compliance, regulation, or potential regulation.

2.     All communications, including text messages, from, to, or including You relating to legislative action or potential legislative action with respect to JUUL or ENDS by any legislative official.

3.     All communications, including text messages, from, to, or including You and any third party relating to legislative action or potential legislative action with respect to JUUL or ENDS by any legislative official.

4.     All communications, including text messages, from, to, or including You relating to the regulation or potential regulation of JUUL or ENDS by a health or law enforcement agency

or other government entity.

5.      All communications, including text messages, from, to, or including You relating to any potential or actual investigatory or legal proceeding by a health or law enforcement agency or other government entity relating in any way to JUUL.

6.      All documents reflecting interactions with, or preparation for interactions with, any legislative official, health or law enforcement agency, or other government entity, where such interactions relate in any way to JUUL, including, but not limited to, presentations, communications, including text messages, regarding strategy, meeting notes, agendas, summaries of interactions, calendars reflecting planned or actual attendance at meetings or calls, and all other such documents.

7.      Transcripts and/or recordings of any interactions between You and any legislative official, health or law enforcement agency, or other government entity, where such interactions relate in any way to JUUL or ENDS.

8.      All communications, including text messages, from, to, or including You and any tobacco entity or its officers, directors, employees, or agents relating to JLI, to JUUL, or to other ENDS.

9.      All documents and communications, including text messages, relating to the potential for, or actual creation of, any formal or informal business relationship between You or JLI and any tobacco entity.

10.      All documents and communications, including text messages, relating or reflecting any tobacco entity's role in JLI's business operations.

11.      Documents sufficient to show Your investments in JLI and/or ownership of JLI securities during the relevant time period.

12.     All calendar entries, handouts, presentations, minutes, notes, "board decks" and other materials related to meetings of the Board of Directors of JLI.

13.     All past and current policies and procedures governing the design or development of JUUL including, but not limited to, policies and procedures governing:

     a.   product development;

     b.   design controls;

     c.   design review;

     d.   design verification;

     e.   design validation;

     f.   design transfer;

     g.   design changes;

     h.   user needs and requirements;

     i.   maintenance of a design history file;

     j.   maintenance of a device master record;

     k.   maintenance of a device history record;

     l.   hazard analyses;

     m.   corrective action/preventative action (CAPA); and/or

     n.   risk management.

14.     All dictionaries, glossaries, policies, videos, or other such documents explaining or defining technical terms, including acronyms, used in the course of designing, developing, testing, or manufacturing JUUL.

15.     All past and current policies and procedures not produced in response to any preceding request that govern or pertain to any aspect of a quality management system or system of

good manufacturing practices, by whatever name, that applied to the design, development, testing, or manufacture of JUUL or JUUL's e-vapor, including any corrective actions related to quality management or manufacturing practices.

16. All correspondence pertaining to any patent application for or relating to JUUL that was submitted by JLI, or by anyone else on JLI's behalf or under JLI's direction or control, to any patent office anywhere.

17. All documents relating to any patent (pending or issued) or patent application concerning any technology-based solution to restrict youth access and reduce youth use of ENDS, including JUUL.

18. All documents relating to any patent (pending or issued) or patent application concerning any user-level access restrictions in connection with any ENDS, including JUUL.

19. All documents contemplating, constituting, or reflecting the licensing, authorization for use, or other permitted use of any patented JUUL-related product or technology.

20. All documents contemplating, constituting, or reflecting the licensing, authorization for use, or other permitted use of any trade secret or other non-patented proprietary information relating to JUUL.

21. All documents discussing or reflecting any third party's potential infringement upon any patent for or relating to JUUL.

22. All versions of all protocols for any and all tests of JUUL, JUUL's e-vapor, or JUUL's nicotine salts.

23. For every test of JUUL, JUUL's e-vapor, or JUUL's nicotine salts, all documents constituting, containing, describing, or reflecting the following:

    a. proposals that the test be performed;

    b.   all prior studies or publications or tests reviewed or referenced in regard to the test to be performed;

    c.   meeting agendas and minutes pertaining to the test;

    d.   testing approvals;

    e.   testing enrollment;

    f.   test methodology;

    g.   raw data generated in connection with the test;

    h.   invoices generated in connection with the test;

    i.   interim and final test results;

    j.   test reports or summaries;

    k.   submission of test results to third parties; and

    l.   all analyses of each and every such test.

24.     All documents reflecting the design or performance (or any actual or proposed change in or alternative to the design or performance) of JUUL, JUUL's e-vapor, or JUUL's nicotine salts.

25.     All communications, including text messages, between You and anyone else addressing, proposing, exploring or otherwise relating to testing or study of JUUL, JUUL's e-vapor, or JUUL's nicotine salts.

26.     All documents constituting or reflecting the results of any investigation comparing JUUL to any other tobacco products.

27.     All documents constituting or reflecting the results of any investigation of JUUL's health effects and/or risks, including the addictiveness or potential addictiveness of JUUL or any of JUUL e-liquid ingredients or aerosol constituents.

28.  All documents related in any way to the manufacture of JUUL, JUUL e-liquid, or any of JUUL's components and parts or the ingredients and additives (as defined in 21 U.S.C. § 387(1)) of JUUL e-liquid.

29.  All documents concerning in any way the constituents of JUUL e-vapor.

30.  All clinical or nonclinical studies of JUUL, JUUL e-liquid, JUUL e-vapor, or JUUL nicotine salts.

31.  All communications, including text messages, between You and anyone else relating to the labeling and/or packaging of JUUL, including communications relating to potential or actual warnings.

32.  All documents and communications, including text messages, containing, discussing, or reflecting:

   a.  JUUL sales or share of market;

   b.  revenues, profits, or losses from the sale of JUUL; or

   c.  JLI's financial performance or financial condition.

33.  All documents, correspondence, or communications, including text messages, reflecting statements, reports, recommendations, opinions, forecasts, or projections made by You to any other person, business entity, corporation, funder, investor or board of directors regarding the past performance, valuation, or anticipated future performance (including unit sales and revenues) of JLI.

34.  All documents, correspondence, or communications, including text messages, reflecting statements, reports, opinions, projections, forecasts, or recommendations made by You to Altria or any entity or person acting on its behalf regarding the past business / financial performance, valuation, or anticipated future business / financial performance of JLI.

35.    All documents, communications, or correspondence, including text messages, You gave or presented to Altria or any person or entity acting on its behalf during any negotiations for the sale of any stake in JLI to Altria or during Altria's due diligence processes conducted regarding its investment in JLI.

DATED:   November 19, 2025                              Respectfully submitted,

                                                        /s/ Jeffrey L. Haberman
                                                        Jeffrey L. Haberman
                                                        Florida Bar No. 98522
                                                        **SCHLESINGER LAW OFFICES, P.A.**
                                                        1212 Southeast Third Avenue
                                                        Fort Lauderdale, FL 33316
                                                        Phone: (954) 467-8800
                                                        Fax: (954) 320-9509
                                                        Jhaberman@schlesingerlaw.com

                                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on November 19, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on Counsel for Defendants via the Florida Courts e-Filing Portal in accordance with Fla. R. Jud. Admin. 2.516.

                                    By: /s/ Jeffrey L. Haberman
                                        Jeffrey L. Haberman

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

|  |  |
|---|---|
| BEN SHAPIRO, CRAIG SHAPIRO, and JULIE SHAPIRO,<br><br>     Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., ALTRIA CLIENT SERVICES, ALTRIA GROUP DISTRIBUTION COMPANY, ALTRIA ENTERPRISES LLC, JAMES MONSEES, ADAM BOWEN, NICHOLAS PRITZKER, HOYOUNG HUH, RIAZ VALANI, MY VAPOR HUT, INC. d/b/a 1st WAVE VAPOR, and EDGAR F. DI PUGLIA, in his capacity as owner of THE SMOKE HOUSE SMOKE SHOP,<br><br>    Defendants. | CASE NO.: CACE-19-010866 |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT JUUL LABS, INC.

**COMES NOW** Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro, by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.340, hereby request that Defendant JUUL Labs, Inc. ("JLI") answer the following interrogatories, within thirty (30) days of service thereof.

## DEFINITIONS

1.  **FDA** means the Food & Drug Administration and its employees and agents, including any individual whom JLI knew or believed was serving or acting on behalf of the FDA with respect to the transactions and communications described in the requests.

2.  **ENDS** means electronic nicotine delivery system, including components and parts, but not related accessories. As used in these requests, the term includes heat-not-burn devices.

3.  **JLI** refers to JUUL Labs, Inc. (specifically including its predecessors Pax Labs, Inc., and Ploom, Inc.).

4.  **JUUL or JUUL Products** refers as broadly as possible to any and every JUUL ENDS, including JUUL Pods and e-liquids, and it refers both to all finished products and design prototypes or models of JUUL.

5.  The terms **or** and **and** should be construed disjunctively or conjunctively so as to give the broadest possible effect to a request.

6.  The terms **You** and **Your** refer to the specific Defendant answering the requests.

7.  **Youth** means any person under the age of 21 years old.

8.  **Documents** includes but is not limited to all writings, emails, communications, texts, memos, photographs, video, receipts, invoices, promotional materials, social media posts, and electronically stored information.

9.  **Altria** Refers To Altria Group, Inc., Philip Morris Usa Inc., Altria Client Services, Altria Group Distribution Company, Altria Enterprises LLC.

10. **Press Release** means JLI's corporate web posting titled "JUUL LABS' STATEMENT ON FDA MARKETING AUTHORIZATIONS," dated July 17, 2025, beginning "Today the U.S. Food and Drug Administration (FDA) issued marketing granted orders (MGOs) for the JUUL System…" and including statements that JUUL submitted "over 110 scientific studies," that "more than two million Americans have switched completely away from combustible tobacco" using JUUL products, that JUUL "markets responsibly and uses age-verification measures," that reported underage use of JUUL products has "decreased by more than 98% since 2019," that JUUL2 has "built-in access control capabilities to prevent underage use," that JUUL has developed "adult-oriented flavors beyond Virginia Tobacco and Menthol," that JUUL's mission is to "make the cigarette obsolete," and that JUUL is "the only major vapor company not owned by or invested in by a cigarette manufacturer," among other statements.  The Press Release is available here:

    https://www.juullabs.com/juul-labs-statement-on-fda-marketing-authorizations/

11.     **MDL** means the multi-district litigation: *In Re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 3:19-md-02913-WHO (N.D. Cal.)

## INTERROGATORIES

Interrogatory No. 1: Identify all changes to any JUUL-branded product's formulation, design, nicotine concentration, aerosol output, flavor profile, or device engineering implemented from January 1, 2021 to present. For each change, identify the reasons and all persons involved.

Response:

Interrogatory No. 2: Describe all toxicological, pharmacological, aerosol, or emissions testing performed on JUUL products from January 1, 2021 to present, including methodology, results, and dates.

Response:

Interrogatory No. 3: Identify all FDA submissions made by JUUL Labs, Inc. since JLI last produced discovery in the MDL, including supplemental PMTAs, amendments, deficiency responses, or post-market reports.

Response:

Interrogatory No. 4: State whether JLI has received any FDA communications post January 1, 2021 relating to youth access, youth usage patterns, product safety, nicotine delivery, manufacturing compliance, or marketing compliance, and describe each such communication.

Response:

Interrogatory No. 5: Describe any internal analyses, studies, assessments, or reports generated since January 1, 2021 regarding youth usage trends of JUUL products.

Response:

Interrogatory No. 6: Identify all adverse events, consumer complaints, or injury reports received by JLI from January 1, 2021 to present, including the nature of the event and actions taken.

Response:

Interrogatory No. 7: Describe all marketing, advertising, branding, or promotional strategies used by JLI from January 1, 2021 to present, including target demographics and changes from prior strategies.

Response:

Interrogatory No. 8: Identify each JLI employee, contractor, or consultant responsible for regulatory compliance from January 1, 2021 to present, and describe their responsibilities.

Response:

Interrogatory No. 9: Describe all corporate restructuring events, ownership changes, or governance changes at JUUL Labs, Inc. or any related entity since January 1, 2021.

Response:

Interrogatory No. 10: Identify every communication between JLI and Altria from January 1, 2021 to present concerning product design, regulatory submissions, marketing strategy, youth prevention initiatives, safety concerns, or financial performance.

Response:

Interrogatory No. 11: Identify all documents or reports provided to JLI's Board of Directors since January 1, 2021 concerning product safety, nicotine delivery, youth usage, FDA communications, or litigation risk.

Response:

Interrogatory No. 12: Describe all quality control, manufacturing, or engineering audits conducted by or for JLI post January 1, 2021, including results and corrective actions taken.

Response:

Interrogatory No. 13: Describe JLI's current policies and procedures regarding monitoring and preventing youth access and any changes made after January 1, 2021.

Response:

Interrogatory No. 14: Identify all suppliers, manufacturers, or contract facilities used post January 1, 2021 in producing any JUUL product.

Response:


Interrogatory No. 15: Describe any changes in JUUL's warnings, instructions, packaging, labeling, or nicotine disclosures since January 1, 2021.


Response:


Interrogatory No. 16: Identify all communications with federal or state agencies, including FDA, FTC, or state AGs, from January 1, 2021 to present relating to product safety, youth access, marketing compliance, or regulatory approval.


Response:


Interrogatory No. 17: Identify any studies, analyses, or internal assessments performed post-January 1, 2021 regarding addiction potential, nicotine pharmacokinetics, or abuse liability because of or related to JUUL products.


Response:


Interrogatory No. 18: Describe any post-market surveillance programs implemented after January 1, 2021 and provide details regarding the data collected.


Response:


Interrogatory No. 19: Identify any meetings, including with or among the Board of Directors, held since January 1, 2021 where product safety, FDA communications, youth usage, or regulatory risk

were discussed, and identify all attendees, and describe the nature and discussions of those meetings.

Response:


Interrogatory No. 20: Identify all changes JLI made to its litigation hold, document retention, or preservation policies since JLI last produced discovery in the MDL.

Response:


Interrogatory No. 21: Identify each of the "over 110 scientific studies" referenced in the Press Release, including for each study: (a) title; (b) date(s); (c) study type (e.g., nonclinical, clinical, behavioral); (d) principal investigator; (e) whether it was conducted internally or externally; (f) whether it has been peer-reviewed or published; and (g) the primary findings as You contend they support FDA authorization.

Response:



Interrogatory No. 22: Describe in detail the methodology used to arrive at the Press Release statement that "more than two million Americans have switched completely away from combustible tobacco" using JUUL products, including: (a) all data sources; (b) inclusion and exclusion criteria; (c) how "switched completely" was defined; (d) the time period measured; and (e) any sensitivity analyses or alternative estimates considered.

Response:

Interrogatory No. 23: Describe in detail how You calculated the Press Release statement that reported underage use of JUUL products has "decreased by more than 98% since 2019," including all data sources, surveys, time frames, age ranges, geographic scopes, and mathematical calculations used to generate that percentage.

Response:

Interrogatory No. 24: Identify all data sets and analyses that form the basis for the Press Release statement that underage use of all vapor products is at "the lowest point in more than a decade," including: (a) the specific surveys relied upon; (b) the years compared; and (c) any contrary or conflicting data You considered.

Response:

Interrogatory No. 25: Describe in detail what You mean by "markets responsibly" and "uses age-verification measures to ensure that our products are marketed to and used by adults," as stated in the Press Release, including each specific marketing restriction, age-verification tool or process (online and retail), and any metrics You use to evaluate whether those measures are effective.

Response:

Interrogatory No. 26: Describe in detail the "built-in access control capabilities to prevent underage use" of the JUUL2 platform referenced in the Press Release, including: (a) all technical features; (b) implementation dates; (c) testing performed to assess their effectiveness; and (d) any

known or suspected methods by which underage users have been able to circumvent those controls.

Response:


Interrogatory No. 27: Identify all "adult-oriented flavors beyond Virginia Tobacco and Menthol" referred to in the Press Release, including for each: (a) the flavor name; (b) the date developed; (c) whether it has been included in any regulatory submission; (d) any testing performed to assess its appeal to adults versus underage users; and (e) whether it has been marketed or sold in the United States.

Response:


Interrogatory No. 28: Explain in detail the basis for the Press Release statement that JUUL Labs is "the only major vapor company not owned by or invested in by a cigarette manufacturer," including: (a) how You defined "major"; (b) which competitors You considered; (c) what information You relied on regarding their ownership and investments; and (d) any internal discussion of whether this statement was accurate.

Response:


Interrogatory No. 29: Identify all JLI officers, employees, or agents who reviewed or approved the Press Release prior to publication, and for each such person describe their role in verifying the

accuracy of: (a) the numerical estimates; (b) the claims about underage use; and (c) the claims about JUUL's uniqueness in the marketplace.

Response:

Interrogatory No. 30: Identify all categories of documents or data that form any part of the factual basis for the Press Release but were not produced during discovery in the MDL and describe why such materials were not produced in that proceed.

Response:

DATED: November 19, 2025                    Respectfully Submitted,

                                            */s/Jeffrey L. Haberman*
                                            Jeffrey L. Haberman
                                            Scott P. Schlesinger
                                            Jonathan R. Gdanski
                                            **SCHLESINGER LAW OFFICES, P.A.**
                                            1212 SE Third Avenue
                                            Fort Lauderdale, FL 33316
                                            Tel: (954) 467-8800
                                            jhaberman@schlesingerlaw.com
                                            scott@schlesingerlaw.com
                                            jonathan@schlesingerlawoffices.com

                                            *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on November 19, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on Counsel for Defendants via the Florida Courts e-Filing Portal in accordance with Fla. R. Jud. Admin. 2.516.

By: */s/ Jeffrey L. Haberman*

Jeffrey L. Haberman

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

| | |
|---|---|
| BEN SHAPIRO, CRAIG SHAPIRO, and JULIE SHAPIRO,<br><br>      Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., ALTRIA CLIENT SERVICES, ALTRIA GROUP DISTRIBUTION COMPANY, ALTRIA ENTERPRISES LLC, JAMES MONSEES, ADAM BOWEN, NICHOLAS PRITZKER, HOYOUNG HUH, RIAZ VALANI, MY VAPOR HUT, INC. d/b/a 1st WAVE VAPOR, and EDGAR F. DI PUGLIA, in his capacity as owner of THE SMOKE HOUSE SMOKE SHOP,<br><br>      Defendants. | CASE NO.: CACE-19-010866 |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT JUUL LABS, INC.

**COMES NOW** Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro, by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.370, hereby request that Defendant JUUL Labs, Inc. ("JLI") answer the following Requests for Admission, within thirty (30) days of service thereof.

## DEFINITIONS

1. **FDA** means the Food & Drug Administration and its employees and agents, including any individual whom JLI knew or believed was serving or acting on behalf of the FDA with respect to the transactions and communications described in the requests.

2. **ENDS** means electronic nicotine delivery system, including components and parts, but not related accessories. As used in these requests, the term includes heat-not-burn devices.

3.   **JLI** refers to JUUL Labs, Inc. (specifically including its predecessors Pax Labs, Inc., and Ploom, Inc.).

4.   **JUUL or JUUL Products** refers as broadly as possible to any and every JUUL ENDS, including JUUL Pods and e-liquids, and it refers both to all finished products and design prototypes or models of JUUL.

5.   The terms **or** and **and** should be construed disjunctively or conjunctively so as to give the broadest possible effect to a request.

6.   The terms **You** and **Your** refer to the specific Defendant answering the requests.

7.   **Youth** means any person under the age of 21 years old.

8.   **Documents** includes but is not limited to all writings, emails, communications, texts, memos, photographs, video, receipts, invoices, promotional materials, social media posts, and electronically stored information.

9.   **Altria** Refers To Altria Group, Inc., Philip Morris Usa Inc., Altria Client Services, Altria Group Distribution Company, Altria Enterprises LLC.

10.  **Press Release** means JLI's corporate web posting titled "JUUL LABS' STATEMENT ON FDA MARKETING AUTHORIZATIONS," dated July 17, 2025, beginning "Today the U.S. Food and Drug Administration (FDA) issued marketing granted orders (MGOs) for the JUUL System…" and including statements that JUUL submitted "over 110 scientific studies," that "more than two million Americans have switched completely away from combustible tobacco" using JUUL products, that JUUL "markets responsibly and uses age-verification measures," that reported underage use of JUUL products has "decreased by more than 98% since 2019," that JUUL2 has "built-in access control capabilities to prevent underage use," that JUUL has developed "adult-oriented flavors beyond Virginia Tobacco and Menthol," that JUUL's mission is to "make the cigarette obsolete," and that JUUL is "the only major vapor company not owned by or invested in by a cigarette manufacturer," among other statements. The Press Release is available here:

https://www.juullabs.com/juul-labs-statement-on-fda-marketing-authorizations/

11.     **MDL** means the multi-district litigation: *In Re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 3:19-md-02913-WHO (N.D. Cal.)

## REQUESTS FOR ADMISSION

RFA No. 1: Admit that JLI has made changes to one or more JUUL-branded products since January 1, 2021.

Response:

RFA No. 2: Admit that JLI has conducted toxicology, aerosol, emissions, or pharmacology testing on JUUL products since January 1, 2021.

Response:

RFA No. 3: Admit that JLI has submitted one or more documents to the FDA since the date JLI last produced documents in the MDL.

Response:

RFA No. 4: Admit that JLI has received communications from the FDA regarding youth access or youth usage since January 1, 2021.

Response:

RFA No. 5: Admit that JLI has received adverse event reports or consumer complaints regarding JUUL products after January 1, 2021.

Response:

RFA No. 6: Admit that JLI has conducted internal analyses of youth usage of JUUL products post-January 1, 2021.

Response:


RFA No. 7: Admit that JLI has used marketing or promotional materials after January 1, 2021.

Response:


RFA No. 8: Admit that JLI's Board of Directors has received reports or presentations since January 1, 2021 concerning youth access, product safety, or FDA communications.

Response:


RFA No. 9: Admit that JLI has communicated with Altria after January 1, 2021 regarding product design, marketing, safety, or regulatory issues.

Response:


RFA No. 10: Admit that JLI has changed its warnings, packaging, labeling, and/or nicotine disclosures since January 1, 2021.

Response:


RFA No. 11: Admit that JLI has conducted quality control or manufacturing audits post January 1,2021.

Response:


RFA No. 12: Admit that JLI has made changes to its corporate governance, ownership, or organizational structure since January 1, 2021.

Response:


RFA No. 13: Admit that JLI has communicated with federal and/or state regulators and/or governmental agencies since January 1, 2021.

Response:

RFA No. 14: Admit that JLI has generated internal reports or studies regarding nicotine delivery or addiction potential of JUUL products after January 1, 2021.

Response:

RFA No. 15: Admit that JLI has implemented post-market surveillance programs since January 1, 2021.

Response:

RFA No. 16: Admit that JLI has collected data regarding product use, safety, or youth access after January 1, 2021.

Response:

RFA No. 17: Admit that JLI maintains communications or records reflecting post January 1, 2021 changes to product design, marketing, or regulatory submissions.

Response:

RFA No. 18: Admit that JLI had communications with Altria regarding its divestiture.

Response:

RFA No. 19: Admit that JLI continues to monitor youth usage trends of its products.

Response:

RFA No. 20: Admit that JLI has information responsive to these discovery requests that was not produced in the MDL.

Response:

RFA No. 21: Admit that JLI published the Press Release on or about July 17, 2025 on its corporate website.

Response:


RFA No. 22: Admit that, in the Press Release, You represented that as part of Your 2020 applications to FDA, You submitted "over 110 scientific studies" relating to JUUL products.

Response:


RFA No. 23: Admit that, in the Press Release, You represented that "more than two million Americans have switched completely away from combustible tobacco" using JUUL products.

Response:


RFA No. 24: Admit that, in the Press Release, You represented that JUUL Labs "markets responsibly and uses age-verification measures to ensure that our products are marketed to and used by adults."

Response:


RFA No. 25: Admit that, in the Press Release, You represented that "reported underage use of JUUL products has decreased by more than 98% since 2019."

Response:


RFA No. 26: Admit that, in the Press Release, You represented that underage use of all vapor products is at "the lowest point in more than a decade."

Response:


RFA No. 27: Admit that, in the Press Release, You represented that the JUUL2 platform incorporates "built-in access control capabilities to prevent underage use."

Response:

RFA No. 28: Admit that, in the Press Release, You represented that JUUL Labs has developed "a portfolio of adult-oriented flavors beyond Virginia Tobacco and Menthol."

Response:

RFA No. 29: Admit that, in the Press Release, You represented that JUUL Labs is "the only major vapor company not owned by or invested in by a cigarette manufacturer."

Response:

RFA No. 30: Admit that, before publishing the Press Release, JUUL Labs did not share the full underlying data sets supporting the "more than two million" and "more than 98%" figures with plaintiffs in the MDL.

Response:

RFA No. 31: Admit that JUUL Labs possesses documents and data sufficient to substantiate each of the numerical and factual claims identified in RFAs 22–30 that were not produced during discovery in the MDL.

Response:

RFA No. 32: Admit that if the numerical or factual claims identified in RFAs 22–30 are inaccurate or overstated, then the Press Release is misleading with respect to the public health impact and youth-use profile of JUUL products.

Response:

DATED: November 19, 2025                    Respectfully Submitted,

*/s/Jeffrey L. Haberman*
Jeffrey L. Haberman
Scott P. Schlesinger
Jonathan R. Gdanski
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33316
Tel: (954) 467-8800
jhaberman@schlesingerlaw.com
scott@schlesingerlaw.com
jonathan@schlesingerlawoffices.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on November 19, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on Counsel for Defendants via the Florida Courts e-Filing Portal in accordance with Fla. R. Jud. Admin. 2.516.

        By: */s/ Jeffrey L. Haberman*

           Jeffrey L. Haberman

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA**

BEN SHAPIRO, CRAIG SHAPIRO, and JULIE
SHAPIRO,

        Plaintiffs,

                                         Case No. CACE-19-010866

v.

JUUL LABS, INC., ALTRIA GROUP, INC.,
PHILIP MORRIS USA INC., ALTRIA CLIENT
SERVICES, ALTRIA GROUP DISTRIBUTION
COMPANY, ALTRIA ENTERPRISES LLC,
JAMES MONSEES, ADAM BOWEN,
NICHOLAS PRITZKER, HOYOUNG HUH,
RIAZ VALANI, MY VAPOR HUT, INC. d/b/a
1st WAVE VAPOR, and EDGAR F. DI PUGLIA,
IN HIS CAPACITY AS OWNER OF THE
SMOKE HOUSE SMOKE SHOP,

        Defendants.

_____/

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT JUUL LABS, INC.**

**COMES NOW** Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro, by and through

undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.350, hereby request that

Defendant JUUL LABS, INC. produce the following documents and things within their custody,

possession, or control, for inspection and copying, within thirty (30) days of service thereof.

**DOCUMENT REQUESTS**

**RFP 1:**
A copy of the federal corporate income tax returns filed on behalf of JUUL LABS, INC. for the
years 2015 through the present date. This request includes any corporate consolidation federal
income tax returns which included the income generated by JUUL LABS, INC. during those tax
years.

**RFP 2:**
A copy of the State of Florida corporate income tax returns filed on behalf of JUUL LABS, INC.

for the years 2015 through the present date. This request includes any corporate consolidation federal income tax returns which included the income generated by JUUL LABS, INC. during those tax years.

**RFP 3:**
A copy of the audited financial reports filed with the Florida Department of Insurance and/or the Florida Department of Financial Services on behalf of JUUL LABS, INC. for the years 2015 through the present date.

**RFP 4:**
A copy of the audited new worth statements prepared on behalf of JUUL LABS, INC. for the years 2015 through the present date.

**RFP 5:**
Copies of any and all income statements prepared on behalf of JUUL LABS, INC. for the years ended 2015 through the present date.

**RFP 6:**
Copies of any and all bank statements for checking accounts owned by or on behalf of JUUL LABS, INC. from 2015 through the present date.

**RFP 7:**
Copies of any and all bank statements for savings accounts owned by or on behalf of JUUL LABS, INC. from 2015 through the present date.

**RFP 8:**
Copies of any and all depository statements prepared on behalf of JUUL LABS, INC. for the years ended 2015 through the present date.

**RFP 9:**
Any and all financial statements prepared by or on behalf of JUUL LABS, INC. for the years ended 2015 through the present date (including, but not limited to, quarterly *income* statements, *cash flow* statements, *net worth* statements, real property statements, and personal property statements).

**RFP 10:**
Copies of Balance Sheets for the years ended 2015 through the present. These should include an entry for "Cash and Cash Equivalents" as well as one for "Stockholders Equity."

**RFP 11:**
Cash Flow Statements for the years ended 2015 through the present date.

**RFP 12:**
Details of any transactions, loans, and payments (including dividends) between each named JUUL LABS, INC., Altria Group, Inc., Philip Morris USA, Inc., Altria Client Services, Altria Group Distribution Company, Altria Enterprises LLC, James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, Riaz Valani, for the years ended 2015 through the present date.

**RFP 13:**

Copies of any and all Advertising Expenditures, Research and Development Expenditures, and Capital Expenditures for the years ended 2015 through the present date.

**RFP 14:**

Copies of any Lines of Credit or Credit Facilities extended or established by JUUL LABS, INC. for the years ended 2015 through the present date.

**RFP 15:**

Copies of any and all explanatory notes that accompany the above records (notes to consolidated financial settlements, etc.)

**RFP 16:**

Explanations of any and all cash management policies between the Defendant, JUUL LABS, INC.

**RFP 17:**

A copy of any polices of insurance in effect on between JUUL LABS, INC. insuring it for any claim for punitive damages which would be applicable to this case.

**RFP 18:**

A copy of any documents that would have been filed with the Florida Department of Insurance or the Florida Department of Financial Services showing the net worth of JUUL LABS, INC. for the years 2015 through the present date.

**RFP 19:**

A copy of any documents showing the amount of gross revenues generated by JUUL LABS, INC. for the 2015 to the present date.

**RFP 20:**

A copy of any projections of the income to be generated by JUUL LABS, INC. for the next 5 years.

**RFP 21:**

A copy of a list of current assets owned by JUUL LABS, INC.

**RFP 22:**

A copy of any guarantees of the indebtedness of JUUL LABS, INC.

**RFP 23:**

A copy of any documents showing the financial net worth of JUUL LABS, INC. filed with any state or governmental agency regulating them at any time from 2015 to the present date.

**RFP 24:**

A listing of the current amounts of money that are being held in reserve by JUUL LABS, INC. to cover claims that are either pending or anticipated at the present time.

**RFP 25:**
A listing of the present and recent ownership of real property and its value, owned by or on behalf of JUUL LABS, INC.

**RFP 26:**
A listing of any and all interests that JUUL LABS, INC. has in any and all business arrangements.

**RFP 27:**
Copies of expense sheets for the years ended 2015 through the present date.

**RFP 28:**
A list of any and all anticipated income projected by JUUL LABS, INC. for the next 5 years.

**RFP 29:**
Copies of any and all loan applications filed by, or on behalf of this JUUL LABS, INC. for the years ended 2015 through the present date.


DATED:  January 13, 2026                      Respectfully submitted,

                                              */s/ Jeffrey L. Haberman*
                                              Jeffrey L. Haberman
                                              Florida Bar No. 98522
                                              **SCHLESINGER LAW OFFICES, P.A.**
                                              1212 Southeast Third Avenue
                                              Fort Lauderdale, FL 33316
                                              Phone: (954) 467-8800
                                              Fax: (954) 320-9509
                                              Jhaberman@schlesingerlaw.com

                                              *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on January 13, 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on Counsel for Defendants via the Florida Courts e-Filing Portal in accordance with Fla. R. Jud. Admin. 2.516.

                         By: */s/ Jeffrey L. Haberman*
                              Jeffrey L. Haberman

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

| | |
|---|---|
| BEN SHAPIRO, CRAIG SHAPIRO, and JULIE SHAPIRO,<br><br>      Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., ALTRIA GROUP, INC., PHILIP MORRIS USA, INC., ALTRIA CLIENT SERVICES, ALTRIA GROUP DISTRIBUTION COMPANY, ALTRIA ENTERPRISES LLC, JAMES MONSEES, ADAM BOWEN, NICHOLAS PRITZKER, HOYOUNG HUH, RIAZ VALANI, MY VAPOR HUT, INC. d/b/a 1st WAVE VAPOR, and EDGAR F. DI PUGLIA, in his capacity as owner of THE SMOKE HOUSE SMOKE SHOP,<br><br>    Defendants. | CASE NO.: CACE-19-010866 |

## PLAINTIFFS' SECOND SET OF INTERROGATORIES TO DEFENDANT JUUL LABS, INC.

**COMES NOW** Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro, by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.340, hereby request that Defendant JUUL LABS, INC. answer the following interrogatories, within thirty (30) days of service thereof.

## PLAINTIFF'S SPECIAL INTERROGATORIES TO DEFENDANT, JUUL LABS, INC.

**Interrogatory 1:**
What is the name and address of each person or persons answering these Interrogatories; and, if applicable, the person's official position or relationship with the party to whom these Interrogatories are directed?

Response:

**Interrogatory 2:**
Please provide the name, address, and telephone number for this Defendant's accountant or other person with the most knowledge of this Defendant's current financial matters, assets, and/ or net worth. Also, give the name and address of the accountant or accountants who prepared this Defendant's federal income tax returns for the years ended 2015 through the present date.

Response:

**Interrogatory 3:**
Please identify each and every policy of insurance, which provides, or may provide insurance coverage for any of the claims for punitive damages alleged in Plaintiffs Amended Complaint.

Response:

**Interrogatory 4:**
Has any insurer, which provides or may provide coverage for any of the claims alleged in Plaintiff's Amended Complaint asserted that it does not provide coverage for punitive damages, or asserted that it is reserving the right to deny coverage for any claims of punitive damages? If so, please identify the insurer and state the particular reason identified by the insurer for denying any such coverage or reserving the right to deny any such coverage.

Response:

**Interrogatory 5:**
Please identify any and all loan applications filed by, or on behalf of this Defendant for the years ended 2015 through the present date, including the date of the application and the person or entity making the loan.

Response:

**Interrogatory 6:**
Please identify any and all income, and net income, received by this Defendant for the years ended 2015 through the present date. This identification should include the following:
    a. The amount of any such income and the year in which it was received;
    b. Each person who was involved in the calculation of such income;
    c. All documents that concern, relate or refer to all income received by this Defendant for the years ended 2015 through the present date.
    d. All documents used to calculate net profits

Response:

**Interrogatory 7:**
Please identify all income received by this Defendant for the years ended 2015 through the present date, which was paid for, or reimbursed by, the Federal Government of the United States and/ or any State or Local Government.

Response:

**Interrogatory 8:**
Please identify any and all documents that concern, relate, refer, or state the net worth of this Defendant for the years ended 2015 through the present date.

Response:

**Interrogatory 9:**
Please state the net worth of this Defendant for the years ended 2015 through the present date. The identification should include the year and the net worth of this Defendant.

Response:

**Interrogatory 10:**
What is this Defendant's present net worth, and if you cannot state an exact amount, please give your best judgment.

Response:

**Interrogatory 11:**
List all banks, savings and loan associations, credit unions or other financial institutions in which this Defendant presently maintains an account of any kind or had maintained an account for the years ended 2015 through the present date, giving in your answer the name and address of the institution; the account number of each account; the name in which the account is held or was held; the present balance in each account.

Response:

**Interrogatory 12:**
State the total annual value of all compensation paid to each of the three most highly compensated executives of your corporation for the years ended 2015 through the present date, including the value of salary, bonuses, stock options, benefits, pensions, and profit-sharing contributions, deferred compensation payments, balances and other pre-requisites of whatever description.

Response:

**Interrogatory 13:**
Please list all assets, including but not limited to real and personal property, with an individual value of $1,000 or more currently owned in whole or in part by this Defendant. If Defendant is a part owner of any such asset, please identify any co-owners by name and address and describe each person or entity's interest in the asset.

Response:

**Interrogatory 14:**

Please list all securities, negotiable instruments, stocks, bonds, mutual funds, tax shelters, annuities, mortgages, leases, promissory notes, security interests, or other investment vehicles currently owned in whole or in part by this Defendant. If this Defendant is a part owner of any such asset, please identify any co-owners by name and address and describe each person or entity's interest in the asset.

Response:

**Interrogatory 15:**
Please provide a list of all of this Defendant's liabilities, debts, and other obligations owed at the present time. As a part of your answer, please identify the name and address of each creditor; the amount of the debt owed, the date the debt was incurred, the consideration the Defendant received for the debt, and a description of the security that this Defendant gave to secure the debt.

Response:

**Interrogatory 16:**
Does this Defendant own any interest in any kind of patent, copyright, or any other form of intellectual property? If so, for each interest owned, please fully identify:
    a. The registry or identification number of the patent or copyright;
    b. A description of the item patented or copyrighted;
    c. The name and last known address of each person, firm, corporation, or other entity who shares any interest in the patent or copyright, and the amount or percentage of each interest; and
    d. The amount of income the Defendant received from the patent or copyright per year since 2015 to present.


Response:

**Interrogatory 17:**

Please identify all real property owned and/or leased by this Defendant, or any real property that this Defendant has an interest in at the present time, including the legal description and address of the property; its current fair market value; and its assessed value. For each piece of property owned jointly with another entity or person, the name, address, and telephone number of the other persons or entity, and describe whether the property is owned as a tenancy by the entirety, tenancy in common, or jointly with rights of survivorship.

    a. For each of the above listed tracts or parcels of real property, state whether there is any lien, encumbrance, or indebtedness against each tract or parcel, giving the name and address of the holder of such lien or indebtedness, the present principal balance outstanding and the terms of payment.

    b. For each and every tract or parcel of real property which you own, state the date on which each tract or parcel was acquired; the most recent assessed valuation placed upon

each tract or parcel by the appropriate taxing authority; the name and address of the person, firm or corporation who occupies each tract or parcel and the facts surrounding such occupancy, whether by lease, etc., including the terms.

Response:

**Interrogatory 18:**
Please identify any motor vehicles, trucks, trailers, airplanes, boats, trailers, mobile homes, recreational vehicles, motorcycles, off road vehicles, personal water crafts or any other type of vehicle or mode of transportation owned or leased by this Defendant. For each such vehicle, please identify its make, model, year, location, the name and address of its owner, and whether it is owned (including those that are financed) or leased.

Response:

**Interrogatory 19:**
List all promissory notes, mortgages, or bonds held by this Defendant, either individually or jointly with some other person, giving in your answer the nature of each obligation and the principal balance owing at the present time.

Response:

**Interrogatory 20:**
Does this Defendant intend to call any witness to testify at Trial as to the issue of punitive damages? If so, state as to each such witness the name and address of the witness, the witness's qualifications if the witness is an expert witness, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and the summary of the grounds.

Response:

**Interrogatory 21:**
Does this Defendant intend to introduce any exhibits at trial regarding the punitive damage claim in this matter? If you answers is "YES", please identify the exhibit, describe the information portrayed in the exhibit, and identify any and all documents, records or other information which serves as a basis for the information contained in the exhibit.

Response:

**Interrogatory 22:**
State the amount of cash this Defendant presently has in its possession or subject to its control and sate the location of such cash, whether any portion of it is in the currency of any country other than the United States (and if so, state the amount) and if any of it is in the possession of any other person, state the name and address of such person or persons.

Response:

**Interrogatory 23:**
Is this Defendant the beneficiary, either directly or indirectly, of any trusts or endowments, and, if so, please describe in detail the name and address of the trust or endowments, the name of the trustee, and a description of the benefits you receive or will receive in the future.

Response:

**Interrogatory 24:**
How much income did this Defendant report for income tax purposes to the Internal Revenue Service for the years ended 2015 through the present date.

Response:


DATED: January 13, 2026                    Respectfully Submitted,

                                                  */s/Jeffrey L. Haberman*
                                                  Jeffrey L. Haberman
                                                  Scott P. Schlesinger
                                                  Jonathan R. Gdanski
                                                  **SCHLESINGER LAW OFFICES, P.A.**
                                                  1212 SE Third Avenue
                                                  Fort Lauderdale, FL 33316
                                                  Tel: (954) 467-8800
                                                  jhaberman@schlesingerlaw.com
                                                  scott@schlesingerlaw.com
                                                  jonathan@schlesingerlawoffices.com

                                                  *Attorneys for Plaintiffs*


**<u>CERTIFICATE OF SERVICE</u>**

    **I HEREBY CERTIFY** that on January 14, 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on Counsel for Defendants via the Florida Courts e-Filing Portal in accordance with Fla. R. Jud. Admin. 2.516.


                                        By: */s/ Jeffrey L. Haberman*

                                              Jeffrey L. Haberman