# EXHIBIT A

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

This Document Relates to:

ALL ACTIONS

Case No. 19-md-02913-WHO

**CASE MANAGEMENT ORDER NO. 17**

HONORABLE JUDGE WILLIAM H. ORRICK

### CASE MANAGEMENT ORDER NO. 17
**(Case Management Order For Any Ongoing Litigation Against Settling Defendants)**

This Case Management Order ("CMO") applies to:

(i)    all individuals, government entities, and tribal entities alleging claim(s) of any nature against Juul Labs, Inc. ("JLI"), Adam Bowen, James Monsees, Nicholas Pritzker, Riaz Valani, Hoyoung Huh, and/or any party listed on Exhibit B to the JLI Settlement Implementation Order (CMO No. 16) (hereinafter "Settling Defendants") who have elected not to participate in the Settlement Programs as outlined in the Settlement Agreements entered between Plaintiffs' Lead Counsel and JLI on December 6, 2022 (hereinafter "Litigating Plaintiffs," "Litigating Personal Injury Plaintiffs," "Litigating Economic Loss Plaintiffs," "Litigating Government Entity Plaintiffs," "Litigating Tribal Plaintiffs," or "Litigating Government Entity and Tribal Plaintiffs"); and

(ii)    all individuals, government entities, and tribal entities alleging claim(s) of any nature against Settling Defendants that are newly filed in or removed to this MDL on or after the dates outlined in the Settlement Implementation Order (CMO No. 16) (hereinafter "New Plaintiffs," "New Personal Injury Plaintiffs," "New Economic Loss Plaintiffs," "New Government Entity Plaintiffs," "New Tribal Plaintiffs," or "New Government Entity and Tribal Plaintiffs") (collectively, the "Parties").

Consistent with the Court's inherent authority to manage these judicial proceedings, and in light of the settlements entered after years of litigation in this MDL, the Court finds it appropriate at this time to exercise its discretion to enter this CMO in order to efficiently manage any cases against Settling Defendants by Litigating Plaintiffs and New Plaintiffs, while separately managing the litigation against the remaining defendants that are not subject to settlement agreements and/or a related stay.

This CMO requires all Litigating Plaintiffs and New Plaintiffs to produce certain specified information regarding their claim(s) and provides for discovery on statutes of limitations, other time-based defenses, product identification, alleged injury, and causation issues and related dispositive motion practice, prior to any further supplemental discovery.  Litigating Plaintiffs and New Plaintiffs who represent themselves *pro se* shall be bound by the requirements of this CMO and shall fully comply with all obligations required of Counsel by this CMO, unless otherwise stated.

## I.     Background and Status of Proceedings

1.     On October 2, 2019, the United States Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2913 to centralize cases against Settling Defendants concerning the development, manufacture, labeling, and marketing of JUUL products, and the alleged risks posed by use of JUUL products.  Over 5,770 cases have been filed in or removed to this MDL.

2.     During the course of these MDL proceedings, the Court has exercised its discretion and inherent authority to establish discovery procedures. Fed. R. Civ. P. 1; Fed. R. Civ. P. 16(c).

3.     District courts have inherent powers to manage their cases, particularly with respect to "massive litigation." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013) (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009)) ("district judges 'must have authority to manage their dockets, especially during [a] massive litigation'"); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it"); *F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citation omitted) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.").  The district court's power extends to, for example, "controlling and

1    scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29

2    through 37," "adopting special procedures for managing potentially difficult or protracted actions that

3    may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and

4    "facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P.

5    16(c)(2)(F), (L) & (P).

6        4.    As the Ninth Circuit has recognized, "multidistrict litigation is a special breed of complex

7    litigation where the whole is bigger than the sum of its parts [and] [t]he district court needs to have broad

8    discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line."

9    *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) ("*In re PPA*"); *see*

10    *also In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017)

11    (citation omitted) ("[M]ultidistrict litigation 'presents a special situation, in which the district judge must

12    be given wide latitude with regard to case management in order to effectively achieve the goals set forth

13    by the legislation that created the Judicial Panel on Multidistrict Litigation.'  This wide latitude applies,

14    in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders");

15    *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d at 246 (quoting *In re PPA*, 460 F.3d at 1229)

16    ("'[A]dministering cases in multidistrict litigation is different from administering cases on a routine

17    docket.'").  This is particularly true with respect to managing discovery and taking actions designed to

18    move the cases "in a diligent fashion toward resolution by motion, settlement, or trial."  *In re PPA*, 460

19    F.3d at 1232.

20        5.    Case Management Orders that "streamline litigation in complex cases" have been

21    "routinely used by courts to manage mass tort cases." *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741,

22    743 (E.D. La. 2008) (quotation marks and citations omitted).  Appellate courts, including the Ninth

23    Circuit, have regularly upheld their use in MDL cases.  *See, e.g.*, *In re PPA*, 460 F.3d at 1232 (noting

24    "[c]ase management orders are the engine that drives disposition on the merits" and finding no abuse of

25    discretion in MDL court's dismissal of claims for failure to comply with discovery and product

26    identification case management orders); *United States v. Graf*, 610 F.3d 1148, 1169 (9th Cir. 2010) (citing

27    *United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008) (en banc)) ("A district court has broad

28

authority to enter pretrial case management orders to ensure that the trial proceeds efficiently."); *see also In re Avandia*, 687 F. App'x at 214 (affirming MDL court's dismissal for failure to comply with an order requiring future plaintiffs to provide an expert report) (citation omitted); *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (affirming MDL court's dismissal for failure to comply with discovery order and noting, "District courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency.") (citation omitted); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (such "orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation. In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16.").

6.     The broad discretion afforded to the district court enables it to enter rigorous case management orders after substantial discovery has taken place in a mature mass tort or multidistrict litigation when a defendant has taken steps to settle a significant portion of the claims pending against it. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011) (noting such orders authorized by district judge's "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16"). Other MDL courts have exercised their discretion and inherent authority to enter orders establishing certain discovery and other requirements for future cases filed against settling defendants in tort litigation. *See, e.g.*, *In re American Medical Systems, Inc. Pelvic Repair Systems Prods. Liab. Litig.*, MDL No. 2325 (S.D.W. Va. June 7, 2017) (establishing requirements for future claims against the AMS Defendant due to "recent settlement developments" of thousands of claims after more than three years of litigation); *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, No. CV 18-MD-2848, 2022 WL 952179, at *2-3 (E.D. Pa. Mar. 30, 2022) (quoting 28 U.S.C. § 1407(a)) ("A *Lone Pine* management order is the only viable way that 'will promote the just and efficient conduct of [these] actions'" after three years of discovery and plaintiffs' experts' causation opinions "fall[ing] short in all bellwether cases"); *In re Testosterone Replacement Therapy Products Liab. Litig.*, MDL No. 2545 (N.D. Ill. June 11, 2018) (finding it appropriate to enter an order to manage remaining litigation in light of the parties' settlement agreements entered after over four years of litigation).

7.     The Court is aware that, without admission of fault or liability, JLI has entered into Settlement Agreements with the Class Action, Personal Injury, Government Entity, and Tribal Plaintiffs to resolve the vast majority of the cases in this MDL.  Proceedings in this MDL have not been stayed against the Altria Defendants, and bellwether trials are scheduled involving the Altria Defendants.

8.     The Court finds it particularly appropriate to enter this Case Management Order so the Court can efficiently manage an MDL that is proceeding on a settlement front.  The discovery obligations imposed by this Case Management Order are consistent with the obligations imposed in similar orders by other MDL courts.  *See, e.g.*, Case Management Order No. 15, *In re Sorin 3T Heater-Cooler System,* No. 1:18-md-02816-CCC-SES (M.D. Pa. April 16, 2019), ECF No. 250 (in settlement context, requiring non-settling plaintiffs to produce certain specific information regarding their claims, including general and case-specific causation expert reports); Case Management Order No. 17 at 1, *In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, No. 1:13-md-02428-DPW (D. Mass Jan. 26, 2017), ECF No. 1825 (where parties reported a "private global settlement that could resolve the vast majority of the thousands of products liability cases filed" against defendants, requiring parties who did not opt-in to the settlement to provide an affidavit identifying documents or data to support their claims and an expert affidavit opining as to causation); Case Management Order No. 78, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW (S.D. Ill. May 29, 2014), *available at* http://www.ilsd.uscourts.gov/documents/mdl2385/CMO78.pdf (in settlement context, requiring non-settling plaintiffs to produce applicable medical and pharmacy records, an affidavit attesting to the collection of these records, and causation expert reports); *see also* Pretrial Order No. 28, *In re Vioxx Prods. Liab. Litig.*, No. 2:05-md-01657-EEF-DEK (E.D. La. Nov. 9, 2007), ECF No. 12962, (*available at* http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto28.mdl.pdf) and Pretrial Order No. 29, *In re Vioxx Prods. Liab. Litig.,* No. 2:05-md-01657-EEF-DEK (E.D. La. Nov. 9, 2007), ECF No. 12963, (available at http://www.laed.uscourts.gov/sites/default/files/vioxx/orders/vioxx.pto29.mdl.pdf) (setting forth detailed discovery requirements for plaintiffs not participating in an established "Resolution Program"); Case Management Order No. 126, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-CV-01748 (N.D. Ill. June 11, 2018), ECF No. 2716 (in settlement context, requiring parties who

elected not to participate in the settlement program to provide applicable medical and pharmacy records, an affidavit attesting to the collection of these records, and causation and liability expert reports).

9.    For the foregoing reasons, and other good cause appearing therefor, it is Ordered as follows:

## II.    Stay of Proceedings Involving the Parties

10.    Except for the requirements and procedures described in this Order, as stated in CMO No. 16, all proceedings involving Litigating Plaintiffs and New Plaintiffs are hereby stayed as to Settling Defendants.  This stay shall remain in effect until it is lifted.

## III.    Preservation Notice Requirements

### A.    Preservation Notice Requirements for Litigating Plaintiffs

11.    Within ninety (90) days after the date Litigating Plaintiff elects not to settle his/her claims, Counsel for Litigating Plaintiffs subject to this Order shall notify the following individuals or entities, by registered mail, that they may have records relevant to the Litigating Plaintiff's claim in this MDL Proceeding ("Claim") and that any records relating to the Litigating Plaintiff must be preserved pursuant to the Order re: Discovery of Electronically Stored Information entered by this Court on December 17, 2019 (ECF No. 323) (the "Notice"), pending collection by the Litigating Plaintiff:

a.    If Litigating Plaintiff asserts claims for personal injury, all Physicians and/or other Healthcare Providers, including Mental Health Treatment Providers, who, for any reason, treated the Litigating Plaintiff at any time during the seven (7) years prior to the date of the Litigating Plaintiff's alleged injury through the present;

b.    If Litigating Plaintiff asserts claims for personal injury, all Pharmacies that dispensed any medications to the Litigating Plaintiff at any time during the seven (7) years prior to the date of the Litigating Plaintiff's alleged injury through the present;

c.    If Litigating Plaintiff is seeking lost wages, all of his or her employers for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which Litigating Plaintiff is seeking lost wages;

     d.    If Litigating Plaintiff is seeking lost wages, all of his or her tax preparers or advisors, if any, for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which Litigating Plaintiff is seeking lost wages;

     e.    If Litigating Plaintiff is seeking damages for economic loss, all credit card companies and banking institutions which Litigating Plaintiff utilized to purchase JUUL products for the period from June 1, 2015 to the present;

     f.    If Litigating Plaintiff is a Government Entity, all Contractors that performed repair, clean up, or other services in connection with alleged property damages; and

     g.    If Litigating Plaintiff is a Government Entity, all current and former students from June 1, 2015 to present who may serve as witnesses.

12.    A copy of this Court's December 17, 2019 Order re: Discovery of Electronically Stored Information (ECF No. 323) shall be attached to the Notice and all copies of the Notice shall be preserved by Counsel for the Litigating Plaintiff for so long as the Claim remains pending in this Proceeding.

13.    By no later than one hundred and five (105) days after the date Litigating Plaintiff elects not to settle his/her claims, Counsel for the Litigating Plaintiff shall serve a statement listing the names and addresses of all individuals or entities to which Notices were sent, along with copies of the Notices and a signed certification that the Notices were sent as required by this Order. Service by the Litigating Plaintiffs shall be made via email to Counsel for Settling Defendants at the following email address: JUUL_PlaintiffDiscovery@kirkland.com. Service by the Litigating Plaintiffs shall be made to Counsel for Altria at the following email address: JUULDiscovery@arnoldporter.com.

14.    Litigating Plaintiffs who fail to fully comply with the requirements of this Order shall be given notice by email or fax from Settling Defendants' Counsel and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period"). No other extensions will be granted, except for good cause shown.

15.    Litigating Plaintiffs may not seek to introduce into evidence at trial any document or information from the Litigating Plaintiff's pharmacy, physician, or other healthcare provider asserting that use of JUUL products caused any alleged injury/injuries if a Notice was not sent to the Litigating

Plaintiff's pharmacy, physician or other healthcare provider as required by this Order, except upon leave of court for good cause shown.  A Litigating Plaintiff who fails to comply with this Order may also be subject to other sanctions or orders.

### B.    Preservation Notice Requirements for New Plaintiffs

16.    Within ninety (90) days of their cases being newly filed in or removed to this MDL, Counsel for New Plaintiffs subject to this Order shall notify the following individuals or entities, by registered mail, that they may have records relevant to the New Plaintiff's Claim and that any records relating to the New Plaintiff must be preserved pursuant to the Order re: Discovery of Electronically Stored Information entered by this Court on December 17, 2019  (ECF No. 323) (the "Notice"), pending collection by the New Plaintiff:

a.    If New Plaintiff asserts claims for personal injury, all Physicians and/or other Healthcare Providers, including Mental Health Treatment Providers, who, for any reason, treated the New Plaintiff at any time during the seven (7) years prior to the date of the New Plaintiff's alleged injury through the present;

b.    If New Plaintiff asserts claims for personal injury, all Pharmacies that dispensed any medications to the New Plaintiff at any time during the seven (7) years prior to the date of the New Plaintiff's alleged injury through the present;

c.    If New Plaintiff is seeking lost wages, all of his or her employers for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which the New Plaintiff is seeking lost wages;

d.    If New Plaintiff is seeking lost wages, all of his or her tax preparers or advisors, if any, for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which the New Plaintiff is seeking lost wages;

e.    If New Plaintiff is seeking damages for economic loss, all credit card companies and banking institutions which New Plaintiff utilized to purchase JUUL products for the period from June 1, 2015 to the present;

      f.      If New Plaintiff is a Government Entity, all Contractors that performed repair, clean up, or other services in connection with alleged property damages; and

      g.      If New Plaintiff is a Government Entity, all current and former students from June 1, 2015 to present who may serve as witnesses.

17.     A copy of this Court's December 17, 2019 Order re: Discovery of Electronically Stored Information (ECF No. 323) shall be attached to the Notice and all copies of the Notice shall be preserved by Counsel for the New Plaintiff for so long as the Claim remains pending in this Proceeding.

18.     By no later than one hundred and five (105) days after cases being newly filed in or removed to this MDL, Counsel for the New Plaintiff shall serve a statement listing the names and addresses of all individuals or entities to which Notices were sent, along with copies of the Notices and a signed certification that the Notices were sent as required by this Order.  Service by the New Plaintiffs shall be made via email to Counsel for Settling Defendants at the following email address: JUUL_PlaintiffDiscovery@kirkland.com.  Service by the New Plaintiffs shall be made to Counsel for Altria at the following email address: JUULDiscovery@arnoldporter.com.

19.     New Plaintiffs who fail to fully comply with the requirements of this Order shall be given notice by email or fax from Settling Defendants' Counsel and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period").  No other extensions will be granted, except for good cause shown.

20.     New Plaintiffs may not seek to introduce into evidence at trial any document or information from the New Plaintiff's pharmacy, physician, or other healthcare provider asserting that use of JUUL products caused any alleged injury/injuries if a Notice was not sent to the New Plaintiff's pharmacy, physician or other healthcare provider as required by this Order, except upon leave of court for good cause shown.  A New Plaintiff who fails to comply with this Order may also be subject to other sanctions or orders.

**IV.** **Litigating and New Plaintiffs' Requirements to Produce Certain Specified Information Regarding their Claims**

    **A.** **Litigating Personal Injury Plaintiffs' Requirements**

        **(a)** **Litigating Personal Injury Plaintiffs' Production Requirements**

21. All Litigating Personal Injury Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

    (1) All disclosures required by Fed. R. Civ. P. 26(a).

    (2) <u>Plaintiff Fact Sheets.</u>  If not already completed, executed, and served, each Litigating Personal Injury Plaintiff must comply with all requirements of this Court's March 27, 2020 CMO No. 8 Regarding Plaintiffs' and Defendants' Fact Sheets and produce to all Defendants, including Altria, the items described in Section IV.A.a.21.

    (3) <u>Records Relating to Alleged Exposure to JUUL Products.</u>  All records evidencing any purchases or use of JUUL products and the dates of such purchases or use of JUUL products, including emails, invoices, receipts, bank, credit card or debit card statements, bills, cancelled checks, or other proofs of purchase, and any social media related to Litigating Personal Injury Plaintiff's use of JUUL products.

    (4) <u>Medical Records Relating to Alleged Injury.</u>  All records that relate to the Litigating Personal Injury Plaintiff's alleged JUUL product-related injury/injuries, including medical records, pharmacy records, and mental health treatment records, if applicable.

(5)　　Medical Records Relating to Medical Conditions.　All records relating to the Litigating Personal Injury Plaintiff from health care providers for the period from seven (7) years prior to the date of the Litigating Personal Injury Plaintiff's alleged injury to the present.　If any death is claimed, a statement to that effect along with a copy of the death certificate and autopsy report, if one was performed.

(6)　　Record Collection Production.　The Litigating Personal Injury Plaintiff and his/her Counsel shall affirmatively collect and produce such records from all available sources in the Litigating Personal Injury Plaintiff's possession, custody, or control, which includes but is not limited to any relevant records that can be collected from the Litigating Personal Injury Plaintiff's medical facilities, health care providers, and/or pharmacies that treated and/or dispensed drugs to, or for, the Litigating Personal Injury Plaintiff.　A Litigating Personal Injury Plaintiff and his/her Counsel shall not be in compliance with this CMO by only producing authorizations to allow the Settling Defendants to collect such records.

(7)　　Affidavit.　An affidavit signed by the Litigating Personal Injury Plaintiff's Counsel attesting (i) that the Litigating Personal Injury Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol; (ii) that all available records described in Sections IV.A.a.21.3 – IV.A.a.21.6 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.　If any of the documents or records described in Sections IV.A.a.21.3 – IV.A.a.21.6 do not exist or exist but cannot be obtained, the signed affidavit by the Litigating Personal Injury Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist or cannot be obtained, and shall provide a "No Records Statement" from each records

CASE MANAGEMENT ORDER NO. 17

custodian or proof of return to sender from the United States Postal Service if the last known address of the medical provider is no longer valid.

**(b)** **Litigating Personal Injury Plaintiffs' Expert Reports.**

22.    All Litigating Personal Injury Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)    A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)    A Rule 26(a)(2) case-specific expert report concerning the existence and causation of the Litigating Personal Injury Plaintiff's alleged injury/injuries. The case-specific expert report should include, at a minimum, an as-precise-as-possible identification of all drug use by Litigating Personal Injury Plaintiff, whether legal or illegal, including the Plaintiff's JUUL usage, other ENDS product usage and/or combustible cigarette usage, if any, and the nature and timing of the Plaintiff's alleged injury, along with the details of any medical exams, testing, diagnosis or treatment relied upon to support any claimed injury; a sworn statement by a competent medical expert that the expert believes to the appropriate degree of medical certainty that Plaintiff has suffered the alleged injury the Plaintiff claims and that Plaintiff's use of JUUL products substantially contributed to the Plaintiff's alleged injury, along with a detailed description of all facts, medical and scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of medical records relied upon in forming the expert's opinion.  The reports required by Sections IV.A.b.22.1 and IV.A.b.22.2 may be combined in a single report by a single expert.

(3)     A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(4)     A Rule 26(a)(2) expert report describing all of the Litigating Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

23.     No reference to the causation expert reports required by this Section IV.A.b.22 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case.  At trial, Litigating Personal Injury Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with.  If a Litigating Personal Injury Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case, including deadlines for additional case-specific discovery and dispositive motion practice regarding the Litigating Personal Injury Plaintiff's claims.

**B.      New Personal Injury Plaintiffs' Requirements**

**(a)      New Personal Injury Plaintiffs' Production Requirements**

24.     All New Personal Injury Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

(1)     All disclosures required by Fed. R. Civ. P. 26(a).

(2)     <u>Plaintiff Fact Sheets.</u>  Each New Personal Injury Plaintiff must comply with all requirements of this Court's March 27, 2020 CMO No. 8 Regarding Plaintiffs' and Defendants' Fact Sheets and produce to all Defendants, including Altria, the items described in Section IV.B.a.24.

(3)    <u>Records Relating to Alleged Exposure to JUUL Products:</u>   All records evidencing any purchases or use of JUUL products and the date of such purchases or use of JUUL products, including emails, invoices, receipts, bank, credit card or debit card statements, bills, cancelled checks, or other proof of purchase, and any social media related to the New Personal Injury Plaintiff's use of JUUL products.

(4)    <u>Medical Records Relating to Alleged Injury:</u>   All records that relate to the New Personal Injury Plaintiff's alleged JUUL product-related injury/injuries, including medical records, pharmacy records, and mental health treatment records, if applicable.

(5)    <u>Medical Records Relating to Medical Condition:</u>   All records relating to the New Personal Injury Plaintiff from health care providers for the period from seven (7) years prior to the date of the New Personal Injury Plaintiff's alleged injury to the present.  If any death is claimed, a statement to that effect along with a copy of the death certificate and autopsy report, if one was performed.

(6)    <u>Record Collection Production.</u>   The New Personal Injury Plaintiff and his/her Counsel shall affirmatively collect and produce such records from all available sources in the New Personal Injury Plaintiff's possession, custody, or control, which includes but is not limited to any relevant records that can be collected from the New Personal Injury Plaintiff's medical facilities, health care providers, and/or pharmacies that treated and/or dispensed drugs to, or for, the New Personal Injury Plaintiff.  A New Personal Injury Plaintiff and his/her Counsel shall not be in compliance with this CMO by only producing authorizations to allow the Settling Defendants to collect such records.

(7)    <u>Affidavit.</u>   An affidavit signed by the New Personal Injury Plaintiff's

Counsel attesting (i) that the New Personal Injury Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol; (ii) that all available records described in Sections IV.B.a.24.3 – IV.B.a.24.6 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.  If any of the documents or records described in Sections IV.B.a.24.3 – IV.B.a.24.6 do not exist, or exist but cannot be obtained, the signed affidavit by the New Personal Injury Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist or cannot be obtained, and shall provide a "No Records Statement" from each records custodian or proof of return to sender from the United States Postal Service if the last known address of the medical provider is no longer valid.

**(b)     New Personal Injury Plaintiffs' Expert Reports**

25.     All New Personal Injury Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)     A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)     A Rule 26(a)(2) case-specific expert report concerning the causation of the New Personal Injury Plaintiff's alleged injury/injuries.  The case-specific expert report should include, at a minimum, an as-precise-as-possible identification of all drug use by New Personal Injury Plaintiff, whether legal or illegal, including the Plaintiff's JUUL usage, other ENDS product usage and/or combustible cigarette usage, if any, and the nature and timing of the Plaintiff's alleged injury, along with the details of any medical exams,

testing, diagnosis or treatment relied upon to support any claimed injury; a sworn statement by a competent medical expert that the expert believes to the appropriate degree of medical certainty that Plaintiff has suffered the alleged injury the Plaintiff claims and that Plaintiff's use of JUUL products substantially contributed to the Plaintiff's alleged injury, along with a detailed description of all facts, medical and scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of medical records relied upon in forming the expert's opinion. The reports required by Sections IV.B.b.25.1 and IV.B.b.25.2 may be combined in a single report by a single expert.

(3)     A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(4)     A Rule 26(a)(2) expert report describing all of the New Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

26.     No reference to the causation expert reports required by this Section IV.B.b.25 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case. At trial, New Personal Injury Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with. If a New Personal Injury Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case.

C.    **Litigating Economic Loss Plaintiffs' Requirements**

      (a)    **Litigating Economic Loss Plaintiffs' Production Requirements**

27.    All Litigating Economic Loss Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

      (1)    All disclosures required by Fed. R. Civ. P. 26(a).

      (2)    <u>Plaintiff Fact Sheets.</u>  If not already completed, executed, and served, each Litigating Economic Loss Plaintiff must comply with all requirements of this Court's March 10, 2021 CMO No. 14 Regarding Non-Bellwether Class Representatives Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described in Section IV.C.a.27.

      (3)    <u>Proof of Purchase.</u>  Each Litigating Economic Loss Plaintiff must produce proof of purchase for all JUUL products purchased after June 1, 2015, including emails, invoices, receipts, bank, credit card or debit card statements, bills, cancelled checks, or other proofs of purchase.

      (4)    <u>Affidavit.</u>  An affidavit signed by the Litigating Economic Loss Plaintiff and his/her Counsel attesting (i) that the Litigating Economic Loss Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol; (ii) that all records described in Section IV.C.a.27.3 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.  If any of the documents or records described in Section IV.C.a.27.3 do not exist, the signed affidavit by the Litigating Economic Loss Plaintiff and the Litigating Economic Loss Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist, and shall provide a "No Records Statement" from each records custodian.

      (b)    **Litigating Economic Loss Plaintiffs' Expert Reports**

28.     All Litigating Economic Loss Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)     A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)     A Rule 26(a)(2) case-specific expert report concerning the causation of the Litigating Economic Loss Plaintiff's alleged injury/injuries and alternative causation. The case-specific expert report should include, at a minimum, an as-precise-as-possible identification of all drug use by Litigating Economic Loss Plaintiff, whether legal or illegal, including the Plaintiff's JUUL usage, other ENDS product usage and/or combustible cigarette usage, if any, and the nature and timing of the Plaintiff's alleged injury, along with the details of any JUUL product purchases to support any claimed injury; a sworn statement by an economic expert that the expert believes that Plaintiff has suffered the alleged injury the Plaintiff claims and that Plaintiff's purchase of JUUL products caused the Plaintiff's alleged injury, along with a detailed description of all facts, scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of materials relied upon in forming the expert's opinion. The reports required by Sections IV.C.b.28.1 and IV.C.b.28.2 may be combined in a single report by a single expert.

(3)     A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

CASE MANAGEMENT ORDER NO. 17

(4) A Rule 26(a)(2) expert report describing all of the Litigating Economic Loss Plaintiff's alleged damages, including a complete set of materials relied upon in forming the expert's opinion.

29.   No reference to the causation expert reports required by this Section IV.C.b.28 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case.  At trial, Litigating Economic Loss Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with.  If a Litigating Economic Loss Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case, including deadlines for additional case-specific discovery and dispositive motion practice regarding the Litigating Economic Loss Plaintiff's claims.

**D.     New Economic Loss Plaintiffs' Requirements**

**(a)     New Economic Loss Plaintiffs' Production Requirements**

30.   All New Economic Loss Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

(1) All disclosures required by Fed. R. Civ. P. 26(a).

(2) <u>Plaintiff Fact Sheets.</u>  Each New Economic Loss Plaintiff must comply with all requirements set forth in this Court's March 10, 2021 CMO No. 14 Regarding Non-Bellwether Class Representatives Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described in Section IV.D.a.30.

(3) <u>Proof of Purchase.</u>  Each New Economic Plaintiff must produce proof of purchase for all JUUL products purchased after June 1, 2015, including emails, invoices, receipts, bank, credit card or debit card statements, bills, cancelled checks, or other proofs of purchase.

(4)  <u>Affidavit.</u>  An affidavit signed by the New Economic Loss Plaintiff and his/her Counsel attesting (i) that the New Economic Loss Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol; (ii) that all records described in Section IV.D.a.30.3 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.  If any of the documents or records described in Section IV.D.a.30.3 do not exist, the signed affidavit by the New Economic Loss Plaintiff and the New Economic Loss Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist, and shall provide a "No Records Statement" from each records custodian.

**(b)  New Economic Loss Plaintiffs' Expert Reports**

31.  All New Economic Loss Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)  A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)  A Rule 26(a)(2) case-specific expert report concerning the causation of the New Economic Loss Plaintiff's alleged injury/injuries and alternative causation.  The case-specific expert report should include, at a minimum, an as-precise-as-possible identification of all drug use by New Economic Loss Plaintiff, whether legal or illegal, including the Plaintiff's JUUL usage, other ENDS product usage and/or combustible cigarette usage, if any, and the nature and timing of the Plaintiff's alleged injury, along with the details of any JUUL product purchases to support any claimed injury; a

sworn statement by an economic expert that Plaintiff has suffered the alleged injury the Plaintiff claims and that Plaintiff's purchase of JUUL products caused the Plaintiff's alleged injury, along with a detailed description of all facts, scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of records relied upon in forming the expert's opinion. The reports required by Sections IV.D.b.31.1 and IV.D.b.31.2 may be combined in a single report by a single expert.

(3)     A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(4)     A Rule 26(a)(2) expert report describing all of the New Economic Loss Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

32.     No reference to the causation expert reports required by this Section IV.D.b.31 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case. At trial, New Economic Loss Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with. If a New Economic Loss Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case.

**E.     Litigating Government Entity and Tribal Plaintiffs' Requirements**

**(a)     Litigating Government Entity and Tribal Plaintiffs' Production Requirements**

33.     All Litigating Government Entity and Tribal Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

(1)     All disclosures required by Fed. R. Civ. P. 26(a).

(2)     <u>Plaintiffs Fact Sheets.</u>  If not already completed, executed, and served, each Litigating Government Entity Plaintiff must comply with all requirements of this Court's October 22, 2020 CMO No. 13 Regarding Government Entity and School District Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described in Section IV.E.a.33. If not already completed, executed, and served, each Litigating Tribal Plaintiff must comply with all requirements of this Court's May 25, 2021 CMO No. 15 Regarding Native American Tribal Plaintiff Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described in Section IV.E.a.33.

(3)     Each Litigating Government Entity and Tribal Plaintiff must produce all documents responsive to the document requests identified in the Plaintiff Fact Sheets required by CMO Nos. 13 and 15, including reports, surveys, analyses, studies, or other documents related to any vaping and e-cigarette-related services and programs, policies and reports relating to e-cigarettes, tobacco, alcohol, drugs, and other illicit substances.

(4)     Each Litigating Government Entity and Tribal Plaintiff must produce proof of actual damages, including but not limited to (i) documents and communications concerning harm, monetary or otherwise, Plaintiff claims as a result of the Settling Defendants' alleged conduct; (ii) documents and communications sufficient to show how much money Plaintiff spent on issues related to JUUL product use through the present; (iii) documents and communications sufficient to show how much money Plaintiff received from any source to address ENDS product use, tobacco product use, other inhaled product use, illegal drug use or illicit use of legal drugs through the present; (iv) documents and communications sufficient to show how much

money Plaintiff spent on issues related to ENDS product use, tobacco product use, other inhaled product use, illegal drug use or illicit use of legal drugs through the present; and (v) documents and communications sufficient to show Plaintiff's efforts to address issues related to ENDS product use, tobacco product use, other inhaled product use, illegal drug use or illicit use of legal drugs.

(5)    Abatement.  Each Litigating Government Entity and Tribal Plaintiff must specifically identify each of the categories of its claimed abatement costs and produce all documents supporting the basis for same.

(6)    Affidavit.  An affidavit signed by the Litigating Government Entity or Tribal Plaintiff and its Counsel attesting (i) that the Litigating Government Entity or Tribal Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol; (ii) that all records described in Sections IV.E.a.33.3 – IV.E.a.33.5 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.  If any of the documents or records described in Sections IV.E.a.33.3 – IV.E.a.33.5 do not exist, the signed affidavit by the Litigating Government Entity or Tribal Plaintiff and the Litigating Government Entity or Tribal Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist, and shall provide a "No Records Statement" from each records custodian.

**(b)    Litigating Government Entity and Tribal Plaintiffs' Expert Reports**

34.    All Litigating Government Entity and Tribal Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)     A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)     A Rule 26(a)(2) case-specific expert report concerning the causation of the Litigating Government Entity or Tribal Plaintiff's alleged injury/injuries and alternative causation. The case-specific expert report should include, at a minimum, a precise identification of the nature and timing of the Litigating Government Entity or Tribal Plaintiff's alleged injury; a sworn statement by an expert that JUUL product use caused the Plaintiff's alleged injury, along with a detailed description of all facts, scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of materials relied upon in forming the expert's opinion. The reports required by Sections IV.E.b.34.1 and IV.E.b.34.2 may be combined in a single report by a single expert.

(3)     A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(4)     A Rule 26(a)(2) expert report on the basis for any abatement claims made by the Plaintiff, including a complete set of records relied upon in forming the expert's opinion.

(5)     A Rule 26(a)(2) expert report describing all of the Litigating Government Entity or Tribal Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

35.     No reference to the causation expert reports required by this Section IV.E.b.34 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case.  At trial, Litigating Government Entity and Tribal Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with.  If a Litigating Government Entity or Tribal Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case, including deadlines for additional case-specific discovery and dispositive motion practice regarding the Litigating Government Entity or Tribal Plaintiff's claims.

**F.     New Government Entity and Tribal Plaintiffs' Requirements**

**(a)     New Government Entity and Tribal Plaintiffs' Production Requirements**

36.     All New Government Entity and Tribal Plaintiffs shall serve the following documents and/or information upon Counsel for all Defendants, including Altria, within the timeframe provided in Section VI:

(1)     All disclosures required by Fed. R. Civ. P. 26(a).

(2)     <u>Plaintiffs Fact Sheets.</u>  If not already completed, executed, and served, each New Government Entity Plaintiff must comply with all requirements of this Court's October 22, 2020 CMO No. 13 Regarding Government Entity and School District Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described in Section IV.F.a.36.  If not already completed, executed, and served, each New Tribal Plaintiff must comply with all requirements of this Court's May 25, 2021 CMO No. 15 Regarding Native American Tribal Plaintiff Fact Sheet Implementation Order and produce to all Defendants, including Altria, the items described

in Section IV.F.a.36.

(3)     Each New Government Entity and Tribal Plaintiff must produce all documents responsive to the document requests identified in the Plaintiff Fact Sheets required by CMO Nos. 13 and 15, including reports, surveys, analyses, studies, or other documents related to any vaping and e-cigarette-related services and programs, policies and reports relating to e-cigarettes, tobacco, alcohol, drugs, and other illicit substances.

(4)     Each New Government Entity and Tribal Plaintiff must produce proof of actual damages, including but not limited to (i) documents and communications concerning harm, monetary or otherwise, Plaintiff claims as a result of the Settling Defendants' alleged conduct, (ii) documents and communications sufficient to show how much money the Plaintiff spent on issues related to JUUL product use through the present, (iii) documents and communications sufficient to show how much money the Plaintiff received from any source to address ENDS product use, tobacco product use, other inhaled product use, illegal drug use, or illicit use of legal drugs through the present, and (iv) documents and communications sufficient to show how much money the Plaintiff spent on issues related to ENDS product use, tobacco product use, other inhaled product use, illegal drug use or illicit use of legal drugs through the present.

(5)     Abatement.   Each New Government Entity and Tribal Plaintiff must specifically identify each of the categories of its claimed abatement costs and produce all documents supporting the basis for same.

(6)     Affidavit.   An affidavit signed by the New Government Entity or Tribal Plaintiff and its Counsel attesting (i) that the New Government Entity or Tribal Plaintiff has complied with all requirements of this Court's Order Regarding Plaintiffs' and Defendants' Fact Sheets and Service Protocol;

(ii) that all records described in Sections IV.F.a.36.3 – IV.F.a.36.5 have been collected; and (iii) that all records collected have been produced pursuant to this CMO.  If any of the documents or records described in Sections IV.F.a.36.3 – IV.F.a.36.5 do not exist, the signed affidavit by the New Government Entity or Tribal Plaintiff and the New Government Entity or Tribal Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist and shall provide a "No Records Statement" from each records custodian.

     **(b)**    **New Government Entity and Tribal Plaintiffs' Expert Reports**

37.    All New Government Entity and Tribal Plaintiffs shall serve, within the timeframe provided in Section VI, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

(1)    A Rule 26(a)(2) expert report on general causation concerning the alleged injury/injuries, to the extent the alleged injury/injuries were not adequately addressed in the general causation expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(2)    A Rule 26(a)(2) case-specific expert report concerning the causation of the New Government Entity or Tribal Plaintiff's alleged injury/injuries and alternative causation.  The case-specific expert report should include, at a minimum, a precise identification of the nature and timing of the New Government Entity or Tribal Plaintiff's alleged injury; a sworn statement by an expert that Plaintiff has suffered the alleged injury the Plaintiff claims and that JUUL product use caused the Plaintiff's alleged injury, along with a detailed description of all facts, scientific literature or other authorities relied upon by the expert to support such opinion; and a complete set of materials relied upon in forming the expert's opinion.  The reports required by Sections IV.F.b.37.1 and IV.F.b.37.2 may be combined in a single report

by a single expert.

(3)    A Rule 26(a)(2) expert report on the basis for liability concerning the Settling Defendants, to the extent the alleged basis for liability was not adequately addressed in the expert reports previously served in the MDL, and a complete set of records relied upon in forming the expert's opinion.

(4)    A Rule 26(a)(2) expert report on the basis for any abatement claims made by the Plaintiff, including a complete set of records relied upon in forming the expert's opinion.

(5)    A Rule 26(a)(2) expert report describing all of the New Government Entity or Tribal Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

38.    No reference to the causation expert reports required by this Section IV.F.b.37 shall be made at trial unless said expert(s) have had an opportunity to supplement such report(s) based on the subsequently developed record of the case.  At trial, New Government Entity or Tribal Plaintiffs may present additional evidence on specific causation including expert testimony not part of this disclosure provided the specific case management order was complied with.  If a New Government Entity or Tribal Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case.

**V.    Mediation**

39.    All Litigating and New Plaintiffs who have fulfilled the requirements set forth in Section IV must participate in mediation before the Parties' Settlement Master, Thomas Perrelli.  The costs for the mediation will be split equally between the respective Plaintiff and Defense.  Mediation must occur within ninety (90) days of the date that production and expert requirements have been fulfilled.  Mediation will proceed in accordance with Northern District of California Alternative Dispute Resolution Rules 6-7 ("Written Mediation Statements"), 6-9 ("Contact with Mediator Before the Mediation"), 6-10 ("Attendance at Session"), 6-11 ("Procedure at Mediation"), 6-12 ("Confidentiality"), and 6-13 ("Follow

Up"), and 6-14 ("Certification of Session").  All discovery not otherwise required by this Order is stayed until after the requirements outlined in this Section have been completed.

## VI.    Compliance

### A.    Deadline to Comply

40.    For each Litigating Plaintiff, the items required by Sections IV.A, IV.C, IV.E, and VIII shall be produced no later than one hundred and five (105) days after the date such Litigating Plaintiff elects not to settle his/her claims, except with regard to expert reports, no later than one hundred and thirty (130) days after the date such Litigating Plaintiff elects not to settle his/her claims.

41.    For each New Plaintiff, the items required by Sections IV.B, IV.D, IV.F, and VIII shall be produced no later than one hundred and five (105) days after the case is filed in or removed to this MDL, except with regard to expert reports, that deadline will be one hundred and thirty (130) days after the case is filed in or removed to this MDL.

### B.    Failure to Comply

42.    The Court has established the foregoing deadlines for the purpose of ensuring that pretrial litigation against the Settling Defendants will progress as smoothly and efficiently as possible. Accordingly, the Court expects strict adherence to these deadlines.  Should any Plaintiff fail to comply with the obligations of Sections III, IV, V, VI, VII, or VIII or should the Settling Defendants deem the Litigating or New Plaintiff's compliance with this CMO deficient, Counsel for the Settling Defendants shall notify the Court of the alleged deficiency, and the Court shall issue an "Order to Show Cause Why the Case Should Not Be Dismissed With Prejudice and/or Sanctions Ordered."  Litigating or New Plaintiff's Counsel shall have twenty-one (21) days to respond to said Order to Show Cause, which includes the ability to cure the alleged discovery deficiency.  There shall be no imposition of a sanction for any Litigating or New Plaintiff who cures a deficiency within twenty-one (21) days after entry of an Order to Show Cause.  If the Litigating or New Plaintiff fails to show cause within twenty-one (21) days of entry of the Court's Order to Show Cause, the Court shall dismiss the Litigating or New Plaintiff's case with prejudice and may impose additional sanctions the Court deems appropriate.  *See, e.g.*, *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014); *In re PPA*, 460 F.3d at 1232.

1

## VII.    Certification for Cases Filed After the Claim Registration Deadline

2      43.    For all cases filed in or removed to this MDL after the entry of this CMO, Counsel for

3 Plaintiff must serve a Certification that: (1) attests that the New Plaintiff had not retained said Counsel as

4 of the claim registration deadline; (2) identifies the date on which Counsel was retained by the New

5 Plaintiff; (3) identifies the date on which Counsel first communicated about potential claims against JLI

6 with the New Plaintiff; and (4) certifies that Counsel did not intentionally delay being retained by New

7 Plaintiff for any reason, including but not limited to attempting to avoid the claim registration deadline

8 for the Settlement Program.

9      44.    Counsel for Plaintiff must serve the Certification on Counsel for all Defendants, including

10 Altria, within seven (7) days of receipt of notice of this Order.  Service shall be made via email to Counsel

11 for Settling Defendants at the following email address: <u>JUUL_PlaintiffDiscovery@kirkland.com</u>.  Service

12 shall    be    made    via    email    to    Counsel    for    Altria    at    the    following    email    address:

13 JUULDiscovery@arnoldporter.com.

14      45.    Any Counsel who fails to comply with the requirements of this Section shall be given

15 notice of such failure by email and fax from Settling Defendants' Counsel and shall be provided ten (10)

16 additional days to cure such deficiency ("Cure Period") to be calculated from the receipt of such notice of

17 deficiency from Counsel for the Defendant.  No other extensions will be granted.  If Counsel fails to cure

18 the deficiency within the Cure Period, Settling Defendants may file a Motion to Show Cause why

19 sanctions should not be imposed for failure to comply with this Order.  Counsel shall thereupon have

20 twenty (20) days to respond to the Motion and show good cause why sanctions should not be imposed.

21 ## VIII.   Discovery

22      ### A.    Affidavit Regarding Statute of Limitations and Other Time-Based Defenses

23      46.    All Plaintiffs must, within the time frames established by Section VI, serve upon Counsel

24 for the Defendant, an affidavit signed by the Plaintiff providing the following information, unless such

25 information has previously been provided through discovery: (1) the date the Plaintiff first learned his

26 alleged injury/injuries may be related to the use of JUUL products; (2) how the Plaintiff first learned his

27 alleged injury/injuries may be related to the use of JUUL products; (3) the date the Plaintiff first spoke to

28

or corresponded with an attorney about potential litigation related to the use of JUUL products; (4) the date the Plaintiff first retained Counsel for litigation related to use of JUUL products; (5) the date the Plaintiff first used a JUUL product; and (6) if applicable, the date the Plaintiff first saw a JUUL advertisement, including a description of the advertisement.  Service by the Plaintiffs shall be made via email to Counsel for Settling Defendants at the following email address: JUUL_PlaintiffDiscovery@kirkland.com.  Service by the Plaintiffs shall be made via email to Counsel for Altria at the following email address: JUULDiscovery@arnoldporter.com.

### B.    Case-Specific Discovery and Related Dispositive Motion Practice

47.    If mediation as set forth in Section V is unsuccessful, the Plaintiff has complied with the requirements outlined above in Sections IV, VII, and VIII, and the Plaintiff has not previously participated in case-specific discovery, then the Parties, as applicable, shall submit a proposed Scheduling Order to the Court that: (a) grants the Parties one hundred eighty (180) days from the entry of the Scheduling Order to conduct discovery on case-specific issues ("Additional Discovery"); and (b) sets a briefing schedule that gives the Parties forty-five (45) days from the close of Additional Discovery for the Parties to submit summary judgment motions and *Daubert* motions, twenty-eight (28) days for responses, and twenty-eight (28) days for replies.

48.    During such Additional Discovery, the Parties are permitted to: (a) take the depositions of the Plaintiff, the Plaintiff's spouse, if applicable, and any other non-party lay fact witness specific to the Plaintiff for up to seven (7) hours each, with Counsel for the Settling Defendants questioning first at each deposition; and (b) take the depositions of no more than three (3) of a Personal Injury Plaintiff's treating healthcare providers, with Counsel for the Settling Defendants questioning first at each deposition.  In the case of complex medical situations, Settling Defendants may be permitted to take additional depositions upon a showing of good cause.  If a Plaintiff serves any written discovery upon the Settling Defendants, the Parties shall meet and confer about an appropriate deadline for responding to such discovery, which deadline shall be at least sixty (60) days after service of such discovery.  The Court's use of the term "specific to the Plaintiff" is intended to express the Court's intention not to permit additional "generic" or

"core" discovery against the Settling Defendants at this time. No other depositions may be taken during the expedited discovery period absent prior leave granted by the Court upon a showing of good cause.

49.     Based upon the outcome of any summary judgment motions, if appropriate, the Court will set a Case Management Conference to determine whether any non-duplicative discovery including additional expert disclosures are necessary and to discuss other case management issues, however the witnesses specific to the Plaintiff's claims already deposed shall not be re-deposed. Discovery with regard to any other defendants will be addressed at this time as well. The filing and briefing of summary judgment motions and *Daubert* motions after the Expedited Discovery ordered above shall not prejudice or otherwise foreclose the opportunity for any Party or other defendant to file later, non-duplicative summary judgment and *Daubert* motions after completing full fact and expert discovery. The Court's use of the term "non-duplicative" is intended to express the Court's intention not to permit later summary judgment motions concerning topics addressed in summary judgment motions filed at the conclusion of the expedited discovery period or *Daubert* motions concerning witnesses addressed in *Daubert* motions filed at the conclusion of the expedited discovery period.

50.     The foregoing provisions do not preclude any Party or other defendant from filing non-duplicative dispositive motions, including motions related to personal jurisdiction.

## IX.    Penalties for Fraud and Deception.

51.     Any party and/or Counsel for that party who submits false or misleading information, or otherwise attempts to satisfy the documentation requirements of this Order through deception, dishonesty, or fraud, may be subject to appropriate sanctions, including monetary sanctions and costs, and dismissal with prejudice pursuant to Federal Rule of Civil Procedure 37. Plaintiffs who fail to fully comply with the requirements of this Order may be subject to sanctions and dismissal of their claims pursuant to Federal Rule of Civil Procedure 37.

SO ORDERED, on this 30th day of January, 2023.

By: _____
Hon. William H. Orrick
United States District Judge