[*Counsel listed in signature block*]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE: JUUL LABS, INC., MARKETING SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION

This Document Relates to:

*Erin NesSmith et al. v. Juul Labs, Inc., et al.*, Case No. 3:19-cv-06344-WHO

*Bailey Legacki v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-01927-WHO

*Cole Aragona v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-01928-WHO

*Matthew Tortorici v. Juul Labs, Inc., et al.* Case No. 3:20-cv-03847-WHO

*Jordan Dupree v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-03850-WHO

*Carson Sedgwick v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-03882-WHO

*Jennifer Lane et al. v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-04661-WHO

Case No. 3:19-md-02913 (WHO)

Hon. William H. Orrick

**JOINT STATEMENT REGARDING PLAINTIFFS' COMPLIANCE WITH COURT ORDERS ON PRODUCTION OF EMAIL AND SOCIAL MEDIA COMMUNICATIONS**

This joint statement addresses the parties' dispute concerning the extent of Plaintiffs' compliance with the Court's orders concerning the production of email and social media.

**Defendants' Position**

Six months ago, the Court said it was "troubled and disappointed by plaintiffs' counsels' failure, more than five years after they filed the above-referenced cases and nineteen months after their clients' emails and social media communications were requested by defendants, to search for and produce obviously material evidence in this case." (Dkt. 4488 at 1.) The Court gave Plaintiffs more time to produce their emails and social media communications "because they failed to retain a third-party vendor in a timely way to comply with their obligations" and it did "not appear that given their dilatory conduct the required discovery could be produced sooner."[1] (*Id.* at 2.) The Court said it would retain these cases "until plaintiffs have produced the records at issue." (*Id.*)

Plaintiffs asserted they had complied with the Court's order on March 19, 2026 (Dkt. 4490), but they still have not complied. As explained below, they have failed to collect, review, and produce emails and social media communications from almost 50 accounts. They have not produced images and other media from their emails, social media, and text messages. And they oppose depositions concerning the "obviously material evidence" they have only just produced (or will produce). Defendants have exhausted all avenues for obtaining this discovery without the Court's assistance—including requesting further conferral with Plaintiffs as recently as last week (which Plaintiffs refused). The Court should therefore order Plaintiffs to supplement their productions and sit for continued depositions. A proposed order granting the relief Defendants seek is attached as Exhibit 1.

The Court also should reaffirm that generic discovery of Defendants is closed because Plaintiffs recently sought additional email discovery from JLI and the individual defendants. Because that discovery contradicts CMO Nos. 17 and 19 and the remand arguments that Plaintiffs made just months ago, it is not proper here or in the remand courts. Dkt. 4477 at 2 ("What remains is not generic, MDL-wide discovery, but state-specific and case-specific matters…").

---

[1] Counsel's reliance on Plaintiffs to collect and review their own documents already has prejudiced Defendants. Plaintiffs withheld and then lost or deleted evidence they should have produced. *See, e.g.*, C. Sedgwick Tr. 265:17–266:9, 362:15–364:24 (Ex. 2).

**1. Plaintiffs Refuse To Sit For Resumed Depositions.**

The Court should order Plaintiffs to sit for resumed depositions of up to five hours, which Defendants will focus on documents Plaintiffs produced (and will produce) and other discovery Defendants obtained after Plaintiffs' initial depositions. Although Defendants previously deposed each Plaintiff, they did so without knowing that Plaintiffs had failed to search for and produce "obviously material" evidence (Dkt. 4488 at 2). The Court should not reward that conduct by shielding Plaintiffs from testifying about the very documents they should have produced before. Confronting Plaintiffs with untimely-produced emails and social media at trial is not a substitute for deposition testimony now.

The Court should resolve this issue before it suggests remand. Because Plaintiffs' counsel have refused to resume Plaintiffs' depositions, Defendants would otherwise have to litigate this issue in each transferor court and bear not only unnecessary cost and expense but also the risk of inconsistent rulings.

Plaintiffs' claim that Defendants should not be allowed to resume their depositions because they were "questioned extensively about social-media use" lacks merit. Defendants are entitled to depose Plaintiffs on the "obviously material evidence" that Plaintiffs produced only after their depositions (and, indeed, will produce only when they complete the email and social media productions they have not yet undertaken or finished, as detailed below). This evidence includes:

- Text messages between Cole Aragona and a former employer about his "show[ing] up for work under the influence," contradicting his prior deposition testimony that he had no "incidents" or "issues" at that employer (Ex. 3; C. Aragona Tr. 275:21–276:4 (Ex. 4));
- Text messages between Aragona and his mother in which she yells at him for stealing back marijuana that he had given her and calls his conduct "really really f----- up and selfish" (Ex. 5); and
- Messages in which Victoria Cunningham, who blames JUUL products for her depression, anxiety, self-harm, suicidal thoughts, and suicide attempts, discusses her father's physical abuse of her, which refutes her prior deposition testimony that she never experienced abuse (V. Cunningham Tr. 341:23–342:3, 432:7–433:6 (Ex. 6); Ex. 7; Ex. 8).

**2. Plaintiffs Refuse To Produce Records From Dozens Of Accounts.**

The Court ordered Plaintiffs to produce non-privileged, relevant records from all of their email and social media accounts. To date, Plaintiffs have not produced records from the 49 accounts listed below and in Appendices A through C—and those are just a subset of the accounts that Defendants identified in discovery and by searching the public domain. The Court should order Plaintiffs to supplement their productions.

The accounts at issue likely contain non-privileged, relevant information because Plaintiffs used them during and after the periods they claim to have used JUUL products.[2] Further, many of the accounts appear to be private, secondary accounts that Plaintiffs used to share unfiltered, personal content with a small, trusted circle of friends—making them more likely to contain information concerning Plaintiffs' actual substance use. *See, e.g.*, Dkt. No. 4373 at 2 (Plaintiffs' drug use "is squarely relevant to causation").

***First***, Plaintiffs have refused to search at least 35 accounts. Although Plaintiffs say they cannot access 12 of these (including Facebook, Instagram, Snapchat, and TikTok accounts) (Appendix A), that is no justification—whether Plaintiffs have truly forgotten their credentials or otherwise. Plaintiffs had a duty to preserve these accounts, and Defendants have consented to orders directing the companies to produce the accounts' contents to Plaintiffs' counsel. Plaintiffs have not explained their refusal to search another 22 accounts (Appendix B), which Plaintiffs do not deny are theirs and the Court's order requires them to search.[3]

The final account Plaintiffs refuse to search is Plaintiff Victoria Cunningham's Sony account, which Cunningham used to "text" her friends when her father confiscated her phone to

---

[2] Plaintiffs claim they should not have to search accounts "last used in 2016." *Infra*. But most Plaintiffs allege they began using JUUL products in 2016 or 2017. Conversely, Plaintiffs claim they should not have to search new accounts, but Plaintiffs' current health and substance use matter because they allege ongoing injuries.

[3] Plaintiffs' assertion that Legacki and Sedgwick searched "additional accounts," *infra*, does not address *the accounts at issue* (*see* Appendices A and B), which they refuse to search.

punish her for vaping. *See* V. Cunningham Tr. 25:25–26:10, 104:13–105:1 (Ex. 6). Given the context of those communications, they are likely to be relevant.

The fault for the number of accounts at issue lies with Plaintiffs. As part of the meet-and-confer process, Defendants identified many other accounts, over and above the 49 that are the subject of this letter, that Plaintiffs had not disclosed or searched. But Defendants did not press Plaintiffs to collect and produce the contents of accounts that Defendants concluded, after conferral, were less likely to yield relevant results (e.g., LinkedIn and Pinterest accounts).[4]

***Second***, Plaintiffs have not adequately searched five accounts and, at a minimum, should provide information Defendants have requested concerning their searches:

- Aragona claims to have searched his Snapchat account, but he has not produced *any* records and refuses to even identify the account or search terms he used, as the Court's ESI order requires. (*See* Dkt. 323 at 2–3.)
- Cunningham claims to have searched her Instagram account (vicxlifestyle) but has not produced any records and refuses to identify her search terms.
- Cunningham refuses to agree to orders requiring Apple to produce texts,[5] emails, and other messages that she deleted after suing. T. Cunningham Tr. 40:2–42:4, 45:15–46:3 (Ex. 10).
- Dupree claims to have searched her VSCO account "jordandupreee," but she has produced no records from it (even though it includes a picture of a non-JUUL vape (Ex. 11)), and she refuses to explain how she searched it.[6]
- Tortorici claims that his counsel searched his TikTok account's *public* posts only and refuses to agree to an order requiring TikTok to produce the private contents to his counsel.

---

[4] The list of accounts inadvertently included Plaintiff Jennifer Lane's OnlyFans account, which Defendants identified but did not intend to include as an account for Plaintiffs to search (and withdrew from discussion immediately).

[5] Cunningham has produced almost no text messages. The messages that Plaintiffs reference below are Facebook Messages, not text messages. *See* Ex. 9.

[6] Plaintiffs are incorrect that VSCO is just a photo editor. *See* VSCO, *Messaging*, https://www.vsco.co/features/messaging (last visited Sept. 3, 2026). And although it is true that Defendants changed their example as part of the back-and-forth of preparing this joint submission, there is nothing wrong with that; it is how the meet-and-confer process is supposed to work.

***Third***, Plaintiffs' counsel waited months to request, and still have not produced, records from nine accounts of decedent Ashlynn NesSmith (Appendix C). Plaintiffs' counsel have not yet received NesSmith's documents and communications from Google (two accounts) and TikTok (same) and have no timetable for reviewing and producing them.

For all these reasons, the Court should order Plaintiffs to produce the records from the 49 accounts at issue in accordance with the ESI Order within 60 days. To the extent Plaintiffs cannot access the records themselves, the Court should order them to execute authorizations and, to the extent necessary, submit agreed orders directing each email or social media provider to produce Plaintiffs' records to Plaintiffs' counsel for review and, as appropriate, production to Defendants.

**3. Plaintiffs Refuse To Produce Relevant Media.**

Plaintiffs refuse to produce embedded and standalone media responsive to Defendants' requests for production, including evidence of Plaintiffs' substance use.

First, Plaintiffs refuse to produce embedded images and media, which in some cases renders the underlying records meaningless. For example:

- Sedgwick received an email from a local sales website telling him that it had rejected his listing because "[t]obacco, e-cigarettes, and e-juice are not allowed[.]" (Ex. 12.) But the listing is not pictured, so Defendants cannot tell what Sedgwick tried to sell.

- Plaintiff Bailey Legacki produced her Snapchat conversation with a friend, but she produced none of the text or media files embedded in the messages, and the conversation cannot be understood without them. (Ex. 13.)

- Sedgwick produced 295 pages of his Facebook "likes" over a 10-year period without including any image or media he liked. (Ex. 14.)

Second, Plaintiffs refuse to search for and produce standalone media. Plaintiffs have numerous social media accounts that Defendants cannot access due to privacy restrictions. Word searches of these accounts' contents are insufficient. They do not hit on images of Plaintiffs using nicotine products, drugs, and alcohol unless the caption also references such conduct. Plaintiffs claim such searches are too burdensome, but they have produced innumerable standalone media,

including photos of Plaintiffs with their loved ones without text or captions, that they believe favor them.

The Court should order Plaintiffs to supplement their productions with these media.

**4. Plaintiffs Refuse To Produce Instagram Stories.**

Plaintiffs refuse to produce about 200 Instagram stories they admit are responsive to Defendants' discovery requests and discoverable. Although they provided hyperlinks to the stories, the hyperlinks do not work. And although Defendants consented to an order requiring Meta to produce Plaintiffs' stories to their counsel for review and (where relevant) production, Plaintiffs refuse. The Court should order Plaintiffs to obtain and produce these admittedly relevant records.

Plaintiffs' focus on the hyperlinks misunderstands Defendants' request. Defendants do not expect Plaintiffs to re-link their stories to the broken hyperlinks. Defendants simply want Plaintiffs to produce the stories. The Court should require them to do so.

**5. The Court Should Not Allow Plaintiffs To Redo Generic Fact Discovery.**

Finally, the Court should reaffirm that generic discovery of Defendants is closed. On July 23, 2026, Plaintiffs demanded that Defendants identify each email and social media account that *Defendants* collected and searched and the search terms and date restrictions Defendants used. Plaintiffs also stated on a meet and confer that they intend to seek further generic fact discovery and that each transferor court will have to decide for itself how much generic discovery to allow.[7]

[7] Plaintiffs have not moved this Court for leave to take additional generic or core discovery, as required. If Plaintiffs' counsel intends to request to reopen generic discovery now—or post-remand as they suggest—that request should be addressed separately prior to remand and on a developed record rather than resolved through this letter. CMOs 17 and 19 provide that a plaintiff may not take additional "generic" or "core" discovery without leave of Court and contemplate a further case management conference to determine whether any non-duplicative discovery is necessary. *See* CMO 17 ¶¶ 48–49, at 31–32; CMO 19 ¶¶ 43–44, at 35. Defendants therefore respectfully request that any such request be addressed through a separate briefing schedule and a case management conference or other hearing set by the Court.

Plaintiffs' demands and intentions violate CMO Nos. 17 and 19. Those orders "express the Court's intention not to permit additional 'generic' or 'core' discovery against" Defendants. CMO No. 17 ¶ 48, CMO No. 19 ¶ 43. And the Court has said that the "record here is complete through the end of discovery in the MDL." Jan 27, 2026 Tr. 4:7–8 (Ex. 15). Those rules make sense because Defendants completed their generic document productions—after extensive negotiations with Plaintiffs' leadership regarding the scope of Defendants' searches—in 2021. Defendants produced more than 10 million documents, and their officers, directors, employees, and business partners sat for more than 100 depositions.

Plaintiffs' demands and intentions also contradict their recent representations to this Court—for example, that "[w]hat remains is not generic, MDL-wide discovery, but state-specific and case-specific matters," like "personal jurisdiction disputes, compulsory medical examinations, and plaintiff-specific factual development" (Dkt. 4477 at 2), and that they "just want to get [their] trial date." Dec. 16, 2025 Tr. 14:16–17 (Ex. 16).

The Court should not allow Plaintiffs to undo its coordination of generic discovery—the MDL's principal purpose, should deny Plaintiffs' generic-discovery request, and should affirm that generic discovery is closed.

Plaintiffs draw a false equivalence between the deficiencies discussed above and Mr. Pritzker's non-production of a single email. When Plaintiffs first raised the issue in March 2026—five months ago—counsel to Mr. Pritzker addressed it promptly by meeting and conferring with Plaintiffs' counsel twice, investigating why the email was not produced and providing an explanation, and confirming that no similar communications exist and should be produced. That process ended in early April 2026, and Plaintiffs did not request any further action from Mr. Pritzker until August 2026. The parties have resumed meeting and conferring in an effort to resolve any dispute without court intervention and will brief it by separate letter if needed.

**Plaintiffs' Position**

Plaintiffs long-ago, back in March 2026, complied with their obligations to produce email and social media communications.[8] Then, in good faith, they agreed to Defendants' request for a brief, 45-day, extension to iron out certain issues they raised. Where possible, Plaintiffs searched additional accounts Defendants identified applying the very search terms Defendant's proposed, they produced hit reports, they produced hundreds of documents in native format – the list goes on. But so did Defendants' demands, which are now well-passed any measure of reasonable discovery practices. For example, Defendants ask Plaintiffs to search through business accounts or accounts that did not even exist at the time Defendants' discovery requests were made and have no bearing on the issues related to the case. Defendants' delay in raising these issues, as discussed below, is nothing more than blatant attempt to keep them from progressing to their respective courts.

And while Defendants devote extraordinary attention to alleged deficiencies in Plaintiffs' discovery, they ignore far more consequential failures of their own. For example, Mr. Pritzker failed to produce the communications he had with Jeffrey Epstein, where he courted Jeffrey Epstein to invest in Ploom, the predecessor to JUUL. These communications are plainly responsive to requests for production that were served back in June of 2020, and they contain an agreed-upon search term that was used in culling relevant documents. This means that either Pritzker knowingly withheld these communications from his attorneys, or his attorneys knowingly

---

[8] This issue arises from two misrepresentations. Defendants first misrepresent that none of the Plaintiffs searched through their emails to produce documents responsive to Defendants' discovery requests. They did. And Plaintiffs like Legacki, Tortorici, and Fay (while she was in the MDL), for example, were cross-examined on their email productions at deposition. Defendants next misrepresent that none of the Plaintiffs searched through their social media accounts to produce responsive documents or communications. They did as well. While Plaintiffs initially did not retain an ESI vendor for their emails, they retained and used the *same* ESI vendor that the MDL bellwether plaintiffs used in their social media searches and productions. Plaintiffs Aragona, Cunningham, Dupree, Legacki, and Sedgwick all produced social media communications from the accounts they identified before their depositions. NeSmith and Tortorici could not. They did not have access to the accounts they identified.

withheld them from production. Pritzker's counsel has not explained why these communications were not produced. Plaintiffs raise Pritzker's compliance with his production in a separate letter brief. Even now, Defendants' won't to commit to identifying *all* their own email and social media accounts, and state which, if any of those accounts have been searched for responsive documents. Plaintiffs asked Defendants for this information, but Defendants have not provided a substantive response. Instead, they seek an order barring further general discovery. Defendants misread CMOs 17 & 19. Those CMOs do prohibit Plaintiffs from pointing out problems with Defendants' discovery productions. Nor do they prohibit updated or supplemental productions, which would violate Rule 26's duty to supplement. That Defendants are withholding their own social media accounts is problematic. Just because Defendants produced millions of pages of documents does not mean they are not also withholding damning documents, as in Pritzker's case. This speaks to a systemic problem that calls into question the adequacy of Defendants' productions, as communications that should have been produced long ago have been withheld from Plaintiffs.

Despite the obviously relevant nature of these documents, Plaintiffs have, until this point, refrained from asking the Court to address these issues. But the Court must be aware of them and take appropriate action, as Defendants' production deficiencies cut across all cases. The issues Defendants raise are singular to each plaintiff and can be dealt with by each respective district court.

Overall, these cases have been pending for years. They should now be resolved on their merits—not by another round of one-sided discovery disputes. Defendants waited until January 2026 before raising any issue with Plaintiffs' email productions. They waited until the end of February 2026 before raising any issue with Plaintiffs' social media productions. This brief should have been presented months ago, in early June. Plaintiffs returned their portion on June 8. Defendants took another 20 days to respond. And with good reason. They had to delete certain

portions that proved wrong.[9] Defendants would then wait weeks before responding to Plaintiffs' drafts.

Notwithstanding, Plaintiffs made every reasonable effort to both re-do prior searches and bring their searches current through the present, as Rule 26(e) provides a duty to supplement. Accordingly, Plaintiffs retained an ESI vendor to obtain Plaintiffs' email accounts and social media accounts. Plaintiffs accepted Defendants' proposed search terms in whole and without pushback. Where Defendants found additional social media or email accounts, Plaintiffs made best efforts to obtain access and search through those as well. Plaintiffs then ran Defendants' search terms and produced relevant, responsive material. For example, Legacki and Sedgwick were able to access certain additional accounts Defendants identified and produced responsive material. Thus, Defendants' repeated claims that Plaintiffs are refusing to access and search the additional accounts identified are categorically false.

Defendants' prejudice claim that (*see* Footnote 1, above) is meritless. These Plaintiffs are open books. They have already produced ample photographs and communications of their JUUL

---

[9] Jordan Dupree's VSCO account is illustrative. As an initial matter, it is unclear whether VSCO even needed to be searched. VSCO is a photo or video editor.[9] It is not traditional social media like Facebook or Instagram. Nonetheless, Defendants claimed Dupree did not adequately search her VSCO account because, as they stated in a prior draft, attached as Exhibit 19 "Defendants have located at least one responsive document . . . a picture suggesting Dupree and others use drugs (in which they are posed in front of a banner that says "[Warning: Do Not] Feed the Whores Drugs")." Exhibit 20. But there is a glaring issue with Defendants' suggestion. Defendants had flagged this picture because it hit on the search term "drugs." The simple fact that the photograph contains the word "drugs," does not make it responsive to Defendants' discovery requests. Neither Ms. Dupree nor her friends have any drugs, alcohol, or tobacco devices in their hands. This picture had nothing to do with any of Ms. Duprees' injuries. Defendants speculate that because Ms. Dupree is standing before a suggestive sign mean she and her friends use drugs. But that's just speculation. The exhibit proved nothing. So, Defendants withdrew this entire argument. And, in its place, took weeks to point out another purported problem – that Dupree did not provide another picture (Ex. 4) that purportedly contains a vape on a bathroom counter. That's unclear. Defendants even note they have no idea whether the vape is Ms. Dupree's. In any event, this is a non-issue, as Defendants have ample photographs of Ms. Dupree using vaping devices like JUUL. That Defendants were not provided an unclear, and arguably unresponsive photograph does not call Plaintiffs' compliance into question.

use, drug use, and alcohol use. They described their useage of same in their fact sheets and at deposition. And reported all this to Plaintiffs' experts. Defendants charge Plaintiffs with deleting evidence. Their proof is lacking. For example, their first exhibit is of Carson Sedgwick's testimony where he discusses deleting messages with an ex-girlfriend in the normal course. This hardly suggests the purposeful destruction of material that may be relevant in a lawsuit years later.

What's more, where Defendants found files that they purported to be "corrupted," Plaintiffs produced the native files as Defendants requested with the native file production demonstrating that any "corruption" was inherent to the original document and that no other content was available to be produced. The record demonstrates that Plaintiffs bent over backwards to satisfy their discovery obligations. They complied with their duties under Rule 26, Rule 34(a), and with the Court's order. The Rules require a party to conduct a reasonable and diligent search for responsive documents that are relevant and proportionate materials within their possession, custody, or control. *See* Fed. R. Civ. P. 26(b)(1), 26(g), and 34(a). Plaintiffs have more than met that standard.

Defendants' charge of noncompliance is without merit. The record shows that Defendants are overreaching, if not abusing the process. For example, Defendants initially sought the OnlyFans[10] account of the mother of a Plaintiff. *See* Plaintiff Exhibit 17 Defendants recently expressed they now want a Plaintiff to subpoena Sony PlayStation, a video gaming platform, for communications. Defendants' years-long delay in raising a production concern paired with their current, unending hunt for issues (where none exist) exposes their true intent: to keep delay moving these cases forward. Defendants now say that OnlyFans demand was "inadvertent." The Court should reject that self-serving claim. Defendants only "withdrew" the request because they realize just how untenable their position has become. The episode remains illustrative of method—an indiscriminate sweep that captured an account belonging even to a non-party, with no threshold

---

[10] According to Wikipedia, OnlyFans is an Internet content paid subscription service widely known for its popularity with pornographers; available at: https://en.wikipedia.org/wiki/OnlyFans (last visited June 7, 2026)

assessment of relevance or control. The PlayStation demand, made after the OnlyFans withdrawal, confirms the methodology has not changed.

1. **Plainitffs Collected, Reviewed, And Produced Emails And Social Media Communications Within Their Possession, Custody, and Control**

Fed. R. Civ. P. 34(a)(1) obligates a party to produce only documents and ESI within its "possession, custody, or control." *See also A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188–89 (C.D. Cal. 2006); *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453–54 (9th Cir. 1989) (explaining that control over discovery documents "must be firmly placed in reality" and "not in an esoteric concept such as . . . theoretical[] control.").

A party's correlative duty under Fed. R. Civ. P. 26(g) is to make a "reasonable inquiry"—i.e., a diligent search—not to exhaust every conceivable avenue at any cost. *See Garber*, 234 F.R.D. at 189–90. If, after a diligent and reasonable search, a party cannot access the documentation or no longer possesses responsive material, the party has complied with its discovery obligations. The Rules do not require a litigant to do the impossible. *See Reinsdorf v. Skechers, U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("[W]hile parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection" and that "the court will inquire whether the producing party's search and response were objectively reasonable under the circumstances, not whether the search and response were error-free.").

Plaintiffs searched and produced responsive documents from the emails and social media accounts they identified in response to Defendants' interrogatories and document requests. Defendants then, through whatever investigative efforts they are employing, found additional accounts they claim needed to have been searched. This is Defendants' Appendix A. So, Plaintiffs made reasonable efforts to access and search those as well. If the accounts were accessible, Plaintiffs ran the search and produced responsive documents.

But Defendants' overall contention on this point lacks context. Most Plaintiffs have a primary social media account, and then other ones that are inactive and inaccessible. Take Instagram, for example. It may be the case that several years ago, they had another Instagram account or accounts at one point. Yet those have been dormant for years. They may be tied to an old email or phone number that is no longer in use, and therefore cannot be reasonably accessed. There's no reason to think that these accounts were recoverable in 2023 or 2024 either, when Plaintiffs began their document productions. Defendants know but ignore this. The Court should reject Defendants' charge that Plaintiffs simply refuse to search through accounts. The following table demonstrates the point. The accounts mentioned are ones Defendants indicate have not been searched. That's a distortion. The left column explains the status of that account.

| Plaintiff | Account Type | Username | Status of Account |
|---|---|---|---|
| Aragona | Facebook | profile.php?id=100007145356921 | Last Post 2016- does not have access to this account, does not recall the email address associated with it, cannot attempt to reset the password |
| Aragona | Facebook | profile.php?id=100012340142165 | Last Post 2016- does not have access to this account, does not recall the email address associated with it, cannot attempt to reset the password |

| | | | |
|---|---|---|---|
| Aragona | Snapchat | *Unknown* | Searched, nothing responsive |
| Aragona | YouTube | colearagona5972 | Does not recognize this account, Plaintiff's counsel cannot find this account. |
| Cunningham | Facebook | forever.toriii | Does not have account. Last time on account, 2014. Can't get on account. Tried but unable to re-set password. |
| Cunningham | Instagram | tori_girl_123 | Could not get into account. Does not know email or phone associated with the account. Last post, June 28, 2016. Tried but unable to re-set password. |
| Cunningham | Instagram | tori2197 | Does not know account existed. Last post, Oct. 7, 2016. Tried but unable to re-set password. |
| Cunningham | Instagram | vfaithc | Searched |
| Cunningham | Instagram | victoriafaith.sk8s | Skateboarding account, last post, 2020. Does not know email associated |

| | | | |
|---|---|---|---|
| | | | with account. Cannot access account. Tried but unable to re-set password. |
| Cunningham | Instagram | vicxlifestyle | Searched, nothing responsive |
| Cunningham | Snapchat | vfaithc | Does not have vfaithc; has vfaith.c – cannot get into account. Did not know email associated with account. |
| Cunningham | Threads | vfaithc | Did not use account; does not have app on her phone. Tried but unable to re-set password. |
| Cunningham | TikTok | vfaithc | Searched |
| Cunningham | VSCO | vfaithc | No longer has to account; cannot access account. Tried but unable to re-set password. |
| Dupree | Instagram | aye_its_noname | no access, inactivated |
| Dupree | LinkedIn | jordan-dupree-bbab05265 | Not used, log in information unknown |
| Dupree | TikTok | jorjor94 | no access, inactivated |

Defendants' "examples" above and Appendix B illustrate the unreasonableness of their position. *See* the discussion on Ms. Dupree VSCO account above. They seek LinkedIn accounts, which need not be searched for lack of relevant information. They seek Carson Sedgwick's

"Pristine Powersports" social media accounts. These are related to a business he founded. The Facebook page was created in January 2026; the Instagram page was created in January 2025 – years after Plaintiffs' were to produce JUUL-related records. Bailey Legacki's Threads account is newly created. Erin NesSmith's Facebook accounts are either connected to her personal account and relevant documents, if any, have been produced (like account 'breathebetweenbattles' or 'erin_breathebtween') or the accounts are employment related. These accounts have nothing to do with the case. Nor does Aragona's Snapchat account support Defendants' charge. Defendants fault Aragona for not producing documents from, or identifying search terms for, a Snapchat account that—when searched—yielded nothing responsive. There is no production to make where nothing responsive exists. To the extent the ESI Order calls for disclosure of search methodology, Plaintiffs ran the search terms Defendants themselves proposed and remain willing to confer. The ESI Order's cooperation provisions do not convert an empty result into a discovery violation.

Defendants' writing about Victoria Cunningham is meritless.[11] Defendants' newly added demand for Victoria Cunningham's Sony PlayStation "messages" proves Plaintiffs' point, not Defendants'. That a teenager occasionally used a console's chat feature when her father took her phone (V. Cunningham Tr. 104:16–25) does not place any PlayStation "account" within her possession, custody, or control today, and it does not establish that responsive, JUUL-related communications ever existed there. *See* Fed. R. Civ. P. 34(a)(1); *Garber*, 234 F.R.D. at 188–89. A gaming console is not a standard communications archive. Demanding that a plaintiff subpoena a video-game platform on the possibility that some message might exist is a fishing expedition, disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Nor does the testimony Defendants cite regarding the deletion of texts reflect anything more than the ordinary deletion of personal messages and

---

[11] This is another example of Defendants' spurious charges that Plaintiffs rebut, and Defendants then withdraw weeks later. Contrary to Defendants' telling, nothing about this process is part of the normal meet-and-confers. Defendants' unsubstantiated claims have needlessly delayed the progress of these cases. In a prior draft, Defendants stated she did not submit any text messages. That was wrong. Defendants cross examined Ms. Cunningham on her text messages, those communications were marked as Exhibit 1 to her deposition.

does not identify any deleted item as responsive material or establish that any deletion post-dated a preservation obligation. Regardless, Defendants' thinly veiled sanctions rhetoric is governed by Rule 37(e), which authorizes curative measures only where relevant ESI "is lost because a party failed to take reasonable steps to preserve it" and "cannot be restored or replaced through additional discovery," and authorizes an adverse inference only on a finding that a party "acted with the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e). Defendants make neither showing. To the contrary, Defendants' own proposed orders to Apple and Meta presuppose that any such messages can be recovered from the platforms—which defeats both the "cannot be restored or replaced" element and any claim of prejudice. Plaintiffs' objection has never been to the platforms holding this information. Rather, Plaintiffs' objection is that Defendants' unending demands for additional material is not proportional to the needs of the case.

With respect to Plaintiff Matthew Tortorici, Defendants fault Plaintiffs for social media accounts that Tortorici himself could not access. Indeed, Plaintiffs told Defendants precisely which accounts those were and why they were not accessible. Defendants' argument that it has offered to consent motions for orders directing email and social media companies to produce Plaintiffs' inaccessible documents and communications is of no moment. Plaintiffs are not required to exhaust every conceivable avenue at any cost. Defendants' position is all the less credible given they did not raise this issue until recently when Plaintiffs have been providing responsive documents and communications since their compliance with CMO 17 back in August 2023. By any measure, these Plaintiffs have been open books. The Plaintiffs have all sat for lengthy depositions at which they were questioned about their email and social media communications and activity. They have produced sensitive and deeply personal material, including but not limited to psychological records, educational records, records and information relating to illegal drug use, and records and information concerning family and childhood traumas.

Defendants' reliance on the NesSmith consent orders as a template for every other account is also misplaced. Ashlynn NesSmith's accounts were pursued through Court orders precisely

because, after her death, they were wholly inaccessible to Plaintiffs by any other means—third-party process was the only avenue, and Plaintiffs used it. The living Plaintiffs stand differently: they searched and produced from every account they could access, and the dormant, years-abandoned accounts Defendants press—many last used in 2016—are ones Plaintiffs cannot access and that are not reasonably likely to contain relevant, non-duplicative material. Rule 34 does not require a party to initiate motion practice against non-party platforms to obtain material outside its control and of marginal relevance; if Defendants wish to bear that burden, it is theirs to bear.

Thus, NeSmith is the exception. There, Ashlynn NesSmith tragically passed away after she made initial productions per CMO 17 but before having to respond to Defendants' discovery. In that case, Plaintiff agreed to obtain Court-orders to obtain her social media and email accounts. Plaintiff has now produced responsive documents from Meta (Facebook and Instagram). Plaintiff has not yet been provided documents by the other companies. Once Plaintiff obtains the information from those accounts, she will promptly search through those and produce relevant, responsive material.

2. **Defendants' Mischaracterize The Nature And Extent of Plaintiffs' Production of Images and Other Media**

Defendants' contentions in their sections 3-4 are downright wrong. They claim that Plaintiffs failed to produce images and media which their emails, social media, and text messages refer. This statement is not true. In their recent 2026 productions, the Plaintiffs have collectively produced over 1,100 images in addition to over 1,000 JSON files. JSON files are a common production format for social media files that often have images embedded within them. The Court must not countenance such sweeping baseless claims.

Defendants' example of a March 6, 2018 email of Carson Sedgwick's demonstrates Defendants' overreach and the kind of unreasonable burden they seek to impose. The images associated with this email (which is from a third party commercial entity) were not available at the time of collection, and hence are not available for production. Plaintiffs provided a supplemental

native email file to Defendants to demonstrate that the images embedded in the email were not available in the original collected email. Images can be missing from a collected email for numerous reasons, including that the images were pointing to external URLs that are not collected by the email collection tool as opposed to actual embedded images. Defendants claim to be entitled to more, but that is not doable.

The same is true regarding Defendants' Legacki's Snapchat and Sedgwick Facebook examples. Regarding defense exhibit 7, this document is what Snapchat provided from its Download Your Information ("DYI") collection tool. Snapchat is an ephemeral messaging application and, by design, user data deletes from the application very quickly, becoming inaccessible to the user and no longer available for download through the DYI. There is a chance that some of the loose images available in the Snahpchat DYI may have been referenced in the message that Defendants are pointing to, but determining if that is the case would require custom scripting not available through the DYI or any commercially available tool to Plaintiffs' vendor's knowledge, and would be overly burdensome to impose on Plaintiffs. The same is true for Facebook. Plaintiffs employed DYI to obtain their Facebook information. The "likes" were what Facebook provided. Plaintiffs do not control Facebook and are limited to what Facebook allows a user to download through its DYI tools.

It is important to note that as part of Plaintiffs' best efforts to provide Defendants' what they feel is missing, Plaintiffs produced native files for any file that Defendants have complained about in a good faith effort to demonstrate that the formatting issues raised are inherent to the source. Plaintiffs are willing to provide native file overlays for any additional file raised by Defendants. But what Defendants are seeking is too much. Plaintiffs' Exhibit 18 proves the point. Defendants provided Plaintiffs with a list of 300 documents they claimed they could not fully review. Plaintiffs provided a painstaking status report on each document complained about, explaining the contents of the production, often advising Defendants that what they claimed to be

"corrupt" was in fact the original contents as they appeared at the collection source (e.g., a zero-byte file or a small-embedded image).

Defendants wrongly contend that Plaintiffs failed to search for and produce standalone images. Defendants are in possession of numerous pictures and videos of Plaintiffs using JUUL and other substances. What Defendants are asking for, however, is a manual review of every image and a production of same if relevant. That demand is unduly burdensome and also untimely raised. Also, Defendants proposed the search terms and Plaintiffs agreed to run them without any negotiation given the timing. The sources ordered by the court (email and social media) are amenable to search terms. The sources do not include camera rolls or loose photo caches - rather, they are photos included in emails or social media postings, almost all of which have text associated with it. Because Plaintiffs ran the search terms, those would have hit on relevant pictures and videos.

Defendants' complaint regarding Plaintiffs' Instagram Stories ignores the way that the Stories feature in Instagram functions and what Instagram provides in its DYI delivery. Instagram Stories that disappear as part of an inherent feature in Instagram Stories that makes the stories ephemeral (similar to Snapchat). The hyperlinks to those Stories are only available for 24 hours (*see* the following information from Instagram: https://help.instagram.com/1729008150678239/.) While Defendants are correct that the DYI provides the Stories archived by default, the Stories are divorced from the original hyperlink in the DYI delivery, and Plaintiffs' vendor knows of no commercially available manner to connect the archived Stories to the original hyperlink as Defendants request. Nor does the operative ESI protocol even address the production of hyperlinked files. Plaintiffs have produced Stories from the Plaintiffs' DYI archives to the extent that they have been identified as responsive during their review (e.g., LEGACKI00019690, CUNNINGHAM00000942), but requiring Plaintiffs to further investigate what Stories existed at now defunct hyperlinks is overly burdensome and likely a fruitless endeavor. To the extent Meta is able to identify the Story connected to a specific hyperlink, Plaintiffs do not oppose an order

directing Meta to provide them to Plaintiffs' counsel for review and production—the orderly path Defendants themselves propose, but only if the Court first deems Defendants' third-party subpoena requests reasonable..

3. **Additional Depositions Are Unwarranted And Any Remaining Disputes Belong In The Receiving Courts**

Defendants' request to reopen every Plaintiff's deposition for another five hours is neither necessary nor proportionate. Each Plaintiff was deposed for nearly two full days and was questioned extensively about social-media use, nicotine and substance use, and the very subjects Defendants now say require re-examination; Defendants confronted Plaintiffs with social-media communications at those depositions. Defendants' new catalogue of "obviously material evidence" or potentially impeaching material does not change the analysis. It concerns subjects Defendants already explored, and Defendants remain free to argue the significance of any later-produced document to the factfinder without a second deposition. To the extent a discrete, genuinely new document warrants limited inquiry as to a particular Plaintiff, the proportionate course is a narrowly targeted supplemental examination on a document-specific basis—not a blanket, five-hour reopening of seven depositions, with the attendant cost, delay, and burden on Plaintiffs, several of whom have already produced deeply sensitive personal, psychological, and family-trauma records. Defendants' "we would have done it differently" rationale is not a basis for wholesale re-deposition; at most it is an argument for tailored relief, if any.

Every request Defendants make is framed as something this Court must resolve "before it suggests remand." Not so. The Court should reject Defendants' transparent attempt to keep these cases at a standstill and hold them indefinitely. What remains, if anything, is a set of case-specific disputes that the seven receiving courts are fully capable of resolving alongside the rest of pretrial and trial practice. Plaintiffs respectfully request that the Court deny Defendants' requests and proceed with a suggestion of remand in all remaining cases.

Dated: September 3, 2026

Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
Scott P. Schlesinger, (*pro hac vice*)
Jonathan R. Gdanski, (*pro hac vice*)
Jeffrey L. Haberman, (*pro hac vice*)
**SCHLESINGER LAW OFFICE, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33317
Tel: (954) 467-8800
scott@schlesingerlaw.com
jgdanski@schlesingerlaw.com
jhaberman@schlesingerlaw.com

*Attorneys for Plaintiffs*

By: */s/ Timothy J. McGinn*
Timothy S. Danninger (pro hac vice)
Timothy J. McGinn (pro hac vice)
**GUNSTER, YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Telephone: (904) 354-1980
tdanninger@gunster.com
tmcginn@gunster.com

*Attorneys for Defendant Juul Labs, Inc.*

By: */s/ Jason A. Ross*
John C. Massaro (admitted pro hac vice)
Jason A. Ross (admitted pro hac vice)
David E. Kouba (admitted pro hac vice)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999
john.massaro@arnoldporter.com
jason.ross@arnoldporter.com
david.kouba@arnoldporter.com

*Attorneys for Defendants Altria Group, Inc., Philip Morris USA Inc., Altria Client Services LLC, Altria Group Distribution Company, Altria Enterprises LLC*

By: */s/ Michael J. Guzman*
Mark C. Hansen (pro hac vice)
Michael J. Guzman (pro hac vice)
David L. Schwarz (CA Bar No. 206257)
**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**
1615 M. Street, NW, Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

*Attorneys for Defendants Nicholas Pritzker, Hoyoung Huh, and Riaz Valani*

By: */s/ Eugene Illovsky*
Eugene Illovsky
Kevin Calia
**ILLOVSKY GATES & CALIA LLP**
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643
eugene@illovskygates.com
kevin@illovskygates.com

*Attorneys for Defendant Adam Bowen*

By: */s/ Kevin Askew*
James Kramer
Catherine Malone
Kevin Askew
**ORRICK HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
jkramer@orrick.com
cmalone@orrick.com
kaskew@orrick.com

*Attorneys for Defendant James Monsees*

**Appendix A**

Social Media Accounts Plaintiffs Say They Cannot Access

| Account Holder | Account Type | Username |
| --- | --- | --- |
| Aragona, Cole | Facebook | profile.php?id=100007145356921 |
| Aragona, Cole | Facebook | profile.php?id=100012340142165 |
| Cunningham, Victoria | Facebook | forever.toriii |
| Cunningham, Victoria | Instagram | tori_girl_123 |
| Cunningham, Victoria | Instagram | tori2197 |
| Cunningham, Victoria | Instagram | victoriafaith.sk8s |
| Cunningham, Victoria | Snapchat | vfaith.c |
| Cunningham, Victoria | Threads | vfaithc |
| Cunningham, Victoria | VSCO | vfaithc |
| Dupree, Jordan | Instagram | aye_its_noname |
| Dupree, Jordan | TikTok | jorjor94 |
| Tortorici, Matthew | Snapchat | mattymtor8 |

**Appendix B**

Email and Social Media Accounts Plaintiffs Refuse to Search Without Explanation

| Account Holder | Account Type | Username |
|---|---|---|
| Aragona, Cole | Threads | coleja35 |
| Cunningham, Victoria | TikTok | victoriafaith.c |
| Dupree, Jordan | Facebook | jordan.dupree.169 |
| Legacki, Bailey | Threads | baileylegacki |
| Legacki, Bailey | TikTok | [account name undisclosed] |
| Legacki, Bailey | Tumblr | baileylegacki |
| NesSmith, Erin | Facebook | breathebetweenbattles |
| NesSmith, Erin | Facebook | erin.nessmith.1 |
| NesSmith, Erin | Facebook | erin.nessmith.3 |
| NesSmith, Erin | Facebook | erin.nessmith.9 |
| NesSmith, Erin | Facebook | https://www.facebook.com/profile.php?id=100086449578377 |
| NesSmith, Erin | Threads | erin_breathebetween |
| NesSmith, Erin | TikTok | erinn54 |
| NesSmith, Erin | X | erinn54 |
| NesSmith, Jared | Facebook | jared.nessmith |
| NesSmith, Jared | Instagram | idnezzy2323 |
| NesSmith, Jared | TikTok | idnezzy23 |
| NesSmith, Jared | X | idnezzy23 |
| NesSmith, Jared | YouTube | idnezzy |
| Sedgwick, Carson | Facebook | Pristine Powersports |
| Sedgwick, Carson | Instagram | pristinepowersportsga |
| Tortorici, Matthew | Email | mattymtortor@gmail.com |

**Appendix C**

NesSmith Accounts Plaintiffs Belatedly Sought and Have Not Yet Produced

| Account Holder | Account Type | Username |
|---|---|---|
| NesSmith, Ashlynn | Email | anezzyb2323@gmail.com |
| NesSmith, Ashlynn | Instagram | ashlynn.nessmith |
| NesSmith, Ashlynn | Instagram | ashlynn.spam_pics |
| NesSmith, Ashlynn | Instagram | ashlynn2354 |
| NesSmith, Ashlynn | Instagram | ashlynn.softball23 |
| NesSmith, Ashlynn | Instagram | ashlynnz.spamz |
| NesSmith, Ashlynn | TikTok | ash_lyn2354 |
| NesSmith, Ashlynn | TikTok | ashlynn.nessmith |
| NesSmith, Ashlynn | YouTube | ashlynnnessmith7278 |