[*Counsel listed in signature block*]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE: JUUL LABS, INC., MARKETING SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION

This Document Relates to:

*Erin NesSmith et al. v. Juul Labs, Inc. et al.*, Case No. 3:19-cv-06344-WHO

*Bailey Legacki v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01927-WHO

*Cole Aragona v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01928-WHO

*Matthew Tortorici v. Juul Labs, Inc., et al.* Case No. 3:20-cv-03847-WHO

*Jordan Dupree v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03850-WHO

*Carson Sedgwick v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03882-WHO

*Jennifer Lane et al. v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-04661-WHO

Case No. 3:19-md-02913 (WHO)

Hon. William H. Orrick

**JOINT STATEMENT REGARDING NICHOLAS PRITZKER'S PRODUCTION OF DOCUMENTS**

This joint statement addresses the parties' dispute concerning Defendant Nicholas Pritzker's production of documents.

**Plaintiffs' Position:** A communication Mr. Pritzker was obligated to produce became public not through his production, but through the Department of Justice's release of Jeffrey Epstein's files. Plaintiffs' first set of requests required Pritzker to produce all documents relating to the potential for, or actual creation of, any business relationship between him or JLI and any tobacco entity (RFP 9); all documents reflecting any tobacco entity's role in JLI's operations (RFP 10); documents sufficient to show his investments in and ownership of JLI (RFP 11); and all communications regarding JLI's past performance, valuation, or anticipated future performance (RFP 33). Ex. 1. The requests define JLI to include its predecessor Ploom, Inc., define tobacco entity to include Japan Tobacco International, and set the relevant period as running from Pritzker's first communication with JLI to the present. *Id.*, Defs. 6, 11; Instr. 2. The agreed search terms applied to his accounts included "Ploom." Exs. 2, 3. Pritzker's January 27, 2014 email to Jeffrey Epstein contains that term and is responsive to those requests. It was not produced.

The email is responsive on its face. Pritzker told Epstein that Ploom "is owned 15% by us, 25% by Japan Tobacco International"; that the companies he listed "will be raising at least some additional capital before IPO or sale (god willing), although I cannot speak to whatever the valuations will be at the time"; and that Ploom "will be raising another, hopefully final round soon." Ex. 4. That passage discloses a business relationship between JLI and a tobacco entity and that entity's role in the company (RFPs 9, 10), Pritzker's ownership (RFP 11), and JLI's valuation and anticipated performance (RFP 33) (touting JLI as "really interesting technology," "huge rising market"). Pritzker's answers do not engage the requests as written: RFP 9 asks not for communications with a tobacco entity but for documents relating to a business relationship between JLI and one, and his position that he said nothing of "valuation" cannot be reconciled with his own words. Whether the email is labeled a solicitation is beside the point.

Nor is it the "single document" Pritzker describes; it is the first message in a chain that continued that day. Hours after describing Ploom's ownership and coming round, Pritzker asked to bring Craig Robins to Epstein's residence the next morning, answered "We will be there!", and copied Robins at his business address. Ex. 4. Robins appears on JLI's investor list at $1,000,000

with "Nick" as the assigned owner, Ex. 5; appears in the May 2015 closing allocations, Ex. 6; and funded $500,003.34 through CR PAX LLC for 129,871 shares of JLI stock, Ex. 7. Pritzker thus brought the company's own prospect — a man who did invest in JLI — to a meeting with the recipient of that email. The reasonable inference is that investment in Ploom was a subject of the meeting, and it cannot be tested against a production that omitted the communication.

Pritzker's remaining contentions fail. Cumulativeness is not the test for production, and he identifies no produced document reflecting this disclosure to this recipient, or the meeting that followed within hours. The asserted 2015 relevance cutoff appears nowhere in the requests, was his counsel's own construct, and is contradicted by his own production of pre-launch Ploom materials. And Epstein was not a random recipient of an eight-company list: the two men had a personal and business relationship running at least from 2009.[1] Rule 403 governs the admission of evidence at trial; it is not a standard for withholding responsive documents in discovery. *See* Fed. R. Civ. P. 26(b)(1).

The adequacy of Pritzker's production is now in doubt. Counsel confirmed the email exists in Pritzker's collection, from which documents were produced in this MDL. If the agreed terms were applied as represented, either Pritzker withheld the communication from his attorneys or his attorneys withheld it from production; if they were not, the production is deficient on its face. Either way, if a document containing an agreed term never reached the production, Plaintiffs

[1] In June 2009, before Epstein's release, Pritzker urged him to attend an Edge Foundation conference, asking whether there was "any chance you can break free (if you pardon the expression) and come??" and telling him, "Looking forward to having you back in circulation!" EFTA00882120. In December 2009 Epstein asked Pritzker to "take good care of" the daughter of his "good friend from jpm" at a Los Angeles physics conference; Pritzker answered, "no problem. I'll look after her." EFTA02432734. In July 2011 Pritzker asked, "Are you really coming to napa??"; Epstein answered that he would be there "and to dinner on sunday, really looking forward to catching up," EFTA02035676, and Epstein circulated a guest list for that Sunday's San Francisco dinner naming both "Nick Pritzker" and "Mrs. Nick Pritzker," EFTA00915551. In July 2012 Pritzker told Epstein's assistant to "[t]ell him as soon as the Grand is finished it will be his home in SF," and asked whether Epstein was "available while he's in SF." EFTA00408010. In September 2012 Epstein wrote, "your musk boys told me you are in town come see me, sat? sun?," EFTA01888006, and Epstein's schedule for that Sunday in New York lists a tentative one o'clock appointment with him, EFTA02026391. In January 2014 Pritzker attended a dinner Epstein hosted on January 26, EFTA02116937, EFTA02396165, wrote the email at issue on January 27, and came to Epstein's New York residence the morning of January 28, EFTA00375242, EFTA01939621. Ex. 8. *See also* Ex. 9 (July 2009: after Epstein reported he was "free and home," Pritzker replied he was "really happy" Epstein was "OUT" and suggested they "celebrate").

cannot know what else did not. His later Epstein-specific search is not curative: it does not capture responsive documents having nothing to do with Epstein. Plaintiffs' production differs. Plaintiffs showed they painstakingly worked to produce responsive documents. Pritzker won't even explain why the communications were withheld and won't identify accounts.

Mr. Pritzker's "numerical control of the Board, knowledge about JUUL's youth appeal and growth of underage users, . . . and unusually active role[] in management and decisions from which [he] profited billions of dollars" were among the reasons this Court found him subject to personal jurisdiction anywhere JUUL was sold. That this material was withheld raises the question of what else was.

Plaintiffs request an order requiring Mr. Pritzker to identify every account he used for business and personal communications, state whether each was searched applying the agreed terms, identify why the January 27, 2014 email was excluded, and produce all responsive documents not yet produced. Plaintiffs further request a hearing. This deficiency cuts across all cases, the Court should resolve it before remanding the Opt Out cases.

**Defendants' position:** Mr. Pritzker met his discovery obligations. After negotiations with Plaintiffs' leadership, he produced thousands of records starting in 2021. No dispute has ever arisen regarding Mr. Pritzker's production – until now. The single document Plaintiffs identify is not responsive or material, and its non-production does not show that Mr. Pritzker's search was deficient. Even so, he offered to produce it (Plaintiffs declined) and has already ensured that no other similar documents exist and should be produced. Plaintiffs' argument to re-do his discovery fails and applies even more to their deficient productions. Their motion should be denied.

**BACKGROUND**

Plaintiffs made document requests to Mr. Pritzker over six years ago. Given their overbreadth, Mr. Pritzker's counsel conferred "to narrow and clarify" them. Ex. 10, Responses to RFPs 9-10 and 33. Counsel also explained in 2020 that information before 2015 is "unlikely to be relevant" because JUUL was "not commercialized until June 2015." *Id.* at 5. Counsel used "search terms and human review" to identify responsive and relevant documents. Ex. 2 at 1.

Mr. Pritzker produced over 4,000 records, including over a hundred records hitting on the search term "Ploom." These records show Mr. Pritzker discussing Ploom and engaging with potential investors on occasion.[2] They also disclose Mr. Pritzker's understanding that Ploom had interesting technology and a good market, and that Ploom was raising money.[3]

In March 2026, Plaintiffs noted that Mr. Pritzker did not produce one document: a January 27, 2014 email to Jeffrey Epstein in which Mr. Pritzker summarizes some of the family office's investments and identifies Ploom as one of eight companies. The document does not solicit an investment from Mr. Epstein—and, to be clear, Mr. Epstein never invested in Ploom or JLI.

The parties met and conferred in March 2026. Mr. Pritzker's counsel offered to produce the document and also mentioned they had run a supplemental search for other similar documents (*i.e.*, documents mentioning Mr. Epstein and Ploom or JUUL). None were located. Plaintiffs then dropped the issue until August 2026, when they made these additional demands after Defendants continued to press on production deficiencies in Plaintiffs' discovery.

## ARGUMENT

### I. The Document That Plaintiffs Cite Is Not A Discovery Deficiency

Mr. Pritzker's production is not deficient. RFP 11 is a sufficient-to-show request and does not require production of a given document. And the remaining RFPs do not fit. Mr. Pritzker said nothing to Mr. Epstein about JLI or Ploom's "performance" or "valuation." RFP 33. The document describes existing investments and does not concern the "potential for" or "actual

[2] *See*, *e.g.*, MDL_NP015905 (invitation for call with a potential investor concerning Ploom); MDL_NP013156 (2014 draft Ploom investor letter).

[3] *See*, *e.g.*, MDL_NP000014 (pitch deck recognizing Ploom's market leadership); MDL_NP007748 (Ploom financing deck).

creation of" a business relationship between Mr. Pritzker or JLI and any tobacco entity. RFP 9. The document says nothing about a "tobacco entity's role in JLI's business operations." RFP 10.

The document is not material either. It shows that, in early 2014—well before JUUL was commercialized—Mr. Pritzker told Mr. Epstein that Ploom was one of eight companies in which his family office invested. Plaintiffs do not argue otherwise and dropped this issue for months.[4]

Finally, the document is cumulative. In a prior draft of this statement, Plaintiffs conceded it "is materially indistinguishable from other documents that Pritzker produced." Its only differentiator is Mr. Epstein, who has no substantive relevance to the litigation other than the potential for reputation taint. *See* Fed. R. Evid. 403. Plaintiffs' footnote 1—which lists communications that have no connection to these cases—makes the reputational issue clear.

Just because the document contains the term "Ploom" does not mean Mr. Pritzker had to produce it. He agreed to use search terms and human review to identify and produce responsive and relevant documents, not to produce all documents mentioning search terms. Ex. 2 at 1.

**II. Plaintiffs' Requested Relief Is Unwarranted**

Mr. Pritzker addressed all genuine alleged deficiencies. His counsel offered to produce the document and did a supplemental search to confirm that no other, similar documents exist and should be produced. Those actions went beyond Plaintiffs' demands in March 2026; if they believed more was needed, they should have said so. Instead, months passed before they escalated their demands in response to pressure on their own production deficiencies.

The current demands lack merit. Mr. Pritzker need not re-do his years-old document search or review: because "[t]he standard for evaluating discovery is reasonableness, not perfection," non-production of "a single relevant document . . . hardly demonstrates that the search was

[4] The document does not relate to personal jurisdiction; no case will be remanded to New York.

flawed." *Agerbrink v. Model Serv. LLC,* 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017). A re-deposition of Mr. Pritzker also is unwarranted because the document is irrelevant.

Plaintiffs throw stones from a glass house. The Court's order requiring them to produce email and social media revealed they were collectively withholding almost *20,000* records, and they still refuse to sit for continued depositions. If that "raises the question of what else was withheld"—as Plaintiffs said in a prior draft—then it is Plaintiffs whose productions are in doubt.

Dated: September 10, 2026

Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
Scott P. Schlesinger, (*pro hac vice*)
Jonathan R. Gdanski, (*pro hac vice*)
Jeffrey L. Haberman, (*pro hac vice*)
**SCHLESINGER LAW OFFICE, P.A.**
1212 SE Third Avenue
Fort Lauderdale, FL 33317
Tel: (954) 467-8800
scott@schlesingerlaw.com
jgdanski@schlesingerlaw.com
jhaberman@schlesingerlaw.com

*Attorneys for Plaintiffs*

By: */s/ Michael J. Guzman*
Mark C. Hansen (pro hac vice)
Michael J. Guzman (pro hac vice)
David L. Schwarz (CA Bar No. 206257)
**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**
1615 M. Street, NW, Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

*Attorneys for Defendants Nicholas Pritzker, Hoyoung Huh, and Riaz Valani*