Timothy S. Danninger (admitted *pro hac vice*)
Timothy J. McGinn (admitted *pro hac vice*)
*Attorneys for Juul Labs, Inc.*
GUNSTER, YOAKLEY & STEWART, P.A.
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Tel.: (904) 354-1980
tdanninger@gunster.com
tmcginn@gunster.com

*Attorneys for Defendant Juul Labs, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: JUUL LABS, INC., MARKETING SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

**This Document Relates to**

*Erin NesSmith et al. v. Juul Labs, Inc., et al.*, Case No. 3:19-cv-06344-WHO

*Bailey Legacki v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01927-WHO

*Cole Aragona v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01928-WHO

*Matthew Tortorici v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-03847-WHO

*Jordan Dupree v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03850-WHO

*Carson Sedgwick v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03882-WHO

*Jennifer Lane et al. v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-04661-WHO

Case No. 3:19-md-02913-WHO

**Defendants' Opposition to Plaintiffs' Motion to Modify Protective Order and Require Defendants to Show Good Cause for Continued Confidentiality**

Re: Dkt. Nos. 1282, 4519 (No. 3:19-md-02913-WHO)

Hearing: November 4, 2026, at 2: p.m.
Department: Courtroom 2, 17th Floor
Judge: Hon. William H. Orrick

The Court's stipulated protective order has governed discovery in this MDL for seven years. JLI and the Altria Defendants have produced more than 10 million documents (and more than 33 million pages) in reliance on its terms. Now, with generic discovery closed and "few, discrete issues" left before this Court suggests remand of the seven remaining actions, ECF No. 4517, Plaintiffs ask the Court to strip Defendants (and countless retailers, wholesalers, and third-parties) of the protective order's safeguards—to force the producing party to re-review millions of documents and re-litigate its confidentiality designations before this Court document by document in 45 days. *See* ECF No. 4519 (Mot.) at 12 (asking the Court to resolve disputes by "mak[ing] specific findings for each document"). Re-writing the rules governing access to and use of confidential documents, as Plaintiffs propose, would impose millions of dollars in unnecessary costs on Defendants and other producing parties, distract counsel from preparing these actions for trial, and waste the Court's limited time and resources.

Indeed, Plaintiffs' request benefits no one. Plaintiffs do not claim that the protective order hinders their litigation of these actions or parallel actions (under substantially identical protective orders) in state courts. And the public would not benefit either. Those *actually* elected to represent the public (the attorneys general of 10 states) have struck the balance, in certain consent judgments, between public disclosure of MDL documents and protection of trade secrets, personally identifiable information, and other confidential information. In accordance with the terms of those consent judgments, JLI placed unredacted and (in, many instances) redacted portions of its MDL productions into a public depository and withheld millions of documents in their entirety, either because they were not eligible for the depository under the terms of the consent judgments or because they fell into an agreed exclusion. Between the withheld and redacted documents, ***approximately half*** of JLI's MDL productions remain confidential pursuant to the protective order.

Plaintiffs cite no case in which a court has terminated wholesale a stipulated protective order at a party's request years into the litigation and thereby deprived the producing parties of the confidentiality and other protection they bargained for. And no argument that Plaintiffs make

would justify the extraordinary relief they seek. The Court should affirm the protective order that has governed discovery in these actions for more than seven years and hold Plaintiffs to the conditions they agreed to as a condition of using the documents Defendants and others have produced.

## BACKGROUND

### A. The MDL Protective Order and Resulting Discovery.

Before any party to this MDL produced discovery, the Court entered a stipulated protective order governing the production, dissemination, and use of confidential, proprietary, or private information. ECF No. 308 ("MDL Protective Order"). The MDL Protective Order was amended just once, and solely to increase its protections by adding an outside-counsel-only designation. *Compare* MDL Protective Order ¶ 24 (including only "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as available designations) *with* ECF No. 1282 ("Am. MDL Protective Order") ¶ 25 (adding "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" as an available designation).

In Plaintiffs' words, the MDL Protective Order was a "bargain": Defendants gained the right to produce documents without a detailed confidentiality review and could, in some cases, bulk-designate documents. In exchange, Plaintiffs received faster and more voluminous productions and the ability to later challenge Defendants' designations of specific documents. *See* Am. MDL Protective Order ¶ 31.

The Amended MDL Protective Order sets the process for challenging confidentiality designations. *See* Am. MDL Protective Order ¶¶ 35–38. It is the ***Challenging Party's*** duty to provide written notice to the Designating Party of an objection to a document's designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY." *Id.*

Plaintiffs claim they need only "honor the defendants' 'confidential designations'" during discovery. Mot. at 3. But as Plaintiffs well know, the Amended MDL Protective Order's provisions have no expiration date, nor would Defendants have ever agreed to them if they did.

Defendants produced a tremendous amount of discovery under the MDL Protective Order. JLI produced nearly ***10 million documents***, comprising more than ***33 million pages***, to Plaintiffs and similarly situated litigants. During the same period, the Altria Defendants produced more than ***875,000 documents***, comprising more than ***6.6 million pages***. Manufacturer defendants Mother Murphy's Laboratories, Inc., Alternative Ingredients, Inc., Tobacco Technology, Inc., and eLiquiTech, Inc. produced more than 34,000 documents, comprising more than 469,000 pages. Wholesaler defendants McLane Company, Inc., Eby-Brown Company, LLC, and Core-Mark Holdings Company, Inc., produced more than 99,000 documents, comprising more than 543,000 pages. Retailer defendants Circle K Stores, Inc., Speedway, LLC, and 7-Eleven, Inc., produced more than 538,000 documents, comprising approximately 2.1 million pages.

Plaintiffs and non-parties to the MDL also produced documents under the MDL Protective Order. Non-party government entities, including health departments, schools, and school districts, produced confidential records in response to subpoenas. Age-verification service provider Veratad Technologies, consultant McKinsey & Company, and non-party vapor companies did, too.

The parties produced these documents in reliance on the terms of the stipulated MDL Protective Order. Defendants and non-parties designated millions of documents—containing trade secrets, non-public communications with regulators and other governmental bodies, information subject to various privacy laws, personally identifiable information, and other confidential, secret, or sensitive information—as confidential, highly confidential, and outside counsel only.

These documents include very sensitive and highly confidential information. For example, JLI produced documents concerning its design, manufacturing, and quality control processes; information about the ingredients in the JUUL e-liquid and the sources of the ingredients; engineering documents, schematics, and other design drawings for the JUUL device, JUULpods,

and related components; and countless instances of employees' and customers' personally identifiable information. *See, e.g.*, Ex. D, JLI42297900; Ex. E, JLI42421666; Ex. F, JLI00511791; Ex. G, JLI21624179. Altria's production likewise includes confidential financial analysis and valuation methodologies, customer-specific pricing, and contractual terms that remain commercially sensitive. Defendants and other producing parties would not have produced these confidential documents and trade secrets—or, at a minimum, would have vigorously opposed their production—without the MDL Protective Order.

**B. The UCSF Depository.**

Plaintiffs imply that all, or the vast majority of, the documents JLI and others produced in the MDL are already public. That is false. As part of its resolution of claims brought by 10 states' attorneys general, JLI agreed to make available through a public document depository (the "UCSF Depository") a subset of its MDL productions. Numerous other defendants and third parties have not placed *any* documents in the UCSF Depository. And the attorneys general agreed to date and subject-matter restrictions on the documents JLI would place in the UCSF Depository.

***Date restrictions.*** The attorneys general agreed that JLI need not place documents created on or after September 14, 2019, in the UCSF Depository. Under the North Carolina consent judgment, only documents created on or before May 14, 2019, that JLI or a co-defendant had produced to the state were potentially eligible for publication through the UCSF Depository. *See* N.C. Consent Judgment ¶ 35.[1] Under the consent judgments with nine other states, only documents created on or before September 14, 2019, that JLI (including Bowen, Monsees, Huh, Pritzker, and Valani) or certain Altria Defendants had produced were potentially eligible for publication. *See, e.g.*, N.Y. Consent Judgment ¶¶ 1(j), 43; MN Consent Judgment ¶¶ 1(n), 45.[2]

---

[1] Available at https://ncdoj.gov/wp-content/uploads/2021/06/2021-06-28-JUUL-Consent-Judgment.pdf.

[2] Available at https://ag.ny.gov/sites/default/files/settlements-agreements/state-of-new-york-v-juul-labs-inc-and-james-monees-and-adam-bowen-consent-order-and-judgment-2023.pdf.

Under the consent judgments, the attorneys general also had an opportunity to identify certain types of documents postdating the date cutoffs for potential publication. *See, e.g.*, MN Consent Judgment ¶ 1(j). The Minnesota attorney general was also permitted to make available to the UCSF Depository the "transcripts, recordings, exhibits, and other documents introduced or associated with trial in" his suit against JLI and certain Altria Defendants. *Id.* ¶ 49. The attorneys general availed themselves of these limited exceptions to the date cutoff, and no additional JLI documents created on or after September 14, 2019, will be added to the UCSF Depository.

***Subject-matter restrictions.*** The attorneys general agreed that JLI would not place any documents containing trade secrets or certain other confidential information in the UCSF Depository—even if the documents fell within the above date ranges. Each consent judgment expressly authorized JLI to redact or withhold entirely from the UCSF Depository documents containing:

a. Privileged information or attorney work product;

b. Trade secret material;

c. Confidential tax information;

d. Confidential personal information and JLI personnel files;

e. Information that may not be disclosed under federal, state, or local law;

f. Information that cannot be disclosed without violating the contractual rights of third parties that JLI may not ultimately abrogate; and

g. Information regarding personal/professional matters unrelated to JLI or ENDS.

*See, e.g.*, NC Consent Judgment ¶ 35; NY Consent Judgment ¶ 43; MN Consent Judgment ¶ 45; UCSF Industry Documents Library, Redacted Documents Website.[3]

[3] Available at https://www.industrydocuments.ucsf.edu/help/redacted/.

Given the burden of re-reviewing the millions of documents JLI had produced in the MDL, the attorneys general gave JLI ***12 months*** (NC) and ***16 months*** (the other nine states) to identify documents containing information falling within one or more of these seven exempt categories. *See, e.g.*, NC Consent Judgment ¶ 35(b); MN Consent Judgment ¶ 45(d); N.Y. Consent Judgment ¶ 43(e). The attorneys general then had an opportunity to challenge any of JLI's redactions or withholdings, but that time has long passed. *See, e.g.*, NC Consent Judgment ¶ 35(b); MN Consent Judgment ¶ 45(d); N.Y. Consent Judgment ¶ 43(e). The consent judgments also made clear that Defendants' inadvertent failure to redact or withhold documents from the UCSF Depository did not waive any confidentiality rights or prevent Defendants from later redacting or clawing back a document. *See, e.g.*, NC Consent Judgment ¶ 35(d); MN Consent Judgment ¶ 45(c); N.Y. Consent Judgment ¶ 43(d).

JLI withheld from the UCSF Depository millions of documents it produced in the MDL, including documents created after September 14, 2019 as well as documents containing trade secrets or other confidential or privileged information. Additionally, JLI and UCSF have redacted over a million of the documents in the UCSF Depository's Juul Labs Collection. *See* UCSF Industry Documents Library, Redacted Documents Website (stating that UCSF has committed to apply redactions "as needed to safeguard individual privacy"). In sum, as of today, approximately 5 million documents that JLI has produced in this MDL—approximately half its production—are not publicly available, either in whole or in part, and are entitled to continued protection under this Court's Amended Protective Order.

**C. The MDL Global Settlement.**

In December 2022, JLI and counsel for the MDL plaintiffs reached a global, opt-in settlement to resolve personal injury claims against JLI and certain other defendants. The Court entered a case management order establishing a process for individual plaintiffs to participate in the settlement and a separate case management order governing the claims of those plaintiffs who chose not to participate. *See generally* ECF No. 3714 (CMO No. 16); ECF No. 3780 (CMO No.

17). In May 2023, Altria reached a similar agreement with counsel for the MDL plaintiffs, and Judge Orrick entered similar case management orders governing the litigation of any remaining claims against the Altria Defendants. *See generally* ECF No. 4111 (CMO No. 18); ECF No. 4112 (CMO No. 19). The moving Plaintiffs did not opt into either settlement.

Plaintiffs' counsel have repeatedly and unsuccessfully sought to circumvent their obligations under the Court's Protective Order (and, now, Amended Protective Order) in other forums. CMO No. 9, the Court's stipulated Joint Coordination Order, provides that counsel "may access and download documents" JLI and Altria have produced "in accordance with the terms of the MDL Protective Order or its substantial equivalent . . . ." ECF No. 572 (CMO No. 9) at 3. But the remand plaintiffs in *McKnight*, *Shapiro*, and *Fay*—all represented by Schlesinger Law Offices—have sought to use the documents JLI and Altria produced while opposing entry of protective orders "substantial[ly] equivalent" to this Court's Amended Protective Order.[4] In *McKnight* and *Shapiro*, the courts entered protective orders substantially equivalent to the Amended MDL Protective Order over plaintiffs' objections and arguments, all of which Plaintiffs repeat here.

## ARGUMENT

The Court should deny Plaintiffs' motion for two reasons. First, Plaintiffs' motion is an improper attempt to renege on the conditions under which they received Defendants' and others' productions. Courts in this circuit and elsewhere have rejected Plaintiffs' arguments, and none of the cases Plaintiffs cite supports their attempt to undo a protective order they negotiated, agreed to, and benefitted from. Second, Plaintiffs cannot show good cause to modify the protective order,

[4] *See, e.g.*, Plaintiffs' Response to Defendants' Motion for Protective Order, *McKnight v. Juul Labs, Inc., et al.*, No. 2020-CA-001116-O (Fla. 9th Cir. Ct.), attached as **Exhibit A** (arguing the MDL Protective Order should not be honored); Plaintiffs' Response to Defendants' Motion for Protective Order, *Shapiro v. Juul Labs, Inc., et al.*, No. CACE-19-010866 (Fla. 17th Cir. Ct.), attached as **Exhibit B** (same); Status Conference Order, *Fay v. Juul Labs, Inc., et al.*, No. 159047/2019 (N.Y. Sup. Ct.), attached as **Exhibit C** (granting defendants leave to move for protective order substantially equivalent to MDL Protective Order because plaintiffs will not stipulate to same).

and, although Defendants need not show good cause, they would easily meet that standard. Defendants would suffer real and particularized harms from the wholesale de-designation and publication of their confidential documents, and their private interests in maintaining confidentiality far outweigh any alleged public interest in *further* access, given the balance the attorneys general of 10 states have already struck in making certain documents public through the UCSF Depository.[5]

## I. PLAINTIFFS ARE ESTOPPED FROM MOVING FOR WHOLESALE DECLASSIFICATION OF CONFIDENTIAL DOCUMENTS.

Plaintiffs—parties to and longtime beneficiaries of a stipulated protective order—cannot use motion practice to circumvent the confidentiality challenge procedures they agreed to here. Forcing Defendants to re-review and re-designate millions of produced documents in the MDL within 45 days, Mot. at 12—a task that the states' attorneys general recognized could take a year or more (*see, e.g.*, NC Consent Judgment ¶ 35(b) (12 months); MN Consent Judgment ¶ 45(d) (16 months); N.Y. Consent Judgment ¶ 43(e) (16 months))—would deprive Defendants of the *quid* in the MDL Protective Order's *quid pro quo*: bulk designation, subject to a specified challenge procedure, in exchange for speed and volume of production. At any time, Plaintiffs could have invoked the procedure they agreed to for challenging confidentiality designations on a document-by-document basis. *See* Am. MDL Protective Order ¶¶ 35–38. But they chose to put their resources elsewhere. *See* Mot. at 5 ("plaintiffs devoted their resources to litigating and resolving claims rather than policing designations"). In fact, Plaintiffs have *never* challenged the confidentiality of *any* of Defendants' documents using the MDL Protective Order's challenge procedure.

As courts in this circuit and elsewhere have recognized, a represented party should not be permitted to game the discovery process by agreeing to the terms of a protective order—including

[5] As the Altria Defendants argue, the Court should also deny Plaintiffs' motion because they did not meet and confer before filing it.

a specific challenge procedure for disputes concerning the protections invoked for particular documents—and then circumventing that order to divest another party's documents of the protections to which the movant consented. *See In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 163–65 (N.D. Cal. 1992) (denying plaintiffs' request for "wholesale declassification of confidential documents" produced under stipulated protective order the "parties negotiated and relied on throughout th[e] case," and requiring plaintiffs to use procedures outlined in the agreed protective order to challenge designations); *Johnson v. City & Cnty. of San Francisco*, 2012 WL 104635, at *3 (N.D. Cal. Jan. 12, 2012) (rejecting plaintiffs' attempt to nullify entire stipulated protective order and directing plaintiffs to use the "procedures set forth" in the agreed order to challenge specific document designations); *Omega Homes, Inc. v. Citicorp. Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987) (denying plaintiffs' motion to "rewrite the terms of the stipulated order and apply them retroactively" and specifically rejecting plaintiffs' inducement of "broad disclosure under a set of ground rules" and subsequent request that the court later "come in and change those rules"); *see also Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 334–35 (M.D.N.C. 1999) ("It is not appropriate to allow a party to agree to a protective order, only to attempt to undo their agreement at the last possible moment. . . . Plaintiffs agreed to the order, failed to object to confidentiality designations, and only now seek to raise public access arguments. When a motion is brought by a party who is represented by counsel who agreed to the terms of a protective order, that party is estopped from raising access arguments that they bargained away.") (citation modified); *Burke v. Glanz*, 2013 WL 211096, at *3–4 (N.D. Okla. Jan. 18, 2013) (rejecting without a good cause analysis plaintiffs' request to modify stipulated order because plaintiffs agreed "to a protective order to assist in this case in order to expedite the discovery process" and had "received the benefit of this bargain by securing discovery without document-by-document fights").

None of Plaintiffs' cases require re-review and re-designation of productions as voluminous as those made here, where JLI and Altria (to say nothing of the manufacturer

defendants, the wholesaler defendants, the retailer defendants, and third-parties) have produced more than ***10 million*** documents and Plaintiffs seek re-designation of ***all*** of them, ***after*** discovery has closed and in contravention of an ***agreed*** order. Instead, Plaintiffs' cases generally deal with no more than a handful of documents—and none addresses a party's failure to use the challenge procedure to which the parties agreed. *See, e.g.*, *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1098 (9th Cir. 1999) (addressing the confidentiality of a single report); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1209 (9th Cir. 2002) (addressing the confidentiality of one exhibit); *Fierro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1205–06 (9th Cir. 2025) (addressing modifying party's interest in using "several" documents); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 421–22 (9th Cir. 2011) (addressing the confidentiality of 37 discrete personnel files and one punitive damages memorandum with exhibits); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 471 (9th Cir. 1992) (addressing merely six deposition transcripts).

The only case Plaintiffs cite involving a more extensive set of documents, *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003), is distinguishable. In that case, intervenors—not a party that had agreed to be bound by the protective order—moved to modify the order. *Id.* at 1128. The intervenors were litigants in a collateral action and sought to use the documents at issue in their related action, where they would have been subject to the "same use and disclosure restrictions contained in the original protective order." *Id.* at 1134. The Ninth Circuit held the district court had applied the wrong test and, in any event, the district court could have allowed the intervenors to access the documents "under the same use and disclosure restrictions contained in the original protective order." *Id.*

In fact, many of Plaintiffs' cited cases involve *intervenors*' motions to modify protective orders to which they did not agree—including, as in *Foltz*, motions where the intervenors seek to avoid duplicative discovery and to take the documents subject to the terms of the existing protective order, not to eviscerate the protective order as Plaintiffs do here. *See Beckman Indus.,*

*Inc.*, 966 F.2d at 475 (noting how "legitimate interests in privacy can be protected by putting the intervenors [in the related action] under the same restrictions as those contained in the original protective order").

Trial courts should not allow one party to use discovery as a weapon to harass another party or drive up its costs. *See Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1032 (9th Cir. 2012) ("[W]e [do not] encourage strategic gamesmanship in litigation to hinder development and impose costs unnecessarily."); *see also Hanney v. Epic Aircraft LLC*, 2023 WL 3302694, at *2 (D. Or. May 8, 2023) ("The Court will not suffer either parties' abuse of the discovery process as a litigation tactic."); *Bolick v. Pasionek*, 2011 WL 742237, at *3 (D. Nev. Feb. 24, 2011) ("The Court is cautious of transparent attempts to prolong litigation, open up spurious discovery issues, or that may unnecessarily waste time, expense, resources or cause undue prejudice."). That is what Plaintiffs are doing here. They know—and there can be no doubt—that the cost and burden of re-reviewing and re-designating millions of documents would impose extraordinary costs and burdens on JLI, Altria, former defendants, and third-parties without any benefit to Plaintiffs.[6]

Discovery of the MDL defendants closed years ago. After receiving the benefits of Defendants' expedited production under the stipulated MDL Protective Order, Plaintiffs now seek to deprive Defendants of the confidentiality and other protections that are their side of the deal. *See* Mot. at 5–6. Allowing Plaintiffs to use or disseminate discovery documents without the restrictions set forth in the MDL Protective Order, upon which Defendants relied in making their

[6] *See Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *7 (S.D. Fla. Sept. 4, 2013) (denying as not "workable, logical, or persuasive" party's blanket request that "designating party justify *every* single designation" without first identifying which documents were being challenged); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (finding that modification of a protective order "after substantial amounts of discovery have been designated and produced in reliance on the [order] would bring this matter to a virtual standstill and place significant additional burdens of time and expense on Defendants to review and re-designate previously produced discovery"); *see also Northrop Grumman Corp. Erisa Litig.*, 2017 WL 11685261, at *4 (C.D. Cal. Oct. 24, 2017) (finding even in the absence of good cause to maintain protective order that modifying party was required to review and identify the documents sought to be released).

productions, would undermine the integrity of the discovery process. Forcing Defendants and non-parties to re-do discovery would punish the producing parties for relying on the MDL Protective Order in the first place and reward Plaintiffs' gamesmanship. The Court should deny Plaintiffs' motion accordingly.[7]

## II. THERE IS GOOD CAUSE FOR MAINTAINING THE MDL PROTECTIVE ORDER.

Plaintiffs' motion also fails because, however they style their request for relief, they have not satisfied their threshold burden. Because Plaintiffs seek to modify the Amended MDL Protective Order by replacing its stipulated challenge process with document-by-document re-designation, they must show good cause. *See In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2024 WL 251404, at *8, *11 (N.D. Cal. Jan. 23, 2024) ("The party seeking the modification bears the burden of proving such good cause exists to modify the protective order.") (citing *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal. 2009)). Plaintiffs have not met that burden. As explained above, the current Amended MDL Protective Order does not hinder any party's litigation of the remaining actions, and the wholesale de-designation Plaintiffs propose, with document-by-document re-review of millions of documents, would impose severe burdens on all parties and the Court without any corresponding benefit to anyone.

Nor have Plaintiffs triggered Defendants' obligation to establish good cause as to any document. Defendants would bear that burden only after Plaintiffs "challenge[] the confidential designation of ***certain documents with particularity***," *Doe v. Uber Techs., Inc.*, 2022 WL 834316, at *1 (N.D. Cal. Mar. 21, 2022), and Plaintiffs have identified no such documents.[8] The Court should deny Plaintiffs' motion for this reason, too.

---

[7] Plaintiffs argue that "defendants' designations have never been systematically tested," Mot. at 5), but it was *Plaintiffs'* obligation to test them.

[8] Plaintiffs claim there are "many documents" that, by virtue of being the "same kind" of documents as those in the USCF Depository, are no longer confidential. Mot. at 5. But Plaintiffs

Even if Plaintiffs had shifted the burden of establishing good cause to Defendants, there is good cause for the Court to maintain the Amended MDL Protective Order's protections and procedures generally. A party may establish good cause by showing that "particularized harm will result from disclosure of [protected] information to the public" and that private interests in protecting the information outweigh public interest in disclosure. *Id.* (citation omitted). Here, Defendants will suffer particularized harm if their confidential documents are de-designated wholesale, and Defendants' privacy interests substantially outweigh any further public right of (or interest in) access.

**A. Defendants And Third Parties Will Suffer Particularized Harm If The Court Terminates The MDL Protective Order As Plaintiffs Propose.**

The MDL Protective Order protects against the disclosure of documents "that are entitled to confidential treatment under the applicable legal principles," including trade secrets, nonpublic communications with government entities, and sensitive personal and health information. Am. MDL Protective Order ¶ 4. This is precisely the sort of information that would cause particularized harm if released publicly. *See, e.g.*, *Unilin Beheer B.V. v. NSL Trading Corp.*, 2015 WL 12659918, at *4 (C.D. Cal. Jan. 8, 2015) ("Plaintiffs have adequately demonstrated that the disclosure of confidential business information, including, but not limited to, trade secrets would cause competitive harm to the parties and therefore have established good cause for a protective order."); *Johnson*, 2012 WL 104635, at *3 (finding under good cause standard that for unrepresented non-parties, "particularized harm would result from public disclosure of their personal information without their knowledge or consent").

Plaintiffs' primary argument against harm to Defendants is that that the MDL Protective Order has grown "stale." Mot. at 3. Not so. JLI and others have produced confidential, proprietary, and private information, including:

---

have not identified any such documents, nor have they established that any such documents cannot be addressed under the challenge procedures set out in the Amended MDL Protective Order.

a. Information protected from disclosure under various statutes and regulations;

b. Trade secrets;

c. Non-public communications with regulators or other governmental bodies that are protected from disclosure by statute or regulation, including JLI's Pre-Market Tobacco Product Application;

d. Information subject to federal, state or foreign data protection laws and other privacy obligations;

e. Personally identifiable information, like social security numbers, health information, tax information, credit card numbers, and personal email addresses; and

f. Non-public business and financial strategies and other competitively sensitive information.

All of this information is entitled to protection under federal and state law. *See, e.g.*, Mot. at 12 (conceding that private information should be redacted to protect third-party privacy interests); *Johnson*, 2012 WL 104635, at *3 (citation omitted) (noting that "third party individuals have a privacy interest in not having their names and personal information disclosed" and that these privacy interests are sufficient to justify designating documents as confidential); *Childs v. San Diego Family Hous., LLC*, 2020 WL 2512188, at *2 (S.D. Cal. May 14, 2020) (finding documents with confidential and proprietary business and financial information and government agreements contained protectable trade secrets); *In re Incretin-Based Therapies Prods. Liab. Litig.*, 2015 WL 11658712, at *3 (S.D. Cal. Nov. 18, 2015) (finding good cause to seal communications with the FDA and foreign regulatory agencies); *see also Sierra Club v. BNSF Ry. Co.*, 2014 WL 5471987,

at *2 (W.D. Wash. Oct. 29, 2014) (citing Fed. R. Civ. P. 26(c)(1)(G)) ("Trade secrets are specifically identified as warranting a protective order.").[9]

Plaintiffs' argument that the protections to which these documents are entitled have been eradicated because the documents are "already public" (and, thus, that no harm would result from their publication) is based on a faulty premise and has been repeatedly rejected by other courts. Only a subset of JLI's MDL productions have been made public, as explained above, and many other producing parties have not made any documents public. The millions of non-public JLI documents include JLI's Pre-Market Tobacco Product Application, documents that JLI cannot contractually release unilaterally, and trade secrets, among others. Limited public releases do not eliminate protections for documents that were not released. *Cf. Johnson*, 2012 WL 104635, at *3 (finding particularized harm would result from disclosure of confidential materials, and noting that, "[t]o the extent that Plaintiffs allege that Defendants have waived the confidentiality of specific documents by producing documents that contain the same or similar information, Plaintiffs should follow the procedures set forth in the protective order for challenging the confidential designation of a particular document"). Indeed, JLI has an ongoing and perpetual right to claw back any documents released in the UCSF Depository that should have been withheld because they fall within certain categories of confidential documents. *See, e.g.*, NC Consent Judgment ¶ 35(d); MN Consent Judgment ¶ 45(c); N.Y. Consent Judgment ¶ 43(d).

Other Schlesinger plaintiffs raised this same "already public" argument in objecting to the application of the MDL Protective Order in *McKnight* and *Shapiro*. *See* Ex. A at 8; Ex. B at 8. Both times, plaintiffs were overruled and the protective order was entered. *See Shapiro*, No.

[9] With respect to Defendants' positions vis-à-vis one another, the provisions of the MDL Protective Order were carefully crafted and negotiated. For example, because the Retailer and Distributor Defendants have unique competitive business relationships with one another, a multi-tiered protection strategy was necessary to ensure all the litigation's parties were adequately protected. Importantly, the Retailer and Distributor Defendants have not been parties for years. Undoing the MDL Protective Order now would require pulling them back in—and forcing them to review hundreds of thousands of pages of material—so that they may adequately protect their confidential information from their competitors.

CACE-19-010866 (Fla. 17th Cir. Ct. May 6, 2026) (Protective Order and Privilege Order); *McKnight*, No. 2020-CA-00116-O (Fla. 9th Cir. Ct. Feb. 23, 2026) (same).

Plaintiffs also make no attempt to explain how non-parties' and minors' privacy rights implicated by the documents have become "stale," nor could they: it is just the opposite. Enactments and proposed amendments during the pendency of the MDL reflect a trend toward ***stronger*** protections for minors and non-litigants from disclosure of their private information, not weaker.[10] In any event, courts recognize that the harm third parties would suffer as a result of the release of their private information is good cause for continued confidential treatment. *Johnson*, 2012 WL 104635, at *3.

Likewise, trade secrets do not automatically become stale merely by the passing of time, as Plaintiffs contend (Mot. at 8). *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 958 (8th Cir. 2007) ("Determination of when trade secret information becomes stale cannot be made by reference to a bright line rule and necessarily requires fact specific consideration."); *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 655 F. Supp. 3d 825, 845 (D.S.D. 2023) ("[T]he mere passage of time does not automatically render trade secret information stale."); *see also Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 758 F.3d 1051, 1057 (8th Cir. 2014) (finding passage of four years alone did not deprive confidential business documents of their economic value). Here, JLI's production includes engineering schematics (*e.g.*, Ex. D, JLI42297900) and design drawings (*e.g.*, Ex. E, JLI42421666), e-liquid ingredients and sources (*e.g.*, Ex. F, JLI00511791), and portions of JLI's Pre-Market Tobacco Product Application (*e.g.*,

---

[10] *See, e.g.*, Rhode Island Data Transparency and Privacy Protection Act, 6 R.I. Gen. Laws Ann. § 6-48.1-1 (effective Jan. 1, 2026); Arkansas Children and Teens' Online Privacy Protection Act, Ark. Code Ann. § 4-88-1601 (effective July 1, 2026); *see also* California Consumer Privacy Act, Cal. Code Regs. tit. 11, § 7001(bbb)(4) (recently amended to define personal information of minors under 16 as "sensitive"). A unanimous proposed amendment to Federal Rule of Civil Procedure 5.2 to enhance privacy protections in court filings, including for minors, is currently open for public comment. *See* Preliminary Draft, Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal and the Federal Rules of Evidence at 110, 130-36 (Aug. 2026), available at https://www.regulations.gov/document/USC-RULES-CV-2026-0003-0001.

Ex. G, JLI21624179). It cannot be disputed that the information in these documents is more valuable because it is not publicly known. *See Childs*, 2020 WL 2512188, at *2.

**B. Defendants' Private Interests in Maintaining Confidentiality Outweigh the Public Interest, Given the Already-Public UCSF Depository.**

Plaintiffs do not explain why public disclosure of Defendants' confidential documents is reasonably necessary for them to prosecute their private causes of action because it is unnecessary. Plaintiffs already have access to Defendants' documents and can use them as they see fit in prosecuting their claims. *See Pump Labs, Inc. v. Gui*, 2025 WL 1843254, at *2 (C.D. Cal. Mar. 13, 2025) (finding good cause to maintain confidential designations under stipulated protective order where plaintiffs could not explain how the "protective order impede[d] their ability to prove" their case).

Instead, Plaintiffs' appeals to "public interest"—as if their counsel were attorneys general—are disingenuous. The MDL Protective Order already struck the balance between the public's interest in the parties' and non-parties' private documents, producing parties' interests in protecting their trade secrets and confidential information, and the needs of the litigation—it facilitates speedy, voluminous discovery exchanges with an embedded right to challenge via specified procedure. MDL Protective Order at 1 (order entered "with a goal [of] moving this case forward in a speedy, collaborative, and efficient manner, while also balancing the public interest in access to information concerning the matters addressed in this litigation").

The alleged "public interest in understanding the youth vaping epidemic," Mot. at 8, has already been addressed by *actual* attorneys general—the public officials charged with promoting the public's interest, rather than the interests of private litigants like Plaintiffs. These attorneys general struck the balance between public disclosure and protection of trade secrets and other confidential and privileged information through the terms of the consent judgments that created the UCSF Depository—resulting in the public release of millions of documents and continuing confidential treatment for millions more. Upending this balance through wholesale repudiation of

the MDL Protective Order at the request of private litigants—who stipulated to a specific designation challenge procedure and are not hindered from prosecuting their own claims as a result of it—would not serve the public interest. It would only reward Plaintiffs' gamesmanship.

If Plaintiffs' argument is that Defendants should do as the *tobacco* industry did in the 1990s and publicly archive tobacco litigation documents, Mot. at 4, ***that is exactly what Defendants have already done***.[11] *See supra* 5-7. Plaintiffs cite dicta in *State ex rel. Humphrey v. Philip Morris Inc*., 606 N.W.2d 676, 692 (Minn. Ct. App. 2000), for the proposition that the public interest was served by the disclosure of documents relevant to antecedent tobacco litigation. But in that case, the court analyzed 39 specifically identified documents not already in the public domain for which confidentiality and privilege claims were challenged and held that they contained neither confidential nor privileged information and thus were subject to public disclosure. *Id.* at 695–96. *Humphrey* is nothing like this case, in which Plaintiffs have not identified with any specificity the documents subject to challenge and instead move for wholesale elimination of protections for millions of documents designated as confidential, highly confidential, or outside counsel's eyes only. Further, Plaintiffs' reliance on tobacco cases involving intentional concealment of information in a RICO "scheme to defraud"—and the publication of industry documents as punishment for it—is also misplaced; Plaintiffs' Motion is not premised on any remotely similar allegations. *See* Mot. at 10-11.

## CONCLUSION

The Court should deny Plaintiffs' motion.

[11] The tobacco-document research and disclosure orders Plaintiffs cite would not justify the production-wide confidentiality review they demand within 45 days in any event. Mot. at 8–12. The tobacco-depository order itself permits personal-information redactions and preserves qualified exceptions for privileged material, trade secrets, and documents protected by qualifying court orders. Final Judgment and Remedial Order § III.C.13–14, *United States v. Philip Morris USA Inc.*, No. 99-cv-02496 (D.D.C. Aug. 17, 2006), ECF No. 5733. It did not allow the wholesale de-designation of millions of pages of documents.

Dated: October 8, 2026

Respectfully submitted,

By: /s/ *Eugene Illovsky*
Eugene Illovsky
**ILLOVSKY GATES & CALIA LLP**
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643
eugene@illovskygates.com
kevin@illovskygates.com

*Attorneys for Defendant Adam Bowen*

By: /s/ *Timothy S. Danninger*
Timothy S. Danninger (pro hac vice)
Timothy J. McGinn (pro hac vice)
**GUNSTER, YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Telephone: (904) 354-1980
tdanninger@gunster.com
tmcginn@gunster.com

*Attorneys for Defendant Juul Labs, Inc.*

By: /s/ *Michael J. Guzman*
Mark C. Hansen (pro hac vice)
Michael J. Guzman (pro hac vice)
David L. Schwarz (CA Bar No. 206257)
**KELLOGG HANSEN TODD FIGEL & FREDERICK, P.L.L.C.**
1615 M. Street, NW, Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com

*Attorneys for Defendants Nicholas Pritzker, Hoyoung Huh, and Riaz Valani*

By: /s/ *James Kramer*
James Kramer
Catherine Malone
Kevin Askew
**ORRICK HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
jkramer@orrick.com
cmalone@orrick.com
kaskew@orrick.com

*Attorneys for Defendant James Monsees*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2026, I electronically served the foregoing document on all counsel of record in this action using the CM/ECF system.

/s/ *Timothy S. Danninger*
Timothy S. Danninger