# Exhibit B

Filing # 247304723 E-Filed 05/01/2026 03:24:47 PM

**IN THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA**

Ben Shapiro, Craig Shapiro, and Julie Shapiro,

Plaintiffs,

v.

JUUL Labs, Inc., Altria Group, Inc., Philip Morris USA, Inc., Altria Client Services, Altria Group Distribution Company, Altria Enterprises LLC, James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, Riaz Valani, My Vapor Hut, Inc. d/b/a 1st Wave Vapor, and Edgar F. Di Puglia, in his capacity as owner of The Smoke House Smoke Shop,

Defendants.

Case No.: CACE-19-010866

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER AND PRIVILEGED MATERIALS ORDER AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiffs, Ben Shapiro, Craig Shapiro, and Julie Shapiro ("Plaintiffs"), hereby file their Response in Opposition to Defendants' Motion for Entry of Protective Order and Privileged Materials Order and Order Regarding Discovery of Electronically Stored Information ("Motion"), and state as follows:

**INTRODUCTION**

Defendants ask this Court to impose broad restrictions on discovery by invoking generalized assertions of "confidentiality" and "trade secrets", while disregarding the fact that many of the documents at issue are already public. To that end, Defendants' Motion is not a narrowly tailored effort to protect legitimately sensitive information, but an attempt to reimpose secrecy over materials whose disclosure has already served important public purposes and informed public understanding of nicotine addiction, youth targeting, and corporate misconduct.

This case arises in a context that courts and public-health authorities have confronted before. As recognized by the United States Surgeon General, litigation against tobacco companies produced profound public-health benefits not merely through verdicts or settlements, but through the public disclosure of internal industry documents revealing addiction engineering, youth marketing strategies, and deliberate misinformation. Those disclosures reshaped scientific understanding, informed legislation and regulation, guided medical and public-health practice, and altered consumer behavior. The transparency compelled through litigation was not incidental—it was essential.

Consistent with that understanding, North Carolina Attorney General Josh Stein's settlement agreement with JUUL Labs, Inc. required the company to make public a large number of internal documents it produced in litigation. These documents—including business correspondence, marketing plans, research, and internal reports—were made available through a publicly searchable depository hosted by the University of North Carolina and the University of California San Francisco, and have since shed light on JUUL's marketing and research practices to help ensure that other companies cannot employ a similar playbook.

Defendants now advance the same arguments once raised by tobacco companies—that internal marketing analyses, youth-use data, regulatory communications, and internal research must remain confidential notwithstanding their relevance to claims involving consumer safety and public health. But Florida law does not afford protection under such circumstances. Protective orders are not a mechanism to retroactively reclaim secrecy over documents that are already public or that have been relied upon in prior litigation, academic research, and regulatory proceedings.

As more fully set forth below, because Defendants have failed to make the evidentiary showing required under Florida law—and because their Motion seeks to override transparency interests long recognized as vital in litigation of substantial public importance—Defendants' Motion should be denied.

**APPLICABLE LAW**

Under Florida law, a protective order is an extraordinary remedy. The party seeking protection bears the burden of establishing good cause through a particularized factual showing, not generalized assertions of confidentiality or competitive harm. *See Cavey v. Wells*, 313 So. 3d 188, 195-196 (Fla. Dist. Ct. App. 2021). A trial court may not enter a blanket or umbrella protective order based on conclusory claims. Rather, Florida courts require a showing that disclosure will result in specific harm and that the requested protection is narrowly tailored to prevent that harm. *See Dees v. Kidney Grp., LLC*, 16 So. 3d 277, 279 (Fla. 2d DCA 2009) (holding the trial court departed from the essential requirements of law where the protective order made no findings related to the good cause grounds and the respondent failed to make any showing below that the discovery would cause annoyance, embarrassment, oppression, or undue burden); *see also Bush v. Schiavo*, 866 So. 2d 136, 140 (Fla. Dist. Ct. App. 2004) (holding the conclusory assertion that the proposed depositions lacked relevance was "insufficient to demonstrate good cause warranting the entry of a protective order"); *Topp Telecom, Inc. v. Atkins*, 763 So. 2d 1197 (Fla. 4th DCA 2000) (holding that the trial court did not err in overruling the objection to the production of documents as constituting an undue burden where the objection was not supported by record evidence).

Although afforded protection under certain circumstances, trade secrets and other confidential business information are not absolutely privileged. *See Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804 (Fla. 3d DCA 2015); *see also Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering & Construction Co.*, 153 F.R.D. 686 (M.D. Fla. 1994); *Freedom Newspapers, Inc. v. Egly*, 507 So. 2d 1180 (Fla. 2d DCA 1987); *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323 (S.D. Fla. 1985). The initial burden is on the party who wishes to prevent disclosure to show good cause for protecting or limiting discovery by demonstrating that the information sought is a trade secret or confidential business information and that disclosure may be harmful. *See Citigroup, Inc. v. Holtsberg*, 920 So. 2d 25, 27 (Fla. 4th DCA 2005).

In the face of an objection to a request for confidential information or trade secrets, courts have articulated a three-part inquiry: 1) the trial court must determine whether the requested production constitutes a trade secret or confidential business information; 2) if so, the court must require the party seeking production to show reasonable necessity for the requested materials; and 3) if production is then ordered, the court must set forth its findings. *See NexusVC v. Hieg Partners*, LLC, 347 So. 3d 440, 445 (Fla. 3d DCA 2022). The party claiming trade secret or confidential business protection must raise it by submitting the alleged materials for in camera review by the court or by requesting an evidentiary hearing. Failure to do so can result in the privilege being waived. *See Bank of America, N.A. v. Bank of New York Mellon, 338 So. 3d 338, 341 (Fla. 3d DCA 2022)* ("the onus remains on the proponent of the evidentiary hearing to raise the issue with the court in the first instance, or risk waiving such argument.").

The trial court must then examine the materials to determine whether the requested production constitutes a trade secret or confidential business information. *See Bright House Networks, LLC v. Cassidy*, 129 So. 3d 501 (Fla. 2d DCA 2014); *see also Ameritrust Insurance Corp. v. O'Donnell Landscapes, Inc.*, 899 So. 2d 1205 (Fla. 2d DCA 2005). If the court determines that the materials do contain trade secrets or confidential business information, the second part of the analysis then requires the court to determine whether "the party seeking production can show a reasonable necessity for the information, which is a fact-specific analysis that generally requires the court to decide whether the need for production outweighs the interest in maintaining confidentiality." *See Fiberoptics Technology, Inc. v. Sunoptic Technologies, LLC*, 342 So. 3d 830, 832 (Fla. 1st DCA 2022).

## ARGUMENT

### A. Defendants' Motion Fails To Satisfy The Legal Requirements For Imposing Confidentiality Protections

Defendants' Motion seeks sweeping confidentiality protections over vast categories of discovery without satisfying the well-established legal standards governing trade secrets and confidential business information under Florida law. Although trade secrets and confidential

business information may, under limited circumstances, warrant protection, such materials are not absolutely privileged, and protective relief is available only upon a specific, evidentiary showing. *See Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804 (Fla. 3d DCA 2015); *see also Freedom Newspapers, Inc. v. Egly*, 507 So. 2d 1180 (Fla. 2d DCA 1987).

Here, Defendants rely almost entirely on generalized assertions, historical reliance interests, and the existence of a prior MDL protective order—none of which satisfy Florida's stringent requirements for imposing confidentiality restrictions in this Court. As a result, Defendants' Motion should be denied.

**1. Defendants Have Not Met Their Burden To Establish Good Cause**

Under Florida law, the initial burden squarely rests on the party seeking protection to demonstrate good cause by showing: (1) that the information at issue constitutes a trade secret or confidential business information, and (2) that disclosure would cause specific, articulable harm. *See Citigroup, Inc. v. Holtsberg*, 920 So. 2d 25, 27 (Fla. 4th DCA 2005). Defendants' Motion does neither.

Instead of identifying particular documents or categories of documents that allegedly qualify as trade secrets, Defendants invoke broad, conclusory labels—"confidential," "proprietary," "highly confidential," and even "ultra trade secret"—without any document-specific analysis. Defendants' Motion contains no affidavits, declarations, or evidentiary proffers demonstrating how disclosure of any specific material would result in competitive or economic harm. This failure alone is fatal under Florida law.

Defendants merely contend that because discovery was produced pursuant to an MDL protective order, equivalent protection must automatically follow here. That contention is legally unsound, as MDL protective orders are procedural tools designed to facilitate discovery—they are not substantive determinations that materials are confidential in perpetuity, nor do they supersede Florida law.

**2. Defendants Have Not Triggered The Required Three-Part Trade-Secret Analysis**

When trade secret or confidentiality objections are raised, Florida courts require a mandatory three-step inquiry: 1) the court must first determine whether the information constitutes a trade secret or confidential business information; 2) if so, the court must then determine whether the party seeking discovery has shown reasonable necessity; and 3) if production is ordered, the court must make specific findings supporting the scope of protection imposed. *See NexusVC v. Hieg Partners, LLC*, 347 So. 3d 440, 445 (Fla. 3d DCA 2022). Defendants' Motion effectively asks this Court to skip the first two steps entirely and impose a blanket, prospective protective order as a matter of course. Florida law does not permit such an approach.

A court cannot determine whether information qualifies as a trade secret—or whether Plaintiffs have a reasonable necessity for it—without first examining the materials at issue. Defendants' failure to present the Court with any materials for review precludes meaningful application of the *NexusVC* framework. Critically, Defendants have not submitted any allegedly confidential materials for in camera review, nor have they requested an evidentiary hearing to establish trade-secret status.

Florida courts have made clear that the party claiming protection must affirmatively raise the issue with the trial court by submitting the materials for review or requesting an evidentiary hearing—failure to do so risks waiver. *See Bank of America, N.A. v. Bank of New York Mellon*, 338 So. 3d 338, 341 (Fla. 3d DCA 2022). Without in camera review, this Court has no evidentiary basis to determine whether any materials actually constitute trade secrets, confidential business information, or merely ordinary business records—many of which Defendants concede have already been widely disseminated in prior litigation and relied upon publicly.

**3. Defendants Make No Showing That Confidentiality Outweighs Plaintiffs' Demonstrated Need**

Even if Defendants had established that certain materials qualify as trade secrets or confidential business information—which they have not—the analysis does not end there. The Court must still determine whether Plaintiffs have shown a reasonable necessity for the

information, and whether that need outweighs any confidentiality interest. *See Fiberoptics Tech., Inc. v. Sunoptic Techs., LLC*, 342 So. 3d 830, 832 (Fla. 1st DCA 2022).

Defendants' Motion is entirely silent on this balancing inquiry. It does not attempt to address Plaintiffs' reliance on these materials in their pleadings, the relevance of Defendants' internal conduct to Plaintiffs' claims, or the strong public interest in transparency where allegations involve consumer safety, youth targeting, and public health impacts.

Indeed, this case, like prior tobacco litigation, concerns allegations of systemic misconduct, including youth targeting and concealment of known health risks. And the U.S. Department of Health and Human Services has repeatedly recognized that litigation against tobacco companies produced profound public-health benefits, not solely through verdicts or settlements, but through the public disclosure of internal industry documents revealing addiction engineering, youth marketing, and deliberate misinformation:

a. The 2012 Report of the Surgeon General on "Preventing Tobacco Use Among Youth and Young Adults" emphasized that "[s]ince 1994, multiple legal and scientific developments have altered the tobacco control environment and thus have affected smoking among youth. *The states and the U.S. Department of Justice brought lawsuits against cigarette companies, with the result that many internal documents of the tobacco industry have been made public and have been analyzed and introduced into the science of tobacco control*."[1] (emphasis added).

b. The 2014 Report of the Surgeon General on "The Health Consequences of Smoking – 50 Years of Progress" further recognized that "[l]itigation against tobacco companies has proven to be a tool for advancing the fundamental public health goal of tobacco control—reducing the morbidity and mortality caused by tobacco products. It can contribute to tobacco control in several ways…*Tobacco litigation has offered an opportunity to shed light on the practices of tobacco manufacturers by exposing once-*

[1] https://www.ncbi.nlm.nih.gov/books/NBK99237/pdf/Bookshelf_NBK99237.pdf at 3-4.

> *secret internal documents and giving a voice to former industry insiders* (Bero 2003)."[2] (emphasis added).

These disclosures reshaped public understanding of nicotine addiction and corporate conduct, informed legislation and regulation, guided medical and public-health practice, and altered consumer behavior. Still, Defendants now advance the same arguments once raised by tobacco companies—that internal marketing analyses, youth-use data, regulatory communications, and internal research must remain confidential, notwithstanding their relevance to public health. Florida law does not permit that result.

What's more, Defendants' Motion rests on an incorrect premise—that the discovery materials at issue remain secret and non-public. In reality, substantial portions of discovery documents are already publicly accessible, including through the University of California San Francisco Truth Tobacco Industry Documents Library, a widely recognized public archive created to promote transparency in nicotine and tobacco litigation. These materials—including internal communications, marketing analyses, youth-use assessments, regulatory correspondence, and strategic planning documents—have been indexed, cited in academic literature, referenced in legislative proceedings, and relied upon by courts and policymakers. In fact, Plaintiffs have already filed and relied upon multiple of these documents in support of their pleadings before this Court, all of which were obtained from the University of California San Francisco Truth Tobacco Industry Documents Library.

## CONCLUSION

Defendants have failed to meet their burden to establish good cause for the sweeping relief they seek. Their Motion conflicts with Florida's protective-order standard, disregards the public status of key documents, and undermines transparency in litigation of substantial public importance. Accordingly, Defendants' Motion should be denied.

DATED: May 1, 2026 Respectfully submitted,

[2] https://www.ncbi.nlm.nih.gov/books/NBK179276/pdf/Bookshelf_NBK179276.pdf at 798.

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.
Lili D. Lowell, Esq.
Jonathan Gdanski, Esq.
Scott Schlesinger, Esq.
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Tel: (954) 467-8800
Fax: (954) 320-9509
Jhaberman@schlesingerlaw.com
Llowell@schlesingerlaw.com
Jgdanski@schlesingerlaw.com
Scott@schlesingerlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on May 1, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the Florida Courts e-Filing Portal that will send an automatic e-mail message to all parties who have registered with the e-Filing portal.

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.
Lili D. Lowell, Esq.
Jonathan Gdanski, Esq.
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Tel: (954) 467-8800
Fax: (954) 320-9509
Jhaberman@schlesingerlaw.com
Llowell@schlesingerlaw.com
Jgdanski@schlesingerlaw.com

*Attorneys for Plaintiffs*