Scott P. Schlesinger (*pro hac vice*)
Jeffrey L. Haberman (*pro hac vice*)
Jonathan R. Gdanski (*pro hac vice*)
SCHLESINGER LAW OFFICES, P.A.
Fla Bar No. 98522
1212 SE Third Avenue
Fort Lauderdale, FL 33316
Tel: (954) 467-8800
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com
jgdanski@schlesingerlaw.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICE, AND PRODUCTS LIABILITY LITIGATION

**THIS DOCUMENT RELATES TO:**

*Erin NesSmith et al. v. Juul Labs, Inc. et al.*, Case No. 3:19-cv-06344-WHO

*Bailey Legacki v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01927-WHO

*Cole Aragona v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-01928-WHO

*Matthew Tortorici v. Juul Labs, Inc., et al.*, Case No. 3:20-cv-03847-WHO

*Jordan Dupree v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03850-WHO

*Carson Sedgwick v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-03882-WHO

*Jennifer Lane et al. v. Juul Labs, Inc. et al.*, Case No. 3:20-cv-04661-WHO

Case No. 3:19-md-02913-WHO

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER AND REQUIRE DEFENDANTS TO SHOW GOOD CAUSE FOR CONTINUED CONFIDENTIALITY**

Hearing: November 4, 2026
Time: 2:00 p.m.
Department: Courtroom 2, 17th Floor
Judge: Hon. William H. Orrick

**INTRODUCTION**

This Circuit requires a party to show good cause for continuing to urge protection of documents that are subject to a stipulated protective order. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Defendants can't simply avoid this standard because they find it inconvenient. The Court should treat their undue burden claims with utmost suspicion because, as their responses indicate, they have seemingly done the work reviewing their productions for confidentiality. Under consent judgments, JLI spent 12 to 16 months reviewing its MDL production, sorted withheld material into exemption categories, and released roughly half its production to the public. Altria was ordered by another federal court to make its JUUL MDL production public on Philip Morris's website save some narrow exceptions. Altria now reports that its documents will be added to the same public depository as JLI. Altria Opp. at 3 n.3. It follows then that these Defendants are prepared to show-cause why the documents held back continue to merit protection.

More importantly, Plaintiffs offer a compelling reason, virtually unrebutted, to modify the Protective Order here: public health will greatly benefit. Chris Shaffer, UCSF University Librarian and Assistant Vice Chancellor, writing for the UCSF Library, puts it best:

> Providing free access to documents disclosed in tobacco litigation has supported 1,133 public health publications to date, including peer-reviewed scientific research, policy briefs, investigative journalism, and government reports. Research based on tobacco industry documents contributed to public education campaigns and local, state, national and global legislation, including the US Family Smoking Prevention and Tobacco Control Act, and to the WHO Framework Convention on Tobacco Control, the first global health treaty negotiated under the auspices of the World Health Organization. Many of these publications cite documents which were originally withheld under claims of confidentiality and trade secrets but were later made public. These publications and policies have helped to reduce the burden of smoking-related diseases and are credited with saving millions of lives worldwide. Exhibit A, Shaffer Ltr. to Judge Orrick, dated October 14, 2026.

> [The] UCSF Industry Documents Library also maintains the Juul Labs Collection of 5 million documents which have been disclosed to date. There have been 49,347 total webpage views of these materials since launching the collection in January 2024, showing steady and increasing interest in the documents across our research communities.

The plaintiffs do not ask the Court to "terminate" the protective order. Nor do they seek to strip protection from personal or health information, regulatory communications protected by law, or genuine trade secrets. Mot. (ECF No. 4519) at 7. They ask the Court to require the defendants to identify what still warrants protection among the documents produced and the testimony of the depositions taken and why. Circuit precedent and Rule 26(c) has always required that showing, and the order itself contemplates it. Am. Protective Order (ECF No. 1282) ¶¶ 4, 31, 38.

## ARGUMENT

### I. Defendants Bear The Burden Of Justifying Continued Secrecy And They Do Not Carry It

The Protective Order was entered by stipulation, so no court has ever found good cause to keep Defendants' discovery from the public. The law is settled: "If the parties stipulate to a protective order without making a good cause showing, then the burden of proof as to the confidentiality of the documents at issue remains with the party seeking protection." *Johnson v. City & Cnty. Of San Francisco*, 2012 WL 104635, at *1 (N.D. Cal. Jan. 12, 2012) citing *Philips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 n.1 (9th Cir. 2002). Where a party challenges the confidential designation of certain documents, then "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *Id.*, citing *Roman Catholic*, 661 F.3d at 424. The Protective Order essentially says the same thing: "The burden of persuasion in any such dispute shall be on the Designating Party." Am. Protective Order ¶ 38. Because the Court never made a good-cause finding when it entered the stipulated order, that showing has never been made, and it falls to Defendants to make it

now. *See Fierro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025) (a district court "must find 'good cause' before" restricting access to discovery). There is no basis for JLI's contrary claim that the Defendants "need not show good cause" at all. JLI Opp. (ECF No. 4522) at 9.

The burden is a demanding one, and Defendants have not attempted to carry it. Discovery is "presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). To overcome that presumption, the party resisting disclosure must show particularized harm "for each particular document it seeks to protect." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Fierro Cordero*, 142 F.4th at 1207 (quotation omitted).

Defendants' authority regarding a party's burden in modifying a protective order is unhelpful. Defendants principally rely on *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2024 WL 251404 (N.D. Cal. Jan. 23, 2024). That case is inapposite. For one, the protective order at issue there was contested, in part – it was not entirely stipulated to, as here. Moreover, *Social Media* had nothing to do with a claim for public access to discovery. The plaintiffs there sought to delete a provision regarding whether it was appropriate to require plaintiffs to identify their experts to defendants before showing their experts defendants' highly confidential material. The court examined whether the plaintiffs could prove they would be prejudiced absent modification. Defendants cite this case for the broad proposition that a party seeking modification must show the order "actually prejudice[s] presentation of the moving party's case." Altria Opp. at 5–6; JLI Opp. at 13. The prejudice standard was drawn from *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000), and *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992). *Intel Corp.* was a patent infringement case; *Brown Bag Software* was a copyright case. The protective orders in those cases limited certain documents to "attorneys only," and if so tagged, the documents

could not even be shown to in-house counsel. In all three cases, *Social Media*, *Intel Corp.*, and *Brown Bag Software*, the dispute at issue was whether to change how the parties *themselves* may use discovery. The courts were concerned about one party gaining an advantage in business or in litigation over another. The issue here is whether JLI and Altria can continue shielding documents from the public without good cause. This issue has nothing to do with using confidential documents to gain some advantage over a competitor.

**II. Defendants Fail To Show Particularized Harm From Disclosure**

Defendants hardly even attempt to make a particularized showing of harm for most of their designated documents. Millions of comparable documents are already public. A federal court has already ordered Altria's MDL discovery posted online. And documents that are, for the most part, the better part of a decade old have lost whatever competitive value they once had.

Defendants' showing of harm is confined to several categories of documents not at issue. JLI's showing consists of four exhibits (an engineering schematic, a design drawing, an ingredient document, and an excerpt of its Pre-Market Tobacco Product Application ("PMTA")) and a list of six generic categories. Altria offers no exhibits at all, only a description of "financial analyses, valuation methods, customer-specific pricing, and contractual terms." Those are exactly the "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," that the Ninth Circuit has held insufficient. *Fierro Cordero*, 142 F.4th at 1207. From the outset, Plaintiffs have agreed that trade secrets, engineering and formulation documents, the PMTA, and protected regulatory communications *may* remain protected if not already disclosed publicly, and that personal information will be redacted. Defendants do not contend that other categories of documents remain confidential.

The best evidence that those documents can be disclosed without harm is that JLI has already disclosed documents just like them. JLI has released roughly half its MDL production through the public depository. Those releases include documents it had

designated "highly confidential," such as Audit Committee minutes, and "highly confidential – outside counsel only," such as an investor prospectus. By those designations, JLI represented to Plaintiffs and to this Court that disclosure was "likely to cause serious economic harm or competitive disadvantage." Am. Protective Order ¶¶16-17. Yet, Defendants fail to identify any harm that followed. Altria responds that one set of minutes is not another. Plaintiffs agree that content matters, which is precisely why they ask for a particularized showing. But Defendants cannot resist that showing on the ground that some documents might qualify while refusing to say which ones do.

Altria's reliance on the sealing records as proof that the designations have already been tested is misguided. Altria acknowledges that requests for protection were withdrawn or narrowed when tested. And Judge Corley warned that "over-designation in the first instance" "will not be accepted," and held that general topics already known from the record and the unsealed complaints "cannot be sealed under the good cause standard." Order (ECF No. 1773) at 1-2 (Apr. 28, 2021); *see also* ECF No. 2425 at 3-4 (Oct. 6, 2021). Moreover, the administrative motions to seal, including those filed with the summary judgment oppositions, reached only the exhibits a party chose to file, and also asked whether judicial records could be sealed for "compelling reasons," not whether unfiled discovery warrants protection under Rule 26(c). The rest of a production exceeding 10 million documents has never been tested at all.

Taken together, the record shows designations made in bulk, never tested, and repeatedly abandoned or rejected whenever they were examined. Defendants ask the Court to keep millions of documents from the public on the strength of those designations alone. Rule 26(c) requires more, and Defendants have offered nothing more.

## III. The Public Interest In Disclosure Is Compelling, Undisputed, And Ongoing

Even where a party shows particularized harm, which Defendants have not done, the Court must still balance the public and private interests to decide whether a protective order is necessary. *Fierro Cordero*, 142 F.4th at 1207. That balance turns on the *Glenmede*

factors, including "whether confidentiality is being sought over information important to public health and safety" and "whether the case involves issues important to the public." *Roman Catholic*, 661 F.3d at 424 n.5. Both factors weigh heavily in favor of disclosure here. And Defendants do not argue otherwise. Altria concedes that public health "inform[s] that balance," and JLI does not mention the *Glenmede* factors at all.

First, this Court and federal health authorities have recognized the gravity of the crisis these documents illuminate. This Court has described the "youth e-cigarette crisis" to which school districts and local governments "were compelled to respond." ECF No. 1084 at 9 (Oct. 23, 2020). It found plausible allegations that the Director Defendants played "a key role in directing JLI's youth marketing, leading to the public health crisis at issue." ECF No. 1694 at 23 (Apr. 13, 2021). The Surgeon General declared youth e-cigarette use an epidemic in December 2018. And the Surgeon General has twice found that litigation-driven disclosure of industry documents advanced tobacco-control science and contributed to the decline in youth smoking. Tellingly, Defendants do not address those findings.

Second, a federal court has already concluded that the public interest reaches this very discovery. Judge Friedman held that this MDL falls within the Remedial Order of Injunctive Relief #1015, found "striking similarities" between the conduct alleged here and the conduct adjudicated in 2006, and ordered Philip Morris and Altria to post their MDL discovery on a public website. *United States v. Philip Morris USA Inc.*, No. 99-2496 (PLF), slip op. at 13-16, 18 (D.D.C. June 19, 2023). Altria responds only that the tobacco depository remedy excepts privilege, trade secrets, and personal information. Those are the very exceptions Plaintiffs concede may remain confidential so long as a requisite showing is made. What that regime did not permit, and what Rule 26(c) does not permit, is blanket secrecy for everything else.

Third, the experience of the tobacco documents shows what disclosure accomplishes, and the institution that made it possible stands ready to do the same here. The UCSF Industry Documents Library manages 20 million tobacco industry documents

disclosed through the Minnesota litigation, the Master Settlement Agreement, and the 2006 RICO judgment. *See* **Ex. A** at 1. Free access to them has supported 1,133 public-health publications, including peer-reviewed research, policy briefs, investigative journalism, and government reports. It also contributed to the Family Smoking Prevention and Tobacco Control Act and the WHO Framework Convention on Tobacco Control. *Id.* The Library's Juul Labs Collection of 5 million documents has drawn 49,347 page views since January 2024, reflecting "steady and increasing interest in the documents across our research communities." *Id.* If more documents are released, UCSF will add them to that archive. *Id.* That is the public interest in concrete form.

Fourth, the public interest is not historical, it is ongoing. This is not an inquiry into a discontinued product. In July 2025, FDA authorized the JUUL device and its tobacco- and menthol-flavored pods for sale, while cautioning that "[t]here is no safe tobacco product" and that it would "closely monitor compliance with robust restrictions to limit youth exposure to marketing." U.S. Food & Drug Admin., *FDA Authorizes Marketing of Tobacco- and Menthol-Flavored JUUL E-Cigarette Products* (July 17, 2025). On August 28, 2026, FDA authorized JUUL2, a new device with its own tobacco and menthol-flavored pods, and JLI has announced that it is seeking authorization for "a portfolio of flavors." Other ENDS products continue to be developed and sold. Consumers, parents, schools, researchers, and regulators therefore have a present need to know how the company now selling these products designed, marketed, and studied its earlier ones, and what it knew about youth use. Age may reduce a document's competitive value, but not its public value. What the documents reveal matters more, not less, while the company's products remain on the shelves.

On the other side of the scale, Defendants offer only generalized assertions of commercial sensitivity for categories Plaintiffs do not seek. Against the undisputed public-health importance of documents showing how a generation of young people became addicted to nicotine, that showing cannot justify continued secrecy.

## IV. All Deposition Testimony Should Be Released And Made Part Of The Public-Health Archive

Plaintiffs' Motion reaches every item of discovery Defendants designated, including deposition transcripts and videos. Of all that discovery, the testimony of Defendants' founders, directors, and executives is the most important to the public, the least likely to contain protectable information, and the least burdensome to review. The UCSF Library specifically asks that "depositions, transcripts, and other key documents" be made public so that they can join its archive. *See* **Ex. A** at 1. The case for releasing them is overwhelming.

*First*, Defendants' burden objection and exempted categories of documents do not concern depositions. Both oppositions rest on the cost of re-reviewing millions of documents. The deposition record, by contrast, is a finite and manageable set of transcripts, and neither opposition mentions depositions at all, much less identifies any burden in reviewing them. The Ninth Circuit's own decisions involved exactly this kind of discrete record. *Beckman* permitted access to deposition transcripts sealed under a stipulated order. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472, 475-476 (9th Cir. 1992). And *Roman Catholic*, as Altria itself acknowledges, addressed deposition materials alongside the personnel files at issue there.

*Second*, deposition testimony rarely contains the kind of information a protective order exists to protect. The witnesses are Defendants' founders, directors, executives, and corporate designees. They testified about how JLI marketed its products, what the companies knew about youth use, and why Altria invested. That testimony describes decisions and knowledge, not formulas or schematics. Much of it is already public: portions were used at the bellwether trial, and Judge Corley has held that general topics already known from the public record "cannot be sealed under the good cause standard." ECF No. 1773 at 1-2.

*Third*, testimony is the most direct evidence of what the decision-makers knew and

why they acted. Documents show what was written; testimony shows what the people responsible understood and how they explain their choices. For the researchers and regulators who use the UCSF archive to study how the youth nicotine epidemic arose, that testimony is the core of the record, and the *Glenmede* public-health factor applies to it with full force.

Plaintiffs therefore ask the Court to order release of all deposition transcripts and recordings, so that they may be made part of the public archive. The only exceptions would be redaction of personal identifying and health information, and of specific page-and-line passages for which a Defendant shows particularized good cause.

## V. Defendants' Burden Objection Fails Because They Have Already Done The Work

Setting procedure aside, Defendants belabor a single point—that re-reviewing the production would be expensive. Defendants do not contend that the documents Plaintiffs target contain trade secrets. They do not contend that JLI's release of half its production caused any harm. And they do not dispute that the documents matter to public health. A party that cannot say why its documents should stay secret cannot keep them secret by saying it would be costly to look.

The burden argument also ignores the work Defendants did when they made their productions. A document does not label itself "confidential," "highly confidential," or "highly confidential – outside counsel only." Those tiers turn on content. The lowest covers information that qualifies for protection under the order, while the higher tiers require a judgment that disclosure is "likely to cause serious economic harm or competitive disadvantage" or would put the producing party "at a significant competitive disadvantage." Am. Protective Order ¶¶10, 16-17. To place a document in one tier rather than another, or to produce it with no designation at all, Defendants necessarily reviewed it and decided how sensitive it was. Plaintiffs ask only that Defendants state the reasons behind decisions they have already made if the document has not already been made public

and is not of they type and category of a document already made public. That is not a re-review of 10 million documents. It is a report of a review already done.

In any event, bulk designation was Defendants' choice, and the order expressly made it subject to challenge. Am. Protective Order ¶¶30-31. JLI has already sorted its withheld documents by exemption category under its consent judgments, and Altria has already been ordered to post its MDL discovery publicly. Altria itself acknowledges that "[g]rouping genuinely similar materials may reduce duplication."

**VI. Defendants' Procedural Objections Do Not Shift Or Excuse Their Burden**

**a. The Plaintiffs Are Not Estopped, and the Motion Is Procedurally Proper**

The Ninth Circuit has rejected the premise of JLI's estoppel argument. Reliance on a protective order cannot, "without more, justify refusal to modify when there is a reasonable request for disclosure." *Beckman Industries v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). This is especially true where, as here, the protective order was a stipulated blanket order. The Ninth Circuit holds that "[r]eliance will be less with a blanket order, because it is by nature overinclusive." *Id.* The Court also rejected any heightened "extraordinary circumstances" test for modification as "incompatible with our circuit's law." *Id.* at 475. Thus, the central premise of Defendants' opposition: the parties have long operated under the Protective Order therefore they should continue doing so – easily fails.

JLI's estoppel cases, *Longman v. Food Lion, Inc.*, 186 F.R.D. 331 (M.D.N.C. 1999), *Burke v. Glanz*, 2013 WL 211096 (N.D. Okla. Jan. 18, 2013), and *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393 (W.D. Va. 1987), are out-of-circuit district court decisions that cannot be reconciled with *Roman Catholic*, where the stipulating claimants prevailed.

The in-district cases support Plaintiffs. *See In re Adobe Systems, Inc. Securities Litigation*, 141 F.R.D. 155 (N.D. Cal. 1992), and *Johnson v. City & County of San Francisco*, 2012 WL 104635 (N.D. Cal. Jan. 12, 2012). In *Johnson*, the court left the order in place only after the defendants showed good cause for each of the two categories at

issue: non-parties' home addresses and telephone numbers, and examination materials that local civil-service rules made confidential. 2012 WL 104635, at *2-4. That is the category-level showing Plaintiffs seek here. *Adobe* held only that stipulating parties could not obtain "wholesale un-designation" outside the order's agreed procedure, and it preserved challenges under that procedure. 141 F.R.D. at 165. Its order also placed the burden of proof on the challenging party, and the defendants there supported continued protection with declarations describing specific, current competitive harm. *Id.* at 162-165. Defendants' "bargain" was never permanent secrecy. The order "does not confer blanket protections," and it allowed bulk designation "notwithstanding that some of the documents within the collection may not qualify." Am. Protective Order ¶¶4, 31.

**b. The Protective Order permits category-wide challenges**

Any contention that Plaintiffs' challenges are not specific enough is without merit. Altria concedes that the order "permits a party to challenge individual documents or categories of documents." Altria Opp. at 2 (citing Am. Protective Order ¶¶ 31, 35). That is what the plaintiffs seek. What's more, Defendants cannot simply shift their burden on Plaintiffs, as provided in *Roman Catholic* and *Beckman*.

That the plaintiffs did not challenge designations earlier is no answer either. The order sets no deadline for challenges. And the defendants' own conduct explains the timing: as JLI settled with the states, it released millions of documents it had designated confidential, highly confidential, and outside-counsel-only. Mot. at 4–5. Those releases are what made the gap between the defendants' designations and their actual confidentiality interests visible.

**c. Defendants' other points are meritless**

Altria faults Plaintiffs for not conferring before filing this motion. The parties have met and conferred about modifying the protective order in *McKnight*, *Shapiro*, and *Fay*. In each case Defendants have opposed Plaintiffs' position. Defendants' whole-sale opposition to the motion indicates that they do not agree. Plaintiffs remain willing to meet

and confer on these issues before the hearing.

The motion is timely, and now is the right time to decide it. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc.*, 62 F.3d 1217 (9th Cir. 1995), on which Altria relies, addressed the timeliness of a non-party's motion to intervene. Plaintiffs are parties and need no leave to intervene, and the order sets no deadline for challenges. Defendants make like this is an improper 11th hour Hail Mary. Not so. The Court's announced intention to suggest remand is a reason to decide the Motion now. The Ninth Circuit held in *Beckman* that the district court retains jurisdiction over protective orders even after the case ends.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter an order requiring JLI and the Altria Defendants to identify the documents, or narrow categories of documents, they contend should remain protected; to show particularized good cause for each; and to propose redactions where partial disclosure is possible. The Court should also order that all deposition testimony be made public, subject only to redaction of personal information and of specific passages for which Defendants show particularized good cause. As to every document for which Defendants make no such showing, the Court should permit public access.

DATED: October 15, 2026

Respectfully submitted,

/s/ *Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.
Scott P. Schlesinger, Esq.
Jonathan R. Gdanski, Esq.
Lili D. Lowell, Esq.
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Tel: (954) 467-8800
Fax: (954) 320-9509
Jhaberman@schlesingerlaw.com

Scott@schlesingerlaw.com
JGdanski@schlesingerlaw.com
Llowell@schlesingerlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Jeffrey L. Haberman*
Jeffrey L. Haberman